# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA

**Robert N. Trgovich, Clerk**                                          **www.innd.uscourts.gov**

July 26, 2016

## RECORD TRANSMITTAL LETTER

Gino J. Agnello, Clerk
United States Court of Appeals, 7th Circuit
219 South Dearborn Street, Room 2722
Chicago, IL 60604

Re: USA v. Briseno
District Court Docket # 2:11CR77
U.S. Court of Appeals #  15-2347

Dear Mr. Agnello:

    I am sending you herewith the Original Record on Appeal.  It consists of the following:

1      Volume(s) of Pleadings
57    Volume(s) of Transcripts
      Volume(s) of State Court Records
      Volume(s) of Depositions

Exhibits:
Impounded Documents/PSI Reports: 1 PSR and Addendum to PSR; 99 Sealed Documents
Other (specify): 7 Sealed Envelopes (Entire record sent via UPS)

    Please acknowledge receipt of the above-listed materials on the attached copy of this letter.

Sincerely,

ROBERT N. TRGOVICH, CLERK

By: s/T. Castillo
              Deputy Clerk

Date Received:_____    By:_____

Reply to:  Hammond Office

**1108 E. Ross Adair Federal Bldg. • 1300 S. Harrison Street • Fort Wayne, Indiana 46802 • (260) 423-3000 • Fax (260) 423-3007**
**5400 Federal Plaza • Suite 2300 • Hammond, Indiana 46320 • (219) 852-6500 • Fax (219) 852-6509**
**102 Robert A. Grant Federal Bldg. • 204 South Main Street • South Bend, Indiana 46601 • (574) 246-8000 • Fax (574) 246-8002**
**214 Charles Halleck Federal Bldg. • 230 North Fourth Street • Room 105 • Lafayette, Indiana 47902 • (765) 420-6250 • Fax (765) 420-6314**

APPEAL,DEATHP,H7

# U.S. District Court Northern District of Indiana [LIVE]
## USDC Northern Indiana (Hammond)
## CRIMINAL DOCKET FOR CASE #: <u>2:11−cr−00077−PPS−APR</u>−1

Case title: United States of America v. Briseno et al

Date Filed: 06/02/2011
Date Terminated: 06/16/2015

Assigned to: Chief Judge Philip P
Simon
Referred to: Magistrate Judge
Andrew P Rodovich

Appeals court case number:
15−2347 USCA

### <u>Defendant (1)</u>

**Juan Briseno**
11190−027
FLORENCE USP − 7000 − HIGH
US PENITENTIARY
Inmate Mail/Parcels
PO BOX 7000
FLORENCE, CO 81226
*TERMINATED: 06/16/2015*
*also known as*
Tito
*TERMINATED: 06/16/2015*

represented by **Hannah V Garst PHV**
Law Offices of Hannah Garst
PO Box 344
Palatine, IL 60078
773−248−6504
Fax: 773−305−5183
Email: <u>hannahgarst@garstlaw.com</u>
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Designation: CJA Appointment*

**Kent R Carlson**
Kent R Carlson & Associates PC
53 W Jackson Blvd Suite 1544
Chicago, IL 60604
312−663−9601
Fax: 312−427−1788
Email: <u>kentrcarlson@sbcglobal.net</u>
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: CJA Appointment*

**Arlington J Foley**
Attorney at Law
1942 N Main St
Crown Point, IN 46307
219−661−1200
Fax: 219−661−1205
Email: <u>arlingtonfoley@att.net</u>
*Designation: CJA Appointment*

**John Maksimovich**
1946 North Main Street
Crown Point, IN 46307
219–663–1900
Fax: 219–663–1908
Email: criminallaw@johnmaksimovich.com
*Designation: CJA Appointment*

| **Pending Counts** | **Disposition** |
|---|---|
| 18:1962(d) CONSPIRACY TO PARTICIPATE IN RACKETEERING ACTIVITY AND FORFEITURE ALLEGATION (1ssss) | A term of LIFE. This term consists of the following: A term of LIFE on each of counts 9,13,15,19 and 21, to be served consecutive to one another. A term of LIFE on counts 1 and 2,which shall run concurrent with one another and concurrent with counts 9,13,15,19 and 21. Additionally the dft is sentenced to 120 months on Count 23 to be served concurrent with counts 1,2,9,13,15, 19 and 21. On Count 24 the dft is sentenced to 120 months consecutive to the other counts. No fine imposed. Total Special Assessment of $900.00. |
| 21:846 CONSPIRACY TO POSSESS WITH INTENT TO DISTRIBUTE COCAINE (5 KILO OR MORE) AND MARIJUANA (100 KILOS OR MORE) AND FORFEITURE ALLEGATIONS (2ssss) | A term of LIFE. This term consists of the following: A term of LIFE on each of counts 9,13,15,19 and 21, to be served consecutive to one another. A term of LIFE on counts 1 and 2,which shall run concurrent with one another and concurrent with counts 9,13,15,19 and 21. Additionally the dft is sentenced to 120 months on Count 23 to be served concurrent with counts 1,2,9,13,15, 19 and 21. On Count 24 the dft is sentenced to 120 months consecutive to the other counts. No fine imposed. Special Assessment total of $900.00. |
| 18:1959(a)(1) MURDER IN AID OF RACKETEERING ACTIVITY, 18:2 AIDING AND ABETTING AND 18:3591 AND 3592 SPECIAL FINDINGS (9ssss) | A term of LIFE. This term consists of the following: A term of LIFE on each of counts 9,13,15,19 and 21, to be served consecutive to one another. A term of LIFE on counts 1 and 2,which shall run concurrent with one another and concurrent with counts 9,13,15,19 and 21. Additionally the dft is sentenced to 120 months on Count 23 to be served concurrent with counts 1,2,9,13,15, 19 and 21. On Count 24 the dft is sentenced to 120 months consecutive to the other counts. No fine imposed. Total Special Assessment of $900.00. |
| 18:1959(a)(1) MURDER IN AID OF RACKETEERING ACTIVITY, 18:2 AIDING AND ABETTING AND 18:3591 AND 3592 SPECIAL FINDINGS | A term of LIFE. This term consists of the following: A term of LIFE on each of counts 9,13,15,19 and 21, to be served consecutive to one another. A term of LIFE on counts 1 and 2,which shall run concurrent with one another and |

(13ssss)

concurrent with counts 9,13,15,19 and 21. Additionally the dft is sentenced to 120 months on Count 23 to be served concurrent with counts 1,2,9,13,15, 19 and 21. On Count 24 the dft is sentenced to 120 months consecutive to the other counts. No fine imposed. Total Special Assessment of $900.00.

18:1959(a)(1) MURDER IN AID OF RACKETEERING ACTIVITY, 18:2 AIDING AND ABETTING AND 18:3591 AND 3592 SPECIAL FINDINGS
(15ssss)

A term of LIFE. This term consists of the following: A term of LIFE on each of counts 9,13,15,19 and 21, to be served consecutive to one another. A term of LIFE on counts 1 and 2,which shall run concurrent with one another and concurrent with counts 9,13,15,19 and 21. Additionally the dft is sentenced to 120 months on Count 23 to be served concurrent with counts 1,2,9,13,15, 19 and 21. On Count 24 the dft is sentenced to 120 months consecutive to the other counts. No fine imposed. Total Special Assessment of $900.00.

18:1959(a)(1) MURDER IN AID OF RACKETEERING ACTIVITY, 18:2 AIDING AND ABETTING AND 18:3591 AND 3592 SPECIAL FINDINGS
(19ssss)

A term of LIFE. This term consists of the following: A term of LIFE on each of counts 9,13,15,19 and 21, to be served consecutive to one another. A term of LIFE on counts 1 and 2,which shall run concurrent with one another and concurrent with counts 9,13,15,19 and 21. Additionally the dft is sentenced to 120 months on Count 23 to be served concurrent with counts 1,2,9,13,15, 19 and 21. On Count 24 the dft is sentenced to 120 months consecutive to the other counts. No fine imposed. Total Special Assessment of $900.00.

18:1959(a)(1) MURDER IN AID OF RACKETEERING ACTIVITY, 18:2 AIDING AND ABETTING AND 18:3591 AND 3592 SPECIAL FINDINGS
(21ssss)

A term of LIFE. This term consists of the following: A term of LIFE on each of counts 9,13,15,19 and 21, to be served consecutive to one another. A term of LIFE on counts 1 and 2,which shall run concurrent with one another and concurrent with counts 9,13,15,19 and 21. Additionally the dft is sentenced to 120 months on Count 23 to be served concurrent with counts 1,2,9,13,15, 19 and 21. On Count 24 the dft is sentenced to 120 months consecutive to the other counts. No fine imposed. Total Special Assessment of $900.00.

18:1959(a)(5) ATTEMPTED MURDER IN AID OF RACKETEERING ACTIVITY AND 18:2 AIDING AND ABETTING
(23ssss)

A term of LIFE. This term consists of the following: A term of LIFE on each of counts 9,13,15,19 and 21, to be served consecutive to one another. A term of LIFE on counts 1 and 2,which shall run concurrent with one another and concurrent with counts 9,13,15,19 and 21. Additionally the dft is sentenced to 120 months on

3

Count 23 to be served concurrent with counts 1,2,9,13,15, 19 and 21. On Count 24 the dft is sentenced to 120 months consecutive to the other counts. No fine imposed. Total Special Assessment of $900.00.

A term of LIFE. This term consists of the following: A term of LIFE on each of counts 9,13,15,19 and 21, to be served consecutive to one another. A term of LIFE on counts 1 and 2,which shall run concurrent with one another and concurrent with counts 9,13,15,19 and 21. Additionally the dft is sentenced to 120 months on Count 23 to be served concurrent with counts 1,2,9,13,15, 19 and 21. On Count 24 the dft is sentenced to 120 months consecutive to the other counts. No fine imposed. Total Special Assessment of $900.00.

18:924(c) USE OF FIREARM DURING AND IN RELATION TO A CRIME OF VIOLENCE AND 18:2 AIDING AND ABETTING (24ssss)

**Highest Offense Level (Opening)**

Felony

| **Terminated Counts** | **Disposition** |
| --- | --- |
| 18:1959(a)(1) RACKETEERING ACTIVITY /MURDER/KIDNAPPING (1) | Fourth Superseding Indictment filed. |
| 18:1962(d) CONSPIRACY TO PARTICIPATE IN RACKETEERING ACTIVITY (1s) | Fourth Superseding Indictment filed. |
| 18:1962(d) CONSPIRACY TO PARTICIPATE IN RACKETEERING ACTIVITY (1ss) | Fourth Superseding Indictment filed. |
| 18:1962(d) CONSPIRACY TO PARTICIPATE IN RACKETEERING ACTIVITY (1sss) | Fourth Superseding Indictment filed. |
| 18:924(c)(1)(A) and (j) VIOLENT CRIME/DRUGS/MACHINE GUN WHERE DEATH OCCURS (2) | Fourth Superseding Indictment filed. |
| 18:1959(a)(1) MURDER IN AID OF RACKETEERING ACTIVITY, 18:2 AIDING AND ABETTING AND 18:3591 AND 3592 DEATH PENALTY | Fourth Superseding Indictment filed. |

4

(2s)

21:846 CONSPIRACY TO POSSESS WITH INTENT TO DISTRIBUTE COCAINE (5 KILO OR MORE) AND MARIJUANA (100 KILOS OR MORE) (2sss)

Fourth Superseding Indictment filed.

18:924(c) AND 924(j) MURDER RESULTING FROM USE AND CARRYING OF FIREARM DURING AND IN RELATION TO A CRIME OF VIOLENCE , 18:2 AIDING AND ABETTING AND 18:3591 AND 3592 DEATH PENALTY (3s)

Fourth Superseding Indictment filed (which did not include a count 3 for dft Juan Briseno).

18:1959(a)(1) MURDER IN AID OF RACKETEERING ACTIVITY, 18:2 AIDING AND ABETTING AND 18:3591 AND 3592 DEATH PENALTY (4s)

Fourth Superseding Indictment filed (which did not include a count 4 for dft Juan Briseno).

18:1959(a)(1) MURDER IN AID OF RACKETEERING ACTIVITY, 18:2 AIDING AND ABETTING AND 18:3591 AND 3592 SPECIAL FINDINGS (4ss)

Fourth Superseding Indictment filed (which did not include a count 4 for dft Juan Briseno).

18:924(c) AND 924(j) MURDER RESULTING FROM USE AND CARRYING OF FIREARM DURING AND IN RELATION TO A CRIME OF VIOLENCE , 18:2 AIDING AND ABETTING AND 18:3591 AND 3592 DEATH PENALTY (5s)

Fourth Superseding Indictment filed (which did not include a count 5 for dft Juan Briseno).

18:924( c) AND 924(j) MURDER RESULTING FROM THE USE AND CARRYING OF FIREARM DURING AND IN RELATION TO A CRIME OF VIOLENCE, 18:2 AIDING AND ABETTING AND 18:3591 AND 3592 SPECIAL FINDINGS (5ss)

Fourth Superseding Indictment filed (which did not include a count 5 for dft Juan Briseno).

18:1959(a)(1) MURDER IN AID OF RACKETEERING ACTIVITY, 18:2 AIDING AND ABETTING

Fourth Superseding Indictment filed (which did not include a count 6 for dft Juan Briseno).

AND 18:3591 AND 3592 DEATH
PENALTY
(6s)

18:1959(a)(1) MURDER IN AID
OF RACKETEERING ACTIVITY,
18:2 AIDING AND ABETTING
18:3591 AND 3592 SPECIAL
FINDINGS
(6ss)

Fourth Superseding Indictment filed (which did not include a count 6 for dft Juan Briseno).

18:924(c) AND 924(j) MURDER
RESULTING FROM USE AND
CARRYING OF FIREARM
DURING AND IN RELATION TO
A CRIME OF VIOLENCE , 18:2
AIDING AND ABETTING AND
18:3591 AND 3592 DEATH
PENALTY
(7s)

Fourth Superseding Indictment filed (which did not include a count 7 for dft Juan Briseno).

18:924( c) AND 924(j) MURDER
RESULTING FROM THE USE
AND CARRYING OF FIREARM
DURING AND IN RELATION TO
A CRIME OF VIOLENCE, 18:2
AIDING AND ABETTING AND
18:3591 AND 3592 SPECIAL
FINDINGS
(7ss)

Fourth Superseding Indictment filed (which did not include a count 7 for dft Juan Briseno).

18:1959(a)(1) MURDER IN AID
OF RACKETEERING ACTIVITY,
18:2 AIDING AND ABETTING
AND 18:3591 AND 3592 DEATH
PENALTY
(8s)

Fourth Superseding Indictment filed (which did not include a count 8 for dft Juan Briseno).

18:1959(a)(1) MURDER IN AID
OF RACKETEERING ACTIVITY,
18:2 AIDING AND ABETTING
AND 18:3591 AND 3592 SPECIAL
FINDINGS
(8ss)

Fourth Superseding Indictment filed (which did not include a count 8 for dft Juan Briseno).

18:924(c) AND 924(j) MURDER
RESULTING FROM USE AND
CARRYING OF FIREARM
DURING AND IN RELATION TO
A CRIME OF VIOLENCE , 18:2
AIDING AND ABETTING AND
18:3591 AND 3592 DEATH
PENALTY
(9s)

Fourth Superseding Indictment filed.

Fourth Superseding Indictment filed.

6

18:924( c) AND 924(j) MURDER
RESULTING FROM THE USE
AND CARRYING OF FIREARM
DURING AND IN RELATION TO
A CRIME OF VIOLENCE, 18:2
AIDING AND ABETTING AND
18:3591 AND 3592 SPECIAL
FINDINGS
(9ss)

18:1959(a)(1) MURDER IN AID
OF RACKETEERING ACTIVITY,
18:2 AIDING AND ABETTING
AND 18:3591 AND 3592 SPECIAL
FINDINGS
(10ss)

Fourth Superseding Indictment filed. (Motion to
Dismiss Count 10 filed by the Govt).

18:924(c) AND 924(j) MURDER
RESULTING FROM USE AND
CARRYING OF FIREARM
DURING AND IN RELATION TO
A CRIME OF VIOLENCE , 18:2
AIDING AND ABETTING AND
18:3591 AND 3592 SPECIAL
FINDINGS
(10ssss)

Motion for dismissal of counts 10, 14, 16, 18, 20
and 22 of the Fourth Superseding Indictment is
GRANTED by the Court as to Juan Briseno.

18:924( c) AND 924(j) MURDER
RESULTING FROM THE USE
AND CARRYING OF FIREARM
DURING AND IN RELATION TO
A CRIME OF VIOLENCE 18:2
AIDING AND ABETTING AND
18:3591 AND 3592 SPECIAL
FINDINGS
(11ss)

Fourth Superseding Indictment filed (which did
not include a count 11 for dft Juan Briseno).

18:1959(a)(1) MURDER IN AID
OF RACKETEERING ACTIVITY,
18:2 AIDING AND ABETTING
(11sss)

Fourth Superseding Indictment filed (which did
not include a count 11 for dft Juan Briseno).

18:924(c) AND 924(j) MURDER
RESULTING FROM USE AND
CARRYING OF FIREARM
DURING AND IN RELATION TO
A CRIME OF VIOLENCE , 18:2
AIDING AND ABETTING
(12sss)

Fourth Superseding Indictment filed (which did
not include a count 12 for dft Juan Briseno).

18:1959(a)(1) MURDER IN AID
OF RACKETEERING ACTIVITY,
18:2 AIDING AND ABETTING
AND 18:3591 AND 3592 DEATH
PENALTY

Fourth Superseding Indictment filed.

7

(13s)

18:924(c) AND 924(j) MURDER RESULTING FROM USE AND CARRYING OF FIREARM DURING AND IN RELATION TO A CRIME OF VIOLENCE , 18:2 AIDING AND ABETTING AND 18:3591 AND 3592 DEATH PENALTY
(14s)

4th Superseding Indictment filed. (Motion for dismissal of count 14 fld by the Govt).

18:924(c) AND 924(j) MURDER RESULTING FROM USE AND CARRYING OF FIREARM DURING AND IN RELATION TO A CRIME OF VIOLENCE , 18:2 AIDING AND ABETTING AND 18:3591 AND 3592 SPECIAL FINDINGS
(14ssss)

Motion for dismissal of counts 10, 14, 16, 18, 20 and 22 of the Fourth Superseding Indictment is GRANTED by the Court as to Juan Briseno.

18:1959(a)(1) MURDER IN AID OF RACKETEERING ACTIVITY, 18:2 AIDING AND ABETTING AND
(15ss)

Fourth Superseding Indictment filed.

18:1959(a)(1) MURDER IN AID OF RACKETEERING ACTIVITY, 18:2 AIDING AND ABETTING
(15sss)

Fourth Superseding Indictment filed.

18:924( c) AND 924(j) MURDER RESULTING FROM THE USE AND CARRYING OF FIREARM DURING AND IN RELATION TO A CRIME OF VIOLENCE, 18:2 AIDING AND ABETTING
(16ss)

4th Superseding Indictment filed. (Motion to Dismiss count 16 filed by the Govt).

18:924(c) AND 924(j) MURDER RESULTING FROM USE AND CARRYING OF FIREARM DURING AND IN RELATION TO A CRIME OF VIOLENCE , 18:2 AIDING AND ABETTING
(16sss)

4th Superseding Indictment filed. (Motion to Dismiss count 16 filed by the Govt).

18:924(c) AND 924(j) MURDER RESULTING FROM USE AND CARRYING OF FIREARM DURING AND IN RELATION TO A CRIME OF VIOLENCE , 18:2 AIDING AND ABETTING AND 18:3591 AND 3592 SPECIAL

Motion for dismissal of counts 10, 14, 16, 18, 20 and 22 of the Fourth Superseding Indictment is GRANTED by the Court as to Juan Briseno.

| | |
|---|---|
| FINDINGS<br>(16ssss) | |
| 18:1959(a)(1) MURDER IN AID OF RACKETEERING ACTIVITY, 18:2 AIDING AND ABETTING (17sss) | Fourth Superseding Indictment filed (which did not include a count 17 for dft Juan Briseno). |
| 18:1959(a)(1) MURDER IN AID OF RACKETEERING ACTIVITY, 18:2 AIDING AND ABETTING AND 18:3591 AND 3592 SPECIAL FINDINGS (17ssss) | Fourth Superseding Indictment filed (which did not include a count 17 for dft Juan Briseno). |
| 18:1959(a)(5) ATTEMPTED MURDER IN AID OF RACKETEERING ACTIVITY, 18:2 AIDING AND ABETTING AND 18:3591 AND 3592 SPECIAL FINDINGS (18ss) | 4th Superseding Indictment filed. (Motion to Dismiss count 18 filed by the Govt). |
| 18:924(c) AND 924(j) MURDER RESULTING FROM USE AND CARRYING OF FIREARM DURING AND IN RELATION TO A CRIME OF VIOLENCE , 18:2 AIDING AND ABETTING AND 18:3591 AND 3592 SPECIAL FINDINGS (18sss) | 4th Superseding Indictment filed. (Motion to Dismiss count 18 filed by the Govt). |
| 18:924(c) AND 924(j) MURDER RESULTING FROM USE AND CARRYING OF FIREARM DURING AND IN RELATION TO A CRIME OF VIOLENCE , 18:2 AIDING AND ABETTING AND 18:3591 AND 3592 SPECIAL FINDINGS (18ssss) | Motion for dismissal of counts 10, 14, 16, 18, 20 and 22 of the Fourth Superseding Indictment is GRANTED by the Court as to Juan Briseno. |
| 18:924(c) USE OF FIREARM DURING AND IN RELATION TO A FEDERAL CRIME OF VIOLENCE AND 18:2 AIDING AND ABETTING (19ss) | Fourth Superseding Indictment filed. |
| 18:1959(a)(1) MURDER IN AID OF RACKETEERING ACTIVITY, 18:2 AIDING AND ABETTING (19sss) | Fourth Superseding Indictment filed. |

9

18:924(c) AND 924(j) MURDER RESULTING FROM USE AND CARRYING OF FIREARM DURING AND IN RELATION TO A CRIME OF VIOLENCE , 18:2 AIDING AND ABETTING
(20sss)

4th Superseding Indictment filed. (Motion to Dismiss count 20 filed by the Govt).

18:924(c) AND 924(j) MURDER RESULTING FROM USE AND CARRYING OF FIREARM DURING AND IN RELATION TO A CRIME OF VIOLENCE , 18:2 AIDING AND ABETTING AND 18:3591 AND 3592 SPECIAL FINDINGS
(20ssss)

Motion for dismissal of counts 10, 14, 16, 18, 20 and 22 of the Fourth Superseding Indictment is GRANTED by the Court as to Juan Briseno.

18:1959(a)(1) MURDER IN AID OF RACKETEERING ACTIVITY, 18:2 AIDING AND ABETTING
(21sss)

Fourth Superseding Indictment filed.

18:924(c) AND 924(j) MURDER RESULTING FROM USE AND CARRYING OF FIREARM DURING AND IN RELATION TO A CRIME OF VIOLENCE , 18:2 AIDING AND ABETTING
(22sss)

4th Superseding Indictment filed. (Motion to Dismiss count 22 filed by the Govt).

18:924(c) AND 924(j) MURDER RESULTING FROM USE AND CARRYING OF FIREARM DURING AND IN RELATION TO A CRIME OF VIOLENCE , 18:2 AIDING AND ABETTING AND 18:3591 AND 3592 SPECIAL FINDINGS
(22ssss)

Motion for dismissal of counts 10, 14, 16, 18, 20 and 22 of the Fourth Superseding Indictment is GRANTED by the Court as to Juan Briseno.

18:1959(a)(1) MURDER IN AID OF RACKETEERING ACTIVITY, 18:2 AIDING AND ABETTING
(23sss)

Fourth Superseding Indictment filed.

18:924(c) AND 924(j) MURDER RESULTING FROM USE AND CARRYING OF FIREARM DURING AND IN RELATION TO A CRIME OF VIOLENCE , 18:2 AIDING AND ABETTING
(24sss)

Fourth Superseding Indictment filed.

18:1959(a)(5) ATTEMPTED MURDER IN AID OF

DISMISSED by the Court upon Motion for Jdgmt of Acquital at trial as to Juan Briseno.

| | |
|---|---|
| RACKETEERING ACTIVITY AND 18:2 AIDING AND ABETTING (25ssss) | |
| 21:846 CONSPIRACY TO DISTRIBUTE MARIJUANA (26ss) | Fourth Superseding Indictment filed (which did not include a count 26 for dft Juan Briseno). |
| 18:1959(a)(5) ATTEMPTED MURDER IN AID OF RACKETEERING ACTIVITY, 18:2 AIDING AND ABETTING (26sss) | Fourth Superseding Indictment filed (which did not include a count 26 for dft Juan Briseno). |
| 18:924(c) USE OF FIREARM DURING AND IN RELATION TO A CRIME OF VIOLENCE AND 18:2 AIDING AND ABETTING (26ssss) | DISMISSED by the Court upon Motion for Jdgmt of Acquital at trial as to Juan Briseno. |
| 18:924(c) USE OF FIREARM DURING AND IN RELATION TO A FEDERAL CRIME OF VIOLENCE AND DRUG TRAFFICING CRIME AND 18:2 AIDING AND ABETTING (27sss) | Fourth Superseding Indictment filed (which did not include a count 27 for dft Juan Briseno). |
| 18:1959(a)(5) ATTEMPTED MURDER IN AID OF RACKETEERING ACTIVITY AND 18:2 AIDING AND ABETTING (27ssss) | Fourth Superseding Indictment filed (which did not include a count 27 for dft Juan Briseno). |
| 18:1959(a)(5) ATTEMPTED MURDER IN AID OF RACKETEERING ACTIVITY, 18:2 AIDING AND ABETTING (28sss) | Fourth Superseding Indictment filed (which did not include a count 28 for dft Juan Briseno). |
| 18:924(c) USE OF FIREARM DURING AND IN RELATION TO A CRIME OF VIOLENCE AND 18:2 AIDING AND ABETTING (28ssss) | Fourth Superseding Indictment filed (which did not include a count 28 for dft Juan Briseno). |
| 18:924(c) USE OF FIREARM DURING AND IN RELATION TO A FEDERAL CRIME OF VIOLENCE AND DRUG TRAFFICING CRIME AND 18:2 AIDING AND ABETTING (29sss) | Fourth Superseding Indictment filed (which did not include a count 29 for dft Juan Briseno). |

| | |
|---|---|
| 18:1959(a)(5) ATTEMPTED MURDER IN AID OF RACKETEERING ACTIVITY AND 18:2 AIDING AND ABETTING (29ssss) | Fourth Superseding Indictment filed (which did not include a count 29 for dft Juan Briseno). |
| 18:1959(a)(5) ATTEMPTED MURDER IN AID OF RACKETEERING ACTIVITY, 18:2 AIDING AND ABETTING (30sss) | Fourth Superseding Indictment filed (which did not include a count 30 for dft Juan Briseno). |
| 18:924(c) USE OF FIREARM DURING AND IN RELATION TO A CRIME OF VIOLENCE AND 18:2 AIDING AND ABETTING (30ssss) | Fourth Superseding Indictment filed (which did not include a count 30 for dft Juan Briseno). |
| 18:924(c) USE OF FIREARM DURING AND IN RELATION TO A FEDERAL CRIME OF VIOLENCE AND DRUG TRAFFICING CRIME AND 18:2 AIDING AND ABETTING (31sss) | Fourth Superseding Indictment filed (which did not include a count 31 for dft Juan Briseno). |
| 18:1959(a)(5) ATTEMPTED MURDER IN AID OF RACKETEERING ACTIVITY AND 18:2 AIDING AND ABETTING (34sss) | Fourth Superseding Indictment filed (which did not include a count 34 for dft Juan Briseno). |
| 18:924(c) USE OF FIREARM DURING AND IN RELATION TO A FEDERAL CRIME OF VIOLENCE AND 18:2 AIDING AND ABETTING (35sss) | Fourth Superseding Indictment filed (which did not include a count 35 for dft Juan Briseno). |

**Highest Offense Level
(Terminated)**

Felony

| **Complaints** | **Disposition** |
|---|---|
| None | |

---

**Plaintiff**

| | | |
|---|---|---|
| **United States of America** | represented by | **Jennifer S Chang – AUSA** US Attorney's Office – Ham/IN |

12

5400 Federal Plz Ste 1500
Hammond, IN 46320
219–937–5500
Fax: 219–852–2770
Email: jennifer.chang@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Government Attorney*

**Bruce R Hegyi – AUSA**
1331 F Street NW
Third Floor
Washington, DC 20530
202–616–4582
Email: bruce.hegyi@usdoj.gov
*ATTORNEY TO BE NOTICED*
*Designation: Government Attorney*

**David J Nozick – AUSA**
US Attorney's Office – Ham/IN
5400 Federal Plz Ste 1500
Hammond, IN 46320
219–937–5500
Fax: 219–852–2770
Email: David.Nozick@usdoj.gov
*ATTORNEY TO BE NOTICED*
*Designation: Government Attorney*

**Dean R Lanter – AUSA**
US Attorney's Office – Ham/IN
5400 Federal Plz Ste 1500
Hammond, IN 46320
219–937–5500
Fax: 219–852–2770
Email: dean.lanter@usdoj.gov
*ATTORNEY TO BE NOTICED*
*Designation: Government Attorney*

| Date Filed | # | Page | Docket Text |
|---|---|---|---|
| 06/02/2011 | 1 | 90 | (UNSEALED in open court DE 5) SEALED INDICTMENT as to Juan Briseno (1) count(s) 1, 2. (mc) (plm). Modified on 6/24/2011 (plm) to attach indictment. (Entered: 06/02/2011) |
| 06/20/2011 | 3 | 100 | NOTICE OF HEARING as to Juan Briseno regarding 1 Indictment. Initial Appearance set for 6/24/2011 10:30 AM in US District Court – Hammond before Magistrate Judge Andrew P Rodovich. US Marshal to produce Dft for hearing. (plm) (Entered: 06/20/2011) |
| 06/24/2011 | 4 | 101 | Arrest Warrant Returned Executed on 6/24/11 in case as to Juan Briseno. (mc) (mc). (Entered: 06/24/2011) |
| 06/24/2011 | | 102 | Arrest of Juan Briseno (plm) (Entered: 06/24/2011) |

| 06/24/2011 | | 103 | Judge update in case as to Juan Briseno. Magistrate Judge Andrew P Rodovich added., Case unsealed as to Juan Briseno (plm) (Entered: 06/24/2011) |
|---|---|---|---|
| 06/24/2011 | 5 | 104 | INITIAL APPEARANCE as to Juan Briseno held on 6/24/2011 before Magistrate Judge Andrew P Rodovich. Govt appeared by AUSA Jacqueline Jacobs. Dft appeared w/o Atty. Jerry Navarra appeared on behalf of U S Probation/Pretrial Services. Govt moves to unseal case. Granted. Case unsealed. Dft advised of rights, charges, penalties. Dft requests court–appointed counsel. Dft sworn re financial status. Request granted. Clerk to notify FCD to appoint counsel. Govt moves for detention. Granted. Detention Hearing/Arraignment set for 6/29/2011 02:30 PM in US District Court – Hammond before Magistrate Judge Andrew P Rodovich. Dft REMANDED to USM. (Digitally Recorded.) (plm) (Entered: 06/24/2011) |
| 06/24/2011 | 6 | 105 | CJA 20 as to Juan Briseno: Appointment of Attorney Arlington J Foley for Juan Briseno by Magistrate Judge Andrew P Rodovich on 6/24/11. (plm) (Entered: 06/29/2011) |
| 06/29/2011 | 7 | 106 | (Scheduled as DETENTION HEARING) and ARRAIGNMENT as to Juan Briseno (1) Count 1,2 held on 6/29/2011 before Magistrate Judge Andrew P Rodovich. Govt appeared by AUSA David Nozick. Dft appeared with atty Arlington Foley. Jerry Navarra appeared on behalf of U S Probation/Pretrial Services. Dft stipulates to detention–waiving hearing w/o prejudice. Dft ORDERED held w/o bond pending trial. Court addresses death penalty eligibility. Court directs Atty Foley to obtain learned counsel to assist him in this matter. Atty Foley will let court know as soon as he can. Govt states discovery is voluminous. Rule 16 Discovery due by 7/22/2011. Parties and court find that due to complexity of charges and volume of discovery time is waived under the Speedy Trial Act from now until the next status. Status Conference set for 10/14/2011 10:00 AM in US District Court – Hammond before Magistrate Judge Andrew P Rodovich. Dft waives reading of formal charges and enters a plea of not guilty. Dft REMANDED to USM. (Digitally Recorded.) (plm) (Entered: 06/29/2011) |
| 06/29/2011 | 97 | 184 | CJA 30: Appointment of Attorney Arlington Foley for Juan Briseno in Death Penalty Proceedings as to Juan Briseno. Approved by Magistrate Judge Andrew P Rodovich on 6/29/11. (plm) (Entered: 11/29/2011) |
| 07/01/2011 | 8 | 108 | ORDER as to Juan Briseno : Pursuant to 18 U.S.C. §3005, John Maksimovich is appointed learned co–counsel for Juan Briseno. Signed by Magistrate Judge Andrew P Rodovich on 7/1/11. (mc) (Entered: 07/01/2011) |
| 07/01/2011 | 96 | 182 | CJA 30: Appointment of Attorney John Maksimovich for Juan Briseno in Death Penalty Proceedings as to Juan Briseno. Approved by Magistrate Judge Andrew P Rodovich on 7/1/11. (plm) (Entered: 11/29/2011) |
| 08/19/2011 | 9 | 109 | NOTICE OF MANUAL FILING of Defendant's Sealed Motion by Juan Briseno (Foley, Arlington) (Entered: 08/19/2011) |
| 09/01/2011 | 12 | 110 | MOTION for Court Order Pursuant to Criminal Rule 16 by Juan Briseno. (Foley, Arlington) (Entered: 09/01/2011) |
| 09/08/2011 | 13 | 114 | ORDER granting 11 Sealed Motion as to Juan Briseno (1). Signed by Chief Judge Philip P Simon on 9/8/11. (mc) (Entered: 09/08/2011) |
| 09/16/2011 | 14 | 117 | |

14

| | | | |
|---|---|---|---|
| | | | RESPONSE to Motion by United States of America as to Juan Briseno re 12 MOTION for Court Order Pursuant to Criminal Rule 16 (Nozick – AUSA, David) (Entered: 09/16/2011) |
| 09/16/2011 | 15 | 120 | NOTICE OF MANUAL FILING of SEALED DOCUMENT by United States of America as to Juan Briseno re 14 Response to Motion (Nozick – AUSA, David) (Entered: 09/16/2011) |
| 09/26/2011 | 18 | 121 | ORDER denying 12 Motion for Court Order Pursuant to Criminal Rule 16 as to Juan Briseno (1). Signed by Andrew Rodovich on 9/26/11. (mc) Modified on 10/7/2011 to correct Judge(mc). (Entered: 09/27/2011) |
| 10/14/2011 | 20 | 122 | STATUS CONFERENCE as to Juan Briseno held on 10/14/2011 before Magistrate Judge Andrew P Rodovich. Govt appeared by AUSA David Nozick. Dft appeared with attys Arlington Foley and John Maksimovich. Court addresses the death penalty eligibility with Govt. Govt requests a 30–day extension to address such w/excludability for speedy trial. No objection by counsel. Granted. Court finds that due to the complexity of case and the potential for the dealth penalty being given that a trial date will not be given at this time and another status will be set. Status Conference set for 11/17/2011 01:00 PM in US District Court – Hammond before Magistrate Judge Andrew P Rodovich. Dft REMANDED to USM. (Digitally Recorded.) (plm) (Entered: 10/18/2011) |
| 11/02/2011 | 21 | 124 | NOTICE OF MANUAL FILING of by Juan Briseno (Maksimovich, John) (Entered: 11/02/2011) |
| 11/02/2011 | 22 | 125 | NOTICE OF MANUAL FILING of by Juan Briseno (Maksimovich, John) (Entered: 11/02/2011) |
| 11/03/2011 | | 126 | Case sealed. (mc) (Entered: 11/04/2011) |
| 11/03/2011 | 27 | 127 | (UNSEALED 11/7/11) SUPERSEDING INDICTMENT as to Juan Briseno (1) count(s) 1s, 2s, 3s, 4s, 5s, 6s, 7s, 8s, 9s, 13s, 14s, Galo Benjamin Feliciano (2) count(s) 1, 8, 9, 11, 12, 15, 16, Guillermo Briseno (3) count(s) 1, Alejandro Balboa Lara (4) count(s) 1, 19–20, Justin Weaver (5) count(s) 1, Michael Anthony Castillo (6) count(s) 1, Kelvin Jefferson Beltran (7) count(s) 1, David Almaraz (8) count(s) 1, Joseph Rene Torres (9) count(s) 1, 11, 12, Jason Medina (10) count(s) 1, 17, 18, Edward Raye Serna (11) count(s) 1, 17, 18, Alejandro Briseno (12) count(s) 10. (mc) (mc). (Entered: 11/04/2011) |
| 11/07/2011 | | 168 | Case unsealed as to Juan Briseno, Galo Benjamin Feliciano, Guillermo Briseno, Alejandro Balboa Lara, Justin Weaver, Michael Anthony Castillo, Kelvin Jefferson Beltran, David Almaraz, Joseph Rene Torres, Jason Medina, Edward Raye Serna, Alejandro Briseno (mc) (Entered: 11/07/2011) |
| 11/08/2011 | 49 | 170 | NOTICE OF HEARING as to Juan Briseno regarding 27 . Arraignment on Superseding Indictment set for 11/17/2011 01:00 PM in US District Court – Hammond before Magistrate Judge Andrew P Rodovich. US Marshal to produce Dft for hearing. (plm) (Entered: 11/08/2011) |
| 11/09/2011 | 50 | 172 | Arrest Warrant Returned Executed on 8/25/10 in case as to Juan Briseno. (subject already in custody) (mc) (Entered: 11/09/2011) |
| 11/10/2011 | 61 | 173 | NOTICE OF HEARING as to Juan Briseno regarding 49 . Arraignment REset for 11/21/2011 01:30 PM in US District Court – Hammond before Magistrate Judge Andrew P Rodovich. USM to produce Dft to hearing. This change of date and |

15

| | | | |
|---|---|---|---|
| | | | time is on court's own motion. (plm) (Entered: 11/10/2011) |
| 11/10/2011 | | 175 | Terminate Deadlines and Hearings as to Juan Briseno: Status conference date of 11/17/2011 is VACATED. (plm) (Entered: 11/10/2011) |
| 11/18/2011 | 73 | 177 | NOTICE OF HEARING as to Juan Briseno regarding 61 . Arraignment REset for 11/21/2011 02:30 PM in US District Court – Hammond before Magistrate Judge Andrew P Rodovich due to conflict. PLEASE NOTE: Change in time only. (plm) (Entered: 11/18/2011) |
| 11/21/2011 | 78 | 179 | ATTORNEY APPEARANCE Dean R Lanter – AUSA appearing for USA. (Lanter – AUSA, Dean) (Entered: 11/21/2011) |
| 11/21/2011 | 79 | 180 | ARRAIGNMENT as to Juan Briseno (1) on Count 2s,3s,4s,5s,6s,7s,8s,9s,13s,14s of Superseding Indictment held on 11/21/2011 before Magistrate Judge Andrew P Rodovich. Govt appeared by AUSA David Nozick. Dft appeared with attys Arlington Foley and John Maksimovich. Dft waives reading of charges and enters a plea of NOT GUILTY. Additional Discovery from Govt is due by 1/31/2012. Court finds that due to the complex discovery and in the interest of justice Dft's rights under the Speedy Trial Act are waived from now until the status conference date. Dft states he has knowingly and voluntarily waived his rights. Status Conference set for 4/19/2012 01:30 PM in US District Court – Hammond before Magistrate Judge Andrew P Rodovich. Dft REMANDED to USM. (Digitally Recorded.) (plm) (Entered: 11/21/2011) |
| 11/30/2011 | 102 | 186 | ORDER granting 23 Motion to Seal as to Juan Briseno (1). Signed by Magistrate Judge Andrew P Rodovich on 11/30/11. (mc) (Entered: 12/01/2011) |
| 11/30/2011 | 103 | | SEALING ORDER granting 25 Motion to Seal as to Juan Briseno (1). Signed by Magistrate Judge Andrew P Rodovich on 11/30/11. (mc) (Entered: 12/01/2011) |
| 12/19/2011 | 104 | 189 | MOTION for Protective Order by United States of America as to Juan Briseno, Galo Benjamin Feliciano, Guillermo Briseno, Alejandro Balboa Lara, Justin Weaver, Michael Anthony Castillo, Kelvin Jefferson Beltran, David Almaraz, Joseph Rene Torres, Jason Medina, Edward Raye Serna, Alejandro Briseno. (Nozick – AUSA, David) (Entered: 12/19/2011) |
| 12/21/2011 | 105 | 193 | NOTICE OF MANUAL FILING of by Juan Briseno (Maksimovich, John) (Entered: 12/21/2011) |
| 12/21/2011 | 106 | | MOTION to Seal by Juan Briseno. (mc) (Entered: 12/21/2011) |
| 12/21/2011 | 107 | | SEALED DOCUMENT by Juan Briseno. (mc) (Entered: 12/21/2011) |
| 01/10/2012 | 109 | 194 | NOTICE OF HEARING as to Juan Briseno, Galo Benjamin Feliciano, Joseph Rene Torres. Status Conference (re budget) set for 1/19/2012 02:00 PM in chambers of Magistrate Judge Andrew P Rodovich. Defense counsel only. (plm) (Entered: 01/10/2012) |
| 01/17/2012 | 110 | 197 | ORDER denying 104 Motion for Protective Order as to Juan Briseno (1), Galo Benjamin Feliciano (2), Guillermo Briseno (3), Alejandro Balboa Lara (4), Justin Weaver (5), Michael Anthony Castillo (6), Kelvin Jefferson Beltran (7), David Almaraz (8), Joseph Rene Torres (9), Jason Medina (10), Edward Raye Serna (11), Alejandro Briseno (12). Signed by Magistrate Judge Andrew P Rodovich on 1/17/12. (mc) (Entered: 01/18/2012) |

16

| 02/01/2012 | 118 |  | SEALED ORDER as to Juan Briseno GRANTING 24 Sealed Document. Signed by Magistrate Judge Andrew P Rodovich on 2/1/12. (mc) (Entered: 02/02/2012) |
|---|---|---|---|
| 03/23/2012 | 140 | 201 | NOTICE OF MANUAL FILING of Defendant's Sealed Motion by Juan Briseno (Foley, Arlington) (Entered: 03/23/2012) |
| 03/23/2012 | 141 |  | MOTION to Seal by Juan Briseno. (mc) (Entered: 03/23/2012) |
| 03/29/2012 | 145 | 202 | MOTION to Continue *Status Conference* by Juan Briseno. (Foley, Arlington) (Entered: 03/29/2012) |
| 04/05/2012 | 150 | 204 | ORDER finding moot 106 Motion to Seal as to Juan Briseno (1). Approved by Magistrate Judge Andrew P Rodovich on 4/5/12. No pdf attached. (plm) (Entered: 04/05/2012) |
| 04/05/2012 | 151 | 206 | SECOND SUPERSEDING INDICTMENT as to Juan Briseno (1) count(s) 1ss, 4ss, 5ss, 6ss, 7ss, 8ss, 9ss, 10ss, 11ss, 15ss, 16ss, 18ss, 19ss, 26ss, Galo Benjamin Feliciano (2) count(s) 1s, 2s, 3s, 10s, 11s, 13s, 14s, 17s, 20s, 21s, 26s, Guillermo Briseno (3) count(s) 1s, 26s, Justin Weaver (5) count(s) 1s, 26s, Michael Anthony Castillo (6) count(s) 1s, 26s, David Almaraz (8) count(s) 1s, 26s, Joseph Rene Torres (9) count(s) 1s, 13s, 14s, 26s, Jason Medina (10) count(s) 1s, 22s, 23s, 26s, Edward Raye Serna (11) count(s) 1s, 22s, 23s, 26s, Alejandro Briseno (12) count(s) 12s, Robert Lockhart (13) count(s) 1, 26, Armando Jose Velasquez (14) count(s) 1, 24, 25, 26, Anthony Baldazo (15) count(s) 1, 2, 3, 17, 26. (mc) (mc). (Entered: 04/06/2012) |
| 04/11/2012 |  | 258 | Case unsealed as to Juan Briseno, Galo Benjamin Feliciano, Guillermo Briseno, Alejandro Balboa Lara, Justin Weaver, Michael Anthony Castillo, Kelvin Jefferson Beltran, David Almaraz, Joseph Rene Torres, Jason Medina, Edward Raye Serna, Alejandro Briseno, Robert Lockhart, Armando Jose Velasquez, Anthony Baldazo (plm) (Entered: 04/11/2012) |
| 04/12/2012 | 172 | 260 | ORDER granting 145 Motion to Continue as to Juan Briseno only (1). Arraignment set for 4/27/2012 08:45 AM in US District Court – Hammond before Magistrate Judge Andrew P Rodovich. Status Conference REset for 4/27/2012 08:45 AM in US District Court – Hammond before Magistrate Judge Andrew P Rodovich. USM to produce Dft for hearing.Signed by Magistrate Judge Andrew P Rodovich on 4/12/12. (plm) (Entered: 04/12/2012) |
| 04/25/2012 | 209 | 261 | ORDER: (text order only) GRANTING 141 Motion to Seal as to Juan Briseno (1). Oral Order by Chief Judge Philip P Simon on 4/25/2012. (nac). (Entered: 04/25/2012) |
| 04/27/2012 | 211 | 263 | STATUS/ARRAIGNMENT (2nd superseding indictment) as to Juan Briseno (1) Count 1ss, 4ss, 5ss, 6ss, 7ss, 8ss,9ss, 10ss, 11ss, 15ss, 16ss, 18ss, 19ss, 26ss held on 4/27/2012 before Magistrate Judge Andrew P Rodovich. Govt appeared by atty David Nozick. Dft appeared with attys Arlington Foley and John Maksimovich. Dft WAIVES reading of indictment and enters a plea of NOT GUILTY. Trial date/ddls set.Pretrial Motions due by 7/31/2012. Attorneys Foley and Maksimovich designated as lead counsel. Joint Supplemental motions due 8/17/2012. Govt response due by 9/28/2012. Jury Trial (7–8 weeks) set for 1/22/2013 08:30 AM in US District Court – Hammond before Chief Judge Philip P Simon., Final Pretrial Conference set for 1/2/2013 01:00 PM in US District Court – Hammond before Magistrate Judge Andrew P Rodovich.) All 404B, Santiago proffer, Rule 609 deadlines will be set at the Final Pretrial Conference. |

| | | | Court finds due to complexity of case that Dfts' rights under the speedy trial act are waived from this date until date set for trial. Defendant REMANDED to custody of US Marshal.(Digitally Recorded) (plm) (Entered: 04/27/2012) |
|---|---|---|---|
| 05/11/2012 | <u>218</u> | 265 | MEMORANDUM in Support of 212 MOTION to Sever Defendant by Guillermo Briseno as to Juan Briseno, Galo Benjamin Feliciano, Guillermo Briseno, Alejandro Balboa Lara, Justin Weaver, Michael Anthony Castillo, Kelvin Jefferson Beltran, David Almaraz, Joseph Rene Torres, Jason Medina, Edward Raye Serna, Alejandro Briseno, Robert Lockhart, Armando Jose Velasquez, Anthony Baldazo (Scheele, Stephen) (Entered: 05/11/2012) |
| 05/11/2012 | <u>220</u> | 272 | RESPONSE in Opposition by United States of America as to Juan Briseno, Galo Benjamin Feliciano, Guillermo Briseno, Alejandro Balboa Lara, Justin Weaver, Michael Anthony Castillo, Kelvin Jefferson Beltran, David Almaraz, Joseph Rene Torres, Jason Medina, Edward Raye Serna, Alejandro Briseno, Robert Lockhart, Armando Jose Velasquez, Anthony Baldazo re 213 MOTION to Sever Defendant *Memorandum in Support*, 212 MOTION to Sever Defendant *Guillermo Briseno* (Lanter – AUSA, Dean) (Entered: 05/11/2012) |
| 07/30/2012 | <u>262</u> | 283 | MOTION for Additional Time to File Pretrial Motions by Juan Briseno. (Foley, Arlington) (Entered: 07/30/2012) |
| 08/13/2012 | <u>268</u> | 285 | ORDER granting <u>262</u> Motion for Additional Time To File Pretrial Motions as to Juan Briseno (1). Pretrial Motions due by 9/14/2012. Signed by Magistrate Judge Andrew P Rodovich on 8/13/12. (mc) (Entered: 08/13/2012) |
| 09/13/2012 | <u>279</u> | 286 | MOTION for Extension of Time to File *Pretrial Motions* by Juan Briseno. (Foley, Arlington) (Entered: 09/13/2012) |
| 10/18/2012 | <u>301</u> | 288 | ORDER granting <u>279</u> Motion for Extension of Time to File as to Juan Briseno (1) Pretrial Motions due by 12/1/2012.. Signed by Magistrate Judge Andrew P Rodovich on 10/18/12. (mc) (Entered: 10/18/2012) |
| 10/29/2012 | <u>308</u> | 290 | MOTION to Continue *Jury Trial* by Juan Briseno. (Foley, Arlington) (Entered: 10/29/2012) |
| 11/07/2012 | <u>309</u> | 292 | UNSEALED THIRD SUPERSEDING INDICTMENT as to Juan Briseno (1) count(s) 1sss, 2sss, 11sss, 12sss, 15sss, 16sss, 17sss, 18sss, 19sss, 20sss, 21sss, 22sss, 23sss, 24sss, 26sss, 27sss, 28sss, 29sss, 30sss, 31sss, 34sss, 35sss, Justin Weaver (5) count(s) 1ss, 2ss, Michael Anthony Castillo (6) count(s) 1ss, 2ss, Jason Medina (10) count(s) 1ss, 2ss, 5ss, 6ss, 36ss, 37ss, Edward Raye Serna (11) count(s) 1ss, 2ss, 36ss, 37ss, Robert Lockhart (13) count(s) 1s, 2s, Armando Jose Velasquez (14) count(s) 1s, 2s, 38s, 39s, Anthony Baldazo (15) count(s) 1s, 2s, 7s, 8s, 25s, Salvador Chavez (16) count(s) 1, 2, Raymond Campos (17) count(s) 1, 2, Ace Cortez (18) count(s) 1, 2, 3, 4, Julian Guillermo Serna (19) count(s) 1, 2, 13, 14, 40, 41, Julius Solis (20) count(s) 1, 2, 32, 33, Darmaile Cortez Sutton (21) count(s) 1, 2, Eddie Torres (22) count(s) 1, 2, Richard Reyes (23) count(s) 1, 2, 9, 10. (mc) (mc). Modified on 11/9/2012 (mc). (Entered: 11/07/2012) |
| 11/09/2012 | <u>327</u> | 364 | ORDER granting 326 Motion to Unseal the ThirdSuperseding Indictment. Signed by Chief Judge Philip P Simon on 11/9/12. (mc) (Entered: 11/09/2012) |
| 11/09/2012 | | 365 | Case unsealed as to Juan Briseno, Galo Benjamin Feliciano, Guillermo Briseno, Alejandro Balboa Lara, Justin Weaver, Michael Anthony Castillo, Kelvin Jefferson Beltran, David Almaraz, Joseph Rene Torres, Jason Medina, Edward |

18

| | | | Raye Serna, Alejandro Briseno, Robert Lockhart, Armando Jose Velasquez, Anthony Baldazo, Salvador Chavez, Raymond Campos, Ace Cortez, Julian Guillermo Serna, Julius Solis, Darmaile Cortez Sutton, Eddie Torres, Richard Reyes (mc) (Entered: 11/09/2012) |
|---|---|---|---|
| 11/14/2012 | 338 | 367 | Arrest Warrant Returned Executed on 2/7/11 in case as to Juan Briseno. (mc) (Entered: 11/14/2012) |
| 11/16/2012 | 355 | 368 | NOTICE OF HEARING/DEADLINES as to Juan Briseno, Justin Weaver, Michael Anthony Castillo, Jason Medina regarding 309 Third Superseding Indictment. Arraignment set for 11/20/2012 09:00 AM in US District Court – Hammond before Magistrate Judge Andrew P Rodovich. USM to produce Dft for hearing.(plm) (Entered: 11/16/2012) |
| 11/20/2012 | 360 | 373 | ARRAIGNMENT on Third Superseding Indictment as to Juan Briseno (1) Count 1sss,2sss,11sss,12sss,15sss,16sss,17sss,18sss,19sss,20sss,21sss,22sss,23sss,24sss, 26sss,27sss,28sss,29sss,30sss,31sss,34sss,35sss held on 11/20/2012 before Magistrate Judge Andrew P Rodovich. Govt appeared by AUSA David Nozick. Dft appeared with attys Arlington Foley and John Maksimovich. Dft waives reading of formal charges and enters a plea of not guilty. Govt states some additional discovery. Dft states additional motions to be filed. Deadlines as follows: Non–Death Penalty motions due 1/4/2013. Government Response due by 2/15/2013. New trial date will be set. Defendant REMANDED to custody of US Marshal.(Tape #Digitally Recorded.) (plm) (Entered: 11/20/2012) |
| 12/13/2012 | 410 | 375 | MOTION To Transfer by Juan Briseno. (Maksimovich, John) (Entered: 12/13/2012) |
| 12/18/2012 | 419 | 379 | ORDER denying WITHOUT PREJUDICE 410 Motion to Transfer as to Juan Briseno (1). Defendant is DIRECTED to address this matter with the United States Marshal Service. Signed by Magistrate Judge Andrew P Rodovich on 12/18/12. (mc) (Entered: 12/18/2012) |
| 12/18/2012 | 420 | 380 | MOTION in Letter format by Juan Briseno to Chief Judge Philip P. Simon requesting new counsel. (nac) (Entered: 12/18/2012) |
| 12/21/2012 | 423 | 383 | NOTICE OF HEARING/DEADLINES as to Juan Briseno regarding 420 MOTION to Disqualify Counsel. Motion Hearing set for 1/9/2013 01:00 PM in US District Court – Hammond before Magistrate Judge Andrew P Rodovich. USM to produce Dft for hearing. (plm) (Entered: 12/21/2012) |
| 12/27/2012 | 425 | 386 | ORDER granting Motion to Continue and Resetting Dates as to Juan Briseno, Michael Anthony Castillo, Jason Medina, Edward Raye Serna by Magistrate Judge Andrew P Rodovich on 12/27/12. Discovery deadline is 1/31/2013. Government Response Brief due by 4/30/2013. Pretrial Motions due by 4/1/2013. Jury Trial (primary setting) set for 10/21/2013 08:30 AM in US District Court – Hammond before Chief Judge Philip P Simon. Final Pretrial Conference set for 9/20/2013 01:00 PM in US District Court – Hammond before Magistrate Judge Andrew P Rodovich. (plm) (Entered: 12/27/2012) |
| 01/09/2013 | 441 | 387 | MOTION HEARING as to Juan Briseno held on 1/9/2013 re 420 MOTION to Disqualify Counsel filed by Juan Briseno before Magistrate Judge Andrew P Rodovich. Govt appeared by AUSA David Nozick. Dft appeared with attys Arlington Foley and John Maksimovich. Court addresses motion w/attys. Attys and Dft have resolved issues. Dft moves to withdraw motion. Court denied the |

19

| | | | |
|---|---|---|---|
| | | | motion. Attys Foley and Maksimovich will remain of record. Defendant REMANDED to custody of US Marshal.(Tape #FTR Gold.) (plm) (Entered: 01/09/2013) |
| 03/06/2013 | 503 | 390 | NOTICE *of Intent to Seek the Death Penalty Pursuant to Title 18, United States Code, Section 3593* by United States of America as to Juan Briseno (Nozick – AUSA, David) (Entered: 03/06/2013) |
| 03/14/2013 | 510 | 405 | NOTICE OF MANUAL FILING of Request For Advance Authorization To Incur Mitigation Specialist Expense, Investigative Expense, Expert Expense, and Other Services Expense In Excess of the Maximum Allowed By Title 18 USC Sec 3599(g) to Be Filed Under Seal by Juan Briseno (Maksimovich, John) (Entered: 03/14/2013) |
| 03/15/2013 | 511 | | MOTION to Seal by Juan Briseno. (mc) (Entered: 03/15/2013) |
| 03/18/2013 | 514 | | ORDER granting 511 Motion to Seal as to Juan Briseno (1). Signed by Chief Judge Philip P Simon on 3/18/13. (mc) (Entered: 03/19/2013) |
| 03/21/2013 | 517 | 406 | NOTICE OF MANUAL FILING of by Juan Briseno (Maksimovich, John) (Entered: 03/21/2013) |
| 03/22/2013 | 519 | 407 | MOTION for Extension of Time to File *Pretrial Motions* by Juan Briseno. (Foley, Arlington) (Entered: 03/22/2013) |
| 03/22/2013 | 520 | 409 | ORDER granting 519 Motion for Extension of Time to File as to Juan Briseno. Pretrial Motions due by 6/30/2013. Signed by Magistrate Judge Andrew P Rodovich on 3/22/2013. (rmn) (Entered: 03/22/2013) |
| 03/22/2013 | 525 | | MOTION to Seal re 517 by Juan Briseno. (mc) (Entered: 03/25/2013) |
| 03/22/2013 | 526 | | SEALED MOTION re 517 by Juan Briseno. (mc) (Entered: 03/25/2013) |
| 03/29/2013 | 534 | | ORDER granting 525 Motion to Seal as to Juan Briseno (1). Signed by Chief Judge Philip P Simon on 3/29/13. (mc) (Entered: 04/01/2013) |
| 04/11/2013 | 551 | 410 | STATUS CONFERENCE now scheduled for 5/29/2013 at 10:45 a.m. before Chief Judge Philip P. Simon in U.S. District Court – Hammond. Individual defendants are NOT required to appear. The U.S. Marshal shall not produce any dfts for this hearing. Only counsel for those defendants who have not pleaded guilty shall be required to appear. (nac) (Entered: 04/11/2013) |
| 04/12/2013 | 552 | 438 | NOTICE OF HEARING – STATUS CONFERENCE: The Status Conference previously scheduled for 5/29/2013 is now RESET for 4/22/2013 at 01:00 PM (Central/Hammond time) in US District Court – Hammond before Chief Judge Philip P Simon. Only counsel for those defendants who have not pleaded guilty are required to attend. The USM is not required to produce any dfts for this hearing. (nac) (Entered: 04/12/2013) |
| 04/22/2013 | 558 | 466 | ORDER : The government shall file any additional notices of intent to seek the death penalty pursuant to 18 U.S.C. §3593(a) no later than 8/1/2013. Any motions to continue the current October 21, 2013 trial setting are to be filed by 5/22/2013. An in–person Status Conference is set for 8/29/2013 01:00 PM CST. in US District Court – Hammond before Chief Judge Philip P Simon. Individual defendants are not required to appear and the U.S. Marshal shall not produce any defendants for this conference. Only counsel for the government and for |

20

| | | | |
|---|---|---|---|
| | | | defendants who have not entered pleas of guilty are required to appear. Signed by Chief Judge Philip P Simon on 4/22/13. (mc) (Entered: 04/23/2013) |
| 04/22/2013 | 559 | 467 | HEARING as to Juan Briseno, Michael Anthony Castillo, Jason Medina, Edward Raye Serna, Armando Jose Velasquez, Salvador Chavez, Raymond Campos, Ace Cortez, Julian Guillermo Serna, Julius Solis, Darmaile Cortez Sutton, Richard Reyes held on 4/22/2013 before Chief Judge Philip P Simon. Only counsel for the above dfts were required to appear for this hearing (Arlington Foley, John Maksimovich, Catherine Lake, Scott King (by telephone) Gojko Kasich, John Theis, Kerry Connor, James Thiros, Jack Friedlander, Bryan Truit and Sheldon Nagelberg are all in attendance). Govt present by David Nozick, AUSA and Bruce R. Hegyi of U.S. Dept of Justice, Capital Case Unit. All counsel agree that the case is so complex that the trial date of 10/21/2013 is not reasonable. Court allows 30 days for counsel to file a motion to continue the trial date. Any response/objection to be filed within 14 days. Govt allowed 12 weeks to obtain the decision and advise the Court as to any additional dfts facing death penalty. Presently the Govt is awaiting decision from Washington DC. Brief discussions on suppression motions, 3500 material, estimate of number of dfts for trial, length of trial (8 weeks), possible trial for capital dfts and non−capital dfts which would be 8 weeks for each trial. Status Conference now set for August 29, 2013 at 1:00 pm. Cnsl only to appear in person and only those attys whose clients are pending trial need to appear for this hearing. (Court Reporter Sharon Boleck−Mroz.) (nac) (Entered: 04/23/2013) |
| 04/23/2013 | 560 | 482 | NOTICE OF HEARING: STATUS CONFERENCE to be held August 29, 2013 at 01:00 PM in US District Court − Hammond before Chief Judge Philip P Simon. The U.S. Marshal does not need to produce any dfts for this hearing. Only counsel whose clients are pending trial shall appear in person at this hearing. (nac) (Entered: 04/23/2013) |
| 05/01/2013 | 562 | 510 | ORDER Defendant Richard Reyes has filed a motion to sever his trial from that of his co−defendants [DE 557]. During a status hearing on April 22, 2013, I ordered the Government to file any additional notices of intent to seek the death penalty pursuant to 18 U.S.C. §3593(a) no later than August 1, 2013 [DE 558]. At the April 22 status hearing, I also informed the parties that I did not intend to establish further deadlines until the Government files its notices of intent to seek the death penalty. Therefore, I will GRANT the Government's Motion for Extension of Time to Respond to Defendant's Motion to Sever in part [DE 561]. Rather than set the deadline for the Government's response to Reyes' motion at this time, I will set a briefing schedule after August 1, 2013.. Signed by Chief Judge Philip P Simon on 5/1/13. (kw) (Entered: 05/01/2013) |
| 05/07/2013 | 565 | 538 | ORDER granting 564 Motion to Withdraw as Attorney. Matthew D Soliday − FCD withdrawn from case as to Joseph Rene Torres (9). Signed by Magistrate Judge Andrew P Rodovich on 5/7/13. (lh) (Entered: 05/07/2013) |
| 05/07/2013 | | 566 | Attorney update in case as to Joseph Rene Torres: Atty David Vandercoy added. (lh) (Entered: 05/07/2013) |
| 05/16/2013 | 568 | 593 | ATTORNEY APPEARANCE Bruce R Hegyi − AUSA appearing for USA. *Trial Attorney/DOJ/Capital Case Unit* (Hegyi − AUSA, Bruce) (Entered: 05/16/2013) |
| 06/05/2013 | 581 | 594 | RESPONSE to Motion by United States of America as to Juan Briseno, Galo Benjamin Feliciano, Michael Anthony Castillo, David Almaraz, Joseph Rene |

21

| | | | |
|---|---|---|---|
| | | | Torres, Jason Medina, Edward Raye Serna, Armando Jose Velasquez, Anthony Baldazo, Salvador Chavez, Raymond Campos, Ace Cortez, Julian Guillermo Serna, Julius Solis, Darmaile Cortez Sutton, Eddie Torres, Richard Reyes re 573 MOTION to Continue *Jury Trial by defendant Juan Briseno* (Hegyi – AUSA, Bruce) (Entered: 06/05/2013) |
| 06/24/2013 | 587 | 598 | MOTION to Withdraw Document 573 MOTION to Continue *Jury Trial* by Juan Briseno. (Foley, Arlington) (Entered: 06/24/2013) |
| 06/25/2013 | 588 | 599 | ORDER granting 587 Motion to Withdraw as to Juan Briseno (1); denying as moot 573 Motion to Continue as to Juan Briseno (1). Trial in this case remains set to begin October 21, 2013. Signed by Chief Judge Philip P Simon on 6/25/13. (mc) (Entered: 06/25/2013) |
| 07/03/2013 | | 600 | Terminate Deadlines and Hearings as to Juan Briseno, Galo Benjamin Feliciano, Guillermo Briseno, Alejandro Balboa Lara, Justin Weaver, Michael Anthony Castillo, Kelvin Jefferson Beltran, David Almaraz, Joseph Rene Torres, Jason Medina, Edward Raye Serna, Alejandro Briseno, Robert Lockhart, Armando Jose Velasquez, Anthony Baldazo, Salvador Chavez, Raymond Campos, Ace Cortez, Julian Guillermo Serna, Julius Solis, Darmaile Cortez Sutton, Eddie Torres, Richard Reyes: (nac) Modified on 7/3/2013 to indicate that the STATUS CONFERENCE HEARING PREVIOUSLY SCHEDULED FOR 8/29/2013 is NOW VACATED AND RESET TO 7/11/2013 AT 1:00 P.M. (Entered: 07/03/2013) |
| 07/03/2013 | 592 | 629 | NOTICE OF HEARING/DEADLINES as to Juan Briseno, Galo Benjamin Feliciano, Guillermo Briseno, Alejandro Balboa Lara, Justin Weaver, Michael Anthony Castillo, Kelvin Jefferson Beltran, David Almaraz, Joseph Rene Torres, Jason Medina, Edward Raye Serna, Alejandro Briseno, Robert Lockhart, Armando Jose Velasquez, Anthony Baldazo, Salvador Chavez, Raymond Campos, Ace Cortez, Julian Guillermo Serna, Julius Solis, Darmaile Cortez Sutton, Eddie Torres, Richard Reyes. The Status Conference previously scheduled for 8/29/2013 is now VACATED and RESET for 7/11/2013 at 1:00 p.m (Central/Hammond time) in US District Court – Hammond before Chief Judge Philip P Simon. Only counsel for those defendants who have not pleaded guilty are required to attend. The U.S. Marshal is not required to produce any dfts for this hearing. (nac) (Entered: 07/03/2013) |
| 07/03/2013 | 594 | 658 | MOTION to Continue *Status Conference Date* by United States of America as to Juan Briseno, Galo Benjamin Feliciano, Guillermo Briseno, Alejandro Balboa Lara, Justin Weaver, Michael Anthony Castillo, Kelvin Jefferson Beltran, David Almaraz, Joseph Rene Torres, Jason Medina, Edward Raye Serna, Alejandro Briseno, Robert Lockhart, Armando Jose Velasquez, Anthony Baldazo, Salvador Chavez, Raymond Campos, Ace Cortez, Julian Guillermo Serna, Julius Solis, Darmaile Cortez Sutton, Eddie Torres, Richard Reyes. (Nozick – AUSA, David) (Entered: 07/03/2013) |
| 07/08/2013 | 595 | 661 | ORDER GRANTING MOTION 594 to Continue Status Conference originally scheduled for 7/11/2013. The Status Conference is now RESET for 7/18/2013 02:00 PM in US District Court – Hammond before Chief Judge Philip P Simon. Only counsel for those defendants who have not pleaded guilty are required to attend. The U.S. Marshal is not required to produce any dfts for this hearing. Approved by Chief Judge Philip P Simon on 7/8/2013. (Text order only, no pdf attached). (nac) Modified on 7/11/2013 to correct error in grammar. (nac). |

22

| | | | |
|---|---|---|---|
| | | | (Entered: 07/08/2013) |
| 07/08/2013 | 596 | 689 | NOTICE OF HEARING as to Juan Briseno only: A HEARING/STATUS CONFERENCE for dft Juan Briseno only is now scheduled for 7/18/2013 at 1:00 p.m. in US District Court – Hammond before Chief Judge Philip P Simon. Dft Juan Briseno shall appear in person along with his counsel and cnsl for the Govt. The U.S. Marshal shall produce dft Juan Briseno for this hearing/status conference. (nac) (Entered: 07/08/2013) |
| 07/08/2013 | 597 | 692 | NOTICE OF HEARING as to Galo Benjamin Feliciano, Guillermo Briseno, Alejandro Balboa Lara, Justin Weaver, Michael Anthony Castillo, Kelvin Jefferson Beltran, David Almaraz, Joseph Rene Torres, Jason Medina, Edward Raye Serna, Alejandro Briseno, Robert Lockhart, Armando Jose Velasquez, Anthony Baldazo, Salvador Chavez, Raymond Campos, Ace Cortez, Julian Guillermo Serna, Julius Solis, Darmaile Cortez Sutton, Eddie Torres, Richard Reyes. A STATUS CONFERENCE is now set for 7/18/2013 02:00 PM in US District Court – Hammond before Chief Judge Philip P Simon. ONLY COUNSEL FOR THOSE DEFENDANTS WHO HAVE NOT PLEADED GUILTY ARE REQUIRED TO ATTEND. The U.S. Marshal is not required to produce any dfts for this hearing. (Note: a Status Conference will be held for dft Juan Briseno this same date at 1:00 p.m. The U.S. Marshal will be required to produce dft Juan Briseno for this hearing before Judge Simon on 7/18/2013 at 1:00 p.m.). (nac) (Entered: 07/08/2013) |
| 07/18/2013 | 601 | 753 | STATUS CONFERENCE held before Chief Judge Philip P. Simon as to: Raymond Campos, Richard Reyes, Ace Cortez, Salvador Chavez, Michael Castillo, Julian Guillermo Serna, Jason Medina, Edward Raye Serna, Julius Solis and Armando Jose Vasquez. Attorneys present: Catherine Lake, Jack Friedlander, John Theis, Gojko Kasich, Scott King (appearing for his clients as well as on behalf of James Thiros), Bryan Truitt and Sheldon Nagelberg. Govt present by AUSAs David Nozick and Bruce R. Hegyi. (Note: although attys Arlington Foley and John Maksimovich appear for the hearing specific to their client (Juan Briseno), held this same date, they also are in attendance at this hearing. Note that only counsel were required to attend this hearing, no dfts were present. Court sets deadlines for the case (see order entered 7/19/2013). Court hears comments from attorneys regarding the status of the case, potential for one or two trials, suppression motions and Jencks matters. Information provided to the Court from AUSA Bruce Hegyi as to the particulars in the selection of a jury panel in these types of cases based on his experience. (Court Reporter Sharon Boleck−Mroz.) (nac) Modified on 7/22/2013 to clarify attendance information.(nac). (Entered: 07/22/2013) |
| 07/18/2013 | 602 | 781 | STATUS CONFERENCE as to Juan Briseno held on 7/18/2013 before Chief Judge Philip P Simon. Govt appeared by attys Bruce R. Hegyi and David J. Nozick. Dft Juan Briseno present in person and by counsel Arlington Foley and John Maksimovich. Brief discussions on the following: possibility of 4th Superseding Indictment, jury trial scheduling, the need for additional time for the trial of dft Juan Briseno. Dft Juan Briseno is placed under oath to answer Court inquiry regarding a continuance of the trial setting. The dft advises the Court that he now agrees to a continuance of his trial. The Court suggests a trial date in April 2014 would be reasonable. Counsel have no objections to a trial date in April 2014. Court sets deadlines in case (see Court's order of 7/19/2013). Currently, 11 dfts remain in case for trial, with dft Juan Briseno being the only dft facing capital |

| | | | |
|---|---|---|---|
| | | | issues. Defendant REMANDED to custody of US Marshal.(Court Reporter Sharon Boleck–Mroz.) (nac) Modified on 7/22/2013 to clarify attendance. (nac). (Entered: 07/22/2013) |
| 07/19/2013 | 600 | 720 | ORDER: Juan Briseno is ORDERED to file, no later than July 29, 2013, a motion to continue the trial date. Objections to the motion for continuance must be filed no later than August 8, 2013. Motions for severance must be filed by August 9, 2013. The Governments responses are due on or before August 30, 2013, and replies are due by September 13, 2013. For all defendants other than Juan Briseno, motions to suppress evidence must be filed by August 9, 2013. The Governments responses are due on or before August 30, 2013, and replies are due by September 13, 2013. Any motion to suppress by defendant Juan Briseno must be filed on or before September 27, 2013. The Governments response is due on or before October 18, 2013, and Brisenos reply, if any, is due November 1, 2013. Signed by Chief Judge Philip P Simon on 7/19/13. (mc) (Entered: 07/19/2013) |
| 07/19/2013 | | 722 | Set Deadlines as all dfts : any motions for severance due by 8/9/2013; Government Response due by 8/30/2013; Defendant Reply due by 9/13/2013.(mc) (Entered: 07/19/2013) |
| 07/19/2013 | | 750 | Set Deadlines as to Juan Briseno: Any motion to suppress due by 9/27/2013; Government Response Brief due by 10/18/2013; Defendant Reply Brief due by 11/1/2013. (mc) (Entered: 07/19/2013) |
| 07/24/2013 | 603 | 784 | MOTION to Continue *Jury Trial* by Juan Briseno. (Foley, Arlington) (Entered: 07/24/2013) |
| 08/09/2013 | 610 | 786 | MOTION to Sever Defendant *Juan Briseno From Non–Capital Co–Defendants* by Juan Briseno. (Maksimovich, John) (Entered: 08/09/2013) |
| 08/09/2013 | 611 | 817 | MOTION *To Permit Attorney Conducted Voir Dire Pursuant to Principles Required By Furman v. Georgia and Its Progeny* by Juan Briseno. (Attachments: # 1 Supplement Memorandum In Support)(Maksimovich, John) (Entered: 08/09/2013) |
| 08/30/2013 | 626 | 853 | RESPONSE in Opposition by United States of America as to Juan Briseno, Galo Benjamin Feliciano, Guillermo Briseno, Alejandro Balboa Lara, Justin Weaver, Michael Anthony Castillo, Kelvin Jefferson Beltran, David Almaraz, Joseph Rene Torres, Jason Medina, Edward Raye Serna, Alejandro Briseno, Robert Lockhart, Armando Jose Velasquez, Anthony Baldazo, Salvador Chavez, Raymond Campos, Ace Cortez, Julian Guillermo Serna, Julius Solis, Darmaile Cortez Sutton, Eddie Torres, Richard Reyes re 616 MOTION to Sever Defendant , 610 MOTION to Sever Defendant *Juan Briseno From Non–Capital Co–Defendants*, 608 MOTION to Sever Defendant *with Memorandum* MOTION for Bill of Particulars *with Memorandum*, 606 MOTION Renewed and Continued Demand for Trial, Objection to Trial Continuance, and Motion to Sever *Omnibus Opposition to Motions to Sever By Defendants Briseno, Reyes, Chavez, Medina & Edward Serna* (Attachments: # 1 Exhibit)(Hegyi – AUSA, Bruce) (Entered: 08/30/2013) |
| 09/09/2013 | 632 | 907 | ORDER granting 610 Motion to Sever Defendant from Non–Capital Co–Defendants as to Juan Briseno (1). The Court is GRANTING the following Motions to the extent that they seek severance from Briseno and DENYING to the extent they seek any further severance from other defendants: 616 Motion to Sever Defendant as to Jason Medina (10) and Edward Raye Serna (11); 608 Motion to Sever Defendant as to Salvador Chavez (16); 557 and 606 Motion to Sever |

24

| | | | |
|---|---|---|---|
| | | | Defendant as to Richard Reyes (23). Signed by Chief Judge Philip P Simon on 9/9/13. (mc) (Entered: 09/09/2013) |
| 09/09/2013 | 633 | 916 | ORDER granting 603 Motion to Continue as to Juan Briseno (1). Jury Trial set for 4/7/2014 08:30 AM in US District Court – Hammond before Chief Judge Philip P Simon. The trial as to all other remaining defendants remains set on October 21, 2013. Signed by Chief Judge Philip P Simon on 9/9/13. (mc) (Entered: 09/09/2013) |
| 09/10/2013 | 635 | 918 | NOTICE OF HEARING as to Juan Briseno only: Final Pretrial Conference set for 3/7/2014 10:00 AM in US District Court – Hammond before Chief Judge Philip P Simon. (nac) (Entered: 09/10/2013) |
| 09/18/2013 | 652 | 923 | SEALED INDICTMENT as to Juan Briseno (1) count(s) 1ssss, 2ssss, 9ssss, 10ssss, 13ssss, 14ssss, 15ssss, 16ssss, 17ssss, 18ssss, 19ssss, 20ssss, 21ssss, 22ssss, 23ssss, 24ssss, 25ssss, 26ssss, 27ssss, 28ssss, 29ssss, 30ssss, Jason Medina (10) count(s) 1sss, 2sss, 5sss, 6sss, 31sss, 32sss, Edward Raye Serna (11) count(s) 1sss, 2sss, 31sss, 32sss, Armando Jose Velasquez (14) count(s) 1ss, 2ss, 33ss, 34ss, Salvador Chavez (16) count(s) 1s, 2s, Ace Cortez (18) count(s) 1s, 2s, 3s, 4s, Julian Guillermo Serna (19) count(s) 1s, 2s, 11s, 12s, 35s, 36s, Richard Reyes (23) count(s) 1s, 2s, 7s, 8s, Vincent Garza (24) count(s) 1, 2, 13, 14, 15, 16. (mc) (Entered: 09/19/2013) |
| 09/19/2013 | | 921 | Terminate Deadlines and Hearings as to Juan Briseno, Galo Benjamin Feliciano, Guillermo Briseno, Alejandro Balboa Lara, Justin Weaver, Michael Anthony Castillo, Kelvin Jefferson Beltran, David Almaraz, Joseph Rene Torres, Jason Medina, Edward Raye Serna, Alejandro Briseno, Robert Lockhart, Armando Jose Velasquez, Anthony Baldazo, Salvador Chavez, Raymond Campos, Ace Cortez, Julian Guillermo Serna, Julius Solis, Darmaile Cortez Sutton, Eddie Torres, Richard Reyes, Vincent Garza: Final Pretrial Conference set for 9/20/2013 VACATED. To be reset under separate order. (lh) (Entered: 09/19/2013) |
| 09/19/2013 | | 987 | Case unsealed (mc) (Entered: 09/19/2013) |
| 09/19/2013 | 663 | 989 | ORDER CANCELLING DEADLINE as to Juan Briseno, Galo Benjamin Feliciano, Guillermo Briseno, Alejandro Balboa Lara, Justin Weaver, Michael Anthony Castillo, Kelvin Jefferson Beltran, David Almaraz, Joseph Rene Torres, Jason Medina, Edward Raye Serna, Alejandro Briseno, Robert Lockhart, Armando Jose Velasquez, Anthony Baldazo, Salvador Chavez, Raymond Campos, Ace Cortez, Julian Guillermo Serna, Julius Solis, Darmaile Cortez Sutton, Eddie Torres, Richard Reyes, Vincent Garza. Final Pretrial Conference set for 9/20/2013 01:00 PM in US District Court – Hammond before Magistrate Judge Andrew P Rodovich VACATED. Entry created to notify parties. Approved by Magistrate Judge Andrew P Rodovich on 9/19/13. (lh) (Entered: 09/19/2013) |
| 09/19/2013 | | 1018 | Terminate Hearing as to Juan Briseno, Galo Benjamin Feliciano, Guillermo Briseno, Alejandro Balboa Lara, Justin Weaver, Michael Anthony Castillo, Kelvin Jefferson Beltran, David Almaraz, Joseph Rene Torres, Jason Medina, Edward Raye Serna, Alejandro Briseno, Robert Lockhart, Armando Jose Velasquez, Anthony Baldazo, Salvador Chavez, Raymond Campos, Ace Cortez, Julian Guillermo Serna, Julius Solis, Darmaile Cortez Sutton, Eddie Torres, Richard Reyes, Vincent Garza: Final Pretrial Conference set 9/20/2013 VACATED per 663 Order (jld) (Entered: 09/20/2013) |
| 09/20/2013 | 672 | 1047 | |

25

| | | | Arrest Warrant Returned Executed in case as to Juan Briseno (subject already in custody). (mc) (Entered: 09/20/2013) |
|---|---|---|---|
| 09/27/2013 | 682 | 1048 | MOTION for Extension of Time to File *Motions to Suppress* by Juan Briseno. (Foley, Arlington) (Entered: 09/27/2013) |
| 09/30/2013 | 683 | 1050 | ORDER granting 682 Motion for Extension of Time to File motion to suppress as to Juan Briseno (1). Any motion to suppress by Juan Briseno must be filed on or before November 18, 2013. Defendant Reply Brief due by 12/23/2013. Government Response Brief due by 12/9/2013. Signed by Chief Judge Philip P Simon on 9/30/13. (mc) (Entered: 09/30/2013) |
| 10/09/2013 | | 1051 | Terminate Deadlines and Hearings (12/13/2013 FPTC) (mc) (Entered: 10/09/2013) |
| 10/11/2013 | 702 | 1080 | NOTICE OF HEARING/DEADLINES as to Juan Briseno regarding 652 Superseding Indictment. Arraignment set for 10/23/2013 11:00 AM in US District Court – Hammond before Magistrate Judge Andrew P Rodovich. (lh) (Entered: 10/11/2013) |
| 10/23/2013 | 711 | 1083 | ARRAIGNMENT as to Juan Briseno (1) Count 1ssss,2ssss,9ssss,10ssss,13ssss,14ssss,15ssss,16ssss,17ssss,18ssss,19ssss,20ssss, 21ssss,22ssss,23ssss,24ssss,25ssss,26ssss,27ssss,28ssss,29ssss,30ssss held on 10/23/2013 before Magistrate Judge Andrew P Rodovich. Govt appeared by AUSA David Nozick. Dft appeared w/ atty Arlington Foley. Dft waives reading of formal charges and enters a plea of not guilty. Govt states some additional discovery to be turned over by 10/31/2013. Defendant REMANDED to custody of US Marshal.(Tape #FTR Gold.) (lh) (Entered: 10/23/2013) |
| 10/28/2013 | 717 | 1086 | MOTION for Disclosure *of Specific Informants and Related Information* by Juan Briseno. (Maksimovich, John) (Entered: 10/28/2013) |
| 10/28/2013 | 718 | 1098 | MOTION for Disclosure *of Scientific / Forensic Testing and Results* by Juan Briseno. (Maksimovich, John) (Entered: 10/28/2013) |
| 11/15/2013 | 722 | 1101 | MOTION for Extension of Time to File *Motions to Suppress* by Juan Briseno. (Foley, Arlington) (Entered: 11/15/2013) |
| 11/21/2013 | 723 | 1103 | MOTION for Extension of Time to File *Santiago Proffer and 404(b) Notice* by United States of America as to Juan Briseno, Galo Benjamin Feliciano, Michael Anthony Castillo, David Almaraz, Joseph Rene Torres, Jason Medina, Edward Raye Serna, Armando Jose Velasquez, Anthony Baldazo, Salvador Chavez, Raymond Campos, Ace Cortez, Julian Guillermo Serna, Julius Solis, Eddie Torres, Richard Reyes, Vincent Garza. (Nozick – AUSA, David) (Entered: 11/21/2013) |
| 11/21/2013 | 724 | 1106 | NOTICE OF HEARING as to all remaining defendants other than Juan Briseno: Final Pretrial Conference RESET for 12/4/2013 01:30 PM in US District Court – Hammond before Chief Judge Philip P Simon. The previous Final Pretrial Conference setting before Magistrate Judge Rodovich is VACATED from the court calendar.(nac) (Entered: 11/21/2013) |
| 11/22/2013 | | 1135 | Set/Reset Deadlines as to Juan Briseno: Government Response Brief to Dft's Mts for Disclosure[DE 717 & 718] due by 12/3/2013. (lh) (Entered: 11/22/2013) |
| 11/22/2013 | 726 | 1138 | |

26

| | | | |
|---|---|---|---|
| | | | ORDER granting 722 Motion for Extension of Time to File as to Juan Briseno (1). Ct to set new ddl in separate order. Signed by Magistrate Judge Andrew P Rodovich on 11/22/13. (lh) (Entered: 11/22/2013) |
| 11/22/2013 | 730 | 1141 | ORDER granting 723 Motion for Extension of Time to File Santiago Proffer and 404(b) Notice as to all remaining defendants: Juan Briseno (1), Galo Benjamin Feliciano (2), Michael Anthony Castillo (6), David Almaraz (8), Joseph Rene Torres (9), Jason Medina (10), Edward Raye Serna (11), Armando Jose Velasquez (14), Anthony Baldazo (15), Salvador Chavez (16), Raymond Campos (17), Ace Cortez (18), Julian Guillermo Serna (19), Julius Solis (20), Eddie Torres (22), Richard Reyes (23), Vincent Garza (24). The government is GRANTED an extension up to and including November 26, 2013 to file its Santiago Proffer and Notice of Intent to Rely on 404(b) Evidence. Signed by Magistrate Judge Andrew P Rodovich on 11/22/13. (mc) (Entered: 11/22/2013) |
| 11/22/2013 | | 1142 | Set/Reset Deadlines: Santiago Proffer and Notice of Intent to Rely on 404(b) Evidence due by 11/26/2013. (mc) (Entered: 11/22/2013) |
| 11/26/2013 | 732 | 1163 | NOTICE *of Intent to Introduce Enterprise Evidence* by United States of America as to Juan Briseno, Galo Benjamin Feliciano, Michael Anthony Castillo, David Almaraz, Joseph Rene Torres, Jason Medina, Edward Raye Serna, Armando Jose Velasquez, Anthony Baldazo, Salvador Chavez, Raymond Campos, Ace Cortez, Julian Guillermo Serna, Julius Solis, Eddie Torres, Richard Reyes, Vincent Garza (Nozick – AUSA, David) (Entered: 11/26/2013) |
| 11/26/2013 | 733 | 1180 | SANTIAGO PROFFER by United States of America as to Juan Briseno, Galo Benjamin Feliciano, Michael Anthony Castillo, David Almaraz, Joseph Rene Torres, Jason Medina, Edward Raye Serna, Armando Jose Velasquez, Anthony Baldazo, Salvador Chavez, Raymond Campos, Ace Cortez, Julian Guillermo Serna, Julius Solis, Eddie Torres, Richard Reyes, Vincent Garza (Nozick – AUSA, David) (Entered: 11/26/2013) |
| 12/03/2013 | 734 | 1222 | RESPONSE to Motion by United States of America as to Juan Briseno re 718 MOTION for Disclosure *of Scientific / Forensic Testing and Results* (Nozick – AUSA, David) (Entered: 12/03/2013) |
| 12/03/2013 | 735 | 1225 | RESPONSE to Motion by United States of America as to Juan Briseno re 717 MOTION for Disclosure *of Specific Informants and Related Information* (Nozick – AUSA, David) (Entered: 12/03/2013) |
| 12/16/2013 | 751 | 1231 | Proposed Voir Dire by United States of America as to Juan Briseno, Galo Benjamin Feliciano, Michael Anthony Castillo, David Almaraz, Joseph Rene Torres, Jason Medina, Edward Raye Serna, Armando Jose Velasquez, Anthony Baldazo, Salvador Chavez, Raymond Campos, Ace Cortez, Julian Guillermo Serna, Julius Solis, Eddie Torres, Richard Reyes, Vincent Garza (Nozick – AUSA, David) (Entered: 12/16/2013) |
| 12/31/2013 | 763 | | (SEALED) MOTION to Seal by Juan Briseno. (Maksimovich, John) (Entered: 12/31/2013) |
| 12/31/2013 | 764 | | (SEALED) MOTION to Seal Document, SEALED MOTION, (SEALED) MOTION to Seal by Juan Briseno. (Maksimovich, John) (Entered: 12/31/2013) |
| 01/03/2014 | 768 | 1244 | NOTICE OF HEARING as to Juan Briseno: Ex–Parte Hearing regarding 763 sealed motion now scheduled for hearing on: 1/10/2014 11:30 AM in US District |

| | | | |
|---|---|---|---|
| | | | Court – Hammond before Chief Judge Philip P Simon. Only counsel for the defendant need appear. (nac) (Entered: 01/03/2014) |
| 01/07/2014 | 775 | 1247 | NOTICE OF HEARING as to Juan Briseno: Ex–Parte Hearing now RESET for 1/10/2014 at 11:00 a.m. in U.S. District Court – Hammond before Chief Judge Philip P Simon. Please note that this is a change in time only. Only cnsl for dft Juan Briseno are required to appear. (nac) (Entered: 01/07/2014) |
| 01/09/2014 | 789 | | (SEALED) MOTION to Seal by Juan Briseno. (Maksimovich, John) (Entered: 01/09/2014) |
| 01/09/2014 | 790 | | SEALED MOTION by Juan Briseno. (Maksimovich, John) (Entered: 01/09/2014) |
| 01/09/2014 | 792 | | (SEALED) MOTION to Seal Document by Juan Briseno. (Foley, Arlington) (Entered: 01/09/2014) |
| 01/09/2014 | 793 | | SEALED MOTION by Juan Briseno. (Attachments: # 1 Exhibit Exhibit A, # 2 Exhibit Exhibit B)(Foley, Arlington) (Entered: 01/09/2014) |
| 01/31/2014 | 849 | 1250 | MOTION to Continue *Jury Trial* by Juan Briseno. (Foley, Arlington) (Entered: 01/31/2014) |
| 02/11/2014 | 876 | 1254 | NOTICE OF HEARING as to Juan Briseno: Motion Hearing (on the Motion to Continue Trial 849 ) now scheduled for 2/12/2014 09:30 AM (Central/Hammond time) in US District Court – Hammond before Chief Judge Philip P Simon. Atty Bruce Hegyi shall appear by phone, all other cnsl shall appear in person. Note to USM: defense cnsl has indicated that the dft's apperance is not necessary for this hearing.(nac) (Entered: 02/11/2014) |
| 02/12/2014 | | 1257 | Terminate Jury Trial date of April 7, 2014 for dft Juan Briseno. Ruling made by the Court at the hearing held on 2/12/2014. A new trial date will be entered by the Court at the next Status Hearing to be held in approximately two weeks. (nac) (Entered: 02/12/2014) |
| 02/12/2014 | 878 | 1260 | MOTION HEARING as to Juan Briseno held on 2/12/2014 re 849 MOTION to Continue *Jury Trial* filed by Juan Briseno before Chief Judge Philip P Simon. Govt present by attys David Nozick who appears in person and atty Bruce Hegyi who appears by telephone. Dft is represented by attys John Maksimovich and Arlington Foley and does not appear in person. Court hears from both sides as to the issues of the case related to the current trial date of 4/7/2014. The Court indicates that a Status Hearing will be held in this case approximately every two weeks from this point on. The next Status Hearing in this case is now scheduled for 2/28/2014 at 2:00 p.m. Discussion on potential time frames for the trial to take place. The Court GRANTS the Motion to Continue the Trial 849 without new date. The issue of the new trial date is taken under advisement by the Court until the Status Hearing scheduled for 2/28/2014. The Court ORDERS the U.S. Marshal to produce the dft for this hearing. Court hears from atty Bruce Hegyi as to projected lengths of time that the various stages of the trial may take, ie jury selection, guilt phase and penalty phase. Court Reporter Sharon Boleck–Mroz.) (nac) (Entered: 02/13/2014) |
| 02/13/2014 | 879 | 1263 | Letter to Chief Judge Philip P. Simon from Juan Briseno objecting to a continuane of his trial date of 4/7/2014. (nac) (Entered: 02/13/2014) |
| 02/14/2014 | 881 | 1266 | ORDER: The Final Pretrial Conference as to Juan Briseno previously scheduled for 3/7/2014 is now VACATED. (Text entry only, no pdf is attached). Approved |

| | | | |
|---|---|---|---|
| | | | by Chief Judge Philip P Simon on 2/14/2014. (nac) (Entered: 02/14/2014) |
| 02/21/2014 | 885 | 1269 | ORDER denying 717 Motion for Disclosure of Specific Informants and Related Information and 718 Motion for Disclosure of Scientific/Forensic Testing as to Juan Briseno (1). Signed by Magistrate Judge Andrew P Rodovich on 2/21/14. (mc) (Entered: 02/21/2014) |
| 02/28/2014 | 889 | 1274 | STATUS CONFERENCE as to Juan Briseno held on 2/28/2014 before Chief Judge Philip P Simon. (Note: portions of this hearing held under seal). Govt appeared by attys David J. Nozick and Bruce R. Hegyi. Dft was present in person and by cnsl Arlington Foley and John Maksimovich. Court cites a brief history of the case regarding the motion to continue trial that was filed by the defense on 1/31/2014 849 . At the last hearing the Court indicated that the trial would be continued however a new date was not yet selected. Defense cnsl makes an oral record as to why a continuance was requested. Further discussion is held with the Court regarding this matter without the Govt in attendance (Note: these discussions are the sealed portion of this hearing and the Govt re−enters the hearing after these discussions concluded). The Court hears from dft Juan Briseno after being sworn under oath. The dft indicates that he agrees to a continuance of the trial. Discussion had on the dft's present place of incarceration. Court to investigate this matter. Defense cnsl may file a motion after giving the Court sufficient time to investigate the circumstances of the dft's move to a different facility. Court continues the 4/7/2014 trial date. A new trial date will be entered by order. Additional status conferences with the parties will be scheduled periodically after the new trial date is entered. Defendant REMANDED to custody of US Marshal.(Court Reporter Sharon Boleck−Mroz.) (nac) (Entered: 03/04/2014) |
| 03/07/2014 | 892 | 1277 | SPEEDY TRIAL ORDER granting 849 Motion to Continue Jury Trial as to Juan Briseno (1). The trial of the case against defendant Juan Briseno is continued from April 7, 2014 and reset to begin Monday 1/12/2015 in US District Court – Hammond before Chief Judge Philip P Simon. Signed by Chief Judge Philip P Simon on 3/7/14. (mc) (Entered: 03/07/2014) |
| 03/12/2014 | 896 | 1279 | NOTICE *of Criminal Felony Conviction Under FRE 609* by United States of America as to Juan Briseno (Nozick – AUSA, David) (Entered: 03/12/2014) |
| 04/07/2014 | 911 | 1281 | ORDER as to Juan Briseno : Counsel are directed to confer so that no later than May 23, 2014, the parties shall file a joint proposed voir dire questionnaire. In addition, each party may file its own separate proposal of additional questions to which the opposing party would not agree. Signed by Chief Judge Philip P Simon on 4/7/14. (mc) (Entered: 04/07/2014) |
| 05/23/2014 | 932 | 1282 | Proposed Voir Dire by Juan Briseno (Maksimovich, John) (Entered: 05/23/2014) |
| 05/23/2014 | 933 | 1324 | NOTICE *of Filing* by United States of America as to Juan Briseno (Attachments: # 1 Exhibit Government's Proposed Juror Questionnaire)(Hegyi – AUSA, Bruce) (Entered: 05/23/2014) |
| 06/06/2014 | 943 | 1356 | MOTION Penalty Phase Mental Health Discovery & Firewall Counsel by United States of America as to Juan Briseno. (Attachments: # 1 Exhibit US v. Millner – Memorandum Opinion, # 2 Exhibit US v. Montgomery – Memorandum Opinion)(Hegyi – AUSA, Bruce) (Entered: 06/06/2014) |
| 06/06/2014 | 944 | 1402 | ORDER as to Juan Briseno: Proposed juror questionnaire due by 6/20/2014 with hearing finalize the juror questionnaire set for 6/30/2014 01:45 PM in US District |

| | | | |
|---|---|---|---|
| | | | Court – Hammond before Chief Judge Philip P Simon. The United States Marshal shall produce defendant Juan Briseno for the hearing. Signed by Chief Judge Philip P Simon on 6/6/14. cc: USMS (mc) (Entered: 06/06/2014) |
| 06/18/2014 | 955 | 1403 | NOTICE *of Joint Filling of Agreed Proposed Juror Questionnaire* by United States of America as to Juan Briseno (Attachments: # 1 Exhibit Agreed Proposed Juror Questionnaire)(Hegyi – AUSA, Bruce) (Entered: 06/18/2014) |
| 06/25/2014 | 963 | 1444 | SCHEDULING ORDER as to Juan Briseno. Signed by Chief Judge Philip P Simon on 6/25/2014. (rmn) (Entered: 06/25/2014) |
| 06/30/2014 | 966 | 1447 | AMENDED ORDER re 963 Scheduling Order as to Juan Briseno. Signed by Chief Judge Philip P Simon on 6/30/2014. (tc) (Entered: 07/01/2014) |
| 06/30/2014 | 969 | 1469 | HEARING as to Juan Briseno held on 6/30/2014 before Chief Judge Philip P. Simon. Govt present by AUSAs David Nozick and Bruce Hegyi. Dft Juan Briseno is present in person and by cnsl Arlington Foley and John Maksimovich. Discussion on proposed juror questionnaire. Court proposes revisions to which the parties have no objections. Discussion on hardship question. Brief discussion on two additional names to be added on page 30. These names were previously intentionally omitted due to security issues. The approximate number of potential jurors to be summoned are 300–400 persons. Parties have discussion on the adjustment of deadlines from the previous scheduling order entered by the court. The court will enter an amended order. Court reminds the parties that the trial date is firm – January 12, 2015. The Court continues to work out the details of the actual juror selection process and will issue an order regarding this. The parties will have an opportunity to submit objections to this plan. The court directs the Govt to clarify its Notice to Seek Death Penalty. The Court DENIES motion 943 as moot. Defendant REMANDED to custody of US Marshal.(Court Reporter Stacy Drohosky.) (nac) (Entered: 07/01/2014) |
| 07/01/2014 | 968 | 1451 | MOTION for Leave to File *Supplemental Notice of Intent to Seek Death Penalty* by United States of America as to Juan Briseno. (Attachments: # 1 Exhibit Supplemental Notice of Intent to Seek Death Penalty)(Hegyi – AUSA, Bruce) (Entered: 07/01/2014) |
| 07/01/2014 | 970 | 1472 | ORDER as to Juan Briseno re 969 Hearing : The Clerk shall prepare the attached Special Questionnaire for completion by prospective jurors to be summoned for service in the January 12, 2015 trial of Juan Briseno. Signed by Chief Judge Philip P Simon on 7/1/14. (Attachments: # 1 The Special Questionnaire) (mc) (Entered: 07/01/2014) |
| 07/11/2014 | | 1512 | Terminate Deadlines/Hearings as to case dfts: NOTE: ONLY PAST deadlines were terminated to clean up the docket sheet to show only the pending deadlines/hearings. (Entered: 07/11/2014) |
| 07/11/2014 | | 1541 | Terminate PAST Deadlines and Hearings as to all dfts. NOTE: no current deadlines or hearings were terminated. (nac) (Entered: 07/11/2014) |
| 07/11/2014 | 980 | 1570 | NOTICE *OF EXPERT WITNESSES* by United States of America as to Juan Briseno (Nozick – AUSA, David) (Entered: 07/11/2014) |
| 07/22/2014 | 995 | 1587 | ORDER granting 968 Motion for Leave to File a supplemental NOI as to Juan Briseno (1). The proposed Supplemental Notice of Intent to Seek the Penalty of Death Pursuant to Title 18 United States Code Section 3593 (attached as Exhibit 1 |

| | | | |
|---|---|---|---|
| | | | to DE 968) is DEEMED FILED. Signed by Chief Judge Philip P Simon on 7/22/14. (mc) (Entered: 07/22/2014) |
| 08/08/2014 | 1012 | 1590 | MOTION To Empanel Anonymous Jury by United States of America as to Juan Briseno. (Hegyi – AUSA, Bruce) (Entered: 08/08/2014) |
| 08/14/2014 | 1014 | 1612 | MOTION for Extension of Time to File *Motions Challenging the Death Penalty Act* by Juan Briseno. (Maksimovich, John) (Entered: 08/14/2014) |
| 08/15/2014 | 1016 | | (SEALED) MOTION to Seal Document by Juan Briseno. (Foley, Arlington) (Entered: 08/15/2014) |
| 08/15/2014 | 1017 | | SEALED MOTION by Juan Briseno. (Foley, Arlington) (Entered: 08/15/2014) |
| 08/18/2014 | 1018 | 1615 | ORDER granting 1014 Motion for Extension of Time to File as to Juan Briseno (1). Defendant Juan Briseno's pretrial motions challenging the Federal Death Penalty Act or the government's Notice of Intent to seek the death penalty due by 8/22/2014. Government responses due by 9/23/2014. Defendant's reply brief due by 10/7/2014. Signed by Chief Judge Philip P Simon on 8/18/2014. (dkw) (Entered: 08/18/2014) |
| 08/18/2014 | 1021 | 1618 | ORDER granting 1016 Motion to Seal Document as to Juan Briseno (1). Signed by Chief Judge Philip P Simon on 8/18/2014. (dkw) (Entered: 08/18/2014) |
| 08/22/2014 | 1023 | | (SEALED) MOTION to Seal Document by Juan Briseno. (Foley, Arlington) (Entered: 08/22/2014) |
| 08/22/2014 | 1024 | | SEALED MOTION by Juan Briseno. (Foley, Arlington) (Entered: 08/22/2014) |
| 08/22/2014 | 1025 | 1621 | ORDER granting 1023 Motion to Seal Document as to Juan Briseno (1). Signed by Chief Judge Philip P Simon on 8/22/2014. (dkw) (Entered: 08/22/2014) |
| 08/22/2014 | 1026 | 1624 | MOTION *Request To File Over–Length Motion* by Juan Briseno. (Maksimovich, John) (Entered: 08/22/2014) |
| 08/22/2014 | 1027 | 1626 | MOTION re 1026 MOTION WITH INCORPORATED MEMORANDUM TO STRIKE THE NOTICE OF AGGRAVATING FACTORS by Juan Briseno. (Attachments: # 1 Appendix)(Maksimovich, John) Modified on 8/25/2014 (dkw). (Entered: 08/22/2014) |
| 08/25/2014 | 1029 | 1888 | ORDER granting 1026 Motion/Request to File Over–Length Brief as to Juan Briseno (1). Signed by Chief Judge Philip P Simon on 8/25/2014. (dkw) (Entered: 08/25/2014) |
| 08/25/2014 | 1030 | 1891 | ORDER as to Juan Briseno re 1012 MOTION To Empanel Anonymous Jury filed by United States of America. Defendant Response Brief due by 9/5/2014. Government Reply Brief due by 9/19/2014. Signed by Chief Judge Philip P Simon on 8/25/14. (kjp) (Entered: 08/25/2014) |
| 08/26/2014 | 1032 | 1893 | RECEIPT of Verdict Forms disc referencing DE 1027 . Disc filed in office. (eml) (Entered: 08/26/2014) |
| 08/27/2014 | 1037 | | Supplemental MOTION to Supplement 1024 SEALED MOTION filed by Juan Briseno *Omitted Exhibit* by Juan Briseno. (Foley, Arlington) (Entered: 08/27/2014) |
| 08/27/2014 | 1038 | 1895 | |

| | | | |
|---|---|---|---|
| | | | ORDER granting 1037 Motion to Supplement as to Juan Briseno (1). Briseno is granted leave to file the submitted exhibit UNDER SEAL. All other counsel and parties are DIRECTED TO DISREGARD, DIRECTED NOT TO REVIEW AND DIRECTED NOT TO MAINTAIN ACCESS TO Briseno's supplemental submission, which was inadvertently not electronically filed under seal initially by counsel (though has been promptly sealed by the Court). Signed by Chief Judge Philip P Simon on 8/27/2014. (dkw) (Entered: 08/27/2014) |
| 08/28/2014 | 1041 | | (SEALED) MOTION to Seal Document by Juan Briseno. (Foley, Arlington) (Entered: 08/28/2014) |
| 08/28/2014 | 1042 | | SEALED MOTION by Juan Briseno. (Foley, Arlington) (Entered: 08/28/2014) |
| 08/29/2014 | 1043 | 1898 | ORDER granting 1041 Motion to Seal Document as to Juan Briseno (1). Signed by Chief Judge Philip P Simon on 8/29/2014. (dkw) (Entered: 08/29/2014) |
| 08/29/2014 | 1045 | 1901 | MOTION for Extension of Time to File Response/Reply *to Government's Motion to Empanel an Anonymous Jury* by Juan Briseno. (Attachments: # 1 Proposed Order)(Foley, Arlington) (Entered: 08/29/2014) |
| 09/02/2014 | 1046 | 1904 | ORDER granting in part and denying in part 1045 Motion for Extension of Time to File Response/Reply as to Juan Briseno (1). Time is of the essence in view of the need to get the jury notice out in a timely manner and to finalize the mechanics of the juror questionnaire. Defendant Response Brief due by Friday 9/12/2014. Government Reply Brief due by Thursday 9/25/2014. A hearing on the motion is set for Friday 9/26/2014 at 1:30 p.m. Signed by Chief Judge Philip P Simon on 9/2/2014. (dkw) (Entered: 09/02/2014) |
| 09/04/2014 | 1051 | | SEALED EX PARTE ORDER: Signed by Chief Judge Diane P. Wood, U.S. Court of Appeals−7th Circuit. (nac). Copy to defense cnsl only. Modified on 2/6/2015 to indicate that service was made upon defense cnsl only. (nac). (Entered: 09/04/2014) |
| 09/05/2014 | 1053 | 1907 | ORDER as to Juan Briseno re 970 Order : counsel are directed to review the electronic version of the agreed Special Questionnaire for prospective jurors in the trial of defendant Juan Briseno. Any questions or concerns should be expressed by way of email to the court and all counsel no later than September 25, 2014, and any formal objections can be addressed on the record at the September 26 hearing already set on the motion to empanel an anonymous jury.. Signed by Chief Judge Philip P Simon on 9/5/14. (mc) (Entered: 09/05/2014) |
| 09/05/2014 | | 1910 | Set/Reset Deadlines as to Juan Briseno: questions or concerns re 1053 due by 9/25/2014. (mc) (Entered: 09/05/2014) |
| 09/10/2014 | 1055 | 1913 | NOTICE OF HEARING ON MOTION in case as to Juan Briseno 1027 MOTION re 1026 MOTION *Request To File Over−Length Motion MOTION WITH INCORPORATED MEMORANDUM TO STRIKE THE NOTICE OF AGGRAVATING FACTORS* : Motion Hearing set for 11/18/2014 09:30 AM in US District Court − Hammond before Chief Judge Philip P Simon. (nac) (Entered: 09/10/2014) |
| 09/12/2014 | 1056 | 1916 | RESPONSE to Motion by Juan Briseno re 1012 MOTION To Empanel Anonymous Jury (Foley, Arlington) (Entered: 09/12/2014) |
| 09/12/2014 | 1057 | | (SEALED) MOTION to Seal Document by Juan Briseno. (Maksimovich, John) (Entered: 09/12/2014) |

| 09/12/2014 | 1058 | | SEALED MOTION by Juan Briseno. (Maksimovich, John) (Entered: 09/12/2014) |
|---|---|---|---|
| 09/16/2014 | 1061 | 1929 | ORDER GRANTING 1057 Motion to Seal Document as to Juan Briseno (1). (Text entry only, no pdf is attached). Approved by Chief Judge Philip P Simon on 9/16/2014. (nac) (Entered: 09/16/2014) |
| 09/16/2014 | 1062 | 1933 | RESPONSE in Opposition by United States of America as to Juan Briseno re 1027 MOTION re 1026 MOTION *Request To File Over–Length Motion MOTION WITH INCORPORATED MEMORANDUM TO STRIKE THE NOTICE OF AGGRAVATING FACTORS* (Attachments: # 1 Exhibit #1 – Order in Coonce and Hall (2014), # 2 Exhibit #2 – Order in Guerrero (2014), # 3 Exhibit #3 – Order in Sablan (2014), # 4 Exhibit #4 – Order in Candelario–Santana (2012))(Hegyi – AUSA, Bruce) (Entered: 09/16/2014) |
| 09/18/2014 | 1063 | | SEALED EX PARTE ORDER as to Juan Briseno. Motions terminated as to Juan Briseno: 1058 . Signed by Chief Judge Philip P Simon on 9/18/2014. (nac). Copy to defense cnsl only. Modified on 2/6/2015 to indicate service upon defense cnsl only.(nac). (Entered: 09/18/2014) |
| 09/18/2014 | 1065 | 2035 | REPLY TO RESPONSE to Motion by United States of America as to Juan Briseno re 1012 MOTION To Empanel Anonymous Jury (Hegyi – AUSA, Bruce) (Entered: 09/18/2014) |
| 09/19/2014 | 1066 | 2048 | NOTICE *OF INTENT TO INTRODUCE ENTERPRISE EVIDENCE (SUPPLEMENTAL)* by United States of America as to Juan Briseno (Nozick – AUSA, David) (Entered: 09/19/2014) |
| 09/24/2014 | 1072 | 2053 | NOTICE OF HEARING ON MOTION in case as to Juan Briseno 1012 MOTION To Empanel Anonymous Jury : Motion Hearing RESET for 9/26/2014 01:00 PM in US District Court – Hammond before Chief Judge Philip P Simon. Please note that this is a change in time only to 1:00 p.m. (Central/Hammond time). (nac) (Entered: 09/24/2014) |
| 09/26/2014 | 1076 | 2056 | MOTION HEARING (regarding 1012 ) as to Juan Briseno. MOTION To Empanel Anonymous Jury filed by United States of America before Chief Judge Philip P Simon. Govt present by David Nozick, AUSA in person and Bruce R. Hegyi, AUSA by telephone. Dft Juan Briseno is present in person and by counsel Arlington Foley and John Maksimovich. Court hears oral argument on motion. Govt submits exhibits to the court (Govt exhibits 1,2,3,4 & 5), however they are not officially offered or admitted and are only for the court's reference in this matter. Court takes this matter under advisement and will issue a ruling within two weeks. Other issues discussed: Court sets a deadline of 12/5/2014 with regard to juror challenges for cause. By 12/5/2014 the court orders that the following three lists be submitted to the court: (1) agreed list of juror strikes for cause. (2) challenges for cause that the dft wants and that the govt disagrees with (3) challenges for cause that the Govt wants that the dft disagrees with. Those lists shall be submitted under seal with a hearing to be held on this issue on 12/18/2014 at 10:00 a.m. (Central/Hammond time) in U.S. District Court – Hammond before Chief Judge Philip P. Simon. Defendant REMANDED to custody of US Marshal. The U.S. Marshal is ordered to produce the dft for this hearing. (Court Reporter Stacy Droshoky) (nac) Modified on 9/29/2014 to provide additional information. (nac). (Entered: 09/29/2014) |
| 09/30/2014 | 1077 | 2059 | ORDER DENYING 1012 Motion to empanel an anonymous jury, as to Juan Briseno (1). Signed by Chief Judge Philip P Simon on 9/30/14. (kjp) (Entered: |

| | | | |
|---|---|---|---|
| | | | 09/30/2014) |
| 10/06/2014 | 1083 | 2066 | MOTION for Writ of Habeas Corpus ad testificandum by United States of America as to Juan Briseno. (Nozick – AUSA, David) (Entered: 10/06/2014) |
| 10/10/2014 | 1091 | | (SEALED) MOTION to Seal Document by Juan Briseno. (Foley, Arlington) (Entered: 10/10/2014) |
| 10/10/2014 | 1092 | | SEALED MOTION by Juan Briseno. (Attachments: # 1 1, # 2 2, # 3 3)(Foley, Arlington) (Entered: 10/10/2014) |
| 10/16/2014 | 1100 | | (SEALED) MOTION to Seal Document by Juan Briseno. (Maksimovich, John) (Entered: 10/16/2014) |
| 10/16/2014 | 1101 | | SEALED MOTION by Juan Briseno. (Maksimovich, John) (Entered: 10/16/2014) |
| 10/16/2014 | 1102 | 2068 | ORDER GRANTING 1091 Motion to Seal Document as to Juan Briseno (1). (Text entry only, no pdf is attached). Approved by Chief Judge Philip P Simon on 10/16/2014. (nac) (Entered: 10/16/2014) |
| 10/16/2014 | 1103 | 2071 | ORDER GRANTING 1100 Motion to Seal Document as to Juan Briseno (1). (Text entry only, no pdf is attached). Approved by Chief Judge Philip P Simon on 10/16/2014. (nac) (Entered: 10/16/2014) |
| 10/17/2014 | 1104 | | (SEALED) MOTION to Seal Document by Juan Briseno. (Maksimovich, John) (Entered: 10/17/2014) |
| 10/17/2014 | 1105 | | SEALED MOTION by Juan Briseno. (Maksimovich, John) (Entered: 10/17/2014) |
| 10/27/2014 | 1111 | | (SEALED) MOTION to Seal Document by Juan Briseno. (Foley, Arlington) (Entered: 10/27/2014) |
| 10/27/2014 | 1112 | | SEALED MOTION by Juan Briseno. (Attachments: # 1 1, # 2 2, # 3 3)(Foley, Arlington) (Entered: 10/27/2014) |
| 10/28/2014 | 1113 | 2074 | ORDER GRANTING 1111 Motion to Seal Document as to Juan Briseno (1). (Text entry only, no pdf is attached). Approved by Chief Judge Philip P Simon on 10/28/2014. (nac) (Entered: 10/28/2014) |
| 10/30/2014 | 1118 | | SEALED EX PARTE ORDER on sealed motion 1112 as to Juan Briseno. Signed by Chief Judge Philip P Simon on 10/30/2014. Copy to defense cnsl oly (nac) Modified on 2/6/2015 to indicate copy to defense cnsl only. (nac). (Entered: 10/30/2014) |
| 10/31/2014 | 1119 | | SEALED EX PARTE ORDER as to Juan Briseno on Sealed Motion 1101 . Signed by Chief Judge Philip P Simon on 10/31/2014. Copy to defense cnsl only (nac) Modified on 2/6/2015 to indicate copy provided to defense cnsl only. (nac). (Entered: 10/31/2014) |
| 10/31/2014 | 1120 | 2077 | ORDER GRANTING 1104 Motion to Seal Document as to Juan Briseno (1). Approved by Chief Judge Philip P Simon on 10/31/2014. (Text entry only, no pdf is attached). (nac) (Entered: 10/31/2014) |
| 10/31/2014 | 1121 | | (SEALED) MOTION to Seal Document by Juan Briseno. (Maksimovich, John) (Entered: 10/31/2014) |
| 10/31/2014 | 1122 | | SEALED MOTION by Juan Briseno. (Maksimovich, John) (Entered: 10/31/2014) |

| 11/04/2014 | 1130 | 2080 | Amended MOTION for Writ of Habeas Corpus ad testificandum by United States of America as to Juan Briseno. (Nozick – AUSA, David) (Entered: 11/04/2014) |
|---|---|---|---|
| 11/04/2014 | 1131 | 2082 | SANTIAGO PROFFER by United States of America as to Juan Briseno (Nozick – AUSA, David) (Entered: 11/04/2014) |
| 11/04/2014 | 1132 | 2111 | MOTION For An Informative Outline of the Government's Factual Basis For the NonStatutory Aggravating Factor that Mr. Briseno is a Continuing Danger to the Lives and Safety of Others and is Likely to Commit Acts of Violence in the Future by Juan Briseno. by Juan Briseno. (Maksimovich, John) (Entered: 11/04/2014) |
| 11/05/2014 | 1135 | 2117 | MOTION For Eye Examination by Juan Briseno. (Maksimovich, John) (Entered: 11/05/2014) |
| 11/05/2014 | 1140 | 2119 | ORDER granting 1130 Amended Motion for Writ of Habeas Corpus Ad Testificandum in re Juan Briseno (1). Signed by Magistrate Judge Andrew P Rodovich on 11/5/14. cc: 3 certified copies to USMS (mc) (Entered: 11/05/2014) |
| 11/06/2014 | 1143 | 2121 | SCHEDULING ORDER as to Juan Briseno: In view of the hearing set November 18, the government shall file a response to defendant Juan Briseno's Motion for an Informative Outline of the Government's Fatual Basis for the Nonstatutory Aggravating Factor, etc. [DE 1132] no later than Monday, November 10, 2014. Approved by Chief Judge Philip P Simon on 11/6/2014 (no.pdf attached; docket text only). (dkw) (Entered: 11/06/2014) |
| 11/10/2014 | 1150 | | SEALED DOCUMENT (Nozick – AUSA, David) (Entered: 11/10/2014) |
| 11/10/2014 | 1153 | 2124 | RESPONSE in Opposition by United States of America as to Juan Briseno re 1132 MOTION For An Informative Outline of the Government's Factual Basis For the NonStatutory Aggravating Factor that Mr. Briseno is a Continuing Danger to the Lives and Safety of Others and is Likely to Commit Acts of Violence in the Future by Juan *Briseno* (Hegyi – AUSA, Bruce) (Entered: 11/10/2014) |
| 11/13/2014 | 1158 | | SEALED ORDER as to Juan Briseno: Motions terminated as to Juan Briseno: 1121 SEALED MOTION to Seal Document filed by Juan Briseno, 1105 SEALED MOTION filed by Juan Briseno, 1122 SEALED MOTION filed by Juan Briseno. Signed by Chief Judge Philip P Simon on 11/13/2014. (nac) Modified on 11/18/2014 to indicate order 1158 sent to A. Foley and J. Maksimovich by CM/ECF system and by email. (nac). (Entered: 11/13/2014) |
| 11/14/2014 | 1160 | 2134 | ORDER DENYING 1132 Motion as to Juan Briseno (1). Signed by Chief Judge Philip P Simon on 11/14/14. (eml) (Entered: 11/14/2014) |
| 11/14/2014 | 1162 | 2140 | ORDER: The proposed jury instructions to be filed by 12/1/2014, should include proposed verdict forms for each phase of the trial as to Juan Briseno. Signed by Chief Judge Philip P Simon on 11/14/2014. (tc) (Entered: 11/14/2014) |
| 11/18/2014 | 1165 | | SEALED ORDER: (This document is accessible ONLY by United States of America and attorneys for dft Juan Briseno). Signed by Chief Judge Philip P Simon on 11/18/2014. (nac) Modified on 11/18/2014 to note that order provided to USA, A. Foley and J. Maksimovich by CM/ECF system and by email. (nac). (Entered: 11/18/2014) |
| 11/18/2014 | 1169 | 2141 | MOTION HEARING as to Juan Briseno held on 11/18/2014 re 1027 MOTION TO STRIKE THE NOTICE OF AGGRAVATING FACTORS filed by Juan Briseno before Chief Judge Philip P Simon. Govt present by David Nozick, |

| | | | |
|---|---|---|---|
| | | | AUSA and Bruce R. Hegyi, AUSA. Dft is present in person and by cnsl Arlington Foley and John Maksimovich. Court hears argument on the motion. Court takes matter under advisement and will issue an opinion. Other matters discussed: Govt reminded that Colon video needs to be provided to the court. Recess taken. Discussion on other matters continues. Trial schedule – Trial days Monday – Thursday. Parties agree to schedule. Jury selection schedule not finalized but probable for Monday – Friday until the jury panel is selected. Defense inquires of storgage area for trial materials. Court will look into this matter for Attys Foley and Maksimovich. Weather issues/problems during trial discussed. Next hearing dates: 12/12/14 (10:00 a.m.) and 12/18/14 (10:00 a.m.). Defendant REMANDED to custody of US Marshal.(Court Reporter Stacy Drohosky.) (nac) (Entered: 11/20/2014) |
| 11/21/2014 | 1181 | | SEALED EX PARTE ORDER. Signed by Chief Judge Diane P. Wood on 11/21/2014. Copy to defense cnsl only.(nac) Modified on 2/6/2015 to indicate service was made to defense cnsl only. (nac). (Entered: 11/26/2014) |
| 11/24/2014 | 1171 | | SEALED DOCUMENT (Nozick – AUSA, David) (Entered: 11/24/2014) |
| 11/24/2014 | 1172 | 2144 | TRIAL BRIEF by United States of America as to Juan Briseno (Hegyi – AUSA, Bruce) (Entered: 11/24/2014) |
| 11/25/2014 | 1173 | 2158 | ORDER granting 1135 Motion for Eye Examination as to Juan Briseno. The court ORDERS the Jerome Combs Detention Center to schedule Juan Briseno for an eye examination. Signed by Magistrate Judge Andrew P Rodovich on 11/25/2014.(cc: Jerome Combs Detention Center) (rmn) (Entered: 11/25/2014) |
| 11/25/2014 | 1174 | 2159 | MOTION Defendant's Proposed Jury Selection Procedures and Memorandum of Law Regarding Capital Voir Dire re 1172 Trial Brief by Juan Briseno. (Maksimovich, John) (Entered: 11/25/2014) |
| 11/25/2014 | 1177 | | SEALED ORDER (This document is accessible ONLY by United States of America and attorneys for dft Juan Briseno). Signed by Chief Judge Philip P Simon on 11/25/2014. (nac) (Entered: 11/25/2014) |
| 11/29/2014 | 1182 | 2180 | Preliminary Proposed Voir Dire by Juan Briseno (Maksimovich, John) (Entered: 11/29/2014) |
| 11/29/2014 | 1183 | 2190 | MOTION for Extension of Time to File *Proposed Jury Instructions and Verdict Forms* by Juan Briseno. (Maksimovich, John) (Entered: 11/29/2014) |
| 12/01/2014 | 1186 | 2192 | ORDER granting 1183 Motion for Extension of Time to File Proposed Jury Instructions and Verdict Forms as to Juan Briseno (1). Proposed Jury Instructions and verdict forms are due by 12/8/2014. Signed by Chief Judge Philip P Simon on 12/1/14. (mc) (Entered: 12/01/2014) |
| 12/03/2014 | 1198 | 2193 | NOTICE *OF INTENT TO INTRODUCE ENTERPRISE EVIDENCE (AMENDED SUPPLEMENTAL)* by United States of America as to Juan Briseno (Nozick – AUSA, David) (Entered: 12/03/2014) |
| 12/05/2014 | 1202 | | SEALED DOCUMENT (Hegyi – AUSA, Bruce) (Entered: 12/05/2014) |
| 12/05/2014 | 1203 | 2198 | MOTION for Extension of Time to File *Non–Agreed Strikes For Cause* by Juan Briseno. (Maksimovich, John) (Entered: 12/05/2014) |
| 12/08/2014 | 1205 | 2201 | |

36

| | | | ORDER granting 1203 Joint Motion for Extension of Time to Submit Non–Agreed Strikes for Cause. Both parties are granted to 3:00 p.m. Hammond/Central Time on Wednesday, December 10, 2014 to file their respective lists of non–agreed strikes for cause. Approved by Chief Judge Philip P Simon on 12/8/2014. (dkw) [no.pdf attached; docket text only] (Entered: 12/08/2014) |
|---|---|---|---|
| 12/08/2014 | 1206 | 2204 | Proposed Jury Instructions by United States of America as to Juan Briseno (Attachments: # 1 Proposed Guilt Phase Jury Instructions, # 2 Proposed Guilty Phase Verdict Form, # 3 Proposed Penalty Phase Jury Instructions, # 4 Proposed Penalty Phase Verdict Form)(Hegyi – AUSA, Bruce) (Entered: 12/08/2014) |
| 12/10/2014 | 1208 | | SEALED DOCUMENT (Hegyi – AUSA, Bruce) (Entered: 12/10/2014) |
| 12/10/2014 | 1209 | | SEALED DOCUMENT (Hegyi – AUSA, Bruce) (Entered: 12/10/2014) |
| 12/10/2014 | 1210 | 2352 | GOVERMENT'S RESPONSE TO DEFENDANT'S REQUESTED PRELIMINARY VOIR DIRE INSTRUCTIONS by United States of America to 1182 Proposed Voir Dire. (Hegyi – AUSA, Bruce) (Entered: 12/10/2014) |
| 12/10/2014 | 1211 | | (SEALED) MOTION to Seal Document by Juan Briseno. (Maksimovich, John) (Entered: 12/10/2014) |
| 12/10/2014 | 1212 | | SEALED MOTION by Juan Briseno. (Maksimovich, John) (Entered: 12/10/2014) |
| 12/10/2014 | 1213 | 2361 | DEFENDANTS REPLY TO GOVERNMENTS LIMITED OBJECTIONS TO DEFENDANTS REQUESTED PRELIMINARY VOIR DIRE INSTRUCTIONS to 1210 Response/Reply/Objection. (Maksimovich, John) (Entered: 12/10/2014) |
| 12/11/2014 | 1216 | 2377 | ORDER granting 1211 Motion to Seal Document 1212 as to Juan Briseno (1). Signed by Magistrate Judge Andrew P Rodovich on 12/11/14. (mc) (Entered: 12/11/2014) |
| 12/11/2014 | 1217 | 2378 | ORDER: Granting Motion to Seal 1211 for document 1212 as to Juan Briseno. Text entry only. No pdf is attached. Approved by Chief Judge Philip P Simon on 12/11/2014. (nac) (Entered: 12/11/2014) |
| 12/11/2014 | 1218 | | (SEALED) MOTION to Seal Document by Juan Briseno. (Maksimovich, John) (Entered: 12/11/2014) |
| 12/11/2014 | 1219 | | SEALED MOTION by Juan Briseno. (Maksimovich, John) (Entered: 12/11/2014) |
| 12/11/2014 | 1220 | 2381 | MOTION for Extension of Time to File *Exhibit List* by United States of America as to Juan Briseno. (Hegyi – AUSA, Bruce) (Entered: 12/11/2014) |
| 12/11/2014 | 1221 | 2383 | MOTION for Leave to File *Government's Motion In Limine* by United States of America as to Juan Briseno. (Nozick – AUSA, David) (Entered: 12/11/2014) |
| 12/11/2014 | 1222 | 2386 | MOTION in Limine *Regarding the Admissibility of an Excited Utterance Under Federal Rule of Evidence 803(2) At Trial* by United States of America as to Juan Briseno. (Nozick – AUSA, David) (Entered: 12/11/2014) |
| 12/11/2014 | 1223 | 2390 | SUPPLEMENT to 1213 Response/Reply/Objection by United States of America as to Juan Briseno *Sur–Reply to Defendant's Reply to Governmen'ts Liimited Objections to Defendant's Requested Preliminary Voir Dire Instructions* (Attachments: # 1 Transcript of 03/25/2013 Hearing [DE 794] in US v. Bencevi, # 2 Govt's 03/26/2013 Informative Motion [DE 404] in US v. Bencevi, # 3 Judge |

| | | | Fuste's 04/01/2013 Order [DE 424] in US v. Bencevi)(Hegyi – AUSA, Bruce) (Entered: 12/11/2014) |
|---|---|---|---|
| 12/11/2014 | 1224 | 2448 | ORDER as to Juan Briseno. Signed by Chief Judge Philip P Simon on 12/11/14. (Attachments: # 1 Preliminary Jury Instructions) (mc) (Entered: 12/11/2014) |
| 12/12/2014 | 1225 | 2465 | MOTION to Dismiss *Counts 10, 14, 16, 18, 20 and 22 of the Fourth Superseding Indictment* by United States of America as to Juan Briseno. (Nozick – AUSA, David) (Entered: 12/12/2014) |
| 12/12/2014 | | 2469 | SEALED EXPARTE ORDER ruling on motion 1219 . Signed by Chief Judge Philip P Simon on 12/12/2014. (copy to defense cnsl for Juan Briseno only). (nac) (Entered: 12/12/2014) |
| 12/12/2014 | 1227 | 2472 | ORDER – GRANTING 1220 Motion for Extension of Time to File Exhibit List as to Juan Briseno (1): Exhibit List due by 12/19/2014. (Text entry only, no pdf is attached) Granted in open court during 12/12/2014 hearing. Chief Judge Philip P. Simon. (nac) (Entered: 12/12/2014) |
| 12/12/2014 | 1228 | 2475 | ORDER GRANTING Motion to Dismiss Counts of the Fourth Superseding Indictment (Text entry order only) for the dismissal of 924j counts (10, 14, 16, 18, 20 and 22) as to Juan Briseno. Order GRANTED at the hearing in open court held on 12/12/2014. Chief Judge Philip P. Simon. (nac) Modified on 3/2/2015 to further clarity. (nac). (Entered: 12/12/2014) |
| 12/12/2014 | 1229 | 2478 | ORDER GRANTING 1221 Motion for Leave to File Instanter Motion in Limine as to Juan Briseno (1). (Text entry only, no pdf to be issued). Approved by Chief Judge Philip P Simon on 12/12/2014. (nac) (Entered: 12/12/2014) |
| 12/12/2014 | 1231 | | (SEALED) MOTION to Seal Document by Juan Briseno. (Foley, Arlington) (Entered: 12/12/2014) |
| 12/12/2014 | 1232 | | SEALED MOTION by Juan Briseno. (Foley, Arlington) (Entered: 12/12/2014) |
| 12/12/2014 | 1237 | 2481 | FINAL PRETRIAL CONFERENCE as to Juan Briseno held on 12/12/2014 before Chief Judge Philip P Simon. (Note: a second Final Pretrial Conference is scheduled for 1/5/2015 at 10:00 a.m. before Chief Judge Simon). Govt appeared by attorneys David Nozick (in person) and Bruce Hegyi (by telephone). Dft is present in person and by counsel John Maksimovich and Arlington Foley. A number of issues and topics were initiated by the court and discussed with counsel including the following: Juror questionairres: no line for a sworn signature of the potential juror, some juror questionairres not being fully completed, some juror questionairres never returned by the potential juror. Atty Hegyi will provide a list (under seal) to the Court of those questionairres that have not been fully completed. Defense request for daily copy of jury selection – Court GRANTS. No partial transcripts will be prepared, there will be a morning transcript and an afternoon transcript. Juror numbers to be used in court to refer to the prospective jurors. Court explains jury selection process to attorneys. The Court DENIES the defense request for additional challenges. Discussion on method of prememptory challenges. "Jury box" method to be used. Motion for extension of time to file Exhibit List is GRANTED. Exclusion of witnesses discussed. Scope of enterprise evidence discussion. Court reminds attorneys of the local rule regarding release of info to media/press. Govt has moved for the dismissal of 924J counts – Court GRANTS. Discussion on overflow room. Discussion on security issues. Conference room to be provided to defense attorneys to house trial materials. |

| | | | |
|---|---|---|---|
| | | | Parties to provide cell phone numbers to Case Mgr in case of need/emergency during the trial. Juror note taking will be permitted. Further discussion on overflow room as it relates to exclusion of witnesses. Government questions/comments discussion: govt witness list to defense the night prior to when that witness will be called, a power point that the govt intends to use (to be provided to the court by the end of the year). Two videos to be played during the trial. NCIC of witnesses. Brief discussion on stipulations, deadlines, rebuttal experts due 1/23/2015. Defense counsel additional concerns: facility for housing dft (court to check with USM), personal hygiene products for dft, clothing for dft. If there are any spanish speaking witnesses, an interpreter will need to be arranged. Next hearing: Thursday, 12/18/2014 at 10:00 a.m. regarding juror strikes for cause. Defendant REMANDED to custody of US Marshal.(Court Reporter Stacy Drohosky.) (nac) (Entered: 12/15/2014) |
| 12/12/2014 | 1490 | 3313 | DISMISSAL of COUNTS 10, 14, 16, 18, 20 and 22 of the 4th Superseding Indictment as to dft Juan Briseno (01). (Motion is docket entry 1225 , Text entry order dismissing counts is 1228 . This entry goes behind the scenes to officially term these counts. (nac) Modified on 3/2/2015 to further clarify. (nac). (Entered: 03/02/2015) |
| 12/16/2014 | 1239 | | SEALED DOCUMENT (Hegyi – AUSA, Bruce) (Entered: 12/16/2014) |
| 12/18/2014 | 1261 | 2489 | HEARING on Parties Challenges for Cause to the Members of the Veneer (based on questionnaires) as to Juan Briseno held on 12/18/2014 before Chief Judge Philip P Simon. Govt present by AUSAs David Nozick and Bruce Hegyi. The dft appears in person and by counsel Arlington Foley and John Maksimovich. Parties discuss Court's proposed dialogue for general voir dire (which also includes proposed questioning of individual jurors). Court and parties discuss individual jurors, the Court orders specific jurors stricken for cause after discussion/argument from counsel. The Clerk shall notify the stricken jurors not to appear. A master list will be created with the remaining potential jurors listed. This list will be randomized and each potential juror will be given a juror number that will remain with the potential juror thru out jury selection. The Court will issue an order on these matters addressed at this hearing. The dft reminds the Court of his request to move to local jail facility and of his request for his personal items. The Court addresses this matter with the dft. Defendant REMANDED to custody of US Marshal.(Court Reporter Stacy Drohosky.) (nac) (Entered: 12/23/2014) |
| 12/19/2014 | 1249 | | (SEALED) MOTION to Seal Document by Juan Briseno. (Maksimovich, John) (Entered: 12/19/2014) |
| 12/19/2014 | 1250 | | SEALED MOTION by Juan Briseno. (Maksimovich, John) (Entered: 12/19/2014) |
| 12/19/2014 | 1251 | 2484 | ORDER GRANTING 1231 Motion to Seal Document sealing Document 1232 as to Juan Briseno (1). (Text entry only, no pdf is attached). Approved by Chief Judge Philip P. Simon on 12/19/2014. (nac) (Entered: 12/19/2014) |
| 12/19/2014 | 1252 | | SEALED Ex Parte ORDER: Regarding entry 1219 . Signed by Chief Judge Diane P. Wood (USCA, 7th Circuit on 12/17/2014). Provided to defense cnsl only. (nac) Modified on 2/6/2015 to indicate service upon defense cnsl only. (nac). (Entered: 12/19/2014) |
| 12/23/2014 | 1259 | 2487 | ORDER as to Juan Briseno: The Clerk shall provide to counsel the completed juror questionnaire recently received from venireman J.L. No later than 12/31/2014 the parties may file memoranda expressing their agreement or any |

| | | | |
|---|---|---|---|
| | | | objection to striking venireman J.L. for cause, and to declaring the questionnaire completion process closed and disregarding any additional untimely questionnaires. Signed by Chief Judge Philip P Simon on 12/23/14. (mc) (Entered: 12/23/2014) |
| 12/23/2014 | 1262 | 2492 | ORDER GRANTING 1249 Motion to Seal Document as to Juan Briseno (1). Approved by Chief Judge Philip P Simon on 12/23/2014. (Text entry only). (nac) (Entered: 12/23/2014) |
| 12/23/2014 | 1263 | | ORDER as to Juan Briseno: Regarding jurors stricken for cause. Signed by Chief Judge Philip P Simon on 12/23/2014. (Note: this order is not sealed but does have a sealed attachment). (nac) (Additional attachment(s) added on 12/23/2014: # 1 Supplement) (nac). (Entered: 12/23/2014) |
| 12/23/2014 | 1271 | | SEALED EXPARTE ORDER as to Juan Briseno. Terminating Motion 1250 as to Juan Briseno. Signed by Chief Judge Philip P Simon on 12/23/2014. (copy to defense attorneys John Maksimovich and Arlington Foley only). (nac) (Entered: 12/30/2014) |
| 12/29/2014 | 1265 | 2495 | MOTION Regarding Potential Defense Conflict of Interest Due to Previous Representation of a Government Witness by United States of America as to Juan Briseno. (Nozick – AUSA, David) (Entered: 12/29/2014) |
| 12/29/2014 | 1266 | | (SEALED) MOTION to Seal by United States of America as to Juan Briseno. (Nozick – AUSA, David) (Entered: 12/29/2014) |
| 12/29/2014 | 1267 | | SEALED DOCUMENT (Nozick – AUSA, David) (Entered: 12/29/2014) |
| 12/29/2014 | 1268 | 2498 | MOTION to Withdraw as Attorney by Richard M. Davis. by Raymond Campos as to Juan Briseno, Galo Benjamin Feliciano, Guillermo Briseno, Alejandro Balboa Lara, Justin Weaver, Michael Anthony Castillo, Kelvin Jefferson Beltran, David Almaraz, Joseph Rene Torres, Jason Medina, Edward Raye Serna, Alejandro Briseno, Robert Lockhart, Armando Jose Velasquez, Anthony Baldazo, Salvador Chavez, Raymond Campos, Ace Cortez, Julian Guillermo Serna, Julius Solis, Darmaile Cortez Sutton, Eddie Torres, Richard Reyes, Vincent Garza. (Davis, Richard) Modified on 2/12/2015 to note that this motion actually only refers to dft Raymond Campos. (nac). (Entered: 12/29/2014) |
| 12/30/2014 | 1269 | 2506 | STIPULATION –*Agreed Motion To Strike Venireman J.L. For Cause* by Juan Briseno. (Maksimovich, John) (Entered: 12/30/2014) |
| 12/30/2014 | 1270 | 2508 | OPINION AND ORDER re 1222 Motion in Limine seeking to admit a hearsay statement at trial under the excited utterance exception to the rule against hearsay as to Juan Briseno (1). Signed by Chief Judge Philip P Simon on 12/30/14. (mc) (Entered: 12/30/2014) |
| 12/30/2014 | 1275 | 2512 | ORDER granting 1266 Motion to Seal as to Juan Briseno (1). (Text entry only, no pdf is attached). (nac) (Entered: 12/30/2014) |
| 12/31/2014 | 1279 | | VENIRE PANEL LIST (SEALED) (This document is accessible ONLY by United States of America and attorneys for dft Juan Briseno). Chief Judge Philip P Simon – 12/31/2014. (nac) (Entered: 12/31/2014) |
| 01/05/2015 | 1282 | 2515 | MEMORANDUM OPINION granting in part and denying in part 611 Motion to Permit Attorney Conducted Voir Dire Pursuant to Principles Required by Furman v. Georgia and Its Progeny as to Juan Briseno (1) as indicated in the memorandum |

| | | | |
|---|---|---|---|
| | | | of this opinion. Signed by Chief Judge Philip P Simon on 1/5/14. (mc) (Entered: 01/05/2015) |
| 01/05/2015 | 1286 | 2521 | ORDER GRANTING 1265 Motion Regarding Potential Conflict Of Interest as to Juan Briseno (1). This matter was discussed and ruled on by the court in the hearing held on 1/5/2015. Attorney Foley shall have no involvement with this particular witness during preparation for trial and trial. Co−counsel John Maksimovich will handle all matters that involve this witness. Ordered in open court on 1/5/2015 by Chief Judge Philip P Simon. (nac) (Entered: 01/06/2015) |
| 01/05/2015 | 1287 | 2524 | ORDER: GRANTING 1269 Stipulation as to Juan Briseno (1): to strike venireman JL for cause. Discussion by cnsl and court's order at the hearing held on 1/5/2015. Chief Judge Philip P. Simon. (nac) (Entered: 01/06/2015) |
| 01/05/2015 | 1289 | 2527 | FINAL FINAL PRETRIAL CONFERENCE as to Juan Briseno held on 1/5/2015 before Chief Judge Philip P Simon. Govt present by David Nozick, AUSA. Dft appears in person and by cnsl Arlington Foley and John Maksimovich. Discussion had on the following issues with Court rulings as indicated. Motion 1265 regarding attorney conflict is GRANTED. Attorney John Maksimovich shall handle all pretrial and trial matters dealing with this witness. Atty Arlington Foley shall have no involvement with this witness matter. Motion 1269 Agreed Motion to Strike is GRANTED. Discussion on five venire persons – parties are in agreement that the five venire persons shall be excused for cause in addition to the individual referred to in motion 1269 for a total of six excused for cause. Court ruling on previous issue discussed: the issue of the jurors knowing the consequence of decision – it will be referenced in court dialogue. Discussion on ExParte Motion 1281 – GRANTED. The Govt shall serve this motion upon the defense on 1/5/2015. If the defense chooses to pursue this matter the defense shall file a motion under seal and a hearing will be held. USA requests a protective order regarding the discovery provided to the defendant today. No objection from defense cnsl. The Court informs the dft that he may not pass out any of this information from these discovery documents to any persons either inside or outside the jail. The dft acknowledges to the court that he understands this court order. Discussion on races of victims. Scheduling: Monday, January 12, be present at 8:15 a.m. to begin selection process at 8:30 a.m. The Court's goal is to have the jury selected in 2 1/2 weeks. Work days shall be 8:30 – 5:00 with a projected trial of 4−6 weeks after jury selection concludes. Dft REMANDED to custody of US Marshal.(Court Reporter Stacy Drohosky.) (nac) (Entered: 01/06/2015) |
| 01/05/2015 | 1290 | | SEALED EX PARTE ORDER as to Juan Briseno regarding Sealed Motion 1250 . Signed by Chief Judge Diane Wood on 1/5/2015. Copy to defense cnsl only (nac). Modified on 1/6/2015 to include document # (nac). Modified on 2/6/2015 to indicate ExParte and provided to defense cnsl only. (nac). (Entered: 01/06/2015) |
| 01/07/2015 | 1291 | 2530 | ORDER Regarding Jury Meals as to Juan Briseno. Signed by Chief Judge Philip P Simon on 1/7/2015. (nac) (Entered: 01/07/2015) |
| 01/08/2015 | 1295 | | (SEALED) MOTION to Seal Document by Juan Briseno. (Foley, Arlington) (Entered: 01/08/2015) |
| 01/08/2015 | 1296 | | SEALED MOTION by Juan Briseno. (Foley, Arlington) (Entered: 01/08/2015) |
| 01/08/2015 | 1298 | 2531 | MOTION for Writ of Habeas Corpus ad testificandum by Juan Briseno. (Foley, Arlington) (Entered: 01/08/2015) |

| 01/08/2015 | 1299 | 2533 | MOTION for Writ of Habeas Corpus ad testificandum by Juan Briseno. (Foley, Arlington) (Entered: 01/08/2015) |
|---|---|---|---|
| 01/08/2015 | 1300 | 2535 | ORDER GRANTING 1295 Motion to Seal Document as to Juan Briseno (1). (Text entry only, no pdf is attached). Approved by Chief Judge Philip P. Simon on 1/8/2015. (nac) (Entered: 01/08/2015) |
| 01/08/2015 | 1301 | 2538 | Writ of Habeas Corpus ad Testificandum Returned Executed for Jose Lopez on 1/8/15 in case as to Juan Briseno (mc) (Entered: 01/09/2015) |
| 01/08/2015 | 1302 | 2540 | WRIT OF HABEAS CORPUS AD TESTIFICANDUM: granting 1298 Motion for Writ of Habeas Corpus Ad Testificandum (Guillermo Briseno) as to Juan Briseno. Signed by Magistrate Judge Andrew P Rodovich on 1/8/2015. (USMS 3 certified copies) (rmn) (Entered: 01/09/2015) |
| 01/08/2015 | 1303 | 2542 | WRIT OF HABEAS CORPUS AD TESTIFICANDUM re 1299 Motion for Writ of Habeas Corpus Ad Testificandum (Darmaile Sutton) as to Juan Briseno. Signed by Magistrate Judge Andrew P Rodovich on 1/8/2015. (USMS 3 certified copies) (rmn) Modified to clarify text on 1/13/2015 (rmn). (Entered: 01/09/2015) |
| 01/12/2015 | 1311 | 2544 | ORDER For Potential–Juror Meals as to Juan Briseno. Signed by Chief Judge Philip P Simon on 1/12/2015. (nac) (Entered: 01/12/2015) |
| 01/12/2015 | 1313 | 2545 | OPINION AND ORDER as to Juan Briseno. Defendant Brisenos Motion to Strike the Notice of Intent to Seek the Death Penaldy is GRANTED IN PART AND DENIED IN PART, as described in this Opinion and Order. 1027 This replaces the prior version of this order originally filed at 1310 to correct typographical errors Signed by Chief Judge Philip P Simon on 1/12/2015. (rmn) Modified on 1/13/2015 to reflect corrections and regenerated entry (rmn). Modified on 1/13/2015 typo and regenerated (rmn). (Entered: 01/13/2015) |
| 01/12/2015 | 1314 | 2578 | POTENTIAL JUROR SELECTION – (DAY 1): as to Juan Briseno held on 1/12/2015 before Chief Judge Philip P Simon. Govt represented by attorneys David Nozick, AUSA and Bruce Hegyi, AUSA Dft is present in person and by cnsl John Maksimovich and Arlington Foley with Jury Consultant Julie Howe. Twenty–four venire persons appear. The panel is sworn to answer inquiry/voir dire by court and counsel. Potential Jurors 1–19 proceed through the voir dire process. Jurors 20–24 are ordered to return to the court on 1/13/2015 at 8:30 a.m. to complete the voir dire process. Nine potential jurors are accepted to be placed in the juror pool to return at a later date for further selection proceedings. All other potential jurors are excused for cause. At the conclusion of the day the members of the pool are reminded by the court to not discuss this case, not to do any research into this matter. Defendant REMANDED to custody of US Marshal.(Court Reporter Stacy Drohosky (am) and Joanne Hoffman (pm).) (nac) Modified on 1/13/2015 to edit typo (nac). Modified on 1/15/2015 (nac). (Entered: 01/13/2015) |
| 01/13/2015 | 1312 | | TRANSCRIPT of Jury Trial, Vol.1–PM, as to Juan Briseno held on January 12, 2015, before Judge Philip Simon. Court Reporter Joanne Hoffman, Telephone number (574)246–8038. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. <br><br> **IMPORTANT: Notice is hereby given that an official transcript of a proceeding has been filed by the court reporter in the above–captioned** |

| | | | |
|---|---|---|---|
| | | | **matter. The parties have seven (7) calendar days to file with the Court a Notice of Intent to Request Redaction of this transcript. Within 21 days of the filing of the transcript, a Redaction Request – Transcript shall be e–filed with the Court. Access to this request will be restricted to the Court and the attorneys of record in the case. If no such Notice and Redaction Request are filed, the transcript may be made remotely, electronically available to the public without redaction. Any party needing a copy of the transcript to review for redaction purposes may purchase a copy from the Court Reporter. Counsel are strongly urged to share this notice with all clients so that an informed decision about the inclusion of certain materials may be made. The responsibility for redacting these personal identifiers rests solely with counsel and the parties. The Clerk and Court Reporter will not review each transcript for compliance with this rule.**<br><br>Notice of Intent to Redact due 1/23/2015. Redaction Request due 2/3/2015. Redacted Transcript Deadline set for 2/13/2015. Release of Transcript Restriction set for 4/13/2015. (jh) (Entered: 01/13/2015) |
| 01/13/2015 | 1315 | | TRANSCRIPT of Jury Trial Day 1 – AM Session as to Juan Briseno held on January 12, 2015, before Judge Philip P. Simon. Court Reporter Stacy Drohosky, Telephone number 219–852–3462. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.<br><br>**IMPORTANT: Notice is hereby given that an official transcript of a proceeding has been filed by the court reporter in the above–captioned matter. The parties have seven (7) calendar days to file with the Court a Notice of Intent to Request Redaction of this transcript. Within 21 days of the filing of the transcript, a Redaction Request – Transcript shall be e–filed with the Court. Access to this request will be restricted to the Court and the attorneys of record in the case. If no such Notice and Redaction Request are filed, the transcript may be made remotely, electronically available to the public without redaction. Any party needing a copy of the transcript to review for redaction purposes may purchase a copy from the Court Reporter. Counsel are strongly urged to share this notice with all clients so that an informed decision about the inclusion of certain materials may be made. The responsibility for redacting these personal identifiers rests solely with counsel and the parties. The Clerk and Court Reporter will not review each transcript for compliance with this rule.**<br><br>Notice of Intent to Redact due 1/23/2015. Redaction Request due 2/3/2015. Redacted Transcript Deadline set for 2/13/2015. Release of Transcript Restriction set for 4/13/2015. (sbm) (Entered: 01/13/2015) |
| 01/13/2015 | 1320 | 2581 | POTENTIAL–JUROR SELECTION (DAY 2): as to Juan Briseno held on 1/13/2015 before Chief Judge Philip P Simon. Parties present as previously noted. Potential–jurors 20 – 24 appear again (originally appeared on 1/12/15 but since their voir dire process was not completed they return). In addition, 18 additional potential–jurors also were summoned of which 15 appear. The panel is sworn to answer inquiry/voir dire by the court and counsel. Potential–jurors proceed through the voir dire process with 9 selected for future juror pool with the court |

| | | | |
|---|---|---|---|
| | | | taking under advisement the decision as to juror #29. Court ruling to be made on 1/14/2015. All other potential–jurors are excused for cause. At conclusion of the day the members of the pool are reminded by the court to not discuss this case and to not do any research into this matter. Defendant REMANDED to custody of US Marshal. (Court Reporter Stacy Drohosky (am) – Kelly Fitzgerald (pm).) (nac) Modified on 1/14/2015 to edit text. (nac). (Entered: 01/14/2015) |
| 01/14/2015 | 1317 | | TRANSCRIPT of Jury Trial – Volume 2 – AM Session as to Juan Briseno held on January 13, 2015, before Judge Philip P. Simon. Court Reporter Stacy L. Drohosky, Telephone number 219–852–3462. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.<br><br>**IMPORTANT: Notice is hereby given that an official transcript of a proceeding has been filed by the court reporter in the above–captioned matter. The parties have seven (7) calendar days to file with the Court a Notice of Intent to Request Redaction of this transcript. Within 21 days of the filing of the transcript, a Redaction Request – Transcript shall be e–filed with the Court. Access to this request will be restricted to the Court and the attorneys of record in the case. If no such Notice and Redaction Request are filed, the transcript may be made remotely, electronically available to the public without redaction. Any party needing a copy of the transcript to review for redaction purposes may purchase a copy from the Court Reporter. Counsel are strongly urged to share this notice with all clients so that an informed decision about the inclusion of certain materials may be made. The responsibility for redacting these personal identifiers rests solely with counsel and the parties. The Clerk and Court Reporter will not review each transcript for compliance with this rule.**<br><br>Notice of Intent to Redact due 1/26/2015. Redaction Request due 2/4/2015. Redacted Transcript Deadline set for 2/17/2015. Release of Transcript Restriction set for 4/14/2015. (sbm) (Entered: 01/14/2015) |
| 01/14/2015 | 1318 | | TRANSCRIPT of Jury Trial – Volume 2 – PM Session as to Juan Briseno held on January 13, 2015, before Judge Philip P. Simon. Court Reporter Kelly Fitzgerald, Telephone number 219–852–3616. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.<br><br>**IMPORTANT: Notice is hereby given that an official transcript of a proceeding has been filed by the court reporter in the above–captioned matter. The parties have seven (7) calendar days to file with the Court a Notice of Intent to Request Redaction of this transcript. Within 21 days of the filing of the transcript, a Redaction Request – Transcript shall be e–filed with the Court. Access to this request will be restricted to the Court and the attorneys of record in the case. If no such Notice and Redaction Request are filed, the transcript may be made remotely, electronically available to the public without redaction. Any party needing a copy of the transcript to review for redaction purposes may purchase a copy from the Court Reporter. Counsel are strongly urged to share this notice with all clients so that an** |

| | | | |
|---|---|---|---|
| | | | **informed decision about the inclusion of certain materials may be made. The responsibility for redacting these personal identifiers rests solely with counsel and the parties. The Clerk and Court Reporter will not review each transcript for compliance with this rule.**<br><br>Notice of Intent to Redact due 1/26/2015. Redaction Request due 2/4/2015. Redacted Transcript Deadline set for 2/17/2015. Release of Transcript Restriction set for 4/14/2015. (kf) (Main Document 1318 replaced on 1/15/2015) (ksc). (Entered: 01/14/2015) |
| 01/14/2015 | 1325 | | EXHIBIT LIST (from Potential–Juror Selection process). (nac) (Entered: 01/15/2015) |
| 01/14/2015 | 1327 | 2584 | POTENTIAL–JUROR SELECTION (DAY 3) as to Juan Briseno held on 1/14/2015 before Chief Judge Philip P Simon. Parties present as previously noted. Court's ruling on potential juror #29 – stricken for cause. Court ruling on potential juror #31 – clerk's office to contact the selected potential juror by telephone to inquire if she is a student. Twenty potential–jurors summoned with 17 potential jurors appearing. Three jurors do not appear (#s 54, 56 and 57). Those potential–jurors are instructed by telephone to appear on 1/15/15. The panel is sworn to answer inquiry/voir dire by the court and counsel. Potential–jurors proceed through the voir dire process with two selected for future juror pool. All other potential–jurors are excused. Defense exhibits A and B are admitted. At the conclusion of the day the members of the pool are instructed by the court not to discuss this case with anyone nor to do any research into this matter. Jury trial projected to begin 2/2/2015. Defendant REMANDED to custody of US Marshal.(Court Reporter Stacy Drohosky (am) and Kelly Fitzgerald (pm).) (nac) (Entered: 01/15/2015) |
| 01/15/2015 | 1323 | | TRANSCRIPT of Jury Trial – Volume 3 – AM Session as to Juan Briseno held on January 14, 2015, before Judge Philip P. Simon. Court Reporter Stacy L. Drohosky, Telephone number 219–852–3462. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.<br><br>**IMPORTANT: Notice is hereby given that an official transcript of a proceeding has been filed by the court reporter in the above–captioned matter. The parties have seven (7) calendar days to file with the Court a Notice of Intent to Request Redaction of this transcript. Within 21 days of the filing of the transcript, a Redaction Request – Transcript shall be e–filed with the Court. Access to this request will be restricted to the Court and the attorneys of record in the case. If no such Notice and Redaction Request are filed, the transcript may be made remotely, electronically available to the public without redaction. Any party needing a copy of the transcript to review for redaction purposes may purchase a copy from the Court Reporter. Counsel are strongly urged to share this notice with all clients so that an informed decision about the inclusion of certain materials may be made. The responsibility for redacting these personal identifiers rests solely with counsel and the parties. The Clerk and Court Reporter will not review each transcript for compliance with this rule.** |

| | | | |
|---|---|---|---|
| | | | Notice of Intent to Redact due 1/28/2015. Redaction Request due 2/5/2015. Redacted Transcript Deadline set for 2/17/2015. Release of Transcript Restriction set for 4/15/2015. (sbm) (Entered: 01/15/2015) |
| 01/15/2015 | 1324 | | TRANSCRIPT of Jury Trial – Volume 3 – PM Session as to Juan Briseno held on January 14, 2015, before Judge Philip P. Simon. Court Reporter Kelly M. Fitzgerald, Telephone number 219–852–3616. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. <br><br> **IMPORTANT: Notice is hereby given that an official transcript of a proceeding has been filed by the court reporter in the above–captioned matter. The parties have seven (7) calendar days to file with the Court a Notice of Intent to Request Redaction of this transcript. Within 21 days of the filing of the transcript, a Redaction Request – Transcript shall be e–filed with the Court. Access to this request will be restricted to the Court and the attorneys of record in the case. If no such Notice and Redaction Request are filed, the transcript may be made remotely, electronically available to the public without redaction. Any party needing a copy of the transcript to review for redaction purposes may purchase a copy from the Court Reporter. Counsel are strongly urged to share this notice with all clients so that an informed decision about the inclusion of certain materials may be made. The responsibility for redacting these personal identifiers rests solely with counsel and the parties. The Clerk and Court Reporter will not review each transcript for compliance with this rule.** <br><br> Notice of Intent to Redact due 1/27/2015. Redaction Request due 2/5/2015. Redacted Transcript Deadline set for 2/17/2015. Release of Transcript Restriction set for 4/15/2015. (kf) (Entered: 01/15/2015) |
| 01/15/2015 | 1328 | | TRANSCRIPT of JURY TRIAL as to Juan Briseno held on JAN 15, 2015, before Judge PHILIP SIMON. Court Reporter STACY DROHOSKY, Telephone number 574 246 8039. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. <br><br> **IMPORTANT: Notice is hereby given that an official transcript of a proceeding has been filed by the court reporter in the above–captioned matter. The parties have seven (7) calendar days to file with the Court a Notice of Intent to Request Redaction of this transcript. Within 21 days of the filing of the transcript, a Redaction Request – Transcript shall be e–filed with the Court. Access to this request will be restricted to the Court and the attorneys of record in the case. If no such Notice and Redaction Request are filed, the transcript may be made remotely, electronically available to the public without redaction. Any party needing a copy of the transcript to review for redaction purposes may purchase a copy from the Court Reporter. Counsel are strongly urged to share this notice with all clients so that an informed decision about the inclusion of certain materials may be made. The responsibility for redacting these personal identifiers rests solely with counsel and the parties. The Clerk and Court Reporter will not review each transcript for compliance with this rule.** |

| | | | |
|---|---|---|---|
| | | | Notice of Intent to Redact due 1/27/2015. Redaction Request due 2/5/2015. Redacted Transcript Deadline set for 2/17/2015. Release of Transcript Restriction set for 4/15/2015. (db) (Entered: 01/15/2015) |
| 01/15/2015 | 1338 | 2590 | POTENTIAL–JUROR SELECTION (DAY 4) as to Juan Briseno held on 1/15/2015 before Chief Judge Philip P Simon. Parties present as previously noted. Twenty–two venire persons summoned, 19 appear. The panel is sworn to answer inquiry/voir dire by court and counsel. Potential jurors proceed through the voir dire process. Nine potential jurors are accepted to be placed in the juror pool to return at a later date for further selection proceedings. All other potential jurors are excused for cause. At the conclusion of the day the members of the pool are reminded by the court to not discuss the case nor to do any research into this matter. Defendant REMANDED to custody of US Marshal.(Court Reporter Stacy Drohosky (am) and Kelly Fitzgerald (pm).) (nac) (Entered: 01/20/2015) |
| 01/16/2015 | 1329 | | TRANSCRIPT of Jury Trial – Volume 4 – PM Session as to Juan Briseno held on January 15, 2015, before Judge Philip P. Simon. Court Reporter Kelly M. Fitzgerald, Telephone number 219–852–3616. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.<br><br>**IMPORTANT: Notice is hereby given that an official transcript of a proceeding has been filed by the court reporter in the above–captioned matter. The parties have seven (7) calendar days to file with the Court a Notice of Intent to Request Redaction of this transcript. Within 21 days of the filing of the transcript, a Redaction Request – Transcript shall be e–filed with the Court. Access to this request will be restricted to the Court and the attorneys of record in the case. If no such Notice and Redaction Request are filed, the transcript may be made remotely, electronically available to the public without redaction. Any party needing a copy of the transcript to review for redaction purposes may purchase a copy from the Court Reporter. Counsel are strongly urged to share this notice with all clients so that an informed decision about the inclusion of certain materials may be made. The responsibility for redacting these personal identifiers rests solely with counsel and the parties. The Clerk and Court Reporter will not review each transcript for compliance with this rule.**<br><br>Notice of Intent to Redact due 1/28/2015. Redaction Request due 2/6/2015. Redacted Transcript Deadline set for 2/17/2015. Release of Transcript Restriction set for 4/16/2015. (kf) (Entered: 01/16/2015) |
| 01/16/2015 | 1330 | | TRANSCRIPT of Jury Trial – Volume 5–AM as to Juan Briseno held on January 16, 2015, before Judge Philip P. Simon. Court Reporter Stacy L. Drohosky, Telephone number (219) 852–3462. Tape Number: Stenographically Reported. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.<br><br>**IMPORTANT: Notice is hereby given that an official transcript of a proceeding has been filed by the court reporter in the above–captioned matter. The parties have seven (7) calendar days to file with the Court a Notice of Intent to Request Redaction of this transcript. Within 21 days of the** |

| | | | |
|---|---|---|---|
| | | | **filing of the transcript, a Redaction Request – Transcript shall be e–filed with the Court. Access to this request will be restricted to the Court and the attorneys of record in the case. If no such Notice and Redaction Request are filed, the transcript may be made remotely, electronically available to the public without redaction. Any party needing a copy of the transcript to review for redaction purposes may purchase a copy from the Court Reporter. Counsel are strongly urged to share this notice with all clients so that an informed decision about the inclusion of certain materials may be made. The responsibility for redacting these personal identifiers rests solely with counsel and the parties. The Clerk and Court Reporter will not review each transcript for compliance with this rule.**<br><br>Notice of Intent to Redact due 1/27/2015. Redaction Request due 2/6/2015. Redacted Transcript Deadline set for 2/17/2015. Release of Transcript Restriction set for 4/16/2015. (sld) (Entered: 01/16/2015) |
| 01/16/2015 | 1341 | | POTENTIAL–JUROR SELECTION (DAY 5) as to Juan Briseno held on 1/16/2015 before Chief Judge Philip P Simon. Parties present as previously noted. Twenty venire persons summoned and 18 venire persons appear. The panel is sworn to answer inquiry/voir dire by court and counsel. Potential–jurors proceed through the voir dire process. Eight potential–jurors are accepted to be placed in the juror pool to return at a later date for further selection proceedings. All other potential jurors are excused for cause. At the conclusion of the day the members of the pool are reminded by the court not to discuss this case nor to do any research into this matter. Dft remanded to custody of US Marshal. (Court Reporter Stacy Drohosky (am) and Kelly Fitzgerald (pm).) (nac) (Entered: 01/20/2015) |
| 01/19/2015 | 1331 | | (SEALED) MOTION to Seal Document by Juan Briseno. (Foley, Arlington) (Entered: 01/19/2015) |
| 01/19/2015 | 1332 | | SEALED MOTION by Juan Briseno. (Attachments: # 1 Exhibit A, # 2 Exhibit B)(Foley, Arlington) (Entered: 01/19/2015) |
| 01/20/2015 | 1334 | | TRANSCRIPT of Jury Trial, Volume 5–PM Session as to Juan Briseno held on January 16, 2015, before Judge Philip P. Simon. Court Reporter Kelly M. Fitzgerald, Telephone number 219–852–3616. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.<br><br>**IMPORTANT: Notice is hereby given that an official transcript of a proceeding has been filed by the court reporter in the above–captioned matter. The parties have seven (7) calendar days to file with the Court a Notice of Intent to Request Redaction of this transcript. Within 21 days of the filing of the transcript, a Redaction Request – Transcript shall be e–filed with the Court. Access to this request will be restricted to the Court and the attorneys of record in the case. If no such Notice and Redaction Request are filed, the transcript may be made remotely, electronically available to the public without redaction. Any party needing a copy of the transcript to review for redaction purposes may purchase a copy from the Court Reporter. Counsel are strongly urged to share this notice with all clients so that an informed decision about the inclusion of certain materials may be made. The responsibility for redacting these personal identifiers rests solely with counsel** |

| | | | |
|---|---|---|---|
| | | | **and the parties. The Clerk and Court Reporter will not review each transcript for compliance with this rule.**<br><br>Notice of Intent to Redact due 1/29/2015. Redaction Request due 2/10/2015. Redacted Transcript Deadline set for 2/20/2015. Release of Transcript Restriction set for 4/20/2015. (kf) (Entered: 01/20/2015) |
| 01/20/2015 | 1336 | 2587 | ORDER GRANTING 1331 Motion to Seal Document as to Juan Briseno (1). (Text entry only). Approved by Chief Judge Philip P Simon on 1/20/2015. (nac) (Entered: 01/20/2015) |
| 01/20/2015 | 1337 | | SEALED EX PARTE ORDER 1332 . Signed by Chief Judge Philip P Simon on 1/20/2015. Copy to Defense cnsl only. (nac) Modified on 2/6/2015 to indicate ExParte order and that it was provided to defense cnsl only. (nac). (Entered: 01/20/2015) |
| 01/20/2015 | 1340 | | TRANSCRIPT of Jury Trial as to Juan Briseno held on 01/20/2015, before Judge Philip P. Simon. Court Reporter Stacy L. Drohosky, Telephone number (219) 852–3462. Tape Number: Stenographically Reported. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.<br><br>**IMPORTANT: Notice is hereby given that an official transcript of a proceeding has been filed by the court reporter in the above–captioned matter. The parties have seven (7) calendar days to file with the Court a Notice of Intent to Request Redaction of this transcript. Within 21 days of the filing of the transcript, a Redaction Request – Transcript shall be e–filed with the Court. Access to this request will be restricted to the Court and the attorneys of record in the case. If no such Notice and Redaction Request are filed, the transcript may be made remotely, electronically available to the public without redaction. Any party needing a copy of the transcript to review for redaction purposes may purchase a copy from the Court Reporter. Counsel are strongly urged to share this notice with all clients so that an informed decision about the inclusion of certain materials may be made. The responsibility for redacting these personal identifiers rests solely with counsel and the parties. The Clerk and Court Reporter will not review each transcript for compliance with this rule.**<br><br>Notice of Intent to Redact due 1/29/2015. Redaction Request due 2/10/2015. Redacted Transcript Deadline set for 2/20/2015. Release of Transcript Restriction set for 4/20/2015. (sld) (Entered: 01/20/2015) |
| 01/20/2015 | 1353 | 2606 | POTENTIAL–JUROR SELECTION (DAY 6) as to Juan Briseno held on 1/20/2015 before Chief Judge Philip P Simon. Parties present as previously noted. Twenty–two venire persons summoned, 13 appear. The panel is sworn to answer inquiry/voir dire by court and counsel. Potential jurors proceed through the voir dire process. Eight potential jurors are placed in the potential–juror pool to return at a later date for further selection proceedings. The trial is predicted to begin February 2, 2015. All other potential–jurors are excused for cause. At the conclusion of the day the potential jurors are instructed to not discuss this case nor to do any research on this case. Other matters/discussions: Defense objection to portions of the Govt's power point presentation to be used during opening |

| | | | |
|---|---|---|---|
| | | | statement. Govt will provide individual slides they intend to use to the court for ruling. Discussion on witnesses for trial as to BOP, local or USM custody. Govt will assist defense in determining custody status of each witness. Defense to provide a writ to the court in a timely manner for any witnesses in BOP custody. Discussion on letter of excuse provided to the court by potential–juror #73 (previously selected for juror pool). Court determines that juror #73 shall remain in the juror pool subject to re–evaluation after potential–juror selection process completed and the start of trial. Defendant REMANDED to custody of US Marshal.(Court Reporter Stacy Drohosky (am) and Debra Bonk (pm).) (nac) (Entered: 01/22/2015) |
| 01/21/2015 | 1343 | | TRANSCRIPT of JURY TRIAL as to Juan Briseno held on JANUARY 20, 2015PM, before Judge PHILIP P. SIMON. Court Reporter DEBRA J. BONK, Telephone number 5742468039. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.<br><br>**IMPORTANT: Notice is hereby given that an official transcript of a proceeding has been filed by the court reporter in the above–captioned matter. The parties have seven (7) calendar days to file with the Court a Notice of Intent to Request Redaction of this transcript. Within 21 days of the filing of the transcript, a Redaction Request – Transcript shall be e–filed with the Court. Access to this request will be restricted to the Court and the attorneys of record in the case. If no such Notice and Redaction Request are filed, the transcript may be made remotely, electronically available to the public without redaction. Any party needing a copy of the transcript to review for redaction purposes may purchase a copy from the Court Reporter. Counsel are strongly urged to share this notice with all clients so that an informed decision about the inclusion of certain materials may be made. The responsibility for redacting these personal identifiers rests solely with counsel and the parties. The Clerk and Court Reporter will not review each transcript for compliance with this rule.**<br><br>Notice of Intent to Redact due 1/30/2015. Redaction Request due 2/11/2015. Redacted Transcript Deadline set for 2/23/2015. Release of Transcript Restriction set for 4/21/2015. (db) (Entered: 01/21/2015) |
| 01/21/2015 | 1344 | 2593 | MOTION for Writ of Habeas Corpus ad testificandum by Juan Briseno. (Foley, Arlington) (Entered: 01/21/2015) |
| 01/21/2015 | 1345 | 2595 | MOTION for Writ of Habeas Corpus ad testificandum by Juan Briseno. (Foley, Arlington) (Entered: 01/21/2015) |
| 01/21/2015 | 1348 | | TRANSCRIPT of Jury Trial – Volume 7–AM as to Juan Briseno held on 01/21/15, before Judge Philip P. Simon. Court Reporter Stacy L. Drohosky, Telephone number (219) 852–3462. Tape Number: Stenographically Reported. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.<br><br>**IMPORTANT: Notice is hereby given that an official transcript of a proceeding has been filed by the court reporter in the above–captioned** |

| | | | |
|---|---|---|---|
| | | | **matter. The parties have seven (7) calendar days to file with the Court a Notice of Intent to Request Redaction of this transcript. Within 21 days of the filing of the transcript, a Redaction Request – Transcript shall be e–filed with the Court. Access to this request will be restricted to the Court and the attorneys of record in the case. If no such Notice and Redaction Request are filed, the transcript may be made remotely, electronically available to the public without redaction. Any party needing a copy of the transcript to review for redaction purposes may purchase a copy from the Court Reporter. Counsel are strongly urged to share this notice with all clients so that an informed decision about the inclusion of certain materials may be made. The responsibility for redacting these personal identifiers rests solely with counsel and the parties. The Clerk and Court Reporter will not review each transcript for compliance with this rule.**<br><br>Notice of Intent to Redact due 1/30/2015. Redaction Request due 2/11/2015. Redacted Transcript Deadline set for 2/23/2015. Release of Transcript Restriction set for 4/21/2015. (sld) (Entered: 01/21/2015) |
| 01/21/2015 | 1350 | 2597 | ORDER re jury selection in the capital trial of defendant Juan Briseno. The prospective juror who appeared January 20, 2015 and was then referred to asJuror #120 was in fact Juror #121, whose initials are J.H. The Clerk will recall J.H. (#121) for supplemental questioning now that her identification has been corrected. The voir dire examination of both Jurors #120 and #121 remains open. Signed by Chief Judge Philip P Simon on 1/21/2015. (rmn) (Entered: 01/22/2015) |
| 01/21/2015 | 1354 | 2603 | POTENTIAL–JUROR SELECTION (DAY 7) as to Juan Briseno held on 1/21/2015 before Chief Judge Philip P Simon. Parties present as previously noted. Twenty–three venire persons summoned and twenty–one appear. The panel is sworn to answer inquiry/voir dire by court and counsel. Potential jurors proceed through the voir dire process. Nine potential–jurors are accepted to be placed in the juror pool to return at a later date (projected to be 2/2/2015)for further selection proceedings. All other potential jurors are excused for cause. At the conclusion of the day the members of the pool are reminded by the court not to discuss this case nor to do any research into this matter. Other matters/discussions: Court addresses with the parties the issue of the discrepancy between potential–jurors numbered #120 and #121. Juror #121 (JH) will be summoned for 1/22/2015 at 8:20 am for counsel to further question this individual. Defendant REMANDED to custody of US Marshal.(Court Reporter Stacy Drohosky (am) and Debra Bonk (pm).) (nac) (Entered: 01/22/2015) |
| 01/22/2015 | 1349 | | TRANSCRIPT of JURY TRIAL as to Juan Briseno held on JANUARY 21, 2015 PM, before Judge PHILIP P. SIMON. Court Reporter DEBRA J. BONK, Telephone number 574 246 8039. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.<br><br>**IMPORTANT:** **Notice is hereby given that an official transcript of a proceeding has been filed by the court reporter in the above–captioned matter. The parties have seven (7) calendar days to file with the Court a Notice of Intent to Request Redaction of this transcript. Within 21 days of the filing of the transcript, a Redaction Request – Transcript shall be e–filed with the Court. Access to this request will be restricted to the Court and the** |

|  |  |  | **attorneys of record in the case. If no such Notice and Redaction Request are filed, the transcript may be made remotely, electronically available to the public without redaction. Any party needing a copy of the transcript to review for redaction purposes may purchase a copy from the Court Reporter. Counsel are strongly urged to share this notice with all clients so that an informed decision about the inclusion of certain materials may be made. The responsibility for redacting these personal identifiers rests solely with counsel and the parties. The Clerk and Court Reporter will not review each transcript for compliance with this rule.**<br><br>Notice of Intent to Redact due 2/2/2015. Redaction Request due 2/12/2015. Redacted Transcript Deadline set for 2/23/2015. Release of Transcript Restriction set for 4/22/2015. (db) (Entered: 01/22/2015) |
| 01/22/2015 | 1351 | 2599 | WRIT OF HABEAS CORPUS AD TESTIFICANDUM granting 1344 Motion for Writ of Habeas Corpus Ad Testificandum re Corey Walton as to Juan Briseno. Signed by Magistrate Judge Andrew P Rodovich on 1/22/2015. (USMS – 3 cert. copies) (rmn) (Entered: 01/22/2015) |
| 01/22/2015 | 1352 | 2601 | ORDER granting 1345 Motion for Writ of Habeas Corpus Ad Testificandum re Eddie Torres as to Juan Briseno. Signed by Magistrate Judge Andrew P Rodovich on 1/22/2015. (USMS 3 cert.copies) (rmn) (Entered: 01/22/2015) |
| 01/22/2015 | 1356 |  | TRANSCRIPT of Jury Trial – Volume 8–AM as to Juan Briseno held on 01/22/15, before Judge Philip P. Simon. Court Reporter Stacy L. Drohosky, Telephone number (219) 852–3462. Tape Number: Stenographically Reported. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.<br><br>**IMPORTANT: Notice is hereby given that an official transcript of a proceeding has been filed by the court reporter in the above–captioned matter. The parties have seven (7) calendar days to file with the Court a Notice of Intent to Request Redaction of this transcript. Within 21 days of the filing of the transcript, a Redaction Request – Transcript shall be e–filed with the Court. Access to this request will be restricted to the Court and the attorneys of record in the case. If no such Notice and Redaction Request are filed, the transcript may be made remotely, electronically available to the public without redaction. Any party needing a copy of the transcript to review for redaction purposes may purchase a copy from the Court Reporter. Counsel are strongly urged to share this notice with all clients so that an informed decision about the inclusion of certain materials may be made. The responsibility for redacting these personal identifiers rests solely with counsel and the parties. The Clerk and Court Reporter will not review each transcript for compliance with this rule.**<br><br>Notice of Intent to Redact due 2/2/2015. Redaction Request due 2/12/2015. Redacted Transcript Deadline set for 2/23/2015. Release of Transcript Restriction set for 4/22/2015. (sld) (Entered: 01/22/2015) |
| 01/22/2015 | 1366 | 2646 | POTENTIAL–JUROR SELECTION (DAY 8) as to Juan Briseno held on 1/22/2015 before Chief Judge Philip P Simon. Parties present as previously noted. Twenty venire persons summoned and twenty venire persons appear. Juror #121 |

| | | | |
|---|---|---|---|
| | | | questioned to clarify her answers to the questions asked on her prior appearance. Juror #121 remains in the potential–juror pool. Remaining jurors are sworn to answer inquiry/voir dire by court and counsel. Potential–jurors proceed through the voir dire process. Thirteen potential–jurors are accepted to be placed in the juror pool to return at a later date for further selection proceedings. All other potential–jurors are excused for cause. At the conclusion of the day the members of the pool are reminded by the court not to discuss the case nor to do any reseach into this matter. The court estimates that the final juror selection and jury trial will begin on Monday, February 2, 2015 at 8:30 a.m. The Court and attorneys have discussion on counsel being re–appointed for those case dfts who will testify at trial, if they are not currently represented by counsel. Defendant REMANDED to custody of US Marshal.(Court Reporter Stacy Drohosky (am) and Debra Bonk (pm).) (nac) (Entered: 01/26/2015) |
| 01/23/2015 | 1357 | | TRANSCRIPT of JURY TRIAL as to Juan Briseno held on JANUARY 22, 2015, VOLUME 8–PM, before Judge PHILIP P. SIMON. Court Reporter DEBRA J. BONK, Telephone number 5742468039. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.<br><br>**IMPORTANT: Notice is hereby given that an official transcript of a proceeding has been filed by the court reporter in the above–captioned matter. The parties have seven (7) calendar days to file with the Court a Notice of Intent to Request Redaction of this transcript. Within 21 days of the filing of the transcript, a Redaction Request – Transcript shall be e–filed with the Court. Access to this request will be restricted to the Court and the attorneys of record in the case. If no such Notice and Redaction Request are filed, the transcript may be made remotely, electronically available to the public without redaction. Any party needing a copy of the transcript to review for redaction purposes may purchase a copy from the Court Reporter. Counsel are strongly urged to share this notice with all clients so that an informed decision about the inclusion of certain materials may be made. The responsibility for redacting these personal identifiers rests solely with counsel and the parties. The Clerk and Court Reporter will not review each transcript for compliance with this rule.**<br><br>Notice of Intent to Redact due 2/3/2015. Redaction Request due 2/13/2015. Redacted Transcript Deadline set for 2/23/2015. Release of Transcript Restriction set for 4/23/2015. (db) (Entered: 01/23/2015) |
| 01/23/2015 | 1359 | 2609 | NOTICE *OF REBUTTAL EXPERT WITNESSES* (Maksimovich, John) (Entered: 01/23/2015) |
| 01/23/2015 | 1362 | | TRANSCRIPT of Jury Trial – Volume 9–AM as to Juan Briseno held on January 23, 2015, before Judge Philip P. Simon. Court Reporter Stacy L. Drohosky, Telephone number (219) 852–3462. Tape Number: Stenographically Reported. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.<br><br>**IMPORTANT: Notice is hereby given that an official transcript of a proceeding has been filed by the court reporter in the above–captioned** |

53

| | | | |
|---|---|---|---|
| | | | **matter. The parties have seven (7) calendar days to file with the Court a Notice of Intent to Request Redaction of this transcript. Within 21 days of the filing of the transcript, a Redaction Request – Transcript shall be e–filed with the Court. Access to this request will be restricted to the Court and the attorneys of record in the case. If no such Notice and Redaction Request are filed, the transcript may be made remotely, electronically available to the public without redaction. Any party needing a copy of the transcript to review for redaction purposes may purchase a copy from the Court Reporter. Counsel are strongly urged to share this notice with all clients so that an informed decision about the inclusion of certain materials may be made. The responsibility for redacting these personal identifiers rests solely with counsel and the parties. The Clerk and Court Reporter will not review each transcript for compliance with this rule.**<br><br>Notice of Intent to Redact due 2/3/2015. Redaction Request due 2/13/2015. Redacted Transcript Deadline set for 2/23/2015. Release of Transcript Restriction set for 4/23/2015. (sld) (Entered: 01/23/2015) |
| 01/23/2015 | 1367 | 2649 | POTENTIAL–JUROR SELECTION (DAY 9) as to Juan Briseno held on 1/23/2015 before Chief Judge Philip P Simon. Parties present as previously noted. Sixteen venire persons summoned and sixteen venire persons appear. The panel is sworn to answer inquiry/voir dire by court and counsel. Potential–jurors proceed through the voir dire process. Seven potential–jurors are accepted to be placed in the juror pool to return at a later date for further selection proceedings. All other potential–jurors are excused for cause. At the conclusion of the day the members of the pool are reminded by the court not to discuss the case nor to do any research into this matter. The Court estimates that final juror selection and jury trial will begin on Monday, February 2, 2015. Discussion with counsel: excuse letter from juror #73 – Court takes under advisement. The Clerk's Office will be instructed to call all 71 potential jurors to get feedback. If the court determines that additional potential–jurors are required the court and attorneys will be in session on Thursday, 1/29/2015 for that purpose. The parties will be advised on 1/28/2015 regarding this. Court explains proposed jury selection procedures for 2/2/2015. Twelve regular jurors plus 6 alternates will be chosen. The jurors attending on 2/2/2015 will be identified by their original juror number assigned to them. Defendant REMANDED to custody of US Marshal.(Court Reporter Stacy Drohosky (am) and Debra Bonk (pm)). (nac) (Entered: 01/26/2015) |
| 01/24/2015 | 1363 | | TRANSCRIPT of JURY TRIAL as to Juan Briseno held on JANUARY 23, 2015 – VOLUME 9–PM, Court Reporter DEBRA BONK, Telephone number 5742468039. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.<br><br>**IMPORTANT: Notice is hereby given that an official transcript of a proceeding has been filed by the court reporter in the above–captioned matter. The parties have seven (7) calendar days to file with the Court a Notice of Intent to Request Redaction of this transcript. Within 21 days of the filing of the transcript, a Redaction Request – Transcript shall be e–filed with the Court. Access to this request will be restricted to the Court and the attorneys of record in the case. If no such Notice and Redaction Request are filed, the transcript may be made remotely, electronically available to the** |

| | | | |
|---|---|---|---|
| | | | **public without redaction. Any party needing a copy of the transcript to review for redaction purposes may purchase a copy from the Court Reporter. Counsel are strongly urged to share this notice with all clients so that an informed decision about the inclusion of certain materials may be made. The responsibility for redacting these personal identifiers rests solely with counsel and the parties. The Clerk and Court Reporter will not review each transcript for compliance with this rule.**<br><br>Notice of Intent to Redact due 2/3/2015. Redaction Request due 2/17/2015. Redacted Transcript Deadline set for 2/24/2015. Release of Transcript Restriction set for 4/24/2015. (db) (Entered: 01/24/2015) |
| 01/26/2015 | 1364 | 2641 | ORDER as to Juan Briseno: The Clerk shall summon the 71 prospective jurors to appear on Monday 2/2/2015 08:30 AM in US District Court – Hammond before Chief Judge Philip P Simon. At that time, the parties will exercise their peremptory challenges in order to seat a petit jury of 12 jurors and 6 alternate jurors, and the trial will begin. Signed by Chief Judge Philip P Simon on 1/26/15. (mc) (Entered: 01/26/2015) |
| 01/26/2015 | 1365 | 2643 | ORDER: The written request of Juror #73 for excuse from service in this case is DENIED at this time as to Juan Briseno. Signed by Chief Judge Philip P Simon on 1/26/2015. (tc) (Entered: 01/26/2015) |
| 01/28/2015 | 1368 | 2652 | NOTICE OF HEARING: FINAL IN–PERSON CONFERENCE Prior to Final Jury Selection/Jury Trial as to Juan Briseno: scheduled for Thursday, 1/29/2015 at 9:00 a.m. before Chief Judge Philip P. Simon. The U.S. Marshal shall produce the dft for this hearing. (nac) (Entered: 01/28/2015) |
| 01/28/2015 | 1375 | | SEALED EX PARTE ORDER. Signed by Chief Judge Diane P. Wood on 1/28/2015. (nac) Modified on 2/6/2015 to indicate ExParte and that order was provided to defense cnsl only. (nac). (Entered: 01/30/2015) |
| 01/29/2015 | 1370 | 2655 | ORDER as to Juan Briseno: Juror #41 is EXCUSED from service. Signed by Chief Judge Philip P Simon on 1/29/15. (mc) (Entered: 01/29/2015) |
| 01/29/2015 | 1371 | 2657 | HEARING as to Juan Briseno held on 1/29/2015 before Chief Judge Philip P Simon. Govt present by David Nozick, AUSA and Bruce Hegyi, AUSA. Dft appears in person and by counsel John Maksimovich and Arlington Foley. The defendant's jury consultant Julie Howe is also in attendance. Court makes a record as to the potential–jurors accepted into the pool that have indicated a hardship with serving on this panel. After personal discussion with all potential–jurors by the Clerk's Office the court now strikes jurors numbered 2, 18, 38 and 54. The parties have no objections. Juror #41 remains pending, the parties will be advised once personal telephone contact is made with juror #41. Once determined the Court will issue an order on this matter. In addition 12 potential–jurors will be summoned for court at 11:00 a.m. on 2/2/2015 should they be needed. If no shortage occurs, those potential–jurors will be released. Court makes Santiago ruling. Court hears argument on Govt power point slides/photos. Dft provides exhibit A to the Court, Exhibit A is offered and admitted by the Court. Court will allow the Govt power point (Exhibit A) finding that it is not unduly prejudicial. Discussion on experts. The deadline for the defense to provide the defense expert reports of witnesses Bezy and Reidy to the Govt – two weeks. As to defense witnesses Williams and Nixon – deadline for the defense to provide expert witness reports to Govt – one week from Monday. Each side will have one hour for |

| | | | |
|---|---|---|---|
| | | | opening statement. The Court anticipates final jury selection, opening statements and some witness testimony on Monday, 2/2/2015. Jury selection to begin at 8:30 a.m. 2/2/2015. Defendant REMANDED to custody of US Marshal. (Court Reporter Stacy Drohosky.) (nac) (Entered: 01/29/2015) |
| 01/29/2015 | 1372 | | EXHIBIT LIST from Hearing held on 1/29/2015 as to Juan Briseno before Chief Judge Philip P. Simon. (nac) (Entered: 01/29/2015) |
| 01/29/2015 | 1373 | 2660 | OPINION AND ORDER as to Juan Briseno. Defendant Briseos request to excludecertain slides from the governments opening statement presentation is DENIED. Signed by Chief Judge Philip P Simon on 1/29/2015. (rmn) (Entered: 01/29/2015) |
| 02/02/2015 | 1378 | 2668 | NOTATION: Jury Trial as to Juan Briseno does not proceed on Monday 2/2/2015 due to poor weather. (nac) (Entered: 02/03/2015) |
| 02/03/2015 | 1377 | 2665 | JURY TRIAL (FINAL JURY SELECTION and 1st DAY OF EVIDENCE) as to Juan Briseno held on 2/3/2015 before Chief Judge Philip P Simon. (Note: no jury trial held on 2/2/15 due to poor weather). Govt present by David Nozick, AUSA and Bruce Hegyi, AUSA with SA/ATF Jason Gore. Dft appears in person and by cnsl John Maksimovich and Arlington Foley. Julie Howe, Jury Consultant appears for the jury selection process only. Final jury selection held: Jurors are selected by the parties, 12 regular jurors and 6 alternate jurors and sworn to try cause. Note: No jury trial to be held on Friday, 2/6/15 of this week. Motion for sep of witnesses GRANTED with exceptions noted on the record. Preliminary instructions to jury panel by the court. Opening Statements by both sides to jury. Govt begins presentation of evidence, does not conclude. Trial continued to Wednesday, 2/4/15 at 8:30 a.m. Defendant REMANDED to custody of US Marshal.(Court Reporter Richard Ehrlich (am) and Joanne Hoffman (pm)). (nac) (Entered: 02/03/2015) |
| 02/04/2015 | 1379 | | TRANSCRIPT of Jury Trial as to Juan Briseno held on February 3, 2015, before Judge Simon. Court Reporter Richard D. Ehrlich, Telephone number 219–852–6557. Tape Number: NA. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.<br><br>**IMPORTANT: Notice is hereby given that an official transcript of a proceeding has been filed by the court reporter in the above–captioned matter. The parties have seven (7) calendar days to file with the Court a Notice of Intent to Request Redaction of this transcript. Within 21 days of the filing of the transcript, a Redaction Request – Transcript shall be e–filed with the Court. Access to this request will be restricted to the Court and the attorneys of record in the case. If no such Notice and Redaction Request are filed, the transcript may be made remotely, electronically available to the public without redaction. Any party needing a copy of the transcript to review for redaction purposes may purchase a copy from the Court Reporter. Counsel are strongly urged to share this notice with all clients so that an informed decision about the inclusion of certain materials may be made. The responsibility for redacting these personal identifiers rests solely with counsel and the parties. The Clerk and Court Reporter will not review each transcript for compliance with this rule.** |

| | | | |
|---|---|---|---|
| | | | Notice of Intent to Redact due 2/13/2015. Redaction Request due 2/25/2015. Redacted Transcript Deadline set for 3/9/2015. Release of Transcript Restriction set for 5/5/2015. (rde) (Entered: 02/04/2015) |
| 02/04/2015 | 1380 | | TRANSCRIPT of Jury Trial, Volume 10–PM, as to Juan Briseno, held on February 3, 2015, before Judge Philip P. Simon. Court Reporter Joanne Hoffman, Telephone number 574–246–8038. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.<br><br>**IMPORTANT: Notice is hereby given that an official transcript of a proceeding has been filed by the court reporter in the above–captioned matter. The parties have seven (7) calendar days to file with the Court a Notice of Intent to Request Redaction of this transcript. Within 21 days of the filing of the transcript, a Redaction Request – Transcript shall be e–filed with the Court. Access to this request will be restricted to the Court and the attorneys of record in the case. If no such Notice and Redaction Request are filed, the transcript may be made remotely, electronically available to the public without redaction. Any party needing a copy of the transcript to review for redaction purposes may purchase a copy from the Court Reporter. Counsel are strongly urged to share this notice with all clients so that an informed decision about the inclusion of certain materials may be made. The responsibility for redacting these personal identifiers rests solely with counsel and the parties. The Clerk and Court Reporter will not review each transcript for compliance with this rule.**<br><br>Notice of Intent to Redact due 2/13/2015. Redaction Request due 2/25/2015. Redacted Transcript Deadline set for 3/9/2015. Release of Transcript Restriction set for 5/5/2015. (jh) (Entered: 02/04/2015) |
| 02/04/2015 | 1382 | | (SEALED) MOTION to Seal by Juan Briseno. (Maksimovich, John) (Entered: 02/04/2015) |
| 02/04/2015 | 1383 | | SEALED MOTION by Juan Briseno. (Maksimovich, John) (Entered: 02/04/2015) |
| 02/04/2015 | 1384 | 2674 | ORDER GRANTING 1382 Motion to Seal as to Juan Briseno (1). Text entry only. No pdf is attached. Approved by Chief Judge Philip P Simon on 2/4/2015. (nac) (Entered: 02/04/2015) |
| 02/04/2015 | 1385 | 2671 | JURY TRIAL (2ND DAY OF EVIDENCE) as to Juan Briseno held on 2/4/2015 before Chief Judge Philip P Simon. Parties present as previously noted. Interpreter Irene Ishoo appears to interpret for non–english speaking witness. Govt continues to present evidence, does not conclude. Trial continued to Thursday 2/5/2015 at 8:30 a.m. Defendant REMANDED to custody of US Marshal. (Court Reporter Richard Ehrlich (am) and Joanne Hoffman (pm)). (nac) (Entered: 02/04/2015) |
| 02/05/2015 | 1386 | | TRANSCRIPT of Jury Trial, Volume 11–PM, as to Juan Briseno, held on February 4, 2015, before Judge Philip P. Simon. Court Reporter Joanne Hoffman, Telephone number 574–246–8038. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. <P>**IMPORTANT: Notice is hereby given that an official transcript of a proceeding has been filed by the court reporter in the above–captioned** |

57

| | | | |
|---|---|---|---|
| | | | **matter. The parties have seven (7) calendar days to file with the Court a Notice of Intent to Request Redaction of this transcript. Within 21 days of the filing of the transcript, a Redaction Request – Transcript shall be e–filed with the Court. Access to this request will be restricted to the Court and the attorneys of record in the case. If no such Notice and Redaction Request are filed, the transcript may be made remotely, electronically available to the public without redaction. Any party needing a copy of the transcript to review for redaction purposes may purchase a copy from the Court Reporter. Counsel are strongly urged to share this notice with all clients so that an informed decision about the inclusion of certain materials may be made. The responsibility for redacting these personal identifiers rests solely with counsel and the parties. The Clerk and Court Reporter will not review each transcript for compliance with this rule.</P>** Notice of Intent to Redact due 2/13/2015. Redaction Request due 2/26/2015. Redacted Transcript Deadline set for 3/9/2015. Release of Transcript Restriction set for 5/6/2015. (jh) (Entered: 02/05/2015) |
| 02/05/2015 | <u>1387</u> | | TRANSCRIPT of Jury Trial as to Juan Briseno held on February 4, 2015, before Judge Simon. Court Reporter Richard D. Ehrlich, Telephone number 219–852–6557. Tape Number: NA. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.<br><br>**IMPORTANT: Notice is hereby given that an official transcript of a proceeding has been filed by the court reporter in the above–captioned matter. The parties have seven (7) calendar days to file with the Court a Notice of Intent to Request Redaction of this transcript. Within 21 days of the filing of the transcript, a Redaction Request – Transcript shall be e–filed with the Court. Access to this request will be restricted to the Court and the attorneys of record in the case. If no such Notice and Redaction Request are filed, the transcript may be made remotely, electronically available to the public without redaction. Any party needing a copy of the transcript to review for redaction purposes may purchase a copy from the Court Reporter. Counsel are strongly urged to share this notice with all clients so that an informed decision about the inclusion of certain materials may be made. The responsibility for redacting these personal identifiers rests solely with counsel and the parties. The Clerk and Court Reporter will not review each transcript for compliance with this rule.**<br><br>Notice of Intent to Redact due 2/17/2015. Redaction Request due 2/26/2015. Redacted Transcript Deadline set for 3/9/2015. Release of Transcript Restriction set for 5/6/2015. (rde) (Entered: 02/05/2015) |
| 02/05/2015 | 1391 | 2677 | JURY TRIAL (3RD DAY OF EVIDENCE) as to Juan Briseno held on 2/5/2015before Chief Judge Philip P Simon. Parties present as previously noted. Govt continues to present evidence, does not conclude. Trial to resume on Monday 2/9/15 at 8:30 a.m. Jurors given instructions for weekend recess not to discuss case, do any research and to avoid any news media reports on this case. Jurors reminded that there will be no trial on Monday, 2/16/15 due to Presidents Day holiday. Defendant REMANDED to custody of US Marshal. (Court Reporter Richard Ehrlich(am) and Joanne Hoffman (pm).) (nac) (Entered: 02/05/2015) |

58

| | | | |
|---|---|---|---|
| 02/06/2015 | 1392 | | TRANSCRIPT of Jury Trial, Volume 12–PM, as to Juan Briseno held on February 5, 2015, before Judge Philip P. Simon. Court Reporter Joanne Hoffman, Telephone number 574–246–8038. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. <P>**IMPORTANT: Notice is hereby given that an official transcript of a proceeding has been filed by the court reporter in the above–captioned matter. The parties have seven (7) calendar days to file with the Court a Notice of Intent to Request Redaction of this transcript. Within 21 days of the filing of the transcript, a Redaction Request – Transcript shall be e–filed with the Court. Access to this request will be restricted to the Court and the attorneys of record in the case. If no such Notice and Redaction Request are filed, the transcript may be made remotely, electronically available to the public without redaction. Any party needing a copy of the transcript to review for redaction purposes may purchase a copy from the Court Reporter. Counsel are strongly urged to share this notice with all clients so that an informed decision about the inclusion of certain materials may be made. The responsibility for redacting these personal identifiers rests solely with counsel and the parties. The Clerk and Court Reporter will not review each transcript for compliance with this rule.</P>** Notice of Intent to Redact due 2/17/2015. Redaction Request due 2/27/2015. Redacted Transcript Deadline set for 3/9/2015. Release of Transcript Restriction set for 5/7/2015. (jh) (Entered: 02/06/2015) |
| 02/06/2015 | 1393 | | TRANSCRIPT of Jury Trial as to Juan Briseno held on February 5, 2015, before Judge Philip P. Simon. Court Reporter Richard D. Ehrlich, Telephone number 219–852–6557. Tape Number: NA. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.<br><br>**IMPORTANT: Notice is hereby given that an official transcript of a proceeding has been filed by the court reporter in the above–captioned matter. The parties have seven (7) calendar days to file with the Court a Notice of Intent to Request Redaction of this transcript. Within 21 days of the filing of the transcript, a Redaction Request – Transcript shall be e–filed with the Court. Access to this request will be restricted to the Court and the attorneys of record in the case. If no such Notice and Redaction Request are filed, the transcript may be made remotely, electronically available to the public without redaction. Any party needing a copy of the transcript to review for redaction purposes may purchase a copy from the Court Reporter. Counsel are strongly urged to share this notice with all clients so that an informed decision about the inclusion of certain materials may be made. The responsibility for redacting these personal identifiers rests solely with counsel and the parties. The Clerk and Court Reporter will not review each transcript for compliance with this rule.**<br><br>Notice of Intent to Redact due 2/17/2015. Redaction Request due 2/27/2015. Redacted Transcript Deadline set for 3/9/2015. Release of Transcript Restriction set for 5/7/2015. (rde) (Entered: 02/06/2015) |
| 02/06/2015 | 1396 | 2680 | NOTICE *F.R.C.P., Rule 16 Summary of Expert Witness Expected Testimony* |

| | | | (Attachments: # 1 Exhibit A)(Foley, Arlington) (Entered: 02/06/2015) |
|---|---|---|---|
| 02/06/2015 | 1397 | 2691 | Certificate of Service by Juan Briseno re 1396 Notice (Other) *F.R.C.P., Rule 16 Summary of Expert Witness Expected Testimony* (Foley, Arlington) (Entered: 02/06/2015) |
| 02/09/2015 | 1403 | 2692 | JURY TRIAL (4th DAY OF EVIDENCE) as to Juan Briseno held on 2/9/2015 before Chief Judge Philip P Simon. Parties present as previously noted. Court receives information regarding juror #124 (alt #2) who cannot attend due to serious illness of family member. Court consults with counsel who have no objection to excusing juror #124. Juror #124 (alt #2) is excused from these proceedings for today and the remainder of the trial. Govt continues to present evidence. Ruling by court as to earlier discussion held with counsel regarding certifications attached to business records. Certifications are not permitted, therefore, Govt exhibit Cell Record 6 is stricken. Govt continues to present evidence, does not conclude. Trial continued to Tuesday, 2/10/15 at 8:30 a.m. Defendant REMANDED to custody of US Marshal.(Court Reporter Stacy Drohosky (am) and Tina Gallucci (pm).) (nac) (Entered: 02/09/2015) |
| 02/09/2015 | 1404 | | TRANSCRIPT of Jury Trial – Volume 13–AM as to Juan Briseno held on February 9, 2015, before Judge Philip P. Simon. Court Reporter Stacy L. Drohosky, Telephone number (219) 852–3462. Tape Number: Stenographically Reported. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.<br><br>**IMPORTANT: Notice is hereby given that an official transcript of a proceeding has been filed by the court reporter in the above–captioned matter. The parties have seven (7) calendar days to file with the Court a Notice of Intent to Request Redaction of this transcript. Within 21 days of the filing of the transcript, a Redaction Request – Transcript shall be e–filed with the Court. Access to this request will be restricted to the Court and the attorneys of record in the case. If no such Notice and Redaction Request are filed, the transcript may be made remotely, electronically available to the public without redaction. Any party needing a copy of the transcript to review for redaction purposes may purchase a copy from the Court Reporter. Counsel are strongly urged to share this notice with all clients so that an informed decision about the inclusion of certain materials may be made. The responsibility for redacting these personal identifiers rests solely with counsel and the parties. The Clerk and Court Reporter will not review each transcript for compliance with this rule.**<br><br>Notice of Intent to Redact due 2/17/2015. Redaction Request due 3/2/2015. Redacted Transcript Deadline set for 3/12/2015. Release of Transcript Restriction set for 5/11/2015. (sld) (Entered: 02/09/2015) |
| 02/10/2015 | 1405 | 2695 | Amended MOTION for Writ of Habeas Corpus ad testificandum by United States of America as to Juan Briseno. (Nozick – AUSA, David) (Entered: 02/10/2015) |
| 02/10/2015 | 1406 | 2697 | WRIT OF HABEAS CORPUS AD TESTIFICANDUM granting 1405 Motion for Writ of Habeas Corpus Ad Testificandum re Jose Lopez. Signed by Magistrate Judge Andrew P Rodovich on 2/10/2015. (USMS 3 certified copies)(rmn) (Entered: 02/10/2015) |

| | | | |
|---|---|---|---|
| 02/10/2015 | 1407 | 2699 | JURY TRIAL (5th DAY OF EVIDENCE) as to Juan Briseno held on 2/10/2015 before Chief Judge Philip P Simon. Parties present as previously noted. Govt continues to present evidence, does not conclude. Trial continued to Wednesday 2/11/2015 at 8:30 a.m. Defendant REMANDED to custody of US Marshal.(Court Reporter Stacy Drohosky (am) and Kelly Fitzgerald (pm).) (nac) (Entered: 02/10/2015) |
| 02/10/2015 | 1408 | | TRANSCRIPT of Jury Trial – Volume 14–AM as to Juan Briseno held on February 10, 2015, before Judge Philip P. Simon. Court Reporter Stacy L. Drohosky, Telephone number (219) 852–3462. Tape Number: Stenographicall Reported. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.<br><br>**IMPORTANT: Notice is hereby given that an official transcript of a proceeding has been filed by the court reporter in the above–captioned matter. The parties have seven (7) calendar days to file with the Court a Notice of Intent to Request Redaction of this transcript. Within 21 days of the filing of the transcript, a Redaction Request – Transcript shall be e–filed with the Court. Access to this request will be restricted to the Court and the attorneys of record in the case. If no such Notice and Redaction Request are filed, the transcript may be made remotely, electronically available to the public without redaction. Any party needing a copy of the transcript to review for redaction purposes may purchase a copy from the Court Reporter. Counsel are strongly urged to share this notice with all clients so that an informed decision about the inclusion of certain materials may be made. The responsibility for redacting these personal identifiers rests solely with counsel and the parties. The Clerk and Court Reporter will not review each transcript for compliance with this rule.**<br><br>Notice of Intent to Redact due 2/19/2015. Redaction Request due 3/3/2015. Redacted Transcript Deadline set for 3/13/2015. Release of Transcript Restriction set for 5/11/2015. (sld) (Entered: 02/10/2015) |
| 02/10/2015 | 1451 | 2846 | STIPULATION #1 as to Identity of Miguel Colon by United States of America and Juan Briseno. (nac) (Entered: 02/24/2015) |
| 02/11/2015 | 1409 | | TRANSCRIPT of Jury Trial – Volume 14 – PM Session as to Juan Briseno held on February 10, 2015, before Judge Philip P. Simon. Court Reporter Kelly Fitzgerald, Telephone number 219–852–3616. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.<br><br>**IMPORTANT: Notice is hereby given that an official transcript of a proceeding has been filed by the court reporter in the above–captioned matter. The parties have seven (7) calendar days to file with the Court a Notice of Intent to Request Redaction of this transcript. Within 21 days of the filing of the transcript, a Redaction Request – Transcript shall be e–filed with the Court. Access to this request will be restricted to the Court and the attorneys of record in the case. If no such Notice and Redaction Request are filed, the transcript may be made remotely, electronically available to the public without redaction. Any party needing a copy of the transcript to** |

61

| | | | |
|---|---|---|---|
| | | | **review for redaction purposes may purchase a copy from the Court Reporter. Counsel are strongly urged to share this notice with all clients so that an informed decision about the inclusion of certain materials may be made. The responsibility for redacting these personal identifiers rests solely with counsel and the parties. The Clerk and Court Reporter will not review each transcript for compliance with this rule.**<br><br>Notice of Intent to Redact due 2/20/2015. Redaction Request due 3/4/2015. Redacted Transcript Deadline set for 3/16/2015. Release of Transcript Restriction set for 5/12/2015. (kf) (Entered: 02/11/2015) |
| 02/11/2015 | 1410 | 2702 | FRCP Rule 16 Summary of Expert Witness Expected Testimony by Juan Briseno. (Maksimovich, John) [Modified on 3/23/2015 to reflect that the filing is not a motion.] (dkw) (Entered: 02/11/2015) |
| 02/11/2015 | 1411 | | TRANSCRIPT of Volume 13–PM of Trial Proceedings as to Juan Briseno held on February 9, 2015, before Judge Philip P. Simon. Court Reporter Tina M. Gallucci, Telephone number 260–423–3060. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.<br><br>**IMPORTANT: Notice is hereby given that an official transcript of a proceeding has been filed by the court reporter in the above–captioned matter. The parties have seven (7) calendar days to file with the Court a Notice of Intent to Request Redaction of this transcript. Within 21 days of the filing of the transcript, a Redaction Request – Transcript shall be e–filed with the Court. Access to this request will be restricted to the Court and the attorneys of record in the case. If no such Notice and Redaction Request are filed, the transcript may be made remotely, electronically available to the public without redaction. Any party needing a copy of the transcript to review for redaction purposes may purchase a copy from the Court Reporter. Counsel are strongly urged to share this notice with all clients so that an informed decision about the inclusion of certain materials may be made. The responsibility for redacting these personal identifiers rests solely with counsel and the parties. The Clerk and Court Reporter will not review each transcript for compliance with this rule.**<br><br>Notice of Intent to Redact due 2/20/2015. Redaction Request due 3/4/2015. Redacted Transcript Deadline set for 3/16/2015. Release of Transcript Restriction set for 5/12/2015. (tg) (Entered: 02/11/2015) |
| 02/11/2015 | 1412 | 2747 | JURY TRIAL (6th DAY OF EVIDENCE) as to Juan Briseno held on 2/11/2015 before Chief Judge Philip P Simon. Parties present as previously noted. Govt continues to present evidence, does not conclude. Trial continued to Thursday 2/12/2015 at 8:30 a.m. Defendant REMANDED to custody of US Marshal.(Court Reporter Stacy Drohosky (am) and Kelly Fitzgerald (pm).) (nac) (Entered: 02/11/2015) |
| 02/11/2015 | 1413 | | TRANSCRIPT of Jury Trial – Volume 15–AM as to Juan Briseno held on February 11, 2015, before Judge Philip P. Simon. Court Reporter Stacy L. Drohosky, Telephone number (219) 852–3462. Tape Number: Stenographically Reported. Transcript may be viewed at the court public terminal or purchased |

| | | |
|---|---|---|
| | | through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.<br><br>**IMPORTANT: Notice is hereby given that an official transcript of a proceeding has been filed by the court reporter in the above–captioned matter. The parties have seven (7) calendar days to file with the Court a Notice of Intent to Request Redaction of this transcript. Within 21 days of the filing of the transcript, a Redaction Request – Transcript shall be e–filed with the Court. Access to this request will be restricted to the Court and the attorneys of record in the case. If no such Notice and Redaction Request are filed, the transcript may be made remotely, electronically available to the public without redaction. Any party needing a copy of the transcript to review for redaction purposes may purchase a copy from the Court Reporter. Counsel are strongly urged to share this notice with all clients so that an informed decision about the inclusion of certain materials may be made. The responsibility for redacting these personal identifiers rests solely with counsel and the parties. The Clerk and Court Reporter will not review each transcript for compliance with this rule.**<br><br>Notice of Intent to Redact due 2/20/2015. Redaction Request due 3/4/2015. Redacted Transcript Deadline set for 3/16/2015. Release of Transcript Restriction set for 5/12/2015. (sld) (Entered: 02/11/2015) |
| 02/12/2015 | 1414 | TRANSCRIPT of Jury Trial – Volume 15 – PM Session as to Juan Briseno held on February 11, 2015, before Judge Philip P. Simon. Court Reporter Kelly Fitzgerald, Telephone number 219–852–3616. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. <P>**IMPORTANT: Notice is hereby given that an official transcript of a proceeding has been filed by the court reporter in the above–captioned matter. The parties have seven (7) calendar days to file with the Court a Notice of Intent to Request Redaction of this transcript. Within 21 days of the filing of the transcript, a Redaction Request – Transcript shall be e–filed with the Court. Access to this request will be restricted to the Court and the attorneys of record in the case. If no such Notice and Redaction Request are filed, the transcript may be made remotely, electronically available to the public without redaction. Any party needing a copy of the transcript to review for redaction purposes may purchase a copy from the Court Reporter. Counsel are strongly urged to share this notice with all clients so that an informed decision about the inclusion of certain materials may be made. The responsibility for redacting these personal identifiers rests solely with counsel and the parties. The Clerk and Court Reporter will not review each transcript for compliance with this rule.</P>** Notice of Intent to Redact due 2/24/2015. Redaction Request due 3/5/2015. Redacted Transcript Deadline set for 3/16/2015. Release of Transcript Restriction set for 5/13/2015. (kf) (Entered: 02/12/2015) |
| 02/12/2015 | 1415 | TRANSCRIPT of Jury Trial – Volume 16–AM as to Juan Briseno held on February 12, 2015, before Judge Philip P. Simon. Court Reporter Stacy L. Drohosky, Telephone number (219) 852–3462. Tape Number: Stenographically Reported. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of |

| | | | |
|---|---|---|---|
| | | | Transcript Restriction. After that date it may be obtained through PACER.<br><br>**IMPORTANT: Notice is hereby given that an official transcript of a proceeding has been filed by the court reporter in the above–captioned matter. The parties have seven (7) calendar days to file with the Court a Notice of Intent to Request Redaction of this transcript. Within 21 days of the filing of the transcript, a Redaction Request – Transcript shall be e–filed with the Court. Access to this request will be restricted to the Court and the attorneys of record in the case. If no such Notice and Redaction Request are filed, the transcript may be made remotely, electronically available to the public without redaction. Any party needing a copy of the transcript to review for redaction purposes may purchase a copy from the Court Reporter. Counsel are strongly urged to share this notice with all clients so that an informed decision about the inclusion of certain materials may be made. The responsibility for redacting these personal identifiers rests solely with counsel and the parties. The Clerk and Court Reporter will not review each transcript for compliance with this rule.**<br><br>Notice of Intent to Redact due 2/23/2015. Redaction Request due 3/5/2015. Redacted Transcript Deadline set for 3/16/2015. Release of Transcript Restriction set for 5/13/2015. (sld) (Entered: 02/12/2015) |
| 02/12/2015 | 1417 | 2750 | JURY TRIAL (7th DAY OF EVIDENCE) as to Juan Briseno held on 2/12/2015 before Chief Judge Philip P Simon. Parties present as previously noted. Govt continues to present evidence but does not conclude. Schedule for trial next week: Tuesday – Friday, 2/17 – 2/20/15 due to the Presidents' Day Holiday on 2/16/15. Jury given instruction not to discuss case, read or do any research about the case while on this extended recess. Trial to resume on Tuesday 2/17/15 at 8:30 a.m. Defendant REMANDED to custody of US Marshal. (Court Reporter Stacy Drohosky (am) Kelly Fitzgerald (pm).) (nac) (Entered: 02/13/2015) |
| 02/13/2015 | 1418 | | TRANSCRIPT of Jury Trial – Volume 16 – PM Session as to Juan Briseno held on February 12, 2015, before Judge Philip P. Simon. Court Reporter Kelly Fitzgerald, Telephone number 219–852–3616. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.<br><br>**IMPORTANT: Notice is hereby given that an official transcript of a proceeding has been filed by the court reporter in the above–captioned matter. The parties have seven (7) calendar days to file with the Court a Notice of Intent to Request Redaction of this transcript. Within 21 days of the filing of the transcript, a Redaction Request – Transcript shall be e–filed with the Court. Access to this request will be restricted to the Court and the attorneys of record in the case. If no such Notice and Redaction Request are filed, the transcript may be made remotely, electronically available to the public without redaction. Any party needing a copy of the transcript to review for redaction purposes may purchase a copy from the Court Reporter. Counsel are strongly urged to share this notice with all clients so that an informed decision about the inclusion of certain materials may be made. The responsibility for redacting these personal identifiers rests solely with counsel and the parties. The Clerk and Court Reporter will not review each** |

|  |  |  |  |
|---|---|---|---|
|  |  |  | **transcript for compliance with this rule.**<br><br>Notice of Intent to Redact due 2/25/2015. Redaction Request due 3/6/2015. Redacted Transcript Deadline set for 3/16/2015. Release of Transcript Restriction set for 5/14/2015. (kf) (Entered: 02/13/2015) |
| 02/13/2015 | 1430 | 2779 | Writ of Habeas Corpus ad Testificandum Returned Executed for Jose Lopez on 2/12/15 in case as to Juan Briseno (mc) (Entered: 02/18/2015) |
| 02/16/2015 | 1420 | 2753 | MOTION to Compel , MOTION for Discovery , MOTION to Inspect *and Photograph Defendant's Tattoos* by United States of America as to Juan Briseno. (Attachments: # 1 Exhibit A – Photos of D's tattoos, # 2 Exhibit B – Letter to Beltran)(Hegyi – AUSA, Bruce) (Entered: 02/16/2015) |
| 02/17/2015 | 1421 | 2771 | MOTION for Writ of Habeas Corpus ad testificandum by United States of America as to Juan Briseno. (Nozick – AUSA, David) (Entered: 02/17/2015) |
| 02/17/2015 | 1422 | 2773 | ORDER for Extended Service as to Jury Panel Members as to Juan Briseno. Signed by Chief Judge Philip P Simon on 2/17/2015. (copy to financial office in South Bend). (nac) (Entered: 02/17/2015) |
| 02/17/2015 | 1423 | 2774 | ORDER granting 1421 Motion for Writ of Habeas Corpus Ad Testificandum for prisoner Jose Perez as to Juan Briseno (1).. Signed by Magistrate Judge Andrew P Rodovich on 2/17/15. cc: USM (2 certified copies) (mc) (Entered: 02/17/2015) |
| 02/17/2015 | 1425 | 2776 | JURY TRIAL (8th DAY OF EVIDENCE) as to Juan Briseno held on 2/17/2015 before Chief Judge Philip P Simon. Parties present as previously noted. Defense given one week to respond to the Govt's Motion 1420 . Stipulation #2 by parties entered. Parties discuss with the court the progression of trial and scheduling, Govt indicates that it is proceeding more quickly than anticipated and is ahead of schedule. Govt continues to present evidence, does not conclude. Trial continued to Wednesday, 2/18/2015 at 8:30 a.m. Defendant REMANDED to custody of US Marshal. (Court Reporter Stacy Drohosky (am) and Debra Bonk (pm).) (nac) (Entered: 02/17/2015) |
| 02/17/2015 | 1426 |  | TRANSCRIPT of Jury Trial – Volume 17–AM as to Juan Briseno held on February 17, 2015, before Judge Philip P. Simon. Court Reporter Stacy L. Drohosky, Telephone number (219) 852–3462. Tape Number: Stenographically Reported. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.<br><br>**IMPORTANT: Notice is hereby given that an official transcript of a proceeding has been filed by the court reporter in the above–captioned matter. The parties have seven (7) calendar days to file with the Court a Notice of Intent to Request Redaction of this transcript. Within 21 days of the filing of the transcript, a Redaction Request – Transcript shall be e–filed with the Court. Access to this request will be restricted to the Court and the attorneys of record in the case. If no such Notice and Redaction Request are filed, the transcript may be made remotely, electronically available to the public without redaction. Any party needing a copy of the transcript to review for redaction purposes may purchase a copy from the Court Reporter. Counsel are strongly urged to share this notice with all clients so that an informed decision about the inclusion of certain materials may be made. The** |

| | | | |
|---|---|---|---|
| | | | **responsibility for redacting these personal identifiers rests solely with counsel and the parties. The Clerk and Court Reporter will not review each transcript for compliance with this rule.**<br><br>Notice of Intent to Redact due 2/26/2015. Redaction Request due 3/10/2015. Redacted Transcript Deadline set for 3/20/2015. Release of Transcript Restriction set for 5/18/2015. (sld) (Entered: 02/17/2015) |
| 02/17/2015 | 1452 | 2848 | STIPULATION #2 as to Identity of Luis Ortiz by United States of America and Juan Briseno. (nac) (Entered: 02/24/2015) |
| 02/18/2015 | 1427 | | TRANSCRIPT of JURY TRIAL VOLUME 17 – PM as to Juan Briseno held on FEBRUARY 17, 2015, before Judge PHILIP P. SIMON. Court Reporter DEBRA J. BONK, Telephone number 574 246 8039 or debra_bonk@innd.uscourts.gov. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.<br><br>**IMPORTANT: Notice is hereby given that an official transcript of a proceeding has been filed by the court reporter in the above–captioned matter. The parties have seven (7) calendar days to file with the Court a Notice of Intent to Request Redaction of this transcript. Within 21 days of the filing of the transcript, a Redaction Request – Transcript shall be e–filed with the Court. Access to this request will be restricted to the Court and the attorneys of record in the case. If no such Notice and Redaction Request are filed, the transcript may be made remotely, electronically available to the public without redaction. Any party needing a copy of the transcript to review for redaction purposes may purchase a copy from the Court Reporter. Counsel are strongly urged to share this notice with all clients so that an informed decision about the inclusion of certain materials may be made. The responsibility for redacting these personal identifiers rests solely with counsel and the parties. The Clerk and Court Reporter will not review each transcript for compliance with this rule.**<br><br>Notice of Intent to Redact due 2/26/2015. Redaction Request due 3/11/2015. Redacted Transcript Deadline set for 3/23/2015. Release of Transcript Restriction set for 5/19/2015. (db) (Main Document 1427 replaced to correct volume number on 2/18/2015) (lpw). (Entered: 02/18/2015) |
| 02/18/2015 | 1431 | 2781 | JURY TRIAL (9th DAY OF EVIDENCE) as to Juan Briseno held on 2/18/2015 before Chief Judge Philip P Simon. Parties present as previously noted. Govt continues presentation of evidence. Scheduling discussed. Govt continues to present evidence, does not conclude. Jury excused. Discussion/argument with court ruling on witness issue. Trial continued to Thursday, 2/19/2015 at 8:30 a.m. Defendant REMANDED to custody of US Marshal. (Court Reporter Stacy Drohosky (am) and Debra Bonk (pm).) (nac). (Entered: 02/18/2015) |
| 02/18/2015 | 1432 | | TRANSCRIPT of Jury Trial – Volume 18–AM as to Juan Briseno held on February 18, 2015, before Judge Philip P. Simon. Court Reporter Stacy L. Drohosky, Telephone number (219) 852–3462. Tape Number: Stenographically Reported. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. |

66

| | | | |
|---|---|---|---|
| | | | **IMPORTANT: Notice is hereby given that an official transcript of a proceeding has been filed by the court reporter in the above–captioned matter. The parties have seven (7) calendar days to file with the Court a Notice of Intent to Request Redaction of this transcript. Within 21 days of the filing of the transcript, a Redaction Request – Transcript shall be e–filed with the Court. Access to this request will be restricted to the Court and the attorneys of record in the case. If no such Notice and Redaction Request are filed, the transcript may be made remotely, electronically available to the public without redaction. Any party needing a copy of the transcript to review for redaction purposes may purchase a copy from the Court Reporter. Counsel are strongly urged to share this notice with all clients so that an informed decision about the inclusion of certain materials may be made. The responsibility for redacting these personal identifiers rests solely with counsel and the parties. The Clerk and Court Reporter will not review each transcript for compliance with this rule.**<br><br>Notice of Intent to Redact due 2/27/2015. Redaction Request due 3/11/2015. Redacted Transcript Deadline set for 3/23/2015. Release of Transcript Restriction set for 5/19/2015. (sld) (Entered: 02/18/2015) |
| 02/18/2015 | 1453 | 2850 | STIPULATION #3 as to Identity of Harris Brown by United States of America and Juan Briseno. (nac) (Entered: 02/24/2015) |
| 02/19/2015 | 1433 | | TRANSCRIPT of JURY TRIAL, VOLUME 18–PM as to Juan Briseno held on FEBRUARY 18, 2015, before Judge PHILIP P. SIMON. Court Reporter DEBRA J. BONK, Telephone number 574 246 8039 or debra_bonk@innd.uscourts.gov. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.<br><P>**IMPORTANT: Notice is hereby given that an official transcript of a proceeding has been filed by the court reporter in the above–captioned matter. The parties have seven (7) calendar days to file with the Court a Notice of Intent to Request Redaction of this transcript. Within 21 days of the filing of the transcript, a Redaction Request – Transcript shall be e–filed with the Court. Access to this request will be restricted to the Court and the attorneys of record in the case. If no such Notice and Redaction Request are filed, the transcript may be made remotely, electronically available to the public without redaction. Any party needing a copy of the transcript to review for redaction purposes may purchase a copy from the Court Reporter. Counsel are strongly urged to share this notice with all clients so that an informed decision about the inclusion of certain materials may be made. The responsibility for redacting these personal identifiers rests solely with counsel and the parties. The Clerk and Court Reporter will not review each transcript for compliance with this rule.**</P> Notice of Intent to Redact due 2/27/2015. Redaction Request due 3/12/2015. Redacted Transcript Deadline set for 3/23/2015. Release of Transcript Restriction set for 5/20/2015. (db) (Entered: 02/19/2015) |
| 02/19/2015 | 1434 | | Writ of Habeas Corpus ad Testificandum for Jose Perez Returned Unexecuted in case as to Juan Briseno (kjp) (Entered: 02/19/2015) |
| 02/19/2015 | 1435 | | TRANSCRIPT of Jury Trial – Volume 19 as to Juan Briseno held on February 19, 2015, before Judge Philip P. Simon. Court Reporter Kelly M. Fitzgerald, |

Telephone number 219–852–3616. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.

**IMPORTANT: Notice is hereby given that an official transcript of a proceeding has been filed by the court reporter in the above–captioned matter. The parties have seven (7) calendar days to file with the Court a Notice of Intent to Request Redaction of this transcript. Within 21 days of the filing of the transcript, a Redaction Request – Transcript shall be e–filed with the Court. Access to this request will be restricted to the Court and the attorneys of record in the case. If no such Notice and Redaction Request are filed, the transcript may be made remotely, electronically available to the public without redaction. Any party needing a copy of the transcript to review for redaction purposes may purchase a copy from the Court Reporter. Counsel are strongly urged to share this notice with all clients so that an informed decision about the inclusion of certain materials may be made. The responsibility for redacting these personal identifiers rests solely with counsel and the parties. The Clerk and Court Reporter will not review each transcript for compliance with this rule.**

Notice of Intent to Redact due 3/2/2015. Redaction Request due 3/12/2015. Redacted Transcript Deadline set for 3/23/2015. Release of Transcript Restriction set for 5/20/2015. (kf) (Entered: 02/19/2015)

| 02/19/2015 | 1436 | 2784 | JURY TRIAL (10th DAY OF EVIDENCE) as to Juan Briseno held on 2/19/2015 before Chief Judge Philip P Simon. Parties present as previously noted. Govt continues to present evidence, does not conclude. Trial continued to Friday, 2/20/2015 at 8:30 a.m. Defendant REMANDED to custody of US Marshal. (Court Reporter Kelly Fitzgerald.) (nac) (Entered: 02/20/2015) |
|---|---|---|---|
| 02/20/2015 | 1437 | | TRANSCRIPT of Jury Trial – Volume 20–AM as to Juan Briseno held on February 20, 2015, before Judge Philip P. Simon. Court Reporter Stacy L. Drohosky, Telephone number (219) 852–3462. Tape Number: Stenographically Reported. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. |

**IMPORTANT: Notice is hereby given that an official transcript of a proceeding has been filed by the court reporter in the above–captioned matter. The parties have seven (7) calendar days to file with the Court a Notice of Intent to Request Redaction of this transcript. Within 21 days of the filing of the transcript, a Redaction Request – Transcript shall be e–filed with the Court. Access to this request will be restricted to the Court and the attorneys of record in the case. If no such Notice and Redaction Request are filed, the transcript may be made remotely, electronically available to the public without redaction. Any party needing a copy of the transcript to review for redaction purposes may purchase a copy from the Court Reporter. Counsel are strongly urged to share this notice with all clients so that an informed decision about the inclusion of certain materials may be made. The responsibility for redacting these personal identifiers rests solely with counsel and the parties. The Clerk and Court Reporter will not review each**

68

| | | | |
|---|---|---|---|
| | | | **transcript for compliance with this rule.**<br><br>Notice of Intent to Redact due 3/3/2015. Redaction Request due 3/13/2015. Redacted Transcript Deadline set for 3/23/2015. Release of Transcript Restriction set for 5/21/2015. (sld) (Entered: 02/20/2015) |
| 02/20/2015 | 1447 | 2840 | JURY TRIAL (11th DAY OF EVIDENCE) as to Juan Briseno held on 2/20/2015 before Chief Judge Philip P Simon. Parties present as previously noted. Govt continues to present evidence, concludes and rests. Court instructs jury not to read, listen to any news accounts, discuss this case, or visit any locations related to this trial. Jury released. Court's Santiago ruling. Scheduling discussed for the remainder of the trial. Motions by defense to be heard on Tuesday, 2/24/2015, attorneys to report at 8:30 a.m. Jury will next report on Tuesday, 2/24/2015. Defendant REMANDED to custody of US Marshal. (Court Reporter: Stacy Drohosky (am) and Debra Bonk (pm)). (nac) Modified on 2/24/2015 to correct detail. (nac). (Entered: 02/24/2015) |
| 02/20/2015 | 1454 | 2852 | STIPULATION #4 as to Identity of Miguel Mejias by United States of America and Juan Briseno. (nac) (Entered: 02/24/2015) |
| 02/20/2015 | 1455 | 2854 | STIPULATION #5 as to Identity of Michael Sessum by United States of America and Juan Briseno. (nac) (Entered: 02/24/2015) |
| 02/22/2015 | 1438 | | TRANSCRIPT of JURY TRIAL – VOLUME 20–PM as to Juan Briseno held on FEBRUARY 20, 2015, before Judge PHILIP P. SIMON. Court Reporter DEBRA J. BONK, Telephone number 574 246 8039 or debra_bonk@innd.uscourts.gov. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.<br>\<P>**IMPORTANT: Notice is hereby given that an official transcript of a proceeding has been filed by the court reporter in the above–captioned matter. The parties have seven (7) calendar days to file with the Court a Notice of Intent to Request Redaction of this transcript. Within 21 days of the filing of the transcript, a Redaction Request – Transcript shall be e–filed with the Court. Access to this request will be restricted to the Court and the attorneys of record in the case. If no such Notice and Redaction Request are filed, the transcript may be made remotely, electronically available to the public without redaction. Any party needing a copy of the transcript to review for redaction purposes may purchase a copy from the Court Reporter. Counsel are strongly urged to share this notice with all clients so that an informed decision about the inclusion of certain materials may be made. The responsibility for redacting these personal identifiers rests solely with counsel and the parties. The Clerk and Court Reporter will not review each transcript for compliance with this rule.**\</P> Notice of Intent to Redact due 3/3/2015. Redaction Request due 3/16/2015. Redacted Transcript Deadline set for 3/25/2015. Release of Transcript Restriction set for 5/26/2015. (db) (Entered: 02/22/2015) |
| 02/23/2015 | 1441 | 2787 | OBJECTION to 1206 Proposed Jury Instructions,. (Maksimovich, John) (Entered: 02/23/2015) |
| 02/23/2015 | 1442 | 2793 | Proposed Jury Instructions by Juan Briseno (Maksimovich, John) (Entered: 02/23/2015) |

| 02/23/2015 | 1443 | 2822 | Proposed Verdict Form by Juan Briseno (Maksimovich, John) (Entered: 02/23/2015) |
|---|---|---|---|
| 02/23/2015 | 1444 | | SEALED DOCUMENT (Affidavit of Process Server). (nac) (Entered: 02/23/2015) |
| 02/23/2015 | 1445 | | SEALED DOCUMENT (Affidavit of Process Server). (nac) (Entered: 02/23/2015) |
| 02/23/2015 | 1446 | | SEALED DOCUMENT (Affidavit of Process Server). (nac) (Entered: 02/23/2015) |
| 02/24/2015 | 1448 | 2843 | RESPONSE to Motion by Juan Briseno re 1420 MOTION to Compel MOTION for Discovery MOTION to Inspect *and Photograph Defendant's Tattoos* (Maksimovich, John) (Entered: 02/24/2015) |
| 02/24/2015 | 1449 | | SEALED DOCUMENT (Bench Warrant for Witness). (nac) (Entered: 02/24/2015) |
| 02/24/2015 | 1450 | | SEALED DOCUMENT (Bench Warrant for Witness). (nac) (nac). (Entered: 02/24/2015) |
| 02/24/2015 | 1456 | 2856 | STIPULATION (Exhibit H) regarding hair sample by United States of America and Juan Briseno. (nac) (Entered: 02/24/2015) |
| 02/24/2015 | 1457 | 2858 | JURY TRIAL (12TH DAY OF EVIDENCE) as to Juan Briseno held on 2/24/2015 before Chief Judge Philip P Simon. Parties present as previously noted. Defendant begins presentation of evidence. Stipulation (re: hair sample). Oral Motion for Judgment of Acquital by defense. Response from Govt as to the oral Motion for Judgment of Acquital. Ruling by Court – Court GRANTS Motion for Judgment of Acquital as to Counts 25 and 26 of Indictment as to Juan Briseno, the Motion for Judgment of Acquital on all other counts are DENIED. Discussion/argument on one defense witness. Court hears the testimony of this witness outside the presence of the jury. The testimony will be allowed, Govt does not object. Dft continues to present evidence. Jury excused and instructed to return on Wednesday, 2/25/15 at 8:00 am. Scheduling matters discussed. Court hears from SA Jason Gore after being placed under oath regarding efforts to serve subpoenas upon two witnesses for defense. Defense case to continue on 2/25/2015 at 8:30 a.m. Final Argument will be held on 2/26/2015 with each side being given three hours for closing argument. Bench warrants are issued for two defense witnesses. Defendant REMANDED to custody of US Marshal. (Court Reporter Stacy Drohosky.) (nac) (Entered: 02/24/2015) |
| 02/24/2015 | 1458 | | TRANSCRIPT of Jury Trial – Volume 21 as to Juan Briseno held on February 24, 2015, before Judge Philip P. Simon. Court Reporter Stacy L. Drohosky, Telephone number (219) 852–3462. Tape Number: Stenographically Reported. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. **IMPORTANT: Notice is hereby given that an official transcript of a proceeding has been filed by the court reporter in the above–captioned matter. The parties have seven (7) calendar days to file with the Court a Notice of Intent to Request Redaction of this transcript. Within 21 days of the filing of the transcript, a Redaction Request – Transcript shall be e–filed with** |

70

| | | | |
|---|---|---|---|
| | | | **the Court. Access to this request will be restricted to the Court and the attorneys of record in the case. If no such Notice and Redaction Request are filed, the transcript may be made remotely, electronically available to the public without redaction. Any party needing a copy of the transcript to review for redaction purposes may purchase a copy from the Court Reporter. Counsel are strongly urged to share this notice with all clients so that an informed decision about the inclusion of certain materials may be made. The responsibility for redacting these personal identifiers rests solely with counsel and the parties. The Clerk and Court Reporter will not review each transcript for compliance with this rule.**<br><br>Notice of Intent to Redact due 3/5/2015. Redaction Request due 3/17/2015. Redacted Transcript Deadline set for 3/27/2015. Release of Transcript Restriction set for 5/26/2015. (sld) (Entered: 02/24/2015) |
| 02/24/2015 | 1482 | 3070 | ORDER DISMISSING COUNTS for Juan Briseno (1): Judgment of Acquital on Counts 25 and 26 of the 4th Superseding Indictment is GRANTED on 2/24/2015 at trial. Oral Order by Chief Judge Philip P. Simon in open court on 2/24/2015. (nac) (Entered: 03/02/2015) |
| 02/25/2015 | 1459 | 2861 | Writ of Habeas Corpus ad Testificandum Returned Executed for Corey Walton on 2/24/15 in case as to Juan Briseno (mc) (Entered: 02/25/2015) |
| 02/25/2015 | 1463 | | ARREST Warrant Returned Executed on 2/25/15 in case as to Juan Briseno. (eml) (eml). (Entered: 02/25/2015) |
| 02/25/2015 | 1464 | | ARREST Warrant Returned Executed on 2/25/15 in case as to Juan Briseno. (eml) (eml). (Entered: 02/25/2015) |
| 02/25/2015 | 1465 | 2863 | JURY TRIAL (13TH DAY OF EVIDENCE) as to Juan Briseno held on 2/25/2015 before Chief Judge Philip P Simon. Parties present as previously noted. Defense continues to present evidence, concludes and rests. Dft sworn regarding dft's right not to testify, the dft informs the Court that he does not wish to testify. Govt presents rebuttal evidence and then rests. No sur–rebuttal evidence by dft, defense rests. Jury excused with overnight instruction and instructed to return on Thursday, 2/26/2015 at 8:30 a.m. for final argument, court's instruction on the law and deliberation. Defense renews Rule 29 Motion after conclusion of rebuttal evidence–DENIED. Argument heard on Motion 1420 –DENIED. Discussion on penalty phase (if required) related to the number of witnesses per victim that can be called. Court: no specific number but reasonable related to the circumstances. Govt shall provide to the Court a list of witnesses to be called in the penalty phase (if required) by end of day 2/27/15. Instructon Conference held – dft waives his appearance at the Instruction Conference. (Present at Instruction Conference: David Nozick, AUSA, Arlington Foley and John Maksimovich). Defendant REMANDED to custody of US Marshal. (Court Reporter: Stacy Drohosky (am) and Richard Ehrlich (pm).) (nac) (Entered: 02/25/2015) |
| 02/25/2015 | 1466 | | TRANSCRIPT of Jury Trial – Volume 22–AM as to Juan Briseno held on February 25, 2015, before Judge Phlip P. Simon. Court Reporter Stacy L. Drohosky, Telephone number (219) 852–3462. Tape Number: Stenographically Reported. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. |

| | | | |
|---|---|---|---|
| | | | **IMPORTANT: Notice is hereby given that an official transcript of a proceeding has been filed by the court reporter in the above–captioned matter. The parties have seven (7) calendar days to file with the Court a Notice of Intent to Request Redaction of this transcript. Within 21 days of the filing of the transcript, a Redaction Request – Transcript shall be e–filed with the Court. Access to this request will be restricted to the Court and the attorneys of record in the case. If no such Notice and Redaction Request are filed, the transcript may be made remotely, electronically available to the public without redaction. Any party needing a copy of the transcript to review for redaction purposes may purchase a copy from the Court Reporter. Counsel are strongly urged to share this notice with all clients so that an informed decision about the inclusion of certain materials may be made. The responsibility for redacting these personal identifiers rests solely with counsel and the parties. The Clerk and Court Reporter will not review each transcript for compliance with this rule.**<br><br>Notice of Intent to Redact due 3/6/2015. Redaction Request due 3/18/2015. Redacted Transcript Deadline set for 3/30/2015. Release of Transcript Restriction set for 5/26/2015. (sld) (Entered: 02/25/2015) |
| 02/25/2015 | 1467 | | TRANSCRIPT of Jury Trial – Volume 22–PM as to Juan Briseno held on February 25, 2015, before Judge Philip P. Simon. Court Reporter Richard Ehrlich, Telephone number (219) 852–6557. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.<br><br>**IMPORTANT: Notice is hereby given that an official transcript of a proceeding has been filed by the court reporter in the above–captioned matter. The parties have seven (7) calendar days to file with the Court a Notice of Intent to Request Redaction of this transcript. Within 21 days of the filing of the transcript, a Redaction Request – Transcript shall be e–filed with the Court. Access to this request will be restricted to the Court and the attorneys of record in the case. If no such Notice and Redaction Request are filed, the transcript may be made remotely, electronically available to the public without redaction. Any party needing a copy of the transcript to review for redaction purposes may purchase a copy from the Court Reporter. Counsel are strongly urged to share this notice with all clients so that an informed decision about the inclusion of certain materials may be made. The responsibility for redacting these personal identifiers rests solely with counsel and the parties. The Clerk and Court Reporter will not review each transcript for compliance with this rule.**<br><br>Notice of Intent to Redact due 3/6/2015. Redaction Request due 3/18/2015. Redacted Transcript Deadline set for 3/30/2015. Release of Transcript Restriction set for 5/26/2015. (sld) (Entered: 02/25/2015) |
| 02/26/2015 | 1469 | 2866 | ORDER denying 1420 Motion for Production of Unprivileged, Non–Testimonial Evidence as to Juan Briseno (1). Signed by Chief Judge Philip P Simon on 2/26/15. (mc) (Entered: 02/26/2015) |
| 02/26/2015 | 1470 | | TRANSCRIPT of Jury Trial as to Juan Briseno held on February 26, 2015, before Judge Philip P. Simon. Court Reporter Richard D. Ehrlich, Telephone number |

| | | | |
|---|---|---|---|
| | | | 219–852–6557. Tape Number: NA. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.<br><br>**IMPORTANT: Notice is hereby given that an official transcript of a proceeding has been filed by the court reporter in the above–captioned matter. The parties have seven (7) calendar days to file with the Court a Notice of Intent to Request Redaction of this transcript. Within 21 days of the filing of the transcript, a Redaction Request – Transcript shall be e–filed with the Court. Access to this request will be restricted to the Court and the attorneys of record in the case. If no such Notice and Redaction Request are filed, the transcript may be made remotely, electronically available to the public without redaction. Any party needing a copy of the transcript to review for redaction purposes may purchase a copy from the Court Reporter. Counsel are strongly urged to share this notice with all clients so that an informed decision about the inclusion of certain materials may be made. The responsibility for redacting these personal identifiers rests solely with counsel and the parties. The Clerk and Court Reporter will not review each transcript for compliance with this rule.**<br><br>Notice of Intent to Redact due 3/9/2015. Redaction Request due 3/19/2015. Redacted Transcript Deadline set for 3/30/2015. Release of Transcript Restriction set for 5/27/2015. (rde) (Entered: 02/26/2015) |
| 02/26/2015 | 1473 | 2889 | JURY TRIAL (14th DAY – Final Argument and Instructions) as to Juan Briseno held on 2/26/2015 before Chief Judge Philip P Simon. Parties present as previously noted. Final Arguments presented. Jury instructed as to the law on this case. Court security officers sworn to take charge of jury. Jurors 1–12 exit courtriin to begin deliberation once they receive all the evidence. Court provides instructions to alternate jurors, after consultation with counsel the court excuses alternate juror #5, juror #149. alternate jurors 1–4 are instructed that they will be advised this weekend by the court if they need to return to the courthouse on Monday, March 2, 2015 for the penalty phase of the case. Note from jury received requesting to deliberate until 7:00 p.m. Court excuses deliberating jurors earlier due to weather conditions. Jurors instructed to return by 8:30 a.m. on Friday, 2/27/2015 for deliberation. Once all jurors are present, they may commence their deliberation. Defendant REMANDED to custody of US Marshal. (Court Reporter Richard Ehrlich (am) and Stacy Drohosky (pm).) (nac) (Entered: 02/27/2015) |
| 02/27/2015 | 1471 | | TRANSCRIPT of Jury Trial – Volume 23–PM as to Juan Briseno held on February 26, 2015, before Judge Philip P. Simon. Court Reporter Stacy L. Drohosky, Telephone number (219) 852–3462. Tape Number: Stenographically Reported. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.<br><br>**IMPORTANT: Notice is hereby given that an official transcript of a proceeding has been filed by the court reporter in the above–captioned matter. The parties have seven (7) calendar days to file with the Court a Notice of Intent to Request Redaction of this transcript. Within 21 days of the filing of the transcript, a Redaction Request – Transcript shall be e–filed with** |

73

| | | | |
|---|---|---|---|
| | | | **the Court. Access to this request will be restricted to the Court and the attorneys of record in the case. If no such Notice and Redaction Request are filed, the transcript may be made remotely, electronically available to the public without redaction. Any party needing a copy of the transcript to review for redaction purposes may purchase a copy from the Court Reporter. Counsel are strongly urged to share this notice with all clients so that an informed decision about the inclusion of certain materials may be made. The responsibility for redacting these personal identifiers rests solely with counsel and the parties. The Clerk and Court Reporter will not review each transcript for compliance with this rule.**<br><br>Notice of Intent to Redact due 3/10/2015. Redaction Request due 3/20/2015. Redacted Transcript Deadline set for 3/30/2015. Release of Transcript Restriction set for 5/28/2015. (sld) (Entered: 02/27/2015) |
| 02/27/2015 | 1472 | 2873 | NOTICE *Response to Defendant's Proposed Mitigating Factors* by United States of America as to Juan Briseno re 1442 Proposed Jury Instructions (Hegyi – AUSA, Bruce) (Entered: 02/27/2015) |
| 02/27/2015 | 1475 | 2892 | NOTICE *Amended Response to Defendant's Proposed Mitigation Factors* by United States of America as to Juan Briseno re 1472 Notice (Other) (Hegyi – AUSA, Bruce) (Entered: 02/27/2015) |
| 02/27/2015 | 1486 | 3285 | JURY TRIAL (15th DAY – DELIBERATION and VERDICT) as to Juan Briseno held on 2/27/2015 before Chief Judge Philip P Simon. Parties present as previously noted. Jurors (12) return to deliberate, commence deliberation at 8:20 a.m. and advise the Court they have reached a verdict at approximately 7:30 p.m. During deliberation one note received from the jury asking to view a particular piece(s) of evidence. Parties/Court assemble to discuss note, Govt physical exhibits 34, 35, 36 and 37 are provided to the jury for their examination. Jury in open court to return verdicts (8:07 p.m.): FINDING dft Juan Briseno: GUILTY on Counts 1 and 2. Count 9–GUILTY. Count 13–GUILTY. Count 15–GUILTY. Count 17–NOT GUILTY. Count 19–GUILTY. Count 21–GUILTY. Count 23–GUILTY. Count 24–GUILTY. Count 27–NOT GUILTY. Count 28–NOT GUILTY. Count 29–NOT GUILTY. Count 30–NOT GUILTY. Jury polled with no change in verdicts. Court orders that the jury return for the penalty phase on Tuesday, March 3, 2015 by 8:00 a.m., to begin at 8:30 a.m. The alternate jurors will be called personally to advise them of the date and time to report. Projected time frame for penalty phase is less than one week. Jury reminded not to listen, read or do any research into this case even though now the verdcits have been returned, the trial is not yet concluded. Jury excused. Forefeiture issue briefly discussed, the dft does not contest the forefeiture. Deadline for motion regarding tattoos to be filed by Saturday, 2/28/2015. Next proceeding: penalty phase to begin on Tuesday, 3/3/2015 at 8:30 a.m. Defendant REMANDED to custody of US Marshal.(Court Reporter Stacy Drohosky.) (nac) (Entered: 03/02/2015) |
| 02/27/2015 | 1488 | 3291 | JURY VERDICT as to Juan Briseno (1): Finding dft GUILTY on Counts 1, 2, 9, 13, 15, 19, 21, 23 and 24 of the 4th Superseding Indictment. FINDING dft Juan Briseno NOT GUILTY on counts 17, 27, 28, 29, and 30 of the 4th Superseding Indictment. (Note: this version of the Jury Vedict redacts the signatures of the jurors. The original verdict is placed under seal). (nac) (Entered: 03/02/2015) |
| 02/27/2015 | 1489 | | JURY VERDICT (SEALED DOCUMENT). Contains original juror signatures. |

| | | | |
|---|---|---|---|
| | | | (nac) (Entered: 03/02/2015) |
| 02/27/2015 | 1492 | | JURY NOTES (3) from Jury Trial as to Juan Briseno. (nac) Modified on 3/3/2015 (nac). (Entered: 03/02/2015) |
| 02/27/2015 | 1493 | | WITNESS LIST/EXHIBIT LIST (Guilt Phase) from the Jury Trial (Guilt Phase) of Juan Briseno. (nac). (Entered: 03/02/2015) |
| 02/27/2015 | 1499 | 3418 | COURT'S PROPOSED JURY INSTRUCTIONS (Guilt Phase) to Juan Briseno. (nac) Modified on 3/3/2015 adding detail. (nac). Modified on 3/3/2015 (nac). (Entered: 03/03/2015) |
| 02/27/2015 | 1500 | 3494 | COURT'S FINAL JURY INSTRUCTIONS (Guilt Phase) as to Juan Briseno. (nac) (Entered: 03/03/2015) |
| 02/27/2015 | 1501 | 3570 | COURT'S PROPOSED VERDICT FORM (Guilt Phase) as to Juan Briseno. (nac) (Entered: 03/03/2015) |
| 02/27/2015 | 1502 | 3592 | COURT'S FINAL VERDICT FORM (Guilt Phase) as to Juan Briseno. (nac). (Entered: 03/03/2015) |
| 02/28/2015 | 1476 | 2908 | MOTION in Limine *to Prohibit Prosecutorial Misconduct In Summation* by Juan Briseno. (Maksimovich, John) (Entered: 02/28/2015) |
| 02/28/2015 | 1477 | 3011 | MOTION To File Over–Length Motion re 1476 MOTION in Limine *to Prohibit Prosecutorial Misconduct In Summation* by Juan Briseno. (Maksimovich, John) (Entered: 02/28/2015) |
| 03/01/2015 | 1478 | 3013 | MOTION in Limine *Regarding Penalty–Phase Evidence* by Juan Briseno. (Maksimovich, John) (Entered: 03/01/2015) |
| 03/01/2015 | 1479 | 3017 | NOTICE –*Defendant's Reply In Support of Mitigating Factors* re 1475 Notice (Other), 1442 Proposed Jury Instructions (Maksimovich, John) (Entered: 03/01/2015) |
| 03/01/2015 | 1480 | 3032 | Second MOTION to Compel *Production of Unprivileged, Non–Testimonial, Evidence* by United States of America as to Juan Briseno. (Attachments: # 1 Exhibit A (photos of D's Tattoos), # 2 Exhibit B (D's Letter to Beltran), # 3 Exhibit C (S.A. Gore Declaration))(Hegyi – AUSA, Bruce) (Entered: 03/01/2015) |
| 03/02/2015 | 1481 | | TRANSCRIPT of Jury Trial – Volume 24 as to Juan Briseno held on February 27, 2015, before Judge Philip P. Simon. Court Reporter Stacy L. Drohosky, Telephone number (219) 852–3462. Tape Number: Stenographically Reported. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. <br><br> **IMPORTANT: Notice is hereby given that an official transcript of a proceeding has been filed by the court reporter in the above–captioned matter. The parties have seven (7) calendar days to file with the Court a Notice of Intent to Request Redaction of this transcript. Within 21 days of the filing of the transcript, a Redaction Request – Transcript shall be e–filed with the Court. Access to this request will be restricted to the Court and the attorneys of record in the case. If no such Notice and Redaction Request are filed, the transcript may be made remotely, electronically available to the public without redaction. Any party needing a copy of the transcript to** |

| | | | |
|---|---|---|---|
| | | | **review for redaction purposes may purchase a copy from the Court Reporter. Counsel are strongly urged to share this notice with all clients so that an informed decision about the inclusion of certain materials may be made. The responsibility for redacting these personal identifiers rests solely with counsel and the parties. The Clerk and Court Reporter will not review each transcript for compliance with this rule.**<br><br>Notice of Intent to Redact due 3/10/2015. Redaction Request due 3/23/2015. Redacted Transcript Deadline set for 4/2/2015. Release of Transcript Restriction set for 6/1/2015. (sld) (Entered: 03/02/2015) |
| 03/02/2015 | 1483 | 3073 | ORDER: Government to file, no later than Wednesday 3/4/2015, a response to defendant Juan Briseno's 1476 Motion in Limine to Prohibit Specified Types of Prosecutorial Misconduct in Penalty−Phase Summation. Signed by Chief Judge Philip P Simon on 3/2/2015. (tc) (Entered: 03/02/2015) |
| 03/02/2015 | 1485 | 3075 | MOTION TO PRECLUDE IMPROPER CROSS−EXAMINATION OF DEFENSE EXPERTS AND REBUTTAL TESTIMONY FROM GOVERNMENT WITNESSES ON FUTURE DANGEROUSNESS NON−STATUTORY AGGRAVATOR, OR, IN THE ALTERNATIVE, FOR DISCOVERY by Juan Briseno. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C)(Maksimovich, John) (Entered: 03/02/2015) |
| 03/02/2015 | 1487 | 3288 | REPLY TO RESPONSE to Motion by Juan Briseno re 1480 Second MOTION to Compel *Production of Unprivileged, Non−Testimonial, Evidence* (Maksimovich, John) (Entered: 03/02/2015) |
| 03/02/2015 | 1491 | 3316 | NOTICE *of Request to Charge at Commencement of Penalty Phase* (Maksimovich, John) (Entered: 03/02/2015) |
| 03/02/2015 | 1494 | 3326 | RESPONSE by United States of America to 1491 Notice (Other). (Hegyi − AUSA, Bruce) (Entered: 03/02/2015) |
| 03/02/2015 | 1495 | 3331 | Supplemental MOTION in Limine *to Prohibit Cross−Examination of Defense Expert About Minor Personnel Matter* by Juan Briseno. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C)(Maksimovich, John) (Entered: 03/02/2015) |
| 03/03/2015 | 1496 | 3411 | NOTICE *Reply in Support of Request for Penalty Phase Introduction* re 1494 Response/Reply/Objection, 1491 Notice (Other) (Maksimovich, John) (Entered: 03/03/2015) |
| 03/03/2015 | 1497 | 3416 | MOTION in Limine *to Exclude Videos of Prison Violence* by Juan Briseno. (Maksimovich, John) (Entered: 03/03/2015) |
| 03/03/2015 | 1505 | 3614 | JURY TRIAL −(16th Day − PENALTY PHASE− 1st DAY) as to Juan Briseno held on 3/3/2015 before Chief Judge Philip P Simon. Parties present as previously noted. Discussion on recent motions filed. Discussion and rulings on 1478 and 1495 . Oral Motion for Sep of Witnesses by defense, shortly thereafter motion is withdrawn. Regarding Govt Motion to Compel, Motion for Discovery, Motion to Inspect and Photograph Dft's Tattoos 1480 : Court GRANTS this motion. The dft shall submit to photographs of his tattoos. Court to issue an order on this issue. Discussion on the scope of mitigators, Court will instruct the jury. Discussion on witness issue regarding a shooting. The defense advises an interpreter is needed for 3/4/2015. Court's Preliminary Instructions to the jury. Opening Statements by Govt and defense counsel. Govt presents evidence in penalty phase. Court ruling |

| | | | |
|---|---|---|---|
| | | | on tattoo issue, finding the subject is relevant. Stipulation signed by parties and read to the jury (regarding date of Indictment, date of arrest and special findings). Govt continues to present evidence, concludes and rests. Jury excused and ordered to return on Wednesday, 3/4/2015 at 9:00 a.m. Jury given overnight instruction. Court hears argument as to Rule 29 motion by defense, gateway and aggravating factors. Court takes Rule 29 motion under advisement. Attorneys to return 3/4/2015 at 8:15 for further discussion. Scheduling matters discussed. Request for an interpreter is withdrawn by the defense. Dft is REMANDED to custody of US Marshal.(Court Reporter Stacy Drohosky (am) and Joanne Hoffman (pm).) (nac). Modified on 3/20/2015 to add detail. (nac). (Entered: 03/03/2015) |
| 03/03/2015 | 1506 | | TRANSCRIPT of Jury Trial – Volume 25 – Penalty Phase as to Juan Briseno held on March 3, 2015, before Judge Philip P. Simon. Court Reporter Stacy L. Drohosky, Telephone number (219) 852–3462. Tape Number: Stenographically Reported. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.<br><br>**IMPORTANT: Notice is hereby given that an official transcript of a proceeding has been filed by the court reporter in the above–captioned matter. The parties have seven (7) calendar days to file with the Court a Notice of Intent to Request Redaction of this transcript. Within 21 days of the filing of the transcript, a Redaction Request – Transcript shall be e–filed with the Court. Access to this request will be restricted to the Court and the attorneys of record in the case. If no such Notice and Redaction Request are filed, the transcript may be made remotely, electronically available to the public without redaction. Any party needing a copy of the transcript to review for redaction purposes may purchase a copy from the Court Reporter. Counsel are strongly urged to share this notice with all clients so that an informed decision about the inclusion of certain materials may be made. The responsibility for redacting these personal identifiers rests solely with counsel and the parties. The Clerk and Court Reporter will not review each transcript for compliance with this rule.**<br><br>Notice of Intent to Redact due 3/12/2015. Redaction Request due 3/24/2015. Redacted Transcript Deadline set for 4/3/2015. Release of Transcript Restriction set for 6/1/2015. (sld) (Entered: 03/03/2015) |
| 03/03/2015 | 1524 | 3678 | STIPULATION of Govt and dft Juan Briseno during trial on 3/3/2015: as to the arrest of dft Juan Briseno on Indictment on 6/24/11 with special findings that notified the dft that he was potentially eligible for the death penalty in this case. (nac). (Entered: 03/10/2015) |
| 03/04/2015 | 1507 | | TRANSCRIPT of Jury Trial–Penalty Phase, Volume 25–PM, as to Juan Briseno held on March 3, 2015, before Judge Philip P. Simon. Court Reporter Joanne Hoffman, Telephone number 574–246–8038. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. <P>**IMPORTANT: Notice is hereby given that an official transcript of a proceeding has been filed by the court reporter in the above–captioned matter. The parties have seven (7) calendar days to file with the Court a Notice of Intent to Request Redaction of this transcript. Within 21 days of the filing of the transcript, a Redaction Request – Transcript shall** |

|  |  |  |  |
|---|---|---|---|
|  |  |  | **be e–filed with the Court. Access to this request will be restricted to the Court and the attorneys of record in the case. If no such Notice and Redaction Request are filed, the transcript may be made remotely, electronically available to the public without redaction. Any party needing a copy of the transcript to review for redaction purposes may purchase a copy from the Court Reporter. Counsel are strongly urged to share this notice with all clients so that an informed decision about the inclusion of certain materials may be made. The responsibility for redacting these personal identifiers rests solely with counsel and the parties. The Clerk and Court Reporter will not review each transcript for compliance with this rule.</P>** Notice of Intent to Redact due 3/13/2015. Redaction Request due 3/25/2015. Redacted Transcript Deadline set for 4/6/2015. Release of Transcript Restriction set for 6/2/2015. (jh) (Entered: 03/04/2015) |
| 03/04/2015 | 1509 | 3617 | MOTION TO FILE OVER–LENGTH RESPONSE by United States of America as to Juan Briseno. (Nozick – AUSA, David) (Entered: 03/04/2015) |
| 03/04/2015 | 1510 | 3620 | RESPONSE to Motion by United States of America as to Juan Briseno re 1476 MOTION in Limine *to Prohibit Prosecutorial Misconduct In Summation* (Nozick – AUSA, David) (Entered: 03/04/2015) |
| 03/04/2015 | 1511 | 3664 | JURY TRIAL – (17th DAY–PENALTY PHASE–2ND DAY) as to Juan Briseno held on 3/4/2015 before Chief Judge Philip P Simon. Parties present as previously noted. Rule 29 Motion argument continues. Ruling by the Court on Rule 29 Motion. Defense begins presentation of penalty phase evidence. Motions in Limine discussed regarding cross–exam concerning instances of violent conduct in prison. Argument heard, Court ruling on 1485 and 1497 . The videos that the Govt provided to the Court will be excluded. Defense continues to present evidence. Information regarding juror #129 provided to parties by the Court. Parties have no objection to excusing juror #129 – juror #129 excused from further service in this trial. (Jury panel now consists of 12 regular jurors and 3 alternate jurors). Evidence concludes for the day. Jurors instructed to return on Thursday, 3/5/2015 at 8:30 a.m. Discussion with attorneys on scheduling. Court will be in session on Friday, 3/6/15. Trial continued to Thursday, 3/5/2015 at 8:30 a.m. Defense renews request for an interpreter, interpreter obtained. Defendant REMANDED to custody of US Marshal. (Court Reporter: Stacy Drohosky (am) and Joanne Hoffman (pm).) (nac) Modified on 3/4/2015 to provide additional info re: interpreter). (nac). Modified on 3/20/2015 to add detail. (nac). (Entered: 03/04/2015) |
| 03/04/2015 | 1512 |  | TRANSCRIPT of Jury Trial – Volume 26–AM – Penalty Phase as to Juan Briseno held on March 4, 2015, before Judge Philip P. Simon. Court Reporter Stacy L. Drohosky, Telephone number (219) 852–3462. Tape Number: Stenographically Reported. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. <br><br>**IMPORTANT: Notice is hereby given that an official transcript of a proceeding has been filed by the court reporter in the above–captioned matter. The parties have seven (7) calendar days to file with the Court a Notice of Intent to Request Redaction of this transcript. Within 21 days of the filing of the transcript, a Redaction Request – Transcript shall be e–filed with** |

| | | | |
|---|---|---|---|
| | | | **the Court. Access to this request will be restricted to the Court and the attorneys of record in the case. If no such Notice and Redaction Request are filed, the transcript may be made remotely, electronically available to the public without redaction. Any party needing a copy of the transcript to review for redaction purposes may purchase a copy from the Court Reporter. Counsel are strongly urged to share this notice with all clients so that an informed decision about the inclusion of certain materials may be made. The responsibility for redacting these personal identifiers rests solely with counsel and the parties. The Clerk and Court Reporter will not review each transcript for compliance with this rule.** <br><br> Notice of Intent to Redact due 3/13/2015. Redaction Request due 3/25/2015. Redacted Transcript Deadline set for 4/6/2015. Release of Transcript Restriction set for 6/2/2015. (sld) (Entered: 03/04/2015) |
| 03/05/2015 | <u>1513</u> | | TRANSCRIPT of Jury Trial – Penalty Phase, Volume 26–PM, as to Juan Briseno held on March 4, 2015, before Judge Philip P. Simon. Court Reporter Joanne M. Hoffman, Telephone number 574–246–8038. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. <P>**IMPORTANT: Notice is hereby given that an official transcript of a proceeding has been filed by the court reporter in the above–captioned matter. The parties have seven (7) calendar days to file with the Court a Notice of Intent to Request Redaction of this transcript. Within 21 days of the filing of the transcript, a Redaction Request – Transcript shall be e–filed with the Court. Access to this request will be restricted to the Court and the attorneys of record in the case. If no such Notice and Redaction Request are filed, the transcript may be made remotely, electronically available to the public without redaction. Any party needing a copy of the transcript to review for redaction purposes may purchase a copy from the Court Reporter. Counsel are strongly urged to share this notice with all clients so that an informed decision about the inclusion of certain materials may be made. The responsibility for redacting these personal identifiers rests solely with counsel and the parties. The Clerk and Court Reporter will not review each transcript for compliance with this rule.</P>** Notice of Intent to Redact due 3/13/2015. Redaction Request due 3/26/2015. Redacted Transcript Deadline set for 4/6/2015. Release of Transcript Restriction set for 6/3/2015. (jh) (Entered: 03/05/2015) |
| 03/05/2015 | <u>1514</u> | 3667 | Writ of Habeas Corpus ad Testificandum Returned Executed for Guillermo Briseno on 3/4/15 in case as to Juan Briseno. (kjp) (Entered: 03/05/2015) |
| 03/05/2015 | <u>1515</u> | | TRANSCRIPT of Jury Trial as to Juan Briseno held on March 5, 2015, before Judge Philip P. Simon. Court Reporter Richard D. Ehrlich, Telephone number 219–852–6557. Tape Number: NA. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. <br><br> **IMPORTANT: Notice is hereby given that an official transcript of a proceeding has been filed by the court reporter in the above–captioned matter. The parties have seven (7) calendar days to file with the Court a Notice of Intent to Request Redaction of this transcript. Within 21 days of the** |

| | | | |
|---|---|---|---|
| | | | **filing of the transcript, a Redaction Request – Transcript shall be e–filed with the Court. Access to this request will be restricted to the Court and the attorneys of record in the case. If no such Notice and Redaction Request are filed, the transcript may be made remotely, electronically available to the public without redaction. Any party needing a copy of the transcript to review for redaction purposes may purchase a copy from the Court Reporter. Counsel are strongly urged to share this notice with all clients so that an informed decision about the inclusion of certain materials may be made. The responsibility for redacting these personal identifiers rests solely with counsel and the parties. The Clerk and Court Reporter will not review each transcript for compliance with this rule.**<br><br>Notice of Intent to Redact due 3/16/2015. Redaction Request due 3/26/2015. Redacted Transcript Deadline set for 4/6/2015. Release of Transcript Restriction set for 6/3/2015. (rde) (Entered: 03/05/2015) |
| 03/05/2015 | 1517 | 3669 | JURY TRIAL–(18TH DAY–PENALTY PHASE–3RD DAY) as to Juan Briseno held on 3/5/2015 before Chief Judge Philip P Simon. Parties present as previously noted. Defense continues to present evidence. Interpreter Kathleen O'Hanlon appears to interpret English/Spanish for one defense witness. Interpreter is sworn under oath and interprets for Spanish speaking witness. Court hears Govt rebuttal witness out of order due to scheduling matters with sur–rebuttal witness following. Defendant continues to present evidence. Dft indicates that he will not testify after being placed under oath for inquiry by the court. Defense renews Rule 29 motion – DENIED. Defense rests penalty phase. Govt rests penalty phase. Trial continued to Friday, 3/6/2015 with Instruction Conference to be held with attorneys at 8:00 a.m. Final arguments, penalty phase instruction on the law in this case and deliberations to follow. Instructions provided to attorneys at conclusion of the day in preparation of Instruction Conference to be held on 3/6/15. Defendant REMANDED to custody of US Marshal.(Court Reporter: Richard Ehrlich (am) and Joanne Hoffman (pm).) (nac). (Entered: 03/06/2015) |
| 03/06/2015 | 1516 | | TRANSCRIPT of Jury Trial – Penalty Phase, Vol. 27–PM, as to Juan Briseno held on March 5, 2015, before Judge Philip P. Simon. Court Reporter Joanne Hoffman, Telephone number 574–246–8038. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. <P>**IMPORTANT: Notice is hereby given that an official transcript of a proceeding has been filed by the court reporter in the above–captioned matter. The parties have seven (7) calendar days to file with the Court a Notice of Intent to Request Redaction of this transcript. Within 21 days of the filing of the transcript, a Redaction Request – Transcript shall be e–filed with the Court. Access to this request will be restricted to the Court and the attorneys of record in the case. If no such Notice and Redaction Request are filed, the transcript may be made remotely, electronically available to the public without redaction. Any party needing a copy of the transcript to review for redaction purposes may purchase a copy from the Court Reporter. Counsel are strongly urged to share this notice with all clients so that an informed decision about the inclusion of certain materials may be made. The responsibility for redacting these personal identifiers rests solely with counsel and the parties. The Clerk and Court Reporter will not review each transcript for compliance with this rule.</P>** |

| | | | |
|---|---|---|---|
| | | | Notice of Intent to Redact due 3/17/2015. Redaction Request due 3/27/2015. Redacted Transcript Deadline set for 4/6/2015. Release of Transcript Restriction set for 6/4/2015. (jh) (Entered: 03/06/2015) |
| 03/06/2015 | 1522 | 3672 | JURY TRIAL (19th DAY OF EVIDENCE–4TH DAY OF PENALTY PHASE, Final Argument, Deliberations and VERDICT) as to Juan Briseno held on 3/6/2015 before Chief Judge Philip P Simon. Parties present as previously noted. Instruction Conference held. Ruling on Instructions. Ruling on 1476 Motion in Limine. Court ruling at what age dft joined IGs. Final arguments to jury. Jury charged with Instructions. Jury begins deliberation on verdicts. Court advised that jury has reached verdicts. Jury FINDS that dft shall serve a term of life imprisonment. Sentencing set for 6/15/2015 at 10:00 a.m. Defendant REMANDED to custody of US Marshal.(Court Reporter Richard Ehrlich (am/pm) and Stacy Drohosky (verdict only). (nac) Modified on 3/9/2015 to add detail. (nac). (Entered: 03/09/2015) |
| 03/06/2015 | 1523 | 3675 | NOTICE OF HEARING as to Juan Briseno: Sentencing set for 6/15/2015 10:00 AM in US District Court – Hammond before Chief Judge Philip P Simon. (nac) (Entered: 03/09/2015) |
| 03/06/2015 | 1525 | | WITNESS LIST/EXHIBIT LIST from Penalty Phase of Jury Trial (3/3/15 – 3/6/15) of Juan Briseno. (nac) (Entered: 03/10/2015) |
| 03/06/2015 | 1526 | 3679 | COURT'S PROPOSED Final Instructions to Jury (Following Penalty Phase Evidence) as to Juan Briseno. (nac) (Entered: 03/10/2015) |
| 03/06/2015 | 1527 | 3715 | COURT'S PROPOSED Penalty Phase Verdict Form (with all 5 counts) as to Juan Briseno. (nac) (Entered: 03/10/2015) |
| 03/06/2015 | 1528 | 3796 | COURT'S FINAL Instructions to Jury Following Penalty Phase Evidence as to Juan Briseno. (nac). (Entered: 03/10/2015) |
| 03/06/2015 | 1529 | 3831 | COURT'S FINAL Verdict Form (Penalty Phase) (with all 5 counts) as to Juan Briseno. (nac). (Entered: 03/10/2015) |
| 03/06/2015 | 1530 | | Jury Note (from Penalty Phase Deliberation) as to Juan Briseno. (nac) (Entered: 03/10/2015) |
| 03/06/2015 | 1531 | 3913 | COURT'S VERDICT FORM (PENALTY PHASE) as to Count 9 – Murder of Luis Ortiz aka "Manolo". (No sentence of death recommended). (nac). (Entered: 03/11/2015) |
| 03/06/2015 | 1532 | 3929 | COURT'S VERDICT FORM (PENALTY PHASE) as to Count 13 – Murder of Michael Sessum. (No sentence of death recommended). (nac) (Entered: 03/11/2015) |
| 03/06/2015 | 1533 | 3946 | COURT'S VERDICT FORM (PENALTY PHASE) as to Count 15 – Murder of Miguel Mejias aka "King Nelly". (No sentence of death recommended). (nac) (Entered: 03/11/2015) |
| 03/06/2015 | 1534 | 3963 | COURT'S VERDICT FORM (PENALTY PHASE) as to Count 19 – Murder of Miguel Colon aka "Migs". (No sentence of death recommended). (nac) (Entered: 03/11/2015) |
| 03/06/2015 | 1535 | 3980 | COURT'S VERDICT FORM (PENALTY PHASE) as to Count 21 – Murder of Latroy Howard. (No sentence of death recommended). (nac) (Entered: |

| | | | |
|---|---|---|---|
| | | | 03/11/2015) |
| 03/06/2015 | 1570 | | Court's Verdict Form (Penalty Phase) COUNT 9 (Murder of Luis Ortiz aka "Manolo"). (Note: previously docketed as a redacted document, this version of the document is unredacted and under seal per the court). (nac) (Entered: 04/09/2015) |
| 03/06/2015 | 1571 | | Court's Verdict Form (Penalty Phase) COUNT 13 (Murder of Michael Sessum). (Note: previously docketed as a redacted document, this version of the document is unredacted and under seal per the court). (nac) (Entered: 04/09/2015) |
| 03/06/2015 | 1572 | | Court's Verdict Form (Penalty Phase) COUNT 15 (Murder of Miguel Mejias aka "King Nelly"). (Note: previously docketed as a redacted document, this version of the document is unredacted and under seal per the court). (nac) (Entered: 04/09/2015) |
| 03/06/2015 | 1573 | | Court's Verdict Form (Penalty Phase) COUNT 19 (Murder of Miguel Colon aka "Migs"). (Note: previously docketed as a redacted document, this version of the document is unredacted and under seal per the court). (nac) (Entered: 04/09/2015) |
| 03/06/2015 | 1574 | | Court's Verdict Form (Penalty Phase) COUNT 21 (Murder of Latroy Howard). (Note: previously docketed as a redacted document, this version of the document is unredacted and under seal per the court). (nac) (Entered: 04/09/2015) |
| 03/09/2015 | 1519 | | TRANSCRIPT of Jury Trial as to Juan Briseno held on March 6, 2015, before Judge Philip P. Simon. Court Reporter Richard D. Ehrlich, Telephone number 219–852–6557. Tape Number: NA. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.<br><br>**IMPORTANT: Notice is hereby given that an official transcript of a proceeding has been filed by the court reporter in the above–captioned matter. The parties have seven (7) calendar days to file with the Court a Notice of Intent to Request Redaction of this transcript. Within 21 days of the filing of the transcript, a Redaction Request – Transcript shall be e–filed with the Court. Access to this request will be restricted to the Court and the attorneys of record in the case. If no such Notice and Redaction Request are filed, the transcript may be made remotely, electronically available to the public without redaction. Any party needing a copy of the transcript to review for redaction purposes may purchase a copy from the Court Reporter. Counsel are strongly urged to share this notice with all clients so that an informed decision about the inclusion of certain materials may be made. The responsibility for redacting these personal identifiers rests solely with counsel and the parties. The Clerk and Court Reporter will not review each transcript for compliance with this rule.**<br><br>Notice of Intent to Redact due 3/18/2015. Redaction Request due 3/30/2015. Redacted Transcript Deadline set for 4/9/2015. Release of Transcript Restriction set for 6/8/2015. (rde) (Entered: 03/09/2015) |
| 03/09/2015 | 1520 | | TRANSCRIPT of Jury Trial – Volume 28–PM – Verdict as to Juan Briseno held on March 6, 2015, before Judge Philip P. Simon. Court Reporter Stacy L. Drohosky, Telephone number (219) 852–3462. Tape Number: Stenographically Reported. Transcript may be viewed at the court public terminal or purchased |

|  |  |  | through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.<br><br>**IMPORTANT: Notice is hereby given that an official transcript of a proceeding has been filed by the court reporter in the above–captioned matter. The parties have seven (7) calendar days to file with the Court a Notice of Intent to Request Redaction of this transcript. Within 21 days of the filing of the transcript, a Redaction Request – Transcript shall be e–filed with the Court. Access to this request will be restricted to the Court and the attorneys of record in the case. If no such Notice and Redaction Request are filed, the transcript may be made remotely, electronically available to the public without redaction. Any party needing a copy of the transcript to review for redaction purposes may purchase a copy from the Court Reporter. Counsel are strongly urged to share this notice with all clients so that an informed decision about the inclusion of certain materials may be made. The responsibility for redacting these personal identifiers rests solely with counsel and the parties. The Clerk and Court Reporter will not review each transcript for compliance with this rule.**<br><br>Notice of Intent to Redact due 3/17/2015. Redaction Request due 3/30/2015. Redacted Transcript Deadline set for 4/9/2015. Release of Transcript Restriction set for 6/8/2015. (sld) (Entered: 03/09/2015) |
| 03/11/2015 | 1536 |  | (SEALED) MOTION to Seal Document by Juan Briseno. (Foley, Arlington) (Entered: 03/11/2015) |
| 03/11/2015 | 1537 |  | SEALED MOTION by Juan Briseno. (Attachments: # 1 1, # 2 2)(Foley, Arlington) (Entered: 03/11/2015) |
| 03/12/2015 | 1538 | 3995 | ORDER GRANTING 1536 Motion to Seal Document as to Juan Briseno (1). (Text entry only, no pdf is attached). Approved by Chief Judge Philip P Simon on 3/12/15. (nac) (Entered: 03/12/2015) |
| 03/17/2015 | 1543 |  | (SEALED) MOTION to Seal Document by Juan Briseno. (Maksimovich, John) (Entered: 03/17/2015) |
| 03/17/2015 | 1544 |  | SEALED MOTION by Juan Briseno. (Maksimovich, John) (Entered: 03/17/2015) |
| 03/17/2015 | 1545 | 3998 | ORDER GRANTING 1543 Motion to Seal Document as to Juan Briseno (1). (Text entry only, no pdf is attached). Approved by Chief Judge Philip P Simon on 3/17/2015. (nac) (Entered: 03/17/2015) |
| 03/20/2015 | 1552 |  | SEALED ORDER. Signed by Chief Judge Philip P Simon on 3/18/2015. (Note: The order was mailed to Chief Judge Wood for her approval on 3/18/2015, this order was not provided to the Case Manager for docketing until 3/20/2015). Copy of order provided by email to Atty John Maksimovich and Atty Arlington Foley. (nac) (Entered: 03/20/2015) |
| 03/24/2015 | 1553 |  | (SEALED) MOTION to Seal Document by Juan Briseno. (Maksimovich, John) (Entered: 03/24/2015) |
| 03/24/2015 | 1554 |  | SEALED MOTION by Juan Briseno. (Maksimovich, John) (Entered: 03/24/2015) |
| 03/24/2015 | 1561 |  | SEALED DOCUMENT (Related to Motion 1544 and signed by Chief Judge Wood on 3/24/2015 and arriving in Hammond on 3/30/2015). (nac) Modified on |

| | | | 3/31/2015 to indicate that a copy of the order was sent to attorneys J. Maksimovich and A. Foley by email on 3/31/2015. (nac). (Entered: 03/31/2015) |
|---|---|---|---|
| 03/28/2015 | 1555 | | (SEALED) MOTION to Seal Document by Juan Briseno. (Maksimovich, John) (Entered: 03/28/2015) |
| 03/28/2015 | 1556 | | SEALED MOTION by Juan Briseno. (Maksimovich, John) (Entered: 03/28/2015) |
| 03/30/2015 | 1557 | 4001 | ORDER – GRANTING 1553 Motion to Seal Document as to Juan Briseno (1). (Text entry only, no pdf is attached). (Approved by Chief Judge Philip P. Simon). (nac) (Entered: 03/30/2015) |
| 03/30/2015 | 1558 | 4004 | ORDER GRANTING 1555 Motion to Seal Document as to Juan Briseno (1). (Text entry only, no pdf is attached). Approved by Chief Judge Philip P. Simon. (nac) (Entered: 03/30/2015) |
| 03/31/2015 | 1559 | | (SEALED) MOTION to Seal Document by Juan Briseno. (Maksimovich, John) (Entered: 03/31/2015) |
| 03/31/2015 | 1560 | | SEALED MOTION by Juan Briseno. (Maksimovich, John) (Entered: 03/31/2015) |
| 04/01/2015 | 1562 | 4007 | ORDER: GRANTING 1559 Motion to Seal Document as to Juan Briseno (1). (Text entry only, no pdf is attached). Approved by Chief Judge Philip P. Simon on 4/1/2015. (nac) (Entered: 04/01/2015) |
| 04/07/2015 | 1564 | | SEALED ORDER. Signed by Chief Judge Philip P Simon on 4/7/2015. (Copy sent to Attys J. Maksimovich and A. Foley by email on 4/7/2015). (nac) (Entered: 04/07/2015) |
| 04/07/2015 | | 4010 | Document (verdict form) unsealed as to dft Juan Briseno. (Verdict Form – Docket Entry #1488 – this verdict form from the guilt phase of the trial contains redacted juror signatures and therefore does not need to be sealed). (nac) (Entered: 04/07/2015) |
| 04/09/2015 | 1566 | | (SEALED) MOTION to Seal Document by Juan Briseno. (Maksimovich, John) (Entered: 04/09/2015) |
| 04/09/2015 | 1567 | | SEALED MOTION by Juan Briseno. (Maksimovich, John) (Entered: 04/09/2015) |
| 04/09/2015 | 1568 | | SEALED ORDER as to Juan Briseno. Signed by Chief Judge Philip P Simon on 4/9/2015. (Copy provided to Attys J. Maksimovich and A. Foley by email on 4/9/2015). (nac) (Entered: 04/09/2015) |
| 04/14/2015 | 1578 | 4013 | ORDER GRANTING 1566 Motion to Seal Document as to Juan Briseno (1). Approved by Chief Judge Philip P Simon on 4/14/2015. (nac) (Entered: 04/14/2015) |
| 04/14/2015 | 1579 | | SEALED ORDER as to 1560 and 1567 . Signed by Chief Judge Philip P Simon on 4/14/2015. Copy provided to Attorneys John Maksimovich and Arlington Foley on 4/14/2015 by email. (nac) (Entered: 04/14/2015) |
| 04/23/2015 | 1590 | 4016 | Writ of Habeas Corpus ad Testificandum Returned Executed for Eddie Torres on 4/20/2015 in case as to Juan Briseno. (rmn) (Entered: 04/23/2015) |
| 04/23/2015 | 1591 | 4018 | Writ of Habeas Corpus ad Testificandum Returned Executed for Darmaile Sutton on 4/20/2015 in case as to Juan Briseno (rmn) (Entered: 04/23/2015) |
| 05/01/2015 | 1603 | | |

TRANSCRIPT of Excerpt Trial Testimony of Galo Feliciano – Volume 1 as to Juan Briseno held on 02/09/2015, before Judge Philip P. Simon. Court Reporter Stacy L. Drohosky, Telephone number (219) 852–3462. Tape Number: Stenographically Reported. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.

**IMPORTANT: Notice is hereby given that an official transcript of a proceeding has been filed by the court reporter in the above–captioned matter. The parties have seven (7) calendar days to file with the Court a Notice of Intent to Request Redaction of this transcript. Within 21 days of the filing of the transcript, a Redaction Request – Transcript shall be e–filed with the Court. Access to this request will be restricted to the Court and the attorneys of record in the case. If no such Notice and Redaction Request are filed, the transcript may be made remotely, electronically available to the public without redaction. Any party needing a copy of the transcript to review for redaction purposes may purchase a copy from the Court Reporter. Counsel are strongly urged to share this notice with all clients so that an informed decision about the inclusion of certain materials may be made. The responsibility for redacting these personal identifiers rests solely with counsel and the parties. The Clerk and Court Reporter will not review each transcript for compliance with this rule.**

Notice of Intent to Redact due 5/12/2015. Redaction Request due 5/22/2015. Redacted Transcript Deadline set for 6/1/2015. Release of Transcript Restriction set for 7/30/2015. (sld) (Entered: 05/01/2015)

| 05/05/2015 | 1608 | | TRANSCRIPT of Excerpt Transcript of Trial Testimony of Galo Feliciano – Volume 2 as to Juan Briseno held on February 9, 2015, before Judge Philip P. Simon, Chief Judge. Court Reporter Tina M. Gallucci, United States District Court Reporter, Telephone number 260–423–3060. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.

**IMPORTANT: Notice is hereby given that an official transcript of a proceeding has been filed by the court reporter in the above–captioned matter. The parties have seven (7) calendar days to file with the Court a Notice of Intent to Request Redaction of this transcript. Within 21 days of the filing of the transcript, a Redaction Request – Transcript shall be e–filed with the Court. Access to this request will be restricted to the Court and the attorneys of record in the case. If no such Notice and Redaction Request are filed, the transcript may be made remotely, electronically available to the public without redaction. Any party needing a copy of the transcript to review for redaction purposes may purchase a copy from the Court Reporter. Counsel are strongly urged to share this notice with all clients so that an informed decision about the inclusion of certain materials may be made. The responsibility for redacting these personal identifiers rests solely with counsel and the parties. The Clerk and Court Reporter will not review each transcript for compliance with this rule.** |

| | | | |
|---|---|---|---|
| | | | Notice of Intent to Redact due 5/14/2015. Redaction Request due 5/26/2015. Redacted Transcript Deadline set for 6/5/2015. Release of Transcript Restriction set for 8/3/2015. (tg) (Entered: 05/05/2015) |
| 05/13/2015 | 1623 | 4020 | Letter from Anthony Baldazo requesting docket sheet re all defendants (rmn) Modified on 5/14/2015 party is a dft in case (rmn). (Entered: 05/14/2015) |
| 05/14/2015 | 1626 | 4022 | **DRAFT** PRESENCE INVESTIGATION REPORT as to **Juan Briseno**. NOTE: This document will only be accessible to the government attorney and the attorney for the applicable defendant. The judge in this case, other defendants and the general public will NOT be able to view this draft document. For parties entitled to a free look at this document, enter your CM/ECF login and password to confirm your right to view this document. Parties should submit objections to this report *directly to the probation officer listed at the end of this docket entry*. **IMPORTANT!!! Government attorneys and federal community defenders should send objections by SECURE E–MAIL to the probation officer; private attorneys and CJA panel attorneys MUST send objections by FAX ONLY! Government Objections to the Draft Presence Investigation Report are due not later than 5/28/2015 pursuant to Rule 32 and General Order of the Court 2001–1. Defendant Objections to the Draft Presence Investigation Report are due not later than 5/28/2015 pursuant to Rule 32 and General Order of the Court 2001–1.** (USPO Beier – david_beier@innp.uscourts.gov, fax 219–852–3629) (Entered: 05/14/2015) |
| 05/14/2015 | | 4024 | Terminated PAST deadlines ONLY in case. (nac) (Entered: 05/14/2015) |
| 05/27/2015 | 1639 | 4052 | SENTENCING MEMORANDUM by United States of America as to Juan Briseno (Nozick – AUSA, David) (Entered: 05/27/2015) |
| 06/01/2015 | 1643 | | TRANSCRIPT of Excerpt Testimony of David Almaraz as to Juan Briseno held on 02/12/2015, before Judge Philip P. Simon. Court Reporter Stacy L. Drohosky, Telephone number (219) 852–3462. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. <br><br>**IMPORTANT: Notice is hereby given that an official transcript of a proceeding has been filed by the court reporter in the above–captioned matter. The parties have seven (7) calendar days to file with the Court a Notice of Intent to Request Redaction of this transcript. Within 21 days of the filing of the transcript, a Redaction Request – Transcript shall be e–filed with the Court. Access to this request will be restricted to the Court and the attorneys of record in the case. If no such Notice and Redaction Request are filed, the transcript may be made remotely, electronically available to the public without redaction. Any party needing a copy of the transcript to review for redaction purposes may purchase a copy from the Court Reporter. Counsel are strongly urged to share this notice with all clients so that an informed decision about the inclusion of certain materials may be made. The responsibility for redacting these personal identifiers rests solely with counsel and the parties. The Clerk and Court Reporter will not review each transcript for compliance with this rule.** <br><br>Notice of Intent to Redact due 6/9/2015. Redaction Request due 6/22/2015. |

86

| | | | |
|---|---|---|---|
| | | | Redacted Transcript Deadline set for 7/2/2015. Release of Transcript Restriction set for 8/31/2015. (sld) (Entered: 06/01/2015) |
| 06/05/2015 | 1650 | | **FINAL** PRESENTENCE INVESTIGATION REPORT as to **Juan Briseno**. NOTE: This document will only be accessible to appropriate court staff, the government attorney and the attorney for the applicable defendant. Other defendants in the case and the general public will NOT be able to view this document. **For parties entitled to a free look at this document, enter your CM/ECF login and password to confirm your right to view this document.** (USPO Beier – david_beier@innp.uscourts.gov, fax 219–852–3629) (Entered: 06/05/2015) |
| 06/05/2015 | 1651 | | **ADDENDUM** TO FINAL PRESENTENCE INVESTIGATION REPORT re 1650 as to **Juan Briseno**. NOTE: This document will only be accessible to appropriate court staff, the government attorney and the attorney for the applicable defendant. Other defendants in the case and the general public will NOT be able to view this document. **For parties entitled to a free look at this document, enter your CM/ECF login and password to confirm your right to view this document.** (USPO Beier – david_beier@innp.uscourts.gov, fax 219–852–3629) (Entered: 06/05/2015) |
| 06/15/2015 | 1663 | 4055 | SENTENCING held on 6/15/2015 for dft Juan Briseno before Chief Judge Philip P. Simon. Govt present by David Nozick, AUSA and Bruce Hegyi, AUSA. U.S. Probation Officer David Beier is in attendance. The dft is present in person and by counsel Arlington Foley and John Maksimovich. No objections to PSR. One victim is sworn and makes a statement to the court. Court hears from defense and govt, no stmt by the dft. The dft is sentenced on counts 1,2,9,13,15,19,21,23 and 24 of the 4th Superseding Indictment: A term of LIFE on each of counts 9,13,15,19 and 21, to be served consecutive to one another. A term of LIFE on counts 1 and 2, which shall run concurrent with one another and concurrent with counts 9,13,15,19 and 21. Additionally the dft is sentenced to 120 months on Count 23 to be served concurrent with counts 1,2,9,13,15,19 and 21. On Count 24 the dft is sentenced to 120 months consecutive to the other counts. Court states reasons for the sentence imposed. No discretionary supervision conditions since dft has received a life sentence. If the dft is ever released the dft must report to the probation office in the district in which he is released within 48 hours and the probation officer shall at that time propose additional conditions that may be warranted based on the then existing state of affairs. Supervised Release of 5 years on counts 1,2,9,13,15,19,21 and 24 and a term of 3 years on count 23. These will be concurrent terms if the dft is ever released from custody. Special Assessment total of $900.00, due immediately. No fine imposed. Dft advised of rights to an appeal. Cnsl reminded of duty to perfect appeal, should client wish. Dft requests: (1) Confinement at USP Beaumont, Texas. (2) To have the order of non–contact with co–dfts lifted. (3) To be housed at MCC (Chicago, IL) until dft is moved to his permanent location. The Court will recommend placement at Beaumont, Texas in J&C. The USM will deal with the other two requests as they deem appropriate. Defendant REMANDED to custody of US Marshal.(Court Reporter Stacy Drohosky.) (nac) (Entered: 06/16/2015) |
| 06/16/2015 | 1664 | 4058 | JUDGMENT as to Juan Briseno. Signed by Chief Judge Philip P. Simon on 6/16/2015. (nac) (Entered: 06/16/2015) |
| 06/22/2015 | 1676 | 4062 | NOTICE OF APPEAL as to 1664 Judgment by Juan Briseno (Maksimovich, |

| | | | John) (Entered: 06/22/2015) |
|---|---|---|---|
| 06/22/2015 | 1677 | 4064 | Docketing Statement re: 1676 Notice of Appeal – Final Judgment filed by Juan Briseno. (Maksimovich, John) (Entered: 06/22/2015) |
| 06/24/2015 | 1682 | 4067 | Short Record Sent to US Court of Appeals as to Juan Briseno re 1676 Notice of Appeal – Final Judgment. No appeal fees paid – CJA attys. (rmn) (Entered: 06/24/2015) |
| 06/24/2015 | 1683 | 4175 | USCA Case Number as to Juan Briseno 15–2347 for 1676 Notice of Appeal – Final Judgment filed by Juan Briseno. (Attachments: # 1 USCA Notice)(mc) (Entered: 06/24/2015) |
| 06/30/2015 | 1698 | 4178 | TRANSCRIPT REQUEST by Juan Briseno for proceedings held on 01/12/2015 through 06/15/2015 before Judge Philip P. Simon, re 1676 Notice of Appeal – Final Judgment (Maksimovich, John) (Entered: 06/30/2015) |
| 07/15/2015 | 1726 | | TRANSCRIPT of Sentencing Hearing as to Juan Briseno held on 06/15/2015, before Judge Philip P. Simon. Court Reporter Stacy L. Drohosky, Telephone number (219) 852–3462. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. **IMPORTANT: Notice is hereby given that an official transcript of a proceeding has been filed by the court reporter in the above–captioned matter. The parties have seven (7) calendar days to file with the Court a Notice of Intent to Request Redaction of this transcript. Within 21 days of the filing of the transcript, a Redaction Request – Transcript shall be e–filed with the Court. Access to this request will be restricted to the Court and the attorneys of record in the case. If no such Notice and Redaction Request are filed, the transcript may be made remotely, electronically available to the public without redaction. Any party needing a copy of the transcript to review for redaction purposes may purchase a copy from the Court Reporter. Counsel are strongly urged to share this notice with all clients so that an informed decision about the inclusion of certain materials may be made. The responsibility for redacting these personal identifiers rests solely with counsel and the parties. The Clerk and Court Reporter will not review each transcript for compliance with this rule.** Notice of Intent to Redact due 7/24/2015. Redaction Request due 8/5/2015. Redacted Transcript Deadline set for 8/17/2015. Release of Transcript Restriction set for 10/13/2015. (sld) (Entered: 07/15/2015) |
| 09/18/2015 | 1776 | 4179 | Letter from Juan Briseno requesting status of his case/appeal. (nac) (Entered: 09/18/2015) |
| 09/28/2015 | 1777 | 4181 | ORDER as to Juan Briseno re 1776 Letter : beyond the status of Brisenos appeal related in this order, this Court will take no further action on Juan Brisenos letter DE 1776 . Any further inquiries should be made to the Court of Appeals, referencing case number 15–2347. Signed by Chief Judge Philip P Simon on 9/28/15. cc: Briseno (mc) (Entered: 09/28/2015) |
| 10/27/2015 | 1781 | 4183 | ORDER of USCA (certified copy) as to Juan Briseno re 1676 Notice of Appeal – Final Judgment : Motion to Withdraw filed by attorneys Arlington J. Foley, Sr. and John Maksimovich is GRANTED. Attorneys Kent R. Carlson, CARLSON & |

88

| | | | ASSOCIATES, Suite 1544, 53 W. Jackson Boulevard, Chicago, IL 60604 and Hannah Valdez Garst, LAW OFFICES OF HANNAH GARST, Suite 140, 2300 Barrington Road, Hoffman Estates, IL 60169, are appointed to represent defendant–appellant Juan Briseno pursuant to the provisions of the Criminal Justice Act. (mc) (Entered: 10/29/2015) |
|---|---|---|---|
| 07/21/2016 | 1851 | 4185 | Letter from 7th Circuit Court of Appeals requesting record on appeal. (tc) (Entered: 07/25/2016) |

FILED

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

2011 JUN -2 AM 11: 37

| | | | |
|---|---|---|---|
| UNITED STATES OF AMERICA | ) | CAUSE NO. | |
| | ) | | 2 11 CR 077 |
| v. | ) | 18 U.S.C. § 924(c)(1)(A) and (j) | |
| | ) | 18 U.S.C. § 1959(a)(1) | |
| JUAN BRISENO | ) | | |

## INDICTMENT

**THE GRAND JURY CHARGES:**

## GENERAL ALLEGATIONS

### THE RACKETEERING ENTERPRISE, THE IMPERIAL GANGSTERS

1. At all times material to this indictment, the defendant, JUAN BRISENO, was a member of the "Almighty IMPERIAL GANGSTERS" GANG (hereinafter the "IMPERIAL GANGSTERS"), a criminal organization whose members engaged in acts of violence and other criminal activities involving murder, assault, and narcotics trafficking. At all relevant times, the IMPERIAL GANGSTERS operated in the Northern District of Indiana and elsewhere.

2. The IMPERIAL GANGSTERS, including its leadership, membership, prospects ("shorties") and associates, constitutes an enterprise as defined in 18 U.S.C. § 1959(b)(2), that is, a group of individuals associated in fact, which is engaged in and the activities of which affect, interstate and foreign commerce. The enterprise constitutes an ongoing organization whose members, prospects and associates functioned as a continuing unit for a common purpose of achieving the objectives of the enterprise.

Case 2:11-cr-00077-PPS-APR Document 1 Filed 06/02/11 Page 2 of 10

3. The IMPERIAL GANGSTERS is a nationally known criminal street organization whose members engage in drug trafficking and acts of violence. The 149th Street "No Love Side" IMPERIAL GANGSTERS are a local "set" or affiliate of the IMPERIAL GANGSTERS, with local control and operation within the East Chicago, Indiana, area. The other IMPERIAL GANGSTER set operating in Northwest Indiana is the 139th Street, or "Harbor" set.

4. The 149th Street IMPERIAL GANGSTERS operate primarily on the South Side of East Chicago. The 149th Street IMPERIAL GANGSTERS are involved in murder, attempted murder, and drug trafficking.

5. The IMPERIAL GANGSTERS' colors are pink and black. The IMPERIAL GANGSTERS symbol is the cartoon character, the "Pink Panther."

6. The IMPERIAL GANGSTERS are affiliated with the "Folk Nation" of gangs. Rival street gangs of the IMPERIAL GANGSTERS have included the Spanish Gangster Disciples, The Two-Six Nation, The Latin Kings, and the Black P-Stones.

**MEMBERSHIP**

7. In order to join the 149th Street IMPERIAL GANGSTERS prospective members or "shorties" are given the option of shooting someone at the direction of the leadership of the gang, or receiving a two minute "violation," which entails high-ranking members of the gang punching the prospective member seventy times in the chest. While a "shorty" is attempting to join the gang his conduct is observed by the members of the 149th Street IMPERIAL GANGSTERS. While a "shorty" is attempting to join the gang, he is considered a part of the 149th Street IMPERIAL GANGSTER family and entitled to the full protection of the enterprise. The "shorty" is also subject to the rules and orders of the enterprise.

91

## LEADERSHIP STRUCTURE

8. The 149th Street IMPERIAL GANGSTERS have a leadership structure, but do not always utilize official titles or ranks. They at all times have an individual who serves as the leader and makes decisions regarding gang business. Juan Briseno served as one of the leaders of the 149th Street IMPERIAL GANGSTERS during the time period charged in the indictment. The 149th Street IMPERIAL GANGSTERS have one or two individuals who control and train the "shorties" or prospective members. They have an individual who serves as a treasurer, who collects gang dues. They also have an individual who serves as the enforcer, who applies discipline for violations of the gang rules by meting out punishment.

## PURPOSES OF THE ENTERPRISE

9. The purposes of the enterprise included, but were not limited to, the following:

a. Enriching the leaders, member, and associates of the enterprise through, among other things, the illegal trafficking of controlled substances.

b. Preserving and protecting the power, territory, operations, and proceeds of the enterprise through the use of threats, intimidation, violence and destruction including, but not limited to, acts of murder, attempted murder, assault with a dangerous weapon and other acts of violence.

c. Promoting and enhancing the enterprise and its members' and associates' activities.

d. Keeping victims in fear of the enterprise and in fear of its leaders, members, and associates through threats of violence and violence. The leaders, members, and associates of the enterprise undertook all steps necessary to prevent the detection of their criminal activities, and sought to prevent and resolve the imposition of any criminal liabilities upon their leaders,

3

members, and associates, by the use of murder, violence, and intimidation directed against witnesses, victims, and others. As part of this practice, the enterprise enforced what it referred to as a "SOS" or shoot on sight order, or also known as "KOS" or, kill on sight, against IMPERIAL GANGSTERS members who were suspected of having cooperated with law enforcement.

e. Providing support to gang members who were charged with, or incarcerated for, gang-related activities.

## MEANS AND METHODS OF THE ENTERPRISE

10. Each member of the enterprise agreed to facilitate a scheme that included the operation and management of the enterprise by a conspirator. Members of the enterprise and their associates operated and conducted their affairs through a series of laws and policies.

11. The members of the enterprise and their associates attended regular meetings at which they discussed, planned, and otherwise engaged in criminal activity, including murder, attempted murder, narcotics distribution, and obstruction of justice.

12. Members of the enterprise and their associates initiated new members through the practice of causing them to endure physical assaults conducted by members of the enterprise at various gang-related gatherings.

13. To enforce discipline and the rules of the enterprise, members of the enterprise and their associates engaged in a system of "violations," in which members of the enterprise attempted to murder, conspired to murder, and physically beat and threatened those members of the enterprise who violated rules, questioned authority, or posed a threat to the leaders or purposes of the enterprise.

4

93

14.  Members of the enterprise and their associates employed and used gang-related terminology, symbols, gestures, and color schemes.

15.  To perpetuate the enterprise and maintain and extend their power, members of the enterprise and their associates committed illegal acts, including murder, attempted murder, aggravated battery, intimidation, and assault against individuals who posed a threat to the enterprise or jeopardized its operations, including rival gang members and witnesses to the illegal activities of the enterprise.  Pursuant to gang policy, members of the enterprise and their associates were required to participate in such acts, received standing orders to shoot rival gang members, and were instructed to retaliate for gang-related attacks upon the members and associates of the enterprise.

16.  Members of the enterprise and their associates managed the procurement, transfer, use, concealment, and disposal of firearms and dangerous weapons within the enterprise to protect gang-related territory, personnel, and operations, and to deter, eliminate, and retaliate against competitors and other rival criminal organizations and persons.

17.  Members of the enterprise and their associates earned money for their members and regularly financed their activities through funds obtained in the illegal trafficking of controlled substances, including the distribution and possession with intent to distribute marijuana, cocaine and ecstasy.

18.  Members of the enterprise and their associates operated and conducted their affairs, in part, through a financial system in which the leadership of the IMPERIAL GANGSTERS and others possessed, controlled, and otherwise maintained a monetary stash on behalf of the enterprise.  As part of this practice, members of the enterprise and their associates paid requisite

5

weekly or bi-weekly dues into the pot, which, in turn, the enterprise used to bail gang members out of jail, to help pay for the defense attorneys of gang members who had been charged with crimes, to send to commissary accounts of incarcerated gang members, and to purchase and sell firearms and controlled substances. At times, the members of the enterprise and their associates paid money into the pot by selling narcotics supplied by members of the gang.

19. Members of the enterprise and their associates hid, misrepresented, concealed and caused to be misrepresented, concealed, and hidden, the objectives of acts done in furtherance of the conspiracy, and used coded language and other means to avoid detection and apprehension by law enforcement authorities.

20. Members of the enterprise recruited and used juveniles to commit acts for the benefit of the enterprise.

### Overview

21. On June 19, 2010, Latroy Howard was in front of the East Chicago Liquor Store at 4856 Northcote Avenue, East Chicago, Indiana. This location is in the heart of 149th Street IMPERIAL GANGSTER territory, territory which had recently been challenged by members of the Black P-Stones. Latroy Howard was not a member of the Black P-Stones, but he was wearing Black P-Stone colors and was seen associating with members of the Black P-Stones on this date. Latroy Howard was seen, on video, appearing to "serve" narcotics to the driver of a car in front of the liquor store. A short time later, Juan Briseno walked up to Latroy Howard and shot him two times at close range, killing him. Juan Briseno sought to maintain and increase his position in the 149th Street IMPERIAL GANGSTERS by murdering Latroy Howard.

6

## COUNT 1

22. At all times relevant to this indictment the 149th Street IMPERIAL GANGSTERS, as more fully described in paragraphs one through twenty-one of the General Allegations which are re-alleged and incorporated by reference as though fully set forth herein, constituted an enterprise as defined in 18 U.S.C. § 1959(b)(2), that is, a group of individuals associated in fact which is engaged in and the activities of which affect, interstate and foreign commerce.

23. The above- described enterprise, through its members and associates, engaged in racketeering activity as defined in 18 U.S.C. §§ 1959(b)(1) and 1961(1), namely, acts involving murder, in violation of Indiana Penal Code, and narcotics trafficking in violation of 21 U.S.C. §§ 841 and 846.

24. On or about June 19, 2010, in the Northern District of Indiana,

### JUAN BRISENO,

defendant herein, for the purpose of gaining entrance to and maintaining and increasing position in the 149th Street IMPERIAL GANGSTERS, an enterprise engaged in racketeering activity, did intentionally and knowingly murder Latroy Howard, in violation of Indiana Penal Code, Section 35-42-1-1.

All in violation of 18 U.S.C. § 1959(a)(1) .

7

96

**THE GRAND JURY FURTHER CHARGES**:

## COUNT 2

25. On or about June 19, 2010, in the Northern District of Indiana,

## JUAN BRISENO,

defendant herein, did knowingly use and carry a firearm, during and in relation to, and possess in furtherance of, drug trafficking crimes, to-wit: knowing and intentional distribution of a quantity of a mixture and substance containing a detectable amount of marijuana, in violation of Title 21, United States Code § 841(a)(1); knowing and intentional distribution of a quantity of a mixture and substance containing a detectable amount of cocaine, in violation of Title 21, United States Code § 841(a)(1); knowing and intentional distribution of a quantity of a mixture and substance containing a detectable amount of MDMA ("Ecstasy"), in violation of Title 21, United States Code § 841(a)(1); and conspiracy to distribute a quantity of a mixture and substance containing a detectable amount of marijuana, cocaine and MDMA ("Ecstasy"), in violation of Title 21, United States Code, Section 846; and that in the course of these violations, defendant caused the death of Latroy Howard through the use of a firearm, such killing being murder as defined in Title 18, United States Code, Section 1111, in that it was an unlawful, willful, deliberate, malicious and premeditated killing committed with malice aforethought.

All in violation of Title 18, United States Code, Sections 924(c)(1)(A) and (j).

## NOTICE OF SPECIAL FINDINGS

26. The allegations of Counts 1 and 2 of this Indictment are hereby realleged as if fully set forth herein and incorporated by reference. With regards to Count 1 and 2 of the Indictment, the Grand Jury makes the following Special Findings. The defendant:

### JUAN BRISENO,

a. was 18 years of age or older at the time of the offenses. [Title 18, United States Code, Section 3591(a)].

b. intentionally killed the victim, Latroy Howard. [Title 18, United States Code, Section 3591(a)(2)(A)].

c. intentionally inflicted serious bodily injury that resulted in the death of the victim, Latroy Howard. [Title 18, United States Code, Section 3591(a)(2)(B)].

d. intentionally participated in an act, contemplating that the life of a person would be taken and intending that lethal force would be used in connection with a person, other than one of the participants in the offense, and the victim, Latroy Howard, died as a direct result of the acts. [Title 18, United States Code, Section 3591(a)(2)(C)].

e. intentionally and specifically engaged in an act of violence, knowing that the act created a great risk of death to a person, other than one of the participants in the offense, such that participation in the act constituted a reckless disregard for human life and the victim, Latroy Howard, died as a direct result of the act. [Title 18, United States Code, Section 3591(a)(2)(D)].

98

f. committed the offenses after substantial planning and premeditation to cause the death

of a person. [Title 18, United States Code, Section 3592(c)(9)].


A TRUE BILL:


/s/ Foreperson
FOREPERSON


DAVID CAPP
UNITED STATES ATTORNEY


By:     /s/ David J. Nozick
        David J. Nozick
        Assistant United States Attorney

```
MIME-Version:1.0
From:CMECFinnd@innd.uscourts.gov
To:CMECFinnd@localhost.localdomain
Bcc:
--Case Participants: Chief Judge Philip P Simon (denise_woodside@innd.uscourts.gov,
john_demoulpied@innd.uscourts.gov, mark_hancock@innd.uscourts.gov,
matt_singer@innd.uscourts.gov, noel_collins@innd.uscourts.gov,
philip_simon@innd.uscourts.gov)
--Non Case Participants:
--No Notice Sent:

Message-Id:1767204@innd.uscourts.gov
Subject:Activity in Case 2:11-cr-00077-PPS *SEALED* United States of America v. Briseno
Notice of Hearing
```
Content–Type: text/html

### U.S. District Court Northern District of Indiana [LIVE]

### USDC Northern Indiana

## Notice of Electronic Filing

The following transaction was entered on 6/20/2011 at 12:07 PM EST and filed on 6/20/2011

| | |
|---|---|
| **Case Name:** | United States of America v. Briseno |
| **Case Number:** | 2:11–cr–00077–PPS *SEALED* |
| **Filer:** | |
| **Document Number:** | 3(No document attached) |

**Docket Text:**
 **NOTICE OF HEARING as to Juan Briseno regarding [1] Indictment. Initial Appearance set for 6/24/2011 10:30 AM in US District Court – Hammond before Magistrate Judge Andrew P Rodovich. US Marshal to produce Dft for hearing. (plm)**


**2:11–cr–00077–PPS *SEALED*–1** No electronic public notice will be sent because the case/entry is sealed.

AO 442 (Rev. 01/09) Arrest Warrant

# UNITED STATES DISTRICT COURT
### for the
### Northern District of Indiana

| | | |
|---|---|---|
| United States of America<br>v. | ) ) ) ) ) | |
| Juan Briseno | | Case No.   2:11CR77 |
| *Defendant* | | |

## ARREST WARRANT

To:     Any authorized law enforcement officer

**YOU ARE COMMANDED** to arrest and bring before a United States magistrate judge without unnecessary delay

*(name of person to be arrested)*    Juan Briseno                                                                ,

who is accused of an offense or violation based on the following document filed with the court:

☑ Indictment        ☐ Superseding Indictment        ☐ Information        ☐ Superseding Information        ☐ Complaint

☐ Probation Violation Petition        ☐ Supervised Release Violation Petition        ☐ Violation Notice        ☐ Order of the Court

This offense is briefly described as follows:

18:1959(a)(1)) RACKETEERING ACTIVITY /MURDER
18:924(c)(1)(A) USING A FIREARM WHILE COMMITTING A FELONY

Date:   06/02/2011

_____
*Issuing officer's signature*

City and state:     Hammond, Indiana

Stephen R. Ludwig, Clerk
*Printed name and title*

---

### Return

This warrant was received on *(date)*  2 Jun 2011 , and the person was arrested on *(date)*  24 Jun 2011
at *(city and state)*  MCC Chicago        .

Date:  24 Jun 2011

_____
*Arresting officer's signature*

Ed Payne  DUSM
*Printed name and title*

```
MIME-Version:1.0
From:CMECFinnd@innd.uscourts.gov
To:CMECFinnd@localhost.localdomain
Bcc:
--Case Participants: Chief Judge Philip P Simon (denise_woodside@innd.uscourts.gov,
john_demoulpied@innd.uscourts.gov, mark_hancock@innd.uscourts.gov,
matt_singer@innd.uscourts.gov, noel_collins@innd.uscourts.gov,
philip_simon@innd.uscourts.gov)
--Non Case Participants:
--No Notice Sent:

Message-Id:1771729@innd.uscourts.gov
Subject:Activity in Case 2:11-cr-00077-PPS *SEALED* United States of America v. Briseno
Arrest
```
Content–Type: text/html

### U.S. District Court Northern District of Indiana [LIVE]

### USDC Northern Indiana

## Notice of Electronic Filing

The following transaction was entered on 6/24/2011 at 3:50 PM EST and filed on 6/24/2011

| | |
|---|---|
| **Case Name:** | United States of America v. Briseno |
| **Case Number:** | 2:11–cr–00077–PPS *SEALED* |
| **Filer:** | |
| **Document Number:** | No document attached |

**Docket Text:**
 **Arrest of Juan Briseno (plm)**


**2:11–cr–00077–PPS *SEALED*–1 No electronic public notice will be sent because the case/entry is sealed.**

```
MIME-Version:1.0
From:CMECFinnd@innd.uscourts.gov
To:CMECFinnd@localhost.localdomain
Bcc:
--Case Participants: Magistrate Judge Andrew P Rodovich
(rodovich_chambers@innd.uscourts.gov), Chief Judge Philip P Simon
(denise_woodside@innd.uscourts.gov, john_demoulpied@innd.uscourts.gov,
mark_hancock@innd.uscourts.gov, matt_singer@innd.uscourts.gov,
noel_collins@innd.uscourts.gov, philip_simon@innd.uscourts.gov)
--Non Case Participants:
--No Notice Sent:

Message-Id:1771734@innd.uscourts.gov
Subject:Activity in Case 2:11-cr-00077-PPS -APR United States of America v. Briseno
*SEALED* Add and Terminate Judges
```
Content−Type: text/html

### U.S. District Court Northern District of Indiana [LIVE]

### USDC Northern Indiana

## Notice of Electronic Filing

The following transaction was entered on 6/24/2011 at 3:51 PM EST and filed on 6/24/2011

| | |
|---|---|
| **Case Name:** | United States of America v. Briseno |
| **Case Number:** | 2:11−cr−00077−PPS −APR *SEALED* |
| **Filer:** | |
| **Document Number:** | No document attached |

**Docket Text:** *Sealed Entry*
 **Judge update in case as to Juan Briseno. Magistrate Judge Andrew P Rodovich added., Case unsealed as to Juan Briseno (plm)**

**2:11−cr−00077−PPS −APR *SEALED*−1 No electronic public notice will be sent because the case/entry is sealed.**

```
MIME-Version:1.0
From:CMECFinnd@innd.uscourts.gov
To:CMECFinnd@localhost.localdomain
Bcc:
--Case Participants: David J Nozick - AUSA (david.nozick@usdoj.gov,
janet.eisenmann@usdoj.gov, usainn.ecfcivil@usdoj.gov), Chief Judge Philip P Simon
(denise_woodside@innd.uscourts.gov, john_demoulpied@innd.uscourts.gov,
mark_hancock@innd.uscourts.gov, matt_singer@innd.uscourts.gov,
noel_collins@innd.uscourts.gov, philip_simon@innd.uscourts.gov), Magistrate Judge Andrew P
Rodovich (rodovich_chambers@innd.uscourts.gov)
--Non Case Participants: Probation/Pretrial Services (innpml_cmecf@innd.uscourts.gov), U S
Marshal (inn.docket-fw@usdoj.gov, inn.docket-sb@usdoj.gov, usms.27@usdoj.gov)
--No Notice Sent:

Message-Id:1771762@innd.uscourts.gov
Subject:Activity in Case 2:11-cr-00077-PPS -APR United States of America v. Briseno
Initial Appearance
```
Content–Type: text/html

### U.S. District Court Northern District of Indiana [LIVE]

### USDC Northern Indiana

### Notice of Electronic Filing

The following transaction was entered on 6/24/2011 at 3:58 PM EST and filed on 6/24/2011

| | |
|---|---|
| **Case Name:** | United States of America v. Briseno |
| **Case Number:** | 2:11–cr–00077–PPS –APR |
| **Filer:** | |
| **Document Number:** | 5(No document attached) |

**Docket Text:**
 **INITIAL APPEARANCE as to Juan Briseno held on 6/24/2011 before Magistrate Judge Andrew P Rodovich. Govt appeared by AUSA Jacqueline Jacobs. Dft appeared w/o Atty. Jerry Navarra appeared on behalf of U S Probation/Pretrial Services. Govt moves to unseal case. Granted. Case unsealed. Dft advised of rights, charges, penalties. Dft requests court–appointed counsel. Dft sworn re financial status. Request granted. Clerk to notify FCD to appoint counsel. Govt moves for detention. Granted. Detention Hearing/Arraignment set for 6/29/2011 02:30 PM in US District Court – Hammond before Magistrate Judge Andrew P Rodovich. Dft REMANDED to USM. (Digitally Recorded.) (plm)**

**2:11–cr–00077–PPS –APR–1 Notice has been electronically mailed to:**

David J Nozick – AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

**2:11–cr–00077–PPS –APR–1 Notice has been delivered by U.S. Mail or other means to:**

```
MIME-Version:1.0
From:CMECFinnd@innd.uscourts.gov
To:CMECFinnd@localhost.localdomain
Bcc:
--Case Participants: David J Nozick - AUSA (david.nozick@usdoj.gov,
janet.eisenmann@usdoj.gov, usainn.ecfcivil@usdoj.gov), Arlington J Foley
(arlingtonfoley@att.net), Chief Judge Philip P Simon (denise_woodside@innd.uscourts.gov,
john_demoulpied@innd.uscourts.gov, mark_hancock@innd.uscourts.gov,
matt_singer@innd.uscourts.gov, noel_collins@innd.uscourts.gov,
philip_simon@innd.uscourts.gov), Magistrate Judge Andrew P Rodovich
(rodovich_chambers@innd.uscourts.gov)
--Non Case Participants:
--No Notice Sent:

Message-Id:1774013@innd.uscourts.gov
Subject:Activity in Case 2:11-cr-00077-PPS -APR United States of America v. Briseno CJA 20
- Appointment
Content-Type: text/html
```

### U.S. District Court Northern District of Indiana [LIVE]

### USDC Northern Indiana

## Notice of Electronic Filing

The following transaction was entered on 6/29/2011 at 10:20 AM EST and filed on 6/24/2011

| | |
|---|---|
| **Case Name:** | United States of America v. Briseno |
| **Case Number:** | 2:11-cr-00077-PPS -APR |
| **Filer:** | |
| **Document Number:** | 6(No document attached) |

**Docket Text:**

**CJA 20 as to Juan Briseno: Appointment of Attorney Arlington J Foley for Juan Briseno by Magistrate Judge Andrew P Rodovich on 6/24/11. (plm)**

**2:11-cr-00077-PPS -APR-1 Notice has been electronically mailed to:**

Arlington J Foley arlingtonfoley@att.net

David J Nozick - AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

**2:11-cr-00077-PPS -APR-1 Notice has been delivered by U.S. Mail or other means to:**

```
MIME-Version:1.0
From:CMECFinnd@innd.uscourts.gov
To:CMECFinnd@localhost.localdomain
Bcc:
--Case Participants: David J Nozick - AUSA (david.nozick@usdoj.gov,
janet.eisenmann@usdoj.gov, usainn.ecfcivil@usdoj.gov), Arlington J Foley
(arlingtonfoley@att.net), Chief Judge Philip P Simon (denise_woodside@innd.uscourts.gov,
john_demoulpied@innd.uscourts.gov, mark_hancock@innd.uscourts.gov,
matt_singer@innd.uscourts.gov, noel_collins@innd.uscourts.gov,
philip_simon@innd.uscourts.gov), Magistrate Judge Andrew P Rodovich
(rodovich_chambers@innd.uscourts.gov)
--Non Case Participants: Probation/Pretrial Services (innpml_cmecf@innd.uscourts.gov), U S
Marshal (inn.docket-fw@usdoj.gov, inn.docket-sb@usdoj.gov, usms.27@usdoj.gov)
--No Notice Sent:

Message-Id:1774647@innd.uscourts.gov
Subject:Activity in Case 2:11-cr-00077-PPS -APR United States of America v. Briseno
Arraignment
Content-Type: text/html
```

### U.S. District Court Northern District of Indiana [LIVE]

### USDC Northern Indiana

## Notice of Electronic Filing

The following transaction was entered on 6/29/2011 at 4:47 PM EST and filed on 6/29/2011

| | |
|---|---|
| **Case Name:** | United States of America v. Briseno |
| **Case Number:** | 2:11-cr-00077-PPS -APR |
| **Filer:** | |
| **Document Number:** | 7(No document attached) |

**Docket Text:**

**(Scheduled as DETENTION HEARING) and ARRAIGNMENT as to Juan Briseno (1) Count 1,2 held on 6/29/2011 before Magistrate Judge Andrew P Rodovich. Govt appeared by AUSA David Nozick. Dft appeared with atty Arlington Foley. Jerry Navarra appeared on behalf of U S Probation/Pretrial Services. Dft stipulates to detention-waiving hearing w/o prejudice. Dft ORDERED held w/o bond pending trial. Court addresses death penalty eligibility. Court directs Atty Foley to obtain learned counsel to assist him in this matter. Atty Foley will let court know as soon as he can. Govt states discovery is voluminous. Rule 16 Discovery due by 7/22/2011. Parties and court find that due to complexity of charges and volume of discovery time is waived under the Speedy Trial Act from now until the next status. Status Conference set for 10/14/2011 10:00 AM in US District Court - Hammond before Magistrate Judge Andrew P Rodovich. Dft waives reading of formal charges and enters a plea of not guilty. Dft REMANDED to USM. (Digitally Recorded.) (plm)**

**2:11-cr-00077-PPS -APR-1 Notice has been electronically mailed to:**

Arlington J Foley    arlingtonfoley@att.net

David J Nozick - AUSA    David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

**2:11–cr–00077–PPS –APR–1 Notice has been delivered by U.S. Mail or other means to:**

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

UNITED STATES OF AMERICA,      )
                               )
                v.             ) CAUSE NO. 2:11 CR 77
                               )
JUAN BRISENO                   )

<u>ORDER</u>

Pursuant to 18 U.S.C. §3005, John Maksimovich is appointed learned co-counsel for Juan Briseno.

ENTERED this 1st day of July, 2011

s/ ANDREW P. RODOVICH
    United States Magistrate Judge

s/ ANDREW P. RODOVICH
    United States Magistrate Judge

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **VS.** | ) | **CASE NO: 2:11 CR 77** |
| | ) | |
| **JUAN BRISENO** | ) | |

**NOTICE OF MANUAL FILING**

Defendant's Sealed Motion is in paper form only and is being maintained in the case file

in the Clerk's Office.

s/Arlington J. Foley
Arlington J. Foley, Atty. # 6905-45
Attorney for Defendant
1942 North Main Street
Crown Point, IN 46307
Tel: (219) 661-1200

Date: August 19, 2011

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | ) |
| | ) |
| **VS.** | ) **CASE NO: 2:11 CR 77** |
| | ) |
| **JUAN BRISENO** | ) |

**DEFENDANT'S MOTION FOR COURT ORDER PURSUANT TO CRIMINAL RULE 16**

Comes now the Defendant, Juan Briseno, by and through counsel and moves the Court to

issue an order requiring the government to preserve any and all bodily samples taken from the

Defendant, Juan Briseno; for copies of any and all analyses of such samples and the reports

related to the investigation(s) to which they pertain; and a copy of the Probable Cause Affidavit

which supported the Warrant described herein and in support says:

1. That on the 2nd day of June, 2011, the Defendant, Juan Briseno, was charged, by way of

   Indictment with Murder/Racketeering and Possession of a Firearm/Racketeering in

   violation of 18 U.S.C. § §1959 and 1961; 21 U.S.C. §§ 841 and 846; and 18 U.S.C. §

   924.

2. That subsequently, the Defendant was ordered to be detained and was housed in a

   government contracted facility, i.e. the Porter County Jail.

3. That a government agent pursuant to a warrant, issue by the Court, went to the Porter

   County Jail and took bodily samples of hair and oral swabs from the Defendant.

110

4. That neither the Defendant nor his attorneys, have been informed of the intended purpose and use of the items taken from the Defendant nor have they been provided with the Probable Cause Affidavit supporting the warrant.

5. That Federal Criminal Rule of Procedure 16(a)(E) provides that,

> "…Upon a defendant's request, the government must permit the defendant to inspect and to copy or photograph books, papers, documents, data photographs, tangible objects, buildings or places, or copies or portions of these items, if the item is within the government's possession, custody, or control and:
>
> i. The item is material to preparing the defense;
>
> ii. The government intends to use the item in its case-in-chief at trial; or
>
> iii. The item was obtained from or belongs to the defendant."

6. That Federal Criminal Rule of Procedure 16(a)(F) requires the government, upon defendant's request, to inspect, to copy or to photograph results of any scientific tests or experiments of the item that is within the government's control.

7. That due to the nature of and severity of the charges and possible penalties, it is essential for the Defendant to have preserved any and all bodily samples taken from the Defendant; to be given the authority to copy, photocopy, examine, inspect and photograph all such items; to receive copies of any and all scientific examinations and results thereof, which are related to said bodily samples, as well as summaries of said

findings and conclusions of any government experts; a copy of the Probable Cause

Affidavit supporting the warrant for the seizure of the bodily samples taken from the

Defendant.

8. That the Defendant, Juan Briseno, reasonably believes that the samples taken from him,

may be used by the government in investigations at other suspected crimes and that, if so,

the warrant, the items seized and the results of scientific testing and/or comparison may

be subject to a motion to suppress and that in order to file such a motion, it is necessary

for the Defendant, Juan Briseno, to obtain a copy of the said Probable Cause Affidavit.

**WHEREFORE:** The Defendant, Juan Briseno, moves the Court to issue an order

requiring the government to preserve any and all bodily samples taken from the Defendant, Juan

Briseno; for copies of any and all analyses of such samples and the investigation(s) to which they

pertain; and a copy of the Probable Cause Affidavit which supported the Warrant referred to

herein.

RESPECTFULLY SUBMITTED:

s/Arlington J. Foley
Arlington J. Foley, Atty. No. 6905-45
Attorney for Defendant
1942 North Main Street
Crown Point, IN 46307
Tel: (219) 661-1200

s/John Maksimovich
John Maksimovich, Atty. No. 9950-45
Attorney for Defendant
1946 N. Main Street
Crown Point, IN  46307
Tel: (219) 663-1900

Case: 15-2347     Document: 35          Filed: 07/27/2016     Pages: 4186
Case 2:11-cr-00077-PPS-APR   Document 12   Filed 09/01/11   Page 4 of 4

113

**CERTIFICATE OF SERVICE**

I certify that on the 1st day of September, 2011 service of a true and complete copy of the above and foregoing pleading or paper was made upon each party or attorney of record herein by the electronic case filing system (ECF).

By:     s/Arlington J. Foley
                    Arlington J. Foley, Attorney at Law

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
## HAMMOND DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 2:11-CR-77-PPS-APR-1 |
| | ) | |
| JUAN BRISENO, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

This matter is before the Court on a sealed joint motion requesting the Court's approval

of interim billing by counsel for defendant Juan Briseno [DE 11]. Upon review, the Court

**GRANTS** the motion.

Because of the expected length of the trial in this case and the anticipated hardship on

counsel in undertaking representation full-time for such a period without compensation,

under the Guide to Judiciary Policy (Guide), Volume 7, Part A, § 230.73.20, the following

procedures for interim payments apply during the course of your representation in this case:

## I. Submission of Vouchers

All vouchers submitted shall be *ex parte* and shall be placed under seal, separate and

apart from the file until further order of the Court. All vouchers shall be submitted to the Federal

Public Defender, bi-monthly (once every two months), on CJA Form 30, "Death Penalty

Proceedings: Appointment of and Authority to Pay Court Appointed Counsel." Compensation

earned and reimbursable expenses incurred during the bi-monthly period should be claimed on

an interim voucher submitted no later than the tenth day of the following month, or the first

business day thereafter. The first interim voucher submitted should reflect all compensation

claimed and reimbursable expenses incurred from the date of appointment to **September 21, 2011**, and should be submitted no later than **October 4, 2011**; thereafter, the vouchers should be submitted according to the schedule outlined above. Each voucher will be numbered when processed for payment. Counsel should complete Item 18 on the form for each interim voucher. Interim vouchers should be submitted in accordance with this schedule even where little or no compensation or expenses are claimed for the respective period. All interim vouchers must be supported by detailed and itemized time and expense statements. Guide, Volume 7A, Chapter 6, and Chapter 2, § 230, outlines the procedures and rules for claims by CJA attorneys and should be followed on each voucher.

The Federal Public Defender shall promptly audit each voucher and promptly resolve any questions regarding the hours or expenses claimed. The Court will review the interim vouchers, particularly with regard to the amount of time claimed, and will authorize compensation to be paid for the approved number of hours. The Court will also authorize payment of all reimbursable expenses reasonably incurred.

At the conclusion of the representation, counsel shall submit a final voucher seeking payment for representation provided during the final interim period. The final voucher shall also set forth in detail the time and expenses claimed for the entire case, including all necessary documentation. Counsel shall reflect all compensation and reimbursement previously received on the appropriate line of the final voucher.

2

115

116

## II.    Budget

Counsel shall also submit *ex parte* a proposed initial litigation budget for Court approval, which will be filed and maintained under seal, and will be subject to modification in light of facts and developments that emerge as the case proceeds. Counsel shall submit this proposed initial budget by **October 4, 2011**. If necessary, the Court will order an *ex parte* pretrial conference to facilitate reaching agreement on an initial litigation budget. *See* Guide, Vol. 7, Part A § 640.20(c).

Once approved, the Court will incorporate the initial budget into a sealed initial pretrial order that reflects the understandings of the Court and counsel regarding all matters affecting counsel compensation and reimbursement and payments for investigative, expert, and other services. *See* Guide, Vol. 7, Part A § 640.20(d).

Counsel shall refer to the Guide, Volume 7, Part A, § 640.30(c) for the matters to be included in the proposed initial budget. In short, the proposed initial budget shall include the best preliminary estimate that can be made of the cost of all services (counsel, expert, investigative, and other) likely to be needed through the time that the Department of Justice (DOJ) determines whether to authorize the death penalty. *See* Guide, Vol. 7, Part A § 640.30(c)(1). Subsequent litigation budgets shall be submitted, as needed, in accordance with the procedures set forth in the Guide, Vol. 7, Part A § 640.30.

**SO ORDERED**.

ENTERED: September 8, 2011

> s/ Philip P. Simon
> PHILIP P. SIMON, CHIEF JUDGE
> UNITED STATES DISTRICT COURT

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

UNITED STATES OF AMERICA            )
                                    )
            v.                      )       NO.  2:11 CR 77 PPS
                                    )
JUAN BRISENO                        )

**GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION FOR A COURT ORDER
PURSUANT TO CRIMINAL RULE 16**

Comes now the United States of America, by David Capp, United States Attorney for the

Northern District of Indiana, through Assistant U.S. Attorney David J. Nozick, and responds to the

Defendant's Motion for a Court Order Pursuant to Criminal Rule 16 as follows:

The defendant has moved for a court order seeking to compel the government to turn over

in discovery a search warrant and affidavit in support of a search warrant which was executed on

Juan Briseno. [R. 12].  An FBI agent had taken oral swabs and hair samples from the defendant

pursuant to the search warrant.

The search warrant and affidavit in support of are attached to this motion as Sealed

Attachment A.  The defendant is currently under indictment in the instant case for the homicide of

Latroy Howard.  As this honorable court can see, the search warrant in question seeks to obtain

evidence of a homicide other than the homicide of Latroy Howard.  The search warrant and affidavit

are therefore not relevant to the charged conduct, and are not discoverable in the instant case.

**WHEREFORE**, for the reasons stated above, the government requests that the defendant's

motion be denied.

<div style="margin-left: 40%">

Respectfully submitted,

DAVID CAPP
UNITED STATES ATTORNEY


By:   /s/ David J. Nozick
       David J. Nozick
       Assistant United States Attorney
       5400 Federal Plaza, Suite 1500
       Hammond, Indiana 46320
       (219) 937-5500

</div>

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION


UNITED STATES OF AMERICA          )
                                  )
            v.                    )         NO. 2:11 CR 77 PPS
                                  )
JUAN BRISENO                      )


CERTIFICATE OF SERVICE

The undersigned hereby certifies that the Government's Response to Defendant's Motion for

a Court Order Pursuant to Criminal Rule 16 was electronically filed with the Clerk of the Court using

the CM/ECF system which sent notification of said filing to the following individual:

ARLINGTON J. FOLEY
(Attorney for defendant Briseno)


                    By:     /s/ Janet L. Eisenmann
                            Janet L. Eisenmann
                            U.S. Attorney's Office
                            5400 Federal Plaza, Suite 1500
                            Hammond, Indiana 46320
                            (219) 937-5500


119

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION


UNITED STATES OF AMERICA          )
                                  )
            v.                    )          NO. 2:11 CR 77 PPS
                                  )
JUAN BRISENO                      )


NOTICE OF MANUAL FILING


        A SEALED DOCUMENT is in paper form, only, and is being maintained in the case file

in the Clerk's office.



                                  DAVID CAPP
                                  United States Attorney


                          By:     /s/ David J. Nozick
                                  DAVID J. NOZICK
                                  Assistant United States Attorney
                                  5400 Federal Plaza, Suite 1500
                                  Hammond, Indiana 46320
                                  (219) 937-5500

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| v. | ) CAUSE NO. 2:11 CR 77 |
| | ) |
| JUAN BRISENO | ) |

<u>ORDER</u>

This matter is before the court on the Motion for Court Order Pursuant to Criminal Rule 16 filed by the defendant, Juan Briseno, on September 1, 2011.  For the reasons set forth below, the motion is **DENIED**.

On July 11, 2011, the Honorable Paul R. Cherry issued a search warrant authorizing federal agents to take hair and saliva samples from the defendant for purposes of DNA testing.  Pursuant to Federal Rule of Criminal Procedure 16(a)(1)(F), the defendant now requests discovery concerning the test results.  In a sealed response filed September 16, 2011 (namely the probable cause affidavit filed in support of the search warrant), the government has demonstrated that the DNA testing was not related to the pending case.  Therefore, the motion is **DENIED**.

ENTERED this 26th day of September, 2011

s/ ANDREW P. RODOVICH
United States Magistrate Judge

121

```
MIME-Version:1.0
From:CMECFinnd@innd.uscourts.gov
To:CMECFinnd@localhost.localdomain
Bcc:
--Case Participants: Arlington J Foley (arlingtonfoley@att.net), John Maksimovich
(criminallaw@johnmaksimovich.com), David J Nozick - AUSA (david.nozick@usdoj.gov,
janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov,
usainn.ecfcivil@usdoj.gov), Magistrate Judge Andrew P Rodovich
(rodovich_chambers@innd.uscourts.gov), Chief Judge Philip P Simon
(anna_schumaker@innd.uscourts.gov, denise_woodside@innd.uscourts.gov,
john_demoulpied@innd.uscourts.gov, mark_hancock@innd.uscourts.gov,
matt_singer@innd.uscourts.gov, noel_collins@innd.uscourts.gov,
philip_simon@innd.uscourts.gov)
--Non Case Participants: Probation/Pretrial Services (innpml_cmecf@innd.uscourts.gov), U S
Marshal (inn.docket-fw@usdoj.gov, inn.docket-sb@usdoj.gov, usms.27@usdoj.gov)
--No Notice Sent:

Message-Id:1849229@innd.uscourts.gov
Subject:Activity in Case 2:11-cr-00077-PPS -APR United States of America v. Briseno Status
Conference
Content-Type: text/html
```

### U.S. District Court Northern District of Indiana [LIVE]

### USDC Northern Indiana

## Notice of Electronic Filing

The following transaction was entered on 10/18/2011 at 12:43 PM EST and filed on 10/14/2011

| | |
|---|---|
| **Case Name:** | United States of America v. Briseno |
| **Case Number:** | 2:11-cr-00077-PPS -APR |
| **Filer:** | |
| **Document Number:** | 20(No document attached) |

**Docket Text:**

 **STATUS CONFERENCE as to Juan Briseno held on 10/14/2011 before Magistrate Judge Andrew P Rodovich. Govt appeared by AUSA David Nozick. Dft appeared with attys Arlington Foley and John Maksimovich. Court addresses the death penalty eligibility with Govt. Govt requests a 30-day extension to address such w/excludability for speedy trial. No objection by counsel. Granted. Court finds that due to the complexity of case and the potential for the dealth penalty being given that a trial date will not be given at this time and another status will be set. Status Conference set for 11/17/2011 01:00 PM in US District Court – Hammond before Magistrate Judge Andrew P Rodovich. Dft REMANDED to USM. (Digitally Recorded.) (plm)**

**2:11-cr-00077-PPS -APR-1 Notice has been electronically mailed to:**

Arlington J Foley    arlingtonfoley@att.net

John Maksimovich    criminallaw@johnmaksimovich.com

David J Nozick – AUSA    David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

**2:11–cr–00077–PPS –APR–1 Notice has been delivered by U.S. Mail or other means to:**

124

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | |
| **Plaintiff** | |
| **vs** | |
| **JUAN BRISENO,** | |
| **Defendant** | **CAUSE NO:   2:11-CR-77** |

## NOTICE OF MANUAL FILING

Sealed document is in paper form only and is being maintained in the case file in the Clerk's Office.

**Respectfully submitted:**

/s/ *Arlington Foley*
_____

Arlington Foley /#6905-45
Attorney For Defendant
1942 North Main Street
Crown Point, IN 46307
PH: 219.661.1200
FX: 219.661.1205

/s/ *John Maksimovich*
_____

John Maksimovich /#9950-45
Attorney For Defendant
1946 North Main Street
Crown Point, IN 46307
PH: 219.663.1900
FX: 219.663.1908

Date:          November 2, 2011
_____

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | |
| **Plaintiff** | |
| **vs** | |
| **JUAN BRISENO,** | |
| **Defendant** | **CAUSE NO:   2:11-CR-77** |

## NOTICE OF MANUAL FILING

Sealed document is in paper form only and is being maintained in the case file in the

Clerk's Office.

**Respectfully submitted:**

/s/ Arlington Foley

Arlington Foley /#6905-45
Attorney For Defendant
1942 North Main Street
Crown Point, IN 46307
PH: 219.661.1200
FX: 219.661.1205

/s/ John Maksimovich

John Maksimovich /#9950-45
Attorney For Defendant
1946 North Main Street
Crown Point, IN 46307
PH: 219.663.1900
FX: 219.663.1908

Date:          November 2, 2011

```
MIME-Version:1.0
From:CMECFinnd@innd.uscourts.gov
To:CMECFinnd@localhost.localdomain
Bcc:
--Case Participants: Chief Judge Philip P Simon (anna_schumaker@innd.uscourts.gov,
denise_woodside@innd.uscourts.gov, katherine_welsh@innd.uscourts.gov,
mark_hancock@innd.uscourts.gov, noel_collins@innd.uscourts.gov,
philip_simon@innd.uscourts.gov), Magistrate Judge Andrew P Rodovich
(rodovich_chambers@innd.uscourts.gov)
--Non Case Participants:
--No Notice Sent:

Message-Id:1862156@innd.uscourts.gov
Subject:Activity in Case 2:11-cr-00077-PPS-APR *SEALED* United States of America v.
Briseno Case Sealed
```
Content–Type: text/html

## U.S. District Court Northern District of Indiana [LIVE]

## USDC Northern Indiana

### Notice of Electronic Filing

The following transaction was entered on 11/4/2011 at 11:32 AM EST and filed on 11/3/2011

**Case Name:**   United States of America v. Briseno

**Case Number:**   2:11–cr–00077–PPS–APR *SEALED*

**Filer:**

**Document Number:** No document attached

**Docket Text:**
 **Case sealed. (mc)**


**2:11–cr–00077–PPS–APR *SEALED*–1 No electronic public notice will be sent because the case/entry is sealed.**

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | CAUSE NO. 2:11 CR 77 PPS |
| | ) | |
| v. | ) | 18 U.S.C. § 1962(d) |
| | ) | 18 U.S.C. § 1959(a)(1) |
| JUAN BRISENO a/k/a "Tito"; | ) | 18 U.S.C. § 924 |
| GALO BENJAMIN FELICIANO; | ) | 18 U.S.C. § 2 |
| GUILLERMO BRISENO a/k/a "Memo"; | ) | 18 U.S.C. § 3 |
| ALEJANDRO BALBOA LARA a/k/a | ) | 21 U.S.C. § 841(a)(1) |
| "Jackie Chan"; | ) | |
| JUSTIN WEAVER a/k/a "White Boy"; | ) | |
| MICHAEL ANTHONY CASTILLO; | ) | |
| KELVIN JEFFERSON BELTRAN a/k/a | ) | |
| "Risky"; | ) | |
| DAVID ALMARAZ a/k/a "Penguino,"; | ) | |
| JOSEPH RENE TORRES; | ) | |
| JASON MEDINA a/k/a "Burns"; | ) | |
| EDWARD RAYE SERNA a/k/a "Sern"; | ) | |
| ALEJANDRO BRISENO | ) | |

## SUPERSEDING INDICTMENT

## COUNT 1

### (Conspiracy to Participate in Racketeering Activity)

**THE GRAND JURY CHARGES**:

### Introduction

1. At various times relevant to this Superseding Indictment, the following defendants,

and others known and unknown, were members of the "Almighty IMPERIAL GANGSTERS"

Street Gang (hereinafter the "IMPERIAL GANGSTERS"), a criminal organization whose

127

members and associates engaged in acts of violence, including murder, attempted murder, aggravated battery, aggravated assault and narcotics distribution, and which operated in the Northwest Indiana area, the Northern District of Indiana, Hammond Division, and elsewhere: JUAN BRISENO a/k/a "Tito," GALO BENJAMIN FELICIANO, GUILLERMO BRISENO a/k/a "Memo," ALEJANDRO BALBOA LARA a/k/a "Jackie Chan," JUSTIN WEAVER a/k/a "White Boy," MICHAEL ANTHONY CASTILLO, KELVIN JEFFERSON BELTRAN a/k/a "Risky," DAVID ALMARAZ a/k/a "Penguino," JOSEPH RENE TORRES, JASON MEDINA a/k/a "Burns" and EDWARD RAYE SERNA a/k/a "Sern."

### General Background and Structure of the Enterprise

2. The IMPERIAL GANGSTERS are a nationally known criminal street organization whose members engage in drug trafficking and acts of violence. The 149th Street "No Love Side" IMPERIAL GANGSTERS are a local "set" or affiliate of the IMPERIAL GANGSTERS, with local control and operation within East Chicago, Indiana. The other IMPERIAL GANGSTER set operating in Northwest Indiana is the 139th Street, or "Harbor" or "Trey-Nine" set.

3. The 149th Street IMPERIAL GANGSTERS operate primarily on the South Side of East Chicago. The 149th Street IMPERIAL GANGSTERS are involved in murder, attempted murder, and drug trafficking. The 139th Street IMPERIAL GANGSTERS operate primarily in the Harbor Section of East Chicago. They are also involved in murder, attempted murder, and drug trafficking.

4. Members of the IMPERIAL GANGSTERS greeted each other, and showed their membership in the gang using a set of hand-signs. In addition, IMPERIAL GANGSTERS often

2

greeted one another, demonstrated their allegiance to the gang, or simply announced their arrival or presence in a particular area by exclaiming "Amor." The IMPERIAL GANGSTERS employed a robust symbology as well, often using depictions of the cartoon character The Pink Panther to demonstrate their affiliation. Members often had tattoos incorporating one or more of the aforementioned phrases or symbols, the Pink Panther being the most prominent. The colors associated with the IMPERIAL GANGSTERS are pink and black, and members of the IMPERIAL GANGSTERS often demonstrated their affiliation with the IMPERIAL GANGSTERS by wearing clothing containing these two colors, or incorporating some of the gang's other symbols or phrases.

5. The IMPERIAL GANGSTERS are affiliated with the "Folk Nation" of gangs. Rival street gangs of the IMPERIAL GANGSTERS have included the Spanish Gangster Disciples, The Two Six Nation, The Latin Kings, and the Black P-Stones.

6. The IMPERIAL GANGSTERS have a leadership structure, but do not always utilize official titles or ranks. They at all times have an individual who serves as the leader and makes decisions regarding gang business. The IMPERIAL GANGSTERS have one or two individuals who control and train the "shorties" or prospective members. They have an individual who serves as a treasurer, who collects gang dues. They also have an individual who serves as the enforcer, who applies discipline for violations of the gang rules by meting out punishment.

**The Racketeering Enterprise**

7. The IMPERIAL GANGSTERS, including its leadership, membership, prospects ("shorties") and associates, constitutes an enterprise as defined in 18 U.S.C. § 1961(4), that is, a

3

group of individuals associated in fact. The enterprise constituted an ongoing organization whose members functioned as a continuing unit for a common purpose of achieving the objectives of the enterprise. This enterprise was engaged in, and its activities affected, interstate and foreign commerce.

## Purposes of the Enterprise

8. The purposes of the enterprise included, but were not limited to, the following:

a. Enriching the leaders, member, and associates of the enterprise through, among other things, the illegal trafficking of controlled substances.

b. Preserving and protecting the power, territory, operations, and proceeds of the enterprise through the use of threats, intimidation, violence and destruction including, but not limited to, acts of murder, attempted murder, assault with a dangerous weapon and other acts of violence.

c. Promoting and enhancing the enterprise and its members' and associates' activities.

d. Keeping victims in fear of the enterprise and in fear of its leaders, members, and associates through threats of violence and violence. The leaders, members, and associates of the enterprise undertook all steps necessary to prevent the detection of their criminal activities, and sought to prevent and resolve the imposition of any criminal liabilities upon their leaders, members, and associates, by the use of murder, violence, and intimidation directed against witnesses, victims, and others. As part of this practice, the enterprise enforced what it referred to as a "SOS" or shoot on sight order, or also known as "KOS" or, kill on sight, against IMPERIAL GANGSTERS members who were suspected of having cooperated with law enforcement.

4

e. Providing support to gang members who were charged with, or incarcerated for, gang-related activities.

**The Racketeering Conspiracy**

9. Beginning on a date unknown to the Grand Jury, but at least as of in or about June, 2004, and continuing through on or about the date of this Superseding Indictment, in the Northern District of Indiana and elsewhere, the defendants,

JUAN BRISENO a/k/a "Tito,"
GALO BENJAMIN FELICIANO,
GUILLERMO BRISENO a/k/a "Memo,"
ALEJANDRO BALBOA LARA a/k/a "Jackie Chan,"
JUSTIN WEAVER a/k/a "White Boy,"
MICHAEL ANTHONY CASTILLO,
KELVIN JEFFERSON BELTRAN a/k/a "Risky,"
DAVID ALMARAZ a/k/a "Penguino,"
JOSEPH RENE TORRES,
JASON MEDINA a/k/a "Burns" and
EDWARD RAYE SERNA a/k/a "Sern,"

each being a person employed by and associated with the IMPERIAL GANGSTERS, an enterprise engaged in, and the activities of which affected, interstate and foreign commerce, together with others known and unknown to the Grand Jury, did knowingly and intentionally conspire to conduct and participate, directly and indirectly, in the conduct of the affairs of the enterprise through a pattern of racketeering activity, as defined in Sections 1961(a) and (5) of Title 18, United States Code, consisting of multiple acts involving murder in violation of Indiana Code 35-42-1-1, 35-41-2-4, 35-41-5-1, and multiple acts involving narcotics trafficking in violation of 21 United States Code Sections 841(a)(1)(distribution and possession with the intent to distribute a controlled substance) and Section 846 (conspiracy to distribute and possession

5

with the intent to distribute a controlled substance). It was part of this conspiracy that each defendant agreed that a conspirator would commit at least two acts of racketeering in the conduct of the affairs of the enterprise.

## Manner and Means of the Conspiracy

10. Each member of the enterprise agreed to facilitate a scheme that included the operation and management of the enterprise by a conspirator. Members of the enterprise and their associates operated and conducted their affairs through a series of laws and policies, some of which were codified in a constitution and a series of laws.

11. The members of the enterprise and their associates attended regular meetings at which they discussed, planned, and otherwise engaged in criminal activity, including murder, attempted murder, narcotics distribution, and obstruction of justice.

12. Members of the enterprise and their associates initiated new members through the practice of causing them to endure physical assaults conducted by members of the enterprise at various gang-related gatherings.

13. To enforce discipline and the rules of the enterprise, members of the enterprise and their associates engaged in a system of "violations," in which members of the enterprise attempted to murder, conspired to murder, and physically beat and threatened those members of the enterprise who violated rules, questioned authority, or posed a threat to the leaders or purposes of the enterprise.

14. Members of the enterprise and their associates employed and used gang-related terminology, symbols, gestures, and color schemes.

6

132

15. To perpetuate the enterprise and maintain and extend their power, members of the enterprise and their associates committed illegal acts, including murder, attempted murder, aggravated battery, intimidation, and aggravated assault against individuals who posed a threat to the enterprise or jeopardized its operations, including rival gang members and witnesses to the illegal activities of the enterprise. Pursuant to gang policy, members of the enterprise and their associates were required to participate in such acts, received standing orders to shoot rival gang members, and were instructed to retaliate for gang-related attacks upon the members and associates of the enterprise.

16. Members of the enterprise and their associates managed the procurement, transfer, use, concealment, and disposal of firearms and dangerous weapons within the enterprise to protect gang-related territory, personnel, and operations, and to deter, eliminate, and retaliate against competitors and other rival criminal organizations and persons. On multiple occasions during the course of the conspiracy this included trading firearms with Chicago-based IMPERIAL GANGSTERS, and selling guns to Chicago-based IMPERIAL GANGSTERS.

17. Members of the enterprise and their associates earned money for their members and regularly financed their activities through funds obtained in the illegal trafficking of controlled substances, including the distribution and possession with intent to distribute marijuana, cocaine and ecstasy.

18. Members of the enterprise and their associates operated and conducted their affairs, in part, through a financial system in which the leadership of the IMPERIAL GANGSTERS and others possessed, controlled, and otherwise maintained a monetary stash on behalf of the enterprise. As part of this practice, members of the enterprise and their associates paid requisite

7

133

weekly or bi-weekly dues into the pot, which, in turn, the enterprise used to bail gang members out of jail, to help pay for the defense attorneys of gang members who had been charged with crimes, to send to commissary accounts of incarcerated gang members, and to purchase and sell firearms and controlled substances. At times, the members of the enterprise and their associates paid money into the pot by selling narcotics supplied by members of the gang.

19. Members of the enterprise and their associates hid, misrepresented, concealed and caused to be misrepresented, concealed, and hidden, the objectives of acts done in furtherance of the conspiracy, and used coded language and other means to avoid detection and apprehension by law enforcement authorities.

20. Members of the enterprise recruited and used juveniles to commit acts for the benefit of the enterprise.

21. In order to join the IMPERIAL GANGSTERS prospective members or "shorties" are given the option of shooting someone at the direction of the leadership of the gang, or receiving a two minute "violation," which entails high-ranking members of the gang punching the prospective member seventy times in the chest. While a "shorty" is attempting to join the gang his conduct is observed by the members of the IMPERIAL GANGSTERS. While a "shorty" is attempting to join the gang, he is considered a part of the IMPERIAL GANGSTER family and entitled to the full protection of the enterprise. The "shorty" is also subject to the rules and orders of the enterprise.

134

Case: 15-2347   Document: 35   Filed: 07/27/2016   Pages: 4186

### Overt Acts

22. In furtherance of the conspiracy and to achieve the objects thereof, the conspirators performed or caused to be performed the following overt acts, among others, in the Northern District of Indiana and elsewhere:

   a. On June 24, 2004, **GUILLERMO BRISENO** possessed a firearm.

   b. On October 15, 2004, **ALEJANDRO BALBOA LARA** possessed marijuana.

   c. On March 11, 2005, **GUILLERMO BRISENO** possessed marijuana.

   d. On April 1, 2005, **GUILLERMO BRISENO** possessed marijuana.

   e. On July 27, 2005, **GUILLERMO BRISENO** possessed marijuana.

   f. On May 6, 2006, **EDDIE SERNA** possessed marijuana.

   g. On March 8, 2007, **GUILLERMO BRISENO** possessed a firearm.

   h. On March 22, 2007, **GALO BENJAMIN FELICIANO** and an additional IMPERIAL GANGSTER from East Chicago murdered Juan Murillo Sr. and shot and injured Juan Murillo Jr. during the course of attempting to steal a snowblower from the property of Murillo Sr. and Jr.

   i. On May 19, 2007, **GALO BENJAMIN FELICIANO** possessed a firearm.

   j. On June 2, 2007, **JASON MEDINA** pointed a firearm at Victim 1, and threatened Victim 1's safety.

   k. On June 7, 2007, **JASON MEDINA** pointed a firearm at Victim 1, and threatened Victim 1's safety.

   l. On August 12, 2007, **JUSTIN WEAVER** possessed marijuana.

   m. On August 26, 2007, **GALO BENJAMIN FELICIANO** possessed marijuana.

135

n. On August 31, 2007, **GALO BENJAMIN FELICIANO** possessed marijuana.

o. On September 26, 2007, **JUAN BRISENO** murdered Luis Ortiz, who he believed to be a member of the Latin Kings, while **DAVID ALMARAZ** served as the getaway driver.

p. On September 29, 2007, **JUAN BRISENO** possessed a firearm.

q. On October 20, 2007, **JUAN BRISENO** possessed a firearm.

r. On October 22, 2007, **GALO BENJAMIN FELICIANO** fired a gun at an individual who he believed to be a member of the Ambrose street gang, while **DAVID ALMARAZ** served as the getaway driver.

s. On April 14, 2008, **JUAN BRISENO** possessed marijuana.

t. On May 16, 2008, **JUAN BRISENO** possessed a firearm and shot at unknown individuals.

u. On May 24, 2008, **GUILLERMO BRISENO** possessed a firearm and shot at three individuals.

v. On June 3, 2008, **JUAN BRISENO** murdered Michael Sessum, who he believed to be a member of the Latin Kings.

w. On June 3, 2008, **JUAN BRISENO** murdered Miguel Mejias a/k/a "King Nelly," who he believed to be a member of the Latin Kings.

x. On June 4, 2008, **ALEJANDRO BALBOA LARA** possessed marijuana.

y. On July 26, 2008, **ALEJANDRO BALBOA LARA** possessed marijuana.

z. On October 9, 2008, **JUAN BRISENO** murdered Harris Brown.

aa. On January 4, 2009, **GALO BENJAMIN FELICIANO** possessed a firearm.

bb. On April 1, 2009, **GALO BENJAMIN FELICIANO** possessed marijuana.

10

cc. On April 24, 2009, **JUAN BRISENO** possessed marijuana.

dd. On July 13, 2009, **GALO BENJAMIN FELICIANO** possessed over 700 rounds of ammunition.

ee. On September 10, 2009, **GALO BENJAMIN FELICIANO** and another individual attempted to murder a person known to the Grand Jury, (hereinafter "Victim 2"), by shooting at him with a firearm.

ff. On September 23, 2009, **MICHAEL ANTHONY CASTILLO, JUSTIN WEAVER** and another member of the IMPERIAL GANGSTERS shot Cornelius Jordan, Romelle Jackson and Thomas Delacruz.

gg. On October 3, 2009, **JUAN BRISENO** possessed marijuana, a firearm, ammunition and a bulletproof vest.

hh. On October 3, 2009, **MICHAEL ANTHONY CASTILLO** possessed marijuana.

ii. On October 3, 2009, **JUSTIN WEAVER** possessed marijuana.

jj. On February 7, 2010, **JUAN BRISENO, GALO BENJAMIN FELICIANO** and another member of the IMPERIAL GANGSTERS murdered Miguel Colon, who they believed to be a member of the Two Six gang.

kk. On March 26, 2010, **GALO BENJAMIN FELICIANO** and **JOSEPH TORRES** murdered Jesus Alvarez, who they believed to be a rival gang member.

ll. On April 6, 2010, **JOSEPH TORRES** shot Alejandro Sanchez.

mm. On April 28, 2010, **MICHAEL ANTHONY CASTILLO** murdered Peter Santos, who he believed to be a Spanish Gangster Disciple.

nn. On May 12, 2010, **GALO BENJAMIN FELICIANO** possessed marijuana.

11

oo.  On May 21, 2010, **GALO BENJAMIN FELICIANO** possessed marijuana.

pp.  On May 24, 2010, **MICHAEL ANTHONY CASTILLO** possessed marijuana.

qq.  On June 16, 2010, **JUAN BRISENO** possessed a firearm.

rr.  On June 19, 2010, **JUAN BRISENO** murdered Latroy Howard, who he believed to be associated with the Black P-Stones gang.

ss.  On June 19, 2010, **KELVIN JEFFERSON BELTRAN** and **GALO BENJAMIN FELICIANO** went to the house of a witness to the Latroy Howard homicide and inquired of the witness what the witness had told the East Chicago Police.

tt.  On July 1, 2010, **JUAN BRISENO** possessed marijuana.

uu.  On November 11, 2010, **KELVIN JEFFERSON BELTRAN** possessed marijuana and firearms.

vv.  On March 14, 2011, **JUSTIN WEAVER** possessed marijuana.

ww.  On June 6, 2011, **JASON MEDINA** and **EDWARD RAYE SERNA** attempted to murder a person known to the Grand Jury, (hereinafter "Victim 3"), by shooting at him with a firearm.

## Notice of Enhanced Sentencing

23.  On or about June 3, 2008, in the Northern District of Indiana, JUAN BRISENO, a/k/a "Tito," knowingly and intentionally killed Michael Sessum, in violation of Indiana Penal Code Sections 35-42-1-1 and 35-41-2-4.

12

24. On or about June 3, 2008, in the Northern District of Indiana, JUAN BRISENO, a/k/a "Tito," knowingly and intentionally killed Miguel Mejias, in violation of Indiana Penal Code Sections 35-42-1-1 and 35-41-2-4.

25. On or about October 9, 2008, in the Northern District of Indiana, JUAN BRISENO, a/k/a "Tito," knowingly and intentionally killed Harris Brown, in violation of Indiana Penal Code Sections 35-42-1-1 and 35-41-2-4.

26. On or about February 7, 2010, in the Northern District of Indiana, JUAN BRISENO, a/k/a "Tito," and GALO BENJAMIN FELICIANO knowingly and intentionally killed Miguel Colon, in violation of Indiana Penal Code Sections 35-42-1-1 and 35-41-2-4.

27. On or about March 26, 2010, in the Northern District of Indiana, GALO BENJAMIN FELICIANO and JOSEPH RENE TORRES knowingly and intentionally killed Jesus Alvarez, in violation of Indiana Penal Code Sections 35-42-1-1 and 35-41-2-4.

28. On or about June 19, 2010, in the Northern District of Indiana, JUAN BRISENO, a/k/a "Tito," knowingly and intentionally killed Latroy Howard, in violation of Indiana Penal Code Sections 35-42-1-1 and 35-41-2-4.

All in violation of Title 18, United States Code, Section 1962(d).

## COUNT 2

### (Murder in Aid of Racketeering Activity)

**THE GRAND JURY FURTHER CHARGES:**

1. At all times relevant to this indictment the IMPERIAL GANGSTERS, as more fully described in paragraphs 1 through 8 of Count 1 of this Superseding Indictment, which are re-alleged and incorporated by reference as though fully set forth herein, constituted an enterprise as defined in 18 U.S.C. § 1959(b)(2), namely IMPERIAL GANGSTERS, that is, a group of individuals associated in fact which is engaged in, and the activities of which affected, interstate and foreign commerce. The enterprise constituted an ongoing organization whose members functioned as a continuing unit for a common purpose of achieving the objectives of the enterprise.

2. At all times relevant to this Superseding Indictment, the above-described enterprise, through its members and associates, engaged in racketeering activity as defined in 18 U.S.C. §§ 1959(b)(1) and 1961(1), namely, narcotics trafficking in violation of 21 U.S.C. §§ 841 and 846, and acts involving murder in violation of Indiana Penal Code, Section 35-42-1-1, 35-41-2-4, and 35-41-5-1.

3. On or about June 3, 2008, in the Northern District of Indiana,

**JUAN BRISENO a/k/a "Tito,"**

defendant herein, for the purpose of maintaining and increasing position in the IMPERIAL GANGSTERS, an enterprise engaged in racketeering activity, murdered Michael Sessum, in violation of Indiana Penal Code, Sections 35-42-1-1 and 35-41-2-4.

14

All in violation of Title 18, United States Code, Section 1959(a)(1), and Title 18, United States Code, Section 2.

## COUNT 3

### (Murder Resulting From the Use and Carrying of Firearm During and in Relation to a Crime of Violence)

**THE GRAND JURY FURTHER CHARGES:**

1. Paragraphs 1 through 8 of Count One of this Superseding Indictment, which are re-alleged and incorporated by reference as though set forth fully herein.

2. On or about June 3, 2008, in the Northern District of Indiana,

### JUAN BRISENO a/k/a "Tito,"

defendant herein, did knowingly carry, use, and discharge a firearm during and in relation to a crime of violence, that is, to murder in aid of racketeering activity, as set forth in Count 2 of this Superseding Indictment, which is incorporated here, did cause the death of a person through the use of a firearm, which killing is a murder defined in 18 U.S.C. § 1111, in that the defendant, with malice aforethought, unlawfully killed a human being, that is Michael Sessum, willfully, deliberately, and maliciously.

All in violation of Title 18, United States Code, Sections 924(c) and 924(j), and Title 18, United States Code, Section 2.

16

## COUNT 4

### (Murder in Aid of Racketeering Activity)

**THE GRAND JURY FURTHER CHARGES:**

1. Paragraphs 1 through 2 of Count Two of this Superseding Indictment are re-alleged and incorporated by reference as though set forth fully herein.

2. On or about June 3, 2008, in the Northern District of Indiana,

**JUAN BRISENO a/k/a "Tito,"**

defendant herein, for the purpose of maintaining and increasing position in the IMPERIAL GANGSTERS, an enterprise engaged in racketeering activity, murdered Miguel Mejias a/k/a "King Nelly," in violation of Indiana Penal Code, Sections 35-42-1-1 and 35-41-2-4.

All in violation of Title 18, United States Code, Section 1959(a)(1), and Title 18, United States Code, Section 2.

17

143

## COUNT 5

### (Murder Resulting From the Use and Carrying of Firearm During and in Relation to a Crime of Violence)

**THE GRAND JURY FURTHER CHARGES:**

1. Paragraphs 1 through 8 of Count One of this Superseding Indictment, which are re-alleged and incorporated by reference as though set forth fully herein.

2. On or about June 3, 2008, in the Northern District of Indiana,

### JUAN BRISENO a/k/a "Tito,"

defendant herein, did knowingly carry, use, and discharge a firearm during and in relation to a crime of violence, that is, to murder in aid of racketeering activity, as set forth in Count 4 of this Superseding Indictment, which is incorporated here, did cause the death of a person through the use of a firearm, which killing is a murder defined in 18 U.S.C. § 1111, in that the defendant, with malice aforethought, unlawfully killed a human being, that is Miguel Mejias a/k/a "King Nelly," willfully, deliberately, and maliciously.

All in violation of Title 18, United States Code, Section 924(c) and 924(j), and Title 18, United States Code, Section 2.

18

144

145

## COUNT 6

### (Murder in Aid of Racketeering Activity)

**THE GRAND JURY FURTHER CHARGES:**

1. Paragraphs 1 through 2 of Count Two of this Superseding Indictment are re-alleged and incorporated by reference as though set forth fully herein.

2. On or about October 9, 2008, in the Northern District of Indiana,

**JUAN BRISENO a/k/a "Tito,"**

defendant herein, for the purpose of maintaining and increasing position in the IMPERIAL GANGSTERS, an enterprise engaged in racketeering activity, murdered Harris Brown in violation of Indiana Penal Code, Sections 35-42-1-1 and 35-41-2-4.

All in violation of Title 18, United States Code, Section 1959(a)(1), and Title 18, United States Code, Section 2.

146

## COUNT 7

### (Murder Resulting From the Use and Carrying of Firearm During and in Relation to a Crime of Violence)

**THE GRAND JURY FURTHER CHARGES:**

1. Paragraphs 1 through 8 of Count One of this Superseding Indictment, which are re-alleged and incorporated by reference as though set forth fully herein.

2. On or about October 9, 2008, in the Northern District of Indiana,

### JUAN BRISENO a/k/a "Tito,"

defendant herein, did knowingly carry, use, and discharge a firearm during and in relation to a crime of violence, that is, to murder in aid of racketeering activity, as set forth in Count 6 of this Superseding Indictment, which is incorporated here, did cause the death of a person through the use of a firearm, which killing is a murder defined in 18 U.S.C. § 1111, in that the defendant, with malice aforethought, unlawfully killed a human being, that is Harris Brown, willfully, deliberately, and maliciously.

All in violation of Title 18, United States Code, Section 924(c) and 924(j), and Title 18, United States Code, Section 2.

146

## COUNT 8

### (Murder in Aid of Racketeering Activity)

**THE GRAND JURY FURTHER CHARGES:**

1.  Paragraphs 1 through 2 of Count Two of this Superseding Indictment are re-alleged and incorporated by reference as though set forth fully herein.

2.  On or about February 7, 2010, in the Northern District of Indiana,

**JUAN BRISENO a/k/a "Tito,"**
**and**
**GALO BENJAMIN FELICIANO,**

defendants herein, for the purpose of maintaining and increasing position in the IMPERIAL GANGSTERS, an enterprise engaged in racketeering activity, murdered Miguel Colon a/k/a "Migs" in violation of Indiana Penal Code, Section 35-42-1-1 and 35-41-2-4.

All in violation of Title 18, United States Code, Section 1959(a)(1), and Title 18, United States Codes, Section 2.

147

## COUNT 9

### (Murder Resulting From the Use and Carrying of Firearm During and in Relation to a Crime of Violence)

**THE GRAND JURY FURTHER CHARGES:**

1. Paragraphs 1 through 8 of Count One of this Superseding Indictment, which are re-alleged and incorporated by reference as though set forth fully herein.

2. On or about February 7, 2010, in the Northern District of Indiana,

<div align="center">

**JUAN BRISENO a/k/a "Tito,"**
**and**
**GALO BENJAMIN FELICIANO,**

</div>

defendants herein, did knowingly carry, use, and discharge firearms during and in relation to a crime of violence, that is, to murder in aid of racketeering activity, as set forth in Count 8 of this Superseding Indictment, which is incorporated here, did cause the death of a person through the use of a firearm, which killing is a murder defined in 18 U.S.C. § 1111, in that the defendants, with malice aforethought, unlawfully killed a human being, that is Miguel Colon a/k/a "Migs," willfully, deliberately, and maliciously.

All in violation of Title 18, United States Code, Section 924(c) and 924(j), and Title 18, United States Code, Section 2.

<div align="center">

22

</div>

148

## COUNT 10

### (Accessory After the Fact)

**THE GRAND JURY FURTHER CHARGES:**

1. On or about February 7, 2010 to on or about February 8, 2010, in the Northern District of Indiana and elsewhere,

### ALEJANDRO BRISENO,

defendant herein, knowing that an offense against the United States has been committed, to wit, murder in aid of racketeering and murder resulting from the use and carrying of a firearm during and in relation to a crime of violence, as set forth in Counts 8 and 9 of this Superseding Indictment, did receive, relieve, comfort, and assist the offenders, JUAN BRISENO a/k/a "Tito," and GALO BENJAMIN FELICIANO, in order to hinder and prevent the offenders' apprehension, trial, and punishment.

All in violation of Title 18, United States Code, Section 3.

## COUNT 11

### (Murder in Aid of Racketeering Activity)

**THE GRAND JURY FURTHER CHARGES:**

1. Paragraphs 1 through 2 of Count Two of this Superseding Indictment are re-alleged and incorporated by reference as though set forth fully herein.

2. On or about March 26, 2010, in the Northern District of Indiana,

**GALO BENJAMIN FELICIANO**
**and**
**JOSEPH RENE TORRES,**

defendants herein, for the purpose of maintaining and increasing position in the IMPERIAL GANGSTERS, an enterprise engaged in racketeering activity, murdered Jesus Alvarez in violation of Indiana Penal Code, Section 35-42-1-1 and 35-41-2-4.

All in violation of Title 18, United States Code, Section 1959(a)(1), and Title 18, United States Code, Section 2.

## COUNT 12

### (Murder Resulting From the Use and Carrying of Firearm During and in Relation to a Crime of Violence)

**THE GRAND JURY FURTHER CHARGES:**

1.  Paragraphs 1 through 8 of Count One of this Superseding Indictment, which are re-alleged and incorporated by reference as though set forth fully herein.

2.  On or about March 26, 2010, in the Northern District of Indiana,

<div align="center">

**GALO BENJAMIN FELICIANO**
**and**
**JOSEPH RENE TORRES,**

</div>

defendants herein, did knowingly carry, use, and discharge firearms during and in relation to a crime of violence, that is, to murder in aid of racketeering activity, as set forth in Count 11 of this Superseding Indictment, which is incorporated here, did cause the death of a person through the use of a firearm, which killing is a murder defined in 18 U.S.C. § 1111, in that the defendants, with malice aforethought, unlawfully killed a human being, that is Jesus Alvarez, willfully, deliberately, and maliciously.

All in violation of Title 18, United States Code, Section 924(c) and 924(j), and Title 18, United States Code, Section 2.

151

## COUNT 13

### (Murder in Aid of Racketeering Activity)

**THE GRAND JURY FURTHER CHARGES:**

1. Paragraphs 1 through 2 of Count Two of this Superseding Indictment are re-alleged and incorporated by reference as though set forth fully herein.

2. On or about June 19, 2010, in the Northern District of Indiana,

**JUAN BRISENO a/k/a "Tito,"**

defendant herein, for the purpose of maintaining and increasing position in the IMPERIAL GANGSTERS, an enterprise engaged in racketeering activity, murdered Latroy Howard in violation of Indiana Penal Code, Section 35-42-1-1 and 35-41-2-4.

All in violation of Title 18, United States Code, Section 1959(a)(1), and Title 18, United States Code, Section 2.

152

## COUNT 14

### (Murder Resulting From the Use and Carrying of Firearm During and in Relation to a Crime of Violence)

**THE GRAND JURY FURTHER CHARGES:**

1. Paragraphs 1 through 8 of Count One of this Superseding Indictment, which are re-alleged and incorporated by reference as though set forth fully herein.

2. On or about June 19, 2010, in the Northern District of Indiana,

### JUAN BRISENO a/k/a "Tito,"

defendant herein, did knowingly carry, use, and discharge firearms during and in relation to a crime of violence, that is, to murder in aid of racketeering activity, as set forth in Count 13 of this Superseding Indictment, which is incorporated here, did cause the death of a person through the use of a firearm, which killing is a murder defined in 18 U.S.C. § 1111, in that the defendant, with malice aforethought, unlawfully killed a human being, that is Latroy Howard, willfully, deliberately, and maliciously.

All in violation of Title 18, United States Code, Section 924(c) and 924(j), and Title 18, United States Code, Section 2.

27

153

154

## COUNT 15

### (Attempted Murder in Aid of Racketeering Activity)

**THE GRAND JURY FURTHER CHARGES:**

1. Paragraphs 1 through 2 of Count Two of this Superseding Indictment are re-alleged and incorporated by reference as though set forth fully herein.

2. On or about September 10, 2009, in the Northern District of Indiana,

### GALO BENJAMIN FELICIANO,

defendant herein, for the purpose of maintaining and increasing position in the IMPERIAL GANGSTERS, an enterprise engaged in racketeering activity, attempted to murder Victim 2, a person known to the Grand Jury, in violation of Indiana Penal Code, Sections 35-42-1-1, 35-41-2-4 and 35-41-5-1.

All in violation of Title 18, United States Code, Section 1959(a)(5), and Title 18, United States Code, Section 2.

28

## COUNT 16

### (Use of a Firearm During and in Relation to a Federal Crime of Violence)

**THE GRAND JURY FURTHER CHARGES:**

1. Paragraphs 1 through 8 of Count One of this Superseding Indictment, which are re-alleged and incorporated by reference as though set forth fully herein.

2. On or about September 10, 2009, in the Northern District of Indiana,

**GALO BENJAMIN FELICIANO,**

defendant herein, did knowingly and intentionally use a firearm during and in relation to a crime of violence, for which he may be prosecuted in a court of the United States, to wit: attempted murder in aid of racketeering activity as described in Count 15 of this Superseding Indictment.

All in violation of Title 18, United States Code, Section 924(c), and Title 18, United States Code, Section 2.

29

## COUNT 17

### (Attempted Murder in Aid of Racketeering Activity)

**THE GRAND JURY FURTHER CHARGES:**

1. Paragraphs 1 through 2 of Count Two of this Superseding Indictment are re-alleged and incorporated by reference as though set forth fully herein.

2. On or about June 6, 2011, in the Northern District of Indiana,

**JASON MEDINA a/k/a "Burns"**
**and**
**EDWARD RAYE SERNA a/k/a "Sern,"**

defendants herein, for the purpose of maintaining and increasing position in the IMPERIAL GANGSTERS, an enterprise engaged in racketeering activity, attempted to murder Victim 3, a person known to the Grand Jury, in violation of Indiana Penal Code, Sections 35-42-1-1, 35-41-2-4 and 35-41-5-1.

All in violation of Title 18, United States Code, Section 1959(a)(5) and Title 18, United States Code, Section 2.

30

156

## COUNT 18

### (Use of a Firearm During and in Relation to a Federal Crime of Violence)

**THE GRAND JURY FURTHER CHARGES:**

1. Paragraphs 1 through 8 of Count One of this Superseding Indictment, which are re-alleged and incorporated by reference as though set forth fully herein.

2. On or about June 6, 2011, in the Northern District of Indiana,

**JASON MEDINA a/k/a "Burns"**
**and**
**EDWARD RAYE SERNA a/k/a "Sern,"**

defendants herein, did knowingly and intentionally use a firearm during and in relation to a crime of violence, for which they may be prosecuted in a court of the United States, to wit: attempted murder in aid of racketeering activity as described in Count 17 of the Superseding Indictment.

All in violation of Title 18, United States Code, Section 924(c), and Title 18, United States Code, Section 2.

31

157

## COUNT 19

### (Distribution of Marijuana)

**THE GRAND JURY FURTHER CHARGES:**

1.  On or about September 29, 2011, in the Northern District of Indiana,

**ALEJANDRO BALBOA LARA a/k/a "Jackie Chan,"**

defendant  herein, did knowingly and intentionally distribute a quantity of a mixture and

substance containing a detectable amount of marijuana, a schedule I controlled substance;

All in violation of Title 21, United States Code, Section 841(a)(1).

32

## COUNT 20

### (Distribution of Marijuana)

**THE GRAND JURY FURTHER CHARGES:**

1. On or about October 5, 2011, in the Northern District of Indiana,

**ALEJANDRO BALBOA LARA a/k/a "Jackie Chan,"**

defendant herein, did knowingly and intentionally distribute a quantity of a mixture and

substance containing a detectable amount of marijuana, a schedule I controlled substance;

All in violation of Title 21, United States Code, Section 841(a)(1).

33

## NOTICE OF SPECIAL FINDINGS
### (18 U.S.C. §§ 3591 and 3592)

1. The Grand Jury incorporates by reference and realleges the allegations contained in Counts 2 and 3 of this Superseding Indictment and makes the following special findings as to Counts 2 and 3, the defendant:

### JUAN BRISENO a/k/a "Tito,"

a. was 18 years of age or older at the time of the offenses. [Title 18, United States Code, Section 3591(a)].

b. intentionally killed the victim, Michael Sessum. [Title 18, United States Code, Section 3591(a)(2)(A)].

c. intentionally inflicted serious bodily injury that resulted in the death of the victim, Michael Sessum. [Title 18, United States Code, Section 3591(a)(2)(B)].

d. intentionally participated in an act, contemplating that the life of a person would be taken and intending that lethal force would be used in connection with a person, other than one of the participants in the offense, and the victim, Michael Sessum, died as a direct result of the acts. [Title 18, United States Code, Section 3591(a)(2)(C)].

e. intentionally and specifically engaged in an act of violence, knowing that the act created a grave risk of death to a person, other than one of the participants in the offense, such that participation in the act constituted a reckless disregard for human life and the victim, Michael Sessum, died as a direct result of the act. [Title 18, United States Code, Section 3591(a)(2)(D)].

34

f. knowingly created a grave risk of death to one or more persons in the commission of the offense, in addition to Michael Sessum. [Title 18, United States Code, Section 3592(c)(5)].

g. intentionally killed or attempted to kill more than one person in a single criminal episode. [Title 18, United States Code, Section 3592(c)(16)]; and

h. committed the offense after substantial planning and premeditation to cause the death of Michael Sessum. [Title 18, United States Code, Section 3592(c)(9)].

2. The Grand Jury incorporates by reference and realleges the allegations contained in Counts 4 and 5 of this Superseding Indictment and makes the following special findings as to Counts 4 and 5, the defendant:

**JUAN BRISENO a/k/a "Tito,"**

a. was 18 years of age or older at the time of the offenses. [Title 18, United States Code, Section 3591(a)].

b. intentionally killed the victim, Miguel Mejias. [Title 18, United States Code, Section 3591(a)(2)(A)].

c. intentionally inflicted serious bodily injury that resulted in the death of the victim, Miguel Mejias. [Title 18, United States Code, Section 3591(a)(2)(B)].

d. intentionally participated in an act, contemplating that the life of a person would be taken and intending that lethal force would be used in connection with a person, other than one of the participants in the offense, and the victim, Miguel Mejias, died as a direct result of the acts. [Title 18, United States Code, Section 3591(a)(2)(C)].

35

e. intentionally and specifically engaged in an act of violence, knowing that the act created a grave risk of death to a person, other than one of the participants in the offense, such that participation in the act constituted a reckless disregard for human life and the victim, Miguel Mejias, died as a direct result of the act. [Title 18, United States Code, Section 3591(a)(2)(D)].

f. knowingly created a grave risk of death to one or more persons in the commission of the offense, in addition to Miguel Mejias. [Title 18, United States Code, Section 3592(c)(5)].

g. intentionally killed or attempted to kill more than one person in a single criminal episode. [Title 18, United States Code, Section 3592(c)(16)]; and

h. committed the offense after substantial planning and premeditation to cause the death of Miguel Mejias. [Title 18, United States Code, Section 3592(c)(9)].


3. The Grand Jury incorporates by reference and realleges the allegations contained in Counts 6 and 7 of this Superseding Indictment and makes the following special findings as to Counts 6 and 7, the defendant:

**JUAN BRISENO a/k/a "Tito,"**

a. was 18 years of age or older at the time of the offenses. [Title 18, United States Code, Section 3591(a)].

b. intentionally killed the victim, Harris Brown. [Title 18, United States Code, Section 3591(a)(2)(A)].

162

c. intentionally inflicted serious bodily injury that resulted in the death of the victim, Harris Brown. [Title 18, United States Code, Section 3591(a)(2)(B)].

d. intentionally participated in an act, contemplating that the life of a person would be taken and intending that lethal force would be used in connection with a person, other than one of the participants in the offense, and the victim, Harris Brown, died as a direct result of the acts. [Title 18, United States Code, Section 3591(a)(2)(C)].

e. intentionally and specifically engaged in an act of violence, knowing that the act created a grave risk of death to a person, other than one of the participants in the offense, such that participation in the act constituted a reckless disregard for human life and the victim, Harris Brown, died as a direct result of the act. [Title 18, United States Code, Section 3591(a)(2)(D)]; and

f. committed the offense after substantial planning and premeditation to cause the death of Harris Brown. [Title 18, United States Code, Section 3592(c)(9)].

4. The Grand Jury incorporates by reference and realleges the allegations contained in Counts 8 and 9 of this Superseding Indictment and makes the following special findings as to Counts 8 and 9, the defendants:

**JUAN BRISENO a/k/a "Tito,"**
**and**
**GALO BENJAMIN FELICIANO**

a. were 18 years of age or older at the time of the offenses. [Title 18, United States Code, Section 3591(a)].

37

b. intentionally killed the victim, Miguel Colon. [Title 18, United States Code, Section 3591(a)(2)(A)].

c. intentionally inflicted serious bodily injury that resulted in the death of the victim, Miguel Colon. [Title 18, United States Code, Section 3591(a)(2)(B)].

d. intentionally participated in an act, contemplating that the life of a person would be taken and intending that lethal force would be used in connection with a person, other than one of the participants in the offense, and the victim, Miguel Colon, died as a direct result of the acts. [Title 18, United States Code, Section 3591(a)(2)(C)].

e. intentionally and specifically engaged in an act of violence, knowing that the act created a grave risk of death to a person, other than one of the participants in the offense, such that participation in the act constituted a reckless disregard for human life and the victim, Miguel Colon, died as a direct result of the act. [Title 18, United States Code, Section 3591(a)(2)(D)].

f. knowingly created a grave risk of death to one or more persons in the commission of the offense, in addition to Miguel Colon. [Title 18, United States Code, Section 3592(c)(5)]; and

g. committed the offense after substantial planning and premeditation to cause the death of Miguel Colon. [Title 18, United States Code, Section 3592(c)(9)].

5. The Grand Jury incorporates by reference and realleges the allegations contained in Counts 11 and 12 of this Superseding Indictment and makes the following special findings as to Counts 11 and 12, the defendants:

38

**GALO BENJAMIN FELICIANO,**
**and**
**JOSEPH RENE TORRES,**

a. were 18 years of age or older at the time of the offenses.  [Title 18, United States Code, Section 3591(a)].

b. intentionally inflicted serious bodily injury that resulted in the death of the victim, Jesus Alvarez.  [Title 18, United States Code, Section 3591(a)(2)(B)].

c. intentionally participated in an act, contemplating that the life of a person would be taken and intending that lethal force would be used in connection with a person, other than one of the participants in the offense, and the victim, Jesus Alvarez, died as a direct result of the acts.  [Title 18, United States Code, Section 3591(a)(2)(C)].

d. intentionally and specifically engaged in an act of violence, knowing that the act created a grave risk of death to a person, other than one of the participants in the offense, such that participation in the act constituted a reckless disregard for human life and the victim, Jesus Alvarez, died as a direct result of the act.  [Title 18, United States Code, Section 3591(a)(2)(D)].

e. the defendant Joseph Rene Torres has previously been convicted of a Federal or State offense punishable by a term of imprisonment of more than 1 year, involving the use or attempted or threatened use of a firearm against another person. [Title 18, United States Code, Section 3592(c)(2)].

f. knowingly created a grave risk of death to one or more persons in the commission of the offense, in addition to Jesus Alvarez. [Title 18, United States Code, Section 3592(c)(5)]; and

39

165

g. committed the offense after substantial planning and premeditation to cause the death of Jesus Alvarez. [Title 18, United States Code, Section 3592(c)(9)].

6. The Grand Jury incorporates by reference and realleges the allegations contained in Counts 13 and 14 of this Superseding Indictment and makes the following special findings as to Counts 13 and 14, the defendant:

**JUAN BRISENO a/k/a "Tito,"**

a. was 18 years of age or older at the time of the offenses. [Title 18, United States Code, Section 3591(a)].

b. intentionally killed the victim, Latroy Howard. [Title 18, United States Code, Section 3591(a)(2)(A)].

c. intentionally inflicted serious bodily injury that resulted in the death of the victim, Latroy Howard. [Title 18, United States Code, Section 3591(a)(2)(B)].

d. intentionally participated in an act, contemplating that the life of a person would be taken and intending that lethal force would be used in connection with a person, other than one of the participants in the offense, and the victim, Latroy Howard, died as a direct result of the acts. [Title 18, United States Code, Section 3591(a)(2)(C)].

e. intentionally and specifically engaged in an act of violence, knowing that the act created a grave risk of death to a person, other than one of the participants in the offense, such that participation in the act constituted a reckless disregard for human life and the victim, Latroy Howard, died as a direct result of the act. [Title 18, United States Code, Section 3591(a)(2)(D)]; and

f. committed the offense after substantial planning and premeditation to cause the death

of Latroy Howard. [Title 18, United States Code, Section 3592(c)(9)].


A TRUE BILL:


/s/ Foreperson
FOREPERSON



DAVID CAPP
UNITED STATES ATTORNEY


By:    /s/ David J. Nozick
       David J. Nozick
       Assistant United States Attorney

41

167

```
MIME-Version:1.0
From:CMECFinnd@innd.uscourts.gov
To:CMECFinnd@localhost.localdomain
Bcc:
--Case Participants: Magistrate Judge Andrew P Rodovich
(rodovich_chambers@innd.uscourts.gov), Chief Judge Philip P Simon
(anna_schumaker@innd.uscourts.gov, denise_woodside@innd.uscourts.gov,
katherine_welsh@innd.uscourts.gov, mark_hancock@innd.uscourts.gov,
noel_collins@innd.uscourts.gov, philip_simon@innd.uscourts.gov)
--Non Case Participants:
--No Notice Sent:

Message-Id:1863948@innd.uscourts.gov
Subject:Activity in Case 2:11-cr-00077-PPS-APR United States of America v. Briseno et al
*SEALED* Case Unsealed
Content-Type: text/html
```

## U.S. District Court Northern District of Indiana [LIVE]

## USDC Northern Indiana

### Notice of Electronic Filing

The following transaction was entered on 11/7/2011 at 4:04 PM EST and filed on 11/7/2011

**Case Name:**     United States of America v. Briseno et al

**Case Number:**     2:11–cr–00077–PPS–APR *SEALED*

**Filer:**

**Document Number:**  No document attached

**Docket Text:** *Sealed Entry*
 **Case unsealed as to Juan Briseno, Galo Benjamin Feliciano, Guillermo Briseno, Alejandro Balboa Lara, Justin Weaver, Michael Anthony Castillo, Kelvin Jefferson Beltran, David Almaraz, Joseph Rene Torres, Jason Medina, Edward Raye Serna, Alejandro Briseno (mc)**


**2:11–cr–00077–PPS–APR *SEALED*–1 No electronic public notice will be sent because the case/entry is sealed.**

**2:11–cr–00077–PPS–APR *SEALED*–2 No electronic public notice will be sent because the case/entry is sealed.**

**2:11–cr–00077–PPS–APR *SEALED*–3 No electronic public notice will be sent because the case/entry is sealed.**

**2:11–cr–00077–PPS–APR *SEALED*–4 No electronic public notice will be sent because the case/entry is sealed.**

**2:11–cr–00077–PPS–APR *SEALED*–5 No electronic public notice will be sent because the case/entry is sealed.**

**2:11–cr–00077–PPS–APR *SEALED*–6 No electronic public notice will be sent because the case/entry is sealed.**

**2:11–cr–00077–PPS–APR *SEALED*–7** No electronic public notice will be sent because the case/entry is sealed.

**2:11–cr–00077–PPS–APR *SEALED*–8** No electronic public notice will be sent because the case/entry is sealed.

**2:11–cr–00077–PPS–APR *SEALED*–9** No electronic public notice will be sent because the case/entry is sealed.

**2:11–cr–00077–PPS–APR *SEALED*–10** No electronic public notice will be sent because the case/entry is sealed.

**2:11–cr–00077–PPS–APR *SEALED*–11** No electronic public notice will be sent because the case/entry is sealed.

**2:11–cr–00077–PPS–APR *SEALED*–12** No electronic public notice will be sent because the case/entry is sealed.

```
MIME-Version:1.0
From:CMECFinnd@innd.uscourts.gov
To:CMECFinnd@localhost.localdomain
Bcc:
--Case Participants: Mark A Psimos (psimoslaw@airbaud.net), David J Nozick - AUSA
(david.nozick@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov,
susan.devries@usdoj.gov, usainn.ecfcivil@usdoj.gov), Arlington J Foley
(arlingtonfoley@att.net), Stephen Edward Scheele (pkd@gk4law.com, ses@gk4law.com), Clark W
Holesinger (334office@frontier.com, arcclark@frontier.com, clark.334@frontier.com), R
Brian Woodward (carolb@cwblawfirm.com, rbwoodward@cwblawfirm.com), John Maksimovich
(criminallaw@johnmaksimovich.com), Adam Tavitas (adtavitas@aol.com,
b.lynneadams@yahoo.com), Magistrate Judge Andrew P Rodovich
(rodovich_chambers@innd.uscourts.gov), Chief Judge Philip P Simon
(anna_schumaker@innd.uscourts.gov, denise_woodside@innd.uscourts.gov,
katherine_welsh@innd.uscourts.gov, mark_hancock@innd.uscourts.gov,
noel_collins@innd.uscourts.gov, philip_simon@innd.uscourts.gov)
--Non Case Participants: Probation/Pretrial Services (innpml_cmecf@innd.uscourts.gov), U S
Marshal (inn.docket-fw@usdoj.gov, inn.docket-sb@usdoj.gov, usms.27@usdoj.gov)
--No Notice Sent:

Message-Id:1864799@innd.uscourts.gov
Subject:Activity in Case 2:11-cr-00077-PPS-APR United States of America v. Briseno et al
Notice of Hearing
Content-Type: text/html
```

### U.S. District Court Northern District of Indiana [LIVE]

### USDC Northern Indiana

### Notice of Electronic Filing

The following transaction was entered on 11/8/2011 at 2:47 PM EST and filed on 11/8/2011

| | |
|---|---|
| **Case Name:** | United States of America v. Briseno et al |
| **Case Number:** | 2:11–cr–00077–PPS–APR |
| **Filer:** | |
| **Document Number:** | 49(No document attached) |

**Docket Text:**
**NOTICE OF HEARING as to Juan Briseno regarding [27]. Arraignment on Superseding Indictment set for 11/17/2011 01:00 PM in US District Court – Hammond before Magistrate Judge Andrew P Rodovich. US Marshal to produce Dft for hearing. (plm)**

**2:11–cr–00077–PPS–APR–1 Notice has been electronically mailed to:**

Arlington J Foley  arlingtonfoley@att.net

Mark A Psimos  psimoslaw@airbaud.net

R Brian Woodward  rbwoodward@cwblawfirm.com, carolb@cwblawfirm.com

Clark W Holesinger  clark.334@frontier.com, 334office@frontier.com, arcclark@frontier.com

John Maksimovich  criminallaw@johnmaksimovich.com

170

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

David J Nozick – AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov,
janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

**2:11–cr–00077–PPS–APR–1 Notice has been delivered by U.S. Mail or other means to:**

AO 442 (Rev. 01/09) Arrest Warrant

# UNITED STATES DISTRICT COURT
## for the
### Northern District of Indiana

2011 NOV -4  A 11: 17

SEALED UNTIL ARREST

| | | |
|---|---|---|
| United States of America | ) | |
| v. | ) | |
| | ) | Case No.   2:11CR77 |
| | ) | |
| Juan Briseno a/k/a "Tito" | ) | |
| | ) | |
| *Defendant* | | |

## ARREST WARRANT

To:    Any authorized law enforcement officer

**YOU ARE COMMANDED** to arrest and bring before a United States magistrate judge without unnecessary delay

*(name of person to be arrested)*    Juan Briseno a/k/a "Tito"                                ,

who is accused of an offense or violation based on the following document filed with the court:

☐ Indictment    ☑ Superseding Indictment    ☐ Information    ☐ Superseding Information    ☐ Complaint
☐ Probation Violation Petition    ☐ Supervised Release Violation Petition    ☐ Violation Notice    ☐ Order of the Court

This offense is briefly described as follows:
18:1962(d) CONSPIRACY TO PARTICIPATE IN RACKETEERING ACTIVITY
18:1959(a)(1)) RACKETEERING ACTIVITY /MURDER
18:924(c) VIOLENT CRIME/DRUGS/MACHINE GUN WHERE DEATH OCCURS
18:3591 ANC 3592 DEATH PENALTY
18:2 AIDING AND ABETTING

Date:    11/04/2011

*Issuing officer's signature*

City and state:    Hammond, Indiana

Stephen R. Ludwig, Clerk
*Printed name and title*

| Return |
|---|
| This warrant was received on *(date)* 4 Nov 2011 , and the person was arrested on *(date)* 25 Aug 2010 at *(city and state)* Subject already in custody |
| Date: 7 Nov 2011 |

Ed Payne  DUSM
*Arresting officer's signature*

Ed Payne
*Printed name and title*

```
MIME-Version:1.0
From:CMECFinnd@innd.uscourts.gov
To:CMECFinnd@localhost.localdomain
Bcc:
--Case Participants: Mark A Psimos (psimoslaw@airbaud.net), David J Nozick - AUSA
(david.nozick@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov,
susan.devries@usdoj.gov, usainn.ecfcivil@usdoj.gov), Robert L Rascia
(rrascia@rascia-decastro.com, ysierra@rascia-decastro.com), Arlington J Foley
(arlingtonfoley@att.net), Stephen Edward Scheele (pkd@gk4law.com, ses@gk4law.com), Clark W
Holesinger (334office@frontier.com, arcclark@frontier.com, clark.334@frontier.com), R
Brian Woodward (carolb@cwblawfirm.com, rbwoodward@cwblawfirm.com), John Maksimovich
(criminallaw@johnmaksimovich.com), Adam Tavitas (adtavitas@aol.com,
b.lynneadams@yahoo.com), Magistrate Judge Andrew P Rodovich
(rodovich_chambers@innd.uscourts.gov), Chief Judge Philip P Simon
(anna_schumaker@innd.uscourts.gov, denise_woodside@innd.uscourts.gov,
katherine_welsh@innd.uscourts.gov, mark_hancock@innd.uscourts.gov,
noel_collins@innd.uscourts.gov, philip_simon@innd.uscourts.gov)
--Non Case Participants: Probation/Pretrial Services (innpml_cmecf@innd.uscourts.gov), U S
Marshal (inn.docket-fw@usdoj.gov, inn.docket-sb@usdoj.gov, usms.27@usdoj.gov)
--No Notice Sent:

Message-Id:1867073@innd.uscourts.gov
Subject:Activity in Case 2:11-cr-00077-PPS-APR United States of America v. Briseno et al
Notice of Hearing
Content-Type: text/html
```

### U.S. District Court Northern District of Indiana [LIVE]

### USDC Northern Indiana

## Notice of Electronic Filing

The following transaction was entered on 11/10/2011 at 1:51 PM EST and filed on 11/10/2011

**Case Name:**        United States of America v. Briseno et al

**Case Number:**      2:11-cr-00077-PPS-APR

**Filer:**

**Document Number:** 61(No document attached)

**Docket Text:**
 **NOTICE OF HEARING as to Juan Briseno regarding [49]. Arraignment REset for 11/21/2011 01:30 PM in US District Court – Hammond before Magistrate Judge Andrew P Rodovich. USM to produce Dft to hearing. This change of date and time is on court's own motion. (plm)**

**2:11-cr-00077-PPS-APR-1 Notice has been electronically mailed to:**

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

R Brian Woodward rbwoodward@cwblawfirm.com, carolb@cwblawfirm.com

Clark W Holesinger clark.334@frontier.com, 334office@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Robert L Rascia rrascia@rascia−decastro.com, ysierra@rascia−decastro.com

David J Nozick − AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov,
janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

**2:11−cr−00077−PPS−APR−1 Notice has been delivered by U.S. Mail or other means to:**

```
MIME-Version:1.0
From:CMECFinnd@innd.uscourts.gov
To:CMECFinnd@localhost.localdomain
Bcc:
--Case Participants: Mark A Psimos (psimoslaw@airbaud.net), David J Nozick – AUSA
(david.nozick@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov,
susan.devries@usdoj.gov, usainn.ecfcivil@usdoj.gov), Robert L Rascia
(rrascia@rascia-decastro.com, ysierra@rascia-decastro.com), Arlington J Foley
(arlingtonfoley@att.net), Stephen Edward Scheele (pkd@gk4law.com, ses@gk4law.com), Clark W
Holesinger (334office@frontier.com, arcclark@frontier.com, clark.334@frontier.com), R
Brian Woodward (carolb@cwblawfirm.com, rbwoodward@cwblawfirm.com), John Maksimovich
(criminallaw@johnmaksimovich.com), Adam Tavitas (adtavitas@aol.com,
b.lynneadams@yahoo.com), Magistrate Judge Andrew P Rodovich
(rodovich_chambers@innd.uscourts.gov), Chief Judge Philip P Simon
(anna_schumaker@innd.uscourts.gov, denise_woodside@innd.uscourts.gov,
katherine_welsh@innd.uscourts.gov, mark_hancock@innd.uscourts.gov,
noel_collins@innd.uscourts.gov, philip_simon@innd.uscourts.gov)
--Non Case Participants: Probation/Pretrial Services (innpml_cmecf@innd.uscourts.gov), U S
Marshal (inn.docket-fw@usdoj.gov, inn.docket-sb@usdoj.gov, usms.27@usdoj.gov)
--No Notice Sent:

Message-Id:1867075@innd.uscourts.gov
Subject:Activity in Case 2:11-cr-00077-PPS-APR United States of America v. Briseno et al
Terminate Deadlines and Hearings
Content–Type: text/html
```

### U.S. District Court Northern District of Indiana [LIVE]

### USDC Northern Indiana

## Notice of Electronic Filing

The following transaction was entered on 11/10/2011 at 1:52 PM EST and filed on 11/10/2011

**Case Name:**       United States of America v. Briseno et al

**Case Number:**     2:11–cr–00077–PPS–APR

**Filer:**

**Document Number:** No document attached

**Docket Text:**
 **Terminate Deadlines and Hearings as to Juan Briseno: Status conference date of 11/17/2011 is VACATED. (plm)**

**2:11–cr–00077–PPS–APR–1 Notice has been electronically mailed to:**

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

R Brian Woodward rbwoodward@cwblawfirm.com, carolb@cwblawfirm.com

Clark W Holesinger clark.334@frontier.com, 334office@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

176

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Robert L Rascia rrascia@rascia−decastro.com, ysierra@rascia−decastro.com

David J Nozick − AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov,
janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

**2:11−cr−00077−PPS−APR−1 Notice has been delivered by U.S. Mail or other means to:**

```
MIME-Version:1.0
From:CMECFinnd@innd.uscourts.gov
To:CMECFinnd@localhost.localdomain
Bcc:
--Case Participants: Mark A Psimos (psimoslaw@airbaud.net), David J Nozick - AUSA
(david.nozick@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov,
susan.devries@usdoj.gov, usainn.ecfcivil@usdoj.gov), James N Thiros (jim@thiros.com,
lynn@thiros.com), Robert L Rascia (rrascia@rascia-decastro.com,
ysierra@rascia-decastro.com), Arlington J Foley (arlingtonfoley@att.net), Stephen Edward
Scheele (pkd@gk4law.com, ses@gk4law.com), Clark W Holesinger (334office@frontier.com,
arcclark@frontier.com, clark.334@frontier.com), R Brian Woodward (carolb@cwblawfirm.com,
rbwoodward@cwblawfirm.com), John Maksimovich (criminallaw@johnmaksimovich.com), Adam
Tavitas (adtavitas@aol.com, b.lynneadams@yahoo.com), Magistrate Judge Andrew P Rodovich
(rodovich_chambers@innd.uscourts.gov), Chief Judge Philip P Simon
(anna_schumaker@innd.uscourts.gov, denise_woodside@innd.uscourts.gov,
katherine_welsh@innd.uscourts.gov, mark_hancock@innd.uscourts.gov,
noel_collins@innd.uscourts.gov, philip_simon@innd.uscourts.gov)
--Non Case Participants: Probation/Pretrial Services (innpml_cmecf@innd.uscourts.gov), U S
Marshal (inn.docket-fw@usdoj.gov, inn.docket-sb@usdoj.gov, usms.27@usdoj.gov)
--No Notice Sent:

Message-Id:1874034@innd.uscourts.gov
Subject:Activity in Case 2:11-cr-00077-PPS-APR United States of America v. Briseno et al
Notice of Hearing
Content-Type: text/html
```

## U.S. District Court Northern District of Indiana [LIVE]

### USDC Northern Indiana

## Notice of Electronic Filing


The following transaction was entered on 11/18/2011 at 4:26 PM EST and filed on 11/18/2011

| | |
|---|---|
| **Case Name:** | United States of America v. Briseno et al |
| **Case Number:** | 2:11–cr–00077–PPS–APR |
| **Filer:** | |
| **Document Number:** | 73(No document attached) |

**Docket Text:**
 **NOTICE OF HEARING as to Juan Briseno regarding [61]. Arraignment REset for 11/21/2011 02:30 PM in US District Court – Hammond before Magistrate Judge Andrew P Rodovich due to conflict. PLEASE NOTE: Change in time only. (plm)**


**2:11–cr–00077–PPS–APR–1 Notice has been electronically mailed to:**

Arlington J Foley    arlingtonfoley@att.net

Mark A Psimos    psimoslaw@airbaud.net

James N Thiros    jim@thiros.com, lynn@thiros.com

R Brian Woodward    rbwoodward@cwblawfirm.com, carolb@cwblawfirm.com

Clark W Holesinger clark.334@frontier.com, 334office@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Robert L Rascia rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

David J Nozick – AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

**2:11–cr–00077–PPS–APR–1 Notice has been delivered by U.S. Mail or other means to:**

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA

**APPEARANCE**

UNITED STATES OF AMERICA       )
                                           )
             v.                       )      CAUSE NO. 2:11CR77
                                           )
JUAN BRISENO, ET AL.            )

To the Clerk of this court and all parties of record:

I, the below-signed, state that I have read the Standards for Professional Conduct within the Seventh Federal Judicial Circuit pursuant to N.D. Ind. L.R. 83.5 (g) and appendix B-65-B-70 of this Court and will faithfully adhere to them.  I declare under penalty of perjury that the foregoing is true and correct.

      Enter my appearance as co-counsel in this case for the government.

   November 21, 2011            /s/Dean R. Lanter
      *Date*                         *Signature*

                                    Dean R. Lanter
                                    *Print Name*

                                  21705-64
                                    *Attorney Registration Number*

                                  5400 Federal Plaza, Suite 1500
                                    *Address*

                                  Hammond, IN   46320
                                    *City*

                                  219/937-5500
                                    *Phone Number*

                                  219/852-2770
                                    *Fax Number*

                                  dean.lanter@usdoj.gov

```
MIME-Version:1.0
From:CMECFinnd@innd.uscourts.gov
To:CMECFinnd@localhost.localdomain
Bcc:
--Case Participants: Mark A Psimos (psimoslaw@airbaud.net), David J Nozick - AUSA
(david.nozick@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov,
susan.devries@usdoj.gov, usainn.ecfcivil@usdoj.gov), James N Thiros (jim@thiros.com,
lynn@thiros.com), Robert L Rascia (rrascia@rascia-decastro.com,
ysierra@rascia-decastro.com), Arlington J Foley (arlingtonfoley@att.net), Stephen Edward
Scheele (pkd@gk4law.com, ses@gk4law.com), Clark W Holesinger (334office@frontier.com,
arcclark@frontier.com, clark.334@frontier.com), R Brian Woodward (carolb@cwblawfirm.com,
rbwoodward@cwblawfirm.com), Dean R Lanter - AUSA (dean.lanter@usdoj.gov,
toni.washington@usdoj.gov, usainn.ecfcivil@usdoj.gov), John Maksimovich
(criminallaw@johnmaksimovich.com), Adam Tavitas (adtavitas@aol.com,
b.lynneadams@yahoo.com), Magistrate Judge Andrew P Rodovich
(rodovich_chambers@innd.uscourts.gov), Chief Judge Philip P Simon
(anna_schumaker@innd.uscourts.gov, denise_woodside@innd.uscourts.gov,
katherine_welsh@innd.uscourts.gov, mark_hancock@innd.uscourts.gov,
noel_collins@innd.uscourts.gov, philip_simon@innd.uscourts.gov)
--Non Case Participants: Probation/Pretrial Services (innpml_cmecf@innd.uscourts.gov), U S
Marshal (inn.docket-fw@usdoj.gov, inn.docket-sb@usdoj.gov, usms.27@usdoj.gov)
--No Notice Sent:

Message-Id:1875634@innd.uscourts.gov
Subject:Activity in Case 2:11-cr-00077-PPS-APR United States of America v. Briseno et al
Arraignment
Content-Type: text/html
```

### U.S. District Court Northern District of Indiana [LIVE]

### USDC Northern Indiana

### Notice of Electronic Filing

The following transaction was entered on 11/21/2011 at 6:28 PM EST and filed on 11/21/2011

| | |
|---|---|
| **Case Name:** | United States of America v. Briseno et al |
| **Case Number:** | 2:11–cr–00077–PPS–APR |
| **Filer:** | |
| **Document Number:** | 79(No document attached) |

**Docket Text:**
 **ARRAIGNMENT as to Juan Briseno (1) on Count 2s,3s,4s,5s,6s,7s,8s,9s,13s,14s of Superseding Indictment held on 11/21/2011 before Magistrate Judge Andrew P Rodovich. Govt appeared by AUSA David Nozick. Dft appeared with attys Arlington Foley and John Maksimovich. Dft waives reading of charges and enters a plea of NOT GUILTY. Additional Discovery from Govt is due by 1/31/2012. Court finds that due to the complex discovery and in the interest of justice Dft's rights under the Speedy Trial Act are waived from now until the status conference date. Dft states he has knowingly and voluntarily waived his rights. Status Conference set for 4/19/2012 01:30 PM in US District Court – Hammond before Magistrate Judge Andrew P Rodovich. Dft REMANDED to USM. (Digitally Recorded.) (plm)**

**2:11–cr–00077–PPS–APR–1 Notice has been electronically mailed to:**

Arlington J Foley arlingtonfoley@att.net

181

Mark A Psimos psimoslaw@airbaud.net

James N Thiros jim@thiros.com, lynn@thiros.com

R Brian Woodward rbwoodward@cwblawfirm.com, carolb@cwblawfirm.com

Clark W Holesinger clark.334@frontier.com, 334office@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Robert L Rascia rrascia@rascia−decastro.com, ysierra@rascia−decastro.com

Dean R Lanter − AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, toni.washington@usdoj.gov

David J Nozick − AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

**2:11−cr−00077−PPS−APR−1 Notice has been delivered by U.S. Mail or other means to:**

181

```
MIME-Version:1.0
From:CMECFinnd@innd.uscourts.gov
To:CMECFinnd@localhost.localdomain
Bcc:
--Case Participants: David J Nozick - AUSA (david.nozick@usdoj.gov,
janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov,
usainn.ecfcivil@usdoj.gov), Matthew D Soliday (matt@matthewsolidaylaw.com,
office@matthewsolidaylaw.com), Michael W Bosch (aprince@netnitco.net,
mbosch@netnitco.net), Adam Tavitas (adtavitas@aol.com, b.lynneadams@yahoo.com), Dean R
Lanter - AUSA (dean.lanter@usdoj.gov, toni.washington@usdoj.gov,
usainn.ecfcivil@usdoj.gov), John E Martin - FCD (crystal_medina@fd.org,
john_martin@fd.org), Mark A Psimos (psimoslaw@airbaud.net), James N Thiros
(jim@thiros.com, lynn@thiros.com), Robert L Rascia (rrascia@rascia-decastro.com,
ysierra@rascia-decastro.com), Arlington J Foley (arlingtonfoley@att.net), Stephen Edward
Scheele (pkd@gk4law.com, ses@gk4law.com), Clark W Holesinger (334office@frontier.com,
arcclark@frontier.com, clark.334@frontier.com), R Brian Woodward (carolb@cwblawfirm.com,
rbwoodward@cwblawfirm.com), John Maksimovich (criminallaw@johnmaksimovich.com), David E
Vandercoy (david.vandercoy@valpo.edu), Magistrate Judge Andrew P Rodovich
(rodovich_chambers@innd.uscourts.gov), Chief Judge Philip P Simon
(anna_schumaker@innd.uscourts.gov, denise_woodside@innd.uscourts.gov,
katherine_welsh@innd.uscourts.gov, mark_hancock@innd.uscourts.gov,
noel_collins@innd.uscourts.gov, philip_simon@innd.uscourts.gov)
--Non Case Participants:
--No Notice Sent:

Message-Id:1880237@innd.uscourts.gov
Subject:Activity in Case 2:11-cr-00077-PPS-APR United States of America v. Briseno et al
CJA 30 - Appointment
Content-Type: text/html
```

## U.S. District Court Northern District of Indiana [LIVE]

## USDC Northern Indiana

## Notice of Electronic Filing

The following transaction was entered on 11/29/2011 at 5:13 PM EST and filed on 7/1/2011

| | |
|---|---|
| **Case Name:** | United States of America v. Briseno et al |
| **Case Number:** | 2:11–cr–00077–PPS–APR |
| **Filer:** | |
| **Document Number:** | 96(No document attached) |

**Docket Text:**
**CJA 30: Appointment of Attorney John Maksimovich for Juan Briseno in Death Penalty Proceedings as to Juan Briseno. Approved by Magistrate Judge Andrew P Rodovich on 7/1/11. (plm)**

**2:11–cr–00077–PPS–APR–1 Notice has been electronically mailed to:**

David E Vandercoy david.vandercoy@valpo.edu

Michael W Bosch mbosch@netnitco.net, aprince@netnitco.net

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Matthew D Soliday matt@matthewsolidaylaw.com, office@matthewsolidaylaw.com

James N Thiros jim@thiros.com, lynn@thiros.com

R Brian Woodward rbwoodward@cwblawfirm.com, carolb@cwblawfirm.com

Clark W Holesinger clark.334@frontier.com, 334office@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

John E Martin – FCD john_martin@fd.org, crystal_medina@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Robert L Rascia rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, toni.washington@usdoj.gov

David J Nozick – AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

**2:11–cr–00077–PPS–APR–1 Notice has been delivered by U.S. Mail or other means to:**

```
MIME-Version:1.0
From:CMECFinnd@innd.uscourts.gov
To:CMECFinnd@localhost.localdomain
Bcc:
--Case Participants: David J Nozick - AUSA (david.nozick@usdoj.gov,
janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov,
usainn.ecfcivil@usdoj.gov), Matthew D Soliday (matt@matthewsolidaylaw.com,
office@matthewsolidaylaw.com), Michael W Bosch (aprince@netnitco.net,
mbosch@netnitco.net), Adam Tavitas (adtavitas@aol.com, b.lynneadams@yahoo.com), Dean R
Lanter - AUSA (dean.lanter@usdoj.gov, toni.washington@usdoj.gov,
usainn.ecfcivil@usdoj.gov), John E Martin - FCD (crystal_medina@fd.org,
john_martin@fd.org), Mark A Psimos (psimoslaw@airbaud.net), James N Thiros
(jim@thiros.com, lynn@thiros.com), Arlington J Foley (arlingtonfoley@att.net), Robert L
Rascia (rrascia@rascia-decastro.com, ysierra@rascia-decastro.com), Stephen Edward Scheele
(pkd@gk4law.com, ses@gk4law.com), Clark W Holesinger (334office@frontier.com,
arcclark@frontier.com, clark.334@frontier.com), R Brian Woodward (carolb@cwblawfirm.com,
rbwoodward@cwblawfirm.com), John Maksimovich (criminallaw@johnmaksimovich.com), David E
Vandercoy (david.vandercoy@valpo.edu), Magistrate Judge Andrew P Rodovich
(rodovich_chambers@innd.uscourts.gov), Chief Judge Philip P Simon
(anna_schumaker@innd.uscourts.gov, denise_woodside@innd.uscourts.gov,
katherine_welsh@innd.uscourts.gov, mark_hancock@innd.uscourts.gov,
noel_collins@innd.uscourts.gov, philip_simon@innd.uscourts.gov)
--Non Case Participants:
--No Notice Sent:

Message-Id:1880248@innd.uscourts.gov
Subject:Activity in Case 2:11-cr-00077-PPS-APR United States of America v. Briseno et al
CJA 30 - Appointment
Content-Type: text/html
```

### U.S. District Court Northern District of Indiana [LIVE]

### USDC Northern Indiana

**Notice of Electronic Filing**

The following transaction was entered on 11/29/2011 at 5:16 PM EST and filed on 6/29/2011

| | |
|---|---|
| **Case Name:** | United States of America v. Briseno et al |
| **Case Number:** | 2:11–cr–00077–PPS–APR |
| **Filer:** | |
| **Document Number:** | 97(No document attached) |

**Docket Text:**
**CJA 30: Appointment of Attorney Arlington Foley for Juan Briseno in Death Penalty Proceedings as to Juan Briseno. Approved by Magistrate Judge Andrew P Rodovich on 6/29/11. (plm)**

**2:11–cr–00077–PPS–APR–1 Notice has been electronically mailed to:**

David E Vandercoy    david.vandercoy@valpo.edu

Michael W Bosch    mbosch@netnitco.net, aprince@netnitco.net

Arlington J Foley    arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Matthew D Soliday matt@matthewsolidaylaw.com, office@matthewsolidaylaw.com

James N Thiros jim@thiros.com, lynn@thiros.com

R Brian Woodward rbwoodward@cwblawfirm.com, carolb@cwblawfirm.com

Clark W Holesinger clark.334@frontier.com, 334office@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

John E Martin – FCD john_martin@fd.org, crystal_medina@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Robert L Rascia rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, toni.washington@usdoj.gov

David J Nozick – AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

**2:11–cr–00077–PPS–APR–1 Notice has been delivered by U.S. Mail or other means to:**

```
MIME-Version:1.0
From:CMECFinnd@innd.uscourts.gov
To:CMECFinnd@localhost.localdomain
Bcc:
--Case Participants: Arlington J Foley (arlingtonfoley@att.net), Magistrate Judge Andrew P
Rodovich (rodovich_chambers@innd.uscourts.gov), Chief Judge Philip P Simon
(anna_schumaker@innd.uscourts.gov, denise_woodside@innd.uscourts.gov,
katherine_welsh@innd.uscourts.gov, mark_hancock@innd.uscourts.gov,
noel_collins@innd.uscourts.gov, philip_simon@innd.uscourts.gov)
--Non Case Participants:
--No Notice Sent:

Message-Id:1882141@innd.uscourts.gov
Subject:Activity in Case 2:11-cr-00077-PPS-APR United States of America v. Briseno et al
Order on Motion to Seal
Content-Type: text/html
```

### U.S. District Court Northern District of Indiana [LIVE]

### USDC Northern Indiana

### Notice of Electronic Filing

The following transaction was entered on 12/1/2011 at 4:14 PM EST and filed on 11/30/2011

**Case Name:**      United States of America v. Briseno et al

**Case Number:**     2:11–cr–00077–PPS–APR

**Filer:**

**Document Number:** 102(No document attached)

**Docket Text:**
 **ORDER granting [23] Motion to Seal as to Juan Briseno (1). Signed by Magistrate Judge Andrew P Rodovich on 11/30/11. (mc)**

**2:11–cr–00077–PPS–APR–1 Notice has been electronically mailed to:**

Arlington J Foley   arlingtonfoley@att.net

**2:11–cr–00077–PPS–APR–1 Notice has been delivered by U.S. Mail or other means to:**

Adam Tavitas
Law Office of Adam Tavitas
9120 Connecticut Dr Suite G
Merrillville, IN 46410

Clark W Holesinger
Law Offices of Clark W Holesinger
334 W 806 N
Valparaiso, IN 46385

David J Nozick – AUSA
US Attorney's Office – Ham/IN
5400 Federal Plaza Suite 1500

Hammond, IN 46320

David E Vandercoy
Valparaiso University Law Clinic
Heritage Hall
510 Freeman Street
Valparaiso, IN 46383

Dean R Lanter – AUSA
US Attorney's Office – Ham/IN
5400 Federal Plaza Suite 1500
Hammond, IN 46320

James N Thiros
Cohen & Thiros PC
200 E 90th Drive
Merrillville, IN 46410–7089

John Maksimovich
1946 North Main Street
Crown Point, IN 46307

John E Martin – FCD
Federal Community Defenders Inc – Ham/IN
Northern District of Indiana
31 Sibley Street
Hammond, IN 46320

Mark A Psimos
Mark A Psimos Attorney at Law
9219 Broadway
Merrillville, IN 46410

Matthew D Soliday
205 E Jefferson St
Valparaiso, IN 46383

Michael W Bosch
Bosch & Dedelow
8320 Kennedy Avenue
Highland, IN 46322

R Brian Woodward
Casale Woodward & Buls LLP – Mer/IN
9223 Broadway Suite A
Merrillville, IN 46410

Robert L Rascia
Rascia & DeCastro Ltd
650 N Dearborn Suite 700
Chicago, IL 60654

Stephen Edward Scheele
Goodman Katz & Scheele
9013 Indianapolis Blvd
Highland, IN 46322

Visvaldis P Kupsis
Law Offices of Visvaldis P Kupsis
334 W 806 N
Valparaiso, IN 46383

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Case No.  2:11 CR 77 PPS |
| | ) | |
| JUAN BRISENO, | ) | |
| a/k/a "Tito," et al., | ) | |
| | ) | |
| Defendants. | ) | |

MOTION FOR PROTECTIVE ORDER

The United States of America (the "Government") files this motion for protective

order as follows:

The Court has the ability to regulate the parties' discovery through Federal Rule of

Criminal Procedure 16(d).  *See* Fed. R. Crim. P. 16(d)(1).  Specifically, Rule 16(d)(1)

permits the court, upon a showing of good cause, to deny, restrict, or defer pretrial

discovery or inspection by entering a protective order.  "It is appropriate, however, to

employ Rule 16(d) protective orders to curtail the public dissemination of sensitive

discovery materials that may endanger witnesses or informants."  *United States v.*

*Barbeito*, 2009 U.S. Dist. LEXIS 102688 (S.D. W. Va. Oct. 30, 2009); *see also United*

*States v. Moore*, 322 Fed. Appx. 78, 83 (2d Cir. 2009) (unpublished).

On November 3, 2011, the Grand Jury for the Northern District of Indiana returned

the above-captioned indictment for Conspiracy to Participate in a Racketeering

**Motion for Protective Order - Page 1**

Enterprise, in violation of 18 U.S.C. § 1962(d) and other related charges including Murder in Aid of Racketeering, in violation of 18 U.S.C. § 1959(a)(1). [R. 27]. This case involves an ongoing criminal investigation of the Imperial Gangsters, a national criminal street gang organization that is known to retaliate against any and all cooperating witnesses. The indictment in this case includes multiple gang-related homicides. During the course of the conspiracies charged in this case members of the conspiracy attempted to threaten, intimidate, and kill individuals on multiple occasions who they suspected of cooperating with law enforcement authorities.

There is good cause to issue a protective order pursuant to Rule 16(d)(1). In order to protect sensitive law enforcement information relevant to an ongoing criminal investigation, and to protect the witnesses from any potential intimidation and retribution, the Government requests that the Court enter an order denying the defendants' unsupervised possession of the discovery material at any time. Accordingly, the Government asks that the following restrictions be placed on the discovery material:

1. The attorneys for the defendants may disclose the video and audio recordings, transcripts, all Title III materials (including orders and applications) reports and the witness statements (hereinafter referred to as "discovery materials") only to the defendants and such disclosure may occur only after the attorneys for the defendants advise the defendants of the prohibitions of the protective order, a violation of which may be punished as contempt;

2. The attorneys for the defendants shall not make any reference to the discovery materials and shall not make additional copies of such without prior authorization of this Court;

**Motion for Protective Order - Page 2**

Case: 15-2347   Document: 35   Filed: 07/27/2016   Pages: 4186
Case 2:11-cr-00077-PPS-APR   Document 104   Filed 12/19/11   Page 3 of 4

191

3.   The attorneys for the defendants shall not permit the defendants' unsupervised review of the discovery materials;

4.   The discovery materials are for use only in this case and are not to be disseminated or used for any other purpose;

5.   Any pleading referencing the discovery materials should be filed under seal until further order of this Court;

6.   Any and all discovery materials shall be returned to the Government or destroyed at the conclusion of this case; and

7.   In the event any attorneys for defendants have limited appearance, e.g. detention hearings, all discovery materials shall be returned to the Government at the conclusion of that proceeding.

WHEREFOR, the Government requests that the Court grant this Motion for a Protective Order.

Respectfully submitted,

DAVID CAPP
UNITED STATES ATTORNEY

By:     /s/ David J. Nozick
         David J. Nozick
         Assistant U.S. Attorney
         5400 Federal Plaza, Suite 1500
         Hammond, Indiana 46320
         (219) 937-5500

**Motion for Protective Order - Page 3**

192

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION


UNITED STATES OF AMERICA )
)
v. ) NO. 2:11 CR 77 PPS
)
JUAN BRISENO, ET AL. )

CERTIFICATE OF SERVICE

The undersigned hereby certifies that the government's Motion for Protective Order was

electronically filed with the Clerk of the Court using the CM/ECF system which sent notification

of said filing to all counsel of record.


By: /s/ Janet L. Eisenmann
Janet L. Eisenmann
U.S. Attorney's Office
5400 Federal Plaza, Suite 1500
Hammond, Indiana 46320
(219) 937-5500

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | |
| **Plaintiff** | |
| **vs** | |
| **JUAN BRISENO,** | |
| **Defendant** | **CAUSE NO:  2:11-CR-77** |

## NOTICE OF MANUAL FILING

Sealed document is in paper form only and is being maintained in the case file in the Clerk's Office.

**Respectfully submitted:**

/s/ *Arlington Foley*
_____

Arlington Foley /#6905-45
Attorney For Defendant
1942 North Main Street
Crown Point, IN 46307
PH: 219.661.1200
FX: 219.661.1205

/s/ *John Maksimovich*
_____

John Maksimovich /#9950-45
Attorney For Defendant
1946 North Main Street
Crown Point, IN 46307
PH: 219.663.1900
FX: 219.663.1908

Date:        December 21, 2011
_____

```
MIME-Version:1.0
From:CMECFinnd@innd.uscourts.gov
To:CMECFinnd@localhost.localdomain
Bcc:
--Case Participants: David J Nozick - AUSA (david.nozick@usdoj.gov,
janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov,
usainn.ecfcivil@usdoj.gov), Matthew D Soliday (matt@matthewsolidaylaw.com,
office@matthewsolidaylaw.com), Michael W Bosch (aprince@netnitco.net,
mbosch@netnitco.net), Adam Tavitas (adtavitas@aol.com, b.lynneadams@yahoo.com), Dean R
Lanter - AUSA (dean.lanter@usdoj.gov, toni.washington@usdoj.gov,
usainn.ecfcivil@usdoj.gov), John E Martin - FCD (crystal_medina@fd.org,
john_martin@fd.org), Mark A Psimos (psimoslaw@airbaud.net), James N Thiros
(jim@thiros.com, lynn@thiros.com), Robert L Rascia (rrascia@rascia-decastro.com,
ysierra@rascia-decastro.com), Arlington J Foley (arlingtonfoley@att.net), Visvaldis P
Kupsis (vpkupsis@hotmail.com), Stephen Edward Scheele (pkd@gk4law.com, ses@gk4law.com),
Clark W Holesinger (334office@frontier.com, arcclark@frontier.com,
clark.334@frontier.com), R Brian Woodward (carolb@wbbklaw.com, rbwoodward@wbbklaw.com),
John Maksimovich (criminallaw@johnmaksimovich.com), David E Vandercoy
(david.vandercoy@valpo.edu), Magistrate Judge Andrew P Rodovich
(rodovich_chambers@innd.uscourts.gov), Chief Judge Philip P Simon
(anna_schumaker@innd.uscourts.gov, denise_woodside@innd.uscourts.gov,
katherine_welsh@innd.uscourts.gov, mark_hancock@innd.uscourts.gov,
noel_collins@innd.uscourts.gov, philip_simon@innd.uscourts.gov)
--Non Case Participants: Probation/Pretrial Services (innpml_cmecf@innd.uscourts.gov), U S
Marshal (inn.docket-fw@usdoj.gov, inn.docket-sb@usdoj.gov, usms.27@usdoj.gov)
--No Notice Sent:

Message-Id:1906943@innd.uscourts.gov
Subject:Activity in Case 2:11-cr-00077-PPS-APR United States of America v. Briseno et al
Notice of Hearing
Content-Type: text/html
```

### U.S. District Court Northern District of Indiana [LIVE]

### USDC Northern Indiana

## Notice of Electronic Filing

The following transaction was entered on 1/10/2012 at 6:00 PM EST and filed on 1/10/2012

| | |
|---|---|
| **Case Name:** | United States of America v. Briseno et al |
| **Case Number:** | 2:11-cr-00077-PPS-APR |
| **Filer:** | |
| **Document Number:** | 109(No document attached) |

**Docket Text:**
 **NOTICE OF HEARING as to Juan Briseno, Galo Benjamin Feliciano, Joseph Rene Torres. Status Conference (re budget) set for 1/19/2012 02:00 PM in chambers of Magistrate Judge Andrew P Rodovich. Defense counsel only. (plm)**

**2:11-cr-00077-PPS-APR-1 Notice has been electronically mailed to:**

David E Vandercoy   david.vandercoy@valpo.edu

Michael W Bosch   mbosch@netnitco.net, aprince@netnitco.net

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Matthew D Soliday matt@matthewsolidaylaw.com, office@matthewsolidaylaw.com

James N Thiros jim@thiros.com, lynn@thiros.com

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, 334office@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

John E Martin – FCD john_martin@fd.org, crystal_medina@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Robert L Rascia rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, toni.washington@usdoj.gov

David J Nozick – AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

**2:11–cr–00077–PPS–APR–1 Notice has been delivered by U.S. Mail or other means to:**

**2:11–cr–00077–PPS–APR–2 Notice has been electronically mailed to:**

David E Vandercoy david.vandercoy@valpo.edu

Michael W Bosch mbosch@netnitco.net, aprince@netnitco.net

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Matthew D Soliday matt@matthewsolidaylaw.com, office@matthewsolidaylaw.com

James N Thiros jim@thiros.com, lynn@thiros.com

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, 334office@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

John E Martin – FCD john_martin@fd.org, crystal_medina@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Robert L Rascia rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, toni.washington@usdoj.gov

David J Nozick – AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

**2:11–cr–00077–PPS–APR–2 Notice has been delivered by U.S. Mail or other means to:**

**2:11–cr–00077–PPS–APR–9 Notice has been electronically mailed to:**

David E Vandercoy david.vandercoy@valpo.edu

Michael W Bosch mbosch@netnitco.net, aprince@netnitco.net

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Matthew D Soliday matt@matthewsolidaylaw.com, office@matthewsolidaylaw.com

James N Thiros jim@thiros.com, lynn@thiros.com

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, 334office@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

John E Martin – FCD john_martin@fd.org, crystal_medina@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Robert L Rascia rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, toni.washington@usdoj.gov

David J Nozick – AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

**2:11–cr–00077–PPS–APR–9 Notice has been delivered by U.S. Mail or other means to:**

196

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

UNITED STATES OF AMERICA,      )
                               )
          v.                   ) CAUSE NO. 2:11 CR 77
                               )
JUAN BRISENO, a/k/a "Tito",    )
et al.,                        )

ORDER

This matter is before the court on the Motion for Protective Order filed by the government on December 19, 2011.  For the reasons set forth below, the motion is **DENIED**.

Background

On June 2, 2011, the grand jury returned a 20 count indictment against members of the Almighty Imperial Gangsters street gang.  The indictment alleges that the street gang is a criminal enterprise that has engaged in acts of violence and the distribution of narcotics in violation of 18 U.S.C. §1962(d).

In the pending motion, the government seeks a blanket order prohibiting defense counsel from providing the defendants with copies of discovery materials.  Under the proposed order, defense counsel would be required to review the materials with each defendant and not provide a defendant with his own copy of the discovery.  The government is concerned that some of the materials may identify witnesses and confidential informants, thereby placing their lives in jeopardy.  The defendant, Joseph Torres, has objected to the motion.

## Discussion

Federal Rule of Criminal Procedure 16 controls the production of discovery in criminal cases. In particular, Rule 16(d)(1) provides for the entry of a protective order:

> At any time the court may, for good cause, deny, restrict, or defer discovery or inspection, or grant other appropriate relief. The court may permit a party to show good cause by a written statement that the court will inspect *ex parte*. If relief is granted, the court must preserve the entire text of the party's statement under seal.

Rule 16(d)(1) has been applied by the courts in a variety of contexts:

> Rule 16(d)(1) gives the court ample power to make protective orders and modifying orders if a party can make a showing why discovery that has been requested may be inappropriate. The discretion provided to the trial court by Rule 16(d)(1) is vast. Upon a sufficient showing, the court may, at any time, order that the discovery or inspection be denied, restricted, or deferred, or "grant other appropriate relief." In determining whether to make a protective order, the court will take into account such considerations as the safety of witnesses and others, a particular danger of perjury or witness intimidation, the protection of information vital to national security, and the protection of business enterprises from economic reprisals. The burden is on the party seeking the protective order to make a sufficient showing of why it is needed. (footnotes omitted)
>
> 2 Wright & Henning *Federal Practice and Procedure Criminal Fourth* §262

Upon a proper showing, the court may grant the relief requested by the government.

2

In seeking a protective order, not only does the government have the burden of proof, but it also must specify with particularity the information which is subject to the protective order. *See generally **Holifield v. United States***, 909 F.2d 201, 204 (7th Cir. 1990). For example, the indictment contains allegations that homicides were committed by gang members. Evidence from the crime scene, ballistic reports, and autopsy results should not require the confidentiality sought by the government. It should be noted that the court has given examples of some items which would not be included in a protective order, but these examples should not be considered as an exhaustive list.

The proposed protective order also is overly restrictive as to who would have access to discovery materials. A defense attorney is entitled to rely upon paralegals and investigators in preparing a defense. Precluding the support staff from having unrestricted access to discovery would pose an undue burden on the defense.

Additionally, defense attorneys may want to consult with one another concerning proposed defenses. As officers of the court, the government should not be concerned that any such consultation would jeopardize potential witnesses.

In providing discovery to defense counsel, the government must specify with particularity which materials it believes should remain confidential. If a defendant believes that designated materials should not be covered by a protective order, the government will be required to file an additional motion directed

3

to those documents.  It is expected that the attorneys will make a good faith effort to resolve any discovery disputes.

If an agreed protective order is reached, the government can tender that order for approval by the court.  If a renewed motion is filed, the government will be expected to tender a proposed order consistent with this opinion.

_____

For the foregoing reasons, the Motion for Protective Order filed by the government on December 19, 2011, is **DENIED**.

ENTERED this 17th day of January, 2012


s/ ANDREW P. RODOVICH
United States Magistrate Judge


4

200

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **VS.** | ) | **CASE NO: 2:11 CR 77** |
| | ) | |
| **JUAN BRISENO** | ) | |

## NOTICE OF MANUAL FILING

<u>Defendant's Sealed Motion</u> is in paper form only and is being maintained in the case file

in the Clerk's Office.


s/Arlington J. Foley
Arlington J. Foley, Atty. # 6905-45
Attorney for Defendant
1942 North Main Street
Crown Point, IN  46307
Tel: (219) 661-1200


Date: March 23, 2012

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
### HAMMOND DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| VS. | ) | CASE NO: 2:11 CR 77 |
| | ) | |
| JUAN BRISENO | ) | |

## MOTION TO CONTINUE STATUS CONFERENCE

Comes now the Defendant, Juan Briseno, by and through counsel, and moves to continue this matter for Status Conference and in support says:

1.  That this matter is set for Status Conference on the 19th day of April, 2012.

2.  That counsel for the Defendant, Juan Briseno, will be out of the jurisdiction on vacation from April 16, 2012 through April 20, 2012.

3.  That the earliest possible date that counsel for the Defendant, Juan Briseno, could be available for any proceeding would be the week commencing April 23, 2012.

4.  The delay occasioned by the granting of this motion for continuance would constitute and be excludable time as defined by 18 U.S.C. § 3161 (h)(8)(A) and B(i) and (iv).

5.  The delay occasioned by the granting of the motion to continuance would also be excludable for the reason that the ends of justice served by the granting of the continuance outweigh the interest of the public and the Defendant in a speedy trial.

6. That co-counsel for Defendant, John Maksimovich and the A.U.S.A. assigned to

this matter has been advised and has no objection to this motion.

**WHEREFORE:**       The Defendant, Juan Briseno, moves the Court to continue

this matter for Status Conference in accordance with this motion.

RESPECTFULLY SUBMITTED:    s/Arlington J. Foley
                            Attorney for Defendant
                            Attorney No: 6905-45
                            1942 North Main Street
                            Crown Point, IN  46307
                            Tel: (219) 661-1200

### CERTIFICATE OF SERVICE

I certify that on the 29th day of March, 2012 service of a true and complete copy of the above and foregoing pleading or paper was made upon each party or attorney of record herein by the electronic case filing system (ECF).

By:    s/Arlington J. Foley
        Arlington J. Foley
        Attorney at Law

```
MIME-Version:1.0
From:CMECFinnd@innd.uscourts.gov
To:CMECFinnd@localhost.localdomain
Bcc:
--Case Participants: David J Nozick - AUSA (david.nozick@usdoj.gov,
janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov,
usainn.ecfcivil@usdoj.gov), Matthew D Soliday (matt@matthewsolidaylaw.com,
office@matthewsolidaylaw.com), Michael W Bosch (aprince@netnitco.net,
mbosch@netnitco.net), Adam Tavitas (adtavitas@aol.com, b.lynneadams@yahoo.com), Dean R
Lanter - AUSA (dean.lanter@usdoj.gov, toni.washington@usdoj.gov,
usainn.ecfcivil@usdoj.gov), Scott L King (sking@scottkinggroup.com), John E Martin - FCD
(crystal_medina@fd.org, john_martin@fd.org), Mark A Psimos (psimoslaw@airbaud.net), James
N Thiros (jim@thiros.com, lynn@thiros.com), Robert L Rascia (rrascia@rascia-decastro.com,
ysierra@rascia-decastro.com), Arlington J Foley (arlingtonfoley@att.net), Visvaldis P
Kupsis (vpkupsis@hotmail.com), Stephen Edward Scheele (pkd@gk4law.com, ses@gk4law.com),
Clark W Holesinger (334office@frontier.com, arcclark@frontier.com,
clark.334@frontier.com), R Brian Woodward (carolb@wbbklaw.com, rbwoodward@wbbklaw.com),
John Maksimovich (criminallaw@johnmaksimovich.com), David E Vandercoy
(david.vandercoy@valpo.edu), Magistrate Judge Andrew P Rodovich
(rodovich_chambers@innd.uscourts.gov), Chief Judge Philip P Simon
(anna_schumaker@innd.uscourts.gov, denise_woodside@innd.uscourts.gov,
katherine_welsh@innd.uscourts.gov, mark_hancock@innd.uscourts.gov,
noel_collins@innd.uscourts.gov, philip_simon@innd.uscourts.gov)
--Non Case Participants:
--No Notice Sent:

Message-Id:1966334@innd.uscourts.gov
Subject:Activity in Case 2:11-cr-00077-PPS-APR United States of America v. Briseno et al
Order on Motion to Seal
Content-Type: text/html
```

### U.S. District Court Northern District of Indiana [LIVE]

### USDC Northern Indiana

## Notice of Electronic Filing

The following transaction was entered on 4/5/2012 at 10:51 AM EST and filed on 4/5/2012

**Case Name:**     United States of America v. Briseno et al

**Case Number:**     2:11–cr–00077–PPS–APR

**Filer:**

**Document Number:** 150(No document attached)

**Docket Text:**

**ORDER finding moot [106] Motion to Seal as to Juan Briseno (1). Approved by Magistrate Judge Andrew P Rodovich on 4/5/12. No pdf attached. (plm)**

**2:11–cr–00077–PPS–APR–1 Notice has been electronically mailed to:**

David E Vandercoy david.vandercoy@valpo.edu

Michael W Bosch mbosch@netnitco.net, aprince@netnitco.net

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Matthew D Soliday matt@matthewsolidaylaw.com, office@matthewsolidaylaw.com

Scott L King sking@scottkinggroup.com

James N Thiros jim@thiros.com, lynn@thiros.com

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, 334office@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

John E Martin – FCD john_martin@fd.org, crystal_medina@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Robert L Rascia rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, toni.washington@usdoj.gov

David J Nozick – AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

**2:11–cr–00077–PPS–APR–1 Notice has been delivered by U.S. Mail or other means to:**

FILED

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION                    2012 APR -5  PM 4: 07

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | CAUSE NO. 2:11 CR 77 PPS |
| | ) | FOR THE NORTHERN DISTRICT OF INDIANA |
| v. | ) | 18 U.S.C. § 1962(d) |
| | ) | 18 U.S.C. § 1959(a)(1) |
| JUAN BRISENO a/k/a "Tito"; | ) | 18 U.S.C. § 924 |
| GALO BENJAMIN FELICIANO; | ) | 18 U.S.C. § 2 |
| GUILLERMO BRISENO a/k/a "Memo"; | ) | 18 U.S.C. § 3 |
| JUSTIN WEAVER a/k/a "White Boy"; | ) | 21 U.S.C. § 846 |
| MICHAEL ANTHONY CASTILLO; | ) | |
| DAVID ALMARAZ a/k/a "Penguino"; | ) | |
| JOSEPH RENE TORRES; | ) | |
| JASON MEDINA a/k/a "Burns"; | ) | |
| EDWARD RAYE SERNA a/k/a "Sern"; | ) | |
| ALEJANDRO BRISENO; | ) | |
| ROBERT LOCKHART a/k/a "Jackson"; | ) | |
| ARMANDO JOSE VELASQUEZ a/k/a | ) | |
| "Money"; | ) | |
| ANTHONY BALDAZO a/k/a "Tall | ) | |
| Folks" | ) | |

## SECOND SUPERSEDING INDICTMENT

## COUNT 1

### (Conspiracy to Participate in Racketeering Activity)

**THE GRAND JURY CHARGES**:

#### Introduction

1. At various times relevant to this Second Superseding Indictment, the following

defendants, and others known and unknown, were members of the "Almighty IMPERIAL

GANGSTERS" Street Gang (hereinafter the "IMPERIAL GANGSTERS"), a criminal

organization whose members and associates engaged in acts of violence, including murder,

attempted murder, aggravated battery, aggravated assault and narcotics distribution, and which operated in the Northwest Indiana area, the Northern District of Indiana, Hammond Division, and elsewhere: **JUAN BRISENO a/k/a "Tito," GALO BENJAMIN FELICIANO, GUILLERMO BRISENO a/k/a "Memo," JUSTIN WEAVER a/k/a "White Boy," MICHAEL ANTHONY CASTILLO, DAVID ALMARAZ a/k/a "Penguino," JOSEPH RENE TORRES, JASON MEDINA a/k/a "Burns," EDWARD RAYE SERNA a/k/a "Sern," ROBERT LOCKHART a/k/a "Jackson," ARMANDO JOSE VELASQUEZ a/k/a "Money" and ANTHONY BALDAZO a/k/a "Tall Folks."**

### General Background and Structure of the Enterprise

2. The IMPERIAL GANGSTERS are a nationally known criminal street organization whose members engage in drug trafficking and acts of violence. The 149th Street "No Love Side" IMPERIAL GANGSTERS are a local "set" or affiliate of the IMPERIAL GANGSTERS, with local control and operation within East Chicago, Indiana. The other IMPERIAL GANGSTER set operating in Northwest Indiana is the 139th Street, or "Harbor" or "Trey-Nine" set.

3. The 149th Street IMPERIAL GANGSTERS operate primarily on the South Side of East Chicago. The 149th Street IMPERIAL GANGSTERS are involved in murder, attempted murder, and drug trafficking. The 139th Street IMPERIAL GANGSTERS operate primarily in the Harbor Section of East Chicago. They are also involved in murder, attempted murder, and drug trafficking.

4. Members of the IMPERIAL GANGSTERS greeted each other, and showed their membership in the gang using a set of hand-signs. In addition, IMPERIAL GANGSTERS often

2

greeted one another, demonstrated their allegiance to the gang, or simply announced their arrival or presence in a particular area by exclaiming "Amor." The IMPERIAL GANGSTERS employed a robust symbology as well, often using depictions of the cartoon character The Pink Panther to demonstrate their affiliation. Members often had tattoos incorporating one or more of the aforementioned phrases or symbols, The Pink Panther being the most prominent. The colors associated with the IMPERIAL GANGSTERS are pink and black, and members of the IMPERIAL GANGSTERS often demonstrated their affiliation with the IMPERIAL GANGSTERS by wearing clothing containing these two colors, or incorporating some of the gang's other symbols or phrases.

5. The IMPERIAL GANGSTERS are affiliated with the "Folk Nation" of gangs. Rival street gangs of the IMPERIAL GANGSTERS have included the Spanish Gangster Disciples, The Two Six Nation, The Latin Kings, and the Black P-Stones.

6. The IMPERIAL GANGSTERS have a leadership structure, but do not always utilize official titles or ranks. They at all times have an individual who serves as the leader and makes decisions regarding gang business. The IMPERIAL GANGSTERS have one or two individuals who control and train the "shorties" or prospective members. They have an individual who serves as a treasurer, who collects gang dues. They also have an individual who serves as the enforcer, who applies discipline for violations of the gang rules by meting out punishment.

**The Racketeering Enterprise**

7. The IMPERIAL GANGSTERS, including its leadership, membership, prospects ("shorties") and associates, constitutes an enterprise as defined in 18 U.S.C. § 1961(4), that is, a

3

group of individuals associated in fact. The enterprise constituted an ongoing organization whose members functioned as a continuing unit for a common purpose of achieving the objectives of the enterprise. This enterprise was engaged in, and its activities affected, interstate and foreign commerce.

## Purposes of the Enterprise

8. The purposes of the enterprise included, but were not limited to, the following:

a. Enriching the leaders, members, and associates of the enterprise through, among other things, the illegal trafficking of controlled substances.

b. Preserving and protecting the power, territory, operations, and proceeds of the enterprise through the use of threats, intimidation, violence and destruction including, but not limited to, acts of murder, attempted murder, assault with a dangerous weapon and other acts of violence.

c. Promoting and enhancing the enterprise and its members' and associates' activities.

d. Keeping victims in fear of the enterprise and in fear of its leaders, members, and associates through threats of violence and violence. The leaders, members, and associates of the enterprise undertook all steps necessary to prevent the detection of their criminal activities, and sought to prevent and resolve the imposition of any criminal liabilities upon their leaders, members, and associates, by the use of murder, violence, and intimidation directed against witnesses, victims, and others. As part of this practice, the enterprise enforced what it referred to as a "SOS" or shoot on sight order, or also known as "KOS" or, kill on sight, against IMPERIAL GANGSTERS members who were suspected of having cooperated with law enforcement.

4

e. Providing support to gang members who were charged with, or incarcerated for, gang-related activities.

## The Racketeering Conspiracy

9. Beginning on a date unknown to the Grand Jury, but at least as of in or about March, 2004, and continuing through on or about the date of this Second Superseding Indictment, in the Northern District of Indiana and elsewhere, the defendants,

<div align="center">

**JUAN BRISENO a/k/a "Tito,"**
**GALO BENJAMIN FELICIANO,**
**GUILLERMO BRISENO a/k/a "Memo,"**
**JUSTIN WEAVER a/k/a "White Boy,"**
**MICHAEL ANTHONY CASTILLO,**
**DAVID ALMARAZ a/k/a "Penguino,"**
**JOSEPH RENE TORRES,**
**JASON MEDINA a/k/a "Burns,"**
**EDWARD RAYE SERNA a/k/a "Sern,"**
**ROBERT LOCKHART a/k/a "Jackson"**
**ARMANDO JOSE VELASQUEZ a/k/a "Money," and**
**ANTHONY BALDAZO a/k/a "Tall Folks,"**

</div>

each being a person employed by and associated with the IMPERIAL GANGSTERS, an enterprise engaged in, and the activities of which affected, interstate and foreign commerce, together with ALEJANDRO BALBOA LARA a/k/a "Jackie Chan," KELVIN JEFFERSON BELTRAN a/k/a "Risky," and others known and unknown to the Grand Jury, did knowingly and intentionally conspire to conduct and participate, directly and indirectly, in the conduct of the affairs of the enterprise through a pattern of racketeering activity, as defined in Sections 1961(a) and (5) of Title 18, United States Code, consisting of multiple acts involving murder in violation of Indiana Code 35-42-1-1, 35-41-2-4, 35-41-5-1, and multiple acts involving narcotics trafficking in violation of 21 United States Code Sections 841(a)(1)(distribution and possession

<div align="center">5</div>

with the intent to distribute a controlled substance) and Section 846 (conspiracy to distribute and possess with the intent to distribute a controlled substance). It was part of this conspiracy that each defendant agreed that a conspirator would commit at least two acts of racketeering in the conduct of the affairs of the enterprise.

### Manner and Means of the Conspiracy

10. Each member of the enterprise agreed to facilitate a scheme that included the operation and management of the enterprise by a conspirator. Members of the enterprise and their associates operated and conducted their affairs through a series of laws and policies, some of which were codified in a constitution and a series of laws.

11. The members of the enterprise and their associates attended regular meetings at which they discussed, planned, and otherwise engaged in criminal activity, including murder, attempted murder, narcotics distribution, and obstruction of justice.

12. Members of the enterprise and their associates initiated new members through the practice of causing them to endure physical assaults conducted by members of the enterprise at various gang-related gatherings.

13. To enforce discipline and the rules of the enterprise, members of the enterprise and their associates engaged in a system of "violations," in which members of the enterprise attempted to murder, conspired to murder, and physically beat and threatened those members of the enterprise who violated rules, questioned authority, or posed a threat to the leaders or purposes of the enterprise.

14. Members of the enterprise and their associates employed and used gang-related terminology, symbols, gestures, and color schemes.

6

Case 2:11-cr-00077-PPS-APR    Document 151    Filed 04/05/12    Page 7 of 52

15. To perpetuate the enterprise and maintain and extend their power, members of the enterprise and their associates committed illegal acts, including murder, attempted murder, aggravated battery, intimidation, and aggravated assault against individuals who posed a threat to the enterprise or jeopardized its operations, including rival gang members and witnesses to the illegal activities of the enterprise. Pursuant to gang policy, members of the enterprise and their associates were required to participate in such acts, received standing orders to shoot rival gang members, and were instructed to retaliate for gang-related attacks upon the members and associates of the enterprise.

16. Members of the enterprise and their associates were required to "post up" and patrol in their neighborhood. This entailed standing guard in their neighborhood and shooting at any rival gang member they saw, and also at any individual in their neighborhood who was selling drugs without their permission. A member or associate of the enterprise would be violated if they did not "post up" in the IMPERIAL GANGSTER neighborhood. On multiple occasions during the course of the conspiracy members of the 139th Street IMPERIAL GANGSTERS would assist the 149th Street IMPERIAL GANGSTERS in "posting up" and patrolling in the 149th Street neighborhood. Similarly, on multiple occasions during the course of the conspiracy members of the 149th Street IMPERIAL GANGSTERS would assist the 139th Street IMPERIAL GANGSTERS by "posting up" and patrolling in the Harbor section of East Chicago, Indiana.

17. Members of the enterprise and their associates managed the procurement, transfer, use, concealment, and disposal of firearms and dangerous weapons within the enterprise to protect gang-related territory, personnel, and operations, and to deter, eliminate, and retaliate against competitors and other rival criminal organizations and persons. On multiple occasions

7

during the course of the conspiracy this included trading firearms with Chicago-based IMPERIAL GANGSTERS, and selling guns to Chicago-based IMPERIAL GANGSTERS. On multiple occasions during the course of the conspiracy members of the 149th Street IMPERIAL GANGSTERS and members of the 139th Street IMPERIAL GANGSTERS would trade guns with each other. Often a gun would be traded with another faction after it had been used in a shooting.

18. Members of the enterprise and their associates earned money for their members and regularly financed their activities through funds obtained in the illegal trafficking of controlled substances, including the distribution and possession with intent to distribute marijuana, cocaine, cocaine base and ecstasy. On multiple occasions during the course of the conspiracy members of the 139th Street IMPERIAL GANGSTERS and members of the 149th Street IMPERIAL GANGSTERS would supply each other with narcotics.

19. Members of the enterprise and their associates operated and conducted their affairs, in part, through a financial system in which the leadership of the IMPERIAL GANGSTERS and others possessed, controlled, and otherwise maintained a monetary stash on behalf of the enterprise. As part of this practice, members of the enterprise and their associates paid requisite weekly or bi-weekly dues into the pot, which, in turn, the enterprise used to bail gang members out of jail, to help pay for the defense attorneys of gang members who had been charged with crimes, to send to commissary accounts of incarcerated gang members, and to purchase and sell firearms and controlled substances. At times, the members of the enterprise and their associates paid money into the pot by selling narcotics supplied by members of the gang.

20. Members of the enterprise and their associates hid, misrepresented, concealed and

8

caused to be misrepresented, concealed, and hidden, the objectives of acts done in furtherance of the conspiracy, and used coded language and other means to avoid detection and apprehension by law enforcement authorities.

21. Members of the enterprise recruited and used juveniles to commit acts for the benefit of the enterprise.

22. In order to join the IMPERIAL GANGSTERS prospective members or "shorties" are given the option of shooting someone at the direction of the leadership of the gang, or receiving a two minute "violation," which entails high-ranking members of the gang punching the prospective member seventy times in the chest. While a "shorty" is attempting to join the gang his conduct is observed by the members of the IMPERIAL GANGSTERS. While a "shorty" is attempting to join the gang, he is considered a part of the IMPERIAL GANGSTER family and entitled to the full protection of the enterprise. The "shorty" is also subject to the rules and orders of the enterprise.

## Overt Acts

23. In furtherance of the conspiracy and to achieve the objects thereof, the conspirators performed or caused to be performed the following overt acts, among others, in the Northern District of Indiana and elsewhere:

a. On March 5, 2004, **ARMANDO JOSE VELASQUEZ** possessed a stolen firearm and shot at who he believed to be members of the Latin Kings street gang.

b. On June 13, 2004, **ARMANDO JOSE VELASQUEZ** shot at who he believed to be rival gang members. One of these shots struck a bystander, Wayne McNair, killing him.

9

c. On June 24, 2004, **GUILLERMO BRISENO** possessed a firearm.

d. On March 11, 2005, **GUILLERMO BRISENO** possessed marijuana.

e. On April 1, 2005, **GUILLERMO BRISENO** possessed marijuana.

f. On April 9, 2005, **JASON MEDINA** possessed a firearm.

g. On July 27, 2005, **GUILLERMO BRISENO** possessed marijuana.

h. On May 6, 2006, **EDDIE SERNA** possessed marijuana.

i. On August 3, 2006, **JASON MEDINA** possessed a firearm.

j. On March 8, 2007, **GUILLERMO BRISENO** possessed a firearm.

k. On March 22, 2007, **GALO BENJAMIN FELICIANO** and **ANTHONY BALDAZO** murdered Juan Murillo Sr. and shot and injured Juan Murillo Jr. during the course of members of the IMPERIAL GANGSTERS attempting to steal a snowblower from a neighbor of Murillo Sr. and Jr.

l. On May 19, 2007, **GALO BENJAMIN FELICIANO** possessed a firearm.

m. On June 2, 2007, **JASON MEDINA** pointed a firearm at Victim 1, and threatened Victim 1's safety.

n. On June 7, 2007, **JASON MEDINA** pointed a firearm at Victim 1, and threatened Victim 1's safety.

o. On August 12, 2007, **JUSTIN WEAVER** possessed marijuana.

p. On August 26, 2007, **GALO BENJAMIN FELICIANO** possessed marijuana.

q. On August 31, 2007, **GALO BENJAMIN FELICIANO** possessed marijuana.

r. On September 26, 2007, **JUAN BRISENO** murdered Luis Ortiz a/k/a "Manolo," who he believed to be a member of the Latin Kings, while **DAVID ALMARAZ** served as the

10

getaway driver.

s. On September 29, 2007, **JUAN BRISENO** possessed a firearm.

t. On October 20, 2007, **JUAN BRISENO** possessed a firearm.

u. On October 22, 2007, **GALO BENJAMIN FELICIANO** fired a gun at an individual who he believed to be a member of the Ambrose street gang, while **DAVID ALMARAZ** served as the getaway driver.

v. On April 14, 2008, **JUAN BRISENO** possessed marijuana.

w. On May 16, 2008, **JUAN BRISENO** possessed a firearm and shot at unknown individuals.

x. On May 24, 2008, **GUILLERMO BRISENO** possessed a firearm and shot at three individuals.

y. On June 3, 2008, **JUAN BRISENO** murdered Michael Sessum, who he believed to be a member of the Latin Kings.

z. On June 3, 2008, **JUAN BRISENO** murdered Miguel Mejias a/k/a "King Nelly," who he believed to be a member of the Latin Kings.

aa. On August 26, 2008, **ROBERT LOCKHART, JUAN BRISENO** and another individual attempted to murder a person known to the Grand Jury, (hereinafter "Victim 2"), by shooting him with a firearm.

bb. On October 9, 2008, **JUAN BRISENO** murdered Harris Brown.

cc. On January 4, 2009, **GALO BENJAMIN FELICIANO** possessed a firearm.

dd. On April 1, 2009, **GALO BENJAMIN FELICIANO** possessed marijuana.

ee. On April 24, 2009, **JUAN BRISENO** possessed marijuana.

11

ff. On July 13, 2009, **GALO BENJAMIN FELICIANO** possessed over 700 rounds of ammunition.

gg. On September 10, 2009, **GALO BENJAMIN FELICIANO** and another individual attempted to murder a person known to the Grand Jury, (hereinafter "Victim 3"), by shooting at him with a firearm.

hh. On September 23, 2009, **MICHAEL ANTHONY CASTILLO, JUSTIN WEAVER** and **ROBERT LOCKHART** shot Cornelius Jordan, Romelle Jackson and Thomas Delacruz.

ii. On October 3, 2009, **JUAN BRISENO** possessed marijuana, a firearm, ammunition and a bulletproof vest.

jj. On October 3, 2009, **MICHAEL ANTHONY CASTILLO** possessed marijuana, a scale, and gang paraphernalia.

kk. On October 3, 2009, **JUSTIN WEAVER** possessed marijuana.

ll. On February 7, 2010, **JUAN BRISENO, GALO BENJAMIN FELICIANO** and **ROBERT LOCKHART** murdered Miguel Colon, who they believed to be a member of the Two Six gang.

mm. On March 26, 2010, **GALO BENJAMIN FELICIANO** and **JOSEPH TORRES** murdered Jesus Alvarez, who they mistakenly believed to be a rival gang member.

nn. On April 6, 2010, **JOSEPH TORRES** shot Alejandro Sanchez.

oo. On April 28, 2010, **MICHAEL ANTHONY CASTILLO** murdered Peter Santos, who he believed to be a Spanish Gangster Disciple.

pp. On May 12, 2010, **GALO BENJAMIN FELICIANO** possessed marijuana.

12

217

qq. On May 21, 2010, **GALO BENJAMIN FELICIANO** possessed marijuana.

rr. On May 24, 2010, **MICHAEL ANTHONY CASTILLO** possessed marijuana.

ss. On June 16, 2010, **JUAN BRISENO** possessed a firearm.

tt. On June 19, 2010, **JUAN BRISENO** murdered Latroy Howard, who he believed to be associated with the Black P-Stones gang.

uu. On June 19, 2010, **GALO BENJAMIN FELICIANO** and KELVIN JEFFERSON BELTRAN went to the house of a witness to the Latroy Howard homicide and inquired of the witness what the witness had told the East Chicago Police.

vv. On July 1, 2010, **JUAN BRISENO** possessed marijuana.

ww. On March 14, 2011, **JUSTIN WEAVER** possessed marijuana.

xx. On September 21, 2010, **JUAN BRISENO**, who was incarcerated, wrote a letter to KELVIN JEFFERSON BELTRAN telling him that "these Mudafukkers (Federal law enforcement) aint playing they trying to catch anybody up on sum shit." He thanked KELVIN JEFFERSON BELTRAN for the money that KELVIN JEFFERSON BELTRAN and other IMPERIAL GANGSTERS had put on his jail commissary account. **BRISENO** told BELTRAN that he hoped that BELTRAN was keeping an eye on younger IMPERIAL GANGSTERS and taking care of them, just like **BRISENO** did for BELTRAN. **BRISENO** requested that BELTRAN provide him with some money to hire an attorney.

yy. On October 6, 2010, **JUAN BRISENO**, who was incarcerated, wrote a letter to KELVIN JEFFERSON BELTRAN instructing him on how to recruit new young members to the IMPERIAL GANGSTERS. **JUAN BRISENO** told KELVIN JEFFERSON BELTRAN that he doesn't want to see their gang fall to pieces. **BRISENO** also warned BELTRAN to be careful

13

around the 139th Street IMPERIAL GANGSTERS, because "I've been hearing they on sum bull shit."

zz. On February 1, 2011, **JUAN BRISENO**, who was incarcerated, wrote a letter to KELVIN JEFFERSON BELTRAN telling him not to worry that the cocaine out there is of poor quality, as hopefully **JUAN BRISENO** will meet a new source of supply for cocaine while incarcerated who can "plug" (supply) **BRISENO** when **BRISENO** is released from jail.

aaa. On May 26, 2011, **ARMANDO JOSE VELASQUEZ** possessed a digital scale and gang-related drawings.

bbb. On June 6, 2011, **JASON MEDINA** and **EDWARD RAYE SERNA** attempted to murder a person known to the Grand Jury, (hereinafter "Victim 4"), by shooting at him with a firearm.

ccc. On October 18, 2011, **JUAN BRISENO**, who was incarcerated, wrote a letter to KELVIN JEFFERSON BELTRAN telling him that **BRISENO** was upset that Angel "Beef" Santos was killed while **JUAN BRISENO** was incarcerated and **BRISENO** "couldn't do shit about it."

ddd. On October 26, 2011, **ARMANDO JOSE VELASQUEZ** conducted a hand to hand narcotics transaction.

eee. On November 7, 2011, **EDWARD RAYE SERNA** possessed marijuana, ammunition, and gang-related clothing.

fff. On November 7, 2011, **GUILLERMO BRISENO** possessed gang-related items.

ggg. On December 3, 2011, **ARMANDO JOSE VELASQUEZ** attempted to murder a person known to the Grand Jury, (hereinafter "Victim 5"), by shooting him multiple times with a

14

firearm.

## Notice of Enhanced Sentencing

24. On or about March 22, 2007, in the Northern District of Indiana, **GALO BENJAMIN FELICIANO** and **ANTHONY BALDAZO a/k/a "Tall Folks"** knowingly and intentionally killed Juan Murillo Sr., in violation of Indiana Penal Code Sections 35-42-1-1 and 35-41-2-4.

25. On or about June 3, 2008, in the Northern District of Indiana, **JUAN BRISENO, a/k/a "Tito,"** knowingly and intentionally killed Michael Sessum, in violation of Indiana Penal Code Sections 35-42-1-1 and 35-41-2-4.

26. On or about June 3, 2008, in the Northern District of Indiana, **JUAN BRISENO, a/k/a "Tito,"** knowingly and intentionally killed Miguel Mejias, in violation of Indiana Penal Code Sections 35-42-1-1 and 35-41-2-4.

27. On or about October 9, 2008, in the Northern District of Indiana, **JUAN BRISENO, a/k/a "Tito,"** knowingly and intentionally killed Harris Brown, in violation of Indiana Penal Code Sections 35-42-1-1 and 35-41-2-4.

28. On or about February 7, 2010, in the Northern District of Indiana, **JUAN BRISENO, a/k/a "Tito," GALO BENJAMIN FELICIANO** and **ROBERT LOCKHART a/k/a "Jackson"** knowingly and intentionally killed Miguel Colon, in violation of Indiana Penal Code Sections 35-42-1-1 and 35-41-2-4.

29. On or about March 26, 2010, in the Northern District of Indiana, **GALO BENJAMIN FELICIANO** and **JOSEPH RENE TORRES** knowingly and intentionally killed Jesus Alvarez, in violation of Indiana Penal Code Sections 35-42-1-1 and 35-41-2-4.

15

Case: 15-2347   Document: 35   Filed: 07/27/2016   Pages: 4186

30. On or about June 19, 2010, in the Northern District of Indiana, **JUAN BRISENO, a/k/a "Tito,"** knowingly and intentionally killed Latroy Howard, in violation of Indiana Penal Code Sections 35-42-1-1 and 35-41-2-4.

All in violation of Title 18, United States Code, Section 1962(d).

16

221

## COUNT 2

### (Murder in Aid of Racketeering Activity)

**THE GRAND JURY FURTHER CHARGES:**

1. At all times relevant to this indictment the IMPERIAL GANGSTERS, as more fully described in paragraphs 1 through 8 of Count 1 of this Second Superseding Indictment, which are re-alleged and incorporated by reference as though fully set forth herein, constituted an enterprise as defined in 18 U.S.C. § 1959(b)(2), namely IMPERIAL GANGSTERS, that is, a group of individuals associated in fact which is engaged in, and the activities of which affected, interstate and foreign commerce. The enterprise constituted an ongoing organization whose members functioned as a continuing unit for a common purpose of achieving the objectives of the enterprise.

2. At all times relevant to this Second Superseding Indictment, the above-described enterprise, through its members and associates, engaged in racketeering activity as defined in 18 U.S.C. §§ 1959(b)(1) and 1961(1), namely, narcotics trafficking in violation of 21 U.S.C. §§ 841 and 846, and acts involving murder in violation of Indiana Penal Code, Section 35-42-1-1, 35-41-2-4, and 35-41-5-1.

3. On or about March 22, 2007, in the Northern District of Indiana,

<div align="center">

**GALO BENJAMIN FELICIANO**
and
**ANTHONY BALDAZO a/k/a "Tall Folks,"**

</div>

defendants herein, for the purpose of maintaining and increasing position in the IMPERIAL GANGSTERS, an enterprise engaged in racketeering activity, murdered Juan Murillo Sr., in

<div align="center">17</div>

violation of Indiana Penal Code, Sections 35-42-1-1 and 35-41-2-4.

All in violation of Title 18, United States Code, Section 1959(a)(1), and Title 18, United States Code, Section 2.

18

## COUNT 3

### (Murder Resulting From the Use and Carrying of Firearm During and in Relation to a Crime of Violence)

**THE GRAND JURY FURTHER CHARGES:**

1. Paragraphs 1 through 8 of Count One of this Second Superseding Indictment, which are re-alleged and incorporated by reference as though set forth fully herein.

2. On or about March 22, 2007, in the Northern District of Indiana,

## GALO BENJAMIN FELICIANO
### and
## ANTHONY BALDAZO a/k/a "Tall Folks,"

defendants herein, did knowingly carry, use, and discharge a firearm during and in relation to a crime of violence, that is, to murder in aid of racketeering activity, as set forth in Count 2 of this Second Superseding Indictment, which is incorporated here, did cause the death of a person through the use of a firearm, which killing is a murder defined in 18 U.S.C. § 1111, in that the defendant, with malice aforethought, unlawfully killed a human being, that is Juan Murillo Sr., willfully, deliberately, and maliciously.

All in violation of Title 18, United States Code, Sections 924(c) and 924(j), and Title 18, United States Code, Section 2.

19

Case 2:11-cr-00077-PPS-APR   Document 151   Filed 04/09/12   Page 20 of 52

## COUNT 4

### (Murder in Aid of Racketeering Activity)

**THE GRAND JURY FURTHER CHARGES:**

1. Paragraphs 1 through 2 of Count Two of this Second Superseding Indictment are re-alleged and incorporated by reference as though set forth fully herein.

2. On or about June 3, 2008, in the Northern District of Indiana,

### JUAN BRISENO a/k/a "Tito,"

defendant herein, for the purpose of maintaining and increasing position in the IMPERIAL GANGSTERS, an enterprise engaged in racketeering activity, murdered Michael Sessum, in violation of Indiana Penal Code, Sections 35-42-1-1 and 35-41-2-4.

All in violation of Title 18, United States Code, Section 1959(a)(1), and Title 18, United States Code, Section 2.

20

## COUNT 5

### (Murder Resulting From the Use and Carrying of Firearm During and in Relation to a Crime of Violence)

**THE GRAND JURY FURTHER CHARGES:**

1. Paragraphs 1 through 8 of Count One of this Second Superseding Indictment, which are re-alleged and incorporated by reference as though set forth fully herein.

2. On or about June 3, 2008, in the Northern District of Indiana,

### JUAN BRISENO a/k/a "Tito,"

defendant herein, did knowingly carry, use, and discharge a firearm during and in relation to a crime of violence, that is, to murder in aid of racketeering activity, as set forth in Count 4 of this Second Superseding Indictment, which is incorporated here, did cause the death of a person through the use of a firearm, which killing is a murder defined in 18 U.S.C. § 1111, in that the defendant, with malice aforethought, unlawfully killed a human being, that is Michael Sessum, willfully, deliberately, and maliciously.

All in violation of Title 18, United States Code, Section 924(c) and 924(j), and Title 18, United States Code, Section 2.

21

## COUNT 6

### (Murder in Aid of Racketeering Activity)

**THE GRAND JURY FURTHER CHARGES:**

1. Paragraphs 1 through 2 of Count Two of this Second Superseding Indictment are re-alleged and incorporated by reference as though set forth fully herein.

2. On or about June 3, 2008, in the Northern District of Indiana,

**JUAN BRISENO a/k/a "Tito,"**

defendant herein, for the purpose of maintaining and increasing position in the IMPERIAL GANGSTERS, an enterprise engaged in racketeering activity, murdered Miguel Mejias a/k/a "King Nelly," in violation of Indiana Penal Code, Sections 35-42-1-1 and 35-41-2-4.

All in violation of Title 18, United States Code, Section 1959(a)(1), and Title 18, United States Code, Section 2.

## COUNT 7

### (Murder Resulting From the Use and Carrying of Firearm During and in Relation to a Crime of Violence)

**THE GRAND JURY FURTHER CHARGES:**

1. Paragraphs 1 through 8 of Count One of this Second Superseding Indictment, which are re-alleged and incorporated by reference as though set forth fully herein.

2. On or about June 3, 2008, in the Northern District of Indiana,

**JUAN BRISENO a/k/a "Tito,"**

defendant herein, did knowingly carry, use, and discharge a firearm during and in relation to a crime of violence, that is, to murder in aid of racketeering activity, as set forth in Count 6 of this Second Superseding Indictment, which is incorporated here, did cause the death of a person through the use of a firearm, which killing is a murder defined in 18 U.S.C. § 1111, in that the defendant, with malice aforethought, unlawfully killed a human being, that is Miguel Mejias a/k/a "King Nelly," willfully, deliberately, and maliciously.

All in violation of Title 18, United States Code, Section 924(c) and 924(j), and Title 18, United States Code, Section 2.

## COUNT 8

### (Murder in Aid of Racketeering Activity)

**THE GRAND JURY FURTHER CHARGES:**

1. Paragraphs 1 through 2 of Count Two of this Second Superseding Indictment are re-alleged and incorporated by reference as though set forth fully herein.

2. On or about October 9, 2008, in the Northern District of Indiana,

### JUAN BRISENO a/k/a "Tito,"

defendant herein, for the purpose of maintaining and increasing position in the IMPERIAL GANGSTERS, an enterprise engaged in racketeering activity, murdered Harris Brown in violation of Indiana Penal Code, Sections 35-42-1-1 and 35-41-2-4.

All in violation of Title 18, United States Code, Section 1959(a)(1), and Title 18, United States Code, Section 2.

## COUNT 9

### (Murder Resulting From the Use and Carrying of Firearm During and in Relation to a Crime of Violence)

**THE GRAND JURY FURTHER CHARGES:**

1. Paragraphs 1 through 8 of Count One of this Second Superseding Indictment, which are re-alleged and incorporated by reference as though set forth fully herein.

2. On or about October 9, 2008, in the Northern District of Indiana,

### JUAN BRISENO a/k/a "Tito,"

defendant herein, did knowingly carry, use, and discharge a firearm during and in relation to a crime of violence, that is, to murder in aid of racketeering activity, as set forth in Count 8 of this Second Superseding Indictment, which is incorporated here, did cause the death of a person through the use of a firearm, which killing is a murder defined in 18 U.S.C. § 1111, in that the defendant, with malice aforethought, unlawfully killed a human being, that is Harris Brown, willfully, deliberately, and maliciously.

All in violation of Title 18, United States Code, Section 924(c) and 924(j), and Title 18, United States Code, Section 2.

230

231

## COUNT 10

### (Murder in Aid of Racketeering Activity)

**THE GRAND JURY FURTHER CHARGES:**

1. Paragraphs 1 through 2 of Count Two of this Second Superseding Indictment are re-alleged and incorporated by reference as though set forth fully herein.

2. On or about February 7, 2010, in the Northern District of Indiana,

**JUAN BRISENO a/k/a "Tito,"**
**and**
**GALO BENJAMIN FELICIANO**

defendants herein, and others known and unknown to the grand jury, for the purpose of maintaining and increasing position in the IMPERIAL GANGSTERS, an enterprise engaged in racketeering activity, murdered Miguel Colon a/k/a "Migs" in violation of Indiana Penal Code, Section 35-42-1-1 and 35-41-2-4.

All in violation of Title 18, United States Code, Section 1959(a)(1), and Title 18, United States Codes, Section 2.

26

231

## COUNT 11

## (Murder Resulting From the Use and Carrying of Firearm During and in Relation to a Crime of Violence)

**THE GRAND JURY FURTHER CHARGES:**

1. Paragraphs 1 through 8 of Count One of this Second Superseding Indictment, which are re-alleged and incorporated by reference as though set forth fully herein.

2. On or about February 7, 2010, in the Northern District of Indiana,

**JUAN BRISENO a/k/a "Tito,"**
**and**
**GALO BENJAMIN FELICIANO**

defendants herein, and others known and unknown to the grand jury, did knowingly carry, use, and discharge firearms during and in relation to a crime of violence, that is, to murder in aid of racketeering activity, as set forth in Count 10 of this Second Superseding Indictment, which is incorporated here, did cause the death of a person through the use of a firearm, which killing is a murder defined in 18 U.S.C. § 1111, in that the defendants, with malice aforethought, unlawfully killed a human being, that is Miguel Colon a/k/a "Migs," willfully, deliberately, and maliciously.

All in violation of Title 18, United States Code, Section 924(c) and 924(j), and Title 18, United States Code, Section 2.

27

## COUNT 12

### (Accessory After the Fact)

**THE GRAND JURY FURTHER CHARGES:**

1. On or about February 7, 2010 to on or about February 8, 2010, in the Northern District of Indiana and elsewhere,

**ALEJANDRO BRISENO,**

defendant herein, knowing that an offense against the United States has been committed, to wit, murder in aid of racketeering and murder resulting from the use and carrying of a firearm during and in relation to a crime of violence, as set forth in Counts 10 and 11 of this Second Superseding Indictment, did receive, relieve, comfort, and assist the offenders, JUAN BRISENO a/k/a "Tito," GALO BENJAMIN FELICIANO and others known and unknown to the grand jury, in order to hinder and prevent the offenders' apprehension, trial, and punishment.

All in violation of Title 18, United States Code, Section 3.

28

233

234

## COUNT 13

### (Murder in Aid of Racketeering Activity)

**THE GRAND JURY FURTHER CHARGES:**

1. Paragraphs 1 through 2 of Count Two of this Second Superseding Indictment are re-alleged and incorporated by reference as though set forth fully herein.

2. On or about March 26, 2010, in the Northern District of Indiana,

**GALO BENJAMIN FELICIANO
and
JOSEPH RENE TORRES,**

defendants herein, for the purpose of maintaining and increasing position in the IMPERIAL GANGSTERS, an enterprise engaged in racketeering activity, murdered Jesus Alvarez in violation of Indiana Penal Code, Section 35-42-1-1 and 35-41-2-4.

All in violation of Title 18, United States Code, Section 1959(a)(1), and Title 18, United States Code, Section 2.

234

## COUNT 14

### (Murder Resulting From the Use and Carrying of Firearm During and in Relation to a Crime of Violence)

**THE GRAND JURY FURTHER CHARGES:**

1. Paragraphs 1 through 8 of Count One of this Second Superseding Indictment, which are re-alleged and incorporated by reference as though set forth fully herein.

2. On or about March 26, 2010, in the Northern District of Indiana,

**GALO BENJAMIN FELICIANO**
**and**
**JOSEPH RENE TORRES,**

defendants herein, did knowingly carry, use, and discharge firearms during and in relation to a crime of violence, that is, to murder in aid of racketeering activity, as set forth in Count 13 of this Second Superseding Indictment, which is incorporated here, did cause the death of a person through the use of a firearm, which killing is a murder defined in 18 U.S.C. § 1111, in that the defendants, with malice aforethought, unlawfully killed a human being, that is Jesus Alvarez, willfully, deliberately, and maliciously.

All in violation of Title 18, United States Code, Section 924(c) and 924(j), and Title 18, United States Code, Section 2.

30

## COUNT 15

### (Murder in Aid of Racketeering Activity)

**THE GRAND JURY FURTHER CHARGES:**

1. Paragraphs 1 through 2 of Count Two of this Second Superseding Indictment are re-alleged and incorporated by reference as though set forth fully herein.

2. On or about June 19, 2010, in the Northern District of Indiana,

**JUAN BRISENO a/k/a "Tito,"**

defendant herein, for the purpose of maintaining and increasing position in the IMPERIAL GANGSTERS, an enterprise engaged in racketeering activity, murdered Latroy Howard in violation of Indiana Penal Code, Section 35-42-1-1 and 35-41-2-4.

All in violation of Title 18, United States Code, Section 1959(a)(1), and Title 18, United States Code, Section 2.

236

## COUNT 16

### (Murder Resulting From the Use and Carrying of Firearm During and in Relation to a Crime of Violence)

**THE GRAND JURY FURTHER CHARGES:**

1. Paragraphs 1 through 8 of Count One of this Second Superseding Indictment, which are re-alleged and incorporated by reference as though set forth fully herein.

2. On or about June 19, 2010, in the Northern District of Indiana,

**JUAN BRISENO a/k/a "Tito,"**

defendant herein, did knowingly carry, use, and discharge firearms during and in relation to a crime of violence, that is, to murder in aid of racketeering activity, as set forth in Count 15 of this Second Superseding Indictment, which is incorporated here, did cause the death of a person through the use of a firearm, which killing is a murder defined in 18 U.S.C. § 1111, in that the defendant, with malice aforethought, unlawfully killed a human being, that is Latroy Howard, willfully, deliberately, and maliciously.

All in violation of Title 18, United States Code, Section 924(c) and 924(j), and Title 18, United States Code, Section 2.

32

## COUNT 17

### (Attempted Murder in Aid of Racketeering Activity)

**THE GRAND JURY FURTHER CHARGES:**

1. Paragraphs 1 through 2 of Count Two of this Second Superseding Indictment are re-alleged and incorporated by reference as though set forth fully herein.

2. On or about March 22, 2007, in the Northern District of Indiana,

**GALO BENJAMIN FELICIANO
and
ANTHONY BALDAZO a/k/a "Tall Folks,"**

defendants herein, for the purpose of maintaining and increasing position in the IMPERIAL

GANGSTERS, an enterprise engaged in racketeering activity, attempted to murder Juan Murillo,

Jr., a person known to the Grand Jury, in violation of Indiana Penal Code, Sections 35-42-1-1,

35-41-2-4 and 35-41-5-1.

All in violation of Title 18, United States Code, Section 1959(a)(5), and Title 18, United

States Code, Section 2.

33

238

## COUNT 18

### (Attempted Murder in Aid of Racketeering Activity)

**THE GRAND JURY FURTHER CHARGES:**

1. Paragraphs 1 through 2 of Count Two of this Second Superseding Indictment are re-alleged and incorporated by reference as though set forth fully herein.

2. On or about August 26, 2008, in the Northern District of Indiana,

**JUAN BRISENO a/k/a "Tito,"**

defendant herein, for the purpose of maintaining and increasing position in the IMPERIAL GANGSTERS, an enterprise engaged in racketeering activity, attempted to murder Victim 2, a person known to the Grand Jury, in violation of Indiana Penal Code, Sections 35-42-1-1, 35-41-2-4 and 35-41-5-1.

All in violation of Title 18, United States Code, Section 1959(a)(5), and Title 18, United States Code, Section 2.

239

240

## COUNT 19

### (Use of a Firearm During and in Relation to a Federal Crime of Violence)

**THE GRAND JURY FURTHER CHARGES:**

1. Paragraphs 1 through 8 of Count One of this Second Superseding Indictment, which are re-alleged and incorporated by reference as though set forth fully herein.

2. On or about August 26, 2008, in the Northern District of Indiana,

**JUAN BRISENO a/k/a "Tito,"**

defendant herein, did knowingly and intentionally use a firearm during and in relation to a crime of violence, for which he may be prosecuted in a court of the United States, to wit: attempted murder in aid of racketeering activity as described in Count 18 of this Second Superseding Indictment.

All in violation of Title 18, United States Code, Section 924(c), and Title 18, United States Code, Section 2.

240

Case: 15-2347   Document: 35   Filed: 07/27/2016   Pages: 4186

## COUNT 20

### (Attempted Murder in Aid of Racketeering Activity)

**THE GRAND JURY FURTHER CHARGES:**

1. Paragraphs 1 through 2 of Count Two of this Second Superseding Indictment are re-alleged and incorporated by reference as though set forth fully herein.

2. On or about September 10, 2009, in the Northern District of Indiana,

## GALO BENJAMIN FELICIANO,

defendant herein, for the purpose of maintaining and increasing position in the IMPERIAL GANGSTERS, an enterprise engaged in racketeering activity, attempted to murder Victim 3, a person known to the Grand Jury, in violation of Indiana Penal Code, Sections 35-42-1-1, 35-41-2-4 and 35-41-5-1.

All in violation of Title 18, United States Code, Section 1959(a)(5), and Title 18, United States Code, Section 2.

36

## COUNT 21

### (Use of a Firearm During and in Relation to a Federal Crime of Violence)

**THE GRAND JURY FURTHER CHARGES:**

1. Paragraphs 1 through 8 of Count One of this Second Superseding Indictment, which are re-alleged and incorporated by reference as though set forth fully herein.

2. On or about September 10, 2009, in the Northern District of Indiana,

### GALO BENJAMIN FELICIANO,

defendant herein, did knowingly and intentionally use a firearm during and in relation to a crime of violence, for which he may be prosecuted in a court of the United States, to wit: attempted murder in aid of racketeering activity as described in Count 20 of this Second Superseding Indictment.

All in violation of Title 18, United States Code, Section 924(c), and Title 18, United States Code, Section 2.

37

242

243

## COUNT 22

### (Attempted Murder in Aid of Racketeering Activity)

**THE GRAND JURY FURTHER CHARGES:**

1. Paragraphs 1 through 2 of Count Two of this Second Superseding Indictment are re-alleged and incorporated by reference as though set forth fully herein.

2. On or about June 6, 2011, in the Northern District of Indiana,

**JASON MEDINA a/k/a "Burns"**
**and**
**EDWARD RAYE SERNA a/k/a "Sern,"**

defendants herein, for the purpose of maintaining and increasing position in the IMPERIAL GANGSTERS, an enterprise engaged in racketeering activity, attempted to murder Victim 4, a person known to the Grand Jury, in violation of Indiana Penal Code, Sections 35-42-1-1, 35-41-2-4 and 35-41-5-1.

All in violation of Title 18, United States Code, Section 1959(a)(5) and Title 18, United States Code, Section 2.

243

244

## COUNT 23

### (Use of a Firearm During and in Relation to a Federal Crime of Violence)

**THE GRAND JURY FURTHER CHARGES:**

1. Paragraphs 1 through 8 of Count One of this Second Superseding Indictment, which are re-alleged and incorporated by reference as though set forth fully herein.

2. On or about June 6, 2011, in the Northern District of Indiana,

**JASON MEDINA a/k/a "Burns"**
**and**
**EDWARD RAYE SERNA a/k/a "Sern,"**

defendants herein, did knowingly and intentionally use a firearm during and in relation to a crime of violence, for which they may be prosecuted in a court of the United States, to wit: attempted murder in aid of racketeering activity as described in Count 22 of the Second Superseding Indictment.

All in violation of Title 18, United States Code, Section 924(c), and Title 18, United States Code, Section 2.

39

244

## COUNT 24

### (Attempted Murder in Aid of Racketeering Activity)

**THE GRAND JURY FURTHER CHARGES:**

1. Paragraphs 1 through 2 of Count Two of this Second Superseding Indictment are re-alleged and incorporated by reference as though set forth fully herein.

2. On or about December 3, 2011, in the Northern District of Indiana,

### ARMANDO JOSE VELASQUEZ,

defendant herein, for the purpose of maintaining and increasing position in the IMPERIAL GANGSTERS, an enterprise engaged in racketeering activity, attempted to murder Victim 5, a person known to the Grand Jury, in violation of Indiana Penal Code, Sections 35-42-1-1, 35-41-2-4 and 35-41-5-1.

All in violation of Title 18, United States Code, Section 1959(a)(5) and Title 18, United States Code, Section 2.

245

246

## COUNT 25

### (Use of a Firearm During and in Relation to a Federal Crime of Violence)

**THE GRAND JURY FURTHER CHARGES:**

1. Paragraphs 1 through 8 of Count One of this Second Superseding Indictment, which are re-alleged and incorporated by reference as though set forth fully herein.

2. On or about December 3, 2011, in the Northern District of Indiana,

**ARMANDO JOSE VELASQUEZ,**

defendant herein, did knowingly and intentionally use a firearm during and in relation to a crime of violence, for which he may be prosecuted in a court of the United States, to wit: attempted murder in aid of racketeering activity as described in Count 24 of the Second Superseding Indictment.

All in violation of Title 18, United States Code, Section 924(c), and Title 18, United States Code, Section 2.

41

## COUNT 26

### (Conspiracy to Possess with Intent to Distribute and Distribute Marijuana)

**THE GRAND JURY FURTHER CHARGES:**

From at least March, 2004, the exact date being unknown to the Grand Jury, and continuing into at least the date of this Second Superseding Indictment, both dates being approximate and inclusive, in the Northern District of Indiana and elsewhere,

> **JUAN BRISENO a/k/a "Tito,"**
> **GALO BENJAMIN FELICIANO,**
> **GUILLERMO BRISENO a/k/a "Memo,"**
> **JUSTIN WEAVER a/k/a "White Boy,"**
> **MICHAEL ANTHONY CASTILLO,**
> **DAVID ALMARAZ a/k/a "Penguino,"**
> **JOSEPH RENE TORRES,**
> **JASON MEDINA a/k/a "Burns,"**
> **EDWARD RAYE SERNA a/k/a "Sern,"**
> **ROBERT LOCKHART a/k/a "Jackson"**
> **ARMANDO JOSE VELASQUEZ a/k/a "Money," and**
> **ANTHONY BALDAZO a/k/a "Tall Folks,"**

defendants herein, did knowingly and intentionally combine, conspire, confederate and agree one with another together with ALEJANDRO BALBOA LARA a/k/a "Jackie Chan," KELVIN JEFFERSON BELTRAN a/k/a "Risky," and others known and unknown to the Grand Jury, to commit the following offense against the United States: to knowingly and intentionally possess with intent to distribute and distribute one hundred (100) kilograms or more of a mixture and substance containing a detectable amount of marijuana, a schedule I controlled substance;

All in violation of Title 21, United States Code, Section 846.

42

## NOTICE OF SPECIAL FINDINGS
### (18 U.S.C. §§ 3591 and 3592)

1. The Grand Jury incorporates by reference and realleges the allegations contained in Counts 2 and 3 of this Second Superseding Indictment and makes the following special findings as to Counts 2 and 3, the defendants:

### GALO BENJAMIN FELICIANO
### and
### ANTHONY BALDAZO a/k/a "Tall Folks,"

a. were 18 years of age or older at the time of the offenses. [Title 18, United States Code, Section 3591(a)].

b. intentionally killed the victim, Juan Murillo, Sr. [Title 18, United States Code, Section 3591(a)(2)(A)].

c. intentionally inflicted serious bodily injury that resulted in the death of the victim, Juan Murillo, Sr. [Title 18, United States Code, Section 3591(a)(2)(B)].

d. intentionally participated in an act, contemplating that the life of a person would be taken and intending that lethal force would be used in connection with a person, other than one of the participants in the offense, and the victim, Juan Murillo, Sr., died as a direct result of the acts. [Title 18, United States Code, Section 3591(a)(2)(C)].

e. intentionally and specifically engaged in an act of violence, knowing that the act created a grave risk of death to a person, other than one of the participants in the offense, such that participation in the act constituted a reckless disregard for human life and the victim, Juan Murillo, Sr., died as a direct result of the act. [Title 18, United States Code, Section 3591(a)(2)(D)].

43

f. knowingly created a grave risk of death to one or more persons in the commission of the offense, in addition to Juan Murillo, Sr.. [Title 18, United States Code, Section 3592(c)(5)]; and

g. intentionally killed or attempted to kill more than one person in a single criminal episode. [Title 18, United States Code, Section 3592(c)(16)].

2. The Grand Jury incorporates by reference and realleges the allegations contained in Counts 4 and 5 of this Second Superseding Indictment and makes the following special findings as to Counts 4 and 5, the defendant:

### JUAN BRISENO a/k/a "Tito,"

a. was 18 years of age or older at the time of the offenses. [Title 18, United States Code, Section 3591(a)].

b. intentionally killed the victim, Luis Ortiz a/k/a "Manolo." [Title 18, United States Code, Section 3591(a)(2)(A)].

c. intentionally inflicted serious bodily injury that resulted in the death of the victim, Luis Ortiz a/k/a "Manolo." [Title 18, United States Code, Section 3591(a)(2)(B)].

d. intentionally participated in an act, contemplating that the life of a person would be taken and intending that lethal force would be used in connection with a person, other than one of the participants in the offense, and the victim, Luis Ortiz a/k/a "Manolo," died as a direct result of the acts. [Title 18, United States Code, Section 3591(a)(2)(C)].

e. intentionally and specifically engaged in an act of violence, knowing that the act created a grave risk of death to a person, other than one of the participants in the offense,

44

249

such that participation in the act constituted a reckless disregard for human life and the victim, Luis Ortiz a/k/a "Manolo," died as a direct result of the act. [Title 18, United States Code, Section 3591(a)(2)(D)]; and

f. committed the offense after substantial planning and premeditation to cause the death of Luis Ortiz a/k/a "Manolo." [Title 18, United States Code, Section 3592(c)(9)].

3. The Grand Jury incorporates by reference and realleges the allegations contained in Counts 6 and 7 of this Second Superseding Indictment and makes the following special findings as to Counts 6 and 7, the defendant:

**JUAN BRISENO a/k/a "Tito,"**

a. was 18 years of age or older at the time of the offenses. [Title 18, United States Code, Section 3591(a)].

b. intentionally killed the victim, Michael Sessum. [Title 18, United States Code, Section 3591(a)(2)(A)].

c. intentionally inflicted serious bodily injury that resulted in the death of the victim, Michael Sessum. [Title 18, United States Code, Section 3591(a)(2)(B)].

d. intentionally participated in an act, contemplating that the life of a person would be taken and intending that lethal force would be used in connection with a person, other than one of the participants in the offense, and the victim, Michael Sessum, died as a direct result of the acts. [Title 18, United States Code, Section 3591(a)(2)(C)].

e. intentionally and specifically engaged in an act of violence, knowing that the act created a grave risk of death to a person, other than one of the participants in the offense,

45

such that participation in the act constituted a reckless disregard for human life and the victim, Michael Sessum, died as a direct result of the act. [Title 18, United States Code, Section 3591(a)(2)(D)].

f. knowingly created a grave risk of death to one or more persons in the commission of the offense, in addition to Michael Sessum. [Title 18, United States Code, Section 3592(c)(5)].

g. intentionally killed or attempted to kill more than one person in a single criminal episode. [Title 18, United States Code, Section 3592(c)(16)]; and

h. committed the offense after substantial planning and premeditation to cause the death of Michael Sessum. [Title 18, United States Code, Section 3592(c)(9)].

4. The Grand Jury incorporates by reference and realleges the allegations contained in Counts 8 and 9 of this Second Superseding Indictment and makes the following special findings as to Counts 8 and 9, the defendant:

**JUAN BRISENO a/k/a "Tito,"**

a. was 18 years of age or older at the time of the offenses. [Title 18, United States Code, Section 3591(a)].

b. intentionally killed the victim, Miguel Mejias. [Title 18, United States Code, Section 3591(a)(2)(A)].

c. intentionally inflicted serious bodily injury that resulted in the death of the victim, Miguel Mejias. [Title 18, United States Code, Section 3591(a)(2)(B)].

d. intentionally participated in an act, contemplating that the life of a person would be

46

taken and intending that lethal force would be used in connection with a person, other than one of the participants in the offense, and the victim, Miguel Mejias, died as a direct result of the acts. [Title 18, United States Code, Section 3591(a)(2)(C)].

e. intentionally and specifically engaged in an act of violence, knowing that the act created a grave risk of death to a person, other than one of the participants in the offense, such that participation in the act constituted a reckless disregard for human life and the victim, Miguel Mejias, died as a direct result of the act. [Title 18, United States Code, Section 3591(a)(2)(D)].

f. knowingly created a grave risk of death to one or more persons in the commission of the offense, in addition to Miguel Mejias. [Title 18, United States Code, Section 3592(c)(5)].

g. intentionally killed or attempted to kill more than one person in a single criminal episode. [Title 18, United States Code, Section 3592(c)(16)]; and

h. committed the offense after substantial planning and premeditation to cause the death of Miguel Mejias. [Title 18, United States Code, Section 3592(c)(9)].

5. The Grand Jury incorporates by reference and realleges the allegations contained in Counts 10 and 11 of this Second Superseding Indictment and makes the following special findings as to Counts 10 and 11, the defendant:

**JUAN BRISENO a/k/a "Tito,"**

a. was 18 years of age or older at the time of the offenses. [Title 18, United States Code, Section 3591(a)].

47

b. intentionally killed the victim, Harris Brown. [Title 18, United States Code, Section 3591(a)(2)(A)].

c. intentionally inflicted serious bodily injury that resulted in the death of the victim, Harris Brown. [Title 18, United States Code, Section 3591(a)(2)(B)].

d. intentionally participated in an act, contemplating that the life of a person would be taken and intending that lethal force would be used in connection with a person, other than one of the participants in the offense, and the victim, Harris Brown, died as a direct result of the acts. [Title 18, United States Code, Section 3591(a)(2)(C)].

e. intentionally and specifically engaged in an act of violence, knowing that the act created a grave risk of death to a person, other than one of the participants in the offense, such that participation in the act constituted a reckless disregard for human life and the victim, Harris Brown, died as a direct result of the act. [Title 18, United States Code, Section 3591(a)(2)(D)]; and

f. committed the offense after substantial planning and premeditation to cause the death of Harris Brown. [Title 18, United States Code, Section 3592(c)(9)].

6. The Grand Jury incorporates by reference and realleges the allegations contained in Counts 12 and 13 of this Second Superseding Indictment and makes the following special findings as to Counts 12 and 13, the defendants:

**JUAN BRISENO a/k/a "Tito,"**
**and**
**GALO BENJAMIN FELICIANO**

a. were 18 years of age or older at the time of the offenses. [Title 18, United States

48

Code, Section 3591(a)].

b. intentionally killed the victim, Miguel Colon. [Title 18, United States Code, Section 3591(a)(2)(A)].

c. intentionally inflicted serious bodily injury that resulted in the death of the victim, Miguel Colon. [Title 18, United States Code, Section 3591(a)(2)(B)].

d. intentionally participated in an act, contemplating that the life of a person would be taken and intending that lethal force would be used in connection with a person, other than one of the participants in the offense, and the victim, Miguel Colon, died as a direct result of the acts. [Title 18, United States Code, Section 3591(a)(2)(C)].

e. intentionally and specifically engaged in an act of violence, knowing that the act created a grave risk of death to a person, other than one of the participants in the offense, such that participation in the act constituted a reckless disregard for human life and the victim, Miguel Colon, died as a direct result of the act. [Title 18, United States Code, Section 3591(a)(2)(D)].

f. knowingly created a grave risk of death to one or more persons in the commission of the offense, in addition to Miguel Colon. [Title 18, United States Code, Section 3592(c)(5)]; and

g. committed the offense after substantial planning and premeditation to cause the death of Miguel Colon. [Title 18, United States Code, Section 3592(c)(9)].

7. The Grand Jury incorporates by reference and realleges the allegations contained in Counts 15 and 16 of this Second Superseding Indictment and makes the following special

49

255

findings as to Counts 11 and 12, the defendants:

**GALO BENJAMIN FELICIANO,**
**and**
**JOSEPH RENE TORRES,**

a. were 18 years of age or older at the time of the offenses. [Title 18, United States Code, Section 3591(a)].

b. intentionally inflicted serious bodily injury that resulted in the death of the victim, Jesus Alvarez. [Title 18, United States Code, Section 3591(a)(2)(B)].

c. intentionally participated in an act, contemplating that the life of a person would be taken and intending that lethal force would be used in connection with a person, other than one of the participants in the offense, and the victim, Jesus Alvarez, died as a direct result of the acts. [Title 18, United States Code, Section 3591(a)(2)(C)].

d. intentionally and specifically engaged in an act of violence, knowing that the act created a grave risk of death to a person, other than one of the participants in the offense, such that participation in the act constituted a reckless disregard for human life and the victim, Jesus Alvarez, died as a direct result of the act. [Title 18, United States Code, Section 3591(a)(2)(D)].

e. the defendant Joseph Rene Torres has previously been convicted of a Federal or State offense punishable by a term of imprisonment of more than 1 year, involving the use or attempted or threatened use of a firearm against another person. [Title 18, United States Code, Section 3592(c)(2)].

f. knowingly created a grave risk of death to one or more persons in the commission of the offense, in addition to Jesus Alvarez. [Title 18, United States Code, Section

50

3592(c)(5)]; and

g. committed the offense after substantial planning and premeditation to cause the death of Jesus Alvarez. [Title 18, United States Code, Section 3592(c)(9)].

8. The Grand Jury incorporates by reference and realleges the allegations contained in Counts 17 and 18 of this Second Superseding Indictment and makes the following special findings as to Counts 17 and 18, the defendant:

**JUAN BRISENO a/k/a "Tito,"**

a. was 18 years of age or older at the time of the offenses. [Title 18, United States Code, Section 3591(a)].

b. intentionally killed the victim, Latroy Howard. [Title 18, United States Code, Section 3591(a)(2)(A)].

c. intentionally inflicted serious bodily injury that resulted in the death of the victim, Latroy Howard. [Title 18, United States Code, Section 3591(a)(2)(B)].

d. intentionally participated in an act, contemplating that the life of a person would be taken and intending that lethal force would be used in connection with a person, other than one of the participants in the offense, and the victim, Latroy Howard, died as a direct result of the acts. [Title 18, United States Code, Section 3591(a)(2)(C)].

e. intentionally and specifically engaged in an act of violence, knowing that the act created a grave risk of death to a person, other than one of the participants in the offense, such that participation in the act constituted a reckless disregard for human life and the victim, Latroy Howard, died as a direct result of the act. [Title 18, United States Code,

256

Section 3591(a)(2)(D)]; and

f. committed the offense after substantial planning and premeditation to cause the death

of Latroy Howard. [Title 18, United States Code, Section 3592(c)(9)].


A TRUE BILL:


s/ Foreperson
FOREPERSON


DAVID CAPP
UNITED STATES ATTORNEY


By:    s/ David J. Nozick
         David J. Nozick
         Assistant United States Attorney

```
MIME-Version:1.0
From:CMECFinnd@innd.uscourts.gov
To:CMECFinnd@localhost.localdomain
Bcc:
--Case Participants: Chief Judge Philip P Simon (anna_schumaker@innd.uscourts.gov,
denise_woodside@innd.uscourts.gov, katherine_welsh@innd.uscourts.gov,
mark_hancock@innd.uscourts.gov, noel_collins@innd.uscourts.gov,
philip_simon@innd.uscourts.gov), Magistrate Judge Andrew P Rodovich
(rodovich_chambers@innd.uscourts.gov)
--Non Case Participants:
--No Notice Sent:

Message-Id:1969884@innd.uscourts.gov
Subject:Activity in Case 2:11-cr-00077-PPS-APR United States of America et al v. Briseno
et al *SEALED* Case Unsealed
```
Content–Type: text/html

## U.S. District Court Northern District of Indiana [LIVE]

## USDC Northern Indiana

## Notice of Electronic Filing

The following transaction was entered on 4/11/2012 at 12:16 PM EST and filed on 4/11/2012

| | |
|---|---|
| **Case Name:** | United States of America et al v. Briseno et al |
| **Case Number:** | 2:11–cr–00077–PPS–APR *SEALED* |
| **Filer:** | |
| **Document Number:** | No document attached |

**Docket Text:** *Sealed Entry*
 **Case unsealed as to Juan Briseno, Galo Benjamin Feliciano, Guillermo Briseno, Alejandro Balboa Lara, Justin Weaver, Michael Anthony Castillo, Kelvin Jefferson Beltran, David Almaraz, Joseph Rene Torres, Jason Medina, Edward Raye Serna, Alejandro Briseno, Robert Lockhart, Armando Jose Velasquez, Anthony Baldazo (plm)**


**2:11–cr–00077–PPS–APR *SEALED*–1** No electronic public notice will be sent because the case/entry is sealed.

**2:11–cr–00077–PPS–APR *SEALED*–2** No electronic public notice will be sent because the case/entry is sealed.

**2:11–cr–00077–PPS–APR *SEALED*–3** No electronic public notice will be sent because the case/entry is sealed.

**2:11–cr–00077–PPS–APR–4** No electronic public notice will be sent because the case/entry is sealed.

**2:11–cr–00077–PPS–APR *SEALED*–5** No electronic public notice will be sent because the case/entry is sealed.

**2:11–cr–00077–PPS–APR *SEALED*–6** No electronic public notice will be sent because the case/entry is sealed.

**2:11–cr–00077–PPS–APR–7** No electronic public notice will be sent because the case/entry is sealed.

**2:11–cr–00077–PPS–APR \*SEALED\*–8** No electronic public notice will be sent because the case/entry is sealed.

**2:11–cr–00077–PPS–APR \*SEALED\*–9** No electronic public notice will be sent because the case/entry is sealed.

**2:11–cr–00077–PPS–APR \*SEALED\*–10** No electronic public notice will be sent because the case/entry is sealed.

**2:11–cr–00077–PPS–APR \*SEALED\*–11** No electronic public notice will be sent because the case/entry is sealed.

**2:11–cr–00077–PPS–APR \*SEALED\*–12** No electronic public notice will be sent because the case/entry is sealed.

**2:11–cr–00077–PPS–APR \*SEALED\*–13** No electronic public notice will be sent because the case/entry is sealed.

**2:11–cr–00077–PPS–APR \*SEALED\*–14** No electronic public notice will be sent because the case/entry is sealed.

**2:11–cr–00077–PPS–APR \*SEALED\*–15** No electronic public notice will be sent because the case/entry is sealed.

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| | ) | |
| vs. | ) | CASE NO. 2:11-CR-77 |
| | ) | |
| JUAN BRISENO | ) | |

## ORDER

Defendant Juan Briseno having filed a Motion to Continue Status Conference [145] due to the fact Attorney Arlington Foley will be out of the jurisdiction on vacation at that time, and the Court being duly advised that co-counsel John Maksimovich is unavailable for the April 19, 2012 hearing also, will **GRANT** a short continuance as to this Defendant **ONLY**. The Court now **RESETS** the Status Conference for the **27th day of April, 2012 at 8:45 a.m.** On that same date, the Defendant will be arraigned on the Superseding Indictment. US Marshal to produce Defendant for hearing.

The delay occasioned by the granting of this motion for continuance constitutes excludable time as defined by 18 USC Section 3161(h)(7)(A) and B(i) and (iv).

**SO ORDERED** this 12th day of April, 2012.

s/Andrew P. Rodovich
ANDREW P. RODOVICH
UNITED STATES MAGISTRATE JUDGE

```
MIME-Version:1.0
From:CMECFinnd@innd.uscourts.gov
To:CMECFinnd@localhost.localdomain
Bcc:
--Case Participants: David J Nozick - AUSA (david.nozick@usdoj.gov,
janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov,
usainn.ecfcivil@usdoj.gov), Matthew D Soliday (matt@matthewsolidaylaw.com,
office@matthewsolidaylaw.com), Paul Jeffrey Schlesinger (pjeffslaw@aol.com), Sheldon B
Nagelberg (sbnagelberglaw@att.net), Thomas W Vanes (tom.vanes@sbcglobal.net), Richard C
Wolter (rich.wolter@sbcglobal.net), Adam Tavitas (adtavitas@aol.com,
b.lynneadams@yahoo.com), Dean R Lanter - AUSA (dean.lanter@usdoj.gov,
janet.eisenmann@usdoj.gov, usainn.ecfcivil@usdoj.gov), Scott L King
(jwilliams@wbbklaw.com, sking@wbbklaw.com), John E Martin - FCD (crystal_medina@fd.org,
john_martin@fd.org), Mark A Psimos (psimoslaw@airbaud.net), James N Thiros
(jim@thiros.com, lynn@thiros.com), Robert L Rascia (rrascia@rascia-decastro.com,
ysierra@rascia-decastro.com), Arlington J Foley (arlingtonfoley@att.net), Visvaldis P
Kupsis (vpkupsis@hotmail.com), Stephen Edward Scheele (pkd@gk4law.com, ses@gk4law.com),
Clark W Holesinger (334office@frontier.com, arcclark@frontier.com,
clark.334@frontier.com), R Brian Woodward (carolb@wbbklaw.com, rbwoodward@wbbklaw.com),
John Maksimovich (criminallaw@johnmaksimovich.com), David E Vandercoy
(david.vandercoy@valpo.edu), Magistrate Judge Andrew P Rodovich
(rodovich_chambers@innd.uscourts.gov), Chief Judge Philip P Simon
(anna_schumaker@innd.uscourts.gov, denise_woodside@innd.uscourts.gov,
katherine_welsh@innd.uscourts.gov, mark_hancock@innd.uscourts.gov,
noel_collins@innd.uscourts.gov, philip_simon@innd.uscourts.gov)
--Non Case Participants:
--No Notice Sent:

Message-Id:1979670@innd.uscourts.gov
Subject:Activity in Case 2:11-cr-00077-PPS-APR United States of America v. Briseno et al
Order on Motion to Seal
Content-Type: text/html
```

### U.S. District Court Northern District of Indiana [LIVE]

### USDC Northern Indiana

### Notice of Electronic Filing

The following transaction was entered on 4/25/2012 at 4:57 PM EST and filed on 4/25/2012

| | |
|---|---|
| **Case Name:** | United States of America v. Briseno et al |
| **Case Number:** | 2:11-cr-00077-PPS-APR |
| **Filer:** | |
| **Document Number:** | 209(No document attached) |

**Docket Text:**

**ORDER (text order only) GRANTING [141] Motion to Seal as to Juan Briseno (1). Signed by Chief Judge Philip P Simon on 4/25/2012. (nac)**

**2:11-cr-00077-PPS-APR-1 Notice has been electronically mailed to:**

David E Vandercoy    david.vandercoy@valpo.edu

Arlington J Foley    arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Matthew D Soliday matt@matthewsolidaylaw.com, office@matthewsolidaylaw.com

Scott L King sking@wbbklaw.com, jwilliams@wbbklaw.com

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

Richard C Wolter rich.wolter@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, 334office@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org, crystal_medina@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Robert L Rascia rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Dean R Lanter – AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

**2:11–cr–00077–PPS–APR–1 Notice has been delivered by U.S. Mail or other means to:**

```
MIME-Version:1.0
From:CMECFinnd@innd.uscourts.gov
To:CMECFinnd@localhost.localdomain
Bcc:
--Case Participants: David J Nozick - AUSA (david.nozick@usdoj.gov,
janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov,
usainn.ecfcivil@usdoj.gov), Matthew D Soliday (matt@matthewsolidaylaw.com,
office@matthewsolidaylaw.com), Paul Jeffrey Schlesinger (pjeffslaw@aol.com),
Sheldon B
Nagelberg (sbnagelberglaw@att.net), Thomas W Vanes (tom.vanes@sbcglobal.net),
Richard C
Wolter (rich.wolter@sbcglobal.net), Adam Tavitas (adtavitas@aol.com,
b.lynneadams@yahoo.com), Dean R Lanter - AUSA (dean.lanter@usdoj.gov,
janet.eisenmann@usdoj.gov, usainn.ecfcivil@usdoj.gov), Scott L King
(jwilliams@wbbklaw.com, sking@wbbklaw.com), John E Martin - FCD
(crystal_medina@fd.org,
john_martin@fd.org), Mark A Psimos (psimoslaw@airbaud.net), James N Thiros
(jim@thiros.com, lynn@thiros.com), Robert L Rascia (rrascia@rascia-decastro.com,
ysierra@rascia-decastro.com), Arlington J Foley (arlingtonfoley@att.net),
Visvaldis P
Kupsis (vpkupsis@hotmail.com), Stephen Edward Scheele (pkd@gk4law.com,
ses@gk4law.com),
Clark W Holesinger (334office@frontier.com, arcclark@frontier.com,
clark.334@frontier.com), R Brian Woodward (carolb@wbbklaw.com,
rbwoodward@wbbklaw.com),
John Maksimovich (criminallaw@johnmaksimovich.com), David E Vandercoy
(david.vandercoy@valpo.edu), Magistrate Judge Andrew P Rodovich
(rodovich_chambers@innd.uscourts.gov), Chief Judge Philip P Simon
(anna_schumaker@innd.uscourts.gov, denise_woodside@innd.uscourts.gov,
katherine_welsh@innd.uscourts.gov, mark_hancock@innd.uscourts.gov,
noel_collins@innd.uscourts.gov, philip_simon@innd.uscourts.gov)
--Non Case Participants: Probation/Pretrial Services (innpml_cmecf@innd.uscourts.gov),
U S
Marshal (inn.docket-fw@usdoj.gov, inn.docket-sb@usdoj.gov, usms.27@usdoj.gov)
--No Notice Sent:

Message-Id:1980873@innd.uscourts.gov
Subject:Activity in Case 2:11-cr-00077-PPS-APR United States of America v. Briseno et al
Arraignment
Content-Type: text/html
```

### U.S. District Court Northern District of Indiana [LIVE]

### USDC Northern Indiana

## Notice of Electronic Filing

The following transaction was entered on 4/27/2012 at 10:18 AM EST and filed on 4/27/2012

| | |
|---|---|
| **Case Name:** | United States of America v. Briseno et al |
| **Case Number:** | 2:11-cr-00077-PPS-APR |
| **Filer:** | |
| **Document Number:** | 211(No document attached) |

**Docket Text:**

**STATUS/ARRAIGNMENT (2nd superseding indictment) as to Juan Briseno (1) Count 1ss, 4ss, 5ss, 6ss, 7ss, 8ss,9ss, 10ss, 11ss, 15ss, 16ss, 18ss, 19ss, 26ss held on 4/27/2012 before Magistrate Judge Andrew P Rodovich. Govt appeared by atty David Nozick. Dft appeared with attys Arlington Foley and John Maksimovich. Dft WAIVES reading of indictment and enters a plea of NOT GUILTY. Trial date/ddls set.Pretrial Motions due by 7/31/2012. Attorneys Foley and Maksimovich designated as lead counsel. Joint Supplemental motions due 8/17/2012. Govt response due by 9/28/2012. Jury Trial (7-8 weeks) set for 1/22/2013 08:30 AM in US District Court - Hammond before Chief Judge Philip P Simon., Final Pretrial Conference set for 1/2/2013 01:00 PM in US District Court - Hammond before Magistrate**

263

**Judge Andrew P Rodovich.) All 404B, Santiago proffer, Rule 609 deadlines will be set at the Final Pretrial Conference. Court finds due to complexity of case that Dfts' rights under the speedy trial act are waived from this date until date set for trial. Defendant REMANDED to custody of US Marshal.(Digitally Recorded) (plm)**

**2:11–cr–00077–PPS–APR–1 Notice has been electronically mailed to:**

David E Vandercoy david.vandercoy@valpo.edu

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Matthew D Soliday matt@matthewsolidaylaw.com, office@matthewsolidaylaw.com

Scott L King sking@wbbklaw.com, jwilliams@wbbklaw.com

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

Richard C Wolter rich.wolter@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, 334office@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org, crystal_medina@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Robert L Rascia rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Dean R Lanter – AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

**2:11–cr–00077–PPS–APR–1 Notice has been delivered by U.S. Mail or other means to:**

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>　　　Plaintiff<br><br>　　　-v-<br><br>GUILLERMO BRISENO, et. al.<br>　　　Defendant | Case No. 2:11-CR-77 |

# MEMORANDUM IN SUPPORT OF DEFENDANT GUILLERMO BRISENO'S MOTION TO SEVER

On April 5, 2012, the government filed its Second Superseding Indictment, in 26 Counts, against 13 defendants.  Guillermo Briseno ("Guillermo") is named in 2 of these 26 counts: in Count 1, alleging a Conspiracy to Participate in Racketeering Activity, and Count 26, alleging a Conspiracy to Distribute Marijuana.  Overt acts alleged against Guillermo are that he possessed marijuana on 3 occasions in 2005 [DE 151, at ¶¶23(d), (e) and (g), that he possessed a firearm on June 24, 2004 [DE 151, at ¶23(c)], again on March 8, 2007 [DE 151, at ¶23(j), that he shot a firearm at three individuals on May 24, 2008 [DE 151, at ¶23(x), and that he possessed "gang-related items" on November 7, 2011 [DE 151, at ¶23(fff)].

The remaining Counts 2 through 25 allege a variety of murder-related charges, summarized as follows:

| Counts: | Charge: | Named Defendant: |
|---|---|---|
| 2 | Murder | Galo Feliciano, Anthony Baldazo |
| 3 | Murder w/Firearm | Galo Feliciano, Anthony Baldazo |
| 4 | Murder | Juan Briseno |

case 2:11-cr-00077-PPS-APR   document 213   filed 04/28/12   page 2 of 7
Case: 15-2347   Document: 35   Document: 218   Filed 07/27/2016/11/12   Pages: 4186 of 7
Case 2:11-cr-00077-PPS-APR   Document 218   Filed 05/11/12   Page 2 of 7

| 5  | Murder w/Firearm          | Juan Briseno                        |
|----|---------------------------|-------------------------------------|
| 6  | Murder                    | Juan Briseno                        |
| 7  | Murder w/Firearm          | Juan Briseno                        |
| 8  | Murder                    | Juan Briseno                        |
| 9  | Murder w/Firearm          | Juan Briseno                        |
| 10 | Murder                    | Juan Briseno, Galo Feliciano        |
| 11 | Murder w/Firearm          | Juan Briseno, Galo Feliciano        |
| 12 | Accessory to Murder       | Alejandro Briseno                   |
| 13 | Murder                    | Galo Feliciano, Joseph Torres       |
| 14 | Murder w/Firearm          | Galo Feliciano, Joseph Torres       |
| 15 | Murder                    | Juan Briseno                        |
| 16 | Murder w/Firearm          | Juan Briseno                        |
| 17 | Attempted Murder          | Galo Feliciano, Anthony Baldazo     |
| 18 | Attempted Murder          | Juan Briseno                        |
| 19 | Attempted Murder w/Firearm| Juan Briseno                        |
| 20 | Attempted Murder          | Galo Feliciano                      |
| 21 | Attempted Murder w/Firearm| Galo Feliciano                      |
| 22 | Attempted Murder          | Jason Medina, Edward Serna          |
| 23 | Attempted Murder w/Firearm| Jason Medina, Edward Serna          |
| 24 | Attempted Murder          | Armando Velasquez                   |
| 25 | Attempted Murder w/Firearm| Armando Velasquez                   |

A series of Notices of Enhanced Sentencing and/or Special Findings are inventoried as against a number Guillermo's co-defendants, including Juan Briseno, Galo Feliciano, Anthony Baldoza and Joseph Torres [DE 151, at pages 15-16, 43-52]. In the event of conviction(s), the potential applicability of the Federal Death Penalty Act exists for these co-defendants. No linkage exists as between Guillermo or his alleged acts and the murder-related charges as filed against his co-defendants in Counts 2-25, nor is the Federal Death Penalty Act applicable to Guillermo in the event of conviction(s) on his counts.

This case is now set for a 7-8 week jury trial, to commence on January 22, 2013.

<u>**Severence**</u>

Rule 14(a) of the Federal Rules of Criminal Procedure provides for relief from prejudicial joinder:

> **Relief.**  If the joinder of offenses or defendants in an indictment, an information, or a consolidation for trial appears to prejudice a defendant or the government, the court may order separate trial of counts, sever the defendants' trials, or provide any other relief that justice requires.

*Fed. R. Crim. Pro. 14(a).*

Defendants can be severed for trial under Rule 14 if the economy of the joint trial is outweighed by the prejudicial effect of a joint trial on one or more, or sometimes all, of the defendants. *Zafiro v. U.S.*, 506 U.S. 534, 538 (1993); *U.S. v. Marzano*, 160 F.3d 399, 402 (7th Cir. 1999).

Guillermo would be prejudiced if tried in company with his co-defendants because of the possibility that evidence on the murder-related counts would lead the jury to find Guillermo guilty under his unrelated counts; A natural yet improper inference would exist that evidence of the 24 murder-related counts proves the disposition of Guillermo to commit his crimes.  Courts have held that "spillover" prejudice–the acknowledgment that a defendant may be prejudiced if tried together with another defendant accused of more serious or numerous crimes–requires severance when the evidence against one defendant is "far more damaging" than the evidence against the moving party. *United States v. Brunner*, 657 F.2d 1278, 1290 (D.C. Cir. 1980) (quoting *United States v. Mardian*, 546 F.2d 973, 977 (D.C. Cir. 1976).  It is difficult to imagine a charge or series of charges "far more damaging" than 24 murder-related counts, especially when considered *vis-a-vis* Guillermo's alleged (and comparatively minor) overt acts of possessing marijuana, possessing firearms and possessing "gang-related items."[1]

---

[1] Based upon a review of government discovery to date, it is surmised that these "gang-related items" consist of a pink stuffed animal, a pink bracelet, a pink i-pod cover, a large stuffed pink panther doll, and a black bandana.

And, the government's evidence is as "far more damaging" against Guillermo's co-defendants in volume as it is in seriousness.  Based upon a review of government discovery to date: Of approximately 3,400 pages of documentary discovery materials,[2] reference to Guillermo Briseno has been identified in less than 100 pages; Of approximately 2,2085 discovery photographs,[3] Guillermo has been identified in approximately 3; Guillermo is neither seen nor referenced in any of nearly 22 hours of surveillance video footage; and Guillermo's voice is neither recorded nor his name referenced in nearly 4 hours of recorded audio surveillance.  Substantially all of these discovery materials relates directly to the 24 murder-related counts, and will impose upon Guillermo the "spillover" prejudice noted above.  Severance is warranted, and necessary, to avoid this prejudice.

Further, judicial economy would in fact be better served *via* Guillermo's severance from his co-defendants.  The substantially less-serious nature, number and evidence of Guillermo's alleged crimes could presumably be presented to a jury well within a week's time, and at a time well prior to the presently-scheduled 7-8 week-long jury trial now scheduled for January, 2013.  The cost attendant to Guillermo's largely-unnecessary participation in a trial of such length would be enormous.  Moreover, realistic considerations contemplate some level of a continuance beyond (and likely well beyond) the present January, 2013, trial setting, as, *inter alia*, the government considers prospective applications of The Federal Death Penalty Act to Guillermo's co-defendants.  Yet, the government's case against Guillermo does not appear to be complex, and does not warrant such distant trial settings.  It is for these reasons that Guillermo has refused to

---

[2] Consisting of approximately 2,851 Bates-stamped pages, and approximately 549 unnumbered pages.

[3] Consisting of approximately 2,105 Bates-stamped photos, and approximately 180 unnumbered photos.

waive his right to a speedy trial. *See* DE 208.  Guillermo now reiterates his embrace of this right, and requests that he be severed from his co-defendants and tried within the confines of 18 U.S.C. §3161.

### Conclusion

Guillermo Briseno, by counsel, respectfully requests this Court to grant this Motion and sever him from his co-defendants for purposes of the trial in this matter, that his trial be scheduled within the confines of 18 U.S.C. §3161, and for all other relief that is just and proper in the premises.

Respectfully submitted,

GOODMAN, KATZ & SCHEELE

By: /s/   Stephen E. Scheele

STEPHEN E. SCHEELE
 Indiana Attorney Number: 19685-45
Attorney for Defendant
9013 Indianapolis Boulevard
Highland, IN 46322
(219) 838-9200 *(office)*
(219) 972-7110 *(fax)*
E-mail: ses@gk4law.com

269

case 2:11-cr-00077-PPS-APR   document 213   filed 04/28/12   page 6 of 7
Case: 15-2347   Document: 35   Filed: 07/27/2016   Pages: 4186
Case 2:11-cr-00077-PPS-APR   Document 218   Filed 05/11/12   Page 6 of 7

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

UNITED STATES OF AMERICA,

v.

GUILLERMO BRISENO, *et. al.*
        Defendant

Case No. 2:11-CR-77

# C E R T I F I C A T E   O F   S E R V I C E

        I hereby certify that on April 28, 2012, I electronically filed the foregoing with the Clerk of the Court using the CM/CM/ECF system which sent notification of such filing to the following:

| | |
|---|---|
| David J. Nozick | david.nozick@usdoj.gov |
| Dean R. Lanter | dean.lanter@usdoj.gov |
| David E. Vandercoy | david.vandercoy@valpo.edu |
| Arlington J. Foley | arlingtonfoley@att.net |
| John Maksimovich | criminallaw@johnmaksimovich.com |
| Mark A. Psimos | psimoslaw@airbaud.net |
| Matthew D. Soliday | matt@matthewsolidaylaw.com |
| Scott L. King | sking@scottkinggroup.com |
| James N. Thiros | jim@thiros.com, lynn@thiros.com |
| Clark W. Holesinger | clark.334@frontier.com |
| Visvaldis P. Kupsis | vpkupsis@hotmail.com |
| Adam Tavitas | Adtavitas@aol.com |
| R. Brian Woodward | rbwoodward@wbbklaw.com |
| Robert L. Rascia | rrascia@rascia-decastro.com |
| John E. Martin | john_martin@fd.org |
| Paul Jeffrey Schlesinger | pjeffslaw@aol.com |
| Sheldon B. Nagelberg | sbnagelberglaw@att.net |
| Thomas W. Vanes | tom.vanes@sbcglobal.net |
| Richard C. Wolter | rich.wolter@sbcglobal.net |

and I hereby certify that I have mailed by United States Postal Service the document to the following non-CM/CM/ECF participants:

NONE

case 2:11-cr-00077-PPS-APR   document 213   filed 04/28/12   page 7 of 7
Case: 15-2347   Document: 35   Filed: 07/27/2016   Pages: 4186
Case 2:11-cr-00077-PPS-APR   Document 218   Filed 05/11/12   Page 7 of 7

 /s/    Stephen E. Scheele
STEPHEN E. SCHEELE
Indiana Attorney Number: 19685-45
GOODMAN, KATZ & SCHEELE
9013 Indianapolis Boulevard
Highland, IN  46322
(219) 838-9200 *(office)*
(219) 972-7110 *(fax)*
E-mail: ses@gk4law.com

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CAUSE NO. 2:11 CR 77 |
| | ) | |
| GUILLERMO BRISENO, et. al | ) | |

**GOVERNMENT'S RESPONSE IN OPPOSITION
TO MOTION TO SEVER**

Comes now the United States of America, by counsel, David Capp, United States

Attorney for the Northern District of Indiana, through Assistant United States Attorney Dean

Lanter, and files the below response in opposition to defendant Guillermo Briseno's motion to

sever.

On April 5, 2012, the grand jury returned a second superseding indictment in this case

alleging 26 counts against 13 defendants.  Guillermo Briseno is charged in Count One of the

indictment, which alleges that from in or about March 2004, through and including on or about

the date of the second superseding indictment, Guillermo Briseno and thirteen other individuals

(eleven other named defendants in addition to defendants Alejandro Lara and Kelvin Beltran

who both pled guilty prior to the second superseding indictment) knowingly and intentionally

conspired to participate in the conduct of affairs of an enterprise known as the Imperial

Gangsters through a pattern of racketeering activity, consisting of multiple acts of murder and

multiple acts of narcotics trafficking, all in violation of 18 USC Section 1962(d).  Count One of

the second superseding indictment consists of 16 pages of description of the racketeering

conspiracy (with the first 8 pages describing the conspiracy even before the final 8 pages

1

describe various overt acts). In the overt act section of Count One, Guillermo Briseno is alleged to have possessed a firearm on June 24, 2004; alleged to have possessed marijuana on March 11, 2005; alleged to have possessed marijuana on April 1, 2005; alleged to have possessed marijuana on July 27, 2005; alleged to have possessed a firearm on March 8, 2007; and alleged to have possessed a firearm and shot at three individuals on May 24, 2008. In addition, Count One alleges that Guillermo Briseno and his coconspirators charged in Count One were members of the "Almighty IMPERIAL GANGSTERS" Street gang, a criminal organization whose members and associates engaged in acts of violence, including murder, attempted murder, aggravated battery, and aggravated assault and narcotics distribution.

Count One further alleges in four pages of details the manner and means of the conspiracy, including that members attended regular meetings at which they planned and otherwise engaged in criminal activity; that they initiated new members through the practice of causing them to endure physical assaults; that to enforce discipline and rules members of the enterprise engaged in a system of violations; that members of the enterprise employed and used gang-related terminology, symbols, gestures, and color schemes; that pursuant to gang policy members were required to participate in violent acts, received standing orders to shoot rival gang members, and were instructed to retaliate for gang-related attacks upon members and associates of the enterprise; that members of the enterprise were required to "post up" and patrol their neighborhood, which entailed standing guard in their neighborhood and shooting at any rival gang member they saw; that members manages the procurement and transfer and use and conceal and disposal of firearms within the enterprise, including trading firearms with Chicago-based Imperial Gangsters; that members of the enterprise earned money for their members and financed

their activities through illegal narcotics trafficking; that members conducted their affairs in part through a financial system in which the leadership of the Imperial Gangsters and others possessed and controlled a stash of money on behalf of the enterprise; that members of the enterprise recruited and used juveniles to commit acts for the benefit of the enterprise; and that members of the enterprise recruited prospective members that were given the option of shooting someone at the direction of leadership of the gang or receiving a two minute "violation" which entailed high-ranking members of the gang punching prospective members seventy times in the chest.

To prove a RICO conspiracy, which is the Count 1 charge against Guillermo Briseno, the government must show that the defendant was aware of the scope of the enterprise and agreed to participate in it through the participation of two predicate acts. *U.S. v. Stephens*, 46 F.3d 587, 592 (7th Cir. 1995). However, the government does not have to prove that the defendant agreed to personally commit two predicate acts. *Id*. All that is required is that he agreed to participate in the enterprise and that the enterprise operated through commission of two predicate acts. *U.S. v. Korando*, 29 F.3d 1114, 1119 (7th Cir. 1994). The Seventh Circuit has described a RICO conspiracy as encompassing two agreements: 1) an agreement to conduct or participate in the affairs of the enterprise; and 2) an agreement to the commission of two predicate acts. The Seventh Circuit has been careful to distinguish the elements of the conspiracy from the "enterprise," a problem that arises when the government charges an association in fact, as is the case in Count 1 against Guillermo Briseno and others. Unlike the standard section 371 conspiracy, a RICO conspiracy involves two conglomerations of people, the conspiracy and the enterprise, and this distinction helps to insure that section 1962(d) is more limited than section

3

274

371. _The government must establish the conspiracy and the enterprise and, in those cases where the enterprise is alleged to be an illegal association-in-fact (as in the case against Guillermo Briseno), proof of one is not sufficient to allow an inference of the existence of the other_.  _U.S. v. Neopolitan_, 791 F.2d 489, 500 (7th Cir. 1986).  However, the proof for both may often coalesce. _U.S. v. Rogers_, 89 F.3d 1326, 1337 (7th Cir. 1996).  Accordingly, the government in this case is charged with proving _both_ the conspiracy and the enterprise against each defendant charged in Count 1.

Guillermo Briseno is also charged in Count 26 of the second superseding indictment, which also charges eleven codefendants (in addition to alleging the involvement of two additional individuals, being Alejandro Lara and Kelvin Beltran, both of whom have already pled guilty), in a conspiracy to possess with intent to distribute and to distribute 100 kilograms or more of marijuana, in violation of 21 USC Section 846.  Regarding the law regarding drug conspiracy, it makes no difference whether the defendant personally engaged in drug sales.  There need only be "substantial evidence that [the defendant] knew that his co-conspirators engaged (or would engage) in these activities and that he played a role that furthered the common goals of the conspiracy."  _U.S. v. Hunter_, 145 F.3d 946, 949 (7th Cir. 1998).  All the conspirators do not have to play the same role as long as there is one overall agreement.  _U.S. v. Dortch_, 5 F.3d 1056, 1070 (7th Cir. 1993).  Based upon the aforementioned drug conspiracy allegations with which Guillermo Briseno is charged in Count 26, along with his eleven codefendants, and the aforementioned law regarding the government's proof, there is voluminous evidence of the conspiracy.

Under Federal Rule of Criminal Procedure 8, Guillermo Briseno was properly joined with

his codefendants in this case because Counts 1 and 26 allege that the defendants participated in the same conspiracies.  "It is well-established that a conspiracy charge is a proper basis for joinder under Rule 8(b)."  *U.S. v. Diaz*, 876 F.2d 1344, 1355-56 (7th Cir. 1989).

Guillermo Briseno has moved for severance from his codefendants under Rule 14.  "The general rule is that persons jointly indicted should be tried together, especially in conspiracy cases."  *U.S. v. Smith*, 869 F.2d 348, 355 (7th Cir. 1989).  "In considering a motion for severance, the trial judge should give deference to the strong public interest in having persons jointly indicted tried together, particularly where, as here, a conspiracy is charged and may be proved by evidence that arises out of the same or series of acts."  *U.S. v. Percival*, 756 F.2d 600, 610 (7th Cir. 1985).  The policy underlying this rule was clearly explained in U.S. v. Buljubasic, 808 F.2d 1260, 1263 (7th Cir. 1987):

> There is a strong interest in joint trials of those who engaged in a common enterprise.  Joint trials reduce the expenditure of judicial and prosecutorial time; they reduce the claims the criminal justice system makes on witnesses, who need not return to court for additional trials; they reduce the chance that each defendant will try to create a reasonable doubt by blaming an absent colleague, even though one or the other (or both) undoubtedly committed a crime.  The joint trial gives the jury the best perspective on all of the evidence and therefore increases the likelihood of a correct outcome.

(Citations omitted).  In order to obtain a severance, the defendant has to show that the joint trial compromised a specific trial right or prevented the jury from making a reliable judgment about guilt or innocence.  *U.S. v. Mohammad*, 53 F.3d 1426, 1431 (7th Cir. 1995), overruled on other grounds, U.S. v. Sawyer, 521 F.3d 792 (2008).  See, e.g., *U.S. v. Wilson*, 237 F.3d 827, 835 (7th Cir. 2001).  Guillermo Briseno cannot meet this high burden.

276

Regarding Count 1, based on the aforementioned allegations against Guillermo Briseno and his eleven codefendants, and the aforementioned case law of what the government has to prove at trial, the government has to not only prove a conspiracy but also has to prove the existence of the enterprise, which is voluminous evidence and witnesses in proving the enterprise in a case even against Guillermo Briseno alone. The government will be using the same voluminous evidence and many witnesses against the others to also prove the conspiracy and enterprise against Briseno alone.

While the defendant claims, by reference to discovery (which of course does not include a lot of the 18 U.S.C. Section 3500 material), that the amount of evidence against Guillermo Briseno is sparse in comparison to voluminous as to his codefendants, the government disagrees. Much of the discovery turned over (which of course does not yet include a lot of the Section 3500 material) may not reference Guillermo Briseno by name but is still admissible against him and will be presented at his trial as evidence of the RICO conspiracy, including but not limited to enterprise evidence. In any trial against Guillermo Briseno, the government still has to prove the existence of the RICO enterprise and the existence of the RICO conspiracy, and much of the voluminous evidence and witnesses against his codefendants applies equally to Guillermo Briseno and will be presented at his trial. The same voluminous evidence and witnesses that apply equally to Guillermo Briseno on Count 1 apply as well to the Count 26 drug conspiracy charge. In light of the government's evidence and burden of proof on the RICO conspiracy (for which the government must prove both the conspiracy and the existence of the enterprise, which entails much enterprise evidence), the government vigorously disagrees with the notion that a trial of Guillermo Briseno could be conducted well within a week's time frame. Indeed, the evidence against Guillermo Briseno for the conspiracy and the enterprise consists of the same

6

voluminous evidence and witnesses against Guillermo Briseno as for the other codefendants in this case.

Accordingly, judicial economy weighs <u>strongly</u> against a severance in this case. A separate multi-week trial against Guillermo Briseno at which the same evidence and same large number of witnesses are presented is not at all in the interest of judicial economy. The government could not disagree more with the defendant's characterization of the case against Guillermo Briseno as not complex, for he is charged with a RICO conspiracy that is detailed in sixteen pages of the indictment, and for which the government must prove the existence of multiple elements including but not limited to an enterprise of association in fact.

While Guillermo Briseno attempts to portray his involvement as minimal and akin to someone who is only charged with a few controlled purchases and not a RICO conspiracy or 100 kilogram marijuana conspiracy, the evidence will show that the contrary is the case. First, Briseno leaves out of his discussion, on page 3 of his memorandum, the overt act in which Briseno is alleged to have shot a firearm at three individuals. Second, the evidence at trial will show that Guillermo Briseno <u>was at various times a leader and a key player</u> in the Imperial Gangsters, including his involvement in drug dealing, firearms, and violence. He is the older brother of main defendant Juan Briseno. *Indeed, one of the overt acts alleged against Guillermo Briseno in Count 1 is the fact that he shot at three individuals.* Guillermo Briseno will not be improperly prejudiced by proceeding to trial with codefendants charged with substantive murders undertaken in furtherance of the same RICO conspiracy with which Guillermo Briseno is charged, especially under circumstances where Briseno held a leadership role at times, and with the members of the Imperial Gangsters enterprise conducting the enterprise through patterns of violence widely known throughout the Imperial Gangsters and Guillermo Briseno in particular

7

278

as a course of operating as detailed in pages 6 through 9 of Count 1. The evidence will show that Guillermo Briseno was at times a key player involved in drug dealing, firearms possession, and the promotion of violence with firearms by the Imperial Gangsters. The evidence against Guillermo Briseno on Counts 1 and 26 will consist of the same voluminous evidence and same witnesses as against the rest of the codefendants. The evidence will show that Briseno was involved in firearms, drugs, violence, and held a leadership role at times in these activities and in the very violent Imperial Gangsters. This sort of evidence directly contradicts the defendant's purported assertion that his level of participation in the conspiracies was minimal and that he will suffer prejudice without a severance. Furthermore, while the defendant claims that murder evidence would lead the jury to find the defendant guilty on Counts 1 and 26, juries are presumed to follow the instructions of the Court in deciding evidence against separate defendants separately. "In such situations, the relevant inquiry is whether it is within the jury's capacity to follow the trial court's limiting instructions requiring separate consideration for each defendant and the evidence admitted against [him]." *U.S. v. Diaz*, 876 F.2d 1344, 1357 (7th Cir. 1989). "Juries, however, are presumed capable of sorting through the evidence and considering the cause of each defendant separately." *Id*. Furthermore, evidence of orders of violence and violence itself will be admissible against Briseno even at a lone trial of him as part of the proof of his involvement in the enterprise and RICO conspiracy.

Even assuming without conceding that the volume of evidence will be far greater against codefendants, the Seventh Circuit has held that disproportionality of evidence is not in itself grounds for severance. *U.S. v. Hendrix*, 752 F.2d 1226, 1232 (7th Cir. 1985); *U.S. v. Sababu*, 891 F.2d 1308, 1331 (7th Cir. 1989) (citing cases). "In such situations, the relevant inquiry is whether it is within the jury's capacity to follow the trial court's limiting instructions requiring separate

8

consideration for each defendant and the evidence admitted against [him]." *U.S. v. Diaz*, 876 F.2d 1344, 1357 (7th Cir. 1989). "Juries, however, are presumed capable of sorting through the evidence and considering the cause of each defendant separately." *Id*. In the related context of severance of counts against a single defendant, in *U.S. v. Freland*, 141 F.3d 1223 (7th Cir. 1998), the Seventh Circuit reiterated the often-stated holding that properly instructed juries can be presumed to follow instructions cautioning them to consider each count separately; this cautionary instruction has been used to assuage any concerns of spillover as a consequence of multiple counts, and in single defendant cases in which the defendant wants a severance as to counts, the Seventh Circuit has rejected "evidentiary spillover" as a basis for requiring severance. *Freland*, 141 F.3d at 1227; *U.S. v. Abdelhaq*, 246 F.3d 990, 992 (7th Cir. 1992).

Because the same voluminous evidence and many witnesses against Briseno's codefendants will also be admitted and be testifying at any trial of Briseno, in part because of the government's necessity to prove RICO conspiracy and enterprise; because Briseno held a leadership position at times in the RICO conspiracy and was involved in drugs, firearms, and promotion of violence; because Briseno is alleged in an overt act to have shot at three persons on one occasion; because of the nature of the Imperial Gangsters as being steeped in violence as an organization as alleged in Count 1; because a trial of Briseno alone would be much longer than claimed by the defendant; and for all the other reasons set forth above, the defendant has failed to met his burden for severance. The economy of a joint trial is not outweighed by any alleged prejudicial effect of a joint trial on Briseno, especially under the unique circumstances of the Count 1 charge of the nature of the RICO conspiracy involved in this case and Briseno's leadership role at times in that conspiracy. Briseno will not be improperly prejudiced by a joint trial, whereas the aforementioned benefits of joint trials and preference for them will be

undermined by a severance in this case.

        CONCLUSION

        Wherefore, the government respectfully requests the Court deny the defendant's motion

for severance and set his matter for trial at the same time as the remaining codefendants as

previously scheduled.

                                        Respectfully submitted,

                                        DAVID CAPP
                                        UNITED STATES ATTORNEY

                                By:     s:/Dean R. Lanter
                                        Dean R. Lanter
                                        Assistant United States Attorney

281

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

UNITED STATES OF AMERICA    )
    )
          v.              )           2:11 CR 77
    )
GUILLERMO BRISENO et al    )

Certificate of Service

The undersigned certifies that he is an employee in the Office of the U.S. Attorney for the

Northern District of Indiana and is a person of such age and discretion as to be competent to serve

papers; that on May 11, 2012, all counsel of record in this cause were served electronically.

s/Dean R. Lanter

Dean R. Lanter
Assistant United States Attorney

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| VS. | ) CASE NO: 2:11 CR 77 |
| | ) |
| JUAN BRISENO | ) |

**DEFENDANT'S MOTION FOR ADDITIONAL TIME**
**TO FILE PRETRIAL MOTIONS**

Comes now the Defendant, Juan Briseno, by and through counsel and in support of this motion says as follows:

1. That the Defendant's attorneys have been designated, by the Magistrate, as lead counsel for all Defendants for pretrial motion filing.

2. That the deadline for the filing of pretrial motions is July 31, 2012.

3. That the Defendants have received a voluminous amount of discovery materials from the government and requires additional time to review same in order to be prepared to file pretrial motions.

4. That the Defendant has been informed that the government intends to seek the death penalty herein but no such determination has yet been made.

5. That the determination of whether or not the government obtains Department of Justice approval and authorization for the death penalty, will necessarily affect the nature of and number of pretrial motions that the Defendant(s) may file.

6. That in order to prepare and file pretrial motions, the attorneys for Defendant, Juan Briseno, as lead counsel, request an additional forty-five (45) days to file pretrial motions herein, up to and including the 15th day of September, 2012.

283

7. That the A.U.S.A. assigned to this matter has been advised and has no objection to this motion.

**WHEREFORE:** The Defendant, Juan Briseno, moves the Court to grant additional time to file pretrial motions herein, up to and including the 15th day of September, 2012.

RESPECTFULLY SUBMITTED:

s/Arlington J. Foley                                 s/John Maksimovich
Arlington J. Foley, Atty. #6905-45        John Maksimovich, Atty. #9950-45
Attorney for Defendant, Juan Briseno   Attorney for Defendant, Juan Briseno
1942 North Main Street                         1946 North Main Street
Crown Point, IN  46307                        Crown Point, IN 46307
Tel: (219) 661-1200                             Tel: (219) 663-1900

**CERTIFICATE OF SERVICE**

I certify that on the 30th day of July, 2012 service of a true and complete copy of the above and foregoing pleading or paper was made upon each party or attorney of record herein by the electronic case filing system (ECF).

By:     s/Arlington J. Foley
         Arlington J. Foley
         Attorney at Law

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

UNITED STATES OF AMERICA     )
                                     )
       v.                    )         CAUSE NO. 2:11 CR 77
                                     )
JUAN BRISENO                )

## ORDER

Upon due consideration of the Defendant's Motion for Additional Time To File Pretrial

Motions [DE 262], the defendant's motion is GRANTED.  Pretrial motions are due on or

before September 14, 2012.

ENTERED this 13th day of August, 2012

/s/ Andrew P. Rodovich
United States Magistrate Judge

1

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | ) |
| | ) |
| **VS.** | ) **CASE NO: 2:11 CR 77** |
| | ) |
| **JUAN BRISENO** | ) |

## DEFENDANT, JUAN BRISENO'S, MOTION FOR ADDITIONAL TIME TO FILE PRETRIAL MOTIONS

Comes now the Defendant, Juan Briseno, by and through counsel and in support of this motion says as follows:

1. That the Defendant, Juan Briseno, is charged herein with Count 1 Racketeering Activity/Murder/Kidnapping as well as multiple other counts.

2. That the deadline for the filing of pretrial motions is September 14, 2012.

3. That the government has indicated that it is attempting to obtain authorization from the Department of Justice to seek the death penalty against the Defendant, Juan Briseno.

4. That the government and the counsel for the Defendant, Juan Briseno, are attempting to schedule a meeting at Department of Justice and such meeting is likely to occur in early to mid November, 2012.

5. That the outcome of the Department of Justice meeting will dictate the number and nature of defense pretrial motions.

6. That counsel for the remaining co-defendants have no objection to the Court granting this motion.

7. That the government has no objection to the Court granting this motion.

**WHEREFORE:**  The Defendant, Juan Briseno, moves the Court to extend the period of time for filing pretrial motions up to and including the 1st day of December, 2012.

RESPECTFULLY SUBMITTED:


s/Arlington J. Foley                              s/John Maksimovich
Arlington J. Foley, Atty. #6905-45       John Maksimovich, Atty. #9950-45
Attorney for Defendant, Juan Briseno    Attorney for Defendant, Juan Briseno
1942 North Main Street                    1946 North Main Street
Crown Point, IN  46307                     Crown Point, IN 46307
Tel: (219) 661-1200                          Tel: (219) 663-1900


<div align="center">

**CERTIFICATE OF SERVICE**

</div>

I certify that on the <u>13th</u> day of <u>September</u>, 2012 service of a true and complete copy of the above and foregoing pleading or paper was made upon each party or attorney of record herein by the electronic case filing system (ECF).

By:      s/Arlington J. Foley
              Arlington J. Foley
              Attorney at Law

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| vs. | ) | CASE NO. 2:11-CR-77 |
| | ) | |
| JUAN BRISENO | ) | |

**ORDER**

This matter is before the Court on a Motion for Additional Time to File Pretrial Motions [DE 279] filed by Defendant Juan Briseno on September 13, 2012. In the instant motion, Defendant requests an extension to December 1, 2012. Counsel for Defendant represents that the government has indicated that it is attempting to obtain authorization from the Department of Justice to seek the death penalty against the Defendant, Juan Briseno. The outcome of a meeting with the Department of Justice will dictate the number and nature of defense pretrial motions. Counsel for remaining co-defendants have no objection to the Court granting this motion. The government has no objection to the granting of this motion.

Finding that the ends of justice served by granting such a continuance outweigh the best interest of the public and the Defendant in a speedy trial, in that a failure to grant such a continuance would unreasonable deny the Defendant the reasonable assistance of counsel and time necessary for effective preparation of pretrial motions, the Court hereby **GRANTS** the Motion for Additional Time to File Pretrial Motions.

The period of delay resulting from this extension of time is to be excluded pursuant to 18

U.S.C. Section 3161. Pretrial motions are now due **December 1, 2012.**

    **SO ORDERED** this 18th day of October, 2012.

                s/Andrew P. Rodovich
                ANDREW P. RODOVICH
                UNITED STATES MAGISTRATE JUDGE

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **VS.** | ) | **CASE NO: 2:11 CR 77** |
| | ) | |
| **JUAN BRISENO** | ) | |

## MOTION TO CONTINUE JURY TRIAL

Comes now the Defendant, Juan Briseno, by and through counsel, and moves to continue this matter for Jury Trial and in support says:

1.  That this matter is set for Jury Trial on the 22nd day of January, 2013.

2.  That counsel for the Defendant are scheduled to attend a meeting at the Department of Justice in Washington D.C. on November 5, 2012 at which a determination will be made as to whether the government will be authorized to seek the death penalty against Defendant, Juan Briseno.

3.  That the outcome of the Department of Justice meeting will dictate the trial setting of the government as well as the trial strategy of the Defendant.

4.  That the Defendant, Juan Briseno, is charged with several murders, drug activity and racketeering activities.

5.  That discovery herein is voluminous and the government projects this to be an eight week trial.

6.  That given the nature and complexities of this case; the multitude of charges and defenses; the volume of evidence; and the uncertainty of this being a death sentence case, there is a need for additional time for Defendant's counsel to prepare for trial.

7. That, except for counsel for the Defendant, Robert Lockhart, no counsel for the other remaining co-defendants have any objection to the Court granting a continuance.

8. That the government has no objection to the Court granting this motion.

9. The delay occasioned by the granting of this motion for continuance would constitute and be excludable time as defined by 18 U.S.C. § 3161 (h)(8)(A) and B(i) and (iv).

10. The delay occasioned by the granting of the motion to continuance would also be excludable for the reason that the ends of justice served by the granting of the continuance outweigh the interest of the public and the Defendant in a speedy trial.

    **WHEREFORE:**      The Defendant, Juan Briseno, moves the Court to continue this matter for Jury Trial in accordance with this motion.

    RESPECTFULLY SUBMITTED:

s/Arlington J. Foley                          s/John Maksimovich
Arlington J. Foley, Atty. #6905-45            John Maksimovich, Atty. #9950-45
Attorney for Defendant, Juan Briseno          Attorney for Defendant, Juan Briseno
1942 North Main Street                        1946 North Main Street
Crown Point, IN  46307                        Crown Point, IN 46307
Tel: (219) 661-1200                           Tel: (219) 663-1900

### CERTIFICATE OF SERVICE

    I certify that on the 29th day of October, 2012 service of a true and complete copy of the above and foregoing pleading or paper was made upon each party or attorney of record herein by the electronic case filing system (ECF).

                    By:     s/Arlington J. Foley
                            Arlington J. Foley
                            Attorney at Law

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | CAUSE NO. 2:11 CR 77 PPS |
| | ) | |
| v. | ) | 18 U.S.C. § 1962(d) |
| | ) | 18 U.S.C. § 1959(a) |
| JUAN BRISENO a/k/a "Tito"; | ) | 18 U.S.C. § 924 |
| JUSTIN WEAVER a/k/a "White Boy"; | ) | 21 U.S.C. § 846 |
| MICHAEL ANTHONY CASTILLO; | ) | 21 U.S.C. § 841(a)(1) |
| JASON MEDINA a/k/a "Burns"; | ) | 18 U.S.C. § 3 |
| EDWARD RAYE SERNA a/k/a "Sern"; | ) | 18 U.S.C. § 2 |
| ROBERT LOCKHART a/k/a "Jackson"; | ) | |
| ARMANDO JOSE VELASQUEZ a/k/a | ) | |
| "Money"; | ) | |
| ANTHONY BALDAZO a/k/a "Tall | ) | |
| Folks"; | ) | |
| SALVADOR CHAVEZ a/k/a "Black" | ) | |
| "Dirty Sal"; | ) | |
| RAYMOND CAMPOS a/k/a "Cookie | ) | |
| Face"; | ) | |
| ACE CORTEZ; | ) | |
| JULIAN GUILLERMO SERNA | ) | |
| a/k/a "Big Ju"; | ) | |
| JULIUS SOLIS a/k/a "JuJu"; | ) | |
| DARMAILE CORTEZ SUTTON a/k/a | ) | |
| "D-Money"; | ) | |
| EDDIE TORRES a/k/a "Macho"; and | ) | |
| RICHARD REYES | ) | |

## THIRD SUPERSEDING INDICTMENT

## COUNT 1

### (Conspiracy to Participate in Racketeering Activity)

**THE GRAND JURY CHARGES**:

### Introduction

1. At various times relevant to this Third Superseding Indictment, the following defendants, and others known and unknown, were members of the "Almighty IMPERIAL GANGSTERS" Street Gang (hereinafter the "IMPERIAL GANGSTERS"), a criminal organization whose members and associates engaged in acts of violence, including murder, attempted murder, robbery, aggravated battery, aggravated assault and narcotics distribution, and which operated in the Northwest Indiana area, the Northern District of Indiana, Hammond Division, and elsewhere: **JUAN BRISENO a/k/a "Tito," JUSTIN WEAVER a/k/a "White Boy," MICHAEL ANTHONY CASTILLO, JASON MEDINA a/k/a "Burns," EDWARD RAYE SERNA a/k/a "Sern," ROBERT LOCKHART a/k/a "Jackson," ARMANDO JOSE VELASQUEZ a/k/a "Money, " ANTHONY BALDAZO a/k/a "Tall Folks," SALVADOR CHAVEZ a/k/a "Black," "Dirty Sal," RAYMOND CAMPOS a/k/a "Cookie Face," ACE CORTEZ, JULIAN GUILLERMO SERNA a/k/a "Big Ju," JULIUS SOLIS a/k/a "Ju Ju," DARMAILE CORTEZ SUTTON a/k/a "D-Money," EDDIE TORRES a/k/a "Macho," and RICHARD REYES.**

### General Background and Structure of the Enterprise

2. The IMPERIAL GANGSTERS are a nationally known criminal street organization whose members engage in drug trafficking and acts of violence. The 149th Street "No Love Side" IMPERIAL GANGSTERS are a local "set" or chapter of the IMPERIAL GANGSTERS, with local control and operation within East Chicago, Indiana. The other IMPERIAL GANGSTER set or chapter operating in Northwest Indiana is the 139th Street, or "Harbor" or "Tre Nine" set.

3. The 149th Street IMPERIAL GANGSTERS operate primarily on the South Side of

2

East Chicago. The 149th Street IMPERIAL GANGSTERS are involved in murder, attempted murder, robberies and drug trafficking. The 139th Street IMPERIAL GANGSTERS operate primarily in the Harbor Section of East Chicago. They are also involved in murder, attempted murder, robberies and drug trafficking.

4. Members of the IMPERIAL GANGSTERS greeted each other, and showed their membership in the gang using a set of hand-signs. In addition, IMPERIAL GANGSTERS often greeted one another, demonstrated their allegiance to the gang, or simply announced their arrival or presence in a particular area by exclaiming "Amor." The IMPERIAL GANGSTERS employed a robust symbology as well, often using depictions of the cartoon character The Pink Panther to demonstrate their affiliation. Members often had tattoos incorporating one or more of the aforementioned phrases or symbols, The Pink Panther being the most prominent. The colors associated with the IMPERIAL GANGSTERS are pink and black, and members of the IMPERIAL GANGSTERS often demonstrated their affiliation with the IMPERIAL GANGSTERS by wearing clothing containing these two colors, or incorporating some of the gang's other symbols or phrases.

5. The IMPERIAL GANGSTERS are affiliated with the "Folk Nation" of gangs. Rival street gangs of the IMPERIAL GANGSTERS have included the Spanish Gangster Disciples, The Two Six Nation, The Latin Kings, and the Black P-Stones.

6. The IMPERIAL GANGSTERS have a leadership structure, but do not always utilize official titles or ranks. They at all times have an individual who serves as the leader and makes decisions regarding gang business. The IMPERIAL GANGSTERS have one or two individuals who control and train the "shorties" or prospective members. They have an individual who

3

serves as a treasurer, who collects gang dues. They also have an individual who serves as the enforcer, who applies discipline for violations of the gang rules by meting out punishment.

## The Racketeering Enterprise

7. The IMPERIAL GANGSTERS, including its leadership, membership, prospects ("shorties") and associates, constitutes an enterprise as defined in 18 U.S.C. § 1961(4), that is, a group of individuals associated in fact. The enterprise constituted an ongoing organization whose members functioned as a continuing unit for a common purpose of achieving the objectives of the enterprise. This enterprise was engaged in, and its activities affected, interstate and foreign commerce.

## Purposes of the Enterprise

8. The purposes of the enterprise included, but were not limited to, the following:

a. Enriching the leaders, members, and associates of the enterprise through, among other things, the illegal trafficking of controlled substances.

b. Preserving and protecting the power, territory, operations, and proceeds of the enterprise through the use of threats, intimidation, violence and destruction including, but not limited to, acts of murder, attempted murder, assault with a dangerous weapon and other acts of violence.

c. Promoting and enhancing the enterprise and its members' and associates' activities.

d. Keeping victims in fear of the enterprise and in fear of its leaders, members, and associates through threats of violence and violence. The leaders, members, and associates of the enterprise undertook all steps necessary to prevent the detection of their criminal activities, and sought to prevent and resolve the imposition of any criminal liabilities upon their leaders,

4

members, and associates, by the use of murder, violence, and intimidation directed against

witnesses, victims, and others. As part of this practice, the enterprise enforced what it referred to

as a "SOS" or shoot on sight order, or also known as "KOS" or, kill on sight, against IMPERIAL

GANGSTERS members who were suspected of having cooperated with law enforcement.

e. Providing support to gang members who were charged with, or incarcerated for, gang-

related activities.

## The Racketeering Conspiracy

9. Beginning on a date unknown to the Grand Jury, but at least as of in or about

September, 2002, and continuing through on or about the date of this Third Superseding

Indictment, in the Northern District of Indiana and elsewhere, the defendants,

<div align="center">

JUAN BRISENO a/k/a "Tito,"
JUSTIN WEAVER a/k/a "White Boy,"
MICHAEL ANTHONY CASTILLO,
JASON MEDINA a/k/a "Burns,"
EDWARD RAYE SERNA a/k/a "Sern,"
ROBERT LOCKHART a/k/a "Jackson"
ARMANDO JOSE VELASQUEZ a/k/a "Money,"
ANTHONY BALDAZO a/k/a "Tall Folks,"
SALVADOR CHAVEZ a/k/a "Black," "Dirty Sal,"
RAYMOND CAMPOS a/k/a "Cookie Face,"
ACE CORTEZ,
JULIAN GUILLERMO SERNA a/k/a "Big Ju,"
JULIUS SOLIS a/k/a "Ju Ju,"
DARMAILE CORTEZ SUTTON a/k/a "D-Money"
EDDIE TORRES a/k/a "Macho" and
RICHARD REYES

</div>

each being a person employed by and associated with the IMPERIAL GANGSTERS, an

enterprise engaged in, and the activities of which affected, interstate and foreign commerce,

together with GALO BENJAMIN FELICIANO, GUILLERMO BRISENO, JOSEPH RENE

<div align="center">5</div>

TORRES, DAVID ALMARAZ, ALEJANDRO BALBOA LARA, KELVIN JEFFERSON

BELTRAN and others known and unknown to the Grand Jury, did knowingly and intentionally

conspire to conduct and participate, directly and indirectly, in the conduct of the affairs of the

enterprise through a pattern of racketeering activity, as defined in Sections 1961(a) and (5) of

Title 18, United States Code, consisting of multiple acts involving murder in violation of Indiana

Code 35-42-1-1, 35-41-2-4, 35-41-5-1, multiple acts involving robbery in violation of Indiana

Code 35-42-5-1 and 35-41-5-2, multiple acts indictable under 18 United States Code Section

1951 (Hobbs Act Robbery) and multiple acts involving narcotics trafficking in violation of 21

United States Code Sections 841(a)(1)(distribution and possession with the intent to distribute a

controlled substance) and Section 846 (conspiracy to distribute and possess with the intent to

distribute a controlled substance).  It was part of this conspiracy that each defendant agreed that a

conspirator would commit at least two acts of racketeering in the conduct of the affairs of the

enterprise.

### Manner and Means of the Conspiracy

10.  Each member of the enterprise agreed to facilitate a scheme that included the

operation and management of the enterprise by a conspirator.  Members of the enterprise and

their associates operated and conducted their affairs through a series of laws and policies, some

of which were codified in a constitution and a series of laws.

11.  The members of the enterprise and their associates attended regular meetings at

which they discussed, planned, and otherwise engaged in criminal activity, including murder,

attempted murder, robberies, narcotics distribution, and obstruction of justice.

12.  Members of the enterprise and their associates initiated new members through the

practice of causing them to endure physical assaults conducted by members of the enterprise at various gang-related gatherings.

13. To enforce discipline and the rules of the enterprise, members of the enterprise and their associates engaged in a system of "violations," in which members of the enterprise attempted to murder, conspired to murder, and physically beat and threatened those members of the enterprise who violated rules, questioned authority, or posed a threat to the leaders or purposes of the enterprise.

14. Members of the enterprise and their associates employed and used gang-related terminology, symbols, gestures, and color schemes.

15. To perpetuate the enterprise and maintain and extend their power, members of the enterprise and their associates committed illegal acts, including murder, attempted murder, aggravated battery, intimidation, and aggravated assault against individuals who posed a threat to the enterprise or jeopardized its operations, including rival gang members and witnesses to the illegal activities of the enterprise. Pursuant to gang policy, members of the enterprise and their associates were required to participate in such acts, received standing orders to shoot rival gang members, and were instructed to retaliate for gang-related attacks upon the members and associates of the enterprise.

16. Members of the enterprise and their associates were required to "post up" and patrol in their neighborhood. This entailed standing guard in their neighborhood and shooting at any rival gang member they saw, and also at any individual in their neighborhood who was selling drugs without their permission. A member or associate of the enterprise would be violated if they did not "post up" in the IMPERIAL GANGSTER neighborhood. On multiple occasions

7

Case: 15-2347 Document: 35 Filed: 07/27/2016 Pages: 4186
Case 2:11-cr-00077-PPS-APR Document 309 Filed 11/07/12 Page 8 of 72

299

during the course of the conspiracy members of the 139th Street IMPERIAL GANGSTERS would assist the 149th Street IMPERIAL GANGSTERS in "posting up" and patrolling in the 149th Street neighborhood. Similarly, on multiple occasions during the course of the conspiracy members of the 149th Street IMPERIAL GANGSTERS would assist the 139th Street IMPERIAL GANGSTERS by "posting up" and patrolling in the Harbor section of East Chicago, Indiana.

17. Members of the enterprise and their associates managed the procurement, transfer, use, concealment, and disposal of firearms and dangerous weapons within the enterprise to protect gang-related territory, personnel, and operations, and to deter, eliminate, and retaliate against competitors and other rival criminal organizations and persons. On multiple occasions during the course of the conspiracy this included trading firearms with Chicago-based IMPERIAL GANGSTERS, and selling guns to Chicago-based IMPERIAL GANGSTERS. On multiple occasions during the course of the conspiracy members of the 149th Street IMPERIAL GANGSTERS and members of the 139th Street IMPERIAL GANGSTERS would trade guns with each other. Often a gun would be traded with another faction after it had been used in a shooting.

18. Members of the enterprise and their associates earned money for their members and regularly financed their activities through funds obtained in the illegal trafficking of controlled substances, including the distribution and possession with intent to distribute marijuana, cocaine, cocaine base and ecstasy. On multiple occasions during the course of the conspiracy members of the 139th Street IMPERIAL GANGSTERS and members of the 149th Street IMPERIAL GANGSTERS would supply each other with narcotics.

19. Members of the enterprise and their associates operated and conducted their affairs,

8

in part, through a financial system in which the leadership of the IMPERIAL GANGSTERS and others possessed, controlled, and otherwise maintained a monetary stash on behalf of the enterprise. As part of this practice, members of the enterprise and their associates paid requisite weekly or bi-weekly dues into the pot, which, in turn, the enterprise used to bail gang members out of jail, to help pay for the defense attorneys of gang members who had been charged with crimes, to send to commissary accounts of incarcerated gang members, and to purchase and sell firearms and controlled substances. At times, the members of the enterprise and their associates paid money into the pot by selling narcotics supplied by members of the gang.

20. Members of the enterprise and their associates hid, misrepresented, concealed and caused to be misrepresented, concealed, and hidden, the objectives of acts done in furtherance of the conspiracy, and used coded language and other means to avoid detection and apprehension by law enforcement authorities.

21. Members of the enterprise recruited and used juveniles to commit acts for the benefit of the enterprise.

22. In order to join the IMPERIAL GANGSTERS prospective members or "shorties" are given the option of shooting someone at the direction of the leadership of the gang, or receiving a two minute "violation," which entails high-ranking members of the gang punching the prospective member seventy times in the chest. While a "shorty" is attempting to join the gang his conduct is observed by the members of the IMPERIAL GANGSTERS. While a "shorty" is attempting to join the gang, he is considered a part of the IMPERIAL GANGSTER family and entitled to the full protection of the enterprise. The "shorty" is also subject to the rules and orders of the enterprise.

9

## Overt Acts

23. In furtherance of the conspiracy and to achieve the objects thereof, the conspirators performed or caused to be performed the following overt acts, among others, in the Northern District of Indiana and elsewhere:

a. On September 22, 2002, **DARMAILE CORTEZ SUTTON** conducted a hand to hand narcotics transaction and possessed a loaded firearm.

b. On October 27, 2002, **ACE CORTEZ** shot an individual.

c. On November 10, 2002, **DARMAILE CORTEZ SUTTON** sprayed IMPERIAL GANGSTER-related gang graffiti.

d. On November 11, 2002, **DARMAILE CORTEZ SUTTON** sprayed over rival gang graffiti.

e. On March 5, 2004, **ARMANDO JOSE VELASQUEZ** possessed a stolen firearm and shot at who he believed to be members of a rival gang.

f. On April 21, 2004, **DARMAILE CORTEZ SUTTON** possessed marijuana.

g. On May 4, 2004, **RAYMOND CAMPOS** possessed marijuana.

h. On June 7, 2004, members of the IMPERIAL GANGSTERS murdered Martin Navarro, who they believed to be a rival gang member.

i. On June 13, 2004, **ARMANDO JOSE VELASQUEZ** shot at who he believed to be rival gang members. One of these shots struck a bystander, Wayne McNair, killing him.

j. On July 24, 2004, **ACE CORTEZ** murdered Anuar David Paez a/k/a "Bronco," who he believed to be a rival gang member.

k. On April 9, 2005, **JASON MEDINA** possessed a firearm.

10

301

l. On July 24, 2005 **JASON MEDINA** murdered Guadalupe Trevino, who he believed to be a rival gang member.

m. On August 31, 2005, **DARMAILE CORTEZ SUTTON** and other members of the IMPERIAL GANGSTERS beat an individual after he refused their offer to join their gang.

n. On September 1, 2005, **DARMAILE CORTEZ SUTTON** possessed marijuana.

o. On March 17, 2006, members of the IMPERIAL GANGSTERS firebombed the residence of an individual who they believed to be a rival gang member.

p. On May 6, 2006, **EDDIE SERNA** possessed marijuana.

q. On August 3, 2006, **JASON MEDINA** possessed a firearm and marijuana.

r. On November 25, 2006, **EDWARD RAYE SERNA** possessed a firearm.

s. On March 22, 2007, GUILLERMO BRISENO attempted to steal a snow blower. When Juan Murillo Sr. and Juan Murillo Jr. attempted to thwart this robbery, GALO BENJAMIN FELICIANO and **ANTHONY BALDAZO** murdered Juan Murillo Sr. and shot and injured Juan Murillo Jr.

t. On June 2, 2007, **JASON MEDINA** pointed a firearm at an individual in a threatening manner.

u. On June 7, 2007, **JASON MEDINA**  pointed a firearm at an individual in a threatening manner.

v. On August 11, 2007, **RAYMOND CAMPOS** beat up an individual coming out of a bar after telling the individual that **CAMPOS** was an IMPERIAL GANGSTER and asking the individual which gang the individual belonged to.

w. On August 12, 2007, **JUSTIN WEAVER** possessed marijuana.

11

x. On September 16, 2007, **RICHARD REYES** murdered Rene Alonzo, who he believed to be a rival gang member.  During the course of shooting Rene Alonzo, **RICHARD REYES** also shot a second individual in the calf and thigh.

y. On September 26, 2007, **JUAN BRISENO** and DAVID ALMARAZ murdered Luis Ortiz a/k/a "Manolo," who they believed to be a rival gang member.

z. On September 29, 2007, **JUAN BRISENO** possessed a firearm.

aa. On October 20, 2007, **JUAN BRISENO** possessed a firearm.

bb. On October 22, 2007, GALO BENJAMIN FELICIANO fired a gun at an individual who he believed to be a rival gang member, while DAVID ALMARAZ served as the getaway driver.

cc. On February 27, 2008, **JULIUS SOLIS** sprayed IMPERIAL GANGSTER gang graffiti.

dd. On February 28, 2008, **DARMAILE CORTEZ SUTTON** possessed marijuana and a firearm.

ee. On March 25, 2008, **JULIAN GUILLERMO SERNA** murdered Mario Soriano, who he believed to be a member of a breakaway, "Renegade" faction of the 139th Street IMPERIAL GANGSTERS.

ff. On April 14, 2008, **JUAN BRISENO** possessed marijuana.

gg. On May 16, 2008, **JUAN BRISENO** possessed a firearm and shot at unknown individuals.

hh. On May 24, 2008, GUILLERMO BRISENO possessed a firearm and shot at three individuals.

12

ii. On June 3, 2008, **JUAN BRISENO** murdered Michael Sessum and Miguel Mejias a/k/a "King Nelly," who he believed to be rival gang members. Immediately after doing so, **JUAN BRISENO** shot into a residence, attempting to kill a third individual, (hereinafter "Victim 1") who was struck in the arm with a bullet while holding a young child.

jj. On June 29, 2008, **DARMAILE CORTEZ SUTTON** possessed marijuana.

kk. On July 20, 2008, **JUAN BRISENO** possessed a firearm.

ll. On July 23, 2008, **ROBERT LOCKHART** possessed marijuana.

mm. On July 31, 2008, **DARMAILE CORTEZ SUTTON** possessed marijuana.

nn. On August 16, 2008, **JULIUS SOLIS** flashed gang signs and shouted "Imperial Gangster Nation" at a group of people. **SOLIS** also brandished a firearm during this incident.

oo. On August 26, 2008, **ROBERT LOCKHART**, **JUAN BRISENO** and another individual attempted to murder a person known to the Grand Jury, (hereinafter "Victim 2"), by shooting him with a firearm.

pp. On October 9, 2008, **JUAN BRISENO** murdered Harris Brown.

qq. On January 23, 2009, **JUAN BRISENO** and two other members of the IMPERIAL GANGSTERS attempted to murder an individual who they believed to be a rival gang member, by shooting him with a firearm.

rr. On February 10, 2009, members of the IMPERIAL GANGSTERS attempted to murder two individuals who they believed to be rival gang members by shooting them with a firearm.

ss. On February 18, 2009, **JUAN BRISENO** and **JULIUS SOLIS** flashed IMPERIAL GANGSTER gang signs to each other.

13

tt. On February 20, 2009, **JUAN BRISENO** attempted to murder a person known to the Grand Jury, (hereinafter "Victim 3"), by shooting him with a firearm.

uu. On March 28, 2009, **JULIUS SOLIS** ordered another member of the IMPERIAL GANGSTERS to attempt to murder a person known to the Grand Jury, (hereinafter "Victim 4"), by shooting him with a firearm.

vv. On April 24, 2009, **JUAN BRISENO** and **DARMAILE CORTEZ SUTTON** possessed marijuana.

ww. On May 3, 2009, **JULIUS SOLIS** murdered Alonzo Cavazos, who he believed to be a member of a breakaway, "Renegade" faction of the 139th Street IMPERIAL GANGSTERS.

xx. On July 13, 2009, **JUAN BRISENO** shot at Pete Santos and other individuals who he believed to be rival gang members.

yy. On July 13, 2009, GALO BENJAMIN FELICIANO possessed over 700 rounds of ammunition.

zz. On August 2, 2009, **JUAN BRISENO** attempted to murder a person known to the Grand Jury, (hereinafter Victim 5"), by shooting him with a firearm.

aaa. On September 10, 2009, GALO BENJAMIN FELICIANO and another individual attempted to murder a person known to the Grand Jury, by shooting at him with a firearm.

bbb. On September 23, 2009, **MICHAEL ANTHONY CASTILLO, JUSTIN WEAVER** and **ROBERT LOCKHART** shot Cornelius Jordan, Romelle Jackson and Thomas Delacruz, who they believed to be rival gang members.

ccc. On October 3, 2009, **JUAN BRISENO** possessed marijuana, a firearm, ammunition and a bulletproof vest.

14

305

ddd.  On October 3, 2009, **MICHAEL ANTHONY CASTILLO** possessed marijuana, a scale and gang paraphernalia.

eee.  On October 3, 2009, **JUSTIN WEAVER** possessed marijuana.

fff.  On October 3, 2009, **DARMAILE CORTEZ SUTTON** possessed an assault rifle and sixty rounds of ammunition.

ggg.  On February 7, 2010, **JUAN BRISENO**, **ROBERT LOCKHART** and GALO BENJAMIN FELICIANO  murdered Miguel Colon, who they believed to be a rival gang member.

hhh.  On February 9, 2010, **JULIAN GUILLERMO SERNA** possessed a firearm.

iii.  On March 19, 2010, **JUAN BRISENO** shot an individual who he believed to be a rival gang member.

jjj.  On March 26, 2010, GALO BENJAMIN FELICIANO and JOSEPH RENE TORRES murdered Jesus Alvarez, who they mistakenly believed to be a rival gang member.

kkk.  On April 6, 2010, JOSEPH RENE TORRES shot Alejandro Sanchez, who he believed to be a rival gang member.

lll.  On April 28, 2010, **MICHAEL ANTHONY CASTILLO** murdered Peter Santos, who he believed to be a rival gang member.

mmm.  On May 24, 2010, **MICHAEL ANTHONY CASTILLO** possessed marijuana.

nnn.  On June 16, 2010, **JUAN BRISENO** possessed a firearm.

ooo.  On June 19, 2010, **JUAN BRISENO** murdered Latroy Howard, who he believed to be a rival gang member.

ppp.  On July 1, 2010, **JUAN BRISENO** possessed marijuana.

15

qqq.  On September 21, 2010, **JUAN BRISENO**, who was incarcerated, wrote a letter to KELVIN JEFFERSON BELTRAN telling him that "these Mudafukkers (Federal law enforcement) aint playing they trying to catch anybody up on sum shit."  He thanked KELVIN JEFFERSON BELTRAN for the money that KELVIN JEFFERSON BELTRAN and other IMPERIAL GANGSTERS had put on his jail commissary account. **BRISENO** told BELTRAN that he hoped that BELTRAN was keeping an eye on younger IMPERIAL GANGSTERS and taking care of them, just like **BRISENO** did for BELTRAN.  **BRISENO** requested that BELTRAN provide him with some money to hire an attorney.

rrr.  On October 6, 2010, **JUAN BRISENO**, who was incarcerated, wrote a letter to KELVIN JEFFERSON BELTRAN instructing him on how to recruit new young members to the IMPERIAL GANGSTERS.  **JUAN BRISENO** told KELVIN JEFFERSON BELTRAN that he doesn't want to see their gang fall to pieces.  **BRISENO** also warned BELTRAN to be careful around the 139th Street IMPERIAL GANGSTERS, because "I've been hearing they on sum bull shit."

sss.  On February 1, 2011, **JUAN BRISENO**, who was incarcerated, wrote a letter to KELVIN JEFFERSON BELTRAN telling him not to worry that the cocaine out there is of poor quality, as hopefully **JUAN BRISENO** will meet a new source of supply for cocaine while incarcerated who can "plug" (supply) **BRISENO** when **BRISENO** is released from jail.

ttt.  On February 22, 2011, **JULIAN GUILLERMO SERNA** and two other individuals robbed two people at gun point, taking from them marijuana, United States Currency, a watch and other items.

uuu.  On March 14, 2011, JUSTIN WEAVER possessed marijuana.

16

vvv. On May 26, 2011, **ARMANDO JOSE VELASQUEZ** possessed a digital scale and gang-related drawings.

www. On June 6, 2011, **JASON MEDINA** and **EDWARD RAYE SERNA** attempted to murder a person known to the Grand Jury, (hereinafter "Victim 6"), by shooting at him with a firearm.

xxx. On June 7, 2011, **JULIAN GUILLERMO SERNA** assisted **JASON MEDINA** in looking for the gun that **MEDINA** discarded after using it to shoot at Victim 6.

yyy. On August 9, 2011, **JUAN BRISENO**, who was incarcerated, wrote a letter to KELVIN JEFFERSON BELTRAN telling him that he just wants all of the IMPERIAL GANGSTERS out there to come together and fix things. **BRISENO** warned BELTRAN that if BELTRAN writes back, don't put any "gang shit" in there because the authorities are watching him. **BRISENO** also warned BELTRAN to be careful because the "Feds" are out there.

zzz. On October 11, 2011, **EDWARD RAYE SERNA** sold a firearm to a convicted felon who had traveled from Illinois to Indiana to purchase the firearm.

aaaa. On October 18, 2011, **JUAN BRISENO**, who was incarcerated, wrote a letter to KELVIN JEFFERSON BELTRAN telling him that **BRISENO** was upset that Angel "Beef" Santos was killed while **JUAN BRISENO** was incarcerated and **BRISENO** "couldn't do shit about it."

bbbb. On October 26, 2011, **ARMANDO JOSE VELASQUEZ** conducted a hand to hand narcotics transaction.

cccc. On November 7, 2011, **EDWARD RAYE SERNA** possessed marijuana, ammunition, and gang-related clothing.

17

308

dddd. On December 3, 2011, **ARMANDO JOSE VELASQUEZ** attempted to murder a person known to the Grand Jury, (hereinafter "Victim 7"), by shooting him multiple times with a firearm.

eeee. On January 31, 2012, **ROBERT LOCKHART** possessed a firearm.

### Notice of Enhanced Sentencing

24. On or about July 24, 2004, in the Northern District of Indiana, **ACE CORTEZ** knowingly and intentionally killed Anuar David Paez in violation of Indiana Penal Code Sections 35-42-1-1 and 35-41-2-4.

25. On or about July 24, 2005, in the Northern District of Indiana, **JASON MEDINA** knowingly and intentionally killed Guadalupe Trevino in violation of Indiana Penal Code Sections 35-42-1-1 and 35-41-2-4.

26. On or about March 22, 2007, in the Northern District of Indiana, **ANTHONY BALDAZO** knowingly and intentionally killed Juan Murillo Sr., in violation of Indiana Penal Code Sections 35-42-1-1 and 35-41-2-4.

27. On or about September 16, 2007, in the Northern District of Indiana, **RICHARD REYES** knowingly and intentionally killed Rene Alonzo, in violation of Indiana Penal Code Sections 35-42-1-1 and 35-41-2-4.

28. On or about September 26, 2007, in the Northern District of Indiana, **JUAN BRISENO** knowingly and intentionally killed Luis Ortiz, in violation of Indiana Penal Code Sections 35-42-1-1 and 35-41-2-4.

29. On or about March 25, 2008, in the Northern District of Indiana, **JULIAN**

18

**GUILLERMO SERNA** knowingly and intentionally killed Mario Soriano, in violation of Indiana Penal Code Sections 35-42-1-1 and 35-41-2-4.

30. On or about June 3, 2008, in the Northern District of Indiana, **JUAN BRISENO** knowingly and intentionally killed Michael Sessum, in violation of Indiana Penal Code Sections 35-42-1-1 and 35-41-2-4.

31. On or about June 3, 2008, in the Northern District of Indiana, **JUAN BRISENO** knowingly and intentionally killed Miguel Mejias, in violation of Indiana Penal Code Sections 35-42-1-1 and 35-41-2-4.

32. On or about October 9, 2008, in the Northern District of Indiana, **JUAN BRISENO** knowingly and intentionally killed Harris Brown, in violation of Indiana Penal Code Sections 35-42-1-1 and 35-41-2-4.

33. On or about February 7, 2010, in the Northern District of Indiana, **JUAN BRISENO** and **ROBERT LOCKHART** knowingly and intentionally killed Miguel Colon, in violation of Indiana Penal Code Sections 35-42-1-1 and 35-41-2-4.

34. On or about June 19, 2010, in the Northern District of Indiana, **JUAN BRISENO** knowingly and intentionally killed Latroy Howard, in violation of Indiana Penal Code Sections 35-42-1-1 and 35-41-2-4.

All in violation of Title 18, United States Code, Section 1962(d).

19

## COUNT 2

### (Conspiracy to Possess with Intent to Distribute and Distribute Cocaine and Marijuana)

**THE GRAND JURY FURTHER CHARGES:**

From at least September, 2002, the exact date being unknown to the Grand Jury, and

continuing into at least the date of this Third Superseding Indictment, both dates being

approximate and inclusive, in the Northern District of Indiana and elsewhere,

> **JUAN BRISENO a/k/a "Tito,"**
> **JUSTIN WEAVER a/k/a "White Boy,"**
> **MICHAEL ANTHONY CASTILLO,**
> **JASON MEDINA a/k/a "Burns,"**
> **EDWARD RAYE SERNA a/k/a "Sern,"**
> **ROBERT LOCKHART a/k/a "Jackson"**
> **ARMANDO JOSE VELASQUEZ a/k/a "Money," and**
> **ANTHONY BALDAZO a/k/a "Tall Folks,"**
> **SALVADOR CHAVEZ a/k/a "Black," "Dirty Sal,"**
> **RAYMOND CAMPOS a/k/a "Cookie Face,"**
> **ACE CORTEZ,**
> **JULIAN GUILLERMO SERNA a/k/a "Big Ju,"**
> **JULIUS SOLIS a/k/a "Ju Ju,"**
> **DARMAILE CORTEZ SUTTON a/k/a "D-Money,"**
> **EDDIE TORRES a/k/a "Macho" and**
> **RICHARD REYES**

defendants herein, did knowingly and intentionally combine, conspire, confederate and agree

one with another together with GALO BENJAMIN FELICIANO, GUILLERMO BRISENO,

JOSEPH RENE TORRES, DAVID ALMARAZ, ALEJANDRO BALBOA LARA, KELVIN

JEFFERSON BELTRAN, and others known and unknown to the Grand Jury, to commit the

following offense against the United States: to knowingly and intentionally possess with intent to

distribute and distribute one hundred (100) kilograms or more of a mixture and substance

containing a detectable amount of marijuana, a schedule I controlled substance and five (5)

20

312

kilograms or more of a mixture and substance containing a detectable amount of cocaine, a

schedule II controlled substance;

All in violation of Title 21, United States Code, Section 846.

## COUNT 3

### (Murder in Aid of Racketeering Activity)

**THE GRAND JURY FURTHER CHARGES:**

1. At all times relevant to this Third Superseding Indictment the IMPERIAL GANGSTERS, as more fully described in paragraphs 1 through 8 of Count 1 of this Third Superseding Indictment, which are re-alleged and incorporated by reference as though fully set forth herein, constituted an enterprise as defined in 18 U.S.C. § 1959(b)(2), namely IMPERIAL GANGSTERS, that is, a group of individuals associated in fact which is engaged in, and the activities of which affected, interstate and foreign commerce. The enterprise constituted an ongoing organization whose members functioned as a continuing unit for a common purpose of achieving the objectives of the enterprise.

2. At all times relevant to this Third Superseding Indictment, the above-described enterprise, through its members and associates, engaged in racketeering activity as defined in 18 U.S.C. §§ 1959(b)(1) and 1961(1), namely, narcotics trafficking in violation of 21 U.S.C. §§ 841 and 846, and acts involving murder in violation of Indiana Penal Code, Section 35-42-1-1, 35-41-2-4, and 35-41-5-1.

3. On or about July 24, 2004, in the Northern District of Indiana,

**ACE CORTEZ,**

defendant herein, for the purpose of maintaining and increasing position in the IMPERIAL GANGSTERS, an enterprise engaged in racketeering activity, murdered Anuar David Paez a/k/a "Bronco," in violation of Indiana Penal Code, Sections 35-42-1-1 and 35-41-2-4.

All in violation of Title 18, United States Code, Section 1959(a)(1), and Title 18, United

22

313

States Code, Section 2.

314

23

## COUNT 4

### (Murder Resulting From the Use and Carrying of Firearm During and in Relation to a Crime of Violence and Drug Trafficking Crime)

**THE GRAND JURY FURTHER CHARGES:**

1. Paragraphs 1 through 8 of Count 1 of this Third Superseding Indictment, which are re-alleged and incorporated by reference as though set forth fully herein.

2. On or about July 24, 2004, in the Northern District of Indiana,

### ACE CORTEZ,

defendant herein, did knowingly carry, use, and discharge a firearm during and in relation to a crime of violence and drug trafficking crime, that is, to murder in aid of racketeering activity, as set forth in Count 3 of this Third Superseding Indictment, conspiracy to commit racketeering activity, as set forth in Count 1 of this Third Superseding Indictment, and conspiracy to possess with intent to distribute and distribute marijuana and cocaine, as set forth in Count 2 of this Third Superseding Indictment, all of which are incorporated here, did cause the death of a person through the use of a firearm, which killing is a murder defined in 18 U.S.C. § 1111, in that the defendant, with malice aforethought, unlawfully killed a human being, that is Anuar David Paez a/k/a "Bronco," willfully, deliberately, and maliciously.

All in violation of Title 18, United States Code, Section 924( c) and 924(j), and Title 18, United States Code, Section 2.

24

## COUNT 5

### (Murder in Aid of Racketeering Activity)

**THE GRAND JURY FURTHER CHARGES:**

1. Paragraphs 1 through 2 of Count 3 of this Third Superseding Indictment are re-alleged and incorporated by reference as though set forth fully herein.

2. On or about July 24, 2005, in the Northern District of Indiana,

**JASON MEDINA a/k/a "Burns,"**

defendant herein, for the purpose of maintaining and increasing position in the IMPERIAL GANGSTERS, an enterprise engaged in racketeering activity, murdered Guadalupe Trevino in violation of Indiana Penal Code, Sections 35-42-1-1 and 35-41-2-4.

All in violation of Title 18, United States Code, Section 1959(a)(1), and Title 18, United States Code, Section 2.

316

317

## COUNT 6

### (Murder Resulting From the Use and Carrying of Firearm During and in Relation to a Crime of Violence and Drug Trafficking Crime)

**THE GRAND JURY FURTHER CHARGES:**

1. Paragraphs 1 through 8 of Count 1 of this Third Superseding Indictment, which are re-alleged and incorporated by reference as though set forth fully herein.

2. On or about July 24, 2005, in the Northern District of Indiana,

**JASON MEDINA a/k/a "Burns,"**

defendant herein, did knowingly carry, use, and discharge a firearm during and in relation to a crime of violence and drug trafficking crime, that is, to murder in aid of racketeering activity, as set forth in Count 5 of this Third Superseding Indictment, conspiracy to commit racketeering activity, as set forth in Count 1 of this Third Superseding Indictment, and conspiracy to possess with intent to distribute and distribute marijuana and cocaine, as set forth in Count 2 of this Third Superseding Indictment, all of which are incorporated here, did cause the death of a person through the use of a firearm, which killing is a murder defined in 18 U.S.C. § 1111, in that the defendant, with malice aforethought, unlawfully killed a human being, that is Guadalupe Trevino, willfully, deliberately, and maliciously.

All in violation of Title 18, United States Code, Section 924( c) and 924(j), and Title 18, United States Code, Section 2.

26

## COUNT 7

### (Murder in Aid of Racketeering Activity)

**THE GRAND JURY FURTHER CHARGES:**

1. Paragraphs 1 through 2 of Count 3 of this Third Superseding Indictment are re-alleged and incorporated by reference as though set forth fully herein.

2. On or about March 22, 2007, in the Northern District of Indiana,

**ANTHONY BALDAZO a/k/a "Tall Folks,"**

defendant herein, for the purpose of maintaining and increasing position in the IMPERIAL GANGSTERS, an enterprise engaged in racketeering activity, murdered Juan Murillo Sr., in violation of Indiana Penal Code, Sections 35-42-1-1 and 35-41-2-4.

All in violation of Title 18, United States Code, Section 1959(a)(1), and Title 18, United States Code, Section 2.

318

## COUNT 8

### (Murder Resulting From the Use and Carrying of Firearm During and in Relation to a Crime of Violence and Drug Trafficking Crime)

**THE GRAND JURY FURTHER CHARGES:**

1. Paragraphs 1 through 8 of Count 1 of this Third Superseding Indictment, which are re-alleged and incorporated by reference as though set forth fully herein.

2. On or about March 22, 2007, in the Northern District of Indiana,

**ANTHONY BALDAZO a/k/a "Tall Folks,"**

defendant herein, did knowingly carry, use, and discharge a firearm during and in relation to a crime of violence and drug trafficking crime, that is, to murder in aid of racketeering activity, as set forth in Count 7 of this Third Superseding Indictment, conspiracy to commit racketeering activity, as set forth in Count 1 of this Third Superseding Indictment, and conspiracy to possess with intent to distribute and distribute marijuana and cocaine, as set forth in Count 2 of this Third Superseding Indictment, all of which are incorporated here, did cause the death of a person through the use of a firearm, which killing is a murder defined in 18 U.S.C. § 1111, in that the defendant, with malice aforethought, unlawfully killed a human being, that is Juan Murillo Sr., willfully, deliberately, and maliciously.

All in violation of Title 18, United States Code, Section 924( c) and 924(j), and Title 18, United States Code, Section 2.

28

319

320

## COUNT 9

### (Murder in Aid of Racketeering Activity)

**THE GRAND JURY FURTHER CHARGES:**

1. Paragraphs 1 through 2 of Count 3 of this Third Superseding Indictment are re-alleged and incorporated by reference as though set forth fully herein.

2. On or about September 16, 2007, in the Northern District of Indiana,

**RICHARD REYES,**

defendant herein, for the purpose of maintaining and increasing position in the IMPERIAL GANGSTERS, an enterprise engaged in racketeering activity, murdered Rene Alonzo, in violation of Indiana Penal Code, Sections 35-42-1-1 and 35-41-2-4.

All in violation of Title 18, United States Code, Section 1959(a)(1), and Title 18, United States Code, Section 2.

29

320

## COUNT 10

### (Murder Resulting From the Use and Carrying of Firearm During and in Relation to a Crime of Violence and Drug Trafficking Crime)

**THE GRAND JURY FURTHER CHARGES:**

1. Paragraphs 1 through 8 of Count 1 of this Third Superseding Indictment, which are re-alleged and incorporated by reference as though set forth fully herein.

2. On or about September 16, 2007, in the Northern District of Indiana,

**RICHARD REYES,**

defendant herein, did knowingly carry, use, and discharge a firearm during and in relation to a crime of violence and drug trafficking crime, that is, to murder in aid of racketeering activity, as set forth in Count 9 of this Third Superseding Indictment, conspiracy to commit racketeering activity, as set forth in Count 1 of this Third Superseding Indictment, and conspiracy to possess with intent to distribute and distribute marijuana and cocaine, as set forth in Count 2 of this Third Superseding Indictment, all of which are incorporated here, did cause the death of a person through the use of a firearm, which killing is a murder defined in 18 U.S.C. § 1111, in that the defendant, with malice aforethought, unlawfully killed a human being, that is Rene Alonzo, willfully, deliberately, and maliciously.

All in violation of Title 18, United States Code, Section 924( c) and 924(j), and Title 18, United States Code, Section 2.

30

Case: 15-2347    Document: 35    Filed: 07/27/2016    Pages: 4186

322

## COUNT 11

### (Murder in Aid of Racketeering Activity)

**THE GRAND JURY FURTHER CHARGES:**

1. Paragraphs 1 through 2 of Count 3 of this Third Superseding Indictment are re-alleged and incorporated by reference as though set forth fully herein.

2. On or about September 26, 2007, in the Northern District of Indiana,

**JUAN BRISENO a/k/a "Tito,"**

defendant herein, for the purpose of maintaining and increasing position in the IMPERIAL GANGSTERS, an enterprise engaged in racketeering activity, murdered Luis Ortiz a/k/a "Manolo," in violation of Indiana Penal Code, Sections 35-42-1-1 and 35-41-2-4.

All in violation of Title 18, United States Code, Section 1959(a)(1), and Title 18, United States Code, Section 2.

Case: 15-2347 Document: 35 Filed: 07/27/2016 Pages: 4186

## COUNT 12

### (Murder Resulting From the Use and Carrying of Firearm During and in Relation to a Crime of Violence and Drug Trafficking Crime)

**THE GRAND JURY FURTHER CHARGES:**

1. Paragraphs 1 through 8 of Count 1 of this Third Superseding Indictment, which are re-alleged and incorporated by reference as though set forth fully herein.

2. On or about September 26, 2007, in the Northern District of Indiana,

### JUAN BRISENO a/k/a "Tito,"

defendant herein, did knowingly carry, use, and discharge a firearm during and in relation to a crime of violence and drug trafficking crime, that is, to murder in aid of racketeering activity, as set forth in Count 11 of this Third Superseding Indictment, conspiracy to commit racketeering activity, as set forth in Count 1 of this Third Superseding Indictment, and conspiracy to possess with intent to distribute and distribute marijuana and cocaine, as set forth in Count 2 of this Third Superseding Indictment, all of which are incorporated here, did cause the death of a person through the use of a firearm, which killing is a murder defined in 18 U.S.C. § 1111, in that the defendant, with malice aforethought, unlawfully killed a human being, that is Luis Ortiz a/k/a "Manolo," willfully, deliberately, and maliciously.

All in violation of Title 18, United States Code, Section 924( c) and 924(j), and Title 18, United States Code, Section 2.

323

## COUNT 13

### (Murder in Aid of Racketeering Activity)

**THE GRAND JURY FURTHER CHARGES:**

1. Paragraphs 1 through 2 of Count 3 of this Third Superseding Indictment are re-alleged and incorporated by reference as though set forth fully herein.

2. On or about March 25, 2008, in the Northern District of Indiana,

### JULIAN GUILLERMO SERNA,

defendant herein, for the purpose of maintaining and increasing position in the IMPERIAL GANGSTERS, an enterprise engaged in racketeering activity, murdered Mario Soriano, in violation of Indiana Penal Code, Sections 35-42-1-1 and 35-41-2-4.

All in violation of Title 18, United States Code, Section 1959(a)(1), and Title 18, United States Code, Section 2.

## COUNT 14

### (Murder Resulting From the Use and Carrying of Firearm During and in Relation to a Crime of Violence and Drug Trafficking Crime)

**THE GRAND JURY FURTHER CHARGES:**

1. Paragraphs 1 through 8 of Count 1 of this Third Superseding Indictment, which are re-alleged and incorporated by reference as though set forth fully herein.

2. On or about March 25, 2008, in the Northern District of Indiana,

### JULIAN GUILLERMO SERNA,

defendant herein, did knowingly carry, use, and discharge a firearm during and in relation to a crime of violence and drug trafficking crime, that is, to murder in aid of racketeering activity, as set forth in Count 13 of this Third Superseding Indictment, conspiracy to commit racketeering activity, as set forth in Count 1 of this Third Superseding Indictment, and conspiracy to possess with intent to distribute and distribute marijuana and cocaine, as set forth in Count 2 of this Third Superseding Indictment, all of which are incorporated here, did cause the death of a person through the use of a firearm, which killing is a murder defined in 18 U.S.C. § 1111, in that the defendant, with malice aforethought, unlawfully killed a human being, that is Mario Soriano, willfully, deliberately, and maliciously.

All in violation of Title 18, United States Code, Section 924( c) and 924(j), and Title 18, United States Code, Section 2.

326

## COUNT 15

### (Murder in Aid of Racketeering Activity)

**THE GRAND JURY FURTHER CHARGES:**

1. Paragraphs 1 through 2 of Count 3 of this Third Superseding Indictment are re-alleged and incorporated by reference as though set forth fully herein.

2. On or about June 3, 2008, in the Northern District of Indiana,

### JUAN BRISENO a/k/a "Tito,"

defendant herein, for the purpose of maintaining and increasing position in the IMPERIAL GANGSTERS, an enterprise engaged in racketeering activity, murdered Michael Sessum, in violation of Indiana Penal Code, Sections 35-42-1-1 and 35-41-2-4.

All in violation of Title 18, United States Code, Section 1959(a)(1), and Title 18, United States Code, Section 2.

326

## COUNT 16

### (Murder Resulting From the Use and Carrying of Firearm During and in Relation to a Crime of Violence and Drug Trafficking Crime)

**THE GRAND JURY FURTHER CHARGES:**

1. Paragraphs 1 through 8 of Count 1 of this Third Superseding Indictment, which are re-alleged and incorporated by reference as though set forth fully herein.

2. On or about June 3, 2008, in the Northern District of Indiana,

**JUAN BRISENO a/k/a "Tito,"**

defendant herein, did knowingly carry, use, and discharge a firearm during and in relation to a crime of violence and drug trafficking crime, that is, to murder in aid of racketeering activity, as set forth in Count 15 of this Third Superseding Indictment, conspiracy to commit racketeering activity, as set forth in Count 1 of this Third Superseding Indictment, and conspiracy to possess with intent to distribute and distribute marijuana and cocaine, as set forth in Count 2 of this Third Superseding Indictment, all of which are incorporated here, did cause the death of a person through the use of a firearm, which killing is a murder defined in 18 U.S.C. § 1111, in that the defendant, with malice aforethought, unlawfully killed a human being, that is Michael Sessum, willfully, deliberately, and maliciously.

All in violation of Title 18, United States Code, Section 924( c) and 924(j), and Title 18, United States Code, Section 2.

36

## COUNT 17

### (Murder in Aid of Racketeering Activity)

**THE GRAND JURY FURTHER CHARGES:**

1. Paragraphs 1 through 2 of Count 3 of this Third Superseding Indictment are re-alleged and incorporated by reference as though set forth fully herein.

2. On or about June 3, 2008, in the Northern District of Indiana,

### JUAN BRISENO a/k/a "Tito,"

defendant herein, for the purpose of maintaining and increasing position in the IMPERIAL GANGSTERS, an enterprise engaged in racketeering activity, murdered Miguel Mejias a/k/a "King Nelly," in violation of Indiana Penal Code, Sections 35-42-1-1 and 35-41-2-4.

All in violation of Title 18, United States Code, Section 1959(a)(1), and Title 18, United States Code, Section 2.

37

328

## COUNT 18

### (Murder Resulting From the Use and Carrying of Firearm During and in Relation to a Crime of Violence and Drug Trafficking Crime)

**THE GRAND JURY FURTHER CHARGES:**

1. Paragraphs 1 through 8 of Count 1 of this Third Superseding Indictment, which are re-alleged and incorporated by reference as though set forth fully herein.

2. On or about June 3, 2008, in the Northern District of Indiana,

### JUAN BRISENO a/k/a "Tito,"

defendant herein, did knowingly carry, use, and discharge a firearm during and in relation to a crime of violence and drug trafficking crime, that is, to murder in aid of racketeering activity, as set forth in Count 17 of this Third Superseding Indictment, conspiracy to commit racketeering activity, as set forth in Count 1 of this Third Superseding Indictment, and conspiracy to possess with intent to distribute and distribute marijuana and cocaine, as set forth in Count 2 of this Third Superseding Indictment, all of which are incorporated here, did cause the death of a person through the use of a firearm, which killing is a murder defined in 18 U.S.C. § 1111, in that the defendant, with malice aforethought, unlawfully killed a human being, that is Miguel Mejias a/k/a "King Nelly," willfully, deliberately, and maliciously.

All in violation of Title 18, United States Code, Section 924( c) and 924(j), and Title 18, United States Code, Section 2.

38

329

## COUNT 19

### (Murder in Aid of Racketeering Activity)

**THE GRAND JURY FURTHER CHARGES:**

1. Paragraphs 1 through 2 of Count 3 of this Third Superseding Indictment are re-alleged and incorporated by reference as though set forth fully herein.

2. On or about October 9, 2008, in the Northern District of Indiana,

### JUAN BRISENO a/k/a "Tito,"

defendant herein, for the purpose of maintaining and increasing position in the IMPERIAL GANGSTERS, an enterprise engaged in racketeering activity, murdered Harris Brown in violation of Indiana Penal Code, Sections 35-42-1-1 and 35-41-2-4.

All in violation of Title 18, United States Code, Section 1959(a)(1), and Title 18, United States Code, Section 2.

39

330

## COUNT 20

### (Murder Resulting From the Use and Carrying of Firearm During and in Relation to a Crime of Violence and Drug Trafficking Crime)

**THE GRAND JURY FURTHER CHARGES:**

1. Paragraphs 1 through 8 of Count 1 of this Third Superseding Indictment, which are re-alleged and incorporated by reference as though set forth fully herein.

2. On or about October 9, 2008, in the Northern District of Indiana,

**JUAN BRISENO a/k/a "Tito,"**

defendant herein, did knowingly carry, use, and discharge a firearm during and in relation to a crime of violence and drug trafficking crime, that is, to murder in aid of racketeering activity, as set forth in Count 19 of this Third Superseding Indictment, conspiracy to commit racketeering activity, as set forth in Count 1 of this Third Superseding Indictment, and conspiracy to possess with intent to distribute and distribute marijuana and cocaine, as set forth in Count 2 of this Third Superseding Indictment, all of which are incorporated here, did cause the death of a person through the use of a firearm, which killing is a murder defined in 18 U.S.C. § 1111, in that the defendant, with malice aforethought, unlawfully killed a human being, that is Harris Brown, willfully, deliberately, and maliciously.

All in violation of Title 18, United States Code, Section 924( c) and 924(j), and Title 18, United States Code, Section 2.

40

## COUNT 21

### (Murder in Aid of Racketeering Activity)

**THE GRAND JURY FURTHER CHARGES:**

1. Paragraphs 1 through 2 of Count 3 of this Third Superseding Indictment are re-alleged and incorporated by reference as though set forth fully herein.

2. On or about February 7, 2010, in the Northern District of Indiana,

**JUAN BRISENO a/k/a "Tito,"**

defendant herein, and others known and unknown to the grand jury, for the purpose of maintaining and increasing position in the IMPERIAL GANGSTERS, an enterprise engaged in racketeering activity, murdered Miguel Colon a/k/a "Migs" in violation of Indiana Penal Code, Section 35-42-1-1 and 35-41-2-4.

All in violation of Title 18, United States Code, Section 1959(a)(1), and Title 18, United States Codes, Section 2.

Case: 15-2347  Document: 35  Filed: 07/27/2016  Pages: 4186

## COUNT 22

### (Murder Resulting From the Use and Carrying of Firearm During and in Relation to a Crime of Violence and Drug Trafficking Crime)

**THE GRAND JURY FURTHER CHARGES:**

1. Paragraphs 1 through 8 of Count 1 of this Third Superseding Indictment, which are re-alleged and incorporated by reference as though set forth fully herein.

2. On or about February 7, 2010, in the Northern District of Indiana,

**JUAN BRISENO a/k/a "Tito,"**

defendant herein, and others known and unknown to the grand jury, did knowingly carry, use, and discharge firearms during and in relation to a crime of violence and drug trafficking crime, that is, to murder in aid of racketeering activity, as set forth in Count 21 of this Third Superseding Indictment, conspiracy to commit racketeering activity, as set forth in Count 1 of this Third Superseding Indictment, and conspiracy to possess with intent to distribute and distribute marijuana and cocaine, as set forth in Count 2 of this Third Superseding Indictment, all of which are incorporated here, did cause the death of a person through the use of a firearm, which killing is a murder defined in 18 U.S.C. § 1111, in that the defendants, with malice aforethought, unlawfully killed a human being, that is Miguel Colon a/k/a "Migs," willfully, deliberately, and maliciously.

All in violation of Title 18, United States Code, Section 924( c) and 924(j), and Title 18, United States Code, Section 2.

333

## COUNT 23

### (Murder in Aid of Racketeering Activity)

**THE GRAND JURY FURTHER CHARGES:**

1. Paragraphs 1 through 2 of Count 3 of this Third Superseding Indictment are re-alleged and incorporated by reference as though set forth fully herein.

2. On or about June 19, 2010, in the Northern District of Indiana,

### JUAN BRISENO a/k/a "Tito,"

defendant herein, for the purpose of maintaining and increasing position in the IMPERIAL GANGSTERS, an enterprise engaged in racketeering activity, murdered Latroy Howard in violation of Indiana Penal Code, Section 35-42-1-1 and 35-41-2-4.

All in violation of Title 18, United States Code, Section 1959(a)(1), and Title 18, United States Code, Section 2.

334

## COUNT 24

### (Murder Resulting From the Use and Carrying of Firearm During and in Relation to a Crime of Violence and Drug Trafficking Crime)

**THE GRAND JURY FURTHER CHARGES:**

1. Paragraphs 1 through 8 of Count 1 of this Third Superseding Indictment, which are re-alleged and incorporated by reference as though set forth fully herein.

2. On or about June 19, 2010, in the Northern District of Indiana,

### JUAN BRISENO a/k/a "Tito,"

defendant herein, did knowingly carry, use, and discharge firearms during and in relation to a crime of violence and drug trafficking crime, that is, to murder in aid of racketeering activity, as set forth in Count 23 of this Third Superseding Indictment, conspiracy to commit racketeering activity, as set forth in Count 1 of this Third Superseding Indictment, and conspiracy to possess with intent to distribute and distribute marijuana and cocaine, as set forth in Count 2 of this Third Superseding Indictment, all of which are incorporated here, did cause the death of a person through the use of a firearm, which killing is a murder defined in 18 U.S.C. § 1111, in that the defendant, with malice aforethought, unlawfully killed a human being, that is Latroy Howard, willfully, deliberately, and maliciously.

All in violation of Title 18, United States Code, Section 924( c) and 924(j), and Title 18, United States Code, Section 2.

335

336

## COUNT 25

### (Attempted Murder in Aid of Racketeering Activity)

**THE GRAND JURY FURTHER CHARGES:**

1. Paragraphs 1 through 2 of Count 3 of this Third Superseding Indictment are re-alleged and incorporated by reference as though set forth fully herein.

2. On or about March 22, 2007, in the Northern District of Indiana,

### ANTHONY BALDAZO a/k/a "Tall Folks,"

defendant herein, for the purpose of maintaining and increasing position in the IMPERIAL GANGSTERS, an enterprise engaged in racketeering activity, attempted to murder Juan Murillo, Jr., a person known to the Grand Jury, in violation of Indiana Penal Code, Sections 35-42-1-1, 35-41-2-4 and 35-41-5-1.

All in violation of Title 18, United States Code, Section 1959(a)(5), and Title 18, United States Code, Section 2.

## COUNT 26

### (Attempted Murder in Aid of Racketeering Activity)

**THE GRAND JURY FURTHER CHARGES:**

1. Paragraphs 1 through 2 of Count 3 of this Third Superseding Indictment are re-alleged and incorporated by reference as though set forth fully herein.

2. On or about June 3, 2008, in the Northern District of Indiana,

**JUAN BRISENO a/k/a "Tito,"**

defendant herein, for the purpose of maintaining and increasing position in the IMPERIAL GANGSTERS, an enterprise engaged in racketeering activity, attempted to murder Victim 1, a person known to the Grand Jury, in violation of Indiana Penal Code, Sections 35-42-1-1, 35-41-2-4 and 35-41-5-1.

All in violation of Title 18, United States Code, Section 1959(a)(5), and Title 18, United States Code, Section 2.

46

## COUNT 27

### (Use of a Firearm During and in Relation to a Federal Crime of Violence and Drug Trafficking Crime)

**THE GRAND JURY FURTHER CHARGES:**

1. Paragraphs 1 through 8 of Count 1 of this Third Superseding Indictment, which are re-alleged and incorporated by reference as though set forth fully herein.

2. On or about June 3, 2008, in the Northern District of Indiana,

**JUAN BRISENO a/k/a "Tito,"**

defendant herein, did knowingly and intentionally use a firearm during and in relation to a crime of violence and drug trafficking crime, for which he may be prosecuted in a court of the United States, to wit: attempted murder in aid of racketeering activity, as set forth in Count 26 of this Third Superseding Indictment, conspiracy to commit racketeering activity, as set forth in Count 1 of this Third Superseding Indictment, and conspiracy to possess with intent to distribute and distribute marijuana and cocaine, as set forth in Count 2 of this Third Superseding Indictment.

All in violation of Title 18, United States Code, Section 924( c), and Title 18, United States Code, Section 2.

47

338

339

## COUNT 28

### (Attempted Murder in Aid of Racketeering Activity)

**THE GRAND JURY FURTHER CHARGES:**

1. Paragraphs 1 through 2 of Count 3 of this Third Superseding Indictment are re-alleged and incorporated by reference as though set forth fully herein.

2. On or about August 26, 2008, in the Northern District of Indiana,

### JUAN BRISENO a/k/a "Tito,"

defendant herein, for the purpose of maintaining and increasing position in the IMPERIAL GANGSTERS, an enterprise engaged in racketeering activity, attempted to murder Victim 2, a person known to the Grand Jury, in violation of Indiana Penal Code, Sections 35-42-1-1, 35-41-2-4 and 35-41-5-1.

All in violation of Title 18, United States Code, Section 1959(a)(5), and Title 18, United States Code, Section 2.

48

## COUNT 29

### (Use of a Firearm During and in Relation to a Federal Crime of Violence and Drug Trafficking Crime)

**THE GRAND JURY FURTHER CHARGES:**

1. Paragraphs 1 through 8 of Count 1 of this Third Superseding Indictment, which are re-alleged and incorporated by reference as though set forth fully herein.

2. On or about August 26, 2008, in the Northern District of Indiana,

### JUAN BRISENO a/k/a "Tito,"

defendant herein, did knowingly and intentionally use a firearm during and in relation to a crime of violence and drug trafficking crime, for which he may be prosecuted in a court of the United States, to wit: attempted murder in aid of racketeering activity, as set forth in Count 28 of this Third Superseding Indictment, conspiracy to commit racketeering activity, as set forth in Count 1 of this Third Superseding Indictment, and conspiracy to possess with intent to distribute and distribute marijuana and cocaine, as set forth in Count 2 of this Third Superseding Indictment.

All in violation of Title 18, United States Code, Section 924( c), and Title 18, United States Code, Section 2.

## COUNT 30

### (Attempted Murder in Aid of Racketeering Activity)

**THE GRAND JURY FURTHER CHARGES:**

1. Paragraphs 1 through 2 of Count 3 of this Third Superseding Indictment are re-alleged and incorporated by reference as though set forth fully herein.

2. On or about February 20, 2009, in the Northern District of Indiana,

### JUAN BRISENO a/k/a "Tito,"

defendant herein, for the purpose of maintaining and increasing position in the IMPERIAL GANGSTERS, an enterprise engaged in racketeering activity, attempted to murder Victim 3, a person known to the Grand Jury, in violation of Indiana Penal Code, Sections 35-42-1-1, 35-41-2-4 and 35-41-5-1.

All in violation of Title 18, United States Code, Section 1959(a)(5), and Title 18, United States Code, Section 2.

## COUNT 31

### (Use of a Firearm During and in Relation to a Federal Crime of Violence and Drug Trafficking Crime)

**THE GRAND JURY FURTHER CHARGES:**

1. Paragraphs 1 through 8 of Count 1 of this Third Superseding Indictment, which are re-alleged and incorporated by reference as though set forth fully herein.

2. On or about February 20, 2009, in the Northern District of Indiana,

**JUAN BRISENO a/k/a "Tito,"**

defendant herein, did knowingly and intentionally use a firearm during and in relation to a crime of violence and drug trafficking crime, for which he may be prosecuted in a court of the United States, to wit: attempted murder in aid of racketeering activity as set forth in Count 30 of this Third Superseding Indictment, conspiracy to commit racketeering activity, as set forth in Count 1 of this Third Superseding Indictment, and conspiracy to possess with intent to distribute and distribute marijuana and cocaine, as set forth in Count 2 of this Third Superseding Indictment.

All in violation of Title 18, United States Code, Section 924( c), and Title 18, United States Code, Section 2.

342

343

## COUNT 32

### (Attempted Murder in Aid of Racketeering Activity)

**THE GRAND JURY FURTHER CHARGES:**

1. Paragraphs 1 through 2 of Count 3 of this Third Superseding Indictment are re-alleged and incorporated by reference as though set forth fully herein.

2. On or about March 28, 2009, in the Northern District of Indiana,

### JULIUS SOLIS a/k/a "JuJu,"

defendant herein, for the purpose of maintaining and increasing position in the IMPERIAL GANGSTERS, an enterprise engaged in racketeering activity, attempted to murder Victim 4, a person known to the Grand Jury, in violation of Indiana Penal Code, Sections 35-42-1-1, 35-41-2-4 and 35-41-5-1.

All in violation of Title 18, United States Code, Section 1959(a)(5), and Title 18, United States Code, Section 2.

343

## COUNT 33

### (Use of a Firearm During and in Relation to a Federal Crime of Violence and Drug Trafficking Crime)

**THE GRAND JURY FURTHER CHARGES:**

1. Paragraphs 1 through 8 of Count 1 of this Third Superseding Indictment, which are re-alleged and incorporated by reference as though set forth fully herein.

2. On or about March 28, 2009, in the Northern District of Indiana,

**JULIUS SOLIS a/k/a "JuJu,"**

defendant herein, did knowingly and intentionally use a firearm during and in relation to a crime of violence and drug trafficking crime, for which he may be prosecuted in a court of the United States, to wit: attempted murder in aid of racketeering activity as set forth in Count 32 of this Third Superseding Indictment, conspiracy to commit racketeering activity, as set forth in Count 1 of this Third Superseding Indictment, and conspiracy to possess with intent to distribute and distribute marijuana and cocaine, as set forth in Count 2 of this Third Superseding Indictment.

All in violation of Title 18, United States Code, Section 924( c), and Title 18, United States Code, Section 2.

## COUNT 34

### (Attempted Murder in Aid of Racketeering Activity)

**THE GRAND JURY FURTHER CHARGES:**

1. Paragraphs 1 through 2 of Count 3 of this Third Superseding Indictment are re-alleged and incorporated by reference as though set forth fully herein.

2. On or about August 2, 2009, in the Northern District of Indiana,

**JUAN BRISENO a/k/a "Tito,"**

defendant herein, for the purpose of maintaining and increasing position in the IMPERIAL GANGSTERS, an enterprise engaged in racketeering activity, attempted to murder Victim 5, a person known to the Grand Jury, in violation of Indiana Penal Code, Sections 35-42-1-1, 35-41-2-4 and 35-41-5-1.

All in violation of Title 18, United States Code, Section 1959(a)(5), and Title 18, United States Code, Section 2.

345

## COUNT 35

### (Use of a Firearm During and in Relation to a Federal Crime of Violence and Drug Trafficking Crime)

**THE GRAND JURY FURTHER CHARGES:**

1. Paragraphs 1 through 8 of Count 1 of this Third Superseding Indictment, which are re-alleged and incorporated by reference as though set forth fully herein.

2. On or about August 2, 2009, in the Northern District of Indiana,

**JUAN BRISENO a/k/a "Tito,"**

defendant herein, did knowingly and intentionally use a firearm during and in relation to a crime of violence and drug trafficking crime, for which he may be prosecuted in a court of the United States, to wit: attempted murder in aid of racketeering activity as set forth in Count 34 of this Third Superseding Indictment, conspiracy to commit racketeering activity, as set forth in Count 1 of this Third Superseding Indictment, and conspiracy to possess with intent to distribute and distribute marijuana and cocaine, as set forth in Count 2 of this Third Superseding Indictment.

All in violation of Title 18, United States Code, Section 924( c), and Title 18, United States Code, Section 2.

55

346

## COUNT 36

### (Attempted Murder in Aid of Racketeering Activity)

**THE GRAND JURY FURTHER CHARGES:**

1. Paragraphs 1 through 2 of Count 3 of this Third Superseding Indictment are re-alleged and incorporated by reference as though set forth fully herein.

2. On or about June 6, 2011, in the Northern District of Indiana,

**JASON MEDINA a/k/a "Burns"**
**and**
**EDWARD RAYE SERNA a/k/a "Sern,"**

defendants herein, for the purpose of maintaining and increasing position in the IMPERIAL GANGSTERS, an enterprise engaged in racketeering activity, attempted to murder Victim 6, a person known to the Grand Jury, in violation of Indiana Penal Code, Sections 35-42-1-1, 35-41-2-4 and 35-41-5-1.

All in violation of Title 18, United States Code, Section 1959(a)(5) and Title 18, United States Code, Section 2.

## COUNT 37

### (Use of a Firearm During and in Relation to a Federal Crime of Violence and Drug Trafficking Crime)

**THE GRAND JURY FURTHER CHARGES:**

1. Paragraphs 1 through 8 of Count 1 of this Third Superseding Indictment, which are re-alleged and incorporated by reference as though set forth fully herein.

2. On or about June 6, 2011, in the Northern District of Indiana,

**JASON MEDINA a/k/a "Burns"**
**and**
**EDWARD RAYE SERNA a/k/a "Sern,"**

defendants herein, did knowingly and intentionally use a firearm during and in relation to a crime of violence and drug trafficking crime, for which they may be prosecuted in a court of the United States, to wit: attempted murder in aid of racketeering activity as set forth in Count 36 of this Third Superseding Indictment, conspiracy to commit racketeering activity, as set forth in Count 1 of this Third Superseding Indictment, and conspiracy to possess with intent to distribute and distribute marijuana and cocaine, as set forth in Count 2 of this Third Superseding Indictment.

All in violation of Title 18, United States Code, Section 924( c), and Title 18, United States Code, Section 2.

57

349

## COUNT 38

### (Attempted Murder in Aid of Racketeering Activity)

**THE GRAND JURY FURTHER CHARGES:**

1. Paragraphs 1 through 2 of Count 3 of this Third Superseding Indictment are re-alleged and incorporated by reference as though set forth fully herein.

2. On or about December 3, 2011, in the Northern District of Indiana,

### ARMANDO JOSE VELASQUEZ,

defendant herein, for the purpose of maintaining and increasing position in the IMPERIAL GANGSTERS, an enterprise engaged in racketeering activity, attempted to murder Victim 7, a person known to the Grand Jury, in violation of Indiana Penal Code, Sections 35-42-1-1, 35-41-2-4 and 35-41-5-1.

All in violation of Title 18, United States Code, Section 1959(a)(5) and Title 18, United States Code, Section 2.

349

## COUNT 39

### (Use of a Firearm During and in Relation to a Federal Crime of Violence and Drug Trafficking Crime)

**THE GRAND JURY FURTHER CHARGES:**

1. Paragraphs 1 through 8 of Count 1 of this Third Superseding Indictment, which are re-alleged and incorporated by reference as though set forth fully herein.

2. On or about December 3, 2011, in the Northern District of Indiana,

**ARMANDO JOSE VELASQUEZ,**

defendant herein, did knowingly and intentionally use a firearm during and in relation to a crime of violence and drug trafficking crime, for which he may be prosecuted in a court of the United States, to wit: attempted murder in aid of racketeering activity as set forth in Count 38 of this Third Superseding Indictment, conspiracy to commit racketeering activity, as set forth in Count 1 of this Third Superseding Indictment, and conspiracy to possess with intent to distribute and distribute marijuana and cocaine, as set forth in Count 2 of this Third Superseding Indictment.

All in violation of Title 18, United States Code, Section 924( c), and Title 18, United States Code, Section 2.

350

351

## COUNT 40

### (Possession with Intent to Distribute Marijuana)

**THE GRAND JURY FURTHER CHARGES:**

On or about February 22, 2011, in the Northern District of Indiana,

### JULIAN GUILLERMO SERNA,

defendant herein, did knowingly and intentionally possess with intent to distribute a quantity of a mixture and substance containing a detectable amount of marijuana, a schedule I controlled substance;

All in violation of Title 21, United States Code, Section 841(a)(1) and Title 18, United States Code, Section 2.

## COUNT 41

### (Use of a Firearm During and in Relation to a Federal Crime of Violence and Drug Trafficking Crime)

**THE GRAND JURY FURTHER CHARGES:**

On or about February 22, 2011, in the Northern District of Indiana,

### JULIAN GUILLERMO SERNA,

defendant herein, did knowingly and intentionally use a firearm during and in relation to a crime of violence and drug trafficking crime, for which he may be prosecuted in a court of the United States, to wit: possession with intent to distribute marijuana, as described in Count 40 of the Indictment, conspiracy to commit racketeering activity, as set forth in Count 1 of this Third Superseding Indictment, and conspiracy to possess with intent to distribute and distribute marijuana and cocaine, as set forth in Count 2 of this Third Superseding Indictment.

All in violation of Title 18, United States Code, Sections 924( c) and Title 18, United States Code, Section 2.

61

352

## NOTICE OF SPECIAL FINDINGS
### (18 U.S.C. §§ 3591 and 3592)

1.  The Grand Jury incorporates by reference and realleges the allegations contained in Counts 3 and 4 of this Third Superseding Indictment and makes the following special findings as to Counts 3 and 4 the defendant:

### ACE CORTEZ

a.  was 18 years of age or older at the time of the offenses.  [Title 18, United States Code, Section 3591(a)].

b.  intentionally killed the victim, Anuar David Paez.  [Title 18, United States Code, Section 3591(a)(2)(A)].

c.  intentionally inflicted serious bodily injury that resulted in the death of the victim, Anuar David Paez.  [Title 18, United States Code, Section 3591(a)(2)(B)].

d.  intentionally participated in an act, contemplating that the life of a person would be taken and intending that lethal force would be used in connection with a person, other than one of the participants in the offense, and the victim, Anuar David Paez, died as a direct result of the acts.  [Title 18, United States Code, Section 3591(a)(2)( c)].

e.  intentionally and specifically engaged in an act of violence, knowing that the act created a grave risk of death to a person, other than one of the participants in the offense, such that participation in the act constituted a reckless disregard for human life and the victim, Anuar David Paez, died as a direct result of the act.  [Title 18, United States Code, Section 3591(a)(2)(D)].

f.  in the commission of the offense, or in escaping apprehension for the violation of the

62

offense, knowingly created a grave risk of death to one or more persons, in addition to the victim of the offense. [Title 18, United States Code, Section 3592(c)(5)]; and

g. intentionally killed or attempted to kill more than one person in a single criminal episode. [Title 18, United States Code, Section 3592(c)(16)].

2. The Grand Jury incorporates by reference and realleges the allegations contained in Counts 5 and 6 of this Third Superseding Indictment and makes the following special findings as to Counts 5 and 6, the defendant:

**JASON MEDINA a/k/a "Burns,"**

a. was 18 years of age or older at the time of the offenses. [Title 18, United States Code, Section 3591(a)].

b. intentionally killed the victim, Guadalupe Trevino [Title 18, United States Code, Section 3591(a)(2)(A)].

c. intentionally inflicted serious bodily injury that resulted in the death of the victim, Guadalupe Trevino [Title 18, United States Code, Section 3591(a)(2)(B)].

d. intentionally participated in an act, contemplating that the life of a person would be taken and intending that lethal force would be used in connection with a person, other than one of the participants in the offense, and the victim, Guadalupe Trevino died as a direct result of the acts. [Title 18, United States Code, Section 3591(a)(2)( c)].

e. intentionally and specifically engaged in an act of violence, knowing that the act created a grave risk of death to a person, other than one of the participants in the offense, such that participation in the act constituted a reckless disregard for human life and the victim, Guadalupe Trevino, died as a direct result of the act. [Title 18, United States Code, Section

63

354

3591(a)(2)(D)].

f. committed the offense after substantial planning and premeditation to cause the death of Guadalupe Trevino. [Title 18, United States Code, Section 3592(c)(9)]; and

g. in the commission of the offense, or in escaping apprehension for the violation of the offense, knowingly created a grave risk of death to one or more persons, in addition to the victim of the offense. [Title 18, United States Code, Section 3592(c)(5)].

3. The Grand Jury incorporates by reference and realleges the allegations contained in Counts 9 and 10 of this Third Superseding Indictment and makes the following special findings as to Counts 9 and 10, the defendant:

## RICHARD REYES

a. was 18 years of age or older at the time of the offenses. [Title 18, United States Code, Section 3591(a)].

b. intentionally killed the victim, Rene Alonzo. [Title 18, United States Code, Section 3591(a)(2)(A)].

c. intentionally inflicted serious bodily injury that resulted in the death of the victim, Rene Alonzo. [Title 18, United States Code, Section 3591(a)(2)(B)].

d. intentionally participated in an act, contemplating that the life of a person would be taken and intending that lethal force would be used in connection with a person, other than one of the participants in the offense, and the victim, Rene Alonzo, died as a direct result of the acts. [Title 18, United States Code, Section 3591(a)(2)( c)].

e. intentionally and specifically engaged in an act of violence, knowing that the act created

64

355

a grave risk of death to a person, other than one of the participants in the offense, such that participation in the act constituted a reckless disregard for human life and the victim, Rene Alonzo, died as a direct result of the act. [Title 18, United States Code, Section 3591(a)(2)(D)].

f. in the commission of the offense, or in escaping apprehension for the violation of the offense, knowingly created a grave risk of death to one or more persons, in addition to the victim of the offense. [Title 18, United States Code, Section 3592(c)(5)].

g. intentionally killed or attempted to kill more than one person in a single criminal episode. [Title 18, United States Code, Section 3592(c)(16)]; and

h. committed the offense after substantial planning and premeditation to cause the death of Rene Alonzo. [Title 18, United States Code, Section 3592(c)(9)].

4. The Grand Jury incorporates by reference and realleges the allegations contained in Counts 11 and 12 of this Third Superseding Indictment and makes the following special findings as to Counts 11 and 12, the defendant:

**JUAN BRISENO a/k/a "Tito,"**

a. was 18 years of age or older at the time of the offenses. [Title 18, United States Code, Section 3591(a)].

b. intentionally killed the victim, Luis Ortiz a/k/a "Manolo." [Title 18, United States Code, Section 3591(a)(2)(A)].

c. intentionally inflicted serious bodily injury that resulted in the death of the victim, Luis Ortiz a/k/a "Manolo." [Title 18, United States Code, Section 3591(a)(2)(B)].

d. intentionally participated in an act, contemplating that the life of a person would be taken

and intending that lethal force would be used in connection with a person, other than one of the participants in the offense, and the victim, Luis Ortiz a/k/a "Manolo," died as a direct result of the acts. [Title 18, United States Code, Section 3591(a)(2)( c)].

e. intentionally and specifically engaged in an act of violence, knowing that the act created a grave risk of death to a person, other than one of the participants in the offense, such that participation in the act constituted a reckless disregard for human life and the victim, Luis Ortiz a/k/a "Manolo," died as a direct result of the act. [Title 18, United States Code, Section 3591(a)(2)(D)]; and

f. committed the offense after substantial planning and premeditation to cause the death of Luis Ortiz a/k/a "Manolo." [Title 18, United States Code, Section 3592(c)(9)].

5. The Grand Jury incorporates by reference and realleges the allegations contained in Counts 13 and 14 of this Third Superseding Indictment and makes the following special findings as to Counts 13 and 14, the defendant:

**JULIAN GUILLERMO SERNA a/k/a "Big Ju,"**

a. was 18 years of age or older at the time of the offenses. [Title 18, United States Code, Section 3591(a)].

b. intentionally killed the victim, Mario Soriano. [Title 18, United States Code, Section 3591(a)(2)(A)].

c. intentionally inflicted serious bodily injury that resulted in the death of the victim, Mario Soriano. [Title 18, United States Code, Section 3591(a)(2)(B)].

d. intentionally participated in an act, contemplating that the life of a person would be taken and intending that lethal force would be used in connection with a person, other than one of

66

357

the participants in the offense, and the victim, Mario Soriano, died as a direct result of the acts. [Title 18, United States Code, Section 3591(a)(2)( c)].

e. intentionally and specifically engaged in an act of violence, knowing that the act created a grave risk of death to a person, other than one of the participants in the offense, such that participation in the act constituted a reckless disregard for human life and the victim, Mario Soriano, died as a direct result of the act. [Title 18, United States Code, Section 3591(a)(2)(D)]; and

f. committed the offense after substantial planning and premeditation to cause the death of Mario Soriano. [Title 18, United States Code, Section 3592(c)(9)].

6. The Grand Jury incorporates by reference and realleges the allegations contained in Counts 15 and 16 of this Third Superseding Indictment and makes the following special findings as to Counts 15 and 16, the defendant:

**JUAN BRISENO a/k/a "Tito,"**

a. was 18 years of age or older at the time of the offenses. [Title 18, United States Code, Section 3591(a)].

b. intentionally killed the victim, Michael Sessum. [Title 18, United States Code, Section 3591(a)(2)(A)].

c. intentionally inflicted serious bodily injury that resulted in the death of the victim, Michael Sessum. [Title 18, United States Code, Section 3591(a)(2)(B)].

d. intentionally participated in an act, contemplating that the life of a person would be taken and intending that lethal force would be used in connection with a person, other than one of the participants in the offense, and the victim, Michael Sessum, died as a direct result of the

67

acts. [Title 18, United States Code, Section 3591(a)(2)( c)].

e. intentionally and specifically engaged in an act of violence, knowing that the act created a grave risk of death to a person, other than one of the participants in the offense, such that participation in the act constituted a reckless disregard for human life and the victim, Michael Sessum, died as a direct result of the act. [Title 18, United States Code, Section 3591(a)(2)(D)].

f. knowingly created a grave risk of death to one or more persons in the commission of the offense, in addition to Michael Sessum. [Title 18, United States Code, Section 3592(c)(5)].

g. intentionally killed or attempted to kill more than one person in a single criminal episode. [Title 18, United States Code, Section 3592(c)(16)]; and

h. committed the offense after substantial planning and premeditation to cause the death of Michael Sessum. [Title 18, United States Code, Section 3592(c)(9)].

7. The Grand Jury incorporates by reference and realleges the allegations contained in Counts 17 and 18 of this Third Superseding Indictment and makes the following special findings as to Counts 17 and 18, the defendant:

## JUAN BRISENO a/k/a "Tito,"

a. was 18 years of age or older at the time of the offenses. [Title 18, United States Code, Section 3591(a)].

b. intentionally killed the victim, Miguel Mejias. [Title 18, United States Code, Section 3591(a)(2)(A)].

c. intentionally inflicted serious bodily injury that resulted in the death of the victim, Miguel Mejias. [Title 18, United States Code, Section 3591(a)(2)(B)].

68

Case: 15-2347 Document: 35 Filed: 07/27/2016 Pages: 4186

d. intentionally participated in an act, contemplating that the life of a person would be taken and intending that lethal force would be used in connection with a person, other than one of the participants in the offense, and the victim, Miguel Mejias, died as a direct result of the acts. [Title 18, United States Code, Section 3591(a)(2)( c)].

e. intentionally and specifically engaged in an act of violence, knowing that the act created a grave risk of death to a person, other than one of the participants in the offense, such that participation in the act constituted a reckless disregard for human life and the victim, Miguel Mejias, died as a direct result of the act. [Title 18, United States Code, Section 3591(a)(2)(D)].

f. in the commission of the offense, or in escaping apprehension for the violation of the offense, knowingly created a grave risk of death to one or more persons, in addition to the victim of the offense. [Title 18, United States Code, Section 3592(c)(5)].

g. intentionally killed or attempted to kill more than one person in a single criminal episode. [Title 18, United States Code, Section 3592(c)(16)]; and

h. committed the offense after substantial planning and premeditation to cause the death of Miguel Mejias. [Title 18, United States Code, Section 3592(c)(9)].

8. The Grand Jury incorporates by reference and realleges the allegations contained in Counts 19 and 20 of this Third Superseding Indictment and makes the following special findings as to Counts 19 and 20, the defendant:

**JUAN BRISENO a/k/a "Tito,"**

a. was 18 years of age or older at the time of the offenses. [Title 18, United States Code, Section 3591(a)].

69

Case: 15-2347   Document: 35   Filed: 07/27/2016   Pages: 4186

b. intentionally killed the victim, Harris Brown. [Title 18, United States Code, Section 3591(a)(2)(A)].

c. intentionally inflicted serious bodily injury that resulted in the death of the victim, Harris Brown. [Title 18, United States Code, Section 3591(a)(2)(B)].

d. intentionally participated in an act, contemplating that the life of a person would be taken and intending that lethal force would be used in connection with a person, other than one of the participants in the offense, and the victim, Harris Brown, died as a direct result of the acts. [Title 18, United States Code, Section 3591(a)(2)( c)].

e. intentionally and specifically engaged in an act of violence, knowing that the act created a grave risk of death to a person, other than one of the participants in the offense, such that participation in the act constituted a reckless disregard for human life and the victim, Harris Brown, died as a direct result of the act. [Title 18, United States Code, Section 3591(a)(2)(D)]; and

f. committed the offense after substantial planning and premeditation to cause the death of Harris Brown. [Title 18, United States Code, Section 3592(c)(9)].

9. The Grand Jury incorporates by reference and realleges the allegations contained in Counts 21 and 22 of this Third Superseding Indictment and makes the following special findings as to Counts 21 and 22, the defendant:

**JUAN BRISENO a/k/a "Tito,"**

a. was 18 years of age or older at the time of the offenses. [Title 18, United States Code, Section 3591(a)].

b. intentionally killed the victim, Miguel Colon. [Title 18, United States Code, Section

70

3591(a)(2)(A)].

c. intentionally inflicted serious bodily injury that resulted in the death of the victim, Miguel Colon. [Title 18, United States Code, Section 3591(a)(2)(B)].

d. intentionally participated in an act, contemplating that the life of a person would be taken and intending that lethal force would be used in connection with a person, other than one of the participants in the offense, and the victim, Miguel Colon, died as a direct result of the acts. [Title 18, United States Code, Section 3591(a)(2)( c)].

e. intentionally and specifically engaged in an act of violence, knowing that the act created a grave risk of death to a person, other than one of the participants in the offense, such that participation in the act constituted a reckless disregard for human life and the victim, Miguel Colon, died as a direct result of the act. [Title 18, United States Code, Section 3591(a)(2)(D)].

f. knowingly created a grave risk of death to one or more persons in the commission of the offense, in addition to Miguel Colon. [Title 18, United States Code, Section 3592(c)(5)]; and

g. committed the offense after substantial planning and premeditation to cause the death of Miguel Colon. [Title 18, United States Code, Section 3592(c)(9)].

10. The Grand Jury incorporates by reference and realleges the allegations contained in Counts 23 and 24 of this Third Superseding Indictment and makes the following special findings as to Counts 23 and 24, the defendant:

**JUAN BRISENO a/k/a "Tito,"**

a. was 18 years of age or older at the time of the offenses. [Title 18, United States Code, Section 3591(a)].

71

b. intentionally killed the victim, Latroy Howard. [Title 18, United States Code, Section 3591(a)(2)(A)].

c. intentionally inflicted serious bodily injury that resulted in the death of the victim, Latroy Howard. [Title 18, United States Code, Section 3591(a)(2)(B)].

d. intentionally participated in an act, contemplating that the life of a person would be taken and intending that lethal force would be used in connection with a person, other than one of the participants in the offense, and the victim, Latroy Howard, died as a direct result of the acts. [Title 18, United States Code, Section 3591(a)(2)( c)].

e. intentionally and specifically engaged in an act of violence, knowing that the act created a grave risk of death to a person, other than one of the participants in the offense, such that participation in the act constituted a reckless disregard for human life and the victim, Latroy Howard, died as a direct result of the act. [Title 18, United States Code, Section 3591(a)(2)(D)]; and

f. committed the offense after substantial planning and premeditation to cause the death of Latroy Howard. [Title 18, United States Code, Section 3592(c)(9)].

A TRUE BILL:

/s/ Foreperson_____
FOREPERSON

DAVID CAPP
UNITED STATES ATTORNEY

By:     /s/ David J. Nozick_____
David J. Nozick
Assistant United States Attorney

72

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | NO. 2:11 CR 77 PPS |
| | ) | |
| JUAN BRISENO, et al. | ) | |

O R D E R

Upon review of the Government's Motion to Unseal, and being duly advised in the premises;

IT IS HEREBY ORDERED that the Clerk of the Court shall UNSEAL the Third Superseding Indictment filed in the above-captioned case.

SO ORDERED THIS 9th day of November, 2012.

s/Philip P. Simon
PHILIP P. SIMON
Chief Judge, United States District Court
Northern District of Indiana
Hammond Division

```
MIME-Version:1.0
From:CMECFinnd@innd.uscourts.gov
To:CMECFinnd@localhost.localdomain
Bcc:
--Case Participants: Magistrate Judge Andrew P Rodovich
(rodovich_chambers@innd.uscourts.gov), Chief Judge Philip P Simon
(denise_woodside@innd.uscourts.gov, joshua_urquhart@innd.uscourts.gov,
katherine_welsh@innd.uscourts.gov, mark_hancock@innd.uscourts.gov,
noel_collins@innd.uscourts.gov, philip_simon@innd.uscourts.gov)
--Non Case Participants:
--No Notice Sent:

Message-Id:2122036@innd.uscourts.gov
Subject:Activity in Case 2:11-cr-00077-PPS-APR United States of America et al v. Briseno
et al *SEALED* Case Unsealed
Content-Type: text/html
```

### U.S. District Court Northern District of Indiana [LIVE]

### USDC Northern Indiana

## Notice of Electronic Filing

The following transaction was entered on 11/9/2012 at 12:51 PM EST and filed on 11/9/2012

| | |
|---|---|
| **Case Name:** | United States of America et al v. Briseno et al |
| **Case Number:** | 2:11–cr–00077–PPS–APR *SEALED* |
| **Filer:** | |

**Document Number:** No document attached

**Docket Text:** *Sealed Entry*
 **Case unsealed as to Juan Briseno, Galo Benjamin Feliciano, Guillermo Briseno, Alejandro Balboa Lara, Justin Weaver, Michael Anthony Castillo, Kelvin Jefferson Beltran, David Almaraz, Joseph Rene Torres, Jason Medina, Edward Raye Serna, Alejandro Briseno, Robert Lockhart, Armando Jose Velasquez, Anthony Baldazo, Salvador Chavez, Raymond Campos, Ace Cortez, Julian Guillermo Serna, Julius Solis, Darmaile Cortez Sutton, Eddie Torres, Richard Reyes (mc)**

**2:11–cr–00077–PPS–APR *SEALED*–1 No electronic public notice will be sent because the case/entry is sealed.**

**2:11–cr–00077–PPS–APR–2 No electronic public notice will be sent because the case/entry is sealed.**

**2:11–cr–00077–PPS–APR–3 No electronic public notice will be sent because the case/entry is sealed.**

**2:11–cr–00077–PPS–APR–4 No electronic public notice will be sent because the case/entry is sealed.**

**2:11–cr–00077–PPS–APR *SEALED*–5 No electronic public notice will be sent because the case/entry is sealed.**

**2:11–cr–00077–PPS–APR *SEALED*–6 No electronic public notice will be sent because the case/entry is sealed.**

**2:11–cr–00077–PPS–APR–7** No electronic public notice will be sent because the case/entry is sealed.

**2:11–cr–00077–PPS–APR–8** No electronic public notice will be sent because the case/entry is sealed.

**2:11–cr–00077–PPS–APR–9** No electronic public notice will be sent because the case/entry is sealed.

**2:11–cr–00077–PPS–APR *SEALED*–10** No electronic public notice will be sent because the case/entry is sealed.

**2:11–cr–00077–PPS–APR *SEALED*–11** No electronic public notice will be sent because the case/entry is sealed.

**2:11–cr–00077–PPS–APR–12** No electronic public notice will be sent because the case/entry is sealed.

**2:11–cr–00077–PPS–APR *SEALED*–13** No electronic public notice will be sent because the case/entry is sealed.

**2:11–cr–00077–PPS–APR *SEALED*–14** No electronic public notice will be sent because the case/entry is sealed.

**2:11–cr–00077–PPS–APR *SEALED*–15** No electronic public notice will be sent because the case/entry is sealed.

**2:11–cr–00077–PPS–APR *SEALED*–16** No electronic public notice will be sent because the case/entry is sealed.

**2:11–cr–00077–PPS–APR *SEALED*–17** No electronic public notice will be sent because the case/entry is sealed.

**2:11–cr–00077–PPS–APR *SEALED*–18** No electronic public notice will be sent because the case/entry is sealed.

**2:11–cr–00077–PPS–APR *SEALED*–19** No electronic public notice will be sent because the case/entry is sealed.

**2:11–cr–00077–PPS–APR *SEALED*–20** No electronic public notice will be sent because the case/entry is sealed.

**2:11–cr–00077–PPS–APR *SEALED*–21** No electronic public notice will be sent because the case/entry is sealed.

**2:11–cr–00077–PPS–APR *SEALED*–22** No electronic public notice will be sent because the case/entry is sealed.

**2:11–cr–00077–PPS–APR *SEALED*–23** No electronic public notice will be sent because the case/entry is sealed.

AO 442 (Rev. 01/09) Arrest Warrant

## UNITED STATES DISTRICT COURT

**SEALED**

Northern District of Indiana

| United States of America | ) | |
| v. | ) | |
| | ) | Case No.  2:11CR77 |
| Juan Briseno a/k/a "Tito" | ) | |
| | ) | |
| *Defendant* | ) | |

### ARREST WARRANT

To:     Any authorized law enforcement officer

**YOU ARE COMMANDED** to arrest and bring before a United States magistrate judge without unnecessary delay

*(name of person to be arrested)*     Juan Briseno a/k/a "Tito"                                                                                    ,

who is accused of an offense or violation based on the following document filed with the court:

❐ Indictment     ☑ Superseding Indictment     ❐ Information     ❐ Superseding Information     ❐ Complaint

❐ Probation Violation Petition     ❐ Supervised Release Violation Petition     ❐ Violation Notice     ❐ Order of the Court

This offense is briefly described as follows:

18:1962(d) CONSPIRACY TO PARTICIPATE IN RACKETEERING ACTIVITY
18:1959(a)(1)) RACKETEERING ACTIVITY /MURDER
18:1959(a)(5)) ATTEMPTED MURDER IN AID OF RACKETEERING ACTIVITY
18:924(c) VIOLENT CRIME/DRUGS/MACHINE GUN WHERE DEATH OCCURS
21:846 CONSPIRACY TO POSSESS WITH INTENT TO DISTRIBUTE COCAINE AND MARIJUANA
18:3591 ANC 3592 SPECIAL FINDINGS
18:2 AIDING AND ABETTING

Date:   11/07/2012

*Issuing officer's signature*

City and state:   Hammond, Indiana

Robert Trgovich, Clerk
*Printed name and title*

| **Return** |
|---|
| This warrant was received on *(date)*  11/8/12  , and the person was arrested on *(date)*  2/7/11  at *(city and state)*  Hammond, IN  . |
| Date:  11/13/12         *Arresting officer's signature* |
| Gregg Thiel  DUSM   *Printed name and title* |

```
MIME-Version:1.0
From:CMECFinnd@innd.uscourts.gov
To:CMECFinnd@localhost.localdomain
Bcc:
--Case Participants: David J Nozick - AUSA (david.nozick@usdoj.gov,
janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov,
usainn.ecfcivil@usdoj.gov), Matthew D Soliday (matt@matthewsolidaylaw.com,
office@matthewsolidaylaw.com), Paul Jeffrey Schlesinger (pjeffslaw@aol.com), Pablo
DeCastro (pdecastro@rascia-decastro.com, ysierra@rascia-decastro.com), Sheldon B Nagelberg
(sbnagelberglaw@att.net), Thomas W Vanes (tom.vanes@sbcglobal.net), John T Theis
(theislaw@aol.com), Catherine A Lake (attyclake@sbcglobal.net), Adam Tavitas
(adtavitas@aol.com, b.lynneadams@yahoo.com), Dean R Lanter - AUSA (dean.lanter@usdoj.gov,
janet.eisenmann@usdoj.gov, usainn.ecfcivil@usdoj.gov), Scott L King
(jwilliams@scottkinggroup.com, sking@scottkinggroup.com), John E Martin - FCD
(john_martin@fd.org, susan_igras@fd.org), Mark A Psimos (psimoslaw@airbaud.net), James N
Thiros (jim@thiros.com, lynn@thiros.com), Robert L Rascia (rrascia@rascia-decastro.com,
ysierra@rascia-decastro.com), Arlington J Foley (arlingtonfoley@att.net), Visvaldis P
Kupsis (vpkupsis@hotmail.com), Stephen Edward Scheele (pkd@gk4law.com, ses@gk4law.com),
Jack Friedlander (jack@jackfriedlander.com, office@jackfriedlander.com), Clark W
Holesinger (334office@frontier.com, arcclark@frontier.com, clark.334@frontier.com), R
Brian Woodward (carolb@wbbklaw.com, rbwoodward@wbbklaw.com), John Maksimovich
(criminallaw@johnmaksimovich.com), Magistrate Judge Andrew P Rodovich
(rodovich_chambers@innd.uscourts.gov), Chief Judge Philip P Simon
(denise_woodside@innd.uscourts.gov, joshua_urquhart@innd.uscourts.gov,
katherine_welsh@innd.uscourts.gov, mark_hancock@innd.uscourts.gov,
noel_collins@innd.uscourts.gov, philip_simon@innd.uscourts.gov)
--Non Case Participants: Probation/Pretrial Services (innpml_cmecf@innd.uscourts.gov), U S
Marshal (inn.docket-fw@usdoj.gov, inn.docket-sb@usdoj.gov, usms.27@usdoj.gov)
--No Notice Sent:

Message-Id:2127505@innd.uscourts.gov
Subject:Activity in Case 2:11-cr-00077-PPS-APR United States of America v. Briseno et al
```
Notice of Hearing/Deadlines

Content–Type: text/html

## U.S. District Court Northern District of Indiana [LIVE]

## USDC Northern Indiana

## Notice of Electronic Filing

The following transaction was entered on 11/16/2012 at 4:08 PM EST and filed on 11/16/2012

| | |
|---|---|
| **Case Name:** | United States of America v. Briseno et al |
| **Case Number:** | 2:11–cr–00077–PPS–APR |
| **Filer:** | |
| **Document Number:** | 355(No document attached) |

**Docket Text:**
 **NOTICE OF HEARING/DEADLINES as to Juan Briseno, Justin Weaver, Michael Anthony Castillo, Jason Medina regarding [309] Third Superseding Indictment. Arraignment set for 11/20/2012 09:00 AM in US District Court – Hammond before Magistrate Judge Andrew P Rodovich. USM to produce Dft for hearing.(plm)**

**2:11–cr–00077–PPS–APR–1 Notice has been electronically mailed to:**

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Matthew D Soliday matt@matthewsolidaylaw.com, office@matthewsolidaylaw.com

Scott L King sking@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, 334office@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org, susan_igras@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia–decastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

**2:11–cr–00077–PPS–APR–1 Notice has been delivered by U.S. Mail or other means to:**

**2:11–cr–00077–PPS–APR–5 Notice has been electronically mailed to:**

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Matthew D Soliday matt@matthewsolidaylaw.com, office@matthewsolidaylaw.com

Scott L King sking@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, 334office@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org, susan_igras@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia–decastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

**2:11–cr–00077–PPS–APR–5 Notice has been delivered by U.S. Mail or other means to:**

**2:11–cr–00077–PPS–APR–6 Notice has been electronically mailed to:**

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Matthew D Soliday matt@matthewsolidaylaw.com, office@matthewsolidaylaw.com

Scott L King sking@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, 334office@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org, susan_igras@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia–decastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

**2:11–cr–00077–PPS–APR–6 Notice has been delivered by U.S. Mail or other means to:**

**2:11–cr–00077–PPS–APR–10 Notice has been electronically mailed to:**

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Matthew D Soliday matt@matthewsolidaylaw.com, office@matthewsolidaylaw.com

Scott L King sking@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, 334office@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org, susan_igras@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia–decastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

**2:11–cr–00077–PPS–APR–10 Notice has been delivered by U.S. Mail or other means to:**

```
MIME-Version:1.0
From:CMECFinnd@innd.uscourts.gov
To:CMECFinnd@localhost.localdomain
Bcc:
--Case Participants: David J Nozick - AUSA (david.nozick@usdoj.gov,
janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov,
usainn.ecfcivil@usdoj.gov), Matthew D Soliday (matt@matthewsolidaylaw.com,
office@matthewsolidaylaw.com), Paul Jeffrey Schlesinger (pjeffslaw@aol.com), Pablo
DeCastro (pdecastro@rascia-decastro.com, ysierra@rascia-decastro.com), Sheldon B Nagelberg
(sbnagelberglaw@att.net), Thomas W Vanes (tom.vanes@sbcglobal.net), John T Theis
(theislaw@aol.com), Catherine A Lake (attyclake@sbcglobal.net), Adam Tavitas
(adtavitas@aol.com, b.lynneadams@yahoo.com), Dean R Lanter - AUSA (dean.lanter@usdoj.gov,
janet.eisenmann@usdoj.gov, usainn.ecfcivil@usdoj.gov), Scott L King
(jwilliams@scottkinggroup.com, sking@scottkinggroup.com), John E Martin - FCD
(john_martin@fd.org, susan_igras@fd.org), Mark A Psimos (psimoslaw@airbaud.net), James N
Thiros (jim@thiros.com, lynn@thiros.com), Robert L Rascia (rrascia@rascia-decastro.com,
ysierra@rascia-decastro.com), Arlington J Foley (arlingtonfoley@att.net), Visvaldis P
Kupsis (vpkupsis@hotmail.com), Stephen Edward Scheele (pkd@gk4law.com, ses@gk4law.com),
Jack Friedlander (jack@jackfriedlander.com, office@jackfriedlander.com), Clark W
Holesinger (334office@frontier.com, arcclark@frontier.com, clark.334@frontier.com), R
Brian Woodward (carolb@wbbklaw.com, rbwoodward@wbbklaw.com), John Maksimovich
(criminallaw@johnmaksimovich.com), Magistrate Judge Andrew P Rodovich
(rodovich_chambers@innd.uscourts.gov), Chief Judge Philip P Simon
(denise_woodside@innd.uscourts.gov, joshua_urquhart@innd.uscourts.gov,
katherine_welsh@innd.uscourts.gov, mark_hancock@innd.uscourts.gov,
noel_collins@innd.uscourts.gov, philip_simon@innd.uscourts.gov)
--Non Case Participants: Probation/Pretrial Services (innpml_cmecf@innd.uscourts.gov), U S
Marshal (inn.docket-fw@usdoj.gov, inn.docket-sb@usdoj.gov, usms.27@usdoj.gov)
--No Notice Sent:

Message-Id:2129365@innd.uscourts.gov
Subject:Activity in Case 2:11-cr-00077-PPS-APR United States of America v. Briseno et al
Arraignment
Content-Type: text/html
```

## U.S. District Court Northern District of Indiana [LIVE]

### USDC Northern Indiana

## Notice of Electronic Filing

The following transaction was entered on 11/20/2012 at 11:01 AM EST and filed on 11/20/2012

| | |
|---|---|
| **Case Name:** | United States of America v. Briseno et al |
| **Case Number:** | 2:11–cr–00077–PPS–APR |
| **Filer:** | |
| **Document Number:** | 360(No document attached) |

**Docket Text:**

**ARRAIGNMENT on Third Superseding Indictment as to Juan Briseno (1) Count 1sss,2sss,11sss,12sss,15sss,16sss,17sss,18sss,19sss,20sss,21sss,22sss,23sss,24sss,26sss,27sss held on 11/20/2012 before Magistrate Judge Andrew P Rodovich. Govt appeared by AUSA David Nozick. Dft appeared with attys Arlington Foley and John Maksimovich. Dft waives reading of formal charges and enters a plea of not guilty. Govt states some additional discovery. Dft states additional motions to be filed. Deadlines as follows: Non–Death Penalty motions due 1/4/2013. Government Response due by 2/15/2013. New trial date will be set. Defendant REMANDED to custody of US Marshal.(Tape #Digitally Recorded.) (plm)**

**2:11−cr−00077−PPS−APR−1 Notice has been electronically mailed to:**

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Matthew D Soliday matt@matthewsolidaylaw.com, office@matthewsolidaylaw.com

Scott L King sking@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, 334office@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin − FCD john_martin@fd.org, susan_igras@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia−decastro.com, ysierra@rascia−decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia−decastro.com, ysierra@rascia−decastro.com

Dean R Lanter − AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick − AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

**2:11−cr−00077−PPS−APR−1 Notice has been delivered by U.S. Mail or other means to:**

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

UNITED STATES OF AMERICA,

          **Plaintiff**

vs

JUAN BRISENO,

          **Defendant**                  **CAUSE NO:   2:11-CR-77**

## MOTION TO TRANSFER

Comes now Defendant Juan Briseno, by counsel John Maksimovich and Arlington Foley, and moves the Court to transfer him to a holding facility other than the Porter County Jail, and as support, states the following:

1.      By means of a third superceding indictment filed November 7, 2012, the government charged Briseno with the following offenses:

        a.      Conspiracy to participate in racketeering activity, in violation of Title 18, United States Code, §1962(d);

        b.      Conspiracy to possess with intent to distribute and distribute five kilograms or more of cocaine and 100 kilograms or more of marijuana, in violation of Title 21, United States Code, §846

        c.      Six counts of murder in aid of racketeering, in violation of Title 18, United States Code, §1959(a)(1)

        d.      Six counts of murder resulting from the use and carrying of a firearm during and in relation to a crime of violence and drug trafficking crime, in violation of Title 18, United States Code, §924(c) and §924(j)

        e.      Four counts of attempted murder in aid of racketeering, in violation of Title 18, United States Code, §1959(a)(5)

-1-

f.     Four counts of using and carrying a firearm during and in relation to a crime of violence and drug trafficking crime, in violation of Title 18, United States Code, §924(c)

2.     Since June 24, 2011, Briseno has been in the custody of the United States Marshall and is currently being held at the Porter County Jail in Valparaiso, Indiana.

3.     Briseno finds the Porter County Jail facility to be lacking in many important respects:

a.     It does not provide necessary dental care.  Briseno needs his teeth cleaned.

b.     It does not provide necessary vision care.  Briseno needs glasses.

c.     It does not provide necessary psychiatric care.  Briseno needs psychiatric counseling.

d.     It does not provide adequate legal resources and Briseno finds the facilities' law library deficient in respect to federal law.

e.     There is a two week waiting period before Briseno can access a computer at the law library to review his Rule 16 Discovery

f.     The facility is overcrowded.  The location where Briseno is being held has a maximum capacity of 350 inmates, yet on many occasions, more than 500 inmates were housed in this location

g.     Briseno's "pod" is not supposed to house more than 16 inmates.  On several occasions, there have been up to 30 inmates in the "pod".  There are only 2 phones and 2 showers for up to 30 inmates.

h.     The inmates are only allowed one hour of recreation per week.

I.     Briseno is a Catholic and the facility does not provide Catholic mass and has denied Briseno his request for a rosary. During Lent, the facility feeds Briseno meat rather than the fish he is supposed to eat.

j.     Briseno has been exposed to tuberculosis at the facility in January of 2012.  There have been outbreaks of staph and inmates that have contracted staph are kept with the general population.

k.     The facility is extremely filthy and there is a tremendous amount of mold growing in the showers. The facility is loaded with bugs and spiders.

4.      Briseno is death penalty eligible and is facing the possibility of spending the rest of his life in prison.

**WHEREFORE**, the Defendant Juan Briseno requests the Court to enter an appropriate order to effect Briseno's transfer from the Porter County Jail in Valparaiso, Indiana to the Metropolitan Correctional Center in Chicago, Illinois where Briseno can get the proper care, and for all other just and proper relief.


Respectfully submitted:


/s/ *Arlington J. Foley*
_____

Arlington J. Foley /#6905-45
Attorney For Defendant
1942 North Main Street
Crown Point, IN 46307
PH: 219.661.1200
FX: 219.661.1205

/s/ *John Maksimovich*
_____

John Maksimovich /#9950-45
Attorney For Defendant
1946 North Main Street
Crown Point, IN 46307
PH: 219.663.1900
FX: 219.663.1908

-3-

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

**UNITED STATES OF AMERICA,**

               **Plaintiff**

**vs**

**JUAN BRISENO,**

           **Defendant**                     **CAUSE NO:   2:11-CR-77**

### CERTIFICATE OF SERVICE

I hereby certify that on December 13, 2012, I electronically filed:

### *MOTION TO TRANSFER*

with the Clerk of the Court using the CM/ECF system, which sent notification of such filing to the following:

| | |
|---|---|
| David J. Nozick | Dean Lanter |
| Assistant United States Attorney | Assistant United States Attorney |

and I hereby certify that I have mailed by United States Postal Service, the document to the following non-CM/ECF participants:

        N/A

By:   /s/ *John Maksimovich*

John Maksimovich /#9950-45
Attorney For Defendant
1946 North Main Street
Crown Point, IN 46307
PH: 219.663.1900
FX: 219.663.1908
E-Mail: criminallaw@johnmaksimovich.com

-4-

378

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

UNITED STATES OF AMERICA          )
                                  )
          v.                      )          CAUSE NO. 2:11 CR 77
                                  )
JUAN BRISENO                      )

**ORDER**

This matter is before the court on the Motion to Transfer [DE 410], filed by the defendant, Juan Briseno, on December 13, 2012. Briseno requests for the court to transfer him from the Porter County Jail to the Metropolitan Correctional Center in Chicago, Illinois. The motion does not reflect that Briseno has addressed this matter with the United States Marshal Service. For this reason, the motion is DENIED WITHOUT PREJUDICE and the defendant is DIRECTED to address this matter with the United States Marshal Service.

ENTERED this 18th day of December, 2012

/s/ Andrew P. Rodovich
United States Magistrate Judge

1

379

- FILED -

DEC 1  2012

ROBERT N. TRGOVICH, Clerk
U.S. DISTRICT COURT
NORTHERN DISTRICT OF INDIANA

12/16/12

Cause No. 2:11 CR 77 PPS

Honorable Philip Simon,

My name is Juan R. Briseno. The reason for this formal letter is to kindly request new representation. I understand there are proper procedures to be taken pertaining this matter. However, my current attorney's fail to answer mine or my family's calls. Therefore I am unable to reach them to inform them to file the proper motions. The last time I met with my attorneys was on 11/20/12 and that was right before an appearance before a magistrate. We are unable to see eye to eye and properly work on the case. I am rarely if at all updated on new developements in the case. I've been incarcerated for 18 months on 12/24/12 and we haven't even began to prepare a proper defense. I kindly request them to file certain motions to no avail. On the other hand, the filing of unwanted motions happens without my knowledge or approval. I am facing the

380

death penalty and believe I have a right to the best defense possible. At the current moment I feel I am being deprived of that right. I understand that they are court appointed and not personally hired but I feel they are not giving their best efforts possible. I feel they are not treating me like an attorney should treat a client. If it is possible I would like new representation appointed because my life is at stake after all. I just want the best defense available please. I may be overstepping my boundries in requesting two attorneys I have in mind that are public defenders and are not representing any co-defendants. They are attorneys Ashwin Cattamanchi and or Micheal Bosch. I appreciate your time. Thank you.

Sincerely
Juan R. Briseño

*Juan R. Briseño*



C6 J Brisen
Porter County Jail
2755 St Rd 49
Valparaiso IN 46383

Honorable Judge Philip P. Simon
5400 Federal Plaza
Hammond, IN 46320

SCREENED
SCREENED

17 DEC 2012 PM 2 T

Purple Martin

FOREVER
USA

382

```
MIME-Version:1.0
From:CMECFinnd@innd.uscourts.gov
To:CMECFinnd@localhost.localdomain
Bcc:
--Case Participants: Bryan M Truitt (bryan@tblawyers.com, sherrie@tblawyers.com), David J
Nozick - AUSA (david.nozick@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov,
susan.devries@usdoj.gov, usainn.ecfcivil@usdoj.gov), Matthew D Soliday
(matt@matthewsolidaylaw.com, office@matthewsolidaylaw.com), Kurt R Earnst
(kre@braje-nelson.com), Paul Jeffrey Schlesinger (pjeffslaw@aol.com), Pablo DeCastro
(pdecastro@rascia-decastro.com, ysierra@rascia-decastro.com), Sheldon B Nagelberg
(sbnagelberglaw@att.net), Thomas W Vanes (tom.vanes@sbcglobal.net), John T Theis
(theislaw@aol.com), Catherine A Lake (attyclake@sbcglobal.net), Adam Tavitas
(adtavitas@aol.com, b.lynneadams@yahoo.com), Dean R Lanter - AUSA (dean.lanter@usdoj.gov,
janet.eisenmann@usdoj.gov, usainn.ecfcivil@usdoj.gov), John E Martin - FCD
(john_martin@fd.org, susan_igras@fd.org), Scott L King (jwilliams@scottkinggroup.com,
sking@scottkinggroup.com), Mark A Psimos (psimoslaw@airbaud.net), James N Thiros
(jim@thiros.com, lynn@thiros.com), Robert L Rascia (rrascia@rascia-decastro.com,
ysierra@rascia-decastro.com), Gojko Kasich (gkasich@crownlaw.com), Arlington J Foley
(arlingtonfoley@att.net), Roxanne Mendez Johnson (attorneyrmj@gmail.com), Visvaldis P
Kupsis (vpkupsis@hotmail.com), Stephen Edward Scheele (pkd@gk4law.com, ses@gk4law.com),
Jack Friedlander (jack@jackfriedlander.com, office@jackfriedlander.com), Clark W
Holesinger (334office@frontier.com, arcclark@frontier.com, clark.334@frontier.com), R
Brian Woodward (carolb@wbbklaw.com, rbwoodward@wbbklaw.com), John Maksimovich
(criminallaw@johnmaksimovich.com), Magistrate Judge Andrew P Rodovich
(rodovich_chambers@innd.uscourts.gov), Chief Judge Philip P Simon
(denise_woodside@innd.uscourts.gov, joshua_urquhart@innd.uscourts.gov,
katherine_welsh@innd.uscourts.gov, mark_hancock@innd.uscourts.gov,
noel_collins@innd.uscourts.gov, philip_simon@innd.uscourts.gov)
--Non Case Participants: Probation/Pretrial Services (innpml_cmecf@innd.uscourts.gov), U S
Marshal (inn.docket-fw@usdoj.gov, inn.docket-sb@usdoj.gov, usms.27@usdoj.gov)
--No Notice Sent:

Message-Id:2154079@innd.uscourts.gov
Subject:Activity in Case 2:11-cr-00077-PPS-APR United States of America v. Briseno et al
Notice of Hearing/Deadlines
Content-Type: text/html
```

### U.S. District Court Northern District of Indiana [LIVE]

### USDC Northern Indiana

### Notice of Electronic Filing

The following transaction was entered on 12/21/2012 at 11:06 AM EST and filed on 12/21/2012

| | |
|---|---|
| **Case Name:** | United States of America v. Briseno et al |
| **Case Number:** | 2:11–cr–00077–PPS–APR |
| **Filer:** | |
| **Document Number:** | 423(No document attached) |

**Docket Text:**

**NOTICE OF HEARING/DEADLINES as to Juan Briseno regarding [420] MOTION to Disqualify Counsel. Motion Hearing set for 1/9/2013 01:00 PM in US District Court – Hammond before Magistrate Judge Andrew P Rodovich. USM to produce Dft for hearing. (plm)**

**2:11–cr–00077–PPS–APR–1 Notice has been electronically mailed to:**

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com

Matthew D Soliday matt@matthewsolidaylaw.com, office@matthewsolidaylaw.com

Scott L King sking@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, 334office@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org, susan_igras@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje–nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia–decastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

**2:11–cr–00077–PPS–APR–1 Notice has been delivered by U.S. Mail or other means to:**

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
## HAMMOND DIVISION

UNITED STATES OF AMERICA        )
                                        )

        vs.                          )   CASE NO. 2:11-cr-77

                                          )

JUAN BRISENO                       )

## ORDER

The Defendant, Juan Briseno, having filed a Motion to Continue the Jury Trial of this matter and the Court being duly advised hereby **GRANTS** the motion.  The new date for the trial of this matter is now set for **October 21, 2013 at 8:30 a.m. (CST)** before District Court Chief Judge Philip P. Simon as a primary setting.  The Final Pretrial Conference is set for **September 20, 2013 at 1:00 p.m. (CST)** before Magistrate Judge Andrew P. Rodovich.  Deadlines as follows:  Govt to produce discovery by **January 31, 2013.**  Pretrial motions are due by **April 1, 2013.**  Govt Response due by **April 30, 2013.**  The Court has previously deemed this case as complex and speedy trial is waived until the date of trial.  These deadlines also apply to defendants **Michael Castillo, Jason Medina and Edward Serna,** whose new dates had not been previously reset.

      **SO ORDERED** this 27th day of December, 2012.


                            s/Andrew P. Rodovich
                            ANDREW P. RODOVICH
                            UNITED STATES MAGISTRATE JUDGE

```
MIME-Version:1.0
From:CMECFinnd@innd.uscourts.gov
To:CMECFinnd@localhost.localdomain
Bcc:
--Case Participants: Bryan M Truitt (bryan@tblawyers.com, sherrie@tblawyers.com), David J
Nozick – AUSA (david.nozick@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov,
susan.devries@usdoj.gov, usainn.ecfcivil@usdoj.gov), Matthew D Soliday
(matt@matthewsolidaylaw.com, office@matthewsolidaylaw.com), Kurt R Earnst
(kre@braje-nelson.com), Paul Jeffrey Schlesinger (pjeffslaw@aol.com), Pablo DeCastro
(pdecastro@rascia-decastro.com, ysierra@rascia-decastro.com), Sheldon B Nagelberg
(sbnagelberglaw@att.net), Thomas W Vanes (tom.vanes@sbcglobal.net), John T Theis
(theislaw@aol.com), Catherine A Lake (attyclake@sbcglobal.net), Adam Tavitas
(adtavitas@aol.com, b.lynneadams@yahoo.com), Dean R Lanter – AUSA (dean.lanter@usdoj.gov,
janet.eisenmann@usdoj.gov, usainn.ecfcivil@usdoj.gov), John E Martin – FCD
(john_martin@fd.org, susan_igras@fd.org), Scott L King (jwilliams@scottkinggroup.com,
sking@scottkinggroup.com), Mark A Psimos (psimoslaw@airbaud.net), James N Thiros
(jim@thiros.com, lynn@thiros.com), Robert L Rascia (rrascia@rascia-decastro.com,
ysierra@rascia-decastro.com), Gojko Kasich (gkasich@crownlaw.com), Arlington J Foley
(arlingtonfoley@att.net), Roxanne Mendez Johnson (attorneyrmj@gmail.com), Visvaldis P
Kupsis (vpkupsis@hotmail.com), Stephen Edward Scheele (pkd@gk4law.com, ses@gk4law.com),
Jack Friedlander (jack@jackfriedlander.com, office@jackfriedlander.com), Clark W
Holesinger (334office@frontier.com, arcclark@frontier.com, clark.334@frontier.com), R
Brian Woodward (carolb@wbbklaw.com, rbwoodward@wbbklaw.com), John Maksimovich
(criminallaw@johnmaksimovich.com), Magistrate Judge Andrew P Rodovich
(rodovich_chambers@innd.uscourts.gov), Chief Judge Philip P Simon
(denise_woodside@innd.uscourts.gov, joshua_urquhart@innd.uscourts.gov,
katherine_welsh@innd.uscourts.gov, mark_hancock@innd.uscourts.gov,
noel_collins@innd.uscourts.gov, philip_simon@innd.uscourts.gov)
--Non Case Participants: Probation/Pretrial Services (innpml_cmecf@innd.uscourts.gov), U S
Marshal (inn.docket-fw@usdoj.gov, inn.docket-sb@usdoj.gov, usms.27@usdoj.gov)
--No Notice Sent:

Message-Id:2163954@innd.uscourts.gov
Subject:Activity in Case 2:11-cr-00077-PPS-APR United States of America v. Briseno et al
Motion Hearing
Content–Type: text/html
```

### U.S. District Court Northern District of Indiana [LIVE]

### USDC Northern Indiana

## Notice of Electronic Filing

The following transaction was entered on 1/9/2013 at 3:21 PM EST and filed on 1/9/2013

| | |
|---|---|
| **Case Name:** | United States of America v. Briseno et al |
| **Case Number:** | 2:11–cr–00077–PPS–APR |
| **Filer:** | |
| **Document Number:** | 441(No document attached) |

**Docket Text:**

**MOTION HEARING as to Juan Briseno held on 1/9/2013 re [420] MOTION to Disqualify Counsel filed by Juan Briseno before Magistrate Judge Andrew P Rodovich. Govt appeared by AUSA David Nozick. Dft appeared with attys Arlington Foley and John Maksimovich. Court addresses motion w/attys. Attys and Dft have resolved issues. Dft moves to withdraw motion. Court denied the motion. Attys Foley and Maksimovich will remain of record. Defendant REMANDED to custody of US Marshal.(Tape #FTR Gold.) (plm)**

**2:11−cr−00077−PPS−APR−1 Notice has been electronically mailed to:**

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com

Matthew D Soliday matt@matthewsolidaylaw.com, office@matthewsolidaylaw.com

Scott L King sking@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, 334office@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin − FCD john_martin@fd.org, susan_igras@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje−nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia−decastro.com, ysierra@rascia−decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia−decastro.com, ysierra@rascia−decastro.com

Dean R Lanter − AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick − AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov,

janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

**2:11−cr−00077−PPS−APR−1 Notice has been delivered by U.S. Mail or other means to:**

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Case No.  2:11 CR 77 PPS |
| | ) | |
| JUAN BRISENO a/k/a "Tito" | ) | |

**NOTICE OF INTENT TO SEEK THE DEATH PENALTY PURSUANT TO TITLE 18
UNITED STATES CODE SECTION 3593**

The United States of America, by and through undersigned counsel, hereby notifies this

Court and defendant Juan Briseño that the government believes the circumstances of the offenses

charged in Counts Eleven, Twelve, and Fifteen through Twenty-Four of the Third Superseding

Indictment [R. 309] are such that, in the event defendant Juan Briseño is convicted of any of

these charges, a sentence of death is justified, and the government will seek a sentence of death

for the offenses of Murder in Aid of Racketeering (18 U.S.C. § 1959), and Firearm Murder (18

U.S.C. § 924(j)), stemming from the killings of Luis Ortiz (Counts Eleven and Twelve), Michael

Sessum (Counts Fifteen and Sixteen), Miguel Mejias (Counts Seventeen and Eighteen), Harris

Brown (Counts Nineteen and Twenty), Miguel Colon (Counts Twenty-One and Twenty-Two),

and Latroy Howard (Counts Twenty-Three and Twenty-Four).

**COUNTS 11 & 12 – THE MURDER OF LUIS ORTIZ**

**(A.) <u>The government will prove the following intent factors in justifying a sentence
of death.</u>**

The defendant, Juan Briseño:

1. intentionally killed Luis Ortiz.  Title 18, United States Code, Section 3591(a)(2)(A);

2. intentionally inflicted serious bodily injury which resulted in the death of Luis Ortiz. Title 18, United States Code, Section 3591(a)(2)(B);

3. intentionally participated in an act, contemplating that the life of a person would be taken or intending that lethal force would be used in connection with a person, other than one of the participants in the offense, and Luis Ortiz died as a direct result of the act. Title 18, United States Code, Section 3591(a)(2)(C);

4. intentionally and specifically engaged in an act of violence, knowing that the act created a grave risk of death to a person, other than one of the participants in the offense, such that participation in the act constituted a reckless disregard for human life, and Luis Ortiz died as a direct result of the act. Title 18, United States Code, Section 3591(a)(2)(D).

**(B.)** **The government will prove the following statutory aggravating factors in justifying a sentence of death.**

The defendant, Juan Briseño:

5. committed the offense after substantial planning and premeditation to cause the death of a person. Title 18, United States Code, Section 3592(c)(9).

**(C.)** **Pursuant to Title 18, United States Code, Section 3593(a), the government will prove the following non-statutory aggravating factors in justifying a sentence of death.**

The defendant, Juan Briseño:

6. is a continuing danger to the lives and safety of other persons and defendant Juan Briseño is likely to commit criminal acts of violence in the future as evidenced by:

2

a) a low potential for rehabilitation as demonstrated by repeated violent criminal

acts,

b) a willingness to take human life and a lack of remorse for his acts of violence and

attempted acts of violence as demonstrated by statements that he made following

these violent acts,

c) his stated desire to impose a rule requiring fellow members of the Imperial

Gangsters to shoot at rivals on site.

7.  faces contemporaneous convictions for other criminal activity, including additional

murders and attempted murders.

8.  demonstrated an allegiance to and active membership in the Imperial Gangsters, an

organization falling within the definition of a criminal street gang, as set forth in Title 18,

United States Code, Section 521(a).

9.  caused injury, harm and loss to the victim and the victim's family and friends, as

evidenced by the victim's personal characteristics and by the impact of her death upon the

victim's family and friends.  *See Payne v. Tennessee*, 501 U.S. 808 (1991).

### COUNTS 15 & 16 – THE MURDER OF MICHAEL SESSUM

**(A.) <u>The government will prove the following intent factors in justifying a sentence
of death.</u>**

The defendant, Juan Briseño:

1. intentionally killed Michael Sessum.  Title 18, United States Code, Section

3591(a)(2)(A);

2. intentionally inflicted serious bodily injury which resulted in the death of Michael

Sessum.  Title 18, United States Code, Section 3591(a)(2)(B);

3. intentionally participated in an act, contemplating that the life of a person would be

taken or intending that lethal force would be used in connection with a person, other than

one of the participants in the offense, and Michael Sessum died as a direct result of the

act.  Title 18, United States Code, Section 3591(a)(2)(C);

4. intentionally and specifically engaged in an act of violence, knowing that the act

created a grave risk of death to a person, other than one of the participants in the offense,

such that participation in the act constituted a reckless disregard for human life, and

Michael Sessum died as a direct result of the act.  Title 18, United States Code, Section

3591(a)(2)(D).

**(B.) <u>The government will prove the following statutory aggravating factors in justifying a sentence of death.</u>**

The defendant, Juan Briseño:

5. in the commission of the offense, or in escaping apprehension for the violation of the

offense, knowingly created a grave risk of death to 1 or more persons in addition to the

victim of the offense.  Title 18, United States Code, Section 3592(c)(5)

6. committed the offense after substantial planning and premeditation to cause the death

of a person.  Title 18, United States Code, Section 3592(c)(9).

7.  in the commission of the offense, or in escaping apprehension for the violation of the

offense, knowingly created a grave risk of death to 1 or more persons in addition to the

victim of the offense.  Title 18, United States Code, Section 3592(c)(16).

4

**(C.) Pursuant to Title 18, United States Code, Section 3593(a), the government will prove the following non-statutory aggravating factors in justifying a sentence of death.**

The defendant, Juan Briseño:

8. is a continuing danger to the lives and safety of other persons and defendant Juan Briseño is likely to commit criminal acts of violence in the future as evidenced by:

    a) a low potential for rehabilitation as demonstrated by repeated violent criminal acts,

    b) a willingness to take human life and a lack of remorse for his acts of violence and attempted acts of violence as demonstrated by statements that he made following these violent acts,

    c) his stated desire to impose a rule requiring fellow members of the Imperial Gangsters to shoot at rivals on site.

9. faces contemporaneous convictions for other criminal activity, including additional murders and attempted murders.

10. demonstrated an allegiance to and active membership in the Imperial Gangsters, an organization falling within the definition of a criminal street gang, as set forth in Title 18, United States Code, Section 521(a).

11. caused injury, harm and loss to the victim and the victim's family and friends, as evidenced by the victim's personal characteristics and by the impact of her death upon the victim's family and friends. *See Payne v. Tennessee*, 501 U.S. 808 (1991).

5

**COUNTS 17 & 18 – THE MURDER OF MIGUEL MEJIAS**

**(A.)** <u>**The government will prove the following intent factors in justifying a sentence of death.**</u>

The defendant, Juan Briseño:

1. intentionally killed Miguel Mejias.  Title 18, United States Code, Section 3591(a)(2)(A);

2. intentionally inflicted serious bodily injury which resulted in the death of Miguel Mejias.  Title 18, United States Code, Section 3591(a)(2)(B);

3. intentionally participated in an act, contemplating that the life of a person would be taken or intending that lethal force would be used in connection with a person, other than one of the participants in the offense, and Miguel Mejias died as a direct result of the act. Title 18, United States Code, Section 3591(a)(2)(C);

4. intentionally and specifically engaged in an act of violence, knowing that the act created a grave risk of death to a person, other than one of the participants in the offense, such that participation in the act constituted a reckless disregard for human life, and Miguel Mejias died as a direct result of the act.  Title 18, United States Code, Section 3591(a)(2)(D).

**(B.)** <u>**The government will prove the following statutory aggravating factors in justifying a sentence of death.**</u>

The defendant, Juan Briseño:

5. in the commission of the offense, or in escaping apprehension for the violation of the offense, knowingly created a grave risk of death to 1 or more persons in addition to the victim of the offense.  Title 18, United States Code, Section 3592(c)(5)

6. committed the offense after substantial planning and premeditation to cause the death of a person. Title 18, United States Code, Section 3592(c)(9).

7. in the commission of the offense, or in escaping apprehension for the violation of the offense, knowingly created a grave risk of death to 1 or more persons in addition to the victim of the offense. Title 18, United States Code, Section 3592(c)(16).

**(C.) Pursuant to Title 18, United States Code, Section 3593(a), the government will prove the following non-statutory aggravating factors in justifying a sentence of death.**

The defendant, Juan Briseño:

8. is a continuing danger to the lives and safety of other persons and defendant Juan Briseño is likely to commit criminal acts of violence in the future as evidenced by:

a) a low potential for rehabilitation as demonstrated by repeated violent criminal acts,

b) a willingness to take human life and a lack of remorse for his acts of violence and attempted acts of violence as demonstrated by statements that he made following these violent acts,

c) his stated desire to impose a rule requiring fellow members of the Imperial Gangsters to shoot at rivals on site.

9. faces contemporaneous convictions for other criminal activity, including additional murders and attempted murders.

10. demonstrated an allegiance to and active membership in the Imperial Gangsters, an organization falling within the definition of a criminal street gang, as set forth in Title 18, United States Code, Section 521(a).

396

11. caused injury, harm and loss to the victim and the victim's family and friends, as evidenced by the victim's personal characteristics and by the impact of her death upon the victim's family and friends. *See Payne v. Tennessee*, 501 U.S. 808 (1991).

### COUNTS 19 & 20 – THE MURDER OF HARRIS BROWN

**(A.) The government will prove the following intent factors in justifying a sentence of death.**

The defendant, Juan Briseño:

1. intentionally killed Harris Brown. Title 18, United States Code, Section 3591(a)(2)(A);

2. intentionally inflicted serious bodily injury which resulted in the death of Harris Brown. Title 18, United States Code, Section 3591(a)(2)(B);

3. intentionally participated in an act, contemplating that the life of a person would be taken or intending that lethal force would be used in connection with a person, other than one of the participants in the offense, and Harris Brown died as a direct result of the act. Title 18, United States Code, Section 3591(a)(2)(C);

4. intentionally and specifically engaged in an act of violence, knowing that the act created a grave risk of death to a person, other than one of the participants in the offense, such that participation in the act constituted a reckless disregard for human life, and Harris Brown died as a direct result of the act. Title 18, United States Code, Section 3591(a)(2)(D).

**(B.) The government will prove the following statutory aggravating factors in justifying a sentence of death.**

The defendant, Juan Briseño:

8

5. committed the offense after substantial planning and premeditation to cause the death of a person.  Title 18, United States Code, Section 3592(c)(9).

**(C.)** **Pursuant to Title 18, United States Code, Section 3593(a), the government will prove the following non-statutory aggravating factors in justifying a sentence of death.**

The defendant, Juan Briseño:

6. is a continuing danger to the lives and safety of other persons and defendant Juan Briseño is likely to commit criminal acts of violence in the future as evidenced by:

a) a low potential for rehabilitation as demonstrated by repeated violent criminal acts,

b) a willingness to take human life and a lack of remorse for his acts of violence and attempted acts of violence as demonstrated by statements that he made following these violent acts,

c) his stated desire to impose a rule requiring fellow members of the Imperial Gangsters to shoot at rivals on site.

7. faces contemporaneous convictions for other criminal activity, including additional murders and attempted murders.

8. demonstrated an allegiance to and active membership in the Imperial Gangsters, an organization falling within the definition of a criminal street gang, as set forth in Title 18, United States Code, Section 521(a).

9. caused injury, harm and loss to the victim and the victim's family and friends, as evidenced by the victim's personal characteristics and by the impact of her death upon the victim's family and friends.  *See Payne v. Tennessee*, 501 U.S. 808 (1991).

9

**COUNTS 21 & 22 – THE MURDER OF MIGUEL COLON**

**(A.) The government will prove the following intent factors in justifying a sentence of death.**

The defendant, Juan Briseño:

1. intentionally killed Miguel Colon.  Title 18, United States Code, Section 3591(a)(2)(A);

2. intentionally inflicted serious bodily injury which resulted in the death of Miguel Colon.  Title 18, United States Code, Section 3591(a)(2)(B);

3. intentionally participated in an act, contemplating that the life of a person would be taken or intending that lethal force would be used in connection with a person, other than one of the participants in the offense, and Miguel Colon died as a direct result of the act.  Title 18, United States Code, Section 3591(a)(2)(C);

4. intentionally and specifically engaged in an act of violence, knowing that the act created a grave risk of death to a person, other than one of the participants in the offense, such that participation in the act constituted a reckless disregard for human life, and Miguel Colon died as a direct result of the act.  Title 18, United States Code, Section 3591(a)(2)(D).

**(B.) The government will prove the following statutory aggravating factors in justifying a sentence of death.**

The defendant, Juan Briseño:

5. in the commission of the offense, or in escaping apprehension for the violation of the offense, knowingly created a grave risk of death to 1 or more persons in addition to the victim of the offense.  Title 18, United States Code, Section 3592(c)(5)

10

6. committed the offense after substantial planning and premeditation to cause the death

of a person. Title 18, United States Code, Section 3592(c)(9).

**(C.) Pursuant to Title 18, United States Code, Section 3593(a), the government will prove the following non-statutory aggravating factors in justifying a sentence of death.**

The defendant, Juan Briseño:

7. is a continuing danger to the lives and safety of other persons and defendant Juan

Briseño is likely to commit criminal acts of violence in the future as evidenced by:

a) a low potential for rehabilitation as demonstrated by repeated violent criminal

acts,

b) a willingness to take human life and a lack of remorse for his acts of violence and

attempted acts of violence as demonstrated by statements that he made following

these violent acts,

c) his stated desire to impose a rule requiring fellow members of the Imperial

Gangsters to shoot at rivals on site.

8. faces contemporaneous convictions for other criminal activity, including additional

murders and attempted murders.

9. demonstrated an allegiance to and active membership in the Imperial Gangsters, an

organization falling within the definition of a criminal street gang, as set forth in Title 18,

United States Code, Section 521(a).

10. caused injury, harm and loss to the victim and the victim's family and friends, as

evidenced by the victim's personal characteristics and by the impact of her death upon the

victim's family and friends. *See Payne v. Tennessee*, 501 U.S. 808 (1991).

11

**COUNTS 23 & 24 – THE MURDER OF LATROY HOWARD**

(A.) **The government will prove the following intent factors in justifying a sentence of death.**

The defendant, Juan Briseño:

1. intentionally killed Latroy Howard.  Title 18, United States Code, Section 3591(a)(2)(A);

2. intentionally inflicted serious bodily injury which resulted in the death of Latroy Howard.  Title 18, United States Code, Section 3591(a)(2)(B);

3. intentionally participated in an act, contemplating that the life of a person would be taken or intending that lethal force would be used in connection with a person, other than one of the participants in the offense, and Latroy Howard died as a direct result of the act.  Title 18, United States Code, Section 3591(a)(2)(C);

4. intentionally and specifically engaged in an act of violence, knowing that the act created a grave risk of death to a person, other than one of the participants in the offense, such that participation in the act constituted a reckless disregard for human life, and Latroy Howard died as a direct result of the act.  Title 18, United States Code, Section 3591(a)(2)(D).

(B.) **The government will prove the following statutory aggravating factors in justifying a sentence of death.**

The defendant, Juan Briseño:

5. committed the offense after substantial planning and premeditation to cause the death of a person.  Title 18, United States Code, Section 3592(c)(9).

12

401

**(C.) <u>Pursuant to Title 18, United States Code, Section 3593(a), the government will prove the following non-statutory aggravating factors in justifying a sentence of death.</u>**

The defendant, Juan Briseño:

6. is a continuing danger to the lives and safety of other persons and defendant Juan Briseño is likely to commit criminal acts of violence in the future as evidenced by:

a) a low potential for rehabilitation as demonstrated by repeated violent criminal acts,

b) a willingness to take human life and a lack of remorse for his acts of violence and attempted acts of violence as demonstrated by statements that he made following these violent acts,

c) his stated desire to impose a rule requiring fellow members of the Imperial Gangsters to shoot at rivals on site.

7. faces contemporaneous convictions for other criminal activity, including additional murders and attempted murders.

8. demonstrated an allegiance to and active membership in the Imperial Gangsters, an organization falling within the definition of a criminal street gang, as set forth in Title 18, United States Code, Section 521(a).

9. caused injury, harm and loss to the victim and the victim's family and friends, as evidenced by the victim's personal characteristics and by the impact of her death upon the victim's family and friends. *See Payne v. Tennessee*, 501 U.S. 808 (1991).

13

402

**ADDITIONAL NOTICE**

The government will rely upon all of the evidence admitted by the Court in the determination of guilt, and upon the offenses of conviction as noticed in the Special Findings in the Indictment, as these prior criminal acts demonstrate the background, character, and culpability of the defendant, Juan Briseño, as well as the circumstances of the offense charged in this Indictment.

**CONCLUSION**

Based on all of the available information regarding the defendant's criminal behavior, the government believes that the above-listed intent and aggravating factors apply to defendant Juan Briseño.  Should additional information become available which is applicable to these factors or should additional information become available that supports additional factors, the government will seek to amend this Notice at a reasonable time prior to trial.

Respectfully submitted,

DAVID CAPP
UNITED STATES ATTORNEY

By:    /s/ David J. Nozick
       David J. Nozick
       Assistant United States Attorney
       5400 Federal Plaza, Suite 1500
       Hammond, Indiana 46320
       (219) 937-5500

14

403

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION


UNITED STATES OF AMERICA        )
                                )
            v.                  )        NO. 2:11 CR 77 PPS
                                )
JUAN BRISENO                    )


CERTIFICATE OF SERVICE

The undersigned hereby certifies that the government's Notice of Intent to Seek

the Death Penalty Pursuant to Title 18, United States Code, Section 3593 was electronically filed

with the Clerk of the Court using the CM/ECF system which sent notification of said filing to the

following individuals:

        ARLINGTON J. FOLEY
        JOHN MAKSIMOVICH
        (Attorneys for defendant Juan Briseno)




                        By:     /s/ Janet L. Eisenmann
                                Janet L. Eisenmann
                                U.S. Attorney's Office
                                5400 Federal Plaza, Suite 1500
                                Hammond, Indiana 46320
                                (219) 937-5500


404

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | |
| **Plaintiff** | |
| **vs** | |
| **JUAN BRISENO,** | |
| **Defendant** | **CAUSE NO:   2:11-CR-77** |

### NOTICE OF MANUAL FILING

Sealed document is in paper form only and is being maintained in the case file in the

Clerk's Office.

**Respectfully submitted:**

/s/ *Arlington Foley*

Arlington Foley /#6905-45
Attorney For Defendant
1942 North Main Street
Crown Point, IN 46307
PH: 219.661.1200
FX: 219.661.1205

/s/ *John Maksimovich*

John Maksimovich /#9950-45
Attorney For Defendant
1946 North Main Street
Crown Point, IN 46307
PH: 219.663.1900
FX: 219.663.1908

Date:        March 14, 2013

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

**UNITED STATES OF AMERICA,**

                    **Plaintiff**

**vs**

**JUAN BRISENO,**

                    **Defendant**                    **CAUSE NO:   2:11-CR-77**

## NOTICE OF MANUAL FILING

Sealed document is in paper form only and is being maintained in the case file in the

Clerk's Office.

**Respectfully submitted:**

/s/ *Arlington Foley*                              /s/ *John Maksimovich*

Arlington Foley /#6905-45                     John Maksimovich /#9950-45
Attorney For Defendant                        Attorney For Defendant
1942 North Main Street                        1946 North Main Street
Crown Point, IN 46307                         Crown Point, IN 46307
PH: 219.661.1200                              PH: 219.663.1900
FX: 219.661.1205                              FX: 219.663.1908

Date:        March 21, 2013

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| VS. | ) CASE NO: 2:11 CR 77 |
| | ) |
| JUAN BRISENO | ) |

### DEFENDANT'S, MOTION EXTEND THE TIME
### FOR FILING PRETRIAL MOTIONS

Comes now the Defendant, Juan Briseno, by and through counsel and moves the Court to extend the time for filing pretrial motions and in support says:

1. That the present deadline for the Defendant to file pretrial motions is March 31, 2013.

2. That recently the government has filed its notice of its intention to seek the death penalty against the Defendant, Juan Briseno.

3. That due to this recent filing of the government, counsel for the Defendant reasonably believe that their preparation of the filing of pretrial motions will and has dramatically changed.

4. Additionally, this case involves allegations of at least six (6) murders and two (2) attempted murders allegedly committed by the Defendant, Juan Briseno, as well as racketeering charges and conspiracy charges.

5. That the discovery materials are voluminous and the issues are extremely complex and, as such, additional time is required in order to explore, prepare and file pretrial motions herein on behalf of the Defendant, Juan Briseno, who now faces the possibility of a sentence of death.

407

6. That counsel for the Defendant have advised the government attorney of their intent to file this motion and they have been advised that the government has no objection to the Court extending the time for the Defendant to file pretrial motions.

**WHEREFORE:** The Defendant, Juan Briseno, moves the Court to extend the deadline for Defendant to file pretrial motions to June 30, 2013.

RESPECTFULLY SUBMITTED:

s/Arlington J. Foley                          s/John Maksimovich
Arlington J. Foley, Atty. #6905-45    John Maksimovich, Atty. #9950-45
Attorney for Defendant, Juan Briseno  Attorney for Defendant, Juan Briseno
1942 North Main Street                1946 North Main Street
Crown Point, IN 46307                 Crown Point, IN 46307
Tel: (219) 661-1200                   Tel: (219) 663-1900

**CERTIFICATE OF SERVICE**

I certify that on the 22nd day of March, 2013 service of a true and complete copy of the above and foregoing pleading or paper was made upon each party or attorney of record herein by the electronic case filing system (ECF).

By:    s/Arlington J. Foley
        Arlington J. Foley
        Attorney at Law

408

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CAUSE NO. 2:11 CR 77 |
| | ) | |
| JUAN BRISENO | ) | |

**ORDER**

This matter is before the court on the Defendant's Motion to Extend the Time for Filing Pretrial Motions [DE 519]. The government having no objection and the court being duly advised in the premises, IT IS HEREBY ORDERED that all pretrial motions are due by June 30, 2013.

ENTERED this 22nd day of March, 2013

/s/ Andrew P. Rodovich
United States Magistrate Judge

1

```
MIME-Version:1.0
From:CMECFinnd@innd.uscourts.gov
To:CMECFinnd@localhost.localdomain
Bcc:
--Case Participants: Bryan M Truitt (bryan@tblawyers.com, sherrie@tblawyers.com), David J
Nozick - AUSA (david.nozick@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov,
susan.devries@usdoj.gov, usainn.ecfcivil@usdoj.gov), Matthew D Soliday
(matt@matthewsolidaylaw.com, office@matthewsolidaylaw.com), Kurt R Earnst
(kre@braje-nelson.com), Paul Jeffrey Schlesinger (pjeffslaw@aol.com), Pablo DeCastro
(pdecastro@rascia-decastro.com, ysierra@rascia-decastro.com), Sheldon B Nagelberg
(sbnagelberglaw@att.net), Thomas W Vanes (tom.vanes@sbcglobal.net), John T Theis
(theislaw@aol.com), Catherine A Lake (attyclake@sbcglobal.net), Adam Tavitas
(adtavitas@aol.com, b.lynneadams@yahoo.com), Dean R Lanter - AUSA (dean.lanter@usdoj.gov,
janet.eisenmann@usdoj.gov, usainn.ecfcivil@usdoj.gov), John E Martin - FCD
(john_martin@fd.org), Scott L King (jwilliams@scottkinggroup.com,
sking@scottkinggroup.com), Mark A Psimos (psimoslaw@airbaud.net), James N Thiros
(jim@thiros.com, lynn@thiros.com), Robert L Rascia (rrascia@rascia-decastro.com,
ysierra@rascia-decastro.com), Gojko Kasich (gkasich@crownlaw.com), Arlington J Foley
(arlingtonfoley@att.net), Kerry C Connor (kcconnor@sbcglobal.net), Roxanne Mendez Johnson
(attorneyrmj@gmail.com), Visvaldis P Kupsis (vpkupsis@hotmail.com), Stephen Edward Scheele
(pkd@gk4law.com, ses@gk4law.com), Jack Friedlander (jack@jackfriedlander.com,
office@jackfriedlander.com), Clark W Holesinger (334office@frontier.com,
arcclark@frontier.com, clark.334@frontier.com), R Brian Woodward (carolb@wbbklaw.com,
rbwoodward@wbbklaw.com), John Maksimovich (criminallaw@johnmaksimovich.com), Magistrate
Judge Andrew P Rodovich (rodovich_chambers@innd.uscourts.gov), Chief Judge Philip P Simon
(denise_woodside@innd.uscourts.gov, joshua_urquhart@innd.uscourts.gov,
katherine_welsh@innd.uscourts.gov, mark_hancock@innd.uscourts.gov,
noel_collins@innd.uscourts.gov, philip_simon@innd.uscourts.gov)
--Non Case Participants: Probation/Pretrial Services (innpml_cmecf@innd.uscourts.gov), U S
Marshal (inn.docket-fw@usdoj.gov, inn.docket-sb@usdoj.gov, usms.27@usdoj.gov)
--No Notice Sent:

Message-Id:2237254@innd.uscourts.gov
Subject:Activity in Case 2:11-cr-00077-PPS-APR United States of America v. Briseno et al
Notice of Hearing/Deadlines
Content-Type: text/html
```

### U.S. District Court Northern District of Indiana [LIVE]

### USDC Northern Indiana

## Notice of Electronic Filing

The following transaction was entered on 4/11/2013 at 5:52 PM EST and filed on 4/11/2013

| | |
|---|---|
| **Case Name:** | United States of America v. Briseno et al |
| **Case Number:** | 2:11–cr–00077–PPS–APR |
| **Filer:** | |
| **Document Number:** | 551(No document attached) |

**Docket Text:**
**STATUS CONFERENCE now scheduled for 5/29/2013 at 10:45 a.m. before Chief Judge Philip P. Simon in U.S. District Court – Hammond. Individual defendants are NOT required to appear. The U.S. Marshal shall not produce any dfts for this hearing. Only counsel for those defendants who have not pleaded guilty shall be required to appear. (nac)**

410

**2:11–cr–00077–PPS–APR–1 Notice has been electronically mailed to:**

Arlington J Foley    arlingtonfoley@att.net

Mark A Psimos    psimoslaw@airbaud.net

Gojko Kasich    gkasich@crownlaw.com

Matthew D Soliday    matt@matthewsolidaylaw.com, office@matthewsolidaylaw.com

Scott L King    sking@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake    attyclake@sbcglobal.net

James N Thiros    jim@thiros.com, lynn@thiros.com

Thomas W Vanes    tom.vanes@sbcglobal.net

R Brian Woodward    rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger    clark.334@frontier.com, 334office@frontier.com, arcclark@frontier.com

John Maksimovich    criminallaw@johnmaksimovich.com

Visvaldis P Kupsis    vpkupsis@hotmail.com

Sheldon B Nagelberg    sbnagelberglaw@att.net

John E Martin – FCD    john_martin@fd.org

Adam Tavitas    Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander    jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele    ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst    kre@braje–nelson.com

Bryan M Truitt    bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis    theislaw@aol.com

Robert L Rascia    rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger    pjeffslaw@aol.com

Pablo DeCastro    pdecastro@rascia–decastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA    dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA    David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Kerry C Connor kcconnor@sbcglobal.net

**2:11−cr−00077−PPS−APR−1 Notice has been delivered by U.S. Mail or other means to:**

**2:11−cr−00077−PPS−APR−2 Notice has been electronically mailed to:**

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com

Matthew D Soliday matt@matthewsolidaylaw.com, office@matthewsolidaylaw.com

Scott L King sking@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, 334office@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin − FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje−nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia−decastro.com, ysierra@rascia−decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia–decastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Kerry C Connor kcconnor@sbcglobal.net

**2:11–cr–00077–PPS–APR–2 Notice has been delivered by U.S. Mail or other means to:**

**2:11–cr–00077–PPS–APR–3 Notice has been electronically mailed to:**

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com

Matthew D Soliday matt@matthewsolidaylaw.com, office@matthewsolidaylaw.com

Scott L King sking@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, 334office@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje–nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia–decastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Kerry C Connor kcconnor@sbcglobal.net

**2:11–cr–00077–PPS–APR–3 Notice has been delivered by U.S. Mail or other means to:**

**2:11–cr–00077–PPS–APR–4 Notice has been electronically mailed to:**

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com

Matthew D Soliday matt@matthewsolidaylaw.com, office@matthewsolidaylaw.com

Scott L King sking@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, 334office@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje−nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia−decastro.com, ysierra@rascia−decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia−decastro.com, ysierra@rascia−decastro.com

Dean R Lanter − AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick − AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Kerry C Connor kcconnor@sbcglobal.net

**2:11−cr−00077−PPS−APR−4 Notice has been delivered by U.S. Mail or other means to:**

**2:11−cr−00077−PPS−APR−5 Notice has been electronically mailed to:**

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com

Matthew D Soliday matt@matthewsolidaylaw.com, office@matthewsolidaylaw.com

Scott L King sking@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, 334office@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje–nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia–decastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Kerry C Connor kcconnor@sbcglobal.net

**2:11–cr–00077–PPS–APR–5 Notice has been delivered by U.S. Mail or other means to:**

**2:11–cr–00077–PPS–APR–6 Notice has been electronically mailed to:**

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com

Matthew D Soliday matt@matthewsolidaylaw.com, office@matthewsolidaylaw.com

Scott L King sking@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, 334office@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje–nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia–decastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Kerry C Connor kcconnor@sbcglobal.net

**2:11–cr–00077–PPS–APR–6 Notice has been delivered by U.S. Mail or other means to:**

**2:11–cr–00077–PPS–APR–7 Notice has been electronically mailed to:**

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com

Matthew D Soliday matt@matthewsolidaylaw.com, office@matthewsolidaylaw.com

Scott L King sking@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, 334office@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje−nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia−decastro.com, ysierra@rascia−decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia−decastro.com, ysierra@rascia−decastro.com

Dean R Lanter – AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Kerry C Connor kcconnor@sbcglobal.net

**2:11−cr−00077−PPS−APR−7 Notice has been delivered by U.S. Mail or other means to:**

**2:11−cr−00077−PPS−APR−8 Notice has been electronically mailed to:**

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com

Matthew D Soliday matt@matthewsolidaylaw.com, office@matthewsolidaylaw.com

Scott L King sking@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, 334office@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje–nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia–decastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

419

Kerry C Connor kcconnor@sbcglobal.net

**2:11−cr−00077−PPS−APR−8 Notice has been delivered by U.S. Mail or other means to:**

**2:11−cr−00077−PPS−APR−9 Notice has been electronically mailed to:**

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com

Matthew D Soliday matt@matthewsolidaylaw.com, office@matthewsolidaylaw.com

Scott L King sking@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, 334office@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin − FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje−nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia−decastro.com, ysierra@rascia−decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia−decastro.com, ysierra@rascia−decastro.com

Dean R Lanter – AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Kerry C Connor kcconnor@sbcglobal.net

**2:11−cr−00077−PPS−APR−9 Notice has been delivered by U.S. Mail or other means to:**

**2:11−cr−00077−PPS−APR−10 Notice has been electronically mailed to:**

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com

Matthew D Soliday matt@matthewsolidaylaw.com, office@matthewsolidaylaw.com

Scott L King sking@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, 334office@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje−nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia−decastro.com, ysierra@rascia−decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia−decastro.com, ysierra@rascia−decastro.com

Dean R Lanter − AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick − AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Kerry C Connor kcconnor@sbcglobal.net

**2:11−cr−00077−PPS−APR−10 Notice has been delivered by U.S. Mail or other means to:**

**2:11−cr−00077−PPS−APR−11 Notice has been electronically mailed to:**

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com

Matthew D Soliday matt@matthewsolidaylaw.com, office@matthewsolidaylaw.com

Scott L King sking@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, 334office@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin − FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje−nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia−decastro.com, ysierra@rascia−decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia−decastro.com, ysierra@rascia−decastro.com

Dean R Lanter − AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick − AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Kerry C Connor kcconnor@sbcglobal.net

**2:11−cr−00077−PPS−APR−11 Notice has been delivered by U.S. Mail or other means to:**

**2:11−cr−00077−PPS−APR−12 Notice has been electronically mailed to:**

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com

Matthew D Soliday matt@matthewsolidaylaw.com, office@matthewsolidaylaw.com

Scott L King sking@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, 334office@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje–nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia–decastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Kerry C Connor kcconnor@sbcglobal.net

**2:11–cr–00077–PPS–APR–12 Notice has been delivered by U.S. Mail or other means to:**

**2:11–cr–00077–PPS–APR–13 Notice has been electronically mailed to:**

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com

Matthew D Soliday matt@matthewsolidaylaw.com, office@matthewsolidaylaw.com

Scott L King sking@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, 334office@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje–nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia–decastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Kerry C Connor kcconnor@sbcglobal.net

**2:11–cr–00077–PPS–APR–13 Notice has been delivered by U.S. Mail or other means to:**

**2:11–cr–00077–PPS–APR–14 Notice has been electronically mailed to:**

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com

Matthew D Soliday matt@matthewsolidaylaw.com, office@matthewsolidaylaw.com

Scott L King sking@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, 334office@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje–nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia–decastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Kerry C Connor kcconnor@sbcglobal.net

**2:11–cr–00077–PPS–APR–14 Notice has been delivered by U.S. Mail or other means to:**

**2:11–cr–00077–PPS–APR–15 Notice has been electronically mailed to:**

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

426

Gojko Kasich gkasich@crownlaw.com

Matthew D Soliday matt@matthewsolidaylaw.com, office@matthewsolidaylaw.com

Scott L King sking@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, 334office@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje–nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia–decastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Kerry C Connor kcconnor@sbcglobal.net

**2:11–cr–00077–PPS–APR–15 Notice has been delivered by U.S. Mail or other means to:**

**2:11−cr−00077−PPS−APR−16 Notice has been electronically mailed to:**

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com

Matthew D Soliday matt@matthewsolidaylaw.com, office@matthewsolidaylaw.com

Scott L King sking@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, 334office@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin − FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje−nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia−decastro.com, ysierra@rascia−decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia−decastro.com, ysierra@rascia−decastro.com

Dean R Lanter − AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick − AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov,

janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Kerry C Connor kcconnor@sbcglobal.net

**2:11–cr–00077–PPS–APR–16 Notice has been delivered by U.S. Mail or other means to:**

**2:11–cr–00077–PPS–APR–17 Notice has been electronically mailed to:**

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com

Matthew D Soliday matt@matthewsolidaylaw.com, office@matthewsolidaylaw.com

Scott L King sking@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, 334office@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje–nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia−decastro.com, ysierra@rascia−decastro.com

Dean R Lanter – AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Kerry C Connor kcconnor@sbcglobal.net

**2:11−cr−00077−PPS−APR−17 Notice has been delivered by U.S. Mail or other means to:**

**2:11−cr−00077−PPS−APR−18 Notice has been electronically mailed to:**

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com

Matthew D Soliday matt@matthewsolidaylaw.com, office@matthewsolidaylaw.com

Scott L King sking@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, 334office@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje−nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia−decastro.com, ysierra@rascia−decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia−decastro.com, ysierra@rascia−decastro.com

Dean R Lanter − AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick − AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Kerry C Connor kcconnor@sbcglobal.net

**2:11−cr−00077−PPS−APR−18 Notice has been delivered by U.S. Mail or other means to:**

**2:11−cr−00077−PPS−APR−19 Notice has been electronically mailed to:**

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com

Matthew D Soliday matt@matthewsolidaylaw.com, office@matthewsolidaylaw.com

Scott L King sking@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, 334office@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin − FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje−nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia−decastro.com, ysierra@rascia−decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia−decastro.com, ysierra@rascia−decastro.com

Dean R Lanter − AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick − AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov,
janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Kerry C Connor kcconnor@sbcglobal.net

**2:11−cr−00077−PPS−APR−19 Notice has been delivered by U.S. Mail or other means to:**

**2:11−cr−00077−PPS−APR−20 Notice has been electronically mailed to:**

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com

Matthew D Soliday matt@matthewsolidaylaw.com, office@matthewsolidaylaw.com

Scott L King sking@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, 334office@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje–nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia–decastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Kerry C Connor kcconnor@sbcglobal.net

**2:11–cr–00077–PPS–APR–20 Notice has been delivered by U.S. Mail or other means to:**

**2:11–cr–00077–PPS–APR–21 Notice has been electronically mailed to:**

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com

Matthew D Soliday matt@matthewsolidaylaw.com, office@matthewsolidaylaw.com

Scott L King sking@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, 334office@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje–nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia–decastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov,
janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Kerry C Connor kcconnor@sbcglobal.net

**2:11–cr–00077–PPS–APR–21 Notice has been delivered by U.S. Mail or other means to:**

**2:11–cr–00077–PPS–APR–22 Notice has been electronically mailed to:**

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com

Matthew D Soliday matt@matthewsolidaylaw.com, office@matthewsolidaylaw.com

Scott L King sking@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, 334office@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje–nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia–decastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Kerry C Connor kcconnor@sbcglobal.net

**2:11–cr–00077–PPS–APR–22 Notice has been delivered by U.S. Mail or other means to:**

**2:11–cr–00077–PPS–APR–23 Notice has been electronically mailed to:**

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com

Matthew D Soliday matt@matthewsolidaylaw.com, office@matthewsolidaylaw.com

Scott L King sking@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, 334office@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje–nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia–decastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

436

Kerry C Connor kcconnor@sbcglobal.net

**2:11−cr−00077−PPS−APR−23 Notice has been delivered by U.S. Mail or other means to:**

```
MIME-Version:1.0
From:CMECFinnd@innd.uscourts.gov
To:CMECFinnd@localhost.localdomain
Bcc:
--Case Participants: Bryan M Truitt (bryan@tblawyers.com, sherrie@tblawyers.com), David J
Nozick – AUSA (david.nozick@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov,
susan.devries@usdoj.gov, usainn.ecfcivil@usdoj.gov), Matthew D Soliday
(matt@matthewsolidaylaw.com, office@matthewsolidaylaw.com), Kurt R Earnst
(kre@braje-nelson.com), Paul Jeffrey Schlesinger (pjeffslaw@aol.com), Pablo DeCastro
(pdecastro@rascia-decastro.com, ysierra@rascia-decastro.com), Sheldon B Nagelberg
(sbnagelberglaw@att.net), Thomas W Vanes (tom.vanes@sbcglobal.net), John T Theis
(theislaw@aol.com), Catherine A Lake (attyclake@sbcglobal.net), Adam Tavitas
(adtavitas@aol.com, b.lynneadams@yahoo.com), Dean R Lanter – AUSA (dean.lanter@usdoj.gov,
janet.eisenmann@usdoj.gov, usainn.ecfcivil@usdoj.gov), John E Martin – FCD
(john_martin@fd.org), Scott L King (jwilliams@scottkinggroup.com,
sking@scottkinggroup.com), Mark A Psimos (psimoslaw@airbaud.net), James N Thiros
(jim@thiros.com, lynn@thiros.com), Robert L Rascia (rrascia@rascia-decastro.com,
ysierra@rascia-decastro.com), Gojko Kasich (gkasich@crownlaw.com), Arlington J Foley
(arlingtonfoley@att.net), Kerry C Connor (kcconnor@sbcglobal.net), Roxanne Mendez Johnson
(attorneyrmj@gmail.com), Visvaldis P Kupsis (vpkupsis@hotmail.com), Stephen Edward Scheele
(pkd@gk4law.com, ses@gk4law.com), Jack Friedlander (jack@jackfriedlander.com,
office@jackfriedlander.com), Clark W Holesinger (334office@frontier.com,
arcclark@frontier.com, clark.334@frontier.com), R Brian Woodward (carolb@wbbklaw.com,
rbwoodward@wbbklaw.com), John Maksimovich (criminallaw@johnmaksimovich.com), Magistrate
Judge Andrew P Rodovich (rodovich_chambers@innd.uscourts.gov), Chief Judge Philip P Simon
(denise_woodside@innd.uscourts.gov, joshua_urquhart@innd.uscourts.gov,
katherine_welsh@innd.uscourts.gov, mark_hancock@innd.uscourts.gov,
noel_collins@innd.uscourts.gov, philip_simon@innd.uscourts.gov)
--Non Case Participants: Probation/Pretrial Services (innpml_cmecf@innd.uscourts.gov), U S
Marshal (inn.docket-fw@usdoj.gov, inn.docket-sb@usdoj.gov, usms.27@usdoj.gov)
--No Notice Sent:

Message-Id:2237834@innd.uscourts.gov
Subject:Activity in Case 2:11-cr-00077-PPS-APR United States of America v. Briseno et al
Notice of Hearing/Deadlines
Content–Type: text/html
```

## U.S. District Court Northern District of Indiana [LIVE]

## USDC Northern Indiana

## Notice of Electronic Filing

The following transaction was entered on 4/12/2013 at 12:39 PM EST and filed on 4/12/2013

| | |
|---|---|
| **Case Name:** | United States of America v. Briseno et al |
| **Case Number:** | 2:11–cr–00077–PPS–APR |
| **Filer:** | |
| **Document Number:** | 552(No document attached) |

**Docket Text:**

**NOTICE OF HEARING – STATUS CONFERENCE: The Status Conference previously scheduled for 5/29/2013 is now RESET for 4/22/2013 at 01:00 PM (Central/Hammond time) in US District Court – Hammond before Chief Judge Philip P Simon. Only counsel for those defendants who have not pleaded guilty are required to attend. The USM is not required to produce any dfts for this hearing. (nac)**

**2:11−cr−00077−PPS−APR−1 Notice has been electronically mailed to:**

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com

Matthew D Soliday matt@matthewsolidaylaw.com, office@matthewsolidaylaw.com

Scott L King sking@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, 334office@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje−nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia−decastro.com, ysierra@rascia−decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia−decastro.com, ysierra@rascia−decastro.com

Dean R Lanter – AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov,

janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Kerry C Connor kcconnor@sbcglobal.net

**2:11–cr–00077–PPS–APR–1 Notice has been delivered by U.S. Mail or other means to:**

**2:11–cr–00077–PPS–APR–2 Notice has been electronically mailed to:**

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com

Matthew D Soliday matt@matthewsolidaylaw.com, office@matthewsolidaylaw.com

Scott L King sking@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, 334office@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje–nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia−decastro.com, ysierra@rascia−decastro.com

Dean R Lanter – AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Kerry C Connor kcconnor@sbcglobal.net

**2:11−cr−00077−PPS−APR−2 Notice has been delivered by U.S. Mail or other means to:**

**2:11−cr−00077−PPS−APR−3 Notice has been electronically mailed to:**

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com

Matthew D Soliday matt@matthewsolidaylaw.com, office@matthewsolidaylaw.com

Scott L King sking@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, 334office@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje−nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia–decastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Kerry C Connor kcconnor@sbcglobal.net

**2:11–cr–00077–PPS–APR–3 Notice has been delivered by U.S. Mail or other means to:**

**2:11–cr–00077–PPS–APR–4 Notice has been electronically mailed to:**

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com

Matthew D Soliday matt@matthewsolidaylaw.com, office@matthewsolidaylaw.com

Scott L King sking@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, 334office@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje−nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia−decastro.com, ysierra@rascia−decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia−decastro.com, ysierra@rascia−decastro.com

Dean R Lanter − AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick − AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Kerry C Connor kcconnor@sbcglobal.net

**2:11−cr−00077−PPS−APR−4 Notice has been delivered by U.S. Mail or other means to:**

**2:11−cr−00077−PPS−APR−5 Notice has been electronically mailed to:**

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com

Matthew D Soliday matt@matthewsolidaylaw.com, office@matthewsolidaylaw.com

Scott L King sking@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, 334office@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

443

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje–nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia–decastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Kerry C Connor kcconnor@sbcglobal.net

**2:11–cr–00077–PPS–APR–5 Notice has been delivered by U.S. Mail or other means to:**

**2:11–cr–00077–PPS–APR–6 Notice has been electronically mailed to:**

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com

Matthew D Soliday matt@matthewsolidaylaw.com, office@matthewsolidaylaw.com

Scott L King sking@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

444

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, 334office@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje–nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia–decastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Kerry C Connor kcconnor@sbcglobal.net

**2:11–cr–00077–PPS–APR–6 Notice has been delivered by U.S. Mail or other means to:**

**2:11–cr–00077–PPS–APR–7 Notice has been electronically mailed to:**

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com

Matthew D Soliday matt@matthewsolidaylaw.com, office@matthewsolidaylaw.com

Scott L King sking@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, 334office@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje–nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia–decastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Kerry C Connor kcconnor@sbcglobal.net

**2:11–cr–00077–PPS–APR–7 Notice has been delivered by U.S. Mail or other means to:**

**2:11–cr–00077–PPS–APR–8 Notice has been electronically mailed to:**

446

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com

Matthew D Soliday matt@matthewsolidaylaw.com, office@matthewsolidaylaw.com

Scott L King sking@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, 334office@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje−nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia−decastro.com, ysierra@rascia−decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia−decastro.com, ysierra@rascia−decastro.com

Dean R Lanter – AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Kerry C Connor kcconnor@sbcglobal.net

**2:11–cr–00077–PPS–APR–8 Notice has been delivered by U.S. Mail or other means to:**

**2:11–cr–00077–PPS–APR–9 Notice has been electronically mailed to:**

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com

Matthew D Soliday matt@matthewsolidaylaw.com, office@matthewsolidaylaw.com

Scott L King sking@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, 334office@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje–nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia–decastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Kerry C Connor kcconnor@sbcglobal.net

**2:11−cr−00077−PPS−APR−9 Notice has been delivered by U.S. Mail or other means to:**

**2:11−cr−00077−PPS−APR−10 Notice has been electronically mailed to:**

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com

Matthew D Soliday matt@matthewsolidaylaw.com, office@matthewsolidaylaw.com

Scott L King sking@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, 334office@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje−nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia–decastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Kerry C Connor kcconnor@sbcglobal.net

**2:11–cr–00077–PPS–APR–10 Notice has been delivered by U.S. Mail or other means to:**

**2:11–cr–00077–PPS–APR–11 Notice has been electronically mailed to:**

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com

Matthew D Soliday matt@matthewsolidaylaw.com, office@matthewsolidaylaw.com

Scott L King sking@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, 334office@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje−nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia−decastro.com, ysierra@rascia−decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia−decastro.com, ysierra@rascia−decastro.com

Dean R Lanter − AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick − AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Kerry C Connor kcconnor@sbcglobal.net

**2:11−cr−00077−PPS−APR−11 Notice has been delivered by U.S. Mail or other means to:**

**2:11−cr−00077−PPS−APR−12 Notice has been electronically mailed to:**

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com

Matthew D Soliday matt@matthewsolidaylaw.com, office@matthewsolidaylaw.com

Scott L King sking@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, 334office@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje–nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia–decastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Kerry C Connor kcconnor@sbcglobal.net

**2:11–cr–00077–PPS–APR–12 Notice has been delivered by U.S. Mail or other means to:**

**2:11–cr–00077–PPS–APR–13 Notice has been electronically mailed to:**

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com

Matthew D Soliday matt@matthewsolidaylaw.com, office@matthewsolidaylaw.com

Scott L King sking@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, 334office@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje–nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia–decastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Kerry C Connor kcconnor@sbcglobal.net

**2:11–cr–00077–PPS–APR–13 Notice has been delivered by U.S. Mail or other means to:**

**2:11–cr–00077–PPS–APR–14 Notice has been electronically mailed to:**

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com

Matthew D Soliday matt@matthewsolidaylaw.com, office@matthewsolidaylaw.com

Scott L King sking@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, 334office@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje–nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia–decastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov,
janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Kerry C Connor kcconnor@sbcglobal.net

**2:11–cr–00077–PPS–APR–14 Notice has been delivered by U.S. Mail or other means to:**

**2:11–cr–00077–PPS–APR–15 Notice has been electronically mailed to:**

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com

Matthew D Soliday matt@matthewsolidaylaw.com, office@matthewsolidaylaw.com

Scott L King sking@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, 334office@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje–nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia–decastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Kerry C Connor kcconnor@sbcglobal.net

**2:11−cr−00077−PPS−APR−15 Notice has been delivered by U.S. Mail or other means to:**

**2:11−cr−00077−PPS−APR−16 Notice has been electronically mailed to:**

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com

Matthew D Soliday matt@matthewsolidaylaw.com, office@matthewsolidaylaw.com

Scott L King sking@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, 334office@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin − FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje−nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia−decastro.com, ysierra@rascia−decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia−decastro.com, ysierra@rascia−decastro.com

Dean R Lanter − AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Kerry C Connor kcconnor@sbcglobal.net

**2:11–cr–00077–PPS–APR–16 Notice has been delivered by U.S. Mail or other means to:**

**2:11–cr–00077–PPS–APR–17 Notice has been electronically mailed to:**

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com

Matthew D Soliday matt@matthewsolidaylaw.com, office@matthewsolidaylaw.com

Scott L King sking@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, 334office@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje–nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia−decastro.com, ysierra@rascia−decastro.com

Dean R Lanter − AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick − AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Kerry C Connor kcconnor@sbcglobal.net

**2:11−cr−00077−PPS−APR−17 Notice has been delivered by U.S. Mail or other means to:**

**2:11−cr−00077−PPS−APR−18 Notice has been electronically mailed to:**

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com

Matthew D Soliday matt@matthewsolidaylaw.com, office@matthewsolidaylaw.com

Scott L King sking@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, 334office@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin − FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje−nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia−decastro.com, ysierra@rascia−decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia−decastro.com, ysierra@rascia−decastro.com

Dean R Lanter − AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick − AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Kerry C Connor kcconnor@sbcglobal.net

**2:11−cr−00077−PPS−APR−18 Notice has been delivered by U.S. Mail or other means to:**

**2:11−cr−00077−PPS−APR−19 Notice has been electronically mailed to:**

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com

Matthew D Soliday matt@matthewsolidaylaw.com, office@matthewsolidaylaw.com

Scott L King sking@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, 334office@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin − FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje−nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia−decastro.com, ysierra@rascia−decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia−decastro.com, ysierra@rascia−decastro.com

Dean R Lanter − AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick − AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Kerry C Connor kcconnor@sbcglobal.net

**2:11−cr−00077−PPS−APR−19 Notice has been delivered by U.S. Mail or other means to:**

**2:11−cr−00077−PPS−APR−20 Notice has been electronically mailed to:**

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com

Matthew D Soliday matt@matthewsolidaylaw.com, office@matthewsolidaylaw.com

Scott L King sking@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, 334office@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje–nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia–decastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Kerry C Connor kcconnor@sbcglobal.net

**2:11–cr–00077–PPS–APR–20 Notice has been delivered by U.S. Mail or other means to:**

**2:11–cr–00077–PPS–APR–21 Notice has been electronically mailed to:**

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com

Matthew D Soliday matt@matthewsolidaylaw.com, office@matthewsolidaylaw.com

Scott L King sking@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, 334office@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje–nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia–decastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Kerry C Connor kcconnor@sbcglobal.net

**2:11–cr–00077–PPS–APR–21 Notice has been delivered by U.S. Mail or other means to:**

**2:11–cr–00077–PPS–APR–22 Notice has been electronically mailed to:**

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com

Matthew D Soliday matt@matthewsolidaylaw.com, office@matthewsolidaylaw.com

Scott L King sking@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, 334office@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje–nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia–decastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Kerry C Connor kcconnor@sbcglobal.net

**2:11–cr–00077–PPS–APR–22 Notice has been delivered by U.S. Mail or other means to:**

**2:11–cr–00077–PPS–APR–23 Notice has been electronically mailed to:**

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com

Matthew D Soliday matt@matthewsolidaylaw.com, office@matthewsolidaylaw.com

Scott L King sking@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, 334office@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje–nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia–decastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Kerry C Connor kcconnor@sbcglobal.net

**2:11−cr−00077−PPS−APR−23 Notice has been delivered by U.S. Mail or other means to:**

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | NO. 2:11CR77 PPS |
| | ) | |
| JUAN BRISENO, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

Any motions to continue the current October 21, 2013 trial setting are to be filed by **May 22, 2013.** Any memoranda in opposition should be filed within 14 days of the motion, and any reply within 7 days of the opposition.

The government shall file any additional notices of intent to seek the death penalty pursuant to 18 U.S.C. §3593(a) no later than **August 1, 2013.**

An in-person status conference is set for **Thursday, August 29, 2013 at 1:00 p.m.** CST. Individual defendants are not required to appear and the U.S. Marshal shall not produce any defendants for this conference. Only counsel for the government and for defendants who have not entered pleas of guilty are required to appear.

SO ORDERED.

ENTERED: April 22, 2013.

 /s/ Philip P. Simon
PHILIP P. SIMON, CHIEF JUDGE
UNITED STATES DISTRICT COURT

```
MIME-Version:1.0
From:CMECFinnd@innd.uscourts.gov
To:CMECFinnd@localhost.localdomain
Bcc:
--Case Participants: Kerry C Connor (kcconnor@sbcglobal.net), Pablo DeCastro
(pdecastro@rascia-decastro.com, ysierra@rascia-decastro.com), Kurt R Earnst
(kre@braje-nelson.com), Arlington J Foley (arlingtonfoley@att.net), Jack Friedlander
(jack@jackfriedlander.com, office@jackfriedlander.com), Clark W Holesinger
(334office@frontier.com, arcclark@frontier.com, clark.334@frontier.com), Roxanne Mendez
Johnson (attorneyrmj@gmail.com), Gojko Kasich (gkasich@crownlaw.com), Scott L King
(jwilliams@scottkinggroup.com, sking@scottkinggroup.com), Visvaldis P Kupsis
(vpkupsis@hotmail.com), Catherine A Lake (attyclake@sbcglobal.net), Dean R Lanter - AUSA
(dean.lanter@usdoj.gov, janet.eisenmann@usdoj.gov, usainn.ecfcivil@usdoj.gov), John
Maksimovich (criminallaw@johnmaksimovich.com), John E Martin - FCD (john_martin@fd.org),
Sheldon B Nagelberg (sbnagelberglaw@att.net), David J Nozick - AUSA
(david.nozick@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov,
susan.devries@usdoj.gov, usainn.ecfcivil@usdoj.gov), Mark A Psimos
(psimoslaw@airbaud.net), Robert L Rascia (rrascia@rascia-decastro.com,
ysierra@rascia-decastro.com), Stephen Edward Scheele (pkd@gk4law.com, ses@gk4law.com),
Paul Jeffrey Schlesinger (pjeffslaw@aol.com), Matthew D Soliday
(matt@matthewsolidaylaw.com, office@matthewsolidaylaw.com), Adam Tavitas
(adtavitas@aol.com, b.lynneadams@yahoo.com), John T Theis (theislaw@aol.com), James N
Thiros (jim@thiros.com, lynn@thiros.com), Bryan M Truitt (bryan@tblawyers.com,
sherrie@tblawyers.com), Thomas W Vanes (tom.vanes@sbcglobal.net), R Brian Woodward
(carolb@wbbklaw.com, rbwoodward@wbbklaw.com), Magistrate Judge Andrew P Rodovich
(rodovich_chambers@innd.uscourts.gov), Chief Judge Philip P Simon
(denise_woodside@innd.uscourts.gov, joshua_urquhart@innd.uscourts.gov,
katherine_welsh@innd.uscourts.gov, mark_hancock@innd.uscourts.gov,
noel_collins@innd.uscourts.gov, philip_simon@innd.uscourts.gov)
--Non Case Participants: Probation/Pretrial Services (innpml_cmecf@innd.uscourts.gov), U S
Marshal (inn.docket-fw@usdoj.gov, inn.docket-sb@usdoj.gov, usms.27@usdoj.gov)
--No Notice Sent:

Message-Id:2246071@innd.uscourts.gov
Subject:Activity in Case 2:11-cr-00077-PPS-APR United States of America v. Briseno et al
Hearing
Content-Type: text/html
```

## U.S. District Court Northern District of Indiana [LIVE]

## USDC Northern Indiana

## Notice of Electronic Filing

The following transaction was entered on 4/23/2013 at 11:44 AM EST and filed on 4/22/2013

**Case Name:**      United States of America v. Briseno et al

**Case Number:**    2:11-cr-00077-PPS-APR

**Filer:**

**Document Number:** 559(No document attached)

**Docket Text:**

**HEARING as to Juan Briseno, Michael Anthony Castillo, Jason Medina, Edward Raye Serna, Armando Jose Velasquez, Salvador Chavez, Raymond Campos, Ace Cortez, Julian Guillermo Serna, Julius Solis, Darmaile Cortez Sutton, Richard Reyes held on 4/22/2013 before Chief Judge Philip P Simon. Only counsel for the above dfts were required to appear for this hearing (Arlington Foley, John Maksimovich, Catherine Lake, Scott King (by telephone) Gojko Kasich, John Theis, Kerry Connor, James Thiros, Jack Friedlander, Bryan Truit and**

**Sheldon Nagelberg are all in attendance). Govt present by David Nozick, AUSA and Bruce R. Hegyi of U.S. Dept of Justice, Capital Case Unit. All counsel agree that the case is so complex that the trial date of 10/21/2013 is not reasonable. Court allows 30 days for counsel to file a motion to continue the trial date. Any response/objection to be filed within 14 days. Govt allowed 12 weeks to obtain the decision and advise the Court as to any additional dfts facing death penalty. Presently the Govt is awaiting decision from Washington DC. Brief discussions on suppression motions, 3500 material, estimate of number of dfts for trial, length of trial (8 weeks), possible trial for capital dfts and non–capital dfts which would be 8 weeks for each trial. Status Conference now set for August 29, 2013 at 1:00 pm. Cnsl only to appear in person and only those attys whose clients are pending trial need to appear for this hearing. (Court Reporter Sharon Boleck–Mroz.) (nac)**

**2:11–cr–00077–PPS–APR–1 Notice has been electronically mailed to:**

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com

Matthew D Soliday matt@matthewsolidaylaw.com, office@matthewsolidaylaw.com

Scott L King sking@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, 334office@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje–nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia−decastro.com, ysierra@rascia−decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia−decastro.com, ysierra@rascia−decastro.com

Dean R Lanter − AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick − AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Kerry C Connor kcconnor@sbcglobal.net

**2:11−cr−00077−PPS−APR−1 Notice has been delivered by U.S. Mail or other means to:**

**2:11−cr−00077−PPS−APR−6 Notice has been electronically mailed to:**

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com

Matthew D Soliday matt@matthewsolidaylaw.com, office@matthewsolidaylaw.com

Scott L King sking@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, 334office@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin − FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje-nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia-decastro.com, ysierra@rascia-decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia-decastro.com, ysierra@rascia-decastro.com

Dean R Lanter – AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Kerry C Connor kcconnor@sbcglobal.net

**2:11-cr-00077-PPS-APR-6 Notice has been delivered by U.S. Mail or other means to:**

**2:11-cr-00077-PPS-APR-10 Notice has been electronically mailed to:**

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com

Matthew D Soliday matt@matthewsolidaylaw.com, office@matthewsolidaylaw.com

Scott L King sking@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, 334office@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje–nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia–decastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Kerry C Connor kcconnor@sbcglobal.net

**2:11–cr–00077–PPS–APR–10 Notice has been delivered by U.S. Mail or other means to:**

**2:11–cr–00077–PPS–APR–11 Notice has been electronically mailed to:**

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com

Matthew D Soliday matt@matthewsolidaylaw.com, office@matthewsolidaylaw.com

Scott L King sking@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

471

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, 334office@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje–nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia–decastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov,
janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Kerry C Connor kcconnor@sbcglobal.net

**2:11–cr–00077–PPS–APR–11 Notice has been delivered by U.S. Mail or other means to:**

**2:11–cr–00077–PPS–APR–14 Notice has been electronically mailed to:**

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com

Matthew D Soliday matt@matthewsolidaylaw.com, office@matthewsolidaylaw.com

Scott L King sking@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, 334office@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje–nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia–decastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Kerry C Connor kcconnor@sbcglobal.net

**2:11–cr–00077–PPS–APR–14 Notice has been delivered by U.S. Mail or other means to:**

**2:11–cr–00077–PPS–APR–16 Notice has been electronically mailed to:**

Arlington J Foley arlingtonfoley@att.net

473

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com

Matthew D Soliday matt@matthewsolidaylaw.com, office@matthewsolidaylaw.com

Scott L King sking@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, 334office@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje–nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia–decastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Kerry C Connor kcconnor@sbcglobal.net

474

**2:11−cr−00077−PPS−APR−16 Notice has been delivered by U.S. Mail or other means to:**

**2:11−cr−00077−PPS−APR−17 Notice has been electronically mailed to:**

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com

Matthew D Soliday matt@matthewsolidaylaw.com, office@matthewsolidaylaw.com

Scott L King sking@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, 334office@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin − FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje−nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia−decastro.com, ysierra@rascia−decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia−decastro.com, ysierra@rascia−decastro.com

Dean R Lanter − AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Kerry C Connor kcconnor@sbcglobal.net

**2:11−cr−00077−PPS−APR−17 Notice has been delivered by U.S. Mail or other means to:**

**2:11−cr−00077−PPS−APR−18 Notice has been electronically mailed to:**

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com

Matthew D Soliday matt@matthewsolidaylaw.com, office@matthewsolidaylaw.com

Scott L King sking@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, 334office@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje−nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia–decastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Kerry C Connor kcconnor@sbcglobal.net

**2:11–cr–00077–PPS–APR–18 Notice has been delivered by U.S. Mail or other means to:**

**2:11–cr–00077–PPS–APR–19 Notice has been electronically mailed to:**

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com

Matthew D Soliday matt@matthewsolidaylaw.com, office@matthewsolidaylaw.com

Scott L King sking@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, 334office@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje−nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia−decastro.com, ysierra@rascia−decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia−decastro.com, ysierra@rascia−decastro.com

Dean R Lanter − AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick − AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Kerry C Connor kcconnor@sbcglobal.net

**2:11−cr−00077−PPS−APR−19 Notice has been delivered by U.S. Mail or other means to:**

**2:11−cr−00077−PPS−APR−20 Notice has been electronically mailed to:**

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com

Matthew D Soliday matt@matthewsolidaylaw.com, office@matthewsolidaylaw.com

Scott L King sking@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, 334office@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje–nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia–decastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Kerry C Connor kcconnor@sbcglobal.net

**2:11–cr–00077–PPS–APR–20 Notice has been delivered by U.S. Mail or other means to:**

**2:11–cr–00077–PPS–APR–21 Notice has been electronically mailed to:**

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com

Matthew D Soliday matt@matthewsolidaylaw.com, office@matthewsolidaylaw.com

Scott L King sking@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, 334office@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje–nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia–decastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Kerry C Connor kcconnor@sbcglobal.net

**2:11–cr–00077–PPS–APR–21 Notice has been delivered by U.S. Mail or other means to:**

**2:11–cr–00077–PPS–APR–23 Notice has been electronically mailed to:**

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com

Matthew D Soliday matt@matthewsolidaylaw.com, office@matthewsolidaylaw.com

Scott L King sking@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, 334office@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje–nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia–decastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov,
janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Kerry C Connor kcconnor@sbcglobal.net

**2:11–cr–00077–PPS–APR–23 Notice has been delivered by U.S. Mail or other means to:**

```
MIME-Version:1.0
From:CMECFinnd@innd.uscourts.gov
To:CMECFinnd@localhost.localdomain
Bcc:
--Case Participants: Kerry C Connor (kcconnor@sbcglobal.net), Pablo DeCastro
(pdecastro@rascia-decastro.com, ysierra@rascia-decastro.com), Kurt R Earnst
(kre@braje-nelson.com), Arlington J Foley (arlingtonfoley@att.net), Jack Friedlander
(jack@jackfriedlander.com, office@jackfriedlander.com), Clark W Holesinger
(334office@frontier.com, arcclark@frontier.com, clark.334@frontier.com), Roxanne Mendez
Johnson (attorneyrmj@gmail.com), Gojko Kasich (gkasich@crownlaw.com), Scott L King
(jwilliams@scottkinggroup.com, sking@scottkinggroup.com), Visvaldis P Kupsis
(vpkupsis@hotmail.com), Catherine A Lake (attyclake@sbcglobal.net), Dean R Lanter - AUSA
(dean.lanter@usdoj.gov, janet.eisenmann@usdoj.gov, usainn.ecfcivil@usdoj.gov), John
Maksimovich (criminallaw@johnmaksimovich.com), John E Martin - FCD (john_martin@fd.org),
Sheldon B Nagelberg (sbnagelberglaw@att.net), David J Nozick - AUSA
(david.nozick@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov,
susan.devries@usdoj.gov, usainn.ecfcivil@usdoj.gov), Mark A Psimos
(psimoslaw@airbaud.net), Robert L Rascia (rrascia@rascia-decastro.com,
ysierra@rascia-decastro.com), Stephen Edward Scheele (pkd@gk4law.com, ses@gk4law.com),
Paul Jeffrey Schlesinger (pjeffslaw@aol.com), Matthew D Soliday
(matt@matthewsolidaylaw.com, office@matthewsolidaylaw.com), Adam Tavitas
(adtavitas@aol.com, b.lynneadams@yahoo.com), John T Theis (theislaw@aol.com), James N
Thiros (jim@thiros.com, lynn@thiros.com), Bryan M Truitt (bryan@tblawyers.com,
sherrie@tblawyers.com), Thomas W Vanes (tom.vanes@sbcglobal.net), R Brian Woodward
(carolb@wbbklaw.com, rbwoodward@wbbklaw.com), Magistrate Judge Andrew P Rodovich
(rodovich_chambers@innd.uscourts.gov), Chief Judge Philip P Simon
(denise_woodside@innd.uscourts.gov, joshua_urquhart@innd.uscourts.gov,
katherine_welsh@innd.uscourts.gov, mark_hancock@innd.uscourts.gov,
noel_collins@innd.uscourts.gov, philip_simon@innd.uscourts.gov)
--Non Case Participants: Probation/Pretrial Services (innpml_cmecf@innd.uscourts.gov), U S
Marshal (inn.docket-fw@usdoj.gov, inn.docket-sb@usdoj.gov, usms.27@usdoj.gov)
--No Notice Sent:

Message-Id:2246082@innd.uscourts.gov
Subject:Activity in Case 2:11-cr-00077-PPS-APR United States of America v. Briseno et al
Notice of Hearing/Deadlines
Content-Type: text/html
```

## U.S. District Court Northern District of Indiana [LIVE]

## USDC Northern Indiana

## Notice of Electronic Filing

The following transaction was entered on 4/23/2013 at 11:48 AM EST and filed on 4/23/2013

| | |
|---|---|
| **Case Name:** | United States of America v. Briseno et al |
| **Case Number:** | 2:11-cr-00077-PPS-APR |
| **Filer:** | |
| **Document Number:** | 560(No document attached) |

**Docket Text:**

**NOTICE OF HEARING: STATUS CONFERENCE to be held August 29, 2013 at 01:00 PM in US District Court – Hammond before Chief Judge Philip P Simon. The U.S. Marshal does not need to produce any dfts for this hearing. Only counsel whose clients are pending trial shall appear in person at this hearing. (nac)**

Case 2:11-cr-77    NEF for Docket Entry 560    Filed 04/23/2013    Page 2 of 28
Case: 15-2347    Document: 35    Filed: 07/27/2016    Pages: 4186

**2:11−cr−00077−PPS−APR−1 Notice has been electronically mailed to:**

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com

Matthew D Soliday matt@matthewsolidaylaw.com, office@matthewsolidaylaw.com

Scott L King sking@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, 334office@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin − FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje−nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia−decastro.com, ysierra@rascia−decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia−decastro.com, ysierra@rascia−decastro.com

Dean R Lanter − AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick − AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov,

483

janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Kerry C Connor kcconnor@sbcglobal.net

**2:11–cr–00077–PPS–APR–1 Notice has been delivered by U.S. Mail or other means to:**

**2:11–cr–00077–PPS–APR–2 Notice has been electronically mailed to:**

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com

Matthew D Soliday matt@matthewsolidaylaw.com, office@matthewsolidaylaw.com

Scott L King sking@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, 334office@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje–nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia−decastro.com, ysierra@rascia−decastro.com

Dean R Lanter − AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick − AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov,
janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Kerry C Connor kcconnor@sbcglobal.net

**2:11−cr−00077−PPS−APR−2 Notice has been delivered by U.S. Mail or other means to:**

**2:11−cr−00077−PPS−APR−3 Notice has been electronically mailed to:**

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com

Matthew D Soliday matt@matthewsolidaylaw.com, office@matthewsolidaylaw.com

Scott L King sking@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, 334office@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin − FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje−nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia−decastro.com, ysierra@rascia−decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia−decastro.com, ysierra@rascia−decastro.com

Dean R Lanter − AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick − AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Kerry C Connor kcconnor@sbcglobal.net

**2:11−cr−00077−PPS−APR−3 Notice has been delivered by U.S. Mail or other means to:**

**2:11−cr−00077−PPS−APR−4 Notice has been electronically mailed to:**

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com

Matthew D Soliday matt@matthewsolidaylaw.com, office@matthewsolidaylaw.com

Scott L King sking@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, 334office@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin − FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje−nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia−decastro.com, ysierra@rascia−decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia−decastro.com, ysierra@rascia−decastro.com

Dean R Lanter − AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick − AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Kerry C Connor kcconnor@sbcglobal.net

**2:11−cr−00077−PPS−APR−4 Notice has been delivered by U.S. Mail or other means to:**

**2:11−cr−00077−PPS−APR−5 Notice has been electronically mailed to:**

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com

Matthew D Soliday matt@matthewsolidaylaw.com, office@matthewsolidaylaw.com

Scott L King sking@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, 334office@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje–nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia–decastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Kerry C Connor kcconnor@sbcglobal.net

**2:11–cr–00077–PPS–APR–5 Notice has been delivered by U.S. Mail or other means to:**

**2:11–cr–00077–PPS–APR–6 Notice has been electronically mailed to:**

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com

Matthew D Soliday matt@matthewsolidaylaw.com, office@matthewsolidaylaw.com

Scott L King sking@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, 334office@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje–nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia–decastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Kerry C Connor kcconnor@sbcglobal.net

**2:11–cr–00077–PPS–APR–6 Notice has been delivered by U.S. Mail or other means to:**

**2:11–cr–00077–PPS–APR–7 Notice has been electronically mailed to:**

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com

Matthew D Soliday matt@matthewsolidaylaw.com, office@matthewsolidaylaw.com

Scott L King sking@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, 334office@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje–nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia–decastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Kerry C Connor kcconnor@sbcglobal.net

**2:11–cr–00077–PPS–APR–7 Notice has been delivered by U.S. Mail or other means to:**

**2:11–cr–00077–PPS–APR–8 Notice has been electronically mailed to:**

490

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com

Matthew D Soliday matt@matthewsolidaylaw.com, office@matthewsolidaylaw.com

Scott L King sking@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, 334office@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje–nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia–decastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Kerry C Connor kcconnor@sbcglobal.net

**2:11−cr−00077−PPS−APR−8 Notice has been delivered by U.S. Mail or other means to:**

**2:11−cr−00077−PPS−APR−9 Notice has been electronically mailed to:**

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com

Matthew D Soliday matt@matthewsolidaylaw.com, office@matthewsolidaylaw.com

Scott L King sking@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, 334office@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin − FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje−nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia−decastro.com, ysierra@rascia−decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia−decastro.com, ysierra@rascia−decastro.com

492

Dean R Lanter – AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Kerry C Connor kcconnor@sbcglobal.net

**2:11−cr−00077−PPS−APR−9 Notice has been delivered by U.S. Mail or other means to:**

**2:11−cr−00077−PPS−APR−10 Notice has been electronically mailed to:**

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com

Matthew D Soliday matt@matthewsolidaylaw.com, office@matthewsolidaylaw.com

Scott L King sking@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, 334office@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje−nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia−decastro.com, ysierra@rascia−decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia−decastro.com, ysierra@rascia−decastro.com

Dean R Lanter − AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick − AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Kerry C Connor kcconnor@sbcglobal.net

**2:11−cr−00077−PPS−APR−10 Notice has been delivered by U.S. Mail or other means to:**

**2:11−cr−00077−PPS−APR−11 Notice has been electronically mailed to:**

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com

Matthew D Soliday matt@matthewsolidaylaw.com, office@matthewsolidaylaw.com

Scott L King sking@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, 334office@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin − FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje−nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia−decastro.com, ysierra@rascia−decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia−decastro.com, ysierra@rascia−decastro.com

Dean R Lanter − AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick − AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Kerry C Connor kcconnor@sbcglobal.net

**2:11−cr−00077−PPS−APR−11 Notice has been delivered by U.S. Mail or other means to:**

**2:11−cr−00077−PPS−APR−12 Notice has been electronically mailed to:**

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com

Matthew D Soliday matt@matthewsolidaylaw.com, office@matthewsolidaylaw.com

Scott L King sking@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, 334office@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje–nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia–decastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Kerry C Connor kcconnor@sbcglobal.net

**2:11–cr–00077–PPS–APR–12 Notice has been delivered by U.S. Mail or other means to:**

**2:11–cr–00077–PPS–APR–13 Notice has been electronically mailed to:**

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com

Matthew D Soliday matt@matthewsolidaylaw.com, office@matthewsolidaylaw.com

Scott L King sking@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, 334office@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje–nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia–decastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Kerry C Connor kcconnor@sbcglobal.net

**2:11–cr–00077–PPS–APR–13 Notice has been delivered by U.S. Mail or other means to:**

**2:11–cr–00077–PPS–APR–14 Notice has been electronically mailed to:**

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com

Matthew D Soliday matt@matthewsolidaylaw.com, office@matthewsolidaylaw.com

Scott L King sking@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, 334office@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje–nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia–decastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Kerry C Connor kcconnor@sbcglobal.net

**2:11–cr–00077–PPS–APR–14 Notice has been delivered by U.S. Mail or other means to:**

**2:11–cr–00077–PPS–APR–15 Notice has been electronically mailed to:**

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com

Matthew D Soliday matt@matthewsolidaylaw.com, office@matthewsolidaylaw.com

Scott L King sking@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, 334office@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje–nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia–decastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov,
janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Kerry C Connor kcconnor@sbcglobal.net

499

**2:11–cr–00077–PPS–APR–15 Notice has been delivered by U.S. Mail or other means to:**

**2:11–cr–00077–PPS–APR–16 Notice has been electronically mailed to:**

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com

Matthew D Soliday matt@matthewsolidaylaw.com, office@matthewsolidaylaw.com

Scott L King sking@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, 334office@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje–nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia–decastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Kerry C Connor kcconnor@sbcglobal.net

**2:11–cr–00077–PPS–APR–16 Notice has been delivered by U.S. Mail or other means to:**

**2:11–cr–00077–PPS–APR–17 Notice has been electronically mailed to:**

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com

Matthew D Soliday matt@matthewsolidaylaw.com, office@matthewsolidaylaw.com

Scott L King sking@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, 334office@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje–nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia−decastro.com, ysierra@rascia−decastro.com

Dean R Lanter − AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick − AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Kerry C Connor kcconnor@sbcglobal.net

**2:11−cr−00077−PPS−APR−17 Notice has been delivered by U.S. Mail or other means to:**

**2:11−cr−00077−PPS−APR−18 Notice has been electronically mailed to:**

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com

Matthew D Soliday matt@matthewsolidaylaw.com, office@matthewsolidaylaw.com

Scott L King sking@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, 334office@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin − FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje−nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia−decastro.com, ysierra@rascia−decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia−decastro.com, ysierra@rascia−decastro.com

Dean R Lanter − AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick − AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Kerry C Connor kcconnor@sbcglobal.net

**2:11−cr−00077−PPS−APR−18 Notice has been delivered by U.S. Mail or other means to:**

**2:11−cr−00077−PPS−APR−19 Notice has been electronically mailed to:**

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com

Matthew D Soliday matt@matthewsolidaylaw.com, office@matthewsolidaylaw.com

Scott L King sking@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, 334office@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin − FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje−nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia−decastro.com, ysierra@rascia−decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia−decastro.com, ysierra@rascia−decastro.com

Dean R Lanter − AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick − AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Kerry C Connor kcconnor@sbcglobal.net

**2:11−cr−00077−PPS−APR−19 Notice has been delivered by U.S. Mail or other means to:**

**2:11−cr−00077−PPS−APR−20 Notice has been electronically mailed to:**

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com

Matthew D Soliday matt@matthewsolidaylaw.com, office@matthewsolidaylaw.com

Scott L King sking@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, 334office@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje–nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia–decastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Kerry C Connor kcconnor@sbcglobal.net

**2:11–cr–00077–PPS–APR–20 Notice has been delivered by U.S. Mail or other means to:**

**2:11–cr–00077–PPS–APR–21 Notice has been electronically mailed to:**

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com

Matthew D Soliday matt@matthewsolidaylaw.com, office@matthewsolidaylaw.com

Scott L King sking@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, 334office@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje–nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia–decastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Kerry C Connor kcconnor@sbcglobal.net

**2:11–cr–00077–PPS–APR–21 Notice has been delivered by U.S. Mail or other means to:**

**2:11–cr–00077–PPS–APR–22 Notice has been electronically mailed to:**

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com

Matthew D Soliday matt@matthewsolidaylaw.com, office@matthewsolidaylaw.com

Scott L King sking@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, 334office@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje–nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia–decastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov,
janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Kerry C Connor kcconnor@sbcglobal.net

**2:11–cr–00077–PPS–APR–22 Notice has been delivered by U.S. Mail or other means to:**

**2:11–cr–00077–PPS–APR–23 Notice has been electronically mailed to:**

507

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com

Matthew D Soliday matt@matthewsolidaylaw.com, office@matthewsolidaylaw.com

Scott L King sking@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, 334office@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje–nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia–decastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Kerry C Connor kcconnor@sbcglobal.net

**2:11–cr–00077–PPS–APR–23 Notice has been delivered by U.S. Mail or other means to:**

509

```
MIME-Version:1.0
From:CMECFinnd@innd.uscourts.gov
To:CMECFinnd@localhost.localdomain
Bcc:
--Case Participants: Kerry C Connor (kcconnor@sbcglobal.net), Pablo DeCastro
(pdecastro@rascia-decastro.com, ysierra@rascia-decastro.com), Kurt R Earnst
(kre@braje-nelson.com), Arlington J Foley (arlingtonfoley@att.net), Jack Friedlander
(jack@jackfriedlander.com, office@jackfriedlander.com), Clark W Holesinger
(334office@frontier.com, arcclark@frontier.com, clark.334@frontier.com), Roxanne Mendez
Johnson (attorneyrmj@gmail.com), Gojko Kasich (gkasich@crownlaw.com), Scott L King
(jwilliams@scottkinggroup.com, sking@scottkinggroup.com), Visvaldis P Kupsis
(vpkupsis@hotmail.com), Catherine A Lake (attyclake@sbcglobal.net), Dean R Lanter - AUSA
(dean.lanter@usdoj.gov, janet.eisenmann@usdoj.gov, usainn.ecfcivil@usdoj.gov), John
Maksimovich (criminallaw@johnmaksimovich.com), John E Martin - FCD (john_martin@fd.org),
Sheldon B Nagelberg (sbnagelberglaw@att.net), David J Nozick - AUSA
(david.nozick@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov,
susan.devries@usdoj.gov, usainn.ecfcivil@usdoj.gov), Mark A Psimos
(psimoslaw@airbaud.net), Robert L Rascia (rrascia@rascia-decastro.com,
ysierra@rascia-decastro.com), Stephen Edward Scheele (pkd@gk4law.com, ses@gk4law.com),
Paul Jeffrey Schlesinger (pjeffslaw@aol.com), Matthew D Soliday
(matt@matthewsolidaylaw.com, office@matthewsolidaylaw.com), Adam Tavitas
(adtavitas@aol.com, b.lynneadams@yahoo.com), John T Theis (theislaw@aol.com), James N
Thiros (jim@thiros.com, lynn@thiros.com), Bryan M Truitt (bryan@tblawyers.com,
sherrie@tblawyers.com), Thomas W Vanes (tom.vanes@sbcglobal.net), R Brian Woodward
(carolb@wbbklaw.com, rbwoodward@wbbklaw.com), Magistrate Judge Andrew P Rodovich
(rodovich_chambers@innd.uscourts.gov), Chief Judge Philip P Simon
(denise_woodside@innd.uscourts.gov, joshua_urquhart@innd.uscourts.gov,
katherine_welsh@innd.uscourts.gov, mark_hancock@innd.uscourts.gov,
noel_collins@innd.uscourts.gov, philip_simon@innd.uscourts.gov)
--Non Case Participants: Probation/Pretrial Services (innpml_cmecf@innd.uscourts.gov), U S
Marshal (inn.docket-fw@usdoj.gov, inn.docket-sb@usdoj.gov, usms.27@usdoj.gov)
--No Notice Sent:

Message-Id:2253309@innd.uscourts.gov
Subject:Activity in Case 2:11-cr-00077-PPS-APR United States of America v. Briseno et al
Order on Motion for Extension of Time to File Response/Reply
Content-Type: text/html
```

### U.S. District Court Northern District of Indiana [LIVE]

### USDC Northern Indiana

## Notice of Electronic Filing

The following transaction was entered on 5/1/2013 at 12:37 PM EST and filed on 5/1/2013

| | |
|---|---|
| **Case Name:** | United States of America v. Briseno et al |
| **Case Number:** | 2:11-cr-00077-PPS-APR |
| **Filer:** | |
| **Document Number:** | 562(No document attached) |

**Docket Text:**

**ORDER Defendant Richard Reyes has filed a motion to sever his trial from that of his co-defendants [DE 557]. During a status hearing on April 22, 2013, I ordered the Government to file any additional notices of intent to seek the death penalty pursuant to 18 U.S.C. §3593(a) no later than August 1, 2013 [DE 558]. At the April 22 status hearing, I also informed the parties that I did not intend to establish further deadlines until the Government files its notices of intent to seek the death penalty. Therefore, I will GRANT the Government's Motion**

510

**for Extension of Time to Respond to Defendant's Motion to Sever in part [DE 561]. Rather than set the deadline for the Government's response to Reyes' motion at this time, I will set a briefing schedule after August 1, 2013.. Signed by Chief Judge Philip P Simon on 5/1/13. (kw)**

**2:11−cr−00077−PPS−APR−1 Notice has been electronically mailed to:**

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com

Matthew D Soliday matt@matthewsolidaylaw.com, office@matthewsolidaylaw.com

Scott L King sking@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, 334office@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin − FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje−nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia−decastro.com, ysierra@rascia−decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia−decastro.com, ysierra@rascia−decastro.com

Dean R Lanter – AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Kerry C Connor kcconnor@sbcglobal.net

**2:11–cr–00077–PPS–APR–1 Notice has been delivered by U.S. Mail or other means to:**

**2:11–cr–00077–PPS–APR–2 Notice has been electronically mailed to:**

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com

Matthew D Soliday matt@matthewsolidaylaw.com, office@matthewsolidaylaw.com

Scott L King sking@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, 334office@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje–nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia–decastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Kerry C Connor kcconnor@sbcglobal.net

**2:11–cr–00077–PPS–APR–2 Notice has been delivered by U.S. Mail or other means to:**

**2:11–cr–00077–PPS–APR–3 Notice has been electronically mailed to:**

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com

Matthew D Soliday matt@matthewsolidaylaw.com, office@matthewsolidaylaw.com

Scott L King sking@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, 334office@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje−nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia−decastro.com, ysierra@rascia−decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia−decastro.com, ysierra@rascia−decastro.com

Dean R Lanter − AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick − AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Kerry C Connor kcconnor@sbcglobal.net

**2:11−cr−00077−PPS−APR−3 Notice has been delivered by U.S. Mail or other means to:**

**2:11−cr−00077−PPS−APR−4 Notice has been electronically mailed to:**

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com

Matthew D Soliday matt@matthewsolidaylaw.com, office@matthewsolidaylaw.com

Scott L King sking@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, 334office@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje–nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia–decastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Kerry C Connor kcconnor@sbcglobal.net

**2:11–cr–00077–PPS–APR–4 Notice has been delivered by U.S. Mail or other means to:**

**2:11–cr–00077–PPS–APR–5 Notice has been electronically mailed to:**

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com

Matthew D Soliday matt@matthewsolidaylaw.com, office@matthewsolidaylaw.com

Scott L King sking@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, 334office@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje–nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia–decastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Kerry C Connor kcconnor@sbcglobal.net

**2:11–cr–00077–PPS–APR–5 Notice has been delivered by U.S. Mail or other means to:**

**2:11–cr–00077–PPS–APR–6 Notice has been electronically mailed to:**

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com

Matthew D Soliday matt@matthewsolidaylaw.com, office@matthewsolidaylaw.com

Scott L King sking@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, 334office@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje–nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia–decastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Kerry C Connor kcconnor@sbcglobal.net

**2:11–cr–00077–PPS–APR–6 Notice has been delivered by U.S. Mail or other means to:**

**2:11–cr–00077–PPS–APR–7 Notice has been electronically mailed to:**

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

517

Gojko Kasich gkasich@crownlaw.com

Matthew D Soliday matt@matthewsolidaylaw.com, office@matthewsolidaylaw.com

Scott L King sking@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, 334office@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje–nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia–decastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Kerry C Connor kcconnor@sbcglobal.net

**2:11−cr−00077−PPS−APR−7 Notice has been delivered by U.S. Mail or other means to:**

**2:11−cr−00077−PPS−APR−8 Notice has been electronically mailed to:**

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com

Matthew D Soliday matt@matthewsolidaylaw.com, office@matthewsolidaylaw.com

Scott L King sking@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, 334office@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin − FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje−nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia−decastro.com, ysierra@rascia−decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia−decastro.com, ysierra@rascia−decastro.com

Dean R Lanter − AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Kerry C Connor kcconnor@sbcglobal.net

**2:11–cr–00077–PPS–APR–8 Notice has been delivered by U.S. Mail or other means to:**

**2:11–cr–00077–PPS–APR–9 Notice has been electronically mailed to:**

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com

Matthew D Soliday matt@matthewsolidaylaw.com, office@matthewsolidaylaw.com

Scott L King sking@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, 334office@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje–nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

520

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia−decastro.com, ysierra@rascia−decastro.com

Dean R Lanter − AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick − AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Kerry C Connor kcconnor@sbcglobal.net

**2:11−cr−00077−PPS−APR−9 Notice has been delivered by U.S. Mail or other means to:**

**2:11−cr−00077−PPS−APR−10 Notice has been electronically mailed to:**

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com

Matthew D Soliday matt@matthewsolidaylaw.com, office@matthewsolidaylaw.com

Scott L King sking@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, 334office@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin − FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje−nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia−decastro.com, ysierra@rascia−decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia−decastro.com, ysierra@rascia−decastro.com

Dean R Lanter − AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick − AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Kerry C Connor kcconnor@sbcglobal.net

**2:11−cr−00077−PPS−APR−10 Notice has been delivered by U.S. Mail or other means to:**

**2:11−cr−00077−PPS−APR−11 Notice has been electronically mailed to:**

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com

Matthew D Soliday matt@matthewsolidaylaw.com, office@matthewsolidaylaw.com

Scott L King sking@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, 334office@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin − FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje–nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia–decastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Kerry C Connor kcconnor@sbcglobal.net

**2:11–cr–00077–PPS–APR–11 Notice has been delivered by U.S. Mail or other means to:**

**2:11–cr–00077–PPS–APR–12 Notice has been electronically mailed to:**

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com

Matthew D Soliday matt@matthewsolidaylaw.com, office@matthewsolidaylaw.com

Scott L King sking@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, 334office@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin − FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje−nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia−decastro.com, ysierra@rascia−decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia−decastro.com, ysierra@rascia−decastro.com

Dean R Lanter − AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick − AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Kerry C Connor kcconnor@sbcglobal.net

**2:11−cr−00077−PPS−APR−12 Notice has been delivered by U.S. Mail or other means to:**

**2:11−cr−00077−PPS−APR−13 Notice has been electronically mailed to:**

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com

Matthew D Soliday matt@matthewsolidaylaw.com, office@matthewsolidaylaw.com

Scott L King sking@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, 334office@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje–nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia–decastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov,
janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Kerry C Connor kcconnor@sbcglobal.net

**2:11–cr–00077–PPS–APR–13 Notice has been delivered by U.S. Mail or other means to:**

**2:11–cr–00077–PPS–APR–14 Notice has been electronically mailed to:**

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com

Matthew D Soliday matt@matthewsolidaylaw.com, office@matthewsolidaylaw.com

Scott L King sking@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, 334office@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje−nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia−decastro.com, ysierra@rascia−decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia−decastro.com, ysierra@rascia−decastro.com

Dean R Lanter – AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Kerry C Connor kcconnor@sbcglobal.net

**2:11−cr−00077−PPS−APR−14 Notice has been delivered by U.S. Mail or other means to:**

**2:11−cr−00077−PPS−APR−15 Notice has been electronically mailed to:**

526

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com

Matthew D Soliday matt@matthewsolidaylaw.com, office@matthewsolidaylaw.com

Scott L King sking@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, 334office@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje–nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia–decastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Kerry C Connor kcconnor@sbcglobal.net

**2:11−cr−00077−PPS−APR−15 Notice has been delivered by U.S. Mail or other means to:**

**2:11−cr−00077−PPS−APR−16 Notice has been electronically mailed to:**

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com

Matthew D Soliday matt@matthewsolidaylaw.com, office@matthewsolidaylaw.com

Scott L King sking@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, 334office@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin − FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje−nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia−decastro.com, ysierra@rascia−decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia−decastro.com, ysierra@rascia−decastro.com

Dean R Lanter − AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick − AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Kerry C Connor kcconnor@sbcglobal.net

**2:11−cr−00077−PPS−APR−16 Notice has been delivered by U.S. Mail or other means to:**

**2:11−cr−00077−PPS−APR−17 Notice has been electronically mailed to:**

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com

Matthew D Soliday matt@matthewsolidaylaw.com, office@matthewsolidaylaw.com

Scott L King sking@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, 334office@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin − FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje−nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia−decastro.com, ysierra@rascia−decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia−decastro.com, ysierra@rascia−decastro.com

Dean R Lanter − AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick − AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Kerry C Connor kcconnor@sbcglobal.net

**2:11−cr−00077−PPS−APR−17 Notice has been delivered by U.S. Mail or other means to:**

**2:11−cr−00077−PPS−APR−18 Notice has been electronically mailed to:**

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com

Matthew D Soliday matt@matthewsolidaylaw.com, office@matthewsolidaylaw.com

Scott L King sking@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, 334office@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin − FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje−nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia−decastro.com, ysierra@rascia−decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia−decastro.com, ysierra@rascia−decastro.com

Dean R Lanter − AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick − AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Kerry C Connor kcconnor@sbcglobal.net

**2:11−cr−00077−PPS−APR−18 Notice has been delivered by U.S. Mail or other means to:**

**2:11−cr−00077−PPS−APR−19 Notice has been electronically mailed to:**

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com

Matthew D Soliday matt@matthewsolidaylaw.com, office@matthewsolidaylaw.com

Scott L King sking@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, 334office@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje–nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia–decastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Kerry C Connor kcconnor@sbcglobal.net

**2:11–cr–00077–PPS–APR–19 Notice has been delivered by U.S. Mail or other means to:**

**2:11–cr–00077–PPS–APR–20 Notice has been electronically mailed to:**

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com

Matthew D Soliday matt@matthewsolidaylaw.com, office@matthewsolidaylaw.com

Scott L King sking@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, 334office@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje–nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia–decastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Kerry C Connor kcconnor@sbcglobal.net

**2:11–cr–00077–PPS–APR–20 Notice has been delivered by U.S. Mail or other means to:**

**2:11–cr–00077–PPS–APR–21 Notice has been electronically mailed to:**

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com

Matthew D Soliday matt@matthewsolidaylaw.com, office@matthewsolidaylaw.com

Scott L King sking@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, 334office@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje–nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia–decastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Kerry C Connor kcconnor@sbcglobal.net

**2:11–cr–00077–PPS–APR–21 Notice has been delivered by U.S. Mail or other means to:**

**2:11–cr–00077–PPS–APR–22 Notice has been electronically mailed to:**

Arlington J Foley arlingtonfoley@att.net

534

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com

Matthew D Soliday matt@matthewsolidaylaw.com, office@matthewsolidaylaw.com

Scott L King sking@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, 334office@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje–nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia–decastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Kerry C Connor kcconnor@sbcglobal.net

**2:11−cr−00077−PPS−APR−22 Notice has been delivered by U.S. Mail or other means to:**

**2:11−cr−00077−PPS−APR−23 Notice has been electronically mailed to:**

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com

Matthew D Soliday matt@matthewsolidaylaw.com, office@matthewsolidaylaw.com

Scott L King sking@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, 334office@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin − FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje−nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia−decastro.com, ysierra@rascia−decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia−decastro.com, ysierra@rascia−decastro.com

Dean R Lanter − AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov,
janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Kerry C Connor kcconnor@sbcglobal.net

**2:11–cr–00077–PPS–APR–23 Notice has been delivered by U.S. Mail or other means to:**

```
MIME-Version:1.0
From:CMECFinnd@innd.uscourts.gov
To:CMECFinnd@localhost.localdomain
Bcc:
--Case Participants: Matthew D Soliday - FCD (linda_kalwinski@fd.org,
matthew_d_soliday@fd.org), Bryan M Truitt (bryan@tblawyers.com, sherrie@tblawyers.com),
David J Nozick - AUSA (david.nozick@usdoj.gov, janet.eisenmann@usdoj.gov,
sally.haviar@usdoj.gov, susan.devries@usdoj.gov, usainn.ecfcivil@usdoj.gov), Kurt R Earnst
(kre@braje-nelson.com), Paul Jeffrey Schlesinger (pjeffslaw@aol.com), Pablo DeCastro
(pdecastro@rascia-decastro.com, ysierra@rascia-decastro.com), Sheldon B Nagelberg
(sbnagelberglaw@att.net), Thomas W Vanes (tom.vanes@sbcglobal.net), John T Theis
(theislaw@aol.com), Catherine A Lake (attyclake@sbcglobal.net), Adam Tavitas
(adtavitas@aol.com, b.lynneadams@yahoo.com), Dean R Lanter - AUSA (dean.lanter@usdoj.gov,
janet.eisenmann@usdoj.gov, usainn.ecfcivil@usdoj.gov), John E Martin - FCD
(john_martin@fd.org), Scott L King (jwilliams@scottkinggroup.com,
sking@scottkinggroup.com), Mark A Psimos (psimoslaw@airbaud.net), James N Thiros
(jim@thiros.com, lynn@thiros.com), Robert L Rascia (rrascia@rascia-decastro.com,
ysierra@rascia-decastro.com), Gojko Kasich (gkasich@crownlaw.com), Arlington J Foley
(arlingtonfoley@att.net), Kerry C Connor (kcconnor@sbcglobal.net), Roxanne Mendez Johnson
(attorneyrmj@gmail.com), Visvaldis P Kupsis (vpkupsis@hotmail.com), Stephen Edward Scheele
(pkd@gk4law.com, ses@gk4law.com), Jack Friedlander (jack@jackfriedlander.com,
office@jackfriedlander.com), Clark W Holesinger (334office@frontier.com,
arcclark@frontier.com, clark.334@frontier.com), R Brian Woodward (carolb@wbbklaw.com,
rbwoodward@wbbklaw.com), John Maksimovich (criminallaw@johnmaksimovich.com), Magistrate
Judge Andrew P Rodovich (rodovich_chambers@innd.uscourts.gov), Chief Judge Philip P Simon
(denise_woodside@innd.uscourts.gov, joshua_urquhart@innd.uscourts.gov,
katherine_welsh@innd.uscourts.gov, mark_hancock@innd.uscourts.gov,
noel_collins@innd.uscourts.gov, philip_simon@innd.uscourts.gov)
--Non Case Participants: Matthew D Soliday (office@matthewsolidaylaw.com),
Probation/Pretrial Services (innpml_cmecf@innd.uscourts.gov), U S Marshal
(inn.docket-fw@usdoj.gov, inn.docket-sb@usdoj.gov, usms.27@usdoj.gov)
--No Notice Sent:

Message-Id:2257293@innd.uscourts.gov
Subject:Activity in Case 2:11-cr-00077-PPS-APR United States of America v. Briseno et al
Order on Motion to Withdraw as Attorney
Content-Type: text/html
```

## U.S. District Court Northern District of Indiana [LIVE]

## USDC Northern Indiana

## Notice of Electronic Filing

The following transaction was entered on 5/7/2013 at 12:45 PM EST and filed on 5/7/2013

| | |
|---|---|
| **Case Name:** | United States of America v. Briseno et al |
| **Case Number:** | 2:11-cr-00077-PPS-APR |
| **Filer:** | |
| **Document Number:** | 565(No document attached) |

**Docket Text:**

**ORDER granting [564] Motion to Withdraw as Attorney. Matthew D Soliday – FCD withdrawn from case as to Joseph Rene Torres (9). Signed by Magistrate Judge Andrew P Rodovich on 5/7/13. (lh)**

**2:11-cr-00077-PPS-APR-1 Notice has been electronically mailed to:**

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com

Scott L King sking@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, 334office@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje–nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia–decastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Kerry C Connor kcconnor@sbcglobal.net

Matthew D Soliday – FCD Matthew_D_Soliday@fd.org, Linda_Kalwinski@fd.org

**2:11−cr−00077−PPS−APR−1 Notice has been delivered by U.S. Mail or other means to:**

**2:11−cr−00077−PPS−APR−2 Notice has been electronically mailed to:**

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com

Scott L King sking@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, 334office@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje−nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia−decastro.com, ysierra@rascia−decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia−decastro.com, ysierra@rascia−decastro.com

Dean R Lanter – AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Kerry C Connor kcconnor@sbcglobal.net

Matthew D Soliday – FCD Matthew_D_Soliday@fd.org, Linda_Kalwinski@fd.org

**2:11−cr−00077−PPS−APR−2 Notice has been delivered by U.S. Mail or other means to:**

**2:11−cr−00077−PPS−APR−3 Notice has been electronically mailed to:**

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com

Scott L King sking@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, 334office@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje−nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia−decastro.com, ysierra@rascia−decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia−decastro.com, ysierra@rascia−decastro.com

Dean R Lanter − AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick − AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Kerry C Connor kcconnor@sbcglobal.net

Matthew D Soliday − FCD Matthew_D_Soliday@fd.org, Linda_Kalwinski@fd.org

**2:11−cr−00077−PPS−APR−3 Notice has been delivered by U.S. Mail or other means to:**

**2:11−cr−00077−PPS−APR−4 Notice has been electronically mailed to:**

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com

Scott L King sking@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, 334office@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin − FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje−nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia−decastro.com, ysierra@rascia−decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia−decastro.com, ysierra@rascia−decastro.com

Dean R Lanter − AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick − AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Kerry C Connor kcconnor@sbcglobal.net

Matthew D Soliday − FCD Matthew_D_Soliday@fd.org, Linda_Kalwinski@fd.org

**2:11−cr−00077−PPS−APR−4 Notice has been delivered by U.S. Mail or other means to:**

**2:11−cr−00077−PPS−APR−5 Notice has been electronically mailed to:**

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com

Scott L King sking@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, 334office@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje–nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia–decastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Kerry C Connor kcconnor@sbcglobal.net

Matthew D Soliday – FCD Matthew_D_Soliday@fd.org, Linda_Kalwinski@fd.org

**2:11–cr–00077–PPS–APR–5 Notice has been delivered by U.S. Mail or other means to:**

**2:11–cr–00077–PPS–APR–6 Notice has been electronically mailed to:**

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com

Scott L King sking@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, 334office@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje–nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia–decastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Kerry C Connor kcconnor@sbcglobal.net

Matthew D Soliday – FCD Matthew_D_Soliday@fd.org, Linda_Kalwinski@fd.org

**2:11–cr–00077–PPS–APR–6 Notice has been delivered by U.S. Mail or other means to:**

**2:11–cr–00077–PPS–APR–7 Notice has been electronically mailed to:**

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com

Scott L King sking@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, 334office@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje–nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia–decastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Kerry C Connor kcconnor@sbcglobal.net

Matthew D Soliday – FCD Matthew_D_Soliday@fd.org, Linda_Kalwinski@fd.org

**2:11–cr–00077–PPS–APR–7 Notice has been delivered by U.S. Mail or other means to:**

**2:11–cr–00077–PPS–APR–8 Notice has been electronically mailed to:**

Arlington J Foley arlingtonfoley@att.net

546

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com

Scott L King sking@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, 334office@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje–nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia–decastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Kerry C Connor kcconnor@sbcglobal.net

Matthew D Soliday – FCD Matthew_D_Soliday@fd.org, Linda_Kalwinski@fd.org

**2:11−cr−00077−PPS−APR−8 Notice has been delivered by U.S. Mail or other means to:**

**2:11−cr−00077−PPS−APR−9 Notice has been electronically mailed to:**

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com

Scott L King sking@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, 334office@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin − FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje−nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia−decastro.com, ysierra@rascia−decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia−decastro.com, ysierra@rascia−decastro.com

Dean R Lanter − AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick − AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov,

janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Kerry C Connor kcconnor@sbcglobal.net

Matthew D Soliday – FCD Matthew_D_Soliday@fd.org, Linda_Kalwinski@fd.org

**2:11−cr−00077−PPS−APR−9 Notice has been delivered by U.S. Mail or other means to:**

**2:11−cr−00077−PPS−APR−10 Notice has been electronically mailed to:**

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com

Scott L King sking@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, 334office@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje−nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia−decastro.com, ysierra@rascia−decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia–decastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Kerry C Connor kcconnor@sbcglobal.net

Matthew D Soliday – FCD Matthew_D_Soliday@fd.org, Linda_Kalwinski@fd.org

**2:11–cr–00077–PPS–APR–10 Notice has been delivered by U.S. Mail or other means to:**

**2:11–cr–00077–PPS–APR–11 Notice has been electronically mailed to:**

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com

Scott L King sking@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, 334office@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje–nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia−decastro.com, ysierra@rascia−decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia−decastro.com, ysierra@rascia−decastro.com

Dean R Lanter – AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Kerry C Connor kcconnor@sbcglobal.net

Matthew D Soliday – FCD Matthew_D_Soliday@fd.org, Linda_Kalwinski@fd.org

**2:11−cr−00077−PPS−APR−11 Notice has been delivered by U.S. Mail or other means to:**

**2:11−cr−00077−PPS−APR−12 Notice has been electronically mailed to:**

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com

Scott L King sking@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, 334office@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje−nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia−decastro.com, ysierra@rascia−decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia−decastro.com, ysierra@rascia−decastro.com

Dean R Lanter − AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick − AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Kerry C Connor kcconnor@sbcglobal.net

Matthew D Soliday − FCD Matthew_D_Soliday@fd.org, Linda_Kalwinski@fd.org

**2:11−cr−00077−PPS−APR−12 Notice has been delivered by U.S. Mail or other means to:**

**2:11−cr−00077−PPS−APR−13 Notice has been electronically mailed to:**

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com

Scott L King sking@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, 334office@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje–nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia–decastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Kerry C Connor kcconnor@sbcglobal.net

Matthew D Soliday – FCD Matthew_D_Soliday@fd.org, Linda_Kalwinski@fd.org

**2:11–cr–00077–PPS–APR–13 Notice has been delivered by U.S. Mail or other means to:**

**2:11–cr–00077–PPS–APR–14 Notice has been electronically mailed to:**

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com

Scott L King sking@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, 334office@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje−nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia−decastro.com, ysierra@rascia−decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia−decastro.com, ysierra@rascia−decastro.com

Dean R Lanter – AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Kerry C Connor kcconnor@sbcglobal.net

Matthew D Soliday – FCD Matthew_D_Soliday@fd.org, Linda_Kalwinski@fd.org

**2:11−cr−00077−PPS−APR−14 Notice has been delivered by U.S. Mail or other means to:**

**2:11−cr−00077−PPS−APR−15 Notice has been electronically mailed to:**

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com

Scott L King sking@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, 334office@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje−nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia−decastro.com, ysierra@rascia−decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia−decastro.com, ysierra@rascia−decastro.com

Dean R Lanter – AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Kerry C Connor kcconnor@sbcglobal.net

Matthew D Soliday – FCD Matthew_D_Soliday@fd.org, Linda_Kalwinski@fd.org

**2:11−cr−00077−PPS−APR−15 Notice has been delivered by U.S. Mail or other means to:**

**2:11–cr–00077–PPS–APR–16 Notice has been electronically mailed to:**

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com

Scott L King sking@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, 334office@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje–nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia–decastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Kerry C Connor kcconnor@sbcglobal.net

Matthew D Soliday – FCD Matthew_D_Soliday@fd.org, Linda_Kalwinski@fd.org

**2:11−cr−00077−PPS−APR−16 Notice has been delivered by U.S. Mail or other means to:**

**2:11−cr−00077−PPS−APR−17 Notice has been electronically mailed to:**

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com

Scott L King sking@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, 334office@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje−nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia−decastro.com, ysierra@rascia−decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia−decastro.com, ysierra@rascia−decastro.com

Dean R Lanter – AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Kerry C Connor kcconnor@sbcglobal.net

Matthew D Soliday – FCD Matthew_D_Soliday@fd.org, Linda_Kalwinski@fd.org

**2:11−cr−00077−PPS−APR−17 Notice has been delivered by U.S. Mail or other means to:**

**2:11−cr−00077−PPS−APR−18 Notice has been electronically mailed to:**

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com

Scott L King sking@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, 334office@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje−nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia–decastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Kerry C Connor kcconnor@sbcglobal.net

Matthew D Soliday – FCD Matthew_D_Soliday@fd.org, Linda_Kalwinski@fd.org

**2:11–cr–00077–PPS–APR–18 Notice has been delivered by U.S. Mail or other means to:**

**2:11–cr–00077–PPS–APR–19 Notice has been electronically mailed to:**

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com

Scott L King sking@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, 334office@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje−nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia−decastro.com, ysierra@rascia−decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia−decastro.com, ysierra@rascia−decastro.com

Dean R Lanter − AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick − AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Kerry C Connor kcconnor@sbcglobal.net

Matthew D Soliday − FCD Matthew_D_Soliday@fd.org, Linda_Kalwinski@fd.org

**2:11−cr−00077−PPS−APR−19 Notice has been delivered by U.S. Mail or other means to:**

**2:11−cr−00077−PPS−APR−20 Notice has been electronically mailed to:**

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com

Scott L King sking@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, 334office@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje–nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia–decastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Kerry C Connor kcconnor@sbcglobal.net

Matthew D Soliday – FCD Matthew_D_Soliday@fd.org, Linda_Kalwinski@fd.org

**2:11–cr–00077–PPS–APR–20 Notice has been delivered by U.S. Mail or other means to:**

**2:11–cr–00077–PPS–APR–21 Notice has been electronically mailed to:**

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com

Scott L King sking@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, 334office@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje–nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia–decastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov,
janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Kerry C Connor kcconnor@sbcglobal.net

Matthew D Soliday – FCD Matthew_D_Soliday@fd.org, Linda_Kalwinski@fd.org

**2:11–cr–00077–PPS–APR–21 Notice has been delivered by U.S. Mail or other means to:**

**2:11–cr–00077–PPS–APR–22 Notice has been electronically mailed to:**

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com

Scott L King sking@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, 334office@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje–nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia–decastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Kerry C Connor kcconnor@sbcglobal.net

Matthew D Soliday – FCD Matthew_D_Soliday@fd.org, Linda_Kalwinski@fd.org

**2:11–cr–00077–PPS–APR–22 Notice has been delivered by U.S. Mail or other means to:**

**2:11–cr–00077–PPS–APR–23 Notice has been electronically mailed to:**

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com

Scott L King sking@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, 334office@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje–nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia–decastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Kerry C Connor kcconnor@sbcglobal.net

564

Matthew D Soliday – FCD Matthew_D_Soliday@fd.org, Linda_Kalwinski@fd.org

**2:11–cr–00077–PPS–APR–23 Notice has been delivered by U.S. Mail or other means to:**

```
MIME-Version:1.0
From:CMECFinnd@innd.uscourts.gov
To:CMECFinnd@localhost.localdomain
Bcc:
--Case Participants: Bryan M Truitt (bryan@tblawyers.com, sherrie@tblawyers.com), David J
Nozick - AUSA (david.nozick@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov,
susan.devries@usdoj.gov, usainn.ecfcivil@usdoj.gov), Kurt R Earnst (kre@braje-nelson.com),
Paul Jeffrey Schlesinger (pjeffslaw@aol.com), Pablo DeCastro
(pdecastro@rascia-decastro.com, ysierra@rascia-decastro.com), Sheldon B Nagelberg
(sbnagelberglaw@att.net), Thomas W Vanes (tom.vanes@sbcglobal.net), John T Theis
(theislaw@aol.com), Catherine A Lake (attyclake@sbcglobal.net), Adam Tavitas
(adtavitas@aol.com, b.lynneadams@yahoo.com), Dean R Lanter - AUSA (dean.lanter@usdoj.gov,
janet.eisenmann@usdoj.gov, usainn.ecfcivil@usdoj.gov), John E Martin - FCD
(john_martin@fd.org), Scott L King (jwilliams@scottkinggroup.com,
sking@scottkinggroup.com), Mark A Psimos (psimoslaw@airbaud.net), James N Thiros
(jim@thiros.com, lynn@thiros.com), Robert L Rascia (rrascia@rascia-decastro.com,
ysierra@rascia-decastro.com), Gojko Kasich (gkasich@crownlaw.com), Arlington J Foley
(arlingtonfoley@att.net), Kerry C Connor (kcconnor@sbcglobal.net), Roxanne Mendez Johnson
(attorneyrmj@gmail.com), Visvaldis P Kupsis (vpkupsis@hotmail.com), Stephen Edward Scheele
(pkd@gk4law.com, ses@gk4law.com), Jack Friedlander (jack@jackfriedlander.com,
office@jackfriedlander.com), Clark W Holesinger (334office@frontier.com,
arcclark@frontier.com, clark.334@frontier.com), R Brian Woodward (carolb@wbbklaw.com,
rbwoodward@wbbklaw.com), John Maksimovich (criminallaw@johnmaksimovich.com), Magistrate
Judge Andrew P Rodovich (rodovich_chambers@innd.uscourts.gov), Chief Judge Philip P Simon
(denise_woodside@innd.uscourts.gov, joshua_urquhart@innd.uscourts.gov,
katherine_welsh@innd.uscourts.gov, mark_hancock@innd.uscourts.gov,
noel_collins@innd.uscourts.gov, philip_simon@innd.uscourts.gov)
--Non Case Participants: Matthew D Soliday (office@matthewsolidaylaw.com)
--No Notice Sent:

Message-Id:2257303@innd.uscourts.gov
Subject:Activity in Case 2:11-cr-00077-PPS-APR United States of America v. Briseno et al
Add and Terminate Attorneys
```
Content–Type: text/html

## U.S. District Court Northern District of Indiana [LIVE]

### USDC Northern Indiana

## Notice of Electronic Filing

The following transaction was entered on 5/7/2013 at 12:49 PM EST and filed on 5/7/2013

| | |
|---|---|
| **Case Name:** | United States of America v. Briseno et al |
| **Case Number:** | 2:11–cr–00077–PPS–APR |
| **Filer:** | |
| **Document Number:** | No document attached |

**Docket Text:**
**Attorney update in case as to Joseph Rene Torres: Atty David Vandercoy added. (lh)**

**2:11–cr–00077–PPS–APR–1 Notice has been electronically mailed to:**

Arlington J Foley  arlingtonfoley@att.net

Mark A Psimos  psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com

Scott L King sking@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, 334office@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje–nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia–decastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Kerry C Connor kcconnor@sbcglobal.net

**2:11–cr–00077–PPS–APR–1 Notice has been delivered by U.S. Mail or other means to:**

**2:11−cr−00077−PPS−APR−2 Notice has been electronically mailed to:**

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com

Scott L King sking@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, 334office@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin − FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje−nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia−decastro.com, ysierra@rascia−decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia−decastro.com, ysierra@rascia−decastro.com

Dean R Lanter − AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick − AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Kerry C Connor kcconnor@sbcglobal.net

**2:11−cr−00077−PPS−APR−2 Notice has been delivered by U.S. Mail or other means to:**

**2:11−cr−00077−PPS−APR−3 Notice has been electronically mailed to:**

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com

Scott L King sking@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, 334office@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin − FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje−nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia−decastro.com, ysierra@rascia−decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia−decastro.com, ysierra@rascia−decastro.com

Dean R Lanter − AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Kerry C Connor kcconnor@sbcglobal.net

**2:11−cr−00077−PPS−APR−3 Notice has been delivered by U.S. Mail or other means to:**

**2:11−cr−00077−PPS−APR−4 Notice has been electronically mailed to:**

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com

Scott L King sking@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, 334office@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje−nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia−decastro.com, ysierra@rascia−decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia−decastro.com, ysierra@rascia−decastro.com

Dean R Lanter − AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick − AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Kerry C Connor kcconnor@sbcglobal.net

**2:11−cr−00077−PPS−APR−4 Notice has been delivered by U.S. Mail or other means to:**

**2:11−cr−00077−PPS−APR−5 Notice has been electronically mailed to:**

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com

Scott L King sking@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, 334office@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin − FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje−nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia−decastro.com, ysierra@rascia−decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia−decastro.com, ysierra@rascia−decastro.com

Dean R Lanter − AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick − AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Kerry C Connor kcconnor@sbcglobal.net

**2:11−cr−00077−PPS−APR−5 Notice has been delivered by U.S. Mail or other means to:**

**2:11−cr−00077−PPS−APR−6 Notice has been electronically mailed to:**

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com

Scott L King sking@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, 334office@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin − FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje−nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia−decastro.com, ysierra@rascia−decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia−decastro.com, ysierra@rascia−decastro.com

Dean R Lanter − AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick − AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Kerry C Connor kcconnor@sbcglobal.net

**2:11−cr−00077−PPS−APR−6 Notice has been delivered by U.S. Mail or other means to:**

**2:11−cr−00077−PPS−APR−7 Notice has been electronically mailed to:**

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com

Scott L King sking@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, 334office@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin − FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje−nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia−decastro.com, ysierra@rascia−decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia−decastro.com, ysierra@rascia−decastro.com

Dean R Lanter − AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick − AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov,
janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Kerry C Connor kcconnor@sbcglobal.net

**2:11−cr−00077−PPS−APR−7 Notice has been delivered by U.S. Mail or other means to:**

**2:11−cr−00077−PPS−APR−8 Notice has been electronically mailed to:**

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com

Scott L King sking@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, 334office@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje–nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia–decastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Kerry C Connor kcconnor@sbcglobal.net

**2:11–cr–00077–PPS–APR–8 Notice has been delivered by U.S. Mail or other means to:**

**2:11–cr–00077–PPS–APR–9 Notice has been electronically mailed to:**

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com

Scott L King sking@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, 334office@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje–nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia–decastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Kerry C Connor kcconnor@sbcglobal.net

**2:11–cr–00077–PPS–APR–9 Notice has been delivered by U.S. Mail or other means to:**

Matthew D Soliday – FCD (Terminated)
Federal Community Defenders Inc – Ham/IN
Northern District of Indiana
31 Sibley Street
Hammond, IN 46320

**2:11–cr–00077–PPS–APR–10 Notice has been electronically mailed to:**

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com

Scott L King sking@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, 334office@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje–nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia–decastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Kerry C Connor kcconnor@sbcglobal.net

**2:11–cr–00077–PPS–APR–10 Notice has been delivered by U.S. Mail or other means to:**

**2:11–cr–00077–PPS–APR–11 Notice has been electronically mailed to:**

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com

Scott L King sking@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, 334office@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje−nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia−decastro.com, ysierra@rascia−decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia−decastro.com, ysierra@rascia−decastro.com

Dean R Lanter – AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Kerry C Connor kcconnor@sbcglobal.net

**2:11–cr–00077–PPS–APR–11 Notice has been delivered by U.S. Mail or other means to:**

**2:11–cr–00077–PPS–APR–12 Notice has been electronically mailed to:**

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com

Scott L King sking@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, 334office@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje–nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia–decastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Kerry C Connor kcconnor@sbcglobal.net

**2:11–cr–00077–PPS–APR–12 Notice has been delivered by U.S. Mail or other means to:**

**2:11–cr–00077–PPS–APR–13 Notice has been electronically mailed to:**

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com

Scott L King sking@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, 334office@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje–nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

580

Pablo DeCastro pdecastro@rascia−decastro.com, ysierra@rascia−decastro.com

Dean R Lanter − AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick − AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Kerry C Connor kcconnor@sbcglobal.net

**2:11−cr−00077−PPS−APR−13 Notice has been delivered by U.S. Mail or other means to:**

**2:11−cr−00077−PPS−APR−14 Notice has been electronically mailed to:**

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com

Scott L King sking@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, 334office@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin − FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje−nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia–decastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Kerry C Connor kcconnor@sbcglobal.net

**2:11–cr–00077–PPS–APR–14 Notice has been delivered by U.S. Mail or other means to:**

**2:11–cr–00077–PPS–APR–15 Notice has been electronically mailed to:**

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com

Scott L King sking@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, 334office@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje–nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia–decastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Kerry C Connor kcconnor@sbcglobal.net

**2:11–cr–00077–PPS–APR–15 Notice has been delivered by U.S. Mail or other means to:**

**2:11–cr–00077–PPS–APR–16 Notice has been electronically mailed to:**

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com

Scott L King sking@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, 334office@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje−nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia−decastro.com, ysierra@rascia−decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia−decastro.com, ysierra@rascia−decastro.com

Dean R Lanter − AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick − AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Kerry C Connor kcconnor@sbcglobal.net

**2:11−cr−00077−PPS−APR−16 Notice has been delivered by U.S. Mail or other means to:**

**2:11−cr−00077−PPS−APR−17 Notice has been electronically mailed to:**

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com

Scott L King sking@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, 334office@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje–nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia–decastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Kerry C Connor kcconnor@sbcglobal.net

**2:11–cr–00077–PPS–APR–17 Notice has been delivered by U.S. Mail or other means to:**

**2:11–cr–00077–PPS–APR–18 Notice has been electronically mailed to:**

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com

Scott L King sking@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, 334office@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje–nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia–decastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Kerry C Connor kcconnor@sbcglobal.net

**2:11–cr–00077–PPS–APR–18 Notice has been delivered by U.S. Mail or other means to:**

**2:11–cr–00077–PPS–APR–19 Notice has been electronically mailed to:**

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com

Scott L King sking@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, 334office@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje–nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia–decastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov,
janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Kerry C Connor kcconnor@sbcglobal.net

**2:11–cr–00077–PPS–APR–19 Notice has been delivered by U.S. Mail or other means to:**

**2:11–cr–00077–PPS–APR–20 Notice has been electronically mailed to:**

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com

587

Scott L King sking@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, 334office@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje–nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia–decastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Kerry C Connor kcconnor@sbcglobal.net

**2:11–cr–00077–PPS–APR–20 Notice has been delivered by U.S. Mail or other means to:**

**2:11–cr–00077–PPS–APR–21 Notice has been electronically mailed to:**

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com

Scott L King sking@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, 334office@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje–nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia–decastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Kerry C Connor kcconnor@sbcglobal.net

589

**2:11–cr–00077–PPS–APR–21 Notice has been delivered by U.S. Mail or other means to:**

**2:11–cr–00077–PPS–APR–22 Notice has been electronically mailed to:**

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com

Scott L King sking@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, 334office@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje–nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia–decastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov,
janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Kerry C Connor kcconnor@sbcglobal.net

**2:11−cr−00077−PPS−APR−22 Notice has been delivered by U.S. Mail or other means to:**

**2:11−cr−00077−PPS−APR−23 Notice has been electronically mailed to:**

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com

Scott L King sking@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, 334office@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin − FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje−nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia−decastro.com, ysierra@rascia−decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia−decastro.com, ysierra@rascia−decastro.com

Dean R Lanter – AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Kerry C Connor kcconnor@sbcglobal.net

**2:11−cr−00077−PPS−APR−23 Notice has been delivered by U.S. Mail or other means to:**

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

UNITED STATES OF AMERICA     )
                                 )
       v.                  )      NO. 2:11 CR 77 PPS
                                 )
JUAN BRISENO, et al.        )

**A P P E A R A N C E**

To the Clerk of this court and all parties of record:

I, the below-signed, state that I have read the Standards for Professional Conduct within the Seventh Federal Judicial Circuit pursuant to N.D. Ind. L.R. 83.5 (e) (effective Jan. 1, 2013) and appendix B-132-B-139 of this Court and will faithfully adhere to them.  I declare under penalty of perjury that the foregoing is true and correct.

      Please enter my appearance in this case as co-counsel for the government.


_____May 15, 2013_____          *Bruce R. Hegyi*
      *Date*                        *Signature*

                        Bruce R.. Hegyi_____
                        *Print Name*

                        Trial Attorney
                        U.S. Department of Justice
                        Capital Case Unit
                        1331 F Street, N.W., Third Floor_____
                        *Address*

                        Washington, D.C.  20530_____
                        *City*

                        (202) 616-4582_____
                        *Phone Number*

                        bruce.hegyi@usdoj.gov_____
                        *E-mail Address*

593

## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
## HAMMOND DIVISION

| | | |
|---|---|---|
| | § | |
| **UNITED STATES OF AMERICA**, | § | |
| Plaintiff, | § | |
| | § | |
| | § | |
| v. | § | Case No. 2:11 CR 77 (PPS/APR) |
| | § | |
| **JUAN BRISENO, et al.,** | § | |
| Defendants. | § | |
| | § | |

## GOVERNMENT'S RESPONSE TO DEFENDANT JUAN BRISENO'S
## MOTION TO CONTINUE JURY TRIAL

**TO THE HONORABLE COURT:**

COMES NOW, the United States of America, by and through the undersigned counsel,

and responds to defendant Juan Briseno's ("Mr. Briseno's") Motion to Continue Jury Trial

[Docket Entry #573] ("Defendant's Motion"), which was filed on May 20, 2013.

Preliminary Statement

This is currently a 12 co-defendant case that is scheduled to begin trial on October 21,

2013. At the April 22, 2013 status in this case, Mr. Briseno's attorney advised the Court and the

parties of his intention to file a Motion to Continue the current trial date, and "[a]ll counsel

agree[d] that the case is so complex that the trial date of 10/21/2013 is not reasonable." [*See*

Docket Entry # 559 (Minute Entry)] On April 22, 2013, the Court invited Mr. Briseno

expeditiously to file his Motion and for the parties to respond in writing with their formal

positions related thereto. [*See* id.]

**GOVERNMENT'S RESPONSE TO DEFENDANT JUAN BRISENO'S MOTION TO CONTINUE JURY TRIAL**
<u>United States v. Juan Briseno, et al.</u>
Case No. 2:11 CR 77 (PPS/APR)
**Page 2**

---

<u>Allegations of Mr. Briseno's Motion</u>

In his Motion, Mr. Briseno correctly states that the Government has provided notice of its intention to seek a penalty of death against him. [*See* <u>Motion</u>, ¶ 2]  Mr. Briseno says he requires an "extended" continuance, *inter alia*, because he must prepare for six (6) separate murder charges, attempted murder charges, and RICO charges.  [*See* <u>id.</u>, ¶¶ 3-4]  In preparation for the potential penalty phase of his trial, Mr. Briseno says he wishes to be examined and tested by a neuropsychologist. [*See* <u>id.</u>, ¶ 5]  In addition, Mr. Briseno two attorneys anticipate filing numerous pretrial motions, which he avers will "require a substantial amount of time to research, prepare, file and litigate."  [*See* <u>id.</u>, ¶ 6]  As a result, Mr. Briseno a continuance of the trial date "to a date in the fall of 2014." [*See* <u>id.</u>, ¶ 9]

<u>A Limited Continuance of the Trial Date Is Warranted</u>

The Government agrees that this case is complex, that additional charges have been added, that Mr. Briseno was recently notified that the Government will seek a penalty of death against him, and that a continuance of the October 21, 2013 trial date is warranted.  However, in the Government's view, the length of the continuance requested by Mr. Briseno is unwarranted. This matter was formally instituted in June of 2011.  Although various specific offenses and the formal notice of the penalty sought have recently been added, the crux of the Government's allegations against Mr. Briseno have remained relatively constant.  As a result, in the Government's view, a continuation of the trial date to the Spring or early-Summer of 2014 should be more than sufficient for Mr. Briseno (and the other defendants) to adequately prepare for trial in this case.

**GOVERNMENT'S RESPONSE TO DEFENDANT JUAN BRISENO'S MOTION TO CONTINUE JURY TRIAL**
United States v. Juan Briseno, et al.
Case No. 2:11 CR 77 (PPS/APR)
**Page 3**

---

WHEREFORE, the Government agrees a continuance of the trial date is warranted,

however, it disputes that a continuance into the Fall of 2014 is either necessary or appropriate.

As a result, the Government urges the Court to continue the trial of this matter to into the Spring

or early Summer of 2014, as the Court's and counsels' respective calendars may permit.

RESPECTFULLY SUBMITTED,

In Hammond, this 5th day of June, 2013.

DAVID CAPP
UNITED STATES ATTORNEY

s/ *David J. Nozick*
David J. Nozick
Assistant United States Attorney
5400 Federal Plaza, Suite 1500
Hammond, IN  46320
Tel. (219) 937-5655
www.david.nozick@usdoj.gov

s/ *Bruce R. Hegyi*
Bruce R. Hegyi
Trial Attorney
Capital Case Unit
Criminal Division
United States Department of Justice
1331 F Street, N.W., Third Floor
Washington, D.C.  20530
Tel. (202) 616-4582
Cell (703) 536-4774
www.bruce.hegyi@usdoj.gov

**GOVERNMENT'S RESPONSE TO DEFENDANT JUAN BRISENO'S MOTION TO CONTINUE JURY TRIAL**
<u>United States v. Juan Briseno, et al.</u>
Case No. 2:11 CR 77 (PPS/APR)
**Page 4**

---

<div align="center">

**CERTIFICATE OF SERVICE**

</div>

     **I HEREBY CERTIFY** that on this date, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to counsel for all of the defendants.


         s/ _Bruce R. Hegyi_

         Bruce R. Hegyi
         Trial Attorney

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | ) |
| | ) |
| **VS.** | ) **CASE NO: 2:11 CR 77** |
| | ) |
| **JUAN BRISENO** | ) |

### DEFENDANT'S, JUAN BRISENO, MOTION TO WITHDRAW
### MOTION TO CONTINUE JURY TRIAL

Comes now counsel for the Defendant, Juan Briseno, and, at the Defendant's request,

moves the Court to withdraw <u>Defendant, Juan Briseno's, Motion to Continue Jury Trial</u> (Doc.

#573).

RESPECTFULLY SUBMITTED:

s/Arlington J. Foley     s/John Maksimovich
Arlington J. Foley, Atty. #6905-45  John Maksimovich, Atty. #9950-45
Attorney for Defendant, Juan Briseno Attorney for Defendant, Juan Briseno
1942 North Main Street    1946 North Main Street
Crown Point, IN 46307    Crown Point, IN 46307
Tel: (219) 661-1200     Tel: (219) 663-1900

### CERTIFICATE OF SERVICE

I certify that on the <u>24</u>[th] day of <u>JUNE</u>, 2013 service of a true and complete copy of the above and foregoing pleading or paper was made upon each party or attorney of record herein by the electronic case filing system (ECF).

By:  s/Arlington J. Foley
    Arlington J. Foley
    Attorney at Law

598

**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )    NO. 2:11CR77 PPS |
| | ) |
| JUAN BRISENO, et al., | ) |
| | ) |
| Defendants. | ) |

## <u>ORDER</u>

Defendant Juan Briseno's Motion to Withdraw [DE 587] his previously filed Motion to

Continue Jury Trial is GRANTED.

Defendant Juan Briseno's Motion to Continue Jury Trial [DE 573] is DENIED AS

MOOT.

Trial in this case remains set to begin **October 21, 2013**.

SO ORDERED.

ENTERED: June 25, 2013.

/s/ Philip P. Simon
PHILIP P. SIMON, CHIEF JUDGE
UNITED STATES DISTRICT COURT

599

```
MIME-Version:1.0
From:CMECFinnd@innd.uscourts.gov
To:CMECFinnd@localhost.localdomain
Bcc:
--Case Participants: Kerry C Connor (kcconnor@sbcglobal.net), Pablo DeCastro
(pdecastro@rascia-decastro.com, ysierra@rascia-decastro.com), Kurt R Earnst
(kre@braje-nelson.com), Arlington J Foley (arlingtonfoley@att.net), Jack Friedlander
(jack@jackfriedlander.com, office@jackfriedlander.com), Bruce R Hegyi - AUSA
(bruce.hegyi@usdoj.gov), Clark W Holesinger (334office@frontier.com,
arcclark@frontier.com, clark.334@frontier.com), Roxanne Mendez Johnson
(attorneyrmj@gmail.com), Gojko Kasich (gkasich@crownlaw.com, gkasich@gmail.com), Scott L
King (jwilliams@scottkinggroup.com, sking@scottkinggroup.com), Visvaldis P Kupsis
(vpkupsis@hotmail.com), Catherine A Lake (attyclake@sbcglobal.net), Dean R Lanter - AUSA
(dean.lanter@usdoj.gov, janet.eisenmann@usdoj.gov, usainn.ecfcivil@usdoj.gov), John
Maksimovich (criminallaw@johnmaksimovich.com), John E Martin - FCD (john_martin@fd.org),
Sheldon B Nagelberg (sbnagelberglaw@att.net), David J Nozick - AUSA
(david.nozick@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov,
susan.devries@usdoj.gov, usainn.ecfcivil@usdoj.gov), Mark A Psimos
(psimoslaw@airbaud.net), Robert L Rascia (rrascia@rascia-decastro.com,
ysierra@rascia-decastro.com), Stephen Edward Scheele (pkd@gk4law.com, ses@gk4law.com),
Paul Jeffrey Schlesinger (pjeffslaw@aol.com), Paul G Stracci (albenjamin99@thiros.com,
doricard68@thiros.com, pgstracci97@thiros.com), Adam Tavitas (adtavitas@aol.com,
b.lynneadams@yahoo.com), John T Theis (theislaw@aol.com), James N Thiros (jim@thiros.com,
lynn@thiros.com), Bryan M Truitt (bryan@tblawyers.com, sherrie@tblawyers.com), David E
Vandercoy (david.vandercoy@valpo.edu), Thomas W Vanes (tom.vanes@sbcglobal.net), R Brian
Woodward (carolb@wbbklaw.com, rbwoodward@wbbklaw.com), Magistrate Judge Andrew P Rodovich
(rodovich_chambers@innd.uscourts.gov), Chief Judge Philip P Simon
(denise_woodside@innd.uscourts.gov, joshua_urquhart@innd.uscourts.gov,
katherine_welsh@innd.uscourts.gov, mark_hancock@innd.uscourts.gov,
noel_collins@innd.uscourts.gov, philip_simon@innd.uscourts.gov)
--Non Case Participants: Matthew D Soliday (office@matthewsolidaylaw.com),
Probation/Pretrial Services (innpml_cmecf@innd.uscourts.gov), U S Marshal
(inn.docket-fw@usdoj.gov, inn.docket-sb@usdoj.gov, usms.27@usdoj.gov)
--No Notice Sent:

Message-Id:2300287@innd.uscourts.gov
Subject:Activity in Case 2:11-cr-00077-PPS-APR United States of America v. Briseno et al
Terminate Deadlines and Hearings
Content-Type: text/html
```

## U.S. District Court Northern District of Indiana [LIVE]

### USDC Northern Indiana

## Notice of Electronic Filing

The following transaction was entered on 7/3/2013 at 12:52 PM EST and filed on 7/3/2013

| | |
|---|---|
| **Case Name:** | United States of America v. Briseno et al |
| **Case Number:** | 2:11-cr-00077-PPS-APR |
| **Filer:** | |
| **Document Number:** | No document attached |

**Docket Text:**

**Terminate Deadlines and Hearings as to Juan Briseno, Galo Benjamin Feliciano, Guillermo Briseno, Alejandro Balboa Lara, Justin Weaver, Michael Anthony Castillo, Kelvin Jefferson Beltran, David Almaraz, Joseph Rene Torres, Jason Medina, Edward Raye Serna, Alejandro Briseno, Robert Lockhart, Armando Jose Velasquez, Anthony Baldazo, Salvador Chavez,**

**Raymond Campos, Ace Cortez, Julian Guillermo Serna, Julius Solis, Darmaile Cortez Sutton, Eddie Torres, Richard Reyes: (nac)**

**2:11−cr−00077−PPS−APR−1 Notice has been electronically mailed to:**

David E Vandercoy david.vandercoy@valpo.edu

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com, gkasich@gmail.com

Scott L King sking@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, 334office@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin − FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje−nelson.com

Paul G Stracci pgstracci97@thiros.com, albenjamin99@thiros.com, doricard68@thiros.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia−decastro.com, ysierra@rascia−decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia−decastro.com, ysierra@rascia−decastro.com

Dean R Lanter − AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick − AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Kerry C Connor kcconnor@sbcglobal.net

Bruce R Hegyi − AUSA bruce.hegyi@usdoj.gov

**2:11−cr−00077−PPS−APR−1 Notice has been delivered by U.S. Mail or other means to:**

**2:11−cr−00077−PPS−APR−2 Notice has been electronically mailed to:**

David E Vandercoy david.vandercoy@valpo.edu

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com, gkasich@gmail.com

Scott L King sking@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, 334office@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin − FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje−nelson.com

Paul G Stracci pgstracci97@thiros.com, albenjamin99@thiros.com, doricard68@thiros.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia–decastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Kerry C Connor kcconnor@sbcglobal.net

Bruce R Hegyi – AUSA bruce.hegyi@usdoj.gov

**2:11–cr–00077–PPS–APR–2 Notice has been delivered by U.S. Mail or other means to:**

**2:11–cr–00077–PPS–APR–3 Notice has been electronically mailed to:**

David E Vandercoy david.vandercoy@valpo.edu

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com, gkasich@gmail.com

Scott L King sking@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, 334office@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje–nelson.com

Paul G Stracci pgstracci97@thiros.com, albenjamin99@thiros.com, doricard68@thiros.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia–decastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Kerry C Connor kcconnor@sbcglobal.net

Bruce R Hegyi – AUSA bruce.hegyi@usdoj.gov

**2:11–cr–00077–PPS–APR–3 Notice has been delivered by U.S. Mail or other means to:**

**2:11–cr–00077–PPS–APR–4 Notice has been electronically mailed to:**

David E Vandercoy david.vandercoy@valpo.edu

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com, gkasich@gmail.com

Scott L King sking@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, 334office@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje–nelson.com

Paul G Stracci pgstracci97@thiros.com, albenjamin99@thiros.com, doricard68@thiros.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia–decastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Kerry C Connor kcconnor@sbcglobal.net

Bruce R Hegyi – AUSA bruce.hegyi@usdoj.gov

**2:11–cr–00077–PPS–APR–4 Notice has been delivered by U.S. Mail or other means to:**

**2:11–cr–00077–PPS–APR–5 Notice has been electronically mailed to:**

David E Vandercoy david.vandercoy@valpo.edu

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com, gkasich@gmail.com

Scott L King sking@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, 334office@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje–nelson.com

Paul G Stracci pgstracci97@thiros.com, albenjamin99@thiros.com, doricard68@thiros.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia–decastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Kerry C Connor kcconnor@sbcglobal.net

Bruce R Hegyi – AUSA bruce.hegyi@usdoj.gov

**2:11−cr−00077−PPS−APR−5 Notice has been delivered by U.S. Mail or other means to:**

**2:11−cr−00077−PPS−APR−6 Notice has been electronically mailed to:**

David E Vandercoy david.vandercoy@valpo.edu

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com, gkasich@gmail.com

Scott L King sking@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, 334office@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje−nelson.com

Paul G Stracci pgstracci97@thiros.com, albenjamin99@thiros.com, doricard68@thiros.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia−decastro.com, ysierra@rascia−decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia−decastro.com, ysierra@rascia−decastro.com

Dean R Lanter − AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick − AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Kerry C Connor kcconnor@sbcglobal.net

Bruce R Hegyi − AUSA bruce.hegyi@usdoj.gov

**2:11−cr−00077−PPS−APR−6 Notice has been delivered by U.S. Mail or other means to:**

**2:11−cr−00077−PPS−APR−7 Notice has been electronically mailed to:**

David E Vandercoy david.vandercoy@valpo.edu

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com, gkasich@gmail.com

Scott L King sking@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, 334office@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin − FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje−nelson.com

Paul G Stracci pgstracci97@thiros.com, albenjamin99@thiros.com, doricard68@thiros.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia−decastro.com, ysierra@rascia−decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia−decastro.com, ysierra@rascia−decastro.com

Dean R Lanter − AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick − AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Kerry C Connor kcconnor@sbcglobal.net

Bruce R Hegyi − AUSA bruce.hegyi@usdoj.gov

**2:11−cr−00077−PPS−APR−7 Notice has been delivered by U.S. Mail or other means to:**

**2:11−cr−00077−PPS−APR−8 Notice has been electronically mailed to:**

David E Vandercoy david.vandercoy@valpo.edu

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com, gkasich@gmail.com

Scott L King sking@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, 334office@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje–nelson.com

Paul G Stracci pgstracci97@thiros.com, albenjamin99@thiros.com, doricard68@thiros.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia–decastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Kerry C Connor kcconnor@sbcglobal.net

Bruce R Hegyi – AUSA bruce.hegyi@usdoj.gov

**2:11–cr–00077–PPS–APR–8 Notice has been delivered by U.S. Mail or other means to:**

**2:11–cr–00077–PPS–APR–9 Notice has been electronically mailed to:**

David E Vandercoy david.vandercoy@valpo.edu

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com, gkasich@gmail.com

Scott L King sking@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, 334office@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje−nelson.com

Paul G Stracci pgstracci97@thiros.com, albenjamin99@thiros.com, doricard68@thiros.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia−decastro.com, ysierra@rascia−decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia−decastro.com, ysierra@rascia−decastro.com

Dean R Lanter – AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov,
janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Kerry C Connor kcconnor@sbcglobal.net

Bruce R Hegyi – AUSA bruce.hegyi@usdoj.gov

**2:11−cr−00077−PPS−APR−9 Notice has been delivered by U.S. Mail or other means to:**

**2:11−cr−00077−PPS−APR−10 Notice has been electronically mailed to:**

David E Vandercoy david.vandercoy@valpo.edu

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com, gkasich@gmail.com

Scott L King sking@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, 334office@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje–nelson.com

Paul G Stracci pgstracci97@thiros.com, albenjamin99@thiros.com, doricard68@thiros.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia–decastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov,

janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Kerry C Connor kcconnor@sbcglobal.net

Bruce R Hegyi – AUSA bruce.hegyi@usdoj.gov

**2:11–cr–00077–PPS–APR–10 Notice has been delivered by U.S. Mail or other means to:**

**2:11–cr–00077–PPS–APR–11 Notice has been electronically mailed to:**

David E Vandercoy david.vandercoy@valpo.edu

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com, gkasich@gmail.com

Scott L King sking@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, 334office@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje–nelson.com

Paul G Stracci pgstracci97@thiros.com, albenjamin99@thiros.com, doricard68@thiros.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia–decastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Kerry C Connor kcconnor@sbcglobal.net

Bruce R Hegyi – AUSA bruce.hegyi@usdoj.gov

**2:11–cr–00077–PPS–APR–11 Notice has been delivered by U.S. Mail or other means to:**

**2:11–cr–00077–PPS–APR–12 Notice has been electronically mailed to:**

David E Vandercoy david.vandercoy@valpo.edu

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com, gkasich@gmail.com

Scott L King sking@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, 334office@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje–nelson.com

Paul G Stracci pgstracci97@thiros.com, albenjamin99@thiros.com, doricard68@thiros.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia–decastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Kerry C Connor kcconnor@sbcglobal.net

Bruce R Hegyi – AUSA bruce.hegyi@usdoj.gov

**2:11–cr–00077–PPS–APR–12 Notice has been delivered by U.S. Mail or other means to:**

**2:11–cr–00077–PPS–APR–13 Notice has been electronically mailed to:**

David E Vandercoy david.vandercoy@valpo.edu

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com, gkasich@gmail.com

Scott L King sking@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, 334office@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje–nelson.com

Paul G Stracci pgstracci97@thiros.com, albenjamin99@thiros.com, doricard68@thiros.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia–decastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Kerry C Connor kcconnor@sbcglobal.net

Bruce R Hegyi – AUSA bruce.hegyi@usdoj.gov

**2:11–cr–00077–PPS–APR–13 Notice has been delivered by U.S. Mail or other means to:**

**2:11–cr–00077–PPS–APR–14 Notice has been electronically mailed to:**

David E Vandercoy david.vandercoy@valpo.edu

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com, gkasich@gmail.com

Scott L King sking@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, 334office@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje–nelson.com

Paul G Stracci pgstracci97@thiros.com, albenjamin99@thiros.com, doricard68@thiros.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia–decastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov,
janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Kerry C Connor kcconnor@sbcglobal.net

Bruce R Hegyi – AUSA bruce.hegyi@usdoj.gov

**2:11–cr–00077–PPS–APR–14 Notice has been delivered by U.S. Mail or other means to:**

**2:11–cr–00077–PPS–APR–15 Notice has been electronically mailed to:**

David E Vandercoy david.vandercoy@valpo.edu

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com, gkasich@gmail.com

Scott L King sking@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, 334office@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje–nelson.com

Paul G Stracci pgstracci97@thiros.com, albenjamin99@thiros.com, doricard68@thiros.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia–decastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Kerry C Connor kcconnor@sbcglobal.net

Bruce R Hegyi – AUSA bruce.hegyi@usdoj.gov

**2:11–cr–00077–PPS–APR–15 Notice has been delivered by U.S. Mail or other means to:**

**2:11–cr–00077–PPS–APR–16 Notice has been electronically mailed to:**

David E Vandercoy david.vandercoy@valpo.edu

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com, gkasich@gmail.com

Scott L King sking@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, 334office@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje–nelson.com

Paul G Stracci pgstracci97@thiros.com, albenjamin99@thiros.com, doricard68@thiros.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia–decastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Kerry C Connor kcconnor@sbcglobal.net

Bruce R Hegyi – AUSA bruce.hegyi@usdoj.gov

**2:11–cr–00077–PPS–APR–16 Notice has been delivered by U.S. Mail or other means to:**

**2:11–cr–00077–PPS–APR–17 Notice has been electronically mailed to:**

David E Vandercoy david.vandercoy@valpo.edu

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com, gkasich@gmail.com

Scott L King sking@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, 334office@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje–nelson.com

Paul G Stracci pgstracci97@thiros.com, albenjamin99@thiros.com, doricard68@thiros.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia–decastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Kerry C Connor kcconnor@sbcglobal.net

Bruce R Hegyi – AUSA bruce.hegyi@usdoj.gov

**2:11–cr–00077–PPS–APR–17 Notice has been delivered by U.S. Mail or other means to:**

**2:11–cr–00077–PPS–APR–18 Notice has been electronically mailed to:**

David E Vandercoy david.vandercoy@valpo.edu

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com, gkasich@gmail.com

Scott L King sking@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, 334office@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje–nelson.com

Paul G Stracci pgstracci97@thiros.com, albenjamin99@thiros.com, doricard68@thiros.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia–decastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Kerry C Connor kcconnor@sbcglobal.net

Bruce R Hegyi – AUSA bruce.hegyi@usdoj.gov

**2:11–cr–00077–PPS–APR–18 Notice has been delivered by U.S. Mail or other means to:**

**2:11–cr–00077–PPS–APR–19 Notice has been electronically mailed to:**

David E Vandercoy david.vandercoy@valpo.edu

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com, gkasich@gmail.com

Scott L King sking@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, 334office@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje–nelson.com

Paul G Stracci pgstracci97@thiros.com, albenjamin99@thiros.com, doricard68@thiros.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia–decastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Kerry C Connor kcconnor@sbcglobal.net

623

Bruce R Hegyi – AUSA bruce.hegyi@usdoj.gov

**2:11–cr–00077–PPS–APR–19 Notice has been delivered by U.S. Mail or other means to:**

**2:11–cr–00077–PPS–APR–20 Notice has been electronically mailed to:**

David E Vandercoy david.vandercoy@valpo.edu

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com, gkasich@gmail.com

Scott L King sking@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, 334office@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje–nelson.com

Paul G Stracci pgstracci97@thiros.com, albenjamin99@thiros.com, doricard68@thiros.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia−decastro.com, ysierra@rascia−decastro.com

Dean R Lanter − AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick − AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Kerry C Connor kcconnor@sbcglobal.net

Bruce R Hegyi − AUSA bruce.hegyi@usdoj.gov

**2:11−cr−00077−PPS−APR−20 Notice has been delivered by U.S. Mail or other means to:**

**2:11−cr−00077−PPS−APR−21 Notice has been electronically mailed to:**

David E Vandercoy david.vandercoy@valpo.edu

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com, gkasich@gmail.com

Scott L King sking@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, 334office@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin − FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje−nelson.com

Paul G Stracci pgstracci97@thiros.com, albenjamin99@thiros.com, doricard68@thiros.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia−decastro.com, ysierra@rascia−decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia−decastro.com, ysierra@rascia−decastro.com

Dean R Lanter − AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick − AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Kerry C Connor kcconnor@sbcglobal.net

Bruce R Hegyi − AUSA bruce.hegyi@usdoj.gov

**2:11−cr−00077−PPS−APR−21 Notice has been delivered by U.S. Mail or other means to:**

**2:11−cr−00077−PPS−APR−22 Notice has been electronically mailed to:**

David E Vandercoy david.vandercoy@valpo.edu

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com, gkasich@gmail.com

Scott L King sking@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, 334office@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje−nelson.com

Paul G Stracci pgstracci97@thiros.com, albenjamin99@thiros.com, doricard68@thiros.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia−decastro.com, ysierra@rascia−decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia−decastro.com, ysierra@rascia−decastro.com

Dean R Lanter – AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Kerry C Connor kcconnor@sbcglobal.net

Bruce R Hegyi – AUSA bruce.hegyi@usdoj.gov

**2:11−cr−00077−PPS−APR−22 Notice has been delivered by U.S. Mail or other means to:**

**2:11−cr−00077−PPS−APR−23 Notice has been electronically mailed to:**

David E Vandercoy david.vandercoy@valpo.edu

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com, gkasich@gmail.com

Scott L King sking@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, 334office@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje–nelson.com

Paul G Stracci pgstracci97@thiros.com, albenjamin99@thiros.com, doricard68@thiros.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia–decastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Kerry C Connor kcconnor@sbcglobal.net

Bruce R Hegyi – AUSA bruce.hegyi@usdoj.gov

**2:11–cr–00077–PPS–APR–23 Notice has been delivered by U.S. Mail or other means to:**

```
MIME-Version:1.0
From:CMECFinnd@innd.uscourts.gov
To:CMECFinnd@localhost.localdomain
Bcc:
--Case Participants: Bryan M Truitt (bryan@tblawyers.com, sherrie@tblawyers.com), David J
Nozick - AUSA (david.nozick@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov,
susan.devries@usdoj.gov, usainn.ecfcivil@usdoj.gov), Kurt R Earnst (kre@braje-nelson.com),
Paul Jeffrey Schlesinger (pjeffslaw@aol.com), Pablo DeCastro
(pdecastro@rascia-decastro.com, ysierra@rascia-decastro.com), Sheldon B Nagelberg
(sbnagelberglaw@att.net), Thomas W Vanes (tom.vanes@sbcglobal.net), John T Theis
(theislaw@aol.com), Catherine A Lake (attyclake@sbcglobal.net), Adam Tavitas
(adtavitas@aol.com, b.lynneadams@yahoo.com), Dean R Lanter - AUSA (dean.lanter@usdoj.gov,
janet.eisenmann@usdoj.gov, usainn.ecfcivil@usdoj.gov), John E Martin - FCD
(john_martin@fd.org), Scott L King (jwilliams@scottkinggroup.com,
sking@scottkinggroup.com), Mark A Psimos (psimoslaw@airbaud.net), James N Thiros
(jim@thiros.com, lynn@thiros.com), Robert L Rascia (rrascia@rascia-decastro.com,
ysierra@rascia-decastro.com), Gojko Kasich (gkasich@crownlaw.com, gkasich@gmail.com),
Arlington J Foley (arlingtonfoley@att.net), Kerry C Connor (kcconnor@sbcglobal.net),
Roxanne Mendez Johnson (attorneyrmj@gmail.com), Visvaldis P Kupsis (vpkupsis@hotmail.com),
Paul G Stracci (albenjamin99@thiros.com, doricard68@thiros.com, pgstracci97@thiros.com),
Stephen Edward Scheele (pkd@gk4law.com, ses@gk4law.com), Jack Friedlander
(jack@jackfriedlander.com, office@jackfriedlander.com), Bruce R Hegyi - AUSA
(bruce.hegyi@usdoj.gov), Clark W Holesinger (334office@frontier.com,
arcclark@frontier.com, clark.334@frontier.com), R Brian Woodward (carolb@wbbklaw.com,
rbwoodward@wbbklaw.com), John Maksimovich (criminallaw@johnmaksimovich.com), David E
Vandercoy (david.vandercoy@valpo.edu), Magistrate Judge Andrew P Rodovich
(rodovich_chambers@innd.uscourts.gov), Chief Judge Philip P Simon
(denise_woodside@innd.uscourts.gov, joshua_urquhart@innd.uscourts.gov,
katherine_welsh@innd.uscourts.gov, mark_hancock@innd.uscourts.gov,
noel_collins@innd.uscourts.gov, philip_simon@innd.uscourts.gov)
--Non Case Participants: Matthew D Soliday (office@matthewsolidaylaw.com),
Probation/Pretrial Services (innpml_cmecf@innd.uscourts.gov), U S Marshal
(inn.docket-fw@usdoj.gov, inn.docket-sb@usdoj.gov, usms.27@usdoj.gov)
--No Notice Sent:

Message-Id:2300306@innd.uscourts.gov
Subject:Activity in Case 2:11-cr-00077-PPS-APR United States of America v. Briseno et al
Notice of Hearing/Deadlines
Content-Type: text/html
```

### U.S. District Court Northern District of Indiana [LIVE]

### USDC Northern Indiana

## Notice of Electronic Filing

The following transaction was entered on 7/3/2013 at 1:00 PM EST and filed on 7/3/2013

**Case Name:**        United States of America v. Briseno et al

**Case Number:**      2:11–cr–00077–PPS–APR

**Filer:**

**Document Number:** 592(No document attached)

**Docket Text:**
 **NOTICE OF HEARING/DEADLINES as to Juan Briseno, Galo Benjamin Feliciano, Guillermo
Briseno, Alejandro Balboa Lara, Justin Weaver, Michael Anthony Castillo, Kelvin Jefferson
Beltran, David Almaraz, Joseph Rene Torres, Jason Medina, Edward Raye Serna, Alejandro
Briseno, Robert Lockhart, Armando Jose Velasquez, Anthony Baldazo, Salvador Chavez,**

**Raymond Campos, Ace Cortez, Julian Guillermo Serna, Julius Solis, Darmaile Cortez Sutton, Eddie Torres, Richard Reyes. The Status Conference previously scheduled for 8/29/2013 is now VACATED and RESET for 7/11/2013 at 1:00 p.m (Central/Hammond time) in US District Court – Hammond before Chief Judge Philip P Simon. Only counsel for those defendants who have not pleaded guilty are required to attend. The U.S. Marshal is not required to produce any dfts for this hearing. (nac)**

**2:11–cr–00077–PPS–APR–1 Notice has been electronically mailed to:**

David E Vandercoy david.vandercoy@valpo.edu

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com, gkasich@gmail.com

Scott L King sking@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, 334office@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje–nelson.com

Paul G Stracci pgstracci97@thiros.com, albenjamin99@thiros.com, doricard68@thiros.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia−decastro.com, ysierra@rascia−decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia−decastro.com, ysierra@rascia−decastro.com

Dean R Lanter − AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick − AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Kerry C Connor kcconnor@sbcglobal.net

Bruce R Hegyi − AUSA bruce.hegyi@usdoj.gov

**2:11−cr−00077−PPS−APR−1 Notice has been delivered by U.S. Mail or other means to:**

**2:11−cr−00077−PPS−APR−2 Notice has been electronically mailed to:**

David E Vandercoy david.vandercoy@valpo.edu

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com, gkasich@gmail.com

Scott L King sking@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, 334office@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin − FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje−nelson.com

Paul G Stracci pgstracci97@thiros.com, albenjamin99@thiros.com, doricard68@thiros.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia−decastro.com, ysierra@rascia−decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia−decastro.com, ysierra@rascia−decastro.com

Dean R Lanter − AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick − AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Kerry C Connor kcconnor@sbcglobal.net

Bruce R Hegyi − AUSA bruce.hegyi@usdoj.gov

**2:11−cr−00077−PPS−APR−2 Notice has been delivered by U.S. Mail or other means to:**

**2:11−cr−00077−PPS−APR−3 Notice has been electronically mailed to:**

David E Vandercoy david.vandercoy@valpo.edu

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com, gkasich@gmail.com

Scott L King sking@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, 334office@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje–nelson.com

Paul G Stracci pgstracci97@thiros.com, albenjamin99@thiros.com, doricard68@thiros.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia–decastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Kerry C Connor kcconnor@sbcglobal.net

Bruce R Hegyi – AUSA bruce.hegyi@usdoj.gov

**2:11–cr–00077–PPS–APR–3 Notice has been delivered by U.S. Mail or other means to:**

**2:11–cr–00077–PPS–APR–4 Notice has been electronically mailed to:**

David E Vandercoy david.vandercoy@valpo.edu

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com, gkasich@gmail.com

Scott L King sking@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, 334office@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje–nelson.com

Paul G Stracci pgstracci97@thiros.com, albenjamin99@thiros.com, doricard68@thiros.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia–decastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Kerry C Connor kcconnor@sbcglobal.net

Bruce R Hegyi – AUSA bruce.hegyi@usdoj.gov

**2:11–cr–00077–PPS–APR–4 Notice has been delivered by U.S. Mail or other means to:**

**2:11−cr−00077−PPS−APR−5 Notice has been electronically mailed to:**

David E Vandercoy david.vandercoy@valpo.edu

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com, gkasich@gmail.com

Scott L King sking@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, 334office@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin − FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje−nelson.com

Paul G Stracci pgstracci97@thiros.com, albenjamin99@thiros.com, doricard68@thiros.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia−decastro.com, ysierra@rascia−decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia−decastro.com, ysierra@rascia−decastro.com

Dean R Lanter − AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Kerry C Connor kcconnor@sbcglobal.net

Bruce R Hegyi – AUSA bruce.hegyi@usdoj.gov

**2:11–cr–00077–PPS–APR–5 Notice has been delivered by U.S. Mail or other means to:**

**2:11–cr–00077–PPS–APR–6 Notice has been electronically mailed to:**

David E Vandercoy david.vandercoy@valpo.edu

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com, gkasich@gmail.com

Scott L King sking@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, 334office@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje–nelson.com

Paul G Stracci pgstracci97@thiros.com, albenjamin99@thiros.com, doricard68@thiros.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia−decastro.com, ysierra@rascia−decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia−decastro.com, ysierra@rascia−decastro.com

Dean R Lanter − AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick − AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Kerry C Connor kcconnor@sbcglobal.net

Bruce R Hegyi − AUSA bruce.hegyi@usdoj.gov

**2:11−cr−00077−PPS−APR−6 Notice has been delivered by U.S. Mail or other means to:**

**2:11−cr−00077−PPS−APR−7 Notice has been electronically mailed to:**

David E Vandercoy david.vandercoy@valpo.edu

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com, gkasich@gmail.com

Scott L King sking@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, 334office@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin − FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje–nelson.com

Paul G Stracci pgstracci97@thiros.com, albenjamin99@thiros.com, doricard68@thiros.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia–decastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov,
janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Kerry C Connor kcconnor@sbcglobal.net

Bruce R Hegyi – AUSA bruce.hegyi@usdoj.gov

**2:11–cr–00077–PPS–APR–7 Notice has been delivered by U.S. Mail or other means to:**

**2:11–cr–00077–PPS–APR–8 Notice has been electronically mailed to:**

David E Vandercoy david.vandercoy@valpo.edu

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com, gkasich@gmail.com

Scott L King sking@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, 334office@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje–nelson.com

Paul G Stracci pgstracci97@thiros.com, albenjamin99@thiros.com, doricard68@thiros.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia–decastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Kerry C Connor kcconnor@sbcglobal.net

Bruce R Hegyi – AUSA bruce.hegyi@usdoj.gov

**2:11–cr–00077–PPS–APR–8 Notice has been delivered by U.S. Mail or other means to:**

**2:11–cr–00077–PPS–APR–9 Notice has been electronically mailed to:**

David E Vandercoy david.vandercoy@valpo.edu

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

639

Gojko Kasich gkasich@crownlaw.com, gkasich@gmail.com

Scott L King sking@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, 334office@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje–nelson.com

Paul G Stracci pgstracci97@thiros.com, albenjamin99@thiros.com, doricard68@thiros.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia–decastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Kerry C Connor kcconnor@sbcglobal.net

Bruce R Hegyi – AUSA bruce.hegyi@usdoj.gov

**2:11−cr−00077−PPS−APR−9 Notice has been delivered by U.S. Mail or other means to:**

**2:11−cr−00077−PPS−APR−10 Notice has been electronically mailed to:**

David E Vandercoy david.vandercoy@valpo.edu

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com, gkasich@gmail.com

Scott L King sking@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, 334office@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin − FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje−nelson.com

Paul G Stracci pgstracci97@thiros.com, albenjamin99@thiros.com, doricard68@thiros.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia−decastro.com, ysierra@rascia−decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia−decastro.com, ysierra@rascia−decastro.com

Dean R Lanter – AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Kerry C Connor kcconnor@sbcglobal.net

Bruce R Hegyi – AUSA bruce.hegyi@usdoj.gov

**2:11−cr−00077−PPS−APR−10 Notice has been delivered by U.S. Mail or other means to:**

**2:11−cr−00077−PPS−APR−11 Notice has been electronically mailed to:**

David E Vandercoy david.vandercoy@valpo.edu

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com, gkasich@gmail.com

Scott L King sking@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, 334office@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje−nelson.com

Paul G Stracci pgstracci97@thiros.com, albenjamin99@thiros.com, doricard68@thiros.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia−decastro.com, ysierra@rascia−decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia−decastro.com, ysierra@rascia−decastro.com

Dean R Lanter − AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick − AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Kerry C Connor kcconnor@sbcglobal.net

Bruce R Hegyi − AUSA bruce.hegyi@usdoj.gov

**2:11−cr−00077−PPS−APR−11 Notice has been delivered by U.S. Mail or other means to:**

**2:11−cr−00077−PPS−APR−12 Notice has been electronically mailed to:**

David E Vandercoy david.vandercoy@valpo.edu

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com, gkasich@gmail.com

Scott L King sking@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, 334office@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje–nelson.com

Paul G Stracci pgstracci97@thiros.com, albenjamin99@thiros.com, doricard68@thiros.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia–decastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Kerry C Connor kcconnor@sbcglobal.net

Bruce R Hegyi – AUSA bruce.hegyi@usdoj.gov

**2:11–cr–00077–PPS–APR–12 Notice has been delivered by U.S. Mail or other means to:**

**2:11–cr–00077–PPS–APR–13 Notice has been electronically mailed to:**

David E Vandercoy david.vandercoy@valpo.edu

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com, gkasich@gmail.com

Scott L King sking@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, 334office@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje–nelson.com

Paul G Stracci pgstracci97@thiros.com, albenjamin99@thiros.com, doricard68@thiros.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia–decastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Kerry C Connor kcconnor@sbcglobal.net

Bruce R Hegyi – AUSA bruce.hegyi@usdoj.gov

**2:11–cr–00077–PPS–APR–13 Notice has been delivered by U.S. Mail or other means to:**

**2:11–cr–00077–PPS–APR–14 Notice has been electronically mailed to:**

David E Vandercoy david.vandercoy@valpo.edu

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com, gkasich@gmail.com

Scott L King sking@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, 334office@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje–nelson.com

Paul G Stracci pgstracci97@thiros.com, albenjamin99@thiros.com, doricard68@thiros.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia–decastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Kerry C Connor kcconnor@sbcglobal.net

Bruce R Hegyi – AUSA bruce.hegyi@usdoj.gov

**2:11–cr–00077–PPS–APR–14 Notice has been delivered by U.S. Mail or other means to:**

**2:11–cr–00077–PPS–APR–15 Notice has been electronically mailed to:**

David E Vandercoy david.vandercoy@valpo.edu

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com, gkasich@gmail.com

Scott L King sking@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, 334office@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje–nelson.com

Paul G Stracci pgstracci97@thiros.com, albenjamin99@thiros.com, doricard68@thiros.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia–decastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Kerry C Connor kcconnor@sbcglobal.net

Bruce R Hegyi – AUSA bruce.hegyi@usdoj.gov

**2:11–cr–00077–PPS–APR–15 Notice has been delivered by U.S. Mail or other means to:**

**2:11–cr–00077–PPS–APR–16 Notice has been electronically mailed to:**

David E Vandercoy david.vandercoy@valpo.edu

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com, gkasich@gmail.com

Scott L King sking@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, 334office@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje−nelson.com

Paul G Stracci pgstracci97@thiros.com, albenjamin99@thiros.com, doricard68@thiros.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia−decastro.com, ysierra@rascia−decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia−decastro.com, ysierra@rascia−decastro.com

Dean R Lanter − AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick − AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Kerry C Connor kcconnor@sbcglobal.net

Bruce R Hegyi − AUSA bruce.hegyi@usdoj.gov

**2:11−cr−00077−PPS−APR−16 Notice has been delivered by U.S. Mail or other means to:**

**2:11−cr−00077−PPS−APR−17 Notice has been electronically mailed to:**

David E Vandercoy david.vandercoy@valpo.edu

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com, gkasich@gmail.com

Scott L King sking@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, 334office@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje–nelson.com

Paul G Stracci pgstracci97@thiros.com, albenjamin99@thiros.com, doricard68@thiros.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia–decastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Kerry C Connor kcconnor@sbcglobal.net

Bruce R Hegyi – AUSA bruce.hegyi@usdoj.gov

**2:11–cr–00077–PPS–APR–17 Notice has been delivered by U.S. Mail or other means to:**

**2:11–cr–00077–PPS–APR–18 Notice has been electronically mailed to:**

David E Vandercoy david.vandercoy@valpo.edu

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com, gkasich@gmail.com

Scott L King sking@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, 334office@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje–nelson.com

Paul G Stracci pgstracci97@thiros.com, albenjamin99@thiros.com, doricard68@thiros.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia–decastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Kerry C Connor kcconnor@sbcglobal.net

Bruce R Hegyi – AUSA bruce.hegyi@usdoj.gov

**2:11–cr–00077–PPS–APR–18 Notice has been delivered by U.S. Mail or other means to:**

**2:11–cr–00077–PPS–APR–19 Notice has been electronically mailed to:**

David E Vandercoy david.vandercoy@valpo.edu

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com, gkasich@gmail.com

Scott L King sking@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, 334office@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje–nelson.com

Paul G Stracci pgstracci97@thiros.com, albenjamin99@thiros.com, doricard68@thiros.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia–decastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov,
janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Kerry C Connor kcconnor@sbcglobal.net

Bruce R Hegyi – AUSA bruce.hegyi@usdoj.gov

**2:11–cr–00077–PPS–APR–19 Notice has been delivered by U.S. Mail or other means to:**

**2:11–cr–00077–PPS–APR–20 Notice has been electronically mailed to:**

David E Vandercoy david.vandercoy@valpo.edu

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com, gkasich@gmail.com

Scott L King sking@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, 334office@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje–nelson.com

Paul G Stracci pgstracci97@thiros.com, albenjamin99@thiros.com, doricard68@thiros.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia–decastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Kerry C Connor kcconnor@sbcglobal.net

Bruce R Hegyi – AUSA bruce.hegyi@usdoj.gov

**2:11–cr–00077–PPS–APR–20 Notice has been delivered by U.S. Mail or other means to:**

**2:11–cr–00077–PPS–APR–21 Notice has been electronically mailed to:**

David E Vandercoy david.vandercoy@valpo.edu

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com, gkasich@gmail.com

Scott L King sking@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, 334office@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje−nelson.com

Paul G Stracci pgstracci97@thiros.com, albenjamin99@thiros.com, doricard68@thiros.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia−decastro.com, ysierra@rascia−decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia−decastro.com, ysierra@rascia−decastro.com

Dean R Lanter − AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick − AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Kerry C Connor kcconnor@sbcglobal.net

Bruce R Hegyi − AUSA bruce.hegyi@usdoj.gov

**2:11−cr−00077−PPS−APR−21 Notice has been delivered by U.S. Mail or other means to:**

**2:11−cr−00077−PPS−APR−22 Notice has been electronically mailed to:**

David E Vandercoy david.vandercoy@valpo.edu

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com, gkasich@gmail.com

Scott L King sking@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, 334office@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje–nelson.com

Paul G Stracci pgstracci97@thiros.com, albenjamin99@thiros.com, doricard68@thiros.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia–decastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Kerry C Connor kcconnor@sbcglobal.net

Bruce R Hegyi – AUSA bruce.hegyi@usdoj.gov

**2:11–cr–00077–PPS–APR–22 Notice has been delivered by U.S. Mail or other means to:**

**2:11–cr–00077–PPS–APR–23 Notice has been electronically mailed to:**

David E Vandercoy david.vandercoy@valpo.edu

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com, gkasich@gmail.com

Scott L King sking@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, 334office@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje–nelson.com

Paul G Stracci pgstracci97@thiros.com, albenjamin99@thiros.com, doricard68@thiros.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia–decastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Kerry C Connor kcconnor@sbcglobal.net

Bruce R Hegyi – AUSA bruce.hegyi@usdoj.gov

**2:11–cr–00077–PPS–APR–23 Notice has been delivered by U.S. Mail or other means to:**

657

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

UNITED STATES OF AMERICA      )
               )
        v.          )      NO. 2:11 CR 77 PPS
               )
JUAN BRISENO, et al.       )

## GOVERNMENT'S MOTION TO CONTINUE STATUS CONFERENCE DATE

Comes now the United States of America, by David Capp, United States Attorney for the Northern District of Indiana, through Assistant U.S. Attorney David J. Nozick, and states the following:

1.      This honorable Court has set a Status Conference for July 11, 2013.

2.      The undersigned Assistant United States Attorney is scheduled to be on annual leave the week of July 8-July 12, 2013.  Co-counsel for the government on this case is based in Washington, D.C., and is currently scheduled to come to the Northern District of Indiana the week of July 15- July 19, 2013.

3.      The government respectfully requests that this honorable court reschedule the July 11 Status Conference for the week of July 15-July 19, 2013.  The government requests that if the court does schedule it for that week, it not be scheduled until at least noon on July 15, and no later than 11:00 a.m. on July 19, so as to accommodate co-counsel's travel schedule to and from Washington, DC.

4.      The government concurs with the court that defendants need not be present for this Status Conference.  However, the government and counsel for Juan Briseno believe that all parties would benefit from the Court holding a separate Status Conference

with only defendant Juan Briseno, defense counsel for Briseno and the Government. This separate status conference with Juan Briseno should occur before the Status Conference with all of the co-defendants' counsel.

**WHEREFORE**, for the reasons stated above, the government requests the Court continue the Status Conference in this case until the week of July 15-July 19, 2013. The government also requests that the Court also schedule a status conference with defendant Juan Briseno, counsel for Juan Briseno and the government only.

Respectfully submitted,

DAVID CAPP
UNITED STATES ATTORNEY

By:    /s/ David J. Nozick
       David J. Nozick
       Assistant United States Attorney
       5400 Federal Plaza, Suite 1500
       Hammond, Indiana 46320
       (219) 937-5500

2

659

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

UNITED STATES OF AMERICA    )
    )
       v.    )    NO. 2:11 CR 77 PPS
    )
JUAN BRISENO, et al.    )

CERTIFICATE OF SERVICE

The undersigned hereby certifies that the Government's Motion to Continue Status Conference Date was electronically filed with the Clerk of the Court using the CM/ECF system which sent notification of said filing to all counsel of record.

By:    /s/ Janet L. Eisenmann
    Janet L. Eisenmann
    U.S. Attorney's Office
    5400 Federal Plaza, Suite 1500
    Hammond, Indiana 46320
    (219) 937-5500

```
MIME-Version:1.0
From:CMECFinnd@innd.uscourts.gov
To:CMECFinnd@localhost.localdomain
Bcc:
--Case Participants: Bryan M Truitt (bryan@tblawyers.com, sherrie@tblawyers.com), David J
Nozick – AUSA (david.nozick@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov,
susan.devries@usdoj.gov, usainn.ecfcivil@usdoj.gov), Kurt R Earnst (kre@braje-nelson.com),
Paul Jeffrey Schlesinger (pjeffslaw@aol.com), Pablo DeCastro
(pdecastro@rascia-decastro.com, ysierra@rascia-decastro.com), Sheldon B Nagelberg
(sbnagelberglaw@att.net), Thomas W Vanes (tom.vanes@sbcglobal.net), John T Theis
(theislaw@aol.com), Catherine A Lake (attyclake@sbcglobal.net), Adam Tavitas
(adtavitas@aol.com, b.lynneadams@yahoo.com), Dean R Lanter – AUSA (dean.lanter@usdoj.gov,
janet.eisenmann@usdoj.gov, usainn.ecfcivil@usdoj.gov), John E Martin – FCD
(john_martin@fd.org), Scott L King (jwilliams@scottkinggroup.com,
sking@scottkinggroup.com), Mark A Psimos (psimoslaw@airbaud.net), James N Thiros
(jim@thiros.com, lynn@thiros.com), Robert L Rascia (rrascia@rascia-decastro.com,
ysierra@rascia-decastro.com), Gojko Kasich (gkasich@crownlaw.com, gkasich@gmail.com),
Arlington J Foley (arlingtonfoley@att.net), Roxanne Mendez Johnson
(attorneyrmj@gmail.com), Visvaldis P Kupsis (vpkupsis@hotmail.com), Stephen Edward Scheele
(pkd@gk4law.com, ses@gk4law.com), Jack Friedlander (jack@jackfriedlander.com,
office@jackfriedlander.com), Bruce R Hegyi – AUSA (bruce.hegyi@usdoj.gov), Clark W
Holesinger (334office@frontier.com, arcclark@frontier.com, clark.334@frontier.com), R
Brian Woodward (carolb@wbbklaw.com, rbwoodward@wbbklaw.com), John Maksimovich
(criminallaw@johnmaksimovich.com), David E Vandercoy (david.vandercoy@valpo.edu),
Magistrate Judge Andrew P Rodovich (rodovich_chambers@innd.uscourts.gov), Chief Judge
Philip P Simon (denise_woodside@innd.uscourts.gov, joshua_urquhart@innd.uscourts.gov,
katherine_welsh@innd.uscourts.gov, mark_hancock@innd.uscourts.gov,
noel_collins@innd.uscourts.gov, philip_simon@innd.uscourts.gov)
--Non Case Participants: Matthew D Soliday (office@matthewsolidaylaw.com),
Probation/Pretrial Services (innpml_cmecf@innd.uscourts.gov), U S Marshal
(inn.docket-fw@usdoj.gov, inn.docket-sb@usdoj.gov, usms.27@usdoj.gov)
--No Notice Sent:

Message-Id:2302144@innd.uscourts.gov
Subject:Activity in Case 2:11-cr-00077-PPS-APR United States of America v. Briseno et al
Order on Motion to Continue
```
Content–Type: text/html

## U.S. District Court Northern District of Indiana [LIVE]

## USDC Northern Indiana

### Notice of Electronic Filing

The following transaction was entered on 7/8/2013 at 5:55 PM EST and filed on 7/8/2013

**Case Name:**     United States of America v. Briseno et al

**Case Number:**     2:11–cr–00077–PPS–APR

**Filer:**

**Document Number:** 595(No document attached)

**Docket Text:**

**ORDER GRANTING MOTION [594] to Continue Status Conference originally scheduled for 7/11/2013. The Status Conference is now RESET for 7/18/2013 02:00 PM in US District Court – Hammond before Chief Judge Philip P Simon. Only counsel for those defendants who have who have not pleaded guilty are required to attend. The U.S. Marshal is not required to produce any dfts for this hearing. Approved by Chief Judge Philip P Simon on 7/8/2013. (Text order only, no pdf attached). (nac)**

**2:11−cr−00077−PPS−APR−1 Notice has been electronically mailed to:**

David E Vandercoy david.vandercoy@valpo.edu

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com, gkasich@gmail.com

Scott L King sking@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, 334office@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin − FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje−nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia−decastro.com, ysierra@rascia−decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia−decastro.com, ysierra@rascia−decastro.com

Dean R Lanter − AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick − AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov,

janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Bruce R Hegyi – AUSA bruce.hegyi@usdoj.gov

**2:11–cr–00077–PPS–APR–1 Notice has been delivered by U.S. Mail or other means to:**

**2:11–cr–00077–PPS–APR–2 Notice has been electronically mailed to:**

David E Vandercoy david.vandercoy@valpo.edu

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com, gkasich@gmail.com

Scott L King sking@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, 334office@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje–nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia–decastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Bruce R Hegyi – AUSA bruce.hegyi@usdoj.gov

**2:11–cr–00077–PPS–APR–2 Notice has been delivered by U.S. Mail or other means to:**

**2:11–cr–00077–PPS–APR–3 Notice has been electronically mailed to:**

David E Vandercoy david.vandercoy@valpo.edu

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com, gkasich@gmail.com

Scott L King sking@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, 334office@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje–nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia−decastro.com, ysierra@rascia−decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia−decastro.com, ysierra@rascia−decastro.com

Dean R Lanter − AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick − AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Bruce R Hegyi − AUSA bruce.hegyi@usdoj.gov

**2:11−cr−00077−PPS−APR−3 Notice has been delivered by U.S. Mail or other means to:**

**2:11−cr−00077−PPS−APR−4 Notice has been electronically mailed to:**

David E Vandercoy david.vandercoy@valpo.edu

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com, gkasich@gmail.com

Scott L King sking@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, 334office@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin − FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje−nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia−decastro.com, ysierra@rascia−decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia−decastro.com, ysierra@rascia−decastro.com

Dean R Lanter − AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick − AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov,
janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Bruce R Hegyi − AUSA bruce.hegyi@usdoj.gov

**2:11−cr−00077−PPS−APR−4 Notice has been delivered by U.S. Mail or other means to:**

**2:11−cr−00077−PPS−APR−5 Notice has been electronically mailed to:**

David E Vandercoy david.vandercoy@valpo.edu

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com, gkasich@gmail.com

Scott L King sking@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, 334office@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje–nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia–decastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Bruce R Hegyi – AUSA bruce.hegyi@usdoj.gov

**2:11–cr–00077–PPS–APR–5 Notice has been delivered by U.S. Mail or other means to:**

**2:11–cr–00077–PPS–APR–6 Notice has been electronically mailed to:**

David E Vandercoy david.vandercoy@valpo.edu

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com, gkasich@gmail.com

Scott L King sking@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

667

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, 334office@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje–nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia–decastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Bruce R Hegyi – AUSA bruce.hegyi@usdoj.gov

**2:11–cr–00077–PPS–APR–6 Notice has been delivered by U.S. Mail or other means to:**

**2:11–cr–00077–PPS–APR–7 Notice has been electronically mailed to:**

David E Vandercoy david.vandercoy@valpo.edu

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com, gkasich@gmail.com

Scott L King sking@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, 334office@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje−nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia−decastro.com, ysierra@rascia−decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia−decastro.com, ysierra@rascia−decastro.com

Dean R Lanter – AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Bruce R Hegyi – AUSA bruce.hegyi@usdoj.gov

**2:11−cr−00077−PPS−APR−7 Notice has been delivered by U.S. Mail or other means to:**

**2:11−cr−00077−PPS−APR−8 Notice has been electronically mailed to:**

669

David E Vandercoy david.vandercoy@valpo.edu

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com, gkasich@gmail.com

Scott L King sking@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, 334office@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje–nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia–decastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Bruce R Hegyi – AUSA bruce.hegyi@usdoj.gov

**2:11–cr–00077–PPS–APR–8 Notice has been delivered by U.S. Mail or other means to:**

**2:11–cr–00077–PPS–APR–9 Notice has been electronically mailed to:**

David E Vandercoy david.vandercoy@valpo.edu

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com, gkasich@gmail.com

Scott L King sking@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, 334office@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje–nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia–decastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Bruce R Hegyi – AUSA bruce.hegyi@usdoj.gov

**2:11–cr–00077–PPS–APR–9 Notice has been delivered by U.S. Mail or other means to:**

**2:11–cr–00077–PPS–APR–10 Notice has been electronically mailed to:**

David E Vandercoy david.vandercoy@valpo.edu

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com, gkasich@gmail.com

Scott L King sking@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, 334office@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje–nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia–decastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Bruce R Hegyi – AUSA bruce.hegyi@usdoj.gov

**2:11–cr–00077–PPS–APR–10 Notice has been delivered by U.S. Mail or other means to:**

**2:11–cr–00077–PPS–APR–11 Notice has been electronically mailed to:**

David E Vandercoy david.vandercoy@valpo.edu

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com, gkasich@gmail.com

Scott L King sking@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, 334office@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje−nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia−decastro.com, ysierra@rascia−decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia−decastro.com, ysierra@rascia−decastro.com

Dean R Lanter − AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick − AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Bruce R Hegyi − AUSA bruce.hegyi@usdoj.gov

**2:11−cr−00077−PPS−APR−11 Notice has been delivered by U.S. Mail or other means to:**

**2:11−cr−00077−PPS−APR−12 Notice has been electronically mailed to:**

David E Vandercoy david.vandercoy@valpo.edu

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com, gkasich@gmail.com

Scott L King sking@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, 334office@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje–nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia–decastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Bruce R Hegyi – AUSA bruce.hegyi@usdoj.gov

**2:11–cr–00077–PPS–APR–12 Notice has been delivered by U.S. Mail or other means to:**

**2:11–cr–00077–PPS–APR–13 Notice has been electronically mailed to:**

David E Vandercoy david.vandercoy@valpo.edu

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com, gkasich@gmail.com

Scott L King sking@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, 334office@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje–nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia–decastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Bruce R Hegyi – AUSA bruce.hegyi@usdoj.gov

**2:11–cr–00077–PPS–APR–13 Notice has been delivered by U.S. Mail or other means to:**

**2:11–cr–00077–PPS–APR–14 Notice has been electronically mailed to:**

David E Vandercoy david.vandercoy@valpo.edu

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com, gkasich@gmail.com

Scott L King sking@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, 334office@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin − FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje−nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia−decastro.com, ysierra@rascia−decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia−decastro.com, ysierra@rascia−decastro.com

Dean R Lanter − AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick − AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Bruce R Hegyi − AUSA bruce.hegyi@usdoj.gov

**2:11−cr−00077−PPS−APR−14 Notice has been delivered by U.S. Mail or other means to:**

**2:11−cr−00077−PPS−APR−15 Notice has been electronically mailed to:**

David E Vandercoy david.vandercoy@valpo.edu

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com, gkasich@gmail.com

Scott L King sking@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, 334office@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje–nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia–decastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Bruce R Hegyi – AUSA bruce.hegyi@usdoj.gov

678

**2:11−cr−00077−PPS−APR−15 Notice has been delivered by U.S. Mail or other means to:**

**2:11−cr−00077−PPS−APR−16 Notice has been electronically mailed to:**

David E Vandercoy david.vandercoy@valpo.edu

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com, gkasich@gmail.com

Scott L King sking@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, 334office@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin − FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje−nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia−decastro.com, ysierra@rascia−decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia−decastro.com, ysierra@rascia−decastro.com

Dean R Lanter − AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov,
janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Bruce R Hegyi – AUSA bruce.hegyi@usdoj.gov

**2:11–cr–00077–PPS–APR–16 Notice has been delivered by U.S. Mail or other means to:**

**2:11–cr–00077–PPS–APR–17 Notice has been electronically mailed to:**

David E Vandercoy david.vandercoy@valpo.edu

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com, gkasich@gmail.com

Scott L King sking@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, 334office@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje–nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia−decastro.com, ysierra@rascia−decastro.com

Dean R Lanter – AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov,
janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Bruce R Hegyi – AUSA bruce.hegyi@usdoj.gov

**2:11−cr−00077−PPS−APR−17 Notice has been delivered by U.S. Mail or other means to:**

**2:11−cr−00077−PPS−APR−18 Notice has been electronically mailed to:**

David E Vandercoy david.vandercoy@valpo.edu

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com, gkasich@gmail.com

Scott L King sking@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, 334office@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

681

Kurt R Earnst kre@braje–nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia–decastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Bruce R Hegyi – AUSA bruce.hegyi@usdoj.gov

**2:11–cr–00077–PPS–APR–18 Notice has been delivered by U.S. Mail or other means to:**

**2:11–cr–00077–PPS–APR–19 Notice has been electronically mailed to:**

David E Vandercoy david.vandercoy@valpo.edu

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com, gkasich@gmail.com

Scott L King sking@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, 334office@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje−nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia−decastro.com, ysierra@rascia−decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia−decastro.com, ysierra@rascia−decastro.com

Dean R Lanter − AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick − AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Bruce R Hegyi − AUSA bruce.hegyi@usdoj.gov

**2:11−cr−00077−PPS−APR−19 Notice has been delivered by U.S. Mail or other means to:**

**2:11−cr−00077−PPS−APR−20 Notice has been electronically mailed to:**

David E Vandercoy david.vandercoy@valpo.edu

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com, gkasich@gmail.com

Scott L King sking@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, 334office@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje–nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia–decastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Bruce R Hegyi – AUSA bruce.hegyi@usdoj.gov

**2:11–cr–00077–PPS–APR–20 Notice has been delivered by U.S. Mail or other means to:**

**2:11–cr–00077–PPS–APR–21 Notice has been electronically mailed to:**

David E Vandercoy david.vandercoy@valpo.edu

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com, gkasich@gmail.com

Scott L King sking@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, 334office@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje–nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia–decastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Bruce R Hegyi – AUSA bruce.hegyi@usdoj.gov

**2:11–cr–00077–PPS–APR–21 Notice has been delivered by U.S. Mail or other means to:**

**2:11–cr–00077–PPS–APR–22 Notice has been electronically mailed to:**

David E Vandercoy david.vandercoy@valpo.edu

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com, gkasich@gmail.com

Scott L King sking@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, 334office@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje–nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia–decastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Bruce R Hegyi – AUSA bruce.hegyi@usdoj.gov

**2:11–cr–00077–PPS–APR–22 Notice has been delivered by U.S. Mail or other means to:**

**2:11–cr–00077–PPS–APR–23 Notice has been electronically mailed to:**

David E Vandercoy david.vandercoy@valpo.edu

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com, gkasich@gmail.com

Scott L King sking@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, 334office@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje–nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia–decastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Bruce R Hegyi – AUSA bruce.hegyi@usdoj.gov

**2:11–cr–00077–PPS–APR–23 Notice has been delivered by U.S. Mail or other means to:**

```
MIME-Version:1.0
From:CMECFinnd@innd.uscourts.gov
To:CMECFinnd@localhost.localdomain
Bcc:
--Case Participants: Pablo DeCastro (pdecastro@rascia-decastro.com,
ysierra@rascia-decastro.com), Kurt R Earnst (kre@braje-nelson.com), Arlington J Foley
(arlingtonfoley@att.net), Jack Friedlander (jack@jackfriedlander.com,
office@jackfriedlander.com), Bruce R Hegyi - AUSA (bruce.hegyi@usdoj.gov), Clark W
Holesinger (334office@frontier.com, arcclark@frontier.com, clark.334@frontier.com),
Roxanne Mendez Johnson (attorneyrmj@gmail.com), Gojko Kasich (gkasich@crownlaw.com,
gkasich@gmail.com), Scott L King (jwilliams@scottkinggroup.com, sking@scottkinggroup.com),
Visvaldis P Kupsis (vpkupsis@hotmail.com), Catherine A Lake (attyclake@sbcglobal.net),
Dean R Lanter - AUSA (dean.lanter@usdoj.gov, janet.eisenmann@usdoj.gov,
usainn.ecfcivil@usdoj.gov), John Maksimovich (criminallaw@johnmaksimovich.com), John E
Martin - FCD (john_martin@fd.org), Sheldon B Nagelberg (sbnagelberglaw@att.net), David J
Nozick - AUSA (david.nozick@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov,
susan.devries@usdoj.gov, usainn.ecfcivil@usdoj.gov), Mark A Psimos
(psimoslaw@airbaud.net), Robert L Rascia (rrascia@rascia-decastro.com,
ysierra@rascia-decastro.com), Stephen Edward Scheele (pkd@gk4law.com, ses@gk4law.com),
Paul Jeffrey Schlesinger (pjeffslaw@aol.com), Adam Tavitas (adtavitas@aol.com,
b.lynneadams@yahoo.com), John T Theis (theislaw@aol.com), James N Thiros (jim@thiros.com,
lynn@thiros.com), Bryan M Truitt (bryan@tblawyers.com, sherrie@tblawyers.com), David E
Vandercoy (david.vandercoy@valpo.edu), Thomas W Vanes (tom.vanes@sbcglobal.net), R Brian
Woodward (carolb@wbbklaw.com, rbwoodward@wbbklaw.com), Magistrate Judge Andrew P Rodovich
(rodovich_chambers@innd.uscourts.gov), Chief Judge Philip P Simon
(denise_woodside@innd.uscourts.gov, joshua_urquhart@innd.uscourts.gov,
katherine_welsh@innd.uscourts.gov, mark_hancock@innd.uscourts.gov,
noel_collins@innd.uscourts.gov, philip_simon@innd.uscourts.gov)
--Non Case Participants: Matthew D Soliday (office@matthewsolidaylaw.com),
Probation/Pretrial Services (innpml_cmecf@innd.uscourts.gov), U S Marshal
(inn.docket-fw@usdoj.gov, inn.docket-sb@usdoj.gov, usms.27@usdoj.gov)
--No Notice Sent:

Message-Id:2302146@innd.uscourts.gov
Subject:Activity in Case 2:11-cr-00077-PPS-APR United States of America v. Briseno et al
Notice of Hearing/Deadlines
Content-Type: text/html
```

### U.S. District Court Northern District of Indiana [LIVE]

### USDC Northern Indiana

### Notice of Electronic Filing

The following transaction was entered on 7/8/2013 at 6:09 PM EST and filed on 7/8/2013

**Case Name:**     United States of America v. Briseno et al

**Case Number:**    2:11–cr–00077–PPS–APR

**Filer:**

**Document Number:** 596(No document attached)

**Docket Text:**

**NOTICE OF HEARING as to Juan Briseno only: A HEARING/STATUS CONFERENCE for dft Juan Briseno only is now scheduled for 7/18/2013 at 1:00 p.m. in US District Court – Hammond before Chief Judge Philip P Simon. Dft Juan Briseno shall appear in person along with his counsel and cnsl for the Govt. The U.S. Marshal shall produce dft Juan Briseno for this hearing/status conference. (nac)**

**2:11−cr−00077−PPS−APR−1 Notice has been electronically mailed to:**

David E Vandercoy david.vandercoy@valpo.edu

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com, gkasich@gmail.com

Scott L King sking@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, 334office@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin − FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje−nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia−decastro.com, ysierra@rascia−decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia−decastro.com, ysierra@rascia−decastro.com

Dean R Lanter − AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick − AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov,

690

janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Bruce R Hegyi – AUSA bruce.hegyi@usdoj.gov

**2:11−cr−00077−PPS−APR−1 Notice has been delivered by U.S. Mail or other means to:**

```
MIME-Version:1.0
From:CMECFinnd@innd.uscourts.gov
To:CMECFinnd@localhost.localdomain
Bcc:
--Case Participants: Pablo DeCastro (pdecastro@rascia-decastro.com,
ysierra@rascia-decastro.com), Kurt R Earnst (kre@braje-nelson.com), Arlington J Foley
(arlingtonfoley@att.net), Jack Friedlander (jack@jackfriedlander.com,
office@jackfriedlander.com), Bruce R Hegyi - AUSA (bruce.hegyi@usdoj.gov), Clark W
Holesinger (334office@frontier.com, arcclark@frontier.com, clark.334@frontier.com),
Roxanne Mendez Johnson (attorneyrmj@gmail.com), Gojko Kasich (gkasich@crownlaw.com,
gkasich@gmail.com), Scott L King (jwilliams@scottkinggroup.com, sking@scottkinggroup.com),
Visvaldis P Kupsis (vpkupsis@hotmail.com), Catherine A Lake (attyclake@sbcglobal.net),
Dean R Lanter - AUSA (dean.lanter@usdoj.gov, janet.eisenmann@usdoj.gov,
usainn.ecfcivil@usdoj.gov), John Maksimovich (criminallaw@johnmaksimovich.com), John E
Martin - FCD (john_martin@fd.org), Sheldon B Nagelberg (sbnagelberglaw@att.net), David J
Nozick - AUSA (david.nozick@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov,
susan.devries@usdoj.gov, usainn.ecfcivil@usdoj.gov), Mark A Psimos
(psimoslaw@airbaud.net), Robert L Rascia (rrascia@rascia-decastro.com,
ysierra@rascia-decastro.com), Stephen Edward Scheele (pkd@gk4law.com, ses@gk4law.com),
Paul Jeffrey Schlesinger (pjeffslaw@aol.com), Adam Tavitas (adtavitas@aol.com,
b.lynneadams@yahoo.com), John T Theis (theislaw@aol.com), James N Thiros (jim@thiros.com,
lynn@thiros.com), Bryan M Truitt (bryan@tblawyers.com, sherrie@tblawyers.com), David E
Vandercoy (david.vandercoy@valpo.edu), Thomas W Vanes (tom.vanes@sbcglobal.net), R Brian
Woodward (carolb@wbbklaw.com, rbwoodward@wbbklaw.com), Magistrate Judge Andrew P Rodovich
(rodovich_chambers@innd.uscourts.gov), Chief Judge Philip P Simon
(denise_woodside@innd.uscourts.gov, joshua_urquhart@innd.uscourts.gov,
katherine_welsh@innd.uscourts.gov, mark_hancock@innd.uscourts.gov,
noel_collins@innd.uscourts.gov, philip_simon@innd.uscourts.gov)
--Non Case Participants: Matthew D Soliday (office@matthewsolidaylaw.com),
Probation/Pretrial Services (innpml_cmecf@innd.uscourts.gov), U S Marshal
(inn.docket-fw@usdoj.gov, inn.docket-sb@usdoj.gov, usms.27@usdoj.gov)
--No Notice Sent:

Message-Id:2302150@innd.uscourts.gov
Subject:Activity in Case 2:11-cr-00077-PPS-APR United States of America v. Briseno et al
Notice of Hearing/Deadlines
Content-Type: text/html
```

## U.S. District Court Northern District of Indiana [LIVE]

## USDC Northern Indiana

## Notice of Electronic Filing

The following transaction was entered on 7/8/2013 at 6:20 PM EST and filed on 7/8/2013

| **Case Name:** | United States of America v. Briseno et al |
|---|---|
| **Case Number:** | 2:11-cr-00077-PPS-APR |
| **Filer:** | |
| **Document Number:** | 597(No document attached) |

**Docket Text:**

**NOTICE OF HEARING as to Galo Benjamin Feliciano, Guillermo Briseno, Alejandro Balboa Lara, Justin Weaver, Michael Anthony Castillo, Kelvin Jefferson Beltran, David Almaraz, Joseph Rene Torres, Jason Medina, Edward Raye Serna, Alejandro Briseno, Robert Lockhart, Armando Jose Velasquez, Anthony Baldazo, Salvador Chavez, Raymond Campos, Ace Cortez, Julian Guillermo Serna, Julius Solis, Darmaile Cortez Sutton, Eddie Torres, Richard Reyes. A STATUS CONFERENCE is now set for 7/18/2013 02:00 PM in US District**

**Court – Hammond before Chief Judge Philip P Simon. ONLY COUNSEL FOR THOSE DEFENDANTS WHO HAVE NOT PLEADED GUILTY ARE REQUIRED TO ATTEND. The U.S. Marshal is not required to produce any dfts for this hearing. (Note: a Status Conference will be held for dft Juan Briseno this same date at 1:00 p.m. The U.S. Marshal will be required to produce dft Juan Briseno for this hearing before Judge Simon on 7/18/2013 at 1:00 p.m.). (nac)**

**2:11−cr−00077−PPS−APR−1 Notice has been electronically mailed to:**

David E Vandercoy david.vandercoy@valpo.edu

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com, gkasich@gmail.com

Scott L King sking@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, 334office@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje−nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia−decastro.com, ysierra@rascia−decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia–decastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Bruce R Hegyi – AUSA bruce.hegyi@usdoj.gov

**2:11–cr–00077–PPS–APR–1 Notice has been delivered by U.S. Mail or other means to:**

**2:11–cr–00077–PPS–APR–2 Notice has been electronically mailed to:**

David E Vandercoy david.vandercoy@valpo.edu

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com, gkasich@gmail.com

Scott L King sking@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, 334office@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje–nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia−decastro.com, ysierra@rascia−decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia−decastro.com, ysierra@rascia−decastro.com

Dean R Lanter − AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick − AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Bruce R Hegyi − AUSA bruce.hegyi@usdoj.gov

**2:11−cr−00077−PPS−APR−2 Notice has been delivered by U.S. Mail or other means to:**

**2:11−cr−00077−PPS−APR−3 Notice has been electronically mailed to:**

David E Vandercoy david.vandercoy@valpo.edu

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com, gkasich@gmail.com

Scott L King sking@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, 334office@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin − FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje−nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia−decastro.com, ysierra@rascia−decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia−decastro.com, ysierra@rascia−decastro.com

Dean R Lanter − AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick − AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Bruce R Hegyi − AUSA bruce.hegyi@usdoj.gov

**2:11−cr−00077−PPS−APR−3 Notice has been delivered by U.S. Mail or other means to:**

**2:11−cr−00077−PPS−APR−4 Notice has been electronically mailed to:**

David E Vandercoy david.vandercoy@valpo.edu

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com, gkasich@gmail.com

Scott L King sking@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, 334office@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje–nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia–decastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Bruce R Hegyi – AUSA bruce.hegyi@usdoj.gov

**2:11–cr–00077–PPS–APR–4 Notice has been delivered by U.S. Mail or other means to:**

**2:11–cr–00077–PPS–APR–5 Notice has been electronically mailed to:**

David E Vandercoy david.vandercoy@valpo.edu

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com, gkasich@gmail.com

Scott L King sking@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, 334office@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje–nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia–decastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Bruce R Hegyi – AUSA bruce.hegyi@usdoj.gov

**2:11–cr–00077–PPS–APR–5 Notice has been delivered by U.S. Mail or other means to:**

**2:11–cr–00077–PPS–APR–6 Notice has been electronically mailed to:**

David E Vandercoy david.vandercoy@valpo.edu

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com, gkasich@gmail.com

Scott L King sking@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, 334office@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje–nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia–decastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Bruce R Hegyi – AUSA bruce.hegyi@usdoj.gov

**2:11–cr–00077–PPS–APR–6 Notice has been delivered by U.S. Mail or other means to:**

**2:11–cr–00077–PPS–APR–7 Notice has been electronically mailed to:**

David E Vandercoy david.vandercoy@valpo.edu

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com, gkasich@gmail.com

Scott L King sking@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, 334office@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje−nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia−decastro.com, ysierra@rascia−decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia−decastro.com, ysierra@rascia−decastro.com

Dean R Lanter – AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Bruce R Hegyi – AUSA bruce.hegyi@usdoj.gov

**2:11–cr–00077–PPS–APR–7 Notice has been delivered by U.S. Mail or other means to:**

**2:11–cr–00077–PPS–APR–8 Notice has been electronically mailed to:**

David E Vandercoy david.vandercoy@valpo.edu

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com, gkasich@gmail.com

Scott L King sking@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, 334office@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje–nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia–decastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Bruce R Hegyi – AUSA bruce.hegyi@usdoj.gov

**2:11–cr–00077–PPS–APR–8 Notice has been delivered by U.S. Mail or other means to:**

**2:11–cr–00077–PPS–APR–9 Notice has been electronically mailed to:**

David E Vandercoy david.vandercoy@valpo.edu

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com, gkasich@gmail.com

Scott L King sking@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, 334office@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje–nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

702

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia–decastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Bruce R Hegyi – AUSA bruce.hegyi@usdoj.gov

**2:11–cr–00077–PPS–APR–9 Notice has been delivered by U.S. Mail or other means to:**

**2:11–cr–00077–PPS–APR–10 Notice has been electronically mailed to:**

David E Vandercoy david.vandercoy@valpo.edu

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com, gkasich@gmail.com

Scott L King sking@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, 334office@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje−nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia−decastro.com, ysierra@rascia−decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia−decastro.com, ysierra@rascia−decastro.com

Dean R Lanter − AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick − AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Bruce R Hegyi − AUSA bruce.hegyi@usdoj.gov

**2:11−cr−00077−PPS−APR−10 Notice has been delivered by U.S. Mail or other means to:**

**2:11−cr−00077−PPS−APR−11 Notice has been electronically mailed to:**

David E Vandercoy david.vandercoy@valpo.edu

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com, gkasich@gmail.com

Scott L King sking@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, 334office@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje–nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia–decastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov,
janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Bruce R Hegyi – AUSA bruce.hegyi@usdoj.gov

**2:11–cr–00077–PPS–APR–11 Notice has been delivered by U.S. Mail or other means to:**

**2:11–cr–00077–PPS–APR–12 Notice has been electronically mailed to:**

David E Vandercoy david.vandercoy@valpo.edu

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com, gkasich@gmail.com

Scott L King sking@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, 334office@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje–nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia–decastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Bruce R Hegyi – AUSA bruce.hegyi@usdoj.gov

**2:11–cr–00077–PPS–APR–12 Notice has been delivered by U.S. Mail or other means to:**

**2:11–cr–00077–PPS–APR–13 Notice has been electronically mailed to:**

David E Vandercoy david.vandercoy@valpo.edu

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com, gkasich@gmail.com

Scott L King sking@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, 334office@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje–nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia–decastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Bruce R Hegyi – AUSA bruce.hegyi@usdoj.gov

**2:11–cr–00077–PPS–APR–13 Notice has been delivered by U.S. Mail or other means to:**

**2:11–cr–00077–PPS–APR–14 Notice has been electronically mailed to:**

David E Vandercoy david.vandercoy@valpo.edu

Arlington J Foley arlingtonfoley@att.net

707

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com, gkasich@gmail.com

Scott L King sking@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, 334office@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje–nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia–decastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Bruce R Hegyi – AUSA bruce.hegyi@usdoj.gov

**2:11–cr–00077–PPS–APR–14 Notice has been delivered by U.S. Mail or other means to:**

**2:11–cr–00077–PPS–APR–15 Notice has been electronically mailed to:**

David E Vandercoy david.vandercoy@valpo.edu

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com, gkasich@gmail.com

Scott L King sking@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, 334office@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje–nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia–decastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Bruce R Hegyi – AUSA bruce.hegyi@usdoj.gov

**2:11–cr–00077–PPS–APR–15 Notice has been delivered by U.S. Mail or other means to:**

**2:11–cr–00077–PPS–APR–16 Notice has been electronically mailed to:**

David E Vandercoy david.vandercoy@valpo.edu

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com, gkasich@gmail.com

Scott L King sking@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, 334office@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje–nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia−decastro.com, ysierra@rascia−decastro.com

Dean R Lanter − AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick − AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Bruce R Hegyi − AUSA bruce.hegyi@usdoj.gov

**2:11−cr−00077−PPS−APR−16 Notice has been delivered by U.S. Mail or other means to:**

**2:11−cr−00077−PPS−APR−17 Notice has been electronically mailed to:**

David E Vandercoy david.vandercoy@valpo.edu

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com, gkasich@gmail.com

Scott L King sking@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, 334office@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin − FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje−nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia−decastro.com, ysierra@rascia−decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia−decastro.com, ysierra@rascia−decastro.com

Dean R Lanter − AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick − AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov,
janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Bruce R Hegyi − AUSA bruce.hegyi@usdoj.gov

**2:11−cr−00077−PPS−APR−17 Notice has been delivered by U.S. Mail or other means to:**

**2:11−cr−00077−PPS−APR−18 Notice has been electronically mailed to:**

David E Vandercoy david.vandercoy@valpo.edu

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com, gkasich@gmail.com

Scott L King sking@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, 334office@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin − FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje−nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia−decastro.com, ysierra@rascia−decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia−decastro.com, ysierra@rascia−decastro.com

Dean R Lanter − AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick − AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Bruce R Hegyi − AUSA bruce.hegyi@usdoj.gov

**2:11−cr−00077−PPS−APR−18 Notice has been delivered by U.S. Mail or other means to:**

**2:11−cr−00077−PPS−APR−19 Notice has been electronically mailed to:**

David E Vandercoy david.vandercoy@valpo.edu

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com, gkasich@gmail.com

Scott L King sking@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, 334office@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje–nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia–decastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Bruce R Hegyi – AUSA bruce.hegyi@usdoj.gov

**2:11–cr–00077–PPS–APR–19 Notice has been delivered by U.S. Mail or other means to:**

**2:11–cr–00077–PPS–APR–20 Notice has been electronically mailed to:**

David E Vandercoy david.vandercoy@valpo.edu

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com, gkasich@gmail.com

Scott L King sking@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

714

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, 334office@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje–nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia–decastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov,
janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Bruce R Hegyi – AUSA bruce.hegyi@usdoj.gov

**2:11–cr–00077–PPS–APR–20 Notice has been delivered by U.S. Mail or other means to:**

**2:11–cr–00077–PPS–APR–21 Notice has been electronically mailed to:**

David E Vandercoy david.vandercoy@valpo.edu

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com, gkasich@gmail.com

Scott L King sking@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, 334office@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje–nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia–decastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Bruce R Hegyi – AUSA bruce.hegyi@usdoj.gov

**2:11–cr–00077–PPS–APR–21 Notice has been delivered by U.S. Mail or other means to:**

**2:11–cr–00077–PPS–APR–22 Notice has been electronically mailed to:**

David E Vandercoy david.vandercoy@valpo.edu

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com, gkasich@gmail.com

Scott L King sking@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, 334office@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje−nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia−decastro.com, ysierra@rascia−decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia−decastro.com, ysierra@rascia−decastro.com

Dean R Lanter – AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

717

Roxanne Mendez Johnson attorneyrmj@gmail.com

Bruce R Hegyi – AUSA bruce.hegyi@usdoj.gov

**2:11–cr–00077–PPS–APR–22 Notice has been delivered by U.S. Mail or other means to:**

**2:11–cr–00077–PPS–APR–23 Notice has been electronically mailed to:**

David E Vandercoy david.vandercoy@valpo.edu

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com, gkasich@gmail.com

Scott L King sking@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, 334office@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje–nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia−decastro.com, ysierra@rascia−decastro.com

Dean R Lanter − AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick − AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Bruce R Hegyi − AUSA bruce.hegyi@usdoj.gov

**2:11−cr−00077−PPS−APR−23 Notice has been delivered by U.S. Mail or other means to:**

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

UNITED STATES OF AMERICA,           )
                                    )
                    Plaintiff,      )
        vs.                         )
                                    )       Cause Number: 2:11 CR 77
JUAN BRISENO, et al.,               )
                                    )
                    Defendants.     )

**ORDER**

On July 18, 2013, the Court held two status hearings: one with Defendant Juan Briseno and his counsel, and a second status hearing with counsel for all of the remaining defendants. During those hearings, the Court set a number of dates in this matter, and this order reduces those oral rulings to writing and clarifies the applicable dates and deadlines that were ordered at the hearing.

First, though Defendant Juan Briseno previously filed a Motion to Continue Jury Trial [DE 573] that he eventually withdrew [DE 587; DE 588], at the hearing, he indicated to the Court, under oath, that he would like to continue the presently-set October 21, 2013 trial date to allow more time for his counsel to adequately prepare his defense. Accordingly, Briseno is **ORDERED** to file, no later than July 29, 2013, a motion to continue the trial date. At the hearing, the Government indicated that it had no objection to continuing the trial to Spring 2014. Any objections to the motion for continuance must be filed no later than August 8, 2013.

Second, any motions for severance must be filed by August 9, 2013. The Government's responses are due on or before August 30, 2013, and replies are due by September 13, 2013.

Third, for all defendants other than Juan Briseno, motions to suppress evidence must be filed by August 9, 2013. The Government's responses are due on or before August 30, 2013, and replies are due by September 13, 2013. Any motion to suppress by defendant Juan Briseno

must be filed on or before September 27, 2013.  The Government's response is due on or before

October 18, 2013, and Briseno's reply, if any, is due November 1, 2013.

**SO ORDERED**.

ENTERED: July 19, 2013

<div align="right">

s/ Philip P. Simon
PHILIP P. SIMON, CHIEF JUDGE
UNITED STATES DISTRICT COURT

</div>

2

```
MIME-Version:1.0
From:CMECFinnd@innd.uscourts.gov
To:CMECFinnd@localhost.localdomain
Bcc:
--Case Participants: Bryan M Truitt (bryan@tblawyers.com, sherrie@tblawyers.com), David J
Nozick – AUSA (david.nozick@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov,
susan.devries@usdoj.gov, usainn.ecfcivil@usdoj.gov), Kurt R Earnst (kre@braje-nelson.com),
Paul Jeffrey Schlesinger (pjeffslaw@aol.com), Pablo DeCastro
(pdecastro@rascia-decastro.com, ysierra@rascia-decastro.com), Sheldon B Nagelberg
(sbnagelberglaw@att.net), Thomas W Vanes (tom.vanes@sbcglobal.net), John T Theis
(theislaw@aol.com), Catherine A Lake (attyclake@sbcglobal.net), Adam Tavitas
(adtavitas@aol.com, b.lynneadams@yahoo.com), Dean R Lanter – AUSA (dean.lanter@usdoj.gov,
janet.eisenmann@usdoj.gov, usainn.ecfcivil@usdoj.gov), John E Martin – FCD
(john_martin@fd.org), Scott L King (jwilliams@scottkinggroup.com,
sking@scottkinggroup.com), Mark A Psimos (psimoslaw@airbaud.net), James N Thiros
(jim@thiros.com, lynn@thiros.com), Robert L Rascia (rrascia@rascia-decastro.com,
ysierra@rascia-decastro.com), Gojko Kasich (gkasich@crownlaw.com, gkasich@gmail.com),
Arlington J Foley (arlingtonfoley@att.net), Roxanne Mendez Johnson
(attorneyrmj@gmail.com), Visvaldis P Kupsis (vpkupsis@hotmail.com), Stephen Edward Scheele
(pkd@gk4law.com, ses@gk4law.com), Jack Friedlander (jack@jackfriedlander.com,
office@jackfriedlander.com), Bruce R Hegyi – AUSA (bruce.hegyi@usdoj.gov), Clark W
Holesinger (334office@frontier.com, arcclark@frontier.com, clark.334@frontier.com), R
Brian Woodward (carolb@wbbklaw.com, rbwoodward@wbbklaw.com), John Maksimovich
(criminallaw@johnmaksimovich.com), David E Vandercoy (david.vandercoy@valpo.edu),
Magistrate Judge Andrew P Rodovich (rodovich_chambers@innd.uscourts.gov), Chief Judge
Philip P Simon (denise_woodside@innd.uscourts.gov, joshua_urquhart@innd.uscourts.gov,
katherine_welsh@innd.uscourts.gov, mark_hancock@innd.uscourts.gov,
noel_collins@innd.uscourts.gov, philip_simon@innd.uscourts.gov)
--Non Case Participants: Matthew D Soliday (office@matthewsolidaylaw.com),
Probation/Pretrial Services (innpml_cmecf@innd.uscourts.gov), U S Marshal
(inn.docket-fw@usdoj.gov, inn.docket-sb@usdoj.gov, usms.27@usdoj.gov)
--No Notice Sent:

Message-Id:2310818@innd.uscourts.gov
Subject:Activity in Case 2:11-cr-00077-PPS-APR United States of America v. Briseno et al
```
Set/Reset Deadlines/Hearings
Content–Type: text/html

## U.S. District Court Northern District of Indiana [LIVE]

### USDC Northern Indiana

## Notice of Electronic Filing

The following transaction was entered on 7/19/2013 at 11:48 AM EST and filed on 7/19/2013

| | |
|---|---|
| **Case Name:** | United States of America v. Briseno et al |
| **Case Number:** | 2:11–cr–00077–PPS–APR |
| **Filer:** | |
| **Document Number:** | No document attached |

**Docket Text:**
**Set Deadlines as all dfts : any motions for severance due by 8/9/2013; Government
Response due by 8/30/2013; Defendant Reply due by 9/13/2013.(mc)**

**2:11–cr–00077–PPS–APR–1 Notice has been electronically mailed to:**

David E Vandercoy david.vandercoy@valpo.edu

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com, gkasich@gmail.com

Scott L King sking@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, 334office@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje–nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia–decastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

723

Bruce R Hegyi – AUSA bruce.hegyi@usdoj.gov

**2:11–cr–00077–PPS–APR–1 Notice has been delivered by U.S. Mail or other means to:**

**2:11–cr–00077–PPS–APR–2 Notice has been electronically mailed to:**

David E Vandercoy david.vandercoy@valpo.edu

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com, gkasich@gmail.com

Scott L King sking@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, 334office@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje–nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia–decastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Bruce R Hegyi – AUSA bruce.hegyi@usdoj.gov

**2:11–cr–00077–PPS–APR–2 Notice has been delivered by U.S. Mail or other means to:**

**2:11–cr–00077–PPS–APR–3 Notice has been electronically mailed to:**

David E Vandercoy david.vandercoy@valpo.edu

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com, gkasich@gmail.com

Scott L King sking@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, 334office@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje–nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia–decastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Bruce R Hegyi – AUSA bruce.hegyi@usdoj.gov

**2:11–cr–00077–PPS–APR–3 Notice has been delivered by U.S. Mail or other means to:**

**2:11–cr–00077–PPS–APR–4 Notice has been electronically mailed to:**

David E Vandercoy david.vandercoy@valpo.edu

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com, gkasich@gmail.com

Scott L King sking@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, 334office@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje−nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia−decastro.com, ysierra@rascia−decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia−decastro.com, ysierra@rascia−decastro.com

Dean R Lanter – AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Bruce R Hegyi – AUSA bruce.hegyi@usdoj.gov

**2:11−cr−00077−PPS−APR−4 Notice has been delivered by U.S. Mail or other means to:**

**2:11−cr−00077−PPS−APR−5 Notice has been electronically mailed to:**

David E Vandercoy david.vandercoy@valpo.edu

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com, gkasich@gmail.com

Scott L King sking@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, 334office@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje–nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia–decastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Bruce R Hegyi – AUSA bruce.hegyi@usdoj.gov

**2:11–cr–00077–PPS–APR–5 Notice has been delivered by U.S. Mail or other means to:**

**2:11–cr–00077–PPS–APR–6 Notice has been electronically mailed to:**

David E Vandercoy david.vandercoy@valpo.edu

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com, gkasich@gmail.com

Scott L King sking@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, 334office@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje–nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia–decastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Bruce R Hegyi – AUSA bruce.hegyi@usdoj.gov

**2:11–cr–00077–PPS–APR–6 Notice has been delivered by U.S. Mail or other means to:**

**2:11–cr–00077–PPS–APR–7 Notice has been electronically mailed to:**

David E Vandercoy david.vandercoy@valpo.edu

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com, gkasich@gmail.com

Scott L King sking@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, 334office@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin − FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje−nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia−decastro.com, ysierra@rascia−decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia−decastro.com, ysierra@rascia−decastro.com

Dean R Lanter − AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick − AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Bruce R Hegyi − AUSA bruce.hegyi@usdoj.gov

**2:11−cr−00077−PPS−APR−7 Notice has been delivered by U.S. Mail or other means to:**

**2:11−cr−00077−PPS−APR−8 Notice has been electronically mailed to:**

David E Vandercoy david.vandercoy@valpo.edu

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com, gkasich@gmail.com

Scott L King sking@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, 334office@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje–nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia–decastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Bruce R Hegyi – AUSA bruce.hegyi@usdoj.gov

731

**2:11−cr−00077−PPS−APR−8 Notice has been delivered by U.S. Mail or other means to:**

**2:11−cr−00077−PPS−APR−9 Notice has been electronically mailed to:**

David E Vandercoy david.vandercoy@valpo.edu

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com, gkasich@gmail.com

Scott L King sking@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, 334office@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin − FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje−nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia−decastro.com, ysierra@rascia−decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia−decastro.com, ysierra@rascia−decastro.com

Dean R Lanter − AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Bruce R Hegyi – AUSA bruce.hegyi@usdoj.gov

**2:11–cr–00077–PPS–APR–9 Notice has been delivered by U.S. Mail or other means to:**

**2:11–cr–00077–PPS–APR–10 Notice has been electronically mailed to:**

David E Vandercoy david.vandercoy@valpo.edu

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com, gkasich@gmail.com

Scott L King sking@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, 334office@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje–nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

733

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia–decastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Bruce R Hegyi – AUSA bruce.hegyi@usdoj.gov

**2:11–cr–00077–PPS–APR–10 Notice has been delivered by U.S. Mail or other means to:**

**2:11–cr–00077–PPS–APR–11 Notice has been electronically mailed to:**

David E Vandercoy david.vandercoy@valpo.edu

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com, gkasich@gmail.com

Scott L King sking@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, 334office@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje−nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia−decastro.com, ysierra@rascia−decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia−decastro.com, ysierra@rascia−decastro.com

Dean R Lanter − AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick − AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Bruce R Hegyi − AUSA bruce.hegyi@usdoj.gov

**2:11−cr−00077−PPS−APR−11 Notice has been delivered by U.S. Mail or other means to:**

**2:11−cr−00077−PPS−APR−12 Notice has been electronically mailed to:**

David E Vandercoy david.vandercoy@valpo.edu

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com, gkasich@gmail.com

Scott L King sking@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, 334office@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin − FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje−nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia−decastro.com, ysierra@rascia−decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia−decastro.com, ysierra@rascia−decastro.com

Dean R Lanter − AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick − AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Bruce R Hegyi − AUSA bruce.hegyi@usdoj.gov

**2:11−cr−00077−PPS−APR−12 Notice has been delivered by U.S. Mail or other means to:**

**2:11−cr−00077−PPS−APR−13 Notice has been electronically mailed to:**

David E Vandercoy david.vandercoy@valpo.edu

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com, gkasich@gmail.com

Scott L King sking@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, 334office@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje–nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia–decastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Bruce R Hegyi – AUSA bruce.hegyi@usdoj.gov

**2:11–cr–00077–PPS–APR–13 Notice has been delivered by U.S. Mail or other means to:**

**2:11–cr–00077–PPS–APR–14 Notice has been electronically mailed to:**

David E Vandercoy david.vandercoy@valpo.edu

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com, gkasich@gmail.com

Scott L King sking@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, 334office@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje–nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia–decastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Bruce R Hegyi – AUSA bruce.hegyi@usdoj.gov

**2:11–cr–00077–PPS–APR–14 Notice has been delivered by U.S. Mail or other means to:**

**2:11–cr–00077–PPS–APR–15 Notice has been electronically mailed to:**

David E Vandercoy david.vandercoy@valpo.edu

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com, gkasich@gmail.com

Scott L King sking@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, 334office@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje–nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia–decastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Bruce R Hegyi – AUSA bruce.hegyi@usdoj.gov

**2:11–cr–00077–PPS–APR–15 Notice has been delivered by U.S. Mail or other means to:**

**2:11–cr–00077–PPS–APR–16 Notice has been electronically mailed to:**

David E Vandercoy david.vandercoy@valpo.edu

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com, gkasich@gmail.com

Scott L King sking@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, 334office@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje−nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia−decastro.com, ysierra@rascia−decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia−decastro.com, ysierra@rascia−decastro.com

Dean R Lanter – AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Bruce R Hegyi – AUSA bruce.hegyi@usdoj.gov

**2:11–cr–00077–PPS–APR–16 Notice has been delivered by U.S. Mail or other means to:**

**2:11–cr–00077–PPS–APR–17 Notice has been electronically mailed to:**

David E Vandercoy david.vandercoy@valpo.edu

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com, gkasich@gmail.com

Scott L King sking@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, 334office@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje–nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia−decastro.com, ysierra@rascia−decastro.com

Dean R Lanter − AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick − AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Bruce R Hegyi − AUSA bruce.hegyi@usdoj.gov

**2:11−cr−00077−PPS−APR−17 Notice has been delivered by U.S. Mail or other means to:**

**2:11−cr−00077−PPS−APR−18 Notice has been electronically mailed to:**

David E Vandercoy david.vandercoy@valpo.edu

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com, gkasich@gmail.com

Scott L King sking@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, 334office@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin − FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje−nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia−decastro.com, ysierra@rascia−decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia−decastro.com, ysierra@rascia−decastro.com

Dean R Lanter − AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick − AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Bruce R Hegyi − AUSA bruce.hegyi@usdoj.gov

**2:11−cr−00077−PPS−APR−18 Notice has been delivered by U.S. Mail or other means to:**

**2:11−cr−00077−PPS−APR−19 Notice has been electronically mailed to:**

David E Vandercoy david.vandercoy@valpo.edu

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com, gkasich@gmail.com

Scott L King sking@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, 334office@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin − FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje−nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia−decastro.com, ysierra@rascia−decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia−decastro.com, ysierra@rascia−decastro.com

Dean R Lanter − AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick − AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Bruce R Hegyi − AUSA bruce.hegyi@usdoj.gov

**2:11−cr−00077−PPS−APR−19 Notice has been delivered by U.S. Mail or other means to:**

**2:11−cr−00077−PPS−APR−20 Notice has been electronically mailed to:**

David E Vandercoy david.vandercoy@valpo.edu

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com, gkasich@gmail.com

Scott L King sking@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, 334office@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje–nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia–decastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Bruce R Hegyi – AUSA bruce.hegyi@usdoj.gov

**2:11–cr–00077–PPS–APR–20 Notice has been delivered by U.S. Mail or other means to:**

**2:11–cr–00077–PPS–APR–21 Notice has been electronically mailed to:**

David E Vandercoy david.vandercoy@valpo.edu

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com, gkasich@gmail.com

Scott L King sking@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, 334office@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje–nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia–decastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Bruce R Hegyi – AUSA bruce.hegyi@usdoj.gov

**2:11–cr–00077–PPS–APR–21 Notice has been delivered by U.S. Mail or other means to:**

**2:11–cr–00077–PPS–APR–22 Notice has been electronically mailed to:**

David E Vandercoy david.vandercoy@valpo.edu

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com, gkasich@gmail.com

Scott L King sking@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, 334office@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje–nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia–decastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Bruce R Hegyi – AUSA bruce.hegyi@usdoj.gov

**2:11–cr–00077–PPS–APR–22 Notice has been delivered by U.S. Mail or other means to:**

**2:11–cr–00077–PPS–APR–23 Notice has been electronically mailed to:**

David E Vandercoy david.vandercoy@valpo.edu

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com, gkasich@gmail.com

Scott L King sking@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, 334office@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje–nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia–decastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Bruce R Hegyi – AUSA bruce.hegyi@usdoj.gov

748

**2:11−cr−00077−PPS−APR−23 Notice has been delivered by U.S. Mail or other means to:**

```
MIME-Version:1.0
From:CMECFinnd@innd.uscourts.gov
To:CMECFinnd@localhost.localdomain
Bcc:
--Case Participants: Bryan M Truitt (bryan@tblawyers.com, sherrie@tblawyers.com), David J
Nozick - AUSA (david.nozick@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov,
susan.devries@usdoj.gov, usainn.ecfcivil@usdoj.gov), Kurt R Earnst (kre@braje-nelson.com),
Paul Jeffrey Schlesinger (pjeffslaw@aol.com), Pablo DeCastro
(pdecastro@rascia-decastro.com, ysierra@rascia-decastro.com), Sheldon B Nagelberg
(sbnagelberglaw@att.net), Thomas W Vanes (tom.vanes@sbcglobal.net), John T Theis
(theislaw@aol.com), Catherine A Lake (attyclake@sbcglobal.net), Adam Tavitas
(adtavitas@aol.com, b.lynneadams@yahoo.com), Dean R Lanter - AUSA (dean.lanter@usdoj.gov,
janet.eisenmann@usdoj.gov, usainn.ecfcivil@usdoj.gov), John E Martin - FCD
(john_martin@fd.org), Scott L King (jwilliams@scottkinggroup.com,
sking@scottkinggroup.com), Mark A Psimos (psimoslaw@airbaud.net), James N Thiros
(jim@thiros.com, lynn@thiros.com), Robert L Rascia (rrascia@rascia-decastro.com,
ysierra@rascia-decastro.com), Gojko Kasich (gkasich@crownlaw.com, gkasich@gmail.com),
Arlington J Foley (arlingtonfoley@att.net), Roxanne Mendez Johnson
(attorneyrmj@gmail.com), Visvaldis P Kupsis (vpkupsis@hotmail.com), Stephen Edward Scheele
(pkd@gk4law.com, ses@gk4law.com), Jack Friedlander (jack@jackfriedlander.com,
office@jackfriedlander.com), Bruce R Hegyi - AUSA (bruce.hegyi@usdoj.gov), Clark W
Holesinger (334office@frontier.com, arcclark@frontier.com, clark.334@frontier.com), R
Brian Woodward (carolb@wbbklaw.com, rbwoodward@wbbklaw.com), John Maksimovich
(criminallaw@johnmaksimovich.com), David E Vandercoy (david.vandercoy@valpo.edu),
Magistrate Judge Andrew P Rodovich (rodovich_chambers@innd.uscourts.gov), Chief Judge
Philip P Simon (denise_woodside@innd.uscourts.gov, joshua_urquhart@innd.uscourts.gov,
katherine_welsh@innd.uscourts.gov, mark_hancock@innd.uscourts.gov,
noel_collins@innd.uscourts.gov, philip_simon@innd.uscourts.gov)
--Non Case Participants: Matthew D Soliday (office@matthewsolidaylaw.com),
Probation/Pretrial Services (innpml_cmecf@innd.uscourts.gov), U S Marshal
(inn.docket-fw@usdoj.gov, inn.docket-sb@usdoj.gov, usms.27@usdoj.gov)
--No Notice Sent:

Message-Id:2310846@innd.uscourts.gov
Subject:Activity in Case 2:11-cr-00077-PPS-APR United States of America v. Briseno et al
```
Set/Reset Deadlines
Content-Type: text/html

### U.S. District Court Northern District of Indiana [LIVE]

### USDC Northern Indiana

## Notice of Electronic Filing

The following transaction was entered on 7/19/2013 at 12:08 PM EST and filed on 7/19/2013

| | |
|---|---|
| **Case Name:** | United States of America v. Briseno et al |
| **Case Number:** | 2:11-cr-00077-PPS-APR |
| **Filer:** | |
| **Document Number:** | No document attached |

**Docket Text:**
 **Set Deadlines as to Juan Briseno: Any motion to suppress due by 9/27/2013; Government Response Brief due by 10/18/2013; Defendant Reply Brief due by 11/1/2013. (mc)**

**2:11-cr-00077-PPS-APR-1 Notice has been electronically mailed to:**

David E Vandercoy david.vandercoy@valpo.edu

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com, gkasich@gmail.com

Scott L King sking@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, 334office@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje–nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia–decastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Bruce R Hegyi – AUSA bruce.hegyi@usdoj.gov

**2:11–cr–00077–PPS–APR–1 Notice has been delivered by U.S. Mail or other means to:**

```
MIME-Version:1.0
From:CMECFinnd@innd.uscourts.gov
To:CMECFinnd@localhost.localdomain
Bcc:
--Case Participants: Pablo DeCastro (pdecastro@rascia-decastro.com,
ysierra@rascia-decastro.com), Kurt R Earnst (kre@braje-nelson.com), Arlington J Foley
(arlingtonfoley@att.net), Jack Friedlander (jack@jackfriedlander.com,
office@jackfriedlander.com), Bruce R Hegyi - AUSA (bruce.hegyi@usdoj.gov), Clark W
Holesinger (334office@frontier.com, arcclark@frontier.com, clark.334@frontier.com),
Roxanne Mendez Johnson (attorneyrmj@gmail.com), Gojko Kasich (gkasich@crownlaw.com,
gkasich@gmail.com), Scott L King (jwilliams@scottkinggroup.com, sking@scottkinggroup.com),
Visvaldis P Kupsis (vpkupsis@hotmail.com), Catherine A Lake (attyclake@sbcglobal.net),
Dean R Lanter - AUSA (dean.lanter@usdoj.gov, janet.eisenmann@usdoj.gov,
usainn.ecfcivil@usdoj.gov), John Maksimovich (criminallaw@johnmaksimovich.com), John E
Martin - FCD (john_martin@fd.org), Sheldon B Nagelberg (sbnagelberglaw@att.net), David J
Nozick - AUSA (david.nozick@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov,
susan.devries@usdoj.gov, usainn.ecfcivil@usdoj.gov), Mark A Psimos
(psimoslaw@airbaud.net), Robert L Rascia (rrascia@rascia-decastro.com,
ysierra@rascia-decastro.com), Stephen Edward Scheele (pkd@gk4law.com, ses@gk4law.com),
Paul Jeffrey Schlesinger (pjeffslaw@aol.com), Adam Tavitas (adtavitas@aol.com,
b.lynneadams@yahoo.com), John T Theis (theislaw@aol.com), James N Thiros (jim@thiros.com,
lynn@thiros.com), Bryan M Truitt (bryan@tblawyers.com, sherrie@tblawyers.com), David E
Vandercoy (david.vandercoy@valpo.edu), Thomas W Vanes (tom.vanes@sbcglobal.net), R Brian
Woodward (carolb@wbbklaw.com, rbwoodward@wbbklaw.com), Magistrate Judge Andrew P Rodovich
(rodovich_chambers@innd.uscourts.gov), Chief Judge Philip P Simon
(denise_woodside@innd.uscourts.gov, joshua_urquhart@innd.uscourts.gov,
katherine_welsh@innd.uscourts.gov, mark_hancock@innd.uscourts.gov,
noel_collins@innd.uscourts.gov, philip_simon@innd.uscourts.gov)
--Non Case Participants: Matthew D Soliday (office@matthewsolidaylaw.com),
Probation/Pretrial Services (innpml_cmecf@innd.uscourts.gov), U S Marshal
(inn.docket-fw@usdoj.gov, inn.docket-sb@usdoj.gov, usms.27@usdoj.gov)
--No Notice Sent:

Message-Id:2312204@innd.uscourts.gov
Subject:Activity in Case 2:11-cr-00077-PPS-APR United States of America v. Briseno et al
Status Conference
Content-Type: text/html
```

### U.S. District Court Northern District of Indiana [LIVE]

### USDC Northern Indiana

## Notice of Electronic Filing

The following transaction was entered on 7/22/2013 at 6:11 PM EST and filed on 7/18/2013

| | |
|---|---|
| **Case Name:** | United States of America v. Briseno et al |
| **Case Number:** | 2:11-cr-00077-PPS-APR |
| **Filer:** | |
| **Document Number:** | 601(No document attached) |

**Docket Text:**

**STATUS CONFERENCE held before Chief Judge Philip P. Simon as to: Raymond Campos, Richard Reyes, Ace Cortez, Salvador Chavez, Michael Castillo, Julian Guillermo Serna, Jason Medina, Edward Raye Serna, Julius Solis and Armando Jose Vasquez. Attorneys present: Catherine Lake, Jack Friedlander, John Theis, Gojko Kasich, Scott King (appearing for his clients as well as on behalf of James Thiros), Bryan Truitt and Sheldon Nagelberg. Govt present by AUSAs David Nozick and Bruce R. Hegyi. (Note: although attys Arlington**

753

**Foley and John Maksimovich appear for the hearing specific to their client (Juan Briseno), held this same date, they also are in attendance at this hearing. Court sets deadlines for the case (see order entered 7/19/2013). Court hears comments from attorneys regarding the status of the case, potential for one or two trials, suppression motions and Jencks matters. Information provided to the Court from AUSA Bruce Hegyi as to the particulars in the selection of a jury panel in these types of cases based on his experience. (Court Reporter Sharon Boleck–Mroz.) (nac)**

**2:11–cr–00077–PPS–APR–1 Notice has been electronically mailed to:**

David E Vandercoy david.vandercoy@valpo.edu

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com, gkasich@gmail.com

Scott L King sking@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, 334office@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje–nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia−decastro.com, ysierra@rascia−decastro.com

Dean R Lanter − AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick − AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Bruce R Hegyi − AUSA bruce.hegyi@usdoj.gov

**2:11−cr−00077−PPS−APR−1 Notice has been delivered by U.S. Mail or other means to:**

**2:11−cr−00077−PPS−APR−2 Notice has been electronically mailed to:**

David E Vandercoy david.vandercoy@valpo.edu

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com, gkasich@gmail.com

Scott L King sking@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, 334office@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin − FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje−nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia−decastro.com, ysierra@rascia−decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia−decastro.com, ysierra@rascia−decastro.com

Dean R Lanter − AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick − AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov,
janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Bruce R Hegyi − AUSA bruce.hegyi@usdoj.gov

**2:11−cr−00077−PPS−APR−2 Notice has been delivered by U.S. Mail or other means to:**

**2:11−cr−00077−PPS−APR−3 Notice has been electronically mailed to:**

David E Vandercoy david.vandercoy@valpo.edu

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com, gkasich@gmail.com

Scott L King sking@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, 334office@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin − FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje−nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia−decastro.com, ysierra@rascia−decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia−decastro.com, ysierra@rascia−decastro.com

Dean R Lanter − AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick − AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Bruce R Hegyi − AUSA bruce.hegyi@usdoj.gov

**2:11−cr−00077−PPS−APR−3 Notice has been delivered by U.S. Mail or other means to:**

**2:11−cr−00077−PPS−APR−4 Notice has been electronically mailed to:**

David E Vandercoy david.vandercoy@valpo.edu

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com, gkasich@gmail.com

Scott L King sking@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, 334office@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje–nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia–decastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Bruce R Hegyi – AUSA bruce.hegyi@usdoj.gov

**2:11–cr–00077–PPS–APR–4 Notice has been delivered by U.S. Mail or other means to:**

**2:11–cr–00077–PPS–APR–5 Notice has been electronically mailed to:**

David E Vandercoy david.vandercoy@valpo.edu

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com, gkasich@gmail.com

Scott L King sking@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, 334office@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje–nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia–decastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Bruce R Hegyi – AUSA bruce.hegyi@usdoj.gov

**2:11–cr–00077–PPS–APR–5 Notice has been delivered by U.S. Mail or other means to:**

**2:11–cr–00077–PPS–APR–6 Notice has been electronically mailed to:**

David E Vandercoy david.vandercoy@valpo.edu

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com, gkasich@gmail.com

Scott L King sking@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, 334office@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje–nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia–decastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Bruce R Hegyi – AUSA bruce.hegyi@usdoj.gov

**2:11–cr–00077–PPS–APR–6 Notice has been delivered by U.S. Mail or other means to:**

**2:11–cr–00077–PPS–APR–7 Notice has been electronically mailed to:**

David E Vandercoy david.vandercoy@valpo.edu

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com, gkasich@gmail.com

Scott L King sking@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, 334office@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje–nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia–decastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Bruce R Hegyi – AUSA bruce.hegyi@usdoj.gov

**2:11–cr–00077–PPS–APR–7 Notice has been delivered by U.S. Mail or other means to:**

**2:11–cr–00077–PPS–APR–8 Notice has been electronically mailed to:**

David E Vandercoy david.vandercoy@valpo.edu

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com, gkasich@gmail.com

Scott L King sking@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, 334office@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje–nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia−decastro.com, ysierra@rascia−decastro.com

Dean R Lanter − AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick − AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Bruce R Hegyi − AUSA bruce.hegyi@usdoj.gov

**2:11−cr−00077−PPS−APR−8 Notice has been delivered by U.S. Mail or other means to:**

**2:11−cr−00077−PPS−APR−9 Notice has been electronically mailed to:**

David E Vandercoy david.vandercoy@valpo.edu

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com, gkasich@gmail.com

Scott L King sking@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, 334office@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin − FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje−nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia−decastro.com, ysierra@rascia−decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia−decastro.com, ysierra@rascia−decastro.com

Dean R Lanter − AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick − AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Bruce R Hegyi − AUSA bruce.hegyi@usdoj.gov

**2:11−cr−00077−PPS−APR−9 Notice has been delivered by U.S. Mail or other means to:**

**2:11−cr−00077−PPS−APR−10 Notice has been electronically mailed to:**

David E Vandercoy david.vandercoy@valpo.edu

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com, gkasich@gmail.com

Scott L King sking@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, 334office@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin − FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje−nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia−decastro.com, ysierra@rascia−decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia−decastro.com, ysierra@rascia−decastro.com

Dean R Lanter − AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick − AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Bruce R Hegyi − AUSA bruce.hegyi@usdoj.gov

**2:11−cr−00077−PPS−APR−10 Notice has been delivered by U.S. Mail or other means to:**

**2:11−cr−00077−PPS−APR−11 Notice has been electronically mailed to:**

David E Vandercoy david.vandercoy@valpo.edu

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com, gkasich@gmail.com

Scott L King sking@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, 334office@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje–nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia–decastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Bruce R Hegyi – AUSA bruce.hegyi@usdoj.gov

**2:11–cr–00077–PPS–APR–11 Notice has been delivered by U.S. Mail or other means to:**

**2:11–cr–00077–PPS–APR–12 Notice has been electronically mailed to:**

David E Vandercoy david.vandercoy@valpo.edu

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com, gkasich@gmail.com

Scott L King sking@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, 334office@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje–nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia–decastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Bruce R Hegyi – AUSA bruce.hegyi@usdoj.gov

**2:11–cr–00077–PPS–APR–12 Notice has been delivered by U.S. Mail or other means to:**

**2:11–cr–00077–PPS–APR–13 Notice has been electronically mailed to:**

David E Vandercoy david.vandercoy@valpo.edu

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com, gkasich@gmail.com

Scott L King sking@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, 334office@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje–nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia–decastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Bruce R Hegyi – AUSA bruce.hegyi@usdoj.gov

**2:11–cr–00077–PPS–APR–13 Notice has been delivered by U.S. Mail or other means to:**

**2:11–cr–00077–PPS–APR–14 Notice has been electronically mailed to:**

David E Vandercoy david.vandercoy@valpo.edu

768

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com, gkasich@gmail.com

Scott L King sking@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, 334office@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje–nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia–decastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Bruce R Hegyi – AUSA bruce.hegyi@usdoj.gov

**2:11−cr−00077−PPS−APR−14 Notice has been delivered by U.S. Mail or other means to:**

**2:11−cr−00077−PPS−APR−15 Notice has been electronically mailed to:**

David E Vandercoy david.vandercoy@valpo.edu

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com, gkasich@gmail.com

Scott L King sking@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, 334office@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin − FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje−nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia−decastro.com, ysierra@rascia−decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia−decastro.com, ysierra@rascia−decastro.com

Dean R Lanter − AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Bruce R Hegyi – AUSA bruce.hegyi@usdoj.gov

**2:11−cr−00077−PPS−APR−15 Notice has been delivered by U.S. Mail or other means to:**

**2:11−cr−00077−PPS−APR−16 Notice has been electronically mailed to:**

David E Vandercoy david.vandercoy@valpo.edu

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com, gkasich@gmail.com

Scott L King sking@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, 334office@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje−nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

771

Robert L Rascia rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia–decastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Bruce R Hegyi – AUSA bruce.hegyi@usdoj.gov

**2:11–cr–00077–PPS–APR–16 Notice has been delivered by U.S. Mail or other means to:**

**2:11–cr–00077–PPS–APR–17 Notice has been electronically mailed to:**

David E Vandercoy david.vandercoy@valpo.edu

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com, gkasich@gmail.com

Scott L King sking@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, 334office@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje−nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia−decastro.com, ysierra@rascia−decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia−decastro.com, ysierra@rascia−decastro.com

Dean R Lanter − AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick − AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Bruce R Hegyi − AUSA bruce.hegyi@usdoj.gov

**2:11−cr−00077−PPS−APR−17 Notice has been delivered by U.S. Mail or other means to:**

**2:11−cr−00077−PPS−APR−18 Notice has been electronically mailed to:**

David E Vandercoy david.vandercoy@valpo.edu

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com, gkasich@gmail.com

Scott L King sking@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, 334office@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje–nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia–decastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Bruce R Hegyi – AUSA bruce.hegyi@usdoj.gov

**2:11–cr–00077–PPS–APR–18 Notice has been delivered by U.S. Mail or other means to:**

**2:11–cr–00077–PPS–APR–19 Notice has been electronically mailed to:**

David E Vandercoy david.vandercoy@valpo.edu

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com, gkasich@gmail.com

Scott L King sking@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, 334office@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje–nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia–decastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Bruce R Hegyi – AUSA bruce.hegyi@usdoj.gov

**2:11–cr–00077–PPS–APR–19 Notice has been delivered by U.S. Mail or other means to:**

**2:11–cr–00077–PPS–APR–20 Notice has been electronically mailed to:**

David E Vandercoy david.vandercoy@valpo.edu

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com, gkasich@gmail.com

Scott L King sking@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

775

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, 334office@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje–nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia–decastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Bruce R Hegyi – AUSA bruce.hegyi@usdoj.gov

**2:11–cr–00077–PPS–APR–20 Notice has been delivered by U.S. Mail or other means to:**

**2:11–cr–00077–PPS–APR–21 Notice has been electronically mailed to:**

David E Vandercoy david.vandercoy@valpo.edu

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com, gkasich@gmail.com

Scott L King sking@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, 334office@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje–nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia–decastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Bruce R Hegyi – AUSA bruce.hegyi@usdoj.gov

**2:11–cr–00077–PPS–APR–21 Notice has been delivered by U.S. Mail or other means to:**

**2:11−cr−00077−PPS−APR−22 Notice has been electronically mailed to:**

David E Vandercoy david.vandercoy@valpo.edu

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com, gkasich@gmail.com

Scott L King sking@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, 334office@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin − FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje−nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia−decastro.com, ysierra@rascia−decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia−decastro.com, ysierra@rascia−decastro.com

Dean R Lanter − AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick − AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Bruce R Hegyi – AUSA bruce.hegyi@usdoj.gov

**2:11−cr−00077−PPS−APR−22 Notice has been delivered by U.S. Mail or other means to:**

**2:11−cr−00077−PPS−APR−23 Notice has been electronically mailed to:**

David E Vandercoy david.vandercoy@valpo.edu

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com, gkasich@gmail.com

Scott L King sking@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, 334office@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje−nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia−decastro.com, ysierra@rascia−decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia−decastro.com, ysierra@rascia−decastro.com

Dean R Lanter − AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick − AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Bruce R Hegyi − AUSA bruce.hegyi@usdoj.gov

**2:11−cr−00077−PPS−APR−23 Notice has been delivered by U.S. Mail or other means to:**

```
MIME-Version:1.0
From:CMECFinnd@innd.uscourts.gov
To:CMECFinnd@localhost.localdomain
Bcc:
--Case Participants: Pablo DeCastro (pdecastro@rascia-decastro.com,
ysierra@rascia-decastro.com), Kurt R Earnst (kre@braje-nelson.com), Arlington J Foley
(arlingtonfoley@att.net), Jack Friedlander (jack@jackfriedlander.com,
office@jackfriedlander.com), Bruce R Hegyi - AUSA (bruce.hegyi@usdoj.gov), Clark W
Holesinger (334office@frontier.com, arcclark@frontier.com, clark.334@frontier.com),
Roxanne Mendez Johnson (attorneyrmj@gmail.com), Gojko Kasich (gkasich@crownlaw.com,
gkasich@gmail.com), Scott L King (jwilliams@scottkinggroup.com, sking@scottkinggroup.com),
Visvaldis P Kupsis (vpkupsis@hotmail.com), Catherine A Lake (attyclake@sbcglobal.net),
Dean R Lanter - AUSA (dean.lanter@usdoj.gov, janet.eisenmann@usdoj.gov,
usainn.ecfcivil@usdoj.gov), John Maksimovich (criminallaw@johnmaksimovich.com), John E
Martin - FCD (john_martin@fd.org), Sheldon B Nagelberg (sbnagelberglaw@att.net), David J
Nozick - AUSA (david.nozick@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov,
susan.devries@usdoj.gov, usainn.ecfcivil@usdoj.gov), Mark A Psimos
(psimoslaw@airbaud.net), Robert L Rascia (rrascia@rascia-decastro.com,
ysierra@rascia-decastro.com), Stephen Edward Scheele (pkd@gk4law.com, ses@gk4law.com),
Paul Jeffrey Schlesinger (pjeffslaw@aol.com), Adam Tavitas (adtavitas@aol.com,
b.lynneadams@yahoo.com), John T Theis (theislaw@aol.com), James N Thiros (jim@thiros.com,
lynn@thiros.com), Bryan M Truitt (bryan@tblawyers.com, sherrie@tblawyers.com), David E
Vandercoy (david.vandercoy@valpo.edu), Thomas W Vanes (tom.vanes@sbcglobal.net), R Brian
Woodward (carolb@wbbklaw.com, rbwoodward@wbbklaw.com), Magistrate Judge Andrew P Rodovich
(rodovich_chambers@innd.uscourts.gov), Chief Judge Philip P Simon
(denise_woodside@innd.uscourts.gov, joshua_urquhart@innd.uscourts.gov,
katherine_welsh@innd.uscourts.gov, mark_hancock@innd.uscourts.gov,
noel_collins@innd.uscourts.gov, philip_simon@innd.uscourts.gov)
--Non Case Participants: Matthew D Soliday (office@matthewsolidaylaw.com),
Probation/Pretrial Services (innpml_cmecf@innd.uscourts.gov), U S Marshal
(inn.docket-fw@usdoj.gov, inn.docket-sb@usdoj.gov, usms.27@usdoj.gov)
--No Notice Sent:

Message-Id:2312209@innd.uscourts.gov
Subject:Activity in Case 2:11-cr-00077-PPS-APR United States of America v. Briseno et al
Status Conference
Content-Type: text/html
```

### U.S. District Court Northern District of Indiana [LIVE]

### USDC Northern Indiana

## Notice of Electronic Filing

The following transaction was entered on 7/22/2013 at 6:40 PM EST and filed on 7/18/2013

| | |
|---|---|
| **Case Name:** | United States of America v. Briseno et al |
| **Case Number:** | 2:11-cr-00077-PPS-APR |
| **Filer:** | |
| **Document Number:** | 602(No document attached) |

**Docket Text:**
 **STATUS CONFERENCE as to Juan Briseno held on 7/18/2013 before Chief Judge Philip P Simon. Govt appeared by attys Bruce R. Hegyi and David J. Nozick. Dft appeared by attys Arlington Foley and John Maksimovich. Brief discussions on the following: possibility of 4th Superseding Indictment, jury trial scheduling, the need for additional time for the trial of dft Juan Briseno. Dft Juan Briseno is placed under oath to answer Court inquiry regarding a continuance of the trial setting. The dft advises the Court that he now agrees to a**

**continuance of his trial. The Court suggests a trial date in April 2014 would be reasonable. Counsel have no objections to a trial date in April 2014. Court sets deadlines in case (see Court's order of 7/19/2013). Currently, 11 dfts remain in case for trial, with dft Juan Briseno being the only dft facing capital issues. Defendant REMANDED to custody of US Marshal.(Court Reporter Sharon Boleck–Mroz.) (nac)**

**2:11–cr–00077–PPS–APR–1 Notice has been electronically mailed to:**

David E Vandercoy david.vandercoy@valpo.edu

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com, gkasich@gmail.com

Scott L King sking@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, 334office@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje–nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia−decastro.com, ysierra@rascia−decastro.com

Dean R Lanter − AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick − AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Bruce R Hegyi − AUSA bruce.hegyi@usdoj.gov

**2:11−cr−00077−PPS−APR−1 Notice has been delivered by U.S. Mail or other means to:**

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | ) |
| | ) |
| **VS.** | ) **CASE NO: 2:11 CR 77** |
| | ) |
| **JUAN BRISENO** | ) |

### DEFENDANT, JUAN BRISENO'S, MOTION TO CONTINUE JURY TRIAL

Comes now the Defendant, Juan Briseno, by and through counsel, and moves to continue this matter for trial by jury and in support says as follows:

1.  That this matter is presently set for trial by jury on the 21st day of October, 2013.

2.  That the Indictment herein alleges that the Defendant, Juan Briseno, committed at least six (6) murders; three (3) attempted murders; actions involving violations of federal drug, conspiracy and racketeering laws.

3.  That the government has indicated that it intends to seek the death penalty against the Defendant, Juan Briseno.

4.  That the government has projected that jury selection could last a period of four (4) weeks and that the trial could last another four (4) to eight (8) weeks.

5.  That the Defendant, Juan Briseno, expects that there will be an enormous amount of discovery and preparation that will be required to adequately try this case to a jury.

6.  That counsel for the Defendant, Juan Briseno, also expect that they will be utilizing the services of several expert witnesses which will also require substantial time to adequately prepare.

7.  That due to the above-stated facts as well as other complexities associated with the preparation and defense of a multiple murder/death penalty case, the Defendant and his

counsel believe that a continuance of the jury trial setting to a date into the Spring of 2014 is reasonable and necessary.

8. The Assistant United States Attorneys assigned to this case are in agreement with and have no objections to this motion.

9. That the Defendant, Juan Briseno, personally agrees with this motion and has so stated under oath, in open court and on the record.

10. The delay occasioned by the granting of this motion for continuance would constitute and be excludable time as defined by 18 U.S.C. § 3161 (h)(8)(A) and B(i) and (iv).

11. The delay occasioned by the granting of the motion to continuance would also be excludable for the reason that the ends of justice served by the granting of the continuance outweigh the interest of the public and the Defendant in a speedy trial.

**WHEREFORE:**      The Defendant, Juan Briseno, hereby moves the Court to continue the jury trial herein to a date into the Spring of 2014.


RESPECTFULLY SUBMITTED:


s/Arlington J. Foley                          s/John Maksimovich
Arlington J. Foley, Atty. #6905-45           John Maksimovich, Atty. #9950-45
Attorney for Defendant, Juan Briseno         Attorney for Defendant, Juan Briseno
1942 North Main Street                       1946 North Main Street
Crown Point, IN  46307                       Crown Point, IN 46307
Tel: (219) 661-1200                          Tel: (219) 663-1900


**CERTIFICATE OF SERVICE**

I certify that on the 24th day of July, 2013 service of a true and complete copy of the above and foregoing pleading or paper was made upon each party or attorney of record herein by the electronic case filing system (ECF).

By: _____ s/Arlington J. Foley_____
Arlington J. Foley, Attorney at Law

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

UNITED STATES OF AMERICA,

               Plaintiff

vs

JUAN BRISENO,

               Defendant                         CAUSE NO:   2:11-CR-77

## JUAN BRISENO'S MOTION FOR SEVERANCE FROM NON-CAPITAL CO-DEFENDANTS

**I.      INTRODUCTION**

Pursuant to Federal Rules of Criminal Procedure 8(b) and 14, and the Fifth, Sixth and Eighth Amendments to the United States Constitution,  Defendant JUAN BRISENO ("Mr. Briseno") moves to sever his trial from that of his non-capital co-defendants.  Severance is necessary in this case because: (A) the rules of severance and the special considerations in capital cases militate in favor of severance in this case; (B) prejudicial association and likely confusion of evidence will result from the complexity of the case; (C) Mr. Briseno and several co-defendants have antagonistic and mutually exclusive defenses (D) evidence adduced during a multi-defendant, complex conspiracy case will prejudice Mr. Briseno during the guilt phase and the penalty phase of his trial; (E) joint trial with his co-defendants will prejudice Mr. Briseno at the guilt phase and penalty phase because he will be a "target defendant" and will suffer from the "reverse halo effect"; (F) joinder will prejudice Mr. Briseno during the penalty phase because trial with his co-defendants will dilute his mitigation evidence; (G)  prejudice will result from

-1-

jury selection; the introduction of co-defendant statements  will violate Mr. Briseno's Sixth Amendment right of confrontation; (I) jury instructions will not cure the prejudice resulting from joinder, and (J) severance in this case serves the public interest in judicial economy.

## II.     FACTS

By way of a 72 page, 41-count third superceding indictment filed on November 7, 2012, eleven defendants stand charged in Count One with participation in a RICO conspiracy consisting of at least 83 overt racketeering acts spanning a period of at least ten years and involving other unindicted coconspirators. Mr. Briseno is named in twenty-five of the eighty three overt acts.  Likewise, eleven defendants stand charged in a Conspiracy to Possess with Intent to Distribute 100 kilograms or more of marijuana and at least 5 kilograms of cocaine over a period of time spanning at least ten years and involving other unindicted co-conspirators (Count Two).   The indictment charges six defendants with Murder in Aid of Racketeering Activity. Mr. Briseno is charged in six counts with Murder in Aid of Racketeering Activity and five of Mr. Briseno's co-defendants are also charged with Murder in Aid of Racketeering Activity.  The indictment further charges six defendants with Attempted Murder in Aid of Racketeering Activity.  Mr. Briseno is charged in four counts with Attempted Murder in Aid of Racketeering Activity and five of Mr. Briseno's co-defendants are also charged in separate counts with Attempted Murder in Aid of Racketeering Activity. One defendant is charged with Possession with Intent to Distribute Marijuana.   In all, Mr. Briseno is charged in twenty two counts of the government's 41 count third superceding indictment. The death penalty was authorized for Mr. Briseno on March 6, 2013 [doc. 503].

Mr. Briseno is charged with killing Luis Ortiz, Michael Sessum, Miguel Mejias, Harris Brown, Miguel Colon and Latroy Howard.  He also faces RICO conspiracy, narcotics distribution conspiracy, murder resulting from the use of firearms and attempted murder related charges.

Several non-capital defendants stand charged with acts with which Mr. Briseno had no involvement.  For instance, Ace Cortez is charged with killing Anuar David Paez and with a related murder resulting from the use of firearms charge. Jason Medina is charged with killing Guadalupe Trevino and with a related murder resulting from the use of firearms charge.  Richard Reyes is charged with killing Rene Alonzo and with a related murder resulting from the use of firearms charge. Edward Raye Serna is charged with killing Mario Soriano and with a related murder resulting from the use of firearms charge. These killings are among the more serious acts committed by Mr. Briseno's non-capital co-defendants with which Mr. Briseno had no involvement. Also, Julius Solis is charged with Attempted Murder in Aid of Racketeering.  So are Jason Medina, Edward Raye Serna, and Armando Jose Velasquez. The government's third superceding indictment is replete with other examples of criminal acts committed by Mr. Briseno's non-capital co-defendants with which Mr. Briseno had no involvement.  As referenced above, the government enumerates 83 overt racketeering acts and names Mr. Briseno in only twenty five.

Significantly, to date, the prosecution has provided no co-defendant statements that potentially inculpate Mr. Briseno. Given the size of the case, the number of defendants, the incomplete state of discovery (Jencks Act material has yet to be provided) and the prosecution's

-3-

unwillingness to date to provide timely witness information in this case, defense counsel expects

that it will encounter several co-defendant statements just before and during trial.

## III.   ARGUMENT

Mr. Briseno moves this court for severance of his trial from his non-capital

co-defendants.   Severance is warranted and necessary in this case for several reasons stated

herein.

Severance is critical in this case. The jury's task of individualizing penalty is always

difficult in multi-defendant cases.  In this case it will be particularly troublesome.  The vast

majority of the defendants are Hispanic-Americans. Thus, there will be the problem of shared

minority ethnic status, the similar ages of the defendants, the gang associations, the number and

complicated nature of the charges, the fact that there are RICO, drug and firearms conspiracy

charges with overlapping overt acts, the audio and video-taped evidence on various drug cases

and associated violent crimes, the likely length of the trial, and the number of co-defendants.

This will make the jury's task very taxing, and asks jurors to demonstrate qualities and skills it is

unreasonable to expect them to possess.

For these reasons, and others discussed below, severance of Mr. Briseno from his non-

capital co-defendants is necessary to ensure a fair and efficient trial.

> ### A.   THE RULES OF SEVERANCE AND THE SPECIAL CONSIDERATIONS IN CAPITAL CASES MILITATE IN FAVOR OF SEVERANCE IN THIS CASE.

The rules governing severance are well established.  Although federal courts prefer joint

trials of defendants who are indicted together, severance is necessary when a serious risk exists

that joinder will compromise a specific trial right, or will affect the jury's ability to make a

-4-

reliable judgment about guilt or innocence. *Zafiro v. United States*, 506 U.S. 534, 539 (1993).

While joinder  promotes "economy, efficiency  and... avoid[s] multiplicity of trials," (*Id*.), courts

act impermissibly when they "secure greater speed, economy and convenience...at the price of

fundamental principles of constitutional liberty." *Bruton v. United States*, 391 U.S. 123, 134-135

(1968).

"Special constitutional considerations present in capital cases, however, may require

severance in situations that would not ordinarily do so in non-capital criminal cases." *United*

*States Catalan-Roman,* 376 F.Supp.2d 96, 100 (2005).  "Multi-defendant capital cases indeed

give rise to a range of unfamiliar legal issues some of which  *favor severance even during the*

*guilt phase*. These considerations that favor severance may become more acute in the sentencing

phase in light of the constitutionally mandated fact-finding procedures necessary to impose the

death penalty with a higher degree of reliability." *Id*. (emphasis added).  See also *United States v.*

*Green* 324 F.Supp.2d 311 (D.Mass. 2004)("the standards for severance are necessarily leavened

by the fact this is a death penalty case. The threshold for determining what constitutes prejudice

and when the jury's ability to render a reliable verdict is compromised is necessarily lower than in

the ordinary case);*United States v. Perez*, 299 F.Supp.2d 38, (D.Conn. 2004) (granting severance

based on evidentiary concerns "given the heightened need for reliability in a death penalty trial").

Generally, where "many defendants are tried together in a complex case and they have markedly

different degrees of culpability," grounds for severance exists because of the potential for

prejudice to co-defendants. *Zafiro*, 506 U.S. at 539.  Likewise, the risk of prejudice is substantial

where the prosecution introduces evidence that is probative of defendant's guilt but is admissible

only against a co-defendant.  *Id*. citing *Bruton*, 391 U.S. 123.  Moreover, "[t]he risk of prejudice

will vary with the facts of each case, and the district courts may find prejudice in situations not discussed here." *Zafiro*, 506 U.S. at 539.

The granting of a severance is within the sound discretion of trial court. *United States v. Odom*, 888 F. 2d 1014, 1018 (4th Cir. 1989) (severance proper because "[t]he taking of an adversarial stance [against a defendant] on the part of a co-defendant's counsel may generate trial conditions so prejudicial to the defendant under multiple attack as to deny him a fair trial")(internal citation omitted). While the decision to deny severance is likewise within the court's discretion, *failure* to sever when prejudice results is reversible error. *See, e.g.*, *United States v. Tootick,* 952 F.2d 1078, 1081 (9th Cir. 1991)(failure to sever co-defendants with mutually exclusive defenses was abuse of discretion); *United States v. Breinig*, 70 F.3d 850 (6th Cir. 1995) (in trial of two married defendants for tax evasion, failure to sever was error because wife's properly admitted evidence that she was controlled and manipulated by her cheating, domineering husband, improperly put evidence of husband's bad character before the jury); *United States v. Peveto*, 881 F.2d 844, 856-858 (10th Cir. 1989) (Failure to sever was error where the jury's acceptance of a co defendant's defense "would tend to preclude the acquittal of [defendant].")(internal citation omitted); *United States. v. Johnson*, 478 F.2d 1129 (5th Cir. 1973)(Failure to sever was abuse of discretion in light of trial court's "continuing duty at all stages of the trial to grant a severance if prejudice does appear.")(*citing, Schaffer v. United States*, 362 U.S. 511, 516); *United States v. Donaway*, 447 F.2d 940 (abuse of discretion for failure to sever peripheral defendant).

In addition to issues unique to capital trials, large and intricate conspiracy cases complicate the question of severance further: where the prosecution lumps multiple defendants

-6-

together in a vast conspiracy case, the court should scrutinize the potential for prejudicial joinder

with acuity.  In fact,  The Ninth Circuit Court of Appeals disapproves of "mega-trials" of several

defendants on multiple conspiracy charges and suggested that districts courts require prosecutors

to justify such trials:

> "The district court must also evaluate the burdens of a lengthy trial on the defendants' due process rights... . In *Casamento*, an appeal from a drug conspiracy trial that exceeded even the scope of this one, the Second Circuit provided some useful guideposts for the district court's exercise of discretion in similar cases. 887 F.2d at 1151-52. The court recommended that the district court elicit the prosecution's good-faith estimate of the time needed to present its case... the district court may independently assess the estimate in view of the number of defendants, the scope of the indictment, and the court's own experience. ***When the estimate exceeds four months, the judge should require the prosecution to justify its conclusion that a joint trial serves the ends of justice. When more than ten defendants are involved, this justification should be especially compelling.***"

*United States v. Baker*, 10 F.3d 1374, 1391 (9th Cir. 1993)(upholding refusal to sever 12

defendants in drug conspiracy trial, but warning prosecutors as well as judges to refrain from

proceeding with "mega-trials" in the future), citing *United States v. Casamento*, 887 F.2d

1141(2nd Cir. 1989)).

When, as here, not one, but two complex conspiracies are alleged, the danger of

prejudicial joinder is even greater.

> while "the joinder of numerous defendants in a single joint trial may result in judicial economy...we, as judges, should not shirk our duty to protect our courts from becoming mere prosecutorial mills through which criminal convictions are processed all in the name of judicial efficiency. This danger of sacrificing individual justice arises most often in a case such as this, wherein questions are raised as to whether there was one single conspiracy or several minor conspiracies...Our district judges have the first and most critical responsibility, for they are positioned to sever trials when they can readily see, quicker than we, injustices that may occur if such is not done."

*United States v. Eubanks*, 591 F.2d 513, 522 (9th Cir. 1979) (Ely, J., concurring).

<div align="center">-7-</div>

The court in *Unites States v. Ayala Lopez,* 319 F.Supp.2d 236 (D.Puerto Rico 2004), cited

data gleaned from federal district courts when it severed a capital defendant from his non-capital

co-defendants.

> "...we find compelling what other federal district courts have done when faced
> with the "ever-present risk of prejudice" of joint trials.  In the majority of federal
> death penalty cases some type of severance has been granted. See Declaration of
> Kevin McNally, Dockets 269, 270-Exhibit A.  Specifically, in the twelve cases
> which have reached the trial stage where there was a single capital defendant and
> one or more non-capital defendants, severance has been granted eight times
> (67%).

*Id*. at 240.

> **B.** **SEVERANCE IS REQUIRED BECAUSE OF PREJUDICIAL
> ASSOCIATION AND LIKELY CONFUSION OF EVIDENCE
> RESULTING FROM THE COMPLEXITY OF THIS CASE AND
> NEGATIVE RACIAL STEREOTYPING.**

> **1.** **Introduction**

In *Williams v. Superior Court,* 36 Cal.3d 441, 452-453 (1984) the California Supreme

Court focused on a  particular form of prejudice in ruling that the trial court had abused its

discretion in denying an African American capital defendant's motion to sever two

"gang-related" homicides: negative racial stereotyping of African Americans as gang members.

In the present case, as will be shown below, this form of prejudice will be present to an

impermissible degree if JUAN BRISENO stands trial with his co-defendants in this extremely

complex case.

> **2.** **Negative Racial Stereotyping Inherent in A Joint Trial Of Eleven
> Hispanic American Males Charged with Extremely Violent and
> Complicated Charges Will Threaten Mr. Briseno's Right To A Fair
> Trial**

In *Williams v. Superior Court*, 36 Cal. 3d at 452-53, the California Supreme Court

emphasized that  prejudice flowing from improper joinder can take many forms:

-8-

793

> "It is true that the present case does not involve the 'highly inflammatory' issue of sex crimes against children. Yet it would be folly to suggest that we should limit the consideration of the prejudicial impact of a joint trial to cases which involve sexual assaults against minors. Examining the facts of the two separate incidents here, we find that all four of the factors established in the above model are also present in the current matter, albeit in somewhat different form.
>
> First, as we have noted above, the two shootings do not share sufficient common and distinctive marks to be admissible in the respective separate trials. Second, the evidence of gang membership - the sole distinctive factor allegedly common to each incident - might indeed have a very prejudicial, if not inflammatory effect on the jury in a joint trial. *The implication that gangs were involved and the allegation that petitioner is a gang member might very well lead a jury to cumulate the evidence and conclude that petitioner must have participated in some way in the murders* or, alternatively that involvement in one shooting necessarily implies involvement in the other... *In addition, as petitioner suggests, it might be the highly publicized phenomenon of gang warfare in Southern California which would be on trial as much as the defendant, thereby raising the spectre of prejudice far beyond the facts of the actual case.*"

*Id.* (emphasis added).

Here, too, the government's theory that the Imperial Gangsters gang is responsible for all of the violence alleged in the indictment is unfairly bolstered when the government is allowed to bring together in one courtroom eleven young Hispanic American males, whose mere group presence in a confined setting gives a constant visual reinforcement to the  common and incorrect racial stereotype that a group of young Hispanic American males are probably gangsters, and that their alleged crimes, no matter how divergent, must necessarily be gang related.  Further, as in *Williams*, in a megatrial involving all defendants, it might be the highly publicized phenomenon of gang violence in East Chicago that would be on trial as much as the defendants, thereby raising the spectre of prejudice far beyond the facts of the actual case.

The United States Supreme Court described local prejudice against African Americans in words that have equal force in this case:

-9-

> On the facts of this case, a juror who believes that blacks are violence prone or morally inferior might well be influenced by that belief in deciding whether petitioner's crime involved the aggravating factors specified under ... law. Such a juror might also be less favorably inclined toward petitioner's evidence of mental disturbance as a mitigating circumstance. More subtle, less consciously held racial attitudes could also influence a juror's decision in this case. Fear of blacks, which could easily be stirred up by the violent facts of petitioner's crime, might incline a juror to favor the death penalty.

*Turner v. Murray*, 476 U.S. 28, 36.

Clearly, the same principle holds true for a juror who believes Hispanic-Americans are violence prone or morally inferior. The defendants in this case are linked not just by the fact that they are charged together, but also by their shared ethnicity, similar young ages, and similar backgrounds. There is evidence that more prejudice from joinder may arise when the defendants are minority group members. That in turn leads to the likelihood of both lumping and spillover from one defendant to another and thus to prejudicial joinder.

For these reasons, the risk that racial prejudice may infect a joint trial of Mr. Briseno and his co-defendants, all of whom are Hispanic American, is "unacceptable in light of the ease with which that risk could (be) minimized." See *Turner v. Murray*, 476 U.S. 28, 36 (1986). As in *Williams*, Mr. Briseno is entitled to severance in order to ensure that local prejudice against a racial minority does not swamp his right to a fair trial.

> **C.  THE COURT SHOULD SEVER MR. BRISENO FROM HIS NON-CAPITAL CODEFENDANTS BECAUSE MR. BRISENO AND SEVERAL CO-DEFENDANTS HAVE ANTAGONISTIC AND MUTUALLY EXCLUSIVE DEFENSES.**

Mutually exclusive defenses require severance. *Tootick*, 952 F.2d at 1080 "Inconsistency, alone, seldom produces the type of prejudice that warrants reversal, but "the probability of reversible prejudice increases as the defenses move beyond the merely inconsistent to the antagonistic." *Id*. at 1081. Antagonistic defenses become mutually exclusive "...when

-10-

acquittal of one codefendant would necessarily call for the conviction of the other... . The prototypical example is a trial in which each of two defendants claims innocence, seeking to prove instead that the other committed the crime." *Id*. citing *United States v. Holcomb*, 797 F.2d 1320, 1324 (5th Cir.1986). The *Tootick* court added that "[i]n *United States v. Crawford*, 581 F.2d 489 (5th Cir.1978) the court found mutually exclusive defenses where defendants, charged with possession of an unregistered firearm, each claimed that the other owned the weapon." *Id*.

Normally, when a defendant seeks severance on the grounds of mutually exclusive defenses, he must provide the court with specific information showing that indeed the defenses are antagonistic and/or mutually exclusive. Due to the prosecution's unwillingness to provide complete discovery (Jencks Act Material), however, Mr. Briseno is precluded from providing the court with such information at this time. Hence, Mr. Briseno is proceeding to trial with little to no information regarding the circumstances of the several charges against him, and with no idea what evidence and witnesses the government intends to put on. Thus, at any time throughout the lengthy trial, counsel for Mr. Briseno may receive information that gives rise to mutually exclusive defenses. At that time, the court would have to order severance pursuant to its "continuing duty at all stages of the trial to grant a severance if prejudice does appear." *Schaffer v. United States*, 362 U.S. at 516.

At this time, however, counsel for Mr. Briseno can readily foresee that given the nature of the charges, exclusive defenses may well arise with regard to several of those charges. The prosecution alleges that Mr. Briseno was the shooter in at least six homicides. All co-defendants will likely want to show that they had *no* involvement – as the shooter, or otherwise in any of the six homicides with which Mr. Briseno is charged. Thus any attempt by Mr. Briseno to show that he was *not* the shooter and that one of the other co-defendants was the shooter, creates a mutually

exclusive defense problem: to accept Mr. Briseno's defense, the jury necessarily must reject the

defense of one or more co-defendants.  Each will likely deny any involvement at all, and at the

very least, will argue that the other was the shooter.  Again, if each claims one or more of the

others committed the homicide, the jury must reject at least one defendant's defense in order to

accept another's.

In *United States v. Green*, 324 F. Supp. 2d 311 ((D. Mass. 2004), two defendants faced

murder charges of one victim.  The defense maintained that only one shooter murdered the

victim, and each codefendant argued that the other was the shooter.  *Id*. at 324. The court found

that "[i]f the jury agrees that there is only one shooter, the defendants' claims are mutually

exclusive, and unlike in *Zafiro*, a zero sum game." *Id*. The *Green* Court considered the

government's argument  that "the evidence will show only a single bullet hit [the victim], but *not

that there was a single shooter*. Moreover, even if there was only a single shooter, the

government would argue the defendants were joint venturers or one aided and abetted the other."

*Id*. at 325 (emphasis added).  The court rejected this argument and noted,

> "[t]he issue is not the position the government takes. *The issue is whether a jury
> will be able to hear the opposing position--the defense theory--and reliably
> consider all positions*. There is a considerable risk that each defendant, ably
> throwing pot-shots at the other, would make the government's case for it.
> Specifically, in the din, a juror could well say: 'I cannot figure out who did the
> shooting, given the defendants' mutual accusations, but it doesn't matter. They
> were involved somehow and that is enough.' That conclusion would redound to
> the government's benefit."

*Id.*  (emphasis added).

Severance is particularly important in these circumstances because "[j]oinder... in a case

involving mutually antagonistic defenses, may operate to reduce the burden on the prosecutor—

by turning a defendant into a second prosecutor. Each side will do everything possible to convict

the other defendant, as 'defense counsel are not always held to the limitations and standards imposed on the government prosecutor.'" *Green*, at 325 (citing *Zafiro,* 506 U.S. at 543 and quoting *Tootick*, 952 F.2d at 1082.) Thus, the presence of several defense attorneys in the court room will become the  equivalent of several additional prosecutors, as each defendant points the finger at his co-defendants.  No one will be a more appealing target than the defendant already marked as more blameworthy by the fact that he faces the death penalty.  Because the jury will know from the outset of the trial that Mr. Briseno is the only defendant eligible for death, a co-defendant's self-serving accusation against him will be all the more believable.   Severance in these circumstances is a necessary safeguard of Mr. Briseno right to a fair trial.  *See Odom*, 888 F. 2d at 1018  ("[t]he taking of an adversarial stance [against a defendant] on the part of a co-defendant's counsel may generate trial conditions so prejudicial to the defendant under multiple attack as to deny him a fair trial")(internal citation omitted).

**D.      THE COURT SHOULD SEVER MR. BRISENO FROM NON-CAPITAL CO-DEFENDANTS BECAUSE EVIDENCE ADDUCED DURING A MULTI-DEFENDANT, COMPLEX CONSPIRACY CASE WILL PREJUDICE MR. BRISENO DURING THE GUILT PHASE AND THE PENALTY PHASE OF HIS TRIAL**.

When a sentencing jury hears guilt-phase evidence in a vast, multi-defendant conspiracy case, the potential for juror confusion and negative spillover increases with each added charge and defendant.  Indeed, the mere size of a case alone can justify a severance.  When ruling on severance, the sheer magnitude of a case can "compel caution and restraint." *United States v. McVeigh*, 169 F.R.D. 362 (D. Colo. 1996); *See also, United States v. Baker*, 10 F.3d at 1391. ("When the estimate [of time for trial] exceeds four months, the judge should require the prosecution to justify its conclusion that a joint trial serves the ends of justice. When more than ten defendants are involved, this justification should be especially compelling.").

-13-

Moreover, some prosecutors will use conspiracy charges as a vehicle to *maximize*

prejudice. In *Krulewitch v. United States*, 336 U.S. 440 (1949) (Jackson, J., concurring), Justice

Jackson saw the potential for prejudice that conspiracy law brings to bear on the criminal

defendant:

> "[T]he rules of evidence in conspiracy cases make them most difficult to try
> without prejudice to an innocent defendant . . .. (Id. at 446). The trial of a
> conspiracy charge doubtless imposes a heavy burden on the prosecution, but it is
> an especially difficult situation for the defendants. The hazard from loose
> application of rules of evidence is aggravated where the government institutes
> mass trials.... (Id. at 453-54). Of course, it is for prosecutors rather than courts to
> determine when to use a scatter-gun to bring down the defendant, but there are
> procedural advantages from using it which add to the danger of unguarded
> extension of the concept . . .. (Id. at 452). As a practical matter, the accused is
> often confronted with a hodgepodge of acts and statements by others which he
> may never have authorized or intended or even known about, but which help to
> persuade the jury of existence of the conspiracy itself. In other words, a conspiracy
> often is proved by evidence that is admissible only upon assumption that
> conspiracy existed. The naive assumption that prejudicial effects can be overcome
> by instructions to the jury, all practicing lawyers know to be unmitigated fiction."
> Id. at 453 (all emphasis added)

Likewise, when defendants are charged together in a conspiracy, "[the greatest threat... is

...the probability of prejudice which arises from the inevitable insinuation of *guilt by association*

when evidence is admissible against some of the defendants but not against all of them.

Regretfully, it appears that our *prosecutors have begun to bank on this prejudice.*" *Eubanks*, 591

F.2d at 523 (Ely, J., concurring)(emphasis added). See also, *Mitchell v. Prunty*, 107 F.3d 1337,

1342 (9th Cir. 1997)(strongly admonishing against inferring guilt by association solely on the

basis of gang membership)("Membership in a gang cannot serve as proof of intent, or of the

facilitation, advice, aid, promotion, encouragement or instigation needed to establish aiding and

abetting. To hold otherwise would invite absurd results. Any gang member could be held liable

-14-

for any other gang member's act at any time so long as the act was predicated on the "common purpose of 'fighting the enemy.' ")

### 1.     Juror Confusion Will Prejudice Mr. Briseno

By way of a 72 page indictment, eleven defendants stand charged with participation in a RICO conspiracy consisting of at least 83 overt acts spanning a period of more than 10 years and involving other unindicted coconspirators.  Eleven defendants also stand charged with a narcotics distribution conspiracy spanning a period of at least ten years.

The magnitude of evidence in this case will be staggering, and much of it will involve matters in which Mr. Briseno was not involved.  Thus, Mr. Briseno will suffer prejudice during the guilt phase of the trial due to the sheer magnitude of the case: the jury will face the nearly *impossible* tasks of (1) separating relevant from irrelevant evidence as to each and every defendant, and (2) remembering what evidence applies to the capital defendant at sentencing. While the prosecution will doubtlessly argue that evidence of any one co-conspirator is admissible against all to prove the conspiracy, this does not give the prosecution license to conduct unmanageable mega-trials at the defendant's and the court's expense.  In fact, because "prosecutors have begun to bank on this prejudice," (*Eubanks*, 591 F.2d at 523) the court should remain keenly aware of circumstances under which such prejudice warrants severance. In the loosely sewn-together RICO conspiracy case presently before the court, juror confusion and "spillover prejudice" is inevitable given the byzantine indictment, the number of defendants, their similar traits, and the hundreds of alleged acts that span a period of more than ten years.

In fact, juror confusion is highly likely here because, this is a complex case, both legally and factually. There are 41 counts:  there are overlapping overt acts, racketeering acts, and substantive counts; there are two separate conspiracies.  The defendants are all

-15-

Hispanic-American, approximately the same age, and two of the non-capital defendants have the same last name.  That could lead to some additional juror confusion.  Furthermore, some guilt or aggravation evidence that comes into evidence as admissible only against one defendant could raise serious problems for a co-defendant and prevent individualized decision making.

Thus failure to sever Mr. Briseno under these circumstances will "prevent the jury from making a reliable judgment of guilt or innocence." *Zafiro*, 506 U.S. at 539. See also, *United States v. Green*, 324 F. Supp. 2d at 327 (In a RICO gang case involving only five defendants, severance of capital from non-capital defendants was warranted in part because "I have substantial concerns about the ability of the jury to keep the role of each defendant separate and distinct. I believe that there would be a very serious risk of juror confusion that would 'prevent the jury from making a reliable judgment about guilt or innocence.'" )

Moreover, guilt phase evidence during this massive trial will inevitably affect Mr. Briseno's Eighth Amendment right to have his sentence based on "the character and record of the individual offender . . .." *Woodson v. North Carolina*,  428 U.S.280, 304 (1976)(emphasis added.)  While the acts of other co-conspirators to prove the conspiracy may be admissible against a defendant during the guilt phase, a jury must rely only on the defendant's actions and culpability when sentencing a capital defendant. For example, in *Enmund v. Florida*, 458 U.S. 782 (1982), the court reversed defendant's death sentence in a in felony murder case where the defendant did not actually killed the victim.  The Court noted that "[f]or purposes of imposing the death penalty, Enmund's criminal culpability must be limited to his participation in the robbery, and his punishment must be tailored to his personal responsibility and moral guilt." *Id*., 458 U.S. at 801.  The Court held that "[t]he focus must be on his culpability, not on that of those who committed the robbery and shot the victims, for we insist on individualized consideration as

<center>-16-</center>

a constitutional requirement in imposing the death sentence... .” *Id.* (citations omitted.). See also, *United States v. Hall*, 152 F.3d 381, 415(5th Cir. 1998)("(T)he wording of the aggravating factor itself focuses upon the actions of Hall; it provides that the jury must conclude that the 'defendant committed the offense in an especially heinous, cruel, or deprived manner'. The instructions accompanying the aggravating factor removed any doubt that the jury was required to focus on Hall's actions in determining whether this aggravating factor exists."); *United States v. Allen*, 247 F.3d 741, 787(8th Cir. 2001)(applying same reasoning to 18 U.S.C. § 3592 (c) (5))

## 2.      Juror Exhaustion Will Prejudice Mr. Briseno at the Penalty Phase

As the Ninth Circuit noted in *Baker* , “[t]his type of trial also imposes on citizens who fulfill their civic duty by serving on the jury. Jurors have their employment and home life disrupted, often at great financial, physical, and personal expense. They are required to sit stoically and silently for hours every day, day after day... and are prohibited from engaging in many ordinary pursuits of their daily lives, such as reading the newspaper.” *Baker*, 10 F.3d at 1391. Indeed, as the First Circuit stated in *United States v. DeCologero*, 364 F.3d 12, 24 (1st Cir.2004), “[t]here are potentially limits to the complexity that a jury can handle.”   Undoubtedly, the present trial will be extraordinarily long, requiring jurors to sit  through several months of testimony from hundreds of witnesses, hearing hundreds of instructions, and enduring all of the daily procedural minutia that is compounded with each defendant.  Exhaustion will likely set in by the time they render their verdict of guilt or innocence, if not sooner.  Thus after such a long and complicated trial, the jury will return to penalty proceedings tired and worn out, hindering its ability to listen carefully and intently to all of the penalty phase evidence, including mitigation. This will violate the Eighth Amendment requirement that juror’s “give *full* consideration and *full* effect to mitigating circumstances.”  *Penry v. Johnson*, 532 U.S. 782, 797 (2001)(*Penry II*)

### 3.     Jury Instructions Will Not Cure The Prejudice to Mr. Briseno

While the court can instruct the jury to consider only the conduct of a particular capital defendant during sentencing following a guilt verdict, a jury will likely lose its ability to do so in this highly complicated RICO cases involving multiple defendants and several alleged acts and conspiracies.  Any expectation that the jury will or can focus only on the specific acts attributed to Mr. Briseno is unrealistic at best.  His right to individualized sentencing will suffer in the jury's confusion and exhaustion.  Thus, the court faces a "serious risk that a joint trial would compromise a specific trial right of one of the defendants," (*Zafiro*, 506 U.S. at 539), and should therefore sever Mr. Briseno from his non-capital co-defendants. (See Section VIII for full discussion on inadequacy of instructions in this case.)

**E.     JOINT TRIAL WITH HIS CO-DEFENDANTS WILL PREJUDICE MR. BRISENO AT THE GUILT PHASE AND PENALTY PHASE BECAUSE HE WILL BE A "TARGET DEFENDANT" AND WILL SUFFER FROM THE "REVERSE HALO EFFECT."**

The government's indictment attributes "star of the show" status to Mr. Briseno by charging him with six murders in aid of racketeering activity.  Furthermore, as Mr. Briseno is the only defendant facing the death penalty, Mr. Briseno runs the risk of becoming a "target defendant" and suffering the "reverse halo effect" if he proceeds to trial joined with the non-capital defendants.  The sheer number of violent acts attributed to Mr. Briseno, when compared with his non-capital defendants, creates the risk that the jury will engage in a decisional process which might be called 'creating a target defendant.'  Once the jury decides to sentence the racketeering enterprise itself to death, the capital defendant's case then becomes the only avenue for the most severe punishment.  Further, Mr. Briseno is likely to suffer from the negative spillover or "reverse halo effect" in the guilt phase of a joint trial with non-capital defendants.  First, he is the only one among the eleven defendants who faces a possible death

-18-

sentence, and for that reason is likely to be seen in the most negative light, as the most sinister person in the group, and as the "heavy" of this particular group of young Hispanic-American men. Second, he will be portrayed by the prosecution and co-defendants' counsel of having extensive gang involvement.

These opportunities for prejudice will flourish when combined with the added problem of antagonistic defenses: if non-capital co-defendants assert that Mr. Briseno is the shooter in order to exculpate themselves, the target defendant (Mr. Briseno) becomes the easiest person to disbelieve. Severance will safeguard against this prejudice.

In a related matter, a joint trial of a capital defendant with multiple non-capital defendants will likely create the impression that a legal determination already took place that singled the defendant out for the death penalty. In a separate trial, the jury would not be informed that the government did not seek the death penalty against other defendants. If tried jointly with the non-capital defendants, however, the jury will likely conclude that some official "sorting process" already singled out Mr. Briseno for the death penalty, and that he is somehow more culpable. See, *United States v. Green*, 324 F. Supp. 2d at 326 n. 21 ("The capital defendants argue most powerfully that if they are tried along with non-capital defendants, jurors may infer that because they have been chosen by someone (they may know it was by the government or speculate that it was by the Court) for the death penalty, and others have not, that they are more culpable than the non-capital codefendants.")

The Court can readily comprehend the impact on potential jurors when during voir dire the Court and counsel are concerned only with whether the juror could impose a death sentence on Mr. Briseno and not on ten other co-defendants. Jurors may assume that the court agrees with the "decision" that Mr. Briseno deserves death.

Any implication that a prosecutor pre-selected Mr. Briseno for the death penalty is impermissible. *See Johnson v. Wainwright*, 778 F.2d 623 (11th Cir. 1985). In *Johnson*, the court ruled that a prosecutor acts improperly when he informs the jury that his office seeks the death penalty only in a limited number of cases. *Id*. at 630. The court explained that,

> "A prosecutor's exercise of the discretion necessary to his office typically carries great legitimacy because of the public's belief that he is carrying out his duties with expertise and in the interest of justice. While the prosecutor's reliance on this public trust is surely proper in many instances, it is not appropriate in a death penalty proceeding where the choice of life or death has been purposely left in the first instance not with him but with the defendant's peers. By suggesting that his office had already carefully selected Johnson as one who was particularly deserving of the death penalty, the prosecutor tended to undermine the jury's perception that it had unfettered discretion to decline to impose the death penalty."

*Id*.

Here, the prosecution cannot avoid creating the impression that its office "carefully selected" Mr. Briseno for the death penalty if Mr. Briseno stands trial with ten defendants against whom it declined to seek the death penalty. The fact that the U.S. Attorney does not explicitly state to the jury that it pre-selected Mr. Briseno should not matter. The practical effect of Mr. Briseno's singled-out status is that it tends "to undermine the jury's perception that it ha[s] unfettered discretion to decline to impose the death penalty." *Id*. Any such impression deprives Mr. Briseno of his rights to a fair determination of guilt or innocence, and to precise and individualized sentencing.

Accordingly, under *Zafiro,* severance is necessary because Mr. Briseno's unique death-eligible status presents a "serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro*, 506 U.S. at 539.

-20-

**F.    JOINDER WILL PREJUDICE MR. BRISENO DURING THE PENALTY PHASE BECAUSE TRIAL WITH HIS CO-DEFENDANTS WILL DILUTE HIS MITIGATION EVIDENCE**

The Eighth Amendment requires that "[a] sentencer [must] be allowed to give *full* consideration and *full* effect to mitigating circumstances." *Penry II*, 532 U.S. at 797.  The *Penry II* Court clarified that,

> *"Penry I* did not hold that the mere mention of 'mitigating circumstances' to a capital sentencing jury satisfies the Eighth Amendment. Nor does it stand for the proposition that it is constitutionally sufficient to inform the jury that it may 'consider' mitigating circumstances in deciding the appropriate sentence. Rather, the key under *Penry I* is that the jury be able to consider and *give effect* to [a defendant's mitigating] evidence in imposing sentence. [A] sentencer [must] be allowed to give *full* consideration and *full* effect to mitigating circumstances"

*Penry II*, 532 U.S. at 797(internal quotes and citations omitted)(emphasis in original).

Accordingly, any process that dilutes Mr. Briseno's mitigating evidence hampers a jury's ability to "give *full* consideration and *full* effect" to mitigating circumstances.  *Id.*

At the penalty phase, a capital defendant relies heavily on his social history, which includes evidence of his environment, for mitigation: "Life experience, or social history, is the heart of penalty phase presentations."

Thus, if the jury hears evidence of the non-capital defendants' less serious crimes despite having grown up in the same neighborhood as Mr. Briseno, Mr. Briseno's environmental mitigation evidence becomes weaker. This is because jurors will simply assume, with no supporting evidence, that others experienced the same environment but did not resort to murder. But the jurors will never hear the life histories of the non-capital defendants, which might readily explain the absence of homicidal conduct.  Worse still, such a comparison between Mr. Briseno and his lesser-charged counterparts may even transform his mitigation evidence into evidence of

-21-

aggravation: Jurors may conclude that Mr. Briseno is in fact deserving of death because he responded more violently to his upbringing than his equally troubled non-capital co-defendants. In other words, when compared to similarly situated co-defendants, the jury may treat Mr. Briseno's mitigation evidence as mere excuse making, thus turning his mitigation evidence into evidence of a failure to take responsibility or lack of remorse. *See, e.g.*, *Zant v. Stephens,* 462 U.S. 862, 885 (noting that attachment of "'aggravating' label" to factors "that actually should militate in favor of a lesser penalty" would violate Eighth Amendment). Thus, the practical effect of jointly trying Mr. Briseno with his similarly situated co-defendants is that it dilutes his mitigation evidence.

G. **THE COURT SHOULD SEVER THE CAPITAL DEFENDANT FROM THE NONCAPITAL DEFENDANTS BECAUSE PREJUDICE WILL RESULT FROM JURY SELECTION.**

A joint trial with capital and non-capital defendants in this case will cause significant problems in voir dire. Some capital defendants often seek a voir dire approach that will produce jurors perceived to be more advantageous at penalty phase, while a co-defendant not facing death will be primarily concerned about the guilt phase. That makes the exercise of any joint peremptory challenges problematic. One defendant may wish to voir dire about issues that will only arise at penalty phase; yet informing the prospective jurors about such matters can be highly prejudicial on guilt to the co-defendant.

Thus, the court will face several time-consuming, thorny issues that it will otherwise avoid by granting severance. What will happen if one of the capital defendants' attorneys wishes to voir dire jurors about an issue that can only arise if the case reaches the penalty phase? The issue may be inadmissible and prejudicial during the guilt phase to a co-defendant, but if an

-22-

attorney expects his or her client to be convicted, he or she may tactically decide to raise the issue in voir dire.  The Court must decide whether the non-capital defendant should be penalized by a capital co-defendant's revealing the information to the jury during the voir dire, thus prejudicing the non-capital defendant's guilt trial, or whether the capital attorney should be prevented from seeking the necessary information.

Also, because capital and non-capital defendants differ in that the former may concede guilt at the outset of trial for tactical reasons, co-defendants often seek very different ideal jurors. Thus, when co-defendants are forced to share their peremptory challenges, they  effectively lose much of this important protection.

Moreover, a death qualified jury will prejudice the non-capital defendants. While death-qualification of a jury, standing alone, might not require a severance, it is a factor that militates in favor of severing a non-capital defendant.

Thus jury selection issues present one more problem of a joint trial with capital and non-capital defendants that weighs in favor of severance.

> **H.    THE COURT SHOULD SEVER MR. BRISENO'S TRIAL BECAUSE THE INTRODUCTION OF CO-DEFENDANT STATEMENTS WILL VIOLATE HIS SIXTH AMENDMENT RIGHT OF CONFRONTATION.**

The Sixth Amendment guarantees the accused a right to confront and cross examine the witnesses against him. *Bruton*, 391 U.S. at 134; *Crawford v. Washington*, 541 U.S. 36, 42 (2004).   When the prosecution introduces a confession by a co-defendant that inculpates a defendant and that co-defendant does not take the stand**,** the inculpated defendant loses his right of confrontation.  *Bruton*, 391 U.S. at 134**.**  A limiting instruction will not cure this constitutional infringement because,

-23-

808

"...powerfully incriminating statements of a codefendant who stands accused side-by-side with the defendant, are deliberately spread before the jury in a joint trial. Not only are the incriminations devastating to the defendant but their credibility is inevitably suspect, a fact recognized when accomplices do take the stand and the jury is instructed to weigh their testimony carefully given the recognized motivation to shift blame onto others. The unreliability of such evidence is intolerably compounded when the alleged accomplice, as here, does not testify and cannot be tested by cross-examination. It was against such threats to a fair trial that the Confrontation Clause was directed."

*Id*. at 135-136.

The court explained that a jury "cannot determine that a confession is true insofar as it admits that A has committed criminal acts with B and at the same time effectively ignore the inevitable conclusion that B has committed those same criminal acts with A." *Id*. at 131.

Moreover, redaction of the confession is an improper remedy unless all direct and inferred reference to the inculpated defendant disappears from the co-defendant's confession. *United States v. Peterson*, 140 F.3d 819 (9th Cir. 1998)(deleting defendant's name from co-defendant's confession and inserting pronouns in its place is inadequate Sixth Amendment protection when the jury can infer that defendant was the deleted party.)

Recently, in *Crawford,* 541 U.S. 36, the Supreme Court reaffirmed its long-standing protection of the right of confrontation by holding that out-of-court statements that incriminate a defendant are inadmissible, despite their reliability, unless the witness is unavailable and the defendant had an opportunity to cross-examine the witness. *Id*. at 59.

In the present case, the prosecution will likely seek to introduce statements made by Mr. Briseno's co-defendants during structured questioning by law enforcement officers. Most likely, such statements will be inextricably bound up with references to Mr. Briseno. While the statement may be admissible as an admission against the co-defendant making the statement, it is

-24-

not admissible against Mr. Briseno, but by referencing Mr. Briseno, the statement inculpates Mr.

Briseno.   If co-defendants making statements inculpating Mr. Briseno do not waive their Fifth

Amendment privilege against testifying, Mr. Briseno will be unable to confront and

cross-examine these witnesses.  In this situation, severance is the only proper remedy. *Bruton*,

391 U.S. at 137.

Moreover, more admissions and/or confessions may well emerge as defendants receive

discovery in this case *throughout* the trial.  Under the court's "continuing duty at all stages of the

trial to grant a severance if prejudice does appear," (*Schaffer*, 362 U.S. at 516), the court must

sever Mr. Briseno from trial if any *Bruton* statements emerge.

## I.   JURY INSTRUCTIONS WILL NOT CURE THE PREJUDICE RESULTING FROM JOINDER

Courts often rely on the availability of jury instructions and limiting instructions when

denying severance motions.  The magnitude of instructions necessary in this case however will

not cure the prejudice to defendants from joinder.

In *Baker*, 10 F.3d 1374,  the Ninth Circuit discussed the matter at length. "Mega-trials,"

create substantial risk of prejudice to defendants because,

> "...the human limitations of the jury system and the consequent risk of spillover
> prejudice cannot be ignored... . At oral argument in this case, the Assistant United
> States Attorney averred that his multiple violations of the district court's limiting
> instructions during closing argument were the inadvertent result of confusion.
> *When a seasoned prosecutor is unable to keep track of nearly 200 limiting
> instructions given over the course of a 16-month trial, our faith in a lay jury's
> ability to do so is stretched to the limit*. Our presumption that a jury is able to
> follow the trial court's instructions is 'rooted less in the absolute certitude that the
> presumption is true than in the belief that it represents a reasonable practical
> accommodation of the interests of the state and the defendant in the criminal
> justice process.' The presumption is not irrebuttable." *Id.* at 1391.

-25-

810

Although courts presume that jurors will perform their duty to follow the law, jurors may be somewhat unable, if not unwilling, to do so.

Once a juror hears evidence that is perhaps probative but improper to consider against Mr. Briseno, such evidence will likely remain a permanent part of the juror's story, regardless of any instruction to the contrary. As the *Bruton* court readily and honestly acknowledged, "[t]he naive assumption that prejudicial effects can be overcome by instructions to the jury . . . all practicing lawyers know to be unmitigated fiction. . . .'" *Bruton,* 391 U.S. at 129 (*quoting Krulewitch,* 336 U.S. at 453).

A separate trial is the only remedy available to the Court to fully resolve the myriad of problems raised by joinder in this case.

**J.     SEVERANCE IN THIS CASE SERVES THE PUBLIC INTEREST IN JUDICIAL ECONOMY**.

The practical considerations involved in trying this case are immense. While joint trials may save time and resources in some cases, the same does not hold true for "mega-trails." *Baker*, 10 F.3d at 1391. At some point a trial may become so large that it no longer benefits from joinder. In *Baker*, the Court generally agreed that "joint trials 'conserve state funds, diminish inconvenience to witnesses and public authorities, and avoid delays in bringing those accused of crime to trial.'" *Id*. at 1387. However, the Court added that where the prosecution proceeded to conduct "one of the lengthiest and costliest trials in this nation's history... the claim that joint trials save time and serve judicial economy is ludicrous under the present facts." *Id*. at 1386, 1389. The same is true in this case. Severing the capital defendant will simplify this trial in several important respects.

-26-

### 1.    Jury Selection

The capital prosecution against Mr. Briseno will change and complicate the jury selection procedure.  Jury selection in a trial involving ten non-capital defendants and one capital defendant will present significant obstacles and delays.

Fed. R. Crim. P. 24(b)(2) provides that in a non-capital prosecution the defense enjoys 10 peremptory challenges, while the government is limited to six.  The rule permits the court to grant additional peremptory challenges to multiple defendants.  The rule does not permit the court to grant additional peremptory challenges to the prosecution, absent an agreement between the parties.  *U.S. v. Gleason,* 616 F.2d 2, 29 (2nd Cir. 1979)(holding that granting prosecution additional peremptory strikes was improper, but did not warrant reversal because no prejudice resulted.)

However, Rule 24(b)(1) provides the capital defendant and the government 20 peremptory challenges each.  The reason for the additional challenges is to ensure that a capital jury is not tainted by unacceptable opinions with regard to the death penalty. See *United States v. Vallez*, 653 F.2d 403 (9th Cir. 1981). However, Rule 24 is silent regarding how joined capital and non-capital defendants properly exercise their challenges.  For example, non-capital defendants may not agree to the prosecution having more than 6 challenges, but because this is also a capital trial, the prosecution will have more challenges than it ordinarily would.  In order for non-capital defendants to maintain their statutory advantage under Rule 24(b)(2), the government must necessarily lose its right to 20 challenges with regard to the capital defendants.  After several motions and arguments on the matter, the court may still strain to find a solution that is fair to all parties.

-27-

812

Considerations of fairness also arise because capital defendants often have a very different focus during voir dire than non-capital defendants. A capital defendant may wish to voir dire on issues that are prejudicial to the non-capital defendants. Thus the court must decide whether the non-capital defendant should be penalized by a capital co-defendant's revealing such information during voir dire, thus prejudicing the non-capital defendant's guilt trial, or whether the capital attorney should be prevented from seeking the necessary information.

Not only do the voir dire problems cause prejudice to the capital and non-capital defendants, but these problems will result in one delay of several if the case proceeds to trial without severance: Without a doubt, objections and sidebars will abound. As the *McVeigh* Court noted, "[t]here are efficiencies and advantages in single focused trials (resulting from severance). The time needed for jury selection is significantly reduced: the number of defense peremptory challenges is halved and only one defense counsel conducts voir dire questioning." *McVeigh,* 169 F.R.D. at 370. Here, while severing the capital defendant will not result in halving the number of peremptory challenges, it will nonetheless significantly reduce them, and will also streamline voir dire questioning and avoid related delays that will emerge before and during voir dire.

### 2.     General Efficiency

In addition to recognizing the benefits of severance with regard to jury selection, the *McVeigh* Court also preferred severance because "it is easier to apply the rules of evidence." *Id*. The court concluded that "...[g]iven these considerations, it is far from certain that the time required for two separate trials would, in total, be substantially greater than the time required for a joint trial." Likewise, in *Ayala-Lopez*, the court dismissed the prosecution's judicial efficiency

-28-

argument as a "nonsequitur," because "[t]here are advantages and costs with respect to efficiency on both sides of the coin. Efficiency, thus, is a double edged sword. Capital trials involve procedures and considerations foreign to non-capital trials, *inter alia*, the additional peremptory challenges and voir dire questioning." *Id.*, 319 F.Supp.2d at 239.

Moreover, the *Baker* Court cautioned that its "holding should not be interpreted as an endorsement of the government's bringing such mega-trials in the future." The court added, "there are several frequently cited advantages of proceeding against all defendants in a single trial. We believe, however, that most of these purported advantages are overstated when a trial of this nature is involved." The court explained that

> "[w]here trials of this magnitude are involved (12-defendant drug conspiracy), judicial economy will often be better served by severance. As the government proceeds through separate trials, it learns the strengths of its case and makes a sharper and more streamlined presentation so that "[e]ach successive trial moves at a quicker and smoother pace than the last." *United States v. Gallo*, 668 F.Supp. 736, 757 (E.D.N.Y.1987). With fewer defendants and defense counsel involved, there is less need for the sidebars and continuances that contribute to the length of a joint trial. Moreover, "[t]he court itself becomes much more familiar with the nature of the case and the evidence, thus enabling more expeditious and more efficient rulings."

*Baker*, 10 F.3d at 1389-1390.

Here, the logical first step in managing *this* mega-trial is to sever out the capital defendant. This eliminates all capital issues that will necessarily cause significant delay in a single joined trial. In this case, joinder *hinders* rather than promotes judicial economy.

### 3. Logistical Problems

One of the practical problems facing the court is the issue of adequate space, or possibly, lack thereof. Courtrooms often are not designed to accommodate groups of defendants with their separate multiple lawyers and investigators. The ability of counsel to discuss issues with their clients with reasonable privacy becomes a problem, as do security, transportation, and other mundane matters.

Moreover, security measures raise practical concerns that may prejudice defendants. Such measures may well be considered necessary, but the presence of many marshals, the use of restraints, and perhaps other precautions, will lead to a climate that could prejudice the jury against the defendant. While such measures are always problematic, multiplying them may constitute an unacceptable risk that will be much less at severed trials.

Notwithstanding these examples of the ways in which joinder will actually impede judicial economy, the need for severance far outweighs any perceived efficiency resulting from a joint trial. As the court in *Ayala Lopez* aptly stated, "we are unable to conclude that the time required for two separate trials will be substantially greater than the time required for a joint trial. Needless to say, when balancing life and judicial economy, we refuse to tilt the balance in favor of the latter." Ayala Lopez, 319 F.Supp.2d at 240.

## IV.     CONCLUSION

For the reasons stated herein, Mr. Briseno respectfully asks this court to sever his trial from his non-capital co-defendants.

DATED THIS 9TH DAY OF AUGUST, 2013.


**Respectfully submitted:**

/s/ *Arlington Foley*
_____

Arlington Foley /#6905-45
Attorney For Defendant
1942 North Main Street
Crown Point, IN 46307
PH: 219.661.1200
FX: 219.661.1205
Email: arlingtonfoley@att.net

/s/ *John Maksimovich*
_____

John Maksimovich /#9950-45
Attorney For Defendant
1946 North Main Street
Crown Point, IN 46307
PH: 219.663.1900
FX: 219.663.1908
Email: criminallaw@johnmaksimovich.com

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

**UNITED STATES OF AMERICA,**

        **Plaintiff**

**vs**

**JUAN BRISENO,**

        **Defendant**          **CAUSE NO:**   **2:11-CR-77**

**CERTIFICATE OF SERVICE**

I hereby certify that on August 9, 2013, I electronically filed:

*Juan Briseno's Motion for Severance from Non-capital Co-defendants*

with the Clerk of the Court using the CM/ECF system, which sent notification of such filing to the following:

David J. Nozick                      Bruce Hegyi
Assistant United States Attorney      Assistant United States Attorney

and I hereby certify that I have mailed by United States Postal Service, the document to the following non-CM/ECF participants:

      N/A

By:    /s/ *John Maksimovich*

John Maksimovich /#9950-45
Attorney For Defendant
1946 North Main Street
Crown Point, IN 46307
PH: 219.663.1900
FX: 219.663.1908
E-Mail: criminallaw@johnmaksimovich.com

816

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | |
| **Plaintiff** | |
| **vs** | |
| **JUAN BRISENO,** | |
| **Defendant** | **CAUSE NO:   2:11-CR-77** |

**MOTION TO PERMIT ATTORNEY  CONDUCTED**
**VOIR DIRE PURSUANT TO PRINCIPLES  REQUIRED**
**BY *FURMAN V.  GEORGIA* AND ITS PROGENY**

Mr.  Briseno requests that this Court permit attorney conducted voir dire – after questioning by the Court – sufficient in scope and depth to facilitate assessment of the jurors' ability to comprehend and apply settled principles governing capital sentencing decision-making.  Mr. Briseno bases this request on: (1) uncontroverted studies demonstrating that actual capital jurors routinely fail to understand and follow constitutionally necessary decision-making principles when sentencing a capital defendant, (2) the special considerations for capital jury selection compelled by the Eighth and Fourteenth Amendments, see, e.g., Morgan v. Illinois, 504 U.S. 719 (1992), and (3) the heightened standard of  reliability applicable to capital cases, which requires that courts "insure that every safeguard is observed." Gregg  v. Georgia, 428 U.S. 153, 187 (1976).  Appropriate attorney conducted voir dire is one such safeguard.

This request is made pursuant to the Fifth, Sixth, and Eighth Amendments to the United States Constitution, Furman v. Georgia, 408 U.S. 238 (1972), Gregg v. Georgia, 428 U.S. 153 (1976), as well as statutory and jurisprudential authorities cited below, and all other applicable constitutional, statutory, treaty, customary international law, evolving international standards, and jurisprudential authority.

-1-

817

"The fundamental respect for humanity underlying the Eighth Amendment's prohibition against cruel and unusual punishment gives rise to a special 'need for reliability in the determination that death is the appropriate punishment' in any capital case." Johnson v. Mississippi, 486 U.S. 578, 584 (1988) (citations omitted). When a defendant's life is at stake, a court must be "particularly sensitive to insure that every safeguard is observed." Gregg v. Georgia, 428 U.S. 153, 187 (1976). This heightened standard of reliability is "a natural consequence of the knowledge that execution is the most irremediable and unfathomable of penalties; that death is different." Ford v. Wainwright, 477 U.S. 399, 411 (1986).

> Death, in its finality, differs more from life imprisonment than a 100-year prison term differs from one of only a year or two. Because of that qualitative difference, there is a corresponding difference in the need for reliability in the determination that death is the appropriate punishment in a specific case.

Woodson v. North Carolina, 428 U.S. 280, 305 (1976). Because of the exceptional and irrevocable nature of the death penalty, the United States Supreme Court has repeatedly emphasized that the Eighth and Fourteenth Amendments require "extraordinary measures" to ensure the reliability of capital trials. Eddings Oklahoma, 455 U.S. 104, 118 (1982) (O'Connor, J., concurring). See also Beck v. Alabama, 447 U.S. 625, 637-38 (1980); Lockett v. Ohio, 438 U.S. 586, 604 (1978); and Gardner v. Florida, 430 U.S. 349, 357-58 (1977).

A substantial body of uncontroverted research reveals that actual capital jurors frequently fail to comprehend and follow Constitutionally mandated decision-making principles that apply during the sentencing determination.

Attorney conducted voir dire is necessary to reveal the juror's views about the sentencing determination and the manner in which the juror views his or her role in this decision-making process. The failure to permit appropriate voir dire by the parties would deprive Mr. Briseno of the federal constitutional guarantees to a fair trial and right to present a defense, the effective assistance of counsel, due process of law, to equal protection of the laws, to freedom from cruel

-2-

818

and unusual punishment, and a reliable verdict and sentence. U.S. Const. amend. V, VI, and VIII. Moreover, a jury selected without the benefit of appropriate attorney conducted voir dire would – as the research establishes – result in the application of the Federal Death Penalty Act sentencing scheme in an arbitrary and standardless manner within the meaning of <u>Furman</u>, and thereby would violate the 5th, 6th, and 8th Amendments of the United States Constitution.

WHEREFORE, for the foregoing reasons and any others that may appear to this Court after a hearing, counsel for Mr. Briseno, respectfully requests this Court enter an order permitting attorney conducted voir dire.

DATED THIS 9<sup>TH</sup> DAY OF AUGUST, 2013.

**Respectfully submitted:**

/s/ *Arlington Foley*
_____

Arlington Foley /#6905-45
Attorney For Defendant
1942 North Main Street
Crown Point, IN 46307
PH: 219.661.1200
FX: 219.661.1205
Email: arlingtonfoley@att.net

/s/ *John Maksimovich*
_____

John Maksimovich /#9950-45
Attorney For Defendant
1946 North Main Street
Crown Point, IN 46307
PH: 219.663.1900
FX: 219.663.1908
Email: criminallaw@johnmaksimovich.com

-3-

819

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | |
| **Plaintiff** | |
| vs | |
| **JUAN BRISENO,** | |
| **Defendant** | **CAUSE NO:   2:11-CR-77** |

## CERTIFICATE OF SERVICE

I hereby certify that on August 9, 2013, I electronically filed:

*MOTION TO PERMIT ATTORNEY  CONDUCTED VOIR DIRE PURSUANT TO PRINCIPLES  REQUIRED BY FURMAN V.  GEORGIA AND ITS PROGENY*

with the Clerk of the Court using the CM/ECF system, which sent notification of such filing to the following:

| David J. Nozick | Bruce Hegyi |
|---|---|
| Assistant United States Attorney | Assistant United States Attorney |

and I hereby certify that I have mailed by United States Postal Service, the document to the following non-CM/ECF participants:

N/A

By:    /s/ *John Maksimovich*

John Maksimovich /#9950-45
Attorney For Defendant
1946 North Main Street
Crown Point, IN 46307
PH: 219.663.1900
FX: 219.663.1908
E-Mail: criminallaw@johnmaksimovich.com

821

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | |
| **Plaintiff** | |
| **vs** | |
| **JUAN BRISENO,** | |
| **Defendant** | **CAUSE NO:   2:11-CR-77** |

**MEMORANDUM IN SUPPORT OF MOTION TO PERMIT**
**ATTORNEY  CONDUCTED VOIR DIRE PURSUANT TO**
**PRINCIPLES  REQUIRED BY *FURMAN V.  GEORGIA* AND ITS PROGENY**

The issue framed before the Court is as follows:

Capital jurors are afforded substantial discretion in  determining  the  appropriate sentence. But they are also expected to adhere to numerous principles intended to ensure that their decision meets the heightened standard of reliability applicable to capital cases. Nevertheless, studies  reveal  that  actual capital jurors routinely fail to understand and  follow  these  Constitutionally necessary  decision making principles. In light of these findings, would  it be appropriate to allow attorneys to participate in  voir dire to assist in ensuring that only qualified  jurors are allowed to serve?

The  United  States Supreme Court has devoted  an  extraordinary amount of its time granting certiorari in death  penalty cases  so  as  to  articulate  precisely what the Constitution requires for a lawful jury death sentence verdict.  In doing so the Court has ruled on a plethora of procedural and  substantive constitutional questions addressed to various provisions of the Fifth, Sixth, Eighth, and Fourteenth  Amendments and has articulated firmly established Constitutional  imperatives  which  must  be  met  for  a  lawful jury-determined sentence of death.

-1-

On the other hand, uncontroverted research reveals that actual capital jurors consistently misconstrue or ignore seven Constitutionally mandated capital decision-making principles. These failures result in seven frequent flaws in the application of the death penalty in actual practice:

1)     Premature decision making;

2)     Failure of jury selection to remove large numbers of death-biased jurors (*Morgan* excludables) as well as the overall biasing effect of the selection process itself;

3)     Failure by jurors to comprehend and/or follow penalty instructions;

4)     Erroneous beliefs amongst jurors that a death sentence is required;

5)     Evasion of responsibility for the punishment decision – believing that responsibility lies elsewhere;

6)     Racial bias; and

7)     Erroneous beliefs amongst jurors that life sentences will not result in lengthy incarcerations.

This Memorandum (1) sets forth the established constitutional standards, (2) examines the questions of whether, in practice, capital juries have been able to meet these standards, and (3) explains why attorney-conducted voir dire is necessary to meet the federal Constitutional guarantees to a fair trial and right to present a defense, the effective assistance of counsel, due process of law, equal protection of the laws, freedom from cruel and unusual punishment, and a reliable verdict and sentence. U.S. Const. amend. V, VI, VIII, and XIV.

In this first section counsel set out the Supreme Court's pronouncements concerning capital decision-making principles. Then the Defendant will ask this Court to examine a substantial body of peer-reviewed, validated, and uncontroverted scientific evidence evaluating

822

the real life understanding of actual capital jurors. Most of this research was conducted and analyzed by social scientists working with the Capital Jury Project. Finally, counsel will compare the CJP's findings to the Supreme Court's pronouncements reviewed in the first section.

## I.      Constitutional Principles Established Since Furman v. Georgia

   A.      Jury's Discretion Must Not Be Arbitrary

   In Furman v. Georgia, the Supreme Court struck down state capital sentencing schemes, which the Court found were being applied arbitrarily. 408 U.S. 238 (1972). The source of the Constitutional flaw was jurors' unguided determination as to who should live and who should not live. This system of unfettered discretion had resulted in a jury decision-making system that was so freakishly wanton, so arbitrary and capricious, and so unreviewable on appeal that the Court found it violated the Cruel and Unusual Punishment Clause of the Eighth Amendment.

   In the three decades since Furman, the Court has made it clear that "vesting of standardless sentencing power in the jury violates the Eighth and Fourteenth Amendments." Woodson v. North Carolina, 428 U.S. 280, 302 (1976). A capital jury's sentencing discretion must be channeled by clear and objective standards which provide specific and detailed guidance for the jury and render the capital sentencing process one that can be rationally reviewed. Godfrey v. Georgia, 446 U.S. 420 (1980); Maynard v. Cartwright, 486 U.S. 356 (1988). In response to Furman, states re-wrote their capital sentencing laws. Three statutory capital sentencing schemes which, on their face, appeared to address the concerns expressed in Furman were upheld by the Court in 1976. See Gregg v. Georgia, 428 U.S. 153 (1976);

-3-

Profitt v. Georgia, 428 U.S. 242  (1976); Jurek v. Texas, 428 U.S. 262 (1976). Each approached

four essential features in common that met the  Constitutional  concerns expressed in Furman:

1)      A rational mechanism for narrowing the class of  death-eligible offenders;

2)      Bifurcated  sentencing  proceedings  separate  from  the guilt determination;

3)      An instructional scheme  that channels  the  sentencing jury discretion with
        clear,  comprehensible, and objective standards and that  allows  for  a  rational
        review  of  the  decision making process; and

4)      Appellate review that is adequate to ensure the  sentencing decision was arrived at
        by means that  comport with what the Constitution requires.

B.      Standards Must Be Clear and Objective

The  Supreme  Court  has  insisted  on  clear  and  objective  standards  to  guide  capital

jurors  and  struck  down  vague  statutory  criteria  which  cannot  be  reviewed  objectively  on

appeal.

- Because it was so vague that it provided no guidance  to the jury, the Supreme
  Court invalidated Georgia's  "outrageously or wantonly vile, horrible, and
  inhuman"  aggravator. Godfrey v. Georgia, 446 U.S. 420 (1980). A  capital jury
  making a sentencing decision on such a  factor was as unconstrained in its
  sentencing choice as the juries under the schemes invalidated by Furman.

- Oklahoma's  "especially  heinous,  atrocious,  or  cruel"  standard was struck
  down on this same basis in Maynard  v. Cartwright, 486 U.S. 356 (1988). The
  Maynard Court reaffirmed that its  Eighth  Amendment  jurisprudence  since
  Furman had  "insisted  that  the  channeling  and  limiting of the sentencer's
  discretion in imposing the  death  penalty  is  a  fundamental  constitutional
  requirement  for  sufficiently  minimizing  the  risk  of  wholly arbitrary and
  capricious action." Id. at 362.

- In Stringer v. Black, 503 U.S. 222 (1992), the Court  concluded that the presence
  of a vague aggravator in  the  weighing  process  created  a  greater  risk  of
  arbitrariness:

      A vague aggravating factor employed for the  purpose  of  determining
      whether  a  defendant  is eligible for the death penalty fails to  channel the

-4-

> sentencer's discretion. A vague aggravating factor used in the weighing process is in a sense worse, for it creates the risk that the jury will treat the defendant as more deserving of the death penalty than he might otherwise be by relying upon the existence of an illusory circumstance ...[T]he use of a vague aggravating factor in the weighing process creates the possibility not only of randomness but also of bias in favor of the death penalty. Id. at 235-36.

Thus, the Court's jurisprudence requires that capital sentencing decisions be made according to criteria that are sufficiently clear to permit ordinary citizens to understand and apply them.

C.      Decision Must Not Be the Result of False or Misleading Information

As a corollary of this requirement Due Process bars a death sentence based on false, inaccurate, or misleading information. In Simmons v. South Carolina, 512 U.S. 154 (1994), the Court vacated a death sentence because the jury that sentenced Simmons to death reasonably may have believed he could be released on parole if he were not sentenced to death. The Court concluded that such a misunderstanding "had the effect of creating a false choice between sentencing petitioner to death and sentencing him to a limited period of incarceration." Id. at 162.

Similarly, in Shafer v. South Carolina, 532 U.S. 36 (2001), the Court reaffirmed this principle. A capital jury's choice to sentence someone to death cannot be premised upon false, misleading, or inaccurate beliefs about parole eligibility precisely because such erroneous beliefs have the effect of forcing the jury to choose death to make sure that the defendant is never released.

D.    Race Can Play No Part In The Decision

Because the uniquely subjective nature of the capital sentencing determination creates room for racial bias to affect the outcome, safeguards are necessary to root out such prejudices.

> In a capital sentencing proceeding before a jury, the jury is called upon to make a "highly subjective, 'unique, individualized judgment regarding the punishment that a particular person deserves.'" ...
>
> Because of the range of discretion entrusted to a jury in a capital sentencing hearing, there is a unique opportunity for racial prejudice to operate but remain undetected ...
>
> The risk of racial prejudice infecting a capital sentencing proceeding is especially serious in light of the complete finality of the death sentence. "The Court, as well as the separate opinions of a majority of the individual Justices, has recognized that the qualitative difference of death from all other punishments requires a correspondingly greater degree of scrutiny of the capital sentencing determination."

Turner v. Murray, 476 U.S. 28, 33-35 (1986).

For this reason, a capital defendant accused of an interracial crime is entitled to have prospective jurors informed of the race of the victim and questioned on the issue of racial bias. Id.

E.    Death Can Never Be The Only Appropriate Penalty

Beginning with Lockett v. Ohio, 438 U.S. 586 (1978), the Court has consistently required that capital jurors be permitted to consider a wide range of mitigating circumstances in deciding whether death is the appropriate sentence. This principle flowed from earlier holdings rejecting capital sentencing schemes that made death mandatory for certain murders. In Roberts v. Louisiana, 431 U.S. 633 (1977), the Court made it clear that death can never be the only appropriate penalty, even where a law enforcement officer is the victim:

-6-

To be sure, the fact that the murder victim was a peace officer performing his regular duties may be regarded as an aggravating circumstance. There is a special interest in affording protection to these public servants who regularly must risk their lives in order to guard the safety of other persons and property. But it is incorrect to suppose that no mitigating circumstances can exist when the victim is a police officer. Circumstances such as the youth of the offender, the absence of any prior conviction, the influence of drugs, alcohol, or extreme emotional disturbance, and even the existence of circumstances which the offender reasonably believed provided a moral justification for his conduct are all examples of mitigating facts which might attend the killing of a peace officer and which are considered relevant in other jurisdictions.

As we emphasized repeatedly in *Stanislaus Roberts* and its companion cases decided last Term, it is essential that the capital-sentencing decision allow for consideration of whatever mitigating circumstances may be relevant to either the particular offender or the particular offense. Because the Louisiana statute does not allow for consideration of particularized mitigating factors, it is unconstitutional. Id. at 636-37.

F.      The Jurors Must Be Able To Consider And Give Effect To Mitigation

The Eighth and Fourteenth Amendments require that the appropriate sentence be based on an individualized determination. Lockett, supra. Just as the statutory scheme cannot preclude consideration of mitigating evidence, so too "the sentencer [may not] refuse to consider, as a matter of law, any relevant mitigating evidence." Eddings v. Oklahoma, 455 U.S. 104, 114 (1982). Simply allowing the mitigating evidence to be admitted is not enough. "The sentencer must also be able to consider and give effect to that evidence in imposing sentence." Penry v. Lynaugh, 492 U.S. 302, 319 (1989); see also, Skipper v. South Carolina, 476 U.S. 1 (1986) ("Evidentiary ruling excluding relevant mitigating evidence of defendant's adjustment to prison setting violates Eddings); Mills v. Maryland, 486 U.S. 367 (1988) (Requirement of unanimous jury finding on mitigating factors created unconstitutional barrier to consideration of relevant mitigating evidence). Only when the capital juror is free to

consider and give effect to all mitigating evidence is there an assurance that there has been an individualized sentencing determination. <u>Lockett</u>, <u>supra</u>.

G. <u>Jurors Must Understand Their Ultimate Responsibility</u>

Capital jurors must not be misled so as to diminish their sense of responsibility for any death sentence imposed. <u>Caldwell v. Mississippi</u>, 472 U.S. 320 (1985). Each juror must understand that he or she, alone, is responsible for his or her sentencing decision. Uncorrected beliefs that "responsibility for any ultimate determination of death will rest with others" create a bias toward a death sentence. <u>Id</u>. at 333.

A jury unconvinced that death is the appropriate punishment "might nevertheless wish to 'send a message' of extreme disapproval for the defendant's acts" and vote for death on the assumption that the ultimate sentencer will correct any error. <u>Id</u>. at 332. A jury led to believe a life sentence cannot be increased to death may vote death because it understands any decision to "'delegate' responsibility" for a sentence of death "can only be effectuated by returning" a death sentence. <u>Id</u>. It is essential that jurors recognize "the truly awesome responsibility of decreeing death for a fellow human [so that they] will act with due regard for the consequences of their decision." <u>McGautha v. California</u>, 402 U.S. 183, 208 (1971).

H. <u>Death-Scrupled Jurors Should Not Be Automatically Disqualified</u>

Jurors with general objections to the death penalty cannot be automatically disqualified from serving on a capital jury. <u>Witherspoon v. Illinois</u>, 391 U.S. 510 (1968). Indeed, a sentence of death returned by such a jury violates the Constitution:

> A State may not entrust the determination of whether a man should live or die to a tribunal organized to return a verdict of death. Specifically, we hold that a sentence of death cannot be carried out if the jury that imposed or recommended it was chosen by

-8-

excluding veniremen for cause simply because they voiced general objections to the death penalty or expressed conscientious or religious scruples against its infliction. No defendant can constitutionally be put to death at the hands of a tribunal so selected ... Whatever else might be said of capital punishment, it is at least clear that its imposition by a hanging jury cannot be squared with the Constitution. Id. at 522, 523.

Only potential jurors whose scruples about the death penalty would "prevent or substantially impair the performance of [their] duties as a juror in accordance with [their] instructions and [their] oath" can be disqualified under federal law. Wainwright v. Witt, 469 U.S. 412, 424 (1985).

I.      Jurors Unwilling To Consider and Give Effect to Mitigation Are Disqualified

Witherspoon's prohibition against a capital jury biased toward death was extended in Morgan v. Illinois, 504 U.S. 719 (1992), to require the disqualification of death-biased jurors. The Morgan Court held that potential jurors who would automatically impose a sentence of death without regard to mitigating circumstances are disqualified from serving as capital jurors. Leaving such jurors on a capital jury violates the capital defendant's Constitutional right to an impartial jury.

> A juror who will automatically vote for the death penalty will fail in good faith to consider the evidence of aggravating and mitigating circumstances as the instructions require him to do. Indeed, because such a juror has already formed an opinion on the merits, the presence or absence of either aggravating or mitigating circumstances is entirely irrelevant to such a juror. Therefore, based on the requirement of impartiality embodied in the Due Process Clause of the Fourteenth Amendment, a capital defendant may challenge for cause any prospective juror who maintains such views. If even one such juror is empaneled and the death sentence is imposed, the State is disentitled to execute the sentence.
>
> * * * * * *
>
> Any juror to whom mitigating factors are likewise irrelevant should be disqualified for cause, for that juror has formed an opinion concerning the merits of the case without basis in the evidence developed at trial. Id. at 729.

-9-

Morgan is significant because the Court made it clear that attorneys must not be precluded from examining potential jurors about their ability to consider the mitigating evidence likely to be presented. Adequate *voir dire* on these subjects "plays a critical function" of insuring that the jury is not skewed toward a verdict of death. Id. at 730. The capital defendant has a constitutional right to an individualized determination of the appropriate sentence, no matter how bad the crime.

In addition, the Morgan Court defined – in the context of a capital case – "impartial" to mean:

> "In essence, the right to jury trial guarantees to the criminally accused a fair trial by a panel of impartial, 'indifferent' jurors. The failure to accord an accused a fair hearing violates even the minimal standards of due process. 'A fair trial in a fair tribunal is a basic requirement of due process.' In re Murchison, 349 U.S. 133, 136 (1955). In the ultimate analysis, only the jury can strip a man of his liberty or his life. In the language of Lord Coke, a juror must be as 'indifferent as he stands unsworne.' Co. Litt. 155b. His verdict must be based upon the evidence developed at the trial. This is true, regardless of the heinousness of the crime charged, the apparent guilt of the offender or the station in life which he occupies. It was so written into our law as early as 1807 by Chief Justice Marshall in 1 Burr's Trial 416 (1807). 'The theory of the law is that a juror who has formed an opinion cannot be impartial.' Reynolds v. United States, 98 U.S. 145, 155 (1879)."

> \* \* \* \* \* \*

> Thus it is that our decisions dealing with capital sentencing juries and presenting issues most analogous to that which we decide here today, [citations omitted], have relied on the strictures dictated by the Sixth and Fourteenth Amendments to ensure the impartiality of any jury that will undertake capital sentencing. Id. at 727-28, (emphasis added).

The holdings in Witt and Morgan teach that potential capital jurors must be indifferent on the question of the appropriate penalty in the case before that juror. The real question for potential jurors regarding their views about capital punishment is

-10-

whether those views would prevent or impair the juror's ability to return a verdict of life imprisonment without the possibility of release or death in the case before the juror, not a hypothetical case. If a fact or circumstance specific to the case would cause the potential juror to invariably vote for death (or invariably vote against life without the possibility of release) regardless of the strength of the mitigating evidence the defense might present, then the juror's partiality is impaired, and he should be excused for cause. For these reasons, the parties in a capital case must be permitted to probe juror attitudes about the significant facts in the specific case.

## II.     Social Science And The Law In The Era Before The Capital Jury Project

Social scientists have been conducting scientific-methodbased, verifiable, research into the twin questions of how juries go about making their decisions and what impact the capital voir dire screening process has on the non-excluded group's decision-making dynamic for forty years. Since Witherspoon, the Supreme Court has periodically been presented with studies by litigants who hoped to shed some objective, experiential, outside-the-courtroom, fact-based light on whatever particular legal issue was before the court. In the past, the Court has rejected these studies. Initially the Court rejected this evidence because the field of study was too new, and the data was insufficient to support the relief being requested. See Witherspoon v. Illinois, 391 U.S. 510, 517 (1968) (The three studies offered to support claim that death-qualified juries were guilt-prone juries rejected as "too tentative and fragmentary" to support *per se* Constitutional ruling). However, as the field gained acceptance, it was rejected by the Court because the research did not address the question of how "actual jurors sworn under oath apply the law to facts of an actual case involving the fate of an

actual capital defendant." Lockhart v. McCree, 476 U.S. 162, 171 (1986). In essence, the Court said data from artificial jurors in an artificial setting were unpersuasive. See McCleskey v. Kemp, 481 U.S. 279 (1987) (Studies showing race influences capital decision-making do not answer question of how jurors eligible for service in McCleskey's case are likely to approach issues when sworn).

The clear message from Lockhart and McCleskey was that the Court would reject studies unless the research removed itself from the experimental and addressed the actual. To have persuasive force, social science research on capital juries needed to interview actual jurors from actual capital trials.

Responding to the Court's concern, studies based on indepth interviews of actual capital jurors were conducted in Florida, California and Oregon. These studies revealed that capital jurors were not following the Constitutional guidelines established by the Supreme Court's post-Furman jurisprudence:

> In Florida, Geimer and Amsterdam (1987-88) interviewed some 54 jurors from 10 trials, five in which the jurors voted for death, and five in which they voted for life. They asked jurors to explain the reasons for their life or death sentencing decisions and to evaluate the role or influence of Florida's statutory aggravating and mitigating considerations on their decisions. Two out of three jurors (65%) indicated that Florida's statutory aggravating and mitigating guidelines had "little or no influence" on their sentencing decisions.
>
> From jurors' explanations of how they did make their decisions, Geimer and Amsterdam identified what they called the "operative factors" that actually shaped jurors' sentencing decisions. While most of the jurors who voted for death (64%) cited the "manner of the killing" as an operative factor, more than half (54%) gave the impermissible "presumption of death" as a factor, the constitutionally forbidden belief that the death penalty was the correct or appropriate punishment, unless they could be persuaded otherwise (at 41). As one juror bluntly put it, "[o]f course he got death. That's what we were there for" (at 45-46). Next in line as influential operative factors in the death decision were "defendant's demeanor" and "defense attorney performance"

-12-

(32% and 21% of the jurors in death cases, respectively). The former was illustrated by a juror's comment that the "[defendant] seemed callous, indifferent. Nobody saw a heartbeat of regret. He didn't move a muscle except for crossing his legs. By the time of the penalty phase, the jury was not inclined to feel sorry for him. Minds were already colored" (at 52).

Likewise, Geimer and Amsterdam identified operative factors among the jurors who voted for life. Most common (65%) was "lingering doubt" about the capital murder verdict. An example of this explanation was "we found him guilty, there wasn't anybody else to put it on....But we didn't want to execute him because some evidence might come out in the future about the other guy" (at 29). Concerning the defense attorney's performance, a juror said, "I shouldn't say it, but I feel it in my heart and always have, his lawyer left a lot to be desired. I realize he was hired by the state to do a job and probably not paid much... I didn't mention it at the jury room but I think he was not determined enough. He didn't try enough and that affected the jury" (at 53).

In California, Sontag (1990) interviewed 30 jurors drawn from one death and one life case in each of five counties throughout the state. In Oregon, Costanzo (1990) interviewed 27 jurors from five death and four life cases from a single urban county responsible for the majority of Oregon's capital trials. The findings of these two studies are reviewed and contrasted in Haney, Sontag, and Costanzo (1994).

Under California's statute, which lists "factors in aggravation and factors in mitigation" without specifying whether those factors are to be considered as aggravating or mitigating, and without indicating how the factors are to be weighed in deciding on the defendant's punishment, juries seemed quite confused about how to make the sentencing decision. Sontag found that California juries deliberated with much broader and less coherent agendas, and took approximately three times longer to reach a sentencing verdict than did the Oregon juries studied by Costanzo. Many California jurors tended to search for a key factor that would make the decision clear-cut. They typically narrowed the decision by focusing almost exclusively on the crime and on issues which had already come up in the guilt phase of the trial. Haney et al.(1994) reported that "fully one-third of our sample refocused the penalty phase inquiry entirely on the nature of the crime itself, and did so in a way that amounted to a presumption in favor of death" (at 162) - quite comparable to what Geimer and Amsterdam identified as the most common operative factor among Florida jurors who voted for death.

This tendency to reduce the complex question of life or death to one decisive point among California jurors is illustrated in the comments of a few jurors. For example, one death-jury member recalled the nature of the penalty decision as a matter of determining premeditation: "[A]ccording to the instructions, the main thing was, was it premeditated? Did he deliberately, did he intend to kill these

-13-

people? If so, then we should give him the death penalty. If not, then we should give life without the possibility of parole" (at 162). Another juror confused the penalty decision with the legal standard of insanity: "I think the bottom line was, at the time he was committing [the crimes], did he know what he was doing? Did he know right from wrong? That's the whole thing" (at 162).

Oregon's directed statute, modeled on that of Texas, made the life or death sentence rest heavily upon jurors' answers to a single question: "whether there is a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society." Oregon juries, compared to those in California, appeared more coherent in their decision-making but were much more constricted in the range of information they considered. The directed statutes used in Oregon and Texas have been challenged for discouraging the consideration of mitigating evidence. In this connection, Costanzo reported that many of the jurors' comments underscored the narrowing effect of the directed statute on the range of issues they considered: "We just had to stick to those four [sic] basic criteria. We couldn't deviate with this mitigating circumstance, or testimony of people that had spoken on his behalf or against him. We just had to go by those guidelines that they give you when you make that decision" (at 165-166).

Oregon jurors relied upon the sentencing instructions not only to narrow the scope of the evidence they considered but also to minimize their responsibility for the outcome of their deliberations: "We are not sentencing him to death -- we are just answering these questions. We talked about it. We are just answering these questions--to get a clear mind so as not to feel guilty that I sentenced him to die. That's how the law has it--just answer these questions" (at 161-167). Oregon jurors also generally underestimated how long convicted defendants who were not given the death penalty would spend in prison before returning to society, and fully one-half of the Oregon jurors did not believe that the death penalty would actually be carried out.

Concerning both the California and Oregon studies, the investigators observed that "there was a tendency among jurors from both samples to shift or abdicate responsibility for the ultimate decision--to the law, to the judge, or to the legal instructions-rather than to grapple personally with the life and death consequences of the verdicts they were called upon to render" (Haney et al. 1994:160). In addition, the researchers concluded: "Capital penalty instructions fail to acknowledge (let alone clearly frame or carefully guide) the inherently moral nature of the task that they direct jurors to undertake. They seem to imply that death sentencing involves nothing more than simple accounting, an adding up of the pluses and minuses on the balance sheet of someone's life (at 172)."

These studies raised serious questions about the operation of post-*Furman* capital statutes. Jurors appear to understand sentencing instructions poorly,

-14-

834

especially their obligation to give effect to mitigation. Many appear to presume that death is the appropriate punishment for capital offenses without regard for mitigation. They seem to focus narrowly on a single issue to simplify decision making and to reach consensus on punishment. In explaining the decision to impose the death penalty, they invoke guilt related considerations as if the sentencing process was merely a replay of the guilt decision. These soundings were <u>sufficiently ominous to justify a more extensive investigation of the capital sentencing process</u>, one that would take a more systematic look into the black box of jury decision making.

<u>The Capital Sentencing Decision: Guided Discretion, Reasoned Moral Judgment, Or Legal Fiction</u>, (Chapter 14 in Acker, Bohm, Lanier, <u>America's Experiment With Capital Punishment</u> (Carolina Academic Press, 2d ed., 2003), at 8-11 (emphasis added.).

The Constitutional failures of the post-<u>Furman</u> capital sentencing schemes are further substantiated by studies of the Capital Jury Project. The CJP was created in 1990, with funding from the Law and Social Sciences Program of the National Science Foundation (grant NSF SES-9013252). The CJP researched the decision-making of actual capital jurors. The CJP's interviews chronicle the jurors' experiences and decision-making over the course of the trial, identify points at which various influences come into play, and reveal the ways in which jurors reach their final sentencing decisions.

The CJP has conducted studies in 14 states (including North Carolina) with similar results. States were chosen for the CJP research to reflect the principal variations in guided discretion capital statutes. Within each state, 20 to 30 capital trials – representing both life and death sentencing outcomes – were studied. From each trial, a target sample of four jurors was systematically selected for in-depth personal interviews. To date the CJP has interviewed 1198 jurors from 353 capital trials in 14 states. These 14 states are responsible for 76.1% of the 3,718

persons on death row as of June 1, 2002, and for 79.0% of the 795 persons who were executed between 1977 and September 1, 2002.

A number of articles summarizing the findings of these studies are attached hereto. Data collected and analyzed by CJP researchers, played a substantial role in <u>Simmons v. South Carolina</u>, <u>supra</u>. Since 1993, some 30 articles presenting and discussing the findings of the CJP have been published in scholarly journals.

## III. How Real Capital Jurors Actually Make Their Decisions

The CJP data reveal profound discrepancies between what the federal Constitution requires and how actual capital jurors make their decisions. Moreover, these discrepancies exist on every measure imposed by the United States Constitution – both in terms of what jurors are required to do, and in terms of what jurors are prohibited from doing. The data summarized in this section of the motion establish the following:

1) Rampant premature decision-making which renders the penalty phase meaningless;

2) The failure of jury selection to remove large numbers of death-biased jurors, and the overall biasing effect of the selection process itself;

3) The pervasive failure of death-qualified jurors in actual cases to comprehend and/or follow penalty instructions;

4) The widespread belief amongst jurors that sat on capital trials that death is required;

5) Wholesale evasion of responsibility for the punishment decision;

6) The continuing influence of race discrimination on juror decision-making; and

7) Significant underestimation of the alternative to death.

-16-

A.      Premature decision-making

Nearly half (49.2%) of all capital jurors make their sentencing decision before the penalty phase begins. These jurors feel strongly about their decision, and they do not waver from it over the course of the trial. Premature decision-making occurs in every state studied by the CJP Thus, bifurcation and instructions have little effect in guiding capital jurors on their sentencing decision:

> Requirements such as bifurcating the trial, allowing presentation of mitigation evidence during the sentencing phase, and the use of jury instructions aimed at guiding sentencing discretion are of little use if jurors have already decided what the penalty should be. Interviews with capital jurors throughout the country show that jurors have often decided what the penalty should be by the end of the guilt phase, before they have heard the penalty phase evidence or received the instructions on how they are supposed to make the punishment decision.

Approximately 30% of all capital jurors made the decision that the defendant should receive the death penalty while evidence was still being introduced at the guilt-phase of the trial.

| Table 1: | Percentage of Capital Jurors Taking Each Stand Punishment Before Sentencing Stage of the Trial in 13 States | | | |
|---|---|---|---|---|
| States | Death | Life | Undecided | No. of jurors |
| Alabama | 21.2 | 32.7 | 46.2 | 52 |
| California | 26.1 | 16.2 | 57.7 | 142 |
| Florida | 24.8 | 23.1 | 52.1 | 117 |
| Georgia | 31.8 | 28.8 | 39.4 | 66 |
| Indiana | 31.3 | 17.7 | 51.0 | 96 |
| Kentucky | 34.3 | 23.1 | 42.6 | 108 |

-17-

| Missouri | 28.8 | 16.9 | 54.2 | 59 |
|---|---|---|---|---|
| North Carolina | 29.2 | 13.9 | 56.9 | 72 |
| Pennsylvania | 33.8 | 18.9 | 47.3 | 74 |
| South Carolina | 33.3 | 14.4 | 52.3 | 111 |
| Tennessee | 34.8 | 13.0 | 52.2 | 46 |
| Texas | 37.5 | 10.8 | 51.7 | 120 |
| Virginia | 17.8 | 31.1 | 51.1 | 45 |
| All States | 30.3% | 18.9% | 50.8% | 1135 |

The evidence establishes that most early pro-death jurors do not even wait for guilt-phase deliberations to begin before deciding the penalty. Pro-death jurors prejudge the penalty decision during the guilt phase, long before they have even had the opportunity to discuss it with any of their fellow jurors or heard any of the capital defendant's mitigating evidence. Many of these early pro-death jurors cite convincing proof of guilt as the reason for their early pro-death stands:

FL: When I was convinced he was guilty - when we were going through the hard evidence.

NC: After the pathologist report, after I was convinced he was the one who did it.

FL: When I knew in my heart that he was guilty ... This was after hearing the forensic evidence from prosecution.

TX: Uh, before we actually voted, before we went in there. I was pretty sure, I mean, I was absolutely sure, because I truly believe in what the Bible says and I think I told them this when they chose me.

For some jurors, it was the grotesque or gruesome nature of the crime that convinced them that death should be the punishment:

-18-

KY: Once guilt was established that (the defendant) had committed this gruesome crime. I had no problem at all determining what punishment was applicable.

MO: Um, I'd say probably right when the prosecutor made the statement. She was stabbed twenty-two times.

SC: When they started to talk about the brutality of the crime.

Many jurors stressed the role of physical evidence, especially photographs or videotapes, as critical in their punishment decisions:

AL: When the D.A. handed us the pictures.

CA: Video tape portion of the trial. (When the jury viewed a video tape of the killing that a store monitoring system had recorded.)

KY: After I saw pictures and hair and semen analysis.

MO: (After) looking at the pictures and seeing you know, the crime, the autopsy photos.

FL: During the evidence - when (I) saw the pictures of the victim.

MO: After I knew, when they showed us the photographs of (the victim) and how he had been murdered. I knew (the defendant) had done it by the videotape but I didn't know how severe and how gruesome it was.

In a few instances they gave vivid accounts of how photo or video evidence had affected them:

NC: During the trial. I can tell you ... when we saw pictures of this woman's body, burned .... Where her feet were burned off .... Horrible, horrible pictures of this. That convinced me.

CA: Just sitting there watching (a videotape of the killing from a store monitoring system). I've seen a lot (of) stuff, but I never .... Even Arnold Schwarzenegger movies didn't affect me like that, you know? This wasn't make-believe, watching that videotape. The videotape was very powerful.

-19-

Thus, many jurors attribute their early stands for death to unquestionable proof of guilt, heinous aspects of the crime, and physical evidence, especially in photographs and audio or video tape.

Early pro-death jurors found the fact of guilt and the nature of the crime compelling. They believe death is called for when the crime is egregious, the evidence is explicit, or the defendant appears unrepentant. Heinousness of the crime and the dangerousness of the defendant may be relevant to the punishment decision; however, Lockett and its progeny mandate that a decision should not be made before jurors hear mitigation.

The CJP research found that 97.4% of early pro-death jurors "felt strongly about their early pro-death stance," with 70.4% indicating they were "absolutely convinced" and 27% indicating they were "pretty sure" about their decision. Those pro-death jurors consistently stuck to their premature decision.

The CJP data established that in real world capital cases jurors fail to fulfill one of the bedrock principles of capital jurisprudence – that the sentencer must be able to both hear and give effect to mitigation.

> Presenting mitigating evidence during the penalty phase cannot be very effective when so many jurors declare that they were already "absolutely convinced" that the defendant deserved death before they heard any mitigation evidence. Given the human proclivity to interpret information in a way that is consistent with what one already believes,it is not surprising that most jurors never waver from their premature stance.

B.      The failure of jury selection to remove large numbers of death-biased jurors and the overall biasing effect of the selection process

To understand why so many jurors prematurely decide to impose death, the CJP researchers investigated the possibility that jury selection procedures, even when conducted

-20-

pursuant to the <u>Witt</u> or <u>Morgan</u> standards, fail to identify jurors for whom death is the only appropriate penalty for the cases on which they served. The jurors were presented with the following question/matrix:

> Do you feel that the death penalty is the only acceptable punishment, an unacceptable punishment, or sometimes acceptable as punishment for the following crimes? Murder by someone previously convicted of murder; A planned, premeditated murder; Murders in which more than one victim is killed; Killing of a police officer or prison guard; Murder by a drug dealer; and, A killing that occurs during another crime.

| Table 2 | PERCENTAGES OF JURORS CONSIDERING DEATH THE ONLY ACCEPTABLE PUNISHMENT FOR SIX TYPES OF MURDER BY STATE | | | | | | |
|---|---|---|---|---|---|---|---|
| State | Prior murder Conviction | Planned premeditated murder | Murder with multiple victims | Killing police/ prison guard | Murder by drug dealer | Murder during another crime | N |
| Alabama | 66.7% | 54.4% | 57.9% | 37.5% | 46.4% | 36.8% | 56 |
| California | 58.6% | 41.4% | 41.1% | 41.4% | 33.6% | 17.8% | 151 |
| Florida | 77.6% | 64.1% | 62.1% | 51.3% | 52.6% | 19.7% | 115 |
| Georgia | 70.8% | 54.8% | 46.6% | 51.4% | 47.2% | 23.6% | 72 |
| Indiana | 74.7% | 54.5% | 55.6% | 44.4% | 52.5% | 23.2% | 99 |
| Kentucky | 71.2% | 56.7% | 50.5% | 46.6% | 48.5% | 18.1% | 103 |
| Missouri | 75.4% | 54.1% | 52.5% | 45.9% | 38.3% | 19.7% | 61 |
| N.Carolina | 73.8% | 68.8% | 55.0% | 58.8% | 45.0% | 21.5% | 79 |
| Pennsylvania | 71.8% | 65.4% | 62.8% | 55.1% | 47.4% | 28.2% | 78 |
| S.Carolina | 76.3% | 61.4% | 54.4% | 43.0% | 49.1% | 26.5% | 113 |
| Tennessee | 78.3% | 67.4% | 58.7% | 54.3% | 43.5% | 30.4% | 46 |
| Texas | 76.9% | 57.3% | 59.5% | 58.6% | 48.7% | 35.3% | 116 |
| Virginia | 55.6% | 46.7% | 40.0% | 48.9% | 42.2% | 15.6% | 45 |
| All States | 71.6% | 57.1% | 53.7% | 48.9% | 46.2% | 24.2% | 1164 |

841

As the national data from the table above indicate, the CJP survey results documented profound deviations between what capital jurisprudence requires and what actual capital jurors believe. Many jurors – and in some instances, a large majority of jurors – who had been screened as capital jurors under <u>Morgan</u> standards, and who decided an actual capital case, approached this task believing the death penalty was the only appropriate penalty for a variety of murders. In effect, the mandatory death penalty laws banned by the Supreme Court under <u>Woodson</u> are resurrected by jurors despite the procedural safeguards of <u>Morgan</u> and discretionary statutory schemes on which jurors were instructed.

> Over half of the CJP jurors indicated that death was the only punishment they considered acceptable for murder committed by someone previously convicted of murder (71.6%); a planned or premeditated murder (57.1%); or a murder in which more than one victim was killed (53.7%). Close to half could accept only death as punishment for the killing of a police officer or prison guard (48.9%), or a murder committed by a drug dealer (46.2%). A quarter of the jurors thought only death was acceptable as punishment for a killing during another crime (24.2%), i.e., a "felony murder." Nearly three out of ten jurors (29.1%) saw death as the only acceptable punishment for all of these crimes.

In addition to identifying large numbers of jurors who enter the jury box with their own personal mandatory death penalty legislation to guide them – as opposed to the court's instructions on the discretionary statutory schemes – researchers identified a direct relationship between taking a strong premature stance for death and being identified as a "death is the only appropriate sentence" juror.

A juror who believes that death is the only appropriate penalty for a murder committed during a carjacking or kidnapping, murdering a child or for murdering more than one person, is invariably going to decide that death is the <u>only</u> appropriate sentence once they determine guilt. Thus, there is no individualized determination of sentence as the

<div align="center">-22-</div>

Constitution requires. For these jurors and as expressed by a number of these jurors themselves, the penalty phase was nothing but a complete waste of time.

A juror who believes that death is the only acceptable punishment for certain categories of murder can hardly give meaningful consideration to evidence in mitigation. Such a juror "will fail in good faith to consider the evidence of aggravating and mitigating circumstances as the instructions require him to do. Indeed, because such a juror has already formed an opinion on the merits, the presence or absence of either aggravating or mitigating circumstances is entirely irrelevant to such a juror." Morgan, at 729. It is for that reason that the Morgan Court went on to say that "[i]f even one such juror is empaneled and the death sentence is imposed, the State is disentitled to execute the sentence." Id.

The process of capital jury selection itself produces the worst possible group of jurors precisely when a criminal defendant should have a right to the most qualified jurors. The studies demonstrate that the process negatively impacts the guilt/innocence phase of the capital trial in several ways.

First, by questioning potential jurors extensively about their attitudes about the death penalty, substantial numbers of jurors believe both that the defendant must be guilty, and that apparently they are going to be asked to sentence him to death. After all, if the judge and the lawyers were not operating on the assumption he was guilty and that death was the likely sentence, then why are they spending so much time talking about what his punishment should be? Attempts to explain away this cart-before-the-horse approach are fruitless. Many jurors believe that the sub-text of a capital trial voir dire is not about whether the defendant committed the murder; it is about what punishment he should receive. Moreover, many jurors, after seeing

-23-

which jurors stay and which leave, believe that if selected, it is understood that they <u>will</u> find the defendant guilty, and that they <u>will</u> sentence him to death.

In addition to the bias toward guilty verdicts and death sentences, death-qualifying voir dire results in the least representative jury criminal defendants face. Early studies which have been validated by the CJP established rather obvious phenomena. People's attitudes toward capital punishment do not exist in a vacuum. One's attitudes about this very controversial topic, over which Americans have very divergent views, are strongly associated with a whole constellation of attitudes about the criminal justice system. These studies established, for instance, that people who support the death penalty – and who not only support it, but are able to tell the lawyers and the judge in the courtroom that they would be able to impose it – hold a number of other views about the criminal justice system that work strongly against the capital defendant:

- The data demonstrate that these jurors, much more strongly than non-death-qualified jurors, believe that if a defendant does not testify in his or her own defense, the failure to do so is affirmative proof of guilt.

- Death-qualified jurors do not believe in the presumption of innocence. They believe much more strongly that "where there is smoke, there is fire." They are extremely distrustful of defense lawyers and view everything they have to say with a great deal of skepticism. On the other hand, they are extremely receptive to the prosecution and its witnesses – especially police officers – and believe them.

- They do not believe in Due Process guarantees, such as requiring the prosecution to bear the burden of proof beyond a reasonable doubt.

- They are highly suspicious of experts called by the defense. In short, death qualified jurors are the jurors least representative of the community as a whole and are the jurors least likely to give a criminal defendant the benefit of the doubt.

-24-

844

C.    Capital jurors fail to comprehend and/or follow penalty instructions

The CJP research demonstrates that capital jurors misconstrue and/or disregard the instructions given in capital trials. Capital jurors fail to understand that they are required to consider mitigation, even if it does not excuse or lessen the capital defendant's culpability for the murder. Thus, the commands of Lockett are being ignored.

For example, over half of the capital jurors (56.4%) studied in California wrongly believed that the jury had to be unanimous about individual mitigating factors before they were allowed to consider them. Moreover, a third (37.6%) believed mitigating factors had to have been proven to them beyond a reasonable doubt before they could be considered.

The reasons for this massive misunderstanding of the rules which are supposed to guide and channel capital jury decision making is the lack of familiarity with the capital sentencing process – i.e., the total absence of any culturally normative experience with the unique kind of decision capital jurors are called upon to make.

Americans are very familiar with a jury's role as factfinder. This role is a longstanding part of our culture. On the other hand, Americans are not familiar with the role a capital jury has in making the decision as to whether the capitally accused should live or die.

American jurors are accustomed to finding facts such as whether a weapon was used, whether a taking of property was a theft, or whether a driver was legally intoxicated. They are unaccustomed to deciding what weight to give a capital defendant's dysfunctional childhood, serious psychiatric disorder, or brain damage in a capital

-25-

sentencing. Capital jurors have to resort to their own rules because terms like mitigation and aggravation have no meaning to them:

> [CA juror:] The first thing we asked for after the instruction was, could the judge define mitigating and aggravating circumstances. Because the different verdicts that we could come up with depended on if mitigating outweighed aggravating, or if aggravating outweighed mitigating, or all of that. So we wanted to make sure. I said: "I don't know that I exactly understand what it means." And then everybody else said, "No, neither do I," or "I can't give you a definition." So we decided we should ask the judge. Well, the judge wrote back and said, "You have to glean it from the instructions."

> [CA juror:] I don't think anybody liked using those terms because when we did use them, we got confused ... They were just confusing and I had never really used them before in anything. So, yeah, they sit there and throw these stupid words at you and I'm like, "Well, what do they mean?" I get so confused "cause they sound the same." I'm thinking, "Now which one was that again?" you know. And it totally confused me.

> The net effect of these misunderstandings is that capital jurors are skewed toward a

sentence of death.

> The misunderstandings reflected in these incorrect responses on the questions regarding how to handle mitigating and aggravating evidence all make a death sentence more likely. It is more difficult to find mitigating evidence than the law contemplates when jurors think they are limited to enumerated factors, must be unanimous, and need to be satisfied beyond a reasonable doubt. The CJP data show that nearly half (44.6%) of the jurors failed to understand the constitutional mandate that they be allowed to consider any mitigating evidence. Two-thirds (66.5%) failed to realize they did not have to be unanimous on findings of mitigation. Nearly half (49.2%) of the jurors incorrectly thought they had to be convinced beyond a reasonable doubt on findings of mitigation ... The constitutional mandate of <u>Gregg</u> and companion cases to guide jurors' exercise of sentencing discretion is not being satisfied when jurors do not understand the guidance.

| Table 3 | Percentages of Jurors Failing to Understand Guidelines for Considering Aggravating and Mitigating Evidence | | | | |
|---|---|---|---|---|---|
| JURORS WHO <u>FAILED TO UNDERSTAND</u> THAT THEY . . . | | | | | |
| State | Could consider any mitigating evidence | Need not be unanimous on mitigating evidence | Need not find mitigation beyond a reasonable doubt | Must find aggravation beyond reasonable doubt | N* |
| Alabama | 54.7% | 55.8% | 53.8% | 40.0% | 52 |
| California | 24.2% | 56.4% | 37.6% | 41.7% | 149 |
| Florida | 49.6% | 36.8% | 48.7% | 27.4% | 117 |
| Georgia | 40.5% | 89.0% | 62.2% | 21.6% | 73 |
| Indiana | 52.6% | 71.4% | 58.2% | 26.8% | 97 |
| Kentucky | 45.9% | 83.5% | 61.8% | 15.6% | 109 |
| Missouri | 36.8% | 65.5% | 34.5% | 48.3% | 57 |
| N. Carolina | 38.7% | 51.2% | 43.0% | 30.0% | 79 |
| Pennsylvania | 58.7% | 68.0% | 32.0% | 41.9% | 74 |
| S. Carolina | 51.8% | 78.9% | 48.7% | 21.9% | 113 |
| Tennessee | 41.3% | 71.7% | 46.7% | 20.5% | 44 |
| Texas | 39.6% | 72.9% | 66.0% | 18.7% | 47* |
| Virginia | 53.3% | 77.3% | 51.2% | 40.0% | 43* |
| All States | 44.6% | 66.5% | 49.2% | 29.9% | 1185 |

*The number of subjects answering each question varied slightly, and the number (N) for each state is the lowest number of subjects answering any of the questions.
** The number of Texas jurors is reduced in this table because these two questions were replaced by others while the interviewing in Texas was underway.

D.　Jurors believe they are required to return a verdict of death

In no state are jurors free of the misconception that the law requires the death penalty if the evidence establishes that the murder was "heinous, vile or depraved" or the defendant would be "dangerous in the future." CJP data show that substantial percentages of jurors "erroneously believe that death is required if certain aggravators are proved beyond a reasonable doubt." Nearly half of jurors, 44.9% of Texas jurors and 43.9% of all jurors interviewed from all other states, erroneously believed that they were required by law to

-27-

impose death as a sentence if the conduct of the defendant was "heinous, vile, or depraved." Furthermore, 68.4% of Texas jurors and 36.9% of all other jurors interviewed believed that they were required by law to vote in favor of a death sentence if the evidence proved that the defendant would be dangerous in the future.

| Table 4 | Percentages of Jurors Thinking Law Required Death if Defendant's Conduct was "Heinous, Vile or Depraved," or Defendant "Would be Dangerous" in Future, by State | | |
|---|---|---|---|
| State | DEATH REQUIRED IF DEFENDANT'S CONDUCT IS HEINOUS, VILE OR DEPRAVED | DEATH REQUIRED IF DEFENDANT WOULD BE DANGEROUS IN FUTURE | N* |
| Alabama | 56.3% | 52.1% | 48 |
| California | 29.5% | 20.4% | 146 |
| Florida | 36.3% | 25.2% | 111 |
| Georgia | 51.4% | 30.1% | 72 |
| Indiana | 34.4% | 36.6% | 93 |
| Kentucky | 42.7% | 42.2% | 109 |
| Missouri | 48.3% | 29.3% | 58 |
| N. Carolina | 67.1% | 47.4% | 76 |
| Pennsylvania | 56.9% | 37.0% | 73 |
| S. Carolina | 31.8% | 28.2% | 110 |
| Tennessee | 58.3% | 39.6% | 48 |
| Texas | 44.9% | 68.4% | 117 |
| Virginia | 53.5% | 40.9% | 43 |
| All States | 43.9% | 36.9% | 1136 |
| * The number of subjects answering each question varied slightly, and the number (N) for each state is the lowest number of subjects answering any of the questions. | | | |

These mistaken beliefs – and others which will be explored at the hearing on the instant motion – result in a jury which is much more likely to return a verdict of death.

-28-

E.      Evasion of responsibility for the punishment decision

As the Court explained in Caldwell v. Mississippi, "[b]elief in the truth of the assumption that sentencers treat their power to determine the appropriateness of death as an 'awesome responsibility' has allowed this Court to view sentencer discretion as consistent with – and indeed as indispensable to – the Eighth Amendment's 'need for reliability in the determination that death is the appropriate punishment in a specific case.'" CJP data demonstrate that this assumption is false.

Almost no capital jurors view themselves as most responsible for the decision they make. They place primary responsibility elsewhere:

> The vast majority of jurors did not see themselves as most responsible for the sentence. Over 80% assigned primary responsibility to the defendant or the law, with 49.3% indicating the defendant and 32.85% indicating the law was most responsible. In contrast, only 5.5% thought the individual juror was most responsible, and only 8.9% believed the jury as a whole was most responsible ...

Death penalty statutes are not effectively guiding discretion when jurors misunderstand the instructions, mistakenly believe death is required by law, and do not appreciate their responsibility for the sentence imposed. The CJP finding that a large majority of jurors believe the law is "primarily responsible for the sentence is particularly ironic considering their lack of understanding of the law." Ex. A, at 75.

F.      The continuing influence of race on juror decision making

CJP data demonstrate that in all 14 states, the process of capital jury decision-making is influenced, not only by the race of the defendant and the race of the victim, but by both the racial composition of the jury and the race of the individual jurors. CJP data demonstrate that

-29-

Case: 15-2347   Document: 35   Filed: 07/27/2016   Pages: 4186

along gender lines, the outcome of a capital jury's verdict is greatly dependent on how many white males make it onto the jury, and whether any African-American males serve as jurors.

The data demonstrate, for instance, that white male capital jurors (generally speaking) do not experience lingering doubt about the defendant's guilt. They see the defendant as remorseless and are unable to put themselves in either the defendant's shoes or his family's shoes. They believe that the defendant will be dangerous in the future unless executed.

On the other hand, African-American male capital jurors (generally speaking) frequently have at least some doubts about the evidence of guilt. They are able to see the defendant as someone who is sorry for what he has done. They are able to put themselves in the defendant's situation and understand what it must be like for the defendant's family. And, they do not see the defendant as someone who will hurt other people in the future.

It would be difficult to imagine a more arbitrary circumstance than having to depend on the racial composition of the jury for a life sentence. Nevertheless, the data demonstrate that the outcome of a capital case is greatly dependent on the race of the individual jurors and on the overall racial composition of the jury as a whole.

As applied in the real world of capital trials, actual capital jurors are frequently making sentencing decisions in a manner inconsistent with federal Constitutional mandates. Attorney-conducted voir dire of sufficient depth and scope is necessary in order to learn about the prospective juror's views about the sentencing decision-making process he or she will be called upon to follow in the event of a sentencing trial. In this manner the parties and Court can evaluate the prospective juror's interest and ability in complying with the principles that will ensure any sentencing hearing will meet Constitutional requirements. This process is of critical

-30-

importance to ensure the Federal Death Penalty Act, 18 U.S.C. ¤¤ 3591-98, sentencing scheme

does not function in an arbitrary and standardless manner within the meaning of <u>Furman</u>.

**WHEREFORE**, for the foregoing reasons and any others that may appear to this Court

after a hearing, counsel for Defendant respectfully request this Court enter an order permitting

attorney conducted voir dire.

DATED THIS 9TH DAY OF AUGUST, 2013.

**Respectfully submitted:**

/s/ *Arlington Foley*
_____

Arlington Foley /#6905-45
Attorney For Defendant
1942 North Main Street
Crown Point, IN 46307
PH: 219.661.1200
FX: 219.661.1205
Email: arlingtonfoley@att.net

/s/ *John Maksimovich*
_____

John Maksimovich /#9950-45
Attorney For Defendant
1946 North Main Street
Crown Point, IN 46307
PH: 219.663.1900
FX: 219.663.1908
Email: criminallaw@johnmaksimovich.com

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

UNITED STATES OF AMERICA,

        **Plaintiff**

vs

JUAN BRISENO,

        **Defendant**                **CAUSE NO:   2:11-CR-77**

**CERTIFICATE OF SERVICE**

I hereby certify that on August 9, 2013, I electronically filed:

*Memorandum in Support of Motion to Permit Attorney  Conducted Voir Dire*
*Pursuant to Principles Required by Furman V.  Georgia and its Progeny*

with the Clerk of the Court using the CM/ECF system, which sent notification of such filing to the following:

David J. Nozick                             Bruce Hegyi
Assistant United States Attorney         Assistant United States Attorney

and I hereby certify that I have mailed by United States Postal Service, the document to the following non-CM/ECF participants:

      N/A

By:   */s/ John Maksimovich*

        John Maksimovich /#9950-45
        Attorney For Defendant
        1946 North Main Street
        Crown Point, IN 46307
        PH: 219.663.1900
        FX: 219.663.1908
        E-Mail: criminallaw@johnmaksimovich.com

-32-

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | 2:11 CR 77 PPS |
| | ) | |
| JUAN BRISENO et al. | ) | |

**GOVERNMENT'S OMNIBUS OPPOSITION TO
MOTIONS TO SEVER OF DEFENDANTS JUAN BRISENO, RICHARD REYES,
SALVADOR CHAVEZ, RICHARD REYES, JASON MEDINA, AND EDWARD SERNA**

**TO THE HONORABLE COURT:**

COMES NOW, the United States of America, by and through the undersigned counsel, and opposes the motions of defendants Juan Briseno ("Mr. Briseno") [Document #610], Richard Reyes ("Mr. Reyes") [Document #606], Salvador Chavez ("Mr. Chavez") [Document #608], and the joint motion of Jason Medina ("Mr. Medina") and Edward Serna ("Mr. Serna") [Document #616] to sever the trials of the death-eligible defendant (Mr. Briseno) from the trials of the other defendants. As set forth more fully below, the law strongly favors the joint trial of defendants who are engaged in related conspiratorial conduct, such as that present here, and the presence of a death-eligible defendant should not materially alter that analysis.

Nature of the Case

As more fully set forth in the Third Superseding Indictment, the defendants in this case are members of the Almighty Imperial Gangsters (the "IG's") street gang, who, together with unindicted co-conspirators, some of whom are now deceased, plagued and terrorized various streets and neighborhoods in and around East Chicago, Indiana, for more than a generation, by and with organized and systematic drug dealing, shootings, murders, robberies, carjackings,

GOVERNMENT'S OMNIBUS OPPOSITION TO MOTIONS TO SEVER OF DEFENDANTS JUAN BRISENO,
RICHARD REYES, SALVADOR CHAVEZ, JASON MEDINA, AND EDWARD SERNA
United States v. Juan Briseno, et al.
Cause No. 2:11-CR-0077-PPS-APR
**Page 2**
_____

burglaries, and other criminal conduct.

## ALL OF THE DEFENDANTS' MOTIONS ARE WITHOUT MERIT
## AND SHOULD THEREFORE BE DENIED

Although Mr. Briseno, Mr. Reyes, Mr. Chavez, Mr. Medina, and Mr. Serna do not all

speak with a single voice, the five moving defendants do have a common theme – they each seek

to sever the trial of Mr. Briseno, who is the only capital defendant, from the trial of the other four

defendants. In order to fairly evaluate each defendants' claims, the specific allegations of each

of the Motions will be reviewed *seriatim*. However, because each motion will implicate

common Rules of Criminal Procedure as well as settled principles related to severance, and in

two instances joinder, before we turn to the specific claims of the individual defendants, we will

first examine the areas and principles of law that are at issue, and about which there can be no

dispute.

### Undisputed Law of Joinder and Severance

A.      Federal Rules of Criminal Procedure 8(b) and 14(a).

**Joinder.**   In pertinent part, Rule 8(b) of the Federal Rules of Criminal Procedure

provides that defendants may be charged together "if they are alleged to have participated in the

same act or transaction or in the same series of acts or transactions constituting an offense or

offenses."[1] *Zafiro v. United States*, 506 U.S. 534, 537 (1993). Here, all of the defendants were

_____

[1] In full, Rule 8(b) provides states:

**Joinder of Defendants.**   The Indictment or information may charge 2 or more
defendants if they are alleged to have participated in the same act or transaction,
or in the same series of acts or transactions, constituting an offense or offenses.

**GOVERNMENT'S OMNIBUS OPPOSITION TO MOTIONS TO SEVER OF DEFENDANTS JUAN BRISENO,**
**RICHARD REYES, SALVADOR CHAVEZ, JASON MEDINA, AND EDWARD SERNA**
United States v. Juan Briseno, et al.
Cause No. 2:11-CR-0077-PPS-APR
**Page 3**

_____

allegedly involved in the same act or transaction and/or in the same series of acts or transactions constituting one or more of the offenses charged.  Consequently, the defendants' arguments at to joinder are without merit.

>      B.      Severance - Settled Principles and Presumptions.

Rule 14(a) of the Federal Rules of Criminal Procedure provides:

> If the joinder of offenses or defendants in an indictment, an information, or a consolidation for trial appears to prejudice a defendant or the government, the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires.

[Id.]   Thus, Rule 14(a) permits a district court to grant a severance of defendants if "it appears that a defendant or the government is prejudiced by a joinder."  *Zafiro v. United States*, 506 U.S. at 538.

*Federal Courts Have Particularly Strong Preference for Joint Trials*

The Supreme Court has long, and repeatedly, held that there is a particularly strong preference in the federal system for joint trials of defendants indicted together, *inter alia*, because  joint trials play a vital role in the criminal justice system by promoting efficiency and by "serv[ing] the interests of justice by avoiding the scandal and inequity of inconsistent verdicts."  *Zafiro v. United States*, 506 U.S. 534, 537 (1993) (*citing Richardson v. Marsh*, 481 U.S. 200, 209-10 (1987)); *accord United States v. Morales*, 655 F.3d 608, 627 (7th Cir. 2011),

_____

> The defendants may be charged in one or more counts together or separately.  All defendants need not be charged in each count.

[Id.]

GOVERNMENT'S OMNIBUS OPPOSITION TO MOTIONS TO SEVER OF DEFENDANTS JUAN BRISENO,
RICHARD REYES, SALVADOR CHAVEZ, JASON MEDINA, AND EDWARD SERNA
United States v. Juan Briseno, et al.
Cause No. 2:11-CR-0077-PPS-APR
**Page 4**

_____

*cert. denied,* ___ U.S. ___, 132 S.Ct. 1121 (2012) ("When alleged co-conspirators are indicted together, as they were here, there is a strong preference that they be tried together"); *United States v. Carrillo*, 435 F.3d 767, 778 (7th Cir. 2006), *cert. denied*, 551 U.S. 1172 (2007) (it is well-settled that co-conspirators who are charged together generally should be tried together*); United States v. Souffront*, 338 F.3d 809, 828 (7th Cir. 2003), *cert. denied*, 540 U.S. 1201 (2004); *United States v. McAnderson*, 914 F.2d 934, 949 (7th Cir. 1990), *cert. denied*, 555 U.S. 1090 (2008) ("Our sytem of criminal justice would crumple beneath the weight of individual trials if every defendant who demanded severance was provided one.")

Indeed, the preference for joint trials is so strong, that denials of severance will be overturned only if actual prejudice resulted at trial. *United States v. Spagnola*, 632 F.3d 981, 987 (7th Cir. 2011); *United States v. Alviar*, 573 F.3d 526, 539 (7th Cir. 2009), *cert. denied*, 559 U.S. 916 (2010); *United States v. Souffront*, 338 F.3d at 831.

### *Jury Instructions Will Ordinarily Cure Prejudice*

Even if prejudice is shown, Rule 14 does not require severance, but is rather designed to allow the district court to tailor the relief to be granted according to the district court's sound discretion. *See Zafiro v. United States*, 534 U.S. at 538-39. Rather, a severance should be granted "only if there is a <u>serious risk</u> that a joint trial would compromise a <u>specific trial right</u> of one of the defendants, or <u>prevent</u> the jury from making a <u>reliable judgment</u> about guilt or innocence." <u>Id</u>. at 539 (emphasis provided.)[2] "In all but the 'most unusual circumstances,' the

_____

[2] Theoretically, such a serious risk could be presented when evidence is admitted against a co-defendant which would not otherwise be admitted against the defendant if tried alone and

**GOVERNMENT'S OMNIBUS OPPOSITION TO MOTIONS TO SEVER OF DEFENDANTS JUAN BRISENO,
RICHARD REYES, SALVADOR CHAVEZ, JASON MEDINA, AND EDWARD SERNA**
United States v. Juan Briseno, et al.
Cause No. 2:11-CR-0077-PPS-APR
**Page 5**

_____

risk of prejudice arising from a joint trial is 'outweighed by the economies of a single trial in which all facets of the crime can be explored once and for all.'" *United States v. Spagnola*, 632 F.3d at 987(*quoting United States v. Alviar*, 573 F.3d 526, 539 (7th Cir. 2009)); *United States v. Velasquez*, 772 F.2d 1348, 1352 (7th Cir. 1985); *United States v. Wilson*, 481 F.3d 475, 482-83 (7th Cir. 2007) ("[T]here is a strong preference that co-conspirators be tried together, particularly when they were indicted together.")

Measures less drastic than severance, such as limiting instructions, will ordinarily suffice to cure any risk of prejudice. *Zafiro v United States*, 534 U.S. at 538-39. Juries are presumed to follow their instructions, including instructions to convict only if the charges are proven beyond a reasonable doubt and to give each defendant separate consideration regarding the charges against him. Id. at 540-41. "Proper jury instructions are 'an adequate safeguard against the risk of prejudice in the form of jury confusion, evidentiary spillover and cumulation of evidence.'" *United States v. Souffront*, 338 F.3d at 831 (citation omitted). This is especially true in conspiracy cases, because even if a defendant is tried by himself, all of the evidence establishing the conspiracy will nevertheless be admissible against him, in any event. *United States v. Alviar*, 573 F.3d 526, 539 (7th Cir. 2009); *accord United States v. Morales*, 655 F.3d 608, 627 (7th Cir.

_____

when essential exculpatory evidence would only be available to a defendant if tried alone. *Zafiro v. United States*, 534 U.S. at 539; *and see, e.g., United States v. Barnes*, 2007 WL 4335456 at *3-4 (N.D. Ind. 2007) (granting severance for certain defendants to avail themselves of potential exculpatory testimony from co-defendant who would not otherwise testify at a joint trial). This risk of prejudice might also be heightened when many defendants are tried together in a complex case and they have markedly different degrees of culpability. *Zafiro*, 534 U.S. at 539.

**GOVERNMENT'S OMNIBUS OPPOSITION TO MOTIONS TO SEVER OF DEFENDANTS JUAN BRISENO,**
**RICHARD REYES, SALVADOR CHAVEZ, JASON MEDINA, AND EDWARD SERNA**
United States v. Juan Briseno, et al.
Cause No. 2:11-CR-0077-PPS-APR
**Page 6**
_____

2011)*, cert. denied,* ___ U.S. ___, 132 S.Ct. 1121 (2012) (essential acts of co-conspirators would still have been admissible against defendant in a separate trial)*; United States v. Souffront*, 338 F.3d at 832 (particularly difficult to find prejudice, when evidence admissible at a joint trial would also be admissible against the defendant if he was tried separately.)

*Disparity in Amount of Evidence Is Rarely Sufficient to Warrant Severance*

Ordinarily, the fact that a defendant is charged in a large, complex case, and there is more evidence against the co-defendants than against the moving defendant will not entitle the moving defendant to a severance. *See United States v. Morales*, 655 F.3d 608, 625-26 (7th Cir. 2011) (affirming denial of severance and rejecting evidence-disparity argument in RICO conspiracy case where co-defendants – but not defendant – were charged with murder and attempted murder and the acts of co-defendants who were "exceedingly violent men were discussed at length" at trial); *and see United States v. Thornton*, 197 F.3d 241, 256 (7th Cir. 1999) (rejecting evidence-disparity argument and correctly noting: "[A] case can be made that the 'I'm just a little fish compared to these other guys' defense theme carries some weight with juries, so trying everyone together is not automatically a bad deal for non-ringleaders.")

*Defendants Are Not Entitled to Severance Because They Would Have a*
*Better Chance of Acquittal in Separate Trial*

Similarly, it is well-settled that defendants are not entitled to severance merely because they might have a better chance of acquittal at separate trials, and the procedural rules are designed to promote efficiency and avoid a multiplicity of trials as long as these objections can be accomplished without substantial prejudice to a defendant's right to a fair trial. *See Zafiro v*

**GOVERNMENT'S OMNIBUS OPPOSITION TO MOTIONS TO SEVER OF DEFENDANTS JUAN BRISENO,
RICHARD REYES, SALVADOR CHAVEZ, JASON MEDINA, AND EDWARD SERNA**
United States v. Juan Briseno, et al.
Cause No. 2:11-CR-0077-PPS-APR
**Page 7**
_____

*United States*, 534 U.S. at 539-40.

### *Mutually Antagonistic Defenses*

Defenses are mutually antagonistic only when the "acceptance of one defendant's defense will preclude the acquittal of the other defendant." *United States v. Carillo*, 435 F.3d 767, 778 (7th Cir. 2006), *cert. denied*, 551 U.S. 1172 (2007) (*quoting United States v. Hartmann*, 958 F.2d 774, 787 (7th Cir.1992)); *accord United States v. Bruun*, 809 F.2d 397, 407 (7th Cir.1987)); *United States v. Petullo,* 709 F.2d 1178, 1181–82 (7th Cir.1983) (citation omitted).  Indeed, in order to be *mutually* antagonistic, both defendant's positions must simultaneously be such that the acceptance by the jury of both defendants' claims *necessarily precludes any possibility of acquittal* for either defendant – which, on close inspection, is ordinarily not the case.  *See e.g., United States v. McClurge*, 311 F.3d 866, 871 (7th Cir. 2001), *cert. denied*, 538 U.S. 1046 (2003) ("McClurge initially argues that severance is required whenever the defense theory of one defendant contradicts the defense of another defendant in such a way that the jury's acceptance of one defense precludes acceptance of the other.  McClurge's argument is supported neither by logic nor case law.  First, McClurge's defense and Alvertis's defense were not '*mutually* antagonistic.' While Alvertis's was hostile to McClurge's, the converse was not true." (Emphasis original.))

Moreover, even the "presence of mutually antagonistic defenses does not require severance."  *United States v. Carillo*, 435 F.3d at 778 (*citing Zafiro v. United States*, 506 U.S. at 538);*United States v. McClurge*, 311 F.3d at 871 ("As has been made clear on several occasions, the presentation of mutually antagonistic defenses 'is not sufficient grounds to require severance'

**GOVERNMENT'S OMNIBUS OPPOSITION TO MOTIONS TO SEVER OF DEFENDANTS JUAN BRISENO,**
**RICHARD REYES, SALVADOR CHAVEZ, JASON MEDINA, AND EDWARD SERNA**
<u>United States v. Juan Briseno, et al.</u>
Cause No. 2:11-CR-0077-PPS-APR
**Page 8**
_____

of trials" (*citing United States v. Mietus,* 237 F.3d 866, 873 (7ᵗʰ Cir. 2001); *United States v.*

*Wilson,* 237 F.3d 827, 835-36 (7th Cir.2001); *United States v. Ramirez,* 45 F.3d 1096, 1100-01

(7th Cir.1995)).

As set forth below, none of the defendants' allegations have merit.

<u>THE ALLEGATIONS OF DEFENDANTS' MOTIONS</u>

***The Allegations of Mr. Briseno's Motion***

In his 31-page Motion [Document #610], Mr. Briseno seeks a severance of his capital

trial from that of all of his non-capital co-defendants. [*See* <u>Briseno Motion</u>, pages 1-2] In

support of the relief he seeks, Mr. Briseno makes the following nine claims: (A) special

considerations in capital cases allegedly favor severance; (B) prejudicial association and

potential jury confusion allegedly favor severance; (C) Mr. Briseno and several co-defendants

could potentially develop antagonistic and mutually exclusive defenses; (D) evidence from the

multi-defendant trial might prejudice Mr. Briseno at the guilt phase and/or at the penalty phase;

(E) Mr. Briseno will allegedly be prejudiced in a joint trial because he will be the "target

defendant" and might suffer a "reverse-halo effect;" (F) the evidence about Mr. Briseno's co-

defendants in a joint allegedly might dilute Mr. Briseno's mitigation evidence; (G) the

introduction of co-defendants' (non-existent) *Bruton/Crawford* statements in a joint trial might

adversely affect Mr. Briseno's Sixth Amendment right of confrontation; (I) jury instructions

might not cure whatever potential prejudice might from a joint trial; and (J) severance will

allegedly promote judicial economy. [<u>Id.</u>, pages 1-2]

GOVERNMENT'S OMNIBUS OPPOSITION TO MOTIONS TO SEVER OF DEFENDANTS JUAN BRISENO,
RICHARD REYES, SALVADOR CHAVEZ, JASON MEDINA, AND EDWARD SERNA
United States v. Juan Briseno, et al.
Cause No. 2:11-CR-0077-PPS-APR
**Page 9**
_____

In support of his allegations, Mr. Briseno correctly notes he is charged in 25 of the 83

overt acts in the RICO conspiracy count (Count One) of the Third Superseding Indictment.

[Briseno Motion, pages 1-2]; he is one of eleven defendants charged, in Count Two of the

indictment, with conspiring to Possess With Intent to Distribute and Distribution of 100

kilograms or more of marijuana and at least 5 kilograms of cocaine over a 10-year period [id.,

page 2]; he is charged with six counts of Murder in Aid of Racketeering Activity, and that a total

of five of his co-defendants are charged also charged with Murder in Aid of Racketeering

Activity in various configurations with five of the same six murders [id.]; and he correctly notes

that while five of his co-defendants are charged with Attempted Murder in Aid of Racketeering

Activity, he is charged in four of those same counts of Attempted Murder in Aid of Racketeering

Activity.  [Id.]  In all, Mr. Briseno acknowledges that he is charged in 22 of the 41 counts of the

Indictment. [Id.]  Mr. Briseno also notes he is the sole capital defendant.  [Briseno Motion, page

2]

### *"Special Considerations" in Capital Cases*

Mr. Briseno acknowledges that severance is always committed to the sound discretion of

the trial court.[3]  [*See* Briseno Motion, page 6]  Mr. Briseno also acknowledges that "federal

_____

[3]The government notes that Mr. Briseno prefaces his first claim by saying that -- because
the vast majority of the defendants in this case are Hispanic-Americans -- all defendants will
have the "problem of shared minority ethnic status,"and because the defendants are similar in
age, and because they are affiliated with the same gang, and because of the number and nature of
the charges ("RICO, drug and firearms conspiracy charges with overlapping overt acts") are
serious, and because of the likely length of the trial and the number of co-defendants, Mr.
Briseno claims generally to worry that "the jury's task [will be] very taxing, and [will] ask[]
jurors to demonstrate qualities and skills it is unreasonable to expect them to possess." [Id., page

_____

courts prefer joint trials of defendants who are indicted together."  [Briseno Motion, page 4].

However, Mr. Briseno then cites three District Court cases for the proposition that "special

considerations" in capital cases dictate that severance be more readily easily and readily granted

than in other types of cases. [*See* id., pages 4-6]

Mr. Briseno's claim is disingenuous for two reasons.  First, Mr. Briseno's citations fail to

acknowledge, much less distinguish, Supreme Court and Circuit authorities, as well as numerous

District Court decisions, whose holdings negate his claim that "heightened scrutiny" is required

for severance claims in capital cases.  *See, e.g., Buchanan v. Kentucky*, 483 U.S. 402, 418 (1987)

(noncapital defendant tried with capital defendant); *Lockhart v. McCree*, 476 U.S. 162, 182

(1986); *United States v. Bernard*, 299 F.3d 467, 475 (5th Cir. 2002); *United States v. Brown*,

2000 WL 930786, *6 n.10 (4th Cir. 2000); *United States v. Causey*, 185 F.3d 407, 416 (5th Cir.

1999); *United States v. Sanchez,* 75 F.3d 603, 604-05 (10th Cir.), *cert. denied*, 517 U.S. 1214

(1996) (non-capital defendant tried with three capital defendants); *United States v. Tipton*, 90

F.3d 861, 892 (4th Cir. 1996); *United States v. Savage*, 2012 WL 6609425 (E.D. Pa. 2012)

(severance motions denied, three capital defendants tried with one non-capital defendant);

*United States v. Catalan-Roman*, 376 F.Supp.2d 100, 108 (D.P.R. 2005) ("[T]he current weight

of authority remains against severance for multiple defendants even in capital cases"); *United*

*States v. Aiken*, 76 F.Supp.2d 1346, 1357(S.D. Fla. 1999) ("For the same reasons [articulated in

*McCree* and *Buchanan* ] the court rejects the non-capital defendants' similar arguments here");

_____

4]

**GOVERNMENT'S OMNIBUS OPPOSITION TO MOTIONS TO SEVER OF DEFENDANTS JUAN BRISENO,
RICHARD REYES, SALVADOR CHAVEZ, JASON MEDINA, AND EDWARD SERNA**
<u>United States v. Juan Briseno, et al.</u>
Cause No. 2:11-CR-0077-PPS-APR
**Page 11**
_____

*United States v. Heatley*, 1998 WL 671462, at \*2 (S.D.N.Y. 1998) (Judge Sotomayor held "there is no reason why ... Rule 14 standards ... should not apply to the noncapital defendants in a capital case," and denied severance of capital defendants and non-capital defendants.)

Second, Mr. Briseno fails to apprise the Court, for instance, that the first two of the authorities he cites do not, and cannot, stand for the proposition for which he cited them. In fact, in *United States v. Catalan-Roman*, 376 F.Supp.2d 100 (D.P.R. 2005), the District Court <u>denied</u> the defendant's pre-trial motion for severance and the District Court tried jointly both death-eligible defendants before it. 376 F.Supp.2d at 104. In so doing, the Court specifically noted, "[f]or a variety of reasons, *the current weight of authority remains against severance* for multiple defendants *even in capital cases*." <u>Id</u>., at 108 (emphasis provided.) Morever, the only "severance" granted in *Catalan-Roman* was that the Court permitted *sequential **penalty phase** hearings* for the two capital defendants (that were to occur before the same jury.) 376 F.Supp.2d at 108.

Likewise, Mr. Briseno's citation to *United States v. Green*, 324 F.Supp.2d 311 (D.Mass. 2004), is substantially misleading. In *Green*, the District Court was faced with various pending severance motions in a four co-defendant RICO trial (a fifth defendant was not immediately implicated in the motions) in which two of the defendants were death-eligible and two were not. 376 F.Supp.2d at 314-16. After finding that the two death-eligible defendants had mutually antagonistic defenses – both claimed the other committed the death-triggering murder, <u>id</u>., at 314-15 & 324-25 – the District Court resolved to sever the trials of the *capital defendants **from each other**,* but thereafter to ***try one capital defendant <u>together with</u> one non-capital defendant***

**GOVERNMENT'S OMNIBUS OPPOSITION TO MOTIONS TO SEVER OF DEFENDANTS JUAN BRISENO, RICHARD REYES, SALVADOR CHAVEZ, JASON MEDINA, AND EDWARD SERNA**
United States v. Juan Briseno, et al.
Cause No. 2:11-CR-0077-PPS-APR
**Page 12**

_____

*in each of two trials*. *United States v. Green*, 376 F.Supp.2d. at 333 (additionally, the Court

severed the penalty phases of now-severed the death-eligible defendants from each other.)

More fundamentally, Mr. Briseno fails to explain how two cases that decided (a) that <u>two

capital defendants</u> should only be severed from one another *in the penalty phase* (*United States

v. Catalan-Roman*) and/or (b) that <u>two capital  defendants</u> with mutually antagonistic defenses

should be *severed from each other* <u>but</u> ***each tried jointly with a non-capital defendant***  (*United

States v. Green*), can possibly support a severance of his trial, where Mr. Briseno admits he is the

is the only capital defendant.

This notwithstanding, Mr. Briseno also seeks support for his theory of "special

consideration" for severance in capital cases by selectively canvassing decisions in ***non***-*capital*

cases.  [*See generally*, <u>id.</u>, pages 6-8]  In fairness, Mr. Briseno does there cite one capital case –

*United States v. Ayala-Lopez*, 319 F.Supp.2d 236 (D.P.R. 2004).  However, it seems clear that

the District Court in *Ayala-Lopez* relied upon a craftily-worded Declaration of a Kevin

McNally,[4] of the Federal Death Penalty Resource Center (*McNally's Declaration*:  in a majority

---

[4]  Kevin McNally is a regular capital defendant's "resource" (and often an affiant), providing selected and/or interpreted statistics on behalf of death-eligible defendants –  whose claims are almost invariably rejected.  *See, e.g.*, *United States v. Sampson*, 486 F.3d 13, 26-27 (1st Cir. 2007); *United States v. Barnes*, 532 F. Supp.2d 625, 635-36 (S.D.N.Y. 2008); *United States v. Jacques*, 2011 WL 1675417, *5 (D. Vt. 2011), *vacated on other grounds*, 684 F.2d 324 (2d Cir. 2012); *United States v. Aquart*, 2010 WL 4363414, *4-*5 (D. Conn. 2010); *United States v. Johnson*, 2009 WL 1856240, *5-*6 (E.D. Mich. 2009); *United States v. Taylor*, 2008 WL 217115, *5-6 (E.D. Tenn. 2008); *United States v. Sablan*, 2006 WL 1028780, *12 (D. Colo. 2006); *United States v. Llera Plaza*, 179 F. Supp.2d 444, 456 (E.D. Pa. 2001); *United States v. Edelin*, 134 F.Supp.2d 59, 89 (D.D.C. 2001).

**GOVERNMENT'S OMNIBUS OPPOSITION TO MOTIONS TO SEVER OF DEFENDANTS JUAN BRISENO,
RICHARD REYES, SALVADOR CHAVEZ, JASON MEDINA, AND EDWARD SERNA**
United States v. Juan Briseno, et al.
Cause No. 2:11-CR-0077-PPS-APR
**Page 13**

_____

of death penalty cases some form of severance is granted) in reaching that decision.[5]  Indeed, the

next year, another District Judge in the same District properly determined "the current weight of

authority remains against severance for multiple defendants *even in capital cases.*"  *United*

*States v. Catalan-Roman*, 376 F.Supp.2d 100, 108 (D.P.R. 2005) (emphasis provided).

Moreover, while Mr. Briseno champions *Ayala-Lopez*, a self-limiting 2004 severance decision

from the District of Puerto Rico, he ignores that, in 2013, The Hon. Jose A. Fuste, United States

District Judge for the District of Puerto Rico, jointly tried a capital defendant and a non-capital

defendant.  *See* Docket Entry #984 (Verdict Form), *United States v. Alexis Candelario-Santana,*

*et al.*, 09-CR-423 (JAF), District of Puerto Rico (copy attached.)

For each of these reasons, Mr. Briseno's first claim is without merit.

*"Prejudicial Association" & "Negative Racial Stereotyping"*

Mr. Briseno's second claim is that he should be granted a severance, as a capital

defendant, because he is a member of a minority community (Hispanic-American) and could

become the victim of racial stereotyping by trial jurors, *if he is tried with other members of his*

*same minority community.*  [*See* Briseno Motion, pages 8-10 ("Mr. Briseno is entitled to

severance in order to ensure that local prejudice against a racial minority does not swamp his

right to a fair trial." id., page 10)][6]

---

[5]  In *Ayala-Lopez*, the Court specifically noted it was "not establishing a steadfast rule of general applicability" but was limiting its decision to the particular facts presented.  319 F.Supp.2d at 240.

[6]  Mr. Briseno's potentially inflammatory claim racism in the application of the Federal Death Penalty Act is without merit.  *See, e.g., McCleskey v. Kemp*, 481 U.S. 278, 312-13 (19870;

_____

Mr. Briseno's claim is meritless. Taken to its logical conclusion, neither Mr. Briseno nor any member of any minority group who might be linked to "racial stereotyping" could ever fairly be tried in any courtroom in the United States. Fortunately, Mr. Briseno's view is firmly divorced from the law. Indeed, not surprisingly, the sole authority he cites in support of his illogical proposition of "heightened scrutiny" for racial stereotyping in capital cases – *Williams v. Superior Court*, 36 Cal.3d 441 (1984) – has been overruled. *See, e.g., People v. Aldrete*, 2012 WL 662058, \*4-5 (Cal. 2012); *People v. Sedillo*, 2011 WL 989551, \*9 (Cal. 2011); *People v. Henderson*, 2010 WL 3872022, \*2-4 (Cal. 2010); *Alcala v. Superior Court*, 185 P.3d 708, 726 & n.19 (Cal. 2008); *People v. Trachman*, 2005 WL 1528628, \*9 (Cal. 2005).

In *Alcala v. Superior Court*, 185 P.3d 708 (Cal. 2008), the California Supreme Court specifically stated:

> Although we suggested in *Williams* that when "one of the charged crimes is a capital offense, ... the court must analyze the severance issue with a higher degree of scrutiny and care than is normally applied in a noncapital case" (*Williams, supra*, 36 Cal.3d at p. 454, 204 Cal.Rptr. 700, 683 P.2d 699), the subsequent enactment of section 790(b)—which, as noted, specifically provides for joinder of *capital* cases such as these—makes it clear that such a heightened analysis is no longer called for.

185 P.3d at 726 n.19 (emphasis original.)

Hence, for each of these reasons, Mr. Briseno's second claim is without merit.

_____

*and see United States v. Armstrong*, 517 U.S. 456, 465 (1996).

**GOVERNMENT'S OMNIBUS OPPOSITION TO MOTIONS TO SEVER OF DEFENDANTS JUAN BRISENO,**
**RICHARD REYES, SALVADOR CHAVEZ, JASON MEDINA, AND EDWARD SERNA**
United States v. Juan Briseno, et al.
Cause No. 2:11-CR-0077-PPS-APR
**Page 15**
_____

*"Antagonistic and Mutually Exclusive Defenses"*

Mr. Briseno urges- the Court to sever his trial from that of the non-capital defendants

because "Mr. Briseno and several co-defendants **have** antagonistic and mutually exclusive

defenses." [Briseno Motion, page 10 (heading; emphasis provided); *and see generally*, id., pages

10-13]  However, barely two pages later, Mr. Briseno admits there is currently no basis for his

claims:

> Normally, when a defendant seeks severance on grounds of mutually exclusive
> defenses, he must provide the court with specific information showing that indeed
> the defenses are antagonistic and/or mutually exclusive. * * * Mr. Briseno is
> precluded from providing the court with such information at this time. * * *
> [However,] at any time throughout the lengthy trial, counsel for Mr. Briseno *may*
> receive information that gives rise to mutually exclusive defenses. * * * *
> [C]ounsel for Mr. Briseno *can readily foresee* that given the nature of the charges,
> exclusive defenses *may well arise* with regard to several of those charges....

[Briseno Motion, page 11 (emphasis provided)]

Obviously, the *potential* for antagonistic and mutually exclusive defenses exists in

virtually every co-defendant trial.  Yet, as Mr. Briseno is no doubt aware, *potential* claims

cannot – and do not – satisfy his current burden.  As we have previously established, defenses

are "mutually antagonistic" only when the "acceptance of one defendant's defense will preclude

the acquittal of the other defendant." *United States v. Carillo*, 435 F.3d 767, 778 (7th Cir. 2006)

(*quoting United States v. Hartmann*, 958 F.2d 774, 787 (7th Cir.1992)); *accord United States v.*

*Bruun*, 809 F.2d 397, 407 (7th Cir.1987)); *United States v. Petullo,* 709 F.2d 1178, 1181–82 (7th

Cir.1983) (citation omitted).  In order to be *mutually* antagonistic, both defendant's positions

must simultaneously be such that its acceptance by the jury of both defendants' claims

*necessarily precludes any possibility of acquittal* of the either defendant. *See e.g., United States v. McClurge*, 311 F.3d 866, 871 (7th Cir. 2001) ("McClurge initially argues that severance is required whenever the defense theory of one defendant contradicts the defense of another defendant in such a way that the jury's acceptance of one defense precludes acceptance of the other. McClurge's argument is supported neither by logic nor case law. First, McClurge's defense and Alvertis's defense were not "*mutually* antagonistic." While Alvertis's was hostile to McClurge's, the converse was not true." (Emphasis original.))

Moreover, even if Mr. Briseno could demonstrate that he and another defendant have mutually antagonistic defenses – which he cannot – as we have earlier shown, it is well-settled that the "presence of mutually antagonistic defenses does not require severance." *United States v. Carillo*, 435 F.3d at 778 (*citing Zafiro v. United States*, 506 U.S. at 538); *United States v. McClurge*, 311 F.3d at 871 ("As has been made clear on several occasions, the presentation of mutually antagonistic defenses 'is not sufficient grounds to require severance' of trials" (*citing United States v. Mietus,* 237 F.3d 866, 873 (7th Cir. 2001); *United States v. Wilson,* 237 F.3d 827, 835-36 (7th Cir.2001); *United States v. Ramirez,* 45 F.3d 1096, 1100-01 (7th Cir.1995)).

For all of these independent reasons, Mr. Briseno's third claim is without merit.

*Evidence In a Joint Trial Will Disadvantage Mr. Briseno in
Both the Guilty & Penalty Phases*

Mr. Briseno asserts that his trial should be severed from that of the non-capital defendants because the evidence adduced at trial as to the conduct of his co-defendants will prejudice Mr. Brisenos in the penalty phase of his trial. [*See* Briseno Motion, pages 13-18]

_____

However, once again, none of the cases Mr. Briseno rely upon establish his claim. Despite consuming some 6 pages of his Motion with emphatic repetition, Mr. Briseno simply cannot convert his bald and self-serving statements into meritorious claims. There is simply no cognizable basis for his claims that (1) jury confusion will prejudice Mr. Briseno [id., pages 15-17]; (2) juror exhaustion will prejudice Mr. Briseno at the penalty phase [id., page 17]; and/or (3) jury instructions will not cure the prejudice to Mr. Briseno. [Id, page 18]

In fact, none of the cases Mr. Briseno cites compel the relief he seeks. As noted above, the actual law in these areas is to the contrary. *See, e.g.*, *Zafiro v United States*, 534 U.S. at 538-39; *United States v. Souffront*, 338 F.3d at 831 ("Proper jury instructions are 'an adequate safeguard against the risk of prejudice in the form of jury confusion, evidentiary spillover and cumulation of evidence.'")

For all of these reasons, Mr. Briseno's fourth claim is without merit.

*Mr. Briseno Does Not Want to Be the "Star of the Show"*

Mr. Briseno asserts that he should be tried separately from his non-death-eligible co-defendants because a joint trial might "risk [Mr. Briseno] becoming a 'target defendant' and suffering a 'reverse halo effect....'" [Briseno Motion, page 18 (decries his "star of the show" status in Indictment); *and see* pages 18-20] Mr. Briseno, however, makes no effort to either (1) explain how his claims are materially different from any other joint trial of death-eligible and non-death-eligible defendants; and (2) why the Supreme Court and the great weight of authority routinely embrace such joint trials. *See, e.g., Buchanan v. Kentucky*, 483 U.S. 402, 418 (1987); *Lockhart v. McCree*, 476 U.S. 162, 182 (1986); *United States v. Sanchez,* 75 F.3d 603, 604-05

**GOVERNMENT'S OMNIBUS OPPOSITION TO MOTIONS TO SEVER OF DEFENDANTS JUAN BRISENO,
RICHARD REYES, SALVADOR CHAVEZ, JASON MEDINA, AND EDWARD SERNA**
<u>United States v. Juan Briseno, et al.</u>
Cause No. 2:11-CR-0077-PPS-APR
**Page 18**

_____

(10<sup>th</sup> Cir. 1996); *United States v. Catalan-Roman*, 376 F.Supp.2d 100, 108 (D.P.R. 2005). Mr.

Briseno fundamentally fails to demonstrate how the jury's view of him as the person who

committed more murders than any of his co-defendants – *exactly* as alleged in the Third

Superseding Indictment, and *precisely* what the Government expects to prove at trial – can

possibly constitute an <u>unfair</u> prejudice to him.

As a result, Mr. Briseno's fifth claim is without merit.

*Joint Trial May Dilute Mr. Briseno's Mitigation Evidence*

Mr. Briseno claims that if he is tried jointly with his non-capital co-defendants, he will be

unfairly prejudiced during the penalty phase of his trial, because the jury's earlier exposure to his

non-capital co-defendants "will dilute his mitigation evidence." [<u>Briseno Motion</u>, page 21; *and*

*see generally* <u>id</u>., pages 21-22] Mr. Briseno asserts that:

> At the penalty phase, a capital defendant relies heavily on his social
> history, which includes evidence of his environment, for mitigation: "Life
> experience, or social history, is the heart of penalty phase presentations."
>
> Thus, if the jury hears evidence of the non-capital defendants' less serious
> crimes despite having grown up in the same neighborhood as Mr. Briseno, Mr.
> Briseno's environmental mitigation evidence become weaker. This is because
> *jurors will simply assume, <u>with no supporting evidence,</u> that others experienced*
> *the same environment but did not resort to murder.* * * * *

[<u>Briseno Motion</u>, page 21 (emphasis provided)]

**GOVERNMENT'S OMNIBUS OPPOSITION TO MOTIONS TO SEVER OF DEFENDANTS JUAN BRISENO, RICHARD REYES, SALVADOR CHAVEZ, JASON MEDINA, AND EDWARD SERNA**
United States v. Juan Briseno, et al.
Cause No. 2:11-CR-0077-PPS-APR
**Page 19**

_____

Mr. Briseno's sixth claim must be denied. First, Mr. Briseno fails to cite a single authority that embraces his unique claim. Second, Mr. Briseno claims that he will be disadvantaged because the jury may come to believe -- "with no supporting evidence" – that some Hispanic males are **_not_** thugs and killers. This argument completely lacks merit. Mr. Briseno cannot truly have forgotten that 11 pages earlier in this same Motion -- in support of his *second* argument for severance – he averred that he was worried that if he was tried jointly with his fellow Hispanic co-defendants **he** would be unfairly racially-stereotyped as a thug and a killer.

For all of these reasons, Mr. Briseno's six claim is without merit.

*In a Joint Trial, Mr. Briseno Will Be Prejudiced In Jury Selection*

Mr. Briseno asserts that he is worried that the a joint trial with non-capital defendants "will cause significant problems in voir dire." [Briseno Motion, page 22; *and see* id., pages 22-23] Avoiding all mention of the great weight of established law in this area that firmly supports joint trials of capital and non-capital defendants, Mr. Briseno imagines "problematic" concerns, urging broadly – but without support – that "the court will face several time-consuming, thorny issues that it will otherwise avoid by granting severance." [Id., page 22]

Mr. Briseno fails to acknowledge that Courts all across the United States readily manage these "thorny issues" month in and month out, or does he genuinely attempt to distinguish his circumstance for any other similar capital co-defendant trial.

As a result, Mr. Briseno's seventh claim is without merit.

871

_____

*Alleged <u>Bruton/Crawford</u> Issues Weigh in Favor of Severance*

Mr. Briseno speculates that a non-capital defendant *might* have made a post-arrest confession "during structured questioning by law enforcement officers" that *might* inculpate Mr. Briseno. [<u>Briseno Motion</u>, pages 23-24; *and see* id., pages 23-25] *See Bruton v. United States*, 319 U.S. 123, 134 (1968), and *Crawford v. Washington*, 541 U.S. 36, 42 (2004).

Mr. Briseno's eighth claim must be denied. *First*, these are the sorts of *potential* issues that *might* arise in any co-defendant trial. If they do, the parties and the Courts are experienced in resolving them. *Second*, Mr. Briseno fails to identify a single such statement, and the Government is not aware of any. As a result, *Bruton/Crawford* concerns are not part of the legitimate calculus in the resolution of Mr. Briseno's severance Motion.

For these reasons, Mr. Briseno's eighth claim is without merit.

*Jury Instructions Will Be Insufficient*

Mr. Briseno asserts that limiting instructions will not cure the alleged prejudice that he is sure will befall him in a joint trial. [<u>Briseno Motion</u>, pages 25-26] Once again, Mr. Briseno fails to point to anything unique about his circumstance that would distinguish him from the firm embrace of otherwise well-settled law. As we have previously established, even when prejudice arises from a joint trial, limiting instructions will ordinarily suffice to cure any risk of prejudice. *Zafiro v United States*, 534 U.S. at 538-39. Juries are properly presumed to follow their instructions, including instructions to convict only if the charges are proven beyond a reasonable doubt and to give each defendant separate consideration regarding the charges against him. Id. at 540-41. "Proper jury instructions are 'an adequate safeguard against the risk of prejudice in

**GOVERNMENT'S OMNIBUS OPPOSITION TO MOTIONS TO SEVER OF DEFENDANTS JUAN BRISENO,
RICHARD REYES, SALVADOR CHAVEZ, JASON MEDINA, AND EDWARD SERNA**
United States v. Juan Briseno, et al.
Cause No. 2:11-CR-0077-PPS-APR
**Page 21**
_____

the form of jury confusion, evidentiary spillover and cumulation of evidence.'" *United States v. Souffront*, 338 F.3d at 831 (citation omitted). This is especially true in conspiracy cases – such as Mr. Briseno's – because even if a defendant is tried by himself, all of the evidence establishing the conspiracy will nevertheless be admissible against him. *United States v. Alviar*, 573 F.3d 526, 539 (7th Cir. 2009); *accord United States v. Morales*, 655 F.3d 608, 627 (7th Cir. 2011) (essential acts of co-conspirators would still have been admissible against defendant in a separate trial*); United States v. Souffront*, 338 F.3d at 832 (particularly difficult to find prejudice, when evidence admissible at a joint trial would also be admissible against the defendant if he was tried separately.)

Rather than address the settled law, Mr. Briseno relies on an *obiter dicta* quotation from "one of the lengthiest and costliest trials in the nation's history," involving some 24 defendants (15 of whom began a joint trial (3 of whom pled guilty during trial)), in a trial that lasted over 16 months, produced over 30,000 pages of transcripts, involved over 250 witnesses and thousands of exhibits, and presented evidence on over 2,000 narcotics transactions spanning an 11-year period. *United States v. Baker*, 10 F.3d 1374, 1386 (9th Cir. 1993). Obviously, the *Baker* "mega-trial" is a far cry from the modest approximately 2-3 month, 3-5 defendant trial, Mr. Briseno knows is anticipated in this case. In addition, Mr. Briseno fails to mention that, despite *Baker's* "mega-trial" status, the Ninth Circuit affirmed the denial of the motions for severance.

For each of these reasons, Mr. Briseno's ninth claim is without merit.

GOVERNMENT'S OMNIBUS OPPOSITION TO MOTIONS TO SEVER OF DEFENDANTS JUAN BRISENO,
RICHARD REYES, SALVADOR CHAVEZ, JASON MEDINA, AND EDWARD SERNA
United States v. Juan Briseno, et al.
Cause No. 2:11-CR-0077-PPS-APR
**Page 22**
_____

*Severance Would Advance the Public Interest*

Mr. Briseno simply asserts that the severance he seeks will serve the public interest of judicial economy [Briseno Motion, page 26], will avoid potential complications in jury selection [id., pages 27-28], will promote efficiency in the application of the rules of evidence and judicial economy [id., page 28-29], and will solve alleged trial problems of "adequacy of space," privacy, security, and transportation, "and other mundane matters." [Id., pages 29-30]

However, in so doing, Mr. Briseno makes no effort to distinguish the plethora of well-established precedent to the contrary. *See, e.g.*, *Zafiro v. United States*, 506 U.S. 534, 537 (1993) (*citing Richardson v. Marsh*, 481 U.S. 200, 209-10 (1987) (there is a particularly strong preference in the federal system for joint trials of defendants indicted together, and joint trials play a vital role in the criminal justice system by promoting efficiency and by "serv[ing] the interests of justice by avoiding the scandal and inequity of inconsistent verdicts"); *accord United States v. Morales*, 655 F.3d 608, 627 (7th Cir. 2011) ("When alleged co-conspirators are indicted together, as they were here, there is a strong preference that they be tried together"); *United States v. Carrillo*, 435 F.3d 767, 778 (7th Cir. 2006) (it is well-settled that co-conspirators who are charged together generally should be tried together*); United States v. Souffront*, 338 F.3d 809, 828 (7th Cir. 2003); *United States v. McAnderson*, 914 F.2d 934, 949 (7th Cir. 1990) ("Our sytem of criminal justice would crumple beneath the weight of individual trials if every defendant who demanded severance was provided one.")

For these reasons, Mr. Briseno's tenth and final claim is without merit.

**GOVERNMENT'S OMNIBUS OPPOSITION TO MOTIONS TO SEVER OF DEFENDANTS JUAN BRISENO, RICHARD REYES, SALVADOR CHAVEZ, JASON MEDINA, AND EDWARD SERNA**
United States v. Juan Briseno, et al.
Cause No. 2:11-CR-0077-PPS-APR
**Page 23**

_____

Because, as established above, none of Mr. Briseno's claims have merit, Mr. Briseno's

Motion should be, in all things, denied.

### The Allegations of Mr. Reyes' Severance Motion

Mr. Reyes alleges Rule 8(b) misjoinder and prays for severance under Rule 14.[7] [*See*

Reyes Motion, pages 5-6] In his Motion, Mr. Reyes incorrectly claims the "allegations against

Reyes do not overlap with Briseno or the other co-defendants. Instead, Reyes is accused of *one*

act in an indictment that alleges eighty-three (83) overt acts in the RICO count" [id., page 2

(emphasis original)], and "Reyes is accused of an unsolved murder case from 2007...." [Id., page

5] Mr. Reyes is simply wrong. Even a casual resort to the Third Superseding Indictment

establishes that Mr. Reyes is charged in Court One (the overarching decade-long RICO count

[*see* Indictment, pages 1-19; ¶¶ 1, 9, 23(x), 27]) -- which includes, *inter alia*, Mr. Reyes' murder

of a rival gang member and the shooting of another individual and that exposes Mr. Reyes to

enhanced sentencing [*see* Indictment, ¶¶ 23(x), 27]; Count Two (Possession With Intent to

Distribute and Distribution of Cocaine and Marijuana [*see* Indictment, pages 20-21]); Count 9

(Murder in Aid of Racketeering Activity [*see* Indictment, page 29]); Count 10 (Murder Resulting

from the Use and Carrying of a Firearm During and in Relation to a Crime of Violence and Drug

Trafficking Crime [*see* Indictment, page 30]); and, additionally, the Grand Jury returned Special

Findings against Mr. Reyes related thereto. [*See* Indictment, pages 64-65]

---

[7] The Government's Omnibus Opposition will only address Mr. Reyes' motion for severance (contained in Document #606.) The remaining portions of Mr. Reyes' motion will be the subject of a separate response by the Government.

GOVERNMENT'S OMNIBUS OPPOSITION TO MOTIONS TO SEVER OF DEFENDANTS JUAN BRISENO, RICHARD REYES, SALVADOR CHAVEZ, JASON MEDINA, AND EDWARD SERNA
United States v. Juan Briseno, et al.
Cause No. 2:11-CR-0077-PPS-APR
**Page 24**

_____

*Misjoinder*

Mr. Reyes acknowledges that joinder of co-defendants is proper under Rule 8(b) "if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting the offense or offenses." [Id., page 5] However, Mr. Reyes omits the remainder of Rule 8(b), which provides: "The defendants may be charged in one or more counts together or separately. All defendants need not be charged in each count." Instead of comparing the reach of Rule 8(b) with the *allegations* against Mr. Reyes and his co-defendants in the Third Superseding Indictment, Mr. Reyes simply asserts that "there is *insufficient evidence* connecting Mr. Reyes to the co-defendants or the allegations against them and *no evidence has been tendered* to the defense indicating that Mr. Reyes is a part of this criminal enterprise" [id., page 5 (emphasis provided)], while simultaneously complaining that *the evidence against Mr. Reyes of which he is aware* is "based on self-serving and incredible statements from cooperators who are desperate for a deal." [Id., pages 5-6][8]

Mr. Reyes fails to cite any authority that would support of his misjoinder claim, and the Government is aware of none. *See, e.g., Zafiro v. United States*, 506 U.S. at 537. Consequently, his claim for misjoinder should be denied.

---

[8] As this Court and Mr. Reyes are aware, in addition to the formal discovery provided to Mr. Reyes, at June 10, 2013 hearing on Mr. Reyes' Motion for Bond Review, the Government offered detailed evidence of approximately a dozen witnesses who illuminate Mr. Reyes' role as a member of the IG's and the offenses charged in the Third Superseding Indictment.

GOVERNMENT'S OMNIBUS OPPOSITION TO MOTIONS TO SEVER OF DEFENDANTS JUAN BRISENO,
RICHARD REYES, SALVADOR CHAVEZ, JASON MEDINA, AND EDWARD SERNA
United States v. Juan Briseno, et al.
Cause No. 2:11-CR-0077-PPS-APR
**Page 25**

_____

*Severance*

Mr. Reyes severance claim combines an indelicate and dubious "spillover" claim with

the improper claim that, if tried separately, he would stand a great chance of acquittal:[9]

> In the absence of sufficient and credible evidence against Reyes, the evidence
> against the other defendants will bleed over and taint Reyes' rights to a fair trial.
> Reyes will be prejudiced by the presentation of evidence required to prove the
> cases against the other co-defendants on the many other counts (there are 29 other
> counts in the indictment.)  Moreover, because the evidence against Reyes is so
> minimal and comes only through the statements of cooperators, the prejudice is
> heightened because the cooperators' testimony will seem more truthful when it
> corroborates the charges against the co-defendants which are unrelated to Reyes'
> one count.  If Reyes is tried alone, these witnesses will likely be seen for what
> they are – desperate and unbelievable.  If Reyes is tried alongside his co-
> defendants where there is a plethora of evidence of crimes and gang membership,
> it will misleadingly appear to corroborate these otherwise-unbelievable witnesses.

[Reyes' Motion, pages 6-7]  Following his citation to a single, self-distinguishing,[10] 1971 case

from the Ninth Circuit, Mr. Reyes suddenly leaps  – with neither compass nor support – to his

self-serving conclusion:  "Reyes' minimal alleged involvement will not be assessed fairly by the

jury if he is tried alongside his co-defendant(s)." [Id., page 7]  True enough, *United States v.*

_____

[9] It is well-settled that a defendant is not entitled to severance merely because he might
have a better chance of acquittal at separate trials, and the procedural rules are designed to
promote efficiency and avoid a multiplicity of trials as long as these objections can be
accomplished without substantial prejudice to a defendant's right to a fair trial.  *See Zafiro v
United States*, 534 U.S. at 539-40.

[10] In his Motion, Mr. Reyes appends a parenthetical to his citation of *United States v.
Donaway*, 447 F.2d 940 (9th Cir. 1971) – "(Failure to sever was abuse of discretion, where
government's case covered more than 2300 pages of transcript, and less than 50 of those pages
were relevant to defendant.)" [Reyes' Motion, page 7] As is clear from the allegations of the
Third Superseding Indictment, and from the evidence summarized at the June 10, 2013 hearing
on Mr. Reyes' Motion for Bond Review, the trial evidence against Mr. Reyes is substantial.

_____

*Donaway*, 447 F.2d 940 (9th Cir. 1971) -- the sole authority cited by Mr. Reyes in support of his contention -- is a case where the defendant was convicted of violating the Travel Act by placing one bet with a bookie, who was part of a much larger conspiracy to fix horse races. Id. at 943-44. In *Donaway*, the defendant had no other connection to any other members of the conspiracy and was acquitted at trial of the conspiracy charge. Id. at 944.

The principle established in *Donaway* has no application in cases where the defendant is part of a larger conspiracy, as is Mr. Reyes here. *See, e.g., United States v. Baker*, 10 F.3d 1374, 1389 (9th Cir. 1993), *cert. denied,* 513 U.S. 934 (1994) (when defendant was a member of a conspiracy, *Donaway* is inapposite); *United States v. Mastroianni*, 749 F.2d 900, 914 (1st Cir. 1984) (*Donaway* inapplicable in cases where evidence establishes defendants were involved in the conspiracy); *and see United States v. Morales*, 655 F.3d 608, 627 (7th Cir. 2011) ("When alleged co-conspirators are indicted together, as they were here, there is a strong preference that they be tried together"); *United States v. Carrillo*, 435 F.3d 767, 778 (7th Cir. 2006) (it is well-settled that co-conspirators who are charged together generally should be tried together*); United States v. Souffront*, 338 F.3d 809, 828 (7th Cir. 2003) (same).

Moreover, Mr. Reyes makes no effort to address the well-settled law that a defendant is ordinarily not entitled to a severance when he is charged in a large, complex case – such as Mr. Reyes – simply because there is more evidence against the co-defendants than against the moving defendant. *See, e.g., United States v. Morales*, 655 F.3d 608, 625-26 (7th Cir. 2011) (affirming denial of severance and rejecting evidence-disparity argument in RICO conspiracy case where co-defendants – but not defendant – were charged with murder and attempted murder

GOVERNMENT'S OMNIBUS OPPOSITION TO MOTIONS TO SEVER OF DEFENDANTS JUAN BRISENO,
RICHARD REYES, SALVADOR CHAVEZ, JASON MEDINA, AND EDWARD SERNA
United States v. Juan Briseno, et al.
Cause No. 2:11-CR-0077-PPS-APR
**Page 27**

_____

and the acts of co-defendants who were "exceedingly violent men were discussed at length" at trial); *and see United States v. Thornton*, 197 F.3d 241, 256 (7th Cir. 1999) (rejecting evidence-disparity argument and correctly noting: "[A] case can be made that the 'I'm just a little fish compared to these other guys' defense theme carries some weight with juries, so trying everyone together is not automatically a bad deal for non-ringleaders.")

Consequently, Mr. Reyes' Motion is without merit and should be denied.

### *The Allegations of Mr. Chavez's Motion*

Mr. Chavez seeks a severance from Mr. Briseno, as well as a "*possible* severance" from "other defendants that can presently not be specifically designated." [Chavez Motion, page 1 (claiming requires Bill of Particulars before determining whether desires severance from any other defendants) (emphasis provided)]  Mr. Chavez's Motion admits he is charged on the first two pages of the Third Superseding Indictment [*see* id., page 2, ¶ 1], but omits that the referenced charge – Count One – is the RICO conspiracy charge and that the RICO conspiracy charge includes conduct that began in 2002 and continued for more than a decade, and that the RICO conspiracy charge consumes some 19 pages of the Third Superseding Indictment. Likewise, while Mr. Chavez concedes that he is also charged "on page 20, in the introductory paragraphs to Count 2, together with all named defendants, alleging that offenses were committed from September 2002 through the date of the indictment" [id., page 2], he fails to acknowledge that Count 2 charges him – and all of his other co-defendants – with Possession With Intent to Distribute and Distribution of Cocaine and Marijuana.  [*See* Indictment, pages 20-21]

**GOVERNMENT'S OMNIBUS OPPOSITION TO MOTIONS TO SEVER OF DEFENDANTS JUAN BRISENO,
RICHARD REYES, SALVADOR CHAVEZ, JASON MEDINA, AND EDWARD SERNA**
United States v. Juan Briseno, et al.
Cause No. 2:11-CR-0077-PPS-APR
**Page 28**
_____

Mr. Chavez next claims that "the Government has not made any allegations ... that [Mr. Chavez] is a part of any criminal enterprise, nor has it been alleged that [Mr. Chavez] committed a single criminal act." [Id., page 3 (additionally, expressing disappointment that more specific allegations have not been provided)]  Because Mr. Chavez has cited portions of the Third Superseding Indictment (which charges Mr. Chavez with being a member of the RICO conspiracy as well as other specified crimes), and because Mr. Chavez has discussed the allegations against him in the Indictment, Mr. Chavez's statement is somewhat surprising.

Obviously, Mr. Chavez's claims for severance are erroneous and should be denied.

### *Joinder*

Mr. Chavez correctly notes: "In assessing the propriety of joinder under Rule 8(a), the Court of Appeals looks solely to the face of the government's indictment and not to any evidence ultimately presented at the defendant's trial." [Chavez Motion, page 3]  Thereafter, Mr. Chavez appears to concede that joinder of Mr. Chavez was proper.  [*See* id.]

Consequently, no response by the Government is necessary.  Mr. Chavez's claim for improper joinder should be denied.

### *Severance*

Turning to his severance claims, for the most part, Mr. Chavez overlooks the unassailable authorities that create a particular strong presumption in favor of joint trials, particularly in conspiracy cases.  *See, e.g., Zafiro v. United States*, 506 U.S. at 537 (*citing Richardson v. Marsh*, 481 U.S. at 209-10); *United States v. Morales*, 655 F.3d at 627 ("When alleged co-conspirators are indicted together, as they were here, there is a strong preference that they be tried together");

**GOVERNMENT'S OMNIBUS OPPOSITION TO MOTIONS TO SEVER OF DEFENDANTS JUAN BRISENO,
RICHARD REYES, SALVADOR CHAVEZ, JASON MEDINA, AND EDWARD SERNA**
United States v. Juan Briseno, et al.
Cause No. 2:11-CR-0077-PPS-APR
**Page 29**
_____

*United States v. Carrillo*, 435 F.3d at 778 (it is well-settled that co-conspirators who are charged

together generally should be tried together*); United States v. Souffront*, 338 F.3d at 828 (same).

To his credit, Mr. Chavez did not entirely overlook *Zafiro v. United States*, as he

correctly cited it for the proposition that the District Court should grant a Rule 14 severance

when "there is a serious risk that a joint trial would compromise a specific trial right of one of

the defendants, or prevent the jury from making a reliable judgment about guilt or innocence."

[Chavez Motion, page 4]  Similarly, Mr. Chavez also accurately reproduced a block-indented

citation to *United States v. Coleman*, 22 F.3d 126, 134 (7th Cir. 1994).  However, curiously, Mr.

Chavez's Motion highlighted in bold print -- "when offenses are joined because of their 'same or

similar character,' the risk of unnecessary unfairness infiltrating the joint trial is elevated" [id.] –

but accidentally forgot to highlight the next quoted sentence, that is far more telling and to the

point:

> Unlike instances of joinder of offenses based on the same or closely connected
> acts or transactions, "[t]here is no comparable saving of trial time *when offenses
> are related only by being the same type are joined*, since *the offenses are usually
> proven by different bodies of evidence [and]*, **when totally unrelated, similar
> offenses are joined, defendant faces 'considerable risk' of prejudice**."

[Chavez Motion, page 4 (*quoting United States v. Coleman*, 22 F.3d at 134)]

Because Mr. Chavez has plainly reviewed the Third Superseding Indictment, his

quotations from *United States v Coleman* are that much more surprising.  Obviously, none of the

offenses charged in this RICO conspiracy case are "totally unrelated" to or with one another, nor

– as an active RICO co-conspirator – are they, in any cognizable sense, "totally unrelated" to Mr.

Chavez.  To the contrary, Mr. Chavez is clearly charged with being, in a very real sense, in the

GOVERNMENT'S OMNIBUS OPPOSITION TO MOTIONS TO SEVER OF DEFENDANTS JUAN BRISENO,
RICHARD REYES, SALVADOR CHAVEZ, JASON MEDINA, AND EDWARD SERNA
United States v. Juan Briseno, et al.
Cause No. 2:11-CR-0077-PPS-APR
**Page 30**

_____

heart of the extensive and extended conspiracy.  As a result, the considerations of *United States*

*v. Coleman* necessarily weigh *against* the relief sought by Mr. Chavez in his Motion.[11]

> To be sure, Mr. Chavez's Motion makes the self-serving and conclusory allegation:

> [T]he disparity in weight of evidence against the death penalty and other defendants charged with murder or attempted murder, and the complex nature of the evidence anticipated, will deny [Mr. Chavez] his right to a fair trial.  While this fear of "spill-over" can be mitigated sufficiently when there is ample evidence to convict the moving defendant and when [the] jury is given instructions to assess each defendant individually [citation omitted], as [Mr. Chavez] sits before this Court at this moment in this litigation, that is not the case.

[Chavez Motion, pages 6-7]  However, Mr. Chavez makes no attempt to address the well-

established and compelling authorities and considerations to the contrary.  As we have

previously established, "In all but the 'most unusual circumstances,' the risk of prejudice arising

from a joint trial is 'outweighed by the economies of a single trial in which all facets of the crime

can be explored once and for all.'" *United States v. Spagnola*, 632 F.3d 981, 987 (7th Cir. 2011)

(*quoting United States v. Alviar*, 573 F.3d 526, 539 (7th Cir.  2009); *United States v. Velasquez*,

772 F.2d 1348, 1352 (7th Cir. 1985)); *United States v. Wilson*, 481 F.3d 475, 482-83 (7th Cir.

2007) ("[T]here is a strong preference that co-conspirators be tried together, particularly when

they were indicted together.")

As previously stated, measures less drastic than severance, such as limiting instructions,

will ordinarily suffice to cure any risk of prejudice.  *Zafiro v United States*, 534 U.S. at 538-39.

---

[11]  In pages 4-6 of his Motion, Mr. Chavez cites a series of cases that urge caution under certain circumstances in joint trials.  However, in his Motion, Mr. Chavez has not demonstrated that any of those circumstances exist in this case.

**GOVERNMENT'S OMNIBUS OPPOSITION TO MOTIONS TO SEVER OF DEFENDANTS JUAN BRISENO,
RICHARD REYES, SALVADOR CHAVEZ, JASON MEDINA, AND EDWARD SERNA**
United States v. Juan Briseno, et al.
Cause No. 2:11-CR-0077-PPS-APR
**Page 31**

_____

Juries are properly presumed to follow their instructions, including instructions to convict only if the charges are proven beyond a reasonable doubt and to give each defendant separate consideration regarding the charges against him.  Id. at 540-41.  "Proper jury instructions are 'an adequate safeguard against the risk of prejudice in the form of jury confusion, evidentiary spillover and cumulation of evidence.'" *United States v. Souffront*, 338 F.3d at 831 (citation omitted).  This is especially true in conspiracy cases, because even if a defendant is tried by himself, all of the evidence establishing the conspiracy will nevertheless be admissible against him.  *United States v. Alviar*, 573 F.3d 526, 539 (7th Cir. 2009); *accord United States v. Morales*, 655 F.3d 608, 627 (7th Cir. 2011) (essential acts of co-conspirators would still have been admissible against defendant in a separate trial)*; United States v. Souffront*, 338 F.3d at 832 (particularly difficult to find prejudice, when evidence admissible at a joint trial would also be admissible against the defendant if he was tried separately.)

Likewise, the fact that a defendant is charged in a large, complex case, and there is more evidence against the co-defendants than against the moving defendant will not ordinarily entitle him to a severance.  *United States v. Morales*, 655 F.3d 608, 625-26 (7th Cir. 2011) (affirming denial of severance and rejecting evidence-disparity argument in RICO conspiracy case where co-defendants – but not defendant – were charged with murder and attempted murder and the acts of co-defendants who were "exceedingly violent men were discussed at length" at trial); and see  *United States v. Thornton*, 197 F.3d 241, 256 (7th Cir. 1999) (rejecting evidence-disparity argument and correctly noting:  "[A] case can be made that the 'I'm just a little fish compared to these other guys' defense theme carries some weight with juries, so trying everyone together is

_____

not automatically a bad deal for non-ringleaders.")

Mr. Chavez's Motion addresses none of these controlling authorities.

However, on pages 7-8 of his Motion, Mr. Chavez again laments his lack of additional evidence, that is the basis for his pending Bill of Particulars, and that will be the subject of a separate response by the Government.  On pages 8-9, Mr. Chavez's Motion advances claims of unnecessary costs and expenses associated with trying death-eligible and non-death-eligible defendants together.  Ignoring a plethora of case law identified *infra*, specifically holding to the contrary, on pages 10-12 of Mr. Chavez's Motion, he cites dubious partisan studies in support of his eventual proposition that there "is a legitimate and serious concern for [Mr. Chavez] that studies show the palpable influence on the mindset of death-qualified jurors will affect [Mr. Chavez's] ability to get a fair trial on the merits of the case brought against ***him*** by the Government." [Id., page 12 (emphasis original)]

Finally, on pages 12-14 of Mr. Chavez's Motion, he quotes extensively certain *obiter dicta* in *United States v. Baker*, 10 F.3d 1374 (9th Cir. 1993), which we have previously addressed, above.  In so doing, Mr. Chavez says he is responding in advance of the Government's arguments against severance.  [Id., page 12-13]  However, Mr. Chavez fails to apprise the Court of two important facts.  First, as we have previously established, *United States v. Baker*, involved very different facts and circumstances than those presented here.  Indeed, as previously indicated, the Ninth Circuit described *Baker* as "one of the lengthiest and costliest trials in the nation's history," involving some 24 defendants (15 of whom began a joint trial (3 of whom pled guilty during trial)), in a trial that lasted over 16 months, produced over 30,000 pages

**GOVERNMENT'S OMNIBUS OPPOSITION TO MOTIONS TO SEVER OF DEFENDANTS JUAN BRISENO,
RICHARD REYES, SALVADOR CHAVEZ, JASON MEDINA, AND EDWARD SERNA**
<u>United States v. Juan Briseno, et al.</u>
Cause No. 2:11-CR-0077-PPS-APR
**Page 33**
_____

of transcripts, involved over 250 witnesses and thousands of exhibits, and presented evidence on

over 2,000 narcotics transactions spanning an 11-year period.  10 F.3d at 1386.  Obviously, the

*Baker* "mega-trial" is a far cry from the modest approximately 2-3 month, 3-5 defendant trial,

anticipated in this case.  <u>Second</u>, despite all of Mr. Chavez's *dicta* quotations, in fact, the Ninth

Circuit *held* the District Court *properly denied* all of the various defendants' severance motions.

10 F.3d at 1389.

As a result, Mr. Chavez's Motion is without merit and should be denied.

### *The Allegations of the Joint Motion of Mr. Medina and Mr. Serna*

In their joint Motion [Document #616], Mr. Medina and Mr. Serna acknowledge they are

charged in the Third Superseding Indictment was a RICO conspiracy alleging their involvement

as members of the Almighty Imperial Gangsters street gang, as well as various substantive

offenses of attempted murder in aid of racketeering and the use of a firearm in aid of

racketeering.  [<u>Medina-Serna Motion</u>, page 1]  Mr. Medina and Mr. Serna further admit, as they

must, that they are charged as participants in a vast and lengthy drug conspiracy with many other

IG's, and that Mr. Medina is charged with murder in aid of racketeering.  [<u>Id</u>.]  Mr. Medina and

Mr. Serna correctly say the Government has elected not to seek the death penalty against Mr.

Medina and that Mr. Serna is not eligible for the death penalty.  [<u>Id</u>.]  Undoubtedly aware they

are both charged in the Third Superseding Indictment with conspiring **with Mr. Briseno** in the

extended and extensive RICO conspiracy  [*see* <u>id</u>, page 3 ("there is overlap of some of the

charges against Juan Briseno and the charges against defendants Medina and Serna....")], Mr.

Medina and Mr. Serna accurately note that Mr. Briseno is the only capital defendant.  [<u>Id</u>., page

GOVERNMENT'S OMNIBUS OPPOSITION TO MOTIONS TO SEVER OF DEFENDANTS JUAN BRISENO,
RICHARD REYES, SALVADOR CHAVEZ, JASON MEDINA, AND EDWARD SERNA
United States v. Juan Briseno, et al.
Cause No. 2:11-CR-0077-PPS-APR
**Page 34**

_____

2]  Solely because Mr. Briesno is dealth-eligible, Mr. Medina and Mr. Serna seek a severance of

their trial from his.  [Id. ("It is specifically with respect to co-defendant Juan Briseno that the

defendants Medina and Serna seek severence of their trial from that of Juan Briseno.")]

Having initially cited to Rule 8(b) in their Motion [*see* Medina-Serna Motion, page 1

(preamble)], Mr. Medina and Mr. Serna forego any Rule 8(b) (misjoinder) argument and proceed

solely on the basis of Rule 14(a).  [*See generally* id., pages 2-4]  In their Motion, Mr. Medina

and Mr. Serna necessarily acknowledge:

> It is well-settled that a defendant seeking severance must show more than that a
> separate trial would have given him a better chance for acquittal.  He must argue
> actual prejudice which establishes that absent the granting of the severance
> motion, he was unable to obtain a fair trial.

[Medina-Serna Motion, page 2 (emphasis provided)]  Further, citing *Buchanan v. Kentucky*, 483

U.S. 402 (1987), Mr. Medina and Mr. Serna correctly accept that their trial before a death-

qualified jury is not sufficient to justify a severance.  [Id., page 3]

However, in attempting to conflate "actual prejudice" in a joint trial with Mr. Briseno,

Mr. Medina and Mr. Serna allege that: (1) there are "many serious crimes [in the Third

Superseding Indictment] that are charged only against Juan Briseno" [id, page 3]; and (2) "[i]f a

single trial is held, one death qualified jury would be required to consider all of the conduct

charged, including murders in which defendants Medina and Serna were not involved."  [Id.]  As

a result, they claim, "[i]t will be difficult for the jury to distinguish and separate the

government's evidence supporting numerous homicides against Juan Briseno as it considers the

fate of defendants Medina and Serna.  [Id.]  Apparently unable to identify helpful authority in the

**GOVERNMENT'S OMNIBUS OPPOSITION TO MOTIONS TO SEVER OF DEFENDANTS JUAN BRISENO,
RICHARD REYES, SALVADOR CHAVEZ, JASON MEDINA, AND EDWARD SERNA**
United States v. Juan Briseno, et al.
Cause No. 2:11-CR-0077-PPS-APR
**Page 35**

_____

Seventh Circuit, Mr. Medina and Mr. Serna rely on a district court case from the Second Circuit,

*United States v. Rollack*, 64 F.Supp.2d 255 (S.D.N.Y 1999).  [*See* id., page 3-4]

In so doing, Mr. Medina and Mr. Serna omit that the "balance-tipping" make-weight

applied by the judge in *Rollack*, was – and is – repeatedly rejected in that same District both,

before and after *Rollack*'s its publication in 1999.  *See, e.g., United States v. Bin Laden*, 109

F.Supp.2d 211, 222 (S.D.N.Y. 2000), *affirmed sub nom*, *In re Terrorist Bombings of U.S.*

*Embassies in East Africa*, 552 F.3d 93 (2d Cir. 2008) (rejecting application of *Rollack*, and

holding: "we do not find that a joint trial of all six Defendants in custody would create a serious

risk that a specific trial right of a Defendant will be violated or would prevent the jury from

reliably adjudicating the Defendants' guilt or innocence.  That the joint trial will be held before a

death-qualified jury does not alter that analysis."); *United States v. Heatley*, 1998 WL 671462,

\*4 (S.D.N.Y 1998) (Judge Sotomayor denied severance of a non-capital defendant from a joint

trial with a capital defendant, reasoning that there is no "inherent prejudice to noncapital

defendants in being tried with capital ones," where the non-capital defendant "is charged with

numerous acts of violence" and where the government's evidence would "in the main apply both

to the noncapital and capital defendants alike.")

Clearly, *Rollack*  is not followed in its own District, and as established above, it is in

conflict with controlling and well-reasoned authorities holding to the contrary.  *See, e.g., United*

*States v. Spagnola*, 632 F.3d at 987 ("In all but the 'most unusual circumstances,' the risk of

prejudice arising from a joint trial is 'outweighed by the economies of a single trial in which all

facets of the crime can be explored once and for all.'" (*quoting United States v. Alviar*, 573 F.3d

**GOVERNMENT'S OMNIBUS OPPOSITION TO MOTIONS TO SEVER OF DEFENDANTS JUAN BRISENO, RICHARD REYES, SALVADOR CHAVEZ, JASON MEDINA, AND EDWARD SERNA**
United States v. Juan Briseno, et al.
Cause No. 2:11-CR-0077-PPS-APR
**Page 36**
_____

at 539)); *United States v. Velasquez*, 772 F.2d 1348, 1352 (7th Cir. 1985)); *United States v. Wilson*, 481 F.3d 475, 482-83 (7th Cir. 2007) ("[T]here is a strong preference that co-conspirators be tried together, particularly when they were indicted together.")

Measures less drastic than severance, such as limiting instructions, will ordinarily suffice to cure any risk of prejudice. *Zafiro v United States*, 534 U.S. at 540-41(Juries are presumed to follow their instructions, including instructions to convict only if the charges are proven beyond a reasonable doubt and to give each defendant separate consideration regarding the charges against him); *United States v. Souffront*, 338 F.3d 809, 831 (7th Cir. 2003) ("Proper jury instructions are 'an adequate safeguard against the risk of prejudice in the form of jury confusion, evidentiary spillover and cumulation of evidence.'" (citation omitted)); *United States v. Alviar*, 573 F.3d 526, 539 (7th Cir. 2009) (This is especially true in conspiracy cases, because even if a defendant is tried by himself, all of the evidence establishing the conspiracy will nevertheless be admissible against him, in any event); *accord United States v. Morales*, 655 F.3d 608, 627 (7th Cir. 2011) (affirming denial of severance and rejecting evidence-disparity argument in RICO conspiracy case where co-defendants – but not defendant – were charged with murder and attempted murder and the acts of co-defendants who were "exceedingly violent men were discussed at length" at trial); *United States v. Souffront*, 338 F.3d at 832 (particularly difficult to find prejudice, when evidence admissible at a joint trial would also be admissible against the defendant if he was tried separately); *and see United States v. Thornton*, 197 F.3d 241, 256 (7th Cir. 1999) (rejecting evidence-disparity argument and correctly noting: "[A] case can be made that the 'I'm just a little fish compared to these other guys' defense theme carries

**GOVERNMENT'S OMNIBUS OPPOSITION TO MOTIONS TO SEVER OF DEFENDANTS JUAN BRISENO,
RICHARD REYES, SALVADOR CHAVEZ, JASON MEDINA, AND EDWARD SERNA**
<u>United States v. Juan Briseno, et al.</u>
Cause No. 2:11-CR-0077-PPS-APR
**Page 37**
_____

some weight with juries, so trying everyone together is not automatically a bad deal for non-

ringleaders.")

     For each of the reasons set forth above, none of Mr. Medina's or Mr. Serna's claims have

merit and the joint Motion of Mr. Medina and Mr. Serna should, therefore, be denied.

     WHEREFORE, for each of the independent reasons set forth above, the United States

respectfully urges the Court to deny, in all things, the Motions for Severance of Juan Briseno

[Document #610], Richard Reyes [Document #606], Salvador Chavez [Document #608], and the

**GOVERNMENT'S OMNIBUS OPPOSITION TO MOTIONS TO SEVER OF DEFENDANTS JUAN BRISENO,**
**RICHARD REYES, SALVADOR CHAVEZ, JASON MEDINA, AND EDWARD SERNA**
United States v. Juan Briseno, et al.
Cause No. 2:11-CR-0077-PPS-APR
**Page 38**
_____

joint motion of Jason Medina and Edward Serna [Document #616], and for the reasons set forth

above, order that a single joint trial of the co-defendants remaining in this case should be had.

<div style="margin-left:40%">

Respectfully submitted,

DAVID CAPP
UNITED STATES ATTORNEY

s/ *David J. Nozick*

David J. Nozick
Assistant U.S. Attorney
5400 Federal Plaza
Suite 1500
Hammond, IN 46320
Tel. (219) 937-5655
www.david.nozick@usdoj.gov

s/ *Bruce R. Hegyi*

Bruce R. Hegyi
Trial Attorney
Capital Case Unit
Criminal Division
United States Department of Justice
1331 F Street, N.W., Third Floor
Washington, D.C.  20530
Tel. (202) 616-4582
Cell (703) 536-4774
www.bruce.hegyi@usdoj.gov

</div>

**GOVERNMENT'S OMNIBUS OPPOSITION TO MOTIONS TO SEVER OF DEFENDANTS JUAN BRISENO,**
**RICHARD REYES, SALVADOR CHAVEZ, JASON MEDINA, AND EDWARD SERNA**
United States v. Juan Briseno, et al.
Cause No. 2:11-CR-0077-PPS-APR
**Page 39**

_____

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this date, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to counsel for all of the defendants.


_s/ Bruce R. Hegyi_
Bruce R. Hegyi
Trial Attorney

Case 3:09-cr-00427-JAF Document 985 Filed 03/08/13 Page 1 of 15
Case 15-2347 Document: 35 Filed 07/27/2016 Pages: 4186
Case 2:11-cr-00077-PPS-APR Document 626-1 Filed 08/30/13 Page 1 of 15

UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

UNITED STATES OF AMERICA,

    Plaintiff,

    v.

ALEXIS CANDELARIO-SANTANA (01),
DAVID OQUENDO-RIVAS (05),

    Defendants.

Criminal No. 09-427 (JAF)



## **V E R D I C T**

We, the Jury, find as follows:

1.    **COUNT ONE:** RICO Conspiracy (Racketeer Influenced and Corrupt
              Organizations Act)

        **Alexis Candelario-Santana:**



         Guilty              Not Guilty

*NOTE:*    If you found the Defendant guilty in Count One, please answer the
        following questions:

Regarding the Notice of Special Findings for Count One, we, the Jury, enter
these special findings regarding drugs/narcotics types and amounts:

(A)    **Heroin** – Do you find that the government proved beyond a reasonable
        doubt that Alexis Candelario-Santana and the defendants mentioned in
        Count One possessed with intent to distribute at least one kilogram (2.2
        lbs.) of heroin from 1993 to October 2009?



         YES             NO

Case 3:09-cr-00427-JAF   Document 985   Filed 03/08/13   Page 2 of 15
Case 2:11-cr-00077-PPS-APR   Document 626-1   Filed 08/30/13   Page 2 of 15
Case: 15-2347   Document: 35   Filed: 07/27/2016   Pages: 4186

Criminal No. 09-427 (JAF)                                    Page 2 of 15

**(B)**   **Crack Cocaine** -- Do you find that the government proved beyond a reasonable doubt that Alexis Candelario-Santana and the defendants mentioned in Count One possessed with intent to distribute at least two-hundred and eighty grams of crack cocaine (cocaine base) from 1993 to October 2009?



<div align="center">

___✓___            _____
YES                  NO

</div>

**(C)**   **Cocaine** -- Do you find that the government proved beyond a reasonable doubt that Alexis Candelario-Santana and the defendants mentioned in Count One possessed with intent to distribute at least five kilograms (11 lbs.) of cocaine from 1993 to October 2009?

<div align="center">

___✓___            _____
YES                  NO

</div>

**(D)**   **Marijuana** -- Do you find that the government proved beyond a reasonable doubt that Alexis Candelario-Santana and the defendants mentioned in Count One possessed with intent to distribute at least a detectable amount of marijuana from 1993 to October 2009?

<div align="center">

___✓___            _____
YES                  NO

</div>

2.   <u>**COUNT TWO:**</u>   (Violent Crime in Aid of Racketeering Activity)

### Murder of Joan Manuel Class Guzmán

We, the Jury, find Defendant Alexis Candelario-Santana:



<div align="center">

___✓___            _____
GUILTY             NOT GUILTY

</div>

We, the Jury, find Defendant David Oquendo-Rivas:

<div align="center">

___✓___            _____
GUILTY             NOT GUILTY

</div>

Case 3:09-cr-00427-JAF   Document 985   Filed 03/08/13   Page 3 of 15
Case 15-2347   Document: 35   Filed 07/27/2016   Pages: 4186
Case 2:11-cr-00077-PPS-APR   Document 626-1   Filed 08/30/13   Page 3 of 15

3.        **COUNT THREE:**  (Violent Crime in Aid of Racketeering Activity)

### Murder of Pedro Semprit Santana

We, the Jury, find Defendant Alexis Candelario-Santana:

‾‾‾‾‾‾‾‾‾‾‾‾‾‾            ‾‾‾‾‾‾‾‾‾‾‾‾‾‾
   GUILTY                    NOT GUILTY

We, the Jury, find Defendant David Oquendo-Rivas:

‾‾‾‾‾‾‾‾‾‾‾‾‾‾            ‾‾‾‾‾‾‾‾‾‾‾‾‾‾
   GUILTY                    NOT GUILTY

4.        **COUNT FOUR:**  (Violent Crime in Aid of Racketeering Activity)

### Murder of José Angel Hernández Martínez

We, the Jury, find Defendant Alexis Candelario-Santana:

‾‾‾‾‾‾‾‾‾‾‾‾‾‾            ‾‾‾‾‾‾‾‾‾‾‾‾‾‾
   GUILTY                    NOT GUILTY

We, the Jury, find Defendant David Oquendo-Rivas:

‾‾‾‾‾‾‾‾‾‾‾‾‾‾            ‾‾‾‾‾‾‾‾‾‾‾‾‾‾
   GUILTY                    NOT GUILTY

5.        **COUNT FIVE:**  (Violent Crime in Aid of Racketeering Activity)

### Murder of John Henry García Martínez

We, the Jury, find Defendant Alexis Candelario-Santana:

‾‾‾‾‾‾‾‾‾‾‾‾‾‾            ‾‾‾‾‾‾‾‾‾‾‾‾‾‾
   GUILTY                    NOT GUILTY

We, the Jury, find Defendant David Oquendo-Rivas:

‾‾‾‾‾‾‾‾‾‾‾‾‾‾            ‾‾‾‾‾‾‾‾‾‾‾‾‾‾
   GUILTY                    NOT GUILTY

Case 3:09-cr-00427-JAF   Document 985   Filed 03/08/13   Page 4 of 15
Case 2:11-cr-00077-PPS-APR   Document 626-1   Filed 08/30/13   Page 4 of 15
Case: 15-2347   Document: 35   Filed: 07/27/2016   Pages: 4186

Criminal No. 09-427 (JAF)                                          Page 4 of 15

**6.**     **COUNT SIX:** (Violent Crime in Aid of Racketeering Activity)

### Murder of Elisa del Carmen Ocasio

We, the Jury, find Defendant Alexis Candelario-Santana:

_____        _____
GUILTY                        NOT GUILTY

We, the Jury, find Defendant David Oquendo-Rivas:

_____        _____
GUILTY                        NOT GUILTY

**7.**     **COUNT SEVEN:** (Violent Crime in Aid of Racketeering Activity)

### Murder of Samuel Ruiz Martínez

We, the Jury, find Defendant Alexis Candelario-Santana:

_____        _____
GUILTY                        NOT GUILTY

We, the Jury, find Defendant David Oquendo-Rivas:

_____        _____
GUILTY                        NOT GUILTY

**8.**     **COUNT EIGHT:** (Violent Crime in Aid of Racketeering Activity)

### Murder of Rafael Angel Ramos Rivera

We, the Jury, find Defendant Alexis Candelario-Santana:

_____        _____
GUILTY                        NOT GUILTY

We, the Jury, find Defendant David Oquendo-Rivas:

_____        _____
GUILTY                        NOT GUILTY

Case 3:09-cr-00427-JAF   Document 985   Filed 03/08/13   Page 5 of 15
Case 15-2347   Document: 35   Filed: 07/27/2016   Pages: 4186
Case 2:11-cr-00077-PPS-APR   Document 626-1   Filed 08/30/13   Page 5 of 15

Criminal No. 09-427 (JAF)                                          Page 5 of 15

**9.**     **COUNT NINE:**  (Violent Crime in Aid of Racketeering Activity)

### Murder of Tina Marie Rodríguez Otero

We, the Jury, find Defendant Alexis Candelario-Santana:

__✓_____          _____
GUILTY                        NOT GUILTY

We, the Jury, find Defendant David Oquendo-Rivas:

__✓_____          _____
GUILTY                        NOT GUILTY

**10.**    **COUNT TEN:**  (Violent Crime in Aid of Racketeering Activity)

### Murder of Unborn Child

We, the Jury, find Defendant Alexis Candelario-Santana:

__✓_____          _____
GUILTY                        NOT GUILTY

We, the Jury, find Defendant David Oquendo-Rivas:

__✓_____          _____
GUILTY                        NOT GUILTY

**11.**    **COUNT ELEVEN:**  (Carry and Use of a Firearm During and in Relation to a
Crime of Violence)

### Murder of Joan Manuel Class Guzmán

We, the Jury, find Defendant Alexis Candelario-Santana:

__✓_____          _____
GUILTY                        NOT GUILTY

We, the Jury, find Defendant David Oquendo-Rivas:

__✓_____          _____
GUILTY                        NOT GUILTY

Case 3:09-cr-00427-JAF   Document 985   Filed 03/08/13   Page 6 of 15
Case 2:11-cr-00077-PPS-APR   Document 626-1   Filed 08/30/13   Page 6 of 15
Case 15-2347   Document: 35   Filed: 07/27/2016   Pages: 4186

**12.**      <u>**COUNT TWELVE:**</u>  (Carry and Use of a Firearm During and in Relation to a Crime of Violence)

### <u>Murder of Pedro Semprit Santana</u>

We, the Jury, find Defendant Alexis Candelario-Santana:

_____✓_____                    _____
GUILTY                                      NOT GUILTY

We, the Jury, find Defendant David Oquendo-Rivas:

_____✓_____                    _____
GUILTY                                      NOT GUILTY

**13.**      <u>**COUNT THIRTEEN:**</u>  (Carry and Use of a Firearm During and in Relation to a Crime of Violence)

### <u>Murder of José Angel Hernández Martínez</u>

We, the Jury, find Defendant Alexis Candelario-Santana:

_____✓_____                    _____
GUILTY                                      NOT GUILTY

We, the Jury, find Defendant David Oquendo-Rivas:

_____✓_____                    _____
GUILTY                                      NOT GUILTY

**14.**      <u>**COUNT FOURTEEN:**</u>  (Carry and Use of a Firearm During and in Relation to a Crime of Violence)

### <u>Murder of John Henry García Martínez</u>

We, the Jury, find Defendant Alexis Candelario-Santana:

_____✓_____                    _____
GUILTY                                      NOT GUILTY

We, the Jury, find Defendant David Oquendo-Rivas:

_____✓_____                    _____
GUILTY                                      NOT GUILTY

Case 3:09-cr-00427-JAF   Document 985   Filed 03/08/13   Page 7 of 15
Case 2:11-cr-00077-PPS-APR   Document 626-1   Filed 08/30/13   Page 7 of 15
Case 15-2347   Document: 35   Filed: 07/27/2016   Pages: 4186

15.     **COUNT FIFTEEN:**   (Carry and Use of a Firearm During and in Relation to a
Crime of Violence)

### Murder of Elisa del Carmen Ocasio

We, the Jury, find Defendant Alexis Candelario-Santana:

$\checkmark$

GUILTY                       NOT GUILTY

We, the Jury, find Defendant David Oquendo-Rivas:

$\checkmark$

GUILTY                       NOT GUILTY

16.     **COUNT SIXTEEN:**   (Carry and Use of a Firearm During and in Relation to a
Crime of Violence)

### Murder of Samuel Ruiz Martínez

We, the Jury, find Defendant Alexis Candelario-Santana:

$\checkmark$

GUILTY                       NOT GUILTY

We, the Jury, find Defendant David Oquendo-Rivas:

$\checkmark$

GUILTY                       NOT GUILTY

17.     **COUNT SEVENTEEN:**   (Carry and Use of a Firearm During and in Relation
to a Crime of Violence)

### Murder of Rafael Angel Ramos Rivera

We, the Jury, find Defendant Alexis Candelario-Santana:

$\checkmark$

GUILTY                       NOT GUILTY

We, the Jury, find Defendant David Oquendo-Rivas:

$\checkmark$

GUILTY                       NOT GUILTY

Case 3:09-cr-00427-JAF   Document 985   Filed 03/08/13   Page 8 of 15
Case 15-2347   Document: 35   Filed 07/27/2016   Pages: 4186
Case 2:11-cr-00077-PPS-APR   Document 626-1   Filed 08/30/13   Page 8 of 15

Criminal No. 09-427 (JAF)                                    Page 8 of 15

18.      **COUNT EIGHTEEN:**  (Carry and Use of a Firearm During and in Relation to
                                 a Crime of Violence)

### Murder of Tina Marie Rodríguez Otero

We, the Jury, find Defendant Alexis Candelario-Santana:

_____            _____
    GUILTY                      NOT GUILTY

We, the Jury, find Defendant David Oquendo-Rivas:

_____            _____
    GUILTY                      NOT GUILTY

19.      **COUNT NINETEEN:**  (Carry and Use of a Firearm During and in Relation to
                                 a Crime of Violence)

### Murder of Unborn Child

We, the Jury, find Defendant Alexis Candelario-Santana:

_____            _____
    GUILTY                      NOT GUILTY

We, the Jury, find Defendant David Oquendo-Rivas:

_____            _____
    GUILTY                      NOT GUILTY

20.      **COUNT TWENTY-NINE:**          (Violent Crime in Aid of Racketeering
                                          Activity)

### Attempted Murder of Carmen María García Santiago

We, the Jury, find Defendant Alexis Candelario-Santana:

_____            _____
    GUILTY                      NOT GUILTY

We, the Jury, find Defendant David Oquendo-Rivas:

_____            _____
    GUILTY                      NOT GUILTY

Case 3:09-cr-00427-JAF   Document 985   Filed 03/08/13   Page 9 of 15
Case 15-2347   Document: 35   Filed: 07/27/2016   Pages: 4186
Case 2:11-cr-00077-PPS-APR   Document 626-1   Filed 08/30/13   Page 9 of 15

Criminal No. 09-427 (JAF)                                    Page 9 of 15

21. **COUNT THIRTY:** (Violent Crime in Aid of Racketeering Activity)

### Attempted Murder of Omaris Fonseca, a Minor

We, the Jury, find Defendant Alexis Candelario-Santana:

$\checkmark$

_____          _____
GUILTY              NOT GUILTY

We, the Jury, find Defendant David Oquendo-Rivas:

$\checkmark$

_____          _____
GUILTY              NOT GUILTY

22. **COUNT THIRTY-ONE:** (Violent Crime in Aid of Racketeering Activity)

### Attempted Murder of Wilfredo Semprit-Santana

We, the Jury, find Defendant Alexis Candelario-Santana:

$\checkmark$

_____          _____
GUILTY              NOT GUILTY

We, the Jury, find Defendant David Oquendo-Rivas:

$\checkmark$

_____          _____
GUILTY              NOT GUILTY

23. **COUNT THIRTY-TWO:** (Violent Crime in Aid of Racketeering Activity)

### Attempted Murder of Amarilys Fonseca-Matias

We, the Jury, find Defendant Alexis Candelario-Santana:

$\checkmark$

_____          _____
GUILTY              NOT GUILTY

We, the Jury, find Defendant David Oquendo-Rivas:

$\checkmark$

_____          _____
GUILTY              NOT GUILTY

900

Criminal No. 09-427 (JAF)                                    Page 10 of 15

**24.**   **COUNT THIRTY-THREE:** (Violent Crime in Aid of Racketeering Activity)

### Attempted Murder of Melissa Fonseca

We, the Jury, find Defendant Alexis Candelario-Santana:

‾‾‾‾‾‾‾‾‾‾‾          ‾‾‾‾‾‾‾‾‾‾‾
  GUILTY              NOT GUILTY

We, the Jury, find Defendant David Oquendo-Rivas:

‾‾‾‾‾‾‾‾‾‾‾          ‾‾‾‾‾‾‾‾‾‾‾
  GUILTY              NOT GUILTY

**25.**   **COUNT THIRTY-FOUR:** (Violent Crime in Aid of Racketeering Activity)

### Attempted Murder of José Amézquita Semprit

We, the Jury, find Defendant Alexis Candelario-Santana:

‾‾‾‾‾‾‾‾‾‾‾          ‾‾‾‾‾‾‾‾‾‾‾
  GUILTY              NOT GUILTY

We, the Jury, find Defendant David Oquendo-Rivas:

‾‾‾‾‾‾‾‾‾‾‾          ‾‾‾‾‾‾‾‾‾‾‾
  GUILTY              NOT GUILTY

**26.**   **COUNT THIRTY-FIVE:** (Violent Crime in Aid of Racketeering Activity)

### Attempted Murder of Miriam Figueroa Robles

We, the Jury, find Defendant Alexis Candelario-Santana:

‾‾‾‾‾‾‾‾‾‾‾          ‾‾‾‾‾‾‾‾‾‾‾
  GUILTY              NOT GUILTY

We, the Jury, find Defendant David Oquendo-Rivas:

‾‾‾‾‾‾‾‾‾‾‾          ‾‾‾‾‾‾‾‾‾‾‾
  GUILTY              NOT GUILTY

Case 3:09-cr-00427-JAF   Document 985   Filed 03/08/13   Page 11 of 15
Case 2:11-cr-00077-PPS-APR   Document 626-1   Filed 08/30/13   Page 11 of 15
Case: 15-2347   Document: 35   Filed: 07/27/2016   Pages: 4186

27.    **COUNT THIRTY-SIX:**  (Violent Crime in Aid of Racketeering Activity)

### Attempted Murder of Josué Oquendo Semprit

We, the Jury, find Defendant Alexis Candelario-Santana:

   ✓

GUILTY                          NOT GUILTY

We, the Jury, find Defendant David Oquendo-Rivas:

   ✓

GUILTY                          NOT GUILTY

28.    **COUNT THIRTY-SEVEN:**  (Violent Crime in Aid of Racketeering Activity)

### Attempted Murder of José David Carmona Santos

We, the Jury, find Defendant Alexis Candelario-Santana:

   ✓

GUILTY                          NOT GUILTY

We, the Jury, find Defendant David Oquendo-Rivas:

   ✓

GUILTY                          NOT GUILTY

29.    **COUNT THIRTY-EIGHT:** (Violent Crime in Aid of Racketeering Activity)

### Attempted Murder of Carmen Semprit Santana

We, the Jury, find Defendant Alexis Candelario-Santana:

   ✓

GUILTY                          NOT GUILTY

We, the Jury, find Defendant David Oquendo-Rivas:

   ✓

GUILTY                          NOT GUILTY

Case 3:09-cr-00427-JAF   Document 985   Filed 03/08/13   Page 12 of 15
Case 2:11-cr-00077-PPS-APR   Document 626-1   Filed 08/30/13   Page 12 of 15
Case 15-2347   Document 35   Filed: 07/27/2016   Pages: 4186

30.     **COUNT THIRTY-NINE:** (Violent Crime in Aid of Racketeering Activity)

### Attempted Murder of Aladino Amezquita-Semprit

We, the Jury, find Defendant Alexis Candelario-Santana:

_____✓_____                    _____
   GUILTY                        NOT GUILTY

We, the Jury, find Defendant David Oquendo-Rivas:

_____✓_____                    _____
   GUILTY                        NOT GUILTY

31.     **COUNT FORTY:** (Violent Crime in Aid of Racketeering Activity)

### Attempted Murder of Félix Rivera Rivera

We, the Jury, find Defendant Alexis Candelario-Santana:

_____✓_____                    _____
   GUILTY                        NOT GUILTY

We, the Jury, find Defendant David Oquendo-Rivas:

_____✓_____                    _____
   GUILTY                        NOT GUILTY

32.     **COUNT FORTY-ONE:** (Violent Crime in Aid of Racketeering Activity)

### Attempted Murder of Caleb Castro Renta

We, the Jury, find Defendant Alexis Candelario-Santana:

_____✓_____                    _____
   GUILTY                        NOT GUILTY

We, the Jury, find Defendant David Oquendo-Rivas:

_____✓_____                    _____
   GUILTY                        NOT GUILTY

903

Case 3:09-cr-00427-JAF    Document 985    Filed 03/08/13    Page 13 of 15
Case 2:11-cr-00077-PPS-APR    Document 626-1    Filed 08/30/13    Page 13 of 15
Case: 15-2347    Document: 35    Filed: 07/27/2016    Pages: 4186

Criminal No. 09-427 (JAF)                                    Page 13 of 15

**33.    COUNT FORTY-THREE:** (Violent Crime in Aid of Racketeering Activity)

### Attempted Murder of Roselyn Rosado Miranda

We, the Jury, find Defendant Alexis Candelario-Santana:

GUILTY                    NOT GUILTY

We, the Jury, find Defendant David Oquendo-Rivas:

GUILTY                    NOT GUILTY

**34.    COUNT FORTY-FOUR:** (Violent Crime in Aid of Racketeering Activity)

### Attempted Murder of Oscar Gómez Miranda

We, the Jury, find Defendant Alexis Candelario-Santana:

GUILTY                    NOT GUILTY

We, the Jury, find Defendant David Oquendo-Rivas:

GUILTY                    NOT GUILTY

**35.    COUNT FORTY-FIVE:** (Violent Crime in Aid of Racketeering Activity)

### Attempted Murder of Richard Ramos Figueroa

We, the Jury, find Defendant Alexis Candelario-Santana:

GUILTY                    NOT GUILTY

We, the Jury, find Defendant David Oquendo-Rivas:

GUILTY                    NOT GUILTY

Criminal No. 09-427 (JAF)                                    Page 14 of 15

**36.** **COUNT FORTY-SEVEN:**  (Violent Crime in Aid of Racketeering Activity)

### Attempted Murder of Angel Ríos Santos

We, the Jury, find Defendant Alexis Candelario-Santana:

| ✓ | |
| :---: | :---: |
| GUILTY | NOT GUILTY |

We, the Jury, find Defendant David Oquendo-Rivas:

| ✓ | |
| :---: | :---: |
| GUILTY | NOT GUILTY |

**37.** **COUNT FORTY-EIGHT:**  (Violent Crime in Aid of Racketeering Activity)

### Attempted Murder of Juan Ramos Vázquez

We, the Jury, find Defendant Alexis Candelario-Santana:

| ✓ | |
| :---: | :---: |
| GUILTY | NOT GUILTY |

We, the Jury, find Defendant David Oquendo-Rivas:

| ✓ | |
| :---: | :---: |
| GUILTY | NOT GUILTY |

**38.** **COUNT FORTY-NINE:**  (Violent Crime in Aid of Racketeering Activity)

### Attempted Murder of William Ramos Vázquez

We, the Jury, find Defendant Alexis Candelario-Santana:

| ✓ | |
| :---: | :---: |
| GUILTY | NOT GUILTY |

We, the Jury, find Defendant David Oquendo-Rivas:

| ✓ | |
| :---: | :---: |
| GUILTY | NOT GUILTY |

Criminal No. 09-427 (JAF)                                    Page 15 of 15

**39.    COUNT FIFTY:** (Conspiracy to Possess with Intent to Distribute a Controlled Substance)

We, the Jury, find Defendant Alexis Candelario-Santana:

_____                _____
     GUILTY                        NOT GUILTY,

as charged in Count 50.

**40.    COUNT FIFTY-ONE:** (Possession of a Firearm with a Prior Conviction)

We, the Jury, find Defendant Alexis Candelario-Santana:

_____                _____
     GUILTY                        NOT GUILTY,

as charged in Count 51.

**DATED: MARCH __8__ , 2013.**

_____
                 FOREPERSON

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | NO. 2:11CR77 PPS |
| | ) | |
| JUAN BRISENO, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER**

Of the 23 defendants indicted in this case, 13 have entered guilty pleas and 10 remain for trial at the present time. Although eight defendants were eligible for the death penalty, the government has chosen not to proceed with the death penalty against seven of the defendants. That leaves Juan Briseno as the sole defendant facing the possibility of a death sentence. Briseno seeks a continuance of the October 21, 2013 trial setting, and a severance from the non-capital prosecution of the other defendants. A number of his co-defendants also seek severance of their trials from Briseno's. Having contemplated the matter extensively, I will sever Juan Briseno's trial from that of all the other co-defendants and continue Briseno's capital trial to April 7, 2014 but will retain the October 21st trial setting for all the non-capital defendants.

The present indictment – now in its fourth iteration having been superseded three times – contains 41 counts in its 72 pages. All the remaining defendants are charged in the RICO conspiracy alleged in Count One, involving 83 overt racketeering acts, as well as in Count Two's conspiracy to possess 100 kilograms or more of marijuana and 5 kilograms or more of cocaine with intent to distribute. The allegations in both Counts One and Two span more than ten years. Six of the defendants, including Juan Briseno, are charged with Murder in Aid of Racketeering

Activity, and with separate counts of Attempted Murder in Aid of Racketeering Activity.  Juan

Briseno is charged in 22 of the 41 counts.   Several of the remaining non-capital defendants are

charged with acts, including 4 murders and 4 attempted murders, in which Juan Briseno is not

alleged to have had involvement.

The standards for severance, where joinder of defendants and charges was initially

proper, pose a high hurdle for defendants, and rightly so.  Generally speaking, proper joinder

promotes efficiency and "serve[s] the interests of justice by avoiding the scandal and inequity of

inconsistent verdicts."  *Richardson v. Marsh*, 481 U.S. 200, 209 (1987).  But severance is

nonetheless appropriate where "there is a serious risk that a joint trial would compromise a

specific trial right of one of the defendants, or prevent the jury from making a reliable judgment

about guilt or innocence."  *Zafiro v. US*, 506 U.S. 534, 539 (1993).  A district court faced with

the issue has broad discretion to fashion an appropriate remedy where prejudice is demonstrated,

and has to balance the prejudice against the interest in judicial economy.  *Id.* at 541.

Based on cumulative concerns about the potential for prejudice, I am persuaded that a

trial of all the remaining defendants together would prevent the jury from making a reliable

judgment about the guilt or innocence of each of the defendants.  In addition, practical

considerations about the logistics of trying so many defendants together further support a

severance.  Below I outline the factors that inform my severance decision.

It goes without saying that the death penalty is "unique in its severity and irrevocability."

*Gregg v. Georgia*, 428 U.S. 153, 187 (1976).  "Its finality therefore requires a greater degree of

reliability when it is imposed," and "a capital defendant has an 8th amendment right to an

individualized determination."  *United States v. Catalan-Roman*, 376 F.Supp.2d 96, 99 (D.

2

908

Puerto Rico 2005). The heightened constitutional considerations in capital cases may support severance "in situations that would not ordinarily do so in non-capital criminal cases." *Id*. at 100. The mix of defendants and charges here gives rise to a very real possibility of cross-over guilt determinations because "evidence of a codefendant's wrongdoing...erroneously could lead a jury to conclude that a defendant was guilty." *Zafiro*, 506 U.S. at 539. In addition, "[w]hen many defendants are tried together in a complex case and they have markedly different degrees of culpability, this risk of prejudice is heightened." *Id.*

Briseno argues that antagonistic and mutually exclusive defenses support his severance from the other defendants, anticipating that he and other defendants are likely to present rival claims as to who was the shooter in various of the homicides charged in the case. In many of the charged homicides, several people were present, and sorting out who actually pulled the trigger – while perhaps not dispositive of guilt or innocence – could well inform a jury's determination on whether to impose the death sentence. This is certainly cause for concern. Briseno contends he cannot be more specific or sure as to the conflicting defenses because he has not yet received Jencks Act disclosure from the government. *See* 18 U.S.C. §3500. Although *Zafiro* teaches that "[m]utually antagonistic defenses are not prejudicial *per se*," 506 U.S. at 538, subsequent cases have clarified that "mutually exclusive" defenses – "when exoneration of one defendant requires incrimination of the other" – can require severance. *United States v. McVeigh*, 169 F.R.D. 362, 370 (D.Colo. 1996), citing *United States v. Dirden*, 38 F.3d 1131, 1141 (10th Cir. 1994). *See also United States v. Hartmann*, 958 F.2d 774, 786-87 (7th Cir. 1992).

Briseno also credibly argues that in a joint trial in which the jury learns that only Briseno is at risk of a death sentence, he would be seen as the "target defendant" and suffer what has

3

been called the "reverse halo effect." Briseno also voices a reasonable concern about juror

exhaustion – that by the time the jury would reach a separate penalty phase (a risk only he faces),

they will be so worn out by a long trial of all 10 defendants that their ability to render a careful

individualized determination of all mitigating and aggravating circumstances may be

compromised.

Briseno also raises a concern that ethnic stereotypes about young Hispanic American

males and street gangs will be applied to his detriment if he is tried with the entire group of 11

defendants, all fitting that description. In *Turner v. Murray*, 476 U.S. 28, 36-7 (1986), the

United States Supreme Court held that, in light of the potential for jurors' racial prejudices to

play a role in their consideration of punishment for an interracial murder, "a capital defendant

accused of an interracial crime is entitled to have prospective jurors informed of the race of the

victim and questioned on the issue of racial bias." In arriving at that conclusion the Supreme

Court candidly acknowledged the ways in which a juror's prejudices might be brought to bear on

consideration of the case:

> [A] juror who believes that blacks are violence prone or morally inferior might
> well be influenced by that belief in deciding whether petitioner's crime involved
> the aggravating factors [presented in the sentencing phase]. Such a juror might
> also be less favorably inclined toward petitioner's evidence of mental disturbance
> as a mitigating circumstance. More subtle, less consciously held racial attitudes
> could also influence a juror's decision in this case. Fear of blacks, which could
> easily be stirred up by the violent facts of petitioner's crime, might incline a juror
> to favor the death penalty.

*Id.* at 35. Of course, a concern about juror bias against Hispanics is likely shared by each of the

other 10 defendants as well, but the stakes are so much higher for Briseno. If protecting a

defendant against these concerns is paramount in the jury selection process – and indeed that is

4

910

what *Turner* holds – then those same concerns can at least be part of the calculus in weighing whether severance is appropriate.

The cases cited by the government in opposing severance are all cases affirming a trial court's denial of severance. Such cases review the trial court's exercise of discretion *against* severance and so naturally focus on the high standards that apply to a defendant seeking a severance where the government's original joinder of defendants was proper under the applicable rules. *See e.g. United States v. Morales*, 655 F.3d 608, 624-25 (7th Cir. 2011); *United States v. Spagnola*, 632 F.3d 981, 987 (7th Cir. 2011); *United States v. Carrillo*, 435 F.3d 767, 778 (7th Cir. 2006). Although these cases don't directly address a situation where the trial judge exercised his or her discretion to *grant* severance based on concerns of prejudice and other pragmatic complexities posed by a joint trial, the Seventh Circuit does acknowledge the scope of that discretion: "The district court is given wide discretion in determining when the prejudice of joinder outweighs the benefits of a single trial." *Carrillo*, 435 U.S. at 778.

The government's memorandum neglects the practical concerns with a trial of 10 defendants. And the genesis of the problem posed by the number of defendants and the scope of the prosecution of course lies with the government, which made the decision to proceed here by a series of superseding indictments enlarging the original one-defendant, 2-count indictment to a roster of 23 defendants and the third superseding indictment with 41 counts. Several Courts of Appeal have considered the challenges of the "megatrial" and concluded that most of the purported advantages of proceeding against all defendants in a single trial are overstated. They suggest that where a trial may take longer than four months or involve more than ten defendants, the government should be required "to justify its conclusion that a joint trial serves the ends of

5

justice." *United States v. Baker*, 10 F.3d 1374, 1392 (9ᵗʰ Cir. 1993), citing *United States v. Casamento*, 887 F.2d 1141, 1151-52 (2ⁿᵈ Cir. 1989).

A number of practical considerations also play a part in my decision. My courtroom literally cannot accommodate a trial of ten defendants. Although splitting that number into 1 and 9 would not seem to afford a huge benefit in that regard, I anticipate, based on what the government has previously indicated in various status conferences, that additional guilty pleas will shrink that larger number to a smaller group that can be reasonably accommodated.

In addition, because of the death penalty, the selection of a jury for the proceeding against Briseno will necessitate counsel's review of hundreds of juror questionnaires prior to voir dire, each of which may reasonably be 25 pages in length. Defendant Chavez offers a helpful and startling computation of the hours required, and the associated expense, for all the CJA appointed counsel of the non-capital defendants to review this material. [DE 608 at 8.] In addition, the 9 non-capital defendants and their counsel would be dragged along through a lengthy selection jury process. At a recent status conference, the government counsel told me that jury selection in capital cases can take anywhere from three to six weeks. [*Id.*] To have nine lawyers representing the non-capital defendants sitting through that lengthy process strikes me as a colossal waste of both time and resources. Jury selection for Briseno will be a lengthy process in any event. If that process incorporates 9 other defendants as well, the process and its length are further multiplied, as is the expense of counsel fees for the non-capital defendants.

Briseno also points out that the federal rules do not specify how peremptory challenges are exercised in a case involving a mix of capital and non-capital defendants, as to which the rules otherwise make very different provision (20 strikes each for the government and defendant

6

912

in a capital case versus 6 strikes for the government and 10 for the defendants in a non-capital case). *See* Fed.R.Crim.P. 24(b). [DE 610 at 27.] Even if the mathematical problems are sorted out, the exercise of any joint strikes by the defendants is made much more complicated by the potentially competing considerations of Briseno and the other defendants. The death-qualification of the petit jury for Briseno's trial is likely prejudicial to the non-capital defendants. And the two "camps" of defendants may each wish to raise issues on voir dire that would potentially be prejudicial to the other camp – the most extreme being a possible concession of guilt by the defendant who faces the death sentence.

Fed.R.Crim.P. 14 recognizes that even a joinder that was proper under Rule 8 may be prejudicial to one or more parties, and the rule "leaves the determination of risk of prejudice and any remedy that may be necessary to the sound discretion of the district courts." *Zafiro*, 506 U.S. at 541. *See also Morales*, 655 F.3d at 624. The Seventh Circuit has acknowledged that "defendants may face some prejudicial spillover in large complex cases, and we therefore expect district courts to balance the risk to defendants who move for severance against the benefits gained by joint trials." *Id.* at 626. The various defendants moving for severance have made a showing of the potential for prejudice (although they are in some respects speculating to a degree because, to repeat, the government has yet to turn over witness statements and thus many of the defendants are operating in the dark). Briseno on the other hand has made a more compelling case for prejudice. In any event, a lesser risk of prejudice supports severance in a capital proceeding than might otherwise be required. Where Briseno's life is at stake, extra caution is warranted to avoid circumstances that would "prevent the jury from making a reliable judgment of guilt or innocence." *Zafiro*, 506 U.S. at 539.

7

913

On the other side of the balance – judicial economy – this case presents an atypical set of circumstances. Ordinarily, joint trials promote judicial economy. Not so here, for reasons I have already discussed. Contrary to the mine run of cases, judicial economy is actually served by granting the severance. I fully recognize that this decision means that the government will likely have to present much of its case twice, and I don't place this burden on the government lightly. (After all, I will also be sitting through two trials). But when I view those costs against the other costs associated with a joint trial, I am convinced that judicial economy is promoted rather than harmed by separate trials here.

In sum, all things considered, I conclude that severance of the trial of Juan Briseno from the trial of the remaining defendants is warranted for all the foregoing reasons, and particularly because:

- without such a severance, the number and complexity of the charges is highly likely to cause untenable confusion of evidence and prejudicial associations, beginning with the selection of a "death-qualified" jury;

- Juan Briseno is likely to have defenses that are antagonistic and mutually exclusive of the defenses of other defendants;

- a joint trial will entail a serious risk of prejudice flowing in both directions as between Briseno and the non-capital defendants;

- available courtroom facilities cannot reasonably accommodate a trial of 10 defendants for a period of as many weeks as such a trial would entail; and

- given the sizeable procedural differences in selecting a jury for a capital case, the severance would obviate the participation of 9 non-capital defendants and their counsel in that process and thereby serve the public interest in judicial economy.

As a result, I will sever the trial of Juan Briseno from the remaining defendants. A separate speedy trial order will issue continuing Briseno's trial to April 7, 2014. The trial of the other defendants will remain set for October 21, 2013. That date is firm. Any additional guilty

8

pleas *must be scheduled as promptly as possible*, both for trial planning purposes and because I

will be out of the country, and therefore unavailable, from October 4 through October 14.

ACCORDINGLY:

Defendant Juan Briseno's Motion for Severance from Non-Capital Co-Defendants [DE

610] is GRANTED.

The Motion to Sever of defendants Jason Medina and Edward Raye Serna [DE 616], the

Motion to Sever of defendant Salvador Chavez [DE 608], the Motion to Sever of defendant

Richard Reyes [DE 557 & DE 606] are GRANTED to the extent that they seek severance from

Briseno and DENIED to the extent they seek any further severance from other defendants.

SO ORDERED.

ENTERED: September 9, 2013.

 /s/ Philip P. Simon
PHILIP P. SIMON, CHIEF JUDGE
UNITED STATES DISTRICT COURT

9

915

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

UNITED STATES OF AMERICA,       )
                                )
            Plaintiff,          )
                                )
    v.                          )       NO. 2:11CR77 PPS
                                )
JUAN BRISENO,                   )
                                )
            Defendant.          )

**ORDER**

Defendant Juan Briseno faces the death penalty as a result of some of the 22 counts

against him in this massive case, including 6 charges of Murder in Aid of Racketeering Activity

and 3 separate counts of Attempted Murder in Aid of Racketeering Activity. Briseno has sought

a continuance of the October 21, 2013 trial setting, asking that the trial be set in Spring 2014.

The government has no objection to the requested continuance. The sole co-defendant who

expressed opposition to the continuance, Richard Reyes, is being granted a severance from

Briseno, and his trial remains set on October 21 along with all the other non-capital co-

defendants.

I find pursuant to 18 U.S.C. §3161(h)(7) that the ends of justice served by a continuance

outweigh the best interest of the public and defendant Juan Briseno in a speedy trial. Given the

unusual complexity of the case, and in light of all the circumstances set forth in defendant Juan

Briseno's motion, I conclude that a failure to grant the requested continuance would deny counsel

for the defense the reasonable time necessary for effective preparation, even taking into account

counsel's exercise of due diligence.

ACCORDINGLY:

Defendant Juan Briseno's Motion to Continue Jury Trial [DE 603] is GRANTED.

The trial of the case against defendant Juan Briseno is continued to begin **April 7, 2014.**

The trial as to all other remaining defendants remains set on **October 21, 2013**.

SO ORDERED.

ENTERED: September 9, 2013.

 /s/ Philip P. Simon
PHILIP P. SIMON, CHIEF JUDGE
UNITED STATES DISTRICT COURT

917

```
MIME-Version:1.0
From:CMECFinnd@innd.uscourts.gov
To:CMECFinnd@localhost.localdomain
Bcc:
--Case Participants: Pablo DeCastro (pdecastro@rascia-decastro.com,
ysierra@rascia-decastro.com), Kurt R Earnst (kre@braje-nelson.com), Arlington J Foley
(arlingtonfoley@att.net), Jack Friedlander (jack@jackfriedlander.com,
office@jackfriedlander.com), Bruce R Hegyi - AUSA (bruce.hegyi@usdoj.gov), Clark W
Holesinger (arcclark@frontier.com, clark.334@frontier.com), Roxanne Mendez Johnson
(attorneyrmj@gmail.com), Gojko Kasich (gkasich@crownlaw.com, gkasich@gmail.com), Scott L
King (dwilliams@scottkinggroup.com, jwilliams@scottkinggroup.com,
sking@scottkinggroup.com), Visvaldis P Kupsis (vpkupsis@hotmail.com), Catherine A Lake
(attyclake@sbcglobal.net), Dean R Lanter - AUSA (dean.lanter@usdoj.gov,
janet.eisenmann@usdoj.gov, usainn.ecfcivil@usdoj.gov), John Maksimovich
(criminallaw@johnmaksimovich.com), John E Martin - FCD (john_martin@fd.org), Sheldon B
Nagelberg (sbnagelberglaw@att.net), David J Nozick - AUSA (david.nozick@usdoj.gov,
janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov,
usainn.ecfcivil@usdoj.gov), Mark A Psimos (psimoslaw@airbaud.net), Robert L Rascia
(rrascia@rascia-decastro.com, ysierra@rascia-decastro.com), Stephen Edward Scheele
(pkd@gk4law.com, ses@gk4law.com), Paul Jeffrey Schlesinger (pjeffslaw@aol.com), Adam
Tavitas (adtavitas@aol.com, b.lynneadams@yahoo.com), John T Theis (theislaw@aol.com),
James N Thiros (jim@thiros.com, lynn@thiros.com), Bryan M Truitt (bryan@tblawyers.com,
sherrie@tblawyers.com), David E Vandercoy (david.vandercoy@valpo.edu), Thomas W Vanes
(tom.vanes@sbcglobal.net), R Brian Woodward (carolb@wbbklaw.com, rbwoodward@wbbklaw.com),
Magistrate Judge Andrew P Rodovich (rodovich_chambers@innd.uscourts.gov), Chief Judge
Philip P Simon (denise_woodside@innd.uscourts.gov, jacob_hamann@innd.uscourts.gov,
joshua_urquhart@innd.uscourts.gov, katherine_welsh@innd.uscourts.gov,
noel_collins@innd.uscourts.gov, philip_simon@innd.uscourts.gov)
--Non Case Participants: Matthew D Soliday (office@matthewsolidaylaw.com),
Probation/Pretrial Services (innpml_cmecf@innd.uscourts.gov), U S Marshal
(inn.docket-fw@usdoj.gov, inn.docket-sb@usdoj.gov, usms.27@usdoj.gov)
--No Notice Sent:

Message-Id:2347826@innd.uscourts.gov
Subject:Activity in Case 2:11-cr-00077-PPS-APR United States of America v. Briseno et al
Notice of Hearing/Deadlines
Content-Type: text/html
```

## U.S. District Court Northern District of Indiana [LIVE]

## USDC Northern Indiana

## Notice of Electronic Filing

The following transaction was entered on 9/10/2013 at 11:51 AM EST and filed on 9/10/2013

| | |
|---|---|
| **Case Name:** | United States of America v. Briseno et al |
| **Case Number:** | 2:11-cr-00077-PPS-APR |
| **Filer:** | |
| **Document Number:** | 635(No document attached) |

**Docket Text:**
**NOTICE OF HEARING as to Juan Briseno only: Final Pretrial Conference set for 3/7/2014
10:00 AM in US District Court – Hammond before Chief Judge Philip P Simon. (nac)**

**2:11-cr-00077-PPS-APR-1 Notice has been electronically mailed to:**

David E Vandercoy david.vandercoy@valpo.edu

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com, gkasich@gmail.com

Scott L King sking@scottkinggroup.com, dwilliams@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje–nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia–decastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Bruce R Hegyi − AUSA bruce.hegyi@usdoj.gov

**2:11−cr−00077−PPS−APR−1 Notice has been delivered by U.S. Mail or other means to:**

```
MIME-Version:1.0
From:CMECFinnd@innd.uscourts.gov
To:CMECFinnd@localhost.localdomain
Bcc:
--Case Participants: Magistrate Judge Andrew P Rodovich
(rodovich_chambers@innd.uscourts.gov), Chief Judge Philip P Simon
(denise_woodside@innd.uscourts.gov, jacob_hamann@innd.uscourts.gov,
katherine_welsh@innd.uscourts.gov, mira_serrill-robins@innd.uscourts.gov,
noel_collins@innd.uscourts.gov, philip_simon@innd.uscourts.gov)
--Non Case Participants:
--No Notice Sent:

Message-Id:2355668@innd.uscourts.gov
Subject:Activity in Case 2:11-cr-00077-PPS-APR United States of America v. Briseno et al
Terminate Deadlines and Hearings
Content–Type: text/html
```

### U.S. District Court Northern District of Indiana [LIVE]

### USDC Northern Indiana

## Notice of Electronic Filing

The following transaction was entered on 9/19/2013 at 2:37 PM EST and filed on 9/19/2013

**Case Name:**       United States of America v. Briseno et al

**Case Number:**     2:11–cr–00077–PPS–APR

**Filer:**

**Document Number:** No document attached

**Docket Text:**
 **Terminate Deadlines and Hearings as to Juan Briseno, Galo Benjamin Feliciano, Guillermo Briseno, Alejandro Balboa Lara, Justin Weaver, Michael Anthony Castillo, Kelvin Jefferson Beltran, David Almaraz, Joseph Rene Torres, Jason Medina, Edward Raye Serna, Alejandro Briseno, Robert Lockhart, Armando Jose Velasquez, Anthony Baldazo, Salvador Chavez, Raymond Campos, Ace Cortez, Julian Guillermo Serna, Julius Solis, Darmaile Cortez Sutton, Eddie Torres, Richard Reyes, Vincent Garza: Final Pretrial Conference set for 9/20/2013 VACATED. To be reset under separate order. (lh)**

**2:11–cr–00077–PPS–APR–1** No electronic public notice will be sent because the case/entry is sealed.

**2:11–cr–00077–PPS–APR–2** No electronic public notice will be sent because the case/entry is sealed.

**2:11–cr–00077–PPS–APR–3** No electronic public notice will be sent because the case/entry is sealed.

**2:11–cr–00077–PPS–APR–4** No electronic public notice will be sent because the case/entry is sealed.

**2:11–cr–00077–PPS–APR–5** No electronic public notice will be sent because the case/entry is sealed.

**2:11–cr–00077–PPS–APR–6** No electronic public notice will be sent because the case/entry is sealed.

**2:11–cr–00077–PPS–APR–7** No electronic public notice will be sent because the case/entry is sealed.

**2:11–cr–00077–PPS–APR–8** No electronic public notice will be sent because the case/entry is sealed.

**2:11–cr–00077–PPS–APR–9** No electronic public notice will be sent because the case/entry is sealed.

**2:11–cr–00077–PPS–APR–10** No electronic public notice will be sent because the case/entry is sealed.

**2:11–cr–00077–PPS–APR–11** No electronic public notice will be sent because the case/entry is sealed.

**2:11–cr–00077–PPS–APR–12** No electronic public notice will be sent because the case/entry is sealed.

**2:11–cr–00077–PPS–APR–13** No electronic public notice will be sent because the case/entry is sealed.

**2:11–cr–00077–PPS–APR–14** No electronic public notice will be sent because the case/entry is sealed.

**2:11–cr–00077–PPS–APR–15** No electronic public notice will be sent because the case/entry is sealed.

**2:11–cr–00077–PPS–APR–16** No electronic public notice will be sent because the case/entry is sealed.

**2:11–cr–00077–PPS–APR–17** No electronic public notice will be sent because the case/entry is sealed.

**2:11–cr–00077–PPS–APR–18** No electronic public notice will be sent because the case/entry is sealed.

**2:11–cr–00077–PPS–APR–19** No electronic public notice will be sent because the case/entry is sealed.

**2:11–cr–00077–PPS–APR–20** No electronic public notice will be sent because the case/entry is sealed.

**2:11–cr–00077–PPS–APR–21** No electronic public notice will be sent because the case/entry is sealed.

**2:11–cr–00077–PPS–APR–22** No electronic public notice will be sent because the case/entry is sealed.

**2:11–cr–00077–PPS–APR–23** No electronic public notice will be sent because the case/entry is sealed.

**2:11–cr–00077–PPS–APR \*SEALED\*–24** No electronic public notice will be sent because the case/entry is sealed.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION        13 SEP 18  PM 3: 38

FILED

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | CAUSE NO. 2:11 CR 77 PPS |
| | ) | FOR THE ... DISTRICT OF INDIANA |
| v. | ) | 18 U.S.C. § 1962(d) |
| | ) | 18 U.S.C. § 1959(a) |
| JUAN BRISENO a/k/a "Tito"; | ) | 18 U.S.C. § 924 |
| JASON MEDINA a/k/a "Burns"; | ) | 18 U.S.C. § 3 |
| EDWARD RAYE SERNA a/k/a "Sern"; | ) | 18 U.S.C. § 2 |
| ARMANDO JOSE VELASQUEZ a/k/a | ) | 21 U.S.C. § 846 |
| "Money"; | ) | 21 U.S.C. § 841(a)(1) |
| SALVADOR CHAVEZ a/k/a "Black" | ) | |
| "Dirty Sal"; | ) | |
| ACE CORTEZ; | ) | |
| JULIAN GUILLERMO SERNA a/k/a | ) | |
| "Big Ju"; | ) | |
| RICHARD REYES; and | ) | |
| VINCENT GARZA | ) | |

## FOURTH SUPERSEDING INDICTMENT

## COUNT 1

### (Conspiracy to Participate in Racketeering Activity)

**THE GRAND JURY CHARGES**:

### Introduction

1. At various times relevant to this Fourth Superseding Indictment, the following defendants, and others known and unknown, were members of the "Almighty IMPERIAL GANGSTERS" Street Gang (hereinafter the "IMPERIAL GANGSTERS"), a criminal organization whose members and associates engaged in acts of violence, including murder, attempted murder, robbery, aggravated battery, aggravated assault and narcotics distribution, and which operated in the Northwest Indiana area, the Northern District of Indiana, Hammond

Division, and elsewhere: **JUAN BRISENO a/k/a "Tito," JASON MEDINA a/k/a "Burns,"**

**EDWARD RAYE SERNA a/k/a "Sern," ARMANDO JOSE VELASQUEZ a/k/a "Money,"**

**SALVADOR CHAVEZ a/k/a "Black," "Dirty Sal," ACE CORTEZ, JULIAN GUILLERMO**

**SERNA a/k/a "Big Ju," RICHARD REYES** and **VINCENT GARZA.**

### General Background and Structure of the Enterprise

2. The IMPERIAL GANGSTERS are a nationally known criminal street organization whose members engage in drug trafficking and acts of violence. The 149th Street "No Love Side" IMPERIAL GANGSTERS are a local "set" or chapter of the IMPERIAL GANGSTERS, with local control and operation within East Chicago, Indiana. The other IMPERIAL GANGSTER set or chapter operating in Northwest Indiana is the 139th Street, or "Harbor" or "Tre Nine" set.

3. The 149th Street IMPERIAL GANGSTERS operate primarily on the South Side of East Chicago. The 149th Street IMPERIAL GANGSTERS are involved in murder, attempted murder, robberies and drug trafficking. The 139th Street IMPERIAL GANGSTERS operate primarily in the Harbor Section of East Chicago. They are also involved in murder, attempted murder, robberies and drug trafficking.

4. Members of the IMPERIAL GANGSTERS greeted each other, and showed their membership in the gang using a set of hand-signs. In addition, IMPERIAL GANGSTERS often greeted one another, demonstrated their allegiance to the gang, or simply announced their arrival or presence in a particular area by exclaiming "Amor." The IMPERIAL GANGSTERS employed a robust symbology as well, often using depictions of the cartoon character The Pink Panther to demonstrate their affiliation. Members often had tattoos incorporating one or more of

2

the aforementioned phrases or symbols, The Pink Panther being the most prominent.   The colors associated with the IMPERIAL GANGSTERS are pink and black, and members of the IMPERIAL GANGSTERS often demonstrated their affiliation with the IMPERIAL GANGSTERS by wearing clothing containing these two colors, or incorporating some of the gang's other symbols or phrases.

5.   The IMPERIAL GANGSTERS are affiliated with the "Folk Nation" of gangs.   Rival street gangs of the IMPERIAL GANGSTERS have included the Spanish Gangster Disciples, The Two Six Nation, The Latin Kings, and the Black P-Stones.

6.   The IMPERIAL GANGSTERS have a leadership structure, but do not always utilize official titles or ranks.   They at all times have an individual who serves as the leader and makes decisions regarding gang business.   The IMPERIAL GANGSTERS have one or two individuals who control and train the "shorties" or prospective members.   They have an individual who serves as a treasurer, who collects gang dues.   They also have an individual who serves as the enforcer, who applies discipline for violations of the gang rules by meting out punishment.

## The Racketeering Enterprise

7.   The IMPERIAL GANGSTERS, including its leadership, membership, prospects ("shorties") and associates, constitutes an enterprise as defined in 18 U.S.C. § 1961(4), that is, a group of individuals associated in fact.   The enterprise constituted an ongoing organization whose members functioned as a continuing unit for a common purpose of achieving the objectives of the enterprise.   This enterprise was engaged in, and its activities affected, interstate and foreign commerce.

## Purposes of the Enterprise

3

8. The purposes of the enterprise included, but were not limited to, the following:

a. Enriching the leaders, members, and associates of the enterprise through, among other things, the illegal trafficking of controlled substances.

b. Preserving and protecting the power, territory, operations, and proceeds of the enterprise through the use of threats, intimidation, violence and destruction including, but not limited to, acts of murder, attempted murder, assault with a dangerous weapon and other acts of violence.

c. Promoting and enhancing the enterprise and its members' and associates' activities.

d. Keeping victims in fear of the enterprise and in fear of its leaders, members, and associates through threats of violence and violence. The leaders, members, and associates of the enterprise undertook all steps necessary to prevent the detection of their criminal activities, and sought to prevent and resolve the imposition of any criminal liabilities upon their leaders, members, and associates, by the use of murder, violence, and intimidation directed against witnesses, victims, and others. As part of this practice, the enterprise enforced what it referred to as a "SOS" or shoot on sight order, or also known as "KOS" or, kill on sight, against IMPERIAL GANGSTERS members who were suspected of having cooperated with law enforcement.

e. Providing support to gang members who were charged with, or incarcerated for, gang-related activities.

## The Racketeering Conspiracy

9. Beginning on a date unknown to the Grand Jury, but at least as of in or about February, 2002, and continuing through on or about the date of this Fourth Superseding

4

indictment, in the Northern District of Indiana and elsewhere, the defendants,

**JUAN BRISENO a/k/a "Tito,"**
**JASON MEDINA a/k/a "Burns,"**
**EDWARD RAYE SERNA a/k/a "Sern,"**
**ARMANDO JOSE VELASQUEZ a/k/a "Money,"**
**SALVADOR CHAVEZ a/k/a "Black," "Dirty Sal,"**
**ACE CORTEZ,**
**JULIAN GUILLERMO SERNA a/k/a "Big Ju,"**
**RICHARD REYES and**
**VINCENT GARZA**

each being a person employed by and associated with the IMPERIAL GANGSTERS, an

enterprise engaged in, and the activities of which affected, interstate and foreign commerce,

together with GALO BENJAMIN FELICIANO, GUILLERMO BRISENO, ALEJANDRO

BALBOA LARA, JUSTIN WEAVER, MICHAEL ANTHONY CASTILLO, KELVIN

JEFFERSON BELTRAN, DAVID ALMARAZ, JOSEPH RENE TORRES, ROBERT

LOCKHART, ANTHONY BALDAZO, RAYMOND CAMPOS, JULIUS SOLIS, DARMAILE

CORTEZ SUTTON, EDDIE TORRES and others known and unknown to the Grand Jury, did

knowingly and intentionally conspire to conduct and participate, directly and indirectly, in the

conduct of the affairs of the enterprise through a pattern of racketeering activity, as defined in

Sections 1961(a) and (5) of Title 18, United States Code, consisting of multiple acts involving

murder in violation of Indiana Code 35-42-1-1, 35-41-2-4, 35-41-5-1, multiple acts involving

robbery in violation of Indiana Code 35-42-5-1 and 35-41-5-2, multiple acts indictable under 18

United States Code Section 1951 (Hobbs Act Robbery) and multiple acts involving narcotics

trafficking in violation of 21 United States Code Sections 841(a)(1)(distribution and possession

with the intent to distribute a controlled substance) and Section 846 (conspiracy to distribute and

possess with the intent to distribute a controlled substance).   It was part of this conspiracy that

5

each defendant agreed that a conspirator would commit at least two acts of racketeering in the conduct of the affairs of the enterprise.

## Manner and Means of the Conspiracy

10. Each member of the enterprise agreed to facilitate a scheme that included the operation and management of the enterprise by a conspirator. Members of the enterprise and their associates operated and conducted their affairs through a series of laws and policies, some of which were codified in a constitution and a series of laws.

11. The members of the enterprise and their associates attended regular meetings at which they discussed, planned, and otherwise engaged in criminal activity, including murder, attempted murder, robberies, narcotics distribution, and obstruction of justice.

12. Members of the enterprise and their associates initiated new members through the practice of causing them to endure physical assaults conducted by members of the enterprise at various gang-related gatherings.

13. To enforce discipline and the rules of the enterprise, members of the enterprise and their associates engaged in a system of "violations," in which members of the enterprise attempted to murder, conspired to murder, and physically beat and threatened those members of the enterprise who violated rules, questioned authority, or posed a threat to the leaders or purposes of the enterprise.

14. Members of the enterprise and their associates employed and used gang-related terminology, symbols, gestures, and color schemes.

15. To perpetuate the enterprise and maintain and extend their power, members of the enterprise and their associates committed illegal acts, including murder, attempted murder,

6

aggravated battery, intimidation, and aggravated assault against individuals who posed a threat to the enterprise or jeopardized its operations, including rival gang members and witnesses to the illegal activities of the enterprise. Pursuant to gang policy, members of the enterprise and their associates were required to participate in such acts, received standing orders to shoot rival gang members, and were instructed to retaliate for gang-related attacks upon the members and associates of the enterprise.

16. Members of the enterprise and their associates were required to "post up" and patrol in their neighborhood. This entailed standing guard in their neighborhood and shooting at any rival gang member they saw, and also at any individual in their neighborhood who was selling drugs without their permission. A member or associate of the enterprise would be violated if they did not "post up" in the IMPERIAL GANGSTER neighborhood. On multiple occasions during the course of the conspiracy members of the 139<sup>th</sup> Street IMPERIAL GANGSTERS would assist the 149<sup>th</sup> Street IMPERIAL GANGSTERS in "posting up" and patrolling in the 149<sup>th</sup> Street neighborhood. Similarly, on multiple occasions during the course of the conspiracy members of the 149<sup>th</sup> Street IMPERIAL GANGSTERS would assist the 139<sup>th</sup> Street IMPERIAL GANGSTERS by "posting up" and patrolling in the Harbor section of East Chicago, Indiana.

17. Members of the enterprise and their associates managed the procurement, transfer, use, concealment, and disposal of firearms and dangerous weapons within the enterprise to protect gang-related territory, personnel, and operations, and to deter, eliminate, and retaliate against competitors and other rival criminal organizations and persons. On multiple occasions during the course of the conspiracy this included trading firearms with Chicago-based IMPERIAL GANGSTERS, and selling guns to Chicago-based IMPERIAL GANGSTERS. On

7

multiple occasions during the course of the conspiracy members of the 149th Street IMPERIAL GANGSTERS and members of the 139th Street IMPERIAL GANGSTERS would trade guns with each other. Often a gun would be traded with another faction after it had been used in a shooting.

18. Members of the enterprise and their associates earned money for their members and regularly financed their activities through funds obtained in the illegal trafficking of controlled substances, including the distribution and possession with intent to distribute marijuana, cocaine, cocaine base and ecstasy. On multiple occasions during the course of the conspiracy members of the 139th Street IMPERIAL GANGSTERS and members of the 149th Street IMPERIAL GANGSTERS would supply each other with narcotics.

19. Members of the enterprise and their associates operated and conducted their affairs, in part, through a financial system in which the leadership of the IMPERIAL GANGSTERS and others possessed, controlled, and otherwise maintained a monetary stash on behalf of the enterprise. As part of this practice, members of the enterprise and their associates paid requisite weekly or bi-weekly dues into the pot, which, in turn, the enterprise used to bail gang members out of jail, to help pay for the defense attorneys of gang members who had been charged with crimes, to send to commissary accounts of incarcerated gang members, and to purchase and sell firearms and controlled substances. At times, the members of the enterprise and their associates paid money into the pot by selling narcotics supplied by members of the gang.

20. Members of the enterprise and their associates hid, misrepresented, concealed and caused to be misrepresented, concealed, and hidden, the objectives of acts done in furtherance of the conspiracy, and used coded language and other means to avoid detection and apprehension by

8

law enforcement authorities.

21. Members of the enterprise recruited and used juveniles to commit acts for the benefit of the enterprise.

22. In order to join the IMPERIAL GANGSTERS prospective members or "shorties" are given the option of shooting someone at the direction of the leadership of the gang, or receiving a two minute "violation," which entails high-ranking members of the gang punching the prospective member a certain number of times in the chest. While a "shorty" is attempting to join the gang his conduct is observed by the members of the IMPERIAL GANGSTERS. While a "shorty" is attempting to join the gang, he is considered a part of the IMPERIAL GANGSTER family and entitled to the full protection of the enterprise. The "shorty" is also subject to the rules and orders of the enterprise.

## Overt Acts

23. In furtherance of the conspiracy and to achieve the objects thereof, the conspirators performed or caused to be performed the following overt acts, among others, in the Northern District of Indiana and elsewhere:

a. On February 9, 2002, RAYMOND CAMPOS murdered Steven Rodriguez a/k/a "Little Jeremy."

b. On October 27, 2002, **ACE CORTEZ** shot an individual.

c. On July 13, 2003, RAYMOND CAMPOS attempted to murder Paul Alvarado by shooting him with a firearm, paralyzing him.

d. On March 5, 2004, **ARMANDO JOSE VELASQUEZ** possessed a stolen firearm and shot at who he believed to be members of a rival gang.

9

e.  On June 13, 2004, **ARMANDO JOSE VELASQUEZ** shot at who he believed to be rival gang members.  One of these shots struck a bystander, Wayne McNair, killing him.

f.  On July 24, 2004, **ACE CORTEZ** murdered Anuar David Paez a/k/a "Bronco," who he believed to be a rival gang member.

g.  On April 9, 2005, **JASON MEDINA** possessed a firearm.

h.  On July 24, 2005 **JASON MEDINA** murdered Guadalupe Trevino, who he believed to be a rival gang member.

i.  On May 6, 2006, **EDDIE SERNA** possessed marijuana.

j.  On August 3, 2006, **JASON MEDINA** possessed a firearm and marijuana.

k.  On March 22, 2007, GUILLERMO BRISENO attempted to steal a snow blower. When Juan Murillo Sr. and Juan Murillo Jr. attempted to thwart this robbery, GALO BENJAMIN FELICIANO and ANTHONY BALDAZO murdered Juan Murillo Sr. and shot and injured Juan Murillo Jr.

l.  On June 2, 2007, **JASON MEDINA** pointed a firearm at an individual in a threatening manner.

m.  On June 7, 2007, **JASON MEDINA** pointed a firearm at an individual in a threatening manner.

n.  On September 16, 2007, **RICHARD REYES** murdered Rene Alonzo, who he believed to be a rival gang member.  During the course of shooting Rene Alonzo, **RICHARD REYES** also shot a second individual in the calf and thigh.

o.  On September 26, 2007, **JUAN BRISENO** and DAVID ALMARAZ murdered Luis Ortiz a/k/a "Manolo," who they believed to be a rival gang member.

10

932

p. On September 29, 2007, **JUAN BRISENO** possessed a firearm.

q. On October 20, 2007, **JUAN BRISENO** possessed a firearm.

r. On October 22, 2007, GALO BENJAMIN FELICIANO fired a gun at an individual who he believed to be a rival gang member, while DAVID ALMARAZ served as the getaway driver.

s. On March 25, 2008, **JULIAN GUILLERMO SERNA** murdered Mario Soriano, who he believed to be a member of a breakaway, "Renegade" faction of the 139th Street IMPERIAL GANGSTERS.

t. On April 14, 2008, **JUAN BRISENO** possessed marijuana.

u. On May 16, 2008, **JUAN BRISENO** possessed a firearm and shot at unknown individuals.

v. On June 3, 2008, **JUAN BRISENO** and **VINCENT GARZA** murdered Michael Sessum and Miguel Mejias a/k/a "King Nelly," who they believed to be rival gang members. Immediately after doing so, **JUAN BRISENO** shot into a residence, attempting to kill a third individual, (hereinafter "Victim 1") who was struck in the arm with a bullet while holding a young child.

w. On July 20, 2008, **JUAN BRISENO** possessed a firearm.

x. On August 26, 2008, ROBERT LOCKHART, **JUAN BRISENO** and another individual attempted to murder a person known to the Grand Jury, (hereinafter "Victim 2"), by shooting him with a firearm.

y. On October 9, 2008, **JUAN BRISENO** murdered Harris Brown.

z. On January 23, 2009, **JUAN BRISENO** and two other members of the IMPERIAL

11

933

GANGSTERS attempted to murder an individual who they believed to be a rival gang member, by shooting him with a firearm.

aa.   On February 20, 2009, **JUAN BRISENO** attempted to murder a person known to the Grand Jury, (hereinafter "Victim 3"), by shooting him with a firearm.

bb.   On March 28, 2009, JULIUS SOLIS ordered another member of the IMPERIAL GANGSTERS to attempt to murder a person known to the Grand Jury by shooting him with a firearm.

cc.   On May 3, 2009, JULIUS SOLIS murdered Alonzo Cavazos, who he believed to be a member of a breakaway, "Renegade" faction of the 139th Street IMPERIAL GANGSTERS.

dd.   On July 13, 2009, **JUAN BRISENO** shot at Pete Santos and other individuals who he believed to be rival gang members.

ee.   On July 13, 2009, GALO BENJAMIN FELICIANO possessed over 700 rounds of ammunition.

ff.   On August 2, 2009, **JUAN BRISENO** attempted to murder a person known to the Grand Jury, (hereinafter Victim 4"), by shooting him with a firearm.

gg.   On September 10, 2009, GALO BENJAMIN FELICIANO and another individual attempted to murder a person known to the Grand Jury, by shooting at him with a firearm.

hh.   On September 23, 2009, MICHAEL ANTHONY CASTILLO, JUSTIN WEAVER and ROBERT LOCKHART shot Cornelius Jordan, Romelle Jackson and Thomas Delacruz, who they believed to be rival gang members.

ii.   On October 3, 2009, **JUAN BRISENO** possessed marijuana, a firearm, ammunition and a bulletproof vest.

12

934

jj.  On February 7, 2010, **JUAN BRISENO**, ROBERT LOCKHART and GALO

BENJAMIN FELICIANO murdered Miguel Colon, who they believed to be a rival gang

member.

kk.  On February 9, 2010, **JULIAN GUILLERMO SERNA** possessed a firearm.

ll.  On March 19, 2010, **JUAN BRISENO** shot an individual who he believed to be a

rival gang member.

mm.  On March 26, 2010, GALO BENJAMIN FELICIANO and JOSEPH RENE

TORRES murdered Jesus Alvarez, who they mistakenly believed to be a rival gang member.

nn.  On April 6, 2010, JOSEPH RENE TORRES shot Alejandro Sanchez, who he

believed to be a rival gang member.

oo.  On April 28, 2010, MICHAEL ANTHONY CASTILLO murdered Peter Santos,

who he believed to be a rival gang member.

pp.  On June 16, 2010, **JUAN BRISENO** possessed a firearm.

qq.  On June 19, 2010, **JUAN BRISENO** murdered Latroy Howard, who he believed to

be a rival gang member.

rr.  On July 1, 2010, **JUAN BRISENO** possessed marijuana.

ss.  On September 21, 2010, **JUAN BRISENO**, who was incarcerated, wrote a letter to

KELVIN JEFFERSON BELTRAN telling him that "these Mudafukkers (Federal law

enforcement) aint playing they trying to catch anybody up on sum shit."  He thanked KELVIN

JEFFERSON BELTRAN for the money that KELVIN JEFFERSON BELTRAN and other

IMPERIAL GANGSTERS had put on his jail commissary account.  **BRISENO** told BELTRAN

that he hoped that BELTRAN was keeping an eye on younger IMPERIAL GANGSTERS and

13

taking care of them, just like **BRISENO** did for **BELTRAN**.   **BRISENO** requested that BELTRAN provide him with some money to hire an attorney.

tt.   On October 6, 2010, **JUAN BRISENO**, who was incarcerated, wrote a letter to KELVIN JEFFERSON BELTRAN instructing him on how to recruit new young members to the IMPERIAL GANGSTERS.   **JUAN BRISENO** told KELVIN JEFFERSON BELTRAN that he doesn't want to see their gang fall to pieces.   **BRISENO** also warned BELTRAN to be careful around the 139th Street IMPERIAL GANGSTERS, because "I've been hearing they on sum bull shit."

uu.   On February 1, 2011, **JUAN BRISENO**, who was incarcerated, wrote a letter to KELVIN JEFFERSON BELTRAN telling him not to worry that the cocaine out there is of poor quality, as hopefully **JUAN BRISENO** will meet a new source of supply for cocaine while incarcerated who can "plug" (supply) **BRISENO** once **BRISENO** is released from jail.

vv.   On February 22, 2011, **JULIAN GUILLERMO SERNA** and two other individuals robbed two people at gun point, taking from them marijuana, United States Currency, a watch and other items.

ww.   On May 26, 2011, **ARMANDO JOSE VELASQUEZ** possessed a digital scale and gang-related drawings.

xx.   On June 6, 2011, **JASON MEDINA** and **EDWARD RAYE SERNA** attempted to murder a person known to the Grand Jury, (hereinafter "Victim 5"), by shooting at him with a firearm.

yy.   On June 7, 2011, **JULIAN GUILLERMO SERNA** assisted **JASON MEDINA** in looking for the gun that **MEDINA** discarded after using it to shoot at Victim 5.

14

936

zz.  On August 9, 2011, **JUAN BRISENO**, who was incarcerated, wrote a letter to KELVIN JEFFERSON BELTRAN telling him that he just wants all of the IMPERIAL GANGSTERS out there to come together and fix things.  **BRISENO** warned BELTRAN that if BELTRAN writes back, don't put any "gang shit" in there because the authorities are watching him.  **BRISENO** also warned BELTRAN to be careful because the "Feds" are out there.

aaa.  On October 11, 2011, **EDWARD RAYE SERNA** sold a firearm to a convicted felon who had traveled from Illinois to Indiana to purchase the firearm.

bbb.  On October 18, 2011, **JUAN BRISENO**, who was incarcerated, wrote a letter to KELVIN JEFFERSON BELTRAN telling him that **BRISENO** was upset that Angel "Beef" Santos was killed while **JUAN BRISENO** was incarcerated and **BRISENO** "couldn't do shit about it."

ccc.  On November 7, 2011, **EDWARD RAYE SERNA** possessed marijuana, ammunition, a ledger of drug debts owed to him, and gang-related clothing.

ddd.  On December 3, 2011, **ARMANDO JOSE VELASQUEZ** attempted to murder a person known to the Grand Jury, (hereinafter "Victim 6"), by shooting him multiple times with a firearm.

## Notice of Enhanced Sentencing

24.  From in or about September 2002, and continuing through on or about the date of the return of this Fourth Superseding Indictment, in the Northern District of Indiana and elsewhere, **JUAN BRISENO a/k/a "Tito," JASON MEDINA a/k/a "Burns," EDWARD RAYE SERNA a/k/a "Sern," ARMANDO JOSE VELASQUEZ a/k/a "Money, " SALVADOR CHAVEZ a/k/a "Black," "Dirty Sal," ACE CORTEZ, JULIAN GUILLERMO**

15

SERNA a/k/a "Big Ju," **RICHARD REYES** and **VINCENT GARZA** conspired to possess with intent to distribute and distribute five (5) kilograms or more of cocaine and one hundred (100) kilograms or more of marijuana, in violation of 21 United States Code Section 846.

25. On or about July 24, 2004, in the Northern District of Indiana, **ACE CORTEZ** knowingly and intentionally killed Anuar David Paez in violation of Indiana Penal Code Sections 35-42-1-1 and 35-41-2-4.

26. On or about July 24, 2005, in the Northern District of Indiana, **JASON MEDINA** knowingly and intentionally killed Guadalupe Trevino in violation of Indiana Penal Code Sections 35-42-1-1 and 35-41-2-4.

27. On or about September 16, 2007, in the Northern District of Indiana, **RICHARD REYES** knowingly and intentionally killed Rene Alonzo, in violation of Indiana Penal Code Sections 35-42-1-1 and 35-41-2-4.

28. On or about September 26, 2007, in the Northern District of Indiana, **JUAN BRISENO** knowingly and intentionally killed Luis Ortiz, in violation of Indiana Penal Code Sections 35-42-1-1 and 35-41-2-4.

29. On or about March 25, 2008, in the Northern District of Indiana, **JULIAN GUILLERMO SERNA** knowingly and intentionally killed Mario Soriano, in violation of Indiana Penal Code Sections 35-42-1-1 and 35-41-2-4.

30. On or about June 3, 2008, in the Northern District of Indiana, **JUAN BRISENO** and **VINCENT GARZA** knowingly and intentionally killed Michael Sessum, in violation of Indiana Penal Code Sections 35-42-1-1 and 35-41-2-4.

30. On or about June 3, 2008, in the Northern District of Indiana, **JUAN BRISENO** and

16

938

Case 15-2347 Document: 35 Filed: 07/27/2016 Pages: 4186

VINCENT GARZA knowingly and intentionally killed Miguel Mejias, in violation of Indiana Penal Code Sections 35-42-1-1 and 35-41-2-4.

31. On or about October 9, 2008, in the Northern District of Indiana, **JUAN BRISENO** knowingly and intentionally killed Harris Brown, in violation of Indiana Penal Code Sections 35-42-1-1 and 35-41-2-4.

32. On or about February 7, 2010, in the Northern District of Indiana, **JUAN BRISENO** knowingly and intentionally killed Miguel Colon, in violation of Indiana Penal Code Sections 35-42-1-1 and 35-41-2-4.

33. On or about June 19, 2010, in the Northern District of Indiana, **JUAN BRISENO** knowingly and intentionally killed Latroy Howard, in violation of Indiana Penal Code Sections 35-42-1-1 and 35-41-2-4.

All in violation of Title 18, United States Code, Section 1962(d).

17

## COUNT 2

### (Conspiracy to Possess with Intent to Distribute and Distribute Cocaine and Marijuana)

**THE GRAND JURY FURTHER CHARGES:**

From at least February, 2002, the exact date being unknown to the Grand Jury, and continuing into at least the date of this Fourth Superseding Indictment, both dates being approximate and inclusive, in the Northern District of Indiana and elsewhere,

**JUAN BRISENO a/k/a "Tito,"**
**JASON MEDINA a/k/a "Burns,"**
**EDWARD RAYE SERNA a/k/a "Sern,"**
**ARMANDO JOSE VELASQUEZ a/k/a "Money,"**
**SALVADOR CHAVEZ a/k/a "Black," "Dirty Sal,"**
**ACE CORTEZ,**
**JULIAN GUILLERMO SERNA a/k/a "Big Ju,"**
**RICHARD REYES and**
**VINCENT GARZA**

defendants  herein, did knowingly and intentionally combine, conspire, confederate and agree one with another together with GALO BENJAMIN FELICIANO, GUILLERMO BRISENO, ALEJANDRO BALBOA LARA, JUSTIN WEAVER, MICHAEL ANTHONY CASTILLO, KELVIN JEFFERSON BELTRAN, DAVID ALMARAZ, JOSEPH RENE TORRES, ROBERT LOCKHART, ANTHONY BALDAZO, RAYMOND CAMPOS, JULIUS SOLIS, DARMAILE CORTEZ SUTTON, EDDIE TORRES, and others known and unknown to the Grand Jury, to commit the following offense against the United States: to knowingly and intentionally possess with intent to distribute and distribute one hundred (100) kilograms or more of a mixture and substance containing a detectable amount of marijuana, a schedule I controlled substance and five (5) kilograms or more of a mixture and substance containing a detectable amount of cocaine,

18

940

a schedule II controlled substance;

All in violation of Title 21, United States Code, Section 846.

941

## COUNT 3

### (Murder in Aid of Racketeering Activity)

**THE GRAND JURY FURTHER CHARGES:**

1.  At all times relevant to this Fourth Superseding Indictment the IMPERIAL GANGSTERS, as more fully described in paragraphs 1 through 8 of Count 1 of this Fourth Superseding Indictment, which are re-alleged and incorporated by reference as though fully set forth herein, constituted an enterprise as defined in 18 U.S.C. § 1959(b)(2), namely IMPERIAL GANGSTERS, that is, a group of individuals associated in fact which is engaged in, and the activities of which affected, interstate and foreign commerce. The enterprise constituted an ongoing organization whose members functioned as a continuing unit for a common purpose of achieving the objectives of the enterprise.

2.  At all times relevant to this Fourth Superseding Indictment, the above-described enterprise, through its members and associates, engaged in racketeering activity as defined in 18 U.S.C. §§ 1959(b)(1) and 1961(1), namely, narcotics trafficking in violation of 21 U.S.C. §§ 841 and 846, and acts involving murder in violation of Indiana Penal Code, Section 35-42-1-1, 35-41-2-4, and 35-41-5-1.

3.  On or about July 24, 2004, in the Northern District of Indiana,

### ACE CORTEZ,

defendant herein, for the purpose of maintaining and increasing position in the IMPERIAL GANGSTERS, an enterprise engaged in racketeering activity, murdered Anuar David Paez a/k/a "Bronco," in violation of Indiana Penal Code, Sections 35-42-1-1 and 35-41-2-4.

All in violation of Title 18, United States Code, Section 1959(a)(1), and Title 18, United

942

States Code, Section 2.

943

## COUNT 4

### (Murder Resulting From the Use and Carrying of Firearm During and in Relation to a Crime of Violence)

**THE GRAND JURY FURTHER CHARGES:**

1.  Paragraphs 1 through 8 of Count 1 of this Fourth Superseding Indictment, which are re-alleged and incorporated by reference as though set forth fully herein.

2.  On or about July 24, 2004, in the Northern District of Indiana,

### ACE CORTEZ,

defendant herein, did knowingly carry, use, and discharge a firearm during and in relation to a crime of violence, that is, to murder in aid of racketeering activity, as set forth in Count 3 of this Fourth Superseding Indictment, which is incorporated here, did cause the death of a person through the use of a firearm, which killing is a murder defined in 18 U.S.C. § 1111, in that the defendant, with malice aforethought, unlawfully killed a human being, that is Anuar David Paez a/k/a "Bronco," willfully, deliberately, and maliciously.

All in violation of Title 18, United States Code, Section 924( c) and 924(j), and Title 18, United States Code, Section 2.

22

944

## COUNT 5

### (Murder in Aid of Racketeering Activity)

**THE GRAND JURY FURTHER CHARGES:**

1. Paragraphs 1 through 2 of Count 3 of this Fourth Superseding Indictment are re-alleged and incorporated by reference as though set forth fully herein.

2. On or about July 24, 2005, in the Northern District of Indiana,

**JASON MEDINA a/k/a "Burns,"**

defendant herein, for the purpose of maintaining and increasing position in the IMPERIAL GANGSTERS, an enterprise engaged in racketeering activity, murdered Guadalupe Trevino in violation of Indiana Penal Code, Sections 35-42-1-1 and 35-41-2-4.

All in violation of Title 18, United States Code, Section 1959(a)(1), and Title 18, United States Code, Section 2.

23

## COUNT 6

### (Murder Resulting From the Use and Carrying of Firearm During and in Relation to a Crime of Violence)

**THE GRAND JURY FURTHER CHARGES:**

1. Paragraphs 1 through 8 of Count 1 of this Fourth Superseding Indictment, which are re-alleged and incorporated by reference as though set forth fully herein.

2. On or about July 24, 2005, in the Northern District of Indiana,

### JASON MEDINA a/k/a "Burns,"

defendant herein, did knowingly carry, use, and discharge a firearm during and in relation to a crime of violence, that is, to murder in aid of racketeering activity, as set forth in Count 5 of this Fourth Superseding Indictment, which is incorporated here, did cause the death of a person through the use of a firearm, which killing is a murder defined in 18 U.S.C. § 1111, in that the defendant, with malice aforethought, unlawfully killed a human being, that is Guadalupe Trevino, willfully, deliberately, and maliciously.

All in violation of Title 18, United States Code, Section 924( c) and 924(j), and Title 18, United States Code, Section 2.

24

946

## COUNT 7

### (Murder in Aid of Racketeering Activity)

**THE GRAND JURY FURTHER CHARGES:**

1. Paragraphs 1 through 2 of Count 3 of this Fourth Superseding Indictment are re-alleged and incorporated by reference as though set forth fully herein.

2. On or about September 16, 2007, in the Northern District of Indiana,

**RICHARD REYES,**

defendant herein, for the purpose of maintaining and increasing position in the IMPERIAL GANGSTERS, an enterprise engaged in racketeering activity, murdered Rene Alonzo, in violation of Indiana Penal Code, Sections 35-42-1-1 and 35-41-2-4.

All in violation of Title 18, United States Code, Section 1959(a)(1), and Title 18, United States Code, Section 2.

25

<u>COUNT 8</u>

**<u>(Murder Resulting From the Use and Carrying of Firearm During and in Relation to a
Crime of Violence)</u>**

**THE GRAND JURY FURTHER CHARGES:**

1. Paragraphs 1 through 8 of Count 1 of this Fourth Superseding Indictment, which are re-alleged and incorporated by reference as though set forth fully herein.

2. On or about September 16, 2007, in the Northern District of Indiana,

**RICHARD REYES,**

defendant herein, did knowingly carry, use, and discharge a firearm during and in relation to a crime of violence, that is, to murder in aid of racketeering activity, as set forth in Count 7 of this Fourth Superseding Indictment, which is incorporated here, did cause the death of a person through the use of a firearm, which killing is a murder defined in 18 U.S.C. § 1111, in that the defendant, with malice aforethought, unlawfully killed a human being, that is Rene Alonzo, willfully, deliberately, and maliciously.

All in violation of Title 18, United States Code, Section 924( c) and 924(j), and Title 18, United States Code, Section 2.

26

948

## COUNT 9

### (Murder in Aid of Racketeering Activity)

**THE GRAND JURY FURTHER CHARGES:**

1. Paragraphs 1 through 2 of Count 3 of this Fourth Superseding Indictment are re-alleged and incorporated by reference as though set forth fully herein.

2. On or about September 26, 2007, in the Northern District of Indiana,

**JUAN BRISENO a/k/a "Tito,"**

defendant herein, for the purpose of maintaining and increasing position in the IMPERIAL GANGSTERS, an enterprise engaged in racketeering activity, murdered Luis Ortiz a/k/a "Manolo," in violation of Indiana Penal Code, Sections 35-42-1-1 and 35-41-2-4.

All in violation of Title 18, United States Code, Section 1959(a)(1), and Title 18, United States Code, Section 2.

27

949

## COUNT 10

### (Murder Resulting From the Use and Carrying of Firearm During and in Relation to a Crime of Violence)

**THE GRAND JURY FURTHER CHARGES:**

1.  Paragraphs 1 through 8 of Count 1 of this Fourth Superseding Indictment, which are re-alleged and incorporated by reference as though set forth fully herein.

2.  On or about September 26, 2007, in the Northern District of Indiana,

### JUAN BRISENO a/k/a "Tito,"

defendant herein, did knowingly carry, use, and discharge a firearm during and in relation to a crime of violence, that is, to murder in aid of racketeering activity, as set forth in Count 9 of this Fourth Superseding Indictment, which is incorporated here, did cause the death of a person through the use of a firearm, which killing is a murder defined in 18 U.S.C. § 1111, in that the defendant, with malice aforethought, unlawfully killed a human being, that is Luis Ortiz a/k/a "Manolo," willfully, deliberately, and maliciously.

All in violation of Title 18, United States Code, Section 924( c) and 924(j), and Title 18, United States Code, Section 2.

28

## COUNT 11

### (Murder in Aid of Racketeering Activity)

**THE GRAND JURY FURTHER CHARGES:**

1.  Paragraphs 1 through 2 of Count 3 of this Fourth Superseding Indictment are re-alleged and incorporated by reference as though set forth fully herein.

2.  On or about March 25, 2008, in the Northern District of Indiana,

### JULIAN GUILLERMO SERNA,

defendant herein, for the purpose of maintaining and increasing position in the IMPERIAL GANGSTERS, an enterprise engaged in racketeering activity, murdered Mario Soriano, in violation of Indiana Penal Code, Sections 35-42-1-1 and 35-41-2-4.

All in violation of Title 18, United States Code, Section 1959(a)(1), and Title 18, United States Code, Section 2.

29

951

## COUNT 12

### (Murder Resulting From the Use and Carrying of Firearm During and in Relation to a Crime of Violence)

**THE GRAND JURY FURTHER CHARGES:**

1. Paragraphs 1 through 8 of Count 1 of this Fourth Superseding Indictment, which are re-alleged and incorporated by reference as though set forth fully herein.

2. On or about March 25, 2008, in the Northern District of Indiana,

### JULIAN GUILLERMO SERNA,

defendant herein, did knowingly carry, use, and discharge a firearm during and in relation to a crime of violence, that is, to murder in aid of racketeering activity, as set forth in Count 11 of this Fourth Superseding Indictment, which is incorporated here, did cause the death of a person through the use of a firearm, which killing is a murder defined in 18 U.S.C. § 1111, in that the defendant, with malice aforethought, unlawfully killed a human being, that is Mario Soriano, willfully, deliberately, and maliciously.

All in violation of Title 18, United States Code, Section 924( c) and 924(j), and Title 18, United States Code, Section 2.

30

## COUNT 13

### (Murder in Aid of Racketeering Activity)

**THE GRAND JURY FURTHER CHARGES:**

1. Paragraphs 1 through 2 of Count 3 of this Fourth Superseding Indictment are re-alleged and incorporated by reference as though set forth fully herein.

2. On or about June 3, 2008, in the Northern District of Indiana,

**JUAN BRISENO a/k/a "Tito"**
**and**
**VINCENT GARZA,**

defendants herein, for the purpose of maintaining and increasing position in the IMPERIAL GANGSTERS, an enterprise engaged in racketeering activity, murdered Michael Sessum, in violation of Indiana Penal Code, Sections 35-42-1-1 and 35-41-2-4.

All in violation of Title 18, United States Code, Section 1959(a)(1), and Title 18, United States Code, Section 2.

953

## COUNT 14

### (Murder Resulting From the Use and Carrying of Firearm During and in Relation to a Crime of Violence)

**THE GRAND JURY FURTHER CHARGES:**

1. Paragraphs 1 through 8 of Count 1 of this Fourth Superseding Indictment, which are re-alleged and incorporated by reference as though set forth fully herein.

2. On or about June 3, 2008, in the Northern District of Indiana,

<div align="center">

**JUAN BRISENO a/k/a "Tito"**
**and**
**VINCENT GARZA,**

</div>

defendants herein, did knowingly carry, use, and discharge a firearm during and in relation to a crime of violence, that is, to murder in aid of racketeering activity, as set forth in Count 13 of this Fourth Superseding Indictment, which is incorporated here, did cause the death of a person through the use of a firearm, which killing is a murder defined in 18 U.S.C. § 1111, in that the defendant, with malice aforethought, unlawfully killed a human being, that is Michael Sessum, willfully, deliberately, and maliciously.

All in violation of Title 18, United States Code, Section 924( c) and 924(j), and Title 18, United States Code, Section 2.

<div align="center">

32

</div>

## COUNT 15

### (Murder in Aid of Racketeering Activity)

**THE GRAND JURY FURTHER CHARGES:**

1. Paragraphs 1 through 2 of Count 3 of this Fourth Superseding Indictment are re-alleged and incorporated by reference as though set forth fully herein.

2. On or about June 3, 2008, in the Northern District of Indiana,

<div align="center">

**JUAN BRISENO a/k/a "Tito"**
**and**
**VINCENT GARZA,**

</div>

defendants herein, for the purpose of maintaining and increasing position in the IMPERIAL GANGSTERS, an enterprise engaged in racketeering activity, murdered Miguel Mejias a/k/a "King Nelly," in violation of Indiana Penal Code, Sections 35-42-1-1 and 35-41-2-4.

All in violation of Title 18, United States Code, Section 1959(a)(1), and Title 18, United States Code, Section 2.

<div align="center">33</div>

## COUNT 16

### (Murder Resulting From the Use and Carrying of Firearm During and in Relation to a Crime of Violence)

**THE GRAND JURY FURTHER CHARGES:**

1. Paragraphs 1 through 8 of Count 1 of this Fourth Superseding Indictment, which are re-alleged and incorporated by reference as though set forth fully herein.

2. On or about June 3, 2008, in the Northern District of Indiana,

**JUAN BRISENO a/k/a "Tito"**
**and**
**VINCENT GARZA,**

defendants herein, did knowingly carry, use, and discharge a firearm during and in relation to a crime of violence, that is, to murder in aid of racketeering activity, as set forth in Count 15 of this Fourth Superseding Indictment, which is incorporated here, did cause the death of a person through the use of a firearm, which killing is a murder defined in 18 U.S.C. § 1111, in that the defendant, with malice aforethought, unlawfully killed a human being, that is Miguel Mejias a/k/a "King Nelly," willfully, deliberately, and maliciously.

All in violation of Title 18, United States Code, Section 924( c) and 924(j), and Title 18, United States Code, Section 2.

34

## COUNT 17

### (Murder in Aid of Racketeering Activity)

**THE GRAND JURY FURTHER CHARGES:**

1. Paragraphs 1 through 2 of Count 3 of this Fourth Superseding Indictment are re-alleged and incorporated by reference as though set forth fully herein.

2. On or about October 9, 2008, in the Northern District of Indiana,

**JUAN BRISENO a/k/a "Tito,"**

defendant herein, for the purpose of maintaining and increasing position in the IMPERIAL GANGSTERS, an enterprise engaged in racketeering activity, murdered Harris Brown in violation of Indiana Penal Code, Sections 35-42-1-1 and 35-41-2-4.

All in violation of Title 18, United States Code, Section 1959(a)(1), and Title 18, United States Code, Section 2.

35

## COUNT 18

### (Murder Resulting From the Use and Carrying of Firearm During and in Relation to a Crime of Violence)

**THE GRAND JURY FURTHER CHARGES:**

1.   Paragraphs 1 through 8 of Count 1 of this Fourth Superseding Indictment, which are re-alleged and incorporated by reference as though set forth fully herein.

2.   On or about October 9, 2008, in the Northern District of Indiana,

### JUAN BRISENO a/k/a "Tito,"

defendant herein, did knowingly carry, use, and discharge a firearm during and in relation to a crime of violence, that is, to murder in aid of racketeering activity, as set forth in Count 17 of this Fourth Superseding Indictment, which is incorporated here, did cause the death of a person through the use of a firearm, which killing is a murder defined in 18 U.S.C. § 1111, in that the defendant, with malice aforethought, unlawfully killed a human being, that is Harris Brown, willfully, deliberately, and maliciously.

All in violation of Title 18, United States Code, Section 924( c) and 924(j), and Title 18, United States Code, Section 2.

36

## COUNT 19

### (Murder in Aid of Racketeering Activity)

**THE GRAND JURY FURTHER CHARGES:**

1.   Paragraphs 1 through 2 of Count 3 of this Fourth Superseding Indictment are re-alleged and incorporated by reference as though set forth fully herein.

2.   On or about February 7, 2010, in the Northern District of Indiana,

**JUAN BRISENO a/k/a "Tito,"**

defendant herein, and others known and unknown to the grand jury, for the purpose of maintaining and increasing position in the IMPERIAL GANGSTERS, an enterprise engaged in racketeering activity, murdered Miguel Colon a/k/a "Migs" in violation of Indiana Penal Code, Section 35-42-1-1 and 35-41-2-4.

All in violation of Title 18, United States Code, Section 1959(a)(1), and Title 18, United States Codes, Section 2.

959

## COUNT 20

### (Murder Resulting From the Use and Carrying of Firearm During and in Relation to a Crime of Violence)

**THE GRAND JURY FURTHER CHARGES:**

1. Paragraphs 1 through 8 of Count 1 of this Fourth Superseding Indictment, which are re-alleged and incorporated by reference as though set forth fully herein.

2. On or about February 7, 2010, in the Northern District of Indiana,

**JUAN BRISENO a/k/a "Tito,"**

defendant herein, and others known and unknown to the grand jury, did knowingly carry, use, and discharge firearms during and in relation to a crime of violence, that is, to murder in aid of racketeering activity, as set forth in Count 19 of this Fourth Superseding Indictment, which is incorporated here, did cause the death of a person through the use of a firearm, which killing is a murder defined in 18 U.S.C. § 1111, in that the defendants, with malice aforethought, unlawfully killed a human being, that is Miguel Colon a/k/a "Migs," willfully, deliberately, and maliciously.

All in violation of Title 18, United States Code, Section 924( c) and 924(j), and Title 18, United States Code, Section 2.

38

960

## COUNT 21

### (Murder in Aid of Racketeering Activity)

**THE GRAND JURY FURTHER CHARGES:**

1.  Paragraphs 1 through 2 of Count 3 of this Fourth Superseding Indictment are re-alleged and incorporated by reference as though set forth fully herein.

2.  On or about June 19, 2010, in the Northern District of Indiana,

**JUAN BRISENO a/k/a "Tito,"**

defendant herein, for the purpose of maintaining and increasing position in the IMPERIAL GANGSTERS, an enterprise engaged in racketeering activity, murdered Latroy Howard in violation of Indiana Penal Code, Section 35-42-1-1 and 35-41-2-4.

All in violation of Title 18, United States Code, Section 1959(a)(1), and Title 18, United States Code, Section 2.

39

961

## COUNT 22

## (Murder Resulting From the Use and Carrying of Firearm During and in Relation to a Crime of Violence)

**THE GRAND JURY FURTHER CHARGES:**

1. Paragraphs 1 through 8 of Count 1 of this Fourth Superseding Indictment, which are re-alleged and incorporated by reference as though set forth fully herein.

2. On or about June 19, 2010, in the Northern District of Indiana,

### JUAN BRISENO a/k/a "Tito,"

defendant herein, did knowingly carry, use, and discharge firearms during and in relation to a crime of violence, that is, to murder in aid of racketeering activity, as set forth in Count 21 of this Fourth Superseding Indictment, which is incorporated here, did cause the death of a person through the use of a firearm, which killing is a murder defined in 18 U.S.C. § 1111, in that the defendant, with malice aforethought, unlawfully killed a human being, that is Latroy Howard, willfully, deliberately, and maliciously.

All in violation of Title 18, United States Code, Section 924( c) and 924(j), and Title 18, United States Code, Section 2.

40

<u>COUNT 23</u>

### (Attempted Murder in Aid of Racketeering Activity)

**THE GRAND JURY FURTHER CHARGES:**

1. Paragraphs 1 through 2 of Count 3 of this Fourth Superseding Indictment are re-alleged and incorporated by reference as though set forth fully herein.

2. On or about June 3, 2008, in the Northern District of Indiana,

**JUAN BRISENO a/k/a "Tito,"**

defendant herein, for the purpose of maintaining and increasing position in the IMPERIAL GANGSTERS, an enterprise engaged in racketeering activity, attempted to murder Victim 1, a person known to the Grand Jury, in violation of Indiana Penal Code, Sections 35-42-1-1, 35-41-2-4 and 35-41-5-1.

All in violation of Title 18, United States Code, Section 1959(a)(5), and Title 18, United States Code, Section 2.

963

## COUNT 24

### (Use of a Firearm During and in Relation to a Federal Crime of Violence)

**THE GRAND JURY FURTHER CHARGES:**

1.  Paragraphs 1 through 8 of Count 1 of this Fourth Superseding Indictment, which are re-alleged and incorporated by reference as though set forth fully herein.

2.  On or about June 3, 2008, in the Northern District of Indiana,

### JUAN BRISENO a/k/a "Tito,"

defendant herein, did knowingly and intentionally discharge, carry and use a firearm during and in relation to a crime of violence, for which he may be prosecuted in a court of the United States, to wit: attempted murder in aid of racketeering activity, as set forth in Count 23 of this Fourth Superseding Indictment.

All in violation of Title 18, United States Code, Section 924( c), and Title 18, United States Code, Section 2.

42

## COUNT 25

### (Attempted Murder in Aid of Racketeering Activity)

**THE GRAND JURY FURTHER CHARGES:**

1. Paragraphs 1 through 2 of Count 3 of this Fourth Superseding Indictment are re-alleged and incorporated by reference as though set forth fully herein.

2. On or about August 26, 2008, in the Northern District of Indiana,

**JUAN BRISENO a/k/a "Tito,"**

defendant herein, for the purpose of maintaining and increasing position in the IMPERIAL GANGSTERS, an enterprise engaged in racketeering activity, attempted to murder Victim 2, a person known to the Grand Jury, in violation of Indiana Penal Code, Sections 35-42-1-1, 35-41-2-4 and 35-41-5-1.

All in violation of Title 18, United States Code, Section 1959(a)(5), and Title 18, United States Code, Section 2.

43

965

## <u>COUNT 26</u>

### <u>(Use of a Firearm During and in Relation to a Federal Crime of Violence)</u>

**THE GRAND JURY FURTHER CHARGES:**

1.  Paragraphs 1 through 8 of Count 1 of this Fourth Superseding Indictment, which are re-alleged and incorporated by reference as though set forth fully herein.

2.  On or about August 26, 2008, in the Northern District of Indiana,

### JUAN BRISENO a/k/a "Tito,"

defendant herein, did knowingly and intentionally discharge, carry and use a firearm during and in relation to a crime of violence, for which he may be prosecuted in a court of the United States, to wit: attempted murder in aid of racketeering activity, as set forth in Count 25 of this Fourth Superseding Indictment.

All in violation of Title 18, United States Code, Section 924( c), and Title 18, United States Code, Section 2.

966

<u>COUNT 27</u>

<u>(Attempted Murder in Aid of Racketeering Activity)</u>

**THE GRAND JURY FURTHER CHARGES:**

1. Paragraphs 1 through 2 of Count 3 of this Fourth Superseding Indictment are re-alleged and incorporated by reference as though set forth fully herein.

2. On or about February 20, 2009, in the Northern District of Indiana,

**JUAN BRISENO a/k/a "Tito,"**

defendant herein, for the purpose of maintaining and increasing position in the IMPERIAL GANGSTERS, an enterprise engaged in racketeering activity, attempted to murder Victim 3, a person known to the Grand Jury, in violation of Indiana Penal Code, Sections 35-42-1-1, 35-41-2-4 and 35-41-5-1.

All in violation of Title 18, United States Code, Section 1959(a)(5), and Title 18, United States Code, Section 2.

45

967

## COUNT 28

### (Use of a Firearm During and in Relation to a Federal Crime of Violence)

**THE GRAND JURY FURTHER CHARGES:**

1. Paragraphs 1 through 8 of Count 1 of this Fourth Superseding Indictment, which are re-alleged and incorporated by reference as though set forth fully herein.

2. On or about February 20, 2009, in the Northern District of Indiana,

**JUAN BRISENO a/k/a "Tito,"**

defendant herein, did knowingly and intentionally discharge, carry and use a firearm during and in relation to a crime of violence, for which he may be prosecuted in a court of the United States, to wit: attempted murder in aid of racketeering activity as set forth in Count 27 of this Fourth Superseding Indictment.

All in violation of Title 18, United States Code, Section 924( c), and Title 18, United States Code, Section 2.

46

968

## COUNT 29

### (Attempted Murder in Aid of Racketeering Activity)

**THE GRAND JURY FURTHER CHARGES:**

1.  Paragraphs 1 through 2 of Count 3 of this Fourth Superseding Indictment are re-alleged and incorporated by reference as though set forth fully herein.

2.  On or about August 2, 2009, in the Northern District of Indiana,

**JUAN BRISENO a/k/a "Tito,"**

defendant herein, for the purpose of maintaining and increasing position in the IMPERIAL GANGSTERS, an enterprise engaged in racketeering activity, attempted to murder Victim 4, a person known to the Grand Jury, in violation of Indiana Penal Code, Sections 35-42-1-1, 35-41-2-4 and 35-41-5-1.

All in violation of Title 18, United States Code, Section 1959(a)(5), and Title 18, United States Code, Section 2.

47

## COUNT 30

### (Use of a Firearm During and in Relation to a Federal Crime of Violence)

**THE GRAND JURY FURTHER CHARGES:**

1. Paragraphs 1 through 8 of Count 1 of this Fourth Superseding Indictment, which are re-alleged and incorporated by reference as though set forth fully herein.

2. On or about August 2, 2009, in the Northern District of Indiana,

### JUAN BRISENO a/k/a "Tito,"

defendant herein, did knowingly and intentionally discharge, carry and use a firearm during and in relation to a crime of violence, for which he may be prosecuted in a court of the United States, to wit: attempted murder in aid of racketeering activity as set forth in Count 29 of this Fourth Superseding Indictment.

All in violation of Title 18, United States Code, Section 924( c), and Title 18, United States Code, Section 2.

970

## COUNT 31

### (Attempted Murder in Aid of Racketeering Activity)

**THE GRAND JURY FURTHER CHARGES:**

1.  Paragraphs 1 through 2 of Count 3 of this Fourth Superseding Indictment are re-alleged and incorporated by reference as though set forth fully herein.

2.  On or about June 6, 2011, in the Northern District of Indiana,

**JASON MEDINA a/k/a "Burns"**
**and**
**EDWARD RAYE SERNA a/k/a "Sern,"**

defendants herein, for the purpose of maintaining and increasing position in the IMPERIAL GANGSTERS, an enterprise engaged in racketeering activity, attempted to murder Victim 5, a person known to the Grand Jury, in violation of Indiana Penal Code, Sections 35-42-1-1, 35-41-2-4 and 35-41-5-1.

All in violation of Title 18, United States Code, Section 1959(a)(5) and Title 18, United States Code, Section 2.

49

## COUNT 32

### (Use of a Firearm During and in Relation to a Federal Crime of Violence)

**THE GRAND JURY FURTHER CHARGES:**

1. Paragraphs 1 through 8 of Count 1 of this Fourth Superseding Indictment, which are re-alleged and incorporated by reference as though set forth fully herein.

2. On or about June 6, 2011, in the Northern District of Indiana,

**JASON MEDINA a/k/a "Burns"**
**and**
**EDWARD RAYE SERNA a/k/a "Sern,"**

defendants herein, did knowingly and intentionally discharge, carry and use a firearm during and in relation to a crime of violence, for which they may be prosecuted in a court of the United States, to wit: attempted murder in aid of racketeering activity as set forth in Count 31 of this Fourth Superseding Indictment.

All in violation of Title 18, United States Code, Section 924( c), and Title 18, United States Code, Section 2.

50

972

## COUNT 33

### (Attempted Murder in Aid of Racketeering Activity)

**THE GRAND JURY FURTHER CHARGES:**

1.  Paragraphs 1 through 2 of Count 3 of this Fourth Superseding Indictment are re-alleged and incorporated by reference as though set forth fully herein.

2.  On or about December 3, 2011, in the Northern District of Indiana,

### ARMANDO JOSE VELASQUEZ,

defendant herein, for the purpose of maintaining and increasing position in the IMPERIAL GANGSTERS, an enterprise engaged in racketeering activity, attempted to murder Victim 6, a person known to the Grand Jury, in violation of Indiana Penal Code, Sections 35-42-1-1, 35-41-2-4 and 35-41-5-1.

All in violation of Title 18, United States Code, Section 1959(a)(5) and Title 18, United States Code, Section 2.

51

## COUNT 34

### (Use of a Firearm During and in Relation to a Federal Crime of Violence)

**THE GRAND JURY FURTHER CHARGES:**

1. Paragraphs 1 through 8 of Count 1 of this Fourth Superseding Indictment, which are re-alleged and incorporated by reference as though set forth fully herein.

2. On or about December 3, 2011, in the Northern District of Indiana,

### ARMANDO JOSE VELASQUEZ,

defendant herein, did knowingly and intentionally discharge, carry and use a firearm during and in relation to a crime of violence, for which he may be prosecuted in a court of the United States, to wit: attempted murder in aid of racketeering activity as set forth in Count 33 of this Fourth Superseding Indictment.

All in violation of Title 18, United States Code, Section 924( c), and Title 18, United States Code, Section 2.

52

974

## COUNT 35

### (Possession with Intent to Distribute Marijuana)

**THE GRAND JURY FURTHER CHARGES:**

On or about February 22, 2011, in the Northern District of Indiana,

**JULIAN GUILLERMO SERNA,**

defendant herein, did knowingly and intentionally possess with intent to distribute a quantity of a mixture and substance containing a detectable amount of marijuana, a schedule I controlled substance;

All in violation of Title 21, United States Code, Section 841(a)(1) and Title 18, United States Code, Section 2.

53

## COUNT 36

### (Use of a Firearm During and in Relation to a Federal Crime of Violence)

**THE GRAND JURY FURTHER CHARGES:**

On or about February 22, 2011, in the Northern District of Indiana,

**JULIAN GUILLERMO SERNA,**

defendant herein, did knowingly and intentionally brandish, carry and use a firearm during and in relation to drug trafficking crime, for which he may be prosecuted in a court of the United States, to wit: possession with intent to distribute marijuana as set forth in Count 35 of this Fourth Superseding Indictment.

All in violation of Title 18, United States Code, Sections 924( c) and Title 18, United States Code, Section 2.

54

## NOTICE OF SPECIAL FINDINGS
## (18 U.S.C. §§ 3591 and 3592)

1. The Grand Jury incorporates by reference and realleges the allegations contained in Counts 9 and 10 of this Fourth Superseding Indictment and makes the following special findings as to Counts 9 and 10, the defendant:

### JUAN BRISENO a/k/a "Tito,"

a. was 18 years of age or older at the time of the offenses. [Title 18, United States Code, Section 3591(a)].

b. intentionally killed the victim, Luis Ortiz a/k/a "Manolo." [Title 18, United States Code, Section 3591(a)(2)(A)].

c. intentionally inflicted serious bodily injury that resulted in the death of the victim, Luis Ortiz a/k/a "Manolo." [Title 18, United States Code, Section 3591(a)(2)(B)].

d. intentionally participated in an act, contemplating that the life of a person would be taken and intending that lethal force would be used in connection with a person, other than one of the participants in the offense, and the victim, Luis Ortiz a/k/a "Manolo," died as a direct result of the acts. [Title 18, United States Code, Section 3591(a)(2)( c)].

e. intentionally and specifically engaged in an act of violence, knowing that the act created a grave risk of death to a person, other than one of the participants in the offense, such that participation in the act constituted a reckless disregard for human life and the victim, Luis Ortiz a/k/a "Manolo," died as a direct result of the act. [Title 18, United States Code, Section 3591(a)(2)(D)]; and

55

f.   committed the offense after substantial planning and premeditation to cause the death of Luis Ortiz a/k/a "Manolo." [Title 18, United States Code, Section 3592(c)(9)].

2.   The Grand Jury incorporates by reference and realleges the allegations contained in Counts 13 and 14 of this Fourth Superseding Indictment and makes the following special findings as to Counts 13 and 14, the defendant:

**JUAN BRISENO a/k/a "Tito,"**

a.   was 18 years of age or older at the time of the offenses.   [Title 18, United States Code, Section 3591(a)].

b.   intentionally killed the victim, Michael Sessum.   [Title 18, United States Code, Section 3591(a)(2)(A)].

c.   intentionally inflicted serious bodily injury that resulted in the death of the victim, Michael Sessum.   [Title 18, United States Code, Section 3591(a)(2)(B)].

d.   intentionally participated in an act, contemplating that the life of a person would be taken and intending that lethal force would be used in connection with a person, other than one of the participants in the offense, and the victim, Michael Sessum, died as a direct result of the acts.   [Title 18, United States Code, Section 3591(a)(2)( c)].

e.   intentionally and specifically engaged in an act of violence, knowing that the act created a grave risk of death to a person, other than one of the participants in the offense, such that participation in the act constituted a reckless disregard for human life and the victim, Michael Sessum, died as a direct result of the act.   [Title 18, United States Code, Section 3591(a)(2)(D)].

f.   knowingly created a grave risk of death to one or more persons in the commission of

56

978

the offense, in addition to Michael Sessum. [Title 18, United States Code, Section 3592(c)(5)].

g.  intentionally killed or attempted to kill more than one person in a single criminal episode. [Title 18, United States Code, Section 3592(c)(16)]; and

h.  committed the offense after substantial planning and premeditation to cause the death of Michael Sessum. [Title 18, United States Code, Section 3592(c)(9)].

3.  The Grand Jury incorporates by reference and realleges the allegations contained in Counts 15 and 16 of this Fourth Superseding Indictment and makes the following special findings as to Counts 15 and 16, the defendant:

### JUAN BRISENO a/k/a "Tito,"

a.  was 18 years of age or older at the time of the offenses.  [Title 18, United States Code, Section 3591(a)].

b.  intentionally killed the victim, Miguel Mejias.  [Title 18, United States Code, Section 3591(a)(2)(A)].

c.  intentionally inflicted serious bodily injury that resulted in the death of the victim, Miguel Mejias.  [Title 18, United States Code, Section 3591(a)(2)(B)].

d.  intentionally participated in an act, contemplating that the life of a person would be taken and intending that lethal force would be used in connection with a person, other than one of the participants in the offense, and the victim, Miguel Mejias, died as a direct result of the acts.  [Title 18, United States Code, Section 3591(a)(2)( c)].

e.  intentionally and specifically engaged in an act of violence, knowing that the act created a grave risk of death to a person, other than one of the participants in the offense,

979

such that participation in the act constituted a reckless disregard for human life and the victim, Miguel Mejias, died as a direct result of the act. [Title 18, United States Code, Section 3591(a)(2)(D)].

f. in the commission of the offense, or in escaping apprehension for the violation of the offense, knowingly created a grave risk of death to one or more persons, in addition to the victim of the offense. [Title 18, United States Code, Section 3592(c)(5)].

g. intentionally killed or attempted to kill more than one person in a single criminal episode. [Title 18, United States Code, Section 3592(c)(16)]; and

h. committed the offense after substantial planning and premeditation to cause the death of Miguel Mejias. [Title 18, United States Code, Section 3592(c)(9)].

4. The Grand Jury incorporates by reference and realleges the allegations contained in Counts 17 and 18 of this Fourth Superseding Indictment and makes the following special findings as to Counts 17 and 18, the defendant:

**JUAN BRISENO a/k/a "Tito,"**

a. was 18 years of age or older at the time of the offenses. [Title 18, United States Code, Section 3591(a)].

b. intentionally killed the victim, Harris Brown. [Title 18, United States Code, Section 3591(a)(2)(A)].

c. intentionally inflicted serious bodily injury that resulted in the death of the victim, Harris Brown. [Title 18, United States Code, Section 3591(a)(2)(B)].

d. intentionally participated in an act, contemplating that the life of a person would be taken and intending that lethal force would be used in connection with a person, other

58

than one of the participants in the offense, and the victim, Harris Brown, died as a direct result of the acts.   [Title 18, United States Code, Section 3591(a)(2)( c)].

e.   intentionally and specifically engaged in an act of violence, knowing that the act created a grave risk of death to a person, other than one of the participants in the offense, such that participation in the act constituted a reckless disregard for human life and the victim, Harris Brown, died as a direct result of the act.   [Title 18, United States Code, Section 3591(a)(2)(D)]; and

f.   committed the offense after substantial planning and premeditation to cause the death of Harris Brown. [Title 18, United States Code, Section 3592(c)(9)].

5.   The Grand Jury incorporates by reference and realleges the allegations contained in Counts 19 and 20 of this Fourth Superseding Indictment and makes the following special findings as to Counts 19 and 20, the defendant:

**JUAN BRISENO a/k/a "Tito,"**

a.   was 18 years of age or older at the time of the offenses.   [Title 18, United States Code, Section 3591(a)].

b.   intentionally killed the victim, Miguel Colon.   [Title 18, United States Code, Section 3591(a)(2)(A)].

c.   intentionally inflicted serious bodily injury that resulted in the death of the victim, Miguel Colon.   [Title 18, United States Code, Section 3591(a)(2)(B)].

d.   intentionally participated in an act, contemplating that the life of a person would be taken and intending that lethal force would be used in connection with a person, other than one of the participants in the offense, and the victim, Miguel Colon, died as a direct

59

981

result of the acts. [Title 18, United States Code, Section 3591(a)(2)(c)].

e. intentionally and specifically engaged in an act of violence, knowing that the act created a grave risk of death to a person, other than one of the participants in the offense, such that participation in the act constituted a reckless disregard for human life and the victim, Miguel Colon, died as a direct result of the act. [Title 18, United States Code, Section 3591(a)(2)(D)].

f. knowingly created a grave risk of death to one or more persons in the commission of the offense, in addition to Miguel Colon. [Title 18, United States Code, Section 3592(c)(5)]; and

g. committed the offense after substantial planning and premeditation to cause the death of Miguel Colon. [Title 18, United States Code, Section 3592(c)(9)].

6. The Grand Jury incorporates by reference and realleges the allegations contained in Counts 21 and 22 of this Fourth Superseding Indictment and makes the following special findings as to Counts 21 and 22, the defendant:

### JUAN BRISENO a/k/a "Tito,"

a. was 18 years of age or older at the time of the offenses. [Title 18, United States Code, Section 3591(a)].

b. intentionally killed the victim, Latroy Howard. [Title 18, United States Code, Section 3591(a)(2)(A)].

c. intentionally inflicted serious bodily injury that resulted in the death of the victim, Latroy Howard. [Title 18, United States Code, Section 3591(a)(2)(B)].

d. intentionally participated in an act, contemplating that the life of a person would be

60

taken and intending that lethal force would be used in connection with a person, other than one of the participants in the offense, and the victim, Latroy Howard, died as a direct result of the acts. [Title 18, United States Code, Section 3591(a)(2)( c)].

e. intentionally and specifically engaged in an act of violence, knowing that the act created a grave risk of death to a person, other than one of the participants in the offense, such that participation in the act constituted a reckless disregard for human life and the victim, Latroy Howard, died as a direct result of the act. [Title 18, United States Code, Section 3591(a)(2)(D)]; and

f. committed the offense after substantial planning and premeditation to cause the death of Latroy Howard. [Title 18, United States Code, Section 3592(c)(9)].

983

## FORFEITURE ALLEGATIONS

1.     The allegations of Counts One and Two of the Fourth Superseding Indictment are re-alleged and by this reference fully incorporated herein for the purpose of alleging forfeitures to the United States of America pursuant to the provisions of Title 18 United States Code, Section 1963 and Title 21 United States Code, Section 853.

2.     Upon conviction of the offense alleged in Count One of the Fourth Superseding Indictment, **JUAN BRISENO a/k/a "Tito," JASON MEDINA a/k/a "Burns," EDWARD RAYE SERNA a/k/a "Sern," ARMANDO JOSE VELASQUEZ a/k/a "Money," SALVADOR CHAVEZ a/k/a "Black" "Dirty Sal," ACE CORTEZ, JULIAN GUILLERMO SERNA a/k/a "Big Ju," RICHARD REYES and VINCENT GARZA,** defendants herein, shall forfeit to the United States of America pursuant to Title 18, United States Code, Section 1963(a), any property involved in the offense, or any property constituting, or derived from, any proceeds which the defendants obtained directly and indirectly from said offense, including but not limited to the property described below.

3.     Upon conviction of the offense alleged in Count Two of the Fourth Superseding Indictment, **JUAN BRISENO a/k/a "Tito," JASON MEDINA a/k/a "Burns," EDWARD RAYE SERNA a/k/a "Sern," ARMANDO JOSE VELASQUEZ a/k/a "Money," SALVADOR CHAVEZ a/k/a "Black" "Dirty Sal," ACE CORTEZ, JULIAN GUILLERMO SERNA a/k/a "Big Ju," RICHARD REYES and VINCENT GARZA,** defendants herein shall forfeit pursuant to Title 21 United States Code, Section 853, any and all property used and intended to be used, in any manner or part to commit or to facilitate the commission of such offenses, and any and all property constituting or derived from proceeds the

984

defendant obtained directly or indirectly as a result of said violations, including but not limited to:

A.    One .357 caliber revolver, bearing serial number F473562;

B.    One Smith & Wesson, .40 caliber firearm, bearing serial number PBM1446;

C.    One twelve gauge shotgun, bearing serial number MV22931A;

D.    One Beretta, nine millimeter firearm, bearing serial number BER459489;

E.    One Taurus, .40 caliber firearm, bearing serial number SWA29048;

F.    One Smith & Wesson, nine millimeter firearm, bearing serial number PBP2108;

G.    One Smith & Wesson, nine millimeter firearm, bearing serial number DTV3382;

H.    One Bersa, .380 caliber firearm, bearing serial number 984019;

I.    One Smith & Wesson, .38 caliber revolver, bearing serial number DCK9041;

J.    One Smith & Wesson, .40 caliber firearm, bearing serial number DSR0745;

K.    One Taurus, nine millimeter firearm, bearing serial number TYD81741;

L.    One Ruger, nine millimeter firearm, bearing serial number 303-88840;

M.    One Ruger, nine millimeter firearm, bearing serial number 309-68769;

N.    One Glock firearm, bearing serial number EVL668;

O.    One Taurus, .45 caliber firearm, bearing serial number NXE-74727;

P.    One Ruger, .45 caliber firearm, bearing serial number 664-01072;

Q.    One Mossberg shotgun, bearing serial number P726952;

985

R.      One Glock firearm, bearing serial number EXY030;

S.      One .40 caliber firearm, bearing serial number SP0017702;

T.      One Ruger nine millimeter firearm, bearing a defaced serial number;

U.      One Smith & Wesson, nine millimeter firearm, bearing serial number TCE287;

V.      One Smith & Wesson revolver, bearing serial number 38608;

W.      Ammunition, including but not limited to .40 caliber ammunition, .45 caliber ammunition, nine millimeter ammunition, 7.62 ammunition, .380 caliber ammunition, .22 caliber ammunition, .32 caliber ammunition, .38 Special ammunition, and 10 millimeter ammunition; and

X.      Firearm magazines, holsters, cases, shotgun stocks, and one bullet proof vest.

A TRUE BILL:

/s/ Foreperson
FOREPERSON

DAVID CAPP
UNITED STATES ATTORNEY

MYTHILI RAMAN
ACTING ASSISTANT ATTORNEY GENERAL

By:   /s/ David J. Nozick
      David J. Nozick
      Assistant United States Attorney

By:   /s/ Bruce R. Hegyi
      Bruce R. Hegyi
      Trial Attorney
      United States Department of Justice
      Capital Case Section

64

```
MIME-Version:1.0
From:CMECFinnd@innd.uscourts.gov
To:CMECFinnd@localhost.localdomain
Bcc:
--Case Participants: Magistrate Judge Andrew P Rodovich
(rodovich_chambers@innd.uscourts.gov), Chief Judge Philip P Simon
(denise_woodside@innd.uscourts.gov, jacob_hamann@innd.uscourts.gov,
katherine_welsh@innd.uscourts.gov, mira_serrill-robins@innd.uscourts.gov,
noel_collins@innd.uscourts.gov, philip_simon@innd.uscourts.gov)
--Non Case Participants:
--No Notice Sent:

Message-Id:2355867@innd.uscourts.gov
Subject:Activity in Case 2:11-cr-00077-PPS-APR United States of America v. Briseno et al
Case Unsealed
Content-Type: text/html
```

### U.S. District Court Northern District of Indiana [LIVE]

### USDC Northern Indiana

## Notice of Electronic Filing

The following transaction was entered on 9/19/2013 at 3:53 PM EST and filed on 9/19/2013

| | |
|---|---|
| **Case Name:** | United States of America v. Briseno et al |
| **Case Number:** | 2:11–cr–00077–PPS–APR *SEALED* |
| **Filer:** | |
| **Document Number:** | No document attached |

**Docket Text:**
 **Case unsealed (mc)**

**2:11–cr–00077–PPS–APR *SEALED*–1** No electronic public notice will be sent because the case/entry is sealed.

**2:11–cr–00077–PPS–APR–2** No electronic public notice will be sent because the case/entry is sealed.

**2:11–cr–00077–PPS–APR–3** No electronic public notice will be sent because the case/entry is sealed.

**2:11–cr–00077–PPS–APR–4** No electronic public notice will be sent because the case/entry is sealed.

**2:11–cr–00077–PPS–APR–5** No electronic public notice will be sent because the case/entry is sealed.

**2:11–cr–00077–PPS–APR–6** No electronic public notice will be sent because the case/entry is sealed.

**2:11–cr–00077–PPS–APR–7** No electronic public notice will be sent because the case/entry is sealed.

**2:11–cr–00077–PPS–APR–8** No electronic public notice will be sent because the case/entry is sealed.

**2:11–cr–00077–PPS–APR–9** No electronic public notice will be sent because the case/entry is sealed.

**2:11–cr–00077–PPS–APR *SEALED*–10** No electronic public notice will be sent because the

**case/entry is sealed.**

**2:11–cr–00077–PPS–APR \*SEALED\*–11** No electronic public notice will be sent because the case/entry is sealed.

**2:11–cr–00077–PPS–APR–12** No electronic public notice will be sent because the case/entry is sealed.

**2:11–cr–00077–PPS–APR–13** No electronic public notice will be sent because the case/entry is sealed.

**2:11–cr–00077–PPS–APR \*SEALED\*–14** No electronic public notice will be sent because the case/entry is sealed.

**2:11–cr–00077–PPS–APR–15** No electronic public notice will be sent because the case/entry is sealed.

**2:11–cr–00077–PPS–APR \*SEALED\*–16** No electronic public notice will be sent because the case/entry is sealed.

**2:11–cr–00077–PPS–APR–17** No electronic public notice will be sent because the case/entry is sealed.

**2:11–cr–00077–PPS–APR \*SEALED\*–18** No electronic public notice will be sent because the case/entry is sealed.

**2:11–cr–00077–PPS–APR \*SEALED\*–19** No electronic public notice will be sent because the case/entry is sealed.

**2:11–cr–00077–PPS–APR–20** No electronic public notice will be sent because the case/entry is sealed.

**2:11–cr–00077–PPS–APR–21** No electronic public notice will be sent because the case/entry is sealed.

**2:11–cr–00077–PPS–APR–22** No electronic public notice will be sent because the case/entry is sealed.

**2:11–cr–00077–PPS–APR \*SEALED\*–23** No electronic public notice will be sent because the case/entry is sealed.

**2:11–cr–00077–PPS–APR \*SEALED\*–24** No electronic public notice will be sent because the case/entry is sealed.

```
MIME-Version:1.0
From:CMECFinnd@innd.uscourts.gov
To:CMECFinnd@localhost.localdomain
Bcc:
--Case Participants: Bryan M Truitt (bryan@tblawyers.com, sherrie@tblawyers.com), David J
Nozick - AUSA (david.nozick@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov,
susan.devries@usdoj.gov, usainn.ecfcivil@usdoj.gov), Kurt R Earnst (kre@braje-nelson.com),
Paul Jeffrey Schlesinger (pjeffslaw@aol.com), Pablo DeCastro
(pdecastro@rascia-decastro.com, ysierra@rascia-decastro.com), Sheldon B Nagelberg
(sbnagelberglaw@att.net), Thomas W Vanes (tom.vanes@sbcglobal.net), John T Theis
(theislaw@aol.com), Catherine A Lake (attyclake@sbcglobal.net), Adam Tavitas
(adtavitas@aol.com, b.lynneadams@yahoo.com), Dean R Lanter - AUSA (dean.lanter@usdoj.gov,
janet.eisenmann@usdoj.gov, usainn.ecfcivil@usdoj.gov), John E Martin - FCD
(john_martin@fd.org), Scott L King (dwilliams@scottkinggroup.com,
jwilliams@scottkinggroup.com, sking@scottkinggroup.com), Mark A Psimos
(psimoslaw@airbaud.net), James N Thiros (jim@thiros.com, lynn@thiros.com), Robert L Rascia
(rrascia@rascia-decastro.com, ysierra@rascia-decastro.com), Gojko Kasich
(gkasich@crownlaw.com, gkasich@gmail.com), Arlington J Foley (arlingtonfoley@att.net),
Roxanne Mendez Johnson (attorneyrmj@gmail.com), Visvaldis P Kupsis (vpkupsis@hotmail.com),
Stephen Edward Scheele (pkd@gk4law.com, ses@gk4law.com), Jack Friedlander
(jack@jackfriedlander.com, office@jackfriedlander.com), Bruce R Hegyi - AUSA
(bruce.hegyi@usdoj.gov), Clark W Holesinger (arcclark@frontier.com,
clark.334@frontier.com), R Brian Woodward (carolb@wbbklaw.com, rbwoodward@wbbklaw.com),
John Maksimovich (criminallaw@johnmaksimovich.com), David E Vandercoy
(david.vandercoy@valpo.edu), Magistrate Judge Andrew P Rodovich
(rodovich_chambers@innd.uscourts.gov), Chief Judge Philip P Simon
(denise_woodside@innd.uscourts.gov, jacob_hamann@innd.uscourts.gov,
katherine_welsh@innd.uscourts.gov, mira_serrill-robins@innd.uscourts.gov,
noel_collins@innd.uscourts.gov, philip_simon@innd.uscourts.gov)
--Non Case Participants: Matthew D Soliday (office@matthewsolidaylaw.com),
Probation/Pretrial Services (innpml_cmecf@innd.uscourts.gov), U S Marshal
(inn.docket-fw@usdoj.gov, inn.docket-sb@usdoj.gov, usms.27@usdoj.gov)
--No Notice Sent:

Message-Id:2355970@innd.uscourts.gov
Subject:Activity in Case 2:11-cr-00077-PPS-APR United States of America v. Briseno et al
Order Cancelling Deadline
Content-Type: text/html
```

## U.S. District Court Northern District of Indiana [LIVE]

## USDC Northern Indiana

## Notice of Electronic Filing

The following transaction was entered on 9/19/2013 at 4:45 PM EST and filed on 9/19/2013

| | |
|---|---|
| **Case Name:** | United States of America v. Briseno et al |
| **Case Number:** | 2:11-cr-00077-PPS-APR |
| **Filer:** | |
| **Document Number:** | 663(No document attached) |

**Docket Text:**

**ORDER CANCELLING DEADLINE as to Juan Briseno, Galo Benjamin Feliciano, Guillermo Briseno, Alejandro Balboa Lara, Justin Weaver, Michael Anthony Castillo, Kelvin Jefferson Beltran, David Almaraz, Joseph Rene Torres, Jason Medina, Edward Raye Serna, Alejandro Briseno, Robert Lockhart, Armando Jose Velasquez, Anthony Baldazo, Salvador Chavez, Raymond Campos, Ace Cortez, Julian Guillermo Serna, Julius Solis, Darmaile Cortez Sutton,**

989

**Eddie Torres, Richard Reyes, Vincent Garza. Final Pretrial Conference set for 9/20/2013 01:00 PM in US District Court – Hammond before Magistrate Judge Andrew P Rodovich VACATED. Entry created to notify parties. Approved by Magistrate Judge Andrew P Rodovich on 9/19/13. (lh)**

**2:11−cr−00077−PPS−APR−1 Notice has been electronically mailed to:**

David E Vandercoy david.vandercoy@valpo.edu

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com, gkasich@gmail.com

Scott L King sking@scottkinggroup.com, dwilliams@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje−nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia−decastro.com, ysierra@rascia−decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia−decastro.com, ysierra@rascia−decastro.com

Dean R Lanter − AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick − AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Bruce R Hegyi − AUSA bruce.hegyi@usdoj.gov

**2:11−cr−00077−PPS−APR−1 Notice has been delivered by U.S. Mail or other means to:**

**2:11−cr−00077−PPS−APR−2 Notice has been electronically mailed to:**

David E Vandercoy david.vandercoy@valpo.edu

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com, gkasich@gmail.com

Scott L King sking@scottkinggroup.com, dwilliams@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin − FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje−nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia−decastro.com, ysierra@rascia−decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia−decastro.com, ysierra@rascia−decastro.com

Dean R Lanter − AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick − AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Bruce R Hegyi − AUSA bruce.hegyi@usdoj.gov

**2:11−cr−00077−PPS−APR−2 Notice has been delivered by U.S. Mail or other means to:**

**2:11−cr−00077−PPS−APR−3 Notice has been electronically mailed to:**

David E Vandercoy david.vandercoy@valpo.edu

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com, gkasich@gmail.com

Scott L King sking@scottkinggroup.com, dwilliams@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin − FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje−nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia−decastro.com, ysierra@rascia−decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia−decastro.com, ysierra@rascia−decastro.com

Dean R Lanter − AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick − AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Bruce R Hegyi − AUSA bruce.hegyi@usdoj.gov

**2:11−cr−00077−PPS−APR−3 Notice has been delivered by U.S. Mail or other means to:**

**2:11−cr−00077−PPS−APR−4 Notice has been electronically mailed to:**

David E Vandercoy david.vandercoy@valpo.edu

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com, gkasich@gmail.com

Scott L King sking@scottkinggroup.com, dwilliams@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje–nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia–decastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Bruce R Hegyi – AUSA bruce.hegyi@usdoj.gov

**2:11–cr–00077–PPS–APR–4 Notice has been delivered by U.S. Mail or other means to:**

**2:11–cr–00077–PPS–APR–5 Notice has been electronically mailed to:**

David E Vandercoy david.vandercoy@valpo.edu

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com, gkasich@gmail.com

Scott L King sking@scottkinggroup.com, dwilliams@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje–nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia–decastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Bruce R Hegyi – AUSA bruce.hegyi@usdoj.gov

**2:11–cr–00077–PPS–APR–5 Notice has been delivered by U.S. Mail or other means to:**

**2:11–cr–00077–PPS–APR–6 Notice has been electronically mailed to:**

David E Vandercoy david.vandercoy@valpo.edu

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com, gkasich@gmail.com

Scott L King sking@scottkinggroup.com, dwilliams@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje–nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia–decastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov,
janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Bruce R Hegyi – AUSA bruce.hegyi@usdoj.gov

**2:11–cr–00077–PPS–APR–6 Notice has been delivered by U.S. Mail or other means to:**

**2:11–cr–00077–PPS–APR–7 Notice has been electronically mailed to:**

David E Vandercoy david.vandercoy@valpo.edu

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com, gkasich@gmail.com

Scott L King sking@scottkinggroup.com, dwilliams@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje–nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia–decastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Bruce R Hegyi – AUSA bruce.hegyi@usdoj.gov

**2:11−cr−00077−PPS−APR−7 Notice has been delivered by U.S. Mail or other means to:**

**2:11−cr−00077−PPS−APR−8 Notice has been electronically mailed to:**

David E Vandercoy david.vandercoy@valpo.edu

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com, gkasich@gmail.com

Scott L King sking@scottkinggroup.com, dwilliams@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin − FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje−nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia−decastro.com, ysierra@rascia−decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia−decastro.com, ysierra@rascia−decastro.com

Dean R Lanter − AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Bruce R Hegyi – AUSA bruce.hegyi@usdoj.gov

**2:11–cr–00077–PPS–APR–8 Notice has been delivered by U.S. Mail or other means to:**

**2:11–cr–00077–PPS–APR–9 Notice has been electronically mailed to:**

David E Vandercoy david.vandercoy@valpo.edu

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com, gkasich@gmail.com

Scott L King sking@scottkinggroup.com, dwilliams@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje–nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia–decastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Bruce R Hegyi – AUSA bruce.hegyi@usdoj.gov

**2:11–cr–00077–PPS–APR–9 Notice has been delivered by U.S. Mail or other means to:**

**2:11–cr–00077–PPS–APR–10 Notice has been electronically mailed to:**

David E Vandercoy david.vandercoy@valpo.edu

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com, gkasich@gmail.com

Scott L King sking@scottkinggroup.com, dwilliams@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje−nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia−decastro.com, ysierra@rascia−decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia−decastro.com, ysierra@rascia−decastro.com

Dean R Lanter − AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick − AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Bruce R Hegyi − AUSA bruce.hegyi@usdoj.gov

**2:11−cr−00077−PPS−APR−10 Notice has been delivered by U.S. Mail or other means to:**

**2:11−cr−00077−PPS−APR−11 Notice has been electronically mailed to:**

David E Vandercoy david.vandercoy@valpo.edu

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com, gkasich@gmail.com

Scott L King sking@scottkinggroup.com, dwilliams@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje−nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia−decastro.com, ysierra@rascia−decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia−decastro.com, ysierra@rascia−decastro.com

Dean R Lanter – AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Bruce R Hegyi – AUSA bruce.hegyi@usdoj.gov

**2:11−cr−00077−PPS−APR−11 Notice has been delivered by U.S. Mail or other means to:**

**2:11−cr−00077−PPS−APR−12 Notice has been electronically mailed to:**

David E Vandercoy david.vandercoy@valpo.edu

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com, gkasich@gmail.com

Scott L King sking@scottkinggroup.com, dwilliams@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje–nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia–decastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Bruce R Hegyi – AUSA bruce.hegyi@usdoj.gov

**2:11–cr–00077–PPS–APR–12 Notice has been delivered by U.S. Mail or other means to:**

**2:11–cr–00077–PPS–APR–13 Notice has been electronically mailed to:**

David E Vandercoy david.vandercoy@valpo.edu

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com, gkasich@gmail.com

Scott L King sking@scottkinggroup.com, dwilliams@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

1003

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje–nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia–decastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Bruce R Hegyi – AUSA bruce.hegyi@usdoj.gov

**2:11–cr–00077–PPS–APR–13 Notice has been delivered by U.S. Mail or other means to:**

**2:11–cr–00077–PPS–APR–14 Notice has been electronically mailed to:**

David E Vandercoy david.vandercoy@valpo.edu

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com, gkasich@gmail.com

Scott L King sking@scottkinggroup.com, dwilliams@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje–nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia–decastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Bruce R Hegyi – AUSA bruce.hegyi@usdoj.gov

**2:11–cr–00077–PPS–APR–14 Notice has been delivered by U.S. Mail or other means to:**

1005

**2:11–cr–00077–PPS–APR–15 Notice has been electronically mailed to:**

David E Vandercoy david.vandercoy@valpo.edu

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com, gkasich@gmail.com

Scott L King sking@scottkinggroup.com, dwilliams@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje–nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia–decastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Bruce R Hegyi – AUSA bruce.hegyi@usdoj.gov

**2:11–cr–00077–PPS–APR–15 Notice has been delivered by U.S. Mail or other means to:**

**2:11–cr–00077–PPS–APR–16 Notice has been electronically mailed to:**

David E Vandercoy david.vandercoy@valpo.edu

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com, gkasich@gmail.com

Scott L King sking@scottkinggroup.com, dwilliams@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje–nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia–decastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Bruce R Hegyi – AUSA bruce.hegyi@usdoj.gov

**2:11–cr–00077–PPS–APR–16 Notice has been delivered by U.S. Mail or other means to:**

**2:11–cr–00077–PPS–APR–17 Notice has been electronically mailed to:**

David E Vandercoy david.vandercoy@valpo.edu

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com, gkasich@gmail.com

Scott L King sking@scottkinggroup.com, dwilliams@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje–nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia–decastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Bruce R Hegyi – AUSA bruce.hegyi@usdoj.gov

**2:11–cr–00077–PPS–APR–17 Notice has been delivered by U.S. Mail or other means to:**

**2:11–cr–00077–PPS–APR–18 Notice has been electronically mailed to:**

David E Vandercoy david.vandercoy@valpo.edu

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com, gkasich@gmail.com

Scott L King sking@scottkinggroup.com, dwilliams@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje−nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia−decastro.com, ysierra@rascia−decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia−decastro.com, ysierra@rascia−decastro.com

Dean R Lanter − AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick − AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Bruce R Hegyi − AUSA bruce.hegyi@usdoj.gov

**2:11−cr−00077−PPS−APR−18 Notice has been delivered by U.S. Mail or other means to:**

**2:11−cr−00077−PPS−APR−19 Notice has been electronically mailed to:**

David E Vandercoy david.vandercoy@valpo.edu

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com, gkasich@gmail.com

Scott L King sking@scottkinggroup.com, dwilliams@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje–nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia–decastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Bruce R Hegyi – AUSA bruce.hegyi@usdoj.gov

**2:11–cr–00077–PPS–APR–19 Notice has been delivered by U.S. Mail or other means to:**

**2:11–cr–00077–PPS–APR–20 Notice has been electronically mailed to:**

David E Vandercoy david.vandercoy@valpo.edu

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com, gkasich@gmail.com

Scott L King sking@scottkinggroup.com, dwilliams@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje–nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia–decastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov,
janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Bruce R Hegyi – AUSA bruce.hegyi@usdoj.gov

**2:11–cr–00077–PPS–APR–20 Notice has been delivered by U.S. Mail or other means to:**

**2:11–cr–00077–PPS–APR–21 Notice has been electronically mailed to:**

David E Vandercoy david.vandercoy@valpo.edu

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com, gkasich@gmail.com

Scott L King sking@scottkinggroup.com, dwilliams@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin − FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje−nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia−decastro.com, ysierra@rascia−decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia−decastro.com, ysierra@rascia−decastro.com

Dean R Lanter − AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick − AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Bruce R Hegyi − AUSA bruce.hegyi@usdoj.gov

**2:11−cr−00077−PPS−APR−21 Notice has been delivered by U.S. Mail or other means to:**

**2:11−cr−00077−PPS−APR−22 Notice has been electronically mailed to:**

David E Vandercoy david.vandercoy@valpo.edu

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com, gkasich@gmail.com

Scott L King sking@scottkinggroup.com, dwilliams@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje–nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia–decastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Bruce R Hegyi – AUSA bruce.hegyi@usdoj.gov

**2:11−cr−00077−PPS−APR−22 Notice has been delivered by U.S. Mail or other means to:**

**2:11−cr−00077−PPS−APR−23 Notice has been electronically mailed to:**

David E Vandercoy david.vandercoy@valpo.edu

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com, gkasich@gmail.com

Scott L King sking@scottkinggroup.com, dwilliams@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje−nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia−decastro.com, ysierra@rascia−decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia−decastro.com, ysierra@rascia−decastro.com

Dean R Lanter – AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Bruce R Hegyi – AUSA bruce.hegyi@usdoj.gov

**2:11−cr−00077−PPS−APR−23 Notice has been delivered by U.S. Mail or other means to:**

**2:11−cr−00077−PPS−APR−24 Notice has been electronically mailed to:**

David E Vandercoy david.vandercoy@valpo.edu

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com, gkasich@gmail.com

Scott L King sking@scottkinggroup.com, dwilliams@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje−nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia–decastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Bruce R Hegyi – AUSA bruce.hegyi@usdoj.gov

**2:11–cr–00077–PPS–APR–24 Notice has been delivered by U.S. Mail or other means to:**

```
MIME-Version:1.0
From:CMECFinnd@innd.uscourts.gov
To:CMECFinnd@localhost.localdomain
Bcc:
--Case Participants: Bryan M Truitt (bryan@tblawyers.com, sherrie@tblawyers.com), David J
Nozick - AUSA (david.nozick@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov,
susan.devries@usdoj.gov, usainn.ecfcivil@usdoj.gov), Kurt R Earnst (kre@braje-nelson.com),
Paul Jeffrey Schlesinger (pjeffslaw@aol.com), Pablo DeCastro
(pdecastro@rascia-decastro.com, ysierra@rascia-decastro.com), Sheldon B Nagelberg
(sbnagelberglaw@att.net), Thomas W Vanes (tom.vanes@sbcglobal.net), John T Theis
(theislaw@aol.com), Catherine A Lake (attyclake@sbcglobal.net), Adam Tavitas
(adtavitas@aol.com, b.lynneadams@yahoo.com), Dean R Lanter - AUSA (dean.lanter@usdoj.gov,
janet.eisenmann@usdoj.gov, usainn.ecfcivil@usdoj.gov), John E Martin - FCD
(john_martin@fd.org), Scott L King (dwilliams@scottkinggroup.com,
jwilliams@scottkinggroup.com, sking@scottkinggroup.com), Mark A Psimos
(psimoslaw@airbaud.net), James N Thiros (jim@thiros.com, lynn@thiros.com), Robert L Rascia
(rrascia@rascia-decastro.com, ysierra@rascia-decastro.com), Gojko Kasich
(gkasich@crownlaw.com, gkasich@gmail.com), Arlington J Foley (arlingtonfoley@att.net),
Roxanne Mendez Johnson (attorneyrmj@gmail.com), Visvaldis P Kupsis (vpkupsis@hotmail.com),
Stephen Edward Scheele (pkd@gk4law.com, ses@gk4law.com), Jack Friedlander
(jack@jackfriedlander.com, office@jackfriedlander.com), Bruce R Hegyi - AUSA
(bruce.hegyi@usdoj.gov), Clark W Holesinger (arcclark@frontier.com,
clark.334@frontier.com), R Brian Woodward (carolb@wbbklaw.com, rbwoodward@wbbklaw.com),
John Maksimovich (criminallaw@johnmaksimovich.com), David E Vandercoy
(david.vandercoy@valpo.edu), Magistrate Judge Andrew P Rodovich
(rodovich_chambers@innd.uscourts.gov), Chief Judge Philip P Simon
(denise_woodside@innd.uscourts.gov, jacob_hamann@innd.uscourts.gov,
katherine_welsh@innd.uscourts.gov, mira_serrill-robins@innd.uscourts.gov,
noel_collins@innd.uscourts.gov, philip_simon@innd.uscourts.gov)
--Non Case Participants: Matthew D Soliday (office@matthewsolidaylaw.com),
Probation/Pretrial Services (innpml_cmecf@innd.uscourts.gov), U S Marshal
(inn.docket-fw@usdoj.gov, inn.docket-sb@usdoj.gov, usms.27@usdoj.gov)
--No Notice Sent:

Message-Id:2356309@innd.uscourts.gov
Subject:Activity in Case 2:11-cr-00077-PPS-APR United States of America v. Briseno et al
Terminate Deadlines and Hearings
```
Content–Type: text/html

## U.S. District Court Northern District of Indiana [LIVE]

### USDC Northern Indiana

## Notice of Electronic Filing

The following transaction was entered on 9/20/2013 at 11:05 AM EST and filed on 9/19/2013

| | |
|---|---|
| **Case Name:** | United States of America v. Briseno et al |
| **Case Number:** | 2:11–cr–00077–PPS–APR |
| **Filer:** | |
| **Document Number:** | No document attached |

**Docket Text:**

**Terminate Hearing as to Juan Briseno, Galo Benjamin Feliciano, Guillermo Briseno, Alejandro Balboa Lara, Justin Weaver, Michael Anthony Castillo, Kelvin Jefferson Beltran, David Almaraz, Joseph Rene Torres, Jason Medina, Edward Raye Serna, Alejandro Briseno, Robert Lockhart, Armando Jose Velasquez, Anthony Baldazo, Salvador Chavez, Raymond Campos, Ace Cortez, Julian Guillermo Serna, Julius Solis, Darmaile Cortez Sutton, Eddie**

1018

**Torres, Richard Reyes, Vincent Garza: Final Pretrial Conference set 9/20/2013 VACATED per [663] Order (jld)**

**2:11−cr−00077−PPS−APR−1 Notice has been electronically mailed to:**

David E Vandercoy david.vandercoy@valpo.edu

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com, gkasich@gmail.com

Scott L King sking@scottkinggroup.com, dwilliams@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin − FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje−nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia−decastro.com, ysierra@rascia−decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia−decastro.com, ysierra@rascia−decastro.com

Dean R Lanter – AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov,
janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Bruce R Hegyi – AUSA bruce.hegyi@usdoj.gov

**2:11−cr−00077−PPS−APR−1 Notice has been delivered by U.S. Mail or other means to:**

**2:11−cr−00077−PPS−APR−2 Notice has been electronically mailed to:**

David E Vandercoy david.vandercoy@valpo.edu

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com, gkasich@gmail.com

Scott L King sking@scottkinggroup.com, dwilliams@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje−nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia−decastro.com, ysierra@rascia−decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia−decastro.com, ysierra@rascia−decastro.com

Dean R Lanter − AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick − AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Bruce R Hegyi − AUSA bruce.hegyi@usdoj.gov

**2:11−cr−00077−PPS−APR−2 Notice has been delivered by U.S. Mail or other means to:**

**2:11−cr−00077−PPS−APR−3 Notice has been electronically mailed to:**

David E Vandercoy david.vandercoy@valpo.edu

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com, gkasich@gmail.com

Scott L King sking@scottkinggroup.com, dwilliams@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin − FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje–nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia–decastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov,
janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Bruce R Hegyi – AUSA bruce.hegyi@usdoj.gov

**2:11–cr–00077–PPS–APR–3 Notice has been delivered by U.S. Mail or other means to:**

**2:11–cr–00077–PPS–APR–4 Notice has been electronically mailed to:**

David E Vandercoy david.vandercoy@valpo.edu

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com, gkasich@gmail.com

Scott L King sking@scottkinggroup.com, dwilliams@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje–nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia–decastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Bruce R Hegyi – AUSA bruce.hegyi@usdoj.gov

**2:11–cr–00077–PPS–APR–4 Notice has been delivered by U.S. Mail or other means to:**

**2:11–cr–00077–PPS–APR–5 Notice has been electronically mailed to:**

David E Vandercoy david.vandercoy@valpo.edu

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com, gkasich@gmail.com

Scott L King sking@scottkinggroup.com, dwilliams@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje–nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia–decastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Bruce R Hegyi – AUSA bruce.hegyi@usdoj.gov

**2:11–cr–00077–PPS–APR–5 Notice has been delivered by U.S. Mail or other means to:**

**2:11–cr–00077–PPS–APR–6 Notice has been electronically mailed to:**

David E Vandercoy david.vandercoy@valpo.edu

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com, gkasich@gmail.com

Scott L King sking@scottkinggroup.com, dwilliams@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje–nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia–decastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Bruce R Hegyi – AUSA bruce.hegyi@usdoj.gov

**2:11–cr–00077–PPS–APR–6 Notice has been delivered by U.S. Mail or other means to:**

**2:11–cr–00077–PPS–APR–7 Notice has been electronically mailed to:**

David E Vandercoy david.vandercoy@valpo.edu

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com, gkasich@gmail.com

Scott L King sking@scottkinggroup.com, dwilliams@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje–nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia–decastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Bruce R Hegyi – AUSA bruce.hegyi@usdoj.gov

**2:11–cr–00077–PPS–APR–7 Notice has been delivered by U.S. Mail or other means to:**

**2:11−cr−00077−PPS−APR−8 Notice has been electronically mailed to:**

David E Vandercoy david.vandercoy@valpo.edu

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com, gkasich@gmail.com

Scott L King sking@scottkinggroup.com, dwilliams@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin − FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje−nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia−decastro.com, ysierra@rascia−decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia−decastro.com, ysierra@rascia−decastro.com

Dean R Lanter − AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick − AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov,

1027

janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Bruce R Hegyi – AUSA bruce.hegyi@usdoj.gov

**2:11–cr–00077–PPS–APR–8 Notice has been delivered by U.S. Mail or other means to:**

**2:11–cr–00077–PPS–APR–9 Notice has been electronically mailed to:**

David E Vandercoy david.vandercoy@valpo.edu

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com, gkasich@gmail.com

Scott L King sking@scottkinggroup.com, dwilliams@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje–nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia−decastro.com, ysierra@rascia−decastro.com

Dean R Lanter − AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick − AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Bruce R Hegyi − AUSA bruce.hegyi@usdoj.gov

**2:11−cr−00077−PPS−APR−9 Notice has been delivered by U.S. Mail or other means to:**

**2:11−cr−00077−PPS−APR−10 Notice has been electronically mailed to:**

David E Vandercoy david.vandercoy@valpo.edu

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com, gkasich@gmail.com

Scott L King sking@scottkinggroup.com, dwilliams@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin − FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje−nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia–decastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Bruce R Hegyi – AUSA bruce.hegyi@usdoj.gov

**2:11–cr–00077–PPS–APR–10 Notice has been delivered by U.S. Mail or other means to:**

**2:11–cr–00077–PPS–APR–11 Notice has been electronically mailed to:**

David E Vandercoy david.vandercoy@valpo.edu

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com, gkasich@gmail.com

Scott L King sking@scottkinggroup.com, dwilliams@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje−nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia−decastro.com, ysierra@rascia−decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia−decastro.com, ysierra@rascia−decastro.com

Dean R Lanter − AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick − AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Bruce R Hegyi − AUSA bruce.hegyi@usdoj.gov

**2:11−cr−00077−PPS−APR−11 Notice has been delivered by U.S. Mail or other means to:**

**2:11−cr−00077−PPS−APR−12 Notice has been electronically mailed to:**

David E Vandercoy david.vandercoy@valpo.edu

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com, gkasich@gmail.com

Scott L King sking@scottkinggroup.com, dwilliams@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje–nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia–decastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov,
janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Bruce R Hegyi – AUSA bruce.hegyi@usdoj.gov

**2:11–cr–00077–PPS–APR–12 Notice has been delivered by U.S. Mail or other means to:**

**2:11–cr–00077–PPS–APR–13 Notice has been electronically mailed to:**

David E Vandercoy david.vandercoy@valpo.edu

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com, gkasich@gmail.com

Scott L King sking@scottkinggroup.com, dwilliams@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje–nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia–decastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Bruce R Hegyi – AUSA bruce.hegyi@usdoj.gov

**2:11–cr–00077–PPS–APR–13 Notice has been delivered by U.S. Mail or other means to:**

**2:11–cr–00077–PPS–APR–14 Notice has been electronically mailed to:**

David E Vandercoy david.vandercoy@valpo.edu

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com, gkasich@gmail.com

Scott L King sking@scottkinggroup.com, dwilliams@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje–nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia–decastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Bruce R Hegyi – AUSA bruce.hegyi@usdoj.gov

**2:11–cr–00077–PPS–APR–14 Notice has been delivered by U.S. Mail or other means to:**

**2:11–cr–00077–PPS–APR–15 Notice has been electronically mailed to:**

1034

David E Vandercoy david.vandercoy@valpo.edu

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com, gkasich@gmail.com

Scott L King sking@scottkinggroup.com, dwilliams@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje–nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia–decastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

1035

Bruce R Hegyi – AUSA bruce.hegyi@usdoj.gov

**2:11–cr–00077–PPS–APR–15 Notice has been delivered by U.S. Mail or other means to:**

**2:11–cr–00077–PPS–APR–16 Notice has been electronically mailed to:**

David E Vandercoy david.vandercoy@valpo.edu

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com, gkasich@gmail.com

Scott L King sking@scottkinggroup.com, dwilliams@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje–nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia–decastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Bruce R Hegyi – AUSA bruce.hegyi@usdoj.gov

**2:11–cr–00077–PPS–APR–16 Notice has been delivered by U.S. Mail or other means to:**

**2:11–cr–00077–PPS–APR–17 Notice has been electronically mailed to:**

David E Vandercoy david.vandercoy@valpo.edu

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com, gkasich@gmail.com

Scott L King sking@scottkinggroup.com, dwilliams@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje–nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia–decastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Bruce R Hegyi – AUSA bruce.hegyi@usdoj.gov

**2:11–cr–00077–PPS–APR–17 Notice has been delivered by U.S. Mail or other means to:**

**2:11–cr–00077–PPS–APR–18 Notice has been electronically mailed to:**

David E Vandercoy david.vandercoy@valpo.edu

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com, gkasich@gmail.com

Scott L King sking@scottkinggroup.com, dwilliams@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje–nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia–decastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Bruce R Hegyi – AUSA bruce.hegyi@usdoj.gov

**2:11–cr–00077–PPS–APR–18 Notice has been delivered by U.S. Mail or other means to:**

**2:11–cr–00077–PPS–APR–19 Notice has been electronically mailed to:**

David E Vandercoy david.vandercoy@valpo.edu

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com, gkasich@gmail.com

Scott L King sking@scottkinggroup.com, dwilliams@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje–nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia–decastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Bruce R Hegyi – AUSA bruce.hegyi@usdoj.gov

**2:11–cr–00077–PPS–APR–19 Notice has been delivered by U.S. Mail or other means to:**

**2:11–cr–00077–PPS–APR–20 Notice has been electronically mailed to:**

David E Vandercoy david.vandercoy@valpo.edu

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com, gkasich@gmail.com

Scott L King sking@scottkinggroup.com, dwilliams@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje–nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia–decastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Bruce R Hegyi – AUSA bruce.hegyi@usdoj.gov

**2:11–cr–00077–PPS–APR–20 Notice has been delivered by U.S. Mail or other means to:**

**2:11–cr–00077–PPS–APR–21 Notice has been electronically mailed to:**

David E Vandercoy david.vandercoy@valpo.edu

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com, gkasich@gmail.com

Scott L King sking@scottkinggroup.com, dwilliams@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin − FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje−nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia−decastro.com, ysierra@rascia−decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia−decastro.com, ysierra@rascia−decastro.com

Dean R Lanter − AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick − AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Bruce R Hegyi − AUSA bruce.hegyi@usdoj.gov

**2:11−cr−00077−PPS−APR−21 Notice has been delivered by U.S. Mail or other means to:**

**2:11−cr−00077−PPS−APR−22 Notice has been electronically mailed to:**

David E Vandercoy david.vandercoy@valpo.edu

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com, gkasich@gmail.com

Scott L King sking@scottkinggroup.com, dwilliams@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje–nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia–decastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov,
janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Bruce R Hegyi – AUSA bruce.hegyi@usdoj.gov

**2:11−cr−00077−PPS−APR−22 Notice has been delivered by U.S. Mail or other means to:**

**2:11−cr−00077−PPS−APR−23 Notice has been electronically mailed to:**

David E Vandercoy david.vandercoy@valpo.edu

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com, gkasich@gmail.com

Scott L King sking@scottkinggroup.com, dwilliams@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin − FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje−nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia−decastro.com, ysierra@rascia−decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia−decastro.com, ysierra@rascia−decastro.com

Dean R Lanter − AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Bruce R Hegyi – AUSA bruce.hegyi@usdoj.gov

**2:11–cr–00077–PPS–APR–23 Notice has been delivered by U.S. Mail or other means to:**

**2:11–cr–00077–PPS–APR–24 Notice has been electronically mailed to:**

David E Vandercoy david.vandercoy@valpo.edu

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com, gkasich@gmail.com

Scott L King sking@scottkinggroup.com, dwilliams@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

Clark W Holesinger clark.334@frontier.com, arcclark@frontier.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje–nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia−decastro.com, ysierra@rascia−decastro.com

Dean R Lanter − AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick − AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov,
janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Bruce R Hegyi − AUSA bruce.hegyi@usdoj.gov

**2:11−cr−00077−PPS−APR−24 Notice has been delivered by U.S. Mail or other means to:**

AO 442 (Rev. 01/09) Arrest Warrant

# UNITED STATES DISTRICT COURT

Northern District of Indiana

UNITED STATES MARSHALS
NORTHERN INDIANA

2013 SEP 19  A 9: 37

United States of America

v.

Juan Briseno a/k/a "Tito"

_____
Defendant

)
)
)
)
)
)

Case No.   2:11CR77

## ARREST WARRANT

To:    Any authorized law enforcement officer

**YOU ARE COMMANDED** to arrest and bring before a United States magistrate judge without unnecessary delay

(name of person to be arrested)    Juan Briseno a/k/a "Tito"                                                    ,

who is accused of an offense or violation based on the following document filed with the court:

❏ Indictment    ☑ Superseding Indictment    ❏ Information    ❏ Superseding Information    ❏ Complaint

❏ Probation Violation Petition    ❏ Supervised Release Violation Petition    ❏ Violation Notice    ❏ Order of the Court

This offense is briefly described as follows:

18:1962 CONSPIRACY TO PARTICIPATE IN RACKETEERING ACTIVITY
18:1959 RACKETEERING ACTIVITY /MURDER
18:924(c) VIOLENT CRIME/DRUGS/MACHINE GUN
21:846 CONSPIRACY TO   DISTRIBUTE  NARCOTICS
18:3591 ANC 3592 SPECIAL FINDINGS
18:2 AIDING AND ABETTING

Date:   09/18/2013

                                                          _____
                                                          _Robert N. Trgovich_
                                                          _Issuing officer's signature_

City and state:    Hammond, Indiana                        Robert Trgovich, Clerk (mc)
                                                          _Printed name and title_

---

**Return**

This warrant was received on (date)  9/19/13         , and the person was arrested on (date)  Subject

at (city and state)  already in Custody   .

Date:  9/20/13                                _____
                                              _Arresting officer's signature_

                                              Melanie Thompson - SDLIN
                                              _Printed name and title_

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| VS. | ) | CASE NO: 2:11 CR 77 |
| | ) | |
| JUAN BRISENO | ) | |

## MOTION FOR EXTENSION OF TIME TO FILE MOTIONS TO SUPPRESS

Comes now the Defendant, Juan Briseno, by and through counsel and moves the Court for an extension of time to file motions to suppress and in support says:

1. That the Court imposed a deadline of September 27, 2013 for the Defendant to file motions to suppress.

2. That there exists a voluminous amount of discovery materials pertaining to six alleged murders; four alleged attempted murders; alleged racketeering and other alleged criminal activity of this defendant.

3. That counsel for the government has been advised of the content of this motion and does not object to an additional fifty (50) days for Defendant to file motions to suppress, which would be November 18, 2013.

**WHEREFORE:** The Defendant, Juan Briseno, moves the Court to grant the defendant an additional fifty (50) days to file motions to suppress up to and including the 18th day of November, 2013.


RESPECTFULLY SUBMITTED:


s/Arlington J. Foley                             s/John Maksimovich
Arlington J. Foley, Atty. #6905-45     John Maksimovich, Atty. #9950-45
Attorney for Defendant, Juan Briseno   Attorney for Defendant, Juan Briseno
1942 North Main Street                       1946 North Main Street
Crown Point, IN 46307                        Crown Point, IN 46307
Tel: (219) 661-1200                            Tel: (219) 663-1900

1048

1049

**CERTIFICATE OF SERVICE**

      I certify that on the <u>27th</u> day of <u>September</u>, 2013 service of a true and complete copy of the above and foregoing pleading or paper was made upon each party or attorney of record herein by the electronic case filing system (ECF).

By:    <u>s/Arlington J. Foley</u>
                Arlington J. Foley
                Attorney at Law

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )     NO. 2:11CR77 PPS |
| | ) |
| JUAN BRISENO, | ) |
| | ) |
| Defendant. | ) |

## ORDER

Defendant Juan Briseno's unopposed motion for an extension of time in which to file

motions to suppress [DE 682] is GRANTED.

Any motion to suppress by Juan Briseno must be filed on or before **November 18, 2013.**

The Government's response is due on or before **December 9, 2013**, and Briseno's reply, if any,

is due **December 23, 2013.**

SO ORDERED.

ENTERED: September 30, 2013.

 /s/ Philip P. Simon
PHILIP P. SIMON, CHIEF JUDGE
UNITED STATES DISTRICT COURT

```
MIME-Version:1.0
From:CMECFinnd@innd.uscourts.gov
To:CMECFinnd@localhost.localdomain
Bcc:
--Case Participants: Pablo DeCastro (pdecastro@rascia-decastro.com,
ysierra@rascia-decastro.com), Kurt R Earnst (kre@braje-nelson.com), Arlington J Foley
(arlingtonfoley@att.net), Jack Friedlander (jack@jackfriedlander.com,
office@jackfriedlander.com), Bruce R Hegyi - AUSA (bruce.hegyi@usdoj.gov), Roxanne Mendez
Johnson (attorneyrmj@gmail.com), Gojko Kasich (gkasich@crownlaw.com, gkasich@gmail.com),
Scott L King (dwilliams@scottkinggroup.com, jwilliams@scottkinggroup.com,
sking@scottkinggroup.com), Visvaldis P Kupsis (vpkupsis@hotmail.com), Catherine A Lake
(attyclake@sbcglobal.net), Dean R Lanter - AUSA (dean.lanter@usdoj.gov,
janet.eisenmann@usdoj.gov, usainn.ecfcivil@usdoj.gov), John Maksimovich
(criminallaw@johnmaksimovich.com), John E Martin - FCD (john_martin@fd.org), Sheldon B
Nagelberg (sbnagelberglaw@att.net), David J Nozick - AUSA (david.nozick@usdoj.gov,
janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov,
usainn.ecfcivil@usdoj.gov), Mark A Psimos (psimoslaw@airbaud.net), Robert L Rascia
(rrascia@rascia-decastro.com, ysierra@rascia-decastro.com), Stephen Edward Scheele
(pkd@gk4law.com, ses@gk4law.com), Paul Jeffrey Schlesinger (pjeffslaw@aol.com), Adam
Tavitas (adtavitas@aol.com, b.lynneadams@yahoo.com), John T Theis (theislaw@aol.com),
James N Thiros (jim@thiros.com, lynn@thiros.com), Bryan M Truitt (bryan@tblawyers.com,
sherrie@tblawyers.com), David E Vandercoy (david.vandercoy@valpo.edu), Thomas W Vanes
(tom.vanes@sbcglobal.net), Alex Wohlshansky (ihorlawyer@hotmail.com), R Brian Woodward
(carolb@wbbklaw.com, rbwoodward@wbbklaw.com), Magistrate Judge Andrew P Rodovich
(rodovich_chambers@innd.uscourts.gov), Chief Judge Philip P Simon
(denise_woodside@innd.uscourts.gov, jacob_hamann@innd.uscourts.gov,
katherine_welsh@innd.uscourts.gov, mira_serrill-robins@innd.uscourts.gov,
noel_collins@innd.uscourts.gov, philip_simon@innd.uscourts.gov)
--Non Case Participants: Matthew D Soliday (office@matthewsolidaylaw.com),
Probation/Pretrial Services (innpml_cmecf@innd.uscourts.gov), U S Marshal
(inn.docket-fw@usdoj.gov, inn.docket-sb@usdoj.gov, usms.27@usdoj.gov)
--No Notice Sent:

Message-Id:2370455@innd.uscourts.gov
Subject:Activity in Case 2:11-cr-00077-PPS-APR United States of America v. Briseno et al
Terminate Deadlines and Hearings
Content-Type: text/html
```

### U.S. District Court Northern District of Indiana [LIVE]

### USDC Northern Indiana

## Notice of Electronic Filing

The following transaction was entered on 10/9/2013 at 3:34 PM EST and filed on 10/9/2013

| | |
|---|---|
| **Case Name:** | United States of America v. Briseno et al |
| **Case Number:** | 2:11-cr-00077-PPS-APR |
| **Filer:** | |
| **Document Number:** | No document attached |

**Docket Text:**
**Terminate Deadlines and Hearings (12/13/2013 FPTC) (mc)**

**2:11-cr-00077-PPS-APR-1 Notice has been electronically mailed to:**

David E Vandercoy david.vandercoy@valpo.edu

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com, gkasich@gmail.com

Scott L King sking@scottkinggroup.com, dwilliams@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje–nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia–decastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Bruce R Hegyi – AUSA bruce.hegyi@usdoj.gov

Alex Wohlshansky ihorlawyer@hotmail.com

**2:11−cr−00077−PPS−APR−1 Notice has been delivered by U.S. Mail or other means to:**

**2:11−cr−00077−PPS−APR−2 Notice has been electronically mailed to:**

David E Vandercoy david.vandercoy@valpo.edu

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com, gkasich@gmail.com

Scott L King sking@scottkinggroup.com, dwilliams@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin − FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje−nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia−decastro.com, ysierra@rascia−decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia−decastro.com, ysierra@rascia−decastro.com

Dean R Lanter − AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Bruce R Hegyi – AUSA bruce.hegyi@usdoj.gov

Alex Wohlshansky ihorlawyer@hotmail.com

**2:11–cr–00077–PPS–APR–2 Notice has been delivered by U.S. Mail or other means to:**

**2:11–cr–00077–PPS–APR–3 Notice has been electronically mailed to:**

David E Vandercoy david.vandercoy@valpo.edu

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com, gkasich@gmail.com

Scott L King sking@scottkinggroup.com, dwilliams@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje–nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia−decastro.com, ysierra@rascia−decastro.com

Dean R Lanter − AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick − AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Bruce R Hegyi − AUSA bruce.hegyi@usdoj.gov

Alex Wohlshansky ihorlawyer@hotmail.com

**2:11−cr−00077−PPS−APR−3 Notice has been delivered by U.S. Mail or other means to:**

**2:11−cr−00077−PPS−APR−4 Notice has been electronically mailed to:**

David E Vandercoy david.vandercoy@valpo.edu

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com, gkasich@gmail.com

Scott L King sking@scottkinggroup.com, dwilliams@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin − FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje–nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia–decastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov,
janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Bruce R Hegyi – AUSA bruce.hegyi@usdoj.gov

Alex Wohlshansky ihorlawyer@hotmail.com

**2:11–cr–00077–PPS–APR–4 Notice has been delivered by U.S. Mail or other means to:**

**2:11–cr–00077–PPS–APR–5 Notice has been electronically mailed to:**

David E Vandercoy david.vandercoy@valpo.edu

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com, gkasich@gmail.com

Scott L King sking@scottkinggroup.com, dwilliams@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje−nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia−decastro.com, ysierra@rascia−decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia−decastro.com, ysierra@rascia−decastro.com

Dean R Lanter − AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick − AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Bruce R Hegyi − AUSA bruce.hegyi@usdoj.gov

Alex Wohlshansky ihorlawyer@hotmail.com

**2:11−cr−00077−PPS−APR−5 Notice has been delivered by U.S. Mail or other means to:**

**2:11−cr−00077−PPS−APR−6 Notice has been electronically mailed to:**

David E Vandercoy david.vandercoy@valpo.edu

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com, gkasich@gmail.com

Scott L King sking@scottkinggroup.com, dwilliams@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin − FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje−nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia−decastro.com, ysierra@rascia−decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia−decastro.com, ysierra@rascia−decastro.com

Dean R Lanter − AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick − AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Bruce R Hegyi − AUSA bruce.hegyi@usdoj.gov

Alex Wohlshansky ihorlawyer@hotmail.com

**2:11−cr−00077−PPS−APR−6 Notice has been delivered by U.S. Mail or other means to:**

**2:11−cr−00077−PPS−APR−7 Notice has been electronically mailed to:**

David E Vandercoy david.vandercoy@valpo.edu

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com, gkasich@gmail.com

Scott L King sking@scottkinggroup.com, dwilliams@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje–nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia–decastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Bruce R Hegyi – AUSA bruce.hegyi@usdoj.gov

Alex Wohlshansky ihorlawyer@hotmail.com

**2:11–cr–00077–PPS–APR–7 Notice has been delivered by U.S. Mail or other means to:**

**2:11–cr–00077–PPS–APR–8 Notice has been electronically mailed to:**

David E Vandercoy david.vandercoy@valpo.edu

Arlington J Foley arlingtonfoley@att.net

1059

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com, gkasich@gmail.com

Scott L King sking@scottkinggroup.com, dwilliams@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje–nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia–decastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov,
janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Bruce R Hegyi – AUSA bruce.hegyi@usdoj.gov

Alex Wohlshansky ihorlawyer@hotmail.com

**2:11–cr–00077–PPS–APR–8 Notice has been delivered by U.S. Mail or other means to:**

**2:11−cr−00077−PPS−APR−9 Notice has been electronically mailed to:**

David E Vandercoy david.vandercoy@valpo.edu

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com, gkasich@gmail.com

Scott L King sking@scottkinggroup.com, dwilliams@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin − FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje−nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia−decastro.com, ysierra@rascia−decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia−decastro.com, ysierra@rascia−decastro.com

Dean R Lanter − AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick − AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Bruce R Hegyi – AUSA bruce.hegyi@usdoj.gov

Alex Wohlshansky ihorlawyer@hotmail.com

**2:11−cr−00077−PPS−APR−9 Notice has been delivered by U.S. Mail or other means to:**

**2:11−cr−00077−PPS−APR−10 Notice has been electronically mailed to:**

David E Vandercoy david.vandercoy@valpo.edu

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com, gkasich@gmail.com

Scott L King sking@scottkinggroup.com, dwilliams@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje−nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia−decastro.com, ysierra@rascia−decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia−decastro.com, ysierra@rascia−decastro.com

Dean R Lanter − AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick − AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Bruce R Hegyi − AUSA bruce.hegyi@usdoj.gov

Alex Wohlshansky ihorlawyer@hotmail.com

**2:11−cr−00077−PPS−APR−10 Notice has been delivered by U.S. Mail or other means to:**

**2:11−cr−00077−PPS−APR−11 Notice has been electronically mailed to:**

David E Vandercoy david.vandercoy@valpo.edu

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com, gkasich@gmail.com

Scott L King sking@scottkinggroup.com, dwilliams@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin − FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje−nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia–decastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Bruce R Hegyi – AUSA bruce.hegyi@usdoj.gov

Alex Wohlshansky ihorlawyer@hotmail.com

**2:11–cr–00077–PPS–APR–11 Notice has been delivered by U.S. Mail or other means to:**

**2:11–cr–00077–PPS–APR–12 Notice has been electronically mailed to:**

David E Vandercoy david.vandercoy@valpo.edu

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com, gkasich@gmail.com

Scott L King sking@scottkinggroup.com, dwilliams@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje−nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia−decastro.com, ysierra@rascia−decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia−decastro.com, ysierra@rascia−decastro.com

Dean R Lanter − AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick − AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Bruce R Hegyi − AUSA bruce.hegyi@usdoj.gov

Alex Wohlshansky ihorlawyer@hotmail.com

**2:11−cr−00077−PPS−APR−12 Notice has been delivered by U.S. Mail or other means to:**

**2:11−cr−00077−PPS−APR−13 Notice has been electronically mailed to:**

David E Vandercoy david.vandercoy@valpo.edu

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com, gkasich@gmail.com

Scott L King sking@scottkinggroup.com, dwilliams@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje–nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia–decastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Bruce R Hegyi – AUSA bruce.hegyi@usdoj.gov

Alex Wohlshansky ihorlawyer@hotmail.com

**2:11–cr–00077–PPS–APR–13 Notice has been delivered by U.S. Mail or other means to:**

**2:11–cr–00077–PPS–APR–14 Notice has been electronically mailed to:**

David E Vandercoy david.vandercoy@valpo.edu

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com, gkasich@gmail.com

Scott L King sking@scottkinggroup.com, dwilliams@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje–nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia–decastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Bruce R Hegyi – AUSA bruce.hegyi@usdoj.gov

Alex Wohlshansky ihorlawyer@hotmail.com

**2:11–cr–00077–PPS–APR–14 Notice has been delivered by U.S. Mail or other means to:**

**2:11–cr–00077–PPS–APR–15 Notice has been electronically mailed to:**

David E Vandercoy david.vandercoy@valpo.edu

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com, gkasich@gmail.com

Scott L King sking@scottkinggroup.com, dwilliams@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje–nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia–decastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Bruce R Hegyi – AUSA bruce.hegyi@usdoj.gov

Alex Wohlshansky ihorlawyer@hotmail.com

**2:11–cr–00077–PPS–APR–15 Notice has been delivered by U.S. Mail or other means to:**

**2:11–cr–00077–PPS–APR–16 Notice has been electronically mailed to:**

David E Vandercoy david.vandercoy@valpo.edu

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com, gkasich@gmail.com

Scott L King sking@scottkinggroup.com, dwilliams@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje–nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia–decastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Bruce R Hegyi – AUSA bruce.hegyi@usdoj.gov

Alex Wohlshansky ihorlawyer@hotmail.com

**2:11−cr−00077−PPS−APR−16 Notice has been delivered by U.S. Mail or other means to:**

**2:11−cr−00077−PPS−APR−17 Notice has been electronically mailed to:**

David E Vandercoy david.vandercoy@valpo.edu

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com, gkasich@gmail.com

Scott L King sking@scottkinggroup.com, dwilliams@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin − FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje−nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia−decastro.com, ysierra@rascia−decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia−decastro.com, ysierra@rascia−decastro.com

Dean R Lanter − AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Bruce R Hegyi – AUSA bruce.hegyi@usdoj.gov

Alex Wohlshansky ihorlawyer@hotmail.com

**2:11−cr−00077−PPS−APR−17 Notice has been delivered by U.S. Mail or other means to:**

**2:11−cr−00077−PPS−APR−18 Notice has been electronically mailed to:**

David E Vandercoy david.vandercoy@valpo.edu

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com, gkasich@gmail.com

Scott L King sking@scottkinggroup.com, dwilliams@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje−nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia−decastro.com, ysierra@rascia−decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia−decastro.com, ysierra@rascia−decastro.com

Dean R Lanter − AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick − AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Bruce R Hegyi − AUSA bruce.hegyi@usdoj.gov

Alex Wohlshansky ihorlawyer@hotmail.com

**2:11−cr−00077−PPS−APR−18 Notice has been delivered by U.S. Mail or other means to:**

**2:11−cr−00077−PPS−APR−19 Notice has been electronically mailed to:**

David E Vandercoy david.vandercoy@valpo.edu

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com, gkasich@gmail.com

Scott L King sking@scottkinggroup.com, dwilliams@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin − FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje-nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia-decastro.com, ysierra@rascia-decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia-decastro.com, ysierra@rascia-decastro.com

Dean R Lanter - AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick - AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Bruce R Hegyi - AUSA bruce.hegyi@usdoj.gov

Alex Wohlshansky ihorlawyer@hotmail.com

**2:11-cr-00077-PPS-APR-19 Notice has been delivered by U.S. Mail or other means to:**

**2:11-cr-00077-PPS-APR-20 Notice has been electronically mailed to:**

David E Vandercoy david.vandercoy@valpo.edu

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com, gkasich@gmail.com

Scott L King sking@scottkinggroup.com, dwilliams@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje−nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia−decastro.com, ysierra@rascia−decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia−decastro.com, ysierra@rascia−decastro.com

Dean R Lanter – AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Bruce R Hegyi – AUSA bruce.hegyi@usdoj.gov

Alex Wohlshansky ihorlawyer@hotmail.com

**2:11−cr−00077−PPS−APR−20 Notice has been delivered by U.S. Mail or other means to:**

**2:11−cr−00077−PPS−APR−21 Notice has been electronically mailed to:**

David E Vandercoy david.vandercoy@valpo.edu

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com, gkasich@gmail.com

Scott L King sking@scottkinggroup.com, dwilliams@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje–nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia–decastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Bruce R Hegyi – AUSA bruce.hegyi@usdoj.gov

Alex Wohlshansky ihorlawyer@hotmail.com

**2:11–cr–00077–PPS–APR–21 Notice has been delivered by U.S. Mail or other means to:**

**2:11–cr–00077–PPS–APR–22 Notice has been electronically mailed to:**

David E Vandercoy david.vandercoy@valpo.edu

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com, gkasich@gmail.com

Scott L King sking@scottkinggroup.com, dwilliams@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje–nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia–decastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Bruce R Hegyi – AUSA bruce.hegyi@usdoj.gov

Alex Wohlshansky ihorlawyer@hotmail.com

**2:11–cr–00077–PPS–APR–22 Notice has been delivered by U.S. Mail or other means to:**

**2:11–cr–00077–PPS–APR–23 Notice has been electronically mailed to:**

David E Vandercoy david.vandercoy@valpo.edu

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com, gkasich@gmail.com

Scott L King sking@scottkinggroup.com, dwilliams@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje–nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia–decastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Bruce R Hegyi – AUSA bruce.hegyi@usdoj.gov

Alex Wohlshansky ihorlawyer@hotmail.com

**2:11−cr−00077−PPS−APR−23 Notice has been delivered by U.S. Mail or other means to:**

**2:11−cr−00077−PPS−APR−24 Notice has been electronically mailed to:**

David E Vandercoy david.vandercoy@valpo.edu

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com, gkasich@gmail.com

Scott L King sking@scottkinggroup.com, dwilliams@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin − FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje−nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia−decastro.com, ysierra@rascia−decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia−decastro.com, ysierra@rascia−decastro.com

Dean R Lanter − AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick − AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Bruce R Hegyi – AUSA bruce.hegyi@usdoj.gov

Alex Wohlshansky ihorlawyer@hotmail.com

**2:11–cr–00077–PPS–APR–24 Notice has been delivered by U.S. Mail or other means to:**

```
MIME-Version:1.0
From:CMECFinnd@innd.uscourts.gov
To:CMECFinnd@localhost.localdomain
Bcc:
--Case Participants: Pablo DeCastro (pdecastro@rascia-decastro.com,
ysierra@rascia-decastro.com), Kurt R Earnst (kre@braje-nelson.com), Arlington J Foley
(arlingtonfoley@att.net), Jack Friedlander (jack@jackfriedlander.com,
office@jackfriedlander.com), Bruce R Hegyi - AUSA (bruce.hegyi@usdoj.gov), Roxanne Mendez
Johnson (attorneyrmj@gmail.com), Gojko Kasich (gkasich@crownlaw.com, gkasich@gmail.com),
Scott L King (dwilliams@scottkinggroup.com, jwilliams@scottkinggroup.com,
sking@scottkinggroup.com), Visvaldis P Kupsis (vpkupsis@hotmail.com), Catherine A Lake
(attyclake@sbcglobal.net), Dean R Lanter - AUSA (dean.lanter@usdoj.gov,
janet.eisenmann@usdoj.gov, usainn.ecfcivil@usdoj.gov), John Maksimovich
(criminallaw@johnmaksimovich.com), John E Martin - FCD (john_martin@fd.org), Sheldon B
Nagelberg (sbnagelberglaw@att.net), David J Nozick - AUSA (david.nozick@usdoj.gov,
janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov,
usainn.ecfcivil@usdoj.gov), Mark A Psimos (psimoslaw@airbaud.net), Robert L Rascia
(rrascia@rascia-decastro.com, ysierra@rascia-decastro.com), Stephen Edward Scheele
(pkd@gk4law.com, ses@gk4law.com), Paul Jeffrey Schlesinger (pjeffslaw@aol.com), Adam
Tavitas (adtavitas@aol.com, b.lynneadams@yahoo.com), John T Theis (theislaw@aol.com),
James N Thiros (jim@thiros.com, lynn@thiros.com), Bryan M Truitt (bryan@tblawyers.com,
sherrie@tblawyers.com), David E Vandercoy (david.vandercoy@valpo.edu), Thomas W Vanes
(tom.vanes@sbcglobal.net), Alex Wohlshansky (ihorlawyer@hotmail.com), R Brian Woodward
(carolb@wbbklaw.com, rbwoodward@wbbklaw.com), Magistrate Judge Andrew P Rodovich
(rodovich_chambers@innd.uscourts.gov), Chief Judge Philip P Simon
(denise_woodside@innd.uscourts.gov, jacob_hamann@innd.uscourts.gov,
katherine_welsh@innd.uscourts.gov, mira_serrill-robins@innd.uscourts.gov,
noel_collins@innd.uscourts.gov, philip_simon@innd.uscourts.gov)
--Non Case Participants: Matthew D Soliday (office@matthewsolidaylaw.com),
Probation/Pretrial Services (innpml_cmecf@innd.uscourts.gov), U S Marshal
(inn.docket-fw@usdoj.gov, inn.docket-sb@usdoj.gov, usms.27@usdoj.gov)
--No Notice Sent:

Message-Id:2372054@innd.uscourts.gov
Subject:Activity in Case 2:11-cr-00077-PPS-APR United States of America v. Briseno et al
Notice of Hearing/Deadlines
Content-Type: text/html
```

### U.S. District Court Northern District of Indiana [LIVE]

### USDC Northern Indiana

## Notice of Electronic Filing

The following transaction was entered on 10/11/2013 at 10:20 AM EST and filed on 10/11/2013

| | |
|---|---|
| **Case Name:** | United States of America v. Briseno et al |
| **Case Number:** | 2:11-cr-00077-PPS-APR |
| **Filer:** | |
| **Document Number:** | 702(No document attached) |

**Docket Text:**

**NOTICE OF HEARING/DEADLINES as to Juan Briseno regarding [652] Superseding Indictment. Arraignment set for 10/23/2013 11:00 AM in US District Court – Hammond before Magistrate Judge Andrew P Rodovich. (lh)**

**2:11-cr-00077-PPS-APR-1 Notice has been electronically mailed to:**

David E Vandercoy david.vandercoy@valpo.edu

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com, gkasich@gmail.com

Scott L King sking@scottkinggroup.com, dwilliams@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje–nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia–decastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov,
janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

1081

Bruce R Hegyi – AUSA bruce.hegyi@usdoj.gov

Alex Wohlshansky ihorlawyer@hotmail.com

**2:11–cr–00077–PPS–APR–1 Notice has been delivered by U.S. Mail or other means to:**

```
MIME-Version:1.0
From:CMECFinnd@innd.uscourts.gov
To:CMECFinnd@localhost.localdomain
Bcc:
--Case Participants: Bryan M Truitt (bryan@tblawyers.com, sherrie@tblawyers.com), David J
Nozick - AUSA (david.nozick@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov,
susan.devries@usdoj.gov, usainn.ecfcivil@usdoj.gov), Kurt R Earnst (kre@braje-nelson.com),
Paul Jeffrey Schlesinger (pjeffslaw@aol.com), Pablo DeCastro
(pdecastro@rascia-decastro.com, ysierra@rascia-decastro.com), Sheldon B Nagelberg
(sbnagelberglaw@att.net), Thomas W Vanes (tom.vanes@sbcglobal.net), John T Theis
(theislaw@aol.com), Catherine A Lake (attyclake@sbcglobal.net), Alex Wohlshansky
(ihorlawyer@hotmail.com), Adam Tavitas (adtavitas@aol.com, b.lynneadams@yahoo.com), Dean R
Lanter - AUSA (dean.lanter@usdoj.gov, janet.eisenmann@usdoj.gov,
usainn.ecfcivil@usdoj.gov), John E Martin - FCD (john_martin@fd.org), Scott L King
(dwilliams@scottkinggroup.com, jwilliams@scottkinggroup.com, sking@scottkinggroup.com),
Mark A Psimos (psimoslaw@airbaud.net), James N Thiros (jim@thiros.com, lynn@thiros.com),
Robert L Rascia (rrascia@rascia-decastro.com, ysierra@rascia-decastro.com), Gojko Kasich
(gkasich@crownlaw.com, gkasich@gmail.com), Arlington J Foley (arlingtonfoley@att.net),
Roxanne Mendez Johnson (attorneyrmj@gmail.com), Visvaldis P Kupsis (vpkupsis@hotmail.com),
Stephen Edward Scheele (pkd@gk4law.com, ses@gk4law.com), Jack Friedlander
(jack@jackfriedlander.com, office@jackfriedlander.com), Bruce R Hegyi - AUSA
(bruce.hegyi@usdoj.gov), R Brian Woodward (carolb@wbbklaw.com, rbwoodward@wbbklaw.com),
John Maksimovich (criminallaw@johnmaksimovich.com), David E Vandercoy
(david.vandercoy@valpo.edu), Magistrate Judge Andrew P Rodovich
(rodovich_chambers@innd.uscourts.gov), Chief Judge Philip P Simon
(denise_woodside@innd.uscourts.gov, jacob_hamann@innd.uscourts.gov,
katherine_welsh@innd.uscourts.gov, mira_serrill-robins@innd.uscourts.gov,
noel_collins@innd.uscourts.gov, philip_simon@innd.uscourts.gov)
--Non Case Participants: Matthew D Soliday (office@matthewsolidaylaw.com),
Probation/Pretrial Services (innpml_cmecf@innd.uscourts.gov), U S Marshal
(inn.docket-fw@usdoj.gov, inn.docket-sb@usdoj.gov, usms.27@usdoj.gov)
--No Notice Sent:

Message-Id:2379260@innd.uscourts.gov
Subject:Activity in Case 2:11-cr-00077-PPS-APR United States of America v. Briseno et al
Arraignment
Content-Type: text/html
```

## U.S. District Court Northern District of Indiana [LIVE]

### USDC Northern Indiana

### Notice of Electronic Filing

The following transaction was entered on 10/23/2013 at 1:29 PM EST and filed on 10/23/2013

**Case Name:**        United States of America v. Briseno et al

**Case Number:**      2:11-cr-00077-PPS-APR

**Filer:**

**Document Number:** 711(No document attached)

**Docket Text:**

**ARRAIGNMENT as to Juan Briseno (1) Count 1ssss,2ssss,9ssss,10ssss,13ssss,14ssss,15ssss,16ssss,17ssss,18ssss,19ssss,20ssss,21ssss,22ss held on 10/23/2013 before Magistrate Judge Andrew P Rodovich. Govt appeared by AUSA David Nozick. Dft appeared w/ atty Arlington Foley. Dft waives reading of formal charges and enters a plea of not guilty. Govt states some additional discovery to be turned over by 10/31/2013. Defendant REMANDED to custody of US Marshal.(Tape #FTR Gold.) (lh)**

1083

**2:11−cr−00077−PPS−APR−1 Notice has been electronically mailed to:**

David E Vandercoy david.vandercoy@valpo.edu

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com, gkasich@gmail.com

Scott L King sking@scottkinggroup.com, dwilliams@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin − FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje−nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia−decastro.com, ysierra@rascia−decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia−decastro.com, ysierra@rascia−decastro.com

Dean R Lanter − AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick − AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Bruce R Hegyi – AUSA bruce.hegyi@usdoj.gov

Alex Wohlshansky ihorlawyer@hotmail.com

**2:11–cr–00077–PPS–APR–1 Notice has been delivered by U.S. Mail or other means to:**

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

UNITED STATES OF AMERICA,

          **Plaintiff**

**vs**

**JUAN BRISENO,**

          **Defendant**                **CAUSE NO:  2:11-CR-77**

**MOTION FOR DISCLOSURE OF SPECIFIC**
**INFORMANTS AND RELATED INFORMATION**

Defendant, Juan Briseno, by counsel, John Maksimovich and Arlington Foley, move the

Court for an Order ordering the government to disclose the following information and evidence

pertinent to confidential informants and cooperating witnesses.

This motion is for disclosures as follows:

**A.      FOR DISCLOSURE OF THE FOLLOWING INFORMANTS' EVIDENCE AND**
**          INFORMATION AS DEFINED IN SECTION B IMMEDIATELY BELOW.**

**      1.      Juan Briseno Moves for Disclosure of Any Informant or Cooperating**
**               Witness Who Qualifies as a Percipient Witness to Any Crime Charged**
**               Against Juan Briseno**

Juan Briseno moves for the disclosure of the identity of any informant or cooperating

witness who was a percipient witness to any crime alleged to have been committed by Juan as

charged in the Fourth Superseding Indictment, including any informant or cooperating witness

who has stated that he/she saw Juan commit any act charged in the Fourth Superseding

Indictment, or heard Juan make any statement that the Government intends to introduce to prove

any conspiracy, or substantive charge, charged against Juan.

-1-

**2.     The Likely Informants or Cooperating Witnesses Appear to Be as Follows:**

a)     The name and identity of the individual or individuals naming Juan as the shooter in the Luis Ortiz homicide.

b)     The name and identity of the individual selecting Juan's photo out of a photographic line-up and identifying Juan as the shooter in the Harris Brown homicide.

c)     The name and identity of the individual selecting Juan's photo out of a photographic line-up and identifying Juan as the shooter in the Michael Sessum homicide.

d)     The name and identity of the individual selecting Juan's photo out of a photographic line-up and identifying Juan as the shooter in the Miguel Mejias homicide.

e)     The name and identity of the individual selecting Juan's photo out of a photographic line-up and identifying Juan as the shooter in the LaTroy Howard homicide.

f)     The name and identity of attempted murder victim 1, "a person known to the Grand Jury" as set out by the government in count 23 of its Fourth Superseding Indictment. Count 23 charges Juan with attempting to murder this person on or about June 3, 2008.

g)     The name and identity of attempted murder victim 2, "a person known to the Grand Jury" as set out by the government in count 25 of its Fourth Superseding Indictment. Count 25 charges Juan with attempting to murder this person on or about August 26, 2008.

h)     The name and identity of attempted murder victim 3, "a person known to the Grand Jury" as set out by the government in count 27 of its Fourth Superseding Indictment. Count 27 charges Juan with attempting to murder this person on or about February 20, 2009.

i)     The name and identity of attempted murder victim 4, "a person known to the Grand Jury" as set out by the government in count 29 of its Fourth Superseding Indictment. Count 29 charges Juan with attempting to murder this person on or about August 2, 2009.

j)     The name and identity of "another individual" known to the Grand Jury and who, as alleged by the government in its "Overt Acts" section of count 1, paragraph 23

X attempted, along with Juan and Robert Lockhart, to murder victim 2 on August 26, 2013.

k)    The name and identity of the "rival gang member" that Juan and "two other members of the Imperial Gangsters" attempted to murder on January 23, 2009 as alleged by the government in its "Overt Acts" section of count 1, paragraph 23 Z. Also, the name and identity of the "two other members of the Imperial Gangsters"


l)    The name and identity of the "rival gang member" that Juan allegedly shot on March 19, 2013 as referenced by the government in its "Overt Acts" section of count 1, paragraph ll.

m)    The name and identity of the unindicted coconspirators "known and unknown to the Grand Jury" as referenced by the government in count 2 of its Fourth Superseding Indictment naming and charging Juan and several other individuals with conspiring to possess with intent to distribute and to distribute 100 kilograms or more of marijuana and 5 kilograms or more of cocaine.

n)    The name and identity of the "others known and unknown to the Grand Jury" that the government alleges in count 20 of its Fourth Superseding Indictment, murdered Miguel Colon (as charged in count 19) with Juan .

o)    The name and identity of the unindicted coconspirators "known and unknown to the Grand Jury" as referenced by the government in count1 of its Fourth Superseding Indictment naming and charging Juan and several other individuals with conspiring to conduct racketeering activity.

The racketeering conspiracy in Count 1 alleges that "others known and unknown to the Grand Jury" were included in the conspiracy and committed one or more of the acts alleged to be part of the over-arching conspiracy charged in Count 1.  The discovery pertinent to each of these acts pertaining to an unindicted co-conspirator is redacted, thus demonstrating that the Government does not intend the defense to obtain the name, or 'locator' information pertinent to the unindicted conspirators at issue.  The drug conspiracy count charged in Count 2 states that "... others known and unknown to the Grand Jury..." were included in the conspiracy, thus providing the basis for Juan's motion as to Count 2 (Fourth Superseding Indictment at p. 18).

-3-

1088

b)       **As to Count 1, the Racketeering Conspiracy, the Fourth Superseding Indictment States That Persons Other than the Named Defendants Were Participants in the Enterprise (Fourth Superseding Indictment at P. 5).**

In count 1, the allegation is that others known and unknown to the Grand Jury conspired to conduct and participate in the conduct of the affairs of an enterprise through a pattern of racketeering activity consisting of multiple acts of murder, robbery and possession and distribution of narcotics (Fourth Superseding Indictment at p. 5). The discovery pertinent to these Racketeering Acts (many of which are also substantive counts) is heavily redacted in the spaces identifying witnesses, indicating that the Government does not intend for the defense to obtain the name and locator information of any 'redacted' witness. For example, regarding the Harris Brown homicide, Juan has been provided with Supplemental East Chicago Police Department Reports. However, large portions of the Reports are redacted making the Reports virtually unintelligible. Juan requires the complete unredacted Reports in order to confront his accusers and prepare a defense. Likewise, regarding the Miguel Colon homicide, Juan has been provided with Supplemental East Chicago Police Department Reports. However, large portions of the Reports are redacted making the Reports virtually unintelligible. The names and identities of Juan's accusers are completely redacted denying Juan his right of confrontation. Also, regarding the LaTroy Howard homicide, Juan has been provided with Supplemental East Chicago Police Department Reports. However, large portions of the Reports are redacted making the Reports virtually unintelligible. The Reports refer to three (3) witnesses. However, their names and identities are redacted from the Report. Juan requires complete unredacted Reports in order to confront his accusers and prepare a defense. Finally, regarding the Sessum / Mejias double homicide, Juan has been provided with Supplemental East Chicago Police

-4-

Department Reports.  However, large portions of the Reports are redacted making the Reports virtually unintelligible.  While the Reports refer to witnesses, the names and identities of the witnesses are redacted. Juan requires the complete, unredacted Reports in order to confront his accusers and prepare a defense.

The defense moves for disclosure of the names and locator information of redacted percipient and reporting witnesses, including  witnesses who have heard, and witnessed alleged statements made by Juan concerning any of the acts or agreements he is charged with committing.

B.     **AS TO THE INFORMANTS, OR CONFIDENTIAL WITNESSES, SPECIFICALLY DESCRIBED IN SECTION A, JUAN MOVES FOR AN ORDER FOR DISCLOSURE OF THE FOLLOWING INFORMATION:**

1.     The name reported to police, and any other name known to the Government, of the informant, or cooperating witness;

2.     Any and all representations or promises made by the Government, or its Agents and Investigators, including any State or Federal Law Enforcement Officer, to the informant or cooperating witness bearing on any immunity, consideration, inducement, leniency, sentencing consideration, preferential treatment, custodial housing, out of custody housing, including inducements made to the informant, or confidential witness, concerning his or her family members, as part of this case or as part of any other case in which the informant or confidential witness has provided information;

3.     Any proffer agreement, proffer letter, or proffer related writing read to, reviewed by, or signed by, the informant or confidential witness as part of the investigation of this case, or

-5-

any other case pending during the investigation of this case in which the informant or confidential witness has provided information;

4.      Any plea agreement, memorandum or letter confirming a plea agreement, transcript of a change of plea to a guilty or 'no contest' plea reflecting or containing a plea agreement that discusses, sets forth, refers to, or otherwise describes the agreements made by or naming, the informant or cooperating witness.  This motion includes plea agreements, or change of plea transcripts, in federal, state, military and any other court;

5.      A description and record of any payment of currency, funds, or other monetary consideration to the described informants, or cooperating witnesses, or to their families, in connection with this case or any other case pending at the time of the investigation of this case, including, but not limited to, the record of which agency made the payments and what prosecutor (if any) authorized them;

6.      A description of any promises or representations of payment, loans, or monetary consideration to be provided in the future made either in writing, or verbally, to any listed informant, or cooperating witness, as part of this, or any other, case in which the described informant or cooperating witness has provided information;

7.      Any writing, memorandum, plea agreement, letter, or memorandum containing or describing any promises or agreements relevant to the informant or cooperating witness in this case, or in any other case pending at the time of the investigation of this case, or in any other federal investigation in which the informant, or cooperating witness, acted as an informant or confidential source of information.  The writings sought in this section of this motion include,

1091

but are not limited to, writings confirming or promising payment, remuneration, immunity, 'pocket immunity', preferential treatment, or other inducements;

8.    All information, evidence, or records pertinent to any described informant's prior testimony in this or any other proceedings in which he/she has acted as a witness and/or informant;

9.    Any records, evidence, or information pertinent to the informant or cooperating witness' psychological or psychiatric treatment if any, or pertinent to the informant or cooperating witness's addiction or propensity to use or abuse controlled drugs or substances;

10.    Any **informant file** specific to the disclosed informant, or cooperating witness, including: a copy of the informant or cooperating witness's agreement to cooperate and/or testify; any debriefing report, or notes of debriefings; any outline of the information from the law enforcement agency producing the file that the informant or cooperating witness can provide; the informant's personal and criminal history; a register, record, or entries **describing any** monies paid to the informant, including monies left on his books for information, expenses, or discretionary spending; any promises, or discussions that may lead to the informant (or cooperating witness) believing that there is an expressed or implied promise regarding potential sentencing in a criminal case;

11.    Any internal memoranda, either as part of the informant file, or as a 'stand alone' document, written by law enforcement officers, or Government lawyers, including state, local, or federal prosecutors, regarding the informant's credibility.  These memoranda may include such information as misconduct by the informant or cooperating witness, or information regarding the informant's termination as a source of information, or 'deactivation';

-7-

1092

12.     In addition to the above, disclosure of any forms (such as DEA, or FBI,

confidential source, or cooperating witness forms) relevant to the named informant or

cooperating witness; and

13.     Any further information subject to disclosure under the United States Supreme

Court's decision in *Roviaro v. United States*, 353 U.S. 53 (1957) and its progeny.

## MEMORANDUM OF POINTS AND AUTHORITIES

**a)     The Factual Showing Made Clearly Establishes That Any Privilege to
        Withhold the Identity of Any Informant or Cooperating Witness Against
        Juan must Give Way to the Need for Him to Prepare His Defense.**

In *Roviaro v. U.S.*, 353 U.S. 53 (1957), the U.S. Supreme Court established that when the

Government has made a claim of privilege to withhold the identity of a person who has furnished

information to it, and charges have been filed against an accused, the situation then

> ...calls for balancing the public interest in protecting the flow of
> information against the individual's right to prepare his defense.
> Whether a proper balance renders non-disclosure erroneous must
> depend on the particular circumstances of each case, taking into
> consideration the crime charged, the possible defenses, the possible
> significance of the informer's testimony, and other relevant factors.

*Id*. at 63.

In *Roviaro*, the Indictment charged a drug crime.  Using the above formula, the High

Court reviewed the charge, which included a presumption of constructive possession under the

facts presented.  The defendant Roviaro and the informer had been together shortly before

Roviaro's arrest.  The circumstances of the crime, as viewed by the Court, made the informer's

"...possible testimony... highly relevant", and the Court noted that it "...might have been helpful

to the defense".  *Id*. at 63-64.  Because of the nature of the crime, it was likely that only the

accused and the informant would have been witnesses, and thus unless the accused "...waived his

-8-

1093

constitutional right not to take the stand in his own defense, [the informer] was his one material witness." *Id.* at 64. The opportunity to cross-examine a police officer "...was hardly a substitute for an opportunity to examine the man who had been nearest to [the defendant] and took part in the transaction." *Ibid.* Among other things the informer's testimony "might have disclosed an entrapment". *Id*. at 64-65.

The centerpiece of the *Roviaro* rule is that "...where the disclosure of an informer's identity, or of the contents of his communication, is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privilege [to maintain the name and communication secret] must give way." *Id.* at 60-61. Under the Seventh Circuit's formulation, the accused must show that the informant's identity would be relevant and helpful to his defense. *United States v. Connors*, 441 F.3d 527, 531 (7th Cir. 2006). "[A] showing that a potential defense may depend on the informant's involvement ... weighs in favor of disclosure". *United States v. Valles*, 41 F.3d 355, 358.

**b)** **The Witnesses Who Are Allegedly Percipient in That They Were at a Crime Scene or Heard Statements about a Charged Crime Are Subject to Disclosure**

The Government has been clear with the Court, and with the defense, in this case that it intends to protect the identity of all 'sensitive' witnesses, whether they are informants, cooperators, or simply percipient witnesses whose names, and locator information, were acquired during the course of the investigation of the crimes charged against Juan.

Similarly, there were other witnesses to the shooting whose names and identifying information are redacted, and who appear to have been involved in criminal activity that may have motivated them to become cooperating witnesses.

-9-

As the Second Circuit noted some time ago "...where the informant is a key witness or participant in the crime charged, someone whose testimony would be significant in determining guilt or innocence", disclosure is required. *U.S. v. Saa*, 859 F.2d 1067, 107374 (2d Cir. 1988). The court in *Saa* noted this to be the 'general rule', and also indicating that where the confidential informant's testimony would clearly be material to the case and to the defense, disclosure of identity or address is required. *U.S. v. Valenzuela-Bernal*, 458 U.S. 858, 870-71 (1982). This would especially be true where the informer is **the only** percipient witness to the transaction, or crime, other than the accused. *Roviaro, supra*, 353 U.S. 64.

**c)      Disclosure of evidence concerning the credibility of the informant is required**

It is axiomatic that evidence bearing on the credibility of an informant which is either known or reasonably available to the Government must be disclosed. This includes agreements entered into between the Government and an informant. See *U.S. v. Bagley*, 473 U.S. 667-676 (1985). *Brady v. Maryland*, 373 U.S. 83 (1963) has been interpreted to require disclosure of impeachment evidence. *Giglio v. U.S.*, 405 U.S. 150, 154 (1972)

By definition a person's status as a paid informant has been deemed by the U.S. Supreme Court to qualify the information concerning the payment as 'evidence favorable' to that defendant. *Banks v. Dretky*, 540 U.S. (2004).

In sum, in addition to disclosing the identity and address of the informer, the Government must disclose all the categories of information including: beneficial plea agreements; pocket agreements; immunities; promises; ascertainable expectations; payments; case-related 'deals' - all of which are among the elements of impeaching, or favorable evidence.

-10-

**CONCLUSION**

For the reasons stated here,  this Court should grant Juan Briseno's motion for disclosure

of informants.


**Respectfully submitted:**


/s/ *Arlington Foley*

_____

Arlington Foley /#6905-45
Attorney For Defendant
1942 North Main Street
Crown Point, IN 46307
PH: 219.661.1200
FX: 219.661.1205

/s/ *John Maksimovich*

_____

John Maksimovich /#9950-45
Attorney For Defendant
1946 North Main Street
Crown Point, IN 46307
PH: 219.663.1900
FX: 219.663.1908

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

**UNITED STATES OF AMERICA,**

        **Plaintiff**

**vs**

**JUAN BRISENO,**

        **Defendant**           **CAUSE NO:    2:11-CR-77**

**CERTIFICATE OF SERVICE**

I hereby certify that on October 28, 2013, I electronically filed:

*Motion for Disclosure of Specific Informants and Related Information*

with the Clerk of the Court using the CM/ECF system, which sent notification of such filing to the following:

David J. Nozick                    Bruce Hegyi
Assistant United States Attorney     Assistant United States Attorney

and I hereby certify that I have mailed by United States Postal Service, the document to the following non-CM/ECF participants:

      N/A

By:    /s/ *John Maksimovich*

John Maksimovich /#9950-45
Attorney For Defendant
1946 North Main Street
Crown Point, IN 46307
PH: 219.663.1900
FX: 219.663.1908
E-Mail: criminallaw@johnmaksimovich.com

-12-

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | |
| **Plaintiff** | |
| **vs** | |
| **JUAN BRISENO,** | |
| **Defendant** | **CAUSE NO:   2:11-CR-77** |

**MOTION FOR DISCLOSURE OF**
**SCIENTIFIC / FORENSIC TESTING AND RESULTS**

Defendant, Juan Briseno, by counsel, John Maksimovich and Arlington Foley, move the

Court for an Order ordering the government to disclose all scientific / forensic testing and the

results thereof, performed by the government in relation to its prosecution of Juan Briseno.

This motion is for disclosures as follows:

1.    **FOR DISCLOSURE OF ANY AND ALL SCIENTIFIC / FORENSIC TESTING**
       **AND THE RESULTS THEREOF, I.E. BALLISTICS, FINGERPRINT, DNA,**
       **HAIR ANALYSIS, BLOOD COMPARISONS, DRUG ANALYSIS, ETC.**

The government collected physical evidence in each and every homicide and attempted

homicide charged in its Fourth Superceding Indictment. ( Blood, hair, fingerprints, bullets, shell

casings, guns, ammunition, drugs etc.). Yet, to date, the government has not provided even one

scientific or forensic test report to Briseno. Briseno requires this information long before trial in

order to determine whether he needs to retain forensic experts of his own to prepare a defense.

-1-

## CONCLUSION

For the reasons stated here, this Court should grant Juan Briseno's motion for disclosure

of scientific / forensic testing and results.


**Respectfully submitted:**


/s/ *Arlington Foley*

Arlington Foley /#6905-45
Attorney For Defendant
1942 North Main Street
Crown Point, IN 46307
PH: 219.661.1200
FX: 219.661.1205

/s/ *John Maksimovich*

John Maksimovich /#9950-45
Attorney For Defendant
1946 North Main Street
Crown Point, IN 46307
PH: 219.663.1900
FX: 219.663.1908

-2-

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

UNITED STATES OF AMERICA,

           **Plaintiff**

**vs**

**JUAN BRISENO,**

        **Defendant**               **CAUSE NO:   2:11-CR-77**

## CERTIFICATE OF SERVICE

I hereby certify that on October 28, 2013, I electronically filed:

*Motion for Disclosure of Scientific / Forensic Testing and Results*

with the Clerk of the Court using the CM/ECF system, which sent notification of such filing to the following:

David J. Nozick                             Bruce R. Hegyi
Assistant United States Attorney         Assistant United States Attorney

and I hereby certify that I have mailed by United States Postal Service, the document to the following non-CM/ECF participants:

       N/A

By:   /s/ *John Maksimovich*

       John Maksimovich /#9950-45
       Attorney For Defendant
       1946 North Main Street
       Crown Point, IN 46307
       PH: 219.663.1900
       FX: 219.663.1908
       E-Mail: criminallaw@johnmaksimovich.com

-3-

1100

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **VS.** | ) | **CASE NO: 2:11 CR 77** |
| | ) | |
| **JUAN BRISENO** | ) | |

### MOTION FOR EXTENSION OF TIME TO FILE MOTIONS TO SUPPRESS

Comes now the Defendant, Juan Briseno, by and through counsel and moves the Court for an extension of time to file motions to suppress and in support says:

1. That the Court has imposed a deadline of November 18, 2013 for the Defendant to file motions to suppress.

2. That there exists a voluminous amount of discovery materials pertaining to six alleged murders; four alleged attempted murders; alleged racketeering and other alleged criminal activity of this defendant.

3. That the Defendant, Juan Briseno, has filed motions requesting the Court to order the government to provide additional discovery to the Defendant which, among other things, requests the identity of attempted murder victims and the identities of and procedures used for witnesses to identify Defendant, Juan Briseno, as the perpetrator of murders and attempted murders alleged in the Indictment. Without this information, it is impossible for the Defendant, Juan Briseno, to prepare and file motions to suppress.

**WHEREFORE:** The Defendant, Juan Briseno, moves the Court to grant the Defendant additional time to file motions to suppress to sometime after the date that the Court rules on Defendant's pending discovery motions.

RESPECTFULLY SUBMITTED:

s/Arlington J. Foley
Arlington J. Foley, Atty. #6905-45
Attorney for Defendant, Juan Briseno
1942 North Main Street
Crown Point, IN 46307
Tel: (219) 661-1200

s/John Maksimovich
John Maksimovich, Atty. #9950-45
Attorney for Defendant, Juan Briseno
1946 North Main Street
Crown Point, IN 46307
Tel: (219) 663-1900

1102

**CERTIFICATE OF SERVICE**

I certify that on the 15th day of November, 2013 service of a true and complete copy of the above and foregoing pleading or paper was made upon each party or attorney of record herein by the electronic case filing system (ECF).

By:     s/Arlington J. Foley
                Arlington J. Foley
                Attorney at Law

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION


UNITED STATES OF AMERICA          )
                                  )
               v.                 )          2:11 CR 77 PPS
                                  )
JUAN BRISENO, et al.              )


## GOVERNMENT'S MOTION FOR AN EXTENSION OF TIME TO FILE SANTIAGO PROFFER AND 404(b) NOTICE

Comes now the United States of America, by David Capp, United States Attorney for the

Northern District of Indiana, through Assistant U.S. Attorney David J. Nozick, and states the

following:

1.      The Honorable Judge Rodovich ordered the government to file its *Santiago*

        Proffer and Notice of Intent to Introduce 404(b) Evidence by November 22, 2013.

2.      The undersigned Assistant United States Attorney has been working diligently to

        complete both motions.  A substantial portion of these motions has been

        completed.  However, a number of unforeseen circumstances have arisen on

        other cases.  Despite the government's best efforts, it will be extremely difficult

        to finish these motions by the assigned deadline.

3.      The government respectfully requests that this honorable court extend the

        deadline for completing these motions, and give the government until November

        26, 2013 to file the motions.  This would amount to a continuance of two

        business days.

1

**WHEREFORE**, for the reasons stated above, the government requests the Court grant the government's request to file its *Santiago* Proffer and Notice of Intent to Rely on 404(b) Evidence on or before November 26, 2013.

Respectfully submitted,

DAVID CAPP
UNITED STATES ATTORNEY

By:     /s/ David J. Nozick
David J. Nozick
Assistant United States Attorney
5400 Federal Plaza, Suite 1500
Hammond, Indiana 46320
(219) 937-5500

2

1104

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

UNITED STATES OF AMERICA      )
                              )
              v.              )      NO. 2:11 CR 77 PPS
                              )
JUAN BRISENO, et al.          )

CERTIFICATE OF SERVICE

The undersigned hereby certifies that the Government's Motion for an Extension of Time

to File Santiago Proffer and 404(b) Notice was electronically filed with the Clerk of the Court

using the CM/ECF system which sent notification of said filing to all counsel of record.

By:     /s/ Janet L. Eisenmann
        Janet L. Eisenmann
        U.S. Attorney's Office
        5400 Federal Plaza, Suite 1500
        Hammond, Indiana 46320
        (219) 937-5500

3

```
MIME-Version:1.0
From:CMECFinnd@innd.uscourts.gov
To:CMECFinnd@localhost.localdomain
Bcc:
--Case Participants: Bryan M Truitt (bryan@tblawyers.com, sherrie@tblawyers.com), David J
Nozick - AUSA (david.nozick@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov,
susan.devries@usdoj.gov, usainn.ecfcivil@usdoj.gov), Kurt R Earnst (kre@braje-nelson.com),
Paul Jeffrey Schlesinger (pjeffslaw@aol.com), Pablo DeCastro
(pdecastro@rascia-decastro.com, ysierra@rascia-decastro.com), Sheldon B Nagelberg
(sbnagelberglaw@att.net), Thomas W Vanes (tom.vanes@sbcglobal.net), John T Theis
(theislaw@aol.com), Catherine A Lake (attyclake@sbcglobal.net), Alex Wohlshansky
(ihorlawyer@hotmail.com), Adam Tavitas (adtavitas@aol.com, b.lynneadams@yahoo.com), Dean R
Lanter - AUSA (dean.lanter@usdoj.gov, janet.eisenmann@usdoj.gov,
usainn.ecfcivil@usdoj.gov), John E Martin - FCD (john_martin@fd.org), Scott L King
(dwilliams@scottkinggroup.com, jwilliams@scottkinggroup.com, sking@scottkinggroup.com),
Mark A Psimos (psimoslaw@airbaud.net), James N Thiros (jim@thiros.com, lynn@thiros.com),
Robert L Rascia (rrascia@rascia-decastro.com, ysierra@rascia-decastro.com), Gojko Kasich
(gkasich@crownlaw.com, gkasich@gmail.com), Arlington J Foley (arlingtonfoley@att.net),
Roxanne Mendez Johnson (attorneyrmj@gmail.com), Visvaldis P Kupsis (vpkupsis@hotmail.com),
Stephen Edward Scheele (pkd@gk4law.com, ses@gk4law.com), Jack Friedlander
(jack@jackfriedlander.com, office@jackfriedlander.com), Bruce R Hegyi - AUSA
(bruce.hegyi@usdoj.gov), R Brian Woodward (carolb@wbbklaw.com, rbwoodward@wbbklaw.com),
John Maksimovich (criminallaw@johnmaksimovich.com), David E Vandercoy
(david.vandercoy@valpo.edu), Magistrate Judge Andrew P Rodovich
(rodovich_chambers@innd.uscourts.gov), Chief Judge Philip P Simon
(denise_woodside@innd.uscourts.gov, jacob_hamann@innd.uscourts.gov,
katherine_welsh@innd.uscourts.gov, mira_serrill-robins@innd.uscourts.gov,
noel_collins@innd.uscourts.gov, philip_simon@innd.uscourts.gov)
--Non Case Participants: Matthew D Soliday (office@matthewsolidaylaw.com),
Probation/Pretrial Services (innpml_cmecf@innd.uscourts.gov), U S Marshal
(inn.docket-fw@usdoj.gov, inn.docket-sb@usdoj.gov, usms.27@usdoj.gov)
--No Notice Sent:

Message-Id:2398165@innd.uscourts.gov
Subject:Activity in Case 2:11-cr-00077-PPS-APR United States of America v. Briseno et al
```
Notice of Hearing/Deadlines
Content−Type: text/html

### U.S. District Court Northern District of Indiana [LIVE]

### USDC Northern Indiana

## Notice of Electronic Filing

The following transaction was entered on 11/21/2013 at 12:23 PM EST and filed on 11/21/2013

| | |
|---|---|
| **Case Name:** | United States of America v. Briseno et al |
| **Case Number:** | 2:11−cr−00077−PPS−APR |
| **Filer:** | |
| **Document Number:** | 724(No document attached) |

**Docket Text:**
 **NOTICE OF HEARING as to all remaining defendants other than Juan Briseno: Final Pretrial Conference RESET for 12/4/2013 01:30 PM in US District Court – Hammond before Chief Judge Philip P Simon. The previous Final Pretrial Conference setting before Magistrate Judge Rodovich is VACATED from the court calendar.(nac)**

**2:11−cr−00077−PPS−APR−1 Notice has been electronically mailed to:**

David E Vandercoy david.vandercoy@valpo.edu

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com, gkasich@gmail.com

Scott L King sking@scottkinggroup.com, dwilliams@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin − FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje−nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia−decastro.com, ysierra@rascia−decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia−decastro.com, ysierra@rascia−decastro.com

Dean R Lanter − AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick − AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Bruce R Hegyi – AUSA bruce.hegyi@usdoj.gov

Alex Wohlshansky ihorlawyer@hotmail.com

**2:11–cr–00077–PPS–APR–1 Notice has been delivered by U.S. Mail or other means to:**

**2:11–cr–00077–PPS–APR–2 Notice has been electronically mailed to:**

David E Vandercoy david.vandercoy@valpo.edu

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com, gkasich@gmail.com

Scott L King sking@scottkinggroup.com, dwilliams@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje–nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia−decastro.com, ysierra@rascia−decastro.com

Dean R Lanter − AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick − AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Bruce R Hegyi − AUSA bruce.hegyi@usdoj.gov

Alex Wohlshansky ihorlawyer@hotmail.com

**2:11−cr−00077−PPS−APR−2 Notice has been delivered by U.S. Mail or other means to:**

**2:11−cr−00077−PPS−APR−3 Notice has been electronically mailed to:**

David E Vandercoy david.vandercoy@valpo.edu

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com, gkasich@gmail.com

Scott L King sking@scottkinggroup.com, dwilliams@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin − FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje−nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia−decastro.com, ysierra@rascia−decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia−decastro.com, ysierra@rascia−decastro.com

Dean R Lanter − AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick − AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Bruce R Hegyi − AUSA bruce.hegyi@usdoj.gov

Alex Wohlshansky ihorlawyer@hotmail.com

**2:11−cr−00077−PPS−APR−3 Notice has been delivered by U.S. Mail or other means to:**

**2:11−cr−00077−PPS−APR−4 Notice has been electronically mailed to:**

David E Vandercoy david.vandercoy@valpo.edu

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com, gkasich@gmail.com

Scott L King sking@scottkinggroup.com, dwilliams@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin − FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje−nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia−decastro.com, ysierra@rascia−decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia−decastro.com, ysierra@rascia−decastro.com

Dean R Lanter − AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick − AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Bruce R Hegyi − AUSA bruce.hegyi@usdoj.gov

Alex Wohlshansky ihorlawyer@hotmail.com

**2:11−cr−00077−PPS−APR−4 Notice has been delivered by U.S. Mail or other means to:**

**2:11−cr−00077−PPS−APR−5 Notice has been electronically mailed to:**

David E Vandercoy david.vandercoy@valpo.edu

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com, gkasich@gmail.com

Scott L King sking@scottkinggroup.com, dwilliams@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje–nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia–decastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Bruce R Hegyi – AUSA bruce.hegyi@usdoj.gov

Alex Wohlshansky ihorlawyer@hotmail.com

**2:11–cr–00077–PPS–APR–5 Notice has been delivered by U.S. Mail or other means to:**

**2:11–cr–00077–PPS–APR–6 Notice has been electronically mailed to:**

David E Vandercoy david.vandercoy@valpo.edu

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com, gkasich@gmail.com

Scott L King sking@scottkinggroup.com, dwilliams@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje–nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia–decastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Bruce R Hegyi – AUSA bruce.hegyi@usdoj.gov

Alex Wohlshansky ihorlawyer@hotmail.com

**2:11–cr–00077–PPS–APR–6 Notice has been delivered by U.S. Mail or other means to:**

**2:11–cr–00077–PPS–APR–7 Notice has been electronically mailed to:**

David E Vandercoy david.vandercoy@valpo.edu

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com, gkasich@gmail.com

Scott L King sking@scottkinggroup.com, dwilliams@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje–nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia–decastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Bruce R Hegyi – AUSA bruce.hegyi@usdoj.gov

Alex Wohlshansky ihorlawyer@hotmail.com

**2:11–cr–00077–PPS–APR–7 Notice has been delivered by U.S. Mail or other means to:**

**2:11–cr–00077–PPS–APR–8 Notice has been electronically mailed to:**

1114

David E Vandercoy david.vandercoy@valpo.edu

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com, gkasich@gmail.com

Scott L King sking@scottkinggroup.com, dwilliams@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje–nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia–decastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Bruce R Hegyi – AUSA bruce.hegyi@usdoj.gov

Alex Wohlshansky ihorlawyer@hotmail.com

**2:11–cr–00077–PPS–APR–8 Notice has been delivered by U.S. Mail or other means to:**

**2:11–cr–00077–PPS–APR–9 Notice has been electronically mailed to:**

David E Vandercoy david.vandercoy@valpo.edu

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com, gkasich@gmail.com

Scott L King sking@scottkinggroup.com, dwilliams@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje–nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia–decastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov,
janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Bruce R Hegyi – AUSA bruce.hegyi@usdoj.gov

Alex Wohlshansky ihorlawyer@hotmail.com

**2:11–cr–00077–PPS–APR–9 Notice has been delivered by U.S. Mail or other means to:**

**2:11–cr–00077–PPS–APR–10 Notice has been electronically mailed to:**

David E Vandercoy david.vandercoy@valpo.edu

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com, gkasich@gmail.com

Scott L King sking@scottkinggroup.com, dwilliams@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje–nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia−decastro.com, ysierra@rascia−decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia−decastro.com, ysierra@rascia−decastro.com

Dean R Lanter − AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick − AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Bruce R Hegyi − AUSA bruce.hegyi@usdoj.gov

Alex Wohlshansky ihorlawyer@hotmail.com

**2:11−cr−00077−PPS−APR−10 Notice has been delivered by U.S. Mail or other means to:**

**2:11−cr−00077−PPS−APR−11 Notice has been electronically mailed to:**

David E Vandercoy david.vandercoy@valpo.edu

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com, gkasich@gmail.com

Scott L King sking@scottkinggroup.com, dwilliams@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin − FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje−nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia−decastro.com, ysierra@rascia−decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia−decastro.com, ysierra@rascia−decastro.com

Dean R Lanter − AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick − AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Bruce R Hegyi − AUSA bruce.hegyi@usdoj.gov

Alex Wohlshansky ihorlawyer@hotmail.com

**2:11−cr−00077−PPS−APR−11 Notice has been delivered by U.S. Mail or other means to:**

**2:11−cr−00077−PPS−APR−12 Notice has been electronically mailed to:**

David E Vandercoy david.vandercoy@valpo.edu

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com, gkasich@gmail.com

Scott L King sking@scottkinggroup.com, dwilliams@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje–nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia–decastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Bruce R Hegyi – AUSA bruce.hegyi@usdoj.gov

Alex Wohlshansky ihorlawyer@hotmail.com

**2:11–cr–00077–PPS–APR–12 Notice has been delivered by U.S. Mail or other means to:**

**2:11–cr–00077–PPS–APR–13 Notice has been electronically mailed to:**

David E Vandercoy david.vandercoy@valpo.edu

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com, gkasich@gmail.com

Scott L King sking@scottkinggroup.com, dwilliams@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje−nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia−decastro.com, ysierra@rascia−decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia−decastro.com, ysierra@rascia−decastro.com

Dean R Lanter – AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Bruce R Hegyi – AUSA bruce.hegyi@usdoj.gov

Alex Wohlshansky ihorlawyer@hotmail.com

**2:11−cr−00077−PPS−APR−13 Notice has been delivered by U.S. Mail or other means to:**

**2:11−cr−00077−PPS−APR−14 Notice has been electronically mailed to:**

David E Vandercoy david.vandercoy@valpo.edu

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com, gkasich@gmail.com

Scott L King sking@scottkinggroup.com, dwilliams@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje–nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia–decastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Bruce R Hegyi – AUSA bruce.hegyi@usdoj.gov

Alex Wohlshansky ihorlawyer@hotmail.com

**2:11–cr–00077–PPS–APR–14 Notice has been delivered by U.S. Mail or other means to:**

**2:11–cr–00077–PPS–APR–15 Notice has been electronically mailed to:**

David E Vandercoy david.vandercoy@valpo.edu

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com, gkasich@gmail.com

Scott L King sking@scottkinggroup.com, dwilliams@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje–nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia–decastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Bruce R Hegyi – AUSA bruce.hegyi@usdoj.gov

Alex Wohlshansky ihorlawyer@hotmail.com

**2:11−cr−00077−PPS−APR−15 Notice has been delivered by U.S. Mail or other means to:**

**2:11−cr−00077−PPS−APR−16 Notice has been electronically mailed to:**

David E Vandercoy david.vandercoy@valpo.edu

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com, gkasich@gmail.com

Scott L King sking@scottkinggroup.com, dwilliams@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin − FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje−nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia−decastro.com, ysierra@rascia−decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia−decastro.com, ysierra@rascia−decastro.com

Dean R Lanter − AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick − AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

1124

Roxanne Mendez Johnson attorneyrmj@gmail.com

Bruce R Hegyi – AUSA bruce.hegyi@usdoj.gov

Alex Wohlshansky ihorlawyer@hotmail.com

**2:11–cr–00077–PPS–APR–16 Notice has been delivered by U.S. Mail or other means to:**

**2:11–cr–00077–PPS–APR–17 Notice has been electronically mailed to:**

David E Vandercoy david.vandercoy@valpo.edu

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com, gkasich@gmail.com

Scott L King sking@scottkinggroup.com, dwilliams@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje–nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

1125

Pablo DeCastro pdecastro@rascia–decastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Bruce R Hegyi – AUSA bruce.hegyi@usdoj.gov

Alex Wohlshansky ihorlawyer@hotmail.com

**2:11–cr–00077–PPS–APR–17 Notice has been delivered by U.S. Mail or other means to:**

**2:11–cr–00077–PPS–APR–18 Notice has been electronically mailed to:**

David E Vandercoy david.vandercoy@valpo.edu

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com, gkasich@gmail.com

Scott L King sking@scottkinggroup.com, dwilliams@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje–nelson.com

1126

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia–decastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov,
janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Bruce R Hegyi – AUSA bruce.hegyi@usdoj.gov

Alex Wohlshansky ihorlawyer@hotmail.com

**2:11–cr–00077–PPS–APR–18 Notice has been delivered by U.S. Mail or other means to:**

**2:11–cr–00077–PPS–APR–19 Notice has been electronically mailed to:**

David E Vandercoy david.vandercoy@valpo.edu

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com, gkasich@gmail.com

Scott L King sking@scottkinggroup.com, dwilliams@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje-nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia-decastro.com, ysierra@rascia-decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia-decastro.com, ysierra@rascia-decastro.com

Dean R Lanter – AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Bruce R Hegyi – AUSA bruce.hegyi@usdoj.gov

Alex Wohlshansky ihorlawyer@hotmail.com

**2:11-cr-00077-PPS-APR-19 Notice has been delivered by U.S. Mail or other means to:**

**2:11-cr-00077-PPS-APR-20 Notice has been electronically mailed to:**

David E Vandercoy david.vandercoy@valpo.edu

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com, gkasich@gmail.com

Scott L King sking@scottkinggroup.com, dwilliams@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje–nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia–decastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Bruce R Hegyi – AUSA bruce.hegyi@usdoj.gov

Alex Wohlshansky ihorlawyer@hotmail.com

**2:11–cr–00077–PPS–APR–20 Notice has been delivered by U.S. Mail or other means to:**

**2:11–cr–00077–PPS–APR–21 Notice has been electronically mailed to:**

David E Vandercoy david.vandercoy@valpo.edu

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com, gkasich@gmail.com

Scott L King sking@scottkinggroup.com, dwilliams@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje−nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia−decastro.com, ysierra@rascia−decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia−decastro.com, ysierra@rascia−decastro.com

Dean R Lanter – AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Bruce R Hegyi – AUSA bruce.hegyi@usdoj.gov

Alex Wohlshansky ihorlawyer@hotmail.com

**2:11−cr−00077−PPS−APR−21 Notice has been delivered by U.S. Mail or other means to:**

**2:11−cr−00077−PPS−APR−22 Notice has been electronically mailed to:**

David E Vandercoy david.vandercoy@valpo.edu

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

1130

Gojko Kasich gkasich@crownlaw.com, gkasich@gmail.com

Scott L King sking@scottkinggroup.com, dwilliams@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje–nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia–decastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Bruce R Hegyi – AUSA bruce.hegyi@usdoj.gov

Alex Wohlshansky ihorlawyer@hotmail.com

**2:11–cr–00077–PPS–APR–22 Notice has been delivered by U.S. Mail or other means to:**

**2:11–cr–00077–PPS–APR–23 Notice has been electronically mailed to:**

David E Vandercoy david.vandercoy@valpo.edu

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com, gkasich@gmail.com

Scott L King sking@scottkinggroup.com, dwilliams@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje–nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia–decastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov,
janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Bruce R Hegyi – AUSA bruce.hegyi@usdoj.gov

Alex Wohlshansky ihorlawyer@hotmail.com

**2:11–cr–00077–PPS–APR–23 Notice has been delivered by U.S. Mail or other means to:**

**2:11–cr–00077–PPS–APR–24 Notice has been electronically mailed to:**

David E Vandercoy david.vandercoy@valpo.edu

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com, gkasich@gmail.com

Scott L King sking@scottkinggroup.com, dwilliams@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje–nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia–decastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Bruce R Hegyi – AUSA bruce.hegyi@usdoj.gov

Alex Wohlshansky ihorlawyer@hotmail.com

**2:11−cr−00077−PPS−APR−24 Notice has been delivered by U.S. Mail or other means to:**

```
MIME-Version:1.0
From:CMECFinnd@innd.uscourts.gov
To:CMECFinnd@localhost.localdomain
Bcc:
--Case Participants: Bryan M Truitt (bryan@tblawyers.com, sherrie@tblawyers.com), David J
Nozick – AUSA (david.nozick@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov,
susan.devries@usdoj.gov, usainn.ecfcivil@usdoj.gov), Kurt R Earnst (kre@braje-nelson.com),
Paul Jeffrey Schlesinger (pjeffslaw@aol.com), Pablo DeCastro
(pdecastro@rascia-decastro.com, ysierra@rascia-decastro.com), Sheldon B Nagelberg
(sbnagelberglaw@att.net), Thomas W Vanes (tom.vanes@sbcglobal.net), John T Theis
(theislaw@aol.com), Catherine A Lake (attyclake@sbcglobal.net), Alex Wohlshansky
(ihorlawyer@hotmail.com), Adam Tavitas (adtavitas@aol.com, b.lynneadams@yahoo.com), Dean R
Lanter – AUSA (dean.lanter@usdoj.gov, janet.eisenmann@usdoj.gov,
usainn.ecfcivil@usdoj.gov), John E Martin – FCD (john_martin@fd.org), Scott L King
(dwilliams@scottkinggroup.com, jwilliams@scottkinggroup.com, sking@scottkinggroup.com),
Mark A Psimos (psimoslaw@airbaud.net), James N Thiros (jim@thiros.com, lynn@thiros.com),
Robert L Rascia (rrascia@rascia-decastro.com, ysierra@rascia-decastro.com), Gojko Kasich
(gkasich@crownlaw.com, gkasich@gmail.com), Arlington J Foley (arlingtonfoley@att.net),
Roxanne Mendez Johnson (attorneyrmj@gmail.com), Visvaldis P Kupsis (vpkupsis@hotmail.com),
Stephen Edward Scheele (pkd@gk4law.com, ses@gk4law.com), Jack Friedlander
(jack@jackfriedlander.com, office@jackfriedlander.com), Bruce R Hegyi – AUSA
(bruce.hegyi@usdoj.gov), R Brian Woodward (carolb@wbbklaw.com, rbwoodward@wbbklaw.com),
John Maksimovich (criminallaw@johnmaksimovich.com), David E Vandercoy
(david.vandercoy@valpo.edu), Magistrate Judge Andrew P Rodovich
(rodovich_chambers@innd.uscourts.gov), Chief Judge Philip P Simon
(denise_woodside@innd.uscourts.gov, jacob_hamann@innd.uscourts.gov,
katherine_welsh@innd.uscourts.gov, mira_serrill-robins@innd.uscourts.gov,
noel_collins@innd.uscourts.gov, philip_simon@innd.uscourts.gov)
--Non Case Participants: Matthew D Soliday (office@matthewsolidaylaw.com),
Probation/Pretrial Services (innpml_cmecf@innd.uscourts.gov), U S Marshal
(inn.docket-fw@usdoj.gov, inn.docket-sb@usdoj.gov, usms.27@usdoj.gov)
--No Notice Sent:

Message-Id:2398929@innd.uscourts.gov
Subject:Activity in Case 2:11-cr-00077-PPS-APR United States of America v. Briseno et al
```
Set/Reset Deadlines
Content–Type: text/html

### U.S. District Court Northern District of Indiana [LIVE]

### USDC Northern Indiana

## Notice of Electronic Filing

The following transaction was entered on 11/22/2013 at 9:44 AM EST and filed on 11/22/2013

| | |
|---|---|
| **Case Name:** | United States of America v. Briseno et al |
| **Case Number:** | 2:11–cr–00077–PPS–APR |
| **Filer:** | |
| **Document Number:** | No document attached |

**Docket Text:**

**Set/Reset Deadlines as to Juan Briseno: Government Response Brief to Dft's Mts for Disclosure[DE 717 & 718] due by 12/3/2013. (lh)**

**2:11–cr–00077–PPS–APR–1 Notice has been electronically mailed to:**

David E Vandercoy david.vandercoy@valpo.edu

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com, gkasich@gmail.com

Scott L King sking@scottkinggroup.com, dwilliams@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje–nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia–decastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Bruce R Hegyi – AUSA bruce.hegyi@usdoj.gov

1136

Alex Wohlshansky ihorlawyer@hotmail.com

**2:11–cr–00077–PPS–APR–1 Notice has been delivered by U.S. Mail or other means to:**

```
MIME-Version:1.0
From:CMECFinnd@innd.uscourts.gov
To:CMECFinnd@localhost.localdomain
Bcc:
--Case Participants: Bryan M Truitt (bryan@tblawyers.com, sherrie@tblawyers.com), David J
Nozick - AUSA (david.nozick@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov,
susan.devries@usdoj.gov, usainn.ecfcivil@usdoj.gov), Kurt R Earnst (kre@braje-nelson.com),
Paul Jeffrey Schlesinger (pjeffslaw@aol.com), Pablo DeCastro
(pdecastro@rascia-decastro.com, ysierra@rascia-decastro.com), Sheldon B Nagelberg
(sbnagelberglaw@att.net), Thomas W Vanes (tom.vanes@sbcglobal.net), John T Theis
(theislaw@aol.com), Catherine A Lake (attyclake@sbcglobal.net), Alex Wohlshansky
(ihorlawyer@hotmail.com), Adam Tavitas (adtavitas@aol.com, b.lynneadams@yahoo.com), Dean R
Lanter - AUSA (dean.lanter@usdoj.gov, janet.eisenmann@usdoj.gov,
usainn.ecfcivil@usdoj.gov), John E Martin - FCD (john_martin@fd.org), Scott L King
(dwilliams@scottkinggroup.com, jwilliams@scottkinggroup.com, sking@scottkinggroup.com),
Mark A Psimos (psimoslaw@airbaud.net), James N Thiros (jim@thiros.com, lynn@thiros.com),
Robert L Rascia (rrascia@rascia-decastro.com, ysierra@rascia-decastro.com), Gojko Kasich
(gkasich@crownlaw.com, gkasich@gmail.com), Arlington J Foley (arlingtonfoley@att.net),
Roxanne Mendez Johnson (attorneyrmj@gmail.com), Visvaldis P Kupsis (vpkupsis@hotmail.com),
Stephen Edward Scheele (pkd@gk4law.com, ses@gk4law.com), Jack Friedlander
(jack@jackfriedlander.com, office@jackfriedlander.com), Bruce R Hegyi - AUSA
(bruce.hegyi@usdoj.gov), R Brian Woodward (carolb@wbbklaw.com, rbwoodward@wbbklaw.com),
John Maksimovich (criminallaw@johnmaksimovich.com), David E Vandercoy
(david.vandercoy@valpo.edu), Magistrate Judge Andrew P Rodovich
(rodovich_chambers@innd.uscourts.gov), Chief Judge Philip P Simon
(denise_woodside@innd.uscourts.gov, jacob_hamann@innd.uscourts.gov,
katherine_welsh@innd.uscourts.gov, mira_serrill-robins@innd.uscourts.gov,
noel_collins@innd.uscourts.gov, philip_simon@innd.uscourts.gov)
--Non Case Participants: Matthew D Soliday (office@matthewsolidaylaw.com),
Probation/Pretrial Services (innpml_cmecf@innd.uscourts.gov), U S Marshal
(inn.docket-fw@usdoj.gov, inn.docket-sb@usdoj.gov, usms.27@usdoj.gov)
--No Notice Sent:

Message-Id:2398931@innd.uscourts.gov
Subject:Activity in Case 2:11-cr-00077-PPS-APR United States of America v. Briseno et al
Order on Motion for Extension of Time to File
```
Content–Type: text/html

## U.S. District Court Northern District of Indiana [LIVE]

## USDC Northern Indiana

## Notice of Electronic Filing

The following transaction was entered on 11/22/2013 at 9:47 AM EST and filed on 11/22/2013

| | |
|---|---|
| **Case Name:** | United States of America v. Briseno et al |
| **Case Number:** | 2:11–cr–00077–PPS–APR |
| **Filer:** | |
| **Document Number:** | 726(No document attached) |

**Docket Text:**
**ORDER granting [722] Motion for Extension of Time to File as to Juan Briseno (1). Ct to set new ddl in separate order. Signed by Magistrate Judge Andrew P Rodovich on 11/22/13. (lh)**

**2:11–cr–00077–PPS–APR–1 Notice has been electronically mailed to:**

David E Vandercoy david.vandercoy@valpo.edu

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com, gkasich@gmail.com

Scott L King sking@scottkinggroup.com, dwilliams@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje–nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia–decastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Bruce R Hegyi – AUSA bruce.hegyi@usdoj.gov

Alex Wohlshansky ihorlawyer@hotmail.com

**2:11–cr–00077–PPS–APR–1 Notice has been delivered by U.S. Mail or other means to:**

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

UNITED STATES OF AMERICA    )
    )
    v.    )    CAUSE NO. 2:11 CR 77
    )
JUAN BRISENO, *et al.*    )

## ORDER

This matter is before the court on the Government's Motion for Extension of Time to File Santiago Proffer and 404(b) Notice [DE 723] filed on November 21, 2013. Upon due consideration, the government is **GRANTED** an extension up to and including November 26, 2013 to file its Santiago Proffer and Notice of Intent to Rely on 404(b) Evidence.

ENTERED this 22nd day of November, 2013

/s/ Andrew P. Rodovich
United States Magistrate Judge

1

```
MIME-Version:1.0
From:CMECFinnd@innd.uscourts.gov
To:CMECFinnd@localhost.localdomain
Bcc:
--Case Participants: Pablo DeCastro (pdecastro@rascia-decastro.com,
ysierra@rascia-decastro.com), Kurt R Earnst (kre@braje-nelson.com), Arlington J Foley
(arlingtonfoley@att.net), Jack Friedlander (jack@jackfriedlander.com,
office@jackfriedlander.com), Bruce R Hegyi - AUSA (bruce.hegyi@usdoj.gov), Roxanne Mendez
Johnson (attorneyrmj@gmail.com), Gojko Kasich (gkasich@crownlaw.com, gkasich@gmail.com),
Scott L King (dwilliams@scottkinggroup.com, jwilliams@scottkinggroup.com,
sking@scottkinggroup.com), Visvaldis P Kupsis (vpkupsis@hotmail.com), Catherine A Lake
(attyclake@sbcglobal.net), Dean R Lanter - AUSA (dean.lanter@usdoj.gov,
janet.eisenmann@usdoj.gov, usainn.ecfcivil@usdoj.gov), John Maksimovich
(criminallaw@johnmaksimovich.com), John E Martin - FCD (john_martin@fd.org), Sheldon B
Nagelberg (sbnagelberglaw@att.net), David J Nozick - AUSA (david.nozick@usdoj.gov,
janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov,
usainn.ecfcivil@usdoj.gov), Mark A Psimos (psimoslaw@airbaud.net), Robert L Rascia
(rrascia@rascia-decastro.com, ysierra@rascia-decastro.com), Stephen Edward Scheele
(pkd@gk4law.com, ses@gk4law.com), Paul Jeffrey Schlesinger (pjeffslaw@aol.com), Adam
Tavitas (adtavitas@aol.com, b.lynneadams@yahoo.com), John T Theis (theislaw@aol.com),
James N Thiros (jim@thiros.com, lynn@thiros.com), Bryan M Truitt (bryan@tblawyers.com,
sherrie@tblawyers.com), David E Vandercoy (david.vandercoy@valpo.edu), Thomas W Vanes
(tom.vanes@sbcglobal.net), Alex Wohlshansky (ihorlawyer@hotmail.com), R Brian Woodward
(carolb@wbbklaw.com, rbwoodward@wbbklaw.com), Magistrate Judge Andrew P Rodovich
(rodovich_chambers@innd.uscourts.gov), Chief Judge Philip P Simon
(denise_woodside@innd.uscourts.gov, jacob_hamann@innd.uscourts.gov,
katherine_welsh@innd.uscourts.gov, mira_serrill-robins@innd.uscourts.gov,
noel_collins@innd.uscourts.gov, philip_simon@innd.uscourts.gov)
--Non Case Participants: Matthew D Soliday (office@matthewsolidaylaw.com),
Probation/Pretrial Services (innpml_cmecf@innd.uscourts.gov), U S Marshal
(inn.docket-fw@usdoj.gov, inn.docket-sb@usdoj.gov, usms.27@usdoj.gov)
--No Notice Sent:

Message-Id:2399634@innd.uscourts.gov
Subject:Activity in Case 2:11-cr-00077-PPS-APR United States of America v. Briseno et al
```
Set/Reset Deadlines
Content-Type: text/html

### U.S. District Court Northern District of Indiana [LIVE]

### USDC Northern Indiana

## Notice of Electronic Filing

The following transaction was entered on 11/22/2013 at 2:07 PM EST and filed on 11/22/2013

| | |
|---|---|
| **Case Name:** | United States of America v. Briseno et al |
| **Case Number:** | 2:11-cr-00077-PPS-APR |
| **Filer:** | |
| **Document Number:** | No document attached |

**Docket Text:**
**Set/Reset Deadlines: Santiago Proffer and Notice of Intent to Rely on 404(b) Evidence due by 11/26/2013. (mc)**

**2:11-cr-00077-PPS-APR-1 Notice has been electronically mailed to:**

David E Vandercoy david.vandercoy@valpo.edu

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com, gkasich@gmail.com

Scott L King sking@scottkinggroup.com, dwilliams@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje–nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia–decastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Bruce R Hegyi – AUSA bruce.hegyi@usdoj.gov

Alex Wohlshansky ihorlawyer@hotmail.com

**2:11−cr−00077−PPS−APR−1 Notice has been delivered by U.S. Mail or other means to:**

**2:11−cr−00077−PPS−APR−2 Notice has been electronically mailed to:**

David E Vandercoy david.vandercoy@valpo.edu

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com, gkasich@gmail.com

Scott L King sking@scottkinggroup.com, dwilliams@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin − FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje−nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia−decastro.com, ysierra@rascia−decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia−decastro.com, ysierra@rascia−decastro.com

Dean R Lanter − AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Bruce R Hegyi – AUSA bruce.hegyi@usdoj.gov

Alex Wohlshansky ihorlawyer@hotmail.com

**2:11–cr–00077–PPS–APR–2 Notice has been delivered by U.S. Mail or other means to:**

**2:11–cr–00077–PPS–APR–6 Notice has been electronically mailed to:**

David E Vandercoy david.vandercoy@valpo.edu

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com, gkasich@gmail.com

Scott L King sking@scottkinggroup.com, dwilliams@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje–nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia−decastro.com, ysierra@rascia−decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia−decastro.com, ysierra@rascia−decastro.com

Dean R Lanter − AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick − AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Bruce R Hegyi − AUSA bruce.hegyi@usdoj.gov

Alex Wohlshansky ihorlawyer@hotmail.com

**2:11−cr−00077−PPS−APR−6 Notice has been delivered by U.S. Mail or other means to:**

**2:11−cr−00077−PPS−APR−8 Notice has been electronically mailed to:**

David E Vandercoy david.vandercoy@valpo.edu

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com, gkasich@gmail.com

Scott L King sking@scottkinggroup.com, dwilliams@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin − FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje−nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia−decastro.com, ysierra@rascia−decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia−decastro.com, ysierra@rascia−decastro.com

Dean R Lanter − AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick − AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Bruce R Hegyi − AUSA bruce.hegyi@usdoj.gov

Alex Wohlshansky ihorlawyer@hotmail.com

**2:11−cr−00077−PPS−APR−8 Notice has been delivered by U.S. Mail or other means to:**

**2:11−cr−00077−PPS−APR−9 Notice has been electronically mailed to:**

David E Vandercoy david.vandercoy@valpo.edu

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com, gkasich@gmail.com

Scott L King sking@scottkinggroup.com, dwilliams@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje–nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia–decastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov,
janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Bruce R Hegyi – AUSA bruce.hegyi@usdoj.gov

Alex Wohlshansky ihorlawyer@hotmail.com

**2:11–cr–00077–PPS–APR–9 Notice has been delivered by U.S. Mail or other means to:**

**2:11–cr–00077–PPS–APR–10 Notice has been electronically mailed to:**

David E Vandercoy david.vandercoy@valpo.edu

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com, gkasich@gmail.com

Scott L King sking@scottkinggroup.com, dwilliams@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje–nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia–decastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Bruce R Hegyi – AUSA bruce.hegyi@usdoj.gov

Alex Wohlshansky ihorlawyer@hotmail.com

**2:11–cr–00077–PPS–APR–10 Notice has been delivered by U.S. Mail or other means to:**

**2:11–cr–00077–PPS–APR–11 Notice has been electronically mailed to:**

David E Vandercoy david.vandercoy@valpo.edu

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com, gkasich@gmail.com

Scott L King sking@scottkinggroup.com, dwilliams@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje–nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia–decastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Bruce R Hegyi – AUSA bruce.hegyi@usdoj.gov

Alex Wohlshansky ihorlawyer@hotmail.com

**2:11–cr–00077–PPS–APR–11 Notice has been delivered by U.S. Mail or other means to:**

**2:11–cr–00077–PPS–APR–14 Notice has been electronically mailed to:**

David E Vandercoy david.vandercoy@valpo.edu

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com, gkasich@gmail.com

Scott L King sking@scottkinggroup.com, dwilliams@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje–nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia–decastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Bruce R Hegyi – AUSA bruce.hegyi@usdoj.gov

Alex Wohlshansky ihorlawyer@hotmail.com

**2:11–cr–00077–PPS–APR–14 Notice has been delivered by U.S. Mail or other means to:**

**2:11–cr–00077–PPS–APR–15 Notice has been electronically mailed to:**

David E Vandercoy david.vandercoy@valpo.edu

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com, gkasich@gmail.com

Scott L King sking@scottkinggroup.com, dwilliams@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje–nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia–decastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Bruce R Hegyi – AUSA bruce.hegyi@usdoj.gov

Alex Wohlshansky ihorlawyer@hotmail.com

**2:11–cr–00077–PPS–APR–15 Notice has been delivered by U.S. Mail or other means to:**

**2:11–cr–00077–PPS–APR–16 Notice has been electronically mailed to:**

David E Vandercoy david.vandercoy@valpo.edu

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com, gkasich@gmail.com

Scott L King sking@scottkinggroup.com, dwilliams@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje–nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

1153

Pablo DeCastro pdecastro@rascia–decastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Bruce R Hegyi – AUSA bruce.hegyi@usdoj.gov

Alex Wohlshansky ihorlawyer@hotmail.com

**2:11–cr–00077–PPS–APR–16 Notice has been delivered by U.S. Mail or other means to:**

**2:11–cr–00077–PPS–APR–17 Notice has been electronically mailed to:**

David E Vandercoy david.vandercoy@valpo.edu

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com, gkasich@gmail.com

Scott L King sking@scottkinggroup.com, dwilliams@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje–nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia–decastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Bruce R Hegyi – AUSA bruce.hegyi@usdoj.gov

Alex Wohlshansky ihorlawyer@hotmail.com

**2:11–cr–00077–PPS–APR–17 Notice has been delivered by U.S. Mail or other means to:**

**2:11–cr–00077–PPS–APR–18 Notice has been electronically mailed to:**

David E Vandercoy david.vandercoy@valpo.edu

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com, gkasich@gmail.com

Scott L King sking@scottkinggroup.com, dwilliams@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje−nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia−decastro.com, ysierra@rascia−decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia−decastro.com, ysierra@rascia−decastro.com

Dean R Lanter − AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick − AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Bruce R Hegyi − AUSA bruce.hegyi@usdoj.gov

Alex Wohlshansky ihorlawyer@hotmail.com

**2:11−cr−00077−PPS−APR−18 Notice has been delivered by U.S. Mail or other means to:**

**2:11−cr−00077−PPS−APR−19 Notice has been electronically mailed to:**

David E Vandercoy david.vandercoy@valpo.edu

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com, gkasich@gmail.com

Scott L King sking@scottkinggroup.com, dwilliams@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje−nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia−decastro.com, ysierra@rascia−decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia−decastro.com, ysierra@rascia−decastro.com

Dean R Lanter – AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Bruce R Hegyi – AUSA bruce.hegyi@usdoj.gov

Alex Wohlshansky ihorlawyer@hotmail.com

**2:11−cr−00077−PPS−APR−19 Notice has been delivered by U.S. Mail or other means to:**

**2:11−cr−00077−PPS−APR−20 Notice has been electronically mailed to:**

David E Vandercoy david.vandercoy@valpo.edu

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com, gkasich@gmail.com

Scott L King sking@scottkinggroup.com, dwilliams@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje–nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia–decastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Bruce R Hegyi – AUSA bruce.hegyi@usdoj.gov

Alex Wohlshansky ihorlawyer@hotmail.com

**2:11–cr–00077–PPS–APR–20 Notice has been delivered by U.S. Mail or other means to:**

**2:11–cr–00077–PPS–APR–22 Notice has been electronically mailed to:**

David E Vandercoy david.vandercoy@valpo.edu

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com, gkasich@gmail.com

Scott L King sking@scottkinggroup.com, dwilliams@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje–nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia–decastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Bruce R Hegyi – AUSA bruce.hegyi@usdoj.gov

Alex Wohlshansky ihorlawyer@hotmail.com

**2:11–cr–00077–PPS–APR–22 Notice has been delivered by U.S. Mail or other means to:**

**2:11–cr–00077–PPS–APR–23 Notice has been electronically mailed to:**

David E Vandercoy david.vandercoy@valpo.edu

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com, gkasich@gmail.com

Scott L King sking@scottkinggroup.com, dwilliams@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje−nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia−decastro.com, ysierra@rascia−decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia−decastro.com, ysierra@rascia−decastro.com

Dean R Lanter – AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov,
janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

1160

Bruce R Hegyi – AUSA bruce.hegyi@usdoj.gov

Alex Wohlshansky ihorlawyer@hotmail.com

**2:11–cr–00077–PPS–APR–23 Notice has been delivered by U.S. Mail or other means to:**

**2:11–cr–00077–PPS–APR–24 Notice has been electronically mailed to:**

David E Vandercoy david.vandercoy@valpo.edu

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com, gkasich@gmail.com

Scott L King sking@scottkinggroup.com, dwilliams@scottkinggroup.com, jwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje–nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia–decastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Bruce R Hegyi – AUSA bruce.hegyi@usdoj.gov

Alex Wohlshansky ihorlawyer@hotmail.com

**2:11−cr−00077−PPS−APR−24 Notice has been delivered by U.S. Mail or other means to:**

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | NO. 2:11 CR 77 PPS |
| | ) | |
| JUAN BRISENO, et al. | ) | |

### NOTICE OF INTENT TO INTRODUCE ENTERPRISE EVIDENCE

The UNITED STATES OF AMERICA, by its attorney, DAVID CAPP, United States

Attorney for the Northern District of Indiana, respectfully files this Notice of Intent to Introduce

Enterprise Evidence.[1]

Count 1 of the Fourth Superseding Indictment charges the defendants with Conspiracy to

Commit Racketeering under Title 18, United States Code, Section 1962(d).  As drafted, Count 1

charges what has become known as a "*Glecier*" RICO conspiracy count, under which it is

sufficient to allege and prove that the defendant agreed to further an endeavor, which if

completed, would satisfy all the elements of a substantive RICO offense, and that the defendant

agreed that at least one member of the conspiracy would commit at least two racketeering acts in

furtherance of the enterprise's affairs.  *See United States v. Glecier*, 923 F.2d 496, 498, 500 (7th

Cir. 1991).

In a *Glecier* conspiracy it is not necessary to either allege that the defendant agreed to

personally commit any racketeering act, or to allege specific racketeering acts that were the

objectives of the RICO conspiracy.  *Id*.  Rather, it is sufficient to allege that it was a part of the

---

[1] The government does not, at this point, intend to introduce 404(b) evidence.  All of the crimes
described fall within the conduct of the charged conspiracy.  If the government at a later point
elects to attempt to introduce evidence of bad acts that occurred before the beginning of the
charged conspiracy, it will file a separate notice.

RICO conspiracy that the defendant agreed that a conspirator, which could be the defendant himself, would commit at least two acts of racketeering activity in the conduct of the affairs of the enterprise and to include sufficient allegations to inform the defendant of the nature of the charge. *Id*.

As is common in proving *Glecier* RICO conspiracies, the United States intends to prove the existence of the Imperial Gangster enterprise, the defendants' membership in the enterprise, and the pattern of racketeering by offering evidence related to the overt acts as listed in the indictment as well as non-charged overt acts. In this case, the United States intends to also introduce evidence of the following:

**Ace Cortez**

- In approximately 2008-2009, Ace Cortez was upset that someone had shot at his car, while his children were in it. When Ace Cortez went and located Subject 4[2] at Subject 4's residence, and attempted to shoot him, Ace Cortez's P97 Ruger .45 pistol jammed.

- In approximately 2005-2006, Ace Cortez shot at Subject 18[3], who was riding in his white Pontiac Grand Am in the vicinity of Pulaski and 139th in East Chicago, Indiana. Cortez's shots hit Subject 18's vehicle. Subject 18 is one of the leaders of the Two Six gang.

---

[2] While the government is not naming Subject 1-Subject 31 in this publicly filed motion, the government is writing a letter to each remaining defense counsel in this case identifying the identities of these individuals.

[3] The identity of each Witness and Subject is the same for this Notice and the government's *Santiago* proffer.

- On February 9, 2002, Ace Cortez, while in a leadership position of the 139th Street Imperial Gangsters, gave Raymond Campos a .22 or .25 caliber pistol and ordered Raymond Campos and fellow Imperial Gangster Subject 7 to shoot and kill Stephen Rodriguez a/k/a "Little Jeremy." This order was given in Subject 7's apartment, in the vicinity of 139th and Hemlock in East Chicago, Indiana. Salvador Chavez and Eddie Serna were also present when the order was given. At Ace Cortez's direction, Raymond Campos shot and killed Stephen Rodriguez.

- Ace Cortez shot at Miguel Colon approximately one and a half years before the February 7, 2010 homicide of Miguel Colon. Cortez shot at Colon in retaliation for Colon having shot at Ace Cortez before, while Ace Cortez's children were in the car.

- In approximately 2003 Ace Cortez shot at Two Six gang member Subject 8, missing him.

- On an unknown date, Salvador Chavez, Julian Serna, Ace Cortez and Jason Medina were in Medina's apartment, discussing the fact that Subject 4, a Two Six gang member, had driven his car in a threatening manner directly at Salvador Chavez's car while Salvador Chavez's children and the mother of his children were in the car. Ace Cortez became angry at Salvador Chavez for not retaliating against Subject 4, and ordered him to retaliate. Ace Cortez then drove Salvador Chavez to Subject 4's residence, where Salvador Chavez shot at Subject 4 numerous times, hitting him.

1165

- In approximately 2010, Ace Cortez, armed with a semi-automatic pistol, robbed Subject 1 of one kilogram of cocaine. Cortez acted alone in committing this armed robbery.

- Ace Cortez and Subject 2, a member of the Imperial Gangsters, stole approximately $300,000 from a Mexican drug trafficker in the Sunnyside neighborhood of East Chicago, Indiana. The victim lived right behind Subject 2's grandmother's residence. Subject 2 purchased a Lincoln truck and a Cadillac STS with the proceeds of the theft.

- In 2001-2002, Ace Cortez, Subject 2, Subject 3 and Salvador Chavez stole approximately $250,000 from the residence or stash house of a Mexican drug trafficker in Calumet City or Lansing, Illinois. Subject 2 had known that drugs or money were being stashed at the location. Ace Cortez purchased a Buick LeSabre and a Cadillac with the proceeds of this burglary. Salvador Chavez purchased a grey in color Chevrolet with the proceeds. Subject 3 purchased a Teal in color Cadillac with the proceeds.

- In approximately 2003-2004, Ace Cortez, Subject 3 and Salvador Chavez broke into the residence or garage of Mexican Drug Traffickers on Fir Street in East Chicago, Indiana. Cortez, Subject 3 and Chavez stole five kilograms of cocaine during this burglary. Salvador Chavez purchased a Pontiac Bonneville with the proceeds of this burglary. Ace Cortez purchased either a Buick Roadmaster or a Ford Expedition with the proceeds, and Subject 3 also purchased a car.

- In 2002, Ace Cortez, Salvador Chavez and Subject 2 broke in to the garage of the residence of a Mexican drug trafficker in the Harbor neighborhood of East Chicago, Indiana. Cortez, Chavez and Subject 2 stole 15 kilograms of cocaine during this burglary.

- On an unknown date prior to April, 2008, Ace Cortez, Salvador Chavez, Subject 5 and Subject 6 stole between 40 and 80 pounds of marijuana from a drug trafficker's residence. Subject 5 and 6 were both members of the Imperial Gangsters. During the course of this robbery Ace Cortez brandished a weapon in a threatening manner to the victim, who then did not resist the robbery. This robbery was set up by Subject 5, who had been purchasing narcotics from the victim's drug trafficking organization, and knew that they were utilizing different houses that they were renovating to store marijuana. Eddie Serna, Subject 9 and 10 may have also participated in this robbery.

- On an unknown date prior to April, 2008, Ace Cortez, Subject 5 and Witness 4 broke into the garage of a drug trafficker in the Hessville neighborhood of Hammond, Indiana. During the course of trying to steal narcotics from the garage, an individual came out of the house armed with a snub-nosed revolver. A shootout ensued between this individual and Ace Cortez.

- In 2008 or 2009 Ace Cortez and Subject 2 stole $60,000 from the trunk of a car that belonged to drug traffickers. Ace Cortez kept $20,000 of the proceeds.

- On an unknown date, Ace Cortez and Subject 9, an Imperial Gangster who is now deceased, and Subject 10, an Imperial Gangster, stole two kilograms of cocaine from Mexican drug traffickers.

- On an unknown date, Ace Cortez and Subject 9 stole 60 pounds from the same Mexican drug traffickers described above. After this theft, Ace Cortez sold pounds of marijuana to fellow Imperial Gangsters at the price of two for one. Ace Cortez purchased a Sport Utility Vehicle with the proceeds of these thefts. Subject 9 purchased a Chevrolet Impala, a .45 pistol, and a "grill" (set of Gold Teeth) with the proceeds of these thefts.

- On an unknown date Ace Cortez and Salvador Chavez stole two kilograms of cocaine. Salvador Chavez purchased a Buick Roadmaster and a Lincoln Town Car with the proceeds.

- In March or April, 2010, Ace Cortez and Salvador Chavez had a male Hispanic drug trafficker, who also worked as an auto mechanic, show them a sample of cocaine that he had for sale. Ace Cortez and Salvador Chavez later came and robbed this individual at gun point for $10,000.

**Salvador Chavez**

- On July 24, 2005, Salvador Chavez and Vincent Garza were present in the car and active participants when Jason Medina shot and killed Guadalupe Trevino.

- On July 21, 2007 at approximately 2:50 a.m., Salvador Chavez shot Louis Gonzalez in the lower back, the upper chest, the left shoulder, the left thigh

and the head, killing him.  The homicide occurred in the vicinity of 3901 Pulaski Street, East Chicago, Indiana.  During the same incident Salvador Chavez shot Jose Eloy Diaz in the right arm and the back.  Salvador Chavez utilized a Glock 9mm to commit this murder and attempted murder.

- In approximately 2004-2005, Salvador Chavez heard that Subject 12, a leader of the Two Six gang, was driving around in the vicinity of 138th and Pulaski Street in the Harbor Section of East Chicago, Indiana.  Chavez had a fellow Imperial Gangster drive him in Chavez's grey in color "big body" sedan while Chavez shot at Subject 12 with an AK-47-style assault rifle.  Subject 12 crashed his into the corner of an apartment building during this incident.

- In approximately 2004-2005, Salvador Chavez saw a member of the Latin Kings at Mr. V's bar in Hammond, Indiana.  Salvador Chavez attempted to shoot this individual outside of Mr. V's bar.  Chavez missed, and then his gun jammed.

- As stated above, in 2002, Salvador Chavez, Ace Cortez and Subject 2 broke in to the garage of the residence of a Mexican drug trafficker in the Harbor neighborhood of East Chicago, Indiana.  Cortez, Chavez and Subject 2 stole 15 kilograms of cocaine during this burglary.

- As stated above, on an unknown date, Ace Cortez drove Salvador Chavez to Subject 4's residence, where Salvador Chavez shot at Subject 4 numerous times, hitting him.

- - As stated above, in 2001 or 2002, Ace Cortez, Subject 2, Salvador Chavez and Subject 3 stole approximately $250,000 from the residence or stash house of a Mexican drug trafficker in Calumet City or Lansing, Illinois.

  - As stated above, on an unknown date prior to April, 2008, Salvador Chavez, Ace Cortez, Subject 5 and Subject 6 stole between 40 and 80 pounds of marijuana from a drug trafficker's residence.

- As stated above, on an unknown date Ace Cortez and Salvador Chavez stole two kilograms of cocaine. Salvador Chavez purchased a Buick Roadmaster and a Lincoln Town Car with the proceeds.

- As stated above, in March or April, 2010, Ace Cortez and Salvador Chavez had a male Hispanic drug trafficker, who also worked as an auto mechanic, show them a sample of cocaine that he had for sale. Ace Cortez and Salvador Chavez later came and robbed this individual at gun point for $10,000.

- In approximately 2010, Salvador Chavez, Julian Serna and Juan Briseno kicked in the door of Subject 11, and stole one ounce of cocaine, a scale used to weigh narcotics, some jewelry and a Star brand 9mm pistol.

- In approximately 2008-2009, Salvador Chavez took Guillermo Briseno and Anthony Baldazo to a house in East Chicago, Indiana and told them that there was marijuana and money inside. Salvador Chavez kicked in the door of the house, and Salvador Chavez, Guillermo Briseno and Anthony Baldazo proceeded to enter and steal five pounds of marijuana and some electronics from the residence.

- In approximately 2006- 2007, Juan Briseno and Subject 13 were dealing marijuana together. Subject 13 had a marijuana source of supply send 30 pounds of marijuana

to the residence of Subject 14, an Imperial Gangster, in the Hessville neighborhood of Hammond, Indiana. Subject 13 and Juan Briseno lied to the source of supply and told him that the marijuana never arrived. Juan Briseno and Salvador Chavez split the majority of the 30 pounds of marijuana between the two of them, but gave some of the marijuana to other Imperial Gangsters.

**Jason Medina**

- In the summer of 2009 Jason Medina shot at Subject 15, a member of the 149th Street Imperial Gangsters, in a case of mistaken identity. Eddie Serna came to meet with 149th Street Imperial Gangsters to ensure that no further conflict arose because of this episode.

- In the Winter of 2009, Jason Medina and Subject 9 shot at Miguel Colon, in the Harbor Section of East Chicago, Indiana. Afterwards, Medina and Subject 9 told fellow Imperial Gangsters that they believed that they might have hit Miguel Colon, but were not sure.

- In 2008-2009 Jason Medina and Eddie Serna shot at Raymond Campos, hitting his car.

- In 2009-2011, Jason Medina and Eddie Serna shot at Raymond Campos, while Campos was with Guillermo Briseno and Galo Feliciano.

- On an unknown date Jason Medina, Julian Serna and Subject 17, an Imperial Gangster, shot at Subject 4 outside of Subject 4's residence in East Chicago, Indiana. During this incident Jason Medina and Julian Serna also accidentally shot at each other.

- In 2006-2008, Jason Medina's residence was shot at and hit by multiple bullets. Later the same night, Medina shot up the residence of Subject 18, a leader of the Two Six gang, in retaliation.

- On an unknown date, Jason Medina shot up the residence of Subject 19, a member of the Two Six gang. Subject 19's family was in the residence, watching television when the shooting occurred.

- On an unknown date, Jason Medina had a shootout with Subject 4, on the 4200 block of Euclid in East Chicago, Indiana. Edward Serna was present for the shootout.

- On an unknown date, Jason Medina had a shootout outside a residence at 140th and Parrish in East Chicago, Indiana. Medina believed the other individual to be a member of the Marktown Folk street gang.

- On an unknown date Eddie Serna was driving a rented PT Cruiser automobile when they encountered Subject 26. Jason Medina shot at Subject 26, a member of the Two Six gang.

**Edward Serna**

- In May or June of 2010 Edward Serna was driving his silver Buick Lesabre, with Angel Santos (a deceased Imperial Gangster) in the passenger seat when they encountered Witness 2 in front of Subject 14's residence in the Hessville neighborhood of Hammond, Indiana. Serna pointed a .40 caliber Glock pistol at Witness 2 in a threatening manner and called him a "bitch ass nigga."

- On February 10, 2009, Edward Serna, while riding in a dark in color Jeep sports utility vehicle, shot Subject 19 in the stomach and Subject 20 in the leg as the victims stood in the Maxwell Street restaurant at 3807 Main Street in East Chicago, Indiana. Subject 19 is required to utilize a colostomy bag as a result of this shooting.

- In 2008-2009 Jason Medina and Edward Serna shot at Raymond Campos, hitting his car.

- In 2009-2010 Jason Medina and Edward Serna shot at Raymond Campos, while Campos was with Guillermo Briseno and Galo Feliciano. This incident occurred in the 149th Street Imperial Gangster neighborhood.

- In approximately 2005-2006 Edward Serna stole 500 pounds of marijuana from a drug dealer in Calumet City, Illinois. Serna bought himself a white fur coat with the proceeds of this crime.

- On an unknown date Edward Serna robbed Subject 1 of ten pounds of marijuana at gunpoint.

**Julian Guillermo Serna**

- As stated above, in approximately 2010, Salvador Chavez, Julian Serna and Juan Briseno kicked in the door of Subject 11, and stole one ounce of cocaine, a scale used to weigh narcotics, some jewelry and a Star brand 9mm pistol.

- On January 7 or January 8, 2010, Julian Serna and Subject 21 were guarding the residence of Subject 22, a fellow Imperial Gangster. Julian Serna and Subject 21 saw an individual named Eppie Bailey cutting through an alley, and mistakenly took him

to be a rival gang member. Julian Serna and Subject 21 both shot at Eppie Bailey, killing him. This shooting occurred in the rear of 3907 Deal Street in East Chicago, Indiana. Later, when confronted with the fact that he had shot an innocent victim who did not belong to a rival gang and was not a rival drug dealer, Julian Serna stated that Bailey was in the wrong place at the wrong time, and that it was all "part of the game."

- In approximately 2008-2009, Julian Serna shot Subject 23, a member of the Two Six street gang, in the leg. This shooting occurred in the Harbor neighborhood of East Chicago, Indiana.

- On an unknown date, prior to March, 2008, Julian Serna was at a Burger King drive through in East Chicago, Indiana, when he saw Subject 24 and Subject 25, who were members of a "Renegade" faction of the 139th Street Imperial Gangsters. Julian Serna got out of his car with an SKS-style assault rifle and attempted to shoot Subject 24 and Subject 25, but his rifle jammed. Subject 24 and Subject 25 then opened fire on Julian Serna, hitting the white Buick that he was driving several times. Julian Serna drove away and then abandoned his car and fled on foot when the vehicle became disabled.

  - On an unknown date Jason Medina, Julian Serna and Subject 17, an Imperial Gangster, shot at Subject 4 outside of Subject 4's residence in East Chicago, Indiana. During this incident Jason Medina and Julian Serna also accidentally shot at each other.

- Approximately one week prior to the March 25, 2008 homicide of Mario Soriano, Julian Serna and Mario Soriano engaged in a shootout with each other.

1174

**Richard Reyes**

- On an unknown date between 2002-2010 Richard Reyes and a black male committed an unarmed burglary of Subject 16's residence, in an attempt to steal narcotics or drug money. During the course of this robbery Subject 16 shot Richard Reyes in the stomach.

**Vincent Garza**

- As stated above, on July 24, 2005, Salvador Chavez and Vincent Garza were present in the car and active participants when Jason Medina shot and killed Guadalupe Trevino.

- On an unknown date Vincent Garza and Julius Solis shot at Subject 27 and Subject 28, who were both Two Six gang members. Garza and Solis were at the residence of another Imperial Gangster when they got a call informing them that Subject 27 and Subject 28 were on 150th Street in East Chicago, Indiana. Solis and Garza both fired at Subject 27 and Subject 28. After the episode Julius Solis told fellow Imperial Gangsters that he thought that it was funny that Vincent Garza had hit everything except the intended targets.

- On an unknown date Vincent Garza shot at Subject 29 and Subject 30, who were both members of the Spanish Gangster Disciples. The shooting occurred in the vicinity of 149th and Northcote in East Chicago, Indiana. Immediately prior to the shooting, Juan Briseno and Galo Feliciano were having a conflict with Subject 29 and Subject 30, and called out to Vincent Garza to go get a

weapon.  Vincent Garza retrieved a firearm, approached the victims' car and fired into it.  Subject 30 was hit in the arm and the chest, and went to Illinois to receive medical treatment.  East Chicago Police officers were never called to the scene.

**Juan Briseno**

- As stated above, in approximately 2010, Salvador Chavez, Julian Serna and Juan Briseno kicked in the door of Subject 11, and stole one ounce of cocaine, a scale used to weigh narcotics, some jewelry and a Star brand 9mm pistol.

- As stated above, in approximately 2006- 2007, Juan Briseno and Subject 13 were dealing marijuana together.  Subject 13 had a marijuana source of supply send 30 pounds of marijuana to the residence of Subject 14, an Imperial Gangster, in the Hessville neighborhood of Hammond, Indiana. Subject 13 and Juan Briseno lied to the source of supply and told him that the marijuana never arrived.  Juan Briseno and Salvador Chavez split the bulk of the 30 pounds of marijuana between the two of them, but gave some of the marijuana to other Imperial Gangsters.

- In approximately 2008-2009 Juan Briseno utilized a .380 Bersa pistol to shoot a member of the Spanish Gangster Disciples in the leg.  When Juan Briseno attempted to shoot the victim a second time, the gun jammed.

- During the course of the conspiracy Juan Briseno attempted to cook cocaine base, commonly known as "crack cocaine."

- On July 13, 2009, Juan Briseno and Galo Feliciano shot at members of the Spanish Gangster Disciples, who had driven through the 149th Street Imperial Gangster

neighborhood. Juan Briseno utilized a Beretta Model 92 9mm pistol for this shooting, and Galo Feliciano utilized a .38 special revolver.

- In 2006 Juan Briseno, Anthony Baldazo, Galo Feliciano and another member of the Imperial Gangsters broke into a computer lab at Purdue University Calumet, and stole more than ten computers from the computer lab.

- In 2006 Juan Briseno attempted to steal a safe from the Golden Corral restaurant in Schererville, Indiana, but was unable to do so because it was bolted to the ground. Briseno was working at the restaurant at the time.

- In 2006, Juan Briseno, Galo Feliciano and Anthony Baldazo did a burglary of a residence in Griffith Indiana, and stole two pounds of marijuana, a .45 caliber firearm and approximately $2,000. It was this .45 pistol that Baldazo later used in the Juan Murillo homicide.

- In 2010 Juan Briseno, Galo Feliciano and Subject 2 did a burglary of a residence in the Black Oak neighborhood of Gary, Indiana. During the course of this burglary Briseno, Feliciano and Subject 2 stole thirty pounds of marijuana. A girl friend of the victim had set up this burglary.

Evidence of these acts will be presented primarily through testimony from cooperating witnesses. In the instances where the police responded, police reports have been for the most part been provided. In the instances where the police reports have not been provided, the government will do so as soon as possible. The identity of all cooperating witnesses and their interview reports and *Jencks* will be produced in a timely fashion as ordered by the court.

Respectfully submitted,

 DAVID CAPP
United States Attorney


By:     /s/ David J. Nozick
        DAVID J. NOZICK
        Assistant U.S. Attorney
        5400 Federal Plaza, Suite 1500
        Hammond, Indiana 46320
        (219) 937-5500

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

UNITED STATES OF AMERICA     )
                                    )
        v.                   )      NO. 2:11 CR 77 PPS
                                      )
JUAN BRISENO, ET AL.        )

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the government's Notice of Intent to Introduce Enterprise Evidence was electronically filed with the Clerk of the Court using the CM/ECF system which sent notification of said filing to all counsel of record.

By:    /s/ Janet L. Eisenmann
        Janet L. Eisenmann
        U.S. Attorney's Office
        5400 Federal Plaza, Suite 1500
        Hammond, Indiana 46320
        (219) 937-5500

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | NO. 2:11 CR 77 PPS |
| | ) | |
| JUAN BRISENO, et al. | ) | |

GOVERNMENT'S EVIDENTIARY PROFFER SUPPORTING THE
ADMISSIBILITY OF CO-SCHEMER AND AGENT STATEMENTS

The UNITED STATES OF AMERICA, by its attorney, DAVID CAPP, United States Attorney for the Northern District of Indiana, respectfully submits this written proffer, pursuant to the provisions of Federal Rule of Evidence 801, including Federal Rules of Evidence 801(d)(2)(D) and 801(d)(2)(E), and *United States v. Santiago*, 582 F.2d 1128 (7th Cir. 1987), of the government's evidence supporting the admission of co-schemers' and agents' statements at trial. This proffer sets forth a summary of the evidence that the government will offer at trial relating to a scheme among defendants Juan Briseno, Galo Benjamin Feliciano, Guillermo Briseno, Alejandro Lara, Justin Weaver, Michael Castillo, Kelvin Beltran, David Almaraz, Joseph Rene Torres, Jason Medina, Edward Raye Serna, Robert Lockhart, Armando Jose Velasquez, Anthony Baldazo, Salvador Chavez, Raymond Campos, Ace Cortez, Julian Guillermo Serna, Julius Solis, Darmaile Cortez Sutton, Eddie Torres, Richard Reyes and Vincent Garza who acted together and with others to commit offenses against the United States, namely racketeering, murder, attempted murder, armed robbery, and drug trafficking. This proffer also summarizes the defendants' and their co-schemers' statements that furthered the defendants' criminal scheme.

This proffer sets forth the agency principles under which the statements of these additional actors are admissible pursuant to Rule 801(d)(2)(D) and 801(d)(2)(E) as statements of co-schemers and agents. The legal principles governing admissibility of co-conspirator statements apply to the racketeering enterprise and drug conspiracy in this case. This proffer begins by discussing the law governing the admissibility of co-schemer statements under Federal Rule of Evidence 801(d)(2)(E), and the agency provisions of Rule 801(d)(2)(D). Next, this proffer summarizes some of the evidence supporting the admission of co-schemers' statements and agents' statements.

The government is not detailing all of its evidence showing the existence of the scheme charged in the Fourth Superseding indictment, all of the statements that were made in furtherance of the scheme, or all statements made by agents within the scope of the agency. Instead, this proffer outlines the law governing the admissibility of such statements, provides background to the Court for evaluating the admissibility of these statements, and highlights examples of its evidence. In this manner, the government will establish to the Court the existence of the evidence available to complete the necessary foundation at trial and the roles of various witnesses, as well as the bases for admission.

## I. THE LAW GOVERNING THE ADMISSIBILITY OF CO-SCHEMER AND AGENTS' STATEMENTS.

Rule 801(d)(2)(E) of the Federal Rules of Evidence provides that a "statement" is not hearsay if it "is offered against a party" and is "a statement by a coconspirator of a party during the course and in furtherance of the conspiracy." The admission of a co-conspirator statement against a defendant is proper where the government establishes by a preponderance of evidence

that:   (1) a conspiracy or scheme existed; (2) the defendant and the declarant were members of that particular conspiracy or scheme; and (3) the statement was made during the course and in furtherance of the conspiracy or scheme.   *See, e.g., Bourjaily v. United States*, 483 U.S. 171, 175 (1987); *United States v. Westmoreland*, 312 F.3d 302, 309 (7th Cir. 2002).

A.    **The *Santiago* Proffer Is the Approved Method of Proffering Co-Schemer Statements.**

In this Circuit, the preferred way for the government to makes its preliminary factual showing as to the admissibility of such statements is by filing a pretrial written proffer of the government's evidence.   *See, e.g., United States v. Hoover*, 246 F.3d 1054, 1060 (7th Cir. 2001); *United States v. Irorere,* 228 F.3d 816, 824 (7th Cir. 2000).   In making its preliminary factual determinations, the court must consider the statements themselves as evidence of a joint scheme and whether the statements the government seeks to admit were made in furtherance of that scheme. *United States v. Brookins*, 52 F.3d 615, 623 (7th Cir. 1995); *United States v. Maholias*, 985 F.2d 869, 877 (7th Cir. 1993).   Indeed, the court may consider all non-privileged evidence. *United States v. Lindemann*, 85 F.3d 1232, 1238 (7th Cir. 1996).

B.    **Co-Schemer Statements Are Admissible as Nonhearsay Despite the Absence of a Formal Conspiracy Charge, and Regardless of Criminal Intent of Each Co-Schemer.**

Statements may be admitted under Rule 801(d)(2)(E) notwithstanding the lack of any formal conspiracy charge.   *See, e.g., Godinez*, 110 F.3d at 454; *Santiago*, 582 F.2d at 1130.   In addition, there is no requirement that each member of the venture share a criminal intent for the co-schemer rule to apply to statements that members made in furtherance of the scheme.   These two rules are based on the very nature of the co-conspirator doctrine:

> The distinction should be noted between "conspiracy" as a crime and the co-conspirator exception to the hearsay rule.   Conspiracy as a crime comprehends

more than mere joint enterprise.  It also includes other elements, such as a meeting of the minds, criminal intent and, where required by statute, an overt act. . . .  The co-conspirator exception to the hearsay rule, on the other hand, is merely a rule of evidence founded, to some extent, on concepts of agency law.  It may be applied in both civil and criminal cases. . . . Its rationale is the common sense appreciation that a person who has authorized another to speak or to act to some joint end will be held responsible for what is later said or done by his agent, whether in his presence or not.

<center>*      *      *</center>

The substantive criminal law of conspiracy, though it obviously overlaps in many areas, simply has no application to this evidentiary principle. Thus, once the existence of a joint venture for an illegal purpose, or for a legal purpose using illegal means, and a statement made in the course of and in furtherance of that venture have been demonstrated by a preponderance of the evidence, it makes no difference whether the declarant or any other "partner in crime" could actually be tried, convicted and punished for the crime of conspiracy.

*United States v. Gil*, 604 F.2d 546, 549-550 (7th Cir. 1979) (citations omitted).

This distinction was also explored in *United States v. Coe*, 718 F.2d 830 (7th Cir. 1983).

In *Coe*, the court explained that a so-called co-conspirator statement's admissibility does not depend on the substantive law of conspiracy:

Conspiracy as an evidentiary rule differs from conspiracy as a crime.  The crime of conspiracy comprehends much more than just a joint venture or concerted action, whereas the evidentiary rule of conspiracy is founded on concepts of agency law. . . .  Recognizing this, some courts refer to the coconspirator exception as the "joint venture" or "concert of action" exception.  . . .  A charge of criminal conspiracy is not a prerequisite for the invocation of this evidentiary rule. . . .   Indeed, it may be invoked in civil as well as criminal cases.    . . .

The proposition that the government did have to establish by a preponderance of independent evidence was that [the individuals] . . . were engaged in a joint venture--that there was a "combination between them . . . ."

*Coe*, 718 F.2d at 835 (citations omitted).[11]

---

[1]*See also Hitchman Coal & Coke Co. v. Mitchell*, 245 U.S. 229, 249 (1917)(explaining origin of the co-conspirator rule in the law of partnership)("the act or declaration of one, in furtherance of the common object, is the act of all, and is admissible as primary and original

**C.    The Supreme Court's *Crawford* Decision Has Not Changed the Admissibility of <u>Co-Schemer Statements.</u>**

The Supreme Court's decision in *Crawford   v. Washington*, 541 U.S. 36 (2004), changed much of the law concerning out-of-court testimonial statements, but it did not affect the admissibility of co-schemer statements.    In *Crawford*, the prosecution introduced a tape-recorded statement made before trial by the defendant's wife to law enforcement.    *Id.* at 38.   At trial, however, the wife was unavailable as a witness due to the state's spousal privilege law, and thus the defendant did not have an opportunity to cross-examine her.    *Id.* at 40.    The Court ruled that admission of the statement violated the Confrontation Clause, holding that where the government offers an unavailable declarant's hearsay that is "testimonial" in nature, the Confrontation Clause requires actual confrontation, that is, cross-examination, regardless of how reliable the statement may be.    *Id.* at 51-52.    As examples of "testimonial" statements, the Court listed prior testimony at a preliminary hearing, before a grand jury, or at a former trial, and to police interrogations.    *Id.* at 68.

The rule in *Crawford* does not apply, however, to statements that are not hearsay.[2] Thus, the Seventh Circuit has squarely held that *Crawford* does not apply to – and did not change the law relating to – co-schemer statements.    In *United States v. Jenkins*, 419 F.3d 614 (7th Cir. 2005), the court noted:

---

evidence against them.").

[2]The rule in *Crawford* also does *not* apply where:   (1) a statement, though testimonial in nature, is not offered for the truth of the matter asserted, 541 U.S. at 59 n.9; (2) the declarant testifies at trial and is subject to cross-examination regarding the prior statement, *id.* at 59 n.9; (3) the statement is non-testimonial, *id.* at 60; or (4) the declarant is unavailable to testify and the defendant had a prior opportunity for cross-examination, *id.* at 59.    Another exception to the confrontation requirement applies where the defendant procured the declarant's unavailability, that is, "forfeiture by wrong-doing," *see id.* at 62; Fed. R. Evid. 804(b)(6).

> As to the Confrontation Clause argument, *Crawford* does not apply. The recordings featured the statements of co-conspirators. These statements, by definition, are not hearsay. *Crawford* did not change the rules as to the admissibility of co-conspirator statements.

419 F.3d at 618. Because co-schemer statements are not "testimonial" hearsay statements, *Crawford* is not implicated, and those statements may be admitted without offending the Sixth Amendment.

**D.      The Proper Standard for Admissibility Is Preponderance of the Evidence.**

A district court's preliminary determination of admissibility for purposes of Rule 801(d)(2)(E) is distinct from the standard required in determining on appeal whether sufficient evidence exists to uphold a jury verdict. The standard to be applied in the context of admissibility under Rule 801(d)(2)(E) is a preponderance-of-the-evidence standard. *Lindemann*, 85 F.3d at 1238 (*citing Bourjaily*, 438 U.S. at 175-76); *Godinez*, 110 F.3d at 454).

**E.      Principles for Determining Membership in and Existence of the Criminal Scheme.**

1.      *The court may consider the proffered statements themselves.*

A district court may consider the proffered statements themselves in determining the existence of a scheme, and a defendant's participation in it. *Bourjaily,* 483 U.S. at 180; *United States v. de Ortiz*, 907 F.2d 629, 633 (7th Cir. 1990). However, the government typically must present some evidence, independent of the statements. *Lindemann*, 85 F.3d at 1238.

2.      *Both direct and circumstantial evidence can be considered.*

Once the scheme is established, the evidence may be either direct or circumstantial. *Irorere*, 228 F.3d at 823; *United States v. Patterson*, 213 F. Supp. 2d 900, 910-11 (N.D. Ill. 2002)(Bucklo, J.), *aff'd*, 348 F.3d 218, 225-26 (7th Cir. 2003). Indeed, "[b]ecause of the secretive character of conspiracies, direct evidence is elusive, and hence the existence and the defendants' participation can usually be established only by circumstantial evidence." *United*

*States v. Redwine*, 715 F.2d 315, 319 (7th Cir. 1983). *See also Lindemann*, 85 F.3d at 1238 (secretive nature of conspiracies one reason for conspirator exception to hearsay rule).

In this case, the evidence is both direct and circumstantial. The defendants conducted their criminal enterprise through soldiers all the way up to the highest-ranking members of the Imperial Gangsters. Many of those individuals will testify about conversations with defendants and other co-schemers. In addition, defendants acted to conceal their activities by talking in code, by intimidating witnesses, and by threatening members to maintain discipline. The circumstances surrounding those activities are circumstantial evidence of the defendants' intent.

3.     *Requirements for determining if a person has joined the scheme*.

A defendant joins a criminal scheme if he agrees with another person to one or more of the common objectives of the scheme; it is immaterial whether the defendant knows, has met or has agreed with every co-schemer. *United States v. Boucher*, 796 F.2d 972, 975 (7th Cir. 1986); *United States v. Balistrieri*, 779 F.2d 1191, 1225 (7th Cir. 1985); *see also Rodriguez*, 975 F.2d at 411 (defendant must have intended to join and associate himself with the conspiracy's criminal design and purpose). The government need not prove, however, that a defendant knew each and every detail of the scheme or played more than a minor role in the scheme. *United States v. Sims*, 808 F. Supp. 620, 623 (N.D. Ill. 1992)(Alesia, J.). As the Supreme Court has said:

> A conspiracy may exist even if a conspirator does not agree to commit or facilitate each and every part of the substantive offense. . . . The partners in the criminal plan must agree to pursue the same criminal objective and may divide up the work, yet each is responsible for the acts of each other. . . . If conspirators have a plan which calls for some conspirators to perpetrate the crime and others to provide support, the supporters are as guilty as the perpetrators.

*Salinas v. United States*, 522 U.S. 52, 63-4 (1997)(citations omitted).[13]

---

[3] *See also United States v. Liefer*, 778 F.2d 1236, 1247 n.9 (7th Cir. 1985); *United States v. Towers*, 775 F.2d 184, 189 (7th Cir. 1985).

In this case, defendants acted jointly as part of the Imperial Gangsters.  They had different functions.  Some individuals, such as Eddie Torres, Juan Briseno, Guillermo Briseno, and Galo Feliciano, served as leaders of the 149th Street Imperial Gangsters, while others were merely soldiers.  Similarly, individuals such as Ace Cortez served as a leader of the 139th Street Imperial Gangsters, while others served as soldiers, acting at his command.

A defendant may be found to have participated in a scheme even if he joined or terminated his relationship with others at a different time than another defendant or co-schemer. *United States v. Ramirez*, 796 F.2d 212, 215 (7th Cir. 1986); *United States v. Noble*, 754 F.2d 1324, 1329 (7th Cir.1985).[4]  A district court may consider the conduct, knowledge, and statements of the defendant and others in establishing participation in a scheme.  A single act or conversation, for example, can suffice to connect the defendant to the scheme if that act leads to the reasonable inference of intent to participate in an unlawful enterprise.  *See, e.g., Sims*, 808 F. Supp. at 623.[5]  Statements made during the course of and in furtherance of a scheme, even in its embryonic stages, are admissible against those who arrive late to join a going concern. *United States v. Potts*, 840 F.2d 368, 372 (7th Cir. 1987).  A schemer who has become inactive in the scheme nevertheless is liable for his co-schemers' further statements unless he openly

---

[4] A defendant, even if not an "agreeing" member of a conspiracy, may nonetheless be found guilty of conspiracy if he knew of the conspiracy's existence at the time of his acts, and his acts knowingly aided and abetted the business of the conspiracy, *see United States v. Scroggins*, 939 F.2d 416, 421 (7th Cir. 1991); *Sims*, 808 F. Supp. at 623 n.1, even if the defendant was not charged with aiding and abetting, *see United States v. Kasvin*, 757 F.2d 887, 890-91 (7th Cir.1985).

[5] Similarly, efforts by an alleged co-schemer to conceal a scheme may support an inference that he joined the scheme while it was still in operation.  *See Redwine;* 715 F.2d at 321; *United States v. Robertson*, 659 F.2d 652, 657 (5th Cir. 1981).

disavows the scheme or reports it to the police. *United States v. Feldman*, 825 F.2d 124, 129 (7th Cir. 1987). *See also United States v. Andrus,* 775 F.2d 825, 850 (7th Cir. 1985).

**F.    <u>Statements Made in Furtherance of the Scheme</u>.**

In determining whether a statement was made "in furtherance" of the scheme, courts look for a reasonable basis upon which to conclude that the statement furthered the scheme's goals. *United States v. Johnson*, 200 F.3d 529, 533 (7th Cir. 2000). Under the reasonable-basis standard, a statement may be susceptible to alternative interpretations and still be "in furtherance" of the scheme; the statement need not have been exclusively, or even primarily, made to further the scheme in order to be admissible under the co-schemer exception. *See, e.g., Johnson*, 200 F.3d at 533 (citing *United States v. Stephenson,* 53 F.3d 836, 845 (7th Cir. 1995)).

The Seventh Circuit has found a wide range of statements to satisfy the "in furtherance" requirement. *See, e.g.*, *United States v. Cozzo*, No. 02 CR 400, 2004 U.S. Dist. LEXIS 7391 (N.D. Ill. April 16, 2004)(Zagel, J.)(collecting cases). In general, a statement that is "part of the information flow between conspirators intended to help each perform his role" is admissible under Rule 801(d)(2)(E). *United States v. Santos*, 20 F.3d 280, 286 (7th Cir. 1994), *quoting United States v. Johnson*, 927 F.2d 999, 1001 (7th Cir. 1991); *accord*, *United States v. Gajo*, 290 F.3d 922, 929 (7th Cir. 2002). These include statements made: (1) to identify other members of the scheme and their roles, *United States v. Roldan-Zapata,* 916 F.2d 795, 803 (2d Cir. 1990); *United States v. Magee*, 821 F.2d 234, 244 (5th Cir. 1987); (2) to recruit potential co-schemers, *United States v. Curry*, 187 F.3d 762, 766 (7th Cir. 1999); (3) to control damage to an ongoing scheme, *United States v. Van Daal Wyk,* 840 F.2d 494, 499 (7th Cir. 1988); *Kapp*, 2003 U.S. Dist. LEXIS 3989, at *3; (4) to keep co-schemers advised as to the progress of the scheme, *Potts*, 840 F.2d at 371; *Kapp*, 2003 U.S. Dist. LEXIS 3989, at *3; (5) to conceal the criminal objectives of

the scheme, *United States v. Kaden*, 819 F.2d 813, 820 (7ᵗʰ Cir. 1987); (6) to plan or to review a co-schemer's exploits, *United States v. Molt*, 772 F.2d 366, 368-69 (7ᵗʰ Cir. 1985); or (7) as an assurance that a co-schemer can be trusted to perform his role. *United States v. Pallais*, 921 F.2d 684, 688 (7ᵗʰ Cir. 1990); *Van Daal Wyck*, 840 F.2d at 499. The Seventh Circuit has also said that "[s]tatements made to keep coconspirators informed about the progress of the conspiracy, to recruit others, or to control damage to the conspiracy are made in furtherance of the conspiracy." *Stephenson,* 53 F.3d at 845. *Accord, United States v. Curtis*, 37 F.3d 301, 307 (7ᵗʰ Cir. 1994).

      1.     *Statements made to execute the scheme.*

Statements made by co-schemers to conduct the business of the scheme and to accomplish its goals are "classic examples of statements made to conduct and further" a scheme. *Cox*, 923 F.2d at 527. Statements such as these, which are "intended to promote the conspiratorial objectives," should be admitted pursuant to Rule 801(D)(2)(E).[16] Statements that prompt the listener to act in a manner that facilitates the carrying out of the scheme are also made "in furtherance" of the scheme.[17] Whether a particular statement tends to advance the objectives of the scheme or to induce the listener's assistance is determined by an examination of the context in which it is made. *Garlington v. O'Leary*, 879 F.2d 277, 284 (7ᵗʰ Cir. 1989).

---

[16] *United States v. Sinclair*, 109 F.3d 1527, 1534 (10ᵗʰ Cir. 1997); *accord, United States v. Shores*, 33 F.3d 438, 444 (4ᵗʰ Cir. 1994).

[17] *United States v. Monus*, 128 F.3d 376, 392 (6ᵗʰ Cir. 1997); *United States v. Simmons*, 923 F.2d 934, 945 (2d Cir. 1991); *United States v. Smith*, 833 F.2d 213, 219 (10ᵗʰ Cir. 1987).

2.      *Statements regarding the scheme's activities.*

Statements "describing the purpose, method, or criminality of the conspiracy," are made in furtherance of the scheme because co-schemers make such statements to guide each other toward achievement of the objectives of the scheme. *United States v. Ashman*, 979 F.2d 469, 489 (7th Cir. 1992). Similarly, statements that are part of the information flow between co-schemers made in order to help each co-schemer perform his role are "in furtherance" of the scheme. *See, e.g.*, *Godinez,* 110 F.3d at 454; *Garlington*, 879 F.2d at 283-84; *Van Daal Wyk,* 840 F.2d at 499. Statements to assure that a co-schemer can be trusted to perform his role also satisfy the "in furtherance" requirement. *See, e.g.*, *United States v. Romo*, 914 F.2d 889, 897 (7th Cir. 1990); *de Ortiz*, 907 F.2d at 635-36 (7th Cir. 1990).

3.      *Statements to recruit co-schemers.*

Statements made to recruit potential members of the scheme are made "in furtherance" of the scheme. *Curry*, 187 F.3d at 766; *Godinez*, 110 F.3d at 454.

4.      *Statements regarding the activities of other co-schemers designed to inform or reassure the listener.*

Statements made by schemers to other individuals who participate in, or interact with, the scheme contribute to the scheme. *See Van Daal Wyk*, 840 F.2d at 499 (wholesaler instructed his courier not to deliver any additional quantities of cocaine to the defendant, a dealer).

> The exchange of information is the lifeblood of a conspiracy, as it is of any cooperative activity, legal or illegal. Even commenting on a failed operation is in furtherance of the conspiracy, because people learn from their mistakes. Even identification of a coconspirator by an informative nickname. . . is in furtherance of the conspiracy, because it helps to establish, communicate, and thus confirm the lines of command in the organization. Such statements are "part of the information flow between conspirators intended to help each perform his role," and no more is required to make them admissible.

*Pallais*, 921 F.2d at 688.   The same logic dictates that discussions concerning a scheme's successes are admissible as statements in furtherance of the scheme.  *See id.; Van Daal Wyk*, 840 F.2d at 499.

Statements intended to reassure the listener regarding the progress or stability of the scheme also further the scheme.  *United States v. Sophie*, 900 F.2d 1064, 1073 (7th Cir. 1990) (description of past drug deals).  Likewise, statements made to reassure and calm the listener may further the scheme, *see Garlington*, 879 F.2d at 284; *United States v. Molinaro*, 877 F.2d 1341, 1343-44 (7th Cir. 1989) (upholding admission of statements designed to iron out disputed details of the conspiracy and to control the damage apparently done to the conspiracy).

5.        *Statements relating to the progress and past accomplishments of the scheme*.

Statements made by co-schemers concerning past exploits by members of the scheme are in furtherance of the scheme when made to assist in managing and updating other members of the scheme.  *Potts*, 840 F.2d at 371; *Molt*, 772 F.2d at 368-69.   Similarly, statements regarding a co-schemer's failure to fully accomplish the objective of the scheme are admissible "as updates on the status of the conspiracy" and how that status affected the future of the scheme.  *United States v. Doyle*, 771 F.2d 250, 256 (7th Cir. 1985).

6.        *Statements to conceal the criminal objectives of the scheme*.

Finally, statements made to conceal the criminal objectives of the scheme are made "in furtherance" of the scheme where, as here, ongoing concealment is one of its purposes.  *See, e.g., United States v. Maloney*, 71 F.3d 645, 660 (7th Cir. 1995); *Kaden*, 819 F.2d at 820. "Avoiding detection by law enforcement officials clearly furthers the aims of a conspiracy." *United States v. Troop*, 890 F.2d 1393, 1404 (7th Cir. 1989).   Statements made to control

damage to an ongoing scheme have also been found to have been made in furtherance of the scheme.   *See Stephenson*, 53 F.3d at 845; *Van Daal Wyk*, 840 F.2d at 499.

**G.     Alternative Bases for Admissibility of Statements.**

The government believes that the statements of co-schemers set forth in this proffer should be admitted as non-hearsay under the co-schemer doctrine.   There are alternative bases, however, for admission of many of the statements.   These bases do not require a Rule 801(d)(2)(E) analysis.

1.      *Agency admissions pursuant to Rule 801(d)(2)(D).*

Many of the participants in the scheme were acting as agents for the defendants.   Federal Rule of Evidence 801(d)(2)(D) sets forth the evidentiary foundation for admission of statements by agents against their principals − including criminal defendants.  *See Feldman*, 825 F.2d at 127-29.[18/]   Rule 801(d)(2)(D) provides that a statement is not hearsay if it is offered against a party and is "a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship."[19/]   Thus, out-of-court statements by agents of a defendant may come into evidence as non-hearsay admissions against the defendant principal when the principal is an individual who directs the conduct of the entity and is otherwise directing and supervising the conduct of his employee subordinates.  *See Wilkinson*, 920 F.2d at 1565; *United States v. Ramsey*, 785 F.2d 184, 191 (7th Cir. 1986)(statements by "executive assistants" were admissible against defendant corporation under Rule 801(d)(2)(d)).   Thus, for purposes of admission under Rule 801(d)(2)(D), a statement made by an agent is admissible against the principal, provided that the agent's statement was made within the scope of the agency.[110/]

---

[8/]This is different than the substantive principals applicable to criminal liability for an entity.   For purposes of corporate criminal liability, it is not necessary to show that the particular act was itself authorized or directed by the entity, *see Seventh Circuit Federal Jury Instr. Section 5.03,* but is necessary to show that the agent was motivated, at least in part, by an intent to benefit the corporation.   *See, e.g., United States v. One Parcel Of Land Located At 7326 Highway 45 North, Three Lakes, Wisconsin,* 965 F.2d 311, 316 (7th Cir. 1992); *United States v. Automated Med. Labs.*, 770 F.2d 399, 407 (4th Cir. 1985).

[9/]A strict agency analysis is not contemplated by the terms of Rule 801(d)(2)(D).  *Wilkinson v. Carnival Cruise Lines, Inc.*, 920 F.2d 1560, 1565-66 (11th Cir. 1991).   The Rule broadened the traditional view so that it is no longer necessary to show that an employee or agency declarant possesses "speaking authority" − tested by the usual statements of agency law − before a statement can be admitted against the principal.   *Wilkinson*, 920 F.2d at 1565.  *Cf. Aliotta v. National R.R. Pass. Corp.*, 315 F.3d 756, 762-63 (7th Cir. 2003)(discussing

In this case, as noted below, the defendants worked through a number of agents to effectuate their criminal enterprise.  To the extent these agents' statements are being offered for the truth of the matters asserted, their statements should be admitted pursuant to Rule 801(d)(2)(D).

2.      *Defendants' own statements*.

A defendant's own admissions are admissible against him pursuant to Fed. R. Evid. 801(d)(2)(A), without reliance on the co-schemer-statement rule.[111/]  *Maholias*, 985 F.2d at 877.  A defendant's own admissions, moreover, are relevant to establishing the factual predicates for the admission of co-schemer statements against him.  *See, e.g., Godinez*, 110 F.3d at 455; *Potts*, 840 F.2d at 371-72.[112/]

## II.   THE GOVERNMENT'S PROFFER REGARDING THE EXISTENCE OF A SCHEME AND BASIS OF AGENCY ADMISSIONS

As set forth in the Fourth Superseding Indictment, the criminal enterprise operated through the statements and actions of the charged defendants and uncharged co-schemers spanning over at least eleven years.   The government's theory is that the Imperial Gangsters were a criminal enterprise that operated in an organized fashion in East Chicago, Indiana for

---

admissibility of agent's statements).

[10/]  With respect to statements made by certain cooperating witnesses, among others, another basis for admission is Rule 801(d)(2)(C), which provides for the admission of "authorized" statements within the context of an existing agency relationship.  *See Feldman*, 825 F.2d at 127.

[11/]   Rule 801(d)(2)(A) provides in pertinent part that a "statement" is not hearsay if "[t]he statement is offered against a party and is . . . the party's own statement, in either an individual or a representative capacity."

[12/]  Other sections of Rule 801(d)(2) provide alternative bases of admissibility that may apply.   Rule 801(d)(2)(B), for example, provides for the admissibility of "adopted" statements.

years, committing acts of violence and drug trafficking.   This evidence will be presented from a variety of sources.   The government will call to the stand at least seven members of the Imperial Gangsters who have pled guilty in this case and are cooperating with the government.   The government will also call to the stand former members and associates of the Imperial Gangsters who were not charged in this case.   The government will also introduce testimony and physical evidence from law enforcement witnesses who investigated the various crimes alleged.   In addition, the government will introduce evidence from numerous independent witnesses to the murder and attempted murders committed by the defendants in this case.

**The Rules and Structure of the Imperial Gangsters**

The evidence at trial will be that the Imperial Gangsters are a Chicago-based gang, with factions around the country, including Northwest Indiana and Florida.   The Imperial Gangsters belong to the "Folk Nation" of gangs, which has traditionally been in conflict with the "People Nation" of gangs.   Despite belonging to the "Folk Nation" of gangs, Imperial Gangsters were in constant conflict with virtually all other gangs, regardless of "Folk" or "People" affiliation. Traditional rivals of the Imperial Gangsters are the Latin Kings, the Two Six Nation, the Spanish Gangster Disciples, the Ambrose Street Gang and the Black P-Stones Nation.

In order to join the Imperial Gangsters, one must serve for a period of time as a "shorty" or prospective member.   During this time period the "shorty" must obey the direction and commands of the members of the gangs.   Once it is decided by the members of the Imperial Gangsters that a "shorty" is ready to be "blessed in" to the Imperial Gangsters, the "shorty" is initiated by enduring a beating, or "violation," by full-fledged members of the gang.   This

violation can consist of either a certain number of punches to the chest while the "shorty" stands up against a wall, or a "head to toe" beating for a certain number of minutes by two or more members of the gang.

Each faction has a leader, who has the ultimate decision-making authority. Each faction also has a treasurer who is in charge of collecting dues, and an enforcer, who is in charge of meting out punishments or "violations." Each faction also has a ranking member who is in charge of supervising and training the "shorties" until they are "blessed in" or have their "coming home" as full members of the Imperial Gangsters.

Imperial Gangsters have regular meetings, which can occur in a member's house, out on "the block" or in a park or cemetery. Attendance at these meetings was mandatory, and an individual would be violated, meaning receive a physical beating, if he repeatedly missed meetings without having a valid excuse. At the meetings gang members would discuss various gang business, including drug dealing, police activity, violations of gang rules, and ongoing physical disputes with rival gangs.

Each Imperial Gangster needed to pay dues to the Imperial Gangsters. The amount of dues to be paid by each member varied, depending on whether or not they had a job and whether or not they were actively selling drugs. An individual who was selling large quantities of drugs would have to pay more in dues than one who was not. The dues would go towards, amongst other things, purchasing guns to be used by the gang, purchasing narcotics to be sold by the gang, paying for attorneys and bonds for incarcerated gang members, and putting money on the commissary accounts of incarcerated members.

Each member of the Imperial Gangsters was required to "post up" in their neighborhood, meaning that they would have to be out on the streets in their neighborhood, on the lookout for

the police, rival gang members, and drug dealers who were selling drugs in their neighborhood without their permission. If a member was not putting in an adequate time "posting up" in the Imperial Gang neighborhood, he would be violated. While "posting up" in the neighborhood, an Imperial Gangster was required to physically confront any rival gang member that they saw. If the Imperial Gangster had a gun on him or in the vicinity, he was required to shoot the rival gang member, in an effort to kill him. If the Imperial Gangster did not have a gun on him while posted up, it was his responsibility to go get a gun, or fight the rival gang member with another weapon or with his fists. An Imperial Gangster would be violated if he allowed a rival gang member to walk through Imperial Gangster "turf" without shooting at him or physically assaulting him.

In addition, the Imperial Gangster rules dictated that no one could sell drugs in their neighborhood, other than Imperial Gangsters. An exception to this rule could be made if the individual selling the drugs was being supplied by the Imperial Gangsters. Any Imperial Gangster who allowed other drug dealers to sell in their neighborhood would be violated.

**Factions of the Imperial Gangsters**

There are three factions of the Imperial Gangsters that operate in Northwest Indiana. This indictment charges members of both the 149th Street Imperial Gangsters and the 139th Street Imperial Gangsters. The 149th Street Imperial Gangsters are based on the South side of East Chicago, in the vicinity of 149th Street and Northcote. The 139th Street Imperial Gangsters are based in the Harbor Section of East Chicago. Both factions are part of the same criminal enterprise. Guns would frequently be traded back and forth between the two factions of the Imperial Gangsters, and members of each faction would frequently supply each other with

narcotics.   In addition, members of each faction would frequently "post up" in the other faction's

neighborhood, assisting them in securing their neighborhood.   At various times during the

course of the charged conspiracy there were conflicts between the two factions, which sometimes

resulted in violence.

There is also a third faction of the Imperial Gangsters, although none of them are charged

in this indictment.   At some point in the early 2000s a conflict arose between various members

of 139th Street Imperial Gangsters, causing some individuals to break off and form their own

"Renegade" faction of the 139th Street Imperial Gangsters.   Members of this "Renegade" faction

of the Imperial Gangsters include but are not limited to homicide victim Mario Soriano, Subject

4, Subject 7, the son of Subject 16, Subject 24 and Subject 25.   No members of this "Renegade"

faction were charged in this indictment largely because during a large part of the time frame

alleged in the charged conspiracies they were in conflict with the 139th Street Imperial Gangsters.

While there was no established rule on the matter, many members of the "Renegade" 139th

Street Imperial Gangsters got along with the 149th Street Imperial Gangsters and with members

of the Two Six street gang.

**Homicides Committed in Furtherance of the Conspiracy**

During the course of the conspiracy the Imperial Gangsters committed numerous

homicides in furtherance of the conspiracy.   The government will introduce evidence at trial that

the charged defendants in this case committed fifteen homicides in furtherance of their criminal

enterprise.   A majority of these homicides involved the targeting killing of rival gang members.

The evidence at trial will be that on July 24, 2004, Ace Cortez shot and killed Anuar Paez a/k/a

"Bronco" because Paez was a rival Two Six gang member who had just shot at Cortez and other

Imperial Gangsters minutes before.   On July 24, 2005, Jason Medina, Vincent Garza and Salvador Chavez killed Guadalupe Trevino, one of the leaders of the Two Six gang.   On September 16, 2007, Richard Reyes drove to the U.S. Bar, where he knew that Rene Alonzo was drinking, and shot and killed him.   The evidence at trial will be that Rene Alonzo was believed to be a Latin King, and that he had had conflicts with Imperial Gangsters in the past.   On September 26, 2007, David Almaraz drove Juan Briseno to the residence of Latin King Luis Ortiz, where Juan Briseno knocked on Ortiz's door, then shot and killed him.

On March 28, 2008, after numerous shootings back and forth between members of the 139th Street Imperial Gangsters and the "Renegade" faction of the 139th Street Imperial Gangsters, Julian Serna shot and killed Mario Soriano.   Three months later, on June 3, 2008, Juan Briseno was displeased that a Latin King had moved into the 149th Street Imperial Gangster neighborhood.   Juan Briseno and Vincent Garza saw Miguel Mejias and Michael Sessum in the 149th Street Imperial Gangster neighborhood, and shot and killed them both.   Immediately after committing this double homicide Briseno heard noises from inside the house, and shot through the door.   One of his shots hit Victim 1 in the arm, narrowly missing the head of the infant that she was holding while trying to get it to safety.   The evidence at trial will be that Mejias was either a Latin King or a former Latin King, and that Michael Sessum had some marijuana on him when he was killed and was about to sell marijuana to a customer.   On February 7, 2010, Juan Briseno again shot and killed a rival gang member when he, Galo Feliciano, Robert Lockhart and Subject 39 learned that Two Six gang member Miguel Colon was at a party in the Harbor neighborhood of East Chicago.   Galo Feliciano drove Juan Briseno, Lockhart and Subject 39 to the location of the party, where they lay in wait for Colon to exit.   When Colon exited the party, Briseno and Lockhart shot and killed him.

The evidence at trial will be that on at least two occasions, members of the Imperial Gangsters thought that they were shooting rival gang members but ended up shooting the wrong individual.   On July 21, 2007, Salvador Chavez shot and killed a man named Louis Gonzalez, who was not affiliated with any gang.   The evidence at trial will be that Chavez thought that Gonzalez was somebody else.   Three years later, Julian Serna and Subject 21 made an equally tragic mistake, shooting and killing a man named Eppie Bailey on January 8, 2010, thinking that he was a rival gang member.   Like Gonzalez, Bailey was neither a gang member nor a rival drug dealer.   This string of mistaken identity shootings continued on March 26, 2010, when Joseph Torres shot and killed Jesus Alvarez, in the mistaken belief that he was someone else.   Galo Feliciano was the driver for this shooting.

As stated above, the Imperial Gangsters had a rule that no one could sell drugs in their neighborhood without their permission.   On October 9, 2008, Juan Briseno shot and killed Harris Brown, who he believed was selling drugs in the neighborhood of the 149th Street Imperial Gangsters.   Roughly two years later, on June 10, 2010, Juan Briseno again encountered someone who he believed was selling drugs in the 149th Street Imperial Gangster neighborhood, and shot and killed Latroy Howard, this time on video tape.   The evidence at trial will show that Latroy Howard had "fake" crack cocaine on him when he was killed, and that he was wearing the colors of the Black P-Stone gang and associating with them shortly before his death.

Two of the homicides that we will hear about at trial will not fit neatly into either above category above.   On February 9, 2002, Ace Cortez, the leader of the 139th Street Imperial Gangsters directed Raymond Campos and Subject 7 to shoot and kill Steven Rodriguez a/k/a "Little Jeremy," an individual who was either a member of the Imperial Gangsters or affiliated with them.   The evidence at trial will be that Cortez and other members of the 139th Street

Imperial Gangsters were suspicious of the fact that Steven Rodriguez had a brother who was a member of the Two Six gang.

In addition, the government will introduce evidence at trial that on March 22, 2007, Galo Feliciano and Anthony Baldazo shot and killed Juan Murillo, after Murillo attempted to stop Guillermo Briseno from stealing a snowblower that belonged to Murillo's neighbor.

**Attempted Murders Committed in Furtherance of the Conspiracy**

As stated above, the Imperial Gangsters had an established rule that no rival gang member could walk or drive through their neighborhood. The evidence at trial will be that they were also firmly committed to shooting at rival gang members even when they see them outside of the Imperial Gangster neighborhood. The government will introduce evidence at trial that the charged defendants attempted to kill their rivals a staggering number of times. Specifically, the government will introduce evidence that Ace Cortez attempted to kill a member of the "Renegade" 139th Street Imperial Gangsters, a leader of the Two Six gang, a second member of the Two Six gang, and a third member of the Two Six gang, The evidence will be that Cortez also drove Salvador Chavez to the residence of a "Renegade" 139th Street Imperial Gangster and direct him to shoot him.

As stated above, the evidence at trial will be that Salvador Chavez attempted to kill a member of the "Renegade" 139th Street Imperial Gangsters, as well as a member of the Two Six gang and a Latin King.

The government will introduce evidence at trial of no less than eleven attempted murders committed by Jason Medina. The jury will hear that he shot at a wide array of people, including Victim 5, who is an ex-member of the 149th Street Imperial Gangsters who he believed was

"snitching," another member of the 149th Street Imperial Gangsters in a case of mistaken identity, Two Six member Miguel Colon, at least three other Two Six gang members, codefendant Raymond Campos on multiple occasions, a member of the "Renegade" 139th Street Imperial Gangsters on multiple occasions, and an individual who he believed to be a member of the Marktown Folk gang.

The jury will hear evidence of Edward Serna's involvement in five different attempted murders, either as a shooter or as the driver. The victims of these attempts include an ex-149th Street Imperial Gangster, codefendant Raymond Campos on multiple occasions, and members of the Two Six gang.

Julian Serna also attempted to kill rivals on a number of occasions, including an incident where he tried to kill two members of the "Renegade" 139th Street Imperial Gangsters with an assault rifle, an attempt on Mario Soriano's life a week before the actual homicide, another attempt to kill a "Renegade" 139th Street Imperial Gangster, and the attempted murder of a Two Six gang member.

The government will also hear evidence that Vincent Garza shot at two different Two Six gang members on one occasion. The government will also introduce evidence that Garza shot at two different Spanish Gangster Disciples on another occasion.

Juan Briseno is charged in the Fourth Superseding indictment with four different counts of attempted murder. In addition, the government will introduce evidence at trial that Briseno attempted to kill various members of the Spanish Gangster Disciples as well as other rival gang members.

Finally, the jury will hear that after the vast majority of the 149th Street Imperial Gangsters were indicted and detained on the instant case, Armando Velasquez was desperately

trying to "hold down" the neighborhood, and in an attempt to do so ended up shooting an innocent juvenile in the head and back multiple times. The evidence will be that neither Victim 6, nor any of the individuals with him that day, were gang-affiliated.

**Drug Robberies and Burglaries Committed in Furtherance of the Conspiracy**

The government will introduce evidence at trial that members of the Imperial Gangsters would regularly do armed robberies of other drug dealers, and also burglarize their residences and stash houses. After committing these crimes, they would redistribute some of the drugs to other members of the Imperial Gangsters, sometimes at full price, sometimes at a reduced price, and sometimes for free. In addition, they would sometimes reinvest the proceeds into the gang, by purchasing firearms which they would use to further gang activity. The evidence at trial will be that these crimes occurred in East Chicago, Indiana, Calumet City, Illinois, Lansing, Illinois, Hammond, Indiana, as well as some other towns. A variety of members of the conspiracy participated in these crimes, with the core perpetrators being Ace Cortez, Salvador Chavez, and Juan Briseno.

During the course of these armed robberies and burglaries the charged Imperial Gangsters stole enormous quantities of both cocaine and marijuana, and huge sums of U.S. currency. In addition, they would steal firearms and electronics.

**Drug Trafficking Committed in Furtherance of the Conspiracy**

Some of the drug trafficking done by the defendants was the result of the drug robberies and burglaries discussed above. In addition, the charged defendants consistently engaged in more traditional drug sales, wherein they purchased cocaine, marijuana and ecstasy from a source

of supply, and resold to others at a profit. Virtually all of the charged defendants were involved in marijuana and/or cocaine sales, with some defendants selling much larger quantities than others.

The evidence at trial will be that Subject 38, Guillermo Briseno, Ace Cortez, Eddie Torres, Edward Serna, Salvador Chavez, Juan Briseno and Richard Reyes sold the largest quantities of narcotics. Regarding the remaining defendants in the case, numerous witnesses will testify that during various times during the course of the conspiracy Richard Reyes was the main supplier of marijuana to the Imperial Gangsters. Reyes would front the marijuana to Guillermo Briseno and Subject 38, who would then redistribute it to other members of the conspiracy. The evidence will be that Reyes also distributed ounces of cocaine up to a kilo of cocaine at a time to Guillermo Briseno, who would redistribute to other members of the Imperial Gangsters and other customers. On at least one occasion Reyes took Guillermo Briseno to his source of supply's residence to pick up cocaine. Finally, the government will introduce evidence that Richard Reyes was also supplying Subject 37 with cocaine, which she would sell for him in local bars.

The evidence at trial will be that Edward Serna was one of the main suppliers of marijuana for the 139th Street faction of the Imperial Gangsters, and would also sell to 149th Street members. The evidence at trial will be that Ace Cortez mostly resold the drugs that he had stolen, but also had a source of supply for cocaine. Finally, the government will introduce evidence at trial that Juan Briseno was buying cocaine and marijuana from Subject 13, and redistributing to Imperial Gangsters.

### III. THE STATEMENTS TO BE OFFERED AT TRIAL

**Statements Made Concerning Homicides Committed by the Imperial Gangsters**

Witness 3 will testify that approximately one year after the July 24, 2004 homicide of Anuar "Bronco" Paez he had a conversation with Salvador Chavez, with no one else present. Salvador Chavez stated that Chavez's cousin, Ace Cortez, had killed Paez. Chavez told Witness 3 that Anuar "Bronco" Paez shot first at Ace Cortez, and then Ace Cortez chased Paez down and shot and killed him. Salvador Chavez told Witness 3 that he had personally spoken with Cortez about this murder.

Witness 2 will testify that a few weeks after the July 24, 2005 homicide of Guadalupe Trevino, Witness 2 was present for a conversation at Witness 2's residence. Also present and participating in this conversation were Raymond Campos, Vincent Garza, Juan Briseno and Galo Feliciano. During the course of this conversation members of the 149th Street Imperial Gangsters were stating that it was members of the Spanish Gangster Disciples who had shot and killed Guadalupe Trevino. Raymond Campos, who was still affiliated with the 139th Street Imperial Gangsters at the time, countered that it was "us," (139th Street Imperial Gangsters) who had killed Trevino. Campos further stated that he was in the car with the gunmen during the homicide, and it was "Little Folks" who had shot them up. Vincent Garza was present for this conversation, and did not disagree with anything that was being said. As Garza was present for this conversation and did not disagree with anything being said, this statement of Campos is admissible at trial as a tacit admission by Garza. In the event that it is not accepted by the court as such, the government will seek to enter it as co-conspirator hearsay.

Imperial Gangsters Robert Lockhart and Joshua Walberg also discussed the Guadalupe Trevino homicide with Witness 2. Robert Lockhart is an Imperial Gangster who was indicted

and pled guilty to the RICO conspiracy in the instant case. Joshua Walberg, who recently passed away, was also reputed to be a member of the 149th Imperial Gangsters. Witness 2 will testify at trial that a few weeks after the discussion mentioned above, he had a conversation with Robert Lockhart and Joshua Walberg during which both Lockhart and Walberg stated that Vincent Garza had admitted to them his role in the Guadalupe Trevino homicide, bragging to them that he had killed Antonio Trevino's little brother.

Regarding the Trevino homicide, Witness 2 will also testify that during this same time period he had a conversation with Galo Feliciano during which Galo Feliciano told Witness 2 that Vincent Garza had admitted his role in this homicide to Galo Feliciano. Galo Feliciano has pled guilty in the instant case and is cooperating with the government.

Witness 2 will also testify that in approximately 2009-2011 he had a conversation with defendant Salvador Chavez about the Trevino homicide. Also present for this conversation was Juan Briseno, Robert Lockhart, Joshua Walberg, Subject 9, Jason Medina and perhaps Julian Serna. While this group of Imperial Gangsters was drinking and socializing Salvador Chavez began to brag, saying that the 139th Street Imperial Gangsters "handle our shit." He stated that he himself, Vincent Garza and Jason Medina did this homicide, killing Guadalupe Trevino near the Gary airport. He said that they had four guns with them, caught Trevino riding around with a female, and pulled up on him and shot and killed him. Jason Medina, who was present for this conversation, agreed with what Salvador Chavez was saying. Because of this, the government will seek to enter this statement against Medina as a tacit admission. In the alternative, the government will seek to admit it as co-conspirator hearsay. The government will seek to enter the statement against Vincent Garza solely as co-conspirator hearsay, as he was not present for the conversation.

Witness 4 will testify that he has discussed the Trevino homicide with Vincent Garza, who informed him that Eddie Serna drove for this homicide, Jason Medina was in the front and Vincent Garza was either the shooter or one of the shooters. Witness 4 will further testify that when he (Witness 4) later informed Julian Serna of Vincent Garza's statement, Julian Serna warned that Jason Medina would be "mad as hell" if he heard that Garza was claiming credit for the murder. This conversation occurred in Witness 4's car, with no one else present.

Witness 4 will further testify that he had a conversation with Eddie Serna about the Trevino homicide. During this conversation Eddie Serna told Witness 4 that he (Eddie Serna) drove for this homicide and Jason Medina was the shooter. This conversation occurred shortly after the Trevino murder.

Witness 7 will testify that he spoke with Jason Medina approximately one week after the Guadalupe Trevino homicide, with no one else present. Medina told Witness 7 that on the night of the homicide Medina had received a phone call from a female, and then went to try to locate Trevino. Medina said that Salvador Chavez was in the car for this homicide, and he himself (Medina) was the shooter. Medina stated that his shots hit the door right below the door handle of the victim's white Pontiac Grand Prix, the antenna, and hit the victim in the neck.

On July 21, 2007, a man named Louis Gonzalez was shot and killed in the Harbor section of East Chicago, Indiana. Investigation to date has revealed that Salvador Chavez committed this homicide. Witness 5 will testify at trial that he had a conversation with Subject 32 at the Briseno residence on Walnut Street in Hammond, Indiana. Subject 32 is the brother of three defendants in this case, and was an affiliate of the Imperial Gangsters. Subject 32 has been arrested for disorderly conduct while he was with Angel Santos, the deceased leader of the 149th Street Imperial Gangsters. Investigation has revealed that Subject 32 assisted defendants in this

case in assaulting a rival gang member, and did at least one theft of narcotics with the defendants in this case. During the course of this conversation, Witness 5 and Subject 32 discussed the fact that Richard Campos, the victim's girlfriend's son, had been charged with Gonzalez's homicide. Witness 5 and Subject 32 discussed the fact that Salvador Chavez had admitted to Witness 5 that he had killed Louis Gonalez, and Subject 32 stated that it was common knowledge in the neighborhood that Chavez had committed this murder. Subject 32 and Witness 5 agreed that it was "messed up" that members of the 139th Street Imperial Gangsters would kill innocent people who were not rival gang members.

Witness 1 will testify regarding a conversation that he had with David Almaraz, a charged defendant in this case who is expected to testify at trial. Witness 1 will testify that a long period of time after the September 26, 2007 Luis Ortiz homicide Witness 1 spoke with David Almaraz at a party. When Witness 1 brought up the subject of the Louis Ortiz homicide, David Almaraz gave Witness 1 a strange look and told him that on the night of the murder he (David Almaraz) and Juan Briseno were riding around in Hammond, Indiana, when they saw Luis Ortiz. Juan Briseno wanted to kill Luis Ortiz, so they followed Ortiz to Ortiz's residence, where Juan Briseno killed him.

Witness 2 will also testify that he had a conversation with David Almaraz regarding the Luis Ortiz homicide. During the course of this conversation David Almaraz told Witness 2 that Juan Briseno was crazy, and that Briseno was all "hyped up" about committing the Ortiz murder. Almaraz told Witness 2 that Almaraz parked around the alleyway from the victim's residence, and Juan Briseno got out of the car. Almaraz heard shots, and Juan Briseno then came running back to Almaraz's car and they drove away.

Witness 8 will testify that he had a conversation with Subject 32. During the course of this conversation Subject 32 told Witness 8 that Juan Briseno had shot and killed Luis Ortiz.

Witness 2 will testify that he had a conversation with Salvador Chavez regarding the March 25, 2008 homicide of Mario Soriano. This conversation occurred at Witness 2's residence within a few months of the homicide. Witness 2 will testify that Salvador Chavez and he were drinking and smoking marijuana with Juan Briseno. Salvador Chavez told Witness 2 and Juan Briseno that 139th Street Imperial Gangsters killed Mario Soriano.

Witness 4 will testify that he had a conversation with Eddie Serna during which Eddie Serna told Witness 4 that Julian Serna had shot and killed Mario Soriano. This conversation occurred approximately six or seven months after the March 25, 2008 Soriano homicide. A day or two later Witness 4 also had a conversation with Subject 33, the brother of Julian Serna, regarding the same homicide. Investigation to date has revealed that Subject 33 was a member of the Imperial Gangsters, who would attend meetings, post up and patrol the neighborhood, sell marijuana, and was involved in shooting a rival Two Six gang member. Witness 4 will testify that David Serna told him that he had been taken into the East Chicago Police Department to be questioned about the Mario Soriano homicide, but that he was not going to tell on his own brother (Julian Serna). The conversation occurred in the residence of Subject 3.

Regarding the June 3, 2008 murders of Miguel Mejias and Michael Sessum, Witness 3 will testify that roughly a week after the murder, Vincent Garza was brought to Witness 3's residence by Witness 3's son. Vincent Garza told Witness 3 that right before the homicide there was an individual waiting in his car to buy marijuana from one of the victims. Vincent Garza told Witness 3 that he and Juan Briseno had ski masks on, and came through the alley. They both had guns, which they had picked up from the residence of another Imperial Gangster.

Case 15-2347 Document: 35 Filed: 07/27/2016 Pages: 4186

Vincent Garza told Witness 3 that he (Garza) and Juan Briseno ran up on the two victims and shot and killed them. Garza explained that he had shot the victim who had run to the back of the house, and Juan Briseno then came and shot again the same individual who Garza had just shot. Witness 3 will testify that Vincent Garza was upset, and told Witness 3 that he (Vincent Garza) had committed the double homicide at Juan Briseno's insistence. Vincent Garza told Witness 3 that he had to do the double homicide because he was a "shorty," or prospective member of the Imperial Gangsters, and there would be repercussions if he did not comply. Vincent Garza told Witness 3 that he had never killed anyone before, and wanted Witness 3 to assist him in getting out of the Imperial Gangsters.

Witness 3 will testify at trial that he also had a conversation about the Mejias and Sessum homicides with Juan Briseno. This conversation occurred a few days after the homicide, at Juan Briseno's mother's house on Walnut Avenue in Hammond, Indiana. In addition to Juan Briseno and Witness 3, Witness 2, Guillermo Briseno and Subject 32 were also present. While they were sitting around and smoking marijuana Juan Briseno admitted to Witness 3 that he (Juan Briseno) and Vincent Garza had killed Mejias and Sessum. Juan Briseno explained that the victims were Latin Kings who thought that they could sell marijuana in the 149th Street Imperial Gangster neighborhood. Juan Briseno stated that he shot one of the victims, and then shot the second victim, who Vincent Garza had already shot. Juan Briseno further stated that he then looked the second victim in the face while he died. Juan Briseno said that he had hid the guns in the alley after the double homicide.

Regarding the October 9, 2008 homicide of Harris Brown, Witness 2 will testify that roughly one month prior to the homicide Guillermo Briseno, who held a leadership role in the 149th Street Imperial Gangsters, voiced his displeasure with the fact that some African-American

drug dealers were selling narcotics in the 149th Street neighborhood.   Guillermo Briseno ordered the 149th Street Imperial Gangsters to get rid of any African-American drug dealers in their neighborhood.

Witness 3 will testify that Subject 15, an older member of the 149th Street Imperial Gangsters, told Witness 3 that he (Subject 15) and another individual were with Juan Briseno when Briseno shot and killed Harris Brown.   Subject 15 told Witness 3 that they took the guns to Galo Feliciano's residence after the homicide.

On January 8, 2010, a man named Eppie Bailey was shot and killed in the Harbor section of East Chicago, Indiana.   Investigation to date has revealed that Bailey was not a gang member or drug dealer, and was shot in a case of mistaken identity.   Witness 6 will testify that Subject 34, a 139th Street Imperial Gangster, told him that he overheard Subject 17 talking about the Bailey homicide.   Subject 17 stated that Julian Serna and Subject 21 saw a male walking down the alley.   Julian Serna believed that the individual might be a member of the rival Two Six street gang.   Subject 17 said that Julian Serna shot several times, hitting Eppie Bailey.

Witness 8 will testify that he had a conversation with Kevin Beltran during which Beltran told Witness 8 that he (Beltran) was in the immediate vicinity during the June 10, 2010 Latroy Howard homicide.   Beltran, an Imperial Gangster who was charged in this case and pled guilty to the RICO conspiracy, told Witness 8 that Juan Briseno walked up to Latroy Howard, asked him "Are you a Moe (Black P-Stone)?" and shot him.

Regarding the Latroy Howard homicide, Witness 5 will testify that he had a conversation with Galo Feliciano at Galo Feliciano's residence during which Galo Feliciano stated that Juan killed Latroy Howard because he was selling crack cocaine in the 149th Street Imperial Gangster neighborhood.   Galo Feliciano further told Witness 5 that he believed that Juan Briseno was

crazy, and was killing people just for the fun of it.

Witness 5 will testify that since being incarcerated on this case he had a conversation with Guillermo Briseno in the old Kankakee jail. During the course of this conversation Guillermo Briseno said that the two Imperial Gangsters who "had the most bodies on them" (killed the most people) were Juan Briseno, and Richard Reyes. Guillermo Briseno stated that Richard Reyes had killed five people.

**Statements Made Concerning Attempted Murders Committed by the Imperial Gangsters**

Witness 8 will testify that he had a conversation with Kelvin Beltran during which Kelvin Beltran stated that Juan Briseno had shot Victim 513 on August 2, 2009. During the course of this conversation Beltran bragged that Juan Briseno, a fellow member of the 149th Street Imperial Gangsters, "took care of business." Kelvin Beltran pled guilty to the RICO conspiracy in this case.

Regarding the June 6, 2011 attempted murder of Victim 614, charged in Counts 31 and 32 of the Fourth Superseding Indictment, Witness 7 will testify that Jason Medina told Witness 7 that Eddie Serna was the driver while Jason Medina shot at Victim 6.

Witness 5 will testify that he was present at a barbecue at the residence of the mother of Salvador Chavez's child, one or two months after the attempted murder of Victim 6. Jason Medina, Eddie Serna and Salvador Chavez were also present. While at the barbecue, Jason Medina stated that Eddie Serna drove while Jason Medina shot at Victim 6, and they did so

---

13 This is the same Victim 5 that is referred to in the Fourth Superseding Indictment as Victim 5.
14 Again, we are using the same Victim numbers for this document that are used in the Fourth

because they thought that Victim 6 was "snitching."   Media said that Victim 6's mother was in the car during this incident.   Jason Medina said that he had thrown the gun that he used for this shooting along the side of the street along Columbus Avenue in East Chicago.   Eddie Serna was present for this conversation, and did not disagree with anything that Jason Medina was saying. As Eddie Serna was present for this conversation and did not disagree with anything being said, this statement of Jason Medina is admissible at trial as a tacit admission by Eddie Serna.   In the event that it is not accepted by the court as such, the government will seek to enter it as co-conspirator hearsay.

Witness 7 will testify to a similar conversation with Jason Medina, one which occurred while they were incarcerated on the instant case.   During the course of this conversation Jason Medina admitted that he had shot at Victim 6, and said that Eddie Serna was the driver for this shooting.   Jason Medina told Witness 7 that Kelvin Beltran was in the car with Victim 6, and that Medina and Serna thought that Victim 6 was "snitching."   Jason Medina said that the day after the shooting they went to look for the gun with Julian Serna, and the East Chicago Police came and questioned them.   Medina said that when East Chicago Police questioned what they were doing they responded that they worked for the City of East Chicago.

Witness 8 had a conversation with Eddie Serna regarding the attempted murder of Victim 6.   Witness 8 will testify that Serna admitted to driving for this shooting, and said that Jason Medina was the shooter.

Witness 4 will testify about a conversation that he had with Julius Solis in approximately 2008 or 2009.   During the course of this conversation Solis told Witness 4 that a week or so before their conversation Eddie Serna was driving a rented P.T. Cruiser automobile with Jason

---

Superseding Indictment.

Medina in the car when they saw Subject 26, a Two Six gang member, outside of the U.S. Bar in the Harbor section of East Chicago.   Jason Medina shot at Subject 26, missing him.

Witness 7 will further testify that Jason Medina told him about a shootout that Medina had had with Subject 4 in an alley off of the 4200 block of Euclid in the Harbor section of East Chicago. Medina said that Eddie Serna was present with Medina for this shootout.

Witness 5 will testify that he had a conversation with Eddie Serna sometime in 2008 or 2009.   During this conversation Eddie Serna warned Witness 5 to stay out of the 149th Street Imperial Gangster neighborhood, as he (Eddie Serna) and Jason Medina had recently been driving around that neighborhood and shooting at Raymond Campos.   During this time period Eddie Serna and Jason Medina had animosity towards Raymond Campos because he had left the 139th Street Imperial Gangsters for the 149th Street Imperial Gangsters.

Witness 5 will testify that he also had a conversation with Guillermo Briseno about the same subject.   Guillermo Briseno told Witness 5 that he was with Galo Feliciano and Raymond Campos when they were shot at by Eddie Serna and Jason Medina.   Guillermo Briseno expressed his displeasure at having been shot at, but said that he did not want to "go to war" with Medina and Eddie Serna.

Regarding the December 3, 2011 attempted murder of Victim 6, charged in Counts 33 and 34 of the Fourth Superseding Indictment, Witness 6 will testify that Subject 25, a 149th Street Imperial Gangster, told him that Armando Velasquez had shot Terrance Rios.

The government will introduce testimony through Witness 4 regarding a conversation between Witness 4 and Julian Serna.   Witness 4 will testify that Julian Serna told him that Julian Serna was in Jason Medina's apartment, along with Salvador Chavez and Ace Cortez.   After it was stated that Subject 4 had seen Salvador Chavez's car earlier while Chavez's child and his

child's mother were in the car, and swerved at it in a threatening manner, Ace Cortez got angry at Salvador Chavez for not retaliating against Subject 4. Ace Cortez then ordered Chavez to retaliate, and drove him to Subject 4's residence, where Salvador Chavez shot at Subject 4 multiple times, hitting him.

The government will introduce testimony that Witness 4 had a conversation with Julian Serna. During the course of this conversation Julian Serna told Witness 4 that Julian Serna, Jason Medina, and Subject 17 shot at Subject 4. Julian Serna said that they waited for Subject 4 in the gangway on Euclid, and shot at him when he came out. Julian explained that Subject 17 had a fifteen round clip, but only shot twice. Julian Serna stated that Jason Medina also fired shots. Julian Serna stated that during the course of the shooting he accidentally shot at Jason Medina, who was behind the residence, thinking that it was Subject 4. Witness 4 will testify that he had a similar conversation with Jason Medina, where Medina discussed the same shooting. During the course of this conversation Jason Medina said that he and Julian Serna were both waiting outside of Subject 4's house, and shot at each other accidentally.

The government will introduce testimony from Witness 7 about what appears to be the same shooting incident. Witness 7 will testify that Jason Medina told Witness 7 about an incident that occurred on Carey Street in East Chicago, Indiana, outside the residence of Mario Soriano.15 Medina stated that he was there with Subject 17, and Julian Serna was across the street. All of them shot at Mario Soriano, who fired back at Jason Medina and Subject 17. No one was hit during this incident.

---

15 The government is of the belief that this shooting incident involved Subject 4, and not Mario Soriano, and that Witness 7 is incorrect on this detail.

Witness 7 will testify that Julius Solis told him that he (Solis) and Vincent Garza had shot at Subject 27 and Subject 28 outside of Subject 27's house. Witness 7 will testify that Julius Solis stated that he himself hit Subject 28 with his shots, but that Vincent Garza kept missing. Julius Solis has pled guilty to the RICO conspiracy in this case.

**Statements Made Concerning Robberies and Burglaries Done by the Imperial Gangsters**

Witness 7 will testify that he had a conversation with Salvador Chavez and Subject 9, a deceased 139th Street Imperial Gangster. During the course of the conversation Chavez and Subject 9 showed Witness 7 fifteen pounds of marijuana, and told Witness 7 that they had committed an armed robbery of a Mexican drug trafficker. Salvador Chavez told Witness 7 that they committed this armed robbery together with Ace Cortez, Eddie Serna, and Subject 10. Chavez and Subject 9 said that during the course of this robbery they approached an individual's house, and saw a man in the window of the residence. They cocked their guns and displayed them so that this man in the window could see, and then the man in the window shut off the lights in the house. Chavez, Subject 9, Cortez, Eddie Serna and Subject 10 then broke into the garage and stole a large amount of marijuana.

The government will introduce testimony about what may be the same robbery through Witness 4. Witness 4 will testify that he had a conversation with Ace Cortez during which Ace Cortez told him that he had recently done a robbery along with Salvador Chavez, Subject 5 and Subject 6. Witness 4 will testify that Ace Cortez stated that he had rapped on the window of the victim's residence with a gun, and the older male victim did nothing while they stuck up an individual in the driveway at gunpoint, and made away with between 40-80 pounds of marijuana.

Witness 4 will testify that Ace Cortez told him that the stolen marijuana belonged to Subject 36's Drug Trafficking Organization.

Witness 4 will testify that he later had a conversation with Subject 5, an Imperial Gangster, about the same robbery.  Witness 4 will testify that Subject 5 told Witness 4 that he himself had set up this robbery, as he had been doing drug business with Subject 36's Drug Trafficking Organization, and knew that they were storing marijuana in houses that they were renovating.

Witness 8 will testify that he had a conversation in late 2009 with Eddie Serna, while at the residence of a fellow an Imperial Gangster. Subject 38, the former leader of the 149th Street Imperial Gangsters who is now deceased, was also present for the conversation.  During the course of this conversation Eddie Serna told Witness 8 that Salvador Chavez had "ripped" a kilo of cocaine from someone, and bought a Lincoln automobile with the proceeds.

Witness 8 will testify about a conversation that he had in late 2009 at Subject 14's residence with Eddie Serna about what appears to be the same robbery discussed above.  Angel Santos was also present for this conversation.  Eddie Serna told Witness 8 that Salvador Chavez did a robbery or a burglary and got one kilo of cocaine.  Salvador Chavez purchased a Lincoln with the drug proceeds.

Witness 3 will testify that Subject 2, an Imperial Gangster, told Witness 3 that he and Ace Cortez had robbed a Mexican drug dealer in the Sunnyside neighborhood of East Chicago, Indiana.  This drug dealer lived right behind Subject 2's grandmother's house.  Subject 2 bragged that he and Cortez had stolen $300,000 in cash, and Subject 2 said that he bought a Lincoln truck and a Cadillac STS with the proceeds.

Witness 3 will further testify that Salvador Chavez told him that in 2002 Salvador Chavez, Ace Cortez, and a third member of the 139th Street Imperial Gangsters broke into the garage of a Mexican drug trafficker in the Harbor section of East Chicago. Chavez stated that they had stolen fifteen kilograms of cocaine, and showed some of it to Witness 3.

Witness 2 will testify that he had a conversation with Subject 38 shortly before the April 28, 2010 murder of Pete Santos. This conversation was at Subject 14's residence. During the course of this conversation Angel Santos told Witness 2 that Salvador Chavez had told him that roughly a week prior he (Chavez) and Ace Cortez had had a male Hispanic mechanic show them a sample of cocaine that he was offering for sale. Salvador Chavez told Subject 38 that he (Chavez) and Ace Cortez then went and stuck up this male Hispanic mechanic at gunpoint in his garage, and stole $10,000 from him.

**Statements Made Regarding Firearms, Narcotics Sales and Other Gang-Related Business**

Witness 4 will testify that he had a conversation with Julian Serna during which Julian Serna told him that Salvador Chavez had sold him a .44 Magnum revolver.

Witness 1 will testify that he had a conversation in 2009 at Witness 1's residence with Juan Briseno. During the course of this conversation Juan Briseno told Witness 1 that Eddie Serna had sold him some semi-automatic pistols.

Witness 2 will testify that in late 2008 or early 2009 he was present when Richie Reyes dropped off 1-2 ounces of cocaine at Subject 37's house. Guillermo Briseno was also present. During this time period Eddie Torres discussed Subject 37, and said that she was selling for

Richie Reyes, and told everyone in the neighborhood that if it was "dry" out there they should ask Subject 37 to sell them cocaine as she is selling for Richie Reyes.

## IV.   CONCLUSION.

The government does not outline, statement by statement, the specific basis for admission.  The vast majority of the statements discussed above are either statements made to execute the scheme, statement's regarding the scheme's activities, statements regarding the activities of other co-schemers designed to inform or reassure the listener, and statements relating to the progress and past accomplishments of the scheme.

The above is an outline of the evidence that the government will introduce to establish that a criminal enterprise existed involving defendants Juan Briseno, Galo Benjamin Feliciano, Guillermo Briseno, Alejandro Lara, Justin Weaver, Michael Castillo, Kelvin Beltran, David Almaraz, Joseph Rene Torres, Jason Medina, Edward Raye Serna, Robert Lockhart, Armando Jose Velasquez, Anthony Baldazo, Salvador Chavez, Raymond Campos, Ace Cortez, Julian Guillermo Serna, Julius Solis, Darmaile Cortez Sutton, Eddie Torres, Richard Reyes and Vincent Garza and other Imperial Gangsters as well as various individuals who acted as their agents in ways that allowed the defendants to commit their crimes.   This Court should find, based upon

this proffer, that co-schemer and agents' statements are admissible pending the introduction of

evidence to support this proffer.

<div style="margin-left: 40%;">

Respectfully submitted,

DAVID CAPP
United States Attorney

By:     s/ David J. Nozick
        DAVID J. NOZICK
        Assistant U.S. Attorney
        5400 Federal Plaza, Suite 1500
        Hammond, Indiana 46320
        (219) 937-5500

</div>

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION


UNITED STATES OF AMERICA          )
                                  )
          v.                      )          NO. 2:11 CR 77 PPS
                                  )
JUAN BRISENO, et al.              )


CERTIFICATE OF SERVICE

The undersigned hereby certifies that the Government's Evidentiary Proffer Supporting

the Admissibility of Co-Schemer and Agent Statements was electronically filed with the Clerk of

the Court using the CM/ECF system which sent notification of said filing to all counsel of

record.



By:     /s/ Jamet L. Eisenmann
        Janet L. Eisenmann
        U.S. Attorney's Office
        5400 Federal Plaza, Suite 1500
        Hammond, Indiana 46320
        (219) 937-5500

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | 2:11 CR 77 PPS |
| | ) | |
| JUAN BRISENO | ) | |

### GOVERNMENT'S REPONSE TO DEFENDANT'S MOTION FOR DISCLOSURE OF SCIENTIFIC/FORENSIC TESTING AND RESULTS

Comes now the United States of America, by David Capp, United States Attorney for the Northern District of Indiana, through Assistant U.S. Attorney David J. Nozick, and responds to the defendant Juan Briseno's Motion for Disclosure of Scientific/Forensic Testing and Results as follows:

1. The defendant has moved to compel the disclosure of the results of any and all scientific forensic testing, such as ballistic testing, fingerprint analysis, DNA analysis, hair analysis, blood comparisons and drug testing.

2. The defendant is inaccurate when he states that no paperwork has been turned over in discovery regarding such testing. The discovery provided to date does contain the results of some tests that have been done.

3. The government concedes that it is taking an inordinate amount of time to get some items, such as firearms, tested. The government has met with representatives with the Lake County Police Department Firearms lab, in an effort to have them complete any outstanding tests in a timely fashion.

4. The government will turn over the paperwork pertaining to any scientific/forensic

1

testing as soon as it receives it. The government foresees turning over some more test results within the next week or so.

**WHEREFORE**, for the reasons stated above, the government requests the Court deny the defendant's motion.

<div style="text-align: right">

Respectfully submitted,

DAVID CAPP
UNITED STATES ATTORNEY

S/David J. Nozick
David J. Nozick
Assistant United States Attorney

</div>

2

## *Certificate of Service*

I hereby certify that on December 3, 2013 I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

S/Lorene B. Nelson
Lorene B. Nelson
Legal Assistant

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | 2:11 CR 77 PPS |
| | ) | |
| JUAN BRISENO | ) | |

**GOVERNMENT'S REPONSE TO DEFENDANT'S MOTION FOR DISCLOSURE OF SPECIFIC INFORMANTS AND RELATED INFORMATION**

Comes now the United States of America, by David Capp, United States Attorney for the Northern District of Indiana, through Assistant U.S. Attorney David J. Nozick, and responds to the defendant Juan Briseno's Motion for Disclosure of Specific Informants and Related Information as follows:

The defendant, Juan Briseno, has moved for the government to disclose a variety of information. The government agrees to disclose the following information[1]:

- A(2)(f): The name and identity of attempted murder victim 1, from count 23 of the Fourth Superseding Indictment.

- A(2)(g): The name and identify of attempted murder victim 2, from count 25 of the Fourth Superseding Indictment.

- A(2)(h): The name and identify of attempted murder victim 3, from count 27 of the Fourth Superseding Indictment.

- A(2)(i): The name and identify of attempted murder victim 4, from count 29 of the Fourth Superseding Indictment.

---

1 For organizational purposes, the government will utilize the defendant's numbering system.

1

- A(2)(k): The name and identify of the rival gang member that Juan Briseno and two other Imperial Gangsters shot on January 23, 2009. The government will also turn over the names of the two other Imperial Gangsters that may have been involved.

- A(2)(l): The name and identity of the rival gang member shot by Juan Briseno on March 19, 2010.[2]

- A(2)(m) and (o): The government filed a Notice of Intent to Introduce Enterprise Evidence [R. 732] and a Santiago Proffer [R. 733] on November 26, 2013, after the filing of the defendant's motion. These two government filings outline the involvement of any uncharged co-conspirators involved in the RICO conspiracy (Count 1) and the narcotics conspiracy (Count 2). The government has sent a letter to the defendants outlining who each subject is.

- A(2)(n): The name and identity of the "others known and unknown to the grand jury" that the government mentions in Count 20 of the Fourth Superseding Indictment.

The government will provide all of the above information, by way of letter to all of the defendants in this case, by December 6, 2013.

The government will not, or cannot at this time, turn over the following information:

- A(2)(j): Regarding the name and identify of "another individual" known to the grand jury who, along with Robert Lockhart and Juan Briseno attempted to murder a person known to the grand jury on August 26, 2008, the government is unable to comply with the defendant's request. The victim of this shooting identified Robert

---

[2] The government assumes that the defendant is referring to this event, as opposed to an event in the year 2013, while Mr. Briseno was incarcerated.

2

Lockhart and Juan Briseno. He stated that a third individual was involved, but did not know who the third individual was.

- A(1). The government will not disclose at this time the identity of any informant or cooperating witness who was a percipient witness to any crime alleged to have been committed by Juan Briseno as charged in the Fourth Superseding Indictment. The defendant has cited to no case law for the proposition that he is entitled to the government's witness list at this point in time. The government will turn over *Jencks* material and its witness list in a timely fashion, as will be discussed at the pretrial conference in this case.

- A(2)(a-e): Specifically, the defendant is not entitled to the identity of the witnesses referenced in paragraphs a through e. Again, the defendant cites to no case law supporting his position that he is entitled to the government's witness list four months before trial.

- The defendant also argues that he is entitled to unredacted discovery, which would provide the identities of eyewitnesses to his homicides, and their statements. The government believes that the unredacted reports would unnecessarily potentially expose government witnesses to harm, and would amount to the government providing *Jencks* materials and a witness list roughly four months before trial. The defense has also moved for the court to order the government to produce all *Giglio* material pertaining to all government informants and cooperating witnesses. The government is aware of its *Giglio* obligations, and will comply in a timely fashion prior to trial. Again, the defendant cites to no case law supporting the

3

proposition that he is entitled to these materials at this early point in time.

The defendant cites to *Roviaro v. United States,* 353 U.S. 53 (1957) to support his argument that he is entitled to the various items that he demands. In the instant case, as pertains to Juan Briseno, there was no "informant" in the sense the term is used in *Roviaro* and its progeny.3 There were no undercover buys of guns or narcotics made from Juan Briseno, no undercover controlled calls or controlled meets. There were individuals who have been members or affiliates of the Imperial Gangsters, who provided historical information to the government prior to the indictment in this case. There are also codefendants who have pled guilty in this case and agreed to cooperate. It is expected that most, if not all of these witnesses will testify at trial. Their identities, witness statements (*Jencks* materials) and *Giglio* will be handled the same as any other witness. The defendant has citied to no law for the proposition that these witnesses should be treated differently than any other witnesses. *Roviaro* and its progeny pertain to cases where the government utilizes an informant in a proactive role in a case, is not going to call that informant as a witness, and the defense believes that the informant's identity will assist in preparing a defense. That, quite simply, is not our situation here.

---

3 The government did utilize an informant, in the traditional sense of the word, to make controlled buys of narcotics from codefendant Alejandro Lara. Lara has pled guilty in this case, and there will be no mention of those controlled buys at trial. The government also utilized an informant to make a controlled buy of a firearm from Edward Serna in this case. Serna has not joined in on this defense motion, so the government will not address that issue here.

4

1228

**WHEREFORE**, for the reasons stated above, the government requests the Court grant the

defendant's motion in part and deny the defendant's motion in part, as outlined above.

> Respectfully submitted,
>
> DAVID CAPP
> UNITED STATES ATTORNEY
>
> /s/ David J. Nozick
> David J. Nozick
> Assistant United States Attorney

<center>5</center>

1229

## CERTIFICATE OF SERVICE

I hereby certify that on December 3, 2013 I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which sent notification of such filing to the following:

**Arlington J Foley**
Attorney at Law
1942 North Main Street
Crown Point, IN 46307

**John Maksimovich**
1946 North Main Street
Crown Point, IN 46307

/s/ Toni A. Washington
U.S. Attorney's Office
5400 Federal Plaza, Suite 1500
Hammond, Indiana   46320
(219) 937-5500

1230

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION


UNITED STATES OF AMERICA        )
                                )
            v.                  )        Cause No. 2:11 CR 77 PPS
                                )
JUAN BRISENO et al              )


## GOVERNMENT'S PROPOSED VOIR DIRE QUESTIONS

Comes now the United States of America, by its attorney, David Capp, United States Attorney for the Northern District of Indiana, and respectfully tenders the following voir dire questions.

The government proposed questions numbered 1 through 11 attached hereto.



                        Respectfully Submitted,

                        DAVID CAPP
                        UNITED STATES ATTORNEY


                By:     /s/ David J. Nozick
                         David J. Nozick
                        Assistant United States Attorney
                        5400 Federal Plaza, Suite 1500
                        Hammond, Indiana 46368
                        (219) 937-5500


1231

**Government's Proposed Voir Dire Question 1:**

Will the fact that this case will involve evidence of dealing large quantities of cocaine and marijuana affect your ability to serve fairly and impartially?

**Government's Proposed Voir Dire Question 2:**

Do any of you believe that the improper distribution of narcotics should not be illegal, or that the law governing these crimes should not be enforced? Assume for the purpose of this question that there will be no evidence at trial that any of the marijuana that was distributed was for medicinal purposes.

**Government's Proposed Voir Dire Question 3**:

Have you or any member of your family or any relatives or close friends had a drug abuse problem?

**Government's Proposed Voir Dire Questions 4:**

Have you, any member of your family or any relatives or close friends been arrested for drug possession or sale of drugs?

**Government's Proposed Voir Dire Questions 5:**

During the trial, you will hear evidence concerning the use and possession of firearms. Does the fact that the charges involve firearms make it difficult for any of you to render a fair verdict? Do any of you feel that you could not decide fairly and impartially a case involving such charges?

Case: 15-2347 Document: 35 Filed: 07/27/2016 Pages: 4186

Case 2:11-cr-00077-PPS-APR Document 751 Filed 12/16/13 Page 6 of 13

**Government's Proposed Voir Dire Questions 6:**


Do any of you believe that this country's laws regarding firearms are in any manner unfair or unconstitutional?   Do you believe that they should not be enforced?

**Government's Proposed Voir Dire Questions 7:**

Is there a gang problem in the area where you live, or in any area where you have lived in the past?

**Government's Proposed Voir Dire Questions 8:**

Have you, any member of your family, or any close personal friend ever had any personal experience with a gang member or gangs?

**Government's Proposed Voir Dire Questions 9:**

You will hear testimony from some witnesses who have criminal records. Would any of you automatically disbelieve what a witness has to say because he or she has a criminal record?

**Government's Proposed Voir Dire Questions 10:**

You will hear testimony from some witnesses who have pled guilty in this case and are cooperating with the government in the hopes of receiving a more lenient sentence.  Chief Judge Simon is going to tell you that it is proper for the United States to call such witnesses to the stand.  The Judge is also going to tell you that you should view such witnesses' testimony with more caution.  Is there anyone here who believes that since a witness has pled guilty and is testifying for the government in the hopes of receiving a more lenient sentence his or her testimony is not to be believed at all?

**Government's Proposed Voir Dire Questions 11:**

This case involves "Aiding and Abetting" certain crimes as opposed to directly committing them, and "Conspiracy" to commit certain crimes.  Will you, for any reason, have difficulty applying the law as the judge explains it to you, even if you suspect that it will result in the Defendant being held liable to the same degree as if he had directly committed the crimes?

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

UNITED STATES OF AMERICA   )
   )
     v.   )   NO. 2:11 CR 77 PPS
   )
JUAN BRISENO, et al.   )

CERTIFICATE OF SERVICE

The undersigned hereby certifies that the Government's Proposed Voir Dire Questions

was electronically filed with the Clerk of the Court using the CM/ECF system which sent

notification of said filing to all counsel of record.

        By:   /s/ Janet L. Eisenmann
            Janet L. Eisenmann
            U.S. Attorney's Office
            5400 Federal Plaza, Suite 1500
            Hammond, Indiana 46320
            (219) 937-5500

```
MIME-Version:1.0
From:CMECFinnd@innd.uscourts.gov
To:CMECFinnd@localhost.localdomain
Bcc:
--Case Participants: Bryan M Truitt (bryan@tblawyers.com, sherrie@tblawyers.com), David J
Nozick - AUSA (david.nozick@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov,
susan.devries@usdoj.gov, usainn.ecfcivil@usdoj.gov), Kurt R Earnst (kre@braje-nelson.com),
Paul Jeffrey Schlesinger (pjeffslaw@aol.com), Pablo DeCastro
(pdecastro@rascia-decastro.com, ysierra@rascia-decastro.com), Sheldon B Nagelberg
(sbnagelberglaw@att.net), Thomas W Vanes (b.lynneadams@yahoo.com,
tom.vanes@sbcglobal.net), John T Theis (theislaw@aol.com), Catherine A Lake
(attyclake@sbcglobal.net), Alex Wohlshansky (ihorlawyer@hotmail.com), Adam Tavitas
(adtavitas@aol.com, b.lynneadams@yahoo.com), Dean R Lanter - AUSA (dean.lanter@usdoj.gov,
janet.eisenmann@usdoj.gov, usainn.ecfcivil@usdoj.gov), John E Martin - FCD
(john_martin@fd.org), Scott L King (dwilliams@scottkinggroup.com,
sking@scottkinggroup.com), Mark A Psimos (psimoslaw@airbaud.net), James N Thiros
(jim@thiros.com, lynn@thiros.com), Robert L Rascia (rrascia@rascia-decastro.com,
ysierra@rascia-decastro.com), Gojko Kasich (gkasich@crownlaw.com, gkasich@gmail.com),
Arlington J Foley (arlingtonfoley@att.net), Roxanne Mendez Johnson
(attorneyrmj@gmail.com), Visvaldis P Kupsis (vpkupsis@hotmail.com), Stephen Edward Scheele
(pkd@gk4law.com, ses@gk4law.com), Jack Friedlander (jack@jackfriedlander.com,
office@jackfriedlander.com), Bruce R Hegyi - AUSA (bruce.hegyi@usdoj.gov), R Brian
Woodward (carolb@wbbklaw.com, rbwoodward@wbbklaw.com), John Maksimovich
(criminallaw@johnmaksimovich.com), David E Vandercoy (david.vandercoy@valpo.edu),
Magistrate Judge Andrew P Rodovich (rodovich_chambers@innd.uscourts.gov), Chief Judge
Philip P Simon (denise_woodside@innd.uscourts.gov, jacob_hamann@innd.uscourts.gov,
katherine_welsh@innd.uscourts.gov, mira_serrill-robins@innd.uscourts.gov,
noel_collins@innd.uscourts.gov, philip_simon@innd.uscourts.gov)
--Non Case Participants: Matthew D Soliday (office@matthewsolidaylaw.com),
Probation/Pretrial Services (innpml_cmecf@innd.uscourts.gov), U S Marshal
(inn.docket-fw@usdoj.gov, inn.docket-sb@usdoj.gov, usms.27@usdoj.gov)
--No Notice Sent:

Message-Id:2425525@innd.uscourts.gov
Subject:Activity in Case 2:11-cr-00077-PPS-APR United States of America v. Briseno et al
Notice of Hearing/Deadlines
Content-Type: text/html
```

### U.S. District Court Northern District of Indiana [LIVE]

### USDC Northern Indiana

## Notice of Electronic Filing

The following transaction was entered on 1/3/2014 at 4:48 PM EST and filed on 1/3/2014

| | |
|---|---|
| **Case Name:** | United States of America v. Briseno et al |
| **Case Number:** | 2:11–cr–00077–PPS–APR |
| **Filer:** | |
| **Document Number:** | 768(No document attached) |

**Docket Text:**
 **NOTICE OF HEARING as to Juan Briseno: Ex–Parte Hearing regarding [763] sealed motion now scheduled for hearing on: 1/10/2014 11:30 AM in US District Court – Hammond before Chief Judge Philip P Simon. Only counsel for the defendant need appear. (nac)**

**2:11–cr–00077–PPS–APR–1 Notice has been electronically mailed to:**

David E Vandercoy david.vandercoy@valpo.edu

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com, gkasich@gmail.com

Scott L King sking@scottkinggroup.com, dwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net, b.lynneadams@yahoo.com

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje–nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia–decastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

1245

Bruce R Hegyi – AUSA bruce.hegyi@usdoj.gov

Alex Wohlshansky ihorlawyer@hotmail.com

**2:11–cr–00077–PPS–APR–1 Notice has been delivered by U.S. Mail or other means to:**

```
MIME-Version:1.0
From:CMECFinnd@innd.uscourts.gov
To:CMECFinnd@localhost.localdomain
Bcc:
--Case Participants: Pablo DeCastro (pdecastro@rascia-decastro.com,
ysierra@rascia-decastro.com), Kurt R Earnst (kre@braje-nelson.com), Arlington J Foley
(arlingtonfoley@att.net), Jack Friedlander (jack@jackfriedlander.com,
office@jackfriedlander.com), Bruce R Hegyi - AUSA (bruce.hegyi@usdoj.gov), Roxanne Mendez
Johnson (attorneyrmj@gmail.com), Gojko Kasich (gkasich@crownlaw.com, gkasich@gmail.com),
Scott L King (dwilliams@scottkinggroup.com, sking@scottkinggroup.com), Visvaldis P Kupsis
(vpkupsis@hotmail.com), Catherine A Lake (attyclake@sbcglobal.net), Dean R Lanter - AUSA
(dean.lanter@usdoj.gov, janet.eisenmann@usdoj.gov, usainn.ecfcivil@usdoj.gov), John
Maksimovich (criminallaw@johnmaksimovich.com), John E Martin - FCD (john_martin@fd.org),
Sheldon B Nagelberg (sbnagelberglaw@att.net), David J Nozick - AUSA
(david.nozick@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov,
susan.devries@usdoj.gov, usainn.ecfcivil@usdoj.gov), Mark A Psimos
(psimoslaw@airbaud.net), Robert L Rascia (rrascia@rascia-decastro.com,
ysierra@rascia-decastro.com), Stephen Edward Scheele (pkd@gk4law.com, ses@gk4law.com),
Paul Jeffrey Schlesinger (pjeffslaw@aol.com), Adam Tavitas (adtavitas@aol.com,
b.lynneadams@yahoo.com), John T Theis (theislaw@aol.com), James N Thiros (jim@thiros.com,
lynn@thiros.com), Bryan M Truitt (bryan@tblawyers.com, sherrie@tblawyers.com), David E
Vandercoy (david.vandercoy@valpo.edu), Thomas W Vanes (b.lynneadams@yahoo.com,
tom.vanes@sbcglobal.net), Alex Wohlshansky (ihorlawyer@hotmail.com), R Brian Woodward
(carolb@wbbklaw.com, rbwoodward@wbbklaw.com), Magistrate Judge Andrew P Rodovich
(rodovich_chambers@innd.uscourts.gov), Chief Judge Philip P Simon
(denise_woodside@innd.uscourts.gov, jacob_hamann@innd.uscourts.gov,
katherine_welsh@innd.uscourts.gov, mira_serrill-robins@innd.uscourts.gov,
noel_collins@innd.uscourts.gov, philip_simon@innd.uscourts.gov)
--Non Case Participants: Matthew D Soliday (office@matthewsolidaylaw.com),
Probation/Pretrial Services (innpml_cmecf@innd.uscourts.gov), U S Marshal
(inn.docket-fw@usdoj.gov, inn.docket-sb@usdoj.gov, usms.27@usdoj.gov)
--No Notice Sent:

Message-Id:2426328@innd.uscourts.gov
Subject:Activity in Case 2:11-cr-00077-PPS-APR United States of America v. Briseno et al
Notice of Hearing/Deadlines
Content-Type: text/html
```

## U.S. District Court Northern District of Indiana [LIVE]

## USDC Northern Indiana

## Notice of Electronic Filing

The following transaction was entered on 1/7/2014 at 5:44 PM EST and filed on 1/7/2014

**Case Name:**     United States of America v. Briseno et al

**Case Number:**   2:11–cr–00077–PPS–APR

**Filer:**

**Document Number:** 775(No document attached)

**Docket Text:**
 **NOTICE OF HEARING as to Juan Briseno: Ex–Parte Hearing now RESET for 1/10/2014 at
11:00 a.m. in U.S. District Court – Hammond before Chief Judge Philip P Simon. Please note
that this is a change in time only. Only cnsl for dft Juan Briseno are required to appear. (nac)**


**2:11–cr–00077–PPS–APR–1 Notice has been electronically mailed to:**

David E Vandercoy david.vandercoy@valpo.edu

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com, gkasich@gmail.com

Scott L King sking@scottkinggroup.com, dwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net, b.lynneadams@yahoo.com

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje–nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia–decastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov,
janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

1248

Bruce R Hegyi – AUSA bruce.hegyi@usdoj.gov

Alex Wohlshansky ihorlawyer@hotmail.com

**2:11–cr–00077–PPS–APR–1 Notice has been delivered by U.S. Mail or other means to:**

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **VS.** | ) | **CASE NO: 2:11 CR 77** |
| | ) | |
| **JUAN BRISENO** | ) | |

### MOTION TO CONTINUE JURY TRIAL

Comes now the Defendant, Juan Briseno, by and through counsel, and moves to continue this matter for trial by jury and in support says as follows:

1. That this matter is presently set for trial by jury on the 7ᵗʰ day of April, 2014.

2. That due to the nature of the complexities of this matter, including the fact that the government is seeking the death penalty for Defendant, Juan Briseno, counsel for the Defendant require additional time to prepare this matter for trial. The additional time/continuance requested is necessary for the following reasons:

    a) The Defendant reasonably believes that the government intends to offer evidence, at trial, that the Defendant, Juan Briseno, committed and/or was responsible for at least six (6) murders and at least (4) attempted murders as well as other serious criminal activity involving drug dealing; drug "rips" (robberies); racketeering; illegal gun possession and illegal gun dealing; gang activity; intimidation; and other alleged criminal and bad activity. All of the above-stated expected evidence and allegations by the government require additional trial preparation time for Juan Briseno's attorneys.

    b) Recently, due to the trial of Richard Reyes, a co-defendant of Juan Briseno, the government has provided thousands of pages of discovery materials, much of

which pertains directly or indirectly to the Defendant, Juan Briseno. Additional preparation time is required by Juan Briseno's attorneys to review said materials prior to the government providing the expected "mountain" of discovery immediately prior to the commencement of the trial.

c) The defense has employed a mitigation expert for the death sentence phase of the trial. Additional time is required for said expert to fully develop the Defendant's mitigation case.

d) The Defendant, Juan Briseno, has filed a <u>Motion for Disclosure of Scientific/Forensic Testing and Results</u> (Document No. 718) and a <u>Motion for Disclosure of Specific Informants and Related Information</u> (Document No. 717), neither of which have yet been ruled upon by the Court. The Defendant, Juan Briseno, reasonably expects that the Court will issue an order(s) requiring the government to provide the Defendant, Juan Briseno, with some or all of what is requested and that additional time will be required, by the defense, to review such materials and to potentially have such information/materials examined by his own experts in preparation for trial. Additional time will also be required to investigate and discover potential rebuttal evidence and/or witnesses.

e) The Defendant, Juan Briseno, has filed motions under seal with the District Court, which have just recently been conclusively approved. Without divulging the contents of those motions under seal, the Defendant requires additional time to follow through with the subject matter thereof.

3. Counsel for the Defendant, Juan Briseno, reasonably believe that a continuance to September 2014 would be reasonable, necessary and appropriate given the seriousness of this case.

4. That the government has been contacted regarding this motion and would have no objection to the Court granting a continuance so long as the trial would have a starting date in May, June or July of 2014. The government, however does object to a new trial date after July 2014.

5. The delay occasioned by the granting of this motion for continuance would constitute and be excludable time as defined by 18 U.S.C. § 3161 (h)(8)(A) and B(i) and (iv).

6. The delay occasioned by the granting of the motion to continuance would also be excludable for the reason that the ends of justice served by the granting of the continuance outweigh the interest of the public and the Defendant in a speedy trial.

**WHEREFORE:** The Defendant, Juan Briseno, hereby moves the Court to continue the jury trial herein to a date in September of 2014.

RESPECTFULLY SUBMITTED:


s/Arlington J. Foley
Arlington J. Foley, Atty. #6905-45
Attorney for Defendant, Juan Briseno
1942 North Main Street
Crown Point, IN  46307
Tel: (219) 661-1200

s/John Maksimovich
John Maksimovich, Atty. #9950-45
Attorney for Defendant, Juan Briseno
1946 North Main Street
Crown Point, IN 46307
Tel: (219) 663-1900

1252

**CERTIFICATE OF SERVICE**

       I certify that on the <u>31st</u> day of <u>January,</u> 2014 service of a true and complete copy of the above and foregoing pleading or paper was made upon each party or attorney of record herein by the electronic case filing system (ECF).

<div style="text-align:center;">

By:     <u>     s/Arlington J. Foley      </u>

Arlington J. Foley, Attorney at Law

</div>

1253

```
MIME-Version:1.0
From:CMECFinnd@innd.uscourts.gov
To:CMECFinnd@localhost.localdomain
Bcc:
--Case Participants: Bryan M Truitt (bryan@tblawyers.com, sherrie@tblawyers.com), David J
Nozick - AUSA (david.nozick@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov,
susan.devries@usdoj.gov, usainn.ecfcivil@usdoj.gov), Kurt R Earnst (kre@braje-nelson.com),
Paul Jeffrey Schlesinger (pjeffslaw@aol.com), Pablo DeCastro
(pdecastro@rascia-decastro.com, ysierra@rascia-decastro.com), Sheldon B Nagelberg
(sbnagelberglaw@att.net), Thomas W Vanes (b.lynneadams@yahoo.com,
tom.vanes@sbcglobal.net), John T Theis (theislaw@aol.com), Catherine A Lake
(attyclake@sbcglobal.net), Adam Tavitas (adtavitas@aol.com, b.lynneadams@yahoo.com), Dean
R Lanter - AUSA (dean.lanter@usdoj.gov, janet.eisenmann@usdoj.gov,
usainn.ecfcivil@usdoj.gov), John E Martin - FCD (john_martin@fd.org), Scott L King
(dwilliams@scottkinggroup.com, sking@scottkinggroup.com), Mark A Psimos
(psimoslaw@airbaud.net), Ihor Alexander Woloshansky (ihorlawyer@hotmail.com), James N
Thiros (jim@thiros.com, lynn@thiros.com), Robert L Rascia (rrascia@rascia-decastro.com,
ysierra@rascia-decastro.com), Gojko Kasich (gkasich@crownlaw.com, gkasich@gmail.com),
Arlington J Foley (arlingtonfoley@att.net), Roxanne Mendez Johnson
(attorneyrmj@gmail.com), Visvaldis P Kupsis (vpkupsis@hotmail.com), Stephen Edward Scheele
(pkd@gk4law.com, ses@gk4law.com), Jack Friedlander (jack@jackfriedlander.com,
office@jackfriedlander.com), Bruce R Hegyi - AUSA (bruce.hegyi@usdoj.gov), R Brian
Woodward (carolb@wbbklaw.com, rbwoodward@wbbklaw.com), John Maksimovich
(criminallaw@johnmaksimovich.com), David E Vandercoy (david.vandercoy@valpo.edu), Chief
Judge Philip P Simon (denise_woodside@innd.uscourts.gov, jacob_hamann@innd.uscourts.gov,
katherine_welsh@innd.uscourts.gov, mira_serrill-robins@innd.uscourts.gov,
noel_collins@innd.uscourts.gov, philip_simon@innd.uscourts.gov), Magistrate Judge Andrew P
Rodovich (rodovich_chambers@innd.uscourts.gov)
--Non Case Participants: Matthew D Soliday (office@matthewsolidaylaw.com),
Probation/Pretrial Services (innpml_cmecf@innd.uscourts.gov), U S Marshal
(inn.docket-fw@usdoj.gov, inn.docket-sb@usdoj.gov, usms.27@usdoj.gov)
--No Notice Sent:

Message-Id:2451505@innd.uscourts.gov
Subject:Activity in Case 2:11-cr-00077-PPS-APR United States of America v. Briseno et al
Notice of Hearing/Deadlines
Content-Type: text/html
```

**U.S. District Court Northern District of Indiana [LIVE]**

**USDC Northern Indiana**

**Notice of Electronic Filing**

The following transaction was entered on 2/11/2014 at 1:01 PM EST and filed on 2/11/2014

| | |
|---|---|
| **Case Name:** | United States of America v. Briseno et al |
| **Case Number:** | 2:11–cr–00077–PPS–APR |
| **Filer:** | |
| **Document Number:** | 876(No document attached) |

**Docket Text:**

 **NOTICE OF HEARING as to Juan Briseno: Motion Hearing (on the Motion to Continue Trial [849]) now scheduled for 2/12/2014 09:30 AM (Central/Hammond time) in US District Court – Hammond before Chief Judge Philip P Simon. Atty Bruce Hegyi shall appear by phone, all other cnsl shall appear in person. Note to USM: defense cnsl has indicated that the dft's apperance is not necessary for this hearing.(nac)**

**2:11−cr−00077−PPS−APR−1 Notice has been electronically mailed to:**

David E Vandercoy david.vandercoy@valpo.edu

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com, gkasich@gmail.com

Scott L King sking@scottkinggroup.com, dwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net, b.lynneadams@yahoo.com

Ihor Alexander Woloshansky ihorlawyer@hotmail.com

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin − FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje−nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia−decastro.com, ysierra@rascia−decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia−decastro.com, ysierra@rascia−decastro.com

Dean R Lanter − AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick − AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov,

janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Bruce R Hegyi – AUSA bruce.hegyi@usdoj.gov

**2:11–cr–00077–PPS–APR–1 Notice has been delivered by U.S. Mail or other means to:**

```
MIME-Version:1.0
From:CMECFinnd@innd.uscourts.gov
To:CMECFinnd@localhost.localdomain
Bcc:
--Case Participants: Pablo DeCastro (pdecastro@rascia-decastro.com,
ysierra@rascia-decastro.com), Kurt R Earnst (kre@braje-nelson.com), Arlington J Foley
(arlingtonfoley@att.net), Jack Friedlander (jack@jackfriedlander.com,
office@jackfriedlander.com), Bruce R Hegyi - AUSA (bruce.hegyi@usdoj.gov), Roxanne Mendez
Johnson (attorneyrmj@gmail.com), Gojko Kasich (gkasich@crownlaw.com, gkasich@gmail.com),
Scott L King (dwilliams@scottkinggroup.com, sking@scottkinggroup.com), Visvaldis P Kupsis
(vpkupsis@hotmail.com), Catherine A Lake (attyclake@sbcglobal.net), Dean R Lanter - AUSA
(dean.lanter@usdoj.gov, janet.eisenmann@usdoj.gov, usainn.ecfcivil@usdoj.gov), John
Maksimovich (criminallaw@johnmaksimovich.com), John E Martin - FCD (john_martin@fd.org),
Sheldon B Nagelberg (sbnagelberglaw@att.net), David J Nozick - AUSA
(david.nozick@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov,
susan.devries@usdoj.gov, usainn.ecfcivil@usdoj.gov), Mark A Psimos
(psimoslaw@airbaud.net), Robert L Rascia (rrascia@rascia-decastro.com,
ysierra@rascia-decastro.com), Stephen Edward Scheele (pkd@gk4law.com, ses@gk4law.com),
Paul Jeffrey Schlesinger (pjeffslaw@aol.com), Adam Tavitas (adtavitas@aol.com,
b.lynneadams@yahoo.com), John T Theis (theislaw@aol.com), James N Thiros (jim@thiros.com,
lynn@thiros.com), Bryan M Truitt (bryan@tblawyers.com, sherrie@tblawyers.com), David E
Vandercoy (david.vandercoy@valpo.edu), Thomas W Vanes (b.lynneadams@yahoo.com,
tom.vanes@sbcglobal.net), Ihor Alexander Woloshansky (ihorlawyer@hotmail.com), R Brian
Woodward (carolb@wbbklaw.com, rbwoodward@wbbklaw.com), Magistrate Judge Andrew P Rodovich
(rodovich_chambers@innd.uscourts.gov), Chief Judge Philip P Simon
(denise_woodside@innd.uscourts.gov, jacob_hamann@innd.uscourts.gov,
katherine_welsh@innd.uscourts.gov, mira_serrill-robins@innd.uscourts.gov,
noel_collins@innd.uscourts.gov, philip_simon@innd.uscourts.gov)
--Non Case Participants: Matthew D Soliday (office@matthewsolidaylaw.com),
Probation/Pretrial Services (innpml_cmecf@innd.uscourts.gov), U S Marshal
(inn.docket-fw@usdoj.gov, inn.docket-sb@usdoj.gov, usms.27@usdoj.gov)
--No Notice Sent:

Message-Id:2452400@innd.uscourts.gov
Subject:Activity in Case 2:11-cr-00077-PPS-APR United States of America v. Briseno et al
Terminate Deadlines and Hearings
Content-Type: text/html
```

### U.S. District Court Northern District of Indiana [LIVE]

### USDC Northern Indiana

## Notice of Electronic Filing

The following transaction was entered on 2/12/2014 at 11:51 AM EST and filed on 2/12/2014

| | |
|---|---|
| **Case Name:** | United States of America v. Briseno et al |
| **Case Number:** | 2:11–cr–00077–PPS–APR |
| **Filer:** | |
| **Document Number:** | No document attached |

**Docket Text:**
**Terminate Jury Trial date of April 7, 2014 for dft Juan Briseno. Ruling made by the Court at the hearing held on 2/12/2014. A new trial date will be entered by the Court at the next Status Hearing to be held in approximately two weeks. (nac)**

**2:11–cr–00077–PPS–APR–1 Notice has been electronically mailed to:**

David E Vandercoy david.vandercoy@valpo.edu

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com, gkasich@gmail.com

Scott L King sking@scottkinggroup.com, dwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net, b.lynneadams@yahoo.com

Ihor Alexander Woloshansky ihorlawyer@hotmail.com

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje–nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia–decastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

1258

Roxanne Mendez Johnson attorneyrmj@gmail.com

Bruce R Hegyi – AUSA bruce.hegyi@usdoj.gov

**2:11–cr–00077–PPS–APR–1 Notice has been delivered by U.S. Mail or other means to:**

```
MIME-Version:1.0
From:CMECFinnd@innd.uscourts.gov
To:CMECFinnd@localhost.localdomain
Bcc:
--Case Participants: Pablo DeCastro (pdecastro@rascia-decastro.com,
ysierra@rascia-decastro.com), Kurt R Earnst (kre@braje-nelson.com), Arlington J Foley
(arlingtonfoley@att.net), Jack Friedlander (jack@jackfriedlander.com,
office@jackfriedlander.com), Bruce R Hegyi - AUSA (bruce.hegyi@usdoj.gov), Roxanne Mendez
Johnson (attorneyrmj@gmail.com), Gojko Kasich (gkasich@crownlaw.com, gkasich@gmail.com),
Scott L King (dwilliams@scottkinggroup.com, sking@scottkinggroup.com), Visvaldis P Kupsis
(vpkupsis@hotmail.com), Catherine A Lake (attyclake@sbcglobal.net), Dean R Lanter - AUSA
(dean.lanter@usdoj.gov, janet.eisenmann@usdoj.gov, usainn.ecfcivil@usdoj.gov), John
Maksimovich (criminallaw@johnmaksimovich.com), John E Martin - FCD (john_martin@fd.org),
Sheldon B Nagelberg (sbnagelberglaw@att.net), David J Nozick - AUSA
(david.nozick@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov,
susan.devries@usdoj.gov, usainn.ecfcivil@usdoj.gov), Mark A Psimos
(psimoslaw@airbaud.net), Robert L Rascia (rrascia@rascia-decastro.com,
ysierra@rascia-decastro.com), Stephen Edward Scheele (pkd@gk4law.com, ses@gk4law.com),
Paul Jeffrey Schlesinger (pjeffslaw@aol.com), Adam Tavitas (adtavitas@aol.com,
b.lynneadams@yahoo.com), John T Theis (theislaw@aol.com), James N Thiros (jim@thiros.com,
lynn@thiros.com), Bryan M Truitt (bryan@tblawyers.com, sherrie@tblawyers.com), David E
Vandercoy (david.vandercoy@valpo.edu), Thomas W Vanes (b.lynneadams@yahoo.com,
tom.vanes@sbcglobal.net), Ihor Alexander Woloshansky (ihorlawyer@hotmail.com), R Brian
Woodward (carolb@wbbklaw.com, rbwoodward@wbbklaw.com), Magistrate Judge Andrew P Rodovich
(rodovich_chambers@innd.uscourts.gov), Chief Judge Philip P Simon
(denise_woodside@innd.uscourts.gov, jacob_hamann@innd.uscourts.gov,
katherine_welsh@innd.uscourts.gov, mira_serrill-robins@innd.uscourts.gov,
noel_collins@innd.uscourts.gov, philip_simon@innd.uscourts.gov)
--Non Case Participants: Matthew D Soliday (office@matthewsolidaylaw.com),
Probation/Pretrial Services (innpml_cmecf@innd.uscourts.gov), U S Marshal
(inn.docket-fw@usdoj.gov, inn.docket-sb@usdoj.gov, usms.27@usdoj.gov)
--No Notice Sent:

Message-Id:2453775@innd.uscourts.gov
Subject:Activity in Case 2:11-cr-00077-PPS-APR United States of America v. Briseno et al
Motion Hearing
Content-Type: text/html
```

## U.S. District Court Northern District of Indiana [LIVE]

## USDC Northern Indiana

## Notice of Electronic Filing

The following transaction was entered on 2/13/2014 at 3:36 PM EST and filed on 2/12/2014

| | |
|---|---|
| **Case Name:** | United States of America v. Briseno et al |
| **Case Number:** | 2:11-cr-00077-PPS-APR |
| **Filer:** | |
| **Document Number:** | 878(No document attached) |

**Docket Text:**

**MOTION HEARING as to Juan Briseno held on 2/12/2014 re [849] MOTION to Continue *Jury Trial* filed by Juan Briseno before Chief Judge Philip P Simon. Govt present by attys David Nozick who appears in person and atty Bruce Hegyi who appears by telephone. Dft is represented by attys John Maksimovich and Arlington Foley and does not appear in person. Court hears from both sides as to the issues of the case related to the current trial date of 4/7/2014. The Court indicates that a Status Hearing will be held in this case approximately**

**every two weeks from this point on. The next Status Hearing in this case is now scheduled for 2/28/2014 at 2:00 p.m. Discussion on potential time frames for the trial to take place. The Court GRANTS the Motion to Continue the Trial [849] without new date. The issue of the new trial date is taken under advisement by the Court until the Status Hearing scheduled for 2/28/2014. The Court ORDERS the U.S. Marshal to produce the dft for this hearing. Court hears from atty Bruce Hegyi as to projected lengths of time that the various stages of the trial may take, ie jury selection, guilt phase and penalty phase. Court Reporter Sharon Boleck–Mroz.) (nac)**

**2:11–cr–00077–PPS–APR–1 Notice has been electronically mailed to:**

David E Vandercoy david.vandercoy@valpo.edu

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com, gkasich@gmail.com

Scott L King sking@scottkinggroup.com, dwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net, b.lynneadams@yahoo.com

Ihor Alexander Woloshansky ihorlawyer@hotmail.com

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje–nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia−decastro.com, ysierra@rascia−decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia−decastro.com, ysierra@rascia−decastro.com

Dean R Lanter − AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick − AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov,
janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Bruce R Hegyi − AUSA bruce.hegyi@usdoj.gov

**2:11−cr−00077−PPS−APR−1 Notice has been delivered by U.S. Mail or other means to:**

Case: 15-2347   Document: 35   Document 879   Filed 07/27/2016   Page: 4186

Case 2:11-cr-00077-PPS-APR   Document 879   Filed 02/13/14   Page 1 of 3

2:11 CR 77

FILED

FEB 13 2014

2/9/14

ROBERT N. TRGOVICH, Clerk
U.S. DISTRICT COURT
NORTHERN DISTRICT OF INDIANA

Dear Honorable Judge Simon,

Hello my name is Juan Brisendi. I am schedule for trial in your court room on April 7. I would like to start off by saying I am in no way trying to disrespect you or this court by writing this letter directly to you. I understand that there are certian procedures to go about my situation, but I felt this is the only way I would be heard in the time frame I have. Well the reason for this letter is to inform the court of my attorney's actions. I met with my attorneys about a week and a half ago and they asked me how I felt about them filing a motion to continue my trial date. I explained to them that I didn't feel that we needed to continue trial. After our meeting before they left my attorneys told me that they were going to discuss it between themselves but were still going to file that motion. I am trying to let you know that I do not want to continue my trial. I would appriciate it if the court would hold a hearing if or when my attorneys file the motion to continue. I have been incarcerated for a little over 32 months and I feel that my attorneys had enough time to prepare for trial. I truely believe that they are continuing it for

reasons unknown to me. Once again I am sorry for having to write directly to the court. But I feel it needs to said, I would like to thank the court for taking time to read this letter and hopefully address this issue. God Bless.

Sincerely
Juan R Briseno

Juan R Briseno

**C4 BRISENO, J.**
COMMISSARY OFFICE
Porter County Jail
2755 St Rd 49
Valparaiso, In 46383

4632019374375

Honorable Judge Philip Simon
5400 Federal Plaza, Suite 1500
Hammond, IN 46320



```
MIME-Version:1.0
From:CMECFinnd@innd.uscourts.gov
To:CMECFinnd@localhost.localdomain
Bcc:
--Case Participants: Bryan M Truitt (bryan@tblawyers.com, sherrie@tblawyers.com), David J
Nozick - AUSA (david.nozick@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov,
susan.devries@usdoj.gov, usainn.ecfcivil@usdoj.gov), Kurt R Earnst (kre@braje-nelson.com),
Paul Jeffrey Schlesinger (pjeffslaw@aol.com), Pablo DeCastro
(pdecastro@rascia-decastro.com, ysierra@rascia-decastro.com), Sheldon B Nagelberg
(sbnagelberglaw@att.net), Thomas W Vanes (b.lynneadams@yahoo.com,
tom.vanes@sbcglobal.net), John T Theis (theislaw@aol.com), Catherine A Lake
(attyclake@sbcglobal.net), Adam Tavitas (adtavitas@aol.com, b.lynneadams@yahoo.com), Dean
R Lanter - AUSA (dean.lanter@usdoj.gov, janet.eisenmann@usdoj.gov,
usainn.ecfcivil@usdoj.gov), John E Martin - FCD (john_martin@fd.org), Scott L King
(dwilliams@scottkinggroup.com, sking@scottkinggroup.com), Mark A Psimos
(psimoslaw@airbaud.net), Ihor Alexander Woloshansky (ihorlawyer@hotmail.com), James N
Thiros (jim@thiros.com, lynn@thiros.com), Robert L Rascia (rrascia@rascia-decastro.com,
ysierra@rascia-decastro.com), Gojko Kasich (gkasich@crownlaw.com, gkasich@gmail.com),
Arlington J Foley (arlingtonfoley@att.net), Roxanne Mendez Johnson
(attorneyrmj@gmail.com), Visvaldis P Kupsis (vpkupsis@hotmail.com), Stephen Edward Scheele
(pkd@gk4law.com, ses@gk4law.com), Jack Friedlander (jack@jackfriedlander.com,
office@jackfriedlander.com), Bruce R Hegyi - AUSA (bruce.hegyi@usdoj.gov), R Brian
Woodward (carolb@wbbklaw.com, rbwoodward@wbbklaw.com), John Maksimovich
(criminallaw@johnmaksimovich.com), David E Vandercoy (david.vandercoy@valpo.edu),
Magistrate Judge Andrew P Rodovich (rodovich_chambers@innd.uscourts.gov), Chief Judge
Philip P Simon (denise_woodside@innd.uscourts.gov, jacob_hamann@innd.uscourts.gov,
katherine_welsh@innd.uscourts.gov, mira_serrill-robins@innd.uscourts.gov,
noel_collins@innd.uscourts.gov, philip_simon@innd.uscourts.gov)
--Non Case Participants: Matthew D Soliday (office@matthewsolidaylaw.com),
Probation/Pretrial Services (innpml_cmecf@innd.uscourts.gov), U S Marshal
(inn.docket-fw@usdoj.gov, inn.docket-sb@usdoj.gov, usms.27@usdoj.gov)
--No Notice Sent:

Message-Id:2454761@innd.uscourts.gov
Subject:Activity in Case 2:11-cr-00077-PPS-APR United States of America v. Briseno et al
Order
Content-Type: text/html
```

## U.S. District Court Northern District of Indiana [LIVE]

## USDC Northern Indiana

## Notice of Electronic Filing

The following transaction was entered on 2/14/2014 at 2:44 PM EST and filed on 2/14/2014

**Case Name:**     United States of America v. Briseno et al

**Case Number:**   2:11-cr-00077-PPS-APR

**Filer:**

**Document Number:** 881(No document attached)

**Docket Text:**
**ORDER: The Final Pretrial Conference as to Juan Briseno previously scheduled for 3/7/2014
is now VACATED. (Text entry only, no pdf is attached). Approved by Chief Judge Philip P
Simon on 2/14/2014. (nac)**

**2:11-cr-00077-PPS-APR-1 Notice has been electronically mailed to:**

David E Vandercoy david.vandercoy@valpo.edu

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com, gkasich@gmail.com

Scott L King sking@scottkinggroup.com, dwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net, b.lynneadams@yahoo.com

Ihor Alexander Woloshansky ihorlawyer@hotmail.com

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje–nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia–decastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Bruce R Hegyi – AUSA bruce.hegyi@usdoj.gov

**2:11–cr–00077–PPS–APR–1 Notice has been delivered by U.S. Mail or other means to:**

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

UNITED STATES OF AMERICA,  )
                           )
        v.                 )  2:11-cr-77
                           )
JUAN BRISENO               )

ORDER

This matter is before the court on the Motion for Disclosure of Specific Informants and

Related Information [DE 717] and the Motion for Disclosure of Scientific/Forensic Testing and

Results [DE 718].

In response to the defendant's Motion for Disclosure of Scientific/Forensic Testing and

Results, the government stated that it has turned over the test results it has received to date, but

that it is waiting for the results of additional tests and will turn over the reports upon receipt.

The court cannot compel the government to turnover something that it does not yet have, and the

government's response shows that it is aware of its obligation to turn over the reports.

Therefore, the defendant's motion [DE 718] is **DENIED.**

The government also agreed to turnover some of the information the defendant requested

in his Motion for Disclosure of Specific Informants and Related Information.  The information

that remains at issue is as follows:

1.  The name and identity of the individual or individuals naming Briseno as the shooter in
    the Luis Ortiz homicide.

2.  The name and identity of the individual who selected Briseno's photo out of a
    photographic line-up and identified Briseno as the shooter in the Harris Brown homicide.

3.  The name and identity of the individual who selected Briseno's photo out of a
    photographic line-up and identified Briseno as the shooter in the Michael Sessum

1

homicide.

4. The name and identity of the individual who selected Briseno's photo out of a photographic line-up and identified Briseno as the shooter in the Miguel Mejias homicide.

5. The name and identity of the individual who selected Briseno's photo out of a photographic line-up and identified Briseno as the shooter in the LaTroy Howard homicide.

6. The name and identity of "another individual" known to the Grand Jury and who attempted to murder victim 2 with Briseno and Robert Lockhart on August 26, 2013.

7. The name and identity of the unindicted coconspirators "known and unknown to the Grand Jury" as referenced by the government in count 1 of its Fourth Superseding Indictment naming and charging Briseno and several other individuals with conspiring to conduct racketeering activity.

8. Any promises made by the government to the informants or cooperating witnesses.

9. Copies of the complete unredacted police reports.

The government explained that it could not identify the other individual involved in the attempted murder and made known to the grand jury on August 26, 2013, because although the victim identified Lockhart and Briseno, he did not know who the third individual was. Because the record reflects that the government does not possess this information, the court cannot compel the government to turn it over. *See United States v. Morris*, 80 F.3d 1151, 1169 (7th Cir. 1996) ("[T]he government's obligation to disclose exculpatory or impeaching information under *Brady* is limited to that information which is then known to the government.").

With regard to the defendant's remaining requests, the government argues that it is premature to turn over the information. Most of the defendant's discovery requests ask for the identity of the individuals who witnessed the crimes charged in the indictment and identified the

2

defendant. The government stated that most, if not all, of these individuals will testify at trial, and for this reason the government cannot be compelled to reveal this information at this time.

The defendant relies on ***Raviaro v. United States***, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957), to argue that he is entitled to the information he requests. In ***Roviaro***, the defendant sought the identity of an undercover government agent who was the government's informant and sole witness of the crime. The informant had a proactive role in the case, was not called as a witness, and was the only person who could have amplified or contradicted the government's other witnesses. ***Roviaro***, 353 U.S. at 64-65, 77 S.Ct. at 630.

The defendant's reliance on ***Roviaro*** is misplaced for several reasons. First, the individuals whom Briseno seeks the information about were members or affiliates of the Imperial Gangsters and provided historical information to the government prior to the indictment of the case. They are not the employees of the government or the only witnesses who could rebut the other witnesses' testimony. Second, the individuals will be called to testify at trial. Finally, the government does not oppose revealing the requested information. Rather, it argues that the disclosure should not be made until the time set by the court at the pretrial conference.[1] ***Roviaro*** does not suggest that the government must make its disclosures of its witnesses at this time.

There is no general duty to disclose witnesses under Federal Rule of Criminal Procedure 16, although in capital cases, the government must produce a list of its witnesses at least three days before the trial commences. **18 U.S.C. § 3423.** *See **United States v. Braxton***, 877 F.2d 556, 560 (7th Cir. 1989). Additionally, the Jencks Act states:

---

[1] As a general rule, that disclosure will occur at least 2 weeks before trial.

1271

> In any criminal prosecution brought by the United States, no statement or report
> in the possession of the United States which was made by a Government witness
> or prospective Government witness (other than the defendant) shall be the subject
> of subpoena, discovery, or inspection until said witness has testified on direct
> examination in the trial of the case.

   18 U.S.C. § 3500(a).

Statements that fall under the Jencks Act are not producible until after the witness testifies. *See*

*United States v. Feinbert*, 502 F.2d 1180, 1182-1183 (7th Cir. 1974); *United States v. Sims*, 808

F.Supp. 607, 616 (N.D. Ill. 1992) (noting that courts have no authority to order pretrial

disclosure of material embraced by the Jencks Act).

   In his motion, the defendant seeks statements made by the government's witnesses,

specifically those statements identifying the defendant as the shooter in several homicides.   The

defendant also has asked for unredacted copies of the police reports, which would reveal the

identity of the eyewitnesses of the homicides and their respective statements.[2]  Both requests fall

within the purview of the Jencks Act as they seek the identity and statements made by

government witnesses.  The government has agreed to produce the Jencks Act materials in

advance of trial, at the time set by the court at the pretrial conference.  Pre-trial disclosure

exceeds the demands of the Jencks Act.  *United States v. Balogun*, 971 F.Supp. 1215, 1233

(N.D. Ill. 1997).  Therefore, the defendant has failed to show that he is entitled to this

information at this time.  His request is premature, and the date for the government to turnover

---

[2] The defendant has not indicated what effort, if any, he has made to obtain the police
reports from the local police departments which were prepared before the federal government
became involved with the investigation. He also has no indicated whether the reports are
available from other individuals charged in related cases.

this information will be set at the final pretrial conference as is the customary practice of this court.

The defendant also seeks information related to the agreements the government made with its witnesses. It is well established that the government must disclose evidence that affects the credibility of its witnesses. *Giglio v. United States*, 405 U.S. 150, 154, 92 S.Ct. 763, 766, 31 L.Ed.2d 104 (1972). This encompasses agreements the government made with its witnesses. *See Giglio*, 405 U.S. at 154, 92 S.Ct. at 766. Again, the defendant's request is premature. The government has acknowledged that it is aware of its duty under *Giglio*, but compelling disclosure at this juncture would amount to the government turning over its witness list. There is nothing in *Giglio* that requires the disclosure to be made before trial, and the defendant again has failed to show that he is entitled to this information at this time. *See United States v. Psihos*, 2009 WL 1033353, *1 (citing *United States v. Zambrana*, 841 F.2d 1320, 1340 (7th Cir.1988); *United States v. Allain*, 671 F.2d 248, 255 (7th Cir.1982)). Rather, the standard applied is whether the disclosure is made in time for the defendant to make use of its benefits. *See Allain*, 671 F.2d at 255. This court generally sets the date for the government to disclose this information at the pretrial conference, and the defendant has not presented any reason to vary from the practice.

Based on the foregoing reasons, the defendant's motion is **DENIED**.

ENTERED this 21st day of February, 2014

/s/ Andrew P. Rodovich
United States Magistrate Judge

5

```
MIME-Version:1.0
From:CMECFinnd@innd.uscourts.gov
To:CMECFinnd@localhost.localdomain
Bcc:
--Case Participants: Bryan M Truitt (bryan@tblawyers.com, sherrie@tblawyers.com), David J
Nozick - AUSA (david.nozick@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov,
susan.devries@usdoj.gov, usainn.ecfcivil@usdoj.gov), Kurt R Earnst (kre@braje-nelson.com),
Paul Jeffrey Schlesinger (pjeffslaw@aol.com), Pablo DeCastro
(pdecastro@rascia-decastro.com, ysierra@rascia-decastro.com), Sheldon B Nagelberg
(sbnagelberglaw@att.net), Thomas W Vanes (b.lynneadams@yahoo.com,
tom.vanes@sbcglobal.net), John T Theis (theislaw@aol.com), Catherine A Lake
(attyclake@sbcglobal.net), Adam Tavitas (adtavitas@aol.com, b.lynneadams@yahoo.com), Dean
R Lanter - AUSA (dean.lanter@usdoj.gov, janet.eisenmann@usdoj.gov,
usainn.ecfcivil@usdoj.gov), John E Martin - FCD (john_martin@fd.org), Scott L King
(dwilliams@scottkinggroup.com, sking@scottkinggroup.com), Mark A Psimos
(psimoslaw@airbaud.net), Ihor Alexander Woloshansky (ihorlawyer@hotmail.com), James N
Thiros (jim@thiros.com, lynn@thiros.com), Robert L Rascia (rrascia@rascia-decastro.com,
ysierra@rascia-decastro.com), Gojko Kasich (gkasich@crownlaw.com, gkasich@gmail.com),
Arlington J Foley (arlingtonfoley@att.net), Roxanne Mendez Johnson
(attorneyrmj@gmail.com), Visvaldis P Kupsis (vpkupsis@hotmail.com), Stephen Edward Scheele
(pkd@gk4law.com, ses@gk4law.com), Jack Friedlander (jack@jackfriedlander.com,
office@jackfriedlander.com), Bruce R Hegyi - AUSA (bruce.hegyi@usdoj.gov), R Brian
Woodward (carolb@wbbklaw.com, rbwoodward@wbbklaw.com), John Maksimovich
(criminallaw@johnmaksimovich.com), David E Vandercoy (david.vandercoy@valpo.edu),
Magistrate Judge Andrew P Rodovich (rodovich_chambers@innd.uscourts.gov), Chief Judge
Philip P Simon (denise_woodside@innd.uscourts.gov, jacob_hamann@innd.uscourts.gov,
katherine_welsh@innd.uscourts.gov, mira_serrill-robins@innd.uscourts.gov,
noel_collins@innd.uscourts.gov, philip_simon@innd.uscourts.gov)
--Non Case Participants: Matthew D Soliday (office@matthewsolidaylaw.com),
Probation/Pretrial Services (innpml_cmecf@innd.uscourts.gov), U S Marshal
(inn.docket-fw@usdoj.gov, inn.docket-sb@usdoj.gov, usms.27@usdoj.gov)
--No Notice Sent:

Message-Id:2467576@innd.uscourts.gov
Subject:Activity in Case 2:11-cr-00077-PPS-APR United States of America v. Briseno et al
Status Conference
Content-Type: text/html
```

### U.S. District Court Northern District of Indiana [LIVE]

### USDC Northern Indiana

## Notice of Electronic Filing

The following transaction was entered on 3/4/2014 at 4:02 PM EST and filed on 2/28/2014

| | |
|---|---|
| **Case Name:** | United States of America v. Briseno et al |
| **Case Number:** | 2:11-cr-00077-PPS-APR |
| **Filer:** | |
| **Document Number:** | 889(No document attached) |

**Docket Text:**

**STATUS CONFERENCE as to Juan Briseno held on 2/28/2014 before Chief Judge Philip P Simon. (Note: portions of this hearing held under seal). Govt appeared by attys David J. Nozick and Bruce R. Hegyi. Dft was present in person and by cnsl Arlington Foley and John Maksimovich. Court cites a brief history of the case regarding the motion to continue trial that was filed by the defense on 1/31/2014 [849]. At the last hearing the Court indicated that the trial would be continued however a new date was not yet selected. Defense cnsl makes**

**an oral record as to why a continuance was requested. Further discussion is held with the Court regarding this matter without the Govt in attendance (Note: these discussions are the sealed portion of this hearing and the Govt re–enters the hearing after these discussions concluded). The Court hears from dft Juan Briseno after being sworn under oath. The dft indicates that he agrees to a continuance of the trial. Discussion had on the dft's present place of incarceration. Court to investigate this matter. Defense cnsl may file a motion after giving the Court sufficient time to investigate the circumstances of the dft's move to a different facility. Court continues the 4/7/2014 trial date. A new trial date will be entered by order. Additional status conferences with the parties will be scheduled periodically after the new trial date is entered. Defendant REMANDED to custody of US Marshal.(Court Reporter Sharon Boleck–Mroz.) (nac)**

**2:11–cr–00077–PPS–APR–1 Notice has been electronically mailed to:**

David E Vandercoy david.vandercoy@valpo.edu

Arlington J Foley arlingtonfoley@att.net

Mark A Psimos psimoslaw@airbaud.net

Gojko Kasich gkasich@crownlaw.com, gkasich@gmail.com

Scott L King sking@scottkinggroup.com, dwilliams@scottkinggroup.com

Catherine A Lake attyclake@sbcglobal.net

James N Thiros jim@thiros.com, lynn@thiros.com

Thomas W Vanes tom.vanes@sbcglobal.net, b.lynneadams@yahoo.com

Ihor Alexander Woloshansky ihorlawyer@hotmail.com

R Brian Woodward rbwoodward@wbbklaw.com, carolb@wbbklaw.com

John Maksimovich criminallaw@johnmaksimovich.com

Visvaldis P Kupsis vpkupsis@hotmail.com

Sheldon B Nagelberg sbnagelberglaw@att.net

John E Martin – FCD john_martin@fd.org

Adam Tavitas Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst kre@braje–nelson.com

Bryan M Truitt bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis theislaw@aol.com

Robert L Rascia rrascia@rascia−decastro.com, ysierra@rascia−decastro.com

Paul Jeffrey Schlesinger pjeffslaw@aol.com

Pablo DeCastro pdecastro@rascia−decastro.com, ysierra@rascia−decastro.com

Dean R Lanter − AUSA dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick − AUSA David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson attorneyrmj@gmail.com

Bruce R Hegyi − AUSA bruce.hegyi@usdoj.gov

**2:11−cr−00077−PPS−APR−1 Notice has been delivered by U.S. Mail or other means to:**

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )     NO. 2:11CR77 PPS |
| | ) |
| JUAN BRISENO, | ) |
| | ) |
| Defendant. | ) |
| | ) |

## <u>SPEEDY TRIAL ORDER</u>

Defendant Juan Briseno faces the death penalty in this case, in which he is charged with 22 counts including 6 murders and 4 attempted murders. Trial of the charges against defendant Juan Briseno is currently set for April 7, 2014. Defense counsel filed a motion to continue the trial. I held a hearing with counsel on February 12. After receiving a letter from Briseno himself expressing opposition to a continuance, I held a second hearing on February 28, at which Briseno was present.

This massive prosecution, involving drug and RICO conspiracies among gang members and the often fatal violence attendant to such enterprises, has been described in a number of prior orders. The allegations of the fourth superseding indictment span a decade of violence and drug-trafficking, including more deaths than the 6 for which Juan Briseno is allegedly responsible. Of the 24 defendants, 22 have entered guilty pleas and one has been convicted at trial. Only Juan Briseno remains.

In their motion and at the two hearings, Briseno's counsel have persuasively articulated the reasons they need additional time to prepare for trial. Thousands of pages of documents need to be studied, including the transcript of the co-defendant's recent trial and materials recently

1277

disclosed in relation to that trial.  Investigation of the 10 homicide charges and two types of

conspiracy against Briseno must be completed.  Potential defenses and avenues of mitigation in

the event of conviction must be considered and explored.  On February 28, after hearing his

counsel's explanations in support of the request for continuance, Briseno expressed his agreement

that a continuance is necessary to afford sufficient time to prepare his defense.

I find pursuant to 18 U.S.C. §3161(h)(7) that the ends of justice served by a continuance

outweigh the best interest of the public and defendant Juan Briseno in a speedy trial.  Given the

extraordinary breadth and complexity of the case, and the ultimate severity of the potential

punishment, defense counsel must be given additional time in their effort to provide Briseno with

their best and most thorough representation.  In light of all the circumstances set forth in support

of a continuance, both in the written motion and in the hearings of  February 12 and February 28,

I conclude that a failure to grant a continuance would deny counsel for the defense the reasonable

time necessary for effective preparation, even taking into account counsel's exercise of due

diligence.

ACCORDINGLY:

Defendant Juan Briseno's Motion to Continue Jury Trial [DE 849] is GRANTED.

The trial of the case against defendant Juan Briseno is continued from April 7, 2014 and

reset to begin **Monday, January 12, 2015.**

SO ORDERED.

ENTERED: March 7, 2014.

 /s/ Philip P. Simon
PHILIP P. SIMON, CHIEF JUDGE
UNITED STATES DISTRICT COURT

2

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Cause No.  2:11 CR 77 PPS |
| | ) | |
| JUAN BRISENO | ) | |

NOTICE OF CRIMINAL FELONY CONVICTION UNDER FRE 609

Comes now the United States of America, by David Capp, United States Attorney for the

Northern District of Indiana, and gives notice of its intention to use impeachment by evidence of

conviction of crime under Rule 609 of the Federal Rules of Evidence.

The government hereby gives notice to Juan Briseno that if he chooses to testify at trial it

will seek to impeach him with his conviction in the following case:

On or about January 28, 2011 the United States District Court in the Northern District of Indiana
entered a judgment and conviction against Juan Briseno for the crime of Drug User in Possession
of a Firearm, a felony, in case 2:10 CR 146.

Respectfully submitted,

DAVID CAPP
UNITED STATES ATTORNEY

By:    /s/ David J. Nozick
David J. Nozick
Assistant United States Attorney
5400 Federal Plaza, Suite 1500
Hammond, Indiana 46320
(219) 937-5500

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

UNITED STATES OF AMERICA     )
                             )
            v.               )          NO. 2:11 CR 77 PPS
                             )
JUAN BRISENO                 )

CERTIFICATE OF SERVICE

The undersigned hereby certifies that the government's Notice of Criminal Felony

Conviction Under FRE 609 was electronically filed with the Clerk of the Court using the

CM/ECF system which sent notification of said filing to the following individuals:

ARLINGTON J. FOLEY
JOHN MAKSIMOVICH
(Attorneys for defendant Juan Briseno)

By:     /s/ Janet L. Eisenmann
        Janet L. Eisenmann
        U.S. Attorney's Office
        5400 Federal Plaza, Suite 1500
        Hammond, Indiana 46320
        (219) 937-5500

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | NO. 2:11CR77 PPS |
| | ) | |
| JUAN BRISENO, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**ORDER**

Counsel are directed to confer so that **no later than May 23, 2014**, the parties shall file a joint proposed voir dire questionnaire.  In addition, each party may file its own separate proposal of additional questions to which the opposing party would not agree.

SO ORDERED.

ENTERED: April 7, 2014.

     /s/ Philip P. Simon
PHILIP P. SIMON, CHIEF JUDGE
UNITED STATES DISTRICT COURT

1281

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | | |
| **Plaintiff** | | |
| **vs** | | |
| **JUAN BRISENO,** | | |
| **Defendant** | **CAUSE NO:   2:11-CR-77** | |

## <u>JUROR QUESTIONNAIRE</u>

Please Print Your Name: _____

Your Juror Number: _____

**Introduction:**

This questionnaire is intended to make jury selection more efficient in an upcoming criminal case. The answers you give in the questionnaire will help the Court and counsel to determine whether you can or should serve as a juror in this particular trial. There are no correct or wrong answers. There are only your own personal, honest, and candid answers. To ensure that your answers are accurate and truthful, you are required to give your answers under oath. All information contained in this questionnaire will be kept confidential. The information you provide will be given only to the Judge, the Clerk's Office and the parties, and will be used solely for the purpose of selecting a jury in this case.

Between now and jury selection, please do not discuss this questionnaire, or your answers to it, with anyone, including other prospective jurors, or the lawyers for either side. In addition, please do not read any newspaper articles about this case or visit any locations at

issue in this case. Do not assume that the questions show anything about what will be the evidence to be presented in this case, or that your answers will determine whether or not you will serve on this jury.

Answer each question as best you can. Remember, nothing you say is right or wrong. We are just asking you to say honestly what you think. Take your time. Please write or print clearly with a pen. If you need extra space to answer a question, you may continue an answer at the end of the questionnaire showing the number of the question being answered.

### DESCRIPTION OF THE CASE

In this case, the defendant, Juan Briseno, is charged in a multiple count indictment with Conspiracy to Participate in Racketeering Activity; Conspiracy to Possess with Intent to Distribute Cocaine and Marijuana; Murder in Aid of Racketeering Activity; Murder Resulting from the use and Carrying of a Firearm During and in Relation to a Crime of Violence. The victims alleged in the murder counts and the firearm murder counts are Luis Ortiz, Michael Sessum, Miguel Mejias, Harris Brown, Miguel Colon and Latroy Howard. Juan Briseno is facing the death penalty as one possible punishment.

This trial could last up to＿＿weeks. Today you are asked to fill out this questionnaire. Jurors will then return to court for voir dire (verbal questioning) and jury selection on the ＿＿＿＿day of＿＿＿＿＿＿＿, 2015. It is likely that evidence will be presented from 8:30 a.m. to 5:00 p.m. Monday through Friday, except for holidays and other adjournments of trial.

Service on a jury is one of the highest duties that each citizen owes to his or her country and inconvenience or ordinary financial problems related to jury service will not be enough to excuse a prospective juror. Federal law forbids any employer from discharging or discriminating against an employee because of jury service.

JUROR QUESTIONNAIRE

[If your answer is longer than the space provided, please use the two blank pages attached at the end and do not write on the back of the pages unless you run out of space on the very last page.]

Name _____

l. Date of Birth _____ Age: _____ Male_____ Female_____

2. Where were you born? _____

3. What town do you live in? _____

4. What county do you live in? _____

5. How long have you lived in this county? _____ _

6. Where else have you lived (city, state or country, if outside the United States)?

_____

7. Are you a citizen of the United States?  Yes_____ No _____

8. Can you read and understand the English language? Yes_____ No _____

**IF NO:** Has anyone read and explained this questionnaire to you, or assisted you in answering these questions in any way? Yes_____ No _____

9. There is a possibility that this trial could last _____weeks. Jury service would be required from _____AM to _____ PM, Monday through Friday, and you would have to be present for every session at the direction of the court. Do you have a medical condition that would prevent you from sitting for such length of time? Yes_____ No _____

**IF YES**: please describe. _____

_____

1284

10. Do you have family obligations, such as caring for small children or relatives who are ill or infirm, or any other problem of any kind that might make it difficult for you to serve as a juror for up to four to six weeks? Yes_____ No _____

## BACKGROUND

11. Length of time at current address: _____years

Do you live: (Please check all that apply)

_____ in a single-family house     (own_____ rent_____)

_____ Apartment     (own_____ rent_____)

_____With family

_____With friends

_____ Other (please explain):_____

If less than one year at current address, please indicate prior county, city or town:

_____

_____

12. What is your race or ethnic background? _____

13. What is your current job status?

_____ Working full-time     _____Unemployed not looking for work

_____ Working part-time     _____Unemployed looking for work

_____ Disabled     _____Homemaker

_____ Retired-When? _____     _____Full-time student

**IF NEVER EMPLOYED, PLEASE SKIP TO QUESTION 25.**

14. What company or organization do you work for?_____

15. What do you do at work? _____

16. How long have (had) you been employed in this particular position? _____

17. Does (did) your job include the responsibility of hiring/firing? Yes_____ No _____

18. Do you have a second (or third or more) job? Yes_____ No _____

**IF YES:** please describe:

_____

_____

_____

19. If retired, disabled, or unemployed, what was your occupation? _____

20. Has your occupation changed in recent years? Yes_____ No _____

**IF YES:** What was your prior occupation? _____For how long? _____

21. What is the highest level of education you completed?

_____ Grade school or less              _____Some college

_____ Some high school                  _____ College Degree

_____ High school graduate              _____ Associate's Degree

_____ Technical or business school      _____ Post graduate work

Please list any degrees or certificates you may have, the schools and colleges you attended, and

your major areas of study. _____

_____

21a. What special training or skills do you have? _____

22. What is your marital status?

_____ Married

_____ Single and never married

_____ Divorced, not remarried

_____ Divorced, remarried for_____ years

How many times have you been married? _____

23. Have you ever taken courses or had any training in any of the following subjects?

| _____ Law | _____ Law Enforcement | _____ Criminal Justice |
|---|---|---|
| _____ Criminology | _____ Sociology | _____ Psychology |
| _____ Medicine/Health | _____ Human Behavior | _____ Psychiatry |
| _____ Social Work | _____ Ethics | _____ Philosophy |
| _____ Theology | | |

Please describe the course(s) or training: _____

_____

_____

24. Please describe briefly the employment status of your past and present spouse(s) and/or

domestic partner(s), including their occupations and employers:_____

_____

_____

_____

25. What is the educational background of your spouse or mate?_____

_____

_____

26. What is the race or ethnic background of your spouse or mate?_____

_____

27. Have you or anyone in your family served, or is anyone now serving, in the military?

Yes_____ No _____

**IF YES:** Who and in what branch? _____

Years of service: _____Highest rank: _____

Type of discharge_____

Combat duty? **IF YES:** Where? _____

Ever serve as a Military Policeman, or as a judge or panel member (juror) in a court-martial?

28. Has anyone you know been injured or killed while serving in a combat or military zone?

Yes_____ No _____

**IF YES:** Who (relation to you), where, when and circumstances of injury or death:

_____

_____

29. Do you have any children? Include step-children, adopted children, foster children, and

children of domestic partner; include them all, whether they live in your household or not)

Yes_____ No_____

**IF YES:** Please state:

Age              Sex                Education                      Occupation

_____

_____

_____

30. Do you have any grandchildren?  Yes_____ No _____

**If yes**, how many?

Boys _____     What are their ages?_____

Girls _____     What are their ages?_____

31. If you live with others, list the people with whom you reside, including children:

Relationship          Sex    Age    Occupation/School          Length of Time in Residence

_____

_____

_____

_____

32. What clubs or social or political or religious organizations do you belong to?

_____

_____

_____

What leadership positions have you held within any of those groups or organizations?

_____

_____

_____

What hobbies or non-work activities you enjoy?

_____

_____

_____

33. Do you identify with any political group or philosophy? Yes_____ No _____

**IF YES**, do you identify with:

_____ Conservatives

_____ Moderates

_____ Liberals

_____ Other

Explain: _____

_____

_____

34. Are you a member of, or do you contribute time or money to any volunteer police group,

militia or police auxiliary? Yes_____ No _____

**IF YES**: please explain which one(s): _____

_____

_____

35. How would you describe your religious or spiritual beliefs? _____

_____

_____

36. How important is your religion to you?

Very important _____Important_____ Somewhat important_____Not so important_____

37. Would your religious beliefs affect your decision on an appropriate penalty for murder?

Yes _____ No _____

**IF YES:** Please explain:_____

_____

38. How do you usually get your news? (Please check all that apply):

__ Newspaper(s) (which) _____

__ Radio, including talk radio (which programs) _____

__ Television (which stations) _____

__ Magazines (which) _____

__ Internet (which sites) _____

__ Word of mouth

How many times per week do you read about/listen to the news? _____

Do you subscribe to and or log on to any web sites (blogs, discussion groups, chat rooms) or do

you have your own blog or personal website? Yes _____ No _____

**IF YES:** please describe: _____

_____

_____

39. What television shows do you regularly watch? _____

_____

_____

_____

40. Have you followed particular crime stories or criminal cases in the news, or on television

programs? Yes _____ No _____

**IF YES:** what cases or stories, or programs? _____

_____

_____

What was your interest in those cases, stories or programs? _____

_____

_____

**RELATIONSHIP TO PARTIES IN THIS CASE**

41. Do you know, or have any connection with, any of the attorneys in this case or with any member of their offices?

**GOVERNMENT** (United States Attorneys for the Northern District of Indiana):

David Nozick                                                    Yes_____ No_____

Bruce Hegyi                                                     Yes_____ No_____

Dean Lanter                                                     Yes_____ No_____

Any member or members of their offices          Yes_____ No_____

**DEFENSE**:

Arlington J. Foley                                              Yes_____ No_____

John Maksimovich                                            Yes_____ No_____

Any member or members of their offices          Yes_____ No_____

**IF YES:** please explain: _____

_____

42. Do you know anyone else at the Office of the United States Attorney for the Northern District of Indiana, or have you had any dealings with that office? Yes_____ No_____

**IF YES**: please explain: _____

_____

43. Do you know or have any connection (personal, business, or social) with United States District Court Judge Paul Simon or any member of his staff? Yes_____ No_____

**IF YES:** please explain: _____

Case 2:11-cr-00077-PPS-APR   Document 952   Filed 05/23/14   Page 12 of 42

44. The defendant in this case is Juan Briseno. The defendant is from Hammond, Indiana.  Do you know, or think you may know, anything about him or members of his family?

Yes_____ No_____

**IF YES:** please explain: _____

_____

_____

45. The victims alleged in the indictment are:  Luis Ortiz, Michael Sessum, Miguel Mejias, Harris Brown, Miguel Colon, and Latroy Howard.  Do you know or think you know anything about any of them or their families? Yes_____ No_____

**IF YES:** please explain: _____

_____

_____

46. During the course of this trial, you will hear testimony related to events in the area of the South Side of East Chicago, Indiana, the Harbor Side of East Chicago, Indiana, Hammond, Indiana, and specific locations within these neighborhoods.  Do you have any familiarity with these locations? Yes_____ No_____

**IF YES:** please explain: _____

_____

_____

47. Have you, any members of your family or close personal friends ever been: (please check all

that apply):

_____ the victim of a crime (whether or not it was reported to the police)

_____ a witness to a crime

_____ accused of or charged with a crime

_____ investigated for a crime

**IF YES:** please describe the situation. _____

_____

_____

_____

If there was an arrest, what was the outcome? _____

If there was a trial, did you testify? Yes_____ No_____

Please describe any contact you had with police or courts as a result of this situation.

_____

_____

_____

Were you satisfied with the way the matter was handled by law enforcement and/or the Court?

Yes_____ No_____

If you were not satisfied, please explain: _____

_____

_____

_____

1294

48. Have you ever known anyone who was the victim of homicide? (Homicide includes murder, manslaughter, vehicular homicide, or death by any means, including an automobile)

Yes_____ No_____

**IF YES:** please include details:

Relationship to you: _____

When did it occur?_____

_____ Where did it occur? _____

What happened? _____

49. Have you or anyone you know ever been the victim of violence such as a physical assault, a shooting, a stabbing, a beating, domestic violence or any other violence? Yes_____ No_____

**IF YES**: is this: _____ yourself _____family _____friend

For each incident, please explain the circumstances:

_____

_____

_____

50. Have you or anyone you know been threatened by anyone or made to feel afraid for your life or the lives of others? Yes_____ No_____

**IF YES:** Please explain: _____

_____

_____

_____

51. Have you or anyone that you know and/or are related to ever been a member of a gang/street gang?  Yes_____ No_____

**IF YES:** for each such person, including yourself, please identify the individual and explain:

_____

_____

_____

_____

52. Have you or anyone that you know and/or are related to ever been the victim of gang or suspected gang activity? Yes\_\_\_\_\_ No\_\_\_\_\_

**IF YES:** please explain:_____

_____

_____

_____

53. Have you ever been questioned in any matter by any federal, state or local law enforcement agency or agent (including the Department of Justice, Federal Bureau of Investigation (FBI), Drug Enforcement Administration (DEA), Alcohol, Tobacco & Firearms (ATF), Internal Revenue Service (IRS), Immigration & Naturalization Service (INS), Customs Service, or Department of Homeland Security, East Chicago Police Department, Lake County Sheriff's Department, Hammond Police Department, Lake County Federal Drug Task Force)? Yes\_\_\_\_\_ No\_\_\_\_\_

**IF YES:** please explain: _____

_____

_____

_____

54. Have you or any member of your immediate family or any close friends ever been involved in a civil lawsuit, either as a \_\_\_\_\_ witness, \_\_\_\_\_plaintiff, or \_\_\_\_\_defendant?

Yes\_\_\_\_\_ No\_\_\_\_\_

**IF YES:** please explain: _____

_____

_____

_____

55. Have you, or do you expect to, become involved in any legal action or dispute with the United States, or any officers, agents, or employees of the United States? Yes\_\_\_\_\_ No\_\_\_\_\_

**IF YES**: please explain: _____

_____

_____

_____

56. Have you or any of your family or close friends ever been trained or worked as an employee or consultant or volunteer in any of the following fields?

| Occupation | Person | Please Explain: |
|---|---|---|
| Legal<br>Attorney<br>Legal Secretary/Assistant<br>Investigator<br>Prosecutor's Office<br>Public Defenders Office<br>Other | ☐ Self<br>☐ Spouse<br>☐ Family<br>☐ Friend<br>☐ NONE | |
| Courts<br>Judge<br>Court Clerk<br>Court Reporter<br>Other | ☐ Self<br>☐ Spouse<br>☐ Family<br>☐ Friend<br>☐ NONE | |
| Law Enforcement<br>Local Police Department<br>Sheriff's Department<br>State Police<br>FBI<br>DEA<br>HFDTF<br>Other | ☐ Self<br>☐ Spouse<br>☐ Family<br>☐ Friend<br>☐ NONE | |
| Corrections<br>Probation Office<br>Prison<br>Jail<br>Halfway House<br>Work Release<br>Other | ☐ Self<br>☐ Spouse<br>☐ Family<br>☐ Friend<br>☐ NONE | |

57. Have you, or anyone close to you ever considered working in law enforcement or applied

for a job in law enforcement? Yes_____ No_____

**IF YES:** please explain_____

_____

_____

58. Do you have an opinion about the credibility of police officers or law enforcement officials?

Yes_____ No_____

1298

**IF YES:** Please explain: _____

_____

_____

_____

59. Do you believe that police officers are more likely or less likely to tell the truth than other

witnesses? _____ more likely _____ no difference _____ less likely

60. Do you have any impressions, opinions or beliefs about police, Federal Bureau of

Investigation (FBI), Department of Justice (DOJ), or law enforcement agencies generally that

could cause you to either lean in favor of the government or to lean against the government?

Yes_____ No_____

**IF YES:** please explain: _____

_____

_____

_____

61. Have you ever served as a grand juror in the past? Yes_____ No_____

**IF YES**:

How many times? _____

When? _____

Type of case(s): _____

Were you a foreperson? Yes_____ No_____

62. Have you ever served as a trial juror in the past? Yes_____ No_____

**IF YES**:

How many times? _____

When? _____

Type of case(s): _____

Did the case(s) reach a verdict? Yes_____ No_____

**IF NO:** Was that because the jury could not agree on a verdict or because of some other

reason? Give reason: _____

_____

_____

_____

How did you feel about your jury service? _____

Were you selected as the foreperson?_____

63. How serious a problem do you think crime is in your community?

_____ Very Serious

_____ Somewhat Serious

_____ Not a Serious Problem

64. In general, what do you think should be done about the crime problem? Please explain:

_____

_____

_____

65. Do you believe that the criminal justice system makes it too hard for the police and

prosecutors to convict people accused of homicide? Yes_____ No_____

**IF YES:** please explain: _____

_____

_____

1300

66. Have you ever had a friend or family member in prison or jail? Yes_____ No_____

**IF YES:** please explain: _____

_____

_____

67. Have you ever visited the inside of a prison or a jail? Yes_____ No_____

**Whether or not** you have ever visited a prison or jail, do you think the treatment of convicted

prisoners is: _____too lenient _____ too harsh _____ appropriate

Please explain: _____

_____

_____

_____

68. Have you ever known anyone who had a drug or alcohol abuse problem?

Yes_____ No_____

**IF YES:** Who? (Check all that apply)

_____Self _____Family Member _____Friend _____Other

What drug substances (drugs/alcohol) are/were involved: _____

_____

_____

69. Have you ever known anyone who was involved with drugs? Yes_____ No_____

**IF YES:** please explain: who (relation to you), the drug, and the extent of the involvement.

_____

_____

70. Have you, or anyone close to you, ever had a drug dependency problem, either with prescription drugs or street drugs? Yes_____ No_____

**IF YES**: please explain: who (relation to you), the drug, and the impact of the dependency on that person's behavior: _____

_____

_____

71. Have you, or anyone close to you, ever worked with, volunteered in or belonged to an organization concerned with drug treatment or drug education? Yes_____ No_____

**IF YES:** please explain: _____

_____

_____

72. Have you, or anyone close to you, ever been involved in any way in a drug-related crime?

Yes_____ No_____

**IF YES**: please explain: _____

_____

_____

73. How do you feel about people who use cocaine, or other illegal drugs, or who abuse prescription drugs? Please explain: _____

_____

1302

74. Do you feel differently about people who sell marijuana, cocaine, ecstasy or other illegal

drugs? Yes_____ No_____

**IF YES:** please explain how you feel and why?_____

_____

_____

_____

75. Do you have any particular experiences, feelings or beliefs that might influence you as a

juror in a case where someone died involving marijuana, cocaine, ecstasy or other illegal drugs?

Yes_____ No_____

**IF YES**: please explain: _____

_____

_____

_____

76. The Constitution says a defendant arrested for murder is presumed innocent. How do you

feel about this requirement? Please explain: _____

_____

_____

_____

77. The Constitution says a defendant has the right not to testify, and it shall not be held

against him if he does not take the witness stand. How do you feel about this requirement?

Please explain: _____

_____

_____

78. Are you concerned that witnesses who are facing criminal charges are more likely to lie to

avoid full punishment for their crimes? Yes_____ No_____

**IF YES:** please explain: _____

_____

_____

79. Do you feel that there are too many technicalities in the law that allow guilty people to go

free? Yes_____ No_____

**IF YES**: please explain: _____

_____

_____

80. Do you feel that the law should concern itself more with victims of crime than with those

accused/convicted of crimes? Yes_____ No_____

**IF YES**: please explain: _____

_____

_____

81. Do you believe life imprisonment without parole is a harsh punishment? Yes_____ No_____

**IF YES:** please explain: _____

_____

_____

**CASE RELATED ISSUES**

82. What have you seen, heard or read about this case or any of the people involved in it?

Please explain: _____

_____

_____

Source(s)?_____

What was your personal reaction to what you saw, heard or read? _____

_____

_____

_____

83. Have you participated in any conversations or discussions about the case with anyone with

knowledge of the facts or circumstances, or opinions about what the outcome should be?

Yes_____ No_____

IF YES: please explain: _____

_____

_____

_____

84. Have you expressed an opinion or impression as to the guilt or innocence of Juan Briseno at

any prior time? Yes_____ No_____

85. Has anyone spoken with you, or indirectly tried to contact you, at any time, including today,

about the case? Yes_____ No_____

86. Have you overheard anything about the case? Yes_____ No_____

If so, what did you hear: _____

_____

_____

_____

87. Based on what you have seen, read or heard, please tell us what feelings or opinions you may have formed about this case, the charges or the defendant, Juan Briseno._____

_____

_____

_____

a. Would these feelings make it difficult for you to sit as a fair and impartial juror in this type of case? Yes_____ No_____

**IF YES**, please explain: _____

_____

_____

b. Have you formed an opinion regarding the guilt or innocence of the defendant, based on what you have seen, read or heard? Yes_____ No_____

c. What is that opinion? _____

_____

_____

d. Have you formed an opinion regarding the death penalty? Yes_____ No_____

IF YES, please explain: _____

_____

88. Are you inclined to feel that Mr. Briseno must be guilty because the Government is seeking the death penalty, and the Government would not seek the death penalty unless the defendant was guilty of something? Yes_____ No_____

89. Do you know any reason whatsoever why you could not sit on a jury in a case involving the defendant, Juan Briseno? Yes_____ No_____ Not Sure_____

**IF YES or NOT SURE**, please explain: _____

_____

_____

_____

90. The judge will tell you that the Government has the burden of proving that Mr. Juan Briseno is guilty of each charge beyond a reasonable doubt.  If the Government doesn't do this for a particular charge, you will have to vote "not guilty" regarding that charge. Does that seem fair to you? Yes_____ No_____

Please explain your answer_____

_____

_____

_____

91. Some people say "where there's smoke there's fire" and if someone's accused of a crime they must have had something to do with it. What do you think?_____

_____

_____

_____

1307

92. Are you starting out assuming that the defendant has probably done something wrong if the case has come all the way to trial? _____

_____

_____

93. Under our criminal justice system, the person on trial is presumed innocent unless proven guilty beyond a reasonable doubt. Some people think that it should be the other way around and that a person who is on trial should have to prove that he or she is innocent. What do you think?_____

_____

_____

94. If you are selected as a juror in this case would you expect defense counsel to prove that Juan Briseno is not guilty? Yes_____ No_____ Not Sure_____

95. Under our system, a person on trial is presumed innocent and does not have to testify. If the Government doesn't prove guilt beyond a reasonable doubt, then the verdict must be not guilty even if the person doesn't tell his or her side of the story. Does that make sense to you? Yes_____ No_____ Not Sure_____

96. Would you tend to think that a person who did not testify was more likely to be guilty than not guilty? Yes_____ No_____

97. Are your feelings that someone **should** testify so strong that you would think Juan Briseno is guilty if he didn't testify? Yes_____ No_____

98. Would the nature of the charges - Conspiracy to Participate in Racketeering Activity; Conspiracy to Possess with Intent to Distribute Cocaine and Marijuana; Murder in Aid of Racketeering Activity; Murder Resulting from the use and Carrying of a Firearm During and in Relation to a Crime of Violence - affect your ability to be a fair and impartial juror?

Yes_____ No_____ Not Sure_____

99. If you are chosen as a juror in this case, you will hear evidence about the death of several individuals. You may also see very disturbing pictures of these individuals after they had been killed. You may also see autopsy photographs.

a. Will you be able to listen to the testimony about the victims' deaths?

Yes_____ No_____ Not Sure_____

b. Will you be able to look at pictures of the victims after their deaths?

Yes_____ No_____ Not Sure_____

c. After listening to the testimony and looking at the photographs, will you be able to set aside your emotions and listen to all the evidence and then fairly and impartially decide this case based solely on the evidence presented to you and the instructions provided by the court?

Yes_____ No_____ Not Sure_____

100. Do you have an opinion regarding the validity or worth of psychology, psychiatry or related study of how the mind works and affects behavior? Yes_____ No_____

**IF YES,** please explain your opinion and how you came to that opinion. _____

_____

_____

_____

101. What are your general feelings or opinions about social work, psychiatry and psychology?

_____

_____

_____

102. Have you, any family member, or a close friend ever sought the assistance of a social

worker, psychiatrist, psychologist or counselor to help with a personal problem?

Yes_____ No_____

**IF YES:** do you think this experience was helpful to you, the family member, or close friend?

Yes_____ No_____

Please explain your answer._____

_____

_____

_____

103. How do you feel about psychiatric or psychological experts who testify in criminal trials?

Please explain. _____

_____

_____

_____

104. Do you feel that a defendant's use of alcohol or drugs should be a consideration in a

homicide trial? Yes_____ No_____

Please explain: _____

_____

_____

105. Do you feel that a victim's use of alcohol or drugs should be a consideration in a homicide

trial? Yes_____ No_____

Please explain: _____

_____

_____

_____

106. As to the organizations below with which you are familiar, please indicate which have

goals or purposes with which you agree or with which you sympathize. Also indicate those with

which you disagree, or those about which your feelings are neutral. If you are unaware of the

goals or purposes of an organization, please indicate so. **Answer this question regardless of**

**whether or not you are a member of the particular organization**. You may add additional

organizations in the blank spaces at the bottom of the list.

| American Civil Liberties Union (ACLU) | Unaware | Agree | Neutral | Disagree |
|---|---|---|---|---|
| Handgun Control, Inc. | Unaware | Agree | Neutral | Disagree |
| Ku Klux Klan (KKK) | Unaware | Agree | Neutral | Disagree |
| Mothers Against Drunk Driving (MADD) | Unaware | Agree | Neutral | Disagree |
| Alcoholics Anonymous (AA) | Unaware | Agree | Neutral | Disagree |
| Narcotics Anonymous (NA) | Unaware | Agree | Neutral | Disagree |
| Al Anon (for families of alcoholics) | Unaware | Agree | Neutral | Disagree |
| Nar Anon (for families of drug addicts) | Unaware | Agree | Neutral | Disagree |
| National Rifle Association (NRA) | Unaware | Agree | Neutral | Disagree |
| Police Group or Auxiliary | Unaware | Agree | Neutral | Disagree |
| _____ | Unaware | Agree | Neutral | Disagree |

**POTENTIAL SENTENCES**

As noted above, the Government has charged Juan Briseno with a capital felony. That means that if Juan Briseno is convicted, he will face a sentence of either life in prison without possibility of release (that is, he could never be released as long as he lives), or the death penalty. That Mr. Briseno is facing a potential death sentence says only that the Government has charged him with a capital crime. It says nothing about whether he is guilty of that crime. Mr. Briseno is presumed innocent of all charges, and the question of possible punishment will not arise unless the government proves to every juror beyond a reasonable doubt that Mr. Briseno is guilty of a capital crime.

During the innocence/guilt phase, the possibility of punishment must not enter into your deliberations at all. If at the conclusion of the innocence/guilt phase the jury finds Mr. Briseno not guilty of murder, the jury's work is complete and the trial is over. If there is a guilty verdict for a capital crime, then there will be a punishment phase.

Under our law, a death sentence is never automatic. The decision between death and life in prison without any possibility of release is a decision made, not by the judge, but by each juror. Only if each and every juror votes for the death penalty (a unanimous death penalty verdict), can the death penalty be imposed. A unanimous verdict for a death sentence means the death penalty must be imposed and the judge would not have the authority to impose a lesser sentence. On the other hand, if the jury were to decide that the verdict should be life in prison, then the sentence would have to be life in prison without possibility of release. The judge could not change the sentence.

This means that if there is a penalty phase each individual juror has the power and duty to decide whether Mr. Briseno will live or die. In making this decision, each juror, after listening to all the evidence and deliberating with his or her fellow jurors, must use his or her own judgment. Even if all the jurors agree on the facts, it remains for each juror to decide which sentence is best, life in prison or death.

Jurors are asked to make this decision based on evidence presented first by the government and then by the defense. As with the innocence/guilt phase of a trial, the order in which the evidence is presented at the penalty phase does not mean anything about the quality of the evidence.  You have to listen to all the evidence put on by both sides before you can even begin to weigh any of the evidence.

If there is a penalty phase at the trial, the government will present evidence of certain aggravating factors (relating to the defendant's state of mind and certain other facts about the crime itself) that the law says must be proved beyond a reasonable doubt before any death sentence can be imposed. It is not enough under the law for a defendant to be found guilty. Without proof of additional aggravating factors, there can be no death sentence. The law puts a higher burden on the government than on the defendants.

After the government's evidence, during the penalty phase, Mr. Briseno will have the chance to present evidence of mitigating factors or circumstances. Mitigating factors are not legal defenses to the crime. Self-defense, insanity, and accident are all examples of legal defenses to a murder charge. Legal defenses may be raised during the innocence/guilt portion of the trial. Mitigating factors are not such legal defenses. They are raised during the punishment trial. Mitigating factors are reasons, circumstances, or events in the life of a defendant that suggest the most just sentence should be life in prison without release rather

than execution.

Each juror must consider any information submitted by the defendant in mitigation and may also consider other factors as mitigation.  Unlike findings of aggravating factors, findings of mitigating factors do not need to be unanimous, and they need not be proved beyond a reasonable doubt. If any juror finds a mitigating factor by a preponderance of the evidence (that it is more likely than not that the factor exists), then the juror must consider that mitigating factor while deliberating about punishment. Even if no juror found any mitigating factor, each juror would still have to be persuaded that the aggravating factors were themselves enough to justify the death sentence in this case.

There are no correct or wrong answers to the following questions. There are only your honest and candid views. No one will judge you for holding one view or another; we only want to know what you truly think.

Remember that Mr. Briseno is facing the death penalty not because he has been proven guilty, but because the government has chosen to pursue a sentence of death.

**YOU MUST NOT ASSUME FROM ANY OF THE QUESTIONS**

**ASKED THAT MR. BRISENO IS GUILTY OF ANYTHING.**

107. What are your views and/or opinions regarding the death penalty?

_____

_____

_____

108. On a scale of one to ten, with 1 being strongly favor the death penalty and 10 being

strongly opposed, where do you place your opinion? (Please circle the number).

Strongly favor      1  2  3  4  5  6  7  8  9  10      St rongly opposed

Which of the following best describes your view of the death penalty: [Please check (✓) one]:

Favor in every case where someone has committed an intentional murder       ☐

Favor in most but not all intentional murder cases       ☐

Favor in some intentional murder cases, but not all intentional murder cases       ☐

Opposed with a few exceptions       ☐

Opposed in every case even where someone has been intentionally murdered       ☐

Please tell us why you feel this way: _____

_____

_____

109. Do you believe that the death penalty deters crime? Yes_____ No_____

**IF YES**: please explain: _____

_____

_____

110. Please tell us your current feelings or opinions about whether the death penalty should be

used to punish intentional murder: _____

_____

_____

111. Have you ever had a different opinion about the death penalty? Yes_____ No_____

**IF YES**: what was your view, and what made you change? _____

_____

_____

112. What are your feelings about a sentence of life imprisonment without release for

intentional premeditated murder? _____

_____

_____

113. In determining whether to sentence someone to life imprisonment or death, what would

be important for you to know? What would you want to know about? (Please briefly describe)

a. The crime/circumstances

    b. The person convicted

    c. The victim

    d. Anything else

Please explain: _____

_____

114. The death penalty is used: (Check at least one)

     _____Too often      _____Appropriately

     _____Randomly      _____Unfairly

     _____Not often enough      _____Not enough information to form an opinion

Please explain: _____

_____

_____

_____

115. Do you believe in the adage "an eye for an eye"? Yes_____ No_____

a. What does the adage "an eye for an eye" mean to you?

_____

_____

b. Are your feelings about this adage based on religious beliefs? Yes_____ No_____

**IF YES**, please explain: _____

_____

_____

116. If you believe in the death penalty, under what circumstances would you impose the death

penalty? Why? _____

_____

_____

117. Under what circumstances would you impose life without possibility of release? Why?

_____

_____

_____

118. Mr. Briseno is charged with killing Luis Ortiz, Michael Sessum, Miguel Mejias, Harris Brown, Miguel Colon, and Latroy Howard in aid of racketeering activity and firearm murder.  Some people might think that if a person were convicted of these charges, there is nothing they could hear from the defense that would make them consider a life sentence instead of the death penalty.  What do you think?_____

_____

_____

_____

119. Should the jury find Juan Briseno guilty of the murders of Luis Ortiz, Michael Sessum, Miguel Mejias, Harris Brown, Miguel Colon, and Latroy Howard (six victims), would it still be possible for you to consider a life sentence instead of the death penalty for Juan Briseno?

_____

_____

_____

120. Are you concerned about the cost to taxpayers of keeping a murderer in prison on a sentence of life without possibility of release? Yes_____ No_____

Please explain your answer. _____

_____

_____

121. Are you concerned about the costs to taxpayers for a case where the government seeks

the death penalty rather than life without possibility of release? Yes_____ No_____

Please explain your answer. _____

_____

_____

122. Will you be concerned about the opinions of your family, friends, co-workers or the

general public should you serve as a juror on this murder case and make a decision with respect

to punishment? Yes_____ No_____

Please explain your answer. _____

_____

_____

123. Please read the following two statements, take time to reflect and check: if either

statement applies to you. If neither statement applies, please leave the question blank.

_____I feel that my support of the death penalty will make it difficult for me to perform my

duty fairly and impartially as a juror in the first phase of the trial, where I must decide if the

Government has proven its charge of capital murder beyond a reasonable doubt.

_____I feel that my opposition to the death penalty will make it difficult for me to perform my

duty fairly and impartially as juror in the first phase of the trial, where I must decide if the Government has proven its charge of capital murder beyond a reasonable doubt.

123a. Is there any additional information not asked about in this questionnaire which you feel that the judge and/or the attorneys should know about you before considering you for the jury in this case? Yes_____ No_____

**IF YES:** please explain: _____

_____

_____

_____

124. Is there anything you would like to discuss privately that would have bearing on your being a juror? Yes_____ No_____

125. As a result of filling out this questionnaire, have you formed an opinion about innocence or guilt or punishment of the defendant in this case? Yes_____ No_____

**IF YES**: please explain: _____

_____

_____

_____

126. Do you know of any reason whatsoever why you cannot sit as a fair and impartial juror in this case? Yes_____ No_____

**IF YES**: please explain: _____

_____

_____

_____

EXTRA SPACE TO ANSWER QUESTIONS. DO NOT FORGET TO PUT THE QUESTION NUMBER IN

FRONT OF EACH ANSWER THAT REQUIRED MORE SPACE.

Question No. _____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

DECLARATION

I attest and affirm, under the penalty of perjury, that the answers set forth above are

true and correct to the best of my knowledge.

_____                    _____

Date                                                              Signature

If necessary, please continue your answers to any questions on the attached blank
pages. Please give the number of each question which you are answering. Thank you.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | 2:11-CR-0077-PPS |
| | ) | |
| JUAN BRISENO, also known as Tito. | ) | |

**GOVERNMENT'S NOTICE OF
FILING OF ITS PROPOSED JUROR QUESTIONNAIRE**

**TO THE HONORABLE COURT:**

COMES NOW, the United States of America, by and through the undersigned counsel,

and submits the attached "Special Questionnaire" as its proposed juror questionnaire in this case,

as says:

1.     On March 14, 2014, in advance of the scheduled meeting of April 3, 2014, the
Government circulated to Mr. Briseno's counsel a copy of its Special
Questionnaire (Exhibit 1 hereto);

2.     The Government's Special Questionnaire was 28-pages in length and contained
87 questions;

2.     In general terms, the Government's Special Questionnaire was discussed at the
April 3, 2014 meeting, with Mr. Briseno's counsel identifying specific concerns
they had to various questions contained in the Special Questionnaire.  At the
meeting, concerns were also expressed as to the length of the Special
Questionnaire, together with an initial inclination potentially to shorten the final
juror questionnaire;

3.     Following the April 3, 2014 meeting, the Court directed the parties to consult and

1324

**GOVERNMENT'S NOTICE OF FILING OF ITS PROPOSED JUROR QUESTIONNAIRE**
<u>United States v. Juan Briseno.</u>
Cause No. 2:11-CR-0077-PPS
**Page 2**
_____

to submit a joint juror questionnaire on or before Friday, May 23, 2014;

4. At 4:46 pm on Thursday, May 22, 2014, without prior consultation with undersigned counsel, Arlington Foley, Esquire, sent the undersigned an email that merely attached a document titled "Juror Questionnaire." The Juror Questionnaire attached to Mr. Foley's email contained 48 pages and a total of 126 questions (not including sub-parts);

5. On May 23, 2014, the undersigned telephoned Mr. Foley's office and left Mr. Foley a VoiceMail requesting that he contact the undersigned;

6. On May 23, 2014, the undersigned telephoned and spoke with John Maksimovich, Esquire. In essence, Mr. Maksimovich (politely and professionally) indicated that he and Mr. Foley were unwilling/unable to use the Government's March 14, 2014 Special Questionnaire as an initial working document (for proposed revisions, deletions, and additions thereto) and therefore had prepared an entirely new and different document (Juror Questionnaire), which they first circulated on the evening of May 22, 2014 without prior advice or consultation;

7. Having reviewed generally Mr. Briseno's Juror Questionnaire, it is apparent there is significant overlap between the two documents (albeit often in different places in the two documents), but there are also many material differences and discrepancies, and that many of those differences and discrepancies are incompatible and/or cannot be readily or easily compromised and resolved;

**GOVERNMENT'S NOTICE OF FILING OF ITS PROPOSED JUROR QUESTIONNAIRE**
United States v. Juan Briseno.
Cause No. 2:11-CR-0077-PPS
**Page 3**
_____

8.      As a result, the undersigned advised Mr. Maksimovich that the Government

would file today its original Special Questionnaire and Mr. Maksimovich

indicated Mr. Briseno would file his Juror Questionnaire;

9.      At approximately 3:22 pm today, Mr. Briseno filed his Juror Questionnaire (DE #

932), which contains 42 pages and 126 questions.


                                Respectfully submitted,

                                DAVID CAPP
                                UNITED STATES ATTORNEY

                                David J. Nozick
                                Assistant U.S. Attorney
                                5400 Federal Plaza
                                Suite 1500
                                Hammond, IN 46320
                                Tel. (219) 937-5655
                                www.david.nozick@usdoj.gov

                                s/  *Bruce R. Hegyi*
                                Bruce R. Hegyi
                                Trial Attorney
                                Capital Case Unit
                                Criminal Division
                                United States Department of Justice
                                1331 F Street, N.W., Third Floor
                                Washington, D.C.  20530
                                Tel. (202) 616-4582
                                Cell (703) 536-4774
                                www.bruce.hegyi@usdoj.gov

1326

**GOVERNMENT'S NOTICE OF FILING OF ITS PROPOSED JUROR QUESTIONNAIRE**
United States v. Juan Briseno.
Cause No. 2:11-CR-0077-PPS
**Page 4**
_____

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this date, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to counsel for all of the defendants.


_s/ Bruce R. Hegyi_
Bruce R. Hegyi
Trial Attorney

Juror Number:

Case 15-2347 Document: 35 Filed: 07/27/2016 Pages: 4186
Case 2:11-cr-00077-PPS-APR Document 933-1 Filed 05/23/14 Page 1 of 28

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

|  |  |  |
|---|---|---|
| **UNITED STATES OF AMERICA**, | § § § § | |
| - vs - | § § | CAUSE NO. 2:11-CR-0077-PPS |
| **JUAN BRISENO, also known as "Tito,"** | § § § | |

## SPECIAL QUESTIONNAIRE

### CASE SUMMARY

Juan Briseno is charged in an indictment with various criminal offenses. An indictment listing the criminal charges against a defendant is simply the document used to advise a defendant of the accusations against him. The indictment is not evidence. Mr. Briseno has pleaded not guilty to the charges in the indictment. Mr. Briseno is presumed innocent of the charges. The government has the burden of proof under our Constitution and system of laws. The government must come forward with proof, beyond a reasonable doubt, that Mr. Briseno has committed the crimes with which he is charged before Mr. Briseno can be found guilty. Mr. Briseno has no obligation to produce any evidence, nor do anything at trial. You must keep in mind that Mr. Briseno is presumed to be innocent of the charges against him and that this presumption stays with him unless and until the government proves each element of the charges beyond a reasonable doubt.

The charges contained in the fourth superseding indictment allege that beginning at least by February 2002 and continuing thereafter, members of the Imperial Gangsters, including Mr. Briseno, engaged in a conspiracy to distribute for profit illegal drugs in the East Chicago area of Indiana. In addition to operating a drug trafficking organization, it is alleged that the Imperial Gangsters, and Mr. Briseno, engaged in the sale or exchange of guns, in armed robberies, in burglaries, as well as other illegal conduct. The indictment also alleges that the Imperial Gangsters, and Mr. Briseno, used various methods to protect their criminal enterprise, including patrolling areas within East Chicago that they controlled, threatening and intimidating potential rivals, including shooting and killing members of rival gangs or potential witnesses against members of the Imperial Gangsters. Among other things, the indictment alleges that, between September of 2007 and June of 2010, Mr. Briseno personally participated in the murders of six (6) individuals and the attempted murders of an additional seven (7) individuals in or around the East Chicago area.

You are reminded that these are simply *unproven* allegations; nothing more.

In order to assist the parties and the Court in their duty to select a jury in this case that is fair and impartial, we need to ask you some questions about yourself and your views on various

topics or issues.  Many of the questions are easy and straightforward.  However, some of the questions will ask you about things that you may not have thought about for a long time, if ever. Moreover, you may not know the answer to some of the questions.  Please answer each of these questions as candidly and completely as you are able, based on your best recollection, knowledge and belief.

## YOUR BACKGROUND

1.     Name:

2.     What is your age? _____

3.     Gender:        ❑ Male        ❑ Female

4.     What is your race or ethnicity and that of your spouse or partner?  (This information will not affect your selection for jury service.)

       You: _____        Spouse/Partner: _____

5.     In what city, state and country were you born and raised?

       Born: _____        Raised: _____

       If you were born in another country, when did you move to the United States and when did you become a citizen of this country?
       _____

6.     In what city do you reside?  _____

7.     How long have you lived in this area?   _____

8.     Where else have you lived during the last five years?
       _____

       _____

       _____

9.     What is your current relationship status?  Are you:

       ❑ Single                        ❑ Married
       ❑ Divorced                      ❑ Divorced and remarried
       ❑ Widowed                       ❑ Widowed and remarried
       ❑ Currently separated           ❑ Living with someone

       If you are or were married, please indicate how long: _____ (yrs.)

1329

10. For each person currently living in your residence, please provide the following information:

Relationship               Age               Occupation

*Example:  Husband          45               Teacher*

_____

_____

_____

_____

_____

_____

11. Do you have children who live outside your home?

❏ Yes          ❏ No

If you answered "yes," please provide the following information about each:

| <u>Age</u> | <u>Gender</u> | <u>Highest Level of Education</u> | <u>Occupation/Job</u> |
|---|---|---|---|
| ____ | ____ | _____ | _____ |
| ____ | ____ | _____ | _____ |
| ____ | ____ | _____ | _____ |
| ____ | ____ | _____ | _____ |
| ____ | ____ | _____ | _____ |
| ____ | ____ | _____ | _____ |

12. How would you describe your overall physical condition?

❏ Good          ❏ Fair          ❏ Poor

If you have a physical condition you believe would affect your ability to serve as a juror, including difficulty hearing, seeing, reading, or concentrating, please explain:

_____

_____

_____

1330

13.    Do you currently take any prescription medications?

❑ Yes          ❑ No

If you answered "yes," please identify the medication, describe the condition for which the medication was prescribed, what regularity you take the medication, and if the medication has any side effects has any side effects that might make it difficult for you to concentrate or otherwise make it difficult for you to serve as a juror:

*Example:  Xanax,        Anxiety,          2x per day,      makes me sleepy*

Medication    Condition      Frequency      Side Effects

_____

_____

_____

14.    Have you, or a close family member, undergone counseling, treatment or hospitalization for psychiatric, emotional, family, behavioral, or substance abuse problems?

❑ Yes          ❑ No

If you answered "yes," please tell us who was treated and describe the situation:

_____

_____

_____

15.    How much control over events in your life do you feel that you have?

❑ No control        ❑ Very little control   ❑ Moderate amount of control
❑ Almost complete control

16.    Would you consider yourself to be a leader:

❑ Often            ❑ Sometimes           ❑ Rarely            ❑ Never

17.    What three words best describe you?

_____    _____    _____

1331

## EDUCATION

18.    How far did you go in school?  If you went to college or graduate school, what was your major field of study?

_____

_____

_____

19.    If you are currently a student, please describe your course of study, your expected date of completion, and your expected academic schedule for January - March 2015.

_____

_____

20.    How far did your spouse/partner go in school, and what was his/her major field of study if he/she went to college or graduate school?

_____

_____

21.    Do you or your spouse/partner have any formal education in the fields of law, medicine, psychology, or psychiatry?        ❑ Yes        ❑ No

If you answered "yes," please explain:

_____

_____

22.    Have you or your spouse/partner ever taken any course(s) or seminar(s) in ballistics, constitutional law, crime scene investigation, criminal law, criminology or law enforcement?        ❑ Yes        ❑ No

If you answered "yes," please provide the course(s) or seminar(s):

Self: _____
_____

_____

Spouse/Partner:
_____

_____

1332

## EMPLOYMENT

23. Employment status.  Are you currently:   (Please check all that apply)

   ❏ Employed full time          ❏ Self employed          ❏ Student
   ❏ Employed part time          ❏ Homemaker              ❏ Unemployed
   ❏ Employed more than one job  ❏ Retired                ❏ Disabled

24. If currently employed, please tell us the name of your employer, how long you have worked there, your job title and what your job responsibilities are.

   _____

   _____

   _____

25. Please describe any other places you have worked in the last 10 years, including your title and the length of time at each position.  If you retired from any of those positions, please tell us when you retired.

   _____

   _____

   _____

26. Do you now, or have you ever supervised others?          ❏ Yes          ❏ No

   If you answered "yes," please describe type of work, when and number of people supervised:

   _____

   _____

   _____

27. Please tell us where your spouse or partner works, and what his or her job responsibilities are.

   _____

   _____

   _____

1333

28.  Please tell us the occupations of your parents (and step-parents).

_____

_____

_____


## MILITARY SERVICE

29.  Have you or anyone close to you ever served in any branch of the Armed Forces of the United States (including the Military Reserves, National Guard or ROTC)?

❑ Yes    ❑ No

If you answered "yes," please answer the following:

(a)  Please tell us who served, in what branch of service, and the highest rank achieved.

_____

_____

(b)  Did you (or they) serve in active combat duty?

❑ Yes  ❑ No

If you answered "yes," please tell us who served, in which conflict/war, and where:

_____

_____

_____


## HOBBIES AND ACTIVITIES

30.  What social clubs, fraternal or religious organizations or volunteer groups do you belong to or support, if any?

_____

_____

_____

1334

(a)     Have you ever held an office or position of leadership in any of these organizations either currently or in the past?

☐ Yes                    ☐ No

(b)     If you answered "yes," please explain:

_____

_____

_____

31.     What are your hobbies and interests?  What do you like to do in your spare time?

_____

_____

_____

32.     What television shows do you watch most often, if any?

_____

_____

_____

33.     What newspapers, magazines or journals do you read most often, if any?

_____

_____

_____

34.     What internet websites or blogs do you visit most often, if any?

_____

_____

_____

## POLITICS

35.     Do you consider yourself to be politically:

&#10065; Very Conservative          &#10065; Conservative          &#10065; Moderate

&#10065; Liberal          &#10065; Very Liberal          &#10065; Independent

&#10065; Other _____          &#10065; Not Applicable

36.     What three public figures do you admire the most and least?

Most: _____          _____          _____

Least: _____          _____          _____

37.     Have you, your spouse/partner, or someone close to you, ever been involved in or a member of a group that takes positions on political, social or other similar issues (*e.g.*, crime control, drug or alcohol abuse, gun policy, etc.)?

&#10065; Yes          &#10065; No

If you answered "yes," please identify the group or groups:

*Example:     Spouse          Mothers Against Drunk Drivers*

_____

_____

_____

_____

_____

38.     In what ways might your political views affect your service as a juror, if at all?

_____

_____

_____

9

1336

## RELIGION

39.    Do you have any religious affiliation or preference?

❏ Yes          ❏ No

40.    How often do you attend your place of worship?

❏ Regularly          ❏ Seldom

❏ Occasionally          ❏ Never

41.    In what ways might your religious views or philosophical beliefs affect your service as a juror, if at all?

_____

_____

_____

## FIREARMS

42.    Have you ever owned or used any type of firearm, or had training in the use of firearms?

❏ Yes          ❏ No

If you answered "yes," please elaborate:

_____

_____

_____

43.    Do you, or anyone in your household, presently own guns?

❏ Yes          ❏ No

If you answered "yes," please describe the kinds of guns, how many and the reason for ownership (hunting, collection, protection, etc.):

_____

_____

_____

1337

44. Are you or anyone close to you involved with any organization which takes a position on firearms policy?

   ❏ Yes     ❏ No

If you answered "yes," please tell us what groups and the nature of your involvement.

_____

_____

_____

## CRIMINAL JUSTICE EXPERIENCE

45. Have you, your spouse/partner, or anyone close to you ever worked for or been associated with:

(please check all that apply)

| | |
|---|---|
| A prosecutor's office | ❏ Yes (self) ❏ Yes (other) ❏ No |
| A criminal defense attorney's office | ❏ Yes (self) ❏ Yes (other) ❏ No |
| Any other lawyer or law office | ❏ Yes (self) ❏ Yes (other) ❏ No |

If you answered "yes," please explain:

_____

_____

_____

46. Have you, your spouse/partner, or anyone close to you ever been employed by, associated with, or applied for work with any law enforcement or security agency, such as the police, sheriff, a prison or jail, FBI, DEA, ATF, ICE, or a private security firm?

   ❏ Yes     ❏ No

(a) If you answered "yes," please explain (including agency and dates of affiliation):

*Example:*    *Son*     *FBI Agent*      *2007-present*

_____

_____

_____

1338

47.    Have you, your spouse/partner, or anyone close to you ever been arrested, accused, charged, and/or prosecuted for a crime other than a minor traffic violation?

❑ Yes          ❑ No

(a)    If you answered "yes," please explain (including charge, approximate date, location, and case outcome):

*Example:        Close friend,   Drug Possession, 1982, New Mexico,          Guilty at trial*

_____

_____

_____

(b)    In your opinion, was/were the person(s) treated fairly in the criminal justice system?

❑ Yes          ❑ No

If you answered "no," please explain:

_____

_____

_____

48.    Have you, your spouse/partner, or anyone close to you ever been the victim of a crime?

❑ Yes          ❑ No

(a)    If you answered "yes," please explain (including the person's relationship to you, when and where the crime occurred, and what happened):

*Example:        Sister, victim of assault, 1999, Chicago, Defendant convicted*

_____

_____

_____

(b)    In your opinion, was/were the person(s) treated properly and fairly by the police? the prosecutors, and the court system?

❑ Yes          ❑ No

1339

If you answered "no," please explain:

_____

_____

_____

(c)      If one or more people were arrested and prosecuted, in your opinion, was/were the victim(s) treated properly and fairly by the prosecutors and the court system?

❑ Yes      ❑ No

If you answered "no," please explain:

_____

_____

_____

49.     Have you, your spouse/partner, or anyone close to you ever appeared in court or in any grand jury proceeding as a witness?

❑ Yes      ❑ No

(a)   If you answered "yes," please explain:

*Example:*    *Self,   Lake County,  2006,  Witnessed a purse snatching*

_____

_____

_____

50.     Excluding possible jury service (which will be discussed below), have you ever been to court before as a plaintiff, defendant, victim, or witness for any reason other than what you have indicated above?

❑ Yes      ❑ No

If you answered "yes," which court and under what circumstances?

_____

_____

_____

1340

51.     Have you, your spouse, or anyone close to you ever had a good or bad experience involving the police or any type of law enforcement officer?

❑ Yes          ❑ No

If you answered "yes," please explain:

_____

_____

_____

52.     Do you, your spouse/partner, or anyone close to you have any strong views for or against any law enforcement agencies, such as the local police, sheriff, probation, FBI, DEA, ATF, ICE, Federal Bureau of Prisons, Indiana Department of Corrections, etc.?

❑ Yes          ❑ No

If you answered "yes," please explain:

_____

_____

_____

_____

## PRIOR JURY SERVICE

53.     Have you ever served as a trial juror before?

❑ Yes          ❑ No

If you answered "yes," please complete the following:

<u>Criminal or Civil Case</u>   <u>Main Charge</u>   <u>When did you serve</u>   <u>Did jury reach a verdict (Yes or No)</u>

_____

_____

_____

_____

_____

_____

(b)  Were you ever the foreperson?   ❑ Yes  ❑ No

1341

(c) If you have previously served on a jury, please explain whether you found the experience to be positive or negative.

❑ Positive ❑ Negative ❑ Mixed ❑ Other

If you answered "negative," "mixed," or "other" please explain:

_____

_____

_____

_____

54. Have you ever served on a grand jury in state or federal court proceedings?

❑ Yes ❑ No

If you answered "yes," please explain when and where and describe your feeling about the process:

_____

_____

_____

55. Do you know any judges, lawyers or anyone else in the court system?

❑ Yes ❑ No

If you answered "yes," please describe who you know, where they work, and how well you know them:

_____

_____

_____

## CRIMINAL JUSTICE ISSUES

56. A number of witnesses at the trial will be law enforcement officers from federal, state or local law enforcement agencies. The Judge will instruct you to consider and evaluate their testimony just as you would consider the testimony of any other witness. For instance, did the witness have an opportunity to view that of which the witness is testifying? Did the witness appear to have a good recollection of the events about which the witness testified? What was the witness's demeanor on the witness stand? Did the witness appear to be forthright and truthful or did the witness appear to be evasive in his

1342

or her answers?  Did the witness appear to have a bias for or against any party?  And things of that nature.  Do you believe that you will be able to follow that instruction?

❑ Yes          ❑ No

If you answered "no," please explain:

_____

_____

_____

57.    If you are chosen to serve as a juror in this case, the Judge will instruct you that Juan Briseno is presumed to be innocent, that he cannot be convicted unless the government proves each essential element of the crimes charged beyond a reasonable doubt, and that there is <u>no</u> burden on Mr. Briseno to prove that he is innocent, <u>nor</u> to put on any evidence at all.  Do you believe you will be able to follow that instruction?

❑ Yes          ❑ No

If you answered "no," please explain:

_____

_____

_____

58.    An indictment is a document that describes the charges with which a defendant is accused.  If you are chosen to serve as a juror in this case, the Judge will instruct you that the indictment in this case may not be considered by you as any evidence whatsoever establishing the guilt of Juan Briseno.  Do you believe that you will be able to follow that instruction?

❑ Yes          ❑ No

If you answered "no," please explain:

_____

_____

_____

1343

59. Some of the testimony in this case may be from people who are alleged to have participated in the crimes charged and who have entered into agreements to cooperate with the government and to testify against Mr. Briseno. Would you automatically have trouble believing the testimony of any witness because he or she is testifying under a cooperation agreement with the government?

❑ Yes        ❑ No

If you answered "yes," please explain:

_____

_____

_____

60. The evidence in this case might include graphic testimony and photographs that describe and depict injuries and damage caused by a violent crimes. Would hearing and seeing such evidence so overwhelm, effect, or distract you that it would make it difficult for you to remain fair and impartial as a juror in this case?

❑ Yes        ❑ No        ❑ Uncertain

If you answered "yes" or "uncertain," please explain:

_____

_____

_____

61. Some of the testimony in this case may come from a psychiatrist, psychologist, social worker, or other mental health professional. Do you have an opinion about these fields and the ability of such persons to identify and explain reasons for human behavior?

❑ Yes        ❑ No        ❑ Uncertain

If you answered "yes" or "uncertain," please explain:

_____

_____

_____

1344

## KNOWLEDGE OF THE CASE

62. Before you came to court today, had you heard anything about this case?

   ❑ Yes   ❑ No   ❑ Uncertain

 (a) If you answered "yes" or "uncertain," please briefly describe what you heard:

 _____

 _____

 _____

 (b) What was/were the source(s) of this information?

 _____

 _____

 _____

63. In our system of justice, it is very important that the jury only consider evidence that has come before the jury in the trial itself. No member of the jury can consider anything that was not introduced in evidence in the actual trial. Would the information that you heard, received, or read from any source affect your ability to be fair and impartial if you are selected to serve as a juror in this case?

   ❑ Not applicable (I did not hear, read, or receive any such information.)

   ❑ Yes   ❑ No   ❑ Uncertain

If you answered "yes," or "uncertain," please explain:

_____

_____

_____

64. Do you know any of the following people:

 A. Defense lawyers: Arlington J. Foley and John Maksimovich;

 B. Prosecutors: David J. Nozick and Bruce R. Hegyi; or

 C. The defendant: Juan Briseno?

   ❑ Yes   ❑ No

1345

If you answered "yes," please identify each of the persons whom you know and explain how well you know each of them:

_____

_____

_____

65. The trial will be presided over by the Honorable Philip P. Simon, Chief Judge of the United States Court for the Northern District of Indiana. Do you know Judge Simon or any member of his staff?

❑ Yes     ❑ No

If you answered "yes," please identify each of the persons whom you know and explain how well you know each of them:

_____

_____

_____

66. The indictment in this case alleges that Mr. Briseno was a member of a street gang known as the Almighty Imperial Gangster Nation, which was often referred to as the "Imperial Gangsters" or the "IGs." In the trial of this case, in addition to hearing about the Imperial Gangsters, you will also hear of other gangs such as the Latin Kings, the Two Six, the Spanish Gangster Disciples, and the Black P-Stones, and perhaps other gangs as well. Have you, your spouse/partner, or anyone close to you ever been a member of a street gang?

❑ Yes     ❑ No

If you answered "yes," please explain:

*Example:     Self, a Cousin, Vicelords in Chicago*

_____

_____

_____

19

1346

67. Have you, your spouse/partner, or anyone close to you ever been victimized by the member of any street gang?

❑ Yes        ❑ No

If you answered "yes," please explain:

_____

_____

_____

68. At one time, charged along with Mr. Briseno in this case were the following individuals, who were alleged to also have been members of the Imperial Gangsters street gang.

Galo Benjamin Feliciano
Guillermo Briseno, also known as "Memo"
Alejandro Balboa Lara, also known as "Jackie Chan"
Justin Weaver, also known as "White Boy"
Michael Anthony Castillo
Kelvin Jefferson Beltran, also known as "Risky"
David Almaraz, also known as "Penguino"
Joseph Rene Torres
Jason Medina, also known as "Burns"
Edward Raye Serna, also known as "Sern"
Alejandro Briseno
Robert Lockhart, also known as "Jackson"
Armando Jose Velasquez, also known as "Money"
Anthony Baldazo, also known as "Tall Folks"
Salvador Chavez, also known as "Black" or "Dirty Sal"
Raymond Campos, also known as "Cookie Face"
Ace Cortez
Julian Guillermo Serna, also known as "Big Ju"
Julius Solis, also known as "Ju-Ju"
Darmaile Cortez Sutton, also known as "D-Money"
Eddie Torres, also known as "Macho" or "Mach"
Richard Reyes
Vincente Garza, also known as "Chente"

To the best of your knowledge, do you, your spouse/partner, or anyone close to you know (or know of) any of these individuals?

❑ Yes        ❑ No

1347

If you answered "yes," please identify each person you know (or know of) and explain how you know (or know of) him:

_____

_____

_____

69.    It is alleged in this case that Mr. Briseno participated in the murders of the following individuals:

> Luis Ortiz, also known as "Manolo"
> Michael Sessum
> Miguel Mejias, also known as "King Nellie"
> Harris Brown
> Miguel Colon, also known as "Migs"
> Latroy Howard

To the best of your knowledge, do you, your spouse/partner, or anyone close to you know (or know of) any of these individuals?

❑ Yes          ❑ No

If you answered "yes," please identify each person you know (or know of) and explain how you know (or know of) him:

_____

_____

_____

70.    In addition, it is alleged that Mr. Briseno participated in attempting to murder the following individuals:

> Marissa Harper
> Andres Arenivas
> Jose Perez
> Joseph Medina
> Peter Santos
> Joshua Roberts
> Richard Perez

To the best of your knowledge, do you, your spouse/partner, or anyone close to you know (or know of) any of these individuals?

❑ Yes          ❑ No

1348

If you answered "yes," please identify each person you know (or know of) and explain how you know (or know of) him or her:

_____

_____

_____

71.    You have been told that the law presumes every defendant to be innocent until and unless her or she has been proven guilty beyond a reasonable doubt after trial.  Have you learned anything today (or before today) that has caused you <u>at this time</u> to form an opinion that Mr. Briseno is guilty of the crimes for which he has been charged?

❑ Yes          ❑ No          ❑ Uncertain

If you answered "yes" or "uncertain," please explain:

_____

_____

_____

## QUESTIONS CONCERNING SENTENCING

If, and only if, Mr. Briseno is found guilty of one or more of the capital crimes charged in the indictment, there will be a separate hearing for the same jury to decide whether the appropriate sentence is imprisonment for a term of years, life imprisonment without parole, or death.  Accordingly, it is important that we know your thoughts and opinions regarding the death penalty.  Should this case proceed to a capital sentencing hearing, you will be instructed in detail on the burdens of proof and the procedures to be followed.  At this time, we are not inquiring about particular circumstances that may arise in this case, but only about your general feelings regarding the death penalty.

By asking these questions about punishment, the court is not suggesting in any way that Mr. Briseno is guilty, or that you will in fact be called upon to decide a penalty in this case. However, the Judge must know whether you could be fair to both the prosecution and the

22

1349

defense on the issue of punishment if the jury is ever called upon to reach that issue.

72.     In general, what are your personal views on the death penalty?

_____

_____

_____

73.     Have your views about the death penalty changed over the past 10 years (*i.e.*, now more in favor or less in favor)?

❑ Yes          ❑ No

If you answered "yes," please explain why your views have changed:

_____

_____

_____

74.     Using the following scale/continuum, please circle one number that most closely matches your overall opinion about the death penalty.  For instance, "1" means that the death penalty should never or virtually never be imposed; "10" means that the death penalty should be imposed in every case or virtually every case in which the defendant has been convicted of intentional murder; "5" means that you do not have strong feeling one way or the other (either for or against) whether the death penalty should, or should not, be imposed in intentional murder cases.

Strongly Opposed                                                  Strongly Favor

        1        2        3        4        5        6        7        8        9        10

75.     Which of the following best describes your view (please check only one):

❑        If a person is convicted of a capital crime and the death penalty is requested, I will always vote to impose it, regardless of the facts and law in the case, and could not vote for a life sentence under those circumstances.

❑        I am strongly in favor of the death penalty and would have a difficult time voting against it if a person is convicted of a capital crime, regardless of the facts and law in the case.

❑        I generally favor the death penalty, but I would base a decision to impose it on the facts and the law in the case.

1350

❑ I do not have strong opinions either for or against the death penalty, and I would consider both alternatives and base a decision to impose it on the facts and law in the case.

❑ I am generally opposed to the death penalty, but I believe I can put aside my feelings against the death penalty and impose it if is called for by the facts and the law in the case.

❑ I am strongly opposed to the death penalty and I will have a difficult time voting to impose it regardless of the facts and law in the case.

❑ I am personally, morally, or religiously opposed to the death penalty and would never vote to impose it, regardless of the facts and law in the case.

Please explain why you chose the answer you chose:

_____

_____

_____

76. Is this statement true or not true, as it pertains to you:   In a case where an accused has been found guilty of intentionally murdering another person, I would **never** vote to impose the death penalty, regardless of the circumstances.

❑ True                    ❑ Not true

If you answered "true," please explain:

_____

_____

_____

77. Is this statement true or not true, as it pertains to you:   In a case where an accused has been found guilty of intentionally murdering another person, I would **always** vote to impose the death penalty, regardless of the circumstances?

❑ True                    ❑ Not true

If you answered "true," please explain:

_____

_____

24

78.     Do you have any moral, religious, ethical, philosophical, or other personal beliefs that would prevent you from sitting in judgment of another human being in a case where the death penalty is being sought by the government?

❑ Yes          ❑ No

If you answered "yes," please explain:

_____

_____

_____

79.     Do you believe the death penalty is sought in the United States:

❑ Too often          ❑ Too seldom
❑ About right        ❑ No opinion

80.     What things or circumstances would be important to you in deciding whether a person found guilty of a capital murder should be sentenced to death or life imprisonment without the possibility of release?

_____

_____

_____

81.     "Life imprisonment without the possibility of release" means that the defendant would spend the rest of his or her natural life in prison.  There is no chance of parole.  The defendant will die in prison.  When comparing (a) life imprisonment without the possibility of release, and (b) the death penalty, do you believe  life imprisonment without the possibility of release is (please check only one answer):

❑ Less severe than the death penalty
❑ About the same as the death penalty
❑ More severe than the death penalty
❑ No opinion

Please explain your answer:

_____

_____

_____

1352

25

82.     To the best of your knowledge and recollection, have you, your spouse/partner, or anyone close to you ever belonged to, supported, signed petitions regarding, or donated time or money to, any group of organization that advocates either for or against the death penalty?

(Please check all that apply:)

Supporting Death Penalty:     ❑ Yes, myself          ❑ Yes, spouse/partner
                              ❑ Yes, close friend/family     ❑ No

Opposing Death Penalty:       ❑ Yes, myself          ❑ Yes, spouse/partner
                              ❑ Yes, close friend/family     ❑ No

If you answered "yes," please explain:

_____

_____

_____


83.     Would your spouse/partner or any of your close friends be significantly critical or particularly disappointed in you for how you voted in a capital murder case (whether you vote for or against the imposition of the death penalty)?

        ❑ Yes, if I voted for the death penalty
        ❑ Yes, if I voted against the death penalty
        ❑ Uncertain
        ❑ No

If you answered "yes" or "uncertain," please explain:

_____

_____

_____


84.     If you are chosen as a juror in this case, the Judge will instruct you that possible punishment(s) are not to be considered during the guilt/innocence phase of trial.  In the guilt/innocence phase of the trial, the jury must determine only if Mr. Briseno is guilty or not guilty of the offenses charged in the indictment.  Will you be able to follow this instruction and not consider the possible punishment(s) during the guilt/innocence phase of trial?

        ❑ Yes          ❑ No          ❑ Uncertain

1353

26

If you answered "yes" or "uncertain," please explain:

_____

_____

_____

85.     If, but only if, the jury finds Mr. Briseno guilty of death-eligible offenses, the trial will move to what is known as the "Penalty Phase." If this case was to proceed to the Penalty Phase, the law forbids jurors from considering the race, color, national origins, or sexual orientation, of either the defendant or the victim(s). Do you have <u>any</u> reservations about your ability to strictly abide by this requirement of the law?

❏ Yes, I do have reservations
❏ No, I will be able to abide by the law
❏ Uncertain

If you answered "yes" or "uncertain," please explain:

_____

_____

_____

## CONCLUSION

86.     Can you think of anything else (political, ethical, moral, religious, philosophical, medical or personal) you believe may be relevant to, or that would affect your ability to, serve as a juror in this case?

              Yes              No

If you answered "yes," please explain:

_____

_____

_____

87.     Is there anything you have not included in your answers, above, that you would rather not put in writing but that you would like to discuss privately with the Judge?

              Yes              No

1354

## ADDITIONAL COMMENT PAGE IF NECESSARY
(Please identify the question number for each answer)

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____
SIGNATURE OF JUROR

_____
Date

1355

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | 2:11 CR 77 PPS |
| | ) | |
| JUAN BRISENO, also known as "Tito." | ) | |

**GOVERNMENT' MOTION FOR ORDER REQUIRING CAPITAL DEFENDANT
TO DISCLOSE PENALTY PHASE MENTAL HEALTH
<u>DISCOVERY TO FIREWALL COUNSEL</u>**

COMES NOW, the United States of America ("United States" or "Government"), by and through the undersigned counsel, for the reasons more fully set forth below, moves the Court to order that defendant Juan Briseno ("Mr. Briseno") provide Penalty Phase Rule 12.2 notice on or before August 31, 2014, that Mr. Briseno provide to designated firewall/taint counsel on or before September 15, 2014 all Penalty Phase Rule 12.2 discovery, and that Mr. Briseno be ordered to participate candidly and completely to and with appropriate evaluation(s) and testing by experts to be identified in the future by the Government.

<u>Nature of the Case</u>

On September 18, 2013, a federal Grand Jury in the Northern District of Indiana returned a fourth superseding indictment containing 36 charges, *inter alia*, charging Mr. Briseno with Racketeer Influenced and Corrupt Organizations Act ("RICO") violations, drug conspiracy violations, violent crimes in aide of racketeering violations ("VICAR") violations, including six (6) murders. [*See generally* <u>4<sup>th</sup> Superseding Indictment</u> (DE #652)]  Among other things, the fourth superseding indictment contains a Notice of Special Findings.  [*See* <u>id</u>., pages 55-61]  On March 6, 2013, the Government filed its Notice of Intention to Seek a Penalty of Death. [*See* DE #503]

**GOVERNMENT'S MOTION FOR ORDER REQUIRING CAPITAL DEFENDANT TO DISCLOSE PENALTY PHASE MENTAL HEALTH DISCOVERY TO FIREWALL COUNSEL**
United States v. Juan Briseno, also known as "Tito"
Crim. No. 13-CR-15-ART
**Page 2**

---

Mr. Briseno's trial is scheduled to begin on January 12, 2015.

Because Mr. Briseno is subject to a potential penalty of death, Mr. Briseno's trial will be bifurcated into two phases: (1) a "Guilt Phase," and (depending on the jury's verdict and special findings in the Guilt Phase), (2) a "Penalty Phase."

In order that there not be an undue delay between the Guilty Phase and the Penalty Phase of Mr. Briseno's trial, the Government urges the Court, for the reasons more fully set forth below, to order that Mr. Briseno provide by a date certain all Penalty Phase Rule 12.2 notices (August 15, 2014) and discovery (September 15, 2014) to a firewall/taint counsel who will be designated by the Government.[1]  The Government anticipates (and urges) that the Court enter an appropriate order requiring that Firewall counsel and the Government's Trial Team have no communication with one another related to the Penalty Phase mental health discovery, evaluations and/or testing from the date on which such information is provided to Firewall counsel by Mr. Briseno through the conclusion of the Guilty Phase of Mr. Briseno's trial.

<u>APPROPRIATE ORDERS SHOULD BE ENTERED</u>

In *Kansas v. Cheever*, ___ U.S. ___, 134 S.Ct. 596 (2013), Justice Sotomayor, writing for a unanimous Supreme Court, underscored that "[w]hen a defendant presents evidence through a psychological expert who has examined him, the government likewise is permitted to use the only effective means of challenging that evidence: testimony from an expert who has also

---

[1]  Mr. Briseno has repeated represented that he will make no claim that he is mentally retarded/intellectually disabled (*Atkins v. Virginia*) and that there will be no Guilt Phase mental health experts and/or claims.

**GOVERNMENT'S MOTION FOR ORDER REQUIRING CAPITAL DEFENDANT TO DISCLOSE PENALTY PHASE MENTAL HEALTH DISCOVERY TO FIREWALL COUNSEL**
United States v. Juan Briseno, also known as "Tito"
Crim. No. 13-CR-15-ART
**Page 3**

---

examined him." Id. at 601 (*citing United States v. Byers*, 740 F.2d 1104, 1113 (D.C. Cir. 1984)

(*en banc*)). The Court further held:

> The rule in *Buchanan*, which we reaffirm today, is that where a defense expert who has examined the defendant testifies that the defendant lacked the requisite mental state to commit an offense, the prosecution may present psychiatric evidence in rebuttal. (Citation omitted.) Any other rule would undermine the adversarial process, allowing a defendant to provide the jury, through an expert operating as a proxy, with a one-sided and potentially inaccurate view of his mental state at the time of the alleged crime.

Id.; *see also Buchanan v. Kentucky*, 483 U.S. 402, 423-25 (1987) (allowing the government to

introduce psychological evidence to rebut defendant's "mental health" defense.)

Therefore, if Mr. Briseno intends to call any experts who have examined him in *any*

phase of the trial (or pre-trial), the Government is entitled to have Mr. Briseno appropriately

examined by its own experts.

<div align="center">

The Court Has Authority To Order Expeditious Discovery of
Penalty Phase Mental Health Claims

</div>

In the past, some capital defendants have claimed (in the non-insanity context) that Rule

12.2(b) applies only to the Penalty Phase and that Rule 12.2(c)(2) bars disclosures prior to the

Penalty Phase. However, the Advisory Committee Notes to Rule 12.2 confirm it was not

intended to provide an exhaustive set of procedures for the discovery of mental health evidence.

*See* Advisory Committee Notes to Fed. R. Crim. P. 12.2, 2002 Amendments, ("The amendment

leaves to the court the determination of what procedures should be used for a court-ordered

examination on the defendant's mental condition"). Obviously, a meaningful Rule 12.2 notice

must "provid[e] the government with an opportunity to conduct the kind of investigation needed

**GOVERNMENT'S MOTION FOR ORDER REQUIRING CAPITAL DEFENDANT TO DISCLOSE PENALTY PHASE MENTAL HEALTH DISCOVERY TO FIREWALL COUNSEL**
United States v. Juan Briseno, also known as "Tito"
Crim. No. 13-CR-15-ART
**Page 4**

_____

to acquire rebuttal testimony." *United States v. Johnson*, 362 F. Supp.2d 1043, 1079 (N.D. Iowa 2005); *and see United States v. Albright*, 388 F.2d 719, 724–25 (4th Cir. 1968) (candid disclosures in the area of mental health expert testimony permits both parties' experts to reliably assess the defendant)*;United States v. Catalan Roman*, 376 F. Supp.2d 108, 113-14 (D.P.R. 2005) (holding that a trial court can extend the disclosure obligations of Rule 16(b)(1)(C) to a penalty phase hearing, in part, to ensure the fair and efficient administration of justice). Consistent with that recognition, the Advisory Committee's Note to Rule 16 states, "This provision is intended to permit more complete pretrial preparation by the requesting party." In turn, the Note clarifies that the summaries required by Rule 16 should "cover not only written and oral reports, tests, reports and investigations, but any information that might be recognized as a legitimate basis for an opinion."

In order to facilitate the goal of full and fair discovery in the arena of penalty phase mental health evidence, Courts have often permitted the Government to rely on "firewalled" attorneys to receive defense disclosures that may contain information subject to constitutional or other protections. The utilization of firewalled counsel protects the defendant's rights while permitting disclosures that permit the government to fairly and timely respond to defense evidence. *See, e.g.*, *United States v. Millner,* 13-CR-0015-ART (E.D. Kentucky May 19, 2014 Memorandum Opinion) (ordering firewall counsel for penalty phase over objection of defendant's counsel) [Exhibit 1]; *United States v. Montgomery*, No. 11-CR-20044-JPM (W.D. Tenn. March 27, 2014 Memorandum Opinion) (ordering firewall counsel over defendant's objection and noting that federal courts have routinely authorized firewall counsel in penalty

**GOVERNMENT'S MOTION FOR ORDER REQUIRING CAPITAL DEFENDANT TO DISCLOSE PENALTY PHASE MENTAL HEALTH DISCOVERY TO FIREWALL COUNSEL**
United States v. Juan Briseno, also known as "Tito"
Crim. No. 13-CR-15-ART
**Page 5**

---

phase mental health) [Exhibit 2]; *United States v. Northington*, 2012 WL 2873360, at \*7 (E.D. Pa. July 12, 2012); *United States v. Williams*, 731 F. Supp.2d 1012, 1027 (D. Hawai'i 2010); *United States v. Lujan*, 530 F. Supp.2d 1224, 1240 (D.N.M  2008); *United States v. Wilson*, 493 F. Supp.2d 348, 356 (E.D.N.Y. 2006) (requiring, over the defendant's objections, disclosures to firewalled counsel); *United States v. Johnson*, 362 F. Supp.2d 1043, 1084 (N.D. Iowa 2005); *United States v. Sampson*, 335 F.Supp.2d 166, 243-45 (D. Mass. 2004); *United States v. Edelin*, 134 F. Supp.2d 45, 57 (D.D.C. 2001).

The Courts' flexibility in this regard reflects their broad discretion in discovery matters under Rule 16(d)(1):  "At any time the court may, for good cause ... grant other appropriate relief."  In *United States v. Webster,* 162 F.3d 308 (5th Cir. 1998), the Court resolved that "[t]here is no doubt that a district court has the authority to order a defendant who states that he will use evidence from his own psychiatric examination in the penalty phase of a trial to undergo a psychiatric examination by a government selected psychiatrist before the start of the penalty phase." Id. at 338-40.  *Webster* held that a district court has "inherent authority" to "require disclosure of the defendant's experts' reports and to compel the defendant to submit to a government psychiatric exam on the government's motion." 162 F.3d at 340.  *Webster* grounded its authority in Rule 57(b) of the Federal Rules of Criminal Procedure, which provides that where no law or rule is directly applicable, "[a] judge may regulate practice in any manner consistent with federal law, these rules, and local rules of the district."  In *Webster*, the court properly concluded that a finding of such authority in connection with the penalty phase of a federal capital case "furthers the goals" of the FDPA. 162 F.3d at 339.  Section 3593(c) of the

**GOVERNMENT'S MOTION FOR ORDER REQUIRING CAPITAL DEFENDANT TO DISCLOSE PENALTY PHASE MENTAL HEALTH DISCOVERY TO FIREWALL COUNSEL**
United States v. Juan Briseno, also known as "Tito"
Crim. No. 13-CR-15-ART
**Page 6**

---

FDPA expressly authorizes both parties to rebut information offered by the other party during the *penalty phase* and provides that each shall be given a "fair opportunity" to do so.  18 U.S.C. § 3593(c).  *Webster* held that in the case of mental health information in the penalty phase, the Government would be denied a "'fair opportunity' to rebut that testimony if it could not conduct an examination of its own" and that pretrial notice, discovery, and examinations "constitute[] a fair procedure for achieving these goals in a timely manner."

In *United States v. Beckford,* 962 F.Supp. 748 (E.D. Va. 1997), another Penalty Phase discovery case, the Court reached the same conclusion -- "the inherent powers of district courts provide sufficient authority for the imposition of notice, examination, and discovery of mental health conditions in the death penalty phase ...."  Id. at 757.  Moreover, *Beckford* held that the statutory rebuttal rights of the Government provided statutory authority to impose such orders, because "it is clear that the Government's ability to rebut a defendant's evidence of mental condition would be *sharply curtailed, if not entirely eviscerated,"* if the Government was not entitled to notice and examination by its experts.  Id. at 758 (emphasis added).

The same principles should be applied here.  Mr. Briseno has repeatedly assured the Court and the Government that he will not raise any "mental disease or defect or any other mental condition" in the Guilt Phase.  However, Mr. Briseno has indicated he does intend to raise some claim involving a "mental condition" in the Penalty Phase.  As a result, Mr. Briseno should be required to provide such notice on or before August 31, 2014, and thereafter to provide to designated firewalled Government counsel on or before September 15, 2014 the identities of all such experts, their curriculum vitaes, their opinions, reports, testing, and raw data.  Moreover,

**GOVERNMENT'S MOTION FOR ORDER REQUIRING CAPITAL DEFENDANT TO DISCLOSE PENALTY PHASE MENTAL
HEALTH DISCOVERY TO FIREWALL COUNSEL**
United States v. Juan Briseno, also known as "Tito"
Crim. No. 13-CR-15-ART
**Page 7**

_____

Mr. Briseno should be ordered to cooperate in and with all interviews and testing that may be

requested by experts retained by the Government as to such issues as may have been thus raised

or implicated by Mr. Briseno.

WHEREFORE, for each of the independent reasons set forth above, the Government

moves the Court to enter the appropriate orders requiring Mr. Briseno to provide Rule 12.2

Penalty Phase notice on or before August 31, 2014, to provide all required Penalty Phase Rule

12.2 discovery to designated Firewall counsel on or before September 15, 2014 including but not

limited to the identities of all such experts, their curriculum vitaes, their opinions, reports,

testing, and raw data, and that Mr. Briseno cooperate in and with all interviews and testing that

may be requested by experts retained by the Government.

> Respectfully submitted,
>
> DAVID CAPP
> UNITED STATES ATTORNEY
>
> s/ *David J. Nozick*
>
> David J. Nozick
> Assistant U.S. Attorney
> 5400 Federal Plaza
> Suite 1500
> Hammond, IN 46320
> Tel. (219) 937-5655
> www.david.nozick@usdoj.gov

**GOVERNMENT'S MOTION FOR ORDER REQUIRING CAPITAL DEFENDANT TO DISCLOSE PENALTY PHASE MENTAL HEALTH DISCOVERY TO FIREWALL COUNSEL**
United States v. Juan Briseno, also known as "Tito"
Crim. No. 13-CR-15-ART
**Page 8**

_____

s/  _Bruce R. Hegyi_

Bruce R. Hegyi
Trial Attorney
Capital Case Section
Criminal Division
United States Department of Justice
1331 F Street, N.W., Third Floor
Washington, D.C.  20530
Tel. (202) 616-4582
Cell (703) 536-4774
www.bruce.hegyi@usdoj.gov

**GOVERNMENT'S MOTION FOR ORDER REQUIRING CAPITAL DEFENDANT TO DISCLOSE PENALTY PHASE MENTAL HEALTH DISCOVERY TO FIREWALL COUNSEL**
United States v. Juan Briseno, also known as "Tito"
Crim. No. 13-CR-15-ART
**Page 9**

_____

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this date, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to counsel for Mr. Briseno.

s/ *Bruce R. Hegyi*

Bruce R. Hegyi
Trial Attorney

1364

Case: 7:13-cr-00015-ART-REW Doc #: 48 Filed: 05/19/14 Page: 1 of 7 - Page ID#: 702
Case: 15-2347 Document: 35 Filed: 07/27/2016 Pages: 4186
Case 2:11-cr-00077-PPS-APR Document 943-1 Filed 06/06/14 Page 1 of 7

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
PIKEVILLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Criminal No. 13-15-ART |
| | ) | |
| v. | ) | |
| | ) | |
| JOHN TRAVIS MILLNER, | ) | **ORDER** |
| | ) | |
| Defendant. | ) | |
| | ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

The parties have jointly set a pretrial deadline of July 1, 2015, for defendant John Travis Millner's disclosures pursuant to Rule 12.2 of the Federal Rules of Criminal Procedure. R. 47. At that time, Millner will disclose any intent to introduce expert evidence relating to his mental condition, and some of that evidence may bear only on the issue of punishment. *See* Fed. R. Crim. P. 12.2(b)(2). To comply with Rule 12.2's stringent confidentiality requirements for such penalty-phase evidence in capital cases, the United States proposes that the Court establish a "taint team" of firewalled prosecutors to handle any attendant issues. R. 36. The use of firewalled attorneys is consistent with Rule 12.2's text and purpose and with the twin goals of efficiency and fairness, so the Court will grant the government's motion.

The Rule 12.2 deadline lies far in the future, of course. But resolving the government's motion now still makes sense. Death penalty cases often involve substantial litigation over the form and substance of Rule 12.2 notices, the need for related discovery, and other matters. By deciding these issues at the outset, the Court hopes to forestall

1365

Case: 7:13-cr-00015-ART-REW   Doc #: 48   Filed: 05/19/14   Page: 2 of 7 - Page ID#: 703
Case: 15-2347   Document: 35   Filed: 07/27/2016   Pages: 4186
Case 2:11-cr-00077-PPS-APR   Document 943-1   Filed 06/06/14   Page 2 of 7

needless disputes and delay during the lead-up to trial. Additionally, by appointing a taint team and, if Millner desires, additional defense counsel, the Court can ensure that penalty-phase considerations will not compromise the parties' ability to prepare adequately for the guilt phase.

Rule 12.2 lays out the basic framework for capital-case defendants who intend to introduce expert evidence relating to a mental disease or defect or any other mental condition. Pursuant to the rule, a defendant must notify the Court and the government of his intent to introduce such evidence by a deadline set by the Court. Fed. R. Crim. P. 12.2(b). The Court may then order an examination of the defendant upon the government's motion. Fed. R. Crim. P. 12.2(c)(1)(B). Generally speaking, the Court has discretion to set the procedures for the government's examination. *Id.* If, however, the defendant plans to introduce mental-condition expert evidence only during the *penalty* phase of his capital trial, special conditions apply. The results and reports of the government's examination must be sealed and "must not be disclosed to any attorney for the government or the defendant." Fed. R. Crim. P. 12.2(c)(2). The Court may lift the ban on disclosure only if the jury convicts the defendant of a capital crime and he confirms his intent to offer mental-condition expert evidence at sentencing. *Id.* Once disclosure of the results and reports of the government's examination occurs under Rule 12.2(c)(2), the defendant must reveal the results and reports of his own expert's mental-condition examination. Fed. R. Crim. P. 12.2(c)(3).

This procedure, while highly protective of capital defendants, poses certain difficulties. Interpreted literally, Rule 12.2 would prevent the government from taking any real steps to evaluate a defendant's mental condition until after the jury announces a guilty verdict. As the United States points out, this could postpone the penalty phase of Millner's

<div align="center">2</div>

Case: 7:13-cr-00015-ART-REW   Doc #: 48   Filed: 05/19/14   Page: 3 of 7 - Page ID#: 704
Case: 15-2347   Document: 35   Filed: 07/27/2016   Pages: 4186
Case 2:11-cr-00077-PPS-APR   Document 943-1   Filed 06/06/14   Page 3 of 7

case by a matter of months.  R. 41 at 6 (estimating the delay at eight to ten weeks); *see United States v. Lujan*, 530 F. Supp. 2d 1224, 1240 (D.N.M. 2008) (describing the difficulties engendered by such delay); *United States v. Edelin*, 134 F. Supp. 2d 45, 57 (D.D.C. 2001) (finding that "[a] continuance in the trial between the guilt and sentencing phases of trial, after months of guilt phase proceedings, would be detrimental to the jury and to the judicial process").  Guilt-phase evidence could fade in the memories of the jury, prejudicing both the government and the defendant during the penalty phase.  *United States v. Beckford*, 962 F. Supp. 748, 763 (E.D. Va. 1997).  A juror could become unexpectedly unavailable for penalty-phase service during the gap.  *Id.*  Extending the duration of the trial could even make it harder to find suitable jurors in the first instance.  *Id.*

Moreover, such delay is strikingly at odds with Rule 12.2(b)'s goal of preventing mental examinations from "unnecessarily delaying capital sentencing proceedings."  Fed. R. Crim. P. 12.2, advisory comm. notes, 2002 amendments.  And even though Rule 12.2(c) authorizes the Court to order a pretrial evaluation, it "does not resolve how, as a practical matter, the government experts are to conduct their mental health examinations" without disclosing the results of their work to prosecutors.  *United States v. Sampson*, 335 F. Supp. 2d 166, 244 (D. Mass. 2004).  That is, if legal issues arise during the course of the examinations, to whom may the government experts turn for guidance?  *See id.*

To avoid these problems, the United States proposes that the Court establish a "taint team" to handle mental-condition evidence intended for use during the penalty phase.  R. 36.  Many district courts have employed taint teams to coordinate the pretrial examination of death penalty defendants.  *E.g.*, *United States v. Northington*, No. 07-550-05, 2012 WL 2873360 (E.D. Pa. July 12, 2012); *United States v. Williams*, 731 F. Supp. 2d 1012 (D. Haw.

Case: 7:13-cr-00015-ART-REW   Doc #: 48   Filed: 05/19/14   Page: 4 of 7 - Page ID#: 705
Case: 15-2347   Document: 35   Filed: 07/27/2016   Pages: 4186
Case 2:11-cr-00077-PPS-APR   Document 943-1   Filed 06/06/14   Page 4 of 7

2010); *United States v. Johnson*, 362 F. Supp. 2d 1043 (N.D. Iowa 2005). *But see United States v. Taveras*, 233 F.R.D. 318 (E.D.N.Y. 2006) (rejecting the taint team approach). In broad strokes, the taint team procedure works like this: upon receipt of notice pursuant to Rule 12(b)(2), firewalled prosecutors assume responsibility for all aspects of the case related to evaluating the defendant's mental condition. They procure expert witnesses, coordinate with defense counsel and the Court to schedule examinations, and handle examination-related issues as they arise. Then, assuming the jury finds the defendant guilty, the firewalled prosecutors bow out of the process entirely, leaving the trial team to formulate the government's strategy for the penalty phase.

The taint team procedure is consistent with the text of Rule 12.2 and the guidance provided by the Advisory Committee on Rules of Criminal Procedure. Rule 12.2's proscription on revealing examination results applies only to attorneys on the prosecution team, and not to all government attorneys. *See Johnson*, 502 F. Supp. 2d at 1083; *Sampson*, 335 F. Supp. 2d at 245. Reviewing the rule in its entirety buttresses this conclusion. Rule 12.2 employs the phrase "attorney for the government" on just two other occasions: to signify the recipient of a defendant's notice of his intent to assert an insanity defense, Fed. R. Crim. P. 12.2(a), or to introduce mental-condition expert evidence, Fed. R. Crim. P. 12.2(b). In both cases, "attorney for the government" makes sense only if interpreted as "attorney prosecuting the case." *Johnson*, 362 F. Supp. 2d at 1083 (noting that "it would make no sense if the 'notice' requirement could be satisfied by notifying an Assistant United States Attorney in the Southern District of Florida . . . of an intent to use mental condition evidence in a capital prosecution . . . in the Northern District of Iowa"). Given this textual evidence, the Advisory Committee's explicit concern with preventing delay in penalty phase

proceedings, and the significant practical impediments created by any other interpretation, Rule 12.2 permits the Court to appoint a taint team.

It makes no difference that the United States requested the taint team and Millner opposes its creation. In most cases involving taint teams, either the defendant seeks the appointment of a taint team, or the parties together agree on the advisability of using this mechanism. *E.g.*, *United States v. Umana*, No. 3:08-cr-134, 2009 WL 2489309, at *4 (W.D.N.C. Aug. 12, 2009); *United States v. Wilson*, 493 F. Supp. 2d 348, 357–58 (E.D.N.Y. 2006). Still, Millner's opposition does not defeat the government's motion. Rule 12.2, which grants the Court discretion to order the defendant's examination "under procedures ordered by the court," does not condition this authority on the defendant's assent. Fed. R. Crim. P. 12.2(c)(1)(B); *see also* Fed. R. Crim. P. 57(b) ("A judge may regulate practice in any manner consistent with federal law, these rules, and the local rules of the district."). If, as the Court has already found, using a taint team comports with Rule 12.2's requirements, the procedure remains appropriate even if the defendant objects. *See United States v. Montgomery*, No. 2:11-cr-20044 (W.D. Tenn. Mar. 27, 2014) (imposing taint team procedures over the defendant's opposition).

One final point. During the hearing on the government's motion, the defendant raised two concerns: that the government might breach the firewall created by the Court, and that the taint team procedure would grant the government additional resources while denying the same benefit to the defendant. While the Court is confident that the United States will respect the firewall, the Court understands the defendant's fear that information could pass between the taint team and the trial attorneys. To assuage any anxiety on this front, the Court will appoint firewalled counsel from outside of the district prosecuting this case. The

5

Case: 7:13-cr-00015-ART-REW   Doc #: 48   Filed: 05/19/14   Page: 6 of 7 - Page ID#: 707
Case: 15-2347   Document: 35   Filed: 07/27/2016   Pages: 4186
Case 2:11-cr-00077-PPS-APR   Document 943-1   Filed 06/06/14   Page 6 of 7

Court will also impose appropriate sanctions if evidence of misconduct by the trial team emerges. And, to ensure that defense counsel is not overwhelmed with guilt- and penalty-phase preparation while the government benefits from extra hands on deck, the Court will appoint an additional defense attorney to handle Rule 12.2 proceedings if the defendant so desires.

Accordingly, it is **ORDERED** that:

(1)    The government's motion to establish a taint team, R. 36, is **GRANTED**.

(2)    If Millner discloses the intent to introduce penalty-phase mental-condition expert evidence pursuant to Fed. R. Crim. P. 12.2(b)(2):

    (a)    The Court will appoint firewalled counsel from a neighboring district to oversee the expert examination of Millner and the exchange of related discovery. Firewalled counsel may not join the trial team either before or after the end of the guilt phase. If the United States breaches the firewall, the Court will impose sanctions that may include prohibiting the United States from seeking the death penalty against Millner.

    (b)    Upon motion by the defendant, the Court will consider appointing an additional defense attorney to coordinate with firewalled counsel.

(3)    By **Monday, June 2, 2014**, the United States shall file a brief describing how the Court should implement the taint team procedure, including: (1) the type and extent of information that Millner must provide in his Rule 12.2 notice; (2) the type, extent, and timing of any discovery that the United States believes that Millner must provide so that the United States may secure appropriate

6

Case: 7:13-cr-00015-ART-REW Doc #: 48 Filed: 05/19/14 Page: 7 of 7 - Page ID#: 708
Case: 15-2347 Document: 35 Filed: 07/27/2016 Pages: 4186
Case 2:11-cr-00077-PPS-APR Document 943-1 Filed 06/06/14 Page 7 of 7

experts; and (3) any other considerations that the United States believes the Court must resolve in advance.

(4)     Millner shall **RESPOND** by **Friday, June 13, 2014**.  The United States shall **REPLY** by **Friday, June 20, 2014**.  The Court will take up this issue at the status conference scheduled for July 11, 2014.

This the 19th day of May, 2014.

**Signed By:**

**_Amul R. Thapar_** AT

**United States District Judge**

Case 2:11-cr-20044-JPM   Document 369   Filed 03/27/14   Page 1 of 30   PageID 8292
Case 15-2347   Document: 35   Filed: 07/27/2016   Pages: 4186
Case 2:11-cr-00077-PPS-APR   Document 943-2   Filed 06/06/14   Page 1 of 30

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
## WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>v.<br><br>CHASTAIN MONTGOMERY, SR.,<br><br>    Defendant. | )<br>)<br>)<br>)<br>)   No. 2:11-cr-20044-JPM-1<br>)<br>)<br>)<br>) |

## ORDER GRANTING IN PART AND DENYING IN PART MOTION
## FOR PRETRIAL NOTICE OF INTENT TO INTRODUCE PENALTY PHASE
## MENTAL HEALTH EVIDENCE
## AND
## ORDER REGARDING MENTAL HEALTH EVIDENCE

Before the Court is the United States of America's (the "Government") Motion for Pretrial Notice of Intent to Introduce Penalty Phase Mental Health Evidence, filed February 28, 2014.[1] (ECF No. 345.)  Defendant Chastain Montgomery, Sr. ("Defendant") responded in opposition on March 17, 2014.[2]  (ECF No. 361.)  The Government filed a Reply on March 20, 2014.  (ECF No. 363.)  The Court heard arguments from the parties regarding the instant Motion on March 21, 2014.  (ECF No. 364.)  For the reasons stated below, the instant Motion is GRANTED IN PART and DENIED IN PART.

---

[1] The Government submitted a proposed order along with its Motion.  (See Ex. A, ECF No. 345-1.)

[2] Defendant likewise submitted a proposed order along with his Response.  (See ECF No. 361-1.)

Case 2:11-cr-20044-JPM   Document 369   Filed 03/27/14   Page 2 of 30   PageID 8293
Case: 15-2347   Document: 35   Filed: 07/27/2016   Pages: 4186
Case 2:11-cr-00077-FPS-APR   Document 943-2   Filed 06/06/14   Page 2 of 30

I.   **THE MOTION FOR PRETRIAL NOTICE OF INTENT TO INTRODUCE PENALTY PHASE MENTAL HEALTH EVIDENCE**

In the instant Motion, the Government states its belief that "Defendant will offer some form of mental health evidence during a potential penalty phase of this case." (ECF No. 345 at 2.) The Government argues that Defendant "has not provided any notice of his intent to introduce expert evidence relating to his mental health at either the guilt phase or penalty phase of trial. . . . [T]he Government respectfully requests that this Court . . . set clear deadlines for the defendant to file such notice." (Id. at 4-5.)

The Government's proposed order would impose the following requirements on Defendant. First, if Defendant intends to present expert testimony regarding mental disease or defect at either the guilt or penalty phase of his trial, he must file a written notice to that effect by a date certain set by the Court. (Id. at 7; ECF No. 345-1 at 1.) The Notice "shall include the name and professional qualifications of any mental health professional who will testify as an expert and a brief, general summary of the topics to be addressed that is sufficient to permit the Government to determine the area in which its expert(s) must be versed." (ECF No. 345-1 at 1.) Moreover, the notice must "include experts who are basing their opinions on a

2

review of records and not a personal examination of Defendant."

(Id.)

Second, the proposed order would require Defendant, if he gives notice of intent to introduce mental health evidence, to submit to an examination by a mental health professional selected by the Government.  (Id. at 1-2.)  The results of such examination will be placed under seal, pursuant to Federal Rule of Criminal Procedure 12.2(c)(2).  (See id. at 2.)

Third, the proposed order would require the Government to designate an Assistant United States Attorney ("AUSA") as a "fire-walled AUSA to arrange for any evaluation by an expert . . . ."  (Id.)  Under the terms of the order, the firewalled AUSA would be permitted to consult with the Government's trial team regarding the selection of experts,[3] but would be prohibited from communicating "with the prosecution team regarding case matters and may not join the prosecution team unless and until the Defendant is found guilty of a capital offense at trial and gives notice confirming his intent to introduce expert mental health evidence during the penalty phase of the trial."  (Id.)  The firewalled AUSA, and any individuals assisting him, would be prohibited from communicating with the

---

[3] The Court's Order does not allow for this level of communication with the firewalled AUSA.  See infra Part IV, p. 28.  If the Government's prosecution team wishes to communicate with the firewalled AUSA, they must obtain either a stipulation from defense counsel or approval of the Court.

Case 2:11-cr-20044-JPM   Document 369   Filed 03/27/14   Page 4 of 30   PageID 8295
Case: 15-2347   Document: 35   Filed: 07/27/2016   Pages: 4186
Case 2:11-cr-00077-FPS-APR   Document 943-2   Filed 06/06/14   Page 4 of 30

prosecution team absent a stipulation from defense counsel or a Court Order.  (Id.)

Finally, in the event of a guilty verdict on a death-eligible offense at the guilt phase, the proposed order would require Defendant to confirm or disavow his intent to introduce mental health evidence at the penalty phase within twenty-four (24) hours after the issuance of such verdict.  (Id.)  If Defendant withdraws his intent to introduce mental health evidence, the Government's mental health examinations will remain sealed from the prosecution team and the firewalled AUSA will be prohibited from joining the team.  (Id.)  If Defendant confirms his intent to introduce mental health evidence, however, the reports of the Government's experts shall immediately be released to Defendant, and any reports of the Defendant's experts must be released to the Government's prosecution team within twenty-four (24) hours after the release of the Government's expert reports to Defendant.  (Id. at 3.)

The proposed order also provides that Defendant can withdraw his intent to present mental health evidence at any time before it is presented at trial without it being admissible against him.  (Id.)  Defendant's failure to provide notice, confirm his intent to provide mental health evidence at trial, or to participate in an examination by the Government's expert

4

1375

Case 2:11-cr-20044-JPM   Document 369   Filed 03/27/14   Page 5 of 30   PageID 8296
Case 2:11-cr-00077-PPS-APR   Document 943-2   Filed 06/06/14   Page 5 of 30
Case: 15-2347     Document: 35     Filed: 07/27/2016     Pages: 4186

"may result in forfeiture of the right to present mental health testimony at trial."  (Id.)

In his Response, Defendant contests the assertion that he has not provided adequate notice under Rule 12.2(b).  (ECF No. 361 at 1.)  Defendant points to a document he filed on August 13, 2012, entitled "Notice to Use Expert for Proof of Mental Disease or Defect" (ECF No. 59).  (See id.)  In that filing, Defendant's counsel gave notice "that they intend to introduce expert evidence relating to a mental disease or defect and other mental conditions of the Defendant which bears on both the issue of guilt and the issue of punishment in his case." (ECF No. 59 at 1.)  The filing references the neuropsychological evaluation report of Dr. James S. Walker, Ph.D., ABPP.[4]  (Id.)

Defendant also argues that, by virtue of the lengthy Atkins proceedings in this case, the Government has already obtained "extraordinary information and time not generally permitted under 12.2(b) and (c)."  (ECF No. 361 at 2.)  He further "requests that the Court enter a date to file an amended notice if one is necessary," suggesting May 15, 2014.  (Id. at 3; ECF No. 361-1 at 1.)  Defendant argues that the amended notice need only include "the type of experts who may examine and opine on matters relating to mental health and what, if any, field of

---

[4] Dr. Walker's report and conclusions are inadmissible at trial for the reasons articulated in Defendant's Statement Regarding Dr. James Walker, filed February 27, 2013.  (ECF No. 128 (sealed).)

5

1376

Case 2:11-cr-20044-JPM   Document 369   Filed 03/27/14   Page 6 of 30   PageID 8297
Case 2:11-cr-00077-PPS-APR   Document 943-2   Filed 06/06/14   Page 6 of 30
Case 15-2347   Document: 35   Filed: 07/27/2016   Pages: 4186

teaching experts there may be.  The amended notice should also contain the nature of test performed or expected to be performed."  (ECF No. 361 at 3-4.)  Defendant rejects the Government's assertion that it is entitled to the names and qualifications of Defendant's potential mental health experts. (Id. at 4.)

Furthermore, Defendant objects to submitting to an additional examination by Government experts unless his amended notice "exceeds the scope of the original notice filed with this Court and the subject of the Court's previous order."[5]  (Id.) Defendant "objects to and does not consent to the designation of a fire-walled attorney."  (Id. at 4-5.)  Defendant asserts that he will confirm his intent to introduce expert mental health evidence during the penalty phase of his trial, if it occurs, within twenty-four (24) hours of a guilty verdict, excluding weekends and holidays.  (Id. at 5.)  Finally, Defendant requests that the Court require the Government to certify that no information from expert reports already in the possession of the Government has been used in a derivative fashion for the Government's case in chief.  (Id. (citing Fed. R. Crim. P. 12.2

---

[5] Defendant is referring to the Court's September 13, 2012, Order, which required Defendant to submit to an examination by Government experts regarding "(1) the issue of mental retardation; and (2) the effect of Defendant's intellectual disability and his psychotic disorder not otherwise specified, if such conditions are found to have existed, on the voluntariness and reliability of Defendant's confession."  (ECF No. 74 at 2.)

Case 2:11-cr-20044-JPM Document 369 Filed 03/27/14 Page 7 of 30 PageID 8298
Case: 15-2347 Document: 35 Filed: 07/27/2016 Pages: 4186
Case 2:11-cr-00077-PPS-APR Document 943-2 Filed 06/06/14 Page 7 of 30

advisory committee notes (2002 Amendments) ("Most courts that have addressed the issue have recognized that if the government obtains early access to the accused's statements, it will be required to show that it has not made any derivative use of that evidence.")).)

In its Reply, the Government asserts that Defendant's notice filed on August 13, 2012, is inadequate, especially given that Defendant has withdrawn Dr. James Walker as an expert witness. (ECF No. 363 at 2.) The Government "requests that the Court order the defendant to file an adequate Rule 12.2 notice including the name of any expert and whether their testimony will be offered at [the] guilt or penalty phase . . . , their qualifications, and a summary of the general subject of the evaluation." (Id. at 3.) The Government argues that Federal Rule of Criminal Procedure 16(b)(1)(C) explicitly requires a Defendant to provide a summary of expert witness testimony, along with any expert witness's qualifications. (Id. at 4-6.)

The Government also argues that it is entitled to a further mental examination of Defendant if he intends to advance any claim of mental disease or defect other than mental retardation/intellectual disability ("MR/ID"), as the Government's previous examinations and the Atkins and suppression hearings were limited to that question. (Id. at 8.) The Government further asserts that the designation of a

7

Case 2:11-cr-20044-JPM   Document 369   Filed 03/27/14   Page 8 of 30   PageID 8299
Case 15-2347   Document: 35   Filed: 07/27/2016   Pages: 4186
Case 2:11-cr-00077-PPS-APR   Document 943-2   Filed 06/06/14   Page 8 of 30

firewalled AUSA is a practice endorsed by the federal courts and suggests AUSA Stuart Canale for that role.  (<u>Id.</u> at 9-10.) Finally, the Government objects to any requirement that it certify that no information from mental health reports already in its possession has been used in a derivative fashion, arguing that Rule 12.2(c)(4) provides an adequate safeguard.  (<u>Id.</u> at 10-11.)

## II.   LEGAL STANDARD

Federal Rule of Criminal Procedure 12.2(b) states:

> If a defendant intends to introduce expert evidence relating to a mental disease or defect or any other mental condition of the defendant bearing on either (1) the issue of guilt or (2) the issue of punishment in a capital case, the defendant must – within the time provided for filing a pretrial motion or at any later time the court sets – notify an attorney for the government in writing of this intention and file a copy of the notice with the clerk.  The court may, for good cause, allow the defendant to file the notice late, grant the parties additional trial-preparation time, or make other appropriate orders.

Fed. R. Crim. P. 12.2(b).

"[I]n all circumstances in which the defendant plans to offer expert testimony concerning his mental condition at the time of the crime charged, advance disclosure to the government will serve to permit adequate pretrial preparation, to prevent surprise at trial, and to avoid the necessity of delays during trial."  <u>United States v. Davis</u>, 93 F.3d 1286, 1294 (6th Cir. 1996) (quoting Fed. R. Crim. P. 12.2 advisory committee notes,

Case 2:11-cr-20044-JPM   Document 369   Filed 03/27/14   Page 9 of 30   PageID 8300
Case 15-2347   Document: 35   Filed: 07/27/2016   Pages: 4186
Case 2:11-cr-00077-PPS-APR   Document 943-2   Filed 06/06/14   Page 9 of 30

(1983 Amendment to Rule 12.2(b))) (internal quotation marks omitted).  Notice under Rule 12.2(b) must be "meaningful notice," i.e., it must allow the Government to prepare to rebut mental health claims "without unnecessarily delaying capital sentencing proceedings."  United States v. Johnson, 362 F. Supp. 2d 1043, 1079 (N.D. Iowa 2005) (internal quotation marks omitted); accord United States v. Sampson, 335 F. Supp. 2d 166, 242-43 (D. Mass. 2004).

> The limited caselaw suggests that to provide meaningful notice the defense should disclose the kinds of mental health experts that will be evaluating defendant, as well as the nature of the tests that the defendant's experts will perform.  Defendant is not, however, required to disclose the type of mental disease or defect for which the defendant will be examined, interviewed, or tested . . . .

1A Charles Alan Wright & Andrew D. Leipold, Federal Practice and Procedure § 207, at 496 (4th ed. 2008).

"If the defendant provides notice under Rule 12.2(b) the court may, upon the government's motion, order the defendant to be examined under procedures ordered by the court."  Fed. R. Crim. P. 12.2(c)(1)(B).  "The Court must determine whether a psychiatric examination of a defendant will be necessary for the government fairly to rebut the defendant's expert evidence.  This is a decision within the Court's discretion."  United States v. Taylor, No. 1:04-CR-160, 2008 WL 471686, at *3 (E.D. Tenn. Feb. 15, 2008) (internal quotation marks omitted).

1380

Case 2:11-cr-20044-JPM   Document 369   Filed 03/27/14   Page 10 of 30   PageID 8301
Case: 15-2347   Document: 35   Filed: 07/27/2016   Pages: 4186
Case 2:11-cr-00077-PPS-APR   Document 943-2   Filed 06/06/14   Page 10 of 30

Rule 12.2(c)(2) states:

> The results and reports of any examination conducted solely under Rule 12.2(c)(1) after notice under Rule 12.2(b)(2) must be sealed and must not be disclosed to any attorney for the government or the defendant unless the defendant is found guilty of one or more capital crimes and the defendant confirms an intent to offer during sentencing proceedings expert evidence on mental condition.

Fed. R. Crim. P. 12.2(c)(2).  Neither a defendant's statements during a mental examination conducted under Rule 12.2 nor any fruits of such statements may be admitted into evidence against the defendant except on an issue regarding mental condition on which the defendant "has introduced expert evidence in a capital sentencing proceeding requiring notice under Rule 12.2(b)(2)." Fed. R. Crim. P. 12.2(c)(4)(B).  Moreover, if a defendant fails to give Rule 12.2(b) notice, to submit to an examination by a Government expert when ordered to do so by the Court under Rule 12.2(c), or to comply with Rule 12.2(c)(3) disclosure requirements, the Court may exclude any expert evidence from the defendant on the issue of the defendant's mental condition as it relates to the issue of guilt or punishment in a capital case. Fed. R. Crim. P. 12.2(d).

Rule 16(b)(1)(C) provides that:

> The defendant must, at the government's request, give to the government a written summary of any testimony that the defendant intends to use under Rules 702, 703, or 705 of the Federal Rules of Evidence as evidence at trial, if –

. . .

> (ii) the defendant has given notice under
> Rule 12.2(b) of an intent to present expert
> testimony on the defendant's mental condition.

This summary must describe the witness's opinions, the
bases and reasons for those opinions, and the
witness's qualifications.

Fed. R. Crim. P. 16(b)(1)(C). Federal courts have held that

Rule 16(b) applies to both the guilt phase and penalty phase of

a death penalty trial. See, e.g., United States v. Wilson,

493 F. Supp. 2d 348, 354-56 (E.D.N.Y. 2006); United States v.

Catalan Roman, 376 F. Supp. 2d 108, 113-14 (D.P.R. 2005).

## III. ANALYSIS

The Court addresses each of the parties' arguments in turn

below.

## A.   Sufficiency and Content of Defendant's Notice

The Court finds that Defendant's Notice, filed on

August 13, 2012, is inadequate under Rule 12.2(b).

The purpose of Rule 12.2(b) notice "is to prevent the need

for a continuance when [mental health] evidence is offered

without prior notice." Fed. R. Crim. P. 12.2 advisory committee

notes; see also Wilson, 493 F. Supp. 2d at 356 (describing the

purpose of Rule 12.2 as "eliminating unnecessary delay in

allowing the Government to adequately prepare its rebuttal

case."). Defendant's Notice is now more than a year old and

references only the report of an expert witness who is no longer

Case 2:11-cr-20044-JPM   Document 369   Filed 03/27/14   Page 12 of 30   PageID 8303
Case 1:15-2347   Document 35   Document 943-2   Filed 07/27/2016/14   Pages: 4186 of
Case 2:11-cr-00077-PPS-APR   Document 943-2   Filed 06/06/14   Page 12 of 30

participating in this case.  (See ECF No. 59 at 1.)  Moreover,

the Notice merely states that Defendant "intend[s] to introduce

expert evidence relating to a mental disease or defect and other

mental conditions of the Defendant which bears on both the issue

of guilt and the issue of punishment in his case."  (Id.)

Adequate notice under Rule 12.2(b) must include at least

"the kinds of mental health professionals who have evaluated the

defendant and the specific nature of any testing that the

defense experts would perform or have performed."  United States

v. Lujan, 530 F. Supp. 2d 1224, 1238-39 (D.N.M. 2008) (citing

Wilson, 493 F. Supp. 2d at 351-53; Johnson, 362 F. Supp. 2d at

1080).  "[T]his information is sufficient 'meaningful notice' to

enable the government to choose the type of expert it needs

without forcing the defendant to disclose the specific nature of

his proffered mental condition before the time contemplated by

Rule 12.2."  Id. at 1239 (citing Wilson, 493 F. Supp. 2d at 352-

53; Sampson, 335 F. Supp. 2d at 243).

Therefore, Defendant must file an amended notice that

includes the type of mental health experts Defendant will call

at trial, as well as the specific nature of any testing that

said experts have performed or will perform.  Moreover, the

amended notice "should include experts who are basing their

opinion on a review of records, rather than a personal

examination, so long as the expert will be providing evidence of

Case 2:11-cr-20044-JPM  Document 369  Filed 03/27/14  Page 13 of 30  PageID 8304
Case 1:15-2347  Document 35ument 943-2  Filed 07/27/2016/14  Pages: 4186f
Case 2:11-cr-00077-PPS-APR  Document 943-2  Filed 06/06/14  Page 15 of 30

a mental condition bearing on guilt or punishment." Id. (citing

United States v. Edelin, 134 F. Supp. 2d 45, 51-52 (D.D.C.

2001)).

At the hearing on March 21, 2014 (see ECF No. 364), counsel

for Defendant argued that, by virtue of the Atkins proceeding in

this case, the Government already has notice of Defendant's

experts, the type of mental testing conducted by said experts,

and the mental conditions they alleged.  Defendant cited the

reports of both defense and Government experts as examples of

the Government having adequate notice of both the experts and

the underlying mental conditions asserted.  (See ECF No. 177-1

at PageID 1672 (sealed); ECF No. 94-1 at 37, PageID 306

(sealed);  ECF No. 95-1 at 40, PageID 361 (sealed).)

Defendant's argument fails.  Rule 12.2(b) requires explicit

notice to the Government; it is not enough for Defendant to

state that the Government can infer the mental health evidence

he will potentially present at trial and therefore has adequate

notice.

Defendant also argues that that the Government's Motion and

proposed order would require notice of more than what is

required by Rule 12.2.  Specifically, Defendant argues that

"Rule 12.2 does not require the release of the names and

curriculum vitaes of the Defendant's experts and most courts

have denied the government this information."  (ECF No. 361 at 3

Case 2:11-cr-20044-JPM   Document 369   Filed 03/27/14   Page 14 of 30   PageID 8305
Case 1:5-2347   Document 35   Filed 07/27/2016   Pages: 4186
Case 2:11-cr-00077-PPS-APR   Document 943-2   Filed 06/06/14   Page 14 of 30

(citing <u>Lujan</u>, 530 F. Supp. 2d at 1239; <u>Wilson</u>, 493 F. Supp. 2d at 352-53).)  The Government responds that "the names and professional qualifications of defense experts have actually been provided to the government in numerous cases.  (ECF No. 363 at 4 (citing <u>United States v. McCluskey</u>, No. 1:10-cr-02734-JCH, ECF No. 219 (D.N.M. Sept. 9, 2011); <u>Catalan Roman</u>, 376 F. Supp. 2d 108; <u>Johnson</u>, 362 F. Supp. 2d at 1074-80; <u>Sampson</u>, 335 F. Supp. 2d at 243; <u>United States v. Hardy</u>, No. 2:94-cr-00381-HGB-ALC, ECF No. 1810 (E.D. La. Apr. 14, 2008).)  The Government also notes that Defendant provided Dr. James Walker's name in his 2012 notice.  (<u>Id.</u>)

The Court has reviewed Rule 12.2(b) and federal cases applying the rule, and finds that it is sufficient for Defendant's amended notice to disclose only "the <u>kinds of mental health professionals</u> and the <u>nature of the tests</u> that the defendant's experts would perform . . . ."  <u>Wilson</u>, 493 F. Supp. 2d at 352; <u>see also</u> Wright & Leipold, <u>Federal Practice and Procedure</u> § 207, at 496.  This will provide the Government with the "meaningful notice" that is required under Rule 12.2(b) in order to allow proper rebuttal preparation and avoid trial delays.  The Court will also require Defendant's amended notice to disclose whether Defendant intends to present non-mental health expert testimony in mitigation at the penalty phase of his trial, if it occurs.  <u>See</u> <u>Catalan Roman</u>,

14

Case 2:11-cr-20044-JPM Document 369 Filed 03/27/14 Page 15 of 30 PageID 8306
Case: 15-2347 Document: 35 Filed: 07/27/2016 Pages: 4186
Case 2:11-cr-00077-PPS-APR Document 943-2 Filed 06/06/14 Page 15 of 30

376 F. Supp. 2d at 115 ("The Court accordingly finds . . . a statutory basis to assert its inherent authority to require notice of any expert mitigation that defendant plans to offer during the penalty phase, regardless of whether it concerns a mental condition under Rule 12.2.").

Defendant's notice is not required to provide the Government with a "brief, general summary of the topics to be addressed" (see ECF No. 345-1 at 1); following the 2002 Amendments to Rule 12.2, "requiring the defendant to provide such information is no longer permissible because 'the nature of the proffered mental condition(s)' is essentially the same as the 'results and reports' for which early disclosure is barred."[6] Sampson, 335 F. Supp. 2d at 243 (citing Fed. R. Crim. P. 12.2(c)(2)). Moreover, although Defendant has previously named the mental health professionals on whom he intends to rely

---

[6] The 2002 Amendments to Rule 12.2(c)(2) were intended to "insulate the results of the [mental] examination until it is clear that the defendant will introduce expert evidence about his or her mental condition at a capital sentencing hearing . . . and a reaffirmation by the defendant of an intent to introduce expert mental-condition evidence in the sentencing phase." Fed. R. Crim. P. 12.2 advisory committee notes (2002 Amendments to Rule 12.2(c)(2)). The Court in Sampson explained that the sealing of expert reports until the defendant confirms an intent to present mental health evidence at sentencing addresses the following concerns:

> To allow the government to use the results of a defendant's mental examination, or any information derived from it, for a purpose other than rebuttal at sentencing would violate the defendant's Fifth Amendment right against self-incrimination. Moreover, the defendant's Sixth Amendment right to the effective assistance of counsel could be compromised if defense counsel was required to reveal his strategy or to disclose materials he provided to his experts.

335 F. Supp. 2d at 243 (citations omitted).

Case 2:11-cr-20044-JPM   Document 369   Filed 03/27/14   Page 16 of 30   PageID 8307
Case 15-2347   Document 35   Filed 07/27/2016   Pages: 4186
Case 2:11-cr-00077-PPS-APR   Document 943-2   Filed 06/06/14   Page 16 of 30

(see ECF No. 59 at 1), and the Government is aware of the mental health professionals Defendant presented at the Atkins hearing, the Court will not require Defendant's amended notice to include the names and professional qualifications of his potential mental health experts at trial.

Accordingly, the instant Motion (ECF No. 345) is GRANTED IN PART and DENIED IN PART as to the Government's request for an amended notice of intent to present mental health evidence at trial.  The Motion is GRANTED insofar as Defendant must amend his notice to disclose the kinds of mental health professionals and the nature of the tests that the defendant's experts would perform.  The Motion is DENIED insofar as the Government requests notice of the specific mental conditions Defendant will allege at trial, and as to the Government's request that the notice include the names and qualifications of Defendant's potential experts.  As the Court stated at the March 21, 2014, hearing, Defendant shall comply with the procedures listed infra at Part IV, pp. 26-30, by 4:30 p.m. on Friday, April 4, 2014.

**B.   Submission by Defendant to Government Examination**

As stated above, "[i]f the defendant provides notice under Rule 12.2(b) the court may, upon the government's motion, order the defendant to be examined under procedures ordered by the court."  Fed. R. Crim. P. 12.2(c)(1)(B).  "[C]ourts have consistently held that a defendant's Fifth Amendment rights are

Case 2:11-cr-20044-JPM Document 369 Filed 03/27/14 Page 17 of 30 PageID 8308
Case 1:15-2347 Document 35 Filed 07/27/2016 Pages: 4186
Case 2:11-cr-00077-PPS-APR Document 943-2 Filed 06/06/14 Page 17 of 30

not violated by a court ordered mental health examination when the defendant has provided notice of intent to produce mental health expert testimony in support of a mitigating factor at sentencing." United States v. Fell, 372 F. Supp. 2d 753, 760 (D. Vt. 2005) (citing Edelin, 134 F. Supp. 2d at 49; United States v. Webster, 162 F.3d 308, 340 (5th Cir. 1998); United States v. Beckford, 962 F. Supp. 748, 760 (E.D. Va. 1997); United States v. Vest, 905 F. Supp. 651, 653 (W.D. Mo. 1995)); see also Fed. R. Crim. P. 12.2 advisory committee notes (2002 Amendments to Rule 12.2(c)(1)(B)) ("Rule 12.2(c)(1)(B) extends to those cases when the defendant has provided notice, under Rule 12.2(b), of an intent to present expert testimony on the defendant's mental condition, either on the merits or at capital sentencing.").

Defendant argues that he "should only be required to submit to an additional examination if the amended notice exceeds the scope of the original notice filed with this Court and the subject of the Court's previous order." (ECF No. 361 at 4.) The Government argues that it should be permitted to conduct a further examination of Defendant because its previous examinations were limited to the issue of MR/ID, pursuant to Court Order (see ECF No. 74 at 2). (ECF No. 363 at 8.) The Government asserts that it "should be entitled to a further examination of [Defendant] under Rule 12.2(c) if the defense is

17

Case 2:11-cr-20044-JPM Document 369 Filed 03/27/14 Page 18 of 30 PageID 8309
Case 15-2347 Document 35 Filed 07/27/2016 Pages: 4186
Case 2:11-cr-00077-PPS-APR Document 943-2 Filed 06/06/14 Page 18 of 30

advancing any claim that [Defendant] has any mental condition, disease, or defect other than [MR/ID]." (Id.)

The Court finds the Government's argument more compelling. Although the reports submitted by mental health professionals for both parties briefly referenced mental conditions other than MR/ID (see ECF No. 177-1 at PageID 1672 (sealed); ECF No. 94-1 at 37, PageID 306 (sealed); ECF No. 95-1 at 40, PageID 361 (sealed)), the vast majority of time and effort expended during the Atkins and suppression hearings was focused on MR/ID. Based on the representations of Defendant's counsel at the hearing on March 21, 2014 (see ECF No. 364), defense counsel has unequivocally stated that the Defendant does not intend to present expert testimony at the guilt phase. It is, however, unclear what mental health testimony, if any, Defendant may present at the penalty phase. Therefore, the Government cannot be certain that it is adequately prepared to rebut the mental health expert testimony Defendant may present at the penalty phase based on Defendant's inadequate 2012 notice and the information it has already obtained during the Atkins and suppression proceedings.

Rule 12.2(c)(1)(B) explicitly allows the Court to order Defendant to undergo an examination by an expert of the Government's choosing. "If the defendant gives notice under 12.2(b), the court may order the defendant to undergo a mental

Case 2:11-cr-20044-JPM   Document 369   Filed 03/27/14   Page 19 of 30   PageID 8310
Case: 15-2347   Document: 35   Filed: 07/27/2016   Pages: 4186
Case 2:11-cr-00077-PPS-APR   Document 943-2   Filed 06/06/14   Page 19 of 30

examination."  Wright & Leipold, Federal Practice and Procedure

§ 207, at 496; see also United States v. Lewis, 53 F.3d 29,

35 n.9 (5th Cir. 1995) (finding no error in the district court's

order that the defendant "undergo a psychological examination

before trial pursuant to [Rule 12.2(c)], in light of [the

defendant's] notice to the government . . . that . . . he

intended to rely on expert testimony to show he had a sub-normal

level of intelligence.").

Accordingly, the instant Motion (ECF No. 345) is GRANTED as

to the Government's request to have Defendant submit to a mental

examination by a Government expert prior to the commencement of

trial.   See, e.g., United States v. Umana, No. 3:08CR134-RJC,

2009 WL 2489309, at *3 (W.D.N.C. Aug. 12, 2009).   If Defendant

submits an amended notice of his intent to present mental health

expert testimony at trial by 4:30 p.m. on Friday, April 4, 2014,

he will be required to submit to a mental examination by an

expert of the Government's choosing prior to the commencement of

trial.

## C.    Appointment of Firewalled AUSA and Disclosures to the Firewalled AUSA

The Government's proposed order would require the

Government to designate a firewalled AUSA – in this case, Stuart

Canale – "to arrange for any evaluation by an expert designated

by the Government, to handle any issues arising during the

Case 2:11-cr-20044-JPM   Document 369   Filed 03/27/14   Page 20 of 30   PageID 8311
Case 15-2347   Document 35   Filed 07/27/2016   Pages: 4186
Case 2:11-cr-00077-PPS-APR   Document 943-2   Filed 06/06/14   Page 20 of 30

evaluation process, and to arrange for filing of the expert's report under seal."  (ECF No. 345 at 8; accord ECF No. 363 at 10.)  The firewalled AUSA would be prohibited from communicating with or joining the prosecution team until Defendant confirms his intent to introduce expert mental health evidence at the punishment phase of his trial.  (ECF No. 345 at 8.)  The Government further argues that Rule 16(b)(1)(C) disclosures – i.e., a summary of the expert witness's opinions, the bases and reasons for those opinions, and the witness's qualifications – should "be turned over to the designated 'firewalled' counsel prior to trial."  (ECF No. 363 at 7 (citing Wilson, 493 F. Supp. 2d at 363).)

Defendant objects to and does not consent to the appointment of firewalled counsel (ECF No. 361 at 4-5), arguing that Rule 12.2(c)(2) prohibits the disclosure of the results and reports of any mental health expert to "any attorney for the government . . . unless the defendant is found guilty of one or more capital crimes and the defendant confirms an intent to offer during sentencing proceedings expert evidence on mental condition."  Fed. R. Crim. P. 12.2(c)(2) (emphasis added by Defendant).  At the hearing on March 21, 2014 (see ECF No. 364), Defendant's counsel objected to the appointment of firewalled counsel, especially counsel within the Western District of Tennessee, arguing that the use of firewalled counsel

Case 2:11-cr-20044-JPM   Document 369   Filed 03/27/14   Page 21 of 30   PageID 8312
Case 15-2347   Document 35   Filed 07/27/2016   Pages: 4186
Case 2:11-cr-00077-PPS-APR   Document 943-2   Filed 06/06/14   Page 21 of 30

circumvents Rule 12.2(c)(2) and would raise the specter of the firewall being breached.

The Court finds the Government's arguments more availing and, therefore, will order the appointment of a firewalled AUSA in this case.  As a threshold matter, the language "any attorney for the government" in Rule 12.2(c)(2) has been reasonably interpreted to exclude "those attorneys representing the government's interests solely in connection with its experts' testing."  Sampson, 335 F. Supp. 2d at 245; see also Johnson, 362 F. Supp. 2d at 1083 (finding that Rule 12.2(c)(2)'s language "reasonably means 'any attorney prosecuting the case.'").

> To ensure that the government is not provided access to the results of defendant's mental exam before the defendant elects to put his mental condition in issue, the district court may order that the government's examining experts work only with a 'taint team,' consisting of government attorneys who are walled-off from the prosecutor who is trying the case.

Wright & Leipold, Federal Practice and Procedure § 207, at 500.

Federal courts have routinely approved the use of firewalled AUSAs in Rule 12.2(b) contexts.  See, e.g., Wilson, 493 F. Supp. 2d at 353-56; Sampson, 335 F. Supp. 2d at 243-45; Johnson, 362 F. Supp. 2d at 1082-84; United States v. Northington, No. 07-550-05, 2012 WL 2873360, at *7 (E.D. Pa. July 12, 2012).  The Court in Sampson succinctly described the virtues of firewalled counsel in these circumstances:

Case 2:11-cr-20044-JPM   Document 369   Filed 03/27/14   Page 22 of 30   PageID 8313
Case 15-2347   Document 35   Filed 07/27/2016   Pages: 4186
Case 2:11-cr-00077-PPS-APR   Document 943-2   Filed 06/06/14   Page 22 of 30

Rule 12.2's goal of avoiding delays in capital sentencing proceedings would not be served if any problems with the government testing were not revealed until after the guilt phase.  The defendant could suffer no prejudice from the fire-wall procedure. Indeed, the procedure might provide the defendant with an even greater sense of security that his defense strategy . . . would remain hidden from the prosecution team.

Sampson, 335 F. Supp. 2d at 245; see also Northington, 2012 WL 2873360, at *7 ("[T]he use of this firewalled attorney will sufficiently safeguard Defendant's constitutional rights.").

Accordingly, the Court will approve the use of a firewalled AUSA in this case.

To the extent Defendant argues that the firewalled AUSA should not be from the Western District of Tennessee, the Court rejects the argument.  The Court recognizes that, in Wilson, the United States District Court for the Eastern District of New York denied the government's motion to appoint a firewalled AUSA from within the same district in light of the E.D.N.Y.'s "geographic proximity to several other districts, including the Southern District of New York's U.S. Attorney's Office, located less than two miles away in lower Manhattan, and the District of New Jersey's office."  493 F. Supp. 2d at 358.  There is no similar geographically expedient solution in the Western District of Tennessee.  Moreover, the court in Wilson recognized that appointing a firewalled AUSA from outside of the E.D.N.Y. was merely "the more cautious route."  Id.  Similarly, in

22

1393

Case 2:11-cr-20044-JPM   Document 369   Filed 03/27/14   Page 23 of 30   PageID 8314
Case 15-2347   Document 35   Filed 07/27/2016   Page: 4186
Case 2:11-cr-00077-PPS-APR   Document 943-2   Filed 06/06/14   Page 25 of 30

<u>Johnson</u>, the United States District Court for the Northern District of Iowa, "although not convinced that use of an 'outside taint team' or 'outside taint attorney' is either always necessary or necessary in this case, . . . [erred] on the side of caution by appointing such an 'outsider' . . . ." 362 F. Supp. 2d at 1084.[7]

In this case, the Court has no misgivings about either the Government's or Mr. Canale's ability to comport themselves within the bounds of Rule 12.2 and the Constitution. Accordingly, the Court will not require the firewalled AUSA in this case to come from a district other than the Western District of Tennessee.  The instant Motion (ECF No. 345) is GRANTED as to the Government's request to appoint firewalled counsel.

As for the Government's request that the firewalled AUSA be provided with further disclosure of mental health expert evidence under Rule 16(b)(1)(C), the Government's argument is well-taken.  As an initial matter, the Court rejects Defendant's assertion at the hearing on March 21, 2014 (<u>see</u> ECF No. 364), that Rule 16(b)(1)(C) does not apply to the penalty phase of a

---

[7] The court in <u>Johnson</u> stated that there were "two 'taint teams' in . . . the Northern District of Iowa working on issues in this case and that these 'taint teams' have worked efficiently and effectively.  Thus, there is no reason to believe that any 'breakdown' of a 'firewall' would be likely within that office."  362 F. Supp. 2d at 1084.  Similarly here, the Court has no reason to believe the Government in this case will not maintain the integrity of the firewall and the procedures mandated by Rule 12.2 and the Constitution.

Case 2:11-cr-20044-JPM   Document 369   Filed 03/27/14   Page 24 of 30   PageID 8315
Case 1:15-2347   Document 35   Document 943-2   Filed 07/27/2016/14   Pages: 4186 of 30
Case 2:11-cr-00077-PPS-APR   Document 943-2   Filed 06/06/14   Page 24 of 30

capital trial.  Federal courts have persuasively held that Rule 16(b)'s disclosure requirements are not limited to the guilt phase of a capital trial.  For example, in <u>Wilson</u>, the court rejected the argument that Rule 16(b)(1)'s reference to the Federal Rules of Evidence ("FRE") is an indication that Rule 16 does not apply to the sentencing phase of a capital trial since the Rules of Evidence do not apply in the sentencing phase.  <u>See</u> 493 F. Supp. 2d at 355 (citing <u>United States v. Fell</u>, 360 F.3d 135, 144 (2d Cir. 2004)).  The court stated:

> First, the penalty phase of a capital trial is but the final phase of a single bifurcated (or trifurcated) trial.  Moreover, although the [FRE] are not utilized during the death penalty phase to preclude hearsay and other inadmissible evidence, the mitigation evidence presented concerning Defendant's mental condition will nonetheless comport with the expert evidence requirements of Rules 702, 703, and 705.  Thus, the language of Rule 16 is still reconcilable with penalty phase disclosure and is certainly not prohibited by the rule.

<u>Id.</u> (citations omitted) (internal quotation marks omitted); <u>see also</u> <u>Catalan Roman</u>, 376 F. Supp. 2d at 113 ("It is not clear that the terms of Rule 16 cannot extend to the sentencing phase. While the Rule is drafted in terms of the admissibility of certain evidence for use during 'trial,' that language is still reconcilable with penalty phase disclosure because sentencing is part of one 'bifurcated' trial.").

Having found Rule 16 applicable to the sentencing phase, the Court will require Defendant to disclose <u>only</u> to the

Case 2:11-cr-20044-JPM   Document 369   Filed 03/27/14   Page 25 of 30   PageID 8316
Case 15-2347   Document 35   Filed 07/27/2016   Pages: 4186
Case 2:11-cr-00077-PPS-APR   Document 943-2   Filed 06/06/14   Page 25 of 30

firewalled AUSA, not the prosecution team, a written summary of expert testimony on Defendant's mental condition that Defendant intends to admit during the penalty phase.  This summary must "describe the witness's opinions, the bases and reasons for those opinions, and the witness's qualifications."  Fed. R. Crim. P. 16(b)(1)(C)(ii).  See Wilson, 493 F. Supp. 2d at 356. As stated above, Defendant must make this disclosure by 4:30 p.m. on Friday, April 4, 2014.

**D.    Defendant's Request for a Certification That Defendant's Statements to Mental Health Professionals Were Not Used Derivatively in the Government's Case in Chief**

Defendant argues that the Government should be required to file a certification that it has not used any mental health report already in its possession derivatively in support of its case in chief.  (ECF No. 361 at 5.)  In support of his request, Defendant cites the following portion of the 2002 advisory committee notes to Rule 12.2:  "Most courts that have addressed the issue have recognized that if the government obtains early access to the accused's statements, it will be required to show that it has not made any derivative use of that evidence."  Fed. R. Crim. P. 12.2 advisory committee notes (2002 Amendments to Rule 12.2(c)(2)).  The Government asserts that Rule 12.2(c)(4) provides adequate safeguards without an additional certification from the Government, which is unsupported by legal authority. (See ECF No. 363 at 11.)  Rule 12.2(c)(4) provides:

25

Case 2:11-cr-20044-JPM   Document 369   Filed 03/27/14   Page 26 of 30   PageID 8317
Case 15-2347   Document 35   Filed 07/27/2016   Pages: 4186
Case 2:11-cr-00077-PPS-APR   Document 943-2   Filed 06/06/14   Page 26 of 30

(4) <u>Inadmissibility of a Defendant's Statements</u>. No statement made by a defendant in the course of any examination conducted under this rule (whether conducted with or without the defendant's consent), no testimony by the expert based on the statement, and no other fruits of the statement may be admitted into evidence against the defendant in any criminal proceeding except on an issue regarding mental condition on which the defendant:

> (A) has introduced evidence of incompetency or evidence requiring notice under Rule 12.2(a) or (b)(1), or
>
> (B) has introduced expert evidence in a capital sentencing proceeding requiring notice under Rule 12.2(b)(2).

Fed. R. Crim. P. 12.2(c)(4).

The Court reemphasizes its statement at the hearing on March 21, 2014 (<u>see</u> ECF No. 364):  the Court has no doubt regarding the Government's ability to conform to the requirements of Rule 12.2(c)(4) and the Constitution. Accordingly, the Court will not require the Government to submit a separate certification that it has not improperly used the expert mental health reports currently in its possession in an unconstitutional derivative fashion in support of its case in chief.

## IV. CONCLUSION AND ORDER REGARDING MENTAL HEALTH EVIDENCE

For the reasons stated above, the Government's Motion for Pretrial Notice of Intent to Introduce Penalty Phase Mental Health Evidence (ECF No. 345) is GRANTED IN PART and DENIED IN

Case 2:11-cr-20044-JPM   Document 369   Filed 03/27/14   Page 27 of 30   PageID 8318
Case 1:15-2347   Document 35   Filed 07/27/2016   Pages: 4186
Case 2:11-cr-00077-PPS-APR   Document 943-2   Filed 06/06/14   Page 27 of 30

PART.  Pursuant to Federal Rule of Criminal Procedure 12.2 and the inherent authority of this Court, it is hereby ORDERED that:

A.  If Defendant intends to introduce expert evidence during the guilt phase of his trial relating to mental disease or defect, or during the penalty phase of his trial relating to any other mental condition of Defendant bearing on the issue of punishment, Defendant must file written notice thereof no later than 4:30 p.m. on Friday, April 4, 2014.

Defendant's notice shall include the kinds of mental health experts he anticipates calling at trial and the specific nature of the tests those experts have performed or may be expected to perform.  The notice shall include experts who are basing their opinions on a review of records and not a personal examination of Defendant. Defendant's notice need not include the names of his anticipated experts or any indication of the specific mental condition Defendant intends to allege at trial.

B.  If Defendant files notice of plans to introduce expert mental health evidence at the penalty phase of trial, Defendant shall be examined by one or more mental health professionals selected by the Government.  The Government's examination shall take place no later than sixty (60) days after Defendant files his notice, and prior to the commencement of the trial on Monday, June 9, 2014.  The

27

1398

Case 2:11-cr-20044-JPM   Document 369   Filed 03/27/14   Page 28 of 30   PageID 8319
Case 15-2347   Document 35   Filed 07/27/2016   Pages: 4186
Case 2:11-cr-00077-PPS-APR   Document 943-2   Filed 06/06/14   Page 28 of 30

report of any examination conducted by a Government expert and the expert report of any examination initiated by Defendant shall be filed under seal with the Court before commencement of the guilt phase of trial, or as soon thereafter as possible if the trial schedule does not permit pre-trial filing.

C.  In anticipation of such notice from Defendant, the Government shall designate an AUSA as a firewalled AUSA to arrange for any evaluation by an expert designated by the Government, handle any issues arising out of the evaluation process, and arrange for filing of expert reports under seal.  The firewalled AUSA may not communicate with the prosecution team regarding case matters and may not join the prosecution team unless and until the Defendant is found guilty of a capital offense at trial and gives notice confirming his intent to introduce expert mental health evidence during the penalty phase of the trial.  Should the firewalled AUSA or the prosecution team need to communicate regarding a case-specific matter, the individual seeking to make such communication must first obtain a stipulation from defense counsel or approval of the Court.  Any individuals assisting the firewalled AUSA shall be subject to the same requirements and restrictions as the firewalled AUSA.

28

Case 2:11-cr-20044-JPM   Document 369   Filed 03/27/14   Page 29 of 30   PageID 8320
Case 15-2347   Document 35   Filed: 07/27/2016   Pages: 4186
Case 2:11-cr-00077-PPS-APR   Document 943-2   Filed 06/06/14   Page 29 of 30

D.   Pursuant to Federal Rule of Criminal Procedure 16(b)(1)(C),
Defendant shall submit to the firewalled AUSA a written
summary of expert testimony on Defendant's mental condition
that he intends to admit during the penalty phase of trial,
if it occurs.  This summary must describe the witness's
opinions, the bases and reasons for those opinions, and the
witness's qualifications.  Defendant shall complete this
disclosure by 4:30 p.m. on Friday, April 4, 2014.

E.   If there is a guilty verdict on a death-eligible count in
the trial of this case, Defendant shall, no later than
twenty-four (24) hours after issuance of such a verdict,
file a pleading confirming or disavowing his intent to
introduce mental health evidence at the penalty phase.  If
Defendant withdraws his previously tendered notice, the
results of any mental health examinations concerning
Defendant will not be released to the Government's trial
team and the firewalled AUSA may not join the Government's
trial team.

     If Defendant confirms his intent to introduce mental
health evidence at the penalty phase, the reports of any
examination by a Government expert shall be released to
Defendant immediately after Defendant files his pleading
confirming the earlier notice.  No later than twenty-four
(24) hours after release of the Government's expert

29

1400

Case 2:11-cr-20044-JPM   Document 369   Filed 03/27/14   Page 30 of 30   PageID 8321
Case 1:15-2347   Document 35   Document 943-2   Filed 07/27/2016   Pages: 4186
Case 2:11-cr-00077-PPS-APR   Document 943-2   Filed 06/06/14   Page 30 of 30

report(s), the report(s) of any defense expert(s) shall be released to the Government's trial team, or Defendant shall file a notice of withdrawal of his intent to introduce expert mental health evidence.

F.   Even if Defendant confirms his intent to offer mental health evidence, Defendant may withdraw a notice of intent to introduce such evidence at any time before such evidence is presented at trial.  In that event, none of the fact of notice, results, or reports of any mental examination, or any facts disclosed only therein shall be admissible against Defendant.

G.   Failure of Defendant to provide notice, or to participate in a Court-ordered examination, or to confirm his intent to introduce mental health evidence at the penalty phase, may result in forfeiture of the right to present mental health testimony at trial.

**IT IS SO ORDERED,** this 27th day of March, 2014.

/s/ Jon P. McCalla
JON P. McCALLA
U.S. DISTRICT COURT JUDGE

30

1401

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | NO. 2:11CR77 PPS |
| | ) | |
| JUAN BRISENO, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## ORDER

By **Friday, June 20, 2014**, counsel shall file their **joint proposed juror questionnaire**, plus any additional questions proposed by one party but not agreed to by the other, and any objections to such questions proposed by the opposing party.

A hearing to finalize the juror questionnaire is set for **Monday, June 30, 2014 at 1:45 p.m.** The United States Marshal shall produce defendant Juan Briseno for the hearing.

SO ORDERED.

ENTERED: June 6, 2014.

 /s/ Philip P. Simon
PHILIP P. SIMON, CHIEF JUDGE
UNITED STATES DISTRICT COURT

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | 2:11-CR-0077-PPS |
| | ) | |
| JUAN BRISENO, also known as Tito. | ) | |

**JOINT NOTICE OF FILING**
**OF AGREED PROPOSED JUROR QUESTIONNAIRE**

**TO THE HONORABLE COURT:**

COME NOW, the United States of America ("United States" or "Government") and

defendant Juan Briseno ("Mr. Briseno") and jointly provide hereby notice to the Court of the

filing herewith of their agreed proposed Special Questionnaire in this case.[1]  Further, Mr.

Briseno and the Government agree that neither Mr. Briseno nor the Government have any

objection to any of the questions contained in the attached Special Questionnaire.


Respectfully submitted,                                   Respectfully submitted,

                                                         DAVID CAPP
s/ *John Maksimovich*                                    UNITED STATES ATTORNEY
John Maksimovich /#9950-45
1946 North Main Street                                   David J. Nozick
Crown Point, IN 46307                                    Assistant U.S. Attorney
PH: 219.663.1900                                         5400 Federal Plaza
FX: 219.663.1908                                         Suite 1500
www.criminallaw@johnmaksimovich.com                      Hammond, IN 46320
                                                         Tel. (219) 937-5655
                                                         www.david.nozick@usdoj.gov


---

[1]  It is the understanding of both Mr. Briseno and the Government that the Court
anticipates the use of a separate "hardship" questionnaire.

**JOINT NOTICE OF FILLING OF AGREED PROPOSED JUROR QUESTIONNAIRE**
United States v. Juan Briseno.
Cause No. 2:11-CR-0077-PPS
**Page 2**
_____

Arlington Foley /#6905-45                    s/  *Bruce R. Hegyi*

1942 North Main Street                       Bruce R. Hegyi
Crown Point, IN 46307                        Trial Attorney
PH: 219.661.1200                             Capital Case Unit
FX: 219.661.1205                             Criminal Division
www.arlingtonfoley@att.net                   United States Department of Justice
                                             1331 F Street, N.W., Third Floor
Attorneys for Defendant                      Washington, D.C.  20530
Juan Briseno                                 Tel. (202) 616-4582
                                             Cell (703) 536-4774
                                             www.bruce.hegyi@usdoj.gov

                                             Attorneys for the United States of America

**JOINT NOTICE OF FILLING OF AGREED PROPOSED JUROR QUESTIONNAIRE**
United States v. Juan Briseno.
Cause No. 2:11-CR-0077-PPS
**Page 3**
_____

# CERTIFICATE OF SERVICE

   **I HEREBY CERTIFY** that on this date, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to counsel for all of the defendants.


                                        s/ Bruce R. Hegyi
                                        Bruce R. Hegyi
                                        Trial Attorney

Case: 15-2347     Document: 35          Filed: 07/27/2016      Pages: 4186
Case 2:11-cr-00077-PPS-APR   Document 955-1   Filed 06/18/14   Page 1 of 38

Juror Number:

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA**, § § § § | |
| - vs - § § | CAUSE NO.  2:11-CR-0077-PPS |
| **JUAN BRISENO, also known as "Tito,"** § § § | |

## SPECIAL QUESTIONNAIRE

### CASE SUMMARY

Juan Briseno is charged in an indictment with various criminal offenses.  An indictment listing the criminal charges against a defendant is simply the document used to advise a defendant of the accusations against him.  The indictment is not evidence.  Mr. Briseno has pleaded not guilty to the charges in the indictment.  Mr. Briseno is presumed innocent of the charges.  The government has the burden of proof under our Constitution and system of laws. The government must come forward with proof, beyond a reasonable doubt, that Mr. Briseno committed the crimes with which he is charged before Mr. Briseno can be found guilty.  Mr. Briseno has no obligation to produce any evidence, nor do anything at trial.  You must keep in mind that Mr. Briseno is presumed to be innocent of the charges against him and that this presumption stays with him unless and until the government proves each element of the charges beyond a reasonable doubt.

The charges contained in the fourth superseding indictment allege that beginning at least by February 2002 and continuing thereafter, members of the Imperial Gangsters, including Mr. Briseno, engaged in a conspiracy to distribute for profit illegal drugs in the East Chicago area of Indiana.  In addition to operating a drug trafficking organization, it is alleged that the Imperial Gangsters, and Mr. Briseno, engaged in the sale or exchange of guns, in armed robberies, in burglaries, as well as other illegal conduct.  The indictment also alleges that the Imperial Gangsters, and Mr. Briseno, used various methods to protect their criminal enterprise, including patrolling areas within East Chicago that they controlled, threatening and intimidating potential rivals, including shooting and killing members of rival gangs or potential witnesses against members of the Imperial Gangsters.  Among other things, the indictment alleges that, between September of 2007 and June of 2010, Mr. Briseno personally participated in the murders of six (6) individuals and the attempted murders of an additional seven (7) individuals in or around the East Chicago area.

You are reminded that these are simply *unproven* allegations; nothing more.

In order to assist the parties and the Court in their duty to select a jury in this case that is fair and impartial, we need to ask you some questions about yourself and your views on various

topics or issues.  Many of the questions are easy and straightforward.  However, some of the questions will ask you about things that you may not have thought about for a long time, if ever. Moreover, you may not know the answer to some of the questions.  Please answer each of these questions as candidly and completely as you are able, based on your best recollection, knowledge and belief.

## YOUR BACKGROUND

1.      Name:

2.      What is your age? _____

3.      Gender:       ❑ Male        ❑ Female

4.      What is your race or ethnicity and that of your spouse or partner?  (This information will not affect your selection for jury service.)

        You: _____        Spouse/Partner: _____

5.      In what city, state and country were you born and raised?

        Born: _____        Raised: _____

        If you were born in another country, when did you move to the United States and when did you become a citizen of this country?
        _____

6.      In what city do you reside?  _____

7.      How long have you lived in this area?  _____

8.      Where else have you lived during the last five years?
        _____

        _____

        _____

9.      What is your current relationship status?  Are you:

        ❑ Single                      ❑ Married
        ❑ Divorced                    ❑ Divorced and remarried
        ❑ Widowed                     ❑ Widowed and remarried
        ❑ Currently separated         ❑ Living with someone

        If you are or were married, please indicate how long: _____ (yrs.)

2

10.	For each person currently living in your residence, please provide the following information:

Relationship	Age	Occupation

*Example:  Husband*	*45*	*Teacher*

_____

_____

_____

_____

_____

_____

11.	Do you have children who live outside your home?

❑ Yes	❑ No

If you answered "yes," please provide the following information about each:

| <u>Age</u> | <u>Gender</u> | Highest Level <br> of Education | Occupation/Job | Marital <br> Status |
|---|---|---|---|---|
| \_\_\_\_ | \_\_\_\_\_ | _____ | _____ | \_\_\_\_\_ |
| \_\_\_\_ | \_\_\_\_\_ | _____ | _____ | \_\_\_\_\_ |
| \_\_\_\_ | \_\_\_\_\_ | _____ | _____ | \_\_\_\_\_ |
| \_\_\_\_ | \_\_\_\_\_ | _____ | _____ | \_\_\_\_\_ |
| \_\_\_\_ | \_\_\_\_\_ | _____ | _____ | \_\_\_\_\_ |
| \_\_\_\_ | \_\_\_\_\_ | _____ | _____ | \_\_\_\_\_ |

12.	How would you describe your overall physical condition?

❑ Good	❑ Fair	❑ Poor

If you have a physical condition you believe would affect your ability to serve as a juror, including difficulty hearing, seeing, reading, or concentrating, please explain:

_____

_____

_____

1408

13.    Do you currently take any prescription medications?

❑ Yes          ❑ No

If you answered "yes," please identify the medication, describe the condition for which the medication was prescribed, what regularity you take the medication, and if the medication has any side effects has any side effects that might make it difficult for you to concentrate or otherwise make it difficult for you to serve as a juror:

|  | Medication | Condition | Frequency | Side Effects |
|---|---|---|---|---|
| *Example:* | *Xanax,* | *Anxiety,* | *2x per day,* | *makes me sleepy* |

_____

_____

_____

14.    Have you, or a close family member, undergone counseling, treatment or hospitalization for psychiatric, emotional, family, behavioral, or substance abuse problems?

❑ Yes          ❑ No

If you answered "yes," please tell us who was treated and describe the situation:

_____

_____

_____

15.    How much control over events in your life do you feel that you have?

❑ No control          ❑ Very little control    ❑ Moderate amount of control
❑ Almost complete control

16.    Would you consider yourself to be a leader:

❑ Often          ❑ Sometimes          ❑ Rarely          ❑ Never

17.     What three words best describe you?

_____        _____        _____

### EDUCATION

18.     How far did you go in school?  If you went to college or graduate school, what was your major field of study?

_____

_____

_____

19.     If you are currently a student, please describe your course of study, your expected date of completion, and your expected academic schedule for January - March 2015.

_____

_____

20.     How far did your spouse/partner go in school, and what was his/her major field of study if he/she went to college or graduate school?

_____

_____

21.     Do you or your spouse/partner have any formal education in the fields of law, medicine, psychology, or psychiatry?          ❑ Yes          ❑ No

If you answered "yes," please explain:

_____

_____

22. Have you or your spouse/partner ever taken any course(s) or seminar(s) in ballistics, constitutional law, crime scene investigation, criminal law, criminology or law enforcement?         ❑ Yes         ❑ No

If you answered "yes," please provide the course(s) or seminar(s):

Self:

_____

_____

Spouse/Partner:

_____

_____

## EMPLOYMENT

23. Employment status.  Are you currently:    (Please check all that apply)

   ❑ Employed full time        ❑ Self employed        ❑ Student
   ❑ Employed part time        ❑ Homemaker            ❑ Unemployed
   ❑ Employed more than one job ❑ Retired             ❑ Disabled

24. If currently employed, please tell us the name of your employer, how long you have worked there, your job title and what your job responsibilities are.

_____

_____

_____

25. Please describe any other places you have worked in the last 10 years, including your title and the length of time at each position.  If you retired from any of those positions, please tell us when you retired.

_____

_____

_____

Case 15-2347 Document: 35 Filed: 07/27/2016 Pages: 4186

26. Do you now, or have you ever supervised others? ❑ Yes ❑ No

If you answered "yes," please describe type of work, when and number of people supervised:

_____

_____

_____

27. Please tell us where your spouse or partner works, and what his or her job responsibilities are.

_____

_____

_____

28. Please tell us the occupations of your parents (and step-parents).

_____

_____

_____

## MILITARY SERVICE

29. Have you or anyone close to you ever served in any branch of the Armed Forces of the United States (including the Military Reserves, National Guard or ROTC)?

❑ Yes ❑ No

If you answered "yes," please answer the following:

(a) Please tell us who served, in what branch of service, and the highest rank achieved.

_____

_____

(b) Did you (or they) serve in active combat duty?

❑ Yes ❑ No

1412

If you answered "yes," please tell us who served, in which conflict/war, and where:

_____

_____

_____

## HOBBIES AND ACTIVITIES

30.  What social clubs, fraternal or religious organizations or volunteer groups do you belong to or support, if any?

_____

_____

_____

(a)  Have you ever held an office or position of leadership in any of these organizations either currently or in the past?

❑ Yes        ❑ No

(b)  If you answered "yes," please explain:

_____

_____

_____

31.  What are your hobbies and interests?  What do you like to do in your spare time?

_____

_____

_____

1413

32.   What television shows do you watch most often, if any?

_____

_____

_____

33.   What newspapers, magazines or journals do you read most often, if any?

_____

_____

_____

34.   What internet websites or blogs do you visit most often, if any?

_____

_____

_____

## POLITICS

35.   On the political spectrum, do you consider yourself to be:

❑ Very Conservative          ❑ Conservative          ❑ Moderate

❑ Liberal          ❑ Very Liberal          ❑ Independent

❑ Other _____          ❑ Not Applicable

36.   What three public figures do you admire the most and least?

Most: _____     _____     _____

Least: _____     _____     _____

37. Have you, your spouse/partner, or someone close to you, ever been involved in or a member of a group that takes positions on political, philosophical, social or other similar issues (*e.g.*, crime control, drug or alcohol abuse, gun policy, etc.)?

❑ Yes        ❑ No

If you answered "yes," please identify the group or groups:

*Example:        Spouse        Mothers Against Drunk Drivers*

_____

_____

_____

_____

_____

38. Please look at the list of organizations identified below and as to each of the organizations please indicate whether or not you are familiar with the particular organization and its general mission. If you are familiar with the organization's general mission, please indicate whether or not you support its general mission, disagree with its general mission, or are neutral as to its general mission. Please circle the appropriate answer.

| Organization | | | | |
|---|---|---|---|---|
| American Civil Liberties Union (ACLU) | Unfamiliar | Agree | Neutral | Disagree |
| Handgun Control, Inc. | Unfamiliar | Agree | Neutral | Disagree |
| Ku Klux Klan (KKK) | Unfamiliar | Agree | Neutral | Disagree |
| Mothers Against Drunk Driving (MADD) | Unfamiliar | Agree | Neutral | Disagree |
| Alcoholics Anonymous (AA) | Unfamiliar | Agree | Neutral | Disagree |
| Narcotics Anonymous (NA) | Unfamiliar | Agree | Neutral | Disagree |
| Al Anon (for families of alcoholics) | Unfamiliar | Agree | Neutral | Disagree |
| Nar Anon (for families of drug addicts) | Unfamiliar | Agree | Neutral | Disagree |
| National Rifle Association (NRA) | Unfamiliar | Agree | Neutral | Disagree |
| Police Group or Auxiliary | Unfamiliar | Agree | Neutral | Disagree |
| Big Brother / Big Sister | Unfamiliar | Agree | Neutral | Disagree |
| Prison Ministries | Unfamiliar | Agree | Neutral | Disagree |
| Ex Offender Organizations | Unfamiliar | Agree | Neutral | Disagree |

1415

39.  In what ways, if at all, might your political or philosophical views affect your service as a juror?

_____

_____

_____

## RELIGION

40.  Do you have any religious affiliation or preference?

❑ Yes          ❑ No

41.  How often do you attend your place of worship?

❑ Regularly          ❑ Seldom

❑ Occasionally          ❑ Never

42.  In what ways might your religious views or philosophical beliefs affect your service as a juror, if at all?

_____

_____

_____

## FIREARMS

43.  Have you ever owned or used any type of firearm, or had training in the use of firearms?

❑ Yes          ❑ No

If you answered "yes," please elaborate:

_____

_____

_____

1416

11

44. Do you, or anyone in your household, presently own guns?

❑ Yes        ❑ No

If you answered "yes," please describe the kinds of guns, how many and the reason for ownership (hunting, collection, protection, etc.):

_____

_____

_____

45. Are you or anyone close to you involved with any organization which takes a position on firearms policy?

❑ Yes        ❑ No

If you answered "yes," please tell us what groups and the nature of your involvement.

_____

_____

_____

46. Do you believe that the firearm's laws in the United States and/or in Indiana are unfair or unconstitutional and that the firearms laws should not be enforced?

❑ Yes        ❑ No        ❑ Uncertain

If you answered "yes" or "uncertain," please explain what you mean and why you feel the way that you do about the firearms laws.

_____

_____

_____

1417

## CRIMINAL JUSTICE EXPERIENCE

47.   Have you, your spouse/partner, or anyone close to you ever worked for or been associated with:

(please check all that apply)

|  |  |  |  |
|---|---|---|---|
| A prosecutor's office | ❑ Yes (self) | ❑ Yes (other) | ❑ No |
| A criminal defense attorney's office | ❑ Yes (self) | ❑ Yes (other) | ❑ No |
| Any other lawyer or law office | ❑ Yes (self) | ❑ Yes (other) | ❑ No |

If you answered "yes," please explain:

_____

_____

_____

48.   Have you, your spouse/partner, or anyone close to you ever been employed by, associated with, or applied for work with any law enforcement or security agency, such as the police, sheriff, a prison or jail, FBI, DEA, ATF, ICE, or a private security firm?

❑ Yes        ❑ No

(a)   If you answered "yes," please explain (including agency and dates of affiliation):

*Example:       Son           FBI Agent              2007-present*

_____

_____

_____

49.   Have you, your spouse/partner, or anyone close to you ever been trained or worked as an employee, consultant, or volunteer in any of the following fields? Please circle the applicable occupation(s) and check all of the boxes that apply. If you have circled any of the occupations please provide a brief description of the training, work, or volunteer experience.

| Occupation | Person | If "Yes," Please Explain: |
|---|---|---|
| Corrections<br>Probation Office<br>Prison<br>Jail<br>Halfway House | ☐ Self<br>☐ Spouse<br>☐ Family<br>☐ Friend | |

1418

| Work Release | | |
| Social Worker | | |
| Drug/Alcohol Treatment | | |
| Drug/Alcohol Counselor | | |
| Drug/Alcohol Education | | |

50.    To the best of your knowledge, have you ever known anyone who had a serious problem with illegal drugs, abuse of prescription drugs, or alcohol abuse.

❑ Yes        ❑ No

If you answered "yes," please tell us the relationship of that person to you, the type of substance(s) was/were being abused, and approximately when the abuse occurred.

*Example:   My younger sister abused alcohol and cocaine in the late 1990s and the early 2000s.*

_____

_____

_____

51.    Have you, your spouse/partner, or anyone close to you ever been arrested, accused, charged, and/or prosecuted for a crime other than a minor traffic violation?

❑Yes        ❑ No

(a)    If you answered "yes," please explain (including charge, approximate date, location, and case outcome):

*Example:        Close friend,   Drug Possession, 1982, New Mexico,        Guilty at trial*

_____

_____

_____

14

    (b)    In your opinion, was/were the person(s) treated fairly in the criminal justice system?

        ❑ Yes        ❑ No

If you answered "no," please explain:

_____

_____

_____

52.    Have you, your spouse/partner, or anyone close to you ever been the victim of a crime?

        ❑ Yes        ❑ No

    (a)    If you answered "yes," please explain (including the person's relationship to you, when and where the crime occurred, and what happened):

    *Example:*    *Sister, victim of assault, 1999, Chicago, Defendant convicted*

_____

_____

_____

    (b)    In your opinion, was/were the person(s) treated properly and fairly by the police, the prosecutors, and the court system?

        ❑ Yes        ❑ No

If you answered "no," please explain:

_____

_____

_____

1420

(c)     If one or more people were arrested and prosecuted, in your opinion, was/were the victim(s) treated properly and fairly by the prosecutors and the court system?

❏ Yes        ❏ No

If you answered "no," please explain:

_____

_____

_____


53.     To the best of your knowledge, have you, your spouse/partner, or anyone close to you ever been threatened by anyone or made to feel afraid for your/their life and/or the lives of others?

❏ Yes        ❏ No

If you answered "no," please explain:

_____

_____

_____


54.     Have you, your spouse/partner, or anyone close to you ever appeared in court or in any grand jury proceeding as a witness?

❏ Yes        ❏ No

(a)    If you answered "yes," please explain:

*Example:       Self,    Lake County,  2006,   Witnessed a purse snatching*

_____

_____

_____

55.     To the best of your knowledge, have you, your spouse/partner, or anyone close to you ever been involved in a civil lawsuit?

❑ Yes          ❑ No

If you answered "yes," please explain state the approximate year, the jurisdiction in which the case was filed, whether you/they were a witness, plaintiff or civil defendant, and please tell us (as best you recall) the type of claim and how it was resolved?

*Example:   My spouse was injured in a car accident in Hammond in 2008; she was the plaintiff in a case filed in Lake County; the case settled.*

_____

_____

_____

56.     Excluding possible jury service (which will be discussed below), have you ever been to court before as a plaintiff, defendant, victim, or witness for any reason other than what you have indicated above?

❑ Yes          ❑ No

If you answered "yes," please tell us which court, the approximate year, and explain the circumstances as best you remember them?

_____

_____

_____

57.     Have you ever been questioned in any criminal investigation (as a potential victim, witness, suspect, target, defendant, or otherwise) by any federal, state or local law enforcement agency or agent (including the Department of Justice, U.S. Attorney's Office, Federal Bureau of Investigation (FBI), Drug Enforcement Administration (DEA), Alcohol, Tobacco & Firearms (ATF), Internal Revenue Service (IRS), Immigration & Naturalization Service (INS), Customs Service, or Department of Homeland Security, East Chicago Police Department, Gary Police Department, Lake County Sheriff's Department, Hammond Police Department, Lake County or Federal Drug Task Force?

❑ Yes          ❑ No

1422

17

If you answered "yes," please explain:

_____

_____

_____

58.     To the best of your knowledge, were you, your spouse/partner, or anyone close to you ever been held or incarcerated in a jail or prison?

❑ Yes          ❑ No

If you answered "yes," please explain:

*Example:   My uncle was convicted of burglary in Chicago around 2005 and went to prison somewhere in Illinois.*

_____

_____

_____

59.     Have you, your spouse, or anyone close to you ever had a particularly good or bad experience involving the police or any type of law enforcement officer?

❑ Yes          ❑ No

If you answered "yes," please explain:

_____

_____

_____

60.     Do you, your spouse/partner, or anyone close to you have any strong views for or against any law enforcement agencies, such as the local police, sheriff, probation, FBI, DEA, ATF, ICE, Federal Bureau of Prisons, Indiana Department of Corrections, etc.?

❑ Yes          ❑ No

If you answered "yes," please explain:

_____

_____

_____

1423

## PRIOR JURY SERVICE

61.     Have you ever served as a trial juror before?

                     ❏ Yes          ❏ No

        If you answered "yes," please complete the following:

<u>Criminal or Civil Case</u>   <u>Main Charge</u>   <u>When did you serve</u>   <u>Did jury reach a verdict (Yes or No)</u>

_____

_____

_____

_____

_____

        (b)   Were you ever the foreperson?     ❏ Yes   ❏ No

        (c)  If you have previously served on a jury, please explain whether you found the experience to be positive or negative.

                 ❏   Positive   ❏ Negative   ❏   Mixed        ❏ Other

        If you answered "negative," "mixed," or "other" please explain:

_____

_____

_____

62.     Have you ever served on a grand jury in state or federal court proceedings?

                     ❏ Yes          ❏No

        If you answered "yes," please explain when and where and describe your feeling about the process:

_____

_____

_____

63.     Do you know any judges, lawyers or anyone else in the court system?

                    ❏ Yes          ❏ No

        If you answered "yes," please describe who you know, where they work, and how well
        you know them:

        _____

        _____

        _____


## CRIMINAL JUSTICE ISSUES

64.     A number of witnesses at the trial will be law enforcement officers from federal, state or
        local law enforcement agencies.  The Judge will instruct you to consider and evaluate
        their testimony just as you would consider the testimony of any other witness.  Do you
        believe that you will be able to follow that instruction?

                    ❏Yes          ❏No

        If you answered "no," please explain:

        _____

        _____

        _____


65.     If you are chosen to serve as a juror in this case, the Judge will instruct you that Juan
        Briseno is presumed to be innocent, that he cannot be convicted unless the government
        proves each essential element of the crimes charged beyond a reasonable doubt, and that
        there is no burden on Mr. Briseno to prove that he is innocent, nor to put on any evidence
        at all.  Do you believe you will be able to follow that instruction?

                    ❏ Yes          ❏ No

        If you answered "no," please explain:

        _____

        _____

        _____

1425

66.     An indictment is a document that describes the charges with which a defendant is accused.  If you are chosen to serve as a juror in this case, the Judge will instruct you that the indictment in this case may not be considered by you as any evidence whatsoever establishing the guilt of Juan Briseno.  Do you believe that you will be able to follow such an instruction?

❑ Yes          ❑ No

If you answered "no," please explain:

_____

_____

_____


67.     During the trial of this case, there will likely be testimony from one or more witnesses who have criminal records.  Would you tend to automatically *dis*believe what a witness says simply because he or she has a criminal record?

❑ Yes          ❑No

If you answered "yes," please explain:

_____

_____

_____


68.     During the trial of this case, there will likely be testimony from one or more witnesses who have pled guilty in this case and who have entered into cooperation agreements with the United States at least in part in the hope of receiving a more lenient sentence than he or she would have received if he or she had not cooperated with the United States.  At the appropriate time, Chief Judge Simon will instruct the jury that it is proper for the United States to call such witnesses to the stand to testify.  In addition, Judge Simon will instruct the jury that the jury should view such witnesses' testimony with caution.  Would you tend to automatically *dis*believe what a witness says simply because he or she is testifying under a cooperation agreement with the United States?

❑ Yes          ❑No          ❑Uncertain

1426

21

If you answered "yes" or "uncertain," please explain:

_____

_____

_____

69.     The evidence in this case might include graphic testimony and photographs that describe and depict injuries and damage caused by violent crimes.  Would hearing and seeing such evidence so overwhelm, effect, or distract you that it would make it difficult for you to remain fair and impartial as a juror in this case?

❑ Yes          ❑ No          ❑ Uncertain

If you answered "yes" or "uncertain," please explain:

_____

_____

_____

70.     Do you believe that the narcotics laws in the United States and/or in Indiana are unfair or unconstitutional or that the narcotics laws should not be enforced?

❑ Yes          ❑ No          ❑ Uncertain

If you answered "yes" or "uncertain," please explain what you mean and why you feel the way that you do about the narcotics laws.

_____

_____

_____

71.     During the trial of this case, there will likely be evidence of illegal distribution of large quantities of cocaine and marijuana.  Would evidence of the illegal distribution of large quantities of cocaine and marijuana make it difficult for you to follow the Court's instructions and to be a fair and impartial juror?

❑ Yes          ❑ No          ❑ Uncertain

1427

If you answered "yes" or "uncertain," please explain why it would make it difficult for you to follow the Court's instructions or to be fair and impartial.

_____

_____

_____

72.     The indictment in this case charges that Mr. Briseno committed certain crimes personally and directly. In addition, the indictment charges that Mr. Briseno engaged in other crimes as a "conspirator" or that he "aided and abetted" the criminal conduct of others. At the appropriate time, Judge Simon will carefully instruct you as to the law of "Conspiracy" and as to the law of "Aiding and Abetting." At this point, suffice it to say that *in certain circumstances* a defendant *may* be found guilty of a crime even though the defendant did not personally or directly commit the crime. Will it be difficult for you to follow Judge Simon's instructions, if it means that the defendant can potentially be found guilty even though the defendant did not personally or directly commit the crime?

❑ Yes          ❑No          ❑Uncertain

If you answered "yes" or "uncertain," please explain:

_____

_____

_____

73.     During the trial of this case, it is possible that some of the testimony may come from a psychiatrist, psychologist, social worker, or other mental health professional. Do you have a strong opinion about these fields and the ability of such persons to identify and explain reasons for human behavior?

❑ Yes          ❑No          ❑Uncertain

If you answered "yes" or "uncertain," please explain:

_____

_____

_____

1428

## KNOWLEDGE OF THE CASE

74.     Before you came to court today, had you heard anything about this case?

❑ Yes          ❑ No          ❑ Uncertain

(a)     If you answered "yes" or "uncertain," please briefly describe what you heard:

_____

_____

_____

(b)     What was/were the source(s) of this information?

_____

_____

_____

75.     In our system of justice, it is very important that the jury only consider evidence that has come before the jury in the trial itself.  No member of the jury can consider anything that was not introduced in evidence in the actual trial.  Would the information that you may have heard, received, or read (if any) from any source affect your ability to be fair and impartial if you are selected to serve as a juror in this case?

❑ Not applicable (I did not hear, read, or receive any such information.)

❑ Yes          ❑ No          ❑ Uncertain

If you answered "yes," or "uncertain," please explain:

_____

_____

_____

1429

76. Do you know any of the following people:

    A.    Defense lawyers:   Arlington J. Foley and John Maksimovich;

    B.    Prosecutors:   David J. Nozick and Bruce R. Hegyi; or

    C.    The defendant:  Juan Briseno?

        ❑ Yes      ❑ No

If you answered "yes," please identify each of the persons whom you know and explain how well you know each of them:

_____

_____

_____

77. The trial will be presided over by the Honorable Philip P. Simon, Chief Judge of the United States Court for the Northern District of Indiana. Do you know Judge Simon or any member of his staff?

        ❑ Yes      ❑ No

If you answered "yes," please identify each of the persons whom you know and explain how well you know each of them:

_____

_____

_____

78. The indictment in this case alleges that Mr. Briseno was a member of a street gang known as the Almighty Imperial Gangster Nation, which was often referred to as the "Imperial Gangsters" or the "IGs." In the trial of this case, in addition to hearing about the Imperial Gangsters, you will also hear of other gangs such as the Latin Kings, the Two Six, the Spanish Gangster Disciples, and the Black P-Stones, and perhaps other gangs as well. Have you, your spouse/partner, or anyone close to you ever been a member of a street gang?

        ❑ Yes      ❑ No

1430

If you answered "yes," please explain:

*Example:      A Cousin was a member of the Vicelords in Chicago*

_____

_____

_____

79.     Have you experienced a gang problem in the area where you now live or, in the past, did you experience a gang problem in any area in which you were living at the time?

❑ Yes          ❑ No

If you answered "yes," please explain:

_____

_____

_____

80.     Have you, your spouse/partner, or anyone close to you ever been victimized by the member of any street gang or by gang activity?

❑ Yes          ❑ No

If you answered "yes," please explain:

_____

_____

_____

81. At one time, charged along with Mr. Briseno in this case were the following individuals, who were also alleged to have been members of the Imperial Gangsters street gang.

> Galo Benjamin Feliciano
> Guillermo Briseno, also known as "Memo"
> Alejandro Balboa Lara, also known as "Jackie Chan"
> Justin Weaver, also known as "White Boy"
> Michael Anthony Castillo
> Kelvin Jefferson Beltran, also known as "Risky"
> David Almaraz, also known as "Penguino"
> Joseph Rene Torres
> Jason Medina, also known as "Burns"
> Edward Raye Serna, also known as "Sern"
> Alejandro Briseno
> Robert Lockhart, also known as "Jackson"
> Armando Jose Velasquez, also known as "Money"
> Anthony Baldazo, also known as "Tall Folks"
> Salvador Chavez, also known as "Black" or "Dirty Sal"
> Raymond Campos, also known as "Cookie Face"
> Ace Cortez
> Julian Guillermo Serna, also known as "Big Ju"
> Julius Solis, also known as "Ju-Ju"
> Darmaile Cortez Sutton, also known as "D-Money"
> Eddie Torres, also known as "Macho" or "Mach"
> Richard Reyes
> Vincente Garza, also known as "Chente"

To the best of your knowledge, do you, your spouse/partner, or anyone close to you know (or know of) any of these individuals?

❏ Yes        ❏ No

If you answered "yes," please identify each person you know (or know of) and explain how you know (or know of) him:

_____

_____

_____

82. It is alleged in this case that Mr. Briseno participated in the murders of the following individuals:

> Luis Ortiz, also known as "Manolo"
> Michael Sessum
> Miguel Mejias, also known as "King Nellie"
> Harris Brown
> Miguel Colon, also known as "Migs"
> Latroy Howard

To the best of your knowledge, do you, your spouse/partner, or anyone close to you know (or know of) any of these individuals?

❑ Yes    ❑ No

If you answered "yes," please identify each person you know (or know of) and explain how you know (or know of) him:

_____

_____

_____

83.    In addition, it is alleged that Mr. Briseno participated in attempting to murder the following individuals:

Marissa Harper
Andres Arenivas
Jose Perez
Joseph Medina
Peter Santos
Joshua Roberts
Richard Perez

To the best of your knowledge, do you, your spouse/partner, or anyone close to you know (or know of) any of these individuals?

❑ Yes    ❑ No

If you answered "yes," please identify each person you know (or know of) and explain how you know (or know of) him or her:

_____

_____

_____

1433

84. It is alleged that one or more other Imperial Gangsters – *but not Mr. Briseno* -- participated in the murders the following individuals:

> Steven Rodriguez, also known as "Little Jeremy"
> Wayne McNair
> Anuar David Paez, also known as "Bronco"
> Guadelupe Trevino
> Juan Murillo, Sr.
> Rene Alonzo
> Mario Soriano
> Alonzo Cavazos
> Jesus Alvarez
> Peter Santos

To the best of your knowledge, do you, your spouse/partner, or anyone close to you know (or know of) any of these individuals?

❑ Yes ❑ No

If you answered "yes," please identify each person you know (or know of) and explain how you know (or know of) him or her:

_____

_____

_____

85. In addition, it is alleged that one or more other Imperial Gangsters – *but not Mr. Briseno* -- participated in attempting to murder the following individuals:

> Paul Alvarado
> Juan Murillo, Jr.
> Cornelius Jordan
> Romelle Jackson
> Thomas Delacruz
> Alejandro Sanchez

To the best of your knowledge, do you, your spouse/partner, or anyone close to you know (or know of) any of these individuals?

❑ Yes ❑ No

1434

If you answered "yes," please identify each person you know (or know of) and explain how you know (or know of) him or her:

_____

_____

_____

86.    The Constitution says, and the Court will instruct you, that *every* defendant arrested for *any* crime is presumed innocent.  Can you follow this instruction?

❑ Yes          ❑ No          ❑ Uncertain

If you answered "no" or "uncertain," please explain:

_____

_____

_____

87.    The Constitution says, and the Court will instruct you, that *every* defendant has an *absolute* right not to testify in his own defense and that the jury may <u>not</u> hold such a decision against him in anyway.  Can you follow this instruction?

❑ Yes          ❑ No          ❑ Uncertain

If you answered "no" or "uncertain," please explain:

_____

_____

_____

88.    You have been told that the law presumes every defendant to be innocent until and unless her or she has been proven guilty beyond a reasonable doubt after trial.  Have you learned anything today (or before today) that has caused you <u>at this time</u> – *before you have heard any evidence* -- to form an opinion that Mr. Briseno is, in fact, guilty of any of the crimes for which he has been charged?

❑ Yes          ❑ No          ❑ Uncertain

1435

If you answered "yes" or "uncertain," please explain:

_____

_____

_____


## QUESTIONS CONCERNING SENTENCING

If, and only if, Mr. Briseno is found guilty of one or more of the death-eligible murders charged in the indictment, there will be a separate hearing before the same jury to decide whether the appropriate sentence for Mr. Briseno is (a) life imprisonment without parole/release, or (b) death. If we get to that point, those are the only possible choices. Accordingly, it is important that we know your thoughts and opinions regarding the death penalty. Should this case proceed to a sentencing hearing (known as the "Penalty Phase"), you will be instructed in detail on the burdens of proof and the procedures to be followed. At this time, we are not inquiring about particular circumstances that may arise in this case, but only about your general feelings regarding and concerning the death penalty.

By asking these questions about punishment, the Court is not suggesting in any way that Mr. Briseno is guilty, or that you will in fact be called upon to decide a penalty in this case. However, the Judge must know whether you could be fair to both the defense and the prosecution on the issue of punishment if the jury is ever called upon to reach that issue.


89.    In general, and in your own words, what are your personal views on the death penalty?

_____

_____

_____

90. Have your views about the death penalty changed over the past 10 years (*e.g.*, now more in favor or less in favor)?

❑ Yes  ❑ No

If you answered "yes," please explain why your views have changed:

_____

_____

_____

91. Using the following scale/continuum (from "1" to "10"), please circle the number that most closely matches your overall opinion about the death penalty. For instance, "1" means that the death penalty should never or virtually never be imposed; "10" means that the death penalty should be imposed in every case or virtually every case in which the defendant has been convicted of intentional murder; "5" means that you do not have strong feeling one way or the other (either for or against) whether the death penalty should, or should not, be generally imposed in cases of intentional murder.

Strongly Opposed                                             Strongly Favor

1    2    3    4    5    6    7    8    9    10

92. Which of the following <u>best</u> describes your view (please check only one):

❑    If a person is convicted of a death-eligible murder crime and the death penalty is requested, I will always vote to impose it, regardless of the particular and unique facts and law in the case, and could not vote for a life sentence under those circumstances.

❑    I am strongly in favor of the death penalty and would have a difficult time voting against it if a person is convicted of a death-eligible murder, regardless of the particular and unique facts and law in the case.

❑    I generally favor the death penalty, but I would base a decision on whether or not to impose it on the particular and unique facts and the law in the case.

❑    I do not have strong opinions either for or against the death penalty, and I would consider both alternatives and base a decision to impose it on the particular and unique facts and law in the case.

❑    I am generally opposed to the death penalty, but I believe I can put aside my feelings against the death penalty and impose it if is called for by the particular and unique facts and the law in the case.

1437

❑     I am strongly opposed to the death penalty and I will have a difficult time voting to impose it regardless of the particular and unique facts and law in the case.

❑     I am personally, morally and/or religiously opposed to the death penalty and would never vote to impose it, regardless of the particular and unique facts and law in the case.

Please explain why you chose the answer you chose:

_____

_____

_____

93.    Is this statement true or not true, as it pertains to you: In a case where an accused has been found guilty of intentionally murdering another person, I would **never** vote to impose the death penalty, regardless of the circumstances.

           ❑ True        ❑ Not true

If you answered "true," please explain:

_____

_____

_____

94.    Is this statement true or not true, as it pertains to you: In a case where an accused has been found guilty of intentionally murdering another person, I would **always** vote to impose the death penalty, regardless of the circumstances?

           ❑ True        ❑ Not true

If you answered "true," please explain:

_____

_____

_____

1438

95.    Do you have any moral, religious, ethical, philosophical, or other personal beliefs that would prevent you from sitting in judgment on another human being in a case where the death penalty is being sought by the government?

❑ Yes          ❑ No

If you answered "yes," please explain:

_____

_____

_____

96.    In cases of intentional, premeditated, murder, do you believe the death penalty is sought in the United States:

❑ Too often          ❑ Too seldom
❑ About right        ❑ No opinion

97.    What things or circumstances would be important to you in deciding whether a person found guilty of a death-eligible murder should be sentenced to death or life imprisonment without the possibility of release?

_____

_____

_____

98.    "Life imprisonment without the possibility of release" means that the defendant will spend the rest of his or her natural life in prison.  There is no chance of parole.  The defendant will die in prison.  When comparing (a) life imprisonment without the possibility of release, and (b) the death penalty, do you believe life imprisonment without the possibility of release is (please check only one answer):

❑ Less severe than the death penalty
❑ About the same as the death penalty
❑ More severe than the death penalty
❑ No opinion

1439

Please explain your answer:

_____

_____

_____

99.    To the best of your knowledge and recollection, have you, your spouse/partner, or anyone close to you ever belonged to, supported, signed petitions regarding, or donated time or money to, any group of organization that advocates either for or against the death penalty?

(Please check all that apply:)

Supporting Death Penalty:    ❑ Yes, myself         ❑ Yes, spouse/partner
                             ❑ Yes, close friend/family   ❑ No

Opposing Death Penalty:      ❑ Yes, myself         ❑ Yes, spouse/partner
                             ❑ Yes, close friend/family   ❑ No

If you answered "yes," please explain:

_____

_____

_____

100.   Would your spouse/partner or any of your close friends be significantly critical or particularly disappointed in you for how you voted in a death-eligible murder case (whether you vote for or against the imposition of the death penalty)?

        ❑ Yes, if I voted for the death penalty
        ❑ Yes, if I voted against the death penalty
        ❑ Uncertain
        ❑ No

If you answered "yes" or "uncertain," please explain:

_____

_____

_____

1440

101.    If you are chosen as a juror in this case, the Judge will instruct you that possible punishment(s) are not to be considered during the guilt/innocence phase of trial. In the guilt/innocence phase of the trial, the jury must determine *only* if Mr. Briseno is guilty or not guilty of the offenses charged in the indictment. Will you be able to follow this instruction and <u>not</u> consider the possible punishment(s) during the guilt/innocence phase of trial?

❑ Yes          ❑ No          ❑ Uncertain

If you answered "yes" or "uncertain," please explain:

_____

_____

_____

102.    If, but only if, the jury finds Mr. Briseno guilty of one or more death-eligible murder offenses, the trial will move to what is known as the "Penalty Phase." If this case was to proceed to the Penalty Phase, the law forbids jurors from considering the race, color, national origins, or sexual orientation, of either the defendant or the victim(s). Do you have <u>any</u> reservations about your ability to strictly abide by this requirement of the law?

❑ Yes, I do have reservations
❑ No, I will be able to abide by the law
❑ Uncertain

If you answered "yes" or "uncertain," please explain:

_____

_____

_____

1441

CONCLUSION

103.   Can you think of anything else (political, ethical, moral, religious, philosophical, medical, physical, emotional, personal, or otherwise) that you believe may be relevant to, or that would affect your ability to, serve as a juror in this case?

                       Yes                No

       If you answered "yes," please explain:

       _____

       _____

       _____


104.   Is there anything you have not included in your answers, above, that you would rather not put in writing but that you would like to discuss privately with the Judge?

                       Yes                No

       (Do not list the matter or issue here.  The Judge will speak with you privately about it.)


                       **ADDITIONAL COMMENT PAGE IF NECESSARY**
                       (Please identify the question number for each answer)

       _____

       _____

       _____

       _____

       _____

       _____

       _____

       _____

       _____

       _____

       _____

1442

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

 

 

 

 

_____
SIGNATURE OF JUROR

_____
Date

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
## HAMMOND DIVISION

UNITED STATES OF AMERICA,            )
                                     )
            Plaintiff,               )
                                     )
    v.                               )          NO. 2:11CR77 PPS
                                     )
JUAN BRISENO,                        )
                                     )
            Defendant.               )
                                     )

## ORDER

This case is set for trial on Monday, January 12, 2014. After previous consultation

with counsel, the following schedule (organized chronologically) shall apply.[1]

Pursuant to Fed.R.Crim.P. 16, the government will provide to defendant its disclosure

of expert witnesses, including their names, a summary of their anticipated testimony and the

reasons for their opinions, and the witnesses' qualifications, by **Tuesday, July 15, 2014.**

Any motion by the government to amend its notice of intent to seek the death penalty

pursuant to 28 U.S.C. §3593(a) must be filed by **Tuesday, July 15, 2014.**

Juan Briseno must file any motion challenging the Federal Death Penalty Act or the

government's notice of intent to seek the death penalty no later than **Friday, August 15, 2014.**

The government's memorandum in opposition must be filed by **Tuesday, September 16,**

**2014.** Briseno may file a reply no later than **Tuesday, September 30, 2014.**

---

[1] The jury selection process will be addressed in a separate order, with dates set out
there for the parties to file objections and responses to the process described by the Court.

Juan Briseno must file any notice of intent to assert an insanity defense or intent to introduce expert evidence relating to his mental condition, as contemplated by Fed.R.Crim.P. 12.2, no later than **Monday, September 1, 2014.** If any Rule 12.2 notice is given, the government must move for Court approval of its designated firewall counsel (from outside the Northern District of Indiana) no later than **Friday, September 5, 2014.** Briseno must provide to firewall counsel all Rule 12.2 discovery by **Tuesday, September 16, 2014.** If necessary, based on the Rule 12.2 notice, the government may supplement its expert witness notices by **Friday, November 14, 2014**.

Juan Briseno must provide to the government his disclosure of expert witnesses, including their names, a summary of their anticipated testimony and the bases and reasons for their opinions, and the witnesses' qualifications, by **Tuesday, September 30, 2014**.

Any motion to exclude or limit expert testimony must be filed no later than **Tuesday, October 21, 2014**. Responses must be filed within fourteen days, and any replies within ten days of the response replied to.

The government's *Santiago* proffer, notice of intent to rely on 404(b) evidence, and notice of intent to introduce enterprise evidence must be filed by **Wednesday, November 5, 2014**.

The government will disclose *Brady* and *Giglio* materials, including impeachment evidence, witness inducements, witness and informant disclosures, no later than

2

**Wednesday, November 5, 2014.** The government is also strongly encouraged to disclose

Jencks material by **Wednesday, November 5, 2014**.

The parties are to confer as necessary to submit a joint proposed set of jury

instructions for each phase of the trial by **Monday, December 1, 2014.** By that same date,

each party may submit proposed instructions to which the opposing party does not agree.

By **Monday, December 1, 2014** the parties must file any proposed stipulations as to

evidentiary or legal issues.

Motions in limine and any other pretrial motions not addressed specifically above or

in another order must be filed by **Monday, December 1, 2014.** Responses must be filed by

**Wednesday, December 10, 2012.** At the December 12 Final Pretrial Conference, the court

will consider any requests to file written reply memoranda.

Both parties are to file witness and exhibit lists by **Friday, December 12, 2014.**

A first Final Pretrial Conference is scheduled for **Friday, December 12, 2014 at 10:00**

**a.m. Central/Hammond time.**

A second Final Pretrial Conference is scheduled for **Monday, January 5, 2015 at 10:00**

**a.m. Central/Hammond time.**

SO ORDERED.

ENTERED: June 25, 2014.

　　　　　　　　　　　　　　　　 /s/ Philip P. Simon
　　　　　　　　　　　　　　　　PHILIP P. SIMON, CHIEF JUDGE

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
## HAMMOND DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | NO. 2:11CR77 PPS |
| | ) | |
| JUAN BRISENO, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## AMENDED ORDER

This case is set for trial on Monday, January 12, 2015. After discussion of a previous version of this Order (Docket Entry 963) on the record on June 30, 2014, the following amended schedule (organized chronologically) shall apply.[1]  The schedule addressing notices, disclosures and motions relating to evidence of Juan Briseno's mental condition is set out in a separate section at the end of this Order.

Pursuant to Fed.R.Crim.P. 16, the government will provide to defendant its disclosure of expert witnesses, including their names, a summary of their anticipated testimony and the reasons for their opinions, and the witnesses' qualifications, by **Tuesday, July 15, 2014.**

Any motion by the government to amend its notice of intent to seek the death penalty pursuant to 28 U.S.C. §3593(a) must be filed by **Tuesday, July 15, 2014.**

---

[1] The jury selection process will be addressed in a separate order, with dates set out there for the parties to file objections and responses to the process described by the Court.

Juan Briseno must file any motion challenging the Federal Death Penalty Act or the government's notice of intent to seek the death penalty no later than **Friday, August 15, 2014.** The government's memorandum in opposition must be filed by **Tuesday, September 16, 2014.** Briseno may file a reply no later than **Tuesday, September 30, 2014.**

Juan Briseno must provide to the government his disclosure of expert witnesses not related to evidence regarding his mental condition, including the experts' names, a summary of the anticipated testimony of each and the bases and reasons for the opinions of each, and the witnesses' qualifications, by **Tuesday, September 30, 2014**.

Any motion to exclude or limit expert testimony not related to Juan Briseno's mental condition must be filed no later than **Tuesday, October 21, 2014**. Responses must be filed within fourteen days, and any replies within ten days of the response replied to.

The government's *Santiago* proffer, notice of intent to rely on 404(b) evidence, and notice of intent to introduce enterprise evidence must be filed by **Wednesday, November 5, 2014**.

The government will disclose *Brady* and *Giglio* materials, including impeachment evidence, witness inducements, witness and informant disclosures, no later than **Wednesday, November 5, 2014.** The government is also strongly encouraged to disclose *Jencks* material by **Wednesday, November 5, 2014**.

Any motion requesting an anonymous jury or other jury procedure different from the typical procedure must be filed by **November 5, 2014**.

The parties are to confer as necessary to submit a joint proposed set of jury instructions for each phase of the trial by **Monday, December 1, 2014.** By that same date, each party may submit proposed instructions to which the opposing party does not agree.

By **Monday, December 1, 2014** the parties must file any proposed stipulations as to evidentiary or legal issues.

Motions in limine and any other pretrial motions not addressed specifically above or in another order must be filed by **Monday, December 1, 2014.** Responses must be filed by **Wednesday, December 10, 2012.** At the December 12 Final Pretrial Conference, the court will consider any requests to file written reply memoranda.

Both parties are to file witness and exhibit lists by **Friday, December 12, 2014.**

A first Final Pretrial Conference is scheduled for **Friday, December 12, 2014 at 10:00 a.m. Central/Hammond time** before the undersigned**.**

A second Final Pretrial Conference is scheduled for **Monday, January 5, 2015 at 10:00 a.m. Central/Hammond time.**

### Schedule for Notices, Disclosures and Motions Relating to Evidence of Juan Briseno's Mental Condition

Juan Briseno must file any notice of intent to assert an insanity defense or intent to introduce expert evidence relating to his mental condition, as contemplated by Fed.R.Crim.P. 12.2, no later than **Monday, September 1, 2014.** If any Rule 12.2 notice is given, the government must move for Court approval of its designated firewall counsel

3

(from outside the Northern District of Indiana) no later than **Friday, September 5, 2014.**

Briseno must provide to firewall counsel all Rule 12.2 discovery by **Tuesday, September 16, 2014.** If necessary, based on Juan Briseno's Rule 12.2 disclosures, the government, by firewall counsel, may supplement its expert witness notices to include additional expert testimony relating to Juan Briseno's mental condition by **Thursday, October 30, 2014**. Any motion to exclude or limit expert testimony relating to Juan Briseno's mental condition must be filed no later than **Friday, November 21, 2014**. Responses must be filed within fourteen days, and any replies within ten days of the response replied to.

SO ORDERED.

ENTERED: June 30, 2014.

 /s/ Philip P. Simon
PHILIP P. SIMON, CHIEF JUDGE
UNITED STATES DISTRICT COURT

4

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Case No.   2:11 CR 77 PPS |
| | ) | |
| JUAN BRISENO a/k/a "Tito" | ) | |

**GOVERNMENT'S MOTION FOR LEAVE TO FILE**
**SUPPLEMENTAL NOTICE OF INTENT TO SEEK THE PENALTY OF DEATH**

The United States of America ("United States" or "Government"), by and through

undersigned counsel, hereby moves the Court, pursuant to its Order of June 30, 2014 [R. 966] for

leave to file its Supplemental Notice of Intent to Seek the Penalty of Death in this case, and says:

1. Following the return of the Third Superseding Indictment in this case, the

   Government filed its Notice of Intent to Seek the Death Penalty Pursuant to Title 18

   United States Code Section 3593 (the "NOI").

2. On September 18, 2013 a federal grand jury in the Northern District of Indiana

   returned the Fourth Superseding Indictment in this case.

3. By Order dated June 30, 2014 the Court directed the Government to file by July 15,

   2014 any Motion to amend its earlier NOI.

4. This case is currently scheduled to begin trial on January 12, 2015.

5. The Government submits herewith its Supplemental NOI.   The Government's

   Supplemental NOI:   (i) updates its earlier NOI to correspond to the allegations of the

   Fourth Superseding Indictment, (ii) contains minor revisions to the earlier NOI, and

   (iii) corrects several scribner's errors contained in the earlier NOI.

WHEREFORE, the United States of America seeks leave of Court to file its attached

Supplemental Notice of Intent to Seek the Death Penalty Pursuant to Title 18 United States Code

Section 3593.


                                        Respectfully submitted,

                                        DAVID CAPP
                                        UNITED STATES ATTORNEY


                                        s/ *David J. Nozick*

                                        David J. Nozick
                                        Assistant U.S. Attorney
                                        5400 Federal Plaza
                                        Suite 1500
                                        Hammond, IN 46320
                                        Tel. (219) 937-5655
                                        www.david.nozick@usdoj.gov



                                        Respectfully submitted,

                                        LESLIE R. CALDWELL
                                        ASSISTANT ATTORNEY GENERAL


                                        s/ *Bruce R. Hegyi*

                                        Bruce R. Hegyi
                                        Trial Attorney
                                        Capital Case Section
                                        Criminal Division
                                        United States Department of Justice
                                        1331 F Street, N.W., Third Floor
                                        Washington, D.C.   20530
                                        Tel. (202) 616-4582
                                        Cell (703) 536-4774
                                        www.bruce.hegyi@usdoj.gov

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Case No. 2:11 CR 77 PPS |
| | ) | |
| JUAN BRISENO a/k/a "Tito" | ) | |

**GOVERNMENT'S SUPPLEMENTAL NOTICE OF INTENT TO SEEK THE PENALTY
OF DEATH PURSUANT TO TITLE 18 UNITED STATES CODE SECTION 3593**

The United States of America ("United States" or "Government"), by and through

undersigned counsel, hereby notifies this Court and defendant Juan Briseño, also known as

"Tito" ("Mr. Briseño") that the Government believes the circumstances of the offenses charged

in Counts Nine, Ten, and Thirteen through Twenty-Two of the Fourth Superseding Indictment

[R. 652] are such that, in the event Mr. Briseño is convicted of any of these charges, a sentence

of death is justified, and the Government will seek a sentence of death for the offenses of Murder

in Aid of Racketeering (18 U.S.C. § 1959), and Firearm Murder (18 U.S.C. § 924(j)), stemming

from the killings of Luis Ortiz (Counts Nine and Ten), Michael Sessum (Counts Thirteen and

Fourteen), Miguel Mejias (Counts Fifteen and Sixteen), Harris Brown (Counts Seventeen and

Eighteen), Miguel Colon (Counts Nineteen and Twenty), and Latroy Howard (Counts

Twenty-One and Twenty-Two).

1453

## COUNTS 9 & 10 – THE MURDER OF LUIS ORTIZ

**(A)** **The Government will prove the following intent factors in justifying a sentence of death.**

The defendant, Juan Briseño, also known as "Tito":

1.    Intentionally killed Luis Ortiz.    Title 18, United States Code, Section 3591(a)(2)(A);

2.    Intentionally inflicted serious bodily injury which resulted in the death of Luis Ortiz.    Title 18, United States Code, Section 3591(a)(2)(B);

3.    Intentionally participated in an act, contemplating that the life of a person would be taken or intending that lethal force would be used in connection with a person, other than one of the participants in the offense, and Luis Ortiz died as a direct result of the act.    Title 18, United States Code, Section 3591(a)(2)(C);

4.    Intentionally and specifically engaged in an act of violence, knowing that the act created a grave risk of death to a person, other than one of the participants in the offense, such that participation in the act constituted a reckless disregard for human life, and Luis Ortiz died as a direct result of the act.    Title 18, United States Code, Section 3591(a)(2)(D).

**(B)** **The Government will prove the following statutory aggravating factors in justifying a sentence of death.**

The defendant, Juan Briseño, also known as "Tito":

5.    Committed the offense after substantial planning and premeditation to cause the death of a person.    Title 18, United States Code, Section 3592(c)(9).

[2]

1454

**(C)** **Pursuant to Title 18, United States Code, Section 3593(a), the government will prove the following non-statutory aggravating factors in justifying a sentence of death.**

The defendant, Juan Briseño, also known as "Tito":

6.    Is a continuing danger to the lives and safety of other persons and defendant Juan Briseño is likely to commit criminal acts of violence in the future as evidenced by:

   a)    A low potential for rehabilitation as demonstrated by repeated violent criminal acts;

   b)    A willingness to take human life and a lack of remorse for his acts of violence and attempted acts of violence as demonstrated by statements that he made following these violent acts; and

   c)    His stated desire to impose a rule requiring fellow members of the Imperial Gangsters to shoot at rivals on sight.

7.    Faces contemporaneous convictions for other criminal activity, including *inter alia* additional murders and attempted murders;

8.    Demonstrated an allegiance to and active membership in the Imperial Gangsters, an organization falling within the definition of a criminal street gang, as set forth in Title 18, United States Code, Section 521(a); and

9.    Caused injury, harm and loss to the victim and the victim's family and friends, as evidenced by the victim's personal characteristics and by the impact of his death upon the victim's family and friends.   *See Payne v. Tennessee*, 501 U.S. 808 (1991).

[3]

**COUNTS 13 & 14 – THE MURDER OF MICHAEL SESSUM**

(A)  <u>**The Government will prove the following intent factors in justifying a**</u>
<u>**sentence of death.**</u>

The defendant, Juan Briseño, also known as "Tito":

1.  Intentionally killed Michael Sessum.   Title 18, United States Code, Section

3591(a)(2)(A);

2.  Intentionally inflicted serious bodily injury which resulted in the death of Michael

Sessum.   Title 18, United States Code, Section 3591(a)(2)(B);

3.  Intentionally participated in an act, contemplating that the life of a person would

be taken or intending that lethal force would be used in connection with a person,

other than one of the participants in the offense, and Michael Sessum died as a

direct result of the act.   Title 18, United States Code, Section 3591(a)(2)(C);

4.  Intentionally and specifically engaged in an act of violence, knowing that the act

created a grave risk of death to a person, other than one of the participants in the

offense, such that participation in the act constituted a reckless disregard for

human life, and Michael Sessum died as a direct result of the act.   Title 18,

United States Code, Section 3591(a)(2)(D).

(B)  <u>**The Government will prove the following statutory aggravating factors in**</u>
<u>**justifying a sentence of death.**</u>

The defendant, Juan Briseño, also known as "Tito":

5.  In the commission of the offense, or in escaping apprehension for the violation of

the offense, knowingly created a grave risk of death to 1 or more persons in

[4]

1456

addition to the victim of the offense.   Title 18, United States Code, Section

3592(c)(5).

6.    Committed the offense after substantial planning and premeditation to cause the

death of a person.   Title 18, United States Code, Section 3592(c)(9).

7.    Intentionally killed or attempted to kill more than one person in a single criminal

episode.   Title 18, United States Code, Section 3592(c)(16).

**(C)    Pursuant to Title 18, United States Code, Section 3593(a), the government
will prove the following non-statutory aggravating factors in justifying a
sentence of death.**

The defendant, Juan Briseño, also known as "Tito":

8.    Is a continuing danger to the lives and safety of other persons and defendant Juan

Briseño is likely to commit criminal acts of violence in the future as evidenced

by:

  a)    A low potential for rehabilitation as demonstrated by repeated

  violent criminal acts;

  b)    A willingness to take human life and a lack of remorse for his acts

  of violence and attempted acts of violence as demonstrated by

  statements that he made following these violent acts; and

  c)    His stated desire to impose a rule requiring fellow members of the

  Imperial Gangsters to shoot at rivals on sight.

9.    Faces contemporaneous convictions for other criminal activity, including

additional murders and attempted murders;

[5]

10. Demonstrated an allegiance to and active membership in the Imperial Gangsters, an organization falling within the definition of a criminal street gang, as set forth in Title 18, United States Code, Section 521(a); and

11. Caused injury, harm and loss to the victim and the victim's family and friends, as evidenced by the victim's personal characteristics and by the impact of his death upon the victim's family and friends. *See Payne v. Tennessee*, 501 U.S. 808 (1991).

### COUNTS 15 & 16 – THE MURDER OF MIGUEL MEJIAS

**(A)**    <u>**The Government will prove the following intent factors in justifying a sentence of death.**</u>

The defendant, Juan Briseño, also known as "Tito":

1. Intentionally killed Miguel Mejias.   Title 18, United States Code, Section 3591(a)(2)(A);

2. Intentionally inflicted serious bodily injury which resulted in the death of Miguel Mejias.   Title 18, United States Code, Section 3591(a)(2)(B);

3. Intentionally participated in an act, contemplating that the life of a person would be taken or intending that lethal force would be used in connection with a person, other than one of the participants in the offense, and Miguel Mejias died as a direct result of the act.   Title 18, United States Code, Section 3591(a)(2)(C);

4. Intentionally and specifically engaged in an act of violence, knowing that the act created a grave risk of death to a person, other than one of the participants in the offense, such that participation in the act constituted a reckless disregard for

[6]

Case: 15-2347 Document: 35 Filed: 07/27/2016 Pages: 4186

human life, and Miguel Mejias died as a direct result of the act. Title 18, United States Code, Section 3591(a)(2)(D).

**(B)** **The Government will prove the following statutory aggravating factors in justifying a sentence of death.**

The defendant, Juan Briseño, also known as "Tito":

5. In the commission of the offense, or in escaping apprehension for the violation of the offense, knowingly created a grave risk of death to 1 or more persons in addition to the victim of the offense. Title 18, United States Code, Section 3592(c)(5).

6. Committed the offense after substantial planning and premeditation to cause the death of a person. Title 18, United States Code, Section 3592(c)(9).

7. Intentionally killed or attempted to kill more than one person in a single criminal episode. Title 18, United States Code, Section 3592(c)(16).

**(C)** **Pursuant to Title 18, United States Code, Section 3593(a), the government will prove the following non-statutory aggravating factors in justifying a sentence of death.**

The defendant, Juan Briseño, also known as "Tito":

8. Is a continuing danger to the lives and safety of other persons and defendant Juan Briseño is likely to commit criminal acts of violence in the future as evidenced by:

    a) A low potential for rehabilitation as demonstrated by repeated violent criminal acts;

[7]

b)      A willingness to take human life and a lack of remorse for his acts

of violence and attempted acts of violence as demonstrated by

statements that he made following these violent acts; and

c)      His stated desire to impose a rule requiring fellow members of the

Imperial Gangsters to shoot at rivals on sight.

9.      Faces contemporaneous convictions for other criminal activity, including

additional murders and attempted murders;

10.     Demonstrated an allegiance to and active membership in the Imperial Gangsters,

an organization falling within the definition of a criminal street gang, as set forth

in Title 18, United States Code, Section 521(a); and

11.     Caused injury, harm and loss to the victim and the victim's family and friends, as

evidenced by the victim's personal characteristics and by the impact of his death

upon the victim's family and friends.   *See Payne v. Tennessee*, 501 U.S. 808

(1991).

## COUNTS 17 & 18 – THE MURDER OF HARRIS BROWN

**(A)**     **The Government will prove the following intent factors in justifying a sentence of death.**

The defendant, Juan Briseño, also known as "Tito":

1.      Intentionally killed Harris Brown.   Title 18, United States Code, Section

3591(a)(2)(A);

2.      Intentionally inflicted serious bodily injury which resulted in the death of Harris

Brown.   Title 18, United States Code, Section 3591(a)(2)(B);

[8]

3.      Intentionally participated in an act, contemplating that the life of a person would

be taken or intending that lethal force would be used in connection with a person,

other than one of the participants in the offense, and Harris Brown died as a

direct result of the act.    Title 18, United States Code, Section 3591(a)(2)(C);

4.      Intentionally and specifically engaged in an act of violence, knowing that the act

created a grave risk of death to a person, other than one of the participants in the

offense, such that participation in the act constituted a reckless disregard for

human life, and Harris Brown died as a direct result of the act.    Title 18, United

States Code, Section 3591(a)(2)(D).

**(B)      The Government will prove the following statutory aggravating factors in
justifying a sentence of death.**

The defendant, Juan Briseño, also known as "Tito":

5.      Committed the offense after substantial planning and premeditation to cause the

death of a person.    Title 18, United States Code, Section 3592(c)(9).

**(C)      Pursuant to Title 18, United States Code, Section 3593(a), the government
will prove the following non-statutory aggravating factors in justifying a
sentence of death.**

The defendant, Juan Briseño, also known as "Tito":

6.      Is a continuing danger to the lives and safety of other persons and defendant Juan

Briseño is likely to commit criminal acts of violence in the future as evidenced

by:

> a)      A low potential for rehabilitation as demonstrated by repeated
>
> violent criminal acts;

[9]

b)      A willingness to take human life and a lack of remorse for his acts

of violence and attempted acts of violence as demonstrated by

statements that he made following these violent acts; and

c)      His stated desire to impose a rule requiring fellow members of the

Imperial Gangsters to shoot at rivals on sight.

7.      Faces contemporaneous convictions for other criminal activity, including

additional murders and attempted murders;

8.      Demonstrated an allegiance to and active membership in the Imperial Gangsters,

an organization falling within the definition of a criminal street gang, as set forth

in Title 18, United States Code, Section 521(a); and

9.      Caused injury, harm and loss to the victim and the victim's family and friends, as

evidenced by the victim's personal characteristics and by the impact of his death

upon the victim's family and friends.   *See Payne v. Tennessee*, 501 U.S. 808

(1991).

## COUNTS 21 & 22 – THE MURDER OF MIGUEL COLON

**(A)      The Government will prove the following intent factors in justifying a sentence of death.**

The defendant, Juan Briseño, also known as "Tito":

1.      Intentionally killed Miguel Colon.    Title 18, United States Code, Section

3591(a)(2)(A);

2.      Intentionally inflicted serious bodily injury which resulted in the death of Miguel

Colon.    Title 18, United States Code, Section 3591(a)(2)(B);

[10]

3.    Intentionally participated in an act, contemplating that the life of a person would be taken or intending that lethal force would be used in connection with a person, other than one of the participants in the offense, and Miguel Colon died as a direct result of the act.    Title 18, United States Code, Section 3591(a)(2)(C);

4.    Intentionally and specifically engaged in an act of violence, knowing that the act created a grave risk of death to a person, other than one of the participants in the offense, such that participation in the act constituted a reckless disregard for human life, and Miguel Colon died as a direct result of the act.    Title 18, United States Code, Section 3591(a)(2)(D).

**(B)**    **The Government will prove the following statutory aggravating factors in justifying a sentence of death.**

The defendant, Juan Briseño, also known as "Tito":

5.    In the commission of the offense, or in escaping apprehension for the violation of the offense, knowingly created a grave risk of death to 1 or more persons in addition to the victim of the offense.    Title 18, United States Code, Section 3592(c)(5).

6.    Committed the offense after substantial planning and premeditation to cause the death of a person.    Title 18, United States Code, Section 3592(c)(9).

**(C)**    **Pursuant to Title 18, United States Code, Section 3593(a), the government will prove the following non-statutory aggravating factors in justifying a sentence of death.**

The defendant, Juan Briseño, also known as "Tito":

[11]

1463

7.    Is a continuing danger to the lives and safety of other persons and defendant Juan

Briseño is likely to commit criminal acts of violence in the future as evidenced

by:

a)    A low potential for rehabilitation as demonstrated by repeated

violent criminal acts;

b)    A willingness to take human life and a lack of remorse for his acts

of violence and attempted acts of violence as demonstrated by

statements that he made following these violent acts; and

c)    His stated desire to impose a rule requiring fellow members of the

Imperial Gangsters to shoot at rivals on sight.

8.    Faces contemporaneous convictions for other criminal activity, including

additional murders and attempted murders;

9.    Demonstrated an allegiance to and active membership in the Imperial Gangsters,

an organization falling within the definition of a criminal street gang, as set forth

in Title 18, United States Code, Section 521(a); and

10.   Caused injury, harm and loss to the victim and the victim's family and friends, as

evidenced by the victim's personal characteristics and by the impact of his death

upon the victim's family and friends.   *See Payne v. Tennessee*, 501 U.S. 808

(1991).

[12]

**COUNTS 21 & 22 – THE MURDER OF LATROY HOWARD**

**(A)** **The Government will prove the following intent factors in justifying a sentence of death.**

The defendant, Juan Briseño, also known as "Tito":

1.  Intentionally killed Latroy Howard.   Title 18, United States Code, Section 3591(a)(2)(A);

2.  Intentionally inflicted serious bodily injury which resulted in the death of Latroy Howard.   Title 18, United States Code, Section 3591(a)(2)(B);

3.  Intentionally participated in an act, contemplating that the life of a person would be taken or intending that lethal force would be used in connection with a person, other than one of the participants in the offense, and Latroy Howard died as a direct result of the act.   Title 18, United States Code, Section 3591(a)(2)(C);

4.  Intentionally and specifically engaged in an act of violence, knowing that the act created a grave risk of death to a person, other than one of the participants in the offense, such that participation in the act constituted a reckless disregard for human life, and Latroy Howard died as a direct result of the act.   Title 18, United States Code, Section 3591(a)(2)(D).

**(B)** **The Government will prove the following statutory aggravating factors in justifying a sentence of death.**

The defendant, Juan Briseño, also known as "Tito":

5.  Committed the offense after substantial planning and premeditation to cause the death of a person.   Title 18, United States Code, Section 3592(c)(9).

[13]

**(C)** **Pursuant to Title 18, United States Code, Section 3593(a), the government will prove the following non-statutory aggravating factors in justifying a sentence of death.**

The defendant, Juan Briseño, also known as "Tito":

6.  Is a continuing danger to the lives and safety of other persons and defendant Juan Briseño is likely to commit criminal acts of violence in the future as evidenced by:

> a)  A low potential for rehabilitation as demonstrated by repeated violent criminal acts;
>
> b)  A willingness to take human life and a lack of remorse for his acts of violence and attempted acts of violence as demonstrated by statements that he made following these violent acts; and
>
> c)  His stated desire to impose a rule requiring fellow members of the Imperial Gangsters to shoot at rivals on sight.

7.  Faces contemporaneous convictions for other criminal activity, including additional murders and attempted murders;

8.  Demonstrated an allegiance to and active membership in the Imperial Gangsters, an organization falling within the definition of a criminal street gang, as set forth in Title 18, United States Code, Section 521(a); and

9.  Caused injury, harm and loss to the victim and the victim's family and friends, as evidenced by the victim's personal characteristics and by the impact of his death upon the victim's family and friends.   *See Payne v. Tennessee*, 501 U.S. 808 (1991).

[14]

**ADDITIONAL NOTICE**

The Government will rely upon all of the evidence admitted by the Court in the determination of guilt in the trial, and upon the facts and circumstances of the offenses for which defendant Juan Briseño, also known as "Tito," was convicted during the guilt phase of the trial, and as to the matters identified and/or referenced in the Special Findings in the Fourth Superseding Indictment, as such prior criminal acts and things variously demonstrate the background, character, and culpability of the defendant, Juan Briseño, as well as the circumstances, and his roles in, in the offenses charged in the Fourth Superseding Indictment.

**CONCLUSION**

Based upon the available information that is currently available regarding the defendant's criminal behavior, the Government believes that the above-listed intent and aggravating factors apply to defendant Juan Briseño, also known as "Tito." However, in the event additional information should become available that is applicable to these factors or should additional information become available that supports additional factors, the Government reserves the right to seek to amend this Notice at a reasonable time prior to trial.

Respectfully submitted,

DAVID CAPP
UNITED STATES ATTORNEY


s/ *David J. Nozick*

David J. Nozick
Assistant U.S. Attorney
5400 Federal Plaza
Suite 1500
Hammond, IN 46320
Tel. (219) 937-5655
www.david.nozick@usdoj.gov


Respectfully submitted,

LESLIE R. CALDWELL
ASSISTANT ATTORNEY GENERAL


s/ **Bruce R. Hegyi**

Bruce R. Hegyi
Trial Attorney
Capital Case Section
Criminal Division
United States Department of Justice
1331 F Street, N.W., Third Floor
Washington, D.C.   20530
Tel. (202) 616-4582
Cell (703) 536-4774
www.bruce.hegyi@usdoj.gov

```
MIME-Version:1.0
From:CMECFinnd@innd.uscourts.gov
To:CMECFinnd@localhost.localdomain
Bcc:
--Case Participants: Bryan M Truitt (bryan@tblawyers.com, sherrie@tblawyers.com), David J
Nozick - AUSA (david.nozick@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov,
susan.devries@usdoj.gov, usainn.ecfcivil@usdoj.gov), Kurt R Earnst (kre@braje-nelson.com),
Paul Jeffrey Schlesinger (pjeffslaw@aol.com), Pablo DeCastro
(pdecastro@rascia-decastro.com, ysierra@rascia-decastro.com), Sheldon B Nagelberg
(sbnagelberglaw@att.net), Thomas W Vanes (b.lynneadams@yahoo.com,
tom.vanes@sbcglobal.net), John T Theis (theislaw@aol.com), Catherine A Lake
(attyclake@sbcglobal.net), Adam Tavitas (adtavitas@aol.com, b.lynneadams@yahoo.com), Dean
R Lanter - AUSA (dean.lanter@usdoj.gov, janet.eisenmann@usdoj.gov,
usainn.ecfcivil@usdoj.gov), John E Martin - FCD (john_martin@fd.org), Scott L King
(dwilliams@scottkinggroup.com, sking@scottkinggroup.com), Mark A Psimos
(psimoslaw@airbaud.net), Ihor Alexander Woloshansky (ihorlawyer@hotmail.com), James N
Thiros (jim@thiros.com, lynn@thiros.com), Robert L Rascia (rrascia@rascia-decastro.com,
ysierra@rascia-decastro.com), Gojko Kasich (gkasich@crownlaw.com, gkasich@gmail.com),
Arlington J Foley (arlingtonfoley@att.net), Roxanne Mendez Johnson
(attorneyrmj@gmail.com), Visvaldis P Kupsis (vpkupsis@hotmail.com), Stephen Edward Scheele
(pkd@gk4law.com, ses@gk4law.com), Jack Friedlander (jack@jackfriedlander.com,
office@jackfriedlander.com), Bruce R Hegyi - AUSA (bruce.hegyi@usdoj.gov), R Brian
Woodward (carolb@wbbklaw.com, rbwoodward@wbbklaw.com), John Maksimovich
(criminallaw@johnmaksimovich.com), David E Vandercoy (david.vandercoy@valpo.edu),
Magistrate Judge Andrew P Rodovich (rodovich_chambers@innd.uscourts.gov), Chief Judge
Philip P Simon (denise_woodside@innd.uscourts.gov, jacob_hamann@innd.uscourts.gov,
lauren_schwartz@innd.uscourts.gov, mira_serrill-robins@innd.uscourts.gov,
noel_collins@innd.uscourts.gov, philip_simon@innd.uscourts.gov)
--Non Case Participants: Matthew D Soliday (office@matthewsolidaylaw.com),
Probation/Pretrial Services (innpml_cmecf@innd.uscourts.gov), U S Marshal
(inn.docket-fw@usdoj.gov, inn.docket-sb@usdoj.gov, usms.27@usdoj.gov)
--No Notice Sent:

Message-Id:2562198@innd.uscourts.gov
Subject:Activity in Case 2:11-cr-00077-PPS-APR United States of America v. Briseno et al
Hearing
Content-Type: text/html
```

## U.S. District Court Northern District of Indiana [LIVE]

## USDC Northern Indiana

## Notice of Electronic Filing

The following transaction was entered on 7/1/2014 at 4:25 PM EST and filed on 6/30/2014

| | |
|---|---|
| **Case Name:** | United States of America v. Briseno et al |
| **Case Number:** | 2:11-cr-00077-PPS-APR |
| **Filer:** | |
| **Document Number:** | 969(No document attached) |

**Docket Text:**

**HEARING as to Juan Briseno held on 6/30/2014 before Chief Judge Philip P. Simon. Govt present by AUSAs David Nozick and Bruce Hegyi. Dft Juan Briseno is present in person and by cnsl Arlington Foley and John Maksimovich. Discussion on proposed juror questionnaire. Court proposes revisions to which the parties have no objections. Discussion on hardship question. Brief discussion on two additional names to be added on page 30. These names were previously intentionally omitted due to security issues. The approximate number of**

1469

**potential jurors to be summoned are 300–400 persons. Parties have discussion on the adjustment of deadlines from the previous scheduling order entered by the court. The court will enter an amended order. Court reminds the parties that the trial date is firm – January 12, 2015. The Court continues to work out the details of the actual juror selection process and will issue an order regarding this. The parties will have an opportunity to submit objections to this plan. The court directs the Govt to clarify its Notice to Seek Death Penalty. The Court DENIES motion 943 as moot. Defendant REMANDED to custody of US Marshal.(Court Reporter Stacy Drohosky.) (nac)**

**2:11–cr–00077–PPS–APR–1 Notice has been electronically mailed to:**

David E Vandercoy    david.vandercoy@valpo.edu

Arlington J Foley    arlingtonfoley@att.net

Mark A Psimos    psimoslaw@airbaud.net

Gojko Kasich    gkasich@crownlaw.com, gkasich@gmail.com

Scott L King    sking@scottkinggroup.com, dwilliams@scottkinggroup.com

Catherine A Lake    attyclake@sbcglobal.net

James N Thiros    jim@thiros.com, lynn@thiros.com

Thomas W Vanes    tom.vanes@sbcglobal.net, b.lynneadams@yahoo.com

Ihor Alexander Woloshansky    ihorlawyer@hotmail.com

R Brian Woodward    rbwoodward@wbbklaw.com, carolb@wbbklaw.com

John Maksimovich    criminallaw@johnmaksimovich.com

Visvaldis P Kupsis    vpkupsis@hotmail.com

Sheldon B Nagelberg    sbnagelberglaw@att.net

John E Martin – FCD    john_martin@fd.org

Adam Tavitas    Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander    jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele    ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst    kre@braje–nelson.com

Bryan M Truitt    bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis    theislaw@aol.com

Robert L Rascia    rrascia@rascia−decastro.com, ysierra@rascia−decastro.com

Paul Jeffrey Schlesinger    pjeffslaw@aol.com

Pablo DeCastro    pdecastro@rascia−decastro.com, ysierra@rascia−decastro.com

Dean R Lanter – AUSA    dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA    David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson    attorneyrmj@gmail.com

Bruce R Hegyi – AUSA    bruce.hegyi@usdoj.gov

**2:11−cr−00077−PPS−APR−1 Notice has been delivered by U.S. Mail or other means to:**

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | NO. 2:11CR77 PPS |
| | ) | |
| JUAN BRISENO, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**ORDER**

On June 30, I held a hearing to finalize the substantial voir dire questionnaire that

prospective jurors will complete prior to reporting to court for jury selection in this case.  The

parties agreed to a few changes I made to the joint proposed questionnaire they filed on June

18, 2014.  These changes included the addition of Question #103 concerning juror hardship.

After the hearing, I undertook one more edit agreed to by the parties concerning Question

#105, the final "catch-all" question.  The Special Questionnaire is now believed to be in its

final form.

ACCORDINGLY:

The Clerk shall prepare the attached Special Questionnaire for completion by

prospective jurors to be summoned for service in the January 12, 2015 trial of Juan Briseno.

SO ORDERED.

ENTERED: July 1, 2014.

        /s/ Philip P. Simon
        PHILIP P. SIMON, CHIEF JUDGE

Case: 15-2347    Document: 35    Filed: 07/27/2016    Pages: 4186
Case 2:11-cr-00077-PPS-APR    Document 970-1    Filed 07/01/14    Page 1 of 39

Juror Number: _____

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

---

**UNITED STATES OF AMERICA**,

       Plaintiff,

         vs.                            CAUSE NO.  2:11-CR-77-PPS

**JUAN BRISENO, also known as "Tito,"**

       Defendant.

---

**SPECIAL QUESTIONNAIRE**

## CASE SUMMARY

Juan Briseno is charged in an indictment with various criminal offenses.  An indictment listing the criminal charges against a defendant is simply the document used to advise a defendant of the accusations against him.  The indictment is not evidence.  Mr. Briseno has pleaded not guilty to the charges in the indictment.  Mr. Briseno is presumed innocent of the charges.  The government has the burden of proof under our Constitution and system of laws.  The government must come forward with proof, beyond a reasonable doubt, that Mr. Briseno committed the crimes with which he is charged before Mr. Briseno can be found guilty.  Mr. Briseno has no obligation to produce any evidence, nor do anything at trial.  You must keep in mind that Mr. Briseno is presumed to be innocent of the charges against him and that this presumption stays with him unless and until the government proves each element of the charges beyond a reasonable doubt.

The charges contained in the fourth superseding indictment allege that beginning at least by February 2002 and continuing thereafter, members of the Imperial Gangsters, including Mr. Briseno, engaged in a conspiracy to distribute for profit illegal drugs in the East Chicago area of Indiana.  In addition to operating a drug trafficking organization, it is alleged that the Imperial Gangsters, and Mr. Briseno, engaged in the sale or exchange of guns, in armed robberies, in burglaries, as well as in other illegal conduct.  The indictment also alleges that the Imperial Gangsters, and Mr. Briseno, used various methods to protect their criminal enterprise, including patrolling areas within East Chicago that they controlled, threatening and intimidating potential rivals, including shooting and killing members of rival gangs or potential witnesses against members of the Imperial Gangsters.  Among other things, the indictment alleges that, between September of 2007 and June of 2010, Mr. Briseno personally participated in the murders of six (6) individuals and the attempted murders of an additional seven (7) individuals in or around the East Chicago area.

You are reminded that these are simply *unproven* allegations; nothing more.

1473

In order to assist the parties and the Court in their duty to select a jury in this case that is fair and impartial, we need to ask you some questions about yourself and your views on various topics or issues. Many of the questions are easy and straightforward. However, some of the questions will ask you about things that you may not have thought about for a long time, if ever. Moreover, you may not know the answer to some of the questions. Please answer each of these questions as candidly and completely as you are able, based on your best recollection, knowledge and belief.

## YOUR BACKGROUND

1.    Name:

2.    What is your age? _____

3.    Gender:      ❑ Male       ❑ Female

4.    What is your race or ethnicity and that of your spouse or partner? (This information will not affect your selection for jury service.)

       You: _____      Spouse/Partner: _____

5.    In what city, state and country were you born and raised?

       Born: _____      Raised: _____

       If you were born in another country, when did you move to the United States and when did you become a citizen of this country?
       _____

6.    In what city do you reside? _____

7.    How long have you lived in this area? _____

8.    Where else have you lived during the last five years?
       _____

       _____

       _____

9.    What is your current relationship status? Are you:

       ❑ Single                    ❑ Married
       ❑ Divorced                  ❑ Divorced and remarried
       ❑ Widowed                   ❑ Widowed and remarried
       ❑ Currently separated       ❑ Living with someone

       If you are or were married, please indicate how long: _____ (yrs.)

1474

2

10.   For each person currently living in your residence, please provide the following information:

Relationship                 Age                 Occupation

*Example: Husband*           *45*                *Teacher*

_____

_____

_____

_____

_____

_____

11.   Do you have children who live outside your home?

❏ Yes          ❏ No

If you answered "yes," please provide the following information about each:

| <u>Age</u> | <u>Gender</u> | Highest Level <u>of Education</u> | <u>Occupation/Job</u> | Marital <u>Status</u> |
|------|--------|------------------|--------------|---------|
| ____ | _____ | _____ | _____ | _____ |
| ____ | _____ | _____ | _____ | _____ |
| ____ | _____ | _____ | _____ | _____ |
| ____ | _____ | _____ | _____ | _____ |
| ____ | _____ | _____ | _____ | _____ |

12.   How would you describe your overall physical condition?

❏ Good          ❏ Fair          ❏ Poor

If you have a physical condition you believe would affect your ability to serve as a juror, including difficulty hearing, seeing, reading, or concentrating, please explain:

_____

_____

_____

1475

13. Do you currently take any prescription medications that might have any impact on your service as a juror?

❑ Yes ❑ No

If you answered "yes," please identify the medication, describe the condition for which the medication was prescribed, state how often you take the medication, and identify the side effects of the medication that might make it difficult for you to concentrate or might otherwise impact your service as a juror:

| | Medication | Condition | Frequency | Side Effects |
|---|---|---|---|---|
| *Example:* | *Xanax,* | *Anxiety,* | *2x per day,* | *makes me sleepy* |

_____

_____

_____

14. Have you, or a close family member, undergone counseling, treatment or hospitalization for psychiatric, emotional, family, behavioral, or substance abuse problems?

❑ Yes ❑ No

If you answered "yes," please tell us who was treated and describe the situation:

_____

_____

_____

15. How much control over events in your life do you feel that you have?

❑ No control ❑ Very little control ❑ Moderate amount of control
❑ Almost complete control

16. Would you consider yourself to be a leader:

❑ Often ❑ Sometimes ❑ Rarely ❑ Never

1476

17.    What three words best describe you?

_____    _____    _____

### EDUCATION

18.    How far did you go in school?  If you went to college or graduate school, what was your major field of study?

_____

_____

_____

19.    If you are currently a student, please describe your course of study, your expected date of completion, and your expected academic schedule for January - March 2015.

_____

_____

20.    How far did your spouse/partner go in school, and what was his/her major field of study if he/she went to college or graduate school?

_____

_____

21.    Do you or your spouse/partner have any formal education in the fields of law, medicine, psychology, or psychiatry?            ❑ Yes          ❑ No

If you answered "yes," please explain:

_____

_____

1477

22. Have you or your spouse/partner ever taken any course(s) or seminar(s) in ballistics, constitutional law, crime scene investigation, criminal law, criminology or law enforcement?　　❏ Yes　　　❏ No

If you answered "yes," please provide the course(s) or seminar(s):

Self:

_____

_____

Spouse/Partner:

_____

_____

## EMPLOYMENT

23. Employment status.  Are you currently:　(Please check all that apply)

| | | |
|---|---|---|
| ❏ Employed full time | ❏ Self employed | ❏ Student |
| ❏ Employed part time | ❏ Homemaker | ❏ Unemployed |
| ❏ Employed more than one job | ❏ Retired | ❏ Disabled |

24. If currently employed, please tell us the name of your employer, how long you have worked there, your job title and what your job responsibilities are.

_____

_____

_____

25. Please describe any other places you have worked in the last 10 years, including your title and the length of time at each position.  If you retired from any of those positions, please tell us when you retired.

_____

_____

_____

1478

26. Do you now, or have you ever supervised others? ❑ Yes ❑ No

If you answered "yes," please describe type of work, when and number of people supervised:

_____

_____

_____

27. Please tell us where your spouse or partner works, and what his or her job responsibilities are.

_____

_____

_____

28. Please tell us the occupations of your parents (and step-parents).

_____

_____

_____

## MILITARY SERVICE

29. Have you or anyone close to you ever served in any branch of the Armed Forces of the United States (including the Military Reserves, National Guard or ROTC)?

❑ Yes ❑ No

If you answered "yes," please answer the following:

(a) Please tell us who served, in what branch of service, and the highest rank achieved.

_____

_____

(b) Did you (or they) serve in active combat duty?

❑ Yes ❑ No

7

Case 15-2347 Document: 35 Filed: 07/27/2016 Pages: 4186

If you answered "yes," please tell us who served, in which conflict/war, and where:

_____

_____

_____

## HOBBIES AND ACTIVITIES

30. What social clubs, fraternal or religious organizations or volunteer groups do you belong to or support, if any?

_____

_____

_____

    (a)    Have you ever held an office or position of leadership in any of these organizations either currently or in the past?

        ❑ Yes        ❑ No

    (b)    If you answered "yes," please explain:

_____

_____

_____

31. What are your hobbies and interests? What do you like to do in your spare time?

_____

_____

_____

1480

32.    What television shows do you watch most often, if any?

_____

_____

_____

33.    What newspapers, magazines or journals do you read most often, if any?

_____

_____

_____

34.    What internet websites or blogs do you visit most often, if any?

_____

_____

_____

## POLITICS

35.    On the political spectrum, do you consider yourself to be:

❑ Very Conservative        ❑ Conservative        ❑ Moderate

❑ Liberal                  ❑ Very Liberal        ❑ Independent

❑ Other _____    ❑ Not Applicable

36.    What three public figures do you admire the most and least?

Most: _____    _____    _____

Least: _____   _____    _____

37. Have you, your spouse/partner, or someone close to you, ever been involved in or a member of a group that takes positions on political, philosophical, social or other similar issues (*e.g.*, crime control, drug or alcohol abuse, gun policy, etc.)?

❑ Yes ❑ No

If you answered "yes," please identify the group or groups:

*Example:* *Spouse* *Mothers Against Drunk Drivers*

_____

_____

_____

_____

_____

38. Please look at the list of organizations identified below and as to each of the organizations please indicate whether or not you are familiar with the particular organization and its general mission. If you are familiar with the organization's general mission, please indicate whether or not you support its general mission, disagree with its general mission, or are neutral as to its general mission. Please circle the appropriate answer.

| | | | | |
|---|---|---|---|---|
| American Civil Liberties Union (ACLU) | Unfamiliar | Agree | Neutral | Disagree |
| Handgun Control, Inc. | Unfamiliar | Agree | Neutral | Disagree |
| Ku Klux Klan (KKK) | Unfamiliar | Agree | Neutral | Disagree |
| Mothers Against Drunk Driving (MADD) | Unfamiliar | Agree | Neutral | Disagree |
| Alcoholics Anonymous (AA) | Unfamiliar | Agree | Neutral | Disagree |
| Narcotics Anonymous (NA) | Unfamiliar | Agree | Neutral | Disagree |
| Al Anon (for families of alcoholics) | Unfamiliar | Agree | Neutral | Disagree |
| Nar Anon (for families of drug addicts) | Unfamiliar | Agree | Neutral | Disagree |
| National Rifle Association (NRA) | Unfamiliar | Agree | Neutral | Disagree |
| Police Group or Auxiliary | Unfamiliar | Agree | Neutral | Disagree |
| Big Brother / Big Sister | Unfamiliar | Agree | Neutral | Disagree |
| Prison Ministries | Unfamiliar | Agree | Neutral | Disagree |
| Ex Offender Organizations | Unfamiliar | Agree | Neutral | Disagree |

1482

39. In what ways, if at all, might your political or philosophical views affect your service as a juror?

_____

_____

_____

## RELIGION

40. Do you have any religious affiliation or preference?

    ❑ Yes      ❑ No

41. How often do you attend your place of worship?

    ❑ Regularly    ❑ Seldom

    ❑ Occasionally    ❑ Never

42. In what ways might your religious views or philosophical beliefs affect your service as a juror, if at all?

_____

_____

_____

## FIREARMS

43. Have you ever owned or used any type of firearm, or had training in the use of firearms?

    ❑ Yes      ❑ No

If you answered "yes," please elaborate:

_____

_____

_____

1483

11

44.   Do you, or anyone in your household, presently own guns?

    ❑ Yes        ❑ No

If you answered "yes," please describe the kinds of guns, how many and the reason for ownership (hunting, collection, protection, etc.):

_____

_____

_____

45.   Are you or anyone close to you involved with any organization which takes a position on firearms policy?

    ❑ Yes        ❑ No

If you answered "yes," please tell us what groups and the nature of the involvement.

_____

_____

_____

46.   Do you believe that the firearms laws in the United States and/or in Indiana are unfair or unconstitutional and that the firearms laws should not be enforced?

    ❑ Yes        ❑ No        ❑ Uncertain

If you answered "yes" or "uncertain," please explain what you mean and why you feel the way that you do about the firearms laws.

_____

_____

_____

1484

## CRIMINAL JUSTICE EXPERIENCE

47.　Have you, your spouse/partner, or anyone close to you ever worked for or been associated with:

(please check all that apply)

| | |
|---|---|
| A prosecutor's office | ❑ Yes (self)　❑ Yes (other) ❑ No |
| A criminal defense attorney's office | ❑ Yes (self)　❑ Yes (other) ❑ No |
| Any other lawyer or law office | ❑ Yes (self)　❑ Yes (other) ❑ No |

If you answered "yes," please explain:

_____

_____

_____


48.　Have you, your spouse/partner, or anyone close to you ever been employed by, associated with, or applied for work with any law enforcement or security agency, such as the police, sheriff, a prison or jail, FBI, DEA, ATF, ICE, or a private security firm?

❑ Yes　　　❑ No

(a)　If you answered "yes," please explain (including agency and dates of affiliation):

*Example:　Son　　　FBI Agent　　　2007-present*

_____

_____

_____


49.　Have you, your spouse/partner, or anyone close to you ever been trained or worked as an employee, consultant, or volunteer in any of the following fields?  Please circle the applicable occupation(s) and check all of the boxes that apply.  If you have circled any of the occupations please provide a brief description of the training, work, or volunteer experience.

| Occupation | Person | If "Yes," Please Explain: |
|---|---|---|
| Corrections<br>Probation Office<br>Prison<br>Jail<br>Halfway House | ☐ Self<br>☐ Spouse<br>☐ Family<br>☐ Friend | |

1485

| Work Release<br>Social Worker<br>Drug/Alcohol Treatment<br>Drug/Alcohol Counselor<br>Drug/Alcohol Education | | |
|---|---|---|

50.   To the best of your knowledge, have you ever known anyone who had a serious problem with illegal drugs, abuse of prescription drugs, or alcohol abuse?

❑ Yes        ❑ No

If you answered "yes," please tell us the relationship of that person to you, the type of substance(s) was/were being abused, and approximately when the abuse occurred.

*Example:   My younger sister abused alcohol and cocaine in the late 1990s and the early 2000s.*

_____

_____

_____

51.   Have you, your spouse/partner, or anyone close to you ever been arrested, accused, charged, and/or prosecuted for a crime other than a minor traffic violation?

❑Yes        ❑ No

(a)   If you answered "yes," please explain (including charge, approximate date, location, and case outcome):

*Example:        Close friend,   Drug Possession, 1982, New Mexico,        Guilty at trial*

_____

_____

_____

(b)    In your opinion, was/were the person(s) treated fairly in the criminal justice system?

❏ Yes            ❏ No

If you answered "no," please explain:

_____

_____

_____


52.    Have you, your spouse/partner, or anyone close to you ever been the victim of a crime?

❏ Yes            ❏ No

(a)    If you answered "yes," please explain (including the person's relationship to you, when and where the crime occurred, and what happened):

*Example:*        *Sister, victim of assault, 1999, Chicago, Defendant convicted*

_____

_____

_____

(b)    In your opinion, was/were the person(s) treated properly and fairly by the police?

❏ Yes            ❏ No

If you answered "no," please explain:

_____

_____

_____

1487

(c)     If one or more people were arrested and prosecuted, in your opinion was/were the victim(s) treated properly and fairly by the prosecutors and the court system?

❑ Yes          ❑ No

If you answered "no," please explain:

_____

_____

_____

53.     To the best of your knowledge, have you, your spouse/partner, or anyone close to you ever been threatened by anyone or made to feel afraid for your/their life and/or the lives of others?

❑ Yes          ❑ No

If you answered "no," please explain:

_____

_____

_____

54.     Have you, your spouse/partner, or anyone close to you ever appeared in court or in any grand jury proceeding as a witness?

❑ Yes          ❑ No

(a)    If you answered "yes," please explain who, where, when and the nature of the testimony:

*Example:       Self,     Lake County,   2006,   Witnessed a purse snatching*

_____

_____

_____

16

55. To the best of your knowledge, have you, your spouse/partner, or anyone close to you ever been involved in a civil lawsuit?

❑ Yes          ❑ No

If you answered "yes," please state the approximate year, the jurisdiction in which the case was filed, whether you/they were a witness, plaintiff or civil defendant, and please tell us (as best you recall) the type of claim and how it was resolved?

*Example:   My spouse was injured in a car accident in Hammond in 2008; she was the plaintiff in a case filed in Lake County; the case settled.*

_____

_____

_____

56. Excluding possible jury service (which will be discussed below), have you ever been to court before as a plaintiff, defendant, victim, or witness for any reason other than what you have indicated above?

❑ Yes          ❑ No

If you answered "yes," please tell us which court, the approximate year, and explain the circumstances as best you remember them?

_____

_____

_____

57. Have you ever been questioned in any criminal investigation (as a potential victim, witness, suspect, target, defendant, or otherwise) by any federal, state or local law enforcement agency or agent (including the Department of Justice, U.S. Attorney's Office, Federal Bureau of Investigation (FBI), Drug Enforcement Administration (DEA), Alcohol, Tobacco & Firearms (ATF), Internal Revenue Service (IRS), Immigration & Naturalization Service (INS), Customs Service, or Department of Homeland Security, East Chicago Police Department, Gary Police Department, Lake County Sheriff's Department, Hammond Police Department, Lake County or Federal Drug Task Force)?

❑ Yes          ❑ No

1489

If you answered "yes," please explain:

_____

_____

_____

58.    To the best of your knowledge, were you, your spouse/partner, or anyone close to you ever held or incarcerated in a jail or prison?

        ❑ Yes        ❑ No

If you answered "yes," please explain:

*Example:  My uncle was convicted of burglary in Chicago around 2005 and went to prison somewhere in Illinois.*

_____

_____

_____

59.    Have you, your spouse, or anyone close to you ever had a particularly good or bad experience involving the police or any type of law enforcement officer?

        ❑ Yes        ❑ No

If you answered "yes," please explain:

_____

_____

_____

60.    Do you, your spouse/partner, or anyone close to you have any strong views for or against any law enforcement agencies, such as the local police, sheriff, probation, FBI, DEA, ATF, ICE, Federal Bureau of Prisons, Indiana Department of Corrections, etc.?

        ❑ Yes        ❑ No

If you answered "yes," please explain:

_____

_____

_____

1490

## PRIOR JURY SERVICE

61. Have you ever served as a trial juror before?

❏ Yes        ❏ No

If you answered "yes," please complete the following:

Criminal or Civil Case    Main Charge    When did you serve    Did jury reach a verdict (Yes or No)

_____

_____

_____

_____

_____

(b) Were you ever the foreperson?    ❏ Yes  ❏ No

(c) If you have previously served on a jury, please explain whether you found the experience to be positive or negative.

❏ Positive    ❏ Negative    ❏ Mixed    ❏ Other

If you answered "negative," "mixed," or "other" please explain:

_____

_____

_____

62. Have you ever served on a grand jury in state or federal court proceedings?

❏ Yes        ❏ No

If you answered "yes," please explain when and where and describe your feeling about the process:

_____

_____

_____

1491

63.     Do you know any judges, lawyers or anyone else in the court system?

❑ Yes          ❑ No

If you answered "yes," please describe who you know, where they work, and how well you know them:

_____

_____

_____


## CRIMINAL JUSTICE ISSUES

64.     A number of witnesses at the trial will be law enforcement officers from federal, state or local law enforcement agencies.  The Judge will instruct you to consider and evaluate their testimony just as you would consider the testimony of any other witness.  Do you believe that you will be able to follow that instruction?

❑ Yes          ❑ No

If you answered "no," please explain:

_____

_____

_____


65.     If you are chosen to serve as a juror in this case, the Judge will instruct you that Juan Briseno is presumed to be innocent, that he cannot be convicted unless the government proves each essential element of the crimes charged beyond a reasonable doubt, and that there is no burden on Mr. Briseno to prove that he is innocent, nor to put on any evidence at all.  Do you believe you will be able to follow that instruction?

❑ Yes          ❑ No

If you answered "no," please explain:

_____

_____

_____

1492

66. An indictment is a document that describes the charges with which a defendant is accused. If you are chosen to serve as a juror in this case, the Judge will instruct you that the indictment in this case may not be considered by you as any evidence whatsoever establishing the guilt of Juan Briseno. Do you believe that you will be able to follow such an instruction?

❑ Yes ❑ No

If you answered "no," please explain:

_____

_____

_____

67. During the trial of this case, there will likely be testimony from one or more witnesses who have criminal records. Would you tend to automatically *dis*believe what a witness says simply because he or she has a criminal record?

❑ Yes ❑ No

If you answered "yes," please explain:

_____

_____

_____

68. During the trial of this case, there will likely be testimony from one or more witnesses who have pled guilty in this case and who have entered into cooperation agreements with the United States at least in part in the hope of receiving a more lenient sentence than he or she would have received if he or she had not cooperated with the United States. At the appropriate time, Chief Judge Simon will instruct the jury that it is proper for the United States to call such witnesses to the stand to testify. In addition, Judge Simon will instruct the jury that the jury should view such witnesses' testimony with caution. Would you tend to automatically *dis*believe what a witness says simply because he or she is testifying under a cooperation agreement with the United States?

❑ Yes ❑ No ❑ Uncertain

1493

21

If you answered "yes" or "uncertain," please explain:

_____

_____

_____

69.     The evidence in this case might include graphic testimony and photographs that describe and depict injuries and damage caused by violent crimes. Would hearing and seeing such evidence so overwhelm, affect, or distract you that it would make it difficult for you to remain fair and impartial as a juror in this case?

                    ❑Yes          ❑No          ❑ Uncertain

        If you answered "yes" or "uncertain," please explain:

_____

_____

_____

70.     Do you believe that the narcotics laws in the United States and/or in Indiana are unfair or unconstitutional or that the narcotics laws should not be enforced?

                    ❑ Yes          ❑ No          ❑ Uncertain

        If you answered "yes" or "uncertain," please explain what you mean and why you feel the way that you do about the narcotics laws.

_____

_____

_____

71.     During the trial of this case, there will likely be evidence of illegal distribution of large quantities of cocaine and marijuana. Would evidence of the illegal distribution of large quantities of cocaine and marijuana make it difficult for you to follow the Court's instructions and to be a fair and impartial juror?

                    ❑ Yes          ❑ No          ❑ Uncertain

1494

If you answered "yes" or "uncertain," please explain why it would make it difficult for you to follow the Court's instructions or to be fair and impartial.

_____

_____

_____

72.    The indictment in this case charges that Mr. Briseno committed certain crimes personally and directly.  In addition, the indictment charges that Mr. Briseno engaged in other crimes as a "conspirator" or that he "aided and abetted" the criminal conduct of others.  At the appropriate time, Judge Simon will carefully instruct you as to the law of "Conspiracy" and as to the law of "Aiding and Abetting."  At this point, suffice it to say that *in certain circumstances* a defendant *may* be found guilty of a crime even though the defendant did not personally or directly commit the crime.  Will it be difficult for you to follow Judge Simon's instructions, if it means that the defendant can potentially be found guilty even though the defendant did not personally or directly commit the crime?

❑ Yes          ❑ No          ❑ Uncertain

If you answered "yes" or "uncertain," please explain:

_____

_____

_____

73.    During the trial of this case, it is possible that some of the testimony may come from a psychiatrist, psychologist, social worker, or other mental health professional.  Do you have a strong opinion about these fields and the ability of such persons to identify and explain reasons for human behavior?

❑ Yes          ❑ No          ❑ Uncertain

If you answered "yes" or "uncertain," please explain:

_____

_____

_____

## KNOWLEDGE OF THE CASE

74.     Before you came to court today, had you heard anything about this case?

❑ Yes          ❑ No          ❑ Uncertain

(a)     If you answered "yes" or "uncertain," please briefly describe what you heard:

_____

_____

_____

(b)     What was/were the source(s) of this information?

_____

_____

_____

75.     In our system of justice, it is very important that the jury only consider evidence that has come before the jury in the trial itself.  No member of the jury can consider anything that was not introduced in evidence in the actual trial.  Would the information that you may have heard, received, or read (if any) from any source affect your ability to be fair and impartial if you are selected to serve as a juror in this case?

❑ Not applicable (I did not hear, read, or receive any such information.)

❑ Yes          ❑ No          ❑ Uncertain

If you answered "yes," or "uncertain," please explain:

_____

_____

_____

1496

76. Do you know any of the following people:

  A.  Defense lawyers:  Arlington J. Foley and John Maksimovich;

  B.  Prosecutors:  David J. Nozick and Bruce R. Hegyi; or

  C.  The defendant:  Juan Briseno?

    ❑ Yes  ❑ No

If you answered "yes," please identify each of the persons whom you know and explain how well you know each of them:

_____

_____

_____

77. The trial will be presided over by the Honorable Philip P. Simon, Chief Judge of the United States Court for the Northern District of Indiana. Do you know Judge Simon or any member of his staff?

    ❑ Yes  ❑ No

If you answered "yes," please identify each of the persons whom you know and explain how well you know each of them:

_____

_____

_____

78. The indictment in this case alleges that Mr. Briseno was a member of a street gang known as the Almighty Imperial Gangster Nation, which was often referred to as the "Imperial Gangsters" or the "IGs." In the trial of this case, in addition to hearing about the Imperial Gangsters, you will also hear of other gangs such as the Latin Kings, the Two Six, the Spanish Gangster Disciples, and the Black P-Stones, and perhaps other gangs as well. Have you, your spouse/partner, or anyone close to you ever been a member of a street gang?

    ❑ Yes  ❑ No

1497

If you answered "yes," please explain:

*Example:*     *A Cousin was a member of the Vicelords in Chicago*

_____

_____

_____

79.     Have you experienced a gang problem in the area where you now live or, in the past, did you experience a gang problem in any area in which you were living at the time?

❏ Yes          ❏ No

If you answered "yes," please explain:

_____

_____

_____

80.     Have you, your spouse/partner, or anyone close to you ever been victimized by      a member of any street gang or by gang activity?

❏ Yes          ❏ No

If you answered "yes," please explain:

_____

_____

_____

81.     At one time, charged along with Mr. Briseno in this case were the following individuals, who were also alleged to have been members of the Imperial Gangsters street gang.

> Galo Benjamin Feliciano
> Guillermo Briseno, also known as "Memo"
> Alejandro Balboa Lara, also known as "Jackie Chan"
> Justin Weaver, also known as "White Boy"
> Michael Anthony Castillo
> Kelvin Jefferson Beltran, also known as "Risky"
> David Almaraz, also known as "Penguino"
> Joseph Rene Torres
> Jason Medina, also known as "Burns"
> Edward Raye Serna, also known as "Sern"
> Alejandro Briseno
> Robert Lockhart, also known as "Jackson"
> Armando Jose Velasquez, also known as "Money"
> Anthony Baldazo, also known as "Tall Folks"
> Salvador Chavez, also known as "Black" or "Dirty Sal"
> Raymond Campos, also known as "Cookie Face"
> Ace Cortez
> Julian Guillermo Serna, also known as "Big Ju"
> Julius Solis, also known as "Ju-Ju"
> Darmaile Cortez Sutton, also known as "D-Money"
> Eddie Torres, also known as "Macho" or "Mach"
> Richard Reyes
> Vincente Garza, also known as "Chente"

To the best of your knowledge, do you, your spouse/partner, or anyone close to you know (or know of) any of these individuals?

❏ Yes          ❏ No

If you answered "yes," please identify each person you know (or know of) and explain how you know (or know of) him:

_____

_____

_____

82.     It is alleged in this case that Mr. Briseno participated in the murders of the following individuals:

> Luis Ortiz, also known as "Manolo"
> Michael Sessum
> Miguel Mejias, also known as "King Nellie"
> Harris Brown
> Miguel Colon, also known as "Migs"
> Latroy Howard

To the best of your knowledge, did you, your spouse/partner, or anyone close to you know (or know of) any of these individuals?

❑ Yes          ❑ No

If you answered "yes," please identify each person you knew (or knew of) and explain how you know (or know of) him:

_____

_____

_____

83.    In addition, it is alleged that Mr. Briseno participated in attempting to murder the following individuals:

Marissa Harper
Andres Arenivas
Jose Perez
Joseph Medina
Peter Santos
Joshua Roberts
Richard Perez

To the best of your knowledge, do you, your spouse/partner, or anyone close to you know (or know of) any of these individuals?

❑ Yes          ❑ No

If you answered "yes," please identify each person you know (or know of) and explain how you know (or know of) him or her:

_____

_____

_____

1500

84. It is alleged that one or more other Imperial Gangsters – *but not Mr. Briseno* -- participated in the murders the following individuals:

> Steven Rodriguez, also known as "Little Jeremy"
> Wayne McNair
> Anuar David Paez, also known as "Bronco"
> Guadelupe Trevino
> Juan Murillo, Sr.
> Rene Alonzo
> Mario Soriano
> Alonzo Cavazos
> Jesus Alvarez
> Peter Santos

To the best of your knowledge, did you, your spouse/partner, or anyone close to you know (or know of) any of these individuals?

❑ Yes     ❑ No

If you answered "yes," please identify each person you knew (or knew of) and explain how you know (or know of) him or her:

_____

_____

_____

85. In addition, it is alleged that one or more other Imperial Gangsters – *but not Mr. Briseno* -- participated in attempting to murder the following individuals:

> Paul Alvarado
> Juan Murillo, Jr.
> Cornelius Jordan
> Romelle Jackson
> Thomas Delacruz
> Alejandro Sanchez

To the best of your knowledge, do you, your spouse/partner, or anyone close to you know (or know of) any of these individuals?

❑ Yes     ❑ No

1501

If you answered "yes," please identify each person you know (or know of) and explain how you know (or know of) him or her:

_____

_____

_____

86.   The Constitution says, and the Court will instruct you, that *every* defendant arrested for *any* crime is presumed innocent.  Can you follow this instruction?

❏ Yes          ❏ No          ❏ Uncertain

If you answered "no" or "uncertain," please explain:

_____

_____

_____

87.   The Constitution says, and the Court will instruct you, that *every* defendant has an *absolute* right not to testify in his own defense and that the jury may <u>not</u> hold such a decision against him in any way.  Can you follow this instruction?

❏ Yes          ❏ No          ❏ Uncertain

If you answered "no" or "uncertain," please explain:

_____

_____

_____

88.   You have been told that the law presumes every defendant to be innocent until and unless her or she has been proven guilty beyond a reasonable doubt after trial.  Have you learned anything today (or before today) that has caused you <u>at this time</u> – *before you have heard any evidence* -- to form an opinion that Mr. Briseno is, in fact, guilty of any of the crimes with which he has been charged?

❏ Yes          ❏ No          ❏ Uncertain

1502

If you answered "yes" or "uncertain," please explain:

_____

_____

_____


## QUESTIONS CONCERNING SENTENCING

If, and only if, Mr. Briseno is found guilty of one or more of the death-eligible murders charged in the indictment, there will be a separate hearing before the same jury to decide whether the appropriate sentence for Mr. Briseno is (a) life imprisonment without parole/release, or (b) death. If we get to that point, those are the only possible choices. Accordingly, it is important that we know your thoughts and opinions regarding the death penalty. Should this case proceed to a sentencing hearing (known as the "Penalty Phase"), you will be instructed in detail on the burdens of proof and the procedures to be followed. At this time, we are not inquiring about particular circumstances that may arise in this case, but only about your general feelings regarding and concerning the death penalty.

By asking these questions about punishment, the Court is not suggesting in any way that Mr. Briseno is guilty, or that you will in fact be called upon to decide a penalty in this case. However, the Judge must know whether you could be fair to both the defense and the prosecution on the issue of punishment if the jury is ever called upon to reach that issue.


89.    In general, and in your own words, what are your personal views on the death penalty?

_____

_____

_____

1503

90.    Have your views about the death penalty changed over the past 10 years (*e.g.*, now more in favor or less in favor)?

❑ Yes          ❑ No

If you answered "yes," please explain why your views have changed:

_____

_____

_____

91.    Using the following scale/continuum (from "1" to "10"), please circle the number that most closely matches your overall opinion about the death penalty. For instance, "1" means that the death penalty should never or virtually never be imposed; "10" means that the death penalty should be imposed in every case or virtually every case in which the defendant has been convicted of intentional murder; "5" means that you do not have strong feeling one way or the other (either for or against) whether the death penalty should, or should not, be generally imposed in cases of intentional murder.

Strongly Opposed                                                      Strongly Favor

1       2       3       4       5       6       7       8       9       10

92.    Which of the following <u>best</u> describes your view (please check only one):

❑      If a person is convicted of a death-eligible murder crime and the death penalty is requested, I will always vote to impose it, regardless of the particular and unique facts and law in the case, and could not vote for a life sentence under those circumstances.

❑      I am strongly in favor of the death penalty and would have a difficult time voting against it if a person is convicted of a death-eligible murder, regardless of the particular and unique facts and law in the case.

❑      I generally favor the death penalty, but I would base a decision on whether or not to impose it on the particular and unique facts and the law in the case.

❑      I do not have strong opinions either for or against the death penalty, and I would consider both alternatives and base a decision to impose it on the particular and unique facts and law in the case.

❑      I am generally opposed to the death penalty, but I believe I can put aside my feelings against the death penalty and impose it if is called for by the particular and unique facts and the law in the case.

1504

❑     I am strongly opposed to the death penalty and I will have a difficult time voting to impose it regardless of the particular and unique facts and law in the case.

❑     I am personally, morally and/or religiously opposed to the death penalty and would never vote to impose it, regardless of the particular and unique facts and law in the case.

Please explain why you chose the answer you chose:

_____

_____

_____

93.    Is this statement true or not true, as it pertains to you:   In a case where an accused has been found guilty of intentionally murdering another person, I would **never** vote to impose the death penalty, regardless of the circumstances.

❑ True                    ❑ Not true

If you answered "true," please explain:

_____

_____

_____

94.    Is this statement true or not true, as it pertains to you:   In a case where an accused has been found guilty of intentionally murdering another person, I would **always** vote to impose the death penalty, regardless of the circumstances?

❑ True                    ❑ Not true

If you answered "true," please explain:

_____

_____

_____

1505

Case: 15-2347 Document: 35 Filed: 07/27/2016 Pages: 4186

95. Do you have any moral, religious, ethical, philosophical, or other personal beliefs that would prevent you from sitting in judgment on another human being in a case where the death penalty is being sought by the government?

   ❑ Yes     ❑ No

   If you answered "yes," please explain:

   _____

   _____

   _____

96. In cases of intentional, premeditated, murder, do you believe the death penalty is sought in the United States:

   ❑ Too often     ❑ Too seldom
   ❑ About right    ❑ No opinion

97. What things or circumstances would be important to you in deciding whether a person found guilty of a death-eligible murder should be sentenced to death or life imprisonment without the possibility of release?

   _____

   _____

   _____

98. "Life imprisonment without the possibility of release" means that the defendant will spend the rest of his or her natural life in prison. There is no chance of parole. The defendant will die in prison. When comparing (a) life imprisonment without the possibility of release, and (b) the death penalty, do you believe life imprisonment without the possibility of release is (please check only one answer):

   ❑ Less severe than the death penalty
   ❑ About the same as the death penalty
   ❑ More severe than the death penalty
   ❑ No opinion

1506

Please explain your answer:

_____

_____

_____

99.   To the best of your knowledge and recollection, have you, your spouse/partner, or anyone close to you ever belonged to, supported, signed petitions regarding, or donated time or money to, any group of organization that advocates either for or against the death penalty?

(Please check all that apply:)

Supporting Death Penalty:      ❑ Yes, myself              ❑ Yes, spouse/partner
                               ❑ Yes, close friend/family ❑ No

Opposing Death Penalty:        ❑ Yes, myself              ❑ Yes, spouse/partner
                               ❑ Yes, close friend/family ❑ No

If you answered "yes," please explain:

_____

_____

_____

100.  Would your spouse/partner or any of your close friends be significantly critical or particularly disappointed in you for how you voted in a death-eligible murder case (whether you vote for or against the imposition of the death penalty)?

        ❑ Yes, if I voted for the death penalty
        ❑ Yes, if I voted against the death penalty
        ❑ Uncertain
        ❑ No

If you answered "yes" or "uncertain," please explain:

_____

_____

_____

1507

101. If you are chosen as a juror in this case, the Judge will instruct you that possible punishment(s) are not to be considered during the guilt/innocence phase of trial. In the guilt/innocence phase of the trial, the jury must determine *only* if Mr. Briseno is guilty or not guilty of the offenses charged in the indictment. Will you be able to follow this instruction and <u>not</u> consider the possible punishment(s) during the guilt/innocence phase of trial?

❑ Yes ❑ No ❑ Uncertain

If you answered "yes" or "uncertain," please explain:

_____

_____

_____

102. If, but only if, the jury finds Mr. Briseno guilty of one or more death-eligible murder offenses, the trial will move to what is known as the "Penalty Phase." If this case was to proceed to the Penalty Phase, the law forbids jurors from considering the race, color, national origins, or sexual orientation, of either the defendant or the victim(s). Do you have <u>any</u> reservations about your ability to strictly abide by this requirement of the law?

❑ Yes, I do have reservations
❑ No, I will be able to abide by the law
❑ Uncertain

If you answered "yes" or "uncertain," please explain:

_____

_____

_____

**JUROR HARDSHIP**

Service on a jury when called is an important obligation of every American. For people charged with crimes in the United States, the right to a public trial before an impartial jury is a bedrock constitutional principle guaranteed by the Bill of Rights. At the same time, the courts are aware that service on a particular jury at a particular time may present a hardship serious enough to excuse a person's participation as a prospective juror. To be excused from service, the

hardship must be significant. Only circumstances that present genuine and unavoidable conflicts with the ability to serve will support an excuse from jury service.

The trial for which you are summoned as a prospective juror is expected to last 4 to 6 weeks from approximately February 2 through March 13, with each juror also required to appear in court for jury selection purposes on one day between January 12 and January 30. Jurors would generally be expected to be able to be in court beginning as early as 8:30 a.m. and as late as 5:30 p.m., Monday through Friday.

**103.** During this time period, would you be unable to be in court as may be required due to:

Travel for work that has already been paid for?                      Yes ☐      No ☐

Travel for personal reasons that has already been paid for?          Yes ☐      No ☐

A wedding or other already-scheduled important family event?         Yes ☐      No ☐

A serious health-related issue (including pregnancy or childbirth)?   Yes ☐      No ☐

A serious family-related issue or responsibility?                    Yes ☐      No ☐

Some other reason?                                                    Yes ☐      No ☐

If you have answered "yes," please give a **detailed** explanation of the conflict (including dates, places, etc.) and why you believe it cannot be resolved to enable you to serve if selected. **All requests to be excused due to hardship are subject to further questioning in person under oath.**

_____

_____

_____

_____

1509

## CONCLUSION

104. Can you think of anything else (political, ethical, moral, religious, philosophical, medical, physical, emotional, personal, or otherwise) that you believe may be relevant to, or that would affect, your ability to serve as a juror in this case?

❑ Yes ❑ No

If you answered "yes," please explain:

_____

_____

_____

105. Is there anything else you think might bear on your service as a juror that you have not included in your previous answers and would rather not put in writing but that you would like to discuss privately with the Judge and the parties when you appear in court?

❑ Yes ❑ No

(Do not list the matter or issue here.   It will be taken up when you come to court.)

**ADDITIONAL COMMENT PAGE IF NECESSARY**
(Please identify the question number for each answer)

_____

_____

_____

_____

_____

_____

_____

_____

_____

1510

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____
SIGNATURE OF JUROR

_____
Date

```
MIME-Version:1.0
From:CMECFinnd@innd.uscourts.gov
To:CMECFinnd@localhost.localdomain
Bcc:
--Case Participants: Bryan M Truitt (bryan@tblawyers.com, sherrie@tblawyers.com), David J
Nozick - AUSA (david.nozick@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov,
susan.devries@usdoj.gov, usainn.ecfcivil@usdoj.gov), Kurt R Earnst (kre@braje-nelson.com),
Paul Jeffrey Schlesinger (pjeffslaw@aol.com), Pablo DeCastro
(pdecastro@rascia-decastro.com, ysierra@rascia-decastro.com), Sheldon B Nagelberg
(sbnagelberglaw@att.net), Thomas W Vanes (b.lynneadams@yahoo.com,
tom.vanes@sbcglobal.net), John T Theis (theislaw@aol.com), Catherine A Lake
(attyclake@sbcglobal.net), Adam Tavitas (adtavitas@aol.com, b.lynneadams@yahoo.com), Dean
R Lanter - AUSA (dean.lanter@usdoj.gov, janet.eisenmann@usdoj.gov,
usainn.ecfcivil@usdoj.gov), John E Martin - FCD (john_martin@fd.org), Scott L King
(dwilliams@scottkinggroup.com, sking@scottkinggroup.com), Mark A Psimos
(psimoslaw@airbaud.net), Ihor Alexander Woloshansky (ihorlawyer@hotmail.com), James N
Thiros (jim@thiros.com, lynn@thiros.com), Robert L Rascia (rrascia@rascia-decastro.com,
ysierra@rascia-decastro.com), Gojko Kasich (gkasich@crownlaw.com, gkasich@gmail.com),
Arlington J Foley (arlingtonfoley@att.net), Roxanne Mendez Johnson
(attorneyrmj@gmail.com), Visvaldis P Kupsis (vpkupsis@hotmail.com), Stephen Edward Scheele
(pkd@gk4law.com, ses@gk4law.com), Jack Friedlander (jack@jackfriedlander.com,
office@jackfriedlander.com), Bruce R Hegyi - AUSA (bruce.hegyi@usdoj.gov), R Brian
Woodward (carolb@wbbklaw.com, rbwoodward@wbbklaw.com), John Maksimovich
(criminallaw@johnmaksimovich.com), David E Vandercoy (david.vandercoy@valpo.edu),
Magistrate Judge Andrew P Rodovich (rodovich_chambers@innd.uscourts.gov), Chief Judge
Philip P Simon (denise_woodside@innd.uscourts.gov, jacob_hamann@innd.uscourts.gov,
lauren_schwartz@innd.uscourts.gov, mira_serrill-robins@innd.uscourts.gov,
noel_collins@innd.uscourts.gov, philip_simon@innd.uscourts.gov)
--Non Case Participants: Matthew D Soliday (office@matthewsolidaylaw.com),
Probation/Pretrial Services (innpml_cmecf@innd.uscourts.gov), U S Marshal
(inn.docket-fw@usdoj.gov, inn.docket-sb@usdoj.gov, usms.27@usdoj.gov)
--No Notice Sent:

Message-Id:2568294@innd.uscourts.gov
Subject:Activity in Case 2:11-cr-00077-PPS-APR United States of America v. Briseno et al
Terminate Deadlines and Hearings
```
Content–Type: text/html

## U.S. District Court Northern District of Indiana [LIVE]

## USDC Northern Indiana

## Notice of Electronic Filing

The following transaction was entered on 7/11/2014 at 10:51 AM EST and filed on 7/11/2014

| | |
|---|---|
| **Case Name:** | United States of America v. Briseno et al |
| **Case Number:** | 2:11–cr–00077–PPS–APR |
| **Filer:** | |
| **Document Number:** | No document attached |

**Docket Text:**
**Terminate Deadlines/Hearings as to case dfts: NOTE: ONLY PAST deadlines were terminated to clean up the docket sheet to show only the pending deadlines/hearings.**

**2:11–cr–00077–PPS–APR–1 Notice has been electronically mailed to:**

David E Vandercoy    david.vandercoy@valpo.edu

Arlington J Foley    arlingtonfoley@att.net

Mark A Psimos    psimoslaw@airbaud.net

Gojko Kasich    gkasich@crownlaw.com, gkasich@gmail.com

Scott L King    sking@scottkinggroup.com, dwilliams@scottkinggroup.com

Catherine A Lake    attyclake@sbcglobal.net

James N Thiros    jim@thiros.com, lynn@thiros.com

Thomas W Vanes    tom.vanes@sbcglobal.net, b.lynneadams@yahoo.com

Ihor Alexander Woloshansky    ihorlawyer@hotmail.com

R Brian Woodward    rbwoodward@wbbklaw.com, carolb@wbbklaw.com

John Maksimovich    criminallaw@johnmaksimovich.com

Visvaldis P Kupsis    vpkupsis@hotmail.com

Sheldon B Nagelberg    sbnagelberglaw@att.net

John E Martin – FCD    john_martin@fd.org

Adam Tavitas    Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander    jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele    ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst    kre@braje–nelson.com

Bryan M Truitt    bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis    theislaw@aol.com

Robert L Rascia    rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger    pjeffslaw@aol.com

Pablo DeCastro    pdecastro@rascia–decastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA    dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov,
janet.eisenmann@usdoj.gov

David J Nozick – AUSA    David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov,
janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson    attorneyrmj@gmail.com

Bruce R Hegyi – AUSA    bruce.hegyi@usdoj.gov

**2:11−cr−00077−PPS−APR−1 Notice has been delivered by U.S. Mail or other means to:**

**2:11−cr−00077−PPS−APR−2 Notice has been electronically mailed to:**

David E Vandercoy    david.vandercoy@valpo.edu

Arlington J Foley    arlingtonfoley@att.net

Mark A Psimos    psimoslaw@airbaud.net

Gojko Kasich    gkasich@crownlaw.com, gkasich@gmail.com

Scott L King    sking@scottkinggroup.com, dwilliams@scottkinggroup.com

Catherine A Lake    attyclake@sbcglobal.net

James N Thiros    jim@thiros.com, lynn@thiros.com

Thomas W Vanes    tom.vanes@sbcglobal.net, b.lynneadams@yahoo.com

Ihor Alexander Woloshansky    ihorlawyer@hotmail.com

R Brian Woodward    rbwoodward@wbbklaw.com, carolb@wbbklaw.com

John Maksimovich    criminallaw@johnmaksimovich.com

Visvaldis P Kupsis    vpkupsis@hotmail.com

Sheldon B Nagelberg    sbnagelberglaw@att.net

John E Martin – FCD    john_martin@fd.org

Adam Tavitas    Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander    jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele    ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst    kre@braje−nelson.com

Bryan M Truitt    bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis    theislaw@aol.com

Robert L Rascia    rrascia@rascia−decastro.com, ysierra@rascia−decastro.com

Paul Jeffrey Schlesinger    pjeffslaw@aol.com

Pablo DeCastro    pdecastro@rascia−decastro.com, ysierra@rascia−decastro.com

Dean R Lanter − AUSA    dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov,
janet.eisenmann@usdoj.gov

David J Nozick − AUSA    David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov,
janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson    attorneyrmj@gmail.com

Bruce R Hegyi − AUSA    bruce.hegyi@usdoj.gov

**2:11−cr−00077−PPS−APR−2 Notice has been delivered by U.S. Mail or other means to:**

**2:11−cr−00077−PPS−APR−3 Notice has been electronically mailed to:**

David E Vandercoy    david.vandercoy@valpo.edu

Arlington J Foley    arlingtonfoley@att.net

Mark A Psimos    psimoslaw@airbaud.net

Gojko Kasich    gkasich@crownlaw.com, gkasich@gmail.com

Scott L King    sking@scottkinggroup.com, dwilliams@scottkinggroup.com

Catherine A Lake    attyclake@sbcglobal.net

James N Thiros    jim@thiros.com, lynn@thiros.com

Thomas W Vanes    tom.vanes@sbcglobal.net, b.lynneadams@yahoo.com

Ihor Alexander Woloshansky    ihorlawyer@hotmail.com

R Brian Woodward    rbwoodward@wbbklaw.com, carolb@wbbklaw.com

John Maksimovich    criminallaw@johnmaksimovich.com

Visvaldis P Kupsis    vpkupsis@hotmail.com

Sheldon B Nagelberg    sbnagelberglaw@att.net

John E Martin − FCD    john_martin@fd.org

Adam Tavitas    Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander    jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele    ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst    kre@braje−nelson.com

Bryan M Truitt    bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis    theislaw@aol.com

Robert L Rascia    rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger    pjeffslaw@aol.com

Pablo DeCastro    pdecastro@rascia–decastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA    dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov,
janet.eisenmann@usdoj.gov

David J Nozick – AUSA    David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov,
janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson    attorneyrmj@gmail.com

Bruce R Hegyi – AUSA    bruce.hegyi@usdoj.gov

**2:11–cr–00077–PPS–APR–3 Notice has been delivered by U.S. Mail or other means to:**

**2:11–cr–00077–PPS–APR–4 Notice has been electronically mailed to:**

David E Vandercoy    david.vandercoy@valpo.edu

Arlington J Foley    arlingtonfoley@att.net

Mark A Psimos    psimoslaw@airbaud.net

Gojko Kasich    gkasich@crownlaw.com, gkasich@gmail.com

Scott L King    sking@scottkinggroup.com, dwilliams@scottkinggroup.com

Catherine A Lake    attyclake@sbcglobal.net

James N Thiros    jim@thiros.com, lynn@thiros.com

Thomas W Vanes    tom.vanes@sbcglobal.net, b.lynneadams@yahoo.com

Ihor Alexander Woloshansky    ihorlawyer@hotmail.com

R Brian Woodward    rbwoodward@wbbklaw.com, carolb@wbbklaw.com

John Maksimovich    criminallaw@johnmaksimovich.com

Visvaldis P Kupsis    vpkupsis@hotmail.com

Sheldon B Nagelberg    sbnagelberglaw@att.net

John E Martin – FCD    john_martin@fd.org

Adam Tavitas    Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander    jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele    ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst    kre@braje–nelson.com

Bryan M Truitt    bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis    theislaw@aol.com

Robert L Rascia    rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger    pjeffslaw@aol.com

Pablo DeCastro    pdecastro@rascia–decastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA    dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov,
janet.eisenmann@usdoj.gov

David J Nozick – AUSA    David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov,
janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson    attorneyrmj@gmail.com

Bruce R Hegyi – AUSA    bruce.hegyi@usdoj.gov

**2:11–cr–00077–PPS–APR–4 Notice has been delivered by U.S. Mail or other means to:**

**2:11–cr–00077–PPS–APR–5 Notice has been electronically mailed to:**

David E Vandercoy    david.vandercoy@valpo.edu

Arlington J Foley    arlingtonfoley@att.net

Mark A Psimos    psimoslaw@airbaud.net

Gojko Kasich    gkasich@crownlaw.com, gkasich@gmail.com

Scott L King    sking@scottkinggroup.com, dwilliams@scottkinggroup.com

Catherine A Lake    attyclake@sbcglobal.net

James N Thiros    jim@thiros.com, lynn@thiros.com

Thomas W Vanes    tom.vanes@sbcglobal.net, b.lynneadams@yahoo.com

Ihor Alexander Woloshansky    ihorlawyer@hotmail.com

R Brian Woodward    rbwoodward@wbbklaw.com, carolb@wbbklaw.com

John Maksimovich    criminallaw@johnmaksimovich.com

Visvaldis P Kupsis    vpkupsis@hotmail.com

Sheldon B Nagelberg    sbnagelberglaw@att.net

John E Martin – FCD    john_martin@fd.org

Adam Tavitas    Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander    jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele    ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst    kre@braje–nelson.com

Bryan M Truitt    bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis    theislaw@aol.com

Robert L Rascia    rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger    pjeffslaw@aol.com

Pablo DeCastro    pdecastro@rascia–decastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA    dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov,
janet.eisenmann@usdoj.gov

David J Nozick – AUSA    David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov,
janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson    attorneyrmj@gmail.com

Bruce R Hegyi – AUSA    bruce.hegyi@usdoj.gov

**2:11–cr–00077–PPS–APR–5 Notice has been delivered by U.S. Mail or other means to:**

**2:11–cr–00077–PPS–APR–6 Notice has been electronically mailed to:**

David E Vandercoy    david.vandercoy@valpo.edu

Arlington J Foley    arlingtonfoley@att.net

Mark A Psimos    psimoslaw@airbaud.net

Gojko Kasich    gkasich@crownlaw.com, gkasich@gmail.com

Scott L King    sking@scottkinggroup.com, dwilliams@scottkinggroup.com

Catherine A Lake    attyclake@sbcglobal.net

1518

James N Thiros    jim@thiros.com, lynn@thiros.com

Thomas W Vanes    tom.vanes@sbcglobal.net, b.lynneadams@yahoo.com

Ihor Alexander Woloshansky    ihorlawyer@hotmail.com

R Brian Woodward    rbwoodward@wbbklaw.com, carolb@wbbklaw.com

John Maksimovich    criminallaw@johnmaksimovich.com

Visvaldis P Kupsis    vpkupsis@hotmail.com

Sheldon B Nagelberg    sbnagelberglaw@att.net

John E Martin – FCD    john_martin@fd.org

Adam Tavitas    Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander    jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele    ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst    kre@braje–nelson.com

Bryan M Truitt    bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis    theislaw@aol.com

Robert L Rascia    rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger    pjeffslaw@aol.com

Pablo DeCastro    pdecastro@rascia–decastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA    dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov,
janet.eisenmann@usdoj.gov

David J Nozick – AUSA    David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov,
janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson    attorneyrmj@gmail.com

Bruce R Hegyi – AUSA    bruce.hegyi@usdoj.gov

**2:11–cr–00077–PPS–APR–6 Notice has been delivered by U.S. Mail or other means to:**

**2:11–cr–00077–PPS–APR–7 Notice has been electronically mailed to:**

David E Vandercoy    david.vandercoy@valpo.edu

Arlington J Foley    arlingtonfoley@att.net

Mark A Psimos     psimoslaw@airbaud.net

Gojko Kasich     gkasich@crownlaw.com, gkasich@gmail.com

Scott L King     sking@scottkinggroup.com, dwilliams@scottkinggroup.com

Catherine A Lake     attyclake@sbcglobal.net

James N Thiros     jim@thiros.com, lynn@thiros.com

Thomas W Vanes     tom.vanes@sbcglobal.net, b.lynneadams@yahoo.com

Ihor Alexander Woloshansky     ihorlawyer@hotmail.com

R Brian Woodward     rbwoodward@wbbklaw.com, carolb@wbbklaw.com

John Maksimovich     criminallaw@johnmaksimovich.com

Visvaldis P Kupsis     vpkupsis@hotmail.com

Sheldon B Nagelberg     sbnagelberglaw@att.net

John E Martin – FCD     john_martin@fd.org

Adam Tavitas     Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander     jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele     ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst     kre@braje–nelson.com

Bryan M Truitt     bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis     theislaw@aol.com

Robert L Rascia     rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger     pjeffslaw@aol.com

Pablo DeCastro     pdecastro@rascia–decastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA     dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov,
janet.eisenmann@usdoj.gov

David J Nozick – AUSA     David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov,
janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson     attorneyrmj@gmail.com

Bruce R Hegyi – AUSA     bruce.hegyi@usdoj.gov

1520

**2:11−cr−00077−PPS−APR−7 Notice has been delivered by U.S. Mail or other means to:**

**2:11−cr−00077−PPS−APR−8 Notice has been electronically mailed to:**

David E Vandercoy    david.vandercoy@valpo.edu

Arlington J Foley    arlingtonfoley@att.net

Mark A Psimos    psimoslaw@airbaud.net

Gojko Kasich    gkasich@crownlaw.com, gkasich@gmail.com

Scott L King    sking@scottkinggroup.com, dwilliams@scottkinggroup.com

Catherine A Lake    attyclake@sbcglobal.net

James N Thiros    jim@thiros.com, lynn@thiros.com

Thomas W Vanes    tom.vanes@sbcglobal.net, b.lynneadams@yahoo.com

Ihor Alexander Woloshansky    ihorlawyer@hotmail.com

R Brian Woodward    rbwoodward@wbbklaw.com, carolb@wbbklaw.com

John Maksimovich    criminallaw@johnmaksimovich.com

Visvaldis P Kupsis    vpkupsis@hotmail.com

Sheldon B Nagelberg    sbnagelberglaw@att.net

John E Martin − FCD    john_martin@fd.org

Adam Tavitas    Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander    jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele    ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst    kre@braje−nelson.com

Bryan M Truitt    bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis    theislaw@aol.com

Robert L Rascia    rrascia@rascia−decastro.com, ysierra@rascia−decastro.com

Paul Jeffrey Schlesinger    pjeffslaw@aol.com

Pablo DeCastro    pdecastro@rascia−decastro.com, ysierra@rascia−decastro.com

Dean R Lanter − AUSA    dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA    David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov,
janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson    attorneyrmj@gmail.com

Bruce R Hegyi – AUSA    bruce.hegyi@usdoj.gov

**2:11−cr−00077−PPS−APR−8 Notice has been delivered by U.S. Mail or other means to:**

**2:11−cr−00077−PPS−APR−9 Notice has been electronically mailed to:**

David E Vandercoy    david.vandercoy@valpo.edu

Arlington J Foley    arlingtonfoley@att.net

Mark A Psimos    psimoslaw@airbaud.net

Gojko Kasich    gkasich@crownlaw.com, gkasich@gmail.com

Scott L King    sking@scottkinggroup.com, dwilliams@scottkinggroup.com

Catherine A Lake    attyclake@sbcglobal.net

James N Thiros    jim@thiros.com, lynn@thiros.com

Thomas W Vanes    tom.vanes@sbcglobal.net, b.lynneadams@yahoo.com

Ihor Alexander Woloshansky    ihorlawyer@hotmail.com

R Brian Woodward    rbwoodward@wbbklaw.com, carolb@wbbklaw.com

John Maksimovich    criminallaw@johnmaksimovich.com

Visvaldis P Kupsis    vpkupsis@hotmail.com

Sheldon B Nagelberg    sbnagelberglaw@att.net

John E Martin – FCD    john_martin@fd.org

Adam Tavitas    Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander    jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele    ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst    kre@braje−nelson.com

Bryan M Truitt    bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis    theislaw@aol.com

Robert L Rascia    rrascia@rascia−decastro.com, ysierra@rascia−decastro.com

Paul Jeffrey Schlesinger    pjeffslaw@aol.com

Pablo DeCastro    pdecastro@rascia−decastro.com, ysierra@rascia−decastro.com

Dean R Lanter − AUSA    dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov,
janet.eisenmann@usdoj.gov

David J Nozick − AUSA    David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov,
janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson    attorneyrmj@gmail.com

Bruce R Hegyi − AUSA    bruce.hegyi@usdoj.gov

**2:11−cr−00077−PPS−APR−9 Notice has been delivered by U.S. Mail or other means to:**

**2:11−cr−00077−PPS−APR−10 Notice has been electronically mailed to:**

David E Vandercoy    david.vandercoy@valpo.edu

Arlington J Foley    arlingtonfoley@att.net

Mark A Psimos    psimoslaw@airbaud.net

Gojko Kasich    gkasich@crownlaw.com, gkasich@gmail.com

Scott L King    sking@scottkinggroup.com, dwilliams@scottkinggroup.com

Catherine A Lake    attyclake@sbcglobal.net

James N Thiros    jim@thiros.com, lynn@thiros.com

Thomas W Vanes    tom.vanes@sbcglobal.net, b.lynneadams@yahoo.com

Ihor Alexander Woloshansky    ihorlawyer@hotmail.com

R Brian Woodward    rbwoodward@wbbklaw.com, carolb@wbbklaw.com

John Maksimovich    criminallaw@johnmaksimovich.com

Visvaldis P Kupsis    vpkupsis@hotmail.com

Sheldon B Nagelberg    sbnagelberglaw@att.net

John E Martin − FCD    john_martin@fd.org

Adam Tavitas    Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander    jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele    ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst    kre@braje−nelson.com

Bryan M Truitt    bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis    theislaw@aol.com

Robert L Rascia    rrascia@rascia−decastro.com, ysierra@rascia−decastro.com

Paul Jeffrey Schlesinger    pjeffslaw@aol.com

Pablo DeCastro    pdecastro@rascia−decastro.com, ysierra@rascia−decastro.com

Dean R Lanter − AUSA    dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick − AUSA    David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson    attorneyrmj@gmail.com

Bruce R Hegyi − AUSA    bruce.hegyi@usdoj.gov

**2:11−cr−00077−PPS−APR−10 Notice has been delivered by U.S. Mail or other means to:**

**2:11−cr−00077−PPS−APR−11 Notice has been electronically mailed to:**

David E Vandercoy    david.vandercoy@valpo.edu

Arlington J Foley    arlingtonfoley@att.net

Mark A Psimos    psimoslaw@airbaud.net

Gojko Kasich    gkasich@crownlaw.com, gkasich@gmail.com

Scott L King    sking@scottkinggroup.com, dwilliams@scottkinggroup.com

Catherine A Lake    attyclake@sbcglobal.net

James N Thiros    jim@thiros.com, lynn@thiros.com

Thomas W Vanes    tom.vanes@sbcglobal.net, b.lynneadams@yahoo.com

Ihor Alexander Woloshansky    ihorlawyer@hotmail.com

R Brian Woodward    rbwoodward@wbbklaw.com, carolb@wbbklaw.com

John Maksimovich    criminallaw@johnmaksimovich.com

Visvaldis P Kupsis    vpkupsis@hotmail.com

Sheldon B Nagelberg     sbnagelberglaw@att.net

John E Martin – FCD     john_martin@fd.org

Adam Tavitas     Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander     jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele     ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst     kre@braje–nelson.com

Bryan M Truitt     bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis     theislaw@aol.com

Robert L Rascia     rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger     pjeffslaw@aol.com

Pablo DeCastro     pdecastro@rascia–decastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA     dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov,
janet.eisenmann@usdoj.gov

David J Nozick – AUSA     David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov,
janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson     attorneyrmj@gmail.com

Bruce R Hegyi – AUSA     bruce.hegyi@usdoj.gov

**2:11–cr–00077–PPS–APR–11 Notice has been delivered by U.S. Mail or other means to:**

**2:11–cr–00077–PPS–APR–12 Notice has been electronically mailed to:**

David E Vandercoy     david.vandercoy@valpo.edu

Arlington J Foley     arlingtonfoley@att.net

Mark A Psimos     psimoslaw@airbaud.net

Gojko Kasich     gkasich@crownlaw.com, gkasich@gmail.com

Scott L King     sking@scottkinggroup.com, dwilliams@scottkinggroup.com

Catherine A Lake     attyclake@sbcglobal.net

James N Thiros     jim@thiros.com, lynn@thiros.com

Thomas W Vanes     tom.vanes@sbcglobal.net, b.lynneadams@yahoo.com

Ihor Alexander Woloshansky    ihorlawyer@hotmail.com

R Brian Woodward    rbwoodward@wbbklaw.com, carolb@wbbklaw.com

John Maksimovich    criminallaw@johnmaksimovich.com

Visvaldis P Kupsis    vpkupsis@hotmail.com

Sheldon B Nagelberg    sbnagelberglaw@att.net

John E Martin – FCD    john_martin@fd.org

Adam Tavitas    Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander    jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele    ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst    kre@braje–nelson.com

Bryan M Truitt    bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis    theislaw@aol.com

Robert L Rascia    rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger    pjeffslaw@aol.com

Pablo DeCastro    pdecastro@rascia–decastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA    dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov,
janet.eisenmann@usdoj.gov

David J Nozick – AUSA    David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov,
janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson    attorneyrmj@gmail.com

Bruce R Hegyi – AUSA    bruce.hegyi@usdoj.gov

**2:11–cr–00077–PPS–APR–12 Notice has been delivered by U.S. Mail or other means to:**

**2:11–cr–00077–PPS–APR–13 Notice has been electronically mailed to:**

David E Vandercoy    david.vandercoy@valpo.edu

Arlington J Foley    arlingtonfoley@att.net

Mark A Psimos    psimoslaw@airbaud.net

Gojko Kasich    gkasich@crownlaw.com, gkasich@gmail.com

Scott L King     sking@scottkinggroup.com, dwilliams@scottkinggroup.com

Catherine A Lake     attyclake@sbcglobal.net

James N Thiros     jim@thiros.com, lynn@thiros.com

Thomas W Vanes     tom.vanes@sbcglobal.net, b.lynneadams@yahoo.com

Ihor Alexander Woloshansky     ihorlawyer@hotmail.com

R Brian Woodward     rbwoodward@wbbklaw.com, carolb@wbbklaw.com

John Maksimovich     criminallaw@johnmaksimovich.com

Visvaldis P Kupsis     vpkupsis@hotmail.com

Sheldon B Nagelberg     sbnagelberglaw@att.net

John E Martin – FCD     john_martin@fd.org

Adam Tavitas     Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander     jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele     ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst     kre@braje–nelson.com

Bryan M Truitt     bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis     theislaw@aol.com

Robert L Rascia     rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger     pjeffslaw@aol.com

Pablo DeCastro     pdecastro@rascia–decastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA     dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA     David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson     attorneyrmj@gmail.com

Bruce R Hegyi – AUSA     bruce.hegyi@usdoj.gov

**2:11–cr–00077–PPS–APR–13 Notice has been delivered by U.S. Mail or other means to:**

**2:11–cr–00077–PPS–APR–14 Notice has been electronically mailed to:**

1527

David E Vandercoy     david.vandercoy@valpo.edu

Arlington J Foley     arlingtonfoley@att.net

Mark A Psimos     psimoslaw@airbaud.net

Gojko Kasich     gkasich@crownlaw.com, gkasich@gmail.com

Scott L King     sking@scottkinggroup.com, dwilliams@scottkinggroup.com

Catherine A Lake     attyclake@sbcglobal.net

James N Thiros     jim@thiros.com, lynn@thiros.com

Thomas W Vanes     tom.vanes@sbcglobal.net, b.lynneadams@yahoo.com

Ihor Alexander Woloshansky     ihorlawyer@hotmail.com

R Brian Woodward     rbwoodward@wbbklaw.com, carolb@wbbklaw.com

John Maksimovich     criminallaw@johnmaksimovich.com

Visvaldis P Kupsis     vpkupsis@hotmail.com

Sheldon B Nagelberg     sbnagelberglaw@att.net

John E Martin – FCD     john_martin@fd.org

Adam Tavitas     Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander     jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele     ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst     kre@braje–nelson.com

Bryan M Truitt     bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis     theislaw@aol.com

Robert L Rascia     rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger     pjeffslaw@aol.com

Pablo DeCastro     pdecastro@rascia–decastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA     dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA     David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson    attorneyrmj@gmail.com

Bruce R Hegyi – AUSA    bruce.hegyi@usdoj.gov

**2:11–cr–00077–PPS–APR–14 Notice has been delivered by U.S. Mail or other means to:**

**2:11–cr–00077–PPS–APR–15 Notice has been electronically mailed to:**

David E Vandercoy    david.vandercoy@valpo.edu

Arlington J Foley    arlingtonfoley@att.net

Mark A Psimos    psimoslaw@airbaud.net

Gojko Kasich    gkasich@crownlaw.com, gkasich@gmail.com

Scott L King    sking@scottkinggroup.com, dwilliams@scottkinggroup.com

Catherine A Lake    attyclake@sbcglobal.net

James N Thiros    jim@thiros.com, lynn@thiros.com

Thomas W Vanes    tom.vanes@sbcglobal.net, b.lynneadams@yahoo.com

Ihor Alexander Woloshansky    ihorlawyer@hotmail.com

R Brian Woodward    rbwoodward@wbbklaw.com, carolb@wbbklaw.com

John Maksimovich    criminallaw@johnmaksimovich.com

Visvaldis P Kupsis    vpkupsis@hotmail.com

Sheldon B Nagelberg    sbnagelberglaw@att.net

John E Martin – FCD    john_martin@fd.org

Adam Tavitas    Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander    jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele    ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst    kre@braje–nelson.com

Bryan M Truitt    bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis    theislaw@aol.com

Robert L Rascia    rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger    pjeffslaw@aol.com

Pablo DeCastro    pdecastro@rascia−decastro.com, ysierra@rascia−decastro.com

Dean R Lanter − AUSA    dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick − AUSA    David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson    attorneyrmj@gmail.com

Bruce R Hegyi − AUSA    bruce.hegyi@usdoj.gov

**2:11−cr−00077−PPS−APR−15 Notice has been delivered by U.S. Mail or other means to:**

**2:11−cr−00077−PPS−APR−16 Notice has been electronically mailed to:**

David E Vandercoy    david.vandercoy@valpo.edu

Arlington J Foley    arlingtonfoley@att.net

Mark A Psimos    psimoslaw@airbaud.net

Gojko Kasich    gkasich@crownlaw.com, gkasich@gmail.com

Scott L King    sking@scottkinggroup.com, dwilliams@scottkinggroup.com

Catherine A Lake    attyclake@sbcglobal.net

James N Thiros    jim@thiros.com, lynn@thiros.com

Thomas W Vanes    tom.vanes@sbcglobal.net, b.lynneadams@yahoo.com

Ihor Alexander Woloshansky    ihorlawyer@hotmail.com

R Brian Woodward    rbwoodward@wbbklaw.com, carolb@wbbklaw.com

John Maksimovich    criminallaw@johnmaksimovich.com

Visvaldis P Kupsis    vpkupsis@hotmail.com

Sheldon B Nagelberg    sbnagelberglaw@att.net

John E Martin − FCD    john_martin@fd.org

Adam Tavitas    Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander    jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele    ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst    kre@braje−nelson.com

Bryan M Truitt    bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis    theislaw@aol.com

Robert L Rascia    rrascia@rascia−decastro.com, ysierra@rascia−decastro.com

Paul Jeffrey Schlesinger    pjeffslaw@aol.com

Pablo DeCastro    pdecastro@rascia−decastro.com, ysierra@rascia−decastro.com

Dean R Lanter − AUSA    dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov,
janet.eisenmann@usdoj.gov

David J Nozick − AUSA    David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov,
janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson    attorneyrmj@gmail.com

Bruce R Hegyi − AUSA    bruce.hegyi@usdoj.gov

**2:11−cr−00077−PPS−APR−16 Notice has been delivered by U.S. Mail or other means to:**

**2:11−cr−00077−PPS−APR−17 Notice has been electronically mailed to:**

David E Vandercoy    david.vandercoy@valpo.edu

Arlington J Foley    arlingtonfoley@att.net

Mark A Psimos    psimoslaw@airbaud.net

Gojko Kasich    gkasich@crownlaw.com, gkasich@gmail.com

Scott L King    sking@scottkinggroup.com, dwilliams@scottkinggroup.com

Catherine A Lake    attyclake@sbcglobal.net

James N Thiros    jim@thiros.com, lynn@thiros.com

Thomas W Vanes    tom.vanes@sbcglobal.net, b.lynneadams@yahoo.com

Ihor Alexander Woloshansky    ihorlawyer@hotmail.com

R Brian Woodward    rbwoodward@wbbklaw.com, carolb@wbbklaw.com

John Maksimovich    criminallaw@johnmaksimovich.com

Visvaldis P Kupsis    vpkupsis@hotmail.com

Sheldon B Nagelberg    sbnagelberglaw@att.net

John E Martin − FCD    john_martin@fd.org

Adam Tavitas    Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander    jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele    ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst    kre@braje–nelson.com

Bryan M Truitt    bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis    theislaw@aol.com

Robert L Rascia    rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger    pjeffslaw@aol.com

Pablo DeCastro    pdecastro@rascia–decastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA    dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov,
janet.eisenmann@usdoj.gov

David J Nozick – AUSA    David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov,
janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson    attorneyrmj@gmail.com

Bruce R Hegyi – AUSA    bruce.hegyi@usdoj.gov

**2:11–cr–00077–PPS–APR–17 Notice has been delivered by U.S. Mail or other means to:**

**2:11–cr–00077–PPS–APR–18 Notice has been electronically mailed to:**

David E Vandercoy    david.vandercoy@valpo.edu

Arlington J Foley    arlingtonfoley@att.net

Mark A Psimos    psimoslaw@airbaud.net

Gojko Kasich    gkasich@crownlaw.com, gkasich@gmail.com

Scott L King    sking@scottkinggroup.com, dwilliams@scottkinggroup.com

Catherine A Lake    attyclake@sbcglobal.net

James N Thiros    jim@thiros.com, lynn@thiros.com

Thomas W Vanes    tom.vanes@sbcglobal.net, b.lynneadams@yahoo.com

Ihor Alexander Woloshansky    ihorlawyer@hotmail.com

R Brian Woodward    rbwoodward@wbbklaw.com, carolb@wbbklaw.com

John Maksimovich    criminallaw@johnmaksimovich.com

Visvaldis P Kupsis    vpkupsis@hotmail.com

Sheldon B Nagelberg    sbnagelberglaw@att.net

John E Martin − FCD    john_martin@fd.org

Adam Tavitas    Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander    jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele    ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst    kre@braje−nelson.com

Bryan M Truitt    bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis    theislaw@aol.com

Robert L Rascia    rrascia@rascia−decastro.com, ysierra@rascia−decastro.com

Paul Jeffrey Schlesinger    pjeffslaw@aol.com

Pablo DeCastro    pdecastro@rascia−decastro.com, ysierra@rascia−decastro.com

Dean R Lanter − AUSA    dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov,
janet.eisenmann@usdoj.gov

David J Nozick − AUSA    David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov,
janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson    attorneyrmj@gmail.com

Bruce R Hegyi − AUSA    bruce.hegyi@usdoj.gov

**2:11−cr−00077−PPS−APR−18 Notice has been delivered by U.S. Mail or other means to:**

**2:11−cr−00077−PPS−APR−19 Notice has been electronically mailed to:**

David E Vandercoy    david.vandercoy@valpo.edu

Arlington J Foley    arlingtonfoley@att.net

Mark A Psimos    psimoslaw@airbaud.net

Gojko Kasich    gkasich@crownlaw.com, gkasich@gmail.com

Scott L King    sking@scottkinggroup.com, dwilliams@scottkinggroup.com

Catherine A Lake    attyclake@sbcglobal.net

1533

James N Thiros    jim@thiros.com, lynn@thiros.com

Thomas W Vanes    tom.vanes@sbcglobal.net, b.lynneadams@yahoo.com

Ihor Alexander Woloshansky    ihorlawyer@hotmail.com

R Brian Woodward    rbwoodward@wbbklaw.com, carolb@wbbklaw.com

John Maksimovich    criminallaw@johnmaksimovich.com

Visvaldis P Kupsis    vpkupsis@hotmail.com

Sheldon B Nagelberg    sbnagelberglaw@att.net

John E Martin – FCD    john_martin@fd.org

Adam Tavitas    Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander    jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele    ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst    kre@braje–nelson.com

Bryan M Truitt    bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis    theislaw@aol.com

Robert L Rascia    rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger    pjeffslaw@aol.com

Pablo DeCastro    pdecastro@rascia–decastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA    dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov,
janet.eisenmann@usdoj.gov

David J Nozick – AUSA    David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov,
janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson    attorneyrmj@gmail.com

Bruce R Hegyi – AUSA    bruce.hegyi@usdoj.gov

**2:11–cr–00077–PPS–APR–19 Notice has been delivered by U.S. Mail or other means to:**

**2:11–cr–00077–PPS–APR–20 Notice has been electronically mailed to:**

David E Vandercoy    david.vandercoy@valpo.edu

Arlington J Foley    arlingtonfoley@att.net

Mark A Psimos    psimoslaw@airbaud.net

Gojko Kasich    gkasich@crownlaw.com, gkasich@gmail.com

Scott L King    sking@scottkinggroup.com, dwilliams@scottkinggroup.com

Catherine A Lake    attyclake@sbcglobal.net

James N Thiros    jim@thiros.com, lynn@thiros.com

Thomas W Vanes    tom.vanes@sbcglobal.net, b.lynneadams@yahoo.com

Ihor Alexander Woloshansky    ihorlawyer@hotmail.com

R Brian Woodward    rbwoodward@wbbklaw.com, carolb@wbbklaw.com

John Maksimovich    criminallaw@johnmaksimovich.com

Visvaldis P Kupsis    vpkupsis@hotmail.com

Sheldon B Nagelberg    sbnagelberglaw@att.net

John E Martin – FCD    john_martin@fd.org

Adam Tavitas    Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander    jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele    ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst    kre@braje–nelson.com

Bryan M Truitt    bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis    theislaw@aol.com

Robert L Rascia    rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger    pjeffslaw@aol.com

Pablo DeCastro    pdecastro@rascia–decastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA    dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov,
janet.eisenmann@usdoj.gov

David J Nozick – AUSA    David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov,
janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson    attorneyrmj@gmail.com

Bruce R Hegyi – AUSA    bruce.hegyi@usdoj.gov

**2:11–cr–00077–PPS–APR–20 Notice has been delivered by U.S. Mail or other means to:**

**2:11–cr–00077–PPS–APR–21 Notice has been electronically mailed to:**

David E Vandercoy    david.vandercoy@valpo.edu

Arlington J Foley    arlingtonfoley@att.net

Mark A Psimos    psimoslaw@airbaud.net

Gojko Kasich    gkasich@crownlaw.com, gkasich@gmail.com

Scott L King    sking@scottkinggroup.com, dwilliams@scottkinggroup.com

Catherine A Lake    attyclake@sbcglobal.net

James N Thiros    jim@thiros.com, lynn@thiros.com

Thomas W Vanes    tom.vanes@sbcglobal.net, b.lynneadams@yahoo.com

Ihor Alexander Woloshansky    ihorlawyer@hotmail.com

R Brian Woodward    rbwoodward@wbbklaw.com, carolb@wbbklaw.com

John Maksimovich    criminallaw@johnmaksimovich.com

Visvaldis P Kupsis    vpkupsis@hotmail.com

Sheldon B Nagelberg    sbnagelberglaw@att.net

John E Martin – FCD    john_martin@fd.org

Adam Tavitas    Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander    jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele    ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst    kre@braje–nelson.com

Bryan M Truitt    bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis    theislaw@aol.com

Robert L Rascia    rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger    pjeffslaw@aol.com

Pablo DeCastro    pdecastro@rascia–decastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA    dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov,
janet.eisenmann@usdoj.gov

David J Nozick – AUSA    David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov,
janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson    attorneyrmj@gmail.com

Bruce R Hegyi – AUSA    bruce.hegyi@usdoj.gov

**2:11–cr–00077–PPS–APR–21 Notice has been delivered by U.S. Mail or other means to:**

**2:11–cr–00077–PPS–APR–22 Notice has been electronically mailed to:**

David E Vandercoy    david.vandercoy@valpo.edu

Arlington J Foley    arlingtonfoley@att.net

Mark A Psimos    psimoslaw@airbaud.net

Gojko Kasich    gkasich@crownlaw.com, gkasich@gmail.com

Scott L King    sking@scottkinggroup.com, dwilliams@scottkinggroup.com

Catherine A Lake    attyclake@sbcglobal.net

James N Thiros    jim@thiros.com, lynn@thiros.com

Thomas W Vanes    tom.vanes@sbcglobal.net, b.lynneadams@yahoo.com

Ihor Alexander Woloshansky    ihorlawyer@hotmail.com

R Brian Woodward    rbwoodward@wbbklaw.com, carolb@wbbklaw.com

John Maksimovich    criminallaw@johnmaksimovich.com

Visvaldis P Kupsis    vpkupsis@hotmail.com

Sheldon B Nagelberg    sbnagelberglaw@att.net

John E Martin – FCD    john_martin@fd.org

Adam Tavitas    Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander    jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele    ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst    kre@braje–nelson.com

Bryan M Truitt    bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis    theislaw@aol.com

Robert L Rascia    rrascia@rascia−decastro.com, ysierra@rascia−decastro.com

Paul Jeffrey Schlesinger    pjeffslaw@aol.com

Pablo DeCastro    pdecastro@rascia−decastro.com, ysierra@rascia−decastro.com

Dean R Lanter − AUSA    dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov,
janet.eisenmann@usdoj.gov

David J Nozick − AUSA    David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov,
janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson    attorneyrmj@gmail.com

Bruce R Hegyi − AUSA    bruce.hegyi@usdoj.gov

**2:11−cr−00077−PPS−APR−22 Notice has been delivered by U.S. Mail or other means to:**

**2:11−cr−00077−PPS−APR−23 Notice has been electronically mailed to:**

David E Vandercoy    david.vandercoy@valpo.edu

Arlington J Foley    arlingtonfoley@att.net

Mark A Psimos    psimoslaw@airbaud.net

Gojko Kasich    gkasich@crownlaw.com, gkasich@gmail.com

Scott L King    sking@scottkinggroup.com, dwilliams@scottkinggroup.com

Catherine A Lake    attyclake@sbcglobal.net

James N Thiros    jim@thiros.com, lynn@thiros.com

Thomas W Vanes    tom.vanes@sbcglobal.net, b.lynneadams@yahoo.com

Ihor Alexander Woloshansky    ihorlawyer@hotmail.com

R Brian Woodward    rbwoodward@wbbklaw.com, carolb@wbbklaw.com

John Maksimovich    criminallaw@johnmaksimovich.com

Visvaldis P Kupsis    vpkupsis@hotmail.com

Sheldon B Nagelberg    sbnagelberglaw@att.net

John E Martin − FCD    john_martin@fd.org

Adam Tavitas    Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander    jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele      ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst      kre@braje−nelson.com

Bryan M Truitt      bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis      theislaw@aol.com

Robert L Rascia      rrascia@rascia−decastro.com, ysierra@rascia−decastro.com

Paul Jeffrey Schlesinger      pjeffslaw@aol.com

Pablo DeCastro      pdecastro@rascia−decastro.com, ysierra@rascia−decastro.com

Dean R Lanter − AUSA      dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov,
janet.eisenmann@usdoj.gov

David J Nozick − AUSA      David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov,
janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson      attorneyrmj@gmail.com

Bruce R Hegyi − AUSA      bruce.hegyi@usdoj.gov

**2:11−cr−00077−PPS−APR−23 Notice has been delivered by U.S. Mail or other means to:**

**2:11−cr−00077−PPS−APR−24 Notice has been electronically mailed to:**

David E Vandercoy      david.vandercoy@valpo.edu

Arlington J Foley      arlingtonfoley@att.net

Mark A Psimos      psimoslaw@airbaud.net

Gojko Kasich      gkasich@crownlaw.com, gkasich@gmail.com

Scott L King      sking@scottkinggroup.com, dwilliams@scottkinggroup.com

Catherine A Lake      attyclake@sbcglobal.net

James N Thiros      jim@thiros.com, lynn@thiros.com

Thomas W Vanes      tom.vanes@sbcglobal.net, b.lynneadams@yahoo.com

Ihor Alexander Woloshansky      ihorlawyer@hotmail.com

R Brian Woodward      rbwoodward@wbbklaw.com, carolb@wbbklaw.com

John Maksimovich      criminallaw@johnmaksimovich.com

Visvaldis P Kupsis      vpkupsis@hotmail.com

Sheldon B Nagelberg    sbnagelberglaw@att.net

John E Martin – FCD    john_martin@fd.org

Adam Tavitas    Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander    jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele    ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst    kre@braje–nelson.com

Bryan M Truitt    bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis    theislaw@aol.com

Robert L Rascia    rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger    pjeffslaw@aol.com

Pablo DeCastro    pdecastro@rascia–decastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA    dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov,
janet.eisenmann@usdoj.gov

David J Nozick – AUSA    David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov,
janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson    attorneyrmj@gmail.com

Bruce R Hegyi – AUSA    bruce.hegyi@usdoj.gov

**2:11–cr–00077–PPS–APR–24 Notice has been delivered by U.S. Mail or other means to:**

```
MIME-Version:1.0
From:CMECFinnd@innd.uscourts.gov
To:CMECFinnd@localhost.localdomain
Bcc:
--Case Participants: Pablo DeCastro (pdecastro@rascia-decastro.com,
ysierra@rascia-decastro.com), Kurt R Earnst (kre@braje-nelson.com), Arlington J Foley
(arlingtonfoley@att.net), Jack Friedlander (jack@jackfriedlander.com,
office@jackfriedlander.com), Bruce R Hegyi - AUSA (bruce.hegyi@usdoj.gov), Roxanne Mendez
Johnson (attorneyrmj@gmail.com), Gojko Kasich (gkasich@crownlaw.com, gkasich@gmail.com),
Scott L King (dwilliams@scottkinggroup.com, sking@scottkinggroup.com), Visvaldis P Kupsis
(vpkupsis@hotmail.com), Catherine A Lake (attyclake@sbcglobal.net), Dean R Lanter - AUSA
(dean.lanter@usdoj.gov, janet.eisenmann@usdoj.gov, usainn.ecfcivil@usdoj.gov), John
Maksimovich (criminallaw@johnmaksimovich.com), John E Martin - FCD (john_martin@fd.org),
Sheldon B Nagelberg (sbnagelberglaw@att.net), David J Nozick - AUSA
(david.nozick@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov,
susan.devries@usdoj.gov, usainn.ecfcivil@usdoj.gov), Mark A Psimos
(psimoslaw@airbaud.net), Robert L Rascia (rrascia@rascia-decastro.com,
ysierra@rascia-decastro.com), Stephen Edward Scheele (pkd@gk4law.com, ses@gk4law.com),
Paul Jeffrey Schlesinger (pjeffslaw@aol.com), Adam Tavitas (adtavitas@aol.com,
b.lynneadams@yahoo.com), John T Theis (theislaw@aol.com), James N Thiros (jim@thiros.com,
lynn@thiros.com), Bryan M Truitt (bryan@tblawyers.com, sherrie@tblawyers.com), David E
Vandercoy (david.vandercoy@valpo.edu), Thomas W Vanes (b.lynneadams@yahoo.com,
tom.vanes@sbcglobal.net), Ihor Alexander Woloshansky (ihorlawyer@hotmail.com), R Brian
Woodward (carolb@wbbklaw.com, rbwoodward@wbbklaw.com), Magistrate Judge Andrew P Rodovich
(rodovich_chambers@innd.uscourts.gov), Chief Judge Philip P Simon
(denise_woodside@innd.uscourts.gov, jacob_hamann@innd.uscourts.gov,
lauren_schwartz@innd.uscourts.gov, mira_serrill-robins@innd.uscourts.gov,
noel_collins@innd.uscourts.gov, philip_simon@innd.uscourts.gov)
--Non Case Participants: Matthew D Soliday (office@matthewsolidaylaw.com),
Probation/Pretrial Services (innpml_cmecf@innd.uscourts.gov), U S Marshal
(inn.docket-fw@usdoj.gov, inn.docket-sb@usdoj.gov, usms.27@usdoj.gov)
--No Notice Sent:

Message-Id:2568361@innd.uscourts.gov
Subject:Activity in Case 2:11-cr-00077-PPS-APR United States of America v. Briseno et al
Terminate Deadlines and Hearings
Content-Type: text/html
```

### U.S. District Court Northern District of Indiana [LIVE]

### USDC Northern Indiana

## Notice of Electronic Filing

The following transaction was entered on 7/11/2014 at 12:08 PM EST and filed on 7/11/2014

**Case Name:**    United States of America v. Briseno et al

**Case Number:**    2:11-cr-00077-PPS-APR

**Filer:**

**Document Number:**  No document attached

**Docket Text:**
 **Terminate PAST Deadlines and Hearings as to all dfts. NOTE: no current deadlines or hearings were terminated. (nac)**

**2:11-cr-00077-PPS-APR-1 Notice has been electronically mailed to:**

David E Vandercoy    david.vandercoy@valpo.edu

Arlington J Foley    arlingtonfoley@att.net

Mark A Psimos    psimoslaw@airbaud.net

Gojko Kasich    gkasich@crownlaw.com, gkasich@gmail.com

Scott L King    sking@scottkinggroup.com, dwilliams@scottkinggroup.com

Catherine A Lake    attyclake@sbcglobal.net

James N Thiros    jim@thiros.com, lynn@thiros.com

Thomas W Vanes    tom.vanes@sbcglobal.net, b.lynneadams@yahoo.com

Ihor Alexander Woloshansky    ihorlawyer@hotmail.com

R Brian Woodward    rbwoodward@wbbklaw.com, carolb@wbbklaw.com

John Maksimovich    criminallaw@johnmaksimovich.com

Visvaldis P Kupsis    vpkupsis@hotmail.com

Sheldon B Nagelberg    sbnagelberglaw@att.net

John E Martin – FCD    john_martin@fd.org

Adam Tavitas    Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander    jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele    ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst    kre@braje–nelson.com

Bryan M Truitt    bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis    theislaw@aol.com

Robert L Rascia    rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger    pjeffslaw@aol.com

Pablo DeCastro    pdecastro@rascia–decastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA    dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov,
janet.eisenmann@usdoj.gov

David J Nozick – AUSA    David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov,
janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson    attorneyrmj@gmail.com

Bruce R Hegyi – AUSA    bruce.hegyi@usdoj.gov

**2:11–cr–00077–PPS–APR–1 Notice has been delivered by U.S. Mail or other means to:**

**2:11–cr–00077–PPS–APR–2 Notice has been electronically mailed to:**

David E Vandercoy    david.vandercoy@valpo.edu

Arlington J Foley    arlingtonfoley@att.net

Mark A Psimos    psimoslaw@airbaud.net

Gojko Kasich    gkasich@crownlaw.com, gkasich@gmail.com

Scott L King    sking@scottkinggroup.com, dwilliams@scottkinggroup.com

Catherine A Lake    attyclake@sbcglobal.net

James N Thiros    jim@thiros.com, lynn@thiros.com

Thomas W Vanes    tom.vanes@sbcglobal.net, b.lynneadams@yahoo.com

Ihor Alexander Woloshansky    ihorlawyer@hotmail.com

R Brian Woodward    rbwoodward@wbbklaw.com, carolb@wbbklaw.com

John Maksimovich    criminallaw@johnmaksimovich.com

Visvaldis P Kupsis    vpkupsis@hotmail.com

Sheldon B Nagelberg    sbnagelberglaw@att.net

John E Martin – FCD    john_martin@fd.org

Adam Tavitas    Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander    jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele    ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst    kre@braje–nelson.com

Bryan M Truitt    bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis    theislaw@aol.com

Robert L Rascia    rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger    pjeffslaw@aol.com

Pablo DeCastro    pdecastro@rascia−decastro.com, ysierra@rascia−decastro.com

Dean R Lanter − AUSA    dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick − AUSA    David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson    attorneyrmj@gmail.com

Bruce R Hegyi − AUSA    bruce.hegyi@usdoj.gov

**2:11−cr−00077−PPS−APR−2 Notice has been delivered by U.S. Mail or other means to:**

**2:11−cr−00077−PPS−APR−3 Notice has been electronically mailed to:**

David E Vandercoy    david.vandercoy@valpo.edu

Arlington J Foley    arlingtonfoley@att.net

Mark A Psimos    psimoslaw@airbaud.net

Gojko Kasich    gkasich@crownlaw.com, gkasich@gmail.com

Scott L King    sking@scottkinggroup.com, dwilliams@scottkinggroup.com

Catherine A Lake    attyclake@sbcglobal.net

James N Thiros    jim@thiros.com, lynn@thiros.com

Thomas W Vanes    tom.vanes@sbcglobal.net, b.lynneadams@yahoo.com

Ihor Alexander Woloshansky    ihorlawyer@hotmail.com

R Brian Woodward    rbwoodward@wbbklaw.com, carolb@wbbklaw.com

John Maksimovich    criminallaw@johnmaksimovich.com

Visvaldis P Kupsis    vpkupsis@hotmail.com

Sheldon B Nagelberg    sbnagelberglaw@att.net

John E Martin − FCD    john_martin@fd.org

Adam Tavitas    Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander    jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele    ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst    kre@braje−nelson.com

Bryan M Truitt    bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis    theislaw@aol.com

Robert L Rascia    rrascia@rascia−decastro.com, ysierra@rascia−decastro.com

Paul Jeffrey Schlesinger    pjeffslaw@aol.com

Pablo DeCastro    pdecastro@rascia−decastro.com, ysierra@rascia−decastro.com

Dean R Lanter − AUSA    dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov,
janet.eisenmann@usdoj.gov

David J Nozick − AUSA    David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov,
janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson    attorneyrmj@gmail.com

Bruce R Hegyi − AUSA    bruce.hegyi@usdoj.gov

**2:11−cr−00077−PPS−APR−3 Notice has been delivered by U.S. Mail or other means to:**

**2:11−cr−00077−PPS−APR−4 Notice has been electronically mailed to:**

David E Vandercoy    david.vandercoy@valpo.edu

Arlington J Foley    arlingtonfoley@att.net

Mark A Psimos    psimoslaw@airbaud.net

Gojko Kasich    gkasich@crownlaw.com, gkasich@gmail.com

Scott L King    sking@scottkinggroup.com, dwilliams@scottkinggroup.com

Catherine A Lake    attyclake@sbcglobal.net

James N Thiros    jim@thiros.com, lynn@thiros.com

Thomas W Vanes    tom.vanes@sbcglobal.net, b.lynneadams@yahoo.com

Ihor Alexander Woloshansky    ihorlawyer@hotmail.com

R Brian Woodward    rbwoodward@wbbklaw.com, carolb@wbbklaw.com

John Maksimovich    criminallaw@johnmaksimovich.com

Visvaldis P Kupsis    vpkupsis@hotmail.com

Sheldon B Nagelberg    sbnagelberglaw@att.net

John E Martin − FCD    john_martin@fd.org

Adam Tavitas    Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander    jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele    ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst    kre@braje−nelson.com

Bryan M Truitt    bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis    theislaw@aol.com

Robert L Rascia    rrascia@rascia−decastro.com, ysierra@rascia−decastro.com

Paul Jeffrey Schlesinger    pjeffslaw@aol.com

Pablo DeCastro    pdecastro@rascia−decastro.com, ysierra@rascia−decastro.com

Dean R Lanter − AUSA    dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov,
janet.eisenmann@usdoj.gov

David J Nozick − AUSA    David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov,
janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson    attorneyrmj@gmail.com

Bruce R Hegyi − AUSA    bruce.hegyi@usdoj.gov

**2:11−cr−00077−PPS−APR−4 Notice has been delivered by U.S. Mail or other means to:**

**2:11−cr−00077−PPS−APR−5 Notice has been electronically mailed to:**

David E Vandercoy    david.vandercoy@valpo.edu

Arlington J Foley    arlingtonfoley@att.net

Mark A Psimos    psimoslaw@airbaud.net

Gojko Kasich    gkasich@crownlaw.com, gkasich@gmail.com

Scott L King    sking@scottkinggroup.com, dwilliams@scottkinggroup.com

Catherine A Lake    attyclake@sbcglobal.net

James N Thiros    jim@thiros.com, lynn@thiros.com

Thomas W Vanes    tom.vanes@sbcglobal.net, b.lynneadams@yahoo.com

Ihor Alexander Woloshansky    ihorlawyer@hotmail.com

R Brian Woodward    rbwoodward@wbbklaw.com, carolb@wbbklaw.com

John Maksimovich    criminallaw@johnmaksimovich.com

Visvaldis P Kupsis    vpkupsis@hotmail.com

Sheldon B Nagelberg    sbnagelberglaw@att.net

John E Martin – FCD    john_martin@fd.org

Adam Tavitas    Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander    jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele    ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst    kre@braje–nelson.com

Bryan M Truitt    bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis    theislaw@aol.com

Robert L Rascia    rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger    pjeffslaw@aol.com

Pablo DeCastro    pdecastro@rascia–decastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA    dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov,
janet.eisenmann@usdoj.gov

David J Nozick – AUSA    David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov,
janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson    attorneyrmj@gmail.com

Bruce R Hegyi – AUSA    bruce.hegyi@usdoj.gov

**2:11–cr–00077–PPS–APR–5 Notice has been delivered by U.S. Mail or other means to:**

**2:11–cr–00077–PPS–APR–6 Notice has been electronically mailed to:**

David E Vandercoy    david.vandercoy@valpo.edu

Arlington J Foley    arlingtonfoley@att.net

Mark A Psimos    psimoslaw@airbaud.net

Gojko Kasich    gkasich@crownlaw.com, gkasich@gmail.com

Scott L King    sking@scottkinggroup.com, dwilliams@scottkinggroup.com

Catherine A Lake    attyclake@sbcglobal.net

James N Thiros    jim@thiros.com, lynn@thiros.com

Thomas W Vanes    tom.vanes@sbcglobal.net, b.lynneadams@yahoo.com

Ihor Alexander Woloshansky    ihorlawyer@hotmail.com

R Brian Woodward    rbwoodward@wbbklaw.com, carolb@wbbklaw.com

John Maksimovich    criminallaw@johnmaksimovich.com

Visvaldis P Kupsis    vpkupsis@hotmail.com

Sheldon B Nagelberg    sbnagelberglaw@att.net

John E Martin – FCD    john_martin@fd.org

Adam Tavitas    Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander    jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele    ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst    kre@braje–nelson.com

Bryan M Truitt    bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis    theislaw@aol.com

Robert L Rascia    rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger    pjeffslaw@aol.com

Pablo DeCastro    pdecastro@rascia–decastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA    dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov,
janet.eisenmann@usdoj.gov

David J Nozick – AUSA    David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov,
janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson    attorneyrmj@gmail.com

Bruce R Hegyi – AUSA    bruce.hegyi@usdoj.gov

**2:11–cr–00077–PPS–APR–6 Notice has been delivered by U.S. Mail or other means to:**

**2:11–cr–00077–PPS–APR–7 Notice has been electronically mailed to:**

David E Vandercoy    david.vandercoy@valpo.edu

Arlington J Foley    arlingtonfoley@att.net

1548

Mark A Psimos    psimoslaw@airbaud.net

Gojko Kasich    gkasich@crownlaw.com, gkasich@gmail.com

Scott L King    sking@scottkinggroup.com, dwilliams@scottkinggroup.com

Catherine A Lake    attyclake@sbcglobal.net

James N Thiros    jim@thiros.com, lynn@thiros.com

Thomas W Vanes    tom.vanes@sbcglobal.net, b.lynneadams@yahoo.com

Ihor Alexander Woloshansky    ihorlawyer@hotmail.com

R Brian Woodward    rbwoodward@wbbklaw.com, carolb@wbbklaw.com

John Maksimovich    criminallaw@johnmaksimovich.com

Visvaldis P Kupsis    vpkupsis@hotmail.com

Sheldon B Nagelberg    sbnagelberglaw@att.net

John E Martin – FCD    john_martin@fd.org

Adam Tavitas    Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander    jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele    ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst    kre@braje–nelson.com

Bryan M Truitt    bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis    theislaw@aol.com

Robert L Rascia    rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger    pjeffslaw@aol.com

Pablo DeCastro    pdecastro@rascia–decastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA    dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov,
janet.eisenmann@usdoj.gov

David J Nozick – AUSA    David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov,
janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson    attorneyrmj@gmail.com

Bruce R Hegyi – AUSA    bruce.hegyi@usdoj.gov

**2:11−cr−00077−PPS−APR−7 Notice has been delivered by U.S. Mail or other means to:**

**2:11−cr−00077−PPS−APR−8 Notice has been electronically mailed to:**

David E Vandercoy    david.vandercoy@valpo.edu

Arlington J Foley    arlingtonfoley@att.net

Mark A Psimos    psimoslaw@airbaud.net

Gojko Kasich    gkasich@crownlaw.com, gkasich@gmail.com

Scott L King    sking@scottkinggroup.com, dwilliams@scottkinggroup.com

Catherine A Lake    attyclake@sbcglobal.net

James N Thiros    jim@thiros.com, lynn@thiros.com

Thomas W Vanes    tom.vanes@sbcglobal.net, b.lynneadams@yahoo.com

Ihor Alexander Woloshansky    ihorlawyer@hotmail.com

R Brian Woodward    rbwoodward@wbbklaw.com, carolb@wbbklaw.com

John Maksimovich    criminallaw@johnmaksimovich.com

Visvaldis P Kupsis    vpkupsis@hotmail.com

Sheldon B Nagelberg    sbnagelberglaw@att.net

John E Martin – FCD    john_martin@fd.org

Adam Tavitas    Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander    jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele    ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst    kre@braje−nelson.com

Bryan M Truitt    bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis    theislaw@aol.com

Robert L Rascia    rrascia@rascia−decastro.com, ysierra@rascia−decastro.com

Paul Jeffrey Schlesinger    pjeffslaw@aol.com

Pablo DeCastro    pdecastro@rascia−decastro.com, ysierra@rascia−decastro.com

Dean R Lanter – AUSA    dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov,
janet.eisenmann@usdoj.gov

David J Nozick – AUSA    David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson    attorneyrmj@gmail.com

Bruce R Hegyi – AUSA    bruce.hegyi@usdoj.gov

**2:11–cr–00077–PPS–APR–8 Notice has been delivered by U.S. Mail or other means to:**

**2:11–cr–00077–PPS–APR–9 Notice has been electronically mailed to:**

David E Vandercoy    david.vandercoy@valpo.edu

Arlington J Foley    arlingtonfoley@att.net

Mark A Psimos    psimoslaw@airbaud.net

Gojko Kasich    gkasich@crownlaw.com, gkasich@gmail.com

Scott L King    sking@scottkinggroup.com, dwilliams@scottkinggroup.com

Catherine A Lake    attyclake@sbcglobal.net

James N Thiros    jim@thiros.com, lynn@thiros.com

Thomas W Vanes    tom.vanes@sbcglobal.net, b.lynneadams@yahoo.com

Ihor Alexander Woloshansky    ihorlawyer@hotmail.com

R Brian Woodward    rbwoodward@wbbklaw.com, carolb@wbbklaw.com

John Maksimovich    criminallaw@johnmaksimovich.com

Visvaldis P Kupsis    vpkupsis@hotmail.com

Sheldon B Nagelberg    sbnagelberglaw@att.net

John E Martin – FCD    john_martin@fd.org

Adam Tavitas    Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander    jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele    ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst    kre@braje–nelson.com

Bryan M Truitt    bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis    theislaw@aol.com

Robert L Rascia    rrascia@rascia−decastro.com, ysierra@rascia−decastro.com

Paul Jeffrey Schlesinger    pjeffslaw@aol.com

Pablo DeCastro    pdecastro@rascia−decastro.com, ysierra@rascia−decastro.com

Dean R Lanter − AUSA    dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov,
janet.eisenmann@usdoj.gov

David J Nozick − AUSA    David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov,
janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson    attorneyrmj@gmail.com

Bruce R Hegyi − AUSA    bruce.hegyi@usdoj.gov

**2:11−cr−00077−PPS−APR−9 Notice has been delivered by U.S. Mail or other means to:**

**2:11−cr−00077−PPS−APR−10 Notice has been electronically mailed to:**

David E Vandercoy    david.vandercoy@valpo.edu

Arlington J Foley    arlingtonfoley@att.net

Mark A Psimos    psimoslaw@airbaud.net

Gojko Kasich    gkasich@crownlaw.com, gkasich@gmail.com

Scott L King    sking@scottkinggroup.com, dwilliams@scottkinggroup.com

Catherine A Lake    attyclake@sbcglobal.net

James N Thiros    jim@thiros.com, lynn@thiros.com

Thomas W Vanes    tom.vanes@sbcglobal.net, b.lynneadams@yahoo.com

Ihor Alexander Woloshansky    ihorlawyer@hotmail.com

R Brian Woodward    rbwoodward@wbbklaw.com, carolb@wbbklaw.com

John Maksimovich    criminallaw@johnmaksimovich.com

Visvaldis P Kupsis    vpkupsis@hotmail.com

Sheldon B Nagelberg    sbnagelberglaw@att.net

John E Martin − FCD    john_martin@fd.org

Adam Tavitas    Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander    jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele    ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst    kre@braje−nelson.com

Bryan M Truitt    bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis    theislaw@aol.com

Robert L Rascia    rrascia@rascia−decastro.com, ysierra@rascia−decastro.com

Paul Jeffrey Schlesinger    pjeffslaw@aol.com

Pablo DeCastro    pdecastro@rascia−decastro.com, ysierra@rascia−decastro.com

Dean R Lanter − AUSA    dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick − AUSA    David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson    attorneyrmj@gmail.com

Bruce R Hegyi − AUSA    bruce.hegyi@usdoj.gov

**2:11−cr−00077−PPS−APR−10 Notice has been delivered by U.S. Mail or other means to:**

**2:11−cr−00077−PPS−APR−11 Notice has been electronically mailed to:**

David E Vandercoy    david.vandercoy@valpo.edu

Arlington J Foley    arlingtonfoley@att.net

Mark A Psimos    psimoslaw@airbaud.net

Gojko Kasich    gkasich@crownlaw.com, gkasich@gmail.com

Scott L King    sking@scottkinggroup.com, dwilliams@scottkinggroup.com

Catherine A Lake    attyclake@sbcglobal.net

James N Thiros    jim@thiros.com, lynn@thiros.com

Thomas W Vanes    tom.vanes@sbcglobal.net, b.lynneadams@yahoo.com

Ihor Alexander Woloshansky    ihorlawyer@hotmail.com

R Brian Woodward    rbwoodward@wbbklaw.com, carolb@wbbklaw.com

John Maksimovich    criminallaw@johnmaksimovich.com

Visvaldis P Kupsis    vpkupsis@hotmail.com

1553

Sheldon B Nagelberg    sbnagelberglaw@att.net

John E Martin – FCD    john_martin@fd.org

Adam Tavitas    Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander    jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele    ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst    kre@braje–nelson.com

Bryan M Truitt    bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis    theislaw@aol.com

Robert L Rascia    rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger    pjeffslaw@aol.com

Pablo DeCastro    pdecastro@rascia–decastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA    dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA    David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson    attorneyrmj@gmail.com

Bruce R Hegyi – AUSA    bruce.hegyi@usdoj.gov

**2:11–cr–00077–PPS–APR–11 Notice has been delivered by U.S. Mail or other means to:**

**2:11–cr–00077–PPS–APR–12 Notice has been electronically mailed to:**

David E Vandercoy    david.vandercoy@valpo.edu

Arlington J Foley    arlingtonfoley@att.net

Mark A Psimos    psimoslaw@airbaud.net

Gojko Kasich    gkasich@crownlaw.com, gkasich@gmail.com

Scott L King    sking@scottkinggroup.com, dwilliams@scottkinggroup.com

Catherine A Lake    attyclake@sbcglobal.net

James N Thiros    jim@thiros.com, lynn@thiros.com

Thomas W Vanes    tom.vanes@sbcglobal.net, b.lynneadams@yahoo.com

Ihor Alexander Woloshansky     ihorlawyer@hotmail.com

R Brian Woodward     rbwoodward@wbbklaw.com, carolb@wbbklaw.com

John Maksimovich     criminallaw@johnmaksimovich.com

Visvaldis P Kupsis     vpkupsis@hotmail.com

Sheldon B Nagelberg     sbnagelberglaw@att.net

John E Martin – FCD     john_martin@fd.org

Adam Tavitas     Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander     jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele     ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst     kre@braje–nelson.com

Bryan M Truitt     bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis     theislaw@aol.com

Robert L Rascia     rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger     pjeffslaw@aol.com

Pablo DeCastro     pdecastro@rascia–decastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA     dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA     David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson     attorneyrmj@gmail.com

Bruce R Hegyi – AUSA     bruce.hegyi@usdoj.gov

**2:11–cr–00077–PPS–APR–12 Notice has been delivered by U.S. Mail or other means to:**

**2:11–cr–00077–PPS–APR–13 Notice has been electronically mailed to:**

David E Vandercoy     david.vandercoy@valpo.edu

Arlington J Foley     arlingtonfoley@att.net

Mark A Psimos     psimoslaw@airbaud.net

Gojko Kasich     gkasich@crownlaw.com, gkasich@gmail.com

Scott L King      sking@scottkinggroup.com, dwilliams@scottkinggroup.com

Catherine A Lake      attyclake@sbcglobal.net

James N Thiros      jim@thiros.com, lynn@thiros.com

Thomas W Vanes      tom.vanes@sbcglobal.net, b.lynneadams@yahoo.com

Ihor Alexander Woloshansky      ihorlawyer@hotmail.com

R Brian Woodward      rbwoodward@wbbklaw.com, carolb@wbbklaw.com

John Maksimovich      criminallaw@johnmaksimovich.com

Visvaldis P Kupsis      vpkupsis@hotmail.com

Sheldon B Nagelberg      sbnagelberglaw@att.net

John E Martin – FCD      john_martin@fd.org

Adam Tavitas      Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander      jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele      ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst      kre@braje–nelson.com

Bryan M Truitt      bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis      theislaw@aol.com

Robert L Rascia      rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger      pjeffslaw@aol.com

Pablo DeCastro      pdecastro@rascia–decastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA      dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov,
janet.eisenmann@usdoj.gov

David J Nozick – AUSA      David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov,
janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson      attorneyrmj@gmail.com

Bruce R Hegyi – AUSA      bruce.hegyi@usdoj.gov

**2:11–cr–00077–PPS–APR–13 Notice has been delivered by U.S. Mail or other means to:**

**2:11–cr–00077–PPS–APR–14 Notice has been electronically mailed to:**

David E Vandercoy    david.vandercoy@valpo.edu

Arlington J Foley    arlingtonfoley@att.net

Mark A Psimos    psimoslaw@airbaud.net

Gojko Kasich    gkasich@crownlaw.com, gkasich@gmail.com

Scott L King    sking@scottkinggroup.com, dwilliams@scottkinggroup.com

Catherine A Lake    attyclake@sbcglobal.net

James N Thiros    jim@thiros.com, lynn@thiros.com

Thomas W Vanes    tom.vanes@sbcglobal.net, b.lynneadams@yahoo.com

Ihor Alexander Woloshansky    ihorlawyer@hotmail.com

R Brian Woodward    rbwoodward@wbbklaw.com, carolb@wbbklaw.com

John Maksimovich    criminallaw@johnmaksimovich.com

Visvaldis P Kupsis    vpkupsis@hotmail.com

Sheldon B Nagelberg    sbnagelberglaw@att.net

John E Martin – FCD    john_martin@fd.org

Adam Tavitas    Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander    jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele    ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst    kre@braje–nelson.com

Bryan M Truitt    bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis    theislaw@aol.com

Robert L Rascia    rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger    pjeffslaw@aol.com

Pablo DeCastro    pdecastro@rascia–decastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA    dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov,
janet.eisenmann@usdoj.gov

David J Nozick – AUSA    David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov,
janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson    attorneyrmj@gmail.com

Bruce R Hegyi – AUSA    bruce.hegyi@usdoj.gov

**2:11–cr–00077–PPS–APR–14 Notice has been delivered by U.S. Mail or other means to:**

**2:11–cr–00077–PPS–APR–15 Notice has been electronically mailed to:**

David E Vandercoy    david.vandercoy@valpo.edu

Arlington J Foley    arlingtonfoley@att.net

Mark A Psimos    psimoslaw@airbaud.net

Gojko Kasich    gkasich@crownlaw.com, gkasich@gmail.com

Scott L King    sking@scottkinggroup.com, dwilliams@scottkinggroup.com

Catherine A Lake    attyclake@sbcglobal.net

James N Thiros    jim@thiros.com, lynn@thiros.com

Thomas W Vanes    tom.vanes@sbcglobal.net, b.lynneadams@yahoo.com

Ihor Alexander Woloshansky    ihorlawyer@hotmail.com

R Brian Woodward    rbwoodward@wbbklaw.com, carolb@wbbklaw.com

John Maksimovich    criminallaw@johnmaksimovich.com

Visvaldis P Kupsis    vpkupsis@hotmail.com

Sheldon B Nagelberg    sbnagelberglaw@att.net

John E Martin – FCD    john_martin@fd.org

Adam Tavitas    Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander    jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele    ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst    kre@braje–nelson.com

Bryan M Truitt    bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis    theislaw@aol.com

Robert L Rascia    rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger    pjeffslaw@aol.com

Pablo DeCastro    pdecastro@rascia–decastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA    dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov,
janet.eisenmann@usdoj.gov

David J Nozick – AUSA    David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov,
janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson    attorneyrmj@gmail.com

Bruce R Hegyi – AUSA    bruce.hegyi@usdoj.gov

**2:11–cr–00077–PPS–APR–15 Notice has been delivered by U.S. Mail or other means to:**

**2:11–cr–00077–PPS–APR–16 Notice has been electronically mailed to:**

David E Vandercoy    david.vandercoy@valpo.edu

Arlington J Foley    arlingtonfoley@att.net

Mark A Psimos    psimoslaw@airbaud.net

Gojko Kasich    gkasich@crownlaw.com, gkasich@gmail.com

Scott L King    sking@scottkinggroup.com, dwilliams@scottkinggroup.com

Catherine A Lake    attyclake@sbcglobal.net

James N Thiros    jim@thiros.com, lynn@thiros.com

Thomas W Vanes    tom.vanes@sbcglobal.net, b.lynneadams@yahoo.com

Ihor Alexander Woloshansky    ihorlawyer@hotmail.com

R Brian Woodward    rbwoodward@wbbklaw.com, carolb@wbbklaw.com

John Maksimovich    criminallaw@johnmaksimovich.com

Visvaldis P Kupsis    vpkupsis@hotmail.com

Sheldon B Nagelberg    sbnagelberglaw@att.net

John E Martin – FCD    john_martin@fd.org

Adam Tavitas    Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander    jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele    ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst    kre@braje–nelson.com

1559

Bryan M Truitt    bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis    theislaw@aol.com

Robert L Rascia    rrascia@rascia−decastro.com, ysierra@rascia−decastro.com

Paul Jeffrey Schlesinger    pjeffslaw@aol.com

Pablo DeCastro    pdecastro@rascia−decastro.com, ysierra@rascia−decastro.com

Dean R Lanter − AUSA    dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick − AUSA    David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson    attorneyrmj@gmail.com

Bruce R Hegyi − AUSA    bruce.hegyi@usdoj.gov

**2:11−cr−00077−PPS−APR−16 Notice has been delivered by U.S. Mail or other means to:**

**2:11−cr−00077−PPS−APR−17 Notice has been electronically mailed to:**

David E Vandercoy    david.vandercoy@valpo.edu

Arlington J Foley    arlingtonfoley@att.net

Mark A Psimos    psimoslaw@airbaud.net

Gojko Kasich    gkasich@crownlaw.com, gkasich@gmail.com

Scott L King    sking@scottkinggroup.com, dwilliams@scottkinggroup.com

Catherine A Lake    attyclake@sbcglobal.net

James N Thiros    jim@thiros.com, lynn@thiros.com

Thomas W Vanes    tom.vanes@sbcglobal.net, b.lynneadams@yahoo.com

Ihor Alexander Woloshansky    ihorlawyer@hotmail.com

R Brian Woodward    rbwoodward@wbbklaw.com, carolb@wbbklaw.com

John Maksimovich    criminallaw@johnmaksimovich.com

Visvaldis P Kupsis    vpkupsis@hotmail.com

Sheldon B Nagelberg    sbnagelberglaw@att.net

John E Martin − FCD    john_martin@fd.org

Adam Tavitas    Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander    jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele    ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst    kre@braje−nelson.com

Bryan M Truitt    bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis    theislaw@aol.com

Robert L Rascia    rrascia@rascia−decastro.com, ysierra@rascia−decastro.com

Paul Jeffrey Schlesinger    pjeffslaw@aol.com

Pablo DeCastro    pdecastro@rascia−decastro.com, ysierra@rascia−decastro.com

Dean R Lanter − AUSA    dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov,
janet.eisenmann@usdoj.gov

David J Nozick − AUSA    David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov,
janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson    attorneyrmj@gmail.com

Bruce R Hegyi − AUSA    bruce.hegyi@usdoj.gov

**2:11−cr−00077−PPS−APR−17 Notice has been delivered by U.S. Mail or other means to:**

**2:11−cr−00077−PPS−APR−18 Notice has been electronically mailed to:**

David E Vandercoy    david.vandercoy@valpo.edu

Arlington J Foley    arlingtonfoley@att.net

Mark A Psimos    psimoslaw@airbaud.net

Gojko Kasich    gkasich@crownlaw.com, gkasich@gmail.com

Scott L King    sking@scottkinggroup.com, dwilliams@scottkinggroup.com

Catherine A Lake    attyclake@sbcglobal.net

James N Thiros    jim@thiros.com, lynn@thiros.com

Thomas W Vanes    tom.vanes@sbcglobal.net, b.lynneadams@yahoo.com

Ihor Alexander Woloshansky    ihorlawyer@hotmail.com

R Brian Woodward    rbwoodward@wbbklaw.com, carolb@wbbklaw.com

John Maksimovich    criminallaw@johnmaksimovich.com

Visvaldis P Kupsis    vpkupsis@hotmail.com

Sheldon B Nagelberg    sbnagelberglaw@att.net

John E Martin − FCD    john_martin@fd.org

Adam Tavitas    Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander    jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele    ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst    kre@braje−nelson.com

Bryan M Truitt    bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis    theislaw@aol.com

Robert L Rascia    rrascia@rascia−decastro.com, ysierra@rascia−decastro.com

Paul Jeffrey Schlesinger    pjeffslaw@aol.com

Pablo DeCastro    pdecastro@rascia−decastro.com, ysierra@rascia−decastro.com

Dean R Lanter − AUSA    dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov,
janet.eisenmann@usdoj.gov

David J Nozick − AUSA    David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov,
janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson    attorneyrmj@gmail.com

Bruce R Hegyi − AUSA    bruce.hegyi@usdoj.gov

**2:11−cr−00077−PPS−APR−18 Notice has been delivered by U.S. Mail or other means to:**

**2:11−cr−00077−PPS−APR−19 Notice has been electronically mailed to:**

David E Vandercoy    david.vandercoy@valpo.edu

Arlington J Foley    arlingtonfoley@att.net

Mark A Psimos    psimoslaw@airbaud.net

Gojko Kasich    gkasich@crownlaw.com, gkasich@gmail.com

Scott L King    sking@scottkinggroup.com, dwilliams@scottkinggroup.com

Catherine A Lake    attyclake@sbcglobal.net

James N Thiros     jim@thiros.com, lynn@thiros.com

Thomas W Vanes     tom.vanes@sbcglobal.net, b.lynneadams@yahoo.com

Ihor Alexander Woloshansky     ihorlawyer@hotmail.com

R Brian Woodward     rbwoodward@wbbklaw.com, carolb@wbbklaw.com

John Maksimovich     criminallaw@johnmaksimovich.com

Visvaldis P Kupsis     vpkupsis@hotmail.com

Sheldon B Nagelberg     sbnagelberglaw@att.net

John E Martin – FCD     john_martin@fd.org

Adam Tavitas     Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander     jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele     ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst     kre@braje–nelson.com

Bryan M Truitt     bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis     theislaw@aol.com

Robert L Rascia     rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger     pjeffslaw@aol.com

Pablo DeCastro     pdecastro@rascia–decastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA     dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov,
janet.eisenmann@usdoj.gov

David J Nozick – AUSA     David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov,
janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson     attorneyrmj@gmail.com

Bruce R Hegyi – AUSA     bruce.hegyi@usdoj.gov

**2:11–cr–00077–PPS–APR–19 Notice has been delivered by U.S. Mail or other means to:**

**2:11–cr–00077–PPS–APR–20 Notice has been electronically mailed to:**

David E Vandercoy     david.vandercoy@valpo.edu

Arlington J Foley     arlingtonfoley@att.net

Mark A Psimos    psimoslaw@airbaud.net

Gojko Kasich    gkasich@crownlaw.com, gkasich@gmail.com

Scott L King    sking@scottkinggroup.com, dwilliams@scottkinggroup.com

Catherine A Lake    attyclake@sbcglobal.net

James N Thiros    jim@thiros.com, lynn@thiros.com

Thomas W Vanes    tom.vanes@sbcglobal.net, b.lynneadams@yahoo.com

Ihor Alexander Woloshansky    ihorlawyer@hotmail.com

R Brian Woodward    rbwoodward@wbbklaw.com, carolb@wbbklaw.com

John Maksimovich    criminallaw@johnmaksimovich.com

Visvaldis P Kupsis    vpkupsis@hotmail.com

Sheldon B Nagelberg    sbnagelberglaw@att.net

John E Martin – FCD    john_martin@fd.org

Adam Tavitas    Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander    jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele    ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst    kre@braje–nelson.com

Bryan M Truitt    bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis    theislaw@aol.com

Robert L Rascia    rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger    pjeffslaw@aol.com

Pablo DeCastro    pdecastro@rascia–decastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA    dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov,
janet.eisenmann@usdoj.gov

David J Nozick – AUSA    David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov,
janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson    attorneyrmj@gmail.com

Bruce R Hegyi – AUSA    bruce.hegyi@usdoj.gov

1564

**2:11–cr–00077–PPS–APR–20 Notice has been delivered by U.S. Mail or other means to:**

**2:11–cr–00077–PPS–APR–21 Notice has been electronically mailed to:**

David E Vandercoy    david.vandercoy@valpo.edu

Arlington J Foley    arlingtonfoley@att.net

Mark A Psimos    psimoslaw@airbaud.net

Gojko Kasich    gkasich@crownlaw.com, gkasich@gmail.com

Scott L King    sking@scottkinggroup.com, dwilliams@scottkinggroup.com

Catherine A Lake    attyclake@sbcglobal.net

James N Thiros    jim@thiros.com, lynn@thiros.com

Thomas W Vanes    tom.vanes@sbcglobal.net, b.lynneadams@yahoo.com

Ihor Alexander Woloshansky    ihorlawyer@hotmail.com

R Brian Woodward    rbwoodward@wbbklaw.com, carolb@wbbklaw.com

John Maksimovich    criminallaw@johnmaksimovich.com

Visvaldis P Kupsis    vpkupsis@hotmail.com

Sheldon B Nagelberg    sbnagelberglaw@att.net

John E Martin – FCD    john_martin@fd.org

Adam Tavitas    Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander    jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele    ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst    kre@braje–nelson.com

Bryan M Truitt    bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis    theislaw@aol.com

Robert L Rascia    rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger    pjeffslaw@aol.com

Pablo DeCastro    pdecastro@rascia–decastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA    dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov,
janet.eisenmann@usdoj.gov

1565

David J Nozick – AUSA    David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson    attorneyrmj@gmail.com

Bruce R Hegyi – AUSA    bruce.hegyi@usdoj.gov

**2:11–cr–00077–PPS–APR–21 Notice has been delivered by U.S. Mail or other means to:**

**2:11–cr–00077–PPS–APR–22 Notice has been electronically mailed to:**

David E Vandercoy    david.vandercoy@valpo.edu

Arlington J Foley    arlingtonfoley@att.net

Mark A Psimos    psimoslaw@airbaud.net

Gojko Kasich    gkasich@crownlaw.com, gkasich@gmail.com

Scott L King    sking@scottkinggroup.com, dwilliams@scottkinggroup.com

Catherine A Lake    attyclake@sbcglobal.net

James N Thiros    jim@thiros.com, lynn@thiros.com

Thomas W Vanes    tom.vanes@sbcglobal.net, b.lynneadams@yahoo.com

Ihor Alexander Woloshansky    ihorlawyer@hotmail.com

R Brian Woodward    rbwoodward@wbbklaw.com, carolb@wbbklaw.com

John Maksimovich    criminallaw@johnmaksimovich.com

Visvaldis P Kupsis    vpkupsis@hotmail.com

Sheldon B Nagelberg    sbnagelberglaw@att.net

John E Martin – FCD    john_martin@fd.org

Adam Tavitas    Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander    jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele    ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst    kre@braje–nelson.com

Bryan M Truitt    bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis    theislaw@aol.com

Robert L Rascia     rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger     pjeffslaw@aol.com

Pablo DeCastro     pdecastro@rascia–decastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA     dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA     David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson     attorneyrmj@gmail.com

Bruce R Hegyi – AUSA     bruce.hegyi@usdoj.gov

**2:11–cr–00077–PPS–APR–22 Notice has been delivered by U.S. Mail or other means to:**

**2:11–cr–00077–PPS–APR–23 Notice has been electronically mailed to:**

David E Vandercoy     david.vandercoy@valpo.edu

Arlington J Foley     arlingtonfoley@att.net

Mark A Psimos     psimoslaw@airbaud.net

Gojko Kasich     gkasich@crownlaw.com, gkasich@gmail.com

Scott L King     sking@scottkinggroup.com, dwilliams@scottkinggroup.com

Catherine A Lake     attyclake@sbcglobal.net

James N Thiros     jim@thiros.com, lynn@thiros.com

Thomas W Vanes     tom.vanes@sbcglobal.net, b.lynneadams@yahoo.com

Ihor Alexander Woloshansky     ihorlawyer@hotmail.com

R Brian Woodward     rbwoodward@wbbklaw.com, carolb@wbbklaw.com

John Maksimovich     criminallaw@johnmaksimovich.com

Visvaldis P Kupsis     vpkupsis@hotmail.com

Sheldon B Nagelberg     sbnagelberglaw@att.net

John E Martin – FCD     john_martin@fd.org

Adam Tavitas     Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander     jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele    ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst    kre@braje–nelson.com

Bryan M Truitt    bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis    theislaw@aol.com

Robert L Rascia    rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger    pjeffslaw@aol.com

Pablo DeCastro    pdecastro@rascia–decastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA    dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA    David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson    attorneyrmj@gmail.com

Bruce R Hegyi – AUSA    bruce.hegyi@usdoj.gov

**2:11–cr–00077–PPS–APR–23 Notice has been delivered by U.S. Mail or other means to:**

**2:11–cr–00077–PPS–APR–24 Notice has been electronically mailed to:**

David E Vandercoy    david.vandercoy@valpo.edu

Arlington J Foley    arlingtonfoley@att.net

Mark A Psimos    psimoslaw@airbaud.net

Gojko Kasich    gkasich@crownlaw.com, gkasich@gmail.com

Scott L King    sking@scottkinggroup.com, dwilliams@scottkinggroup.com

Catherine A Lake    attyclake@sbcglobal.net

James N Thiros    jim@thiros.com, lynn@thiros.com

Thomas W Vanes    tom.vanes@sbcglobal.net, b.lynneadams@yahoo.com

Ihor Alexander Woloshansky    ihorlawyer@hotmail.com

R Brian Woodward    rbwoodward@wbbklaw.com, carolb@wbbklaw.com

John Maksimovich    criminallaw@johnmaksimovich.com

Visvaldis P Kupsis    vpkupsis@hotmail.com

1568

Sheldon B Nagelberg    sbnagelberglaw@att.net

John E Martin – FCD    john_martin@fd.org

Adam Tavitas    Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander    jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele    ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst    kre@braje–nelson.com

Bryan M Truitt    bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis    theislaw@aol.com

Robert L Rascia    rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger    pjeffslaw@aol.com

Pablo DeCastro    pdecastro@rascia–decastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA    dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov,
janet.eisenmann@usdoj.gov

David J Nozick – AUSA    David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov,
janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson    attorneyrmj@gmail.com

Bruce R Hegyi – AUSA    bruce.hegyi@usdoj.gov

**2:11–cr–00077–PPS–APR–24 Notice has been delivered by U.S. Mail or other means to:**

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Cause No. 2:11 CR 77 PPS |
| | ) | |
| JUAN BRISENO | ) | |

NOTICE OF EXPERT WITNESSES

Comes now the United States of America, by David Capp, United States Attorney for the

Northern District of Indiana, and gives notice of its intention to use expert witnesses under Rule

16(a)(1)(E) of the Federal Rules of Criminal Procedure and Rules 702, 703, and/or 704 of the

Federal Rules of Evidence.

Expert Admissibility

The admission of expert opinion testimony is governed by Rule 702 of the Federal Rules

of Evidence.   The rule states:

If scientific, technical, or other specialized knowledge will assist the trier of fact to
understand the evidence or to determine a fact in issue, a witness qualified as an expert by
knowledge, skill, experience, training, or education may testify thereto in the form of an opinion
or otherwise.

The Seventh Circuit described the requirements for admitting expert testimony under Rule 702 in

*United States v. Lanzotti*, 205 F.3d 951, 956 (7th Cir. 2000):

Rule 702 establishes two admissibility requirements for expert testimony: (1) the expert
must be qualified, and (2) the subject matter of the expert's testimony must consist of specialized
knowledge that will be helpful or essential to the trier of fact in deciding the case.   (citations
omitted)

1

The trial court has wide discretion in determining whether a witness is qualified to offer expert testimony. *United States v. Stevenson*, 6 F.3d 1262 (7th Cir. 1993). Expert testimony that overlaps juror's common understanding is not barred. *United States v. Hall*, 93 F.3d 1337, 1342 (7th Cir. 1996). If the expert testimony would be helpful and relevant with respect to an issue in the case, the trial court is not compelled to exclude the expert just because the testimony may, to a greater or lesser degree, cover matters that are within the average juror's comprehension. See Weinstein's Evidence, para. 702[02] at 702-20 to 702-21 (1996).

In this case the government will call the following expert witnesses:

The Homicide of Luis Ortiz

The government will call Dr. John Cavanaugh, a Medical Examiner at the Office of the Lake County Coroner. He will testify that he performed the autopsy of Luis Ortiz on September 27, 2007, at the Lake County Morgue in Crown Point, Indiana. The Luis Ortiz autopsy report has been provided in discovery. It is anticipated that Dr. Cavanaugh will testify consistently with the findings in his autopsy report. He is expected to testify, in summary, that Luis Ortiz suffered a gunshot wound of the chest, entering the right pectoral region and passing front to back with right to left and head to toe inclination through the right anterior chest wall, the right lung transecting the RUL pulmonary artery, through the spine, and into the soft tissues beneath the skin of the posterior chest. He suffered a massive right hemothorax. He suffered dicing injuries of the face, chest and lower left leg, and abrasions of the back over the iliac crest. He will testify that the immediate cause of death is Hypovolemic hypoxia, due to the intermediate cause of massive internal hemorrhage, due to the intermediate cause of the perforation of the

2

lung.   The proximate cause of death was a gunshot wound to the chest.   He will further testify that the manner of death was homicide.

The government will call Forensic Examiner Karen Korsberg Lowe, a Hair and Fiber expert from the Trace Evidence Unit at the FBI Laboratory at Quantico, Virginia.   Ms. Lowe's Report of Examination has been provided in Discovery.   It is anticipated that Ms. Lowe will testify consistently with her report.   She will testify that she performed a comparison of a known hair sample of Juan Briseno (K3) to debris found from the victim's hands (Q2).   The methods she used are discussed in her Report of Examination.   She is expected to testify that the head hairs exhibiting Caucasian characteristics found in specimen Q2 are microscopically dissimilar to the hairs in the known head hair sample submitted from Juan Briseno (K2).   Accordingly, based on the K2 head hair sample, Juan Briseno cannot be included as a possible source of these hairs.

The government will call Melissa A. Bachani (now Melissa Oberg), a Forensic Scientist in the Firearms Unit at the Indiana State Police Laboratory Division.   A Certificate of Analysis that she prepared pertaining to this homicide has been provided in discovery.   Ms. Bachani is expected to testify consistently with this report.   She is expected to testify that an examination of the four cartridge cases in items 1A, 1B, 1C and 1D revealed each to be a 9 mm Luger caliber cartridge case manufactured or marketed by Winchester.   An examination of the two bullet cores in items 2A and 2B2 revealed each to be a lead bullet core from a jacketed bullet.   The bullet cores have no individual characteristics for comparison purposes.   The physical effects of damage precluded further characterization.   An examination of the two bullet jackets in items 2B1 and 2C revealed each to be a 35 caliber (9 mm Luger, 380 auto, .38 special, .357 Magnum) bullet jacket fired in a firearm having six lands and grooves with a right twist.   An examination

3

of the bullet in item 3 revealed it to be a 35 caliber (9mm Luger, 380 Auto, .38 Special, .357 Magnum) jacketed bullet fired in a firearm having six lands and grooves with a right twist. The four cartridge cases in items 1A, 1B, 1C and 1D were identified as having been fired in the same firearm. The two bullet jackets in items 2B1 and 2C and the bullet in items 3 were identified as having been fired in the same firearm.

The government will call Hilary Wilson, a former Forensic Scientist in the Latent Print Identification Unit at the Indiana State Police Laboratory Division. A Certificate Analysis that Ms. Wilson prepared pertaining to this homicide has been provided in discovery. Ms. Wilson is expected to testify consistently with this report. She will testify that no latent print impressions of value for comparison purposes were developed on the four cartridge cases (Item 1) or the photographs (Item 14).

The government will call Shawn Flagg (now Shawn Stur), a Forensic Scientist in the DNA/Serology Unit at the Lowell Regional Laboratory of the Indiana State Police Laboratory Division. A Certificate of Analysis that Ms. Flagg prepared pertaining to this homicide has been provided in discovery. It is anticipated that Ms. Flagg will testify consistently with this report. Ms. Flagg will testify that blood was detected on the items discussed in the next paragraph, and hair was present on sections of the carpet in items 11 and 13. Trace evidence was also discovered on the shorts, underwear, and sections of the carpet. A stain card was prepared from the blood standard of Luis Joel Ortiz contained in item 4. It does not appear that Ms. Flagg will testify about being involved in any of the DNA testing as it pertains to this homicide. That testing was handled by Sharon M. Pollock.

1573

The government will call Sharon M. Pollock, a Forensic Scientist in the DNA/Serology Unit at the Indiana State Police Lowell Regional Laboratory. A Certificate of Analysis that Ms. Pollock prepared pertaining to this homicide has been provided in discovery. It is anticipated that Ms. Pollock will testify consistently with this report. Ms. Pollock is expected to testify that the DNA profiles obtained from the swabs (items 7A and 8A), the samples from the shorts (items 9A, 9B, and 9C), the samples from the underwear (items 10A and 10B), and the samples from the carpet (items 11A, 11B, 11C, 12A, 12B, and 13A) match the DNA profile of Luis Joel Ortiz (Items 4A). The hairs (item 11D and items 13B1 through 13B6) failed to demonstrate a sufficient quantity of DNA for further analysis.

The Homicide of Miguel Mejias and Michael Sessum

The government will call Dr. John Cavanaugh, a Medical Examiner at the Office of the Lake County Coroner. He will testify that he performed the autopsy of Miguel Mejias on June 4, 2008, at the Lake County Morgue in Crown Point, Indiana. The Miguel Mejias autopsy report has been provided in discovery. It is anticipated that Dr. Cavanaugh will testify consistently with the findings in his autopsy report. He will testify, in summary, that Miguel Mejias suffered a gunshot wound of the head, entering the right occipital region and passing back to front and right to left through the skull and brain. He suffered a gunshot wound of the posterior chest and spine entering the back and passing back to front into the spine at the 8th thoracic vertebra. He suffered a gunshot wound of the abdomen, entering the left lumbar region and passing back to front through the left psoas muscle and a loop of the jejunum, exiting the abdominal wall at the left lower quadrant. He suffered a gunshot wound of the pelvis, entering the right iliac region

5

and passing back to front through the right iliac bone, the right ureter, and the right colon.   He suffered a gunshot wound of the right subaxillary region, grazing the medial right upper arm and right lateral chest in the extended axillary crease, passing probably back to front.   He suffered a laceration of the right temple.   He also suffered massive hemorrhage with hemoperitoneum and retroperitoneal hematoma, pallor and depletion.   Dr. Cavanaugh will testify that the immediate cause of death was acute traumatic encephalopathy, due to the intermediate cause of lacerations and contusion of the brain, due to the intermediate cause a penetrating injury of the skull and brain.   The proximate cause of death was a gunshot wound of the head, with the contributing factor of multiple gunshot wounds.   He will further testify that the manner of death was homicide.

Dr. John Cavanaugh will also testify that he performed the autopsy of Michael Sessum on June 4, 2008, at the Lake County Morgue in Crown Point, Indiana.   The Michael Sessum autopsy report has been provided in discovery.   It is anticipated that Dr. Cavanaugh will testify consistently with the findings in his autopsy report.   He will testify, in summary, that Michael Sessum suffered a gunshot wound of the chest, entering the right posterior chest wall, the right 8th rib, the right lung, the pericardium and pulmonary veins, the left chest cavity, and into the left anterior chest wall in the left pectoral muscle.   He suffered perforation of these structures with lacerations and contusions of the soft tissues and fracture of the bone; a massive hemorrhage with large bilateral hemothoraces, and contusion of the ostium of the inferior vena cava.   Dr. Cavanaugh will testify that the immediate cause of death is Hypovolemic hypoxia, due to the intermediate cause of pneumohemothorax (hemorrhage), due to the intermediate cause of the perforating wound of the lung and major vessels.   The proximate cause of death was a gunshot

6

wound to the chest.    Dr. Cavanaugh will further testify that the manner of death was homicide.

The government will call Kimberly Ivanyo, a Forensic Scientist in the drug unit at the Indiana State Police Laboratory Division, at the Lowell Regional Laboratory.    A certificate of analysis that she prepared pertaining to this homicide has been provided in discovery.    Ms. Ivanyo is expected to testify consistently with this report.    In summary, she will testify that she tested Item 6, which is the contents of a zip-lock bag containing a green plant-like material and a torn and knotted plastic bag containing green plant-like material.    Item 6 was found to contain marijuana.    The net weight of item 6 was 17.35 grams.

The government will call Lt. Henry Hatch, a Firearm and Tool Mark Examiner at the Lake County Police Crime Lab.    A report that he prepared pertaining to this homicide has been provided in discovery.    Lt. Hatch is expected to testify consistently with this report.    In summary, he is expected to testify that pertaining to items F08-3083-1, F08-3083-1A, F-08-3083-1B and F08-3083-1C, four WIN, 9mm Luger caliber cartridge cases were examined. It was determined that they were fired in the same firearm.    Regarding F08-3083-2 and F08-3083-2B, two spent bullets (mutilated) were examined.    It was determined that they were fired from the same firearm of 35 family caliber with six lands and six grooves having right hand twist rifling.    Regarding F08-3083-2A, one spent bullet (mutilated) was examined.    It was determined that it was fired from a firearm of 35 family caliber with six lands and six grooves having right hand twist rifling.    It could neither be identified nor excluded as having been fired from the same firearm as items F08-3083-2 and 2B.    Regarding F08-3083-9, F-08-3083-9C and F08-3083-10, two spent bullet jacket fragments (mutilated) and one spent bullet (mutilated) were examined.    It was determined that they were fired from a firearm of 35 family caliber with five

7

lands and five grooves having right hand twist rifling. It was determined that they could neither be identified nor excluded as having been fired from the same firearm. However, they were not fired from the same firearm as items F08-3083-2, 2B, and 2A.

The Homicide of Harris Brown

The government will call Dr. J. Lawrence Cogan, a retired Assistant Medical Examiner at the Office of the Medical Examiner of Cook County, Illinois. He will testify that he performed the autopsy of Harris Brown on October 11, 2008, at the Office of the Medical Examiner in Chicago, Illinois. The Harris Brown autopsy report has been provided in discovery. It is anticipated that Dr. Cogan will testify consistently with the findings in his autopsy report. He will testify, in summary, that Harris Brown suffered a gunshot wound to the back. The entrance wound is located over the right side of the upper back. No sooting or stippling is noted on the skin about the wound. The projectile was recovered from the subcutaeneous tissue and muscle of the right anterior chest wall. The course of the gunshot wound is through the skin, subcutaneous tissue, the muscle of the right side of the back, the sixth right rib, right middle lobe, right upper lobe, third costal cartilage anteriorly, subcutaneous tissue, and muscle. As a consequence of this wound, there is extensive laceration of the right lung. There were several liters of blood loss into the right chest cavity from this gunshot wound. The wound also allowed collapse of the right lung. The victim also suffered a gunshot wound to the left thumb and inner aspect of the left forearm. Dr. Cogan will testify that the cause of death is multiple gunshot wounds. The manner of death is homicide.

8

The government will call Kimberly Ivanyo, a Forensic Scientist in the drug unit at the Indiana State Police Laboratory Division, at the Lowell Regional Laboratory.   A certificate of analysis that she prepared pertaining to this homicide has been provided in discovery.   Ms. Ivanyo is expected to testify consistently with this report.   In summary, she will testify that she tested Item 1, which is the contents of a knotted and taped plastic bag containing a green plant-like material that was recovered from the victim Harris Brown.   Item 1 was found to contain marijuana.   The net weight of item 1 was 1.01 grams.

The government will call Lt. Henry Hatch, a Firearm and Tool Mark Examiner at the Lake County Police Crime Lab.   A report that he prepared pertaining to this homicide has been provided in discovery.   Lt. Hatch is expected to testify consistently with this report.   In summary, he will testify that pertaining to items F09-3257-1-1 through F09-3257-1-13 and F09-3257-1-15, fourteen 9mm Luger caliber cartridge cases were examined.   It was determined that they were fired in the same firearm.   They possessed the class characteristic of a "Glock" type firing pin impression.   He will testify further that he had the opportunity to compare the above-listed pieces of evidence to the evidence from the attempted murder of Andres Arenivas on August 26, 2008.   Lt. Hatch will testify that the items listed above were examined and found to be fired from the same firearm as items F09-3282-1, F09-32821A to F09-3282-1I from the attempted murder of Andres Arenivas.

The October 3, 2009 Search Warrant Executed at Briseno's Residence

The government will call Kristin B. Sturgeon, a Forensic Scientist in the drug unit at the Indiana State Police Laboratory Division, at the Lowell Regional Laboratory.   A certificate of

9

analysis that she prepared pertaining to this search has been provided in discovery.   Ms.

Sturgeon is expected to testify consistently with this report.   In summary, she will testify that she

tested Items 1, the contents of a sealed plastic bag containing a folded plastic bag and a plastic

baggie containing twenty-three whole and three portions of round green tablets. Ms. Sturgeon is

expected to testify that an examination of Item 1 indicated the presence of

3,4-Methylenedioxymethamphetamine (MDMA, commonly referred to as "ecstasy,") a

controlled substance.   However, its presence could not be confirmed due to insufficient

concentration.   She also tested Item 2, a sealed plastic bag containing a folded plastic bag and a

knotted plastic baggie containing a plant-like substance.   Item 2 was found to contain marijuana.

 The net weight was 1.76 grams.


        The Homicide of Miguel Colon

        The government will call Dr. John Cavanaugh, a Medical Examiner at the Office of the

Lake County Coroner.   He will testify that he performed the autopsy of Miguel Colon on

February 7, 2010, at the Lake County Morgue in Crown Point, Indiana.   The Miguel Colon

autopsy report has been provided in discovery.   It is anticipated that Dr. Cavanaugh will testify

consistently with the findings in his autopsy report.   He will testify, in summary, that Miguel

Colon suffered a gunshot wound of the chest, entering near the right nipple and passing right to

left and front to back through the right lung, grazing the heart, through the aorta, through the left

lung, and into the left chest wall.   He will testify that a bullet was recovered from the left chest

wall.   He will testify that the defendant also suffered abrasions to his face, a laceration of the

right eyelid, abrasions of the right dorsal hand, and abrasions of the right shin.   He will testify

10

1579

that the immediate cause of death is Hypovolemic hypoxia, due to the intermediate cause of

internal hemorrhaging, due to the intermediate cause of a perforation of the aorta. The

proximate cause of death was a gunshot wound to the chest. He will further testify that the

manner of death was homicide.

The government will call Nicole M. Mazur, a former Forensic Scientist in the Firearms

Unit at the Indiana State Police Laboratory Division, at the Lowell Regional Laboratory. A

Certificate of analysis that she prepared pertaining to this homicide has been provided in

discovery. Ms. Mazur is expected to testify consistently with this report. In summary, she will

testify that she examined two bullets which were recovered during the autopsy of Miguel Colon,

Items 27A and 27B. An examination of the bullet in item 27A revealed it to be typical of a .40

caliber jacketed bullet fired in a firearm having six lands and grooves with a right twist. An

examination of the bullet in item 27B revealed it to be a jacketed bullet with a right twist.

However, mutilation hindered any further characterization. Examination of items 27A and 27B

found insufficient characteristics for comparison purposes. Firearms having similar class

characteristics to the bullet in item 27A are pistols manufactured by or marketed as Astra,

Beretta, Heckler & Koch, Hi-Point Firearms, Republic Arms, Ruger, Springfield and Taurus.

However, this should not be construed as an all-inclusive list of firearms having similar class

characteristics.

The government will call Lt. Henry Hatch, a Firearm and Tool Mark Examiner at the

Lake County Police Crime Lab. A report that he prepared pertaining to this homicide has been

provided in discovery. Lt. Hatch is expected to testify consistently with this report. In

summary, he will testify that pertaining to F10-3361-1 and F10-3361-2, two Winchester .380

11

auto caliber cartridge cases were examined.   It was determined that they could neither be

identified nor excluded as having been fired in the same firearm.   However, they were worked

through the action of the same firearm.   Regarding F10-3361-4, F103361-5, F10-3361-6,

F10-3361-8, F10-3361-10, F10-3361-11, F10-3361-12, F10-3361-17 through F10-3361-21,

F10-3361-26, F10-3361-27 and F10-3361-31, eight FC 10 mm auto caliber cartridge cases, and

seven Winchester 10 mm auto caliber cartridge cases were examined.   It was determined that

they were fired in the same firearm.   They were excluded as having been fired in the same

firearm as F10-3361-1 and -2.   Regarding F10-3361-13 through F10-3361-16, four Speer .40

caliber cartridge cases were examined.   It was determined that they were fired in the same

firearm.   They were excluded as having been fired in the same firearm as the items discussed

above.   Regarding F10-3361-32, one spent bullet was examined.   It was determined that it was

fired from a firearm of 35 caliber with six lands and six grooves having left hand twist rifling.   It

was further determined to be consistent with .38 special/.357 magnum caliber ammunition.

<u>The March 22, 2010 Shooting by Briseno at Spanish Gangster Disciples</u>

The government will call Nicole M. Mazur, a former Forensic Scientist in the Firearms

Unit at the Indiana State Police Laboratory Division, at the Lowell Regional Laboratory.   A

Certificate of analysis that she prepared pertaining to this homicide has been provided in

discovery.   Ms. Mazur is expected to testify consistently with this report.   In summary, she will

testify that she examined the five cartridge cases in items 1A, 1B, 1C, 1D and 1E.   Her

examination revealed that each was a 9 mm Luger caliber cartridge case typical of those

manufactured by or marketed as MFS (Matravideki Femmuvek Sirok).   An examination of the

12

1581

cartridge case in item 2A revealed it also to be a 9mm Luger caliber cartridge case, this one typical of those manufactured or marketed by Remington. An examination of the cartridge cases in items 2B and 2D revealed each to be a 9 mm Luger caliber cartridge case manufactured or marketed as Winchester. An examination of the cartridge case in item 2C revealed it to be a 9mm Luger caliber cartridge case typical of those manufactured or marketed as PMC (Precision Made Cartridges). Ms. Mazur will further testify that the five cartridge cases in items 1A, 1B, 1C, 1D and 1E were identified as having been fired in the same firearm that fired the two cartridge cases in items 6A and 6B from the homicide of Jesus Alvarez on March 26, 2010. The four cartridge cases in items 2A, 2B, 2C and 2D were excluded as having been fired in the same firearm that fired the two cartridge cases in items 6A and 6B from the homicide of Jesus Alvarez.

    The Homicide of Latroy Howard

The government will call Dr. Young M. Kim, a Medical Examiner at the Office of the Lake County Coroner. He will testify that he performed the autopsy of Latroy Howard on June 20, 2010, at the Lake County Morgue in Crown Point, Indiana. You have received the Latroy Howard autopsy report in discovery. It is anticipated that Dr. Kim will testify consistently with the findings in his autopsy report. He will testify, in summary, that Latroy Howard suffered a gunshot wound of the head, entering the left forehead, passing through subcutaneous tissue and fracturing a hole at the frontal lobe of the skull, causing hemorrhages. The bullet penetrated the left frontal lobe of the cerebrum and right temporal lobe of the cerebrum with laceration and hemorrhagic tract. It fractured the right mid cranial fossa and embedded in the fracture site. Latroy Howard also suffered a gunshot wound over the right side of the nose. The bullet passed

through subcutaneous tissue and fractured the nasal bone. It further fractured the right

mid-cranial fossa, the temporal bone of the skull, and embedded in the fracture site. It contused

and lacerated the right temporal lobe of the cerebrum. He will testify that the cause of death was

extensive head injuries with intracranial hemorrhages due to two gunshot wounds. He will

further testify that the manner of death was homicide.

The government will call Shawn Flagg (now Shawn Stur) , a Forensic Scientist with the

DNA/Serology Unit at the Indiana State Police Laboratory Division. The certificate of analysis

that he has prepared has been provided in discovery. It is anticipated that Shawn Flagg will

testify consistently with the findings in his certificate of analysis. She will testify, in summary,

that the DNA profile obtained from one of the swabs from the sidewalk (item 7A1 in item 7A)

matches the DNA profile of the homicide victim, Latroy Howard. In the absence of an identical

twin, Latroy Howard is the source of the DNA to a reasonable degree of scientific certainty.

Flagg will further testify that the DNA profile obtained from the areas taken from the

t-shirts (items 13B and 14B) are consistent with an unknown male individual, and are not

consistent with Latroy Howard (items 8A 1 in items 8A) or Brandon Weaver (item 11A1 in item

11A). She will testify further that the DNA profile obtained from the combined swabs of the hat

(item 15A) demonstrated the presence of a mixture with a major and minor profile. The major

DNA profile is consistent with the unknown male individual from the areas taken from the

t-shirts (items 13B and 14B). Brandon Weaver (item 11A1 in item 11A) and at least one

additional unknown individual cannot be excluded as possible contributors of the additional

alleles. Latroy Howard (item 8A1 in item 8A) can be excluded as a possible contributor.

14

Flagg will also testify that the DNA profile obtained from the combined swabs of the t-shirt (item 14A) demonstrated the presence of a mixture with a major and minor profile.   The major DNA profile is consistent with the unknown male from the areas taken from the t-shirts (items 13B and 14B).   An additional unknown individual cannot be excluded as a possible contributor of the additional alleles.   Latroy Howard (item 8A1 in item 8A) and Brandon Weaver (item 11A1 in item 11A) can be excluded as being possible contributors.   The combined swabs of the t-shirt (item 13A) failed to demonstrate a sufficient quantity of DNA for further analysis.

The government will call Kimberly Ivanyo, a Forensic Scientist in the drug unit at the Indiana State Police Laboratory Division, at the Lowell Regional Laboratory.   A certificate of analysis that she prepared pertaining to this homicide has been provided in discovery.   Ms. Ivanyo is expected to testify consistently with this report.   In summary, she will testify that she tested Items 1, 2 and 4.   These were bags of suspect crack cocaine that were located on or near the victim Latroy Howard.   Ms. Ivanyo will testify that no controlled substances were identified in any of these items.

The government will call Nicole M. Mazur, a former Forensic Scientist in the Firearms Unit at the Indiana State Police Laboratory Division, at the Lowell Regional Laboratory.   A Certificate of analysis that she prepared pertaining to this homicide has been provided in discovery.   Ms. Mazur is expected to testify consistently with this report.   In summary, she will testify that an Examination of the bullet in item 3 revealed it to be typical of a 35 caliber (.380 auto) bullet fired in a firearm having six lands and grooves with a right twist.   An Examination of the bullets in items 10A and 10B revealed each to be typical of a 35 caliber (.38 special, .357

15

magnum) bullet fired in a firearm having six lands and grooves with a left twist.   The bullets in items 10A and 10B were identified as having been fired in the same firearm.   The bullet in items 3 was excluded as having been fired in the firearm that fired the bullets in items 10A and 10B.

The CV's of all of these expert witnesses will soon be provided to defense counsel.

WHEREFORE, the government notifies the defendant and the Court that it will call the above listed witnesses as expert witnesses at trial.

Respectfully submitted,

DAVID CAPP
U.S. ATTORNEY

By:   /s/ David J. Nozick
       David J. Nozick
       Assistant U.S. Attorney
       5400 Federal Plaza, Suite 1500
       Hammond, Indiana 46320
       (219) 937-5500

16

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION


UNITED STATES OF AMERICA          )
                                  )
          v.                      )          NO. 2:11 CR 77 PPS
                                  )
JUAN BRISENO                      )


CERTIFICATE OF SERVICE

The undersigned hereby certifies that the government's Notice of Expert Witnesses was

electronically filed with the Clerk of the Court using the CM/ECF system which sent notification

of said filing to the following individuals:

    ARLINGTON J. FOLEY
    JOHN MAKSIMOVICH
    (Attorneys for defendant Juan Briseno)



                              By:    /s/ Janet L. Eisenmann
                                     Janet L. Eisenmann
                                     U.S. Attorney's Office
                                     5400 Federal Plaza, Suite 1500
                                     Hammond, Indiana 46320
                                     (219) 937-5500



17

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
## HAMMOND DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) | |
| v. | ) | NO. 2:11CR77 PPS |
| JUAN BRISENO, | ) | |
| Defendant. | ) | |

### ORDER

The trial in this case is set to begin in January 2015. In March 2013 the government filed a notice of intent to seek the death penalty pursuant to 28 U.S.C. §3593(a) ("NOI"). (Docket Entry 503.) In a general scheduling order I set a deadline of July 15, 2014 for any motion by the government to amend the NOI. (DE 966.) On July 1, 2014 the government filed a timely motion for leave to file a supplemental NOI. (DE 968.) Three weeks have passed since the government filed its motion, and there has been no objection.

"The court may permit the attorney for the government to amend the notice upon a showing of good cause." 18 U.S.C. § 3593(a). The supplemental NOI updates the NOI to correspond to the fourth superseding indictment (DE 652), which was returned after the initial NOI was filed; it contains some minor revisions; and it corrects some errors. The supplemental NOI does not substantively change the fact that the government believes the circumstances of the charged offenses warrant the death penalty if Briseno is found guilty, and it does not change the aggravating factors the government intends to prove with respect to each charged capital offense.[1] The effect of the changes in the supplemental NOI is to clean

---

[1] The supplemental NOI does change the text of the third alleged aggravating factor with respect to the murders of each of Michael Sessum and Miguel Mejias because, apparently due to an

up the NOI, but the changes don't amount to substantive revisions that impose any

additional burden on the defense. The supplemental NOI was filed over six months before

jury selection is scheduled to begin in the case, and before the deadline I set for any motion

to amend the NOI.

Although there is not an abundance of case law on the subject of good cause for

amending an NOI, at least some courts have held that "good cause is shown whenever the

government can demonstrate that there was no deliberate delay by the government and no

prejudice to the defendant." *United States v. Barnes*, 532 F. Supp. 2d 625, 629 (S.D.N.Y. 2008)

(citations omitted). The length of time the defendant has to address aggravating factors is

also an important consideration, although it is encompassed within the prejudice issue. *See,*

*e.g.*, *United States v. McGriff*, 427 F. Supp. 2d 253, 262-67 (E.D.N.Y. 2006) (discussing case law

addressing timeliness of NOI). The point of the NOI is to put the defendant on notice that the

government will seek the death penalty, and to give the defendant a fair opportunity to

develop as fulsome a defense as possible. *See, e.g.*, *United States v. Pretlow*, 770 F. Supp. 239,

242 (D.N.J. 1991).

There is no evidence here of deliberate delay by the government, and the changes in

the NOI don't change the substance of Briseno's trial preparation, so Briseno won't be

prejudiced by allowing the supplemental NOI to be filed. Having to synthesize any changes,

---

error, the third factor for each previously stated the statute subsection the government intended (18
U.S.C. § 3592(c)(16)), but stated text that didn't correspond to that subsection (instead, it restated
the text of the first alleged aggravating factor in each murder, corresponding to 18 U.S.C. §
3592(c)(5)). Briseno has never indicated to the court any confusion about the aggravating factors the
government alleges.

even typographical corrections, on the eve of trial might be overly burdensome to Briseno, but that's not an issue six months out. The changes made in the supplemental NOI here to correct errors and accurately cross-reference the most recent superseding indictment serve to clarify the NOI for trial preparation and pretrial motions, and for the record, while leaving the aggravating factor allegations as they were in the March 2013 NOI. These changes of form, not substance, will make briefing and the record cleaner without imposing any additional burden on the defense, which provides good cause for permitting them. *See United States v. Ayala-Lopez*, 457 F.3d 107, 108-09 (1st Cir. 2006) (affirming allowance of NOI amendment where amendment "followed soon after the issuance of a superseding indictment, was wholly technical in nature, and did not change the substantive notification about aggravating factors to be alleged by the government").

For the foregoing reasons I find that the government has shown good cause to file a supplemental NOI, so leave to file a supplemental NOI is **GRANTED**. (DE 968.) The proposed Supplemental Notice of Intent to Seek the Penalty of Death Pursuant to Title 18 United States Code Section 3593 (attached as Exhibit 1 to DE 968) is **DEEMED FILED**.

SO ORDERED.

ENTERED: July 22, 2014.

 /s/ Philip P. Simon
PHILIP P. SIMON, CHIEF JUDGE
UNITED STATES DISTRICT COURT

3

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | 2:11-CR-77-PPS |
| | ) | |
| JUAN BRISENO, a/k/a "Tito" | ) | |

**GOVERNMENT'S MOTION
TO EMPANEL AN ANONYMOUS JURY**

**TO THE HONORABLE COURT:**

COMES NOW, the United States of America, by and through the undersigned counsel,

and, for the reasons more fully set forth below, moves the Court to empanel an anonymous jury

for the capital trial of defendant Juan Briseno, also known as "Tito" ("Mr. Briseno.")  As more

fully set forth below, an anonymous jury is appropriate in this extraordinary case, because Mr.

Briseno is involved in organized crime, there have been past attempts to interfere with the

judicial process, Mr. Briseno is facing the possibility of the death penalty, there exists a

likelihood of extensive publicity which may enhance the possibility that jurors' names would

become public and expose them to intimidation or harassment, and because a preponderance of

evidence establishes that the provision to Mr. Briseno of the names and/or identifying

information of the jury venire "may jeopardize the life or safety of any person."

<u>Nature of the Case</u>

As more fully set forth in the Fourth Superseding Indictment, Mr. Briseno and his

twenty-three (23) former co-defendants in this case are/were members of one of two Northwest

Indiana chapters of the Almighty Imperial Gangster Nation street gang (the "Imperial Gangsters"

or "IG's"), who, together with unindicted co-conspirators, some of whom are now deceased,

**GOVERNMENT'S MOTION TO EMPANEL AN ANONYMOUS JURY**
<u>United States v. Juan Briseno</u>
Cause No. 2:11-CR-0077-PPS-APR
**Page 2**
_____

plagued and terrorized various streets and neighborhoods in and around East Chicago, Indiana,

for more than a generation, by and through organized and systematic drug dealing, shootings,

murders, robberies, carjackings, burglaries, and other criminal conduct.  [*See generally*, 4th

<u>Superseding Indictment</u>]  According to the allegations specified in the Indictment, the two

Northwest Indiana chapters of the Imperial Gangsters committed 13 murders and 19 attempted

murders, of which Mr. Briseno committed or participated in six murders and seven attempted

murders.  [*See* <u>Id</u>.]

As established in the January 2014 trial of IG Richard Reyes, the Imperial Gangsters

were initially born in Chicago, Illinois.  [<u>Reyes Tr. Vol. II</u> [DE # 903] , page 387 (Joseph Torres

testimony)]  Thereafter, the gang created chapters in and around Chicago, Northwest Indiana,

Orlando, Florida, and Miami, Florida.   The IG's are a generational enterprise, where sons follow

fathers, and nephews follow uncles, to become lifelong members of the gang.  [*See, e.g.*,  <u>Reyes

Trial Tr. Vol II</u>, pages 333-35 (Joseph Torres testimony –  IG Joseph Torres is the son of IG

Mario Torres, Sr., the brother of IG Mario Torres, Jr., the nephew of IG Eddie Torres, Sr., the

cousin of IG Eddie Torres, Jr., the cousin of IG Julius Solis, and the cousin of IG Richard

Reyes.)]

The IG's are a particularly violent and vicious street gang, who go to extreme lengths to

shoot and kill those who are viewed as threats to the IG's or are perceived as disloyal to them.

[*See, e.g.*, <u>4th Superseding Indictment</u> [DE #652], ¶¶ 1-22, 23(e), (h), (n), (o), ( r), (s), (v), (z),

(cc), (dd), (hh), (jj), (ll), (mm), (oo), (qq), (xx), (ddd); <u>Reyes Trial Tr. Vol I</u> [DE #894], pages

247-51 (S.A. Gore testimony); <u>Reyes Trial Tr. Vol II</u> [DE #903], pages 318-72 (Joseph Torres

**GOVERNMENT'S MOTION TO EMPANEL AN ANONYMOUS JURY**
<u>United States v. Juan Briseno</u>
Cause No. 2:11-CR-0077-PPS-APR
**Page 3**
_____

testimony); <u>Reyes Trial Tr. Vol II</u>, pages 530-73 (Ace Cortez testimony); <u>Reyes Trial Tr. Vol III</u>

[DE #904], pages 644-717 (Antony Baldazo testimony). For instance, when a group of

Northwest Indiana IG's broke away from the IG's – and became known as the "Renegade IG's"

-- the original IG's (i) hunted down and killed Renegade IG Mario Soriano [*see* 4<u>th</u> <u>Superseding</u>

<u>Indictment</u>, Counts 12-13 & ¶ 23(s); <u>Julian Serna Plea/Draft PSI</u> [DE #957], ¶¶ 38-44, 47, 52,

54, 57; <u>Reyes Trial Tr. Vol. II</u>, pages 472-86 (Chris DeLaCruz testimony)]; <u>Reyes Trial Tr. Vol</u>

<u>II</u> [DE #903], page 371 (Joseph Torres testimony); <u>Reyes Trial Tr. Vol III</u>, pages 680-82

(Anthony Baldazo testimony); (ii) tried to murder Renegade IG Rolando Leal [<u>Reyes Trial Tr.</u>

<u>Vol III</u>, pages 680-82 (Anthony Baldazo testimony)]; (iii) tried to murder Renegade IG Eddie

Soriano [<u>Reyes Trial Tr. Vol II</u>, page 371 (Joseph Torres testimony)]; and (iv) murdered

Renegade IG Alonzo Cavasos [*see* 4<u>th</u> <u>Superseding Indictment</u>, ¶ 23(cc)]; <u>Reyes Trial Tr. Vol II</u>,

pages 371 (Joseph Torres testimony)]

More recently, when the IG's suspected that one of their members ("Victim 5") might be

cooperating with law enforcement, they shot at and attempted to murder Victim 5 and his

mother. [*See* 4<u>th</u> <u>Superseding Indictment</u>, Counts 31-32 & ¶ 23(xx); <u>Jason Medina Plea/Draft</u>

<u>PSI</u> [DE #930], ¶¶ 1, 21-24; <u>Edward Serna/Draft PSI</u> [DE #927], ¶¶ 1, 8, 35-b), 37, 39, 42];

<u>Reyes Trial Tr. Vol III</u>, pages 687-89 (Anthony Baldazo testimony)]

Moreover, during the period of Mr. Briseno's pre-trial detention in this case, Mr. Briseno

has continued to direct the actions of other Northwest Indiana IG's who remained at large in the

community. Among other things, on September 21, 2010, Mr. Briseno wrote to Kevin Beltran, a

Northwest Indiana IG, who had not yet been incarcerated in this case, and directed him to take

**GOVERNMENT'S MOTION TO EMPANEL AN ANONYMOUS JURY**
United States v. Juan Briseno
Cause No. 2:11-CR-0077-PPS-APR
**Page 4**
_____

care of the younger IG's; on October 6, 2010, Mr. Briseno wrote Mr. Beltran directed him to recruit additional persons into the (Northwest Indiana) IG's in order to maintain the viability of the gang; on February 1, 2011, Mr. Briseno wrote Mr. Beltran concerning the continued drug dealing of the (Northwest Indiana) IG's; on August 9, 2011, Mr. Briseno wrote to Mr. Beltran directing him to have the (Northwest Indiana) IG's in the community act together.  [*See* 4th Superseding Indictment, ¶¶ (ss), (tt), (uu), (zz), respectively]

Further, the "stone's-throw" proximity of Northwest Indiana to the city of Chicago – home of the parent IG's – cannot be overlooked.  The significantly-larger Chicago IG's have a close and interactive relationship with the Northwest Indiana IG's, in which they "post-up" together, engage in reciprocal drug sales, and trade guns back and forth with one another.  [*See* Reyes Trial Tr. Vol II, pages 387-89 (Joseph Torres testimony)]  As a result, the Chicago-based IG's are necessarily a legitimate potential threat to the sanctity of these proceedings, as well.

Mr. Briseno's trial is scheduled to begin on January 12, 2014.

## **The Standard for Empaneling an Anonymous Jury**

There is no constitutional right to a public jury.  *United States v. Lawson*, 535 F.3d 434, 441 (6th Cir. 2008).  As noted by the Sixth Circuit in *Lawson*:

> [T]he Sixth Amendment provides defendants with a right to a public *trial* by an impartial jury, but it does not guarantee a right to a public *jury*.  *See* U.S. Const. amend. VI.  Thus, the text of the Constitution does not warrant holding that defendants have a right to be informed of jurors' identities.  The absence of any right to juror identification is further demonstrated by Founding-era evidence indicating that such a right was not intended to be part of the Constitution.  *See* Kory A. Langhofer, Comment, *Unaccountable at the Founding: The Originalist Case for Anonymous Juries,* 115 Yale L.J. 1823, 1826-31 (2006).

*United States v. Lawson*, 535 F.3d at 440-41 (emphasis original).  Nevertheless, empaneling an

**GOVERNMENT'S MOTION TO EMPANEL AN ANONYMOUS JURY**
United States v. Juan Briseno
Cause No. 2:11-CR-0077-PPS-APR
**Page 5**

_____

anonymous jury "is an extreme measure that is warranted only 'where there is a strong reason to

believe that jury needs protection.'" *United States v. Mansoori*, 304 F.3d 635, 650 (7th Cir. 2002)

(*quoting United States v. Crockett*, 979 F.2d 1204, 1215 (7th Cir. 1992), *cert. denied*, 507 U.S.

998 (1993)).  Caution is important, because an anonymous jury can "raise[] the specter that the

defendant is a dangerous person from whom the jurors must be protected, thereby implicating the

defendant's constitutional right to a presumption of innocence."  *United States v. Mansoori*, 304

F.3d at 650 (*quoting United States v. Ross*, 33 F.3d 1507, 1519 (11th Cir. 1994), *cert. denied*, 515

U.S. 1132 (1995)).

Additionally, an anonymous jury may "deprive[] the defendant of information that might

help him to make appropriate challenges – in particular, peremptory challenges – during jury

selection."  *United States v. Mansoori*, 304 F.3d at 650.  "Unfortunately, in some trials, potential

jurors are at high risk of harassment, intimidation, or other unwelcome and disruptive influences.

To protect potential jurors and their families, the trial court may decide to withhold identifying

information from the parties...."  *United States v. Benabe*, 654 F.3d 753, 759-60 (7th Cir. 2011),

*cert. denied*, ___ U.S. ___, 132 S.Ct. 1986 (2012).  As a result, the Seventh Circuit reiterated:

> [N]either the right to a presumption of innocence nor the right to exercise
> peremptory challenges is a constitutional absolute; each, at times, must yield to
> the legitimate demands of trial administration and courtroom security so long as
> steps are taken to ensure that the defendant receives a fair trial.

*United States v. Mansoori*, 304 F.3d at 650; *accord United States v. Morales*, 655 F.3d 608, 620

(7th Cir. 2011), *cert. denied*, ___ U.S. ___, 132 S.Ct. 1121 (2012) ("[W]e have never held that it

is presumptively inappropriate to rely on anonymity.")  Therefore, the District Court must

"weigh the defendant's and the public's interest in preserving the presumption of innocence and

**GOVERNMENT'S MOTION TO EMPANEL AN ANONYMOUS JURY**
United States v. Juan Briseno
Cause No. 2:11-CR-0077-PPS-APR
**Page 6**

_____

in conducting a useful voir dire against the dual interests of the jurors' security and their

impartiality." *United States v. Benabe*, 654 F.3d at 760; *accord United States v. Mansoori*, 304

F.3d at 650; *United States v. Edmond*, 52 F.3d 1080, 1090 (D.C. Cir.) (*per curium*), *cert. denied*,

516 U.S. 998 (1995); *United States v. Amuso*, 21 F.3d 1251, 1264 (2d Cir.), *cert. denied*, 513

U.S. 932 (1994).

In an effort to strike the appropriate balance in the determination of whether or not an

anonymous jury is warranted, a list of factors – known as the "*Ross* Factors" -- has evolved.

These factors are:

1.    The defendant's involvement in organized crime;

2.    The defendant's participation in a group with the capacity to harm jurors;

3.    The defendant's past attempts to interfere with the judicial process;

4.    The potential that, if convicted, the defendant will suffer a lengthy incarceration and substantial monetary penalties;

5.    Extensive publicity that could enhance the possibility that jurors' names would become public and expose them to intimidation or harassment.

*See United States v. Ross*, 33 F.3d 1507, 1520 (11th Cir. 1994); *accord United States v.*

*Mansoori*, 304 F.3d at 650; *United States v. Hager*, 721 F.3d 167, 187-89 (4th Cir. 2013), *cert.*

*denied*, ___ U.S. ___, 134 S.Ct. 1936 (2014); *United States v. Hall*, 506 Fed. Appx. 245, 249-50

(4th Cir.), *cert. denied*, ___ U.S. ___, 133 S.Ct. 2754 (2013); *United States v. Ochoa-Vasquez*,

428 F.3d 1015, 1034 (11th Cir. 2005), *cert. denied*, 549 U.S. 952 (2006); *United States v.*

*Bowman*, 302 F.3d 1228, 1238-39 (11th Cir. 2002), *cert. denied*, 538 U.S. 1001 (2003); *United*

*States v. DeLuca*, 137 F.3d 24, 31-32 (1st Cir.), *cert. denied*, 525 U.S. 917 (1998); *United States*

**GOVERNMENT'S MOTION TO EMPANEL AN ANONYMOUS JURY**
United States v. Juan Briseno
Cause No. 2:11-CR-0077-PPS-APR
**Page 7**
_____

*v. Darden*, 70 F.3d 1507, 1532-33 (8th Cir. 1995), *cert. denied*, 517 U.S. 1149 (1996); *United*

*States v. Krout*, 66 F.3d 1420,1427 (5th Cir. 1995), *cert. denied*, 516 U.S. 1136 (1996); *United*

*States v. Edmond*, 52 F.3d 1080, 1091 (D.C. Cir.) (*per curium*), *cert. denied*, 516 U.S. 998

(1995).

The list of *Ross* Factors should be viewed as a whole, and the existence of any single

factor or combination of factors should not automatically compel the empaneling of an

anonymous jury. *See, e.g., United States v. Hall*, 506 Fed. Appx. at 249.

*Additional Statutory Consideration in Capital Cases*

In a capital case, such as this, there is an additional statutory consideration. 18 U.S.C. §

3432 provides that a defendant changed with a capital offense must be provided a list of potential

jurors and witnesses three days before trial, "except that such list of the veniremen and witnesses

need not be furnished if the court finds by a preponderance of the evidence that providing the list

may jeopardize the life or safety of any person." Id. When a Court is exploring whether the life

or safety of any person may be jeopardized, it may consider and be informed by the allegations

in the indictment, but because the indictment is not evidence, the Court may not rely solely on

the indictment to support its decision to empanel an anonymous jury under Section 3432. *See*

*United States v. Dinkins*, 691 F.3d 358, 373-74 (4th Cir. 2012), *cert. denied*, ___ U.S. ___, 133

S.Ct. 1278 (2013); *United States v. Udeozor*, 515 F.3d 260, 272 (4th Cir. 2008). Moreover, as

the Fourth Circuit observed in *Dinkins*, "the *Ross* factors are relevant to cases involving capital,

as well as non-capital, offenses to the extent that those factors shed light on the issue [of]

whether an anonymous jury is required to protect 'the life or safety of any person.'" 691 F.3d at

**GOVERNMENT'S MOTION TO EMPANEL AN ANONYMOUS JURY**
United States v. Juan Briseno
Cause No. 2:11-CR-0077-PPS-APR
**Page 8**
_____

373.

Because of the dangers inherent in federal capital gang prosecutions, it is not surprising

that many Courts faced with circumstances analogous to those presented here have resolved to

empanel anonymous juries. *See, e.g.*, *United States v. Dinkins,* 691 F.3d 358, 373-78 (4th Cir.

2012), *cert. denied*, ___ U.S. ___, 133 S.Ct. 1278 (2013) (anonymous jury properly empaneled

where both capital defendants were members of a gang and whose compatriots "had the capacity

to harm jurors" and "remained capable of interfering in the judicial process"); *United States v.*

*Solomon*, 387 Fed. Appx. 258, 260-61 (3[d] Cir. 2010), *cert. denied*, ___ U.S. ___, 131 U.S. 1622

(2011) (partially anonymous jury properly empaneled where capital defendant was member of

drug trafficking organization and was accused of murdering a witness's father); *United States v.*

*Quniones*, 511 F.3d 289, 295-97 (2nd Cir. 2007) (affirming district court's empaneling of

anonymous jury in capital case involving low-level drug dealers who murdered confidential

informant); *United States v. Candelario-Santana*, 909 F. Supp.2d 68, 78 (D.P.R. 2013)

(anonymous jury empaneled where capital defendant was leader of drug gang who was alleged

to have shot 29 additional people and to have killed nine of them); *United States v. Savage*, 2012

WL 4068341, *2-*3 (E.D. Pa. 2012) (anonymous jury empaneled where capital defendant was a

gang member who had a history of institutional violence and had previously attempted to tamper

with federal jurors); *United States v. Wilson*, 2013 WL 1091661 (E.D.N.Y. 2013) (anonymous

jury empaneled and semi-sequestered in retrial of penalty phase of capital trial where defendant

**GOVERNMENT'S MOTION TO EMPANEL AN ANONYMOUS JURY**
United States v. Juan Briseno
Cause No. 2:11-CR-0077-PPS-APR
**Page 9**

_____

was a gang member);[1] *United States v. Byers*, 603 F. Supp.2d 826, 830 (D. Md. 2009)

(anonymous jury empaneled where defendant accused of murdering government witnesses); *and*

*cf.*, *Allen v. United States*, 2008 WL 2754804, * 1 (E.D. Missouri 2008) (in capital trial resulting

from murder in commission of bank robbery, anonymous jury empaneled, Court called 425

persons for *voir dire* and referred to each juror only by number.)

In all cases (capital and non-capital), the District Court should place its rationale for

empaneling an anonymous jury on the record. *See United States v. Mansoori*, 304 F.3d at 651;

*but see United States v. Morales*, 655 F.3d 608, 622-24 (7th Cir. 2011), *cert. denied*, ___ U.S.

___, 132 S.Ct. 1121 (2012) (District Court's failure to place rationale on the record was harmless

error).

*Non-Prejudicial Explanation to Jury re: Anonymity*

When a Court has decided to empanel an anonymous jury, it should provide the jury with

"plausible and non-prejudicial reasons" for the anonymity, such as protection from the media

rather than protection from the defendant. In *United States v. Morales*, 655 F.3d 608 (7th Cir.

2011), the Court informed the jury venire that their names were being withheld to prevent out-of-

court contact:

> [T]he reason why we are selecting the jury in this particular way without
> disclosing names or specific addresses is because we have an ironclad rule that no
> participant can contact a jury for any reason and the jurors are not to contact any
> participant. So in order to make sure that no one contacts you we are not having

_____

[1] *See also United States v. Wilson*, 493 F. Supp.2d 397 (E.D.N.Y. 2006) (initial trial,
granting anonymous jury request where capital defendant was a violent gang member accused of
killing two New York City police officers, had a "history of interference with the judicial
process.")

**GOVERNMENT'S MOTION TO EMPANEL AN ANONYMOUS JURY**
United States v. Juan Briseno
Cause No. 2:11-CR-0077-PPS-APR
**Page 10**
_____

your name disclosed.

Id. at 623.  In *United States v. Ross*, 33 F.3d 1507 (11th Cir. 1994), the Eleventh Circuit

observed:

> Where jury anonymity is warranted, the defendant's fundamental right to an
> unbiased jury is sufficiently guaranteed by the court's conduct of a voir dire that
> can uncover any bias toward issues in the case or to the defendant himself.  *See
> Paccione,* 949 F.2d at 1192.[2]  Additionally, the danger that the jury might infer
> that the need for anonymity was attributable to the defendant's character is
> minimized when the trial court gives the jurors a plausible and nonprejudicial
> reason for hiding their identities.  *Id.*  Thus, for example, in *Thomas,* the Second
> Circuit found the court's explanation that jurors were not to reveal their identities
> to deter unwanted press attention "substantially avoided any risk of aspersions on
> the defendants." 757 F.2d at 1365.[3]

Id. at 1520.  Similarly, in the capital case of *United States v. Candelario-Santana*, 909 F.

Supp.2d 68 (D.P.R. 2012), the District Court resolved:

> As we have done in prior cases involving anonymous juries, we will "take
> adequate precautions to protect defendants' rights." *Collazo–Aponte,* 216 F.3d at
> 182.[4]  In past cases, we "did not mention any threat to juror safety, but, rather,
> informed the jurors that they would remain anonymous during the trial because
> of publicity concerns.  [We also] instructed the jury on the presumption of
> innocence, and periodically repeated that instruction as the trial progressed." *Id.*
> (quoting *Marrero–Ortiz,* 160 F.3d at 776).[5]  We will do the same here.

Id. at 78.

---

[2]  *United States v. Paccione*, 949 F.2d 1183 (2d Cir. 1991), *cert. denied*, 505 U.S. 1220.

[3]  *United States v. Thomas*, 757 F.2d 1359 (2d Cir. 1985), *cert. denied*, 479 U.S. 818
(1986).

[4]  *United States v. Collazo-Aponte*, 216 F.3d 163 (1st Cir. 2000), *cert. denied*, 537 U.S.
869 (2002).

[5]  *United States v. Marrero-Ortiz*, 160 F.3d 768 (1st Cir. 1998).

_____

Here, the Government urges the Court, in accordance with *Ross* and *Candelario-Santana*,

to instruct the jury that the trial is expected to engender significant media coverage, and

therefore the jurors' anonymity is designed to protect their privacy and the privacy of their

families from the possibility of media interest in them and potential attempts by the media to

contact them.

*Non-Identifying Biographical Information Should Be Provided*

If the Court determines to empanel an anonymous jury, the resulting anonymity should

not include a withholding of biographical information that might impair the defendant's ability

to intelligently exercise peremptory challenges.  For instance, in *United States v. Lawson*, 535

F.3d 434 (6th Cir. 2008), the Sixth Circuit countenanced:

> Having appropriately determined the need for an anonymous jury, the district
> court took proper precautions to minimize any prejudicial effects and to ensure
> that the defendants' fundamental rights were not affected.  The district court
> protected the defendants' ability to challenge potential jurors by providing that,
> even though the jurors' names would remain confidential, the defendants would
> be informed of each prospective juror's community of residence, education, and
> type of work experience.  The district court allowed for a three-day voir dire
> process, which helped to ensure that the defendants received an unbiased and
> impartial jury by giving the defendants an opportunity to detect and root out
> prejudice from the jury pool.

Id. at 440 (emphasis provided).  Similarly, in *United States v. Moore*, 651 F.3d 30 (D.C. Cir.

2011), the District of Columbia Circuit observed:

> For *voir dire,* the 46–page jury questionnaire — at least double the length of the
> jury questionnaires that passed muster in *Childress* and *Edmond* — provided
> appellants with "a broad variety of personal information, including the quadrant
> of the city in which jurors resided, their educational history, marital status,
> military service, employment status and work description, their spouse's and
> children's employment, and their experience with crime, drugs, and law
> enforcement." *Edmond,* 52 F.3d at 1092.  This sufficed "to compensate for the

_____

information denied by juror anonymity" because "[i]t elicited information ... far more extensive and detailed than the generalizations appellants might have drawn from jurors' mere names and addresses." *Id.*

Id. at 50 (emphasis provided).

Likewise, in the instant case (at the joint request of Mr. Briseno and the Government), the Court has resolved to employ an extensive and informative juror questionnaire that will provide the parties with significantly more information than they would have in an ordinary trial. As a result, Mr. Briseno's legitimate interests in intelligently exercising his peremptory challenges will be fully protected.

*Standard of Review*

On appeal, the District Court's decision to empanel an anonymous jury is reviewed for an abuse of discretion. *See United States v. Dinkins,* 691 F.3d 358, 371 (4th Cir. 2012), *cert. denied*, ___ U.S. ___, 133 S.Ct. 1278 (2013); *United States v. Benabe*, 654 F.3d 753, 760 (7th Cir. 2011), *cert. denied*, ___ U.S. ___, 132 S.Ct. 1986 (2012); *United States v. Morales*, 655 F.3d 608, 621 (7th Cir. 2011); *United States v. Moore,* 651 F.3d 30, 48 (D.C. Cir. 2011), *cert. denied*, 133 S.Ct. 714 (2013); *United States v. Stewart,* 590 F.3d 93, 124 (2d Cir. 2009), *cert. denied*, 559 U.S. 1031 (2010); *United States v. Lawson*, 535 F.3d 434, 439 (6th Cir. 2008); *United States v. Shryock,* 342 F.3d 984, 970 (9th Cir. 2003), *cert. denied*, 541 U.S. 965 (2004); *United States v. Mansoori*, 304 F.3d at 650-51 (erroneous empaneling of anonymous jury was harmless error); *United States v. Brown,* 303 F.3d 582, 601 (5th Cir. 2002), *cert. denied*, 538 U.S. 957 (2003); *United States v. Darden*, 70 F.3d 1507, 1532 (8th Cir. 1995), *cert. denied*, 518 U.S. 1026 (1996); *United States v. Ross*, 33 F.3d 1507, 1519 (11th Cir. 1994), *cert. denied*, 515 U.S. 1132 (1995).

_____

As will be seen, below, an application of the *Ross* Factors and Section 3432 to the facts

of this case weighs heavily in favor of empaneling an anonymous jury for Mr. Briseno's trial.

## AN APPLICATION OF THE *ROSS* FACTORS WARRANTS THE EMPANELING OF AN ANONYMOUS JURY

As established above, Courts faced with a request for an anonymous jury regularly

inform their decisions by resort to the "*Ross* Factors," albeit recognizing that the existence of any

single factor or combination of factors does not automatically compel the empaneling of an

anonymous jury.  To reiterate, the *Ross* Factors are:

1. The defendant's involvement in organized crime;

2. The defendant's participation in a group with the capacity to harm jurors;

3. The defendant's past attempts to interfere with the judicial process;

4. The potential that, if convicted, the defendant will suffer a lengthy incarceration and substantial monetary penalties;

5. Extensive publicity that could enhance the possibility that jurors' names would become public and expose them to intimidation or harassment.

*See United States v. Ross*, 33 F.3d 1507, 1520 (11th Cir. 1994); *United States v. Mansoori*, 304

F.3d at 650; *United States v. Hager*, 721 F.3d 167, 187-89 (4th Cir. 2013), *cert. denied*, ___ U.S.

___, 134 S.Ct. 1936 (2014); *United States v. Hall*, 506 Fed. Appx. 245, 249-50 (4th Cir.), *cert.*

*denied*, ___ U.S. ___, 133 S.Ct. 2754 (2013); *United States v. Ochoa-Vasquez*, 428 F.3d 1015,

1034 (11th Cir. 2005), *cert. denied*, 549 U.S. 952 (2006); *United States v. Bowman*, 302 F.3d

1228, 1238-39 (11th Cir. 2002), *cert. denied*, 538 U.S. 1001 (2003); *United States v. DeLuca*, 137

F.3d 24, 31-32 (1st Cir.), *cert. denied*, 525 U.S. 917 (1998); *United States v. Darden*, 70 F.3d

1507, 1532-33 (8th Cir. 1995), *cert. denied*, 517 U.S. 1149 (1996); *United States v. Krout*, 66

**GOVERNMENT'S MOTION TO EMPANEL AN ANONYMOUS JURY**
United States v. Juan Briseno
Cause No. 2:11-CR-0077-PPS-APR
**Page 14**

_____

F.3d 1420,1427 (5th Cir. 1995), *cert. denied*, 516 U.S. 1136 (1996); *United States v. Edmond*, 52

F.3d 1080, 1091 (D.C. Cir.) (*per curium*), *cert. denied*, 516 U.S. 998 (1995).

As will be demonstrated below, under the facts of this case, each of the five *Ross* Factors

is satisfied, which, in turn, weighs heavily in favor of empaneling an anonymous jury in this

capital case. *See, e.g., United States v. Dinkins*, 691 F.3d at 373 ("the *Ross* factors are relevant

to cases involving capital, as well as non-capital, offenses to the extent that those factors shed

light on the issue [of] whether an anonymous jury is required to protect 'the life or safety of any

person.'") We now examine each of the *Ross* Factors *seriatim*.

**1. The defendant's involvement in organized crime.**

The Government's evidence establishes beyond cavil that Mr. Briseno is a leader in the

multi-state criminal RICO enterprise known as the Almighty Imperial Gangster Nation. As

more fully set forth in the Fourth Superseding Indictment, Mr. Briseno and his 23 former co-

defendants in this case are/were members of one of two Northwest Indiana chapters of the

Almighty Imperial Gangster Nation street gang (the "IG's"), who, together with their unindicted

co-conspirators, some of whom are now deceased, plagued and terrorized various streets and

neighborhoods in and around East Chicago, Indiana, for more than a generation, by and through

organized and systematic drug dealing, shootings, murders, robberies, carjackings, burglaries,

and other criminal conduct. [*See generally*, 4th Superseding Indictment] Between 2002 and

2011, the two Northwest Indiana chapters of the Imperial Gangsters committed 13 murders and

19 attempted murders, of which Mr. Briseno committed or participated in six murders and seven

attempted murders. [*See* Id.]

_____

The Imperial Gangsters were initially born in Chicago, Illinois. [Reyes Tr. Vol. II [DE # 903] , page 387 (Joseph Torres testimony)]  Thereafter, the gang created various chapters in and around Chicago, Northwest Indiana, Orlando, Florida, and Miami, Florida.  More ominously, still, the IG's are a generational enterprise, where sons follow fathers, and nephews follow uncles, to become lifelong members of the gang.  [*See, e.g.*,  Reyes Trial Tr. Vol II, pages 333-35 (Joseph Torres testimony –  IG Joseph Torres is the son of IG Mario Torres, Sr., the brother of IG Mario Torres, Jr., the nephew of IG Eddie Torres, Sr.; the cousin of IG Eddie Torres, Jr., the cousin of IG Julius Solis, and the cousin of IG Richard Reyes.)]

The IG's are a particularly violent and vicious street gang, who go to extreme lengths to shoot and kill those who are viewed as threats to the IG's or are perceived as disloyal to them. [*See, e.g.*, 4th Superseding Indictment [DE #652], ¶¶ 1-22, 23(e), (h), (n), (o), ( r), (s), (v), (z), (cc), (dd), (hh), (jj), (ll), (mm), (oo), (qq), (xx), (ddd); Reyes Trial Tr. Vol I [DE #894], pages 247-51 (S.A. Gore testimony); Reyes Trial Tr. Vol II [DE #903], pages 318-72 (Joseph Torres testimony); Reyes Trial Tr. Vol II, pages 530-73 (Ace Cortez testimony); Reyes Trial Tr. Vol III [DE #904], pages 644-717 (Antony Baldazo testimony).  For instance, when a group of Northwest Indiana IG's broke away from the IG's – and became known as the "Renegade IG's" -- the original IG's (i) hunted down and killed Renegade IG Mario Soriano [*see* 4th Superseding Indictment, Counts 12-13 & ¶ 23(s); Julian Serna Plea/Draft PSI [DE #957], ¶¶ 38-44, 47, 52, 54, 57; Reyes Trial Tr. Vol. II, pages 472-86 (Chris DeLaCruz testimony)]; Reyes Trial Tr. Vol II [DE #903], page 371 (Joseph Torres testimony); Reyes Trial Tr. Vol III, pages 680-82 (Anthony Baldazo testimony); (ii) tried to murder Renegade IG Rolando Leal [Reyes Trial Tr.

**GOVERNMENT'S MOTION TO EMPANEL AN ANONYMOUS JURY**
<u>United States v. Juan Briseno</u>
Cause No. 2:11-CR-0077-PPS-APR
**Page 16**

_____

<u>Vol III</u>, pages 680-82 (Anthony Baldazo testimony)]; (iii) tried to murder Renegade IG Eddie

Soriano  [<u>Reyes Trial Tr. Vol II</u>, page 371 (Joseph Torres testimony)]; and (iv) murdered

Renegade IG Alonzo Cavasos [*see* <u>4th Superseding Indictment</u>, ¶ 23(cc)]; <u>Reyes Trial Tr. Vol II</u>,

pages 371 (Joseph Torres testimony)]

When the IG's suspected that one of their members ("Victim 5") might be cooperating

with law enforcement, they shot at and attempted to murder Victim 5 and his mother.   [*See* <u>4th</u>

<u>Superseding Indictment</u>, Counts 31-32 & ¶ 23(xx); <u>Jason Medina Plea/Draft PSI</u> [DE #930], ¶¶

1, 21-24; <u>Edward Serna/Draft PSI</u> [DE #927], ¶¶ 1, 8, 35-b), 37, 39, 42]; <u>Reyes Trial Tr. Vol III</u>,

pages 687-89 (Anthony Baldazo testimony)]

As the public record in this case confirms, to date, twenty-three (23) of Mr. Briseno's

Imperial Gangster co-defendants have either pled guilty to the IG RICO conspiracy and, *inter*

*alia*, various murders or attempted murders, or have gone to trial and been convicted of all

RICO, VICAR, and drug conspiracy charges.

As a result, the first *Ross* Factor weighs heavily in favor of empaneling an anonymous

jury.

### 2.  The defendant's participation in a group with the capacity to harm jurors.

The Government's evidence establishes that the IG's remain active in Chicago, which is

minutes away from the federal Court House in Hammond, Indiana and is in relatively close

proximity to all portions of the Northern District of Indiana, from which the jury venire is

necessarily drawn.  The significantly more-numerous Chicago IG's have a close and interactive

relationship with the Northwest Indiana IG's, in that they "post-up" together protecting each

_____

other's turfs, engage in reciprocal drug sales, and trade guns back and forth with one another.

[*See* Reyes Trial Tr. Vol II, pages 387-89 (Joseph Torres testimony)]  Moreover, as the Court is

aware, in this increasingly advanced internet and digital world, it is exceedingly easy for

motivated persons to identify and locate the residences and family members of almost anyone in

the United States.  As a result, the Chicago-based IG's must be seen as a potential threat to the

sanctity of these proceedings.  Additionally, because the IG's have chapters in Miami, Florida

and Orlando, Florida, from which they can draw additional non-local "resources," if desired,,

they must be viewed as a potential threat, as well.

Therefore, the second *Ross* Factor also weighs strongly in favor of empaneling an

anonymous jury.

### 3.  The defendant's past attempts to interfere with the judicial process.

While Mr. Briseno was a leader of a chapter of the Northwest Indiana IG's, they

attempted to murder Victim 5 and his mother, because of Victim 5's suspected cooperation with

the Government.  [*See* 4th Superseding Indictment, Counts 31-32 & ¶ 23(xx); Jason Medina

Plea/Draft PSI, ¶¶ 1, 21-24; Edward Serna/Draft PSI, ¶¶ 1, 8, 35-b), 37, 39, 42]; Reyes Trial Tr.

Vol III, pages 687-89 (Anthony Baldazo testimony)]  *And see, e.g., United States v. Dinkins,* 691

F.3d 358, 373-78 (4th Cir. 2012), *cert. denied*, ___ U.S. ___, 133 S.Ct. 1278 (2013) (anonymous

jury properly empaneled where both capital defendants were members of a gang and whose

compatriots "had the capacity to harm jurors" and "remained capable of interfering in the

judicial process"); *United States v. Solomon*, 387 Fed. Appx. 258, 260-61 (3d Cir. 2010) (holding

trial court did not err in empaneling partially anonymous jury where defendant stood accused of

**GOVERNMENT'S MOTION TO EMPANEL AN ANONYMOUS JURY**
United States v. Juan Briseno
Cause No. 2:11-CR-0077-PPS-APR
**Page 18**
_____

murdering a witness's father); *United States v. Quniones*, 511 F.3d 289, 295-97 (2nd Cir. 2007)

(affirming district court's empaneling of anonymous jury in capital case involving low-level

drug dealers who murdered confidential informant); *United States v. Byers*, 603 F. Supp.2d 826,

830 (D. Md. 2009) (granting Government's request for an anonymous jury where the defendant's

conduct, which included murdering government witnesses.)  In addition, while preventively

detained, Mr. Briseno has continued his efforts to actively direct the activities of his Northwest

Indiana chapter of the IG's.   [*See, e.g.,* 4th Superseding Indictment, ¶¶ (ss), (tt), (uu), (zz)]

As a result, the third *Ross* Factor also weighs strongly in favor of empaneling an

anonymous jury.

### 4.  The potential that, if convicted, the defendant will suffer a lengthy incarceration and substantial monetary penalties.

Here, if convicted, Mr. Briseno is facing the ultimate penalty.  Indeed, if convicted of the

charges against him, the most lenient sentence Mr. Briseno can lawfully receive is life

imprisonment without the possibility of release.   As a result, in the capital case of *United States*

*v. Hager*, 721 F.3d 167 (4th Cir. 2013), *cert. denied*, ___ U.S. ___, 134 S.Ct. 1936 (2014), the

Four Circuit noted:

> Hager, of course, makes no claim regarding [*Ross*] factor four, "the potential that,
> if convicted, the defendant will suffer a lengthy incarceration and substantial
> monetary penalties." *Id.*  Of course, how could he?  This is a capital case in the
> which the maximum penalty is death.  This "potential punishment[ ] lend[s]
> support to a conclusion that [Hager] had an incentive to resort to 'extreme
> measures in any effort to influence the outcome of [his] trial.'" *Dinkins*, 691 F.3d
> at 376[6] (quoting *United States v. DeLuca,* 137 F.3d 24, 32 (1st Cir.1998)).

_____

[6] *United States v. Dinkins*, 691 F.3d 358 (4th Cir. 2012), *cert. denied*, ___ U.S. ___, 133
S.Ct. 1278 (2013).

_____

<u>Id</u>. at 188.

Plainly, the same considerations and conclusion obtain here.

As a result, the fourth *Ross* Factor also weighs heavily in favor of empaneling an

anonymous jury.

> **5. Extensive publicity that could enhance the possibility that jurors' names would become public and expose them to intimidation or harassment.**

As the Court is aware, the prosecution of the twenty-four (24) Imperial Gangsters who

were indicted in this investigation has attracted significant and repeated media attention,

including *inter alia* the guilty pleas of twenty-two (22) of Mr. Briseno's co-defendants.  More

recently, the January 2014 (non-capital) trial and conviction of IG Richard Reyes was well-

covered by the media.  Certainly, the media is aware the Mr. Briseno is the only capital

defendant among the twenty-four Imperial Gangsters who were indicted in this case, and that

Mr. Briseno is charged with personally committing or participating in six murders and seven

attempted murders.  Therefore, it naturally follows that there will be extensive publicity

surrounding Mr. Briseno's trial.  Such publicity will necessarily enhance the possibility that the

names of the jurors will become public and, in turn, could expose the jurors to the possibility of

intimidation and harassment.

As a result, the fifth *Ross* Factor weighs significantly in favor of empaneling an

anonymous jury, as well.

Because all of the *Ross* Factors all weigh in favor of empaneling an anonymous jury, and

because those same considerations support by a preponderance of evidence the Section 3432

standard that the provision of the names and/or identifying information of the jury venire "may

**GOVERNMENT'S MOTION TO EMPANEL AN ANONYMOUS JURY**
United States v. Juan Briseno
Cause No. 2:11-CR-0077-PPS-APR
**Page 20**
_____

jeopardize the life or safety of any person," *See United States v. Dinkins*, 691 F.3d at 373, the

Court should empanel an anonymous jury for Mr. Briseno's trial.  *See, e.g., United States v.*

*Dinkins,* 691 F.3d 358, 373-78 (4th Cir. 2012), *cert. denied*, ___ U.S. ___, 133 S.Ct. 1278 (2013)

(anonymous jury properly empaneled where both capital defendants were members of a gang

and whose compatriots "had the capacity to harm jurors" and "remained capable of interfering in

the judicial process"); *United States v. Solomon*, 387 Fed. Appx. 258, 360-61 (3d Cir. 2010)

(holding trial court in capital case properly empaneled a partially anonymous jury where

defendant stood accused of murdering a witness's father); *United States v. Quniones*, 511 F.3d

289, 295-97 (2nd Cir. 2007) (affirming district court's empaneling of anonymous jury in capital

case involving low-level drug dealers who murdered confidential informant); *United States v.*

*Candelario-Santana*, 909 F. Supp.2d 68, 78 (D.P.R. 2013) (anonymous jury empaneled in capital

case where leader of violent drug gang was alleged to have shot 29 additional people and to have

killed nine of them); *United States v. Savage*, 2012 WL 4068341, *2-*3 (E.D. Pa. 2012)

(granting government request for an anonymous jury in capital case where defendant had a

history of institutional violence and had previously attempted to tamper with federal); *United*

*States v. Wilson*, 2013 WL 1091661 (E.D.N.Y. 2013) (on retrial of penalty phase of capital case,

granting motion of anonymous and semi-sequestered jury in retrial where defendant murdered

two undercover police officers); *United States v. Byers*, 603 F. Supp.2d 826, 830 (D. Md. 2009)

(granting Government's request for an anonymous jury in capital case where the defendant's

conduct included murdering government witnesses and where defendant demonstrated

willingness and ability to interfere with the judicial process).

**GOVERNMENT'S MOTION TO EMPANEL AN ANONYMOUS JURY**
United States v. Juan Briseno
Cause No. 2:11-CR-0077-PPS-APR
**Page 21**
_____

For each of these independent reasons, the Government moves the Court to empanel an

anonymous jury for the trial of Mr. Briseno.

Respectfully submitted,
DAVID CAPP
UNITED STATES ATTORNEY


s/ *David J. Nozick*

David J. Nozick
Assistant U.S. Attorney
5400 Federal Plaza
Suite 1500
Hammond, IN 46320
Tel. (219) 937-5655
www.david.nozick@usdoj.gov



s/ *Bruce R. Hegyi*

Bruce R. Hegyi
Trial Attorney
Capital Case Section
Criminal Division
United States Department of Justice
1331 F Street, N.W., Third Floor
Washington, D.C.  20530
Tel. (202) 616-4582
Cell (703) 536-4774
www.bruce.hegyi@usdoj.gov

**GOVERNMENT'S MOTION TO EMPANEL AN ANONYMOUS JURY**
United States v. Juan Briseno
Cause No. 2:11-CR-0077-PPS-APR
**Page 22**

_____

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this date, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to both counsel for defendant Juan Briseno.

_s/ Bruce R. Hegyi_
Bruce R. Hegyi
Trial Attorney

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

UNITED STATES OF AMERICA,

          **Plaintiff**

vs

JUAN BRISENO,

          **Defendant**                  **CAUSE NO:   2:11-CR-77**

**MOTION FOR EXTENSION OF TIME TO FILE**
**MOTIONS CHALLENGING THE DEATH PENALTY ACT**

Comes now Defendant Juan Briseno, by counsel John Maksimovich and Arlington Foley, and moves the court for an extension of time within which to file motions challenging the Federal Death Penalty Act or the government's Notice of Intent to seek the death penalty and represents the following to the Court:

1.      On or about June 30, 2014, this Court entered an Amended Order setting Friday August 15, 2014 as the date by which Defendant Juan Briseno must file any motions challenging the Federal Death Penalty Act or the government's Notice of Intent to seek the death penalty. The Court also set Tuesday September 16, 2014 as the date by which the government's memorandum in opposition must be filed and Tuesday September 30, 2014 as the date by which Defendant's reply must be filed.

2.      Attorneys John Maksimovich and Arlington Foley have been diligently preparing Defendant's motions, however, they require one week additional time to prepare said motions.

3.      Attorney John Maksimovich contacted Assistant U.S. Attorney Bruce Hegyi and the government has no objection to the request for one week of additional time to file motions challenging the Federal Death Penalty Act or the government's Notice of Intent to seek the death penalty.

-1-

1612

4.      The Defendant and the government are in agreement that all dates regarding the filing of motions challenging the death penalty act or the government's Notice of Intent should be extended one week, more specifically, the defendant's should have up to and including Friday, August 22, 2014 to file any motions challenging the Federal Death Penalty Act or the government's Notice of Intent to seek the death penalty, the government should have up to and including Tuesday September 23, 2014 to file any memorandum in opposition and the Defendant should have up to and including Tuesday, October 7, 2014 to file a reply.

WHEREFORE,  Defendant requests additional time up to and including Friday, August 22, 2014 to file motions challenging the Federal Death Penalty Act or the government's Notice of Intent to seek the death penalty, the government should have up to and including Tuesday September 23, 2014 to file any memorandum in opposition and the Defendant should have up to and including Tuesday, October 7, 2014 to file a reply, along with all other just and proper relief.


**Respectfully submitted:**

/s/ *Arlington Foley*                                      /s/ *John Maksimovich*
_____                          _____

Arlington Foley /#6905-45                             John Maksimovich /#9950-45
Attorney For Defendant                                 Attorney For Defendant
1942 North Main Street                                 1946 North Main Street
Crown Point, IN 46307                                 Crown Point, IN 46307
PH: 219.661.1200                                       PH: 219.663.1900
FX: 219.661.1205                                       FX: 219.663.1908


-2-

1613

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | |
| **Plaintiff** | |
| **vs** | |
| **JUAN BRISENO,** | |
| **Defendant** | **CAUSE NO:   2:11-CR-77** |

## CERTIFICATE OF SERVICE

I hereby certify that on August 14, 2014, I electronically filed:

*Motion for Extension of Time to File Motions Challenging the Death Penalty Act*

with the Clerk of the Court using the CM/ECF system, which sent notification of such filing to the following:

David J. Nozick                                            Bruce Hegyi
Assistant United States Attorney           Assistant United States Attorney

and I hereby certify that I have mailed by United States Postal Service, the document to the following non-CM/ECF participants:

N/A

By:     /s/ *John Maksimovich*

John Maksimovich /#9950-45
Attorney For Defendant
1946 North Main Street
Crown Point, IN 46307
PH: 219.663.1900
FX: 219.663.1908
Email: jm@johnmaksimovich.com

-3-

```
MIME-Version:1.0
From:CMECFinnd@innd.uscourts.gov
To:CMECFinnd@localhost.localdomain
Bcc:
--Case Participants: Bryan M Truitt (bryan@tblawyers.com, sherrie@tblawyers.com), David J
Nozick - AUSA (david.nozick@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov,
susan.devries@usdoj.gov, usainn.ecfcivil@usdoj.gov), Kurt R Earnst (kre@braje-nelson.com),
Paul Jeffrey Schlesinger (pjeffslaw@aol.com), Pablo DeCastro
(pdecastro@rascia-decastro.com, ysierra@rascia-decastro.com), Sheldon B Nagelberg
(sbnagelberglaw@att.net), Richard C Wolter (b.lynneadams@yahoo.com), John T Theis
(theislaw@aol.com), Catherine A Lake (attyclake@sbcglobal.net), Adam Tavitas
(adtavitas@aol.com, b.lynneadams@yahoo.com), Dean R Lanter - AUSA (dean.lanter@usdoj.gov,
janet.eisenmann@usdoj.gov, usainn.ecfcivil@usdoj.gov), John E Martin - FCD
(john_martin@fd.org), Mark A Psimos (psimoslaw@airbaud.net), Ihor Alexander Woloshansky
(ihorlawyer@hotmail.com), James N Thiros (jim@thiros.com, lynn@thiros.com), Robert L
Rascia (rrascia@rascia-decastro.com, ysierra@rascia-decastro.com), Gojko Kasich
(gkasich@crownlaw.com, gkasich@gmail.com), Roxanne Mendez Johnson (attorneyrmj@gmail.com),
Visvaldis P Kupsis (vpkupsis@hotmail.com), Jack Friedlander (jack@jackfriedlander.com,
office@jackfriedlander.com), Bruce R Hegyi - AUSA (bruce.hegyi@usdoj.gov), John
Maksimovich (criminallaw@johnmaksimovich.com), David E Vandercoy
(david.vandercoy@valpo.edu), Arlington J Foley (arlingtonfoley@att.net), Scott L King
(dwilliams@scottkinggroup.com, sking@scottkinggroup.com), Stephen Edward Scheele
(pkd@gk4law.com, ses@gk4law.com), Thomas W Vanes (b.lynneadams@yahoo.com,
tom.vanes@sbcglobal.net), R Brian Woodward (carolb@wbbklaw.com, rbwoodward@wbbklaw.com),
Magistrate Judge Andrew P Rodovich (rodovich_chambers@innd.uscourts.gov), Chief Judge
Philip P Simon (denise_woodside@innd.uscourts.gov, jacob_hamann@innd.uscourts.gov,
lauren_schwartz@innd.uscourts.gov, mira_serrill-robins@innd.uscourts.gov,
noel_collins@innd.uscourts.gov, philip_simon@innd.uscourts.gov)
--Non Case Participants: Matthew D Soliday (office@matthewsolidaylaw.com),
Probation/Pretrial Services (innpml_cmecf@innd.uscourts.gov), U S Marshal
(inn.docket-fw@usdoj.gov, inn.docket-sb@usdoj.gov, usms.27@usdoj.gov)
--No Notice Sent:

Message-Id:2591089@innd.uscourts.gov
Subject:Activity in Case 2:11-cr-00077-PPS-APR United States of America v. Briseno et al
Order on Motion for Extension of Time to File
Content-Type: text/html
```

## U.S. District Court Northern District of Indiana [LIVE]

## USDC Northern Indiana

## Notice of Electronic Filing

The following transaction was entered on 8/18/2014 at 10:19 AM EST and filed on 8/18/2014

| | |
|---|---|
| **Case Name:** | United States of America v. Briseno et al |
| **Case Number:** | 2:11-cr-00077-PPS-APR |
| **Filer:** | |
| **Document Number:** | 1018(No document attached) |

**Docket Text:**
**ORDER granting [1014] Motion for Extension of Time to File as to Juan Briseno (1). Defendant Juan Briseno's pretrial motions challenging the Federal Death Penalty Act or the government's Notice of Intent to seek the death penalty due by 8/22/2014. Government responses due by 9/23/2014. Defendant's reply brief due by 10/7/2014. Signed by Chief Judge Philip P Simon on 8/18/2014. (dkw)**

**2:11−cr−00077−PPS−APR−1 Notice has been electronically mailed to:**

David E Vandercoy    david.vandercoy@valpo.edu

Arlington J Foley    arlingtonfoley@att.net

Mark A Psimos    psimoslaw@airbaud.net

Gojko Kasich    gkasich@crownlaw.com, gkasich@gmail.com

Scott L King    sking@scottkinggroup.com, dwilliams@scottkinggroup.com

Catherine A Lake    attyclake@sbcglobal.net

James N Thiros    jim@thiros.com, lynn@thiros.com

Thomas W Vanes    tom.vanes@sbcglobal.net, b.lynneadams@yahoo.com

Ihor Alexander Woloshansky    ihorlawyer@hotmail.com

R Brian Woodward    rbwoodward@wbbklaw.com, carolb@wbbklaw.com

John Maksimovich    criminallaw@johnmaksimovich.com

Visvaldis P Kupsis    vpkupsis@hotmail.com

Sheldon B Nagelberg    sbnagelberglaw@att.net

John E Martin − FCD    john_martin@fd.org

Adam Tavitas    Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander    jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele    ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst    kre@braje−nelson.com

Bryan M Truitt    bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis    theislaw@aol.com

Robert L Rascia    rrascia@rascia−decastro.com, ysierra@rascia−decastro.com

Paul Jeffrey Schlesinger    pjeffslaw@aol.com

Pablo DeCastro    pdecastro@rascia−decastro.com, ysierra@rascia−decastro.com

Dean R Lanter − AUSA    dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov,
janet.eisenmann@usdoj.gov

David J Nozick – AUSA    David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov,
janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson    attorneyrmj@gmail.com

Bruce R Hegyi – AUSA    bruce.hegyi@usdoj.gov

**2:11−cr−00077−PPS−APR−1 Notice has been delivered by U.S. Mail or other means to:**

```
MIME-Version:1.0
From:CMECFinnd@innd.uscourts.gov
To:CMECFinnd@localhost.localdomain
Bcc:
--Case Participants: Bryan M Truitt (bryan@tblawyers.com, sherrie@tblawyers.com), David J
Nozick - AUSA (david.nozick@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov,
susan.devries@usdoj.gov, usainn.ecfcivil@usdoj.gov), Paul Jeffrey Schlesinger
(pjeffslaw@aol.com), Pablo DeCastro (pdecastro@rascia-decastro.com,
ysierra@rascia-decastro.com), Sheldon B Nagelberg (sbnagelberglaw@att.net), Thomas W Vanes
(b.lynneadams@yahoo.com, tom.vanes@sbcglobal.net), Richard C Wolter
(b.lynneadams@yahoo.com), John T Theis (theislaw@aol.com), Catherine A Lake
(attyclake@sbcglobal.net), Adam Tavitas (adtavitas@aol.com, b.lynneadams@yahoo.com), Dean
R Lanter - AUSA (dean.lanter@usdoj.gov, janet.eisenmann@usdoj.gov,
usainn.ecfcivil@usdoj.gov), John E Martin - FCD (john_martin@fd.org), Scott L King
(dwilliams@scottkinggroup.com, sking@scottkinggroup.com), Mark A Psimos
(psimoslaw@airbaud.net), Ihor Alexander Woloshansky (ihorlawyer@hotmail.com), James N
Thiros (jim@thiros.com, lynn@thiros.com), Robert L Rascia (rrascia@rascia-decastro.com,
ysierra@rascia-decastro.com), Gojko Kasich (gkasich@crownlaw.com, gkasich@gmail.com),
Arlington J Foley (arlingtonfoley@att.net), Roxanne Mendez Johnson
(attorneyrmj@gmail.com), Visvaldis P Kupsis (vpkupsis@hotmail.com), Stephen Edward Scheele
(pkd@gk4law.com, ses@gk4law.com), Jack Friedlander (jack@jackfriedlander.com,
office@jackfriedlander.com), Bruce R Hegyi - AUSA (bruce.hegyi@usdoj.gov), R Brian
Woodward (carolb@wbbklaw.com, rbwoodward@wbbklaw.com), John Maksimovich
(criminallaw@johnmaksimovich.com), David E Vandercoy (david.vandercoy@valpo.edu), Kurt R
Earnst (kre@braje-nelson.com), Magistrate Judge Andrew P Rodovich
(rodovich_chambers@innd.uscourts.gov), Chief Judge Philip P Simon
(denise_woodside@innd.uscourts.gov, jacob_hamann@innd.uscourts.gov,
lauren_schwartz@innd.uscourts.gov, mira_serrill-robins@innd.uscourts.gov,
noel_collins@innd.uscourts.gov, philip_simon@innd.uscourts.gov)
--Non Case Participants: Matthew D Soliday (office@matthewsolidaylaw.com)
--No Notice Sent:

Message-Id:2591288@innd.uscourts.gov
Subject:Activity in Case 2:11-cr-00077-PPS-APR United States of America v. Briseno et al
Order on Motion to Seal Document
Content-Type: text/html
```

## U.S. District Court Northern District of Indiana [LIVE]

## USDC Northern Indiana

## Notice of Electronic Filing

The following transaction was entered on 8/18/2014 at 12:53 PM EST and filed on 8/18/2014

| | |
|---|---|
| **Case Name:** | United States of America v. Briseno et al |
| **Case Number:** | 2:11–cr–00077–PPS–APR |
| **Filer:** | |
| **Document Number:** | 1021(No document attached) |

**Docket Text:**
 **ORDER granting [1016] Motion to Seal Document as to Juan Briseno (1). Signed by Chief Judge Philip P Simon on 8/18/2014. (dkw)**

**2:11–cr–00077–PPS–APR–1 Notice has been electronically mailed to:**

David E Vandercoy    david.vandercoy@valpo.edu

Arlington J Foley    arlingtonfoley@att.net

Mark A Psimos    psimoslaw@airbaud.net

Gojko Kasich    gkasich@crownlaw.com, gkasich@gmail.com

Scott L King    sking@scottkinggroup.com, dwilliams@scottkinggroup.com

Catherine A Lake    attyclake@sbcglobal.net

James N Thiros    jim@thiros.com, lynn@thiros.com

Thomas W Vanes    tom.vanes@sbcglobal.net, b.lynneadams@yahoo.com

Ihor Alexander Woloshansky    ihorlawyer@hotmail.com

R Brian Woodward    rbwoodward@wbbklaw.com, carolb@wbbklaw.com

John Maksimovich    criminallaw@johnmaksimovich.com

Visvaldis P Kupsis    vpkupsis@hotmail.com

Sheldon B Nagelberg    sbnagelberglaw@att.net

John E Martin – FCD    john_martin@fd.org

Adam Tavitas    Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander    jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele    ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst    kre@braje–nelson.com

Bryan M Truitt    bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis    theislaw@aol.com

Robert L Rascia    rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger    pjeffslaw@aol.com

Pablo DeCastro    pdecastro@rascia–decastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA    dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov,
janet.eisenmann@usdoj.gov

David J Nozick – AUSA    David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov,
janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson    attorneyrmj@gmail.com

Bruce R Hegyi – AUSA    bruce.hegyi@usdoj.gov

**2:11–cr–00077–PPS–APR–1 Notice has been delivered by U.S. Mail or other means to:**

```
MIME-Version:1.0
From:CMECFinnd@innd.uscourts.gov
To:CMECFinnd@localhost.localdomain
Bcc:
--Case Participants: Bryan M Truitt (bryan@tblawyers.com, sherrie@tblawyers.com), David J
Nozick - AUSA (david.nozick@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov,
susan.devries@usdoj.gov, usainn.ecfcivil@usdoj.gov), Kurt R Earnst (kre@braje-nelson.com),
Paul Jeffrey Schlesinger (pjeffslaw@aol.com), Pablo DeCastro
(pdecastro@rascia-decastro.com, ysierra@rascia-decastro.com), Sheldon B Nagelberg
(sbnagelberglaw@att.net), Thomas W Vanes (b.lynneadams@yahoo.com,
tom.vanes@sbcglobal.net), Richard C Wolter (b.lynneadams@yahoo.com), John T Theis
(theislaw@aol.com), Catherine A Lake (attyclake@sbcglobal.net), Adam Tavitas
(adtavitas@aol.com, b.lynneadams@yahoo.com), Dean R Lanter - AUSA (dean.lanter@usdoj.gov,
janet.eisenmann@usdoj.gov, usainn.ecfcivil@usdoj.gov), John E Martin - FCD
(john_martin@fd.org), Scott L King (dwilliams@scottkinggroup.com,
sking@scottkinggroup.com), Mark A Psimos (psimoslaw@airbaud.net), Ihor Alexander
Woloshansky (ihorlawyer@hotmail.com), James N Thiros (jim@thiros.com, lynn@thiros.com),
Robert L Rascia (rrascia@rascia-decastro.com, ysierra@rascia-decastro.com), Gojko Kasich
(gkasich@crownlaw.com, gkasich@gmail.com), Arlington J Foley (arlingtonfoley@att.net),
Roxanne Mendez Johnson (attorneyrmj@gmail.com), Visvaldis P Kupsis (vpkupsis@hotmail.com),
Stephen Edward Scheele (pkd@gk4law.com, ses@gk4law.com), Jack Friedlander
(jack@jackfriedlander.com, office@jackfriedlander.com), Bruce R Hegyi - AUSA
(bruce.hegyi@usdoj.gov), R Brian Woodward (carolb@wbbklaw.com, rbwoodward@wbbklaw.com),
John Maksimovich (criminallaw@johnmaksimovich.com), David E Vandercoy
(david.vandercoy@valpo.edu), Magistrate Judge Andrew P Rodovich
(rodovich_chambers@innd.uscourts.gov), Chief Judge Philip P Simon
(collins_noel@innd.uscourts.gov, denise_woodside@innd.uscourts.gov,
jacob_hamann@innd.uscourts.gov, kevin_krikau@innd.uscourts.gov,
lauren_schwartz@innd.uscourts.gov, mira_serrill-robins@innd.uscourts.gov,
philip_simon@innd.uscourts.gov)
--Non Case Participants: Matthew D Soliday (office@matthewsolidaylaw.com)
--No Notice Sent:

Message-Id:2594999@innd.uscourts.gov
Subject:Activity in Case 2:11-cr-00077-PPS-APR United States of America v. Briseno et al
Order on Motion to Seal Document
Content-Type: text/html
```

### U.S. District Court Northern District of Indiana [LIVE]

### USDC Northern Indiana

## Notice of Electronic Filing

The following transaction was entered on 8/22/2014 at 2:21 PM EST and filed on 8/22/2014

| | |
|---|---|
| **Case Name:** | United States of America v. Briseno et al |
| **Case Number:** | 2:11-cr-00077-PPS-APR |
| **Filer:** | |
| **Document Number:** | 1025(No document attached) |

**Docket Text:**

**ORDER granting [1023] Motion to Seal Document as to Juan Briseno (1). Signed by Chief Judge Philip P Simon on 8/22/2014. (dkw)**

**2:11-cr-00077-PPS-APR-1 Notice has been electronically mailed to:**

David E Vandercoy    david.vandercoy@valpo.edu

Arlington J Foley    arlingtonfoley@att.net

Mark A Psimos    psimoslaw@airbaud.net

Gojko Kasich    gkasich@crownlaw.com, gkasich@gmail.com

Scott L King    sking@scottkinggroup.com, dwilliams@scottkinggroup.com

Catherine A Lake    attyclake@sbcglobal.net

James N Thiros    jim@thiros.com, lynn@thiros.com

Thomas W Vanes    tom.vanes@sbcglobal.net, b.lynneadams@yahoo.com

Ihor Alexander Woloshansky    ihorlawyer@hotmail.com

R Brian Woodward    rbwoodward@wbbklaw.com, carolb@wbbklaw.com

John Maksimovich    criminallaw@johnmaksimovich.com

Visvaldis P Kupsis    vpkupsis@hotmail.com

Sheldon B Nagelberg    sbnagelberglaw@att.net

John E Martin – FCD    john_martin@fd.org

Adam Tavitas    Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander    jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele    ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst    kre@braje–nelson.com

Bryan M Truitt    bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis    theislaw@aol.com

Robert L Rascia    rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger    pjeffslaw@aol.com

Pablo DeCastro    pdecastro@rascia–decastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA    dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov,
janet.eisenmann@usdoj.gov

David J Nozick – AUSA    David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov,
janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

1622

Roxanne Mendez Johnson    attorneyrmj@gmail.com

Bruce R Hegyi – AUSA    bruce.hegyi@usdoj.gov

**2:11–cr–00077–PPS–APR–1 Notice has been delivered by U.S. Mail or other means to:**

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | |
| **Plaintiff** | |
| **vs** | |
| **JUAN BRISENO,** | |
| **Defendant** | **CAUSE NO:   2:11-CR-77** |

## REQUEST TO FILE OVER-LENGTH MOTION

Comes now Defendant Juan Briseno, by counsel Arlington Foley and John Maksimovich, and seek permission to file an over-length motion incorporating for the convenience of the parties and the court, all challenges to the capital aspects of the case into a single consolidated pleading, and represents to the court the following:

1.      Juan Briseno, the Defendant herein, faces the death penalty.

2.      Pursuant to Local Rule 7-1 (e)(2) of the Northern District of Indiana, there exists extraordinary and compelling reasons for the court to grant permission to Defendant's counsel to file an over-length motion.

3.      There exists several arguments for attacking the federal death penalty and it is impossible for Defendant's counsel to clearly and concisely make the arguments within 25 pages.

**WHEREFORE**, pursuant to Local Rule 7-1 (e)(2) of the Northern District of Indiana, Defendant's counsel respectfully requests the court to grant permission to file an over-length motion and for all other just and proper relief.

**Respectfully submitted:**

/s/ Arlington Foley

Arlington Foley /#6905-45
Attorney For Defendant
1942 North Main Street
Crown Point, IN 46307
PH: 219.661.1200
FX: 219.661.1205

/s/ John Maksimovich

John Maksimovich /#9950-45
Attorney For Defendant
1946 North Main Street
Crown Point, IN 46307
PH: 219.663.1900
FX: 219.663.1908

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

**UNITED STATES OF AMERICA,**

        **Plaintiff**

**vs**

**JUAN BRISENO,**

        **Defendant**        |        **CAUSE NO:   2:11-CR-77**

**CERTIFICATE OF SERVICE**

I hereby certify that on August 22, 2014, I electronically filed:

*REQUEST TO FILE OVER-LENGTH MOTION*

with the Clerk of the Court using the CM/ECF system, which sent notification of such filing to the following:

| David J. Nozick | Bruce Hegyi |
|---|---|
| Assistant United States Attorney | Assistant United States Attorney |

and I hereby certify that I have mailed by United States Postal Service, the document to the following non-CM/ECF participants:

        N/A

By:   /s/ *John Maksimovich*

        John Maksimovich /#9950-45
        Attorney For Defendant
        1946 North Main Street
        Crown Point, IN 46307
        PH: 219.663.1900
        FX: 219.663.1908
        E-Mail: criminallaw@johnmaksimovich.com

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | |
| **Plaintiff** | |
| **vs** | |
| **JUAN BRISENO,** | |
| **Defendant** | **CAUSE NO:   2:11-CR-77** |

**MOTION, WITH INCORPORATED MEMORANDUM,**
**TO STRIKE THE NOTICE OF AGGRAVATING FACTORS**

Comes now Defendant Juan Briseno, by counsel John Maksimovich and Arlington Foley

and respectfully move for an order striking the death penalty, or certain of the aggravating

factors, for one or more of the following reasons.  A hearing is requested.

1.     More than two decades of experience with the federal death penalty has demonstrated that it operates in an arbitrary, capricious, irrational, and discriminatory manner;

2.     The Supreme Court's decision in *Ring v. Arizona* has rendered the Federal Death Penalty Act of 1994 ("FDPA"), in the absence of ameliorative action by Congress, inoperative;

3.     Even if the FDPA can be rendered constitutional by a finding by the grand jury of gateway and statutory aggravating factors, the "special findings" in the superseding indictment should be stricken and the  death notice should be dismissed because the government has not obtained an indictment consistent with the requirements of the Fifth Amendment;

4.     The FDPA fails to provide a structure which permits jurors to make a reasoned choice between execution and a sentence of life in prison without the possibility of release;

5.     The unacceptable risk of executing the innocent requires striking the death penalty;

-i-

1626

6.      Certain of the aggravating factors must be stricken or further particularized;

7.      Evolving standards of decency have reached a point where capital punishment is no longer constitutional.

In support of the motion, counsel will rely upon the incorporated memorandum of law, the appendix of relevant documents filed herewith, and a CD containing the verdict sheets from 197 federal death penalty cases that is too large for filing via ECF. The CD will also be sent via overnight delivery to the Clerk and the United States Attorney.

-ii-

TABLE OF CONTENTS

PROCEDURAL HISTORY AND ALLEGATIONS.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

INTRODUCTION TO THE ARGUMENT

    A.       The Supreme Court's modern death-penalty jurisprudence: 1972 to
            the present.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

            1       Death is different. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

            2.      A constitutional death-penalty scheme must provide for
                 meaningful appellate review.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

            3.      A constitutional death-penalty scheme may not employ
                 aggravating circumstances that are vague, duplicative,
                 overly broad, or which do not justify the imposition of a
                 more severe sentence on the defendant as compared to
                 others found guilty of murder. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

            4.      No limitation may be placed on the right of the accused to
                 present relevant mitigating evidence during the penalty
                 trial.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

    B.       The return of the federal death penalty. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

    C.       Relevant appellate decisions.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

    D.       The Seventh Circuit's decisions.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

POINT ONE:

            BECAUSE MORE THAN TWO DECADES OF EXPERIENCE
            WITH THE FEDERAL DEATH PENALTY HAS
            DEMONSTRATED THAT IT OPERATES IN AN ARBITRARY,
            CAPRICIOUS, IRRATIONAL AND DISCRIMINATORY
            MANNER, THIS COURT SHOULD DECLARE THE FDPA
            UNCONSTITUTIONAL. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

            A.      Introduction: the failure of the federal death penalty experiment.. . . . . . 22

            B.      Revisiting the constitutional premise of *Furman v. Georgia*.. . . . . . . . . 23

C.      More than two decades of experience with the federal death
        penalty. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

D.      What these figures mean.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

E.      The absence of a principled basis for distinguishing between cases
        where the federal death penalty is imposed from cases where it is
        not imposed renders the federal death penalty unconstitutional.. . . . . . . 29

F.      The Federal Death Penalty is unevenly applied on a regional basis
        and suffers from intractable problems of racial discrimination in
        the targeting of minority defendants and a demonstrated
        race/gender-of-victim effect.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

        1.      Introduction.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

        2.      The 2000 DOJ Study.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

        3.      The federal death penalty after 24 years.. . . . . . . . . . . . . . . . . 43

        4.      The persistent capricious circumstance of region.. . . . . . . . . . . 43

        5.      The unabated practice of targeting minorities for the federal
                death penalty, the  long-documented "white-victim effect,"
                and the emergence of a "white female victim effect" further
                demonstrate the arbitrary and irrational operation of the
                federal death penalty. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 46

                (a)     Introduction – The law on race and the death
                        penalty.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 46

                (b)     The effect of race and gender of victim in the
                        application of the FDPA.. . . . . . . . . . . . . . . . . . . . . . . . 53

G.      Conclusion: the federal death penalty experiment
        has failed.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 59

POINT TWO:

        THE SUPREME COURT'S *RING* DECISION HAS RENDERED
        THE FEDERAL DEATH PENALTY UNCONSTITUTIONAL
        AND THE ACT MAY NOT BE SAVED BY A JUDICIAL
        "CONSTRUCTION" THAT CREATES A NEW CRIMINAL

OFFENSE WHOSE ELEMENTS AND INTERTWINED
PROCEDURES HAVE NEITHER BEEN CONSIDERED, NOR
ENACTED INTO LAW, BY CONGRESS.. . . . . . . . . . . . . . . . . . . . . . . . . . . . 61

A.      Introduction and summary of the argument.. . . . . . . . . . . . . . . . . . . . . . 61

B.      Aggravating factors necessary to a capital verdict are essential
        elements of the capital offense, and must be pleaded in the
        indictment and proved to a jury beyond a reasonable doubt. . . . . . . . . . 65

C.      The FDPA does not provide for presentation of aggravating factors
        to a grand jury (and thereby including them in an indictment), but
        instead vests authority to identify aggravating factors exclusively
        with the prosecutor.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 69

D.      *Jackson* and the Separation of Powers Doctrine demonstrate that
        the FDPA cannot be amended by the prosecutor or the courts to
        permit presentation of aggravating factors to a grand jury because
        it is for the legislature to define crimes and punishment, and
        presentation of aggravating factors to a grand jury is contrary to the
        unambiguous intent of Congress as expressed in the FDPA. . . . . . . . . . . 71

        1.      Congress, not the courts or prosecutors, is vested with
                legislative authority to define federal criminal offenses and
                the punishment for such conduct.. . . . . . . . . . . . . . . . . . . . . . . . 71

        2.      *Jackson* provides a direct and "all fours" analogy to the
                circumstances present herein, and compels invalidation of
                the FDPA. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 72

        3.      The Non-Delegation Doctrine provides further compelling
                support for the conclusion that the FDPA's defects cannot
                be cured by judicial action.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 78

        4.      The grand jury lacks any authority to issue "special
                findings.". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 80

E.      Courts of appeals decisions to the contrary have been wrongly
        decided, and neither severability analysis, nor the post-*Apprendi*
        drug cases, nor the doctrine of "constitutional avoidance" can save
        the FDPA. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 81

1630

1.     The decisions by the courts of appeal have been wrongly
       decided. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 81

2.     The post-Apprendi drug-quantity cases do not authorize
       presenting the FDPA's aggravating factors to a grand jury. . . . . . 83

3.     Severability analysis cannot save the FDPA from
       unconstitutionality. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 85

4.     The doctrine of "constitutional avoidance" is inapplicable. . . . . . 86

POINT THREE:

EVEN IF THE FDPA CAN BE RENDERED
CONSTITUTIONAL BY A FINDING BY THE GRAND JURY
OF GATEWAY AND STATUTORY AGGRAVATING
FACTORS, THE "SPECIAL FINDINGS" IN THE
INDICTMENT SHOULD BE STRICKEN AND THE  DEATH
NOTICE SHOULD BE DISMISSED BECAUSE THE
GOVERNMENT HAS NOT OBTAINED AN INDICTMENT
CONSISTENT WITH THE REQUIREMENTS OF THE FIFTH
AMENDMENT.

A.     Introduction. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 89

B.     The grand jury was not given the choice of holding Mr. Briseno to
       answer for a capital crime because it was unaware of the
       consequences of its "Special Findings.". . . . . . . . . . . . . . . . . . . . . . 89

C.     The Government did not obtain an indictment alleging all elements
       of a capital crime. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 95

D.     The non-statutory aggravating factors alleged in the death notice
       must be dismissed because they are not supported by the
       indictment. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 96

POINT FOUR:

THE FPDA FAILS TO PROVIDE A STRUCTURE WHICH
PERMITS JURORS TO MAKE A REASONED CHOICE
BETWEEN A SENTENCE OF LIFE IN PRISON WITHOUT
THE POSSIBILITY OF RELEASE AND EXECUTION. . . . . . . . . . . . . . . . 101

POINT FIVE:

     IN LIGHT OF OVERWHELMING EVIDENCE THAT
CONTINUED ENFORCEMENT OF THE FEDERAL DEATH
PENALTY WILL LEAD TO THE EXECUTION OF A
MEANINGFUL NUMBER OF INNOCENT PEOPLE, THE
FEDERAL DEATH PENALTY SHOULD BE DECLARED
UNCONSTITUTIONAL.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 108

     A.     Introduction and background.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 108

     B.     The *Quinones* decision.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 109

     C.     The risk of executing the innocent.. . . . . . . . . . . . . . . . . . . . . . . . . . . . 110

     D.     The real question: How many innocent people is it acceptable to
execute so that the Government may execute others who are
undoubtedly guilty?. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 113

POINT SIX:

     AS SPECIFIED BELOW, CERTAIN OF THE STATUTORY
AND NON-STATUTORY AGGRAVATING FACTORS SET
FORTH IN THE GOVERNMENT'S NOTICE – INCLUDING
THE ALLEGATION OF FUTURE DANGER – MUST BE
DISMISSED OUTRIGHT OR FURTHER PARTICULARIZED .. . . . . . . . . . 114

     A.     Introduction. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 114

     B.     The proper role of aggravating factors.. . . . . . . . . . . . . . . . . . . . . . . . . 114

           1.     General principles: function and relevance. . . . . . . . . . . . . . . . . 114

           2.     Duplicative factors.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 119

     C.     This Court may require the government to submit a proffer
of its evidence, in the form of an informative outline, or to
conduct hearings. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 120

     D.     Particular challenges to the aggravating factors alleged in this case.. . . 125

           1.     Substantial planning and premeditation.. . . . . . . . . . . . . . . . . . . 125

           2.     Lack of remorse. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 126

1632

3.      Future danger: A hearing is requested. . . . . . . . . . . . . . . . . . . . . . 131

4.      Victim-impact evidence. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 140

E.      Conclusion. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 145

POINT SEVEN:

THIS COURT SHOULD DECLARE THE DEATH PENALTY
UNCONSTITUTIONAL AS CRUEL AND UNUSUAL
PUNISHMENT AND A *PER SE* DENIAL OF DUE PROCESS IN
ALL CASES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 145

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 148

CERTIFICATE OF SERVICE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 149

*Abdul-Kabir v. Quarterman*, 550 U.S. 233, 246 (2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13

*Apprendi v. New Jersey*, 530 U.S. 466, 494 n.19 (2000).. . . . . . . . . . . . . . 58, 60, 61, 63, 75, 76

*Arave v. Creech*, 507 U.S. 463, 474 (1993). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Arlington Heights v. Metropolitan Housing Dev. Corp.*, 429 U.S. 252, 266 (1977). . . . . . . . . . 46

*Atkins v. Virginia,* 536 U.S. 304, 319 (2002).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Ayers v. Belmontes*, 549 U.S. 7, 21 (2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Batson v. Kentucky*, 476 U.S. 79, 93-94 (1986).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 49

*Blakely v. Washington*, U.S. 542 U.S. 296 (2004).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 60

*Bolling v. Sharpe*, 347 U.S. 497, 499 (1954). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 50

*Boyde v. California,* 494 U.S. 370, 377-378, 108 L. Ed. 2d 316, 110 S. Ct. 1190 (1990). . . . . . 13

*Brown v. Board of Education*, 346 U.S. 483 (1954). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 50

*Buchanan v. Angelone*, 522 U.S. 269 (1998).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Bullington v. Missouri*, 451 U.S. 430 (1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 49

*Bush v. Gore*, 531 U.S. 98, 106, 121 S.Ct. 525, 148 L.Ed.2d 388 (2000).. . . . . . . . . . . . . . . . 43

*Caldwell v. Mississippi*, 472 U.S. 320 (1985). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Callins v. Collins, supra*, 510 U.S. at 1141-42. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 56

*Campbell v. Louisiana*, 523 U.S. 392, 398 (1998). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 85

*Eddings v. Oklahoma*, 455 U.S. 104, 112 (1982). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Flamer v. Delaware,* 68 F.3d 736, 772 (3d Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 142

*Ford v. Wainwright*, 477 U.S. 399, 411 (1986). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Furman v. Georgia, 408 U.S. 238 (1972). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Gardner v. Florida*, 430 U.S. 339 (1977). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*General Building Contractors Ass'n. Inc. v. Pennsylvania*, 458 U.S. 375, 386-87 (1982).. . . . . 51

*Godfrey v. Georgia*, 446 U.S. 420 (1979). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Green v. Georgia*, 442 U.S. 95 (1979).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Gregg v. Georgia*, 428 U.S. 153 (1976). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Harris v. United States*, 536 U.S. 545 (2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 58

*Ho Ah Kow v. Nunan*, 12 Fed. Cas. 252 (No. 6546) (C.C.C.D.Cal. 1879). . . . . . . . . . . . . . . . 51

*Hunter v. Erickson*, 393 U.S. 385, 391 (1969). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 50

*Jones v. United States*, 526 U.S. 227, 251-52 (1999). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 58

*Jurek v. Texas*, 428 U.S. 262 (1976). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Kennedy v. Louisiana,* 128 S.Ct. 2641 (2008).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Lockett v. Ohio*, 438 U.S. 586 (1978). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Loving v. Virginia,*  388 U.S. 1, 11 (1967).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 51

*Lowenfield v. Phelps*, 484 U.S. 231, 244 (1988). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Maynard v. Cartwright*, 486 U.S. 356 (1988). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*McCleskey v. Kemp*, 481 U.S. 279 (1987). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*McKoy v. North Carolina,* 494 U.S. 433, 440-441, 108 L. Ed. 2d 369, 110 S. Ct. 1227 (1990).  12

*McLaughlin v. Florida*, 379 U.S. 184, 190 n.8 (1964). .. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 51

*Monge v. California*, 524 U.S. 721, 731 (1998). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*New Jersey v. T. L. O.*, 469 U.S. 325, 345, 83 L. Ed. 2d 720, 105 S. Ct. 733 (1985). . . . . . . . . 12

*Nixon v. Herndon*, 273 U.S. 536 (1927). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 50

*Parker v. Dugger*, 498 U.S. 308 (1991).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Payne v. Tennessee,* 501 U.S. 808, 822, 115 L. Ed. 2d 720, 111 S. Ct. 2597 (1991). . . . . . . . . 13

*Penry I*, 492 U.S. 302, 106 L. Ed. 2d 256, 109 S. Ct. 2934 (1989). . . . . . . . . . . . . . . . . . . . . . 13

*Personnel Administrator of Massachusetts v. Feeney*, 442 U.S. 256, 272 (1979). . . . . . . . . . . . . . . 51

*Proffitt v. Florida*, 428 U.S. 242 (1976). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 9

*Pulley v. Harris*, 465 U.S. 37, 55 (1984). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Ring v. Arizona*, 536 U.S. 584 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Roberts v. Louisiana*, 428 U.S. 325 (1976). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Roper v. Simmons*, 543 U.S. 551, 567 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Rose v. Mitchell*, 443 U.S. 545, 556 (1979). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 50

*Rust v. Sullivan*, 500 U.S. 173, 191 (1991). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 82

*Sattazahn v. Pennsylvania*, 537 U.S. 101 (2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 62

*Shell v. Mississippi*, 498 U.S. 1 (1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Skipper v. North Carolina*, 476 U.S. 1 (1986). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Smith v. Texas*, 543 U.S. 37 (2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 46

*State v. McKoy*, 323 N. C. 1, 55-56, 372 S.E.2d, 12, 45 (1988). . . . . . . . . . . . . . . . . . . . . . . . . 12

*Strauder v. West Virginia*, 100 U.S. 303, 306-08 (1880). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 51

*Tennard v. Dretke*, 542 U.S. 274 (2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Thompson v. Oklahoma*, 487 U.S. 815, 822 n. 7 (1988). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

*Trop v. Dulles*, 356 U.S. 86, 100-101 (1958). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 141

*Tuilaepa v. California,* 512 U.S. 967 (1994). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Turner v. Fouche*, 396 U.S. 346 (1970). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 50

*Turner v. Murray*, 476 U.S. 28 (1986). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 52

*Walker v. Georgia*, 129 S.Ct. 453 (2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

*Walton v. Arizona*, 497 U.S. 639, 658 (1990). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Washington v. Davis*, 426 U.S. 229, 239 (1976). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 49

*Weinberger v. Wisenfeld*, 420 U.S. 636, 638 n.2 (1975). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 50

W*illiams v. Taylor*, 529 U.S. 362 (2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Woodson v. North Carolina*, 428 U.S. 280, 303 (1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Yick Wo v. Hopkins*, 118 U.S. 356 (1886). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 47

*Zant v. Stephens*, 462 U.S. at 890. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2


*United States v. Llera Plaza*, 179 F. Supp. 2d at 475. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 136

*United States v. Fell*, 372 F.Supp.2d at 763. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*United States v. O'Driscoll*, 2002 WL 32063817 * 2 (M.D. Pa. 2002). . . . . . . . . . . . . . . . . . . . 18

*United States v. Hammer*, 226 F.3d 229 (3d Cir. 2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*United States v. Fields*, 516 F.3d 923 (10th Cir. 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*United States v. Barrett*, 496 F.3d 1079 (10th Cir. 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*United States v. Chanthadara*, 230 F.3d 1237 (10th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . 20

*United States v. McVeigh*, 153 F.3d 1166 (10th Cir. 1998). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*United States v. McCullah*, 76 F.3d 1087 (10th Cir. 1996). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*United States v. Gabrion*, 648 F.3d 307 (6th Cir. 2011). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*United States v. Montgomery*, 635 F.3d 1074 (8th Cir.  2011). . . . . . . . . . . . . . . . . . . . . . . . . . 20

*United States v. Lighty*, 616 F.3d 321 (4th Cir.  2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*United States v. Whitten*, 610 F.3d 168 (2nd Cir.  2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*United States v. Mitchell*, 502 F.3d 931 (9th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*United States v. Sampson*, 486 F.3d 13 (1st Cir. 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*United States v. Brown,*  441 F.3d 1330 (11th Cir. 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*United States v. LeCroy*, 441 F.3d 914 (11th Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*United States v. Purkey*, 428 F.3d 738 (8th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*United States v. Bourgeois*, 423 F.3d 501 (5th Cir. 2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*United States v. Allen*, 406 F.3d 940 (8th Cir. 2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*United States v. Barnette*, 390 F.3d 775 (4th Cir. 2004).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*United States v. Lee*, 374 F.3d 637 (8th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*United States v. Robinson*, 367 F.3d 278 (5th Cir. 2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*United States v. Higgs*, 353 F.3d 281 (4th Cir. 2003).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*United States v. Nelson*, 347 F.3d 701 (8th Cir. 2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*United States v. Jackson*, 327 F.3d 273 (4th Cir. 2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*United States v. Bernard*, 299 F.3d 467 (5th Cir. 2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*United States v. Johnson*, 223 F.3d 665 (7th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*United States v. Paul*, 217 F.3d 989 (8th Cir. 2000).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*United States v. Causey*, 185 F.3d 407 (5th Cir. 1999). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*United States v. Battle*, 163 F.3d 1 (11th Cir. 1998).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*United States v. Webster*, 162 F.3d 308 (5th Cir. 1998). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*United States v. Hall*, 152 F.3d 381 (5th Cir. 1998). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

United States v. Mikos, 539 F.3d 706, (7th Cir., 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

United States v. Corley, 519 F.3d 716, (7th Cir., 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

United States v. Johnson, 223 F.3d 665, (7th Cir., 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

United States v. Taylor, Case Number 2:01-CR-0073
      (Northern District of Indiana, Hammond Division, 2001).. . . . . . . . . . . . . . . . . . . . . . . 22

United States v. Quon Ray, Case Number 96-CR-379 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*United States v. Caro*, 597 F.3d 608, 636 (4th Cir. 2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*United States v. Larry Lujan*, (D.N.M. 2011). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*United States v. Lujan*, 603 F.3d 850, 852 (10th Cir. 2010). . . . . . . . . . . . . . . . . . . . . . . . . . 16

*United States v. Wiltberger*, 18 U.S. 76, 93 (1820) (Marshall, C.J.). . . . . . . . . . . . . . . . . . . . 57

*United States v. Reese*, 92 U.S. 214, 232 (1876). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 61

*United States v. Cotton,* 535 U.S. 625  (2002).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 61

*United States v. Jackson*, 390 U.S. 570 (1968). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 61

*United States v. Booker*, 543 U.S. 220 (2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 60

STATEMENT OF THE CASE

**I.      PROCEDURAL HISTORY AND BACKGROUND**

Juan Briseno is charged in a September 18, 2013 fourth superseding indictment with a variety of RICO, murder, weapons and drug-trafficking offenses.  On March 6, 2013, the Government served a notice that it will seek the death penalty and on July 1, 2014, the government supplemented its Notice.  Jury-selection is scheduled to commence on January 12, 2015.  The government has estimated that the trial of this case may last up to six weeks.

The focus of the Government's case for death is the murders, by shooting, of six people. The indictment charges a RICO enterprise that is alleged to have existed from February of 2002 thorough September 18, 2013.  In addition to the six murders, the indictment alleges 4 attempted murders as racketeering acts.  Although death is not sought *per se* for any of the 4 attempted murders, they are alleged as non-statutory aggravating factors.

Counts 9, 10 and 13 through 22 of the indictment carry potential sentences of death.  In essence, each of the six murders are alleged under two different legal theories, each, however, carries a potential sentence of death.  The legal theories are: Murder in Aid of Racketeering, in violation of 18 U.S.C. § 1959(a)(1) (counts 9, 13, 15, 17, 19, and 21); and Murder Resulting From the Use and Carrying of a Firearm During and in Relation to a Crime of Violence, in violation of 18 U.S.C. §924© and §924(j) (counts 10, 14, 16, 18, 20, and 22).

Mr. Briseno has entered a plea of not guilty to every charge in the indictment.

**II.      INTRODUCTION TO THE ARGUMENT**

**A.      The Supreme Court's modern death-penalty jurisprudence: 1972 to the present.**

In 1972, the United States Supreme Court, unwilling to tolerate the arbitrary and capricious imposition of capital punishment, struck down all existing death-penalty schemes as

-1-

1637

incompatible with the guarantees of the Eighth and Fourteenth Amendments to the United States

Constitution.  *Furman v. Georgia*, 408 U.S. 238 (1972).   Each of the five justices who concurred

in the *Furman* Court's one paragraph *per curium* opinion advanced separate reasoning.

However, as the Court has recognized for nearly 30 years, the comparison drawn by Justice

Stewart in *Furman* between receiving a sentence of death and being struck by lightning is the

very essence of *Furman*:[1]

> These death sentences are cruel and unusual in the same way that being struck by lightning is cruel and unusual.  For, of all the people convicted of rapes and murders, . . . many just as reprehensible as these, the petitioners are among a capriciously selected handful upon whom the sentence of death has in fact been imposed.  My concurring Brothers have demonstrated that, if any basis can be discerned for the selection of these few to be sentenced to die, it is the constitutionally impermissible basis of race . . .  I simply conclude that the Eighth and Fourteenth Amendments cannot tolerate the infliction of a sentence of death under legal systems that permit this unique penalty to be so wantonly and so freakishly imposed.

*Furman*, 408 U.S. at 309-10 (Opinion of Stewart, J., concurring; citations and footnotes omitted).

Members of the *Furman* Court also took note that the death penalty was often sought selectively,

"feeding prejudices against the accused if he is poor and despised, and lacking political clout, or

---

[1]  In  *Zant v. Stephens*, 462 U.S. 862 (1983), the Court stated:

> A fair statement of the consensus expressed by the Court in *Furman* is that "where discretion is afforded a sentencing body on a matter so grave as the determination of whether a human life should be taken or spared, that discretion must be suitably directed and limited so as to minimize the risk of wholly arbitrary and capricious action."

*Id*. at 874, *quoting* plurality opinion of Justices Stewart, Powell and Stevens in *Gregg v. Georgia*, 428 U.S. 153, 189 (1976).

if he is a member of a suspect or unpopular minority . . . ." *Furman*, 408 U.S. at 255 (Douglas, J., concurring). Justice White, also concurring in the result, cited the infrequent utilization of the death penalty as an important factor contributing to his vote to strike down capital punishment:

> That conclusion, as I have said, is that the death penalty is exacted with great infrequency even for the most atrocious crimes and that there is no meaningful basis for distinguishing the few cases in which it is imposed from the many cases in which it is not.

408 U.S. at 313 (White, J., concurring).

Reacting to *Furman*, many states with a long history of capital punishment and *de jure* segregation – primarily those in the deep South – rushed to enact new capital punishment schemes.[2] Just four years after *Furman*, the issue of capital punishment returned to the Court, this time in the cases of five men who had been prosecuted and sentenced to death – all in the South – under newly-enacted post-*Furman* statutes.[3] On July 2, 1976, the Court issued opinions in those five cases. In three of the cases, the Court concluded that the states had successfully met the constitutional concerns raised in the *Furman* opinion. *Gregg v. Georgia*, 428 U.S. 153 (1976);

---

[2] For a discussion of the Florida experience in this regard, *see* David Von Drehle, *Among the Lowest of the Dead: the Culture of Death Row* (Times Books/Random House 1995). In reaction to *Furman*, the governor of Florida called the Florida Legislature into special session which was to continue until that body voted out a new death-penalty bill.

[3] The death penalty, at least in the 20th and 21st centuries, has been a primarily Southern phenomenon, historically rooted in racial discrimination, and continues to be a Southern phenomenon more than twelve years into the 21st century. Figures current as of October 11, 2012 show that since *Gregg* was decided in 1976, there have been 1,308 executions carried out in this country. Of these, 1071 – more than 80% – have taken place in the South, principally in what is referred to as "the death belt." Two individual states – Virginia and Texas – account for a combined total of 596 executions, nearly half of all post-*Gregg* executions. There are presently 3,170 death row inmates in our prisons. *See*, Death Penalty Information Center ("DPIC"), "Facts About the Death Penalty," (Updated October 11, 2012) (A86.) There have been three executions of federal prisoners: Timothy McVeigh (June 11, 2001); Juan Garza (June 19, 2001); and Louis Jones (March 18, 2003).

-3-

state schemes were struck down, principally because they required automatic imposition of a

sentence of death in particular classes of murder without allowing for the "particularized

consideration of all relevant aspects of the character and record of each convicted defendant

before the imposition upon him of a sentence of death." *Woodson v. North Carolina*, 428 U.S.

280, 303 (1976) (Opinion of Justices Stewart, Powell and Stevens); *Roberts v. Louisiana*, 428

U.S. 325 (1976).

In the more than three decades since *Gregg,* the United States Supreme Court has decided

well in excess of 100 death-penalty cases and has thereby created (and continues to create) a

substantial and complex body of death-penalty law. From that body of law, however, four core

principles of death-penalty jurisprudence emerge: (1) death is a different kind of punishment

and, therefore, every stage of a capital case must be marked by heightened standards of

reliability, review, and scrutiny; (2) a constitutional death-penalty scheme must provide for

meaningful appellate review; (3) vague, duplicative, or all-encompassing aggravating factors are

constitutionally invalid since such factors do not genuinely narrow the class of murders for which

the death penalty is appropriate, or otherwise justify the imposition of a death sentence on one

defendant as compared to others found guilty of murder; and (4), no limitation may be placed on

a defendant's right to present relevant evidence in mitigation of a sentence of death. A discussion

of each of these principles follows.[4]

    1.    <u>Death is different</u>.

The bedrock principle of capital jurisprudence is that "death is different." This view of

capital cases informs and guides the entire body of capital jurisprudence and capital-case

---

[4] For a helpful *précis* of this area, *see* "41ˢᵗ Annual Review of Criminal Procedure," 41 GEO. L.J. ANN. REV. CRIM. PROC. 1, 830-866 (2012).

litigation. "Simply stated, death-penalty cases are not the same as other cases and cannot be treated the same as other cases.[5]  Commencing with the 1976 quintet of cases that mark the beginning of post-*Furman* death-penalty jurisprudence, the Supreme Court has taken numerous opportunities to emphasize its recognition of the difference between death as a punishment and all others.  In *Woodson*, for example, striking down North Carolina's initial post-*Furman* death-penalty scheme, the Court observed:

> The penalty of death is qualitatively different from a sentence of imprisonment, however long. Death, in its finality, differs more from life imprisonment than a 100-year prison term differs from one of only a year or two.

428 U.S. at 305.  The following year, in *Gardner v. Florida*, 430 U.S. 339 (1977), the proposition was reiterated:

> [D]eath is a different kind of punishment from any other which may be imposed in this country.  From the point of view of the defendant, it is different in both its severity and its finality.  From the point of view of society, the action of the sovereign in taking the life of one of its citizens differs dramatically from any other legitimate state action.  It is of vital importance to the defendant and to the community that any decision to impose the death sentence be, and appear to be, based on reason rather than caprice or emotion.

*Gardner*, 430 U.S. at 357-58.

The notion that "death is different" is not simply the dramatic recitation of an obvious truth. Rather, the principle triggers sharply increased levels of judicial attention to every step of the process through which the irrevocable sanction of death is sought and carried out.  The post-*Furman* Court has described capital jurisprudence as mandating a "heightened standard of

---

[5]  Justice Stevens, citing seven separate decisions, notes, "Our opinions have repeatedly emphasized that death is a fundamentally different kind of penalty from any other that society may impose."  *Harris v. Alabama*, 513 U.S. 504, 516 n.1 (1995) (Stevens, J., dissenting).

reliability — for the entire process through which a government marshals the legal and moral

authority to terminate a life. The need for heightened reliability is "the natural consequence of

the knowledge that execution is the most irremediable and unfathomable of penalties; that death

is different." *Ford v. Wainwright*, 477 U.S. 399, 411 (1986). As stated in *Caldwell v.

Mississippi*, 472 U.S. 320 (1985), "[T]he qualitative difference of death from all other

punishments requires a correspondingly greater degree of scrutiny of the capital sentencing

determination." *Id.* at 329. *See also Monge v. California*, 524 U.S. 721, 731 (1998), reiterating

the "acute need for reliability in capital sentencing proceedings."

In practice, the death penalty should be reserved for the worst of the worst. *See Roper v.

Simmons,* 543 U.S. 551, 568 (2005) ("Capital punishment must be limited to those offenders who

commit 'a narrow category of the most serious crimes' and whose extreme culpability makes

them 'the most deserving of execution.'" (quoting *Atkins v. Virginia,* 536 U.S. 304, 319 (2002)).

In *Kennedy v. Louisiana,* 128 S.Ct. 2641 (2008), the Court reiterated the principle that,

"Evolving standards of decency must embrace and express respect for the dignity of the person,

and the punishment of criminals must conform to that rule." 128 S.Ct. at 2649. Otherwise,

"When the law punishes by death, it risks its own sudden descent into brutality, transgressing the

constitutional commitment to decency and restraint." *Id.* at 2650.

2. A constitutional death-penalty scheme must provide for meaningful appellate
review.

It is a fair summary of the overall thrust of the *Gregg-Jurek-Proffitt* trilogy that capital

sentencing schemes will successfully withstand constitutional challenge only to the following

extent: (1) that the particular scheme genuinely narrows the class of murderers for whom the

ultimate penalty is available; and (2), provides the heightened procedural safeguards that avoid

the evils identified in *Furman*, principally the arbitrary, capricious and/or discriminatory

imposition of the death penalty. *See, e.g., Zant v. Stephens*, 462 U.S. at 890.

One additional vitally important procedural safeguard, emphasized by the Court from the

earliest post-*Furman* cases forward, is the availability of "meaningful appellate review." *Pulley*

*v. Harris*, 465 U.S. 37, 55 (1984) (Stevens, J., concurring). While *Pulley* ultimately held that a

specialized form of capital appellate scrutiny known as "proportionality review" was not required

by the Eighth and Fourteenth Amendments,[6] the Court has been steadfast in its view that

meaningful appellate review is an essential component of a constitutional death-penalty scheme.

In *Zant*, for example, the Court explained its approval of Georgia's capital-sentencing procedure

in *Gregg* as

> rest[ing] primarily on two features of the scheme: That the jury was
> required to find at least one valid statutory aggravating
> circumstance and to identify it in writing, and that the State
> Supreme Court reviewed the record of every death-penalty
> proceeding to determine whether the sentence was arbitrary or
> disproportionate.

*Zant*, 462 U.S. at 876. In *Godfrey v. Georgia*, 446 U.S. 420 (1979), the Court discussed three

independent criteria as indispensable to a finding that a particular capital scheme effectively and

constitutionally channeled the sentencing authority's discretion. Among these was the

availability of rational appellate review of the "process for imposing a sentence of death."

*Godfrey*, 446 U.S. at 428. In *Parker v. Dugger*, 498 U.S. 308 (1991), the Court re-visited and re-

affirmed the importance of meaningful appellate review in determining the constitutionality of a

death-penalty scheme:

> We have emphasized repeatedly the crucial role of meaningful
> appellate review in ensuring that the death penalty is not imposed
> arbitrarily or irrationally.

---

[6] In *Pulley*, the Court defined capital proportionality review as an inquiry to determine whether a sentence of death in a particular case is disproportionate to the penalties imposed in similar cases. *Pulley*, 465 U.S. at 43, 44.

3.      A constitutional death-penalty scheme may not employ aggravating circumstances that are vague, duplicative, overly broad, or which do not justify the imposition of a more severe sentence on the defendant as compared to others found guilty of murder.

The FDPA requires a penalty-phase jury to decide, initially, whether or not certain "particularly relevant" aggravating factors have been unanimously established beyond a reasonable doubt, and then to weigh any aggravating factors against any mitigating factors.[7]  18 U.S.C. § 3593(e).  It is the "weighing" process which leads the jury to decide whether or not the sentence should be death.  As noted in *Lowenfield v. Phelps*, 484 U.S. 231, 244 (1988), however, "[t]he use of 'aggravating circumstances' is not an end in itself, but a means of genuinely narrowing the class of death-eligible persons and thereby channeling the jury's discretion."  In light of the critical narrowing function performed by aggravating factors, it follows that if a particular factor is vague to the point of defying definition or, alternatively, could be interpreted by a particular sentencing authority – whether judge or jury – as applicable to any, and therefore *all* murders, that factor fails to perform a constitutional narrowing function and is invalid.

The Supreme Court has also been consistent in recognition of the principle that "an aggravating circumstance must genuinely narrow the class of persons eligible for the death penalty and must reasonably justify the imposition of a more severe sentence on the defendant compared to others found guilty of murder," *Zant v. Stephens*, 462 U.S. at 877.  At the most fundamental level, aggravating circumstances must rationally distinguish "those who deserve capital punishment from those who do not." *Arave v. Creech*, 507 U.S. 463, 474 (1993).  In *Godfrey v. Georgia*, *supra,* for example, the defendant was sentenced to death upon a finding

---

[7]   The weighing of aggravating factors against mitigating factors, while required by the FDPA, is not required by the Constitution. *See, e.g.*, *Blystone v. Pennsylvania*, 494 U.S. 299 (1990).

that the murder was "outrageously or wantonly vile, horrible or inhuman." 446 U.S. at 422. In striking down this aggravating circumstance and vacating the sentence of death, Justice Stewart's opinion for the plurality reasoned that the language of this particular aggravating circumstance failed to provide "inherent restraint on the arbitrary and capricious infliction of the death sentence," since virtually every murder could be said to meet those criteria. *Id.* at 428-29. Concluding that the facts and circumstances of the murder in *Godfrey* did not stand out from other murders, the Court held there was "no principled way to distinguish this case, in which the death penalty was imposed, from the many in which it was not." *Id.* at 433. In *Tuilaepa v. California,* 512 U.S. 967 (1994), the Court reiterated the two constitutional tests which aggravating factors must satisfy: (1) a valid aggravating factor may not apply to every defendant convicted of murder, but only to a rationally-selected sub-class of murderers; and (2) the circumstances must be defined with clarity. *Id.* at 972.

The constitutionality of aggravating factors that are quite similar in language may rise or fall on how that language is construed, limited and/or otherwise presented to the sentencing authority. In *Proffitt*, for example, a death sentence imposed in Florida under an aggravating factor defined as "especially heinous, atrocious, or cruel" was held to be constitutional because, as construed and narrowed by the Florida Supreme Court, its inherent vagueness and overbreadth were corrected. By contrast, in *Maynard v. Cartwright*, 486 U.S. 356 (1988), an Oklahoma aggravating circumstance virtually identical in language to the one upheld in *Proffitt* was struck down as overly-broad and unconstitutionally vague since its potential reach had not been effectively narrowed through judicial construction or jury instructions. *See also*, *Shell v. Mississippi*, 498 U.S. 1 (1990) (trial judge's attempt to limit the reach of Mississippi's "especially heinous, atrocious, or cruel" aggravating factor was constitutionally insufficient).

Aggravating factors, therefore, serve a vital function in death-penalty jurisprudence. *See*

-9-

Note, "Criminal Law: An Evolutionary Analysis of the Role of Aggravating Factors in

Contemporary Death Penalty Jurisprudence – From *Furman* to *Blystone*," 32 WASHBURN L.J. 77

(1992). In *Gregg v. Georgia*, *supra*, 428 U.S. at 189, the Court stated, "Where discretion is

afforded a sentencing body on a matter so grave as the determination of whether a human life

should be taken or spared, that discretion must be suitably directed and limited so as to minimize

the risk of wholly arbitrary and capricious action."

> 4. <u>No limitation may be placed on the right of the accused to present relevant mitigating evidence during the penalty trial</u>.

A fourth and final aspect of a constitutional death-penalty scheme is that virtually no

limitation may be placed on the right of the accused to present for the sentencer's consideration

all relevant mitigating evidence. This established tenet of capital jurisprudence is rooted in

*Lockett v. Ohio*, 438 U.S. 586 (1978), where, two years after *Gregg*, a plurality of the Court held

that "in all but the rarest kind of capital cases," a sentencing authority could not "be precluded

from considering, as a mitigating factor, any aspect of a defendant's character or record . . . as a

basis for a sentence less than death." *Id*. at 113-14 (emphasis omitted); *see also Skipper v. North*

*Carolina*, 476 U.S. 1 (1986); *Eddings v. Oklahoma*, 455 U.S. at 112. In *McCleskey v. Kemp*, 481

U.S. 279 (1987), the Court held that a constitutional death-penalty scheme

> cannot limit the sentencer's consideration of *any relevant*
> *circumstance* that could cause it to decline to impose the penalty.
> In this respect, the State cannot channel the sentencer's discretion,
> but must allow it to consider *any relevant information* offered by
> the defendant.

*Id*. at 305-06 (emphasis added); *see also Green v. Georgia*, 442 U.S. 95 (1979) (evidence rules

may not be invoked to bar otherwise relevant mitigating evidence).

In *Buchanan v. Angelone*, 522 U.S. 269 (1998), Chief Justice Rehnquist, writing for a majority of the Court 20 years after *Lockett*, stated:

> in the [penalty] phase, we have emphasized the need for a broad inquiry into all relevant mitigating evidence to allow an individualized determination.
>
> * * *
>
> In the [penalty] phase, our cases have established that the sentencer may not be precluded from considering any constitutionally relevant mitigating evidence.

*Id*. at 276 (citations omitted). In *Williams v. Taylor*, 529 U.S. 362 (2000), the Court noted that mitigating evidence can serve to lessen a defendant's "moral culpability" even where such evidence "does not undermine or rebut the prosecution's death-eligibility case." *Id.* at 398.

The unbroken line of cases supporting liberal admission of mitigating evidence was most recently extended by *Tennard v. Dretke*, 542 U.S. 274 (2004), where the Court rejected the notion, originating with the Texas Court of Criminal Appeals and repeatedly endorsed by the Fifth Circuit, that evidence is not mitigating unless there is a nexus between the evidence and the crime. In *Tennard*, a six-member majority of the Court reversed the Fifth Circuit and bluntly criticized that court's longstanding practice of imposing a restrictive standard of relevance for mitigating evidence at the penalty-phase of Texas capital cases. *Tennard* reiterated that the threshold of relevance for mitigating evidence is minimal, stating:

> When we addressed directly the relevance standard applicable to mitigating evidence in capital cases in *McKoy v. North Carolina,* 494 U.S. 433, 440-441, 108 L. Ed. 2d 369, 110 S. Ct. 1227 (1990), we spoke in the most expansive terms. We established that the "meaning of relevance is no different in the context of mitigating evidence introduced in a capital sentencing proceeding" than in any other context, and thus the general evidentiary standard – "'any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence'"– applies. *Id*., at 440, 108 L. Ed. 2d 369, 110 S. Ct. 1227 (*quoting*

-11-

*New Jersey v. T. L. O.*, 469 U.S. 325, 345, 85 L. Ed. 2d 720, 105 S. Ct. 733 (1985)). We quoted approvingly from a dissenting opinion in the state court: "'Relevant mitigating evidence is evidence which tends logically to prove or disprove some fact or circumstance which a fact-finder could reasonably deem to have mitigating value.'" 494 U.S., at 440, 108 L. Ed. 2d 369, 110 S. Ct. 1227 (*quoting State v. McKoy*, 323 N. C. 1, 55-56, 372 S.E.2d, 12, 45 (1988) (opinion of Exum, C. J.)). Thus, a State cannot bar "the consideration of . . . evidence if the sentencer could reasonably find that it warrants a sentence less than death." 494 U.S., at 441, 108 L. Ed. 2d 369, 110 S. Ct. 1227.

Once this low threshold for relevance is met, the "Eighth Amendment requires that the jury be able to consider and give effect to" a capital defendant's mitigating evidence. *Boyde v. California,* 494 U.S. 370, 377-378, 108 L. Ed. 2d 316, 110 S. Ct. 1190 (1990) (*citing Lockett v. Ohio*, 438 U.S. 586, 57 L. Ed. 2d 973, 98 S. Ct. 2954 (1978); *Eddings v. Oklahoma*, 455 U.S. 104, 71 L. Ed. 2d 1, 102 S. Ct. 869 (1982); *Penry I*, 492 U.S. 302, 106 L. Ed. 2d 256, 109 S. Ct. 2934 (1989)); *see also Payne v. Tennessee,* 501 U.S. 808, 822, 115 L. Ed. 2d 720, 111 S. Ct. 2597 (1991) ("We have held that a State cannot preclude the sentencer from considering 'any relevant mitigating evidence' that the defendant proffers in support of a sentence less than death. . . . [V]irtually no limits are placed on the relevant mitigating evidence a capital defendant may introduce concerning his own circumstances." (*quoting Eddings, supra*, at 114, 71 L. Ed. 2d 1, 102 S. Ct. 869)).

*Id.* at 284-85. In *Smith v. Texas*, 543 U.S. 37 (2004), decided five months after *Tennard*, the

Court reiterated its rejection of the "nexus" requirement, stating, "[w]e rejected the Fifth

Circuit's 'nexus' requirement in *Tennard* . . . ." *Smith v. Texas*, 543 U.S. at 45. More recently,

the Court reaffirmed this point in an opinion authored by Justice Alito:

[O]ur cases have firmly established that sentencing juries must be able to give meaningful consideration and effect to all mitigating evidence that might provide a basis for refusing to impose the death penalty on a particular individual, notwithstanding the severity of his crime or his potential to commit similar offenses in the future.

*Abdul-Kabir v. Quarterman*, 550 U.S. 233, 246 (2007); *see also*, *Ayers v. Belmontes*, 549 U.S. 7,

21 (2006), where the Court described a jury's penalty-phase task as weighing "the finite

-12-

aggravating factors against the *potentially infinite mitigators*." (Emphasis added).

## B.    The Return of the Federal Death Penalty.

In the wake of *Furman*, and in the absence of congressional action, it was widely assumed that the capital aspects of existing federal criminal statutes were not constitutional and, in fact, all federal capital prosecutions ceased.[8]  Matters remained that way until, on November 18, 1988, Congress enacted the first post-*Furman* federal death penalty as part of the Anti-Drug Abuse Amendments ("ADAA"), authorizing capital punishment for murders occurring in the context of drug trafficking.  21 U.S.C. § 848(e).  The reach of the federal death penalty was greatly expanded on September 13, 1994, when President Clinton signed into law the Federal Death Penalty Act of 1994, 18 U.S.C. § 3591 *et seq*.  In March, 2006, the separate procedural provisions of the ADAA, 21 U.S.C. §§ 848(g)-®, were repealed.

The FDPA permits the death penalty to be considered in the following circumstances:

> § 3591. **Sentence of death** – (a) A defendant who has been found guilty of –  (2) any . . .  offense for which a sentence of death is provided, if the defendant as determined beyond a reasonable doubt at the hearing under section 3593 –
>
> (A) intentionally killed the victim;
>
> (B) intentionally inflicted serious bodily injury that resulted in the death of the victim;
>
> (C) intentionally participated in an act, contemplating that the life

---

[8]    In practice, there had been a *de facto* moratorium on federal capital prosecutions for the decade prior to *Furman*. For an exhaustive history of the federal death penalty, including an overview of both the FDPA and ADAA, *see* R.K. Little, "The Federal Death Penalty: History and Some Thoughts About the Department of Justice's Role," 26 FORDHAM URBAN L.J. 347 (1999).  Professor Little is a former Justice Department attorney who served under Attorney General Reno on the Attorney General's Review Committee on Capital Cases, the body that reviews all capital cases and presents a recommendation to the Attorney General as to whether the case should be designated as a capital prosecution.

-13-

of a person would be taken or intending that lethal force would be used in connection with a person, other than one of the participants in the offense, and the victim died as a direct result of the act; or

(D) intentionally and specifically engaged in an act of violence, knowing that the act created a grave risk of death to a person, other than one of the participants in the offense, such that participation in the act constituted a reckless disregard for human life and the victim died as a direct result of the act, . . .

In order to set into motion what Justice Blackmun called "the machinery of death,"[9] the government must serve and file a pretrial notice that the death penalty will be sought and specify in that notice those aggravating factors which the government will seek to prove if the case goes to a penalty trial. 18 U.S.C. § 3593(a). Additionally, the Supreme Court's decision in *Ring v. Arizona*, 536 U.S. 584 (2002) requires grand jury findings on at least the state-of-mind elements and statutory aggravating factors and, as argued *infra*, the balancing of aggravating and mitigating factors. If a defendant is found guilty of an offense of the kind enumerated in § 3591, a separate sentencing hearing must be conducted. The death penalty hearing may take place before the trial judge or before a jury. A defendant may waive jury-sentencing, however, only if the government consents. 18 U.S.C. § 3593(b)(3). A trial court may convene a separate penalty jury where the original jury has been discharged "for good cause." 18 U.S.C. § 3593(b)(2)©.

The penalty hearing is, for all intents and purposes, a separate trial at which both sides may call witnesses and present "information." The statute first requires the government to establish that the defendant is "eligible" for the death penalty. To do so, the government must convince the jury, unanimously and beyond a reasonable doubt, that one of the "intent" findings

---

[9] *See Callins v. Collins*, 510 U.S. 1141, 1145 (1994) ("From this day forward, I no longer shall tinker with the machinery of death.") (Blackmun, J., dissenting from the denial of *certiorari* in a Texas capital case and announcing his view that the death penalty is, as applied and administered, unconstitutional.) Justice Blackmun had dissented in *Furman*.

set forth in § 3591(a)(2)(A) – (D) exists. If the jury so finds, it must next unanimously find

beyond a reasonable doubt that at least one of the statutory aggravating factors set forth in §

3592(c)(1) through (16) also exists. 18 U.S.C. § 3593©. If the jury does not unanimously find,

in sequence, that, beyond a reasonable doubt, both statutory requirements have been met, the

penalty trial is over and the court must impose a sentence other than death. If, however, the

government successfully carries its burden of proof in establishing both the existence of an

intent factor under § 3591, and one or more of the "©" aggravating factors, the jury may also

consider whether the government has established beyond a reasonable doubt any *non*-statutory

aggravating factor – arguably limited to victim-impact – for which pre-trial notice was provided

pursuant to 18 U.S.C.§ 3593.

In attempting to provide guidance as to what a jury may consider at a penalty trial,

congress spoke, as noted, in terms of "information," not "evidence." "Information" may be

presented to the jury, by either side, "regardless of its admissibility under the rules governing

admission of evidence at criminal trials, except that information may be excluded if its probative

value is outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the

jury." 18 U.S.C. § 3593©. Thus, judges continue their role as evidentiary gatekeepers and retain

their discretion to exclude unreliable, confusing, time-wasting, or unfairly prejudicial evidence.

See *United States v. Lujan*, 603 F.3d 850, 854 (10th Cir. 2010).[10]

---

[10] This is a significant variation on the language of F.R.EVID. 403, which permits a court to exclude otherwise relevant evidence only if its probative value is "*substantially outweighed by the danger of unfair prejudice . . .*" [Emphasis added.] In *United States v. Lujan*, 603 F.3d 850, 854 , the Tenth Circuit took note of this distinction, commenting:

> Section 3593(c) provides the district court with greater
> discretion to exclude unfairly prejudicial or confusing
> information than the district court has during the guilt phase.
> This is so because § 3593(c) requires only that the

-15-

If the government meets its threshold burdens, the jury is required to consider mitigating

factors. The statute, at § 3592(a)(1) - (8), provides seven specific mitigating factors and one

*Lockett*-derived "catch-all" provision, *viz.* that "other factors in the defendant's background,

record or character or any other circumstance of the offense mitigate against imposition of the

death sentence." 18 U.S.C. § 3592(a)(8). Mitigating factors must be established by the

defendant by a preponderance of the evidence. 18 U.S.C. § 3593©. Findings with respect to

mitigating factors need not be unanimous, and any member of the jury who finds the existence of

a mitigating factor may consider it in the final weighing process set out in subsection§ 3593(e),

regardless of the number of other jurors who concur that the factor has been established. *See* 18

U.S.C. § 3593(d), giving effect to *Mills v. Maryland*, 486 U.S. 367 (1988). By contrast, findings

with respect to aggravating factors must be unanimous. 18 U.S.C. § 3593(d).

Once the jury has completed these threshold tasks, it next decides whether the

aggravating factor or factors in fact outweigh the mitigating factors and, if so, whether the

balance of aggravating factors over the mitigating factors is "sufficient to justify a sentence of

death, or in the absence of a mitigating factor, whether the aggravating factor or factors alone are

---

> countervailing interests "outweigh" the information's
> probative value, while Federal Rule of Evidence 403 permits
> exclusion only where the countervailing interests
> "substantially outweigh[ ]" the evidence's probative value.

Given the structure of the FDPA, a district court has broader discretion to strike
otherwise relevant evidence from penalty-phase consideration than it does pursuant to
Fed. R. Evid. 403. *United States v. Pepin*, 514 F.3d 193, 207 (2d Cir. 2008; *see also*,
*United States v. Fell*, 360 F.3d 135, 144-45 (2d Cir. 2004) (*Fell I*). This is so because the
language of the FDPA requires, as noted, that otherwise relevant evidence be excluded
when its probative value is simply outweighed (as distinct from being "substantially"
outweighed, the language of F.R.E. 403) by countervailing considerations of unfair
prejudice.

-16-

sufficient to justify a sentence of death. 18 U.S.C. § 3593(e). In other words, a jury's finding that the aggravating factors outweigh the mitigating factors would not be enough to return a capital verdict absent a subsequent finding that the degree of the outweighing suffices to impose a sentence of death.

Thus, the FDPA is a weighing death penalty statute which requires a penalty phase jury to decide, initially, whether certain aggravating factors have been unanimously established beyond a reasonable doubt and, if so, to weigh those aggravating factors against any mitigating factors. 18 U.S.C. § 3593(e). It is, once again, the weighing process which leads to the jury's ultimate decision whether the defendant should be sentenced to death. The ADAA had contained the following provision:

> The jury or the court, regardless of its findings with respect to aggravating and mitigating factors, is never required to impose a death sentence and the jury shall be so instructed.

21 U.S.C. § 848(k) (repealed). Most federal trial judges have given similar instructions in FDPA cases.[11] *See United States v. O'Driscoll*, 2002 WL 32063817 * 2 (M.D. Pa. 2002) (district court held "it is difficult to see how this provision could be required as a matter of law in a death penalty case involving large scale drug-trafficking and not be required in other death penalty cases."). *See also United States v. Sampson*, 335 F.Supp.2d 166, 239-240 (D. Mass. 2004).

After considering all issues, the jury votes and returns its findings. Unless the jury unanimously recommends death or life without the possibility of release, the Court must impose a sentence of less than death, up to life without possibility of release.[12] A jury unable to agree on

---

[11] Judge Sand recommends that such an instruction also be provided in FDPA cases and, in practice, most courts do so. *See* 1 L. SAND, MODERN FEDERAL JURY INSTRUCTIONS ¶ 9A.04, and commentary at 9A-80, 81.

[12] Realistically, the sole alternative to a sentence of death in this case is life imprisonment. 18 U.S.C. § 1959 mandates a life sentence.

-17-

a unanimous death verdict spares the defendant's life.[13] Whether the jury "recommends" a verdict of life or death, that decision is binding upon the court. 18 U.S.C. § 3594. The FDPA does not provide for judicial override of the jury's capital sentencing decision. *Id.*

No matter how the deliberations turn out, each juror is required to sign a certificate that their decision was not influenced by the "race, color, religious beliefs, national origin or sex of the defendant or of any victim. . . . ." 18 U.S.C. § 3593(f). In the event of a death sentence, the defendant has a right of appellate review, 18 U.S.C. § 3595, under which the reviewing court is permitted to grant relief from a sentence of death if: (1) the death sentence was "imposed under the influence of passion, prejudice, or any other arbitrary factor," (2) "the admissible evidence and information adduced does not support the special finding of the existence of the required aggravating factor," or (3)" the proceedings involved any other legal error requiring reversal of the sentence that was properly preserved for appeal under the rules of criminal procedure." 18 U.S.C. § 3595(c)(2). The Third Circuit has held that the FDPA does not mandate an appeal from a sentence of death and that an appeal, once filed, may be withdrawn. *United States v. Hammer*, 226 F.3d 229 (3d Cir. 2000).

## C.      Relevant appellate decisions.

To date, death sentences imposed pursuant to both the FDPA and ADAA have been reviewed in all circuits except for the Third and District of Columbia. See *United States v. Fields*, 516 F.3d 923 (10th Cir. 2008)(affirming death sentence); *United States v. Barrett*, 496

---

[13] This was one of the holdings of the only FDPA case to reach the Supreme Court. *See Jones v. United States,* 527 U.S. 373 (1999) (If the jury reports itself unable to agree on penalty, the sentencing function reverts to the trial judge who may not impose a sentence of death; there is no re-trial.) In *Sattazahn v. Pennsylvania*, 537 U.S. 101 (2003), the Court ruled that if a non-unanimous penalty-phase jury spares a defendant's life, the prosecution may again seek a sentence of death if the defendant wins a new trial of the underlying offense. A *Sattazahn* case has not yet arisen under the FDPA.

-18-

1654

F.3d 10799 (10<sup>th</sup> Cir. 2007)(affirming death sentence); *United States v. Chanthadara*, 230 F.3d 1237 (10<sup>th</sup> Cir. 2000) (vacating death sentence); *United States v. McVeigh*, 153 F.3d 1166 (10<sup>th</sup> Cir. 1998) (affirming death sentence); *United States v. McCullah*, 76 F.3d 1087 (10<sup>th</sup> Cir. 1996)(vacating death sentence). See also *United States v. Gabrion*, 648 F.3d 307 (6<sup>th</sup> Cir. 2011)(vacating death sentence),rehearing en banc granted, opinion vacated (Nov 17, 2011); *United States v. Montgomery*, 635 F.3d 1074 (8<sup>th</sup> Cir.  2011)(affirming death sentence); *United States v. Lighty*, 616 F.3d 321 (4<sup>th</sup> Cir.  2010)(affirming death sentence); *United States v. Whitten*, 610 F.3d 168 (2<sup>nd</sup> Cir.  2010)(vacating death sentence); *United States v. Fell*, 531 F.3d 197 (2d Cir. 2008) (affirming death sentence); *United States v. Mitchell*, 502 F.3d 931 (9<sup>th</sup> Cir. 2007) (affirming death sentence); *United States v. Sampson*, 486 F.3d 13 (1<sup>st</sup> Cir. 2007) (affirming death sentence);*United States v. Brown*,  441 F.3d 1330 (11<sup>th</sup> Cir. 2006) (affirming death sentence); *United States v. LeCroy*, 441 F.3d 914 (11<sup>th</sup> Cir. 2006) (affirming death sentence); *United States v. Purkey*, 428 F.3d 738 (8<sup>th</sup> Cir. 2005) (affirming death sentence); *United States v. Bourgeois*, 423 F.3d 501 (5<sup>th</sup> Cir. 2005) (affirming death sentence); *United States v. Allen*, 406 F.3d 940 (8<sup>th</sup> Cir. 2005) (*en banc*) (affirming death sentence); *United States v. Barnette*, 390 F.3d 775 (4<sup>th</sup> Cir. 2004), *vacated and remanded*, 126 S.Ct. 92 (2005); *United States v. Lee*, 374 F.3d 637 (8<sup>th</sup> Cir. 2004) (affirming death sentence); *United States v. Robinson*, 367 F.3d 278 (5<sup>th</sup> Cir. 2004) (affirming death sentence);*United States v. Higgs*, 353 F.3d 281 (4<sup>th</sup> Cir. 2003) (affirming death sentence); *United States v. Nelson*, 347 F.3d 701 (8<sup>th</sup> Cir. 2003) (affirming death sentence); *United States v. Jackson*, 327 F.3d 273 (4<sup>th</sup> Cir. 2003) (affirming death sentence); *United States v. Bernard*, 299 F.3d 467 (5<sup>th</sup> Cir. 2002) (affirming death sentence);  *United States v. Johnson*, 223 F.3d 665 (7<sup>th</sup> Cir. 2000) (affirming death sentence); *United States v. Paul*, 217 F.3d 989 (8<sup>th</sup> Cir. 2000) (affirming death sentence); *United States v. Barnette*, 211 F.3d 803 (4<sup>th</sup> Cir. 2000) (vacating death sentence); *United States  v. Causey*, 185

-19-

F.3d 407 (5th Cir. 1999) (reversing convictions and sentences of death in first case indicted pursuant to FDPA); *United States v. Battle*, 163 F.3d 1 (11th Cir. 1998) (affirming death sentence); *United States v. Webster*, 162 F.3d 308 (5th Cir. 1998) (affirming death sentence); *United States v. Hall*, 152 F.3d 381 (5th Cir. 1998) (affirming death sentence).

**D.      The Seventh Circuit Decisions**

Within the Seventh Circuit, there have been three sentences of death returned by federal juries.  Each of the three federal death sentences was affirmed by the Court of Appeals for the Seventh Circuit.  In United States v. Mikos, 539 F.3d 706, (7th Cir., 2008) a jury in the Northern District of Illinois sentenced Ronald Mikos to death for murdering an obese former patient cooperating in the government's Medicaid fraud prosecution against him.  The Seventh Circuit affirmed his federal sentence of death.  In United States v. Corley, 519 F.3d 716, (7th Cir., 2008) a jury in the Northern District of Indiana, Hammond Division sentenced Odell Corley to death for murdering 2 bank tellers during a bank robbery.  The Seventh Circuit affirmed his death sentence. In United States v. Johnson, 223 F.3d 665, (7th Cir., 2000) a jury in the Northern District of Illinois sentenced Darryl LaMont Johnson to death for ordering the murder of 2 people, one who was assisting in a federal investigation and the other in furtherance of a continuing criminal enterprise.  The Seventh Circuit affirmed his death sentence.

Within the Seventh Circuit, two federal juries returned life sentences.  In United States v. Taylor, Case Number 2:01-CR-0073, (Northern District of Indiana, Hammond Division, 2001) a jury sitting in the  Northern District of Indiana, Hammond Division sentenced Styles Taylor to life imprisonment for murdering a federally licensed firearms dealer and in United States v. Quon Ray, Case Number 96-CR-379 a jury sitting in the Northern District of Illinois, Eastern Division sentenced Quon Ray to life imprisonment for murder.

<u>LEGAL ARGUMENT</u>

-20-

**POINT ONE**: BECAUSE MORE THAN TWO DECADES OF EXPERIENCE WITH THE FEDERAL DEATH PENALTY HAS DEMONSTRATED THAT IT OPERATES IN AN ARBITRARY, CAPRICIOUS, IRRATIONAL AND DISCRIMINATORY MANNER, THIS COURT SHOULD DECLARE THE FDPA UNCONSTITUTIONAL.

### A. Introduction: the failure of the federal death penalty experiment.

A post-*Furman* and *Gregg* federal death penalty has now been in effect for nearly 25 years. Three people have been executed and an additional 56 men and one woman are presently subject to an active federal death sentence.[14] It can now be said, with confidence, that the federal death penalty experiment has failed. As it has played out in federal courtrooms around this country, and in the federal courts of the Seventh Circuit, the FDPA has been exposed as arbitrary, capricious, irrational, discriminatory in impact and, in the final analysis, fundamentally incapable of answering in a rational and predictable way the profound yet basic question of who should live and who should die. This Court should strike it down.

### B. Revisiting the constitutional premise of *Furman v. Georgia.*

As stated earlier, the essence of the Supreme Court's *Furman* decision was captured in Justice Stewart's concurring opinion:

> These death sentences are cruel and unusual in the same way that being struck by lightning is cruel and unusual. For, of all the people convicted of rapes and murders, . . . many just as reprehensible as these, the petitioners are among a capriciously selected handful upon whom the sentence of death has in fact been imposed. My concurring Brothers have demonstrated that, if any basis can be discerned for the selection of these few to be sentenced to die, it is the constitutionally impermissible basis of race . . . I simply conclude that the Eighth and Fourteenth Amendments cannot tolerate the infliction of a sentence of death under legal systems that permit this unique penalty to be so wantonly and so freakishly imposed.

---

[14] See, Federal Death Penalty Resource Counsel Project, "Federal Death Penalty", available at: http://www.capdefnet.org/FDPRC/pubmenu.aspx?menu_id=94&id=2094. (Updated June 12, 2012). Last visited October 14, 2012.

*Furman v. Georgia*, 408 U.S. at 309-10 (Opinion of Stewart, J., concurring; citations and

footnotes omitted).  To this may be added Justice White's finding that, "[T]he death penalty is

exacted with great infrequency even for the most atrocious crimes, and that there is no

meaningful basis for distinguishing the few cases in which it is imposed from the many cases in

which it is not."  *Id.* at 313 (Opinion of White, J., concurring).  In fact, the infrequency of death

sentences was noted by each of the five concurring Justices in the *Furman* majority.  *See,*

*Furman*, 408 U.S. at 248 n. 11 (Douglas, J., concurring); *id.* at 291-95 (Brennan, J.,

concurring);[15] *id.* at 309-10 (Stewart, J., concurring); *id.* at 312 (White, J., concurring); and, *id.* at

354 n. 124 and 362-63 (Marshall, J., concurring).

 The argument that the federal death penalty should be struck down because it is so

infrequently sought or imposed should not be misunderstood as an argument calling for

profligate use of the federal death penalty.  As Justice Brennan stated in *Furman*:

> The States claim, however, that this rarity is evidence not of
> arbitrariness, but of informed selectivity.
>
>  Informed selectivity, of course, is a value not to be
> denigrated.  Yet, presumably the States could make precisely the
> same claim if there were 10 executions per year, or five, or even if
> there were but one.  That there may be as many as 50 per year does
> not strengthen the claim.  When the rate of infliction is at that low
> level, it is highly implausible that only the worst criminals who

---

[15]  In 1972, Justice Brennan, positing a nation of 200 million people that carries out 50 executions per year, noted that "when government inflicts a severe punishment no more than 50 times a year, the inference is strong that the punishment is not being regularly and fairly applied,"  408 U.S. at 294, and, "When the punishment of death is inflicted in a trivial number of the cases in which it is legally available, the conclusion is virtually inescapable that it is being inflicted arbitrarily.  Indeed, it smacks of little more than a lottery system."  *Id.*  We are now a nation of 280 million people.  In the more than two decades since the return of the federal death penalty, out of a universe of thousands of potential federal capital cases, there have been 68 federal death verdicts.  Three federal prisoners have been executed.  There are presently 57 inmates under an active sentence of death.

-22-

commit the worst crimes are selected for this punishment. No one has yet suggested a rational basis that could differentiate in these terms the few who die from the many who go to prison. Crimes and criminals simply do not admit of a distinction that can be drawn so finely as to explain, on that ground, the execution of such a tiny sample of those eligible. Certainly the laws that provide for this punishment do not attempt to draw that distinction; all cases to which the laws apply are necessarily "extreme."

408 U.S. at 293-94 (Brennan, J., concurring).

At the time *Furman* was decided, as the opinion itself reflects, 15-20% of convicted murderers and rapists were actually sentenced to death in those jurisdictions where the death penalty was available for such offenses. *Furman*, 408 U.S. at 386 n. 11 (Burger, C.J., dissenting, citing four sources to support the statistic). Justice Powell, also dissenting, cited similar statistics. *Id.* at 435 n. 19. For his part, Justice Stewart utilized Chief Justice Burger's statistical analysis to lend further support to his ultimate conclusion that the death penalty was, indeed, in an Eighth Amendment sense, "unusual." As stated recently by Circuit Judge Gregory of the Fourth Circuit:

> When the government selects a few offenders from such a large pool for execution, it cannot further its legitimate penalogical interests; instead it merely inflicts gratuitous pain and suffering.

*United States v. Caro*, 597 F.3d 608, 636 (4th Cir. 2010) (Gregory, Cir.J., dissenting).

In *Furman*, arbitrariness and caprice were seen as the inevitable side-effects of a rarely-imposed punishment of death. This view is in harmony with Justice White's observations, premised on his experience reviewing hundreds of state and federal death-penalty cases in what was then 10 years on the Court:

> That conclusion, as I have said, is that the death penalty is exacted with great infrequency even for the most atrocious crimes and that there is no meaningful basis for distinguishing the few cases in which it is imposed from the many cases in which it is not.

408 U.S. at 313 (White, J., concurring); *see also*, Justice Scalia's concurring observation in

*Walton v. Arizona*, 497 U.S. 639, 638 (1990), *overruled on other grounds*, *Ring v. Arizona*, 536

U.S. 584 (2002), that the key opinions in *Furman* "focused on the infrequent and seeming

randomness with which, under the discretionary state systems, the death penalty was imposed."

In *Gregg*, the plurality reiterated this understanding of *Furman*, noting, "It has been estimated

that before *Furman* less than 20% of those convicted of murder were sentenced to death in those

States that authorized capital punishment."  *Gregg v. Georgia*, 428 U.S. 153, 182 n. 26 (plurality

opinion).   This understanding was repeated in *Woodson v. North Carolina*, *supra*, 428 U.S. at

295 n.31.

　　　After more than two decades of experience (1988-2012) with a post-*Gregg* federal death

penalty, it is a simple truth that the federal death penalty is sought and imposed far more rarely

than in the cases examined by *Furman*.  Being sentenced to death in the federal system is truly

akin to being struck by lightning.[16] Indeed, as argued *infra*, no meaningful basis may be

discerned for distinguishing those cases – even among the most extreme[17] – where death is

---

[16]  See, G. Ben Cohen. & Robert J. Smith, "The Racial Geography of the Federal
Death Penalty"*,* 85 WASHINGTON LAW REV. 425, 431 (2010)("The infrequency of the
federal death penalty—with 57 federal death sentences in the face of over 150,000
murders—makes death by lightning-strike look positively routine. Indeed, a federal death
sentence is akin to winning (or in this instance losing) the lottery.") (noting that there
were 424 deaths by lightning in the years 1999–2008.) The August 2006 edition of
*National Geographic* published a chart on the odds of dying by various means.  For
example, there is a 1 in 5 change of dying from heart disease, and a 1 in 84 chance of
dying in a car accident.  Far down the list is the chance of dying by lethal injection, 1 in
62,468.  The very next item on the list sets the odds of being killed by lightning as 1 in
79,746.  *Id*. at p. 21.

[17]  In the District of Colorado, Timothy McVeigh was sentenced to death and
executed for utilizing a truck bomb to blow up the Murrah Federal Building in Oklahoma
City, killing 168 people and injuring hundreds.  In the Southern District of New York,
two men associated with Usama bin Laden and al-Qaeda were spared the death penalty
after being convicted of simultaneous terrorist attacks, utilizing truck bombs, that
destroyed two American embassies in East Africa, killing 224 – including 12 Americans
– and injuring thousands. Zacharias Moussaoui was spared the death penalty in the

-24-

imposed from those cases in which it is not.

The Death Penalty Information Center has published a recent report on this issue, titled, "Struck by Lightning: The Continuing Arbitrariness of the Death Penalty Thirty-Five Years After Is Re-instatement in 1976 (Washington, DC 2011). (Copy appended at A121-149.) The report catalogues the arguments and data for declaring the shceme of capital punishment that is practiced in our courts unconstitutional.

**C.      More than two decades of experience with the federal death penalty.**

The *current* state of the federal death penalty – after nearly 25 years of experience – is summarized in the following table:

THE STATUS AND DISPOSITION OF ALL POTENTIAL
FEDERAL CAPITAL CASES FROM 1988 TO 2014 [18]

```
•     TOTAL POTENTIAL CASES . . . . . . . . . . . . . . . . . . . 3,827
•     PENDING REVIEW BY THE DEPARTMENT OF JUSTICE.. . . . . . . . .  240
•     CASES AUTHORIZED FOR CAPITAL PROSECUTION .. . . . . . . . . .  493
•     PRESENTLY PENDING OR IN TRIAL . . . . . . . . . . . . . . . . . 21
•     TRIAL: LIFE SENTENCE. . . . . . . . . . . . . . . . . . . . . 149
•     TRIAL: DEATH SENTENCE.. . . . . . . . . . . . . . . . . . . . . 77
•     EXECUTIONS .. . . . . . . . . . . . . . . . . . . . . . . . . .  3
•     CLEMENCY .. . . . . . . . . . . . . . . . . . . . . . . . . . .  1
•     FEDERAL DEATH ROW, ACTIVE DEATH SENTENCE .. . . . . . . . . . . 57

Source: Declaration of Kevin McNally (A39).
```

_____

Eastern District of Virginia despite a jury finding that he was responsible for the thousands of deaths that occurred as a result of the September 11, 2001 terrorist attacks. Eric Rudolph – the Olympic and abortion-clinic bomber – entered a guilty plea to a life sentence, as did Theodore Kaczynski, the Unabomber. *See* further discussion on the point *infra*.

[18]   *See* Declaration of Attorney Kevin McNally, Director of the Federal Death Penalty Resource Counsel Project, a group funded by the Administrative Office of the United States Courts to provide assistance to CJA and Defender attorneys handling federal capital cases. (A 34.) The figures cited are current as of April 30, 2014.

**D.    What these figures mean:**

In *Furman*, the Court found the death penalty to be an arbitrary, capricious and a decidedly "unusual" infringement of Eighth Amendment protections. It was the Court's view that the very infrequency with which the death penalty was sought and imposed served to guarantee arbitrary and capricious application of the ultimate penalty. This conclusion was reached on the basis of a showing that fewer than 20% of defendants convicted of capital crimes were actually sentenced to death. In the federal system, the figure is lower by a factor of 10. In fact, far fewer than 20% of those eligible for federal capital punishment are even *exposed* to the death penalty, by way of capital authorization, let alone actually sentenced to death. Taking the highest figure for actual death sentences returned against federal defendants by federal juries at 77, it may be seen that approximately 2.0% (77/3827) of all potentially death-eligible federal defendants are actually sentenced to death. In terms of actual federal executions to date – three – the figure is infinitesimal.[19] In terms of decisions reached by juries and judges, even among the "worst of the worst" targeted for the federal death penalty, life sentences result in nearly two-thirds (140/212) of the cases that actually proceed all the way to a penalty-phase.

Thus, utilizing an analysis that was persuasive to the Supreme Court in *Furman,* the federal death penalty is sought and imposed in an arbitrary, capricious and "unusual" manner. *Cf., Roper v. Simmons*, 543 U.S. 551, 567 (2005) (execution of juveniles violates the Eighth Amendment, in part because of "the infrequency of its use even where it remains on the books"); *Atkins v. Virginia*, 536 U.S. 304, 316 (2002) (execution of mentally retarded violates the Eighth

---

[19]    The baseline figure includes 21 authorized cases that are pending or in trial. It is reasonable to predict that a certain number of those cases will be resolved by a plea agreement and that a certain number will proceed to trial, with an overall statistical likelihood of very few resulting in death sentences. It is also reasonable to assume that some of the 57 federal prisoners now under active sentence of death will succeed in appellate or post-conviction challenges to their convictions or sentences.

-26-

Amendment, in part because "even in those states that allow the execution of mentally retarded offenders, the practice is uncommon"); *see also*, *Thompson v. Oklahoma*, 487 U.S. 815, 822 n. 7 (1988) (plurality) ("[C]ontemporary standards, as reflected by the actions of legislatures and juries, provide an important measure of whether the death penalty is 'cruel and unusual' [in part because] whether an action is 'unusual' depends, in common usage, upon the frequency of its occurrence or the magnitude of its acceptance.").

Because the federal death penalty is so infrequently sought, imposed, or carried out, it operates in an unconstitutionally arbitrary and capricious manner. Whether the most accurate analogy is being struck by lightning or participating in, and losing, a deadly lottery, the federal death penalty does not operate in a rational manner. On this basis, the court should strike it down.

**E.** **The absence of a principled basis for distinguishing between cases where the federal death penalty is imposed from cases where it is not imposed renders the federal death penalty unconstitutional.**

The Supreme Court has held that the constitution will not tolerate sentences of death that are imposed in a manner that is arbitrary or capricious. In *Eddings v. Oklahoma*, 455 U.S. 104, 112 (1982), the Court referred to the other side of this approach, requiring "that capital punishment be imposed fairly, and with reasonable consistency, or not at all." More recently in *Kennedy v. Louisiana*, *supra*, the Court warned, "When the law punishes by death, it risks its own sudden descent into brutality, transgressing the constitutional commitment to decency and restraint." 128 S.Ct. 2650. For that reason, the Court wrote, "[C]apital punishment must 'be limited to those offenders who commit "a narrow category of the most serious crimes" and whose extreme culpability makes them 'the most deserving of execution.'" *Id.* As will be demonstrated, the FDPA has failed to meet this constitutional standard and operates in an arbitrary and irrational manner.

-27-

An examination of the federal death penalty in practice shows that there is little consistency or predictability in the manner in which federal juries (and in two cases, federal judges) have imposed, or not, the federal death penalty or, indeed, which cases are allowed to plead out to life terms or less and which proceed to trial. This Court will be provided a CD containing verdict sheets reflecting findings in aggravation and mitigation in the penalty-phases of virtually all completed federal death penalty prosecutions. These verdict sheets provide graphic insight into the hopelessly irremediable problem of arbitrariness and caprice that marks the administration of the federal death penalty system. There is no rhyme, reason, or predictability to who is sentenced to death and who is not.

This argument is not refuted by simply pointing out that there are always difficulties inherent in comparing cases. A review of summaries of the cases[20] and the verdict sheets supplied to this court should put that reflexive and simplistic argument to rest.

- *United States v. Larry Lujan*, (D.N.M. 2011). Lujan was convicted of what the Tenth Circuit described as a "a gruesome [crime] in which Lujan (and his cohorts) severely beat [the victim] over a significant period of time, sexually assaulted [him], and engaged in other acts to terrify and isolate [the victim]." *United States v. Lujan*, 603 F.3d 850, 852 (10th Cir. 2010). In addition, at the penalty phase, the government convinced the jury beyond a reasonable doubt that Lujan had committed two additional murders which the Tenth Circuit described as "equally gruesome." (*Id*. at 853). These additional murders included the facts that after Lujan slit the throats of the two victims, he "poured gasoline over the victims' bodies, including the apparently still-breathing Alfredo, and set them on fire . . . . The victims' eleven-year-old daughter discovered the bodies the next afternoon." (*Id*.) Based on these murders and other evidence the jury specifically found that Lujan would be a danger in the future. On October 5, 2011, after the jury was unable to reach a unanimous verdict, Larry Lujan received a life sentence.

---

[20] A summary of all potential federal capital cases, and how each case was disposed of, may be found on the website of the Federal Death Penalty Resource Counsel Project at the following address:

http://www.capdefnet.org/FDPRC/pubmenu.aspx?menu_id=96&id=2064

-28-

*United States v. Timothy McVeigh*, (D. Colo.).  The Oklahoma City bombing case.  168 dead.  Hundreds injured.  Tried, convicted, sentenced to death, executed.

- *United States v. Terry Nichols*, (D. Colo.). McVeigh's co-defendant.  Tried, convicted,  sentenced to life.

- *United States v. Khalfan Mohamed and Daoud Rashed al`-Owhali*,  (S.D.N.Y.).  Two defendants associated with Usama bin Laden and al Qaeda convicted in simultaneous terrorist truck-bombings in 1998 of two American embassies in East Africa.  224 killed, including 12 Americans; thousands injured.  Tried, convicted, sentenced to life.

- *United States v. Eric Rudolph*, (N.D. Ala).  The Olympic and abortion-clinic bomber.  Victims included a police officer.  Arrested after five-year manhunt.  Described by Attorney General Ashcroft as "America's most notorious fugitive."  Negotiated guilty plea for life sentence.

- *United States v. Zacharias Moussaoui*, (E.D.Va.).  Defendant convicted of causing thousands of deaths in the September 11, 2001 attacks on the United States. Sentenced to life by jury.

- *United States v. Theodore Kaczynski*, (E.D.Ca.).  The Unabomber.  Three murders by mailbombs.  Plea agreement.  Sentenced to life.

- *United States v. Johnson*, (W.D. Va.). Mr. Johnson had been indicted for a murder at USP Lee where he was serving a virtual life sentence when he stabbed another inmate to death. On March 21, 2012 – after DOJ approval of a life plea – Antonio Johnson entered a guilty plea.

- *United States v. Basciano*, (E.D.N.Y.)  Mafia crime boss serving life sentence for RICO murder accused of another Mafia hit murder. On June 1, 2011, after deliberating for less than 2 hours, a unanimous jury rejected the death penalty and sentenced Basciano to life imprisonment.

- *United States v.  Duong*, (N.D.CA) Mr. Duong was previously sentenced to death in California state court for 4 murders that occurred in a nightclub in 1999.  Federal prosecutors in the Northern District of California indicted Mr. Duong in a 29-count, multi-defendant racketeering indictment, alleging 3 capital homicides (arising out of a string of robberies), and an additional 5 RICO ACT murders. On December 15, 2010, a federal jury sentenced Anh The Duong to life in prison.

- *United States v. Edgar Diaz and Emile Fort*, (N.D.CA) Attorney General approved 40 year plea agreements for both defendants, in a case involving seven gang-related murders, including (in Mr. Fort's case) the murder of an innocent child.

- *United States v. Joseph Minerd,* (W.D.Pa.).  Arson/pipebomb murder of pregnant

girlfriend, her fetus and three-year old daughter. Tried, convicted, sentenced to life.

- *United States v. Coleman Johnson*, (W.D.Va.).  Pipe-bomb used to kill pregnant girlfriend and their unborn child to avoid child support.  Tried, convicted, sentenced to life.

- *United States v. Christopher Dean*, (D.Vt.).  Defendant sends pipebomb through the mails killing victim and disfiguring victim's mother.  Plea agreement. Sentenced to life.

- *United States v. Billy Cooper*, (S.D.Miss.).  Car-jacking double homicide.  Tried, convicted, sentenced to life.

- *United States v. Christopher Vialva and Brandon Bernard*, (W.D. Texas).  Car-jacking double homicide.  Tried, convicted, sentenced to death.

- *United States v. Gary Sampson*, (D. Mass.).  Two murders during separate car-jackings.  Plead guilty, sentenced to death by jury.  Later set aside.

- *United States v. David Paul Hammer,* (M.D.Pa.)  Prison inmate guilty of strangling to death cellmate at USP/Allenwood.  Sentenced to death. Sentence later vacated.

- *United States v. Michael O'Driscoll*, (M.D.Pa.).  Prison inmate guilty of stabbing to death fellow inmate at USP/Allenwood.  Same judge, same courtroom,  same defense attorneys as *Hammer*.  Sentenced to life.

- *United States v. Storey*, (D. Kansas).  Prison inmate with Aryan Brotherhood ties kills fellow prisoner at USP/Leavenworth.  Plea agreement.  Sentenced to less than life sentence.

- *United States v. Douglas Black and Steven Riddle*, (D.Colo.).  Inmates at USP/Florence attack two suspected "snitches," one killed one injured.  Plea agreements.  Substantially less than life sentences.

- *United States v. William Sabalan and Rudy Sablan*, (D.Colo).  Two cousins housed at USP/Florence kill their cellmate, eviscerate his body, hang his entrails around the cell, and, on videotape, display the victim's heart and liver to responding officers.  Defendants tried separately.  Life verdicts in each case.

- *United States v. Barry Mills*, *et al*. (C.D. Calif.).  A RICO mega-indictment targeting 40 members of the Aryan Brotherhood prison gang and charging 17 murders.  Initially 27 defendants were death-eligible and 14 defendants were actually authorized for capital prosecutions.  After two lengthy trials, juries spared the first four defendants facing the death penalty – the alleged leaders of the gang – and the government has withdrawn its efforts to seek death as to the remaining

-30-

authorized capital defendants:

- *United States v. Fu Xin Chen, Jai Wu Chen and You Zhong Peng*, (E.D.N.Y.). Chinese gang members who kidnap, rape and murder victims held for ransom. Fu Xin Chen and Jai Wu Chen enter plea agreements. Attorney General withdraws death authorization shortly before Peng trial. Peng convicted after trial. All three sentenced to life.

- *United States v. Louis Jones*, (N.D.Texas). Decorated Gulf War veteran with no prior record abducts, rapes and kills young woman soldier. Tried, convicted, sentenced to death, executed.

- *United States v. Chevy Kehoe and Daniel Lee*, (D.Ark.) Triple murder of two adults and small child in connection with activities of white supremacist organization. Tried and convicted together. Kehoe – considered more culpable – sentenced to life. Lee sentenced to death by the same jury.

- *United States v. Gurmeet Singh Dhinsa*, (E.D.N.Y.). Millionaire Sikh businessman hires killers of two employees cooperating with authorities in criminal investigation of defendant. Tried, convicted, sentenced to life.

- *United States v. Trinity Ingle and Jeffrey Paul*, (W.D.Ark.). Murder of elderly retired National Parks employee. Victim shot while bound and gagged. At separate trials, Ingle is convicted and sentenced to life; Paul is convicted and sentenced to death.

- *United States v. Kristen Gilbert*, D.Mass.) VA nurse murders four patients and attempts to murder three more. Tried, convicted, sentenced to life.

- *United States v. LaFawn Bobbitt and Rashi Jones*, (E.D.Va.). Fatal shooting of bank teller during robbery. Security guard also shot and blinded. Tried, convicted, sentenced to life.

- *United States v. Bille Allen and Norris Holder*, (W.D.Mo.). Fatal shooting of bank teller during robbery. Tried, convicted, and both defendants sentenced to death.

The disparities are particularly striking in cases where murder has taken place in the context of drug-dealing.

- *United States v. Azibo Aquart*, (D. Conn.) Three drug-related murders. Tried, convicted, sentenced to death.

- *United States v. Azikiwi Aquart* (D. Conn.) Same three drug-related murders committed with his brother Azibo. Pled guilty to all three murders with no cooperation agreement, sentenced to life.

-31-

*United States v. Corey Johnson, James Roane, and Richard Tipton*, (E.D.Va.) Eleven drug-related murders. Tried, convicted, sentenced to death.

- *United States v. Dean Anthony Beckford*, (E.D.Va.). Six drug-related murders. Tried, convicted, sentenced to life.

- *United States v. Clarence Heatley and John Cuff*, (S.D.N.Y.). Fourteen drug-related murders. Plea agreement. Sentenced to life.

- *United States v. Alan Quinones and Diego Rodriguez*, (S.D.N.Y.) Torture murder of suspected informant. Tried, convicted, sentenced to life.

- *United States v. Elijah Williams and Michael Williams* (S.D.N.Y.) Execution-style triple murder by father and son. Tried, convicted, sentenced to life.

- *United States v. Thomas Pitera*, (E.D.N.Y.). Seven drug-related murders in organized crime and large-scale drug trafficking context. Victims tortured and bodies dismembered. Tried, convicted, sentenced to life.

- *United States v. German Sinisterra and Arboleda Ortiz*, (W.D.Mo.). One drug-related murder and one attempted murder. Tried, convicted, sentenced to death.

- *United States v. John Bass* (E.D.Mich.). Four drug-related murders. Tried, convicted, sentenced to life.

- *United States v. Kevin Grey and Rodney Moore*, (D.D.C.). Thirty-one drug-related murders. Tried, convicted, sentenced to life.

- *United States v. Daryl Johnson*, (N.D.Ill.). Two drug-related murders. Tried, convicted, sentenced to death.

- *United States v. Peter Rollock*, (S.D.N.Y.). Eight drug-related murders, including some ordered by defendant while incarcerated. Plea agreement. Sentenced to life.

- *United States v. Tommy Edelin*, (D.D.C.). Fourteen drug-related murders. Tried, convicted, sentenced to life.

- *United States v. Reynaldo Villarreal and Baldemar Villarreal*, (E.D.Texas). Drug-related murder of law enforcement officer. Tried, convicted, sentenced to life.

- *United States v. Shahem Johnson and Raheem Johnson*, (E.D.Va.) Brothers tried for five drug-related murders. Tried, convicted, sentenced to life.

- *United States v. Juan Raul Garza*, (S.D.Texas). Three drug-related murders. Tried, convicted, sentenced to death, executed.

*United States v. Claude Dennis*, (E.D.Va.). Six drug-related murders. Tried, convicted, sentenced to life.

- *United States v. Emile Dixon*, (E.D.N.Y.) Two drug-related murders, including machine-gunning death of suspected informant. Tried, convicted, sentenced to life.

- *United States v. Anthony Jones*, (D.Md.). Six drug-related murders. Tried, convicted, sentenced to life.

- *United States v. Walter Diaz and Tyrone Walker* (N.D.N.Y.). Two defendants kill a drug-dealer as part of 848 CCE and flee to New York City where, in a failed effort to steal a car, they shoot and kill a woman in lower Manhattan. Later in same day the defendants fired at, but missed, a retired school teacher in Coney Island in a failed armed robbery. Defendant Walker was also found by the jury to have beaten to death an elderly man during a burglary when Walker was 19 years-old. Both defendants tried, convicted, sentenced to life.

Within the Seventh Circuit, the Government has tried and failed at least twice to convince a jury to sentence a defendant to death. It is impossible to discern a unifying principle as to why some cases plead out, some get authorized, and still others get a pass on death altogether.

These are just selected cases from the larger pool of eligible cases capturing the universe of all federal cases authorized for capital prosecution. This argument, however, draws its full force from the cumulative effect gained from reviewing the summaries of authorized cases complied by the Federal Death Penalty Resource Counsel Project and especially the verdict sheets produced in CD format. By definition, since all of these cases were authorized by the Attorney General of the United States for capital prosecution, these are (or should have been) the "worst of the worst" the federal system has to offer. Indeed, it is likely there is not a crime on the list as to which a prosecutor could not (and probably did) argue in summation, "If this case doesn't call for the death penalty, what case does?" And yet, in case after case – indeed, in the overwhelming *majority* of such cases – juries returned life verdicts and, to an even greater extent, plea agreements were offered and accepted.

The point is that one cannot read these mind-numbing matter-of-fact chronicles of the

-33-

many ways in which man can demonstrate his inhumanity to his fellow man without coming to

the realization that *all* of the cases are by their own terms horrible, and *all* involved the infliction

of agony on victims and survivors. Yet, for indiscernible reasons, some defendants were

sentenced to death, while overwhelming majority were not.  If any basis can be discerned, it is, as

the following discussion illustrates, race, region, and gender.

In *Walker v. Georgia*, 129 S.Ct. 453 (2008), Justice Stevens, dissenting from the denial of

*certiorari*, noted that Georgia had sharply curtailed the scope of its statutory proportionality

review of death sentences, and noted, "The likely result of such truncated review . . . is the

arbitrary or discriminatory imposition of death sentences in contravention of the Eighth

Amendment."  *Id*. at 457.  *See* B. Sarma, "*Furman's* Resurrection: Proportionality Review and

the Supreme Court's Second Chance to Fulfill *Furman's* Promise," 2009 Cardozo L. Rev. De

Novo 238 (2009).  As argued in the Cardozo article:

> Almost forty years have passed since *Furman*, and nobody
> seriously argues that the Court's decision to regulate procedure has
> solved the constitutional problem of arbitrariness.  In fact, evidence
> indicates that the application of the death penalty is just as arbitrary
> today as it was when the Court decided *Furman*.  If *Furman*
> inspired positive changes in its immediate wake, those changes
> have been all but eviscerated in the past two decades.

*Id*. at 242.

So there is no mistake about it, Mr. Briseno urges this court to strike down the death

penalty for the above-stated reasons. However, a potential alternative shorter-range solution to

the problem of disproportion and arbitrariness in the imposition of the federal death penalty is for

this court to declare that the FDPA must be interpreted so as to allow for proportionality and

comparative review of the universe of federal death sentences to determine if they are imposed

1670

irrationally.[21] A finding that such is the case would lead to a conclusion that the FDPA cannot

meet the requirements of *Furman* and would have to be invalidated until Congress could devise a

mechanism for checking the arbitrary and irrational imposition of the ultimate punishment. This

court is urged to undertake such a review and, at its conclusion, void the FDPA.

> **F.      The Federal Death Penalty is unevenly applied on a regional basis and suffers from intractable problems of racial discrimination in the targeting of minority defendants and a demonstrated race/gender-of-victim effect.**

>    1.      Introduction.

From the earliest days of the government's efforts to enforce a national death penalty,

patterns of uneven and apparently discriminatory application appeared. From the very outset, the

federal death penalty was being utilized almost exclusively by federal prosecutors in the South

and, not surprisingly, federal death verdicts were being returned almost exclusively in those

traditional "death-belt" jurisdictions. Added to this arbitrary factor was the invidious

circumstance of race, since the federal death penalty, as it was rolled out in the 1990's, was

targeting a disproportionately large number of minority groups, particularly African-Americans

and Hispanics.

By 1994, when the obvious racial disparities apparent from the Justice Department's

prosecution of federal death penalty cases could no longer be ignored, the House Subcommittee

on Civil and Constitutional Rights investigated and concluded as follows:

> Race continues to plague the application of the death penalty in the
> United States. On the state level, racial disparities are most
> obvious in the predominant selection of cases involving white
> victims. On the federal level, cases selected have almost

---

[21] In *Pulley v. Harris*, 465 U.S. 37 (1984), the Court ruled that proportionality review was not required by the Eighth Amendment, at least in a state (California) that did not permit non-statutory aggravating factors. This Court need not "overrule" *Pulley* to engage in the review proposed by defendant. It may proceed simply as a matter of interpreting the proper application of the FDPA.

exclusively involved minority defendants.

"Racial Disparities in Federal Death Penalty Prosecutions 1988-1994," Staff Report by the

Subcommittee on Civil and Constitutional Rights, Committee on the Judiciary, 103rd Congress,

2nd Session, March 1994. That report also noted, on the issue of the targeting of minority people

for federal capital prosecutions, that as of 1994 there had been 37 defendants authorized for

capital punishment under the § 848(e) (ADAA) scheme, of whom 33 (87%) were black or

Hispanic. *Id.*

Earlier evidence of the potential race-effect of the death penalty had been provided by the

agency formerly known as the General Accounting Office (now the Government Accountability

Office). At the time Congress enacted the § 848(e) (ADAA) death penalty, the GAO was

directed to undertake a study of the potential influence of race on the death penalty. 21 U.S.C. §

848(o)(2) (Repealed). The GAO in fact undertook that study in 1990 and concluded as follows:

> Our synthesis of the 28 studies shows a pattern of evidence
> indicating racial disparities in the charging, sentencing and
> imposition of the death penalty after the *Furman* decision.
>
> In 82 percent of the studies, race-of-victim was found to influence
> the likelihood of being charged with capital murder or receiving
> the death penalty, i.e. those who murdered whites were found to be
> more likely to be sentenced to death than those who murdered
> blacks. This finding was remarkably consistent across data sets,
> states, data collection methods and analytic techniques. The
> finding held for high, medium, and low quality studies.

Death Penalty Sentencing: Research Indicates Pattern of Racial Disparities" (GAO/GGD-90-57,

Feb. 1990) at p. 5. In his 1999 law review article, Professor Rory Little, writing with the

perspective of one who had actually served on Attorney General Reno's Capital Case Review

Committee, noted that serious questions about regional and racial disparities had not been

ameliorated by the administrative process within the Justice Department. R.K. Little, 26

FORDHAM URBAN L.J., *supra*, at 450-90.

-36-

Thus, from the very beginning of the modern federal death penalty, the government has been on notice that its targeting and enforcement patterns are problematical.

    2.    The 2000 DOJ Study.

In a press conference that took place on June 28, 2000, President Clinton was asked about a highly-publicized execution that had taken place the previous week in Texas and whether he believed it was time "for the American people to stop and reassess where we stand on implementation of the death penalty." In response, the President said the following about the application of the federal death penalty, acknowledging concerns about race and regional practices:

> The issues at the federal level relate more to the disturbing racial composition of those who have been convicted and the apparent fact that almost all the convictions are coming out of just a handful of states, which raises the question of whether, even though there is a uniform law across the country, what your prosecution is may turn solely on where you committed the crime. I've got a review underway of both those issues at this time.

(Transcript of the President's 6/28/2000 press conference.)

On September 12, 2000, the Department of Justice released the comprehensive study alluded to by President Clinton in his remarks. The study set forth in exhaustive detail how the federal death penalty had been administered for the 12 years from 1988 to the summer of 2000.[22] The essence of the 2000 DOJ Study's findings was that the federal death penalty had been disproportionately sought against minority-group defendants and irrationally sought on a regional

_____

[22] The Department filed a supplemental report on June 6, 2001 after the change in administration. Additionally, on June 7, 2007, the Justice Department transmitted statistics and more recent findings on the administration of the federal death penalty to Senator Feingold in preparation for oversight hearings. Each of the aforementioned reports is available in complete form on the Death Penalty Information Center web-site: http://www.deathpenaltyinfo.org/federal-death-penalty#statutes, last visited October 14, 2012.

-37-

1673

basis. At the time, the Study reported, federal death row consisted of 19 men, of whom four

were white, 13 black, one Hispanic and one "other."  Consistent with the historical roots of the

death penalty, 12 of the 19 defendants on federal death row at the time of the DOJ Study had

been sentenced to death in the South.  Virginia and Texas had contributed four defendants apiece.

No other jurisdiction, at the time of the Study's release, had sentenced more than a single

defendant to death.[23]

In terms of which defendants actually faced the federal death penalty, the 2000 Study

showed that of the 159 cases where the Attorney General had authorized a capital prosecution, 44

defendants where white (27.7%), 71 were black (44.7%), 32 were Hispanic (20.1%) and another

26 were categorized as "other" (7.5%).  *See,* Table 1A at p. T-2 of DOJ Study.  Thus, as of the

summer of 2000, more than 70% of the federal defendants targeted for the death penalty had

been non-whites.

In addition to the racial disparity in federal death-penalty prosecutions, the study found a

regional bias in the enforcement of the federal death penalty.  The DOJ Study revealed the

following on the issue of regional disparity:

- From 1995 onward, of the 94 separate federal districts in the federal system, only 49 had ever submitted a case recommending capital prosecution.  (DOJ Study at 14.)

- Twenty-two federal districts had never submitted a case for review at all.[24]  (DOJ

---

[23]  The race and region figures have not changed appreciably in the 12 years since the 2000 Study's release.

[24]  The potential universe of federal capital prosecutions is vast. Virtually any murder committed in the course of a federal firearms violation is a potential federal death penalty case.  18 U.S.C. § 924(j).  In *United States v. Chanthadara,*  230 F.3d 1237 (10th Cir. 2000), where the government proceeded on a Hobbs Act theory of federal prosecution, the defendant was sentenced to death for a murder committed in the course of the robbery of a restaurant, an unfortunately garden variety type of criminal behavior.

- Twenty-one federal districts, although submitting one or more cases for review, had never sought permission to seek the death penalty in any case.[25]

*Id.*

The release of the report drew the following public comment from officials at the Justice

Department and the White House:

> Saying she was "sorely troubled" by stark racial disparities in the federal death penalty, Attorney General Janet Reno today ordered United States attorneys to help explain why capital punishment is not applied uniformly across ethnic groups.

M. Lacey and R. Bonner, "Reno Troubled by Death Penalty Statistics," *N.Y. Times*, September

13, 2000. The *Times* also reported the reaction of then Deputy Attorney General Eric Holder,

who was, at the time, the highest-ranking African American at the Justice Department:

> "I can't help but be personally and professionally disturbed by the numbers that we discuss today," Deputy Attorney General Eric Holder said. "To be sure, many factors contributed to the disproportionate representation of racial and ethnic minorities throughout the federal death penalty process. Nevertheless, no one reading this report can help but be disturbed, troubled, by this disparity."

---

That sentence of death was vacated on appeal on other grounds (and the defendant later sentenced to life imprisonment), but the potential number of cases that could be prosecuted on this theory is staggering. Any murder committed while engaged in a narcotics conspiracy involving more than 50 grams of crack cocaine or 5 kilograms of heroin remains a potential federal capital case. 21 U.S.C. § 848(e).

[25] The recommendation that accompanies a submission is of great importance. In 91% of cases where the local United States Attorney did not want to prosecute the case as a death-penalty case, that recommendation was followed by the Attorney General. (DOJ Study at 43.) In 83% of cases where death-penalty authorization was requested, that recommendation was also followed by the Attorney General. *Id.* These figures are based on the 575 defendants whose cases were reviewed by the Attorney General from 1995-2000. In the "pre-protocol" period – November 1988 through January 27, 1995 – the only cases reviewed were those where the local United States Attorney affirmatively had requested capital-authorization. The approval rate for those cases was 90%. (DOJ Study at 10.)

*Id.* CNN reported that Attorney General Reno wanted "a broader analysis."[26] White House deputy press secretary Jake Siewert responded to the release of the report in the following manner: "'At first glance, those numbers are troubling. We need to know what's behind the numbers.'"[27] During his confirmation hearings the year following the Study's release, Attorney General Ashcroft also noted that evidence of racial disparity in the federal death penalty "troubled [him] deeply." Quoted in *United States v. Bass, supra*, 266 F.3d at 538 n.1. "Troubled" and "disturbed" public officials, however, do not cure constitutional violations or remedy arbitrary and invidious practices. As this discussion continues, it will be seen that over 10 years later, nothing has changed. If anything, to quote the title of Mr. McNally's DePaul Law Review article, a non-existent problem has gotten worse. See, Kevin McNally, "Race and the Federal Death Penalty: A Nonexistent Problem Gets Worse", 53 DEPAUL L. REV. 1615 (2004).

3.     The federal death penalty after nearly 25 years.

After more than 20 years of a federal death penalty, it is undeniable and clear that the undeniable patterns of race and region that disturbed and troubled government officials a decade ago persist. It seems utterly plain that these problems are intractable. The following tables reflect the present state of affairs:

```
        TABLE I: 1988-2011
 THE RACE OF THE 472 DEFENDANTS
 TARGETED FOR FEDERAL EXECUTION:

African-Americans:    247   (51%)
```

---

[26] In *United States v. Bass,* 266 F.3d 532 (6th Cir. 2001), *reversed*, 532 U.S. 1035 (2002) (per curium), the Sixth Circuit quoted at length from the public statements of Attorney General Reno and Deputy Attorney General Holder in response to the release of the DOJ Study. 266 F.3d at 538.

[27] Considering the impact of the study, Judge Sand in *United States v. bin Laden*, 126 F. Supp.2d 256, 258 (S.D.N.Y. 2000) found the statistical evidence "indeed troubling," but ultimately rejected a challenge to that capital prosecution.

|  |  |  |
|---|---|---|
| Latinos: | 90 | (18%) |
| "Others": | 22 | (5%) |

(Source: McNally declaration at A44)

In terms of targeting decisions, therefore, 73% of those selected for capital prosecutions are members of minority groups. At the time of the 2000 DOJ Study, the figure was 70%.

    4.       <u>The persistent capricious circumstance of region</u>.

As to the regional basis of federal capital prosecutions, the FDPA remains a largely Southern phenomena. Nearly two-thirds of federal death verdicts have come out of the traditional "death belt" states.

**TABLE II: 1988-2011**
**SOUTHERN JURISDICTIONS AND**
**NUMBERS OF FEDERAL DEATH VERDICTS**

| | |
|---|---|
| Texas – | 12 |
| Missouri – | 8 |
| Virginia – | 7 |
| Georgia – | 3 |
| Oklahoma – | 3 |
| Louisiana | 3 |
| N. Carolina – | 3 |
| Arkansas – | 2 |
| Florida – | 2 |
| Maryland – | 2 |
| S. Carolina – | 2 |
| W. Virginia – | 2 |

(Source: McNally Declaration – A44.)

Historically, the death penalty has been a largely Southern phenomena; that remains the case today. As of October 11, , 2012, there had been 1,308 post-*Furman* executions carried out in the United States. (A86.) Of these executions, 1,071 – or 82% – have taken place in Southern states. (A88.) Two states alone, Texas and Virginia, have accounted for nearly half (45%) of all post-*Gregg* executions. (*Id.*). With this historical perspective in mind, it is no surprise that those federal jurisdictions in states with an established "culture of death" reflect that culture, consciously or not, in decisions to pursue the death penalty. Neither is it surprising that

federal juries accustomed to seeing death sentences routinely returned in their own communities would do the same. Regional bias, however, is inimical to a national penalty that is, theoretically at least, that death is sought and imposed using consistent national standards.

The "ideal" of a national standard aside notwithstanding, the federal death penalty in 2012 continues to be a Southern phenomena and federal districts from the South predictably "lead the charge" in seeking and receiving authorization to take cases capital and in convincing juries to return death verdicts. Thus, "[o]f the 72 federal death sentences imposed by juries since 1988, 45 [63 %] have come from the traditional 'death belt' states, the states that have historically executed the most people." (McNally Declaration at A44.) In a study of this issue published in 2010, the authors note:

> Geographic disparities . . . persist. To promote uniformity, United States Attorneys submit all death-eligible federal cases to the United States Attorney General for death-authorization. Yet the geography of the federal death penalty is anything but uniform. Six of the ninety-four federal judicial districts account for one-third of death-authorizations. More than half of all death-authorizations come from fourteen federal districts. Seven federal districts are responsible for approximately 40% of the individuals on federal death row. Two-thirds of districts have not sentenced anyone to death. Nearly one-third of federal districts have not sought a death sentence. Fewer than 20% of federal districts have sentenced more than one person to death.

G. Ben Cohen. & Robert J. Smith, "The Racial Geography of the Federal Death Penalty", 85 WASHINGTON LAW REV. 425, 429-430 (2010).

The reality is nothing has changed in any appreciable way since the 2000 DOJ Study; the federal death penalty remains a disproportionately Southern phenomena.

It thus appears – whether one takes a micro or macro view – that the irrational caprice of geographical location has as much to do with facing the federal death penalty as does the crime committed. To quote the former President, "[W]hat your prosecution is may turn solely on

-42-

where you committed the crime." It also appears that trying to "fix" one part of a the geography problem may give rise to others. *See*, B. Wesier and W. Glaberson, "Ashcroft Pushed Executions in More Cases in New York," *N.Y. Times*, 2/6/03 (Reporting on efforts by the Attorney General to require federal prosecutors in New York and Connecticut to seek death more often; (A82); B. Weiser and W. Glaberson, "Decisions on Death Cases Raise Questions of Race," *N.Y. Times*, 2/14/03 (Pointing out that the 12 defendants as to whom Attorney General Ashcroft overruled a New York area federal prosecutor's decision not to seek the death penalty were all African-American or Hispanic).

A death penalty that operates on an arbitrary basis is unconstitutional under both the Eighth Amendment and the due process and equal protection clauses of the constitution. See, *Bush v. Gore*, 531 U.S. 98, 106, 121 S.Ct. 525, 148 L.Ed.2d 388 (2000) (equal protection and due process violations found where "the standards for accepting or rejecting contested ballots might vary not only from county to county but indeed within a single county from one recount team to another. This is not a process with sufficient guarantees of equal treatment.")

5.    The unabated practice of targeting minorities for the federal death penalty, the  long-documented "white-victim effect," and the emergence of a "white female victim effect" further demonstrate the arbitrary and irrational operation of the federal death penalty.[28]

        (a)    *Introduction – The law on race and the death penalty.*

Twenty-three years ago, dissenting in *McCleskey v. Kemp*, 481 U.S. 279 (1987), Justices Brennan Marshall, Blackmun and Stevens hypothesized an attorney-client conversation where an African-American defendant charged with capital murder asked his attorneys what the chances were that he would be sentenced to death. Based on the statistical analysis presented to the Court in *McCleskey*, it was the four dissenters' conclusion that, at some point in the dialogue, defense

---

[28]    If the government disputes the factual basis of this argument, Defendant requests an evidentiary hearing.

counsel would have to level with their client and tell him that his race would play an important

role – perhaps a determinative one – in whether he lived or died:

> The story could be told in a variety of ways, but [the client] could
> not fail to grasp its essential narrative line: there was a significant
> chance that race would play a prominent role in determining if he
> lived or died.

*McCleskey*, 481 U.S. at 322 (Opinion of Brennan, Marshall, Blackmun and Stevens, J.J.,

dissenting).[29]  In *McCleskey*, a rigorous statistical study of Georgia's capital sentencing practices

found that killers of whites, regardless of their own race, were more likely to be sentenced to

death than killers of African-Americans.  One of the major statistical models relied on by

McCleskey showed that "defendants charged with killing white victims (whatever their own

race) were 4.3 times as likely to receive a death sentence as defendants charged with killing

blacks." 481 U.S. at 287.

More than a century ago, in *Yick Wo v. Hopkins*, 118 U.S. 356 (1886), the Court observed

that application of seemingly neutral laws "with an evil eye and an unequal hand, so as

practically to make unjust and illegal discrimination between persons in similar circumstances"

amounts to a denial of equal protection.  *Id.* at 373-74. The historical truth is that in the United

States capital punishment and race have always  been inextricably intertwined.  That state-of-

affairs is likely to continue, regrettably, until we can say honestly that racism has disappeared

from our society.  *See, e.g.*, C. J. Ogletree (Ed.) and A. Sarat, *From Lynch Mobs to the Killing

State: Race and the Death Penalty in America* (New York University Press 2006); R. K. Little,

"What Federal Prosecutors Really Think: The Puzzle of Statistical Race Disparity Versus

Specific Guilt, and the Specter of Timothy McVeigh," 53 DEPAUL L. REV. 1591 (2004); K.

---

[29]  After his retirement from the bench, Justice Powell stated that he regretted
voting with the majority, and authoring the Court's 5-4 opinion upholding the death-
penalty in *McCleskey*.  *See,* Jeffries, *Justice Lewis F. Powell, Jr.* (1994) at pp. 451-52.

DEPAUL L. REV. 1615 (2004); C. J. Ogeltree, "Black Man's Burden: Race and the Death Penalty

in America," 81 OREGON L.REV. 15 (2002); G. L. Pierce, M. L. Radlet, "Race, Region, and

Death Sentencing in Illinois," 81 OREGON L.REV. 39 (2002); S. Bright, "Discrimination, Death

and Denial: The Tolerance of Racial Discrimination in the Infliction of the Death Penalty," 35

SANTA CLARA L.REV. 433 (1995); D. Baldus, "Reflections on the 'Inevitability' of Racial

Discrimination in Capital Sentencing and the 'Impossibility' of its Prevention, Detection and

Correction," 51 WASH. & LEE L.REV. 359 (1994); Bienen, Weiner, Denno, Allison and Mills,

"The Reimposition of Capital Punishment in New Jersey: The Role of Prosecutorial Discretion,"

41 RUTGERS L.REV. 27, 100-57 (1988).

In *Furman*, Justice Douglas had traced this correlation[30] and concluded:

> In a Nation committed to equal protection of the laws there
> is no permissible "caste" aspect of law enforcement. Yet we know
> that the discretion of judges and juries in imposing the death
> penalty enables the penalty to be selectively applied, feeding
> prejudices against the accused if he is poor and despised, lacing
> political clout, or if he is a member of a suspect or unpopular
> minority, and saving those who by social position may be in a more
> protected position. In ancient Hindu law, a Brahman was exempt

---

[30] Just how ugly this gets is illuminated in a study of death verdicts returned in Philadelphia. The study, lead by Professor Jennifer Eberhardt of Stanford University, concluded that convicted murderers with stereotypical African-American features and dark skin were more likely to receive the death penalty for killing a white person than lighter-skinned African-American defendants with more Caucasian features. J. Eberhardt, P.G. Davies, V. J. Purdie-Vaughns, S.L. Johnson, "Looking Deathworthy: Perceived Sterotypicality of Black Defendants Predicts Capital-Sentencing Outcomes," 17 PSYCHOLOGICAL SCIENCE 383 (Spring 2006). See also, Mona Lynch and Craig Haney, "Mapping the Racial Bias of the White Male Capital Juror: Jury Composition and the 'Empathic Divide'", 45 LAW & SOCIETY REVIEW 69, 91 (2011)("[T]he white male jurors in this study judged a black defendant whom they tended to view as driven by the defendant's own depraved predispositions, and as someone whose criminal behavior they were reluctant to interpret as the product of the defendant's dysfunctional and psychologically damaging background.")

-45-

from capital punishment; and in those days, "[g]enerally, in the law
books, punishment increased in severity as social status
diminished." We have, I fear, taken in practice the same position . .
. .

*Furman*, 408 U.S. at 255 (Douglas, J., concurring; footnotes omitted.)  As late as 1991 – more than 15 years after *Furman* – the execution of a white man for the murder of a black man was front-page news as an event that had not occurred in the nation for half-a-century.  *See*, "Rarity for U.S. Executions: White Dies for Killing Black," *N.Y. Times*, September 7, 1991, p.1, col. 1.  DPIC reports that since executions resumed in the wake of *Gregg* and up to October 11, 2012, there have now been 19 executions of a white defendant for killing a black victim; but there have been 256 executions of black defendants who killed a white victim. (A86.)

Mr. Briseno's showing in this motion, whether or not the evidence of a racial bias to the federal death penalty continues to "disturb" or "trouble" any one in the Justice Department, is sufficient to establish a case of arbitrariness in the enforcement of the federal death penalty.  It is difficult to imagine how, other than racism, one can explain the arbitrary manner in which the federal death penalty has been administered in terms of who is targeted.  *Batson v. Kentucky*, 476 U.S. 79, 93-94 (1986).  To all appearances, there is "a clear pattern, unexplainable on grounds other than race."  *Arlington Heights v. Metropolitan Housing Dev. Corp.*, 429 U.S. 252, 266 (1977).

In terms of eradicating racism, in the past 100 years, no judicial responsibility has laid greater claim on the moral and intellectual energies of the federal courts than "the prevention of official conduct discriminating on the basis of race." *Washington v. Davis*, 426 U.S. 229, 239 (1976).  The Supreme Court and the lower federal courts have striven to eliminate all forms of state-sanctioned discrimination, "whether accomplished ingeniously or ingenuously." *Smith v. Texas*, 311 U.S. 128, 132 (1940).  The federal courts have staunchly forbidden discrimination,

-46-

not only where it had been imposed by statute, see, e.g., *Brown v. Board of Education*, 346 U.S.

483 (1954), *Nixon v. Herndon*, 273 U.S. 536 (1927), but also "look[ed]" beyond the face of . . .

[a] statute . . . where the procedures implementing a neutral statute operate . . . on racial

grounds." *Batson v. Kentucky*, 476 U.S. 79, 88 (1986); *Turner v. Fouche*, 396 U.S. 346 (1970);

*Yick Wo. v. Hopkins*, 118 U.S. 356, 373-74 (1886).

The Supreme Court has repeatedly emphasized that "the core of the Fourteenth

Amendment is the prevention of meaningful and unjustified official distinctions based on race."

*Hunter v. Erickson*, 393 U.S. 385, 391 (1969). This case, as a federal prosecution, is not subject

to the Equal Protection Clause of the Fourteenth Amendment – which is addressed to state action

– but the Due Process Clause of the Fifth Amendment which has long been held to embody this

requirement, by implication. *Bolling v. Sharpe*, 347 U.S. 497, 499 (1954); *see Weinberger v.

Wisenfeld*, 420 U.S. 636, 638 n.2 (1975) ("[Our] approach to Fifth Amendment equal protection

claims has . . . been precisely the same as to equal protection claims under the Fourteenth

Amendment.") In the area of criminal justice, where racial discrimination "strikes at the

fundamental values of our judicial system and our society as a whole," *Rose v. Mitchell*, 443 U.S.

545, 556 (1979), the Supreme Court has "consistently" articulated a "strong policy . . . of

combating racial discrimination." *Id.* at 558. As an Hispanic, Mr. Briseno may, and does, assert

a personal Equal Protection claim. Additionally, a convincing demonstration that the federal

death penalty operates with an impermissible racist effect is demonstrated evidence that it

operates fundamentally unfairly and with arbitrariness and caprice. Accordingly, Mr. Briseno

obviously has standing pursuant to the Eighth Amendment and Fifth Amendment Due Process

Clause not to be subjected to an arbitrary system of capital punishment. The government, after

all, has targeted him for execution.

The most obvious and destructive form that such discrimination can take is systematically

-47-

unequal treatment of criminal defendants based upon their race. *See McLaughlin v. Florida*, 379 U.S. 184, 190 n.8 (1964), citing *Strauder v. West Virginia*, 100 U.S. 303, 306-08 (1880); *Ho Ah Kow v. Nunan*, 12 Fed. Cas. 252 (No. 6546) (C.C.C.D.Cal. 1879). Indeed, state criminal statutes, including the infamous Black Codes which prescribed harsher criminal penalties for African-Americans than for whites, were among the main evils that led to the enactment of the Fourteenth Amendment and related post-Civil War federal legislation. *See General Building Contractors Ass'n. Inc. v. Pennsylvania*, 458 U.S. 375, 386-87 (1982). The Supreme Court has insisted "that racial classification, especially suspect in criminal statutes, be subjected to the 'most rigid scrutiny' and, if they are ever to be upheld . . . be shown to be necessary to the accomplishment of some permissible state objective, independent of the racial discrimination which it was the object of the Fourteenth Amendment to eliminate." *Loving v. Virginia*, 388 U.S. 1, 11 (1967); *see Personnel Administrator of Massachusetts v. Feeney*, 442 U.S. 256, 272 (1979); *McLaughlin v. Florida*, 379 U.S. at 198 ("I cannot conceive of a valid legislative purpose under our Constitution for a state law which makes the color of a person's skin the test of whether his conduct is a criminal offense.") (Stewart, J., concurring).

None of this is new, or surprising. Nonetheless, it is worth the time to pause to recall the history and the significance of this issue. There is present in this case strong evidence – evidence produced by the government – that minority defendants are many times more likely than white defendants to face the death penalty at the hands of the federal government, because of their race. No state has a racial pattern of using capital punishment that is nearly so stark and disturbing. This is an urgent problem that demands the "most rigid scrutiny" described in *Loving*.

The Eighth Amendment's prohibition of the arbitrary use of the death penalty imposes constitutional limitations on capital punishment that do not apply to lesser punishments. *See*, e.g., *Woodson v. North Carolina*, 428 U.S. 280 (1976) and *Roberts v. Louisiana*, 428 U.S. 325

-48-

(1976) (mandatory death sentences – but not other mandatory sentences – are unconstitutional); *Lockett v. Ohio*, 438 U.S. 586 (1978) (sentencer must be free to give "independent mitigating weight" to any fact about the defendant or the offense, in a capital case); *Bullington v. Missouri*, 451 U.S. 430 (1981) (imposition of a death sentence after reversal of a sentence of life imprisonment is unconstitutional, although there is no similar *per se* ban on harsher sentencing on retrials of other criminal cases); *Turner v. Murray*, 476 U.S. 28 (1986) (capital defendants in interracial murders – but not non-capital murder defendants – are automatically entitled to have potential jurors questioned about the effects of possible racial biases).

Secondly, it is obvious that racial discrimination is a species of the arbitrariness condemned in *Furman*. This is apparent from the opinions of the Justices in the majority and of those in dissent alike. For example, Justice Douglas concluded that the capital statutes before him were "pregnant with discrimination," 408 U.S. at 157, and thus ran directly counter to "the desire for equality . . . reflected in the ban against `cruel and unusual punishments` contained in the Eight Amendment." *Id.* at 255. Similarly, Justice Stewart lamented that "if any basis can be discerned for the selection of these few sentenced to die, it is the constitutionally impermissible basis of race." *See id.* at 364-366 (Marshall, J., concurring); *id.* at 389 n.12 (Burger, C.J. dissenting); *id.* at 449-50 (Powell, J., dissenting). Later Supreme Court cases have applied this interpretation. Thus, for example, in *Zant v. Stephens*, *supra*, the Court explained that *Furman* would be violated if a state based its capital sentencing on "factors that are constitutionally impermissible or totally irrelevant to the sentencing process, such as . . . the race . . . of the defendant." 462 U.S. at 885.

Taken together, then, these two points can be summarized as follows: The Cruel and Unusual Punishments Clause of the Eighth Amendment imposes a constitutional prohibition against racial discrimination in the use of the death penalty that is at least as strict as the general

-49-

1685

proscription of racial discrimination in the (implicit) equal protection clause of the Fifth

Amendment.   Where a death penalty appears to operate so as to institutionalize racism, it

offends the same constitutional values that yielded *Furman* and this nation's short-lived

abandonment of capital punishment.

    *(b)*        *The effect of race and gender of victim in the application of the FDPA.*

For obvious reasons, a capital punishment scheme which explicitly provided that the

death penalty is more appropriate where the victim is white or white and female would not be

constitutional.  On the question of race-of-victim, research that is consistent across decades has

demonstrated that those who kill whites are more likely to face a sentence of death and to be

sentenced to death than those who kill members of minority groups.[31] A race-of-victim effect has

been repeatedly found to be present in capital prosecutions, including the federal system.[32]

Recent studies have begun to demonstrate that there is also a gender-based irrationality to capital

punishment schemes as well, with the net effect that those who are guilty of murdering white

females are substantially more likely to face the death penalty and be sentenced to death than

---

[31]  Figures compiled by the Federal Death Penalty Resource Counsel Project, current as of February 22, 2012,  reflect that 58% of those on federal death row were convicted of murdering white victims.

*See*, http://www.capdefnet.org/FDPRC/pubmenu.aspx?menu_id=94&id=2094. (Last visited October 12, 2012.)  In *United States v. Sampson*, 275 F. Supp.2d 49, 89-94 (D. Mass. 2003) and *United States v. Sampson*, 332 F. Supp.2d 325, 335-40 (D. Mass. 2004), the court rejected a white-victim argument, based on much less data, but also noted that "a rigorous, honest study of the federal system illuminating this issue would be valuable." *Id.* at 339.  No such study has been undertaken.

[32]  For a comprehensive discussion of the white-victim effect, *see* D. Baldus and G. Woolworth, "Race Discrimination and the Legitimacy of Capital Punishment: Reflections on the Interaction of Fact and Perception," 53 DEPAUL L. REV. 1411, 1423-1428 (2004). Utilizing statistics current at the time of the study, the authors noted that the nation-wide average for execution of those who killed whites was in the 83% range, while whites were victims of murder in only approximately 45% of all such cases.  *Id* at 1423.  *See also,* K. McNally, "Race and the Federal Death Penalty: A Non-existent Problem Gets Worse," 53 DEPAUL L. REV. 1615 (2004).

-50-

those who kill non-whites and males. This is further evidence of the arbitrary, capricious and biased nature of the death penalty.

Studies of state capital schemes have uniformly detected a significant race-of-victim effect. *See, e.g.* Marcia Wilson, "The Application of the Death Penalty in New Mexico, July 1979 Through December 2007: an Empirical Analysis", 38 N.M. L. REV. 255, 260 (2009) ("The data strongly suggest that the race and ethnicity of the victims and the defendants affected the determination of who would live and who would die."); State Bar of New Mexico, Task Force on the Administration of the Death Penalty in New Mexico: Final Report (2004) p. 13[33] ("[S]ome states have done studies in an effort to determine what factors make it more or less likely that an individual defendant will receive the death penalty. These studies have found that the race of the defendant and the race of the victim affect whether a particular defendant convicted of first-degree murder will be sentenced to die.") See also, Pierce and Radelet, "Death Sentencing in East Baton Rouge Parish, 1990-2008", 71 LOUISIANA LAW REV. 671 (2011) (In Louisiana, the odds of a death sentence were 97 % higher for those whose victim was white than for those whose victim was black.); G. Ben Cohen. & Robert J. Smith, "The Racial Geography of the Federal Death Penalty"*,* 85 WASHINGTON LAW REV. 425, 428 (2010) ("Statistics suggest that defendants are more likely to be sentenced to death for killing a white victim than a black victim."); R. Paternoster, G. Pierce, & M. Radelet, "Race and Death Sentencing in Georgia, 1989-1998, in "American Bar Association: Evaluating Fairness And Accuracy In State Death Penalty Systems: The Georgia Death Penalty Assessment Report," [34] (with respect to capital prosecutions in Georgia, "[t]he data show that among all homicides with known suspects, those

_____

[33]  Available at http://www.nmbar.org/attorneys/lawpubs/tskfrcdthpnltyrprt.pdf

[34]  Available at:
http://www.abanet.org/moratorium/assessmentproject /georgia/finalreport.doc

suspected of killing whites are 4.56 times as likely to be sentenced to death as those who are

suspected of killing blacks"); Andrew Welsh-Huggins, "Death Penalty Unequal - Study: Race,

Geography Can Make a Difference," *The Cincinnati Enquirer* (May 7, 2005) (analysis of death

penalty verdicts in the state of Ohio from 1981 to 2002 reveals that "[o]ffenders facing a death

penalty charge for killing a white person were twice as likely to go to death row [compared to

those charged with having] killed a black victim. Death sentences were handed down in 18

percent of cases in which the victims were white, compared with 8.5 percent of cases when

victims were black"); G.L. Pierce & M. Radelet, "The Impact of Legally Inappropriate Factors on

Death Sentencing in California Homicides," 46 SANTA CLARA L. REV. 1 (2005) noting that the

killers of whites were over three times more likely to be sentenced to death than those who killed

blacks and 4 times as likely than those who killed Latinos.

In addition, research commissioned by state governments in, for example, California,

Maryland, Nebraska and Illinois has found that defendants convicted of killing white victims are

more frequently sentenced to death than defendants convicted of killing non-white victims. See,

e.g., *Maryland Commission on Capital Punishment: Final Report To the General Assembly*

(2008), p. 10 ("The evidence shows that the troublesome factor of race plays a dominant role in

the administration of the death penalty in Maryland. Research presented to the Commission

showed that cases in which an African-American offender killed a Caucasian victim are almost

two and a half times more likely to have death imposed than in cases where a Caucasian offender

killed a Caucasian victim.") [35]; State of Illinois, *Report of the Governor's Commission on Capital*

*Punishment* (2002), p. 196 ("When certain facts in aggravation, such as previous criminal history

of the defendant, are controlled for, there is evidence that the *race of the victim* influences who is

---

[35] Available at: http://www.goccp.maryland.gov/capital-punishment/documents
/death-penalty-commission-final-report.pdf.

sentenced to death. In other words, defendants of any race who murder white victims are more

likely to receive a death sentence than those who murdered black victims.")(emphasis in original)
[36].

    As a result of these studies, and others, it is clear that "[d]eath row's racial disparity,

however, is not the result of race-neutral application of the death penalty or a perverse form of

affirmative action to favor black defendants. Rather, a racial hierarchy clearly exists among cases

based upon who the victim is." *See* J. Blume, T. Eisenberg, and M. T. Wells, "Explaining Death

Row's Population and Racial Composition," 1 JOURNAL OF EMPIRICAL LEGAL STUDIES 1, 167

(March 2004).

    Although the significance of victim race in death sentencing outcomes has been discussed

for at least twenty years, very little prior research has examined whether the combined effect of

victim race and gender improperly skews sentencing outcomes in capital cases. This area has

only recently gained the attention of researchers.  Research has identified just three empirical

studies, all very recent, that considered the joint effects of victim race and gender in capital

prosecutions. Relying on state court data in Colorado, Georgia and Ohio, each study found that

defendants were treated most harshly when a white female victim was present. A Colorado study

examined prosecutors' decisions to seek the death penalty after conviction, while Georgia and

Ohio studies looked at capital sentencing outcomes.

    In a 2006 study of Colorado death penalty cases from 1980 to 1999, researchers found

that prosecutors were more likely to seek the death penalty in cases involving white, female

victims than they were in cases involving victims of any other race/gender combination. *See*

---

[36]  Available at: http://www.chicagojustice.org/foi /relevant-documents-of-interest /illinois-govenor-george-ryans-commission-on-capital-punishment/Report_of_the_Commission_on_Capital_Punishment_Com.pdf.

-53-

Hindson, Potter and Radelet, "Race, Gender, Region and Death Sentencing in Colorado, 1980-

1999," 77 COL. L. REV. 549 (2006). The authors concluded:

> the death penalty is sought for defendants who kill white females at
> a rate much higher than it is sought for any other victims. White
> females, who account for only 17.9 percent of all homicide
> victims, make up 34.5 percent of victims in death penalty cases.
> Thus, death sentences are pursued against those who kill white
> women at almost twice the rate as their rate of homicide
> victimization.

*Id.* at 577.

A November 2007 study[37] analyzed state court data from Georgia cases in the 1970's and

concluded:

> Defendants who murder females are more likely to receive a death
> sentence than defendants who murder males. Furthermore, we
> show that large differences exist in the likelihood of receiving a
> death sentence when the variables "victim race" and "victim
> gender" are considered jointly. Cases that involve white female
> victims are treated the most harshly . . . ."

Williams, DeMuth, Holcomb, 45 *Criminology* 885.  In a 2004 Ohio study, the same research

group found that death sentences were a product of a strong association between one victim

race-gender group – white female victims – and the imposition of a death sentence. Holcomb,

Williams, DeMuth, "White Female Victims and Death Penalty Research," 21 *Justice Quarterly*

877-902 (2004).

In December 2008,[38] the defendants in *United States v. Valerie Friend and George Lecco*

, 05-cr-00107 (S.D.W.Va.), a case involving the murder of a white female victim, brought a

motion to bar the death penalty on the basis of an asserted arbitrary and discriminatory victim-

---

[37]    Williams, DeMuth and Holcomb, "Understanding the Influence of Victim
Gender in Death Penalty Cases: The Importance of Victim Race, Sex-Related
Victimization and Jury Decision Making," 45 CRIMINOLOGY 4, 865 (2007).

[38]  Efforts are underway to update the findings, but there is no reason to believe
that the passage of 51  months has appreciably altered 20 years of data.

related race and gender effect." The motion was denied by the trial judge without an opinion. Based on an analysis of over 400 authorized federal capital cases, it was determined by a qualified expert statistician, Lauren Cohen Bell, Ph.D., that defendants in federal capital cases whose victims were white females were more than three times as likely to be sentenced to death than other federal capital defendants. This finding was, moreover, found to be "highly statistically significant, systemic, and not the result of chance." The examination of the cases revealed, as well, that as of December 2007, federal capital cases involving white female victims constituted 43% (26 of 61) of those sentenced to death in the federal system, but only 9% (61/626) of all potential defendants since 2000. Thus, the death-sentencing rate is many times higher than the death-sentencing rate for non-white female victim cases.

As stated previously, the issue of the "white victim effect" has been raised before. What is new is the detailed information about the "white female victim effect" which is presented here. When the gender of the victim is considered, the evidence of an arbitrary and capricious operation of the federal death penalty becomes apparent. When the penalty decisions of juries are examined, the results are nothing short of astonishing.

Accordingly, this Court should find that the existence of a "white female victim" effect renders any death sentence in this case presumptively unconstitutional and/or in violation of 18 U.S.C. §§3593(f).

### G.    Conclusion: the federal death penalty experiment has failed.

What the federal studies – perhaps most especially the verdict sheets – illustrate is the inherently contradictory nature of two lines of Supreme Court cases. *See* Mary Sigler,

---

[39] Although both defendants were initially sentenced to death by the jury, the trial court set the verdicts aside due to juror misconduct. Ms. Friend subsequently entered into a plea agreement with the government, resulting in withdrawal of the death notice. On re-trial, Mr. Friend received a life verdict from the jury.

-55-

"Contradiction, Coherence and Guided Discretion in the Supreme Court's Capital Sentencing Jurisprudence," 40 AMER.CRIM.L.REV 1151 (2003). In *Gregg*, the Court posited the concept of "guided discretion" as a check on the untrammeled discretion given juries in the pre-*Furman* era, requiring that a sentencing body's discretion "must be suitably directed and limited so as to minimize the risk of wholly arbitrary and capricious action." *Gregg*, 428 U.S. at 189. However, in cases such as *Lockett v. Ohio*, 438 U.S. 586 (1978) and *Eddings v. Oklahoma*, 455 U.S. 104 (1982), the Court held that while a jury's discretion to impose a sentence of death must be guided and channeled, a jury's discretion to impose a *life* sentence could not be limited.

This battle has been fought in the Supreme Court principally by Justices Scalia and the late Justice Blackmun. *See, e.g.,* Justice Scalia's concurrence in *Callins v. Collins*, *supra*, 510 U.S. at 1141-42, and his dissent in the since-overruled *Walton v. Arizona*, 497 U.S. 639, 657-73 (1990). It is Justice Scalia's basic view that cases such as *Lockett* and *Eddings* are incompatible with the idea of guided discretion and that those cases should be overruled. Other critics, however, point out that if the lines of cases are in fact irreconcilable, it is the death penalty that must be overruled. *See*, Steven G. Gey, "Justice Scalia's Death Penalty," 20 FLA.ST.U.L.REV. 67 (1992).

It is Mr. Briseno's' argument here that the inherently incompatible nature of these two lines of cases has resulted in a return – at least in the federal system, the only system his counsel challenge – to arbitrary and ccapricious death sentences. He thus joins Justice Blackmun in making the point that both goals – guided discretion in imposing death, but no limitation on the information a jury may consider to spare a defendant's life – while required by the Constitution, are, in a real world, unattainable. *See Callins v. Collins*, *supra*, 497 U.S. at 1155 ("All efforts to strike an appropriate balance between these conflicting Constitutional commands are futile.")

The federal death penalty experiment is a failure and should be declared unconstitutional.

-56-

The process should begin with a decision from this Court dismissing the death-notice in this case.  Alternatively, this court should conduct a hearing at which time a full and searching inquiry of the data presented here can take place, in order to determine whether there is a convincing and constitutionally-sufficient justification for the past, current, and apparently enduring, arbitrary, cruel, invidious, and patently "unusual," state of the federal death penalty.

POINT TWO: THE SUPREME COURT'S *RING* DECISION HAS RENDERED THE FEDERAL DEATH PENALTY UNCONSTITUTIONAL AND THE ACT MAY NOT BE SAVED BY A JUDICIAL "CONSTRUCTION" THAT CREATES A NEW CRIMINAL OFFENSE WHOSE ELEMENTS AND INTERTWINED PROCEDURES HAVE NEITHER BEEN CONSIDERED, NOR ENACTED INTO LAW, BY CONGRESS.

> "It is the legislature, not the court, which is to
> define a crime and ordain its punishment."
>
> – *United States v. Wiltberger*, 18 U.S. 76, 93 (1820) (Marshall, C.J.).

A.    **Introduction and summary of the argument**.

In enacting the FDPA in 1994, and the predecessor ADDA scheme in 1988, Congress granted exclusive statutory authority to allege aggravating factors to the prosecutor.  If that aspect of the FDPA is not operative, the statute lacks any congressionally-approved method of alleging aggravating factors.  But that is exactly the case. In the wake of *Ring v. Arizona*, 536 U.S. 584 (2002) the FDPA[40] lacks any legislatively-selected method of initiating a capital prosecution. While the Constitution requires that the elements of capital murder be presented to a grand jury and charged in an indictment, Congress, in passing the FDPA, chose another route . And it is up to Congress to make the necessary corrections.   Thus, the Federal Death Penalty is presently

---

[40]  For the purposes of this argument, the abbreviation FDPA will be utilized to refer to both the 1988 and 1994 federal death-penalty schemes.  Although the procedural provisions of the ADAA have been repealed, both statutes are relevant to demonstrate Congressional intent that the prosecution have exclusive authority concerning aggravating factors.

unconstitutional and this court should resist and reject the government's efforts to invent a "*Ring* fix."

It is fundamental to our system of government that "[i]t is the legislature . . . which is to define a crime and ordain its punishment." *United  States v. Wiltberger*, 18 U.S. 76, 93 (1820) (Marshall, C.J.).  In *Ring*, the Court held that, with respect to the framework of Arizona's death penalty statute, the "enumerated aggravating factors operate as 'the functional equivalent of an element of a greater offense'. . . ." *Ring*,  536 U.S. at 585, *quoting Apprendi v. New Jersey*, 530 U.S. 466, 494 n.19 (2000).[41]  That holding, coupled with the Court's earlier holding in *Jones v. United States*, 526 U.S. 227, 251-52 (1999), that all elements of a federal offense "must be charged in the indictment, submitted to a jury, and proven by the Government beyond a reasonable doubt[,]"[42] *see also Harris v. United States*, 536 U.S. 545  (2002) ("those facts setting the outer limits of a sentence and of the judicial power to impose it are elements of the crime for constitutional analysis"), in effect rendered the FDPA unconstitutional because under *Ring* the statute's aggravating factors that, like the factors at issue in the Arizona statute, are necessary for a death sentence are elements of the capital offense, and must be charged in the indictment and

---

[41]  The FDPA and Arizona capital schemes are similar in that each establishes death as a possible sentence in the statute defining the offense, *see, e.g.,* 18 U.S.C. §§ 924(j), 1959(a)(1) and 21 U.S.C. § 848(e), and then sets forth the further fact-finding and procedural steps necessary to establish a particular defendant's – and the set of relevant facts' – eligibility for a capital sentence.  As in the Arizona system addressed and invalidated in *Ring*, under the FDPA the fact that a jury returns a guilty verdict in a case of capital murder does not, without more, allow for imposition of a death sentence.  It is the further fact-finding, and intertwined procedures, that determine, in the post-*Ring* era, what constitute the new elements of "federal capital murder," a crime that presently exists only by judicial fiat.

[42]  *Ring* did not discuss the grand jury issue since the case arose in the context of a state statute to which the Fifth Amendment's Indictment Clause does not apply.  *Hurtado v. California*, 110 U.S. 516 (1884).

proved to a jury beyond a reasonable doubt. Under the FDPA, and for the purposes of this discussion only, therefore, the "elements" of capital murder are *at least*[43] murder + intent + one or more statutory aggravating factors. Since the indictment in this case alleges 12 capital counts and three statutory aggravating factors, there are 12 "counts" of a crime we can call "capital murder" alleged in the indictment.  Yet these crimes have never been enacted as such by Congress.  They have been instead, and improperly, "implied" by the judiciary.

The FDPA, of course, nowhere provides for presentation of aggravating factors to a grand jury.  But neither is the statute silent on the issue of how such factors are to be alleged. On that score, the FDPA explicitly reserves the selection and notice of aggravating factors to the exclusive discretion of the prosecutor.  This court must not allow the government to re-write the FDPA to its own liking.  Instead, the FDPA must be declared unconstitutional pending further congressional action.

In a closely analogous circumstance, the Supreme Court, in *United States v. Jackson*, 390 U.S. 570 (1968), proscribed the very practice now at issue, *i.e.*, where a district court was asked to engage in the judicial amendment of a capital statute in order to preserve its constitutionality. In that case, the court declined to do so.  As a result, the Supreme Court's admonition in *Jackson* is equally powerful and appropriate here:

---

[43] Elsewhere in this brief, counsel argues that the elements of capital murder include decisions reached by the jury right up to and including the point where it makes a fact-finding that the aggravating circumstances outweigh the mitigating circumstances. In truth, the "selection" or ultimate sentencing decision is not made until the jury reaches the final decision-point of determining "whether all the aggravating factors found to exist *sufficiently* outweigh all the mitigating factors found to exist to justify a sentence of death . . . ."  18 U.S.C. § 3593(e) (emphasis added).  A simple "outweighing" is insufficient. Obviously, there are enormous practical difficulties in devising a system where a grand jury can consider and weigh both aggravating and mitigating factors.  That is precisely why the legislature needs to amend this statute, not the courts or the Department of Justice.

It is unnecessary to decide here whether this conclusion [the Government's proposed "fix" of the death-penalty aspects of the federal kidnapping statute] would follow from the statutory scheme the Government envisions, for it is not the scheme that Congress enacted.

390 U.S. at 573.

The principles which flow logically and inexorably to the conclusion that the FDPA cannot survive *Ring* will be presented below in the following order:

(1) in *Ring* and related cases such as *Jones* and *Harris*, the Supreme Court held that aggravating factors necessary to a capital verdict are essential elements of the capital offense, and must be pleaded in the indictment and proved to a jury beyond a reasonable doubt;

(2) the FDPA does not provide for presentation of aggravating factors to a grand jury (and thereby including them in an indictment), but instead vests authority to identify aggravating factors exclusively with the prosecutor;

(3) the FDPA cannot be amended by the prosecutor or the courts to permit presentation of aggravating factors to a grand jury because, as the Supreme Court held in *Jackson*, and consistent with centuries of constitutional jurisprudence and statutory construction, it is for the legislature, not the courts or the prosecutor, to define crimes and punishment and the contours of a statute, and the presentation of aggravating factors to a grand jury is contrary to the unambiguous intent of Congress as expressed in the FDPA; and

(4) contrary decisions from Courts of Appeals (this is an issue of first impression in the Tenth Circuit) have been wrongly decided because they have failed either to (a) address *Jackson* and the fundamental separation of powers principles incorporated therein; and/or (b) acknowledge, much less reconcile, the explicit allocation of authority to the prosecutor to determine the propriety of aggravating factors. Nor do severability analysis or the post-*Apprendi* drug cases, or the principle of "constitutional avoidance" save the FDPA; indeed, those doctrines and the cases, as well as post-*Ring* Supreme Court cases, including *United States v. Booker*, 543 U.S. 220 (2005), and *Blakely v. Washington*, U.S. 542 U.S. 296 (2004), establish that a judicially imposed solution cannot redefine or reconfigure a federal criminal statute to do what Congress has not intended.

**B. Aggravating factors necessary to a capital verdict are essential elements of the capital offense, and must be pleaded in the indictment and proved to a jury beyond a reasonable doubt.**

In *Ring*, in which the Supreme Court overruled *Walton v. Arizona*, 497 U.S. 639 (1990),

and in subsequent cases, the Court established beyond dispute that aggravating factors necessary to imposition of the death penalty under the FDPA must be charged in the indictment, and proved to the satisfaction of a jury beyond a reasonable doubt. As noted earlier, the Supreme Court explained in both *Ring* and *Harris* that facts which increase the maximum penalty faced by the defendant create new, different, and "greater offense[s]." In *Harris*, 536 U.S. at 555-566, the Court noted repeatedly that any "fact" which increases the maximum possible penalty beyond that authorized by the findings implicit in the jury's verdict of guilt is an element of an offense:

> [r]ead together, *McMillan* [*v. Pennsylvania*, 477 U.S. 79 (1986)] and *Apprendi* mean that those facts setting the outer limits of a sentence and of the judicial power to impose it are elements of the crime for constitutional analysis.

536 U.S. at 567. Concurring in *Ring*, Justice Scalia famously observed:

> [All] facts essential to imposition of the level of punishment that the defendant receives – whether the statute calls them elements of the offense, sentencing factors, or Mary Jane – must be found by the jury beyond a reasonable doubt.

*Ring*, 436 U.S. at 610 (Scalia, J., concurring.)

Similarly, in *Apprendi*, the Court had observed that, "[t]he judge's role in sentencing is constrained at its outer limits by the facts alleged in the indictment and found by the jury. Put simply, facts that expose a defendant to a punishment greater than that otherwise legally prescribed [are] by definition 'elements' of a separate legal offense." 530 U.S. at 483, n. 10. *See also Harris*, 536 U.S. at 560 (stating that the principle "by which history determined what facts were elements . . . defined elements as 'fact[s] legally essential to the punishment to be inflicted,'") *quoting United States v. Reese*, 92 U.S. 214, 232 (1876) (Clifford, J., *dissenting*).

In *Jones*, the Court had presaged what has since occurred by holding that all elements of a federal offense "must be charged in the indictment, submitted to a jury, and proven by the Government beyond a reasonable doubt." 526 U.S. at 227. *See also United States v. Cotton,* 535

U.S. 625 (2002) ("in federal prosecutions, any fact increasing the maximum punishment" must also be charged in the indictment").[44]

Thus, *Ring* and *Harris* have established beyond dispute that the facts alleged in the "Special Findings" section of the superseding Indictment in this case constitute elements of an offense, since they "are facts that expose [this] defendant to a punishment greater than that otherwise legally prescribed . . . ," *i.e.*, the death penalty. That conclusion is further confirmed by the Supreme Court's subsequent decisions in *Blakely* and *Booker*, in which first state and then federal sentencing guidelines factors, respectively, were held to constitute the functional equivalent of elements that required proof to a jury beyond a reasonable doubt. 542 U.S. at 303; 543 U.S. at 244.

Capital cases since *Ring* have continued in the same vein. For example, in *Sattazahn v. Pennsylvania*, 537 U.S. 101 (2003), in which the Court considered whether double jeopardy was a bar to the second prosecution of a capital case when the Commonwealth of Pennsylvania again sought (and received) a sentence of death after a divided jury at the first trial had spared the defendant's life and the defendant then succeeded in having the underlying conviction set aside on appeal, with the Court ruling 5-4 that double jeopardy did not bar a second opportunity to seek a death sentence, Justice Scalia – joined by the Chief Justice and Justice Thomas – discussed the implications of the Court's decision in *Ring*:

> [i]n *Ring v. Arizona*, 536 U.S. 584 (2002), we held that aggravating circumstances that make a defendant eligible for the death penalty "operate as 'the functional equivalent of an element of a *greater offense*.'" *Id.*, at [609] (emphasis added). That is to say, for

---

[44] As stated earlier, *Ring* does not address the grand jury issue because the case arose in the context of a state statute, to which the Fifth Amendment's Grand Jury Clause does not apply. *Hurtado v. California*, 110 U.S. 516 (1884). However, *Jones* and *Cotton*, discussed above, make it plain that the Fifth Amendment requires the inclusion of such elements in the indictment.

-62-

purposes of the Sixth Amendment's jury-trial guarantee, the
underlying offense of "murder" is a distinct, lesser included
offense of "murder plus one or more aggravating circumstances":
Whereas the former exposes a defendant to a maximum penalty of
life imprisonment, the latter increases the maximum permissible
sentence to death.

537 U.S. at 111.

The three justices who joined that portion (Part III) of the main opinion[45] concluded that

there could be no principled reason to distinguish between what constitutes an offense for

purposes of the Sixth Amendment and an "offence" for purposes of the Double Jeopardy Clause

of the Fifth Amendment. *Id.*[46]

Yet even the four dissenting justices agreed with Justice Scalia's proposition with respect

to capital murder constituting a *greater* offense based on the additional elements – the

aggravating factors – needed to prove that offense:

[t]his Court has determined . . . that for the purposes of the Double
Jeopardy Clause, capital sentencing proceedings involving proof of
one or more aggravating factors are to be treated as trials of
separate *offenses*, not mere sentencing proceedings. *See, ante*, at
[537 U.S. at 736-738, 739-740]; *Ring v. Arizona*, 536 U.S. 584
(2002); *Bullington v. Missouri*, 451 U.S. 430 (1981).

537 U.S. at 126 n. 6 (emphasis in original ) (Ginsburg, J., *dissenting*).

Thus, at least seven justices are in agreement that, under the principles set forth in *Ring*,

---

[45] There were three separate opinions in *Sattazahn*. The majority opinion,
authored by Justice Scalia and joined in *in toto* by the Chief Justice and Justices Thomas
and, with the exception of Part III of the opinion, by Justices Kennedy and O'Connor.
Justice O'Connor filed a separate concurrence. Justice Ginsberg filed a dissenting
opinion joined by Justices Stevens, Souter, and Breyer.

[46] Justice Kennedy, without explaining his position, did not join Part III of the
opinion. Justice O'Connor concurred, stating she did "not join Part III, which would
further extend the reach of *Apprendi v. New Jersey*, 530 U.S. 466 (2000), because [she]
continue[d] to believe that case was wrongly decided[.]" 537 U.S. at 116-17, *citing her
dissent in Ring*. *Id.*

capital sentencing schemes that employ aggravating factors create, from a constitutional

perspective, new offenses, greater than ordinary willful homicide, that are distinguished by the

additional *elements* those aggravating factors represent. Pursuant to *Jones* and *Cotton*, when

those greater offenses are prosecuted under federal law in federal court, it is equally beyond

question that they must not only be proved to a jury beyond a reasonable doubt, but that they

must first be presented to a grand jury and included within the indictment.

Certainly the structure of the FDPA conforms with that conclusion. As with the Arizona

scheme at issue in *Ring*, a jury's verdict finding a federal defendant guilty of murder cannot

support a sentence of death without additional fact-finding. For example, although a guilty

verdict in a case of a carjacking resulting in death carries with it an *authorized* potential death

sentence, such a defendant is not actually exposed to a death sentence unless and until the jury

(or the judge, where a jury has been waived) makes determinations, unanimously and beyond a

reasonable doubt, that the crime was committed with one of the four "intent" factors listed at 18

U.S.C. § 3591(a)(2)(A-D) and that there is present in the case at least one of the 16 statutory

aggravating factors set forth at 18 U.S.C. § 3592(c)(1-16). In addition, arguably, a defendant

may not be sentenced to death unless it is also established that the attorney for the Government

thinks executing the defendant is a good idea, 18 U.S.C. § 3593(a), that the defendant was not

less than 18-years old at the time of the offense, 18 U.S.C. § 3591(a), and that he is not mentally-

retarded, *Atkins v. Virginia*, 536 U.S. 304 (2002). It is also argued in this memorandum, at Point

Three, infra, that the ultimate decision on whether aggravating factors substantially outweigh

mitigating factors is itself an element of capital murder.

It thus follows that the aggravating factors the government has alleged by superseding

indictment in this case are viewed by the government, and for purposes of statutory and

constitutional analysis, as elements of a greater offense that requires the proof of those elements

before a death sentence can be imposed.

> **C.** **The FDPA does not provide for presentation of aggravating factors to a grand jury (and thereby including them in an indictment), but instead vests exclusive authority to identify aggravating factors exclusively with the prosecutor.**

With respect to federal capital offenses prosecuted in federal court, it cannot be argued that *Ring* and the Fifth Amendment's indictment clause do not require that aggravating factors necessary to a death sentence be presented to a grand jury and included in the indictment.[47] The FDPA neither contemplates affording, nor permits, the grand jury any role in determining which aggravating factors are to be alleged in a federal capital prosecution. Pursuant to the FDPA scheme chosen by Congress, a sentence of death may not be sought unless, as set forth in the statute itself, "the attorney for the Government believes that the circumstances of the offense are such that a sentence of death is justified . . . ." 18 U.S.C. § 3593(a). If the "attorney for the government" believes death is warranted, the next step in the legislatively-selected process is for that attorney to serve and file a notice, signed by the attorney for the Government, stating, *inter alia*, that "the Government believes that the circumstances of the offense are such that, if the defendant is convicted, a sentence of death is justified . . . and that the Government will seek a sentence of death; . . . ." 18 U.S.C. § 3593(a)(1).

Although not in and of themselves aggravating factors, the pre-*Ring* FDPA also required proof – and allegation in the notice by government attorneys – of one or more of four "gateway" state-of-mind factors. 18 U.S.C. § 3591(2). The notice, in addition, is required to set forth the aggravating factors– statutory and non-statutory – the government proposes to prove if the

---

[47] The Fifth Amendment provides in pertinent part that "[n]o person shall be held to answer for a capital, or otherwise infamous crime, unless on presentment or indictment of a Grand Jury[,]" including those accused of felony offenses. *See Stirone v. United States*, 361 U.S. 212, 215 (1960) ("[t]he crime charged here is a felony and the Fifth Amendment requires that prosecution be begun by indictment").

-65-

defendant is convicted which may include victim-impact evidence." 18 U.S.C. § 3593(a). The ADAA scheme was similar. *See* 21 U.S.C. § 848(h) (Repealed). Consequently, the unambiguous language of the FDPA statutes themselves establishes that Congress, rightly or wrongly, elected to enact a scheme where the decision to set the machinery of death in motion would be reserved to the government's attorneys and no one else, not grand juries, not the court, and not any other individual or entity. Nonetheless, the government seeks to establish in this case a substitute method for introducing aggravating factors now that *Ring* rendered the exclusive statutorily prescribed mechanism selected by Congress constitutionally invalid. Fidelity to the fundamental principle of separation of powers, embedded deeply in the constitutional form of government our nation has adopted, and detailed below, is even more important when applied to the government's efforts to execute one of its citizens, thereby imposing "the most irremediable and unfathomable of penalties; . . . ." *Ford v. Wainwright*, *supra*, 477 U.S. at 411.

> **D.      Jackson and the Separation of Powers Doctrine demonstrate that the FDPA cannot be amended by the prosecutor or the courts to permit presentation of aggravating factors to a grand jury because it is for the legislature to define crimes and punishment, and presentation of aggravating factors to a grand jury is contrary to the unambiguous intent of Congress as expressed in the FDPA.**

As noted, this is not an instance in which Congressional silence permits flexibility in rescuing an otherwise unconstitutional statute from invalidation. Indeed, given the express and unambiguous language and structure of the FDPA, if, prior to *Ring*, a defendant had argued that the aggravating factors could not be applied unless they were presented to and charged by a grand jury in the indictment, the government's response undoubtedly, and correctly, would have been that the statute does not ascribe any such role to the grand jury, and that the statute plainly reserves that authority solely to the prosecutor.

> 1.      Congress, not the courts or prosecutors, is vested with legislative authority to define federal criminal offenses and the punishment for such conduct.

-66-

1702

That view, of course, conforms with centuries of federal criminal jurisprudence. Since at least as early as *United States v. Hudson*, 11 U.S. 32 (1812) (Marshall, C.J.), it has been clear that the Constitution affords Congress the sole power to define and create all offenses against the United States, and the punishment therefor. *See also*, *United States v. Worrall*, 2 U.S. (2 Dall.) 384, 393-4 (1798); *United States v. Wiltberger*, 18 U.S. 76, 93 (1820), ("[i]t is the legislature, not the court, which is to define a crime and ordain its punishment"); *Hudson*, 11 U.S. at 34 ("[t]he legislative authority of the Union must first make an act a crime, fix a punishment to it, and declare the Court that shall have jurisdiction of the offense" and "[t]he power of punishment is vested in the legislative, not in the judicial department"). *See also Bousley v. United States*, 523 U.S. 614, 620-21 (1998) ("under our federal system it is only Congress, and not the courts, which can make conduct criminal"); *Staples v. United States*, 511 U.S. 600, 604 (1994) ("[t]he definition of the elements of a criminal offense is entrusted to the legislature, particularly in the case of federal crimes which are solely creatures of statute") (citation omitted).

As a result, "[o]ne may be subjected to punishment for crime in the federal courts only for the commission or omission of an act defined by statute, or by regulation having legislative authority, and then only if punishment is authorized by Congress." *Viereck v. United States*, 318 U.S. 236, 241 (1943) (citations omitted). *See also United States v. Lanier*, 520 U.S. 259, 267-68 n. 6 (1997) ("[f]ederal crimes are defined by Congress, not the courts, . . . .")*; Logan v. United States*, 144 U.S. 263, 283 (1982) ("[a]lthough the constitution contains no grant, general or specific, to congress of the power to provide for the punishment of crimes, [with certain exceptions] . . . no one doubts the power of congress to provide for the punishment of all crimes and offenses against the United States").

Applying these principles in *Bouie v. City of Columbia*, 387 U.S. 347 (1964), in which the state courts of South Carolina, in a naked effort to prosecute civil rights protesters, had

-67-

construed an existing statute in a manner that created a new crime, the Supreme Court intervened and set aside the statute, as interpreted, as contrary to *Wiltberger*. *See also Crandon v. United States*, 494 U.S. 152, 158 (1990) ("legislatures, not courts, define criminal liability").

> 2. *Jackson* provides a direct and "all fours" analogy to the circumstances present herein, and compels invalidation of the FDPA.

It is in that context that the Supreme Court's decision in *United States v. Jackson*, 390 U.S. 570 (1968), provides precedent directly and specifically applicable to capital statutes, and to improper attempts to cure them by judicial fiat rather than by legislative action. As stated earlier, this is not the first time that the government has attempted to enlist the judiciary in an effort to rescue, through ersatz construction, a constitutionally flawed federal death penalty.

In *Jackson*, the Court held that when a particular federal sentencing statute is unconstitutional, a court lacks authority to devise its own procedure, unauthorized by statute or rule, simply because the procedure, if properly enacted by Congress, would pass constitutional muster. In *Jackson*, the Court considered the federal kidnapping statute, which contained a mandatory death penalty when a jury recommended it – thereby making the death penalty possible only for those defendants who exercised their right to trial by jury. In an effort to salvage the death-penalty provision, however, the government proposed a number of alternative "constructions" of the statute and cited *ad hoc* procedures developed by other district courts as "cures" for the constitutional problems. However, the court, after finding the statute unconstitutional rejected the government's proposed remedy of directing the trial court to convene a special penalty phase jury after a guilty plea, as well as every other approach proposed by the government because those proposals represented judicial, rather than *legislative* action.

In analyzing and explicating the limits of judicial authority to construe legislation, even when such construction would "save" the legislation from a declaration of unconstitutionality, the *Jackson* Court pointed out that the kidnapping statute "sets forth no procedure for imposing the death penalty upon a defendant who waives the right to jury trial or one who pleads guilty." *Id.* at 571.

Thus, the Court declined to read into the statute congressional authority for the courts to develop such a procedure.  The Court was concerned principally with overreaching its authority by imposing the alternate sentencing scheme.  According to the Court, "it would hardly be the province of the courts to fashion [such] a remedy[,]" *id.* at 579, absent "the slightest indication that Congress contemplated any such scheme."  *Id.* at 578.

Applying *Jackson*'s analysis to this case, it is manifest that once the provision allocating to the prosecutor the power to charge aggravating factors is declared unconstitutional, the FDPA "sets forth no procedure" for alleging aggravating factors.  Indeed, as the *Jackson* opinion explained,  "[t]o accept the Government's suggestion that the jury's sentencing role be treated as merely advisory would return to the judge the ultimate duty that Congress deliberately placed in other hands."  *Id.* at 576.

Here, as in *Jackson*, Congress has "deliberately placed in [the prosecution's] hands" the

---

[48] For example, the government proposed a "construction" of the statute under which "even if the trial judge accepts a guilty plea or approves a jury waiver, the judge remains free . . . to convene a special jury for the limited purpose of deciding whether to recommend the death penalty."  *Id.* at 572.  The Government also suggested that the court might save the statute by reading it to make imposition of the death penalty discretionary on the part of the sentencing judge.  *Id.* at 575.  The court rejected these proposed reconstructions and adhered, instead, to the plain language of the statute as the best evidence of Congress' intent.

responsibility for alleging aggravating factors under the FDPA. Consequently, in this case, "construing" the FDPA to allow the grand jury to assume that responsibility would violate the FDPA and contravene Congressional intent without "the slightest indication that Congress contemplated" according the grand jury such a role in the federal capital decision-making process. Presented with the option, Congress, in light of the change of law from *Walton* to *Ring*, might very well enact a comprehensive death penalty scheme that allocated a role to the grand jury. Congress might also choose to enact a wholly new and different scheme, one which fully defined the new offense of "capital murder," specified its elements, and set forth comprehensive procedures for trial of those offenses.[49]

*Jackson*, however, proscribes a court from implementing what Congress *might* do, or what the prosecutor proposes as a "fix" for a constitutionally deficient statute; instead, *Jackson*, requires that courts, under such circumstances, invalidate, and not legislate,:

> [i]t is unnecessary to decide here whether this conclusion would follow from the statutory scheme the Government envisions, *for it is not the scheme that Congress enacted.*

*Id.* at 573 (emphasis added).

Also, the Court in *Jackson* recognized that the government's proposal "would be fraught with the gravest difficulties." *Id.* at 579. As the Court explained, "it is one thing to fill a minor gap in a statute," but "quite another thing to create from whole cloth a complex and completely novel procedure and thrust it upon unwilling defendants for the sole purpose of rescuing a statute

---

[49] Indeed, the dangers of judicial legislation are patently evident from the divergent attempts, following *Ring*, to salvage the FDPA despite the obvious defect in the method of alleging aggravating factors. For example, in *United States v. Jackson*, 327 F.3d 273 (4th Cir. 2003), the court held that the presentation of but one statutory aggravating factor to the grand jury (and inclusion in the indictment) was sufficient to permit the government to seek death on the basis of *several* statutory aggravating factors not so included. 327 F.3d at 284-87.

from a charge of unconstitutionality." *Id.* at 580. *See also Blount v. Rizzi*, 400 U.S. 410, 419 (1971) (statute that permitted the Postmaster General to determine that material was obscene struck down by the Court which, in the process of rejecting the government's suggestion that Congress's plain language could be "construed" to allow a judge to make that determination instead of the Postmaster General, explained that "it is for Congress, not this Court, to rewrite the statute").

The very same type of judicial and prosecutorial restructuring of a statute to conform with constitutional imperatives was rejected by the Court in *United States v. Booker*, 543 U.S. 220 (2005). In the course of invalidating the mandatory nature of the federal sentencing guidelines because they permitted a judge to find, by a preponderance of the evidence, facts necessary to an enhanced punishment, the Court did not create a hybrid system, inconsistent with the Sentencing Reform Act (hereinafter "SRA"), under which those sentencing factors would be incorporated in indictments and presented to a jury. Rather, a separate majority in *Booker* (in what has generally been denominated the "remedy opinion," *Booker*, 543 U.S. at 245-46) severed the offending section – that which made the guidelines mandatory – but retained the essential character of the remainder of the SRA.[50]

Indeed, in *Blakely v. Washington*, *Booker*'s predecessor, Justice Breyer, who wrote the remedial opinion in *Booker*, recognized quite clearly the practical and due process concerns attendant to charging sentencing enhancement facts and submitting them to a jury. 542 U.S. 296, 334-5 (2004) (Breyer, J., *dissenting*). Justice Breyer's admonition about the practical

---

[50] Here, as discussed *infra*, severance of the invalid section of the FDPA does not save the statute because it cannot function as a capital statute without a mechanism for alleging aggravating factors.

implications of presenting sentencing factors to a jury absent any legislative or procedural framework is mirrored by the issues raised by the submission of aggravating factors to a grand jury in the similarly barren context of the FDPA – none of which the government recognizes or addresses. For example, there are questions regarding which aggravating factors must be included in the indictment, whether the defendant must plead to those factors, whether the lessened evidentiary standard of the FDPA remains applicable to some or all aggravating factors, and, if so, to the presentation of mitigating evidence, and any procedural changes in the two phases of the trial.

Here, the government's position, by implication, is that prosecutors can fashion their own remedy independent of both Congress' intent and clear and limiting legislative language. This view, however, mirrors the position taken by the government, and rejected by the Supreme Court, in *Booker*:

> Severing the requirement that judges, not juries, apply the Guidelines would require courts to make the legal and policy decisions necessary to resolve all of those questions. There is no indication that Congress delegated that role to the courts. It is one thing to recharacterize a single factor that increases a statutory maximum and treat it as an element of the crime. It is quite another to take an entire system expressly designed to channel sentencing discretion and treat it as if Congress was attempting to rewrite the criminal code.

*Id.* at 363.

Accordingly, *Jackson* is precisely on point and controls this case. In enacting the FDPA, Congress, relying on *Walton*, created a scheme in which the prosecutor was granted the exclusive authority to make the threshold determination whether to seek the death penalty, and, once a decision was made to pursue death, which aggravating factors to allege. Allowing the

-72-

Government to seek indictment of what Congress unambiguously defined as sentencing factors would give "to the [grand jury] the ultimate duty that Congress deliberately placed in other hands," *i.e.,* those of the government attorney – precisely the kind of end-run that *Jackson* forbids.[51]

As a result, if the FDPA's treatment of aggravating factors is unconstitutional after *Ring*, then it is undeniable, under *Jackson* and the doctrine of Separation of Powers, that only Congress can cure the problem, and only by enacting – should it choose to do so in light of the changed constitutional landscape augured by *Ring* – a new death penalty scheme.

3.      The Non-Delegation Doctrine provides further compelling support for the conclusion that the FDPA's defects cannot be cured by judicial action.

A corollary to the Separation of Powers problems posed by the prosecution's proposed unilateral *Ring* fix for the FDPA is the non-delegation doctrine's[52] preclusion of either Executive or the Judiciary action, whether separately or in tandem, substituting either's judgment for that of Congress in relation to prescribing the elements and the procedures for application of the federal death penalty. As Justice Scalia stated in his dissent in *Mistretta v. United States*, 488 U.S. 361 (1989) :

---

[51] Conversely, if aggravating factors (and other aspects of the FDPA, such as the required "gateway" findings and the age of the defendant) are not elements of the offense, the grand jury has no business investigating or finding them, since the authority of the grand jury is limited to determining "if there is probable cause to believe that a crime has been committed . . . .," *Branzburg v. Hayes*, 408 U.S. 665, 686 (1972) and "whether criminal proceedings should be instituted against any person." *United States v. Calandra*, 414 U.S. 338, 343-33 (1974).

[52] "The non-delegation doctrine originated in the principle of separation of powers that underlies our tripartite system of Government." *Mistretta v. United States*, 488 U.S. 361, 371 (1989); U.S. CONST., ART. 1, § 1.

> It is difficult to imagine a principle more essential to democratic
> Government than that upon which the doctrine of unconstitutional
> delegation is founded: Except in a few areas constitutionally
> committed to the Executive Branch, the basic policy decisions
> governing society are to be made by the Legislature.
>
> * * *
>
> That Congress cannot delegate legislative power to the President is
> a principle universally recognized as vital to the integrity and
> maintenance of the system of Government ordained by the
> Constitution.

488 U.S. at 415 (Scalia, J., *dissenting*). The majority in *Mistretta* ultimately found that the non-

delegation doctrine had not been violated by creation of the United States Sentencing

Commission and the guidelines it promulgated, because, in constituting the Commission,

Congress had "[laid] down by legislative act an intelligible principle to which the [Sentencing

Commission] is directed to conform, . . ." 488 U.S. at 372, quoting *N.W. Hampton, Jr., & Co. v.

United States*, 276 U.S. 394, 409 (1928); *Mistretta*, 488 U.S. at 374.  Nevertheless, the Court

reaffirmed the principle that "'the integrity and maintenance of the system of Government

ordained by the Constitution's mandate that Congress generally cannot delegate its legislative

power to another Branch."  488 U.S. at 371-72,  *quoting Field v. Clark*, 143 U.S. 649, 692

(1892).

Thus, *Mistretta* involved the delegation only of authority to determine sentencing factors

within the limits of a legislatively determined "intelligible principle."  It did not include the

authority to determine the very elements of an offense, as would be the case under a hypothetical

post-*Ring* FDPA.[53]   Plainly, Congress must have the opportunity to determine, in light of *Ring*,

---

[53]  In *Touby v. United States*, 500 U.S. 160, 164 (1991), the Court upheld
Congress' delegation to the Attorney General of the authority to *temporarily* classify a
drug as a controlled substance in order to bring its use and/or distribution within reach of
criminal prosecution.  This delegation of authority was based on the advent of "designer

the precise elements of federal capital murder and how *Ring* has affected the legislative

balancing which produced the FDPA in the first place.

Since Congress could not delegate to the Executive Branch the power to rewrite the

FDPA to its post-*Ring* liking, *a fortiori* the Executive Branch can not simply assume that power

by attempting to substitute new procedures and elements for those originally provided by

Congress, but rendered constitutionally infirm by the *Ring, Jones, Apprendi* trilogy.

> 4.  The grand jury lacks any authority to issue "special findings."

In this case, the indictment contains a section labeled, "Notice of Special Findings."

Grand juries are not, however, permitted to return anything denominated as "Special Findings."

The Federal Rules of Criminal Procedure provide that an indictment "shall be a plain, concise

and definite written statement of the essential facts constituting the offense charged."

F.R.CRIM.P 7(c)(1).  In 1979, Rule 7 was amended specifically to allow notice of criminal

forfeitures to be alleged by indictment.  Obviously, nothing in the text of the Rule, and nothing in

the Indictment Clause of the Fifth Amendment, contemplates or permits a grand jury to make

"Special Findings" that serve the function of the triggering requirements of the FDPA that are

now invalid in light of *Ring*.

In addition, while the Supreme Court's decision in *Schriro v. Summerlin*, 542 U.S. 348

(2004), held that, for purposes of collateral review, *Ring* involved issues of procedure rather than

---

drugs" which were only marginally different in chemical composition from drugs that were already controlled.  The Court held that the intelligible Congressional principle at issue not only meaningfully constrained the Attorney General's discretion to define criminal conduct but that, in addition, "Congress ha[d] placed multiple specific restrictions on the Attorney General's discretion to define criminal conduct, . . . ." *Id.* at 167.

substantive criminal law, 542 U.S. at 354-55, that does not place the method of alleging the

FDPA's aggravating factors within the purview of the government's authority or role in a three-

branch form of government. Rather, the principles established in *Jackson* continue to apply, and

the express language of the statute remains controlling and dispositive. Consequently, the

prosecutor's attempt to rescue the FDPA via the grand jury's "Special Findings" is void.

        **E.**        **Courts of appeals decisions to the contrary have been wrongly decided, and neither severability analysis, nor the post-*Apprendi* drug cases, nor the doctrine of "constitutional avoidance" can save the FDPA.**

        1.        <u>The decisions by the courts of appeal have been wrongly decided</u>.

While various Courts of Appeals have considered the issue herein and concluded that

there is no constitutional or statutory impediment to presenting the FDPA's aggravating factors

to a grand jury in order to avoid unconstitutionality under *Ring*, the cursory reasoning in each

case has been fatally flawed for two principal reasons:

        (a)        the decisions all fail to address *Jackson*, and/or to distinguish its clearly applicable holding and principles; and

        (b)        the decisions ignore the plain language of the FDPA with respect to whether the grand jury is authorized to allege aggravating factors.

For example, in *United States v. Brown*, 441 F.3d 1330 (11th Cir. 2006), the Eleventh

Circuit not only failed to mention *Jackson at all*, but also joined other circuits in claiming that

while "'nothing in the FDPA requires prosecutors to charge aggravating factors in an indictment,

. . . there is nothing in that law inhibiting such a charge.'" 441 F.3d at 1367, *quoting United*

*States v. Robinson*, 367 F.3d 278, 290 (5th Cir. 2004).[54] *See also United States v. LeCroy*, 441

---

    [54] In *Brown*, the Court also stated the defendant's argument in a manner different than what Mr. Briseno presents here. In *Brown*, according to the Court, the defendant "argue[d] that the FDPA is facially unconstitutional [] because it does not *require*

1712

F.3d 914 (11ᵗʰ Cir. 2006) ("[t]he major flaw in LeCroy's argument is that nothing in the [FDPA] forbids, or is inconsistent with, prosecutors' taking the additional step of including the statutory aggravating factors in the indictment and submitting same to the grand jury. Indeed, a statute will seldom expressly provide for submitting elements of an offense to the grand jury"); *United States v. Allen*, 406 F.3d 940, 949 (8ᵗʰ Cir. 2005) ("[w]hile it is true that the FDPA directs the government to charge these factors in a notice of intent to seek the death penalty, nothing in the Act precludes the government from also submitting them to the grand jury for inclusion in the indictment"); *United States v. Barnette*, 390 F.3d 775, 789 (4ᵗʰ Cir. 2004) ("[a] review of the statute itself reveals no language that restricts the government from submitting aggravating factors to the grand jury. Neither does the legislative history indicate any such intent").[55] The First Circuit's attempt to distinguish *Jackson* is likewise flawed in that, the reasoning requires that the plain language of the statute which ordains a procedure completely at odds with presentment to a grand jury be ignored. *United States v. Sampson*, 486 F.3d 13 (1ˢᵗ Cir. 2007).

That contention is wrong on two counts: (1) the FDPA not only does not "require" prosecutors to present aggravating factors to the grand jury, it prescribes a precise and exclusive method for alleging aggravating factors: the prosecutor's exclusive discretion and judgment; and

---

[aggravating] factors to be alleged in the indictment." 441 F.3d at 1367. Here, Mr. Briseno states the converse: that the FDPA is unconstitutional because it requires that aggravating factors be alleged *exclusively in a manner that precludes presentation to the grand jury.*

[55] In both *Allen* and *Barnette*, the defendant's principal (and unsuccessful) argument was that the indictment *failed* to allege an aggravating factor. 406 F.3d at 940; 390 F.3d at 775. In both cases, the Courts found any error to be harmless, and in *Barnette* the Court also held that the language of the indictment did, in fact, adequately allege an aggravating factor. *Id*.

(2) the assertion that "nothing in the [FDPA] inhibit[s]" presentation of aggravating factors to the grand jury ignores the explicit and exclusive statutory delegation to the prosecutor, the rules of statutory construction and the clear and controlling precedent provided by *Jackson*.[56]

Again, this is not an instance in which a statute simply does not "expressly provide for submitting elements of an offense to the grand jury;" rather, the FDPA *expressly and comprehensively provides for another, exclusive method for alleging aggravating factors.* Thus, the decisions upholding the validity of the FDPA were wrongly decided, and this Court should, consistent with *Jackson* and the clear language of the FDPA, declare the statute unconstitutional as applied to Mr. Briseno.

> 2.   The post-Apprendi drug-quantity cases do not authorize presenting the FDPA's aggravating factors to a grand jury.

Nor can the FDPA find refuge in post-*Apprendi* cases that required drug quantity in federal prosecutions under 21 U.S.C. § 841, previously deemed a sentencing factor to be determined by a judge by a preponderance of evidence, to be pleaded in an indictment and proved to a jury beyond a reasonable doubt. *See, e.g., United States v. Thomas*, 274 F.3d 655 (2d Cir. 2001) (*en banc*). *See also United States v. Cotton*, 535 U.S. 625 (2002) (government concedes that it was error not to include drug quantity in all post-*Apprendi* federal drug indictments, but conviction affirmed because the defendant failed to object, and omission constituted harmless error).

In fact, the difference between Title 21's treatment of drug quantity and the FDPA's

---

[56] Significantly, neither *Allen*, nor *Robinson*, nor *Barnette*, nor *LeCroy*, nor *Brown* discuss or even cite *Jackson*. Thus, none of those decisions can be deemed to have considered the issue sufficiently, or comprehensively. *Contra*, *United States v. Sampson*, 486 F.3d 13 (1st Cir. 2007)

handling of aggravating factors is striking and dispositive. Regarding drug quantity, Congress

enacted statutes in which the penalty ranges increase directly with the quantity of the specified

drug.[57] For those statutes, though, Congress was completely silent on whether drug quantities

were elements of the offense or sentencing factors. Thus, requiring drug quantities to be alleged

by indictment did not alter the structure of the drug laws, or offend Congressional intent.[58]

In fundamental contrast, however, Congress clearly never intended the aggravating

factors in the FDPA to constitute elements of the offense. Rather, Congress, relying on *Walton*,

which permitted such aggravating factors to be treated as sentencing factors, patently described

them as such, and directed that they be determined and identified in each case *not* by a grand jury

(or any other body or institution), but by the prosecutor *alone*.

Moreover, when the Supreme Court has been required to determine whether a statute sets

forth elements-of-an-offense, as distinct from sentencing factors, it has looked to Congressional

intent. Accordingly, in *Castillo v. United States*, 530 U.S. 120 (2000), the Court explained that

"[t]he question before us is *whether Congress intended* the statutory references . . . to define a

separate crime or simply to authorize an enhanced penalty." 530 U.S. at 123 (emphasis added).

*Accord, Jones*, 526 U.S. at 232–39. *See also Almendarez-Torres v. United States*, 523 U.S. 224,

---

[57] *See, e.g.,* 21 U.S.C. § 841(b)(1)(A) (possession of one kilogram or more of heroin exposes a defendant to a sentence of 10 years to life; possession of less than 50 grams of heroin exposes a defendant to a sentence of 0 - 20 years, 21 U.S.C. § 841(b)(1)(c)).

[58] The same is true of the federal carjacking statute at issue in *Jones*, 526 U.S. at 239, 251-252. The statute, 18 U.S.C. § 2119, did not make any distinction with respect to whether serious bodily injury was an element or a sentencing factor. Thus, including that factor in an indictment did not involve the redrafting of a statute as is proposed by the government in this case with respect to the FDPA's aggravating factors.

-79-

228 (1998); *Harris*, 536 U.S. at 582.

In both *Harris* and *Almendarez-Torres*, the Court found the aspects at issue to be sentencing factors; in *Castillo* and *Jones*, they were found to offense elements. In both sets of cases, the Court proceeded by the same exhaustive statutory, not constitutional, analysis, because the Constitution, though it places limits upon Congress' ability to designate certain facts as sentencing factors, does *not* afford the courts authority to recast statutes so that they fit within those limits.

For example, in *Harris*, the Court comprehensively considered "the distinction the law has drawn between the elements of a crime and factors that influence a criminal sentence." 536 U.S. at 549 The Court reaffirmed that the threshold question of statutory construction is *whether Congress intended* relevant facts to be offense elements or sentencing factors. 536 U.S. at 551. The Court further explained that the distinction is significant because "*[l]egislatures define crimes in terms of the facts that are their essential elements*, and constitutional guarantees attach to these facts." 536 U.S. at 549 (emphasis added).

Here, Congress's intent is plain and unmistakable. Consistent with the state of the law pre-*Ring* (and governed by *Walton*), Congress structured the FDPA so that aggravating factors were sentencing considerations that were within the exclusive province of the prosecutor. As a result, the government is not empowered to subvert Congressional intent and, in effect, create by prosecutorial fiat, a brand new criminal statute.

3.     Severability analysis cannot save the FDPA from unconstitutionality.

Additionally, the severability cases also undercut any analogy to the drug cases discussed earlier. Under those cases, the critical question is whether the statute at issue, upon removal of

-80-

its unconstitutional portion, can function independently.[59]  For example, in *Booker*, as noted, rather than cobble together a hybrid system that would permit presentation of sentencing factors to both grand and petit juries, the Supreme Court severed the sentencing guidelines' mandatory nature because that *preserved* the character of the SRA, and Congress's intent in enacting it, as opposed to creating a new system inconsistent with Congressional intent, and which raised more procedural issues and questions than it resolved.

The structure of the FDPA plainly requires that the government's notice of aggravating factors, and only that mechanism, triggers the entire operation of the FDPA.  Absent that enabling act by the prosecutor, the statute cannot function as a capital statute, since without aggravating factors, the government cannot seek the death penalty.  The same conclusion was reached in *Jackson*, in which the Court found that severing the unconstitutional death penalty provision of the Kidnapping Act left an otherwise fully functional criminal statute, albeit one that could not carry with it a potential sentence of death.

Here, deciding what Congress intended with regard to the FDPA is an easy task – it is obvious from the FDPA that Congress, relying on *Walton*, believed it was creating sentencing factors.  It is equally clear that after *Ring* aggravating factors constitute elements of an offense.  Accordingly, the statute may not be construed;  it must be voided.

4.    The doctrine of "constitutional avoidance" is inapplicable.

The doctrine of constitutional avoidance applies when "a statute is susceptible of two constructions, by one of which grave and doubtful constitutional questions arise and by the other

---

[59]  *See, e.g., Minnesota v. Mille Lacs Band of Chippewa Indians*, 526 U.S. 172 (1999); *Leavitt v. Jane*, 518 U.S. 137 (1990); *Alaska Airlines, Inc. v. Brock,* 480 U.S. 678 (1987).

-81-

of which such questions are avoided, [a court's] duty is to adopt the latter." *United States ex rel. Attorney General, v. Delaware & Hudson Co.*, 213 U.S. 366, 408 (1909). Here, since the FDPA is, for the reasons set forth *supra*, plainly not "susceptible of two constructions[,]" the simple answer is that the doctrine of constitutional avoidance does not apply.

In *Harris*, for example, the Court found the doctrine of constitutional avoidance inapplicable because, at the time Congress enacted 18 U.S.C. § 924(c), Supreme Court precedent allowed Congress to label as sentencing factors certain facts which increased the *minimum* punishment for a crime. As the Court explained:

> The avoidance canon rests upon our "respect for Congress, which we assume legislates in the light of constitutional limitations." *Rust v. Sullivan*, 500 U.S. 173, 191 (1991). The statute at issue in this case was passed when *McMillan* [*v. Pennsylvania*, 477 U.S. 79 (1986)] provided the controlling instruction, and Congress would have had no reason to believe that it was approaching the constitutional line by following that instruction. We would not further the canon's goal of eliminating friction with our coordinate branch, moreover, if we alleviated our doubt about a constitutional premise we had supplied by adopting a strained reading of a statute that Congress had enacted in reliance on the premise. And if we stretched the text to avoid the question of *McMillan*'s continuing vitality, the canon would embrace a dynamic view of statutory interpretation, under which the text might mean one thing when enacted yet another if the prevailing view of the Constitution later changed. We decline to adopt that approach.

536 U.S. at 556.

Thus, the doctrine of constitutional avoidance was irrelevant to the Court's analysis, and the Court, in accord with Congress' intent, concluded that "brandishing" was a sentencing factor. *See id.* Here, too, Congress relied on the state of the law existing at the time it enacted the FDPA – in *Walton v. Arizona*, 497 U.S. 639, 649 (1990), the Court had permitted a judge to decide sentencing factors in capital cases – and manifested that reliance in reserving for the prosecutor

-82-

the exclusive authority to allege aggravating factors.  Reconstructing the FDPA based on *Ring*'s

precedence over *Walton* would constitute the type of "dynamic" statutory interpretation that was

precluded by *Harris*, and would vitiate Congress's clear intent.


Consequently, the doctrine of constitutional avoidance is as inapplicable here as it was in

*Harris.*  As with §924©, with the FDPA there is no ambiguity about Congress's choice.  As

stated in *Miller v. French*,  530 U.S. 327, 341 (2000) (quotations omitted), "[w]here Congress

has made its intent clear, we must give effect to that intent."

Similarly, in *Commodity Futures Trading Com'n v. Schor*, 478 U.S. 833(1986), the Court

stated:

> Federal statutes are to be so construed as to avoid serious doubt of
> their constitutionality. Where such serious doubts arise, a court
> should determine whether a construction of the statute is fairly
> possible by which the constitutional question can be avoided. *It is
> equally true, however, that this canon of construction does not give
> a court the prerogative to ignore the legislative will in order to
> avoid constitutional adjudication; although this Court will often
> strain to construe legislation so as to save it against constitutional
> attack, it must not and will not carry this to the point of perverting
> the purpose of a statute . . . or judicially rewriting it.*

478 U.S. at 841 (citations and internal quotations omitted) (emphasis added).

Here, Congress made its intent clear in the FDPA – the allegation of aggravating factors

is the province solely of government attorneys.  The *Jones-Apprendi-Ring* trilogy has now altered

the status of the law, and aggravating factors (and other aspects of the FDPA) are now properly,

and constitutionally, elements of an offense not yet enacted by Congress and beyond the authority

of the courts (or the prosecutor) to create via "construction" that amounts to judicial and

executive legislation.

1719

Accordingly, it is respectfully submitted that the FDPA cannot be rewritten to permit

presentation of aggravating factors to the grand jury, and that, because those aggravating factors

are elements pursuant to *Ring*, the FDPA is unconstitutional as applied to Mr. Briseno. The

capital aspects of this case should be dismissed.

POINT THREE:    EVEN IF THE FDPA CAN BE RENDERED CONSTITUTIONAL BY A FINDING BY THE GRAND JURY OF GATEWAY AND STATUTORY AGGRAVATING FACTORS, THE "SPECIAL FINDINGS" IN THE INDICTMENT SHOULD BE STRICKEN AND THE DEATH NOTICE SHOULD BE DISMISSED BECAUSE THE GOVERNMENT HAS NOT OBTAINED AN INDICTMENT CONSISTENT WITH THE REQUIREMENTS OF THE FIFTH AMENDMENT.

**A.    Introduction**.

As outlined above, the indictment does not allege any non-statutory aggravating factors.

The indictment also does not state that the "special findings" should subject Mr. Briseno to the

death penalty or otherwise indicate that the grand jury intended to return an indictment charging

a capital offense. Neither does the indictment allege that the aggravating factors present in this

case outweigh the mitigating factors sufficiently to justify imposition of a sentence of death.

Under these circumstances, the indictment does not comport with the Grand Jury Clause of the

Fifth Amendment and does not charge a capital offense.

**B.    The grand jury was not given the choice of holding Mr. Briseno to answer for a capital crime because it was unaware of the consequences of its "Special Findings."**[60]

The Fifth Amendment provides that "no person shall be held to answer for a capital, or

otherwise infamous crime, unless on a presentment or indictment of a Grand Jury." U.S. Const.

---

[60] This argument is based in part on an excellent law review article: K. Bren and Tomer, "Ring Around the Grand Jury: Informing Grand Jurors of the Capital Consequences of Aggravating Factors", 17 CAP. DEF. J. 61 (2004).

Amend. V.  As the Supreme Court has explained:

> [T]he grand jury is a central component of the criminal justice process.  The Fifth Amendment requires the Federal Government to use a grand jury to initiate a prosecution....  The grand jury, like the petit jury, 'acts as a vital check against the wrongful exercise of power by the State and its prosecutors.'  It controls not only the initial decision to indict, but also significant decisions such as how many counts to charge and whether to charge a greater or lesser offense, *including the important decision to charge a capital crime*.

*Campbell v. Louisiana*, 523 U.S. 392, 398 (1998) (emphasis supplied).  *See also, Vasquez v. Hillary*, 474 U.S. 254, 263 (1986) (power to charge capital or noncapital offense lies in the hands of the grand jury); Fed. R. Crim. P. 7(a).

When Congress adopted the Bill of Rights, only the indicting grand jury, by choosing the offense to charge, could make an offense punishable by death.  In 1789, Congress sought to ratify the Fifth Amendment and also passed the first federal criminal laws.  Laws that authorized the death penalty mandated it; they left no other sentencing option.  *See generally*, R. Little, *supra*, 26 Fordham Urban L. J. at 361-63.[61]  This practice was consistent with that of the states, which at the time the Bill of Rights was adopted in 1791, "followed the common-law practice of making death the exclusive and mandatory sentence for certain specified offenses."  *Woodson v. North Carolina*, 428 U.S. at 289.  Thus, the intent of the framers of the Fifth Amendment was that the grand jury retain the power to choose which defendants would receive a sentence of death upon conviction.

The grand jury's historical role in choosing which defendant would receive a death

---

[61]  An example of one such law provided that "such person or persons on being thereof convicted [of willful murder] shall suffer death."  An Act for the Punishment of Certain Crimes against the United States, ch. 9, § 3, 1 Stat. 112, 113 (1790).

sentence upon conviction is well documented. *See* LaFave, W.R., *et al.*, 1 *Criminal Procedure* 1.5(b) (2d Ed.) (noting that grand juries played a critical role in reducing the number of offenses for which capital punishment could be imposed by downgrading charges to non-capital offenses); Andrew Hirsch, *The Rise of the Penitentiary* (1992) ("[a]t the indictment stage, grand juries often refused to charge person with capital crimes. They simply downgraded indictments to non-capital charges of their own devising . . ." ). The Supreme Court has acknowledged this historical role, writing in *Vasquez*, 474 U.S. at 263, that "the Grand Jury does not determine only that probable cause exists to believe that a defendant committed a crime, or that it does not. *In the hands of a grand jury lies the power to charge* a greater or lesser offense; numerous counts or a single count; and perhaps the most significant of all, *a capital offense or a noncapital offense. . . . .*"

In this case, the Government presented to the grand jury some of the elements of capital murder so as to make Mr. Briseno "death-eligible" for Eighth Amendment purposes – the intent requirements under 18 U.S.C. § 3591(a)(2) and  the alleged statutory aggravating factors under 18 U.S.C. § 3592(c). On information and belief, however, the government did not inform the grand jury of the consequences of those special findings, *i.e.*, that by returning the indictment, Mr. Briseno would be held to answer to an offense punishable by death. Certainly nothing on the face of the  indictment shows that the grand jury was aware that it was being asked to determine if Mr. Briseno should be held to answer for a capital offense. The model grand jury charge of the Administrative Office of the United States Courts indicates that the jury would not have been told that Mr. Briseno would face the death penalty upon conviction. That charge expressly instructs the jury: "When deciding whether or not to indict, you should not be concerned about

-86-

punishment in the event of conviction.  Judges alone determine punishment." *See* Tomer, *Ring Around the Grand Jury*, *supra*. Presumably, the grand jury that returned the  indictment against Mr. Briseno was given this instruction.  By not informing the jury that it was returning an indictment charging a capital offense, and misinforming the grand jury about who determines punishment in a federal capital case, the government turned the proceeding into one that gave only the appearance of complying with the Fifth Amendment, but that deprived Mr. Briseno of his constitutional and statutory rights.

The Supreme Court, in a related context, has refused to countenance such disregard for the Fifth Amendment.  In *Smith v. United States*, 360 U.S. 1, 9 (1959), the Court reversed a kidnapping conviction initiated by information even though it was a capital offense.  The Court stated:

> [t]he Fifth Amendment made the [grand jury indictment] rule mandatory in federal prosecutions in recognition of the fact that the intervention of a grand jury was a substantial safeguard against oppressive and arbitrary proceedings. . . .  [T]o permit the use of informations where . . . the charge states a capital offense, would . . . make vulnerable to summary treatment those accused of . . . our most serious crimes.

*Id*. (citations omitted).  Similarly, to permit the government to obtain from a grand jury an indictment alleging the elements of a capital offense, but not informing the grand jury that by finding those elements it was holding the defendant to answer to a capital crime, makes vulnerable those accused of the most serious crimes.  If the grand jury is not informed of the capital nature of the offense, it cannot express the conscience of the community or perform its constitutionally assigned role as a "barrier . . . between the liberties of the people and the prerogative of the [government])." *Harris v. United States*, 536 U.S. 545, 564 (2002) (grand and

-87-

1723

petit juries "form a 'strong and two-fold barrier'").

The grand jury's constitutional and historical role in deciding whether a defendant should face the death penalty is perhaps more critical now than ever. Few checks exist on the federal government's power to pursue the ultimate punishment against one of its citizens and fewer opportunities exist for the local community to express its desires about the appropriateness of the death penalty in any given case. Prosecutorial decision making in capital cases is centralized at the Department of Justice in Washington, D.C. *See United States v. Navarro-Vargas*, 367 F.3d 896, 902 (9ᵗʰ Cir. 2004) (Kozinski, J., dissenting) ("[a]n independent grand jury – one that interposes the local community's values on prosecutorial decisions that are controlled by policies set in Washington as to the enforcement of laws passed in Washington – seems like an important safeguard that is entirely consistent with the grand jury's traditional function"), *rehearing en banc*, 408 F.3d 1184 (9ᵗʰ Cri. 2005).

Nor is the petit jury in a capital case a meaningful barrier between "the liberties of the people and the prerogative of the [government])." *Harris*, 536 U.S. at 564. This is because petit jurors, to-date, have been "death-qualified." Individuals with disqualifying scruples against the death penalty, no matter how many exist in a given community, have not been permitted to sit in judgment in a capital case. Instead, capital juries consist exclusively of individuals who believe that the death penalty is an appropriate punishment and who express a willingness to impose it. Empirical evidence shows that such "death-qualified" jurors are more prone to believe government witnesses, generally evaluate evidence differently than other jurors, and give little

-88-

meaning to the presumption of innocence, *i.e.*, death qualified jurors are more conviction prone.[62]

The death-qualifying process also tends to exclude women and African-Americans from jury

service. *Id*. The net effect of death qualification is that capital jurors do not represent the

conscience of the local community or its rich diversity; at best, they represent only those

members of the community who share similar views on the death penalty. Jurors that represent

such a small segment of the community are ill-equipped to act as a barrier between the "liberties

of the people" and the power of a government, particularly a government so centralized that it

can force local prosecutors to take a capital case to trial against their will.[63]

Thus, the Constitution and the Bill of Rights sets up a carefully crafted system of checks

and balance. Under the Fifth Amendment, the grand jury, like the petit jury, is supposed to "act[]

as a vital check against the wrongful exercise of power by the State and its prosecutors."

*Campbell v. Louisiana*, 523 U.S. at 398 (citations omitted). Unless the grand jury is aware of its

capital charging power and the consequences of returning an indictment with "special findings"

---

[62] *See* Jesse Nason, "Mandatory Voir Dire Questions in Capital Cases: A Potential Solution to the Biases of Death Qualification," 10 ROGER WILLIAMS U. L. REV. 211, 219 (2004) (summarizing research on how death-qualified jurors may presume guilt, resolve ambiguities against the defendant, more readily accept the government's version of events, distrust defense witnesses, fill evidentiary gaps with their beliefs that defendant committed the crime; and were more likely to infer premeditation). *See also United States v. Green*, 324 F. Supp. 2d 311, 329 (D. Mass. 2004) (citing studies that raise problem with whether death-qualified juries are more conviction prone).

[63] Public opinion polls "consistently show that opposition to capital punishment runs around 45% to 55% for black Americans, while for whites it is much lower, ranging from 17% in 1992 to 24% in 2000. That is opposition to the death penalty is about twice as high among black Americans as among white, and a much larger majority of whites than blacks support the death penalty." Rory Little, "What Federal Prosecutors Really Think: The Puzzle of Statistical Race Disparity Versus Specific Guilt, and the Specter of Timothy McVeigh," 53 DEPAUL L. REV. 1591, 1596 (2004).

like those in this case, it cannot perform its constitutionally assigned function and make "*the important decision to charge a capital crime.*" *Id.* Because the grand jury did not perform its constitutionally assigned role of deciding whether Mr. Briseno should be held to answer for a capital crime, the death notice should be dismissed and the indictment's "special findings" stricken.

C.     **The Government did not obtain an indictment alleging all elements of a capital crime.**

Even if the grand jury had been aware that it its "special findings" would hold Mr. Briseno to answer for a capital crime, the notices should be dismissed because the Government did not present further necessary elements necessary for the grand jury to make the decision as to whether Mr. Briseno should be subject to the death penalty, *i.e.*, whether (1) the aggravating factors outweigh the mitigating factors and (2), whether they outweighed the mitigating factors *sufficiently* to justify a sentence of death.[64] The failure of the grand jury to examine all relevant factors to determine if the death penalty was justified conflicts with the framers' intent, discussed above, that the grand jury retain the power to decide which defendants should receive a sentence of death upon conviction. Moreover, as argued earlier, the process followed violated Mr. Briseno's Fifth and Sixth Amendment rights to have all elements of the crime submitted to the grand jury for its consideration. *See Jones v. United States*, 526 U.S. at 251-52.

_____

[64] Appended are the closing penalty-phase instructions of the Hon. Stephen C. Robinson, U.S.D.J., delivered in *United States v. Khalid Barnes* (S.D.N.Y.) on May 29, 2008. (A52.) In those instructions, Judge Robinson noted that the jury was required, in order to return a sentence of death, find unanimously and beyond a reasonable doubt that the aggravating factors outweighed the mitigating factors and that they outweighed the mitigating factors sufficiently to justify imposition of a sentence of death. (A52.) These are indisputably fact-findings that increase the punishment. Without those fact-findings, the maximum punishment faced by a capital defendant is lifetime incarceration.

-90-

The elements of capital murder include decisions reached by the jury right up to the point where it makes a fact-finding that the aggravating circumstances actually outweigh the mitigating circumstances to a sufficient degree that a sentence of death is justified. In truth, then, the "selection" decision is not made until the jury reaches the final decision-point of determining "whether all the aggravating factors found to exist *sufficiently* outweigh all the mitigating factors found to exist to justify a sentence of death . . . ." 18 U.S.C. § 3593(e) (emphasis added). A simple "outweighing" is not enough. As a matter of human experience, one can imagine a conscientious juror reaching the conclusion that, although the aggravating circumstances do barely tip the balance in favor of death, the degree to which that balance tips is not sufficient to justify imposition of a sentence of death. It is not until the moment that finding is made that the defendant's potential punishment increases to death. Recall Justice Scalia's point:

> [All] facts essential to imposition of the level of punishment that
> the defendant receives – whether the statute calls them elements of
> the offense, sentencing factors, or Mary Jane – must be found by
> the jury beyond a reasonable doubt.

*Ring*, 436 U.S. at 610 (Scalia, J., concurring.)

Obviously, there are enormous practical difficulties in devising a system where a grand jury can consider and weigh both aggravating and mitigating factors. That is precisely why, as argued in these motions, the legislature needs to amend this statute, not the courts and prosecutors. The grand jury's failure to indict on all elements of capital murder – even assuming the viability of a "*Ring* fix," means the notice must be dismissed.

**D.    The non-statutory aggravating factors alleged in the death notice must be dismissed because they are not supported by the indictment**.

In *United States v. Green*, 372 F. Supp. 2d 168 (D.Mass. 2005), Judge Gertner examined

-91-

the issue of whether a non-statutory aggravating factor of unadjudicated criminal activity alleged

in a death notice should be stricken under the Fifth Amendment because the factor had not been

previously found by the grand jury. Holding that the factor must be stricken, she relied primarily

on *Blakely*'s mandate that "every defendant [has] · · · the right to insist that the prosecutor prove

to a jury *all facts legally essential to the punishment*." (*Blakely*, 124 S. Ct.. at 2543).  (emphasis

added). She reasoned that "any aggravating factor is 'legally essential to punishment' because,

while not linearly triggering a higher sentence within the statutory maximum, as Federal

Sentencing Guidelines factors do, it may effectively tip the scale from life to  death in

combination with the other factors at play." 372 F. Supp. 2d at 177-178. She continued:

> The FDPA makes the death penalty jury a sentencing jury, not only conducting fact-finding, as any jury does, but also weighing aggravating and mitigating facts for the purpose of determining punishment, as judges typically do. The penalty jury's unique role muddies the distinction between offense facts, traditionally screened by grand juries, and sentencing facts, which traditionally went unscreened.

> The trilogy of *Apprendi*, *Ring*, and *Blakely* further conflates the line between sentencing facts and offense facts. *Blakely* explicitly rejected methodical distinctions between formal offense elements and sentencing factors, holding that all facts "essential" to punishment must be treated to the formalities of grand jury presentment and a jury trial. The Supreme Court specifically deemed it an "absurd result" that "the jury need only find whatever facts the legislature chooses to label elements of the crime, and that those it labels sentencing factors – no matter how much they may increase the punishment – may be found by the judge." *Blakely*, 124 S.Ct. at 2539. Even the government agrees that certain "sentencing facts"– here the listed statutory aggravating factor – must be screened by a grand jury.

> Moreover, once a defendant is deemed death-eligible, the FDPA requires that the penalty jury impose the death penalty only if the aggravating factors "sufficiently outweigh" the mitigating factor or factors. 18 U.S.C. § 3593(e). This burden is not optional.

> Even if the defendant presents no mitigating factors, to return a
> sentence of death after the first two death-eligibility burdens have
> been met, the jury must find that the aggravating factors "alone are
> sufficient to justify a sentence of death." *Id.* Because we will never
> know exactly how each factor influences the jurors' ultimate
> punishment determination, logic dictates that all aggravating
> factors – together – be considered legally essential to the
> punishment. Indeed, the government's argument that non-statutory
> factors are not essential is disingenuous; if the government does
> not require additional evidence to convince the jury to vote for
> death, why is it invoking non-statutory factors at all?

*Id*. at 177.

Judge Gertner limited her holding to unajudicated criminal activity, finding on the basis

of Supreme Court precedent that unajudicated criminal activity, in particular, required the

procedural protection of grand jury screening. *Id*. at 180-182. However, the court's logic is

obviously applicable to all non-statutory aggravating factors, as is made clear in *United States v.*

*Mills*, 446 F.Supp.2d 1115 (C.D. Ca. 2006).

In *Mills*, Judge Carter considered whether the Confrontation Clause was applicable to

evidence offered to prove non-statutory aggravating factors. He concluded that the Confrontation

Clause was applicable based on his analysis that non-statutory aggravating factors were elements

under *Apprendi*, *Ring*, and *Blakely*. He began by noting that "[w]hile the Court finds the

reasoning in *Green* persuasive, *Green* fails to consider *Booker's* lesson that there are some facts

– those which are not binding on the court – that do not rise to the level of constitutional

significance. From the Court's perspective, *Booker* and *Blakely* appear to present three potential

applications to the issue of confrontation during the selection portion of the penalty phase: (1)

pure fact-finding; (2) pure sentencing discretion; and (3) constitutionally significant fact-

finding." *Id*. at 1133.

Judge Carter acknowledged that if, as *Green* held, *Booker* and *Blakely*, applied to pure

-93-

1729

fact-finding, then the implication was that non-statutory aggravating factors, as well as the

ultimate weighing decision on penalty, were elements under the *Ring* line of cases, as argued

above:

> In *Blakely*, the Court relied on *Apprendi* in striking down Washington's sentencing guideline scheme that permitted the judge to impose a sentence higher than the standard range if he found certain aggravating factors justifying a departure. 542 U.S. at 299, 304-05, 124 S.Ct. 2531. The Court held: Our precedents make clear . . . that the "statutory maximum" for *Apprendi* purposes is the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant. . . ."* In other words, the relevant "statutory maximum" is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose without any additional findings. When a judge inflicts punishment that the jury's verdict alone does not allow, the jury has not found all the facts "which the law makes essential to the punishment," . . . and the judge exceeds his proper authority. *Id*. at 303-04, 124 S.Ct. 2531 (internal citations omitted). . . .

> As to pure fact finding, one could take *Blakely* literally, to mean that the judge may impose the death penalty "solely on the basis of the facts reflected in the jury verdict or admitted by the defendant." *Blakely*, 542 U.S. at 303, 124 S.Ct. 2531; see 18 U.S.C. § 3594 (requiring court to impose sentence on recommendation of jury). Thus, the Sixth Amendment's protections would no longer stop once the jury has found a statutory aggravating factor and a statutory intent factor. Even if these facts have been found, the judge still cannot impose a death sentence under the FDPA until the jury has found that "all the aggravating factor or factors found to exist sufficiently outweigh all the mitigating factor or factors found to exist to justify a sentence of death, or, in the absence of a mitigating factor, whether the aggravating factor or factors alone are sufficient to justify a sentence of death." See 18 U.S.C. §§ 3593(e), 3594. Thus, if steps three through six are fact finding, placement of the weighing after the jury has already engaged in the eligibility determination is not dispositive.

-94-

*Id.* at 1131-33.[65]

Instead of reaching this issue, Judge Carter focused instead on non-statutory aggravating factors, which he reasoned were elements because they involved "constitutionally significant fact finding":

> Under the Act, the jury is required to find these facts unanimously and beyond a reasonable doubt. 18 U.S.C. § 3593©. The jury may consider only the factors upon which it has rendered such a finding when it weighs the factors in aggravation and mitigation. 18 U.S.C. § 3593(d). Further, a jury renders these findings after a contested adversarial hearing that bears many of the features of a trial.  See 18 U.S.C. § 3593(b)-(e). The Court finds that these features of the Act render steps three and four significantly different than the judicially found facts that inform a court's calculation of the now non-binding Guidelines. In essence, the FDPA completely limits the jury's discretion until it has rendered its findings on the aggravating factors (whether statutory or non-statutory). Only upon finding these facts is the jury permitted to move on to the more discretionary task of finding the mitigating factors, and the broadly discretionary task of weighing aggravation against mitigation. 18 U.S.C. § 3593(c)-(e). Because of these fundamental structural differences, findings on the aggravating factors bear many of the hallmarks of constitutionally significant facts falling under the ambit of *Blakely*.
>
> It is possible that the jury could return a verdict of death without finding any additional aggravating facts, provided the proven aggravator alone is sufficient to outweigh whatever mitigation has been found. See 18 U.S.C. § 3593(e). However, given the allocation of fact-finding and discretionary tasks under the FDPA, the Court finds that this possibility alone is not sufficient to render these facts constitutionally insignificant for the purposes of confrontation.

---

[65]   In a footnote, the court noted that "[s]everal state supreme courts have determined that 'weighing' is a factual determination" citing *State v. Whitfield*, 107 S.W.3d 253, 261 (Mo.2003); *Woldt v. People*, 64 P.3d 256, 265-66 (Colo.2003); *Johnson v. State*, 118 Nev. 787, 802-03, 59 P.3d 450 (2002).

*Id.* at 1134-1135.

The reasoning of *Green* and *Mills* is persuasive and should be followed here. Although *Green* only addressed one particular class of non-statutory aggravating factors and *Mills* addressed the Sixth Amendment Confrontation Clause, *Green* correctly points out that "The FDPA already complies with *Ring's* holding in the sense that it requires a jury to find both statutory and non-statutory aggravating factors. Although *Ring* does not address the Fifth Amendment, other Supreme Court and circuit court opinions have paired Fifth and Sixth Amendment protections. And, as *Ring* and some state courts following it have suggested, these procedural protections apply to more than one aggravating factor when the government presents multiple aggravating factors." 372 F. Supp. 2d at 179. *See also*, *United States v. Barrett*, 496 F. 3d 1079, 1107 (10th Cir. 2007) ("The Court's *Apprendi* line of cases reveals that the reasonable doubt standard is appurtenant to the right to jury trial.")

In this case, as indicated above, the death notice alleges numerous non-statutory aggravating factors. None of them are alleged in the indictment. Because Mr. Briseno was entitled under the Fifth Amendment Indictment Clause to grand jury screening of these factors, the non-statutory aggravating factors alleged in the Death Notice must be stricken.

POINT FOUR:      THE FPDA FAILS TO PROVIDE A STRUCTURE WHICH PERMITS JURORS TO MAKE A REASONED CHOICE BETWEEN A SENTENCE OF LIFE IN PRISON WITHOUT THE POSSIBILITY OF RELEASE AND EXECUTION.

The FDPA has created a scheme that mixes concepts, burdens of proof, and an overall process which is likely incomprehensible to jurors. In the penalty phase of the trial, 12 jurors previously indoctrinated in the traditional culture of unanimity will be expected to understand that, unlike in the guilt phase, a lack of unanimity is not a failure but a legally cognizable

-96-

outcome.  Jurors schooled in the burden of proof in the guilt phase, *beyond a reasonable doubt*, will be expected in the penalty phase to apply that burden to aggravating factors and another burden, *preponderance of the evidence*, to mitigating factors.  Jurors will be expected to segregate the mental state threshold factors from aggravating and mitigating factors, and from the weighing process, by not considering them, in determining the appropriateness of a death sentence.  In the final analysis, jurors are asked, under the FDPA, to determine at what point aggravating factors outweigh mitigating factors "sufficiently" to justify a sentence of death.  It is unreasonable to expect even the most conscientious and reasonably intelligent jurors to parse this melange of concepts and come out with an understanding of the process or a principled verdict.  This very real possibility of confusion causes the FDPA to be unconstitutional.  In essence, the FDPA has returned the process to an era of un-guided discretion.

Because death is qualitatively different from other forms of punishment, the greater need for the reliability of the process by which a death sentence is arrived at has been long recognized.  *E.g., Woodson v. North Carolina*, 428 U.S. at 303-305.  The Eighth and Fourteenth Amendments therefore require that "where discretion is afforded a sentencing body on a matter so grave as the determination of whether a human life should be taken or spared, that discretion must be suitably directed and limited so as to minimize the risk of wholly arbitrary and capricious action."  *Gregg v. Georgia*, 428 U.S. at 189 (opinion of Stewart, Powell, and Stevens, JJ.).

A death penalty sentencing scheme that creates an unreasonable risk that jurors will misunderstand their role and their assignments violates the Eighth Amendment and the Due Process Clause.  *See Simmons v. South Carolina*, 512 U.S. 154 (1994).  In order for a jury's decision to impose a death sentence to withstand Eighth Amendment scrutiny, the jury's

-97-

discretion must be "suitably directed and limited so as to minimize the risk of wholly arbitrary and capricious action." *Godfrey v. Georgia*, 446 U.S. at 427.

Study after study shows that jurors, no matter how sincere and well-intentioned, misunderstand what they are supposed to do during the penalty phase of a death penalty trial. One such study was detailed in C. Haney, L. Sontag and S. Constanzo, "Deciding to Take a Life: Capital Juries, Sentencing Instructions, and the Jurisprudence of Death," 50 JOURNAL OF SOCIAL ISSUES 149-176 (1994). The authors interviewed 57 capital jurors from 19 death penalty trials conducted under a California system similar to the FDPA construct. Among the study's findings were the following:

- One third of the California jurors sampled focused in the penalty phase discussion solely on the nature of the crime itself in a way that essentially created a presumption of death;

- For many of the jurors, the absence of mitigation was the only reason given for the imposition of a death sentence, shifting the burden to the accused;

- The sampled jurors used their instructions to limit their consideration of some of the evidence admitted during the penalty phase, and to insulate themselves from the impact of their decision;

- Many of the sampled jurors dismissed mitigation evidence outright because they believed that mitigation evidence failed to "fit into" the rubric contained in the instructions, indicating a failure to understand what constituted mitigating evidence;

- 80% of the sampled jurors rejected mitigation evidence from their consideration because it did not directly reduce the defendant's responsibility for the crime;

- 60% of the sampled jurors rejected mitigation evidence because it did not completely account for the defendant's actions;

- Less than one third of the interviewed jurors demonstrated a workable understanding of what constituted mitigation evidence; and

- 80% of the juries returning a death verdict did so believing that life imprisonment without the possibility of parole did not really mean life without parole.

Other studies have demonstrated a similarly alarming and comprehensive misunderstanding of the sentencing mission in general, and mitigation in particular, among jurors deciding death penalty cases. *See, e.g.*, C. Haney and M. Lynch, "Comprehending Life and Death Matters: A Preliminary Study of California's Capital Penalty Instructions," 18 LAW AND HUMAN BEHAVIOR 411-436 (1994); "Dictionaries and Death: Do Capital Jurors Understand Mitigation?", UTAH LAW REVIEW 1 (1995); J. Luginbuhl, "Comprehension of Judges' Instructions in the Penalty Phase of a Capital Trial: Focus on Mitigating Circumstances," 16 LAW AND HUMAN BEHAVIOR 203 (April 1992); M. Constanzo and S. Constanzo, "Jury Decision Making in the Capital Penalty Phase: Legal Assumptions, Empirical Findings and a Research Agenda," 16 LAW AND HUMAN BEHAVIOR 185 (1992). Juries in actual death penalty cases often believe, completely erroneously, that once an aggravating factor has been found, death is mandatory. *See, e.g.,* U. Bentele and W.J. Bowers, "How Jurors Decide on Death: Guilt is Overwhelming; Aggravation Requires Death; and Mitigation is No Excuse," 66 BROOKLYN L.REV. 1011, 1031-41 (2001).[66]  Indeed, statistically valid surveys of capital-case jurors show that a substantial number of jurors who actually serve on capital cases *automatically* vote for death if the defendant is found guilty of murder.  *See, e.g.,* W. S. Geimer & J. Amsterdam, "Why

---

[66]    The article draws on the findings of the Capital Jury Project, an ongoing study funded by the National Science Foundation of decision-making by actual jurors in actual capital cases.  As noted in the article, at the time it was written the ongoing CJP had completed interviews of 1,155 capital jurors from 340 trials in 14 states.  66 BROOKLYN L.REV. at 1017.  For a full description of the Project, and its methodology, *see* W.J. Bowers, "The Capital Jury Project: Rationale, Design & Preview of Early Findings," 70 IND. L.J. 1043, 1079 (1995).  Professor William J. Bowers, who holds a Ph.D. in Sociology, is Principal Research Scientist, College of Criminal Justice, Northeastern University, and serves as the Principal Investigator for the Capital Jury Project.   66 BROOKLYN L.REV. at 1011, n. ††.

Jurors Vote Life or Death: Operative Factors in Ten Florida Death Penalty Trials," 15 AM. J.

CRIM. L. 1, 41 (1989), ("A significant number of jurors in death penalty cases believed that the

death penalty was mandatory or presumed for first degree murder" . . . "In the cases in which the

jury  recommended death, over half of the jurors believed that death was to be the punishment for

first degree murder, or at least that death was to be presumed appropriate unless defendant could

persuade the jury otherwise");  S. P. Garvey, "Aggravation and Mitigation in Capital Cases:

What do Jurors Think?"  98 COLUMBIA L.REV. 1538 (1998) ("Many jurors wrongly think they

must return a death sentence if they find the defendant's crime was especially heinous, or the

defendant is especially likely to present a risk of future danger");  T. Eisenberg, S. P. Garvey &

M. T. Wells, "Jury Responsibility in Capital Sentencing: An Empirical Study," 44 BUFF. L. REV.

339, 360 (1996) ("Nearly one-third of the jurors were under the mistaken impression that the law

required a death sentence if they found heinousness or dangerousness, a result replicated in the

multi-state study of the interview data"); W. S. Bowers, "The Capital Jury Project: Rationale,

Design and Preview of Early Findings," 70 IND.L.J. 1043, 1091, n. 32 (1995) ("Many jurors

believe that the death penalty is mandatory if the crime is heinous or vicious"); W. J. Bowers, M.

Sandys & B. Steiner, "Foreclosing Impartiality in Capital Sentencing: Jurors' Predispositions,

Attitudes and Premature Decision-Making," 83 CORNELL L.REV. 1476 (1998) ("There appears to

be a presumption that clear unequivocal proof of guilt justifies the death penalty);  T. Eisenberg

and M. T. Wells, "Deadly Confusion: Juror Instructions in Capital Cases," 79 CORNELL L. REV.

1, 12; 38, *n*. 12 (1992) ("There is a 'presumption of death'"):

> [Our] data suggest that the sentencing phase of a capital trial
> commences with a substantial bias in favor of death .  This is not in
> and of itself an indictment of the death trial phase.  But the tilt
> towards death suggests that a defendant with a confused jury may

>   receive the death sentence by default, without having a chance to
>   benefit from the legal standards deigned to give him a chance for
>   life.

*Id.* at 38 *n.* 12.  These and other studies show that jurors in death penalty cases misunderstand what they are permitted to consider much more often than not, and that instructions rarely cure the profound misunderstandings.

The most comprehensive study to date on the actual means by which death sentences are meted out is, as noted earlier, the one undertaken by the Capital Jury Project.  The Capital Jury Project ("CJP") is a consortium of studies of the methods of death penalty juries over a long period of time.  Supported by the National Science Foundation, the CJP had, by 2003, interviewed 1201 members of 354 different juries sitting in death penalty cases in 14 states.  See W. Bowers and W. Foglia, "Still Singularly Agonizing: Law's Failure to Purge Arbitrariness from Capital Sentencing," 39 CRIM. LAW BULLETIN 51 (2003).  In June of 2007, a New Mexico state district judge dismissed the "death notice" in a case in part because of the findings of the CJP.[67]  Those findings include the propensity (more than 50% of the time) by juries to decide the penalty issues before the penalty phase begins, which means that the jurors never allow mitigation into their deliberations; a comprehensive lack of understanding of what constitutes mitigation and how it applies; a broad-based lack of understanding of the instructions given by the judge; and that the jury decision-making process in death penalty cases is so flawed that it violates constitutional principles.  For example, the CJP's comprehensive, on-the-ground

---

[67]   *State v. Dominguez*, D-0101-CR 200400521, *State v. Good*, D-0101-CR-00522, order entered June 8, 2007.

-101-

research on these issues demonstrate that even in jurisdictions in which the jurors are specifically instructed that they do not have to unanimously find mitigating factors, or that mitigating factors are not restricted to a statutory list, a terrifying percentage of the jurors never grasped those critical features of the law. 39 CRIM. LAW BULLETIN at 68-69.

The CJP's findings provide a window into a process which has been designed with as much care as this politically sensitive issue permits, but which in practice is grossly arbitrary, unfocused and very often influenced by racial factors. The CJP underscores what seems obvious – that this process is insufficiently narrowed and focused to be constitutional. A jury's decision on whether or not a defendant should be put to death appears to have little to do with the instructions given by the court or the care with which the process has been constructed or managed. The FDPA is unconstitutional as applied.

The Supreme Court's decisions in various death penalty cases are based on assumptions shown by the CJP's research to be unfounded. For example, in *Boyde v. California*, 494 U.S. 370 (1990), the Court's decision was based on inaccurate assumptions about how the jurors assessed categories of information presented during trial. Likewise, the court's decision in *Tuilaepa v. California*, 512 U.S. 967 (1994) included the conclusion that instructions given to the penalty phase jurors to guide their handling of aggravating factors, mitigating factors and the various burdens of proof were "phrased in conventional and understandable terms." *Id*. at 976. Conventional as the instructions may be, the CJP research clearly demonstrates that they are not understandable to jurors. In *Tuilaepa*, the Court said that whether a penalty phase instruction is constitutional depends on whether it has a "common sense core of meaning . . . that criminal juries should be capable of understanding." *Id*. at 975. The perhaps most shocking lesson from

1738

the CJP is that criminal juries are incapable of understanding and applying the trial court's

instructions.  By the reasoning of *Tuilaepa*, the instructions, and the process and overarching

scheme which has produced them, is unconstitutional.  The Supreme Court's decisions upholding

the death penalty are based on assumptions which are belied by the most reliable empirical

evidence available.


Rory Little, an Associate Deputy Attorney General from 1996-1997 who served on the

capital case review committee, wrote an article about this process.  In Little, R., *supra,* 26 Ford.

Urb. L.J. 347, he writes that considering the "generality of these statutory aggravating factors and

their commonality in many murders are considered together with the added authority to invoke

non-statutory aggravating factors, it is the rare federal defendant that could not, in theory, be

sentenced to death simply upon conviction of any killing offense." *Id*. at 402.

This Court should declare the FDPA unconstitutional and permit this case to proceed as a

non-death penalty case.  In the alternative, Mr. Briseno requests that an evidentiary hearing be

scheduled to permit the presentation of expert testimony and empirical evidence in support of the

argument that the FDPA is so incomprehensible to jurors as to prevent, or substantially impair,

their performance in the task of deciding between a death sentence and a life sentence.

POINT FIVE:  IN LIGHT OF OVERWHELMING EVIDENCE THAT CONTINUED
ENFORCEMENT OF THE FEDERAL DEATH PENALTY WILL LEAD TO
THE EXECUTION OF A MEANINGFUL NUMBER OF INNOCENT PEOPLE,
THE FEDERAL DEATH PENALTY SHOULD BE DECLARED
UNCONSTITUTIONAL.[68]

---

[68]     Although this issue was presented and rejected by the First Circuit in *Sampson*,
486 F.3d at 27-30, it is respectfully noted that in the five years that have passed since that
decision, a steadily increasing number of innocent prisoners have been released from this

-103-

## A.    Introduction and background.

The dead can never be exonerated.  The issue posed is whether our constitution can tolerate the appreciable risks of executing the innocent.  The Hon. Michael Ponsor, U.S.D.J., presided over the first post-*Gregg* federal death-penalty case brought in the District of Massachusetts, *United States v. Gilbert*, 120 F. Supp.2d 147 (D. Mass. 2000).  Writing about that experience on the op-ed page of  *The Boston Globe* on July 8, 2001, Judge Ponsor said the following:

> The experience left me with one unavoidable conclusion: that a legal regime relying on the death penalty will inevitably execute innocent people – not too often, one hopes, but undoubtedly sometimes.  Mistakes will be made because it is simply not possible to do something this difficult perfectly, all the time.  Any honest proponent of capital punishment must face this fact.

## B.    The *Quinones* decision.

On July 1, 2002, the Hon. Jed S. Rakoff, U.S.D.J. of the Southern District of New York issued an opinion finding that the risk of executing the innocent was of sufficient constitutional magnitude that the federal death penalty could not be enforced.  *United States v. Quinones (Quinones II)*, 205 F. Supp.2d 256 (S.D.N.Y. 2002).[69]  Summarizing his findings in *Quinones II*,

_____

nation's death rows.  The Death Penalty Information Center has now documented 141 cases of innocent defendants released from various death rows.  (A87.)  From 1973-1999, there was an average of 3.1 exonerations per year.  Since 1999, roughly the time of the *Quinones* litigation, that rate has increased to 5 per year.  In 2009 alone, nine death row prisoners were exonerated. It reasonable to infer that in the eight years since the Second Circuit decided *Quinones*, an additional 40 defendants have been exonerated and released from death row.  (A87.)

[69]  In an earlier opinion in the same case, Judge Rakoff had announced his tentative findings on this issue and permitted the government a further opportunity to be heard on the issue.  *United States v. Quinones (Quinones I)*, 196 F. Supp.2d 416, 420 (S.D.N.Y.

-104-

Judge Rakoff wrote:

> [T]he best available evidence indicates that, on the one hand, innocent people are sentenced to death with materially greater frequency than was previously supposed and that, on the other hand, convincing proof of their innocence often does not emerge until long after their convictions. It is therefore fully foreseeable that in enforcing the death penalty a meaningful number of innocent people will be executed who otherwise would eventually be able to prove their innocence. It follows that implementation of the Federal Death Penalty Act not only deprives innocent people of a significant opportunity to prove their innocence, and thereby violates procedural due process, but also creates an undue risk of executing innocent people and thereby violates substantive due process.

*Id.* at 257.[70] Although Judge Rakoff's decision was eventually reversed by the Second Circuit,[71] this Court is urged to determine whether, in fact, the federal death penalty is likely to lead to the execution of one or more innocent people.[72]

## C.     The risk of executing the innocent.

Only the most naive would take the position that the American system of justice is free

---

2002).

[70] There is an additional reason, not discussed in Judge Rakoff's opinions, for concern over the time between sentence and execution in the federal system as that time period bears on the opportunity to establish innocence. In the state systems, condemned prisoners may resort to direct and collateral state court review of their convictions and sentences of death – a process that may consume many years – before entering the federal system via habeas corpus, as provided by 28 U.S.C. § 2254. In the federal system, there is one round of direct appeal and one round of post-conviction challenge, as allowed by 28 U.S.C. § 2255, and that is all.

[71] *United States v. Quinones*, 313 F.3d 49 (2nd Cir. 2002) (reversing, on government's appeal, district court's order declaring the FDPA unconstitutional); opinion on panel re-hearing, 317 F.3d 86 (2nd Cir. 2003)

[72] *See United States v. Sampson*, *supra*, 275 F. Supp.2d at 56-57.

from the possibility of error.[73] It would be the height of arrogance to presume the federal system immune from these problems. There were significant doubts about the innocence of David Ronald Chandler, the very first federal defendant to have been sentenced to death in the era of the "modern" (post-1988) death-penalty. Mr. Chandler was originally sentenced to death in 1991. In 1999, the Eleventh Circuit vacated his death sentence on grounds of ineffective assistance of counsel at the penalty phase. *Chandler v. United States*, 193 F.3d 1297 (11ᵗʰ Cir. 1999). That opinion was itself vacated, however, by a 6-5 vote of the Court sitting *en banc*, and the sentence of death was re-affirmed. *Chandler v. United States*, 218 F.3d 1305 (11ᵗʰ Cir. 2000) (*en banc*). After the Supreme Court denied *certiorari* review, and citing Attorney General Reno's serious concerns about whether Mr. Chandler was actually innocent of the crime for which he had been prosecuted and condemned to death, President Clinton, on January 20, 2001, commuted Mr. Chandler's death sentence to one of life imprisonment, noting that "the defendant's principal accuser later changed his testimony, casting doubt on the defendant's guilt." W.J. Clinton, "My Reasons for the Pardons," *N.Y. Times*, February 18, 2001.

Moreover, it is not simply that the system of capital punishment in this country is fraught with factual error, it is also fraught with legal error. Professor James Liebman of Columbia University, who lead a team of researchers, studied the rate of error in state and federal capital

---

[73] In J. Dwyer, P. Neufeld, and B. Scheck, *Actual Innocence* (Doubleday 2000), the authors tracked the cases of numerous innocent people convicted of crime and identified the following eight factors most commonly involved where the innocent are convicted: (1) mistaken eyewitness testimony; (2) false confessions; (3) falsified scientific testing; (4) "snitch" witnesses who lied for advantage; (5) junk science; (6) police and prosecutorial misconduct; (7) lackluster or impaired performance by defense counsel; and (8), systemic racial bias. It may hardly be said that the federal system is free from any of these factors.

cases and found that in an astonishing 68% of cases, death-penalty prosecutions were subject to outcome-determinative legal error.  J.S. Liebman, *et al.*, "A Broken System: Error Rates in Capital Cases, 1973-1995 (2000); *see also*, J.S. Liebman, *et al.*, "A Broken System, Part II: Why There Is So Much Error In Capital Cases, And What Can Be Done" (2002).[74]  In the federal system, eight death sentences have been set aside on post-trial motion, appeal or on post-conviction challenge.

In *Quinones II*, Judge Rakoff reached the logically unassailable conclusion that the number of DNA exonerations – *i.e.,* cases where scientific evidence was available to establish innocence conclusively – means that there is more than an appreciable risk that the innocent will be executed (and have been) "given what DNA testing has exposed about the unreliability of the primary techniques developed by our system for the ascertainment of guilt . . . ."  *Id.* at 264-65.  Responding earlier to the government's argument that the availability of pre-trial DNA testing had magically "solved" the problem of the wrongfully-convicted defendants, the Court stated as follows:

> This completely misses the point.  What DNA testing has proved, beyond cavil, is the remarkable degree of fallibility in the basic fact-finding processes on which we rely in criminal cases.  In each of the 12 cases of DNA-exoneration of death row inmates referenced in *Quinones*, the defendant had been found guilty by a unanimous jury that concluded there was proof of his guilt beyond a reasonable doubt; and in each of the 12 cases the conviction had been affirmed on appeal, and collateral challenges rejected, by numerous courts that had carefully scrutinized the evidence and the

---

[74]  In *Quinones II*, Judge Rakoff described the Liebman study as "the most careful and comprehensive study in this area, and one based, moreover, almost exclusively on public records and court decisions," *id.* at 268, noting also that the Liebman study had been cited by Justice Breyer in his concurring opinion in *Ring v. Arizona*, who described the study as one that has generally been favorably received by scholars.  *Id.* at n. 16.

> manner of conviction.  Yet, for all this alleged "due process," the
> result in each and every one of these cases, was the conviction of
> an innocent person who, because of the death penalty, would
> shortly have been executed (– some came within days of being so
> –) were it not for the fortuitous development of a new scientific
> technique that happened to be applicable to their particular cases.

*Id.* at 264.

As conclusively demonstrated in *Quinones I* and *Quinones II*, the actual holding of the

Court in *Herrara v. Collins*, 506 U.S. 390 (1993) does not bar either the substantive or

procedural due process bases of the *Quinones* opinion.  *See* discussion in *Quinones II*, 205 F.

Supp.2d at 261-64; *see also* the analysis in *United States v. Sampson, supra*, 275 F. Supp.2d at

49.

D.      **The real question: How many innocent people is it acceptable to execute so
        that the Government may execute others who are undoubtedly guilty?**

This is really the crux of this issue.  No one looking at the studies and cases regarding the

numbers of demonstrably innocent people convicted and sentenced to death can argue that it is

anything but overwhelmingly probable that some of the more than 1,000 people executed in this

country since 1976, and some of the many more thousands who wait on our death rows, and

some of the thousands executed prior to 1976, were overwhelmingly likely to be wholly innocent

of wrongdoing.[75]  The real question is whether that is a price worth paying for the "privilege" of

having a system of capital punishment.  Mr. Briseno' counsel respectfully suggest that executing

---

[75]  The Supreme Court's decision in *Gregg v. Georgia*, 482 U.S. 153 (1976)
supposedly eliminated the arbitrary and capricious imposition of death sentences that lead
to the outright ban on capital punishment announced in *Furman v. Georgia*, 408 U.S. 238
(1972).

-108-

the occasional innocent person is, by an order of magnitude, too great a price to pay for the

ability to execute capriciously-selected truly guilty individuals.  Concluding his op-ed piece,

Judge Ponsor stated:

> I love our system, and I am proud to serve in it.  As I believe this
> trial demonstrated, no structure of law anywhere or at any time, has
> tried so earnestly to protect the rights of those involved in it.  But I
> have a hard time imagining anything as complicated as a capital
> trial being repeated very often, even by the best system, without an
> innocent person eventually being executed.
>
> The simple question – not for me as a judge, but for all of us as
> citizens – is: Is the penalty worth the price?

To allow the machinery of death to grind inexorably onwards, in the face of

incontrovertible proof that our system convicts and condemns to death the innocent, is

unacceptable in a society of evolving standards of decency.  On this basis, this court should strike

down the FDPA.

POINT SIX:    AS SPECIFIED BELOW, CERTAIN OF THE STATUTORY AND NON-
              STATUTORY AGGRAVATING FACTORS SET FORTH IN THE
              GOVERNMENT'S NOTICE – INCLUDING THE ALLEGATION OF FUTURE
              DANGER – MUST BE DISMISSED OUTRIGHT OR FURTHER
              PARTICULARIZED.

A.    **Introduction.**

The notice of aggravating factors filed in this case contain allegations of both statutory

and non-statutory aggravating factors. As argued below, certain of the aggravating factors should

be dismissed as vague, duplicative, unascertainable, lacking factual support, or otherwise not

relevant to a jury's determination of sentence.  In several instances, further specifics are

requested.

B.    **The proper role of aggravating factors**

-109-

1.    General principles: function and relevance

Over the years, the courts have developed an approach to what does and does not

constitute proper evidence in aggravation of murder that serves to justify imposition of a

sentence of death.  Generally speaking, "an aggravating circumstance must genuinely narrow the

class of persons eligible for the death penalty and must reasonably justify the imposition of a

more severe sentence on the defendant compared to others found guilty of murder." *Zant v.*

*Stephens*, 462 U.S. at 877.  In *Gregg v. Georgia*, the Court had noted that aggravating factors

must be "*particularly* relevant to the sentencing decision," *Gregg*, 428 U.S. at 128 (emphasis

added), and, as stated in *United States v. Gilbert,* "not merely relevant, in some generalized

sense, to whether the defendant might be considered a bad person." *United States v. Gilbert*, 120

F.Supp.2d at 150-51. Aggravating factors must assist the jury in distinguishing "those who

deserve capital punishment from those who do not," *Arave v. Creech*, 507 U.S. at 474.  In

*Godfrey v. Georgia*, *supra,* the defendant was sentenced to death upon a finding that the murder

was "outrageously or wantonly vile, horrible or inhuman."  446 U.S. at 422.  In striking down

this aggravating circumstance and vacating the sentence of death, Justice Stewart's opinion for

the plurality concluded that the language of this particular aggravating circumstance failed to

provide "inherent restraint on the arbitrary and capricious infliction of the death sentence," since

virtually every murder could be said to fit that criteria.  *Id.* at 428-29.  Moreover, since the facts

and circumstances of the murder in *Godfrey* did not stand out from other murders, there was "no

principled way to distinguish this case, in which the death penalty was imposed, from the many

in which it was not." *Id.* at 433.  In *Tuilapea, supra*, the Court reiterated the two constitutional

tests which aggravating factors must meet: (1) a valid aggravating factor cannot not apply to

-110-

1746

every defendant convicted of murder, but only to a rationally-selected sub-class of murderers; and (2), the circumstances must be defined in such a way by the statute so as not to be vague. *Id.* at 972. In practice, then, the death penalty should be reserved for the worst of the worst. *See Roper v. Simmons,* 543 U.S. 551, 568 (2005) ("Capital punishment must be limited to those offenders who commit 'a narrow category of the most serious crimes' and whose extreme culpability makes them 'the most deserving of execution.'" (quoting *Atkins v. Virginia,* 536 U.S. 304, 319 (2002)). As summarized by Judge Sessions, in *United States v. Fell*, 372 F.Supp.2d at 763-764, the most salient aspect of statutory and non-statutory aggravating evidence is one that focuses on simple relevance:

> First, the information must be "relevant," meaning that it must be "sufficiently relevant to the consideration of who should live and who should die." [*United States v. Davis*, 912 F.Supp. 983 (E.D. La. 1996)] at 443. Aggravating factors in death penalty cases must be "particularly relevant to the sentencing decision," not merely relevant, in some generalized sense, to whether the defendant might be considered a bad person. *Gregg v. Georgia*, 428 U.S. 153, 192 (1976).

Several courts have attempted to relate these general principles of capital jurisprudence to federal capital prosecutions. In *United States v. Davis*, 912 F.Supp. 938 (E.D.La. 1996), the government alleged as a non-statutory factor in the capital prosecution of a New Orleans police officer that the officer "lacked remorse" and had a "low potential for rehabilitation." In ultimately striking that factor, the district court took time out to review what limits could be imposed on the government's resort to non-statutory aggravating factors, stating:

> [A]re there then no limits on the "other" information that can be introduced at the penalty phase of a capital case? The answer is clearly no. The statute requires that any such information must be "relevant." And by relevant, it must mean sufficiently relevant to the consideration of who should live and who should die. What

-111-

> might be relevant in an administrative disciplinary proceeding, or even in a sentencing hearing where the choices are between varying terms of imprisonment, is not necessarily sufficiently relevant to deciding who should be sentenced to death.

*Id.* at 943.

The district court in *Davis* noted, as well, that a weighing statute carries with it the danger of numerosity, *i.e.*, the more that gets tossed on death's side of the balance, the greater the temptation is for jurors to consider the evidence in a *quantitative*, as distinct from a *qualitative*, manner:

> The statute [FDPA] is a "weighing" statute. Once the evidence of all the aggravating and mitigating factors is in, the jury is to consider whether all of the former factors "outweigh" the latter. § 3593(e). To carefully define the statutory aggravating factors, but then allow wholesale introduction of non-statutory aggravating information would defeat the goal of guided and measurable jury discretion and return us to an unconstitutional system where the death penalty is "wantonly" and "freakishly" imposed. It cannot be presumed that Congress intended to create a statute that is so self-defeating, much less one that would be unconstitutional. Additionally, as noted in Gregg, juries have little, if any, experience with sentencing and "are unlikely to be skilled in dealing with the information they are given." 96 S.Ct. at 2934. Any guidance that can be provided – particularly in a decision so fundamental and profound as that made in a capital case – must be provided. *All of the above mandates that judicial discretion be exercised and the non-statutory factors be carefully screened. In doing so, this court must seek to fulfill the intent of Congress and at the same time construe the statute in a manner that maintains its constitutionality.*

*Davis*, 912 F.Supp. at 943 (footnote omitted; emphasis added).

Other district court judges have expressed similar concerns, and have translated those concerns into action, dismissing aggravating factors, on a case-by-case basis. In *United States v. Gilbert*, *supra*, the court struck several of the Government's proposed non-statutory aggravating

-112-

1748

factors, explaining that decision as follows:

> Put simply, the stricken factors lack sufficient gravity, reliability, or probative value to deserve consideration during deliberations on the death penalty, if the jury reaches the question.

*Gilbert*, 120 F.Supp.2d at 149.  In *United States v. Cuff*, 38 F.Supp.2d 282 (S.D.N.Y. 1999), then-Chief Judge Mukasey dismissed a non-statutory aggravating factor that several of the charged murders had been committed with a firearm.  Chief Judge Mukasey stated:

> A predicate to fulfilling the constitutional conditions for an aggravating factor is that the disputed factor be an aggravating factor in the first place.  Use of a firearm in connection with a homicide does not meet that predicate for the simple reason that, in any rational sense, it does not make a homicide worse, whether one looks at it from the standpoint of the crime, the victim or the perpetrator.

*Id.* at 288; *see also*, *United States v. Nguyen, supra*, 928 F.Supp. at 1544 (Striking "low potential for rehabilitation"); *United States v. Chanthadara*, *supra*, 928 F.Supp. at 1058 (Same result, co-defendant's case), sentence of death vacated on *Witherspoon* grounds, *United States v. Chanthadara*, 230 F.3d 1237 (10th Cir. 2000).

In *United States v. Friend*, 92 F.Supp.2d 534 (E.D.Va. 2000), Judge Payne reviewed the constitutional principles that govern the presentation of non-statutory aggravating factors in a federal capital prosecution.  The court first summarized the "'two sometimes-competing, but nonetheless fundamental, constitutional principles'" that control capital cases.  *Id.* at 538, quoting *United States v. Beckford*, 964 F.Supp 993, 999 (E.D.Va. 1997).  The Court stated:

> The first of these principles demands a heightened reliability in capital sentencing because the sentence of death is final, and therefore qualitatively different from other punishments.  The second principle emphasizes the importance, indeed the

-113-

> constitutional necessity, for presenting to the sentencing jury as much information as possible to assure that the sentence is individualized.

*Friend*, at *id*. (footnotes and citations omitted).  With specific regard to the role of aggravating factors, the court deduced from the Supreme Court's capital jurisprudence four essential aspects that an aggravating factor must posses in order to pass constitutional muster: (1) an aggravating factor must not be overly broad, *i.e.*, quoting *Tuilaepa v. California,* 512 U.S. at 972, it "'may not apply to every defendant convicted of a murder; it must apply only to a sub-class of defendants convicted of murder;'" (2) an aggravating circumstance may not be unconstitutionally vague, as "ascertained by whether an aggravating factor is defined in terms too vague to provide adequate guidance to the sentencer;" (3) aggravating factors "must be focused on circumstances that are considered by civilized society to be 'particularly relevant to the sentencing decision,'" quoting *Gregg v. Georgia, supra*, 428 U.S. at 192, and must also "be relevant in assisting the jury in distinguishing 'those who deserve capital punishment from those who do not,'" quoting *Arave v. Creech*, 507 U.S. at 474 ; and (4), "it is essential that an aggravating factor be measured in perspective of the fundamental requirement of heightened reliability that is the keystone in making 'the determination that death is the appropriate punishment in a specific case.'"  Quoting *Woodson v. North Carolina, supra,* 428 U.S. at 474.  *United States v. Friend*, 92 F.Supp.2d at 541.  Having undertaken that analysis, Judge Payne noted that the concept of heightened reliability had a particularly important role to play "when assessing a non-statutory aggravating factor – which, by definition, lacks the stamp of approval that Congress has bestowed upon the statutory aggravating factors – . . . ."  *Id.* at 542.

    2.    <u>Duplicative factors</u>

-114-

Aggravating factors – especially when utilized in a weighing jurisdiction – may not be alleged in duplicative fashion. This is to avoid the effect of having the same conduct or circumstance found and weighed repeatedly. Duplicative aggravating factors – like invalid aggravating factors – undermine the integrity of the weighing process, since the same factor is weighed more than once by the jury. *See, United States v. McCullah*, 76 F.3d 1087 (10th Cir. 1996) (Reversing a federal sentence of death). The effect of duplicative factors – like invalid factors – is to place "a thumb [on] . . . death's side of the scale." *Stringer v. Black,* 503 U.S. 222, 232 (1992). In *McCullah*, the court stated:

> [D]ouble counting of aggravating factors, especially under a weighing scheme, has a tendency to skew the weighing process and creates the risk that the death sentence will be imposed arbitrarily and thus, unconstitutionally. [citation omitted] As the Supreme Court of Utah pointed out, when the same aggravating factor is counted twice, the "defendant is essentially condemned 'twice for the same culpable act,'" which is inherently unfair. *Parsons v. McGriff*, 871 P.2d 516, 519 (Utah) (quoting *Cook v. State*, 369 So.2d 1251, 1256 (Ala. 1979), *cert. denied*, ___ U.S. ___, 115 S.Ct. 431, 130 L.Ed.2d 322 (1994).

*McCullah*, 76 F.3d at 1111-12. The *McCullah* court also noted that "the mere finding of an aggravating factor cannot but imply a qualitative value to that factor." *Id.* at 1112. In essence, the more aggravating factors there are – and a scheme which allows prosecutors to allege non-statutory factors guarantees numerosity – the further the death-side of the balance will tip, even if the same conduct has been subtly, or not so subtly, recast and reborn as an ostensibly new and separate consideration.

In *United States v. Jones*, 132 F.3d 432 (5th Cir. 1998), the Court reached the conclusion that the trial court had erroneously allowed duplicative aggravating factors to go to the jury, but that the error was harmless. This ruling was affirmed by the Supreme Court in *Jones v. United*

*States*, 527 U.S. 373 (1999).  For other cases applying this rule, *see, e.g., United States v. bin Laden, supra*; *United States v. Glover*, 43 F.Supp.2d 1217 (D. Kansas 1999).

> **C.**     **This court may require the government to submit a proffer of its evidence, in the form of an informative outline, or to conduct hearings**.

There is nothing unusual about a party seeking a preliminary ruling on important aspects of an adversary's case.  F.R.EVID. 104(a) confers this authority on the district courts.  In the context of a case of this nature and magnitude, it makes eminent sense, respectfully, for this court to resolve as many issues as possible concerning the scope of the proofs that will be presented and the allegations that defense counsel must be prepared to investigate and meet.

Other district courts have recognized the utility of requiring the government to identify the nature of its proofs in support of statutory and non-statutory aggravating factors so that courts may exercise their gatekeeping responsibilities to limit penalty-phase evidence to that which meets standards of heightened reliability and particular relevance.  In *United States v. O'Driscoll*, 250 F.Supp.2d 432 (M.D.Pa. 2002), the government sought to offer evidence of a wide variety of unajudicated criminal conduct, including an unajudicated prior murder.  The evidence of uncharged conduct was offered both as free-standing aggravation and in support of an allegation that the defendant would be a future danger.  In order to discharge its responsibilities, the trial judge ordered the government to produce the evidence on which it would rely, resulting in the disclosure of two video-tapes and six volumes of reports and other documents totaling in excess of 1,000 pages.  *O'Driscoll*, 250 F.Supp.2d  at 434.   In a pre-*Crawford* ruling, the court noted the following:

> We conclude that where the government attempts to use
> unajudicated acts of violence and misconduct the heightened
> standard of reliability applicable to capital proceedings requires

-116-

1752

that the hearsay rule be fully applicable to the penalty phase
proceeding. In other words unajudicated acts of violence cannot be
proven by hearsay testimony unless a well-recognized exception to
he hearsay rule is applicable.

*Id.* at 436. In this regard, the *O'Driscoll* court drew on then District Judge Raggi's conclusion in

*United States v. Pitera*, 795 F.Supp. 546, 565 (E.D.N.Y. 1992) that, "The heightened standard

applicable to capital sentencing proceedings may . . . demand further indicia of reliability before

a court can say that the probative value of any such hearsay outweighs its potential prejudice." In

setting an analytical framework for the task of deciding what acts of prior misconduct would be

admissible, the *O'Driscoll* court, in addition to requiring application of the Sixth Amendment

and the rules of evidence, held:

> Information regarding unajudicated acts of violence and
> misconduct will be found reliable only under the following
> circumstances:
>
> > (1) a juror would be justified in relying on
> > such information in voting for a sentence of death;
>
> > (2) the probative value of the information is
> > not outweighed by other considerations, such as
> > remoteness of time or danger of unfair prejudice;
>
> > (3) the information satisfies the
> > Constitution's requirement of heightened reliability
> > for information presented by the government at the
> > sentencing phase of a capital case.

*O'Driscoll*, 350 F.Supp.2d at 436. *See also*, *United States v. Karake*, 370 F. Supp. 2d 275, 279

(D. D. C.2005) ("[I]t has been uniformly recognized that if the death penalty [notice] provides

insufficient notice to the defendant, the Court retains inherent authority to require the

government to provide more specifics in order to give the defendant the opportunity to prepare

for the penalty phase, as well as to provide the court with some frame of reference for ruling on

-117-

objections to the death penalty notice."); *United States v. Cooper*, 91 F.Supp.2d 90, 111

(D.D.C.2000) (ordering greater specificity as to several aggravating factors); *United States v.*

*Glover*, 43 F.Supp.2d 1217, 1225 (D.Kan.1999) (directing government to amend its death

penalty notice to articulate its factual allegations as to certain aggravators); *United States v.*

*Kaczynski*, 1997 WL 716487, at *20 (E.D.Cal. Nov. 7, 1997) (although government had provided

discovery regarding prior acts of violence, court also required the government to provide

specification regarding the acts that it intended to rely on during the penalty-phase so that the

defendant would not "be forced to defend against these allegations for the first time . . . at

sentencing. This raises the specter of unfair surprise and potentially prejudices Defendant's

ability to defend against the government's efforts to impose the death penalty."). See also

*Carlisle v. United States*, 517 U.S. 416, 425-26 (1996) (recognizing courts' "inherent supervisory

power"); *United States v. Frank*, supra, 8 F.Supp.2d at 265:

> The FDPA ensures that the Government will not violate . . .
> constitutional and statutory rules in any particular prosecution by
> requiring that a defendant have notice of the factors on which the
> government intends to rely, and by providing a gate-keeping role
> for the district court. Thus, the Government may not employ
> simply any non-statutory factor of its choice. Instead, having
> chosen non-statutory factors it believes appropriate to the case, the
> Government must submit such factors to the defendant and to the
> court. If the court determines that any of the factors are
> inappropriate or run afoul of the Supreme Court's death penalty
> jurisprudence, the factor will be excluded.

In another example, while rejecting a challenge to evidence of an unadjudicated murder,

the Seventh Circuit emphasized that the district court had conducted a two-day hearing to

determine the reliability of the evidence. *United States v. Corley,* 519 F.3d 716 (7th Cir. 2008).

The district court's published decision describes more fully the strictures it imposed on this

-118-

evidence. *United States v. Corley,* 348 F. Supp. 2d 970 (N.D. Ind. 2004) (ordering that (1) the standard for admissibility would be whether a reasonable jury could find beyond a reasonable doubt that defendant committed the murder; (2) if the evidence was admitted, jury would be instructed to consider it only if it was proven beyond a reasonable doubt; and (3) the government could not meet its burden at hearing with hearsay testimony (*i.e.*, summary testimony from law enforcement officers), but would have to present live witnesses at hearing). For another, similar decision, *see United States v. Beckford,* 964 F.Supp. 993 (E.D. Va. 1997) (unadjudicated criminal conduct may only be presented to sentencing jury if district court first determines it meets threshold level of reliability. Accordingly, the government would be required to submit a detailed proffer of the evidence before sentencing hearing begins, and defendant permitted to brief and argue opposition to its admission. Court would determine whether jury could reasonably find, by a preponderance, that the act occurred, that defendant committed it, and that it was probative). One district court did exclude evidence of four unadjudicated murders attributed to the defendant because its prejudicial impact outweighed its probative value. The underlying facts of the crimes were inflammatory, the crimes were based on fact patterns similar to the capital charge, and the evidence for them came primarily from accomplices and cooperators. *United States v. Gonzalez,* 2004 WL 1920492 (D. Conn. Aug. 17, 2004). *See also United States v. Rodriguez,* 2006 WL 487117 (D. N.D. Feb. 28, 2006) (prohibiting government from presenting aggravating evidence about prior sexual assault and kidnapping for which defendant was tried and acquitted in state court).

Accordingly, the court should direct the government to provide an informative outline of its proofs with regard to certain of the aggravating factors – statutory and non-statutory – it has

-119-

alleged.  Specifically, the defense seeks a proffer of the government's evidence on the following

of the government's statutory and non-statutory aggravating factors:

- Each offense was committed after substantial planning and premeditation. 18 U.S.C. § 3592(c)(9);

- The defendant has shown a lack of remorse concerning each offense;

- Future danger, including specifics of the allegation that Juan Briseno is "a continuing danger to the lives and safety of other persons" and "is likely to commit criminal acts of violence in the future" as well as specifics regarding the allegation that Juan Briseno has "a low potential for rehabilitation as demonstrated by repeated violent acts", " a willingness to take human life and a lack of remorse for his acts of violence and attempted acts of violence as demonstrated by statements that he made following the violent acts" and Juan Briseno's "stated desire to impose a rule requiring fellow members of the Imperial Gangsters to shoot at rivals on sight".

- Victim impact evidence.

It is respectfully submitted that, without further information concerning these allegations,

this court will be hindered in the exercise of its constitutional gate-keeping function of

determining whether the government's proposed evidence would fail the constitution's

requirement for heightened reliability in capital proceedings, or whether it should be excluded

because its probative value is simply outweighed by countervailing considerations.

**D.      Particular challenges to the aggravating factors alleged in this case**

1.      Substantial planning or premeditation.

The notice of aggravating factors cites the above circumstance as justifying a sentence of

death in this case.   The vice of this statutory aggravating factor, 18 U.S.C. § 3592(c)(9), alleged

as to all six victims, is that it requires jurors to fix the illusive and highly subjective point at

which "planning and premeditation" crosses an imaginary dividing line and becomes

-120-

"*substantial* planning and premeditation."  The former may not be used to support a sentence of death; the latter may.  This is a concept of such slippery and nuanced vagueness that the factor should be stricken.  This is an issue of first impression in this circuit.  Counsel recognize that the argument has been rejected in other courts.  *See, e.g., United States v. bin Laden*, *supra*, 126 F.Supp.2d 297 n.7 (Collecting cases).

It is hard to imagine a murder case that could not be said to involve "substantial planning and premeditation."  Indeed, the only class of cases that would not meet this description would not be murder cases at all, but involve sudden and reflexive acts of violence triggered by a sudden loss of control, blinding anger, or heat of passion or great provocation.  Thus, since this factor can be seen as applying to all murders, it does not serve to narrow the class of offenses and offenders as to which the death penalty applies.  It should be stricken.

2.      Lack of remorse.

This non-statutory factor alleges that Mr. Briseno should be executed because he "has displayed no remorse" for the murders.   The notice does not, however, cite any  instance in which Mr. Briseno affirmatively demonstrated lack of remorse.  On its face, therefore, this factor may rest upon Mr. Briseno' failure to admit that he committed the offenses charged, his public silence in the face of the Government's accusations, and his failure to make any public expressions of remorse.  Under these circumstances, the use of "lack of remorse" as a non-statutory aggravating factor violates both Mr. Briseno' Fifth Amendment right to remain silent and his Sixth Amendment right to a fair trial, because it imposes an impermissible penalty upon the exercise of those rights.  *See Lesko v. Lehman*, 925 F.2d 1527, 1543-45 (3d Cir. 1991). *See also, United v. Davis*, 912 F.Supp. at 946 ("allegation of lack of remorse encroaches dangerously on

-121-

an offender's constitutional right to put the government to its proof.") Moreover, use of lack of remorse as an aggravating factor violates the Eighth Amendment because it is inherently unreliable.

The Fifth Amendment provides that "No person . . . shall be compelled in any criminal case to be a witness against himself. . . ." A criminal defendant thus has a right to remain silent in the face of accusation, and he may not be punished for exercising this right. *Lefkowitz v. Cunningham*, 431 U.S. 801, 805 (1977) (government "may not impose substantial penalties because a witness elects to exercise his Fifth Amendment right not to give incriminating testimony against himself"); *Malloy v. Hogan*, 378 U.S. 1, 8 (1964) (defendant has right "to remain silent unless he chooses to speak in the unfettered exercise of his own will, and to suffer no penalty . . . for such silence"). This right is so absolute that a prosecutor cannot even comment on the accused's exercise of the right. *Griffin v. California*, 380 U.S. 609, 615 (1965). In 2010, in *United States v. Caro*, *supra*, the Fourth Circuit acknowledged that the Fifth Amendment prohibits consideration of a federal capital defendant's silence on support of an argument he lacked remorse. 597 F.3d. at 627-31.

Penalties on the exercise of the Sixth Amendment right to a trial are also impermissible. The Second Circuit has applied the same analysis set forth in *Griffin*, *supra*, in a Sixth Amendment trial context. *Agard v. Portuondo*, 117 F.3d 696, 709-10 (2d Cir. 1997) ("*Griffin v. California*, 380 U.S. at 614, [and its] principles are appropriately applied to a case involving Sixth Amendment rights").

In a capital case, permitting the jury to weigh the accused's lack of remorse against him in deciding whether to impose the death penalty substantially penalizes the exercise of his Fifth

1758

Amendment right to remain silent and Sixth Amendment right to a trial.  To permit "lack of

remorse" – the absence of an admission of guilt and expression of contrition  – to be a factor

weighing in favor of the death penalty permits the jury to punish the defendant for exercising his

right not to admit guilt and go to trial.  To burden a defendant's exercise of his rights under the

Fifth and Sixth Amendments by making that exercise a basis for imposing the death penalty

clearly violates the Constitution.  *United States v. Jackson*, 390 U.S. 570, 582-83 (1968).

This conclusion is entirely consistent with the general sentencing law in the federal

courts.  Insofar as remorse is considered in sentencing, it can, under current law, be the basis for

leniency, but not for *increasing* punishment.  The Second Circuit has clearly held, for example,

that it is error for a court to enhance a defendant's punishment because he did not admit his guilt

and went to trial.  *United States v. Cruz*, 977 F.2d 732, 733-34 (2d Cir. 1992).  And lack of

remorse by itself is not a basis for an upward departure.  *United States v. Whitehead*, 912 F.2d

448, 452 (10th Cir. 1990) (lack of contrition "should not normally be a factor justifying a

departure").[76]  The court may, however, grant leniency for admissions of guilt evidencing sincere

remorse by reducing punishment below the degree that would otherwise be imposed on the basis

of "acceptance of responsibility."  U.S.S.G. § 3E1.1.  *See United States v. Cojab*, 978 F.2d 341,

---

[76]    A defendant's lack of remorse for the commission of prior crimes, for which
he has already been convicted and sentenced, may be considered as part of the basis for
an upward departure based on a defendant's criminal history and his "propensity to
commit future crimes."  *United States v. Whitehead*,  912 F.2d at 452.  That is much
different, however, from considering lack of remorse for commission of the instant
offense.  The "lack of remorse" in the former circumstances consists not in the failure to
express contrition for commission of a crime, but rather in the repeated commission of
similar crimes after having been caught and punished for them in the past.  Utilized
simply as evidence supporting a criminal history departure, this would implicate no Fifth
Amendment rights.

343 (7th Cir. 1992). Thus, remorse, the expression of contrition for the commission of a crime, may be considered in sentencing only as a mitigating factor permitting the reduction of a sentence below the level that would otherwise have been imposed. Its absence may not be considered as a basis for increasing a sentence, much less for imposing the penalty of death. *See Pope v. State*, 441 So.2d 1073, 1078 (Fla. 1984) (because of danger to exercise of constitutional rights, "[a]ny convincing evidence of remorse may properly be considered in mitigation of the sentence, but absence of remorse should not be weighed either as an aggravating factor nor as an enhancement of an aggravating factor").[77]

As has been suggested earlier, this does not mean, of course, that a defendant's remorse plays no role at all in sentencing or that the government may never argue that the defendant lacks remorse. For example, where a court grants a reduction of sentence for "acceptance of responsibility," it may determine the degree of that reduction based on an assessment of the relative level of the defendant's remorse. *United States v. Jones*, 997 F.2d 1475, 1476-1480 (D.C. Cir. 1993) (*reh. en banc*); *United States v. Jacobson*, 15 F.3d 19, 23 (2d Cir. 1994). Similarly, the government may argue that a defendant lacks remorse to counter his claim that his remorse constitutes a factor in mitigation. But, in the circumstances here, the Government may not constitutionally rely on simple lack of remorse to enhance the sentence above its usual level, and it especially may not do so when the enhancement the government seeks is the death penalty. *See Johnson v. Mississippi*, 486 U.S. 578, 585 (1988) (death sentence "cannot be predicated . . .

---

[77] In light of the serious constitutional concerns underlying use of this aggravating factor, it is not surprising that other states prohibit its use as well. *See, e.g.*, *State v. Brown*, 320 N.C. 179, 198-99, 358 S.E.2d 1, 15 (1987); *People v. Thompson*, 45 Cal. 3d 86, 123-24, 753 P.2d 37, 59-60, 246 Cal. Rptr. 245, 267-68 (1988).

on 'factors that are constitutionally impermissible'"), *quoting Zant v. Stephens*, 462 U.S. at 885.

The "lack of remorse" factor also violates the Eighth Amendment because, in a capital

prosecution, there is a "heightened need for reliability," and allowing the jury to place lack of

remorse on the scale in favor of death creates an unacceptable risk that the defendant's sentence

will not be reliably obtained, in violation of the Eighth Amendment.  In *Pope v. State*, *supra*, the

Florida Supreme Court barred evidence of a defendant's lack of remorse as aggravation in a

penalty phase of a capital case to avoid just such "mistaken" sentences.  In doing so, it noted:

> Unfortunately, remorse is an active emotion and its absence,
> therefore, can be measured or inferred only from negative
> evidence.  This invites the sort of mistake which occurred in the
> case now before us – inferring lack of remorse from the exercise of
> constitutional rights.

441 So. 2d at 1078.[78]  In *United States v. Davis*, 912 F.Supp. at 938, the court also found lack of

remorse an unreliable factor:

> Lack of remorse is a subjective state of mind, difficult to gauge
> objectively since behavior and words don't necessarily correlate
> with internal feelings.  In a criminal context, it is particularly
> ambiguous since guilty persons have a constitutional right to be si-
> lent, to rest on a presumption of innocence and to require the
> government to prove guilt beyond a reasonable doubt.

---

[78]    Even in non-capital cases, some state courts preclude evidence of lack of
remorse to enhance a defendant's sentence where the defendant has entered a denial of
guilt.  *See Arizona v. Tinajero*, 935 P.2d 928, 935 (Az. Ct. App. 1997) ("[w]hen a
convicted person maintains his innocence through sentencing, as Tinajero did here, his
failure to acknowledge guilt 'is irrelevant to a sentencing determination' and 'offends the
Fifth Amendment privilege against self-incrimination'")(citation omitted); *People v.
Holguin*, 213 Cal.App.3d 1308, 1319, 262 Cal. Rptr. 331, 337 (1989)(defendant's lack of
remorse may not be used as a sentencing factor where the defendant has denied guilt and
the evidence of guilt is conflicting).

-125-

*Id*. at 946.[79]


Given the constitutional infirmities of this aggravating consideration, the unreliability it

injects into the proceeding, and its duplication of other aggravating factors, it is not surprising

that a number of courts have stricken it from a capital case.  In *United States v. Walker*, 910

F.Supp. 837, 855 (N.D.N.Y. 1995), the court held that highly prejudicial statements that the

government claimed showed lack of remorse, but that were subject to competing inferences,

could not be the basis for an independent aggravating factor because in this context they were

much more prejudicial than probative and because of the "triviality" of the government's

arguments, which would "not bear the weight of being singled out . . . and presented to the jury

as non-statutory aggravating factors."   Finally, in *United States v. Nguyen*, 928 F.Supp. 1525

(DKS 1996), the court denied a motion to strike this aggravator, but cautioned the Government

that its evidence must be "more than mere silence," must be relevant, must be reliable, and "it's

probative value must outweigh any danger of unfair prejudice."  *Id*. at 1542.  The bare allegation

made by the Government in this case cannot meet the standards set by the Constitution or by

these cases, and this court should prohibit use of lack of remorse as an aggravating factor.

     3.     <u>Future danger: A hearing is requested on this issue</u>.

---

[79]  The court permitted the government to show evidence of lack of remorse, other than the defendant's silence, as part of its "future dangerousness" aggravating factor.  912 F.Supp. at 946. However, the Court cautioned that "Threatening words and warped bravado, without affirmative acts, are simply too slippery to weigh as indicators of character; too attenuated to be relevant in deciding life or death; and whatever probative value they might have is far outweighed by the danger of unfair prejudice and confusion of the issues." *Id*. at 945.

Several times in this brief, defendant has pointed out that a bedrock principle of death-penalty jurisprudence is that aggravating factors may not be overly-broad or incapable of even-handed and/or consistent application.  It is another aspect of aggravating factors that they cannot be so generic that they could apply to all murders. Nor may aggravating factors be so vague that they fail to provide the sentencer with adequate guidance as to when the factor is present and when it is not.  *See, e.g., Tuilaepa v. California, supra*, *Arave v. Creech*, *supra*.  In this case the government purports to be able to construe, narrow and define the concept of "future dangerousness" and alleges it will be able to explain and prove that concept to a jury. The term "future dangerousness" is, however, inherently vague and, as well, may be viewed by a jury as applying to *all* murderers.  Thus, a rational jury might conclude that anyone willing to take a life is always potentially a future danger. Under such circumstances, the factor would not perform a constitutional narrowing function.

The notice of aggravating factors in this case alleges, among other things, that Mr. Briseno should be executed because he is a future danger.  In particular, for each murder, the notice alleges:

"The defendant, Juan Briseno, also known as "Tito":

"Is a continuing danger to the lives and safety of other persons and the defendant Juan Briseno is likely to commit criminal acts of violence in the future as evidenced by:

  a)  A low potential for rehabilitation as demonstrated by repeated violent criminal acts;

  b)  A willingness to take human life and a lack of remorse for his acts of violence and attempted acts of violence as demonstrated by

-127-

1763

statements that he made following these violent acts; and

c)      His stated desire to impose a rule requiring fellow members of the

Imperial Gangsters to shoot at rivals on sight."

Moreover, the aggravating factor as presently alleged does not account for the fact that, if

convicted of any of the capital counts in the indictment, but spared the death penalty, Mr. Briseno

will spend the rest of his life in a maximum security federal penitentiary and that this is the

context in which the degree of danger he will present to others must be judged.[80]    In *United*

*States v. Sampson*, 275 F.Supp.2d 49 (D.Mass. 2003), the district court was presented with this

same challenge.  In denying the motion to strike the future-danger factor, the court stated:

> In this case, the government properly seeks to focus the
> jury's inquiry on Sampson's future dangerousness in prison.  If
> Sampson is convicted of either charge in this case and not
> sentenced to death, he will receive a life sentence. . . . .
> Consequently, any future dangerousness inquiry must be limited to
> considering Sampson's potential dangerousness in prison. . . . .
> With this focus, there should be no risk that, as Sampson argues,  a
> jury "might conclude that anyone willing to take a life even once is
> always potentially a future danger."
> *Id.* at 108-09 (citations omitted).[81]

It is a leap of logic to say that there is a provable correlation between "a continued pattern

of violence, lack of remorse, and contemporaneous convictions for multiple murder" and danger

to others in the setting of a federal penitentiary.  Future danger, as a concept, has to do with

---

[80]  Under no circumstances will Mr. Briseno, if convicted of one or more of the
murders, receive less than a life sentence.

[81]  In *United States v. Gilbert, supra*, a case where a nurse at a VA hospital was
charged with killing several of her patients, the district court reviewed the Government's
proffered evidence on future danger, noting first that, "The prosecution concedes that the
jury must evaluate defendant's 'future dangerousness' in the context of life in a prison
setting," 120 F.Supp.2d at 154.

-128-

conduct in prison, not on the street. Thus, the allegations of the notice does not translate to a risk of future dangerousness in prison.

Along these same lines, the idea that "rehabilitation" has anything to do with this case is patently absurd.  If Mr. Briseno is convicted any of the capital crimes of which he is accused, he will certainly go to prison for the remainder of his life.  Whether he will or will not be "rehabilitated" is not germane to the sentencing decision.  This non-statutory sub-factor of future danger should be stricken on that basis alone.

In *Barefoot v. Estelle*, 463 U.S. 880 (1983), the Court reviewed the concept of "future dangerousness" in connection with the Texas death-penalty scheme, a scheme that is unique among the many various schemes adopted by the states with capital punishment statutes.  In Texas, in order to determine whether or not a person should be sentenced to death, a jury is required to answer three questions: (1) whether the homicide was deliberate; (2) whether "there is a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society;" and (3), if there was provocation by the victim, whether the response by the defendant was "unreasonable."  If the jury answers each question in the affirmative, a death verdict is required.  *Barefoot*, 463 U.S. at 884.  It is a far leap in this case from an allegation of "risk of future dangerousness" to "criminal acts of violence that constitute a continuing threat to society" approved in *Barefoot*.

Predictions of future dangerousness are, moreover, notoriously unreliable, even when undertaken by persons supposedly expert at making such determinations.  In this case, the government proffers no expert testimony on the issue but, instead, will rely upon a group of 12 lay persons to decide whether Mr. Briseno will pose a danger in prison.

-129-

1765

Based on the current state of the "science" of predicting future violence, it is doubtful that expert testimony on this subject would survive a *Daubert* challenge. As pointed out in the opening sentences of a law review article on this topic:

> For nearly twenty years we have known that psychiatrists cannot predict whether a person who has committed a violent act will be violent in the future. Neither can lay people. The very best anyone can do is speculate. Even the most scientific examinations based on a thorough examination, diagnosis of mental symptoms, past patterns of behavior, and probalistic assessment are wrong nearly as often as they are right. The most common courtroom predictions – frequently based solely on hypotheticals – are wrong twice as often as they are right. E. Beecher-Monas and E. Garcia-Rill, "Danger at the Edge of Chaos: Predicting Violent Behavior in a Post-*Daubert* World," 24 CARDOZO L.REV. 1845, 145-46 (May 2003) (footnotes omitted).

The article also points out an interesting congruence: generally speaking, experts and lay people and clinicians had few differences of opinion about assessments of dangerousness, "'and that neither had much accuracy.'" *Id.* at 145 n.2, quoting V. L. Wuinsey, et al., *Violent Offenders: Appraising and Managing Risk* 62 (1998). *See also*, J. Monahan, "Violence Risk Assessment: Scientific Validity and Evidentiary Admissibility," 57 WASH. & LEE L.REV. 901 (2000).

In the decades that followed *Barefoot*, concerns about the reliability of such predictions have persisted and grown. Indeed, in 2000, Judge Garza of the Fifth Circuit surveyed the literature and noted that "[t]he scientific community virtually agrees that psychiatric testimony on future dangerousness is, to put it bluntly, unreliable and unscientific." *Flores v. Johnson*, 210 F.3d 456, 463 (5th Cir. 2000) (Garza, J., concurring); *see generally id.* at 462-70. Similar concerns, and additional authorities, were cited in *United States v. Sampson*, 335 F. Supp. 2d 166, 218-23 (D. Mass. 2004). *Sampson* also noted that juries fare no better in accurately

-130-

predicting a defendant's risk of future violence. *Id.* at 222.[82]

Moreover, a growing body of empirical research more than justifies these concerns. A 2004 study, for example, examined 155 Texas capital cases in which experts had predicted the defendant would be a future danger; the error rate was a stunning 95%. *See* Texas Defender Service, "Deadly Speculation: Misleading Texas Capital Juries with False Predictions of Future Dangerousness" (2004);[83] *see also Flores*, 210 F.3d at 463-65 (Garza, J., concurring); *Sampson*, 335 F. Supp. 2d at 219-20, 222.

Even more apt is a 2007 study – the first of federal prisoners convicted of capital crimes and sentenced to life without the possibility of release ("LWOP" in the study). It proves just how flawed such predictions are. *See* Mark D. Cunningham, Thomas J. Reidy, and Jon R. Sorensen, "Assertions of "Future Dangerousness" at Federal Capital Sentencing: Rates and Correlates of Subsequent Prison Misconduct and Violence," 32 LAW AND HUM. BEHAV. 46 (2008). In this study, the researchers used information provided by the Federal Bureau of Prisons about 145 inmates who had been charged with capital murderers and had entered prison under an LWOP sentence between 1991 and 2005. The study documented and compared the rates of violent and potentially violent disciplinary infractions (14 separate categories) for these inmates and others

---

[82] This point was illustrated in *Evans v. Muncy*, 498 U.S. 927 (1990). In his dissent from the denial of a stay of execution, Justice Marshall noted that future danger had been the sole aggravating factor on which the defendant had been sentenced to death. *Id*. at 927. But during Evans' ten years on death row, his behavior had been "exemplary" (*id.* at 929); indeed, during a prison riot in which he played no instigating role, Evans "took decisive steps to calm the riot, saving the lives of several [guard] hostages, and preventing the rape of one of the [hostage] nurses." *Id.* at 928. The "jury's prediction of Evans' future dangerousness," in short, was "clear error"; they "g[o]t it wrong." *Id.* at 929-30.

[83] Available online at http://www.texasdefender.org/DEADLYSP.PDF

-131-

housed in United States penitentiaries (*i.e.*, maximum-security facilities). *See id.*, Table 2 and text at 55-56. As a threshold matter, the rates were similar across the board: "None of the comparisons between the capital LWOP and U.S. Penitentiary inmate groups are statistically significant." *Id.* at 56; *see* Table 2 at 55 and text at 60.

The rates of violence for capital LWOP defendants were startlingly low: just 0.7% for assaults with moderate injuries — an annualized rate of 1.1 such incidents per 1,000 inmates — and no fatalities or assaults with major injuries. *Id.*, Table 3 and text at 55-57, 60. Most notably, the study also compared the rates of violence for (1) the capital LWOP inmates against whom the government had formally alleged future dangerousness as an aggravating factor and (2) those without such an allegation. The result: There were no statistically significant differences between the two groups. *Id.*, Table 3 and text at 57. *In other words, the government's predictions of future dangerousness were utterly unreliable.*

The rates of violence were as low among those inmates as to whom the Government had alleged future dangerousness, just as they were for the larger group of all capital LWOP inmates. For example, only 9.6% of the "future danger" LWOP inmates had been cited for a "serious assault." *See id.*, Table 3 incl. n.(f). This classification included attempted assaults and incidents in which no injury or only minor injury was sustained. *Id.*, at 55-56; 57. And the rates of assaults involving more significant injuries were vanishingly low. Thus, in the 14-year period covered by the study:

- "[J]ust less than one in a hundred ['future danger' LWOP inmates] had perpetrated an assault causing 'moderate' injuries (*i.e.*, injuries requiring treatment at an outside hospital, but not life-threatening)."

-132-

- "None had perpetrated an assault resulting in 'major' (*i.e.*, life-threatening) injury."

- "[N]one . . . had perpetrated a serious assault against staff or killed another inmate."

*Id.*, at 61 (emphasis in original); *see also* Table 3 and text at 55-56, 57. In fact, 28% of these inmates had no disciplinary infractions of any sort. *Id.*, Table 3 and text at 61.

In sum, the 2007 study concluded, "scientific data demonstrate that only a minority of capital offenders perpetrate serious violence in prison, and that it is *not* possible to reliably identify at trial which of these defendants are more likely than not to commit these acts. . . . Quite the contrary, in the face of base rate data, it is only assessments of varying *improbability* of prison violence among these offenders that are reliable." *Id.* at 61 (emphasis in original).

The 2007 study was followed up in 2009 with a study directed specifically at defendants in authorized federal capital cases. The 2009 research casts further significant doubt on the ability of federal juries to make accurate predictions that a capital defendant will pose a future danger. *See*, M. Cunningham, J. Sorensen, T. Reidy, "Capital Jury Decision-Making: The Limitations of Predictions of Future Violence," 15 PSYCHOLOGY, PUBLIC POLICY AND LAW 223 (2009). The study concludes that jurors were wrong 90% of the time when they predicted that a capital defendant – whether sentenced to death or life imprisonment – would later commit a serious act of violence. A "serious act of violence" was defined, using BOP criteria, as an act having the potential for serious injury requiring outside hospitalization. By contrast, jury predictions that a defendant would *not* pose a future danger were correct more than 93% of the time.

These findings are particularly alarming since, as reported in the study, a finding of

-133-

future-danger was present in 80% of cases where juries imposed a sentence of death. Thus, although a finding of future danger is highly correlated with a death sentence, the findings of future-danger are marked by extraordinarily high error rates.

Other key findings of the 2009 study, and the prior studies it incorporates and builds on, are as follows:

- Rates of prison assaults that result in death or serious injury are very low even among inmates with long criminal histories and convictions for violent felonies;

- Anti-social personality characteristics are not predictive of prison violence;

- The overwhelming majority of capital offenders – whether sentenced to life or death – never commit an act of serious violence in prison;

- Fewer than one percent of federal capital offenders have ever perpetrated an assault on another inmate resulting in a hospital admission;

- No federal capital offender has committed an act of serious violence directed at a staff member;

- Other studies of capital offenders reveal a homicide prevalence rate of from .02% (one-fifth of one percent) to 1.0%;

- There is no correlation between violence in prison and the nature of the street crime, the length of sentence imposed (including LWOR);

- Modern prison capabilities – such as "super-max" facilities – allow for conditions of confinement that render "the probability of serious assaultive misconduct negligible.

If, then, as the literature uniformly suggests, neither professionals nor lay people "get it right" when it comes to an assessment of future dangerousness, a sentence of death predicated on a finding of future danger would be the product of what amounts to little more than a guessing game. Indeed, it is a guessing game where the jury guesses wrong in the overwhelming number of cases and it is a guessing game with deadly consequences given the high correlation between a

-134-

finding of future danger and sentences of death. Accordingly, unless the government is prepared to demonstrate at a hearing, or otherwise, that a jury of lay persons is capable of accurately distinguishing those defendants convicted of capital murder who present a future danger from those who do not, this court should strike the factor from the notice and bar the government from endeavoring to prove future dangerousness.[84]

4. Victim-impact evidence.

(a) The factor, as alleged, is unconstitutionally vague, lacks specifics, and is broader than permitted by statute.

For each murder, the notice alleges, as a non-statutory aggravating factor, that the defendant "caused injury, harm, and loss to the victim and the victim's family and friends, as evidenced by the victim's personal characteristics and the impact of his death upon the victim's family and friends." The FDPA, however, limits the permissible scope of victim-impact evidence to "the effect of the offense on the victim and the victim's family . . . ." 18 U.S.C. § 3593(a). Thus, as a matter of law, this court must initially limit the possible scope of such evidence to that which Congress determined was appropriate.

Because of the overwhelmingly prejudicial impact of this evidence, courts must be vigilant to ensure that victim impact evidence stays within constitutionally permissible bounds. Several courts have found generic language, as in the case here, inadequate because it does nothing to guide the defendant's penalty phase preparation or assist the court in performing the crucial task of limiting the scope of victim impact evidence or determining if it is indeed "aggravating." For example, in *Glover*, the court found inadequate a notice which alleged as

_____

[84] *See* the extensive discussion of this issue, including the instructions provided to the jury, in *United States v. Sampson*, 335 F.Supp.2d at 217-228.

-135-

victim impact that the defendant caused "serious physical and emotional injury to Christy Lewis" and "permanent harm to the family of John Brewer." 43 F. Supp. 2d at 1224. As to the "impact upon the family" allegation, the court wrote:

> [T]he defendant is entitled to greater specificity regarding this factor, to wit, which members of the family have suffered, the nature of their suffering, and the nature of the 'permanent harm.' For example, whether members of the family sought counseling or other medical treatment, such as hospitalization, and whether and to what extent members of the family suffered financial harm, are relevant considerations in discerning whether this factor is indeed 'aggravating' in this case. *Id.* S*ee also United States v. Rodriguez*, 380 F. Supp. 2d 1041, 1058 (DND 2005) (Requests for information concerning the nature of the evidence the government intends to rely upon to prove the non-statutory aggravating factor regarding victim impact, and for " an outline of the proposed victim impact evidence from each witness" were "justified to fulfill Defendant's objective of meaningful notice to adequately prepare a defense and meet the allegations against him.")

In *United States v. Llera Plaza*, 179 F. Supp. 2d at 475, the Court noted:

> "The government suggests no reason why, in this case, it would be unable to produce a summary of its victim impact evidence similar to the ones required by [other] courts. Therefore, in order to allow the defendants to adequately prepare responses to sentencing phase evidence, and in order to allow the court to determine if a pre-sentencing hearing will be necessary to review that evidence, the government will be ordered to submit an outline of its proposed victim impact evidence."*See also, United States v. Bin Laden*, 126 F. Supp. 2d 290, 304 (S.D.N.Y. 2001) ("[a]n oblique reference to victims' 'injury, harm, and loss,' without more, does nothing to guide Defendants' vital task of preparing for the penalty phase of trial"); *United States v. Cooper*, 91 F. Supp. 2d 90, 111 (DDC. 2000) (requiring government to amend notice "to include more specific information concerning the extent and scope of the injuries and loss suffered by each victim, his or her family members, and other relevant individuals, and as to each victim's 'personal characteristics' that the government intends to prove").

-136-

This court should require the government to present a summary or outline of its proposed victim-impact evidence.

> (b)      The victim impact non-statutory aggravating factor is alleged in nearly every capital prosecution and does not sufficiently narrow the class of murderers for whom the death penalty is available.

In addition, the factor, as charged, must be dismissed because it does not meet the statutory criteria for a non-statutory aggravating factor – that it be an "aggravating" circumstance "other" than the crime itself and the remaining aggravating circumstances.  18 U.S.C. § 3592© (jury may find "any other aggravating factor for which notice has been given" (emphasis supplied)).  All that this alleged aggravating factor cites is that there was "injury, harm, and loss to [the victim's] family." But every murder of a family member undeniably causes "injury, harm, and loss" to the victim's family, and that harm is in every case irreparable, since a death has occurred.  *But see*, *Jones v. United States*, 428 U.S. 262 (1999).  The factor thus fails to "channel the sentencer's discretion by 'clear and objective' standards that provide 'specific and detailed guidance," and that 'make rationally reviewable the process of imposing a sentence for death.'" *Lewis v. Jeffers*, 497 U.S. 764, 774 (1990) (quoting *Godfrey v. Georgia*, 446 U.S. 420, 428 (1980)).

It should be noted that *Payne v. Tennessee*, 501 U.S. 808 (1991) did not consider the circumstances under which the use of "victim impact" evidence as an independent factor aggravating a murder and counted separately in a weighing statute, is permissible.  If the harm shown by victim impact evidence is nothing more and nothing less than the harm implicit in any murder, it violates the Eighth Amendment, as well as the statute, to permit the jury to weigh it in deciding whether to impose the death penalty.

<center>-137-</center>

(c)     *The victim impact evidence should be excluded under the Eighth Amendment's heightened standard of reliability and under 18 U.S.C. § 3593.*

As noted by the Court in *United States v. Fell*, *supra*, 372 F.Supp.2d at 763,

> [A]n aggravating factor must meet the "heightened standard of reliability" the Supreme Court has required in death penalty cases. . . . Thus an aggravating factor is invalid if it cannot be established by reliable evidence. . . .  Similarly, any aggravating factor should be excluded if it is based on evidence whose probative value is outweighed by the danger of unfair prejudice to the defendant, confusion of the issues, or a likelihood that the jury will be misled. See 18 U.S.C. § 3593 ©.

*Id*. at 763 (citations omitted).

The overwhelmingly prejudicial impact of victim impact evidence was noted by Chief Judge Bennett in *United States v. Johnson*, 362 F. Supp. 2d 1043, 1107 (NDIA 2005):

> "I can say, without hesitation, that the 'victim impact' testimony presented in [the co-defendant's] trial was the most forceful, emotionally powerful, and emotionally draining evidence that I have heard in any kind of proceeding in any case, civil or criminal, in my entire career as a practicing attorney and federal judge spanning nearly 30 years. Indeed, I cannot help but wonder if *Payne v. Tennessee*, 501 U.S. 808, 111 S.Ct. 2597, 115 L.Ed.2d 720 (1991), which held that victim impact evidence is legitimate information for a jury to hear to determine the proper punishment for capital murder, would have been decided the same way if the Supreme Court Justices in the majority had ever sat as trial court judges in a federal death penalty case and had observed first hand, rather than through review of a cold record, the unsurpassed emotional power of victim impact testimony on a jury. It has now been over four months since I heard this testimony in the Honken trial and the juror's sobbing during the victim impact testimony still rings in my ears.
>
>       This is true even though the federal prosecutors in Honken used admirable restraint in terms of the scope, amount, and length of victim impact testimony. To pretend that such evidence is not potentially unfairly prejudicial on issues to which it has little or no probative value is simply not realistic, even if the court were to give a careful limiting instruction. Rather, such potent, emotional evidence is a quintessential example of information likely to cause

-138-

1774

a jury to make a determination on an unrelated issue on the
improper basis of inflamed emotion and bias-sympathetic or
antipathetic, depending on whether one is considering the
defendant or the victims' families."

362 F. Supp. 2d at 1107 [85]

Dissenting from the denial of *certiorari* in a California case, Justice Breyer emphasized

the dangers of unfair prejudice associated with victim-impact evidence:

"In the years since *Payne* was decided, this Court has left state and federal
courts unguided in their efforts to police the hazy boundaries between
permissible victim impact evidence and its impermissible, "unduly
prejudicial" forms. Following *Payne*'s model, lower courts throughout the
country have largely failed to place clear limits on the scope, quantity, or
kind of victim impact evidence capital juries are permitted to consider. See
generally Logan, Through the Past Darkly: A Survey of the Uses and
Abuses of Victim Impact Evidence in Capital Trials, 41 Ariz. L. Rev. 143

---

[85]    See also, e.g., Bryan Myers & Edith Greene, "The Prejudicial Nature of Victim
Impact Statements," 10 PSYCHOL. PUB. POL'Y & L. 492 (2004) (exploring the extent to
which victim impact statements are prejudicial to death sentence determinations); Niru
Shanker, "Getting a Grip on Payne and Restricting the Influence of Victim Impact
Statements in Capital Sentencing: The Timothy McVeigh Case and Various State
Approaches Compared," 26 HASTINGS CONST. L.Q. 711, 740 (1999) ("Thanks in part to
poorly articulated parameters in *Payne v. Tennessee*, 501 U.S. 808, 111 S.Ct. 2597, 115
L.Ed.2d 720 (1991), victim impact testimony in capital sentencing walks a fine line
between allowing particularized attention to the damage caused by the crime on the one
hand, and leaving the jury to be inundated with prejudicial outpourings irrelevant to the
defendant's guilt on the other."); Wayne A. Logan, "Through the Past Darkly: A Survey
of the Uses and Abuses of Victim Impact Evidence in Capital Trials," 41 ARIZ. L. REV.
143, 145 (1999) ("The state of the law seven years since *Payne* establishes ⋯ [that] many
of the worst fears imagined in the wake of *Payne* have been realized. Highly prejudicial
victim impact evidence is now routinely before capital juries, with precious little in the
way of substantive limits, procedural controls, or guidance in how it is to be used in
assessing the 'deathworthiness' of defendants."); Amy K. Jacques, "Thou Shalt Not Kill
Any Nice People: The Problem of Victim Impact Statements in Capital Sentencing," 35
AM. CRIM. L. REV. 93, 101-113 (1997) (arguing that capital juries have a tendency to
consider improper factors in sentencing, even in the absence of victim impact statements,
so that victim impact statements exaggerate the extent to which improper factors
influence capital sentencings).

-139-

(1999). Not only have courts allowed capital sentencing juries to hear brief oral or written testimony from close family members regarding victims and the direct impact of their deaths; they have also allowed testimony from friends, neighbors, and co-workers in the form of poems, photographs, hand-crafted items, and -- as occurred  [**567]  in these cases -- multimedia video presentations". See Blume, Ten Years of *Payne:* Victim Impact Evidence in Capital Cases, <u>88 Cornell L. Rev. 257, 271-272 (2003)</u> (collecting cases).

*Kelly v. California,*, 555 U.S. 1020 (2008), dissent from certiorari denial by Stevens, Breyer and Souter, JJ.

If this case is to produce a verdict premised on reason and justice, versus anger and revenge, the scope of victim-impact evidence must, at a minimum, be monitored with extreme care and caution.  Defendant urges that the court exclude it *in toto*.

### E.    Conclusion

For the reasons expressed above, and applying the legal principles discussed, the challenged aggravating factors must be dismissed.  Alternatively, further particularization is necessary.

<u>POINT SEVEN</u>:    THIS COURT SHOULD DECLARE THE DEATH PENALTY UNCONSTITUTIONAL AS CRUEL AND UNUSUAL PUNISHMENT AND A *PER SE* DENIAL OF DUE PROCESS IN ALL CASES.

Mr. Briseno recognizes, as he must, that a majority of the United States Supreme Court accepts the proposition that the death penalty, under some circumstances, is constitutional.  This may remain the rule of law in this nation for many years.  Nevertheless, he argues that the death penalty is unconstitutional in all cases, and as applied to him, for the following reasons: (1) the death penalty is racist to its very core; (2) the death penalty has in the past, and inevitably will in the future, lead to the execution of innocent people; (3) the process by which individuals are selected for capital prosecution vests an unacceptable level of unreviewable discretion in

prosecuting authorities, producing irreconcilable inconsistencies; (4) there is no principled basis

for distinguishing between defendants who are sentenced to death from defendants who are not;

and (5), evolving standards of decency have reached the point where this court can declare that

the death penalty is no longer consistent with the values embodied in the Eighth Amendment.  In

*Atkins v. Virginia*, 536 U.S. 304 (death penalty unconstitutional as applied to the mentally-

retarded), the Court reiterated its authority to review the constitutionality of the death penalty in

light of  "'the evolving standards of decency that mark the progress of a maturing society.'"

*Atkins*, 536 U.S. at 311-12, *quoting Trop v. Dulles*, 356 U.S. 86, 100-101 (1958); *see also*, *Roper*

*v. Simmons*, 543 U.S. 551 (death-penalty unconstitutional as applied to juveniles under age 18).

In *Callins v. Collins*, *supra*, the late Justice Blackmun, four months prior to his retirement

from the Court, dissented from the denial of *certiorari* in a Texas death-penalty case and

expressed at great length why his 20 years of experience on the Supreme Court had convinced

him that this nation's death penalty schemes – even if theoretically permissible and constitutional

– were, in practice and reality, incapable of fair and even-handed application and therefore retain

many of the arbitrary and capricious features, including race, ostensibly struck down in *Furman*

and "corrected" by *Gregg* and its progeny. Justice Blackmun stated:

> From this day forward, I no longer shall tinker with the machinery of death.  For more than 20 years I have endeavored – indeed, I have struggled – along with a majority of this Court, to develop procedural and substantive rules that would lend more than the appearance of fairness to the death penalty endeavor. Rather than continue to coddle the Court's delusion that the desired level of fairness has been achieved, I feel morally  and intellectually obligated simply to conclude that the death penalty experiment has failed.  It is virtually self-evident to me now that no combination of procedural rules or substantive regulations ever can save the death penalty from its inherent constitutional deficiencies. The basic question – does the system accurately and consistently

-141-

determine which defendants "deserve" to die? – cannot be answered in the affirmative.   It is not simply that the Court has allowed vague aggravating circumstances to be employed [citation omitted], relevant mitigating evidence to be disregarded [citation omitted], and vital judicial review to be blocked [citation omitted]. The problem is that the inevitability of factual, legal, and moral error gives us a system that we know must wrongly kill some defendants, a system that fails to deliver the fair, consistent, and reliable sentences of death required by the Constitution.

510 U.S. at 1145-46.

In a 1995 *en banc* opinion from the Third Circuit, reviewing sentences of death imposed

in Delaware, Circuit Judge Lewis, joined by Circuit Judges Mansmann and McKee, expressed

agreement with Justice Blackmun's conclusions:

> Although I have concluded that the errors in both trials were not harmless and would, accordingly, reverse the death sentences as to both Bailey and Flamer and remand for reweighing, the tortuous analytical route it has taken both the majority and me to set out our respective views in these cases compels me to add that I believe they perfectly illustrate –  perhaps epitomize –  why, in the words of Justice Blackmun, we should "no longer tinker with the machinery of death." See Callins v. Collins, 127 L. Ed. 2d 435, 114 S. Ct. 1127 (Blackmun, J., dissenting).

> To be sure, Justice Blackmun was correct. I realize that I sit on a court charged with the responsibility of applying the law as it is interpreted by the Supreme Court, and in circumstances such as these, by the highest court of a state. That is precisely what the majority and I have sought to do, despite our disagreement. But there are times when it  becomes appropriate for a judge to reflect upon the law that he or she is called upon to apply, and to express views, genuine and unfeigned, that reveal a sincere and earnest belief. And in doing so here, I can only say that more than any I have seen, these cases exemplify the extent to which death penalty jurisprudence has become so complex and theoretically abstract that the only way to try to understand the reasons for and impact of its many subtle distinctions is to resort to carefully crafted hypotheticals. Something is terribly wrong when a body of law upon which we rely to determine who lives and who dies can no longer, in reality, reasonably and logically be comprehended and

-142-

applied; when, in examining a statutory scheme and analyzing instructions and interrogatories, we are left to reach conclusions by piling nuance upon nuance; when we cannot even agree upon the appropriate standard of review in cases in which lives hang in the balance. Yet this is how cluttered and confusing our nation's effort to exact the ultimate punishment has become. This cannot be what certain fundamental principles of liberty and due process embodied in our Constitution, principles upon which I need not elaborate here, are all about.

It does not dilute my profound respect for the highest court in the land, an admiration and honor that knows no bounds, to voice an apprehension, sincerely felt, that much more guidance in this serious moral dilemma must be forthcoming. Elusive and complicated distinctions, replete with incomprehensible subtleties of the highest order, must not be the talisman that decides whether one should live or die. Until this guidance is forthcoming, the plaintive voice of Justice Blackmun, truly crying in the wilderness, should continue to haunt and remind us that "the desired level of fairness has [not] been achieved."

*Flamer v. Delaware,* 68 F.3d 736, 772 (3d Cir. 1995) (*en banc*) (Lewis, Cir. J., dissenting).

This Court should declare the federal death penalty unconstitutional.

<u>CONCLUSION</u>

For the reasons set forth above, the relief requested should be granted.

**Respectfully submitted:**

/s/ *Arlington Foley*
_____

Arlington Foley /#6905-45
Attorney For Defendant
1942 North Main Street
Crown Point, IN 46307
PH: 219.661.1200
FX: 219.661.1205

/s/ *John Maksimovich*
_____

John Maksimovich /#9950-45
Attorney For Defendant
1946 North Main Street
Crown Point, IN 46307
PH: 219.663.1900
FX: 219.663.1908

-143-

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
## HAMMOND DIVISION

UNITED STATES OF AMERICA,

      **Plaintiff**

**vs**

**JUAN BRISENO,**

      **Defendant**　　　　　　　　　**CAUSE NO:　2:11-CR-77**

## CERTIFICATE OF SERVICE

      The undersigned hereby certifies that on this date all parties to this matter have been served via ECF and that a copy of the CD referenced in the motions has been sent to the government via overnight delivery.

Dated: August 22, 2014

   **Respectfully submitted:**

/s/ *Arlington Foley*               /s/ *John Maksimovich*

Arlington Foley /#6905-45          John Maksimovich /#9950-45
Attorney For Defendant             Attorney For Defendant
1942 North Main Street             1946 North Main Street
Crown Point, IN 46307            Crown Point, IN 46307
PH: 219.661.1200                PH: 219.663.1900
FX: 219.661.1205                FX: 219.663.1908

<div style="text-align:center">

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

</div>

**UNITED STATES OF AMERICA,**

          **Plaintiff**

**vs**

**JUAN BRISENO,**

        **Defendant**             **CAUSE NO:    2:11-CR-77**

<div style="text-align:center">

# APPENDIX

</div>

Case: 15-2347   Document: 35   Filed: 07/27/2016   Pages: 4186

**TABLE OF CONTENTS**

1.  Struck by Lightning: The Continuing Arbitrariness
    of the Death Penalty Thirty-Five Years After Its Re-instatement in 1976.. . . . . . . . . . . . . 1

2.  Declaration of Kevin Mcnally Regarding the
    Frequency of Federal Death Sentences. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

3.  Declaration of Kevin Mcnally Regarding the Geographic Location of
    Cases, the Frequency of Federal Death Sentences and the Race of Defendants. . . . . . . . 44

4.  Penalty Phase Jury Instructions: United States v. Khalid Barnes
    Cause Number S9 04 Cr. 186 (SCR), United States District Court,
    Southern District of New York. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 52

5.  Death Penalty Information Center, Facts About the Death Penalty.. . . . . . . . . . . . . . . . 102

# Struck by Lightning:

## The Continuing Arbitrariness of the Death Penalty

## Thirty-Five Years After Its Re-instatement in 1976

## A Report of the Death Penalty Information Center



# Struck by Lightning:

## The Continuing Arbitrariness of the Death Penalty Thirty-Five Years After Its Re-instatement in 1976

**A Report of the Death Penalty Information Center**

**by Richard C. Dieter, Executive Director**

**Washington, DC**
**July 2011**

**www.deathpenaltyinfo.org**

# Struck by Lightning:
# The Continuing Arbitrariness of the Death Penalty Thirty-Five Years After Its Re-instatement in 1976

**A Report of the Death Penalty Information Center
by Richard C. Dieter, Executive Director**

**July 2011**

---

*These death sentences are cruel and unusual in the same way that being struck by lightning is cruel and unusual.*
  **-Justice Potter Stewart (1972)**

*Rather than continue to coddle the Court's delusion that the desired level of fairness has been achieved and the need for regulation eviscerated, I feel morally and intellectually obligated to concede that the death penalty experiment has failed.*
  **-Justice Harry Blackmun (1994)**

*Two decades after* Gregg, *it is apparent that the efforts to forge a fair capital punishment jurisprudence have failed.  Today, administration of the death penalty, far from being fair and consistent, is instead a haphazard maze of unfair practices with no internal consistency.*
  **-American Bar Association (1997)**

*We now have decades of experience with death-penalty systems modeled on [the Model Penal Code]. . . . Unless we are confident we can recommend procedures that would meet the most important of the concerns, the Institute should not play a further role in legitimating capital punishment, no matter how unintentionally, by retaining the section in the Model Penal Code.*
  **-American Law Institute (The motion to withdraw this section of the Code was passed in 2009.)**

*I have concluded that our system of imposing the death penalty is inherently flawed. The evidence presented to me by former prosecutors and judges with decades of experience in the criminal justice system has convinced me that it is impossible to devise a system that is consistent, that is free of discrimination on the basis of race, geography or economic circumstance, and that always gets it right.*
  **-Gov. Pat Quinn of Illinois (signing bill abolishing the death penalty, 2011)**

---

# Executive Summary

The United States Supreme Court approved the re-instatement of the death penalty 35 years ago on July 2, 1976.  Although the death penalty had earlier been held unconstitutional because of its arbitrary and unpredictable application, the Court was willing to sanction new systems that states had proposed to make capital punishment less like "being struck by lightning" and more like retribution for only the "worst of the worst" offenders.  The Court also deferred to the states' judgment that the death penalty served the goals of retribution and deterrence.

After three and a half decades of experience under these revised statutes, the randomness of the system continues.  Many of the country's constitutional experts and prominent legal organizations have concluded that effective reform is impossible and the practice should be halted.  In polls, jury verdicts and state legislative action, there is evidence of the American people's growing frustration with the death penalty.  A majority of the nine Justices who served on the Supreme Court in 1976 when the death penalty was approved eventually concluded the experiment had failed.

Four states have abolished the death penalty in the past four years, and nationwide executions and death sentences have been cut in half since 2000. A review of state death penalty practices exposes a system in which an unpredictable few cases result in executions from among thousands of eligible cases.  Race, geography and the size of a county's budget play a major role in who receives the ultimate punishment.  Many cases thought to embody the worst crimes and defendants are overturned on appeal and then assessed very differently the second time around at retrial.  Even these reversals depend significantly on the quality of the lawyers assigned and on who appointed the appellate judges reviewing the cases.  In such a haphazard process, the rationales of deterrence and retribution make little sense.

In 1976, the newly reformed death penalty was allowed to resume.  However, it has proved unworkable in practice.  Keeping it in place, or attempting still more reform, would be enormously expensive, with little chance of improvement.  The constitution requires fairness not just in lofty words, but also in daily practice.  On that score, the death penalty has missed the mark.

# I. Introduction: History of the Modern Death Penalty

The only lengthy, nationwide suspension of the death penalty in U.S. history officially began in 1972 when the U.S. Supreme Court held in *Furman v. Georgia*[1] that the death penalty was being administered in an arbitrary and capricious manner that amounted to cruel and unusual punishment. As in Georgia, the statutes of other states and the federal government provided no guidance to the jury empaneled to decide between sentences of life and death. The death penalty ground to a halt as states formulated revised laws they hoped would win the Court's approval.

Executions had stopped in 1967 as lower courts anticipated a High Court ruling on the constitutionality of capital punishment. Insights from the civil rights movement of the 1960s led many to believe the death penalty was so linked to the practice of racial discrimination that it would no longer be constitutionally acceptable. When the Supreme Court reviewed the practice of capital punishment, it focused primarily on arbitrariness in its application rather than on racial discrimination. Nevertheless, as Justice William O. Douglas warned in his concurring opinion in *Furman*, the questions of arbitrariness and discrimination are closely linked.[2]

For a pivotal set of Justices, the death penalty was unconstitutional because it was "so wantonly and so freakishly imposed."[3] Justice Potter Stewart said the death penalty was "cruel and unusual in the same way that being struck by lightning is cruel and unusual."[4] Justice Byron White echoed that sentiment when he said he could not uphold a punishment where "there is no meaningful basis for distinguishing the few cases in which it is imposed from the many cases in which it is not."[5]

The Justices left for another day the question of whether the death penalty itself was constitutional, leaving the door open to the enactment of more limited death penalty statutes that provided detailed guidance for juries. After *Furman*, many states re-wrote their death penalty laws and began sentencing people to death—although no executions would be carried out until the Court again addressed the issue.

It did so in 1976, approving the new laws of Georgia, Florida and Texas, while rejecting the approach taken by North Carolina and Louisiana, which required all those convicted of certain murders to be sentenced to death, without regard to individual sentencing considerations.[6] The death penalty itself was declared constitutional under the assumption that it fit the rationales of retribution and deterrence. The Court said that being sentenced to death would no longer be random because the new statutes sufficiently restricted and guided the decision-making of prosecutors, judges, and juries—at least in theory. Whether these new laws would be less arbitrary in practice remained to be seen.

## Decades of Experiment

By now thirty-five years have passed, providing ample experience to assess whether this system reliably selects the worst offenders and the most heinous crimes to merit the most severe punishment. This experience also provides an opportunity to judge whether the death penalty's twin rationales—retribution and deterrence—sufficiently justify its continued use, or whether it has devolved into the "pointless and needless extinction of life"[7] forbidden by the Eighth Amendment.

Case 2:11-cr-00077-PPS-APR Document 1027-1 Filed 08/22/14 Page 8 of 107
Case 15-2347 Document 35 Filed 07/27/2016 Pages: 4186
**Struck by Lightning, p.4**



**Timeline of the Death Penalty 1976-2011**

Concerns about the death penalty before the Court's approval of new laws in 1976 stemmed not only from the lack of guidance for jurors making crucial choices between life and death sentences. The death penalty was also rarely carried out, giving rise to doubts about its consistent application. In a country with only a handful of executions each year,[8] it was not at all clear that the few executed were the "worst of the worst." Justice Brennan, concurring with the majority in *Furman*, wrote, "When the punishment of death is inflicted in a trivial number of the cases in which it is legally available, the conclusion is virtually inescapable that it is being inflicted arbitrarily. Indeed, it smacks of little more than a lottery system."[9]

The death penalty is again in decline across the country. The number of death sentences and executions has decreased sharply in the past decade. Since 2007 four states have abandoned the death penalty. Even in the 34 states that retain it, an execution is a rare event in all but a handful of states. Less than one in a hundred murders results in a death sentence, and far fewer defendants are executed. Does the one murderer in a hundred who receives a death sentence clearly merit execution more than all, or even most, of the 99 other offenders who remain in prison for life? Or do arbitrary factors continue to determine who lives and who dies under our death penalty laws?



## II. Thirty-five Years Later: The Unfairness of the Death Penalty in Practice

The death penalty system in this country is demonstrably highly selective in meting out sentences and executions, and becoming more so.  There are approximately 15,000 murders a year; in 2010, there were 46 executions, a ratio of 1 execution for every 326 murders.  The number of murders in the U.S. barely changed from 1999 to 2009,[10] but the number of death sentences declined by 60% during that period.  Studies of the death penalty in several states since 1976 reveal a system that sweeps broadly through thousands of eligible cases but ends up condemning to death only a small number, with little rational explanation for the disparity.

- In **New Mexico**, during a 28-year span, 211 capital cases were filed. About half the cases resulted in a plea bargain for a sentence less than death.  Another half went to trial, and 15 people were sentenced to death.  In the end, only one person was executed (after dropping his appeals), and two people were left on death row when the state abolished the death penalty in 2009.[11]

Case: 15-2347    Document: 35    Filed: 07/27/2016    Pages: 4186
Case 2:11-cr-00077-PPS-APR   Document 1027-1   Filed 08/22/14   Page 10 of 107

**Struck by Lightning, p.6**

- In **Maryland**, over a 21-year period from 1978 to 1999, 1,227 homicides were identified as death-eligible cases. Prosecutors filed a death notice in 162 cases. Fifty-six cases resulted in a death judgment, although it has become clear the vast majority of those will never be carried out. As of 2011, five defendants have been executed, and only five remain on death row. There have been no executions since 2005.[12]

- In **Washington,** from 1981 to 2006, 254 cases were identified as death-eligible. Death notices were filed in 79, and death sentences were imposed in 30. Of the cases that completed the appeals process, 83% were reversed. Four executions took place, with three of the four defendants having waived their remaining appeals.[13]

- In **Kentucky**, from 1979 to 2009, there were 92 death sentences. Of the 50 cases that completed their appeals, 42 sentences (84%) were reversed. Three inmates were executed, including 2 who waived their appeals.[14]

Patterns in other states are similar. In Oregon, 795 cases were deemed eligible for the death penalty after its reinstatement in 1984; two people have been executed—both "volunteers."[15] Nationally, only about 15% of those sentenced to death since 1976 have been executed. Under the federal death penalty, from a pool of over 2,500 cases submitted by U.S. Attorneys, the Attorney General has authorized seeking the death penalty in 472 cases; 270 defendants went to trial, resulting in 68 death sentences and 3 executions to date.[16]

The theory behind winnowing from the many defendants who are eligible for the death penalty down to the few who are executed is that the system is selecting the "worst of the worst" for execution. The Supreme Court recently underscored this theory in a 2008 decision restricting the death penalty: "[C]apital punishment must 'be limited to those offenders who commit "a narrow category of the most serious crimes" and whose extreme culpability makes them "the most deserving of execution.""'[17]

However, the notion that tens of thousands of eligible cases are carefully narrowed down to the worst ones does not withstand scrutiny. Many factors determine who is ultimately executed in the U.S.; often the severity of the crime and the culpability of the defendant fade from consideration as other arbitrary factors determine who lives and who dies.

## The System of Selection

*The system is too fraught with variables to survive. Whether or not one receives the death penalty depends upon the discretion of the prosecutor who initiates the proceeding, the competence of counsel who represents the defendant, the race of the victim, the race of the defendant, the make-up of the jury, the attitude of the judge, and the attitude and make-up of the appellate courts that review the verdict.*

**-Judge H. Lee Sarokin, U.S. Court of Appeals, Third Circuit (ret.)**

Case: 15-2347    Document: 35    Filed: 07/27/2016    Pages: 4186
Case 2:11-cr-00077-PPS-APR    Document 1027-1    Filed 08/22/14    Page 118 of 107

**Struck by Lightning, p.7**

Does the framework of guided discretion approved by the Supreme Court in 1976 achieve the goal of making the death penalty predictable and limited to the most heinous cases?  On a national level, the answer clearly is "No."  The system was never designed to punish the worst offenders across the country.  Some states have the death penalty and others do not.  Many states that have the death penalty hardly ever use it, even for their worst offenders.  Excluding Texas, Virginia and Oklahoma, the rest of the country has averaged far less than one execution per state per year since the death penalty was reinstated, even when only states with a death penalty are counted.

## Local Choices

Although disparities among the states in using the death penalty are allowable under the constitution, the overall justifications of retribution and deterrence become far less credible when the punishment is applied so rarely and so unevenly.  However, wide disparities in the use of the death penalty *within* a single state also raise serious questions about equality under law.  Jurisdictions like Harris County (Houston), Maricopa County (Phoenix), and Philadelphia have produced hundreds of death sentences, while other counties within the same state have few or no death sentences.[18]  In almost all states, the decision to seek the death penalty is not made by a central state entity that evaluates the relative severity of committed homicides; rather, the charging decision is left to the discretion of the district attorney of each county.  Prosecutors differ widely on what they consider to be the worst cases, and even on whether the death penalty should be sought at all.  A defendant's chances of being sentenced to death may vary greatly depending on which side of the county line he committed a murder.

## Jury Discretion and Understanding

Following the decision to seek death by the local prosecutor, the next critical stage for choosing between life and death occurs at the sentencing phase of the trial, where typically a jury decides a convicted defendant's fate.  An individual juror, however, has no way of comparing the case under consideration with other cases in the state.  For most jurors, this will be the only capital case they will ever decide. Strong emotions can easily take over as they inspect 8-by-10 glossies of the victims at the crime scene or hear heart-breaking testimony from the victim's family.  Some defendants will be spared and others condemned, but in the absence of evidence of more egregious cases, most murders can be made to look like one of the worst.

Another difficulty jurors face is that to make their sentencing decision they are given vague instructions with legal terms they do not fully understand.  (See, e.g., an excerpt from an Ohio jury instruction in a capital case in the endnote below.[19])  Although the language may be clear to lawyers and judges, numerous studies have documented the misunderstandings that jurors have about their instructions in death penalty cases.[20]

## Uneven Appellate Review

At the third key stage of the judicial process—appellate review by the state's highest court—there could be an opportunity, called "proportionality review," to compare a death sentence with sentences given for similar crimes in the state.  However, the practice has largely been abandoned, even where it was attempted.

In 1976 the U.S. Supreme Court in *Gregg v. Georgia* approved Georgia's

Case: 15-2347   Document: 35         Filed: 07/27/2016   Pages: 4186
Case 2:11-cr-00077-PPS-APR   Document 1027-1   Filed 08/22/14   Page 12 of 107
**Struck by Lightning, p.8**

statute, referring favorably to the provision on proportionality review. However, in 1984, in *Pulley v. Harris*,[21] the U.S. Supreme Court rejected the principle that every state was required to systematically review whether a given death sentence was justified when compared to similar offenses in the state. Proportionality review in almost all states is now, if it occurs at all, a perfunctory process, allowing a death sentence if death sentences were given in one or more similar cases, but ignoring the vast majority of similar cases which resulted in life sentences.[22] Once a death sentence has been upheld for a particular factual scenario, a death sentence in a subsequent similar crime will not be deemed disproportionate. This process results only in a lowest common denominator for a death sentence, not a search for the worst of the worst.

Thus, in our death penalty system thousands of cases go through the initial stages of prosecution and sentencing with the public assuming that the relative few that emerge are the ones most deserving of death. Appellate review, however, in both state and federal courts, then finds that prejudicial mistakes were made in two-thirds of these cases, resulting in the death sentences being overturned.[23] The stated reasons for these reversals often have nothing directly to do with the proportionality of the sentence to the crime. Cases are overturned because defense lawyers failed to perform their professional duties at trial, prosecutors withheld exculpatory evidence, or the jury was improperly selected, among many reasons. When these cases are retried (or reconsidered by the prosecution), the judgment most often changes to a life sentence, or less. No longer are these defendants deemed the worst of the worst, even though the facts of the crimes remain the same.

*There are many people who commit heinous crimes, and I'd be the first to stand up with emotion and say they should lose their lives. But when I look at the unfairness of it, the fact that the poor and people of color are most often the victims when it comes to the death penalty, and how many cases we've gotten wrong now that we have DNA evidence to back us up, I mean, it just tells me life imprisonment is penalty enough.*
**-Sen. Dick Durbin (IL)**[24]

These reversals challenge the death-penalty selection process in two ways: first, prosecutors, juries, and judges are often making critical decisions on the basis of incomplete or incorrect information. Some of the errors, but by no means all, are caught. A defendant can have a bad lawyer at trial and another bad lawyer on appeal, so there is no one to remedy the deficiencies of the first lawyer. Evidence withheld at trial by the prosecution is not always uncovered during appeals. So, even when a defendant is near execution, critical facts bearing on the appropriateness of the sentence may remain unrevealed.

The second way in which the appeals process contributes to the arbitrariness of the death penalty is that reversals are very uneven from state to state. Virginia, for example, is the second leading state in terms of executions. Between 1973 and 1995, the Virginia Supreme Court overturned only 10% of the death sentences reviewed, compared to a national reversal rate of 41%.[25] At the next level, Virginia's cases are reviewed by federal courts of the Fourth Circuit, which had the lowest record of reversals in capital cases in the entire country during the same period.[26] As a

10

Case: 15-2347    Document: 35    Filed: 07/27/2016    Pages: 4186
Case 2:11-cr-00077-PPS-APR   Document 1027-1   Filed 08/22/14   Page 13 of 107

**Struck by Lightning, p.9**

result, about 70% of Virginia's death sentences have resulted in executions, compared to 15% nationally. In California from 1997 to 2010, close to 90% of the Supreme Court's capital cases were affirmed, a rate higher than any other state's.[27]

Compare this to Mississippi, where from 1973 to 1995, 61% of the capital cases reviewed were reversed by the state Supreme Court; or North Carolina, where also 61% were reversed; or South Carolina, where 54% were reversed.[28] Such wide disparities in reversal rates raise the specter of uneven application of the law.

Examining what happens to death-sentenced defendants the second time through the system demonstrates the critical importance of a reversal in a death penalty case:

- In **North Carolina**, about 2/3 of the death penalty cases that completed the review process were reversed. About 65% of the defendants in those cases were given life sentences or less as the final disposition of their cases; another 9% died in prison of natural causes.[29]

- As of 2009, **Pennsylvania,** with the fourth largest death row in the country, has had 124 death sentences reversed on appeal. When these cases were retried or

otherwise resolved, 95% resulted in a life sentence, or less. The state has had 3 executions in 30 years, all involving defendants who abandoned their appeals.[30]

- In **Washington**, 18 death sentences have been reversed; none resulted in death sentences the second time around.[31]

- In **New York** and **New Jersey**, no case made it through the entire appeals process to execution, and both states have now abandoned the death penalty.

Nationally, the most comprehensive study of death penalty appeals found that two-thirds of death sentences were overturned, and upon reconsideration over 80% received an outcome of less than death.[32] In all of these re-sentencings, the judgment went from "worst of the worst" to something less severe—the difference between life and death.

In sum, this is a broken and unreliable system, compounded by wide disparities between states. In some states most death sentences are overturned and almost no one is executed, but in others, like Texas and Virginia, where reversals are rare, over 575 people have been executed since 1976, almost half of the national total.

11

# III. The Great Divide

*I have been a judge on this Court for more than twenty-five years . . . After all these years, however, only one conclusion is possible: the death penalty in this country is arbitrary, biased, and so fundamentally flawed at its very core that it is beyond repair.*
**-Judge Boyce Martin, U.S. Court of Appeals, Sixth Circuit**

*When Gary Ridgway, the worst mass murderer in this state's history, escapes the death penalty, serious flaws become apparent. The Ridgway case does not 'stand alone,' as characterized by the majority, but instead is symptomatic of a system where all mass murderers have, to date, escaped the death penalty . . . . The death penalty is like lightning, randomly striking some defendants and not others.*
**-Justice Charles Johnson, Washington Supreme Court**[33]

Both our general prison population and death row contain dangerous individuals convicted of serious crimes. But it would be hard to predict whether an inmate ended up on death row or in the general prison population if you were to examine only the facts of the crime. It would be even harder to foresee who would eventually be executed. The fact that a condemned inmate was in Texas or Virginia would be a far better predictor of execution than the facts of the crime.

There are many reasons why a particular defendant does not receive the death penalty. He could be in a state that does not have capital punishment, such as Wisconsin's Jeffrey Dahmer, a serial killer and sex offender who received a life sentence. He may have information to offer the prosecution in exchange for a plea bargain, such as former FBI Agent Robert Hanssen, who was charged with espionage and faced a federal death sentence before cooperating with the government.[34] Those involved in organized-crime killings may also receive leniency because of the information they can offer. Often the most notorious cases receive the best legal defense, making a death sentence less likely, even for horrific crimes.

| **Who is executed?** | **Who is spared?** |
|---|---|
| **Clarence Carter** was executed in Ohio on April 12, 2011, for the murder of another inmate. The former Director of Ohio Prisons, Terry Collins, urged the governor to spare Carter because "It is much more likely that this was an inmate fight that got tragically out hand. Inmate- | **Eric Rudolph** admitted killing two people and injuring 150 others by carrying out a series of bombings at a gay nightclub, abortion clinics, and the 1996 Olympics in Atlanta. He finally was captured in 2003. In separate plea |

on-inmate violence in lockups is often pursued to establish oneself as fearsome and to deter others from threatening or attacking the inmate."  There was no evidence that Carter planned to kill the inmate during the fight.[35]

**Teresa Lewis** was executed in Virginia in 2010.  Requests for a commutation of her death sentence had come from mental health groups, the European Union, and novelist John Grisham.  Many pointed to the fact that while Lewis was a conspirator in the crime, the two co-defendants who actually carried out the killings received life sentences.  Information that became available after Lewis's trial showed she had an IQ of 72, one of the key components of intellectual disability that could have rendered her death sentence unconstitutional.  A letter from one of the co-defendants in prison indicated he had manipulated Lewis into going along with the murder of her husband.  While on death row, she reportedly was a great help to other prisoners.[37]

**Michael Richard** needed the help of his sisters to dress himself until age 14.  He cut his meat with a spoon because he could not use a knife.  He was diagnosed as mentally retarded by Dr. George Denkowski, but Denkowski reversed himself after the District Attorney's Office intervened.[39]  (Dr. Denkowski has since been barred from rendering further diagnoses of intellectual disabilities in Texas.) Richard was the last person executed in the U.S. in 2007.  After the U.S. Supreme Court agreed to hear a challenge to lethal injection, every other defendant was granted a stay of execution.  However, Richard's attempt to file a similar appeal was blocked because a Texas appellate judge refused to keep the courthouse open after 5 pm so his lawyers could file legal papers due that day.[40]

agreements with the federal government and Georgia prosecutors, he avoided the death penalty and is serving four consecutive life sentences without the possibility of parole.  Prosecutors spared Rudolph from execution in exchange for his guilty pleas and his information about the location of 250 pounds of dynamite he had hidden in the mountains of North Carolina.[36]

**James Sullivan,** a millionaire and former fugitive on the FBI's most-wanted list, was captured in Thailand in 2002, four years after he was indicted on murder charges and 15 years after he paid a truck driver $25,000 to kill his wife in Georgia.  A jury sentenced him to life without parole.[38]

In Washington in 2003, **Gary Ridgway** pleaded guilty to killing 48 people and received a life-without-parole sentence. He was called the "Green River Killer" because of the area in which his victims were found.  He was spared the death penalty in exchange for a detailed confession about all of the young women he had murdered.[41]

Case: 15-2347    Document: 35         Filed: 07/27/2016    Pages: 4186
Case 2:11-cr-00077-PPS-APR   Document 1027-1   Filed 08/22/14   Page 16 of 107
**Struck by Lightning, p.12**

| | |
|---|---|
| **Kelsey Patterson** was executed in Texas in 2004 despite a highly unusual 5-1 recommendation for clemency from the Board of Pardons and Paroles. He had spent much of his life in and out of state mental hospitals, suffered from paranoid schizophrenia, and rambled unintelligibly at his execution. He had killed 2 people without warning or apparent motive.[42] | **Charles Cullen** received 11 consecutive life sentences for killing as many as 29 intensive-care patients with fatal injections.  In  2004 Cullen made a plea agreement with New Jersey and Pennsylvania prosecutors in which he offered to provide information about his crimes and the names of his victims in exchange for the states' agreement not to seek the death penalty.[43] |
| **Wanda Jean Allen** was executed in Oklahoma in 2001.  She was sentenced to death for killing her lover, Gloria Leathers, in Oklahoma City in 1988. The two women, who met in prison, had a turbulent relationship. Leathers' death followed a protracted argument between the couple that began at a local shop, continued at their home, and culminated outside a police station. Allen maintained she acted in self-defense. In 1995, a psychologist conducted a comprehensive evaluation of Allen and found "clear and convincing evidence of cognitive and sensori-motor deficits and brain dysfunction," possibly linked to an adolescent head injury.[44] | **Thomas Capano**, a former state prosecutor and prominent Delaware lawyer, was convicted of murdering his mistress and dumping her body in the ocean.  He was sentenced to death, but a state court overturned his sentence. In 2006, the state decided not to pursue the death penalty at retrial, with the original prosecutor stating, "The death penalty was always a secondary issue."[45] |
| **Manny Babbitt** lived with his brother in California after being released from a mental institution. He had been suffering from post-traumatic symptoms ever since he returned from Vietnam in 1969.  During the 77-day siege at Khe Sanh, Manny picked up pieces of the bodies of his fellow G.I.s. When he was wounded, he was evacuated in a helicopter on a pile of dead bodies.  He later broke into the home of an elderly woman and beat her. She died of a heart attack.  His brother turned him over to authorities, expecting his war-hero brother would receive the medical attention he needed. However, Babbitt was tried, sentenced to death and executed in 1999, shortly after receiving the Purple Heart in prison.[46] | In 2003, **Stephen "The Rifleman" Flemmi** was allowed to plead guilty to 10 murders, drug trafficking, racketeering and extortion, as federal prosecutors agreed not to seek the death penalty against him in exchange for his cooperation with ongoing crime investigations. Under the terms of the agreement, Flemmi--who also admitted to murders in Florida and Oklahoma--will serve a life-without-parole sentence in a secure unit reserved for cooperating inmates. Among the murders committed by Flemmi were the murder of one girlfriend and the daughter of another.[47] |

14

**Dwayne Allen Wright** was executed in Virginia in 1998. Wright was 17 at the time of his crime, the product of a failed system of juvenile care in the District of Columbia. Wright had been admitted to St. Elizabeth's mental hospital and sent to two of the city's most notorious juvenile centers. He suffered from a number of mental problems and grew up with an incarcerated father, a mentally ill mother, and an older brother serving as his father until he was murdered when Wright was ten. At trial his lawyers played down these issues. Two jurors later said they would not have voted for death if they had known of his mental illness and intellectual shortcomings. Although Wright's case captured the attention of noted civil rights, religious and political leaders, he was shown no mercy. Wright was one of three juvenile offenders executed in Virginia after the death penalty was reinstated. The Supreme Court did not bar such executions of juvenile offenders until 2005.[48]

**Brian Nichols** was in custody in a crowded Atlanta courthouse on a rape charge when he grabbed the gun of a deputy and shot and killed the judge and court reporter. While escaping from the courthouse, he killed a police deputy and U.S. Customs agent and took a woman hostage. He later agreed to turn himself in. His guilt was never in question, but after the state spent over $3 million trying to sentence him to death, the jury could not agree on sentence and hence Nichols was sentenced to life without parole.[49]

**Harold McQueen** was the first person executed in Kentucky in 35 years. McQueen was tried with his half-brother, Keith Burnell, for a robbery and murder. While Burnell's father paid for a private attorney, McQueen had a court-appointed lawyer who, at the time of trial, could be paid a maximum of only $1,000 for handling the case. McQueen was electrocuted in 1997; Burnell was sentenced to prison and paroled shortly thereafter.[50]

**Oscar Veal** was a contract killer for a large drug and murder-for-hire operation. Convicted of seven counts of murder and eight counts of racketeering conspiracy, in 2011 federal prosecutors agreed not to seek the death penalty against him in exchange for his testimony about a drug organization in Washington, D.C. Although prosecutors said, "[Veal] willingly and purposely killed seven men, motivated by both greed and the desire to please the other members of this violent gang," they called his cooperation "extraordinary by any measure" and recommended a prison sentence of 25 years.[51]

**Jesse Dewayne Jacobs** was executed in 1995 in Texas. After Jacobs's trial, at which he was accused of firing the murder weapon, the prosecution, in an unsuccessful attempt to get another death sentence against the co-defendant, reversed itself and claimed Jacobs did not do the shooting and did not even know that his co-defendant had a gun. Despite this

**Juan Quintero**, a Mexican immigrant with no identification papers, killed a Houston police officer after being stopped for speeding in Texas in 2006. Unlike many other foreign nationals, the Mexican government learned of his case and was able to provide assistance, bringing in a mitigation specialist and an

15

Case: 15-2347 Document: 35 Filed: 07/27/2016 Pages: 4186
Case 2:11-cr-00077-PPS-APR Document 1027-1 Filed 08/22/14 Page 16 of 107
**Struck by Lightning, p.14**

blatant inconsistency about who committed the murder, Jacobs's death sentence was upheld. The Vatican, the European Parliament, and some members of the U.S. Supreme Court objected to the state's misconduct. Justice Stevens wrote: "I find this course of events deeply troubling."[52]

expert capital defender from Colorado. In 2008, a jury convicted Quintero of the murder, but at least 10 of the 12 jurors voted for a life-without-parole sentence instead of the death penalty. Houston is in Harris County, which has been called the "capital of capital punishment."[53]

**John Spenkelink** was a 24-year-old former convict and drifter. He picked up a hitchhiker, another ex-convict, in the Midwest, and together they drove to Florida. Along the way the hitchhiker, who was larger and stronger, forced Spenkelink to have sexual relations with him and bullied him into playing Russian roulette. When they reached Tallahassee, Spenkelink discovered his abuser had also stolen his money. They fought, and Spenkelink shot the man to death. He was executed in 1979, the first person put to death in Florida after the death penalty was reinstated.[54]

In a recent New York trial in in which the federal government sought the death penalty for Vincent Basciano, who was already serving life without parole, the chief witness against him was **Joseph Massino,** another organized-crime figure. Massino was guilty of at least seven murders but escaped the death penalty because of his cooperation with the government.[55] He is serving numerous life sentences, but his testimony may win him further relief. In the end, Basciano was also given a life sentence by the jury, despite his conviction for murder, racketeering, and conspiracy.

**Cameron Willingham** was convicted of capital murder of his three children in Texas after arson investigators concluded an accelerant had been used to set three separate fires inside his home. The only other evidence presented by prosecutors during the trial included testimony from a jailhouse snitch and reports that Willingham was acting inappropriately after the fire. Before his execution in 2004, Willingham's attorneys presented the state's highest court and the governor with new testimony from a prominent fire expert questioning the conviction, but no stay was granted. Subsequently, four national arson experts concluded the original arson investigation was flawed and there was no evidence of a crime.[56]

**Ernest Ray Willis** was sentenced to death in Texas for the 1986 deaths of two women who died in a house fire that was ruled arson. Investigators originally believed they had found an accelerant in the carpet. When officers at the scene of the blaze said Willis acted strangely, prosecutors arrested him. They used his dazed mental state at trial - the result of state-administered medication - to characterize Willis as "coldhearted" and a "satanic demon." Seventeen years later, the Pecos County District Attorney revisited the case after a federal judge overturned Willis' conviction. To review the original evidence, he hired an arson specialist, who concluded there was no evidence of arson. Willis was freed in 2004.[57]

Case: 15-2347     Document: 35            Filed: 07/27/2016      Pages: 4186
Case 2:11-cr-00077-PPS-APR   Document 1027-1   Filed 08/22/14   Page 19 of 107

**Struck by Lightning, p.15**

## Even When Notorious Killers Are Executed, Arbitrariness Remains

Aside from the issue of mistakes, these cases show that society has priorities that supersede the demands for the death penalty, regardless of the severity of the offense.  They indicate that executions of the worst offenders are not necessary for the safety of the public; if they were, the most notorious killers almost certainly would be executed.  In the modern death penalty era, many of the country's most infamous offenders are serving life sentences in secure state and federal prisons, while those who have fewer resources, or no valuable information to barter, or who committed their crime in the "wrong" state or county, are executed.

Even in cases evoking national fear, a death sentence is not a predictable result.  From 1978 to 1995, Theodore Kaczynski, the "Unabomber," sent 16 bombs to people at universities and airlines, killing 3 and injuring 23, resulting in a national manhunt and widespread public anxiety. Although the death penalty was originally sought, the case resulted in a plea bargain and a life-without-parole sentence in federal prison.[58]  Skilled representation and Kaczynski's mental illness played a role in avoiding the death penalty, but as the cases above show, many mentally ill defendants meet a different fate.

Zacharias Moussaoui admitted his involvement in the 9/11 terrorist attacks in New York and Washington, D.C. that led to the deaths of over 3,000 people.  He tried to represent himself in the sentencing phase of his federal trial in Virginia, but his abuse of the process led the judge to require experienced counsel to represent him.  In 2006, a jury sentenced him to life without parole.[59]

Of course, some notorious offenders are executed.  Timothy McVeigh was the first person executed under the reinstated federal death penalty for the 1995 bombing of the Oklahoma City building, in which 167 people died.  However, his co-defendant, Terry Nichols, was given life sentences following convictions in both federal and Oklahoma courts, despite being found guilty of conspiracy in the same crime.  Although Nichols was probably less culpable of the bombing than McVeigh, his crime was monumental compared to those of others who were executed.

Serial killer Ted Bundy was executed in Florida in 1990.  Everyone knew of his crimes and smug demeanor.  What many did not know was that Bundy was offered a plea bargain similar to that given other serial killers described above.  His attorneys urged him to take the deal, which would have covered all of his offenses in Florida, but at the last minute he balked, perhaps attracted by the attention an execution could bring him.  Bundy's crimes fit the profile of cases for which people believe the death penalty was designed, but in the end, he controlled the process.  His unpredictable decision to seize the role of anti-hero, rather than a careful process of official decision-making, determined his fate.[60]

Our criminal justice system is frequently confronted with dangerous individuals guilty of heinous crimes--yet almost all of them will remain in prison and never be executed. The few who are executed generally are not the most dangerous offenders.  They may not have had information to offer the prosecution, or they may have adamantly refused a plea bargain.  They are put to death many years, and sometimes decades,

Case: 15-2347    Document: 35    Filed: 07/27/2016    Pages: 4186
Case 2:11-cr-000077-PPS-APR   Document 1027-1   Filed 08/22/14   Page 20 of 107
**Struck by Lightning, p.16**

after their crime, and have often changed substantially from who they once were.

# IV. The Judgment of Experts

Even before states tried to formulate a system that would satisfy the Supreme Court's concerns about the arbitrariness of the death penalty, experts warned it was a futile endeavor.  In 1953, the British Royal Commission studied the death penalty and concluded, "No formula is possible that would provide a reasonable criterion for the infinite variety of circumstances that may affect the gravity of the crime of murder."[61] Ultimately, the Commission recommended that the death penalty in Great Britain be ended, and in 1973 it was.

The American Law Institute, authors of the Model Penal Code, agreed the death penalty could not easily be put into a set of rules for jurors to follow: "[T]he factors which determine whether the sentence of death is the appropriate penalty in particular cases are too complex to be compressed within the limits of a simple formula . . . ."[62]

Nevertheless, in 1976 the Court approved a list of aggravating and mitigating factors when it allowed the death penalty to



18

Case: 15-2347    Document: 35    Filed: 07/27/2016    Pages: 4186
Case 2:11-cr-00077-PPS-APR    Document 1027-1    Filed 08/22/14    Page 218 of 107
**Struck by Lightning, p.17**

resume. By a vote of 7 to 2, the Court approved Georgia's framework of guided-discretion in *Gregg v. Georgia*.[63] Justices Thurgood Marshall and William Brennan, believing the death penalty could not be saved by merely amending the old statutes, dissented.

## A Majority of the 1976 Justices

It now appears that at least three of the Justices in the *Gregg* majority would belatedly have joined Justices Marshall and Brennan if they had had the opportunity. One of those Justices was Harry Blackmun, who famously announced his reconsideration of the death penalty in 1994, shortly before he left the bench. He concluded the theory he had upheld in 1976 had not worked in practice:

> From this day forward, I no longer shall tinker with the machinery of death. For more than 20 years I have endeavored--indeed, I have struggled--along with a majority of this Court, to develop procedural and substantive rules that would lend more than the mere appearance of fairness to the death penalty endeavor. Rather than continue to coddle the Court's delusion that the desired level of fairness has been achieved and the need for regulation eviscerated, I feel morally and intellectually obligated to concede that the death penalty experiment has failed.[64]

Justice Lewis Powell came to a similar conclusion after retiring from the Court. He told his biographer, James Jeffries, that his approval of the death penalty while on the Court was the one area he had come to regret: "I have come to think that capital punishment should be abolished."[65]

Finally, Justice John Paul Stevens, who remained on the Court for almost the entire 35 years of the post-*Gregg* era, gradually became convinced the death penalty is unconstitutional:

> [T]he imposition of the death penalty represents "the pointless and needless extinction of life with only marginal contributions to any discernible social or public purposes. A penalty with such negligible returns to the State [is] patently excessive and cruel and unusual punishment violative of the Eighth Amendment."[66]

Thus if the composition of the Court at the time of *Gregg* in 1976 were in place today, the vote on the constitutionality of the death penalty would be at least 5-4 in favor of banning capital punishment.

## Prominent Legal Organizations

The conclusion of the Justices that the death penalty should be reconsidered in light of its record since 1976 was echoed by the prestigious **American Law Institute** (ALI), an organization comprising the country's leading jurists and legal scholars. Although the ALI had been skeptical about providing adequate guidance to juries on death sentencing, it nevertheless had offered as part of the Model Penal Code a framework of aggravating and mitigating factors, which many states followed. Recently, however, the ALI decided that the entire framework should be withdrawn. In 2009, while not taking a stand on the death penalty itself, the ALI voted to rescind the parts of their Model Penal Code dealing with the death penalty because the attempt to channel the death penalty toward only the worst offenders had failed. The report submitted by the ALI Council to its members stated:

19

Case: 15-2347      Document: 35            Filed: 07/27/2016      Pages: 4186
Case 2:11-cr-00077-PPS-APR   Document 1027-1   Filed 08/22/14   Page 22 of 107

**Struck by Lightning, p.18**

Unless we are confident we can recommend procedures that would meet the most important of the concerns, the Institute should not play a further role in legitimating capital punishment, no matter how unintentionally, by retaining the section in the Model Penal Code.[67]

The ALI based its withdrawal from the death penalty arena on a research report it commissioned from law professors Carol and Jordan Steiker. Their thorough analysis of the modern death penalty concluded:

The foregoing review of the unsuccessful efforts to constitutionally regulate the death penalty, the difficulties that continue to undermine its administration, and the structural and institutional obstacles to curing those ills forms the basis of our recommendation to the Institute. The longstanding recognition of these underlying defects in the capital justice process, the inability of extensive constitutional regulation to redress those defects, and the immense structural barriers to meaningful improvement all counsel strongly against the Institute's undertaking a law reform project on capital punishment, either in the form of a new draft of § 210.6 or a more extensive set of proposals. Rather, *these conditions strongly suggest that the Institute recognize that the preconditions for an adequately administered regime of capital punishment do not currently exist and cannot reasonably be expected to be achieved.*[68]

Other leading organizations have come to similar conclusions about the state of the death penalty since the *Gregg* decision in 1976. The **American Bar Association**,

after years of advocating reforms to the death penalty system, agreed in 1997 to call for a moratorium on all executions. That resolution remains in force today. The report supporting this historic step stated:

Two decades after *Gregg*, it is apparent that the efforts to forge a fair capital punishment jurisprudence have failed. Today, administration of the death penalty, far from being fair and consistent, is instead a haphazard maze of unfair practices with no internal consistency.[69]

**The Constitution Project,** a non-profit organization of legal experts focused on reforming the justice system, similarly reviewed the status of the death penalty, issuing a report in 2001 entitled "Mandatory Justice: Eighteen Reforms to the Death Penalty." It called for a series of legislative steps to bring the death penalty into compliance with minimal constitutional requirements. On the problem of arbitrariness identified by the Supreme Court in 1972, it concluded little had changed:

We are now faced with state systems that vary vastly from one another, but most of which pose almost as great a risk of arbitrary, capricious, and discriminatory application as three decades ago, when the Court called for reform in *Furman v. Georgia*.[70]

Few of its recommendations have been adopted.

## Other Jurists

Other prominent individuals have also weighed in on the continuing problem of arbitrariness in the death penalty. Retired Federal Appeals Court Judge H. Lee Sarokin recently offered a harsh critique of

Case: 15-2347    Document: 35    Filed: 07/27/2016    Pages: 4186
Case 2:11-cr-00077-PPS-APR   Document 1027-1   Filed 08/22/14   Page 23 of 107

**Struck by Lightning, p.19**

the system. Citing the arbitrariness at every level, Judge Sarokin concluded the death penalty should not be permitted to continue:

> *The system is too fraught with variables to survive.* Whether or not one receives the death penalty depends upon the discretion of the prosecutor who initiates the proceeding, the competence of counsel who represents the defendant, the race of the victim, the race of the defendant, the make-up of the jury, the attitude of the judge, and the attitude and make-up of the appellate courts that review the verdict.[71]

Judge Boyce F. Martin, Jr. of the U.S. Court of Appeals for the Sixth Circuit reached a similar conclusion:

> I have been a judge on this Court for more than twenty-five years. In that time I have seen many death penalty cases and I have applied the law as instructed by the Supreme Court and I will continue to do so for as long as I remain on this Court. This my oath requires. After all these years, however, only one conclusion is possible: *the death penalty in this country is arbitrary, biased, and so fundamentally flawed at its very core that it is beyond repair.*[72]

Finally, former Chief Justice Deborah Poritz of the New Jersey Supreme Court, reflecting on her years of trying to make the state's death penalty fair, said, "We really can find no way to do this that will take the arbitrariness out of the system."[73]

## Public Opinion

Legal experts are not the only ones concerned about the arbitrary nature of the death penalty. Whatever their views about the death penalty in theory, the public is very concerned about the manifest unfairness in its application. In a 2010 national survey of registered voters by Lake Research Partners,[74] respondents rated the problem of unfairness as one of the top reasons to replace the death penalty with a sentence of life in prison, ranking it high, along with their concerns about innocence and the frustration the death penalty causes victims' families. Sixty-nine percent (69%) found the following statement convincing:

> Our criminal justice system should treat all people equally, regardless of how much money they make, where they live, or the color of their skin. In reality, the death penalty is applied unevenly and unfairly, even for similar crimes. Some people are sentenced to die because they couldn't afford a better lawyer, or because they live in a county that seeks the death penalty a lot. A system that is so arbitrary should not be allowed to choose who lives and who dies.[75]

Men and women, young and old, black and white, all rated unfairness as the concern they found most convincing among the problems with the death penalty. The perception that the death penalty is not fairly administered has led many people to support repeal of capital punishment. In the same survey, when asked what the proper punishment for murder should be, 61% opted for various forms of a life sentence, and only 33% said the punishment should be the death penalty.[76]

These doubts about the death penalty have contributed to the dramatic 60% decline in new death sentences in the past decade, even in states like Texas.[77] These doubts also make it difficult to select a jury in a capital case. Prospective jurors are quizzed about their views on the death penalty, and those who express serious concerns about applying it can be dismissed

Case: 15-2347    Document: 35    Filed: 07/27/2016    Pages: 4186
Case 2:11-cr-00077-PPS-APR   Document 1027-1   Filed 08/22/14   Page 24 of 107
**Struck by Lightning, p.20**

by the judge or prosecution.  In a separate survey, almost 40% of Americans said they believe they would be eliminated from serving on a death penalty jury because of their views on capital punishment.  The percentage among some minorities was even higher.[78]

# V. Influences on the Decision for Death

*I never saw a way that you could make the death penalty consistent across jurisdictions, juries, counties, and prosecutors.*
**- Dee Joyce Hayes, 20-year veteran prosecutor and former St. Louis Circuit Attorney**

Although the application of the death penalty remains arbitrary, the choice of who is executed and who is spared is not random. Today's death penalty is not only determined by factors having little to do with the severity of the crime or the culpability of the criminal, but it also is unfairly applied, in that the determinative factors often are the same ones that repeatedly have marred our commitment to equal justice.

## Influence of Race

One of the strongest determinants of who gets the death penalty is the race of the victim in the underlying murder.  If one kills a white person, one is far more likely to get the death penalty than if one kills a member of a minority.  This has been demonstrated for at least 25 years, and reinforced by careful statistical studies in almost all death penalty states and by several review commissions.

As far back as 1990, the U.S. General Accounting Office reviewed studies on race and the death penalty and concluded:

> In 82% of the studies [reviewed], race of the victim was found to influence the likelihood of being charged with capital murder or receiving the death penalty, i.e., those who murdered whites were found more likely to be sentenced to death than those who murdered blacks.  This finding was remarkably consistent across data sets, states, data collection methods, and analytic techniques.[79]

One of the most comprehensive studies of race and the death penalty was conducted by Professor David Baldus in preparation for a case eventually reviewed by the U.S. Supreme Court.  Professor Baldus and statisticians at the University of Iowa reviewed over 2,000 potential death penalty cases in Georgia and matched them with 230 variables that might influence whether a defendant would receive a death sentence.  After extensive review, they concluded that the odds of receiving the death penalty in Georgia were 4.3 times greater if the defendant killed a white person than if he killed a black person.[80]

Ultimately, the Supreme Court upheld Georgia's death penalty system by a vote of 5-4.[81]  The Court assumed the validity of the Baldus study and recognized that inequities existed in the criminal justice system.  However, the Court was unwilling to reverse McCleskey's death sentence on the basis of this statistical study.  Doing so would have, in the Court's view, threatened the entire criminal justice system.

In his dissent in *McCleskey,* Justice Brennan eloquently summarized the impact of Baldus's findings on individual defendants:

Case: 15-2347   Document: 35            Filed: 07/27/2016     Pages: 4186
Case 2:11-cr-00077-PPS-APR   Document 1027-1   Filed 08/22/14   Page 25 of 107
**Struck by Lightning, p.21**

At some point in this case, Warren McCleskey doubtless asked his lawyer whether a jury was likely to sentence him to die. A candid reply to this question would have been disturbing. First, counsel would have to tell McCleskey that few of the details of the crime or of McCleskey's past criminal conduct were more important than the fact that his victim was white. Furthermore, counsel would feel bound to tell McCleskey that defendants charged with killing white victims in Georgia are 4.3 times as likely to be sentenced to death as defendants charged with killing blacks. In addition, frankness would compel the disclosure that it was more likely than not that the race of McCleskey's victim would determine whether he received a death sentence . . . . Finally, the assessment would not be complete without the information that cases involving black defendants and white victims are more likely to result in a death sentence than cases featuring any other racial combination of defendant and victim. The story could be told in a variety of ways, but McCleskey could not fail to grasp its essential narrative line: *there was a significant chance that race would play a prominent role in determining if he lived or died.*[82]

Subsequent studies in states around the country have revealed how pervasive this problem is. In a report prepared for the American Bar Association, Professors Baldus and Woodworth expanded on the GAO's review of studies on race discrimination in capital cases. They found relevant data in three-quarters of the states with prisoners on death row. In 27 of those states (93% of the studies), there was evidence of race-of-victim disparities, i.e., the race of the person murdered correlated

with whether a death sentence would be given in a particular case. In nearly half of those states, the race of the defendant also served as a predictor of who received a death sentence.[83]

In Florida, for example, a defendant's odds of receiving a death sentence is 4.8 times higher if the victim is white than if the victim is black in similar cases. In Oklahoma the multiplier is 4.3, in North Carolina it is 4.4, and in Mississippi it is 5.5.[84]

Since that review new studies have reached similar results. A study conducted by Professors Glenn Pierce and Michael Radelet and published in the 2011 *Louisiana Law Review* showed that in parts of Louisiana the odds of a death sentence were 2.6 times higher for those charged with killing a white victim than for those charged with killing a black victim.[85]

A study of the death penalty in Arkansas published in 2008 showed similar racial patterns in sentencing. Professor Baldus examined 124 murder cases filed in one district from 1990 to 2005. After adjusting for factors such as the defendant's criminal history and the circumstances of the crime, black people who killed white people were significantly more likely than others to be charged with capital murder and sentenced to death.[86]

A sophisticated statistical study of homicide cases in South Carolina by Professor Isaac Unah of the University of North Carolina at Chapel Hill and attorney Michael Songer found that prosecutors were more likely to seek the death penalty when the victim in the underlying murder was white or female:

> South Carolina prosecutors processed 865 murder cases with white victims and sought the death penalty in 7.6% of them. By contrast, prosecutors sought the death

23

penalty in only 1.3% of the 1614 murder cases involving black victims. . . .The data further suggest that non-Whites are far more likely than Whites to be homicide victims in the state. About 62% of homicide victims in the study were non-Whites; virtually all of these victims were African American. . . . South Carolina prosecutors were 5.8 times as likely to seek the death penalty against suspected killers of Whites as against suspected killers of Blacks.[87]

In a comprehensive study in 2005 covering 20 years and almost two thousand capital cases in Ohio, the Associated Press found the death penalty had been applied in an uneven and arbitrary fashion. The study analyzed 1,936 indictments reported to the Ohio Supreme Court by counties with capital cases from October 1981 through 2002 and concluded that offenders facing capital charges were twice as likely to be sentenced to death if they killed a white person than if they killed a black person. Death sentences were handed down in 18% of cases where the victims were white, compared with 8.5% of cases where victims were black.[88]

## Interaction With Geography

The reasons for racial disparities in death sentencing are not hard to find. For prosecutors and juries, choosing which cases are the worst and the most deserving of death is largely a subjective judgment. If the prosecutor is white, if the media highlights the death of a prominent white victim or if the jury is predominantly or entirely white, the perception that white-victim cases are more heinous, and thus more deserving of death, is predictable.

This is not necessarily the result of racial prejudice; it also can correlate with geography. Murders are affronts to the

community, but prosecutors in communities with largely black populations may believe their constituents are not as supportive of the death penalty, or that jurors in that community would be less likely to vote for the death penalty. Opinion polls appear to bear this out.

When selecting a jury, prosecutors with no racial agenda may still prefer an all-white jury because they believe such a jury would be more likely to convict the defendant and sentence him to death than a mixed-race jury. The system becomes self-reinforcing. For example, a prosecutor who knows the jury will be mainly black may choose not to seek the death penalty. The net result is a preference for white victims killed in predominantly white communities.

These race-correlated disparities in outcome may be explicable, but it does not follow that racial differences in death sentencing should be sanctioned in a criminal justice system committed to even-handed, non-arbitrary outcomes.

---

*There's indifference to excluding people on the basis of race, and prosecutors are doing it with impunity. Unless you're in the courtroom, unless you're a lawyer working on these issues, you're not going to know whether your local prosecutor consistently bars people of color.*

**-Bryan Stevenson, Equal Justice Initiative**

---

A recent study of the Equal Justice Initiative (EJI), a human rights and legal services organization in Alabama, found the practice of excluding blacks and other racial minorities from juries remains widespread

Case: 15-2347   Document: 35        Filed: 07/27/2016   Pages: 4186
Case 2:11-cr-00077-PPS-APR   Document 1027-1   Filed 08/22/14   Page 27 of 107

**Struck by Lightning, p.23**

and largely unchecked, especially in the South.  "Illegal Racial Discrimination in Jury Selection: A Continuing Legacy" revealed that Alabama courts have found racially discriminatory jury selection in 25 death penalty cases since 1987, and in some counties 75% of black jury pool members in capital cases were excluded.[89]

The same study revealed that in Jefferson Parish, Louisiana, the Louisiana Capital Assistance Center found blacks were struck from juries more than three times as often as whites between 1999 and 2007.  In North Carolina, at least 26 current death row inmates were sentenced by all-white juries.  According to Bryan Stevenson, Executive Director of EJI, "There's indifference to excluding people on the basis of race, and prosecutors are doing it with impunity. Unless you're in the courtroom, unless you're a lawyer working on these issues, you're not going to know whether your local prosecutor consistently bars people of color."[90]

# Cases Cluster Within a State

Clearly the death penalty is applied unevenly around the country.  Eighty-two percent (82%) of the country's executions occur in the South.

However, even within states death sentences and capital prosecutions typically cluster in a few areas.[91]  An investigation by seven Indiana newspapers in 2001 found that seeking the death penalty depended on factors such as the views of individual prosecutors and the financial resources of the county in which the crime was committed. Two Indiana counties have produced almost as many death sentences as all of the other Indiana counties combined.[92]

When New York had the death penalty, upstate counties experienced 19% of the state's homicides but accounted for 61% of all capital prosecutions. Three counties (out of 62 in the state) were responsible for over one-third of all of the cases in which a death notice was filed.[93]

A report by the ACLU of Northern California revealed that in 2009 three counties–Los Angeles, Orange, and Riverside–accounted for 83% of the state's death sentences.[94]

A recent article in *Second Class Justice*, a blog dedicated to addressing unfairness and discrimination in the criminal justice system, cited figures from the American Judicature Society revealing that only 10% of U.S. counties accounted for all of the death sentences imposed between 2004 and 2009, and only *5%* of the counties accounted for all of the death sentences imposed between 2007 and 2009. Even in states that frequently impose death sentences (such as Texas, Alabama, Florida, California, and Oklahoma), only a few counties produce virtually all of the state's death sentences.  According to the study:

> The murders committed in those counties are no more heinous than murders committed in other counties, nor are the offenders in those counties more incorrigible than those who commit crimes in other counties. Examination of prosecutorial practices demonstrate that some prosecutors seek death in cases in their jurisdictions while other prosecutors in the rest of the state do not seek death for the same–or even more aggravated–murders.[95]

In Maryland for many years almost all of the death cases came from predominantly white Baltimore County, and almost none

25

Case: 15-2347   Document: 35   Filed: 07/27/2016   Pages: 4186
Case 2:11-cr-00077-PPS-APR   Document 1027-1   Filed 08/22/14   Page 26 of 107
**Struck by Lightning, p.24**

from predominantly black Baltimore City.  In 2002, Baltimore City had only one person on Maryland's death row, but suburban Baltimore County, with one tenth as many murders as Baltimore, had nine times as many on death row.[96]

In Ohio's Cuyahoga County (Cleveland), a Democratic stronghold, just 8% of offenders charged with a capital crime received a death sentence.  In conservative Hamilton County (Cincinnati), 43% of capital offenders ended up on death row.[97]

Death penalty prosecutions in Missouri also illustrate the county-by-county arbitrariness across the country. St. Louis Circuit Attorney Jennifer Joyce, whose jurisdiction covers the city, has never taken a capital case to trial since her election in 2001, but Prosecuting Attorney Robert McCulloch, whose jurisdiction is the neighboring suburban county, has won death sentences against 10 people since 2000, although the county has only one-fourth as many murders as the city.[98] The two longtime Democrats have adjacent jurisdictions, one urban and one more rural.

The St. Louis Circuit Attorney's predecessor, Dee Joyce Hayes, after 20 years working as a prosecutor and circuit attorney, acknowledged she found death sentences arbitrary: "I never saw a way that you could make the death penalty consistent across jurisdictions, juries, counties, and prosecutors."[99]

## Political considerations

*It's a roll of the dice. When I look at a lineup of a panel in this kind of case, you can almost go to the bank on what the result is going to be.*
        **-Judge Nathaniel Jones, U.S. Court of Appeals, Sixth Circuit (ret.)**

The death penalty has always been plagued with political influence.  Elected prosecutors and judges know the power of seeking and supporting the death penalty when a murder shocks the community.  More surprising is that even federal judges with lifetime appointments can be affected by politics in the death penalty decisions.

A *Cincinnati Enquirer* examination of death penalty decisions of the U.S. Court of Appeals for the Sixth Circuit, which considers cases from Ohio, Kentucky and Tennessee, revealed federal judges appear to vote consistently along party lines, thereby injecting arbitrariness into their death penalty rulings. The judges work mostly on randomly selected three-judge panels. Sixteen judges are eligible to sit on those panels, including nine Republican and seven Democratic appointees.  Life-and-death decisions often hinge on the defendant's luck of the draw. A defendant who gets a panel with 2 liberals has a far greater chance of avoiding execution than one with 2 conservatives.

"It's a roll of the dice. When I look at a lineup of a panel in this kind of case, you can almost go to the bank on what the result is going to be," said Nathaniel Jones, a retired Sixth Circuit judge appointed by President Jimmy Carter.[100]  Arthur Hellman, a University of Pittsburgh law professor added, "It looks very much like a lottery.

Case: 15-2347    Document: 35    Filed: 07/27/2016    Pages: 4186
Case 2:11-cr-00077-PPS-APR    Document 1027-1    Filed 08/22/14    Page 29 of 107
**Struck by Lightning, p.25**

Literally, if someone lives or dies depends on the panel they get."[101]

According to the *Cincinnati Enquirer* investigation, appointees of President George H. W. Bush posted the most lopsided track record, voting 50-4 against granting inmates' capital appeals. President George W. Bush's appointees voted 34-5 against granting such appeals. By contrast, President Carter's appointees voted 31-4 in favor of the inmates' appeals. Appointees of Presidents Clinton and Reagan were slightly less skewed. President Clinton's voted 75-32 in favor of inmates' appeals, and President Reagan's voted 39-13 against them. Ten of the 16 judges who currently hear Sixth Circuit death penalty appeals vote the same way (for or against the defendant) at least 80% of the time.

**ARBITRARINESS IN THE COURTS:** Votes in Capital Appeals by judges of the U.S. Court of Appeals for the Sixth Circuit

| President Making Appointments | % of Votes by Judges Against Defendant | % of Votes by Judges for Defendant |
|---|---|---|
| Jimmy Carter | 11% | 89% |
| Ronald Reagan | 75% | 25% |
| George H.W. Bush | 93% | 7% |
| Bill Clinton | 30% | 70% |
| George W. Bush | 87% | 13% |

Source: Cincinnati *Enquirer*, April 15, 2007.

Regardless of one's position on which set of judges was "correct," the influence of politics on what should be apolitical legal judgments is disturbing. Statistics like these do not prove that judges' decisions are influenced by their political leanings, but the stark contrast in outcomes strongly suggests that judgments in death penalty cases are subjective and influenced by other factors that interject a high degree of arbitrariness into the process.

## Costs

Part of the reason why geography plays such a prominent role in determining the use of the death penalty is the disparate resources available to counties responsible for paying for capital prosecutions. Death penalty cases are exorbitantly expensive, often putting them out of reach for smaller counties. For a poorer rural county, paying for one death penalty case has been compared to coping with the effects of a natural disaster, and may require an increase in taxes.[102]

Texas prosecutors acknowledge that many smaller counties never send anyone to death row, partly because of a lack of funding. Wharton County District Attorney Josh McCown noted:

> This is one of those things a district attorney doesn't like to talk about. You don't want to think that you're letting money come into play. You ought to consider the facts of a case and make your decisions in a vacuum. In a perfect world, that's the

Case: 15-2347    Document: 35    Filed: 07/27/2016    Pages: 4186
Case 2:11-cr-00077-PPS-APR    Document 1027-1    Filed 08/22/14    Page 30 of 107
**Struck by Lightning, p.26**

way you do it. But in a county this size, you have to consider the level of expertise, the financial resources. If you don't, you're stupid. This is not a perfect system or a perfect world.[103]

Michael Rushford, president of the Criminal Justice League Foundation, a California pro-death penalty advocacy group, said, "I've got to believe in some places that money becomes a problem. If it's going to clean out the budget, there may be some pressure not to go for the death sentence."[104]

In Florida, a budget crisis has led to a cut in funds for state prosecutors. As a result, some prosecutors are cutting back on their use of the death penalty, and perhaps on other prosecutions. Florida State Attorney Harry Shorstein explained how available funds affect the administration of justice: "There will be cases that can't be tried. . . . We are strained to the breaking point. . . . Instead of seeking the death penalty, maybe we'll seek something else."[105]

## Other Factors

Several other factors that have nothing to do with the severity of the crime or the culpability of the criminal can affect the ultimate outcome of a capital case. States differ vastly in the quality of representation afforded indigent defendants. The number of attorneys assigned, their experience in death penalty matters, their rate of pay, and the funding made available for defense investigators and experts all affect a defendant's chances of avoiding a death sentence.[106]

The same is true on appeal. There are no binding national standards for appellate representation, and states are not constitutionally required to provide attorneys

for death row inmates throughout the entire appeals process.[107] While some states have public defender offices completely dedicated just to comprehensive capital defense, others leave defendants with no representation for parts of their appeal. Although a few fortunate defendants have their appeals voluntarily taken on by large law firms that work for free and provide a high quality defense, many cases slip through the cracks—poorly defended at trial and even more poorly defended on appeal.

On rare occasions, the U.S. Supreme Court will review the quality of representation provided capital defendants, but the standard of review it and lower courts apply is highly deferential to the strategic decisions made by defense attorneys and to the state court that conducted or reviewed the trial. Even where inadequate representation is apparent, such as when a lawyer has slept through part of the trial or failed to investigate critical facts, a court may still affirm the death judgment on the rationale that in its view better representation would not have made a difference in the outcome.

## Victim Impact Evidence

Since 1991 prosecutors have been allowed to interject another influential variable into death penalty sentencing trials: in-person statements from members of the victim's family about how they were affected by the murder. Although this may be accepted as a way to counterbalance evidence about the redeeming qualities or disabilities of the accused, it can introduce arbitrariness into the proceedings. Jurors are likely to be heavily influenced by emotional stories from distraught and angry family members about how the death of a loved one impacted them.[108] In contrast, some victims' families may oppose the death penalty; other victims may have no family at all.[109] Whether the defendant

Case: 15-2347     Document: 35           Filed: 07/27/2016     Pages: 4186
Case 2:11-cr-00077-PPS-APR   Document 1027-1   Filed 08/22/14   Page 31 of 107
**Struck by Lightning, p.27**

receives a death sentence may be more heavily influenced by statements of the victim's family than by the crime he committed.

In a recent California case, the family of a murdered young woman was allowed to put on a lengthy video about their daughter's childhood, friends, and important life milestones.  The video was carefully edited, accompanied by moving, professionally produced music; it concluded with beautiful pictures of people—unrelated to the victim—riding horses in Canada as the music reached an emotional climax.[110] This compelling video may have been the deciding factor in the jury's death sentence, even though it made the crime no worse than a similar one in which the victim had a tough life that was not amenable to a moving portfolio of a photogenic family.

Case: 15-2347   Document: 35   Filed: 07/27/2016   Pages: 4186
Case 2:11-cr-00077-PPS-APR   Document 1027-1   Filed 08/22/14   Page 32 of 107
**Struck by Lightning, p.28**

# VI. Conclusion

When the death penalty was permitted to go forward in 1976, many distinguished legal scholars warned that the task of creating an objectively fair system for deciding which criminals deserved to die and which should be allowed to live was impossible.  A majority of those on the Supreme Court that approved the experiment ultimately concluded the attempt to fix the death penalty had failed.

Thirty-five years later a strong body of empirical evidence confirms that race, geography, money, politics, and other arbitrary factors exert a powerful influence on determining who is sentenced to death.  This is the conclusion not only of experts, but increasingly that of the general public as well.  Unfairness ranks near the top of the American public's concerns about the death penalty.

As the use of the death penalty has declined, the rationale for its continuation has disappeared.  With defendants already facing life without parole, no one is likely to be deterred by an added punishment that is rarely imposed and even more rarely carried out many years later, and that is dependent on so many unpredictable factors.  Nor does the wish for retribution justify a death penalty that is applied so sporadically.  The reality is that those in society generally, and those families of murder victims in particular, who look to an execution to counter a terrible homicide will very likely be disappointed.  Very few of those cases result in execution, and those that do are often not the most heinous, but merely the most unlucky, recalling Justice Stewart's comparison in 1972 that receiving the death penalty is like being struck by lightning.

No longer looking only to the Supreme Court to review these issues, some states are choosing to act on their own.  Four states in the past four years have abolished the death penalty, bringing the total of states without capital punishment to sixteen.  As growing costs and stark unfairness become harder to justify, more states are likely to follow that path.

The post-*Gregg* death penalty in the United States has proven to be a failed experiment. The theory that with proper guidance to juries the death penalty could be administered fairly has not worked in practice.  Thirty-five years of experience have taught the futility of trying to fix this

Case: 15-2347     Document: 35          Filed: 07/27/2016     Pages: 4186
Case 2:11-cr-00077-PPS-APR   Document 1027-1   Filed 08/22/14   Page 35 of 107
**Struck by Lightning, p.29**

system.  Many of those who favored the death penalty in the abstract have come to view its practice very differently.  They have reached the conclusion that if society's ultimate punishment cannot be applied fairly, it should not be applied at all.

The Death Penalty Information Center (DPIC) is a non-profit organization serving the media and the public with analysis and information on issues concerning capital punishment. The Center provides in-depth reports, issues press releases, conducts briefings for journalists, and serves as a resource to those working on this issue. The Center is funded through the generosity of individual donors and foundations, including the Roderick MacArthur Foundation, the Open Society Institute, and the European Union. The contents of this document are the sole responsibility of DPIC and can under no circumstances be regarded as reflecting the position of the European Union or other donors.

Case: 15-2347     Document: 35         Filed: 07/27/2016     Pages: 4186
Case 2:11-cr-00077-PPS-APR   Document 1027-1   Filed 08/22/14   Page 34 of 107

**Struck by Lightning, p.30**

# Endnotes

[1] . Furman v. Georgia, 408 U.S. 238 (1972).

[2] . "Arbitrariness is pregnant with discrimination." *Furman*, 408 U.S. at 257 (Douglas, J., concurring).

[3] . *Furman*, 408 U.S. at 310 (Stewart, J., concurring).

[4] . *Id*. at 309.

[5] . *Furman*, 408 U.S. at 313 (White, J., concurring).

[6] . Gregg v. Georgia, 428 U.S. 153 (1976) and companion cases decided the same day.

[7] . *Furman,* 408 U.S. at 312.

[8] . From 1965 to 1972, there were a total of 10 executions in the country.  Bureau of Justice Statistics, Sourcebook of Criminal Justice Statistics (2000), at Table 6.92.

[9] . *Furman,* 408 U.S. at 293 (Brennan, J., concurring).

[10] . The number of murders in 1999 was 15,552; in 2009, it was 15,241.  FBI Uniform Crime Reports, U.S. Dept. of Justice (2010).

[11] . M. Wilson, "The Application of the Death Penalty in New Mexico, July 1979 through December 2007: An Empirical Analysis," 38 New Mexico Law Review 255 (2008).

[12] . Urban Institute, "The Cost of the Death Penalty in Maryland," March 2008.

[13] . "Final Report Of The Death Penalty Subcommittee Of The Committee On Public Defense," Washington State Bar Association, December 2006 <http://www.wsba.org/lawyers/groups/committeeonpublicdefense.htm>.  Many of those who "volunteer" for execution are suffering from mental illness.  See J. Blume, "Killing the Willing: 'Volunteers,' Suicide and Competency," 103 Michigan Law Review 939 (2005).

[14] . Department of Public Advocacy Press Release, November 23, 2009.

[15] . The Oregonian, May 6, 2011.

[16] . Federal Death Penalty Resource Counsel, March 24, 2010, available at <http://www.capdefnet.org/FDPRC/pubmenu.aspx?menu_id=94&id=2094>.

[17] . Kennedy v. Louisiana, No. 07-343 (U.S. 2008), slip op. at 9, citing Roper v. Simmons, 543 U.S. 551, 568 (2005) (quoting Atkins v. Virginia, 536 U.S. 304, 319 (2002)) (death penalty too extreme for crime of child-rape).

[18] . See, e.g., F. Baumgartner, "The Geography of the Death Penalty," (2010), available at <http://www.unc.edu/%7Efbaum/Innocence/NC/Baumgartner-geography-of-capital-punishment-oct-17-2010.pdf>.

[19] . One paragraph from a lengthy Ohio jury instruction in the mitigation phase of a capital trial reads:

> 27. Any one mitigating factor standing alone is sufficient to support a sentence of life imprisonment if the aggravating circumstance is not sufficient to outweigh that mitigating factor beyond a reasonable doubt. Also, the cumulative effect of the mitigating factors will support a sentence of life imprisonment if the aggravating circumstance is not sufficient to outweigh the mitigating factors beyond a reasonable doubt.

Hamilton County, Ohio, Public Defender memo < http://www.hamilton-co.org/pub_def/orders_and_entries.htm> (visited May 20, 2011).

[20] . See, e.g., W. Bowers, et al., "Foreclosed Impartiality in Capital Sentencing. Jurors' Predispositions, Guilt-Trial Experience, and Premature Decision Making," 83 Cornell L. Rev. 1476 (1998) (multi-state data).

[21] . 465 U.S. 37 (1984).

[22] . See, e.g., "Mandatory Justice: Eighteen Reforms to the Death Penalty," Constitution Project (2001), at 27.

[23] . J. Liebman, et al., A Broken System: Error Rates in Capital Cases, 1973-95  (2000), available at http://www2.law.columbia.edu/instructionalservices/liebman/ [hereafter *A Broken System*].

[24] . B. Schoenburg, "Durbin changes stance on death penalty," State Journal-Register, January 17, 2011.

[25] . *A Broken System*, note 23 above, at State Comparisons.

[26] . *Id.* at Circuit Comparisons.

[27] G. Uelmen, "The End of an Era," Californina Lawyer (Sept. 2010).

[28] . *A Broken System*, note 23 above, at State Comparisons.

[29] . F. Baumgartner & R. Richardson, "Rates of Reversals in the North Carolina Death Penalty," Univ. of North Carolina at Chapel Hill (Feb. 28, 2010), discussed in F. Baumgartner, "In NC, only 20 percent of condemned are executed," Charlotte Observer, March 5, 2010.

[30] . "Facts about Pennsylvania's Death Penalty," Associated Press, July 24, 2009.

[31] . Walla Walla Union-Bulletin, Nov. 10, 2009.

[32] . *A Broken System*, note 23 above.

[33] . State of Washington v. Dayva M. Cross (March 30, 2006) (Johnson, J., dissenting); see also, P. Whitley, "Death sentence upheld in triple murder," Seattle Post-Intelligencer, March 31, 2006.

Case: 15-2347 Document: 35 Filed: 07/27/2016 Pages: 4186
Case 2:11-cr-00077-PPS-APR Document 1027-1 Filed 08/22/14 Page 36 of 107

**Struck by Lightning, p.32**

34 . "Robert Philip Hanssen Espionage Case Press Release," FBI, Louis J. Freeh, February 20, 2001 < http://www.fbi.gov/about-us/history/famous-cases/robert-hanssen>.

35 . A. Johnson, "Jailhouse Killer Clarence Carter Executed," Columbus Dispatch, April 12, 2011.

36 . See S. Dewan, "Bomber Offers Guilty Pleas, and Defiance," New York Times, April 14, 2005; also Washington Post, April 6, 2005.

37 . M. James and A. de Vogue, "Teresa Lewis becomes 12th Woman to be Executed since 1976," ABC News, September 23, 2010.

38 . Associated Press, March 14, 2006.

39 . R. Feltz, "Despite a U.S. Supreme Court ban, Texas has continued to send mentally retarded criminals to death row," Texas Observer, Jan. 8, 2010.

40 . K. Johnson, "In hours before execution, a frenzied legal fight," USA Today, November 15, 2007.

41 . See P. Whitley, "Death sentence upheld in triple murder," Seattle Post-Intelligencer, March 31, 2006 (describing Ridgway's case in light of a proportionality challenge to a death sentence for another defendant).

42 . Associated Press, "Schizophrenic Killer to be Executed Tuesday," Houston Chronicle, May 17, 2004.

43 . New York Times, March 3, 2006; Press Release from the New Jersey Office of the Attorney General, May 19, 2004.

44 . Associated Press, "Wanda Jean Allen put to death," USA Today, January 12, 2001.

45 . Philadelphia Inquirer, March 3, 2006.

46 . "Should Manny Babbitt Die?" SF Gate, April 5, 1999.

47 . Boston Globe, October 15, 2003.

48 . C. Timberg, "Virginia Executes Inmate Who Killed Woman at 17," Washington Post, Oct. 15, 1998, at B1.  See Roper v. Simmons, 543 U.S. 551 (2005) (barring execution of juvenile offenders).

49 . S. Visser, J. Scott, "Nichols gets life without parole," Atlanta Journal-Constitution, December 13, 2008.

50 . Associated Press. "McQueen Witness Contradicted Self," Kentucky Post, August 6, 1997.

51 . J. McElhatton, "A killer deal: Be a star witness, escape execution," Washington Times, January 14, 2011.  Other examples in which sentences were reduced in exchange for valuable information include Phillip Leonetti, a member of the Philadelphia mob, who

Case: 15-2347    Document: 35            Filed: 07/27/2016    Pages: 4186
Case 2:11-cr-00077-PPS-APR   Document 1027-1   Filed 08/22/14   Page 37 of 107
**Struck by Lightning, p.33**

despite a criminal record that included 10 murders served just 5 years in prison because he cooperated with officials, and Salvatore Gravano, a well-known criminal who cooperated with the government and was sentenced to only 5 years, despite his involvement in 19 murders and other crimes. *Id.* Gravano was later imprisoned on unrelated drug charges.

[52] . A. Sachs, "Guilty, Innocent, Guilty," Time Magazine, January 16, 1995.

[53] . J. Toobin, "The Mitigator," The New Yorker, May 9, 2011.

[54] . J. Prugh, "Florida Executes Killer Spenkelink," L.A. Times, May 26, 1979.

[55] . J. Dwyer, "A High Cost, to Little Effect, for a Window Into the Mob," New York Times, April 12, 2011.

[56] . S. Mills & M. Possley, "Texas Man Executed on Disproved Forensics," Chicago Tribune, December 9, 2004.

[57] . M. Balleza, "After 17 Years on Death Row, Texas Inmate Walks Free," N.Y. Times, Oct. 7, 2004.

[58] . W. Glaberson, "Kaczynski Avoids a Death Sentence with a Guilty Plea," N.Y. Times, Jan. 23, 1998.

[59] . CNN & Associated Press, May 3, 2006.

[60] . See P. Nelson, "Defending the Devil: My Story as Ted Bundy's Last Lawyer," p.327 (William Morrow & Co., New York, 1994).

[61] . Report of the Royal Commission on Capital Punishment, 1949-1953, Cmd. 8932, at 595, quoted in McGautha v. California, 402 U.S. 183, 205 (1971).

[62] . Model Penal Code, 201.6, Comment 3, p. 71 (Tent. Draft No. 9, 1959), quoted in McGautha v. California, 402 U.S. 183, 205 (1971) (quoting the Royal Commission Report).

[63] . 428 U.S. 153 (1972).

[64] . Callins v. Collins, 510 U.S. 1141, 1144 (1994) (Blackmun, J., dissenting from denial of certiorari review).

[65] . J. Jeffries, "Justice Lewis F. Powell, Jr.," p.451 (1994) (quoting Justice Powell).

[66] . Baze v. Rees, No. 07-5439 (U.S. 2008), slip op. at 17 (Stevens, J., concurring) (quoting *Furman*, 408 U.S. at 312 (White, J., concurring)).

[67] . Report of the Council to the Membership of The American Law Institute On the Matter of the Death Penalty, at p.4 (April 15, 2009) (hereafter, *ALI Report*).

[68] . *Id*. at Annex B, p.49 (emphasis added).

[69] . American Bar Association, Death Penalty Moratorium Resolution Report, at 2 (1997).

Case: 15-2347     Document: 35            Filed: 07/27/2016     Pages: 4186
Case 2:11-cr-00077-PPS-APR   Document 1027-1   Filed 08/22/14   Page 36 of 107
**Struck by Lightning, p.34**

[70] . "Mandatory Justice: Eighteen Reforms to the Death Penalty," Constitution Project (2001), at 27.  The reform of proportionality review still has not been adopted.

[71] . H. Lee Sarokin, "Does a Botched Execution Constitute Double Jeopardy?" Huffington Post, Oct. 5, 2009 (emphasis added).

[72] . Moore v. Parker, No. 03-6105 (U.S. Court of Appeals for the Sixth Circuit, October 4, 2005) (Martin, J., dissenting) (emphasis added).

[73] . New Jersey Lawyer, May 19, 2008.

[74] . Available at www.deathpenaltyinfo.org/pollresults.  The survey of 1,500 registered voters was conducted for DPIC in 2010.  The margin of error is 2.5%.

[75] . *Id.* at question 57.

[76] . *Id.* at question 8.

[77] . See DPIC's 2010 Year End Report at <http://www.deathpenaltyinfo.org/documents/2010YearEnd-Final.pdf>.

[78] . See R. Dieter, "A Crisis of Confidence: Americans' Doubts About the Death Penalty," (Death Penalty Information Center 2007).

[79] . United States General Accounting Office, Death Penalty Sentencing, February 1990.

[80] . See discussion of the Baldus study in McCleskey v. Kemp, 481 U.S. 279, 286-87 (1987).

[81] . *McCleskey*, 481 U.S. at 279.

[82] . *Id.* at 321 (1987) (Brennan, J., dissenting) (emphasis added).

[83] . D. Baldus & G. Woodworth, "Race Discrimination in America's Capital Punishment System Since *Furman v. Georgia* (1972): The Evidence of Race Disparities and the Record of Our Courts and Legislatures in Addressing This Issue" (1997) (report prepared for the American Bar Association).  The disparities in nine states (CA, CO, GA, KY, MS, NJ, NC, PA and SC) were particularly notable because of their reliance on well-controlled studies.

[84] . See S. Gross & R. Mauro, "Patterns of Death: An Analysis of Racial Disparities in Capital Sentencing and Homicide Victimization," 37 Stanford L. Rev. 27, 78, 96 (1984); S. Gross & R. Mauro, "Death and Discrimination: Racial Disparities in Capital Sentencing" p.65-66 (Northeastern Univ. Press 1989).

[85] . G. Pierce & M. Radelet, "Death Sentencing in East Baton Rouge Parish, 1990-2008," 71 Louisiana Law Review 647, 671 (2011).

[86] . A. Davis, "Study indicates pattern in sentences," Arkansas Democrat-Gazette, September 8, 2008.

Case: 15-2347    Document: 35              Filed: 07/27/2016    Pages: 4186
Case 2:11-cr-00077-PPS-APR   Document 1027-1   Filed 08/22/14   Page 39 of 107

**Struck by Lightning, p.35**

[87] . M. Songer & I. Unah, "The Effect of Race, Gender, and Location on Prosecutorial Decision to Seek the Death Penalty in South Carolina," 58 S. Carolina Law Rev. 161 (Nov. 2006).

[88] . A. Welsh-Huggins, "Death Penalty Unequal," Associated Press, May 7, 2005; follow-up AP articles on May 8, 9, 2005.  The study also pointed to other indicators of arbitrariness—some of the worst offenders did not receive the death penalty. Nearly half of the 1,936 capital punishment cases ended with a plea bargain to a sentence less than death, including 131 cases in which the crime involved two or more victims and 25 involving at least 3 victims.

[89] . S. Dewan, "Blacks Still Being Blocked from Juries in the South, Study Finds," New York Times, June 2, 2010.

[90] . *Id*.

[91] . See, e.g., F. Baumgartner, "The Geography of the Death Penalty" (2010).

[92] . South Bend Tribune, Oct. 21, 2001.

[93] . *Capital Punishment in New York State: Statistics from Six Years of Representation*, Report from the Capital Defender Office, Sept. 2001 (data through June 30, 2001).

[94] . N. Minsker, et al., "Death in Decline '09," ACLU of Northern California, March 29, 2010.

[95] . R. Smith, "As arbitrary as ever," Second Class Justice, October 17, 2010.

[96] . See L. Montgomery, "Md. Questioning Local Extremes on Death Penalty," Wash. Post, May 12, 2002.

[97] . See Welsh-Huggins, note 88 above.

[98] . H. Ratcliffe, "Prosecutors use discretion differently in death sentencing," St. Louis Post-Dispatch, July 6, 2008.

[99] . *Id*.

[100] . D. Horn, "The politics of life and death," Cincinnati Enquirer, April 15, 2007.

[101] . *Id*.

[102] . K. Baicker, "The Budgetary Repercussions of Capital Convictions," National Bureau of Economic Research, Working Paper 8382, July 2001.

[103] . "Can Austin County afford 4 capital cases?," Houston Chronicle, Oct. 5, 2009.

[104] . H. Ratcliffe, "Prosecutors use discretion differently in death sentencing," St. Louis Post-Dispatch, July 6, 2008.

[105] . Jacksonville Daily Record, September 13, 2007.  On costs generally, see R. Dieter, "Smart on Crime: Reconsidering the Death Penalty in a Time of Economic Crisis," DPIC report (2009).

[106] . "Slamming the Courthouse Doors: Denial of Access to Justice and Remedy in America," American Civil Liberties Union, December 2010.

[107] . See Murray v. Giarratano, 492 U.S. 1 (1986).

[108] . See R. Paternoster & J. Deise, "A Heavy Thumb on the Scale: The Effect of Victim Impact Evidence on Capital Decision Making," 21 Criminology 129 (2011).

[109] . See T. Mowen & R. Schroeder, "Not In My Name: An Investigation of Victims' Family Clemency Movements and Court Appointed Closure," 12 Western Criminology Review 65 (2011).

[110] . See Kelly v. California, No. 07-11073 (U.S. Nov. 10, 2008) (Breyer, J., dissenting from denial of certiorari review) ("the film's personal, emotional, and artistic attributes themselves create the legal problem").

## DECLARATION OF KEVIN McNALLY REGARDING THE
## THE FREQUENCY OF FEDERAL DEATH SENTENCES

1.  I currently serve as the Director of the Federal Death Penalty Resource

Counsel Project, assisting court-appointed and defender attorneys charged with the

defense of capital cases in the federal courts.  I have served as Resource Counsel

since the inception of the Resource Counsel Project (RCP) in January, 1992.  The

Project is funded and administered under the Criminal Justice Act by the Office of

Defender Services of the Administrative Office of the United States Courts.

2.  My responsibilities as federal resource counsel include the monitoring of

all federal capital prosecutions throughout the United States in order to assist in the

delivery of adequate defense services to indigent capital defendants in such cases.

This effort includes the collection of data on the initiation and prosecution of federal

capital cases.[1]

---

[1]The work of the Federal Death Penalty Resource Counsel Project is described in a report prepared by the Subcommittee on Federal Death Penalty Cases, Committee on Defender Services, Judicial Conference of the United States, FEDERAL DEATH PENALTY CASES: RECOMMENDATIONS CONCERNING THE COST AND QUALITY OF DEFENSE REPRESENTATION (May, 1998), at 28-30. www.uscourts.gov/dpenalty/1COVER.htm. The Subcommittee report "urges the judiciary and counsel to maximize the benefits of the Federal Death Penalty Resource Counsel Project ..., which has become essential to the delivery of high quality, cost-effective representation in death penalty cases ...." *Id.* at 50.  A recent update to the Report stated: "Many judges and defense counsel spoke with appreciation and admiration about the work of Resource Counsel. Judges emphasized their assistance in recruiting and recommending counsel for appointments and their availability to

3.    In order to carry out the duties entrusted to me, I maintain a comprehensive list of federal death penalty prosecutions and information about these cases.  I accomplish this by internet news searches, by reviewing dockets and by downloading and obtaining indictments, pleadings of substance, notices of intent to seek or not seek the death penalty, and by telephonic or in-person interviews with defense counsel or consultation with chambers. This information is regularly updated and is checked for accuracy by consulting with defense counsel.  The Project's information regarding federal capital prosecutions has been relied upon by the Administrative Office of the United States Courts, by the Federal Judicial Center and by various federal district courts.

4.  I have been asked to provide information to the Court regarding certain of the data that the Project has collected.  I am prepared to testify as a witness as well. The areas I was asked to provide data concern: (1) the frequency with which the federal death penalty has been sought and imposed since 1988; (2) the race of the defendants as to whom a capital prosecution has been authorized; (3) the frequency

---

consult on matters relating to the defense, including case budgeting. Defense counsel found their knowledge, national perspective, and case-specific assistance invaluable."
http://www.uscourts.gov/FederalCourts/AppointmentOfCounsel/Publications/UpdateFederalDeathPenaltyCases.aspx

2

with which the federal death penalty is authorized and imposed on a regional basis;

and (4) the race and gender of victims.

5.  The Project has collected information regarding all federal executions and

all potential and actual federal death penalty prosecutions initiated pursuant to 21

U.S.C. § 848(e) *et seq.,* enacted in 1988, and/or 18 U.S.C. §3591, *et seq.*, enacted in

1994.

6.  Based on the Project's figures, as well as the reports published by the

Department of Justice in September 2000 and June 2001, the "pool" of potential

capital defendants in the federal system since 1988 totals 3,827.  This figure is

current as of April 28, 2014. This consists of, among others, 52 cases reviewed prior

to the 1995 Death Penalty Protocols put into place by Attorney General Reno,[2] 682

reviewed by Ms. Reno after the Protocols went into effect (2000 DOJ Study), 638

---

[2]Prior to the Protocols, which went into effect on January 27, 1995, the Attorney General only reviewed those cases in which a United States Attorney requested permission to seek the death penalty.  Potential capital cases where the local determination was not to seek the death penalty were not reviewed by Main Justice.  The change wrought by the Protocols was a requirement that *all* potential death-penalty cases, whether the United States Attorney wished to pursue the death penalty or not, be submitted to Main Justice for review and a final decision by the Attorney General. However, the United States Attorney remained free to enter into a plea agreement specifying a sentence other than death. Attorney General Ashcroft required Main Justice review of all such proposed plea agreements in 2001.

3

reviewed by Attorney General Ashcroft (RCP total), 426 reviewed by Attorney General Gonzales (RCP total), 18 reviewed by Acting Attorney General Keisler (RCP total), 161 reviewed by Attorney General Mukasey (RCP total), 4 reviewed by Acting Attorney General Filip (RCP total) and 755 reviewed by Attorney General Holder (RCP total).  There are also an additional 303 cases identified by United States Attorneys as potential capital cases that were never submitted for review (2001 DOJ Report).[3] The Project has also identified additional cases reviewed by the various Attorneys General as well as others that were never submitted for review and/or charged as capital offenses even though there was justification for doing so.  Of the total of 3,827 potential federal capital defendants, 240 are currently pending review by the Department of Justice, bringing the total defendants reviewed so far to 3,587.

7.   From this group of 3,587 potential capital defendants, a total of 493 defendants have actually been authorized for capital prosecution.  Thus, the Department of Justice has authorized capital prosecutions in approximately 14% (493/3,587) of the cases in which the penalty could have been sought.  To date, juries have sentenced 77 defendants to death (three of these defendants were sentenced

---

[3]*See* the discussion of this figure at n. 10 of the June 2001 Supplemental Justice Department Study.

to death at both a trial and then a retrial). Three defendants have been executed.[4]

One defendant was granted clemency. There are 57 defendants presently on the

federal death row under an active sentence of death. These cases are in various

stages of review via direct appeal or post-conviction proceedings brought pursuant

to 28 U.S.C. § 2255. There are 21 defendants presently pending or in trial who have

been "authorized" by the Attorney General, including four defendants who were

previously sentenced to death.

8. To date, juries have sentenced 149 defendants to a life sentence and 77

defendants to death. Judges have sentenced two defendants to life in prison.

I declare under the penalty of perjury under the laws of the United States of

America, 28 U.S.C. §1746, that the foregoing is true and correct. Executed this 30th

day of April, 2014.

　　　　　　　　　　　　　　　　 /s/ Kevin McNally
　　　　　　　　　　　　　　　　Kevin McNally

---

[4]Two federal executions took place in the year 2001 (Timothy McVeigh and Juan Garza) and one in the year 2003 (Louis Jones). Messrs. McVeigh and Jones were executed pursuant to the Federal Death Penalty Act of 1994. Mr. Garza was executed pursuant to the 1988 enactment, 21 U.S.C. § 848(e).

5

## DECLARATION OF KEVIN McNALLY REGARDING
## THE GEOGRAPHIC LOCATION OF CASES, THE FREQUENCY OF
## FEDERAL DEATH SENTENCES AND THE RACE OF DEFENDANTS

1.  I currently serve as the Director of the Federal Death Penalty Resource Counsel Project, assisting court-appointed and defender attorneys charged with the defense of capital cases in the federal courts.  I have served as Resource Counsel since the inception of the Resource Counsel Project (RCP) in January, 1992.  The Project is funded and administered under the Criminal Justice Act by the Office of Defender Services of the Administrative Office of the United States Courts.

2.  My responsibilities as federal resource counsel include the monitoring of all federal capital prosecutions throughout the United States in order to assist in the delivery of adequate defense services to indigent capital defendants in such cases.  This effort includes the collection of data on the initiation and prosecution of federal capital cases.[1]

---

[1]The work of the Federal Death Penalty Resource Counsel Project is described in a report prepared by the Subcommittee on Federal Death Penalty Cases, Committee on Defender Services, Judicial Conference of the United States, FEDERAL DEATH PENALTY CASES: RECOMMENDATIONS CONCERNING THE COST AND QUALITY OF DEFENSE REPRESENTATION (May, 1998), at 28-30.  www.uscourts.gov/dpenalty/1COVER.htm. The Subcommittee report "urges the judiciary and counsel to maximize the benefits of the Federal Death Penalty Resource Counsel Project ..., which has become essential to the delivery of high quality, cost-effective representation in death penalty cases ...." *Id.* at 50. A recent update to the Report stated: "Many judges and defense counsel spoke with appreciation and admiration about the work of Resource Counsel. Judges emphasized their assistance in recruiting and recommending counsel for appointments and their availability to consult on matters relating to the defense, including case budgeting. Defense counsel found their knowledge, national perspective, and case-specific assistance invaluable." http://www.uscourts.gov/FederalCourts/AppointmentOfCounsel/Publications/UpdateFederalDeathPenaltyCases.aspx

1826

3.   In order to carry out the duties entrusted to me, I maintain a comprehensive list of federal death penalty prosecutions and information about these cases.  I accomplish this by internet news searches, by reviewing dockets and by downloading and obtaining indictments, pleadings of substance, notices of intent to seek or not seek the death penalty, and by telephonic or in-person interviews with defense counsel or consultation with chambers. This information is regularly updated and is checked for accuracy by consulting with defense counsel.  The Project's information regarding federal capital prosecutions has been relied upon by the Administrative Office of the United States Courts, by the Federal Judicial Center and by various federal district courts.

4.   I   have   been   asked   by   counsel   for   Alexis   Candelario-Santana   to   provide information to the Court regarding certain of the data that the Project has collected.  I am prepared to testify as a witness as well.  The areas I was asked to provide data concern: (1) the frequency with which the federal death penalty has been sought and imposed since 1988; (2) the race of the defendants as to whom a capital prosecution has been authorized; (3) the frequency with which the federal death penalty is authorized and imposed on a regional basis; and (4) the race and gender of victims.

**I.**

## FREQUENCY WITH WHICH THE FEDERAL DEATH PENALTY
## IS SOUGHT AND IMPOSED

5.   The Project has collected information regarding all federal executions and all

potential and actual federal death penalty prosecutions initiated pursuant to 21 U.S.C. §

848(e) *et seq.,* enacted in 1988, and/or 18 U.S.C. §3591, *et seq.*, enacted in 1994.

6. Based on the Project's figures, as well as the reports published by the Department

of Justice in September 2000 and June 2001, the "pool" of potential capital defendants in

the federal system since 1988 totals 3,441. This figure is current as of September 27, 2012.

This consists of, among others, 52 cases reviewed prior to the 1995 Death Penalty Protocols

put into place by Attorney General Reno,[2] 682 reviewed by Ms. Reno after the Protocols

went into effect (2000 DOJ Study), 638 reviewed by Attorney General Ashcroft (RCP total),

426 reviewed by Attorney General Gonzales (RCP total), 18 reviewed by Acting Attorney

General Keisler (RCP total), 161 reviewed by Attorney General Mukasey (RCP total), 4

reviewed by Acting Attorney General Filip (RCP total) and 529 reviewed by Attorney

General Holder (RCP total). There are also an additional 303 cases identified by United

States Attorneys as potential capital cases that were never submitted for review (2001 DOJ

---

[2]Prior to the Protocols, which went into effect on January 27, 1995, the Attorney General only reviewed those cases in which a United States Attorney requested permission to seek the death penalty. Potential capital cases where the local determination was not to seek the death penalty were not reviewed by Main Justice. The change wrought by the Protocols was a requirement that *all* potential death-penalty cases, whether the United States Attorney wished to pursue the death penalty or not, be submitted to Main Justice for review and a final decision by the Attorney General. However, the United States Attorney remained free to enter into a plea agreement specifying a sentence other than death. Attorney General Ashcroft required Main Justice review of all such proposed plea agreements in 2001.

Report).[3] The Project has also identified additional cases reviewed by the various Attorneys General as well as others that were never submitted for review and/or charged as capital offenses even though there was justification for doing so.  Of the total of 3,441 potential federal capital defendants, 246 are currently pending review by the Department of Justice, bringing the total defendants reviewed so far to 3195.

7.  From this group of 3195 potential capital defendants, a total of 488 defendants have actually been authorized for capital prosecution.  Thus, the Department of Justice has authorized capital prosecutions in approximately 15% (488/3195) of the cases in which the penalty could have been sought.  To date, juries have sentenced 72 defendants to death.  Three defendants have been executed.[4]  One defendant was granted clemency.  There are 57 defendants presently on the federal death row under an active sentence of death.  These cases are in various stages of review via direct appeal or post-conviction proceedings brought pursuant to 28 U.S.C. § 2255.  There are 36 defendants presently pending or in trial who have been "authorized" by the Attorney General, including five defendants who were previously sentenced to death.

---

[3]*See* the discussion of this figure at n. 10 of the June 2001 Supplemental Justice Department Study.

[4]Two federal executions took place in the year 2001 (Timothy McVeigh and Juan Garza) and one in the year 2003 (Louis Jones).  Messrs. McVeigh and Jones were executed pursuant to the Federal Death Penalty Act of 1994.  Mr. Garza was executed pursuant to the 1988 enactment, 21 U.S.C. § 848(e).

To date, juries have sentenced 140 defendants to a life sentence and 72 defendants to death.  Judges have sentenced two defendants to life in prison.

## II.

### RACE OF DEFENDANTS AUTHORIZED
### FOR FEDERAL CAPITAL PROSECUTIONS

8.    The racial composition of the pool of 488 defendants whose cases were authorized for a federal capital prosecution is as follows: (A) African-American, 247 (51%); (B) Caucasian, 129 (26%); (C) Latino, 90 (18%); and (D), "other," 22 (5%).  These figures are current as of September 27, 2012.

## III.

### RACE AND GENDER OF VICTIMS

9. Since 2000, in a grossly disproportionate number of cases, juries have imposed the death penalty when the victim was a white female.  As of December 2007, white female victim cases constituted 43% (26 of 61) of federal death row but only 9% (59 of 626) of the available pool of potential defendants since the year 2000.  Moreover, 59% of all death sentences between 2000 and 2008 have involved white female victims.  This is approximately six times greater than one would expect given the pool of white female victim cases and approximately six times the death sentencing rate for non-white victim cases.

10. Attached as Exhibit A is a 2008 declaration by undersigned describing 403

5

"completed" federal death penalty cases with race and gender information as to each defendant and victim.  Attached as Exhibit B is a complete data set of all such cases as of September 2008.

11.  Attached as Exhibit C is a 2008 declaration by an expert, Lauren Cohen Bell, Ph.D., which concludes that federal capital defendants accused of the murder of a white female are three times more likely than other federal capital defendants to be sentenced to death.  Dr. Bell concludes:  "[T]his correlation between white female victims and death sentencing is highly statistically significant, systemic, and not the result of chance." [Exhibit C at 3].  Dr. Bell states that there is an "essentially zero" or "one in one thousand" chance that the race and gender of the victim is not related to the capital sentencing outcome. [Exhibit C at 4, 5, 6].  Attached as Exhibit D is Dr. Bell's 2008 curriculum vita. This opinion holds regardless of the race of the defendant.

**IV.**

**REGIONAL VARIATIONS**

12.  Based on figures compiled by the Death Penalty Information Center (current as of September 27, 2012) the states which currently lead the nation in post-*Gregg* executions are Texas (486), Virginia (109), Oklahoma (100) and Florida (73).  The states whose federal districts have the most authorized federal death penalty prosecutions (including pending cases) are Virginia (57), New York (45), California (42), Texas (30), Missouri (28) and

6

Maryland (26). Federal districts in the following states have had more than one federal death sentence returned by juries: Texas (12), Missouri (8), Virginia (7), Georgia (3), Louisiana (3), Oklahoma (3), Maryland (2), Arkansas (2), California (2), Florida (2), Illinois (2), Iowa (2), North Carolina (3), South Carolina (2) and West Virginia (2). Of the 72 federal death sentences imposed by juries since 1988, 45 have come from the traditional "death belt" states, the states that have historically executed the most people.

13. By way of contrast, there have been 18 federal death-penalty cases tried in New York State involving a total of 24 defendants, as follows: 11 trials in the Eastern District of New York (a total of 12 defendants), five in the Southern District of New York (a total of eight capital defendants - one was acquitted) and two in the Northern District of New York (two capital defendants in each case).[5] Only one death verdict has been returned. Five other trials took place in the Second Circuit, four in Connecticut and one in Vermont. Two defendants were sentenced to life in prison. One defendant was acquitted. Two defendants were sentenced to death.

14. In *United States v. bin Laden, et al.,* a case where two defendants faced the death penalty in the Southern District of New York for their roles in the simultaneous terrorist bombing of United States embassies in East African resulting in 224 deaths, thousands of injuries, and the destruction of two United States Embassies, the jury declined to impose

---

[5]These are figures current as of the date of this declaration.

sentences of death.

15. I have also been asked by counsel for Alexis Candelario-Santana to provide information on the number of authorized federal death penalty cases, since 1988, by the state in which each such prosecution was brought. According to the Project's records, the following compilation accurately sets forth the particular state in which each of the 488 federal death penalty cases authorized since 1988 was prosecuted:

> Alabama (6), Alaska (2), Arizona (6), Arkansas (7), California (42), Colorado (8), Connecticut (5), DC (17), Florida (15), Georgia (9), Hawaii (2), Idaho (1), Illinois (12), Indiana (6), Iowa (4), Kansas (7), Kentucky (5), Louisiana (11), Maryland (26), Massachusetts (4), Michigan (19), Mississippi (3), Missouri (28), New Jersey (3), New Mexico (9), New York (45), North Carolina (10), North Dakota (2), Ohio (6), Oklahoma (6), Pennsylvania (22), Puerto Rico (23), Rhode Island (1), South Carolina (3), Tennessee (15), Texas (30), Vermont (3), Virginia (57), West Virginia (8).

I declare under the penalty of perjury under the laws of the United States of America, 28 U.S.C. §1746, that the foregoing is true and correct. Executed this 27th day of September, 2012.

<div style="text-align:right">
/s/ Kevin McNally<br>
Kevin McNally
</div>

Ct. Ex 22.
5/29/08
3:15pm

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                     :

UNITED STATES OF AMERICA         :

              - v. -             :

                                   :        S9 04 Cr. 186 (SCR)

KHALID BARNES,              :
      a/k/a "Big Homie,"      :
      a/k/a "Lid,"           :

                       :

           Defendant.       :

                       :

- - - - - - - - - - - - - - - - - - - - - - - - - - - x


## PENALTY PHASE
## JURY INSTRUCTIONS

**<u>Table of Contents</u>**

Introductory Instruction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Burden of Proof . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Evidence . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Defendant's Right Not to Testify . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Separate Deliberations . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Finding the Gateway Factors . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Introduction to Statutory Aggravating Factors . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

First Statutory Aggravating Factor: Pecuniary Gain . . . . . . . . . . . . . . . . . . . . . . . . 18

Second Statutory Aggravating Factor: Substantial Planning . . . . . . . . . . . . . . . . . . 19

Third Statutory Aggravating Factor: Multiple Victims . . . . . . . . . . . . . . . . . . . . . . 20

Non-Statutory Aggravating Factors . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Mitigating Factors . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

Weighing Aggravating And Mitigating Factors . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

Determination of Sentence . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

Justice Without Discrimination . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 41

Concluding Remarks . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42

## Introductory Instruction

Members of the jury, it is again my duty to instruct you as to the law applicable to the sentencing phase of this case. The sole question before you is whether the defendant should be sentenced for his capital offenses to (1) the death penalty; or (2) lifetime imprisonment without the possibility of release; or (3) some other lesser sentence to be determined by the Court, which can be up to lifetime imprisonment without the possibility of release. The selection among these very serious choices is yours and yours alone to make. If you determine, as to a particular count, that the defendant should be sentenced to death, or instead to life imprisonment without the possibility of release, the Court is required to impose whichever sentence you choose as to that count. If you determine that the defendant should receive some lesser sentence, I will impose a sentence authorized by law, which can be up to lifetime imprisonment. There is no parole in the federal system, so a life sentence means exactly that – the defendant will spend the rest of his life in prison without the possibility of release.

You have previously found the defendant guilty of Counts 27 and 28 in the Indictment, which I read to you at the start of this penalty phase.

1

There are two capital counts at issue here, and you must approach the sentencing decision before you separately as to each count and, of course, with an open mind. I cannot stress to you enough the importance of your giving careful and thorough consideration to all the evidence. And regardless of any opinion you may have as to what the law may be or should be, it would be a violation of your oaths as jurors to base your sentencing decision upon any view of the law other than that which is given to you in these instructions.

The instructions I am giving you now are a complete set of instructions on the law applicable to the sentencing decision as to the defendant, Mr. Barnes. During your deliberations, you should thus rely on these instructions. I have also prepared a Special Verdict Form that you must complete. The form details the findings you must make and will serve as a guide to your deliberations.

Now, although Congress has left it to you, the jury, to decide the defendant's proper punishment, it has narrowed and channeled your discretion in specific ways particularly by making you consider and weigh any "aggravating" and "mitigating" factors present in this case. As I explained previously, these factors have to do with the circumstances of the crime, or the personal traits, character, or

2

background of the defendant, or anything else relevant to the sentencing decision. Aggravating factors are those that would lend support to imposition of the death penalty. By contrast, mitigating factors are those that suggest that the death penalty is not the appropriate sentence in this case.

Of course, your task is not simply to decide what aggravating and mitigating factors exist here, if any. Rather, you are called upon to evaluate any such factors and to make a unique, individualized choice among the death penalty, life in prison without the possibility of release, or some other lesser sentence to be determined by the Court. The law never requires imposition of a sentence of death and never assumes that any defendant found guilty of committing capital murder must be sentenced to death. Plainly, then, the law does not presume that Mr. Barnes, in particular, should be sentenced to death. Indeed, the law carries with it a presumption in favor of a verdict other than death, a presumption that can be overcome only if the government persuades each and every one of you beyond a reasonable doubt that the aggravating factor or factors found to exist (1) outweigh the mitigating factors found to exist and, if they do, (2) that they sufficiently outweigh the mitigating factors to justify a sentence of death.

3

In carrying out this weighing and balancing process, the members of the jury are not mere fact-finders. Instead, jurors are called upon to make a unique, individualized judgment about the appropriateness of sentencing another human being to death. This is not a mechanical process. Neither is the decision determined by raw numbers. Members of a death-penalty jury do not simply count factors. Instead, individual jurors consider such factors qualitatively, assessing the weight and value of each factor. Any single mitigating factor may outweigh several aggravating factors. On the other hand, one aggravating factor proved, if sufficiently serious, may outweigh several mitigating factors. In short, what is called for in weighing the various factors is not an arithmetic calculation, but an individual juror's careful, considered, and mature judgment as to the weight to be given to the aggravating and mitigating factors present in this case.

As we begin this process, there are two points I wish to remind you of from my preliminary instructions, and reiterate as part of these final instructions. The first is that you are never required to return a verdict of death. The law provides you with guidance in making a decision, but your decision on this question of life or death is a judgment which the law, in the final analysis, leaves up to each

4

of you.  The second point is that in order to impose a sentence of death, all twelve jurors must agree that death is the appropriate sentence.  If even a single juror does not conclude that death is the appropriate punishment, the death penalty will not be imposed.

5

## Burden of Proof

The Government, at all times and as to both capital counts, has the burden of proving beyond a reasonable doubt that the appropriate sentence for the defendant is in fact the death penalty. Specifically, that means that the Government must prove as to each capital count all of the following beyond a reasonable doubt: (1) the existence of at least one gateway factor; (2) the existence of at least one statutory aggravating factor; and (3) the existence, if any, of non-statutory aggravating factors. Finally, the Government must prove beyond a reasonable doubt that all the aggravating factors found to exist sufficiently outweigh all the mitigating factors found to exist so as to justify a sentence of death, or, in the absence of any mitigating factor, that the aggravating factors found to exist alone make a sentence of death appropriate.

A "reasonable doubt" is a doubt based upon reason and common sense after careful and impartial consideration of all the evidence. Proof beyond a reasonable doubt must be proof of such a convincing character that a reasonable person would rely and act upon it without hesitation in the most important matters of his or her own affairs. Yet proof beyond a reasonable doubt does not mean proof

6

beyond all possible doubt.

A defendant never has the burden of disproving the existence of anything which the Government must prove beyond a reasonable doubt. The burden is wholly upon the Government; the law does not at all require the defendant to produce evidence that a particular aggravating factor does not exist or that death is not an appropriate sentence.

As such, the defendant is not required to assert or establish any mitigating factors. However, if one or more mitigating factors are asserted, it is the defendant's burden to establish any mitigating factors by a preponderance of the evidence. To prove something by a preponderance of the evidence is a lesser standard of proof than proof beyond a reasonable doubt. To prove something by a preponderance of the evidence is to prove that it is more likely true than not true. It is determined by considering all of the evidence and deciding what evidence is more believable. If, however, the evidence is equally balanced, you cannot find that the mitigating factor has been proved.

The preponderance of the evidence is not determined by the greater number of witnesses or exhibits presented by the Government or the defendant.

7

Rather, it is the quality and persuasiveness of the information which controls.

## Evidence

In making all the determinations you are required to make in this phase of the trial, you may consider any information presented during this penalty phase and the guilt phase. Also, recall that for our purposes here the terms "evidence" and "information" have the same meaning.

In deciding what the facts are, you may have to decide what testimony you believe and what testimony you do not believe. You may believe all of what a witness said, or only part of it, or none of it. In deciding what testimony of any witness to believe, consider the witness's intelligence, the opportunity the witness had to see or hear the things testified about, the witness's memory, any motives that witness may have for testifying a certain way, the manner of the witness while testifying, whether that witness said something different at an earlier time, the general reasonableness of the testimony, and the extent to which the testimony is consistent with other evidence that you believe.

Additionally, because the law does not permit any witness to state whether he or she personally favors or opposes the death penalty in this case, you should draw no inference either way from the fact that no witnesses have testified as

9

63

to their views on this subject.  You have no reason to believe, nor should you

speculate, as to whether any witness supports or disfavors the death penalty in this

case.  You are to draw no inferences about that one way or the other.

10

64

## **Defendant's Right Not to Testify**

Mr. Barnes did not testify in the penalty phase of this case. He has a right not to do so and there is no burden upon the defendant to prove that he should not be sentenced to death. Instead, the burden is entirely on the Government to prove, beyond a reasonable doubt, that a sentence of death is in fact justified. Accordingly, the fact that Mr. Barnes did not testify must not be considered by you in any way, or even discussed, in arriving at any aspect of your sentencing decision, including the existence or non-existence of an alleged aggravating or mitigating factor.

11

## Separate Deliberations

You must deliberate and determine the appropriate sentence for each of the capital counts separately. Although I will be discussing the capital counts together, your findings regarding gateway factors, aggravating factors, and all other issues pertaining to these counts must treat each of these counts separately. It is possible that, even though both of the counts are connected with the same offense, you may find differences which would justify different sentences on different counts.

The instructions I am about to give you, as well as the Special Verdict Form you will be completing, will first address your findings, if any, regarding the four "gateway factors" and the statutory aggravating factors identified by the Government with regard to each capital count. The instructions and the Special Verdict Form thereafter address your findings, if any, as to each capital count regarding the existence of non-statutory aggravating factors and mitigating factors, as well as the weighing of aggravating and mitigating factors.

12

**Finding the Gateway Factors**

Before you may consider the imposition of the death penalty for any capital count, you must first unanimously find, beyond a reasonable doubt, the existence as to that count of at least one of the four gateway factors identified by the Government. The gateway factors are as follows:

1.     That the defendant intentionally killed the victim of the particular capital offense charged in the respective count of the Indictment; or

2.     That the defendant intentionally inflicted serious bodily injury that resulted in the death of the victim of the particular capital offense charged in the respective count of the Indictment; or

3.     That the defendant intentionally participated in an act, contemplating that the life of a person would be taken or intending that lethal force would be used in connection with a person, other than one of the participants in the offense, and the victim of the particular capital offense charged in the respective count of the Indictment died as a direct result of the act; or

4.     That the defendant intentionally and specifically engaged

13

in an act of violence, knowing that the act created a grave risk of death to a person, other than one of the participants in the offense, such that participation in the act constituted a reckless disregard for human life and the victim of the particular capital offense charged in the respective count of the Indictment died as a direct result of the act.

Your findings as to whether the Government has proven the existence, beyond a reasonable doubt, of a particular factor from among these four gateway factors must be separate and unanimous as to each capital count.

And with regard to your findings, you may not rely solely upon your first-stage verdict of guilt or your factual determinations therein. Instead, you must now each decide this issue for yourselves again.

Any finding that a gateway factor has been proven as to a particular capital count must be based on the defendant's personal actions and intent. Intent or knowledge may be proven like anything else. You may consider any statements made and acts done by the defendant, and all the facts and circumstances in evidence which may aid in a determination of the defendant's knowledge or intent.

14

You may, but are not required to, infer that a person intends the natural and probable consequences of acts knowingly done or knowingly omitted.

In the event that you unanimously find, beyond a reasonable doubt, that a particular gateway factor exists as to both capital counts, you are to indicate that finding in the appropriate box provided on the Special Verdict Form.  In the event that you unanimously find, beyond a reasonable doubt, that a particular gateway factor exists as to one, but not both, of the capital counts, you are to indicate that finding in the appropriate box provided on the Special Verdict Form, and also identify on the line provided, by count number, the specific capital count as to which you find that gateway factor applies.  If you do not unanimously find that a particular gateway factor has been proven beyond a reasonable doubt with respect to any of the capital counts, you should mark the appropriate box provided on the Special Verdict Form.

I instruct you that gateway factors are not aggravating factors and any that you find may not be weighed by you in deciding whether or not to impose a sentence of death.

For either capital count, if you do not unanimously find that the

15

Government has proven beyond a reasonable doubt the existence as to that count of any of the four gateway factors, your deliberative task as to that capital count will be over and the Court will impose a sentence on that count of life imprisonment without the possibility of release or some other lesser sentence authorized by law, up to and including lifetime imprisonment without possibility of release.  Section I, Part B of the Special Verdict Form provides a space for you to indicate those counts, if any, for which you have not unanimously found that the Government has proven beyond a reasonable doubt the existence of any gateway factor.

16

**Introduction to Statutory Aggravating Factors**

If and only if you unanimously find that the Government has proven, beyond a reasonable doubt, that at least one of the four gateway factors exists as to a particular capital count, you must then proceed to determine whether the Government has proven, beyond a reasonable doubt, the existence of any of the following statutory aggravating factors with respect to that same count:

1.     The defendant committed the offenses in the expectation of the receipt of anything of pecuniary value, that is, narcotics and money.

2.     The defendant committed the offenses after substantial planning and premeditation to cause the death of a person.

3.     The defendant intentionally killed more than one person in a single criminal episode.

At this point the law directs you to consider and decide separately as to each of the capital counts for which you have unanimously found the existence of at least one gateway factor, the existence or non-existence of the statutory aggravating factors specifically claimed by the Government.  You are reminded that to find the existence of a statutory aggravating factor as to a particular count, your decision

17

must be unanimous and beyond a reasonable doubt.  Any finding that one or more of these factors has been proven must be based on the defendant's personal actions and intent.

In the event that you unanimously find, beyond a reasonable doubt, that a particular statutory aggravating factor exists as to both of the capital counts for which you have found the existence of at least one gateway factor, you are to indicate that finding in the appropriate box provided on the Special Verdict Form. In the event that you unanimously find, beyond a reasonable doubt, that a particular statutory aggravating factor exists as to one, but not both, of the capital counts for which you have found the existence of at least one gateway factor, you are to indicate that finding in the appropriate box provided on the Special Verdict Form, and also identify on the line provided, by count number, the particular counts as to which you find the statutory aggravating factor applies.  If you do not unanimously find that a particular statutory aggravating factor has been proved beyond a reasonable doubt with respect to either of the capital counts you are considering, you should mark the appropriate box provided on the Special Verdict Form.

For any capital count for which you unanimously found the existence of

18

at least one gateway factor, if you do not also unanimously find as to that same count the existence of at least one statutory aggravating factor, then your deliberative task as to that count will be over, and the Court will impose a sentence on that count of life imprisonment without the possibility of release or some lesser authorized sentence, which can be up to lifetime imprisonment without the possibility of release. Section II, Part B of the Special Verdict Form provides a space for you to indicate the counts, if any, for which you have not unanimously found that the Government has proven beyond a reasonable doubt the existence of any aggravating factor.

Let me now instruct you in detail on the specific elements necessary for the Government to prove each of these statutory aggravating factors beyond a reasonable doubt.

19

## First Statutory Aggravating Factor: Pecuniary Gain

The first statutory aggravating factor alleged by the Government with regard to the capital counts is that the defendant committed the offenses in the expectation of the receipt of anything of pecuniary value.

The words "expectation of receipt" should be given their ordinary, everyday meaning which includes obtaining or expecting to obtain something.

"Anything of pecuniary value" means anything in the form of money, property, or anything else having some economic value, benefit or advantage.

Your finding as to this statutory aggravating factor must be indicated in the appropriate space in Section II, Part A, Question No. 1 of the Special Verdict Form.

20

## Second Statutory Aggravating Factor: Substantial Planning

The second statutory aggravating factor alleged by the Government with regard to the capital counts is that the defendant committed the offenses under the particular counts after substantial planning and premeditation to cause the death of a person.

"Planning" means mentally formulating a method for doing something or achieving some end.

"Premeditation" means thinking or deliberating about something and deciding beforehand whether to do it.

"Substantial" planning and premeditation means a considerable or significant amount of planning and premeditation.

To find that the Government has satisfied its burden of proving beyond a reasonable doubt that the defendant engaged in substantial planning and premeditation to cause the death of a person, you must unanimously agree on the particular object of the substantial planning and premeditation, namely to cause the death of a person.  Your finding as to this statutory aggravating factor must be indicated in the appropriate space in Section II, Part A, Question No. 2 of the

21

Special Verdict Form.

22

## **Third Statutory Aggravating Factor: Multiple Victims**

The third and final statutory aggravating factor alleged by the Government with regard to the capital counts is that the defendant intentionally killed more than one person in a single criminal episode.

To establish the existence of this factor, the Government must prove beyond a reasonable doubt that the defendant intentionally killed more than one person in a single criminal episode. You must unanimously agree on the particular actual victims in order to find this factor has been proved beyond a reasonable doubt.

"Intentionally killing" a person means killing a person on purpose, that is: willfully, deliberately, or with a conscious desire to cause a person's death (and not just accidentally or involuntarily).

"A single criminal episode" is an act or series of related criminal acts which occur within a relatively limited time and place, or are directed at the same person or persons, or are part of a continuous course of conduct related in time, place, or purpose.

You may, but are not required to, infer that a person of sound mind

23

intended the ordinary, natural, and probable consequences of his knowing and voluntary acts.  Thus, you may infer from the defendant's conduct that he intended to kill a person if you find: (1) that the defendant was a person of sound mind; (2) that the victim's death was an ordinary, natural, and probable consequence of the defendant's acts; and (3) that the defendant committed these acts knowingly and voluntarily. But once again, you are not required to make such an inference.

Your finding as to this statutory aggravating factor must be indicated in the appropriate space in Section II, Part A, Question No. 3 of the Special Verdict Form.

24

**Non-Statutory Aggravating Factors**

If and only if you have unanimously found that the Government has proven, beyond a reasonable doubt, the existence as to a particular capital count of at least one gateway factor and at least one statutory aggravating factor alleged by the Government, you must then consider whether the Government has proven the existence of any non-statutory aggravating factors with regard to that same count. You must agree unanimously, and separately as to each count, that the Government has proven beyond a reasonable doubt the existence of any of the alleged non-statutory aggravating factors before you may consider that non-statutory aggravating factor in your deliberations.

The law permits you to consider and discuss only the five non-statutory aggravating factors specifically claimed by the Government in advance and listed below. You are not free to consider any other facts in aggravation that you conceive of on your own.

25

The non-statutory aggravating factors alleged by the Government with regard to each of the capital counts are as follows:

1.    The defendant caused injury, harm, and loss to the victim's family because of the victim's personal characteristics as an individual human being and the impact of his death upon the victim's family.

2.    The defendant committed the offense while under court supervision, namely while on Supervised Release following his conviction in the United States District Court for the Northern District of West Virginia for a drug trafficking offense.

3.    On or about June 9, 1999, the defendant was convicted in the United States District Court for the Northern District of West Virginia for a drug trafficking offense.

4.    In addition to being convicted of the murders of Demond Vaughan and Sergio Santana, the defendant was convicted of participating in a racketeering enterprise.

5.  In addition to being convicted of the murders of Demond Vaughan and Sergio Santana, the defendant was convicted of conspiring to kidnap, and

26

kidnapping Eddy Solano-Herrera.

These non-statutory aggravating factors are self-explanatory and, generally, do not require further instruction.

Let me caution you once again, as I did in my preliminary instructions, that the Government does not assert, in this case, that if sentenced to lifetime imprisonment without possibility of parole or some other lesser sentence to be determined by the Court, Mr. Barnes will present a future danger to any other person. It would therefore be improper to allow considerations of any notion of future dangerousness to enter into your deliberations or into your individual determinations as to the appropriate sentence.

Again, your findings regarding these factors must be separate and unanimous with regard to each capital count you are considering.

In the event that you unanimously find, beyond a reasonable doubt, that a particular non-statutory aggravating factor applies to both of the capital counts for which you have found at least one gateway factor and at least one statutory aggravating factor, you are to indicate that finding in the appropriate box provided on the Special Verdict Form. In the event that you unanimously find that a

27

particular non-statutory aggravating factor applies to one but not both of these counts, you are to indicate that finding in the appropriate box provided on the Special Verdict Form, and also identify on the line provided, by count number, the particular count to which you find the non-statutory aggravating factor applies.

If you do not unanimously find that a non-statutory aggravating factor has been proven beyond a reasonable doubt with regard to any capital count, you should so indicate in the appropriate box provided on the Special Verdict Form.

Unlike the rules relating to gateway factors and statutory aggravating factors, you are not required to find a non-statutory aggravating factor with regard to a particular count before you may consider the death penalty as the possible sentence for that count. Rather, the law only requires that before the jury may consider an alleged non-statutory aggravating factor in its sentencing decision as to any capital count, the jury must first unanimously agree that the Government has proven beyond a reasonable doubt the existence of that factor as to that count. Remember, unless you are unanimous that the existence of a particular statutory or non-statutory aggravating factor has been proven by the Government beyond a reasonable doubt, you may not give that factor any further consideration during any

28

of your deliberations.

After you have completed your findings regarding the existence or non-existence of non-statutory aggravating factors, you should proceed to Section IV of the Special Verdict Form, to consider whether any mitigating factors exist.

**Mitigating Factors**

Before you may consider the appropriate punishment for either of the capital counts for which you have unanimously found the existence of at least one gateway factor and at least one statutory aggravating factor, you must consider whether the defendant has proven the existence of any mitigating factors with regard to that count. A mitigating factor is not offered to justify or excuse the defendant's conduct. Instead, a mitigating factor is a fact about the defendant's life or character, or about the circumstances surrounding the particular capital offense, or anything else relevant that would suggest, in fairness, that death is not the appropriate punishment.

There are three important distinctions that I want to highlight for you with respect to the proof of mitigating factors. The defendant has the burden of proving any mitigating factors. However, there is a different standard of proof as to

29

mitigating factors.  The defendant is not required to prove beyond a reasonable doubt the existence of a mitigating factor; he need only establish its existence by a preponderance of the evidence.  That is to say, you need only be convinced that a mitigating factor is ***more likely true than not true*** in order to find that the mitigating factor exists.  Secondly, a unanimous finding is <u>***not***</u> required.  Any one of you may, individually and independently, find the existence of a mitigating factor, regardless of the number of other jurors who may agree, and any juror who so finds must give that factor whatever weight they think it deserves. Thus, if even a single member of the jury finds that a mitigating factor has been proved, that member of the jury is allowed to weigh that factor in making up his or her own mind on whether or not to vote for a death sentence.

Finally, you are not limited in your consideration to the specific mitigating circumstances submitted to you.  If, in addition to those specific circumstances, there is anything about the circumstances of the offense, the defendant's background, record, or character, or anything else relevant that you individually believe mitigates against the imposition of the death penalty, you are free to consider that factor in the balance as well.

30

Unlike aggravating factors, which you must unanimously find proven beyond a reasonable doubt in order for you even to consider them in your deliberations, the law does not require unanimity with regard to mitigating factors. Any individual juror who is persuaded of the existence of a mitigating factor must consider it in his or her sentencing decision. Thus, for example, if eleven of you were to find the existence of a mitigating factor, all eleven could, and would be required to, weigh that factor in the balance. Or, for example, if only one juror were to be persuaded of a mitigating factor, that juror could, and would be required to, consider it in his or her own individual sentencing decision.

Furthermore, it is the defendant's burden to establish a mitigating factor only by a preponderance of the evidence. This is a lesser standard of proof under the law than proof beyond a reasonable doubt. A factor is established by a preponderance of the evidence if its existence is shown to be more likely so than not so. In other words, a preponderance of the evidence means such evidence as, when considered and compared with that opposed to it, produces in your mind the belief that what is sought to be established is, more likely than not, true. If, however, the evidence is equally balanced, you cannot find that the factor has been proved.

31

Please understand that the existence of a mitigating factor is a distinct consideration from whatever weight, if any, should ultimately be given that factor in your deliberations. For example, any number of jurors might first find that a particular mitigating factor is factually true (that is, that the factor has been established by a preponderance of the evidence), but those jurors as individuals might later choose to give that same mitigating factor differing levels of significance during the weighing process. With this distinction in mind, Section IV of the Special Verdict Form only asks you to report the total number of jurors who individually find the existence of a particular mitigating factor to be established by a preponderance of the evidence.

Earlier in these instructions, I stated that regardless of any opinion you may have as to what the law may be or should be, it would be a violation of your oaths as jurors to base your sentencing decision upon any view of the law other than that which is given to you in these instructions. Accordingly, it is not your role to pass on the wisdom of whether a particular mitigating factor submitted to you is, in your own personal view, the kind of circumstance that should weigh against imposition of the death penalty. If a mitigating factor has been established by a

32

preponderance of the evidence, you are required to weigh it in the balance to be struck between the aggravating and mitigating factors.  It is up to you, however, how much weight you individually assign to each particular mitigating factor.

The defendant, Khalid Barnes, urges the following as mitigating factors in this case:

1. If he is not sentenced to death, Mr. Barnes can be sentenced to lifetime imprisonment without parole.
2. The Federal Bureau of Prisons will impose appropriate conditions of confinement and security with regard to Mr. Barnes.
3. Mr. Barnes is the product of a childhood marked by chaos, abuse and abandonment.
4. Growing up, Mr. Barnes lacked positive male role models in his home.
5. His mother's poor choices in the men she brought into the family home had a negative impact on Mr. Barnes.
6. At age 17, Deborah Settles, Mr. Barnes' mother, was ill-equipped to become a parent and, as the years passed, became increasingly overwhelmed by her circumstances.
7. Mr. Barnes' execution would cause others to suffer grief and loss.
8. The two victims of the murders voluntarily chose to engage in dangerous and illegal activities, a circumstance that contributed to their deaths.
9. Mr. Barnes always behaved respectfully in court.
10.    Mr. Barnes' life has value.
11.    There are other relevant circumstances that weigh against imposing a sentence of death.

I have some specific comments regarding this list.  First of all,

33

mitigating factors 1 and 2 are true as a matter of law and, therefore, your foreperson should write in the number "12" with regard to those factors and all jurors must weigh and consider mitigating factors 1 and 2. Secondly, the defense and the government are both in agreement that mitigating factor 3 has been established, and you are not free to disregard that agreement. With regard to factor 3, accordingly, your foreperson should write in the number "12" with regard to this factor on the Special Verdict Form and all jurors must consider and weigh that factor in the sentencing balance.

I also have some additional instructions regarding factor 8, which focuses on the conduct of the victims. Factor 8 is derived from a specific mitigating circumstance enacted by Congress. This factor takes into account that, when deciding whether or not to impose the death penalty, it is appropriate to consider as weighing against the death penalty a circumstance where the victims have voluntarily placed themselves in harm's way by choosing to engage in dangerous and illegal criminal activity, as opposed to victims who have not engaged in such activity. If you find that is the case here, you must weigh this factor against imposition of the death penalty. The weight you assign this factor is, of course, up

34

to you individually.

In Section IV, Part A of the Special Verdict Form, you are asked to report the total number of jurors who individually find a particular mitigating factor to be established by a preponderance of the evidence.

In addition to the mitigating factors specifically raised by the defendant, the law permits each of you to consider anything about the circumstances of the offense, or anything about the defendant's background, record, or character, or anything else relevant that you individually believe mitigates against the imposition of the death penalty. The law does not limit your consideration of mitigating factors to those that can be articulated in advance. As such, if there are any mitigating factors not argued by the attorneys for the defendant but which any juror, on his or her own or with others, finds to be established by a preponderance of the evidence, that juror is free to – and must – consider it in his or her sentencing determination. In Section IV, Part B of the Special Verdict Form, you are to identify any such additional mitigating factors that one or more of you independently finds to exist by a preponderance of the evidence.

In your consideration of mitigating evidence, I instruct you further that

35

the law does not require that there be a connection between the mitigating evidence and the crime committed.  In other words, it is not necessary for example, for the defense to establish that evidence of a chaotic childhood led to the commission of the offense.  Thus, whether these factors have a direct connection to the crimes or not, does not in any way affect their status as mitigating circumstances that you are required to consider.  What weight you give them is, of course, up to you.

After you have completed your findings regarding the existence or non-existence of mitigating factors, you should proceed to Section V of the Special Verdict Form, to weigh the aggravating factors and mitigating factors with regard to each of the counts for which you have unanimously found at least one gateway factor and at least one statutory aggravating factor.

36

## **Weighing Aggravating And Mitigating Factors**

If and only if you unanimously find, beyond a reasonable doubt, that the Government has proven the existence of at least one gateway factor and at least one statutory aggravating factor with regard to any capital count; and after you then determine whether the Government has proven beyond a reasonable doubt the existence of any non-statutory aggravating factors with regard to that count, and whether the defendant has proven by a preponderance of the evidence the existence of any mitigating factors, you must then engage in a weighing process with regard to that count. This weighing process asks whether the government has persuaded each and every one of you, beyond a reasonable doubt, that the aggravating factor or factors found to exist (1) outweigh the mitigating factors found to exist and, if they do, (2) whether they sufficiently outweigh the mitigating factors to justify a sentence of death on the particular capital count you are considering.

In carrying out this weighing and balancing process, the members of the jury are not mere fact-finders. Instead, jurors are called upon to make a unique, individualized judgment about the appropriateness of sentencing another human being to death.

37

You are to conduct this weighing process separately with regard to each of the two capital counts for which you have found at least one gateway factor and at least one statutory aggravating factor.  Each juror must individually decide whether the facts and circumstances in this case as to each count call for death as the appropriate sentence.

In determining the appropriate sentence for the capital count you are considering, all of you must independently weigh the aggravating factor or factors that you unanimously found to exist with regard to that count, whether statutory or non-statutory, and each of you must weigh any mitigating factors that you individually or with others found to exist.  As stated earlier, you must all find and weigh mitigating factors 1, 2, and 3.  You are not to weigh any of the four gateway factors I mentioned previously as part of this process.  In engaging in the weighing process, you must avoid any influence of passion, prejudice, or any other arbitrary consideration.  Your deliberations should be based upon the evidence you have seen and heard, and the law on which I have instructed you.

Again, whether or not the circumstances in this case call for a sentence of death is a decision that the law leaves entirely to you.  Remember that all twelve

38

jurors must agree beyond a reasonable doubt that death is in fact the appropriate sentence, but that no juror is ever required by the law to impose a death sentence. The decision is yours as individuals to make.  As stated earlier, if even a single juror is not persuaded that death is the appropriate punishment, the death penalty will not be imposed.

The process of weighing aggravating and mitigating factors against each other is by no means a mechanical process.  In other words, you should not simply count the total number of aggravating and mitigating factors and reach a decision based on which number is greater; rather, you should consider the weight and value of each factor.  In carefully weighing these various factors, the members of the jury are not mere fact-finders.  Instead, you are called upon as individuals to make a unique, individualized judgment about the sentence this defendant should receive.

The law contemplates that different factors may be given different weights or values by different jurors.  Thus, you may find that one mitigating factor outweighs all aggravating factors combined, or that the aggravating factors proved do not, standing alone, justify imposition of a sentence of death.  Similarly, you may

39

instead find that a single aggravating factor sufficiently outweighs all mitigating factors combined so as to justify a sentence of death. Any one of you is free to decide that a death sentence should not be imposed so long as, based on the evidence and your sense of justice, you conclude that the proven aggravating factors do not "sufficiently" outweigh mitigation such that the death penalty should be imposed.

I also remind you that whatever findings you make with respect to the aggravating and mitigating factors, you are never required to impose a death sentence. For example, there may be something about this case or about the defendant that one or more of you are not able to identify as a specific mitigating factor, but that nevertheless creates a reasonable doubt in your minds about the need for the defendant's execution. In such a case, the jury should render a decision against the death penalty. You have the discretion to temper justice with mercy. These examples I have given you are merely illustrative. Any one of you is free to decide that a death sentence should not be imposed on this case for any reason you see fit. You will not have to explain that reason.

Each juror is individually to decide what weight or value is to be given

40

to a particular aggravating or mitigating factor in the decision-making process. Bear in mind, however, that in order to find that a sentence of death is appropriate for a particular count, the jurors must be unanimous in their conclusion, beyond a reasonable doubt, that the aggravating factor or factors proven as to that count sufficiently outweigh any mitigating factors found such that a sentence of death is warranted.

41

**Determination of Sentence**

In the event that you unanimously find, beyond a reasonable doubt, that the balancing process leads you to the conclusion that a sentence of death is called for as to the particular capital count you are considering, please mark the appropriate box provided in Section V of the Special Verdict Form for the count you are considering.

If, after engaging in the balancing process I have described to you, all twelve members of the jury do not unanimously find that the defendant should be sentenced to death on any of the capital counts, then you may not impose the death penalty for that count. In that event, you must decide whether the defendant should be sentenced to life imprisonment without any possibility of release or to some lesser authorized sentence which includes the possibility of life imprisonment without any possibility of release. Such a lesser sentence would be imposed by the Court.

In order to choose a sentence of life imprisonment without any possibility of release, the jury must vote for this sentence unanimously. If the jury unanimously votes to impose life imprisonment without any possibility of release,

42

you should indicate your decision in the appropriate box provided on the Special Verdict Form for the count you are considering.

If the jury unanimously votes that some lesser authorized sentence is appropriate, you should indicate your decision by marking the appropriate box provided on the Special Verdict Form for the count you are considering.

As I have told you, should you unanimously decide to impose the death penalty or to impose life imprisonment without any possibility of release, I am required by law to abide by your decision and to sentence the defendant accordingly. If you unanimously determine that the defendant should receive some other authorized sentence, it will be the duty of the Court to sentence the defendant in accordance with the law. Under the relevant statute, the potential sentence for each of Counts 27 and 28 is any term of years or lifetime imprisonment.

In the event that you do not unanimously decide to sentence the defendant to death, and then are unable to reach a unanimous decision on the question whether to sentence the defendant to life imprisonment without possibility of parole, you should so inform the Court. In that event, the Court will decide whether to sentence the defendant to life imprisonment without possibility of parole

43

or to some other authorized sentence.  Before you reach any conclusion based on a lack of unanimity on any count, you should continue your discussions until you are fully satisfied that no further discussion will lead to a unanimous decision.  If you are satisfied that you cannot reach a unanimous decision, please so indicate in the appropriate box provided on the Special Verdict Form for the count you are considering.

44

## Justice Without Discrimination

In your consideration of whether the death sentence is appropriate, you must not consider the race, color, religious beliefs, national origin, or sex of either the defendant or the victims.  You are not to return a sentence of death unless you would return a sentence of death for the crime in question without regard to the race, color, religious beliefs, national origin, or sex of either the defendant or any victim.

To emphasize the importance of this consideration, Section VI of the Special Verdict Form contains a certification statement.  Each juror should carefully read the statement, and sign your name in the appropriate place if the statement accurately reflects the manner in which each of you reached your individual decision.

45

**Concluding Remarks**

I have now outlined for you the rules of law applicable to your consideration of the death penalty and the process by which you should determine the facts and weigh the evidence. In a few minutes you will retire to the jury room.

The importance of your deliberations should be obvious. I remind you that you can return a decision sentencing the defendant to death only if all twelve of you are unanimously persuaded beyond a reasonable doubt that the death sentence is in fact appropriate.

When you are in the jury room, please discuss all aspects of these sentencing issues among yourselves with candor and frankness, but also with a due regard and respect for the opinions of one another. Each of you must decide this question for yourself and not merely go along with the conclusion of your fellow jurors. In the course of your deliberations, no juror should surrender his or her conscientious beliefs of what is the truth, of what is the weight and effect of the evidence, and what should be the outcome as determined by that juror's individual conscience and evaluation of the case. Remember that the parties and the Court are relying upon you to give full, considered, and mature consideration to this

46

sentencing. By so doing, you carry out to the fullest your oaths as jurors: that you will well and truly try the issues of this case and a just result render.

If it becomes necessary during your deliberations to communicate with me for any reason, simply send me a note signed by your foreperson. Do not attempt to communicate with the Court or any other court personnel by any means other than a signed writing. I will not communicate with any member of the jury on any subject touching on your sentencing decision other than in writing or orally here in open court.

When you have reached a decision, send me a note signed by your foreperson that you have reached a decision. Do not indicate what the decision is in the note. In no communication with the Court prior to a verdict should you ever give a numerical count of where the jury stands in its deliberations.

Whatever decision you reach, the foreperson must also sign and fill out the Special Verdict Form accordingly and be prepared to report to the Court your findings as to the gateway, aggravating and mitigating factors, and then of your sentencing decision.

Let me remind you again that nothing that I have said in these

47

instructions and nothing that I have said or done during the trial has been said or done to suggest to you what I think the outcome should be.  What the sentencing decision should be is your exclusive duty and responsibility.  You may now retire to commence your deliberations.

48



# DEATH PENALTY INFORMATION CENTER
## Facts about the Death Penalty

1015 18th Street NW, Suite 704
Washington, DC 20036
www.deathpenaltyinfo.org
dpic@deathpenaltyinfo.org
Phone: 202-289-2275

*Updated: August 6, 2014*

**NUMBER OF EXECUTIONS SINCE 1976: 1,386**

Values by year: '76: 0, '77: 1, '78: 0, '79: 2, '80: 0, '81: 1, '82: 2, '83: 5, '84: 21, '85: 18, '86: 18, '87: 25, '88: 11, '89: 16, '90: 23, '91: 14, '92: 31, '93: 38, '94: 31, '95: 56, '96: 45, '97: 74, '98: 68, '99: 98, '00: 85, '01: 66, '02: 71, '03: 65, '04: 59, '05: 60, '06: 53, '07: 42, '08: 37, '09: 52, '10: 46, '11: 43, '12: 43, '13: 39, '14: 27

**DEATH PENALTY STATES (32)**
Alabama
Arizona
Arkansas
California
Colorado
Delaware
Florida
Georgia
Idaho
Indiana
Kansas
Kentucky
Louisiana
Mississippi
Missouri
Montana
Nebraska
Nevada
New Hampshire
North Carolina
Ohio
Oklahoma
Oregon
Pennsylvania
South Carolina
South Dakota
Tennessee
Texas
Utah
Virginia
Washington
Wyoming
*U.S. Gov't*
*U.S. Military*

**NON-DEATH PENALTY STATES (18)**
Alaska
Connecticut*
Hawaii
Illinois
Iowa
Maine
Maryland*
Massachusetts
Michigan
Minnesota
New Jersey
New Mexico*
New York
North Dakota
Rhode Island
Vermont
West Virginia
Wisconsin
*District of Columbia*
*\*Inmates remain on death row.*

## Race of Defendants Executed



White 56%
Other 2%
Black 34%
Hispanic 8%

- White: 775
- Black: 477
- Hispanic: 110
- Other: 24

## Race of Victims in Death Penalty Cases



Other 2%
Black 15%
White 76%
Hispanic 7%

Over 75% of the murder victims in cases resulting in an execution were white, even though nationally only 50% of murder victims generally are white.

## RECENT STUDIES ON RACE

- Jurors in Washington state are three times more likely to recommend a death sentence for a black defendant than for a white defendant in a similar case. (Prof. K. Beckett, Univ. of Washington, 2014).

- In Louisiana, the odds of a death sentence were 97% higher for those whose victim was white than for those whose victim was black. (Pierce & Radelet, Louisiana Law Review, 2011).

- A study in California found that those who killed whites where over 3 times more likely to be sentenced to death than those who killed blacks and over 4 times more likely than those who killed Latinos. (Pierce & Radelet, Santa Clara Law Review, 2005).



**Persons Executed for Interracial Murders**

White Def./Black Victim — 20
Black Def./White Victim — 272

- A comprehensive study of the death penalty in North Carolina found that the odds of receiving a death sentence rose by 3.5 times among those defendants whose victims where white. (Prof. Jack Boger and Dr. Isaac Unah, University of North Carolina, 2001).

- In 96% of states where there have been reviews of race and the death penalty, there was a pattern of either race-of-victim or race-of-defendant discrimination, or both. (Prof. Baldus report to the ABA, 1998).

## INNOCENCE



**Death Row Exonerations by State**
**Total: 144**

24 20 12 10 10 8 7 6 6 5 5 4 4 3 3 3 3 2 2 1 1 1 1 1 1 1

FL IL TX OK LA AZ NC OH PA AL GA MO NM CA MA MS TN IN SC ID KY MD NE NV VA WA

- Since 1973, over 140 people have been released from death row with evidence of their innocence. (Staff Report, House Judiciary Subcommittee on Civil & Constitutional Rights, Oct. 1993, with updates from DPIC).

- From 1973-1999, there was an average of 3 exonerations per year. From 2000-2011, there was an average of 5 exonerations per year.

## DEATH ROW INMATES BY RACE



Hispanic 13%
White 43%
Black 42%
Other 2%

## DEATH ROW INMATES BY STATE: Jan. 1, 2014

| | | | | | |
|---|---|---|---|---|---|
| California | 742 | Oklahoma | 51 | Kansas | 10 |
| Florida | 410 | S. Carolina | 49 | Virginia | 9 |
| Texas | 278 | Missouri | 48 | Utah | 9 |
| Alabama | 198 | Mississippi | 48 | Washington | 9 |
| Pennsylvania | 193 | Arkansas | 38 | *U.S. Military* | 6 |
| N. Carolina | 159 | Oregon | 35 | Maryland | 5 |
| Ohio | 144 | Kentucky | 34 | Colorado | 4 |
| Arizona | 124 | Delaware | 18 | S. Dakota | 3 |
| Georgia | 94 | Indiana | 14 | Montana | 2 |
| Louisiana | 88 | Idaho | 12 | New Mexico | 2 |
| Nevada | 80 | Nebraska | 11 | Wyoming | 1 |
| Tennessee | 76 | Connecticut | 11 | N. Hampshire | 1 |
| *U.S. Gov't* | 59 | | | **TOTAL: 3,070** | |

**Race of Death Row Inmates** and **Death Row Inmates by State** Source: NAACP Legal Defense Fund, "Death Row USA" (January 1, 2014). When added, the total number of death row inmates by state is slightly higher than the given total because some prisoners are sentenced to death in more than one state.

# NUMBER OF EXECUTIONS BY STATE SINCE 1976

| | Total | 2013 | 2014 | | Total | 2013 | 2014 |
|---|---|---|---|---|---|---|---|
| Texas | 515 | 16 | 7 | Nevada | 12 | 0 | 0 |
| Oklahoma | 111 | 6 | 3 | Utah | 7 | 0 | 0 |
| Virginia | 110 | 1 | 0 | Tennessee | 6 | 0 | 0 |
| Florida | 88 | 7 | 7 | Maryland | 5 | 0 | 0 |
| Missouri | 77 | 2 | 7 | Washington | 5 | 0 | 0 |
| Alabama | 56 | 1 | 0 | Nebraska | 3 | 0 | 0 |
| Georgia | 54 | 1 | 1 | Pennsylvania | 3 | 0 | 0 |
| Ohio | 53 | 3 | 1 | Kentucky | 3 | 0 | 0 |
| North Carolina | 43 | 0 | 0 | Montana | 3 | 0 | 0 |
| South Carolina | 43 | 0 | 0 | U.S. Gov't | 3 | 0 | 0 |
| Arizona | 37 | 2 | 1 | Idaho | 3 | 0 | 0 |
| Louisiana | 28 | 0 | 0 | South Dakota | 3 | 0 | 0 |
| Arkansas | 27 | 0 | 0 | Oregon | 2 | 0 | 0 |
| Mississippi | 21 | 0 | 0 | New Mexico | 1 | 0 | 0 |
| Indiana | 20 | 0 | 0 | Colorado | 1 | 0 | 0 |
| Delaware | 16 | 0 | 0 | Wyoming | 1 | 0 | 0 |
| California | 13 | 0 | 0 | Connecticut | 1 | 0 | 0 |
| Illinois | 12 | 0 | 0 | | | | |

# EXECUTIONS BY REGION*



*Federal executions are listed in the region in which the crime was committed.

# DEATH SENTENCING

The number of death sentences per year has dropped dramatically since 1999.

| Year | 1997 | 1998 | 1999 | 2000 | 2001 | 2002 | 2003 | 2004 | 2005 | 2006 | 2007 | 2008 | 2009 | 2010 | 2011 | 2012 | 2013 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Sentences | 265 | 294 | 277 | 224 | 155 | 165 | 152 | 138 | 140 | 125 | 120 | 121 | 118 | 109 | 80 | 79 | 79 |

Source: Bureau of Justice Statistics: "Capital Punishment, 2013."

# MENTAL DISABILITIES

- *Intellectual Disabilities:* In 2002, the Supreme Court held in *Atkins v. Virginia* that it is unconstitutional to execute defendants with 'mental retardation.'
- *Mental Illness:* The American Psychiatric Association, the American Psychological Association, the National Alliance for the Mentally Ill, and the American Bar Association have endorsed resolutions calling for an exemption of the severely mentally ill.

# JUVENILES

- In 2005, the Supreme Court in *Roper v. Simmons* struck down the death penalty for juveniles. 22 defendants had been executed for crimes committed as juveniles since 1976.

# WOMEN

- There were 60 women on death row as of Jan. 1, 2014. This constitutes 2% of the total death row population. (NAACP Legal Defense Fund, Jan. 1, 2014). 14 women have been executed since 1976.

# DETERRENCE



*Do executions lower homicide rates?*

- According to a survey of the former and present presidents of the country's top academic criminological societies, 88% of these experts rejected the notion that the death penalty acts as a deterrent to murder. (Radelet & Lacock, 2009)

- A report by the National Research Council, titled Deterrence and the Death Penalty, stated that studies claiming that the death penalty has a deterrent effect on murder rates are "fundamentally flawed" and should not be used when making policy decisions (2012).

- Consistent with previous years, the 2011 FBI Uniform Crime Report showed that **the South had the highest murder rate. The South accounts for over 80% of executions.** The Northeast, which has less than 1% of all executions, had lowest murder rate.



Murder Rates per 100,000 (2012)

104

## EXECUTIONS SINCE 1976 BY METHOD USED

| | | |
|---|---|---|
| 1211 | Lethal Injection | 35 states plus the US government use lethal injection as their primary method. Some states utilizing lethal injection have other methods available as backups. Though New Mexico, Connecticut, and Maryland have abolished the death penalty, their laws were not retroactive, leaving prisoners on the states' death rows and their lethal injection protocols intact. |
| 158 | Electrocution | |
| 11 | Gas Chamber | |
| 3 | Hanging | |
| 3 | Firing Squad | |

## FINANCIAL FACTS ABOUT THE DEATH PENALTY

- Defense costs for death penalty trials in Kansas averaged about $400,000 per case, compared to $100,000 per case when the death penalty was not sought. (Kansas Judicial Council, 2014).

- A new study in California revealed that the cost of the death penalty in the state has been over $4 billion since 1978. Study considered pre-trial and trial costs, costs of automatic appeals and state habeas corpus petitions, costs of federal habeas corpus appeals, and costs of incarceration on death row.  (Alarcon & Mitchell, 2011).

- In Maryland, an average death penalty case resulting in a death sentence costs approximately $3 million.  The eventual costs to Maryland taxpayers for cases pursued 1978-1999 will be $186 million.  Five executions have resulted. (Urban Institute, 2008).

- Enforcing the death penalty costs Florida $51 million a year above what it would cost to punish all first-degree murderers with life in prison without parole. Based on the 44 executions Florida had carried out since 1976, that amounts to a cost of $24 million for each execution. (Palm Beach Post, January 4, 2000).

- The most comprehensive study in the country found that the death penalty costs North Carolina $2.16 million per execution over the costs of sentencing murderers to life imprisonment. The majority of those costs occur at the trial level. (Duke University, May 1993).

- In Texas, a death penalty case costs an average of $2.3 million, about three times the cost of imprisoning someone in a single cell at the highest security level for 40 years. (Dallas Morning News, March 8, 1992).

## PUBLIC OPINION AND THE DEATH PENALTY

### Support for Alternatives to the Death Penalty



- A 2009 poll commissioned by DPIC found police  chiefs ranked the death penalty **last** among ways to reduce violent crime.  The police chiefs also considered the death penalty the least efficient use of taxpayers' money.

### What Interferes with Effective Law Enforcement?



Percent Ranking Item as One of Top Two or Three

- A 2010 poll by Lake Research Partners found that **a clear majority of voters (61%) would choose a punishment other than the death penalty for murder**.

---

*The Death Penalty Information Center has available more extensive reports on a variety of issues, including:*
- "The Death Penalty in 2013: Year-End Report" (December 2013)
- "The 2% Death Penalty: How a Minority of Counties Produce Most Death Cases at Enormous Costs to All" (October 2013)
- "The Death Penalty in 2012: Year-End Report" (December 2012)
- "Struck By Lightning: The Continuing Arbitrariness of the Death Penalty 35 Years After Its Reinstatement in 1976" (June 2011)
- "Smart on Crime: Reconsidering the Death Penalty in a Time of Economic Crisis" (October 2009)
- "A Crisis of Confidence: Americans' Doubts About the Death Penalty" (2007)
- "Blind Justice: Juries Deciding Life and Death with Only Half the Truth" (2005)
- "Innocence and the Crisis in the American Death Penalty" (2004)
- "International Perspectives on the Death Penalty: A Costly Isolation for the U.S." (1999)
- "The Death Penalty in Black & White: Who Lives, Who Dies, Who Decides" (1998)
- "Innocence and the Death Penalty: The Increasing Danger of Executing the Innocent" (1997)

```
MIME-Version:1.0
From:CMECFinnd@innd.uscourts.gov
To:CMECFinnd@localhost.localdomain
Bcc:
--Case Participants: Pablo DeCastro (pdecastro@rascia-decastro.com,
ysierra@rascia-decastro.com), Kurt R Earnst (kre@braje-nelson.com), Arlington J Foley
(arlingtonfoley@att.net), Jack Friedlander (jack@jackfriedlander.com,
office@jackfriedlander.com), Bruce R Hegyi - AUSA (bruce.hegyi@usdoj.gov), Roxanne Mendez
Johnson (attorneyrmj@gmail.com), Gojko Kasich (gkasich@crownlaw.com, gkasich@gmail.com),
Scott L King (dwilliams@scottkinggroup.com, sking@scottkinggroup.com), Visvaldis P Kupsis
(vpkupsis@hotmail.com), Catherine A Lake (attyclake@sbcglobal.net), Dean R Lanter - AUSA
(dean.lanter@usdoj.gov, janet.eisenmann@usdoj.gov, usainn.ecfcivil@usdoj.gov), John
Maksimovich (criminallaw@johnmaksimovich.com), John E Martin - FCD (john_martin@fd.org),
Sheldon B Nagelberg (sbnagelberglaw@att.net), David J Nozick - AUSA
(david.nozick@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov,
susan.devries@usdoj.gov, usainn.ecfcivil@usdoj.gov), Mark A Psimos
(psimoslaw@airbaud.net), Robert L Rascia (rrascia@rascia-decastro.com,
ysierra@rascia-decastro.com), Stephen Edward Scheele (pkd@gk4law.com, ses@gk4law.com),
Paul Jeffrey Schlesinger (pjeffslaw@aol.com), Adam Tavitas (adtavitas@aol.com,
b.lynneadams@yahoo.com), John T Theis (theislaw@aol.com), James N Thiros (jim@thiros.com,
lynn@thiros.com), Bryan M Truitt (bryan@tblawyers.com, sherrie@tblawyers.com), David E
Vandercoy (david.vandercoy@valpo.edu), Thomas W Vanes (b.lynneadams@yahoo.com,
tom.vanes@sbcglobal.net), Ihor Alexander Woloshansky (ihorlawyer@hotmail.com), Richard C
Wolter (b.lynneadams@yahoo.com), R Brian Woodward (carolb@wbbklaw.com,
rbwoodward@wbbklaw.com), Magistrate Judge Andrew P Rodovich
(rodovich_chambers@innd.uscourts.gov), Chief Judge Philip P Simon
(collins_noel@innd.uscourts.gov, denise_woodside@innd.uscourts.gov,
jacob_hamann@innd.uscourts.gov, kevin_krikau@innd.uscourts.gov,
lauren_schwartz@innd.uscourts.gov, mira_serrill-robins@innd.uscourts.gov,
philip_simon@innd.uscourts.gov)
--Non Case Participants: Matthew D Soliday (office@matthewsolidaylaw.com),
Probation/Pretrial Services (innpml_cmecf@innd.uscourts.gov), U S Marshal
(inn.docket-fw@usdoj.gov, inn.docket-sb@usdoj.gov, usms.27@usdoj.gov)
--No Notice Sent:

Message-Id:2595557@innd.uscourts.gov
Subject:Activity in Case 2:11-cr-00077-PPS-APR United States of America v. Briseno et al
Order on Motion for Miscellaneous Relief
```
Content–Type: text/html

## U.S. District Court Northern District of Indiana [LIVE]

## USDC Northern Indiana

## Notice of Electronic Filing

The following transaction was entered on 8/25/2014 at 11:07 AM EST and filed on 8/25/2014

**Case Name:**      United States of America v. Briseno et al

**Case Number:**      2:11–cr–00077–PPS–APR

**Filer:**

**Document Number:**  1029(No document attached)

**Docket Text:**

 **ORDER granting [1026] Motion/Request to File Over–Length Brief as to Juan Briseno (1). Signed by Chief Judge Philip P Simon on 8/25/2014. (dkw)**

**2:11−cr−00077−PPS−APR−1 Notice has been electronically mailed to:**

David E Vandercoy    david.vandercoy@valpo.edu

Arlington J Foley    arlingtonfoley@att.net

Mark A Psimos    psimoslaw@airbaud.net

Gojko Kasich    gkasich@crownlaw.com, gkasich@gmail.com

Scott L King    sking@scottkinggroup.com, dwilliams@scottkinggroup.com

Catherine A Lake    attyclake@sbcglobal.net

James N Thiros    jim@thiros.com, lynn@thiros.com

Thomas W Vanes    tom.vanes@sbcglobal.net, b.lynneadams@yahoo.com

Ihor Alexander Woloshansky    ihorlawyer@hotmail.com

R Brian Woodward    rbwoodward@wbbklaw.com, carolb@wbbklaw.com

John Maksimovich    criminallaw@johnmaksimovich.com

Visvaldis P Kupsis    vpkupsis@hotmail.com

Sheldon B Nagelberg    sbnagelberglaw@att.net

John E Martin – FCD    john_martin@fd.org

Adam Tavitas    Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander    jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele    ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst    kre@braje−nelson.com

Bryan M Truitt    bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis    theislaw@aol.com

Robert L Rascia    rrascia@rascia−decastro.com, ysierra@rascia−decastro.com

Paul Jeffrey Schlesinger    pjeffslaw@aol.com

Pablo DeCastro    pdecastro@rascia−decastro.com, ysierra@rascia−decastro.com

Dean R Lanter – AUSA    dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov,
janet.eisenmann@usdoj.gov

David J Nozick – AUSA    David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson    attorneyrmj@gmail.com

Bruce R Hegyi – AUSA    bruce.hegyi@usdoj.gov

**2:11–cr–00077–PPS–APR–1 Notice has been delivered by U.S. Mail or other means to:**

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

|                                   |     |                        |
|-----------------------------------|-----|------------------------|
| UNITED STATES OF AMERICA,         | )   |                        |
|                                   | )   |                        |
| Plaintiff,                        | )   |                        |
|                                   | )   |                        |
| v.                                | )   | NO. 2:11CR77 PPS       |
|                                   | )   |                        |
| JUAN BRISENO,                     | )   |                        |
|                                   | )   |                        |
| Defendant.                        | )   |                        |
|                                   | )   |                        |

**ORDER**

On August 8, 2014, the government filed a motion to empanel an anonymous jury.

Recently, just as the time for defendant Juan Briseno's response to the motion becomes due,

the Seventh Circuit has issued a helpful opinion on anonymous juries in *United States v.*

*Susan L. Harris*, No. 13-1741 (7th Cir.  August 18, 2014).   Because counsel's consideration of

the *Harris* opinion will be helpful to the issues before me,  I am *sua sponte* extending the time

for briefing on the pending motion, and counsel are encouraged to review the *Harris* opinion

and consider its ramifications for their positions on the empaneling of the jury in this case

before drafting their remaining briefs.

ACCORDINGLY:

Defendant's memorandum in response to the United States' motion to empanel an

anonymous jury [DE 1012] shall be filed no later than Friday, September 5, 2014.  The

government's reply may be filed no later than Friday, September 19, 2014.

SO ORDERED.

ENTERED: August 25, 2014.

 /s/ Philip P. Simon

PHILIP P. SIMON, CHIEF JUDGE

# JOHN MAKSIMOVICH
## ATTORNEY AT LAW

1946 North Main Street
Crown Point, IN 46307
E-Mail: jm@johnmaksimovich.com

FILED

15 AUG 26 AM 11: 46

FOR THE ... DISTRICT
OF ...

Phone: 219.663.1900
Fax: 219.663.1908
Web: www.johnmaksimovich.com

August 25, 2014

Office of the Clerk
United States District Court
Northern District of Indiana
5400 Federal Plaza
Hammond IN 46320

RE:     United States of America v. Juan Briseno
        Case No.  2:11-CR-77

Dear Clerk

With reference to the above, enclosed please find the Verdict Form disc in relation to the Motion, with Incorporated Memorandum, to Strike the Notice of Aggravating Factors filed on August 22, 1014, document #1027.

Please incorporate this disc into said filing.  Thank you for your assistance.  If you have any questions concerning this matter, please contact me at your convenience.

Sincerely

*John Maksimovich*

John Maksimovich
Attorney At Law

ca

Enclosure



John Maksimovich
Attorney At Law
1946 North Main Street
Crown Point, IN  46307

US POSTAGE
FIRST-CLASS
98
cents

US POSTAGE
FIRST-CLASS
90
cents

1894

OFFICE OF THE CLERK
UNITED STATES DISTRICT COURT
5400 FEDERAL PLAZA, SUITE 2300
HAMMOND, IN 46320

```
MIME-Version:1.0
From:CMECFinnd@innd.uscourts.gov
To:CMECFinnd@localhost.localdomain
Bcc:
--Case Participants: Pablo DeCastro (pdecastro@rascia-decastro.com,
ysierra@rascia-decastro.com), Kurt R Earnst (kre@braje-nelson.com), Arlington J Foley
(arlingtonfoley@att.net), Jack Friedlander (jack@jackfriedlander.com,
office@jackfriedlander.com), Bruce R Hegyi - AUSA (bruce.hegyi@usdoj.gov), Roxanne Mendez
Johnson (attorneyrmj@gmail.com), Gojko Kasich (gkasich@crownlaw.com, gkasich@gmail.com),
Scott L King (dwilliams@scottkinggroup.com, sking@scottkinggroup.com), Visvaldis P Kupsis
(vpkupsis@hotmail.com), Catherine A Lake (attyclake@sbcglobal.net), Dean R Lanter - AUSA
(dean.lanter@usdoj.gov, janet.eisenmann@usdoj.gov, usainn.ecfcivil@usdoj.gov), John
Maksimovich (criminallaw@johnmaksimovich.com), John E Martin - FCD (john_martin@fd.org),
Sheldon B Nagelberg (sbnagelberglaw@att.net), David J Nozick - AUSA
(david.nozick@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov,
susan.devries@usdoj.gov, usainn.ecfcivil@usdoj.gov), Mark A Psimos
(psimoslaw@airbaud.net), Robert L Rascia (rrascia@rascia-decastro.com,
ysierra@rascia-decastro.com), Stephen Edward Scheele (pkd@gk4law.com, ses@gk4law.com),
Paul Jeffrey Schlesinger (pjeffslaw@aol.com), Adam Tavitas (adtavitas@aol.com,
b.lynneadams@yahoo.com), John T Theis (theislaw@aol.com), James N Thiros (jim@thiros.com,
lynn@thiros.com), Bryan M Truitt (bryan@tblawyers.com, sherrie@tblawyers.com), David E
Vandercoy (david.vandercoy@valpo.edu), Thomas W Vanes (b.lynneadams@yahoo.com,
tom.vanes@sbcglobal.net), Ihor Alexander Woloshansky (ihorlawyer@hotmail.com), Richard C
Wolter (b.lynneadams@yahoo.com), R Brian Woodward (carolb@wbbklaw.com,
rbwoodward@wbbklaw.com), Magistrate Judge Andrew P Rodovich
(rodovich_chambers@innd.uscourts.gov), Chief Judge Philip P Simon
(denise_woodside@innd.uscourts.gov, jacob_hamann@innd.uscourts.gov,
lauren_schwartz@innd.uscourts.gov, mira_serrill-robins@innd.uscourts.gov,
noel_collins@innd.uscourts.gov, philip_simon@innd.uscourts.gov)
--Non Case Participants: Matthew D Soliday (office@matthewsolidaylaw.com),
Probation/Pretrial Services (innpml_cmecf@innd.uscourts.gov), U S Marshal
(inn.docket-fw@usdoj.gov, inn.docket-sb@usdoj.gov, usms.27@usdoj.gov)
--No Notice Sent:

Message-Id:2598263@innd.uscourts.gov
Subject:Activity in Case 2:11-cr-00077-PPS-APR United States of America v. Briseno et al
Order on Motion to Supplement
Content-Type: text/html
```

### U.S. District Court Northern District of Indiana [LIVE]

### USDC Northern Indiana

### Notice of Electronic Filing

The following transaction was entered on 8/27/2014 at 5:03 PM EST and filed on 8/27/2014

| | |
|---|---|
| **Case Name:** | United States of America v. Briseno et al |
| **Case Number:** | 2:11-cr-00077-PPS-APR |
| **Filer:** | |
| **Document Number:** | 1038(No document attached) |

**Docket Text:**
 **ORDER granting [1037] Motion to Supplement as to Juan Briseno (1). Briseno is granted leave to file the submitted exhibit UNDER SEAL. All other counsel and parties are DIRECTED TO DISREGARD, DIRECTED NOT TO REVIEW AND DIRECTED NOT TO MAINTAIN ACCESS TO Briseno's supplemental submission, which was inadvertently not electronically filed under seal initially by counsel (though has been promptly sealed by the Court). Signed by**

1895

**Chief Judge Philip P Simon on 8/27/2014. (dkw)**

**2:11−cr−00077−PPS−APR−1 Notice has been electronically mailed to:**

David E Vandercoy     david.vandercoy@valpo.edu

Arlington J Foley     arlingtonfoley@att.net

Mark A Psimos     psimoslaw@airbaud.net

Gojko Kasich     gkasich@crownlaw.com, gkasich@gmail.com

Scott L King     sking@scottkinggroup.com, dwilliams@scottkinggroup.com

Catherine A Lake     attyclake@sbcglobal.net

James N Thiros     jim@thiros.com, lynn@thiros.com

Thomas W Vanes     tom.vanes@sbcglobal.net, b.lynneadams@yahoo.com

Ihor Alexander Woloshansky     ihorlawyer@hotmail.com

R Brian Woodward     rbwoodward@wbbklaw.com, carolb@wbbklaw.com

John Maksimovich     criminallaw@johnmaksimovich.com

Visvaldis P Kupsis     vpkupsis@hotmail.com

Sheldon B Nagelberg     sbnagelberglaw@att.net

John E Martin − FCD     john_martin@fd.org

Adam Tavitas     Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander     jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele     ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst     kre@braje−nelson.com

Bryan M Truitt     bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis     theislaw@aol.com

Robert L Rascia     rrascia@rascia−decastro.com, ysierra@rascia−decastro.com

Paul Jeffrey Schlesinger     pjeffslaw@aol.com

Pablo DeCastro     pdecastro@rascia−decastro.com, ysierra@rascia−decastro.com

Dean R Lanter − AUSA     dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov,

janet.eisenmann@usdoj.gov

David J Nozick – AUSA    David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson    attorneyrmj@gmail.com

Bruce R Hegyi – AUSA    bruce.hegyi@usdoj.gov

**2:11–cr–00077–PPS–APR–1 Notice has been delivered by U.S. Mail or other means to:**

```
MIME-Version:1.0
From:CMECFinnd@innd.uscourts.gov
To:CMECFinnd@localhost.localdomain
Bcc:
--Case Participants: Pablo DeCastro (pdecastro@rascia-decastro.com,
ysierra@rascia-decastro.com), Kurt R Earnst (kre@braje-nelson.com), Arlington J Foley
(arlingtonfoley@att.net), Jack Friedlander (jack@jackfriedlander.com,
office@jackfriedlander.com), Bruce R Hegyi - AUSA (bruce.hegyi@usdoj.gov), Roxanne Mendez
Johnson (attorneyrmj@gmail.com), Gojko Kasich (gkasich@crownlaw.com, gkasich@gmail.com),
Scott L King (dwilliams@scottkinggroup.com, sking@scottkinggroup.com), Visvaldis P Kupsis
(vpkupsis@hotmail.com), Catherine A Lake (attyclake@sbcglobal.net), Dean R Lanter - AUSA
(dean.lanter@usdoj.gov, janet.eisenmann@usdoj.gov, usainn.ecfcivil@usdoj.gov), John
Maksimovich (criminallaw@johnmaksimovich.com), John E Martin - FCD (john_martin@fd.org),
Sheldon B Nagelberg (sbnagelberglaw@att.net), David J Nozick - AUSA
(david.nozick@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov,
susan.devries@usdoj.gov, usainn.ecfcivil@usdoj.gov), Mark A Psimos
(psimoslaw@airbaud.net), Robert L Rascia (rrascia@rascia-decastro.com,
ysierra@rascia-decastro.com), Stephen Edward Scheele (pkd@gk4law.com, ses@gk4law.com),
Paul Jeffrey Schlesinger (pjeffslaw@aol.com), Adam Tavitas (adtavitas@aol.com,
b.lynneadams@yahoo.com), John T Theis (theislaw@aol.com), James N Thiros (jim@thiros.com,
lynn@thiros.com), Bryan M Truitt (bryan@tblawyers.com, sherrie@tblawyers.com), David E
Vandercoy (david.vandercoy@valpo.edu), Thomas W Vanes (b.lynneadams@yahoo.com,
tom.vanes@sbcglobal.net), Ihor Alexander Woloshansky (ihorlawyer@hotmail.com), Richard C
Wolter (b.lynneadams@yahoo.com), R Brian Woodward (carolb@wbbklaw.com,
rbwoodward@wbbklaw.com), Magistrate Judge Andrew P Rodovich
(rodovich_chambers@innd.uscourts.gov), Chief Judge Philip P Simon
(denise_woodside@innd.uscourts.gov, jacob_hamann@innd.uscourts.gov,
lauren_schwartz@innd.uscourts.gov, mira_serrill-robins@innd.uscourts.gov,
noel_collins@innd.uscourts.gov, philip_simon@innd.uscourts.gov)
--Non Case Participants: Matthew D Soliday (office@matthewsolidaylaw.com)
--No Notice Sent:

Message-Id:2599355@innd.uscourts.gov
Subject:Activity in Case 2:11-cr-00077-PPS-APR United States of America v. Briseno et al
Order on Motion to Seal Document
Content-Type: text/html
```

## U.S. District Court Northern District of Indiana [LIVE]

## USDC Northern Indiana

## Notice of Electronic Filing

The following transaction was entered on 8/29/2014 at 9:40 AM EST and filed on 8/29/2014

| | |
|---|---|
| **Case Name:** | United States of America v. Briseno et al |
| **Case Number:** | 2:11-cr-00077-PPS-APR |
| **Filer:** | |
| **Document Number:** | 1043(No document attached) |

**Docket Text:**
 **ORDER granting [1041] Motion to Seal Document as to Juan Briseno (1). Signed by Chief Judge Philip P Simon on 8/29/2014. (dkw)**

**2:11-cr-00077-PPS-APR-1 Notice has been electronically mailed to:**

David E Vandercoy    david.vandercoy@valpo.edu

Arlington J Foley    arlingtonfoley@att.net

Mark A Psimos    psimoslaw@airbaud.net

Gojko Kasich    gkasich@crownlaw.com, gkasich@gmail.com

Scott L King    sking@scottkinggroup.com, dwilliams@scottkinggroup.com

Catherine A Lake    attyclake@sbcglobal.net

James N Thiros    jim@thiros.com, lynn@thiros.com

Thomas W Vanes    tom.vanes@sbcglobal.net, b.lynneadams@yahoo.com

Ihor Alexander Woloshansky    ihorlawyer@hotmail.com

R Brian Woodward    rbwoodward@wbbklaw.com, carolb@wbbklaw.com

John Maksimovich    criminallaw@johnmaksimovich.com

Visvaldis P Kupsis    vpkupsis@hotmail.com

Sheldon B Nagelberg    sbnagelberglaw@att.net

John E Martin – FCD    john_martin@fd.org

Adam Tavitas    Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander    jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele    ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst    kre@braje–nelson.com

Bryan M Truitt    bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis    theislaw@aol.com

Robert L Rascia    rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger    pjeffslaw@aol.com

Pablo DeCastro    pdecastro@rascia–decastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA    dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov,
janet.eisenmann@usdoj.gov

David J Nozick – AUSA    David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov,
janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson    attorneyrmj@gmail.com

Bruce R Hegyi – AUSA    bruce.hegyi@usdoj.gov

**2:11–cr–00077–PPS–APR–1 Notice has been delivered by U.S. Mail or other means to:**

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| VS. | ) | CASE NO. 2:11 CR 77 |
| | ) | |
| JUAN BRISENO | ) | |

## DEFENDANT'S MOTION TO EXTEND TIME TO FILE RESPONSE TO GOVERNMENT'S MOTION TO EMPANEL AN ANONYMOUS JURY

Comes now the Defendant, Juan Briseno, by and through counsel, and moves the Court to grant an extension for the Defendant to file his response to government's Motion to Empanel an Anonymous Jury and in support says as follows:

1. That the government has filed its Motion to Empanel an Anonymous Jury with the Court and the Court has set a deadline of September 5, 2014 for the Defendant to file a response thereto.

2. That the Defendant requires additional time to file said response due to his counsel being consumed with other aspects of this case as well as other matters.

3. That substantial legal and factual research is required to file an adequate response, which includes searching through voluminous discovery materials and transcripts.

4. That the government has no objection to the granting of a two (2) week extension of time for the Defendant to file his response.

**WHEREFORE:** The Defendant, Juan Briseno, moves the Court to grant a two (2) week extension of time for the Defendant to file his response to government's Motion to Empanel an Anonymous Jury.

**Respectfully Submitted:**

/s/Arlington J. Foley
Arlington J. Foley #6905-45
Attorney for Defendant
1942 North Main Street
Crown Point, IN  46307
Ph:  (219) 661-1200
Fx:  (219) 661-1205

/s/John Maksimovich
John Maksimovich #9950-45
Attorney for Defendant
1946 North Main Street
Crown Point, IN  46307
Ph:  (219) 663-1900
Fx:  (219) 663-1908

### CERTIFICATE OF SERVICE

I certify that on the 29th day of August, 2014 service of a true and complete copy of the above and foregoing pleading or paper was made upon each party or attorney of record herein by the electronic case filing system (ECF).

By:    s/Arlington J. Foley
         Arlington J. Foley
         Attorney at Law

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | ) |
| | ) |
| **VS.** | ) **CASE NO. 2:11 CR 77** |
| | ) |
| **JUAN BRISENO** | ) |

**ORDER**

Defendant, Juan Briseno's Motion for an Extension of Time to file his response to

government's <u>Motion to Empanel an Anonymous Jury</u> is granted.  Defendant's response is now

due on or before September 19, 2014.


**SO ORDERED THIS** _____ **DAY OF** _____, 20\_\_\_.



_____
                                      **JUDGE**

1903

```
MIME-Version:1.0
From:CMECFinnd@innd.uscourts.gov
To:CMECFinnd@localhost.localdomain
Bcc:
--Case Participants: Pablo DeCastro (pdecastro@rascia-decastro.com,
ysierra@rascia-decastro.com), Kurt R Earnst (kre@braje-nelson.com), Arlington J Foley
(arlingtonfoley@att.net), Jack Friedlander (jack@jackfriedlander.com,
office@jackfriedlander.com), Bruce R Hegyi - AUSA (bruce.hegyi@usdoj.gov), Roxanne Mendez
Johnson (attorneyrmj@gmail.com), Gojko Kasich (gkasich@crownlaw.com, gkasich@gmail.com),
Scott L King (dwilliams@scottkinggroup.com, sking@scottkinggroup.com), Visvaldis P Kupsis
(vpkupsis@hotmail.com), Dean R Lanter - AUSA (dean.lanter@usdoj.gov,
janet.eisenmann@usdoj.gov, usainn.ecfcivil@usdoj.gov), John Maksimovich
(criminallaw@johnmaksimovich.com), John E Martin - FCD (john_martin@fd.org), Sheldon B
Nagelberg (sbnagelberglaw@att.net), David J Nozick - AUSA (david.nozick@usdoj.gov,
janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov,
usainn.ecfcivil@usdoj.gov), Mark A Psimos (psimoslaw@airbaud.net), Robert L Rascia
(rrascia@rascia-decastro.com, ysierra@rascia-decastro.com), Stephen Edward Scheele
(pkd@gk4law.com, ses@gk4law.com), Paul Jeffrey Schlesinger (pjeffslaw@aol.com), Adam
Tavitas (adtavitas@aol.com, b.lynneadams@yahoo.com), John T Theis (theislaw@aol.com),
James N Thiros (jim@thiros.com, lynn@thiros.com), Bryan M Truitt (bryan@tblawyers.com,
sherrie@tblawyers.com), David E Vandercoy (david.vandercoy@valpo.edu), Thomas W Vanes
(b.lynneadams@yahoo.com, tom.vanes@sbcglobal.net), Ihor Alexander Woloshansky
(ihorlawyer@hotmail.com), Richard C Wolter (b.lynneadams@yahoo.com), R Brian Woodward
(carolb@wbbklaw.com, rbwoodward@wbbklaw.com), Magistrate Judge Andrew P Rodovich
(rodovich_chambers@innd.uscourts.gov), Chief Judge Philip P Simon
(denise_woodside@innd.uscourts.gov, jacob_hamann@innd.uscourts.gov,
lauren_schwartz@innd.uscourts.gov, mira_serrill-robins@innd.uscourts.gov,
noel_collins@innd.uscourts.gov, philip_simon@innd.uscourts.gov)
--Non Case Participants: Matthew D Soliday (office@matthewsolidaylaw.com),
Probation/Pretrial Services (innpml_cmecf@innd.uscourts.gov), U S Marshal
(inn.docket-fw@usdoj.gov, inn.docket-sb@usdoj.gov, usms.27@usdoj.gov)
--No Notice Sent:

Message-Id:2600658@innd.uscourts.gov
Subject:Activity in Case 2:11-cr-00077-PPS-APR United States of America v. Briseno et al
Order on Motion for Extension of Time to File Response/Reply
Content-Type: text/html
```

## U.S. District Court Northern District of Indiana [LIVE]

### USDC Northern Indiana

### Notice of Electronic Filing

The following transaction was entered on 9/2/2014 at 11:57 AM EST and filed on 9/2/2014

| | |
|---|---|
| **Case Name:** | United States of America v. Briseno et al |
| **Case Number:** | 2:11-cr-00077-PPS-APR |
| **Filer:** | |
| **Document Number:** | 1046(No document attached) |

**Docket Text:**
**ORDER granting in part and denying in part [1045] Motion for Extension of Time to File Response/Reply as to Juan Briseno (1). Time is of the essence in view of the need to get the jury notice out in a timely manner and to finalize the mechanics of the juror questionnaire. Defendant Response Brief due by Friday 9/12/2014. Government Reply Brief due by Thursday 9/25/2014. A hearing on the motion is set for Friday 9/26/2014 at 1:30 p.m. Signed by Chief Judge Philip P Simon on 9/2/2014. (dkw)**

1904

**2:11−cr−00077−PPS−APR−1 Notice has been electronically mailed to:**

David E Vandercoy    david.vandercoy@valpo.edu

Arlington J Foley    arlingtonfoley@att.net

Mark A Psimos    psimoslaw@airbaud.net

Gojko Kasich    gkasich@crownlaw.com, gkasich@gmail.com

Scott L King    sking@scottkinggroup.com, dwilliams@scottkinggroup.com

James N Thiros    jim@thiros.com, lynn@thiros.com

Thomas W Vanes    tom.vanes@sbcglobal.net, b.lynneadams@yahoo.com

Ihor Alexander Woloshansky    ihorlawyer@hotmail.com

R Brian Woodward    rbwoodward@wbbklaw.com, carolb@wbbklaw.com

John Maksimovich    criminallaw@johnmaksimovich.com

Visvaldis P Kupsis    vpkupsis@hotmail.com

Sheldon B Nagelberg    sbnagelberglaw@att.net

John E Martin − FCD    john_martin@fd.org

Adam Tavitas    Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander    jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele    ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst    kre@braje−nelson.com

Bryan M Truitt    bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis    theislaw@aol.com

Robert L Rascia    rrascia@rascia−decastro.com, ysierra@rascia−decastro.com

Paul Jeffrey Schlesinger    pjeffslaw@aol.com

Pablo DeCastro    pdecastro@rascia−decastro.com, ysierra@rascia−decastro.com

Dean R Lanter − AUSA    dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov,
janet.eisenmann@usdoj.gov

David J Nozick − AUSA    David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov,
janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson    attorneyrmj@gmail.com

Bruce R Hegyi – AUSA    bruce.hegyi@usdoj.gov

**2:11–cr–00077–PPS–APR–1 Notice has been delivered by U.S. Mail or other means to:**

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | NO. 2:11CR77 PPS |
| | ) | |
| JUAN BRISENO, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**ORDER**

On July 1, 2014, I directed the Clerk to prepare the Special Questionnaire for

completion by prospective jurors to be summoned for service in the January 12, 2015

trial of Juan Briseno. [DE 970.] The Clerk has now completed the design of the

electronic version of the survey. It is now time to make the electronic survey available to

counsel for their review. In order to protect electronic access to the survey, counsel will

be provided the necessary link via an email from chambers.

Counsel should be aware that the electronic survey has been prepared to mirror

the hard copy questionnaire that was agreed to by counsel and the Court, and without

regard to the potential changes needed if I am persuaded to make the jury anonymous

by withholding particular information from the parties. If an anonymous jury is

ordered, the Clerk can and will make all necessary changes to the electronic survey and

its handling and management.

As counsel know from my order of September 2, the briefs on the motion to empanel an anonymous jury are due September 12 and September 25, and a hearing is set on the matter September 26. It was my hope that letters dated October 1, 2014 could be mailed to the prospective jurors, directing them to complete the juror questionnaire online, or to request and return a completed paper questionnaire, no later than October 31, 2014. In order to maintain this schedule, we must act timely to finalize decisions about an anonymous jury and to finalize the juror questionnaire. Counsel are therefore directed to review the electronic juror survey via the link to be provided them by e-mail, and to respond to that email (to the court and all counsel) with any concerns or questions no later than September 25, so that any necessary discussion can take place at the hearing already scheduled for September 26.

For counsel's information, here is some additional detail about my current thinking with respect to the process of summoning the jury panel. The completed questionnaires will be made available to counsel as promptly as possible. I further contemplate that counsel would then be required to confer concerning strikes for cause and thereafter file, no later than Friday, December 5, three lists: (1) a list of jurors who the parties agree should be struck for cause, (2) a list of jurors the government believes should be struck for cause over defendant's opposition, and (3) a list of jurors the defendant believes should be struck for cause over the government's opposition. A hearing on this round of strikes for cause could then be held Thursday, December 18. Although I do not formally set these December dates at this time, as they are subject to

2

change, counsel should note them and plan as if those dates will be set in future, as I hope to do.

ACCORDINGLY:

Using the electronic access to be provided by e-mail from chambers, counsel are directed to review the electronic version of the agreed Special Questionnaire for prospective jurors in the trial of defendant Juan Briseno.  Any questions or concerns should be expressed by way of email to the court and all counsel **no later than September 25, 2014**, and any formal objections can be addressed on the record at the September 26 hearing already set on the motion to empanel an anonymous jury.

SO ORDERED.

ENTERED: September 5, 2014.

 /s/ Philip P. Simon
PHILIP P. SIMON, CHIEF JUDGE
UNITED STATES DISTRICT COURT

3

1909

```
MIME-Version:1.0
From:CMECFinnd@innd.uscourts.gov
To:CMECFinnd@localhost.localdomain
Bcc:
--Case Participants: Bryan M Truitt (bryan@tblawyers.com, sherrie@tblawyers.com), David J
Nozick - AUSA (david.nozick@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov,
susan.devries@usdoj.gov, usainn.ecfcivil@usdoj.gov), Kurt R Earnst (kre@braje-nelson.com),
Paul Jeffrey Schlesinger (pjeffslaw@aol.com), Pablo DeCastro
(pdecastro@rascia-decastro.com, ysierra@rascia-decastro.com), Sheldon B Nagelberg
(sbnagelberglaw@att.net), Thomas W Vanes (b.lynneadams@yahoo.com,
tom.vanes@sbcglobal.net), Richard C Wolter (b.lynneadams@yahoo.com), John T Theis
(theislaw@aol.com), Adam Tavitas (adtavitas@aol.com, b.lynneadams@yahoo.com), Dean R
Lanter - AUSA (dean.lanter@usdoj.gov, janet.eisenmann@usdoj.gov,
usainn.ecfcivil@usdoj.gov), John E Martin - FCD (john_martin@fd.org), Scott L King
(dwilliams@scottkinggroup.com, sking@scottkinggroup.com), Mark A Psimos
(psimoslaw@airbaud.net), Ihor Alexander Woloshansky (ihorlawyer@hotmail.com), Richard M
Davis (jdavis@hwelaw.com, rdavis@hwelaw.com, rgould@hwelaw.com), James N Thiros
(jim@thiros.com, lynn@thiros.com), Robert L Rascia (rrascia@rascia-decastro.com,
ysierra@rascia-decastro.com), Gojko Kasich (gkasich@crownlaw.com, gkasich@gmail.com),
Arlington J Foley (arlingtonfoley@att.net), Roxanne Mendez Johnson
(attorneyrmj@gmail.com), Visvaldis P Kupsis (vpkupsis@hotmail.com), Stephen Edward Scheele
(pkd@gk4law.com, ses@gk4law.com), Jack Friedlander (jack@jackfriedlander.com,
office@jackfriedlander.com), Bruce R Hegyi - AUSA (bruce.hegyi@usdoj.gov), R Brian
Woodward (carolb@wbbklaw.com, rbwoodward@wbbklaw.com), John Maksimovich
(criminallaw@johnmaksimovich.com), David E Vandercoy (david.vandercoy@valpo.edu),
Magistrate Judge Andrew P Rodovich (rodovich_chambers@innd.uscourts.gov), Chief Judge
Philip P Simon (denise_woodside@innd.uscourts.gov, jacob_hamann@innd.uscourts.gov,
lauren_schwartz@innd.uscourts.gov, mira_serrill-robins@innd.uscourts.gov,
noel_collins@innd.uscourts.gov, philip_simon@innd.uscourts.gov)
--Non Case Participants: Matthew D Soliday (office@matthewsolidaylaw.com),
Probation/Pretrial Services (innpml_cmecf@innd.uscourts.gov), U S Marshal
(inn.docket-fw@usdoj.gov, inn.docket-sb@usdoj.gov, usms.27@usdoj.gov)
--No Notice Sent:

Message-Id:2604369@innd.uscourts.gov
Subject:Activity in Case 2:11-cr-00077-PPS-APR United States of America v. Briseno et al
```
Set/Reset Deadlines

Content–Type: text/html

### U.S. District Court Northern District of Indiana [LIVE]

### USDC Northern Indiana

## Notice of Electronic Filing


The following transaction was entered on 9/5/2014 at 3:40 PM EST and filed on 9/5/2014

| | |
|---|---|
| **Case Name:** | United States of America v. Briseno et al |
| **Case Number:** | 2:11–cr–00077–PPS–APR |
| **Filer:** | |
| **Document Number:** | No document attached |

**Docket Text:**
 **Set/Reset Deadlines as to Juan Briseno: questions or concerns re [1053] due by 9/25/2014.
(mc)**


**2:11–cr–00077–PPS–APR–1 Notice has been electronically mailed to:**

David E Vandercoy     david.vandercoy@valpo.edu

Richard M Davis     rdavis@hwelaw.com, jdavis@hwelaw.com, rgould@hwelaw.com

Arlington J Foley     arlingtonfoley@att.net

Mark A Psimos     psimoslaw@airbaud.net

Gojko Kasich     gkasich@crownlaw.com, gkasich@gmail.com

Scott L King     sking@scottkinggroup.com, dwilliams@scottkinggroup.com

James N Thiros     jim@thiros.com, lynn@thiros.com

Thomas W Vanes     tom.vanes@sbcglobal.net, b.lynneadams@yahoo.com

Ihor Alexander Woloshansky     ihorlawyer@hotmail.com

R Brian Woodward     rbwoodward@wbbklaw.com, carolb@wbbklaw.com

John Maksimovich     criminallaw@johnmaksimovich.com

Visvaldis P Kupsis     vpkupsis@hotmail.com

Sheldon B Nagelberg     sbnagelberglaw@att.net

John E Martin – FCD     john_martin@fd.org

Adam Tavitas     Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander     jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele     ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst     kre@braje–nelson.com

Bryan M Truitt     bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis     theislaw@aol.com

Robert L Rascia     rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger     pjeffslaw@aol.com

Pablo DeCastro     pdecastro@rascia–decastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA     dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov,
janet.eisenmann@usdoj.gov

David J Nozick – AUSA     David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov,
janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson    attorneyrmj@gmail.com

Bruce R Hegyi – AUSA    bruce.hegyi@usdoj.gov

**2:11–cr–00077–PPS–APR–1 Notice has been delivered by U.S. Mail or other means to:**

```
MIME-Version:1.0
From:CMECFinnd@innd.uscourts.gov
To:CMECFinnd@localhost.localdomain
Bcc:
--Case Participants: Richard M Davis (jdavis@hwelaw.com, rdavis@hwelaw.com,
rgould@hwelaw.com), Pablo DeCastro (pdecastro@rascia-decastro.com,
ysierra@rascia-decastro.com), Kurt R Earnst (kre@braje-nelson.com), Arlington J Foley
(arlingtonfoley@att.net), Jack Friedlander (jack@jackfriedlander.com,
office@jackfriedlander.com), Bruce R Hegyi - AUSA (bruce.hegyi@usdoj.gov), Roxanne Mendez
Johnson (attorneyrmj@gmail.com), Gojko Kasich (gkasich@crownlaw.com, gkasich@gmail.com),
Scott L King (dwilliams@scottkinggroup.com, sking@scottkinggroup.com), Visvaldis P Kupsis
(vpkupsis@hotmail.com), Dean R Lanter - AUSA (dean.lanter@usdoj.gov,
janet.eisenmann@usdoj.gov, usainn.ecfcivil@usdoj.gov), John Maksimovich
(criminallaw@johnmaksimovich.com), John E Martin - FCD (john_martin@fd.org), Sheldon B
Nagelberg (sbnagelberglaw@att.net), David J Nozick - AUSA (david.nozick@usdoj.gov,
janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov,
usainn.ecfcivil@usdoj.gov), Mark A Psimos (psimoslaw@airbaud.net), Robert L Rascia
(rrascia@rascia-decastro.com, ysierra@rascia-decastro.com), Stephen Edward Scheele
(pkd@gk4law.com, ses@gk4law.com), Paul Jeffrey Schlesinger (pjeffslaw@aol.com), Adam
Tavitas (adtavitas@aol.com, b.lynneadams@yahoo.com), John T Theis (theislaw@aol.com),
James N Thiros (jim@thiros.com, lynn@thiros.com), Bryan M Truitt (bryan@tblawyers.com,
sherrie@tblawyers.com), David E Vandercoy (david.vandercoy@valpo.edu), Thomas W Vanes
(b.lynneadams@yahoo.com, tom.vanes@sbcglobal.net), Ihor Alexander Woloshansky
(ihorlawyer@hotmail.com), Richard C Wolter (b.lynneadams@yahoo.com), R Brian Woodward
(carolb@wbbklaw.com, rbwoodward@wbbklaw.com), Magistrate Judge Andrew P Rodovich
(rodovich_chambers@innd.uscourts.gov), Chief Judge Philip P Simon
(denise_woodside@innd.uscourts.gov, jacob_hamann@innd.uscourts.gov,
lauren_schwartz@innd.uscourts.gov, mira_serrill-robins@innd.uscourts.gov,
noel_collins@innd.uscourts.gov, philip_simon@innd.uscourts.gov)
--Non Case Participants: Matthew D Soliday (office@matthewsolidaylaw.com),
Probation/Pretrial Services (innpml_cmecf@innd.uscourts.gov), U S Marshal
(inn.docket-fw@usdoj.gov, inn.docket-sb@usdoj.gov, usms.27@usdoj.gov)
--No Notice Sent:

Message-Id:2607565@innd.uscourts.gov
Subject:Activity in Case 2:11-cr-00077-PPS-APR United States of America v. Briseno et al
Notice of Hearing on Motion
Content-Type: text/html
```

### U.S. District Court Northern District of Indiana [LIVE]

### USDC Northern Indiana

## Notice of Electronic Filing

The following transaction was entered on 9/10/2014 at 6:32 PM EST and filed on 9/10/2014

| | |
|---|---|
| **Case Name:** | United States of America v. Briseno et al |
| **Case Number:** | 2:11-cr-00077-PPS-APR |
| **Filer:** | |
| **Document Number:** | 1055(No document attached) |

**Docket Text:**
**NOTICE OF HEARING ON MOTION in case as to Juan Briseno [1027] MOTION re [1026] MOTION *Request To File Over-Length Motion MOTION WITH INCORPORATED MEMORANDUM TO STRIKE THE NOTICE OF AGGRAVATING FACTORS* : Motion Hearing set for 11/18/2014 09:30 AM in US District Court - Hammond before Chief Judge Philip P Simon. (nac)**

**2:11−cr−00077−PPS−APR−1 Notice has been electronically mailed to:**

David E Vandercoy    david.vandercoy@valpo.edu

Richard M Davis    rdavis@hwelaw.com, jdavis@hwelaw.com, rgould@hwelaw.com

Arlington J Foley    arlingtonfoley@att.net

Mark A Psimos    psimoslaw@airbaud.net

Gojko Kasich    gkasich@crownlaw.com, gkasich@gmail.com

Scott L King    sking@scottkinggroup.com, dwilliams@scottkinggroup.com

James N Thiros    jim@thiros.com, lynn@thiros.com

Thomas W Vanes    tom.vanes@sbcglobal.net, b.lynneadams@yahoo.com

Ihor Alexander Woloshansky    ihorlawyer@hotmail.com

R Brian Woodward    rbwoodward@wbbklaw.com, carolb@wbbklaw.com

John Maksimovich    criminallaw@johnmaksimovich.com

Visvaldis P Kupsis    vpkupsis@hotmail.com

Sheldon B Nagelberg    sbnagelberglaw@att.net

John E Martin − FCD    john_martin@fd.org

Adam Tavitas    Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander    jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele    ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst    kre@braje−nelson.com

Bryan M Truitt    bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis    theislaw@aol.com

Robert L Rascia    rrascia@rascia−decastro.com, ysierra@rascia−decastro.com

Paul Jeffrey Schlesinger    pjeffslaw@aol.com

Pablo DeCastro    pdecastro@rascia−decastro.com, ysierra@rascia−decastro.com

Dean R Lanter − AUSA    dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov,
janet.eisenmann@usdoj.gov

David J Nozick – AUSA   David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson   attorneyrmj@gmail.com

Bruce R Hegyi – AUSA   bruce.hegyi@usdoj.gov

**2:11−cr−00077−PPS−APR−1 Notice has been delivered by U.S. Mail or other means to:**

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | ) |
| | ) |
| **VS.** | ) **CASE NO. 2:11 CR 77** |
| | ) |
| **JUAN BRISENO** | ) |

**DEFENDANT'S RESPONSE TO GOVERNMENT'S MOTION TO EMPANEL AN ANONYMOUS JURY**

Comes now the Defendant, Juan Briseno, by and through counsel, and in response to the Government's Motion to Empanel an Anonymous Jury says as follows:

Factual Background:

A.  Government's Factual Allegations

The government has filed a Motion to Empanel an Anonymous Jury and therein has alleged facts and/or factual allegations which it believes support its motion.  Those factual allegations include the following:

Juan Briseno (also known as "Tito") and his twenty-three (23) co-defendants belonged to a street gang named the Almighty Imperial Gangster Nation ("IGs").  The IGs, it is alleged, have two Northwest Indiana Chapters, the 149th Street Chapter (South Side) and the 139th Street Chapter (Trey-Nines).  The government claims that this group "plagued and terrorized various streets and neighborhoods in and around East Chicago, Indiana."  The IGs systematically

and in an organized manner committed drug deals, shootings, robberies, murders, carjackings, burglaries and additional criminal conduct.  (To support these allegations, the government relies upon the allegations contained within the 4th Superseding Indictment).  In that Indictment, the Defendant, Juan Briseno, is alleged to have committed six murders and seven attempted murders.

The government, in its motion, cites the Richard Reyes Jury Trial and the Indictment to support its allegations that the IGs are a "…particularly violent and vicious street gang, who go to extreme lengths to shoot and kill those who are viewed as threats to the IGs or are perceived to be disloyal to them." Motion to Empanel an Anonymous Jury, p. 2.  The government also props up this statement with several incidents where renegade IGs were shot at and sometimes killed for apparently "…breaking away…" from the IGs five such incidents were cited; none of which are alleged to have been ordered or perpetrated by Juan Briseno.  These acts were assumably for disloyalty of gang members.  None of these acts cited were aimed at or targeted a juror.  Motion to Empanel an Anonymous Jury, p. 3.

The government also alleges that Juan Briseno has continued to direct the actions of other Northwest Indiana IGs while he has been detained in this case.  He allegedly told another IG, in a letter, to take care of younger IGs and to recruit additional members.  He also asked the other IG to have the Northwest Indiana IGs act together in the community. Motion to Empanel an Anonymous Jury, p. 4.  The government's motion also refers to the Chicago, Illinois IGs (who are located on Chicago's Northwest side) as being a "stone's throw" from Northwest Indiana. The Chicago IGs are said to have a close interactive relationship with Northwest Indiana IGs.

2

There is no mention in the government's motion that the IG, who received Briseno's correspondence, ever acted upon them. Likewise, there is no mention that Chicago IGs committed specific named crimes in Northwest Indiana nor have any Chicago IGs been named as co-defendants in this Indictment. However, the government, in its motion, refers to them as "…necessarily a legitimate potential threat to the sanctity of these proceedings…" To the Defendant's knowledge, no actions of Chicago IGs have disrupted any proceeding related to this matter since the initial Indictment was filed.

B. <u>Defendant's Additional Facts</u>

The Defendant, Juan Briseno, makes the following allegations regarding facts that he believes exist(ed) and are true to the best of his knowledge and belief:

As indicated by the government, Juan Briseno along with twenty-three (23) other IGs (or affiliates) were indicted under this cause. Twenty-two (22) pleaded guilty and one, Richard Reyes, went to trial and was found guilty by a jury. Mr. Reyes, like many of other co-defendants, was/is facing a life sentence.

From information available to this Defendant, the government did not request an anonymous jury and one was not empaneled in the Richard Reyes trial, which was tried before this Court.

Richard Reyes was, by IG standards, an older ("old school") gang member. This made him, according to trial testimony, worthy of respect and protection. If an IG saw Reyes in a fight

3

with a rival gang member (for example) the IG would have to fight along with Reyes against his foe.

The Defendant, Juan Briseno, knows of no instances where witnesses, informants, agents of the government or jurors (in the Reyes trial) were threatened, harmed or killed either before, during or after that trial.

The Defendant is accused of seven (7) attempted murders. The Defendant knows of no instances where any of those alleged victims or any other witnesses to those charges have been threatened, harmed or killed.

The vast majority of the twenty-two (22) co-defendants of Juan Briseno that have pleaded guilty pursuant to plea agreements have their cooperation with the government as a term of such plea agreements. A great number of their sentencing have been continued until a time, well after the Briseno trial is set to commence, in order that they might lessen their sentences by testifying and otherwise cooperating for the government against Juan Briseno.

To Defendant's knowledge, none of the twenty-two (22) pleading co-defendants have been threatened, harmed or killed.

The Defendant, Juan Briseno, has not been charged with any additional criminal offenses while he has been incarcerated awaiting trial herein.

The IGs in East Chicago, Indiana have been decimated by this Indictment. Most of them are presently incarcerated. There, to Defendant's knowledge, have been no disruptions to any IG-related Court proceedings in this district. There has been no IG "show of force" in Court and no harassment of alleged victims' or their family members in or near the Court.

1919

The Northwest Indiana IGs are locally based in East Chicago, Indiana. There have been no reported sightings of Chicago or Florida IGs at or near the Court. No Chicago or Florida IGs are charged in this Indictment.

At least one government cooperating witness (his name is known but it is being withheld pursuant to an understanding between the parties not to disclose such identities) was and is out "on the streets" of East Chicago, Indiana. Although he probably was known to be cooperating with the government, he has never been harmed or threatened, to Defendant's belief and knowledge.

Discussion

The government in its motion is requesting that this Court empanel an anonymous jury for the upcoming trial of Juan Briseno. In its argument, the government discusses the defendant's right to an impartial jury and the concern for the jury to be safe from harm and/or threats.

The government relies upon the so-called "Ross Factors" and the application of our (Briseno's) fact situation to those factors. The government acknowledges that an anonymous jury in an extreme measure and that it is only warranted "where there is a strong reason to believe that the jury needs protection." United States v. Mansoori, 304 F.3d 635, 650 (7th Cir. 2002). An anonymous jury can highlight to the jury that Juan Briseno may be a dangerous person from whom the jury must be protected which may adversely affect the defendant's presumption of innocence. United States v. Mansoori, 304 F.3d 635, 650 (7th Cir. 2002). It may

also deprive him of valuable information to be used in making knowing and intelligent

challenges.  Id.

It appears from the government's motion and arguments, that it wants the Court to

empanel a jury that is anonymous in all aspects; publicly anonymous and anonymous to the

Defendant and his attorneys.  In doing so, it urges the Court to analyze the "facts" known or

presented to the Court and apply the "Ross Factors" to them.  It acknowledges that the Ross

Factors must be viewed as a whole and the existence of any single factor or combination of

factors should not automatically compel the empanelling of an anonymous jury.  Motion to

Empanel an Anonymous Jury, p. 7, citing United States v. Hall, 506 Fed Appx. at 249.  The

Defendant requests that the Court consider the Defendant's right to an impartial jury as

provided by the Sixth Amendment to the United States Constitution, and the United States

Code which in part states that a person charged with a capital offense shall "…be furnished with

a list of veniremen…" "…stating the place of abode…" "…except that such list of veniremen and

witnesses need not be furnished if the Court finds by and preponderance of the evidence that

providing the list may jeopardize the life or safety of any person."   18 U.S.C.A. § 3432

The Defendant contends that a review of all of the relevant facts and the application of

the Ross Factors to them results in a different conclusion than that reached by the government.


Factor 1:  The Defendant's Involvement in Organized Crime


At least one government witness, Joseph Torres, said that the IGs did not have a strict

structure.  There was no president or vice president, "…we have no chain of command…" Reyes

6

Trial Transcript, Excerpt Testimony of Joseph Torres, p. 71.  Their organization, if any, was, in essence, a desire and effort to protect their turf/their home neighborhood, where they grew up and lived.

The Defendant relies upon the Court's knowledge of the totality of this case and all related proceedings in which it has been established, firmly, that the IGs were, in essence, born into the gang as a result of where they lived and where they grew up more than by their choice of affiliation.  It is therefore not surprising that some of them are related; i.e., uncles, cousins, brothers, etc.  They all live(d) in the same neighborhoods.  There IG affiliation was not because of an organized structure, but more because of their geographical confines.

It is noteworthy that the Indictment has decimated the IGs.  They are, for all practical purposes, behind bars.  There is virtually no one left to threaten or harm anyone anymore.

The government cites the killing of Mario Soriano as an example of the organized crime aspect of the IGs.  This was allegedly a killing of a former IG who broke away from the IGs and became a "renegade."  It must be pointed out that there is no allegation that Juan Briseno was in any way involved with this incident, which occurred March 25, 2008 (six years ago).  The perpetrators of this incident are now all in jail.  The Defendant contends this is not an example of organized crime, but a dispute between rival gang members.

The government also points to the attempted killings of Rolando Leal, Eddie Soriano, and Victim 5.  The Defendant believes that all of these perpetrators are behind bars and are no longer a threat to anyone.  There exists no allegation that Juan Briseno had anything to do with these incidents either directly or indirectly.  It should also be noted that Victim 5's identity was known to Jason Medina and Ed Serna (the perpetrators and whom have pleaded guilty).  They

7

have been locked up and Victim 5 has been freely walking the streets without further incidents (further proof of the lack of IG organization and present dangerousness). Another killing cited by the government is that of Alonzo Cavazos (occurred May 3, 2009 – five years ago). Julius Solis has pleaded to this offense and is also locked up (once again, Juan Briseno is not linked to this matter).

It is clear that all of these incidents, pointed to by the government, are specifically isolated to the individuals involved. Once the crime was solved and the proper perpetrators arrested, the scenario ended. The "organized crime" aspect of the Imperial Gangsters simply doesn't fit. There exists no hierarchy and no threat to jurors.

A perfect example(s) of this lack of an organization or structure is contained in the Reyes Trial and the absolute lack of an aftermath. Richard Reyes was charged in this Indictment, went to trial, was convicted and faces life sentence imprisonment.

The government never asked for an anonymous jury, in that matter, in spite of Richard Reyes being an "old school" member of the IGs, who deserved the respect and protection of younger more active members. Reyes Trial Transcript, Excerpt Testimony of Joseph Torres, p. 83. Because he was an "old school" IG, one would expect a greater potential of danger to jurors than any possible danger posed by Juan Briseno.

If the IGs were so organized and such a threat to jurors the government would have asked for an anonymous jury to be empanelled in that trial. The fact that it didn't speaks volumes, as does that the fact that there were no incidents, before, during or after that trial involving witnesses or jurors. If anyone's conviction should have been avenged, it should have been an "old school" IG like Reyes. There, quite simply, is no evidence of a desire or ability by

1923

the Defendant or anyone that he knows or is related to, to do anything to anyone, whether witness or juror.

There are twenty-two (22) defendants who have pleaded, a great percentage of whom will be ready and willing to testify against Juan Briseno. However, no harm has come to any of them although they have been in the system since the inception of this case.

Aside from the allegations in the Indictment and the unsupported assertions contained in the government's motion, there is no evidence or proof that Juan Briseno was involved in organized crime.

Factor 2:  Defendant's Participation in a Group with the Capacity to Harm Jurors

The government, it its motion, does not discuss the East Chicago IGs being a threat, because they've been decimated. Instead they point to Chicago and Florida IGs. This is simply not true. There is absolutely no evidence that the Chicago or Florida IGs have done or would do anything to disrupt these proceedings. They have not done anything to this point. They have not appeared before this Court in any proceeding. They have not threatened or harassed witnesses or victims' family members. None of them have been charged in this Indictment. And if, as alleged by the government, if these other groups pose such a threat now, they most certainly would have posed at least as great of a threat during the Reyes trial.

However, an anonymous jury was not even requested in the Reyes trial and nothing has happened to any witness or juror. The government was correct in their inaction. There clearly is and was no group left with the capacity or desire to harm jurors.

9

Factor 3:  The Defendant's Past Attempts to Interfere with the Judicial Process

Juan Briseno has done nothing in the past to interfere with the judicial process.  The assertion that Juan Briseno was a "leader" of the IGs is just that, an assertion.  There, in fact, according to Joseph Torres, no strict organization, just "older guys" Reyes Trial Transcript, Excerpt Testimony of Joseph Torres, p. 71.

The perpetrators of the attempted murder of Victim 5, while he was with his mother, have been brought to justice, Jason Medina and Edward Serna.  There is no allegation that Juan Briseno participated in any way.  In fact, Victim 5 is presently walking the streets although being a suspected informant by Medina and Serna.

Additionally, the Victim 5 incident occurred on June 6, 2011, while Juan Briseno was incarcerated on a totally unrelated matter.  United States v. Juan Briseno, Case No. 2:10 CR 146.  Juan pleaded guilty to a gun charge before Judge Lozano in the District.  He was detained on that charge on August 20, 2010 and he has not been out of confinement since that date.  There is no evidence that he participated or directed the attempt on Victim 5.  There is simply no evidence that Juan Briseno has previously attempted to interfere with the judicial process.

Factor 4:  The Potential that, if Convicted, the Defendant will Suffer a Lengthy Incarceration, and Substantial Monetary Penalties

10

The Defendant offers no argument against the fact that Juan Briseno is facing the death penalty or life imprisonment. The Defendant would only point to 18 U.S.C.A. § 3432 which seems to suggest that in capital cases, the Defendant's right to be furnished the identities of jurors may be a little more important and cherished. This conclusion is reached simply upon the fact that this statute specifically refers only to treason and capital cases. The government refers to it as an "Additional Statutory Consideration in Capital Cases." <u>Motion to Empanel an Anonymous Jury</u>, p. 7.

 

> Factor 5: <u>Extensive Publicity That Could Enhance the Possibility That Jurors' Names Would become Public and Expose Them to Intimidation or Harassment</u>

 

The Defendant agrees that there may be media coverage of this case and it could be extensive. However, if the goal is to protect the jurors' identities from the public and not from the defendant and defense counsel, a simple remedy is available, i.e., a partial anonymous jury. The jurors could be referred-to, in all Court proceedings, and Court records, solely with the use of a number. The parties would still be privy to their identities and personal identifying information.

This approach would strike a balance between jurors' anonymity and privacy from the public and publicity, on the one hand, and the defendant's right to an untainted presumption of innocence and impartial jury on the other.

1926

Conclusion

This Court has the authority to either grant or deny the government's motion. However, it is the defense position that there exists an insufficiency of evidence on the part of the government to support its request.

The issue, simply stated, is whether there exists sufficient facts to support a finding that jurors' lives or safety will be violated by providing the Defendant with their identities. 18 U.S.C.A. § 3432. In arriving at its finding, the Court must balance the Defendant's constitutional right to an impartial jury and the legitimate concern that the jury could infer that the Defendant is extremely dangerous against the danger of juror safety being compromised by their identities being known to the Defendant.

The government's position appears to be for the empanelling of a completely anonymous jury. In order for their request to be legitimate and genuine, it must be with a real concern for the safety of the jurors and not for the purpose of tainting the jury panel against the Defendant.

The government is in the best position to know the facts of the case, due to its lengthy investigation and its possession of a multitude of law enforcement reports, witness statements and physical evidence. Neither the Court nor the defense is privy to much of this information until it is divulged by the government.

The defense, through the evidence and information that it has available, has tried to shine some light on the facts as reported by the government in its motion. While there are no misrepresentations, known to the defense, there are unreported and underreported facts

12

which could lead one to an erroneous conclusion.  An example is the inference that Juan Briseno had something to do with the Victim 5 incident.  When it was not reported that he'd been in jail during and before the incident for almost one year.

The Richard Reyes trial and the fact that an anonymous jury was not requested, begs the question:  Is an anonymous jury realistically needed to protect juror safety, here?  The government was well aware that Reyes was facing a life sentence and that he was an "old school" IG who was deserving of respect and protection by "the gang."  However, due to the government and law enforcement's relentless pursuit, there was (and is) no "gang" left.

To the defense's knowledge, there have been no incidents of violence or threats that are related to the Reyes proceedings or to any other proceedings under this cause.

The Defendant, Juan Briseno, therefore respectfully requests that the government's <u>Motion to Empanel an Anonymous Jury</u> be denied.


RESPECTFULLY SUBMITTED BY:


| /s/ Arlington J. Foley | /s/ John Maksimovich |
|---|---|
| Arlington J. Foley, Atty. No. 6905-45 | John Maksimovich, Atty. No. 9950-45 |
| Attorney for Defendant | Attorney for Defendant |
| 1942 North Main Street | 1946 North Main Street |
| Crown Point, IN  46307 | Crown Point, IN  46307 |
| Tel: (219) 661-1200 | Tel:  (219) 663-1900 |


### CERTIFICATE OF SERVICE

I certify that on the 12<u>th</u> day of <u>September</u> 2014 service of a true and complete copy of the above and foregoing pleading or paper was made upon each party or attorney of record herein by the electronic case filing system (ECF).

By:    s/Arlington J. Foley
Arlington J. Foley
Attorney at Law


13

```
MIME-Version:1.0
From:CMECFinnd@innd.uscourts.gov
To:CMECFinnd@localhost.localdomain
Bcc:
--Case Participants: Arlington J Foley (arlingtonfoley@att.net), John Maksimovich
(criminallaw@johnmaksimovich.com), Magistrate Judge Andrew P Rodovich
(rodovich_chambers@innd.uscourts.gov), Chief Judge Philip P Simon
(denise_woodside@innd.uscourts.gov, jacob_hamann@innd.uscourts.gov,
lauren_schwartz@innd.uscourts.gov, mira_serrill-robins@innd.uscourts.gov,
noel_collins@innd.uscourts.gov, philip_simon@innd.uscourts.gov)
--Non Case Participants:
--No Notice Sent:

Message-Id:2610946@innd.uscourts.gov
Subject:Activity in Case 2:11-cr-00077-PPS-APR United States of America v. Briseno et al
Order on Motion to Seal Document
Content-Type: text/html
```

## U.S. District Court Northern District of Indiana [LIVE]

### USDC Northern Indiana

## Notice of Electronic Filing

The following transaction was entered on 9/16/2014 at 12:38 PM EST and filed on 9/16/2014

| | |
|---|---|
| **Case Name:** | United States of America v. Briseno et al |
| **Case Number:** | 2:11−cr−00077−PPS−APR |
| **Filer:** | |
| **Document Number:** | 1061(No document attached) |

**Docket Text:**
 **ORDER GRANTING [1057] Motion to Seal Document as to Juan Briseno (1). (Text entry only, no pdf is attached). Approved by Chief Judge Philip P Simon on 9/16/2014. (nac)**

**2:11−cr−00077−PPS−APR−1 Notice has been electronically mailed to:**

Arlington J Foley    arlingtonfoley@att.net

John Maksimovich    criminallaw@johnmaksimovich.com

**2:11−cr−00077−PPS−APR−1 Notice has been delivered by U.S. Mail or other means to:**

Adam Tavitas
Law Office of Adam Tavitas
9120 Connecticut Dr Suite G
Merrillville, IN 46410

Bruce R Hegyi − AUSA
1331 F Street NW
Third Floor
Washington, DC 20530

Bryan M Truitt
Bertig & Associates LLC
121 E Lincolnway
Valparaiso, IN 46383

David J Nozick – AUSA
US Attorney's Office – Ham/IN
5400 Federal Plaza Suite 1500
Hammond, IN 46320

David E Vandercoy
Valparaiso University Law Clinic
Heritage Hall
510 Freeman Street
Valparaiso, IN 46383

Dean R Lanter – AUSA
US Attorney's Office – Ham/IN
5400 Federal Plaza Suite 1500
Hammond, IN 46320

Gojko Kasich
Kasich Law Offices
PO Box 428
Hebron, IN 46341

Ihor Alexander Woloshansky
Law Office of I Alexander Woloshansky
9219 Broadway
Merrillville, IN 46410

Jack Friedlander
Law Office of Jack Friedlander – Chi/IL
327 S Plymouth Court Suite 200
Chicago, IL 60604

James N Thiros
Cohen & Thiros PC
200 E 90th Drive
Merrillville, IN 46410–7089

John E Martin – FCD
Federal Community Defenders Inc – Ham/IN
Northern District of Indiana
31 Sibley Street
Hammond, IN 46320

John T Theis
Law Office of John T Theis
190 South LaSalle Suite 520
Chicago, IL 60603

Kurt R Earnst
Braje Nelson & Janes LLP
126 E Fifth Street
PO Box 1006
Michigan City, IN 46361–8206

Mark A Psimos
Mark A Psimos Attorney at Law
9219 Broadway
Merrillville, IN 46410

Pablo DeCastro
Rascia & DeCastro Ltd
650 N Dearborn Suite 700
Chicago, IL 60654

Paul Jeffrey Schlesinger
8396 Mississippi Street Suite G
Merrillville, IN 46410

R Brian Woodward
Casale Woodward & Buls LLP – Mer/IN
9223 Broadway Suite A
Merrillville, IN 46410

Richard M Davis
Hoeppner Wagner & Evans LLP – Val/IN
103 E Lincolnway
PO Box 2357
Valparaiso, IN 46383–2357

Robert L Rascia
Rascia & DeCastro Ltd
650 N Dearborn Suite 700
Chicago, IL 60654

Roxanne Mendez Johnson
The Law Office of Roxanne Mendez Johnson
PO Box 1487
Valparaiso, IN 46384

Scott L King
Scott King Group
Barrister Court
9211 Broadway
Merrillville, IN 46410

Sheldon B Nagelberg
Sheldon Bart Nagelberg PC
53 W Jackson Blvd Suite 664
Chicago, IL 60604

Stephen Edward Scheele
Goodman Katz & Scheele
9013 Indianapolis Blvd
Highland, IN 46322

Thomas W Vanes
9120 Connecticut Dr Suite G
Merrillville, IN 46410

Visvaldis P Kupsis
Law Offices of Visvaldis P Kupsis
334 W 806 N
Valparaiso, IN 46383

THE UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br><br>v.<br><br>JUAN BRISENO, also known as Tito,<br>Defendant. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | CAUSE NO.  2:11-CR-0077-PPS |

**GOVERNMENT'S OPPOSITION TO
DEFENDANT JUAN BRISENO'S MOTION
<u>TO STRIKE NOTICE OF AGGRAVATING FACTORS</u>**

TO THE HONORABLE COURT:

COMES NOW, the United States of America, by and through the undersigned counsel, and respectfully opposes defendant Juan Briseno's ("Mr. Briseno's") "Motion, With Incorporated Memorandum, To Strike the Notice of Aggravating Factors" ("Defendant's Motion") [DE #1027], and, for the reasons more fully set forth below, urges the Court to deny, in all things, the relief sought in Defendant's Motion.

*Nature of the Case*

As more fully set forth in the Fourth Superseding Indictment [DE #652], Mr. Briseno and his twenty-three (23) former co-defendants in this case are/were members of Northwest Indiana chapters of the Almighty Imperial Gangster Nation street gang (the "Imperial Gangsters" or "IG's"), who, together with unindicted co-conspirators, some of whom are now deceased, plagued and terrorized various streets and neighborhoods in and around East Chicago, Indiana, for more than a generation, by and through organized and systematic drug dealing, shootings, murders, robberies, carjackings, burglaries, and other criminal conduct.  [*See generally*, <u>4th</u>

Superseding Indictment]  According to the allegations specified in the Indictment, the Northwest

Indiana chapters of the Imperial Gangsters committed 13 murders and 19 attempted murders, of

which Mr. Briseno committed or directly participated in six murders and seven attempted

murders in the course, scope and furtherance of Racketeer Influenced and Corrupt Organizations

Act ("RICO") violations, drug conspiracy violations, violent crimes in aid of racketeering

violations ("VICAR") violations.  [*See* Id.]

Only Mr. Briseno is potentially subject to the death penalty.  [*See* 4th Superseding

Indictment, at 55-61 (Notice of Special Findings); Government's Supplemental Notice of Intent

to Seek Penalty of Death [DE # 986-1] ("NOI")]

Mr. Briseno's trial is scheduled to commence on January 12, 2015.[1]

<div align="center">The Allegations of Mr. Briseno's Motion</div>

On August 22, 2014, Mr. Briseno filed his 155-page "Motion, With Incorporated

Memorandum, To Strike the Notice of Aggravating Factors" [DE #1027] ("Defendant's

Motion"), together with his 107-page Appendix thereto [DE #1027-1], that first suggests the

Federal Death Penalty Act ("FDPA") is facially unconstitutional [*see* Motion, pages 1-20] and

then advances seven (7) "Points" or bases that Mr. Briseno claims bar the Government from

pursuing the death penalty against him: (1) the FDPA is unconstitutional because it operates in a

manner that is arbitrary, capricious, irrational, and discriminatory manner [*see* Motion, pages 21-

57]; (2) the Supreme Court's 2002 decision in *Ring v. Arizona* rendered the FDPA irredeemably

unconstitutional [*see* id., pages 57-84]; (3) the Grand Jury's "Special Findings" in its superseding

Indictment were in violation of the Fifth Amendment and therefore the death penalty notice

---

[1]  Mr. Briseno's trial was initially scheduled to begin on October 21, 2013 and it was
subsequently scheduled to commence on April 7, 2014.  On both occasions, the trial date was
continued at Mr. Briseno's request.

should be stricken [*see* id., pages 84-96]; (4) the FDPA is unconstitutional because it fails to provide a sufficient structure to permit jurors to make reasoned decisions between life imprisonment and the death penalty [*see* id., pages 96-103]; (5) the FDPA is unconstitutional because it will lead to the execution of innocent people [*see* id., pages 103-109]; (6) the Government's statutory aggravating factors and its non-statutory aggravating factors (particularly "future dangerousness") should be stricken and victim-impact evidence should not be permitted [*see* id., pages 109-140]; and (7) the death penalty is unconstitutional per se in all cases because it is a denial of due process and constitutes cruel and unusual punishment.  [*See* id., pages 140-143]

Simply put, Mr. Briseno's Motion constitutes a "kitchen sink" assault on the FDPA, 18 U.S.C. §§ 3591-3599, and the Government's "Notice of Intent to Seek a Penalty of Death" ("NOI"), filed on July 1, 2014, pursuant to § 3593(a) of the FDPA.  Taken as a whole, Mr. Briseno's Motion urges the Court to strike down the FDPA in whole or in part on various constitutional grounds, and with it, the Government's NOI.  Additionally, the Motion objects to the content of various aspects of the NOI.

Despite its remarkable girth, as demonstrated below, all of Mr. Briseno's arguments are afflicted by the same basic and fatal flaw, to wit, they have been squarely and unequivocally rejected by all of the highest post-FDPA courts that have considered them, or they are in opposition with long-standing legal principles and overwhelming authority.[2]  Indeed, some of

---

[2]  In the Government's view, the law is now so well-settled against claims identical to those presented by Mr. Briseno that they have now taken to resolving them essentially in a summary manner with little or no need for elaborate analysis or publication.  *See, e.g.,* Order dated March 14, 2014 in *United States v. Coonce & Hall*, Case No. 10-3029-01-CR-S-GAF, Western District of Missouri (Exhibit 1); Two Memoranda Opinions dated January 15, 2014 in *United States v. Sablan & Guerrero*, 1:08-CR-259, Eastern District of California (Exhibits 2 & 3), Order dated

Mr. Briseno's claims constitute such an enormous departure from established law that, if accepted, they could fracture our accepted system of criminal justice and, in particular, could undermine its bedrock principle of trial by jury. As established below, Mr. Briseno's claims and arguments are without merit and should be denied.

Mr. Briseno's claims will be examined *seratim* below. Initially, Mr. Briseno's facial challenge to the FDPA will be addressed. Thereafter, each of Mr. Briseno's numbered arguments will be examined in the order they are presented in his Motion. For ease of reference, Mr. Briseno's claims will be identified below by the numbers assigned to each argument by him.

### Mr. Briseno's Facial Challenges to the FDPA Must Fail Because He Cannot Satisfy the Exceptionally High Burden of Proof That His Claims Demand of Him
[Motion, pages 1-20]

In order to succeed on his initial claim, Mr. Briseno bears the burden of establishing that the FDPA is unconstitutional.[3]  *See, e.g., Lujan v. G & G Fire Sprinklers, Inc.*, 532 U.S. 189, 198 (2001). To be sure, this is a weighty burden for Mr. Briseno to shoulder, because a "facial challenge to a legislative Act is ... the most difficult challenge to mount successfully, since the challenger must establish that no set of circumstances exists under which the Act would be valid ...." *United States v. Taylor*, 635 F. Supp.2d 1243, 1246 (D.N.M. 2009) (*quoting United States v. Salerno*, 481 U.S. 739, 745 (1987)). Mr. Briseno's task is more difficult still, because the canons

---

November 27, 2012 in *United States v. Candelario-Santana*, 09-CR-427 (JAF), District of Puerto Rico (Exhibit 4).

[3]  The claims of Mr. Briseno's Motion are not unique. Indeed, virtually identical arguments have repeatedly been rejected by other courts. *See, e.g., United States v. Taylor*, 648 F. Supp.2d 1237 (D.N.M. 2009); *United States v. Taylor*, 635 F. Supp.2d 1243 (D.N.M. 2009); *United States v. Jacques*, 2011 WL 1675417, *2-*17 (D. Vt. 2011), *vacated on other grounds*, 684 F.2d 324 (2d Cir. 2012); *United States v. Basciano*, 763 F. Supp.2d 303, 339-40 (E.D.N.Y. 2011); *United States v. Aquart*, 2010 WL 4363414, *1-*6, *9-*10 (D. Conn. 2010); *United States v. Cruz-Ramirez*, 2010 WL 1459446, *4-*6 (N.D. Cal. 2010).

of statutory construction require that a statute must be construed to give it Constitutional effect if

such effect is possible.  Id.  (*citing INS v. St. Cyr*, 533 U.S. 289, 299-300 (2001)).  Thus, when a

statute is susceptible of both constitutional and unconstitutional construction, the court is

obligated to adopt the construction that avoids "grave and doubtful questions."  Id. (*quoting

Jones v. United States*, 526 U.S. 227, 239 (1999)).  Additionally, Mr. Briseno must confront the

basis presumption that juries will follow the instructions given them by the trial judge.  Id. (*citing

Marshall v. Lonberger*, 459 U.S. 422, 438 n.6 (1983)).  This presumption can be overcome only

when there is an "overwhelming probability that the jury will be unable to follow the court's

instructions . . . and a strong likelihood that the effect of the evidence would be devastating to the

defendant."  Id. (*quoting Greer v. Miller*, 483 U.S. 756, 766 n.8 (1987)).

As shown below, Mr. Briseno cannot meet his burden.

**Mr. Briseno's Motion Misstates General Principles of the FDPA**

1.      The FDPA Provides an Appropriate Scheme for Capital Sentencing That
        Comports With the Concept That "Death Is Different"_____

Although Mr. Briseno's Motion correctly introduces the principle that "death is different"

[*see* Motion, pages 4-6] *and see, e.g., Gardner v. Florida*, 430 U.S. 339, 357-58 (1977);

*Woodson v. North Carolina*, 428 U.S. 280, 305 (1976), thereafter, he wanders far afield when he

incorrectly presumes that every stage of a capital case must be marked by heightened standards

of reliability, review, and scrutiny.  [*See* Motion, pages 6-13]  To be sure, the Supreme Court has

recognized a qualitative difference between death and alternative forms of punishment.

However, this principle has been articulated and applied in precise and limited contexts.

Therefore, contrary to Mr. Briseno's suggestion, the "death is different" distinction does not

encompass every aspect of a capital proceeding.

Historically, the "death is different" concept was introduced by the Supreme Court in *Woodson v. North Carolina*, 428 U.S. 280, 305 (1976). In *Woodson*, the Court recognized a qualitative difference between the penalty of death and a sentence of imprisonment. Having done so, the Supreme Court struck down a North Carolina statute that made the death penalty mandatory in certain situations. In order to satisfy this need for heightened reliability in capital sentencing, the Supreme Court identified an Eighth Amendment requirement that the character and record of the individual offender, along with the circumstances of the particular offense, be considered by the sentencer in a capital case. 428 U.S. at 304.

Here, contrary to Mr. Briseno's suggestion, the "death is different" concept does not -- and never has -- required heightened standards of reliability, review, and scrutiny at every stage of a capital case. Rather, the qualitative difference inherent in the death penalty is fully and properly satisfied by the various procedural safeguards imposed by the applicable capital sentencing scheme. *See California v. Ramos*, 463 U.S. 992, 998-99 (1983) ("[T]he Court's principal concern has been more with the procedure by which the State imposes the death sentence than with the substantive factors the State lays out before the jury as a basis for imposing death.") For instance, the FDPA mandates a scheme that both narrows the class of offenders eligible for the death penalty and provides precise, enhanced sentencing procedures that ensure heightened reliability is achieved through guided discretion and individualized sentencing. *See* 18 U.S.C. § 3593. Under the FDPA, before a sentence of death can be imposed, the jury must unanimously: (1) find beyond a reasonable doubt that the defendant is guilty of a capital-eligible offense; (2) find beyond a reasonable doubt that the defendant (a) acted with one or more of the requisite "intent" requirements set forth in § 3591(a)(2)(A)-(D), and (b) the existence of at least one of the statutory aggravating factors set forth in Section 3592(c)(1)-(16);

(3) consider any factors that mitigate against the death penalty; and (4) weigh all of the appropriate evidence and factors, before determining unanimously whether a sentence of death (as opposed to life imprisonment) is the appropriate sentence. As a result, beyond cavil, the federal capital sentencing scheme clearly meets and fulfills each of the Supreme Court's concerns in *Woodson v. North Carolina*.

Beyond this, the Supreme Court has never suggested -- much less held -- that the qualitative distinction between the death penalty and alternative available sentences either (a) confers additional rights upon a defendant, or (b) mandates that the fundamental levels of scrutiny generally applicable to criminal cases must be enhanced or revisited. To the contrary, as is readily apparent, countless aspects of capital trials are indistinguishable from their non-capital counterparts. For instance, the nature of the right to counsel is not altered in capital cases, *see Strickland v. Washington*, 466 U.S. 668, 687 (1984) ("For purposes of describing counsel's duties ... Florida's capital sentencing proceeding need not be distinguished from an ordinary trial."), nor is the analysis for the admissibility of evidence. *See Tennard v. Dretke*, 542 U.S. 274, 284-85 (2004) ("We established that the 'meaning of relevance is no different in the context of mitigating evidence introduced in a capital sentencing proceeding' than in any other context." (*quoting McKoy v. North Carolina*, 494 U.S. 433, 440-41 (1990)).

The Supreme Court's "death is different" concept has been fully incorporated into the deliberately-designed, heightened procedural requirements that uniquely characterize capital sentencing schemes. *See, e.g.*, 18 U.S.C. § 3593. Although frequently a target of appeal, the FDPA has never been found to be unconstitutional by any Court of Appeals. *See, e.g., United States v. Fields*, 516 F.3d 923 (10th Cir. 2008); *United States v. Fulks*, 454 F.3d 410 (4th Cir.

2006); *United States v. Fell*, 360 F.3d 135 (2d Cir. 2004); *United States v. Webster*, 162 F.3d 308 (5th Cir. 1998).

Because Mr. Briseno misapprehends the limited focus and reach of the Supreme Court's "death is different" concerns, and because the FPDA fully satisfies the Supreme Court's limited concerns, Mr. Briseno's Motion is without merit and should be denied.

2.      The FDPA Provides Meaningful Appellate Review

Mr. Briseno's Motion next emphasizes the importance of "meaningful appellate review" as an essential component of a constitutional death-penalty scheme.  [*See* Motion, pages 6-7] However, Mr. Briseno's Motion fails to appreciate that the FDPA has consistently been upheld in the face of constitutional challenges to the appellate review it provides.  *See, e.g., United States v. Nguyen*, 928 F. Supp. 1525, 1548 (D. Kan. 1996) (noting that the review procedures mandated by the FDPA are exhaustive and "easily satisf[y] the Supreme Court's requirement of 'meaningful appellate review'"); *c.f., United States v. Fields*, 516 F.3d 923, 951 (10th Cir. 2008) (affirming on appeal death sentence imposed under the FDPA).

Indeed, in *Pulley v. Harris*, 465 U.S. 37 (1984), the Supreme Court upheld California's procedures for appellate review in capital cases.  In so doing, the Supreme Court noted that "[a]ny capital sentencing scheme may occasionally produce aberrational outcomes.  Such inconsistencies are a far cry from the major systemic defects identified in *Furman*.  As we have acknowledged in the past, "there can be 'no perfect procedure for deciding in which cases government authority should be used to impose death.'"  465 U.S. at 54 (*citing Zant v. Stephens*, 462 U.S. 862, 884 (1983)).

Although meaningful appellate review is certainly an important procedural safeguard in a Constitutional death penalty scheme, the Supreme Court went on to hold in *Pulley v. Harris* that

1940

proportionality review of capital sentences is *not* constitutionally-required.  465 U.S. at 50-51.

The proportionality review that had been urged by the defendant in *Pulley* would have required a

determination as to whether the death penalty was unacceptable in a particular case because it

was "disproportionate to the punishment imposed on others convicted of the same crime."  Id. at

43.  In *Pulley*, the Supreme Court explicitly rejected this form of appellate scrutiny.  465 U.S. at

44-45 ("Needless to say, that some schemes providing proportionality review are constitutional

does not mean that such review is indispensible .... To endorse the statute as a whole is not to say

that anything different is unacceptable.")  The *Pulley* Court determined that a wide array of

appellate review procedures – including procedures prescribed by the FDPA – can and do

constitute meaningful appellate review.

    As a result, this claim in Mr. Briseno's Motion is without merit and should denied.

    3.    The FDPA's "Aggravating Factors" Are Constitutionally Valid

    Mr. Briseno also claims that the "aggravating factors" of the FDPA are vague,

duplicative, overly broad, and generally cannot justify a Constitutionally-permissible imposition

of a sentence of death for some murders when other murders are more fortunate.  [*See* Motion,

pages 8-10]  However, Mr. Briseno's claim overlooks the fact that the FDPA's statutory

"aggravating factors" help to channel the jury's discretion by narrowing the class of death-

eligible defendants and by assisting the jury in reaching an individualized sentencing decision

based on the facts of the crime and the character and background of the offender. *See Zant v.*

*Stephens*, 462 U.S. 862, 878 (1983).

    In order to comport with the Eight Amendment, the Supreme Court has established two

criteria that must be satisfied. *First*, the statutory aggravating factor may not be

unconstitutionally vague. In other words, the language must be specific enough to furnish

adequate guidance to the fact-finder. *Arave v. Creech*, 507 U.S. 463, 474 (1993). This requirement is satisfied when the aggravating factor, as expressed, furnishes a commonsense meaning that a fact-finder can understand. *See Jones v. United States*, 527 U.S. 373, 400 (1999); *Tuilaepa v. California*, 512 U.S. 967, 972-73 (1994).

*Second*, statutory aggravating factors may not be overly broad. In order to fulfill this second requirement, an aggravating factor must provide a principled basis for distinguishing between those who are particularly morally blameworthy – thus deserving of capital punishment – and those who are not. *Arave v. Creech*, 507 U.S. at 474. Therefore, a statutory aggravating factor must apply only to a subclass of offenders, rather than every defendant who could potentially be convicted of a capital-eligible offense. *Tuilaepa v. California*, 512 U.S. at 972. In this regard, the Supreme Court has made clear that the standard for judicial review of statutory aggravating factors is "quite deferential." Id.

### Statutory & Non-Statutory Aggravating Factors Distinguished

While the role of statutory aggravating factors is to narrow the class of death-eligible capital offenders, the role of *non*-statutory aggravating factors is primarily to "individualize" a capital sentencing determination, after a defendant has been deemed eligible for capital punishment. *See Zant v. Stephens*, 462 U.S. at 878-89. Hence, a non-statutory aggravating factor is proper when it is relevant to the character of the defendant or to the circumstances of the crime. *See Barclay v. Florida*, 463 U.S. 939, 967 (1983). A non-statutory aggravating factor is not over-broad as long as it "direct[s] the jury to the evidence specific to th[e] case." *See United States v. Fields*, 516 F.3d 923, 945 (10th Cir. 2008) (*quoting Jones v. United States*, 527 U.S. 373, 402 (1999)).

As Mr. Briseno is aware, the statutory aggravating factors in the FDPA have routinely been upheld. *See, e.g., United States v. Chanthadara*, 230 F.3d 1237 (10th Cir. 2000) (consideration of senselessness of killing and helplessness of victim in relation to aggravating factor of committing offense in especially heinous, cruel, or depraved manner did not violate the Eighth Amendment); *United States v. Paul*, 217 F.3d 989, 1001 (8th Cir. 2000) (vulnerability of the victim and heinous, cruel, and depraved aggravators do not impermissibly duplicate each other). Additionally, it is Constitutionally permissible for the sentencer to consider such things as victim impact evidence, *see Payne v. Tennessee*, 501 U.S. 808, 827 (1991), use of a deadly weapon, *see United States v. McCullah*, 76 F.3d 1087, 1107 (10th Cir. 1996), and future dangerousness, *see Tuilaepa v. California*, 512 U.S. at 976-77, among other factors, as non-statutory aggravating factors.

Because the aggravating factors in the FDPA adequately provide for guided discretion, by narrowing the class of offenders eligible for the death penalty, and further serve to individualize the jury's sentencing determination, Mr. Briseno's challenge to them is without merit and should be denied.

4.     The FDPA Does Not Limit a Defendant's Right to Present Relevant Mitigating Information

Mr. Briseno's Motion is certainly correct when he says that unreasonable limitations may not be placed on the right to present mitigating evidence relevant to a defendant's character, record, or the circumstances of the offense. [*See* Motion, pages 10-13] *And see Lockett v. Ohio*, 438 U.S. 586, 604 (1978). Indeed, in all but the rarest kind of capital case, the sentencer may not be precluded from considering, as a mitigating factor, any aspect of a defendant's character or record, nor any of the circumstances of the offense, that the defendant proffers as a basis for a sentence less than death. Id. That said, the universe of evidence that can properly be introduced

in mitigation of a sentence of death is not unlimited.  For example, mitigating evidence must meet the general standard of relevance, such that the sentencer could reasonably find that the evidence warrants a sentence less than death.  *See McKoy v. North Carolina*, 494 U.S. 433, 441 (1990).  Hence, the relevance standard for mitigating evidence is no more permissive than the relevance standard regularly applied to evidence in other contexts – evidence having "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."  *Tennard v. Dretke*, 542 U.S. 274, 284 (2004).  Thus, the relevance standard restricts the defendant from introducing trivial or otherwise irrelevant evidence during the penalty phase.  *See Tennard v. Dretke*, 542 U.S. at 286 ("We have never denied that gravity has a place in the relevance analysis, insofar as evidence of a trivial feature of the defendant's character or the circumstances of the crime is unlikely to have any tendency to mitigate the defendant's culpability." (*citing Skipper v. South Carolina*, 476 U.S. 1, 7 n.2 (1986)).

Moreover, the *Lockett*-derived "catch-all" provision of the FDPA ensures that capital defendants are never unreasonably limited in their ability to present relevant mitigating evidence, because it allows the sentencer to consider "[o]ther factors in the defendant's [1] background, [2] record, or [3] character or [4] any other circumstance of the offense that mitigate against imposition of the death sentence."  *See* 18 U.S.C. § 3592 (a)(8).

Therefore, contrary to the suggestion in Mr. Briseno's Motion, the FDPA guarantees that all defendants are permitted to introduce whatever relevant, properly admissible, mitigating evidence they may wish to introduce in the penalty phase.  As a result, Mr. Briseno's alleged concern that improper limitations might be imposed on his ability to introduce relevant mitigation evidence in the penalty phase of his trial are without merit and should be denied.

Hence, for each of the independent reasons set forth above, Mr. Briseno's facial challenge to the Constitutionality to the FDPA and to the sub-components of the FDPA is without merit and should be denied.

Having, addressed each of Mr. Briseno's facial challenges to the Constitutionality of the FDPA, we will now turn to the individual "Points" of argument raised in Mr. Briseno's Motion. We will respond to each "Point" in the order it was raised by Mr. Briseno.

> **POINT ONE:**     **The FDPA is unconstitutional because it allegedly operates in a manner that is arbitrary, capricious, irrational, and discriminatory.**  [*See* Motion, pages 21-57]

In Point One of his Motion, Mr. Briseno asserts that the FDPA is facially invalid for the following three reasons:

(1)     The FDPA operates in an unconstitutionally arbitrary and capricious manner because the death penalty is infrequently sought and imposed [*see* Motion, pages 21-27];

(2)     There is no principled basis for distinguishing between cases where the federal death penalty is and is not imposed [*see* id., at 27-35]; and

(3)     The federal death penalty is unevenly applied based on race and region.   [*See* id., at 35-57]

Despite the remarkable volume devoted to his claims – consuming some 37 pages in his Motion pages and scores of pages in his accompanying Appendix – Mr. Briseno is unable to identify a single case in which any federal court has ever invalidated the FDPA on any of the various bases he proposes.  Indeed, as set more fully forth below, each of Mr. Briseno's claims has routinely been rejected by every federal court before whom they have been presented.

Because Mr. Briseno's Motion fails to raise any new or unique claims, and because each of his arguments have routinely and properly been rejected by other Courts, the Government urges that Mr. Briseno's claims be denied without the need for an evidentiary hearing.

**The FDPA Is Not Unconstitutionally Arbitrary and Capricious
Because of the Frequency With Which the Death Penalty is Sought or Imposed**

Mr. Briseno's Motion essentially asserts that because the death penalty is sought and imposed in *few* cases, the FDPA operates arbitrarily and capriciously in violation of the Eight Amendment in *all* cases. [*See* Motion, pages 21-27] In support of his argument, Mr. Briseno relies primarily upon selected language from the concurring opinions in *Furman v. Georgia*, 408 U.S. 238 (1972). Yet, given the boldness of his opening claim, Mr. Briseno's Motion is surprisingly bashful when it fails to apprise the Court that his argument has been routinely rejected by every other federal court before which it has been presented. *See, e.g., United States v. Taylor*, 648 F. Supp.2d 1237, 1239-41 (D.N.M. 2008) (and authorities cited therein). To be sure, *Furman* was a *per curiam* decision in which the Supreme Court struck down state death penalty statutes that offered no guidance to the sentencing body and were, therefore, unconstitutional. According to the Supreme Court, it was this lack of guidance that created the possibility that the penalty of death would be imposed capriciously or, even worse, in a discriminatory manner – a possibility that appears to have undermined confidence in the entire system. *See Furman*, 408 U.S. at 309-10 (Stewart, J., concurring).

However, in its post-*Furman* death penalty jurisprudence, the Supreme Court has made clear that its decision in *Furman* was not based on the frequency with which the death penalty was sought or imposed, but rather with the *manner* in which it was imposed. *See, e.g., Kansas v. Marsh*, 548 U.S. 163, 173-74 (2006); *United States v. Gregg*, 428 U.S. 153, 189 (1976); *and see United States v. Sampson*, 486 F.3d 12, 23 (1st Cir. 2007); *United States v. Taylor*, 648 F. Supp.2d at 1240. In so doing, the Supreme Court has explained as a fundamental matter that, where discretion is afforded to the sentencing body, that discretion must be suitably directed and limited to satisfy the Eighth Amendment. *See McCleskey v. Kemp*, 481 U.S. 279, 302 (1987)

1946

(*citing Gregg v. Georgia*, 428 U.S. 153, 189 (1976)); *see also United States v. Sampson*, 486 F.3d at 23 (explaining that "the primary emphasis of the Supreme Court's death penalty jurisprudence has been the requirement that the discretion exercised by juries be guided so as to limit the potential for arbitrariness.")

Subsequent to its decision in *Furman*, the Supreme Court clarified that a properly-drawn death penalty statute "must (1) rationally narrow the class of death-eligible defendants, and (2) permit a jury to render a reasoned, individualized sentencing determination based on a death-eligible defendant's record, personal characteristics, and the circumstances of his crime." *Kansas v. Marsh*, 548 U.S. 163, 173-74 (2006). In *Gregg v. Georgia*, the Supreme Court explained that "the concerns expressed in Furman that the penalty of death not be imposed in an arbitrary or capricious manner can be met by a carefully drafted statute that ensures that the sentencing authority is given adequate information and guidance." *Gregg*, 428 U.S. at 195.

Plainly, the FDPA does not lack the guidance or share the other flaws of the statutes at issue in *Furman* and it is the kind of "carefully drafted statute" contemplated by *Gregg* and the Supreme Court's other post-*Furman* death penalty decisions. To the contrary, under the FDPA, the jury is carefully focused on the defendant and his crime and whether it should impose the death penalty. The sequence and method with which the jury must determine punishment under the FDPA is well defined and clearly provides for necessary narrowing of the class of death-eligible defendants and an individualized sentencing determination. *See* 18 U.S.C. §§ 3591-3593; *see also Jones v. United States*, 527 U.S. 373, 376-79 (1999) (detailing the FDPA's sentencing process); *United States v. Nguyen*, 928 F. Supp. 1525, 1532 (D. Kan. 1996) (same).

Accordingly, the FDPA fully meets the requirements of guided discretion, suitably directing and limiting the leeway afforded to the decision-makers. *United States v. Sampson*,

1947

486 F.3d at 24; *see also United States v. Taylor*, 648 F. Supp.2d at 1240 ("[T]he FDPA

sufficiently guides and limits the jury's discretion to make it constitutional under the Supreme

Court's jurisprudence."); *see also United States v. Mitchell*, 502 F.3d 931, 983 (9th Cir. 2007)

("That federal executions are rare . . . does not render the FDPA unconstitutional.")[4]

 Hence, other than Mr. Briseno's misguided reliance on *Furman*, he offers no other

authority for his claim that the FDPA is unconstitutional on the bases of infrequent application or

broad prosecutorial discretion.  This is not surprising, because no such authority exists.  In fact,

numerous courts have explicitly rejected Mr Briseno's argument for the reasons cited by the

Government herein.  *See, e.g., United States v. Sampson*, 486 F.3d at 23-24; *United States

v.Mitchell*, 502 F.3d at 983 (9th Cir. 2007); *United States v. Jacques*, 2011 WL 1675417, *2-*3

(D. Vt. 2011), *vacated on other grounds*, 684 F.2d 324 (2d Cir. 2012); *United States v. Basciano*,

763 F. Supp.2d 303, 340 (E.D.N.Y 2011); *United States v. Aquart*, 2010 WL 4363414, *2-*4 (D.

Conn. 2010); *United States v. Cruz-Ramirez*, 2010 WL 1459446, *4-*6 (N.D. Cal. 2010); *United

States v. Johnson*, 2009 WL 1856240, *2-*3 (E.D. Mich. 2009); *United States v. Barnes*, 532 F.

Supp.2d 625, 633 (S.D.N.Y. 2008); *United States v. Taylor*, 2008 WL 217115, *4 (E.D.

Tenn.2008); *United States v. Green*, 2008 WL 4000943, *2 (W.D. Ky. 2008); *United States v.

Sablan*, 2006 WL 1028780, *11 (D. Colo. 2006); *United States v. O'Driscoll*, 203 F. Supp.2d

---

[4]  To the extent the Mr. Briseno is claiming that the FDPA runs awry of *Furman* because it
grants the Government unguided prosecutorial discretion to seek the death penalty and because
the Government rarely seeks the death penalty, these claims must also be rejected.  This is so,
because such claims grossly misconstrue *Furman*, which was not concerned with discretion
afforded to the charging body, but rather, only to the sentencing body.  *See United States v.
Sampson*, 486 F.3d 13, 23 (1st Cir. 2007) (holding that this same argument "mistakes the nature
of the arbitrariness concern in the Supreme Court's jurisprudence" since *Furman*).  The fractured
opinions of *Furman* limit only the authority of the sentencing body in imposing a death sentence,
not the Government in seeking one.  *See McCleskey v. Kemp*, 481 U.S. 279, 307 (1987).

334, 341 (M.D. Pa. 2002); *United States v. Hammer*, 25 F. Supp.2d 518, 546-47 (M.D. Pa. 1998).

In the face of this overwhelming authority, Mr. Briseno reiterates a handful of selected statistics – previously rejected by other courts – that at best suggest that the death penalty is rarely sought and obtained in federal courts. Yet, as Mr. Briseno well knows, this type of outcome-analysis was explicitly rejected by the Supreme Court in *Gregg v. Georgia*, 428 U.S. at 199 ("The existence of these discretionary stages [of prosecutions of capital cases] is not determinative of the issues before us.") Moreover, in *McCleskey v. Kemp*, the Supreme Court pronounced that "[t]he Constitution is not offended by inconsistency in results based on the objective circumstances of the crime." 481 U.S. at 307 n. 28. Mr. Briseno's Motion has no response to these controlling precedents, nor could he.

For each of these reasons, Mr. Briseno's claims that the FDPA imposes the death penalty in an arbitrary and capricious manner are without merit and should be denied.

### Mr. Briseno's Alleged Inability to Discern a "Principled Basis" for Distinguishing Cases in Which Federal Capital Juries Have Imposed Death is of No Moment

Viewed through a lens of myopic self-interest, Mr. Briseno claims he is unable to discern a "principled basis" for distinguishing between cases in which the death penalty is imposed under the FDPA and cases in which juries have elected against its imposition. According to Mr. Briseno, this should render the FDPA unconstitutional. [*See* Motion, pages 27-35] In essence, Mr. Briseno suggests that the appearance of what he would describe as seemingly random results in federal capital cases necessarily renders the FDPA unconstitutional. Once again, Mr. Briseno's argument suffers from the same inherent flaw that doomed his earlier challenge to the rarity of the federal death penalty, to wit: discrepancies in outcome neither constitute nor equate

to Constitutional defects in a death penalty statute – provided that the law appropriately channels and guides the discretion of the sentencing body, as does the FDPA.

Returning to Mr. Briseno's immediate claim, Mr. Briseno cites disingenuously and out of context to selective quotations from the Supreme Court's decisions in *Eddings v. Oklahoma*, 455 U.S. 104, 112 (1982), and *Kennedy v. Louisiana*, 554 U.S. 407 (2008), advancing arguments that have previously been exposed and rejected by numerous federal courts. [*See* <u>Motion</u>, pages 27-28] In addition, Mr. Briseno provides selective descriptions or verdict sheets of some 52 federal death-eligible cases that either went to trial or resulted in guilty pleas, together with the respective sentences imposed. [*See* <u>id</u>., pages 28-33][5] What Mr. Briseno does not do, is to provide the citation to a single case that either adopted or endorsed the argument he urges this Court to embrace.

---

[5] The factual "summaries" of capital cases submitted by Mr. Briseno are among those regularly appended by death-eligible defendants in support of arguments identical to that advanced by Mr. Briseno. In fact, these summaries were prepared by an anti-death penalty partisan organization and they are misleading and essentially useless. Indeed, when this same type of evidence was presented in *United States v. Sampson*, the First Circuit determined:

> In all events, the "evidence" that Sampson submits is wholly inadequate to prove
> that the death penalty has been imposed in an arbitrary manner. The summaries
> on which Sampson relies to demonstrate inconsistency are devoid of details and
> fail to account for the objective circumstances of the underlying crimes. Even the
> more detailed verdict sheets that he submitted to the district court fail to establish
> arbitrary imposition of the death penalty. On this record and mindful of the
> teachings of *McCleskey*, we decline Sampson's invitation to ignore individual
> differences across offenders and offenses. Consequently, there is no principled
> basis for finding that similar cases are treated differently.

486 F.3d at 25. Numerous other federal courts have routinely rejected this same claim for the same reasons. *See, e.g., United States v. Mitchell*, 502 F. 3d at 983; *United States v. Taylor*, 648 F. Supp.2d at 1241-43 (adopting reasoning of *Sampson*); *United States v. Taylor*, 2008 WL 217115, at *4; *United States v. Johnson*, 2009 WL 1856240, *2-*3; *United States v. Green*, 2008 WL 4000943, *6 (W.D. Ky. 2008); *United States v. Barnes*, 532 F. Supp.2d 625, 633-34 (S.D.N.Y. 2008); *United States v. Solomon*, 2007 WL 1468794, *2 (W.D. Pa. 2007); *United States v. James*, 2007 WL 914249, *5 (E.D.N.Y. 2007).

Perhaps, Mr. Briseno's reticence springs from his knowledge that his precise argument has repeatedly been rejected by the Supreme Court and every other federal court that has considered it. *See, e.g., McCleskey v. Kemp*, 481 U.S. at 306-07 (holding defendant cannot prove a constitutional violation by demonstrating that other similarly situated defendants did or did not receive the death penalty); *United States v. Sampson*, 486 F.3d at 24-25 (holding that case summaries are "wholly inadequate to prove that the death penalty has been imposed in an arbitrary manner" because they are "devoid of details and fail to account for the objective circumstances of the underlying crimes"); *United States v. Taylor*, 648 F. Supp.2d at 1242 ("These case summaries certainly paint a vivid picture, however, they are ultimately not persuasive."); *United States v. Jacques*, 2011 WL 1675417, at *4 (holding that arguments premised upon case summaries are "not supported by the case law"); *United States v. Barnes*, 532 F. Supp.2d 625, 633-34 (S.D.N.Y. 2008) (same); *United States v. Taylor*, 2008 WL 217115 at *4-5 (E.D. Tenn. 2008) (holding defendant has not shown that the FDPA violates the constitutional requirement of fair and consistent sentencing proceedings); *United States v. Solomon*, 2007 WL 1468794, *2 (W.D. Pa. 2007) (refusing to find Eighth Amendment violation absent case law adopting defendants' view); United States v. James, 2007 WL 914249, *5 (E.D.N.Y. 2007) (finding FDPA provides a principled basis for seeking the death penalty).[6] Mr. Briseno's enthusiastic quotation from *Eddings v. Oklahoma* -- "that capital punishment be imposed fairly, and with reasonable consistency, or not at all" -- is telling, because as will be shown, such attempted sleights of hand flow malignantly

---

[6]  Similarly, Mr. Briseno's request for proportionality review is without merit and should be denied. As with Mr. Briseno's other claims, numerous federal Courts of Appeal have rejected requests for proportionality review under the FDPA, which is, by design, a weighing statute that allows for the introduction of non-statutory aggravating factors. *See United States v. Mitchell*, 502 F.3d at 980-81; *United States v. Higgs*, 353 F.3d 281, 320-21 (4th Cir. 2003); *United States v. Jones*, 132 F.3d 232, 241 (5th Cir. 1998).

throughout his Motion.[7]   [*See* Motion, page 27]  In *Eddings*, the Supreme Court reversed a state death

sentence of a sixteen year-old defendant because the trial court refused to permit as a mitigating

circumstance the defendant's unhappy upbringing and emotional disturbance, including evidence of

turbulent family history and beatings by a harsh father.  *See Eddings v. Oklahoma*, 455 U.S. at 112.  In

reaching this conclusion, the Supreme Court observed:

> Thus, the rule in *Lockett* followed from the earlier decisions of the Court and
> from the Court's insistence that *capital punishment be imposed fairly, and with
> reasonable consistency, or not at all*.  By requiring that the sentencer be
> permitted to focus "on the characteristics of the person who committed the
> crime," *Gregg v. Georgia*, *supra*, at 197, the rule in *Lockett* recognizes that
> "justice ... requires ... that there be taken into account the circumstances of the
> offense together with the character and propensities of the offender."
> *Pennsylvania v. Ashe*, 302 U.S. 51, 55 (1937).  By holding that the sentencer in
> capital cases must be permitted to consider any relevant mitigating factor, **the
> rule in *Lockett* recognizes *that a consistency produced by ignoring individual
> differences is a false consistency*.**

455 U.S. at 112 (emphasis provided.)

Thus, when viewed fairly and in context, *Eddings* undermines – rather than supports –

Mr. Briseno's claim.  This is so, because *Eddings* requires consistent *procedures*, not consistent

*results*, as Mr Briseno's initial citation suggests it does.  As Mr. Briseno well knows, his request

for false-consistency would effectively strip the decision-makers of their ability to exercise

*precisely* that discretion that the Supreme Court has mandated they *must* have.  Moreover, in

---

[7]  Mr. Briseno's selective quotations from *Kennedy v. Louisiana*, 554 U.S. 407 (2008), fare no better.  At issue in *Kennedy* was whether the death penalty could properly be imposed in instances of non-homicidal crimes (to wit: the rape of a juvenile).  As is apparent on a casual reading of the case, the entire opinion in *Kennedy* – including Mr. Briseno's selected quotations have nothing to do with the issue of alleged disparities in capital sentencing.  Moreover, on closer examination, the language cited by Mr. Briseno does nothing to advance the position he claims to champion.  Rather, they merely served to restate an uncontested tenet of the Supreme Court's death penalty jurisprudence – capital punishment statutes must narrow the class of eligible offenders and permit an individualized determination of each defendant's culpability.

*McCleskey v. Kemp*, the Supreme Court rejected pleas for exactly the type of false-consistency

Mr. Briseno champions here:

> *The Constitution is **not** offended by **inconsistency in results** based on the objective circumstances of the crime.* Numerous legitimate factors may influence the outcome of a trial and a defendant's ultimate sentence, even though they may be irrelevant to his actual guilt. If sufficient evidence to link a suspect to a crime cannot be found, he will not be charged. The capability of the responsible law enforcement agency can vary widely. Also, the strength of the available evidence remains a variable throughout the criminal justice process and may influence a prosecutor's decision to offer a plea bargain or to go to trial. Witness availability, credibility, and memory also influence the results of prosecutions. Finally, sentencing in state courts is generally discretionary, so a defendant's ultimate sentence necessarily will vary according to the judgment of the sentencing authority. The foregoing factors necessarily exist in varying degrees throughout our criminal just system.

481 U.S. at 307 n.28 (emphasis provided.)

The *McCleskey*-endorsed discretion is fully embraced by the FDPA. Indeed, under the FDPA, at each juncture of the case, there are opportunities for the prosecution or sentencing body to exercise precisely the types of reasoned and structured discretion that inure to the benefit of individual defendants. As a result, in the absence of proof of *actual* arbitrariness or capriciousness, Mr. Briseno cannot establish a Constitutional violation merely by suggesting that other defendants – who may or may not situated similarly to him[8] – did not receive the death penalty.

In U*nited States v. Sampson*, the First Circuit – having returned the excerpts cited by Mr. Briseno in *Eddings* and *McCleskey* to their proper context – rejected the precise argument Mr. Briseno promotes here. 486 F.3d at 24-25. In so doing, the First Circuit explained why the *Eddings*-language quoted by Mr. Briseno does not, and cannot, support Mr. Briseno's argument. As underscored by the First Circuit, reliance on the language cited by Mr. Briseno in *Eddings*:

---

[8]  In this case, Mr. Briseno would be hard-pressed to identify another "similarly situated" defendant who was not subjected to the death penalty. This is so, because Mr. Briseno has been indicted, *inter alia*, for six (6) murders and seven (7) attempted murders in support of an extended and extensive RICO conspiracy in which he had a leadership role. It is, no doubt, for this reason that Mr. Briseno chooses to maintain his "similarly situated" argument on a theoretical – rather than a practical – plane.

> [I]gnores the remainder of the *Eddings* Court's discussion of consistency, in which the Court recognized that "a consistency produced by ignoring individual differences **is a false consistency**." Indeed, the thrust of *Eddings* is that those who make sentencing decisions **must** be permitted to focus on the individual characteristics of the defendant and the circumstances of the crime. And, finally, the argument cannot survive *McCleskey*, in which the Court stated that "the Constitution is not offended by inconsistency in results based on the objective circumstances of the crime. Numerous legitimate factors may influence ... a defendant's ultimate sentence, even though they may be irrelevant to his actual guilt.

486 F.3d at 24-25 (emphasis provided; internal citations omitted); *see also United States v. Taylor*, 648 F. Supp.2d at 1243 (following guidance of *Sampson*).

For each of these reasons, Mr. Briseno's claim that there is no principled basis for determining the outcome in federal death penalty cases is without merit and should be denied.

### As Applied, the FDPA Does Not Discriminate on the Basis of Race, Gender, Region, or Victim-Race/Gender

Mr. Briseno next alleges that regional and racial disparities in the imposition of the death penalty render imposition of the death penalty under the FDPA arbitrary and capricious in violation of the Fifth and Eighth Amendments. [*See* Motion, pages 35-57] However, once again, Mr. Briseno is unable to provide the citation to any case that directly supports his conclusion, as he struggles to avoid the fact that this argument, as well, has routinely been rejected by other courts. Faced with an the absence of case authority with which to support his argument, Mr. Briseno's Motion promotes his self-interested interpretation of a statistical survey completed in 2000 and 2001 by the Department of Justice (the "DoJ Report") [*see* Motion, pages 37-40], and he also cites the affidavit of Kevin McNally,[9] a number of newspaper and journal articles, and related studies.[10] [*See* id., pages 40-57]

---

[9] Mr. McNally is the Director of the Federal Death Penalty Resource Counsel Project, which assists "court-appointed and defender attorneys charged with the defense of capital cases in federal courts." [Appendix to Motion [DE #1027-1], page 44] In fact, Mr. McNally is not a

Inevitably, Mr. Briseno's claim must fail for the simple reason that the studies and reports he cites do not – and cannot – begin to meet the burden established by the Supreme Court in *McCleskey v. Kemp* necessary to support either a Fifth Amendment or an Eight Amendment race-based or geography-based claim. Yet, surprisingly, Mr. Briseno elects to advance the same discredited reasoning – statistical disparity – that has repeatedly been rejected by the federal courts in virtually identical claims. *See, e.g., United States v. Sampson*, 486 F.3d at 26-27; *United States v. Jacques*, 2011 WL 1675417, *5 (D. Vt. 2011), *vacated on other grounds*, 684 F.2d 324 (2d Cir. 2012); *United States v. Aquart*, 2010 WL 4363414, *4-*5 (D. Conn. 2010); *United States v. Johnson*, 2009 WL 1856240, *5-*6 (E.D. Mich. 2009); *United States v. Barnes*, 532 F. Supp.2d 625, 635-36 (S.D.N.Y. 2008); *United States v. Taylor*, 2008 WL 217115, *5-6 (E.D. Tenn. 2008); *United States v. Sablan*, 2006 WL 1028780, *12 (D. Colo. 2006); *United States v. Llera Plaza*, 179 F. Supp.2d 444, 456 (E.D. Pa. 2001); *United States v. Edelin*, 134 F. Supp.2d 59, 89 (D.D.C. 2001). Each of these courts correctly recognized that generalized showings of statistical disparity -- without evidence of its applicability to the specific defendant – was foreclosed by the Supreme Court in *McCleskey v. Kemp*.

---

neutral vessel, as among other things, Mr. McNally serves as Learned Counsel actively representing individual capital defendants (*e.g.*, *United States v. John Travis Millner*, 13-CR-0015-ART, Eastern District of Kentucky.) The McNally Affidavit attached to Mr. Briseno's Motion is precisely the same affidavit that was filed in 2012 in *United States v. Candelario-Santana*, 09-CR-427 (JAF), District of Puerto Rico, where each of Mr. McNally's claims were rejected by District Judge Jose A. Fuste.

[10] As an initial observation, the Government notes that none of these surveys – individually or in combination – can support a claim of racial discrimination. In fact, the surveys do not show or suggest that the Government has sought the death penalty for eligible minority defendants at a higher rate than for eligible white defendants. To the contrary, the DoJ Report specifically found "no evidence of bias against racial or ethnic minorities" in the process but its authors made several recommendations aimed at "promot[ing] public confidence in the process's fairness." [DoJ Report (2001 Supp.), page 4]

Because Mr. Briseno does not, and cannot, identify any evidence demonstrating that unlawful discrimination was applied to him, Mr. Briseno's claim is without merit and should be denied.

### Mr. Briseno's Race-Based Fifth Amendment Claim Must Fail

In order to prevail on his Fifth Amendment claim, Mr. Briseno must show that the decision-makers in his case acted with "discriminatory purpose" and that this purposeful discrimination had a "discriminatory effect" on them. *See McCleskey v. Kemp*, 481 U.S. at 292. In order to demonstrate the necessary "discriminatory purpose," Mr. Briseno must, in turn, show that the decision to seek the death penalty against him was motivated at least partially based on race. 481 U.S. at 98 ("It implies that the decision maker ... selected or reaffirmed a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group.") Further, in order to meet his burden to establish a "discriminatory effect," Mr. Briseno must show that the Government did not seek the death penalty against similarly situated individuals of a different race. *See United States v. Armstrong*, 517 U.S. 456, 465 (1996). Moreover, in order to sustain his burden, Mr. Briseno must satisfy each of these requirements with "evidence specific to his own case." *McCleskey v. Kemp*, 481 U.S. at 292.

None of these things, does Mr. Briseno even attempt to do.

In *McCleskey v. Kemp*, 481 U.S. 279 (1987), the defendant argued that a statistical study (the "Baldus Study") – that showed that the death penalty was imposed in Georgia more often on black defendants who killed white victims – was proof that the decision-makers in *his* case acted with a discriminatory purpose. Rejecting the defendant-appellant's claim of Constitutional significance, the Supreme Court held that the statistical studies were "*clearly insufficient* to support an inference that any of the decision makers *in McCleskey's case* acted with discriminatory purpose." 481 U.S. at 297 (emphasis provided.) To be sure, in *McCleskey*, the

Supreme Court recognized there was a potential risk of racial bias influencing decision making in criminal cases, but they found that the risk did <u>not</u> rise to the level of being "constitutionally unacceptable." Id. at 308-09. Indeed, in its analysis, the Supreme Court discussed the many safeguards designed to minimize racial bias in the decision-making process, before concluding: "At most, the *Baldus* study indicates a discrepancy that appears to correlate with race. *Apparent disparities in sentencing **are an inevitable part** of our criminal justice system.*" Id. at 312-13 (emphasis provided.)

Simply put, Mr. Briseno cannot meet his burden of proving the decision-makers *in his case* acted with a purposeful discrimination by pointing a general statistical studies, which cannot sustain the Fifth Amendment argument he advances. *See, e.g., United States v. Sampson*, 486 F.3d at 26 (rejecting identical challenge to the FDPA based on the DOJ Report). At most, such statistical studies may show a possibility that a particular factor *might* have entered into *some **other*** decisions. *See, e.g., United States v. Taylor*, 2008 WL 217115 at *6 (rejecting identical challenge to the FDPA based on DOJ Report); *United States v. Barnes*, 532 F. Supp.2d at 634 (defendant simply "cannot establish an equal protection violation using the statistics from the DOJ Report"); *see also United States v. Mitchell*, 502 F.3d at 982 (reaching same conclusion); *United States v. Bin Laden*, 126 F. Supp.2d 256, 60-62 (S.D.N.Y. 2000) (same).

Moreover, in Mr. Briseno's case – as in *all* federal death-penalty cases -- the Government followed a formal protocol that promotes fairness and uniformity in the application of the federal death penalty and protects against risks of racial discrimination. Mr. Briseno's Motion does not, and cannot, claim that the Government did not. Under this protocol, contained in the United States Attorneys' Manual at § 9-10.000, *et seq.*, the Government gives careful consideration whether to seek the death penalty in every case in which a crime has been committed that carries the possibility of a sentence of death. In all such cases, the decision to seek the death penalty is

Case 2:11-cr-00077-PPS-APR   Document 1062   Filed 09/16/14   Page 26 of 84

subjected to various levels of careful review, beginning with the charging United States Attorney and culminating with a decision by the Attorney General of the United States.  The Government's protocol prohibits bias based on characteristics such as race or ethnic origin. Indeed, most decision-makers involved in the protocol are unaware of the defendant's race.  *See United States v. Taylor*, 2008 WL 217115, at *6 (E.D. Tenn. 2008) (outlining Government's protocol and holding defendant "made no attempt to show there was a discriminatory reason" to prosecute him in a capital case.)

Further, as indicated above, Mr. Briseno would be hard-pressed to identify other federal defendants who are "similarly situated" to him who was not subjected to the death penalty.  In this regard, Mr. Briseno has been indicted, *inter alia*, for six (6) murders and seven (7) attempted murders in support of an extended and extensive RICO conspiracy in which he had a leadership role.  Perhaps, it is for this reason that Mr. Briseno's Motion is left to advance oft-rejected theoretical and statistical arguments, and does not attempt to identify any *practical* argument *tied to his own situation*, as required by the Supreme Court in *McCleskey v. Kemp*.

For each of these reasons, Mr. Briseno's Fifth Amendment claim of racial bias is without merit and should be denied.

### Mr. Briseno's Race-Based Eighth Amendment Claim Is Without Merit

Turning to Mr. Briseno's Eighth Amendment claim of racial bias, it is clear that his burden here is at least as great, and likely greater, than what was required of his Fifth Amendment equal protection claims.  *See McCleskey v. Kemp*, 481 U.S. at 306-15.  In order to prevail on his Eight Amendment claims, Mr. Briseno must prove an express "invidious" intention underlying the imposition of the death penalty, which he simply cannot do.  *See McCleskey*, 481 U.S. at 312-13, 319.  In the course of rejecting a capital defendant's Eighth

Amendment that was supported by a statistical study which suggested race-based discrepancies in capital sentencings, the *McCleskey* Court pronounced:

> Apparent disparities in sentencing are an inevitable part of our criminal justice system . . . . [O]ur consistent rule has been that constitutional guarantees are met when "the mode for [for determining guilt or punishment] itself has been surrounded with safeguards to make it as fair as possible." ***Where the discretion that is fundamental to our criminal process is involved, we decline to assume that what is unexplained is invidious***.

Id. at 312-13 (emphasis provided; citation omitted (*quoting Singer v. United States*, 380 U.S. 24, 35 (1965)).

Not surprisingly, Mr. Briseno fails to establish an invidious intention and discriminatory purpose and effect – because none exists. In this regard, *McCleskey* teaches that statistics which show that defendants of different races did not receive the death penalty are simply insufficient to establish an Eighth Amendment violation. Id. at 306-07. Further, as is readily confirmed, the statistics submitted by Mr. Briseno are no more probative than those rejected in *McCleskey v. Kemp. And see United States v. Sampson*, 486 F.3d at 26 (rejecting identical Eighth Amendment claim based on statistics from DoJ Report). Moreover, it would be both statistical and practical folly to claim that the DoJ Report provided any basis for attributing "invidious discrimination" to the statistical racial discrepancies in FDPA prosecutions, as opposed to other and more plausible factors, *inter alia*, the nature of the crimes involved.

In any event, *McCleskey v. Kemp* forbids this Court from accepting Mr. Briseno's invitation to assume "what is unexplained is invidious." 481 U.S. at 312-13; *accord United States v. Edelin*, 134 F. Supp.2d 59, 89 (D.D.C. 2001).

For each of these reasons, Mr. Briseno's Eighth Amendment claim of racial bias is without merit and should be denied.

**Mr. Briseno's Geographically-Based Eighth Amendment Claim Must Fail**

As should be expected, the same standards of "purposeful discrimination" apply to Mr. Briseno's geographically-based claims. For the same reasons, these claims by Mr. Briseno must also fail. As with his other bias-claims, Mr. Briseno fails to submit any evidence related to his case identifying "similarly situated" defendants in other regions or jurisdictions who have not been capitally-charged. Moreover, Mr. Briseno fails to establish any legitimate basis to conclude that capital-charging rates should be uniform across the federal districts. This omission is particularly glaring because it is generally accepted that criminal conduct can – and often does -- differ from jurisdiction to jurisdiction. *See United States v. Barnes*, 532 F. Supp.2d 625, 636 (S.D.N.Y. 2008). Moreover, just as with Mr. Briseno's earlier race-based claims, the alleged statistical discrepancies across various jurisdictions or regions in the DoJ Report simply cannot provide a legitimate basis to ascribe discriminatory animus in federal death-penalty prosecutions. Just as with Mr. Briseno's other bias-arguments, to the extent statistical differences may exist between regions or jurisdictions, there is no reason to *assume* those differences are geographically-bias-based, and are not the result of benign factors -- which are far more likely – such as differences in the nature of the crimes involved, the roles of the defendants in the respective crimes, or a disparity in the backgrounds of the offenders. *See United States v. Sampson*, 486 F.3d 13, 25-27 (1st Cir. 2007).

For each of these reasons, Mr. Briseno's Eighth Amendment geographically-based bias-argument is without merit and should be denied.

Because none of Mr. Briseno's claims alleging the FDPA creates an arbitrary and capricious capital sentencing scheme has merit, the Government urges the Court to deny his claims. Because, as established above, each of Mr. Briseno's claims fails as a matter of law, an evidentiary hearing on Mr. Briseno's claims is unnecessary.

1960

**POINT TWO:**      **The Supreme Court's 2002 decision in *Ring v. Arizona*
rendered the FDPA irredeemably unconstitutional.**
[*See* Motion, pages 57-84]

For his Second Point, Mr. Briseno alleges that in the 1994 enactment of the FDPA

Congress granted exclusive authority to the prosecutor to allege aggravating factors.  [*See*

Motion, page 57]  Yet, Mr. Briseno argues, subsequent Supreme Court authorities – principally,

*Ring v. Arizona*, 536 U.S. 584 (2002); *Harris v. United States*, 536 U.S. 545 (2002); *Apprendi v*

*New Jersey*, 530 U.S. 466 (2000); and *Jones v. United States*, 526 U.S. 227 (1999) – "flow

logically and inexorably to the conclusion that the FDPA" is unconstitutional.  [*See* id., at 60; *see*

*generally* id. at 60-64]  Stated succinctly, Mr. Briseno's argument is:  (1) the FDPA permits

prosecutors to allege aggravating factors; (2) the Constitution requires that elements of capital

murder be presented to the Grand Jury and charged in the indictment; (3) here, the Grand Jury

alleged aggravating factors and included them in the superseding indictment; (4) but there is no

statutory authorization in the FDPA for the Grand Jury to allege aggravating factors and to

include them in the indictment; (5) therefore, the FDPA is presently unconstitutional; and (6) this

Court should "resist and reject government's efforts to invent a 'Ring' fix." [*See* id., at 57-58;

*see generally* id. at 57-84][11]

---

[11]  Mr. Briseno also complains that he is unaware of whether or not the Government informed
the Grand Jury that the statutory aggravating factors included by the Grand Jury in its
superseding indictment would make Mr. Briseno "death-eligible." [*See* Motion, pages 86-87]
Mr. Briseno's Motion wishes the Grand Jury had been so informed.  [Id.]  However, even if the
Grand Jury was so informed, Mr. Briseno still thinks the special findings and the Notice should
be dismissed, because he is equally confident that the Grand Jury was not presented with "further
necessary elements necessary for the grand jury to make a decision as to whether Mr. Briseno
should be subject to the death penalty, i.e., whether (1) the aggravating factors outweigh the
mitigating factors and (2), whether they outweigh the mitigating factors sufficiently to justify a
sentence of death."  [Id., at 90 (footnote omitted)]  Not surprisingly, Mr. Briseno's Motion is
unable to cite a single case that supports his propositions.

1961

None of Mr. Briseno's arguments have merit.

### Mr. Briseno's Vacuous *Ring v. Arizona* Argument

In *Ring v. Arizona*, 536 U.S. 584 (2002), the Supreme Court held that, under the Sixth Amendment, the facts that render a defendant eligible for a death sentence – which, under the FDPA, are:  (a) the requisite state of mind factors under 18 U.S.C. § 3591(a)(2), and (b) at least one statutory aggravating factor under 18 U.S.C. § 3592(c) (hereinafter the "Eligibility Factors") – are the "functional equivalents" of elements of the offense and must, therefore, be found beyond a reasonable doubt by a jury at trial.  536 U.S. at 601-02.  The Supreme Court has never explored these same considerations as applied to the Grand Jury process.  However, post-*Ring* decisions have consistently sanctioned the constitutional propriety of the presentation of the Eligibility Factors to the Grand Jury and their inclusion in the indictment.  *See, e.g., United States v. Fell*, 531 F.3d 197, 237 (2d Cir. 2008) ("Fell II"); *United States v. Sampson*, 486 F.3d 13, 20 (1st Cir. 2007); *United States v. Brown*, 441 F.3d 1330, 1367 (11th Cir. 2006); *United States v. Allen*, 406 F.3d 940, 942-43 (8th Cir. 2005) (*en banc*); *United States v. Robinson*, 367 F.3d 278, 284 (5th Cir. 2004); *United States v. Higgs*, 353 F.3d 281, 298 (4th Cir. 2003).

As established below, Mr. Briseno's claims are under *Ring* are foreclosed by Supreme Court precedent and have consistently been rejected by United States Courts of Appeal.

### The FDPA Does Not Prohibit the Presentation of Eligibility Factors to the Grand Jury; Legislative Re-Drafting is Unnecessary

As indicated above, Mr. Briseno claims there is a fatal Constitutional conflict between the FDPA and *Ring*.  According to Mr. Briseno, the FDPA requires that prosecutors – and not Grand Juries – must allege death penalty Eligibility Factors.  Mr. Briseno says this alleged conflict cannot be cured absent a Congressional redrafting of the FDPA.  Yet, for all of the faux-certainty in Mr. Briseno's Motion, he neglects to mention that all of his have previously been

considered by a host of United States Courts of Appeals, and have been uniformly rejected by all

of them. *See, e.g., United States v. Sampson*, 486 F.3d at 21; *United States v. Brown*, 441 F.3d at

1367; *United States v. Allen*, 406 F.3d at 949; *United States v. Barnette*, 390 F.3d 775, 788-90

(4th Cir. 2004), *vacated on other grounds*, 546 U.S. 803 (2005); *United States v. Robinson*, 367

F.3d at 284, 290.

### By Its Terms, the FDPA Does Not Preclude the Government from Presenting Eligibility Factors to a Grand Jury

Assuming *arguendo* that *Ring* requires a Grand Jury indictment inclusive of Eligibility

Factors, Mr. Briseno's claim fails nevertheless for a multitude of reasons. *First*, Mr. Briseno

says that the FDPA provides that only the prosecutor – and not the Grand Jury – may advance

Eligibility Factors. Not surprisingly, Mr. Briseno fails to identify either specific language within

the FDPA that precludes the Grand Jury from charging Eligibility Factors or prevailing case

authority that vindicates his contention. As is readily apparent, there is no provision of the

FDPA that prohibits a Grand Jury from considering Eligibility Factors, nor is there any provision

that vests solely with the prosecutor exclusive authority to determine and charge Eligibility

Factors.[12] Indeed, the FDPA is predictably silent with respect to the function of the Grand

Jury.[13] Hence, contrary to Mr. Briseno's contention, the FDPA was not rendered

Constitutionally defective by *Ring*. *See United States v. Sampson*, 486 F.3d at 22 (there is no

---

[12] Although the FDPA does explicitly require the prosecutor to file a Notice of Intent to Seek the Death Penalty, which must include the Eligibility Factors the prosecutor intends to pursue, such Notice requirement is separate and distinct from any Constitutional requirement to present the Eligibility Factors in the indictment. Nothing in the FDPA prevents the prosecutor from presenting the Eligibility Factors to a Grand Jury.

[13] Following its examination of the legislative history of the FDPA, the Fourth Circuit found no indication of any Congressional intent to restrict the Government from presenting Eligibility Factors to the Grand Jury. *United States v. Barnette*, 390 F.3d at 789. Thus, any argument by Mr. Briseno that Congress intended the Eligibility Factors to be a sentencing determination, rather than elements of the offense, is similarly without merit.

irredeemable conflict between the FDPA and *Ring*); *United States v. Barnette*, 390 F.3d at 789

(no language in the statute "restricts the government from submitting aggravating factors to the

grand jury"); *United States v. Allen*, 406 F.3d at 949 (same); *United States v. Brown*, 441 F.3d at

1367 (there is nothing in the FDPA that inhibits prosecutors from charging aggravating factors in

an indictment); *United States v. LeCroy*, 441 F.3d 914, 921 (11th Cir. 2006) ("nothing in the

[FDPA] forbids, or is inconsistent with, prosecutors taking the additional step of including the

statutory aggravating factors in the indictment"); *United States v. Fell*, 217 F. Supp. 2d 469, 484

(D. Vt. 2002) ("That the FDPA is silent concerning the grand jury's role in charging death-

eligibility factors does not suggest that Congress intended to forbid grand jury participation or to

exclude these factors from an indictment. On the contrary, Congress has provided for the grand

jury's involvement in charging federal capital offenses in Rule 7 of the Federal Rules of

Criminal Procedure.")[14]

As a result, this contention by Mr. Briseno is without merit, as well.

### *Ring* Does Not Require Congressional Redrafting of the FDPA

Relatedly, Mr. Briseno argues that the application of *Ring* to the FDPA requires an

impermissible judicial or executive redrafting of the statute.  Once again, Mr. Briseno stubbornly

advances his claim in the face of a host of compelling authorities that have uniformly rejected it.

*See, e.g., United States v. Sampson*, 486 F.3d at 22; *United States v. Barnette*, 390 F.3d at 789

(rejecting argument that *Ring* and FDPA are in conflict); *United States v. LeCroy*, 441 F.3d at

921 (same); *United States v. Jacques*, 2011 WL 1675417 at *7 (D. Vt. May 4, 2011) (allowing

federal prosecutors to comply with *Ring* does not constitute impermissible amendment of the

FDPA), *vacated on other grounds*, 684 F.2d 324 (2d Cir. 2012); *United States v. Diaz*, 2007 WL

---

[14]  Mr. Briseno's Motion summarily dismisses as "wrongly decided" all post-*Ring*
authorities that have rejected claims identical to those advanced by him.  [*See* <u>Motion</u>, pages 76-
84]

656831 at *5 (N.D. Cal. 2007) (expressly following holdings of other courts that hold *Ring* does not require rewriting of FDPA); *United States v. Williams*, 2007 WL 2916123, *7 (D. Hawaii 2007) (rejecting argument that FDPA must be rewritten by Congress in light of *Ring*); *United States v. Rodriguez*, 380 F. Supp.2d 1041, 1047 (D.N.D. 2005) ("*Ring* does not require that any provision of the FDPA be rewritten.")

To be sure, the application of *Ring* is a matter of procedure -- not of substantive definition – concerning death-eligibility.  *See United States v. Sampson*, 486 F.3d at 21.  Indeed, the Supreme Court laid the groundwork for this conclusion in *United States v. Jones*, 526 U.S. at 243 & n.6, which was a precursor to both *Apprendi* and *Ring*.  In *Jones*, the Supreme Court explained that "[t]he constitutional guarantees that g[a]ve rise to [its] concern [regarding the need for the jury to find sentencing enhancements beyond a reasonable doubt] in no way restrict the ability of legislatures to identify the conduct they wish to characterize as criminal or to define the facts whose proof is essential to the establishment of criminal liability." Id.  Thus, in compliance with *Ring*, the Department of Justice enacted a policy that all federal prosecutors present Eligibility Factors in death penalty cases to the Grand Jury and that Eligibility Factors be charged in the corresponding indictment.  As is readily apparent from resort to the Fourth Superseding Indictment, herein, those procedures were followed in Mr. Briseno's case.  Because *Ring* merely set forth a procedural rule, rather than a substantive one, the Government's conformity with its teaching did not require a Congressional re-drafting of the FDPA.  *See, e.g., Schriro v. Summerlin*, 542 U.S. 348, 358 (2004); *United States v. Sampson*, 486 F.3d at 21-22 (collecting decisions from the 1st, 4th, 5th, 8th, 9th, 10th, and 11th Circuits all holding that *Ring* is a matter of procedure).

As a result, this argument by Mr. Briseno is also without merit.

**The 1968 *Jackson* Decision is Readily Distinguishable**

In the face of overwhelming modern authority on this issue, Mr. Briseno's Motion follows the thread-bare lead of many other capital defendants, when he selectively cites to *United States v. Jackson*, 390 U.S. 570 (1968).  [*See* Motion, pages 68-73]  However, as Mr. Briseno is no doubt well-aware, courts have consistently rejected this argument, because the provisions of the Federal Kidnaping Act ("FKA") that are at issue in *Jackson* are wholly inapposite to the FDPA.  To be sure, the Supreme Court in *Jackson* invalidated a provision of the FKA under which only a jury could impose the death penalty, 390 U.S. at 591, but that is of no moment for purposes of the FDPA.  This is so, because in *Jackson* the defendant argued that the FKA effectively violated his right to a jury trial by encouraging a guilty plea or waiver of right to jury trial, thereby side-stepping a jury and necessarily avoiding the possibility of a death sentence.  Id. at 572-73.  The Supreme Court rejected the Government's proposal that the FKA be salvaged through its *ad hoc* adoption of procedures for a "special jury" that would determine whether or not death was warranted in non-jury cases.  Id.  The Supreme Court held the FKA could not be saved by creating "from whole cloth a complex and completely novel procedure." Id. at 580.

Obviously, the situation in *United States v. Jackson* was far different from that presented here.  The Government's post-*Ring* procedures -- the presentation to the Grand Jury of Eligibility Factors and the inclusion of them in the indictment – are neither created "from whole cloth" nor are they either "complex" or "completely novel" procedures.  To the contrary, the role of the Grand Jury in investigating and charging elements of criminal offenses, including capital offenses, is enshrined in the Fifth Amendment to the Constitution ("No person shall be held to answer for a capital, or otherwise infamous crime, unless on presentment or indictment of a Grand Jury"), was long recognized in both common law and statutory law.  Indeed, absent a

specific waiver by the defendant, this procedure is followed in every felony case throughout the United States.[15]

Because *United States v. Jackson* is inapposite to the FDPA, Courts have repeatedly rejected claims virtually identical to those advanced here by Mr. Briseno.  *See, e.g., United States v. Sampson*, 486 F.3d at 22 (rejecting defendant's reliance on Jackson in challenging the FDPA); *United States v. Le*, 327 F. Supp.2d at 610 (rejecting defendant's argument that Government's new Grand Jury practice was improperly created "out of whole cloth)."

Hence, Mr. Briseno's claim under *Jackson* is similarly without merit.

### Defendant's Citation to *Booker* is Similarly Unavailing

Similarly, Mr. Briseno's predictable citation to *United States v. Booker*, 543 U.S. 220 (2005), cannot save him.  [*See* Motion, pages 71-73]  In *Booker*, the Court refused to revise the federal Sentencing Guidelines to create a set of procedures for presenting facts necessary for sentence enhancements to a jury, instead of a judge.  543 U.S. at 246.  Instead, the Court severed from the Guidelines the provision making mandatory the effect of sentencing factors that had not been found by a jury.  Id. at 245.  To do otherwise, it held, "would [have] so transform[ed] the scheme that Congress created that Congress likely would not have intended the Act as so modified to stand."  Id. at 249.   However, the court's holding in *Booker* is not remotely related to the procedures under the FDPA, where Grand Jury presentment and indictment neither transform the FDPA nor transgress the intentions of Congress when it enacted the statute.  In *United States v. Sampson*, the First Circuit rejected a *Booker*/FDPA argument identical to the one offered by Mr. Briseno here.  In so doing, the First Circuit observed:

---

[15]  The FDPA already prescribes the other mechanism for complying with *Ring* – proof to a jury beyond a reasonable doubt of facts that increase the sentence beyond the statutory maximum. *See* 18 U.S.C. §§ 3591(a)(2) & 3593(c).

The statute in question in *Booker*, like the statute in *Jackson*, was incompatible with constitutional requirements. *See* id. at 227-29. Saving either statute, as proposed by the government, while at the same time complying with constitutional mandates, would have required the Court to perform a complete statutory rewrite, which is a legislative and not a judicial function. *In contrast, allowing a grand jury to consider and charge aggravating factors under the FDPA does not have any effect either on the substantive aspects of the statute or on the discrete roles that the statute assigns to the judge, the prosecutor, and the jury respectively.*

486 F.3d at 23 (emphasis provided); *see also United States v. Jacques*, 2011WL 1675417 (D. Vt. 2011) (rejecting defendant's Booker/FDPA claim), *vacated on other grounds*, 684 F.2d 324 (2d Cir. 2012); *United States v. Barnette*, 390 F.3d at 789 (legislative history of FDPA shows absence of intent to restrict government from presenting Eligibility Factors to the Grand Jury.)

Therefore, Mr. Briseno's claim under *Booker* is without merit, as well.

### The FDPA Does Not Unconstitutionally Delegate to the Executive Branch The Power to Define Aggravating Factors

As a corollary to Mr. Briseno's *Ring* arguments, he also claims that the FDPA violates the non-delegation doctrine of Article I of the Constitution because it authorizes federal prosecutors to "fix" the deficient procedures (and to substitute new procedures and elements) for those originally enacted by Congress. [*See* Motion, pages 73-75] On close reading, it is apparent that the "fix" of which Mr. Briseno complains is merely the Government's presentment of Eligibility Factors to the Grand Jury and their inclusion of the Eligibility Factors in the indictment. As such, Mr. Briseno's argument is merely a restatement of earlier arguments that have previously been addressed.

1968

<center>The Non-Delegation Doctrine</center>

In *United States v. Barrett*, 496 F.3d 1079 (10th Cir. 2007), *cert. denied*, 552 U.S. 1260

(2008), the Tenth Circuit carefully summarized the relevant law surrounding the non-delegation

doctrine:

> The non-delegation doctrine arises from the constitutional principle of separation
> of powers, specifically Article I, § 1, which provides that 'all legislative Powers
> herein granted shall be vested in a Congress of the United States.'" *United States
> v. Jones*, 132 F.3d 232, 239 (5th Cir. 1998) (*citing Touby v. United States*, 500
> U.S. 160, 165 (1991), and *United States v. Mistretta*, 488 U.S. 361, 371 (1989).
> "Under the non-delegation doctrine, Congress may not constitutionally delegate
> its legislative power to another branch of government." Id. (*citing Mistretta*, 488
> U.S. at 372). "Congress, however, may seek assistance, within limits, from
> coordinate branches of government." Id. "So long as Congress formulates 'an
> intelligible principle to which the person or body authorized to exercise the
> delegated authority is directed to conform, such legislative action is not a
> forbidden delegation of legislative power.'" Id. (*quoting Mistretta*, 488 U.S. at
> 372).

496 F.3d at 1108 (emphasis provided.)

With these principles in mind, we turn to an examination of the FDPA.

<center>The FDPA Does Not Delegate a Legislative Function</center>

In *United States v. Higgs*, 353 F.3d 281 (4th Cir. 2003), the Fourth Circuit held that the

FDPA does not delegate a legislative function to the prosecutor. Id. at 321. In so doing, it noted

that the prosecutor's discretion in defining what is a death-eligible offense is wholly

circumscribed by the statute's requirement that the jury unanimously find at least one intent

factor and one statutory aggravating factor, before the defendant becomes eligible for the death

penalty. Id. Under the terms of the FDPA, it is only after the prosecutor selects and proves those

critical, legislatively-defined Eligibility Factors, which the prosecutor may argue that additional,

non-statutory aggravating factors in combination with the statutory aggravating factors, outweigh

any mitigating factors that have been submitted for the jury's consideration. Id. The non-

statutory aggravators, which the prosecutor may define, serve merely assist the jury in its task of

determining whether a death-eligible defendant should indeed receive the maximum sentence, and must be found by the jury beyond a reasonable doubt. *See* id.; *accord United States v Jones*, 132 F.3d 232, 239-40 (5th Cir. 1998) (Government's authority to define non- statutory aggravating factors is not an unconstitutional delegation); *United States v. Barrett*, 496 F.3d at 1079 (same); *United States v. Mitchell*, 502 F.2d at 978 (same).

Curiously, Mr. Briseno's Motion also cites *Mistretta v. United States*, 488 U.S. 361 (1989), in support of his argument. [*See* Motion, pages 73-75] Despite the repeated attempts by death penalty defendants, including Mr. Briseno, to construct from *Mistretta* a credible argument favorable to them, none has been able to so do. This is so, because *Mistretta* plainly *upheld* a delegation of Congressional authority to the United States Sentencing Commission. 488 U.S. at 372. As such, *Mistretta* clearly undermines – rather than supports – Mr. Briseno's non-delegation argument.

Because the FPDA does not represent an improper delegation of a legislative function to the Executive Branch, Mr. Briseno's claim is without merit and should be denied.

### Assuming *Arguendo* the Existence of a Delegation of Legislative Function, Such Delegation Was Properly Guided By the Requisite Intelligible Principles

Moreover, to the extent the discretion vested in prosecutors by the FDPA (in defining and pursuing non-statutory aggravating factors) could arguably be viewed as a delegation of legislative power, such delegation is nevertheless Constitutionally permissible. *See, e.g., United States v. Higgs*, 353 F.3d 281, 321 (4th Cir. 2003). This is so, because any delegation involved is sufficiently circumscribed by intelligible principles to avoid violating the separation of powers. Id., at 322; *United States v. Mitchell*, 502 F.3d at 979 (same). Indeed, limitations on the prosecutor's power include, *inter alia*: (1) the defendant must be given notice of the factor(s), 18 U.S.C. §§ 3592(c) and 3593(a); (2) constitutional limitations on the use of aggravating factors

established by the Supreme Court; (3) judicial review by the district court of the relevance,

reliability, and constitutionality of proposed non-statutory factors; and (4) the requirement that

the jury must find the eligibility factors beyond a reasonable doubt before it may consider the

non-statutory aggravating factors. *See United States v. Mitchell*, 502 F.3d at 979 (*citing United

States v. Jones*, 132 F.3d at 239-40); *see also United States v. Taylor*, 2008 WL 217115 at *9

("The statutory list of aggravating and mitigating factors focuses on circumstances of the crime

and the character of the offender, including his past criminal history, his capacity and relative

culpability in the offense. Proposed non-statutory aggravating factors should be consistent with

the type and severity of the statutory factors.")

As a result, if a delegation of legislative power has occurred in the FDPA, which it has

not, the prosecutor's authority to define non-statutory aggravating factors is nevertheless a

Constitutionally-permissible delegation of such power. *See United States v. Higgs*, 353 F.3d at

321; *and see United States v. Barrett*, 496 F.3d at 1108 (with regard to analogous provisions of

the Anti-Drug Abuse Act, holding that "prosecutorial discretion to promulgate non-statutory

aggravating factors falls squarely within the permissible delegation of power to the Executive

branch.")

For this reason, as well, Mr. Briseno's claims are without merit and should be denied.

It is Constitutionally-Permissible to Allege Eligibility Factors in a
"Special Findings" Section of an Indictment

Mr. Briseno also takes issue with the Indictment's "Notice of Special Findings," that

specify and allege the implicated Eligibility Factors under the FDPA. [*See* Motion, pages 75-76]

Essentially, Mr. Briseno complains that there is nothing in either the text of Fed. R. Crim. Pro. 7

or in the Indictment Clause of the Fifth Amendment that contemplates or permits a Grand Jury to

make "Special Findings" that can serve the function of the triggering requirements within the

1971

FDPA – which, he says, have now been invalidated by application of *Ring*, in any event.  [*See* id.]  As is readily apparent, this claim is merely an attempted reconstitution of Mr. Briseno's previously unpersuasive claims under *Ring* and *Jackson*, above.  Not surprisingly, Mr. Briseno's restatement of them, here, fares no better than his earlier presentation of them.

In *United States v. Jacques*, 2011 WL 1675417 (D. Vt. 2011), the Court was presented with a virtually identical argument together with the same authorities advanced by Mr. Briseno, here.  In rejecting the claims, the Court observed, "[t]hese special findings are merely a mechanism that enables the indictment to perform its well-established 'function of providing notice to [the defendant] of every element of the capital offenses with which he is charged.'"  Id. at *9 (*quoting United States v. Fell*, 217 F. Supp.2d 469, 484 (D. Vt. 2002)), *vacated on other grounds,* 684 F.2d 324 (2d Cir. 2012).  In *United States v. Fell*, the Court also rejected virtually identical claims, holding that an Indictment containing a section called "Special Findings" which alleged threshold culpability and statutory aggravating factors under the FDPA does not "offend the Indictment Clause, and . . . perform[ed] its function of providing notice to Fell of every element of the capital offenses with which he is charged."  217 F. Supp.2d at 484.

As is self-evident, the "Notice of Special Findings" is merely a convention employed to alert the defendant, the Court, and the jury to the specific statutory aggravating factors that have been found and alleged by the Grand Jury.  The particular terminology or label employed cannot, and does not, impermissible alter underlying Constitutional process.  In turn, such a label cannot change the substantive Constitutional analysis or the result.  Not surprisingly, Mr. Briseno Motion is unable to cite a single case authority in support of its repeatedly-rejected claim.

For each of the independent reasons set forth above, none of Mr. Briseno's *Ring* or *Ring*-derivative claims has merit, and they be denied.

| **POINT THREE:** | **The Grand Jury's "Special Findings" in its superseding Indictment were in violation of the Fifth Amendment and therefore the death penalty notice should be stricken.** [*See* Motion, pages 84-96] |

As his Motion's Third Point, Mr. Briseno claims that the indictment and notice of intent to seek the death penalty in this case are constitutionally infirm for the following reasons:  (1) the grand jury was unaware of the consequences of its "special findings;" (2) the indictment fails to charge all essential elements of the offense, to wit:  the grand jury did not determine if aggravating factors outweigh the mitigating factors sufficiently to justify a sentence of death; and (3) the non-statutory aggravating factors in the notice of intent to seek the death were not found by the Grand Jury.  [*See* Motion, pages 84-96]  Once again, Mr. Briseno is unable to cite any persuasive case law to support his claims.[16]  Once again, each of Mr. Briseno's claims is without merit.  As demonstrated below, the superseding Indictment in this case is Constitutionally sound.

**There is No Constitutional Requirement That the Grand Jury Be Informed
That It's "Special Findings" Could Result in a Sentence of Death**

Mr. Briseno's Motion claims that the Government (and the superseding Indictment) ran afoul of the Fifth Amendment because the Grand Jury was not specifically informed that it was returning an Indictment that charged a capital offense.[17]  To be sure, Mr. Briseno presents no

---

[16]  Because the Government does not presently rely on post-*Apprendi* drug quantity cases, severability analysis, or the doctrine of "constitutional avoidance," it will not address Mr. Briseno's premature replies to such *non*-reliance by the Government.  [*See* Motion, pages 90-96]

[17]  Mr. Briseno's Motion cites no actual evidence for its "factual" allegation. [*See* Motion, page 86 ("On information and belief, ... the government did not inform the grand jury of the consequences of those special findings....")  Because there is no requirement that the no authority

authority requiring that the Grand Jury must be so informed.   Rather, he struggles to craft a novel argument based on the historical function of grand juries.  Once again, Mr. Briseno's argument is both inherently unpersuasive and it has been repeatedly rejected by a multitude of federal courts before whom it was previously presented.

### Federal Courts Have Routinely Rejected This Claim in Other Capital Cases

As an initial observation, and contrary to Mr. Briseno's suggestion, there is nothing in the Indictment Clause of the Fifth Amendment that suggests or requires that a Grand Jury be informed of the range of punishments a defendant will face.  In fact, the Indictment Clause serves only two critical functions:  *First*, the Indictment Clause it acts as a check on prosecutorial power.  *Branzburg v. Hayes*, 408 U.S. 665, 686-87 (1972).  *Second*, the Indictment Clause provides notice to the defendant of the charges against which he/she must defend.  *See Hamling v. United States*, 418 U.S. 87, 117 (1974).  Indeed, in *Hamling*, the Supreme Court held that an indictment need only charge the elements necessary to constitute the offense, and need *not* charge the ultimate punishment sought for the offense committed.  418 U.S. at 117.

Because there is no requirement that an indictment charge the punishment sought, in turn, there is no requirement that the Grand Jury be informed as to the ultimate punishment a defendant might face.  *United States v. Troya*, 2008 WL 4327004, *7 (S.D. Fla. 2008).  As a result, it is not surprising that those federal courts that have considered this same claim under the FDPA have routinely rejected virtually identical claims.  *See United States v. Jacques*, 2011 WL 1675417, *10 (D. Vt. 2011) (collecting cases), *vacated on other grounds*, 684 F.2d 324 (2d Cir. 2012); *United States v. Troya*, 2008 WL 4327004, at *7-*8 ("[T]he case law is clear that there is no constitutional requirement that the grand jury be informed of the potential punishment arising

requiring that the Grand Jury be so informed, the Government declines to be drawn into a dialogue with Mr. Briseno as to whether the Grand Jury was, or was not, so informed.

out of the Special Findings"); *United States v. Lecco*, 2007 WL 1074775, *2-*3 (S.D.W.Va.

2007) ("the Supreme Court has made clear that the Indictment clause of the Fifth Amendment

does not require the government to inform the grand jury of the potential penalties that might

attach as a result of any special findings"); *United States v. Diaz*, 2007 WL 656831, *6 (N.D.

Cal. 2007) (there is no reason for the grand jury to be informed of the potential punishment

arising out "of the special findings"); *United States v. Talik*, 2007 WL 4570704, *7 (N.D. W.Va.

2007) (same); *United States v. Williams*, 2007 WL 2916123, *4 (D. Haw. 2007) (same); *United

States v. Natson*, 444 F Supp.2d 1296, 1305 (M.D. Ga. 2006) ("[S]ince neither the Fifth or Sixth

Amendments required the Indictment to include the ultimate punishment sought for the offenses,

no reason existed for the grand jury to even know what that punishment may be"); *United States

v. Haynes*, 269 F. Supp.2d 970, 981 (W.D. Tenn. 2003) (same).

<div align="center">

**The Defendant's Strained Historical Arguments are Both
Unpersuasive and Unavailing**

</div>

As established above, the purpose of the Indictment Clause is to ensure that the defendant

is subject to criminal charges that have been approved by a group of citizens acting

independently of the prosecutor or judiciary. *Stirone v. United States*, 361 U.S. 212, 218 (1960).

Indeed, in modern criminal practice, it is the petit jury (rather than the Grand Jury) whose

function is to decide the defendant's ultimate fate. To that end, it is the petit jury that convicts or

acquits the defendant. Moreover, in the context of capital sentencing, it is the petit jury that

contemplates the appropriate sentence upon conviction of a capital crime. *See United States v.

Matthews*, 246 F. Supp.2d 137, 146-47 (N.D.N.Y. 2002). The Grand Jury's check on

prosecutorial power "stems from its independent factual determination of the existence of

probable cause for the essential elements of the charged offense." *United States v. Haynes*,

269 F. Supp.2d at 981.

Even if one assumes *arguendo* that the Grand Jury – which is a creature of the common law and not a unique innovation of the Fifth Amendment – was historically aware that it was charging a capital offense, there is simply nothing in the Indictment Clause that requires modern Grand Juries to operate identically to their predecessors at common law. Indeed, at common law, there would have been little or no need to inform a charging Grand Jury of the punitive consequences of its charging decision, because the offenses being considered by it were known inevitably to carry mandatory sentences of death, which was the exclusive available punishment. *See Woodson v. North Carolina*, 428 U.S. 280, 289-90 (1976).

Obviously, for any number of reasons, this is not true today. *First*, at least as of the Supreme Court's 1976 decision in *Woodson v. North Carolina*, mandatory death sentences are unconstitutional. *Second*, and perhaps most importantly, it is now indisputable that the Constitution requires sentences of death to be the result of highly individualized considerations. *See Lockett v. Ohio*, 438 U.S. 586, 605 (1978) ("[W]e cannot avoid the conclusion that an individualized decision is essential in capital cases.")

Indeed, the modern capital sentencing scheme militates against assigning Grand Juries a role in deliberating on punishment-only factors. Unlike petit juries, Grand Juries ordinarily will not have access to the same scope of, and context for, evidence pertinent to the issues of whether capital punishment should appropriately be imposed. For example, they will often not be informed of the full extent of the defendant's criminal history; they will not be informed of mitigation evidence (much of which may be unknown to the Government); nor additional aggravating factors beyond those "Special Factors" that establish eligibility for the death penalty. As a result, the Grand Jury is not positioned or equipped to give full and proper individualized consideration to all relevant evidence concerning the facts and circumstances of the crime and

1976

the character and background of the defendant as is required in modern capital sentencing jurisprudence. *See Kansas v. Marsh*, 548 U.S. 163, 173 (2006); *Zant v. Stephens*, 462 U.S. 862, 879 (1983); *United States v. Jacques*, 2011 WL 1675417, at *10 (identical historical arguments challenging the FDPA "rely upon a somewhat distorted characterization of the historical role of the grand jury.")

For each of these reasons, Mr. Briseno's Indictment Clause arguments are without merit and should be denied.

### The Indictment Properly Alleges All Necessary Elements

Mr. Briseno next avers that the superseding Indictment is deficient because the Grand Jury did not decide whether (1) the aggravating factors outweighed the mitigating factors in his case and/or (2) whether the aggravating factors outweigh the mitigating factors to such a degree ("sufficiently") so as to justify a sentence of death. [*See* Motion at pages 91-92]   In his Motion, Mr. Briseno argues that decisions such as these constitute necessary "fact-finding" by the Grand Jury and, his argument claims, its failure to engage in such comprehensive mitigation/aggravation weighing exercises render the resulting Superseding Indictment Constitutionally offensive. [*See* Motion, pages 90-91]  However, once again, Mr. Briseno fails to cite any case authority that supports or adopts his claim.  Once again, this is because Mr. Briseno's claim has repeatedly been rejected by the federal courts that have entertained them. *See, e.g., United States v. Barrett*, 496 F.3d 1079, 1107-08 (10th Cir. 2007), *cert. denied*, 522 U.S. 1260 (2008); *United States v. Fields*, 483 F.3d 313, 346 (5th Cir. 2007); *United States v Troya*, 2008 WL 4327004, at *8 (S.D. Fla. 2008) (holding that "the weighing of the aggravating factors against the mitigating factors is not a necessary element of the capital offense.")

In *United States v Troya*, the Court explained *inter alia*:

> Defendant's argument that the jury's weighing of the aggravating factors and the mitigating factors is an "element" that increases the defendant's maximum sentence – is incorrect. Once the jury reaches the point of weighing aggravating and mitigating factors, it will have already found the Defendant death penalty eligible and established the statutory maximum sentence – there is no possible increase that can be made to Defendant's sentence. Accordingly, a jury's weighing of the aggravating factors against the mitigating factors in the final phase of their inquiry does nothing to increase the sentence authorized for the defendant, and is therefore, not subject to *Apprendi* or the reasonable doubt standard.

Id. at *6. Applying similar reasoning, other district courts have rejected essentially the identical argument that Mr. Briseno raises here. *See United States v. Jacques*, 2011 WL 1675417, at *10; *United States v. Diaz*, 2007 WL 656831, at *3; *United States v. Talik*, 2007 WL 4570704, at *7; *United States v. Gooch*, 2006 WL 3780781, at *15 (D.D.C. 2006); *United States v. Henderson*, 485 F. Supp.2d 831, 854 (S.D. Ohio 2007); *United States v. Natson*, 444 F. Supp.2d at 1304. In part, these decisions are based on the fact that the Constitution has been interpreted as not even requiring the weighing of aggravating factors in a capital case. *See Blystone v. Pennsylvania*, 494 U.S. 299, 306-07 (1990). For example, in upholding the constitutionality of the Pennsylvania death penalty statute, the Supreme Court in *Blystone* held that "the Eighth Amendment does not require that these aggravating circumstances be further refined or weighed by a jury." Id. at 306-07; *see also Zant v. Stephens*, 462 U.S. 862, 875-76, n.13 (c*iting Jure v. Texas*, 428 U.S. 262 (1976) (holding that specific standards for balancing aggravating against mitigating circumstances are not constitutionally required); *Franklin v. Lynaugh*, 487 U.S. 164, 179 (1988) (emphasizing that "we have never held that a specific method for balancing mitigating and aggravating factors in a capital sentencing proceeding is constitutionally required)."

Plainly, if the Constitution does not require the petit jury – that is actually trying the case, and whose actions may actually impose a sentence of death – to be told how to weigh the aggravating factors and the mitigating factors, there can be no Constitutional requirement for the Grand Jury to be so instructed. Additionally, resort to *United States v. Purkey*, 428 F.3d 738 (8th Cir. 2005), is also instructive on this point. In *Purkey*, the Eighth Circuit rejected a claim that the FDPA was facially unconstitutional because it did not require the prosecutor to seek an indictment on the issue of whether aggravating factors sufficiently outweighed any mitigating factors to justify a sentence of death. There, the Court easily dispatched this argument, declaring:

> [I]t makes no sense to speak of the weighing process mandated by 18 U.S.C. § 3593(e) as an elemental fact for which a grand jury must find probable cause. In the words of the statute, it is a "consideration," 18 U.S.C. § 3593(e), -- that is, the lens through which the jury must focus the facts that it has found to produce an individualized determination regarding "whether the defendant should be sentenced to death, to life imprisonment without possibility of release or some other lesser sentence."

428 F.3d at 750.

Thus, the elements of a capital offense do not include the "weighing process" that can raise the statutory minimum sentence as Mr. Briseno claims. As such, the return of a Constitutionally valid capital indictment does not require the Grand Jury to engage in any sort of a "weighing process."

For each of these reasons, Mr. Briseno's claim that a Grand Jury must engage in a weighing process between the mitigating factors and the aggravating factors prior to the return of a Constitutionally-valid capital indictment is without merit and should be denied.

**Non-Statutory Aggravating Factors Need Not Be Charged in the Indictment**

Having failed to find support for his earlier argument – that the Government's inclusion

of statutory aggravating factors as "Special Findings" in the superseding Indictment against him

rendered the Indictment unconstitutional -- Mr. Briseno's Motion reverses course and says that

the Government's Notice of Intent to Seek the Death Penalty should be stricken because the

Grand Jury did *not* include *non*-statutory aggravating factors in the superseding Indictment he

faces. [*See* Motion, pages 91-96]  Anxious to locate any support for this contention, Mr. Briseno

leans heavily upon the discredited opinion in *United States v. Green*, 372 F. Supp.2d 168 (D.

Mass. 2005). [*See* id., pages 91-96]  As demonstrated below, *Green* has routinely been rejected

by other district courts who have reviewed this issue.  Not surprisingly, no Court of Appeals has

embraced either the *Green* decision or its reasoning.  Indeed, all of the Courts of Appeals that

have reached the issue have concluded that non- statutory aggravating factors need not be alleged

in an indictment.  *See United States v. Fell*, 531 F.3d 197, 236-37 (2nd Cir. 2008); *United States

v. Mitchell*, 502 F.3d 931, 979 (9th Cir. 2007); *United States v. Sampson*, 486 F.3d 13, 20-23 (1st

Cir. 2007); *United States v. Brown*, 441 F.3d 1330, 1368 (11th Cir. 2006); *United States v.

Purkey*, 428 F.3d 738, 749-50 (8th Cir. 2005); *United States v. Bourgeois*, 423 F.3d 501, 507-08

(5th Cir. 2005); *United States v. Higgs*, 353 F.3d 281, 298-99 (4th Cir. 2003).  These Circuit

Courts, and a multitude of district courts that have followed their lead, have correctly recognized

the fundamental difference between the eligibility factors (that must be included in the

indictment) and the non-statutory aggravating factors (that need not be alleged in the indictment).

In this regard, the function of the FDPA's non-statutory aggravating factors is to provide relevant

and individualized information for capital sentencing; they do not narrow the class of offenders

who are eligible for the death penalty (which is the role of statutory aggravating factors).

As explained by the Eleventh Circuit in *United States v. Brown*, 441 F.3d 1330 (11th Cir. 2006):

> The non-statutory aggravating factors, although relevant to determining whether a jury decides to impose the death penalty, do not make a defendant statutorily eligible for any sentence that could not be otherwise imposed in their absence. They are neither sufficient nor necessary under the FDPA for a sentence of death. This rule comports with recent Supreme Court precedent because a non-statutory aggravating factor does not "increase the penalty for a crime beyond the prescribed statutory maximum," *see Apprendi*, 530 U.S. at 490, nor does it somehow allow the imposition of a more severe sentence than could have been imposed without it. *See Blakely v. Washington*, 542 U.S. 296, 303-04 (2004). Thus, a non-statutory aggravating factor is not one of those "facts legally essential to the punishment" that must be included with the indictment.

441 F.3d at 1368 (some citations and quotations omitted); *see also United States v. Higgs*, 353 F.3d 281, 299 (4th Cir. 2003) ("Because non-statutory aggravating factors do not increase the available punishment to which a defendant might be subjected, they are not required to be alleged in the indictment.")

In the face of this avalanche of contrary authority, Mr. Briseno's sheepish advance of *Green* is both misguided and underwhelming. In *United States v. Diaz*, 2007 WL 656831 (N.D. Cal. 2007), the district court rejected the rationale of *Green* – holding that unadjudicated conduct need not be included in the indictment and noting that "*no other court* has recognized a similar exception for unadjudicated conduct." Id. at *3 n.1; *see also United States v. Rodriguez*, 380 F. Supp.2d 1041, 1051-52 (D.N.D. 2005) (collecting cases holding that non-statutory factors need not be included in the indictment); *United States v. Troya*, 2008 WL 4327004, *8-*9 (S.D. Fla. 2008) (rejecting *Green*.) Likewise, this Court should adopt the rationale and conclusions of the great weight of authority that recognizes that non-statutory aggravating factors need not be included in the indictment.

Finally, Mr. Briseno's purported reliance on *United States v. Mills*, 446 F. Supp.2d 1115 (C.D. Cal. 2006), is also misplaced. [*See* Motion, pages 93-96]  As is readily confirmed, *United States v. Mills* dealt with a penalty-phase *Crawford v. Washington*[18] witness-confrontation issue, *see* 446 F. Supp.2d at 1121-26 -- an issue on which the courts are split. *See United States v. Fields*, 483 F.3d 313, 363, n. 1 (5th Cir. 2007) (dissent: "the persuasive authorities, and our Sister Circuits in particular, are divided on this issue *sub justice*," as to whether the Confrontation Clause applies at capital sentencings, and collecting divided authorities on that issue.)[19]  Obviously, a resolution of the question of whether or not *Crawford* applies to the penalty phase of a capital trial is wholly unrelated to Mr. Briseno's claim here -- that the inclusion of "Special Findings" by the Grand Jury in the Superseding Indictment in this case constitutes a violation of the Fifth Amendment and should therefore be stricken. [*See* Motion, pages 84-96]

---

[18]  541 U.S. 36 (2004).

[19]  *See and compare Proffitt v. Wainwright*, 685 F.2d 1227, 1254 (11th Cir.1982) (holding that "the right to cross-examine adverse witnesses applies to capital sentencing hearings"); *United States v. Mills*, 446 F.Supp.2d 1115, 1135 (C.D. Cal.2006) ("*Crawford v. Washington's* protections apply to any proof of any aggravating factor during the penalty phase of a capital proceeding under the FDPA."); *Russeau v. State*, 171 S.W.3d 871, 880 (Tex.Crim.App. 2005) (reversing a death sentence under *Crawford* because the trial court admitted testimonial hearsay at the punishment phase), *cert. denied*, 548 U.S. 927 (2006), *and cert. denied*, 548 U.S. 926 (2006); *State v. Bell*, 603 S.E.2d 93, 115–16 (N.C. 2004) (applying *Crawford* to hold that the introduction of testimonial hearsay at the sentencing phase of a capital trial violated the Confrontation Clause); and *Rodriguez v. State*,753 So.2d 29, 43–44 (Fla. 2000) (holding that "the Sixth Amendment right of confrontation applies to all three phases of the capital trial" and that "the admission of ... hearsay statements of co-defendants in the penalty phase violated the Confrontation Clause") *with Szabo v. Walls*, 313 F.3d 392, 398 (7th Cir. 2002) (holding that the Confrontation Clause "applies through the finding of guilt, but not to sentencing, even when that sentence is the death penalty"); *State v. McGill*, 140 P.3d 930, 940–42 (Ariz. 2006) (*Crawford* does not apply to penalty phase of capital trial); *State v. Stephenson*, 195 S.W.3d 574, 590–91 (Tenn. 2006) (same); *United States v. Johnson*, 378 F. Supp.2d 1051, 1062 (N.D. Iowa 2005) (holding that *Crawford* does not apply to sentence-selection phase of capital sentencing); *People v. Simms*, 659 N.E.2d 922, 930 (Ill. 1995) (rejecting *Proffitt*).

As a result, Mr. Briseno's claims that the Fifth Amendment compels this Court to strike the "Special Findings" from the Superseding Indictment are without merit and should be denied.

**POINT FOUR:** **The FDPA is unconstitutional because it fails to provide a sufficient structure to permit jurors to make reasoned decisions between life imprisonment and the death penalty.** [*See* Motion, pages 96-103]

As the Fourth Point of his Motion, Mr. Briseno asserts a facial challenge to the FDPA because the FDPA allegedly "has created a scheme that mixes concepts, burdens of proof, and an overall process which is likely incomprehensible to jurors." [*See* Motion, page 96][20] Moreover, as a procedural matter, Mr. Briseno's Motion asks that, if the Court is unpersuaded to embrace Mr. Briseno's position outright, Mr. Briseno be afforded an evidentiary hearing in support of his claim. [*See* id., page 103] However, as is readily seen, Mr. Briseno's claim is unsupported by any relevant legal authority. Instead, Mr. Briseno identifies a number of result-driven journal articles and statistical studies, including the dubious and partisan Capital Jury Project [*see* id., pages 98-102], which even Mr. Briseno must admit conflict with decisions of the Supreme Court. [*See* id., pages 102-03] *And see Tuilaepa v. California*, 512 U.S. 967, 975-76 (1994); *Boyde v. California*, 494 U.S. 370 (1990). Because Mr. Briseno's claim is contrary to the law, the Court should deny the relief he seeks together with his request for an evidentiary hearing.

---

[20] To the extent Mr. Briseno might seek to argue that he is merely making an "as-applied" challenge to the FDPA, such a challenge is neither ripe nor possible during this pretrial stage of his case. Mr. Briseno does not – and cannot – establish at this stage of the proceedings how *his* jury will be incapable of understanding the structure of the FDPA and/or this Court's instructions, because the jury in Mr. Briseno's case has not been selected nor has this Court had an opportunity to instruct the jury prior to its deliberations. Plainly, the purported statistical findings submitted by Mr. Briseno are not related to the specific facts of his case nor are they from this District. As a result, Mr. Briseno's immediate claims can only constitute a general, facial challenge to the FDPA.

**Juries are Presumed to Follow the Court's Instructions**

As repeatedly reaffirmed by the Supreme Court, a "'crucial assumption' underlying the

system of trial by jury is that juries will follow the instructions given them by the trial judge."

*Marshall v. Lonberger*, 459 U.S. 422, 438 n.6 (1983) (*quoting Parker v. Randolph*, 442 U.S. 62,

73 (1979)).  This assumption is "'rooted ... in the belief that it represents a reasonable practical

accommodation of the interests of the state and the defendant in the criminal justice process.'"

*United States v. Casamento*, 887 F.2d 1141, 1151 (2d Cir. 1989) (*quoting Richardson v. Marsh*,

481 U.S. 200, 206 (1987).  As a result, this presumption is "almost invariabl[e]." *United States v.*

*Jass*, 569 F.3d 47, 55 & n.4 (2d Cir. 2009); *see also Richardson v. Marsh*, 481 U.S. at 206

(*citing Francis v. Franklin*, 471 U.S. 307, 325 n.9 (1985)); *Zafiro v. United States*, 506 U.S. 534,

540-41 (1993); *Bell v. Evatt*, 72 F.3d 421, 434 (4th Cir. 1995).

In a capital case, instructions will be deemed constitutionally defective if there is a

"reasonable likelihood" that they misled the jury into sentencing the defendant to death.  *See*

*Boyde v. California*, 494 U.S. 370, 380 (1990) (holding there was no reasonable likelihood that

jurors misinterpreted allegedly ambiguous jury instruction in death penalty case).[21]  In this

regard, jury instructions which are merely arguably ambiguous or create "only a possibility of ...

[jury] inhibition" do not fall into this category.  Id. at 379-84; *see also Tuilaepa v. California*,

512 U.S. 967, 975-76 (1994) (instructions in penalty phase of capital case were constitutional

---

[21]  Ordinarily, the presumption that juries will follow a trial court's instructions is overcome only
if there is an "'overwhelming probability' that the jury will be unable to follow the court's
instructions ... and a strong likelihood that the effect of the evidence would be 'devastating' to
the defendant."  *Greer v. Miller*, 483 U.S. 756, 766 n.8 (1987) (*citing Richardson v. Marsh*, 481
U.S. at 208; *Bruton v. United States*, 391 U.S. 123, 135 (1968)); *see also United States v. Ford*,
88 F.3d 1350, 1364 (4th Cir. 1996); *United States v. Stone*, 9 F.3d 934, 938 (11th Cir. 1993);
*United States v. Perone*, 936 F.2d 1403, 1410 (2d Cir. 1991); *United States v. Colombo*, 909 F.2d
711, 715 (2d Cir. 1990).

because they were "phrased in conventional and understandable terms" and had a "commonsense core of meaning.")

**Mr. Briseno's Premise Has Consistently Been Rejected By Federal Courts**

As previously indicated, Mr. Briseno's Motion references certain partisan studies and law review articles in support of the view he espouses,[22] but he is notably unable to citation to a single valid federal case in support of his claim that the FDPA scheme is so incomprehensible as to negate the presumption of juror understanding. On the other hand, Mr. Briseno must be aware that there are a multitude of federal courts that have consistently rejected claims identical to the one that he advances here. *See, e.g., United States v. Jacques*, 2011 WL 1674517, *11-13 (D. Vt. 2011); *United States v. Taylor*, 635 F. Supp.2d 1243, 1247 (D.N.M. 2009) ("[o]ther courts have been faced with one form or another of the instant motion, and have rejected the premise on which it is based"); *United States v. Green*, 2008 WL 4000901, at *2 (W.D. Ky. 2008); *United States v. Sablan*, 2006 WL 1028780, *7 (D. Colo. 2006) (finding no support for the assertion that the FDPA's penalty scheme is so confusing that a jury will never be able to comprehend the concepts, regardless of the instructions given); *United States v. Perez*, 2004 WL 935260, at *2-*3 (D.Conn. 2004) (finding "the empirical evidence presented by the defendants is too

---

[22] In particular, the Capital Jury Project, on which Mr. Briseno heavily relies, allegedly conducted interviews of capital jurors in reaching its conclusions. Additionally, Mr. Briseno relies upon the 2007 *unpublished* decision of a single New Mexico state trial judge, who relied upon the Capitol Jury Project. [*See* Motion, page 101 ("a New Mexico state district judge dismissed the 'death notice' in a case in part because of the findings of the CJP.")] To be sure, the Government is aware of a single federal case that embraced Mr. Briseno's view. *See Free v. Peters*, 806 F. Supp. 705 (N.D. Ill. 1992). However, that case was subsequently reversed by the Seventh Circuit. *See Free v. Peters*, 12 F.3d 700 (7th Cir. 1993). In any event, the allegedly "shocking lesson" that the Mr. Briseno's self-interest draws "from the CJP is that criminal juries are incapable of understanding and applying the trial court's instructions." [*See* Motion, pages 102-03] However, in order to embrace Mr. Briseno's sweeping conclusion the reader must take leave of both reason and the presumptions and experience embedded in Supreme Court precedent and in other decisions of the federal courts.

speculative to make assumptions about what a properly instructed jury might understand or misunderstand in this case" and that the "common areas of confusion" could be remedied through better jury instructions); *United States v. Mikos*, 2003 WL 22110948, at \*17-\*19 (N.D. Ill. 2003) ("[t]here is no justification prior to trial for this court to hold that the sentencing jury will be unable to comprehend the provisions of the FDPA or the instructions provided by the court or counsel"); *United States v. Regan*, 228 F. Supp.2d 742, 746 (E.D. Va. 2002); *United States v. Llera Plaza*, 179 F. Supp.2d 444, 450 (E.D. Pa. 2001) (studies cited "do not establish that the concepts of aggravating and mitigating factors as used in the FDPA bear such a degree of intrinsic 'incomprehensibility' as to render them incapable of clarification through adequate jury instructions.)"

In *United States v. Green*, 2008 WL 4000901 (W.D. Ky. 2008), the Court rejected a similar challenge to the FDPA. In *Green*, the defendant moved the court to declare the FDPA unconstitutional based on the findings of the Capital Jury Project. The Court held that "[t]he findings of the CJP are not precedent and are not binding upon this Court. Further, the Defendant makes no attempt to connect the findings of the CJP to the FDPA and has not shown that the FDPA produces any of the seven characteristics." Id. at \*2. The *Green* Court further held that "the CJP provides no basis for undermining the constitutionality of the FDPA, a statute that has withstood innumerable attacks since its passage in 1994." Id. (*citing United States v. Duncan*, 2008 WL 544847 (D. Idaho 2008)).

As indicated above, Mr. Briseno's Motion essentially asserts that – *irrespective* of the jury instructions that may be given by *any* Court – *all* capital sentencing juries under the FDPA will engage in (a) premature decision making, (b) a failure to understand instructions (particularly regarding mitigating factors), (c) an underestimation of alternative sentencing

options, and (d) other errors. [*See* <u>Motion</u>, pages 98-102] Because Mr. Briseno's contention is unsupported by law or logic, and because his premise is in direct conflict with firmly held Supreme Court principles, and because all of Mr. Briseno's arguments have consistently been rejected by a host of federal courts that have entertained them, and because Mr. Briseno's arguments and studies do not – and cannot – show that there is an "overwhelming probability" that the jury will be unable to follow the Court's instructions, Mr. Briseno's claims are without merit and should be denied.

<div align="center">**An Evidentiary Hearing is Unnecessary and Unwarranted**</div>

As established above, Mr. Briseno is unable to identify a credible claim that might benefit from an evidentiary hearing. On its face, Mr. Briseno's Motion and supporting studies are unable to sustain his extremely high burden of proving the FDPA is *facially* unconstitutional, particularly when the statute has repeatedly been held to be constitutional, *see., e.g., United States v. Sampson*, 486 F.3d 13 (1st Cir. 2007), and the same arguments – bolstered by the same studies as those advanced here – have repeatedly been rejected by other federal courts. *See, e.g., United States v. Jacques*, 2011 WL 1674517, *11-13 (D. Vt. 2011); *United States v. Taylor*, 635 F. Supp.2d 1243, 1247 (D.N.M. 2009); *United States v. Green*, 2008 WL 4000901, at *2 (W.D. Ky. 2008); *United States v. Sablan*, 2006 WL 1028780, *7 (D. Colo. 2006); *United States v. Perez*, 2004 WL 935260, at *2-*3 (D.Conn. 2004); *United States v. Mikos*, 2003 WL 22110948, at *17-*19 (N.D. Ill. 2003); United States v. Regan, 228 F. Supp.2d 742, 746 (E.D. Va. 2002); *United States v. Llera Plaza*, 179 F. Supp.2d 444, 450 (E.D. Pa. 2001). Under these circumstances, "an evidentiary hearing on the matter would not be helpful." *United States v, Taylor*, 635 F. Supp.2d at 1244.

For each of the reasons set forth above, Mr. Briseno's request for an evidentiary hearing is unnecessary and unwarranted and should be denied.

**POINT FIVE:**   **The FDPA is unconstitutional because it will lead to the execution of innocent people.**  [*See* Motion, pages 122-27]

As the Fifth Point in Mr. Briseno's Motion, he claims that because the American system of justice is not perfect and is, therefore, not "free from the possibility of error" [*see* Motion, page 105-06], but is rather alleged "fraught with factual error, [and] it is also fraught with legal error" [id., page 106], it is *a posteriori* unconstitutional to "allow the machinery of death to grind inexorably onwards, in the face of incontrovertible proof that our system convicts and condemns to death the innocent." [Motion, page 109]  Desperate to find some legitimate support for his emotional claims, Mr. Briseno encourages this Court to embrace hyperbole and an ***overturned*** decision from the Southern District of New York, in *United States v. Quinones*, 205 F. Supp.2d 256 (S.D.N.Y. 2002), *reversed*, 313 F.3d 49 (2d Cir. 2002), *opinion on rehearing*, 317 F.3d 86 (2d Cir. 2003).  [*See* Motion, pages 104-08]

Surprisingly, Mr. Briseno's Motion fails to mention that in *Herrera v. Collins*, 506 U.S. 390 (1993), the Supreme Court addressed the precise issue that Mr. Briseno raises here:  whether the death penalty is constitutional in the face of the inherent risk that it might lead to the execution innocent people.  In *Herrera*, the Supreme Court rejected the argument that the "execution of a person who is innocent of the crime for which he was convicted" amounts to a violation of the Eighth Amendment or the Due Process Clause. Id. at 398.  In so doing, the Supreme Court noted that "[c]laims of actual innocence based on newly discovered evidence have never been held to state a ground for federal *habeas* relief absent an independent constitutional violation occurring in the underlying state criminal proceeding."  506 U.S. at 400. The Court reiterated its earlier holding "that '[d]ue process does not require that every conceivable step be taken, at whatever cost, to eliminate the possibility of convicting an innocent person.'"  Id. at 398-99 (*quoting Patterson v. New York*, 432 U.S. 197, 208 (1977)).

Moreover, relying on *Herrera*, the First and Second Circuits have rejected motions substantially similar to that which Mr. Briseno's advances here.  *See United States v. Sampson*, 486 F.3d 13, 27-28 (1st Cir. 2007); *United States v. Quinones*, 313 F.3d 49, 52, 69 (2d Cir. 2002);.  In so doing, the Second Circuit noted:

> With respect to the defendants' Fifth Amendment due process claim, we observe that *the language of the Due Process Clause itself recognizes the possibility of capital punishment.  Moreover, **the defendants' argument** that execution deprives individuals of the opportunity for exoneration is not new at all -- **it repeatedly has been made to the Supreme Court and rejected by the Supreme Court***.  Most notably, the Supreme Court expressly held in *Herrera v. Collins* ... that, while the Due Process Clause protects against government infringement upon rights that are so rooted in the traditions and conscience of our people as to be ranked fundamental, <u>there is no fundamental right to continued opportunity for exoneration throughout the course of one's life ... neither the Court of Appeals nor the District Court is authorized to disregard or overturn the Supreme Court's holding in *Herrera*</u>....

*Quinones*, 313 F.3d at 52 (emphasis provided; citations and quotations omitted); *and see* <u>id</u>. at 69 (FDPA cannot be deemed unconstitutional based on statistical or theoretical possibility that a defendant might be innocent); *accord United States v. Sablan*, 2006 WL 1028780, *13 (D. Colo. 2006).

In its 2007 decision in *Sampson v United States*, the First Circuit noted that various justices of the Supreme Court have, for years, openly acknowledged the risk that executing an innocent person is an inherent risk of capital punishment; yet, the Supreme Court has never held the death penalty unconstitutional on that basis.  486 F.3d at 27.  As is readily confirmed, in *Sampson*, the First Circuit – relying on *Herrera* – rejected an argument that is functionally-identical to the argument advanced by Mr. Briseno here.  <u>Id</u>. at 27-28.

The FDPA is an "informed, deliberative legislative action" that was drafted and enacted in the face of "repeated assertions from members of Congress that innocent people have been executed."  *Quinones*, 313 F.3d at 64-65.  To be sure, *Herrera* left open the possibility that in "a

particular instance of newly discovered, highly persuasive evidence of innocence, emerging at a time when no state remedy remains available," a federal court "might" have grounds to grant a writ of habeas corpus. Id. at 27-28. However, the Supreme Court noted, "[t]hat is a far cry . . . from saying that the FDPA is unconstitutional." Id. at 28; *and see United States v. Robinson*, 367 F.3d 278, 290-91 (5th Cir. 2004) (defendant cannot invalidate FDPA "on the ground that it might conceivably be applied to reach an unconstitutional result in some other defendant's case.")

Because the death penalty, with all of its potential foibles, was intentionally ratified in the Constitution, and because Mr. Briseno's emotional arguments have repeatedly been rejected by the Supreme Court and various Circuit Courts, Mr. Briseno's claims are without merit and should be denied.

**POINT SIX:** **The Government's statutory aggravating factors and its non-statutory aggravating factors (particularly future dangerousness) should be stricken and victim-impact evidence should not be permitted.** [*See* Motion, pages 109-140]

Before we turn to the allegation of Mr. Briseno's Motion in support of his Sixth Point, it is important to return momentarily to the list of statutory aggravating factors and the non-aggravating factors as to which the Government has provided Mr. Briseno notice in this case.

Aggravating Factors Identified by the Government

In its Notice of Intention to Seek a Sentence of Death [DE #968-1], and in the Fourth Superseding Indictment, the Government alerted Mr. Briseno of its intention to introduce evidence of the following factors:

1990

*Statutory Aggravating Factors*

1.      Mr. Briseno committed the offense after substantial planning and premeditation to

cause the death of a person.  *See* 18 U.S.C. § 3592(c)(9).

        (a)      The murder of Luis Ortiz [*see* NOI, page 2; 4th Superseding Indictment, Counts 9 & 10];

        (b)      The murder of Michael Sessum [*see* NOI, page 5; 4th Superseding Indictment, Counts 13 & 14];

        (c)      The murder of Miguel Mejias [*see* NOI, page 7; 4th Superseding Indictment, Counts 15 & 16];

        (d)      The murder of Harris Brown [*see* NOI, page 9; 4th Superseding Indictment, Counts 17 & 18];

        (e)      The murder of Miguel Colon [*see* NOI, page 11; 4th Superseding Indictment, Counts 19 & 20]; and

        (f)      The murder of Latroy Howard [*see* NOI, page 13; 4th Superseding Indictment, Counts 21 & 22].

2.      Mr. Briseno, in the commission of the offense, or in escaping apprehension for the

violation of the offense, knowingly created a grave risk of death to 1 or more persons in addition

to the victim of the offense.  *See* 18 U.S.C. § 3592(c)(5).

        (a)      The murder of Michael Sessum [*see* NOI, pages 4-5; 4th Superseding Indictment, Counts 13 & 14];

        (b)      The murder of Miguel Mejias [*see* NOI, page 7; 4th Superseding Indictment, Counts 15 & 16]; and

        (c)      The murder of Miguel Colon [*see* NOI, page 11; 4th Superseding Indictment, Counts 19 & 20].

3.      Mr. Briseno intentionally killed or attempted to kill more than one person in a

single criminal episode.  *See* 18 U.S.C. § 3592(c)(16).

        (a)      The murder of Michael Sessum [*see* NOI, page 5; 4th Superseding Indictment, Counts 13 & 14]; and

1991

     (c)     The murder of Miguel Mejias [*see* NOI, page 7; 4<sup>th</sup> Superseding Indictment, Counts 15 & 16].

*Non-Statutory Aggravating Factors*

1.     Mr. Briseno is a continuing danger to the lives and safety of other persons and is likely to commit criminal acts of violence in the future as evidenced by:

     (a)     A low potential for rehabilitation as demonstrated by repeated violent criminal acts;

     (b)     A willingness to take human life and a lack of remorse for his acts of violence and attempted acts of violence as demonstrated by statements that he made following these violent acts; and

     (c)     His stated desire to impose a rule requiring fellow members of the Imperial Gangsters to shoot rivals on sight.

[*See* NOI, page 3 (Ortiz murder); page 5 (Sessum murder); pages 7-8 (Mejias murder); pages 9-10 (Brown murder); page 12 (Colon murder); page 14 (Howard murder)]

2.     Mr. Briseno faces contemporaneous convictions for other criminal activity, including *inter alia* additional murders and attempted murders.  [*See* NOI, page 3 (Ortiz murder); page 5 (Sessum murder); page 8 (Mejias murder); page 10 (Brown murder); page 12 (Colon murder); page 14 (Howard murder)]

3.     Mr. Briseno has demonstrated allegiance to and active membership in the Imperial Gangsters, an organization falling within the definition of a criminal street gang, as set forth in 18 U.S.C. § 521(a).  [*See* NOI, page 3 (Ortiz murder); page 6 (Sessum murder); page 8 (Mejias murder); page 10 (Brown murder); page 12 (Colon murder); page 14 (Howard murder)]

4.     Mr. Briseno has caused injury, harm and loss to the victim and the victim's family and friends, as evidenced by the victim's personal characteristics and by the impact of his death upon the victim's family and friends.  [*See* NOI, page 3 (Ortiz murder); page 6 (Sessum murder);

1992

page 8 (Mejias murder); page 10 (Brown murder); page 12 (Colon murder); page 14 (Howard murder)]

**Mr. Briseno's General Challenges to Aggravating Factors**

For his Motion's Sixth Point, Mr. Briseno seeks dismissal of one the Government's statutory aggravating factors, to wit, "substantial planning and premeditation." [*See* Motion, pages 120-21] Additionally, Mr. Briseno seeks dismissal of non-statutory aggravating factors: "lack of remorse" [*see* id., pages 121-26],[23] "future dangerousness" [*see* id., pages 126-35], and "victim-impact" evidence. [*See* id., pages 135-40] It is only with regard to Mr. Briseno's claims as to "future dangerousness" that he seeks a hearing. [*See* Motion, page 126]

According to Mr. Briseno, these particular aggravating factors should be dismissed, because they are variously "vague, duplicative,[24] unascertainable, lacking [in] factual support,

---

[23] In this case, the Government did not identify "lack of remorse" as a separate, stand-alone, non-statutory aggravating factor. Rather, the "lack of remorse" is identified as one component of the "future dangerousness" non-statutory aggravating factor. [*See, e.g.*, NOI, page 3, ¶ 6-b) ("A willingness to take human life *and a lack of remorse* for his acts of violence and attempted acts of violence as demonstrated by statements that he made following these violent acts." (Emphasis provided.))]

[24] Under *United States v. McCullah*, 76 F.3d 1087, 1111 (10th Cir. 1996), and its progeny, aggravating factors are "duplicative" only when one "necessarily subsumes" the other. *United States v. Fell*, 531 F.3d 197, 235-36 (2nd Cir. 2008) (*quoting Cooks v. Ward*, 165 F.3d 1283, 1289 (10th Cir. 1998)) (denying claim that "continuing threat" aggravator impermissibly overlaps "prior conviction" aggravator). In other words, a jury would "necessarily have to find one in order to find the other." Id. at 236 (*quoting Johnson v. Gibson*, 169 F.3d 1239, 1252 (10th Cir. 1999)) (holding aggravating factors of "future dangerousness" and "prior felony conviction" are not duplicative). However, two factors are not duplicative merely because they are supported by the same evidence. *See United States v. Jones*, 527 U.S. at 399 (holding that "vulnerable-victim" and "victim impact" factors, which both relied on certain characteristics of the victim, "as a whole were not duplicative – at best, certain evidence was relevant to two different aggravating factors"); *United States v. Fell*, 531 F.3d at 236 (holding that non-statutory aggravating factors arguably overlap to a certain degree, but no one factor necessarily subsumes the other"); *United States v. Llera Plaza*, 179 F. Supp.2d at 490 (finding statutory and non-statutory aggravating factors were not duplicative). Here, because each of the Government's

or otherwise not relevant to a jury's determination of sentence." [*See* Motion, page 109]

Interestingly, although Mr. Briseno's Motion earlier rejected *any* legitimate role for aggravating

factors [*see* Motion, pages 57-96 (Points Two & Three)], he now reverses course and

enthusiastically embraces what he says is the "proper role of aggravating factors." [*See* id.,

pages 109-114]  Apparently, having converted to the Government's earlier positions and

authorities, Mr. Briseno now agrees, *inter alia*, that aggravating factors should "genuinely

narrow the class of persons eligible for the death penalty and must reasonably justify the

imposition of a more severe sentence on the defendant compared to others found guilty of

murder" [id., page 110 (*quoting Zant v. Stephens*, 462 U.S. at 877)], that they must be

"particularly relevant to the sentencing decision" [*id.* (*quoting Gregg v. Georgia*, 428 U.S. at

128)], and that they should assist the jury in distinguishing "those who deserve capital

punishment from those who do not." [Id., pages 110 (*quoting Arave v. Creech*, 507 U.S. at 474)]

Additionally, Mr. Briseno now agrees with and promotes the two constitutional tests in *Tuilaepa*

*v. California*, 512 U.S. 967, 972 (1994), that aggravating factors should meet:  (1) it cannot apply

to every defendant convicted of murder, but only to a rationally-selected sub-class of murderers,

and (2) they must be statutorily defined in a non-vague manner.  [*See* id., pages 110-11]  Citing

*Roper v. Simmons*, 543 U.S. 551, 568 (2005), and *Atkins v. Virginia*, 536 U.S. 304, 319 (2002),

Mr. Briseno says "the death penalty should be reserved for the worst of the worst."  [*See* id.,

page 111; *and see generally* id., pages 109-114]

---

aggravating factors serves to highlight a different characteristic of Mr. Briseno, no factor
necessarily subsumes another, even though some factors might rely on the same evidence or
facts.

After identifying certain proper roles for aggravating factors, Mr. Briseno cites a number of authorities for proposition that aggravating factors should not be "duplicative" (*i.e.*, double-counted; condemned twice for the same culpable act.)  [*See* Motion, pages 114-116]  *But cf.*, *United States v. Jones*, 132 F.3d 432 (5th Cir. 1998), *affirmed*, 527 U.S. 373 (1999) (jury's consideration of duplicative aggravating factors was harmless error.)  Mr. Briseno's Motion next urges the Court to require the Government to submit a proffer of evidence in support of its statutory and non-statutory aggravating factors.  [*See* Motion, pages 116-120]  Finally, as indicated above, Mr. Briseno advances challenges to specific aggravating factors:  (1) "substantial planning and premeditation" [*see* Motion, pages 120-21], (2) "lack of remorse" [*see* id., pages 121-26],[25] (3) "future dangerousness" [*see* id., pages 126-35], and (4) "victim-impact" evidence.  [*See* id., pages 135-40]

As shown below, none of Mr. Briseno's claims has merit.

### Fair and Ample Notice as to Aggravating Factors
### Has Already Been Provided

As an initial matter, it is important to note that the statute requires the Government to provide notice of its *intent* to seek the death penalty, but it does not require the Government to provide notice of its *evidence* in support of such factors.  *See* 18 U.S.C. § 3593 (a).  Rather, the statute merely requires the Government, at a reasonable time prior to trial, to provide:

> [A] notice ... stating that the government believes that the circumstances of the offense are such that, if the defendant is convicted, a sentence of death is justified under this chapter and the government will seek death.

---

[25]  As previously indicated, the Government did not identify "lack of remorse" as a separate, stand-alone, non-statutory aggravating factor.  Rather, the "lack of remorse" is identified as one component of the "future dangerousness" non-statutory aggravating factor.  [*See, e.g.*, NOI, page 3, ¶ 6-b)]

18 U.S.C. § 3593(a)(1).  In addition, sub-section (a)(2) of the statute requires the notice to "set[]

forth the *aggravating factor or factors* that the government, if the defendant is convicted,

proposes to prove as justifying a sentence of death."  Id. at § 3593(a)(2) (emphasis provided.)

Taken together, these provisions mandate only that the Government provide:  (a) notice that the

death penalty will be sought, and (b) a statement of the aggravating factors upon which the

Government will rely to justify a sentence of death.

This, the Government has already done.  As is readily confirmed, on July 1, 2014, the

Government filed and served Mr. Briseno with its Supplemental Notice of Intention to Seek the

Penalty of Death.  [DE # 968-1]  As indicated above, the Government's Notice specifically

informed Mr. Briseno of the three (3) statutory aggravating factors and the four (4) non-statutory

aggravating factors on which it intended to rely in seeking a sentence of death against him.  [*See*

NOI, pages 1-15; *see also* Fourth Superseding Indictment, pages 55-61]  As a result, Mr. Briseno

has plainly been (a) informed that the death penalty will be sought, and (b) provided with a

statement of the aggravating factors upon which the Government will rely to justify a sentence of

death.  *See* 18 U.S.C. §§ 3593(a)(1), (2).

Because the Government has clearly complied with the requirements of the statute, Mr.

Briseno's claim of inadequate notice cannot be sustained.  *See, e.g., Stirone v. United States*, 361

U.S. 212, 218 (1960).  Indeed, contrary to Mr. Briseno's view, the Government is ordinarily

neither required to preview nor to reveal the specific proof it will offer in support of the

aggravating factors.  *See United States v. Higgs*, 353 F.3d 281, 321 (4th Cir. 2003) ("[T]he

FDPA and the Constitution require that the defendant receive adequate notice of the aggravating

factor ... not notice of the specific evidence that will be used to support it."); *United States v.

Battle*, 173 F.3d 1343, 1347 (11th Cir. 1999) ("The Government is not required to provide

specific evidence in its Notice of Intent."); *United States v. LeCroy*, 441 F.3d 913, 921-30 (11th Cir. 2006) (defendant is not entitled to advance screening of the evidence that will support those factors at a capital sentencing hearing, other than the evidence he receives as part of the discovery process); *United States v Solomon*, 513 F. Supp.2d 528, 539 (W.D. Pa. 2007); *United States v. Gooch*, 2006 WL 3780781, at *21 (D.D.C. 2006) (denying motion to require government to provide factual basis for aggravating factors and distinguishing defendant's attempt to find out, not "what" Government will use, but "how" it will use it); *United States v. Sablan*, 2006 WL 1028780, *28 (D. Colo. 2006); *United States v. Mayhew*, 380 F. Supp.2d 936, 943 (S.D. Ohio 2005); *United States v. Taylor*, 316 F. Supp.2d 730, 738 (N.D. Ind. 2004); *United States v. Roman*, 371 F. Supp.2d 36, 44-45 (D.P.R. 2005) (in post-guilt phase hearing, "special circumstance[]" arose when Government conceded its penalty-phase evidence would be "practically coextensive with the evidence presented in the guilt phase;" allowing Court to pass on defendants' evidentiary sufficiency claims as to aggravating factors, most of which objections were denied); *United States v. Williams*, 2004 WL 2980027, *17 (S.D.N.Y. 2000).

Because the Government has provided fair and adequate notice to Mr. Briseno (1) that it intends to seek the death penalty against him, and (2) of each of the aggravating factors on which it intends to rely to justify a sentence of death, Mr. Briseno's claim is without merit and should be denied. Similarly, Mr. Briseno's request for a hearing on this issue is without merit or necessity and should be denied.[26]

---

[26] While continuing to vigorously deny that any other or further information is necessary or proper, should the Court determine that additional specificity is required, the Government believes that an evidentiary hearing is unnecessary, and that at most the provision of an outline should be directed. Moreover, for purposes of symmetrical fairness, if the Government was required to provide an outline of its evidence in support of its aggravating factors, the defendant should simultaneously be required to provide an outline in support of his mitigation evidence.

**Mr. Briseno's Pre-Trial Demand for Additional Evidence as to Both the Government's Statutory and Non-Statutory Aggravating Factors Should Be Denied**

Statutory Aggravating Factors

Turning specifically to Mr. Briseno's demand for additional evidence of the Government's statutory aggravating factor ("substantial planning and premediation") at this pre-trial stage, the Government urges that Mr. Briseno's request should be denied for three reasons. *First*, Mr. Briseno has no right to this information. He has already been provided with all of the notice and information to which he is entitled. *Second*, requiring the Government to provide this information prematurely, as Mr. Briseno requests, could subject Government witnesses (or their families) to harassment, intimidation, or worse. *Third*, as all agree: statutory aggravating factors are the functional equivalent of elements of the offense (and must be proven beyond a reasonable doubt to the jury.) As is readily confirmed, neither Rule 16, nor any other Rule, of the Federal Rules of Criminal Procedure require a pre-trial vetting of the Government's evidence of elements of the offense. Thus, Mr. Briseno's thinly-drawn argument of "inadequate notice" is actually nothing more than an attempt at an "end run" around the limitations imposed on all parties by the Rules.

It is for these reasons that the Courts have generally frowned upon requests such as these. *See, e.g., United States v. LeCroy*, 441 F.3d 913, 921-30 (11th Cir. 2006) (defendant is not entitled to advance screening of the evidence that will support those factors at a capital sentencing hearing, other than the evidence he receives as part of the discovery process); *United States v. Higgs*, 353 F.3d 281, 321 (4th Cir. 2003) ("[T]he FDPA and the Constitution require that the defendant receive adequate notice of the aggravating factor ... not notice of the specific evidence that will be used to support it"); *United States v. Battle*, 173 F.3d 1343, 1347 (11th Cir. 1999) ("The Government is not required to provide specific evidence in its Notice of Intent.")

For each of these reasons, Mr. Briseno's request for additional pre-trial evidence of the Government's statutory aggravating factors is without merit and should be denied.

<u>Non-statutory Aggravating Factors</u>

As with the Government's evidence of statutory aggravating factors, the Government's pleadings and the massive volume of discovery that has been provided to Mr. Briseno afford him fair and adequate notice as to the non-statutory aggravating factors. Although Mr. Briseno is correct that some district courts have directed the Government to provide additional information as to the non-statutory aggravating factors,[27] none of the Circuit Courts have sanctioned such an obligation, *see, e.g., United States v. Higgs*, 353 F.3d 281, 321 (4th Cir. 2003); *United States v. Battle*, 173 F.3d 1343, 1347 (11th Cir. 1999); *United States v. LeCroy*, 441 F.3d 913, 921-30 (11th Cir. 2006), and many district courts have rejected requests that are virtually identical to what Mr. Briseno raises here. *See, e.g., United States v. Cooya*, 2011 WL 5878382 (M.D. Pa. 2011) ("[d]efendants are not entitled to the Government's litigation playbook;" defendant's attempt to elicit the Government's theory of the case is not the proper basis for an informational outline); *United States v. O'Reilly*, 2008 WL 284003, *10 (E.D. Mich. 2008) (pretrial hearing "unnecessary"); *United States v. Solomon*, 513 F. Supp.2d 528, 539 (W.D. Pa. 2007); *United*

---

[27]  Although Mr. Briseno did not do so, many recent capital defendants base identical claims largely on the strength of the relief afforded in *United States v. Hammer*, 2011 WL 6020157 (W.D. Pa. 2011). However, the facts in *Hammer* are vastly different from those presented here. In *Hammer*, the defendant was originally prosecuted in 1998 for the 1996 murder of his cellmate. At the resulting 1998 trial, defendant Hammer pled guilty to the offenses charged and the jury imposed a sentence of death. Following years of post-conviction litigation, which included the discovery in 2005 of a *Brady* violation, a new penalty-phase sentencing hearing that was scheduled to begin in 2013 before a different District Judge, when the defendant's attorney made his request for additional information as to non-statutory aggravating factors. Because of the passage of time (some 15 years), and because of a defense claim that the victim's family no longer wished to cooperate with the Government, the new District Judge determined that "changed circumstances" justified the defense request for informational outlines. 2011 6020157 at *3. As is readily apparent, none of factors deemed material in *Hammer* are present here.

*States v. Sablan*, 2006 WL 1028780, *28 (D. Colo. 2006); *United States v. Gooch*; 2006 WL

3780781, *21 (D.D.C. 2006); *see also United States v. Taylor*, 316 F. Supp.2d 730, 738 (N.D.

Ind. 2004) (denying motion to strike notice of intent, noting that "determination as to whether

[aggravating] factor can be properly applied to either defendant must await factual development

at trial").[28]

As cogently observed by the District Court in *United States v. Cooya, supra*, Courts

generally "refuse to order such outlines where there is no danger of surprise at trial or a potential

sentencing phase." 2011 WL 5878382 at *2. Because Mr. Briseno has not demonstrated any

danger of surprise either at trial or at the potential sentencing phase, and because the four non-

statutory aggravating factors the Government has identified (to wit, future dangerousness;

contemporaneous convictions for other criminal activity; gang membership and activities; and

victim impact) are neither novel nor mysterious, Mr. Briseno's request for additional pre-trial

evidence of the Government's non-statutory aggravating factors should be denied.

The Government will now turn to Mr. Briseno's specific challenges to some of the

individual aggravating factors previously identified to him in the Government's Notice of

Intention to Seek a Sentence of Death. As demonstrated below, none of Mr. Briseno's claims

have merit and each of the aggravating factors challenged by Mr. Briseno is constitutionally

valid and are otherwise proper.

---

[28] In any event, an evidentiary hearing is unnecessary. *See, e.g., United States v. Edelin*, 134 F. Supp.2d 59, 75 (D.D.C. 2001) (denying motion for evidentiary hearing and relying on full discovery and required proffer before penalty phase.) Moreover, in no event should the Government be required to disclose its trial strategy or its theory of the case. *See., e.g., United States v. Cooya*, 2011 WL 5878382 at *2; *United States v. Solomon*, 513 F. Supp.2d at 535 (granting informational outline for victim impact, but noting Government not required to provide "a revelation of evidentiary detail or the Government's theory of its case.")

## None of Mr. Briseno's Individualized Challenges
## to the Aggravating Factors Has Merit

As previously indicated, Mr. Briseno specifically challenges one the Government's

statutory aggravating factors, to wit, "substantial planning and premeditation."  [*See* Motion,

pages 120-21][29]  Additionally, Mr. Briseno seeks dismissal of non-statutory aggravating factors:

"lack of remorse" [*see* id., pages 121-26],[30] "future dangerousness" [*see* id., pages 126-35], and

"victim-impact" evidence.  [*See* id., pages 135-40]   It is only with regard to Mr. Briseno's

claims as to "future dangerousness" that he seeks a hearing.  [*See* Motion, page 126]

Mr. Briseno's Specific Challenge to Statutory Aggravating Factor

The sole statutory aggravating factor challenged by Mr. Briseno's Motion is "substantial

planning and premeditation."  [*See* Motion, pages 120-21]  To be clear, 18 U.S.C. § 3592(c)(9)

provides:

> **Substantial planning and premeditation**.– The defendant committed the
> offense after substantial planning and premeditation to cause the death of a person
> or commit an act of terrorism.

[Id.]

In this case, the Government's NOI makes clear that this statutory aggravating factor

applies to all six murders committed by Mr. Briseno:[31]  (a) the murder of Luis Ortiz [*see* NOI,

---

[29]  Mr. Briseno does not challenge the propriety of the statutory aggravating factors for having
created a grave risk of death to 1 or more persons in addition to the victim of the offense, s*ee* 18
U.S.C. § 3592(c)(5), or for having intentionally killed or attempted to kill more than one person
in a single criminal episode.  *See* 18 U.S.C. § 3592(c)(16).

[30]  As previously indicated, the Government did not identify "lack of remorse" as a separate,
stand-alone, non-statutory aggravating factor.  Rather, "lack of remorse" is identified as one
component of the "future dangerousness" non-statutory aggravating factor.  [*See, e.g.*, NOI, page
3, ¶ 6-b)]

[31]  Here, unlike *Sampson*, 335 F. Supp.2d at 210, the Government did not limit its NOI for
"substantial planning" to the kill the specific victim.  Rather, the Government here repeatedly
provided notice with regard to each victim that Mr. Briseno's substantial planning and

page 2; 4<sup>th</sup> Sup. Indict., Counts 9 & 10]; (b) the murder of Michael Sessum [*see* NOI, page 5; 4<sup>th</sup> Sup. Indict., Counts 13 & 14]; (c) the murder of Miguel Mejias [*see* NOI, page 7; 4<sup>th</sup> Sup. Indict., Counts 15 & 16]; (d) the murder of Harris Brown [*see* NOI, page 9; 4<sup>th</sup> Sup. Indict., Counts 17 & 18]; (e) the murder of Miguel Colon [*see* NOI, page 11; 4<sup>th</sup> Sup. Indict., Counts 19 & 20]; and (f) the murder of Latroy Howard [*see* NOI, page 13; 4<sup>th</sup> Sup. Indict., Counts 21 & 22].

Here, Mr. Briseno's Motion says the "vice" of this aggravating factor is that "it requires jurors to fix the illusive and highly subjective point at which 'planning and premeditation' crosses an imaginary dividing line and becomes 'substantial planning and premeditation.'" [Motion, pages 120-21]  In Mr. Briseno's mind, "[t]his is a concept of such slippery and nuanced vagueness that the factor should be stricken." [Id., page 121]  Recognizing that his argument has repeatedly been rejected by other courts, *see, e.g., United States v. McCullah*, 76 F.3d 1087, 1110 (10th Cir. 1996), *cert. denied*, 520 U.S. 1213 (1997); *United States v. Bin Laden*, 126 F. Supp.2d 290, 297 n.7 (S.D.N.Y. 2001) (collecting cases),<sup>32</sup> Mr. Briseno is reduced to meekly observing that "[t]his issue is an issue of first impression in this circuit."  [Id.]

---

premeditation was "to cause the death of a person."  Hence, the Government's evidence of substantial planning will properly include evidence encompassing Mr. Briseno's broader scheme and substantial planning to commit murder of anyone perceived as a threat to the IGs.

<sup>32</sup>  "Substantial planning and premeditation," as included in the statutory aggravating factor of Section 3592(c)(9), means "a higher degree of planning than would have the words 'planning and premeditation' alone – *i.e*., more than the minimum amount sufficient to commit the offense."  *United States v. Barnette*, 390 F.3d 775, 786 (4th Cir. 2006) (*quoting United States v. Tipton*, 90 F.3d 861, 896 (4th Cir. 1996).  Indeed, the case law makes clear that the use of the word "substantial" to modify "planning and premeditation" does not render the aggravating factor unconstitutionally vague.  To the contrary, it conveys with "adequate precision a commonly understood meaning of 'considerable,' or 'more than merely adequate,'" thereby ensuring that the aggravating factor "served sufficiently to channel the jury's discretion in assessing eligibility for the death penalty." *United States v. Tipton*, 90 F.3d at 896; *see also United States v. McCullah*, 76 F.3d 1087, 1110-11 (10th Cir. 1996) (approving of the aggravating factor for same reasons); *United States v. Bourgeois*, 423 F.3d 501, 511 (5th Cir. 2005) (holding the substantial planning and premeditation aggravating factor "obviously

Despite the fact that Mr. Briseno's argument has apparently never found traction in any forum, even Mr. Briseno's hypothetical concerns cannot survive the harsh and solid facts facing him here. Indeed, Mr. Briseno's actions involve "a higher degree of planning than would have the words 'planning and premeditation' alone – *i.e.*, more than the minimum amount sufficient to commit the offense." *United States v. Barnette*, 390 F.3d 775, 786 (4th Cir. 2006) (*quoting United States v. Tipton*, 90 F.3d 861, 896 (4th Cir. 1996); *and see United States v. McCullah*, 76 F.3d 1087, 1111 (10th Cir. 1996), *cert. denied*, 520 U.S. 1213 (1997) ("'substantial' planning does not require 'considerably more than is typical' but rather it means 'considerable' or 'ample for the commission of the crime.'")

Mr. Briseno was a leader of the IG street gang. For years, Mr. Briseno promoted the intimidation and/or murder of all persons whom he viewed as challenges to IG's geographic and criminal dominance of the IGs. Together, during the period specified in the Fourth Superseding Indictment, the IGs killed fourteen people, with Mr. Briseno murdering six people and attempting to murder seven more people. As a leader and promoter of such IG practices, Mr. Briseno's planning and premeditation went on for years and necessarily far exceeded the "minimum amount sufficient to commit" any single murder. Hence, each of these murders was accomplished with "substantial planning." *See, e.g., United States v. McCullah*, 76 F.3d at 1111 (The "substantial planning" aggravating factor applies even when the eventual victim was not the intended victim, because the identity of the eventual victim "does not alter the fact that the killing of the victim was accomplished by the premeditated plan.")

---

narrow[s] the class of murderers who could be eligible for the death penalty because not every murder involves substantial planning or premeditation"); *United States v. McVeigh*, 944 F. Supp. 1478, 1490 (D. Colo. 1996) ("substantial is one of those everyday words having a common sense core meaning that jurors will be able to understand.")

Moreover, even if the individual murders committed by Mr. Briseno were viewed completely in isolation – which they should not be – Mr. Briseno's efforts were certainly "considerable" or "ample for the commission of the crime," *United States v. McCullah*, 76 F.3d at 1111, and "more than the minimum amount sufficient to commit the offense." *United States v. Barnette*, 390 F.3d at 786. For instance, in the double-murder of Mr. Mejias and Mr. Sessum, Mr. Briseno rejected Mr. Mejias' entre through an intermediary that Mr. Mejias and his pregnant girlfriend and infant be permitted to live in peace at the dwelling rented by his girlfriend; on the day of the murder, Mr. Briseno stood across the street from the dwelling for a considerable time; Mr. Briseno gathered up a second gunmen; Mr. Briseno (and the second gunman) lay in wait for the two victims; Mr. Briseno (and the second gunman) caught the two victims "slipping" (*i.e.*, unarmed) away from the dwelling and attempted to murder them; continued to try to murder the two unarmed victims as he pursued them back to the dwelling; chased the two victims onto the cartilage of the dwelling; murdered one of the unarmed victims in the rear of the dwelling; murdered the second unarmed victim on the front porch of the dwelling; and in the process, shot injured another a woman inside the dwelling and narrowly missed hitting the head of an infant inside the dwelling with a bullet.

Plainly, Mr. Briseno's conduct in this, and the other murders, was "considerable" or "ample for the commission of the crime," *United States v. McCullah*, 76 F.3d at 1111, and "more than the minimum amount sufficient to commit the offense." *United States v. Barnette*, 390 F.3d at 786.

Because Mr. Briseno's actions in this case readily qualify as "substantial planning and premeditation," Mr. Briseno's arguments to the contrary are without merit and should be denied.

Mr. Briseno's Specific Challenges to Non-Statutory Aggravating Factors

As previously indicated, Mr. Briseno challenges two of the Government's three non-statutory aggravating factors in this case: "future dangerousness" [*see* id., pages 126-35], and "victim-impact" evidence. [*See* id., pages 135-40]  Additionally, Mr. Briseno's Motion seeks dismissal of "lack of remorse" [*see* id., pages 121-26], -- which is not a separate, stand-alone, aggravating factor in this case, but is rather merely a component of the "future dangerousness" non-statutory aggravating factor. [*See, e.g.*, NOI, page 3, ¶ 6-b)]

1.    **Future Dangerousness.**  [Motion, pages 126-35]

In his Motion, Mr. Briseno says the non-statutory aggravating factor of "future dangerousness" should be stricken, because "[t]he term 'future dangerousness' is ... inherently vague and, as well, may be viewed by the jury as applying to all murderers.  Thus, a rational jury might conclude that anyone willing to take a life is always potentially a future danger.  Under such circumstances, the factor would not perform a constitutional narrowing function." [Motion, page 127]  Further, Mr. Briseno's Motion claims that "whether [Mr. Briseno] will or will not be 'rehabilitated' is not germane to the sentencing decision," and indeed, he says "the idea that 'rehabilitation' has anything to do with this case is patently absurd." [*See* id., page 129]  Finally, Mr. Briseno worries that predictions of future dangerousness are "notoriously unreliable" [*see* id., page 129], and he urges the Court, therefore, to strike this factor from the Government's Notice. [*See* id., pages 129-34][33]

The future dangerousness factor is well-understood, well-supported, and is as specific as the Constitution requires.  The Supreme Court has repeatedly approved consideration of a

---

[33]  To the extent Mr. Briseno may be making a duplicativeness claim as to the future dangerousness factor, as previously indicated, it is proper for the jury to facts or evidence to be considered by the jury in more than one aggravating factor provided each aggravating factor is related to a different characteristic of the defendant. *See, e.g., Jones v. United States*, 527 U.S. 373, 399-400 (1999).

defendant's future dangerousness in capital sentencings, as both statutory and non-statutory aggravating factors. *See Tuilaepa v. California*, 512 U.S. 967, 979 (1994); *Simmons v. South Carolina*, 512 U.S. 154, 162-64 (1994); *Barefoot v. Estelle*, 463 U.S. 880, 897-906 (1983); *Jurek v. Texas*, 428 U.S. 262, 272-73 (1976). Accordingly, federal courts have routinely approved the use of future dangerousness in capital cases. *See, e.g., United States v. Whitten*, 610 F.3d 158, 203 (2d Cir. 2010); *United States v. Basham*, 561 F.3d 302, 331 (4th Cir. 2009); *United States v. Corley*, 519 F.3d 716, 723 (7th Cir. 2008); *United States v. Fields*, 516 F.3d 923, 942 (10th Cir. 2008); *United States v. Bernard*, 299 F.3d 467, 482 (5th Cir. 2002); *Tillman v. Cook*, 215 F.3d 1116, 1130 (10th Cir. 2000).

<u>Jury Confusion & Vagueness</u>

Mr. Briseno's alleged concerns are of no moment. In his lifetime, Mr. Briseno has succeeded in accumulating an astounding resume of criminal mayhem and degradation resulting in six murders, seven attempted murders, and a host of other offenses.

At the risk of significant understatement, in the Government's view, there is no possibility that a reasonable jury could be mislead into believing that Mr. Briseno is merely a "run of the mill" murderer or that it might mistakenly sentence him as one.

<u>Low Rehabilitative Potential</u>

Similarly, Mr. Briseno is misguided in his claim that low rehabilitative potential "is not germane to the sentencing decision." [*See* <u>Motion</u>, page 129] To the contrary, this sub-factor is routinely held to be directly relevant, particularly in the future dangerousness context. *See, e.g., United States v. Umana*, 707 F. Supp.2d at 612, 636 (W.D.N.C. 2010) (holding defendant's potential for rehabilitation is "directly relevant to his future dangerousness); *United States v. Gooch*, 2006 WL 3780781, *29 (D.D.C. 2006) (same); *United States v. Mayhew*, 380 F. Supp.2d

936, 950 (S.D. Ohio 2005) (same); *United States v. O'Driscoll*, 203 F. Supp.2d 334, 345 (M.D. Pa. 2002).

<div align="center">Reliability</div>

Mr. Briseno's alleged concern about the jury's ability to reliably determine future dangerousness is misplaced. Mr. Briseno's claim that it is "impossible" to predict future behavior cavalierly suggests too high a standard. In *Jurek v. Texas*, 428 U.S. 262 (1976), the Supreme Court held that the jury's task in answering the question of future dangerousness is no different from the task performed countless times each day throughout the America system of criminal justice. 428 U.S. at 274. Consequently, under *Jurek*, the capital sentencing jury's prediction of future dangerousness is not only Constitutional, but it is essential. Id.; *see also Simmons v. South Carolina*, 512 U.S. at 162 (reaffirming central holding of *Jurek*); *California v. Ramos*, 463 U.S. 992, 1003 (1983).

Finally, studies similar or identical to those cited by Mr. Briseno, and his *Daubert* evidentiary claims, are routinely dismissed by federal courts as lacking in merit. *See., e.g., United States v. Umana*, 707 F. Supp.2d 621, 634-35 (W.D.N.C. 2010); *United States v. Troya*, 2008 WL 4327004 (S.D. Fla. 2008), *adopted sub nom, United States v. Varela*, 2008 WL 5056984 (S.D. Fla. 2008); *United States v. Cheever*, 423 F. Supp.2d 1181, 1213 (D. Kan. 2006); *United States v. Sablan*, 555 F. Supp.2d 1177 (D. Colo. 2006); *United States v. Rodriguez*, 2006 WL 487117, *5 (D.N.D. 2006); *United States v. Bin Laden*, 126 F. Supp.2d 290, 303-04 (S.D.N.Y 2001); *United States v. Cooper*, 91 F. Supp.2d 90, 111-12 (D.D.C. 2000); *United States v. Glover*, 43 F. Supp.2d 1217, 1227 (D. Kan. 1999); *United States v. Frank*, 8 F. Supp.2d 253, 279 (S.D.N.Y. 1998); *United States v. Spivey*, 958 F. Supp. 1523, 1534-35 (D.N.M. 1997).

For each of these reasons, Mr. Briseno's request to strike the non-statutory factor for future dangerousness should be denied.

<div align="center">Page **75** of **84**</div>

**1-A.    Lack of Remorse.**  [Motion, pages 121-126]

In support his claim that this (portion) of the aggravating factor of "future dangerousness" should be stricken, Mr. Briseno says that its inclusion "violates both Mr. Briseno's Fifth Amendment right to remain silent and his Sixth Amendment right to a fair trial, because it imposes an impermissible penalty upon the exercise of those rights."  [*See* Motion, page 121]   In addition, Mr. Briseno suggests that the "lack of remorse" factor violates his Eighth Amendment rights, because "there is a 'heightened need for reliability,'[34] and allowing the jury to place lack of remorse on the scale in favor of death creates an unacceptable risk that the defendant's sentence will not be reliably obtained...." [*See* id., page 125]

Mr. Briseno's Fifth & Sixth Amendment Rights Are Not Compromised

The Government recognizes Mr. Briseno's right to silence and trial without comment or impermissible inference.  *See Griffin v. California*, 380 U.S. 609, 615 (1965); *Doyle v. Ohio*, 426 U.S. 610, 611 (1976).  Consequently, it does not intend to cite Mr. Briseno's silence, his refusal to plead guilty, or his failure to testify at trial to establish his lack of remorse.  Instead, the Government intends to introduce, among other things, instances in which Mr. Briseno admitted his conduct to others, bragged about it, and encouraged and directed others to do the same. Following the various shootings and murders, Mr. Briseno expressed no remorse for his (or others') actions and the carnage he/they had wrought; to the contrary, Mr. Briseno spoke with pride of the shootings, and he continued to pursue goals of his IG gangster lifestyle and its drug enterprise, *inter alia*, from his jail cell.

Mr. Briseno's Motion does not, and cannot, show that the type of evidence proposed here is excludable or any threat to his constitutional rights.  *See Zant v. Stephens*, 462 U.S. 862, 886 n.

---

[34]  Mr. Briseno's Motion confuses the "heightened need for reliability," which may apply to *statutory* aggravating factors, but which does not apply to *non*-statutory aggravating factors.

22 (1983) ("Any lawful evidence which tends to show the motive of the defendant, his lack of remorse, his general moral character, and his predisposition to commit other crimes is admissible in aggravation, subject to the notice provisions of the statute." (*quoting with approval Fair v. State*, 268 S.E.2d 316 (Ga. 1980)); *United States v. Allen*, 247 F.3d 741, 790 (8th Cir. 2001), *vacated on other grounds*, 536 U.S. 953 (2002); *United States v. O'Reilly*, 545 F. Supp.2d 630, 638 (E.D. Mich. 2008) (collecting cases); *United States v. Sablan*, 555 F Supp.2d 1177, 1188 (D. Colo. 2006); *United States v. O'Driscoll*, 203 F. Supp.2d 334, 345 (M.D. Pa. 2002) (its "use is clearly permissible"); *United States v. Bin Laden*, 126 F. Supp.2d 290, 303-04 (S.D.N.Y. 2000) ("[L]ower courts have uniformly upheld future dangerousness as a non-statutory aggravating factor in capital cases under the [FDPA], including instances where such factor is supported by evidence of low rehabilitative potential and lack of remorse."); *United States v. Frank*, 8 F. Supp.2d 253, 279 (S.D.N.Y. 1998); *United States v. Davis*, 912 F. Supp. 938, 945 (E.D. La. 1996).

Accordingly, this Court should reject Mr. Briseno's attempt to preclude evidence of his lack of remorse in this case.

**2.      Victim Impact Evidence.**  [Motion, pages 135-40]

Mr. Briseno's Motion first claims that this non-statutory aggravating factor is unconstitutionally vague, lacks specifics, and is over-broad.  [*See* Motion, pages 135-37][35] Second, Mr. Briseno complains that victim impact evidence "does not sufficiently narrow the class of murderers for whom the death penalty is available."  [*See* id., page 137]  Third, Mr.

---

[35]  Mr. Briseno says the Court should strictly limit the scope of victim impact evidence to "the victim and the victim's family," and should not permit testimony from the victim's friends.  [*See* Motion, page 176]  Mr. Briseno's concern is misplaced.  In *United States v. Barrett*, 496 F.3d 1079 (10th Cir. 2007), the Court held that evidence under Section 3593(a) may include testimony from close friends as well as from family members.  Id., at 1099.

Briseno claims that victim impact evidence should be excluded under the Eighth Amendment, because it is "nothing more and nothing less than the harm implicit in any murder." [*See* id., page 137; *see generally* pages 137-140]   None of Mr. Briseno's three claims has merit.

<div align="center">Eighth Amendment</div>

In *Payne v. Tennessee*, 501 U.S. 808 (1991), the Supreme Court held that victim impact evidence comports with the Eighth Amendment.[36]  The fact that victim impact testimony may be highly emotional does not render it excludable or otherwise subject to limitation.  The *Payne* Court explained that victim impact evidence "is designed to show ... each victim's uniqueness as an individual human being," id. at 823, "is simply another form or method of informing the sentencing authority about the specific harm caused by the crime in question," and thus, "[i]n the majority of cases, ... serves entirely legitimate purposes."  Id. at 825.  Victim impact evidence is relevant to the jury's decision as to whether or not the death penalty should be imposed and there is no reason to treat such evidence differently than other relevant evidence is treated.  Id. at 827. The Court in *Payne* held that Due Process is only violated when victim impact evidence "is so unduly prejudicial that it renders the trial fundamentally unfair."  Id. at 825; *see also United States v. Chanthadara*, 230 F.3d 1237, 1274 (10th Cir. 2000) (affirming use of victim impact evidence and stating Court was unaware of any case from the Supreme Court or its Circuit in which sentence vacated because victim impact evidence was so unduly inflammatory as to

---

[36]  In *Payne v. Tennessee*, the Court approved of testimony from a grandmother about the effects on her young grandson of the murders of the boy's mother and sister. The witness testified that her grandson "cries for his mom.  He doesn't seem to understand why she doesn't come home. And he cries for his sister Lacie.  He comes to me many times during the week and asks me, Grandma, do you miss my Lacie.  And I tell him yes.  He says, I'm worried about my Lacie." 501 U.S. at 814-15.

render the proceeding fundamentally unfair);[37] *United States v. McVeigh*, 153 F.3d 1166, 1216

(10th Cir. 1998) (holding "poignant and emotional" testimony from 38 witnesses did not violate

due process.)

The FDPA, which was enacted after the Supreme Court's 1991 decision in *Payne v.*

*Tennessee*, explicitly allows the jury to consider victim impact evidence as a non-statutory

aggravating factor, once the Government proves the existence of at least one statutory

aggravating factor.  18 U.S.C. § 3593(a).  By its terms, the FDPA provides, *inter alia*:

> The factors for which notice is provided under this subsection may include
> factors *concerning the effect of the offense on the victim and the victim's*
> *family*, and *may include oral testimony*, a victim impact statement that
> identifies the victim of the offense and *the extent and scope of the injury*
> *and loss suffered by the victim and the victim's family, and any other*
> *relevant information*.

Id. (Emphasis provided).

In *United States v. Barrett*, 496 F.3d 1079 (10th Cir. 2007), the Court held that  Section

3593(a) "clearly suggests that Congress intended to permit the admission of any other relevant

evidence, including ... evidence giving the jury a glimpse of the victim's personality and the life

---

[37]  In *Chanthadara*, the jury heard testimony from the victim's husband and both of their children, ages 7 and 10.  The husband's testimony was amplified with numerous colored photographs of the victim while she was alive.  Both children ended their testimony in tears.  The jury also was allowed to take into the jury room physical evidence of the impact of the victim's death on her children.  Among these items were letters the children had written to their dead mother and a daily journal which described one child's loss.  In upholding the admission of the victim impact evidence in that case, the *Chanthadara* Court stated:

> We are unaware of any case before the Supreme Court or our circuit that has
> vacated a sentence because the victim impact evidence presented was so unduly
> inflammatory as to render the proceeding fundamentally unfair.

230 F.3d at 1274.

he led." 496 F.3d at 1099. The *Barrett* Court held that such evidence may include testimony not only from family members, but also close friends. Id.

Because the victim impact evidence directs the jury to the specific victims in this case and the impact on the relatives and friends of those victims caused by these murders, Mr. Briseno's Eighth Amendment claim is without merit.

<div align="center">Vagueness</div>

Mr. Briseno's vagueness claims ring hollow, as well. Common sense and Section 3593(a) provide the parties with all of the guidance that is necessary. Moreover, as is readily seen, the Government's Notice under this factor is both adequate and sufficient. *See, e.g., Jones v. United States*, 527 U.S. 373, 400-01 (1999) (rejecting vagueness claim where victim impact factor stated in its entirety, "Tracie Joy McBride's personal characteristics and the effect of the instant offense on Tracie Joy McBride's family constitute an aggravating factor for the offense); *United States v. Chanthadara*, 230 F.3d 1237, 1273 (10th Cir. 2000) (holding victim impact factor that stated defendant "caused permanent harm to the family of [the victim] by her murder which was committed in close proximity to her husband and two daughters" "sufficiently directed the jury to the individual circumstances of the case"); *see also United States v. Barrett*, 496 F.3d 1079, 1098 (10th Cir. 2007) (holding that Section 3593(a) only describes the "type of written notice," the Government must provide, but does not strictly limit the victim impact evidence that may be introduced).[38] Relying on the deferential standard of review for aggravating factors in *Tuilaepa v. California*, 512 U.S. 967 (1994), the Supreme Court in J*ones*

---

[38]  The Fourth Circuit's decision in *United States v. Barnette*, 211 F.3d 803, 817 (4th Cir. 2000), is also instructive. In *Barnette*, the Court held that a victim impact factor was not vague, despite the fact that it read in its entirety that "[t]he defendant caused harm to the [families] of [the victims] as a result of the impact of the killing[s] on the [families]." Id. at 817. The Court held that the "jury knew it was to consider the impact on the families that resulted from the deaths of [the victims] from the language of the factor alone." Id. at 818.

*v. United States*, 526 U.S. 227 (1999), concluded the jury should not have "had difficulty comprehending that [the victim impact] factor asked it to consider the victim's personal traits and the effect of the crime on her family."

Similarly, in Mr. Briseno's case, the victim impact factor sufficiently directs the jury to consider specific types of evidence and is not void for vagueness.

<div align="center">Overbreath</div>

Nor is the victim impact factor over-broad, as Mr. Briseno claims. This is so, because by its terms, the victim impact factor sufficiently limits the jury's discretion by directing it to consider "personal characteristics," "the impact of the [victims'] death[s]" and the "loss to the victim and the victims' family and friends." As is readily confirmed, the factor pertains only to evidence specific to this case and the effect these victims' deaths had on people who were close to them. As previously noted, *United States v. Barrett*, 496 F.3d 1079, 1099 (10th Cir. 2007), clearly condones the inclusion of friends, in addition to family members, as victim impact witnesses.

Hence, the victim impact factor is neither vague nor overbroad, and the Government's Notice to Mr. Briseno is both Constitutionally sound and proper.

For all of the reasons set forth above, none of Mr. Briseno's claims related to the victim impact evidence factor have merit and they should each, therefore, be denied.

**POINT SEVEN:**      **The death penalty is unconstitutional per se in all cases because it is a denial of due process and constitutes cruel and unusual punishment.** [*See* <u>Motion</u>, pages 140-143]

Redundant of his earlier claims, Mr. Briseno's final argument recites anew prior unpersuasive claims that the death penalty is unconstitutional in all cases, and as applied to him, because it is allegedly (1) "racist to its very core" [*see* Point One, above]; (2) has and will lead to the execution of innocent people [*see* Point Five]; (3) vests unacceptable levels of unreviewable

discretion in prosecuting authorities that produce irreconcilable inconsistencies [*see* Points One, Two & Three]; (4) lacks a principled basis for determining defendants who are sentenced to death from other defendants who are not [*see* Point Four]; and (5) because allegedly evolving standards of decency require the Court to declare the death penalty unconstitutional [Catch-all Argument].  [*See* <u>Motion</u>, page 140-41]  Although Mr. Briseno acknowledges that the death penalty has repeatedly been held constitutional [*see* <u>id</u>., page 140 (the "Supreme Court accepts the proposition that the death penalty … is constitutional")], and that his contrary claims have never sustained buoyancy, Mr. Briseno hurls shreds and shards of emotional rhetoric from a handful of dissenting judges, that he knows cannot sustain him.

Without belaboring the point, as established above, and as Mr. Briseno well knows, each of the claims he now makes are foreclosed to him.  *See, e.g., McCleskey v. Kemp*, 481 U.S. 279, 296-97, 300-02 (1987) (rejecting assorted claims that death penalty violates Constitution); *Gregg v. Georgia*, 428 U.S. 153, 169, 187 (1976) (lead opinion) (the death penalty is neither cruel nor unusual punishment; capital punishment is an essential function as an expression of society's moral outrage at particularly offensive conduct, <u>id</u>. at 207, 226 (White, J., concurring)); *United States v. Quinones*, 313 F.3d 49, 61 (2d Cir. 2002) ("the Supreme Court expressly held in *Gregg* that, to the extent our standards fo decency have evolved since the enactment of the Constitution, they still permit punishment by death for certain heinous crimes such as murder.")

Accordingly, Mr. Briseno's final argument is also without merit and should similarly be denied.

**Conclusion**

For each of the independent reasons set forth above, all of the claims set forth in Mr.

Briseno's Motion to Strike Notice of Aggravating Factors is without merit.  Because none of the

claims of Mr. Briseno's Motion has merit, the relief sought in Mr. Briseno's Motion should be,

in all things, denied.


<div style="text-align: right">

Respectfully submitted,

DAVID CAPP
UNITED STATES ATTORNEY


s/  *David J. Nozick*

David J. Nozick
Assistant U.S. Attorney
5400 Federal Plaza
Suite 1500
Hammond, IN 46320
Tel. (219) 937-5655
www.david.nozick@usdoj.gov


s/  *Bruce R. Hegyi*

Bruce R. Hegyi
Trial Attorney
Capital Case Section
Criminal Division
United States Department of Justice
1331 F Street, N.W., Third Floor
Washington, D.C.  20530
Tel. (202) 616-4582
Cell (703) 536-4774
www.bruce.hegyi@usdoj.gov

</div>

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this date, I electronically filed the foregoing document and accompanying exhibits with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record for defendant Juan Briseno.

s/ *Bruce R. Hegyi*

Bruce R. Hegyi
Trial Attorney

IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 10-3029-01-CR-S-GAF |
| | ) | |
| WESLEY PAUL COONCE, JR., | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

Now pending before the Court are several motions filed by Defendant Coonce relating to the superseding indictment, certain aspects of the Notice of Intent to Seek Death Penalty, and the constitutionality of the Federal Death Penalty Act.

On February 24, 2014, United States Magistrate Judge John T. Maughmer issued his Report and Recommendation (Doc. #513). On March 10, 2014, Defendant Coonce filed his Objections to the Report and Recommendation (Doc. #547).

Upon careful and independent review of the pending motions and suggestions in support thereof, Defendant's objections to the Report and Recommendation, as well as the applicable law, this Court hereby adopts and incorporates as its own Opinion and Order the Report and Recommendation of United States Magistrate Judge John T. Maughmer.[1]

Accordingly, it is hereby ORDERED as follows:

(1) Defendant's Motion to Declare the Federal Death Penalty Scheme Unconstitutional and Preclude the Government From Seeking a Death Penalty Due to the Failure to Meet

---

[1] On page 4 of the Report and Recommendation (Doc. #513), in the fourth line of the first paragraph, there is a typographical error. The sentence states, in part: . . . the Government contends that Hall . . . . The Court recognizes that this is a typographical error and it should have read . . . the Government contends that Coonce. . . .

Minimum Constitutional Requirements Set Forth in *Furman v. Georgia* and Its Progeny, (Doc.

386) is DENIED.

(2) Defendant Coonce's Motion to Dismiss the "Special Finding" From the Superseding

Indictment, and to Strike the Notice of Intent to Seek the Death Penalty, (Doc. 389) is DENIED.

(3) Defendant's Motion to Dismiss and Strike the Future Dangerousness Non-Statutory

Aggravating Factor and to Exclude Evidence In Support Thereof, and Request a Hearing, (Doc.

390) is DENIED.

(4) Defendant's Amended Motion to Preclude the Use of the Non-Statutory Aggravating

Factor of Future Dangerousness Based on Numerous Post-*Jurek* Studies Establishing That As It

Is So Unreliable, Speculative, Arbitrary, and Inaccurate ("Chance-Level Performance" of Capital

Juries in Predicting the Future Dangerousness of Capital Defendants) as to Render It

Unconstitutional On Its Face and as Applied to Defendant Wesley Paul Coonce, Jr., (Doc. 406)

is DENIED.

(5) Motion, with Incorporated Memorandum To Strike the Notice of Aggravating Factors

(Doc. 391) is DENIED.

s/ Gary A. Fenner
GARY A. FENNER, JUDGE
UNITED STATES DISTRICT COURT

DATED:  March 14, 2014

2

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA—FRESNO DIVISION

* * *

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) ) | 1:08-CR-00259-PMP |
| | ) ) | |
| v. | ) ) | |
| | ) | **ORDER** on Defendant James Ninete Leon |
| JOSEPH CABRERA SABLAN and JAMES | ) | Guerrero's Motion to Strike or Modify the |
| NINETE LEON GUERRERO, | ) | Notice of Intent to Seek the Death Penalty |
| | ) | (Doc. #595) |
| Defendants. | ) | |
| | ) | |

Before the Court for consideration is Defendant James Ninete Leon Guerrero's Motion to Strike or Modify the Notice of Intent to Seek the Death Penalty (Doc. #595) filed May 15, 2013. Defendant Joseph Cabrera Sablan has Joined in Defendant Leon Guerrero's Motion (Doc. #603). The Government filed a Response (Doc. #618) on June 14, 2013. Defendant Leon Guerrero did not file a Reply. The Court heard arguments from counsel at a Hearing (Doc. #742, #752) in Fresno on October 24, 2013.

**I. BACKGROUND**

The parties are familiar with the facts of the case and the Court will not repeat them here except where necessary. Defendants are charged with a three-count Indictment (Doc. #1) for the murder of Correctional Officer Jose V. Rivera. In addition to the three counts, the Indictment lists eleven Special Findings as to Defendant Leon Guerrero. (Id.) The Special Findings serve to meet the mental state and aggravating factors required by the Federal Death Penalty Act ("FDPA"). The Government filed a notice of intent to seek the death penalty (Doc. #54). After the filing of Defendant Leon Guerrero's present Motion, on July 16, 2013, the Court granted the Government leave (Doc. #664) to file an amended notice of intent to seek the death penalty (Doc. #589),

substantively the same as the original.  Defendant Leon Guerrero did not seek leave to amend his Motion to address any changes in the amended notice, the Court will treat his present Motion as addressing the amended notice.

Defendant Leon Guerrero moves to strike or modify the Notice of Intent to Seek the Death Penalty on six grounds.  First, he argues the Supreme Court's ruling in Ring v. Arizona, 536 U.S. 584 (2002), has rendered the FDPA unconstitutional.  Second, he argues the Special Findings should be stricken because they were not obtained according to the Fifth Amendment's requirements for indictments.  Third, Defendant Leon Guerrero argues the FDPA is unconstitutional because it presents a likely incomprehensible process to jurors.  Fourth, he argues the death penalty is unconstitutional because of the risk of executing the innocent.  Fifth, he argues two of the special findings should be dismissed because they are unconstitutionally vague and overbroad.  Sixth, Defendant Leon Guerrero moves the Court to declare the death penalty unconstitutional because it violates the Eighth Amendment prohibition on cruel and unusual punishment.

The Government responds that both the FDPA and the death penalty are constitutional.  The Government also contends the Notice of Intent to Seek to the Death Penalty and the special findings comply with legal precedent and the Fifth Amendment.

**II. DISCUSSION**

**1. Constitutionality of the FDPA**

Defendant Leon Guerrero argues the FDPA is facially unconstitutional in light of Ring v. Arizona, in which the Supreme Court held "aggravating factors operate as 'the functional equivalent of an element of a greater offense'" and must be presented to a jury under the Sixth Amendment.  536 U.S. at 585 (2002) (quoting Apprendi v. New Jersey, 530 U.S. 466, 494 n.19 (2000)).  Defendant Leon Guerrero argues the Ring holding couples with the requirement in Jones v. United States, 526 U.S. 227, 251-52 (1999), that the elements of a federal offense must be charged in the Indictment, presented to a jury, and proved beyond a reasonable doubt.  He asserts this combination creates a new capital murder offense that contains elements not authorized by Congress.  He further argues that the FDPA does not allow the presentation of aggravating factors

2

to a grand jury, thus presenting the aggravating factors to a grand jury is unconstitutional and contrary to Congressional intent.

Defendant Leon Guerrero also argues contrary decisions from Courts of Appeals have been wrongly decided because they do not address the principles established by United States v. Jackson, 390 U.S. 570 (1968) (holding the Federal Kidnapping Act, which provides for the death penalty only upon recommendation from the jury, does not authorize convening of a special jury to consider the death penalty after the defendant pleads guilty or is tried before a judge). Defendant Leon Guerrero argues Jackson prohibits courts from interpreting the FDPA to allow the presentation of aggravating factors to a grand jury. He further argues that post-Apprendi drug-quantity cases, severability analysis, and constitutional avoidance cannot "save the FDPA."

The Government concedes that lower courts have held that the Fifth Amendment, in light of Ring, requires a grand jury to find the FDPA intent element and aggravating factors. However, the Government contends the Department of Justice's practice of requiring federal prosecutors to obtain special findings in the Indictment satisfies this requirement. The Government further argues the presentation of aggravating factors to the grand jury is not prohibited by the FDPA, does not violate Congressional intent, and has been correctly upheld by courts.

Defendant Leon Guerrero's arguments have been considered and rejected by several Circuits. See United States v. Sampson, 486 F.3d 13, 20-22 (1st Cir. 2007) ("[The Defendant] contends both that there is a conflict between the FDPA and Ring, and that curing the problem would require the rewriting of the statute, which is a legislative function. This contention is unpersuasive. The courts that have considered this thesis uniformly have rejected it."); United States v. Brown, 441 F.3d 1330, 1367 (11th Cir. 2006), cert. denied, 549 U.S. 1182 (2007) ("The FDPA is not facially unconstitutional. Nothing prohibits the government from presenting aggravating factors to a grand jury and then, if appropriate, charging those aggravating factors in the indictment."); United States v. Allen, 406 F.3d 940, 949 (8th Cir.2005); United States v. Barnette, 390 F.3d 775, 788–90 (4th Cir.2004), vacated on other grounds, 546 U.S. 803 (2005); United States v. Robinson, 367 F.3d 278, 290 (5th Cir.2004).

The Court rejects Defendant Leon Guerrero's contention that the Circuit Courts' decisions

3

are flawed because they failed to address United States v. Jackson and the separation of powers doctrine. In Jackson, the Court rejected the government's interpretation of the Federal Kidnapping Act, which required a death sentence upon the recommendation of the jury, to grant authority to the judge to either set aside the jury's recommendation or to convene a special jury for sentencing purposes when a defendant pleaded guilty. United States v. Jackson, 390 U.S. 570, 572-76 (1968). Of the opinions cited above, only Sampson references the Jackson decision. 486 F.3d at 22 (holding Jackson inapposite to an FDPA case because it does "not require us to 'create from whole cloth a complex and completely novel procedure.' . . . [T]he role of the grand jury in charging the elements of an offense has long been established. Here, the government honored that role; it simply presented the grand jury with evidence of possible aggravating factors.") FDPA cases are distinguishable from Jackson because the FDPA is silent on the role of the grand jury in charging aggravating factors and the use of the grand jury to find those factors does not violate any statutory requirement or conflict with Congressional intent. See, Fed. R. Civ. P. 7 (requiring the Indictment to contain the "essential facts constituting the offense charged"). Because the Court finds the application of the FDPA in this case to be constitutional, it need not address the use of post-Apprendi drug-quantity cases, severability analysis, or constitutional avoidance.

**2. Special Findings and the Fifth Amendment**

Defendant Leon Guerrero argues the Government has failed to obtain an Indictment in compliance with the Fifth Amendment. He argues the Government did not inform the grand jury of a potential death penalty and that the Indictment does not indicate the grand jury intended to return an Indictment charging a capital offense. He further contends the Indictment does not allege the aggravating factors sufficiently outweigh the mitigating factors in this case to justify capital punishment. The Government responds that it informed the grand jury that this is a death penalty eligible case despite not being required to do so. The Government also contends the Fifth Amendment does not require the grand jury be informed of the punishments a defendant may face or that the grand jury find the aggravating factors outweigh the mitigating factors.

An Indictment is constitutional where it, "first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables

4

him to plead an acquittal or conviction in bar of future prosecutions for the same offense." Hamling v. United States, 418 U.S. 87, 117 (1974). The weighing of aggravating and mitigating factors is the role of the sentencing authority and does not need to be charged in the Indictment. See United States v. Purkey, 428 F.3d 738, 749 (8th Cir. 2005) ("[I]t makes no sense to speak of the weighing process mandated by 18 U.S.C. § 3593(e) as an elemental fact for which a grand jury must find probable cause"). Rather the weighing process provides a procedure for the jury to formulate an individualized determination regarding "whether the defendant should be sentenced to death, to life imprisonment without possibility of release or some other lesser sentence." Id. at 750 (quoting § 3593(e)(3)).

Here, the Government informed the grand jury that the case is a "death penalty case." (Grand Jury Trans. at 4, line 16). The Indictment contains the elements of the three charged offenses and Defendant Leon Guerrero the opportunity to plead. (Indictment, Doc. #1). That the weighing of aggravating and mitigating factors is not part of the Indictment is inconsequential.[1] The Indictment therefore complies with the constitutional requirements imposed by the Fifth Amendment.

### 3. FDPA Incomprehensible to Jurors

Defendant Leon Guerrero next argues the FDPA does not provide a structure for jurors to make a reasoned choice between a life sentence and the death penalty. He argues that research demonstrates the FDPA is incomprehensible to jurors and that Supreme Court death penalty decisions are based on unfounded assumptions. In support of his argument, Defendant Leon Guerrero cites several studies in various journals that purport to demonstrate juror confusion about the procedures set by the FDPA. The studies are based on interviews with capital-case jurors in at least fourteen different states. The Government responds that Defendant Leon Guerrero fails to establish the FDPA is unconstitutional and that the research studies are not binding on the Court.

Defendant Leon Guerrero bears the burden of establishing that the FDPA is unconstitutional. See, e.g., Lujan v. G & G Fire Sprinklers, Inc., 532 U.S. 189, 198 (2001). "A facial challenge to a legislative Act is . . . the most difficult challenge to mount successfully, since the challenger must establish that no set of circumstances exists under which the Act would be

---

[1] Indeed, defendants are not able to present mitigating evidence to a grand jury. Therefore requiring the weighing of mitigating factors would be difficult, if not impossible.

2023

valid . . . ." United States v. Salerno, 481 U.S. 739, 745 (1987).  A statute must be construed to give it constitutional effect to avoid raising serious constitutional problems.  See, e.g., INS v. St. Cyr, 533 U.S. 289, 299–300 (2001).  There is also a basic presumption that juries will follow the instructions issued by the Court.  Marshall v. Lonberger, 459 U.S. 422, 438 n.6 (1983) (quoting Parker v. Randolph, 442 U.S. 62, 73 (1979)).  This presumption is overcome only if there is an "'overwhelming probability' that the jury will be unable to follow the court's instructions . . . and a strong likelihood that the effect of the evidence would be 'devastating' to the defendant."  Greer v. Miller, 483 U.S. 756, 766 n.8 (1987) (citations omitted); see also United States v. Stone, 9 F.3d 934, 938 (11th Cir. 1993); United States v. Perrone, 936 F.2d 1403, 1410 (2d Cir. 1991).

Other courts have addressed similar arguments to those of Defendant Leon Guerrero and have consistently rejected his position.  See, e.g., United States v. Taylor, 635 F. Supp. 2d 1243, 1246-47 (D.N.M. 2009).  In United States v. Sablan, the Court found the argument to be unsupported:

> Defendant essentially asserts that the FDPA's penalty scheme is so confusing that a jury will never be able to comprehend the concepts of aggravating and mitigating factors, regardless of the instructions given, and will never be able to make a reasoned decision concerning whether to impose death sentence or a life sentence without the possibility of parole.  I find no support for this assertion.  Similar arguments, based on some of the same studies cited by Defendant in this case, have been rejected by other courts . . . .

2006 WL 1028780, *7 (D.Colo. 2006).  The Sablan Court described the studies cited by the defendant in that case as "data gathered from interviews with capital-case jurors in California, North Carolina, Oregon and other states . . ." and that none of the studies dealt specifically with the FDPA.  Id. at *7.

This Court agrees with the other courts that have addressed and rejected the position taken by Defendant Leon Guerrero on whether the FDPA is incomprehensible.  See United States v. Mikos, No. 02 CR 137–1, 2003 WL 22110948, at *17–19 (N.D.Ill., Sept. 11, 2003) ("[t]here is no justification prior to trial for this court to hold that the sentencing jury will be unable to comprehend the provisions of the FDPA or the instructions provided by the court or counsel"); United States v. Regan, 228 F.Supp.2d 742, 746 (E.D. Va. 2002); United States v. Llera Plaza, 179 F.Supp.2d 444, 450 (E.D. Pa.2001) (studies cited "do not establish that the concepts of aggravating and mitigating factors as used in the FDPA bear such a degree of intrinsic 'incomprehensibility' as

to render them incapable of clarification through adequate jury instructions"). Accordingly, Defendant Leon Guerrero's argument that the FDPA is unconstitutional because it is incomprehensible to jurors has no merit. Defendant Leon Guerrero's request for a merits hearing to further argue this point is denied.

### 4. Risk of Executing the Innocent

Defendant Leon Guerrero argues the continued use of the federal death penalty will lead to the execution of of innocent people and therefore should be declared unconstitutional. He relies on statistics of recent exonerations of inmates on death row as well as the findings of the district court in United States v. Quinones, 205 F.Supp.2d 256 (S.D.N.Y. 2002), which was overruled by the Second Circuit. See, United States v. Quinones, 313 F.3d 49, 68-69 (2d Cir. 2002), cert. denied, 540 U.S. 1051 (2003) ("[T]he District Court erred in recognizing a [fundamental] right of an innocent person not to be deprived, by execution, of the opportunity to demonstrate his innocence and we likewise would err if we were to ignore or reject the jurisprudence of the Supreme Court on this subject. In sum, if the well-settled law on this issue is to change, that is a change that only the Supreme Court or Congress is authorized to make") (quotation omitted). The Quinones court relied on United States v. Herrera, in which the Supreme Court specifically held that the death penalty is not per se unconstitutional while again recognizing the fact that innocent individuals might be executed under the inherent fallibility of any system of justice. 506 U.S. 390, 416–20 (1993).

Defendant Leon Guerrero contends the holdings in Quinones and Herrera do not foreclose the substantive or procedural due process bases for finding the FDPA unconstitutional. However, those cases make clear the Court cannot ignore established precedent. The Court therefore declines to find the FDPA unconstitutional because of the risk of executing the innocent.

### 5. Modifying/Striking the Aggravating Factors

Defendant Leon Guerrero argues two of the statutory aggravating factors alleged against him should be stricken. First, Defendant Leon Guerrero argues the "especially heinous, cruel or depraved manner" ("EHCD") factor under 18 U.S.C. § 3592(c)(6) is unconstitutionally vague and, per his Ring argument above, a sub-element of the unenacted federal capital murder offense. Defendant Leon Guerrero also argues the Government has failed to provide an adequate factual

basis for the EHCD factor. The Court has already addressed these arguments in its Order (Doc. #682) dated August 15, 2013, in which the Court denied Defendant Sablan's motion to strike the EHCD aggravating factor on the same grounds, and will not repeat its analysis here. The Court therefore will neither strike the EHCD aggravating factor nor order the Government to provide additional evidence regarding this factor.

Second, Defendant Leon Guerrero argues the "substantial planning and premeditation" factor under § 3592(c)(9) should be stricken because it is unconstitutionally vague and overbroad. Defendant Leon Guerrero's argument is puzzling because this factor was not alleged in the Notice of Intent to Seek the Death Penalty (Doc. #54) or the Amended Notice of Intent to Seek the Death Penalty (Doc. #589). The Court therefore need not address this irrelevant argument.

**6. Death Penalty As Cruel and Unusual**

Defendant Leon Guerrero argues the Court should declare the death penalty unconstitutional as cruel and unusual punishment and a per se denial of due process in all cases. He recognizes that the death penalty may remain part of the law of the land for many years, but maintains that it is unconstitutional for five reasons: (1) it is racist; (2) it has led, and will lead, to the execution of innocent individuals; (3) the process places an unacceptable level of discretion in the prosecutor; (4) there is no principled basis for distinguishing between those sentenced to death and those who are not; and (5) evolving standards of decency have rendered the death penalty inconsistent with the Eighth Amendment.

Existing legal precedent makes clear that the death penalty is not per se cruel and unusual punishment in violation of the Eighth Amendment. See McCleskey v. Kemp, 481 U.S. 279, 300-03 (1987); Gregg v. Georgia, 428 U.S. 153, 168-87, 177-78, 183 (1976) (the death penalty is not per se cruel and unusual punishment in violation of the Eighth Amendment); United States v. Jones, 132 F.3d 232, 242 (5th Cir. 1998), aff'd, 527 U.S. 373 (1999). To establish a race-based claim, Defendant Leon Guerrero must show he is being prosecuted with "discriminatory purpose" and that he suffers a "discriminatory effect" as a result, with "evidence specific to his own case." McCleskey, 481 U.S. at 292. Defendant Leon Guerrero's arguments as to cruel and unusual punishment and per se unconstitutionality do not persuade the Court to disregard or contradict well-established cases.

**III.  CONCLUSION**

**IT IS THEREFORE ORDERED** that Defendant James Ninete Leon Guerrero's Motion to Strike or Modify the Notice of Intent to Seek the Death Penalty (Doc. #595), as Joined by Defendant Joseph Caberera Sablan (Doc. #603), is **DENIED**.

Dated:  January 15, 2014

_____
HONORABLE PHILIP M. PRO
U.S. DISTRICT COURT JUDGE

2027

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA—FRESNO DIVISION

* * *

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) ) ) | 1:08-CR-00259-PMP |
| v. | ) ) ) ) | |
| JOSEPH CABRERA SABLAN and JAMES NINETE LEON GUERRERO, | ) ) ) | **ORDER** on Defendant Joseph Cabrera Sablan's Motion to Declare the Federal Death Penalty Act Unconstitutional (Doc. #703) |
| Defendants. | ) ) | |

Before the Court for consideration is Defendant Joseph Cabrera Sablan's Motion to Declare the Federal Death Penalty Act Unconstitutional (Doc. #703) filed September 9, 2013.  The Government filed a Response (Doc. #728) on October 10, 2013.  Defendant Sablan filed a Reply (Doc. #748) on November 12, 2013.

**I.  BACKGROUND**

The parties are familiar with the facts of the case and the Court will not repeat them here except where necessary.  Defendant Sablan is charged with a three-count indictment for the murder of Correctional Officer Jose V. Rivera.  In addition to the three counts, the Indictment (Doc. #1) contains eleven Special Findings as to Defendant Leon Guerrero.  (Id.)  The Special Findings serve to meet the mental state and aggravating factors required by the Federal Death Penalty Act ("FDPA").  The Government filed an amended notice of intent to seek the death penalty (Doc. #589) on May 14, 2013.

Defendant Sablan moves the Court to declare the FDPA unconstitutional under the Fifth and Eighth Amendments and bar application of the death penalty in this case.  He argues the FDPA is applied in an arbitrary and capricious manner and that it fails to satisfy the narrowing function

required by the Eighth Amendment. He further argues the federal death penalty is unconstitutional because there is no principled basis for distinguishing cases in which the death penalty has been imposed from cases in which the death penalty is not imposed.

The Government responds the FDPA is constitutional and contends the statistics proffered by Defendant Sablan do not stand for the proposition that the death penalty is applied arbitrarily and capriciously, in general and in this case. The Government further contends Defendant Sablan fails to identify the nuances of each case and that the process for determining whether the death penalty should be imposed is discretionary. The Government argues Defendant Sablan failed to show decision makers in this case acted with purposeful discrimination on the basis of race, region, or gender.

Defendant Sablan replies that the FDPA operates in a manner that conflicts with the Constitution and that the "vast difference between the number of cases that are legally death-eligible on their facts" and the cases in which the death penalty is sought, "suggests arbitrariness." (Def.'s Reply (Doc. #748) at 5.) He further argues it is appropriate to consider the Attorney General's process for authorizing prosecutors to seek the death penalty. Defendant Sablan requests an evidentiary hearing.

## II. DISCUSSION

### A. Arbitrary and Capricious Operation

Defendant Sablan moves the Court to declare the federal death penalty unconstitutional or bar its application in this case on the grounds that it operates arbitrarily and capriciously in violation of the Fifth and Eighth Amendments under Furman v. Georgia, 408 U.S. 238 (1972). Defendant Sablan avers the federal death penalty is currently applied as arbitrarily as the statute struck down in Furman and argues the FDPA fails to satisfy the Eighth Amendment's narrowing requirement and that the Government pursues the death penalty infrequently and thus arbitrarily. In support of his arguments, Defendant Sablan submits data from the Department of Justice and the Federal Death Penalty Resource Counsel covering all federal homicide cases between 1995 and 2006. According to the Defendant's data and calculations, the Government reviewed forty-seven percent of those cases to determine whether they were death eligible. Of those cases reviewed,

2

fifteen percent were selected for capital prosecution and the jury returned a death sentence in fourteen percent of cases in which it was sought.

Defendant Sablan also argues the federal death penalty is applied in a racially biased manner and submits the Declarations of Kevin McNally, Director of the Federal Death Penalty Resource Counsel Project ("McNally Declaration") and Dr. Lauren Cohen Bell, Associate Professor of Political Science and Associate Dean at Randolph-Macon College ("Bell Declaration"). The McNally Declaration presents data collected on the federal death penalty since 1988, including the frequency with which the death penalty has been sought and imposed, the race of defendants for whom capital prosecution has been authorized, the frequency of capital prosecution on a regional basis, and the race and gender of victims. According to the McNally Declaration, 465 cases out of 2,886 defendants eligible for the death penalty, or sixteen percent, were selected for capital prosecution under the FDPA. Of those cases selected, sixty-eight defendants have received death sentences and three defendants have been executed. The McNally Declaration also provides data as to the race and gender of victims, namely that a higher death sentencing rate exists when the victim is a white female, an assertion also supported by the Bell Declaration. Finally, the McNally Declaration provides data on the race of defendants and the number of capital prosecutions in each state, plus the District of Columbia, since 1988.

In Furman, the Supreme Court struck down the death penalty laws at issue in that case as cruel and unusual punishment because of their inequitable and discriminatory application. Id. at 240. "The high service rendered by the 'cruel and unusual' punishment clause of the Eighth Amendment is to require legislatures to write penal laws that are evenhanded, nonselective, and nonarbitrary, and to require judges to see to it that general laws are not applied sparsely, selectively, and spottily to unpopular groups". Id. at 256 (Douglas, J., concurring). Furman demands the death penalty cannot be imposed under sentencing procedures that create a substantial risk that it would be inflicted in an arbitrary and capricious manner. Gregg v. Georgia, 428 U.S. 153, 188 (1976). A death penalty statute must rationally narrow the class of death-eligible defendants and permit a reasoned, individualized sentencing determination based on a death-eligible defendant's record, personal characteristics, and the circumstances of the defendant's crime. Kansas v. Marsh, 548

3

U.S. 163, 173–74 (2006); see also McCleskey v. Kemp, 481 U.S. 279, 302–04 (1987); Zant v. Stephens, 462 U.S. 862, 877–79 (1983); Gregg, 428 U.S. at 189.

Defendant Sablan's argument on arbitrary and capricious application of the federal death penalty has been rejected previously by several courts. See, e .g., United States v. Sampson, 275 F.Supp.2d 49 (D.Mass. 2003); United States v. O'Driscoll, 203 F.Supp.2d 334 (M.D.Pa.2002); United States v. Hammer, 25 F.Supp.2d 518 (M.D.Pa. 1998). The prosecutor has discretion to prosecute and seek the death penalty. See McClesky, 481 U.S. at 296-97; O'Driscoll, 203 F.Supp.2d at 341. That "discretion must be suitably directed and limited so as to minimize the risk of wholly arbitrary and capricious action." Gregg, 428 U.S. at 189. However, that the death penalty is infrequently sought or imposed does not, by itself, render the FDPA unconstitutional. Sampson, 275 F.Supp.2d at 88; O'Driscoll, 203 F.Supp.2d 334. Constitutional questions arise only when the risk of arbitrariness becomes "sufficiently substantial." Furman, 408 U.S. at 295. The FDPA performs the requisite narrowing function and requires a jury to consider the individual circumstances of a case through the weighing of aggravating a mitigating factors. The infrequent seeking of the death penalty does not render it unconstitutional.

Finally, Defendant Sablan does not articulate any arguments that the death penalty is being applied to him on the basis of his race, the race and gender of the victim, or the region in which he is being prosecuted, but he nevertheless offers evidence for such a claim. However, the capital prosecution rates provided based on race do not include the rates on Chamorros, Defendant Sablan's ethnic group, or on Pacific Islanders more broadly. Furthermore, the McNally Declaration's findings as to increased likelihood of capital prosecution for white female victims, as supported by the Bell Declaration, do not apply in this case, where the victim was a Hispanic male. Finally, the regional analysis in the McNally Declaration focuses on the states of New York, Vermont, and Connecticut and makes no argument as to capital prosecution in California. Accordingly, Defendant Sablan's arguments as to racial, victim-based, or regional discrimination, if any, fail because he did not demonstrate "the existence of purposeful discrimination" that had a "discriminatory effect" on him. See McCleskey, 481 U.S. 279 at 292-93 (defendant must prove that the decision makers in his case acted with discriminatory purpose); United States v. Bin Laden, 126

4

F.Supp.2d 256, 260–61 (S.D.N.Y.2000) (under <u>McCleskey</u>, systemic statistics alone cannot establish discriminatory intent in a particular prosecution).

### B. Distinguishing Capital Prosecutions from Other Death-Eligible Cases

Defendant Sablan also argues the federal death penalty is unconstitutional under the Eighth Amendment because there "is an absence of a principled basis for distinguishing between cases where the federal death penalty is imposed from cases where it is not imposed." (Def.'s Mot. to Declare FDPA Unconstitutional (Doc. #703) at 15.) In support, Defendant Sablan provides the Court with approximately thirty case summaries, each only a sentence or two long, which describe the nature of the charges and the ultimate disposition.

This argument is foreclosed by the Supreme Court's decision in <u>McCleskey</u>, in which it held there are many variables in a criminal prosecution that impact the ultimate outcome:

> The Constitution is not offended by inconsistency in results based on the objective circumstances of the crime. Numerous legitimate factors may influence the outcome of atrial and a defendant's ultimate sentence, even though they may be irrelevant to his actual guilt. If sufficient evidence to link a suspect to the crime cannot be found, he will not be charged. The capability of the responsible law enforcement agency can vary widely. Also, the strength of the available evidence remains variable throughout the criminal justice process and may influence a prosecutor's decision to offer a plea bargain or to go to trial. Witness availability, credibility, and memory also influence the results of prosecutions. Finally, sentencing in state courts is generally discretionary, so a defendant's ultimate sentence necessarily will vary according to the judgment of the sentencing authority. The foregoing factors necessarily exist in varying degrees throughout our criminal justice system.

481 U.S. at 307, n.28. The Court therefore rejects Defendant Sablan's argument and denies his request to hold an evidentiary hearing on the matter. <u>McCleskey</u> is still the law of the land and the Court cannot ignore its precedent.

### III. CONCLUSION

**IT IS THEREFORE ORDERED** that Defendant Joseph Cabrera Sablan's Motion to Declare the Federal Death Penalty Act Unconstitutional (Doc. #703) is **DENIED**.

Dated: January 15, 2014

_____
HONORABLE PHILIP M. PRO
U.S. DISTRICT COURT JUDGE

Case 3:09-cr-00427-JAF Document 664 Filed 11/27/12 Page 1 of 2
Case 15-2347 Document: 35 Filed: 07/27/2016 Pages: 4186
Case 2:11-cr-00077-PPS-APR Document 1062-4 Filed 09/16/14 Page 1 of 2

UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

UNITED STATES OF AMERICA,

    Plaintiff,

    v.

ALEXIS CANDELARIO-SANTANA (01),

    Defendant.

Criminal No. 09-427 (JAF)

## **O R D E R**

Having considered the arguments made by Defendant Alexis Candelario-Santana in his motion of October 15, 2012, (Docket No. 564), in light of the Government's opposition of November 17, 2012, (Docket No. 654), and the Defendant's reply of November 26, 2012, (Docket No. 660), the court **ORDERS** as follows:

1)    POINT ONE: The court **DENIES** relief under POINT ONE of Docket No. 564.

2)    POINT TWO: The court **DENIES** relief under POINT TWO of Docket No. 564.

3)    POINT THREE: The court **DENIES** relief under POINT THREE of Docket No. 564.

4)    POINT FOUR: The court **DENIES** relief under POINT FOUR of Docket No. 564.

5)    POINT FIVE: The court **DENIES** relief under POINT FIVE of Docket No. 564.

6)    POINT SIX: The court **DENIES** relief under POINT SIX of Docket No. 564.

Case 3:09-cr-00427-JAF   Document 664   Filed 11/27/12   Page 2 of 2
Case 15-2347    Document: 35   Filed: 07/27/2016   Pages: 4186
Case 2:11-cr-00077-PPS-APR   Document 1062-4   Filed 09/16/14   Page 2 of 2

Criminal No. 09-427 (JAF)                                                     -2-

7)   POINT SEVEN:   This matter requires a hearing to determine if mental retardation exists to bar the imposition of the death penalty.  A hearing to that effect will be held on **December 4, 2012, commencing at 9:00 A.M.**  No continuance on this matter will be entertained, unless the parties stipulate other dates later in December, before Christmas.

8)   POINT EIGHT:   The court **DENIES** relief under POINT EIGHT of Docket No. 564.

9)   POINT NINE:   The court **DENIES** relief under POINT NINE of Docket No. 564.

**IT IS SO ORDERED.**

San Juan, Puerto Rico, this 27th day of November, 2012.

s/José Antonio Fusté
JOSE ANTONIO FUSTE
United States District Judge

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | 2:11-CR-77-PPS |
| | ) | |
| JUAN BRISENO, a/k/a "Tito" | ) | |

**GOVERNMENT'S REPLY TO DEFENDANT'S RESPONSE TO
GOVERNMENT'S MOTION TO EMPANEL AN ANONYMOUS JURY**

**TO THE HONORABLE COURT:**

COMES NOW, the United States of America, by and through the undersigned counsel, and, replies hereby to the Response of defendant Juan Briseno ("Mr. Briseno") [DE #1056] ("Defendant's Response") to the Government's Motion to Empanel an Anonymous Jury [DE #1012] ("Government's Motion.")

The Allegations in the Government's Motion

As more fully set forth in the Government's Motion, the Government requests that the Court empanel and fully anonymous jury[1] in this extraordinary case because Mr. Briseno is a leader of a Northwest Indiana chapter of the Almighty Imperial Gangster Nation (the "Imperial Gangsters" or "Igs"); the IGs are a particularly violent and vicious gang; in recent years, the Northwest Indiana chapters, *inter alia*, committed some 13 murders and 19 attempted murders; Mr. Briseno personally committed 6 murders and 7 attempted murders; the IGs "parent"

_____

[1]  Mr. Briseno's Response correctly observes that the Government's Motion "wants the Court to empanel a jury that is anonymous in all aspects; publicly anonymous and anonymous to the Defendant and his attorneys." [Response, page 6 & 12 ("The government's position appears to be for the empanelling of a completely anonymous jury.")]  Lest there be any confusion, under the Government's proposal, the jury would be anonymous to the Government and its attorneys, as well.

**GOVERNMENT'S REPLY TO DEFENDANT'S RESPONSE TO GOVERNMENT'S MOTION TO EMPANEL AN ANONYMOUS JURY**
United States v. Juan Briseno
Cause No. 2:11-CR-0077-PPS-APR
**Page 2**

_____

organization is in the greater-Chicago area, with established chapters in Northwest Indiana,

Miami, Florida, and Orlando, Florida; the Northwest Indiana chapter tried to kill a member (and

his mother) which IG member they suspected had spoken with the police; and despite the fact

that Mr. Briseno has preventively detained awaiting his capital trial, he continued in his

leadership role with the Northwest Indiana IGs and sought to direct and guide their activities.

[*See* Government's Motion, pages 1-4, 13-20]

Relying *inter alia* on the application of the *Ross* Factors, the Government urged that an

anonymous jury is appropriate because this is an "extraordinary case" in which Mr. Briseno is

involved in organized crime, there have been past attempts to interfere with the judicial process,

Mr. Briseno is facing the possibility of the death penalty, there exists a likelihood of extensive

publicity which may enhance the possibility that jurors' names would become public and expose

them to intimidation or harassment, and because a preponderance of evidence establishes that the

provision to Mr. Briseno of the names and/or identifying information of the jury venire "may

jeopardize the life or safety of any person."  [*See* Government's Motion, pages 14-20]

<div align="center">The Allegations of Mr. Briseno's Response</div>

In his Response, Mr. Briseno does not take issue with the legal principles or any of the

authorities cited in the Government's Motion. [*See and compare* Response, pages 5-11] *with*

Government's Motion, pages 4-12]  With regard to the trial testimony and evidence cited in the

Government's Motion, Mr. Briseno's Response suggests different interpretations of certain

portions of the evidence [*see* Response, pages 2-3] and proffers certain "additional facts" [*see*

id., pages 3-5], before arriving at the conclusion it recommends. [*See* id., pages 12-13]

**GOVERNMENT'S REPLY TO DEFENDANT'S RESPONSE TO GOVERNMENT'S MOTION TO EMPANEL AN ANONYMOUS JURY**
United States v. Juan Briseno
Cause No. 2:11-CR-0077-PPS-APR
**Page 3**
_____

With regard to its interpretation of material facts, Mr. Briseno's Response avers that "no actions of Chicago IG's have disrupted any proceedings related to this matter since the Indictment was filed" [Response, page 3]; that 22 of the Northwest Indiana IG's have pleaded guilty in this case and an additional IG (Richard Reyes) was tried and convicted [id., page 3-4]; that the Government did not request an anonymous jury for Mr. Reyes' trial [id., pages 8-9]; that Mr. Briseno "knows of no instances where witnesses, informants, agents of the government or jurors (in the Reyes trial) were threatened, harmed, or killed either before, during or after that trial" [id., page 4]; that Mr. Briseno is accused of 7 attempted murders and he "knows of no instances where any of those alleged victims or any other witnesses to those charges have been threatened, harmed or killed," nor have any of the 22 IG's who pled guilty [id., and id. page 9]; that Briseno has not been *charged* with any new offenses while in jail awaiting trial [id.]; the Northwest Indiana IG's "have been decimated" by this prosecution and "most" Northwest Indiana IG's are presently incarcerated [id.]; that '[t]here have been no reported sightings of Chicago or Florida IG's at or near the Court [and] [n]o Chicago or Florida IG's are charged in *this* Indictment." [Id., pages 4-5 (emphasis provided)]  Moreover, perhaps referring to someone other than the IG (Victim #5) whom – together with his mother – the Northwest Indiana IG's attempted to murder in broad daylight, Mr. Briseno says that "one government cooperating witness .... [who] probably was known to be cooperating with the government ... has never been harmed or threatened, to Defendant's belief and knowledge." [Id., page 5]

While claiming that "the Indictment has decimated the [Northwest Indiana] IGs" [Response, page 7], Mr. Briseno admits that the allegiances among the IG's are extremely strong

**GOVERNMENT'S REPLY TO DEFENDANT'S RESPONSE TO GOVERNMENT'S MOTION TO EMPANEL AN ANONYMOUS JURY**
United States v. Juan Briseno
Cause No. 2:11-CR-0077-PPS-APR
**Page 4**
_____

because members are "in essence, born into the gang as a result of where they lived and where they grew up," and because many "of them are related; i.e., uncles, cousins, brothers, etc." [Id.] Surprisingly, Mr. Briseno attempts to diminish the persistence and savage viciousness of the various murders by the IGs of the "Renegade IGs" by claiming: "Defendant contends this is not an example of organized crime, but a dispute between rival gang members" [id.] – as though that was either a difference or a distinction.

Acknowledging the efficacy of the *Ross* Factors [*see* Response, pages 5-6], Mr. Briseno's Response invites the Court to employ its "knowledge of the totality of this case and all related proceedings." [Id, page 7]  Thereafter, Mr. Briseno provides his own evaluation of the five *Ross* Factors:

   1.   **Involvement in Organized Crime.**   Having invited the Court to use its knowledge of the related proceedings, Mr. Briseno surprisingly challenges (meekly) whether the IGs are a gang, because "[a]t least one government witness, Joseph Torres, said that the IG s did not have a strict structure.  There was no president or vice president, '... we have no chain of command....'" [Response, pages 6-7 (citing testimony in the Reyes trial transcript.)]   Mr. Briseno concludes with the ill-advised claim that "[a]side from the allegations in the Indictment and the unsupported assertions contained in the government's motion, there is *no evidence or proof* that Juan Briseno was *involved in organized crime*." [Id., page 9 (emphasis provided)]

2038

**GOVERNMENT'S REPLY TO DEFENDANT'S RESPONSE TO GOVERNMENT'S MOTION TO EMPANEL AN ANONYMOUS JURY**
United States v. Juan Briseno
Cause No. 2:11-CR-0077-PPS-APR
**Page 5**

_____

However, Mr. Briseno's Response has plainly ignored the vast trial testimony in the Reyes case – from which transcript his Response liberally cites – and the guilty verdicts of 22 of Mr. Briseno's IG co-defendants to various RICO conspiracy charges, that attest to Mr. Briseno's leadership role in the IG organized crime family.  Mr. Briseno cannot, and does not, *seriously* contest that Mr. Briseno is involved in organized crime.  As a result, this factor weighs in favor of empaneling an anonymous jury.

> 2.    **Participation in a Group With the Capacity to Harm Jurors.**  Avoiding the seminal inquiry of whether or not Mr. Briseno has *participated* in a group "***with the capacity***" to harm jurors, Mr. Briseno focuses instead on whether the Chicago IGs and/or the Florida IGs ***have already*** "disrupt[ed] these proceedings" or "threatened or harassed witnesses or victim's family members."  [Response, page 9]  Additionally, Mr. Briseno interjects that the Government did not seek an anonymous jury in the trial of Richard Reyes.  [Id.]

Apparently, Mr. Briseno's Response misapprehends the question presented:  Has Mr. Briseno *participated* with *a group* that has the **capacity** to harm jurors.   As a result, Mr. Briseno's Response does not truly address the fact that Mr. Briseno is a leader in a chapter of a *large interstate criminal organization* – the IGs – *that maintains a violent, vibrant and continuing presence in nearby Chicago, Illinois*, and in Miami, Florida and Orlando, Florida.  Further, Mr. Briseno admits – but does not address – the fact that even the Northwest Indiana chapters of the IGs are family affairs ("the IG s were, in essence, born into the gang ... [many] are related, i.e., uncles, cousins, brothers, etc." [*see* Response, page 7]), and therefore the

**GOVERNMENT'S REPLY TO DEFENDANT'S RESPONSE TO GOVERNMENT'S MOTION TO EMPANEL AN ANONYMOUS JURY**
United States v. Juan Briseno
Cause No. 2:11-CR-0077-PPS-APR
**Page 6**

_____

convictions to date of 23 Northwest Indiana IG s has not obliterated the *capacity* of even the

Northwest Indiana IGs (or their relatives) to harm jurors.

Mr. Briseno's reference to the Reyes trial is of no moment.   This is so, because Mr.

Briseno well knows that – unlike Mr. Briseno – Mr. Reyes was in his 40s, was married, had

children, and had a full-time job with the City of East Chicago; Mr. Reyes was no longer

"posting up" with Mr. Briseno and the younger IGs; Mr. Reyes was no longer going to meetings

with Mr. Briseno and the younger IGs; Mr. Reyes was no longer paying dues like Mr. Briseno

and the younger IGs; Mr. Reyes was no longer an active leader of the IGs (like Mr. Briseno);

Mr. Reyes was not charged with having committed 6 recent murders (like Mr. Briseno); Mr.

Reyes was not charged with having committed 7 recent attempted murders (like Mr. Briseno);

Mr. Reyes  was not facing the death penalty (like Mr. Briseno); and, comparatively speaking,

Mr. Reyes' trial attracted comparatively modest media attention – unlike the extensive publicity

that both Mr. Briseno and the Government anticipate may accompany Mr. Briseno's trial.[2]

Because Mr. Briseno *participates* with *a group* that has the *capacity* to harm jurors, this

factor also weighs in favor of empaneling an anonymous jury.

_____

[2]  Mr. Briseno's Motion concedes: "The Defendant agrees that there may be media coverage of this case and it could be extensive." [Response, page 11]

**GOVERNMENT'S REPLY TO DEFENDANT'S RESPONSE TO GOVERNMENT'S MOTION TO EMPANEL AN ANONYMOUS JURY**
United States v. Juan Briseno
Cause No. 2:11-CR-0077-PPS-APR
**Page 7**

_____

3. **Past Attempts to Interfere With the Judicial Process.** Mr. Briseno says Mr. Briseno 'has done nothing in the past to interfere with the judicial process." [Response, page 10] Moreover, ignoring the vicious IG-creed Mr. Briseno helped to create and fostered, Mr. Briseno's Response says that when his fellow IGs sought to murder Victim 5 (and Victim 5's mother), Mr. Briseno was incarcerated on a gun charge [*see* id.], and he adds that those two IG gunmen have already "been brought to justice." [*See* id.]

Mr. Briseno's Response fails to address the fact that the attempted murder of Victim #5 – and Victim #5's mother – was a direct result of the vicious IG-creed that Mr. Briseno personally helped to create and foster. Nor can Mr. Briseno avoid the fact that the IGs killed three "Renegade IGs," because they were viewed as being *disloyal* and it was the same creed that led to the IG's attempted murder of Victim #5 and Victim #5's mother – the belief that Victim #5 was *disloyal* because he might be cooperating with law enforcement. Moreover, Mr. Briseno's Response does not deny that -- while in jail -- Mr. Briseno continued in his leadership role in the IGs and that he sought to continue to direct the activities of the IG s from his jail cell.

As a result, this factor also weighs in favor of empaneling an anonymous jury.

GOVERNMENT'S REPLY TO DEFENDANT'S RESPONSE TO GOVERNMENT'S MOTION TO EMPANEL AN ANONYMOUS JURY
United States v. Juan Briseno
Cause No. 2:11-CR-0077-PPS-APR
**Page 8**
_____

4.    **The Potential That, If Convicted, the Defendant Will Suffer a Lengthy Incarceration, and Substantial Monetary Penalties.**   Here, Mr. Briseno wisely acknowledges that he is facing the death penalty [*see* Response, pages 10-11], which necessarily causes terms of incarceration and/or monetary penalties to pale. Without dispute, this factor weighs heavily in favor of empaneling an anonymous jury.

5.    **Extensive Publicity That Could Enhance the Possibility That Juror's Names Would Become Public and Expose Them to Intimidation or Harassment.** Acknowledging the likelihood that there will be "extensive" media coverage of Mr. Briseno's trial, Mr. Briseno proposes he "simple remedy" of empaneling of a "partial anonymous jury," whose identities would be shielded from the public but made known to the defendant and defense counsel.  [*See* Response, page 11]

Plainly, Mr. Briseno's Response only addresses the potential for intimidation and harassment by the media or the public in general.  It would leave *Mr. Briseno*[3] free to communicate the juror's names, residential addresses, employment addresses, and the like to whomever he chooses through visits, telephone calls, mail, and through intermediaries.

Because all anticipate extensive publicity and because the provision of the juror's identities, residential addresses and business addresses could expose them to intimidation or harassment, this final factor also weighs in favor of empaneling an anonymous jury.

_____

[3]  The Government's Reply is not insinuating in *anyway* that Mr. Briseno's attorneys would not meticulously and professionally guard and preserve such information.  To the contrary, both of Mr. Briseno's counsel have the Government's confidence.

**GOVERNMENT'S REPLY TO DEFENDANT'S RESPONSE TO GOVERNMENT'S MOTION TO EMPANEL AN ANONYMOUS JURY**
United States v. Juan Briseno
Cause No. 2:11-CR-0077-PPS-APR
**Page 9**

_____

<u>Fairness</u>

Moreover, and more to the point, Mr. Briseno is certainly aware that he will be provided – through the extensive (agreed) 38-page, 104-question, Juror Questionnaire – with an enormous amount of information about each of the prospective jurors, their age, education, occupation, background, marital status, memberships in organizations, potential knowledge of any of the individuals or events, their thoughts, feelings, and experiences (if any) with gangs, gang violence, crime, guns, drugs, the death penalty, and numerous other topics. What Mr. Briseno's Response does not do is to explain why Mr. Briseno having the *actual* names, *precise* residential addresses, and the *specific* employers of the prospective jurors will make the jury selection process or the trial *materially* more fair.

At bottom, Mr. Briseno's Response fails to explain why his rights to (1) a fair trial, and (2) the presumption of innocence will not be *fully* protected in this case under the protocols recommended in the Government's Motion. In *United States v. Lawson*, 535 F.3d 434 (6th Cir. 2008), the Sixth Circuit – as have its Sister Circuits – made clear there is not constitutional right to a public *jury*. Id. at 441. "Unfortunately, in some trials, potential jurors are at high risk of harassment, intimidation, or other unwelcome and disruptive influences. To protect potential jurors and their families, the trial court may decide to withhold identifying information from the

**GOVERNMENT'S REPLY TO DEFENDANT'S RESPONSE TO GOVERNMENT'S MOTION TO EMPANEL AN ANONYMOUS JURY**
United States v. Juan Briseno
Cause No. 2:11-CR-0077-PPS-APR
**Page 10**
_____

parties...." *United States v. Benabe*, 654 F.3d 753, 759-60 (7th Cir. 2011), *cert. denied*, ___ U.S.

___, 132 S.Ct. 1986 (2012). As a result, the Seventh Circuit reiterated:

> [N]either the right to a presumption of innocence nor the right to exercise
> peremptory challenges is a constitutional absolute; each, at times, must yield to
> the legitimate demands of trial administration and courtroom security so long as
> steps are taken to ensure that the defendant receives a fair trial.

*United States v. Mansoori*, 304 F.3d at 650; *accord United States v. Morales*, 655 F.3d 608, 620

(7th Cir. 2011), *cert. denied*, ___ U.S. ___, 132 S.Ct. 1121 (2012) ("[W]e have never held that it

is presumptively inappropriate to rely on anonymity.")

This capital trial, of a leader of a particularly-violent and vicious gang, is such a case.

*Accord United States v. Dinkins,* 691 F.3d 358, 373-78 (4th Cir. 2012), *cert. denied*, ___ U.S.

___, 133 S.Ct. 1278 (2013) (anonymous jury properly empaneled where both capital defendants

were members of a gang and whose compatriots "had the capacity to harm jurors" and "remained

capable of interfering in the judicial process"); *United States v. Solomon*, 387 Fed. Appx. 258,

260-61 (3[d] Cir. 2010), *cert. denied*, ___ U.S. ___, 131 U.S. 1622 (2011) (partially anonymous

jury properly empaneled where capital defendant was member of drug trafficking organization

and was accused of murdering a witness's father); *United States v. Quniones*, 511 F.3d 289, 295-

97 (2nd Cir. 2007) (affirming district court's empaneling of anonymous jury in capital case

involving low-level drug dealers who murdered confidential informant); *United States v.

Candelario-Santana*, 909 F. Supp.2d 68, 78 (D.P.R. 2013) (anonymous jury empaneled where

capital defendant was leader of drug gang who was alleged to have shot 29 additional people and

to have killed nine of them); *United States v. Savage*, 2012 WL 4068341, *2-*3 (E.D. Pa. 2012)

**GOVERNMENT'S REPLY TO DEFENDANT'S RESPONSE TO GOVERNMENT'S MOTION TO EMPANEL AN ANONYMOUS JURY**
<u>United States v. Juan Briseno</u>
Cause No. 2:11-CR-0077-PPS-APR
**Page 11**

_____

(anonymous jury empaneled where capital defendant was a gang member who had a history of institutional violence and had previously attempted to tamper with federal jurors); *United States v. Wilson*, 2013 WL 1091661 (E.D.N.Y. 2013) (anonymous jury empaneled and semi-sequestered in retrial of penalty phase of capital trial where defendant was a gang member);[4] *United States v. Byers*, 603 F. Supp.2d 826, 830 (D. Md. 2009) (anonymous jury empaneled where defendant accused of murdering government witnesses); *and cf.*, *Allen v. United States*, 2008 WL 2754804, * 1 (E.D. Missouri 2008) (in capital trial resulting from murder in commission of bank robbery, anonymous jury empaneled, Court called 425 persons for *voir dire* and referred to each juror only by number.)

For each of these independent reasons, as well as the reasons set forth in the Government's Motion to Empanel an Anonymous Jury, the Government urges the Court to empanel an anonymous jury for the trial of Mr. Briseno.

---

[4] *See also United States v. Wilson*, 493 F. Supp.2d 397 (E.D.N.Y. 2006) (initial trial, granting anonymous jury request where capital defendant was a violent gang member accused of killing two New York City police officers, had a "history of interference with the judicial process.")

**GOVERNMENT'S REPLY TO DEFENDANT'S RESPONSE TO GOVERNMENT'S MOTION TO EMPANEL AN ANONYMOUS JURY**
United States v. Juan Briseno
Cause No. 2:11-CR-0077-PPS-APR
**Page 12**

_____

Respectfully submitted,

DAVID CAPP
UNITED STATES ATTORNEY

s/ _David J. Nozick_

David J. Nozick
Assistant U.S. Attorney
5400 Federal Plaza
Suite 1500
Hammond, IN 46320
Tel. (219) 937-5655
www.david.nozick@usdoj.gov

s/ _Bruce R. Hegyi_

Bruce R. Hegyi
Trial Attorney
Capital Case Section
Criminal Division
United States Department of Justice
1331 F Street, N.W., Third Floor
Washington, D.C. 20530
Tel. (202) 616-4582
Cell (703) 536-4774
www.bruce.hegyi@usdoj.gov

**GOVERNMENT'S REPLY TO DEFENDANT'S RESPONSE TO GOVERNMENT'S MOTION TO EMPANEL AN ANONYMOUS JURY**
United States v. Juan Briseno
Cause No. 2:11-CR-0077-PPS-APR
**Page 13**

_____

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this date, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to both counsel for defendant Juan Briseno.


s/ Bruce R. Hegyi
Bruce R. Hegyi
Trial Attorney

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | 2:11 CR 77 PPS |
| | ) | |
| JUAN BRISENO | ) | |

**SUPPLEMENTAL NOTICE OF INTENT TO INTRODUCE ENTERPRISE EVIDENCE**

The UNITED STATES OF AMERICA, by its attorney, DAVID CAPP, United States

Attorney for the Northern District of Indiana, respectfully files this Supplemental Notice of

Intent to Introduce Enterprise Evidence.

Count 1 of the Fourth Superseding Indictment charges the defendant with Conspiracy to

Commit Racketeering under Title 18, United States Code, Section 1962(d). As drafted, Count 1

charges what has become known as a "*Glecier*" RICO conspiracy count, under which it is

sufficient to allege and prove that the defendant agreed to further an endeavor, which if

completed, would satisfy all the elements of a substantive RICO offense, and that the defendant

agreed that at least one member of the conspiracy would commit at least two racketeering acts in

furtherance of the enterprise's affairs. *See United States v. Glecier*, 923 F.2d 496, 498, 500 (7th

Cir. 1991).

In a *Glecier* conspiracy it is not necessary to either allege that the defendant agreed to

personally commit any racketeering act, or to allege specific racketeering acts that were the

objectives of the RICO conspiracy. *Id*. Rather, it is sufficient to allege that it was a part of the

RICO conspiracy that the defendant agreed that a conspirator, which could be the defendant

himself, would commit at least two acts of racketeering activity in the conduct of the affairs of

the enterprise and to include sufficient allegations to inform the defendant of the nature of the charge. *Id.*

As is common in proving *Glecier* RICO conspiracies, the United States intends to prove the existence of the Imperial Gangster enterprise, the defendant's membership in the enterprise, and the pattern of racketeering by offering evidence related to the overt acts as listed in the indictment as well as non-charged overt acts. In this case, the United States intends to also introduce evidence of the following evidence, in addition to the evidence described in the previous filing:

- On an unknown date, Juan Briseno shot at Subject 42, who he believed to be a member of the Ambrose street gang.

- On an unknown date, Imperial Gangster Vincente Garza and Juan Briseno encountered several males wearing baseball hats tilted to the left side, indicating that they were rivals of the Imperial Gangsters. Briseno approached the men and told them that they could not wear their hats in that manner. Briseno flashed a pistol to emphasize his point. A short time later Briseno observed one of the same males still wearing his hat tilted to the left side. Briseno instructed Garza to shoot at this individual. Garza did so, but missed him.

- On an unknown date prior to February 20, 2009, the defendant, Galo Feliciano and two other members of the Imperial Gangsters drove around the Harbor neighborhood of East Chicago, looking for Subject 12, a leader of the Two Six gang. When they saw a car in the vicinity of the U.S. Bar that they believed belonged to Subject 12, Briseno shot into the car.

- On April 24, 2009, the defendant was driving around East Chicago in a Gold Pontiac vehicle with two other members of the Imperial Gangsters. When they encountered Subject 12 the defendant and/or the other individuals in the Gold Pontiac shot at him.

- The defendant shot at Subject 40, a member of the Spanish Gangster Disciples, on approximately seven occasions. One of these events, which occurred on January 23, 2009, is mentioned in the Fourth Superseding Indictment as an overt act in Count 1. On another of these occasions the defendant shot at Subject 40 while the defendant was riding on a bicycle, missing him. On another occasion the defendant and Robert Lockhart hid in a yard, waiting for Subject 40. When they saw Subject 40, they shot at him, missing him.

- On an unknown date Subject 41, a member of the Ambrose Street Gang, followed a member of the Imperial Gangsters around the 149th Street Imperial Gangster neighborhood. This member of the Imperial Gangsters ran to the "trap house," a residence where the Imperial Gangsters stored guns, money, ammunition and narcotics, and woke up the defendant. The defendant grabbed a gun and ran outside in his boxer shorts and a tank top and shot at Subject 41's vehicle.

- On an unknown date the defendant and Galo Feliciano were shot at by individuals who were in an apartment above a liquor store in the 149th Street neighborhood of East Chicago, Indiana. The defendant, armed with a revolver, returned fire. Galo Feliciano, who was armed with a 9mm pistol, returned fire as well.

- On an unknown date, the defendant, Galo Feliciano and a third member of the Imperial Gangsters did a burglary of a house in Gary, Indiana. During the course of this burglary the defendant, Feliciano and the third individual stole 60 pounds of marijuana.

- On an unknown date the defendant and another member of the Imperial Gangsters stole 150 pounds of marijuana from a drug trafficker.

- On an unknown date prior to June 19, 2010, the defendant ran up to an unknown member of the Black P-Stones street gang and shot him in the shoulder. When the defendant attempted to shoot this individual a second time, his gun jammed. The unknown member of the Black P-Stones shot back at the defendant, missing him. During the course of this event Imperial Gangster Robert Lockhart also shot at this unknown member of the Black P-Stones.

Evidence of these acts will be presented primarily through testimony from cooperating witnesses. In the instances where the police responded, police reports have been provided. The identity of all cooperating witnesses and their interview reports and *Jencks* materials will be produced in a timely fashion as ordered by the court.

Respectfully submitted,

DAVID CAPP
United States Attorney

By:     /s/ David J. Nozick
        DAVID J. NOZICK
        Assistant U.S. Attorney
        5400 Federal Plaza, Suite 1500
        Hammond, Indiana 46320
        (219) 937-5500

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

UNITED STATES OF AMERICA      )
                              )
        v.                    )        NO. 2:11 CR 77 PPS
                              )
JUAN BRISENO                  )

CERTIFICATE OF SERVICE

The undersigned hereby certifies that the Supplemental Notice of Intent to Introduce

Enterprise Evidence was electronically filed with the Clerk of the Court using the CM/ECF

system which sent notification of said filing to the following individuals:

ARLINGTON J. FOLEY
JOHN MAKSIMOVICH
(Attorneys for defendant Juan Briseno)

By:     /s/ Janet L. Eisenmann
        Janet L. Eisenmann
        U.S. Attorney's Office
        5400 Federal Plaza, Suite 1500
        Hammond, Indiana 46320
        (219) 937-5500

```
MIME-Version:1.0
From:CMECFinnd@innd.uscourts.gov
To:CMECFinnd@localhost.localdomain
Bcc:
--Case Participants: Richard M Davis (jdavis@hwelaw.com, rdavis@hwelaw.com,
rgould@hwelaw.com), Pablo DeCastro (pdecastro@rascia-decastro.com,
ysierra@rascia-decastro.com), Kurt R Earnst (kre@braje-nelson.com), Arlington J Foley
(arlingtonfoley@att.net), Jack Friedlander (jack@jackfriedlander.com,
office@jackfriedlander.com), Bruce R Hegyi - AUSA (bruce.hegyi@usdoj.gov), Roxanne Mendez
Johnson (attorneyrmj@gmail.com), Gojko Kasich (gkasich@crownlaw.com, gkasich@gmail.com),
Scott L King (dwilliams@scottkinggroup.com, sking@scottkinggroup.com), Visvaldis P Kupsis
(vpkupsis@hotmail.com), Dean R Lanter - AUSA (dean.lanter@usdoj.gov,
janet.eisenmann@usdoj.gov, usainn.ecfcivil@usdoj.gov), John Maksimovich
(criminallaw@johnmaksimovich.com), John E Martin - FCD (john_martin@fd.org), Sheldon B
Nagelberg (sbnagelberglaw@att.net), David J Nozick - AUSA (david.nozick@usdoj.gov,
janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov,
usainn.ecfcivil@usdoj.gov), Mark A Psimos (psimoslaw@airbaud.net), Robert L Rascia
(rrascia@rascia-decastro.com, ysierra@rascia-decastro.com), Stephen Edward Scheele
(pkd@gk4law.com, ses@gk4law.com), Paul Jeffrey Schlesinger (pjeffslaw@aol.com), Adam
Tavitas (adtavitas@aol.com, b.lynneadams@yahoo.com), John T Theis (theislaw@aol.com),
James N Thiros (jim@thiros.com, lynn@thiros.com), Bryan M Truitt (bryan@tblawyers.com,
sherrie@tblawyers.com), David E Vandercoy (david.vandercoy@valpo.edu), Thomas W Vanes
(b.lynneadams@yahoo.com, tom.vanes@sbcglobal.net), Ihor Alexander Woloshansky
(ihorlawyer@hotmail.com), Richard C Wolter (b.lynneadams@yahoo.com), R Brian Woodward
(carolb@wbbklaw.com, rbwoodward@wbbklaw.com), Magistrate Judge Andrew P Rodovich
(rodovich_chambers@innd.uscourts.gov), Chief Judge Philip P Simon
(denise_woodside@innd.uscourts.gov, jacob_hamann@innd.uscourts.gov,
lauren_schwartz@innd.uscourts.gov, mira_serrill-robins@innd.uscourts.gov,
noel_collins@innd.uscourts.gov, philip_simon@innd.uscourts.gov)
--Non Case Participants: Matthew D Soliday (office@matthewsolidaylaw.com),
Probation/Pretrial Services (innpml_cmecf@innd.uscourts.gov), U S Marshal
(inn.docket-fw@usdoj.gov, inn.docket-sb@usdoj.gov, usms.27@usdoj.gov)
--No Notice Sent:

Message-Id:2618179@innd.uscourts.gov
Subject:Activity in Case 2:11-cr-00077-PPS-APR United States of America v. Briseno et al
Notice of Hearing on Motion
```
Content–Type: text/html

### U.S. District Court Northern District of Indiana [LIVE]

### USDC Northern Indiana

## Notice of Electronic Filing

The following transaction was entered on 9/24/2014 at 5:36 PM EST and filed on 9/24/2014

| | |
|---|---|
| **Case Name:** | United States of America v. Briseno et al |
| **Case Number:** | 2:11–cr–00077–PPS–APR |
| **Filer:** | |
| **Document Number:** | 1072(No document attached) |

**Docket Text:**
 **NOTICE OF HEARING ON MOTION in case as to Juan Briseno [1012] MOTION To Empanel Anonymous Jury : Motion Hearing RESET for 9/26/2014 01:00 PM in US District Court – Hammond before Chief Judge Philip P Simon. Please note that this is a change in time only to 1:00 p.m. (Central/Hammond time). (nac)**

**2:11−cr−00077−PPS−APR−1 Notice has been electronically mailed to:**

David E Vandercoy    david.vandercoy@valpo.edu

Richard M Davis    rdavis@hwelaw.com, jdavis@hwelaw.com, rgould@hwelaw.com

Arlington J Foley    arlingtonfoley@att.net

Mark A Psimos    psimoslaw@airbaud.net

Gojko Kasich    gkasich@crownlaw.com, gkasich@gmail.com

Scott L King    sking@scottkinggroup.com, dwilliams@scottkinggroup.com

James N Thiros    jim@thiros.com, lynn@thiros.com

Thomas W Vanes    tom.vanes@sbcglobal.net, b.lynneadams@yahoo.com

Ihor Alexander Woloshansky    ihorlawyer@hotmail.com

R Brian Woodward    rbwoodward@wbbklaw.com, carolb@wbbklaw.com

John Maksimovich    criminallaw@johnmaksimovich.com

Visvaldis P Kupsis    vpkupsis@hotmail.com

Sheldon B Nagelberg    sbnagelberglaw@att.net

John E Martin − FCD    john_martin@fd.org

Adam Tavitas    Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander    jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele    ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst    kre@braje−nelson.com

Bryan M Truitt    bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis    theislaw@aol.com

Robert L Rascia    rrascia@rascia−decastro.com, ysierra@rascia−decastro.com

Paul Jeffrey Schlesinger    pjeffslaw@aol.com

Pablo DeCastro    pdecastro@rascia−decastro.com, ysierra@rascia−decastro.com

Dean R Lanter − AUSA    dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov,
janet.eisenmann@usdoj.gov

David J Nozick – AUSA    David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov,
janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson    attorneyrmj@gmail.com

Bruce R Hegyi – AUSA    bruce.hegyi@usdoj.gov

**2:11−cr−00077−PPS−APR−1 Notice has been delivered by U.S. Mail or other means to:**

MIME-Version:1.0
From:CMECFinnd@innd.uscourts.gov
To:CMECFinnd@localhost.localdomain
Bcc:
--Case Participants: Richard M Davis (jdavis@hwelaw.com, rdavis@hwelaw.com,
rgould@hwelaw.com), Pablo DeCastro (pdecastro@rascia-decastro.com,
ysierra@rascia-decastro.com), Kurt R Earnst (kre@braje-nelson.com), Arlington J Foley
(arlingtonfoley@att.net), Jack Friedlander (jack@jackfriedlander.com,
office@jackfriedlander.com), Bruce R Hegyi - AUSA (bruce.hegyi@usdoj.gov), Roxanne Mendez
Johnson (attorneyrmj@gmail.com), Gojko Kasich (gkasich@crownlaw.com, gkasich@gmail.com),
Scott L King (dwilliams@scottkinggroup.com, sking@scottkinggroup.com), Visvaldis P Kupsis
(vpkupsis@hotmail.com), Dean R Lanter - AUSA (dean.lanter@usdoj.gov,
janet.eisenmann@usdoj.gov, usainn.ecfcivil@usdoj.gov), John Maksimovich
(criminallaw@johnmaksimovich.com), John E Martin - FCD (john_martin@fd.org), Sheldon B
Nagelberg (sbnagelberglaw@att.net), David J Nozick - AUSA (david.nozick@usdoj.gov,
janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov,
usainn.ecfcivil@usdoj.gov), Mark A Psimos (psimoslaw@airbaud.net), Robert L Rascia
(rrascia@rascia-decastro.com, ysierra@rascia-decastro.com), Stephen Edward Scheele
(pkd@gk4law.com, ses@gk4law.com), Paul Jeffrey Schlesinger (pjeffslaw@aol.com), Adam
Tavitas (adtavitas@aol.com, b.lynneadams@yahoo.com), John T Theis (theislaw@aol.com),
James N Thiros (jim@thiros.com, lynn@thiros.com), Bryan M Truitt (bryan@tblawyers.com,
sherrie@tblawyers.com), David E Vandercoy (david.vandercoy@valpo.edu), Thomas W Vanes
(b.lynneadams@yahoo.com, tom.vanes@sbcglobal.net), Ihor Alexander Woloshansky
(ihorlawyer@hotmail.com), Richard C Wolter (b.lynneadams@yahoo.com), R Brian Woodward
(carolb@wbbklaw.com, rbwoodward@wbbklaw.com), Magistrate Judge Andrew P Rodovich
(rodovich_chambers@innd.uscourts.gov), Chief Judge Philip P Simon
(denise_woodside@innd.uscourts.gov, jacob_hamann@innd.uscourts.gov,
lauren_schwartz@innd.uscourts.gov, mira_serrill-robins@innd.uscourts.gov,
noel_collins@innd.uscourts.gov, philip_simon@innd.uscourts.gov)
--Non Case Participants: Matthew D Soliday (office@matthewsolidaylaw.com),
Probation/Pretrial Services (innpml_cmecf@innd.uscourts.gov), U S Marshal
(inn.docket-fw@usdoj.gov, inn.docket-sb@usdoj.gov, usms.27@usdoj.gov)
--No Notice Sent:

Message-Id:2621702@innd.uscourts.gov
Subject:Activity in Case 2:11-cr-00077-PPS-APR United States of America v. Briseno et al
Motion Hearing
Content-Type: text/html

## U.S. District Court Northern District of Indiana [LIVE]

## USDC Northern Indiana

## Notice of Electronic Filing

The following transaction was entered on 9/29/2014 at 6:26 PM EST and filed on 9/26/2014

**Case Name:**    United States of America v. Briseno et al

**Case Number:**    2:11-cr-00077-PPS-APR

**Filer:**

**Document Number:** 1076(No document attached)

**Docket Text:**
**MOTION HEARING (regarding [1012]) as to Juan Briseno. MOTION To Empanel Anonymous Jury filed by United States of America before Chief Judge Philip P Simon. Govt present by David Nozick, AUSA in person and Bruce R. Hegyi, AUSA by telephone. Dft Juan Briseno is present in person and by counsel Arlington Foley and John Maksimovich. Court hears oral argument on motion. Govt submits exhibits to the court, however they are not officially**

**offered or admitted and are only for the court's reference in this matter. Court takes this matter under advisement and will issue a ruling within two weeks. Other issues discussed: Court sets a deadline of 12/5/2014 with regard to juror challenges for cause. By 12/5/2014 the court orders that the following three lists be submitted to the court: (1) agreed list of juror strikes for cause. (2) challenges for cause that the dft wants and that the govt disagrees with (3) challenges for cause that the Govt wants that the dft disagrees with. Those lists shall be submitted under seal with a hearing to be held on this issue on 12/18/2014 at 10:00 a.m. (Central/Hammond time) in U.S. District Court – Hammond before Chief Judge Philip P. Simon. Defendant REMANDED to custody of US Marshal. The U.S. Marshal is ordered to produce the dft for this hearing. (Court Reporter Stacy Droshoky) (nac)**


**2:11–cr–00077–PPS–APR–1 Notice has been electronically mailed to:**

David E Vandercoy    david.vandercoy@valpo.edu

Richard M Davis    rdavis@hwelaw.com, jdavis@hwelaw.com, rgould@hwelaw.com

Arlington J Foley    arlingtonfoley@att.net

Mark A Psimos    psimoslaw@airbaud.net

Gojko Kasich    gkasich@crownlaw.com, gkasich@gmail.com

Scott L King    sking@scottkinggroup.com, dwilliams@scottkinggroup.com

James N Thiros    jim@thiros.com, lynn@thiros.com

Thomas W Vanes    tom.vanes@sbcglobal.net, b.lynneadams@yahoo.com

Ihor Alexander Woloshansky    ihorlawyer@hotmail.com

R Brian Woodward    rbwoodward@wbbklaw.com, carolb@wbbklaw.com

John Maksimovich    criminallaw@johnmaksimovich.com

Visvaldis P Kupsis    vpkupsis@hotmail.com

Sheldon B Nagelberg    sbnagelberglaw@att.net

John E Martin – FCD    john_martin@fd.org

Adam Tavitas    Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander    jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele    ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst    kre@braje–nelson.com

Bryan M Truitt    bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis    theislaw@aol.com

Robert L Rascia    rrascia@rascia−decastro.com, ysierra@rascia−decastro.com

Paul Jeffrey Schlesinger    pjeffslaw@aol.com

Pablo DeCastro    pdecastro@rascia−decastro.com, ysierra@rascia−decastro.com

Dean R Lanter − AUSA    dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick − AUSA    David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson    attorneyrmj@gmail.com

Bruce R Hegyi − AUSA    bruce.hegyi@usdoj.gov

**2:11−cr−00077−PPS−APR−1 Notice has been delivered by U.S. Mail or other means to:**

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
### HAMMOND DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | NO. 2:11CR77 PPS |
| | ) | |
| JUAN BRISENO, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## ORDER

Defendant Juan Briseno faces the death penalty in this case, in which he is charged with 22 counts including 6 murders and 4 attempted murders. Trial of the charges against defendant Juan Briseno is currently set for January 12, 2015. The government filed a motion to empanel an anonymous jury. Briseno opposed the motion. The parties were heard on the issue at an oral argument held September 26, 2014. Because I am not persuaded that the government has met the standard for an anonymous jury, the motion will be denied.

The Sixth Amendment provides criminal defendants the right to a public trial. Ordering an anonymous jury "is an extreme measure that is warranted only where '"there is strong reason to believe the jury needs protection."'" *United States v. Mansoori*, 304 F.3d 635, 650 (7th Cir. 2002), citing *United States v. Crockett*, 979 F.2d 1204, 1215, quoting *United States v. Paccione*, 949 F.2d 1183, 1192 (2nd Cir. 1991). The presumption of innocence weighs heavily in the analysis, because making the jury

anonymous may send a prejudicial message to the jurors that the defendant is a violent

and dangerous person. *Mansoori*, 304 F.3d at 650. In addition, some of the information

asked to be withheld is potentially important in the parties' determination of

peremptory challenges. *Id*. The case law on the subject repeatedly sends the clear

message that "the use of anonymous juries is discouraged." *United States v. Morales*, 655

F.3d 608, 620 (7th Cir. 2011), citing *Ross*, 33 F.3d at 1522. *See also United States v. Benabe*,

654 F.3d 753, 760 (7th Cir. 2011); *Crockett*, 979 F.2d at 1215.

The 7th Circuit's *Mansoori* factors to be considered concerning an anonymous jury

are:

> (1) the defendant's involvement in organized crime;
>
> (2) his involvement in a group with the capacity to harm jurors;
>
> (3) whether he previously has attempted to interfere with the judicial process;
>
> (4) the severity of the potential punishment; and
>
> (5) whether publicity presents the prospect that the jurors' names could become
>
> public and expose them to intimidation or harassment.

*Id*. at 650-51.[1]

Sometimes, formulaic multi-factor tests are not particularly helpful in the law.

*Empress Casino Joliet v. Balmoral Racing Club*, 651 F.3d 722, 727 (7th Cir. 2011). This could

be one of those areas. The problem is that, taken at face value, the *Mansoori* factors

---

[1] These considerations are sometimes called the *Ross* factors, from *US v. Ross*, 33
F.3d 1507, 1520 (11th Cir. 1994).

2

apply to almost every gang prosecution where someone is charged with violence and is facing a lengthy prison sentence if convicted.  That would make empaneling an anonymous jury the rule rather than the very narrow exception that it ought to be.

Nonetheless, that is the test that has been laid down and I will attempt to faithfully apply it.  Briseno's involvement with the Imperial Gangsters arguably meets the first two factors relating to an organized crime group with the capacity to harm jurors.   But, as mentioned, those factors, as well as the prospect of a lengthy prison term (the fourth factor), are present in almost every gang-related prosecution involving large-scale drug distribution.  And yet "[a]n anonymous jury is not appropriate in every criminal trial involving organized crime."  *Benabe*, 654 F.3d  at 761.  "'Something more' than the organized-crime label is necessary to justify juror anonymity[.]"  *Id.* at 761. *Mansoori* teaches that the *capacity* and the *incentive* to interfere with the jury are not sufficient; there must also be "evidence indicating that [the defendant is] *likely to act* on that ability and incentive."  *Mansoori*, 304 F.3d at 651 (emphasis added).

This leads to consideration of the third factor, that is whether Briseno has previously tried to interfere with the judicial process.  The government admittedly has no evidence that Briseno himself has done so.  But what of his crew, the Imperial Gangsters?  There too, the government has provided scant evidence that the gang "had a history of intimidating witnesses or otherwise obstructing justice or that they were likely to do so in connection with this trial."  *Mansoori*, 304 F.3d at 651.  Four instances of gang violence cited by the government represent retaliation against renegade gang

3

members who broke away from the group and formed their own gang. [DE 1012 at 15-16.] But none of this violence is alleged to have been ordered by or perpetrated by Juan Briseno. What's more, this isn't evidence of interference with the judicial process. It's evidence instead that the IG's retaliate against turncoats. That is an entirely different form of retaliation than juror intimidation, and the fact that there is inter-gang violence does not support an inference that the IG's would "likely" threaten or attempt violence on trial jurors.

The one more relevant violent episode cited by the government is the alleged attempt to murder "Victim 5" and his mother because of Victim 5's suspected cooperation with the authorities. But no evidence is offered that Briseno — who was then in jail and had been for some time — had any role in that attempt. I frankly reject as weak (if not somewhat fanciful) the government's assertion that Juan Briseno should be considered responsible for the attempt on Victim 5 because Briseno was the "architect" of a vicious mindset among the IG's requiring this violent retaliatory response to disloyalty. The government's assertion that Briseno has in the past directed the IG's actions by means of letters from prison is similarly weak, supported only by letters from several years ago (when Briseno was jailed on an earlier different case) that do not reveal any attempt to direct acts of violence or intimidation. Defense counsel report (without dispute by the government) that Victim 5 walks the streets of East Chicago today without harassment.

4

Briseno also persuasively responds that the East Chicago gang has been largely demolished by this prosecution, in which 23 other defendants have already been convicted and are incarcerated. Juan Briseno is, in effect, the last man standing from a group that now includes a number of former associates cooperating against him (rather than interested in plotting juror intimidation on his behalf). The prospect of Chicago or Florida IG's coming to Northwest Indiana to intimidate jurors is of course possible but has not been demonstrated to be at all likely. I note also that I have already conducted the trial of Briseno's co-defendant Richard Reyes, for which an anonymous jury was not requested, and during which there was no attempt at intimidation of the jurors. There is no persuasive demonstration of a likelihood of an attempt to interfere with the judicial process by intimidating jurors in Briseno's trial.

Briseno's exposure to the death penalty appears to meet the fourth factor, although the ultimate penalty also triggers the seemingly contrary statutory requirement that for capital cases the defendant be provided a list of potential jurors and witnesses three days before trial. *See* 18 U.S.C. §3432. The provision has an exception where "the court finds by a preponderance of the evidence that providing the list may jeopardize the life or safety of any person." That standard has clearly not been met by the government's arguments in support of an anonymous jury.

The fifth *Mansoori* factor is the likelihood that media attention could expose jurors to harassment or intimidation by the media or the public. Here again, this factor would seem to apply in any case where there has been significant media attention. In

5

any event, this factor alone cannot support a jury whose identities are withheld from the parties, as well as from the public and the press. It is true that has been considerable media attention to this case, and even recently to the motion for an anonymous jury. But the problem posed by the *Mansoori* fifth factor could readily be addressed by further consideration of using a confidential (as opposed to anonymous) jury at trial, that is, to publicly identifying the jurors only by number although the parties would have their identifying information. *See United States v. Harris*, No. 13-1741 at p. 9 (7th Cir. August 18, 2014) (discussing difference between an "anonymous" jury and a "confidential" jury). That determination need not be made at this time and in this order, however.

I have considered all of the *Mansoori* factors in order to weigh the need for an anonymous jury, and "balance[d] the defendant's interest in preserving the presumption of innocence and in conducting a useful voir dire against the jurors' interest in their own security and the public's interest in having a jury assess the defendant's guilty or innocence impartially." *Mansoori*, 304 at 650. I find the balance does not support empaneling an anonymous jury in this case because the "something more" — that is strong evidence that jury intimidation is likely — has not been demonstrated. For the same reasons that empaneling an anonymous jury was error in *Mansoori*, I believe doing so here, on the record before me, would be an abuse of discretion.

ACCORDINGLY:

<div align="center">6</div>

The government's motion to empanel an anonymous jury [DE 1012] is DENIED.

SO ORDERED.

ENTERED: September 30, 2014.

/s/ Philip P. Simon
PHILIP P. SIMON, CHIEF JUDGE
UNITED STATES DISTRICT COURT

2065

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | NO. 2:11 CR 77 PPS |
| | ) | |
| JUAN BRISENO | ) | |

PETITION FOR WRIT OF HABEAS CORPUS AD TESTIFICANDUM

Comes now David Capp, United States Attorney for the Northern District of Indiana, by Assistant United States Attorney David J. Nozick, and represents to the Court that the trial for the above-captioned defendant is set for January 12, 2015, at 8:30 a.m. (Central time), and that a prisoner, Jose Lopez (DOC number 248056), is necessary to be a witness therein.

WHEREFORE, your petitioner prays this Honorable Court grant a Writ of Habeas Corpus ad Testificandum to be directed to:

Warden                                          United States Marshal
Westville Correctional Facility        Northern District of Indiana
Westville, Indiana                          Hammond, Indiana

commanding the surrender of the body of this prisoner to the United States Marshal for the Northern District of Indiana, or one of his duly authorized deputies, or any authorized Marshal, so that the Marshal, or deputy, may produce the body of the prisoner in the United States District Court in the Federal Building, 5400 Federal Plaza, Hammond, Indiana, during the period of the trial set for January 12, 2015, at 8:30 a.m. (Central time), so that the prisoner may be present and

1

testify, the prisoner to be returned after the conclusion of the trial by the United States Marshal,

or one of his duly authorized deputies, to the said institution.

Respectfully submitted,

DAVID CAPP
United States Attorney

By:     /s/ David J. Nozick
        DAVID J. NOZICK
        Assistant United States Attorney
        5400 Federal Plaza, Suite 1500
        Hammond, Indiana 46320
        (219) 937-5500

2

```
MIME-Version:1.0
From:CMECFinnd@innd.uscourts.gov
To:CMECFinnd@localhost.localdomain
Bcc:
--Case Participants: Bryan M Truitt (bryan@tblawyers.com, sherrie@tblawyers.com), David J
Nozick - AUSA (david.nozick@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov,
susan.devries@usdoj.gov, usainn.ecfcivil@usdoj.gov), Kurt R Earnst (kre@braje-nelson.com),
Paul Jeffrey Schlesinger (pjeffslaw@aol.com), Pablo DeCastro
(pdecastro@rascia-decastro.com, ysierra@rascia-decastro.com), Sheldon B Nagelberg
(sbnagelberglaw@att.net), Thomas W Vanes (b.lynneadams@yahoo.com,
tom.vanes@sbcglobal.net), Richard C Wolter (b.lynneadams@yahoo.com), John T Theis
(theislaw@aol.com), Adam Tavitas (adtavitas@aol.com, b.lynneadams@yahoo.com), Dean R
Lanter - AUSA (dean.lanter@usdoj.gov, janet.eisenmann@usdoj.gov,
usainn.ecfcivil@usdoj.gov), John E Martin - FCD (john_martin@fd.org), Scott L King
(dwilliams@scottkinggroup.com, sking@scottkinggroup.com), Mark A Psimos
(psimoslaw@airbaud.net), Ihor Alexander Woloshansky (ihorlawyer@hotmail.com), Richard M
Davis (jdavis@hwelaw.com, rdavis@hwelaw.com, rgould@hwelaw.com), James N Thiros
(jim@thiros.com, lynn@thiros.com), Robert L Rascia (rrascia@rascia-decastro.com,
ysierra@rascia-decastro.com), Gojko Kasich (gkasich@crownlaw.com, gkasich@gmail.com),
Arlington J Foley (arlingtonfoley@att.net), Roxanne Mendez Johnson
(attorneyrmj@gmail.com), Visvaldis P Kupsis (vpkupsis@hotmail.com), Stephen Edward Scheele
(pkd@gk4law.com, ses@gk4law.com), Jack Friedlander (jack@jackfriedlander.com,
office@jackfriedlander.com), Bruce R Hegyi - AUSA (bruce.hegyi@usdoj.gov), R Brian
Woodward (carolb@wbbklaw.com, rbwoodward@wbbklaw.com), John Maksimovich
(criminallaw@johnmaksimovich.com), David E Vandercoy (david.vandercoy@valpo.edu),
Magistrate Judge Andrew P Rodovich (rodovich_chambers@innd.uscourts.gov), Chief Judge
Philip P Simon (denise_woodside@innd.uscourts.gov, jacob_hamann@innd.uscourts.gov,
lauren_schwartz@innd.uscourts.gov, mira_serrill-robins@innd.uscourts.gov,
noel_collins@innd.uscourts.gov, philip_simon@innd.uscourts.gov)
--Non Case Participants: Matthew D Soliday (office@matthewsolidaylaw.com)
--No Notice Sent:

Message-Id:2632473@innd.uscourts.gov
Subject:Activity in Case 2:11-cr-00077-PPS-APR United States of America v. Briseno et al
Order on Motion to Seal Document
```
Content–Type: text/html

## U.S. District Court Northern District of Indiana [LIVE]

## USDC Northern Indiana

## Notice of Electronic Filing

The following transaction was entered on 10/16/2014 at 3:16 PM EST and filed on 10/16/2014

| | |
|---|---|
| **Case Name:** | United States of America v. Briseno et al |
| **Case Number:** | 2:11–cr–00077–PPS–APR |
| **Filer:** | |
| **Document Number:** | 1102(No document attached) |

**Docket Text:**
 **ORDER GRANTING [1091] Motion to Seal Document as to Juan Briseno (1). (Text entry only, no pdf is attached). Approved by Chief Judge Philip P Simon on 10/16/2014. (nac)**

**2:11–cr–00077–PPS–APR–1 Notice has been electronically mailed to:**

David E Vandercoy    david.vandercoy@valpo.edu

Richard M Davis    rdavis@hwelaw.com, jdavis@hwelaw.com, rgould@hwelaw.com

Arlington J Foley    arlingtonfoley@att.net

Mark A Psimos    psimoslaw@airbaud.net

Gojko Kasich    gkasich@crownlaw.com, gkasich@gmail.com

Scott L King    sking@scottkinggroup.com, dwilliams@scottkinggroup.com

James N Thiros    jim@thiros.com, lynn@thiros.com

Thomas W Vanes    tom.vanes@sbcglobal.net, b.lynneadams@yahoo.com

Ihor Alexander Woloshansky    ihorlawyer@hotmail.com

R Brian Woodward    rbwoodward@wbbklaw.com, carolb@wbbklaw.com

John Maksimovich    criminallaw@johnmaksimovich.com

Visvaldis P Kupsis    vpkupsis@hotmail.com

Sheldon B Nagelberg    sbnagelberglaw@att.net

John E Martin – FCD    john_martin@fd.org

Adam Tavitas    Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander    jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele    ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst    kre@braje–nelson.com

Bryan M Truitt    bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis    theislaw@aol.com

Robert L Rascia    rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger    pjeffslaw@aol.com

Pablo DeCastro    pdecastro@rascia–decastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA    dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov,
janet.eisenmann@usdoj.gov

David J Nozick – AUSA    David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov,
janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson    attorneyrmj@gmail.com

Bruce R Hegyi – AUSA    bruce.hegyi@usdoj.gov

**2:11−cr−00077−PPS−APR−1 Notice has been delivered by U.S. Mail or other means to:**

```
MIME-Version:1.0
From:CMECFinnd@innd.uscourts.gov
To:CMECFinnd@localhost.localdomain
Bcc:
--Case Participants: Bryan M Truitt (bryan@tblawyers.com, sherrie@tblawyers.com), David J
Nozick - AUSA (david.nozick@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov,
susan.devries@usdoj.gov, usainn.ecfcivil@usdoj.gov), Kurt R Earnst (kre@braje-nelson.com),
Paul Jeffrey Schlesinger (pjeffslaw@aol.com), Pablo DeCastro
(pdecastro@rascia-decastro.com, ysierra@rascia-decastro.com), Sheldon B Nagelberg
(sbnagelberglaw@att.net), Thomas W Vanes (b.lynneadams@yahoo.com,
tom.vanes@sbcglobal.net), Richard C Wolter (b.lynneadams@yahoo.com), John T Theis
(theislaw@aol.com), Adam Tavitas (adtavitas@aol.com, b.lynneadams@yahoo.com), John E
Martin - FCD (john_martin@fd.org), Scott L King (dwilliams@scottkinggroup.com,
sking@scottkinggroup.com), Mark A Psimos (psimoslaw@airbaud.net), Ihor Alexander
Woloshansky (ihorlawyer@hotmail.com), Richard M Davis (jdavis@hwelaw.com,
rdavis@hwelaw.com, rgould@hwelaw.com), James N Thiros (jim@thiros.com, lynn@thiros.com),
Gojko Kasich (gkasich@crownlaw.com, gkasich@gmail.com), Arlington J Foley
(arlingtonfoley@att.net), Roxanne Mendez Johnson (attorneyrmj@gmail.com), Visvaldis P
Kupsis (vpkupsis@hotmail.com), Stephen Edward Scheele (pkd@gk4law.com, ses@gk4law.com),
Jack Friedlander (jack@jackfriedlander.com, office@jackfriedlander.com), Bruce R Hegyi -
AUSA (bruce.hegyi@usdoj.gov), R Brian Woodward (carolb@wbbklaw.com,
rbwoodward@wbbklaw.com), John Maksimovich (criminallaw@johnmaksimovich.com), David E
Vandercoy (david.vandercoy@valpo.edu), Dean R Lanter - AUSA (dean.lanter@usdoj.gov,
janet.eisenmann@usdoj.gov, usainn.ecfcivil@usdoj.gov), Robert L Rascia
(rrascia@rascia-decastro.com, ysierra@rascia-decastro.com), Magistrate Judge Andrew P
Rodovich (rodovich_chambers@innd.uscourts.gov), Chief Judge Philip P Simon
(denise_woodside@innd.uscourts.gov, jacob_hamann@innd.uscourts.gov,
lauren_schwartz@innd.uscourts.gov, mira_serrill-robins@innd.uscourts.gov,
noel_collins@innd.uscourts.gov, philip_simon@innd.uscourts.gov)
--Non Case Participants: Matthew D Soliday (office@matthewsolidaylaw.com)
--No Notice Sent:

Message-Id:2632480@innd.uscourts.gov
Subject:Activity in Case 2:11-cr-00077-PPS-APR United States of America v. Briseno et al
Order on Motion to Seal Document
Content-Type: text/html
```

## U.S. District Court Northern District of Indiana [LIVE]

### USDC Northern Indiana

## Notice of Electronic Filing

The following transaction was entered on 10/16/2014 at 3:20 PM EST and filed on 10/16/2014

**Case Name:**        United States of America v. Briseno et al

**Case Number:**      2:11-cr-00077-PPS-APR

**Filer:**

**Document Number:** 1103(No document attached)

**Docket Text:**
**ORDER GRANTING [1100] Motion to Seal Document as to Juan Briseno (1). (Text entry only, no pdf is attached). Approved by Chief Judge Philip P Simon on 10/16/2014. (nac)**

**2:11-cr-00077-PPS-APR-1 Notice has been electronically mailed to:**

David E Vandercoy     david.vandercoy@valpo.edu

Richard M Davis     rdavis@hwelaw.com, jdavis@hwelaw.com, rgould@hwelaw.com

Arlington J Foley     arlingtonfoley@att.net

Mark A Psimos     psimoslaw@airbaud.net

Gojko Kasich     gkasich@crownlaw.com, gkasich@gmail.com

Scott L King     sking@scottkinggroup.com, dwilliams@scottkinggroup.com

James N Thiros     jim@thiros.com, lynn@thiros.com

Thomas W Vanes     tom.vanes@sbcglobal.net, b.lynneadams@yahoo.com

Ihor Alexander Woloshansky     ihorlawyer@hotmail.com

R Brian Woodward     rbwoodward@wbbklaw.com, carolb@wbbklaw.com

John Maksimovich     criminallaw@johnmaksimovich.com

Visvaldis P Kupsis     vpkupsis@hotmail.com

Sheldon B Nagelberg     sbnagelberglaw@att.net

John E Martin – FCD     john_martin@fd.org

Adam Tavitas     Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander     jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele     ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst     kre@braje–nelson.com

Bryan M Truitt     bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis     theislaw@aol.com

Robert L Rascia     rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger     pjeffslaw@aol.com

Pablo DeCastro     pdecastro@rascia–decastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA     dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov,
janet.eisenmann@usdoj.gov

David J Nozick – AUSA     David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov,
janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson    attorneyrmj@gmail.com

Bruce R Hegyi – AUSA    bruce.hegyi@usdoj.gov

**2:11–cr–00077–PPS–APR–1 Notice has been delivered by U.S. Mail or other means to:**

```
MIME-Version:1.0
From:CMECFinnd@innd.uscourts.gov
To:CMECFinnd@localhost.localdomain
Bcc:
--Case Participants: Bryan M Truitt (bryan@tblawyers.com, sherrie@tblawyers.com), David J
Nozick - AUSA (david.nozick@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov,
susan.devries@usdoj.gov, usainn.ecfcivil@usdoj.gov), Kurt R Earnst (kre@braje-nelson.com),
Paul Jeffrey Schlesinger (pjeffslaw@aol.com), Pablo DeCastro
(pdecastro@rascia-decastro.com, ysierra@rascia-decastro.com), Sheldon B Nagelberg
(sbnagelberglaw@att.net), Thomas W Vanes (b.lynneadams@yahoo.com,
tom.vanes@sbcglobal.net), Richard C Wolter (b.lynneadams@yahoo.com), John T Theis
(theislaw@aol.com), Adam Tavitas (adtavitas@aol.com, b.lynneadams@yahoo.com), Dean R
Lanter - AUSA (dean.lanter@usdoj.gov, janet.eisenmann@usdoj.gov,
usainn.ecfcivil@usdoj.gov), John E Martin - FCD (john_martin@fd.org), Scott L King
(dwilliams@scottkinggroup.com, sking@scottkinggroup.com), Mark A Psimos
(psimoslaw@airbaud.net), Ihor Alexander Woloshansky (ihorlawyer@hotmail.com), Richard M
Davis (jdavis@hwelaw.com, rdavis@hwelaw.com, rgould@hwelaw.com), James N Thiros
(jim@thiros.com, lynn@thiros.com), Robert L Rascia (rrascia@rascia-decastro.com,
ysierra@rascia-decastro.com), Gojko Kasich (gkasich@crownlaw.com, gkasich@gmail.com),
Arlington J Foley (arlingtonfoley@att.net), Roxanne Mendez Johnson
(attorneyrmj@gmail.com), Visvaldis P Kupsis (vpkupsis@hotmail.com), Stephen Edward Scheele
(pkd@gk4law.com, ses@gk4law.com), Jack Friedlander (jack@jackfriedlander.com,
office@jackfriedlander.com), Bruce R Hegyi - AUSA (bruce.hegyi@usdoj.gov), R Brian
Woodward (carolb@wbbklaw.com, rbwoodward@wbbklaw.com), John Maksimovich
(criminallaw@johnmaksimovich.com), David E Vandercoy (david.vandercoy@valpo.edu),
Magistrate Judge Andrew P Rodovich (rodovich_chambers@innd.uscourts.gov), Chief Judge
Philip P Simon (denise_woodside@innd.uscourts.gov, jacob_hamann@innd.uscourts.gov,
lauren_schwartz@innd.uscourts.gov, mira_serrill-robins@innd.uscourts.gov,
noel_collins@innd.uscourts.gov, philip_simon@innd.uscourts.gov)
--Non Case Participants: Matthew D Soliday (office@matthewsolidaylaw.com)
--No Notice Sent:

Message-Id:2640787@innd.uscourts.gov
Subject:Activity in Case 2:11-cr-00077-PPS-APR United States of America v. Briseno et al
Order on Motion to Seal Document
```
Content−Type: text/html

## U.S. District Court Northern District of Indiana [LIVE]

### USDC Northern Indiana

## Notice of Electronic Filing

The following transaction was entered on 10/28/2014 at 4:29 PM EST and filed on 10/28/2014

| | |
|---|---|
| **Case Name:** | United States of America v. Briseno et al |
| **Case Number:** | 2:11−cr−00077−PPS−APR |
| **Filer:** | |
| **Document Number:** | 1113(No document attached) |

**Docket Text:**
**ORDER GRANTING [1111] Motion to Seal Document as to Juan Briseno (1). (Text entry only, no pdf is attached). Approved by Chief Judge Philip P Simon on 10/28/2014. (nac)**

**2:11−cr−00077−PPS−APR−1 Notice has been electronically mailed to:**

David E Vandercoy    david.vandercoy@valpo.edu

Richard M Davis    rdavis@hwelaw.com, jdavis@hwelaw.com, rgould@hwelaw.com

Arlington J Foley    arlingtonfoley@att.net

Mark A Psimos    psimoslaw@airbaud.net

Gojko Kasich    gkasich@crownlaw.com, gkasich@gmail.com

Scott L King    sking@scottkinggroup.com, dwilliams@scottkinggroup.com

James N Thiros    jim@thiros.com, lynn@thiros.com

Thomas W Vanes    tom.vanes@sbcglobal.net, b.lynneadams@yahoo.com

Ihor Alexander Woloshansky    ihorlawyer@hotmail.com

R Brian Woodward    rbwoodward@wbbklaw.com, carolb@wbbklaw.com

John Maksimovich    criminallaw@johnmaksimovich.com

Visvaldis P Kupsis    vpkupsis@hotmail.com

Sheldon B Nagelberg    sbnagelberglaw@att.net

John E Martin – FCD    john_martin@fd.org

Adam Tavitas    Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander    jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele    ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst    kre@braje–nelson.com

Bryan M Truitt    bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis    theislaw@aol.com

Robert L Rascia    rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger    pjeffslaw@aol.com

Pablo DeCastro    pdecastro@rascia–decastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA    dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov,
janet.eisenmann@usdoj.gov

David J Nozick – AUSA    David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov,
janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson    attorneyrmj@gmail.com

Bruce R Hegyi – AUSA    bruce.hegyi@usdoj.gov

**2:11−cr−00077−PPS−APR−1 Notice has been delivered by U.S. Mail or other means to:**

```
MIME-Version:1.0
From:CMECFinnd@innd.uscourts.gov
To:CMECFinnd@localhost.localdomain
Bcc:
--Case Participants: Richard M Davis (jdavis@hwelaw.com, rdavis@hwelaw.com,
rgould@hwelaw.com), Pablo DeCastro (pdecastro@rascia-decastro.com,
ysierra@rascia-decastro.com), Kurt R Earnst (kre@braje-nelson.com), Arlington J Foley
(arlingtonfoley@att.net), Jack Friedlander (jack@jackfriedlander.com,
office@jackfriedlander.com), Bruce R Hegyi - AUSA (bruce.hegyi@usdoj.gov), Roxanne Mendez
Johnson (attorneyrmj@gmail.com), Gojko Kasich (gkasich@crownlaw.com, gkasich@gmail.com),
Scott L King (dwilliams@scottkinggroup.com, sking@scottkinggroup.com), Visvaldis P Kupsis
(vpkupsis@hotmail.com), Dean R Lanter - AUSA (dean.lanter@usdoj.gov,
janet.eisenmann@usdoj.gov, usainn.ecfcivil@usdoj.gov), John Maksimovich
(criminallaw@johnmaksimovich.com), John E Martin - FCD (john_martin@fd.org), Sheldon B
Nagelberg (sbnagelberglaw@att.net), David J Nozick - AUSA (david.nozick@usdoj.gov,
janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov,
usainn.ecfcivil@usdoj.gov), Mark A Psimos (psimoslaw@airbaud.net), Robert L Rascia
(rrascia@rascia-decastro.com, ysierra@rascia-decastro.com), Stephen Edward Scheele
(pkd@gk4law.com, ses@gk4law.com), Paul Jeffrey Schlesinger (pjeffslaw@aol.com), Adam
Tavitas (adtavitas@aol.com, b.lynneadams@yahoo.com), John T Theis (theislaw@aol.com),
James N Thiros (jim@thiros.com, lynn@thiros.com), Bryan M Truitt (bryan@tblawyers.com,
sherrie@tblawyers.com), David E Vandercoy (david.vandercoy@valpo.edu), Thomas W Vanes
(b.lynneadams@yahoo.com, tom.vanes@sbcglobal.net), Ihor Alexander Woloshansky
(ihorlawyer@hotmail.com), Richard C Wolter (b.lynneadams@yahoo.com), R Brian Woodward
(carolb@wbbklaw.com, rbwoodward@wbbklaw.com), Magistrate Judge Andrew P Rodovich
(rodovich_chambers@innd.uscourts.gov), Chief Judge Philip P Simon
(denise_woodside@innd.uscourts.gov, jacob_hamann@innd.uscourts.gov,
lauren_schwartz@innd.uscourts.gov, mira_serrill-robins@innd.uscourts.gov,
noel_collins@innd.uscourts.gov, philip_simon@innd.uscourts.gov)
--Non Case Participants: Matthew D Soliday (office@matthewsolidaylaw.com)
--No Notice Sent:

Message-Id:2643004@innd.uscourts.gov
Subject:Activity in Case 2:11-cr-00077-PPS-APR United States of America v. Briseno et al
Order on Motion to Seal Document
```
Content–Type: text/html

### U.S. District Court Northern District of Indiana [LIVE]

### USDC Northern Indiana

**Notice of Electronic Filing**

The following transaction was entered on 10/31/2014 at 11:30 AM EST and filed on 10/31/2014

| | |
|---|---|
| **Case Name:** | United States of America v. Briseno et al |
| **Case Number:** | 2:11–cr–00077–PPS–APR |
| **Filer:** | |
| **Document Number:** | 1120(No document attached) |

**Docket Text:**

**ORDER GRANTING [1104] Motion to Seal Document as to Juan Briseno (1). Approved by Chief Judge Philip P Simon on 10/31/2014. (Text entry only, no pdf is attached). (nac)**

**2:11–cr–00077–PPS–APR–1 Notice has been electronically mailed to:**

2077

David E Vandercoy    david.vandercoy@valpo.edu

Richard M Davis    rdavis@hwelaw.com, jdavis@hwelaw.com, rgould@hwelaw.com

Arlington J Foley    arlingtonfoley@att.net

Mark A Psimos    psimoslaw@airbaud.net

Gojko Kasich    gkasich@crownlaw.com, gkasich@gmail.com

Scott L King    sking@scottkinggroup.com, dwilliams@scottkinggroup.com

James N Thiros    jim@thiros.com, lynn@thiros.com

Thomas W Vanes    tom.vanes@sbcglobal.net, b.lynneadams@yahoo.com

Ihor Alexander Woloshansky    ihorlawyer@hotmail.com

R Brian Woodward    rbwoodward@wbbklaw.com, carolb@wbbklaw.com

John Maksimovich    criminallaw@johnmaksimovich.com

Visvaldis P Kupsis    vpkupsis@hotmail.com

Sheldon B Nagelberg    sbnagelberglaw@att.net

John E Martin – FCD    john_martin@fd.org

Adam Tavitas    Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander    jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele    ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst    kre@braje–nelson.com

Bryan M Truitt    bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis    theislaw@aol.com

Robert L Rascia    rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger    pjeffslaw@aol.com

Pablo DeCastro    pdecastro@rascia–decastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA    dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov,
janet.eisenmann@usdoj.gov

David J Nozick – AUSA    David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov,
janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson    attorneyrmj@gmail.com

Bruce R Hegyi – AUSA    bruce.hegyi@usdoj.gov

**2:11–cr–00077–PPS–APR–1 Notice has been delivered by U.S. Mail or other means to:**

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

UNITED STATES OF AMERICA            )
                                    )
            v.                      )        NO. 2:11 CR 77 PPS
                                    )
JUAN BRISENO                        )

AMENDED PETITION FOR WRIT OF HABEAS CORPUS AD TESTIFICANDUM

Comes now David Capp, United States Attorney for the Northern District of Indiana, by Assistant United States Attorney David J. Nozick, and represents to the Court that the trial for the above-captioned defendant is set for January 12, 2015, at 8:30 a.m. (Central time), and that a prisoner, Jose Lopez (DOC number 248056), is necessary to be a witness therein.

WHEREFORE, your petitioner prays this Honorable Court grant a Writ of Habeas Corpus ad Testificandum to be directed to:

Warden                              United States Marshal
Westville Correctional Facility     Northern District of Indiana
Westville, Indiana                  Hammond, Indiana

commanding the surrender of the body of this prisoner to the United States Marshal for the Northern District of Indiana, or one of his duly authorized deputies, or any authorized Marshal, so that the Marshal, or deputy, may produce the body of the prisoner in the United States District Court in the Federal Building, 5400 Federal Plaza, Hammond, Indiana, on  February 9, 2015, at 8:30 a.m. (Central time), so that the prisoner may be present and testify, the prisoner to be

1

2080

returned after the conclusion of the trial by the United States Marshal, or one of his duly authorized deputies, to the said institution.

Respectfully submitted,

DAVID CAPP
United States Attorney

By:    /s/ David J. Nozick
       DAVID J. NOZICK
       Assistant United States Attorney
       5400 Federal Plaza, Suite 1500
       Hammond, Indiana 46320
       (219) 937-5500

2

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION


| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | 2:11 CR 77 PPS |
| | ) | |
| JUAN BRISENO | ) | |


GOVERNMENT'S SECOND EVIDENTIARY PROFFER SUPPORTING THE
ADMISSIBILITY OF CO-SCHEMER AND AGENT STATEMENTS

The UNITED STATES OF AMERICA, by its attorney, DAVID CAPP, United States

Attorney for the Northern District of Indiana, respectfully submits this written proffer, pursuant

to the provisions of Federal Rule of Evidence 801, including Federal Rules of Evidence

801(d)(2)(D) and 801(d)(2)(E), and *United States v. Santiago*, 582 F.2d 1128 (7th Cir. 1987), of

the government's evidence supporting the admission of co-schemers' and agents' statements at

trial.   This proffer sets forth a summary of the evidence that the government will offer at trial

relating to a scheme among defendants Juan Briseno, Galo Benjamin Feliciano, Guillermo

Briseno, Alejandro Lara, Justin Weaver, Michael Castillo, Kelvin Beltran, David Almaraz,

Joseph Rene Torres, Jason Medina, Edward Raye Serna, Robert Lockhart, Armando Jose

Velasquez, Anthony Baldazo, Salvador Chavez, Raymond Campos, Ace Cortez, Julian

Guillermo Serna, Julius Solis, Darmaile Cortez Sutton, Eddie Torres, Richard Reyes and Vincent

Garza who acted together and with others to commit offenses against the United States, namely

racketeering, murder, attempted murder, armed robbery, and drug trafficking.   This proffer also

1

summarizes the defendants' and their co-schemers' statements that furthered the defendants' criminal scheme.

This proffer sets forth the agency principles under which the statements of these additional actors are admissible pursuant to Rule 801(d)(2)(D) and 801(d)(2)(E) as statements of co-schemers and agents. The legal principles governing admissibility of co-conspirator statements apply to the racketeering enterprise and drug conspiracy in this case. This proffer begins by discussing the law governing the admissibility of co-schemer statements under Federal Rule of Evidence 801(d)(2)(E), and the agency provisions of Rule 801(d)(2)(D). Next, this proffer summarizes some of the evidence supporting the admission of co-schemers' statements and agents' statements.

The government is not detailing all of its evidence showing the existence of the scheme charged in the Fourth Superseding indictment, all of the statements that were made in furtherance of the scheme, or all statements made by agents within the scope of the agency. Instead, this proffer outlines the law governing the admissibility of such statements, provides background to the Court for evaluating the admissibility of these statements, and highlights examples of its evidence. In this manner, the government will establish to the Court the existence of the evidence available to complete the necessary foundation at trial and the roles of various witnesses, as well as the bases for admission.

2

2083

## I. THE LAW GOVERNING THE ADMISSIBILITY OF CO-SCHEMER AND AGENTS' STATEMENTS.

Rule 801(d)(2)(E) of the Federal Rules of Evidence provides that a "statement" is not hearsay if it "is offered against a party" and is "a statement by a coconspirator of a party during the course and in furtherance of the conspiracy." The admission of a co-conspirator statement against a defendant is proper where the government establishes by a preponderance of evidence that: (1) a conspiracy or scheme existed; (2) the defendant and the declarant were members of that particular conspiracy or scheme; and (3) the statement was made during the course and in furtherance of the conspiracy or scheme. *See, e.g., Bourjaily v. United States*, 483 U.S. 171, 175 (1987); *United States v. Westmoreland*, 312 F.3d 302, 309 (7th Cir. 2002).

### A. The *Santiago* Proffer Is the Approved Method of Proffering Co-Schemer Statements.

In this Circuit, the preferred way for the government to makes its preliminary factual showing as to the admissibility of such statements is by filing a pretrial written proffer of the government's evidence. *See, e.g., United States v. Hoover*, 246 F.3d 1054, 1060 (7th Cir. 2001); *United States v. Irorere,* 228 F.3d 816, 824 (7th Cir. 2000). In making its preliminary factual determinations, the court must consider the statements themselves as evidence of a joint scheme and whether the statements the government seeks to admit were made in furtherance of that scheme. *United States v. Brookins*, 52 F.3d 615, 623 (7th Cir. 1995); *United States v. Maholias*, 985 F.2d 869, 877 (7th Cir. 1993). Indeed, the court may consider all non-privileged evidence. *United States v. Lindemann*, 85 F.3d 1232, 1238 (7th Cir. 1996).

2084

**B.     Co-Schemer Statements Are Admissible as Nonhearsay Despite the Absence of a Formal Conspiracy Charge, and Regardless of Criminal Intent of Each Co-Schemer.**

Statements may be admitted under Rule 801(d)(2)(E) notwithstanding the lack of any formal conspiracy charge.  *See, e.g., Godinez*, 110 F.3d at 454; *Santiago*, 582 F.2d at 1130.  In addition, there is no requirement that each member of the venture share a criminal intent for the co-schemer rule to apply to statements that members made in furtherance of the scheme.  These two rules are based on the very nature of the co-conspirator doctrine:

> The distinction should be noted between "conspiracy" as a crime and the co-conspirator exception to the hearsay rule.  Conspiracy as a crime comprehends more than mere joint enterprise.  It also includes other elements, such as a meeting of the minds, criminal intent and, where required by statute, an overt act.  . . .  The co-conspirator exception to the hearsay rule, on the other hand, is merely a rule of evidence founded, to some extent, on concepts of agency law.  It may be applied in both civil and criminal cases. . . . Its rationale is the common sense appreciation that a person who has authorized another to speak or to act to some joint end will be held responsible for what is later said or done by his agent, whether in his presence or not.
>
> \*          \*          \*
>
> The substantive criminal law of conspiracy, though it obviously overlaps in many areas, simply has no application to this evidentiary principle. Thus, once the existence of a joint venture for an illegal purpose, or for a legal purpose using illegal means, and a statement made in the course of and in furtherance of that venture have been demonstrated by a preponderance of the evidence, it makes no difference whether the declarant or any other "partner in crime" could actually be tried, convicted and punished for the crime of conspiracy.

*United States v. Gil*, 604 F.2d 546, 549-550 (7th Cir. 1979) (citations omitted).

This distinction was also explored in *United States v. Coe*, 718 F.2d 830 (7th Cir. 1983). In *Coe*, the court explained that a so-called co-conspirator statement's admissibility does not depend on the substantive law of conspiracy:

4

2085

Conspiracy as an evidentiary rule differs from conspiracy as a crime.  The crime of conspiracy comprehends much more than just a joint venture or concerted action, whereas the evidentiary rule of conspiracy is founded on concepts of agency law. . . .   Recognizing this, some courts refer to the coconspirator exception as the "joint venture" or "concert of action" exception.  . . .   A charge of criminal conspiracy is not a prerequisite for the invocation of this evidentiary rule. . . .   Indeed, it may be invoked in civil as well as criminal cases.   . . .

The proposition that the government did have to establish by a preponderance of independent evidence was that [the individuals] . . . were engaged in a joint venture--that there was a "combination between them . . . ."

*Coe*, 718 F.2d at 835 (citations omitted).[11]

---

[1] *See also Hitchman Coal & Coke Co. v. Mitchell*, 245 U.S. 229, 249 (1917)(explaining origin of the co-conspirator rule in the law of partnership)("the act or declaration of one, in furtherance of the common object, is the act of all, and is admissible as primary and original evidence against them.").

5

2086

Case 2:11-cr-00077-PPS-APR   Document 1131   Filed 11/04/14   Page 6 of 29

## C.    The Supreme Court's *Crawford* Decision Has Not Changed the Admissibility of Co-Schemer Statements.

The Supreme Court's decision in *Crawford   v. Washington*, 541 U.S. 36 (2004), changed much of the law concerning out-of-court testimonial statements, but it did not affect the admissibility of co-schemer statements.    In *Crawford*, the prosecution introduced a tape-recorded statement made before trial by the defendant's wife to law enforcement.   *Id.* at 38.   At trial, however, the wife was unavailable as a witness due to the state's spousal privilege law, and thus the defendant did not have an opportunity to cross-examine her.   *Id.* at 40.   The Court ruled that admission of the statement violated the Confrontation Clause, holding that where the government offers an unavailable declarant's hearsay that is "testimonial" in nature, the Confrontation Clause requires actual confrontation, that is, cross-examination, regardless of how reliable the statement may be.   *Id.* at 51-52.   As examples of "testimonial" statements, the Court listed prior testimony at a preliminary hearing, before a grand jury, or at a former trial, and to police interrogations.   *Id.* at 68.

The rule in *Crawford* does not apply, however, to statements that are not hearsay.[2] Thus, the Seventh Circuit has squarely held that *Crawford* does not apply to – and did not change the law relating to – co-schemer statements.   In *United States v. Jenkins*, 419 F.3d 614 (7th Cir. 2005), the court noted:

---

[2] The rule in *Crawford* also does *not* apply where:  (1) a statement, though testimonial in nature, is not offered for the truth of the matter asserted, 541 U.S. at 59 n.9; (2) the declarant testifies at trial and is subject to cross-examination regarding the prior statement, *id.* at 59 n.9; (3) the statement is non-testimonial, *id.* at 60; or (4) the declarant is unavailable to testify and the defendant had a prior opportunity for cross-examination, *id.* at 59. Another exception to the confrontation requirement applies where the defendant procured the declarant's unavailability, that is, "forfeiture by wrong-doing," *see id.* at 62; Fed. R. Evid. 804(b)(6).

6

> As to the Confrontation Clause argument, *Crawford* does not apply. The recordings featured the statements of co-conspirators. These statements, by definition, are not hearsay. *Crawford* did not change the rules as to the admissibility of co-conspirator statements.

419 F.3d at 618. Because co-schemer statements are not "testimonial" hearsay statements, *Crawford* is not implicated, and those statements may be admitted without offending the Sixth Amendment.

**D.      The Proper Standard for Admissibility Is Preponderance of the Evidence.**

A district court's preliminary determination of admissibility for purposes of Rule 801(d)(2)(E) is distinct from the standard required in determining on appeal whether sufficient evidence exists to uphold a jury verdict. The standard to be applied in the context of admissibility under Rule 801(d)(2)(E) is a preponderance-of-the-evidence standard. *Lindemann*, 85 F.3d at 1238 (*citing Bourjaily*, 438 U.S. at 175-76); *Godinez*, 110 F.3d at 454).

**E.      Principles for Determining Membership in and Existence of the Criminal Scheme.**

1.      *The court may consider the proffered statements themselves*.

A district court may consider the proffered statements themselves in determining the existence of a scheme, and a defendant's participation in it. *Bourjaily,* 483 U.S. at 180; *United States v. de Ortiz*, 907 F.2d 629, 633 (7th Cir. 1990). However, the government typically must present some evidence, independent of the statements. *Lindemann*, 85 F.3d at 1238.

2.      *Both direct and circumstantial evidence can be considered.*

Once the scheme is established, the evidence may be either direct or circumstantial. *Irorere*, 228 F.3d at 823; *United States v. Patterson*, 213 F. Supp. 2d 900, 910-11 (N.D. Ill.

2002)(Bucklo, J.), *aff'd*, 348 F.3d 218, 225-26 (7th Cir. 2003). Indeed, "[b]ecause of the secretive character of conspiracies, direct evidence is elusive, and hence the existence and the defendants' participation can usually be established only by circumstantial evidence." *United States v. Redwine*, 715 F.2d 315, 319 (7th Cir. 1983). *See also Lindemann*, 85 F.3d at 1238 (secretive nature of conspiracies one reason for conspirator exception to hearsay rule).

In this case, the evidence is both direct and circumstantial. The defendants conducted their criminal enterprise through soldiers all the way up to the highest-ranking members of the Imperial Gangsters. Many of those individuals will testify about conversations with defendants and other co-schemers. In addition, defendants acted to conceal their activities by talking in code, by intimidating witnesses, and by threatening members to maintain discipline. The circumstances surrounding those activities are circumstantial evidence of the defendants' intent.

3. *Requirements for determining if a person has joined the scheme*.

A defendant joins a criminal scheme if he agrees with another person to one or more of the common objectives of the scheme; it is immaterial whether the defendant knows, has met or has agreed with every co-schemer. *United States v. Boucher*, 796 F.2d 972, 975 (7th Cir. 1986); *United States v. Balistrieri*, 779 F.2d 1191, 1225 (7th Cir. 1985); *see also Rodriguez*, 975 F.2d at 411 (defendant must have intended to join and associate himself with the conspiracy's criminal design and purpose). The government need not prove, however, that a defendant knew each and every detail of the scheme or played more than a minor role in the scheme. *United States v. Sims*, 808 F. Supp. 620, 623 (N.D. Ill. 1992)(Alesia, J.). As the Supreme Court has said:

> A conspiracy may exist even if a conspirator does not agree to commit or facilitate each and every part of the substantive offense. . . . The partners in the criminal plan must agree to pursue the same criminal objective and may divide up the work, yet each is responsible for the acts of each other. . . . If conspirators have

8

a plan which calls for some conspirators to perpetrate the crime and others to provide support, the supporters are as guilty as the perpetrators.

*Salinas v. United States*, 522 U.S. 52, 63-4 (1997)(citations omitted).[13/]

In this case, defendants acted jointly as part of the Imperial Gangsters. They had different functions. Some individuals, such as Eddie Torres, Juan Briseno, Guillermo Briseno, and Galo Feliciano, served as leaders of the 149th Street Imperial Gangsters, while others were merely soldiers. Similarly, individuals such as Ace Cortez served as a leader of the 139th Street Imperial Gangsters, while others served as soldiers, acting at his command.

A defendant may be found to have participated in a scheme even if he joined or terminated his relationship with others at a different time than another defendant or co-schemer. *United States v. Ramirez*, 796 F.2d 212, 215 (7th Cir. 1986); *United States v. Noble*, 754 F.2d 1324, 1329 (7th Cir.1985).[14/] A district court may consider the conduct, knowledge, and statements of the defendant and others in establishing participation in a scheme. A single act or conversation, for example, can suffice to connect the defendant to the scheme if that act leads to the reasonable inference of intent to participate in an unlawful enterprise. *See, e.g., Sims*, 808 F. Supp. at 623.[15/] Statements made during the course of and in furtherance of a scheme, even in

---

[3/]*See also United States v. Liefer*, 778 F.2d 1236, 1247 n.9 (7th Cir. 1985); *United States v. Towers*, 775 F.2d 184, 189 (7th Cir. 1985).

[4/] A defendant, even if not an "agreeing" member of a conspiracy, may nonetheless be found guilty of conspiracy if he knew of the conspiracy's existence at the time of his acts, and his acts knowingly aided and abetted the business of the conspiracy, *see United States v. Scroggins*, 939 F.2d 416, 421 (7th Cir. 1991); *Sims*, 808 F. Supp. at 623 n.1, even if the defendant was not charged with aiding and abetting, *see United States v. Kasvin*, 757 F.2d 887, 890-91 (7th Cir.1985).

[5/]Similarly, efforts by an alleged co-schemer to conceal a scheme may support an inference that he joined the scheme while it was still in operation. *See Redwine;* 715 F.2d at 321; *United States v. Robertson*, 659 F.2d 652, 657 (5th Cir. 1981).

9

its embryonic stages, are admissible against those who arrive late to join a going concern. *United States v. Potts*, 840 F.2d 368, 372 (7ᵗʰ Cir. 1987).  A schemer who has become inactive in the scheme nevertheless is liable for his co-schemers' further statements unless he openly disavows the scheme or reports it to the police.  *United States v. Feldman*, 825 F.2d 124, 129 (7ᵗʰ Cir. 1987).  *See also United States v. Andrus,* 775 F.2d 825, 850 (7ᵗʰ Cir. 1985).

**F.       Statements Made in Furtherance of the Scheme.**

In determining whether a statement was made "in furtherance" of the scheme, courts look for a reasonable basis upon which to conclude that the statement furthered the scheme's goals. *United States v. Johnson*, 200 F.3d 529, 533 (7ᵗʰ Cir. 2000).  Under the reasonable-basis standard, a statement may be susceptible to alternative interpretations and still be "in furtherance" of the scheme; the statement need not have been exclusively, or even primarily, made to further the scheme in order to be admissible under the co-schemer exception.  *See, e.g., Johnson*, 200 F.3d at 533 (citing *United States v. Stephenson,* 53 F.3d 836, 845 (7ᵗʰ Cir. 1995)).

The Seventh Circuit has found a wide range of statements to satisfy the "in furtherance" requirement.  *See, e.g.*, *United States v. Cozzo*, No. 02 CR 400, 2004 U.S. Dist. LEXIS 7391 (N.D. Ill. April 16, 2004)(Zagel, J.)(collecting cases).  In general, a statement that is "part of the information flow between conspirators intended to help each perform his role" is admissible under Rule 801(d)(2)(E).  *United States v. Santos*, 20 F.3d 280, 286 (7ᵗʰ Cir. 1994), *quoting United States v. Johnson*, 927 F.2d 999, 1001 (7ᵗʰ Cir. 1991); *accord*, *United States v. Gajo*, 290 F.3d 922, 929 (7ᵗʰ Cir. 2002).  These include statements made:   (1) to identify other members of the scheme and their roles,   *United States v. Roldan-Zapata,* 916 F.2d 795, 803 (2d Cir. 1990);

10

*United States v. Magee*, 821 F.2d 234, 244 (5th Cir. 1987); (2) to recruit potential co-schemers, *United States v. Curry*, 187 F.3d 762, 766 (7th Cir. 1999); (3) to control damage to an ongoing scheme, *United States v. Van Daal Wyk,* 840 F.2d 494, 499 (7th Cir. 1988); *Kapp*, 2003 U.S. Dist. LEXIS 3989, at *3; (4) to keep co-schemers advised as to the progress of the scheme, *Potts*, 840 F.2d at 371; *Kapp*, 2003 U.S. Dist. LEXIS 3989, at *3; (5) to conceal the criminal objectives of the scheme, *United States v. Kaden*, 819 F.2d 813, 820 (7th Cir. 1987); (6) to plan or to review a co-schemer's exploits, *United States v. Molt*, 772 F.2d 366, 368-69 (7th Cir. 1985); or (7) as an assurance that a co-schemer can be trusted to perform his role. *United States v. Pallais*, 921 F.2d 684, 688 (7th Cir. 1990); *Van Daal Wyck*, 840 F.2d at 499. The Seventh Circuit has also said that "[s]tatements made to keep coconspirators informed about the progress of the conspiracy, to recruit others, or to control damage to the conspiracy are made in furtherance of the conspiracy." *Stephenson,* 53 F.3d at 845. *Accord, United States v. Curtis*, 37 F.3d 301, 307 (7th Cir. 1994).

     1.    *Statements made to execute the scheme.*

Statements made by co-schemers to conduct the business of the scheme and to accomplish its goals are "classic examples of statements made to conduct and further" a scheme. *Cox*, 923 F.2d at 527. Statements such as these, which are "intended to promote the conspiratorial objectives," should be admitted pursuant to Rule 801(D)(2)(E).[6/] Statements that prompt the listener to act in a manner that facilitates the carrying out of the scheme are also made

---

[6/]*United States v. Sinclair*, 109 F.3d 1527, 1534 (10th Cir. 1997); *accord, United States v. Shores*, 33 F.3d 438, 444 (4th Cir. 1994).

"in furtherance" of the scheme.[17]   Whether a particular statement tends to advance the objectives of the scheme or to induce the listener's assistance is determined by an examination of the context in which it is made.   *Garlington v. O'Leary*, 879 F.2d 277, 284 (7th Cir. 1989).

> 2.       *Statements regarding the scheme's activities.*

Statements "describing the purpose, method, or criminality of the conspiracy," are made in furtherance of the scheme because co-schemers make such statements to guide each other toward achievement of the objectives of the scheme.   *United States v. Ashman*, 979 F.2d 469, 489 (7th Cir. 1992).   Similarly, statements that are part of the information flow between co-schemers made in order to help each co-schemer perform his role are "in furtherance" of the scheme.   *See, e.g.*, *Godinez,* 110 F.3d at 454; *Garlington*, 879 F.2d at 283-84;   *Van Daal Wyk,* 840 F.2d at 499.   Statements to assure that a co-schemer can be trusted to perform his role also satisfy the "in furtherance" requirement.   *See, e.g.*, *United States v. Romo*, 914 F.2d 889, 897 (7th Cir. 1990); *de Ortiz*, 907 F.2d at 635-36 (7th Cir. 1990).

> 3.       *Statements to recruit co-schemers*.

Statements made to recruit potential members of the scheme are made "in furtherance" of the scheme.   *Curry*, 187 F.3d at 766; *Godinez*, 110 F.3d at 454.

> 4.       *Statements regarding the activities of other co-schemers designed to inform or reassure the listener.*

Statements made by schemers to other individuals who participate in, or interact with, the scheme contribute to the scheme.   *See Van Daal Wyk*, 840 F.2d at 499 (wholesaler instructed his courier not to deliver any additional quantities of cocaine to the defendant, a dealer).

---

[17] *United States v. Monus*, 128 F.3d 376, 392 (6th Cir. 1997); *United States v. Simmons*, 923 F.2d 934, 945

2093

> The exchange of information is the lifeblood of a conspiracy, as it is of any cooperative activity, legal or illegal.  Even commenting on a failed operation is in furtherance of the conspiracy, because people learn from their mistakes.  Even identification of a coconspirator by an informative nickname. . .  is in furtherance of the conspiracy, because it helps to establish, communicate, and thus confirm the lines of command in the organization.  Such statements are "part of the information flow between conspirators intended to help each perform his role," and no more is required to make them admissible.

*Pallais*, 921 F.2d at 688.  The same logic dictates that discussions concerning a scheme's successes are admissible as statements in furtherance of the scheme.  *See id.; Van Daal Wyk*, 840 F.2d at 499.

Statements intended to reassure the listener regarding the progress or stability of the scheme also further the scheme.  *United States v. Sophie*, 900 F.2d 1064, 1073 (7th Cir. 1990) (description of past drug deals).  Likewise, statements made to reassure and calm the listener may further the scheme, *see Garlington*, 879 F.2d at 284; *United States v. Molinaro*, 877 F.2d 1341, 1343-44 (7th Cir. 1989) (upholding admission of statements designed to iron out disputed details of the conspiracy and to control the damage apparently done to the conspiracy).

5.      *Statements relating to the progress and past accomplishments of the scheme*.

Statements made by co-schemers concerning past exploits by members of the scheme are in furtherance of the scheme when made to assist in managing and updating other members of the scheme.  *Potts*, 840 F.2d at 371; *Molt*, 772 F.2d at 368-69.  Similarly, statements regarding a co-schemer's failure to fully accomplish the objective of the scheme are admissible "as updates on the status of the conspiracy" and how that status affected the future of the scheme.  *United States v. Doyle*, 771 F.2d 250, 256 (7th Cir. 1985).

---

(2d Cir. 1991); *United States v. Smith*, 833 F.2d 213, 219 (10th Cir. 1987).

13

6.      *Statements to conceal the criminal objectives of the scheme*.

Finally, statements made to conceal the criminal objectives of the scheme are made "in furtherance" of the scheme where, as here, ongoing concealment is one of its purposes.  *See, e.g., United States v. Maloney*, 71 F.3d 645, 660 (7th Cir. 1995); *Kaden*, 819 F.2d at 820. "Avoiding detection by law enforcement officials clearly furthers the aims of a conspiracy." *United States v. Troop*, 890 F.2d 1393, 1404 (7th Cir. 1989).  Statements made to control damage to an ongoing scheme have also been found to have been made in furtherance of the scheme.  *See Stephenson*, 53 F.3d at 845; *Van Daal Wyk*, 840 F.2d at 499.


**G.      Alternative Bases for Admissibility of Statements.**

The government believes that the statements of co-schemers set forth in this proffer should be admitted as non-hearsay under the co-schemer doctrine.  There are alternative bases, however, for admission of many of the statements.  These bases do not require a Rule 801(d)(2)(E) analysis.

1.      *Agency admissions pursuant to Rule 801(d)(2)(D).*

14

Many of the participants in the scheme were acting as agents for the defendants. Federal Rule of Evidence 801(d)(2)(D) sets forth the evidentiary foundation for admission of statements by agents against their principals – including criminal defendants. *See Feldman*, 825 F.2d at 127-29.[18/]  Rule 801(d)(2)(D) provides that a statement is not hearsay if it is offered against a party and is "a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship."[19/]  Thus, out-of-court statements by agents of a defendant may come into evidence as non-hearsay admissions against the defendant principal when the principal is an individual who directs the conduct of the entity and is otherwise directing and supervising the conduct of his employee subordinates. *See Wilkinson*, 920 F.2d at 1565; *United States v. Ramsey*, 785 F.2d 184, 191 (7th Cir. 1986)(statements by "executive assistants" were admissible against defendant corporation under Rule 801(d)(2)(d)).  Thus, for purposes of admission under Rule 801(d)(2)(D), a statement made by an agent is admissible against the principal, provided that the agent's statement was made within the scope of the agency.[110/]

---

[8/]This is different than the substantive principals applicable to criminal liability for an entity.  For purposes of corporate criminal liability, it is not necessary to show that the particular act was itself authorized or directed by the entity, *see Seventh Circuit Federal Jury Instr. Section 5.03,* but is necessary to show that the agent was motivated, at least in part, by an intent to benefit the corporation. *See, e.g., United States v. One Parcel Of Land Located At 7326 Highway 45 North, Three Lakes, Wisconsin,* 965 F.2d 311, 316 (7th Cir. 1992); *United States v. Automated Med. Labs.*, 770 F.2d 399, 407 (4th Cir. 1985).

[9/]A strict agency analysis is not contemplated by the terms of Rule 801(d)(2)(D). *Wilkinson v. Carnival Cruise Lines, Inc.*, 920 F.2d 1560, 1565-66 (11th Cir. 1991).  The Rule broadened the traditional view so that it is no longer necessary to show that an employee or agency declarant possesses "speaking authority" – tested by the usual statements of agency law – before a statement can be admitted against the principal.  *Wilkinson*, 920 F.2d at 1565.  *Cf. Aliotta v. National R.R. Pass. Corp.*, 315 F.3d 756, 762-63 (7th Cir. 2003)(discussing admissibility of agent's statements).

[10/]  With respect to statements made by certain cooperating witnesses, among others, another basis for admission is Rule 801(d)(2)(C), which provides for the admission of "authorized" statements within the context of an existing agency relationship.  *See Feldman*, 825 F.2d at 127.

15

2096

In this case, as noted below, the defendants worked through a number of agents to effectuate their criminal enterprise. To the extent these agents' statements are being offered for the truth of the matters asserted, their statements should be admitted pursuant to Rule 801(d)(2)(D).

2.    *Defendants' own statements*.

A defendant's own admissions are admissible against him pursuant to Fed. R. Evid. 801(d)(2)(A), without reliance on the co-schemer-statement rule.[11/] *Maholias*, 985 F.2d at 877. A defendant's own admissions, moreover, are relevant to establishing the factual predicates for the admission of co-schemer statements against him. *See, e.g., Godinez*, 110 F.3d at 455; *Potts*, 840 F.2d at 371-72.[12/]

## II.  THE GOVERNMENT'S PROFFER REGARDING THE EXISTENCE OF A SCHEME AND BASIS OF AGENCY ADMISSIONS

As set forth in the Fourth Superseding Indictment, the criminal enterprise operated through the statements and actions of the charged defendants and uncharged co-schemers spanning over at least eleven years. The government's theory is that the Imperial Gangsters were a criminal enterprise that operated in an organized fashion in East Chicago, Indiana for years, committing acts of violence and drug trafficking. This evidence will be presented from a variety of sources. The government will call to the stand approximately seven members of the Imperial Gangsters who have pled guilty in this case and are cooperating with the government.

---

[11/]  Rule 801(d)(2)(A) provides in pertinent part that a "statement" is not hearsay if "[t]he statement is offered against a party and is . . . the party's own statement, in either an individual or a representative capacity."

[12/]  Other sections of Rule 801(d)(2) provide alternative bases of admissibility that may apply. Rule 801(d)(2)(B), for example, provides for the admissibility of "adopted" statements.

16

The government will also call to the stand former members and associates of the Imperial

Gangsters who were not charged in this case.   The government will also introduce testimony and

physical evidence from law enforcement witnesses who investigated the various crimes alleged.

In addition, the government will introduce evidence from numerous independent witnesses to the

murder and attempted murders committed by the defendants in this case.


**The Rules and Structure of the Imperial Gangsters**


        The evidence at trial will be that the Imperial Gangsters are a Chicago-based gang, with

factions around the country, including Northwest Indiana and Florida.   The Imperial Gangsters

belong to the "Folk Nation" of gangs, which has traditionally been in conflict with the "People

Nation" of gangs.   Despite belonging to the "Folk Nation" of gangs, Imperial Gangsters were in

constant conflict with virtually all other gangs, regardless of "Folk" or "People" affiliation.

Traditional rivals of the Imperial Gangsters are the Latin Kings, the Two Six Nation, the Spanish

Gangster Disciples, the Ambrose Street Gang and the Black P-Stones Nation.

        In order to join the Imperial Gangsters, one must serve for a period of time as a "shorty"

or prospective member.   During this time period the "shorty" must obey the direction and

commands of the members of the gangs.   Once it is decided by the members of the Imperial

Gangsters that a "shorty" is ready to be "blessed in" to the Imperial Gangsters, the "shorty" is

initiated by enduring a beating, or "violation," by full-fledged members of the gang.   This

violation can consist of either a certain number of punches to the chest while the "shorty" stands

up against a wall, or a "head to toe" beating for a certain number of minutes by two or more

members of the gang.

Each faction has a leader, who has the ultimate decision-making authority. Each faction also has a treasurer who is in charge of collecting dues, and an enforcer, who is in charge of meting out punishments or "violations." Each faction also has a ranking member who is in charge of supervising and training the "shorties" until they are "blessed in" or have their "coming home" as full members of the Imperial Gangsters.

Imperial Gangsters have regular meetings, which can occur in a member's house, out on "the block" or in a park or cemetery. Attendance at these meetings was mandatory, and an individual would be violated, meaning receive a physical beating, if he repeatedly missed meetings without having a valid excuse. At the meetings gang members would discuss various gang business, including drug dealing, police activity, violations of gang rules, and ongoing physical disputes with rival gangs.

Each Imperial Gangster was required to pay dues to the Imperial Gangsters. The amount of dues to be paid by each member varied, depending on whether or not he had a job and whether or not he was actively selling drugs. An individual who was selling large quantities of drugs would have to pay more in dues than one who was not. The dues would go towards, amongst other things, purchasing guns to be used by the gang, purchasing narcotics to be sold by the gang, paying for attorneys and bonds for incarcerated gang members, and putting money on the commissary accounts of incarcerated members.

Each member of the Imperial Gangsters was required to "post up" in their neighborhood, meaning that they would have to be out on the streets in their neighborhood, on the lookout for the police, rival gang members, and drug dealers who were selling drugs in their neighborhood

18

without their permission.   If a member was not putting in an adequate time "posting up" in the

Imperial Gang neighborhood, he would be violated.   While "posting up" in the neighborhood, an

Imperial Gangster was required to physically confront any rival gang member that he saw.   If the

Imperial Gangster had a gun on him or in the vicinity, he was required to shoot the rival gang

member, in an effort to kill him.   If the Imperial Gangster did not have a gun on him while

posted up, it was his responsibility to go get a gun, or fight the rival gang member with another

weapon or with his fists.   An Imperial Gangster would be violated if he allowed a rival gang

member to walk through Imperial Gangster "turf" without shooting at him or physically

assaulting him.

   In addition, the Imperial Gangster rules dictated that no one could sell drugs in their

neighborhood, other than Imperial Gangsters.   An exception to this rule could be made if the

individual selling the drugs was being supplied by the Imperial Gangsters.   Any Imperial

Gangster who allowed other drug dealers to sell in their neighborhood would be violated.

**Factions of the Imperial Gangsters**

   There are three factions of the Imperial Gangsters that operate in Northwest Indiana.

The indictments in the instant case charge members of both the 149th Street Imperial Gangsters

and the 139th Street Imperial Gangsters.   The 149th Street Imperial Gangsters are based on the

South side of East Chicago, in the vicinity of 149th Street and Northcote.   The 139th Street

Imperial Gangsters are based in the Harbor Section of East Chicago.   Both factions are part of

the same criminal enterprise.   Guns would frequently be traded back and forth between the two

factions of the Imperial Gangsters, and members of each faction would frequently supply each

19

other with narcotics.   In addition, members of each faction would frequently "post up" in the other faction's neighborhood, assisting them in securing their neighborhood.   At various times during the course of the charged conspiracy there were conflicts between the two factions, which sometimes resulted in violence.

There is also a third faction of the Imperial Gangsters in existence in Northwest Indiana, although none of them are charged in the instant case.   At some point in the early 2000s a conflict arose between various members of 139th Street Imperial Gangsters, causing some individuals to break off and form their own "Renegade" faction of the 139th Street Imperial Gangsters.   Members of this "Renegade" faction of the Imperial Gangsters include but are not limited to homicide victim Mario Soriano, Subject 4, Subject 7, the son of Subject 16, Subject 24 and Subject 25.   No members of this "Renegade" faction were charged in this indictment largely because during a substantial portion of the time frame alleged in the charged conspiracies they were in conflict with the 139th Street Imperial Gangsters.   While there was no established rule on the matter, many members of the "Renegade" 139th Street Imperial Gangsters got along with the 149th Street Imperial Gangsters and with members of the Two Six street gang.

**Homicides Committed in Furtherance of the Conspiracy**

During the course of the conspiracy the Imperial Gangsters committed numerous homicides in furtherance of the conspiracy.   The government will introduce evidence at trial that the charged defendants in this case committed fifteen homicides in furtherance of their criminal enterprise.   A majority of these homicides involved the targeting killing of rival gang members. The evidence at trial will be that on July 24, 2004, Ace Cortez shot and killed Anuar Paez a/k/a

20

"Bronco" because Paez was a rival Two Six gang member who had just shot at Cortez and other Imperial Gangsters minutes before.   On July 24, 2005, Jason Medina, Vincent Garza and Salvador Chavez killed Guadalupe Trevino, one of the leaders of the Two Six gang.   On September 16, 2007, Richard Reyes drove to the U.S. Bar, where he knew that Rene Alonzo was drinking, and shot and killed him.   The evidence at trial will be that Rene Alonzo was believed to be a Latin King, and that he had had conflicts with Imperial Gangsters in the past.   On September 26, 2007, David Almaraz drove Juan Briseno to the residence of Latin King Luis Ortiz, where Juan Briseno knocked on Ortiz's door, then shot and killed him.

On March 28, 2008, after numerous shootings back and forth between members of the 139th Street Imperial Gangsters and the "Renegade" faction of the 139th Street Imperial Gangsters, Julian Serna shot and killed Mario Soriano.   Three months later, on June 3, 2008, Juan Briseno was displeased that a Latin King had moved into the 149th Street Imperial Gangster neighborhood.   Juan Briseno and Vincent Garza saw Miguel Mejias and Michael Sessum in the 149th Street Imperial Gangster neighborhood, and shot and killed them both.   Immediately after committing this double homicide Briseno heard noises from inside the house, and shot through the door.   One of his shots hit Victim 1 in the arm, narrowly missing the head of the infant that she was holding while trying to get it to safety.   The evidence at trial will be that Mejias was either a Latin King or a former Latin King, and that Michael Sessum had some marijuana on him when he was killed and was about to meet one of his marijuana customers.   On February 7, 2010, Juan Briseno again shot and killed a rival gang member when he, Galo Feliciano, Robert Lockhart and Subject 39 learned that Two Six gang member Miguel Colon was at a party in the Harbor neighborhood of East Chicago.   Galo Feliciano drove Juan Briseno, Lockhart and

21

Subject 39 to the location of the party, where they lay in wait for Colon to exit.   When Colon

exited the party, Briseno and Lockhart shot and killed him.

On at least one occasion, members of the Imperial Gangsters thought that they were

shooting rival gang members but ended up shooting the wrong individual.   For example, on

March 26, 2010, Joseph Torres shot and killed Jesus Alvarez, in the mistaken belief that he was a

rival gang member.   Galo Feliciano was the driver for this shooting.

As stated above, the Imperial Gangsters had a rule that no one could sell drugs in their

neighborhood without their permission.   On October 9, 2008, Juan Briseno shot and killed

Harris Brown, who he believed was selling drugs in the neighborhood of the 149th Street Imperial

Gangsters.   Roughly two years later, on June 10, 2010, Juan Briseno again encountered someone

who he believed was selling drugs in the 149th Street Imperial Gangster neighborhood, and shot

and killed Latroy Howard, this time on video tape.   The evidence at trial will show that Latroy

Howard had "fake" crack cocaine on him when he was killed, and that he was wearing the colors

of the Black P-Stone gang and associating with them shortly before his death.

Two of the homicides committed by defendants in this conspiracy do not fit neatly into

either above category above.   On February 9, 2002, Ace Cortez, the leader of the 139th Street

Imperial Gangsters directed Raymond Campos and Subject 7 to shoot and kill Steven Rodriguez

a/k/a "Little Jeremy," an individual who was either a member of the Imperial Gangsters or

affiliated with them.   Cortez and other members of the 139th Street Imperial Gangsters were

suspicious of the fact that Steven Rodriguez had a brother who was a member of the Two Six

gang.

In addition, the government will introduce evidence at trial that on March 22, 2007, Galo

22

Feliciano and Anthony Baldazo shot and killed Juan Murillo, after Murillo attempted to stop Guillermo Briseno from stealing a snowblower that belonged to Murillo's neighbor.

**Attempted Murders Committed in Furtherance of the Conspiracy**

As stated above, the Imperial Gangsters had an established rule that no rival gang member could walk or drive through their neighborhood. The evidence at trial will be that they were also firmly committed to shooting at rival gang members even when they saw them outside of the Imperial Gangster neighborhood. The government will introduce evidence at trial that the charged defendants attempted to kill their rivals a staggering number of times.

Every Imperial Gangster who will testify at this trial is expected to testify that he regularly shot at rival gang members during the course of the conspiracy.

**Drug Robberies and Burglaries Committed in Furtherance of the Conspiracy**

The government will introduce evidence at trial that members of the Imperial Gangsters would regularly do armed robberies of other drug dealers, and also burglarize their residences and stash houses. After committing these crimes, they would redistribute some of the drugs to other members of the Imperial Gangsters at a reduced price or for free. In addition, they would sometimes reinvest the proceeds into the gang, by purchasing firearms which they would use to further gang activity. The evidence at trial will be that these crimes occurred in East Chicago, Indiana, Calumet City, Illinois, Lansing, Illinois, Hammond, Indiana, as well as some other towns. A variety of members of the conspiracy participated in these crimes, with the core perpetrators being Ace Cortez, Salvador Chavez, and Juan Briseno.

23

During the course of these armed robberies and burglaries the charged Imperial Gangsters stole enormous quantities of both cocaine and marijuana, and huge sums of U.S. currency.   In addition, they stole firearms and electronics.

**Drug Trafficking Committed in Furtherance of the Conspiracy**

Some of the drug trafficking done by the defendants was the result of the drug robberies and burglaries discussed above.   In addition, the charged defendants consistently engaged in more traditional drug sales, wherein they purchased cocaine, marijuana and ecstasy from a source of supply, and resold to others at a profit.   Virtually all of the charged defendants were involved in marijuana and/or cocaine sales, with some defendants selling much larger quantities than others.

The evidence at trial will be that Subject 38, Guillermo Briseno, Ace Cortez, Eddie Torres, Edward Serna, Salvador Chavez, Juan Briseno and Richard Reyes sold the largest quantities of narcotics.

The evidence at trial will be that Edward Serna was one of the main suppliers of marijuana for the 139th Street faction of the Imperial Gangsters, and would also sell to 149th Street members.   The evidence at trial will be that Ace Cortez mostly resold the drugs that he had stolen, but also had a source of supply for cocaine.   Finally, the government will introduce evidence at trial that Juan Briseno sold marijuana, cocaine, cocaine base, and MDMA (Ecstasy), both to fellow members of the Imperial Gangsters as well as various street-level users.

24

2105

**III. THE STATEMENTS TO BE OFFERED AT TRIAL**

Galo Feliciano will testify regarding a conversation that he had with David Almaraz, a charged defendant in this case who is expected to testify at trial.   Feliciano will testify that a long period of time after the September 26, 2007 Luis Ortiz homicide Feliciano spoke with David Almaraz at a party.   When Feliciano brought up the subject of the Louis Ortiz homicide, David Almaraz gave Feliciano a strange look and told him that on the night of the murder he (David Almaraz) and Juan Briseno were riding around in Hammond, Indiana, when they saw Luis Ortiz.   Juan Briseno wanted to kill Luis Ortiz, so they followed Ortiz to Ortiz's residence, where Juan Briseno killed him.

Vincent Garza will testify that approximately one month after the homicide of Luis Ortiz, Garza had a conversation with David Almaraz at the residence of an associate of the Imperial Gangsters.   During the course of this conversation David Almaraz told Vincent Garza that Briseno knocked on Ortiz's door, and when Ortiz came to the door Briseno shot and killed him.

Witness 2 will also testify that he had a conversation with David Almaraz regarding the Luis Ortiz homicide.   During the course of this conversation David Almaraz told Witness 2 that he and Briseno drove to Ortiz's residence.    Almaraz said that he parked around the alleyway from Ortiz's residence and Briseno exited the vehicle.   Almaraz said that within minutes he heard shots, and Briseno ran back to the car.

Witness 9 will also testify that he had conversations with David Almaraz regarding the Luis Ortiz homicide.   Witness 9 will testify that a few days after the Ortiz homicide Almaraz told Witness 9 that the defendant, Almaraz and Witness 2 were together on the day of the homicide.   Witness 2 asked to be dropped off, as he had court in the morning.   This prompted

25

Briseno to call Witness 2 "a little bitch," "gay" and "soft" because he did not want to go along for the shooting of Ortiz.   Almaraz told Witness 9 that Almaraz and Briseno then waited for Ortiz to get out of work and went to Ortiz's house, where Briseno walked up to the door, waited for Ortiz to open it, and shot him in the doorway.   Almaraz told Witness 9 that Almaraz waited down the block while this happened.   Almaraz heard gunshots, shortly after which Briseno came running back to the car and they drove away.   Witness 9 will further testify that in 2011 David Almaraz approached Witness 9 at Witness 9's residence and told him that "the Feds" had come to talk to him about the murder of Luis Ortiz.   Almaraz told Witness 9 that he did not want to drive Juan Briseno the night that Luis Ortiz was killed, but was afraid that if he refused he would receive a "beat down" by other members of the 149th Street Imperial Gangsters.

Witness 9 will further testify that he had a conversation with Witness 2 about the Luis Ortiz homicide.   This conversation was within a week of the Ortiz homicide.   Witness 2 told Witness 9 that Witness 2 was riding in a car with David Almaraz and Juan Briseno, waiting for Luis Ortiz to get home from work and return to his residence.   Witness 2 said that he told Almaraz and Briseno to drop him off, as he had court the following day.   Witness 2 told Witness 9 that Almaraz and Briseno dropped him off.   Witness 2 said that Almaraz was driving the vehicle and Briseno was the passenger.   Witness 2 explained that after Almaraz and Briseno dropped him off Ortiz returned home and Almaraz and Briseno went to Ortiz's residence. Briseno exited the vehicle and walked up to Ortiz's door, shooting Ortiz through the front door, killing him.   Almaraz and Briseno then fled the area.

Regarding the October 9, 2008 homicide of Harris Brown, Witness 2 will testify that roughly one month prior to the homicide Guillermo Briseno, one of the leaders of the 149th Street

26

Imperial Gangsters, voiced his displeasure with the fact that some African-American drug dealers were selling narcotics in the 149th Street neighborhood. Guillermo Briseno ordered the 149th Street Imperial Gangsters to get rid of any African-American drug dealers in their neighborhood.

Regarding the February 7, 2012 homicide of Miguel Colon, Michael Castillo will testify that at some point in time he had a conversation with Galo Feliciano regarding this homicide. During the course of this conversation Galo Feliciano told Castillo about Feliciano and Briseno's involvement in the homicide. Castillo will further testify that he had a conversation with Robert Lockhart, who told Castillo about his own involvement in the murder, as well as that of the defendant.

Regarding the Latroy Howard homicide, Anthony Baldazo will testify that he had a conversation with Galo Feliciano at Galo Feliciano's residence. Feliciano told Baldazo that Juan Briseno killed Latroy Howard because Howard was selling crack cocaine in the 149th Street Imperial Gangster neighborhood.

## IV. CONCLUSION.

The above is an outline of the evidence that the government will introduce to establish that a criminal enterprise existed involving defendants Juan Briseno, Galo Benjamin Feliciano, Guillermo Briseno, Alejandro Lara, Justin Weaver, Michael Castillo, Kelvin Beltran, David Almaraz, Joseph Rene Torres, Jason Medina, Edward Raye Serna, Robert Lockhart, Armando Jose Velasquez, Anthony Baldazo, Salvador Chavez, Raymond Campos, Ace Cortez, Julian Guillermo Serna, Julius Solis, Darmaile Cortez Sutton, Eddie Torres, Richard Reyes and Vincent Garza and other Imperial Gangsters as well as various individuals who acted as their agents in

27

ways that allowed the defendants to commit their crimes.  This Court should find, based upon

this proffer, that co-schemer and agents' statements are admissible pending the introduction of

evidence to support this proffer.

<div style="margin-left: 40%;">

Respectfully submitted,

DAVID CAPP
United States Attorney


By:    /s/ David J. Nozick
         David J. Nozick
         Assistant U.S. Attorney
         5400 Federal Plaza, Suite 1500
         Hammond, Indiana 46320
         (219) 937-5500

</div>

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

UNITED STATES OF AMERICA       )
                               )
            v.                 )        NO. 2:11 CR 77 PPS
                               )
JUAN BRISENO                   )

CERTIFICATE OF SERVICE

The undersigned hereby certifies that the Government's Second Evidentiary Proffer

Supporting the Admissibility of Co-Schemer and Agent Statements was electronically filed with

the Clerk of the Court using the CM/ECF system which sent notification of said filing to the

following individuals:

      ARLINGTON J. FOLEY
      JOHN MAKSIMOVICH
      (Attorneys for defendant Juan Briseno)


                         By:    /s/ Janet L. Eisenmann
                                Janet L. Eisenmann
                                U.S. Attorney's Office
                                5400 Federal Plaza, Suite 1500
                                Hammond, Indiana 46320
                                (219) 937-5500

2110

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | |
| **Plaintiff** | |
| **vs** | |
| **JUAN BRISENO,** | |
| **Defendant** | **CAUSE NO:   2:11-CR-77** |

**MOTION FOR AN INFORMATIVE OUTLINE OF THE**
**GOVERNMENT'S FACTUAL BASIS FOR THE NONSTATUTORY**
**AGGRAVATING FACTOR THAT MR. BRISEÑO IS A CONTINUING**
**DANGER TO THE LIVES AND SAFETY OF OTHERS AND IS**
**LIKELY TO COMMIT ACTS OF VIOLENCE IN THE FUTURE**

Comes now Defendant Juan Briseño, by counsel John Maksimovich and Arlington Foley

and respectfully move for an informative outline of the Government's factual basis for its

allegations in the *Notice of Special Findings* that, as to each murder alleged in the indictment,

that, if not sentenced to death, Mr. Briseño constitutes a future danger.  In our previous *Motion,*

*with Incorporated Memorandum, to Strike the Notice of Aggravating Factors* (Document 1027)

(hereinafter "Motion to Strike"), we have moved specifically to strike this factor as irrelevant,

inherently unreliable and lacking in factual support.  The Court has scheduled a hearing to

address that motion.  In anticipation of the hearing, we request that the Court order the

Government to provide an informative outline of its evidence supporting this nonstatutory

aggravating factor.

In our Motion to Strike, we set forth the law regarding the role of aggravating factors in

the federal death penalty scheme.  Generally, an aggravating factor "must be particularly relevant

-1-

to the sentencing decision" and not merely generally relevant to whether a defendant might be a bad person. *See Gregg v. Georgia*, 428 U.S. 153, 192 (1976). Thus, the factor must genuinely narrow the class of persons eligible for the death penalty to justify this most severe sentence. *See Zant v. Stephens*, 462 U.S. 862, 877 (1983). Furthermore, it must assist the jury in distinguishing "those who deserve capital punishment from those who do not." *Arave v. Creech*, 507 U.S. 463, 474 (1993). At the upcoming hearing, this Court will be tasked with determining whether the future dangerousness allegations meet this criteria.

District courts have used their inherent powers and granted capital defendants broad discovery of evidence of aggravating factors. *See, e.g., United States v. Lujan*, 530 F. Supp. 2d 1224, 1269-1270 (D.N.M. 2008) (invoking inherent authority to order Government provide informative outline of evidence to support aggravating factors); *United States v. Solomon*, 513 F. Supp. 2d 520, 535 (W.D. Pa. 2007) (using inherent authority to order government to provide informative outline of type and scope of victim impact evidence); *United States v. Wilson*, 493 F. Supp. 2d 364, 378 (E.D.N.Y. 2006) (same); *United States v. Gooch*, 2006 WL 3780781, *23 (D.D.C. Dec. 20, 2006) (same); *United States v. Karake*, 370 F. Supp. 2d 275, 279 (D.D.C. 2005) (inherent authority to require government to provide specifics to enable defendant to prepare and to allow court to rule on objections to aggravating factors); *United States v. Llera Plaza*, 179 F. Supp. 2d 464, 492 (E.D. Pa. 2001) (ordering government to summarize information supporting aggravating factors); *United States v. Cooper*, 91 F. Supp. 2d 90, 111 (D.D.C. 2000) (same); *United States v. Glover*, 43 F. Supp. 2d 1217, 1236 (D. Kan. 1999) (using inherent authority to require greater specificity for aggravating factors); *United States v. bin Laden*, 126 F. Supp. 2d 290, 304-05 (S.D.N.Y. 2001) (ordering informative outline of information regarding aggravating

factors).  *See also, United States v. O'Driscoll*, 250 F. Supp. 2d 432, 434 (M.D. Pa. 2002) (heightened standard of reliability applicable to capital proceedings requires exercise of court's gatekeeping function regarding aggravating factors), *citing United States v. Pitera*, 795 F. Supp. 546, 565 (E.D.N.Y. 1992).

The "future dangerousness" non-statutory aggravating factor is repeated for each of the murders in the *Notice of Intent to Seek the Penalty of Death* (Document 968-1).  In each instance it alleges that Mr. Briseño "is a continuing danger to the lives and safety of other persons and [] is likely to commit criminal acts of violence in the future as evidenced by:

a) A low potential for rehabilitation as demonstrated by repeated violent criminal acts;

b) A willingness to take human life and a lack of remorse for his acts of violence and attempted acts of violence as demonstrated by statements that he made following these violent acts; and

c) His stated desire to impose a rule requiring fellow members of the Imperial Gangsters to shoot rivals on site.

Based on the cases set forth above, the Court should direct the Government to provide an informative outline of the nature of the evidence that it intends to introduce to support each of the three prongs of the future dangerousness aggravating factor and the relationship, if any, of that evidence to the likelihood that, if spared a sentence of death, Mr. Briseño would be a danger to the lives and safety of others and likely to commit acts of violence *in prison*.  Specifically, we seek an order directing the Government to provide an informative outline of the general nature of the evidence it intends to introduce which sets forth the following:

1.      The definition of "low potential for rehabilitation."

2.      The specific incidents of conduct constituting the violent criminal acts as alleged in paragraph a), whether included in the indictment or not.

3.      The facts or opinion supporting the claim that commission of the identified violent criminal acts supports a "low potential for rehabilitation" in prison.

4.      The facts or opinion supporting that conduct in the community is predictive of potential for rehabilitation in prison.

5.      The facts or opinion supporting that a "low potential for rehabilitation" as defined in response to question 1 is predictive of future violence in prison.

6.      Identification of statements in paragraphs b) and c) and their date, time and place.

7.      The facts or opinion supporting that intentionally killing or attempting to harm others is predictive of future violence in prison.

8.      The facts or opinion supporting that "lack of remorse" is predictive of future violence in prison.

9.      The facts or opinion establishing that a "desire to impose a rule . . . to shoot rivals on site (sic)" is predictive of future violence in prison.

10.     The facts or opinion establishing that the combined conduct alleged in paragraphs a), b) and c) is predictive of future violence in prison.

It is respectfully submitted that in the absence of further information, the Court will be unable to exercise its gatekeeping function to determine whether the Government's proposed evidence would fail the constitutional requirement for reliability in capital proceedings and the heightened level of admissibility set forth in 18 U.S.C. §3593(c) ("information may be excluded if its probative value is outweighed[1] by the danger of creating unfair prejudice, confusing the

---

[1]Federal Rule of Evidence 404(b) requires that the probative value be "*substantially* outweighed by the danger of creating unfair prejudice, confusing the issues, or misleading the jury."

-4-

issues, or misleading the jury").  Furthermore, the absence of further information will interfere

with Defendant's ability to understand and defend against the Government's allegations.

> **WHEREFORE**,  Defendant Juan Briseño, by counsel John Maksimovich and Arlington
Foley respectfully moves the Court for an order ordering the government to provide him with an
informative outline of the Government's factual basis for its allegations in the *Notice of Special
Findings* that, as to each murder alleged in the indictment, that, if not sentenced to death, Mr.
Briseño constitutes a future danger, and for all other just and proper relief.


**Respectfully submitted:**

/s/ *Arlington Foley*
_____

Arlington Foley /#6905-45
Attorney For Defendant
1942 North Main Street
Crown Point, IN 46307
PH: 219.661.1200
FX: 219.661.1205

/s/ *John Maksimovich*
_____

John Maksimovich /#9950-45
Attorney For Defendant
1946 North Main Street
Crown Point, IN 46307
PH: 219.663.1900
FX: 219.663.1908


-5-

2115

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

UNITED STATES OF AMERICA,

     **Plaintiff**

**vs**

**JUAN BRISENO,**

     **Defendant**        **CAUSE NO: 2:11-CR-77**

## CERTIFICATE OF SERVICE

I hereby certify that on November 4, 2014, I electronically filed:

*Motion for an Informative Outline of the Government's Factual Basis for the Nonstatutory Aggravating Factor That Mr. Briseño Is a Continuing Danger to the Lives and Safety of Others and Is Likely to Commit Acts of Violence in the Future*

with the Clerk of the Court using the CM/ECF system, which sent notification of such filing to the following:

David J. Nozick         Bruce Hegyi
Assistant United States Attorney   Assistant United States Attorney

and I hereby certify that I have mailed by United States Postal Service, the document to the following non-CM/ECF participants:

    N/A

        By:  /s/ *John Maksimovich*

           John Maksimovich /#9950-45
           Attorney For Defendant
           1946 North Main Street
           Crown Point, IN 46307
           PH: 219.663.1900
           FX: 219.663.1908
           E-Mail: criminallaw@johnmaksimovich.com

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
## HAMMOND DIVISION

**UNITED STATES OF AMERICA,**

        **Plaintiff**

**vs**

**JUAN BRISENO,**

        **Defendant**　　　　　　　　　**CAUSE NO:   2:11-CR-77**

## MOTION FOR EYE EXAMINATION

Comes now Defendant Juan Briseno, by counsel John Maksimovich and Arlington Foley, and requests the Court to enter an order ordering the Jerome Combs Detention Center to schedule Juan Briseno for an eye examination, and represents the following to the Court:

1.　　　Defendant Juan Briseno is scheduled to be tried in this Court beginning January 12, 2015.

2.　　　In preparing for trial, it is necessary for the Defendant to read voluminous discovery documents provided by the government.

3.　　　Defendant cannot see well and his vision needs to be corrected so that he can read the voluminous discovery.

**WHEREFORE**, Defendant Juan Briseno requests the Court to enter an order ordering the Jerome Combs Detention Center to schedule Juan Briseno for an eye examination, and for all other just and proper relief.

**Respectfully submitted:**

/s/ *Arlington Foley*
_____

Arlington Foley /#6905-45
Attorney For Defendant
1942 North Main Street
Crown Point, IN 46307
PH: 219.661.1200
FX: 219.661.1205

/s/ *John Maksimovich*
_____

John Maksimovich /#9950-45
Attorney For Defendant
1946 North Main Street
Crown Point, IN 46307
PH: 219.663.1900
FX: 219.663.1908

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

**UNITED STATES OF AMERICA,**

                    **Plaintiff**

**vs**

**JUAN BRISENO,**

                    **Defendant**                       **CAUSE NO:    2:11-CR-77**

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on November 5, 2014, I electronically filed:

*MOTION FOR EYE EXAMINATION*

with the Clerk of the Court using the CM/ECF system, which sent notification of such filing to the following:

David J. Nozick                                    Bruce Hegyi
Assistant United States Attorney        Assistant United States Attorney

and I hereby certify that I have mailed by United States Postal Service, the document to the following non-CM/ECF participants:

          N/A

By:    /s/ *John Maksimovich*

          John Maksimovich /#9950-45
          Attorney For Defendant
          1946 North Main Street
          Crown Point, IN 46307
          PH: 219.663.1900
          FX: 219.663.1908
          E-Mail: criminallaw@johnmaksimovich.com

2118

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 2:11-cr-77 |
| | ) | |
| JUAN BRISENO, | ) | |
| | ) | |
| Defendant. | ) | |

## WRIT OF HABEAS CORPUS AD TESTIFICANDUM

TO:      Warden                    United States Marshal
              Westville Correctional Facility   Northern District of Indiana
              Westville, Indiana            Hammond, Indiana

The court being advised that prisoner Jose Lopez (DOC 248056) is a necessary witness in the trial of Juan Briseno in *United States v. Juan Briseno*, on January 12, 2015, at 8:30 a.m. (Central time), and that said prisoner is in the lawful custody and control of the Warden, Westville Correctional Facility, Westville, Indiana.

It is **ORDERED** and **ADJUDGED** that the Warden, Westville Correctional Facility, Westville, Indiana, be required and is hereby commanded to surrender the body of prisoner Jose Lopez (DOC 248056) to the United States Marshal for the Northern District of Indiana, or any duly authorized deputy, or any authorized Marshal, for the purpose of producing the body of said prisoner for trial in the federal courthouse, Hammond, Indiana, on January 12, 2015, at 8:30 a.m. (Central time), so that the prisoner may be present to testify in said trial, and thereafter to be returned to the institution by the United States Marshal, or one of his duly authorized deputies, under safe and secure conduct, and have you then and there this Writ.

**SO ORDERED**

2120

ENTERED this 5th day of November, 2014.

/s/ Andrew P. Rodovich
United States Magistrate Judge

2

```
MIME-Version:1.0
From:CMECFinnd@innd.uscourts.gov
To:CMECFinnd@localhost.localdomain
Bcc:
--Case Participants: Bryan M Truitt (bryan@tblawyers.com, sherrie@tblawyers.com), David J
Nozick - AUSA (david.nozick@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov,
susan.devries@usdoj.gov, usainn.ecfcivil@usdoj.gov), Kurt R Earnst (kre@braje-nelson.com),
Paul Jeffrey Schlesinger (pjeffslaw@aol.com), Pablo DeCastro
(pdecastro@rascia-decastro.com, ysierra@rascia-decastro.com), Sheldon B Nagelberg
(sbnagelberglaw@att.net), Thomas W Vanes (b.lynneadams@yahoo.com,
tom.vanes@sbcglobal.net), Richard C Wolter (b.lynneadams@yahoo.com), John T Theis
(theislaw@aol.com), Adam Tavitas (adtavitas@aol.com, b.lynneadams@yahoo.com), Dean R
Lanter - AUSA (dean.lanter@usdoj.gov, janet.eisenmann@usdoj.gov,
usainn.ecfcivil@usdoj.gov), John E Martin - FCD (john_martin@fd.org), Scott L King
(dwilliams@scottkinggroup.com, sking@scottkinggroup.com), Mark A Psimos
(psimoslaw@airbaud.net), Ihor Alexander Woloshansky (ihorlawyer@hotmail.com), Richard M
Davis (jdavis@hwelaw.com, rdavis@hwelaw.com, rgould@hwelaw.com), James N Thiros
(jim@thiros.com, lynn@thiros.com), Robert L Rascia (rrascia@rascia-decastro.com,
ysierra@rascia-decastro.com), Gojko Kasich (gkasich@crownlaw.com, gkasich@gmail.com),
Arlington J Foley (arlingtonfoley@att.net), Roxanne Mendez Johnson
(attorneyrmj@gmail.com), Visvaldis P Kupsis (vpkupsis@hotmail.com), Stephen Edward Scheele
(pkd@gk4law.com, ses@gk4law.com), Jack Friedlander (jack@jackfriedlander.com,
office@jackfriedlander.com), Bruce R Hegyi - AUSA (bruce.hegyi@usdoj.gov), R Brian
Woodward (carolb@wbbklaw.com, rbwoodward@wbbklaw.com), John Maksimovich
(criminallaw@johnmaksimovich.com), David E Vandercoy (david.vandercoy@valpo.edu),
Magistrate Judge Andrew P Rodovich (rodovich_chambers@innd.uscourts.gov,
ruth_nagy@innd.uscourts.gov), Chief Judge Philip P Simon
(denise_woodside@innd.uscourts.gov, jacob_hamann@innd.uscourts.gov,
lauren_schwartz@innd.uscourts.gov, mira_serrill-robins@innd.uscourts.gov,
noel_collins@innd.uscourts.gov, philip_simon@innd.uscourts.gov)
--Non Case Participants: Matthew D Soliday (office@matthewsolidaylaw.com),
Probation/Pretrial Services (innpml_cmecf@innd.uscourts.gov), U S Marshal
(inn.docket-fw@usdoj.gov, inn.docket-sb@usdoj.gov, usms.27@usdoj.gov)
--No Notice Sent:

Message-Id:2646972@innd.uscourts.gov
Subject:Activity in Case 2:11-cr-00077-PPS-APR United States of America v. Briseno et al
Scheduling Order
Content-Type: text/html
```

### U.S. District Court Northern District of Indiana [LIVE]

### USDC Northern Indiana

## Notice of Electronic Filing

The following transaction was entered on 11/6/2014 at 12:54 PM EST and filed on 11/6/2014

| | |
|---|---|
| **Case Name:** | United States of America v. Briseno et al |
| **Case Number:** | 2:11-cr-00077-PPS-APR |
| **Filer:** | |
| **Document Number:** | 1143(No document attached) |

**Docket Text:**
 **SCHEDULING ORDER as to Juan Briseno: In view of the hearing set November 18, the government shall file a response to defendant Juan Briseno's Motion for an Informative Outline of the Government's Fatual Basis for the Nonstatutory Aggravating Factor, etc. [DE 1132] no later than Monday, November 10, 2014. Approved by Chief Judge Philip P Simon on**

**11/6/2014 (no.pdf attached; docket text only). (dkw)**

**2:11−cr−00077−PPS−APR−1 Notice has been electronically mailed to:**

David E Vandercoy     david.vandercoy@valpo.edu

Richard M Davis     rdavis@hwelaw.com, jdavis@hwelaw.com, rgould@hwelaw.com

Arlington J Foley     arlingtonfoley@att.net

Mark A Psimos     psimoslaw@airbaud.net

Gojko Kasich     gkasich@crownlaw.com, gkasich@gmail.com

Scott L King     sking@scottkinggroup.com, dwilliams@scottkinggroup.com

James N Thiros     jim@thiros.com, lynn@thiros.com

Thomas W Vanes     tom.vanes@sbcglobal.net, b.lynneadams@yahoo.com

Ihor Alexander Woloshansky     ihorlawyer@hotmail.com

R Brian Woodward     rbwoodward@wbbklaw.com, carolb@wbbklaw.com

John Maksimovich     criminallaw@johnmaksimovich.com

Visvaldis P Kupsis     vpkupsis@hotmail.com

Sheldon B Nagelberg     sbnagelberglaw@att.net

John E Martin − FCD     john_martin@fd.org

Adam Tavitas     Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander     jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele     ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst     kre@braje−nelson.com

Bryan M Truitt     bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis     theislaw@aol.com

Robert L Rascia     rrascia@rascia−decastro.com, ysierra@rascia−decastro.com

Paul Jeffrey Schlesinger     pjeffslaw@aol.com

Pablo DeCastro     pdecastro@rascia−decastro.com, ysierra@rascia−decastro.com

Dean R Lanter − AUSA     dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov,

janet.eisenmann@usdoj.gov

David J Nozick – AUSA    David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson    attorneyrmj@gmail.com

Bruce R Hegyi – AUSA    bruce.hegyi@usdoj.gov

**2:11–cr–00077–PPS–APR–1 Notice has been delivered by U.S. Mail or other means to:**

THE UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, Plaintiff, | §<br>§<br>§<br>§ |  |
| v. | §<br>§ | CAUSE NO.  2:11-CR-0077-PPS |
| JUAN BRISENO, also known as Tito, Defendant. | §<br>§<br>§<br>§ |  |

**GOVERNMENT'S OPPOSITION TO DEFENDANT JUAN BRISENO'S MOTION
FOR A FACTUAL OUTLINE OF THE GOVERNMENT'S PENALTY PHASE
EVIDENCE OF DEFENDANT'S FUTURE DANGEROUSNESS**

TO THE HONORABLE COURT:

COMES NOW, the United States of America, by and through the undersigned counsel, and respectfully opposes defendant Juan Briseno's ("Mr. Briseno's") "Motion For an Informative Outline of the Government's Factual Basis For the Nonstatutory Aggravating Factor That Mr. Briseno is a Continuing Danger to the Lives and Safety of Others and is Likely to Commit Acts of Violence in the Future" [DE #1132] ("Defendant's Motion"), and, for the reasons more fully set forth below, urges the Court to deny, in all things, the relief sought in Defendant's Motion.

*Nature of the Case*

As more fully set forth in the Fourth Superseding Indictment [DE #652], Mr. Briseno and his twenty-three (23) former co-defendants in this case are/were members of Northwest Indiana chapters of the Almighty Imperial Gangster Nation street gang (the "Imperial Gangsters" or "IG's"), who, together with unindicted co-conspirators, some of whom are now deceased, plagued and terrorized various streets and neighborhoods in and around East Chicago, Indiana,

2124

for more than a generation, by and through organized and systematic drug dealing, shootings, murders, robberies, carjackings, burglaries, and other criminal conduct. [*See generally*, 4th Superseding Indictment] According to the allegations specified in the Indictment, the Northwest Indiana chapters of the Imperial Gangsters committed 13 murders and 19 attempted murders, of which Mr. Briseno committed or directly participated in six murders and seven attempted murders in the course, scope and furtherance of Racketeer Influenced and Corrupt Organizations Act ("RICO") violations, drug conspiracy violations, violent crimes in aid of racketeering violations ("VICAR") violations. [*See* Id.]

Mr. Briseno is potentially subject to the death penalty. [*See* 4th Superseding Indictment, at 55-61 (Notice of Special Findings); Government's Supplemental Notice of Intent to Seek Penalty of Death [DE # 986-1] ("NOI")]

Mr. Briseno's trial is scheduled to commence on January 12, 2015.[1]

## Procedural History Preceding Current Motion

On August 22, 2014, Mr. Briseno filed his 155-page "Motion, With Incorporated Memorandum, To Strike the Notice of Aggravating Factors" [DE #1027] ("Defendant's Motion to Strike"). On September 16, 2014 the Government filed its Opposition to Defendant's Motion to Strike. [DE #1062]. A hearing on Mr. Briseno's Motion to Strike has long been scheduled for November 18, 2014. On November 4, 2014, Mr. Briseno filed his current Motion, seeking affirmative relief prior to the November 18, 2014 hearing on his Motion to Strike.

## **The Allegations of Mr. Briseno's Motion**

In his Motion, Mr. Briseno says that in his earlier Motion to Strike he has urged the Court to strike the Non-Statutory Aggravating Factor of Future Dangerousness, because it is

---

[1] Mr. Briseno's trial dathas been continued twice at his request.

"irrelevant, inherently unreliable and lacking in factual support." [*See* Def. Motion, page 1]

Mr. Briseno correctly recites that for each of the murders for which Mr. Briseno is charged in the

Fourth Superseding Indictment, the Government has alleged in its Supplemental Notice of Intent

to Seek the Penalty of Death [DE #968-1], *inter alia*, that Mr. Briseno:

> Is a continuing danger to the lives and safety of other persons and
> defendant Juan Briseño is likely to commit criminal acts of violence in the
> future as evidenced by:
>
> > a) A low potential for rehabilitation as demonstrated by repeated
> >    violent criminal acts;
> >
> > b)  A willingness to take human life and a lack of remorse for his acts
> >     of violence and attempted acts of violence as demonstrated by
> >     statements that he made following these violent acts; and
> >
> > c)  His stated desire to impose a rule requiring fellow members of the
> >     Imperial Gangsters to shoot at rivals on sight.

[*See* Def. Motion, page 3]   While failing to acknowledge that every Circuit Court that has

considered this issue has rejected his position, Mr. Briseno asks this Court to use its "inherent

powers" to specifically order the Government:

> [T]o provide an informative outline of the general nature of the evidence it
> intends to introduce which sets forth the following:
>
> > 1.    The definition of "low potential for rehabilitation."
> >
> > 2.    The specific incidents of conduct constituting the violent
> >       criminal acts as alleged in paragraph a), whether included
> >       in the indictment or not.
> >
> > 3.    The facts or opinion supporting the claim that commission
> >       of the identified violent criminal acts supports a "low
> >       potential for rehabilitation" in prison.
> >
> > 4.    The facts or opinion supporting that conduct in the
> >       community is predictive of potential for rehabilitation in
> >       prison.

5.  The facts or opinion supporting that a "low potential for rehabilitation" as defined in response to question 1 is predictive of future violence in prison.

6.  Identification of statements in paragraphs b) and c) and their date, time and place.

7.  The facts or opinion supporting that intentionally killing or attempting to harm others is predictive of future violence in prison.

8.  The facts or opinion supporting that "lack of remorse" is predictive of future violence in prison.

9.  The facts or opinion establishing that a "desire to impose a rule . . . to shoot rivals on site (sic)" is predictive of future violence in prison.

10. The facts or opinion establishing that the combined conduct alleged in paragraphs a), b) and c) is predictive of future violence in prison.

[Def. Motion, pages 3-4]   In his Motion, Mr. Briseno says that without such specific information the Court will be unable to exercise (*at trial*) its "gatekeeping function" for reliability of evidence and under the Rule 403 component of Section 3593(c) (probative value is substantially outweighed the danger of creating unfair prejudice, confusion of the issues, or misleading the jury) and under 404(b).  [*See* Def. Motion, pages 4-5]  Finally, Mr. Briseno says that he needs the specific information in order to "understand and defend against the Government's allegations."  [Def. Motion, page 5]

For the reasons set forth below, Mr. Briseno's Motion is without merit and should be denied.

2127

<u>DEFENDANT'S MOTION IS WITHOUT MERIT AND SHOULD BE DENIED</u>

It is well-settled that the Constitution permits the consideration of evidence relating to future dangerousness at the penalty phase of a capital trial. *See Jurek v. Texas*, 428 U.S. at 274-76 *; Barefoot v. Estelle*, 436 U.S. 880 (1983)*; Tuilaepa v. California*, 512 U.S. 967, 979 (1994); *Simmons v. South Carolina*, 512 U.S. 154, 162-63 (1994). Accordingly, federal courts of appeals have routinely approved of the use of non-statutory aggravating factors alleging future dangerousness in capital cases under the FDPA. *See United States v. Lujan,* 603 F.3d 850, 856-59 (10th Cir.2010); *United States v. Whitten*, 610 F.3d 168, 203 (2nd Cir. 2010)*; United States v. Basham*, 561 F.3d 302, 331 (4th Cir. 2009); *United States v. Corley*, 519 F.3d 716, 723 (7th Cir. 2008); *United States v. Bernard*, 299 F.3d 467, 482 (5th Cir. 2002).

<u>Defendant Has No Right To Advance Notice of the Government's Evidence</u>

There is no Constitutional right to advance notice of the Government's evidence in aggravation at a capital sentencing hearing. *Gray v. Netherland*, 518 U.S. 152, 167-68 (1996). The Federal Death Penalty Act ("FDPA") provision requiring the Government to provide notice of its intent to seek the death penalty likewise does not require provision of evidentiary detail. 18 U.S.C. § 3593(a). Rather, it requires the Government, at a reasonable time before trial, to provide "a notice ... stating that the government believes that the circumstances of the offense are such that, if the defendant is convicted, a sentence of death is justified under this chapter and the government will seek death." <u>Id</u>. at § 3593(a)(1). In addition, the statute requires the notice to "set[] forth the aggravating factor or factors that the government, if the defendant is convicted, proposes to prove as justifying a sentence of death." <u>Id</u>. at § 3593(a)(2). Taken together, these provisions mandate only that (1) notice be provided that the death penalty will be sought, and (2) a statement be provided of the aggravating factors upon which the Government will rely. There

2128

is simply is no requirement that the Government detail in advance – much less months before trial -- its evidence of any aggravating factor (including Future Dangerousness.)

Accordingly, under the plain language of the statute, Mr. Briseno's claim of inadequate notice and insufficient evidentiary detail must fail. The case law supports this result. A defendant is entitled to notice of the charges against him, and the factors that could subject him to capital punishment. *See Stirone v. United States*, 361 U.S. 212, 218 (1960); § 3593(a)(2). Here, as in all FDPA prosecutions, the Indictment and Notice are the Government's mechanisms for satisfying this imperative.

Indeed, *every* Circuit that has considered a defendant's request for an informative outline of the Government's evidence of aggravating factors has concluded that the Government is <u>not</u> required to preview or reveal the specific proof it will offer in support of the aggravating factors it has alleged. *See, e.g., United States v. LeCroy*, 441 F.3d 914, 930 (11th Cir. 2006) (holding Notice of Intent was sufficient even though it did not list specific acts that would be used to prove a non-statutory aggravating factor of future dangerousness); *United States v. Higgs*, 353 F.3d 281, 325 (4th Cir. 2003) ("[T]he FDPA and the Constitution require that the defendant receive adequate notice of the aggravating factor ... not notice of the specific evidence that will be used to support it"); *United States v. Battle*, 173 F.3d 1343, 1347 (11th Cir. 1999) ("The Government is not required to provide specific evidence in its Notice of Intent"). Similarly, most District Courts that have considered such requests have reached the same result. *See., e.g., United States v. Gooch*, 2006 WL 3780781, at *21 (D.D.C. 2006) (denying motion to require government to provide factual basis for aggravating factors and distinguishing defendant's attempt to find out, not "what" government will use, but "how" it will use it); *United States v. Solomon*, 513 F.Supp.2d 520, 539 (W.D. Pa. 2007); *United States v. Mayhew*, 380 F.Supp.2d

936, 943 (S.D. Ohio 2005); *United States v. Taylor*, 316 F.Supp.2d 730, 738 (N.D. Ind. 2004); *United States v. Roman*, 371 F.Supp.2d 36, 42 (D.P.R. 2005); *cf., United States v. Nguyen*, 928 F. Supp. 1525, 1549-50 (D. Kan. 1996) (no constitutional or statutory right to pre-trial discovery of aggravating factors' evidence.)

Moreover, the Government notes that three of the District Court decisions cited by Mr. Briseno ordered that only the Government's "Victim Impact" evidence be subjected to informative outlines. *See United States v. Solomon*, 513 F.Supp.2d 520, 535 (W.D. Pa. 2007); *United States v. Wilson*, 493 F. Supp.2d 364, 378 (E.D.N.Y. 2006); *United States v. Bin Laden*, 126 F.Supp.2d 290, 304-05 (S.D.N.Y. 2001). Further, the Government is puzzled by Mr. Briseno's citation to *United States v. Gooch*, 2006 WL 3780781 (D.D.C. 2006). Although *Gooch* did require the Government to provide notice of its Victim Impact evidence, the Court in *Gooch* specifically held: "'The Court envisions a document that is akin to an informative outline, ***but not a revelation of evidentiary detail or the Government's theory of its case***.' *Bin Laden,* 126 F.Supp.2d 290, 304. This can be accomplished with a written pleading or in open court before trial begins, as counsel for the Government prefer. As a legal matter, however, the Court finds that the Notice was sufficient for its purpose and need not be dismissed." Id. at 23 (emphasis provided). Here, Mr. Briseno's Motion plainly seeks "a revelation of evidentiary detail or the Government's theory of its case."

Because Mr. Briseno is *never* entitled to evidentiary detail concerning its aggravating factors or the Government's theory of its case, Mr. Briseno's Motion seeking such an evidentiary outline *in advance of the November 18, 2014 hearing* is without merit and should be denied.

2130

Defendant's Claim That He Requires The Factual Outline Prior to
the November 18, 2014 Hearing

Apparently, Mr. Briseno believes he needs the Government's itemized factual

information concerning Future Dangerousness prior to the November 18, 2014 hearing in order

that the issue can be considered and resolved in the manner of a summary judgment.  However,

as a general rule, "summary judgment does not exist in criminal cases." *United States v.*

*Thomas*, 150 F.3d 743, 747 (7th Cir. 1998); *cf*. Fed. R. Crim. Pro. 29 (providing for motions for

judgment of acquittal following the parties' evidentiary presentations at guilt/innocence trials).

To the contrary, the sufficiency of the evidence supporting the aggravating factors should be

ascertained at the penalty hearing itself.  *See, e.g., United States v. Johnson*, 915 F.Supp.2d 958,

1025 (N.D. Iowa 2013) ("I will be better able to determine, when the evidence (of inmate

assaults offered to support future dangerousness factor) is presented in the context of the 'penalty

retrial,' whether any danger of unfair prejudice, confusion of the issues, or misleading the jury

that these incidents might pose substantially outweighs their probative value."); *United States v.*

*Taylor*, 316 F. Supp.2d 730, 736-38 (N.D. Ind. 2004) (holding that aggravating factors required

factual development at trial before deciding if evidence was sufficient).

Here, Mr. Briseno has been provided adequate notice sufficient for counsel to prepare for

the November 18, 2014 hearing on Mr. Briseno's Motion to Strike.  Accordingly, the Court

should deny the Defendant's Motion requesting an informational outline in advance of the

hearing.

**Conclusion**

For each of the independent reasons set forth above, Mr. Briseno's Motion For an Informative Outline of the Government's Factual Basis For the Nonstatutory Aggravating Factor That Mr. Briseno is a Continuing Danger to the Lives and Safety of Others and is Likely to Commit Acts of Violence in the Future" [DE #1132] is without merit and should be, in all things, denied.

Respectfully submitted,

DAVID CAPP
UNITED STATES ATTORNEY

s/ *David J. Nozick*

David J. Nozick
Assistant U.S. Attorney
5400 Federal Plaza
Suite 1500
Hammond, IN 46320
Tel. (219) 937-5655
www.david.nozick@usdoj.gov

s/ *Bruce R. Hegyi*

Bruce R. Hegyi
Trial Attorney
Capital Case Section
Criminal Division
United States Department of Justice
1331 F Street, N.W., Third Floor
Washington, D.C. 20530
Tel. (202) 616-4582
Cell (703) 536-4774
www.bruce.hegyi@usdoj.gov

2133

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this date, I electronically filed the foregoing document and accompanying exhibits with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record for defendant Juan Briseno.

s/ *Bruce R. Hegyi*

Bruce R. Hegyi
Trial Attorney

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | NO. 2:11CR77 PPS |
| | ) | |
| JUAN BRISENO, | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER**

Defendant Juan Briseno faces the death penalty in this case, in which he is charged with 22 counts including 6 murders and 4 attempted murders. The government's "Supplemental Notice of Intent to Seek the Penalty of Death Pursuant to Title 18 United States Code Section 2593" [DE 968-1] advises Briseno that:

> the Government believes the circumstances of the offenses charged in Counts Nine, Ten, and Thirteen through Twenty-Two of the Fourth Superseding Indictment [R. 652] are such that, in the event Mr. Briseño is convicted of any of these charges, a sentence of death is justified, and the Government will seek a sentence of death for [those] offenses[.]

[DE 968-1 at 1.][1] The Notice sets out, for each of those counts, "intent factors," statutory aggravating factors, and nonstatutory aggravating factors the government intends to prove "in justifying a sentence of death." [*Id.* at 2-3.] For each count, the nonstatutory aggravating factors include Briseno's future dangerousness, described this way:

---

[1] The "Supplemental" Notice is in the nature of an amended notice, and is construed to correct and to entirely supersede the original Notice of Intent to Seek the Penalty of Death that was filed on March 6, 2013. [DE 503.]

The defendant, Juan Briseño, also known as "Tito":

Is a continuing danger to the lives and safety of other persons and defendant Juan Briseño is likely to commit criminal acts of violence in the future as evidenced by:

a) A low potential for rehabilitation as demonstrated by repeated violent criminal acts;

b) A willingness to take human life and a lack of remorse for his acts of violence and attempted acts of violence as demonstrated by statements that he made following these violent acts; and

c) His stated desire to impose a rule requiring fellow members of the Imperial Gangsters to shoot at rivals on sight.

[DE 968-1 at 3, 5, 7-8, 9-10, 11-12, 14.]

Now before me is Briseno's "Motion for an Informative Outline of the Government's Factual Basis for the Nonstatutory Aggravating Factor that Mr. Briseño is a Continuing Danger to the Lives and Safety of Others and is Likely to Commit Acts of Violence in the Future." [DE 1132.] Also pending is Briseno's Motion to Strike the Notice of Aggravating Factors. [DE 1027.] This latter motion is more than 150 pages, and it challenges the death penalty generally, and certain of the government's identified aggravating factors, on a number of grounds.

In his Motion to Strike the Notice, Briseno offers several arguments challenging future dangerousness as a nonstatutory aggravating factor. First Briseno argues that, as an aggravating factor, future dangerousness is "inherently vague and...may be viewed by a jury as applying to *all* murderers." [*Id*. at 138 (emphasis in original).] Briseno also argues that his future dangerousness, if appropriately considered at all, must be

2

understood to be limited to the prison context where he would spend a life sentence if convicted but not sentenced to death, and that in such a context, consideration of his potential for rehabilitation (as referenced in subsection (a) of the government's statement of the issue) is "patently absurd." [*Id.* at 139, 140.]   Finally, Briseno contends that predictions of future dangerousness are "notoriously unreliable," even when undertaken by supposed experts, and no less so when determined by a group of lay jurors. [*Id.* at 140.]   A hearing on the Motion to Strike the Notice is set for next Tuesday, November 18.

With the hearing two weeks away, Briseno filed his motion asking me to order the government to provide "an informative outline of the Government's factual basis for its allegations in the *Notice of Special Findings* that, as to each murder alleged in the indictment, that, if not sentenced to death, Mr. Briseño constitutes a future danger." [DE 1132 at 1.]   By listing 10 requests for certain information in the motion, Briseno appears to be propounding a set of interrogatories that he asks the court to enforce. [*Id.* at 3-4.]   Briseno cites a number of cases he says show district courts granting "capital defendants broad discovery of evidence of aggravating factors." [*Id.* at 2.]   The government responds that Briseno "fail[s] to acknowledge that every Circuit Court that has considered this issue has rejected his position." [DE 1153 at 3.]

Briseno does not argue that he has a constitutional or statutory right to the evidentiary sneak preview he seeks.   The Supreme Court has said that "[t]here is no general constitutional right to discovery in a criminal case." *Weatherford v. Bursey*, 429

3

U.S. 545, 559 (1977), quoted in *Gray v. Netherland*, 518 U.S. 152, 168 (1996). Although a defendant's "right to notice of the charges against which he must defend is well established," any claim that he "has a right to notice of the *evidence* that the state plans to use to prove the charges stands on quite a different footing." *Gray*, 518 U.S. at 167-68 (emphasis in original). Reviewing the Supreme Court's precedents on the topic, the *Gray* court concludes: "To put it mildly, these cases do not compel a court to order the prosecutor to disclose his evidence; their import, in fact, is strongly against the validity of petitioner's claim." *Id.* at 168. What this means is that constitutional considerations do not support ordering the discovery Briseno now urges.

As for the government's statutory obligations, the Federal Death Penalty Act requires the filing of a notice stating the government's belief that "the circumstances of the offense are such that, if the defendant is convicted, a sentence of death is justified under this chapter and that the government will seek the sentence of death." 18 U.S.C. §3593(a)(1). The notice must also "set[] forth the aggravating factor or factors that the government, if the defendant is convicted, proposes to prove as justifying a sentence of death." §3593(a)(2). The government's original and amended Notices of Intent to Seek the Death Penalty [DE 503 & 968-1] meet these requirements.

Beyond that, the government is not required to preview its evidentiary support for the aggravating factors it has disclosed. "The government in this case satisfied its constitutional and statutory obligations by informing the defendant of what aggravating factors – both statutory and nonstatutory – it intended to prove at trial. The

4

2137

government was not obligated to outline what specific pieces of evidence it planned to use to support the aggravating factors." *United States v. LeCroy*, 441 F.3d 914, 930 (11th Cir. 2006). The Eleventh Circuit had previously ruled that "[t]he Government is not required to provide specific evidence in its [§3593] notice of intent." *United States v. Battle*, 173 F.3d 1343, 1346 (11th Cir. 1999). Similarly, the Fourth Circuit has held that "The FDPA and the Constitution require that the defendant receive adequate notice of the aggravating factor...not notice of the specific evidence that will be used to support it." *United States v. Higgs*, 353 F.3d 281, 325 (4th Cir. 2003).

Perhaps tacitly acknowledging all this, Briseno does not argue that he is *entitled* to the information, but rather in essence that the information would be *helpful to the court*. Both in this current motion, and tucked away in his mammoth Motion to Strike the Notice, Briseno encourages me to require the "informative outline" of evidence to assist me in the exercise of what the defense calls a "gatekeeping function to determine whether the Government's proposed evidence would fail the constitutional requirement for reliability in capital proceedings and the heightened level of admissibility set forth in 18 U.S.C. §3593(c)." [DE 1132 at 4; *see also* DE 1027 at 130-131.] This rationale – that the proffer would be of help to the court – is not a reason at this point in time to order the government to lay out its case, chapter and verse. Next Tuesday I will be sifting through challenges to this and other aggravating factors based on the comprehensive Motion to Strike the Notice and after a hearing at which all the challenges to the aggravating factors can be fleshed out by whatever argument and evidence the parties

5

choose to bring.  At that time, to the extent I have questions or concerns about the

nature of some of the aggravating factors, I will fully explore them on the record.

In sum, Briseno has no constitutional or statutory right to the outline of the

evidence that he seeks.

ACCORDINGLY:

Defendant Juan Briseno's "Motion for an Informative Outline of the

Government's Factual Basis for the Nonstatutory Aggravating Factor that Mr. Briseno is

a Continuing Danger to the Lives and Safety of Others and is Likely to Commit Acts of

Violence in the Future" [DE 1132] is DENIED.

SO ORDERED.

ENTERED: November 14, 2014.

        /s/ Philip P. Simon
PHILIP P. SIMON, CHIEF JUDGE
UNITED STATES DISTRICT COURT

2139

**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | NO. 2:11CR77 PPS |
| | ) | |
| JUAN BRISENO, | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER**

Upon review of the operative scheduling order in this case, I note that the upcoming requirement for the filing of proposed jury instructions does not expressly indicate that it includes proposed verdict forms. [*See* DE 966 at 3.]  I here clarify that proposed verdict forms should also be submitted, subject to the same effort of the parties to confer and agree on their form.

ACCORDINGLY:

The proposed jury instructions to be filed by **December 1, 2014** should include **proposed verdict forms** for each phase of the trial.

SO ORDERED.

ENTERED: November 14, 2014.

/s/ Philip P. Simon
PHILIP P. SIMON, CHIEF JUDGE
UNITED STATES DISTRICT COURT

2140

```
MIME-Version:1.0
From:CMECFinnd@innd.uscourts.gov
To:CMECFinnd@localhost.localdomain
Bcc:
--Case Participants: Richard M Davis (jdavis@hwelaw.com, rdavis@hwelaw.com,
rgould@hwelaw.com), Pablo DeCastro (pdecastro@rascia-decastro.com,
ysierra@rascia-decastro.com), Kurt R Earnst (kre@braje-nelson.com), Arlington J Foley
(arlingtonfoley@att.net), Jack Friedlander (jack@jackfriedlander.com,
office@jackfriedlander.com), Bruce R Hegyi - AUSA (bruce.hegyi@usdoj.gov), Roxanne Mendez
Johnson (attorneyrmj@gmail.com), Gojko Kasich (gkasich@crownlaw.com, gkasich@gmail.com),
Scott L King (dwilliams@scottkinggroup.com, sking@scottkinggroup.com), Visvaldis P Kupsis
(vpkupsis@hotmail.com), Dean R Lanter - AUSA (dean.lanter@usdoj.gov,
janet.eisenmann@usdoj.gov, usainn.ecfcivil@usdoj.gov), John Maksimovich
(criminallaw@johnmaksimovich.com), John E Martin - FCD (john_martin@fd.org), Sheldon B
Nagelberg (sbnagelberglaw@att.net), David J Nozick - AUSA (david.nozick@usdoj.gov,
janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov,
usainn.ecfcivil@usdoj.gov), Mark A Psimos (psimoslaw@airbaud.net), Robert L Rascia
(rrascia@rascia-decastro.com, ysierra@rascia-decastro.com), Stephen Edward Scheele
(pkd@gk4law.com, ses@gk4law.com), Paul Jeffrey Schlesinger (pjeffslaw@aol.com), Adam
Tavitas (adtavitas@aol.com, b.lynneadams@yahoo.com), John T Theis (theislaw@aol.com),
James N Thiros (jim@thiros.com, lynn@thiros.com), Bryan M Truitt (bryan@tblawyers.com,
sherrie@tblawyers.com), David E Vandercoy (david.vandercoy@valpo.edu), Thomas W Vanes
(b.lynneadams@yahoo.com, tom.vanes@sbcglobal.net), Ihor Alexander Woloshansky
(ihorlawyer@hotmail.com), Richard C Wolter (b.lynneadams@yahoo.com), R Brian Woodward
(carolb@wbbklaw.com, rbwoodward@wbbklaw.com), Magistrate Judge Andrew P Rodovich
(rodovich_chambers@innd.uscourts.gov, ruth_nagy@innd.uscourts.gov), Chief Judge Philip P
Simon (denise_woodside@innd.uscourts.gov, jacob_hamann@innd.uscourts.gov,
lauren_schwartz@innd.uscourts.gov, mira_serrill-robins@innd.uscourts.gov,
noel_collins@innd.uscourts.gov, philip_simon@innd.uscourts.gov)
--Non Case Participants: Matthew D Soliday (office@matthewsolidaylaw.com),
Probation/Pretrial Services (innpml_cmecf@innd.uscourts.gov), U S Marshal
(inn.docket-fw@usdoj.gov, inn.docket-sb@usdoj.gov, usms.27@usdoj.gov)
--No Notice Sent:

Message-Id:2656203@innd.uscourts.gov
Subject:Activity in Case 2:11-cr-00077-PPS-APR United States of America v. Briseno et al
Motion Hearing
Content-Type: text/html
```

### U.S. District Court Northern District of Indiana [LIVE]

### USDC Northern Indiana

**Notice of Electronic Filing**

The following transaction was entered on 11/20/2014 at 4:56 PM EST and filed on 11/18/2014

| | |
|---|---|
| **Case Name:** | United States of America v. Briseno et al |
| **Case Number:** | 2:11-cr-00077-PPS-APR |
| **Filer:** | |
| **Document Number:** | 1169(No document attached) |

**Docket Text:**
**MOTION HEARING as to Juan Briseno held on 11/18/2014 re [1027] MOTION TO STRIKE THE NOTICE OF AGGRAVATING FACTORS filed by Juan Briseno before Chief Judge Philip P Simon. Govt present by David Nozick, AUSA and Bruce R. Hegyi, AUSA. Dft is present in person and by cnsl Arlington Foley and John Maksimovich. Court hears argument on the motion. Court takes matter under advisement and will issue an opinion. Other matters**

**discussed: Govt reminded that Colon video needs to be provided to the court. Recess taken. Discussion on other matters continues. Trial schedule – Trial days Monday – Thursday. Parties agree to schedule. Jury selection schedule not finalized but probable for Monday – Friday until the jury panel is selected. Defense inquires of storgage area for trial materials. Court will look into this matter for Attys Foley and Maksimovich. Weather issues/problems during trial discussed. Next hearing dates: 12/12/14 (10:00 a.m.) and 12/18/14 (10:00 a.m.). Defendant REMANDED to custody of US Marshal.(Court Reporter Stacy Drohosky.) (nac)**

**2:11−cr−00077−PPS−APR−1 Notice has been electronically mailed to:**

David E Vandercoy     david.vandercoy@valpo.edu

Richard M Davis     rdavis@hwelaw.com, jdavis@hwelaw.com, rgould@hwelaw.com

Arlington J Foley     arlingtonfoley@att.net

Mark A Psimos     psimoslaw@airbaud.net

Gojko Kasich     gkasich@crownlaw.com, gkasich@gmail.com

Scott L King     sking@scottkinggroup.com, dwilliams@scottkinggroup.com

James N Thiros     jim@thiros.com, lynn@thiros.com

Thomas W Vanes     tom.vanes@sbcglobal.net, b.lynneadams@yahoo.com

Ihor Alexander Woloshansky     ihorlawyer@hotmail.com

R Brian Woodward     rbwoodward@wbbklaw.com, carolb@wbbklaw.com

John Maksimovich     criminallaw@johnmaksimovich.com

Visvaldis P Kupsis     vpkupsis@hotmail.com

Sheldon B Nagelberg     sbnagelberglaw@att.net

John E Martin – FCD     john_martin@fd.org

Adam Tavitas     Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander     jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele     ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst     kre@braje−nelson.com

Bryan M Truitt     bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis     theislaw@aol.com

Robert L Rascia     rrascia@rascia−decastro.com, ysierra@rascia−decastro.com

Paul Jeffrey Schlesinger    pjeffslaw@aol.com

Pablo DeCastro    pdecastro@rascia−decastro.com, ysierra@rascia−decastro.com

Dean R Lanter − AUSA    dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov,
janet.eisenmann@usdoj.gov

David J Nozick − AUSA    David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov,
janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson    attorneyrmj@gmail.com

Bruce R Hegyi − AUSA    bruce.hegyi@usdoj.gov

**2:11−cr−00077−PPS−APR−1 Notice has been delivered by U.S. Mail or other means to:**

THE UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, Plaintiff, | § § § § | |
| v. | § § | CAUSE NO.  2:11-CR-0077-PPS |
| JUAN BRISENO, also known as Tito, Defendant. | § § § § | |

**GOVERNMENT'S MEMORANDUM OF LAW**
**REGARDING CAPITAL CASE JURY SELECTION PROCEDURES**

TO THE HONORABLE COURT:

COMES NOW, the United States of America ("United States" or "Government"), by and

through David Capp, the United States Attorney, and in an effort to aid the Court, files its

Memorandum of Law regarding the jury selection process in capital cases.  The Government

urges the Court to apply the law, as set forth below, when evaluating the scope of voir dire and

motions for excusing prospective jurors for cause.

### A.    General Rules of Juror Qualification

The Court may excuse a prospective juror for cause because his or her death penalty

views would "prevent or substantially impair the performance of his duties as a juror in

accordance with his instructions and his oath."  *Wainwright v. Witt*, 469 U.S. 412, 424 (1985);

*Morgan v. Illinois*, 504 U.S. 719, 728 (1992).  This standard applies equally to venire members

who strongly favor and strongly oppose capital punishment.  *Morgan* v. *Illinois*, 504 U.S. at 734

n.7.  The rule reflects the defendant's right to an impartial jury and the Government's legitimate

interest in administering constitutional capital sentencing procedures. *Wainwright v. Witt*, 469

U.S. at 418 & 423.

A juror's views would "prevent" impartial performance if he or she would

"automatically" or "always" vote for or against the death penalty, regardless of the facts and the

law. *Wainwright v. Witt*, 469 U.S. at 422; *Morgan v Illinois*, 504 U.S. at 733. A juror's views

"substantially impair" impartial performance if they interfere with, or create an obstacle to,

objective consideration of the law and the facts. *See Wainwright v. Witt*, 469 U.S. at 433-34.

The Court should not excuse prospective jurors "simply because they expressed general

objections to the death penalty or voiced conscientious or religious scruples against its

infliction." *Witherspoon v. Illinois*, 391 U.S. 510, 522 (1968). Likewise, a venire member is not

partial merely because he or she states support, or even a preference, for capital punishment, so

long as the prospective juror can distinguish between his personal views and what the law

requires. *See Miniel v. Cockrell*, 339 F.3d 331, 339-40 (5th Cir. 2003).

The burden of proving bias rests on the moving party. *United States v. Chanthadara*, 230

F.3d 1237, 1270 (10th Cir. 2000). The crucial inquiry is whether the venire member could follow

the jury's instructions and obey his or her oath, notwithstanding his or her personal views on

capital punishment. Id. A venire member is properly excluded from capital jury service if the

court has a "definite impression" that the prospective juror could not faithfully and impartially

follow the law applicable to capital trials. *Wainwright v. Witt*, 469 U.S. at 425-26. The court's

determination that a potential juror is unqualified to serve is a finding of fact entitled to great

deference, and juror bias need not be proven with "unmistakable clarity." Id. at 424, 428-29.

Rulings on motions to excuse prospective jurors for their orally-expressed death penalty

views generally receive deference because they rely largely on in-person credibility assessments.

*See Wainwright v. Witt*, 469 U.S. at 426-29 (noting that determinations of bias are "based upon determinations of demeanor and credibility that are peculiarly within a trial judge's province"); *United States v. Chanthadara*, 230 F.3d at 1269 (noting "the trial judge's unique ability to observe demeanor and assess credibility.")  However, this deference does not necessarily extend to rulings based on answers to written questionnaires.  *See United States v. Chanthadara*, 230 F.3d at 1270 (holding that a removal for cause, based on views expressed in a questionnaire, was entitled to no deference because the court did not observe the prospective juror's demeanor); *but see United States v. Purkey*, 428 F.3d 738, 750 (8th Cir. 2005) (holding that removals for cause based solely on written questionnaires are subject to abuse of discretion review); *United States v. Quinones*, 511 F.3d 289, 300 (2d Cir. 2007) (same).

In sum, four principles guide capital case jury selection: (1) defendants have the right to an impartial jury drawn from a venire that is not biased toward the death penalty; (2) the Government has a recognized interest in empanelling jurors who can apply capital punishment within the law; (3) a juror who is substantially impaired can be removed for cause; and (4) rulings on motions to excuse are entitled to deferential review when premised on in-court interactions with the affected venire member.  *Uttecht v. Brown*, 551 U.S. 1, 9 (2007).

### B.        <u>Appropriate Scope of Voir Dire</u>

Voir dire must be adequate to assure the defendant a jury whose members are able impartially to follow the Court's instructions and evaluate the evidence.  *Rosales-Lopez v. United States*, 451 U.S. 182, 188 (1981).  The exact scope of questioning is committed to the broad discretion of the court.  *United States v. Tipton*, 90 F.3d 861, 877 (4th Cir. 1996) (citing *Rosales-Lopez*, 451 U.S. at 188 and *Ham v. South Carolina*, 409 U.S. 524, 527 (1973)); *accord* Fed. R.

Crim. P., Rule 24(a). With limited exceptions,[1] no particular questions are constitutionally required, unless a failure to ask them would "render the trial fundamentally unfair." *See Mu'Min v. Virginia*, 500 U.S. 415, 425-26 (1991) (rejecting any requirement to ask questions about the content of pretrial publicity to which prospective jurors were exposed.)

However, certain areas of inquiry are required in capital cases. Voir dire must consist of more than general fairness and "follow the law" questions. *Morgan v. Illinois*, 504 U.S. at 734-35. General inquiries are inadequate to determine if a venire member has views about the death penalty that would prevent him or her from following the law and considering all aggravating and mitigating evidence. *See* id. at 735. Upon a capital defendant's request, the Court must ask if a venire member would automatically vote for the death penalty, regardless of the facts, if the defendant was convicted of a capital offense. Id. at 726-27. This inquiry is the converse of the *Witherspoon* inquiry, referenced above. Thus, the Court should permit direct questions to determine if prospective jurors would automatically vote for or against the death penalty. *See Morgan v. Illinois*, 504 U.S. at 733-34,738; *United States v. Tipton*, 90 F.3d at 878 (observing that the best method to determine if a prospective juror would automatically vote for the death penalty is to ask the juror directly.)

However, the Court should not permit voir dire designed to elicit how venire members would vote *when faced with specific facts or evidence*. Such "stake out" questions are not constitutionally required and have a deleterious effect on the deliberative process because they have a tendency to encourage or force jurors, who have yet to be instructed on the law, to stake out or forecast hardened positions on evidence they have not seen or heard. Allowing

---

[1] For example, questions about racial bias may be required in certain cases. *See Ham v. South Carolina*, 409 U.S. at 526-27.

hypothetical "stake out" questions invites confusion about the scope of the juror's duty to consider and judge the credibility of evidence.

The Supreme Court has never held that case-specific questions are required.  In fact, in *Witherspoon v. Illinois*, the Court noted:

> [A] prospective juror cannot be expected to say in advance of trial whether he would in fact vote for the extreme penalty in the case before him. The most that can be demanded of a venireman in this regard is that he be willing to consider all of the penalties provided by ... law, and that he not be irrevocably committed, before the trial has begun, to vote against the penalty of death regardless of the facts and circumstances that might emerge in the course of the proceedings.

391 U.S. at 522 n.21 (emphasis omitted).  While *Morgan v. Illinois* held that general fairness or "follow the law" questions are insufficient, it did not hold that capital litigants have a right to inquire about specific evidence.  Rather, it announced only that a capital defendant may determine if a conviction would lead a prospective juror to automatically vote for the death penalty.  *See* 504 U.S. at 736-38.

Similarly, while jurors must be willing to generally "consider" mitigation evidence, Supreme Court jurisprudence does not require inquiries about specific mitigation information. *See Buchanan v. Angelone*, 522 U.S. 269, 276 (1998); *Eddings v. Oklahoma*, 455 U.S. 104, 114-15 (1982).  The Constitution requires only that jurors manifest an ability to consider mitigators, not specific evidence.  *See United States v. Hall*, 152 F.3d 381, 409 (5th Cir. 1998), *abrogated on other grounds by United States v. Martinez-Salazar*, 528 U.S. 304, 310-311 (2000).

The Tenth Circuit has expressly ruled that case-specific questioning is not required.  *See McVeigh*, 153 F.3d 1166, 1207-08 (10th Cir. 1998), *disapproved of on other grounds in Hooks v. Ward*, 184 F.3d 1206, 1227 (10th Cir. 1999); *United States v. McCullah*, 76 F.3d 1087, 1114 (10th Cir. 1996) (holding the trial court was not required to allow inquiry into each juror's views as to specific mitigators as long as voir dire was otherwise adequate under *Morgan v. Illinois.*)

Indeed, the Tenth Circuit held that "*Morgan* ... is designed to illuminate a juror's basic beliefs 'regardless of the facts and circumstances of conviction,' ... not to allow defendants to pre-determine jurors' views of the appropriate punishment for the particular crime charged." Id. at 1208.  It also found improper a question that required a venire member's speculation and pre-commitment.  Id. at 1207.

The Fourth Circuit has reached much the same conclusion, finding "*Morgan* does not require that a capital defendant be able to determine at voir dire what a prospective juror's sentencing decision will be if presented with specific state of evidence or circumstances." *Richmond v. Polk*, 375 F.3d 309, 329-331 (4th Cir. 2004) (precluding questioning of jurors regarding the effect defendant's prior murder conviction would have on their deliberations).

In *McVeigh*, the Tenth Circuit set forth the limitations of the *Morgan* opinion:

*Morgan* . . . is designed to identify potential jurors who would automatically impose the death penalty for conviction of a capital offense. When a defendant asks a juror to speculate or pre-commit on how that juror might vote based on any particular facts, the question strays beyond the purpose and protection of *Morgan*.

153 F.3d at 1207.  Case-specific predisposition questions are prohibited because *Morgan v. Illinois* does not permit defendants to predetermine jurors' views of the appropriate punishment for the particular crime charged.  Id. at 1208.

Accordingly, this Court should prohibit questions that pertain to the weight prospective jurors would give to evidence, or that ask how they would vote when faced with certain evidence or facts.  Such inquiries would improperly encourage prospective jurors to voice positions as to hypothetical scenarios, which would confuse and mislead venire members regarding their duty to weigh and consider the actual evidence presented at the trial of this case.  *See United States v. Fulks*, 454 F.3d 410, 429 (4th Cir. 2006) (noting an instance of confusion from fact-specific voir dire).

C.      **Specific Circumstances Supporting Excusal for Cause**

1.      Decision Based on Limited or Extreme Situations

A simple willingness to theoretically impose the death penalty does not qualify a venire member to sit on a jury – if the prospective juror remains unwilling or unable to follow the law. The Court should find prospective jurors "substantially impaired," and strike them for cause, if they would consider the death penalty only in limited or extreme situations.

For instance, excusal is appropriate when the venire member expresses a willingness to impose capital punishment only in cases of multiple-murder. *See, e.g., United States v. Moore*, 149 F.3d 773, 780 (8th Cir. 1998) (upholding excusal in light of statement that a venire member would consider the death penalty "if a person murdered like maybe 100 or 200 people," but not for "one or two"); *Fuller v. Johnson*, 114 F.3d 491, 499-501 (5th Cir. 1997) (holding prospective juror properly excluded who would only consider the death penalty for serial murderers or those who murder "more than one"); *United States v. Tipton*, 90 F.3d 861, 880 (4th Cir. 1996) (holding juror properly excused who showed opposition to death penalty, but said he could impose death for multiple murders); *see also Morales v. Mitchell*, 507 F.3d 916, 942 (6th Cir. 2007) (upholding removal of venire member who expressed general opposition to the death penalty but said he might be able to impose it in limited circumstances.)

Likewise, potential jurors are properly excluded when they can foresee imposition of the death penalty only under extreme hypothetical situations. *See, e.g., Antwine v. Delo*, 54 F.3d 1357, 1369 (8th Cir. 1995) (holding jurors' "willingness to consider the death penalty in extreme hypothetical situations did not 'render either of them immune from exclusion from the jury for cause'"); *Riles v. McCotter*, 799 F.2d 947, 949-50 (5th Cir. 1986) (upholding excusal of venire

member who stated she could not impose the death penalty unless the murder involved

mutilation.)

### 2.    Decision Limited to Notorious Benchmark Personalities

Venire members are properly stricken when their willingness to impose the death penalty

is limited to notorious benchmark personalities.  *See, e.g., United States v. Mitchell,* 502 F.3d

931, 956 (9th Cir. 2007) (affirming removal of a venire member who could possibly have

sentenced Charles Manson or Ted Bundy to death); *Antwine v. Delo*, 54 F.3d 1357, 1369 (8th

Cir. 1995) (upholding strike of prospective juror who expressed doubts about imposing death but

wavered when asked about Adolf Hitler); *Stewart v. Dugger*, 877 F.2d 851, 855-57 (11th Cir.

1989) (upholding excusal of a prospective juror who would have to think hard about imposing

death for a person like Charles Manson).

### 3.    Decision Limited to Special Victims

Similarly, venire members are appropriately removed when they will impose the death

penalty only in cases involving special victims.  *See, e.g., United States v. Flores*, 63 F.3d 1342,

1356 (5th Cir. 1995) (upholding excusal of a prospective juror who would impose death only in a

case of an abused and murdered child); *Antwine v. Delo*, 54 F.3d at 1369 (affirming strike of a

venire member who hesitated when asked if she could consider the death penalty if the case

involved a small child who was brutally murdered.)

### 4.    Decision Based on Factors/Standards Not Recognized by the Law

Excusals for cause are also appropriate for venire members whose opinions limit their

ability to impose the death penalty under circumstances not recognized by the law.  *See, e.g.,*

*United States v. Flores*, 63 F.3d at 1356 (affirming strike of a prospective juror who would not

vote for the death penalty if the victim was involved in drugs); *Davis v. Exec. Director of Dep't*

*of Corrections*, 100 F.3d 750, 778 (10th Cir. 1996) (upholding the strike of a venire member who would not impose the death penalty for an alcohol-related crime.)  For instance, prospective jurors who would impose arbitrary burdens of proof, unsupported by the law, are properly stricken.  *See, e.g., United States v. Flores*, 63 F.3d at 1355-56 (upholding the strike of a prospective juror who would only impose the death penalty if the defendant confessed or the juror witnessed murder); *Drew v. Collins*, 964 F.2d 411, 416-17 (5th Cir. 1992) (upholding strike of a prospective juror who would hold the Government to a higher standard than reasonable doubt.)

>5.     Equivocal, Uncertain, Ambiguous, Conflicting Responses

Finally, a Court may properly exclude a prospective juror whose answers to key voir dire questions are equivocal, uncertain, ambiguous, contradictory, or conflicting.  For example, in *Uttecht v. Brown*, 551 U.S. 1 (2007), prospective "Juror Z" expressed general support for the death penalty and a willingness to "consider" it.  551 U.S. at 14-15.  However, Juror Z was properly stricken after he provided contradictory answers and expressing "confus(ion) about the conditions under which the death penalty could be imposed."  Id. at 15, 17.  "Juror Z's assurances that he would consider imposing the death penalty and follow the law do not overcome the reasonable inferences from his other statements."[2]  Id. at 18.

Similarly, the Ninth Circuit affirmed the excusal of prospective "Juror #39," who provided equivocal and ambiguous answers to voir dire and a questionnaire.  *United States v. Mitchell,* 502 F.3d 931, 955-56 (9th Cir. 2007).  *Morales v. Mitchell*, 507 F.3d 916, 955-56 (6th Cir. 2007).  Juror #39's questionnaire answers demonstrated opposition to the death penalty that

---

[2]  Another equivocal *Uttecht* venire member was properly excused for cause despite defense objections that the "equivocal statements reflected careful thinking and responsibility, not substantial impairment."  551 U.S. at 11.

would have substantially impaired her ability to perform her duties.  Id. at 955.  The Ninth

Circuit observed that Juror #39's oral responses were "more nuanced" but it held that the trial

court did not abuse its discretion in excusing her because it "was left with the 'firm impression,

based on [Juror #39's] demeanor here in court, that she would struggle to the point that I don't

think she would honestly consider the death penalty in accordance with the instruction and her

duty as an oath.'"  Id. at 956; *see also Morales v. Mitchell*, 507 F.3d 916, 942 (6th Cir. 2007)

(upholding removal of venire member who expressed general opposition to the death penalty but

said he might be able to impose it in limited circumstances); *United States v. Tipton*, 90 F.3d at

880-81 (affirming excusal of jurors who expressed strong opposition to the death penalty and

gave equivocal, ambiguous and contradictory voir dire responses.)

Plainly, no Court could propound an exhaustive list of properly excused venire members,

the examples cited above are illustrative of the types of limitations and predispositions that

should be properly excluded from a capital jury.

### D.     Public Voir Dire

Jury selection should be conducted in the courtroom and open to the public.  "The process

of juror selection is itself a matter of importance, not simply to the adversaries but to the criminal

justice system."  *Press-Enterprise Company v. Superior Court*, 464 U.S. 501, 505 (1984)

("*Press-Enterprise I*").  The right to a public trial flows from the First and Sixth Amendments of

the Constitution and applies to every phase of the criminal trial, including pre-trial motions.  *See*

*In re Oliver*, 333 U.S. 257, 266-73 (1948); *Gannett Co. v. DePasquale*, 443 U.S. 368, 379

(1979); *Waller v. Georgia*, 467 U.S. 39, 43 (1984).  The explicit Sixth Amendment right of the

defendant to a public trial is complemented by an implicit, albeit "qualified," First Amendment

right of the press and public to attend the proceedings.  *See Press-Enterprise Co. v. Superior*

*Court*, 478 U.S. 1, 9 (1986) ("*Press-Enterprise II*").  The First Amendment privilege extends to

jury selection.  *Press-Enterprise I*, 464 U.S. 509-10; *see also Richmond Newspapers, Inc., v.*

*Virginia*, 448 U.S. 555, 570-72 (1980) (access to trial); *El Vocero v. Puerto Rico*, 508 U.S. 147,

149-150 (1993) (*per curiam*) (access to trial-like preliminary hearings); *Press-Enterprise II*, 478

U.S. at 10 (access includes preliminary hearings).

The Court in *Press-Enterprise I* found the jury selection process was entitled to a

presumption of openness.  464 U.S. at 509-10.  That presumption may be overcome only by

"findings that closure is essential to preserve higher values."  Id. at 510.  The closure must be

narrowly tailored to serve those interests.  Id.; *United States v. McVeigh*, 119 F.3d 806, 814 (10th

Cir. 1997).  Any such interest must be articulated with findings capable of facilitating appellate

review.  *Press-Enterprise I*, 464 U.S. at 510.  Thus, before any stage of a proceeding may be

closed, the Court must consider four factors:  (1) an overriding interest likely to be prejudiced by

open proceedings; (2) a closure no broader than necessary to protect that interest; (3) reasonable

alternatives to closure; and (4) express findings adequate to support closure.  *Waller v. Georgia*,

467 U.S. 39, 48 (1984).

The right to a public trial belongs to the Government as well as the defendant.  As Justice

Berger noted in *Richmond Newspapers, Inc*.:

> The crucial prophylactic aspects of the administration of justice cannot function in the
> dark; no community catharsis can occur if justice is "done in a corner [or] in any covert
> manner."  It is not enough to say that results alone will satiate the natural community
> desire for "satisfaction."  A result considered untoward may undermine public
> confidence, and where the trial has been concealed from public view an unexpected
> outcome can cause a reaction that the system at best has failed and at worst has been
> corrupted.  To work effectively, it is important that society's criminal process "satisfy the
> appearance of justice," and the appearance of justice can best be provided by allowing
> people to observe it.

448 U.S. at 571-72.  In line with those concepts, "'[t]he process of juror selection is itself a matter of importance, not simply to the adversaries but to the criminal justice system.' The public has a right to be present whether or not any party has asserted the right." *Presley v. Georgia*, 558 U.S. 209, 214 (2010) (citing *Press-Enterprise I*, 464 U.S. at 501).

With the exception of its earlier-expressed concerns for juror safety/intimidation, the United States is unaware of any overriding interest that is likely to be prejudiced by open voir dire in this case.  The Government continues to urge that the names and identifying information of the venire not become public (a "confidential jury"), but it believes that permitting prospective jurors to discuss intensely personal or otherwise sensitive issues at the bench should be sufficient.

Accordingly, the Government urges the Court to presume that the voir dire proceedings will remain open to the public.

2155

Respectfully submitted,

DAVID CAPP
UNITED STATES ATTORNEY

David J. Nozick
Assistant U.S. Attorney
5400 Federal Plaza
Suite 1500
Hammond, IN 46320
Tel. (219) 937-5655
www.david.nozick@usdoj.gov


s/  *Bruce R. Hegyi*
Bruce R. Hegyi
Trial Attorney
Capital Case Unit
Criminal Division
United States Department of Justice
1331 F Street, N.W., Third Floor
Washington, D.C.  20530
Tel. (202) 616-4582
Cell (703) 536-4774
www.bruce.hegyi@usdoj.gov

CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing filing was served on counsel of record for defendant Juan Briseno via ECF on this 24th day of November 2014.


s/ *Bruce R. Hegyi*
Bruce R. Hegyi
Trial Attorney

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) Cause No.: 2:11-cr-77 | |
| | ) | |
| JUAN BRISENO, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the court on the Motion for Eye Examination [DE 1135] filed by the

defendant, Juan Briseno, on November 5, 2014. Noting the lack of a response in opposition, the

court **GRANTS** the motion. The court **ORDERS** the Jerome Combs Detention Center to

schedule Juan Briseno for an eye examination.

ENTERED this 25th day of November, 2014.

/s/ Andrew P. Rodovich
United States Magistrate Judge

2158

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

UNITED STATES OF AMERICA,

          **Plaintiff**

vs

JUAN BRISENO,

          **Defendant**                 **CAUSE NO:   2:11-CR-77**

---

**DEFENDANT'S PROPOSED  JURY-SELECTION PROCEDURES
AND MEMORANDUM OF LAW REGARDING CAPITAL VOIR DIRE**

---

Comes now Defendant Juan Briseno, by counsel Arlington Foley and John Maksimovich,

and files this motion and incorporated memorandum regarding proposed jury-selection

procedures and an outline of the law regarding capital *voir dire*.

**LEGAL ARGUMENT**

FOR THE REASONS WHICH FOLLOW, DEFENDANT
RESPECTFULLY REQUESTS THAT JURY-SELECTION IN
THIS CASE PROCEED AS OUTLINED BELOW.

**A.**      **Introduction**

The purpose of this memorandum is to outline a suggested jury-selection process in this

death-penalty prosecution.  Mr. Briseno requests a combination of court- and attorney-conducted

individual *voir dire* designed to supplement and clarify jurors' responses on the questionnaire

and to explore juror attitudes on issues such as the death penalty, exposure to publicity, Mr.

Briseno' prior conviction for felon in possession of a handgun, and other relevant topics.

-1-

**B.      The overall proposed procedure**

The process is scheduled to begin on January 12, 2015, when, presumably under the supervision of court staff, prospective jurors will appear in Court. Defense counsel suggest that the court utilize this opportunity to introduce the parties to the prospective jurors and provide a brief orientation to the case.[1]

In the period between completion of the questionnaires and the commencement of individual *voir dire*, both sides will review the questionnaires and confer in an attempt to agree on jurors whose questionnaires reflect legitimate hardships or whose answers are extreme or otherwise so problematic that calling those jurors back for additional questioning does not seem a productive use of time. The court has the option of reviewing the parties' list or accepting the decisions mutually arrived at.[2] Once this initial review has been completed, jurors would be scheduled to return for individual questioning in groups of 10-15 per day, numbers which can be adjusted up or down based on experience.

On the day scheduled for each group of jurors' return, individual jurors are brought one at a time to a conference room-type environment, such as a jury room, for follow-up questioning by the court and counsel as seems appropriate in light of answers on the questionnaire and the nature of this case.[3] Because of the nature of the proceedings, and because a defendant in a federal

---

[1] The Defendant suggests that the court summarize the charges in the indictment and discuss general principles concerning a criminal trial, the federal death penalty, the role of the jury in such a trial, and scheduling.

[2] Experience teaches that this "culling" process is an enormous time-saving device.

[3] It is suggested that the court follow up generally on questionnaire answers and hardship requests, but that issues of a juror's exposure to information about the case, from whatever source, as well as the topic of capital punishment, be reserved to counsel.

capital case bears the burden of persuasion on mitigating factors, the defense would begin the

*voir dire* and have a brief follow-up after the government's questioning. Alternatively, each side

could take turns questioning the juror. At the conclusion of the juror's individual *voir dire,* the

juror is temporarily excused and the court immediately hears and decides any for-cause

challenge. If the juror is not challenged or excused for cause, the juror is placed in a qualified

"pool" of potential jurors.

This process continues until there are sufficient jurors in the qualified pool against whom

counsel will then exercise peremptory strikes.[4] Assuming the court grants Mr. Briseno's request

for additional challenges to a total of 32, the court would have to pre-qualify a minimum of 76[5]

jurors.  To be on the safe side, defense counsel suggest that the court pre-qualify at least 85 jurors

since the circumstances of some jurors may change between the time of qualification and final

selection.

On the final day of jury-selection, all pre-qualified jurors return to court and inquiry is

made of the group whether any of their circumstances regarding their qualifications to serve as

jurors have changed or whether they have been exposed in any way to information about the

---

[4]  In a non-capital case, the defense is allowed 10 challenges to the government's 6, a process that yields an approximate 60-40 ratio to the advantage of the defense.  In a capital case, each side is allotted 20 peremptory challenges to the main panel, a one-to-one ratio. F.R.Crim.P. 24(b). Defendant requests that the court increase the number of peremptory challenges for the capital defendant in this case to restore the 60-40 balance present in a non-capital criminal case.  Thus, the capital defendant, Juan Briseno, should be allotted 32 challenges to the government's 20.

[5]  The figure is arrived at by adding the number of jurors needed (18, consisting of 12 regular members and six alternates) and the total peremptory strikes available to both sides (20 for the government; 32 for the defendant; three each for the alternates.

case. Once those issues are resolved, the parties take turns exercising peremptory challenges.[6]

After the parties either exhaust their peremptory challenges or agree upon a panel, the final 18

become the jury (12 regular members and six alternates).

### C.      Death-qualification

#### 1.      Jurors opposed to capital punishment

The Supreme Court has long recognized that the Sixth and Eighth Amendments protect a

capital defendant from being placed on trial before a "tribunal organized to return a verdict of

death." *Witherspoon v. Illinois*, 391 U.S. 510, 521 (1968). In *Witherspoon*, the Court held that

prosecution cause-challenges brought on the basis of a prospective juror's reservations or

scruples regarding capital punishment should be granted only under circumstances where jurors

made it "unmistakably clear" that "they would automatically vote against the imposition of

capital punishment without regard to any evidence that might be developed at the trial of the case

before them." *Id.* at 523 n.21.  The Court went on to state:

> [A] sentence of death cannot be carried out if the jury that imposed
> or recommended it was chosen by excluding veniremen for cause
> simply because they voiced general objections to the death penalty
> or expressed conscientious or religious scruples against its
> infliction.  No defendant can constitutionally be put to death at the
> hands of a tribunal so selected.

*Witherspoon*, 391 U.S. at 522.  While the Court has tinkered with language, it has never retreated

from the basic premise that "[a] man who opposes the death penalty, no less than one who favors

it, can make the discretionary judgment entrusted to him by the State and can thus obey the oath

---

[6] There are a number of variations on how this is carried out. Each has its own advantages
and disadvantages. The most important thing is that everyone understands the ground rules before
the strike process begins.

2162

he takes as a juror." *Witherspoon*, 391 U.S. at 519. This principle was reiterated in 1986 when

the Court noted that, under its cases, even "those who firmly believe that the death penalty is

unjust may nevertheless serve as jurors in capital cases." *Lockhart v. McCree,* 476 U.S. 162, 176

(1986*)*.

       Twelve years after *Witherspoon*,[7] the Court decided *Adams v. Texas*, 448 U.S. 38 (1980).

Applying the *Witherspoon* principles in a notorious case,[8] the Court re-cast its *Witherspoon*

language and held that jurors could be excluded from service in a capital case on prosecution

challenges-for-cause only when the jurors' views on capital punishment "would prevent or

substantially impair the performance of [their] duties as jurors in accordance with [their]

instructions and [their] oath." *Adams*, 448 U.S. 50-51. Despite an arguable watering-down of the

legal standard (juror's views would "automatically vote against the imposition of capital

punishment," versus views that would "prevent or substantially impair" a juror's ability to follow

the law), the Court held in *Adams* that it would be (and was in that case) a violation of the

constitution to exclude jurors "who stated that they would be 'affected' by the possibility of the

death penalty, but who apparently meant only that the potentially lethal consequences of their

decision would invest their deliberations with greater seriousness and gravity or would involve

them emotionally." *Adams*, 448 U.S. at 49.  The *Adams* Court also held that it would be a

constitutional violation to exclude jurors simply because they were "unable positively to state

---

[7] In the years between *Witherspoon* and *Adams*, the Supreme Court both struck down capital punishment, *Furman v. Georgia*, 408 U.S. 238 (1972) (per curiam) and permitted its return, *Gregg v. Georgia*, 428 U.S. 153 (1976).

[8] Adams' case became the subject of a movie, "The Thin Blue Line," and it was eventually established that he was innocent.

-5-

whether or not their deliberations would in any way be 'affected'" by the prospect of the death

penalty.  448 U.S. at 50. Emphasizing the narrow basis of its opinion, the Court explained

further:

> [I]t is clear beyond peradventure that *Witherspoon* is not a ground
> for challenging any prospective juror. It is rather a limitation on the
> State's power to exclude: if prospective jurors are barred from jury
> service because of their views about capital punishment on any
> broader basis than inability to follow the law or abide by their
> oaths, the death sentence cannot be carried out.

*Adams v. Texas*, 448 U.S. at 47-48.

In *Wainwright v. Witt*, 469 U.S. 412 (1985), the Court summarized its prior rulings and,

echoing the language from *Adams*, concluded that a trial court should not excuse a juror for cause

on the basis of the juror's views on the death penalty unless those views were so deeply

entrenched that they "would prevent or substantially impair the performance of his duties as a

juror in accordance with his instructions and his oath." *Id.* at  421; *see also United States v.*

*Chanthadara*, 230 F.3d 1237 (10th Cir. 2002) (reversing, on *Witherspoon* grounds, a sentence of

death imposed pursuant to the Federal Death Penalty Act).[9] Since *Adams* and *Witt*, the Court has

consistently held that strong views in opposition to capital punishment do not disqualify a

prospective juror from serving on a capital case. As noted earlier, in 1986 in *Lockhart v. McCree*

the Court stated:

> [T]hose who firmly believe that the death penalty is unjust may
> nevertheless serve as jurors in capital cases so long as they state

---

[9] It remains settled law that the erroneous exclusion of even a single juror because of his or her opposition to the death penalty is never harmless error and reversal of any ensuing sentence of death is mandatory.  *See, e.g.*, *Grey v. Mississippi*, 481 U.S. 648 (1987); *Chanthadara*, 230 F.3d at 1268.

-6-

clearly that they are willing to temporarily set aside their own
beliefs in deference to the rule of law.

*Lockhart*, 476 U.S. at 176.

In 2007, the Court re-visited and re-affirmed these views, *Uttecht v. Brown*, 127 S.Ct.

2218 (2007), summarizing 30 years or case law as follows:

> These precedents establish at least four principles of relevance
> here. First, a criminal defendant has the right to an impartial jury
> drawn from a venire that has not been tilted in favor of capital
> punishment by selective prosecutorial challenges for cause.
> *Witherspoon,* 391 U.S., at 521, 88 S. Ct. 1770, 20 L. Ed. 2d 776.
> Second, the State has a strong interest in having jurors who are
> able to apply capital punishment within the framework state law
> prescribes. *Witt,* 469 U.S., at 416, 105 S. Ct. 844, 83 L. Ed. 2d 841.
> Third, to balance these interests, a juror who is substantially
> impaired in his or her ability to impose the death penalty under the
> state-law framework can be excused for cause; but if the juror is
> not substantially impaired, removal for cause is impermissible. *Id.,*
> at 424, 105 S. Ct. 844, 83 L. Ed. 2d 841. Fourth, in determining
> whether the removal of a potential juror would vindicate the State's
> interest without violating the defendant's right, the trial court
> makes a judgment based in part on the demeanor of the juror, a
> judgment owed deference by reviewing courts. *Id.*, at 424-434, 105
> S. Ct. 844, 83 L. Ed. 2d 841.
>
> * * *
>
> Capital defendants have the right to be sentenced by an impartial
> jury. The State may not infringe this right by eliminating from the
> venire those whose scruples against the death penalty would not
> substantially impair the performance of their duties.

*Id*. at 2224, 2231.

    2.    <u>Jurors who favor of capital punishment</u>.

In addition to holding that the prosecution may challenge for cause prospective jurors

who are "substantially impaired" in their ability to consider imposing a death sentence, the

-7-

Supreme Court has also held that the defense may challenge for cause jurors whose *pro* death penalty views likewise render those jurors impaired in their ability to give consideration to a life sentence. *Morgan v. Illinois,* 504 U.S. 719 (1992). In *Morgan*, the Court noted it was proper – indeed constitutionally necessary – to remove, on a cause challenge, "[a]ny juror to whom mitigating factors are . . . irrelevant" and that a capital defendant must be allowed the opportunity to ferret out those prospective jurors who had "predetermined the terminating issue of his trial, that being whether to impose the death penalty." *Morgan,* 504 U.S. at 736.

> **D.      The nature and quality of capital voir dire, the issue of "mitigation impairment", the requirement that potential jurors must be able to "consider and give effect" to evidence in mitigation, and the necessity for case-specific questions.**

>      1.      <u>The quality of capital *voir dire*.</u>

As stated in *Morgan*, "Part of the guarantee of a defendant's right to an impartial jury is an adequate voir dire to identify unqualified jurors." *Morgan,* 504 U.S. at 729. *See also*, *Rosales-Lopez v. United States*, 451 U.S. 182, 188 (1981); *Dennis v. United States*, 339 U.S. 162, 171-172 (1950); *Morford v. United States*, 339 U.S. 258, 259 (1950). Thus, a searching *voir dire* is necessary for the government and the defendant to gather the information needed to exercise juror challenges – peremptory and cause – in an intelligent and informed manner. A searching *voir dire* also provides the court with sufficient information to rule accurately on the requested removal of a juror. *See Morgan*, 504 U.S. at 729-730; *Mu'Min v. Virginia*, 500 U.S. 415, 431 (1991).

Of course, *voir dire* is "conducted under the supervision of the court, and a great deal must, of necessity, be left to its sound discretion." *Ristiano v. Ross*, 424 U.S. 589, 594-95

<div align="center">-8-</div>

(1976).  Yet, in exercising this discretion, a trial court must keep in mind the requirements of the

Constitution. "[A] suitable inquiry is permissible in order to ascertain whether the juror has *any*

bias, opinion, or prejudice that would affect or control the fair determination by him of the issues

to be tried." *Mu'Min*, 500 U.S. at 431.  *Morgan* clarifies that, in a capital case, questioning of

potential capital jurors as to whether they would automatically or nearly always vote for the death

penalty on the facts of the particular case, or whether a potential juror could consider and give

effect[10] to the relevant mitigating factors in the case, is not only suitable, but constitutionally

*required* if a capital defendant is to receive a *voir dire* adequate to protect the right to a trial

before an impartial tribunal.

During *voir dire*, a capital defendant is not confined to general or theoretical "bottom

line" inquiries as to whether a prospective juror has a bias for the death penalty as a general

proposition. The potential jurors must also be questioned as to whether they could consider and

give effect to the mitigating factors relevant in the particular case. In this case, as in *Morgan*,

only if jurors are able to set aside whatever pro-death penalty view they hold and actively

consider *and* give effect to mitigating evidence can the statutory mandate be satisfied.

Accordingly, the Sixth Amendment right of a capital defendant to adequate *voir dire* of potential

jurors must include the right to inquire into a juror's ability to consider and give effect to any and

all relevant mitigating evidence.

In this case, prospective jurors must be questioned regarding the circumstances of the

offense and the aggravating factors alleged by the government.  The real question is whether a

---

[10]  For a discussion of the long line of Supreme Court cases that hold that jurors in a capital case must be able both to consider and give effect to mitigating evidence, *see infra*, at pp. xx-yy.

juror who goes into the process favoring the death penalty will, realistically, consider and give effect to mitigating factors or, indeed, consider any other sentence but death, for a Defendant charged with six murders, six attempted murders, drug trafficking and gang affiliated RICO offenses.

2.    The need to identify "mitigation-impaired" jurors who will not consider and give meaningful effect to mitigation.

The unimpaired willingness of each individual juror to consider and give effect to mitigating evidence is absolutely required. Accordingly, one of this court's most important *voir dire* tasks will be to discern which potential jurors are "mitigation-impaired," meaning that in cases of deliberate murder generally, or under the particular facts and circumstances of the case before them, prospective jurors would be unable to consider and give effect to evidence in mitigation in general or to particular classes of evidence in mitigation.

The Supreme Court has consistently held that jurors in a capital case must be able to consider and give meaningful effect to evidence in mitigation. As noted in *Tennard v. Dretke*, 542 U.S. 274 (2004)*,

> Once this low threshold for relevance [of mitigating evidence] is met, the "Eighth Amendment requires that the jury be able to consider and give effect to" a capital defendant's mitigating evidence. *Boyde v. California,* 494 U.S. 370, 377-378, 108 L. Ed. 2d 316, 110 S. Ct. 1190 (1990) (*citing Lockett v. Ohio*, 438 U.S. 586, 57 L. Ed. 2d 973, 98 S. Ct. 2954 (1978); *Eddings v. Oklahoma*, 455 U.S. 104, 71 L. Ed. 2d 1, 102 S. Ct. 869 (1982); *Penry I*, 492 U.S. 302, 106 L. Ed. 2d 256, 109 S. Ct. 2934 (1989)); *see also Payne v. Tennessee,* 501 U.S. 808, 822, 115 L. Ed. 2d 720, 111 S. Ct. 2597 (1991) ("We have held that a State cannot preclude the sentencer from considering 'any relevant mitigating evidence' that the defendant proffers in support of a sentence less than death. . . . [V]irtually no limits are placed on the relevant mitigating evidence a capital defendant may introduce concerning his own

-10-

2168

circumstances." (*quoting Eddings, supra*, at 114, 71 L. Ed. 2d 1,
102 S. Ct. 869)).

542 U.S. at 284 (emphasis supplied). More recently, in *Abdul-Kabir v. Quatermain*, 127 S.Ct.

1643, 1664  (2007), the Court reiterated the proposition, stating:

> [O]ur cases [have] firmly established that sentencing juries must be
> able to give <u>meaningful consideration and effect</u> to all mitigating
> evidence that might provide a basis for refusing to impose the
> death penalty on a particular individual, notwithstanding the
> severity of his crime or his potential to commit similar offenses in
> the future.

In *Smith v. Texas*, 543 U.S. 37 (2004), the Court summarized the evolution of this

doctrine:

> In *Penry II*, we held that "the key under *Penry I* is <u>that the jury be
> able to 'consider and *give effect to* [a defendant's mitigation]
> evidence in imposing sentence</u>.'"  *532 U.S. 782 at 797, 150 L. Ed.
> 2d 9, 121 S. Ct. 1910* (quoting  *Penry I, supra, 492 U.S. 302 at
> 319, 106 L. Ed. 2d 256, 109 S. Ct. 2934*); see  *532 U.S. 782 at 797,
> 150 L. Ed. 2d 9, 121 S. Ct. 1910* ("'[A] sentencer [must]  be
> allowed to give *full* consideration and *full* effect to mitigating
> circumstances'"; quoting *Johnson v. Texas, 509 U.S., at 381, 125 L.
> Ed. 2d 290, 113 S. Ct. 2658* (O'Connor, J., dissenting) emphasis in
> *Johnson*)).

543 U.S. at 46 (emphasis added). In *Penry*, as well, the court spoke in uncommonly strong terms:

> Underlying *Lockett* and *Eddings* is the principle that punishment
> should be directly related to the personal culpability of the criminal
> defendant. If the sentencer is to make an individualized assessment
> of the appropriateness of the death penalty, "evidence about the
> defendant's background and character is relevant because of the
> belief, long held by this society, that defendants who commit
> criminal acts that are attributable to a disadvantaged background,
> or to emotional and mental problems, may be less culpable than
> defendants who have no such excuse." *California v. Brown, 479
> U.S. 538, 545 (1987)* (O'Connor, J., concurring). Moreover,
> *Eddings* makes clear that it is not enough simply to allow the
> defendant to present mitigating evidence to the sentencer. <u>The</u>

-11-

> sentencer must also be able to consider and give effect to that evidence in imposing sentence. *Hitchcock v. Dugger, supra.* Only then can we be sure that the sentencer has treated the defendant as a "uniquely individual human bein[g]" and has made a reliable determination that death is the appropriate sentence. *Woodson, 428 U.S., at 304, 305*. "Thus, the sentence imposed at the penalty stage should reflect a reasoned *moral* response to the defendant's background, character, and crime." *California v. Brown, supra, at 545* (O'Connor, J., concurring) (emphasis in original).

492 U.S. at 319 (emphasis supplied).

Thus, whether one adopts the formulation of "meaningful consideration and effect" from *Abdul-Kabir*, or "full consideration and full effct to mitigating circumstances" from *Johnson v. Texas,* cited with approval in *Smith v. Texas*, the point remains that mitigation-impaired jurors, *i.e.*, those who cannot give full and meaningful consideration to evidence in mitigation may not sit on a capital case since they will not treat the defendant as a unique human being and cannot render a verdict that is an appropriate moral response to the defendant's background, character and crime. The means to uncovering those jurors is effective and searching *voir dire*.

It is also the case that in order to perform their duties in a capital case, jurors must forswear any point of view that allows the juror to "consider" evidence in mitigation but, in fact, assign such evidence zero weight. *See, Eddings v. Oklahoma*, 455 U.S. 104, at 113-114 (1982); *see also*, *McKoy v. North Carolina*, 494 U.S. 433 (1990). In *Eddings*, the Court held explicitly that, "just as the State may not by statute preclude the sentencer from considering any mitigating factor, neither may the sentencer refuse to consider, *as a matter of law*, any relevant mitigating factor." *Eddings*, 455 U.S. at 112-114. The *Eddings* Court noted, as well, that, while those who impose the sentence in a capital case "may determine the weight to be given relevant mitigating evidence. But they may not give it *no weight* by excluding such evidence from their

-12-

consideration." *Id*. at 114-115. (Emphasis in original.) *See also*, *United States v. Whitten*, 610 F.3d 168, 184 n. 6 (2d Cir. 2010), noting that it was not improper for a prosecutor to argue the government's view of how *much* weight ought to be assigned to any mitigating factor so long as the government did not argue that the jury should outright ignore proven evidence in mitigation. Plainly, therefore, "considering" mitigating evidence that a fact-finder has found to exist means giving it some weight. A fact-finder who concluded that a particular factor existed, but assigned it zero weight, would, in effect, be in the position of refusing to consider relevant evidence in mitigation. Logic and Supreme Court precedent dictate that a juror with that attitude is unqualified.

In an earlier opinion, this court recognized the issue of mitigation-impairment. *See United States v. Fell*, 372 F.Supp.2d 786 (DVT 2005). After a review of the law, this court noted:

> [T]he FDPA requires jurors to make an individual finding regarding each mitigating factor proposed by the defense. Thus, it is important for the court to ensure that every prospective juror is able to fairly and impartially consider the categories of mitigating evidence that the defendant would introduce at a penalty phase.

372 F.Supp.2d at 789. In rendering its decision involving a particular juror, but announcing a broader approach, this court noted that asking a juror if he or she could "consider and give effect" to evidence in mitigation ran the risk of being interpreted as a so-called "stake-out" question, a subject discussed below. However, in light of the series of subsequent Supreme Court opinions on this issue – particularly the 2007 decision in *Abdul Kabir v. Quattermain* – counsel will respectfully ask the court to reconsider this issue. The language in *Abdul Kabir* is that jurors

-13-

2171

> must be able to give <u>meaningful consideration and effect</u> to all
> mitigating evidence that might provide a basis for refusing to
> impose the death penalty on a particular individual,
> notwithstanding the severity of his crime or his potential to commit
> similar offenses in the future.

127 S.Ct. at 1664 (emphasis added).

> 3.    <u>Case-specific questions</u>.

To seat a juror on this case who believed that death is the only appropriate sentence for

the case at hand would countenance, in effect, a mandatory death-penalty statute, something the

constitution forbids. *See, e.g., Sumner v. Shuma*, 483 U.S. 66 (1987); *Woodson v. North*

*Carolina*, 428 U.S. 280 (1976); *Roberts v. Louisiana*, 428 U.S. 325 (1976). In other words, just

as a legislature may not mandate death for inmates who kill while imprisoned – the situation

presented in *Sumner* – neither may a juror's pre-judgment of a capital case be allowed to

accomplish the same result.  Thus, in order to determine whether jurors can follow the law as set

forth in *Shuman*, the jurors must also be questioned on the salient facts of this case and their

ability to consider mitigating factors in a meaningful way – as required by the Supreme Court –in

the face of the aggravating circumstances of the case.  As noted by this court in its post trial

opinion in *United States v. Fell*, case-specific questions are essential to the process of identifying

and weeding out jurors who could not fairly judge the specific case at hand:

> If properly formed, case-specific questions help identify various
> forms of juror bias. For example, a juror might be excused for
> cause if he or she could not fairly consider the death penalty where
> the victim was involved in drug crimes. See *United States v.*
> *Flores, 63 F.3d 1342, 1356 (5th Cir. 1995)*. Similarly, a juror
> might be excused for cause if he or she would refuse to consider
> any mitigating evidence in a case involving the death of a child.
> See *Johnson 366 F. Supp. 2d 822, 2005 WL 736518, at \*24*. Other
> jurors may have biases regarding particular forms of mitigating

-14-

> evidence. For example, some jurors may be unable to fairly
> consider any mitigating evidence relating to the defendant's
> background or upbringing. [Footnote omitted.]  Such jurors must
> be excused for cause as the Supreme Court has emphasized that the
> sentencer may not refuse to consider evidence relating to the
> defendant's background or upbringing. See *Lockett v. Ohio, 438
> U.S. 586, 604-05, 57 L. Ed. 2d 973, 98 S. Ct. 2954 (1978).*

*United States v. Fell*, 372 F. Supp. 2d 766, 771 (DVT 2005).  *See also, United States v. Johnson*, 366 F. Supp. 2d 822, 840-42 (NDIA 2005), in which Chief Judge Bennet analyzed the issue at length.

In further support of their view that the *voir dire* in this case must be thorough and probing, counsel point to the body of scholarly and scientific evidence that juries in actual death penalty cases often believe, completely erroneously, that once an aggravating factor has been found, death is mandatory.  *See, e.g.,* U. Bentele and W.J. Bowers, "How Jurors Decide on Death: Guilt is Overwhelming; Aggravation Requires Death; and Mitigation is No Excuse," 66 BROOKLYN L.REV. 1011, 1031-41 (2001).[11]  Indeed, statistically valid surveys of capital-case jurors show that a substantial number of jurors who actually serve on capital cases *automatically* vote for death if the defendant is found guilty of murder.  *See, e.g.,* W. S. Geimer & J. Amsterdam, "Why Jurors Vote Life or Death: Operative Factors in Ten Florida Death Penalty Trials," 15 AM. J. CRIM. L. 1, 41 (1989), ("A significant number of jurors in death penalty cases

---

[11]  The article draws on the findings of the Capital Jury Project, an ongoing study funded by the National Science Foundation of decision-making by actual jurors in actual capital cases.  As noted in the article, the data analyzed was based on interviews of 1,155 capital jurors from 340 trials in 14 states.  66 BROOKLYN L.REV. at 1017.  For a full description of the Project, and its methodology, *see* W.J. Bowers, "The Capital Jury Project: Rationale, Design & Preview of Early Findings," 70 IND. L.J. 1043, 1079 (1995).  Professor William J. Bowers, who holds a Ph.D. in Sociology, is Principal Research Scientist, College of Criminal Justice, Northeastern University, and serves as the Principal Investigator for the Capital Jury Project.   66 BROOKLYN L.REV. at 1011, n. ††.

believed that the death penalty was mandatory or presumed for first degree murder" . . . "In the

cases in which the jury recommended death, over half of the jurors believed that death was to be

the punishment for first degree murder, or at least that death was to be presumed appropriate

unless defendant could persuade the jury otherwise");  S. P. Garvey, "Aggravation and

Mitigation in Capital Cases: What do Jurors Think?"  98 COLUMBIA L.REV. 1538 (1998) ("Many

jurors wrongly think they must return a death sentence if they find the defendant's crime was

especially heinous, or the defendant is especially likely to present a risk of future danger");  T.

Eisenberg, S. P. Garvey & M. T. Wells, "Jury Responsibility in Capital Sentencing: An

Empirical Study," 44 BUFF. L. REV. 339, 360 (1996) ("Nearly one-third of the jurors were under

the mistaken impression that the law required a death sentence if they found heinousness or

dangerousness, a result replicated in the multi-state study of the interview data"); W. S. Bowers,

"The Capital Jury Project: Rationale, Design and Preview of Early Findings," 70 IND.L.J. 1043,

1091, n. 32 (1995) ("Many jurors believe that the death penalty is mandatory if the crime is

heinous or vicious"); W. J. Bowers, M. Sandys & B. Steiner, "Foreclosing Impartiality in Capital

Sentencing: Jurors' Predispositions, Attitudes and Premature Decision-Making," 83 CORNELL

L.REV. 1476 (1998) ("There appears to be a presumption that clear unequivocal proof of guilt

justifies the death penalty);  T. Eisenberg and M. T. Wells, "Deadly Confusion: Juror Instructions

in Capital Cases," 79 CORNELL L. REV. 1, 12; 38, *n*. 12 (1992) ("There is a 'presumption of

death'"):

> [Our] data suggest that the sentencing phase of a capital trial
> commences with a substantial bias in favor of death . This is not in
> and of itself an indictment of the death trial phase.  But the tilt
> towards death suggests that a defendant with a confused jury may
> receive the death sentence by default, without having a chance to

> benefit from the legal standards deigned to give him a chance for
> life.

*Id.* at 38 *n.* 12.

Mr. Briseno's counsel are particularly concerned over the questioning of prospective jurors in the critical areas outlined earlier in this memorandum. At a penalty phase, the jury will also almost certainly hear heartbreaking evidence of the impact of each victim's murder on those who loved each victim. Without a particularly careful *voir dire,* jurors may be seated who, because of the nature of the crimes themselves, will enter into their service as jurors substantially impaired or completely foreclosed to the consideration of a life sentence. These are not, as the social science studies cited above demonstrate, baseless fears.

The New Jersey court system administered a death penalty statute for over 25 years from August of 1982 through December of 2007 when the legislature repealed the death penalty. In this regard, the New Jersey Supreme Court paid uncommonly close attention to the nature and quality of juror *voir dire* in death cases. Thus, while certainly not binding on this court in any manner, defendant respectfully invites this court's attention to two opinions of the New Jersey Supreme Court in which the subject of capital *voir dire*, and the function of a trial judge in capital cases, was discussed with care and at length. *See State v. Biegenwald*, 126 N.J. 1, 594 A.2d 172 (1991) and *State v. Williams*, 113 N.J. 393, 550 A.2d 1172 (1988).

As *Williams* points out, necessarily included within capital *voir dire* is whether the circumstances of a particular capital-murder prosecution are such that a juror would, in essence,

-17-

2175

"shut down" in the face of certain facts and not be able to serve fairly as a juror in that particular case while, perhaps, being perfectly able to serve in a different case.[12]

*Williams* is also noteworthy for its lengthy discussion of the actual differences between "close-ended" and "open- ended" questioning. On that topic, the Court stated:

> Defendant objects to the *voir dire* because the procedure used by the trial court led to questions that prompted only yes or no responses from a prospective juror and therefore provided neither the prosecutor nor defense counsel with sufficient information to pick an unbiased jury. Moreover, defendant argues that the trial court repeatedly refused to ask follow-up questions requested by counsel in order to further explain the yes or no answers. Based on an independent review of the *voir dire*, we find that the trial court relied much too heavily on close-ended questions, and on several occasions did not ask adequate follow-up questions to overcome the inadequacy of the initial inquiry.
>
> * * * *
>
> In addition to its closed nature, the tenor of the questions often appears to lead the juror inevitably to the "correct" response. To ask the juror whether she would "automatically impose the death penalty, regardless of the evidence in the case," is to predetermine the answer; indeed without more careful phrasing it is to ask whether a mere indictment for capital murder automatically warrants the death penalty.

*Williams*, 113 N.J. at 420-21.

In *State v. Biegenwald*, the Court reversed the death sentence of a serial killer, and, re-visiting the topic of *voir dire* in a capital prosecution, underscored the importance of open-ended

---

[12] *Williams* involved an especially brutal rape-murder. In reversing the sentence of death in *Williams*, the Court was particularly critical of the refusal to inquire of prospective jurors whether the facts of that particular case might make it impossible or difficult for individuals to serve fairly as jurors in that case. *Williams*, 113 N.J. at 417. In this case, defense counsel are concerned that the nature of the offenses charged may, in the eyes of many prospective jurors, virtually mandate a sentence of death.

-18-

questions and appropriate follow-up aimed at eliciting actual useful information from the juror

rather than the juror's rote agreement with a legally "correct" answer as propounded by the trial judge:

> The purpose of *voir dire* is not to elicit from a potential juror the correct answer; it is to draw out the potential juror's views, biases, and inclinations and to provide both  counsel and the court the opportunity to assess the venire-person's demeanor.  We reiterate that *voir dire* should proceed with the conscious object of providing court and counsel alike with sufficient information with which to challenge potential jurors intelligently – whether for cause or peremptorily.

*Biegenwald*, 126 N.J. at 39.

In both *Williams* and *Biegenwald*, the New Jersey Supreme Court took note of the fact

that its opinions were based, in part, on the guarantees of the United States Constitution. *See,*

*e.g.*, *Williams*, 113 N.J. at 409 and 412 n.4; *Biegenwald*, 126 N.J. at 31- 32.  Indeed, in *Williams*,

the Court pointed out that without information about the juror's *attitudes* concerning the key

issues presented by a particular facts and circumstances of the capital prosecution, it was

impossible to determine whether a juror was "substantially impaired" under the *Adams-Witt* test.

*Williams*, 113 N.J. at 417.

In this case, therefore, counsel invoke the Fifth, Sixth and Eighth amendments in support

of a request for a searching *voir dire* designed to root out those jurors whose attitudes regarding

the death penalty in general, or its application to this case in particular, make it inappropriate for

that juror to sit in judgment.

Defendant also respectfully underscores the dual purpose served by *voir dire*. On the one

hand, the court and the parties are aiming at discovering potential jurors whose views and

attitudes are such that they should not be permitted to serve as jurors and, thus, should be

-19-

removed for cause. At the same time, the parties must be concerned that they have sufficient

information to permit the intelligent exercise of their peremptory challenges. *See, e.g., Rosales-Lopez v. United States*, 424 U.S. 182 (1981)  The fact that the very exercise of peremptory

challenges is increasingly subject to objection and court review[13] further emphasizes the need for

a thorough *voir dire*. The more the parties know about the potential jurors, the less likely they are

to fall back on prejudice and stereotypes in the exercise of peremptory challenges.

## CONCLUSION

For the reasons set forth above, counsel urge the court to adopt the jury-selection

procedures herein proposed.

**Respectfully submitted:**

/s/ *Arlington Foley*

Arlington Foley /#6905-45
Attorney For Defendant
1942 North Main Street
Crown Point, IN 46307
PH: 219.661.1200
FX: 219.661.1205

/s/ *John Maksimovich*

John Maksimovich /#9950-45
Attorney For Defendant
1946 North Main Street
Crown Point, IN 46307
PH: 219.663.1900
FX: 219.663.1908

---

[13]  *See, Georgia v. McCollum*, 505 U.S. 42 (1992) (Defense challenges subject to equal protection scrutiny); *Batson v. Kentucky*, 476 U.S. 79 (1986) (Prosecution challenges subject to equal protection scrutiny).

-20-

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

|  |  |  |
|---|---|---|
| **UNITED STATES OF AMERICA,** | | |
| **Plaintiff** | | |
| **vs** | | |
| **JUAN BRISENO,** | | |
| **Defendant** | | **CAUSE NO:  2:11-CR-77** |

### CERTIFICATE OF SERVICE

I hereby certify that on November 25, 2014, I electronically filed:

***DEFENDANT'S PROPOSED  JURY-SELECTION PROCEDURES***
***AND MEMORANDUM OF LAW REGARDING CAPITAL VOIR DIRE***

with the Clerk of the Court using the CM/ECF system, which sent notification of such filing to the following:

| | |
|---|---|
| David J. Nozick | Bruce Hegyi |
| Assistant United States Attorney | Assistant United States Attorney |

and I hereby certify that I have mailed by United States Postal Service, the document to the following non-CM/ECF participants:

N/A

By:   /s/ *John Maksimovich*

John Maksimovich /#9950-45
Attorney For Defendant
1946 North Main Street
Crown Point, IN 46307
PH: 219.663.1900
FX: 219.663.1908
E-Mail: criminallaw@johnmaksimovich.com

-21-

2179

Case: 15-2347   Document: 35   Filed: 07/27/2016   Pages: 4186

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | |
| **Plaintiff** | |
| **vs** | |
| **JUAN BRISENO,** | |
| **Defendant** | **CAUSE NO:   2:11-CR-77** |

## DEFENDANT'S REQUESTED
## PRELIMINARY VOIR DIRE INSTRUCTIONS

Defendant Juan Briseno, by counsel Arlington Foley and John Maksimovich, submit

Defendant's version of preliminary instructions to be delivered to prospective jurors when they

appear for individual voir dire.

**Respectfully submitted:**

/s/ *Arlington Foley*

Arlington Foley /#6905-45
Attorney For Defendant
1942 North Main Street
Crown Point, IN 46307
PH: 219.661.1200
FX: 219.661.1205

/s/ *John Maksimovich*

John Maksimovich /#9950-45
Attorney For Defendant
1946 North Main Street
Crown Point, IN 46307
PH: 219.663.1900
FX: 219.663.1908

-1-

2180

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | |
| **Plaintiff** | |
| **vs** | |
| **JUAN BRISENO,** | |
| **Defendant** | **CAUSE NO:   2:11-CR-77** |

**A. Welcome**

**B. Introduction of Parties and Counsel**

**C. Brief Summary of Charges**

It is alleged that Juan Briseno, a.k.a. "Tito", the defendant, was a members and/or associate of a criminal organization whose members and associates engaged in illegal drug distribution and acts of violence, including murder and attempted murder, and which operated principally in East Chicago, Indiana.   Juan Briseno, a.k.a. "Tito", is charged with participating in various murders and attempted murders outlined in Counts 9 and 10 and Counts 13 through 30, as further described here.

It is alleged that, during the time period of February 2002 until at least September 18, 2013, in furtherance of a racketeering conspiracy, and to effect the objects thereof, the defendant and his co-defendants committed and caused to be committed sixteen (16) murders.  It is alleged that Juan Briseno, a.k.a. "Tito" participated in the murders of Luis Ortiz, also known as "Manolo", Michael Sessum, Miguel Mejias, also known as "King Nellie", Harris Brown, Miguel Colon, also known as "Migs", and Latroy Howard.

-2-

2181

It is further alleged that Juan Briseno participated in attempting to murder Marissa Harper, Andres Arenivas, Jose Perez, Joseph Medina, Peter Santos, Joshua Roberts, and Richard Perez.

It is further alleged that in furtherance of the conspiracy, another ten (10) persons were murdered, as well as another six (6) persons attempted to be murdered by other members of the criminal organization.  The persons murdered are Steven Rodriguez, also known as "Little Jeremy", Wayne McNair, Anuar David Paez, also known as "Bronco", Guadelupe Trevino, Juan Murillo, Sr., Rene Alonzo, Mario Soriano, Alonzo Cavazos, Jesus Alvarez, and Peter Santos and the persons attempted to be murdered are Paul Alvarado, Juan Murillo, Jr., Cornelius Jordan, Romelle Jackson, Thomas Delacruz, and Alejandro Sanchez.

## D. Preliminary Instructions

**1)     Rules for Criminal Cases** -- As you know, this is a criminal case. There are three basic rules about a criminal case that you must keep in mind.

First, each defendant is presumed innocent until proven guilty. The indictment brought by the government against each defendant is only an accusation, nothing more. It is not proof of guilt or anything else. Each defendant, therefore, starts with a clean slate.

Second, the burden of proof is on the government until the very end of the case. The defendants have no burden to prove their innocence, or to present any evidence, or to testify. Since the defendants have the right to remain silent, the law prohibits you from arriving at your verdict by considering that the defendants may not have testified.

Third, the government must prove each defendant's guilt beyond a reasonable doubt. I will give you further instructions on this point later.

-3-

2) **Recently, you filled out questionnaires.** These questionnaires are intended to help the attorneys and the court in the process of jury selection.

Jury duty is of the highest obligation of citizenship and you should be told, as I am now telling you, that the judges in this court and the parties appearing before it appreciate the importance of your fair, honest, and impartial consideration of this case.

3) **This case is a death-penalty eligible case as to Defendant Juan Briseno, a.k.a. "Tito".** The other defendants are not subject to that type of potential sentence. As to the others, this is a regular criminal case.

This type of death-penalty eligible case is tried in two phases. In the first phase, known as the guilt phase, the jury deliberates like in a regular criminal case and determines whether each defendant is not guilty or guilty. This is the case as to all of the defendants. However, if the jury finds Defendant Juan Briseno guilty of any death-penalty count, then, and only then, we will hold a separate second phase where the jury decides the sentence to be imposed, whether life imprisonment without the possibility of release, or the death penalty.

A jury's decision on this second phase to sentence a defendant to life without parole or to death is binding on the judge. That means that if the jury determines in this second phase that Defendant Juan Briseno should be sentenced to life imprisonment, that is the sentence I am required to impose. By the same token, if the jury determines that Defendant Juan Briseno should be sentenced to death, I am required by law to impose that sentence. In the federal system, a life sentence means that the person must serve every day of his life in prison without release on parole.

-4-

You should know that no juror is ever required to vote for a sentence of death. The decision whether or not the death penalty is justified is a matter to be decided solely by the jury.

If we ever reach the second phase—the penalty phase, the jury must decide if certain aggravating circumstances proven beyond a reasonable doubt tend to weigh in favor of the death penalty. The fact that a jury finds a defendant guilty of murder is, alone, never sufficient to justify the imposition of the death penalty. The death penalty is never automatic or required. There are no circumstances of murder where death is the only appropriate punishment. Instead, if a second phase is held—the penalty phase, the law requires that aggravating circumstances be proven to your satisfaction beyond a reasonable doubt.

The law also requires that for an aggravating factor to be found proven, all twelve (12) jurors must agree that the aggravating circumstance or circumstances exist beyond a reasonable doubt. If a single juror disagrees, the jury cannot consider that aggravating factor.

The word "aggravate" means to make worse or more intense. An aggravating factor, then, is an extraordinary circumstance which would tend to support the imposition of the death penalty.

On the other side of the scale, you have to consider mitigating factors. The law requires each individual member of the jury to determine whether there are factors about the crime or about the defendant which are mitigating. Mitigating factors are those which weigh against the imposition of the sentence of death and in favor of a sentence of life imprisonment without the possibility of parole.

Unlike aggravating factors, mitigating factors need only be proven by the lesser standard of preponderance of the evidence, *i.e.*, that something is more likely true than not true.

-5-

Also, unlike aggravating factors, such findings do not have to be unanimous, meaning that all jurors do not have to agree. If even one member of the jury finds that a mitigating circumstance has been proven, that weighs in deciding whether or not to impose the death penalty.

The word "mitigating" means to make less severe or moderate. A defendant may present evidence in mitigation consisting of anything about his background, record, character, or the circumstances of the offense that would lead a juror to conclude that he should not be put to death but, instead, be punished by life imprisonment without parole.

Once this process of decision and consideration of aggravating and mitigating circumstances has been completed, the jury is asked to balance one against the other and decide whether the aggravating factors outweigh the mitigating factors sufficiently to justify a death sentence. Even if there have been no mitigating factors found, the jury must decide whether one or more aggravating factors, standing alone, justify a sentence of death.

In carrying out this weighing and balancing process, the members of the jury are not mere fact finders. Instead, jurors are called upon to make a unique individual judgment about the appropriateness of sentencing a person to life in prison without parole or death.

This is not a mechanical process, neither is the decision by raw numbers. Members of a death penalty jury do not simply count factors. Instead, individual jurors consider such factors qualitatively. Any one aggravating factor proved, if sufficiently serious, may outweigh several mitigating factors. On the other hand, a single mitigating factor may outweigh several or all aggravating factors. In short, what is called for in weighing the various factors is not arithmetic but an individual juror's careful, considered and mature judgment. Jurors are called upon to

-6-

decide whether a defendant should live in prison for the remainder of his life without the possibility of parole or be sentenced to death. When I say "without the probably of parole," it means that he will not be released.

As we begin this process, there are two final points I wish to make, perhaps emphasize. The first, mentioned briefly before, is that you are never required to return a verdict of death; and second, whether or not the circumstances of this case justify a sentence of death is a decision that is entirely yours as jurors. You are the ones who decide the punishment. The law provides you with guidance in making a decision. But, as stated earlier, your decision on the questions of life or death is a uniquely individual judgment which the law leaves up to each of you.

The last thing I want to explain is that in order to impose a sentence of death, all twelve (12) jurors must agree beyond a reasonable doubt that death is the only appropriate sentence. If the Jury is unable to agree, and even if one single juror decides that the death penalty is not justified, then the defendant will receive a sentence of life in prison without the possibility of release.

**4)     Going back to the questionnaire, those questions asked, among other things, about your views regarding the death penalty.** The attorneys and the court will ask questions of each one of you as a follow up, to better understand your written responses.

Please understand that you have a very serious obligation to respond with candor and sincerity. This is the only way in which both the government and the defense will get to know you better so that they can select the best jury possible.

<div align="center">-7-</div>

**E.      Length of Trial**

When you filled out the questionnaires, I gave you in my written instruction, a rough estimate regarding the length of the trial.

Personally, I like to get trials concluded, and I work hard to achieve that. I am aware of the complications of jury service, and I will make every effort to conclude this case as fast as we can without sacrificing quality.

We are going to work full days Monday to Thursday. Fridays, we will not work.

If we have to work 8 -10 hours a day, we will. I don't like to keep citizens giving jury service longer than what is absolutely necessary.

**F.**      During this time you are with us as candidates for jury service, or as selected jurors, you are not to discuss the case with anyone or permit anyone to discuss it with you. You cannot discuss the case even with your family or friends. They are not part of the jury and such conduct would constitute a violation to your sworn duty as jurors. You simply are not to talk about this case.

I also instruct you that this prohibition includes any form of communication over the Internet, such as email, instant messaging, websites and blogs. The prohibition also includes the use of cell phones for text messaging or video and audio recording, and the use of any other recording or transmitting device to discuss the case or the deliberation process with third parties.

Second, do not read or listen to anything touching on this case in any way. If anyone tries to talk to you about it, bring it to my attention promptly.

Third, do not try to do any research or make any investigation about the case on your own. This includes books, the Internet, websites and blogs.

-8-

Finally, do not form any opinion, that is deliberate, until the case is finished and I specifically instruct you to enter into the decision making process. Jurors must keep an open mind all the time. You must give any case or parties the same impartial consideration you would expect if the case were your own case.


**Respectfully submitted:**

/s/ *Arlington Foley*
_____

Arlington Foley /#6905-45
Attorney For Defendant
1942 North Main Street
Crown Point, IN 46307
PH: 219.661.1200
FX: 219.661.1205

/s/ *John Maksimovich*
_____

John Maksimovich /#9950-45
Attorney For Defendant
1946 North Main Street
Crown Point, IN 46307
PH: 219.663.1900
FX: 219.663.1908

-9-

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | |
| **Plaintiff** | |
| **vs** | |
| **JUAN BRISENO,** | |
| **Defendant** | **CAUSE NO:    2:11-CR-77** |

## CERTIFICATE OF SERVICE

I hereby certify that on November 29, 2014, I electronically filed:

### *DEFENDANT'S REQUESTED PRELIMINARY VOIR DIRE INSTRUCTIONS*

with the Clerk of the Court using the CM/ECF system, which sent notification of such filing to the following:

| David J. Nozick | Bruce Hegyi |
|---|---|
| Assistant United States Attorney | Assistant United States Attorney |

and I hereby certify that I have mailed by United States Postal Service, the document to the following non-CM/ECF participants:

N/A

By:    /s/ *John Maksimovich*

John Maksimovich /#9950-45
Attorney For Defendant
1946 North Main Street
Crown Point, IN 46307
PH: 219.663.1900
FX: 219.663.1908
E-Mail: criminallaw@johnmaksimovich.com

-10-

2189

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

**UNITED STATES OF AMERICA,**

       **Plaintiff**

**vs**

**JUAN BRISENO,**

       **Defendant**                        **CAUSE NO:   2:11-CR-77**

**MOTION FOR EXTENSION OF TIME TO FILE**
**PROPOSED JURY INSTRUCTIONS AND VERDICT FORMS**

       Comes now Defendant Juan Briseno, by counsel John Maksimovich and Arlington Foley, and moves the court for an extension of time within which to file proposed jury instructions and verdict forms, and represents the following to the Court:

       1.     Defendant's proposed jury instructions and verdict forms are due to be filed with this Court on December 1, 2014.

       2.     Attorneys John Maksimovich and Arlington Foley have been diligently preparing Defendant's proposed jury instructions and verdict forms, however, they require one week additional time to prepare said proposed jury instructions and verdict forms.

       **WHEREFORE,** Defendant requests additional time up to and including Monday, December 8, 2014, to submit his proposed jury instructions and verdict forms, and for all other just and proper relief.

   **Respectfully submitted:**

/s/ *Arlington Foley*
_____

Arlington Foley /#6905-45
Attorney For Defendant
1942 North Main Street
Crown Point, IN 46307
PH: 219.661.1200
FX: 219.661.1205

/s/ *John Maksimovich*
_____

John Maksimovich /#9950-45
Attorney For Defendant
1946 North Main Street
Crown Point, IN 46307
PH: 219.663.1900
FX: 219.663.1908

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

**UNITED STATES OF AMERICA,**

　　　　　**Plaintiff**

**vs**

**JUAN BRISENO,**

　　　　　**Defendant**　　　　　　　　　　**CAUSE NO:　2:11-CR-77**

**CERTIFICATE OF SERVICE**

　　　I hereby certify that on November 29, 2014, I electronically filed:

　　*Motion for Extension of Time to File Proposed Jury Instructions and Verdict Forms*

with the Clerk of the Court using the CM/ECF system, which sent notification of such filing to the following:

　　　　David J. Nozick　　　　　　　　　　　　Bruce Hegyi
　Assistant United States Attorney　　　　　Assistant United States Attorney

and I hereby certify that I have mailed by United States Postal Service, the document to the following non-CM/ECF participants:

　　　　N/A

　　　　　　　　　　　　　　　By:　　/s/ *John Maksimovich*
　　　　　　　　　　　　　　　　　　　John Maksimovich /#9950-45
　　　　　　　　　　　　　　　　　　　Attorney For Defendant
　　　　　　　　　　　　　　　　　　　1946 North Main Street
　　　　　　　　　　　　　　　　　　　Crown Point, IN 46307
　　　　　　　　　　　　　　　　　　　PH: 219.663.1900
　　　　　　　　　　　　　　　　　　　FX: 219.663.1908
　　　　　　　　　　　　　　　　　　　Email: jm@johnmaksimovich.com

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | NO. 2:11CR77 PPS |
| | ) | |
| JUAN BRISENO, | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER**

Defendant Juan Briseno's Motion for Extension of Time to File Proposed Jury Instructions and Verdict Forms [DE 1183] is GRANTED as follows.

**Both parties** are granted to **Monday, December 8, 2014** to submit their joint proposed set of jury instructions and verdict forms for each phase of the trial, and to submit proposed instructions and verdict forms to which the opposing party does not agree.

SO ORDERED.

ENTERED: December 1, 2014.

 /s/ Philip P. Simon
PHILIP P. SIMON, CHIEF JUDGE
UNITED STATES DISTRICT COURT

2192

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

UNITED STATES OF AMERICA      )
                               )
        v.                 )        2:11 CR 77 PPS
                               )
JUAN BRISENO              )

**GOVERNMENT'S AMENDED SUPPLEMENTAL NOTICE OF INTENT TO
INTRODUCE ENTERPRISE EVIDENCE**

The UNITED STATES OF AMERICA, by its attorney, DAVID CAPP, United States

Attorney for the Northern District of Indiana, respectfully files this Amended Supplemental

Notice of Intent to Introduce Enterprise Evidence. This filing is intended to replace the previous

filings. It contains all of the incidents previously discussed, adding in some newly discovered

details. The amended portion is in bold, below.

Count 1 of the Fourth Superseding Indictment charges the defendant with Conspiracy to

Commit Racketeering under Title 18, United States Code, Section 1962(d). As drafted, Count 1

charges what has become known as a "*Glecier*" RICO conspiracy count, under which it is

sufficient to allege and prove that the defendant agreed to further an endeavor, which if

completed, would satisfy all the elements of a substantive RICO offense, and that the defendant

agreed that at least one member of the conspiracy would commit at least two racketeering acts in

furtherance of the enterprise's affairs. *See United States v. Glecier*, 923 F.2d 496, 498, 500 (7th

Cir. 1991).

In a *Glecier* conspiracy it is not necessary to either allege that the defendant agreed to

personally commit any racketeering act, or to allege specific racketeering acts that were the

objectives of the RICO conspiracy. *Id*. Rather, it is sufficient to allege that it was a part of the

RICO conspiracy that the defendant agreed that a conspirator, which could be the defendant himself, would commit at least two acts of racketeering activity in the conduct of the affairs of the enterprise and to include sufficient allegations to inform the defendant of the nature of the charge. *Id*.

As is common in proving *Glecier* RICO conspiracies, the United States intends to prove the existence of the Imperial Gangster enterprise, the defendant's membership in the enterprise, and the pattern of racketeering by offering evidence related to the overt acts as listed in the indictment as well as non-charged overt acts. In this case, the United States intends to also introduce evidence of the following evidence, in addition to the evidence described in the previous filing:

- On an unknown date, Juan Briseno shot at Subject 42, who he believed to be a member of the Ambrose street gang.

- On an unknown date, Imperial Gangster Vincente Garza and Juan Briseno encountered several males wearing baseball hats tilted to the left side, indicating that they were rivals of the Imperial Gangsters. Briseno approached the men and told them that they could not wear their hats in that manner. Briseno flashed a pistol to emphasize his point. A short time later Briseno observed one of the same males still wearing his hat tilted to the left side. Briseno instructed Garza to shoot at this individual. Garza did so, but missed him.

- **On January 30, 2009, the defendant, Galo Feliciano and two other members of the Imperial Gangsters drove around the Harbor neighborhood of East Chicago, Indiana looking for Subject 12, a leader of the Two Six gang. They saw a gray Buick LeSabre automobile in the vicinity of Alder and 140th Street. Briseno shot multiple shots into the Buick LeSabre, under the mistaken belief that it was being**

**driven by Subject 12 or one of his associates.  The driver of the Buick LeSabre, an adult male with the initials DS, was shot six times:  twice in his left arm, twice in his left hand or wrist area, and twice in the back.**

- On April 24, 2009, the defendant was driving around East Chicago in a Gold Pontiac vehicle with two other members of the Imperial Gangsters.  When they encountered Subject 12 the defendant and/or the other individuals in the Gold Pontiac shot at him.

- The defendant shot at Subject 40, a member of the Spanish Gangster Disciples, on approximately seven occasions.  One of these events, which occurred on January 23, 2009, is mentioned in the Fourth Superseding Indictment as an overt act in Count 1.  On another of these occasions the defendant shot at Subject 40 while the defendant was riding on a bicycle, missing him.  On another occasion the defendant and Robert Lockhart hid in a yard, waiting for Subject 40.  When they saw Subject 40, they shot at him, missing him.

- On an unknown date Subject 41, a member of the Ambrose Street Gang, followed a member of the Imperial Gangsters around the 149th Street Imperial Gangster neighborhood.  This member of the Imperial Gangsters ran to the "trap house," a residence where the Imperial Gangsters stored guns, money, ammunition and narcotics, and woke up the defendant.  The defendant grabbed a gun and ran outside in his boxer shorts and a tank top and shot at Subject 41's vehicle.

- On an unknown date the defendant and Galo Feliciano were shot at by individuals who were in an apartment above a liquor store in the 149th Street neighborhood of East Chicago, Indiana.  The defendant, armed with a revolver, returned fire.  Galo Feliciano, who was armed with a 9mm pistol, returned fire as well.

- On an unknown date, the defendant, Galo Feliciano and a third member of the Imperial Gangsters did a burglary of a house in Gary, Indiana.  During the course of this burglary the defendant, Feliciano and the third individual stole 60 pounds of marijuana.

- On an unknown date the defendant and another member of the Imperial Gangsters stole 150 pounds of marijuana from a drug trafficker.

- On an unknown date prior to June 19, 2010, the defendant ran up to an unknown member of the Black P-Stones street gang and shot him in the shoulder.  When the defendant attempted to shoot this individual a second time, his gun jammed.  The unknown member of the Black P-Stones shot back at the defendant, missing him.  During the course of this event Imperial Gangster Robert Lockhart also shot at this unknown member of the Black P-Stones.

Evidence of these acts will be presented primarily through testimony from cooperating witnesses.  In the instances where the police responded, police reports have been provided.  The identity of all cooperating witnesses and their interview reports and *Jencks* materials will be produced in a timely fashion as ordered by the court.

Respectfully submitted,

DAVID CAPP
United States Attorney

By:    /s/ David J. Nozick
DAVID J. NOZICK
Assistant U.S. Attorney
5400 Federal Plaza, Suite 1500
Hammond, Indiana 46320
(219) 937-5500

2196

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | NO. 2:11 CR 77 PPS |
| | ) | |
| JUAN BRISENO | ) | |

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the Government's Amended Supplemental Notice

of Intent to Introduce Enterprise Evidence was electronically filed with the Clerk of the Court

using the CM/ECF system which sent notification of said filing to the following individuals:

ARLINGTON J. FOLEY
JOHN MAKSIMOVICH
(Attorneys for defendant Juan Briseno)

By:    /s/ Janet L. Eisenmann
Janet L. Eisenmann
U.S. Attorney's Office
5400 Federal Plaza, Suite 1500
Hammond, Indiana 46320
(219) 937-5500

2197

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
## HAMMOND DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | |
| **Plaintiff** | |
| **vs** | |
| **JUAN BRISENO,** | |
| **Defendant** | **CAUSE NO:   2:11-CR-77** |

### JOINT MOTION FOR ENLARGEMENT OF TIME
### TO SUBMIT NON-AGREED STRIKES FOR CAUSE

Comes now Defendant Juan Briseno, by counsel John Maksimovich and United States of America by Assistant U.S. Attorney Bruce Hegyi, and jointly request an enlargement of time to submit non-agreed strikes for cause, as follows:

1.      John Maksimovich, counsel for Defendant Juan Briseno and Assistant U.S. Attorney Bruce Hegyi, counsel for the United States of America, worked very diligently compiling a list of agreed strikes for cause which were filed under seal on December 5, 2014.

2.      Notwithstanding counsels' hard work, additional time is required to prepare and file each party's list of non-agreed strikes for cause.

3.      Defendant Juan Briseno, by counsel John Maksimovich and United States of America by Assistant U.S. Attorney Bruce Hegyi request an enlargement of time up to and including Wednesday, December 10, 2014 to file their respective lists of non-agreed strikes for cause.

-1-

2198

**WHEREFORE**, Defendant Juan Briseno, by counsel John Maksimovich and United States of America by Assistant U.S. Attorney Bruce Hegyi jointly request an enlargement of time up to and including Wednesday, December 10, 2014 to file their respective lists of non-agreed strikes for cause, and for all other just and proper relief.

Respectfully submitted:

/s/ *John Maksimovich*

John Maksimovich /Atty #9950-45
Attorney For Defendant Juan Briseno
1946 North Main Street
Crown Point, IN 46307
PH: 219.663.1900
FX: 219.663.1908

-2-

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | |
| **Plaintiff** | |
| **vs** | |
| **JUAN BRISENO,** | |
| **Defendant** | **CAUSE NO:   2:11-CR-77** |

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on December 5, 2014, I electronically filed:

*Joint Motion for Enlargement of Time to Submit Non-Agreed Strikes for Cause*

with the Clerk of the Court using the CM/ECF system, which sent notification of such filing to the following:

| | |
|---|---|
| David J. Nozick | Bruce Hegyi |
| Assistant United States Attorney | Assistant United States Attorney |

and I hereby certify that I have mailed by United States Postal Service, the document to the following non-CM/ECF participants:

N/A

By:   /s/ *John Maksimovich*

John Maksimovich /#9950-45
Attorney For Defendant
1946 North Main Street
Crown Point, IN 46307
PH: 219.663.1900
FX: 219.663.1908
E-Mail: criminallaw@johnmaksimovich.com

-3-

2200

```
MIME-Version:1.0
From:CMECFinnd@innd.uscourts.gov
To:CMECFinnd@localhost.localdomain
Bcc:
--Case Participants: Bryan M Truitt (bryan@tblawyers.com, sherrie@tblawyers.com), David J
Nozick - AUSA (david.nozick@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov,
susan.devries@usdoj.gov, usainn.ecfcivil@usdoj.gov), Kurt R Earnst (kre@braje-nelson.com),
Paul Jeffrey Schlesinger (pjeffslaw@aol.com), Pablo DeCastro
(pdecastro@rascia-decastro.com, ysierra@rascia-decastro.com), Sheldon B Nagelberg
(sbnagelberglaw@att.net), Thomas W Vanes (b.lynneadams@yahoo.com,
tom.vanes@sbcglobal.net), Richard C Wolter (b.lynneadams@yahoo.com), John T Theis
(theislaw@aol.com), Adam Tavitas (adtavitas@aol.com, b.lynneadams@yahoo.com), Dean R
Lanter - AUSA (dean.lanter@usdoj.gov, janet.eisenmann@usdoj.gov,
usainn.ecfcivil@usdoj.gov), John E Martin - FCD (john_martin@fd.org), Scott L King
(dwilliams@scottkinggroup.com, sking@scottkinggroup.com), Mark A Psimos
(psimoslaw@airbaud.net), Ihor Alexander Woloshansky (ihorlawyer@hotmail.com), Richard M
Davis (jdavis@hwelaw.com, rdavis@hwelaw.com, rgould@hwelaw.com), James N Thiros
(jim@thiros.com, lynn@thiros.com), Robert L Rascia (rrascia@rascia-decastro.com,
ysierra@rascia-decastro.com), Gojko Kasich (gkasich@crownlaw.com, gkasich@gmail.com),
Arlington J Foley (arlingtonfoley@att.net), Roxanne Mendez Johnson
(attorneyrmj@gmail.com), Visvaldis P Kupsis (vpkupsis@hotmail.com), Stephen Edward Scheele
(pkd@gk4law.com, ses@gk4law.com), Jack Friedlander (jack@jackfriedlander.com,
office@jackfriedlander.com), Bruce R Hegyi - AUSA (bruce.hegyi@usdoj.gov), R Brian
Woodward (carolb@wbbklaw.com, rbwoodward@wbbklaw.com), John Maksimovich
(criminallaw@johnmaksimovich.com), David E Vandercoy (david.vandercoy@valpo.edu),
Magistrate Judge Andrew P Rodovich (rodovich_chambers@innd.uscourts.gov,
ruth_nagy@innd.uscourts.gov), Chief Judge Philip P Simon
(denise_woodside@innd.uscourts.gov, jacob_hamann@innd.uscourts.gov,
lauren_schwartz@innd.uscourts.gov, mira_serrill-robins@innd.uscourts.gov,
noel_collins@innd.uscourts.gov, philip_simon@innd.uscourts.gov)
--Non Case Participants: Matthew D Soliday (office@matthewsolidaylaw.com),
Probation/Pretrial Services (innpml_cmecf@innd.uscourts.gov), U S Marshal
(inn.docket-fw@usdoj.gov, inn.docket-sb@usdoj.gov, usms.27@usdoj.gov)
--No Notice Sent:

Message-Id:2665901@innd.uscourts.gov
Subject:Activity in Case 2:11-cr-00077-PPS-APR United States of America v. Briseno et al
Order on Motion for Extension of Time to File
Content-Type: text/html
```

### U.S. District Court Northern District of Indiana [LIVE]

### USDC Northern Indiana

## Notice of Electronic Filing

The following transaction was entered on 12/8/2014 at 12:57 PM EST and filed on 12/8/2014

| | |
|---|---|
| **Case Name:** | United States of America v. Briseno et al |
| **Case Number:** | 2:11–cr–00077–PPS–APR |
| **Filer:** | |
| **Document Number:** | 1205(No document attached) |

**Docket Text:**
 **ORDER granting [1203] Joint Motion for Extension of Time to Submit Non–Agreed Strikes for Cause. Both parties are granted to 3:00 p.m. Hammond/Central Time on Wednesday, December 10, 2014 to file their respective lists of non–agreed strikes for cause. Approved by Chief Judge Philip P Simon on 12/8/2014. (dkw) [no.pdf attached; docket text only]**

**2:11−cr−00077−PPS−APR−1 Notice has been electronically mailed to:**

David E Vandercoy     david.vandercoy@valpo.edu

Richard M Davis     rdavis@hwelaw.com, jdavis@hwelaw.com, rgould@hwelaw.com

Arlington J Foley     arlingtonfoley@att.net

Mark A Psimos     psimoslaw@airbaud.net

Gojko Kasich     gkasich@crownlaw.com, gkasich@gmail.com

Scott L King     sking@scottkinggroup.com, dwilliams@scottkinggroup.com

James N Thiros     jim@thiros.com, lynn@thiros.com

Thomas W Vanes     tom.vanes@sbcglobal.net, b.lynneadams@yahoo.com

Ihor Alexander Woloshansky     ihorlawyer@hotmail.com

R Brian Woodward     rbwoodward@wbbklaw.com, carolb@wbbklaw.com

John Maksimovich     criminallaw@johnmaksimovich.com

Visvaldis P Kupsis     vpkupsis@hotmail.com

Sheldon B Nagelberg     sbnagelberglaw@att.net

John E Martin − FCD     john_martin@fd.org

Adam Tavitas     Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander     jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele     ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst     kre@braje−nelson.com

Bryan M Truitt     bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis     theislaw@aol.com

Robert L Rascia     rrascia@rascia−decastro.com, ysierra@rascia−decastro.com

Paul Jeffrey Schlesinger     pjeffslaw@aol.com

Pablo DeCastro     pdecastro@rascia−decastro.com, ysierra@rascia−decastro.com

Dean R Lanter − AUSA     dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA    David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov,
janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson    attorneyrmj@gmail.com

Bruce R Hegyi – AUSA    bruce.hegyi@usdoj.gov

**2:11−cr−00077−PPS−APR−1 Notice has been delivered by U.S. Mail or other means to:**

THE UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br><br>v.<br><br>JUAN BRISENO, also known as Tito,<br>Defendant. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | CAUSE NO.  2:11-CR-0077-PPS |

**GOVERNMENT'S NOTICE OF FILING OF**
**PROPOSED JURY INSTRUCTIONS AND VERDICT FORMS**

TO THE HONORABLE COURT:

COMES NOW, the United States of America, by and through the undersigned counsel,

and provides this notice of its filing of its proposed Jury Instructions and Verdict Forms for both

the "Guilt Phase" and the "Penalty Phase" (exhibits hereto) of the upcoming trial of this matter.

The Government's filing is in substantial compliance with the Court's June 30, 2014 Amended

Scheduling Order [DE #966] and the Court's Order of December 1, 2014 [DE #1186].[1]

Counsel for Mr. Briseno has indicated they are not yet prepared to consult on these

documents.

---

[1]   The Amended Schedule Order and the Court's December 1, 2014 Order require the
Government and the defendant to confer and to file Joint Jury Instructions and Verdict Forms.
On November 24, 2014, the Government provided to defendant with its proposed Guilt Phase
Jury Instructions.  On November 26, 2014, the Government provided the defendant with its
proposed Penalty Phase Jury Instructions and Verdict Form.  On November 28, 2014, defendant
filed a Motion seeking a one-week enlargement of time of defendant to file his proposed Jury
Instructions and Verdict Forms, which resulted in the Court's Order of December 1, 2014.

Respectfully submitted,

DAVID CAPP
UNITED STATES ATTORNEY

s/ *David J. Nozick*

David J. Nozick
Assistant U.S. Attorney
5400 Federal Plaza
Suite 1500
Hammond, IN 46320
Tel. (219) 937-5655
www.david.nozick@usdoj.gov

s/ *Bruce R. Hegyi*

Bruce R. Hegyi
Trial Attorney
Capital Case Section
Criminal Division
United States Department of Justice
1331 F Street, N.W., Third Floor
Washington, D.C.  20530
Tel. (202) 616-4582
Cell (703) 536-4774
www.bruce.hegyi@usdoj.gov

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this date, I electronically filed the foregoing document and accompanying exhibits with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record for defendant Juan Briseno.


s/ *Bruce R. Hegyi*
Bruce R. Hegyi
Trial Attorney

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | 2:11 CR 77 |
| | ) | |
| JUAN BRISENO | ) | |

## GOVERNMENT'S PROPOSED JURY INSTRUCTIONS

The United States, by and through the Acting Assistant Attorney General of the Criminal Division and the United States Attorney for the Northern District of Indiana, submit the following proposed jury instructions for the trial of Defendant Juan Briseno. Although it may be necessary for the government to request to amend the instructions due to trial issues that may arise, the government submits the following as a basis for the Court's instructions to the jury. The preliminary instructions are labeled Proposed Instructions Numbered A through K, and the final instructions are labeled Proposed Instructions Numbered 1 through 64.

Respectfully submitted,

DAVID CAPP
UNITED STATES ATTORNEY

LESLIE R. CALDWELL
ASSISTANT ATTORNEY GENERAL

_____
David J. Nozick
Assistant United States Attorney
5400 Federal Plaza, Suite 1500
Hammond, IN 46320
Tel. (219) 937-5655
www.david.nozick@usdoj.gov

_____
Bruce R. Hegyi
Trial Attorney
Capital Case Unit
United States Department of Justice
1331 F Street, N.W., Third Floor
Washington, D.C. 20530
Tel. (202) 616-4582
Cell (703) 536-4774
www.bruce.hegyi@usdoj.gov

1

# PRELIMINARY INSTRUCTIONS

2208

## PROPOSED INSTRUCTION NO. A

Ladies and gentlemen: You are now the jury in this case. I would like to take a few minutes to describe your duties as jurors and to give you instructions concerning the case.

As the judge in this case, one of my duties is to decide all questions of law and procedure. In these preliminary instructions, during the trial, and at the end of the trial, I will instruct you on the rules of law that you must follow in making your decision. The instructions that I give you at the end of the trial will be more detailed than the instructions I am giving you now. [Each of you will have a copy of the instructions that I give you at the end of the case.]

You have two duties as jurors. Your first duty is to decide the facts from the evidence that you see and hear in court. Your second duty is to take the law as I give it to you, apply it to the facts, and decide if the government has proved the defendant guilty beyond a reasonable doubt.

You must perform these duties fairly and impartially. Do not let sympathy, prejudice, fear, or public opinion influence you. In addition, do not let any person's race, color, religion, national ancestry, or gender influence you.

You should not take anything I say or do during the trial as indicating what I think of the evidence or what I think your verdict should be.

*7TH Circuit Pattern Jury Instructions*, No. 10.01 (Preliminary Instructions --- Functions of the Court and Jury)

3

2209

**PROPOSED INSTRUCTION NO. B**

The charges against the defendant are in a document called a fourth superseding indictment. [You will have a copy of the fourth superseding indictment during your deliberations.]

The fourth superseding indictment in this case charges that the defendant committed the following crimes.

Count One of the fourth superseding indictment charges the defendant with conspiracy to commit racketeering. Count Two charges the defendant with conspiring to knowingly and intentionally possess with intent to distribute and distribute one hundred (100) kilograms or more of a mixture and substance containing a detectable amount of marijuana and five (5) kilograms or more of a mixture and substance containing a detectable amount of cocaine. Counts Nine, Thirteen, Fifteen, Seventeen, Nineteen, and Twenty-One charge the defendant with murder in aid of racketeering. Counts Twenty-Three, Twenty-Five, Twenty-Seven, and Twenty-Nine charge the defendant with attempted murder in aid of racketeering. Counts Twenty-Four, Twenty-Six, Twenty-Eight, and Thirty charge the defendant with use of a firearm during and in relation to a crime of violence. The defendant has pled not guilty to the charges.

The fourth superseding indictment is simply the formal way of telling the defendant what crimes he is accused of committing. It is not evidence that the defendant is guilty. It does not even raise a suspicion of guilt.

*7th Circuit Pattern Jury Instructions*, No. 10.02 (Preliminary Instructions – The Charge)

4

## PROPOSED INSTRUCTION NO. C

The defendant is presumed innocent of each and every one of the charges. This presumption continues throughout the case. It is not overcome unless, from all the evidence in the case, you are convinced beyond a reasonable doubt that the defendant is guilty as charged.

The government has the burden of proving the defendant's guilt beyond a reasonable doubt. This burden of proof stays with the government throughout the case.

A defendant is never required to prove his innocence. He is not required to produce any evidence at all.

*7th Circuit Pattern Jury Instructions*, No. 10.03 (Preliminary Instructions --- Presumption of Innocence / Burden of Proof)

5

2211

**PROPOSED INSTRUCTION NO. D**

You may consider only the evidence that you see and hear in court. You may not consider anything you may see or hear outside of court, including anything from the newspaper, television, radio, the Internet, or any other source.

The evidence includes only what the witnesses say when they are testifying under oath, the exhibits that I allow into evidence, and any facts to which the parties agree or stipulate. A stipulation is an agreement that certain facts are true or that a witness would have given certain testimony.

Nothing else is evidence. Any statements and arguments that the lawyers make are not evidence. If what a lawyer says is different from the evidence as you hear or see it, the evidence is what counts. The lawyers' questions and objections likewise are not evidence.

A lawyer has a duty to object if he thinks a question or evidence is improper. When an objection is made, I will be required to rule on the objection. If I sustain an objection to a question a lawyer asks, you must not speculate on what the answer might have been. If I strike testimony or an exhibit from the record, or tell you to disregard something, you must not consider it.

Pay close attention to the evidence as it is being presented. During your deliberations, you will have any exhibits that I allow into evidence, but you will not have a transcript of the testimony. You will have to make your decision based on what you recall of the evidence.

*7TH Circuit Pattern Jury Instructions*, No. 10.04 (The Evidence)

6

2212

**GOVERNMENT'S PROPOSED INSTRUCTION NO. E**

You may have heard the terms "direct evidence" and "circumstantial evidence." Direct evidence is evidence that directly proves a fact. Circumstantial evidence is evidence that indirectly proves a fact.

For example, direct evidence that it was raining outside is testimony by a witness that it was raining. Indirect evidence that it was raining outside is the observation of someone entering a room carrying a wet umbrella.

You are to consider both direct and circumstantial evidence. The law does not say that one is better than the other. It is up to you to decide how much weight to give to any evidence, whether direct or circumstantial.

*7TH Circuit Pattern Jury Instruction*s, No. 10.06 (Preliminary Instructions – Direct and Circumstantial Evidence)

7

**GOVERNMENT'S PROPOSED INSTRUCTION NO. F**

Give the evidence whatever weight you believe it deserves. Use your common sense in weighing the evidence, and consider the evidence in light of your own everyday experience.

People sometimes look at one fact and conclude from it that another fact exists. This is called an inference. You are allowed to make reasonable inferences, so long as they are based on the evidence.

*7th Circuit Pattern Jury Instructions*, No. 10.07 (Preliminary Instructions --- Considering the Evidence)

8

2214

**GOVERNMENT'S PROPOSED INSTRUCTION NO. G**

Part of your job as jurors is to decide how believable each witness was, and how much weight to give each witness's testimony. I will give you additional instructions about this at the end of the trial.

*7th Circuit Pattern Jury Instructions*, No. 10.08 (Preliminary Instructions --- Credibility of Witnesses)

9

**GOVERNMENT'S PROPOSED INSTRUCTION NO. H**

Do not make any decisions by simply counting the number of witnesses who testified about a certain point.

What is important is how believable the witnesses were and how much weight you think their testimony deserves.

*7<sup>th</sup> Circuit Pattern Jury Instructions*, No. 10.09 (Preliminary Instructions --- Number of Witnesses)

10

2216

**GOVERNMENT'S PROPOSED INSTRUCTION NO. I**

You will be permitted to take notes during the trial. If you take notes, you may use them during deliberations to help you remember what happened during the trial. You should use your notes only as aids to your memory. The notes are not evidence. All of you should rely on your independent recollection of the evidence, and you should not be unduly influenced by the notes of other jurors. Notes are not entitled to any more weight than the memory or impressions of each juror.

*7th Circuit Pattern Jury Instructions*, No. 10.10 (Preliminary Instructions --- Jury Note-Taking)

2217

## **GOVERNMENT'S PROPOSED INSTRUCTION NO. J**

Before we begin the trial, I want to discuss several rules of conduct that you must follow as jurors.

First, you should keep an open mind throughout the trial. Do not make up your mind about what your verdict should be until after the trial is over, you have received my final instructions on the law, and you and your fellow jurors have discussed the evidence.

Your verdict in this case must be based exclusively on the law as I give it to you and the evidence that is presented during the trial. For this reason, and to ensure fairness to both sides in this case, you must obey the following rules. These rules apply both when you are here in court and when you are not in court. They apply until after you have returned your verdict in the case.

1. You must not discuss the case, including anyone who is involved in the case, among yourselves until you go to the jury room to deliberate after the trial is completed.

2. You must not communicate with anyone else about this case, including anyone who is involved in the case, until after you have returned your verdict.

3. When you are not in the courtroom, you must not allow anyone to communicate with you about the case or give you any information about the case, or about anyone who is involved in the case. If someone tries to communicate with you about the case or someone who is involved in the case, or if you overhear or learn any information about the case or someone involved in the case when you are not in the courtroom, you must report this to me promptly.

12

2218

4.   You may tell your family and your employer that you are serving on a jury, so that you can explain that you have to be in court. However, you must not communicate with them about the case or anyone who is involved in the case until after you have returned your verdict.

5.   All of the information that you will need to decide the case will be presented here in court. You may not look up, obtain, or consider information from any outside source.

There are two reasons for these rules. First, it would not be fair to the parties in the case for you to consider outside information or communicate information about the case to others. Second, outside information may be incorrect or misleading.

When I say that you may not obtain or consider any information from outside sources, and may not communicate with anyone about the case, I am referring to any and all means by which people communicate or obtain information. This includes, for example, face to face conversations; looking things up; doing research; reading, watching, or listening to reports in the news media; and any communication using any electronic device or media, such as a telephone, cell phone, smart phone, iPhone, Android, Blackberry or similar device, PDA, computer, the Internet, text messaging, chat rooms, blogs, social networking websites like Facebook, YouTube, Twitter, GooglePlus, or LinkedIn or similar sites and technologies, or any other form of communication at all. If you hear, see, or receive any information about the case by these or any other means, you must report that to me immediately.

*7TH Circuit Pattern Jury Instructions*, No. 10.11 (Preliminary Instructions --- Jury Conduct)

13

2219

## GOVERNMENT'S PROPOSED INSTRUCTION NO. K

We are now ready to begin the trial. The trial will proceed in the following manner:

First, each side's attorney may make an opening statement. An opening statement is not evidence. Rather, it is a summary of what each side's attorney expect the evidence will show.

After the opening statements, you will hear the evidence.

After the evidence has been presented, the attorneys will make closing arguments, and I will instruct you on the law that applies to the case.

After that, you will go to the jury room to deliberate on your verdict.

*7TH Circuit Pattern Jury Instructions*, No. 10.12 (Preliminary Instructions --- Conduct of the Trial)

14

Case 15-3347      Document 35      Filed 07/27/2016      Pages: 4186

# FINAL INSTRUCTIONS TO THE JURY

15

**PROPOSED INSTRUCTION NO. 1**

Members of the jury, I will now instruct you on the law that you must follow in deciding this case.   I will also give you a copy of these instructions to use in the jury room.   You must follow all of my instructions about the law, even if you disagree with them. This includes the instructions I gave you before the trial, any instructions I gave you during the trial, and the instructions I am giving you now.

As jurors, you have two duties. Your first duty is to decide the facts from the evidence that you saw and heard here in court. This is your job, not my job or anyone else's job.

Your second duty is to take the law as I give it to you, apply it to the facts, and decide if the government has proved the defendant guilty beyond a reasonable doubt.

You must perform these duties fairly and impartially. Do not let sympathy, prejudice, fear, or public opinion influence you.   In addition, do not let any person's race, color, religion, national ancestry, or gender influence you.

You must not take anything I said or did during the trial as indicating that I have an opinion about the evidence or about what I think your verdict should be.

*7ᵗʰ Circuit Pattern Jury Instructions*, No. 1.01 (Functions of the Court and Jury); Court's Instruction No. 1 in <u>US v. Richard Reyes</u>, 2:11 CR 77, Dkt #837, at 2.

16

**PROPOSED INSTRUCTION NO. 2**

The charges against the defendant are in a document called a fourth superseding indictment.

The fourth superseding indictment in this case charges that the defendant committed the following crimes:

Count One of the fourth superseding indictment charges the defendant with conspiracy to commit racketeering. Count Two charges the defendant with conspiring to knowingly and intentionally possess with intent to distribute and distribute one hundred (100) kilograms or more of a mixture and substance containing a detectable amount of marijuana and five (5) kilograms or more of a mixture and substance containing a detectable amount of cocaine. Counts Nine, Thirteen, Fifteen, Seventeen, Nineteen, and Twenty-One charge the defendant with murder in aid of racketeering. Counts Twenty-Three, Twenty-Five, Twenty-Seven, and Twenty-Nine charge the defendant with attempted murder in aid of racketeering. Counts Twenty-Four, Twenty-Six, Twenty-Eight, and Thirty charge the defendant with use of a firearm during and in relation to crime of violence. The defendant has pled not guilty to the charges.

The fourth superseding indictment is simply the formal way of telling the defendant what crimes he is accused of committing. It is not evidence that the defendant is guilty. It does not even raise a suspicion of guilt.

*7th Circuit Pattern Jury Instructions*, No. 1.02 (The Charge); Court's Instruction No. 2 in US v. Richard Reyes, 2:11 CR 77, Dkt #837, at 3.

17

**PROPOSED INSTRUCTION NO. 3**

The defendant is presumed innocent of each and every one of the charges. This presumption continues throughout the case, including during your deliberations. It is not overcome unless, from all the evidence in the case, you are convinced beyond a reasonable doubt that the defendant is guilty as charged.

The government has the burden of proving the defendant's guilt beyond a reasonable doubt. This burden of proof stays with the government throughout the case.

The defendant is never required to prove his innocence. He is not required to produce any evidence at all.

*7th Circuit Pattern Jury Instructions*, No. 1.03 (Presumption of Innocence / Burden of Proof); Court's Instruction No. 3 in US v. Richard Reyes, 2:11 CR 77, Dkt #837, at 4.

18

**PROPOSED INSTRUCTION NO. 4**

You must make your decision based only on the evidence that you saw and heard here in court. Do not consider anything you may have seen or heard outside of court, including anything from the newspaper, television, radio, the Internet, or any other source.

The evidence includes only what the witnesses said when they were testifying under oath, the exhibits that I allowed into evidence, and any stipulations that the lawyers agreed to. A stipulation is an agreement that certain facts are true or that a witness would have given certain testimony.

Nothing else is evidence. The lawyers' statements and arguments are not evidence. If what a lawyer said is different from the evidence as you remember it, the evidence is what counts. The lawyers' questions and objections likewise are not evidence.

A lawyer has a duty to object if he thinks a question is improper. If I sustained objections to questions the lawyers asked, you must not speculate on what the answers might have been.

If, during the trial, I struck testimony or exhibits from the record, or told you to disregard something, you must not consider it.

*7th Circuit Pattern Jury Instructions*, No. 2.01 (The Evidence); Court's Instruction No. 4 in US v. Richard Reyes, 2:11 CR 77, Dkt #837, at 5.

19

2225

## PROPOSED INSTRUCTION NO. 5

Give the evidence whatever weight you decide it deserves. Use your common sense in weighing the evidence, and consider the evidence in light of your own everyday experience.

People sometimes look at one fact and conclude from it that another fact exists. This is called an inference. You are allowed to make reasonable inferences, so long as they are based on the evidence.

*7th Circuit Pattern Jury Instructions*, No. 2.0 (Considering The Evidence); Court's Instruction No. 5 in <u>US v. Richard Reyes</u>, 2:11 CR 77, Dkt #837, at 6.

**PROPOSED INSTRUCTION NO. 6**

You may have heard the terms "direct evidence" and "circumstantial evidence." Direct evidence is evidence that directly proves a fact. Circumstantial evidence is evidence that indirectly proves a fact.

You are to consider both direct and circumstantial evidence. The law does not say that one is better than the other. It is up to you to decide how much weight to give to any evidence, whether direct or circumstantial.

7th *Circuit Pattern Jury Instructions*, No. 2.03 (Direct and Circumstantial Evidence); Court's Instruction No. 6 in US v. Richard Reyes, 2:11 CR 77, Dkt #837, at 7.

21

2227

**PROPOSED INSTRUCTION NO. 7**

Do not make any decisions simply by counting the number of witnesses who testified about a certain point.

[You may find the testimony of one witness or a few witnesses more persuasive than the testimony of a larger number. You need not accept the testimony of the larger number of witnesses.]

What is important is how truthful and accurate the witnesses were and how much weight you think their testimony deserves.

*7th Circuit Pattern Jury Instructions*, No. 2.04 (Number of Witnesses); Court's Instruction No. 7 in US v. Richard Reyes, 2:11 CR 77, Dkt #837, at 8.

## PROPOSED INSTRUCTION NO. 8

A defendant has an absolute right not to testify. You may not consider in any way the fact that the defendant did not testify. You should not even discuss it in your deliberations.

*7th Circuit Pattern Jury Instructions*, No. 2.05 (Defendant's Failure to Testify or Present Evidence); Court's Instruction No. 8 in US v. Richard Reyes, 2:11 CR 77, Dkt #837, at 9.

23

**PROPOSED INSTRUCTION NO. 9**

Part of your job as jurors is to decide how believable each witness was, and how much weight to give each witness' testimony. You may accept all of what a witness says, or part of it, or none of it.

Some factors you may consider include:

-        the intelligence of the witness;

-        the witness' ability and opportunity to see, hear, or know the things the witness testified about;

-        the witness' memory;

-        the witness' demeanor;

-        whether the witness had any bias, prejudice, or other reason to lie or slant the testimony;

-        the truthfulness and accuracy of the witness' testimony in light of the other evidence presented; and

-        inconsistent statements or conduct by the witness.

*7th Circuit Pattern Jury Instructions*, No. 3.01 (Credibility of Witnesses); Court's Instruction No. 9 in US v. Richard Reyes, 2:11 CR 77, Dkt #837, at 10.

**PROPOSED INSTRUCTION NO. 10**

It is proper for an attorney to interview any witness in preparation for trial.

*7<sup>th</sup> Circuit Pattern Jury Instructions*, No. 3.02 (Attorney Interviewing Witness); Court's Instruction No. 10 in US v. Richard Reyes, 2:11 CR 77, Dkt #837, at 11.

25

**PROPOSED INSTRUCTION NO. 11**

You have heard evidence that before the trial, witnesses made statements that may be inconsistent with their testimony here in court. You may consider an inconsistent statement made before the trial to help you decide how believable a witness' testimony was here in court. If an earlier statement was made under oath, then you can also consider the earlier statement as evidence of the truth of whatever the witness said in the earlier statement.

*7ᵗʰ Circuit Pattern Jury Instructions*, No. 3.03 (Prior Inconsistent Statements); Court's
Instruction No. 11 in US v. Richard Reyes, 2:11 CR 77, Dkt #837, at 12.

26

2232

**PROPOSED INSTRUCTION NO. 12**

You have heard evidence that before the trial, the defendant made [a] statement[s] that may be inconsistent with his testimony here in court.   You may consider an inconsistent statement by the defendant made before the trial to help you decide how believable the defendant's testimony was hen court, and also as evidence of the truth of whatever the defendant said in the earlier statement.

*7<sup>th</sup> Circuit Pattern Jury Instructions*, No. 3.04 (Prior Inconsistent Statement by Defendant).

27

2233

**PROPOSED INSTRUCTION NO. 13**

You have heard testimony from [a witness; witnesses; name(s) of witness(es)] who:

[-    [was; were] [promised; received; expected] [a] benefit[s] in return for his [testimony; cooperation with the government];]

[-    has [admitted; been convicted of] lying under oath;]

[-    has [pled guilty to; stated[ that he was involved in [[one; some] of] the crime[s] the defendant is charged with committing.]   [You may not consider his guilty plea as evidence against the defendant.]]

You may give [this witness'; these witnesses'] testimony whatever weight you believe is appropriate, keeping in mind that you must consider that testimony with caution and great care.

*7th Circuit Pattern Jury Instructions*, No. 3.05 (Witnesses Requiring Special Caution); Court's Instruction No. 12 in <u>US v. Richard Reyes</u>, 2:11 CR 77, Dkt #837, at 13.

## PROPOSED INSTRUCTION NO. 14

You may consider evidence that the defendant was convicted of a crime only in deciding the believability of his testimony.  You may not consider it for any other purpose.  The other conviction[s] [is; are] not evidence of whether the defendant is guilty of any crime he is charged with in this case.

You may consider evidence that a witness was convicted of a crime only in deciding the believability of his testimony.   You may not consider it for any other purpose.

*7th Circuit Pattern Jury Instructions*, No. 3.06 (Impeachment By Prior Conviction); Court's Instruction No. 13 in US v. Richard Reyes, 2:11 CR 77, Dkt #837, at 14.

**PROPOSED INSTRUCTION NO. 15**

You have [heard testimony; received evidence] that the defendant made a statement to [name of person or agency].  You must decide whether the defendant actually made the statement and, if so, how much weight to give to the statement.  In making these decisions, you should consider all of the evidence, including the defendant's personal characteristics and circumstances under which the statement may have been made.

*7<sup>th</sup> Circuit Pattern Jury Instructions*, No. 3.09 (Statement by Defendant).

30

2236

## INSTRUCTION NO. 16

You have heard testimony of an identification of a person. Identification testimony is an expression of the witness' belief or impression. In evaluating this testimony, you should consider the opportunity the witness had to observe the person at the time [of the offense] and to make a reliable identification later. You should also consider the circumstances under which the witness later made the identification.

The government must prove beyond a reasonable doubt that the defendant is the person who committed the crime that is charged.

*7th Circuit Pattern Jury Instructions*, No. 3.12 (Identification Testimony); Court's Instruction No. 15 in US v. Richard Reyes, 2:11 CR 77, Dkt #837, at 16.

**PROPOSED INSTRUCTION NO. 17**

You have heard a witness, namely, [name of witness], who gave opinions and testimony about [certain subject(s); specify the subject(s), if possible]. You do not have to accept this witness' [opinions; testimony]. You should judge this witness' opinions and testimony the same way you judge the testimony of any other witness. In deciding how much weight to give to these opinions and testimony, you should consider the witness' qualifications, how he reached his [opinions; conclusions], and the factors I have described for determining the believability of testimony.

*7th Circuit Pattern Jury Instructions*, No. 3.13 (Opinion Testimony); Court's Instruction No. 16 in US v. Richard Reyes, 2:11 CR 77, Dkt #837, at 17.

2238

**PROPOSED INSTRUCTION NO. 18**

You have [heard [a] recorded conversation[s]; seen [a] video recording[s]]. This is proper evidence that you should consider together with and in the same way you consider the other evidence.

[You were also given transcripts of the conversation[s] [on the video recording[s]] to help you follow the recording[s] as you listened to [it; them]. The recording[s] are the evidence of what was said and who said it. The transcripts are not evidence. If you noticed any differences between what you heard in a conversation and what you read in the transcripts, your understanding of the recording is what matters. In other words, you must rely on what you heard, not what you read. And if you could not hear or understand certain parts of a recording, you must ignore the transcripts as far as those parts are concerned. [You may consider a person's actions, facial expressions, and lip movements that you are able to observe on a video recording to help you determine what was said and who said it.]]

[I am providing you with the recording[s] and a device with instructions on its use. It is up to you to decide whether to listen to [a; the] recording during your deliberations. You may, if you wish, rely on your recollections of what you heard during the trial.]

[If, during your deliberations, you wish to have another opportunity to view [a; any] transcript[s] [as you listen to a recording], send a written message to the [marshal; court security officer], and I will provide you with the transcript[s].]

*7th Circuit Pattern Jury Instructions*, No. 3.14 (Recorded Conversations / Transcripts)

33

2239

**PROPOSED INSTRUCTION NO. 19**

If you have taken notes during the trial, you may use them during deliberations to help you remember what happened during the trial. You should use your notes only as aids to your memory. The notes are not evidence. All of you should rely on your independent recollection of the evidence, and you should not be unduly influenced by the notes of other jurors. Notes are not entitled to any more weight than the memory or impressions of each juror.

*7th Circuit Pattern Jury Instructions*, No. 3.18 (Juror Note-Taking); Court's Instruction No. 17 in US v. Richard Reyes, 2:11 CR 77, Dkt #837, at 18.

**PROPOSED INSTRUCTION NO. 20**

The fourth superseding indictment charges that the crimes happened "on or about" certain

dates. The government must prove that the crimes happened reasonably close to those dates. The

government is not required to prove that the crimes happened on those exact dates.

*7th Circuit Pattern Jury Instructions*, No. 4.05 (Date of Crime Charged); Court's Instruction No.
18 in US v. Richard Reyes, 2:11 CR 77, Dkt #837, at 19.

35

**PROPOSED INSTRUCTION NO. 21**

The defendant has been accused of more than one crime.   The number of charges is not evidence of guilt and should not influence your decision.

You must consider each charge separately.   Your decision on one charge, whether it is guilty or not guilty, should not influence your decision on any other charge.

*7th Circuit Pattern Jury Instructions*, No. 4.06 (Separate Consideration – One Defendant Charged with Multiple Crimes); Court's Instruction No. 19 in US v. Richard Reyes, 2:11 CR 77, Dkt #837, at 20.

2242

**PROPOSED INSTRUCTION NO. 22**

An offense may be committed by more than one person. A defendant's guilt may be established without proof that the defendant personally performed every act constituting the crime charged.

*7th Circuit Pattern Jury Instructions*, No. 5.05 (Joint Venture); Court's Instruction No. 20 in US v. Richard Reyes, 2:11 CR 77, Dkt #837, at 21.

**PROPOSED INSTRUCTION NO. 23**

Any person who knowingly aids, counsels, commands, induces, or procures the commission of an offense may be found guilty of that offense if he knowingly participated in the criminal activity and tried to make it succeed.

If the defendant knowingly causes the acts of another, then the defendant is responsible for those acts as though he personally committed them.

*7ᵗʰ Circuit Pattern Jury Instructions*, No. 5.06 (Aiding And Abetting / Acting Through Another); Court's Instruction No. 21 in US v. Richard Reyes, 2:11 CR 77, Dkt #837, at 22.

2244

**PROPOSED INSTRUCTION NO. 24**

A person acts knowingly if he realizes what he is doing and is aware of the nature of his conduct, and does not act through ignorance, mistake, or accident. In deciding whether the defendant acted knowingly, you may consider all of the evidence, including what the defendant did or said.

*7th Circuit Pattern Jury Instructions*, No. 4.10 (Identification Testimony); Court's Instruction No. 22 in US v. Richard Reyes, 2:11 CR 77, Dkt #837, at 23.

# INSTRUCTIONS FOR COUNT ONE
# RACKETEERING CONSPIRACY

2246

Case: 15-2347 Document: 35 Filed: 07/27/2016 Pages: 4186

## **PROPOSED INSTRUCTION NO. 25**

The defendant is charged in Count One with conspiracy to commit racketeering.

The defendant is charged in Count Two with conspiracy to possess with intent to distribute and distribute marijuana and cocaine.

For purposes of both Counts One and Two, you are instructed that a conspiracy is an express or implied agreement between two or more persons to commit a crime. A conspiracy may be proven even if its goal or goals were not accomplished.

In deciding whether the charged conspiracy existed, you may consider all of the circumstances, including the words and acts of each of the alleged participants.

*7th Circuit Pattern Jury Instructions*, No. 5.09 (Conspiracy – Definition of Conspiracy); Court's Instruction No. 23 in US v. Richard Reyes, 2:11 CR 77, Dkt #837, at 24.

2247

**PROPOSED INSTRUCTION NO. 26**

To be a member of a conspiracy, the defendant does not need to join it at the beginning, and he does not need to know all of the other members or all of the means by which the illegal goal or goals of the conspiracy were to be accomplished.   The government must prove beyond a reasonable doubt that the defendant was aware of the illegal goal or goals of the conspiracy and knowingly joined the conspiracy.

A defendant is not a member of a conspiracy just because he knew and/or associated with people who were involved in a conspiracy, knew there was a conspiracy, and/or was present during conspiratorial discussions.

In deciding whether the defendant joined the charged conspiracy, you must base your decision only on what the defendant did or said.   To determine what the defendant did or said, you may consider the defendant's own words or acts.   You may also use the words or acts of other persons to help you decide what the defendant did or said.

*7th Circuit Pattern Jury Instructions*, No. 5.10 (Conspiracy – Membership in Conspiracy); Court's Instruction No. 24 in US v. Richard Reyes, 2:11 CR 77, Dkt #837, at 25.

42

2248

**PROPOSED INSTRUCTION NO. 27**

Count One charges the defendant with conspiracy to commit racketeering. In order for you to find the defendant guilty of this charge, the government must prove each of the five following elements beyond a reasonable doubt:

1. That the conspiracy as charged in Count One existed;

2. That the Defendant knowingly became a member of the conspiracy with the intent to advance the conspiracy;

3. That the conspiracy was an agreement to conduct or participate in the conduct of the affairs of the Imperial Gangsters Street Gang, an enterprise, through a pattern of racketeering activity as described in Count One;

4. That the Imperial Gangsters was an enterprise; and

5. That the activities of the Imperial Gangsters affected interstate commerce.

If you find from your consideration of all the evidence that the government has proved each of these elements beyond a reasonable doubt, then you should find the defendant guilty.

If, on the other hand, you find from your consideration of all the evidence that the government has failed to prove any one of these elements beyond a reasonable doubt as to the defendant, then you should find the defendant not guilty.

*7th Circuit Pattern Jury Instructions*, 18 U.S.C. Section 1962(d) (Racketeering Conspiracy – Elements); Court's Instruction No. 25 in US v. Richard Reyes, 2:11 CR 77, Dkt #837, at 26.

43

2249

**PROPOSED INSTRUCTION NO. 28**

In order to find a "pattern of racketeering activity" for purposes of Count One, you must find beyond a reasonable doubt that the defendant agreed that some member or members of the conspiracy would commit at least two acts of racketeering as described in Count One, and that they were separate acts. You must also find that those acts were in some way related to each other and that there was continuity between them.

Acts are related to each other if they are not isolated events, that is, if they have similar purposes, or results, or participants, or victims, or are committed a similar way, or have similar distinguishing characteristics, or are part of the affairs of the same enterprise.

There is continuity between acts if, for example, they are ongoing over a substantial period of time, or had the potential to continue over a substantial period, or if they are part of the regular way some entity does business or conducts its affairs.

For purposes of Count One, the government does not have to prove that any racketeering acts were actually committed at all, or that the defendant agreed to personally commit any such acts, or that the defendant agreed that two or more specific acts would be committed.

*7th Circuit Pattern Jury Instructions*, 18 U.S.C. Section 1962(d) (Pattern Requirement) – Racketeering Conspiracy); Court's Instruction No. 26 in US v. Richard Reyes, 2:11 CR 77, Dkt #837, at 27.

44

2250

## PROPOSED INSTRUCTION NO. 29

The term "enterprise" can include a group of people associated together for a common purpose of engaging in a course of conduct. This group may be associated together for purposes that are both legal and illegal.

In considering whether a group is an "enterprise," you may consider whether it has an ongoing organization or structure, either formal or informal, and whether the various members of the group functioned as a continuing unit. A group may continue to be an "enterprise" even if it changes membership by gaining or losing members over time.

The government must prove that the group described in the fourth superseding indictment was the "enterprise" charged, but need not prove each and every allegation in the fourth superseding indictment about the enterprise or the manner in which the enterprise operated. The government need not prove the association had any form or structure beyond the minimum necessary to conduct the charged pattern of racketeering.

*7<sup>th</sup> Circuit Pattern Jury Instructions*, 18 U.S.C. Section 1961(4) (Enterprise – Association in Fact); Court's Instruction No. 27 in <u>US v. Richard Reyes</u>, 2:11 CR 77, Dkt #837, at 28.

**PROPOSED INSTRUCTION NO. 30**

A person conducts or participates in the conduct of the affairs of an enterprise if that person uses his position in, or association with, the enterprise to perform acts which are involved in some way in the operation or management of the enterprise, directly or indirectly, or if the person causes another to do so.   In order to have conducted or participated in the conduct of the affairs of an enterprise, a person need not have participated in all of the activity alleged in Count One.

A person conspires to conduct or participate in the conduct of the affairs of an enterprise if that person agrees to knowingly facilitate the activities of the operators or managers who conduct or participate in the conduct of its affairs.

*7th Circuit Pattern Jury Instructions*,18 U.S.C. Section 1962(c) and (d) (Conduct – Definition); Court's Instruction No. 28 in US v. Richard Reyes, 2:11 CR 77, Dkt #837, at 29.

**PROPOSED INSTRUCTION NO. 31**

To be associated with an enterprise, a person must be involved with the enterprise in a way that is related to its affairs or common purpose, although the person need not have a stake in the goals of the enterprise and may even act in a way that subverts those goals.   A person may be associated with an enterprise without being so throughout its existence.

*7th Circuit Pattern Jury Instructions*, 18 U.S.C. Section 1962(c) and (d) (Associate – Definition); Court's Instruction No. 29 in US v. Richard Reyes, 2:11 CR 77, Dkt #837, at 30.

2253

**PROPOSED INSTRUCTION NO. 32**

Interstate commerce includes the movement of money, goods, services or persons from one state to another or between another country and the United States.   This would include the purchase or sale of goods or supplies from outside the state in which the enterprise was located, the use of interstate mail or wire facilities, or the causing of any of those things.   If you find that beyond a reasonable doubt either (a) that the enterprise made, purchased, sold or moved goods or services that had their origin or destination outside the state in which the enterprise was located, or (b) that the actions of the enterprise affected in any degree the movement of money, goods or services across state lines, then interstate commerce was engaged in or affected.

The government need only prove that the enterprise as a whole engaged in interstate commerce or that its activity affected interstate commerce to any degree, although proof that racketeering acts did affect interstate commerce meets that requirement.   The government need not prove that the defendant engaged in interstate commerce, or that the acts of the defendant affected interstate commerce.

*7th Circuit Pattern Jury Instructions*, 18 U.S.C. Section 1962 (Interstate Commerce – Definition); Court's Instruction No. 30 in US v. Richard Reyes, 2:11 CR 77, Dkt #837, at 31.

2254

## PROPOSED INSTRUCTION NO. 33

For Count One, the government must prove beyond a reasonable doubt that the defendant agreed that a conspirator, which could be the defendant himself, did or would intentionally commit, or cause, or aid and abet the commission of, two or more of the racketeering acts of the type or types alleged in the fourth superseding indictment. Your verdict must be unanimous as to which type or types of racketeering activity you find that the defendant agreed was or would be committed, caused, or aided and abetted.

For purposes of Counts One, the law defines "racketeering activity" as acts involving murder and robbery, as those offenses are defined under Indiana State law, and acts constituting Hobbs Act Robbery, and Drug Trafficking, as those offenses are defined under federal law.

I will now instruct you on the elements of the offenses listed in the fourth superseding indictment as racketeering activity.

**Murder (Indiana Code 35-42-1-1)**

Under Indiana law, a person commits the offense of murder when he

1. knowingly or intentionally
2. killed
3. an individual.

Indiana Pattern Jury Instructions Criminal Instruction No.3.01 Murder-Killing a Human Being

**Attempted Murder (I.C. 35-41-5-1(a), I.C. 35-42-1-1)**

Under Indiana law, a person commits the crime of attempted murder when the person

1. acting with the specific intent to kill the victim
2. did [set out conduct charged as substantial step]
3. which was conduct constituting a substantial step toward the commission of the intended crime of killing the victim.

Indiana Pattern Jury Instructions Criminal Instruction No. 2.01(a). Attempted Murder.

**Robbery (Indiana Code 35-42-5-1)**

Under Indiana law, a person commits the offense of robbery when the person

1. knowingly or intentionally

2. took property from another person or took property from the presence of another person

3. by using or threatening the use of force on another person or by putting another person in fear.

Indiana Pattern Jury Instructions Criminal Instruction No. 3.49 Robbery

**Aiding, Inducing or Causing an Offense (I.C. 35-41-2-4)**

Under Indiana law, a person aids, induces, or causes [name offense] when the person

1. knowingly or intentionally

2. aided or induced or caused

3. another person to commit the offense of [name offense], defined as [define elements of offense]

5. by [describe alleged offense and conduct].

Indiana Pattern Jury Instructions Criminal Instruction No. 2.11. Aiding, Inducing or Causing an Offense.

**Aiding, Inducing or Causing Attempted Murder (I.C. 35-41-2-4.)**

Under Indiana law, a person aids, induces, or causes attempted murder when person

1. knowingly or intentionally

2. aided another person when the other person was engaged or inducted or caused another person to engage

4. in conduct that constituted a substantial step toward killing of an individual

5. and both persons acted with the specific intent to kill that individual.

Indiana Pattern Jury Instruction Criminal Instruction No. 2.11(a). Aiding, Inducing or Causing Attempted Murder.

2256

**Conspiracy (I.C. 35-41-5-2(a), (b).)**

Under Indiana law, the crime of conspiracy is defined by statute as follows:

A person conspires to commit a felony when, with intent to commit the felony, he agrees with another person to commit the felony.  A person commits conspiracy when the person

1. agreed with another person to commit the crime of [name crime]

2. with the intent to commit the crime, and

4. the person or another person performed an overt act in furtherance of the agreement by [set out the overt act(s) charged in the information].

Indiana Pattern Jury Instructions Criminal Instruction No. 2.07. Conspiracy.


**Hobbs Act Robbery (18 U.S.C. § 1951)**

A person commits robbery under federal law when:

(1)      he knowingly obtains money or property from or in the presence of a victim;

(2)      he does so by means of robbery, that is, by unlawfully taking or obtaining of personal property from the person or in the presence of another, against his will, by means of actual or threatened force, or violence, or fear of injury, immediate or future, to his person or property, or property in his custody or possession;

(3)      he believes that the victim parted with the money or property because of the robbery; and

(4)      his conduct affects interstate commerce.

Robbery means the unlawful taking or obtaining of personal property from the person or in the presence of another, against his will, by means of actual or threatened force, or violence or fear of injury, immediate or future, to his person or property, or property in his custody or possession, or the person or property of a relative or member of his family or of anyone in his company at the time of the taking or obtaining.

To constitute racketeering activity, it is not necessary that any particular act constitute a "robbery" under both state and federal law.

*7th Circuit Pattern Jury Instruction*, 18 U.S.C. § 1951 – Extortion – Robbery – Elements & 18 U.S.C. § 1951 Definition of Robbery

51

**Narcotics Trafficking** - Distribution and Possession with Intent to Distribute a Controlled Substance 21 U.S.C. §   841(a)(1) and Conspiracy to Distribute and Possess with Intent to Distribute a Controlled Substance (21 U.S.C. § 846).

      I will be instructing you on the elements of distribution, possession with intent to distribute, and conspiracy to distribute and possess with intent to distribute a controlled substance when I give you the instructions for Count Two.   Those instructions should be applied here.

*United States v. Martin Anaya*, 2:10 CR 109 RL (Instruction 33 in Court's Instructions, Docket Entry #547, at page 35).

52

2258

Case 15-2347   Document 35   Filed 07/27/2016   Pages: 4486

# INSTRUCTIONS FOR COUNT TWO
# DRUG CONSPIRACY

2259

**PROPOSED INSTRUCTION NO. 34**

Count Two charges the defendant with conspiracy to possess with intent to distribute and distribute marijuana and cocaine.   In order for you to find the defendant guilty of this charge, the government must prove both of the following elements beyond a reasonable doubt:

1.      The conspiracy as charged in Count Two existed; and

2.      The defendant knowingly became a member of the conspiracy with an intent to advance the conspiracy.

If you find from your consideration of all the evidence that the government has proved each of these elements beyond a reasonable doubt, then you should find the defendant guilty.

If, on the other hand, you find from your consideration of all the evidence that the government has failed to prove any one of these elements beyond a reasonable doubt, then you should find the defendant not guilty.

7th *Circuit Pattern Jury Instructions*, No. 5.08(B) (Conspiracy – No Overt Act Required); Court's Instruction No. 32 in US v. Richard Reyes, 2:11 CR 77, Dkt #837, at 35.

2260

**PROPOSED INSTRUCTION NO. 35**

As I have already instructed you, a conspiracy is an express or implied agreement between two or more persons to commit a crime.   A conspiracy may be proven even if its goal or goals were not accomplished.

In deciding whether the charged conspiracy existed, you may consider all of the circumstances, including the words and acts of each of the alleged participants.

To be a member of a conspiracy, the defendant does not need to join it at the beginning, and he does not need to know all of the other members or all of the means by which the illegal goal or goals of the conspiracy were to be accomplished.   The government must prove beyond a reasonable doubt that the defendant was aware of the illegal goal or goals of the conspiracy and knowingly joined the conspiracy.

The defendant is not a member of a conspiracy just because he knew and/or associated with people who were involved in a conspiracy, knew there was a conspiracy, and/or was present during conspiratorial discussions.

In deciding whether the defendant joined the charged conspiracy, you must base your decision only on what that defendant did or said.   To determine what the defendant did or said, you may consider that defendant's own words or acts.   You may also use the words or acts of other persons to help you decide what the defendant did or said.

*7th Circuit Pattern Jury Instructions*, No. 5.09 (Conspiracy – Definition of Conspiracy); 7th Circuit Pattern Jury Instructions, No. 5.10 (Conspiracy – Membership in Conspiracy); Court's Instruction No. 33 in US v. Richard Reyes, 2:11 CR 77, Dkt #837, at 36.

Case: 15-2347 Document: 35 Filed: 07/27/2016 Pages: 4186

## PROPOSED INSTRUCTION NO. 36

In order to find that the government has proved the defendant guilty of the conspiracy charged in Count Two, the jury must unanimously agree that the defendant conspired to commit at least one of the following offenses:

1.  Distributing marijuana;

2.  distributing cocaine;

3.  possession with intent to distribute marijuana; or

4.  possession with intent to distribute cocaine.

The government is not required to prove that the defendant conspired to commit every one of the four offenses mentioned above. However, the government is required to prove that the defendant conspired to commit at least one of these four offenses. To find that the government has proven this, you must unanimously agree on which particular offense the defendant conspired to commit, as well as all of the other elements of the crime charged.

For example, if some of you were to find that the government has proved beyond a reasonable doubt that the defendant conspired to commit the offense of distributing marijuana, and the rest of you were to find that the government has proved beyond a reasonable doubt that the defendant conspired to commit the offense of distributing cocaine, then there would be no unanimous agreement on which offense the government has proved. On the other hand, if all of you were to find that the government has proved beyond a reasonable doubt that the defendant

56

conspired to commit the offense of distributing marijuana, then there would be unanimous

agreement.

*7th Circuit Pattern Jury Instructions*, No. 4.04 (Unanimity on Specific Acts (modified); *7th Circuit Pattern Jury Instructions*, No. 5.08(A) (Conspiracy – Overt Act Required (Committee Comments (b) and (e)); Court's Instruction No. 34 in US v. Richard Reyes, 2:11 CR 77, Dkt #837, at 37.

2263

## PROPOSED INSTRUCTION NO. 37

Marijuana and cocaine are both controlled substances.

*7<sup>th</sup> Circuit Pattern Jury Instructions*, 21 U.S.C. Section 841(A)(1) (Definition of Controlled Substance); Court's Instruction No. 35 in <u>US v. Richard Reyes</u>, 2:11 CR 77, Dkt #837, at 38.

2264

**PROPOSED INSTRUCTION NO. 38**

To assist you in determining whether the defendant conspired to distribute a controlled

substance as charged in Count Two, the Court instructs you that the legal elements for

distribution of a controlled substance are as follows:

First, the defendant knowingly distributed a controlled substance;

Second, the defendant knew the substance was some kind of controlled substance.    The

government is not required to prove that the defendant knew the substance was marijuana or that

the substance was cocaine.

7th *Circuit Pattern Jury Instructions*, 21 U.S.C. Section 841(a)(1) (Distribution of a Controlled
Substance – Elements) (modified); Court's Instruction No. 36 in US v. Richard Reyes, 2:11 CR
77, Dkt #837, at 39.

59

2265

**PROPOSED INSTRUCTION NO. 39**

A person "distributes" a controlled substance if he delivers or transfers possession of the controlled substance to someone else or causes a person to deliver or transfer possession of the controlled substance to another person.

*7th Circuit Pattern Jury Instructions*, 21 U.S.C. Section 841(a)(1) (Definition of Distribution); Court's Instruction No. 37 in US v. Richard Reyes, 2:11 CR 77, Dkt #837, at 40.

60

2266

**PROPOSED INSTRUCTION NO. 40**

To assist you in determining whether the defendant conspired to possess with intent to distribute a controlled substance, the Court instructs you that the legal elements for possession with intent to distribute a controlled substance are as follows:

First, the defendant knowingly possessed a controlled substance; and

Second, the defendant intended to distribute the substance to another person; and

Third, the defendant knew the substance was some kind of controlled substance.   The government is not required to prove that the defendant knew the substance was marijuana or that the substance was cocaine.

*7th Circuit Pattern Jury Instructions*, 21 U.S.C. Section 841(a)(1) (Possession With Intent to Distribute – Elements) (modified); Court's Instruction No. 38 in US v. Richard Reyes, 2:11 CR 77, Dkt #837, at 41.

2267

**PROPOSED INSTRUCTION NO. 41**

A person possesses an object if he has the ability and intention to exercise direction or control over the object, either directly or through others.    A person may possess an object even if he is not in physical contact with it and even if he does not own it.

*7th Circuit Pattern Jury Instructions*, 21 U.S.C. Section 841(a)(1) (Definition of Possession); 7th Circuit Pattern Jury Instructions, No. 4.13 (Definition of Possession); Court's Instruction No. 39 in US v. Richard Reyes, 2:11 CR 77, Dkt #837, at 42.

62

2268

Case: 15-2347      Document: 35            Filed: 07/27/2016      Pages: 4186

# INSTRUCTIONS FOR COUNTS CHARGING MURDER IN AID OF RACKETEERING

**PROPOSED INSTRUCTION NO. 42**

Count Nine charges the defendant with the murder of Luis Ortiz in aid of racketeering. Count Thirteen charges the defendant with the murder of Michael Sessum in aid of racketeering.   Count Fifteen charges the defendant with the murder of Miguel Mejias in aid of racketeering.   Count Seventeen charges the defendant with the murder of Harris Brown in aid of racketeering.   Count Nineteen charges the defendant with the murder of Miguel Colon in aid of racketeering.   Count Twenty-One charges the defendant with the murder of Latroy Howard in aid of racketeering.

To sustain the charge of murder in aid of racketeering activity, the government must prove each of the five following elements beyond a reasonable doubt:

First, that the Imperial Gangsters were an enterprise;

Second, that the Imperial Gangsters enterprise engaged in "racketeering activity" as that term is defined earlier in these instructions;

Third, that the Imperial Gangsters enterprise affected interstate commerce;

Fourth, that the defendant committed the murder of the victim in the count you are considering; and

Fifth, that the defendant's purpose in committing the murder was to maintain or increase his position in the Imperial Gangsters enterprise.

If you find from your consideration of all the evidence that the government has proved each of these elements beyond a reasonable doubt for the count you are considering, then you should find the defendant guilty of the count you are considering.

If, on the other hand, you find from your consideration of all the evidence that the government has failed to prove any one of these elements beyond a reasonable doubt for the

64

count you are considering, then you should find the defendant not guilty of the count you are

considering.

Court's Instruction No. 40 in <u>US v. Richard Reyes</u>, 2:11 CR 77, Dkt #837, at 43.

65

**PROPOSED INSTRUCTION NO. 43**

I have already instructed you as to what the terms "murder" under Indiana law,

"enterprise", "racketeering activity" and "interstate commerce" mean when I instructed you on

Count One, and each of those instructions apply here as well.

Court's Instruction No. 41 in <u>US v. Richard Reyes</u>, 2:11 CR 77, Dkt #837, at 44.

66

2272

**PROPOSED INSTRUCTION NO. 44**

For the purpose of each of Counts Nine, Thirteen, Fifteen, Seventeen, Nineteen, and Twenty-One, the government must prove beyond a reasonable doubt for the count you are considering, that at least one of the defendant's purposes in committing the crime of violence was to maintain or increase position in the Imperial Gangsters enterprise.

In determining whether one of the defendant's purposes was to "maintain" or "increase" position in the enterprise, you should give those words their ordinary meaning.

The government does not have to prove that the defendant's sole or principal motive in committing the murder was to maintain or increase position in the Imperial Gangsters enterprise. It is sufficient if you find that the defendant committed a murder because he knew it was expected of him by reason of his membership in the Imperial Gangsters enterprise or that he committed it in furtherance of that membership.

Court's Instruction No. 42 in <u>US v. Richard Reyes</u>, 2:11 CR 77, Dkt #837, at 45.

2273

# INSTRUCTIONS FOR COUNTS CHARGING ATTEMPTED MURDER IN AID OF RACKETEERING

2274

**PROPOSED INSTRUCTION NO. 45**

Counts Twenty-Three, Twenty-Five, Twenty-Seven, and Twenty-Nine charge the defendant with attempted murder in aid of racketeering.

To sustain the charge of attempted murder in aid of racketeering, the government must prove each of the five following elements beyond a reasonable doubt:

First, that the Imperial Gangsters were an enterprise;

Second, that the Imperial Gangsters enterprise engaged in "racketeering activity" as defined in 18 U.S.C. Section 1959(b)(1) and 1961(1);

Third, that the Imperial Gangsters enterprise affected interstate commerce;

Fourth, that the defendant committed the attempted murder as charged in the count that you are considering; and

Fifth, that the defendant's purpose in committing the attempted murder was to maintain or increase his position in the Imperial Gangsters enterprise.

If you find from your consideration of all the evidence that the government has proved each of these elements beyond a reasonable doubt, then you should find the defendant guilty of the count you are considering.

If, on the other hand, you find from your consideration of all the evidence that the government has failed to prove any one of these elements beyond a reasonable doubt , then you should find the defendant not guilty of the count you are considering.

*United States v. Phillips*, 239 F.3d 829, 845 (7th Cir. 2001).

*United States v. Martin Anaya*, 2:10 CR 109 RL (Instruction No. 47 in Court's Instructions, Docket Entry #547, at page 56) (modified).

69

**PROPOSED INSTRUCTION NO. 46**

I have already instructed you as to what the terms "murder" under Indiana law,

"enterprise", "racketeering activity" and "interstate commerce" mean when I instructed you on

Count One, and each of those instructions apply here as well.

Court's Instruction No. 41 in <u>US v. Richard Reyes</u>, 2:11 CR 77, Dkt #837, at 44.
*United States v. Martin Anaya*, 2:10 CR 109 RL (Instruction No. 48 in Court's Instructions,
Docket Entry #547, at page 57).

2276

**PROPOSED INSTRUCION NO. 47**

For the purpose of Counts Twenty-Three, Twenty-Five, Twenty-Seven, and Twenty-Nine, the government must prove beyond a reasonable doubt, for each count you are considering, that at least one of the defendant's purposes in committing the crime of violence you are considering was to maintain or increase position in the Imperial Gangsters enterprise. I have instructed you regarding this element in Instruction Number 44 as it relates to Counts Nine, Thirteen, Fifteen, Seventeen, Nineteen, and Twenty-One which charge murder in aid of racketeering, and that instruction applies here as well.

Court's Instruction No. 42 in US v. Richard Reyes, 2:11 CR 77, Dkt #837, at 45.

71

Case: 15-2347 Document: 35 Filed: 07/27/2016 Pages: 4186

**PROPOSED INSTRUCTION NO. 48**

For the purpose of Counts Twenty-Three, Twenty-Five, Twenty-Seven, and Twenty-Nine, and as I have already instructed you previously, under Indiana law, a person commits the offense of attempted murder when the person:

(1) acting with the specific intent to kill the victim;

(2) did point a firearm at the victim and shoot at the victim;

(3) which was conduct constituting a substantial step toward the commission of the intended crime of killing the victim.

Under Indiana law, a person aids, induces, or causes attempted murder when the person:

(1) knowingly or intentionally;

(2) aided another person when the other person was engaged or induced or caused another person to engage;

(3) in conduct that constituted a substantial step toward killing of an individual;

(4) and both persons acted with the specific intent to kill that individual.

Indiana Criminal Code Sections 35-41-5-1(a) and 35-42-1-1 (Attempted Murder) and 35-41-2-4 (Aiding, Inducing or Causing Attempted Murder).

Indiana Pattern Jury Instructions Criminal Instruction No. 2.01(a) (Attempted Murder) and No. 2.11(a) (Aiding, Inducing, or Causing Attempted Murder).

*United States v. Martin Anaya*, 2:10 CR 109 RL (Instruction 51 in Court's Instructions, Docket Entry #547, at page 61) (modified).

72

2278

# INSTRUCTIONS FOR COUNTS CHARGING DISCHARGE, CARRY, OR USE OF A FIREARM DURING AND IN RELATION TO A CRIME OF VIOLENCE (ATTEMPTED MURDER)

## PROPOSED INSTRUCTION NO. 49

Count Twenty-Four charges the defendant with knowingly discharging, carrying, or using a firearm during and in relation to a crime of violence, namely, attempted murder in aid of racketeering as set forth in Count Twenty-Three.    Count Twenty-Six charges the defendant with knowingly discharging, carrying, or using a firearm during and in relation to a crime of violence, namely, attempted murder in aid of racketeering as set forth in Count Twenty-Five. Count Twenty-Eight charges the defendant with knowingly discharging, carrying, or using a firearm during and in relation to a crime of violence, namely, attempted murder in aid of racketeering as set forth in Count Twenty-Seven.    Count Thirty charges the defendant with knowingly discharging, carrying, or using a firearm during and in relation to a crime of violence, namely, attempted murder in aid of racketeering as set forth in Count Twenty-Nine.

In order for you to find the defendant guilty of this charge, the government must prove both of the following elements beyond a reasonable doubt:

1. The defendant committed the crime of attempted murder in aid of racketeering as charged in the count referenced in the count you are considering; and

2. He knowingly discharged, used, or carried a firearm during and in relation to such crime.

If you find from your consideration of all the evidence that the government has proved each of these elements beyond a reasonable doubt as to the charge you are considering, then you should find the defendant guilty of that charge.

If, on the other hand, you find from your consideration of all the evidence that the government has failed to prove any one of these elements beyond a reasonable doubt as to the

74

charge you are considering, then you should find the defendant not guilty of that charge.

*Alleyne v. United States*, __ U.S. __, 133 S.Ct. 2151 (2013) (enhancements for brandishing and discharging a firearm must be proved beyond a reasonable doubt to a jury).
*7TH Circuit Pattern Jury Instructions*, 18 U.S.C. § 924(c) (1)(A)(Using or Carrying a Firearm During and in relation to a Crime of Violence – Elements) (modified).

75

**PROPOSED INSTRUCTION NO. 50**

Counts Twenty-Four, Twenty-Six, Twenty-Eight, and Thirty charge the offense of

knowingly discharging, carrying, or using a firearm during and in relation to the crime of

attempted murder.   The government is not required to prove that the defendant did all three of

these acts with a firearm during and in relation to the crime of attempted murder.   However, the

government is required to prove that the defendant did at least one of these three acts with a firearm

during and in relation to the crime of attempted murder.   To find that the government has proven

this, you must agree unanimously on which particular act with a firearm the defendant did, as well

as all of the other elements of the crime charged.

For example, if some of you find that the government has proved beyond a reasonable

doubt that the defendant discharged a firearm during and in relation to the crime of attempted

murder, and the rest of you were to find that the government has proved beyond a reasonable doubt

that the defendant carried a firearm during and in relation to the crime of attempted murder, then

there would be no unanimous agreement on which act with the firearm the government has proved.

On the other hand, if all of you were to find that the government has proved beyond a reasonable

doubt that the defendant discharged the firearm during and in relation to the attempted murder,

then there would be unanimous agreement.

*7th Circuit Pattern Jury Instructions*, No. 4.04 Unanimity on Specific Acts.

*Alleyne v. United States*, __ U.S. __, 133 S.Ct. 2151 (2013) (enhancements for brandishing and discharging a firearm must be proved beyond a reasonable doubt to a jury).

76

2282

**PROPOSED INSTRUCTION NO. 51**

A defendant aids, counsels, commands, induces, or procures the commission of the offense only if he knowingly and intentionally assists another's use or carrying of a firearm during and in relation to a crime of violence.   This requires the government to prove the following beyond a reasonable doubt:

1.  The defendant knew, either before or during the crime, of another person's use or carrying of a firearm; and,

2.  The defendant intentionally facilitated the use or carrying of the firearm once so informed.

A person who merely aids the underlying offense knowing that a firearm would be used or carried does not aid, counsel, command, induce, or procure the commission of the offense charged in the count you are considering.

If you find from your consideration of all the evidence that the government proved both of these elements beyond a reasonable doubt, then you should find the defendant you are considering guilty of the count you are considering.

If, on the other hand, you find from your consideration of all the evidence that the government failed to prove either of these elements beyond a reasonable doubt, then you should find the defendant you are considering not guilty of the count you are considering.

*7TH Circuit Pattern Jury Instructions*, 18 U.S.C. § 924(c) (1)(A) (Using or Carrying a Firearm During and in Relation to a Crime of Violence or Drug Trafficking Crime --- Accountability Theory Elements).

77

2283

## PROPOSED INSTRUCTION NO. 52

A person "carries" a firearm when he knowingly transports it on his person or in a vehicle or container.

*7<sup>TH</sup> Circuit Pattern Jury Instructions*, 18 U.S.C. § 924(c) (Definition of "Carry").

78

**PROPOSED INSTRUCTION NO. 53**

For purposes of Twenty-Four, Twenty-Six, Twenty-Eight, and Thirty, "use" means the "active employment" of a firearm.   The term is not limited to use as a weapon, and includes brandishing, displaying, bartering, striking with, firing, and attempting to fire a firearm.   A defendant's reference to a firearm calculated to bring about a change in the circumstances of the offense constitutes "use" during and in relation to a crime.   However, mere possession or storage of a firearm, at or near the site of the crime, drug proceeds or paraphernalia is not enough to constitute use of that firearm.

*7th Circuit Pattern Jury Instructions*, 18 U.S.C. Section 924(c)(1)(A) (Definition of "Use").

79

2285

**PROPOSED INSTRUCTION NO. 54**

For purposes of Counts Twenty-Four, Twenty-Six, Twenty-Eight, and Thirty, "during" means at any point within the offense conduct charged.

*7th Circuit Pattern Jury Instructions*, 18 U.S.C. Section 924(c) (Definition of "During"); Court's Instruction No. 45 in US v. Richard Reyes, 2:11 CR 77, Dkt #837, at 48.

2286

## PROPOSED INSTRUCTION NO. 55

A person uses a firearm "in relation to" a crime if there is a connection between the use of the firearm and the crime of violence.   The firearm must have some purpose or effect with respect to the crime; its presence or involvement cannot be the result of accident or coincidence.   The firearm must at least facilitate, or have the potential of facilitating, the crime.

*7th Circuit Pattern Jury Instructions*, 18 U.S.C. Section 924(c) (Definition of "In Relation to"); Court's Instruction No. 46 in US v. Richard Reyes, 2:11 CR 77, Dkt #837, at 49.

81

2287

# FINAL INSTRUCTIONS AND SPECIAL VERDICT

# FORM INSTRUCTIONS FOR COUNTS

# ONE AND TWO

2288

**PROPOSED INSTRUCTION NO. 56**

Once you are all in the jury room, the first thing you should do is choose a foreperson. The foreperson should see to it that your discussions are carried on in an organized way and that everyone has a fair chance to be heard. You may discuss the case only when all jurors are present.

Once you start deliberating, do not communicate about the case or your deliberations with anyone except other members of your jury. You may not communicate with others about the case or your deliberations by any means. This includes oral or written communication, as well as any electronic method of communication, like your phones, computers, or on the Internet, or any other method of communication.

If you need to communicate with me while you are deliberating, send a note through the court security officer. The note should be signed by the foreperson or by one or more members of the jury. To have a complete record of this trial, it is important that you do not communicate with me except by a written note. I may have to talk to the lawyers about your message, so it may take me some time to get back to you. You may continue your deliberations while you wait for my answer. Please be advised that transcripts of trial testimony are not available to you. You must rely on your collective memory of the testimony.

If you send me a message, do not include the breakdown of any votes you may have conducted. In other words, do not tell me that you are split 6–6, or 8–4, or whatever your vote happens to be.

*7th Circuit Pattern Jury Instructions*, 7.01 (Jury Deliberations); Court's Instruction No. 47 in <u>US v. Richard Reyes</u>, 2:11 CR 77, Dkt #837, at 50.

83

**PROPOSED INSTRUCTION NO. 57**

Verdict forms have been prepared for you. You will take these forms with you to the jury room.

[Read the verdict form.]

When you have reached unanimous agreement, your foreperson will fill in, date, and sign the verdict form.   Each of you will sign it.

Advise the court security officer once you have reached a verdict. When you come back to the courtroom, I will read the verdict aloud.

*7th Circuit Pattern Jury Instructions*, 7.02 (Verdict Form); Court's Instruction No. 48 in US v. Richard Reyes, 2:11 CR 77, Dkt #837, at 51.

84

2290

**PROPOSED INSTRUCTION NO. 58**

After reaching your verdict on Count One, conspiracy to commit racketeering, if you find the defendant guilty, there are additional questions that you will need to consider and indicate your response on the verdict form for the questions relating to Count One.

The fourth superseding indictment alleges that the pattern of racketeering activity includes acts involving murder. If you found the defendant guilty of Count One, as indicated on the verdict form for the defendant, you need to determine whether, as part of the pattern of racketeering activity, the defendant committed the murder of Luis Ortiz, the murder of Michael Sessum, the murder of Miguel Mejias, the murder of Harris Brown, the murder of Miguel Colon, and the murder of Latroy Howard.

The fourth superseding indictment further alleges that the pattern of racketeering activity includes acts involving narcotics trafficking.   If you find the defendant guilty of Count One, you need to determine whether as part of the pattern of racketeering activity, he conspired to distribute and possess with intent to distribute the quantities of the drugs listed on the verdict form.

Court's Instruction No. 49 in US v. Richard Reyes, 2:11 CR 77, Dkt #837, at 52.

2291

**PROPOSED INSTRUCTION NO. 59**

If you find the defendant guilty of the offense charged in Count Two, the drug conspiracy, you must then determine the object or objects of the conspiracy that you unanimously find the government has proven beyond a reasonable doubt for the defendant.   You will see on the verdict form a question regarding the objects of the conspiracy for you to answer.

You will then see on the verdict form questions concerning the amount of narcotics involved in the offense charged in Count Two.   You should consider these questions regarding the quantity of narcotics involved only if you have found that the government has proven the defendant guilty of the offense charged in Count Two.

Court's Instruction No. 50 in <u>US v. Richard Reyes</u>, 2:11 CR 77, Dkt #837, at 53.

2292

Case 15-2347   Document 35   Filed 07/27/2016   Pages: 4486

## PROPOSED INSTRUCTION NO.   60

The verdict must represent the considered judgment of each juror. Your verdict, whether it is guilty or not guilty, must be unanimous.

You should make every reasonable effort to reach a verdict. In doing so, you should consult with each other, express your own views, and listen to your fellow jurors' opinions. Discuss your differences with an open mind. Do not hesitate to re-examine your own view and change your opinion if you come to believe it is wrong. But you should not surrender your honest beliefs about the weight or effect of evidence just because of the opinions of your fellow jurors or just so that there can be a unanimous verdict.

The twelve of you should give fair and equal consideration to all the evidence. You should deliberate with the goal of reaching an agreement that is consistent with the individual judgment of each juror.

You are impartial judges of the facts. Your sole interest is to determine whether the government has proved its case beyond a reasonable doubt.

*7th Circuit Pattern Jury Instructions*, 7.03 (Unanimity / Disagreement Among Jurors);
Court's Instruction No. 51 in US v. Richard Reyes, 2:11 CR 77, Dkt #837, at 54.

2293

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

UNITED STATES OF AMERICA     )
     )
v.     )     2:11 CR 77
     )
JUAN BRISENO     )

## GOVERNMENT'S PROPOSED VERDICT FORMS

The United States, by and through the Acting Assistant Attorney General of the Criminal Division and the United States Attorney for the Northern District of Indiana, submit the following proposed verdict forms for trial of Defendant Juan Briseno. Although it may be necessary for the government to request to amend the forms due to trial issues that may arise, the government submits the following as a basis for the Court's verdict forms to the jury.

     Respectfully submitted,

DAVID CAPP     LESLIE R. CALDWELL
UNITED STATES ATTORNEY     ASSISTANT ATTORNEY GENERAL

_____     _____
David J. Nozick     Bruce R. Hegyi
Assistant United States Attorney     Trial Attorney
5400 Federal Plaza, Suite 1500     Capital Case Unit
Hammond, IN 46320     United States Department of Justice
Tel. (219) 937-5655     1331 F Street, N.W., Third Floor
www.david.nozick@usdoj.gov     Washington, D.C. 20530
     Tel. (202) 616-4582
     Cell (703) 536-4774
     www.bruce.hegyi@usdoj.gov

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

UNITED STATES OF AMERICA          )
                                  )
v.                                )           2:11 CR 77
                                  )
JUAN BRISENO                      )

## VERDICT

### COUNT 1

As to the charge in Count One, we, the jury, find the Defendant, JUAN BRISENO:

    Not Guilty _____    Guilty  _____

If you found the Defendant not guilty of Count One, proceed directly to Count Two.

If you found the Defendant guilty of Count One, you will need to answer the following eight questions.

1.    If you found the Defendant JUAN BRISENO guilty of Count One, do you also unanimously find beyond a reasonable doubt that Defendant JUAN BRISENO committed the murder of Luis Ortiz?

        Yes _____              No _____

2.    If you found the Defendant JUAN BRISENO guilty of Count One, do you also unanimously find beyond a reasonable doubt that Defendant JUAN BRISENO committed the murder of Michael Sessum?

        Yes _____              No _____

3.    If you found the Defendant JUAN BRISENO guilty of Count One, do you also unanimously find beyond a reasonable doubt that Defendant JUAN BRISENO committed the murder of Miguel Mejias?

        Yes _____              No _____

4. If you found the Defendant JUAN BRISENO guilty of Count One, do you also unanimously find beyond a reasonable doubt that Defendant JUAN BRISENO committed the murder of Harris Brown?

Yes _____  No _____

5. If you found the Defendant JUAN BRISENO guilty of Count One, do you also unanimously find beyond a reasonable doubt that Defendant JUAN BRISENO committed the murder of Miguel Colon?

Yes _____  No _____

6. If you found the Defendant JUAN BRISENO guilty of Count One, do you also unanimously find beyond a reasonable doubt that Defendant JUAN BRISENO Committed the murder of Latroy Howard?

Yes _____  No _____

7. If you found the Defendant JUAN BRISENO guilty of Count One, do you also unanimously find beyond a reasonable doubt that Defendant JUAN BRISENO conspired to distribute and possess with intent to distribute five (5) kilograms or more of a mixture or substance containing a detectable amount of cocaine?

Yes _____  No _____

8.  If you found the Defendant JUAN BRISENO guilty of Count One, do you also unanimously find beyond a reasonable doubt that Defendant JUAN BRISENO conspired to distribute and possess with intent to distribute one hundred (100) kilograms or more of a mixture or substance containing a detectable amount of marijuana?

Yes _____          No _____


_____
Foreperson                                     Date


_____
Juror                                          Date


_____
Juror                                          Date


_____
Juror                                          Date


_____
Juror                                          Date


_____
Juror                                          Date


_____
Juror                                          Date


_____
Juror                                          Date


_____
Juror                                          Date


_____
Juror                                          Date


_____
Juror                                          Date


_____
Juror                                          Date

Court's Verdict Form, Count One, in US v. Richard Reyes, 2:11 CR 77, Dkt #838, at 2-3.

**COUNT 2**

As to the charge in Count Two we, the jury, find the Defendant, JUAN BRISENO:

Not Guilty _____                    Guilty_____


If you found the Defendant JUAN BRISENO not guilty of Count Two, proceed directly to Count Nine.

If you found the Defendant guilty of Count Two, you will need to answer the following questions.


1.      Which of the following offenses do you unanimously find beyond a reasonable doubt were an object of the conspiracy? (Check all of the following options below that the jury unanimously agrees beyond a reasonable doubt were an object of the conspiracy.)

_____        Distribution of marijuana

_____        Distribution of cocaine

_____        Possession with intent to distribute marijuana

_____        Possession with intent to distribute cocaine


2.      If you found that the distribution of marijuana or the possession with intent to distribute marijuana was an object of the conspiracy, did the conspiracy involve (check the appropriate box below):

_____        less than 50 kilograms of a mixture or substance containing a detectable amount of marijuana

_____        at least 50 kilograms but less than 100 kilograms of a mixture or substance containing a detectable amount of marijuana

_____        more than 100 kilograms of a mixture or substance containing a detectable amount of marijuana

3.      If you found that the distribution of cocaine or the possession with intent to distribute cocaine was an object of the conspiracy, did the conspiracy involve (check the appropriate box below):

      _____        less than 500 grams of a mixture or substance containing a detectable amount of cocaine

      _____        at least 500 grams but less than 5 kilograms of a mixture or substance containing a detectable amount of cocaine

      _____      more than 5 kilograms of a mixture or substance containing a detectable amount of cocaine

| | |
|---|---|
| _____ | _____ |
| Foreperson | Date |
| _____ | _____ |
| Juror | Date |
| _____ | _____ |
| Juror | Date |
| _____ | _____ |
| Juror | Date |
| _____ | _____ |
| Juror | Date |
| _____ | _____ |
| Juror | Date |
| _____ | _____ |
| Juror | Date |
| _____ | _____ |
| Juror | Date |
| _____ | _____ |
| Juror | Date |
| _____ | _____ |
| Juror | Date |
| _____ | _____ |
| Juror | Date |

Court's Verdict Forms, Count Two, in <u>US v. Richard Reyes</u>, 2:11 CR 77, Dkt #838, at 4-5.

**COUNT 9**

As to the charge in Count Nine we, the jury, find the Defendant, JUAN BRISENO:

Not Guilty _____          Guilty _____

_____          _____
Foreperson                     Date

_____          _____
Juror                          Date

_____          _____
Juror                          Date

_____          _____
Juror                          Date

_____          _____
Juror                          Date

_____          _____
Juror                          Date

_____          _____
Juror                          Date

_____          _____
Juror                          Date

_____          _____
Juror                          Date

_____          _____
Juror                          Date

_____          _____
Juror                          Date

_____          _____
Juror                          Date

## COUNT 13

As to the charge in Count Thirteen we, the jury, find the Defendant, JUAN BRISENO:

Not Guilty _____          Guilty _____

_____
Foreperson

_____
Date

_____
Juror

_____
Date

_____
Juror

_____
Date

_____
Juror

_____
Date

_____
Juror

_____
Date

_____
Juror

_____
Date

_____
Juror

_____
Date

_____
Juror

_____
Date

_____
Juror

_____
Date

_____
Juror

_____
Date

_____
Juror

_____
Date

_____
Juror

_____
Date

## COUNT 15

As to the charge in Count Fifteen we, the jury, find the Defendant, JUAN BRISENO:

Not Guilty _____          Guilty _____


_____          _____
Foreperson                      Date

_____          _____
Juror                           Date

_____          _____
Juror                           Date

_____          _____
Juror                           Date

_____          _____
Juror                           Date

_____          _____
Juror                           Date

_____          _____
Juror                           Date

_____          _____
Juror                           Date

_____          _____
Juror                           Date

_____          _____
Juror                           Date

_____          _____
Juror                           Date

_____          _____
Juror                           Date

**COUNT 17**

As to the charge in Count Seventeen we, the jury, find the Defendant, JUAN BRISENO:

Not Guilty _____          Guilty _____


_____          _____
Foreperson                                     Date


_____          _____
Juror                                              Date


_____          _____
Juror                                              Date


_____          _____
Juror                                              Date


_____          _____
Juror                                              Date


_____          _____
Juror                                              Date


_____          _____
Juror                                              Date


_____          _____
Juror                                              Date


_____          _____
Juror                                              Date


_____          _____
Juror                                              Date


_____          _____
Juror                                              Date

## COUNT 19

As to the charge in Count Nineteen we, the jury, find the Defendant, JUAN BRISENO:

Not Guilty _____          Guilty _____

_____          _____
Foreperson                        Date

_____          _____
Juror                             Date

_____          _____
Juror                             Date

_____          _____
Juror                             Date

_____          _____
Juror                             Date

_____          _____
Juror                             Date

_____          _____
Juror                             Date

_____          _____
Juror                             Date

_____          _____
Juror                             Date

_____          _____
Juror                             Date

_____          _____
Juror                             Date

**COUNT 21**

As to the charge in Count Twenty-One we, the jury, find the Defendant, JUAN BRISENO:

Not Guilty _____          Guilty _____

_____          _____
Foreperson                     Date

_____          _____
Juror                          Date

_____          _____
Juror                          Date

_____          _____
Juror                          Date

_____          _____
Juror                          Date

_____          _____
Juror                          Date

_____          _____
Juror                          Date

_____          _____
Juror                          Date

_____          _____
Juror                          Date

_____          _____
Juror                          Date

_____          _____
Juror                          Date

_____          _____
Juror                          Date

## COUNT 23

As to the charge contained in Count 23 we, the Jury, find the Defendant JUAN BRISENO:

Not Guilty _____          Guilty _____

_____          _____
Foreperson                   Date

_____          _____
Juror                        Date

_____          _____
Juror                        Date

_____          _____
Juror                        Date

_____          _____
Juror                        Date

_____          _____
Juror                        Date

_____          _____
Juror                        Date

_____          _____
Juror                        Date

_____          _____
Juror                        Date

_____          _____
Juror                        Date

_____          _____
Juror                        Date

_____          _____
Juror                        Date

**COUNT 24**

As to the charge in Count 24 we, the jury, find the Defendant, JUAN BRISENO:

Not Guilty _____          Guilty_____

If you found the Defendant JUAN BRISENO not guilty of Count 24, proceed directly to Count 25 .

If you found the Defendant guilty of Count 24, you will need to answer the following question.

1.    Which of the following propositions do you unanimously find beyond a reasonable doubt that Defendant JUAN BRISENO knowingly did? (Check all of the following options below that the jury unanimously agrees beyond a reasonable doubt that Defendant JUAN BRISENO knowingly did.)

_____    discharge a firearm during and in relation to the crime of attempted murder in aid of racketeering as charged in Count 23

_____    carry a firearm during and in relation to the crime of attempted murder in aid of racketeering as charged in Count 23

_____    use a firearm during and in relation to the crime of attempted murder in aid of racketeering as charged in Count 23

| | |
|---|---|
| _____ | _____ |
| Foreperson | Date |
| _____ | _____ |
| Juror | Date |
| _____ | _____ |
| Juror | Date |
| _____ | _____ |
| Juror | Date |
| _____ | _____ |
| Juror | Date |
| _____ | _____ |
| Juror | Date |

Case 15-2347     Document 35     Filed 07/27/2016     Pages: 4186

_____                  _____

Juror                                                  Date

_____                  _____

Juror                                                  Date

_____                  _____

Juror                                                  Date

_____                  _____

Juror                                                  Date

_____                  _____

Juror                                                  Date

_____                  _____

Juror                                                  Date

*Alleyne v. United States*, __ U.S. __, 133 S.Ct. 2151 (2013) (enhancements for brandishing and discharging a firearm must be proved beyond a reasonable doubt to a jury).

## COUNT 25

As to the charge contained in Count 25 we, the Jury, find the Defendant JUAN BRISENO:

Not Guilty _____          Guilty _____

_____          _____

Foreperson          Date

_____          _____

Juror          Date

_____          _____

Juror          Date

_____          _____

Juror          Date

_____          _____

Juror          Date

_____          _____

Juror          Date

_____          _____

Juror          Date

_____          _____

Juror          Date

_____          _____

Juror          Date

_____          _____

Juror          Date

_____          _____

Juror          Date

_____          _____

Juror          Date

## COUNT 26

As to the charge in Count 26 we, the jury, find the Defendant, JUAN BRISENO:

Not Guilty _____          Guilty_____


If you found the Defendant JUAN BRISENO not guilty of Count 26, proceed directly to Count 27 .

If you found the Defendant guilty of Count 26, you will need to answer the following question.

1.    Which of the following propositions do you unanimously find beyond a reasonable doubt that Defendant JUAN BRISENO knowingly did? (Check all of the following options below that the jury unanimously agrees beyond a reasonable doubt that Defendant JUAN BRISENO knowingly did.)

_____          discharge a firearm during and in relation to the crime of attempted murder in aid of racketeering as charged in Count 25

_____          carry a firearm during and in relation to the crime of attempted murder in aid of racketeering as charged in Count 25

_____          use a firearm during and in relation to the crime of attempted murder in aid of racketeering as charged in Count 25


_____          _____
Foreperson                                Date

_____          _____
Juror                                Date

_____          _____
Juror                                Date

_____          _____
Juror                                Date

_____          _____
Juror                                Date

_____          _____
Juror                                Date

2311

_____          _____
Juror                            Date


_____          _____
Juror                            Date


_____          _____
Juror                            Date


_____          _____
Juror                            Date


_____          _____
Juror                            Date


_____          _____
Juror                            Date

*Alleyne v. United States*, __ U.S. __, 133 S.CT. 2151 (2013) (enhancements for brandishing and discharging a firearm must be proved beyond a reasonable doubt to a jury).

## COUNT 27

As to the charge contained in Count 27 we, the Jury, find the Defendant JUAN BRISENO:

Not Guilty _____          Guilty _____


_____
Foreperson                                       _____
                                                 Date


_____
Juror                                            _____
                                                 Date


_____
Juror                                            _____
                                                 Date


_____
Juror                                            _____
                                                 Date


_____
Juror                                            _____
                                                 Date


_____
Juror                                            _____
                                                 Date


_____
Juror                                            _____
                                                 Date


_____
Juror                                            _____
                                                 Date


_____
Juror                                            _____
                                                 Date


_____
Juror                                            _____
                                                 Date


_____
Juror                                            _____
                                                 Date


_____
Juror                                            _____
                                                 Date

**COUNT 28**

As to the charge in Count 28 we, the jury, find the Defendant, JUAN BRISENO:

Not Guilty _____          Guilty_____

If you found the Defendant JUAN BRISENO not guilty of Count 28, proceed directly to Count 29 .

If you found the Defendant guilty of Count 28, you will need to answer the following question.

1.      Which of the following propositions do you unanimously find beyond a reasonable doubt that Defendant JUAN BRISENO knowingly did? (Check all of the following options below that the jury unanimously agrees beyond a reasonable doubt that Defendant JUAN BRISENO knowingly did.)

_____          discharge a firearm during and in relation to the crime of attempted murder in aid of racketeering as charged in Count 27

_____          carry a firearm during and in relation to the crime of attempted murder in aid of racketeering as charged in Count 27

_____          use a firearm during and in relation to the crime of attempted murder in aid of racketeering as charged in Count 27

_____          _____
Foreperson                        Date

_____          _____
Juror                             Date

_____          _____
Juror                             Date

_____          _____
Juror                             Date

_____          _____
Juror                             Date

_____          _____
Juror                             Date

_____          _____
Juror                            Date


_____          _____
Juror                            Date


_____          _____
Juror                            Date


_____          _____
Juror                            Date


_____          _____
Juror                            Date


_____          _____
Juror                            Date


*Alleyne v. United States*, __ U.S. __, 133 S.Ct. 2151 (2013) (enhancements for brandishing and discharging a firearm must be proved beyond a reasonable doubt to a jury).

## COUNT 29

As to the charge contained in Count 29 we, the Jury, find the Defendant JUAN BRISENO:

Not Guilty _____          Guilty _____


_____          _____
Foreperson                      Date

_____          _____
Juror                           Date

_____          _____
Juror                           Date

_____          _____
Juror                           Date

_____          _____
Juror                           Date

_____          _____
Juror                           Date

_____          _____
Juror                           Date

_____          _____
Juror                           Date

_____          _____
Juror                           Date

_____          _____
Juror                           Date

_____          _____
Juror                           Date

_____          _____
Juror                           Date

**COUNT 30**

As to the charge in Count 30 we, the jury, find the Defendant, JUAN BRISENO:

Not Guilty _____                    Guilty_____

If you found the Defendant JUAN BRISENO not guilty of Count 30, do not answer the following question.

If you found the Defendant guilty of Count 30, you will need to answer the following question.

1.  Which of the following propositions do you unanimously find beyond a reasonable doubt that Defendant JUAN BRISENO knowingly did? (Check all of the following options below that the jury unanimously agrees beyond a reasonable doubt that Defendant JUAN BRISENO knowingly did.)

    _____    discharge a firearm during and in relation to the crime of attempted murder in aid of racketeering as charged in Count 29

    _____    carry a firearm during and in relation to the crime of attempted murder in aid of racketeering as charged in Count 29

    _____    use a firearm during and in relation to the crime of attempted murder in aid of racketeering as charged in Count 29

| | |
|---|---|
| _____ | _____ |
| Foreperson | Date |
| _____ | _____ |
| Juror | Date |
| _____ | _____ |
| Juror | Date |
| _____ | _____ |
| Juror | Date |
| _____ | _____ |
| Juror | Date |
| _____ | _____ |
| Juror | Date |

_____          _____
Juror                              Date


_____          _____
Juror                              Date


_____          _____
Juror                              Date


_____          _____
Juror                              Date


_____          _____
Juror                              Date


_____          _____
Juror                              Date


*Alleyne v. United States*, __ U.S. __, 133 S.Ct. 2151 (2013) (enhancements for brandishing and discharging a firearm must be proved beyond a reasonable doubt to a jury).

THE UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

_____

UNITED STATES OF AMERICA,
Plaintiff,

      v.

JUAN BRISENO, also known as Tito,
Defendant.
_____

§
§
§
§
§
§
§
§
§
§

CAUSE NO.  2:11-CR-0077-PPS

## GOVERNMENT'S PROPOSED PENALTY PHASE JURY CHARGE

The Government proposes the following Preliminary Penalty Phase and Final Penalty Phase Jury Instructions:

## COURT'S INSTRUCTIONS TO THE JURY FOLLOWING GUILTY VERDICT AND BEFORE START OF PENALTY PHASE

### Introduction

Members of the jury, you have unanimously found the defendant, Juan Briseno aka Tito, guilty of the capital offenses of the murders in aid of racketeering of Luis Ortiz (Count Nine), Michael Sessum (Count Thirteen), Miguel Mejias (Count Fifteen), Harris Brown (Count Seventeen), Miguel Colon (Count Ninteen), and Latroy Howard (Count Twenty-one), as charged in the Fourth Superseding Indictment.  You must now consider, after hearing additional evidence, whether imposition of a sentence of death is justified, or whether the defendant should be sentenced to life imprisonment without the possibility of release.

The law leaves this decision exclusively to you, the jury.  Whichever sentence you choose – death, or life imprisonment without the possibility of release – the Court is required to impose that sentence.

1

2318

I am now providing you some preliminary instructions to give you an overview of your role in making the penalty determination. I will give you more detailed instructions after the penalty-phase evidence is concluded, and I will also provide you with a Special Verdict Form that will function in part as a check list, which will help you make your decisions in the required order and will assist you in organizing your findings.

In making your penalty findings, you may consider all of the evidence you heard at the earlier portion of the trial as well as any additional evidence to be presented at this sentencing hearing. You will also follow the same instructions I provided to you during the guilt phase regarding consideration of the evidence and witness credibility determinations, which I will restate for you after the penalty evidence. As in the guilt phase of the trial you may take notes, but they are only aids to your memory. If your memory differs from your notes, you should rely on your memory and not on the notes. The notes are not evidence. A juror who has not taken notes should rely on his or her independent recollection, without being unduly influenced by other jurors' notes. Notes are not entitled to any greater weight than each juror's recollection or impression of the evidence.

As I advised you before the trial, not all defendants convicted of murder are legally eligible to receive a death sentence. The law does not presume that the death penalty is appropriate or required for any defendant. So there is a procedure you will follow at the start of your deliberations to determine if Juan Briseno aka Tito is, first, legally eligible for a death sentence. If you find that he is not, then your deliberations will be over.

If, however, the Government proves beyond a reasonable doubt the facts that make the defendant legally eligible for a death sentence, then you will enter a second stage of the procedure in which you decide whether or not a death sentence should be imposed. That

2

2319

involves a weighing process in which you will consider information favorable to the defendant along with evidence against him, and then decide whether a sentence of death is appropriate.

I will explain all this to you in more detail after you've heard the evidence. But, as an overview, what you will consider in deciding if the Government has proven the defendant's legal eligibility for the death sentence is threefold.

First, you will decide if the Government has proven beyond a reasonable doubt that on the various dates of the capital crimes charged in the indictment, the defendant was at least eighteen years of age.

Second, you will decide whether the Government has proven at least one of the following Threshold Intent Factors. You will decided as to each of the six murder victims (Luis Ortiz, Michael Sessum, Miguel Mejias, Harris Brown, Miguel Colon, and Latroy Howard) whether or not the defendant: (a) intentionally killed that victim; or (b) intentionally inflicted serious bodily injury that resulted in the death of that victim; or (c) intentionally participated in an act, contemplating that a person's life would be taken and intending that lethal force would be used in connection with a person (other than one of the participants in the offense), and that victim died as a direct result of the act; or (d) intentionally and specifically engaged in an act of violence, knowing that the act created a grave risk of death to a person (other than one of the participants in the offense), such that participation in the act constituted a reckless disregard for human life, and that victim died as a direct result of the act.

Third, you will decide whether the Government has proven at least one of the alleged Statutory Aggravating Factors. The factors you will consider at this point are called Statutory Aggravating Factors because Congress specifically listed them in a statute. They are: (a) the defendant, in the commission of the capital offenses of the murders of Luis Ortiz, Michael Sessum, Miguel Mejias, Harris Brown, Miguel Colon, and Latroy Howard after substantial

3

planning and premeditation to cause death; (b) the defendant, in the commission of the capital offenses of the murders of Michael Sessum, Miguel Mejias, and Miguel Colon knowingly created a grave risk of death to one or more persons in addition to the victim of the offense; or (c) the defendant intentionally killed or attempted to kill more than one person, those persons being Michael Sessum and Miguel Mejias, in a single criminal episode. In your deliberations, based on the evidence presented, you may find that the Government has proven one, several, or all of these factors.

Before you can consider the application of the death penalty, it is necessary that you find the <u>Age</u> requirement, at least one <u>Threshold Intent Factor</u> and at least one <u>Statutory Aggravating Factor</u> unanimously, beyond a reasonable doubt. If you do decide that such matters have been proven, so that the defendant is legally eligible for a sentence of death, you will then consider what are called the <u>Non-statutory Aggravating Factors</u> presented by the Government, which also must be proven to you unanimously and beyond a reasonable doubt.

In this case, the Non-statutory Aggravating Factors that you will consider are: (a) the defendant is a continuing danger to the lives and safety of other persons and he is likely to commit criminal acts of violence in the future as evidenced by (i) a low potential for rehabilitation as demonstrated by repeated violent criminal acts; (ii) a willingness to take human life and a lack of remorse for his acts of violence and attempted acts of violence as demonstrated by statements that he made following these violent acts; and/or (iii) his stated desire to impose a rule requiring fellow members of the Imperial Gangsters to shoot at rivals on sight, and that this factor tends to support imposition of the death penalty; (b) the defendant was found guilty in the trial of other criminal activity, including additional murders and attempted murders, and that this factor tends to support imposition of the death penalty; (c) the defendant demonstrated an allegiance to and active membership in the Imperial Gangsters, a criminal street gang, and that

this factor tends to support imposition of the death penalty; and (d) the defendant caused injury, harm, and loss to any or all of Luis Ortiz, Michael Sessum, Miguel Mejias, Harris Brown, Miguel Colon, and Latroy Howard, or their families, or friends, and that this factor tends to support imposition of the death penalty.

Once you have determined which Aggravating Factors, both statutory and non-statutory, have been proven, you will then determine whether the defendant has proven any Mitigating Factors by the lesser standard of proof called "the preponderance of the evidence." Any one juror may find a Mitigating Factor; in other words, unanimity is not required.

The terms "Aggravating Factors" and "Mitigating Factors" have to do with the circumstances of the crime, or the record, character, or background of the defendant, and the overall severity of the offense. The word "aggravate" means "to make worse or more offensive" or "to intensify." The word "mitigate" means "to make less severe" or "to moderate." An Aggravating Factor, then, is a fact or circumstance which would tend to support imposition of the death penalty. A Mitigating Factor is any aspect of a defendant's character, record or background, or any circumstance of the offense, which would tend to indicate that the defendant should be sentenced to life imprisonment without the possibility of release or some other lesser sentence, instead of death.

After you have made findings on Aggravating and Mitigating Factors, each of you will then engage in a weighing process. You must unanimously decide whether the Aggravating Factor or Factors you have found sufficiently outweigh any Mitigating Factor or Factors you have found so as to justify the imposition of a death sentence.

If, after weighing the Aggravating and Mitigating Factors, you the jury unanimously determine that a sentence of death is appropriate, you shall enter a decision on the Special

<div align="center">5</div>

Verdict Form to that effect and the Court shall thereafter impose on the defendant a sentence of death.

If, after weighing the Aggravating and Mitigating Factors, you the jury unanimously determine that a sentence of life without the possibility of release is appropriate, you shall enter a decision on the Special Verdict Form to that effect and the Court shall thereafter impose on the defendant a sentence of life imprisonment without the possibility of release.

Again, whether or not the circumstances in this case justify a sentence of death is a decision that the law leaves entirely to you. You should not take anything I have said or done during the guilt phase or this sentencing phase as indicating what I think of the evidence or what I think your decision should be.

With that overview, we will commence the penalty-phase evidence.

\* \* \* \* \* \* \* \* \*

## COURT'S INSTRUCTIONS TO THE JURY
## FOLLOWING PENALTY-PHASE EVIDENCE

Members of the Jury:

It is now my duty to instruct you on the rules of law that you must follow and apply in imposing a sentence on the defendant. When I have finished, you will go into the jury room, choose a foreperson (who may or may not be the same foreperson who served during the earlier deliberations on guilt) and begin your penalty deliberations.

6

## Burden of Proof

Under the federal death penalty statute, there are certain requirements that must be met before you may consider a death sentence. As I have instructed you, you must first find the Government proved the age requirement, at least one intent factor and at least one Statutory Aggravating Factor. Your findings on these matters must be unanimous and beyond a reasonable doubt.

You may also find Non-statutory Aggravating Factors, which are those not specifically set out by Congress in the federal death penalty statute, but which have been specifically identified by the government for your consideration in this case. Again, your finding that any Non-statutory Aggravating Factor exists must be unanimous and beyond a reasonable doubt.

The defendant does not have the burden of disproving the existence of anything the Government seeks to prove. The burden is wholly upon the Government to prove its contentions beyond a reasonable doubt; the law does not require the defendant to produce any evidence at all. If the defendant has chosen to assert any Mitigating Factors, he has the burden of proving them. However, there is a different standard of proof as to Mitigating Factors. You need not be convinced beyond a reasonable doubt about the existence of a Mitigating Factor; you need only be convinced by a preponderance of the evidence. This is a lesser standard of proof under the law than proof beyond a reasonable doubt.

Any evidence relating to Mitigating Factors should be fully discussed by all of you to ensure that each juror considers the matter carefully. I instruct you, however, that the law does not require unanimity with regard to Mitigating Factors. Any one of you may find the existence of a Mitigating Factor, regardless of the number of other jurors who may agree, and anyone who so finds may consider and weigh that Mitigating Factor in determining the appropriate sentence

7

in this case.  The Verdict Form provides a space for you to indicate the number of jurors who find a particular Mitigating Factor.

## General Considerations

In deciding the issues now before you, you may consider any evidence (to the extent you find it credible and relevant), direct or circumstantial, that was presented during the guilt phase of the trial and any information that was presented during the penalty phase of the trial, including any matters to which the parties have stipulated.  You may also make deductions and reach conclusions that reason and common sense lead you to draw from facts which have been established from the testimony and other evidence and information in the case.  While you must consider all the evidence and information, you are not required to accept any of the evidence or information as true or accurate.  You alone determine issues of credibility and how much weight, if any, to give testimony and other evidence or information.  But you may only consider evidence received in this courtroom in making your determination.  And, as in the guilt phase, the arguments of the attorneys and the comments and rulings of the Court are not evidence.

**[EITHER RE-PRODUCE VERBATIM THE GUILT PHASE INSTRUCTIONS ON CREDIBLITY, EVAULATION OF THE EVIDENCE, EXPERT WITNESSES, ACCOMPLICE TESTIMONY, ETC., OR ELSE REFER JURORS BACK TO THOSE EARLIER INSTRUCTIONS.**

I will now provide you with additional instructions on the Age requirement, Threshold Intent Factors, Aggravating Factors, and Mitigating Factors that are being presented to you in this case.  I again stress the importance of your giving careful and thorough consideration to all evidence before you.  I also remind you of your obligation to strictly follow the applicable law.

8

**Age of defendant (Section I of Special Verdict Form)**

The first step in your deliberations should be to determine whether the Government has proven beyond a reasonable doubt that the defendant was at least eighteen years old at the time the capital crime(s) charged in the Indictment were committed, that is, on September 26, 2007 (Luis Ortiz), June 3, 2008 (Michael Sessum and Miguel Mejias), October 9, 2008 (Harris Brown), February 7, 2010 (Miguel Colon), and/or June 19, 2010 (Latroy Howard).

If your verdict is that the Government failed to prove that the defendant was at least eighteen years old on any of these dates, then your deliberations will be over. You will sign the final certification in Section VII of the verdict form and advise the Court.

If, however, you find unanimously and beyond a reasonable doubt that the defendant was at least eighteen years old at the time on any, some, or all of September 26, 2007 (Luis Ortiz), June 3, 2008 (Michael Sessum and Miguel Mejias), October 9, 2008 (Harris Brown), February 7, 2010 (Miguel Colon), and/or June 19, 2010 (Latroy Howard), you will so note on the Special Verdict Form. You should then proceed to the second step in your deliberations, the determination of the required intent factor(s).

**Threshold Intent Factors (Section II of Special Verdict Form)**

The second decision you must make before you can consider imposition of the death penalty is whether the defendant (a) intentionally killed Luis Ortiz, Michael Sessum, Miguel Mejias, Harris Brown, Miguel Colon, and/or Latroy Howard; or (b) intentionally inflicted serious bodily injury that resulted in the death of Luis Ortiz, Michael Sessum, Miguel Mejias, Harris Brown, Miguel Colon, and/or Latroy Howard; or (c) intentionally participated in an act, contemplating that a person's life would be taken and intending that lethal force would be used in connection with a person (other than one of the participants in the offense), and Luis Ortiz, Michael Sessum, Miguel Mejias, Harris Brown, Miguel Colon, and/or Latroy Howard died as a

9

direct result of the act; or (d) intentionally and specifically engaged in an act of violence, knowing that the act created a grave risk of death to a person (other than one of the participants in the offense), such that participation in the act constituted a reckless disregard for human life, and Luis Ortiz, Michael Sessum, Miguel Mejias, Harris Brown, Miguel Colon, and/or Latroy Howard died as a direct result of the act.

An "intentional act" as described in intent factors (a), (b), (c), and (d) means an act done voluntarily and with the specific intent that it be committed – that is to say, with bad purpose, either to disobey or disregard the law – not an act done by ignorance, accident, or mistake.

A person of sound mind and discretion may be presumed to have intended the ordinary, natural, and probable consequences of his knowing and voluntary acts.  However, this presumption is not required.  Thus, you may infer from the defendant's conduct that he acted intentionally if you find:  (1) that the defendant was a person of sound mind and discretion; (2) that a person's death was an ordinary, natural, and probable consequence of the defendant's acts (even if the person's death did not actually result, in the case of an attempt); and (3) that the defendant committed these acts knowingly and voluntarily.  But once again, you are not required to make such an inference.

"Serious bodily injury" means a significant or considerable amount of injury or damage to the victim's body which involves a substantial risk of death, unconsciousness, extreme physical pain, protracted and obvious disfigurement, or protracted loss or impairment of the function of a bodily member, organ, or mental faculty.

"Lethal force" is defined as force capable of causing death or great bodily harm.

"Grave risk of death" means a significant and considerable possibility that a person other than one of the participants in the crime might be killed.

You may consider the statements made by the defendant, the things that he did, and all the circumstances surrounding his actions and the killing of the victim, in determining whether he participated in or did an act with the intent I have just described.

It is not necessary that you find all of the intent factors I described in (a)-(d), above; one is sufficient. If you find one or more of these factors unanimously and beyond a reasonable doubt, you will so note on the Special Verdict Form. However, if you find that the Government did not prove any of the intent factors, then your deliberations will be over. You will sign the Certification in Section VII of the Special Verdict Form and advise the Court.

**Statutory Aggravating Factors (Section III of Special Verdict Form)**

If you find that the Government has met its burden of proof on the first and second steps (age and threshold intent factor), your next step is to decide whether it has proven <u>at least one</u> of the following four Statutory Aggravating Factors.

The <u>first</u> Statutory Aggravating Factor is that the defendant committed the offense(s) after substantial planning and premeditation to cause the death of a person. "Planning" means mentally formulating a method for doing something or achieving some end. "Premeditation" means thinking or deliberating about something and deciding whether to do it beforehand. "Substantial" planning and premeditation means a considerable or significant amount. You must find that both the planning and the premeditation were more than the minimum amount necessary to cause the death. There is no requirement, however, for the Government to prove that the defendant planned or deliberated for any particular period of time before the victim was killed, or for that matter, that the defendant intended to kill a specific victim.

The <u>second</u> Statutory Aggravating Factor is that the defendant, in the commission of the capital offenses of the murders of Luis Ortiz, Michael Sessum, Miguel Mejias, Harris Brown, Miguel Colon, and Latroy Howard, or in escaping apprehension for the offenses, knowingly

11

created a grave risk of death to one or more persons in addition to that particular murder victim. In this case, the Government alleges that the defendant knowingly created a grave risk of death to more than one person when he killed Michael Sessum, Miguel Mejias, and Miguel Colon. "Persons in addition to the victim" include innocent bystanders in the zone of danger created by the defendant's acts, but do not include other participants in the offense(s).  "Grave risk of death" is defined above.  "Knowingly" creating such a risk means that the defendant was conscious and aware that his conduct in the course of committing the offense(s) might have this result.

The <u>third</u> Statutory Aggravating Factor is that the defendant intentionally killed or attempted to kill more than one person in a single criminal episode.  "More than one person" means one or more other people in addition to any single victim.  In this case, the Government alleges that the defendant intentionally killed Michael Sessum and Miguel Mejias in a single criminal episode.  "A single criminal episode" is an act or series of related criminal acts which occur within a relatively limited time and place, or are directed at the same person, or are part of a continuous course of conduct related in time, place, or purpose.

As I mentioned earlier, you must unanimously find that at least one of these Statutory Aggravating Factors has been proven beyond a reasonable doubt for you to consider the death penalty any further.  You may find that all of them have been proven, but proof of only one is necessary.  If you find one or more of these Statutory Aggravating Factors unanimously and beyond a reasonable doubt, you will so note on the Special Verdict Form.  If you find none has been proven, your deliberations will be over.  You will sign the Certification in Section VII of the Verdict Form and advise the Court.

### **Non-Statutory Aggravating Factors (Section IV of Special Verdict Form)**

The Government maintains that there are additional Aggravating Factors present in this case, which we refer to as "Non-statutory Aggravating Factors."  It is <u>not</u> necessary that the

2329

Government prove any of these factors in order for you to consider the death penalty.  I have already described what must necessarily be proven for that consideration.  In contrast, a Non-statutory Aggravating Factor may be considered as persuasive rather than as legally necessary.  However, because you will be weighing all proven Aggravating Factors (Statutory and Non-statutory) against all Mitigating Factors, you should first determine whether they have been proven to you unanimously and beyond a reasonable doubt.  If so, it is for you to determine how much influence they should have on your decision.  Only the Aggravating Factors submitted by the Government and which I will now describe in these instructions may be considered by you in determining the appropriate penalty.  The law does not permit you to consider any other factors in aggravation which you might think of on your own.

The Non-statutory Aggravating Factors that the Government has alleged against the defendant are as follows:

1.      <u>Future Dangerousness</u>.  The defendant represents a continuing danger to the lives and safety of other persons, as evidenced by his low potential for rehabilitation as demonstrated by repeated violent criminal acts; a willingness to take human life and a lack of remorse for his acts of violence and attempted acts of violence as demonstrated by statements that he made following these violent acts; and his stated desire to impose a rule requiring fellow members of the Imperial Gangsters to shoot at rivals on sight, and his future dangerousness tends to support the imposition of the death penalty.

2.      <u>Contemporaneous Convictions for Other Criminal Activity</u>.  The defendant was convicted at trial of other criminal activity, including additional murders or attempted murders, and this additional criminal activity tends to support the imposition of the death penalty.

3.        <u>Demonstrated Allegiance to Criminal Street Gang</u>.  The defendant demonstrated an allegiance to and membership in the Imperial Gangsters, a criminal street gang, and this allegiance and membership tends to support the imposition of the death penalty.

4.        <u>Victim Impact</u>.  The defendant caused loss, injury and harm to the victims:  Luis Ortiz, Michael Sessum, Miguel Mejias, Harris Brown, Miguel Colon, and Latroy Howard, and the victims' families and friends, and this harm tends to support the imposition of the death penalty.

If you find one or more of these Non-statutory Aggravating Factors unanimously and beyond a reasonable doubt, you will so note on the Special Verdict Form.

### Mitigating Factors (Section V of Special Verdict Form)

You must next consider any Mitigating Factors that may be present in this case.  A Mitigating Factor is not offered to justify or excuse the defendant's conduct.  Indeed, if a homicide was justified or excusable, a defendant would not be guilty or punishable for it.  Rather, a Mitigating Factor is simply a fact about the defendant's life or character, or about the circumstances surrounding the offense(s) that would suggest, in fairness, that a sentence of death is not the appropriate punishment, or that a sentence of life in prison without any possibility of release is the more appropriate punishment.

As mentioned earlier, any one juror may find a Mitigating Factor; in other words, unanimity is not required.  Also mentioned earlier, the burden of proof on the defendant is by a preponderance of the evidence, not beyond a reasonable doubt.  Any of you who finds a Mitigating Factor may consider and weigh that factor in determining the appropriate sentence in this case.  The Special Verdict Form provides a space for you to indicate the number of jurors who find a particular Mitigating Factor.

14

**Mitigating Factors to Consider**

The defendant has proposed the following Mitigating Factors for your consideration in this case:

**[DEFENDANT TO LIST; Include any necessary definitions.]**

**Additional Mitigating Factors**

You are also permitted to consider anything else about the commission of the crime or about the defendant's background or character that would mitigate against imposition of the death penalty. Thus, if there are any such Mitigating Factors, whether or not specifically argued by the defense, but which are established by a preponderance of the evidence, you are free to consider them in your deliberations. There is a space on the Special Verdict Form for you to fill in any such additional Mitigating Factors. However, if you find any such Mitigating Factor but you are simply not able to articulate it with any specificity, you may still give that Mitigating Factor your full consideration without noting it on the Special Verdict Form.

In short, your discretion in considering mitigating factors is much broader than your discretion in considering aggravating factors. This was a choice expressly made by Congress in enacting the capital punishment statute.

**Weighing Aggravation and Mitigation**

If you unanimously find that the government proved beyond a reasonable doubt

- that the defendant was over 18 years of age at the time of the crime, and

- the existence of at least one intent factor, and

- the existence of at least one statutory aggravating factor;

15

and after you then decide whether the Government proved the existence of any additional Aggravating Factors submitted to you, and after you then decide whether the defendant proved the existence of any Mitigating Factors, you will finally engage in a weighing process.

In determining the appropriate sentence, all of you must weigh the Aggravating Factor or Factors that were proven against the Mitigating Factor or Factors that any of you individually, or with others, found to exist.

Although I have previously instructed you that you must unanimously find the age requirement and threshold intent factor(s) proven beyond a reasonable doubt for the defendant to be eligible for a sentence of death, I instruct you now that the age requirement and threshold intent factor(s) shall not be considered when weighing the Aggravating and Mitigating Factors. You must weigh only the Statutory and Non-statutory Aggravating Factors that you unanimously find to exist against any Mitigating Factors that you individually, or with others, find to exist.

In engaging in the weighing process, you must avoid any influence of passion, prejudice, or undue sympathy. Your deliberations should be based upon the evidence you have seen and heard and the law on which I have instructed you.

The process of weighing Aggravating and Mitigating Factors against each other or weighing Aggravating Factors alone, if there are not Mitigating Factors, in order to determine the proper punishment is not a mechanical process. In other words, you should not simply count the number of Aggravating and Mitigating Factors and reach a decision based on which number is greater. You should instead consider the weight and value of each factor to make a unique, individualized, and reasoned moral judgment about the appropriateness of the death penalty as a punishment for each capital offense.

The law contemplates that different Factors may be given different weights or values by different jurors. Thus, you may find that one Mitigating Factor outweighs all Aggravating

16

Factors combined, or that the Aggravating Factors proven do not, standing alone, justify imposition of a sentence of death. If one or more of you so finds, then you will not be unanimously in favor of a sentence of death, and you will then consider a sentence of life in prison without possibility of release. On the other hand, you may unanimously find that a particular Aggravating Factor sufficiently outweighs all Mitigating Factors combined to justify a sentence of death. Each juror must decide what weight or value is to be given to a particular Aggravating or Mitigating Factor in the decision-making process. In other words, it is not an arithmetic analysis but a qualitative weighing.

You will decide the credibility of witnesses as you did in the guilt phase of the trial, in accordance with the same instructions I gave you then, and again here today. You must consider all of the evidence but you need not accept all of the evidence as true or accurate.

Again, whether or not the circumstances in this case justify a sentence of death is a decision that the law leaves entirely to you.

## Determination of sentence (Section VI of Special Verdict Form)

### Sentence of Death

If you unanimously determine as to any one or more or more of the murders of Luis Ortiz, Michael Sessum, Miguel Mejias, Harris Brown, Miguel Colon and/or Latroy Howard that the aggravating factor(s) found to exist sufficiently outweigh the mitigating factor(s) found to exist to justify a sentence of death, or in the absence of any mitigating factors, that the aggravating factor(s) alone are sufficient to justify a sentence of death, you shall so specify in Section VI.A. on the Special Verdict Form.

### Sentence of Life in Prison Without the Possibility of Release

If you unanimously determine as to any one or more or more of the murders of Luis Ortiz, Michael Sessum, Miguel Mejias, Harris Brown, Miguel Colon and/or Latroy Howard that

17

Case: 15-2347   Document: 35   Filed: 07/27/2016   Pages: 4186

– because the Aggravating Factor(s) found to exist do not sufficiently outweigh all the Mitigating Factor(s) found to exist to justify a sentence of death, or in the absence of any Mitigating Factors, the Aggravating Factor(s) alone are not sufficient to justify a sentence of death – a sentence of life imprisonment without the possibility of release is appropriate, you shall so specify in Section VI.B. of the Special Verdict Form.  In the federal system, a sentence of life imprisonment without the possibility of release means just that – the defendant will never be released from prison.  There is no parole in the federal system.

### Duty to deliberate and consequences of deliberations

It is your duty as jurors to discuss the issue of punishment with one another in an effort to reach agreement, if you can do so.  Each of you must decide these questions for yourselves, but only after full consideration of the evidence with the other members of the jury.  While you are discussing this matter, do not hesitate to re-examine your own opinion, and to change your mind if you become convinced that you are wrong.  But do not give up your honest beliefs as to the weight or the effect of the evidence solely because others think differently or simply to reach a verdict.

At the end of your deliberations, if you unanimously determine that the defendant should be sentenced to death, or to life imprisonment without possibility of release, the Court is required to impose that sentence.

I also remind you, ladies and gentlemen, that you are never required to vote for a death sentence.  The decision whether the sentence should be death or life imprisonment must be the decision of each juror.

### Right to justice without discrimination

Finally, in your sentencing deliberations, you must not consider the race, color, religious beliefs, national origin, or gender of either the defendant or the victim.  Whatever decision you

return, each of you is required by law to sign the certification in Section VII of the Special

Verdict Form attesting to the fact that you have followed this instruction. You must be

convinced in your own mind that you would have reached the same decision regarding sentence

regardless of the race, color, religious beliefs, national origin, or gender of the defendant or the

victim.

<center>[IF APPLICABLE:] **[Defendant's Right Not to Testify]**</center>

[The defendant did not testify. There is no burden upon a defendant to prove that he

should not be sentenced to death. The burden is entirely on the prosecution to prove that a

sentence of death is justified. Accordingly, the fact that a defendant did not testify must not be

considered by you in any way, or even discussed, in arriving at your decision.]

<center>**Special Verdict Form**</center>

I have mentioned several times the form entitled "Special Verdict Form," which will

assist you during your deliberations. You are required to record your decisions on this form.

The Special Verdict Form provides space for you to indicate your decisions as to each capital

count charged in the Fourth Superseding Indictment, and by this I mean: Count Nine (Luis

Ortiz), Count Thirteen (Michael Sessum), Count Fifteen (Miguel Mejias), Count Seventeen

(Harris Brown), Count Nineteen (Miguel Colon), and Count Twenty-one (Latroy Howard). You

must consider each count separately and record your findings for each count in the appropriate

spaces on the Special Verdict Form.

Section I of the Special Verdict Form is where you will record your findings on the

defendant's Age; Section II is where you will record your findings on the Threshold Intent

Factors; Section III is where you will record your findings on Statutory Aggravating Factors.

Section IV is where you will record your findings on Non-statutory Aggravating Factors.

Section V is where you will record your findings on Mitigating Factors. Section VI is where you

<center>19</center>

will record your sentence determinations, and Section VII contains the non-discrimination

Certification each juror must read and sign. You are each required to sign the Special Verdict

Form.

## Concluding instruction

If you should desire to communicate with me at any time during your deliberations, the

foreperson should write your message or question and pass the note to the Court Security Officer

who will bring it to my attention.

I shall respond as promptly as possible, either in writing or by having you return to the

courtroom so that I can address you orally.

I caution you, however, concerning any message or question you might send, that you

should not tell me any details of your deliberations or how many of you are voting in a particular

way on any issue.

Let me remind you again that nothing that I have said in these instructions – and nothing

that I have said or done during either phase of the trial – has been said or done to suggest to you

what I think your decision should be. What the decision should be is your exclusive duty and

responsibility.

You may now retire to consider your verdict.

THE UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br><br>v.<br><br>JUAN BRISENO, also known as Tito,<br>Defendant. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | CAUSE NO.   2:11-CR-0077-PPS |

# <u>SPECIAL VERDICT FORM</u>

## <u>SECTION I.   THRESHOLD INTENT FACTORS</u>

### *General Instructions for Section I*

For each of the following, indicate "YES" or "NO" after the appropriate finding by the jury.

The finding must be unanimous.

**A.   <u>Defendant's Age</u>**

Whether, beyond a reasonable doubt, the defendant JUAN BRISENO aka Tito was at least

eighteen (18) years of age on the following dates:

1.    September 26, 2007 (Luis Ortiz)

YES _____                              NO _____

2.    June 3, 2008 (Michael Sessum and Miguel Mejias)

YES _____                              NO _____

3.    October 9, 2008 (Harris Brown)

YES _____                              NO _____

4.      February 7, 2010 (Miguel Colon)

YES _____                          NO _____

5.      June 19, 2010 (Latroy Howard)

YES _____                          NO _____


**B.   First Threshold Intent Factor**

Whether, beyond a reasonable doubt, the defendant JUAN BRISENO aka Tito

intentionally killed:

1.      Luis Ortiz

YES _____                          NO _____

2.      Michael Sessum

YES _____                          NO _____

3.       Miguel Mejias

YES _____                          NO _____

4.      Harris Brown

YES _____                          NO _____

5.      Miguel Colon

YES _____                          NO _____

6.      Latroy Howard

YES _____                          NO _____

2339

**C.  Second Threshold Intent Factor**

Whether, beyond a reasonable doubt, the defendant JUAN BRISENO aka Tito

intentionally inflicted serious bodily injury which resulted in the death of:

1.    Luis Ortiz

YES _____                              NO _____

2.    Michael Sessum

YES _____                              NO _____

3.    Miguel Mejias

YES _____                              NO _____

4.    Harris Brown

YES _____                              NO _____

5.    Miguel Colon

YES _____                              NO _____

6.    Latroy Howard

YES _____                              NO _____


**D.  Third Threshold Intent Factor**

Whether, beyond a reasonable doubt, the defendant JUAN BRISENO aka Tito

intentionally participated in an act, contemplating that the life of a person would be taken or

intending that lethal force would be used in connection with a person, other than one of the

participants in the offense, and the following victim died as a direct result of the act:

1.    Luis Ortiz

YES _____                              NO _____

3

2.    Michael Sessum

YES _____                              NO _____

3.    Miguel Mejias

YES _____                              NO _____

4.    Harris Brown

YES _____                              NO _____

5.    Miguel Colon

YES _____                              NO _____

6.    Latroy Howard

YES _____                              NO _____


**E.  Fourth Threshold Intent Factor**

Whether, beyond a reasonable doubt, the defendant JUAN BRISENO aka Tito

intentionally and specifically engaged in an act of violence, knowing that the act created a grave

risk of death to a person, other than one of the participants in the offense, such that participation in

the act constituted a reckless disregard for human life and the following victim died as a direct

result of the act:

1.    Luis Ortiz

YES _____                              NO _____

2.    Michael Sessum

YES _____                              NO _____

3.      Miguel Mejias

YES _____                                    NO _____

4.      Harris Brown

YES _____                                    NO _____

5.      Miguel Colon

YES _____                                    NO _____

6.      Latroy Howard

YES _____                                    NO _____


### *Concluding Instructions for Section I*

If you indicated that the United States **has *not* established** at least one of the Threshold Intent Factors in this Section I, then stop your deliberations, cross out Section II of this Special Verdict Form, and proceed to Section VI.   Each juror should carefully read the statement in Section VI, and sign in the appropriate place if the statement accurately reflects the manner in which he or she reached his or her decision.   You should then advise the court that you have reached a decision.

If you indicated that the United States **has established** at least one (or more) of the Threshold Intent Factors in this Section I, proceed to Section II, which follows.

5

# SECTION II.   STATUTORY AGGRAVATING FACTORS

## *General Instructions for Section II*

For each of the following, indicate "YES" or "NO" for the appropriate finding by the jury. The findings must be unanimous.

### A.   Substantial Planning and Premeditation

Whether, beyond a reasonable doubt, defendant JUAN BRISENO aka Tito committed the offense of murder after substantial planning and premeditation to cause death of:

1.   Luis Ortiz

YES _____                                NO _____

2.   Michael Sessum

YES _____                                NO _____

3.    Miguel Mejias

YES _____                                NO _____

4.   Harris Brown

YES _____                                NO _____

5.   Miguel Colon

YES _____                                NO _____

6.   Latroy Howard

YES _____                                NO _____

2343

**B.** **Grave Risk of Death to Additional Persons**

Whether, beyond a reasonable doubt, defendant JUAN BRISENO aka Tito, in the commission of the offense, or in escaping apprehension for the violation of the offense, knowingly created a grave risk of death to one or more persons in addition to the listed victim:

1.      Michael Sessum

YES _____                              NO _____

2.       Miguel Mejias

YES _____                              NO _____

3.      Miguel Colon

YES _____                              NO _____

**C.** **Intentionally Kill or Attempt to Kill More Than One Person in a Single Episode**

Whether, beyond a reasonable doubt, defendant JUAN BRISENO aka Tito intentionally killed or attempted to kill more than one person in a single criminal episode:

1.      Michael Sessum

YES _____                              NO _____

2.      Miguel Mejias

YES _____                              NO _____

## *Concluding Instructions for Section II*

If you indicated that the United States **has *not* established** at least one of the Statutory Aggravating Factors in this Section II, then stop your deliberations, and proceed to Section VI of

7

this Form.   Each juror should then carefully read the statement in Section VI, and sign in the appropriate place if the statement accurately reflects the manner in which he or she reached his or her decision.   You should then advise the court that you have reached a decision.

If you indicated that the United States **has established** at least one or more of the Threshold Intent Factor(s) in Section I, and indicated that the United States **has established** at least one or more of the Statutory Aggravating Factors in this Section II, then fill in Sections I and II of the Special Verdict Form and proceed to Section III, which follows.

## III.   NON-STATUTORY AGGRAVATING FACTORS

### *General Instructions for Section III*

For each of the following, indicate "YES" or "NO" for the appropriate finding by the jury. The findings must be unanimous.

### A.      Future Dangerousness

Whether, beyond a reasonable doubt, defendant JUAN BRISENO aka Tito represents a continuing danger to the lives and safety of other persons as demonstrated by one or more of:   (1) his low potential for rehabilitation as demonstrated by repeated violent criminal acts; (2) his willingness to take human life and a lack of remorse for his acts of violence and attempted acts of violence as demonstrated by statements that he made following these violent acts; and/or (3) his stated desire to impose a rule requiring fellow members of the Imperial Gangsters to shoot at rivals on sight, and his future dangerousness tends to support the imposition of the death penalty

YES _____                              NO _____

8

2345

**B.    Contemporaneous Convictions for Other Criminal Activity**

Whether, beyond a reasonable doubt, defendant JUAN BRISENO aka Tito was convicted at trial of other criminal activity, in additional to the isolated murder of any single victim, including additional murders or attempted murders, and this additional criminal activity tends to support the imposition of the death penalty.

YES _____                              NO _____


**C.    Demonstrated Allegiance to Criminal Street Gang**

Whether, beyond a reasonable doubt, defendant JUAN BRISENO aka Tito demonstrated an allegiance to and membership in the Imperial Gangsters, a criminal street gang, and this allegiance and membership tends to support the imposition of the death penalty.

YES _____                              NO _____


**D.    Victim Impact**

Whether, beyond a reasonable doubt, defendant JUAN BRISENO aka Tito caused loss, injury and harm to Luis Ortiz, Michael Sessum, Miguel Mejias, Harris Brown, Miguel Colon, and Latroy Howard, and/or to their families and/or to their friends, and such harm tends to support the imposition of the death penalty:

1.     Luis Ortiz

YES _____                              NO _____

2.     Michael Sessum

YES _____                              NO _____

9

3.      Miguel Mejias

YES _____                                    NO _____

4.      Harris Brown

YES _____                                    NO _____

5.      Miguel Colon

YES _____                                    NO _____

6.      Latroy Howard

YES _____                                    NO _____

### *Concluding Instructions for Section III*

Regardless of whether you found that the Government **has established** one (or more) of

the Non-Statutory Aggravating Factors in this Section III, proceed to Section IV, which follows.

## IV.   MITIGATING FACTORS

### *General Instructions for Section IV*

For each of the following Mitigating Factors, [you have the option to] indicate, in the space

provided, the number of jurors who have found the existence of that mitigating factor to be proven

by a preponderance of the evidence.

Your vote with respect to a Mitigating Factor need not be unanimous.   A finding with

respect to a Mitigating Factor may be made by one or more of the members of the jury, and any

member of the jury who finds the existence of a Mitigating Factor may consider such a Factor

established in considering whether or not a sentence of death shall be imposed, regardless of the

number of other jurors who agree that the particular Factor has been established.

## MITIGATING FACTORS

1.    [TO BE PROVIDED BY DEFENDANT]

   - Number of jurors who so find          _____

2.    [TO BE PROVIDED BY DEFENDANT]

   - Number of jurors who so find          _____

3.    [TO BE PROVIDED BY DEFENDANT]

   - Number of jurors who so find          _____

4.    [TO BE PROVIDED BY DEFENDANT]

   - Number of jurors who so find          _____

5.    [TO BE PROVIDED BY DEFENDANT]

   - Number of jurors who so find          _____

*Additional Mitigating Factors Determined by Any Member of the Jury:*
(add additional pages, if needed)

A.    _____

   - Number of jurors who so find          _____

B.    _____

   - Number of jurors who so find          _____

C.    _____

   - Number of jurors who so find          _____

## *Concluding Instructions for Section IV*

Regardless of whether you any member of the jury has determined the existence of any

Mitigating Factors in Section IV above, proceed to Section V and Section VI which follow.

11

# V. DETERMINATION OF SENTENCE

## *General Instructions for Section V*

Based upon consideration of whether the Statutory Aggravating Factors and the Non-statutory Aggravating Factors found to exist sufficiently outweigh any Mitigating Factor or Factors found to exist, or in the absence of any Mitigating Factors, whether the Aggravating Factor(s) are themselves sufficient to justify a sentence of death:

## Sentences to be Imposed:

We, the jury, by unanimous vote, determine that the following sentences shall be imposed on defendant JUAN BRISENO, aka Tito:

1.      **For the murder of Luis Ortiz (as specified in Count Nine):**

_____   Death, or

_____   Life In Prison Without the Possibility of Release.

2.      **For the murder of Michael Sessum (as specified in Count Thirteen):**

_____   Death, or

_____   Life In Prison Without the Possibility of Release.

3.       **For the murder of Miguel Mejias (as specified in Count Fifteen):**

_____   Death, or

_____   Life In Prison Without the Possibility of Release.

4.      **For the murder of Harris Brown (as specified in Count Seventeen):**

_____   Death, or

_____   Life In Prison Without the Possibility of Release.

2349

**5.** **For the murder of Miguel Colon (as specified in Count Nineteen):**

_____ Death, or

_____ Life In Prison Without the Possibility of Release.

**6.** **For the murder of Latroy Howard (as specified in Count Twenty-one):**

_____ Death, or

_____ Life In Prison Without the Possibility of Release.

If you have unanimously determined that a sentence of death should be imposed with regard to <u>any</u> of the specified murders, then each juror should sign his or her name below, and then proceed to Section VI.

If you have unanimously determined that life in prison without the possibility of release should be imposed for <u>all</u> of the specified murders, then the foreperson alone should sign his or her name below, and then proceed to Section VI.

_____    _____

_____    _____

_____    _____

_____    _____

_____    _____
                                                    FOREPERSON

Date: March ___, 2015

13

## VI.   CERTIFICATION

By signing below, each juror certifies that consideration of the race, color, religious beliefs, national origin, or sex of the defendant or the victim was not involved in reaching his or her individual decision, and that the individual juror would have made the same recommendation regarding a sentence for the crime or crimes in question regardless of the race, color, religious beliefs, national origin, or sex of the defendant, or the victim(s).

_____    _____

_____    _____

_____    _____

_____    _____

_____    _____

_____    _____
                                                   FOREPERSON

Date:   March \_\_\_, 2015.

14

THE UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, Plaintiff, | §<br>§<br>§<br>§ | |
| v. | §<br>§ | CAUSE NO.  2:11-CR-0077-PPS |
| JUAN BRISENO, also known as Tito, Defendant. | §<br>§<br>§<br>§ | |

**GOVERNMENT'S LIMITED OBJECTIONS TO
DEFENDANT'S REQUESTED PRELIMINARY VOIR DIRE INSTRUCTIONS**

TO THE HONORABLE COURT:

COMES NOW, the United States of America ("United States" or "Government"),

by and through the undersigned counsel, and provides it limited objections to defendant

Juan Briseno's Requested Preliminary Voir Dire Instructions [DE #1182] ("Defendant's

Requested Instructions.")[1]

Preliminary Statement

The Government believes the majority of Defendant's Requested Instructions are

appropriate and well done, and it has no objection to them.  However, as set forth below,

the Government does have substantive objections to several of Defendant's Requested

Instructions and has certain minor stylistic suggestions, as well.

---

[1]  To the best of the Government's recollection, the Court did not request that the parties
submit proposed Preliminary Voir Dire Instructions.

## **Substantive Objections**

1. <u>Effect of Deadlocking Instruction</u>.    In the second full paragraph on page 7 of Defendant's Requested Instructions, Mr. Briseno requests that the Court instruct the jury:

> The last thing I want to explain to you is that in order to impose a sentence of death, all twelve (12) jurors must agree beyond a reasonable doubt that death <u>is the only appropriate sentence.  If the jury is unable to agree, and even if one single juror decides that the death penalty is not justified, then the defendant will receive a sentence of life in prison without the possibility of release</u>.

[<u>Requested Instructions</u>, page 7 (emphasis provided)][2]   This requested Instruction is improper, among other reasons because it invites the jury to deadlock.  *See, e.g., Jones v. United States*, 527 U.S. 373, 382-83 (1999); *Williams v. Anderson*, 460 F.3d 789, 809-10 (6th Cir. 2006).   In *Jones*, the Supreme Court rejected a similar instruction noting:

> In theory, the District Court's failure to instruct the jury as to the consequences of deadlock could give rise to an Eighth Amendment problem of a different sort: We also have held that a jury cannot be "affirmatively misled regarding its role in the sentencing process." [Citation omitted]  In no way, however, was the jury affirmatively misled by the District Court's refusal to give petitioner's proposed instruction.  <u>The truth of the matter is that the proposed instruction has no bearing on the jury's role in the sentencing process. Rather, it speaks to what happens in the event that the jury is unable to fulfill its role</u>—when deliberations break down and the jury is unable to produce a unanimous sentence recommendation. Petitioner's argument, although less than clear, appears to be that a death sentence is arbitrary within the meaning of the Eighth Amendment if the jury is not given any bit of information that might possibly influence an individual juror's voting behavior.  <u>That contention has no merit</u>. We have never suggested, for example, that the Eighth Amendment requires a jury be instructed as to the consequences of a breakdown in the deliberative process. ***On the contrary, we have long been of the view that "[t]he very object of the jury system is to secure unanimity by a***

---

[2]   Similarly, there is no authority for Mr. Briseno's proposition that the jurors must agree unanimously that "death is the only appropriate sentence," and that is counter to the law, as well.  The FDPA merely requires that the jury unanimously determine that aggravating factors "sufficiently outweigh" the mitigating factors to justify a sentence of death.  18 USC § 3593(e).  Hence, there is no requirement that the jury unanimously agree that "death is the only appropriate sentence."

2353

*comparison of views, and by arguments among the jurors themselves.”* [Citation and footnote omitted] *We further have recognized that in a capital sentencing proceeding, the Government has “a strong interest in having the jury express the conscience of the community on the ultimate question of life or death.”* [Citation omitted] *We are of the view that a charge to the jury of the sort proposed by petitioner might well have the effect of undermining this strong governmental interest*.

*We similarly decline to exercise our supervisory powers to require that an instruction on the consequences of deadlock be given in every capital case. In drafting the Act, Congress chose not to require such an instruction. Cf.* § 3593(f) (district court “shall instruct the jury that, in considering whether a sentence of death is justified, it shall not consider the race, color, religious beliefs, national origin, or sex of the defendant or of any victim and that the jury is not to recommend a sentence of death unless it has concluded that it would recommend a sentence of death for the crime in question no matter what the race, color, religious beliefs, national origin, or sex of the defendant or of any victim may be”). Petitioner does point us to a decision from the New Jersey Supreme Court requiring, in an exercise of that court's supervisory authority, that the jury be informed of the sentencing consequences of nonunanimity. Of course, New Jersey's practice has no more relevance to our decision than the power to persuade. Several other States have declined to require a similar instruction. [Citations omitted.] *We find the reasoning of the Virginia Supreme Court in Justus [v. Virginia, 266 S.E.2d 87, 92-93 (1980)], far more persuasive than that of the New Jersey Supreme Court, especially in light of the strong governmental interest that we have recognized in having the jury render a unanimous sentence recommendation:*

> *“The court properly refused an instruction offered by the defendant which would have told the jury that if it could not reach agreement as to the appropriate punishment, the court would dismiss it and impose a life sentence. While this was a correct statement of law it concerned a procedural matter and was not one which should have been the subject of an instruction. It would have been an open invitation for the jury to avoid its responsibility and to disagree.”* [266 S.E.2d at 92]

Id. at 382-83 (emphasis provided, footnotes omitted). Moreover, in footnote 6 of its

opinion, the Supreme Court noted:

> *It is not insignificant that the Courts of Appeals to have addressed this question, as far as we are aware, are uniform in rejecting the argument*

> *that the Constitution requires an instruction as to the consequences of a jury's inability to agree*. *See*, *e.g., Coe v. Bell,* 161 F.3d 320, 339-40 (6th Cir. 1998); *Green v. French*, 143 F.3d 865, 890 (4th Cir. 1998); *United States v. Chandler*, 996 F.2d 1073, 1088-89 (11th Cir. 1993); *Evans v. Thompson*, 881 F.2d 117, 123-24 (4th Cir. 1989).  Indeed, the Fifth Circuit, in the alternative, reached the same conclusion in this very case. See 132 F.3d 232, 245 (5th Cir. 1998).

Id. at 383 n.6 (emphasis provided.)  *Accord Williams v. Anderson*, 460 F.3d 789, 809-10

(6th Cir. 2006).

As a result, this portion of Defendant's Requested Instructions should be

eliminated.

2.        Jury Never Required to Return a Verdict of Death.   Defendant's

Requested Instructions repeatedly suggest this erroneous instruction.   For instance, in the

first sentence of page 5, Defendant's Requested Instruction states:  "You should know

that no juror is ever required to vote for a sentence of death."  (Emphasis provided.)

Similarly, in the first full paragraph of that same page, the Requested Instruction

continues:  "The fact that a jury finds a defendant guilty of murder is, standing alone,

never sufficient to justify the imposition of the death penalty.  The death penalty is never

automatic or required.  There are no circumstances of murder where death is the only

appropriate punishment."  (Emphasis provided.)  This same theme is reiterated in the first

full paragraph on page 7:  "As we begin this process, there are two final points I wish to

make, perhaps emphasize.  The first, mentioned briefly before, is that you are never

required to return a sentence of death."  (Emphasis provided.)

In fact, the jurors are required – indeed, are sworn to – follow the law.  The FDPA

specifically requires the jurors to engage in a balancing process (aggravating factors vs

mitigating factors).  If the jury unanimously finds, beyond a reasonable doubt, that the

2355

aggravating factors "sufficiently outweigh" the mitigating factors to justify a sentence of death, then a verdict of death should be returned. *See* 18 USC § 3593(e); *and see United States v. Allen*, 247 F.3d 741, 780 (8th Cir. 2001) (Affirming the District Court's denial of a "mercy" instruction: "Under the FDPA, the jury exercises complete discretion in its determination of whether the aggravating factors outweigh the mitigating factors…. [However, the FDPA] precludes the jurors from arbitrarily disregarding its unanimous determination that a sentence of death is justified."); *and cf., United States v. Gaudin*, 515 U.S. 506, 513 (1995) ("In criminal cases, as in civil, ... the judge must be permitted to instruct the jury on the law and to insist that the jury follow his instructions.")

As a result, these portions of Defendant's Requested Instructions should be eliminated.

3.    Aggravating Factors Must Be "Extraordinary" Circumstances. The second sentence of the fourth paragraph on page 5 of Defendant's Requested Instructions reads: "An aggravating factor, then, is an *extraordinary* circumstance which would tend to support the imposition of the death penalty." (Emphasis provided.) This is a misstatement of the law. There is no legal requirement that an aggravating factor be "extraordinary" nor that the jury must find that a given aggravating factor is "extraordinary." *See* 18 U.S.C. § 3593 ("The [aggravating] factors for which notice is provided under this subsection may include factors concerning the effect of the offense on the victim and the victim's family … the extent and scope of the  injury and loss suffered by the victim and the victim's family, *and any other relevant information*."

(Emphasis provided)) [3]  Aggravating (and mitigating) factors are merely relevant

circumstances of the crime(s), the defendant's role in the crime(s), the defendant's

background and criminal history, and the effect of the crime(s) on the victims, the

victim's family and friends.  *See, e.g.*, *Barclay v. Florida*, 463 U.S. 939, 967 (1983);

*United States v. Fields*, 516 F.3d 923, 945 (10th Cir. 2008).

As a result, the word "extraordinary" should be stricken ("An aggravating factor,

then, is a circumstance which would tend….")

4.    Definition of Burden of Proof.    The last paragraph on the 5th page of

Defendant's Requested Instructions states:  "Unlike aggravating factors, mitigating

factors need only be proven by the lesser standard of preponderance of the evidence, *i.e.*,

*that something is more likely true than not true.*"  (Emphasis provided.)   Although this is

certainly a correct statement of the law, the Government understands that in the Seventh

Circuit juries are not to be provided with definitions of the burden of proof.

As a result, the italicized portion of the sentence should be stricken.

---

[3]  While the role of *statutory* aggravating factors is to narrow the class of death-eligible capital offenders, the role of *non*-statutory aggravating factors is primarily to "individualize" a capital sentencing determination, after a defendant has been deemed eligible for capital punishment.  *See Zant v. Stephens*, 462 U.S. 862, 878-89 (1983). Hence, a non-statutory aggravating factor is proper when it is relevant to (1) the character of the defendant, or (2) to the circumstances of the crime.  *See Barclay v. Florida*, 463 U.S. 939, 967 (1983).  A non-statutory aggravating factor is not over-broad as long as it "direct[s] the jury to the evidence specific to th[e] case."  *See United States v. Fields*, 516 F.3d 923, 945 (10th Cir. 2008) (quoting *Jones v. United States,* 527 U.S. 373, 402 (1999)).

2357

**Suggested Stylistic Changes**

1.     Under paragraph D, pages 3-4, Defendant's Requested Instructions refer to such things as "each defendant," "the defendants," "all of the defendants," and "[t]he other defendants are not subject to that type of potential sentence [*i.e.*, the death penalty]. As to the others, this is a regular criminal case." Because in this trial there will only be one defendant, and Mr. Briseno is potentially subject to a sentence of death, the Government requests that all of the references to plural defendants be revised to a singular defendant and that all references to non-death penalty proceedings be eliminated.

2.     For the purposes of symmetry and ease of understanding, the Government suggests that the entire second full paragraph on page 6 of Defendant's Requested Instructions ("The word 'mitigating' means to make less severe or moderate….") be moved to the 5th full paragraph on page 5, where it should be inserted after the first sentence: "On the other side of the scale, you have to consider mitigating factors. [INSERT: The word 'mitigating' means to make less severe or moderate….]" Thereafter, at the conclusion of the inserted paragraph, the Government suggests that the remaining portions of (current) paragraph 5 ("The law requires each individual juror to determine….") become its own stand-alone paragraph.

3.     Defendant's Requested Instructions make various references to "life without the possibility of parole." *See, e.g.*, Requested Instructions, pages 4, 5, 7. The Government suggests that these be changed to state "without the possibility of release" and that an explanation be inserted to the effect that parole has been abolished in the federal system.

2358

Respectfully submitted,

DAVID CAPP
UNITED STATES ATTORNEY

s/ *David J. Nozick*

David J. Nozick
Assistant U.S. Attorney
5400 Federal Plaza
Suite 1500
Hammond, IN 46320
Tel. (219) 937-5655
www.david.nozick@usdoj.gov

s/ *Bruce R. Hegyi*

Bruce R. Hegyi
Trial Attorney
Capital Case Section
Criminal Division
United States Department of Justice
1331 F Street, N.W., Third Floor
Washington, D.C.  20530
Tel. (202) 616-4582
Cell (703) 536-4774
www.bruce.hegyi@usdoj.gov

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this date, I electronically filed the foregoing

document and accompanying exhibits with the Clerk of the Court using the CM/ECF

system which will send notification of such filing to all counsel of record for defendant

Juan Briseno.

s/ *Bruce R. Hegyi*
Bruce R. Hegyi
Trial Attorney

2360

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
## HAMMOND DIVISION

UNITED STATES OF AMERICA,

      **Plaintiff**

**vs**

**JUAN BRISENO,**

      **Defendant**             **CAUSE NO:   2:11-CR-77**

## DEFENDANT'S REPLY TO GOVERNMENT'S LIMITED OBJECTIONS TO DEFENDANT'S REQUESTED PRELIMINARY VOIR DIRE INSTRUCTIONS

Comes now Defendant Juan Briseno, by counsel Arlington Foley and John Maksimovich, and replies to Government's Limited Objections to Defendant's Requested Preliminary Voir Dire Instructions [DE #1210] as follows:

The government takes issue with the second full paragraph on page 7 of Defendant's requested instructions.  The government objects to Briseno's request that the Court instruct the jury:

> The last thing I want to explain to you is that in order to impose a sentence of death, all twelve (12) jurors must agree beyond a reasonable doubt that death is the only appropriate sentence. If the jury is unable to agree, and even if one single juror decides that the death penalty is not justified, then the defendant will receive a sentence of life in prison without the possibility of release.

The government argues that this requested Instruction is improper, among other reasons because it invites the jury to deadlock and cites language from *Jones v. United States*, 527 U.S. 373, 382-83 (1999) as support for it's argument.

-1-

When the jury is non-unanimous or deadlocked, *Title 18, United States Code, §3595* requires imposition of a life sentence, or, if statutorily available, a lesser sentence, see *Jones v. United States*, 527 U.S. 373 (1999).  Though *Jones* found a non-unanimity instruction was not required by the Federal Death Penalty Act (FDPA) or the Eighth Amendment, numerous District Courts since have instructed federal sentencing juries in the main charge, that non-unanimity would result in a life sentence.  For example, in United States v. Alexis Candelario-Santana, Criminal Case Number 09-427(JAF), United States District Court for the District of Puerto Rico, January, 2013, District Court Judge José A. Fusté used the exact language the government finds objectionable in charging the jury (see Case No. 3:09-CR-00427-JAF, DE #749, p.7, filed on January 9, 2013 attached hereto as Exhibit "A").  In many of these cases, the Court has also given jurors the explicit option of a non-unanimous verdict on the verdict form (see *United States v. Sampson*, 335 F.Supp. 2d 166 (D. Mass. 2004)).  In *United States v. Sampson*, the Court informed the jury of the consequences of non-unanimity because this emphasized the individual responsibility of each juror and ensured each was fully informed of the consequences of it's actions (see also Tenth Circuit Criminal Pattern Jury Instructions, INST. 3.01(2005)).  Notwithstanding Jones, advising district courts that "the most straightforward approach" is to give the pattern charge: "If you cannot unanimously agree on the appropriate punishment, I will sentence the defendant to life imprisonment without the possibility of release."

The decision to impose a sentence of life imprisonment without the possibility of release or death requires a *"reasoned moral response"* by *each juror* to the evidence in the case.  This is made crystal clear by United States Supreme Court cases such as *California v. Brown*, 479 U.S. 538, 107 S. Ct. 837, 841, 93 L. Ed. 2d 934 (1987); *Franklin v. Lynaugh*, 487 U.S. 164, 185

-2-

(1988); *Penry v. Lynaugh,* 492 U.S. 302, 109 S. Ct. 2934, 106 L. Ed. 2d 256 (1989); *Mills v. Maryland*, 486 U.S. 367, 108 S. Ct. 1860, 100 L.Ed. 2d 384 (1988) and *Simmons v. South Carolina*, 111 S.Ct. 2187, 2198-2199 (1994).

Defendant's requested instruction correctly and accurately describes the effect of a non-unanimous deadlocked jury and should be given.

The government also takes issue with Defendant's request that the jury be informed that, "the jury is never required to return a verdict of death." The government argues that this instruction is erroneous. The government complains about the Defendant's request that the jury be instructed that the jury is never required to return a verdict of death as follows:

> For instance, in the first sentence of page 5, Defendant's Requested Instruction states: "You should know that no juror is ever required to vote for a sentence of death." (Emphasis provided.) Similarly, in the first full paragraph of that same page, the Requested Instruction continues: "The fact that a jury finds a defendant guilty of murder is, standing alone, never sufficient to justify the imposition of the death penalty. The death penalty is never automatic or required. There are no circumstances of murder where death is the only appropriate punishment." (Emphasis provided.) This same theme is reiterated in the first full paragraph on page 7: "As we begin this process, there are two final points I wish to make, perhaps emphasize. The first, mentioned briefly before, is that you are never required to return a sentence of death."

Most district courts in Federal Death Penalty Act cases, emphasizing the highly discretionary nature of the juries' ultimate sentencing decision, instruct that a death sentence is never required, see *Jones v. United States*, 527 U.S. 373, 384 (1999). In Jones v. United States, the jury was instructed that, "regardless of your findings with respect to aggravating and mitigating factors, you are never required to recommend a death sentence" see also *United States v. Sampson*, 335 F.Supp. 2d 166 (D. Mass. 2004); *United States v. Haynes*, 265 F. Supp. 2d 914

-3-

(W.D. Tenn. 2003) (*United States v. Haynes* includes a legislative history on this issue); 1 Leonard B. Sand, et. al., Modern Federal Jury Instructions – Criminal, Inst. 9A-19 & Comment (2008) pointing out that while the Federal Death Penalty Act does not contain the same explicit "mercy" provision as the ADAA, "it is strongly suggested that the court impress upon the jury that it is never obligatory to impose the death penalty.  Thus, the instruction states that, 'no juror is ever required by the law to impose a death sentence.'" In *U.S. v. Duong* (N.D.C.A. Cr. No. 01-21054), the trial court instructed the jury in part: "Even if you have unanimously found that the Aggravating Factors sufficiently outweigh the Mitigating Factors that a death sentence is justified in one or more of the murders, each of you must still determine whether to in fact impose that sentence.  No juror is ever required by the law to impose a death sentence.  The decision is yours as individuals to make.  Any one of you may decline to impose a death sentence, even where your findings make imposition of the death penalty possible.  You do not have to give a reason for your decision.  You may decline to impose a death sentence because of mercy or for any reason you deem to be relevant.  It is an individual and personal decision that is each juror's alone.  The law has given each of you the discretion to temper justice with mercy."

Moreover, the exact language the government is complaining about was used by  District Court Judge José A. Fusté in *United States v. Alexis Candelario-Santana*, Criminal Case Number 09-427(JAF), United States District Court for the District of Puerto Rico, January, 2013 (see Exhibit A attached hereto).

The government also finds fault with the second sentence of the fourth paragraph on page 5 of Defendant's Requested Instructions reading: "An aggravating factor, then, is an *extraordinary* circumstance which would tend to support the imposition of the death penalty."

-4-

The government argues that this is a misstatement of the law.

The fact that a jury finds a defendant guilty of murder is, alone, never sufficient to justify the imposition of the death penalty. The death penalty is never automatic or required. There are no circumstances of murder where death is the only appropriate punishment.  The law is always satisfied with a sentence of life without the possibility of release.  Before a jury can impose a death sentence upon a defendant, the law requires that at least one aggravating circumstance be proven to each juror's satisfaction beyond a reasonable doubt.

The law also requires that for an aggravating factor to be found proven, all twelve (12) jurors must agree that the aggravating circumstance or circumstances exist beyond a reasonable doubt. If a single juror disagrees, the jury cannot consider that aggravating factor.

The word "aggravate" means to make worse or more intense. Thus an aggravating factor **is** an extraordinary circumstance which would tend to support an extraordinary sentence, i.e. the imposition of the death penalty.

Finally, the government takes issue with the defendant's definition of the burden of proof. More specifically, the government complains that the last paragraph on the 5th page of Defendant's Requested Instructions stating: "Unlike aggravating factors, mitigating factors need only be proven by the lesser standard of preponderance of the evidence, *i.e.*, *that something is more likely true than not true*" provides too much information to the jury.  The government states that it is it's understanding that in the Seventh Circuit the juries are not to be provided with the definitions of the burden of proof.  It is true, that in the Seventh Circuit, lawyers are prohibited from arguing burdens of proof to the jury, however, the jury must be instructed as to what the burden of proof is and what it means.  The lesser standard of preponderance of the evidence

-5-

means, "that something is more likely true than not." If the jury was not instructed that the lesser standard of the preponderance of the evidence means that something is more likely true than not then the jury would have absolutely no idea as to the standard it was to apply. The defendant's requested burden of proof instruction is accurate, non-argumentative, and is not an "over the top" description of the preponderance of evidence standard.

**WHEREFORE**, Defendant Juan Briseno, by counsel Arlington Foley and John Maksimovich, respectfully request the Court give Defendant's requested preliminary voir dire instructions as originally tendered and for all other just and proper relief.

**Respectfully submitted:**

/s/ *Arlington Foley*

Arlington Foley /#6905-45
Attorney For Defendant
1942 North Main Street
Crown Point, IN 46307
PH: 219.661.1200
FX: 219.661.1205

/s/ *John Maksimovich*

John Maksimovich /#9950-45
Attorney For Defendant
1946 North Main Street
Crown Point, IN 46307
PH: 219.663.1900
FX: 219.663.1908

-6-

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

UNITED STATES OF AMERICA,

　　　　　　Plaintiff

vs

JUAN BRISENO,

　　　　　　Defendant　　　　　　　　　　　CAUSE NO:　2:11-CR-77

## CERTIFICATE OF SERVICE

　　　I hereby certify that on December 10, 2014, I electronically filed:

*DEFENDANT'S REPLY TO GOVERNMENT'S LIMITED OBJECTIONS TO*
*DEFENDANT'S REQUESTED PRELIMINARY VOIR DIRE INSTRUCTIONS*

with the Clerk of the Court using the CM/ECF system, which sent notification of such filing to
the following:

　　　　David J. Nozick　　　　　　　　　　　　Bruce Hegyi
　Assistant United States Attorney　　　　　Assistant United States Attorney

and I hereby certify that I have mailed by United States Postal Service, the document to the
following non-CM/ECF participants:

　　　　　N/A

　　　　　　　　　　　　　　　　By:　　/s/ *John Maksimovich*

　　　　　　　　　　　　　　　　　　John Maksimovich /#9950-45
　　　　　　　　　　　　　　　　　　Attorney For Defendant
　　　　　　　　　　　　　　　　　　1946 North Main Street
　　　　　　　　　　　　　　　　　　Crown Point, IN 46307
　　　　　　　　　　　　　　　　　　PH: 219.663.1900
　　　　　　　　　　　　　　　　　　FX: 219.663.1908
　　　　　　　　　　　　　　　　　　E-Mail: criminallaw@johnmaksimovich.com

-7-

2367

Case 3:09-cr-00427-JAF   Document 749   Filed 01/09/13   Page 1 of 1
Case 15-2347   Document: 35   Filed: 07/27/2016   Pages: 4186
Case 2:11-cr-00077-PPS-APR   Document 213-1   Filed 12/10/14   Page 8 of 16

**EXHIBIT A**

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **United States of America**<br>Plaintiff<br><br>vs.<br><br>**Alexis Candelario-Santana (1)**<br>**Wilfredo Candelario-Santana (4)**<br>**David Oquendo-Rivas (5)**<br>Defendant | **CRIMINAL CASE 09-427 (JAF)** |

## ORDER

I am filing today what I expect to be the final version of the preliminary instructions that will be delivered to prospective jurors when they appear for individual voir dire.

In San Juan, Puerto Rico, this 9th day of January, 2013.


S/ José A. Fusté

José A. Fusté
United States District Judge

Case 3:09-cr-00427-JAF   Document 749-1   Filed 01/09/13   Page 1 of 8
Case 15-2347   Document: 35   Filed 07/27/2016   Pages: 4186
Case 2:11-cr-00077-PPS-APR   Document 1213   Filed 12/10/14   Page 9 of 16

# EXHIBIT A

UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

UNITED STATES OF AMERICA,

    Plaintiff,

    v.

ALEXIS CANDELARIO-SANTANA (1),
WILFREDO CANDELARIO-SANTANA (4),
DAVID OQUENDO-RIVAS (5),
    Defendant.

Criminal No. 09-427 (JAF)

**A.    Welcome**

**B.    Introduction of Parties and Counsel**

**C.    Brief Summary of Charges**

It is alleged that [1] Alexis Candelario-Santana, a.k.a. "Congo", [2] Carmelo Rondón-Feliciano, a.k.a. "Omi", and [4] Wilfredo Candelario-Santana, a.k.a. "Coper", the defendants, and others known and unknown, were members and/or associates of a criminal organization whose members and associates engaged in narcotics distribution and acts of violence, including murder and attempted murder, and which operated principally in Sabana Seca, Toa Baja, Puerto Rico. [5] David Oquendo-Rivas, a.k.a. "Gordo", is charged with participating in various murders and attempted murders outlined in Counts 2 to 19, and 29 to 49, as further described here.

It is alleged that, during the time period of 1993 until 2009, in furtherance of the racketeering conspiracy, and to effect the objects thereof, the defendants and their co-conspirators committed and caused to be committed thirteen (13) murders between 1995 through 2001 and nine (9) murders on October 17, 2009. As to the thirteen (13) murders from 1995-2001, it is alleged that [1] Alexis Candelario-Santana ordered or directly killed those persons. The thirteen persons killed during 1995-2001 are: Javier Martínez Ramos, Julio Angel Martínez-Santana, Andrés Torres

2369

Case 3:09-cr-00427-JAF Document 749-1 Filed 01/09/13 Page 2 of 8
Case: 15-2347 Document: 35 Filed: 07/27/2016 Pages: 4186
Case 2:11-cr-00077-PPS-APR Document 1213 Filed 12/10/14 Page 10 of 16

Criminal No. 09-427 (JAF)                                                    -2-

Oquendo, Melvin Medina Arce, Jimmy Nelson Vélez Matos, Orlando Cardona Ortiz, Saúl Padín Orozco, Silvestre González Santos, Richard Matías Negrón, David Nieves Carmona, Zuly Santana-Francis, Harry Santiago-Santiago, and Erick Morales-Alvarez.

It is further alleged that on October 17, 2009, in furtherance of the conspiracy, another eight (8) persons and one (1) unborn child were killed, as well as another twenty (20) persons shot during the inauguration of a bar called La Tómbola in Sabana Seca, Puerto Rico. On the evening of October 17, 2009, six (6) persons died at the scene as a result of being shot. These persons are: Elisa Del Carmen Ocasio, Samuel Ruiz Martínez, Joan Manuel Class Guzmán, Pedro Semprit Santana, José Angel Hernández Martínez, and John Henry García Martínez. One person, Rafael Angel Ramos Rivera, and the unborn child of Carmen María García Santiago, died that same day at medical facilities. The ninth person, Tina Marie Rodríguez Otero, died approximately two and ½ weeks later at the hospital as a result of shooting injuries sustained on October 17, 2009. The twenty (20) surviving victims are: Wilfredo Semprit-Santana, Melissa Fonseca-Matías, José Amézquita-Semprit, a.k.a. Cheíto, Miriam Figuroa-Robles, Josué Oquendo-Semprit, José David Carmona Santos, Carmen Semprit Santana, Aladino Amézquita-Semprit, Félix Rivera-Rivera, Carmen María García Santiago (pregnant woman), Caleb Castro Renta, Omayra Fonseca Matías, Roselyn Rosado Miranda, Oscar Gómez Miranda, Richard Ramos Figueroa, Erick Delgado García, Angel Ríos Santos, Juan Ramos Vázquez, William Ramos Vázquez, and Amarilys Fonseca-Matías. The government has specifically charged [1] Alexis Candelario Santana and [5] David Oquendo Rivas, a.k.a. Gordo, with these murders and the attempted murders.

**D.    Preliminary Instructions**

1)    Rules for Criminal Cases -- As you know, this is a criminal case.  There are three basic rules about a criminal case that you must keep in mind.

Case 3:09-cr-00427-JAF   Document 749-1   Filed 01/09/13   Page 3 of 8
Case 2:11-cr-00077-PPS-APR   Document 1213   Filed 12/10/14   Page 11 of 16
Case: 15-2347   Document: 35   Filed: 07/27/2016   Pages: 4186

Criminal No. 09-427 (JAF)                                                                    -3-

First, each defendant is presumed innocent until proven guilty.  The indictment brought by the government against each defendant is only an accusation, nothing more. It is not proof of guilt or anything else.  Each defendant, therefore, starts with a clean slate.

Second, the burden of proof is on the government until the very end of the case. The defendants have no burden to prove their innocence, or to present any evidence, or to testify.  Since the defendants have the right to remain silent, the law prohibits you from arriving at your verdict by considering that the defendants may not have testified.

Third, the government must prove each defendant's guilt beyond a reasonable doubt.  I will give you further instructions on this point later.

2)      Recently, you appeared at the Jury Assembly room and filled out questionnaires. These questionnaires are intended to help the attorneys and the court in the process of jury selection. You know that I will empanel an anonymous jury – that means that your personal identifiers are only known to the court.  I will explain.

This is and will be a highly-publicized case.  Undoubtedly, it will receive considerable publicity from newspapers, radio, and television.  The media and the public may be curious concerning the identity of the participants, the witnesses, the lawyers, and the members of the jury. That curiosity and its resultant comments may come to the attention of the jury selected here and possibly impair its impartiality by viewpoints expressed, comments made, opinions, inquiries, and so forth.

I am sure that you understand that such outside influences could tend to distort what goes on in the trial and, therefore, it is my duty to eliminate distractions and matters that may take away the attention of the selected jury.  The court wishes to avoid people prying into the personal affairs of the participants, including those selected as jurors who, as you know, become the judges of the facts on the basis of evidence brought legally before the court.

Case 3:09-cr-00427-JAF   Document 749-1   Filed 01/09/13   Page 4 of 8
Case 2:11-cr-00077-PPS-APR   Document 1213   Filed 12/10/14   Page 12 of 16
Case: 15-2347   Document: 35   Filed: 07/27/2016   Pages: 4186

Criminal No. 09-427 (JAF)                                                    -4-

Consequently, taking into consideration these circumstances, I have decided that in selecting those who will serve in the jury your name, your address, and your place of employment will remain anonymous during the trial of this case.  That is the reason why you have been assigned a number.  That number serves the purpose of your name and identifies you for all purposes with the court.

This will serve to ward off curiosity and seekers of information that might otherwise infringe on your privacy.  It will also aid in insulating and sheltering you from unwanted and undesirable publicity and notoriety, and any access to you which could interfere with preserving your sworn duty to fairly, impartially, and independently serve as jurors.  It will also permit the media complete freedom of coverage of this trial.

I emphasize that this measure is taken only to protect the right of privacy of the participants and to assist you in discharging your responsibility as jurors fairly and impartially.

Jury duty is of the highest obligation of citizenship and you should be told, as I am now telling you, that the judges in this court and the parties appearing before it appreciate the importance of your fair, honest, and impartial consideration of this case.

3)      This case is a death-penalty eligible case as to Defendant Alexis Candelario-Santana.  The other defendants are not subject to that type of potential sentence.  As to the others, this is a regular criminal case.

This type of death-penalty eligible case is tried in two phases.  In the first phase, known as the guilt phase, the jury deliberates like in a regular criminal case and determines whether each defendant is not guilty or guilty.  This is the case as to all of the defendants.  However, if the jury finds Defendant Alexis Candelario-Santana guilty of any death-penalty count, then, and only then, we will hold a separate second phase where the jury decides the sentence to be imposed, whether life imprisonment without the possibility of release, or the death penalty.

Criminal No. 09-427 (JAF)                                                      -5-

A jury's decision on this second phase to sentence a defendant to life without parole or to death is binding on the judge.  That means that if the jury determines in this second phase that Defendant Alexis Candelario-Santana should be sentenced to life imprisonment, that is the sentence I am required to impose.  By the same token, if the jury determines that Defendant Alexis Candelario-Santana should be sentenced to death, I am required by law to impose that sentence.

In the federal system, a life sentence means that the person must serve every day of his life in prison without release on parole.

You should know that no juror is ever required to vote for a sentence of death.  The decision whether or not the death penalty is justified is a matter to be decided solely by the jury.

If we ever reach the second phase—the penalty phase, the jury must decide if certain aggravating circumstances proven beyond a reasonable doubt tend to weigh in favor of the death penalty.  The fact that a jury finds a defendant guilty of murder is, alone, never sufficient to justify the imposition of the death penalty.  The death penalty is never automatic or required.  There are no circumstances of murder where death is the only appropriate punishment.  Instead, if a second phase is held—the penalty phase, the law requires that aggravating circumstances be proven to your satisfaction beyond a reasonable doubt.

The law also requires that for an aggravating factor to be found proven, all twelve (12) jurors must agree that the aggravating circumstance or circumstances exist beyond a reasonable doubt.  If a single juror disagrees, the jury cannot consider that aggravating factor.

The word "aggravate" means to make worse or more intense.  An aggravating factor, then, is an extraordinary circumstance which would tend to support the imposition of the death penalty.

On the other side of the scale, you have to consider mitigating factors.  The law requires each individual member of the jury to determine whether there are factors about the crime or about the defendant which are mitigating.  Mitigating factors are those which weigh against the imposition

Case 3:09-cr-00427-JAF Document 749-1 Filed 01/09/13 Page 6 of 8
Case 2:11-cr-00077-PPS-APR Document 1213 Filed 12/10/14 Page 14 of 16
Case: 15-2347 Document: 35 Filed: 07/27/2016 Pages: 4186

Criminal No. 09-427 (JAF)                                                 -6-

of the sentence of death and in favor of a sentence of life imprisonment without the possibility of parole.

Unlike aggravating factors, mitigating factors need only be proven by the lesser standard of preponderance of the evidence, *i.e.*, that something is more likely true than not true.

Also, unlike aggravating factors, such findings do not have to be unanimous, meaning that all jurors do not have to agree. If even one member of the jury finds that a mitigating circumstance has been proven, that weighs in deciding whether or not to impose the death penalty.

The word "mitigating" means to make less severe or moderate. A defendant may present evidence in mitigation consisting of anything about his background, record, character, or the circumstances of the offense that would lead a juror to conclude that he should not be put to death but, instead, be punished by life imprisonment without parole.

Once this process of decision and consideration of aggravating and mitigating circumstances has been completed, the jury is asked to balance one against the other and decide whether the aggravating factors outweigh the mitigating factors sufficiently to justify a death sentence. Even if there have been no mitigating factors found, the jury must decide whether one or more aggravating factors, standing alone, justify a sentence of death.

In carrying out this weighing and balancing process, the members of the jury are not mere fact finders. Instead, jurors are called upon to make a unique individual judgment about the appropriateness of sentencing a person to life in prison without parole or death.

This is not a mechanical process, neither is the decision by raw numbers. Members of a death penalty jury do not simply count factors. Instead, individual jurors consider such factors qualitatively. Any one aggravating factor proved, if sufficiently serious, may outweigh several mitigating factors. On the other hand, a single mitigating factor may outweigh several or all aggravating factors. In short, what is called for in weighing the various factors is not arithmetic but an individual juror's careful, considered and mature judgment. Jurors are called upon to decide

Case 3:09-cr-00427-JAF   Document 749-1   Filed 01/09/13   Page 7 of 8
Case 2:11-cr-00077-PPS-APR   Document 1213   Filed 12/10/14   Page 15 of 16
Case: 15-2347   Document: 35   Filed: 07/27/2016   Pages: 4186

Criminal No. 09-427 (JAF)                                                        -7-

whether a defendant should live in prison for the remainder of his life without the possibility of parole or be sentenced to death. When I say "without the probably of parole," it means that he will not be released.

As we begin this process, there are two final points I wish to make, perhaps emphasize. The first, mentioned briefly before, is that you are never required to return a verdict of death; and second, whether or not the circumstances of this case justify a sentence of death is a decision that is entirely yours as jurors. You are the ones who decide the punishment. The law provides you with guidance in making a decision. But, as stated earlier, your decision on the questions of life or death is a uniquely individual judgment which the law leaves up to each of you.

The last thing I want to explain is that in order to impose a sentence of death, all twelve (12) jurors must agree beyond a reasonable doubt that death is the only appropriate sentence. If the Jury is unable to agree, and even if one single juror decides that the death penalty is not justified, then the defendant will receive a sentence of life in prison without the possibility of release.

4)      Going back to the questionnaire, those questions asked, among other things, about your views regarding the death penalty. The attorneys and the court will ask questions of each one of you as a follow up, to better understand your written responses.

Please understand that you have a very serious obligation to respond with candor and sincerity.  This is the only way in which both the government and the defense will get to know you better so that they can select the best jury possible.

**E.      Length of Trial**

When you filled out the questionnaires, I gave you in my written instruction, a rough estimate regarding the length of the trial.

Personally, I like to get trials concluded, and I work hard to achieve that. I am aware of the complications of jury service, and I will make every effort to conclude this case as fast as we can without sacrificing quality.

Case 3:09-cr-00427-JAF   Document 749-1   Filed 01/09/13   Page 8 of 8
Case 2:11-cr-00077-PPS-APR   Document 1213   Filed 12/10/14   Page 16 of 16
Case: 15-2347   Document: 35   Filed: 07/27/2016   Pages: 4186

Criminal No. 09-427 (JAF)                                                                  -8-

We are going to work full days Monday to Thursday. Fridays, we will work until 1:00 PM to allow me the opportunity of dealing with other cases, Friday afternoon.

If we have to work 8 -10 hours a day, we will. I don't like to keep citizens giving jury service longer than what is absolutely necessary.

**F.**     During this time you are with us as candidates for jury service, or as selected jurors, you are not to discuss the case with anyone or permit anyone to discuss it with you. You cannot discuss the case even with your family or friends. They are not part of the jury and such conduct would constitute a violation to your sworn duty as jurors. You simply are not to talk about this case.

I also instruct you that this prohibition includes any form of communication over the Internet, such as email, instant messaging, websites and blogs. The prohibition also includes the use of cell phones for text messaging or video and audio recording, and the use of any other recording or transmitting device to discuss the case or the deliberation process with third parties.

Second, do not read or listen to anything touching on this case in any way. If anyone tries to talk to you about it, bring it to my attention promptly.

Third, do not try to do any research or make any investigation about the case on your own. This includes books, the Internet, websites and blogs.

Finally, do not form any opinion, that is deliberate, until the case is finished and I specifically instruct you to enter into the decision making process. Jurors must keep an open mind all the time. You must give any case or parties the same impartial consideration you would expect if the case were your own case.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) Cause No.: 2:11-cr-77 | |
| | ) | |
| JUAN BRISENO, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

This matter is before the court on the Motion to Seal [DE 1211] filed by the defendant,

Juan Briseno, on December 10, 2014. The court, being duly advised in the premises, hereby

**GRANTS** said motion.

IT IS HEREBY ORDERED that the Defendant's Non-Agreed Challenges for Cause [DE

1212] filed by Briseno on December 10, 2014 is SEALED.

ENTERED this 11th day of December, 2014.

/s/ Andrew P. Rodovich
United States Magistrate Judge

```
MIME-Version:1.0
From:CMECFinnd@innd.uscourts.gov
To:CMECFinnd@localhost.localdomain
Bcc:
--Case Participants: Bryan M Truitt (bryan@tblawyers.com, sherrie@tblawyers.com), David J
Nozick - AUSA (david.nozick@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov,
susan.devries@usdoj.gov, usainn.ecfcivil@usdoj.gov), Kurt R Earnst (kre@braje-nelson.com),
Paul Jeffrey Schlesinger (pjeffslaw@aol.com), Pablo DeCastro
(pdecastro@rascia-decastro.com, ysierra@rascia-decastro.com), Sheldon B Nagelberg
(sbnagelberglaw@att.net), Thomas W Vanes (b.lynneadams@yahoo.com,
tom.vanes@sbcglobal.net), Richard C Wolter (b.lynneadams@yahoo.com), John T Theis
(theislaw@aol.com), Adam Tavitas (adtavitas@aol.com, b.lynneadams@yahoo.com), Dean R
Lanter - AUSA (dean.lanter@usdoj.gov, janet.eisenmann@usdoj.gov,
usainn.ecfcivil@usdoj.gov), John E Martin - FCD (john_martin@fd.org), Scott L King
(dwilliams@scottkinggroup.com, sking@scottkinggroup.com), Mark A Psimos
(psimoslaw@airbaud.net), Ihor Alexander Woloshansky (ihorlawyer@hotmail.com), Richard M
Davis (jdavis@hwelaw.com, rdavis@hwelaw.com, rgould@hwelaw.com), James N Thiros
(jim@thiros.com, lynn@thiros.com), Robert L Rascia (rrascia@rascia-decastro.com,
ysierra@rascia-decastro.com), Gojko Kasich (gkasich@crownlaw.com, gkasich@gmail.com),
Arlington J Foley (arlingtonfoley@att.net), Roxanne Mendez Johnson
(attorneyrmj@gmail.com), Visvaldis P Kupsis (vpkupsis@hotmail.com), Stephen Edward Scheele
(pkd@gk4law.com, ses@gk4law.com), Jack Friedlander (jack@jackfriedlander.com,
office@jackfriedlander.com), Bruce R Hegyi - AUSA (bruce.hegyi@usdoj.gov), R Brian
Woodward (carolb@wbbklaw.com, rbwoodward@wbbklaw.com), John Maksimovich
(criminallaw@johnmaksimovich.com), David E Vandercoy (david.vandercoy@valpo.edu),
Magistrate Judge Andrew P Rodovich (rodovich_chambers@innd.uscourts.gov,
ruth_nagy@innd.uscourts.gov), Chief Judge Philip P Simon
(denise_woodside@innd.uscourts.gov, jacob_hamann@innd.uscourts.gov,
lauren_schwartz@innd.uscourts.gov, mira_serrill-robins@innd.uscourts.gov,
noel_collins@innd.uscourts.gov, philip_simon@innd.uscourts.gov)
--Non Case Participants: Matthew D Soliday (office@matthewsolidaylaw.com),
Probation/Pretrial Services (innpml_cmecf@innd.uscourts.gov), U S Marshal
(inn.docket-fw@usdoj.gov, inn.docket-sb@usdoj.gov, usms.27@usdoj.gov)
--No Notice Sent:

Message-Id:2668594@innd.uscourts.gov
Subject:Activity in Case 2:11-cr-00077-PPS-APR United States of America v. Briseno et al
Order
Content-Type: text/html
```

### U.S. District Court Northern District of Indiana [LIVE]

### USDC Northern Indiana

## Notice of Electronic Filing

The following transaction was entered on 12/11/2014 at 11:10 AM EST and filed on 12/11/2014

| | |
|---|---|
| **Case Name:** | United States of America v. Briseno et al |
| **Case Number:** | 2:11-cr-00077-PPS-APR |
| **Filer:** | |
| **Document Number:** | 1217(No document attached) |

**Docket Text:**
 **ORDER: Granting Motion to Seal [1211] for document [1212] as to Juan Briseno. Text entry only. No pdf is attached. Approved by Chief Judge Philip P Simon on 12/11/2014. (nac)**

**2:11−cr−00077−PPS−APR−1 Notice has been electronically mailed to:**

David E Vandercoy    david.vandercoy@valpo.edu

Richard M Davis    rdavis@hwelaw.com, jdavis@hwelaw.com, rgould@hwelaw.com

Arlington J Foley    arlingtonfoley@att.net

Mark A Psimos    psimoslaw@airbaud.net

Gojko Kasich    gkasich@crownlaw.com, gkasich@gmail.com

Scott L King    sking@scottkinggroup.com, dwilliams@scottkinggroup.com

James N Thiros    jim@thiros.com, lynn@thiros.com

Thomas W Vanes    tom.vanes@sbcglobal.net, b.lynneadams@yahoo.com

Ihor Alexander Woloshansky    ihorlawyer@hotmail.com

R Brian Woodward    rbwoodward@wbbklaw.com, carolb@wbbklaw.com

John Maksimovich    criminallaw@johnmaksimovich.com

Visvaldis P Kupsis    vpkupsis@hotmail.com

Sheldon B Nagelberg    sbnagelberglaw@att.net

John E Martin − FCD    john_martin@fd.org

Adam Tavitas    Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander    jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele    ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst    kre@braje−nelson.com

Bryan M Truitt    bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis    theislaw@aol.com

Robert L Rascia    rrascia@rascia−decastro.com, ysierra@rascia−decastro.com

Paul Jeffrey Schlesinger    pjeffslaw@aol.com

Pablo DeCastro    pdecastro@rascia−decastro.com, ysierra@rascia−decastro.com

Dean R Lanter − AUSA    dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov,
janet.eisenmann@usdoj.gov

David J Nozick – AUSA    David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov,
janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson    attorneyrmj@gmail.com

Bruce R Hegyi – AUSA    bruce.hegyi@usdoj.gov

**2:11–cr–00077–PPS–APR–1 Notice has been delivered by U.S. Mail or other means to:**

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

UNITED STATES OF AMERICA          )
                                  )
            v.                    )          2:11-CR-0077-PPS
                                  )
JUAN BRISENO, also known as Tito. )

**GOVERNMENT'S UNOPPOSED MOTION
FOR ENLARGEMENT OF TIME TO FILE EXHIBIT**

**TO THE HONORABLE COURT:**

COME NOW, the United States of America ("United States" or "Government") and, without objection from defendant Juan Briseno ("Mr. Briseno"), requests a seven-day enlargement of time for both parties to file their Exhibit Lists for trial.

1.    This capital case is scheduled to begin jury selection on January 12, 2015;

2.    The Court reviously directed the parties to file their Exhibit Lists for trial on December 12, 2014;

3.    Despite diligent efforts, the Government's Exhibit List is not yet completed;

4.    On December 10, 2014, counsel for Mr. Briseno was consulted and advised that the defendant has no objection to the granting of an enlargement of time to allow both parties to complete and submit their Exhibit Lists for trial.

WHEREFORE, the United States moves the Court to enlarge the time to and including December 19, 2014 to file their respective Exhibit Lists.

Page **1** of **2**

2381

Respectfully submitted,

DAVID CAPP
UNITED STATES ATTORNEY

David J. Nozick
Assistant U.S. Attorney
5400 Federal Plaza
Suite 1500
Hammond, IN 46320
Tel. (219) 937-5655
www.david.nozick@usdoj.gov

s/ *Bruce R. Hegyi*
Bruce R. Hegyi
Trial Attorney
Capital Case Unit
Criminal Division
United States Department of Justice
1331 F Street, N.W., Third Floor
Washington, D.C. 20530
Tel. (202) 616-4582
Cell (703) 536-4774
www.bruce.hegyi@usdoj.gov

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | 2:11 CR 77 PPS |
| | ) | |
| JUAN BRISENO | ) | |

**GOVERNMENT'S MOTION TO FILE INSTANTER**

Comes now the United States of America, by counsel, David Capp, United States Attorney for the Northern District of Indiana, through Assistant United States Attorney David J. Nozick, and hereby requests permission to file instanter the Government's Motion in Limine Regarding the Admissibility of an Excited Utterance Under Federal Rule of Evidence 803(2) at Trial. In support, the government states as follows:

1. On June 25, 2014, this Honorable Court issued a scheduling order, establishing December 1, 2014 as a deadline to file Motions in Limine. [R. 963].

2. Since the passing of this deadline, it has come to the government's attention that it inadvertently failed to put the defendant and court on notice of its intent to enter evidence of an excited utterance at trial.

3. The government is of the belief that this is a fairly straightforward evidentiary issue, and the late filing of this Motion in Limine should not cause a delay in trial or affect any other deadlines. In fact, the government believes that this honorable court need not rule on this motion prior to trial, and can instead rely on the evidence presented at trial to rule on the admissibility of the statement.

4. The government apologizes to both this honorable court and the defendant for the late filing of this motion in limine.

Wherefore, based upon the reasons stated above, the government respectfully requests that this honorable court allow the government to file its Motion in Limine on or about December 11, 2014.

Respectfully submitted,

DAVID CAPP
UNITED STATES ATTORNEY


By:      /s/ David J. Nozick
David J. Nozick
Assistant United States Attorney
5400 Federal Plaza, Suite 1500
Hammond, Indiana 46320
(219) 937-5500

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | |
| v. | ) | NO. 2:11 CR 77 PPS |
| | ) | |
| JUAN BRISENO | ) | |

CERTIFICATE OF SERVICE

The undersigned hereby certifies that the Government's Motion to File Instanter was

electronically filed with the Clerk of the Court using the CM/ECF system which sent notification

of said filing to the following individuals:

      ARLINGTON J. FOLEY
      JOHN MAKSIMOVICH
      (Attorneys for defendant Juan Briseno)

           By:    /s/ Janet L. Eisenmann
                    Janet L. Eisenmann
                    U.S. Attorney's Office
                    5400 Federal Plaza, Suite 1500
                    Hammond, Indiana 46320
                    (219) 937-5500

2385

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

UNITED STATES OF AMERICA          )
                                  )
          v.                      )          2:11 CR 77 PPS
                                  )
JUAN BRISENO                      )

**GOVERNMENT'S MOTION IN LIMINE REGARDING THE ADMISSIBILITY OF AN
EXCITED UTTERANCE UNDER FEDERAL RULE OF EVIDENCE 803(2) AT TRIAL**

Comes now the United States of America, by counsel, David Capp, United States Attorney

for the Northern District of Indiana, through Assistant United States Attorney David J. Nozick, and

hereby provides notice to the court and the defendant that it intends to introduce evidence of an

excited utterance at trial.

The Excited Utterance exception to the Hearsay Rule is found in Federal Rule of Evidence

803(2), which provides:

The following are not excluded by the rule against hearsay, regardless of whether the
declarant is available as a witness:

(2) Excited Utterance.   A statement relating to a startling event or condition, made while
the declarant was under the stress of excitement that it caused.

Fed.R.Evid. 803(2)

For an out of court statement to qualify under the excited utterance exception: (1) a

startling event must have occurred; (2) the declarant must make the statement under the stress of

the excitement caused by the startling event; and (3) the declarant's statement relates to the

startling event.   *United States v. Zuniga*, 767 F.3d 712, 716 (7th Cir. 2014); *citing United States v.*

*Joy*, 192 F.3d 761, 766 (7th Cir. 1999).

The defendant is charged with committing six different homicides, one of which is the

homicide of Miguel Colon on February 7, 2010.   The government anticipates that the evidence at

trial will be that late in the evening on February 6, 2010, Briseno and fellow Imperial Gangsters

received a telephone call informing them that Miguel Colon, a member of the Two Six gang, was at a particular party in the Harbor neighborhood of East Chicago, Indiana. Galo Feliciano, Juan Briseno and Robert Lockhart left Briseno's Hammond residence together, and stopped to pick up an associate (who has not yet been charged for his involvement in this case.) Together the four individuals then drove to the Harbor neighborhood, and lay in wait for Miguel Colon to exit the party.

When Colon exited the party, he got into his car that was parked a short distance away and returned to the area of the party to pick up his friend, Corey Walton, who was on crutches from having sustained an earlier gunshot wound to his leg. Recognizing Colon, Galo Feliciano drove alongside Miguel Colon's car, and Juan Briseno fired multiple shots at Miguel Colon, fatally wounding Colon. After Juan Briseno began firing at Colon, Colon and at least one other individual shot back at Briseno, striking the car that Briseno and his fellow Imperial Gangsters were in. With the return of fire by Colon and his associate(s), Robert Lockhart joined Briseno in firing at Colon and Colon's associates as well.

### The Excited Utterance

At trial, the government anticipates that Subject 40 will testify that he was present inside the party in the Harbor neighborhood of East Chicago when Miguel Colon was shot. Almost immediately after Colon was shot, Subject 40 ran out of the party and encountered Corey Walton, who was kneeling in the street, holding the wounded and bleeding Colon in his arms. Subject 40 asked Corey Walton what happened, and Corey Walton, who was in an excited, emotional state, told Subject 40 that it was "Tito" (Juan Briseno) who shot Miguel Colon.

Applying the Seventh Circuit's test in *Zuniga* and *Jay* to the facts presented here, it seems clear that (1) the drive-by shooting of Miguel Colon must certainly qualify as a startling event; (2) at the time Corey Walton made the statement that "Tito" (Juan Briseno) was the shooter, Corey Walton – who, moments before, had participated in a gun battle in which the friend he was

cradling in his arms had been mortally wounded -- was under the stress of the excitement caused by the drive-by shooting; and (3) Corey Walton's statement related to the startling event of the drive-by shooting which occurred moments earlier.

Because Corey Walton's identification of "Tito" (Juan Briseno) as the shooter of Miguel Colon "relat[ed] to a startling event or condition, made while the declarant was under the stress of excitement that it caused," his statement is a Rule 803(2) "excited utterance" and should be admitted at trial.   *United States v. Zuniga*, 767 F.3d at 716; *United States v. Joy*, 192 F.3d at 766.

Wherefore, based upon the reasons stated above, the government respectfully requests that this honorable court allow it to introduce Corey Walton's statement to Subject 40 at trial under the excited utterance exception to the hearsay rule.

> Respectfully submitted,
>
> DAVID CAPP
> UNITED STATES ATTORNEY
>
>
> By:    /s/ David J. Nozick
> David J. Nozick
> Assistant United States Attorney
> 5400 Federal Plaza, Suite 1500
> Hammond, Indiana 46320
> (219) 937-5500

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION


UNITED STATES OF AMERICA    )
    )
     v.    )    NO. 2:11 CR 77 PPS
    )
JUAN BRISENO    )


CERTIFICATE OF SERVICE

The undersigned hereby certifies that the Government's Motion in Limine Regarding the

Admissibility of an Excited Utterance Under Federal Rule of Evidence 803(2) At Trial was

electronically filed with the Clerk of the Court using the CM/ECF system which sent notification

of said filing to the following individuals:

    ARLINGTON J. FOLEY
    JOHN MAKSIMOVICH
    (Attorneys for defendant Juan Briseno)


        By:    /s/ Janet L. Eisenmann
            Janet L. Eisenmann
            U.S. Attorney's Office
            5400 Federal Plaza, Suite 1500
            Hammond, Indiana 46320
            (219) 937-5500

THE UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

|                                             |   |                             |
|---------------------------------------------|---|-----------------------------|
| UNITED STATES OF AMERICA,<br>Plaintiff,     | §<br>§<br>§<br>§ |         |
| v.                                          | §<br>§ | CAUSE NO.  2:11-CR-0077-PPS |
| JUAN BRISENO, also known as Tito,<br>Defendant. | §<br>§<br>§<br>§ |       |

**GOVERNMENT'S SUR-REPLY TO DEFENDANT'S REPLY TO
GOVERNMENT'S LIMITED OBJECTIONS TO DEFENDANT'S
<u>REQUESTED PRELIMINARY VOIR DIRE INSTRUCTIONS</u>**

TO THE HONORABLE COURT:

COMES NOW, the United States of America ("United States" or "Government"), by and through the undersigned counsel, and files is sur-reply to defendant Juan Briseno's  Reply [DE #1213] to the Government's Limited Objections [DE # 1201] to the Defendant's Requested Preliminary Voir Dire Instructions [DE #1182].

1.      In his Reply, Mr. Briseno repeatedly requests that the Court adopt and rely upon the rulings of the Hon. Jose A. Fuste in *United States v. Candelario-Santana*, 09-CR-427 (JAF).  [*See* <u>Reply</u>, pages 4, 7]  Indeed, Mr. Briseno's Reply says that the language proposed by Mr. Briseno is "the exact same language … used by Judge Jose A. Fuste in *United States v. Candelario-Santana*…." [<u>Reply</u>, page 4]   In further support of his invitation for this Court to adopt Judge Fuste's preliminary voir dire instructions, Mr. Briseno attaches as Exhibit A to his Reply the 8-page Charge employed by Judge Fuste in Candelario-Santana.   [*See* Exhibit A to <u>Reply</u>]

2.      Unfortunately, Mr. Briseno Reply overlooks the fact that in Judge Fuste's trial of *United States v. Jimenez-Bencevi*, 12-CR-221 (JAF) – that began within weeks of the conclusion of the Candelario-Santana trial -- Judge Fuste recognized the errors of what occurred in the *Candelario-Santana* trial with regard to the preliminary voir dire and he corrected the errors in the *Jiminez-Bencevi* trial:

A.      At the March 25, 2013 Status Conference in *Jiminez-Bencevi*, Judge Fuste altered the parties that *Candelario-Santana* was his first death penalty trial: "[m]y first experience in that kind of case, and I allowed a lot of leeway to the lawyers on both sides, government and defendant, as to many things that I then discovered in the context of my own preparation, in the context of my own exposure to the case, in the context of my own research, that there were things that were totally unnecessary or not proper in the context of either comment or instructions and things of that sort." [03/25/2014 Tr., page 11][1]   Judge Fuste invited the parties to provide briefing on these issues in supplement of the Court's independent research.  [03/25/2014 Tr., pages 10-12]

B.      In response to Judge Fuste's invitation, on March 26, 2013 Government filed in *Jiminez-Bencevi* its "Informative Motion" providing briefing on various preliminary voir dire issues, *inter alia*, on whether or not the jurors should be informed of the consequence of the potential that they might not be able to unanimously agree on a verdict.  [*See Jiminez-Bencevi* [DE #404], pages 3-7][2]

---

[1]  The transcript of the March 25, 2013 status hearing is attached hereto as Exhibit 1.
[2]  The Government's March 26, 2013 Informative Motion [*Jiminez-Bencevi* DE #404] is attached hereto as Exhibit 2.

C.    On April 1, 2013, Judge Fuste entered his Order [DE #424]³ in

*Jiminez-Bencevi* stating in pertinent part:  "In reference to Docket No. 404 [the

Government's Informative Motion], filed by the Government on March 26, 2013, the

court rules as follows:  ***The court is in agreement that the general principles outlined in***

***said document are in tune with the present status of the law.  Both the Government and***

***Defense Counsel will abide by these principles during jury selection***.  No mention shall

be made of 'moral duty' [or] of 'moral obligation' will be made."  [*Jiminez-Bencevi* [DE

#424] (emphasis provided)]

Respectfully submitted,

DAVID CAPP
UNITED STATES ATTORNEY

David J. Nozick
Assistant U.S. Attorney
5400 Federal Plaza
Suite 1500
Hammond, IN 46320
Tel. (219) 937-5655
www.david.nozick@usdoj.gov

s/ *Bruce R. Hegyi*

Bruce R. Hegyi
Trial Attorney
Capital Case Section
Criminal Division
United States Department of Justice
1331 F Street, N.W., Third Floor
Washington, D.C.  20530
Tel. (202) 616-4582
Cell (703) 536-4774
www.bruce.hegyi@usdoj.gov

---

³  Judge Fuste's April 1, 2013 Order [*Jiminez-Bencevi* DE #424] is attached hereto as Exhibit 3.

2392

<u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this date, I electronically filed the foregoing document and accompanying exhibits with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record for defendant Juan Briseno.

s/ *Bruce R. Hegyi*
Bruce R. Hegyi
Trial Attorney

2393

Case 3:12-cr-00221-JAF   Document 794   Filed 03/16/14   Page 1 of 39
Case 15-2347   Document 35   Filed 07/27/2016   Pages: 4186
Case 2:11-cr-00077-PPS-APR   Document 1223-1   Filed 12/11/14   Page 1 of 39

1

UNITED STATES DISTRICT COURT

DISTRICT OF PUERTO RICO

UNITED STATES OF AMERICA,

          Plaintiff,

v.                              Docket No. 12-221

                            San Juan, Puerto Rico

XAVIER JIMENEZ-BENCEVI,        March 25, 2013

          Defendant.
_____

STATUS CONFERENCE

BEFORE THE HONORABLE JUDGE JOSÉ A. FUSTÉ,

UNITED STATES DISTRICT JUDGE.

_____

APPEARANCES:

For the Government:        Ms. Ilianys Rivera Miranda, AUSA
                        Mr. James Peterson, AUSA
                        Mr. Jose Capo, AUSA

For the Defendant:         Mr. John Martin, PHV
                        Ms. Laura Maldonado, Esq.

Proceedings recorded by stenography.  Transcript produced by CAT.

Case 3:12-cr-00221-JAF   Document 794   Filed 03/16/14   Page 2 of 39
Case 15-2347   Document 35   Filed 07/27/2016   Pages: 4186
Case 2:11-cr-00077-PPS-APR   Document 1223-1   Filed 12/11/14   Page 2 of 39

2

```
                          I N D E X

WITNESSES:                                           PAGE

      None offered.


EXHIBITS:

      None offered.
```

Case 3:12-cr-00221-JAF   Document 794   Filed 03/16/14   Page 3 of 39
Case 15-2347   Document 35   Filed 07/27/2016   Pages: 4186
Case 2:11-cr-00077-PPS-APR   Document 1223-1   Filed 12/11/14   Page 5 of 39

3

San Juan, Puerto Rico

March 25, 2013

At or about 4:09 PM

*     *     *

COURTROOM DEPUTY:  Criminal 12-221, USA versus Xavier Jimenez Bencevi for status conference.  On behalf of the Government, Ilianys Rivera, Luke Cass, James Peterson and Jose Capo.  On behalf of the defendant, Laura Maldonado and John Martin.

MR. PETERSON:  Good afternoon, Your Honor.

MR. CAPO:  Good afternoon, Your Honor.  The United States is ready to proceed.

THE COURT:  First of all, let me discuss a couple things with you.  First of all, there is a motion by the Government requesting an anonymous jury.  If I remember correctly, I entered an Order.  I wanted to receive your input soon, fast.

MR. MARTIN:  We filed that today.

THE COURT:  You filed it?

MR. MARTIN:  Yes.

THE COURT:  I have to look at it.  I haven't looked at your response.

MR. MARTIN:  Yes, sir.

THE COURT:  But I want you to know from even before, from the moment the motion was filed, I thought, I was kind of

Case 3:12-cr-00221-JAF   Document 794   Filed 03/16/14   Page 4 of 39
Case 15-2347   Document 35   Filed 07/27/2016   Pages: 4186
Case 2:11-cr-00077-PPS-APR   Document 1223-1   Filed 12/11/14   Page 4 of 39

4

inclined to do that.  But of course I haven't decided it yet. I have to look at your response and see where we stand.

So I just wanted you to know that that is a possibility.  I don't know yet what I'm going to do.  I haven't read yet your response.

MR. MARTIN:  It's docket 393, Your Honor.  It's relatively short.

THE COURT:  I'll take a look at it as soon as I get off the bench of course.

MR. MARTIN:  Yes.

THE COURT:  The other thing I wanted to tell you is we're going to need -- you received a copy of my questionnaire.  I modified that questionnaire this morning a bit, and I'm going to give you a copy today again so you'll have it.

We're going to need 62 jurors in this case, qualified jurors.  Why 62?  Because you need 12 regular jurors, you need six alternates, you have 20 peremptories each side, and you have six peremptories for alternates.  So we're going to need 62.

As you receive the questionnaires, I expect the parties to take a look at the questionnaires, and if you can possibly stipulate people that both sides think are not qualified at all, you should let me know about those lists. Let's suppose that you receive your questionnaires for X day

Case 3:12-cr-00221-JAF   Document 794   Filed 03/16/14   Page 5 of 39
Case 15-2347   Document 35   Filed 07/27/2016   Pages: 4186
Case 2:11-cr-00077-PPS-APR   Document 1223-1   Filed 12/11/14   Page 5 of 39

5

in the afternoon, usually that is what's happening, they are scanned and distributed by e-mail in one afternoon.  I expect that by 12:00 noon the next day you give me a stipulated list of those that both sides understand are not qualified.  So we don't waste any time with those.  Okay?

I intend to start the jury selection at 8:30 in the morning.  And I'm going to call in 25 persons a day at least. And then of course I don't want -- you have the questionnaires.  You're going to have the answers.  I don't want counsel nor the Government to explain to the jury once again what -- how is it that we select a jury, how is it we do this or do that, because that's not the purpose of that.  The purpose of this is to ask them questions specifically regarding some of the aspects that you have an interest on on the basis of the reply.

For that reason, since we're going to take 25 a day, I don't think that we should allow more than 16 minutes per juror for examination.  That's it.  It's going to be divided by two, more or less eight minutes each side.  Straight to the point, what has us here, no charge, no explanation, no discourse about how is it that we try cases or anything of the sort.  Go and ask the questions.

If it's a matter of instructing, I'll take care of that.  And actually I will take care of that.  Okay?  I don't want any mention of moral obligations or anything of the sort

Case 3:12-cr-00221-JAF   Document 794   Filed 03/16/14   Page 6 of 39
Case 1:15-2347   Document 35   Filed 07/27/2016   Pages: 4186
Case 2:11-cr-00077-PPS-APR   Document 1223-1   Filed 12/11/14   Page 6 of 39

6

during this stage of the proceedings.  I don't think -- I frankly am looking at these things.  I'm researching this, but I do not find any single case that tells me that deciding a case of this nature is a matter of moral inclination.  It's a matter of deciding on the facts and the law.

So please, at this stage at least, at this stage at least, jury selection, don't start putting into the jury ideas that this is a moral thing and things of the sort, because I will not allow it.  Simple as that.

And of course I'm doing research on this issue, and I will be in a better position to make a decision as to preliminary instructions and final instructions on this issue later.  If you want to look into the matter yourselves, about moral obligations and things of the sort, and find cases and illustrate me one way or the other, I will gladly look at those aside from the research that I'm doing.

Let me see what else.  We're starting at eight o'clock in the morning.  I told you that.

The petitions for exclusion for cause are going to be done right after the juror leaves the room.  When the juror leaves the room, thank you very much, sir, you are now excused for the time being.  We'll discuss it and decide whether a person is qualified or not.

When we get to the point of striking, I will ask you to do it on a one-to-one basis.  Once we have a panel of 62,

Case 3:12-cr-00221-JAF Document 794 Filed 03/16/14 Page 7 of 39
Case 15-2347 Document 35 Filed 07/27/2016 Pages 4186
Case 2:11-cr-00077-PPS-APR Document 1223-1 Filed 12/11/14 Page 7 of 39

7

what I will do is one side will do a strike. The other side will do a strike, back and forth until the 40 strikes are exhausted.

This is going to be a short case on the issue of guilt I suppose. How long will the guilt phase take?

MR. CAPO: Eighteen witnesses, Your Honor.

THE COURT: That's it?

MR. CAPO: (Nodding head up and down.)

THE COURT: Eighteen witnesses. That could be three, four days at the most. Easy.

MR. MARTIN: We may have a day.

THE COURT: Hmm?

MR. MARTIN: We have a defense.

THE COURT: I understand that.

MR. MARTIN: Yes.

THE COURT: But let's suppose it takes a week, six days, seven days at the most. At the most. Be prepared to start -- if there is a conviction, we're going to start the guilt phase immediately. I'm not going to give a week in between.

So you better get your act together and be prepared. I'm advising you there's going to be no intermission between the two phases. No way. There's too many discussions with these issues on the street, too many opinions which may be prejudicial to the defendant, as a matter of fact. And I

Case 3:12-cr-00221-JAF   Document 794   Filed 03/16/14   Page 8 of 39
Case 15-2347   Document 35   Filed 07/27/2016   Pages: 4186
Case 2:11-cr-00077-PPS-APR   Document 1223-1   Filed 12/11/14   Page 8 of 39

8

don't want to take any chances with this.  So I'd rather have the jurors here since eight o'clock in the morning, let them go home in the afternoon straight to their house, late in the afternoon, because we work late here.  Let them come in the morning again.  They have to be very early to be able to be here at 8:30 to start the trial.  And the least time they have to consult or to get into extraneous influences the better.

It is entirely possible, entirely possible that for purposes of deliberations, the deliberations I may consider, I haven't decided, but I may consider sequestration for deliberations.  That's a possibility.  I don't know yet whether I'll do that, but I'm advising them on the questionnaire that that is a possibility.  On deliberations only.  On deliberations only.

So any other question that you may have as to my plan of action?

MR. MARTIN:  Your Honor, I have no questions about your plan of action.  And I don't really intend to request questions about moral decision, but I will tell the Court that the classic statement is Justice O'Connor's statement in her concurrence, that the decision of the death penalty case is a reasoned, moral response to the defendant, his character and his crime.  That is Supreme Court case law.

THE COURT:  Right.  But --

MR. MARTIN:  I'm not quibbling with you, but that's

Case 3:12-cr-00221-JAF   Document 794   Filed 03/16/14   Page 9 of 39
Case 15-2347   Document 35   Filed 07/27/2016   Pages: 4186
Case 2:11-cr-00077-PPS-APR   Document 1223-1   Filed 12/11/14   Page 9 of 39

9

the phrase that often is used.

THE COURT:  The problem is that, the problem is that I had an experience recently involving the use of the moral situation.  It was totally outside the bounds of that concurrence.

MR. MARTIN:  Right.

THE COURT:  I allowed it, and I am convinced that that is not the law.  All I'm asking you is at the first stage of jury selection, when you are asking questions about the views of death penalty --

MR. MARTIN:  Right, sir.

THE COURT:  -- don't delve into that, because I'm studying it.  I'm really studying it carefully.  And if there is something along those lines that is permissible, I will allow it in the permissible fashion, not in the non-permissible fashion.  That's all I'm saying.

Remember, there is the law and there are facts.

MR. MARTIN:  Right.

THE COURT:  There has to be a responsible, conscientious, objective, serious, honest, all the different adjectives you want to put in, the moral is always built in into the person.  But if a person has a moral issue regarding, for example, punishment of any kind or findings of any kind, perhaps the person is not qualified to be a juror to begin with.

Case 3:12-cr-00221-JAF   Document 794   Filed 03/16/14   Page 10 of 39
Case 15-2347   Document 35   Filed 07/27/2016   Pages: 4186
Case 2:11-cr-00077-PPS-APR   Document 1223-1   Filed 12/11/14   Page 10 of 39

10

The same way that a person that says, I cannot morally find anybody guilty, I cannot sit in judgment of others, that's my moral view, a person like that would not be qualified for any kind of case.

MR. MARTIN:  I mean, this gets pretty esoteric at some point.

THE COURT:  Right.

MR. MARTIN:  And now's not the time to go into it, but there is a certain context in death penalty case in which a juror is making a moral decision not in the sense of their own personal views of the world order or something, but there is -- it's a very, you know, decision --

THE COURT:  But I think every judge does that.

MR. MARTIN:  Right.

THE COURT:  Even if you don't tell them.  In a regular felony case for murder, you don't tell the jurors you have a moral obligation to do this or that.  The instructions would never read that way.

MR. MARTIN:  Right.

THE COURT:  So all I'm saying is I am looking into it.  I want to make certain that I do the right thing.  And all I'm asking is unless I first tell you what is the final answer of my research, if we reach the jury selection stage on the 1st of April, and we are not clear still as to what is the extent of that, all I'm asking you is not to mention it in the

Case 3:12-cr-00221-JAF   Document 794   Filed 03/16/14   Page 11 of 39
Case 15-2347   Document 35   Filed 07/27/2016   Pages: 4186
Case 2:11-cr-00077-PPS-APR   Document 1223-1   Filed 12/11/14   Page 11 of 39

11

context of jury selection without the prejudice of mentioning it in some other fashion at the appropriate moment.

MR. MARTIN:  Was there something that came up in the Candelario case that you felt was wrong?

THE COURT:  No.  No.  Just that was my first experience with this kind of case.

MR. MARTIN:  Right.

THE COURT:  My first experience in that kind of case, and I allowed a lot of leeway to the lawyers on both sides, government and defendant, as to many things that I then discovered in the context of my own preparation, in the context of my own exposure to the case, in the context of my own research, that there were things that were totally unnecessary or not proper in the context of either comment or instructions and things of the sort.  That's all I'm saying.

MR. MARTIN:  All right.

THE COURT:  I just want to do it correctly.  Okay.

MR. MARTIN:  Sure.

THE COURT:  The rules have to be the rules.  I'm a judge that goes by the rules, and of course that was a learning experience.  I was trying my first case, and I developed a lot of good impressions and experiences.  But I also learned a lot.  And through the process, I was constantly studying and researching and looking for ways to improve the handling of a case of this nature.  That's all.

Case 3:12-cr-00221-JAF  Document 794  Filed 03/16/14  Page 12 of 39
Case 15-2347  Document 35  Filed 07/27/2016  Pages: 4186
Case 2:11-cr-00077-PPS-APR  Document 1223-1  Filed 12/11/14  Page 12 of 39

12

MR. MARTIN:  Okay.

THE COURT:  All I'm saying is, for the time being, when we start jury selection, I hope to have an answer for you regarding that research.  I hope.  If I don't, then you know what we're going to do.

In any event, if you have something to give me immediately, short memorandum, on what are the bounds of this, I'd love to have it.  I'd love to have it, because it will help me of course.

MR. MARTIN:  Okay.

THE COURT:  Remember that sometimes three minds can think better than one mind, see?  And so you have anything, your side, your side, my own research, and then we'll take it from there.

So let me see.  We're going to have 62 prequalified jurors.  We are going to have -- since there's going to be no instructions by the lawyers or the Government, I don't want to hear this thing, members of the jury, I know that this must be very tough for you, you must be very nervous today, because you are here to be voir dired individually.  Relax.  This is okay.  I don't want to hear that, see?  It's just not my kind of thing.

I allowed it in the first case.  Okay?  If they are not relaxed, that's their problem.  I'm the one that has to take care of them being relaxed.  If there was something to

Case 3:12-cr-00221-JAF   Document 794   Filed 03/16/14   Page 13 of 39
Case 15-2347   Document 35   Filed 07/27/2016   Page: 4186
Case 2:11-cr-00077-PPS-APR   Document 1223-1   Filed 12/11/14   Page 13 of 39

13

say, I'll say it.  That kind of thing.

I want you to go to the nitty gritty, exactly to the issue.  Sir, you expressed in your questionnaire so and so, that you are number ten on the death penalty.  Give us a reason for that.  Why do you want to be a number ten, or a one, or a five?

All of those things of course you can go into that, but I don't want any instructions by the lawyers or anything of the sort.  Let me handle that myself.  And I'm going to prepare a good instruction.

Let me see.  So we have 62.  We're going to have within that four alternates, only four, not six this time.  The case is short.  Because the case is relatively short, I'm telling you that I'm not going to sit in my chambers sitting on all this for a week.  It was devastating for me to think -- if it was a case three months to trial, but you know in advance that any mitigation that you may want to bring, you have to line it up for now depending on what happens, if there is a guilt phase -- penalty phase.  I'm sorry.

Let me see.  The number of minutes more or less that we're going to allow interviewing.  The way we're going to strike.  Don't excuse people because of hardship, because they live in Mayaguez for example on your own.  If they live in Mayaguez, I am willing to pay a hotel for them in San Juan to stay during the week, so that's not an excuse, see?

Case 3:12-cr-00221-JAF   Document 794   Filed 03/16/14   Page 14 of 39
Case 15-2347   Document 35   Filed 07/27/2016   Pages: 4186
Case 2:11-cr-00077-PPS-APR   Document 1223-1   Filed 12/11/14   Page 14 of 39

14

I don't want a person to drive from Mayaguez at four o'clock in the morning to come to court every day for ten days, but I am willing to spend the money to put them in a hotel in San Juan so the person doesn't have to do that. So that will not be a hardship. See?

Let me see. Lodging and transportation of course will be offered.

About anonymous, I already told you I have to think about it. I have to really think about it. I don't know what I'm going to do yet.

About 25 a day I guess. The last thing I want to do is have a trial that lasts ten days and spend three months in jury selection. No way. We're going to do it right, but we're going to do it fast. Okay?

What else? Any other thing that you may need?

MR. MARTIN: Well, Your Honor, a couple of things are outstanding that would help us get in trial prep, ready for trial preparation. I filed a response, and also it deals with the question how long the Government's guilt-innocence case will be, regarding Rule 404(B) evidence. I filed a response today.

They've listed three instances which they claim are admissible under 404(B) as identity evidence. I don't see that.

THE COURT: As what?

Case 3:12-cr-00221-JAF Document 794 Filed 03/16/14 Page 15 of 39
Case 15-2347 Document 35 Filed 07/27/2016 Page: 4186
Case 2:11-cr-00077-PPS-APR Document 1223-1 Filed 12/11/14 Page 15 of 39

15

MR. MARTIN: Identity evidence, like the modus operandi, the signature of crime.

THE COURT: Wait a minute. Let's take a look at 404(B).

MR. MARTIN: 404(B) one two talks about the purposes of -- well, 404(B) says you can't put in evidence merely to show propensity to commit crime, as you well know.

THE COURT: Of course.

MR. MARTIN: 404(B)(2) talks about, okay, some exceptions to that rule, one of which is identity. I've cited to the Court a number of First Circuit cases and other cases where what they're really talking about there is crimes that are so identical that they're almost like a signature. And I don't perceive this.

I didn't understand these other cases. The only thing that is identical is a firearm was used, albeit not the same type of firearm. One's an AK-47. One's a nine millimeter, a very common pistol, and the defendant may at least on two of those occasions have hidden the gun afterwards.

THE COURT: Hid the gun.

MR. MARTIN: Hid the gun. That's hardly a signature crime. There are hundreds of crimes committed like that every year here in Puerto Rico.

THE COURT: Everywhere.

Case 3:12-cr-00221-JAF   Document 794   Filed 03/16/14   Page 16 of 39
Case 15-2347   Document 35   Filed 07/27/2016   Pages: 4186
Case 2:11-cr-00077-PPS-APR   Document 1223-1   Filed 12/11/14   Page 16 of 39          16

MR. MARTIN:  Everywhere.  But I'm just saying since we're here --

THE COURT:  If you use a gun, you normally would try to hide it.

MR. MARTIN:  Right.  So I don't see -- and I will concede I just filed my response this morning.  It was due today.

THE COURT:  Which I haven't seen either.

MR. MARTIN:  Yes, sir.  But that would -- I don't know, when they said they had 18 witnesses, I assume they were talking about 404(B) evidence as well.  I don't know, but that will clearly be relevant to how long the --

THE COURT:  Well, let me ask them, what is the 404(B) you intend to use?  Maybe I know what -- need to know what it is.

MR. CASS:  Sure.  The first is a 2007 murder of Eduardo Rivera Cabrero, which bore a striking similarity --

THE COURT:  In what sense?

MR. CASS:  Mr. Cabrero was shot 11 times.  The victim in this case was shot seven times.  All involving the use of high power firearms, in that case an AK --

THE COURT:  I don't think that is 404(B).  I'm sorry.  What else?

MR. CASS:  Very well, Your Honor.  The second one wasn't just identity.

Case 3:12-cr-00221-JAF   Document 794   Filed 03/16/14   Page 17 of 39
Case 15-2347   Document 35   Filed 07/27/2016   Page 17 of 39
Case 2:11-cr-00077-PPS-APR   Document 1223-1   Filed 12/11/14   Page 17 of 39

17

THE COURT:  That could be evidence in another context for aggravating circumstances eventually or things of the sort, but not 404(B) on guilt.

What is the other one?

MR. CASS:  Okay.  The other one was a 2010 shooting of policemen.  As Your Honor knows, Counts II and III require proof of knowledge with respect to the firearm count.  So for the 2010 shooting of three policemen, he did that using a rifle.  And there's a string set of cases that we cited about possession of a weapon on prior instances to show, prove knowledge and possession in this case, Your Honor.

THE COURT:  Well, it all depends.  There you have to strike a balance.  Remember, you have a video here.

MR. CASS:  That's right, Your Honor.

THE COURT:  You have a video, and the gun is in the video, isn't it?

MR. CASS:  That's true.  We also have to prove knowing possession for Counts II and III, Your Honor, beyond a reasonable doubt.

MR. MARTIN:  But there's no dispute the person committed the crime.  He has a gun in his hand.

THE COURT:  If it's not a disputed issue, and black and white in a video, I don't think you should be allowed to just make it more patent than what it actually is by putting 404(B) evidence saying he killed somebody else with a gun

Case 3:12-cr-00221-JAF   Document 794   Filed 03/16/14   Page 18 of 39
Case 15-2347   Document 35   Filed 07/27/2016   Pages: 4186
Case 2:11-cr-00077-PPS-APR   Document 1223-1   Filed 12/11/14   Page 18 of 39

18

also.

MR. CASS:  And if it's the same type of gun, Your Honor -- the Victory Shopping Center, nine millimeter casings were recovered from that.

THE COURT:  Nine millimeter is a very common gun.  I don't think you'll be allowed to use 404(B) for those purposes.  I'm not saying it is not relevant for other purposes, but I think Mr. Martin has a point that it is not the kind of 404(B) that the First Circuit would allow on appeal it seems to me.

MR. CASS:  Very well, Your Honor.  Obviously it's discretionary.

THE COURT:  I just want to tell you.

Now, of course remember that I don't like to make in limine rulings like that.  I'm giving you an advisory opinion now.

MR. MARTIN:  Okay.

THE COURT:  If something happens in the context of the trial, I'm telling you I'm not inclined to admit such a thing for that purpose, but if something happens in the context of the actual trial that merits you to revisit it or bring it again, we can discuss it.  But it all depends on how is it, what is the posture of the case at that moment, what is happening, what was testified about, what is the cross-examination about, what is the deal.

Case 3:12-cr-00221-JAF  Document 794  Filed 03/16/14  Page 19 of 39
Case 15-2347  Document 35  Document 1223-1  Filed 07/27/2016 1/14  Pages: 4186 of 39
Case 2:11-cr-00077-PPS-APR  Document 1223-1  Filed 12/11/14  Page 19 of 39

19

Once you get it, you can put a finger on it, then you can say whether the incident of whatever time or -- whatever time is or is not relevant for the purposes of 404(B).  But at this time my inclination is to tell you it's not 404(B).

MR. CASS:  I would request, Your Honor, you take a look at the Hicks case, a Fourth Circuit case from 2003.  In that case, it involved a murder.  And there was some prior 404(B) evidence, a threat of murder was used.

THE COURT:  Was there a video in that case?

MR. CASS:  No video in that case.

THE COURT:  You have a video of this man killing this woman with a gun.

MR. CASS:  Understood, Your Honor.

THE COURT:  I mean, you cannot beat a dead horse.  I mean, what else do you want?  A video.  How many cases have you tried that have a video like that?  Seldom ever.

I had one of the murder of an informant in the back seat of a car.  The car had been rigged by the FBI with a camera, and the shooting of the witness was recorded in the video.  But that's that one, and maybe this one.  That's about it.  That doesn't happen every day.

What else, Mr. Martin?

MR. MARTIN:  Your Honor, I'm just raising these issues because I'm just trying to clean up as much as I can prior to trial.

Case 3:12-cr-00221-JAF   Document 794   Filed 03/16/14   Page 20 of 39
Case 15-2347   Document 35   Filed 07/27/2016   1/1   Pages: 4186
Case 2:11-cr-00077-PPS-APR   Document 1223-1   Filed 12/11/14   Page 20 of 39

20

THE COURT:  Absolutely.

MR. MARTIN:  There was a -- the Government filed a motion in limine to admit evidence under 804(B)(6).

THE COURT:  That's the statements.

MR. MARTIN:  Yes, sir.  The statements of the victim.

THE COURT:  I read your papers, and I'm thinking about it.  I don't know what to do yet.

MR. MARTIN:  Well, I don't know if it will help to discuss it a little bit today.  I see it quite frankly as two separate issues.  There are the statements that she made to the probation officer, which don't -- and we reviewed the probation officer's file today.  That -- in which Ms. Sanchez Sanchez makes certain statements, and the most important one is that the defendant is armed and dangerous and owns a drug point in Falin, without describing how she knows it, where she got that information, when she was told that by his brother Alexis, with whom she had a relationship at the time.

We don't know.  We don't have any basis to know why she was saying that.

And in addition, the probation officer report, which you see attached, specifically says that Ms. Sanchez Sanchez did not provide any specific information to Aponte regarding Xavier.

THE COURT:  Remember, I have not seen the report by

Case 3:12-cr-00221-JAF   Document 794   Filed 03/16/14   Page 21 of 39
Case 15-2347   Document 35   Filed 07/27/2016   Pages: 4186
Case 2:11-cr-00077-PPS-APR   Document 1223-1   Filed 12/11/14   Page 21 of 39

21

probation.

MR. MARTIN:  Well, they are attached to the Government's response.

THE COURT:  Okay.

MR. MARTIN:  Those -- and there was another point that they also describe, and this was an interesting point to me, a complaint that she supposedly filed in which she gave actually a complaint number, complaint number 2010167-8179. We have tried to find that.  It apparently does not exist.  I believe the Government tried to find it as well.  It does not exist.  Nor have we been able to identify the police officer, Agent Colon, badge number 16071.  We are told that that badge number would not be a Bayamon number.  So --

THE COURT:  Is there a statement associated with that incident?

MR. MARTIN:  There's supposedly a statement, but the Government hasn't provided it, nor can we find it.  We went independently looking for it.

THE COURT:  What is the statement?

MR. CAPO:  Judge, we provided a copy before, the notes taken by Luz Anita Aponte, probation officer, where she indicates Delia Sanchez Sanchez had indicated to her that Mr. Xavier Jimenez Bencevi had threatened to kill her.  And she went to the police.

And the reason was, she was going to tell on him to

Case 3:12-cr-00221-JAF   Document 794   Filed 03/16/14   Page 22 of 39
Case 15-2347   Document 35   Document 1223-1   Filed 07/27/2016 1/14   Pages: 4186 of 39
Case 2:11-cr-00077-PPS-APR   Document 1223-1   Filed 12/11/14   Page 22 of 39                22

the Federal agents.  That was documented by the probation officer.  We actually documented the copy of the chronus of the notes taken by the probation officer thanks to the Court Order that allowed us to get a copy of that.  And that was provided to defense counsel.

As to the complaint number with Police of Puerto Rico, we did try to find it, but the number Delia Sanchez Sanchez wrote down only contained the first digits of the complaint number, which is usually what citizens get when they file, the date, which includes the year, the precinct, and the area.  And so the last numbers of the complaint were never written down.  And in essence, Your Honor, she probably never got --

THE COURT:  So at least that part of the statement, that part of the statement where she says, I went to the police and filed a complaint in whatever precinct, if it's not documented, we cannot allow that obviously, because we don't know.

MR. MARTIN:  To me, as the Court well knows, 804(B) one six doesn't end the inquiry.  Whatever the witness supposedly said has to be relevant evidence.  It can not be hearsay itself.  She can't say, well, somebody told me something.

THE COURT:  Let me ask you something.  Do you agree that if she told the probation officer that this guy had

Case 3:12-cr-00221-JAF   Document 794   Filed 03/16/14   Page 23 of 39
Case 15-2347   Document 35   Filed 07/27/2016   Pages: 4186
Case 2:11-cr-00077-PPS-APR   Document 1223-1   Filed 12/11/14   Page 23 of 39                23

threatened her, to kill her, that may be a statement --

MR. MARTIN:  Only if -- that becomes a closer question, because we don't know exactly how that threat was made.  We see the documents.  It sounds like what she was saying is that a threat was made to the brother, Alexis, who Alexis then said a threat was made.  It's unclear, as you read the documents.

But let me cut to the chase.  And I think this is what the Government wants.  And I -- the -- what really is at issue here, all this stuff that she's telling the Probation Office, is I don't think would ultimately be admissible evidence.

There is a recording that she made to a woman who goes by Tata.  That person has now been identified to us just recently.  And this re -- essentially this person recorded a conversation with Ms. Sanchez Sanchez.  On that recording, she makes certain statements that other people heard.

Now, the recording is not in existence.  No one has the recording now.  The Government cannot produce it.  I'm not faulting them for it.  They don't have it.  But they have the testimony of people who said they heard the recording.  I don't think just hearing the recording is in and of itself sufficient, but this is where I think they -- this is the tough question for us and for you.

They have witnesses that will say that the recording

Case 3:12-cr-00221-JAF   Document 794   Filed 03/16/14   Page 24 of 39
Case 15-2347   Document 35   Filed 07/27/2016   Pages: 4186
Case 2:11-cr-00077-PPS-APR   Document 1223-1   Filed 12/11/14   Page 24 of 39

24

was played by Mr. Jimenez Bencevi.  And Mr. Jimenez Bencevi played this recording in which certain things were said, essentially that she's going to turn him in.

THE COURT:  How could he play it?

MR. MARTIN:  It was either on a cell phone -- was it a cell phone?

MR. CAPO:  Yes.

MR. MARTIN:  It's like recorded on a cell phone that was preserved.  That's what's represented in the papers we've got.  Now, that's -- I can see an argument that that's not hearsay in the sense it's not being offered to prove that in fact she was going to do that.  But that he heard her say she was going to do that.  And I can see that argument.

So to the extent all of this comes down to me, it seems to me the only thing that would be even arguably admissible would be what people say they heard on the recording in his presence, in Xavier's, Mr. Jimenez Bencevi's presence.  Just because they heard it outside, doesn't satisfy the hearsay exception, but if it's something that he himself heard, it would go to his motive.  And it wouldn't necessarily -- even if she's lying, even if she didn't really tend to do that, even if she was just letting off steam, that would be the only way.  But I think it would need a limiting instruction to that effect, that it be only offered -- and maybe I'm making the Government's case for them, and I

Case 3:12-cr-00221-JAF   Document 794   Filed 03/16/14   Page 25 of 39
Case 15-2347   Document 35   Filed 07/27/2016   Pages: 4186
Case 2:11-cr-00077-PPS-APR   Document 1223-1   Filed 12/11/14   Page 25 of 39          25

shouldn't be doing that, so -- but the bottom line on this, it seems to me the only thing even potentially admissible is those portions of the recording that were actually played in his presence.

THE COURT:  I have to -- I am looking into it, but I cannot tell you one way or the other right now --

MR. MARTIN:  Okay.  I understand.

THE COURT:  -- where I'm going to go with that.  I have no idea what I'm going to do with that, but I will give you an idea soon.

MR. MARTIN:  Okay.  All right.

THE COURT:  But I assure you this kind of situation has to be a situation where it has some sort of us trustworthiness.

MS. RIVERA:  Regarding the comments made to the probation officer, in terms of the information provided by the corroborating witnesses, which tends to corroborate the fact she's been threatened, the fact she made the recording --

THE COURT:  Do you intend to call her to the stand?

MS. RIVERA:  Probation Agent Aponte, yes, Your Honor.

MR. MARTIN:  If it's hearsay, it's hearsay.

THE COURT:  The rule has a purpose.

MR. MARTIN:  Yes, sir.

THE COURT:  If the purpose is satisfied and the

Case 3:12-cr-00221-JAF  Document 794  Filed 03/16/14  Page 26 of 39
Case 15-2347  Document 35  Filed 07/27/2016  Pages: 4186
Case 2:11-cr-00077-PPS-APR  Document 1223-1  Filed 12/11/14  Page 26 of 39      26

requirements of the Rule and case law are satisfied, that's one thing.  If they are not, that's a different story.

MR. MARTIN:  Does the Court want us to file something in writing?  I guess it's sort of gone back and forth.  Now that they've gotten what they say they want to offer --

THE COURT:  I think perhaps you should make another filing.

MR. MARTIN:  Okay.

THE COURT:  Very precisely, you know, not repeating what you said before, simply this is the statement, Judge.  Exactly the statement, for these reasons, A, B and C --

MR. MARTIN:  Okay.  Fine.

THE COURT:  The same thing, you guys.  This is the best case of the statement.  And I do think it's admissible on the basis of what we said before, so for these reasons --

MR. CAPO:  And just -- I know the motions are clear and the Court will understand them, but there are two statements.  One is the statement of the victim to the probation officer of how she was threatened by the defendant, and Rule 804 is clear.  If the defendant kills -- that's literally what the Rule says.  If the defendant -- he forfeits the hearsay argument by killing, making that witness unavailable.  That's one.

The second argument is what the witness, what the victim Delia Sanchez was saying at a particular time.  That

Case 3:12-cr-00221-JAF Document 794 Filed 03/16/14 Page 27 of 39
Case 15-2347 Document 35 Filed 07/27/2016 Pages: 4186
Case 2:11-cr-00077-PPS-APR Document 1223-1 Filed 12/11/14 Page 27 of 39

27

she was going to turn him over to the Feds, because he was a

drug dealer and she was going to do this. That was recorded

by a female, as he indicates, by the name of Tata.

So we're not introducing or attempting to introduce

nothing Tata said or any other person said. Basically, it's

what the listener heard Delia Sanchez say on that recording.

THE COURT: Who heard?

MR. CAPO: Multiple witnesses that we'll present at

trial.

THE COURT: Who will say what?

MR. CAPO: That they heard what was said on the

recording. The recording was made on a cell phone belonging

to Tata.

THE COURT: Where is Tata?

MR. CAPO: Tata is available, Your Honor.

THE COURT: Is she going to testify?

MR. CAPO: She may be a witness. The Government has

not made that determination as of now.

THE COURT: But Tata has personal knowledge.

MR. CAPO: She has personal knowledge, yes, Your

Honor, but it would be exactly the same --

THE COURT: She recorded it.

MR. CAPO: Exactly.

THE COURT: Don't you think that's better than

somebody who listened to it with Tata later?

Case 3:12-cr-00221-JAF   Document 794   Filed 03/16/14   Page 28 of 39
Case 15-2347   Document 35   Filed 07/27/2016   Pages: 4186
Case 2:11-cr-00077-PPS-APR   Document 1223-1   Filed 12/11/14   Page 28 of 39          28

MR. CAPO:  Our argument is it's what Delia said, Your Honor.

THE COURT:  But the guarantee of trustworthiness, don't you think that -- what is the concern with Tata?  Is she a bad witness or something or --

MR. CAPO:  We haven't made that determination whether she's going to be a witness or not, but we have other witnesses regarding -- including the probation officer of what Delia firsthand told the probation officer.

THE COURT:  It seems to me that any kind of situation of this nature relies, irrespective -- with respect to what the Rule specifically says, on a balancing act that the Judge has to make.  And the most important criteria here is, if you want to call it how much -- what kind of guarantee that this is more likely so, more probable than not, probably in the context of the evidence this would be, you know -- if it's something you can rely on, that's one thing.  If it's something that leaves you pause, that's different, you know.  That's what I'm saying.

You have to -- I'll have to look into this.  I've never dealt with that issue before in my life.

MR. CAPO:  Your Honor, we attached the 302s that contained some of the statements with our motions.

THE COURT:  Okay.  I have not gone to that detail in the motion.  I'm looking at it.

Case 3:12-cr-00221-JAF   Document 794   Filed 03/16/14   Page 29 of 39
Case 1:15-2347   Document 35   Filed 07/27/2016   Page 4186 of 39
Case 2:11-cr-00077-PPS-APR   Document 1223-1   Filed 12/11/14   Page 29 of 39          29

MR. MARTIN:  The only point I think counsel is missing is it's true, if he kills her to prevent her from testifying, he forfeits a right about her not being able to testify.  But what he doesn't forfeit, and the case law clearly -- I'll cite it to the Court.

The Houlihan case, the First Circuit case, leading case on this says, but what she is reported to say must itself have been admissible.  And if she said, I know who killed Kennedy, that doesn't make it admissible.  That's a bad example, but --

THE COURT:  I understand.

MR. MARTIN:  It's hearsay within hearsay.  And under 805, you have to satisfy each step of the hearsay.

THE COURT:  Is there going to be evidence that Jimenez Bencevi heard this?

MR. MARTIN:  Yes, and that's the tape.

MR. CAPO:  Actually, Your Honor, the testimony is going to be that Mr. Jimenez Bencevi had the recording.

MR. MARTIN:  Right.

MR. CAPO:  And he played the recording to multiple government witnesses, as he had it in his hand.

THE COURT:  You have witnesses that are going to say that?

MR. CAPO:  We have multiple witnesses.

THE COURT:  And Tata gave him the recording?

Case 3:12-cr-00221-JAF   Document 794   Filed 03/16/14   Page 30 of 39
Case 15-2347   Document 35   Filed 07/27/2016   Pages: 4186
Case 2:11-cr-00077-PPS-APR   Document 1223-1   Filed 12/11/14   Page 30 of 39

30

MR. CAPO:  Yes, Your Honor.

THE COURT:  Tata is indispensable.  You have to bring Tata.

MR. MARTIN:  And that's the key issue, and that is where I think there may be some admissible -- the other stuff to the probation officer doesn't satisfy --

THE COURT:  I'll look at the pages, and if I have any doubt, I will ask you.

MR. MARTIN:  I will say one other thing.  That counsel did tell me that we were provided a 302 of a person, Ronnie Perez Albino, which there's a name blacked out.  I'm not looking for the address, but I'm looking for the name.  And I think counsel told me they will provide that name.

MS. RIVERA:  That's an a/k/a, Your Honor, alias.

THE COURT:  That's a what?

MR. MARTIN:  An alias.

THE COURT:  An a/k/a.

MR. MARTIN:  Yes.

MR. CAPO:  And we indicated to defense counsel, we sent them last week, if they have a question of any of our evidence and/or they want to look physically at any evidence, they can call us, and we'll arrange for it to be done this week.

THE COURT:  When it comes to blacking out things, remember they have a right to prepare themselves to meet this

Case 3:12-cr-00221-JAF   Document 794   Filed 03/16/14   Page 31 of 39
Case 15-2347   Document 35   Filed 07/27/2016   Pages: 4186
Case 2:11-cr-00077-PPS-APR   Document 1223-1   Filed 12/11/14   Page 31 of 39            31

evidence.  This is a death penalty case after all.

MR. CAPO:  Anything they want, Your Honor, we'll sit down and discuss and give them a copy and let them look at it.

THE COURT:  It's always good to have this cooperation, because after all, it's one less issue you have to deal with.

MR. CAPO:  Your Honor, what we wanted to bring to the attention of the Court, we filed a motion under docket 283 to be allowed not to provide the address of the Government witnesses, and in the motion, we explained for security reasons, in this particular case, and obviously the Court can very well by preponderance of the evidence determine that this is not needed to provide the address of the witnesses in the case.

We are willing to provide phone numbers where they can be reached.  If those witnesses want to be interviewed by them, we can make them available.  But we are very concerned about providing the address, and that's one of the reasons we also requested an anonymous jury in the case, because of safety and security concerns in the case.  And that is docket 283.  They did respond to the motion, Your Honor.

THE COURT:  I haven't seen it.

MR. CAPO:  And I just wanted to address it.

MR. MARTIN:  I understand they have to make a showing

Case 3:12-cr-00221-JAF   Document 794   Filed 03/16/14   Page 32 of 39
Case 15-2347   Document 35   Filed 07/27/2016   1/1   Pages: 4186
Case 2:11-cr-00077-PPS-APR   Document 1223-1   Filed 12/11/14   Page 32 of 39

32

under statute.  I think it's 3423.

THE COURT:  Yes.

MR. MARTIN:  That there was a danger to a particular witness.  You know, there's expert witnesses and others that I can't imagine why they would have an exception to them.  And to the extent that they can make a showing as to a particular witness, fine, but I don't think a blanket exception should be allowed.

THE COURT:  I think he has a point.  If you have an expert witness, you can give the address.

MR. CAPO:  Obviously, Your Honor, we're not referring to expert witnesses.

THE COURT:  You're referring to people you think may be the object of some sort of retaliatory act.

MR. CAPO:  And basically what we're concerned with, for example, we have some FBI agents who are going to be testifying in this case.

MR. MARTIN:  I don't want their addresses.

THE COURT:  I don't think Mr. Martin wants the home address of any FBI.

MR. MARTIN:  Yes.  Give me a phone number, and say FBI headquarters, Puerto Rico.

MR. CAPO:  Perfect.

THE COURT:  So I should be pretty soon giving you Orders and Memorandums and things of the sort to help you out

Case 3:12-cr-00221-JAF   Document 794   Filed 03/16/14   Page 33 of 39
Case 15-2347   Document 35   Filed 07/27/2016   Pages: 4186
Case 2:11-cr-00077-PPS-APR   Document 1223-1   Filed 12/11/14   Page 33 of 39

33

with this, but I wanted you to have a good idea where I'm standing on these issues.

What else do you have, Ms. Rivera?

MS. RIVERA:  Your Honor, as far as notice of experts, the Government filed the notice of experts last week.  We have not received a formal notice by the defense of any experts they intend to use.

THE COURT:  Please, please don't put me in the position of having to eliminate witnesses on either side for lack of notice.  Please, don't do that to me.  Don't do it to yourselves.  I'm going to be very strict with the reciprocal discovery, with the discovery that the government has to give you, and all these things.  We cannot play around with these things.

MS. RIVERA:  They did notify, Your Honor, that they're using their firearms expert, Mr. Ernst --

MR. MARTIN:  That's correct.  The only expert we're going to use in guilt, innocence is Mr. Stokes.

THE COURT:  Is who?

MR. MARTIN:  Bill Stokes, the video expert.

THE COURT:  Okay.

MR. MARTIN:  They were given his report in September, and last week I provided Mr. Peterson with all his raw data.

THE COURT:  Okay.

MR. MARTIN:  I didn't know we actually had to tell

Case 3:12-cr-00221-JAF  Document 794  Filed 03/16/14  Page 34 of 39
Case 15-2347  Document 35  Filed 07/27/2016  Pages: 4186
Case 2:11-cr-00077-PPS-APR  Document 1223-1  Filed 12/11/14  Page 34 of 39

34

them again we were going to use him.

MS. RIVERA:  Your Honor, we just want to make sure we are on notice as to any additional experts.

MR. MARTIN:  And we're not going to call Mr. Ernst on guilt, innocence.  And I've told counsel we may call Mr. Mark Bezy in sentencing if necessary.  But we haven't made a final decision yet.

THE COURT:  Right.  And if you hire Mr. Bezy, for whatever reason, I already made some rulings in Candelario. You were asking about Candelario, regarding Bezy, and these other things that happened to him before.

MR. MARTIN:  Right.

THE COURT:  With whether he cursed at somebody or did not curse at somebody, or whether somebody prepared a paper for him, and that kind of stuff.  If he testifies here, straight to the point on things that are totally, totally on all fours as to what is this and what is that.  I will not allow any kind of mention about other stuff.

MR. MARTIN:  Okay.

THE COURT:  If he testifies in a way in which he shows some sort of absurd prejudice for the Bureau of Prisons for some reason, then of course he can be impeached.  If not, no.  Okay.

MR. MARTIN:  Can we get a transcript of him?

THE COURT:  Sure.

Case 3:12-cr-00221-JAF  Document 794  Filed 03/16/14  Page 35 of 39
Case 15-2347  Document 35  Filed 07/27/2016  Pages: 4186
Case 2:11-cr-00077-PPS-APR  Document 1223-1  Filed 12/11/14  Page 35 of 39

35

MR. MARTIN:  And the Government expert.

THE COURT:  Diana will tell you a minute docket number for that testimony.

MR. MARTIN:  Okay.  That would be good.

THE COURT:  Yes.

MR. PETERSON:  And, Your Honor, we may call Scott Dodrill to rebut that evidence.

THE COURT:  Sure.  I have heard both of them.  These two experts basically were in agreement as to some things. There was no issue for that, no big issue for that at all.

MS. RIVERA:  Your Honor, we're not sure the Court's aware of this, but the defendant was resentenced after appeal -- he was brought back to court March 8, 2013, to be sentenced to allow him to appeal his sentence if necessary.  So he was sentenced basically to the same term of imprisonment, but this was basically to apparently allow him an opportunity to appeal his sentence.  And this was in connection to the 2007 murder case.

THE COURT:  That was in state court?

MS. RIVERA:  That was in the state court.  And we provided a copy of judgment in discovery, also.

MR. MARTIN:  Mr. Armenteros missed the deadline.  I think that was to alleviate that problem on appeal.  And whether he's going to pursue that or not, at least the deadline is no longer a problem.

Case 3:12-cr-00221-JAF   Document 794   Filed 03/16/14   Page 36 of 39
Case 15-2347   Document 35   Filed 07/27/2016   Page: 4186
Case 2:11-cr-00077-PPS-APR   Document 1223-1   Filed 12/11/14   Page 36 of 39

36

THE COURT:  Very well.  Anything else?

MR. CAPO:  No, Your Honor.

THE COURT:  Feel free -- listen to this.  Feel free to do the following.  If an issue comes up that you need to consult me or talk to me informally about something, as long as you do it with copies to each other, you can e-mail me.  You can e-mail me.  I will place the e-mails of course on the record eventually.  But if you have a question let's say, question on Saturday night, should we do this or should we do the other, and either side can e-mail, talk to each other about it, and you can e-mail me with copies to the other.  And I'll respond to you, see?

I'm available, in other words.  I'm available to help you out.  And I used that system in the previous case, and it worked fine, because there are some things that are not really motion issues, you know, they are just how should we proceed with this, how should we do this or the other, what do you think, you know.  Any little detail of that nature, you can contact me by e-mail as long as everybody's aware and copied.  Okay?

What else?

MR. MARTIN:  Your Honor, there's a couple of ex parte matters that Ms. Maldonado and I need to speak with you about.

THE COURT:  Please.

Case 3:12-cr-00221-JAF   Document 794   Filed 03/16/14   Page 37 of 39
Case 15-2347   Document 35   Filed 07/27/2016   Pages: 4186
Case 2:11-cr-00077-PPS-APR   Document 1223-1   Filed 12/11/14   Page 37 of 39

37

(Ex parte bench conference held.)

(Bench conference concluded.)

THE COURT:  What else?

MR. MARTIN:  Your Honor, one final thing.

THE COURT:  Because I need to go to back to chambers before I take the other status conference.

MR. MARTIN:  With regard to evidence in aggravation, I understand the three incidents that Mr. Cass mentioned are probably -- they're going to pursue those.  And I understand we're prepared to deal with those as best we can.  We had a previous filing in which there were a lot of other matters in which he was suspected of this, suspected of that, suspected of this.  You indicated at the time that you weren't going to allow any of that in unless there was some reliable evidence.

I would ask for some sort of deadline for the Government to tell us in any event, other than those three, I understand those three, that they intend, they believe they have sufficiently reliable evidence that they would use.

THE COURT:  April the 1st.

MR. PETERSON:  Can we do April 3rd, which is the deadline for the witnesses?

THE COURT:  Okay.  April 3rd.  Sure.  It doesn't make a difference.

MR. MARTIN:  Thank you.

THE COURT:  Let's try not to proceed on bases of

Case 3:12-cr-00221-JAF   Document 794   Filed 03/16/14   Page 38 of 39
Case 15-2347   Document 35   Document 1223-1   Filed 07/27/2016 1/14   Pages: 4186 of 39
Case 2:11-cr-00077-PPS-APR   Document 1223-1   Filed 12/11/14   Page 38 of 39

38

suspicion.

MR. PETERSON:  Yes, sir.

THE COURT:  You don't want that.  You want real facts here.  Okay.

(Proceedings concluded.)

                         *     *     *

Case 3:12-cr-00221-JAF  Document 794  Filed 03/16/14  Page 39 of 39
Case 15-2347  Document 35  Filed 07/27/2016  Pages: 4186
Case 2:11-cr-00077-PPS-APR  Document 1223-1  Filed 12/11/14  Page 39 of 39

39

U.S. DISTRICT COURT     )

DISTRICT OF PUERTO RICO)


     I certify that this transcript consisting of 39 pages is

a true and accurate transcription to the best of my ability of

the proceedings in this case before the Honorable United

States District Court Judge José Antonio Fusté on March 25,

2013.




S/ Amy Walker

Amy Walker, CSR 3799

Official Court Reporter

Case 3:12-cr-00221-JAF   Document 404   Filed 03/26/13   Page 1 of 11
Case 1:5-2347 P Document 35 ument 1223-2 Filed 07/27/2016 11/14 Pages: 4186 14
Case 2:11-cr-00077-PPS-APR   Document 1223-2   Filed 12/11/14   Page 1 of 14

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   CRIMINAL NO. 12-221 (JAF) |
| | ) |
| **Xavier Jimenez-Bencevi, et al.** | ) |
| Defendant. | ) |

## GOVERNMENT'S SECOND INFORMATIVE MOTION CONCERNING
## THE APPROPRIATE SCOPE OF VOIR DIRE

**TO THE HONORABLE COURT:**

COMES NOW, the United States of America, by and through the undersigned counsel, and respectfully submits this informative motion concerning the appropriate scope of voir dire in this case, and in support thereof, says the following:

A.  Appropriate Scope of Voir Dire

Voir dire must be adequate to assure the defendant a jury whose members are able impartially to follow the Court's instructions and evaluate the evidence. *Rosales-Lopez v. United States*, 451 U.S. 182, 188 (1981).  The exact scope of questioning is committed to the broad discretion of the court.  *United States v. Tipton*, 90 F.3d 861, 877 (4th Cir. 1996)(citing *Rosales-Lopez*, 451 U.S. at 188 and *Ham v. South Carolina*, 409 U.S. 524, 527 (1973)); *accord* Fed. R. Crim. P., Rule 24(a).  With limited exceptions,[1] no particular questions are constitutionally required, unless a failure to ask them would "render the trial fundamentally unfair."  *See Mu'Min v. Virginia*, 500 U.S. 415, 425-26 (1991) (rejecting any requirement to ask questions about the content of pretrial publicity to which prospective jurors were exposed).

---

[1] For example, questions about racial bias may be required in certain cases.  *See Ham*, 409 U.S. at 526-27.

Case 3:12-cr-00221-JAF   Document 404   Filed 03/26/13   Page 2 of 11
Case 15-2347   Document 35   Filed 07/27/2016   Page: 4186
Case 2:11-cr-00077-PPS-APR   Document 1223-2   Filed 12/11/14   Page 2 of 14

Certain areas of inquiry are required in capital cases.  Voir dire must consist of more than general fairness and "follow the law" questions.  *Morgan v. Illinois*, 504 U.S. 719, 734-35 (1992).  General inquiries are inadequate to determine if a venire member has views about the death penalty that would prevent him or her from following the law and considering all aggravating and mitigating evidence.  *See id*. at 735.  Upon a capital defendant's request, the court must ask if a venire member would automatically vote for the death penalty, regardless of the facts, if the defendant was convicted of a capital offense.  *Id*. at 726-27.  That inquiry is the converse of the *Witherspoon* inquiry.  Thus, the Court should permit direct questions to determine if prospective jurors would automatically vote for or against the death penalty.  *See Morgan*, 504 U.S. at 733-34,738; *Tipton*, 90 F.3d at 878 (stating the best method for determining if a prospective juror would automatically vote for the death penalty is to ask directly).

Increasingly, however, capital voir dire has grown into an endless morass in which every kind of question or statement is allowed in the interest of a generalized concept of "fundamental fairness."  For example, recently in the case of *United States v. Candelario-Santana*, Docket No. 09-427, counsel for Mr. Candelario-Santana brought a large chart to lecture the prospective jurors about the death penalty process.  Counsel then made extensive statements about the "process" to include "[t]he decision is ultimately a moral one that every juror must make for him or herself" and [w]e operate in a system where everyone offers respect to everyone else, including every member of the jury."  Counsel finished the lecture with blown up chart by asking "[s]o are you comfortable operating in that kind of system and with these kind of principles?" See Exhibit 1.  As is apparent from the monologue, the statement was not tied in any way to the questioning permitted by *Morgan v. Illinois*, 504 U.S. 719, 734-35 (1992).

Case 3:12-cr-00221-JAF   Document 404   Filed 03/26/13   Page 3 of 11
Case 15-2347   Document 35   Filed 07/27/2016   Pages: 4186
Case 2:11-cr-00077-PPS-APR   Document 1223-2   Filed 12/11/14   Page 5 of 14

B.      <u>No Right to Inform Jurors of Consequence of Inability to Agree</u>

The Court should not, however, permit voir dire designed to inform jurors of a power to nullify or as to the consequences of a failure to reach a unanimous decision. Fundamentally, it should be obvious that such questions, or rather, statements, are not designed to ferret out whether potential jurors can be impartial and constitutionally consider whether the death penalty is an appropriate sanction. Rather, such information is calculated to encourage a lack of unanimity and to advocate an unwillingness to consider the death penalty as an appropriate sanction.

Moreover, any proposed voir dire discussing or informing the prospective jurors of the consequences of their failure to agree on a sentence is arguably inconsistent with the language of the Federal Death Penalty Act itself. 18 U.S.C. 3593(e) provides:

> [T]he jury, or if there is no jury, the court, shall consider whether all the aggravating factor or factors found to exist sufficiently outweigh all the mitigating factor or factors found to exist to justify a sentence of death, or, in the absence of a mitigating factor, whether the aggravating factor or factors alone are sufficient to justify a sentence of death. Based *upon this consideration, the jury by unanimous vote*, or if there is no jury, the court, shall recommend whether the defendant should be sentenced to death, to life imprisonment without possibility of release or some other lesser sentence.

18 U.S.C. 3593(e)(emphasis added). Accordingly, by its express terms, the FDPA requires unanimity for either a verdict of death or a non-capital sentence.

The United States Supreme Court considered this issue in *Jones v. United States*, 527 U.S. 373, 379 (1999). In that case, the defendant argued that he was entitled to an instruction as to the consequences of a jury deadlock on the issue of sentencing. The defendant asked for, and did not receive, the following instruction:

> In the event, after due deliberation and reflection, the jury is unable to agree on a unanimous decision as to the sentence to be imposed, you should so advise me and I will impose a sentence of life imprisonment without possibility of release. . . .

Case 3:12-cr-00221-JAF   Document 404   Filed 03/26/13   Page 4 of 11
Case 15-2347   Document 35   Filed 07/27/2016   Pages: 4186
Case 2:11-cr-00077-PPS-APR   Document 1223-2   Filed 12/11/14   Page 4 of 14

. . . . .

> In the event you are unable to agree on [a sentence of] Life Without Possibility of
> Release or Death, but you are unanimous that the sentence should not be less than Life
> Without Possibility of Release, you should report that vote to the Court and the Court will
> sentence the defendant to Life Without the Possibility of Release.

*Jones*, 527 U.S. at 379. The defendant argued alternatively that the Eighth Amendment required

the trial court to instruct the jury as to the effect of their inability to agree and that the Supreme

Court should invoke its supervisory power over the federal courts and require that such an

instruction be given. In affirming the trial court's refusal to give the requested instruction, the

Court held:

> The truth of the matter is that the proposed instruction has no bearing on the jury's role in
> the sentencing process. Rather, it speaks to what happens in the event that the jury is
> unable to fulfill its role -- when deliberations break down and the jury is unable to
> produce a unanimous sentence recommendation. Petitioner's argument, although less than
> clear, appears to be that a death sentence is arbitrary within the meaning of the Eighth
> Amendment if the jury is not given any bit of information that might possibly influence
> an individual juror's voting behavior. That contention has no merit. We have never
> suggested, for example, that the Eighth Amendment requires a jury be instructed as to the
> consequences of a breakdown in the deliberative process. On the contrary, we have long
> been of the view that "the very object of the jury system is to secure unanimity by a
> comparison of views, and by arguments among the jurors themselves." *Allen* v. *United
> States*, 164 U.S. 492, 501, 41 L. Ed. 528, 17 S. Ct. 154 (1896). We further have
> recognized that in a capital sentencing proceeding, the Government has "a strong interest
> in having the jury express the conscience of the community on the ultimate question of
> life or death." *Lowenfield* v. *Phelps*, 484 U.S. 231, 238, 98 L. Ed. 2d 568, 108 S. Ct. 546
> (1988) (citation omitted). We are of the view that a charge to the jury of the sort proposed
> by petitioner might well have the effect of undermining this strong governmental interest.

*Id*, at 382. In fact, the Supreme Court took pains to state that "[i]t is not insignificant that the

Courts of Appeals to have addressed this question, as far as we are aware, are uniform in

rejecting the argument that the Constitution requires an instruction as to the consequences of a

jury's inability to agree. See, *e.g.*, *Coe* v. *Bell*, 161 F.3d 320, 339-340 (6th Cir. 1998); *Green* v.

Case 3:12-cr-00221-JAF   Document 404   Filed 03/26/13   Page 5 of 11
Case 15-2347   Document 35   Filed 07/27/2016   Pages: 4186
Case 2:11-cr-00077-PPS-APR   Document 1223-2   Filed 12/11/14   Page 5 of 14

*French*, 143 F.3d 865, 890 (4th Cir. 1998); *United States* v. *Chandler*, 996 F.2d 1073, 1088-1089 (11th Cir. 1993); *Evans* v. *Thompson*, 881 F.2d 117, 123-124 (4th Cir. 1989). " *Id.*

In *United States v. Chandler*, 996 F.2d 1073, 1088-89 (11th Cir. 1993) the defendant argued that federal law as well "the constitutional requirement that the jury not be misinformed or coerced during a capital sentencing require that the jury be instructed that the failure to reach unanimity would result in Chandler receiving some non-death sentence as determined by the court." In rejecting the defendant's position, the Court held:

> We find the reasoning of the second set of authorities persuasive and hold that the district court is not required to instruct the jury on the consequence of the jury's inability to reach a unanimous verdict. There is no requirement that instructions to the jury duplicate the statutory language. Section 848(l) is an instruction to the court and not for the jury. Our holding is further supported by the general interest the criminal justice system has in unanimous verdicts. Asking the jury to return a unanimous verdict forces jurors to examine their views on the case and engage in discussions and deliberations as they attempt to resolve their differences.
>
> We reject the suggestion that the instructions or verdict form in some way coerced the jury into a recommendation of death. Similar instructions are given during the guilt stage of criminal proceedings. That an *Allen* type charge was given in the present case does not create any coercion. Although the instruction stated that jurors should "not hesitate to re-examine your own opinion, and to change your mind if you become convinced that you are wrong," it also admonished, "do not give up you honest beliefs . . . solely because the others think differently or merely to get the case over with." RXV-87. When this instruction is coupled with the court's statement that Chandler would receive the death penalty only if all jurors unanimously agreed to recommend death, we conclude the *Allen* charge was not coercive.

*Chandler*, 996 F.2d at 1088-89.

In deciding *Jones*, the Supreme Court specifically cited *Allen* v. *United States*, 164 U.S. 492, 501, 41 L. Ed. 528, 17 S. Ct. 154 (1896) and reaffirmed the principle that "the very object of the jury system is to secure unanimity by a comparison of views, and by arguments among the jurors themselves." That guiding principle is the very antithesis of what a defendant seeks when he argues for, or informs a jury of, the consequences of an inability to agree on a capital sentence

Case 3:12-cr-00221-JAF Document 404 Filed 03/26/13 Page 6 of 11
Case 15-2347 Document 35 Filed 07/27/2016 Page: 4186
Case 2:11-cr-00077-PPS-APR Document 1223-2 Filed 12/11/14 Page 6 of 14

*or* to hold out to preserve a defendant's life. In *Allen*, a capital defendant argued that it was error for the trial court to give a lengthy instruction to the jury after they announced difficulty in reaching agreement. That instruction was as follows:

> [I]n a large proportion of cases absolute certainty could not be expected; that although the verdict must be the verdict of each individual juror, and not a mere acquiescence in the conclusion of his fellows, yet they should examine the question submitted with candor and with a proper regard and deference to the opinions of each other; that it was their duty to decide the case if they could conscientiously do so; that they should listen, with a disposition to be convinced, to each other's arguments; that, if much the larger number were for conviction, a dissenting juror should consider whether his doubt was a reasonable one which made no impression upon the minds of so many men, equally honest, equally intelligent with himself. If, upon the other hand, the majority was for acquittal, the minority ought to ask themselves whether they might not reasonably doubt the correctness of a judgement which was not concurred in by the majority.

In affirming the correctness of the instruction, the Supreme Court held:

> While, undoubtedly, the verdict of the jury should represent the opinion of each individual juror, it by no means follows that opinions may not be changed by conference in the juryroom. The very object of the jury system is to secure unanimity by a comparison of views, and by arguments among the jurors themselves. It certainly cannot be the law that each juror should not listen with deference to the arguments and with a distrust of his own judgment, if he finds a large majority of the jury taking a different view of the case from what he does himself. It cannot be that each juror should go to the jury-room with a blind determination that the verdict shall represent his opinion of the case at that moment; or, that he should close his ears to the arguments of men who are equally honest and intelligent as himself. There was no error in these instructions.

*Allen*, 164 U.S. at 501.

Indeed, the United States Supreme Court has approved the use of an Allen charge in the penalty phase of a contemporary capital prosecution. *Lowenfield v. Phelps*, 484 U.S. 231, 238-9 (1988). In that case, the defendant argued that the giving of an *Allen* charge in the penalty phase of a capital prosecution presented a particular danger of coercion in the case because the Louisiana statute at issue called for the imposition of a life sentence in the event of a hung jury, the same is the Federal Death Penalty Act. In rejecting that challenge, the Court held:

Case 3:12-cr-00221-JAF   Document 404   Filed 03/26/13   Page 7 of 11
Case 15-2347   Document 35   Filed 07/27/2016   Pages: 4186
Case 2:11-cr-00077-PPS-APR   Document 1223-2   Filed 12/11/14   Page 7 of 14

> The difference between the division of function between the jury and judge in this case and the division in *Allen* obviously weighs in the constitutional calculus, but we do not find it dispositive. The State has in a capital sentencing proceeding a strong interest in having the jury "express the conscience of the community on the ultimate question of life or death." *Witherspoon v. Illinois*, 391 U.S. 510, 519, 88 S. Ct. 1770, 1775, 20 L. Ed. 2d 776 (1968). Surely if the jury had returned from its deliberations after only one hour and informed the court that it had failed to achieve unanimity on the first ballot, the court would incontestably have had the authority to insist that they deliberate further. This is true even in capital cases such as this one and *Allen*, even though we are naturally mindful in such cases that the "qualitative difference between death and other penalties calls for a greater degree of reliability when the death sentence is imposed." *Lockett v. Ohio*, 438 U.S. 586, 604, 98 S. Ct. 2954, 2964, 57 L. Ed. 2d 973 (1978).

*Lowenfield*, 484 U.S. at 238-39.  Clearly then, even in the context of a capital proceeding, the government has a strong interest in unanimity in the penalty phase of a prosecution. Accordingly, a defendant's repeated and excessive identification of the consequences of a deadlock in the penalty phase of a capital prosecution undermines that principle.  At a minimum, a defendant has no constitutional right to continually and excessively advise a prospective juror of the consequences of a deadlock and encourage such outcome.

### C.     No Right to Argue/Advise/Advocate a Power to Nullify

The government submits that excessive statements to prospective jurors concerning their ability and right to hold out for a life sentence to preserve the defendant's life is akin to an improper argument and/or advocacy of a right to nullify.  The government concedes that the defendant has a right under *Morgan v. Illinois*, 504 U.S. 719, 728 (1992) to ask, directly or through the Court, if a venire member would automatically vote for the death penalty, regardless of the facts, if the defendant was convicted of a capital offense.  *Id*. at 726-27.  The government also notes that while jurors must be willing to generally "consider" mitigation evidence, Supreme Court jurisprudence does not require inquiries about specific information.  *See Buchanan v.*

Case 3:12-cr-00221-JAF   Document 404   Filed 03/26/13   Page 8 of 11
Case 1:15-2347   Document 35   Filed: 07/27/2016   Pages: 4186
Case 2:11-cr-00077-PPS-APR   Document 1223-2   Filed 12/11/14   Page 8 of 14

*Angelone*, 522 U.S. 269, 276 (1998); *Eddings v. Oklahoma*, 455 U.S. 104, 114-15 (1982).  The

Constitution requires only that jurors manifest an ability to consider mitigators, not specific

evidence.  *See United States v. Hall*, 152 F.3d 381, 409 (5th Cir. 1998), *abrogated on other*

*grounds by United States v. Martinez-Salazar*, 528 U.S. 304, 310-311 (2000).  Nothing in the

Supreme Court's jurisprudence, however, requires or allows a party to ask questions in a way

that is a thinly veiled attempt to seek or encourage nullification.

The First Circuit has consistently upheld the rule that a court and counsel may not inform

the jury, directly or indirectly, of its power to nullify. *United States v. Manning*, 79 F.3d 212, 219

(1st Cir. 1996).  Counsel for the defendant in that case sought to elicit on direct examination the

penalty for the crime as well as to argue to the jury their power to nullify the verdict.  In

affirming the trial court's refusal to permit nullification argument, the First Circuit stated that

"we have consistently held that a district court may not instruct the jury as to its power to

nullify" and an "attorney's attempt to achieve the same end indirectly, by arguing the severity of

the punishment to the jury, is equally impermissible." *Id*.  While the government recognizes that

voir dire will necessarily involve discussions about potential punishments, indeed

constitutionally it must do so, nevertheless, the defendant should not be allowed to make

arguments encouraging nullification at sentencing or during voir dire.  See generally, King,

*Silencing Nullification Advocacy Inside the Jury Room and Outside the Courtroom*, 65 U.Chi. L.

Rev. 433 (Spring 1998).  Inquiry into whether the jurors will be substantially impaired in

considering both a death sentence and its alternative is a far cry from allowing, wholesale, a

party  to inform the jury of the consequences of a deadlock or advocating for that outcome.

Case 3:12-cr-00221-JAF   Document 404   Filed 03/26/13   Page 9 of 11
Case 15-2347   Document 35   Filed 07/27/2016   11   Pages: 4186
Case 2:11-cr-00077-PPS-APR   Document 1223-2   Filed 12/11/14   Page 9 of 14

D        No Burden to Prove that Aggravators Outweigh Mitigators Beyond a Reasonable
         Doubt

The parties should not be permitted to argue or inform the prospective jurors that the

government must prove that the aggravators outweigh the mitigators beyond a reasonable doubt.

That precise issue was decided by the First Circuit Court of Appeals in *United States v. Sampson*,

486 F.3d 13, 38 (1st Cir. 2007).  In that case, the defendant argued that "the instructions (i)

erroneously invited jurors to apply their own idiosyncratic standards to the weighing process and

(ii) failed to require that they find beyond a reasonable doubt that aggravating factors outweighed

mitigating factors before voting to impose the death penalty."  In rejecting both claims, the Court

held:

> Sampson tries to circumvent this logic by pointing out that the weighing determination
> itself is essential to imposing a death sentence. He repeatedly refers to Justice Scalia's
> statement "that all facts essential to imposition of the level of punishment that the
> defendant receives -- whether the statute calls them elements of the offense, sentencing
> factors, or Mary Jane -- must be found by the jury beyond a reasonable doubt." *Ring*, 536
> U.S. at 610 (Scalia J., joined by Thomas, J., concurring). This argument founders,
> however, because it assumes, without the slightest support, that the weighing of
> aggravating and mitigating factors is a *fact*. This assumption is incorrect. As other courts
> have recognized,  the requisite weighing constitutes a process, not a fact to be found. *See*
> *United States* v. *Purkey*, 428 F.3d 738, 750 (8th Cir. 2005) (characterizing the weighing
> process as "the lens through which the jury must focus the facts that it has found" to
> reach its individualized determination), *cert. denied*, 127 S. Ct. 433, 166 L. Ed. 2d 307
> (2006); *see also Ford* v. *Strickland*, 696 F.2d 804, 818 (11th Cir. 1983); *Gray* v. *Lucas*,
> 685 F.2d 139, 140 (5th Cir. 1982) (per curiam). The outcome of the weighing process is
> not an objective truth that is susceptible to (further) proof by either party. Hence, the
> weighing of aggravators and mitigators does not need to be "found." We hold, therefore,
> that the district court's instructions were free from *Apprendi* error.

*Sampson*, 486 F.3d at 47-48.  Accordingly, it would be improper to inform the jury that they

must find that the aggravating factors outweigh the mitigating factors beyond a reasonable doubt

before imposing a sentence of death.

Case 3:12-cr-00221-JAF   Document 404   Filed 03/26/13   Page 10 of 11
Case 15-2347   Document 35   Filed 07/27/2016   Page 186 of
Case 2:11-cr-00077-PPS-APR   Document 1223-2   Filed 12/11/14   Page 10 of 14

**RESPECTFULLY SUBMITTED.**

In San Juan, Puerto Rico, this 26th day of March, 2013.

**ROSA EMILIA RODRIGUEZ-VELEZ**
United States Attorney

*/s/ Jose Capo-Iriarte*
Jose Capo-Iriarte
Chief, Violent Crimes Unit
United States Attorney's Office

*/s/ Ilianys Rivera-Miranda*
*/s/ Luke Cass*

Ilianys Rivera-Miranda
Luke Cass
Assistant United States Attorneys
USDC-PR Nos. G00803, G223006
United States Attorney's Office
Torre Chardon Bldg., suite 1201
350 C. Chardon Avenue
San Juan, Puerto Rico 00918
Ilianys.Rivera@usdoj.gov
Luke.V.Cass@usdoj.gov
Tel: (787) 766-5656
Fax: (787) 766-5398

*s/James Peterson*
James Peterson
Trial Attorney (PR Bar # G01612)
Capital Case Unit
Criminal Division
United States Department of Justice
1331 F Street, N.W.
3rd Floor
Washington, DC 20530
James.D.Peterson@usdoj.gov
Phone: (202) 353-0796
Fax (202) 353-9779

Case 3:12-cr-00221-JAF   Document 404   Filed 03/26/13   Page 11 of 11
Case 15-2347   Document 35   Filed 07/27/2016   Page 11 of 14
Case 2:11-cr-00077-PPS-APR   Document 1223-2   Filed 12/11/14   Page 11 of 14

## CERTIFICATE OF SERVICE

I hereby certify that on this 26th day of March, 2013, I electronically filed the foregoing "Motion" with the Clerk of Court by using the CM/ECF system, which will send notification of such filing to all CM/ECF participants.

_s/James Peterson_
James Peterson
Trial Attorney

Case 3:12-cr-00221-JAF   Document 404-1   Filed 03/26/13   Page 1 of 3
Case 15-2347   Document 35   Filed 07/27/2016   Pages: 4186
Case 2:11-cr-00077-PPS-APR   Document 1223-2   Filed 12/11/14   Page 12 of 14

29

again.  It was given to you a minute ago.  I'm one of the defense lawyers on the case representing Mr. Candelario.

I have a few additional questions for you this morning.  And you seem pretty relaxed in this process.  Just relax.  You can see we're just having a discussion.

And I wanted to ask some of the questions on your views on the death penalty, but I also wanted to go over with you how this process would work.  And we've got a chart that summarizes it, so let me get that.  What -- I'm sure you can see that from where you are, right?

THE JUROR:  (No audible response.)

MR. RUHNKE:  Am I in the way?

THE JUROR:  Yes.

THE COURT:  If you swing it a little bit.

MR. RUHNKE:  Okay.  I'll bring it up a little bit.

THE COURT:  Facing him.  That's it.  You see better there now?

MR. RUHNKE:  All right.  So let me get out of the way.  And if you look at this chart, you can see that it sets forth the steps and the principles that a jury would have to go through.  Many of these things Judge Fuste explained this morning.  Many of these things were on the jury questionnaire, but these are the important principles.

First and foremost is you'd never be required to vote for a sentence of death.  You'd be guided by what the law

Case 3:12-cr-00221-JAF   Document 404-1   Filed 03/26/13   Page 2 of 3
Case 15-2347   Document 35   Filed 07/27/2016   Page: 4186
Case 2:11-cr-00077-PPS-APR   Document 1223-2   Filed 12/11/14   Page 13 of 14

30

says.  You'd be guided by the evidence.  But where the law and evidence leads each individual juror is an individual decision.

We want to be clear that people understand that this is a Federal Court.  You are applying United States law. Under United States law, if someone gets sentenced to life, that's it.  They go to jail for the rest of their life.  And in this case if Mr. Candelario were sentenced to life, he'd be sent to a prison somewhere on the mainland United States and never be back to Puerto Rico.  He'd die in prison.

THE JUROR:   (Nodding head up and down.)

MR. RUHNKE:   The decision is ultimately a moral one that every juror must make for him or herself.  Again, the law, the evidence will all help you reach your decision.  But ultimately, finally, it is your decision as to what is the right punishment or the wrong punishment in this case.  Is it life or is it death?

We operate in a system where everyone offers respect to everyone else, including every member of the jury.  We asked you on the questionnaire if you would be able to respect your other jurors, and you said yes.  And I assume that's still true, correct?

THE JUROR:  Correct.

MR. RUHNKE:   The decision of the jury is final.  This is not a recommendation.  If the jury imposes a sentence of

Case 3:12-cr-00221-JAF   Document 404-1   Filed 03/26/13   Page 3 of 3
Case 15-2347   Document 35   Filed 07/27/2016   Pages: 4186
Case 2:11-cr-00077-PPS-APR   Document 1223-2   Filed 12/11/14   Page 14 of 14

31

death, that's the sentence that will be imposed.  If the jury imposes a sentence of life, that's the sentence that will be imposed.

It takes all 12 jurors to vote for death.  But the opposite is not true.  If only one juror or if two jurors or three jurors or five vote for life and it's not 12 nothing for death, then it will be life.  So it could really be 11 votes for death and one vote for life, and the decision would be life.  And the Judge would impose a life sentence.

So, you know, you're not operating all by yourself when you make this kind of decision.  These are kind of the rules and guidelines.

So are you comfortable operating in that kind of system and with these kind of principles?

THE JUROR:  Yes.

MR. RUHNKE:  Okay.  One of the questions we asked you on the questionnaire was about what you would consider in reaching a decision on punishment.  And I'll pull it up in a second.  And you told us, let me back it out a little bit, that you need to hear all the evidence in order to make a decision on punishment.

Is that how you still feel today?

THE JUROR:  (Nodding head up and down.)

MR. RUHNKE:  Yes?

THE JUROR:  Yes.

Case 3:12-cr-00221-JAF   Document 424   Filed 04/01/13   Page 1 of 1
Case 15-2347   Document: 35   Filed: 07/27/2016   Pages: 4186
Case 2:11-cr-00077-PPS-APR   Document 1223-3   Filed 12/11/14   Page 1 of 1

UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

UNITED STATES OF AMERICA,

    Plaintiff,

    v.

XAVIER JIMENEZ-BENCEVI,

    Defendant.

Criminal No. 12-221 (JAF)

# O R D E R

In reference to Docket No. 404, filed by the Government on March 26, 2013, the court rules as follows:

The court is in agreement that the general principles outlined in said document are in tune with the present status of the law.  Both the Government and Defense Counsel will abide by these principles during jury selection.  No mention of "moral duty" of "moral obligation" will be made.

**IT IS SO ORDERED.**

San Juan, Puerto Rico, this 1st day of April, 2013.

    s/José Antonio Fusté
    JOSE ANTONIO FUSTE
    United States District Judge

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
### HAMMOND DIVISION

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | NO. 2:11CR77 PPS |
| | ) | |
| JUAN BRISENO, | ) | |
| | ) | |
| Defendant. | ) | |

## **ORDER**

I am filing today as an attachment to this order what I expect to be the final version of the preliminary instructions that will be delivered to prospective jurors when they appear for individual voir dire.

SO ORDERED.

ENTERED: December 11, 2014.

 /s/ Philip P. Simon
PHILIP P. SIMON, CHIEF JUDGE
UNITED STATES DISTRICT COURT

2448

THE COURT:

Good morning, ladies and gentlemen, it is a pleasure to welcome you to the Hammond Division of the United States District Court for the Northern District of Indiana. My name is Judge Philip Simon and I will preside during this trial. I want to thank all of you for taking time to complete the lengthy questionnaire the Court sent you several months ago. Your answers to those questions will help shorten the process of jury selection, and everyone involved in this case appreciates the time and thought that each of you devoted to the questionnaire.

Ladies and gentlemen, this Court is always interested in making sure that everybody that comes to this court receives a completely fair and impartial trial. That means, in part, that the case has to be decided entirely based on the evidence admitted here in court and not based on information that you receive from outside the courtroom. For that reason, I will be saying this at every recess and at every break at the end of every day. Starting now, ladies and gentlemen, you are not to talk to anybody about this case, and you are not to be within hearing distance of anybody who is talking about the case. That includes each other, your family, the people that you work with — anybody that you might know. This also includes talking about the case electronically via email, texting, Facebook or other similar services. If you're excused from the case and you leave the courthouse, this won't apply to you any longer. But as long as you are either a juror or a potential juror in this case, please do not communicate with anybody in any way, shape or form about the case.

Also, you are not to attempt to read about the case in any newspaper or magazine or listen to any press, radio or television reports. Do not use your smart phones or otherwise access the internet to search for any information about the case. Also, do not attempt to visit or go to any of the locations mentioned in the case. What you learn about this case, you must learn about it from this courtroom, and nowhere else. It's very important that everybody that comes to this court receive a completely fair and impartial trial.

Ladies and gentlemen, one of the most enjoyable things that I get to do as a judge is to swear in new citizens into this country. It's a tremendously fulfilling job and the reason for that is very simple. Many people who didn't happen to be born in this country come here and want to become part of our country. And for me, it's a great joy to see people who want to become part of our American family – they want to be Americans. During the swearing in process, I talk to the new citizens and I explain to them there are a lot of benefits that come with being citizens in this country, but that there are also obligations. So there aren't just rights of citizenship, but there are obligations as well.

The number of affirmative things that this country asks of citizens is really pretty limited: first, pay your taxes; second, defend your country when called upon to do so. It's been a long time since we have had a draft in this country but many of our parents served in World War II, or in the Korean conflict, or in Viet Nam. So that's the second obligation – defend your country when called upon.

2

The last obligation that we have as citizens is to serve as jurors in our courts. You may be called upon to do it once or twice in your lifetime. It's an obligation as a citizen. Trial by jury is one of the precious rights that our forebears fought for in the Revolutionary War. Prior to the founding of this nation the King of England was summarily jailing people without the protection of the jury trial. And so "Trial by Jury" became embedded in our constitution and is a treasured institution that we fought for. So for that reason it is an obligation of all citizens to serve as jurors when called upon. This is one of the few judicial systems in the world that allow juries of our peers to stand in judgment on important issues. And the only way that this works, of course, is if we all serve when called upon.

Because of that, ladies and gentlemen, I'm not always very understanding in granting excuses to prospective jurors. All of us would probably rather be somewhere else. But again, I point out to you that this is an obligation. And although we have jobs and we have other responsibilities, I ask you, what would happen if on the way to work today, God forbid, you had an accident and were seriously injured. Would your job go on without you? I think all of you are very important, but I also think all of our jobs can go on without us. I don't think that I'm so important that somebody else couldn't replace me in the event of necessity. And I think the same would probably apply to you. So I want you to think about that when we're talking about excuses. If there was a necessity, our lives and our responsibilities at work would go on. So with that, let's begin.

3

I want to give you an overview of what will be happening today before getting into the details of this case. In a few moments, I will tell you what this case is about and explain to you some of the procedures that may be used during the trial. Once we get past those preliminary issues, I'm going to question all of you as a group regarding certain issues that we need to know about to select a fair and impartial jury. Once we are done questioning you in this group setting, I will send you all downstairs and then call you back up here in groups of 12. Each group of 12 will be asked to wait in the jury room adjacent to the courtroom. Then each person from that group of 12 will be called into court individually to answer a few more questions privately. Some of those questions may relate to the answers you gave on the questionnaires. After each person in the group has been questioned individually, I will let you know which of the people in that group of 12 have been excused.

Those who are excused will be free to go and their service on this case will be completed. Those of you who are not excused will be given further instruction at the end of the day about when you might be needed again. The jury selection may take several days or weeks even, so it is not possible to tell you today whether you have been selected to be a juror in this case or when the trial will begin. But you will receive further instruction from the Clerk's Office once we do know. I anticipate that this case may take approximately four to six weeks to try.

Now that you have an understanding of how things will work today, I will tell you a little about this case, repeating what you were told in the juror questionnaire you

4

completed in the fall.  The defendant in this case is Juan Briseno and he is presumed

innocent.  He has been charged by way of indictment which is simply the formal

method by which charges are brought.  An indictment is not evidence; rather it is

merely an accusation and nothing more. The indictment alleges that beginning at least

by February 2002 and continuing thereafter, members of the Imperial Gangsters,

including Mr. Briseno, engaged in a conspiracy to distribute illegal drugs in the East

Chicago area of Indiana.  In addition to operating a drug trafficking organization, it is

alleged that the Imperial Gangsters, and Mr. Briseno, engaged in the sale or exchange of

guns, in armed robberies, in burglaries, as well as in other illegal conduct.  The

indictment also alleges that the Imperial Gangsters, and Mr. Briseno, used various

methods to protect their criminal enterprise, including patrolling areas within East

Chicago that they controlled, threatening and intimidating potential rivals, including

shooting and killing members of rival gangs or potential witnesses against members of

the Imperial Gangsters.  Among other things, the indictment alleges that, between

September of 2007 and June of 2010, Mr. Briseno personally participated in the murders

of six individuals and the attempted murders of an additional seven individuals in or

around the East Chicago area.

The defendant has pled not guilty to all counts of the Indictment. This denial

made by the defendant raises issues of fact to be tried in this case. Now, there are three

basic principles of criminal law that I want you to keep in mind.  First, the defendant is

presumed innocent of the charges and that presumption stays with him throughout the

5

2453

trial and continues even throughout the jury's deliberation. Second, the government has the burden of proof; the defendant does not have to prove his innocence. And third, the government must prove that the defendant is guilty beyond a reasonable doubt. I want to caution you, as I said earlier, that the Indictment brought by the government against the defendant is only an accusation, nothing more. It is not evidence and does not give rise to an inference of guilt. It is merely the formal method of charging the defendant and notifying him what the government is accusing him of.

As you know from some of the questions in the questionnaire, the most serious charges in the Indictment carry with them the possibility of the death penalty, which the jury will consider if the defendant is convicted of those counts. I will be asking you some questions about the death penalty, which is also known as capital punishment, later in the jury selection process. But before we continue with the jury selection process, I'll explain to you how a death penalty case proceeds.

Potentially, this case has two stages: the first requires the jury to consider whether or not the government has proven the charges brought against the defendant beyond a reasonable doubt. In that stage of the proceeding, the jury shall not consider any possible punishment that may be imposed. If at the conclusion of the first stage the jury reports that it does not find the defendant guilty of at least one of the capital charges, then the jury's responsibilities are at an end regardless of how the jury finds as to any other charges. This is because the Court decides the punishment for non-capital crimes.

6

However, if the jury reports that it finds the defendant guilty of one of the capital charges, then we proceed to a second stage, a penalty phase at which the jury considers whether the death penalty should be imposed. Now, during the penalty phase, the government has the opportunity to introduce evidence of what are called aggravating factors. These are things that might make the conduct alleged in the capital count so serious as to merit imposition of the death penalty. On the other hand, the defendant has the opportunity to present what are called mitigating factors. Those are things about the crime or about the defendant that might suggest that the death penalty is not appropriate in this case.

No aggravating factor may be considered by the jury unless all jurors agree unanimously that the government proved that factor beyond a reasonable doubt. So, for example, if eleven jurors find that a particular aggravating factor has been proven beyond a reasonable doubt, but one juror thinks it has not, then that aggravating factor cannot be considered. A mitigating factor, on the other hand, can be considered even if only one juror finds that it exists. The jury cannot find in favor of the death penalty unless it also unanimously agrees that the unanimously agreed upon aggravating factors sufficiently outweigh any mitigating factors that one or more jurors believe exist. I want to impress upon you that this weighing process is not some mechanical process whereby jurors simply count up the factors. It is a qualitative process not a quantitative one. For example, one mitigating factor may be enough to outweigh several aggravating factors. And, even if no one on the jury finds that any mitigating factors

7

exist, the jury still cannot find in favor of the death penalty unless everyone on the jury finds that the aggravating factors that the jurors have unanimously found to exist are sufficiently serious to justify a death sentence. So if, after weighing the aggravating and mitigating factors, eleven jurors believe that a death sentence is justified but one juror does not believe the death penalty to be justified, then the defendant would receive a sentence of life imprisonment. When I say life imprisonment, I mean just that. There is no parole in the federal prison system.

I know these procedures sound complicated. I assure you that if we get to the point in this trial that the penalty phase is necessary, I will give you detailed instructions on the law and how you should proceed with the decisions you'll be asked to make as a jury. For now, however, I want you to understand the basic process, including what has to happen before a penalty phase would become necessary, and what you will be called upon to do as jurors at the end of the penalty phase.

Just as with the question of whether the defendant is guilty or not guilty of the crimes charged, the law says and requires that jurors must approach the task of deciding whether to impose the death penalty with open minds and must be guided by what they hear and see in court. The jurors must not allow themselves to be controlled by any preconceived notion they might have about the facts and the law. Each juror must make an independent decision about all issues the jury is asked to address. Those decisions must be made in accordance with the law as it is presented to you by the

8

2456

Court.  Any personal disagreement that a juror may have with respect to the law must be set aside.

Finally, ladies and gentlemen, I want to stress that this discussion about the possibility of the death penalty being considered by the jury in this case should not in any way be taken by you as an indication that the jury will end up having to decide that issue.  I want to again remind you that the defendant is presumed to be innocent, and the question of the appropriate penalty will only come into play if all the jurors unanimously agree that the government has proved its case beyond a reasonable doubt. I ask you to keep an open mind throughout this process and remember that Mr. Briseno is presumed innocent.

Ladies and gentlemen, at this time I'm going to allow the attorneys to introduce themselves, and who is seated with them at counsel table.

[COUNSEL INTRODUCES THEMSELVES]

THE COURT:

Ladies and gentlemen, there are going to be other individuals who will participate in the trial. I'm going to introduce them to you, so that you don't have any question as to who they are. One of them is my courtroom deputy, Ms. Noel Collins.

I also have two staff attorneys, Ms. Mira Serrill-Robins and Ms. Denise Woodside.

Ladies and gentlemen, the government and the defendant have a right to have this case tried by qualified, fair and impartial jurors.  A qualified and impartial jury is

9

Case 15-2347 Document 35 Filed 07/27/2016 Pages: 4186

one which is responsible and capable and which will, without fear, favor, bias, prejudice, sympathy or passion, objectively hear and decide the issues to be tried, and render its verdict solely on the evidence presented at this trial and the law applicable to this case as given to you by me.

A juror's qualification and impartiality may not be assumed without inquiry, and the inquiry is known as the voir dire examination. It is a process by which the qualifications and impartiality of jurors may be determined. Its purpose is to develop the truth about a juror's competency, frame of mind and ability to do his or her sworn duty in accordance with the juror's oath. Your answers to the questions will enable me to determine whether you should be excused from jury service. It will also allow the attorneys to make use of their ability to excuse a potential juror without giving any reason for that decision.

Therefore, it is important that your answers to the questions be complete and truthful. You are under a duty to disclose any and all matters which might tend to disqualify you from sitting as a juror on this case. While the sweep of these questions may be broad, it is your affirmative obligation to honestly and conscientiously answer the real implications of the questions asked, and to make your answers as full and complete as possible. False or misleading answers may result in the seating of a juror who might otherwise have been discharged by me or have been stricken by the attorneys and could result in a miscarriage of justice. Consider each question very carefully, and don't wait until after you are selected and sworn in as a juror to disclose

10

2458

Case: 15-2347 Document: 35 Filed: 07/27/2016 Pages: 4186

something that should be disclosed when a question is asked or when one question suggests to you some other reason for disqualification. While the questions that are asked will be addressed to all of you collectively, they must be considered by you as though directed to each of you individually. The answers that you give to my questions will be made under oath. So Noel, please administer the oath to the potential jurors.

[NOEL SWEARS IN THE VENIRE]

<div align="center">VOIR DIRE</div>

Before we get started I want to tell you I will refer to you in open court by your juror number and not by your name. I am not trying to be disrespectful to you. The parties and the court obviously know your names, but I am keeping your names confidential when I speak to you in open court.

As you know, each of you completed a comprehensive questionnaire a number of months ago. I will need an oral response from each of you to this next question: did each of you truthfully answer all of the questions that were posed to you in the questionnaire? [Note on the record that all jurors responded yes]. Since the questionnaire was completed several months ago I want to remind you of some of the topics that the questionnaire covered so I that I can inquire whether anything has changed with your situation since you completed the questionnaire.

●Has anything in your background changed such as the birth of a child? What about the overall state of your health?

●Has your Education level changed?

<div align="center">11</div>

●What about your employer or the employment situation of your spouse?

●Has anything changed since completing the questionnaire with regard to your criminal justice experience, such as being arrested, or being the victim of a crime or being treated unfairly by the police?

●Have any of you been sued or brought a suit since completing the questionnaire?

●It's not likely, but have any of you served on a jury or testified as a witness since completing the questionnaire?

The trial of this case will take several weeks.  Many witnesses will be called. Can all of you agree to keep an open mind until all the evidence is introduced and you have heard the final instructions of the court?  Is there anyone unwilling or unable to do this?

During deliberations you will be required to listen to and consider the opinions of your fellow jurors and perhaps reassess your own views in an effort to reach a verdict. However, your vote must ultimately be based on your own good faith opinion and not merely to reach a verdict. In other words, you can't just vote to go along with the crowd. Does anyone have any problem with this concept?

Has anyone talked about this case with you or discussed it in your presence?

Have any of you formed or expressed an opinion as to the merits of this case?

Have any of you read any newspaper articles or heard any broadcast reports about this case? [Follow up with individual jurors at a sidebar]

Is there any juror who is familiar with the facts of this case?

12

Do any of you know the defendant, Mr. Briseno?

Do any of you know the attorneys or me? Ever associate with them or know them at all?

Is there anyone who cannot read, write and understand the English language?

Is there anyone who cannot hear or see well?

For you information, the trial will be conducted on Mondays through Thursdays from roughly 8:30 am to 5:00 pm. Is there anyone who will be *unduly* burdened with financial, business, family or medical problems if the trial of this case requires 6 weeks to try?

Is there any juror who has health problems that would interfere with your ability to serve as a juror?

Do you or any family member have any specialized legal training?

Do you know of any reason why you may be biased or prejudiced for or against the government or defendant simply because of the nature of the case?

There will be law enforcement agents who will testify in this case. Is there anyone who would have difficulty treating the testimony of those witnesses in the same way you would treat that of any other witness?

Do any of you have law enforcement officers as members of your family?

    - Who? What Dept? Does this prevent you from being fair and impartial?

Do any of you have anyone in your family that has had difficulty with the law?

    -Who? When? What kind of difficulty? Can you still be fair and impartial?

Have any of you had any experiences with law enforcement that would cause you to be biased or prejudiced for or against the Government or the Defendant? I'm looking for interactions with law enforcement that were decidedly negative or overridingly positive such that it would cause you to be biased one way or the other?

Ladies and gentlemen, I'll now read to you a list of witnesses who may testify in this matter. Please pay attention and think about whether or not you know any of these people. And, counsel, I'm going to ask you that in the event that I read a name and mispronounce it, that you will correct me. I want to make sure that I have the right pronunciation.

[Read witness List]

Ladies and gentlemen, that's a list of potential witnesses who may testify. Does anybody know any of these individuals, ever hear anything about them, know anything about these individuals?

(Follow up on any affirmative response.)

Have you or any family member ever been involved in a criminal matter as a defendant, a victim or a witness?

Have you had any experience involving yourself or a family member that relates to the possession, use or abuse or illegal drugs?

This case is being prosecuted by the U.S. Attorney's Office for the Northern District of Indiana. Have any of you had any dealing with that office which would prevent you from being fair and impartial in this case?

14

2462

As I mentioned earlier there are some fundamental bedrock principles of criminal law: one is that the defendant is presumed innocent and that presumption stays with him throughout the trial and it can only be overcome if the government proves its case beyond a reasonable doubt. Do any of you take issue with these fundamental principles?

It will be your job to follow the instructions of the court as to what the rules of law are that apply to this case. You will have to follow the law, even if you personally disagree with it. Is there anyone who is unable or unwilling to do this?

If you are selected as a juror in this case, you will be required to set aside any passion or prejudice and decide this case solely based on the evidence introduced in this case and on the law as I will give it to you. Is there anyone unable or unwilling to do this?

If you were the Asst. U.S. Attorney charged with the responsibility of prosecuting this case, or if you were the defendant in this case, would you be content to have this case tried by someone in your frame of mind?

Having heard the questions to you and the others does anything suggest to you any reason, any reason whatsoever, why you can't be a fair and impartial juror?

\* \* \* \* \*

INDIVIDUAL QUESTIONING OF THE JURORS

Juror Number __, I want to remind you that you are still under oath. We are about to ask you questions about the death penalty. As I have already explained, it may

15

seem odd that we are asking these questions when the defendant is presumed innocent. The death penalty may never come up in this case. It all depends on whether the jury is convinced beyond a reasonable doubt that the defendant is guilty of one of the counts that carries the death penalty as an option. However, this is the only chance we have to learn your views on what may become an issue in this case. Again, I ask that you keep an open mind as you answer these questions and remember that every defendant is presumed innocent.

Do you have an opinion about the death penalty? If so, what is that opinion?

For any reason — whether it be moral or religious or philosophical or simply as a matter of conscience — would you never find, under any circumstances, in favor of the death penalty?

Suppose you end up sitting as a juror in this case and the jury finds the defendant guilty of one or more of the capital offenses. The case will then go to the sentencing phase. In that situation, would you always vote to impose the death penalty regardless of what the mitigating and aggravating factors showed?

[follow up as appropriate and then allow further questioning by counsel]

2464

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION


UNITED STATES OF AMERICA          )
                                  )
          v.                      )          2:11 CR 77 PPS
                                  )
JUAN BRISENO                      )


**GOVERNMENT'S MOTION TO DISMISS COUNTS 10, 14, 16, 18, 20 AND 22 OF THE FOURTH SUPERSEDING INDICTMENT**

The UNITED STATES OF AMERICA, by its attorney, DAVID CAPP, United States Attorney for the Northern District of Indiana, moves to dismiss counts 10, 14, 16, 18, 20 and 22 of the Fourth Superseding Indictment.  In support, the government states as follows.

1.   The Fourth Superseding Indictment charges the defendant with six different murders, in addition to other crimes such as attempted murders, a conspiracy to commit racketeering activity, and a narcotics conspiracy.

2.  Each homicide is charged in two different counts under two different Federal statutes. For example, the murder of Luis Ortiz is charged in Count 9 as a Murder in Aid of Racketeering Activity, in violation of 18 U.S.C. §§ 1959(a)(1).  This same homicide is charged in Count 10 as a Murder Resulting from the Use and Carrying of a Firearm During and in Relation to a Crime of Violence, in violation of 18 U.S.C. § 924(c) and 924(j).

3.  Additional Murder in Aid of Racketeering charges are contained in counts 13 (victim Michael Sessum), 15 (victim Miguel Mejias), 17 (victim Harris Brown), 19 (victim Miguel Colon) and 21 (victim Latroy Howard).

4. The corresponding Murder Resulting from the Use and Carrying of a Firearm During and in Relation to a Crime of violence are found in counts 14 (victim Michael Sessum), 16 (victim Miguel Mejias), 18 (victim Harris Brown), 20 (victim Miguel Colon) and 22 (victim Latroy Howard).

5. While all of the Murder Resulting from the Use and Carrying of a Firearm During and in Relation to a Crime of Violence counts have been properly charged, there is a chance that this method of charging each homicide in two different ways will unnecessarily complicate the jury instructions in both the guilt phase and the death penalty phase. Furthermore, it is extremely unlikely that the additional convictions on the Murder Resulting from the Use and Carrying of a Firearm during and in Relation to a Crime of Violence will have any effect on the defendant's ultimate sentence.

6. In order to simplify the jury instructions, and avoid potential juror confusion, the government now moves to dismiss, without prejudice, Counts 10, 14, 16, 18, 20 and 22 of the Fourth Superseding Indictment.

7. This motion has no effect whatsoever on the prosecution of the Murder in Aid of Racketeering Counts charged in Counts 9 (victim Luis Ortiz), 13 (victim Michael Sessum), 15 (victim Miguel Mejias), 17 (victim Harris Brown), 19 (victim Miguel Colon) and 21 (victim Latroy Howard).

WHEREFORE, for the reasons stated above, the government hereby moves to dismiss without prejudice Counts 10, 14, 16, 18, 20 and 22 of the Fourth Superseding Indictment.

Respectfully submitted,

DAVID CAPP
United States Attorney

By:     /s/ David J. Nozick
        David J. Nozick
        Assistant U.S. Attorney
        5400 Federal Plaza, Suite 1500
        Hammond, Indiana 46320
        (219) 937-5500

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION


UNITED STATES OF AMERICA     )
                 )
      v.           )      NO. 2:11 CR 77 PPS
                 )
JUAN BRISENO          )


CERTIFICATE OF SERVICE

The undersigned hereby certifies that the Government's Motion to Dismiss Counts 10,

14, 16, 18, 20 and 22 of the Fourth Superseding Indictment was electronically filed with the

Clerk of the Court using the CM/ECF system which sent notification of said filing to the

following individuals:

ARLINGTON J. FOLEY
JOHN MAKSIMOVICH
(Attorneys for defendant Juan Briseno)


By:    /s/ Janet L. Eisenmann
        Janet L. Eisenmann
        U.S. Attorney's Office
        5400 Federal Plaza, Suite 1500
        Hammond, Indiana 46320
        (219) 937-5500

```
MIME-Version:1.0
From:CMECFinnd@innd.uscourts.gov
To:CMECFinnd@localhost.localdomain
Bcc:
--Case Participants: Richard M Davis (jdavis@hwelaw.com, rdavis@hwelaw.com,
rgould@hwelaw.com), Pablo DeCastro (pdecastro@rascia-decastro.com,
ysierra@rascia-decastro.com), Kurt R Earnst (kre@braje-nelson.com), Arlington J Foley
(arlingtonfoley@att.net), Jack Friedlander (jack@jackfriedlander.com,
office@jackfriedlander.com), Bruce R Hegyi - AUSA (bruce.hegyi@usdoj.gov), Roxanne Mendez
Johnson (attorneyrmj@gmail.com), Gojko Kasich (gkasich@crownlaw.com, gkasich@gmail.com),
Scott L King (dwilliams@scottkinggroup.com, sking@scottkinggroup.com), Visvaldis P Kupsis
(vpkupsis@hotmail.com), Dean R Lanter - AUSA (dean.lanter@usdoj.gov,
janet.eisenmann@usdoj.gov, usainn.ecfcivil@usdoj.gov), John Maksimovich
(criminallaw@johnmaksimovich.com), John E Martin - FCD (john_martin@fd.org), Sheldon B
Nagelberg (sbnagelberglaw@att.net), David J Nozick - AUSA (david.nozick@usdoj.gov,
janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov,
usainn.ecfcivil@usdoj.gov), Mark A Psimos (psimoslaw@airbaud.net), Robert L Rascia
(rrascia@rascia-decastro.com, ysierra@rascia-decastro.com), Stephen Edward Scheele
(pkd@gk4law.com, ses@gk4law.com), Paul Jeffrey Schlesinger (pjeffslaw@aol.com), Adam
Tavitas (adtavitas@aol.com, b.lynneadams@yahoo.com), John T Theis (theislaw@aol.com),
James N Thiros (jim@thiros.com, lynn@thiros.com), Bryan M Truitt (bryan@tblawyers.com,
sherrie@tblawyers.com), David E Vandercoy (david.vandercoy@valpo.edu), Thomas W Vanes
(b.lynneadams@yahoo.com, tom.vanes@sbcglobal.net), Ihor Alexander Woloshansky
(ihorlawyer@hotmail.com), Richard C Wolter (b.lynneadams@yahoo.com), R Brian Woodward
(carolb@wbbklaw.com, rbwoodward@wbbklaw.com), Magistrate Judge Andrew P Rodovich
(rodovich_chambers@innd.uscourts.gov, ruth_nagy@innd.uscourts.gov), Chief Judge Philip P
Simon (denise_woodside@innd.uscourts.gov, jacob_hamann@innd.uscourts.gov,
lauren_schwartz@innd.uscourts.gov, mira_serrill-robins@innd.uscourts.gov,
noel_collins@innd.uscourts.gov, philip_simon@innd.uscourts.gov)
--Non Case Participants: Matthew D Soliday (office@matthewsolidaylaw.com)
--No Notice Sent:

Message-Id:2669949@innd.uscourts.gov
Subject:Activity in Case 2:11-cr-00077-PPS-APR United States of America v. Briseno et al
Applicable Party
```
Content–Type: text/html

## U.S. District Court Northern District of Indiana [LIVE]

## USDC Northern Indiana

### Notice of Electronic Filing

The following transaction was entered on 12/12/2014 at 3:32 PM EST and filed on 12/12/2014

**Case Name:** United States of America v. Briseno et al

**Case Number:** 2:11–cr–00077–PPS–APR

**Filer:**

**Document Number:** No document attached

**Docket Text:**
**SEALED EXPARTE ORDER ruling on motion [1219]. Signed by Chief Judge Philip P Simon on 12/12/2014. (copy to defense cnsl for Juan Briseno only). (nac)**

**2:11–cr–00077–PPS–APR–1 Notice has been electronically mailed to:**

David E Vandercoy    david.vandercoy@valpo.edu

Richard M Davis    rdavis@hwelaw.com, jdavis@hwelaw.com, rgould@hwelaw.com

Arlington J Foley    arlingtonfoley@att.net

Mark A Psimos    psimoslaw@airbaud.net

Gojko Kasich    gkasich@crownlaw.com, gkasich@gmail.com

Scott L King    sking@scottkinggroup.com, dwilliams@scottkinggroup.com

James N Thiros    jim@thiros.com, lynn@thiros.com

Thomas W Vanes    tom.vanes@sbcglobal.net, b.lynneadams@yahoo.com

Ihor Alexander Woloshansky    ihorlawyer@hotmail.com

R Brian Woodward    rbwoodward@wbbklaw.com, carolb@wbbklaw.com

John Maksimovich    criminallaw@johnmaksimovich.com

Visvaldis P Kupsis    vpkupsis@hotmail.com

Sheldon B Nagelberg    sbnagelberglaw@att.net

John E Martin – FCD    john_martin@fd.org

Adam Tavitas    Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander    jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele    ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst    kre@braje−nelson.com

Bryan M Truitt    bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis    theislaw@aol.com

Robert L Rascia    rrascia@rascia−decastro.com, ysierra@rascia−decastro.com

Paul Jeffrey Schlesinger    pjeffslaw@aol.com

Pablo DeCastro    pdecastro@rascia−decastro.com, ysierra@rascia−decastro.com

Dean R Lanter – AUSA    dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA    David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson    attorneyrmj@gmail.com

Bruce R Hegyi – AUSA    bruce.hegyi@usdoj.gov

**2:11−cr−00077−PPS−APR−1 Notice has been delivered by U.S. Mail or other means to:**

```
MIME-Version:1.0
From:CMECFinnd@innd.uscourts.gov
To:CMECFinnd@localhost.localdomain
Bcc:
--Case Participants: Richard M Davis (jdavis@hwelaw.com, rdavis@hwelaw.com,
rgould@hwelaw.com), Pablo DeCastro (pdecastro@rascia-decastro.com,
ysierra@rascia-decastro.com), Kurt R Earnst (kre@braje-nelson.com), Arlington J Foley
(arlingtonfoley@att.net), Jack Friedlander (jack@jackfriedlander.com,
office@jackfriedlander.com), Bruce R Hegyi - AUSA (bruce.hegyi@usdoj.gov), Roxanne Mendez
Johnson (attorneyrmj@gmail.com), Gojko Kasich (gkasich@crownlaw.com, gkasich@gmail.com),
Scott L King (dwilliams@scottkinggroup.com, sking@scottkinggroup.com), Visvaldis P Kupsis
(vpkupsis@hotmail.com), Dean R Lanter - AUSA (dean.lanter@usdoj.gov,
janet.eisenmann@usdoj.gov, usainn.ecfcivil@usdoj.gov), John Maksimovich
(criminallaw@johnmaksimovich.com), John E Martin - FCD (john_martin@fd.org), Sheldon B
Nagelberg (sbnagelberglaw@att.net), David J Nozick - AUSA (david.nozick@usdoj.gov,
janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov,
usainn.ecfcivil@usdoj.gov), Mark A Psimos (psimoslaw@airbaud.net), Robert L Rascia
(rrascia@rascia-decastro.com, ysierra@rascia-decastro.com), Stephen Edward Scheele
(pkd@gk4law.com, ses@gk4law.com), Paul Jeffrey Schlesinger (pjeffslaw@aol.com), Adam
Tavitas (adtavitas@aol.com, b.lynneadams@yahoo.com), John T Theis (theislaw@aol.com),
James N Thiros (jim@thiros.com, lynn@thiros.com), Bryan M Truitt (bryan@tblawyers.com,
sherrie@tblawyers.com), David E Vandercoy (david.vandercoy@valpo.edu), Thomas W Vanes
(b.lynneadams@yahoo.com, tom.vanes@sbcglobal.net), Ihor Alexander Woloshansky
(ihorlawyer@hotmail.com), Richard C Wolter (b.lynneadams@yahoo.com), R Brian Woodward
(carolb@wbbklaw.com, rbwoodward@wbbklaw.com), Magistrate Judge Andrew P Rodovich
(rodovich_chambers@innd.uscourts.gov, ruth_nagy@innd.uscourts.gov), Chief Judge Philip P
Simon (denise_woodside@innd.uscourts.gov, jacob_hamann@innd.uscourts.gov,
lauren_schwartz@innd.uscourts.gov, mira_serrill-robins@innd.uscourts.gov,
noel_collins@innd.uscourts.gov, philip_simon@innd.uscourts.gov)
--Non Case Participants: Matthew D Soliday (office@matthewsolidaylaw.com),
Probation/Pretrial Services (innpml_cmecf@innd.uscourts.gov), U S Marshal
(inn.docket-fw@usdoj.gov, inn.docket-sb@usdoj.gov, usms.27@usdoj.gov)
--No Notice Sent:

Message-Id:2670015@innd.uscourts.gov
Subject:Activity in Case 2:11-cr-00077-PPS-APR United States of America v. Briseno et al
Order on Motion for Extension of Time to File
Content-Type: text/html
```

## U.S. District Court Northern District of Indiana [LIVE]

## USDC Northern Indiana

## Notice of Electronic Filing

The following transaction was entered on 12/12/2014 at 3:48 PM EST and filed on 12/12/2014

| | |
|---|---|
| **Case Name:** | United States of America v. Briseno et al |
| **Case Number:** | 2:11-cr-00077-PPS-APR |
| **Filer:** | |
| **Document Number:** | 1227(No document attached) |

**Docket Text:**

**ORDER – GRANTING [1220] Motion for Extension of Time to File Exhibit List as to Juan Briseno (1): Exhibit List due by 12/19/2014. (Text entry only, no pdf is attached) Granted in open court during 12/12/2014 hearing. Chief Judge Philip P. Simon. (nac)**

**2:11−cr−00077−PPS−APR−1 Notice has been electronically mailed to:**

David E Vandercoy    david.vandercoy@valpo.edu

Richard M Davis    rdavis@hwelaw.com, jdavis@hwelaw.com, rgould@hwelaw.com

Arlington J Foley    arlingtonfoley@att.net

Mark A Psimos    psimoslaw@airbaud.net

Gojko Kasich    gkasich@crownlaw.com, gkasich@gmail.com

Scott L King    sking@scottkinggroup.com, dwilliams@scottkinggroup.com

James N Thiros    jim@thiros.com, lynn@thiros.com

Thomas W Vanes    tom.vanes@sbcglobal.net, b.lynneadams@yahoo.com

Ihor Alexander Woloshansky    ihorlawyer@hotmail.com

R Brian Woodward    rbwoodward@wbbklaw.com, carolb@wbbklaw.com

John Maksimovich    criminallaw@johnmaksimovich.com

Visvaldis P Kupsis    vpkupsis@hotmail.com

Sheldon B Nagelberg    sbnagelberglaw@att.net

John E Martin − FCD    john_martin@fd.org

Adam Tavitas    Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander    jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele    ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst    kre@braje−nelson.com

Bryan M Truitt    bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis    theislaw@aol.com

Robert L Rascia    rrascia@rascia−decastro.com, ysierra@rascia−decastro.com

Paul Jeffrey Schlesinger    pjeffslaw@aol.com

Pablo DeCastro    pdecastro@rascia−decastro.com, ysierra@rascia−decastro.com

Dean R Lanter − AUSA    dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov,
janet.eisenmann@usdoj.gov

David J Nozick – AUSA    David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov,
janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson    attorneyrmj@gmail.com

Bruce R Hegyi – AUSA    bruce.hegyi@usdoj.gov

**2:11−cr−00077−PPS−APR−1 Notice has been delivered by U.S. Mail or other means to:**

```
MIME-Version:1.0
From:CMECFinnd@innd.uscourts.gov
To:CMECFinnd@localhost.localdomain
Bcc:
--Case Participants: Bryan M Truitt (bryan@tblawyers.com, sherrie@tblawyers.com), David J
Nozick – AUSA (david.nozick@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov,
susan.devries@usdoj.gov, usainn.ecfcivil@usdoj.gov), Kurt R Earnst (kre@braje-nelson.com),
Paul Jeffrey Schlesinger (pjeffslaw@aol.com), Pablo DeCastro
(pdecastro@rascia-decastro.com, ysierra@rascia-decastro.com), Sheldon B Nagelberg
(sbnagelberglaw@att.net), Thomas W Vanes (b.lynneadams@yahoo.com,
tom.vanes@sbcglobal.net), Richard C Wolter (b.lynneadams@yahoo.com), John T Theis
(theislaw@aol.com), Adam Tavitas (adtavitas@aol.com, b.lynneadams@yahoo.com), Dean R
Lanter – AUSA (dean.lanter@usdoj.gov, janet.eisenmann@usdoj.gov,
usainn.ecfcivil@usdoj.gov), John E Martin – FCD (john_martin@fd.org), Scott L King
(dwilliams@scottkinggroup.com, sking@scottkinggroup.com), Mark A Psimos
(psimoslaw@airbaud.net), Ihor Alexander Woloshansky (ihorlawyer@hotmail.com), Richard M
Davis (jdavis@hwelaw.com, rdavis@hwelaw.com, rgould@hwelaw.com), James N Thiros
(jim@thiros.com, lynn@thiros.com), Robert L Rascia (rrascia@rascia-decastro.com,
ysierra@rascia-decastro.com), Gojko Kasich (gkasich@crownlaw.com, gkasich@gmail.com),
Arlington J Foley (arlingtonfoley@att.net), Roxanne Mendez Johnson
(attorneyrmj@gmail.com), Visvaldis P Kupsis (vpkupsis@hotmail.com), Stephen Edward Scheele
(pkd@gk4law.com, ses@gk4law.com), Jack Friedlander (jack@jackfriedlander.com,
office@jackfriedlander.com), Bruce R Hegyi – AUSA (bruce.hegyi@usdoj.gov), R Brian
Woodward (carolb@wbbklaw.com, rbwoodward@wbbklaw.com), John Maksimovich
(criminallaw@johnmaksimovich.com), David E Vandercoy (david.vandercoy@valpo.edu),
Magistrate Judge Andrew P Rodovich (rodovich_chambers@innd.uscourts.gov,
ruth_nagy@innd.uscourts.gov), Chief Judge Philip P Simon
(denise_woodside@innd.uscourts.gov, jacob_hamann@innd.uscourts.gov,
lauren_schwartz@innd.uscourts.gov, mira_serrill-robins@innd.uscourts.gov,
noel_collins@innd.uscourts.gov, philip_simon@innd.uscourts.gov)
--Non Case Participants: Matthew D Soliday (office@matthewsolidaylaw.com),
Probation/Pretrial Services (innpml_cmecf@innd.uscourts.gov), U S Marshal
(inn.docket-fw@usdoj.gov, inn.docket-sb@usdoj.gov, usms.27@usdoj.gov)
--No Notice Sent:

Message-Id:2670054@innd.uscourts.gov
Subject:Activity in Case 2:11-cr-00077-PPS-APR United States of America v. Briseno et al
Order on Motion to Dismiss
Content–Type: text/html
```

### U.S. District Court Northern District of Indiana [LIVE]

### USDC Northern Indiana

## Notice of Electronic Filing

The following transaction was entered on 12/12/2014 at 4:03 PM EST and filed on 12/12/2014

| | |
|---|---|
| **Case Name:** | United States of America v. Briseno et al |
| **Case Number:** | 2:11–cr–00077–PPS–APR |
| **Filer:** | |
| **Document Number:** | 1228(No document attached) |

**Docket Text:**
 **ORDER GRANTING Motion to Dismiss Counts of the Fourth Superseding Indictment [1225]
for the dismissal of 924j counts (10, 14, 16, 18, 20 and 22) as to Juan Briseno. Order
GRANTED at the hearing in open court held on 12/12/2014. Chief Judge Philip P. Simon.
(nac)**

**2:11−cr−00077−PPS−APR−1 Notice has been electronically mailed to:**

David E Vandercoy     david.vandercoy@valpo.edu

Richard M Davis     rdavis@hwelaw.com, jdavis@hwelaw.com, rgould@hwelaw.com

Arlington J Foley     arlingtonfoley@att.net

Mark A Psimos     psimoslaw@airbaud.net

Gojko Kasich     gkasich@crownlaw.com, gkasich@gmail.com

Scott L King     sking@scottkinggroup.com, dwilliams@scottkinggroup.com

James N Thiros     jim@thiros.com, lynn@thiros.com

Thomas W Vanes     tom.vanes@sbcglobal.net, b.lynneadams@yahoo.com

Ihor Alexander Woloshansky     ihorlawyer@hotmail.com

R Brian Woodward     rbwoodward@wbbklaw.com, carolb@wbbklaw.com

John Maksimovich     criminallaw@johnmaksimovich.com

Visvaldis P Kupsis     vpkupsis@hotmail.com

Sheldon B Nagelberg     sbnagelberglaw@att.net

John E Martin − FCD     john_martin@fd.org

Adam Tavitas     Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander     jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele     ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst     kre@braje−nelson.com

Bryan M Truitt     bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis     theislaw@aol.com

Robert L Rascia     rrascia@rascia−decastro.com, ysierra@rascia−decastro.com

Paul Jeffrey Schlesinger     pjeffslaw@aol.com

Pablo DeCastro     pdecastro@rascia−decastro.com, ysierra@rascia−decastro.com

Dean R Lanter − AUSA     dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov,
janet.eisenmann@usdoj.gov

David J Nozick – AUSA    David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov,
janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson    attorneyrmj@gmail.com

Bruce R Hegyi – AUSA    bruce.hegyi@usdoj.gov

**2:11–cr–00077–PPS–APR–1 Notice has been delivered by U.S. Mail or other means to:**

```
MIME-Version:1.0
From:CMECFinnd@innd.uscourts.gov
To:CMECFinnd@localhost.localdomain
Bcc:
--Case Participants: Bryan M Truitt (bryan@tblawyers.com, sherrie@tblawyers.com), David J
Nozick - AUSA (david.nozick@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov,
susan.devries@usdoj.gov, usainn.ecfcivil@usdoj.gov), Kurt R Earnst (kre@braje-nelson.com),
Paul Jeffrey Schlesinger (pjeffslaw@aol.com), Pablo DeCastro
(pdecastro@rascia-decastro.com, ysierra@rascia-decastro.com), Sheldon B Nagelberg
(sbnagelberglaw@att.net), Thomas W Vanes (b.lynneadams@yahoo.com,
tom.vanes@sbcglobal.net), Richard C Wolter (b.lynneadams@yahoo.com), John T Theis
(theislaw@aol.com), Adam Tavitas (adtavitas@aol.com, b.lynneadams@yahoo.com), Dean R
Lanter - AUSA (dean.lanter@usdoj.gov, janet.eisenmann@usdoj.gov,
usainn.ecfcivil@usdoj.gov), John E Martin - FCD (john_martin@fd.org), Scott L King
(dwilliams@scottkinggroup.com, sking@scottkinggroup.com), Mark A Psimos
(psimoslaw@airbaud.net), Ihor Alexander Woloshansky (ihorlawyer@hotmail.com), Richard M
Davis (jdavis@hwelaw.com, rdavis@hwelaw.com, rgould@hwelaw.com), James N Thiros
(jim@thiros.com, lynn@thiros.com), Robert L Rascia (rrascia@rascia-decastro.com,
ysierra@rascia-decastro.com), Gojko Kasich (gkasich@crownlaw.com, gkasich@gmail.com),
Arlington J Foley (arlingtonfoley@att.net), Roxanne Mendez Johnson
(attorneyrmj@gmail.com), Visvaldis P Kupsis (vpkupsis@hotmail.com), Stephen Edward Scheele
(pkd@gk4law.com, ses@gk4law.com), Jack Friedlander (jack@jackfriedlander.com,
office@jackfriedlander.com), Bruce R Hegyi - AUSA (bruce.hegyi@usdoj.gov), R Brian
Woodward (carolb@wbbklaw.com, rbwoodward@wbbklaw.com), John Maksimovich
(criminallaw@johnmaksimovich.com), David E Vandercoy (david.vandercoy@valpo.edu),
Magistrate Judge Andrew P Rodovich (rodovich_chambers@innd.uscourts.gov,
ruth_nagy@innd.uscourts.gov), Chief Judge Philip P Simon
(denise_woodside@innd.uscourts.gov, jacob_hamann@innd.uscourts.gov,
lauren_schwartz@innd.uscourts.gov, mira_serrill-robins@innd.uscourts.gov,
noel_collins@innd.uscourts.gov, philip_simon@innd.uscourts.gov)
--Non Case Participants: Matthew D Soliday (office@matthewsolidaylaw.com),
Probation/Pretrial Services (innpml_cmecf@innd.uscourts.gov), U S Marshal
(inn.docket-fw@usdoj.gov, inn.docket-sb@usdoj.gov, usms.27@usdoj.gov)
--No Notice Sent:

Message-Id:2670097@innd.uscourts.gov
Subject:Activity in Case 2:11-cr-00077-PPS-APR United States of America v. Briseno et al
Order on Motion for Leave to File
Content-Type: text/html
```

### U.S. District Court Northern District of Indiana [LIVE]

### USDC Northern Indiana

## Notice of Electronic Filing

The following transaction was entered on 12/12/2014 at 4:16 PM EST and filed on 12/12/2014

| | |
|---|---|
| **Case Name:** | United States of America v. Briseno et al |
| **Case Number:** | 2:11-cr-00077-PPS-APR |
| **Filer:** | |
| **Document Number:** | 1229(No document attached) |

**Docket Text:**
**ORDER GRANTING [1221] Motion for Leave to File Instanter Motion in Limine as to Juan Briseno (1). (Text entry only, no pdf to be issued). Approved by Chief Judge Philip P Simon on 12/12/2014. (nac)**

**2:11−cr−00077−PPS−APR−1 Notice has been electronically mailed to:**

David E Vandercoy    david.vandercoy@valpo.edu

Richard M Davis    rdavis@hwelaw.com, jdavis@hwelaw.com, rgould@hwelaw.com

Arlington J Foley    arlingtonfoley@att.net

Mark A Psimos    psimoslaw@airbaud.net

Gojko Kasich    gkasich@crownlaw.com, gkasich@gmail.com

Scott L King    sking@scottkinggroup.com, dwilliams@scottkinggroup.com

James N Thiros    jim@thiros.com, lynn@thiros.com

Thomas W Vanes    tom.vanes@sbcglobal.net, b.lynneadams@yahoo.com

Ihor Alexander Woloshansky    ihorlawyer@hotmail.com

R Brian Woodward    rbwoodward@wbbklaw.com, carolb@wbbklaw.com

John Maksimovich    criminallaw@johnmaksimovich.com

Visvaldis P Kupsis    vpkupsis@hotmail.com

Sheldon B Nagelberg    sbnagelberglaw@att.net

John E Martin − FCD    john_martin@fd.org

Adam Tavitas    Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander    jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele    ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst    kre@braje−nelson.com

Bryan M Truitt    bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis    theislaw@aol.com

Robert L Rascia    rrascia@rascia−decastro.com, ysierra@rascia−decastro.com

Paul Jeffrey Schlesinger    pjeffslaw@aol.com

Pablo DeCastro    pdecastro@rascia−decastro.com, ysierra@rascia−decastro.com

Dean R Lanter − AUSA    dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov,
janet.eisenmann@usdoj.gov

David J Nozick – AUSA   David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson   attorneyrmj@gmail.com

Bruce R Hegyi – AUSA   bruce.hegyi@usdoj.gov

**2:11–cr–00077–PPS–APR–1 Notice has been delivered by U.S. Mail or other means to:**

```
MIME-Version:1.0
From:CMECFinnd@innd.uscourts.gov
To:CMECFinnd@localhost.localdomain
Bcc:
--Case Participants: Richard M Davis (jdavis@hwelaw.com, rdavis@hwelaw.com,
rgould@hwelaw.com), Pablo DeCastro (pdecastro@rascia-decastro.com,
ysierra@rascia-decastro.com), Kurt R Earnst (kre@braje-nelson.com), Arlington J Foley
(arlingtonfoley@att.net), Jack Friedlander (jack@jackfriedlander.com,
office@jackfriedlander.com), Bruce R Hegyi - AUSA (bruce.hegyi@usdoj.gov), Roxanne Mendez
Johnson (attorneyrmj@gmail.com), Gojko Kasich (gkasich@crownlaw.com, gkasich@gmail.com),
Scott L King (dwilliams@scottkinggroup.com, sking@scottkinggroup.com), Visvaldis P Kupsis
(vpkupsis@hotmail.com), Dean R Lanter - AUSA (dean.lanter@usdoj.gov,
janet.eisenmann@usdoj.gov, usainn.ecfcivil@usdoj.gov), John Maksimovich
(criminallaw@johnmaksimovich.com), John E Martin - FCD (john_martin@fd.org), Sheldon B
Nagelberg (sbnagelberglaw@att.net), David J Nozick - AUSA (david.nozick@usdoj.gov,
janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov,
usainn.ecfcivil@usdoj.gov), Mark A Psimos (psimoslaw@airbaud.net), Robert L Rascia
(rrascia@rascia-decastro.com, ysierra@rascia-decastro.com), Stephen Edward Scheele
(pkd@gk4law.com, ses@gk4law.com), Paul Jeffrey Schlesinger (pjeffslaw@aol.com), Adam
Tavitas (adtavitas@aol.com, b.lynneadams@yahoo.com), John T Theis (theislaw@aol.com),
James N Thiros (jim@thiros.com, lynn@thiros.com), Bryan M Truitt (bryan@tblawyers.com,
sherrie@tblawyers.com), David E Vandercoy (david.vandercoy@valpo.edu), Thomas W Vanes
(b.lynneadams@yahoo.com, tom.vanes@sbcglobal.net), Ihor Alexander Woloshansky
(ihorlawyer@hotmail.com), Richard C Wolter (b.lynneadams@yahoo.com), R Brian Woodward
(carolb@wbbklaw.com, rbwoodward@wbbklaw.com), Magistrate Judge Andrew P Rodovich
(rodovich_chambers@innd.uscourts.gov, ruth_nagy@innd.uscourts.gov), Chief Judge Philip P
Simon (denise_woodside@innd.uscourts.gov, jacob_hamann@innd.uscourts.gov,
lauren_schwartz@innd.uscourts.gov, mira_serrill-robins@innd.uscourts.gov,
noel_collins@innd.uscourts.gov, philip_simon@innd.uscourts.gov)
--Non Case Participants: Matthew D Soliday (office@matthewsolidaylaw.com),
Probation/Pretrial Services (innpml_cmecf@innd.uscourts.gov), U S Marshal
(inn.docket-fw@usdoj.gov, inn.docket-sb@usdoj.gov, usms.27@usdoj.gov)
--No Notice Sent:

Message-Id:2671152@innd.uscourts.gov
Subject:Activity in Case 2:11-cr-00077-PPS-APR United States of America v. Briseno et al
Pretrial Conference - Final
Content-Type: text/html
```

## U.S. District Court Northern District of Indiana [LIVE]

### USDC Northern Indiana

### Notice of Electronic Filing

The following transaction was entered on 12/15/2014 at 6:28 PM EST and filed on 12/12/2014

**Case Name:**      United States of America v. Briseno et al

**Case Number:**    2:11-cr-00077-PPS-APR

**Filer:**

**Document Number:** 1237(No document attached)

**Docket Text:**
 **FINAL PRETRIAL CONFERENCE as to Juan Briseno held on 12/12/2014 before Chief Judge
Philip P Simon. (Note: a second Final Pretrial Conference is scheduled for 1/5/2015 at 10:00
a.m. before Chief Judge Simon). Govt appeared by attorneys David Nozick (in person) and
Bruce Hegyi (by telephone). Dft is present in person and by counsel John Maksimovich and
Arlington Foley. A number of issues and topics were initiated by the court and discussed**

2481

**with counsel including the following: Juror questionairres: no line for a sworn signature of the potential juror, some juror questionairres not being fully completed, some juror questionairres never returned by the potential juror. Atty Hegyi will provide a list (under seal) to the Court of those questionairres that have not been fully completed. Defense request for daily copy of jury selection – Court GRANTS. No partial transcripts will be prepared, there will be a morning transcript and an afternoon transcript. Juror numbers to be used in court to refer to the prospective jurors. Court explains jury selection process to attorneys. The Court DENIES the defense request for additional challenges. Discussion on method of prememptory challenges. "Jury box" method to be used. Motion for extension of time to file Exhibit List is GRANTED. Exclusion of witnesses discussed. Scope of enterprise evidence discussion. Court reminds attorneys of the local rule regarding release of info to media/press. Govt has moved for the dismissal of 924J counts – Court GRANTS. Discussion on overflow room. Discussion on security issues. Conference room to be provided to defense attorneys to house trial materials. Parties to provide cell phone numbers to Case Mgr in case of need/emergency during the trial. Juror note taking will be permitted. Further discussion on overflow room as it relates to exclusion of witnesses. Government questions/comments discussion: govt witness list to defense the night prior to when that witness will be called, a power point that the govt intends to use (to be provided to the court by the end of the year). Two videos to be played during the trial. NCIC of witnesses. Brief discussion on stipulations, deadlines, rebuttal experts due 1/23/2015. Defense counsel additional concerns: facility for housing dft (court to check with USM), personal hygiene products for dft, clothing for dft. If there are any spanish speaking witnesses, an interpreter will need to be arranged. Next hearing: Thursday, 12/18/2014 at 10:00 a.m. regarding juror strikes for cause. Defendant REMANDED to custody of US Marshal.(Court Reporter Stacy Drohosky.) (nac)**

**2:11–cr–00077–PPS–APR–1 Notice has been electronically mailed to:**

David E Vandercoy    david.vandercoy@valpo.edu

Richard M Davis    rdavis@hwelaw.com, jdavis@hwelaw.com, rgould@hwelaw.com

Arlington J Foley    arlingtonfoley@att.net

Mark A Psimos    psimoslaw@airbaud.net

Gojko Kasich    gkasich@crownlaw.com, gkasich@gmail.com

Scott L King    sking@scottkinggroup.com, dwilliams@scottkinggroup.com

James N Thiros    jim@thiros.com, lynn@thiros.com

Thomas W Vanes    tom.vanes@sbcglobal.net, b.lynneadams@yahoo.com

Ihor Alexander Woloshansky    ihorlawyer@hotmail.com

R Brian Woodward    rbwoodward@wbbklaw.com, carolb@wbbklaw.com

John Maksimovich    criminallaw@johnmaksimovich.com

Visvaldis P Kupsis    vpkupsis@hotmail.com

Sheldon B Nagelberg    sbnagelberglaw@att.net

John E Martin – FCD    john_martin@fd.org

Adam Tavitas    Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander    jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele    ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst    kre@braje–nelson.com

Bryan M Truitt    bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis    theislaw@aol.com

Robert L Rascia    rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger    pjeffslaw@aol.com

Pablo DeCastro    pdecastro@rascia–decastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA    dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov,
janet.eisenmann@usdoj.gov

David J Nozick – AUSA    David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov,
janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson    attorneyrmj@gmail.com

Bruce R Hegyi – AUSA    bruce.hegyi@usdoj.gov

**2:11–cr–00077–PPS–APR–1 Notice has been delivered by U.S. Mail or other means to:**

```
MIME-Version:1.0
From:CMECFinnd@innd.uscourts.gov
To:CMECFinnd@localhost.localdomain
Bcc:
--Case Participants: Bryan M Truitt (bryan@tblawyers.com, sherrie@tblawyers.com), David J
Nozick - AUSA (david.nozick@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov,
susan.devries@usdoj.gov, usainn.ecfcivil@usdoj.gov), Kurt R Earnst (kre@braje-nelson.com),
Paul Jeffrey Schlesinger (pjeffslaw@aol.com), Pablo DeCastro
(pdecastro@rascia-decastro.com, ysierra@rascia-decastro.com), Sheldon B Nagelberg
(sbnagelberglaw@att.net), Thomas W Vanes (b.lynneadams@yahoo.com,
tom.vanes@sbcglobal.net), Richard C Wolter (b.lynneadams@yahoo.com), John T Theis
(theislaw@aol.com), Adam Tavitas (adtavitas@aol.com, b.lynneadams@yahoo.com), Dean R
Lanter - AUSA (dean.lanter@usdoj.gov, janet.eisenmann@usdoj.gov,
usainn.ecfcivil@usdoj.gov), John E Martin - FCD (john_martin@fd.org), Scott L King
(dwilliams@scottkinggroup.com, sking@scottkinggroup.com), Mark A Psimos
(psimoslaw@airbaud.net), Ihor Alexander Woloshansky (ihorlawyer@hotmail.com), Richard M
Davis (jdavis@hwelaw.com, rdavis@hwelaw.com, rgould@hwelaw.com), James N Thiros
(jim@thiros.com, lynn@thiros.com), Robert L Rascia (rrascia@rascia-decastro.com,
ysierra@rascia-decastro.com), Gojko Kasich (gkasich@crownlaw.com, gkasich@gmail.com),
Arlington J Foley (arlingtonfoley@att.net), Roxanne Mendez Johnson
(attorneyrmj@gmail.com), Visvaldis P Kupsis (vpkupsis@hotmail.com), Stephen Edward Scheele
(pkd@gk4law.com, ses@gk4law.com), Jack Friedlander (jack@jackfriedlander.com,
office@jackfriedlander.com), Bruce R Hegyi - AUSA (bruce.hegyi@usdoj.gov), R Brian
Woodward (carolb@wbbklaw.com, rbwoodward@wbbklaw.com), John Maksimovich
(criminallaw@johnmaksimovich.com), David E Vandercoy (david.vandercoy@valpo.edu),
Magistrate Judge Andrew P Rodovich (rodovich_chambers@innd.uscourts.gov,
ruth_nagy@innd.uscourts.gov), Chief Judge Philip P Simon
(denise_woodside@innd.uscourts.gov, jacob_hamann@innd.uscourts.gov,
lauren_schwartz@innd.uscourts.gov, mira_serrill-robins@innd.uscourts.gov,
noel_collins@innd.uscourts.gov, philip_simon@innd.uscourts.gov)
--Non Case Participants: Matthew D Soliday (office@matthewsolidaylaw.com)
--No Notice Sent:

Message-Id:2674334@innd.uscourts.gov
Subject:Activity in Case 2:11-cr-00077-PPS-APR United States of America v. Briseno et al
Order on Motion to Seal Document
```
Content–Type: text/html

## U.S. District Court Northern District of Indiana [LIVE]

## USDC Northern Indiana

## Notice of Electronic Filing

The following transaction was entered on 12/19/2014 at 12:49 PM EST and filed on 12/19/2014

| | |
|---|---|
| **Case Name:** | United States of America v. Briseno et al |
| **Case Number:** | 2:11–cr–00077–PPS–APR |
| **Filer:** | |
| **Document Number:** | 1251(No document attached) |

**Docket Text:**

**ORDER GRANTING [1231] Motion to Seal Document sealing Document [1232] as to Juan Briseno (1). (Text entry only, no pdf is attached). Approved by Chief Judge Philip P. Simon on 12/19/2014. (nac)**

**2:11–cr–00077–PPS–APR–1 Notice has been electronically mailed to:**

David E Vandercoy    david.vandercoy@valpo.edu

Richard M Davis    rdavis@hwelaw.com, jdavis@hwelaw.com, rgould@hwelaw.com

Arlington J Foley    arlingtonfoley@att.net

Mark A Psimos    psimoslaw@airbaud.net

Gojko Kasich    gkasich@crownlaw.com, gkasich@gmail.com

Scott L King    sking@scottkinggroup.com, dwilliams@scottkinggroup.com

James N Thiros    jim@thiros.com, lynn@thiros.com

Thomas W Vanes    tom.vanes@sbcglobal.net, b.lynneadams@yahoo.com

Ihor Alexander Woloshansky    ihorlawyer@hotmail.com

R Brian Woodward    rbwoodward@wbbklaw.com, carolb@wbbklaw.com

John Maksimovich    criminallaw@johnmaksimovich.com

Visvaldis P Kupsis    vpkupsis@hotmail.com

Sheldon B Nagelberg    sbnagelberglaw@att.net

John E Martin – FCD    john_martin@fd.org

Adam Tavitas    Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander    jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele    ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst    kre@braje–nelson.com

Bryan M Truitt    bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis    theislaw@aol.com

Robert L Rascia    rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger    pjeffslaw@aol.com

Pablo DeCastro    pdecastro@rascia–decastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA    dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov,
janet.eisenmann@usdoj.gov

David J Nozick – AUSA    David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov,
janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

2485

Roxanne Mendez Johnson    attorneyrmj@gmail.com

Bruce R Hegyi – AUSA    bruce.hegyi@usdoj.gov

**2:11–cr–00077–PPS–APR–1 Notice has been delivered by U.S. Mail or other means to:**

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

UNITED STATES OF AMERICA,                    )
                                             )
        Plaintiff,                           )
                                             )
    v.                                       )          NO. 2:11CR77 PPS
                                             )
JUAN BRISENO,                                )
                                             )
        Defendant.                           )

## ORDER

The Clerk's notice to potential jurors in this case directed that they complete the

comprehensive questionnaire no later than October 31, 2014.  Nearly 450 questionnaires

have been submitted either electronically or in hard copy.  The parties have reviewed

these and filed lists of proposed strikes for cause, a subject which is dealt with in a

separate order today.  Now the Clerk advises that he has received a completed paper

questionnaire from an additional venireman (whose initials are J.L.), obviously well

past the deadline.

I have reviewed the recently received questionnaire and will direct the Clerk to

provide it to counsel.  I am inclined to strike J.L. for cause in view of the prepaid travel

plans he reports in his answer to Question 103.  I will hear from the parties with their

agreement or objection no later than December 31, 2014.

The October 31 deadline has long since past and the parties' jury selection

process based on the timely received questionnaires has already been underway for

months (given that they were able to review questionnaires as they came in, even before

2487

the deadline). Rather than complicate matters with any additional questionnaires that straggle in at this late date, I intend to declare the questionnaire completion process closed and direct the Clerk to disregard any additional questionnaires that are received hereafter. On this too the parties can express their agreement or voice any objection no later than December 31, 2014.

ACCORDINGLY:

The Clerk shall provide to counsel the completed juror questionnaire recently received from venireman J.L.

No later than December 31, 2014, the parties may file memoranda expressing their agreement or any objection to striking venireman J.L. for cause, and to declaring the questionnaire completion process closed and disregarding any additional untimely questionnaires.

SO ORDERED.

ENTERED: December 23, 2014.

/s/ Philip P. Simon
PHILIP P. SIMON, CHIEF JUDGE
UNITED STATES DISTRICT COURT

2

2488

```
MIME-Version:1.0
From:CMECFinnd@innd.uscourts.gov
To:CMECFinnd@localhost.localdomain
Bcc:
--Case Participants: Bryan M Truitt (bryan@tblawyers.com, sherrie@tblawyers.com), David J
Nozick - AUSA (david.nozick@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov,
susan.devries@usdoj.gov, usainn.ecfcivil@usdoj.gov), Kurt R Earnst (kre@braje-nelson.com),
Paul Jeffrey Schlesinger (pjeffslaw@aol.com), Pablo DeCastro
(pdecastro@rascia-decastro.com, ysierra@rascia-decastro.com), Sheldon B Nagelberg
(sbnagelberglaw@att.net), Thomas W Vanes (b.lynneadams@yahoo.com,
tom.vanes@sbcglobal.net), Richard C Wolter (b.lynneadams@yahoo.com), John T Theis
(theislaw@aol.com), Adam Tavitas (adtavitas@aol.com, b.lynneadams@yahoo.com), Dean R
Lanter - AUSA (dean.lanter@usdoj.gov, janet.eisenmann@usdoj.gov,
usainn.ecfcivil@usdoj.gov), John E Martin - FCD (john_martin@fd.org), Scott L King
(dwilliams@scottkinggroup.com, sking@scottkinggroup.com), Mark A Psimos
(psimoslaw@airbaud.net), Ihor Alexander Woloshansky (ihorlawyer@hotmail.com), Richard M
Davis (jdavis@hwelaw.com, rdavis@hwelaw.com, rgould@hwelaw.com), James N Thiros
(jim@thiros.com, lynn@thiros.com), Robert L Rascia (rrascia@rascia-decastro.com,
ysierra@rascia-decastro.com), Gojko Kasich (gkasich@crownlaw.com, gkasich@gmail.com),
Arlington J Foley (arlingtonfoley@att.net), Roxanne Mendez Johnson
(attorneyrmj@gmail.com), Visvaldis P Kupsis (vpkupsis@hotmail.com), Stephen Edward Scheele
(pkd@gk4law.com, ses@gk4law.com), Jack Friedlander (jack@jackfriedlander.com,
office@jackfriedlander.com), Bruce R Hegyi - AUSA (bruce.hegyi@usdoj.gov), R Brian
Woodward (carolb@wbbklaw.com, rbwoodward@wbbklaw.com), John Maksimovich
(criminallaw@johnmaksimovich.com), David E Vandercoy (david.vandercoy@valpo.edu),
Magistrate Judge Andrew P Rodovich (rodovich_chambers@innd.uscourts.gov,
ruth_nagy@innd.uscourts.gov), Chief Judge Philip P Simon
(denise_woodside@innd.uscourts.gov, jacob_hamann@innd.uscourts.gov,
lauren_schwartz@innd.uscourts.gov, mira_serrill-robins@innd.uscourts.gov,
noel_collins@innd.uscourts.gov, philip_simon@innd.uscourts.gov)
--Non Case Participants: Matthew D Soliday (office@matthewsolidaylaw.com),
Probation/Pretrial Services (innpml_cmecf@innd.uscourts.gov), U S Marshal
(inn.docket-fw@usdoj.gov, inn.docket-sb@usdoj.gov, usms.27@usdoj.gov)
--No Notice Sent:

Message-Id:2676972@innd.uscourts.gov
Subject:Activity in Case 2:11-cr-00077-PPS-APR United States of America v. Briseno et al
Hearing
Content-Type: text/html
```

### U.S. District Court Northern District of Indiana [LIVE]

### USDC Northern Indiana

## Notice of Electronic Filing

The following transaction was entered on 12/23/2014 at 4:38 PM EST and filed on 12/18/2014

| | |
|---|---|
| **Case Name:** | United States of America v. Briseno et al |
| **Case Number:** | 2:11-cr-00077-PPS-APR |
| **Filer:** | |
| **Document Number:** | 1261(No document attached) |

**Docket Text:**

**HEARING on Parties Challenges for Cause to the Members of the Veneer (based on questionnaires) as to Juan Briseno held on 12/18/2014 before Chief Judge Philip P Simon. Govt present by AUSAs David Nozick and Bruce Hegyi. The dft appears in person and by counsel Arlington Foley and John Maksimovich. Parties discuss Court's proposed dialogue**

**for general voir dire (which also includes proposed questioning of individual jurors). Court and parties discuss individual jurors, the Court orders specific jurors stricken for cause after discussion/argument from counsel. The Clerk shall notify the stricken jurors not to appear. A master list will be created with the remaining potential jurors listed. This list will be randomized and each potential juror will be given a juror number that will remain with the potential juror thru out jury selection. The Court will issue an order on these matters addressed at this hearing. The dft reminds the Court of his request to move to local jail facility and of his request for his personal items. The Court addresses this matter with the dft. Defendant REMANDED to custody of US Marshal.(Court Reporter Stacy Drohosky.) (nac)**

**2:11−cr−00077−PPS−APR−1 Notice has been electronically mailed to:**

David E Vandercoy     david.vandercoy@valpo.edu

Richard M Davis     rdavis@hwelaw.com, jdavis@hwelaw.com, rgould@hwelaw.com

Arlington J Foley     arlingtonfoley@att.net

Mark A Psimos     psimoslaw@airbaud.net

Gojko Kasich     gkasich@crownlaw.com, gkasich@gmail.com

Scott L King     sking@scottkinggroup.com, dwilliams@scottkinggroup.com

James N Thiros     jim@thiros.com, lynn@thiros.com

Thomas W Vanes     tom.vanes@sbcglobal.net, b.lynneadams@yahoo.com

Ihor Alexander Woloshansky     ihorlawyer@hotmail.com

R Brian Woodward     rbwoodward@wbbklaw.com, carolb@wbbklaw.com

John Maksimovich     criminallaw@johnmaksimovich.com

Visvaldis P Kupsis     vpkupsis@hotmail.com

Sheldon B Nagelberg     sbnagelberglaw@att.net

John E Martin − FCD     john_martin@fd.org

Adam Tavitas     Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander     jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele     ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst     kre@braje−nelson.com

Bryan M Truitt     bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis     theislaw@aol.com

Robert L Rascia    rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger    pjeffslaw@aol.com

Pablo DeCastro    pdecastro@rascia–decastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA    dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov,
janet.eisenmann@usdoj.gov

David J Nozick – AUSA    David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov,
janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson    attorneyrmj@gmail.com

Bruce R Hegyi – AUSA    bruce.hegyi@usdoj.gov

**2:11–cr–00077–PPS–APR–1 Notice has been delivered by U.S. Mail or other means to:**

```
MIME-Version:1.0
From:CMECFinnd@innd.uscourts.gov
To:CMECFinnd@localhost.localdomain
Bcc:
--Case Participants: Bryan M Truitt (bryan@tblawyers.com, sherrie@tblawyers.com), David J
Nozick - AUSA (david.nozick@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov,
susan.devries@usdoj.gov, usainn.ecfcivil@usdoj.gov), Kurt R Earnst (kre@braje-nelson.com),
Paul Jeffrey Schlesinger (pjeffslaw@aol.com), Pablo DeCastro
(pdecastro@rascia-decastro.com, ysierra@rascia-decastro.com), Sheldon B Nagelberg
(sbnagelberglaw@att.net), Thomas W Vanes (b.lynneadams@yahoo.com,
tom.vanes@sbcglobal.net), Richard C Wolter (b.lynneadams@yahoo.com), John T Theis
(theislaw@aol.com), Adam Tavitas (adtavitas@aol.com, b.lynneadams@yahoo.com), Dean R
Lanter - AUSA (dean.lanter@usdoj.gov, janet.eisenmann@usdoj.gov,
usainn.ecfcivil@usdoj.gov), John E Martin - FCD (john_martin@fd.org), Scott L King
(dwilliams@scottkinggroup.com, sking@scottkinggroup.com), Mark A Psimos
(psimoslaw@airbaud.net), Ihor Alexander Woloshansky (ihorlawyer@hotmail.com), Richard M
Davis (jdavis@hwelaw.com, rdavis@hwelaw.com, rgould@hwelaw.com), James N Thiros
(jim@thiros.com, lynn@thiros.com), Robert L Rascia (rrascia@rascia-decastro.com,
ysierra@rascia-decastro.com), Gojko Kasich (gkasich@crownlaw.com, gkasich@gmail.com),
Arlington J Foley (arlingtonfoley@att.net), Roxanne Mendez Johnson
(attorneyrmj@gmail.com), Visvaldis P Kupsis (vpkupsis@hotmail.com), Stephen Edward Scheele
(pkd@gk4law.com, ses@gk4law.com), Jack Friedlander (jack@jackfriedlander.com,
office@jackfriedlander.com), Bruce R Hegyi - AUSA (bruce.hegyi@usdoj.gov), R Brian
Woodward (carolb@wbbklaw.com, rbwoodward@wbbklaw.com), John Maksimovich
(criminallaw@johnmaksimovich.com), David E Vandercoy (david.vandercoy@valpo.edu),
Magistrate Judge Andrew P Rodovich (rodovich_chambers@innd.uscourts.gov,
ruth_nagy@innd.uscourts.gov), Chief Judge Philip P Simon
(denise_woodside@innd.uscourts.gov, jacob_hamann@innd.uscourts.gov,
lauren_schwartz@innd.uscourts.gov, mira_serrill-robins@innd.uscourts.gov,
noel_collins@innd.uscourts.gov, philip_simon@innd.uscourts.gov)
--Non Case Participants: Matthew D Soliday (office@matthewsolidaylaw.com)
--No Notice Sent:

Message-Id:2676974@innd.uscourts.gov
Subject:Activity in Case 2:11-cr-00077-PPS-APR United States of America v. Briseno et al
Order on Motion to Seal Document
```
Content−Type: text/html

### U.S. District Court Northern District of Indiana [LIVE]

### USDC Northern Indiana

## Notice of Electronic Filing

The following transaction was entered on 12/23/2014 at 4:40 PM EST and filed on 12/23/2014

| | |
|---|---|
| **Case Name:** | United States of America v. Briseno et al |
| **Case Number:** | 2:11−cr−00077−PPS−APR |
| **Filer:** | |
| **Document Number:** | 1262(No document attached) |

**Docket Text:**

**ORDER GRANTING [1249] Motion to Seal Document as to Juan Briseno (1). Approved by Chief Judge Philip P Simon on 12/23/2014. (Text entry only). (nac)**

**2:11−cr−00077−PPS−APR−1 Notice has been electronically mailed to:**

David E Vandercoy    david.vandercoy@valpo.edu

Richard M Davis    rdavis@hwelaw.com, jdavis@hwelaw.com, rgould@hwelaw.com

Arlington J Foley    arlingtonfoley@att.net

Mark A Psimos    psimoslaw@airbaud.net

Gojko Kasich    gkasich@crownlaw.com, gkasich@gmail.com

Scott L King    sking@scottkinggroup.com, dwilliams@scottkinggroup.com

James N Thiros    jim@thiros.com, lynn@thiros.com

Thomas W Vanes    tom.vanes@sbcglobal.net, b.lynneadams@yahoo.com

Ihor Alexander Woloshansky    ihorlawyer@hotmail.com

R Brian Woodward    rbwoodward@wbbklaw.com, carolb@wbbklaw.com

John Maksimovich    criminallaw@johnmaksimovich.com

Visvaldis P Kupsis    vpkupsis@hotmail.com

Sheldon B Nagelberg    sbnagelberglaw@att.net

John E Martin – FCD    john_martin@fd.org

Adam Tavitas    Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander    jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele    ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst    kre@braje–nelson.com

Bryan M Truitt    bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis    theislaw@aol.com

Robert L Rascia    rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger    pjeffslaw@aol.com

Pablo DeCastro    pdecastro@rascia–decastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA    dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov,
janet.eisenmann@usdoj.gov

David J Nozick – AUSA    David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov,
janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson     attorneyrmj@gmail.com

Bruce R Hegyi – AUSA     bruce.hegyi@usdoj.gov

**2:11–cr–00077–PPS–APR–1 Notice has been delivered by U.S. Mail or other means to:**

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

UNITED STATES OF AMERICA      )
                              )
            v.                )      2:11 CR 77 PPS
                              )
JUAN BRISENO                  )


**GOVERNMENT'S MOTION REGARDING POTENTIAL DEFENSE CONFLICT OF INTEREST DUE TO PREVIOUS REPRESENTATION OF A GOVERNMENT WITNESS**

Comes now the United States of America, by counsel, David Capp, United States Attorney for the Northern District of Indiana, through Assistant United States Attorney David J. Nozick, and hereby requests that this honorable court order defense counsel Arlington Foley to have no involvement in the cross-examination of government Witness A. In support, the government states as follows:

Juan Briseno is charged in Counts 27 and 28 of the Fourth Superseding Indictment with attempting to kill Victim 3 on February 20, 2009. It is the government's intention to call Witness A at trial, as he was an eyewitness to this attempted murder. Defense counsel Arlington Foley recently represented Witness A in a state court matter in Lake County, Indiana. Mr. Foley therefore has a potential conflict of interest pertaining to this witness.

The government proposes that this honorable court instruct the defendant that attorney John Maksimovich is to handle the cross-examination of Witness A. The government further requests that attorney Arlington Foley is ordered not to participate in the preparation of this cross-examination, and is not to communicate with Mr. Maksimovich in any way pertaining to defense strategy pertaining to Witness A.

The government is confident that Mr. Foley is fully aware of his ethical duties to Witness A. Nevertheless, the government requests that this honorable court instruct Mr. Foley not to disclose any attorney-client privileged information to Mr. Maksimovich pertaining to Witness A.

The government has discussed this motion with Mr. Foley, and he has no objection to proceeding in this fashion. The government has orally disclosed to Mr. Foley the identity of Witness A. For purposes of the record, the government is attaching Exhibit 1, under seal. This exhibit discloses the identity of Witness A.

Wherefore, based upon the reasons stated above, the government respectfully requests that this honorable court instruct the defendant to have attorney John Maksimovich handle the cross-examination of Witness A, and order Mr. Foley not to be involved in the preparation of the cross-examination and not to disclose any attorney-client privileged information pertaining to Witness A.

Respectfully submitted,

DAVID CAPP
UNITED STATES ATTORNEY


By:     /s/ David J. Nozick
        David J. Nozick
        Assistant United States Attorney
        5400 Federal Plaza, Suite 1500
        Hammond, Indiana 46320
        (219) 937-5500

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | NO. 2:11 CR 77 PPS |
| | ) | |
| JUAN BRISENO | ) | |

CERTIFICATE OF SERVICE

The undersigned hereby certifies that the Government's Motion Regarding Potential

Defense Conflict of Interest Due to Previous Representation of a Government Witness was

electronically filed with the Clerk of the Court using the CM/ECF system which sent notification

of said filing to the following individuals:

ARLINGTON J. FOLEY
JOHN MAKSIMOVICH
(Attorneys for defendant Juan Briseno)

By: /s/ Janet L. Eisenmann
Janet L. Eisenmann
U.S. Attorney's Office
5400 Federal Plaza, Suite 1500
Hammond, Indiana 46320
(219) 937-5500

2497

## UNITED STATES DISTRICT COURT
Northern District of Indiana
Hammond Division

| | |
|---|---|
| UNITED STATES OF AMERICA,    ) | |
|       ) | |
|      Plaintiff,      ) | |
| v.      ) | CASE NO: 2:11-cr-00077-PPS |
|       ) | |
| JUAN BRISENO, et al.,      ) | |
|       ) | |
|      Defendant.      ) | |

### MOTION FOR LEAVE TO WITHDRAW APPEARANCE

COMES NOW, Richard M. Davis, of Hoeppner Wagner & Evans LLP and requests leave of Court to withdraw as counsel of record for Defendant, Raymond Campos, and in support, states as follows:

1.      Undersigned counsel was appointed, pursuant to the Criminal Justice Act to represent Defendant Raymond Campos and previously entered his appearance on behalf of Defendant, Raymond Campos on September 4, 2014.  Undersigned counsel will be resigning from Hoeppner Wagner & Evans LLP effective January 31, 2015.

2.      Undersigned counsel will only be available on a very limited basis after January 6, 2015, due to the fact that he is having hip replacement surgery on January 7, 2015.

3.      This motion is made pursuant to and consistent with Rule 1.16(b)(7) of the Indiana Rules of Professional Conduct.

**WHEREFORE**, Attorney Richard M. Davis respectfully moves this Court for an Order granting his Motion for Leave to Withdraw his Appearance on behalf of the Defendant, Raymond Campos and for all other just and proper relief in the premises.

<div align="center">1</div>

Respectfully submitted,

**HOEPPNER WAGNER & EVANS LLP**


By:____/s/ Richard M. Davis_____
          Richard M. Davis, #4690-45

**HOEPPNER WAGNER & EVANS LLP**
103 E. Lincolnway
P. O. Box 2357
Valparaiso, IN  46384-2357
Telephone:  219-464-4961
Fax:          219-465-0603
Email: rdavis@hwelaw.com

2

2499

## CERTIFICATE OF SERVICE

I certify that on December 29, 2014, service of a true, correct and complete copy of the

foregoing **Motion for Leave to Withdraw Appearance** was made upon the following counsel

of record via the Court's CM/ECF system and/or by depositing same in the United States mail

properly addressed to them and with sufficient first-class postage pre-paid:

**See attached service list**

**HOEPPNER WAGNER & EVANS LLP**

By:     /s/ Richard M. Davis
        Richard M. Davis
        Attorney No. #4690-45

**HOEPPNER WAGNER & EVANS LLP**
103 E. Lincolnway
P. O. Box 2357
Valparaiso, IN  46384-2357
Telephone:  219-464-4961
Fax:           219-465-0603
Email: rdavis@hwelaw.com

3

SERVICE LIST

*USA v. Raymond Campos, Juan Briseno, Galo Benjamin Feliciano, Michael Anthony Castillo, Julian Guillermo Serna, David Almaraz, Joseph Rene Torres, Jason Medina, Edward Raye Serna, Anthony Baldazo, Salvador Chavez, Ace Cortez, Eddie Torres, Richard Reyes, Vincent Garza  (NOT IN ORDER)*

Case No. 2:11-cr-00077-PPS-APR-17

RAYMOND CAMPOS' fiancée:  Rae Martinez 219-256-0894

Catherine A Lake
Law Offices of Catherine Lake
625 North Main Street
Crown Point, IN 46407
219-661-0800
Fax: 219-661-0800
Email: attyclake@sbcglobal.net
TERMINATED: 08/29/2014 (former atty for client, Raymond Campos)
CJA Appointment


Arlington J Foley
Attorney at Law
1942 North Main Street
Crown Point, IN 46307
219-661-1200
Fax: 219-661-1205
Email: arlingtonfoley@att.net
CJA Appointment for Defendant Juan Briseno

John Maksimovich
1946 North Main Street
Crown Point, IN 46307
219-663-1900
Fax: 219-663-1908
Email: criminallaw@johnmaksimovich.com
CJA Appointment for Defendant Juan Briseno

4

2501

Visvaldis P Kupsis
Law Offices of Visvaldis P Kupsis
334 W 806 N
Valparaiso, IN 46383
219-465-6240
Fax: 219-548-3368
Email: vpkupsis@hotmail.com
CJA Appointment for Defendant Galo Benjamin Feliciano

Scott L King
Scott King Group
Barrister Court
9211 Broadway
Merrillville, IN 46410
219-769-6300
Fax: 219-736-9991
Email: sking@scottkinggroup.com
Attorney for Michael Anthony Castillo  AND  Julian Guillermo Serna

Pablo DeCastro / Robert L Rascia
Rascia & DeCastro Ltd
650 N Dearborn Suite 700
Chicago, IL 60654
312-994-9100
Fax: 312-994-9105
Email: pdecastro@rascia-decastro.com
Email: rrascia@rascia-decastro.com
Attorneys for David Almaraz

David E Vandercoy
Valparaiso University Law Clinic
Heritage Hall
510 Freeman Street
Valparaiso, IN 46383
219-465-7865
Fax: 219-465-7897
Email: david.vandercoy@valpo.edu
CJA attorney for Joseph Rene Torres

James N Thiros
Cohen & Thiros PC
200 E 90th Drive
Merrillville, IN 46410-7089
219-769-1600 Ext 231

5

Fax: 219-738-3769
Email: jim@thiros.com   Attorney for Jason Medina AND Edward Raye Serna

Thomas W Vanes
9120 Connecticut Dr Suite G
Merrillville, IN 46410
219-769-2707
Fax: 219-791-4379
Email: tom.vanes@sbcglobal.net
CJA Appointment for Anthony Baldazo
Gojko Kasich
Kasich Law Offices
PO Box 428
Hebron, IN 46341
219-996-4648
Fax: 219-996-3044
Email: gkasich@crownlaw.com
CJA Appointment for Salvador Chavez

John T Theis
Law Office of John T Theis
190 South LaSalle Suite 520
Chicago, IL 60603
312-782-1121
Fax: 312-782-2852
Email: theislaw@aol.com
CJA Appointment for Ace Cortez

Kurt R Earnst
Braje Nelson & Janes LLP
126 E Fifth Street
PO Box 1006
Michigan City, IN 46361-8206
219-872-2100
Fax: 219-873-9163
Email: kre@braje-nelson.com
CJA Appointment for Eddie Torres

Jack Friedlander
Law Office of Jack Friedlander - Chi/IL
327 S Plymouth Court Suite 200
Chicago, IL 60604
312-427-7700
Fax: 312-427-3777

6

Email: jack@jackfriedlander.com
CJA Appointment for Richard Reyes

Ihor Alexander Woloshansky
Law Office of I Alexander Woloshansky
9219 Broadway
Merrillville, IN 46410
219-769-3333
Fax: 219-769-3875
Email: ihorlawyer@hotmail.com
CJA Appointment for Vincent Garza

Bruce R Hegyi - AUSA
1331 F Street NW
Third Floor
Washington, DC 20530
202-616-4582
Email: bruce.hegyi@usdoj.gov

David J Nozick - AUSA
US Attorney's Office - Ham/IN
5400 Federal Plaza Suite 1500
Hammond, IN 46320
219-937-5655
Fax: 219-852-2770
Email: David.Nozick@usdoj.gov

Dean R Lanter - AUSA
US Attorney's Office - Ham/IN
5400 Federal Plaza Suite 1500
Hammond, IN 46320
219-937-5500
Fax: 219-852-2700
Email: dean.lanter@usdoj.gov

**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| **Plaintiff** | |
| vs | |
| JUAN BRISENO, | |
| **Defendant** | **CAUSE NO: 2:11-CR-77** |

### AGREED MOTION TO STRIKE VENIREMAN J.L. FOR CAUSE

Comes now Defendant Juan Briseno, by counsel John Maksimovich and Arlington Foley, and comes now the government by Assistant U.S. Attorney Bruce Hegyi and Assistant U.S. Attorney David Nozick, and in response to the Court's order entered December 23, 2014 (DE 1259), state the following:

1. The parties agree that venireman J.L. should be struck for cause in view of the prepaid travel plans he reports in his answer to question 103.

2. The parties agree that the Court should declare the questionnaire completion process closed and direct the Clerk to disregard any additional questionnaires that are received hereafter.

**WHEREFORE**, the parties respectfully request the Court to enter an order reflecting the parties' agreement in this matter, and for all other just and proper relief.

**Respectfully submitted:**

/s/ *Arlington Foley*

Arlington Foley /#6905-45
Attorney For Defendant
1942 North Main Street
Crown Point, IN 46307
PH: 219.661.1200
FX: 219.661.1205

/s/ *John Maksimovich*

John Maksimovich /#9950-45
Attorney For Defendant
1946 North Main Street
Crown Point, IN 46307
PH: 219.663.1900
FX: 219.663.1908

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

UNITED STATES OF AMERICA,

           **Plaintiff**

**vs**

**JUAN BRISENO,**

           **Defendant**                       **CAUSE NO:   2:11-CR-77**

## CERTIFICATE OF SERVICE

I hereby certify that on December 30, 2014, I electronically filed:

### *AGREED MOTION TO STRIKE VENIREMAN J.L. FOR CAUSE*

with the Clerk of the Court using the CM/ECF system, which sent notification of such filing to the following:

|  |  |
|---|---|
| David J. Nozick | Bruce Hegyi |
| Assistant United States Attorney | Assistant United States Attorney |

and I hereby certify that I have mailed by United States Postal Service, the document to the following non-CM/ECF participants:

      N/A

                By:    */s/ John Maksimovich*

                    John Maksimovich /#9950-45
                    Attorney For Defendant
                    1946 North Main Street
                    Crown Point, IN 46307
                    PH: 219.663.1900
                    FX: 219.663.1908
                    E-Mail: criminallaw@johnmaksimovich.com

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

|                                |     |                    |
| ------------------------------ | --- | ------------------ |
| UNITED STATES OF AMERICA       | )   |                    |
|                                | )   |                    |
| v.                             | )   | 2:11-cr-00077-PPS  |
|                                | )   |                    |
| JUAN BRISEÑO                   | )   |                    |

## OPINION AND ORDER

The government filed a motion *in limine* seeking to admit a hearsay statement at trial under the excited utterance exception to the rule against hearsay. (Docket Entry 1222.) Voir dire is set to begin on January 12, 2015, with the guilt phase of the capital trial to begin once the jury is selected. Juan Briseño is charged with committing six homicides in aid of the Imperial Gangsters racketeering enterprise. The 2010 murder of Miguel Colon is one of the six homicides.

The government's motion explains that the night of the murder Briseño and alleged fellow gang members heard that Colon, a rival gang member, was at a party. Briseño and three associates drove to the area of the party to wait for Colon. Colon eventually came out, walked to his car, and drove back to the area of the party to pick up his friend Corey Walton. The driver of the car carrying Briseño recognized Colon and drove up next to Colon's car, and Briseño began firing. It was during this first round of shooting, done by Briseño, that the government alleges Colon was fatally wounded. After that, Colon and someone else shot back at the car carrying Briseño, and then another of the Briseño car's occupants joined Briseño in shooting.

2508

The government explains that "Subject 40 " will testify he was at the party, and ran out "almost immediately" after Colon was shot, where he encountered Colon's friend Corey Walton. Walton was holding the mortally wounded Colon. Subject 40 will testify that he asked Walton what happened, and Walton, in an excited and emotional state, told Subject 40 that "Tito" (Juan Briseño ) had shot Colon. Subject 40's testimony repeating Walton's statement would be hearsay.

Hearsay is an out of court statement offered in evidence to prove the truth of the matter asserted. Fed. R. Evid. 801. Federal Rule of Evidence 802 is the Rule Against Hearsay, and it states that hearsay is inadmissible unless a specific exclusion or exception applies by statute or rule. An exception to the rule is made for an excited utterance, a "statement relating to a startling event or condition, made while the declarant was under the stress of excitement that it caused." Fed. R. Evid. 803(2). With respect to timing, the statement need not be made contemporaneous with the startling event, but must be made while the speaker feels the excitement caused by the event. The idea "is that 'circumstances may produce a condition of excitement which temporarily stills the capacity of reflection and produces utterances free of conscious fabrication.'" *United States v. Boyce*, 742 F.3d 792, 798, 796 (7th Cir. 2014) (quoting Fed. R. Evid. 803 advisory committee's note).

2509

The Seventh Circuit has questioned the reasoning underlying the excited utterance exception (people can lie quickly, even in highly emotional states), but has nevertheless "recognized that despite these issues, the [spontaneity] exceptions[, of which excited utterance is one,] are well-established." *Boyce*, 742 F.3d at 796 (citing *Ferrier v. Duckworth*, 902 F.2d 545, 547-48 (7th Cir. 1990); supplementarily citing *White v. Illinois*, 502 U.S. 346, 356 n.8 (1992)).

So, accepting that a hearsay statement may be admitted as evidence if it was an excited utterance, I turn to the question of whether Walton's statement to Subject 40 qualifies as such an utterance. Walton was holding the gunshot, mortally wounded Colon when he made the statement. Subject 40 ran out of the party "almost immediately" after the gunfight, which means Walton was present even more immediately after the gunfight, if not during it (the government's filing isn't entirely clear – it leaves some work to inference, but I'm not taking those leaps here). Even if Walton wasn't in the middle of the flying bullets, he was there moments later holding a bleeding Colon. The shooting was the startling event, and the statement, in identifying the shooter, related to that event. This is exactly the kind of circumstance that case law indicates the excited utterance exception contemplates. *See, e.g.*, *Boyce*, 742 F.3d at 798 (holding 911 call "just" after domestic battery reporting battery and assailant's gun possession qualified as excited utterance); *Webb v. Lane*, 922 F.2d 390, 393-94 (7th Cir.

3

1991) (holding that shooting victim's statements (1) identifying his shooter in response to a police officer's question "Do you know who shot you?" while lying in an alley a few minutes after being shot, and (2) again identifying his shooter in response to an inquiry after being put in an ambulance, were properly admitted at trial as excited utterances). Subject 40 will therefore be permitted to testify about Walton's statement during trial, under the circumstances the government has lain out.

As a final note, I point out that the government's motion doesn't make clear the basis for Walton's knowledge. If it turns out Walton's accusation against Briseño was the repetition of a statement Colon (or someone else) made to him, then Walton's statement to Subject 40 was double hearsay, or hearsay within hearsay, and the government will need to establish a hearsay exception for each layer of hearsay. Fed. R. Evid. 805 ("Hearsay within hearsay is not excluded by the rule against hearsay if each part of the combined statements conforms with an exception to the rule."). Both layers may be excepted under the same basis, including excited utterance.

SO ORDERED.

ENTERED: December 30, 2014

/s/ Philip P. Simon
PHILIP P. SIMON, CHIEF JUDGE
UNITED STATES DISTRICT COURT

4

2511

MIME-Version:1.0
From:CMECFinnd@innd.uscourts.gov
To:CMECFinnd@localhost.localdomain
Bcc:
--Case Participants: Pablo DeCastro (pdecastro@rascia-decastro.com,
ysierra@rascia-decastro.com), Kurt R Earnst (kre@braje-nelson.com), Arlington J Foley
(arlingtonfoley@att.net), Jack Friedlander (jack@jackfriedlander.com,
office@jackfriedlander.com), Bruce R Hegyi - AUSA (bruce.hegyi@usdoj.gov), Roxanne Mendez
Johnson (attorneyrmj@gmail.com), Gojko Kasich (gkasich@crownlaw.com, gkasich@gmail.com),
Scott L King (dwilliams@scottkinggroup.com, sking@scottkinggroup.com), Visvaldis P Kupsis
(vpkupsis@hotmail.com), Dean R Lanter - AUSA (dean.lanter@usdoj.gov,
janet.eisenmann@usdoj.gov, usainn.ecfcivil@usdoj.gov), John Maksimovich
(criminallaw@johnmaksimovich.com), John E Martin - FCD (john_martin@fd.org), Sheldon B
Nagelberg (sbnagelberglaw@att.net), David J Nozick - AUSA (david.nozick@usdoj.gov,
janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov,
usainn.ecfcivil@usdoj.gov), Mark A Psimos (psimoslaw@airbaud.net), Robert L Rascia
(rrascia@rascia-decastro.com, ysierra@rascia-decastro.com), Stephen Edward Scheele
(pkd@gk4law.com, ses@gk4law.com), Paul Jeffrey Schlesinger (pjeffslaw@aol.com), Adam
Tavitas (adtavitas@aol.com, b.lynneadams@yahoo.com), John T Theis (theislaw@aol.com),
James N Thiros (jim@thiros.com, lynn@thiros.com), Bryan M Truitt (bryan@tblawyers.com,
sherrie@tblawyers.com), David E Vandercoy (david.vandercoy@valpo.edu), Thomas W Vanes
(b.lynneadams@yahoo.com, tom.vanes@sbcglobal.net), Ihor Alexander Woloshansky
(ihorlawyer@hotmail.com), Richard C Wolter (b.lynneadams@yahoo.com), R Brian Woodward
(carolb@wbbklaw.com, rbwoodward@wbbklaw.com), Magistrate Judge Andrew P Rodovich
(rodovich_chambers@innd.uscourts.gov, ruth_nagy@innd.uscourts.gov), Chief Judge Philip P
Simon (denise_woodside@innd.uscourts.gov, jacob_hamann@innd.uscourts.gov,
lauren_schwartz@innd.uscourts.gov, mira_serrill-robins@innd.uscourts.gov,
noel_collins@innd.uscourts.gov, philip_simon@innd.uscourts.gov)
--Non Case Participants: Matthew D Soliday (office@matthewsolidaylaw.com)
--No Notice Sent:

Message-Id:2679386@innd.uscourts.gov
Subject:Activity in Case 2:11-cr-00077-PPS-APR United States of America v. Briseno et al
Order on Motion to Seal
Content-Type: text/html

## U.S. District Court Northern District of Indiana [LIVE]

### USDC Northern Indiana

## Notice of Electronic Filing

The following transaction was entered on 12/30/2014 at 6:43 PM EST and filed on 12/30/2014

| | |
|---|---|
| **Case Name:** | United States of America v. Briseno et al |
| **Case Number:** | 2:11-cr-00077-PPS-APR |
| **Filer:** | |
| **Document Number:** | 1275(No document attached) |

**Docket Text:**
 **ORDER granting [1266] Motion to Seal as to Juan Briseno (1). (Text entry only, no pdf is attached). (nac)**

**2:11-cr-00077-PPS-APR-1 Notice has been electronically mailed to:**

David E Vandercoy     david.vandercoy@valpo.edu

Arlington J Foley     arlingtonfoley@att.net

Mark A Psimos     psimoslaw@airbaud.net

Gojko Kasich     gkasich@crownlaw.com, gkasich@gmail.com

Scott L King     sking@scottkinggroup.com, dwilliams@scottkinggroup.com

James N Thiros     jim@thiros.com, lynn@thiros.com

Thomas W Vanes     tom.vanes@sbcglobal.net, b.lynneadams@yahoo.com

Ihor Alexander Woloshansky     ihorlawyer@hotmail.com

R Brian Woodward     rbwoodward@wbbklaw.com, carolb@wbbklaw.com

John Maksimovich     criminallaw@johnmaksimovich.com

Visvaldis P Kupsis     vpkupsis@hotmail.com

Sheldon B Nagelberg     sbnagelberglaw@att.net

John E Martin – FCD     john_martin@fd.org

Adam Tavitas     Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander     jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele     ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst     kre@braje–nelson.com

Bryan M Truitt     bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis     theislaw@aol.com

Robert L Rascia     rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger     pjeffslaw@aol.com

Pablo DeCastro     pdecastro@rascia–decastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA     dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov,
janet.eisenmann@usdoj.gov

David J Nozick – AUSA     David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov,
janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson     attorneyrmj@gmail.com

Bruce R Hegyi – AUSA     bruce.hegyi@usdoj.gov

2513

**2:11–cr–00077–PPS–APR–1 Notice has been delivered by U.S. Mail or other means to:**

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

UNITED STATES OF AMERICA,     )
     )
    Plaintiff,     )
     )
v.     )    NO. 2:11CR77 PPS
     )
JUAN BRISENO,     )
     )
    Defendant.     )

<u>MEMORANDUM OPINION</u>

Trial in this matter is set to begin Monday, January 12, 2015. The prospective jurors have completed a lengthy juror questionnaire, and based on those questionnaires, several jurors were struck for cause after a lengthy hearing. Approximately 250 jurors remain in the venire. I have previously described my intention of bringing 24 prospective jurors to court each day for a communal general voir dire followed by individual voir dire chiefly for purposes of death qualification, during which counsel will be permitted to pose questions to individual venire members. The purpose of this Memorandum Opinion is to give the parties some guidance on what I believe to be the proper scope of that individual questioning.

Defendant Briseno's counsel long ago filed a "Motion to Permit Attorney Conducted Voir Dire, etc." [DE 611]. Given the structure I have outlined for the conduct of in-person voir dire, I obviously intend to allow counsel to pose appropriate questions to prospective jurors to explore their attitudes about the death penalty, and so to that extent, the motion will be granted.

Questions undoubtedly arise as to what questions are appropriate, and which are not. Briseno's motion contains a lengthy memorandum on principles applicable to the death penalty and the results of social science research concerning capital juries, much of which seems better directed to the formulation of jury instructions than to my decisions about what is permissible in jury selection. The motion isn't particularly specific about the sorts of questions counsel wish to ask. But both parties agree, and I am well aware, that the death qualification standard only warrants disqualification of a juror for cause whose views on the subject would "prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath." *Adams v. Texas*, 448 U.S. 38, 45 (1980). Likewise, there is agreement to the corollary principle that a prospective juror who would categorically *always* impose, or categorically *never* impose, a sentence of death on a defendant convicted of a capital crime is properly struck for cause as someone who could not give proper consideration to the role of aggravating or mitigating factors. *Morgan v. Illinois*, 504 U.S. 719, 728-29 (1992).

Without citing to any supportive authority, Briseno's motion suggests that counsel should be "permitted to probe juror attitudes about the significant facts in the specific case." [DE 611-1 at 11.] In his much more recently filed "Defendant's Proposed Jury-Selection Procedures and Memorandum of Law Regarding Capital Voir Dire," Briseno argues for such questioning by reliance on a number of Supreme Court cases requiring that capital juries be able to give meaningful consideration and effect to

2

2516

mitigating evidence.  [DE 1174 at 10-12, citing *Abdul-Kabir v. Quartermain*, 550 U.S. 233,

246 (2007); *Smith v. Texas*, 543 U.S. 37, 46 (2004);  *Tennard v. Dretke*, 542 U.S. 274, 284

(2004); *Penry v. Johnson*, 532 U.S. 782, 797 (2001) (*Penry II*); *Penry v. Lynaugh*, 492 U.S. 302,

319 (1989).]

But these cases are directed to issues of jury instruction, not jury selection, and in

my view don't support the sort of "stake-out" questions Briseno wants to pose and

which I find inappropriate.  In a case such as this, with so many alleged homicides,

attempted homicides and other expansive and grim allegations about drug trafficking

and the violent gang lifestyle, skillful counsel could potentially employ such questions

(if permitted) to make the seating of a petit jury nearly impossible.

Instead, I am persuaded by the reasoning of the Tenth Circuit in *United States v.*

*McVeigh*, where the court considered the appropriateness of questions asking a

potential juror in effect "how she would vote on the evidence presented at trial."  153

F.3d 1166, 1207 (10th Cir. 1998).  Questions that ask a juror's predisposition "predicated

on facts specific to the case at issue or upon speculation as to what facts may or may not

be proven at trial" are impermissible because they "improperly call[] for speculation

and [seek] a precommitment from the juror."  *Id*.  I will not allow those sorts of

questions in voir dire.

This is true with respect to aggravating and mitigating sentencing factors, just as

it is with presumed facts to be proved at the guilt phase of the trial. I agree with

*McVeigh* that death qualification is properly "designed to illuminate a juror's basic

beliefs 'regardless of the facts and circumstances of conviction'" and "not to allow defendants to pre-determine jurors' views of the appropriate punishment for the particular crime charged." *Id.* at 1208, quoting *Morgan*, 504 U.S. at 735. Therefore, I will not permit voir dire questions attempting to elicit a prospective juror's analysis of the persuasive value of particular aggravating or mitigating factors, and their likely impact on his or her vote for or against the death penalty.

The juror comprehensive questionnaire jointly devised by the parties posed 14 probing questions concerning capital punishment. As a result, before laying eyes on the venire members, counsel and I have significant information on each individual's attitudes about the death penalty and its potential imposition in this case. The in-person death qualification voir dire will provide an opportunity for us to clarify ambiguous or conflicting responses in an individual's questionnaire, and further explore what *McVeigh* calls "the jurors' core value system regarding imposition of the death penalty." 153 F.3d at 1208. Questions "regarding how a juror would vote during the penalty phase if presented with specific mitigating (or aggravating) factors" or other case-specific circumstances will not be allowed. *Id.* (parenthetical added).

One topic potentially appropriate for exploration on voir dire is identified in Briseno's motion. Briseno correctly observes that, as the Supreme Court has held, "a capital defendant accused of an interracial crime is entitled to have prospective jurors informed of the race of the victim and questioned on the issue of racial bias." *Turner v. Murray*, 476 U.S. 28, 36-37 (1986), cited at DE 611-1 at 6. I don't believe the record to-

date  discloses or establishes the race of each of the murder victims (or attempted

murder victims) involved in the charges against Briseno.  But if defense counsel wish to

make a record on the subject and invoke Briseno's entitlement to inquire into

prospective jurors' racial bias, they will be permitted to do so.

 "No hard-and-fast formula dictates the necessary depth or breadth of *voir*

*dire*...Jury selection, we have repeatedly emphasized, is 'particularly within the province

of the trial judge.'"  *Skilling v. United States*, 561 U.S. 358, 386 (2010).  "Impartiality is not

a technical conception.  It is a state of mind.  For the ascertainment of this mental

attitude of appropriate indifference, the Constitution lays down no particular tests and

procedure is not chained to any ancient and artificial formula."  *United States v. Wood*,

299 U.S. 123, 145-46 (1936).  "Deference to the trial court is appropriate because it is in a

position to assess the demeanor of the venire, and of the individuals who compose it, a

factor of critical importance in assessing the attitude and qualifications of potential

jurors."  *Uttecht v. Brown*, 551 U.S. 1, 9 (2007).

 In attempting to judge the impartiality of the venire members, I am mindful that

"unmistakable clarity" as to unacceptably biased views of a particular juror may not

always be expected and cannot be required.

> [D]eterminations of juror bias cannot be reduced to question-and-answer
> sessions which obtain results in the manner of a catechism.  What
> common sense should have realized experience has proved: many
> veniremen simply cannot be asked enough questions to reach the point
> where their bias has been made 'unmistakably clear'; these veniremen
> may not know how they will react when faced with imposing the death

sentence, or may be unable to articulate, or may wish to hide their true feelings.

*Wainwright v. Witt*, 469 U.S. 412,  424-25 (1985).  I will ultimately be guided by the applicable standards "imbued with a fair amount of common sense" and, based on "the questioning as a whole" rather than particular questions and answers, make strikes for cause where the record leaves me "with the definite impression that a prospective juror would be unable to faithfully and impartially apply the law."  *Id.* at 435, 426.

ACCORDINGLY:

Defendant Briseno's Motion to Permit Attorney Conducted Voir Dire Pursuant to Principles Required by *Furman v. Georgia* and Its Progeny [DE 611] is GRANTED IN PART and DENIED IN PART, as indicated in the memorandum of this opinion.

SO ORDERED.

ENTERED: January 5, 2015.

 /s/ Philip P. Simon
PHILIP P. SIMON, CHIEF JUDGE
UNITED STATES DISTRICT COURT

6

2520

```
MIME-Version:1.0
From:CMECFinnd@innd.uscourts.gov
To:CMECFinnd@localhost.localdomain
Bcc:
--Case Participants: Pablo DeCastro (pdecastro@rascia-decastro.com,
ysierra@rascia-decastro.com), Kurt R Earnst (kre@braje-nelson.com), Arlington J Foley
(arlingtonfoley@att.net), Jack Friedlander (jack@jackfriedlander.com,
office@jackfriedlander.com), Bruce R Hegyi - AUSA (bruce.hegyi@usdoj.gov), Roxanne Mendez
Johnson (attorneyrmj@gmail.com), Gojko Kasich (gkasich@crownlaw.com, gkasich@gmail.com),
Scott L King (dwilliams@scottkinggroup.com, sking@scottkinggroup.com), Visvaldis P Kupsis
(vpkupsis@hotmail.com), Dean R Lanter - AUSA (dean.lanter@usdoj.gov,
janet.eisenmann@usdoj.gov, usainn.ecfcivil@usdoj.gov), John Maksimovich
(criminallaw@johnmaksimovich.com), John E Martin - FCD (john_martin@fd.org), Sheldon B
Nagelberg (sbnagelberglaw@att.net), David J Nozick - AUSA (david.nozick@usdoj.gov,
janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov,
usainn.ecfcivil@usdoj.gov), Mark A Psimos (psimoslaw@airbaud.net), Robert L Rascia
(rrascia@rascia-decastro.com, ysierra@rascia-decastro.com), Stephen Edward Scheele
(pkd@gk4law.com, ses@gk4law.com), Paul Jeffrey Schlesinger (pjeffslaw@aol.com), Adam
Tavitas (adtavitas@aol.com, b.lynneadams@yahoo.com), John T Theis (theislaw@aol.com),
James N Thiros (jim@thiros.com, lynn@thiros.com), Bryan M Truitt (bryan@tblawyers.com,
sherrie@tblawyers.com), David E Vandercoy (david.vandercoy@valpo.edu), Thomas W Vanes
(b.lynneadams@yahoo.com, tom.vanes@sbcglobal.net), Ihor Alexander Woloshansky
(ihorlawyer@hotmail.com), Richard C Wolter (b.lynneadams@yahoo.com), R Brian Woodward
(carolb@wbbklaw.com, rbwoodward@wbbklaw.com), Magistrate Judge Andrew P Rodovich
(rodovich_chambers@innd.uscourts.gov, ruth_nagy@innd.uscourts.gov), Chief Judge Philip P
Simon (denise_woodside@innd.uscourts.gov, jacob_hamann@innd.uscourts.gov,
lauren_schwartz@innd.uscourts.gov, mira_serrill-robins@innd.uscourts.gov,
noel_collins@innd.uscourts.gov, philip_simon@innd.uscourts.gov)
--Non Case Participants: Matthew D Soliday (office@matthewsolidaylaw.com),
Probation/Pretrial Services (innpml_cmecf@innd.uscourts.gov), U S Marshal
(inn.docket-fw@usdoj.gov, inn.docket-sb@usdoj.gov, usms.27@usdoj.gov)
--No Notice Sent:

Message-Id:2682236@innd.uscourts.gov
Subject:Activity in Case 2:11-cr-00077-PPS-APR United States of America v. Briseno et al
Order on Motion for Miscellaneous Relief
Content-Type: text/html
```

## U.S. District Court Northern District of Indiana [LIVE]

## USDC Northern Indiana

### Notice of Electronic Filing

The following transaction was entered on 1/6/2015 at 2:57 PM EST and filed on 1/5/2015

| | |
|---|---|
| **Case Name:** | United States of America v. Briseno et al |
| **Case Number:** | 2:11-cr-00077-PPS-APR |
| **Filer:** | |
| **Document Number:** | 1286(No document attached) |

**Docket Text:**

 **ORDER GRANTING [1265] Motion Regarding Potential Conflict Of Interest as to Juan Briseno (1). This matter was discussed and ruled on by the court in the hearing held on 1/5/2015. Attorney Foley shall have no involvement with this particular witness during preparation for trial and trial. Co-counsel John Maksimovich will handle all matters that involve this witness. Ordered in open court on 1/5/2015 by Chief Judge Philip P Simon. (nac)**

**2:11−cr−00077−PPS−APR−1 Notice has been electronically mailed to:**

David E Vandercoy    david.vandercoy@valpo.edu

Arlington J Foley    arlingtonfoley@att.net

Mark A Psimos    psimoslaw@airbaud.net

Gojko Kasich    gkasich@crownlaw.com, gkasich@gmail.com

Scott L King    sking@scottkinggroup.com, dwilliams@scottkinggroup.com

James N Thiros    jim@thiros.com, lynn@thiros.com

Thomas W Vanes    tom.vanes@sbcglobal.net, b.lynneadams@yahoo.com

Ihor Alexander Woloshansky    ihorlawyer@hotmail.com

R Brian Woodward    rbwoodward@wbbklaw.com, carolb@wbbklaw.com

John Maksimovich    criminallaw@johnmaksimovich.com

Visvaldis P Kupsis    vpkupsis@hotmail.com

Sheldon B Nagelberg    sbnagelberglaw@att.net

John E Martin − FCD    john_martin@fd.org

Adam Tavitas    Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander    jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele    ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst    kre@braje−nelson.com

Bryan M Truitt    bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis    theislaw@aol.com

Robert L Rascia    rrascia@rascia−decastro.com, ysierra@rascia−decastro.com

Paul Jeffrey Schlesinger    pjeffslaw@aol.com

Pablo DeCastro    pdecastro@rascia−decastro.com, ysierra@rascia−decastro.com

Dean R Lanter − AUSA    dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick − AUSA    David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

2522

Roxanne Mendez Johnson    attorneyrmj@gmail.com

Bruce R Hegyi – AUSA    bruce.hegyi@usdoj.gov

**2:11–cr–00077–PPS–APR–1 Notice has been delivered by U.S. Mail or other means to:**

```
MIME-Version:1.0
From:CMECFinnd@innd.uscourts.gov
To:CMECFinnd@localhost.localdomain
Bcc:
--Case Participants: Bryan M Truitt (bryan@tblawyers.com, sherrie@tblawyers.com), David J
Nozick - AUSA (david.nozick@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov,
susan.devries@usdoj.gov, usainn.ecfcivil@usdoj.gov), Kurt R Earnst (kre@braje-nelson.com),
Paul Jeffrey Schlesinger (pjeffslaw@aol.com), Pablo DeCastro
(pdecastro@rascia-decastro.com, ysierra@rascia-decastro.com), Sheldon B Nagelberg
(sbnagelberglaw@att.net), Thomas W Vanes (b.lynneadams@yahoo.com,
tom.vanes@sbcglobal.net), Richard C Wolter (b.lynneadams@yahoo.com), John T Theis
(theislaw@aol.com), Adam Tavitas (adtavitas@aol.com, b.lynneadams@yahoo.com), Dean R
Lanter - AUSA (dean.lanter@usdoj.gov, janet.eisenmann@usdoj.gov,
usainn.ecfcivil@usdoj.gov), John E Martin - FCD (john_martin@fd.org), Scott L King
(dwilliams@scottkinggroup.com, sking@scottkinggroup.com), Mark A Psimos
(psimoslaw@airbaud.net), Ihor Alexander Woloshansky (ihorlawyer@hotmail.com), James N
Thiros (jim@thiros.com, lynn@thiros.com), Robert L Rascia (rrascia@rascia-decastro.com,
ysierra@rascia-decastro.com), Gojko Kasich (gkasich@crownlaw.com, gkasich@gmail.com),
Arlington J Foley (arlingtonfoley@att.net), Roxanne Mendez Johnson
(attorneyrmj@gmail.com), Visvaldis P Kupsis (vpkupsis@hotmail.com), Stephen Edward Scheele
(pkd@gk4law.com, ses@gk4law.com), Jack Friedlander (jack@jackfriedlander.com,
office@jackfriedlander.com), Bruce R Hegyi - AUSA (bruce.hegyi@usdoj.gov), R Brian
Woodward (carolb@wbbklaw.com, rbwoodward@wbbklaw.com), John Maksimovich
(criminallaw@johnmaksimovich.com), David E Vandercoy (david.vandercoy@valpo.edu),
Magistrate Judge Andrew P Rodovich (rodovich_chambers@innd.uscourts.gov,
ruth_nagy@innd.uscourts.gov), Chief Judge Philip P Simon
(denise_woodside@innd.uscourts.gov, jacob_hamann@innd.uscourts.gov,
lauren_schwartz@innd.uscourts.gov, mira_serrill-robins@innd.uscourts.gov,
noel_collins@innd.uscourts.gov, philip_simon@innd.uscourts.gov)
--Non Case Participants: Matthew D Soliday (office@matthewsolidaylaw.com)
--No Notice Sent:

Message-Id:2682628@innd.uscourts.gov
Subject:Activity in Case 2:11-cr-00077-PPS-APR United States of America v. Briseno et al
Order on Stipulation
Content-Type: text/html
```

## U.S. District Court Northern District of Indiana [LIVE]

### USDC Northern Indiana

## Notice of Electronic Filing

The following transaction was entered on 1/6/2015 at 5:57 PM EST and filed on 1/5/2015

| | |
|---|---|
| **Case Name:** | United States of America v. Briseno et al |
| **Case Number:** | 2:11-cr-00077-PPS-APR |
| **Filer:** | |
| **Document Number:** | 1287(No document attached) |

**Docket Text:**

**ORDER: GRANTING [1269] Stipulation as to Juan Briseno (1): to strike venireman JL for cause. Discussion by cnsl and court's order at the hearing held on 1/5/2015. Chief Judge Philip P. Simon. (nac)**

**2:11-cr-00077-PPS-APR-1 Notice has been electronically mailed to:**

David E Vandercoy    david.vandercoy@valpo.edu

Arlington J Foley    arlingtonfoley@att.net

Mark A Psimos    psimoslaw@airbaud.net

Gojko Kasich    gkasich@crownlaw.com, gkasich@gmail.com

Scott L King    sking@scottkinggroup.com, dwilliams@scottkinggroup.com

James N Thiros    jim@thiros.com, lynn@thiros.com

Thomas W Vanes    tom.vanes@sbcglobal.net, b.lynneadams@yahoo.com

Ihor Alexander Woloshansky    ihorlawyer@hotmail.com

R Brian Woodward    rbwoodward@wbbklaw.com, carolb@wbbklaw.com

John Maksimovich    criminallaw@johnmaksimovich.com

Visvaldis P Kupsis    vpkupsis@hotmail.com

Sheldon B Nagelberg    sbnagelberglaw@att.net

John E Martin – FCD    john_martin@fd.org

Adam Tavitas    Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander    jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele    ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst    kre@braje–nelson.com

Bryan M Truitt    bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis    theislaw@aol.com

Robert L Rascia    rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger    pjeffslaw@aol.com

Pablo DeCastro    pdecastro@rascia–decastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA    dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov,
janet.eisenmann@usdoj.gov

David J Nozick – AUSA    David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov,
janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson    attorneyrmj@gmail.com

Bruce R Hegyi – AUSA    bruce.hegyi@usdoj.gov

**2:11–cr–00077–PPS–APR–1 Notice has been delivered by U.S. Mail or other means to:**

```
MIME-Version:1.0
From:CMECFinnd@innd.uscourts.gov
To:CMECFinnd@localhost.localdomain
Bcc:
--Case Participants: Pablo DeCastro (pdecastro@rascia-decastro.com,
ysierra@rascia-decastro.com), Kurt R Earnst (kre@braje-nelson.com), Arlington J Foley
(arlingtonfoley@att.net), Jack Friedlander (jack@jackfriedlander.com,
office@jackfriedlander.com), Bruce R Hegyi - AUSA (bruce.hegyi@usdoj.gov), Roxanne Mendez
Johnson (attorneyrmj@gmail.com), Gojko Kasich (gkasich@crownlaw.com, gkasich@gmail.com),
Scott L King (dwilliams@scottkinggroup.com, sking@scottkinggroup.com), Visvaldis P Kupsis
(vpkupsis@hotmail.com), Dean R Lanter - AUSA (dean.lanter@usdoj.gov,
janet.eisenmann@usdoj.gov, usainn.ecfcivil@usdoj.gov), John Maksimovich
(criminallaw@johnmaksimovich.com), John E Martin - FCD (john_martin@fd.org), Sheldon B
Nagelberg (sbnagelberglaw@att.net), David J Nozick - AUSA (david.nozick@usdoj.gov,
janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov,
usainn.ecfcivil@usdoj.gov), Mark A Psimos (psimoslaw@airbaud.net), Robert L Rascia
(rrascia@rascia-decastro.com, ysierra@rascia-decastro.com), Stephen Edward Scheele
(pkd@gk4law.com, ses@gk4law.com), Paul Jeffrey Schlesinger (pjeffslaw@aol.com), Adam
Tavitas (adtavitas@aol.com, b.lynneadams@yahoo.com), John T Theis (theislaw@aol.com),
James N Thiros (jim@thiros.com, lynn@thiros.com), Bryan M Truitt (bryan@tblawyers.com,
sherrie@tblawyers.com), David E Vandercoy (david.vandercoy@valpo.edu), Thomas W Vanes
(b.lynneadams@yahoo.com, tom.vanes@sbcglobal.net), Ihor Alexander Woloshansky
(ihorlawyer@hotmail.com), Richard C Wolter (b.lynneadams@yahoo.com), R Brian Woodward
(carolb@wbbklaw.com, rbwoodward@wbbklaw.com), Magistrate Judge Andrew P Rodovich
(rodovich_chambers@innd.uscourts.gov, ruth_nagy@innd.uscourts.gov), Chief Judge Philip P
Simon (denise_woodside@innd.uscourts.gov, jacob_hamann@innd.uscourts.gov,
lauren_schwartz@innd.uscourts.gov, mira_serrill-robins@innd.uscourts.gov,
noel_collins@innd.uscourts.gov, philip_simon@innd.uscourts.gov)
--Non Case Participants: Matthew D Soliday (office@matthewsolidaylaw.com),
Probation/Pretrial Services (innpml_cmecf@innd.uscourts.gov), U S Marshal
(inn.docket-fw@usdoj.gov, inn.docket-sb@usdoj.gov, usms.27@usdoj.gov)
--No Notice Sent:

Message-Id:2682644@innd.uscourts.gov
Subject:Activity in Case 2:11-cr-00077-PPS-APR United States of America v. Briseno et al
Pretrial Conference - Final
Content-Type: text/html
```

## U.S. District Court Northern District of Indiana [LIVE]

## USDC Northern Indiana

## Notice of Electronic Filing

The following transaction was entered on 1/6/2015 at 6:42 PM EST and filed on 1/5/2015

| | |
|---|---|
| **Case Name:** | United States of America v. Briseno et al |
| **Case Number:** | 2:11-cr-00077-PPS-APR |
| **Filer:** | |
| **Document Number:** | 1289(No document attached) |

**Docket Text:**

**FINAL FINAL PRETRIAL CONFERENCE as to Juan Briseno held on 1/5/2015 before Chief Judge Philip P Simon. Govt present by David Nozick, AUSA. Dft appears in person and by cnsl Arlington Foley and John Maksimovich. Discussion had on the following issues with Court rulings as indicated. Motion [1265] regarding attorney conflict is GRANTED. Attorney John Maksimovich shall handle all pretrial and trial matters dealing with this witness. Atty Arlington Foley shall have no involvement with this witness matter. Motion [1269] Agreed**

**Motion to Strike is GRANTED. Discussion on five venire persons – parties are in agreement that the five venire persons shall be excused for cause in addition to the individual referred to in motion [1269] for a total of six excused for cause. Court ruling on previous issue discussed: the issue of the jurors knowing the consequence of decision – it will be referenced in court dialogue. Discussion on ExParte Motion [1281] – GRANTED. The Govt shall serve this motion upon the defense on 1/5/2015. If the defense chooses to pursue this matter the defense shall file a motion under seal and a hearing will be held. USA requests a protective order regarding the discovery provided to the defendant today. No objection from defense cnsl. The Court informs the dft that he may not pass out any of this information from these discovery documents to any persons either inside or outside the jail. The dft acknowledges to the court that he understands this court order. Discussion on races of victims. Scheduling: Monday, January 12, be present at 8:15 a.m. to begin selection process at 8:30 a.m. The Court's goal is to have the jury selected in 2 1/2 weeks. Work days shall be 8:30 – 5:00 with a projected trial of 4–6 weeks after jury selection concludes. Dft REMANDED to custody of US Marshal.(Court Reporter Stacy Drohosky.) (nac)**


**2:11–cr–00077–PPS–APR–1 Notice has been electronically mailed to:**

David E Vandercoy    david.vandercoy@valpo.edu

Arlington J Foley    arlingtonfoley@att.net

Mark A Psimos    psimoslaw@airbaud.net

Gojko Kasich    gkasich@crownlaw.com, gkasich@gmail.com

Scott L King    sking@scottkinggroup.com, dwilliams@scottkinggroup.com

James N Thiros    jim@thiros.com, lynn@thiros.com

Thomas W Vanes    tom.vanes@sbcglobal.net, b.lynneadams@yahoo.com

Ihor Alexander Woloshansky    ihorlawyer@hotmail.com

R Brian Woodward    rbwoodward@wbbklaw.com, carolb@wbbklaw.com

John Maksimovich    criminallaw@johnmaksimovich.com

Visvaldis P Kupsis    vpkupsis@hotmail.com

Sheldon B Nagelberg    sbnagelberglaw@att.net

John E Martin – FCD    john_martin@fd.org

Adam Tavitas    Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander    jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele    ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst    kre@braje–nelson.com

2528

Bryan M Truitt    bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis    theislaw@aol.com

Robert L Rascia    rrascia@rascia−decastro.com, ysierra@rascia−decastro.com

Paul Jeffrey Schlesinger    pjeffslaw@aol.com

Pablo DeCastro    pdecastro@rascia−decastro.com, ysierra@rascia−decastro.com

Dean R Lanter − AUSA    dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov,
janet.eisenmann@usdoj.gov

David J Nozick − AUSA    David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov,
janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson    attorneyrmj@gmail.com

Bruce R Hegyi − AUSA    bruce.hegyi@usdoj.gov

**2:11−cr−00077−PPS−APR−1 Notice has been delivered by U.S. Mail or other means to:**

2529

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
### HAMMOND DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| Plaintiff | ) | |
| | ) | |
| vs. | ) | CASE NUMBER: 2:11 CR 77 PPS |
| | ) | |
| JUAN BRISENO | ) | |
| Defendant | ) | |

## ORDER FOR JURY MEALS

**IT IS THE ORDER** of this Court that for security and publicity reasons the Jury in this case be committed to the custody of the U.S. Marshals, duly sworn, and furnished meals for each day of trial, including deliberation, as directed by the Court; and

**IT IS FURTHER ORDERED** that the Clerk of Court for the Northern District of Indiana be authorized to make payment for all food furnished said Jury and U.S. Marshals out of the appropriation provided therefore at the expense of the United States of America.

**ENTER:** January 7, 2015

S/Philip P. Simon
PHILIP P. SIMON, CHIEF JUDGE
UNITED STATES DISTRICT COURT

2530

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **VS.** | ) | **CASE NO. 2:11 CR 77** |
| | ) | |
| **JUAN BRISENO** | ) | |

<u>**PETITION FOR WRIT OF HABEAS CORPUS AD TESTIFICANDUM**</u>

Comes now the defendant, Juan Briseno, by and through his attorneys, Arlington

J. Foley and John Maksimovich, and represents the Court that the trial for the above-

captioned defendant is set for January 12, 2015 at 8:30 AM (CST), and that a prisoner,

Guillermo Briseno (BOP #11885-027), is necessary to be a witness therein on behalf of

the defendant, Juan Briseno.

**WHEREFORE:** Your petitioner, Juan Briseno, prays this Honorable Court grant

a Writ of Habeas Corpus ad Testificandum to be directed to:

| | |
|---|---|
| Warden | United States Marshal |
| Forrest City Low FCI | Northern District of Indiana |
| Forrest City, Arkansas | Hammond, Indiana |

commanding the surrender of the body of this prisoner to the United States Marshal for

the Northern District of Indiana, or one of his duly authorized deputies, or any authorized

Marshal, so that the Marshal, or deputy, may produce the body of the prisoner in the

United States District Court in the Federal Building, 5400 Federal Plaza, Hammond,

Indiana, during the period of the trial set for January 12, 2015, at 8:30 AM (CST), so that

the prisoner may be present and testify, the prisoner to be returned after the conclusion of

the trial by the United States Marshal, or one of his duly authorized deputies, to the said

institution.


RESPECTFULLY SUBMITTED BY:


/s/ Arlington J. Foley                           /s/ John Maksimovich

Arlington J. Foley, Atty. No. 6905-45       John Maksimovich, Atty. No. 9950-45

Attorney for Defendant                        Attorney for Defendant

1942 North Main Street                         1946 North Main Street

Crown Point, IN 46307                      Crown Point, IN 46307

Tel: (219) 661-1200                           Tel: (219) 663-1900

**CERTIFICATE OF SERVICE**

I certify that on the 8th day of January, 2015 service of a true and complete copy of the above and foregoing pleading or paper was made upon each party or attorney of record herein by the electronic case filing system (ECF).

By:      s/Arlington J. Foley
               Arlington J. Foley
               Attorney at Law

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| VS. | ) | CASE NO. 2:11 CR 77 |
| | ) | |
| JUAN BRISENO | ) | |

<u>**PETITION FOR WRIT OF HABEAS CORPUS AD TESTIFICANDUM**</u>

Comes now the defendant, Juan Briseno, by and through his attorneys, Arlington J. Foley and John Maksimovich, and represents the Court that the trial for the above-captioned defendant is set for January 12, 2015 at 8:30 AM (CST), and that a prisoner, Darmaile Sutton (BOP #10375-027), is necessary to be a witness therein on behalf of the defendant, Juan Briseno.

**WHEREFORE:** Your petitioner, Juan Briseno, prays this Honorable Court grant a Writ of Habeas Corpus ad Testificandum to be directed to:

| | |
|---|---|
| Warden | United States Marshal |
| USP Big Sandy | Northern District of Indiana |
| Inez, Kentucky | Hammond, Indiana |

commanding the surrender of the body of this prisoner to the United States Marshal for the Northern District of Indiana, or one of his duly authorized deputies, or any authorized Marshal, so that the Marshal, or deputy, may produce the body of the prisoner in the United States District Court in the Federal Building, 5400 Federal Plaza, Hammond, Indiana, during the period of the trial set for January 12, 2015, at 8:30 AM (CST), so that the prisoner may be present and testify, the prisoner to be returned after the conclusion of

the trial by the United States Marshal, or one of his duly authorized deputies, to the said

institution.


RESPECTFULLY SUBMITTED BY:


/s/ Arlington J. Foley                                    /s/ John Maksimovich
Arlington J. Foley, Atty. No. 6905-45          John Maksimovich, Atty. No. 9950-45
Attorney for Defendant                               Attorney for Defendant
1942 North Main Street                              1946 North Main Street
Crown Point, IN  46307                             Crown Point, IN  46307
Tel: (219) 661-1200                                   Tel:  (219) 663-1900

**CERTIFICATE OF SERVICE**

I certify that on the 8th day of January, 2015 service of a true and complete copy of the above and foregoing pleading or paper was made upon each party or attorney of record herein by the electronic case filing system (ECF).

By:      s/Arlington J. Foley
              Arlington J. Foley
              Attorney at Law

2534

```
MIME-Version:1.0
From:CMECFinnd@innd.uscourts.gov
To:CMECFinnd@localhost.localdomain
Bcc:
--Case Participants: Bryan M Truitt (bryan@tblawyers.com, sherrie@tblawyers.com), David J
Nozick - AUSA (david.nozick@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov,
susan.devries@usdoj.gov, usainn.ecfcivil@usdoj.gov), Kurt R Earnst (kre@braje-nelson.com),
Paul Jeffrey Schlesinger (pjeffslaw@aol.com), Pablo DeCastro
(pdecastro@rascia-decastro.com, ysierra@rascia-decastro.com), Sheldon B Nagelberg
(sbnagelberglaw@att.net), Thomas W Vanes (b.lynneadams@yahoo.com,
tom.vanes@sbcglobal.net), Richard C Wolter (b.lynneadams@yahoo.com), John T Theis
(theislaw@aol.com), Adam Tavitas (adtavitas@aol.com, b.lynneadams@yahoo.com), Dean R
Lanter - AUSA (dean.lanter@usdoj.gov, janet.eisenmann@usdoj.gov,
usainn.ecfcivil@usdoj.gov), John E Martin - FCD (john_martin@fd.org), Mark A Psimos
(psimoslaw@airbaud.net), Ihor Alexander Woloshansky (ihorlawyer@hotmail.com), James N
Thiros (jim@thiros.com, lynn@thiros.com), Robert L Rascia (rrascia@rascia-decastro.com,
ysierra@rascia-decastro.com), Gojko Kasich (gkasich@crownlaw.com, gkasich@gmail.com),
Arlington J Foley (arlingtonfoley@att.net), Roxanne Mendez Johnson
(attorneyrmj@gmail.com), Stephen Edward Scheele (pkd@gk4law.com, ses@gk4law.com), Jack
Friedlander (jack@jackfriedlander.com, office@jackfriedlander.com), Bruce R Hegyi - AUSA
(bruce.hegyi@usdoj.gov), R Brian Woodward (carolb@wbbklaw.com, rbwoodward@wbbklaw.com),
Scott L King (dwilliams@scottkinggroup.com, sking@scottkinggroup.com), Visvaldis P Kupsis
(vpkupsis@hotmail.com), John Maksimovich (criminallaw@johnmaksimovich.com), David E
Vandercoy (david.vandercoy@valpo.edu), Magistrate Judge Andrew P Rodovich
(rodovich_chambers@innd.uscourts.gov, ruth_nagy@innd.uscourts.gov), Chief Judge Philip P
Simon (denise_woodside@innd.uscourts.gov, jacob_hamann@innd.uscourts.gov,
lauren_schwartz@innd.uscourts.gov, mira_serrill-robins@innd.uscourts.gov,
noel_collins@innd.uscourts.gov, philip_simon@innd.uscourts.gov)
--Non Case Participants: Matthew D Soliday (office@matthewsolidaylaw.com)
--No Notice Sent:

Message-Id:2684339@innd.uscourts.gov
Subject:Activity in Case 2:11-cr-00077-PPS-APR United States of America v. Briseno et al
Order on Motion to Seal Document
Content-Type: text/html
```

## U.S. District Court Northern District of Indiana [LIVE]

## USDC Northern Indiana

## Notice of Electronic Filing

The following transaction was entered on 1/8/2015 at 4:30 PM EST and filed on 1/8/2015

| | |
|---|---|
| **Case Name:** | United States of America v. Briseno et al |
| **Case Number:** | 2:11−cr−00077−PPS−APR |
| **Filer:** | |
| **Document Number:** | 1300(No document attached) |

**Docket Text:**
 **ORDER GRANTING [1295] Motion to Seal Document as to Juan Briseno (1). (Text entry only, no pdf is attached). Approved by Chief Judge Philip P. Simon on 1/8/2015. (nac)**

**2:11−cr−00077−PPS−APR−1 Notice has been electronically mailed to:**

David E Vandercoy     david.vandercoy@valpo.edu

Arlington J Foley    arlingtonfoley@att.net

Mark A Psimos    psimoslaw@airbaud.net

Gojko Kasich    gkasich@crownlaw.com, gkasich@gmail.com

Scott L King    sking@scottkinggroup.com, dwilliams@scottkinggroup.com

James N Thiros    jim@thiros.com, lynn@thiros.com

Thomas W Vanes    tom.vanes@sbcglobal.net, b.lynneadams@yahoo.com

Ihor Alexander Woloshansky    ihorlawyer@hotmail.com

R Brian Woodward    rbwoodward@wbbklaw.com, carolb@wbbklaw.com

John Maksimovich    criminallaw@johnmaksimovich.com

Visvaldis P Kupsis    vpkupsis@hotmail.com

Sheldon B Nagelberg    sbnagelberglaw@att.net

John E Martin – FCD    john_martin@fd.org

Adam Tavitas    Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander    jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele    ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst    kre@braje–nelson.com

Bryan M Truitt    bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis    theislaw@aol.com

Robert L Rascia    rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger    pjeffslaw@aol.com

Pablo DeCastro    pdecastro@rascia–decastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA    dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA    David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson    attorneyrmj@gmail.com

Bruce R Hegyi – AUSA    bruce.hegyi@usdoj.gov

2536

**2:11–cr–00077–PPS–APR–1 Notice has been delivered by U.S. Mail or other means to:**

JAN 8 2015

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

UNITED STATES OF AMERICA, 2014 NOV -6 P 2: 34

              Plaintiff,

          v.

JUAN BRISENO,

              Defendant.

)
)
)
)
)
)
)
)
)

Case No. 2:11-cr-77

**WRIT OF HABEAS CORPUS AD TESTIFICANDUM**

TO:    Warden                          United States Marshal
         Westville Correctional Facility     Northern District of Indiana
         Westville, Indiana              Hammond, Indiana

The court being advised that prisoner Jose Lopez (DOC 248056) is a necessary witness in the trial of Juan Briseno in *United States v. Juan Briseno*, on January 12, 2015, at 8:30 a.m. (Central time), and that said prisoner is in the lawful custody and control of the Warden, Westville Correctional Facility, Westville, Indiana.

It is **ORDERED** and **ADJUDGED** that the Warden, Westville Correctional Facility, Westville, Indiana, be required and is hereby commanded to surrender the body of prisoner Jose Lopez (DOC 248056) to the United States Marshal for the Northern District of Indiana, or any duly authorized deputy, or any authorized Marshal, for the purpose of producing the body of said prisoner for trial in the federal courthouse, Hammond, Indiana, on January 12, 2015, at 8:30 a.m. (Central time), so that the prisoner may be present to testify in said trial, and thereafter to be returned to the institution by the United States Marshal, or one of his duly authorized deputies, under safe and secure conduct, and have you then and there this Writ.

       **SO ORDERED**

ENTERED this 5th day of November, 2014.

/s/ Andrew P. Rodovich
United States Magistrate Judge

RECEIVED

Executed this writ by receiving custody on _____ of the within named _____
DATE

FROM _____ and transferring the within named to _____

RETURNED

Executed this writ by returning custody on _I- 8 75_ of the within named _____
DATE

FROM _____ and transferring the within named to _____

United States Marshal

After speaking w/ AUSA Nozick a determination was made to bring inmate Jose Lopez in closer to the date of his testimony.

1-8-75

2

2539

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 2:11-cr-77 |
| | ) | |
| JUAN BRISENO, | ) | |
| | ) | |
| Defendant. | ) | |

**WRIT OF HABEAS CORPUS AD TESTIFICANDUM**

TO:　　　Warden　　　　　　　　　　　United States Marshal
　　　　　Forrest City Low FCI　　　　　Northern District of Indiana
　　　　　Forrest City, Arkansas　　　　Hammond, Indiana

The court being advised that prisoner Guillermo Briseno (BOP #11885-027) is a

necessary witness in the trial of Juan Briseno in *United States v. Juan Briseno*, on January 12,

2015, at 8:30 a.m. (Central time), and that said prisoner is in the lawful custody and control of

the Warden, Forrest City Low FCI, Forrest City, Arkansas.

It is **ORDERED** and **ADJUDGED** that the Warden, Forrest City Low FCI, Forrest City,

Arkansas, be required and is hereby commanded to surrender the body of prisoner Guillermo

Briseno (BOP #11885-027) to the United States Marshal for the Northern District of Indiana, or

any duly authorized deputy, or any authorized Marshal, for the purpose of producing the body of

said prisoner for trial in the federal courthouse, Hammond, Indiana, on February 9, 2015, at 8:30

a.m. (Central time), so that the prisoner may be present to testify in said trial, and thereafter to be

returned to the institution by the United States Marshal, or one of his duly authorized deputies,

under safe and secure conduct, and have you then and there this Writ.

**SO ORDERED**

ENTERED this 8th day of January, 2015.

/s/ Andrew P. Rodovich
United States Magistrate Judge

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

UNITED STATES OF AMERICA,     )
                              )
            Plaintiff,        )
                              )
      v.                      )        Case No. 2:11-cr-77
                              )
JUAN BRISENO,                 )
                              )
            Defendant.        )

### WRIT OF HABEAS CORPUS AD TESTIFICANDUM

TO:      Warden                        United States Marshal
         USP Big Sandy                 Northern District of Indiana
         Inez, Kentucky                Hammond, Indiana

        The court being advised that prisoner Darmaile Sutton (BOP #10375-027) is a necessary

witness in the trial of Juan Briseno in *United States v. Juan Briseno*, on January 12, 2015, at 8:30

a.m. (Central time), and that said prisoner is in the lawful custody and control of the Warden,

USP Big Sandy, Inez, Kentucky.

        It is **ORDERED** and **ADJUDGED** that the Warden, USP Big Sandy, Inez, Kentucky, be

required and is hereby commanded to surrender the body of prisoner Darmaile Sutton (BOP

#10375-027) to the United States Marshal for the Northern District of Indiana, or any duly

authorized deputy, or any authorized Marshal, for the purpose of producing the body of said

prisoner for trial in the federal courthouse, Hammond, Indiana, on February 9, 2015, at 8:30 a.m.

(Central time), so that the prisoner may be present to testify in said trial, and thereafter to be

returned to the institution by the United States Marshal, or one of his duly authorized deputies,

under safe and secure conduct, and have you then and there this Writ.

        **SO ORDERED**

2542

ENTERED this 8th day of January, 2015.

/s/ Andrew P. Rodovich
United States Magistrate Judge

2543

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| Plaintiff | ) | |
| | ) | |
| vs. | ) | CASE NUMBER: 2:11 CR 77 PPS |
| | ) | |
| JUAN BRISENO | ) | |
| Defendant | ) | |

## ORDER FOR POTENTIAL-JUROR MEALS

**IT IS THE ORDER** of this Court that for security and publicity reasons the venire of potential Jurors in this case be committed to the custody of the U.S. Marshals, duly sworn, and furnished meals for each day of jury selection during which potential Jurors are ordered to be present in Court, as directed by the Court; and

**IT IS FURTHER ORDERED** that the Clerk of Court for the Northern District of Indiana be authorized to make payment for all food furnished said potential Juror venirepersons and U.S. Marshals out of the appropriation provided therefore at the expense of the United States of America.

ENTER: January 12, 2015

S/Philip P. Simon
PHILIP P. SIMON, CHIEF JUDGE
UNITED STATES DISTRICT COURT

2544

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | 2:11-cr-00077-PPS |
| | ) | |
| JUAN BRISEÑO | ) | |

## OPINION AND ORDER

The government seeks the death penalty against defendant Juan Briseño having

filed a notice of intent to seek it pursuant to 28 U.S.C. § 3593(a) (the "NOI"), which was

later supplemented. (Docket Entries 503, 968, 995). Presently before me is the

defendant's Motion to Strike the Notice. (DE 1027.) I held a hearing on Briseño's motion,

and after carefully considering the briefing and arguments presented to me, I will grant

in part and deny in part the motion.

## BACKGROUND

The Fourth Superseding Indictment alleges that Briseño was a member of the

Almighty Imperial Gangsters (the "IGs"), an organized street gang. The gang is alleged

to have been a racketeering enterprise consisting of many members who conspired to

commit (and did in fact commit) various criminal acts in furtherance of the enterprise

including murders, attempted murders, robberies, batteries, and widespread drug

dealing. The IGs were active in Northwest Indiana from at least February 2002 through

the date of the Superseding Indictment (DE 652) in September 2013. They had various

gang identifiers, including hand gestures, gang words, symbols and colors. The

government alleges that the IGs were strongly hierarchical, and had various gang rules

the violation of which could be met with harsh disciplinary measures. One of the

alleged gang rules was obeying "shoot-on-sight" or "kill-on-sight" orders issued against

rival gang members and IGs suspected of cooperating with law enforcement.

The Indictment details the alleged manner and means of the conspiracy. It also

lists many overt acts that the government alleges were committed in furtherance of the

conspiracy. The government has also filed a series of documents explaining the

enterprise allegations against Briseño. (DE 732, 1066, 1198.) These filings list additional,

uncharged overt acts of which the government intends to offer evidence in support of

the criminal enterprise conspiracy charge.

In addition to the racketeering conspiracy charge, Briseño is charged with six

murders, seven attempted murders (*see* DE 1062 at 26), and trafficking cocaine and

marijuana. Each of the murders is charged under 18 U.S.C. § 1959(a)(1) — the federal

criminal code section that outlaws murder in aid of racketeering. (*See* DE 652).

Briseño was charged along with more than 20 co-conspirators, all but one of

whom have pleaded guilty; Richard Reyes went to trial early in 2014 and was convicted

of murder, among other charges. Briseño was the only defendant against whom the

2

government sought the death penalty. No other defendant came close to Briseño's alleged six murders and seven attempts.

The Grand Jury also made the special findings required for the government to seek the death penalty for each of the murders charged against Briseño under the Federal Death Penalty Act of 1994 ("FDPA"). Before the government can lawfully seek the death penalty in a given case, the grand jury must find that the defendant had at least one of four possible gateway, or threshold, intents in committing the acts that led to death, 18 U.S.C. § 3591(a)(2)(A)-(D), and that at least one statutory aggravating factor was present, 18 U.S.C. § 3592(c)(5), (9), (16). A finding of at least one gateway intent and one statutory aggravator is said to render a defendant "death eligible." The phrase "death eligible" is, in my opinion, a rather unfortunate one, and by using it I don't mean to be flippant. That's the nomenclature that has arisen in this area of law and, for that reason alone, I will use it as well. *See, e.g., Tuilaepa v. Cal.*, 512 U.S. 967, 971-72 (1994).

For each of the six murders charged against Briseño, the Indictment finds all four forms of intent and at least one statutory aggravating factor. The statutory aggravating factor common to all six murder charges is that the offense was committed after substantial planning and premeditation to cause the death of a person. 18 U.S.C. § 3592(c)(9). Briseño's motion challenges this aggravating factor, and seeks particulars about its application to each of the murder counts. Some of the murder charges list

3

additional aggravating factors: in the commission of the offense, or in escaping

apprehension for it, the defendant knowingly created a grave risk of death to one or

more people apart from the murder victim, 18 U.S.C. § 3592(c)(5); and the defendant

intentionally killed or attempted to kill more than one person in a single criminal

episode, 18 U.S.C. § 3592(c)(16). These other two statutory aggravators aren't challenged

in the current motion, so I won't address them in this Order.

Apart from the Indictment, before it can lawfully seek the death penalty, the

government must give notice to the defendant of all of the aggravating factors of which

the government intends to present evidence. 18 U.S.C. § 3593(a). The government does

this by filing an NOI. The NOI in this case lists all four possible gateway intents for each

of the six charged murders. The NOI also lists both the statutory aggravating factors for

each murder listed in the Indictment, and additional non-statutory aggravating factors.

The alleged non-statutory aggravating factors are the same for each of the six murders.

Here they are:

1.     Briseño is a continuing danger to the lives and safety of other and is likely
       to commit criminal acts of violence in the future as evidenced by:

       a.     A low potential for rehabilitation as demonstrated by
              repeated violent criminal acts;

       b.     A willingness to take human life and a lack of remorse for
              his acts of violence as demonstrated by statements he made
              following these acts;

4

      c.      His stated desire to impose a rule requiring fellow members of the IGs to shoot at rivals on sight;

2.      Briseño faces contemporaneous convictions for other criminal activity, including other murders and attempted murders;

3.      Briseño demonstrated an allegiance to and active membership in the IG street gang;

4.      Briseño caused injury, harm and loss to the victim and the victim's family and friends, as evidenced by the victim's personal characteristics and by the impact of the victim's death upon his family and friends.

Briseño challenges the non-statutory aggravators of victim impact and future dangerousness, as well as the lack of remorse sub-factor.

If, at trial, the jury finds Briseño guilty of a death-eligible charge then there must be a separate sentencing hearing, or penalty phase of trial. During the sentencing the jury hears evidence of mitigating factors and aggravating factors (both statutory and non-statutory) and determines whether the aggravating factors sufficiently outweigh the mitigating factors to justify a sentence of death. 18 U.S.C. § 3593. The FDPA offers some possible mitigating factors, but the list begins by saying that "the finder of fact shall consider any mitigating factor" and the last listed factor is called "other factors," so the defense has broad latitude with mitigators. 18 U.S.C. § 3592(a). The FDPA also lists 16 statutory aggravating factors, and says that the jury "may consider whether any other aggravating factor for which notice has been given exists." 18 U.S.C. § 3592(c). The FDPA doesn't list non-statutory factors (hence the name "non-statutory"), but it

5

references them, naming victim impact in particular: "The factors for which notice is provided under this subsection may include factors concerning the effect of the offense on the victim and the victim's family, and may include oral testimony, a victim impact statement that identifies the victim of the offense and the extent and scope of the injury and loss suffered by the victim and the victim's family, and any other relevant information." 18 U.S.C. § 3593(a).

## DISCUSSION

Briseño's motion attacks the death penalty generally, and also addresses the specific aggravating factors underlying the government's seeking of the death penalty in Briseño's case. Such motions are common practice in recent cases involving capital punishment, and the arguments propounded here aren't new. *See, e.g.*, *United States v. Williams*, No. 4:08-cr-00070, 2013 U.S. Dist. LEXIS 45323 (M.D. Pa. Mar. 29, 2013); *United States v. Runyon*, No. 4:08cr16-3, 2009 U.S. Dist. LEXIS 1770 (E.D. Va. Jan. 9, 2009). Briseño frames his argument in seven parts. At the risk of sounding reductive, arguments 1 through 5 and 7 challenge the mechanism and existence of capital punishment generally. These arguments have been considered in nearly every, if not every, federal capital case in recent decades. I won't reinvent the wheel here, although I'll briefly review each argument. Briseño bears the burden of proving that the FDPA is unconstitutional because the law was duly enacted by Congress and is therefore

6

presumed constitutional. *See United States v. Sampson*, 486 F.3d 13, 20 (1st Cir. 2007)

(citing *INS v. Chadha*, 462 U.S. 919, 944 (1983); *Lujan v. G & G Fire Sprinklers, Inc.*, 532

U.S. 189, 198 (2001)).

Part 6 of Briseño's brief requests that certain aggravating factors alleged in this

case be stricken, or that the government at least be required to particularize the

allegations underlying these factors. These factors, like the general arguments against

capital punishment, have been thoroughly litigated and addressed in judicial opinions,

and I will rely on the reasoning of those opinions in my discussion.

### General Challenges to Capital Punishment

Briseño's first argument is that the death penalty operates in an arbitrary,

capricious, irrational, and discriminatory manner. (DE 1027 at 32-68.) The argument is

that the death penalty is applied so arbitrarily that it can't be claimed that there is a

rational basis for applying it in the few cases in which the government seeks it – it is

compared to the randomness of being struck by lightning. Briseño attempts to connect

his argument to the Supreme Court's decision striking down Georgia's capital

punishment statute in effect in 1972. *See Furman v. Georgia*, 408 U.S. 238 (1972). Like

offenders are not treated alike, Briseño argues. He claims that it is pure chance whether

a defendant is subjected to a capital trial, and further chance whether the jury imposes a

capital sentence – part dumb luck, and part unconstitutional distinguishing factors like

the defendant's race, the victim's race and gender, and in what part of the country the crime was committed. Briseño cites to extensive statistics and case summaries to support his points.

This first argument has been made by other defendants and rejected at length by other courts. *See, e.g., McCleskey v. Kemp*, 481 U.S. 279, 306-07 (1987) (absent showing that death penalty operates arbitrarily and capriciously, defendant can't prove constitutional violation by showing similarly situated defendants did *not* receive death penalty); *United States v. Sampson*, 486 F.3d 13, 23-26 (1st Cir. 2007) (death penalty discretion must be directed so verdicts are reasoned and individualized; government process for seeking death penalty has numerous procedural safeguards; case summaries can't capture the factors unique to each case that lead to verdict; to prevail under Equal Protection Clause defendant must prove purposeful discriminatory in his own case); *United States v. Mitchell*, 502 F.3d 931, 981-83 (9th Cir. 2007) (no right to "inter-case proportionality review"; statistical data about disproportionate impact of death penalty is insufficient to prove unconstitutionality; rarity of federal executions doesn't render FDPA unconstitutional).

I'll only go on briefly to point out some of the flaws of the deployment of the first argument in this case. Anytime a decisionmaker has discretion, facially similar cases are going to turn out differently because every case is unique. The Supreme Court's concern

in *Furman* and since is not the existence of discretion, but of unguided discretion. As the brief overview of the FDPA above demonstrates, the federal death penalty is highly structured. The fact that the government is selective in seeking the death penalty and juries are even more careful in applying it isn't an argument against it. The defense's elevator pitch versions of the facts of various cases can't do justice to the unique facts and circumstances in each murder case that lead to the verdict, and can't prove that the death penalty is applied arbitrarily. Briseño stands accused of six murders, seven attempted murders, and various other crimes and acts of violence committed in connection with the activity of a street gang. This case is distinguishable from other murder cases, and Briseño is distinguishable from his co-defendants, so the fact that he is the only one facing a capital charge isn't proof of arbitrariness. Briseño hasn't met his burden of proving that the FDPA is unconstitutionally arbitrary and capricious. Additionally, several of his arguments don't actually apply to him or to this case. Indiana is not in the defense's regional "death belt." None of the alleged murder victims were women (statistically more likely to lead to capital punishment). The defense doesn't allege that juror bias based on interracial murder will be an issue based on the victims in *this* case.

*Second,* Briseño argues that the current federal death penalty statute, the Federal Death Penalty Act of 1994 ("FDPA"), was invalidated by *Ring v. Arizona*, 536 U.S. 584

9

2553

(2002). (DE 1027 at 68-95.) That is, under the FDPA a defendant isn't eligible for the death penalty unless the government proves beyond a reasonable doubt to the jury that the defendant acted with one of the four possible threshold intents and that at least one statutory aggravating factor applies. *See* 18 U.S.C. § 3591(a)(2), 3592, 3593(b) - (e). Therefore, Briseño argues, these factors increase the maximum possible sentence, and so must be brought before the grand jury and charged by indictment based on the reasoning in *Apprendi v. New Jersey*, 530 U.S. 466 (2000). The problem with this argument is that the government did precisely that in this case. But Briseño's rejoinder is that by doing so the government exceeded its authority under the FDPA. The FDPA states that the government must notify the defendant if it intends to seek the death penalty and, if so, what aggravating factors the government will try to prove. *See* 18 U.S.C. § 3593(a). But the FDPA is silent about the function of the grand jury with respect to aggravating factors. Briseño claims this invalidates the FDPA, and prosecutors simply deciding to present aggravating factors to the grand jury, or courts ordering them to, is an impermissible usurpation of the legislature's powers.

Courts have rejected the *Ring* argument and allowed the government's presentation of the death penalty gateway factors to the grand jury. *See United States v. Mikos*, 539 F.3d 706, 715-16 (7th Cir. 2008) ("*Ring* does not hold or imply that any part of the Federal Death Penalty Act is unconstitutional."); *United States v. Fell*, 531 F.3d 197,

10

237 (2d Cir. 2008); *United States v. Sampson*, 486 F.3d 13, 21-22 (1st Cir. 2007) (collecting

cases); *United States v. Mitchell*, 502 F.3d 931, 979 (9th Cir. 2007). The FDPA is not facially

unconstitutional because *Ring* doesn't say anything *contrary* to it. *United States v. Lecroy*,

441 F.3d 914, 921 (11th Cir. 2006) (collecting cases) ("The major flaw in [this] argument

is that nothing in the Act forbids, or is inconsistent with, prosecutors' taking the

additional step of including the statutory aggravating factors in the indictment and

submitting same to the grand jury."). *Ring* works a change in criminal procedure, which

is properly in the courts' bailiwick. *Sampson*, 486 F.3d at 21-22 (collecting cases). But

preparing the Indictment for the grand jury's review and approval is squarely within

the purview of the executive branch of government. Presenting aggravating factors to

the grand jury isn't something that requires legislation, it doesn't require a big shift or

creation of any new procedures or decisionmaking bodies, or even the drafting of new

and exotic written instruments. *Sampson*, 486 F.3d at 22-23.

    *Third,* Briseño argues that the special findings in the Superseding Indictment

underlying the capital charges should be stricken and the NOI dismissed because the

Indictment violates the Fifth Amendment. (DE 1027 at 95-107.) The argument is

basically that the grand jury didn't hear the full story when it voted on the capital

Indictment, and just saw the capital eligibility factors out of context, so couldn't fully

consider whether Briseño should be charged with capital offenses. The grand jury voted

<div align="center">11</div>

on the required intent and the statutory aggravating factors, but it wasn't told that these were threshold factors for a capital charge, and the grand jury wasn't informed of the non-statutory aggravators or the mitigating factors, which must also be weighed in determining whether a death sentence is justified.

This third argument, too, has been thoroughly considered by courts and has been found wanting. As established above in the address of the *Ring* argument, the grand jury must consider any factor that can increase the *maximum possible* sentence, not all of the factors the petit jury will consider in deciding the *actual sentence*. The grand jury considered the threshold factors for death penalty eligibility, and once the grand jury found that those were met, Briseño became eligible for the death penalty; that is the maximum possible sentence there is, so no other factors could increase the possible sentence, and no other factors need be included in the indictment. *United States v. Fell*, 531 F.3d 197, 236-38 (2d Cir. 2008) (collecting cases) ("Whether or not [the defendant] *should* be sentenced to death was a calculation made by the jury based on a variety of statutory and non-statutory considerations. Accordingly, the factors that [the defendant's] jury assessed when determining the permissibility of the death penalty in his case did not change the maximum sentence authorized under the statute. . . . [T]he government's failure to include the non-statutory aggravating factors in the indictment did not violate the Fifth Amendment."); *see also*, *United States v. Mitchell*, 502 F.3d 931,

12

979 (9th Cir. 2007); *United States v. Lecroy*, 441 F.3d 914, 922 (11th Cir. 2006).

("*[N]onstatutory* aggravating factors need *not* be included in the indictment.

Nonstatutory factors are considered only after a defendant has been rendered death-

eligible by a finding—from both the grand and petit juries—of the normal elements of

the crime (including *mens rea*) and at least one statutory aggravating factor. Non-

statutory factors do not operate to increase the potential punishment of a defendant,

thus potentially triggering the indictment requirements . . . ."; discussing like outcomes

in *Higgs v. United States*, 353 F.3d 281, 298-99 (4th Cir. 2003), and *United States v.*

*Bourgeois*, 423 F.3d 501 (5th Cir. 2005)). For the same reason, the grand jury doesn't need

to consider the mitigating factors or weigh the mitigators and aggravators. *See United*

*States v. Purkey*, 428 F.3d 738, 749-50 (8th Cir. 2005) ("[I]t makes no sense to speak of the

weighing process mandated by 18 U.S.C. § 3593(e) as an elemental fact for which a

grand jury must find probable cause.").

    *Fourth,* Briseño argues that the FDPA doesn't provide an adequately structured

approach to allow the jury to make a reasoned decision between execution and a

sentence of life imprisonment without the possibility of parole. (DE 1027 at 107-14.) The

upshot of this argument is that the FDPA's process for death penalty cases is so

complicated juries can't possibly understand and properly implement it. Briseño's brief

cites statistics from various articles and studies that purport to show that jurors wildly

13

misconstrue the instructions that they're given on key points in death penalty cases. But as was the issue with the defense's copious statistics on other points, statistics about other cases won't convince me that the jury in this case isn't going to be able to understand what I tell them. *See Marshall v. Lonberger*, 459 U.S. 422, 438 n.6 (1983) ("the 'crucial assumption' underlying the system of trial by jury 'is that juries will follow the instructions given them by the trial judge.'"(quoting *Parker v. Randolph*, 442 U.S. 62, 73 (1979))). Defense counsel will have a hand in preparing the jury instructions in this case, and can bring with them the knowledge gained from the studies they cite. *See, e.g.,* *United States v. Williams*, No. 4:08-cr-00070, 2013 U.S. Dist. LEXIS 45323, at *52-53 (M.D. Pa. Mar. 29, 2013). Beyond that, even if I were to believe that the statistics could prove a rule, I'm not convinced of the accuracy of the figures – the outcomes of a study depend heavily on the way questions are asked, when they're asked, who decides to participate, and a slew of other factors. I join the other courts that have rejected the argument that the FDPA is unconstitutional because it causes crippling juror confusion. *See, e.g.,* *Williams*, 2013 U.S. Dist. LEXIS 45323, at *52-53; *United States v. Runyon*, No. 4:08cr16-3, 2009 U.S. Dist. LEXIS 1770, at *4-5 (E.D. Va. Jan. 9, 2009); *United States v. Regan*, 228 F. Supp. 2d 742, 746-47 (E.D. Va. 2002).

I've been studying the FDPA for the past year in preparation for this case, counsel for this case have been working on it for even longer, and while I won't deny

14

we have our work cut out for us in helping the jury through the process, I'm confident we're up to it. Briseño's motion is useful going forward in flagging some of the issues that we'll need to be especially conscious of if the time comes to discuss and draft penalty phase jury instructions. These include the effect of non-unanimity among the jurors, different standards of proof and unanimity requirements for mitigators and aggravators, and the all-important concept that the penalty is a gestalt decision, a weighing of factors that is qualitative, not quantitative. The jurors will be instructed that they cannot arrive at their decision by simply adding up the factors on either side of the balancing.

*Fifth,* Briseño argues that the death penalty should be invalidated due to the risk of executing innocent people. (DE 1027 at 114-20.) It's not clear exactly which provisions of the Constitution the defense is invoking here, but it seems most like an argument that capital punishment violates Fifth Amendment substantive due process because innocent people will inevitably be executed. Other capital defendants have made a procedural due process argument that they are entitled to seek exoneration for as long as it takes, meaning until the end of their natural lifespan, because exoneration often takes decades. The two due process arguments fail for the same reasons.

To be sure, the prospect of an innocent person being executed is one of the most disturbing things that one could ever imagine. But Supreme Court opinions have

15

acknowledged that grim reality and neither Congress nor the Supreme Court has been swayed by that troubling possibility. I am foreclosed from blazing that trail, and so I adopt the reasoning of the other courts that have rejected this argument. *See, e.g.*, *United States v. Sampson*, 486 F.3d 13, 27-29 (1st Cir. 2007); *United States v. Mitchell*, 502 F.3d 931, 983 (9th Cir. 2007) ("The danger of executing the innocent is one the Supreme Court has long been aware of."); *United States v. Quinones*, 313 F.3d 49, 62-69 (2d Cir. 2002) ("*Herrera* [*v. Collins*, 506 U.S. 390 (1993)] prevents us from finding capital punishment unconstitutional based solely on a statistical or theoretical possibility that a defendant might be innocent."); *United States v. Williams*, No. 4:08-cr-00070, 2013 U.S. Dist. LEXIS 45323, at *53-57 (M.D. Pa. Mar. 29, 2013) (collecting cases). In sum, due process entitles a person to *process*, to full exercise of the prescribed legal remedies, but once these are exhausted he is not due any additional process. Due process vastly increases the likelihood of getting the right answer, but doesn't guarantee it, and due process isn't violated simply by the possibility of a wrong answer.

*Finally*, Briseño's last argument against the death penalty generally is that evolving standards of decency render capital punishment unconstitutional and require its abolishment. (DE 1027 at 151-54.) Volumes have been written arguing for and against this argument in an effort to gauge the standards of American decency. It's a hard concept to get your mind around. But for present purposes, it is enough to say that in a

16

hierarchical system of courts, I have to do as I'm told, and my marching orders from the Supreme Court make clear that we have not evolved as a society beyond the death penalty. *See, e.g.*, *United States v. Sampson*, 486 F.3d 13, 29 (1st Cir. 2007) ("Because *Gregg* [*v. Georgia*, 428 U.S. 153 (1976)], *Roberts* [*v. Louisiana*, 428 U.S. 325 (1976)], and *Chapman* [*v. United States*, 500 U.S. 453 (1991),*] are binding upon us, we reject [the defendant's] bedrock claim and hold that the death penalty itself is not unconstitutional."); *United States v. Quinones*, 313 F.3d 49, 61-70 (2nd Cir. 2002) (extensive discussion of the history and tradition of the death penalty; "[i]n sum, if the well-settled law on this issue is to change, that is a change that only the Supreme Court or Congress is authorized to make") (citing, *et seq.*, *Herrera v. Collins*, 506 U.S. 390 (1993); *Chapman*, 500 U.S. 453; *Gregg*, 428 U.S. 153); *United States v. Williams*, No. 4:08-cr-00070, 2013 U.S. Dist. LEXIS 45323, at *65-66 (M.D. Pa. Mar. 29, 2013).

In sum, while Briseño raises interesting points and ample fodder for civic debate, his is not the case and this is not the Court in which capital punishment will be found unconstitutional.

### Specific Challenges to Alleged Aggravating Factors

Moving back to Briseño's sixth point, some discussion of individual aggravating factors is necessary. (*See* DE 1027 at 120-51.) At the hearing on Briseño's motion, I

ordered the government to provide additional information on certain aggravators, so to that extent the defense's motion has been granted in part already.

I'll also note at this point that, regardless of the limits of this Opinion and Order, I of course retain the authority to exclude evidence at any stage of the trial, and I notify the parties that I will consider their objections and I may also act *sua sponte*. During the guilt phase, when it comes to the issue of relevance, I'll make this determination based on Federal Rule of Evidence 403, which permits me to "exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." During the penalty phase — if we get there at all —"information may be excluded if its probative value is outweighed by the danger of creating unfair prejudice, confusing the issues, or misleading the jury." 18 U.S.C. § 3593(c). Note the difference: while the Rule 403 balancing requires probative evidence to be excluded if it is *substantially outweighed* by unfair prejudice etc., the standard is different at the penalty phase. It is a true balance; the word "substantial" doesn't appear.

Moving on to the substance of Briseño's claim, I'll start with the standard of review for factors that the jury will be instructed to use in weighing the penalty. The death penalty decision is meant to be an individualized one, which means there can't be

18

a one-size-fits-all answer, and it is inevitable that jurors will be relied upon to exercise wide discretion, tempered by their judgment and reason. "Because the proper degree of definition of eligibility and selection factors often is not susceptible of mathematical precision, [the Supreme Court's] vagueness review is quite deferential. Relying on the basic principle that a factor is not unconstitutional if it has some common-sense core of meaning that criminal juries should be capable of understanding, [the Supreme Court has] found only a few factors vague . . . ." *Tuilaepa v. Cal.*, 512 U.S. 967, 973-74 (1994) (quotation marks, ellipsis, citations omitted); *see also, Jones v. United States*, 527 U.S. 373, 400-02 (1999). There is "a long line of Supreme Court cases that have emphasized the importance of allowing the sentencing body to have full and complete information about the defendant." *United States v. Fell*, 360 F.3d 135, 143 (2d Cir. 2004). "Indeed, the sentencer may be given unbridled discretion in determining whether the death penalty should be imposed after it has found that the defendant is a member of the class made eligible for that penalty." *Tuilaepa v. Cal.*, 512 U.S. 967, 979-80 (1994) (quotation marks, citations omitted).

Briseño's motion challenges the statutory aggravating factor of substantial planning and premeditation, which is alleged in each of the six charged murders. He also challenges the non-statutory aggravators of victim impact and future dangerousness, and in particular he challenges separately the future dangerousness

19

sub-factor of "lack of remorse." In addition to challenging their use, Briseño's motion

seeks information about what the government intends to try to prove with respect to

each of these aggravating factors. I'll address each challenged aggravator.

### Substantial Planning

Briseño argues that "substantial planning and premeditation" is vague. He asks:

when does planning go from minimal or moderate on the one hand, to substantial on

the other? Reasonable people could debate the issue — and perhaps that is just the

point. It's simply a matter for the jury to debate and sort out using their experience and

commonsense. Courts that have considered the issue have held that the term

"substantial planning" isn't too vague for juries to understand and apply. *See, e.g.,*

*United States v. Sampson*, 335 F. Supp. 2d 166, 210 (D. Mass. 2004) ("The statute states

that there must be substantial premeditation and planning. In this context, the court

construes 'substantial' to mean 'large.' Defining 'substantial' as 'large' is both

appropriate and comports with a common-sense understanding of the word." (citing

*United States v. McCullah*, 76 F.3d 1087, 1110-11 (10th Cir. 1996); additional citation

omitted); *see also, United States v. Fields*, 516 F.3d 923, 940 (10th Cir. 2008); *United States v.*

*Barnette*, 390 F.3d 775, 786 (4th Cir. 2004) ("'Substantial planning and premeditation,' as

included in the statutory aggravating factor of § 3592(c)(9), means '"a higher degree of

planning than would have the words 'planning and premeditation' alone - i.e., more

20

than the minimum amount sufficient to commit the offense."'" (citations omitted)),

*vacated on other grounds*, 546 U.S. 803 (2005); *United States v. Bin Laden*, 126 F. Supp. 2d

290, 296 and 296 n.7 (S.D.N.Y. 2001) (collecting cases). Some of these cases offer

definitions, but I don't find any of them to be particularly helpful — reasonable people

know what the word substantial means and can apply it through the lens of their

everyday experience. In all events, that is a matter to be decided when we argue jury

instructions. For now, it is enough to say that the term is not vague.

Taking a slightly different tack, Briseño also argues that all murders can be said

to involve substantial planning, so this aggravating factor doesn't do its job of

narrowing the class of people eligible for the death penalty. This is not so, again as

courts have held. *See, e.g.*, *United States v. Williams*, No. 4:08-cr-00070, 2013 U.S. Dist.

LEXIS 45323, at *78-80 (M.D. Pa. Mar. 29, 2013) (collecting cases).

Moving on to the specifics of the substantial planning factor, there is a hiccup in

the government's allegations. The government's response brief indicates that it has two

theories of substantial planning. One is the usual sense in which I would think of this

factor – an allegation that Briseño formed a particular plan to kill then carried out that

plan. In this form, this aggravating factor has been widely accepted by other courts, and

I've adopted the reasoning of those courts.

21

The second theory is the argument that the IGs' "shoot-on-sight" policy qualifies as substantial planning in each of the six specific murders charged against Briseño. The government provided me with no authority supporting the second theory. The government did try, stretching *United States v. McCullah*, 76 F.3d 1087 (10th Cir. 1996), very thin. In *McCullah* the defendant and his co-conspirators spent weeks planning the murder of a guy named Mr. Rogers. Rogers operated a used car dealership. McCullah was to lure Rogers to the ambush site in the guise of a prospective used car buyer. But then, as bad luck would have it (for everyone but Rogers), on the day of the ambush Rogers was unavailable, so he sent an employee on the test drive with McCullah. Instead of calling off the plan on account of having the wrong victim in the car, McCullah drove to the ambush then hurried out of the car and let his comrades kill the wrong victim. Having a very elaborate plan but springing the trap on the wrong victim is nothing like, and doesn't support, the government's shoot-on-sight theory in this case.

Substantial planning as an aggravating factor for the charged murder means substantial planning for *that* murder. It doesn't mean a generally violent lifestyle, a general willingness or even eagerness to kill, or a habit of carrying a weapon. *See, e.g., United States v. Roman*, 371 F. Supp. 2d 36, 46-47 (D.P.R. 2005) (holding no reasonable juror could find substantial planning in murder committed during armed robbery

22

"where the evidence shows no planning to commit murder prior to defendants' arrival at the scene, and at most one minute of planning during the commission of the crime"; "the possession of a weapon is not alone enough to infer a substantial plan to commit the murder of a specific person"). **Briseño's motion to strike the substantial planning and premeditation factor is therefore GRANTED as to the government's shoot-on-sight theory only.**

To make sure the government wasn't relying completely on the second, shoot-on-sight substantial planning theory for any of the murders, during the hearing on Briseño's motion I asked the government to describe its theory of substantial planning for each of the six murders, and it did so. To this extent, Briseño's request for particularization (DE 1027 at 131) on this factor was GRANTED. The government provided a basis other than the general shoot-on-sight theory for each murder, although it was fairly thin for the murder of Harris Brown charged in count 17. The proffered basis for that murder was IG discussions around the time of the murder about the rival Black P. Stones gang members dealing drugs in IG territory, and the need to keep them away. This is more than a general gang policy of shooting rivals on sight, it's shooting a member of a particular gang for a particular reason.

After hearing the evidence at trial, I will be in a better position to determine whether the murder of Harris Brown involved "substantial planning." If the evidence is

23

insufficient to establish substantial planning on the Brown murder (or any other murders for that matter), I can reconsider my ruling and strike that part of the notice at that time. But for now, the government's proffer was at least sufficient to proceed to trial with the substantial planning factor on all six murders.

### Victim Impact

Briseño argues that the victim impact factor as alleged is unconstitutionally vague, lacking in specifics, broader than permitted by statute, and doesn't narrow the class of death-eligible defendants. However, such evidence is an accepted part of death penalty trials, and in fact is mentioned in the FDPA. *See* 18 U.S.C. § 3593(a); *Jones v. United States*, 527 U.S. 373, 402 (U.S. 1999) ("[A]s we have made clear, victim vulnerability and victim impact evidence are appropriate subjects for the capital sentencer's consideration."); *Payne v. Tennessee*, 501 U.S. 808, 823, 827 (1991); *see also*, *United States v. McVeigh*, 153 F.3d 1166, 1217 (10th Cir. 1998) ("*Payne* allows the prosecution to introduce evidence during the penalty phase that provides a quick glimpse of the life petitioner chose to extinguish in order to show the value of the victim's loss to society. However, *Payne* did not overrule the prohibitions in *Booth* [*v. Maryland*, 482 U.S. 496 (1987),] against the admission of information concerning a victim's family members' characterization of and opinions about the crime, the defendant, and the appropriate sentence." (quotation marks, citations omitted.)). It does

24

serve to individualize the penalty determination in any given case because the victim impact evidence will be different for each victim or victims.

Briseño's overbreadth challenge refers to the government's inclusion of the impact on the victims' friends, as well as family, in the statement of the victim impact factor in the NOI. While the FDPA only specifically references the impact on the victim's family, and not friends, the language is not exclusionary: "The factors for which notice is provided under this subsection may include factors concerning the effect of the offense on the victim and the victim's family, and may include oral testimony, a victim impact statement that identifies the victim of the offense and the extent and scope of the injury and loss suffered by the victim and the victim's family, and any other relevant information." 18 U.S.C. § 3593(a). The FDPA's list of aggravators also ends by saying that the jury "may consider whether any other aggravating factor for which notice has been given exists." 18 U.S.C. § 3592(c). This language is broad enough to allow for the testimony of a victim's friend who was impacted by his death. *See United States v. Barrett*, 496 F.3d 1079, 1099 (10th Cir. 2007) ("Two features of this statutory language are important to note. First, it expressly indicates that a victim impact statement may identify the victim and outline the extent and scope of the injury and loss suffered by the victim and his family. Second, and perhaps more importantly, the use of the phrases 'may include' and 'any other relevant information' clearly

25

2569

suggests that Congress intended to permit the admission of any other relevant evidence, including, as authorized by *Payne*, evidence giving the jury a glimpse of the victim's personality and the life he led[, including the testimony of the victim's friends].''); *see also United States v. Fields*, 516 F.3d 923, 946-47 (10th Cir. 2008).

Briseño's request for additional information about this factor was GRANTED during the hearing, and the government described the evidence it intends to introduce. The government will call one or two people impacted by the death of each murder victim to talk about the victim, the victim's life, and the effect of losing him. (I am inclined to limit the government to one witness per victim, but that matter can be taken up later at the penalty phase of the trial, should we get there). My intention is to allow only very limited testimony, and indeed the government agrees. At the hearing, the prosecutor told me that he anticipates that direct examination of each victim impact witness is unlikely to last more than about 10 minutes. There will likely be a photo showing each victim when they were alive, but there won't be any multimedia, photo montage or video presentations during the victim impact part of the hearing, other than a clip from a news segment that shows an interview with murder victim Miguel Colon. **The government must provide the defense with a list of victim impact witnesses by February 13, 2015.**

26

There are two other matters to briefly address related to victim impact testimony. At the hearing I ordered the government to provide the defendant and the Court a copy of the Colon video clip as soon as practicable (the government had only recently learned of the news story's existence). **The government is now reminded of that order.** Also, if the government's plans for victim impact evidence change materially from the government's representation at the hearing, as described in this Order, the government is **ORDERED to notify the Court and the defense before attempting to offer the additional evidence before the jury.**

*Future Dangerousness*

The government's alleged "future dangerousness" factor has three sub-factors: (1) low potential for rehabilitation as demonstrated by repeated criminal violent acts; (2) a willingness to take human life and a lack of remorse for acts of violence as demonstrated by statements made after violent acts; and (3) a stated desire to impose a rule requiring IGs to shoot at members of rival gangs on sight. Briseño argues that future dangerousness is too vague, may be seen by jurors as applying to all murderers, and is impossible to reliably predict. He also wants to clarify the scope of the government's future dangerousness argument, given that if Briseño is convicted of any of the death-eligible crimes then the only sentencing choice other than death is life in prison without the possibility of parole. Briseño argues that future dangerousness

27

should therefore be limited to the prison context. Briseño requested a hearing on this factor, which was GRANTED.

The aggravating factor of future dangerousness has a distasteful odor to it reminiscent of Steven Spielberg's *Minority Report.* It is nonetheless widely accepted and allowed by courts. *See United States v. Corley*, 519 F.3d 716, 723-24 (7th Cir. 2008) (accepting future dangerousness factor in addressing what evidence is admissible to demonstrate it); *United States v. Johnson*, 223 F.3d 665, 671 (7th Cir. 2000) (same); *see also*, *United States v. Basham*, 561 F.3d 302, 331 (4th Cir. 2009) ("The Supreme Court has recognized future dangerousness as a legitimate aggravating factor in capital proceedings." (citation omitted.)); *United States v. Bin Laden*, 126 F. Supp. 2d 290, 303-04 (S.D.N.Y. 2001) ("The Supreme Court has discussed with approbative language the submission of a defendant's future dangerousness as a subject for a penalty jury's consideration. Not surprisingly, lower courts have uniformly upheld future dangerousness as a non-statutory aggravating factor in capital cases under the FDPA, including instances where such factor is supported by evidence of low rehabilitative potential and lack of remorse." (citations omitted.)). It is true that the concept of future dangerousness is one of the things judges consider every day when sentencing defendants. And a low potential for rehabilitation is not irrelevant here – those serving a life sentence are still people living among other people, and rehabilitation speaks to

28

their ability to function appropriately, and even constructively, in prison society. I will

take up the lack of remorse sub-factor shortly, but for now I will say that I find it to be

relevant to the sentencing decision and admissible, but with limits. The shoot-on-sight

sub-factor, if found to be present, demonstrates a lack of regard for human life and

general orderly society, and is therefore germane to future dangerousness.

During the hearing on the Motion to Strike the Notice, the government mostly

agreed that future dangerousness refers to the practical reality of Briseño's future if he

is convicted — his residence within the confines of the federal corrections system. That

limitation makes sense to me because if we get to the penalty stage then the jury faces a

binary choice for Briseño's sentence: the death penalty or life in prison without parole.

More importantly, the Supreme Court has held "that whenever future dangerousness is

at issue in a capital sentencing proceeding . . ., due process requires that the jury be

informed that a life sentence carries no possibility of parole." *Shafer v. S.C.*, 532 U.S. 36,

51 (2001). I don't mean that the government needs to belabor the binary nature of the

choice — that will be noted in the jury instructions, and defense counsel may choose to

address it — but I do mean that the government will not be permitted to mislead the

jury or suggest that Briseño will somehow be dangerous to the general public. *United

States v. Fields*, 516 F.3d 923, 942 (10th Cir. 2008) ("The aim is just to ensure that the jury

29

is not misled about a defendant's future incarceration status when assessing evidence of his future dangerousness.")

This contextual limitation doesn't take the teeth out of the future dangerousness factor at all – prisons are well known to be violent places, and danger to other inmates and to prison personnel is certainly worthy of consideration. During the hearing the government went off on a tangent about a hypothetical prison break and Briseño's hypothetical danger to the general public while on the lam. That seems like such an unlikely event and a blatant attempt at fearmongering that I am disinclined to allow it. All sorts of things *might* happen. If Briseño were on trial for murdering someone after escaping from prison, this argument would be relevant. But the government didn't suggest that Briseño was unusually likely to escape, and allowing argument about an escapee on a rampage seems unfairly prejudicial, and also to fly in the face of the individualized, personalized consideration that the death penalty must be based on.

One additional issue that arises under the future dangerousness factor is that of the government's use of unadjudicated criminal conduct to demonstrate future dangerousness. During the hearing I asked the government if they intended to introduce evidence of any unadjudicated conduct during the penalty phase, should there be one. The government pointed out that the criminal enterprise conspiracy charge of the Indictment (under 18 U.S.C. § 1962(d)) will involve evidence of many

30

crimes that aren't charged separately to prove the existence of the conspiracy and

Briseño's participation in it. The acts that the government may introduce as evidence of

the enterprise are detailed in the Indictment, and in the government's Notice of Intent to

Introduce Enterprise Evidence and a supplement to it. (DE 732, 1198.)

The government said that the only evidence of unadjudicated conduct it will

attempt to introduce at the sentencing phase will be testimony about alleged animal

cruelty to ducks. The government stated during the hearing that this evidence is

relevant to future dangerousness. The only sub-factor within which it could fall is the

first, a low potential for rehabilitation as demonstrated by repeated violent criminal

acts. I am not making a final determination now, but I remind the government that I

will very carefully scrutinize evidence of unadjudicated criminal conduct to ensure that

the evidence is reliable and not unduly prejudicial. *See United States v. Corley*, 519 F.3d

716, 723-26 (7th Cir. 2008). **With this in mind, the government is ORDERED to notify**

**the Court in advance of any attempt to introduce to the jury evidence of any**

**unadjudicated criminal conduct not previously disclosed for an evaluation of**

**admissibility.**

Briseño also takes issue with the lack of remorse sub-factor separately, claiming

that it violates his rights to remain silent and to a fair trial, and that it's inherently

unreliable. This aggravating factor, in principle, is not a controversial one. *See, e.g.*,

31

2575

*United States v. Mikos*, 539 F.3d 706, 718 (7th Cir. 2008) (the Supreme Court has approved

the lack of remorse factor (citing *Zant v. Stephens*, 462 U.S. 862, 886 n.22 (1983))). I agree

with Briseño, however, that it needs clarification in this case. His request for

particularization is therefore GRANTED, and that particularization was provided in the

government's response brief and further clarified during the hearing. The government's

brief explains that it doesn't intend this factor to get at Briseño's decision not to testify

or express remorse during the trial. (DE 1062 at 76.) What the government wants to

introduce is evidence that Briseño "admitted his conduct to others, bragged about it,

and encouraged others to do the same." (*Id.*) That sort of evidence is germane to the

sentencing decision, and is not categorically inadmissible, subject to my gatekeeping

determinations and the evidence actually showing callousness and braggadocio about

violent acts. *See, e.g., United States v. Walker*, 910 F. Supp. 837, 855 (N.D.N.Y 1995)

(striking lack of remorse factor based on evidence of statements showing "callousness"

and "defiance" because the statements were more unfairly prejudicial than probative

and were too trivial to bear the weight of being an aggravating factor).

However, Briseño's point about the nomenclature is well taken. Until the

government explained its intention for this factor I was genuinely uncertain what was

intended, and the natural meaning of the phrase "lack of remorse" does suggest

something other than what the government intends. *See, e.g., United States v. Roman*, 371

F. Supp. 2d 36, 50 (D.P.R. 2005) ("There must be a showing of continuing glee,

32

2576

boastfulness, or other affirmative conduct which indicates a pervading and continuing lack of remorse following the criminal conduct. In addition, the government may not urge the applicability of the aggravator on information that has a substantial possibility of encroaching on the defendants' constitutional right to remain silent." (citations omitted.)). I will not strike this factor at this time, but I will closely monitor the evidence adduced at trial to ascertain whether it actually demonstrates a lack of remorse in a sense that is appropriate to constitute a non-statutory aggravating factor.

## CONCLUSION

FOR THE FOREGOING REASONS, Defendant Briseño's Motion to Strike the Notice of Aggravating Factors or for Additional Particularization is **GRANTED IN PART AND DENIED IN PART**, as described in this Opinion and Order. (DE 1027.)

SO ORDERED.

ENTERED: January 12, 2015

/s/ Philip P. Simon
PHILIP P. SIMON, CHIEF JUDGE
UNITED STATES DISTRICT COURT

33

```
MIME-Version:1.0
From:CMECFinnd@innd.uscourts.gov
To:CMECFinnd@localhost.localdomain
Bcc:
--Case Participants: Bryan M Truitt (bryan@tblawyers.com, sherrie@tblawyers.com), David J
Nozick - AUSA (david.nozick@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov,
susan.devries@usdoj.gov, usainn.ecfcivil@usdoj.gov), Kurt R Earnst (kre@braje-nelson.com),
Paul Jeffrey Schlesinger (pjeffslaw@aol.com), Pablo DeCastro
(pdecastro@rascia-decastro.com, ysierra@rascia-decastro.com), Sheldon B Nagelberg
(sbnagelberglaw@att.net), Thomas W Vanes (b.lynneadams@yahoo.com,
tom.vanes@sbcglobal.net), Richard C Wolter (b.lynneadams@yahoo.com), John T Theis
(theislaw@aol.com), Adam Tavitas (adtavitas@aol.com, b.lynneadams@yahoo.com), Dean R
Lanter - AUSA (dean.lanter@usdoj.gov, janet.eisenmann@usdoj.gov,
usainn.ecfcivil@usdoj.gov), John E Martin - FCD (john_martin@fd.org), Scott L King
(dwilliams@scottkinggroup.com, sking@scottkinggroup.com), Mark A Psimos
(psimoslaw@airbaud.net), Ihor Alexander Woloshansky (ihorlawyer@hotmail.com), James N
Thiros (jim@thiros.com, lynn@thiros.com), Robert L Rascia (rrascia@rascia-decastro.com,
ysierra@rascia-decastro.com), Gojko Kasich (gkasich@crownlaw.com, gkasich@gmail.com),
Arlington J Foley (arlingtonfoley@att.net), Roxanne Mendez Johnson
(attorneyrmj@gmail.com), Visvaldis P Kupsis (vpkupsis@hotmail.com), Stephen Edward Scheele
(pkd@gk4law.com, ses@gk4law.com), Jack Friedlander (jack@jackfriedlander.com,
office@jackfriedlander.com), Bruce R Hegyi - AUSA (bruce.hegyi@usdoj.gov), R Brian
Woodward (carolb@wbbklaw.com, rbwoodward@wbbklaw.com), John Maksimovich
(criminallaw@johnmaksimovich.com), David E Vandercoy (david.vandercoy@valpo.edu),
Magistrate Judge Andrew P Rodovich (rodovich_chambers@innd.uscourts.gov,
ruth_nagy@innd.uscourts.gov), Chief Judge Philip P Simon
(denise_woodside@innd.uscourts.gov, jacob_hamann@innd.uscourts.gov,
lauren_schwartz@innd.uscourts.gov, mira_serrill-robins@innd.uscourts.gov,
noel_collins@innd.uscourts.gov, philip_simon@innd.uscourts.gov)
--Non Case Participants: Matthew D Soliday (office@matthewsolidaylaw.com)
--No Notice Sent:

Message-Id:2686718@innd.uscourts.gov
Subject:Activity in Case 2:11-cr-00077-PPS-APR United States of America v. Briseno et al
Jury Selection
Content-Type: text/html
```

## U.S. District Court Northern District of Indiana [LIVE]

## USDC Northern Indiana

## Notice of Electronic Filing

The following transaction was entered on 1/13/2015 at 1:38 PM EST and filed on 1/12/2015

| | |
|---|---|
| **Case Name:** | United States of America v. Briseno et al |
| **Case Number:** | 2:11-cr-00077-PPS-APR |
| **Filer:** | |
| **Document Number:** | 1314(No document attached) |

**Docket Text:**
 **PRELIMINARY POTENTIAL JUROR SELECTION as to Juan Briseno held on 1/12/2015before Chief Judge Philip P Simon. Govt represented by attorneys David Nozick, AUSA and Bruce Hegyi, AUSA Dft is present in person and by cnsl John Maksimovich and Arlington Foley with Jury Consultant Julie Howe. Twenty-four venire persons appear. The panel is sworn to answer inquiry/voir dire by court and counsel. Potential Jurors 1-19 proceed through the voir dire process. Jurors 20-24 are ordered to return to the court on 1/13/2015 at 8:30 a.m. to**

**complete the voir dire process. Nine potential jurors are accepted to be placed in the juror pool to return at a later date for further selection proceedings. All other potential jurors are excused for cause. Defendant REMANDED to custody of US Marshal.(Court Reporter Stacy Drohosky (am) and Joanne Hoffman (pm).) (nac)**

**2:11−cr−00077−PPS−APR−1 Notice has been electronically mailed to:**

David E Vandercoy    david.vandercoy@valpo.edu

Arlington J Foley    arlingtonfoley@att.net

Mark A Psimos    psimoslaw@airbaud.net

Gojko Kasich    gkasich@crownlaw.com, gkasich@gmail.com

Scott L King    sking@scottkinggroup.com, dwilliams@scottkinggroup.com

James N Thiros    jim@thiros.com, lynn@thiros.com

Thomas W Vanes    tom.vanes@sbcglobal.net, b.lynneadams@yahoo.com

Ihor Alexander Woloshansky    ihorlawyer@hotmail.com

R Brian Woodward    rbwoodward@wbbklaw.com, carolb@wbbklaw.com

John Maksimovich    criminallaw@johnmaksimovich.com

Visvaldis P Kupsis    vpkupsis@hotmail.com

Sheldon B Nagelberg    sbnagelberglaw@att.net

John E Martin − FCD    john_martin@fd.org

Adam Tavitas    Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander    jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele    ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst    kre@braje−nelson.com

Bryan M Truitt    bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis    theislaw@aol.com

Robert L Rascia    rrascia@rascia−decastro.com, ysierra@rascia−decastro.com

Paul Jeffrey Schlesinger    pjeffslaw@aol.com

Pablo DeCastro    pdecastro@rascia−decastro.com, ysierra@rascia−decastro.com

Dean R Lanter – AUSA     dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov,
janet.eisenmann@usdoj.gov

David J Nozick – AUSA     David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov,
janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson     attorneyrmj@gmail.com

Bruce R Hegyi – AUSA     bruce.hegyi@usdoj.gov

**2:11–cr–00077–PPS–APR–1 Notice has been delivered by U.S. Mail or other means to:**

```
MIME-Version:1.0
From:CMECFinnd@innd.uscourts.gov
To:CMECFinnd@localhost.localdomain
Bcc:
--Case Participants: Pablo DeCastro (pdecastro@rascia-decastro.com,
ysierra@rascia-decastro.com), Kurt R Earnst (kre@braje-nelson.com), Arlington J Foley
(arlingtonfoley@att.net), Jack Friedlander (jack@jackfriedlander.com,
office@jackfriedlander.com), Bruce R Hegyi - AUSA (bruce.hegyi@usdoj.gov), Roxanne Mendez
Johnson (attorneyrmj@gmail.com), Gojko Kasich (gkasich@crownlaw.com, gkasich@gmail.com),
Scott L King (dwilliams@scottkinggroup.com, sking@scottkinggroup.com), Visvaldis P Kupsis
(vpkupsis@hotmail.com), Dean R Lanter - AUSA (dean.lanter@usdoj.gov,
janet.eisenmann@usdoj.gov, usainn.ecfcivil@usdoj.gov), John Maksimovich
(criminallaw@johnmaksimovich.com), John E Martin - FCD (john_martin@fd.org), Sheldon B
Nagelberg (sbnagelberglaw@att.net), David J Nozick - AUSA (david.nozick@usdoj.gov,
janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov,
usainn.ecfcivil@usdoj.gov), Mark A Psimos (psimoslaw@airbaud.net), Robert L Rascia
(rrascia@rascia-decastro.com, ysierra@rascia-decastro.com), Stephen Edward Scheele
(pkd@gk4law.com, ses@gk4law.com), Paul Jeffrey Schlesinger (pjeffslaw@aol.com), Adam
Tavitas (adtavitas@aol.com, b.lynneadams@yahoo.com), John T Theis (theislaw@aol.com),
James N Thiros (jim@thiros.com, lynn@thiros.com), Bryan M Truitt (bryan@tblawyers.com,
sherrie@tblawyers.com), David E Vandercoy (david.vandercoy@valpo.edu), Thomas W Vanes
(b.lynneadams@yahoo.com, tom.vanes@sbcglobal.net), Ihor Alexander Woloshansky
(ihorlawyer@hotmail.com), Richard C Wolter (b.lynneadams@yahoo.com), R Brian Woodward
(carolb@wbbklaw.com, rbwoodward@wbbklaw.com), Magistrate Judge Andrew P Rodovich
(rodovich_chambers@innd.uscourts.gov, ruth_nagy@innd.uscourts.gov), Chief Judge Philip P
Simon (denise_woodside@innd.uscourts.gov, jacob_hamann@innd.uscourts.gov,
lauren_schwartz@innd.uscourts.gov, mira_serrill-robins@innd.uscourts.gov,
noel_collins@innd.uscourts.gov, philip_simon@innd.uscourts.gov)
--Non Case Participants: Matthew D Soliday (office@matthewsolidaylaw.com)
--No Notice Sent:

Message-Id:2688014@innd.uscourts.gov
Subject:Activity in Case 2:11-cr-00077-PPS-APR United States of America v. Briseno et al
Jury Trial
Content-Type: text/html
```

### U.S. District Court Northern District of Indiana [LIVE]

### USDC Northern Indiana

## Notice of Electronic Filing

The following transaction was entered on 1/14/2015 at 4:08 PM EST and filed on 1/13/2015

| | |
|---|---|
| **Case Name:** | United States of America v. Briseno et al |
| **Case Number:** | 2:11-cr-00077-PPS-APR |
| **Filer:** | |
| **Document Number:** | 1320(No document attached) |

**Docket Text:**

**PRELIMINARY POTENTIAL-JUROR SELECTION (Day 2) as to Juan Briseno held on 1/13/2015 before Chief Judge Philip P Simon. Parties present as previously noted. Potential-jurors 20 – 24 appear again (originally appeared on 1/12/15 but since their voir dire process was not completed they return). In addition, 18 additional potential-jurors also were summoned of which 15 appear. The panel is sworn to answer inquiry/voir dire by the court and counsel. Potential-jurors proceed through the voir dire process with 9 selected for future juror pool with the court taking under advisement the decision as to juror #29. Court**

2581

**ruling to be made on 1/14/2015. All other potential–jurors are excused for cause. Defendant REMANDED to custody of US Marshal. (Court Reporter Stacy Drohosky (am) – Kelly Fitzgerald (pm).) (nac)**

**2:11–cr–00077–PPS–APR–1 Notice has been electronically mailed to:**

David E Vandercoy    david.vandercoy@valpo.edu

Arlington J Foley    arlingtonfoley@att.net

Mark A Psimos    psimoslaw@airbaud.net

Gojko Kasich    gkasich@crownlaw.com, gkasich@gmail.com

Scott L King    sking@scottkinggroup.com, dwilliams@scottkinggroup.com

James N Thiros    jim@thiros.com, lynn@thiros.com

Thomas W Vanes    tom.vanes@sbcglobal.net, b.lynneadams@yahoo.com

Ihor Alexander Woloshansky    ihorlawyer@hotmail.com

R Brian Woodward    rbwoodward@wbbklaw.com, carolb@wbbklaw.com

John Maksimovich    criminallaw@johnmaksimovich.com

Visvaldis P Kupsis    vpkupsis@hotmail.com

Sheldon B Nagelberg    sbnagelberglaw@att.net

John E Martin – FCD    john_martin@fd.org

Adam Tavitas    Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander    jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele    ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst    kre@braje–nelson.com

Bryan M Truitt    bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis    theislaw@aol.com

Robert L Rascia    rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger    pjeffslaw@aol.com

Pablo DeCastro    pdecastro@rascia–decastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA    dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov,

janet.eisenmann@usdoj.gov

David J Nozick – AUSA    David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson    attorneyrmj@gmail.com

Bruce R Hegyi – AUSA    bruce.hegyi@usdoj.gov

**2:11–cr–00077–PPS–APR–1 Notice has been delivered by U.S. Mail or other means to:**

```
MIME-Version:1.0
From:CMECFinnd@innd.uscourts.gov
To:CMECFinnd@localhost.localdomain
Bcc:
--Case Participants: Pablo DeCastro (pdecastro@rascia-decastro.com,
ysierra@rascia-decastro.com), Kurt R Earnst (kre@braje-nelson.com), Arlington J Foley
(arlingtonfoley@att.net), Jack Friedlander (jack@jackfriedlander.com,
office@jackfriedlander.com), Bruce R Hegyi - AUSA (bruce.hegyi@usdoj.gov), Roxanne Mendez
Johnson (attorneyrmj@gmail.com), Gojko Kasich (gkasich@crownlaw.com, gkasich@gmail.com),
Scott L King (dwilliams@scottkinggroup.com, sking@scottkinggroup.com), Visvaldis P Kupsis
(vpkupsis@hotmail.com), Dean R Lanter - AUSA (dean.lanter@usdoj.gov,
janet.eisenmann@usdoj.gov, usainn.ecfcivil@usdoj.gov), John Maksimovich
(criminallaw@johnmaksimovich.com), John E Martin - FCD (john_martin@fd.org), Sheldon B
Nagelberg (sbnagelberglaw@att.net), David J Nozick - AUSA (david.nozick@usdoj.gov,
janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov,
usainn.ecfcivil@usdoj.gov), Mark A Psimos (psimoslaw@airbaud.net), Robert L Rascia
(rrascia@rascia-decastro.com, ysierra@rascia-decastro.com), Stephen Edward Scheele
(pkd@gk4law.com, ses@gk4law.com), Paul Jeffrey Schlesinger (pjeffslaw@aol.com), Adam
Tavitas (adtavitas@aol.com, b.lynneadams@yahoo.com), John T Theis (theislaw@aol.com),
James N Thiros (jim@thiros.com, lynn@thiros.com), Bryan M Truitt (bryan@tblawyers.com,
sherrie@tblawyers.com), David E Vandercoy (david.vandercoy@valpo.edu), Thomas W Vanes
(b.lynneadams@yahoo.com, tom.vanes@sbcglobal.net), Ihor Alexander Woloshansky
(ihorlawyer@hotmail.com), Richard C Wolter (b.lynneadams@yahoo.com), R Brian Woodward
(carolb@wbbklaw.com, rbwoodward@wbbklaw.com), Magistrate Judge Andrew P Rodovich
(rodovich_chambers@innd.uscourts.gov, ruth_nagy@innd.uscourts.gov), Chief Judge Philip P
Simon (denise_woodside@innd.uscourts.gov, jacob_hamann@innd.uscourts.gov,
lauren_schwartz@innd.uscourts.gov, mira_serrill-robins@innd.uscourts.gov,
noel_collins@innd.uscourts.gov, philip_simon@innd.uscourts.gov)
--Non Case Participants: Matthew D Soliday (office@matthewsolidaylaw.com)
--No Notice Sent:

Message-Id:2689278@innd.uscourts.gov
Subject:Activity in Case 2:11-cr-00077-PPS-APR United States of America v. Briseno et al
Jury Trial
Content-Type: text/html
```

### U.S. District Court Northern District of Indiana [LIVE]

### USDC Northern Indiana

## Notice of Electronic Filing

The following transaction was entered on 1/15/2015 at 7:01 PM EST and filed on 1/14/2015

| | |
|---|---|
| **Case Name:** | United States of America v. Briseno et al |
| **Case Number:** | 2:11-cr-00077-PPS-APR |
| **Filer:** | |
| **Document Number:** | 1327(No document attached) |

**Docket Text:**
 **POTENTIAL-JUROR SELECTION (DAY 3) as to Juan Briseno held on 1/14/2015 before Chief Judge Philip P Simon. Parties present as previously noted. Court's ruling on potential juror #29 – stricken for cause. Court ruling on potential juror #31 – clerk's office to contact the selected potential juror by telephone to inquire if she is a student. Twenty potential-jurors summoned with 17 potential jurors appearing. Three jurors do not appear (#s 54, 56 and 57). Those potential-jurors are instructed by telephone to appear on 1/15/15. The panel is sworn to answer inquiry/voir dire by the court and counsel. Potential-jurors proceed through the**

**voir dire process with two selected for future juror pool. All other potential–jurors are excused. Defense exhibits A and B are admitted. At the conclusion of the day the members of the pool are instructed by the court not to discuss this case with anyone nor to do any research into this matter. Jury trial projected to begin 2/2/2015. Defendant REMANDED to custody of US Marshal.(Court Reporter Stacy Drohosky (am) and Kelly Fitzgerald (pm).) (nac)**

**2:11–cr–00077–PPS–APR–1 Notice has been electronically mailed to:**

David E Vandercoy     david.vandercoy@valpo.edu

Arlington J Foley     arlingtonfoley@att.net

Mark A Psimos     psimoslaw@airbaud.net

Gojko Kasich     gkasich@crownlaw.com, gkasich@gmail.com

Scott L King     sking@scottkinggroup.com, dwilliams@scottkinggroup.com

James N Thiros     jim@thiros.com, lynn@thiros.com

Thomas W Vanes     tom.vanes@sbcglobal.net, b.lynneadams@yahoo.com

Ihor Alexander Woloshansky     ihorlawyer@hotmail.com

R Brian Woodward     rbwoodward@wbbklaw.com, carolb@wbbklaw.com

John Maksimovich     criminallaw@johnmaksimovich.com

Visvaldis P Kupsis     vpkupsis@hotmail.com

Sheldon B Nagelberg     sbnagelberglaw@att.net

John E Martin – FCD     john_martin@fd.org

Adam Tavitas     Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander     jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele     ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst     kre@braje–nelson.com

Bryan M Truitt     bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis     theislaw@aol.com

Robert L Rascia     rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger     pjeffslaw@aol.com

Pablo DeCastro     pdecastro@rascia–decastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA     dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov,
janet.eisenmann@usdoj.gov

David J Nozick – AUSA     David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov,
janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson     attorneyrmj@gmail.com

Bruce R Hegyi – AUSA     bruce.hegyi@usdoj.gov

**2:11−cr−00077−PPS−APR−1 Notice has been delivered by U.S. Mail or other means to:**

```
MIME-Version:1.0
From:CMECFinnd@innd.uscourts.gov
To:CMECFinnd@localhost.localdomain
Bcc:
--Case Participants: Pablo DeCastro (pdecastro@rascia-decastro.com,
ysierra@rascia-decastro.com), Kurt R Earnst (kre@braje-nelson.com), Arlington J Foley
(arlingtonfoley@att.net), Jack Friedlander (jack@jackfriedlander.com,
office@jackfriedlander.com), Bruce R Hegyi - AUSA (bruce.hegyi@usdoj.gov), Roxanne Mendez
Johnson (attorneyrmj@gmail.com), Gojko Kasich (gkasich@crownlaw.com, gkasich@gmail.com),
Scott L King (dwilliams@scottkinggroup.com, sking@scottkinggroup.com), Visvaldis P Kupsis
(vpkupsis@hotmail.com), Dean R Lanter - AUSA (dean.lanter@usdoj.gov,
janet.eisenmann@usdoj.gov, usainn.ecfcivil@usdoj.gov), John Maksimovich
(criminallaw@johnmaksimovich.com), John E Martin - FCD (john_martin@fd.org), Sheldon B
Nagelberg (sbnagelberglaw@att.net), David J Nozick - AUSA (david.nozick@usdoj.gov,
janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov,
usainn.ecfcivil@usdoj.gov), Mark A Psimos (psimoslaw@airbaud.net), Robert L Rascia
(rrascia@rascia-decastro.com, ysierra@rascia-decastro.com), Stephen Edward Scheele
(pkd@gk4law.com, ses@gk4law.com), Paul Jeffrey Schlesinger (pjeffslaw@aol.com), Adam
Tavitas (adtavitas@aol.com, b.lynneadams@yahoo.com), John T Theis (theislaw@aol.com),
James N Thiros (jim@thiros.com, lynn@thiros.com), Bryan M Truitt (bryan@tblawyers.com,
sherrie@tblawyers.com), David E Vandercoy (david.vandercoy@valpo.edu), Thomas W Vanes
(b.lynneadams@yahoo.com, tom.vanes@sbcglobal.net), Ihor Alexander Woloshansky
(ihorlawyer@hotmail.com), Richard C Wolter (b.lynneadams@yahoo.com), R Brian Woodward
(carolb@wbbklaw.com, rbwoodward@wbbklaw.com), Magistrate Judge Andrew P Rodovich
(rodovich_chambers@innd.uscourts.gov, ruth_nagy@innd.uscourts.gov), Chief Judge Philip P
Simon (denise_woodside@innd.uscourts.gov, jacob_hamann@innd.uscourts.gov,
lauren_schwartz@innd.uscourts.gov, mira_serrill-robins@innd.uscourts.gov,
noel_collins@innd.uscourts.gov, philip_simon@innd.uscourts.gov)
--Non Case Participants: Matthew D Soliday (office@matthewsolidaylaw.com)
--No Notice Sent:

Message-Id:2690817@innd.uscourts.gov
Subject:Activity in Case 2:11-cr-00077-PPS-APR United States of America v. Briseno et al
Order on Motion to Seal Document
Content-Type: text/html
```

### U.S. District Court Northern District of Indiana [LIVE]

### USDC Northern Indiana

## Notice of Electronic Filing

The following transaction was entered on 1/20/2015 at 10:45 AM EST and filed on 1/20/2015

| | |
|---|---|
| **Case Name:** | United States of America v. Briseno et al |
| **Case Number:** | 2:11-cr-00077-PPS-APR |
| **Filer:** | |
| **Document Number:** | 1336(No document attached) |

**Docket Text:**

**ORDER GRANTING [1331] Motion to Seal Document as to Juan Briseno (1). (Text entry only). Approved by Chief Judge Philip P Simon on 1/20/2015. (nac)**

**2:11-cr-00077-PPS-APR-1 Notice has been electronically mailed to:**

David E Vandercoy   david.vandercoy@valpo.edu

Arlington J Foley    arlingtonfoley@att.net

Mark A Psimos    psimoslaw@airbaud.net

Gojko Kasich    gkasich@crownlaw.com, gkasich@gmail.com

Scott L King    sking@scottkinggroup.com, dwilliams@scottkinggroup.com

James N Thiros    jim@thiros.com, lynn@thiros.com

Thomas W Vanes    tom.vanes@sbcglobal.net, b.lynneadams@yahoo.com

Ihor Alexander Woloshansky    ihorlawyer@hotmail.com

R Brian Woodward    rbwoodward@wbbklaw.com, carolb@wbbklaw.com

John Maksimovich    criminallaw@johnmaksimovich.com

Visvaldis P Kupsis    vpkupsis@hotmail.com

Sheldon B Nagelberg    sbnagelberglaw@att.net

John E Martin – FCD    john_martin@fd.org

Adam Tavitas    Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander    jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele    ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst    kre@braje–nelson.com

Bryan M Truitt    bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis    theislaw@aol.com

Robert L Rascia    rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger    pjeffslaw@aol.com

Pablo DeCastro    pdecastro@rascia–decastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA    dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov,
janet.eisenmann@usdoj.gov

David J Nozick – AUSA    David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov,
janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson    attorneyrmj@gmail.com

Bruce R Hegyi – AUSA    bruce.hegyi@usdoj.gov

2588

**2:11–cr–00077–PPS–APR–1 Notice has been delivered by U.S. Mail or other means to:**

```
MIME-Version:1.0
From:CMECFinnd@innd.uscourts.gov
To:CMECFinnd@localhost.localdomain
Bcc:
--Case Participants: Bryan M Truitt (bryan@tblawyers.com, sherrie@tblawyers.com), David J
Nozick - AUSA (david.nozick@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov,
susan.devries@usdoj.gov, usainn.ecfcivil@usdoj.gov), Kurt R Earnst (kre@braje-nelson.com),
Paul Jeffrey Schlesinger (pjeffslaw@aol.com), Pablo DeCastro
(pdecastro@rascia-decastro.com, ysierra@rascia-decastro.com), Sheldon B Nagelberg
(sbnagelberglaw@att.net), Thomas W Vanes (b.lynneadams@yahoo.com,
tom.vanes@sbcglobal.net), Richard C Wolter (b.lynneadams@yahoo.com), John T Theis
(theislaw@aol.com), Adam Tavitas (adtavitas@aol.com, b.lynneadams@yahoo.com), Dean R
Lanter - AUSA (dean.lanter@usdoj.gov, janet.eisenmann@usdoj.gov,
usainn.ecfcivil@usdoj.gov), John E Martin - FCD (john_martin@fd.org), Scott L King
(dwilliams@scottkinggroup.com, sking@scottkinggroup.com), Mark A Psimos
(psimoslaw@airbaud.net), Ihor Alexander Woloshansky (ihorlawyer@hotmail.com), James N
Thiros (jim@thiros.com, lynn@thiros.com), Robert L Rascia (rrascia@rascia-decastro.com,
ysierra@rascia-decastro.com), Gojko Kasich (gkasich@crownlaw.com, gkasich@gmail.com),
Arlington J Foley (arlingtonfoley@att.net), Roxanne Mendez Johnson
(attorneyrmj@gmail.com), Visvaldis P Kupsis (vpkupsis@hotmail.com), Stephen Edward Scheele
(pkd@gk4law.com, ses@gk4law.com), Jack Friedlander (jack@jackfriedlander.com,
office@jackfriedlander.com), Bruce R Hegyi - AUSA (bruce.hegyi@usdoj.gov), R Brian
Woodward (carolb@wbbklaw.com, rbwoodward@wbbklaw.com), John Maksimovich
(criminallaw@johnmaksimovich.com), David E Vandercoy (david.vandercoy@valpo.edu),
Magistrate Judge Andrew P Rodovich (rodovich_chambers@innd.uscourts.gov,
ruth_nagy@innd.uscourts.gov), Chief Judge Philip P Simon
(denise_woodside@innd.uscourts.gov, jacob_hamann@innd.uscourts.gov,
lauren_schwartz@innd.uscourts.gov, mira_serrill-robins@innd.uscourts.gov,
noel_collins@innd.uscourts.gov, philip_simon@innd.uscourts.gov)
--Non Case Participants: Matthew D Soliday (office@matthewsolidaylaw.com)
--No Notice Sent:

Message-Id:2691257@innd.uscourts.gov
Subject:Activity in Case 2:11-cr-00077-PPS-APR United States of America v. Briseno et al
Jury Trial
Content-Type: text/html
```

### U.S. District Court Northern District of Indiana [LIVE]

### USDC Northern Indiana

**Notice of Electronic Filing**

The following transaction was entered on 1/20/2015 at 3:04 PM EST and filed on 1/15/2015

| | |
|---|---|
| **Case Name:** | United States of America v. Briseno et al |
| **Case Number:** | 2:11-cr-00077-PPS-APR |
| **Filer:** | |
| **Document Number:** | 1338(No document attached) |

**Docket Text:**

**POTENTIAL-JUROR SELECTION (DAY 4) as to Juan Briseno held on 1/15/2015 before Chief Judge Philip P Simon. Parties present as previously noted. Twenty-two venire persons summoned, 19 appear. The panel is sworn to answer inquiry/voir dire by court and counsel. Potential jurors proceed through the voir dire process. Nine potential jurors are accepted to be placed in the juror pool to return at a later date for further selection proceedings. All other potential jurors are excused for cause. At the conclusion of the day the members of the pool**

2590

**are reminded by the court to not discuss the case nor to do any research into this matter. Defendant REMANDED to custody of US Marshal.(Court Reporter Stacy Drohosky (am) and Kelly Fitzgerald (pm).) (nac)**

**2:11−cr−00077−PPS−APR−1 Notice has been electronically mailed to:**

David E Vandercoy    david.vandercoy@valpo.edu

Arlington J Foley    arlingtonfoley@att.net

Mark A Psimos    psimoslaw@airbaud.net

Gojko Kasich    gkasich@crownlaw.com, gkasich@gmail.com

Scott L King    sking@scottkinggroup.com, dwilliams@scottkinggroup.com

James N Thiros    jim@thiros.com, lynn@thiros.com

Thomas W Vanes    tom.vanes@sbcglobal.net, b.lynneadams@yahoo.com

Ihor Alexander Woloshansky    ihorlawyer@hotmail.com

R Brian Woodward    rbwoodward@wbbklaw.com, carolb@wbbklaw.com

John Maksimovich    criminallaw@johnmaksimovich.com

Visvaldis P Kupsis    vpkupsis@hotmail.com

Sheldon B Nagelberg    sbnagelberglaw@att.net

John E Martin − FCD    john_martin@fd.org

Adam Tavitas    Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander    jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele    ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst    kre@braje−nelson.com

Bryan M Truitt    bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis    theislaw@aol.com

Robert L Rascia    rrascia@rascia−decastro.com, ysierra@rascia−decastro.com

Paul Jeffrey Schlesinger    pjeffslaw@aol.com

Pablo DeCastro    pdecastro@rascia−decastro.com, ysierra@rascia−decastro.com

Dean R Lanter − AUSA    dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov,

2591

janet.eisenmann@usdoj.gov

David J Nozick – AUSA    David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov,
janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson    attorneyrmj@gmail.com

Bruce R Hegyi – AUSA    bruce.hegyi@usdoj.gov

**2:11−cr−00077−PPS−APR−1 Notice has been delivered by U.S. Mail or other means to:**

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| VS. | ) | CASE NO. 2:11 CR 77 |
| | ) | |
| JUAN BRISENO | ) | |

<u>**PETITION FOR WRIT OF HABEAS CORPUS AD TESTIFICANDUM**</u>

Comes now the defendant, Juan Briseno, by and through his attorneys, Arlington

J. Foley and John Maksimovich, and represents the Court that the trial for the above-

captioned defendant is set for January 12, 2015 at 8:30 AM (CST), and that a prisoner,

Corey Walton (DOC #219700), is necessary to be a witness therein on behalf of the

defendant, Juan Briseno.

**WHEREFORE:** Your petitioner, Juan Briseno, prays this Honorable Court grant

a Writ of Habeas Corpus ad Testificandum to be directed to:


Warden                    United States Marshal
Indiana State Prison      Northern District of Indiana
Michigan City, Indiana    Hammond, Indiana


commanding the surrender of the body of this prisoner to the United States Marshal for

the Northern District of Indiana, or one of his duly authorized deputies, or any authorized

Marshal, so that the Marshal, or deputy, may produce the body of the prisoner in the

United States District Court in the Federal Building, 5400 Federal Plaza, Hammond,

Indiana, during the period of the trial set for January 12, 2015, at 8:30 AM (CST), so that

the prisoner may be present and testify, the prisoner to be returned after the conclusion of

2593

the trial by the United States Marshal, or one of his duly authorized deputies, to the said

institution.


RESPECTFULLY SUBMITTED BY:


| /s/ Arlington J. Foley | /s/ John Maksimovich |
|---|---|
| Arlington J. Foley, Atty. No. 6905-45 | John Maksimovich, Atty. No. 9950-45 |
| Attorney for Defendant | Attorney for Defendant |
| 1942 North Main Street | 1946 North Main Street |
| Crown Point, IN  46307 | Crown Point, IN  46307 |
| Tel: (219) 661-1200 | Tel:  (219) 663-1900 |

**CERTIFICATE OF SERVICE**

I certify that on the 21st day of January, 2015 service of a true and complete copy of the above and foregoing pleading or paper was made upon each party or attorney of record herein by the electronic case filing system (ECF).

By: _____s/Arlington J. Foley_____
    Arlington J. Foley
    Attorney at Law

2

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **VS.** | ) | **CASE NO. 2:11 CR 77** |
| | ) | |
| **JUAN BRISENO** | ) | |

<u>**PETITION FOR WRIT OF HABEAS CORPUS AD TESTIFICANDUM**</u>

Comes now the defendant, Juan Briseno, by and through his attorneys, Arlington

J. Foley and John Maksimovich, and represents the Court that the trial for the above-

captioned defendant is set for January 12, 2015 at 8:30 AM (CST), and that a prisoner,

Eddie Torres (BOP #57686-018), is necessary to be a witness therein on behalf of the

defendant, Juan Briseno.

**WHEREFORE:** Your petitioner, Juan Briseno, prays this Honorable Court grant

a Writ of Habeas Corpus ad Testificandum to be directed to:

Warden                          United States Marshal
FTC Oklahoma City               Northern District of Indiana
Oklahoma City, Oklahoma         Hammond, Indiana

commanding the surrender of the body of this prisoner to the United States Marshal for

the Northern District of Indiana, or one of his duly authorized deputies, or any authorized

Marshal, so that the Marshal, or deputy, may produce the body of the prisoner in the

United States District Court in the Federal Building, 5400 Federal Plaza, Hammond,

Indiana, during the period of the trial set for January 12, 2015, at 8:30 AM (CST), so that

the prisoner may be present and testify, the prisoner to be returned after the conclusion of

the trial by the United States Marshal, or one of his duly authorized deputies, to the said

institution.


RESPECTFULLY SUBMITTED BY:


/s/ Arlington J. Foley                                    /s/ John Maksimovich

Arlington J. Foley, Atty. No. 6905-45            John Maksimovich, Atty. No. 9950-45

Attorney for Defendant                               Attorney for Defendant

1942 North Main Street                               1946 North Main Street

Crown Point, IN  46307                              Crown Point, IN  46307

Tel: (219) 661-1200                                   Tel:  (219) 663-1900

**CERTIFICATE OF SERVICE**

I certify that on the 21st day of January, 2015 service of a true and complete copy of the above and foregoing pleading or paper was made upon each party or attorney of record herein by the electronic case filing system (ECF).

By:      s/Arlington J. Foley
         Arlington J. Foley
         Attorney at Law

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )    NO. 2:11CR77 PPS |
| | ) |
| JUAN BRISENO, | ) |
| | ) |
| Defendant. | ) |

## <u>ORDER</u>

We are in the second week of jury selection in the capital trial of defendant Juan

Briseno.  Prior to trial, more than 450 individuals completed lengthy and detailed

questionnaires, and the parties agreed to eliminate several hundred potential jurors for

cause based on their questionnaire responses.  For voir dire each day, the Clerk is

instructed to summon to court a certain number of prospective jurors from the

remaining venire.  Although the jury pool here is not anonymous, it is confidential, in

that although the parties have each individual's name from the questionnaire, in the

courtroom each potential juror is identified only by juror number.

Today the Clerk has discovered that an error was made in yesterday's

assignment of juror numbers.  Juror J.H., #121, appeared and was given the wrong

numbered badge, identifying her as #120, Juror R.H.[1]  Because no names were used in

court on the record, the mix-up was not discovered during the course of the day's

---

[1]  Juror R.H., confused about the Clerk's summons, did not appear yesterday but is expected to appear another day.

courtroom proceedings. Counsel and I believed that the venireperson wearing badge #120 was R.H., when she was in fact J.H., #121. After her voir dire, no challenge for cause was interposed, and she was retained in the jury pool.

Now that we are aware the prospective juror who was questioned was J.H. rather than R.H., the Clerk has been instructed to recall J.H. for supplemental questioning so that counsel and I may refer to and rely upon the correct questionnaire responses in examining her and assessing her fitness to serve as a juror.

ACCORDINGLY:

The prospective juror who appeared January 20, 2015 and was then referred to as Juror #120 was in fact Juror #121, whose initials are J.H. The Clerk will recall J.H. (#121) for supplemental questioning now that her identification has been corrected. The voir dire examination of both Jurors #120 and #121 remains open.

SO ORDERED.

ENTERED: January 21, 2015.

     /s/ Philip P. Simon
PHILIP P. SIMON, CHIEF JUDGE
UNITED STATES DISTRICT COURT

2

2598

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 2:11-cr-77 |
| | ) | |
| JUAN BRISENO, | ) | |
| | ) | |
| Defendant. | ) | |

### WRIT OF HABEAS CORPUS AD TESTIFICANDUM

TO:      Warden                 United States Marshal
                 Indiana State Prison       Northern District of Indiana
                 Michigan City, Indiana    Hammond, Indiana

The court being advised that prisoner Corey Walton (DOC #219700) is a necessary witness in the trial of Juan Briseno in *United States v. Juan Briseno*, on January 12, 2015, at 8:30 a.m. (Central time), and that said prisoner is in the lawful custody and control of the Warden, Indiana State Prison, Michigan City, Indiana.

It is **ORDERED** and **ADJUDGED** that the Warden, Indiana State Prison, Michigan City, Indiana, be required and is hereby commanded to surrender the body of prisoner Corey Walton (DOC #219700) to the United States Marshal for the Northern District of Indiana, or any duly authorized deputy, or any authorized Marshal, for the purpose of producing the body of said prisoner for trial in the federal courthouse, Hammond, Indiana, on February 23, 2015, at 8:30 a.m. (Central time), so that the prisoner may be present to testify in said trial, and thereafter to be returned to the institution by the United States Marshal, or one of his duly authorized deputies, under safe and secure conduct, and have you then and there this Writ.

**SO ORDERED**

2599

ENTERED this 22nd day of January, 2015.

/s/ Andrew P. Rodovich
United States Magistrate Judge

2600

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 2:11-cr-77 |
| | ) | |
| JUAN BRISENO, | ) | |
| | ) | |
| Defendant. | ) | |

### WRIT OF HABEAS CORPUS AD TESTIFICANDUM

TO:      Warden                    United States Marshal
              FTC Oklahoma City        Northern District of Indiana
              Oklahoma City, Oklahoma    Hammond, Indiana

The court being advised that prisoner Eddie Torres (BOP #57686-018) is a necessary witness in the trial of Juan Briseno in *United States v. Juan Briseno*, on January 12, 2015, at 8:30 a.m. (Central time), and that said prisoner is in the lawful custody and control of the Warden, FTC Oklahoma City, Oklahoma City, Oklahoma.

It is **ORDERED** and **ADJUDGED** that the Warden, FTC Oklahoma City, Oklahoma City, Oklahoma, be required and is hereby commanded to surrender the body of prisoner Eddie Torres (BOP #57686-018) to the United States Marshal for the Northern District of Indiana, or any duly authorized deputy, or any authorized Marshal, for the purpose of producing the body of said prisoner for trial in the federal courthouse, Hammond, Indiana, on February 23, 2015, at 8:30 a.m. (Central time), so that the prisoner may be present to testify in said trial, and thereafter to be returned to the institution by the United States Marshal, or one of his duly authorized deputies, under safe and secure conduct, and have you then and there this Writ.

**SO ORDERED**

ENTERED this 22nd day of January, 2015.

/s/ Andrew P. Rodovich
United States Magistrate Judge

```
MIME-Version:1.0
From:CMECFinnd@innd.uscourts.gov
To:CMECFinnd@localhost.localdomain
Bcc:
--Case Participants: Bryan M Truitt (bryan@tblawyers.com, sherrie@tblawyers.com), David J
Nozick - AUSA (david.nozick@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov,
susan.devries@usdoj.gov, usainn.ecfcivil@usdoj.gov), Kurt R Earnst (kre@braje-nelson.com),
Paul Jeffrey Schlesinger (pjeffslaw@aol.com), Pablo DeCastro
(pdecastro@attorneydecastro.com, ysierra@rascia-decastro.com), Sheldon B Nagelberg
(sbnagelberglaw@att.net), Thomas W Vanes (b.lynneadams@yahoo.com,
tom.vanes@sbcglobal.net), Richard C Wolter (b.lynneadams@yahoo.com), John T Theis
(theislaw@aol.com), Adam Tavitas (adtavitas@aol.com, b.lynneadams@yahoo.com), Dean R
Lanter - AUSA (dean.lanter@usdoj.gov, janet.eisenmann@usdoj.gov,
usainn.ecfcivil@usdoj.gov), Scott L King (dwilliams@scottkinggroup.com,
sking@scottkinggroup.com), Mark A Psimos (psimoslaw@airbaud.net), Matthew N Fech
(mnf@fech-law.com), Ihor Alexander Woloshansky (ihorlawyer@hotmail.com), James N Thiros
(jim@thiros.com, lynn@thiros.com), Robert L Rascia (rrascia@rascia-decastro.com,
ysierra@rascia-decastro.com), Gojko Kasich (gkasich@crownlaw.com, gkasich@gmail.com),
Arlington J Foley (arlingtonfoley@att.net), Roxanne Mendez Johnson
(attorneyrmj@gmail.com), Visvaldis P Kupsis (vpkupsis@hotmail.com), Stephen Edward Scheele
(pkd@gk4law.com, ses@gk4law.com), Jack Friedlander (jack@jackfriedlander.com,
office@jackfriedlander.com), Bruce R Hegyi - AUSA (bruce.hegyi@usdoj.gov), R Brian
Woodward (carolb@wbbklaw.com, rbwoodward@wbbklaw.com), John Maksimovich
(criminallaw@johnmaksimovich.com), David E Vandercoy (david.vandercoy@valpo.edu), John E
Martin - FCD (john_martin@fd.org), Chief Judge Philip P Simon
(denise_woodside@innd.uscourts.gov, jacob_hamann@innd.uscourts.gov,
lauren_schwartz@innd.uscourts.gov, mira_serrill-robins@innd.uscourts.gov,
noel_collins@innd.uscourts.gov, philip_simon@innd.uscourts.gov), Magistrate Judge Andrew P
Rodovich (rodovich_chambers@innd.uscourts.gov, ruth_nagy@innd.uscourts.gov)
--Non Case Participants: Matthew D Soliday (office@matthewsolidaylaw.com)
--No Notice Sent:

Message-Id:2692919@innd.uscourts.gov
Subject:Activity in Case 2:11-cr-00077-PPS-APR United States of America v. Briseno et al
Jury Trial
```
Content–Type: text/html

### U.S. District Court Northern District of Indiana [LIVE]

### USDC Northern Indiana

## Notice of Electronic Filing

The following transaction was entered on 1/22/2015 at 1:17 PM EST and filed on 1/21/2015

**Case Name:**     United States of America v. Briseno et al

**Case Number:**     2:11–cr–00077–PPS–APR

**Filer:**

**Document Number:** 1354(No document attached)

**Docket Text:**

**POTENTIAL–JUROR SELECTION (DAY 7) as to Juan Briseno held on 1/21/2015 before Chief Judge Philip P Simon. Parties present as previously noted. Twenty–three venire persons summoned and twenty–one appear. The panel is sworn to answer inquiry/voir dire by court and counsel. Potential jurors proceed through the voir dire process. Nine potential–jurors are accepted to be placed in the juror pool to return at a later date (projected to be 2/2/2015)for further selection proceedings. All other potential jurors are excused for cause.**

**At the conclusion of the day the members of the pool are reminded by the court not to discuss this case nor to do any research into this matter. Other matters/discussions: Court addresses with the parties the issue of the discrepancy between potential–jurors numbered #120 and #121. Juror #121 (JH) will be summoned for 1/22/2015 at 8:20 am for counsel to further question this individual. Defendant REMANDED to custody of US Marshal.(Court Reporter Stacy Drohosky (am) and Debra Bonk (pm).) (nac)**


**2:11–cr–00077–PPS–APR–1 Notice has been electronically mailed to:**

David E Vandercoy     david.vandercoy@valpo.edu

Arlington J Foley     arlingtonfoley@att.net

Mark A Psimos     psimoslaw@airbaud.net

Gojko Kasich     gkasich@crownlaw.com, gkasich@gmail.com

Scott L King     sking@scottkinggroup.com, dwilliams@scottkinggroup.com

James N Thiros     jim@thiros.com, lynn@thiros.com

Thomas W Vanes     tom.vanes@sbcglobal.net, b.lynneadams@yahoo.com

Ihor Alexander Woloshansky     ihorlawyer@hotmail.com

R Brian Woodward     rbwoodward@wbbklaw.com, carolb@wbbklaw.com

John Maksimovich     criminallaw@johnmaksimovich.com

Visvaldis P Kupsis     vpkupsis@hotmail.com

Sheldon B Nagelberg     sbnagelberglaw@att.net

John E Martin – FCD     john_martin@fd.org

Adam Tavitas     Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander     jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele     ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst     kre@braje–nelson.com

Bryan M Truitt     bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis     theislaw@aol.com

Robert L Rascia     rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger     pjeffslaw@aol.com

2604

Matthew N Fech    mnf@fech−law.com

Pablo DeCastro    pdecastro@attorneydecastro.com, ysierra@rascia−decastro.com

Dean R Lanter − AUSA    dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov,
janet.eisenmann@usdoj.gov

David J Nozick − AUSA    David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov,
janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson    attorneyrmj@gmail.com

Bruce R Hegyi − AUSA    bruce.hegyi@usdoj.gov

**2:11−cr−00077−PPS−APR−1 Notice has been delivered by U.S. Mail or other means to:**

```
MIME-Version:1.0
From:CMECFinnd@innd.uscourts.gov
To:CMECFinnd@localhost.localdomain
Bcc:
--Case Participants: Bryan M Truitt (bryan@tblawyers.com, sherrie@tblawyers.com), David J
Nozick - AUSA (david.nozick@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov,
susan.devries@usdoj.gov, usainn.ecfcivil@usdoj.gov), Kurt R Earnst (kre@braje-nelson.com),
Paul Jeffrey Schlesinger (pjeffslaw@aol.com), Pablo DeCastro
(pdecastro@attorneydecastro.com, ysierra@rascia-decastro.com), Sheldon B Nagelberg
(sbnagelberglaw@att.net), Thomas W Vanes (b.lynneadams@yahoo.com,
tom.vanes@sbcglobal.net), Richard C Wolter (b.lynneadams@yahoo.com), John T Theis
(theislaw@aol.com), Adam Tavitas (adtavitas@aol.com, b.lynneadams@yahoo.com), Dean R
Lanter - AUSA (dean.lanter@usdoj.gov, janet.eisenmann@usdoj.gov,
usainn.ecfcivil@usdoj.gov), John E Martin - FCD (john_martin@fd.org), Scott L King
(dwilliams@scottkinggroup.com, sking@scottkinggroup.com), Mark A Psimos
(psimoslaw@airbaud.net), Matthew N Fech (mnf@fech-law.com), Ihor Alexander Woloshansky
(ihorlawyer@hotmail.com), James N Thiros (jim@thiros.com, lynn@thiros.com), Robert L
Rascia (rrascia@rascia-decastro.com, ysierra@rascia-decastro.com), Gojko Kasich
(gkasich@crownlaw.com, gkasich@gmail.com), Arlington J Foley (arlingtonfoley@att.net),
Roxanne Mendez Johnson (attorneyrmj@gmail.com), Visvaldis P Kupsis (vpkupsis@hotmail.com),
Stephen Edward Scheele (pkd@gk4law.com, ses@gk4law.com), Jack Friedlander
(jack@jackfriedlander.com, office@jackfriedlander.com), Bruce R Hegyi - AUSA
(bruce.hegyi@usdoj.gov), R Brian Woodward (carolb@wbbklaw.com, rbwoodward@wbbklaw.com),
John Maksimovich (criminallaw@johnmaksimovich.com), David E Vandercoy
(david.vandercoy@valpo.edu), Magistrate Judge Andrew P Rodovich
(rodovich_chambers@innd.uscourts.gov, ruth_nagy@innd.uscourts.gov), Chief Judge Philip P
Simon (denise_woodside@innd.uscourts.gov, jacob_hamann@innd.uscourts.gov,
lauren_schwartz@innd.uscourts.gov, mira_serrill-robins@innd.uscourts.gov,
noel_collins@innd.uscourts.gov, philip_simon@innd.uscourts.gov)
--Non Case Participants: Matthew D Soliday (office@matthewsolidaylaw.com)
--No Notice Sent:

Message-Id:2692787@innd.uscourts.gov
Subject:Activity in Case 2:11-cr-00077-PPS-APR United States of America v. Briseno et al
Jury Trial
Content-Type: text/html
```

### U.S. District Court Northern District of Indiana [LIVE]

### USDC Northern Indiana

## Notice of Electronic Filing

The following transaction was entered on 1/22/2015 at 11:53 AM EST and filed on 1/20/2015

| | |
|---|---|
| **Case Name:** | United States of America v. Briseno et al |
| **Case Number:** | 2:11–cr–00077–PPS–APR |
| **Filer:** | |
| **Document Number:** | 1353(No document attached) |

**Docket Text:**
 **POTENTIAL–JUROR SELECTION (DAY 6) as to Juan Briseno held on 1/20/2015 before Chief Judge Philip P Simon. Parties present as previously noted. Twenty–two venire persons summoned, 13 appear. The panel is sworn to answer inquiry/voir dire by court and counsel. Potential jurors proceed through the voir dire process. Eight potential jurors are placed in the potential–juror pool to return at a later date for further selection proceedings. The trial is predicted to begin February 2, 2015. All other potential–jurors are excused for cause. At the**

**conclusion of the day the potential jurors are instructed to not discuss this case nor to do any research on this case. Other matters/discussions: Defense objection to portions of the Govt's power point presentation to be used during opening statement. Govt will provide individual slides they intend to use to the court for ruling. Discussion on witnesses for trial as to BOP, local or USM custody. Govt will assist defense in determining custody status of each witness. Defense to provide a writ to the court in a timely manner for any witnesses in BOP custody. Discussion on letter of excuse provided to the court by potential–juror #73 (previously selected for juror pool). Court determines that juror #73 shall remain in the juror pool subject to re–evaluation after potential–juror selection process completed and the start of trial. Defendant REMANDED to custody of US Marshal.(Court Reporter Stacy Drohosky (am) and Debra Bonk (pm).) (nac)**

**2:11–cr–00077–PPS–APR–1 Notice has been electronically mailed to:**

David E Vandercoy    david.vandercoy@valpo.edu

Arlington J Foley    arlingtonfoley@att.net

Mark A Psimos    psimoslaw@airbaud.net

Gojko Kasich    gkasich@crownlaw.com, gkasich@gmail.com

Scott L King    sking@scottkinggroup.com, dwilliams@scottkinggroup.com

James N Thiros    jim@thiros.com, lynn@thiros.com

Thomas W Vanes    tom.vanes@sbcglobal.net, b.lynneadams@yahoo.com

Ihor Alexander Woloshansky    ihorlawyer@hotmail.com

R Brian Woodward    rbwoodward@wbbklaw.com, carolb@wbbklaw.com

John Maksimovich    criminallaw@johnmaksimovich.com

Visvaldis P Kupsis    vpkupsis@hotmail.com

Sheldon B Nagelberg    sbnagelberglaw@att.net

John E Martin – FCD    john_martin@fd.org

Adam Tavitas    Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander    jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele    ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst    kre@braje–nelson.com

Bryan M Truitt    bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis    theislaw@aol.com

Robert L Rascia    rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger    pjeffslaw@aol.com

Matthew N Fech    mnf@fech–law.com

Pablo DeCastro    pdecastro@attorneydecastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA    dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov,
janet.eisenmann@usdoj.gov

David J Nozick – AUSA    David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov,
janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson    attorneyrmj@gmail.com

Bruce R Hegyi – AUSA    bruce.hegyi@usdoj.gov

**2:11–cr–00077–PPS–APR–1 Notice has been delivered by U.S. Mail or other means to:**

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

UNITED STATES OF AMERICA,

        **Plaintiff**

**vs**

**JUAN BRISENO,**

        **Defendant**                 **CAUSE NO:   2:11-CR-77**

## NOTICE OF REBUTTAL EXPERT WITNESSES

Comes now Defendant Juan Briseno, by counsel John Maksimovich and Arlington Foley, and provide Notice to the government of Defendant's rebuttal expert witnesses.

1.      Mark Bezy, a former Federal BOP Warden to address the Federal Bureau of Prisons' capacity to safely house the defendant in rebuttal to the government' assertion that Defendant is a future danger. (Mark Bezy's CV is attached hereto.)

2.      Tom Reidy, Ph.D., ABPP, to assess the probability of Defendant's future violence in a Federal Bureau of Prison's setting in rebuttal to the government's assertion that Defendant is a future danger. (Tom Reidy's CV is attached hereto.)

3.      Lance Williams, Ph.D., a gang expert, to rebut the government's assertion that the Imperial Gangsters are a gang operating in the fashion described by the government in its indictment and throughout these proceedings. (Lance Williams' CV is attached hereto.)

4.      John Nixon, a ballistics expert to examine the government's ballistics evidence and rebut the government's ballistics evidence. (John Nixon's CV is attached hereto.)

**WHEREFORE**, Defendant Juan Briseno respectfully requests the Court accept his Notice of Rebuttal Expert Witnesses and for all other just and proper relief.

**Respectfully submitted:**

/s/ *Arlington Foley*
_____

Arlington Foley /#6905-45
Attorney For Defendant
1942 North Main Street
Crown Point, IN 46307
PH: 219.661.1200
FX: 219.661.1205

/s/ *John Maksimovich*
_____

John Maksimovich /#9950-45
Attorney For Defendant
1946 North Main Street
Crown Point, IN 46307
PH: 219.663.1900
FX: 219.663.1908

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

UNITED STATES OF AMERICA,

                **Plaintiff**

**vs**

**JUAN BRISENO,**

                **Defendant**               **CAUSE NO:   2:11-CR-77**

**CERTIFICATE OF SERVICE**

I hereby certify that on January 23, 2015, I electronically filed:

*NOTICE OF REBUTTAL EXPERT WITNESSES*

with the Clerk of the Court using the CM/ECF system, which sent notification of such filing to the following:

| | |
|---|---|
| David J. Nozick | Bruce Hegyi |
| Assistant United States Attorney | Assistant United States Attorney |

and I hereby certify that I have mailed by United States Postal Service, the document to the following non-CM/ECF participants:

        N/A

By:   /s/ *John Maksimovich*

           John Maksimovich /#9950-45
           Attorney For Defendant
           1946 North Main Street
           Crown Point, IN 46307
           PH: 219.663.1900
           FX: 219.663.1908
           E-Mail: criminallaw@johnmaksimovich.com

# MARK A. BEZY

3587 E. Sierrita Road ■
San Tan Valley, AZ 85243
Home: 480-588-5835 ■ Cell: 330-559-6079 ■ Email: markabezy@gmail.com

Mark A. Bezy and Associates LLC is a prison system consulting company specializing in prison management, death row issues and conditions of confinement. With over thirty years of experience, I bring you the expertise for consulting assignments in:

- Correctional institution administration,

- Facility activation, operation and management, including super-maximum security management,

- Management of violent offenders in an open population and controlled environment,

- Consultations with the military, state government and U.S. Army correctional systems,

- Inmate transportation and movement between facilities,

- Inspection and assessment of inmates, facilities and staff,

- Initiation and management of profitable work programs,

- Staffing and inmate education,

- Prison gang / security threat group (STG) management,

- Wardens and correctional managers training.

- Management and prevention of institutional disturbances / crisis management,

- Prison privatization transactions and productivity,

- Render an opinion and testify to the prison system's ability to house inmates and prevent or minimize a risk to other inmates, prison personnel and the community.

- Management of all aspects of a federal execution.

Special assignments and accomplishments during my career include:

- Reviewed over 2,000 Use of Force incidents to ensure compliance, making recommendations for corrective action.        1985-2006

- Developed positive classification program for housing violent behavior problem inmates. Assisted in deploying the system throughout the Bureau of Prisons.        1992-2006

- Classified and placed inmates based on behavior in high security areas relative to adjustment and control required to function in population.        1983-2006

Case: 15-2347     Document: 35          Filed: 07/27/2016       Pages: 4186
Case 2:11-cr-00077-PPS-APR: Document 1559   Filed 01/23/15   Page 4 of 32

- Chaired a number of After Action fact finding committees to examine the causal factors leading up to serious incidents, homicides and disturbances. Findings and recommendations were routed agency wide to prevent reoccurrence of the incidents at other institutions. Appointed as a member of the Director's Board of Inquiry to examine circumstances surrounding the administrative collapse of established procedure surrounding an inmate death.                                                    1987-2006

- Representative on the Federal Bureau of Prisons California Prison Gang Task Force.                                                        1986-1987

- Oversaw the Control Unit Due Process Hearing Program from initial review assessment, presentation to Regional Director and recommending placement or alternative options for the Bureau of Prisons.                                         1995-1999

- Administered the disciplinary transfer program, including all disciplinary transfers, close supervision and protective custody cases. Total of 4,000 cases.                                                  1995-1999

- Member of the Review / Classification Committee for the movement of high security inmates through the step-down program at USP Marion.                                                    1992-1995

Based on these highlights and those detailed in my attached résumé, my qualifications would be a strong match for assisting with the challenges you face in prison or inmate management. My compensation schedule is $175 per hour, plus out of pocket expenses for travel, meals and lodging. I look forward to meeting with you to discuss how my qualifications can add value to your case management.

Respectfully submitted,


Mark A. Bezy

Enclosure

# THOMAS J. REIDY, Ph.D., ABPP

*Curriculum Vitae*

## Personal Information

|  |  |
|---|---|
| Date of Birth: | March 11, 1947 |
| Address: | 154 Central Avenue, Salinas, CA 93901 |
| Tel/Fax: | (831) 757-6673 / 757-1646 |

## Education

Undergraduate: 1968 BS Biology, Fairfield University, Fairfield, CT

Graduate: 1973 MA Clinical Psychology, DePaul University, Chicago, IL

1976 Ph.D. Clinical Psychology, DePaul University, Chicago, IL

Certification: Board Certified (Forensic), American Board of Professional Psychology, 1995

## Professional Experience

1972-1973: Internship - Singer Mental Health Center & Rockford Memorial Hospital, Rockford, IL

1974-1975: DePaul University Mental Health Center Fellowship

1974-1975: Consultant to House of Good Shepherd for delinquent adolescents

1975-1977: Staff Psychologist - Rehabilitation Institute of Chicago, Evaluation & treatment of brain-injured & physically handicapped adults & children

1977-1980: Community Hospital of the Monterey Peninsula, Staff Psychologist: Evaluation & treatment of inpatients & outpatients exhibiting a variety of psychological, neuropsychological, & medical diagnoses

1980: Monterey County Office of Education, Consultant to AB Ingham School: Behavior management of brain damaged and developmentally delayed students

1980-1981: Western Pulmonary Services, Consulting Psychologist

1980-1981: Community Hospital of the Monterey Peninsula Substance Abuse Program, Consulting Psychologist: Psychological & neuropsychological assessment & treatment

1

# THOMAS J. REIDY, Ph.D., ABPP

*Curriculum Vitae*

1990-92:  Steinbeck Chemical Dependency Treatment Program,
Community Hospital of Salinas, Consulting Psychologist

1985-1994:  US Army, Fort Ord, CA, Consultant

- *Department of Psychology*
- *Trial Counsel (Prosecution)*
- *Defense Counsel*

2007-Present: US Air Force, Staff Judge Advocate Office-Consultant

- *Trial Counsel (Prosecution)*
- *Defense Counsel*

1980-Present: Independent Practice

- *Forensic assessment of juveniles & adults: Criminal, dependency, civil proceedings*
- *Court appointed expert forensic psychologist for Monterey, Santa Cruz & San Benito Counties:*
  - Violence risk assessment
  - Sex offender risk assessment
  - Mental health factors for sentencing evaluations
  - Competence for trial
  - Criminal responsibility
  - Mental capacity
- Expert forensic psychologist: Federal and state capital homicide cases
  - Violence risk assessment
  - Developmental risk assessment

# THOMAS J. REIDY, Ph.D., ABPP

*Curriculum Vitae*

1995-Present:  Law Enforcement Psychological Services, Inc.

- *Psychological screening of police & public safety applicants*

- *Critical Personnel Consulting: Bank of America*

2006-Present  South Bay Regional Public Safety Training Consortium

- *Instructor, Background Investigators Course*

2006-Present  Monterey County Sheriff's Office & Soledad Police Dept.

- *Post Shooting Fitness for Duty Evaluations*

## Professional Recognition

1993 *Nelson Butters Research Award*
Presented by the National Academy of Neuropsychology for research contributions to the field of Clinical Neuropsychology

## Licensure and Board Certification

California State License PSY 5575

Illinois State License 0071-002109

Board Certified 1995: American Board of Professional Psychology (Forensic)

## Professional Memberships

Fellow of the American Academy of Forensic Psychology

American Psychological Association

- *Law & Psychology Division*

American Association for Correctional & Forensic Psychology

## Community and Teaching Activities

- Forensic psychology lectures at Monterey College of Law

3

2615

**THOMAS J. REIDY, Ph.D., ABPP**

*Curriculum Vitae*

- Continuing Education for Attorneys: National Legal Aid Assn.

- Invited Address, California Public Defenders Association, 1995

- Invited Address: Monterey County Public Defenders 2005

- Invited Address, Monterey County Sheriff's Department, 1997 & 1998

- Invited Address, California County Counsel's Association, 1997

- Invited Address, Santa Cruz County Sexual Assault Investigators, 2000

- Invited Address, Monterey County Family Law Attorneys, 2005

- Instructor-Background Investigator's Course: South Bay Regional Public Safety Training Consortium, 2006-present

- Invited Continuing Education Lecture: American College of Professional Neuropsychology, Las Vegas, NV, 2010

- Invited Address: Nevada Bar Association Annual Meeting, Born to be Bad? Developmental Pathways to Resilience or Deviance, Monterey, CA, June 2010

- Invited Continuing Education Lecture: National Academy of Neuropsychology, What the Forensic Neuropsychologist Needs to Know About Death Penalty Litigation: Research, Ethics, and Professional Issues, Vancouver, BC, Canada, October 2010

- Invited Address: Staff Judge Advocate Office, Causes and correlates: Violence, domestic violence, and stalking, Tyndall Air Force Base, FL, December, 2011

## Conference Presentations

> *Reidy, T., & Tracy, R. (1974, May)*
> **The effects of neonatal illness and separation from mothers on subsequent maternal attentiveness.**
> Paper presented at the Midwest Psychological Association Annual Convention, Chicago, IL.

> *Reidy, T., & Lamb, W. (1976, April)*
> **S.O.A.P. System:  A proposed model of parent education.**
> Paper presented at the American Personnel and Guidance Association National Convention, Chicago, IL.

4

**THOMAS J. REIDY, Ph.D., ABPP**

*Curriculum Vitae*

*Reidy, T. (1976, April)*
**Child abuse: A problem in the schools.**
Paper presented at the American Personnel and Guidance Association
National Convention, Chicago, IL.

*Reidy, T., McLean, I., & Toerge, J. (1976, November)*
**Motivational factors for selecting the specialty of Physical Medicine
and Rehabilitation.**
Paper presented at the American Congress of Rehabilitation Medicine,
San Diego, CA.

*Reidy, T. (1977, November)*
**A case study of appropriate eating behavior in a rehabilitation
setting.**
Paper presented at the American Congress of Rehabilitation Medicine,
San Diego, CA.

*Reidy, T. (1977, May)*
**Accountability in the delivery of psychological services in a pediatric
hospital setting.**
Paper presented at the Association for the Care of Children in Hospitals,
Detroit, MI.

*Reidy, T. (1978, April)*
**Establishing a behavioral treatment approach in a rehabilitation
setting.**
Paper presented at the Western Psychological Association, San
Francisco, CA

*Reidy, T. (1979, May)*
**Psychological Child Abuse.**
Paper presented at the Western Psychological Association, San Diego,
CA.

*Reidy, T. (1983, June)*
**Forensic applications of psychological principles.**
Paper presented at DePaul University, Department of Psychology and La
Rabida Children's Hospital, Chicago, IL.

*Carstens, C., & Reidy, T. (1985, February)*
**Behavior problems discussed in pediatric settings: Do researchers
study the problems pediatricians confront?**
Paper presented at the American Psychological Association Annual
Convention, San Francisco, CA.

5

# THOMAS J. REIDY, Ph.D., ABPP

*Curriculum Vitae*

*Reidy, T., Silver, R., & Carlson, A. (1987, August)*
**Child custody decisions:  A survey of judges.**
Paper presented at the American Psychological Association Annual
Convention, New York, NY.

*Reidy, T., Bowler, R.M., Pedroza, G.I., & Rauch, S.S. (1988, August)*
**Neuropsychological sequelae of pesticide exposure.**
Paper presented at the American Psychological Association Annual
Convention, Atlanta, GA.

*Rauch, S.S., Bowler, R.M., Reidy, T., & Pedroza, G.I. (1989)*
**Neuropsychological symptoms one year following neurotoxic
exposure and after award of compensation.**
Proceedings of the 8th Annual Meeting of the National Academy of
Neuropsychology, 4, 152-153.

*Reidy, T. (1989)*
**Reaction time slowing after solvent exposure.**
Paper presented at the American Psychological Association Annual
Convention, New Orleans, LA.

*Reidy, T., & Bolter, J. (1990, November)*
**Neuropsychological toxicology of Methylene Diphenyl Diisocyanate.**
Paper presented at the Annual Meeting of the National Academy of
Neuropsychology, Reno, NV.

*Reidy, T., & Bolter, J. (1991, August)*
**Long-term outcome after exposure to Methylene Diphenyl
Diisocyanate.**
Paper presented at the American Psychological Association Annual
Convention, San Francisco, CA.

*Reidy, T. (1997, August)*
**Legal issues in police and public safety fitness for duty evaluations.**
Paper presented at the American Psychological Association Annual
Convention, San Francisco, CA

## Peer Reviewed Professional Publications

*Reidy, T. (1977)*
**The aggressive characteristics of abused and neglected children.**
Journal of Clinical Psychology, 33 (40), 1140-1145.

*Reidy, T. (1979)*

6

# THOMAS J. REIDY, Ph.D., ABPP

*Curriculum Vitae*

**Teaching appropriate eating behavior in a rehabilitation setting: Case study.**
Archives of Physical Medicine, 60, 226-230.

*Reidy, T., Cotler, S., Tracy, R., & Anderegg, T. (1980)*
**Child abuse and neglect:  Cognitive, social and behavioral correlates.**
In J. Money and G.J. Williams (Eds.), Traumatic Abuse and Neglect of Children at Home.  Baltimore, MD:  John Hopkins University Press.
*Reidy, T., Silver, R., & Carlson, A. (1989)*
**Child custody decisions:  A survey of judges.**
Family Law Quarterly, 23 (1), 75-87.

*Reidy, T., & Carstens, C. (1990)*
**Stability of the Millon Adolescent Personality Inventory.**
Journal of Personality Assessment, 55, 692-697.

*Reidy, T., Bowler, R.M., Rauch, S.S., & Pedroza, G.I. (1992)*
**Pesticide exposure and neuropsychological impairment in migrant farm workers.**
Archives of Clinical Neuropsychology, 7, 85-95.

*Reidy, T., & Hochstadt, N. (1993)*
**Attribution of blame in incest cases:  A comparison of mental health professionals.**
Child Abuse and Neglect, 17, 371-381.

*Reidy, T., Bolter, J., & Cone, J. (1994)*
**Neuropsychological sequelae of methyl bromide:  A case study.**
Brain Injury, 8 (1), 83-93.

*Cunningham, M. D., & Reidy, T. J. (1998)*
**Integration of base rate data in violence risk assessment at capital sentencing.**
Behavioral Sciences and the Law, 16, 71-95.

*Cunningham, M. D., & Reidy, T. J. (1998)*
**Antisocial personality disorder and psychopathy:  Diagnostic dilemmas in classifying patterns of antisocial behavior in sentencing evaluations.**
Behavioral Sciences and the Law, 16, 333-351.

*Cunningham, M. D., & Reidy, T. J. (1998)*
**Antisocial personality disorder versus psychopathy as diagnostic tools.**

7

# THOMAS J. REIDY, Ph.D., ABPP

*Curriculum Vitae*

Prosecutors Brief, California District Attorneys Association, Vol. XX, No. 4, 9-11.

*Cunningham, M. D., & Reidy, T. (1999)*
**Don't confuse me with the facts:  Common errors in violence risk assessment at capital sentencing.**
Criminal Justice and Behavior, 26, 20-43.

*Reidy, T.J., Cunningham, M. D., & Sorensen, J. R. (2001)*
**From death to life:  Prison behavior of former death row inmates in Indiana.**
Criminal Justice and Behavior, 28, 62-82.
*Cunningham, M.D., & Reidy, T. J.* (2001). **A matter of life or death: Special considerations and heightened practice standards in capital sentencing evaluations.**
Behavioral Sciences and the Law, 19, 473-490.

*Cunningham, M. D., & Reidy, T. J. (2002)*
**Violence risk Assessment in federal capital sentencing: individualization, generalization, relevance and scientific standards.**
Criminal Justice and Behavior, 29, 512-537.

*Cunningham, M. D., Sorensen, J. R. & Reidy, T. J., (2004)*
**Revisiting future dangerousness revisited: Response to DeLisi and Munoz (2003).**
Criminal Justice Policy Review, 15, 365-376.

*Cunningham, M. D., Sorensen, J. R. & Reidy, T. J., (2005)*
**An actuarial model for assessment of prison violence.**
Assessment, 12, 40-49.

*Cunningham, M. D., Reidy, T. J., & Sorensen, J. R.  (2005)*
**Is death row obsolete: A decade of mainstreaming death-sentenced inmates in Missouri.**
Behavioral Sciences and the Law, 22, 1-14.

*Cunningham, M. D., Reidy, T. J., & Sorensen, J. R.  (2008)*
**Assertions of "future dangerousness" at federal capital sentencing: Rates and correlates of subsequent prison misconduct and violence.**
Law and Human Behavior, 322, 1-14, 46-63.

*Cunningham, M.D., Sorensen, J.R., & Reidy, T.J. (2009)*
**Capital jury decision-making: The limitations of predictions of future violence.**
Psychology, Public Policy and Law, 15, 223-256.

**THOMAS J. REIDY, Ph.D., ABPP**

*Curriculum Vitae*

*Reidy, T.J., Sorensen, J.R., & Cunningham, M.D.* (2012). **Community violence to prison assault: A test of the behavioral continuity hypothesis**
*Law and Human Behavior, 36, 356-363.*

*Reidy, T.J., Sorensen, J.R., & Cunningham, M.D.* (2013)
**Probability of Acts of future violence: A test of jury accuracy in Oregon.**
*Behavioral Sciences and the Law, 32, 286-305.*

9

Curriculum Vitae

2014

LANCE WILLIAMS, PH.D.
Associate Professor and Assistant Director
Jacob H. Carruthers Center for Inner City Studies
Northeastern Illinois University
700 E. Oakwood Boulevard
Chicago, Illinois. 60653

Lwillia1@neiu.edu

773 256-2145

## CURRENT and PREVIOUS POSITIONS

2010-present:     Associate Professor, Inner City Studies. Northeastern Illinois University, Chicago, IL.

Classes: **Inner City Studies Education-** Critical Analysis of Hip Hop Culture, History and Culture of Ethnic Groups, Inner City Organization and Institution Building, Inner City Development, **Sociology-**Sociology of Violence, Sociology of Health and Illness, Sociology of the Black Family and Introduction to Sociology

2004-present:     Assistant Director, Northeastern Illinois University's Jacob H. Carruthers Center for Inner City Studies, Chicago, IL.

2012-2013:     Associate Chair, Northeastern Illinois University. Department of Educational Inquiry and Curriculum Studies, Chicago, IL.

2010-2013:     Visiting Scholar, African American Male Resource Center. Chicago State University. Chicago, IL.

Jan-Jul 2013:     Interim Chair, Northeastern Illinois University. Department of Educational Inquiry and Curriculum Studies, Chicago, IL.

2010-2011:     National Coordinator, African American Male Initiative. Presidents' Roundtable, Dallas, TX.

2006-2010:     Assistant Professor, Inner City Studies. Northeastern Illinois University, Chicago, IL.

| EDUCATION |
|---|

Ph.D.    Public Health Sciences
         University of Illinois-Chicago, Chicago, IL.  2004

         Dissertation Research: Cultural intervention and perceptions of
         violence-related behaviors: A Role Strain and Adaptation Study of
         Adolescents

M.A.     Inner City Studies Education
         Northeastern Illinois University, Chicago, IL. 1995.

B.A.     Applied Behavioral Science
         National-Louis University, Chicago, IL. 1994.

| RESEARCH EXPERIENCE |
|---|

<u>Principal Investigator</u> (Under review) Northeastern Illinois University

I have proposed to the Illinois Department of Corrections an ethnographic study that examines the contributing factors that lead to disproportionate homicide among young, African American males. I have proposed to find out how perpetrators of homicide perceive the circumstances that led to their crime(s). Given the multitude of factors that contribute to homicide—difficult concepts to measure in a quantitative way—I will use qualitative techniques, in particular, an ethnographic/focused interview process.

<u>Principal Investigator</u> (2012-Present) Northeastern Illinois University

I am the Principal Investigator of the Community-based Participatory Research Initiative that tracks—both historically and in real time—violent and nonviolent crime in Chicago. Chicago Police Department (CPD) retrospective data—2000 to present—is being used along with appropriate multivariate techniques to develop theories and policies that are relevant to the role that violence prevention programs play in preventing various types of crime. In this study the Chicago Police Department (CPD) reports its disaggregated data on violence and crime at the beat-level on a monthly basis.  The monthly reports include CPD crime indexes which are disaggregated by age, sex, race/ethnicity and beat-level.

<u>Research Associate</u> (2010-2012) The Illinois African American Family Commission

I conducted research with the Illinois African American Family Commission (AAFC) that analyzed data collected from various Commission surveys. In 2010 I served as PI for an AAFC study that paid particular attention to the mediating variables, e.g., identity, empathy, social normative beliefs, social cohesion, collective efficacy, intentions, that led to violence or risky behaviors associated with violence, e.g., physical fighting, weapon carrying, threats, gang activity.

2623

Lance Williams, Vita 14

The study presented an excellent opportunity to examine a neglected area in the field of adolescent violence prevention, perceptions of personal safety and violence among African American youth. Furthermore, it was important to examine youth perceptions of personal safety and violence because these perceptions may be in the causal pathway of violence-related behaviors. Understanding these perceptions may be relevant to the modification of the targeted behaviors that may, in turn, help to guide the development of more effective youth violence interventions. Findings of this study proved to be beneficial to interventionists who seek to develop culturally appropriate risk reduction programs for youth.

National Coordinator (2010-2011) African American Male Initiative

In 2010 I was PI for a study that examined Community College Initiatives Focused on Advancing the Recruitment, Retention and Graduation Rates Among African American Males. Based on the study I developed a compendium to present the best practices found in programs designed to enhance the academic achievement of African American males enrolled in 2-year institutions.

Principal Investigator (01/2007-08/2008) The State of Illinois Ceasefire Evaluation

Evaluated the effectiveness of the Chicago Project for Violence Prevention CeaseFire program, a State of Illinois funded violence reduction initiative. The purpose of the study was to find out what main "stakeholders" of this violence reduction program like individuals who reside in CeaseFire's service areas, faith leaders, victims of violence, elected officials and the police had to say about the program. The evaluation used qualitative techniques, in particular, an ethnographic/focused interview process.

Principal Investigator (03/2006-2008) Northeastern Illinois University Grow Your Own Teachers Program

The Grow Our Own Teacher Program (GYO) establishes an initiative to encourage and support paraprofessionals, parents, and other active community members in becoming certified as teachers. GYO seeks to stimulate the development of consortia made up of an institution that prepare teachers (NEIU), a targeted school district (CPS), and a community organization. Working together, these entities are to identify paraeducators and parents who have been leaders in schools with hard-to-staff positions and provide these individuals with the financial and other support they will need to complete teacher preparation programs. The new teachers are then to be placed in positions in the targeted schools. My role as the PI is to evaluate and develop programmatic matrices.

Principal Investigator (04/2004) for a study with Whitney Young High School Social Work Department, Chicago, Illinois. I conducted a focus group study that examined adolescent males' perceptions of manhood. The purpose of the study is to collect data that was used to develop a rite of passage program for at-risk male students at Whitney Young. The study involved 8 focus groups that included over 50 freshmen through senior male students.

3

2624

<u>Research Associate</u> (2000-2006) Institute for Research on Race and Public Policy Research. University of Illinois-Chicago.

I conducted ethnographic/focused interview research of cultural interventions designed to reduce risky behaviors among inner-city African American youth at the Institute for Research on Race and Public Policy. Having completed the study, my goal now is to further the study by placing the findings in the context of urban policy and health disparities among African American youth.

<u>Research Assistant</u> (1996-1997) on the Aban Aya Youth Project at the University Illinois-Chicago, Prevention Research Center.

Research Project: to develop and then evaluate a school-based program designed to promote abstinence from sex, teach students how to avoid drugs and alcohol, and to teach them how to resolve conflicts non-violently.

## PUBLICATIONS

Williams, L. & Bowman, P (In Progress). Re-Tooling Urban Youth for Adaptive Coping (working title).

Williams, L. (2013). Retooling Young Men of Color for Success in School Settings: A Cultural Toolkit Model for School Counselors. *Transforming the Educational Experience of Young Men of Color: School Counseling Series and the companion workbook.* Volume IV, The College Board Advocacy & Policy Center. National Office for School Counselor Advocacy (NOSCA). Washington, DC.

Moore, N & Williams, L. (2011). The Almighty Black P Stone Nation: The Rise, Fall and Resurgence of an American Gang. Chicago, Illinois. Lawrence Hills Books.

Mendenhall, R, Harwood, S, Williams, L et. al. (2011). Rethinking 21st Century Urban Transformations: Race and the Ecology of Violence. SBE 2020 Report Rebuilding the Mosaic. Washington, DC. National Science Foundation.

Williams, L. (2011). The Breaking Barriers Report. Chicago, IL. The African American Family Commission.

Williams, L. (2010). Community College Initiatives Focused on Advancing the Recruitment, Retention and Graduation Rates Among African American Males. Dallas, Texas. The President's Roundtable.

4

2625

Williams, L. (2010). Cultural interventions for reducing violence among young, African American males. In W. Johnson (Ed). Social Work with African-American Males. New York, New York: Oxford University Press.

Williams, L. (2010). Hip-hop as a site of public pedagogy. In B. Schultz, J. Sandlin and J. Burdick (Eds). In Handbook of Public Pedagogy: Education and Learning beyond Schooling. Routledge.

Williams, L. (2009). Culture & Perceptions of Violence-related Behaviors Among Adolescents: A Role Strain and Adaptation Model. Koln, Germany. Lambert Publishing.

Williams, L. & Alexis-Bivens, S. (2008). The Father's Toolkit: A Curriculum Guide for Reconnecting Incarcerated and Formerly Incarcerated Fathers With Their Children. Springfield, Illinois. Illinois Department of Human Services.

## GRANTS

<u>Principal Writer</u> (2012) Black United Fund of Illinois' (BUFI) Safety Net Works Grant.

The Safety Net Works Grant funded ($50,000) by the State Illinois to support the CONNECTS @ South Shore Community-based Participatory Research Initiative.

<u>Principal Writer</u> (2012) Chicago State University.

The Contiguous Community Empowerment Project submitted to the State of Illinois Appropriations Committee on behalf of Chicago State University. The Contiguous Community Empowerment Project was awarded $500,000 in funding for this grant.

<u>Principal Writer</u> (January 2007) Black United Fund of Illinois' (BUFI) Safety Net Works Grant.

Safety Net Works is an initiative comprised of State of Illinois agencies and community-based organizations formed to help alleviate violence and killing in communities in Illinois. BUFI is headquartered in the South Shore community of Chicago, one of the 17 Safety Net Work target communities. As the Principal Writer of the grant I developed the Coalition of Organizational, Neighborhood and Network Empowerment through Culture, Talent and Spirituality (CONNECTS @ South Shore), a youth violence prevention initiative designed to reduce violence among youth ages 12 to 24 in South Shore. The purpose of CONNECTS is to foster community partnerships through strong relations among the youths, families, schools, faith-based organizations, businesses, parks, elected officials and community-based institutions and the Chicago Police Department in South Shore. BUFI was awarded $320,000 grant to implement CONNECTS @ South Shore.

2626

<u>Principal Writer and Program Evaluator</u>  (March 2006) The Literacy, Employment and Self-Sufficiency Project (LES)

LES seeks to provide literacy, employment and self-sufficiency programs to one hundred (100) "hard to reach" Chicago public housing residents who are significantly in need of workplace literacy and self awareness development. Funding-$150,000

<u>Co-Writer</u> (March 2006) Grow Your Own Teachers Program

The Grow Our Own Teacher Program (GYO) establishes an initiative to encourage and support paraprofessionals, parents, and other active community members in becoming certified as teachers.  GYO seeks to stimulate the development of consortia made up of an institution that prepare teachers (NEIU), a targeted school district (CPS), and a community organization (ACORN Association of Community Organizations for Reform Now). Working together, these entities are to identify paraeducators and parents who have been leaders in schools with hard-to-staff positions and provide these individuals with the financial and other support they will need to complete teacher preparation programs. The new teachers are then to be placed in positions in the targeted schools. Funding-$40,000 Planning Grant

## SCHOOL BASED INTERVENTIONS AND PROGRAMS

Walter Q. Gresham Elementary School (Chicago Public School). 1991-2001.
Developed and coordinated an all males program for identified  "at-risk" boys in grades 5 through 8.  Conducted in biweekly sessions designed to carry out conflict resolution, anger management, individual counseling and mentoring, social and cultural enrichment, decision-making skills, social competence, resistance skills and normative beliefs. The goal of this program is to reduce insubordination, fighting, gang participation, drug use and other anti-social behaviors among participants.

<u>Asa Phillip Randolph Magnet School</u> (Chicago Public School).  1991-1998
As described above.  Target Population-grades 1 through 8.

<u>Hirsch Metropolitan High School</u> (Chicago Public School).  1996-1998
As a member of the Hirsch Metropolitan High School Probation Team, I conducted a program for the most "at-risk" boys identified by the school Principal, Counselors and school Disciplinarian.  These young men were identified to participate in this mentorship program due to problems with truancy, poor grades, gang related activity and anti-social behavior.  I started with a group of (15) boys in September 1996.  By the time the school year ended, the group had mushroomed to (40) forty boys.  By 1998, the group consisted of over 100 boys.

<u>Tanner Elementary School</u> (Chicago Public School).  April 20th through June 3rd 1992.

6

2627

Planned, implemented and conducted a rites of passage program for over (100) one-hundred 4th, 5th, and 6th grade boys. The goal of the rites of passage was to introduce the participants to traditional African value systems and character development.

Jensen/Miller Scholastic Academy (Chicago Public School) 1991 through 1993.
Developed and coordinate an all males program for identified "at-risk" boys in grades 3 through 8. Conducted in biweekly sessions designed to carry out conflict resolution, anger management, individual counseling and mentoring, social and cultural enrichment, decision-making skills, social competence, resistance skills and normative beliefs. The goal of this program is to reduce insubordination, fighting, gang participation, drug use and other anti-social behaviors among participants.

Frazier Elementary School (Chicago Public Schools) 1991 through 1992.
As described above.

West Pullman School (Chicago Public Schools) Jan. 6th through Feb. 28th, 1992
Planned , implemented and coordinated the Culture Alive Program. This program consisted of over 25 visual and performing artists, a host of cultural vendors and educators who converged on the school during this period to bring each child and classroom from kindergarten to 8th grade the rich and diverse cultures of Africa. The Program culminated with a school wide taste of Africa and two assemblies.

## TEACHING EXPERIENCE

Northeastern Illinois University                1999-Present


   Inner City Studies Education Courses- A Critical Analysis of Hip-Hop Culture, History of Culture and Ethnic Groups, The Inner City Community and Inner City Organization and Institution Building

University of Illinois-Chicago                2004-2006


   Community Health Sciences Division Course- Behavioral Sciences in Public Health (Graduate Program)

National-Louis University                1999-2004


   Applied Behavioral Sciences Division Course- Methods of Inquiry in the Behavioral Sciences

7

2628

| Board Positions |
| --- |

Board Chair, Lupe Fiasco Foundation. The foundation provides inner city youth ages 14-24 with comprehensive positive youth development programming that embodies educational advancement, service learning and leadership, global capacity building and music education. 2012-Present

Board Member, The Diversifying Higher Education Faculty in Illinois Program (DFI). DFI was established by the Illinois General Assembly and signed as Public Act 093-0862 on August 4, 2004. The purpose of DFI is to increase the number of underrepresented faculty and staff in Illinois institutions of higher education and higher education governing boards. 2004-2014

Executive Committee Member, **Governor's Statewide Community Safety & Reentry Working Group.** The primary purpose of the committee is to provide recommendations for review by January 2006 for the design of a new statewide reentry system. 2004-2006

Founder/Board Chair, The Know Thyself Program INC. Chicago, IL. The Know Thyself Program, a not-for-profit community-based organization, does school-based cultural and social enrichment for inner-city youth who live in Chicago's marginalized communities. 1989-present

Member of the **Hirsch Metropolitan High School, Vernon Johns Community Academy and Fulton Elementary School Probation Management Team.** In affiliation with the I Had A Dream, Inc. and National School Services, I monitored school community safety and make recommendations for improvement to the Probation Manager. 1997 to 2000.

Chief Consultant to Chicago Public Schools-School Community Safety & Security Program at Carter Elementary School. Implemented the **Kijiji Kwa Amani** (village of Peace) **Program** designed to foster a safe environment for Carter School students. The program included the establishment and training of the Kijiji Kwa Amani Parent Patrol and conflict resolution training for a student leadership group. March 17th through June 16th, 1995.

Consultant services to Chicago Public Schools Academic and Vocational Education Department. Worked as an advisor to Nansen School on effective **Parenting in violent and drug plagued environments**. Chicago, IL. April 12th, 1994.

Consultant services to Hirsch Metropolitan High School Local School Council. Worked as an advisor to the Hirsch School Local School Council on effective approaches to dealing with **Violence and Drug Prevention Strategies**. May 19th, 1994.

8

2629

Chief Consultant and advisor to Carter School/CANAL Project Curriculum Development Committee on the **Infusion of African Centered Topics Into The Chicago Public Schools <u>Systemwide Objectives and Standards</u> At The Intermediate Level (4-5).** This committee produced five lessons in each intermediate subject area (Language Arts, Mathematics, Science and Social Studies). Carter School. Chicago, IL. May 11th through July 15th, 1993.

9

2630

Lance Williams, PhD          Gang-related Scholarship          01-15-15

Case: 15-2347    Document: 35    Filed: 07/27/2016    Pages: 4186
Case 2:11-cr-00077-PPS-APR Document 1359 Filed 01/23/15 Page 23 of 32

## Publications: Books

- Williams, L. (2009). Culture & Perceptions of Violence-related Behaviors Among Adolescents: A Role Strain and Adaptation Model. Koln, Germany. Lambert Publishing.

- Moore, N & Williams, L. (2011). The Almighty Black P Stone Nation: The Rise, Fall and Resurgence of an American Gang. Chicago, Illinois. Lawrence Hills Books

## Publications: Articles/Chapters

- Mendenhall, R, Harwood, S, Williams, L et. al. (2011). Rethinking 21st Century Urban Transformations: Race and the Ecology of Violence. SBE 2020 Report Rebuilding the Mosaic. Washington, DC. National Science Foundation.

- Williams, L. (2010). Cultural interventions for reducing violence among young, African American males. In W. Johnson (Ed). Social Work with African-American Males. New York, New York: Oxford University Press.

## Publications: Reports

- Williams, L. & Alexis-Bivens, S. (2008). The Father's Toolkit: A Curriculum Guide for Reconnecting Incarcerated and Formerly Incarcerated Fathers With Their Children. Springfield, Illinois. Illinois Department of Human Services.

- Williams, L. (2010).The Breaking Barriers Report. Chicago, IL. The African American Family Commission.

## National Presentations

- Williams, L. *The Almighty Black P Stone Nation* book talk. University of Chicago Law School. Chicago, Il. 2012

- Williams, L. *The Almighty Black P Stone Nation* book talk. University of Illinois-Chicago. Chicago, Il. 2012

In addition to my scholarly publications and studies in the field of gangs, over the past five years, I have been called on as an expert on gangs by a number of local, national and international media outlets. During this period I have had significant exposure as an invited guest on local, national and international television and radio programs to discuss gangs:

In 2009, I was featured on a French weekly foreign affairs program called "The Butterfly Effect." The show, which reaches an audience of 500,000, was broadcast on French TV Canal+, which is the European equivalent to HBO. On the show I was questioned about the Derrion Albert case and the roots of the violence on Chicago's South Side.

I was also a guest on Garrard McClendon Live, a live cable show that covers news and controversial commentary in and around Chicago. I was invited to discuss the ramifications of the 2009 tragic beating death of Derrion Albert.

I have been a guest on two New York City radio programs, WBAI 99.5 FM, Pacifica New York and WHCR-FM (90.3 FM), the Talk of Harlem, to talk about gangs and youth violence.

2012—I was an invited guest on WGN TV News to discuss problems with the Chicago Crime Commission's newly released book entitled, The Gang Book.

2012—I was an invited expert(along with Chicago Police Department Superintendent Garry McCarthy) to address the concerns and seek answers on how to deal effectively with the violence issue sweeping Chicago at the "A Plea For Peace: A Town Hall Meeting on Violence in Chicago" sponsored by Chicago's WYCC/PBS.

2012—I was featured in an In These Times series investigating the lives of African-American youth who have borne the brunt of the Great Recession. The five-part series documented the struggle of young African-American men.

**Testimony/Advisory**

Lance Williams, PhD                    Gang-related Scholarship                                01-15-15

Expert Witness—12/14, Cook County, Latin Kings, Attorneys Melinda Powers and Sandeep Basran

Expert Testimony—11/14, Cook County, Latin Kings, Attorney Danielle McCain

Advisory—3/13, Chicago, Illinois, Nathson Fields El Rukn/Black P Stone Nation, Attorneys Adrian Bleifuss Prados and Candace Gorman

Expert Testimony—3/09, Miami, Florida. Narseal Batiste, Black P Stone Nation Attorney Anna Johns

I testified for the defense in the 3rd trial of Narseal Batiste (and his small group). The trial took place in Miami. The Feds accused Narseal and his group of plotting an act of terrorism against the US. Narseal was accused of associating himself with Jeff Fort and the El-Rukns (Black-stones) in this plot. My testimony countered the prosecution's claim that the plot was El-Rukn-related.

# *A*thena *R*esearch & *C*onsulting LLC



PO Box 66, Bippus, Indiana 46713, USA.

Tel  260 344 1314

## Curriculum Vitae (v6.0, June 2013)

### Eur Ing John Nixon
CEng  BEng(Hons)  MBA  FIMechE  FCMI

## Summary

Specializing in weapons systems research, consulting, and litigation support. Technical areas include firearms, ballistics, ammunition, munitions, explosives, plus related crime & accident scene reconstruction, and intellectual property. Provided sworn testimony over 50 times in numerous US state & federal courts. Published & presented numerous research papers, and delivered many training seminars to attorneys, forensic scientists, engineers, law enforcement, and investigators. NRA Certified Range Safety Officer, Pistol & Personal Protection Instructor.

## Professional Qualifications & Memberships

2013   Member; Forensic Expert Witness Association (FEWA)
2013   Fellow; American Academy of Forensic Sciences (AAFS)
2011   Fellow; Chartered Management Institute (FCMI)
2008   Member; American Academy of Forensic Sciences (AAFS)
2005   Member; International Society of Explosives Engineers (ISEE)
2001   Professional Licensed Member of National Society of Professional Engineers (NSPE)
2001   Registered Professional Engineer with FEANI (Eur Ing) (approx 30 countries)
2000   Member; American Society of Mechanical Engineers (ASME)
1999   Fellow; Institution of Mechanical Engineers (FIMechE)
1997   Founder Member; Expert Witness Institute (MEWI)
1996   Member; Chartered Management Institute (MCMI)
1995   Vetted by the UK Law Society (expert consultant / expert witness)
1992   Member; Institute of Materials (MIM)
1992   Qualified as a Chartered Professional Engineer with the British Engineering Council (CEng)
1992   Member; Institution of Mechanical Engineers (MIMechE)

Confidntial

Confidential - Kevin McCrain IL 13 Aug

Confidential - Kevin McClain IL 13 Aug 13

## Employment History

2000 – Now   Consultant with ARC
(technical & forensic research & consulting - firearms / munitions / reconstruction)

2000 – 2004   Adjunct Professor at Indiana Institute of Technology, lecturing advanced courses on BA & BSc degree programs.

1996 - 2000   Self-employed consultant in UK (technical, forensic, and business consulting)

1986 -1999   United Kingdom Ministry of Defence, Whitehall, Westminster, London.
Scientist / professional engineer / project manager - working on guns, ammunition, missiles, rocketry, and energetic materials (explosives & pyrotechnics). Projects involved research, design, development, performance assessment, mid-life improvement, reverse engineering, and forensics.

## Academic Qualifications

1997   Henley Business School, Reading University /Henley Management College, Brunel University
Masters Degree in Business Administration (MBA)

1990   University of Greenwich, London, UK / Thames Polytechnic / Woolwich Polytechnic
Bachelor's Degree in Mechanical Engineering (BEng: - with First Class Honors).
Recognized in the US under the terms of the Washington Accord

## Supplementary Education and Training

95-97   Courtroom skills and report writing training courses from Bond Solon and The Academy of Experts.

86-99   Various internal and external training courses in areas such as safety, procurement management, space technology, desert survival, counter terrorism tactics, risk management, etc.

86-92   Various military technology and tactics training courses undertaken at **Royal Military College of Science** - RMCS (Cranfield University Defence Academy of the UK). These included explosives technology, ordnance and munitions design, IED design & construction, plus extensive training in ammunition & ballistics (internal, intermediate, external, and terminal – including wound ballistics).

1982   Gateshead Technical College, Gateshead, Tyne & Wear, United Kingdom.
Non destructive testing (NDT) technology (3 months). Radiographic, ultrasonic, MPI and dye penetrant techniques.

77-81   4 year engineering apprenticeship with British Steel Corporation. (CGLI & TEC qualifications)

## Patents / Patent Applications

GB 9214637.2 Plastic Tail Fin Unit
Describes new fin materials (and related manufacturing process) which improve long rod tank penetrator terminal performance, and reduce production costs. 9 July 1992.

2635

Copyright © 2013 ARC

GB 9216295.7 Long Range Artillery Shell
Describes several 155mm artillery shell design concepts capable of extending maximum range to 60km.
31 July 1992.

Also creator of numerous inventions that were not submitted for patent protection due to security
restrictions.

**Partial (allowable) Listing of Research Papers (UK Government 1987 - 1999)**

Sept 99     A Review of Non-Destructive Evaluation Techniques Suitable for Solid Propellant Rocket
            Motors. UK Government Publication.
Apr 99      A Review of Non-Destructive Evaluation Techniques Suitable for Solid Propellant Rocket
            Motors. UK Government Publication.

Plus **at least 18 other bound UK government research / project papers** with classified titles and
classified technical content that cannot be divulged. Individuals with appropriate security clearances may
obtain a full listing of titles, and copies, from: Defence Research Information Center, Kentigern House,
65 Brown Street, Glasgow G2 8EX, United Kingdom.

**Publications (non-government)**

Evaluation of mono-molecular surface modifiers applied to bullets and rifle barrels, and their influence on
drag, velocity, consistency, accuracy, and copper fouling. Varmint Hunter Magazine, April 1999.

Contributor to article on 32 ACP caliber suitability for self defence. American Handgunner 2002 Tactical
Annual.

Major contributor to Beltway Sniper article authored by Janet Rae-Dupree, US News & World Report,
October 2002.

Major contributor (including microscope photography) to Newsweek Special Report – 'The Sick World of
the Snipers, The Inside Story of an Epic Manhunt. Newsweek, November 4, 2002.

Major contributor to article on 'ballistic fingerprinting' by Kyle Orland, Suburban Newsline (a publication
of the University of Maryland) 2002.

An Overview of **Forensic Firearms Engineering**, Indiana Professional Engineer, Volume 69 No 6,
November / December 2006, pp14-16.

Forensic Firearms Engineering - **Blame Apportionment - Products v Operators**, Indiana Professional
Engineer, Volume 70 No 1, January / February 2007, pp13-17.

Forensic Firearms Engineering - **Toolmark Analysis**; Linking Cartridge Cases and Bullets to Individual
Firearms. Indiana Professional Engineer, Volume 70 No 2, March / April 2007, pp13-16.

Confidential - Kevin McClain II

Case: 15-2347   Document: 35   Filed: 07/27/2016   Pages: 4186

Case: 1:14-cv-00077-PPS-APR   Document: 1 filed: 01/23/15   Page: 29 of 30

Forensic Firearms Engineering - **Terminal Effects**; The Consequences of Being on the Wrong End of a Firearm. Indiana Professional Engineer, Volume 70 No 3, May / June 2007, pp11-15.

Forensic Firearms Engineering - **Shooting Incident Scene Reconstruction: Part 1** - Bullet Impact Area Identification and Interpretation. Indiana Professional Engineer, Volume 70 No 4, July / August 2007, pp13-16.

Forensic Firearms Engineering - **Shooting Incident Scene Reconstruction: Part 2** - Bullet Hole ID and Distance Determinations. Indiana Professional Engineer, Volume 70 No 5, Sept / Oct 2007, pp13-14.

Forensic Firearms Engineering - **Shooting Incident Scene Reconstruction: Part 3** - Ejection Pattern Testing & Analysis. Indiana Professional Engineer, Volume 71 No 2, Mar / Apr 2008, pp12-15.

**Forensic Engineering Analysis of Firearm Trigger Incidents**. NAFE Journal, Volume XXV, No. 2, December 2008 (Published May 2010) pp. 119 to 134.

**Forensic Engineering Analysis of Firearm Silencers**, NAFE Journal, Volume XXVI, No. 2, December 2009 (Published October 2012), pp. 39 -50.

Forensic Firearms Engineering - **Employing Hands-on Engineering Skills, Plus Engineering Theory & Calculations, to Analyze & Resolve Complex Design & Safety Liability Issues**, Indiana Professional Engineer, Volume 75 No 4, July / August 2012, pp. 13-27.


**Scientific Paper Presentations and Training Seminars Delivered**

Presented over 40 continuing education courses and scientific papers between 2001 and 2013. Subjects have included firearms, ballistics, wound ballistics, tool mark comparison, ammunition, crime /accident scene reconstruction, explosives, destructive devices. Attendees have included law enforcement, investigators, attorneys, judges, engineers, scientists, medical professionals, law and forensic science students. Courses have been approved for continuing education credit in most states.

| | |
|---|---|
| Nov 01 | **Training seminar on forensic firearms, ballistics, & wound ballistics** at University of Louisville Law School. Accredited for CLE by Kentucky Bar Association. |
| May 02 | **Lectured in forensic firearms and ballistics** at Ohio University Forensic Science School. |
| Apr 03 | **Presented a one day training seminar on forensic firearms, ballistics, & wound ballistics** to 60+ Chicago lawyers and investigators. |
| Sep 03 | **Training seminar in forensic firearms, ballistics, & wound ballistics** in Indianapolis. Accredited for CLE by Indiana Commission on Legal Education. |
| Oct 03 | **Training seminar on forensic firearms & ballistics** at DePaul University, Chicago. |
| Dec 03 | **Training seminar on forensic firearms, ballistics, & wound ballistics** in Indianapolis. Accredited for CLE by Indiana Commission on Legal Education. |
| Feb 04 | **Training seminar on forensic firearms, ballistics, & wound ballistics** in Indianapolis. Accredited for CLE by Indiana Commission on Legal Education. |
| Mar 04 | **Two training seminars on firearms, ballistics, & wound ballistics** (14 & 15 March 04). NLADA Life in the Balance conference, Memphis Tennessee. Accredited for CLE in most States. |

Copyrighted in Part    Confidential    Confidential    (RAD June 12

| | |
|---|---|
| Apr 04 | **Keynote Speaker at Emergency Nurses Association Regional Forensic Science Conference**, Memphis TN. Accredited for CLE by the Emergency Nurses Association. |
| Jan 05 | **Firearms & Ballistics for Law Enforcement**, Columbia City Sheriff's Department, Indiana. |
| Mar 05 | **Training seminar on explosives** at the NDIA Annual Conference, Chicago, IL. |
| Mar / Apr 05 | **Two training seminars on Firearms & ballistics**, at the NDIA Annual Conference, Chicago, IL. |
| Oct 05 | **Training seminar on firearms, ballistics**, and wound ballistics at Rochester Institute of Technology NY. |
| Sept 06 | **Two training seminars on firearms, ballistics, & wound ballistics at the** NDIA Conference in Washington DC. |
| Feb 07 | **Accreditation v TQM, Do We Need Either, Do We Need Both ?** Paper Presented at 59th AAFS Annual Scientific Meeting, San Antonio, TX. |
| Apr 07 | **Training Seminar on forensic firearms & ballistics**. at the 70th Annual Convention of the Indiana Society of Professional Engineers, 26 to 28 April 2007. |
| Jun 07 | **Training seminar on firearms, ballistics & wound ballistics.** Maryland Public Defender Annual Training Seminar, 14 to 16 June 2007, Potomac, MD. |
| Feb 08 | **Guru; Demon; Illusionist ? Is it Time for an Overhaul of Expert Qualification Procedures ?** Paper Presented jointly with Maryland Innocence Project at 60th AAFS Annual Scientific Meeting, Washington, DC. |
| Feb 08 | **Impulsive Legislation. Adverse Consequences of Excluding Appropriately Qualified Experts from the Law making Process.** Paper Presented at 60th AAFS Annual Scientific Meeting, Washington, DC. |
| Feb 08 | **Rush to Judgment! Do Some Forensic Scientists Jump to Conclusions, Thereby Facilitating Injustice ?** Paper Presented at 60th AAFS Annual Scientific Meeting, Washington, DC. |
| Jun 08 | **Training seminar on forensic firearms & ballistics**. Washington DC Public Defenders 6th Annual Forensic Science Conference, Gallaudet University, June 12-13 2008. |
| Jul 08 | **Forensic Engineering Analysis of Firearm Trigger Incidents**. Paper presented at NSPE / NAFE Annual Convention, Portland, Oregon. |
| Jul 08 | **Training seminar on forensic firearms, ballistics & wound ballistics**. Indiana Public Defender Counsel, Indianapolis, Indiana. |
| Feb 09 | **Time for Change? The Science & Technology Behind Firearm Trigger Mechanism Evaluation.** Paper presented at 61st AAFS Annual Scientific Meeting, Denver, Colorado. |
| Jan 10 | **Forensic Engineering Analysis of Firearm Silencers**. Paper presented at NAFE Training Seminar, New Orleans, Louisiana. |
| Feb 10 | **Tool Mark Creation and Transfer Issues in Firearms**. Paper presented at 62nd AAFS Annual Scientific Meeting, Seattle, Washington. |
| Feb 10 | **Use of Supplementary Analytical Techniques in Firearm Tool Mark Analyses**. Paper presented at 62nd AAFS Annual Scientific Meeting, Seattle, Washington. |
| Jun 10 | **Forensic Firearms & Ballistics for the legal Profession; a Continuing Education Course for Attorneys, Judges, and Professional Engineers**. Accredited by the Indiana Supreme Court Commission for Continuing Legal Education, and the Indiana Society of Professional Engineers. |
| Jan 11 | **Forensic Firearms & Ballistics for the legal Profession; a Continuing Education Course for Attorneys, Judges, and Professional Engineers**. Accredited by the Indiana Supreme Court Commission for Continuing Legal Education, and the Indiana Society of Professional Engineers. |

Confidential - Kevin McClain ALB Aug 13

Copyright © 2014 Print Confidential V6.4 June 13
Case: 15-2347 Document: 35 Filed: 07/27/2016 Pages: 4186

| Feb 11 | **Differing Perspectives on the Use of Experts in an Adversarial Litigation System**, Are Experts Misunderstood & Misused ? Are Court Appointed Experts the Ultimate Answer ? Paper Presented jointly with State of Minnesota PD at AAFS 63rd Annual Scientific Meeting, Chicago, IL. |
|---|---|
| May 12 | **Training seminar on forensic firearms, ballistics, and wound ballistics**. Missouri Public Defender Annual Training Conference, Branson, MO. |
| Aug 12 | **Forensic Firearms & Ballistics for the legal Profession; a Continuing Education Course for Attorneys & Judges**. Cincinnati, OH. Accredited for Continuing Legal Education in the State of Ohio. |
| Oct 12 | **Training seminar on firearms and ammunition technology**, NLADA Life in the Balance conference, St Louis, MO. Accredited for CLE in most States. |
| Oct 12 | **Training seminar on firearm & ammunition toolmark analysis**, NLADA Life in the Balance conference, St Louis, MO. Accredited for CLE in most States. |
| Oct 12 | **Training seminar on improvised explosive devices & destructive devices**, NLADA Life in the Balance conference, St Louis, MO. Accredited for CLE in most States. |
| Feb 13 | **Performance Evaluation of Firearm Silencers.** Paper presented at 65th AAFS Annual Scientific Meeting, Washington DC. |
| Feb 13 | **Safety Evaluation of Post Manufacture Firearm Modifications.** Paper presented at 65th AAFS Annual Scientific Meeting, Washington DC. |

## Continuing Education, Training, & Development (post 2001)

| Nov 01 | Forensic Science conference at University of Louisville Law School. |
|---|---|
| Sept 03 | Death Penalty conference, Indianapolis. |
| Oct 03 | Conference; Ballistics; from the Shop Floor to the Courtroom, DePaul University, Chicago. |
| Dec 03 | Forensic Science training seminar, Indianapolis. |
| Feb 04 | Forensic Science training seminar, Indianapolis. |
| Sept 04 | Forensic Science for Investigators, Indianapolis. |
| Apr 06 | Forensic Science Symposium, Indianapolis. |
| Apr 06 | Indiana Society of Professional Engineers (ISPE) Annual Convention, Indianapolis, IN. |
| May 06 | Advanced Defensive Pistol Course. |
| Sept 06 | SIG Factory Certified Armorer Course. |
| Oct 06 | Forensic Investigation, Dr Henry C Lee, Carmel, Indiana. |
| Feb 07 | American Academy of Forensic Sciences (AAFS) 59th Annual Scientific Meeting, San Antonio, TX. |
| Apr 07 | ISPE Annual Convention, Indianapolis IN. |
| Jul 07 | National Institute of Justice Annual Conference, Arlington VA. |
| Jul 07 | National Academy of Forensic Engineers (NAFE) Annual Conference, Denver CO. |
| Feb 08 | AAFS 60th Annual Scientific Meeting, Washington, DC. |
| Apr 08 | ISPE Annual Convention, Indianapolis, IN. |
| Jul 08 | NAFE Annual Convention, Portland, OR. |
| Feb 09 | AAFS 61st Annual Scientific Meeting, Denver, CO. |
| May 09 | ISPE Annual Convention, Indianapolis, IN. |
| Jul 09 | National Society of Professional Engineers (NSPE) Annual Convention, St Louis, MO. |

Confidential - Kevin McClain IL '13 Aug '18

2639

Case: 15-2347    Document: 35    Filed: 07/27/2016    Pages: 4186

Case: 1:12-cr-00077-PPS-APR    Document Filed: 01/23/15    Page 32 of 32

| | |
|---|---|
| Jan 10 | NAFE Training Seminar, New Orleans, LA. |
| Feb 10 | AAFS 62nd Annual Scientific Meeting, Seattle, WA. |
| May 10 | ISPE Annual Convention, Indianapolis IN. |
| Feb 11 | AAFS 63rd Annual Scientific Meeting, Chicago, IL. |
| Jan 12 | NAFE Training Seminar, Miami Beach, FL. |
| Feb 12 | AAFS 64th Annual Scientific Meeting, Atlanta, GA. |
| Oct 12 | NLADA Life in the Balance Conference, St Louis, MO. |
| Feb 13 | AAFS 65th Annual Scientific Meeting, Washington DC. |
| Jun 13 | ISPE Annual Convention, Indianapolis, IN. |

**Achievements & Activities**

*       Court qualified expert in CA, FL, IA, IL, IN, KS, KY, MA, MD, MN, NY, OH, & US Federal Courts.
*       Consulted on, and delivered reports on, firearms, ballistics, munitions, explosives cases in many other States.
*       One of the youngest people to be elected to Fellowship of the Institution of Mechanical Engineers.
*       Secretary to UK explosives safety, performance, and compatibility committees (95-98).
*       NRA Certified Range Safety Officer.
*       NRA Certified pistol and personal protection instructor.
*       SIG Factory Certified Law Enforcement Armorer (2006 to 2009)

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | NO. 2:11CR77 PPS |
| | ) | |
| JUAN BRISENO, | ) | |
| | ) | |
| Defendant. | ) | |

## <u>ORDER</u>

Jury selection began on January 12, 2015. Nine days of voir dire, in which challenges for cause and requests for excuse were decided, have yielded a sufficient number of "death-qualified" venire persons to proceed to the exercise of peremptory strikes and the seating of the petit jury including 6 alternates.

ACCORDINGLY:

The Clerk shall summon the following 71 prospective jurors to appear on Monday, February 2, 2015, to be available to the court promptly at 8:30 a.m.:

Jurors # 1, 2, 9, 10, 11, 12, 14, 15, 18, 20, 22, 23, 24, 27, 38, 41, 54, 58, 60, 69, 70, 71, 73, 75, 76, 77, 81, 82, 94, 95, 97, 98, 99, 100, 103, 106, 108, 109, 114, 115, 116, 117, 119, 120, 121, 122, 124, 126, 127, 129, 131, 137, 141, 142, 143, 145, 149, 150, 153, 155, 156, 157, 158, 159, 161, 166, 169, 170, 171, 173 and 174.

At that time, the parties will exercise their peremptory challenges in order to seat

a petit jury of 12 jurors and 6 alternate jurors, and the trial will begin.

SO ORDERED.

ENTERED: January 26, 2015.

                     /s/ Philip P. Simon
                    PHILIP P. SIMON, CHIEF JUDGE
                    UNITED STATES DISTRICT COURT

2642

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | NO. 2:11CR77 PPS |
| | ) | |
| JUAN BRISENO, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

Juror #73 appeared for voir dire examination on Friday, January 16, 2015. On her juror questionnaire, Juror #73 had not identified any hardship arising from jury service in such a long trial, although question #103 specifically referenced hardship due to a "health-related issue (including pregnancy or childbirth)" or a "serious family-related issue or responsibility." In court, Juror #73 reported that she and her husband are currently involved in fertility treatments. [DE 1330 at 44.] She was unable to identify particular possible complications and expressed satisfaction with my indication that the court would try to offer her flexibility for necessary doctor's appointments. [*Id.* at 44-45.]

At the conclusion of her questioning, defendant challenged Juror #73 for cause based on some of her responses concerning the death penalty, but I overruled the challenge because I concluded that her responses overall (and particularly her spontaneous comments about her prior jury service in a case involving fatal child abuse) clearly indicated that, in the event of a conviction on one or more murder

charges, Juror #73 was open-minded about the imposition of either a death sentence or a life term without possibility of release, based on consideration of the aggravating and mitigating circumstances of the case. [*Id.* at 58-59, 62-63.]

Since her appearance on January 16, Juror #73 has submitted a letter to the Clerk requesting to be excused from jury duty "in relation to a financial hardship." Copies of the letter have been provided to counsel. The issue identified in the letter is child care coverage for Juror #73's preschool-aged daughter in the event that she is ill and unable to go to her usual day care provider. Juror #73 suggests that her parents are no longer able to provide such child care due to their own health issues, and that her husband's commission-based income as manager of an auto dealership's service department would suffer if he is required to stay home with a sick child.

The request for excuse was discussed on the record on January 23. Although the defense was agreeable to striking Juror #73 for cause, the government resisted. I indicated at that time that I would give the matter additional thought. I have since concluded that Juror #73's claim of hardship is unpersuasive. The proffered circumstances are entirely speculative – her daughter may never be ill during the course of the trial. In addition, the prospect of missing work and losing a day or two of income is something faced by parents the world over, and yet people make do all the time. If the income is critical, friends and relatives are called upon to care for a sick child. Juror #73 fails to establish true hardship, rather than merely (potential) inconvenience. I will not excuse Juror #73 at this time, and she will be summoned to report along with the

2

other 70 qualified jurors next Monday for the exercise of peremptory strikes and the

start of the trial.

ACCORDINGLY:

The written request of Juror #73 for excuse from service in this case is DENIED at

this time.

SO ORDERED.

ENTERED: January 26, 2015.

 /s/ Philip P. Simon
PHILIP P. SIMON, CHIEF JUDGE
UNITED STATES DISTRICT COURT

2645

```
MIME-Version:1.0
From:CMECFinnd@innd.uscourts.gov
To:CMECFinnd@localhost.localdomain
Bcc:
--Case Participants: Pablo DeCastro (pdecastro@attorneydecastro.com,
ysierra@rascia-decastro.com), Kurt R Earnst (kre@braje-nelson.com), Matthew N Fech
(mnf@fech-law.com), Arlington J Foley (arlingtonfoley@att.net), Jack Friedlander
(jack@jackfriedlander.com, office@jackfriedlander.com), Bruce R Hegyi - AUSA
(bruce.hegyi@usdoj.gov), Roxanne Mendez Johnson (attorneyrmj@gmail.com), Gojko Kasich
(gkasich@crownlaw.com, gkasich@gmail.com), Scott L King (dwilliams@scottkinggroup.com,
sking@scottkinggroup.com), Visvaldis P Kupsis (vpkupsis@hotmail.com), Dean R Lanter - AUSA
(dean.lanter@usdoj.gov, janet.eisenmann@usdoj.gov, usainn.ecfcivil@usdoj.gov), John
Maksimovich (criminallaw@johnmaksimovich.com), John E Martin - FCD (john_martin@fd.org),
Sheldon B Nagelberg (sbnagelberglaw@att.net), David J Nozick - AUSA
(david.nozick@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov,
susan.devries@usdoj.gov, usainn.ecfcivil@usdoj.gov), Mark A Psimos
(psimoslaw@airbaud.net), Robert L Rascia (rrascia@rascia-decastro.com,
ysierra@rascia-decastro.com), Stephen Edward Scheele (pkd@gk4law.com, ses@gk4law.com),
Paul Jeffrey Schlesinger (pjeffslaw@aol.com), Adam Tavitas (adtavitas@aol.com,
b.lynneadams@yahoo.com), John T Theis (theislaw@aol.com), James N Thiros (jim@thiros.com,
lynn@thiros.com), Bryan M Truitt (bryan@tblawyers.com, sherrie@tblawyers.com), David E
Vandercoy (david.vandercoy@valpo.edu), Thomas W Vanes (b.lynneadams@yahoo.com,
tom.vanes@sbcglobal.net), Ihor Alexander Woloshansky (ihorlawyer@hotmail.com), Richard C
Wolter (b.lynneadams@yahoo.com), R Brian Woodward (carolb@wbbklaw.com,
rbwoodward@wbbklaw.com), Magistrate Judge Andrew P Rodovich
(rodovich_chambers@innd.uscourts.gov, ruth_nagy@innd.uscourts.gov), Chief Judge Philip P
Simon (denise_woodside@innd.uscourts.gov, jacob_hamann@innd.uscourts.gov,
lauren_schwartz@innd.uscourts.gov, mira_serrill-robins@innd.uscourts.gov,
noel_collins@innd.uscourts.gov, philip_simon@innd.uscourts.gov)
--Non Case Participants: Matthew D Soliday (office@matthewsolidaylaw.com)
--No Notice Sent:

Message-Id:2695100@innd.uscourts.gov
Subject:Activity in Case 2:11-cr-00077-PPS-APR United States of America v. Briseno et al
Jury Trial
Content-Type: text/html
```

### U.S. District Court Northern District of Indiana [LIVE]

### USDC Northern Indiana

## Notice of Electronic Filing

The following transaction was entered on 1/26/2015 at 1:35 PM EST and filed on 1/22/2015

| | |
|---|---|
| **Case Name:** | United States of America v. Briseno et al |
| **Case Number:** | 2:11-cr-00077-PPS-APR |
| **Filer:** | |
| **Document Number:** | 1366(No document attached) |

**Docket Text:**

**POTENTIAL-JUROR SELECTION (DAY 8) as to Juan Briseno held on 1/22/2015 before Chief Judge Philip P Simon. Parties present as previously noted. Twenty venire persons summoned and twenty venire persons appear. Juror #121 questioned to clarify her answers to the questions asked on her prior appearance. Juror #121 remains in the potential-juror pool. Remaining jurors are sworn to answer inquiry/voir dire by court and counsel. Potential-jurors proceed through the voir dire process. Thirteen potential-jurors are**

**accepted to be placed in the juror pool to return at a later date for further selection proceedings. All other potential–jurors are excused for cause. At the conclusion of the day the members of the pool are reminded by the court not to discuss the case nor to do any reseach into this matter. The court estimates that the final juror selection and jury trial will begin on Monday, February 2, 2015 at 8:30 a.m. The Court and attorneys have discussion on counsel being re–appointed for those case dfts who will testify at trial, if they are not currently represented by counsel. Defendant REMANDED to custody of US Marshal.(Court Reporter Stacy Drohosky (am) and Debra Bonk (pm).) (nac)**

**2:11–cr–00077–PPS–APR–1 Notice has been electronically mailed to:**

David E Vandercoy     david.vandercoy@valpo.edu

Arlington J Foley     arlingtonfoley@att.net

Mark A Psimos     psimoslaw@airbaud.net

Gojko Kasich     gkasich@crownlaw.com, gkasich@gmail.com

Scott L King     sking@scottkinggroup.com, dwilliams@scottkinggroup.com

James N Thiros     jim@thiros.com, lynn@thiros.com

Thomas W Vanes     tom.vanes@sbcglobal.net, b.lynneadams@yahoo.com

Ihor Alexander Woloshansky     ihorlawyer@hotmail.com

R Brian Woodward     rbwoodward@wbbklaw.com, carolb@wbbklaw.com

John Maksimovich     criminallaw@johnmaksimovich.com

Visvaldis P Kupsis     vpkupsis@hotmail.com

Sheldon B Nagelberg     sbnagelberglaw@att.net

John E Martin – FCD     john_martin@fd.org

Adam Tavitas     Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander     jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele     ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst     kre@braje–nelson.com

Bryan M Truitt     bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis     theislaw@aol.com

Robert L Rascia     rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger    pjeffslaw@aol.com

Matthew N Fech    mnf@fech–law.com

Pablo DeCastro    pdecastro@attorneydecastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA    dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov,
janet.eisenmann@usdoj.gov

David J Nozick – AUSA    David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov,
janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson    attorneyrmj@gmail.com

Bruce R Hegyi – AUSA    bruce.hegyi@usdoj.gov

**2:11–cr–00077–PPS–APR–1 Notice has been delivered by U.S. Mail or other means to:**

```
MIME-Version:1.0
From:CMECFinnd@innd.uscourts.gov
To:CMECFinnd@localhost.localdomain
Bcc:
--Case Participants: Pablo DeCastro (pdecastro@attorneydecastro.com,
ysierra@rascia-decastro.com), Kurt R Earnst (kre@braje-nelson.com), Matthew N Fech
(mnf@fech-law.com), Arlington J Foley (arlingtonfoley@att.net), Jack Friedlander
(jack@jackfriedlander.com, office@jackfriedlander.com), Bruce R Hegyi - AUSA
(bruce.hegyi@usdoj.gov), Roxanne Mendez Johnson (attorneyrmj@gmail.com), Gojko Kasich
(gkasich@crownlaw.com, gkasich@gmail.com), Scott L King (dwilliams@scottkinggroup.com,
sking@scottkinggroup.com), Visvaldis P Kupsis (vpkupsis@hotmail.com), Dean R Lanter - AUSA
(dean.lanter@usdoj.gov, janet.eisenmann@usdoj.gov, usainn.ecfcivil@usdoj.gov), John
Maksimovich (criminallaw@johnmaksimovich.com), John E Martin - FCD (john_martin@fd.org),
Sheldon B Nagelberg (sbnagelberglaw@att.net), David J Nozick - AUSA
(david.nozick@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov,
susan.devries@usdoj.gov, usainn.ecfcivil@usdoj.gov), Mark A Psimos
(psimoslaw@airbaud.net), Robert L Rascia (rrascia@rascia-decastro.com,
ysierra@rascia-decastro.com), Stephen Edward Scheele (pkd@gk4law.com, ses@gk4law.com),
Paul Jeffrey Schlesinger (pjeffslaw@aol.com), Adam Tavitas (adtavitas@aol.com,
b.lynneadams@yahoo.com), John T Theis (theislaw@aol.com), James N Thiros (jim@thiros.com,
lynn@thiros.com), Bryan M Truitt (bryan@tblawyers.com, sherrie@tblawyers.com), David E
Vandercoy (david.vandercoy@valpo.edu), Thomas W Vanes (b.lynneadams@yahoo.com,
tom.vanes@sbcglobal.net), Ihor Alexander Woloshansky (ihorlawyer@hotmail.com), Richard C
Wolter (b.lynneadams@yahoo.com), R Brian Woodward (carolb@wbbklaw.com,
rbwoodward@wbbklaw.com), Magistrate Judge Andrew P Rodovich
(rodovich_chambers@innd.uscourts.gov, ruth_nagy@innd.uscourts.gov), Chief Judge Philip P
Simon (denise_woodside@innd.uscourts.gov, jacob_hamann@innd.uscourts.gov,
lauren_schwartz@innd.uscourts.gov, mira_serrill-robins@innd.uscourts.gov,
noel_collins@innd.uscourts.gov, philip_simon@innd.uscourts.gov)
--Non Case Participants: Matthew D Soliday (office@matthewsolidaylaw.com)
--No Notice Sent:

Message-Id:2695579@innd.uscourts.gov
Subject:Activity in Case 2:11-cr-00077-PPS-APR United States of America v. Briseno et al
Jury Trial
Content-Type: text/html
```

### U.S. District Court Northern District of Indiana [LIVE]

### USDC Northern Indiana

## Notice of Electronic Filing

The following transaction was entered on 1/26/2015 at 6:05 PM EST and filed on 1/23/2015

| | |
|---|---|
| **Case Name:** | United States of America v. Briseno et al |
| **Case Number:** | 2:11–cr–00077–PPS–APR |
| **Filer:** | |
| **Document Number:** | 1367(No document attached) |

**Docket Text:**

**POTENTIAL–JUROR SELECTION (DAY 9) as to Juan Briseno held on 1/23/2015 before Chief Judge Philip P Simon. Parties present as previously noted. Sixteen venire persons summoned and sixteen venire persons appear. The panel is sworn to answer inquiry/voir dire by court and counsel. Potential–jurors proceed through the voir dire process. Seven potential–jurors are accepted to be placed in the juror pool to return at a later date for further selection proceedings. All other potential–jurors are excused for cause. At the conclusion of**

**the day the members of the pool are reminded by the court not to discuss the case nor to do any research into this matter. The Court estimates that final juror selection and jury trial will begin on Monday, February 2, 2015. Discussion with counsel: excuse letter from juror #73 – Court takes under advisement. The Clerk's Office will be instructed to call all 71 potential jurors to get feedback. If the court determines that additional potential–jurors are required the court and attorneys will be in session on Thursday, 1/29/2015 for that purpose. The parties will be advised on 1/28/2015 regarding this. Court explains proposed jury selection procedures for 2/2/2015. Twelve regular jurors plus 6 alternates will be chosen. The jurors attending on 2/2/2015 will be identified by their original juror number assigned to them. Defendant REMANDED to custody of US Marshal.(Court Reporter Stacy Drohosky (am) and Debra Bonk (pm)). (nac)**

**2:11–cr–00077–PPS–APR–1 Notice has been electronically mailed to:**

David E Vandercoy    david.vandercoy@valpo.edu

Arlington J Foley    arlingtonfoley@att.net

Mark A Psimos    psimoslaw@airbaud.net

Gojko Kasich    gkasich@crownlaw.com, gkasich@gmail.com

Scott L King    sking@scottkinggroup.com, dwilliams@scottkinggroup.com

James N Thiros    jim@thiros.com, lynn@thiros.com

Thomas W Vanes    tom.vanes@sbcglobal.net, b.lynneadams@yahoo.com

Ihor Alexander Woloshansky    ihorlawyer@hotmail.com

R Brian Woodward    rbwoodward@wbbklaw.com, carolb@wbbklaw.com

John Maksimovich    criminallaw@johnmaksimovich.com

Visvaldis P Kupsis    vpkupsis@hotmail.com

Sheldon B Nagelberg    sbnagelberglaw@att.net

John E Martin – FCD    john_martin@fd.org

Adam Tavitas    Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander    jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele    ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst    kre@braje–nelson.com

Bryan M Truitt    bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis    theislaw@aol.com

Robert L Rascia     rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger     pjeffslaw@aol.com

Matthew N Fech     mnf@fech–law.com

Pablo DeCastro     pdecastro@attorneydecastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA     dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA     David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson     attorneyrmj@gmail.com

Bruce R Hegyi – AUSA     bruce.hegyi@usdoj.gov

**2:11–cr–00077–PPS–APR–1 Notice has been delivered by U.S. Mail or other means to:**

```
MIME-Version:1.0
From:CMECFinnd@innd.uscourts.gov
To:CMECFinnd@localhost.localdomain
Bcc:
--Case Participants: Bryan M Truitt (bryan@tblawyers.com, sherrie@tblawyers.com), David J
Nozick - AUSA (david.nozick@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov,
susan.devries@usdoj.gov, usainn.ecfcivil@usdoj.gov), Kurt R Earnst (kre@braje-nelson.com),
Paul Jeffrey Schlesinger (pjeffslaw@aol.com), Pablo DeCastro
(pdecastro@attorneydecastro.com, ysierra@rascia-decastro.com), Sheldon B Nagelberg
(sbnagelberglaw@att.net), Thomas W Vanes (b.lynneadams@yahoo.com,
tom.vanes@sbcglobal.net), Richard C Wolter (b.lynneadams@yahoo.com), John T Theis
(theislaw@aol.com), Adam Tavitas (adtavitas@aol.com, b.lynneadams@yahoo.com), Dean R
Lanter - AUSA (dean.lanter@usdoj.gov, janet.eisenmann@usdoj.gov,
usainn.ecfcivil@usdoj.gov), John E Martin - FCD (john_martin@fd.org), Scott L King
(dwilliams@scottkinggroup.com, sking@scottkinggroup.com), Mark A Psimos
(psimoslaw@airbaud.net), Matthew N Fech (mnf@fech-law.com), Ihor Alexander Woloshansky
(ihorlawyer@hotmail.com), James N Thiros (jim@thiros.com, lynn@thiros.com), Robert L
Rascia (rrascia@rascia-decastro.com, ysierra@rascia-decastro.com), Gojko Kasich
(gkasich@crownlaw.com, gkasich@gmail.com), Arlington J Foley (arlingtonfoley@att.net),
Roxanne Mendez Johnson (attorneyrmj@gmail.com), Visvaldis P Kupsis (vpkupsis@hotmail.com),
Stephen Edward Scheele (pkd@gk4law.com, ses@gk4law.com), Jack Friedlander
(jack@jackfriedlander.com, office@jackfriedlander.com), Bruce R Hegyi - AUSA
(bruce.hegyi@usdoj.gov), R Brian Woodward (carolb@wbbklaw.com, rbwoodward@wbbklaw.com),
John Maksimovich (criminallaw@johnmaksimovich.com), David E Vandercoy
(david.vandercoy@valpo.edu), Magistrate Judge Andrew P Rodovich
(rodovich_chambers@innd.uscourts.gov, ruth_nagy@innd.uscourts.gov), Chief Judge Philip P
Simon (denise_woodside@innd.uscourts.gov, jacob_hamann@innd.uscourts.gov,
lauren_schwartz@innd.uscourts.gov, mira_serrill-robins@innd.uscourts.gov,
noel_collins@innd.uscourts.gov, philip_simon@innd.uscourts.gov)
--Non Case Participants: Matthew D Soliday (office@matthewsolidaylaw.com),
Probation/Pretrial Services (innpml_cmecf@innd.uscourts.gov), U S Marshal
(inn.docket-fw@usdoj.gov, inn.docket-sb@usdoj.gov, usms.27@usdoj.gov)
--No Notice Sent:

Message-Id:2696981@innd.uscourts.gov
Subject:Activity in Case 2:11-cr-00077-PPS-APR United States of America v. Briseno et al
Notice of Hearing/Deadlines
Content-Type: text/html
```

### U.S. District Court Northern District of Indiana [LIVE]

### USDC Northern Indiana

### Notice of Electronic Filing

The following transaction was entered on 1/28/2015 at 12:46 PM EST and filed on 1/28/2015

| | |
|---|---|
| **Case Name:** | United States of America v. Briseno et al |
| **Case Number:** | 2:11-cr-00077-PPS-APR |
| **Filer:** | |
| **Document Number:** | 1368(No document attached) |

**Docket Text:**
 **NOTICE OF HEARING: FINAL IN-PERSON CONFERENCE Prior to Final Jury Selection/Jury Trial as to Juan Briseno: scheduled for Thursday, 1/29/2015 at 9:00 a.m. before Chief Judge Philip P. Simon. The U.S. Marshal shall produce the dft for this hearing. (nac)**

**2:11−cr−00077−PPS−APR−1 Notice has been electronically mailed to:**

David E Vandercoy     david.vandercoy@valpo.edu

Arlington J Foley     arlingtonfoley@att.net

Mark A Psimos     psimoslaw@airbaud.net

Gojko Kasich     gkasich@crownlaw.com, gkasich@gmail.com

Scott L King     sking@scottkinggroup.com, dwilliams@scottkinggroup.com

James N Thiros     jim@thiros.com, lynn@thiros.com

Thomas W Vanes     tom.vanes@sbcglobal.net, b.lynneadams@yahoo.com

Ihor Alexander Woloshansky     ihorlawyer@hotmail.com

R Brian Woodward     rbwoodward@wbbklaw.com, carolb@wbbklaw.com

John Maksimovich     criminallaw@johnmaksimovich.com

Visvaldis P Kupsis     vpkupsis@hotmail.com

Sheldon B Nagelberg     sbnagelberglaw@att.net

John E Martin − FCD     john_martin@fd.org

Adam Tavitas     Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander     jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele     ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst     kre@braje−nelson.com

Bryan M Truitt     bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis     theislaw@aol.com

Robert L Rascia     rrascia@rascia−decastro.com, ysierra@rascia−decastro.com

Paul Jeffrey Schlesinger     pjeffslaw@aol.com

Matthew N Fech     mnf@fech−law.com

Pablo DeCastro     pdecastro@attorneydecastro.com, ysierra@rascia−decastro.com

Dean R Lanter − AUSA     dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov,
janet.eisenmann@usdoj.gov

2653

David J Nozick – AUSA   David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson   attorneyrmj@gmail.com

Bruce R Hegyi – AUSA   bruce.hegyi@usdoj.gov

**2:11–cr–00077–PPS–APR–1 Notice has been delivered by U.S. Mail or other means to:**

**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION**

UNITED STATES OF AMERICA,          )
                                   )
          Plaintiff,               )
                                   )
     v.                            )          NO. 2:11CR77 PPS
                                   )
JUAN BRISENO,                      )
                                   )
          Defendant.               )
                                   )

## ORDER

Juror #41 appeared for voir dire examination on Tuesday, January 13, 2015.  At

that time she did not present any request for a hardship excuse from jury service, and

neither party challenged her for cause.  After being directed to report on Monday,

February 2, 2015 for the completion of jury selection, Juror #41 advised the Clerk that

she has a medical procedure scheduled for February 2.

After I shared this information at the final pretrial conference on January 29, the

parties agreed that I should contact Juror #41 for additional information on which to

base a decision whether to excuse her for cause.  Juror #41's letter and my telephone

conversation with her indicate that she scheduled the medical procedure based on a

misunderstanding of the information she had received from the court concerning the

remainder of the jury selection process.  In any event, based on the further personal

medical information Juror #41 shared with me on the telephone, I am firmly persuaded

that the procedure she is scheduled to undergo on February 2 is necessary to address a

current medical concern and cannot reasonably be delayed for the sake of service on the jury in this case.

ACCORDINGLY:

Juror #41 is EXCUSED from service in this case based on a medical hardship.

SO ORDERED.

ENTERED: January 29, 2015.

/s/ Philip P. Simon
PHILIP P. SIMON, CHIEF JUDGE
UNITED STATES DISTRICT COURT

```
MIME-Version:1.0
From:CMECFinnd@innd.uscourts.gov
To:CMECFinnd@localhost.localdomain
Bcc:
--Case Participants: Bryan M Truitt (bryan@tblawyers.com, sherrie@tblawyers.com), David J
Nozick - AUSA (david.nozick@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov,
susan.devries@usdoj.gov, usainn.ecfcivil@usdoj.gov), Kurt R Earnst (kre@braje-nelson.com),
Paul Jeffrey Schlesinger (pjeffslaw@aol.com), Pablo DeCastro
(pdecastro@attorneydecastro.com, ysierra@rascia-decastro.com), Sheldon B Nagelberg
(sbnagelberglaw@att.net), Thomas W Vanes (b.lynneadams@yahoo.com,
tom.vanes@sbcglobal.net), Richard C Wolter (b.lynneadams@yahoo.com), John T Theis
(theislaw@aol.com), Adam Tavitas (adtavitas@aol.com, b.lynneadams@yahoo.com), Dean R
Lanter - AUSA (dean.lanter@usdoj.gov, janet.eisenmann@usdoj.gov,
usainn.ecfcivil@usdoj.gov), John E Martin - FCD (john_martin@fd.org), Scott L King
(dwilliams@scottkinggroup.com, sking@scottkinggroup.com), Mark A Psimos
(psimoslaw@airbaud.net), Matthew N Fech (mnf@fech-law.com), Ihor Alexander Woloshansky
(ihorlawyer@hotmail.com), James N Thiros (jim@thiros.com, lynn@thiros.com), Robert L
Rascia (rrascia@rascia-decastro.com, ysierra@rascia-decastro.com), Gojko Kasich
(gkasich@crownlaw.com, gkasich@gmail.com), Arlington J Foley (arlingtonfoley@att.net),
Roxanne Mendez Johnson (attorneyrmj@gmail.com), Visvaldis P Kupsis (vpkupsis@hotmail.com),
Stephen Edward Scheele (pkd@gk4law.com, ses@gk4law.com), Jack Friedlander
(jack@jackfriedlander.com, office@jackfriedlander.com), Bruce R Hegyi - AUSA
(bruce.hegyi@usdoj.gov), R Brian Woodward (carolb@wbbklaw.com, rbwoodward@wbbklaw.com),
John Maksimovich (criminallaw@johnmaksimovich.com), David E Vandercoy
(david.vandercoy@valpo.edu), Magistrate Judge Andrew P Rodovich
(rodovich_chambers@innd.uscourts.gov, ruth_nagy@innd.uscourts.gov), Chief Judge Philip P
Simon (denise_woodside@innd.uscourts.gov, jacob_hamann@innd.uscourts.gov,
lauren_schwartz@innd.uscourts.gov, mira_serrill-robins@innd.uscourts.gov,
noel_collins@innd.uscourts.gov, philip_simon@innd.uscourts.gov)
--Non Case Participants: Matthew D Soliday (office@matthewsolidaylaw.com),
Probation/Pretrial Services (innpml_cmecf@innd.uscourts.gov), U S Marshal
(inn.docket-fw@usdoj.gov, inn.docket-sb@usdoj.gov, usms.27@usdoj.gov)
--No Notice Sent:

Message-Id:2698141@innd.uscourts.gov
Subject:Activity in Case 2:11-cr-00077-PPS-APR United States of America v. Briseno et al
Hearing
Content-Type: text/html
```

### U.S. District Court Northern District of Indiana [LIVE]

### USDC Northern Indiana

## Notice of Electronic Filing

The following transaction was entered on 1/29/2015 at 3:35 PM EST and filed on 1/29/2015

**Case Name:**       United States of America v. Briseno et al

**Case Number:**     2:11–cr–00077–PPS–APR

**Filer:**

**Document Number:** 1371(No document attached)

**Docket Text:**
 **HEARING as to Juan Briseno held on 1/29/2015 before Chief Judge Philip P Simon. Govt
present by David Nozick, AUSA and Bruce Hegyi, AUSA. Dft appears in person and by
counsel John Maksimovich and Arlington Foley. The defendant's jury consultant Julie Howe
is also in attendance. Court makes a record as to the potential–jurors accepted into the pool
that have indicated a hardship with serving on this panel. After personal discussion with all**

**potential–jurors by the Clerk's Office the court now strikes jurors numbered 2, 18, 38 and 54. The parties have no objections. Juror #41 remains pending, the parties will be advised once personal telephone contact is made with juror #41. Once determined the Court will issue an order on this matter. In addition 12 potential–jurors will be summoned for court at 11:00 a.m. on 2/2/2015 should they be needed. If no shortage occurs, those potential–jurors will be released. Court makes Santiago ruling. Court hears argument on Govt power point slides/photos. Dft provides exhibit A to the Court, Exhibit A is offered and admitted by the Court. Court will allow the Govt power point (Exhibit A) finding that it is not unduly prejudicial. Discussion on experts. The deadline for the defense to provide the defense expert reports of witnesses Bezy and Reidy to the Govt – two weeks. As to defense witnesses Williams and Nixon – deadline for the defense to provide expert witness reports to Govt – one week from Monday. Each side will have one hour for opening statement. The Court anticipates final jury selection, opening statements and some witness testimony on Monday, 2/2/2015. Jury selection to begin at 8:30 a.m. 2/2/2015. Defendant REMANDED to custody of US Marshal. (Court Reporter Stacy Drohosky.) (nac)**

**2:11–cr–00077–PPS–APR–1 Notice has been electronically mailed to:**

David E Vandercoy     david.vandercoy@valpo.edu

Arlington J Foley     arlingtonfoley@att.net

Mark A Psimos     psimoslaw@airbaud.net

Gojko Kasich     gkasich@crownlaw.com, gkasich@gmail.com

Scott L King     sking@scottkinggroup.com, dwilliams@scottkinggroup.com

James N Thiros     jim@thiros.com, lynn@thiros.com

Thomas W Vanes     tom.vanes@sbcglobal.net, b.lynneadams@yahoo.com

Ihor Alexander Woloshansky     ihorlawyer@hotmail.com

R Brian Woodward     rbwoodward@wbbklaw.com, carolb@wbbklaw.com

John Maksimovich     criminallaw@johnmaksimovich.com

Visvaldis P Kupsis     vpkupsis@hotmail.com

Sheldon B Nagelberg     sbnagelberglaw@att.net

John E Martin – FCD     john_martin@fd.org

Adam Tavitas     Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander     jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele     ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst     kre@braje–nelson.com

Bryan M Truitt    bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis    theislaw@aol.com

Robert L Rascia    rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger    pjeffslaw@aol.com

Matthew N Fech    mnf@fech–law.com

Pablo DeCastro    pdecastro@attorneydecastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA    dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov,
janet.eisenmann@usdoj.gov

David J Nozick – AUSA    David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov,
janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson    attorneyrmj@gmail.com

Bruce R Hegyi – AUSA    bruce.hegyi@usdoj.gov

**2:11–cr–00077–PPS–APR–1 Notice has been delivered by U.S. Mail or other means to:**

2659

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | 2:11-cr-00077-PPS |
| | ) | |
| JUAN BRISEÑO | ) | |

## OPINION AND ORDER

Briseño is charged with committing six murders, among other crimes. The government has provided to the Court and the defense the PowerPoint deck of slides that it intends to use during its opening statement at trial. Those slides include photos. The government intends to show a photo of each victim alive, and later that photo juxtaposed with a black-and-white photo of the victim after he was killed. Briseño objects to the inclusion of the post-mortem photos under Rule 403 as unfairly prejudicial material for an opening statement. I reviewed the entire slide presentation, then heard argument on Briseño's objection on January 29, 2015. I overruled the objection in an oral decision from the bench, and this Order confirms and explains that decision in detail in conformance with Seventh Circuit requirement. *See United States v. Eads*, 729 F.3d 769, 777 (7th Cir. 2013) ("[A] pro-forma recitation of the Rule 403 balancing test does not allow an appellate court to conduct a proper review of the district court's analysis. To avoid this trap, a district court should carefully analyze the prejudicial effect of the evidence, and provide a considered explanation of its reasons for admitting the evidence." (quotation marks, brackets, citations omitted)).

During the guilt phase of this capital trial I must make determinations of evidence admissibility based on Federal Rule of Evidence 403, as I would in any other trial. Rule 403 permits me to "exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Relevance is determined based on a piece of evidence's "tendency to make a fact [of consequence in determining the action] more or less probable than it would be without the evidence." Fed. R. Evid. 401. Relevant evidence is generally admissible, except when it's not, based on law or rule. Fed. R. Evid. 402.

In Rule 403 "[t]he term 'unfair prejudice,' as to a criminal defendant, speaks to the capacity of some concededly relevant evidence to lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged." *Old Chief v. United States*, 519 U.S. 172, 180 (1997). The Committee Notes to the Rule indicate that the different ground, or improper basis, for decision is often an emotional one. The key modifier in Rule 403 relevant to the present issue is that the hazarded prejudice must be *unfair*. "Because all probative evidence is to some extent prejudicial, [the Seventh Circuit has] consistently emphasized that Rule 403 balancing turns on whether the prejudice is *unfair*." *United States v. Eads*, 729 F.3d 769, 777 (7th Cir. 2013) (quotation marks, citation omitted) (emphasis in original) (given certain factual disputes government may publish to jury portions of charged images of child pornography). A claim under Rule 403 is

2

"necessarily context-sensitive" and therefore within the discretion of the trial court. *See id.* at 776

If I find that a danger of unfair prejudice exists, then I will weigh the danger against the probativeness of the evidence and exclude the evidence if the former *substantially* outweighs the latter. "When determining the admissibility of evidence under Rule 403, this Court employs a sliding scale approach: as the probative value increases, so does our tolerance of the risk of prejudice." *United States v. Earls*, 704 F.3d 466, 471 (7th Cir. 2012) (quotation marks and brackets omitted) (citing *Whitehead v. Bond*, 680 F.3d 919, 930 (7th Cir. 2012)).

Briseño's argument has a few different prongs. He claims that it's unfairly prejudicial to hit jurors with graphic images of dead victims right out of the gate. He also argues that at this point it's unclear exactly what relevance each of the government's chosen photographs has. That is, he acknowledges that there are valid reasons for the government to use photos of crime scenes and murdered victims (e.g., to prove that someone is dead and a murder happened, or to prove something about how the crime was committed using facts like bullet trajectory or point of entry), but at this point it's unclear exactly what disputed facts these particular photos evidence. Finally, Briseño also raises a concern about the juxtaposition of the pre-autopsy photo with the living-color picture of the smiling victim.

I carefully reviewed every slide of the government's PowerPoint presentation (entered into the record at the January 29 hearing as Exhibit A). The murder victim slides Briseño objects to are prejudicial, no doubt about it. There were six dead bodies

3

lying on metal slabs in the Medical Examiner's Office, and the victims' violent deaths make their bodies unpleasant to look at. But I will only weigh probative value against *unfair* prejudice under Rule 403. Whatever forensic evidence the government may use to prove the manner of death of each victim, it is of unquestionable relevance and high probative value that the body at the morgue was dead, and that it was the body of the living person shown in the color photo on the slide. *See, e.g., United States v. Rivera-Rodriguez*, 617 F.3d 581, 594-95 (1st Cir. 2010) ("Rule 403 gives trial courts broad discretion to reject evidence when its probative value is substantially outweighed by the danger of unfair prejudice. In a prosecution alleging that the defendants participated in a murder, the district court may conclude that photographic evidence of the murder helps the jury understand the nature and severity of the charged conduct and is not unfairly prejudicial." (citations omitted.)).

The government stated that it has a good-faith basis to believe that each of the photos in the opening presentation will be deemed admissible at trial. The government also noted during argument that it offered to allow Briseño to stipulate to the deaths, which would have obviated the need for the post-mortem photos, but Briseño chose not to do so. While the government won't be permitted to show every picture it has of every dead body, at a minimum it will need to show one, and it will need to allow comparison with a photo showing the victim alive. Some of the photos show bullet wounds, but that is simply reality, not unfair sensationalism. None of the photos for the opening are mid-autopsy, and, in fact, most of the blood has been wiped up. The government also argued that the post-mortem photos of Luis Ortiz and Miguel Mejias (referred to in the

4

2663

PowerPoint as "Miguel Meijas") each show a Latin King tattoo on the victim's chest, which is relevant to the government's argument about gang affiliation and motive for murder.

In short, the single photo of each dead body is not unfairly prejudicial, and furthermore is relevant and necessary to the government's case, as is the juxtaposition with the photo of each victim before he was murdered. So I find there is no risk of unfair prejudice, but even if there were it would not substantially outweigh the probative value of the challenged presentation slides. The government has not chosen the most inflammatory photos available. The slides in the presentation go as far as the government's proof needs to go with respect to proving the murders, and no further. The photos depict a grim reality. Six grim realities. The government will still need to connect the six deaths to Briseño beyond a reasonable doubt, and the photos don't unfairly prejudice Briseño in his defense against the government's attempt to do that.

## CONCLUSION

FOR THE FOREGOING REASONS, Defendant Briseño's request to exclude certain slides from the government's opening statement presentation is **DENIED**.

SO ORDERED.

ENTERED: January 29, 2015

/s/ Philip P. Simon
PHILIP P. SIMON, CHIEF JUDGE
UNITED STATES DISTRICT COURT

5

2664

```
MIME-Version:1.0
From:CMECFinnd@innd.uscourts.gov
To:CMECFinnd@localhost.localdomain
Bcc:
--Case Participants: Pablo DeCastro (pdecastro@attorneydecastro.com,
ysierra@rascia-decastro.com), Kurt R Earnst (kre@braje-nelson.com), Matthew N Fech
(mnf@fech-law.com), Arlington J Foley (arlingtonfoley@att.net), Jack Friedlander
(jack@jackfriedlander.com, office@jackfriedlander.com), Bruce R Hegyi - AUSA
(bruce.hegyi@usdoj.gov), Roxanne Mendez Johnson (attorneyrmj@gmail.com), Gojko Kasich
(gkasich@crownlaw.com, gkasich@gmail.com), Scott L King (dwilliams@scottkinggroup.com,
sking@scottkinggroup.com), Visvaldis P Kupsis (vpkupsis@hotmail.com), Dean R Lanter - AUSA
(dean.lanter@usdoj.gov, janet.eisenmann@usdoj.gov, usainn.ecfcivil@usdoj.gov), John
Maksimovich (criminallaw@johnmaksimovich.com), John E Martin - FCD (john_martin@fd.org),
Sheldon B Nagelberg (sbnagelberglaw@att.net), David J Nozick - AUSA
(david.nozick@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov,
susan.devries@usdoj.gov, usainn.ecfcivil@usdoj.gov), Mark A Psimos
(psimoslaw@airbaud.net), Robert L Rascia (rrascia@rascia-decastro.com,
ysierra@rascia-decastro.com), Stephen Edward Scheele (pkd@gk4law.com, ses@gk4law.com),
Paul Jeffrey Schlesinger (pjeffslaw@aol.com), Adam Tavitas (adtavitas@aol.com,
b.lynneadams@yahoo.com), John T Theis (theislaw@aol.com), James N Thiros (jim@thiros.com,
lynn@thiros.com), Bryan M Truitt (bryan@tblawyers.com, sherrie@tblawyers.com), David E
Vandercoy (david.vandercoy@valpo.edu), Thomas W Vanes (b.lynneadams@yahoo.com,
tom.vanes@sbcglobal.net), Ihor Alexander Woloshansky (ihorlawyer@hotmail.com), Richard C
Wolter (b.lynneadams@yahoo.com), R Brian Woodward (carolb@wbbklaw.com,
rbwoodward@wbbklaw.com), Magistrate Judge Andrew P Rodovich
(rodovich_chambers@innd.uscourts.gov, ruth_nagy@innd.uscourts.gov), Chief Judge Philip P
Simon (denise_woodside@innd.uscourts.gov, jacob_hamann@innd.uscourts.gov,
lauren_schwartz@innd.uscourts.gov, mira_serrill-robins@innd.uscourts.gov,
noel_collins@innd.uscourts.gov, philip_simon@innd.uscourts.gov)
--Non Case Participants: Matthew D Soliday (office@matthewsolidaylaw.com)
--No Notice Sent:

Message-Id:2701163@innd.uscourts.gov
Subject:Activity in Case 2:11-cr-00077-PPS-APR United States of America v. Briseno et al
Jury Trial
Content-Type: text/html
```

### U.S. District Court Northern District of Indiana [LIVE]

### USDC Northern Indiana

### Notice of Electronic Filing

The following transaction was entered on 2/3/2015 at 6:52 PM EST and filed on 2/3/2015

**Case Name:**     United States of America v. Briseno et al

**Case Number:**   2:11–cr–00077–PPS–APR

**Filer:**

**Document Number:** 1377(No document attached)

**Docket Text:**

**JURY TRIAL (FINAL JURY SELECTION and 1st DAY OF EVIDENCE) as to Juan Briseno held on 2/3/2015 before Chief Judge Philip P Simon. (Note: no jury trial held on 2/2/15 due to poor weather). Govt present by David Nozick, AUSA and Bruce Hegyi, AUSA with SA/ATF Jason Gore. Dft appears in person and by cnsl John Maksimovich and Arlington Foley. Julie Howe, Jury Consultant appears for the jury selection process only. Final jury selection held: Jurors are selected by the parties, 12 regular jurors and 6 alternate jurors and sworn to try cause.**

2665

**Note: No jury trial to be held on Friday, 2/6/15 of this week. Motion for sep of witnesses GRANTED with exceptions noted on the record. Preliminary instructions to jury panel by the court. Opening Statements by both sides to jury. Govt begins presentation of evidence, does not conclude. Trial continued to Wednesday, 2/4/15 at 8:30 a.m. Defendant REMANDED to custody of US Marshal.(Court Reporter Richard Ehrlich (am) and Joanne Hoffman (pm)). (nac)**

**2:11−cr−00077−PPS−APR−1 Notice has been electronically mailed to:**

David E Vandercoy    david.vandercoy@valpo.edu

Arlington J Foley    arlingtonfoley@att.net

Mark A Psimos    psimoslaw@airbaud.net

Gojko Kasich    gkasich@crownlaw.com, gkasich@gmail.com

Scott L King    sking@scottkinggroup.com, dwilliams@scottkinggroup.com

James N Thiros    jim@thiros.com, lynn@thiros.com

Thomas W Vanes    tom.vanes@sbcglobal.net, b.lynneadams@yahoo.com

Ihor Alexander Woloshansky    ihorlawyer@hotmail.com

R Brian Woodward    rbwoodward@wbbklaw.com, carolb@wbbklaw.com

John Maksimovich    criminallaw@johnmaksimovich.com

Visvaldis P Kupsis    vpkupsis@hotmail.com

Sheldon B Nagelberg    sbnagelberglaw@att.net

John E Martin − FCD    john_martin@fd.org

Adam Tavitas    Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander    jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele    ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst    kre@braje−nelson.com

Bryan M Truitt    bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis    theislaw@aol.com

Robert L Rascia    rrascia@rascia−decastro.com, ysierra@rascia−decastro.com

Paul Jeffrey Schlesinger    pjeffslaw@aol.com

Matthew N Fech     mnf@fech–law.com

Pablo DeCastro     pdecastro@attorneydecastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA     dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov,
janet.eisenmann@usdoj.gov

David J Nozick – AUSA     David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov,
janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson     attorneyrmj@gmail.com

Bruce R Hegyi – AUSA     bruce.hegyi@usdoj.gov

**2:11−cr−00077−PPS−APR−1 Notice has been delivered by U.S. Mail or other means to:**

```
MIME-Version:1.0
From:CMECFinnd@innd.uscourts.gov
To:CMECFinnd@localhost.localdomain
Bcc:
--Case Participants: Bryan M Truitt (bryan@tblawyers.com, sherrie@tblawyers.com), David J
Nozick - AUSA (david.nozick@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov,
susan.devries@usdoj.gov, usainn.ecfcivil@usdoj.gov), Kurt R Earnst (kre@braje-nelson.com),
Paul Jeffrey Schlesinger (pjeffslaw@aol.com), Pablo DeCastro
(pdecastro@attorneydecastro.com, ysierra@rascia-decastro.com), Sheldon B Nagelberg
(sbnagelberglaw@att.net), Thomas W Vanes (b.lynneadams@yahoo.com,
tom.vanes@sbcglobal.net), Richard C Wolter (b.lynneadams@yahoo.com), John T Theis
(theislaw@aol.com), Adam Tavitas (adtavitas@aol.com, b.lynneadams@yahoo.com), Dean R
Lanter - AUSA (dean.lanter@usdoj.gov, janet.eisenmann@usdoj.gov,
usainn.ecfcivil@usdoj.gov), John E Martin - FCD (john_martin@fd.org), Scott L King
(dwilliams@scottkinggroup.com, sking@scottkinggroup.com), Mark A Psimos
(psimoslaw@airbaud.net), Matthew N Fech (mnf@fech-law.com), Ihor Alexander Woloshansky
(ihorlawyer@hotmail.com), James N Thiros (jim@thiros.com, lynn@thiros.com), Robert L
Rascia (rrascia@rascia-decastro.com, ysierra@rascia-decastro.com), Gojko Kasich
(gkasich@crownlaw.com, gkasich@gmail.com), Arlington J Foley (arlingtonfoley@att.net),
Roxanne Mendez Johnson (attorneyrmj@gmail.com), Visvaldis P Kupsis (vpkupsis@hotmail.com),
Stephen Edward Scheele (pkd@gk4law.com, ses@gk4law.com), Jack Friedlander
(jack@jackfriedlander.com, office@jackfriedlander.com), Bruce R Hegyi - AUSA
(bruce.hegyi@usdoj.gov), R Brian Woodward (carolb@wbbklaw.com, rbwoodward@wbbklaw.com),
John Maksimovich (criminallaw@johnmaksimovich.com), David E Vandercoy
(david.vandercoy@valpo.edu), Magistrate Judge Andrew P Rodovich
(rodovich_chambers@innd.uscourts.gov, ruth_nagy@innd.uscourts.gov), Chief Judge Philip P
Simon (denise_woodside@innd.uscourts.gov, jacob_hamann@innd.uscourts.gov,
lauren_schwartz@innd.uscourts.gov, mira_serrill-robins@innd.uscourts.gov,
noel_collins@innd.uscourts.gov, philip_simon@innd.uscourts.gov)
--Non Case Participants: Matthew D Soliday (office@matthewsolidaylaw.com)
--No Notice Sent:

Message-Id:2701165@innd.uscourts.gov
Subject:Activity in Case 2:11-cr-00077-PPS-APR United States of America v. Briseno et al
Docket Annotation
Content-Type: text/html
```

### U.S. District Court Northern District of Indiana [LIVE]

### USDC Northern Indiana

## Notice of Electronic Filing

The following transaction was entered on 2/3/2015 at 6:56 PM EST and filed on 2/2/2015

**Case Name:**    United States of America v. Briseno et al

**Case Number:**    2:11-cr-00077-PPS-APR

**Filer:**

**Document Number:** 1378(No document attached)

**Docket Text:**
**NOTATION: Jury Trial as to Juan Briseno does not proceed on Monday 2/2/2015 due to poor weather. (nac)**

**2:11-cr-00077-PPS-APR-1 Notice has been electronically mailed to:**

David E Vandercoy    david.vandercoy@valpo.edu

Arlington J Foley    arlingtonfoley@att.net

Mark A Psimos    psimoslaw@airbaud.net

Gojko Kasich    gkasich@crownlaw.com, gkasich@gmail.com

Scott L King    sking@scottkinggroup.com, dwilliams@scottkinggroup.com

James N Thiros    jim@thiros.com, lynn@thiros.com

Thomas W Vanes    tom.vanes@sbcglobal.net, b.lynneadams@yahoo.com

Ihor Alexander Woloshansky    ihorlawyer@hotmail.com

R Brian Woodward    rbwoodward@wbbklaw.com, carolb@wbbklaw.com

John Maksimovich    criminallaw@johnmaksimovich.com

Visvaldis P Kupsis    vpkupsis@hotmail.com

Sheldon B Nagelberg    sbnagelberglaw@att.net

John E Martin – FCD    john_martin@fd.org

Adam Tavitas    Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander    jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele    ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst    kre@braje–nelson.com

Bryan M Truitt    bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis    theislaw@aol.com

Robert L Rascia    rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger    pjeffslaw@aol.com

Matthew N Fech    mnf@fech–law.com

Pablo DeCastro    pdecastro@attorneydecastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA    dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov,
janet.eisenmann@usdoj.gov

David J Nozick – AUSA    David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov,
janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson   attorneyrmj@gmail.com

Bruce R Hegyi – AUSA   bruce.hegyi@usdoj.gov

**2:11–cr–00077–PPS–APR–1 Notice has been delivered by U.S. Mail or other means to:**

```
MIME-Version:1.0
From:CMECFinnd@innd.uscourts.gov
To:CMECFinnd@localhost.localdomain
Bcc:
--Case Participants: Bryan M Truitt (bryan@tblawyers.com, sherrie@tblawyers.com), David J
Nozick – AUSA (david.nozick@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov,
susan.devries@usdoj.gov, usainn.ecfcivil@usdoj.gov), Kurt R Earnst (kre@braje-nelson.com),
Paul Jeffrey Schlesinger (pjeffslaw@aol.com), Pablo DeCastro
(pdecastro@attorneydecastro.com, ysierra@rascia-decastro.com), Sheldon B Nagelberg
(sbnagelberglaw@att.net), Thomas W Vanes (b.lynneadams@yahoo.com,
tom.vanes@sbcglobal.net), Richard C Wolter (b.lynneadams@yahoo.com), John T Theis
(theislaw@aol.com), Adam Tavitas (adtavitas@aol.com, b.lynneadams@yahoo.com), Dean R
Lanter – AUSA (dean.lanter@usdoj.gov, janet.eisenmann@usdoj.gov,
usainn.ecfcivil@usdoj.gov), John E Martin – FCD (john_martin@fd.org), Scott L King
(dwilliams@scottkinggroup.com, sking@scottkinggroup.com), Mark A Psimos
(psimoslaw@airbaud.net), Matthew N Fech (mnf@fech-law.com), Ihor Alexander Woloshansky
(ihorlawyer@hotmail.com), James N Thiros (jim@thiros.com, lynn@thiros.com), Robert L
Rascia (rrascia@rascia-decastro.com, ysierra@rascia-decastro.com), Arlington J Foley
(arlingtonfoley@att.net), Roxanne Mendez Johnson (attorneyrmj@gmail.com), Visvaldis P
Kupsis (vpkupsis@hotmail.com), Stephen Edward Scheele (pkd@gk4law.com, ses@gk4law.com),
Jack Friedlander (jack@jackfriedlander.com, office@jackfriedlander.com), Bruce R Hegyi –
AUSA (bruce.hegyi@usdoj.gov), R Brian Woodward (carolb@wbbklaw.com,
rbwoodward@wbbklaw.com), John Maksimovich (criminallaw@johnmaksimovich.com), David E
Vandercoy (david.vandercoy@valpo.edu), Magistrate Judge Andrew P Rodovich
(rodovich_chambers@innd.uscourts.gov, ruth_nagy@innd.uscourts.gov), Chief Judge Philip P
Simon (denise_woodside@innd.uscourts.gov, jacob_hamann@innd.uscourts.gov,
lauren_schwartz@innd.uscourts.gov, mira_serrill-robins@innd.uscourts.gov,
noel_collins@innd.uscourts.gov, philip_simon@innd.uscourts.gov)
--Non Case Participants: Matthew D Soliday (office@matthewsolidaylaw.com)
--No Notice Sent:

Message-Id:2702037@innd.uscourts.gov
Subject:Activity in Case 2:11-cr-00077-PPS-APR United States of America v. Briseno et al
Jury Trial
Content–Type: text/html
```

### U.S. District Court Northern District of Indiana [LIVE]

### USDC Northern Indiana

## Notice of Electronic Filing

The following transaction was entered on 2/4/2015 at 6:32 PM EST and filed on 2/4/2015

| | |
|---|---|
| **Case Name:** | United States of America v. Briseno et al |
| **Case Number:** | 2:11–cr–00077–PPS–APR |
| **Filer:** | |
| **Document Number:** | 1385(No document attached) |

**Docket Text:**

**JURY TRIAL (2ND DAY OF EVIDENCE) as to Juan Briseno held on 2/4/2015 before Chief Judge Philip P Simon. Parties present as previously noted. Interpreter Irene Ishoo appears to interpret for non–english speaking witness. Govt continues to present evidence, does not conclude. Trial continued to Thursday 2/5/2015 at 8:30 a.m. Defendant REMANDED to custody of US Marshal. (Court Reporter Richard Ehrlich (am) and Joanne Hoffman (pm)). (nac)**

**2:11−cr−00077−PPS−APR−1 Notice has been electronically mailed to:**

David E Vandercoy    david.vandercoy@valpo.edu

Arlington J Foley    arlingtonfoley@att.net

Mark A Psimos    psimoslaw@airbaud.net

Scott L King    sking@scottkinggroup.com, dwilliams@scottkinggroup.com

James N Thiros    jim@thiros.com, lynn@thiros.com

Thomas W Vanes    tom.vanes@sbcglobal.net, b.lynneadams@yahoo.com

Ihor Alexander Woloshansky    ihorlawyer@hotmail.com

R Brian Woodward    rbwoodward@wbbklaw.com, carolb@wbbklaw.com

John Maksimovich    criminallaw@johnmaksimovich.com

Visvaldis P Kupsis    vpkupsis@hotmail.com

Sheldon B Nagelberg    sbnagelberglaw@att.net

John E Martin – FCD    john_martin@fd.org

Adam Tavitas    Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander    jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele    ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst    kre@braje−nelson.com

Bryan M Truitt    bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis    theislaw@aol.com

Robert L Rascia    rrascia@rascia−decastro.com, ysierra@rascia−decastro.com

Paul Jeffrey Schlesinger    pjeffslaw@aol.com

Matthew N Fech    mnf@fech−law.com

Pablo DeCastro    pdecastro@attorneydecastro.com, ysierra@rascia−decastro.com

Dean R Lanter – AUSA    dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov,
janet.eisenmann@usdoj.gov

David J Nozick – AUSA    David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov,
janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson     attorneyrmj@gmail.com

Bruce R Hegyi – AUSA     bruce.hegyi@usdoj.gov

**2:11−cr−00077−PPS−APR−1 Notice has been delivered by U.S. Mail or other means to:**

```
MIME-Version:1.0
From:CMECFinnd@innd.uscourts.gov
To:CMECFinnd@localhost.localdomain
Bcc:
--Case Participants: Pablo DeCastro (pdecastro@attorneydecastro.com,
ysierra@rascia-decastro.com), Kurt R Earnst (kre@braje-nelson.com), Matthew N Fech
(mnf@fech-law.com), Arlington J Foley (arlingtonfoley@att.net), Jack Friedlander
(jack@jackfriedlander.com, office@jackfriedlander.com), Bruce R Hegyi - AUSA
(bruce.hegyi@usdoj.gov), Roxanne Mendez Johnson (attorneyrmj@gmail.com), Scott L King
(dwilliams@scottkinggroup.com, sking@scottkinggroup.com), Visvaldis P Kupsis
(vpkupsis@hotmail.com), Dean R Lanter - AUSA (dean.lanter@usdoj.gov,
janet.eisenmann@usdoj.gov, usainn.ecfcivil@usdoj.gov), John Maksimovich
(criminallaw@johnmaksimovich.com), John E Martin - FCD (john_martin@fd.org), Sheldon B
Nagelberg (sbnagelberglaw@att.net), David J Nozick - AUSA (david.nozick@usdoj.gov,
janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov,
usainn.ecfcivil@usdoj.gov), Mark A Psimos (psimoslaw@airbaud.net), Robert L Rascia
(rrascia@rascia-decastro.com, ysierra@rascia-decastro.com), Stephen Edward Scheele
(pkd@gk4law.com, ses@gk4law.com), Paul Jeffrey Schlesinger (pjeffslaw@aol.com), Adam
Tavitas (adtavitas@aol.com, b.lynneadams@yahoo.com), John T Theis (theislaw@aol.com),
James N Thiros (jim@thiros.com, lynn@thiros.com), Bryan M Truitt (bryan@tblawyers.com,
sherrie@tblawyers.com), David E Vandercoy (david.vandercoy@valpo.edu), Thomas W Vanes
(b.lynneadams@yahoo.com, tom.vanes@sbcglobal.net), Ihor Alexander Woloshansky
(ihorlawyer@hotmail.com), Richard C Wolter (b.lynneadams@yahoo.com), R Brian Woodward
(carolb@wbbklaw.com, rbwoodward@wbbklaw.com), Magistrate Judge Andrew P Rodovich
(rodovich_chambers@innd.uscourts.gov, ruth_nagy@innd.uscourts.gov), Chief Judge Philip P
Simon (denise_woodside@innd.uscourts.gov, jacob_hamann@innd.uscourts.gov,
lauren_schwartz@innd.uscourts.gov, mira_serrill-robins@innd.uscourts.gov,
noel_collins@innd.uscourts.gov, philip_simon@innd.uscourts.gov)
--Non Case Participants: Matthew D Soliday (office@matthewsolidaylaw.com)
--No Notice Sent:

Message-Id:2702035@innd.uscourts.gov
Subject:Activity in Case 2:11-cr-00077-PPS-APR United States of America v. Briseno et al
Order on Motion to Seal
Content-Type: text/html
```

### U.S. District Court Northern District of Indiana [LIVE]

### USDC Northern Indiana

## Notice of Electronic Filing

The following transaction was entered on 2/4/2015 at 6:24 PM EST and filed on 2/4/2015

| | |
|---|---|
| **Case Name:** | United States of America v. Briseno et al |
| **Case Number:** | 2:11-cr-00077-PPS-APR |
| **Filer:** | |
| **Document Number:** | 1384(No document attached) |

**Docket Text:**

 **ORDER GRANTING [1382] Motion to Seal as to Juan Briseno (1). Text entry only. No pdf is attached. Approved by Chief Judge Philip P Simon on 2/4/2015. (nac)**

**2:11-cr-00077-PPS-APR-1 Notice has been electronically mailed to:**

David E Vandercoy    david.vandercoy@valpo.edu

Arlington J Foley    arlingtonfoley@att.net

Mark A Psimos    psimoslaw@airbaud.net

Scott L King    sking@scottkinggroup.com, dwilliams@scottkinggroup.com

James N Thiros    jim@thiros.com, lynn@thiros.com

Thomas W Vanes    tom.vanes@sbcglobal.net, b.lynneadams@yahoo.com

Ihor Alexander Woloshansky    ihorlawyer@hotmail.com

R Brian Woodward    rbwoodward@wbbklaw.com, carolb@wbbklaw.com

John Maksimovich    criminallaw@johnmaksimovich.com

Visvaldis P Kupsis    vpkupsis@hotmail.com

Sheldon B Nagelberg    sbnagelberglaw@att.net

John E Martin – FCD    john_martin@fd.org

Adam Tavitas    Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander    jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele    ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst    kre@braje–nelson.com

Bryan M Truitt    bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis    theislaw@aol.com

Robert L Rascia    rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger    pjeffslaw@aol.com

Matthew N Fech    mnf@fech–law.com

Pablo DeCastro    pdecastro@attorneydecastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA    dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov,
janet.eisenmann@usdoj.gov

David J Nozick – AUSA    David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov,
janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson    attorneyrmj@gmail.com

Bruce R Hegyi – AUSA    bruce.hegyi@usdoj.gov

**2:11−cr−00077−PPS−APR−1 Notice has been delivered by U.S. Mail or other means to:**

```
MIME-Version:1.0
From:CMECFinnd@innd.uscourts.gov
To:CMECFinnd@localhost.localdomain
Bcc:
--Case Participants: Pablo DeCastro (pdecastro@attorneydecastro.com,
ysierra@rascia-decastro.com), Kurt R Earnst (kre@braje-nelson.com), Matthew N Fech
(mnf@fech-law.com), Arlington J Foley (arlingtonfoley@att.net), Jack Friedlander
(jack@jackfriedlander.com, office@jackfriedlander.com), Bruce R Hegyi - AUSA
(bruce.hegyi@usdoj.gov), Roxanne Mendez Johnson (attorneyrmj@gmail.com), Scott L King
(dwilliams@scottkinggroup.com, sking@scottkinggroup.com), Visvaldis P Kupsis
(vpkupsis@hotmail.com), Dean R Lanter - AUSA (dean.lanter@usdoj.gov,
janet.eisenmann@usdoj.gov, usainn.ecfcivil@usdoj.gov), John Maksimovich
(criminallaw@johnmaksimovich.com), John E Martin - FCD (john_martin@fd.org), Sheldon B
Nagelberg (sbnagelberglaw@att.net), David J Nozick - AUSA (david.nozick@usdoj.gov,
janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov,
usainn.ecfcivil@usdoj.gov), Mark A Psimos (psimoslaw@airbaud.net), Robert L Rascia
(rrascia@rascia-decastro.com, ysierra@rascia-decastro.com), Stephen Edward Scheele
(pkd@gk4law.com, ses@gk4law.com), Paul Jeffrey Schlesinger (pjeffslaw@aol.com), Adam
Tavitas (adtavitas@aol.com, b.lynneadams@yahoo.com), John T Theis (theislaw@aol.com),
James N Thiros (jim@thiros.com, lynn@thiros.com), Bryan M Truitt (bryan@tblawyers.com,
sherrie@tblawyers.com), David E Vandercoy (david.vandercoy@valpo.edu), Thomas W Vanes
(b.lynneadams@yahoo.com, tom.vanes@sbcglobal.net), Ihor Alexander Woloshansky
(ihorlawyer@hotmail.com), Richard C Wolter (b.lynneadams@yahoo.com), R Brian Woodward
(carolb@wbbklaw.com, rbwoodward@wbbklaw.com), Magistrate Judge Andrew P Rodovich
(rodovich_chambers@innd.uscourts.gov, ruth_nagy@innd.uscourts.gov), Chief Judge Philip P
Simon (denise_woodside@innd.uscourts.gov, jacob_hamann@innd.uscourts.gov,
lauren_schwartz@innd.uscourts.gov, mira_serrill-robins@innd.uscourts.gov,
noel_collins@innd.uscourts.gov, philip_simon@innd.uscourts.gov)
--Non Case Participants: Matthew D Soliday (office@matthewsolidaylaw.com)
--No Notice Sent:

Message-Id:2703003@innd.uscourts.gov
Subject:Activity in Case 2:11-cr-00077-PPS-APR United States of America v. Briseno et al
Jury Trial
Content-Type: text/html
```

## U.S. District Court Northern District of Indiana [LIVE]

### USDC Northern Indiana

## Notice of Electronic Filing

The following transaction was entered on 2/5/2015 at 6:15 PM EST and filed on 2/5/2015

| | |
|---|---|
| **Case Name:** | United States of America v. Briseno et al |
| **Case Number:** | 2:11–cr–00077–PPS–APR |
| **Filer:** | |
| **Document Number:** | 1391(No document attached) |

**Docket Text:**
 **JURY TRIAL (3RD DAY OF EVIDENCE) as to Juan Briseno held on 2/5/2015before Chief Judge Philip P Simon. Parties present as previously noted. Govt continues to present evidence, does not conclude. Trial to resume on Monday 2/9/15 at 8:30 a.m. Jurors given instructions for weekend recess not to discuss case, do any research and to avoid any news media reports on this case. Jurors reminded that there will be no trial on Monday, 2/16/15 due to Presidents Day holiday. Defendant REMANDED to custody of US Marshal. (Court Reporter Richard Ehrlich(am) and Joanne Hoffman (pm).) (nac)**

**2:11−cr−00077−PPS−APR−1 Notice has been electronically mailed to:**

David E Vandercoy    david.vandercoy@valpo.edu

Arlington J Foley    arlingtonfoley@att.net

Mark A Psimos    psimoslaw@airbaud.net

Scott L King    sking@scottkinggroup.com, dwilliams@scottkinggroup.com

James N Thiros    jim@thiros.com, lynn@thiros.com

Thomas W Vanes    tom.vanes@sbcglobal.net, b.lynneadams@yahoo.com

Ihor Alexander Woloshansky    ihorlawyer@hotmail.com

R Brian Woodward    rbwoodward@wbbklaw.com, carolb@wbbklaw.com

John Maksimovich    criminallaw@johnmaksimovich.com

Visvaldis P Kupsis    vpkupsis@hotmail.com

Sheldon B Nagelberg    sbnagelberglaw@att.net

John E Martin − FCD    john_martin@fd.org

Adam Tavitas    Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander    jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele    ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst    kre@braje−nelson.com

Bryan M Truitt    bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis    theislaw@aol.com

Robert L Rascia    rrascia@rascia−decastro.com, ysierra@rascia−decastro.com

Paul Jeffrey Schlesinger    pjeffslaw@aol.com

Matthew N Fech    mnf@fech−law.com

Pablo DeCastro    pdecastro@attorneydecastro.com, ysierra@rascia−decastro.com

Dean R Lanter − AUSA    dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov,
janet.eisenmann@usdoj.gov

David J Nozick − AUSA    David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov,
janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson     attorneyrmj@gmail.com

Bruce R Hegyi – AUSA     bruce.hegyi@usdoj.gov

**2:11−cr−00077−PPS−APR−1 Notice has been delivered by U.S. Mail or other means to:**

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **VS.** | ) | **CASE NO. 2:11 CR 77** |
| | ) | |
| **JUAN BRISENO** | ) | |

<u>**F.R.C.P., RULE 16 SUMMARY OF EXPERT WITNESS EXPECTED TESTIMONY**</u>

Lance Williams, Ph.D. is expected to testify for the defense during the penalty phase as follows:

1. He is an Associate Professor and Assistant Director at Jacob H. Carruthers Center for Inner Cities Studies at Northeastern Illinois University in Chicago, Illinois. He has previously qualified as a gang expert, has rendered testimony, as such and is expected to qualify as a gang expert in this case. (C.V. attached and marked Exhibit "A").

2. Dr. Williams is expected to testify, in the penalty phase, to the nature and makeup of street gangs in general; i.e., their structure; their rules; their expectations of their members; their manners of disciplining and controlling their members; the manner in which they claim and hold "turf"; their relationships with other gangs; etc.

3. With regard to this case, specifically, it is expected that Dr. Williams will testify as to his understanding, of how Juan Briseno became a member of the I.G.'s; and how his family, financial and other background played a part in him joining the I.G.'s.

4. He is also expected to render opinion(s) as to how Juan's membership in the I.G.'s affected his actions that are, at least in part, related to the charges against him. His opinion(s) has not yet been fully developed due to Dr. Williams' ongoing research into

the facts that will support his opinion(s).  However, it is expected that he will opine that

the I.G.'s had a negative effect upon Juan's behavior.

**Respectfully Submitted:**

/s/Arlington J. Foley                             /s/John Maksimovich
Arlington J. Foley #6905-45              John Maksimovich #9950-45
Attorney for Defendant                    Attorney for Defendant
1942 North Main Street                    1946 North Main Street
Crown Point, IN  46307                    Crown Point, IN  46307
Ph:  (219) 661-1200                          Ph:  (219) 663-1900
Fx:  (219) 661-1205                          Fx:  (219) 663-1908

2

# Curriculum Vitae

## 2014

**LANCE WILLIAMS, PH.D.**
Associate Professor and Assistant Director
Jacob H. Carruthers Center for Inner City Studies
Northeastern Illinois University
700 E. Oakwood Boulevard
Chicago, Illinois. 60653

Lwillia1@neiu.edu

773 256-2145

| | |
|---|---|
| **CURRENT and PREVIOUS POSITIONS** | |

2010-present: Associate Professor, Inner City Studies. Northeastern Illinois University, Chicago, IL.

Classes: **Inner City Studies Education-** Critical Analysis of Hip Hop Culture, History and Culture of Ethnic Groups, Inner City Organization and Institution Building, Inner City Development, **Sociology-**Sociology of Violence, Sociology of Health and Illness, Sociology of the Black Family and Introduction to Sociology

2004-present: Assistant Director, Northeastern Illinois University's Jacob H. Carruthers Center for Inner City Studies, Chicago, IL.

2012-2013: Associate Chair, Northeastern Illinois University. Department of Educational Inquiry and Curriculum Studies, Chicago, IL.

2010-2013: Visiting Scholar, African American Male Resource Center. Chicago State University. Chicago, IL.

Jan-Jul 2013: Interim Chair, Northeastern Illinois University. Department of Educational Inquiry and Curriculum Studies, Chicago, IL.

2010-2011: National Coordinator, African American Male Initiative. Presidents' Roundtable, Dallas, TX.

2006-2010: Assistant Professor, Inner City Studies. Northeastern Illinois University, Chicago, IL.

**Teaching/Research Interests:** Cultural Interventions Aimed At Reducing High-Risk Behaviors Among Youth In School Settings; Qualitative Research Design and Methodology

Exhibit "A"

2682

Lance Williams, Vita 14

## EDUCATION

Ph.D.   Public Health Sciences
        University of Illinois-Chicago, Chicago, IL. 2004

        Dissertation Research: Cultural intervention and perceptions of
        violence-related behaviors: A Role Strain and Adaptation Study of
        Adolescents

M.A.    Inner City Studies Education
        Northeastern Illinois University, Chicago, IL. 1995.

B.A.    Applied Behavioral Science
        National-Louis University, Chicago, IL. 1994.

## RESEARCH EXPERIENCE

Principal Investigator (Under review) Northeastern Illinois University

I have proposed to the Illinois Department of Corrections an ethnographic study that examines the contributing factors that lead to disproportionate homicide among young, African American males. I have proposed to find out how perpetrators of homicide perceive the circumstances that led to their crime(s). Given the multitude of factors that contribute to homicide—difficult concepts to measure in a quantitative way—I will use qualitative techniques, in particular, an ethnographic/focused interview process.

Principal Investigator (2012-Present) Northeastern Illinois University

I am the Principal Investigator of the Community-based Participatory Research Initiative that tracks—both historically and in real time—violent and nonviolent crime in Chicago. Chicago Police Department (CPD) retrospective data—2000 to present—is being used along with appropriate multivariate techniques to develop theories and policies that are relevant to the role that violence prevention programs play in preventing various types of crime. In this study the Chicago Police Department (CPD) reports its disaggregated data on violence and crime at the beat-level on a monthly basis. The monthly reports include CPD crime indexes which are disaggregated by age, sex, race/ethnicity and beat-level.

Research Associate (2010-2012) The Illinois African American Family Commission

I conducted research with the Illinois African American Family Commission (AAFC) that analyzed data collected from various Commission surveys. In 2010 I served as PI for an AAFC study that paid particular attention to the mediating variables, e.g., identity, empathy, social normative beliefs, social cohesion, collective efficacy, intentions, that led to violence or risky behaviors associated with violence, e.g., physical fighting, weapon carrying, threats, gang activity.

2683

Lance Williams, Vita 14

The study presented an excellent opportunity to examine a neglected area in the field of adolescent violence prevention, perceptions of personal safety and violence among African American youth. Furthermore, it was important to examine youth perceptions of personal safety and violence because these perceptions may be in the causal pathway of violence-related behaviors. Understanding these perceptions may be relevant to the modification of the targeted behaviors that may, in turn, help to guide the development of more effective youth violence interventions. Findings of this study proved to be beneficial to interventionists who seek to develop culturally appropriate risk reduction programs for youth.

National Coordinator (2010-2011) African American Male Initiative

In 2010 I was PI for a study that examined Community College Initiatives Focused on Advancing the Recruitment, Retention and Graduation Rates Among African American Males. Based on the study I developed a compendium to present the best practices found in programs designed to enhance the academic achievement of African American males enrolled in 2-year institutions.

Principal Investigator (01/2007-08/2008) The State of Illinois Ceasefire Evaluation

Evaluated the effectiveness of the Chicago Project for Violence Prevention CeaseFire program, a State of Illinois funded violence reduction initiative. The purpose of the study was to find out what main "stakeholders" of this violence reduction program like individuals who reside in CeaseFire's service areas, faith leaders, victims of violence, elected officials and the police had to say about the program. The evaluation used qualitative techniques, in particular, an ethnographic/focused interview process.

Principal Investigator (03/2006-2008) Northeastern Illinois University Grow Your Own Teachers Program

The Grow Our Own Teacher Program (GYO) establishes an initiative to encourage and support paraprofessionals, parents, and other active community members in becoming certified as teachers. GYO seeks to stimulate the development of consortia made up of an institution that prepare teachers (NEIU), a targeted school district (CPS), and a community organization. Working together, these entities are to identify paraeducators and parents who have been leaders in schools with hard-to-staff positions and provide these individuals with the financial and other support they will need to complete teacher preparation programs. The new teachers are then to be placed in positions in the targeted schools. My role as the PI is to evaluate and develop programmatic matrices.

Principal Investigator (04/2004) for a study with Whitney Young High School Social Work Department, Chicago, Illinois. I conducted a focus group study that examined adolescent males' perceptions of manhood. The purpose of the study is to collect data that was used to develop a rite of passage program for at-risk male students at Whitney Young. The study involved 8 focus groups that included over 50 freshmen through senior male students.

2684

Lance Williams, Vita 14

<u>Research Associate</u> (2000-2006) Institute for Research on Race and Public Policy Research. University of Illinois-Chicago.

I conducted ethnographic/focused interview research of cultural interventions designed to reduce risky behaviors among inner-city African American youth at the Institute for Research on Race and Public Policy. Having completed the study, my goal now is to further the study by placing the findings in the context of urban policy and health disparities among African American youth.

<u>Research Assistant</u> (1996-1997) on the Aban Aya Youth Project at the University Illinois-Chicago, Prevention Research Center.

Research Project: to develop and then evaluate a school-based program designed to promote abstinence from sex, teach students how to avoid drugs and alcohol, and to teach them how to resolve conflicts non-violently.

## PUBLICATIONS

Williams, L. & Bowman, P (In Progress). Re-Tooling Urban Youth for Adaptive Coping (working title).

Williams, L. (2013). Retooling Young Men of Color for Success in School Settings: A Cultural Toolkit Model for School Counselors. *Transforming the Educational Experience of Young Men of Color: School Counseling Series and the companion workbook.* Volume IV, The College Board Advocacy & Policy Center. National Office for School Counselor Advocacy (NOSCA). Washington, DC.

Moore, N & Williams, L. (2011). The Almighty Black P Stone Nation: The Rise, Fall and Resurgence of an American Gang. Chicago, Illinois. Lawrence Hills Books.

Mendenhall, R, Harwood, S, Williams, L et. al. (2011). Rethinking 21st Century Urban Transformations: Race and the Ecology of Violence. SBE 2020 Report Rebuilding the Mosaic. Washington, DC. National Science Foundation.

Williams, L. (2011). The Breaking Barriers Report. Chicago, IL. The African American Family Commission.

Williams, L. (2010). Community College Initiatives Focused on Advancing the Recruitment, Retention and Graduation Rates Among African American Males. Dallas, Texas. The President's Roundtable.

Lance Williams, Vita 14

Williams, L. (2010). Cultural interventions for reducing violence among young, African American males. In W. Johnson (Ed). Social Work with African-American Males. New York, New York: Oxford University Press.

Williams, L. (2010). Hip-hop as a site of public pedagogy. In B. Schultz, J. Sandlin and J. Burdick (Eds). In Handbook of Public Pedagogy: Education and Learning beyond Schooling. Routledge.

Williams, L. (2009). Culture & Perceptions of Violence-related Behaviors Among Adolescents: A Role Strain and Adaptation Model. Koln, Germany. Lambert Publishing.

Williams, L. & Alexis-Bivens, S. (2008). The Father's Toolkit: A Curriculum Guide for Reconnecting Incarcerated and Formerly Incarcerated Fathers With Their Children. Springfield, Illinois. Illinois Department of Human Services.

## GRANTS

Principal Writer (2012) Black United Fund of Illinois' (BUFI) Safety Net Works Grant.

The Safety Net Works Grant funded ($50,000) by the State Illinois to support the CONNECTS @ South Shore Community-based Participatory Research Initiative.

Principal Writer (2012) Chicago State University.

The Contiguous Community Empowerment Project submitted to the State of Illinois Appropriations Committee on behalf of Chicago State University. The Contiguous Community Empowerment Project was awarded $500,000 in funding for this grant.

Principal Writer (January 2007) Black United Fund of Illinois' (BUFI) Safety Net Works Grant.

Safety Net Works is an initiative comprised of State of Illinois agencies and community-based organizations formed to help alleviate violence and killing in communities in Illinois. BUFI is headquartered in the South Shore community of Chicago, one of the 17 Safety Net Work target communities. As the Principal Writer of the grant I developed the Coalition of Organizational, Neighborhood and Network Empowerment through Culture, Talent and Spirituality (CONNECTS @ South Shore), a youth violence prevention initiative designed to reduce violence among youth ages 12 to 24 in South Shore. The purpose of CONNECTS is to foster community partnerships through strong relations among the youths, families, schools, faith-based organizations, businesses, parks, elected officials and community-based institutions and the Chicago Police Department in South Shore. BUFI was awarded $320,000 grant to implement CONNECTS @ South Shore.

Lance Williams, Vita 14

<u>Principal Writer and Program Evaluator</u>  (March 2006) The Literacy, Employment and Self-Sufficiency Project (LES)

LES seeks to provide literacy, employment and self-sufficiency programs to one hundred (100) "hard to reach" Chicago public housing residents who are significantly in need of workplace literacy and self awareness development. Funding-$150,000

<u>Co-Writer </u>(March 2006) Grow Your Own Teachers Program

The Grow Our Own Teacher Program (GYO) establishes an initiative to encourage and support paraprofessionals, parents, and other active community members in becoming certified as teachers.  GYO seeks to stimulate the development of consortia made up of an institution that prepare teachers (NEIU), a targeted school district (CPS), and a community organization (ACORN Association of Community Organizations for Reform Now). Working together, these entities are to identify paraeducators and parents who have been leaders in schools with hard-to-staff positions and provide these individuals with the financial and other support they will need to complete teacher preparation programs. The new teachers are then to be placed in positions in the targeted schools. Funding-$40,000 Planning Grant

## SCHOOL BASED INTERVENTIONS AND PROGRAMS

Walter Q. Gresham Elementary School (Chicago Public School). 1991-2001.
Developed and coordinated an all males program for identified "at-risk" boys in grades 5 through 8.  Conducted in biweekly sessions designed to carry out conflict resolution, anger management, individual counseling and mentoring, social and cultural enrichment, decision-making skills, social competence, resistance skills and normative beliefs. The goal of this program is to reduce insubordination, fighting, gang participation, drug use and other anti-social behaviors among participants.

<u>Asa Phillip Randolph Magnet School</u> (Chicago Public School).  1991-1998
As described above.  Target Population-grades 1 through 8.

<u>Hirsch Metropolitan High School</u> (Chicago Public School).  1996-1998
As a member of the Hirsch Metropolitan High School Probation Team, I conducted a program for the most "at-risk" boys identified by the school Principal, Counselors and school Disciplinarian.  These young men were identified to participate in this mentorship program due to problems with truancy, poor grades, gang related activity and anti-social behavior.  I started with a group of (15) boys in September 1996.  By the time the school year ended, the group had mushroomed to (40) forty boys.  By 1998, the group consisted of over 100 boys.

<u>Tanner Elementary School</u> (Chicago Public School).  April 20th through June 3rd 1992.

Lance Williams, Vita 14

Planned, implemented and conducted a rites of passage program for over (100) one-hundred 4th, 5th, and 6th grade boys. The goal of the rites of passage was to introduce the participants to traditional African value systems and character development.

Jensen/Miller Scholastic Academy (Chicago Public School) 1991 through 1993. Developed and coordinate an all males program for identified "at-risk" boys in grades 3 through 8. Conducted in biweekly sessions designed to carry out conflict resolution, anger management, individual counseling and mentoring, social and cultural enrichment, decision-making skills, social competence, resistance skills and normative beliefs. The goal of this program is to reduce insubordination, fighting, gang participation, drug use and other anti-social behaviors among participants.

Frazier Elementary School (Chicago Public Schools) 1991 through 1992. As described above.

West Pullman School (Chicago Public Schools) Jan. 6th through Feb. 28th, 1992 Planned, implemented and coordinated the Culture Alive Program. This program consisted of over 25 visual and performing artists, a host of cultural vendors and educators who converged on the school during this period to bring each child and classroom from kindergarten to 8th grade the rich and diverse cultures of Africa. The Program culminated with a school wide taste of Africa and two assemblies.

## TEACHING EXPERIENCE

Northeastern Illinois University                    1999-Present

Inner City Studies Education Courses- A Critical Analysis of Hip-Hop Culture, History of Culture and Ethnic Groups, The Inner City Community and Inner City Organization and Institution Building

University of Illinois-Chicago                    2004-2006

Community Health Sciences Division Course- Behavioral Sciences in Public Health (Graduate Program)

National-Louis University                    1999-2004

Applied Behavioral Sciences Division Course- Methods of Inquiry in the Behavioral Sciences

Lance Williams, Vita 14

| Board Positions |
| --- |

Board Chair, Lupe Fiasco Foundation. The foundation provides inner city youth ages 14-24 with comprehensive positive youth development programming that embodies educational advancement, service learning and leadership, global capacity building and music education. 2012-Present

Board Member, The Diversifying Higher Education Faculty in Illinois Program (DFI). DFI was established by the Illinois General Assembly and signed as Public Act 093-0862 on August 4, 2004.  The purpose of DFI is to increase the number of underrepresented faculty and staff in Illinois institutions of higher education and higher education governing boards.  2004-2014

Executive Committee Member, **Governor's Statewide Community Safety & Reentry Working Group.** The primary purpose of the committee is to provide recommendations for review by January 2006 for the design of a new statewide reentry system.  2004-2006

Founder/Board Chair, The Know Thyself Program INC.  Chicago, IL. The Know Thyself Program, a not-for-profit community-based organization, does school-based cultural and social enrichment for inner-city youth who live in Chicago's marginalized communities. 1989-present

Member of the **Hirsch Metropolitan High School, Vernon Johns Community Academy and Fulton Elementary School Probation Management Team.**   In affiliation with the I Had A Dream, Inc. and National School Services, I monitored school community safety and make recommendations for improvement to the Probation Manager. 1997 to 2000.

Chief Consultant to Chicago Public Schools-School Community Safety & Security Program at Carter Elementary School.  Implemented the **Kijiji Kwa Amani** (village of Peace) **Program** designed to foster a safe environment for Carter School students.  The program included the establishment and training of the Kijiji Kwa Amani Parent Patrol and conflict resolution training for a student leadership group. March 17th through June 16th, 1995.

Consultant services to Chicago Public Schools Academic and Vocational  Education Department. Worked as an advisor to Nansen School on effective **Parenting in violent and drug plagued environments**. Chicago, IL.  April 12th, 1994.

Consultant services to Hirsch Metropolitan High School Local School Council.  Worked as an advisor to the Hirsch School Local School Council on effective approaches to dealing with **Violence and Drug Prevention Strategies**. May 19th, 1994.

Lance Williams, Vita 14

Chief Consultant and advisor to Carter School/CANAL Project Curriculum Development Committee on the **Infusion of African Centered Topics Into The Chicago Public Schools <u>Systemwide Objectives and Standards</u> At The Intermediate Level (4-5).** This committee produced five lessons in each intermediate subject area (Language Arts, Mathematics, Science and Social Studies). Carter School. Chicago, IL. May 11th through July 15th, 1993.

2690

**CERTIFICATE OF SERVICE**

I certify that on the 6ʰ day of <u>February</u>, 2015 service of a true and complete copy of the above and foregoing pleading or paper was made upon each party or attorney of record herein by the electronic case filing system (ECF).

By:      s/Arlington J. Foley
         Arlington J. Foley
         Attorney at Law

```
MIME-Version:1.0
From:CMECFinnd@innd.uscourts.gov
To:CMECFinnd@localhost.localdomain
Bcc:
--Case Participants: Pablo DeCastro (pdecastro@attorneydecastro.com,
ysierra@rascia-decastro.com), Kurt R Earnst (kre@braje-nelson.com), Matthew N Fech
(mnf@fech-law.com), Arlington J Foley (arlingtonfoley@att.net), Jack Friedlander
(jack@jackfriedlander.com, office@jackfriedlander.com), Bruce R Hegyi - AUSA
(bruce.hegyi@usdoj.gov), Roxanne Mendez Johnson (attorneyrmj@gmail.com), Scott L King
(dwilliams@scottkinggroup.com, sking@scottkinggroup.com), Visvaldis P Kupsis
(vpkupsis@hotmail.com), Dean R Lanter - AUSA (dean.lanter@usdoj.gov,
janet.eisenmann@usdoj.gov, usainn.ecfcivil@usdoj.gov), John Maksimovich
(criminallaw@johnmaksimovich.com), John E Martin - FCD (john_martin@fd.org), Sheldon B
Nagelberg (sbnagelberglaw@att.net), David J Nozick - AUSA (david.nozick@usdoj.gov,
janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov,
usainn.ecfcivil@usdoj.gov), Mark A Psimos (psimoslaw@airbaud.net), Robert L Rascia
(rrascia@rascia-decastro.com, ysierra@rascia-decastro.com), Stephen Edward Scheele
(pkd@gk4law.com, ses@gk4law.com), Paul Jeffrey Schlesinger (pjeffslaw@aol.com), Adam
Tavitas (adtavitas@aol.com, b.lynneadams@yahoo.com), John T Theis (theislaw@aol.com),
James N Thiros (jim@thiros.com, lynn@thiros.com), Bryan M Truitt (bryan@tblawyers.com,
sherrie@tblawyers.com), David E Vandercoy (david.vandercoy@valpo.edu), Thomas W Vanes
(b.lynneadams@yahoo.com, tom.vanes@sbcglobal.net), Ihor Alexander Woloshansky
(ihorlawyer@hotmail.com), Richard C Wolter (b.lynneadams@yahoo.com), R Brian Woodward
(carolb@wbbklaw.com, rbwoodward@wbbklaw.com), Magistrate Judge Andrew P Rodovich
(rodovich_chambers@innd.uscourts.gov, ruth_nagy@innd.uscourts.gov), Chief Judge Philip P
Simon (denise_woodside@innd.uscourts.gov, jacob_hamann@innd.uscourts.gov,
lauren_schwartz@innd.uscourts.gov, mira_serrill-robins@innd.uscourts.gov,
noel_collins@innd.uscourts.gov, philip_simon@innd.uscourts.gov)
--Non Case Participants: Matthew D Soliday (office@matthewsolidaylaw.com)
--No Notice Sent:

Message-Id:2704866@innd.uscourts.gov
Subject:Activity in Case 2:11-cr-00077-PPS-APR United States of America v. Briseno et al
Jury Trial
Content-Type: text/html
```

## U.S. District Court Northern District of Indiana [LIVE]

## USDC Northern Indiana

## Notice of Electronic Filing

The following transaction was entered on 2/9/2015 at 6:30 PM EST and filed on 2/9/2015

| | |
|---|---|
| **Case Name:** | United States of America v. Briseno et al |
| **Case Number:** | 2:11-cr-00077-PPS-APR |
| **Filer:** | |
| **Document Number:** | 1403(No document attached) |

**Docket Text:**

**JURY TRIAL (4th DAY OF EVIDENCE) as to Juan Briseno held on 2/9/2015 before Chief Judge Philip P Simon. Parties present as previously noted. Court receives information regarding juror #124 (alt #2) who cannot attend due to serious illness of family member. Court consults with counsel who have no objection to excusing juror #124. Juror #124 (alt #2) is excused from these proceedings for today and the remainder of the trial. Govt continues to present evidence. Ruling by court as to earlier discussion held with counsel regarding certifications attached to business records. Certifications are not permitted,**

2692

**therefore, Govt exhibit Cell Record 6 is stricken. Govt continues to present evidence, does not conclude. Trial continued to Tuesday, 2/10/15 at 8:30 a.m. Defendant REMANDED to custody of US Marshal.(Court Reporter Stacy Drohosky (am) and Tina Gallucci (pm).) (nac)**

**2:11−cr−00077−PPS−APR−1 Notice has been electronically mailed to:**

David E Vandercoy     david.vandercoy@valpo.edu

Arlington J Foley     arlingtonfoley@att.net

Mark A Psimos     psimoslaw@airbaud.net

Scott L King     sking@scottkinggroup.com, dwilliams@scottkinggroup.com

James N Thiros     jim@thiros.com, lynn@thiros.com

Thomas W Vanes     tom.vanes@sbcglobal.net, b.lynneadams@yahoo.com

Ihor Alexander Woloshansky     ihorlawyer@hotmail.com

R Brian Woodward     rbwoodward@wbbklaw.com, carolb@wbbklaw.com

John Maksimovich     criminallaw@johnmaksimovich.com

Visvaldis P Kupsis     vpkupsis@hotmail.com

Sheldon B Nagelberg     sbnagelberglaw@att.net

John E Martin − FCD     john_martin@fd.org

Adam Tavitas     Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander     jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele     ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst     kre@braje−nelson.com

Bryan M Truitt     bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis     theislaw@aol.com

Robert L Rascia     rrascia@rascia−decastro.com, ysierra@rascia−decastro.com

Paul Jeffrey Schlesinger     pjeffslaw@aol.com

Matthew N Fech     mnf@fech−law.com

Pablo DeCastro     pdecastro@attorneydecastro.com, ysierra@rascia−decastro.com

Dean R Lanter − AUSA     dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov,

2693

janet.eisenmann@usdoj.gov

David J Nozick – AUSA    David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson    attorneyrmj@gmail.com

Bruce R Hegyi – AUSA    bruce.hegyi@usdoj.gov

**2:11–cr–00077–PPS–APR–1 Notice has been delivered by U.S. Mail or other means to:**

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | NO. 2:11 CR 77 PPS |
| | ) | |
| JUAN BRISENO | ) | |

AMENDED PETITION FOR WRIT OF HABEAS CORPUS AD TESTIFICANDUM

Comes now David Capp, United States Attorney for the Northern District of Indiana, by Assistant United States Attorney David J. Nozick, and represents to the Court that the trial for the above-captioned defendant is set for February 2, 2015, at 8:30 a.m. (Central time), and that a prisoner, Jose Lopez (DOC number 248056), is necessary to be a witness therein.

WHEREFORE, your petitioner prays this Honorable Court grant a Writ of Habeas Corpus ad Testificandum to be directed to:

Warden                               United States Marshal
Westville Correctional Facility      Northern District of Indiana
Westville, Indiana                   Hammond, Indiana

commanding the surrender of the body of this prisoner to the United States Marshal for the Northern District of Indiana, or one of his duly authorized deputies, or any authorized Marshal, so that the Marshal, or deputy, may produce the body of the prisoner in the United States District Court in the Federal Building, 5400 Federal Plaza, Hammond, Indiana, on February 12, 2015, at 8:30 a.m. (Central time), so that the prisoner may be present and testify, the prisoner to be

1

2695

returned after the conclusion of the trial by the United States Marshal, or one of his duly authorized deputies, to the said institution.

Respectfully submitted,

DAVID CAPP
United States Attorney

By:     /s/ David J. Nozick
        DAVID J. NOZICK
        Assistant United States Attorney
        5400 Federal Plaza, Suite 1500
        Hammond, Indiana 46320
        (219) 937-5500

2

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 2:11-cr-77 |
| | ) | |
| JUAN BRISENO, | ) | |
| | ) | |
| Defendant. | ) | |

**WRIT OF HABEAS CORPUS AD TESTIFICANDUM**

TO:    Warden                                United States Marshal
       Westville Correctional Facility       Northern District of Indiana
       Westville, Indiana                    Hammond, Indiana

The court being advised that prisoner Jose Lopez (DOC 248056) is a necessary witness in the trial of Juan Briseno in *United States v. Juan Briseno*, on February 2, 2015, at 8:30 a.m. (Central time), and that said prisoner is in the lawful custody and control of the Warden, Westville Correctional Facility, Westville, Indiana.

It is **ORDERED** and **ADJUDGED** that the Warden, Westville Correctional Facility, Westville, Indiana, be required and is hereby commanded to surrender the body of prisoner Jose Lopez (DOC 248056) to the United States Marshal for the Northern District of Indiana, or any duly authorized deputy, or any authorized Marshal, for the purpose of producing the body of said prisoner for trial in the federal courthouse, Hammond, Indiana, on February 12, 2015, at 8:30 a.m. (Central time), so that the prisoner may be present to testify in said trial, and thereafter to be returned to the institution by the United States Marshal, or one of his duly authorized deputies, under safe and secure conduct, and have you then and there this Writ.

**SO ORDERED**

ENTERED this 10th day of February, 2015.

/s/ Andrew P. Rodovich
United States Magistrate Judge

```
MIME-Version:1.0
From:CMECFinnd@innd.uscourts.gov
To:CMECFinnd@localhost.localdomain
Bcc:
--Case Participants: Bryan M Truitt (bryan@tblawyers.com, sherrie@tblawyers.com), David J
Nozick - AUSA (david.nozick@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov,
susan.devries@usdoj.gov, usainn.ecfcivil@usdoj.gov), Kurt R Earnst (kre@braje-nelson.com),
Paul Jeffrey Schlesinger (pjeffslaw@aol.com), Pablo DeCastro
(pdecastro@attorneydecastro.com, ysierra@rascia-decastro.com), Sheldon B Nagelberg
(sbnagelberglaw@att.net), Thomas W Vanes (b.lynneadams@yahoo.com,
tom.vanes@sbcglobal.net), Richard C Wolter (b.lynneadams@yahoo.com), John T Theis
(theislaw@aol.com), Adam Tavitas (adtavitas@aol.com, b.lynneadams@yahoo.com), Dean R
Lanter - AUSA (dean.lanter@usdoj.gov, janet.eisenmann@usdoj.gov,
usainn.ecfcivil@usdoj.gov), John E Martin - FCD (john_martin@fd.org), Scott L King
(dwilliams@scottkinggroup.com, sking@scottkinggroup.com), Mark A Psimos
(psimoslaw@airbaud.net), Matthew N Fech (mnf@fech-law.com), Ihor Alexander Woloshansky
(ihorlawyer@hotmail.com), James N Thiros (jim@thiros.com, lynn@thiros.com), Robert L
Rascia (rrascia@rascia-decastro.com, ysierra@rascia-decastro.com), Arlington J Foley
(arlingtonfoley@att.net), Roxanne Mendez Johnson (attorneyrmj@gmail.com), Visvaldis P
Kupsis (vpkupsis@hotmail.com), Stephen Edward Scheele (pkd@gk4law.com, ses@gk4law.com),
Jack Friedlander (jack@jackfriedlander.com, office@jackfriedlander.com), Bruce R Hegyi -
AUSA (bruce.hegyi@usdoj.gov), R Brian Woodward (carolb@wbbklaw.com,
rbwoodward@wbbklaw.com), John Maksimovich (criminallaw@johnmaksimovich.com), David E
Vandercoy (david.vandercoy@valpo.edu), Chief Judge Philip P Simon
(denise_woodside@innd.uscourts.gov, jacob_hamann@innd.uscourts.gov,
lauren_schwartz@innd.uscourts.gov, mira_serrill-robins@innd.uscourts.gov,
noel_collins@innd.uscourts.gov, philip_simon@innd.uscourts.gov), Magistrate Judge Andrew P
Rodovich (rodovich_chambers@innd.uscourts.gov, ruth_nagy@innd.uscourts.gov)
--Non Case Participants: Matthew D Soliday (office@matthewsolidaylaw.com)
--No Notice Sent:

Message-Id:2705941@innd.uscourts.gov
Subject:Activity in Case 2:11-cr-00077-PPS-APR United States of America v. Briseno et al
Jury Trial
```
Content–Type: text/html

### U.S. District Court Northern District of Indiana [LIVE]

### USDC Northern Indiana

## Notice of Electronic Filing

The following transaction was entered on 2/10/2015 at 6:18 PM EST and filed on 2/10/2015

| | |
|---|---|
| **Case Name:** | United States of America v. Briseno et al |
| **Case Number:** | 2:11–cr–00077–PPS–APR |
| **Filer:** | |
| **Document Number:** | 1407(No document attached) |

**Docket Text:**
 **JURY TRIAL (5th DAY OF EVIDENCE) as to Juan Briseno held on 2/10/2015 before Chief Judge Philip P Simon. Parties present as previously noted. Govt continues to present evidence, does not conclude. Trial continued to Wednesday 2/11/2015 at 8:30 a.m. Defendant REMANDED to custody of US Marshal.(Court Reporter Stacy Drohosky (am) and Kelly Fitzgerald (pm).) (nac)**

**2:11−cr−00077−PPS−APR−1 Notice has been electronically mailed to:**

David E Vandercoy    david.vandercoy@valpo.edu

Arlington J Foley    arlingtonfoley@att.net

Mark A Psimos    psimoslaw@airbaud.net

Scott L King    sking@scottkinggroup.com, dwilliams@scottkinggroup.com

James N Thiros    jim@thiros.com, lynn@thiros.com

Thomas W Vanes    tom.vanes@sbcglobal.net, b.lynneadams@yahoo.com

Ihor Alexander Woloshansky    ihorlawyer@hotmail.com

R Brian Woodward    rbwoodward@wbbklaw.com, carolb@wbbklaw.com

John Maksimovich    criminallaw@johnmaksimovich.com

Visvaldis P Kupsis    vpkupsis@hotmail.com

Sheldon B Nagelberg    sbnagelberglaw@att.net

John E Martin − FCD    john_martin@fd.org

Adam Tavitas    Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander    jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele    ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst    kre@braje−nelson.com

Bryan M Truitt    bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis    theislaw@aol.com

Robert L Rascia    rrascia@rascia−decastro.com, ysierra@rascia−decastro.com

Paul Jeffrey Schlesinger    pjeffslaw@aol.com

Matthew N Fech    mnf@fech−law.com

Pablo DeCastro    pdecastro@attorneydecastro.com, ysierra@rascia−decastro.com

Dean R Lanter − AUSA    dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov,
janet.eisenmann@usdoj.gov

David J Nozick − AUSA    David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov,
janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson    attorneyrmj@gmail.com

Bruce R Hegyi – AUSA    bruce.hegyi@usdoj.gov

**2:11−cr−00077−PPS−APR−1 Notice has been delivered by U.S. Mail or other means to:**

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

UNITED STATES OF AMERICA,

        **Plaintiff**

vs

**JUAN BRISENO,**

        **Defendant**               **CAUSE NO:   2:11-CR-77**

**FRCP, RULE 16 SUMMARY OF EXPERT
WITNESS EXPECTED TESTIMONY**

Comes now Defendant Juan Briseno, by counsel John Maksimovich and Arlington J. Foley, and represents the following to the Court:

1. During the penalty phase, Defendant Juan Briseno expects to call Mark A. Bezy, a former Warden for the Federal Bureau of Prisons with over 30 years of experience managing prisoners, and Thomas J. Reidy, Ph.D., as future dangerousness experts. Defendant Juan Briseno's purpose in calling these two gentlemen as expert witnesses during the penalty phase is to rebut the government's assertion that he poses a risk of future dangerousness.

2. It is expected that Mark A. Bezy will testify about classification procedures, levels of custody, security levels, security procedures, disciplinary practices and general prison procedures within the facilities of the United States Bureau of Prisons. Mr. Bezy's CV has previously been provided to the government as an attachment to the Defendant's Notice of Rebuttal Expert Witnesses (DE#1359) filed January 23, 2015.  It is expected that Mark A. Bezy will testify in a manner very similar, if not identical to, the manner in which he testified in United States v. Alexis Candelario Santana, Docket No. 09-427, United States District Court, District of Puerto Rico, March 19, 2013. Assistant United States Attorney Bruce Hegyi represented the United States of America in that proceeding and cross examined Mr. Bezy. Therefore, the government should be well acquainted with both Mr. Bezy and the topics he will address in his direct testimony during the penalty phase. (A copy of Mr. Bezy's penalty phase direct testimony in Candelario Santana is attached hereto as Exhibit "A").

-1-

3.      It is expected that Thomas J. Reidy, Ph.D. will testify about the rates of violence in prison by inmates sentenced to life imprisonment without parole as compared with other inmates, the relationship of offense history to prison adjustment, the reliability of predictions and findings of future danger in capital cases and the capability of the Bureau of Prisons to safely house inmates such as the defendant, Juan Briseno. It is expected that Thomas J. Reidy, Ph.D., will testify in a manner very similar, if not identical to, the manner in which he testified in United States v. Gary Douglas Watland, Docket No. 11-CR-0038 JLK, United States District Court for the District of Colorado, November 4, 2013. (A copy of Dr. Reidy's penalty phase direct testimony in Watland is attached hereto as Exhibit "B").

4.      Additionally, Dr. Reidy has prepared a power point presentation entitled "Future Dangerousness as an Aggravating Factor" dated October 23, 2013 which comprehensively covers the topics to which he is expected to testify. The document is too lengthy to attach hereto, however, counsel for Briseno will e-mail the power point presentation to Assistant United States Attorney Bruce Hegyi immediately so that the government can be more perfectly informed of Dr. Reidy's expected testimony and can prepare for it.

WHEREFORE,  Defendant, Juan Briseno, by counsel, John Maksimovich and Arlington J. Foley, respectfully request that the Court accept this FRCP, Rule 16 Summary of Expert Witness Expected Testimony and for all other just and proper relief.


**Respectfully submitted:**

/s/ *Arlington J. Foley*
_____
Arlington J. Foley /#6905-45
Attorney For Defendant
1942 North Main Street
Crown Point, IN 46307
PH: 219.661.1200
FX: 219.661.1205

/s/ *John Maksimovich*
_____
John Maksimovich /#9950-45
Attorney For Defendant
1946 North Main Street
Crown Point, IN 46307
PH: 219.663.1900
FX: 219.663.1908


-2-

2703

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | |
| **Plaintiff** | |
| **vs** | |
| **JUAN BRISENO,** | |
| **Defendant** | **CAUSE NO:   2:11-CR-77** |

## CERTIFICATE OF SERVICE

I hereby certify that on February 11, 2015, I electronically filed:

### *FRCP, RULE 16 SUMMARY OF EXPERT WITNESS EXPECTED TESTIMONY*

with the Clerk of the Court using the CM/ECF system, which sent notification of such filing to the following:

| | |
|---|---|
| David J. Nozick | Bruce Hegyi |
| Assistant United States Attorney | Assistant United States Attorney |

and I hereby certify that I have mailed by United States Postal Service, the document to the following non-CM/ECF participants:

N/A

By:   /s/ *John Maksimovich*

John Maksimovich /#9950-45
Attorney For Defendant
1946 North Main Street
Crown Point, IN 46307
PH: 219.663.1900
FX: 219.663.1908
Email: jm@johnmaksimovich.com

-3-

2704



UNITED STATES DISTRICT COURT

DISTRICT OF PUERTO RICO

UNITED STATES OF AMERICA,

        Plaintiff,

v.                     Docket No. 09-427

ALEXIS CANDELARIO SANTANA,  San Juan, Puerto Rico
                      March 19, 2013
        Defendant.

_____

JURY TRIAL - MORNING SESSION

BEFORE THE HONORABLE JUDGE JOSÉ A. FUSTÉ,

UNITED STATES DISTRICT JUDGE.

_____

APPEARANCES:

For the Government:    Mr. Bruce Hegyi, AUSA
                    Ms. Maria Dominguez Victoriano, AUSA
                    Ms. Marcela Mateo, AUSA

For the Defendant:    Mr. David Arthur Ruhnke, PHV
                    Mr. Francisco Rebollo Casalduc, Esq.

Proceedings recorded by stenography. Transcript produced by CAT.

1

I N D E X

WITNESSES:                          PAGE

MARK BEZY
Direct examination by Mr. Ruhnke (Cont.)    3
Cross-examination by Mr. Hegyi         65
Redirect examination by Mr. Ruhnke     109

JOSE GARCIA COLON
Direct examination by Mr. Rebollo      110
Cross-examination by Mr. Hegyi       116

EXHIBITS:

Government's Exhibit P-16           56

2

San Juan, Puerto Rico

March 19, 2013

At or about 8:43 AM

    *   *   *

    THE COURT: Members of the jury, this Exhibit 206 composite that was previously seen by you in the guilt phase, is also evidence in this particular phase.

    Here. Mr. Ruhnke, will you please?

    MR. RUHNKE: May I proceed?

    M A R K  B E Z Y,

called as a witness by the defense, having been previously sworn, testified as follows:

    DIRECT EXAMINATION (Continued)

BY MR. RUHNKE:

Q. Mr. Bezy, good morning.

A. Good morning.

Q. When we left off -- one thing. You mentioned yesterday this guy who escaped out of USP Pollock by hiding himself inside some kind of shipping -- some kind of shipment going out of the place. Did you have a chance to check last night what happened to him?

A. Yes. He was captured in Canada in 2007.

Q. He was out for about 16 months, 18 months?

A. Correct.

Q. Where is he today?

3

A. He's at the ADX.

Q. That's the administrative maximum facility in Florence, Colorado?

A. Correct.

Q. Okay. We were talking yesterday about guard towers and central towers and the kinds of force that can be utilized. What kind of weaponry is available to that officer who is in that central tower? What kind of arsenal does he have in his command or her command?

A. He has a wide range of less lethal and lethal munitions from --

Q. Let's talk about less lethal, non-lethal measures. Let's suppose a fight breaks out. He sees a fight break out in the yard down below. Two inmates are going at it or maybe a bunch of inmates are going at it. What can he do? Obviously he calls it in so people respond, but other than calling it in, what can he do from his guard tower to intervene?

A. The first thing they do is press a button. The button sends off audio alarm from speakers surrounding the towers to a whole yard. It's a loud like siren type notice. And then in both English and Spanish it tells the inmates, get down, get down.

Q. And if the inmates don't get down, if they don't obey the order -- first of all, if they don't obey the order, they've already committed a violation, correct?

4

Exhibit A             2705

A. Correct.

Q. And if they don't get down, what is the next step?

A. The next step would be deploying less lethal munitions, either hand delivery or through a shotgun, less lethal load, or a 37 millimeter load.

Q. And what kind of things would be shot or thrown at this group of inmates, for example, hypothetical group of inmates?

A. In the shotgun there's what they call a flash bang load, a projectile shot out of a shotgun. Get out a certain distance, and it's a mini explosion, light and sound. That's in hand delivery. He has what we commonly call a sting ball grenade.

Q. What's a sting ball grenade?

A. It's a less lethal munitions, looks like a rubber ball, but it's got a detonation mechanism on it. Pull the pin. You throw it. Once it goes out, it explodes. Inside of it there's a number of -- depending on the caliber ball, from 30 to 60, either mini balls, rubber balls inside of it. Once that explodes, that just projects those all around in 360 degrees.

He can throw one of those. He can shoot those from a delivery system.

Q. And they don't cause lethal injuries, but they hurt like heck, right?

A. Yes. They're uncomfortable.

Q. And are the guards also armed with an assault rifle?

A. Yes. They have a lethal weapon up there.

Q. That's an AR-15?

A. Correct.

Q. Shooting .22 caliber ammunition?

A. On the 12 gauge shotgun, yes.

Q. And a 12 gauge shotgun. And under what circumstances is a guard authorized to use lethal force against someone?

A. If there's an imminent threat to staff safety or the institution.

Q. If two inmates are going at it, say each of them has a shank, a homemade knife, would the CO in the tower use lethal force to break that up?

A. After a warning, he would have that option, yes.

Q. If a staff member was being assaulted, seriously assaulted, would the option be to use lethal force?

A. Yes.

Q. And in your experience within the Bureau of Prisons, has that in fact happened, if guards shot and killed inmates in those kind of situations?

A. Yes.

Q. Never on your watch, but you know about it in other institutions?

A. Correct.

Q. You told us yesterday that the only choice an inmate can

really make is to obey the rules or not obey the rules. And have you reviewed with me a video of what's called a cell extraction or an extraction of an inmate from a situation?

A. Yes.

Q. And in this video, and we can set the scene when we start playing it, but in the video it's in the special housing unit, happens to be in Allenwood, Pennsylvania, United States Penitentiary. The inmate in question is in special housing, has gone out to the recreation cage, and it's now time for him to come back from the recreation cage. And he's refusing to submit to handcuffs, correct?

A. Correct.

Q. When an inmate is moved in a special housing type situation, does he travel freely or are there some restraints that are applied?

A. No. Prior to an inmate coming out of a cell in a special housing unit, in each solid cell door there's what we call a cuff slot or food slot or bean slot. There's a lot of acronyms for it. But the center of the door will open up, and the door will actually fold down. It's about eight inches by maybe --

Q. 18?

A. 18. And that's how inmates are fed. But to get an inmate out, the inmate would be directed to back up to that slot, place his hands up to the slot with thumbs up. At that

point staff would apply restraints to him, control restraints, and open the door. Get control of the inmate again. Then they would go over him with a hand held metal detector, and pat search. And then they could move him.

Q. So say I'm an inmate and they want to move me to a recreation cell. This is my door. Solid storm door with window, a flap in the door that opens and closes. I would back up, stick my hands through the slot, and then you would handcuff me?

A. Yes. Thumbs up, palms out.

Q. And once I'm handcuffed from behind, you would open the door. And what would you do with the handcuffs?

A. There's a chain between the two handcuffs. Staff control that chain.

Q. So once I came out, the staff member would escort me, and if following protocol, hold onto the chain to maintain control of the inmate?

A. Correct.

Q. It's a reality if you're handcuffed behind and someone takes a handcuff and jerks it straight up in the air, you're looking to go down to the ground?

A. Yes.

MR. RUHNKE: Your Honor, I'm going to play this video. It's marked Defendant's Exhibit 55. I'm going to remark all these exhibits to start at number one, as I was

**Exhibit A**

requested by --

THE COURT: You can leave them like that.

MR. RUHNKE: Okay.

THE COURT: Leave them like that. It's easier, because we already referred to them in the record with those numbers.

MR. RUHNKE: Okay. So let me get to defendant input and see if this works. Can everyone see that on monitors? And the sound is supposedly up, and this should just play. I'm going to play about five minutes of it.

(Recording played into the record.)

BY MR. RUHNKE:

Q. Okay. I'm going to stop it at that point. As it continues to play, they essentially pack him up and carry him back inside the special housing unit?

A. Correct.

Q. There's no other incidents, other scuffling going on other than what we just looked at?

A. Correct.

Q. And there's several things on that incident. First of all, there's a reference to confrontation avoidance. Is that part of the policy of trying to diffuse a use of violence like had to be used? Use of force like in this situation?

A. Yes, it is.

Q. What is confrontation avoidance?

A. When the inmate is in a secure area, a cell, or in this situation he was in a rec cage, he posed no immediate danger to staff or another inmate. He was contained. So at that point the lieutenant would call the captain. The captain would call the warden. And the warden would approve it. And then they would go into confrontation avoidance.

Normally you get one or two staff who have a rapport with the inmate. If you can't find anybody, you get somebody from mental health, somebody from his unit team, or in this case they used someone from the intel section of the institution. Those staff go out there and try to talk the inmate into complying.

And again, the situation with this is the inmate makes the choice. He's coming out. He just doesn't know it then. But he's going to come out. But we try to diffuse it. We're not going to bow to his demands or anything at that point. We'll listen to him, but again, he's going to cuff up and come out.

But sometimes if they want to say some things, we allow them to say it. Everything is filmed. It's all documented on video. It's all reviewed after the fact. The warden reviews every use of force. The warden, captain, AW, and the health services administrator.

So it's all reviewed. It's just a way to try to gain the inmate's compliance without going immediately to

force.

Q. Now, in -- you just described a way of moving inmates with their handcuffs behind them, and, you know, controlling the chain by the CO. Are there more restrictive ways of moving inmates from point A to point B within an institution?

A. Yes. Based on the inmate's behavior, the captain, AW, or warden, it's normally the warden and the captain, can authorize a three-man hold, place a three-man hold on the inmate when -- before the inmate is taken out of the cell or before the doors open. The inmate must be in restraints, and there has to be three people, three staff present.

They can also increase the restraint requirement on the inmate. They can go -- in addition to the handcuffs, they can use a Martin chain, which secures the handcuffs to the inmate's body. And then we can also go to leg irons if we have to.

Q. I'm going to play another short video marked Defendant's Exhibit 56. We've reviewed that together, you and I?

A. Yes.

Q. And it shows the situation you're describing, somebody moving with restraints, with greater restrains than just handcuffs, correct?

A. Correct.

Q. And I'll have you describe them while we look at it. I don't know what the error message is in the middle of the screen, in my screen anyway.

MR. REBOLLO: It's not here.

MR. RUHNKE: It's not there? Okay.

(Recording played into the record.)

BY MR. RUHNKE:

Q. Let me stop it there for a second. He's already out of is his cell, correct?

A. Correct.

Q. And if you look to the right of the video screen, do you see the cell door? And is that the slot you were talking about earlier?

A. Yes, it is.

Q. In fact, in the foreground, there's one that happens to be open. And the next cell down it's closed. And I guess they get locked once they're closed; is that correct?

A. Yes.

Q. Okay. And can you describe what kind of restraints this inmate is in, and what kind of hold or move or term BOP would use to describe this kind of movement?

A. This is a three-man hold with an extra precaution of videotaping it. Not all inmate movements are videotaped. This one is. And the inmate is in full restraints. You can see he's in leg irons. He has the Martin chain around his waist. And the handcuffs are in front of him.

Q. And I'll continue the video for just about two minutes,

Exhibit A                    2707

so you can see the leg chains. He's got a chain around his waist. And where are the the handcuffs in relation to the chain around the waist?

A.   In the center, low belly.

Q.   So that the chain in the handcuffs is in the chain, so he can't even put his hand up?

A.   Right. The chain holds the restraints, goes to the body.

Q.   He's being moved. What's going on right now?

A.   They're making sure that the area they're going to move to is clear of all traffic.

Q.   And why do they have him facing the wall?

A.   Just to -- he's less threat to staff that way.

Q.   Okay. Does he have a black box?

A.   Yeah. Yes. He's wearing what we call a black box or a security box. It's a plastic mechanism, hard plastic, that goes over the handcuffs. And it covers the chain. It immobilizes the handcuffs, makes the handcuffs basically one solid unit.

        Then the chain would protrude through that, and it holds the -- it just prevents any movement from the cuffs.

Q.   Okay. And then it just basically continues along those lines until he gets to wherever it is he's going at the moment, correct?

A.   Yes.

Q.   And these are options that -- does a warden have the

discretion to say every time this inmate comes out of his cell, I want him restrained like this or how does that work?

A.   Warden has the authority, yes.

Q.   I want to talk to you about the day in the life of an average -- an average inmate at an United States Penitentiary. And I'll use this earlier overhead photograph of the United States Penitentiary in Allenwood kind of to illustrate what we're talking about.

        So again, this is the overhead. This is United States prison, penitentiary at Allenwood in Pennsylvania, eastern, central Pennsylvania. These are housing units; am I correct about that? The items I'm touching with my pen?

A.   Yes.

Q.   And we saw the entrance to the institution is up here, correct?

A.   Correct.

Q.   In fact, this is the special housing unit area right here, correct?

A.   Correct.

Q.   That's where the video we just saw, the guy being tracked out of the cell was filmed, correct?

A.   Correct.

Q.   And so how does a day start? Say you're a general population inmate at an United States Penitentiary. You're not in special housing. You're not anything but a general

population inmate. What goes on in a typical day?

A.   Monday through Friday, anywhere between 6:00 AM and 6:30 AM, the officers and units would go around and unlock each cell.

Q.   Okay. Up until that point, and overnight you've been confined or the inmate's been confined in this sort of two man cell, correct?

A.   Correct.

Q.   So at six or eight o'clock -- I'm sorry. Say it again, the time.

A.   Between 6:00 and 6:30 normally.

Q.   The cell doors get opened?

A.   Yes.

Q.   And there's a -- is it electronic or just individual key?

A.   No, each door is manually keyed.

Q.   And what happens? What happens after the doors get opened? What are the inmates allowed to do?

A.   Well, the inmates then have an opportunity if they want to take a shower, brush their teeth, excuse me, get dressed, get ready for the work day. Approximately when the dining room is ready to open and that -- they'll start the morning meal after the Lieutenant authorizes it.

        They'll call each unit for the morning mail. The door will be open for a period of ten minutes. The inmates have ten minutes to exit the unit to the dining room. Then

the door is locked. They'll go to the dining room. They'll eat the morning meal. And then the majority of the times after that they'll all return to their housing units.

        Work call will be called. All inmates that are working will go to their assigned work detail.

Q.   Okay. Stop just a second there. You mentioned go to their work details. Are all inmates within the United States Bureau of Prisons or especially in the United States Penitentiaries required to do some kind of work at the institution?

A.   Yes. Unless they're medically unable to do it.

Q.   And unless they're medically unable to do it, what would happen if the inmate were to say, you know, you guys got me locked up here for life, I'm not doing any work? What would happen?

A.   That's a violation of the rules, and he would go to the special housing unit.

Q.   And how long would the inmate stay in special housing?

A.   Indefinitely.

Q.   Until he agreed to --

A.   He would make the decision if he wanted to go to work. Each time after he'd go through the disciplinary process, there'd be an unit hearing at the DSO level. Sanctions would be imposed. If it's a repetitive act, sanctions can be multiplied on him. Eventually, a majority of them, they'll

**Exhibit A**

2708

come out or they'll just lay down for long periods of time.

Q.    Eventually they give in?

A.    Some, a small percent don't.

Q.    A small percent don't?

A.    Yeah.

Q.    Okay. And so the inmates, when you say they have their morning male, do you feed the entire prison at the same time?

A.    No. We call them by rotation. We want to keep -- the dining rooms normally hold 200, 300, but we want to keep that movement going.

We give the inmates 20, 30 minutes to eat. They know the rules. They get their tray. They sit down and eat. And then they get up and return their trays and utensils. Work call sounds. If they're not assigned to work, some of them can take programming, education programming in lieu of working. If they're on their day off, the recreation yard would be open for them to go out and recreate. But most of them then would go to work.

The unit would be -- again, the door would be locked. They'd all report to the work site, be accounted for. They would work up to approximately 10:30 in the morning. Then we would start -- usually we'd start the short -- we'd start the medical meal. Certain inmates have to have special meals. We call them earlier to the dining room.

At 11:00 AM we'd start calling the work details to

---

the noon meal. We call by the work sites first so we can feed them and then get them back to work. And then after the work sites have eaten, we call the units. They come in and eat. After everybody's been fed, work call again. Everybody goes back to work or they're on their work site already. It could be recreation time, back to education.

One thing in the institution, too, everything moves at ten minutes on the other hour. We call it controlled movement. All the schedules, appointments, classes all start at the same time.

So the movement would be announced. Inmates would have ten minutes to go from point A to point B, and then the doors would be locked again. At approximately 3:30, 3:45, there's a general recall announced. All inmates report back to their units. At that time they start returning to their cells. At four o'clock we do an official count. All inmates are secured in their cells, and then the staff conduct a standard count at that time where they physically -- go ahead.

Q.    Stop a minute on the idea of the count. What's a count?

A.    A count is a formal mechanism where we physically count every inmate in that institution at specific times each day so we know that we have every inmate.

Q.    And you mentioned a standing count. How many times a day do you count the inmates?

---

A.    We count at a minimum five times a day. The 4:00 PM count every day across the Bureau is a stand up count. And then on weekends and holidays we do a special 10:00 AM count, and then a standing count, too.

Q.    What is a standing count?

A.    The inmates are secured in their cells, and they actually have to physically be standing to where the officer -- they can't be playing, sitting. They have to be standing up so the officer can actually physically see them standing.

Q.    And in terms of recreation, are there boxing programs for example in the Federal Bureau of Prisons?

A.    No.

Q.    Are there weights that prisoners can lift?

A.    No, not in the new penitentiaries. By Federal law, you can't put in any mechanisms for an inmate to enhance his upper body strength. At Terre Haute, it was all passive recreation. There's a handball wall, basketball, some mechanical bikes that they can ride, but it's all passive type exercise.

Q.    There's a track for walking around a track if someone wants to walk?

A.    Correct.

Q.    That kind of things -- and again, you're talking about at certain times there's a recall, meaning all inmates are required to report back to their housing unit. And again, what happens if an inmate says, I don't feel like going back

---

to my housing unit, so I'm not going? Well, he'll be placed in the special housing unit.

Q.    He's required to do that. If it happens, there would be an order for him to do it and he would be essentially picked up?

A.    Correct.

Q.    And brought to special housing?

A.    Correct.

Q.    And then he would face a disciplinary hearing at some point?

A.    Correct.

Q.    Are there metal detectors sprinkled throughout your -- the institutions, the prisons, penitentiaries?

A.    At Terre Haute where I was, I had a metal detector at every unit. At every entrance to the housing unit, there was a metal detector there. When the inmates left the unit or coming into the unit they'd have to go through the metal detector.

Then there was metal detectors in the work corridors. I had a metal detector in food service. When they came out of food service they'd have to pass through a metal detector. Work sites had metal detectors. So they're constantly walking through metal detectors.

Q.    And if you want, as the warden or as a captain or as a Lieutenant you decide you want to search an inmate, do you

**Exhibit A**

need anyone's permission to do it?  Do you need a Court Order, anything along those lines?

A.   No.

Q.   Do you need a Court Order or anything along those lines to search an inmate's cell?

A.   No.

Q.   Are searches constantly in progress at an United States Penitentiary by staff?

A.   Yes.

Q.   I don't mean during the night, but is part of the daily routine -- let me put it this way.  Are cell searches part of the daily routine?

A.   Yes.  Unit officers are required to conduct so many cell searches each day on the day watch and on the evening watch.  The morning watch, which is midnight to 8:00, they do searches of the inmate common areas, work details, supervisors search their areas.  And in addition, at the metal detectors if an inmate's passing through a metal detector, staff can do a pat search of him to determine if there is any non-metal contraband on him.

Q.   All right.  And when they do these searches, as soon as you go into a prison you'll see behind a desk they'll have a rubber mallet.  What do they use that for when they're doing searches?

A.   Those are to check normally bars and the round bars on

---

the grills or in the inmate's cells.  Some of the cells may have a bar in the window.  They're security mallets.  You hit those and if there's a different pitch to it, you know it's been altered.

Q.   There's something wrong with it or you hit it and it comes off and it's been sawed through?

A.   Yes, well, hopefully we catch it before that point.

Q.   Okay.  You said, in terms of discipline, there are various levels of discipline that are available within the prison system, correct?

A.   Correct.

Q.   And the Bureau of Prisons classifies the -- classifies the seriousness by assigning numbers; is that correct?

A.   Yes.

Q.   Okay.  And I'll just write this down.  They classify them from 100 through 400.  And I think you may have answered already that the 100 series are considered the most serious offenses, and the 400 are considered the less serious offenses, correct?

A.   Correct.

Q.   And is the way inmate discipline is handled part of a program statement published by the Bureau of Prisons?

A.   Yes.

Q.   I'm going to show you what's been marked 54.  Is that that program statement?

22

---

A.   Yes, it is.

     MR. RUHNKE:  I'll offer 54.

     MR. HEGYI:  No objection.

     THE COURT:  Received.

     (At 9:19 AM, Defendant's Exhibit 54 admitted into evidence.)

BY MR. RUHNKE:

Q.   And at the end of the exhibit, 54, are there a list starting at page 44 of the various prohibited acts that the Bureau of Prisons attempts to control?

A.   Yes.

Q.   And I'll pull those out separately.  First of all, are inmates informed of their rights and responsibilities as part of their -- part of their function of serving time?

A.   Yes.  Every time an inmate comes into a new institution, they're issued what we call an A and O handbook, arrival and orientation handbook.  And their rights and responsibilities and prohibited acts are spelled out in that.  Each time they come to an institution, they're given that.

Q.   Okay.  So I'm looking at page 39 of the program statement, which is Exhibit 54.  And this is what you referred to; is that correct?

A.   Correct.

Q.   So an inmate's rights is they have a right to expect to be treated in a respectful, fair manner, and are responsible

23

---

for treating inmates and staff in the same manner, correct?

A.   Correct.

Q.   I'll pull it back just a minute.  They have the right to be informed of the rules, and then they have a responsibility to abide by the rules, correct?

A.   Correct.

Q.   That they have a right to freedom of religion, and they have to respect the rights of others in that regard, correct?

A.   Yes.

Q.   They have a right to health care, food, bedding, clothing, cleanliness, and it's their responsibility not to waste food, and to maintain clean living quarters, et cetera.  It's all spelled out here, correct?

A.   Yes.

Q.   It goes on that they have an opportunity to correspond with family members, right to access to the courts by correspondence.  It goes on on page two to talk about right to legal counsel, the responsibility to use the services of an attorney honestly and fairly.  You have a right to use the law library, but you have to do it in a way that maintains the resources and follow the rules.

     Reading material for educational purposes, but you have to use such materials for your personal benefit without depriving others.  So it's basically every right carries with

24

it a concomitant or a companion responsibility, right?

A.   Correct.

Q.   By the way, are pornographic magazines or literature allowed in Federal prisons?

A.   No.

Q.   I want to go and take a quick look at the 100 series, which was the most serious offenses within the Bureau of Prisons.  The Bureau of Prisons system, starting at page 44 of that -- of that document.  And there's how many of them under the 100 series?

A.   I think approximately 19.

Q.   Okay.  Obviously the greatest severity is killing anybody.  101 is an assault.  102 is escape.  103 is setting a fire.  104 is possession of a dangerous weapon.  105 is rioting.  106, encouraging others to riot.  107, taking hostages.  108 is hazardous tools, such as a hacksaw blade, body armor, homemade rope, telephone, electronic device.

Refusing even to provide a drug urine sample is a series 100.  Making narcotics or drugs or alcohol is a 100 series offense.  Use of narcotics is a 100 series offense.  Possession of narcotics.  Sexual assault.  Destroys any item.  Use of the mail for illegal purposes.  Use of the telephone for illegal purposes.  Interfering with a staff member.  And then sort of a catchall, any conduct which disrupts or interferes with the security or orderly running of the

25

institution, which is similar to another series 100 offense.

A.   Correct.

Q.   So these are the most serious acts that can be punished by the Bureau of Prisons, correct?

A.   Yes.

Q.   And with those sanctions, with those findings, what kind of sanctions can be imposed on an inmate?  Say an inmate murders another inmate.  What is the most likely thing that is going to happen to that inmate?

A.   They're going to impose maximum disciplinary segregation time on him; disallow any -- the few days of good time that he would have; and they would recommend a disciplinary transfer.

Q.   What is a disciplinary transfer?  And in the case of a murder, could that transfer include the administrative maximum facility, control unit?

A.   It would have to be a recommendation.  There's a process.  But yes, it would.

Q.   And would that be made basically by the warden?

A.   Yes.

Q.   Initiated by the warden but ultimately made by who?

A.   It would be sent to the regional director, the regional office for concurrence.  Then it's sent down to the designation center in Grand Prairie, Texas.

Q.   And can violations of this series 100 include long term disciplinary segregation, as you say?

26

A.   Yes.

Q.   And that's up to the disciplinary hearing officer?

A.   Yes.  And that can go up to two years now.

Q.   Okay.  I want to discuss with you the administrative facility -- administrative maximum facility called Ad max, also called ADX.  Sometimes they call it the Alcatraz of the Rockies in the newspapers.  Have you been there?

A.   Yes.

Q.   How many times have you been there?

A.   Oh, probably 24 plus.

Q.   Okay.  Did you help populate the administrative maximum unit when it opened up?

MR. HEGYI:  Objection to the ambiguous nature of it.  I don't know what that means, help populate.

BY MR. RUHNKE:

Q.   Okay.  Did you help move inmates into the administrative maximum facility when this opened up?

A.   Yes.

Q.   And was that a hands on function or did you act basically as administrator telling other people what to do?

A.   Well, the first phase was when I was a captain at Marion.  There was the initial movement of the general population inmates, the control unit, and the special housing.  I was a hands on for USP Marion, developing the local plan, working with central office, regional office to get the inmates ready

27

so when the buses came they would be already in restraints and we'd put them on the bus, move them to an air base, put them on the Marshal plane, and fly them to Colorado Springs.  And then they'd be transported into Florence, Colorado.

Q.   Let me stop you there a second.  You mentioned this is when you were a captain at USP Marion, and I think you said yesterday at that point Marion was the most secure facility that the Bureau of Prisons had.  Did that change when the administrative max unit opened?

A.   Yes, it did.

Q.   And in terms of transferring prisoners to the administrative max facility, did I just understand you to say you got them ready to get on the bus, you road on the bus with them to the air base, where they were loaded onto a Marshal's plane?

A.   In the second phase after I was in the regional office, I made the final movement of the high security protection unit from Marion.  I was on a bus with them, on a plane, and road the bus into Florence with them.

Q.   And how many inmates at a time would be moved?

A.   We moved two buses.  It was approximately we could take up to 80 maximum.

Q.   And when they're on the bus, are they also in restraints that basically they're handcuffed to a place in front of them?

28

**Exhibit A**                                                        2711

A.   No, we don't restrain them to fixed objects, but they're in full restraints, black box, leg restraints, Martin chain, and full restraints.

Q.   I'm going to show you Defendant's Exhibit 59.  It's a Google Map of a particular location.  And do you recognize the configuration of this place to be the administrative -- or actually the Federal Correctional Complex at Florence, Colorado?

A.   Yes.

Q.   And this is the road coming in.  This is the public highway.  And where I'm pointing with my pen, is that the entrance to that Federal Correctional Complex?

A.   Yes, it is.

Q.   And as you drive through, you drive through there, there's a gate.  There's guards.  They check why you're there. They check ID.  And if everything clears, you drive further into the facility, correct?

A.   Correct.

Q.   Now on the left up here or on the top of the photograph but on your left as you drive here, I see another facility or I see a particular complex.  What is that?

A.   That's the Federal prison camp, and I believe it's the central warehouse location there, too.

Q.   And as you drive in, you pass the area where I'm tapping with my pen right now.  What is that area?

29

---

A.   That's the Federal correctional complex, the medium security.

Q.   Okay.  And this facility, this triangular-shaped facility?

A.   That's the United States Penitentiary of Florence.

Q.   The United States Penitentiary of Florence is not the administrative max correction facility, correct?

A.   Correct.

Q.   And finally, if we zoom in on this area -- well, I have another photograph.  Let me just show it.  Is that -- is that an aerial satellite photograph of the administrative max facility at Florence, Colorado?

A.   Yes.

Q.   Looking at the items I'm tapping here, what are those?

A.   Those are the inmate housing units, general population, and SHU I believe.

Q.   And where are the recreation cages if you can tap on your screen?

A.   (Witness indicating.)

Q.   Is that coming up?

A.   It is, but it's -- basically they're in these areas here.

Q.   Okay.  So those are the recreation cages?

A.   Right.

Q.   Now, those are covered, correct?  I mean, they're not open to the sky?

30

---

A.   Correct.  They're covered.

Q.   To stop somebody from flying a helicopter to over there and dangling a rope and flying somebody out of there?

A.   Yes.

Q.   I'll show you another picture.  And just to set the location, it's a map of the state of Colorado, and Denver, Colorado Springs.  And Florence is somewhere in the area west of Colorado Springs; am I correct?  Do you know where it is? Can you find it on the map for me?

A.   It's between Colorado Springs and Florence.

Q.   Colorado Springs is here.  And I just can't put my finger on it, but it's in a pretty desolate, isolated area, a few miles from Colorado Springs, correct?

A.   Correct.

Q.   20, 30 miles from Colorado Springs.  All right.  I'll show you the next photograph, which is Defendant's Exhibit 39. Does that show the entrance -- does that show the entrance to the administrative max facility at Florence, Colorado?

A.   Yes.

Q.   I'm reminded, when an inmate kills another inmate, there's disciplinary sanctions obviously that are imposed, but is also that inmate liable to be prosecuted in Federal Court?

A.   Possible, yes.

Q.   Okay.  Showing you another view of ADX, Florence.  That's not the best on that screen.  Okay.  Do you see the guard

31

---

towers?  You see the outside perimeter?  This is the outside perimeter of ADX?

A.   Yes.

Q.   I show you another photo.  It shows the gun towers, the razor wire that's around it.  Does ADX now have a stun lethal fence?

A.   I don't believe they do.

Q.   Showing you some of the interior photographs.  Is much of this institution, by the way, underground?

A.   None of it's underground.

Q.   Hmm?

A.   None of it's underground.

Q.   None of it's underground?

A.   No.

Q.   When you walk down into it and it's -- this visiting area, that's above ground?

A.   (Nodding head up and down.)

Q.   Okay.  So it's a myth that it's underground?

A.   Yes.

Q.   And do inmates have a sense of where they are in terms of oriented to east, west, north, south when they're inside that special housing unit?

A.   I would say no.

Q.   All right.  So we're looking at what appears to be a central area.  What is behind that central area, the thing in

32

**Exhibit A**                                                    2712

the middle? You go down the steps and have this area right here. Or can you tell by looking at the photo?

A. I have a hard time seeing through.

Q. Photographs unfortunately are not the clearest they could be. Let me go forward. I'm showing you what's been marked 45. This is a diagram of a single cell at ADX, correct?

A. Correct.

Q. And one of the features here is that there's a cell door, and then as you step inside the unit, there's also a sliding grate; is that correct?

A. Yes.

Q. So it's like a double entrance?

A. The sally port effect.

Q. Sally port. Okay. And the cell itself is what, seven and a half feet by maybe 12 feet in overall dimension. And you know, there's a bunk. There's a concrete stool. There's a space for a TV, and a built-in toilet, sink unit, and that's about all that's inside that cell, correct?

A. There's a shower in the back.

Q. Oh, there's a shower in the back. That's the thing in the back. So that inmates don't have to leave their cell to take an shower? They can just stay right where they are, correct?

A. Correct.

Q. Let me show you a couple of photographs of the interior

of one of those cells. And again, it shows the combination sink, toilet right here, a concrete -- by the way, this is all concrete, correct?

A. Correct.

Q. Here's the shower to the left. Here's the window to the rear, the shelf for the TV, concrete bed with a mattress, and a light over head. That's 46. And here's another shot of this cell or a cell from the rear. And again, we'd be basically standing I guess where the shower is looking out of the cell.

You see this sliding grate with the circle around it?

A. Yes.

Q. Is that again so inmates can stay cuffed actually, because they can put their hands through there and they just close the gate right on them. And then you can uncuff them safely?

A. Yes. Staff can maintain constant control then.

Q. Okay. Another view. Typically how are inmates who are in the ADX general population escorted around the institution?

A. They are on a two-man hold.

Q. And there's a circle around what appears to be an object in the hands of the officer on the left. Do you know from your own personal experience what that object is?

A. That was the old escort riot baton, but they subsequently

have changed it to a little bit smaller one.

Q. So the officer is carrying some type of wooden baton?

A. It's composite plastic now.

Q. Composite plastic?

A. Yeah.

Q. And is that part of the protocol that when you're escorting a prisoner at ADX general population, you carry a baton in case something goes on?

A. Yes. Both staff would have a baton. There's a holder on their belt, and they carry it that way.

Q. And what has that now been replaced with?

A. It's called a rapid baton. It's for -- that is probably a 30 inch or 32 inch baton. These are probably, oh, two feet plus. They're kind of shaped like a little martial arts tool, but it's a defensive weapon.

Q. Okay. And you can use that for defense or offense as needed?

A. Correct.

Q. Okay. Inmates in the ADX general population, how many hours a day, generally speaking, do they remain in their cells?

A. They get over the week period in general pop, it's roughly 12 hours a week.

Q. 12 hours out of the cell?

A. Out of cell time.

Q. So roughly two hours. 22 out of 24, they're locked in approximately?

A. Correct.

Q. And are they by themselves?

A. Yes.

Q. Are inmates allowed visitors?

A. Yes.

Q. Okay. Showing you what's been marked Defendant's Exhibit 49. When I say are they allowed visits, are they allowed to have contact with their visitors?

A. No. It's all non-contact visitation.

Q. And the photograph we're looking at here, is the visitation booth at ADX from the inmate's side, correct?

A. Yes.

Q. And the visitor's room is on the other side of this window, and the person's visitor would pick up a telephone on that side of the window, and the inmate would pick up a telephone on this side of the window and would communicate that way?

A. Correct.

Q. Are those phones monitored while visits are in progress?

A. I believe they are, yes.

Q. And this is a photograph of a recreation area, inside recreation area. Other than a pull-up bar such as that, are there any other recreation items that the inmates have access

**Exhibit A**    2713

to?

A.   I don't think so, no.

Q.   Do they have access to television?

A.   There's a television in each cell.

Q.   And many channels, educational programming, or do you not know that?

A.   I don't know the exact number of channels, but that's how all the programming is done, education, religious programming. The institution, if they want to pass messages or bulletins to the inmate, everything is sent over the closed circuit TV.

Q.   Okay.  And looking at now an outdoor recreation area, similar equipment, the top of that recreation area is closed off by a chain link fence; is that correct?

A.   Correct.

Q.   Because we'll see a picture in Defendant's Exhibit 52, this is the outdoor recreation yard in general population at Florence.  Now, this outdoor recreation area has individual recreation cages that are shown in this photograph, correct?

A.   Correct.

Q.   And you can see above, this is the chain link fencing that seals off the overhead area?

A.   Yes.

Q.   Does the Bureau of Prisons adapt as events happen and change their policies and procedures to meet new challenges?

A.   continually, yes.

37

Q.   Now, there was an inmate murder actually within one of these outdoor recreation yards at Florence, correct?

A.   Correct.

Q.   And after that what did the Bureau do?

A.   They went to -- they constructed these recreation cages, and they went to single recreation for all inmates.

Q.   So that inmates can perhaps communicate with one another during recreation if it's group recreation, but they can't have access to anyone anymore; is that correct?

A.   Correct.

Q.   Now, when an inmate arrives at an United States Penitentiary, the Marshals or whoever brings them, do they always go right into general population?

A.   It depends on the inmates.  Inmates -- I mean, it's -- we know who's coming to our facility.  We have staff that can prescreen the inmates via our computer network in the agency, can pick up the phone and call and get more information on specific inmates.

     Normally you don't have enough SHU beds to lock every inmate that comes in off a bus, because it's -- usually you get 40 at a time.  You screen your buses before they get there.  You screen them when they arrive.  There are certain inmates that you know that based upon your prescreening are not going to population, and some of them will go to population.

38

Q.   I want to discuss a hypothetical situation with you. Suppose -- when you say you screen your buses, that means you have advance notice of who it is that's arriving that particular day?

A.   Correct.

Q.   How often do new -- bus loads of new inmates arrive typically at an U.S. Penitentiary or what was your experience?

A.   You may get two buses a month.

Q.   And how many on each bus?

A.   40.  That's the maximum it can be.

Q.   And a certain number of inmates are finishing their time or being transferred to other institutions, and new inmates are arriving, correct?

A.   Correct.

Q.   Is there such a thing as called a captain's review in terms of where an inmate will be placed?

A.   Yes.

Q.   What is a captain's review?

A.   Well, normally if an inmate rises to any -- poses any unique threat to staff safety or the institution, you determine that in your pre-screening.  You have a number of people involved in the pre-screening, from your investigators to your case management people.  Everybody's looking at the inmate's history.  If there's something unique, those inmates would be placed into special housing unit, and then at -- then

39

they would be screened further.

     And it's -- the old term is a captain's hold, but it's normally by the captain.  It can be by an AW.  Wardens have done some captain reviews.

Q.   Okay.  Suppose you had an inmate who was coming in on the bus, and you knew that they'd faced the death penalty for many murders, had a prior record for many murders in the past. Would you take a different look -- and been spared the death penalty.  Now serving a life sentence without possibility of release.  Would you take a different look at that kind of inmate than say somebody who's coming in serving a life sentence for a drug offense?

A.   Yes.

Q.   In your experience, and if you were the warden of that particular institution, would you be likely to put that person right into general population?

A.   No.

Q.   Where would you place them?

A.   He would go to the special housing unit.

Q.   And for what purpose and for how long?

A.   Well, it would be -- again it would fall back to the old term captain's review.  I'd want to gather as much intel as possible about him, possibly have my SIS staff do a threat assessment, make sure I have all available documentation that's available, and then have a couple face-to-face

40

**Exhibit A**

conversations.

Q.   And what would be the purpose of the face-to-face conversations?

A.   Well, I would let him know who I was, and he would know who I was.  So -- and I would tell him up front, you know, if I do put you in population, here's what I expect of you.  If you don't live up to those expectations, here's what you can expect.  And if you have trouble, it's best you come to see me, talk to me at main line, when I'm available at main line or when I'm walking the yard.  Come and see me, and we'll talk before you do something.

MR. RUHNKE:  Okay.  Your Honor, could I approach the side bar with you just briefly?

(Bench conference held.)

MR. RUHNKE:  Your Honor, I'm shifting the last couple of areas on my direct examination with this witness.  I've seen nothing or I see nothing in his direct examination which would justify him being cross-examined about this incident with the assistant associate -- assistant warden.

THE COURT:  You were reading my mind actually.

MR. RUHNKE:  Yeah.

MR. HEGYI:  I'll see where he goes, and I'll see --

THE COURT:  Let me put it this way.  I was thinking about precisely that.  If all he's going to say is mainstream things, things that are true, verifiable, then there's no

issue.  Like explaining.  I don't think you should bring out that --

MR. HEGYI:  May I bring you -- may I suggest some areas that it might -- depending on what he does, because I don't need to get this jury angry at me for somebody who seems to be --

THE COURT:  It's not a matter of getting the jury angry.  If he had, for example, given some sort of extreme view here that would give the impression that he's really making it up or something, then I would say, you know, maybe he has a reason and has a grudge against the BOP or something.  And that's not what I've heard here, so --

MR. HEGYI:  Here's what I'm thinking, and I don't know if I'm going to go there.  I'll have to have Your Honor's guidance or green light or yellow light, coming up again.  For instance, I don't believe he was 57 years old when he retired.  So -- he told us he was 50 --

THE COURT:  Well --

MR. HEGYI:  Just a second, Your Honor, if I could.  He used SIS people to do his applications.  And I feel I ought to be able to go into the fact that SIS people are the most important.  They're doing this.  They're supposed to be doing their job.  He's going to say, because he's testified in other cases, that it starts at the top.  That if the warden himself is not paying attention and if -- the warden sets the standard

for everybody.

So I think gently, and I'm not planning on going in deep here but I think I ought to have the opportunity to say that, you weren't doing that.

MR. RUHNKE:  But his --

MR. HEGYI:  You're telling us, you're giving us your opinions on how it runs perfectly, but you know it doesn't run perfectly because you didn't even do that.

MR. RUHNKE:  He knows it doesn't run perfectly, and we're going to go into it.

THE COURT:  Let's wait until the whole thing is over.  I think he is not saying anything, nothing, that is not basic explanations as to how Bureau of Prisons operates in very general terms, and how institutions which are USPs operate in general terms.

So therefore, whether you have a corrupt warden or you have a careless warden or whether you have a -- those are things that you could ask in general terms, not referring to him.  You know, if you want to.  But I don't think that you have to trash him out.

MR. HEGYI:  I agree.

THE COURT:  If he remains along these lines.

MR. HEGYI:  I agree.

MR. RUHNKE:  I think it's irrelevant, period.  I mean, to go into any of these incidents is irrelevant.  Your

Honor had ruled earlier perhaps on credibility --

THE COURT:  Which is irrelevant?  Which incidents?

MR. RUHNKE:  The incident with the associate warden, telling her --

THE COURT:  The way the testimony has been laid out for the jury, I would think it's irrelevant.  You're right.

MR. RUHNKE:  Yes.

THE COURT:  The thing is I was expecting, when I said that I'd allow it, I was expecting perhaps that he would come with some sort of extreme view that would give anybody the impression that indeed, you know, he was making it up basically.  That's not the case.

So in which case let's forget about it.  Whether he's an alcoholic or whether he's this or the other, I don't care.  See what I mean?  Let's keep it clean.  I think it's better that way.

You have your expert, too.

MR. HEGYI:  I do, but I don't plan -- if he answers my questions properly, for instance about wardens sometimes when they get to be 50 they start applying elsewhere, they start not --

THE COURT:  Of course you can ask that.

MR. HEGYI:  And when he says no --

MR. RUHNKE:  Whoops.  I think they knocked off a monitor.

**Exhibit A**

2715

MR. HEGYI:  I won't go there first, let me say it that way.

THE COURT:  Let's try to keep this clean.  If you think about it, you know what I think.  This makes it worse, bringing this kind of testimony.  You know what he's doing, highlighting how dangerous people can be.

MR. RUHNKE:  Yes.

THE COURT:  My goodness.

MR. RUHNKE:  Yeah.  Well, I know --

MR. HEGYI:  Do you want to raise the Milner issue now or not?

MR. RUHNKE:  Yes.  While we're here, Your Honor, the Government intends to cross-examine -- there's two problems with this cross-examining Mr. Bezy about a particular inmate who's committed many, many, many serious infractions, ultimately murdered another inmate, and I think is now facing the death penalty in a Federal prosecution.

One complicating issue is that Mr. Bezy is consulting with that defense team and has privileged information about it.

THE COURT:  Well --

MR. HEGYI:  May I explain, Your Honor?

MR. RUHNKE:  And the other issue is it's -- we had the same situation arise in Samson, and what Judge Wolfe ruled in that case was to bring out individual, quote, unquote,

45

horror stories of the Bureau of Prisons risks unfairly saying this is the norm or this is the way it always is.

THE COURT:  No, no, no.  It always depends how -- every case is a case.  I don't want to cross that bridge until we get there.

MR. RUHNKE:  Okay.

THE COURT:  Because the truth of the matter is that things can happen, and I think that he has an obligation to put perspective into that.

MR. RUHNKE:  Yes.

THE COURT:  About things that happen.

MR. HEGYI:  I'd also add --

THE COURT:  You want an example?  It's not this kind of example.  What is happening at MDC right now, it's a Bureau of Prisons facility.  Look at that.  It's a no man's land.

MR. HEGYI:  Your Honor, I'd also add this, that Mr. Ruhnke promised this jury in his opening statement that the Bureau of Prisons can take care of him, they can make sure he can never do anything.  Here's a guy, Milner, who has done 90 different things.  Happens to be a guy I prosecuted in D.C. in 1992, and so I know him.  He stabbed some guy 27 times, got a 30-year sentence.

THE COURT:  Sure.  That can happen.

MR. HEGYI:  So I think I have a right to say, can you explain that.

46

THE COURT:  You have a right to bring the realistic perspective of what goes on in a jail.

MR. HEGYI:  Right.

MR. RUHNKE:  Okay.

THE COURT:  Especially among bad people.  That's a fact.

MR. RUHNKE:  Fine, Your Honor.  Thank you.

THE COURT:  Let's take a very short recess, please.

COURT SECURITY OFFICER:  All rise.

(At 9:53 AM, recess taken.)

(At 10:04 AM, proceedings reconvened.)

THE COURT:  Yes, Counsel.

MR. RUHNKE:  One of the issues I'm going to raise with the witness is the fact, the reality that correctional officers are sometimes killed in the course of duty.  And there have been -- I've got the sheet somewhere.  I'm fumbling for it right now.  There've been I think 25 corrections officers killed in the past century.

And Mr. Hegyi tells me he wants to raise the issue of the MDC lieutenant, not by name, but he wants to raise that issue as a recent case of a correctional officer being killed in the line of duty.  I don't know that's even a fact yet.  I know that's an actively investigated case.

THE COURT:  Well, you could argue, you could ask, I think, logically so, if I am a correctional officer and I'm a

47

discipline officer or I'm a captain, lieutenant, even a warden, whatever, and there's an issue that creates animosity, for example, between an inmate or group of inmates and that officer, within the realm of possibilities, something can happen.  That's a fact.  Whereby somebody outside acting upon instructions from somebody inside may do some harm to the person.

That can happen.  That's a realistic possibility.

MR. RUHNKE:  I know of no incident at all like that, except the possibility of the one that's being investigated right now.  But all the inmate killings of COs that I am aware of occurred -- and the Bureau of Prisons publishes a list of them.  They've all occurred within an institution.

THE COURT:  I don't think we need to have a particular case that occurred.

MR. RUHNKE:  That's right.  That's what I'm --

THE COURT:  I don't think so.  These are possibilities.  Possibilities are realistic possibilities that can happen.

MR. HEGYI:  Your Honor, here's what I explained.

THE COURT:  The same way that a defense lawyer can get killed as a result of something that he did with his client.  The same way a prosecutor may get injured or killed as a result of his participation in a case.  Or even a judge.  It can happen.  That's a fact.  It doesn't happen -- it can

48

**Exhibit A**                                                          2716

happen.

MR. HEGYI: Here's what I flagged for Mr. Ruhnke, because I was going to approach it anyway before we ever got there. I was never going to talk about MDC, but here's what I was intending to ask, because it's true. In the past 30 days, there have been two correctional officers that have been killed. One a guard -- a correctional officer in Canaan, in Pennsylvania, within the past 30 days. He was stabbed 200 times and killed.

And number two, not saying where, but just a SIS person, not say lieutenant because I didn't want to cue it, but an SIS officer who's responsible for investigations in the prison, that that person was ambushed and shot between ten and 20 times. You were aware of that? And let me leave it at that.

THE COURT: Let me put it this way. Don't you think it's pretty obvious when you hear what we have heard here from Mr. Bezy about all the precautions that have to be taken in a Federal Penitentiary, that the underlying premise is how dangerous it can be? The things that can happen? Of course that's the underlying premise.

MR. RUHNKE: Your Honor, the problem with the -- I don't -- I'm not sure if Your Honor's disallowing the question or not allowing the question --

THE COURT: All I'm saying is it all depends how he

49

places the question. I think that the area of inquiry, if properly presented, that doesn't make reference to a case under investigation, for example --

MR. RUHNKE: Well, for example, if he were to say, are you aware that a SIS lieutenant was ambushed in his car and shot --

MR. HEGYI: (Shaking head from side to side.)

THE COURT: As he was leaving MDC, if he was ambushed and killed, I'm going to sustain the objection.

MR. HEGYI: I'm not going to say that. But I was going to say in the past months, two people have been killed.

THE COURT: Listen. I don't like to make in limine rulings like this. You make the question, and if you think, Mr. Ruhnke, the question is improper, you make an objection. And on the spur of the moment, I'll have to make a decision. Rightly or wrongly. That's the way I work.

MR. RUHNKE: Just for your information, the Bureau of Prisons does keep a list, which they call the heroes, staff killed in the line of duty. This was printed out March 19 -- today, this morning, at 8:44 AM. It does not include the MDC lieutenant. It does include the officer killed at Canaan.

THE COURT: Let me put it this way. Don't you think it's possible, realistically possible, forget about MDC, that somebody inside a Federal Penitentiary can put an order out to

50

have somebody killed outside? Can that happen?

MR. RUHNKE: Yes, that can --

THE COURT: Could be his wife. Could be his lover. Could be his sister. Could be his aunt. Could be a correctional officer. Could be his lawyer. Because sometimes the worse enemy of the lawyer is the client. Et cetera, et cetera. It could be anyone.

MR. RUHNKE: The reality is, though, those things happen very rarely.

THE COURT: But they happen.

MR. RUHNKE: They do happen. The danger is the jury begins to think that it's the norm rather than the exception.

THE COURT: No. You have to assume that this jury is intelligent, and that this jury is not going to be so stupid as to believe such a thing.

MR. RUHNKE: Okay. Yes, sir.

THE COURT: Now, if the question were, is it possible that a satellite from Russia may fall on top of the prison or something, that kind of thing is completely irrational. But the other thing is rational.

MR. RUHNKE: Yes, sir.

THE COURT: I think prisons and people in prison are dangerous people. That's a fact. We cannot deny that. That is a fact.

51

MR. RUHNKE: Now I've lost my notes.

THE COURT: Let's proceed, please.

MR. RUHNKE: Hold on just a second, please.

(Jury entered courtroom.)

THE COURT: Go ahead.

BY MR. RUHNKE:

Q. Mr. Bezy, despite all efforts, despite the highly trained staff at Federal prisons, acts of violence still take place inside the prison, correct?

A. Correct.

Q. What is the total population of United States Penitentiaries roughly, of all United States Penitentiaries around the country?

A. Approximately 26 thousand.

Q. And many of those people --

THE COURT: Excuse me. Are we talking about penitentiaries or about --

MR. RUHNKE: Penitentiaries.

THE COURT: 26 thousand in penitentiaries only.

MR. RUHNKE: Yes, there's 16 or 17.

THE COURT: I just wanted to be certain.

BY MR. RUHNKE:

Q. Yes. We're talking about penitentiaries only. And a certain percentage of that population are serving lifetime sentences, correct?

52

**Exhibit A**

2717

A. Correct.

Q. You are aware that you can receive a life sentence for crimes that do not involve violence at all, right?

A. Correct.

Q. Certain narcotics offenses can carry life sentences with them, correct?

A. Correct.

Q. And despite all efforts, violence does occasionally occur within the context of the Federal Bureau of Prisons even in the secure United States Penitentiaries, correct?

A. Correct.

Q. Now, the last several days, have we been supplied with data by the Government that was prepared by the Office of Research and Evaluation within the Federal Bureau of Prisons?

A. Correct.

Q. What is the Office of Research and Evaluation as you understand it?

A. They work for HIPPA in central office. They compile data and statistical research for the Bureau of Prisons.

Q. Now, one of the documents that we were provided, Defendant's Exhibit 64, which I'll offer into evidence without objection, is a listing of homicides that occurred throughout the Bureau of Prisons for the years 1996 through 2011. And you and I have reviewed that, correct?

A. Correct.

53

Q. I'm going to put it up on the screen. And it shows year by year the number of homicides.

Now, this is across all institutions within the Bureau of Prisons, correct?

A. Correct.

Q. Even in 1996, a rough population of around 200 thousand, would that be a fair ballpark figure? Lower?

A. I think it would be a little bit lower. It would be lower, yes, definitely.

Q. But certainly as the years go on, we now have a total Bureau of Prisons population well over 220,000 I think it was, correct? What was the number we looked at?

A. 217 thousand I believe.

Q. Whatever the number is we looked at. So in the fiscal year 1996, there were six homicides out of this 150, 200 thousand population. It lists the date, lists the institution, and lists the inmate identifying number of the person who was killed. The Bureau runs a fiscal year October to October, like the rest of the Federal government?

A. Yes.

Q. In '97 there were a total of 11 inmates killed. '98, five. '99, five. The year 2000, there were four. 2001, nine. 2002, three. 2003, three. 2004, there were four. 2005, there were 12. 2006, there were four again. 2007, again there were 12. 2008, 16. 2009, eight. 2010, there

54

were 21. And 2011, there were 11.

Now, throughout this period of time, the Bureau of Prisons population is continuing to increase; is that correct?

A. Correct.

Q. And I notice that a number of these homicides, and I'll put up a page of the exhibit, are referring to halfway houses, residential re-entry centers. Okay. Housing -- halfway houses and residential re-entry centers. What's a halfway house?

A. It's a contract BOP facility where an inmate upon their release, they're still in the custody of the Bureau of Prisons, but they're in a contract facility.

Q. Okay. And so are they -- are they locked up in a prison?

A. No.

Q. They get up, they go to work in the morning? It's a way to ease the return to society? That's the purpose of that?

A. Correct.

Q. What's a residential re-entry center? Is that the same kind of facility?

A. It's the new name for halfway house, yes.

Q. They just changed the name of it?

A. Yes.

Q. All right. We also provided a compilation also prepared by the Office of Research and Evaluation that deals with the number of offenses by prisoner serving life sentences versus

55

prisoner not serving life sentences?

A. Correct.

Q. And according to -- and this is marked P-16. The Government premarked it.

MR. HEGYI: I premarked it, Your Honor. We were going to use it anyway. No objection.

THE COURT: Okay. Received.

(At 10:18 AM, Government's Exhibit P-16 admitted into evidence.)

BY MR. RUHNKE:

Q. And I want to spend a little bit of time on this data, as we focus in on the prevalence of violence or serious disciplinary incidents. First of all, this document tells us that there were a total of 216 thousand inmates, and of that group, 4,837 had life sentences. And --

MR. HEGYI: With no parole.

MR. RUHNKE: With no parole. Sorry.

BY MR. RUHNKE:

Q. And leaving 212,123 inmates. So of the inmates serving a sentence other than life without parole, 193 of them had no guilty findings for discipline. In other words, they didn't violate any of the rules for that period, correct?

A. Correct.

Q. That's how you interpret that?

A. (Nodding head up and down.)

56

Q. And 90 percent of the inmates with life sentences, and 89 percent of all other inmates, did not have any disciplinary infraction; is that correct?

A. Correct.

Q. That's how you read that?

A. Yes.

Q. All right. So now we're down to the ten percent, roughly ten percent of inmates, some serving life without parole and some serving other sentences than life without parole. And we're down to in the series 100 severity level, 16 percent of that ten percent committed a series 100 violation.

And as we saw, a series 100 violation can range from murder down to failing to submit a urine test for drug analysis, correct?

A. Correct.

Q. And of the ten percent of life sentence prisoners, 27 percent of those committed a series 100 offense. So if I'm doing the math right, this is 2.7 percent of the larger group of life sentences, meaning that 98 percent of the people in prison despite the perception that prison is a very violent place, 98 percent of people serving life sentences commit no infraction of any level whatsoever in any given year. Is that how you interpret this data?

A. In fiscal year 2013, yes.

Q. And if we go to the fiscal year for 2012, the figures

57

change slightly. Now we have 77 percent of inmates with life sentences have no infractions. And again, this is series 100. It's 200. So we're roughly at least 90 to 95 percent, maybe even higher of the life sentence prisoners, the life sentence without parole prisoners are violating no rule whatsoever; is that correct?

A. The way I read this, yes.

Q. And actually, if you look at the data for 2013, one reason it may be relatively small is we are still in fiscal year two -- or are we in 2013? The year hasn't started yet, has it? It started October 2012?

A. '12.

Q. So it's only four or five months of data so far. And the figures for fiscal year 2011 are roughly the same. And, you know, we're talking about 90 to 95 percent of people serving life prisoners -- I'm sorry, life terms without parole, committing no infraction whatsoever, and of the group, the remainder that commits infractions, only less than a third of that remaining group even committed the serious level 100 offenses.

Am I reading this chart the same way you're reading it? In other words -- let's run through it. 75 percent of inmates with life sentences had no disciplinary infraction at all?

A. Correct.

58

Q. That leaves 25 percent.

A. Correct.

Q. And of that 25 percent, roughly 30 percent of that group committed a series 100 offense. And these series 100 offenses are not broken out by the type of offense, are they?

A. No.

Q. Is it possible for certainly an individual inmate, a particularly trouble making inmate might account for 30 or 40 of these incidents in a given year?

A. Very possible.

Q. And as we progress through this data, in Defendant's Exhibit 65, and I'll try to run through this as quickly as I can. It's by United States Penitentiary. Now it's broken out by United States Penitentiary. We're not distinguishing here between life sentence prisoners. We're dealing with all prisoners who are in an United States Penitentiary by institution.

The escape column is always going to be zero. That in a particular year, 2005, there were 11 homicides. And there were a total of 283 serious assaults, 101. Serious assaults, out of a population of what, approximately 26 thousand. It would be smaller in 2005, whatever the population was. But it's certainly going to be in excess of 20,000?

A. 200 thousand — oh, yeah.

59

Q. No. I'm talking about U.S. penitentiaries. This is USPs. And the ad max from 2005 to the present. So now we're veering into on the United States Penitentiary population?

A. Correct.

Q. It goes up and down, but 20,000 is probably what the population was in 2000, roughly in that ballpark?

A. Roughly, yes.

Q. And of those, there were 11 murders, there were 283 serious assaults. When a serious assault is coded into the Bureau of Prisons data system, is there a data entry field that includes whether or not a weapon was involved?

A. Yes.

Q. Is there a field that includes whether or not -- right. This is just 2005. I'm told I misstated that. This is just 2005. Is there within the system a coding for whether an injury occurred at all?

A. Yes.

Q. Is there a code field for whether the injury was serious or minor or life threatening?

A. Yes.

Q. So if somebody wanted to run this data to breakdown these serious assaults further to see if there was a weapon, to see if there was an injury, to see if there was an injury, the extent of the injury, that's data that the Bureau of Prisons has available to it as far as you know?

60

**Exhibit A**                    2719

A.   Yes.

Q.   And if you go through this, this is 2005.  2006, there are -- there's one escape.  That's the escape from Pollock that we talked about?

A.   Yes.

Q.   That's the escape from Pollock in 2006, that's now at ADX?

A.   Correct.

Q.   Five homicides.  Again 280 serious assaults.  But this is 280 out of a population of 20 to 25,000 inmates serving time in a maximum security prison, correct?

A.   Correct.

Q.   And the figures, the figures speak for themselves as the years about go by.  2007, nine homicides, 273 serious assaults.  I mean, if you take 200 -- you take 2008, for example, which starts on I think the page before, yes, if you take 204 and you use just as a ballpark figure 20,000 population, this is a rate of what, one out of 1000?  99 percent?  Or one out of a hundred?  No, it's one out of 1000, 99 percent.  99 percent is 99 percent whether it's one out of 1000 or whatever it is.

A.   Yes.

Q.   But 99 percent of the inmates are not involved in this kind of activity, correct?

A.   According to this data, yes.

61

Q.   So 2004 is I think one percent of roughly 20,000, so 99 percent commit no serious assault.  The figure for murders is tiny.  And this trend or this figure, percentage, whatever you want to call it, continues for the next several years.  In 2009, as the population is growing, that year there were six homicides, 363 -- so maybe we're at like 98.5 percent commit no serious assaults.

In 2010, we're down to 298 serious assaults.  2011, we're down to a hundred -- no.  That's the total.  I'm sorry.  That's the total.  We're at 82 serious assaults.  I'm sorry.  This is 2013.  That's this year.  So far this year we're at 82, and four murders.

So would you agree with me that faced with a population of people who are serving time in an United States Penitentiary, the Bureau does a pretty darn good job of keeping the violence down?  Do you agree with that?

A.   Yes, I do.

Q.   And it's an unfortunate reality that correctional officers are killed in the line of duty, right?

A.   Yes.

Q.   There's no security in the world that's going to stop some knucklehead from running up on a corrections officer and sticking him with a homemade shank if that's what he wants to do, correct?

A.   Unfortunately, yes.

62

Q.   And it's a job that's a dangerous job, correct?

A.   Yes.

Q.   When you were walking the yard at USP Terre Haute or you were walking the ranks as a brand new correctional officer the first time you walked by yourself, you knew you were at a certain level of risk?

A.   Yes.

Q.   You're trained, you're surrounded by security, but things can go wrong?

A.   Yes.

Q.   You're aware that as recently as of the end of February, a correctional officer was killed end of last month, was killed at the United States Penitentiary in Canaan, Pennsylvania, correct?

A.   Yes.

Q.   Before that a correctional officer was killed in 2008 at the United States Penitentiary in Lompoc, correct?

A.   I don't think it was Lompoc.

Q.   I'm sorry.  Atwater.  The United States Penitentiary at Atwater, California, correct?

A.   Yes.

Q.   Then there was an 11-year period from 1997 to 2008 where no correctional officers were killed, but an officer was killed at Lompoc in April of 1997.  And in the past, from 1987 through 2013, which is I think 26 years, there have been one,

63

two, three, four, five correctional officers who were killed inside penitentiaries in the line of duty.  And that happens.  But does the Bureau do everything, everything possible to prevent this from occurring?

A.   Yes.

Q.   Have you ever had the unfortunate experience of having an officer killed who was under your supervision?

A.   No.

Q.   Do you know wardens who have?

A.   Yes.

Q.   What is a warden's most constant worry and the thing that's most on your mind?

A.   Losing a staff member.

Q.   You've been exposed to many different state, Federal, and foreign corrections systems, is that so?

A.   Yes.

Q.   Delegations from foreign countries, delegations from states have visited Federal institutions, have visited with you to learn how the Bureau of Prisons does it, correct?

A.   Correct.

Q.   Is it still your view that the Federal Bureau of Prisons is the best correctional system in the world?

A.   They're the gold standard for corrections.

Q.   And overall, how successfully does the Bureau of Prisons go about carrying out its mission of safely confining inmates,

64

**Exhibit A**

2720

protecting the public, and protecting staff?

A.   I think they do a great job.

Q.   Things happen, things go wrong, and those are tragedies?

A.   Unfortunately, yes.

     MR. RUHNKE:  I have nothing further, Your Honor.

     THE COURT:  Cross.

                    CROSS-EXAMINATION

BY MR. HEGYI:

Q.   Good morning.

A.   Good morning.

Q.   The Bureau of Prisons does the best it can, but stuff happens, true?

A.   Yes.

Q.   Now, you know that corrections officers can be killed outside of prison as well as inside of prison, correct?

A.   Correct.

Q.   And Mr. Ruhnke asked you about a series of murders that have happened inside the prison to correctional officers, correct?

A.   Correct.

Q.   Now, you know that within the past 30 days --

     MR. RUHNKE:  Your Honor, I'm going to object to that question.

     THE COURT:  Overruled.  Go ahead.

corruption among prison staff -- that's one of the things they look into, right?

A.   Right.

Q.   To make sure guards or staff aren't being bribed by prisoners or their families to bring in drugs, bring in guns, and bring in contraband, cell phones, and things like that, right?

A.   Correct.

Q.   And they also are trying to keep track of the prisoners and what drugs, guns, contraband, weapons, things like that they may have?

     MR. RUHNKE:  Guns?

     THE COURT:  Overruled.

     MR. RUHNKE:  Objection.

     THE COURT:  Overruled.

BY MR. HEGYI:

Q.   Correct?

A.   Correct.

Q.   Let's talk about one example of guns.  Let's talk about one example.  You are aware in Phoenix, are you not, of an incident, I think it's 2009 but correct me if I'm wrong, where the prisoners inside the U.S. Penitentiary in Phoenix -- are you with me?

A.   It's FCI, yes.

Q.   FCI in Phoenix, they actually broke equipment that was in

BY MR. HEGYI:

Q.   The correction officer that was killed in Canaan, Connecticut --

     MR. RUHNKE:  Pennsylvania.

BY MR. HEGYI:

Q.   Pennsylvania.  I'm sorry.  He was stabbed over 200 times?

     MR. RUHNKE:  Your Honor, again I object.

     THE COURT:  Overruled.

BY MR. HEGYI:

Q.   He was stabbed over 200 times, wasn't he?

A.   I don't know any particulars about that death.

Q.   You haven't bothered to look into it?

A.   I have read news clips, but there's been very little put out about it.  You would know more about it than I would.

Q.   You don't dispute that he was stabbed approximately 200 times?

A.   I can't address that.  I have not seen that in the press. I don't know.  That's all I have right now on that death.

Q.   Okay.  And you are aware also within the last 30 days, that the SIS that you talked to us about, that's the -- those are the security folks, correct?

A.   Intel, yes.

Q.   Okay.  And their job is -- their mission is to try as best they can to ferret out what prisoners are up to, to keep

that facility so it would go out to be repaired, correct?

A.   Correct.

Q.   And when it came back into the facility after going out to be repaired, they found two, two nine millimeter semi-automatic pistols that people on the outside had secreted inside of that equipment and was being smuggled back in.  And thank goodness it was caught, correct?

A.   Correct.

Q.   Okay.  And guns do get found inside BOP facilities from time to time?

A.   Other than that, I'm not aware of any.

Q.   Not a single one in the history of BOP?  Not a single one?

A.   Personally, the institutions I have worked at in my career, that is the only incident I am aware of.

Q.   All right.  Limited to the facilities that you worked at is what you're saying?

A.   And in my 28 years with the Bureau, yes.

Q.   Now, you're aware that the SIS people, they're the ones we could sort of call it the tip of the spear; is that fair? They're the people whose job it is, whose mission it is to protect the front.  They're the front line people, the investigators.  They're the ones that are trying to get into the heads of the shock collars.

     Tell the jury what a shock collar is.

**Exhibit A**

Case: 15-2347    Document: 35    Filed: 07/27/2016    Pages: 4186
Case 2:11-cr-00077-PPS-APR   Document 1410   Filed 02/11/15   Page 21 of 45

89
Direct - Reidy

THE WITNESS:  He's older than I am, yes, sir.

THE COURT:  I sentenced hum.  That's the reason I was asking.

THE WITNESS:  Is that right?

THE COURT:  It's like old home week around here.

THE WITNESS:  Yeah.

THE COURT:  All right.  We'll take a recess.

(Recess taken 11:11 a.m. to 11:34 a.m.)

MR. BURKE:  Your Honor, we would call Dr. Tom Reidy to the stand.

THE COURT:  Thank you.  Good morning, Doctor.  If you would face the clerk, please.

THOMAS REIDY, DEFENSE WITNESS, SWORN

COURTROOM DEPUTY:  Please be seated.  State your full name for the record and spell your last name.

THE WITNESS:  Yes.  It's Thomas Joseph Reidy, R-e-i-d-y.

DIRECT EXAMINATION

BY MR. BURKE:

Q.    What is your occupation or profession, sir?

A.    I am a forensic psychologist.

Q.    Where did you go to college?

A.    Went to Fairfield University in Connecticut.

Q.    What degree did you obtain?

A.    I have a BS in biology.

**Exhibit B**

2722

Case: 15-2347    Document: 35    Filed: 07/27/2016    Pages: 4186
Case 2:11-cr-00077-PPS-APR    Document 1410    Filed 02/11/15    Page 22 of 45

90

Direct - Reidy

Q.   Did you then get a master's degree?

A.   Yes.  I got that from DePaul University in Chicago.

Q.   Did you also get a PhD?

A.   Yes.  Also from DePaul University.

Q.   Please describe your doctoral training.

A.   The doctoral training involved all aspects of clinical psychology, research, physiology, and general behavior of individuals under different circumstances.

Q.   Okay.  And where did you work after completing your doctoral training?

A.   I spent about two years at a rehabilitation institute, part of Northwestern University Med Center, evaluating and treating individuals with brain injury; followed by work at Community Hospital of the Monterey peninsula in California as a general psychologist.  And subsequently I've gone into private practice in which I have a variety of different roles.

Q.   Okay.  When did you become interested in forensic work?

A.   I -- actually while I was working at Community Hospital, I had a number of cases that had some legal implications and it struck my interest and I -- when I went into private practice, I began to look into doing more of that kind of work.  And gradually I began to take on more and more cases.

Q.   All right.  Are you board certified in the area of

**Exhibit B**

Case: 15-2347     Document: 35            Filed: 07/27/2016     Pages: 4186
Case 2:11-cr-00077-PPS-APR  Document 1410   Filed 02/11/15   Page 23 of 45

91
Direct - Reidy

forensic psychology?

A.   Yes, I'm board certified as a forensic psychologist.

        MR. BURKE:  Your Honor --

BY MR. BURKE:

Q.   One more question.  Dr. Reidy, is Exhibit A for today's hearing, your current curriculum vitae?

A.   Yes, it is.

        MR. BURKE:  All right.  Your Honor, at this point we would offer Dr. Reidy as an expert in forensic psychology so that he can offer opinions in that field.

        MS. COVELL:  No objection, Your Honor.

        THE COURT:  The tender is accepted.

        Go ahead, please.

        MR. BURKE:  Thank you, Your Honor.

BY MR. BURKE:

Q.   Let me ask you some additional background questions. Are you familiar with the Federal Death Penalty Act found at 18 United States Code section 3591?

A.   Yes.

Q.   Are you familiar with the concept of future dangerousness?

A.   Yes.

Q.   And is that considered a nonstatutory aggravator?

A.   Yes.

Q.   Have you studied the concept and issue of future

**Exhibit B**

Case: 15-2347    Document: 35    Filed: 07/27/2016    Pages: 4186
Case 2:11-cr-00077-PPS-APR   Document 1410   Filed 02/11/15   Page 24 of 45

92
Direct - Reidy

dangerousness during your career?

A.    I have extensively.

Q.    Have you written on the subject?

A.    Yes, I've co-authored about 14 -- 14 articles referencing that issue in different ways.

Q.    And have you become familiar with similar treatises that are written by colleagues of yours on the subject of future dangerousness?

A.    Yes.

Q.    Have you collected relevant articles at Exhibit C?

A.    Yes.

Q.    And are some of those articles cited in the Power Point or mentioned in the Power Point that you have prepared for today's testimony?

A.    Yes.

Q.    All right.  And have the articles been printed out that are also attached as C-1, et seq., in the binder there?

A.    Yes.

Q.    All right.  Tell us how it was that you went about preparing the Power Point that is going to be used in part during your testimony here today, Doctor?

A.    I reviewed the scientific literature with regard to the issues of future dangerousness.  Looked at the research that's available on expert predictions, on prosecutorial predictions, and on jury predictions of this concept that

**Exhibit B**

2725

Case: 15-2347   Document: 35   Filed: 07/27/2016   Pages: 4186
Case 2:11-cr-00077-PPS-APR   Document 1410   Filed 02/11/15   Page 25 of 45

93

Direct - Reidy

you've labeled the future dangerousness.

Q.   And you then prepared a Power Point to summarize those opinions; is that correct?

A.   I did.

Q.   And that is Exhibit B?

A.   Yes.

MR. BURKE:   Your Honor, for today's hearing, I would ask the Court to accept Exhibits A, B, and C.

THE COURT:   They're admitted for today's purposes. Thank you.

(Defendant's Exhibits A, B, and C received)

BY MR. BURKE:

Q.   Thank you.   Let us turn to the Power Point, then, sir, and let us go through that and have you explain the Power Points to the Court and why your opinions are based on them.

A.   Your Honor, I divided this presentation into three different sections to make it easier to sort of understand this data.

And the first step, the first has to do with prosecutorial assertions of future dangerousness.   And I provided some conclusions here at the beginning so that it would be -- kind of start with the conclusions and then I'll go into some of the data that underlies those conclusions.

In general, Government assertions about the nonstatutory aggravating factor of likely to commit criminal

**Exhibit B**

Case: 15-2347 Document: 35 Filed: 07/27/2016 Pages: 4186
Case 2:11-cr-00077-PPS-APR Document 1410 Filed 02/11/15 Page 26 of 45

94
Direct - Reidy

acts of violence in the future that will continue -- that would constitute criminal -- constitute a continuing and serious threat to the lives and safety of others, is wrong nine times out of 10 and 99 times out of a hundred with -- when you are talking about moderate injury assaults.

The offenders targeted with this factor of future danger do not show higher rates of violence than other life-without-parole capital offenders or other inmates in the USPs.

We also determined that jury predictions that capital defendants will be violent in prison demonstrate higher error rates, approaching 100 percent when life-threatening violence is contemplated.

And jury predictions of future prison violence or nonviolence reflects random guesses, and I -- really note no improvement over what we consider base rates. Base rates refers to the frequency or prevalence of a particular type of behavior in a particular context over time.

The other conclusion -- another conclusion we reached is there's no information, lay testimony, or expert testimony that will allow capital jurors to reliably identify the offender who's likely to commit criminal acts of violence in the future that would constitute a criminal and serious threat to the lives and safety of others.

We also determined that modern prison facilities

**Exhibit B**

95

Direct - Reidy

and procedures, such as those employed by the BOP, and as you heard from the warden earlier, allow for the preemptive immobilization of any offender, virtually negating presumed risk.

Now, if we take a look at what the experts have to say?  How do we do as experts in looking at this?  And there's been an excellent study that was done in Texas about -- actually, it's the only study looking at experts.  There were 155 capital defendants sentenced to death after mental health experts testified at trial predicting future dangerousness.

And in Texas, as you may know, Your Honor, the issue of future dangerousness is -- has to be directly addressed by the jury.  And so in this sample, 67 of them were eventually executed after 12 years; 40 remained on death row and served an average of eight years; 48 had their sentences reduced, and they went back into the general population for another average of 22 years.

And so what you find is that, from that group, there were no prison homicides.  Only 5 percent committed assaults requiring more than first aid treatment; 1 percent were criminally prosecuted for assault, that was two out of the 155; 20 percent received no disciplinary write-ups.  And as you can see from the pie chart, really, in terms of serious assaults, 95 percent of them had none of those.

**Exhibit B**

Case: 15-2347    Document: 35    Filed: 07/27/2016    Pages: 4186
Case 2:11-cr-00077-PPS-APR    Document 1410    Filed: 02/11/15    Page 28 of 45

96

Direct - Reidy

And so for experts predicting that a person would be a future -- a risk for future violence, particularly serious violence, the experts couldn't do it very well at all.

There was another study done looking at the testimony for the defense in which they looked -- this is from Mark Cunningham, Dr. Mark Cunningham, his testimony in 73 federal and state cases. These folks had an average of 40 years in prison; 59 percent of them received a life sentence; 41 percent received death.

And if you take a look at the prevalence of violence in the sample that I've just described to you, 12 percent had had assaultive infractions; 1.4 percent had serious assaults; and those assaults with moderate or major injuries or homicides or serious assaults on staff did not happen.

He compared this to all the inmates in the USP to 2001 to 2005 with an average population of over 18,000 and there were no significant differences in the annual rates.

So essentially what Cunningham showed is that you cannot really predict future violence. If you're going to predict anything, you would have to say on the basis of the infrequency of serious infractions, that these serious types of assaults don't happen very often and it's very hard to -- nearly impossible to predict an -- a serious assault that

**Exhibit B**

Direct - Reidy

occurs nearly one time out of a hundred or several times out of a thousand, depending on the type of behavior you're talking about.

Q.   Dr. Reidy, turning from experts to juries, how do juries do?

A.   Juries don't do much better than the experts.  Myself and a couple of colleagues looked at the predictions of federal capital juries, and we had a sample of 72 cases. Their average time at risk was five to seven years -- I'm sorry, 5.7 years.

And if you take a look at how the juries did, federal jury findings of future violence was likely.  You can see there's no difference between those in which the jurors were faced with the issue of whether there was danger or not in terms of whether there was a multiple victim, continuing criminal enterprise, crimes against the Government, or other felonies.

So they couldn't distinguish in their decision-making in terms of the elements of the capital offense, they were about the same.  When you take a look at jury findings regarding future violence being likely, which are the first two columns that you see, if you're looking at serious assaults, the jury finding was that violence was likely.  You can see that they said it was likely -- when they said it was likely, it occurred only 5.9 percent of the

**Exhibit B**

Case: 15-2347    Document: 35    Filed: 07/27/2016    Pages: 4186
Case 2.11-cr-00077-PPS-APR    Document 1410    Filed 02/11/15    Page 30 of 45

98

Direct - Reidy

time. When they said it was not likely, it occurred only 5.3 percent of the time.

When you compare those rates to the rates of capital defendants in the third column, you see that the rates are nearly identical, so that these particular inmates were at no greater risk than anybody else in the USP as far as -- I'm sorry, when you look over at the far column, you can see that the rates are really no different than anyone else in the USP.

And, similarly, as you go down the list, you see the assault rates for serious injuries. And those with major or fatal injuries, were quite negligible and, really, quite comparable, or even better so, than all of the USP. So, again, in this instance, the juries were not able to accurately determine who was going to be a future danger and who wasn't, if you used the definitions of future danger being serious assaults, assaults with injuries, major injuries, or fatal injuries.

And that's one of the issues that is important to keep in mind, Your Honor, with a definition of future danger. And in many instances, it is used in sort of a universal way to encompass all kinds of -- of bad acts that might occur in prison, when, in fact, if you look at the types of serious assault rates and assaults on staff and inmates that have the prison folks quite disturbed, you see

**Exhibit B**

99

Direct - Reidy

that those rates happen extraordinarily infrequently.

So it's important to keep in mind the definition of what you call future danger, it's better to refer to it as specific acts of a particular type of violence in a particular context over time.

There's another study done in Texas looking similarly at inmates that a juror -- jurors and how they did looking at inmates in trial.

And in this case, there were 111 capital offenders who eventually received relief from their death sentences. They averaged over nine years on death row and eight years in the general population. And if you take a look at the percent of inmates who engaged in the various kinds of behaviors, you'll see that from the more minor assaults and fighting, you get a little over a third engage in that kind of behavior. But even with those, the serious injury rate is pretty low, a little over 4 percent.

Assaults against staff officers are, again, about a third of the group engaged in that, but, again, the greater serious injuries is low. And if we take a look at those rates of various types of assault and we take a look at the number of inmates involved and the juror error rates, you see that the jurors for those with serious injuries, the percentage of inmates engaging in that behavior is 8.1 percent, and jurors are wrong 91.9 percent of the time if

**Exhibit B**

Case: 15-2347    Document: 35    Filed: 07/27/2016    Pages: 4186
Case 2:11-cr-00077-PPS-APR    Document 1410    Filed 02/11/15    Page 32 of 45

100

Direct - Reidy

they think that that is going to occur.

And, similarly, if they use major or life-threatening injuries or homicides as their decision-making tool, they're going to be wrong 100 percent of the time based on the sample in this study.

Again, if we take a look at -- going back to the study by John Edens that looked at experts, they also looked at error rates of jurors in that study, and as you can see in the right-hand column, Your Honor, the error rates were quite -- quite high with regard to the predictions of serious assault, homicides, and so on, for both the death-sentence group, those that remained on death row, and those that were released from death row.

No matter which group you choose from, the jurors could not accurately predict which inmates were going to engage in violence -- serious violence and which were not.

Again, this is a little bit more focus.  You can see this is the death row, those that were on death row -- I'm sorry, the death -- the death-sentenced inmates.

Overall, you can see that the error rates the jurors made are quite high when you are looking at the rates of assault or homicide from that group.

This other study looked at 90 former death-row inmates.  That's what FDR stands for.  Again, six years of study, and you can see that's -- the sample size of those

**Exhibit B**

Direct - Reidy

was quite good.  These are inmates that were released from death row that received -- there are 90 of those.  Those that got life sentences at trial compared to those that entered the prison -- compared to others in the Texas prison population in the high-security prisons.  And you can see that inmates released from death row or that received a life sentence were far better behaved with regard to the serious assaultive type behavior, that you can see at the bottom, homicides, assaults on inmate with weapon, sex by force, assault on staff.

So, again, trying to predict which of those inmates, those 90 or 107 inmates are going to engage in those kind of behaviors, is a nearly impossible task.  And that's pretty much what the research shows all along that when you have a behavior that occurs very infrequently, whether -- even if it's in the community or in prison, it's really nearly impossible to predict which particular person or inmate is going to engage in that kind of behavior.

This study was done in 1989, actually, looking at the *Furman* inmates, those -- that were commuted on the basis of that *Furman* decision by the Supreme Court.  And, again, if you look at the jury prediction rates, you see that if they predicted future violence was likely, they were wrong 94 percent of the time and 98 percent of the time.

I'm sorry, if they -- that's correct.  And if they

Case: 15-2347    Document: 35    Filed: 07/27/2016    Pages: 4186
Case 2:11-cr-00077-PPS-APR   Document 1410   Filed 02/11/15   Page 34 of 45

102

Direct - Reidy

were -- if they were indicating future violence was unlikely, they were correct most of the time.

Q.   Is there a similar study in Oregon?

A.   Yes.  I did this study in Oregon with some colleagues. And we looked at 115 capital offenders sentenced by juries to either life or death.  You can see that this number of inmates in each group was evenly -- evenly spaced, about 65 in sentenced to life, 50 sentenced to death.  They were averaging 15 years in prison.

This chart's kind of a little eye-numbing when you look at it, but the point of the chart is that as you look at the jury findings of violence being likely and you look at the groups in which the jurors said no, it's not likely, or yes, it is likely, you see that the rates are nearly identical that the jurors couldn't really distinguish.

And that as the type of violence became more severe, the frequency of that violence decreased dramatically from any disciplinary infraction, 80 percent plus percent of the inmates engaged in that, way down to assaultive infractions with moderate injury where there was only 5 to 6 percent of the inmates engaging in that behavior.

So, again, the jurors cannot really distinguish who's going to be violent and who isn't based on the base rates that we know.

**Exhibit B**

Direct - Reidy

And we used definitions in the study that have been used in other studies, and similar to what the BOP uses. And we look at outpatient minor injury, outpatient major injury, inpatient serious injury, and inpatient severe injury, and fatal injury, of course.

And if we look at the outcomes of those categories, what you see is, again, that the jurors, if they say that violence was going to be likely, they're going to be wrong most of the time. If they say that violence was going to be unlikely, they're going to be right most of the time.

Q.   Have you analyzed why it is so difficult to predict prison violence in the future?

A.   Yes, we have. First of all, life-without-parole sentencing has made prison the only relevant context to consider. Not the community, but just prison. And that we found that capital jurors faced with the task -- or faced with a task distinct from risk appraisals identified by the *Jurek* court is routine; in other words, the superior courts in the various places every day look at risk to release people on probation and so on.

But when we look at risk while institutionalized, you're only considering inpatient interventions, you're considering the consequences of false positive determinations of elevated risk, and these are limited typically to temporary and modest curtailment in activities,

**Exhibit B**

Case: 15-2347    Document: 35    Filed: 07/27/2016    Pages: 4186
Case 2:11-cr-00077-PPS-APR    Document 1410    Filed 02/11/15    Page 36 of 45

104
Direct - Reidy

but at capital sentencing you have serious consequences and an extremely high cost for false positives.

The other issue that plays a role in identifying individuals who may or may not be at risk is what I mentioned earlier, and that's the low base rates. That is rates of prison assault resulting in serious injury or death are quite low, even though a substantial portion of inmates have significant criminal histories and convictions for violent offenses. Upwards of 50 percent.

Yet the assault rates in prisons -- the serious assault rates are quite low.

This has two implications: It's much more difficult to predict which offender will exhibit a low base rate behavior; and the prison behavior frequently does not follow the same trajectory as community behavior.

The bottom line: The overall majority of capital offenders do not commit serious violence in prison, or whether they're sentenced to death, or whether they're in the general population after receiving relief from a death sentence, or if they're sentenced to life at trial.

We've also found over the course of multiple studies that past history of violence in the community isn't strongly or consistently related, nor are the elements of the capital offense consistently related. Escape histories are only weakly associated with prison misconduct. The

**Exhibit B**

Case: 15-2347　　Document: 35　　Filed: 07/27/2016　　Pages: 4186
Case 2:11-cr-00077-PPS-APR　Document 1410　Filed 02/11/15　Page 37 of 45

105

Direct - Reidy

severity of the offense generally is not a good predictor of prison adjustment.

Again, the base rates of prison violence of a severity that are proportionate to an intervening sanction of death are particularly low among capital offenders.

Less than 1 percent of life-sentenced federal offenders perpetrated an assault resulting in hospital admission with nonlife-threatening injury in post-conviction tenures in the Bureau of Prisons. This is based on a study that we did.

No offender in that study committed an assault with life-threatening injury or serious assault on staff.

The prevalence rates of prison homicide among capital offenders in other studies have varied from one-fifth of 1 percent to 1 percent. If the capital jury interviews reported by another group of authors are representative -- capital jurors -- representative, then capital jurors tend to greatly overestimate the likelihood of future homicides by capital offenders.

This is a look at the yearly rate per thousand of disciplinary outcomes of capital life-without-parole inmates compared to all USP inmates. And, again, this is based on the study we did that was published in 2008. And as you can see, lots of inmates commit -- life-without-parole inmates commit violations of one kind or another, but not

**Exhibit B**

Direct - Reidy

statistically different from those other inmates in the USP.

If you look at potentially violent offenses, those are possessions of weapons, some assaults. You'll see that about 40 percent engage in those. Again, not statistically different from the rest of the USPs.

If you're looking at serious assaults, again, the rate is very low and, again, not statistically significant from the USPs. If you're talking about assaults with moderate injuries, again, the rate is extraordinarily low and not terribly significant compared to all the USPs -- or not statistically significant.

If you're looking with assaults with major injuries, you see, again, there's no statistically significant difference between those that are serving life without parole and those that are in the USPs.

So when you look at this kind of data, you have to say that those serving a life-without-parole sentence are not at disproportionate risk compared to other inmates in the USPs.

This is just another graph showing some of that comparison looking at the different types of infraction rates. And this time it's where future danger was alleged, and for those in which it was alleged the assaultive infractions were really no different than the other inmates in the USP, and similarly as you go down.

**Exhibit B**

Case: 15-2347    Document: 35    Filed: 07/27/2016    Pages: 4186
Case 2:11-cr-00077-PPS-APR    Document 1410    Filed 02/11/15    Page 39 of 45

107
Direct - Reidy

So future danger, when it's alleged, is not a good indicator of who will and will not be a future danger in prison.  It doesn't work when you look at the numbers.

If you want to look at the aging factor, what you find -- and I -- you'll see that for the vast majority of inmates, the age of conviction makes a difference as to whether you commit any type of violence in the prison.

Serious assault rates, the green line at the bottom, are quite low to start with, and they become even lower over time.  The red line is assaultive type infractions.  The younger guys commit more of those offenses.  And that drops off over time.

And the potentially violent offenses, again, the younger you are, the more likely you are to engage in that, but as you go to prison at older ages, those numbers drop dramatically.

This looks at the number of inmate homicides in the BOP and in ADX for the years 2000 to 2012.  And what you can see is that there certainly are homicides in the Bureau of Prisons.  And the rates, though, are rather low when you consider that if you're looking at 176,000 in the prisons, with the exception of the halfway houses and the -- some of the other nonBOP but related institutions, you see that the rates are low, but the rates in terms of ADX with the exception of those two homicides that occurred in 2005 that

**Exhibit B**

Case: 15-2347    Document: 35    Filed: 07/27/2016    Pages: 4186
Case 2:11-cr-00077-PPS-APR   Document 1410   Filed 02/11/15   Page 40 of 45

108
Direct - Reidy

you heard about earlier, ADX has done a spectacular job in managing their inmate population.

But, you know, inmate homicides have occurred. There's no question. And if you take a look at staff homicides in the last 112 years, there's been 24 of those from 1900 through 2012. I believe there's another one in 2013, but I only put the statistics here for a full year.

So, again, this is an extraordinarily low rate of homicides in the Bureau of Prisons.

Where do they occur? Most of the homicides occur in the USPs. A small number, 15 percent, occur in the FCIs. There's only been those two at the ADX, and then there's a few others that occur in the other populations. There are some at those transit centers, the MCCs, MDCs, and the CCMs are the halfway houses, there's been a number of homicides that occur there.

So if you take those raw numbers of how many homicides occurred and you convert them to a rate per thousand inmates, you can do some comparisons. What you see essentially is that the homicide rates have -- they were pretty high in the '80s and '90s, the early '90s. They dropped off considerably. Popped up a little bit in the '05 to '09, but they sort have been relatively level in the range of point 1 to point 3 per thousand inmates, which is an extraordinarily low rate when you consider how many

**Exhibit B**

Direct - Reidy

individuals are in the Department of Corrections -- I'm sorry, in the Bureau of Prisons.

And the staff homicide rate, although on a graph it looks like it's zero, it's very low.  Those numbers don't show up well, but there's a few here and there, as you know.

If you take a look at the Bureau of Prison inmate homicides by the average daily population, you see something that I found kind of interesting and that is that as the inmate population grew from the 1980s up through now, from 48,000 inmates up to about 215 at the time of this, what you'll see is that the rates of inmate homicides continued to stay about the same.  So I think that that certainly speaks to the ability of the Bureau of Prisons to contain this type of behavior.

Personality characteristics are not predictive of serious violence.  We've looked at that and so have others.  And essentially it's often said that these folks are antisocial and that they're going to continue this type of behavior.  Well, there's simply no data to support that.  And it's hard to support that when you think about the fact that nearly anywhere from 50 to 80 percent of inmates in prison have these antisocial personality characteristics, so it's nearly impossible to pick out which of those individuals who all have the same characteristics are going to act in a particular fashion, in a violent fashion.

**Exhibit B**

Direct - Reidy

Now, some correlates of violence in prison are counter-intuitive. These are ones that are kind of common-sense factors that you would think, but they're really not predictive of serious violence in prison, according to the social science.

One is being a convicted murderer; another is being convicted of multiple murders; another is being involved in a continuing criminal enterprise; another is serving a life-without-parole sentence, sometimes known as LWOP; and the other is, as I just mentioned, exhibiting antisocial personality disorder. These are not predictive of serious prison violence.

How about the relationship of death or life-without-parole sentence? Well, we looked at that issue in Missouri and, interestingly, Missouri is the only state in the union in which the death sentenced inmates are housed with those that have been sentenced to life without parole and the general population of inmates in that high security prison.

And in looking at that particular sample, we found that the life-without-parole inmates are about half as likely to be involved in assaultive misconduct as were the main-streamed death-sentenced inmates.

Some colleagues looked at the -- at the behavior of inmates in Florida -- life-without-parole inmates, I should

**Exhibit B**

111

Direct - Reidy

say.  And, again, they found similar -- similar results. Half a percent of the life-without-parole inmates committed an assault resulting in serious injury during the six-year study period.  They concluded, as have us and others, that the life-without-parole inmates are not a disproportionate risk for prison violence.

Predictions of future violence -- violent behavior, I should say, are subject to multiple faulty conceptual strategies.  And let's talk about those for a second.

Among these conceptual errors, jury research has demonstrated that the viciousness of the crime, the age of the victim, the perceptions of the defendant's lack of remorse, certainly impact on jurors' judgments, but aren't related to the future violence risk issue.

When you look at mock jurors judging a capital defendant as being violent in the future, they tend to look at diagnosis of psychopathy when it's asserted.  But, again, that's not been shown to be related to prison violence.  And so none of these intuitively attractive factors that you think make sense are really not predictive of serious violence.

So the research relying on the pre-confinement factors has been unable to develop an actuarial model that specifies a more-likely-than-not probability of an inmate perpetrating an act of serious violence.

**Exhibit B**

Direct - Reidy

It's improbable that lay jurors utilizing idiosyncratic intuitive approaches consistently achieve what systematic models have been unable to demonstrate.

And another factor that you've got to consider when we look at future violence issues, and that is the modern prison capabilities that can provide super maximum confinement. The administrative maximum program that you heard about this morning from the warden can be both a deterrent and can preempt any offender's ability to be more than a disproportionate risk.

Does it happen? Yes. But certainly the modern prison capabilities reduce that risk tremendously.

Q. Dr. Reidy, based on all of this research, have you reached any conclusions regarding predicting prison acts of violence?

A. Yes.

Q. What are those conclusions?

A. Well, first conclusion is that capital offenders are not a disproportionate risk for committing acts of violence. The rates of serious violence are low. Prison behavior does not follow community behavior. No scientific model predicts a more-likely-than-not probability for an inmate to commit serious violence. Capital risk assessment of prison violence always yields varying degrees of improbability, not probability.

**Exhibit B**

113

Cross - Reidy

And that is the end of that.

Q.   Those are your conclusions?

A.   Those are the conclusions.

Q.   Thank you, Dr. Reidy.

        MR. BURKE:  Those are my questions, Your Honor.

        THE COURT:  Thank you.

        MS. COVELL:  Thank you, Your Honor.

        THE WITNESS:  Would you like me to keep this on

or --

        MS. COVELL:  Sure.

                    CROSS-EXAMINATION

BY MS. COVELL:

Q.   Good afternoon, Dr. Reidy.

A.   Good afternoon.

Q.   You stated you were familiar with the federal death

penalty statute and the concept of future dangerousness?

A.   Generally, yes.

Q.   And I assume based on -- and you did a bunch of

research in preparing for today?

A.   Yes.

Q.   And I assume you are well aware, then, that the law is

well settled by the Supreme Court that your predictions and

theories are not acceptable to the Court.

A.   Well, I'm aware that there --

        MR. BURKE:  Your Honor, I'm going to object only in

**Exhibit B**

2746

MIME-Version:1.0
From:CMECFinnd@innd.uscourts.gov
To:CMECFinnd@localhost.localdomain
Bcc:
--Case Participants: Pablo DeCastro (pdecastro@attorneydecastro.com,
ysierra@rascia-decastro.com), Kurt R Earnst (kre@braje-nelson.com), Matthew N Fech
(mnf@fech-law.com), Arlington J Foley (arlingtonfoley@att.net), Jack Friedlander
(jack@jackfriedlander.com, office@jackfriedlander.com), Bruce R Hegyi - AUSA
(bruce.hegyi@usdoj.gov), Roxanne Mendez Johnson (attorneyrmj@gmail.com), Scott L King
(dwilliams@scottkinggroup.com, sking@scottkinggroup.com), Visvaldis P Kupsis
(vpkupsis@hotmail.com), Dean R Lanter - AUSA (dean.lanter@usdoj.gov,
janet.eisenmann@usdoj.gov, usainn.ecfcivil@usdoj.gov), John Maksimovich
(criminallaw@johnmaksimovich.com), John E Martin - FCD (john_martin@fd.org), Sheldon B
Nagelberg (sbnagelberglaw@att.net), David J Nozick - AUSA (david.nozick@usdoj.gov,
janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov,
usainn.ecfcivil@usdoj.gov), Mark A Psimos (psimoslaw@airbaud.net), Robert L Rascia
(rrascia@rascia-decastro.com, ysierra@rascia-decastro.com), Stephen Edward Scheele
(pkd@gk4law.com, ses@gk4law.com), Paul Jeffrey Schlesinger (pjeffslaw@aol.com), Adam
Tavitas (adtavitas@aol.com, b.lynneadams@yahoo.com), John T Theis (theislaw@aol.com),
James N Thiros (jim@thiros.com, lynn@thiros.com), Bryan M Truitt (bryan@tblawyers.com,
sherrie@tblawyers.com), David E Vandercoy (david.vandercoy@valpo.edu), Thomas W Vanes
(b.lynneadams@yahoo.com, tom.vanes@sbcglobal.net), Ihor Alexander Woloshansky
(ihorlawyer@hotmail.com), Richard C Wolter (b.lynneadams@yahoo.com), R Brian Woodward
(carolb@wbbklaw.com, rbwoodward@wbbklaw.com), Magistrate Judge Andrew P Rodovich
(rodovich_chambers@innd.uscourts.gov, ruth_nagy@innd.uscourts.gov), Chief Judge Philip P
Simon (denise_woodside@innd.uscourts.gov, jacob_hamann@innd.uscourts.gov,
lauren_schwartz@innd.uscourts.gov, mira_serrill-robins@innd.uscourts.gov,
noel_collins@innd.uscourts.gov, philip_simon@innd.uscourts.gov)
--Non Case Participants: Matthew D Soliday (office@matthewsolidaylaw.com)
--No Notice Sent:

Message-Id:2706666@innd.uscourts.gov
Subject:Activity in Case 2:11-cr-00077-PPS-APR United States of America v. Briseno et al
Jury Trial
Content-Type: text/html

### U.S. District Court Northern District of Indiana [LIVE]

### USDC Northern Indiana

## Notice of Electronic Filing

The following transaction was entered on 2/11/2015 at 6:16 PM EST and filed on 2/11/2015

| | |
|---|---|
| **Case Name:** | United States of America v. Briseno et al |
| **Case Number:** | 2:11-cr-00077-PPS-APR |
| **Filer:** | |
| **Document Number:** | 1412(No document attached) |

**Docket Text:**

**JURY TRIAL (6th DAY OF EVIDENCE) as to Juan Briseno held on 2/11/2015 before Chief Judge Philip P Simon. Parties present as previously noted. Govt continues to present evidence, does not conclude. Trial continued to Thursday 2/12/2015 at 8:30 a.m. Defendant REMANDED to custody of US Marshal.(Court Reporter Stacy Drohosky (am) and Kelly Fitzgerald (pm).) (nac)**

**2:11−cr−00077−PPS−APR−1 Notice has been electronically mailed to:**

David E Vandercoy    david.vandercoy@valpo.edu

Arlington J Foley    arlingtonfoley@att.net

Mark A Psimos    psimoslaw@airbaud.net

Scott L King    sking@scottkinggroup.com, dwilliams@scottkinggroup.com

James N Thiros    jim@thiros.com, lynn@thiros.com

Thomas W Vanes    tom.vanes@sbcglobal.net, b.lynneadams@yahoo.com

Ihor Alexander Woloshansky    ihorlawyer@hotmail.com

R Brian Woodward    rbwoodward@wbbklaw.com, carolb@wbbklaw.com

John Maksimovich    criminallaw@johnmaksimovich.com

Visvaldis P Kupsis    vpkupsis@hotmail.com

Sheldon B Nagelberg    sbnagelberglaw@att.net

John E Martin – FCD    john_martin@fd.org

Adam Tavitas    Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander    jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele    ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst    kre@braje−nelson.com

Bryan M Truitt    bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis    theislaw@aol.com

Robert L Rascia    rrascia@rascia−decastro.com, ysierra@rascia−decastro.com

Paul Jeffrey Schlesinger    pjeffslaw@aol.com

Matthew N Fech    mnf@fech−law.com

Pablo DeCastro    pdecastro@attorneydecastro.com, ysierra@rascia−decastro.com

Dean R Lanter – AUSA    dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov,
janet.eisenmann@usdoj.gov

David J Nozick – AUSA    David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov,
janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson    attorneyrmj@gmail.com

Bruce R Hegyi – AUSA    bruce.hegyi@usdoj.gov

**2:11−cr−00077−PPS−APR−1 Notice has been delivered by U.S. Mail or other means to:**

```
MIME-Version:1.0
From:CMECFinnd@innd.uscourts.gov
To:CMECFinnd@localhost.localdomain
Bcc:
--Case Participants: Bryan M Truitt (bryan@tblawyers.com, sherrie@tblawyers.com), David J
Nozick - AUSA (david.nozick@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov,
susan.devries@usdoj.gov, usainn.ecfcivil@usdoj.gov), Kurt R Earnst (kre@braje-nelson.com),
Paul Jeffrey Schlesinger (pjeffslaw@aol.com), Pablo DeCastro
(pdecastro@attorneydecastro.com, ysierra@rascia-decastro.com), Sheldon B Nagelberg
(sbnagelberglaw@att.net), Thomas W Vanes (b.lynneadams@yahoo.com,
tom.vanes@sbcglobal.net), Richard C Wolter (b.lynneadams@yahoo.com), John T Theis
(theislaw@aol.com), Adam Tavitas (adtavitas@aol.com, b.lynneadams@yahoo.com), Dean R
Lanter - AUSA (dean.lanter@usdoj.gov, janet.eisenmann@usdoj.gov,
usainn.ecfcivil@usdoj.gov), John E Martin - FCD (john_martin@fd.org), Scott L King
(dwilliams@scottkinggroup.com, sking@scottkinggroup.com), Mark A Psimos
(psimoslaw@airbaud.net), Matthew N Fech (mnf@fech-law.com), Ihor Alexander Woloshansky
(ihorlawyer@hotmail.com), James N Thiros (jim@thiros.com, lynn@thiros.com), Robert L
Rascia (rrascia@rascia-decastro.com, ysierra@rascia-decastro.com), Arlington J Foley
(arlingtonfoley@att.net), Roxanne Mendez Johnson (attorneyrmj@gmail.com), Visvaldis P
Kupsis (vpkupsis@hotmail.com), Stephen Edward Scheele (pkd@gk4law.com, ses@gk4law.com),
Jack Friedlander (jack@jackfriedlander.com, office@jackfriedlander.com), Bruce R Hegyi -
AUSA (bruce.hegyi@usdoj.gov), R Brian Woodward (carolb@wbbklaw.com,
rbwoodward@wbbklaw.com), John Maksimovich (criminallaw@johnmaksimovich.com), David E
Vandercoy (david.vandercoy@valpo.edu), Magistrate Judge Andrew P Rodovich
(rodovich_chambers@innd.uscourts.gov, ruth_nagy@innd.uscourts.gov), Chief Judge Philip P
Simon (denise_woodside@innd.uscourts.gov, jacob_hamann@innd.uscourts.gov,
lauren_schwartz@innd.uscourts.gov, mira_serrill-robins@innd.uscourts.gov,
noel_collins@innd.uscourts.gov, philip_simon@innd.uscourts.gov)
--Non Case Participants: Matthew D Soliday (office@matthewsolidaylaw.com)
--No Notice Sent:

Message-Id:2707799@innd.uscourts.gov
Subject:Activity in Case 2:11-cr-00077-PPS-APR United States of America v. Briseno et al
Jury Trial
```
Content–Type: text/html

### U.S. District Court Northern District of Indiana [LIVE]

### USDC Northern Indiana

## Notice of Electronic Filing

The following transaction was entered on 2/13/2015 at 10:34 AM EST and filed on 2/12/2015

**Case Name:**   United States of America v. Briseno et al

**Case Number:**   2:11–cr–00077–PPS–APR

**Filer:**

**Document Number:** 1417(No document attached)

**Docket Text:**
**JURY TRIAL (7th DAY OF EVIDENCE) as to Juan Briseno held on 2/12/2015 before Chief Judge Philip P Simon. Parties present as previously noted. Govt continues to present evidence but does not conclude. Schedule for trial next week: Tuesday – Friday, 2/17 – 2/20/15 due to the Presidents' Day Holiday on 2/16/15. Jury given instruction not to discuss case, read or do any research about the case while on this extended recess. Trial to resume on Tuesday 2/17/15 at 8:30 a.m. Defendant REMANDED to custody of US Marshal. (Court Reporter Stacy Drohosky (am) Kelly Fitzgerald (pm).) (nac)**

**2:11−cr−00077−PPS−APR−1 Notice has been electronically mailed to:**

David E Vandercoy    david.vandercoy@valpo.edu

Arlington J Foley    arlingtonfoley@att.net

Mark A Psimos    psimoslaw@airbaud.net

Scott L King    sking@scottkinggroup.com, dwilliams@scottkinggroup.com

James N Thiros    jim@thiros.com, lynn@thiros.com

Thomas W Vanes    tom.vanes@sbcglobal.net, b.lynneadams@yahoo.com

Ihor Alexander Woloshansky    ihorlawyer@hotmail.com

R Brian Woodward    rbwoodward@wbbklaw.com, carolb@wbbklaw.com

John Maksimovich    criminallaw@johnmaksimovich.com

Visvaldis P Kupsis    vpkupsis@hotmail.com

Sheldon B Nagelberg    sbnagelberglaw@att.net

John E Martin – FCD    john_martin@fd.org

Adam Tavitas    Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander    jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele    ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst    kre@braje−nelson.com

Bryan M Truitt    bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis    theislaw@aol.com

Robert L Rascia    rrascia@rascia−decastro.com, ysierra@rascia−decastro.com

Paul Jeffrey Schlesinger    pjeffslaw@aol.com

Matthew N Fech    mnf@fech−law.com

Pablo DeCastro    pdecastro@attorneydecastro.com, ysierra@rascia−decastro.com

Dean R Lanter – AUSA    dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov,
janet.eisenmann@usdoj.gov

David J Nozick – AUSA    David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov,
janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson    attorneyrmj@gmail.com

Bruce R Hegyi – AUSA    bruce.hegyi@usdoj.gov

**2:11−cr−00077−PPS−APR−1 Notice has been delivered by U.S. Mail or other means to:**

THE UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| | § | |
| UNITED STATES OF AMERICA, | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CAUSE NO.  2:11-CR-0077-PPS |
| | § | |
| JUAN BRISENO, also known as Tito, | § | |
| Defendant. | § | |
| | § | |

**GOVERNMENT'S MOTION FOR PRODUCTION
OF UNPRIVILEGED, NON-TESTIMONIAL, EVIDENCE**

COMES NOW, the United States of America (United States" or "Government"), by and

through the undersigned counsel, and moves the Court for an order requiring defendant Juan

Briseno, also known as "Tito" ("Mr. Briseno") to participate in an inspection and viewing of his

person for the purposes of identifying and photographing any and all tattoos on his person,

which, as demonstrated below are relevant in this Racketeer Influenced and Corrupt

Organizations Act (RICO/VICAR) capital case that is based, *inter alia*, on Mr. Briseno's actions

as a leader and/or member of the Almighty Imperial Gangster Nation ("Imperial Gangsters" or

"IGs"), as more fully set forth in the Fourth Superseding Indictment herein. More particularly,

the tattoos sought to be viewed and photographed are tattoos with which Mr. Briseno has

adorned himself following his arrest and detention on federal charges in this RICO/VICAR

capital prosecution of him (e.g., "FUCK THE FEDS").  As shown below, such tattoos are

material to the Penalty Phase issues of future dangerousness, lack of remorse, and low

rehabilitative potential.

2753

**Mr. Briseno's Tattoos**

A. Pre-Arrest Tattoos

The evidence in the capital trial of Mr. Briseno began on February 3, 2015. To date, numerous witnesses, including but not limited to Dannelle Walberg, Brandon Weaver, Joseph Torres, Galo Feliciano, Sarah Castillo-Flores, Carlos Orta, Andres Lara, David Almarez, Anthony Baldazo, and Andres Arenivas, have identified Mr. Briseno as a member and/or leader of the Imperial Gangsters. Testimony at trial established that many members of the Imperial Gangsters had gang tattoos on their persons and that such tattoos demonstrate their allegiance to their gang and it violent mission.

In this trial, the Government intends to offer three photograph of Mr. Briseno's front torso and shoulders and his back, taken at or about the time of his August 24, 2010 arrest (2:10-CR-0146), that depict the tattoos then-existing on Mr. Briseno's body: (1) on his front torso and shoulders: "A," "I," "G," "N," demonstrating his membership in, and allegiance to, the **A**lmighty **I**mperial **G**angster **N**ation [*see* Exhibits A-1 & A-2], and (2) on his back: (a) "R I P Javo G" (deceased Imperial Gangster Javier Solis, Jr.) and (b) "RIP Eddie G" (deceased Imperial Gangster Eddie Torres, Jr.) [*See* Exhibit A-3] Mr. Briseno was arraigned on the Indictment [DE #1] in this case (2:11-CR-0077) on June 20, 2011. That indictment contained a Notice of Special Findings, informing Mr. Briseno that the Government might pursue the death penalty against him. On June 24, 2011, Mr. Briseno was arraigned on that Indictment. Moreover, on July 1, 2011, Mr. Briseno's second attorney, Learned Counsel John Maksimovich was appointed to represent him, thereby further increasing Mr. Briseno's awareness that he was eligible for the death penalty.

B.  Post-Arrest Tattoos

Following Mr. Briseno's indictment in this case, the Government has learned that --
*subsequent to* his detention on federal charges -- Mr. Briseno sought and obtained other and
further tattoos on his person.  As the Court can plainly see, Mr. Briseno now has finely-detailed
tattoos on the backs of both of his hands, which he did not have at the time of his arrest.  (The
subject matter of those tattoos is not readily visible from afar.)  Almost four months after Mr.
Briseno was arraigned on the Indictment that made him death-eligible, Mr. Briseno wrote on
October 18, 2011 a letter to fellow Imperial Gangster Calvin Beltran, also known as "Risky." In
that letter, Mr. Briseno writes, among other things, "they tryna give me the death Penalty, like
I'm some sort of serial killer or sumthing."  [*See* Exhibit B (10-18-2011 letter), page 2]
Additionally, Mr. Briseno reports that he has obtained new tattoos:  "I got "South" on the back of
my right hand.  Then I got "Side" on the back of my left hand.  Then I got my fed number in a
bar code on my wrist cause It's gonna be wit me forever."  [Exhibit B, page 2]  Mr. Briseno's
letter goes on to discuss additional tattoos he intends to get and invites Imperial Gangster Beltran
to get one tattoo that is similar ("But you kno that's the tat I was gonna get but it's coo[l] you can
get it too [but] mine might be a lil better.")  [Id.]  Additionally, the Government has
subsequently learned from two individuals who were housed in the same  facility as Mr. Briseno
that Mr. Briseno's post-arrest tattoos include at least one tattoo that states "FUCK THE FEDS,"
or words to that effect.[1]

---

[1]  It is well-settled that the Fifth Amendment "privilege does not protect a criminal suspect from
being compelled to exhibit physical characteristics" because "[s]uch acts are not testimonial."
*United States* v. *Greer*, 631 F.3d 608, 612-13 (2d Cir. 2011) ("It is the contents of [the
defendant's] own mind ... that implicate[ ] the Self-Incrimination Clause.  Because the exhibition
of physical traits is not a 'communication by a witness that relates either express or implied
assertions of fact or belief,' it does not enjoy constitutional protection." (quoting *United States* v.

Page **3** of **10**

Plainly, any post-arrest *gang* tattoos (which indicate continued allegiance to a violent interstate criminal enterprise)[2] and any post-arrest *defiant*, *confrontational* and/or *anti-social* tattoo-declarations (*e.g.*, "FUCK THE FEDS") are relevant to the Penalty Phase issues of lack of remorse, low probability of rehabilitation, and future dangerousness. This is so, because they demonstrate both (1) Mr. Briseno's post-apprehension continuing pride in, and allegiance to, the Imperial Gangsters and their violent criminal mission and actions, and (2) Mr. Briseno's *continuing* rejection of, and distain for, law and order, and his refusal to conform his actions within the bounds of basic social mores -- which pronouncements by Mr. Briseno are particularly poignant because Mr. Briseno intentionally adorned himself with these permanent sentiments during the pendency of death-eligible charges against him.

As shown below, it is well-settled that the introduction of gang (and other) tattoos are generally admissible provided, as here, that they are relevant to the issues presented and their probative value is not outweighed by the danger of creating an unfair prejudice, confusing the issues, or misleading the jury. *See* 18 U.S.C. Section 3593(c) (Federal Death Penalty Act/Penalty Phase standard.)

---

*Hubbell*, 530 U.S. 27, 35 (2000) (additional quotation marks and citation omitted.)) In *Greer*, the Second Circuit specifically extended this principle to tattoos, holding that, because the presence of the tattoos were "not compelled by the government," the "voluntary tattooing of an incriminating word ... was, like the voluntary preparation of documents, not the product of government compulsion." 631 F.3d at 613. The existence and contents of the defendant's tattoo was thus not protected by the defendant's Fifth Amendment rights. Id.; *see also Slavin* v. *Artus*, 413 Fed. Appx. 380, *2 (2d Cir. 2011).

[2]   In the same October 11, 2011 letter, Mr. Briseno discusses the need to keep the gang together and his intention to commit future violence: "I feel you on how you feel losing Beef [Imperial Gangster Angel "Beef" Santos, who was murdered]. * * * * I was heated cause I was in here when it happened and I couldn't do shit about it. But I kno I'll get out one day and [I will] handle buiss [business]." [Exhibit B, page 3]

Page **4** of **10**

## MR. BRISENO SHOULD BE ORDERED TO PRODUCE HIS TATTOOS
## FOR INSPECTION AND MEMORIALIZATION

The relief sought in the Government's Motion is based upon the well-known premise that the Constitution does not protect a criminal defendant from giving non-testimonial evidence (e.g., fingerprints, standing in police lineups, providing handwriting exemplars, voice exemplars, etc.)  In this regard, Courts have long held that forced fingerprinting, photographing, display of tattoos, or requiring a defendant to say certain phrases for the purposes of identification do not violate the Fifth Amendment. *See, e.g., Schmerber v. California*, 384 U.S. 757, 764 (1966); *United States v. Bay*, 762 F.2d 1314, 1124 (9th Cir. 1985) (requiring a defendant to display tattoos on his hands would not violate the Fifth Amendment privilege against self-incrimination). Such productions or displays do not involve compelled testimony. Id.  This conclusion is founded in *United States v. Dionisio*, 410 U.S.1, 5–6 (1973) ("It has long been held that the compelled display of identifiable physical characteristics infringes no interest protected by the privilege against compulsory self-incrimination."); s*ee also United States v. Hubbell*, 530 U.S. 27, 34 (2000) ("[E]ven though the act may provide incriminating evidence, a criminal suspect may be compelled to put on a shirt, to provide a blood sample or handwriting exemplar, or to make a recording of his voice." Id. at 35 (citing *Holt v. United States*, 218 U.S. 245 (1910)).

In conformity with these established principles, Courts have long held that introducing photographs of a defendant's tattoos or requiring a defendant to expose his tattoos for viewing by the jury does not violate the Fifth Amendment. *See*, *e.g*., *United States* v. *Greer*, 631 F.3d 608, 612-13 (2d Cir. 2011); *United States v. Toliver*, 387 Fed.Appx. 406, 416 (4th Cir. 2010) (compelling a defendant to be photographed so that the pictures could be displayed at the defendant's RICO trial before the jury did not violate the Fifth Amendment); *United States v. Miller*, 48 Fed. Appx. 933, 948 (6th Cir. 2002); *United States v. Lara*, 181 F.3d 183, 190 (1st Cir.

2757

1999); *Tasco v. Butler*, 835 F.2d 1120, (5th Cir. 1988) ("The court's judicial notice of [the defendant's] identifying tattoos and scar did not impinge on his Fifth Amendment privilege"); *United States v. Bay*, 762 F.2d 1314, 1315-16 (9th Cir. 1985).

Furthermore, it is well established that what a person knowingly exposes to the public is not a subject of Fourth Amendment protection. *Katz v. United States*, 389 U.S. 347 (1967). Consequently, there is no requirement of a showing of probable cause to support a Court Order compelling fingerprints or hair samples. *See Davis v. Mississippi*, 394 U.S. 721, 727 (1969) (stating in dicta that "fingerprinting involves none of the probing into an individual's private life and thoughts that marks an interrogation or search"); s*ee generally Cupp v. Murphy*, 412 U.S. 291, 295 (1973) (characterizing fingerprints as "mere physical characteristics" which are "constantly exposed to the public"). Nor does a criminal defendant suffer constitutional harm when required to try on clothing to see if it fits, *Holt v. United States*, 218 U.S. 245 (1910), provide a blood sample, *Schmerber v. California*, 384 U.S. at 764, give a handwriting exemplar, *Gilbert v. California*, 388 U.S. 263, 266-67 (1967), or speak so tone of voice can be heard, *United States v. Wade*, 388 U.S. 218 (1967).

Moreover, the type of evidence the Government is seeking – viewing and photographing Mr. Briseno's tattoos -- is plainly less intrusive than the compulsory production of blood, *Schmerber*, 384 U.S. at 764; ordering a defendant to provide a handwriting exemplar, *Gilber v Californiat*, 388 U.S. at 266-67; or ordering a defendant to shave before trial, *United States v. Valenzuela*, 722 F.2d 1431, 1433 (9th Cir. 1983).

<u>Seventh Circuit Precedent – Gang Tattoos Generally</u>

*United States v. Suggs*, 374 F.3d 508 (7th Cir. 2004),[3] is the leading case in the Seventh

Circuit on the issue of the admissibility of gang tattoos in a gang trial, such as that presented

here. In *Suggs*, the Government alleged that the defendants were members of a street gang

known as Concord Affiliated (CCA) that was associated with the Vice Lords, a Chicago street

gang that had branched out across the Midwest. <u>Id</u>. at 512. As part of proving the charged

conspiracy, the Government introduced evidence of the defendants' gang affiliation, including

*inter alia*, photographs depicting tattoos of the word "Insane" on one defendant, which

demonstrated allegiance to the "Insane Vice Lords," one of the five factions of the Almighty

Vice Lord Nation; and the tattoo of a 5-point star and crescent on a second defendant, which are

symbols of the Vice Lords. <u>Id</u>. at 514. Additionally, the Government introduced evidence that a

third defendant had a 5-point star etched into the gold cap of his front tooth, which signified

allegiance to the Vice Lords. <u>Id</u>. Following their convictions on drug conspiracy charges (21

U.S.C. Section 846) and a variety of other drug offenses (21 U.S.C. Sections 841 and 843), the

defendants claimed on appeal that the admission of the tattoos and the gold cap containing the 5-

point star was error because (a) they were not directly probative of participation in the drug

conspiracy, and (b) they unfairly prejudiced the defendants based on a status (gang membership)

which was not in itself a crime. <u>Id</u>. at 516.

Affirming the convictions in *Suggs*, the Seventh Circuit readily disposed of appellants'

Rule 403 claims:

> Despite its highly prejudicial nature, <u>it is well settled in the Seventh Circuit</u>
> <u>that "[e]vidence of gang affiliation is admissible in cases in which it is relevant</u>
> <u>to demonstrate the existence of a joint venture or conspiracy and a relationship</u>
> <u>among its members</u>." *United States v. Westbrook,* 125 F.3d 996, 1007 (7th Cir.

---

[3]  *Suggs* was an appeal from a trial before the Hon. James T. Moody of the Northern District of
Indiana.

2759

1997).  "Gang affiliation is particularly relevant, and has been held admissible, in cases where the interrelationship between people is a central issue[,]" such as in a conspiracy case.  *United States v. Thomas,* 86 F.3d 647, 652 (7th Cir.1996) (affirming district court's ruling allowing gang evidence because that evidence "helped demonstrate the existence of the conspiracy and the connections between members of the conspiracy"); *see also United States v. Sargent,* 98 F.3d 325, 328 (7th Cir.1996) ("[G]ang membership can be key to establishing criminal intent or agreement to conspire.").

Here, the district court correctly admitted evidence of the Defendants' gang affiliation "for the [limited] purpose of demonstrating the existence of a conspiracy to distribute illegal drugs, and the connections between members of CCA and the conspiracy." (Trial Tr. I, 36). The government did not mislead the jury by improperly substituting evidence of gang affiliation for evidence of involvement in the drug conspiracy. Instead, the government used gang affiliation as probative circumstantial support for their theory of the case:  that the indicted individuals had engaged in a conspiracy to distribute crack.

*              *              *

The specific exhibits showing Bobby and Seantai Suggs's tattoos and Aaron Davis's gold tooth did not violate Federal Rule of Evidence 403.  As established above, gang membership is relevant evidence in showing a drug distribution conspiracy. Tattoos that help to establish gang membership are admissible to support a showing of a joint venture or conspiracy. *See United States v. Lewis,* 910 F.2d 1367, 1372 (7th Cir.1990).

374 F.3d at 516-17; *and see United States v. Ruibal*, 2014 WL 198663, *2 (W.D. Mich. 2014) (Government entitled under *Old Chief v. United States*, 519 U.S. 172, 189 (1997), to introduce tattoo evidence of defendants' gang affiliation despite defendants' willingness to stipulate to such gang association).

Because Mr. Briseno's tattoos are not privileged, and because Mr. Briseno's tattoos are non-testimonial, and because Mr. Briseno's post-arrest tattoos are relevant to material issues in the Penalty Phase of these proceedings (i.e., of lack or remorse, low probability of rehabilitation, and future dangerousness), and because the probative value is not outweighed by the danger of creating an unfair prejudice, confusing the issues, or misleading the jury, the Court should order

that Mr. Briseno submit to the viewing and photographing by law enforcement personnel of any and all tattoos on his person.

### Conclusion

For the reasons set forth above, the Government requests that the Court order defendant Juan Briseno to permit law enforcement personnel to view and photograph all of the tattoos on his person at a time and location directed by the Court.

Respectfully submitted,

DAVID CAPP
UNITED STATES ATTORNEY

s/ *David J. Nozick*

David J. Nozick
Assistant U.S. Attorney
5400 Federal Plaza
Suite 1500
Hammond, IN 46320
Tel. (219) 937-5655
www.david.nozick@usdoj.gov

s/ *Bruce R. Hegyi*

Bruce R. Hegyi
Trial Attorney
Capital Case Section
Criminal Division
United States Department of Justice
1331 F Street, N.W., Sixth Floor
Washington, D.C.  20530
Tel. (202) 616-4582
Cell (703) 536-4774
www.bruce.hegyi@usdoj.gov

2761

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this date, I electronically filed the foregoing document and accompanying exhibits with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record for defendant Juan Briseno.


s/ *Bruce R. Hegyi*
Bruce R. Hegyi
Trial Attorney

2762

GOVERNMENT
EXHIBIT
10 TATTOOS -1
U.S. v Briseno



GOVERNMENT
EXHIBIT

10-TATTOOS-2

U.S. v Briseno

PENGAD 800-631-6989



GOVERNMENT
EXHIBIT
10 TATTOOS-3
U.S. v Briseno

Briseno

orter County Jail
2755 St Rd 49
araiso IN 46383



USA
FIRST-CLASS
FOREVER

Calvin Beltron
5718 Worthcote Ave
Hammond, IN 46320

4632041466



GOVERNMENT
EXHIBIT
10 BELTRAN 1
U.S. v Briseno

"1"

10/18/11

Lips,

Wat up my nikka wats been New. It was good hearing from you. Well I'm coo just chillin I had court last friday but they just continued it. I got court Nov 17 So I'll find something out then. I think They might hit me wit Some new charges. But im praying the let me go cause of lack of evidence. I just prepare myself for the worst but pray for the best. But that was love you went out the day of R.I.P. Reef Anniversary. Nikka out there forgot how shit goes. But it's good that you came in wen AGua was out, we dn't need any one getting locked up on some stupid shit. Fuck them nikkas Sperm and them they can't even handle the own buiss and they tryin to do that shit. So you fuck wit Blackass and then again. That's good we need to become a big family again. Were brothers before any thing. we only got ourselves ad family. But thats coo just stay strong. Did you tell

2767

Soy Sauce I seid wat up and to write me
If he ovants too. Thats lowe Devious
coming out here alot now and chilling
wit you. wat does he have a car or
he gets droped off. wat did he buy a
new PS3 System or just a controll.
Tell him I said wet up, But about the
tats, I got "South" and the back of
my right hand. Then I got "Side" on the
back of my left hand. Then I got my
Fed number in a bar code on my wrist
cause It's gonna be wit me forever.
Then I got the date me and oh gurl
hooked up on my wrist as well. Cut
me up all you want but she's the only
one that stood wit a nikka through
this. So Ima be wit here You can't find
ones like that any more. But you kno thats
the tat I was gonna get but it's coo you
can get it too mine might be still better.
But yea Gizzle they tryna give me the
death Penalty. like I'm some type of
Serial Killer or sumthing. That white
boi that killed that gurl is in Max.
But I was waiting for him to come
in here. I was gonna fuck him up.

2768

But they watching him close. He was
bogus for that doe. But shit on my
B-day I made some tamales and
sip on some drank you kno how it
is. I was a nice one. My whole fam
came to see me "Happy B-lated B-day"
By the way, wat you do out there,
lol I see you gave me a new name
It descent doe. If we think the same
I kno wat BaG you talking about. I'll
coo wit that name. Shit I damn near
already lived up to it. Yea I can get
pics send them through. But that pic
your talking bout I think I'll wait on
that. I dn't want them to bring up
no bull shit you kno. But yea I feel
you an how you feel losing Beef. It
sucks my nig but you kno it's life.
I was heated cause I-was in here
wen it happened and I couldn't do
shit about it. But I kno I'll get out
one day and handle buiss. But yea
I kno you'll like tha CCA music.
The spit nothing but the truth so
doesDevious like the music. So you
actually met some hoes at six flags

and they actually talk to you. Man I must be missing alot. Who all went up there. Shit rite about now I'll nut in anything my nig. But I'm heppy to hear you step up your game. r you still fucking wit tekla. lol. Naw but thets wets up do all type of shit out there have fun. But I talk to Dinero, Jakk, Tuff, you, fatboi, Blackass, and thets it, I'm glad to hear that you got a gurl. you got to keep them on standby. just dn't get anything prego. unless she bad. Well imis and this here it was good hearing from you. Sorry is sloppy I was in my room at nite and the lights aint to brite - Stay up and out of trouble. Tell your OG I said 'HI' And I love her. lol

2770

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | NO. 2:11 CR 77 PPS |
| | ) | |
| JUAN BRISENO | ) | |

PETITION FOR WRIT OF HABEAS CORPUS AD TESTIFICANDUM

Comes now David Capp, United States Attorney for the Northern District of Indiana, by Assistant United States Attorney David J. Nozick, and represents to the Court that the trial for the above-captioned defendant began on February 2, 2015, at 8:30 a.m. (Central time), and that a prisoner, Jose Perez (060N38179, DOB: 3-2-89), is necessary to be a witness therein.

WHEREFORE, your petitioner prays this Honorable Court grant a Writ of Habeas Corpus ad Testificandum to be directed to:

Warden                          United States Marshal
Lake County Jail                Northern District of Indiana
Crown Point, Indiana            Hammond, Indiana

commanding the surrender of the body of this prisoner to the United States Marshal for the Northern District of Indiana, or one of his duly authorized deputies, or any authorized Marshal, so that the Marshal, or deputy, may produce the body of the prisoner in the United States District Court in the Federal Building, 5400 Federal Plaza, Hammond, Indiana, on February 19, 2015, at 8:30 a.m. (Central time), so that the prisoner may be present and testify, the prisoner to be

1

2771

returned upon completion of his testimony by the United States Marshal, or one of his duly

authorized deputies, to the said institution.

Respectfully submitted,

DAVID CAPP
United States Attorney

By:     /s/ David J. Nozick
        DAVID J. NOZICK
        Assistant United States Attorney
        5400 Federal Plaza, Suite 1500
        Hammond, Indiana 46320
        (219) 937-5500

2772

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| Plaintiff | ) | |
| | ) | |
| vs. | ) | CASE NUMBER: 2:11 CR 77 (01) PPS |
| | ) | |
| JUAN BRISENO | ) | |
| Defendant | ) | |

**ORDER FOR EXTEMDED SERVICE ATTENDANCE FEE**

**IT IS THE ORDER** of this Court that the jury in this case, having served or will

be serving in excess of ten (10) days, be paid an additional $10.00 per day for each day

over ten days, pursuant to 28 U.S.C.  Section 1871(b)(2).

**IT IT FURTHER ORDERED** that the Clerk of Court for the Northern District of

Indiana be authorized to make this payment at the expense of the United States of

America.

ENTERED: February 17, 2015

S/Philip P. Simon
PHILIP P. SIMON, CHIEF JUDGE
UNITED STATES DISTRICT COURT

2773

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 2:11-cr-77 |
| | ) | |
| JUAN BRISENO, | ) | |
| | ) | |
| Defendant. | ) | |

### WRIT OF HABEAS CORPUS AD TESTIFICANDUM

TO:      Warden                       United States Marshal
                Lake County Jail         Northern District of Indiana
                Crown Point, Indiana    Hammond, Indiana

The court being advised that prisoner Jose Perez (060N38179, DOB: 3-2-89) is a necessary witness in the trial of Juan Briseno in *United States v. Juan Briseno*, which began on February 2, 2015, at 8:30 a.m. (Central time), and that said prisoner is in the lawful custody and control of the Warden, Lake County Jail, Crown Point, Indiana.

It is **ORDERED** and **ADJUDGED** that the Warden, Lake County Jail, Crown Point, Indiana, be required and is hereby commanded to surrender the body of prisoner Jose Perez (060N38179, DOB: 3-2-89) to the United States Marshal for the Northern District of Indiana, or any duly authorized deputy, or any authorized Marshal, for the purpose of producing the body of said prisoner for trial in the federal courthouse, Hammond, Indiana, on February 19, 2015, at 8:30 a.m. (Central time), so that the prisoner may be present to testify in said trial, and thereafter to be returned to the institution by the United States Marshal, or one of his duly authorized deputies, under safe and secure conduct, and have you then and there this Writ.

**SO ORDERED**

2774

ENTERED this 17th day of February, 2015.

/s/ Andrew P. Rodovich
United States Magistrate Judge

```
MIME-Version:1.0
From:CMECFinnd@innd.uscourts.gov
To:CMECFinnd@localhost.localdomain
Bcc:
--Case Participants: Pablo DeCastro (pdecastro@attorneydecastro.com,
ysierra@rascia-decastro.com), Kurt R Earnst (kre@braje-nelson.com), Matthew N Fech
(mnf@fech-law.com), Arlington J Foley (arlingtonfoley@att.net), Jack Friedlander
(jack@jackfriedlander.com, office@jackfriedlander.com), Bruce R Hegyi - AUSA
(bruce.hegyi@usdoj.gov), Roxanne Mendez Johnson (attorneyrmj@gmail.com), Scott L King
(dwilliams@scottkinggroup.com, sking@scottkinggroup.com), Visvaldis P Kupsis
(vpkupsis@hotmail.com), Dean R Lanter - AUSA (dean.lanter@usdoj.gov,
janet.eisenmann@usdoj.gov, usainn.ecfcivil@usdoj.gov), John Maksimovich
(criminallaw@johnmaksimovich.com), John E Martin - FCD (john_martin@fd.org), Sheldon B
Nagelberg (sbnagelberglaw@att.net), David J Nozick - AUSA (david.nozick@usdoj.gov,
janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov,
usainn.ecfcivil@usdoj.gov), Mark A Psimos (psimoslaw@airbaud.net), Robert L Rascia
(rrascia@rascia-decastro.com, ysierra@rascia-decastro.com), Stephen Edward Scheele
(pkd@gk4law.com, ses@gk4law.com), Paul Jeffrey Schlesinger (pjeffslaw@aol.com), Adam
Tavitas (adtavitas@aol.com, b.lynneadams@yahoo.com), John T Theis (theislaw@aol.com),
James N Thiros (jim@thiros.com, lynn@thiros.com), Bryan M Truitt (bryan@tblawyers.com,
sherrie@tblawyers.com), David E Vandercoy (david.vandercoy@valpo.edu), Thomas W Vanes
(b.lynneadams@yahoo.com, tom.vanes@sbcglobal.net), Ihor Alexander Woloshansky
(ihorlawyer@hotmail.com), Richard C Wolter (b.lynneadams@yahoo.com), R Brian Woodward
(carolb@wbbklaw.com, rbwoodward@wbbklaw.com), Magistrate Judge Andrew P Rodovich
(rodovich_chambers@innd.uscourts.gov, ruth_nagy@innd.uscourts.gov), Chief Judge Philip P
Simon (denise_woodside@innd.uscourts.gov, jacob_hamann@innd.uscourts.gov,
lauren_schwartz@innd.uscourts.gov, mira_serrill-robins@innd.uscourts.gov,
noel_collins@innd.uscourts.gov, philip_simon@innd.uscourts.gov)
--Non Case Participants: Matthew D Soliday (office@matthewsolidaylaw.com)
--No Notice Sent:

Message-Id:2709878@innd.uscourts.gov
Subject:Activity in Case 2:11-cr-00077-PPS-APR United States of America v. Briseno et al
Jury Trial
Content-Type: text/html
```

### U.S. District Court Northern District of Indiana [LIVE]

### USDC Northern Indiana

## Notice of Electronic Filing

The following transaction was entered on 2/17/2015 at 6:19 PM EST and filed on 2/17/2015

| | |
|---|---|
| **Case Name:** | United States of America v. Briseno et al |
| **Case Number:** | 2:11-cr-00077-PPS-APR |
| **Filer:** | |
| **Document Number:** | 1425(No document attached) |

**Docket Text:**

**JURY TRIAL (8th DAY OF EVIDENCE) as to Juan Briseno held on 2/17/2015 before Chief Judge Philip P Simon. Parties present as previously noted. Defense given one week to respond to the Govt's Motion [1420]. Stipulation #2 by parties entered. Parties discuss with the court the progression of trial and scheduling, Govt indicates that it is proceeding more quickly than anticipated and is ahead of schedule. Govt continues to present evidence, does not conclude. Trial continued to Wednesday, 2/18/2015 at 8:30 a.m. Defendant REMANDED to custody of US Marshal. (Court Reporter Stacy Drohosky (am) and Debra Bonk (pm).) (nac)**

**2:11−cr−00077−PPS−APR−1 Notice has been electronically mailed to:**

David E Vandercoy    david.vandercoy@valpo.edu

Arlington J Foley    arlingtonfoley@att.net

Mark A Psimos    psimoslaw@airbaud.net

Scott L King    sking@scottkinggroup.com, dwilliams@scottkinggroup.com

James N Thiros    jim@thiros.com, lynn@thiros.com

Thomas W Vanes    tom.vanes@sbcglobal.net, b.lynneadams@yahoo.com

Ihor Alexander Woloshansky    ihorlawyer@hotmail.com

R Brian Woodward    rbwoodward@wbbklaw.com, carolb@wbbklaw.com

John Maksimovich    criminallaw@johnmaksimovich.com

Visvaldis P Kupsis    vpkupsis@hotmail.com

Sheldon B Nagelberg    sbnagelberglaw@att.net

John E Martin – FCD    john_martin@fd.org

Adam Tavitas    Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander    jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele    ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst    kre@braje−nelson.com

Bryan M Truitt    bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis    theislaw@aol.com

Robert L Rascia    rrascia@rascia−decastro.com, ysierra@rascia−decastro.com

Paul Jeffrey Schlesinger    pjeffslaw@aol.com

Matthew N Fech    mnf@fech−law.com

Pablo DeCastro    pdecastro@attorneydecastro.com, ysierra@rascia−decastro.com

Dean R Lanter – AUSA    dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov,
janet.eisenmann@usdoj.gov

David J Nozick – AUSA    David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov,
janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson    attorneyrmj@gmail.com

Bruce R Hegyi – AUSA    bruce.hegyi@usdoj.gov

**2:11–cr–00077–PPS–APR–1 Notice has been delivered by U.S. Mail or other means to:**

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | 2015 FEB 10 P 2: 31 |
| | ) | |
| Plaintiff, | ) | =FILED= |
| | ) | |
| v. | ) | Case No. 2:11-cr-77 |
| | ) | FEB 13 2015 |
| JUAN BRISENO, | ) | |
| | ) | Robert ... on, Clerk |
| Defendant. | ) | U.S. DISTRICT COURT |
| | | NORTHERN DISTRICT OF INDIANA |

## WRIT OF HABEAS CORPUS AD TESTIFICANDUM

TO:  Warden                                      United States Marshal
      Westville Correctional Facility        Northern District of Indiana
      Westville, Indiana                        Hammond, Indiana

The court being advised that prisoner Jose Lopez (DOC 248056) is a necessary witness in the trial of Juan Briseno in *United States v. Juan Briseno*, on February 2, 2015, at 8:30 a.m. (Central time), and that said prisoner is in the lawful custody and control of the Warden, Westville Correctional Facility, Westville, Indiana.

It is **ORDERED** and **ADJUDGED** that the Warden, Westville Correctional Facility, Westville, Indiana, be required and is hereby commanded to surrender the body of prisoner Jose Lopez (DOC 248056) to the United States Marshal for the Northern District of Indiana, or any duly authorized deputy, or any authorized Marshal, for the purpose of producing the body of said prisoner for trial in the federal courthouse, Hammond, Indiana, on February 12, 2015, at 8:30 a.m. (Central time), so that the prisoner may be present to testify in said trial, and thereafter to be returned to the institution by the United States Marshal, or one of his duly authorized deputies, under safe and secure conduct, and have you then and there this Writ.

**SO ORDERED**

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
I hereby certify the foregoing is a
true copy of the original on the file in
this court in this case.
ROBERT ... CLERK
By: _____
DEPUTY CLERK
Date: __02-10-15__

ENTERED this 10th day of February, 2015.

/s/ Andrew P. Rodovich
United States Magistrate Judge

RECEIVED

Executed this writ by receiving custody on **02/12/15** of the within named **JOSE LOPEZ**
DATE

FROM **WESTVILLE (ISP)** and transferring the within named to **HAMMOND FED. BLDG.**

RETURNED

Executed this writ by returning custody on **02/12/15** of the within named **JOSE LOPEZ**
DATE

FROM **HAMMOND FED. BLDG** and transferring the within named to **ISP Westville.**

United States Marshal

By **Leree Rubarts**
Deputy

2

2780

```
MIME-Version:1.0
From:CMECFinnd@innd.uscourts.gov
To:CMECFinnd@localhost.localdomain
Bcc:
--Case Participants: Pablo DeCastro (pdecastro@attorneydecastro.com,
ysierra@rascia-decastro.com), Kurt R Earnst (kre@braje-nelson.com), Matthew N Fech
(mnf@fech-law.com), Arlington J Foley (arlingtonfoley@att.net), Jack Friedlander
(jack@jackfriedlander.com, office@jackfriedlander.com), Bruce R Hegyi - AUSA
(bruce.hegyi@usdoj.gov), Roxanne Mendez Johnson (attorneyrmj@gmail.com), Scott L King
(dwilliams@scottkinggroup.com, sking@scottkinggroup.com), Visvaldis P Kupsis
(vpkupsis@hotmail.com), Dean R Lanter - AUSA (dean.lanter@usdoj.gov,
janet.eisenmann@usdoj.gov, usainn.ecfcivil@usdoj.gov), John Maksimovich
(criminallaw@johnmaksimovich.com), John E Martin - FCD (john_martin@fd.org), Sheldon B
Nagelberg (sbnagelberglaw@att.net), David J Nozick - AUSA (david.nozick@usdoj.gov,
janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov,
usainn.ecfcivil@usdoj.gov), Mark A Psimos (psimoslaw@airbaud.net), Robert L Rascia
(rrascia@rascia-decastro.com, ysierra@rascia-decastro.com), Stephen Edward Scheele
(pkd@gk4law.com, ses@gk4law.com), Paul Jeffrey Schlesinger (pjeffslaw@aol.com), Adam
Tavitas (adtavitas@aol.com, b.lynneadams@yahoo.com), John T Theis (theislaw@aol.com),
James N Thiros (jim@thiros.com, lynn@thiros.com), Bryan M Truitt (bryan@tblawyers.com,
sherrie@tblawyers.com), David E Vandercoy (david.vandercoy@valpo.edu), Thomas W Vanes
(b.lynneadams@yahoo.com, tom.vanes@sbcglobal.net), Ihor Alexander Woloshansky
(ihorlawyer@hotmail.com), Richard C Wolter (b.lynneadams@yahoo.com), R Brian Woodward
(carolb@wbbklaw.com, rbwoodward@wbbklaw.com), Magistrate Judge Andrew P Rodovich
(rodovich_chambers@innd.uscourts.gov, ruth_nagy@innd.uscourts.gov), Chief Judge Philip P
Simon (denise_woodside@innd.uscourts.gov, jacob_hamann@innd.uscourts.gov,
lauren_schwartz@innd.uscourts.gov, mira_serrill-robins@innd.uscourts.gov,
noel_collins@innd.uscourts.gov, philip_simon@innd.uscourts.gov)
--Non Case Participants: Matthew D Soliday (office@matthewsolidaylaw.com)
--No Notice Sent:

Message-Id:2710795@innd.uscourts.gov
Subject:Activity in Case 2:11-cr-00077-PPS-APR United States of America v. Briseno et al
Jury Trial
```
Content–Type: text/html

## U.S. District Court Northern District of Indiana [LIVE]

### USDC Northern Indiana

## Notice of Electronic Filing

The following transaction was entered on 2/18/2015 at 6:48 PM EST and filed on 2/18/2015

**Case Name:**    United States of America v. Briseno et al

**Case Number:**    2:11–cr–00077–PPS–APR

**Filer:**

**Document Number:** 1431(No document attached)

**Docket Text:**
**JURY TRIAL (Day 9th DAY OF EVIDENCE) as to Juan Briseno held on 2/18/2015 before Chief Judge Philip P Simon. Parties present as previously noted. Govt continues presentation of evidence. Scheduling discussed. Govt continues to present evidence, does not conclude. Jury excused. Discussion/argument with court ruling on witness issue. Trial continued to Thursday, 2/19/2015 at 8:30 a.m. Defendant REMANDED to custody of US Marshal. (Court Reporter Stacy Drohosky (am) and Debra Bonk (pm).) (nac)**

**2:11−cr−00077−PPS−APR−1 Notice has been electronically mailed to:**

David E Vandercoy    david.vandercoy@valpo.edu

Arlington J Foley    arlingtonfoley@att.net

Mark A Psimos    psimoslaw@airbaud.net

Scott L King    sking@scottkinggroup.com, dwilliams@scottkinggroup.com

James N Thiros    jim@thiros.com, lynn@thiros.com

Thomas W Vanes    tom.vanes@sbcglobal.net, b.lynneadams@yahoo.com

Ihor Alexander Woloshansky    ihorlawyer@hotmail.com

R Brian Woodward    rbwoodward@wbbklaw.com, carolb@wbbklaw.com

John Maksimovich    criminallaw@johnmaksimovich.com

Visvaldis P Kupsis    vpkupsis@hotmail.com

Sheldon B Nagelberg    sbnagelberglaw@att.net

John E Martin – FCD    john_martin@fd.org

Adam Tavitas    Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander    jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele    ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst    kre@braje−nelson.com

Bryan M Truitt    bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis    theislaw@aol.com

Robert L Rascia    rrascia@rascia−decastro.com, ysierra@rascia−decastro.com

Paul Jeffrey Schlesinger    pjeffslaw@aol.com

Matthew N Fech    mnf@fech−law.com

Pablo DeCastro    pdecastro@attorneydecastro.com, ysierra@rascia−decastro.com

Dean R Lanter – AUSA    dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov,
janet.eisenmann@usdoj.gov

David J Nozick – AUSA    David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov,
janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

2782

Roxanne Mendez Johnson    attorneyrmj@gmail.com

Bruce R Hegyi – AUSA    bruce.hegyi@usdoj.gov

**2:11–cr–00077–PPS–APR–1 Notice has been delivered by U.S. Mail or other means to:**

```
MIME-Version:1.0
From:CMECFinnd@innd.uscourts.gov
To:CMECFinnd@localhost.localdomain
Bcc:
--Case Participants: Pablo DeCastro (pdecastro@attorneydecastro.com,
ysierra@rascia-decastro.com), Kurt R Earnst (kre@braje-nelson.com), Matthew N Fech
(mnf@fech-law.com), Arlington J Foley (arlingtonfoley@att.net), Jack Friedlander
(jack@jackfriedlander.com, office@jackfriedlander.com), Bruce R Hegyi - AUSA
(bruce.hegyi@usdoj.gov), Roxanne Mendez Johnson (attorneyrmj@gmail.com), Scott L King
(dwilliams@scottkinggroup.com, sking@scottkinggroup.com), Visvaldis P Kupsis
(vpkupsis@hotmail.com), Dean R Lanter - AUSA (dean.lanter@usdoj.gov,
janet.eisenmann@usdoj.gov, usainn.ecfcivil@usdoj.gov), John Maksimovich
(criminallaw@johnmaksimovich.com), John E Martin - FCD (john_martin@fd.org), Sheldon B
Nagelberg (sbnagelberglaw@att.net), David J Nozick - AUSA (david.nozick@usdoj.gov,
janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov,
usainn.ecfcivil@usdoj.gov), Mark A Psimos (psimoslaw@airbaud.net), Robert L Rascia
(rrascia@rascia-decastro.com, ysierra@rascia-decastro.com), Stephen Edward Scheele
(pkd@gk4law.com, ses@gk4law.com), Paul Jeffrey Schlesinger (pjeffslaw@aol.com), Adam
Tavitas (adtavitas@aol.com, b.lynneadams@yahoo.com), John T Theis (theislaw@aol.com),
James N Thiros (jim@thiros.com, lynn@thiros.com), Bryan M Truitt (bryan@tblawyers.com,
sherrie@tblawyers.com), David E Vandercoy (david.vandercoy@valpo.edu), Thomas W Vanes
(b.lynneadams@yahoo.com, tom.vanes@sbcglobal.net), Ihor Alexander Woloshansky
(ihorlawyer@hotmail.com), Richard C Wolter (b.lynneadams@yahoo.com), R Brian Woodward
(carolb@wbbklaw.com, rbwoodward@wbbklaw.com), Magistrate Judge Andrew P Rodovich
(rodovich_chambers@innd.uscourts.gov, ruth_nagy@innd.uscourts.gov), Chief Judge Philip P
Simon (denise_woodside@innd.uscourts.gov, jacob_hamann@innd.uscourts.gov,
lauren_schwartz@innd.uscourts.gov, mira_serrill-robins@innd.uscourts.gov,
noel_collins@innd.uscourts.gov, philip_simon@innd.uscourts.gov)
--Non Case Participants: Matthew D Soliday (office@matthewsolidaylaw.com)
--No Notice Sent:

Message-Id:2711816@innd.uscourts.gov
Subject:Activity in Case 2:11-cr-00077-PPS-APR United States of America v. Briseno et al
Jury Trial
Content-Type: text/html
```

### U.S. District Court Northern District of Indiana [LIVE]

### USDC Northern Indiana

## Notice of Electronic Filing

The following transaction was entered on 2/20/2015 at 9:59 AM EST and filed on 2/19/2015

| | |
|---|---|
| **Case Name:** | United States of America v. Briseno et al |
| **Case Number:** | 2:11−cr−00077−PPS−APR |
| **Filer:** | |
| **Document Number:** | 1436(No document attached) |

**Docket Text:**

**JURY TRIAL (10th DAY OF EVIDENCE) as to Juan Briseno held on 2/19/2015 before Chief Judge Philip P Simon. Parties present as previously noted. Govt continues to present evidence, does not conclude. Trial continued to Friday, 2/20/2015 at 8:30 a.m. Defendant REMANDED to custody of US Marshal. (Court Reporter Kelly Fitzgerald.) (nac)**

**2:11−cr−00077−PPS−APR−1 Notice has been electronically mailed to:**

David E Vandercoy    david.vandercoy@valpo.edu

Arlington J Foley    arlingtonfoley@att.net

Mark A Psimos    psimoslaw@airbaud.net

Scott L King    sking@scottkinggroup.com, dwilliams@scottkinggroup.com

James N Thiros    jim@thiros.com, lynn@thiros.com

Thomas W Vanes    tom.vanes@sbcglobal.net, b.lynneadams@yahoo.com

Ihor Alexander Woloshansky    ihorlawyer@hotmail.com

R Brian Woodward    rbwoodward@wbbklaw.com, carolb@wbbklaw.com

John Maksimovich    criminallaw@johnmaksimovich.com

Visvaldis P Kupsis    vpkupsis@hotmail.com

Sheldon B Nagelberg    sbnagelberglaw@att.net

John E Martin – FCD    john_martin@fd.org

Adam Tavitas    Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander    jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele    ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst    kre@braje–nelson.com

Bryan M Truitt    bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis    theislaw@aol.com

Robert L Rascia    rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger    pjeffslaw@aol.com

Matthew N Fech    mnf@fech–law.com

Pablo DeCastro    pdecastro@attorneydecastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA    dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA    David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson    attorneyrmj@gmail.com

2785

Bruce R Hegyi – AUSA    bruce.hegyi@usdoj.gov

**2:11−cr−00077−PPS−APR−1 Notice has been delivered by U.S. Mail or other means to:**

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| **Plaintiff** | |
| vs | |
| JUAN BRISENO, | |
| **Defendant** | **CAUSE NO:   2:11-CR-77** |

**OBJECTION TO GOVERNMENT'S**
**PROPOSED PENALTY PHASE JURY CHARGE**

This memorandum is designed to address the most glaring errors in the instructions proposed by the Government.  We urge the Court to adopt the instructions we have provided which are supported by numerous district court cases, including the *United States v. Barnes* case, Southern District of New York case on which we have based the proposed instructions we submit.

(1)     Throughout the proposed penalty phase charge, the Government's instructions misleadingly suggest that jurors should render a death verdict if that punishment is found to be "justified," considered (at least initially) in isolation.  But jurors' consideration of the death penalty does not occur in a vacuum.  Rather, as spelled out by 18 U.S.C. §3593(e), the jury's sentencing decision is a choice among alternatives. The jury could well conclude that the death penalty is "justified" but that life imprisonment without possibility of release is also "justified," and that life is in fact the preferable sentence.

-1-

This point was made by Senator Levin during the 1988 debate on the

predecessor of 18 U.S.C. §3593, 21 U.S.C. §848(k):

> Mr. LEVIN. Mr. President, I would like to thank members on both
> sides of the aisle, particularly Senators NUNN, MOYNIHAN,
> KENNEDY, D'AMATO and RUDMAN, for their cooperation in
> shaping and in obtaining agreement on the amendments that I
> offered as part of the leadership package with respect to the death
> penalty provision of the drug bill. . . . The 19 amendments which I
> offered and which are part of the leadership package . . . fall into
> five categories:  First, the bill as it was introduced only required
> that a jury justify that a sentence of death shall be imposed. It was
> then required to be imposed by the court. The use of the word
> "justify" in the original bill language could have led a jury to
> sentence a defendant to death even though it might have thought
> that both a sentence of death or some lesser sentence were both
> justified. From our own common experiences, we can see that there
> is a difference between justify and recommend. Take, for example,
> someone takes their pet to a veterinarian and is told that the animal
> is very sick. The vet might say that it would be justified to put the
> animal to sleep. But the vet might also say that it would be justified
> to utilize some medical intervention to keep the animal alive for
> another 6 months. Many pet owners would then ask, "But doctor,
> what do you recommend?" Justify is a much broader concept than
> recommend and legislation which imposes a penalty as severe as
> the death penalty should recognize that important distinction. That
> is why two amendments in the package change this to require the
> jury to recommend that a sentence of death shall be imposed rather
> than a sentence of life imprisonment without a possibility of
> release or some other lesser sentence. 134 Cong. Rec. S16001
> (daily ed. October 14, 1988).

Both §848(k) from the ADAA and §3593(e) from FDPA reflect this change, by requiring the jury

to choose between sentencing alternatives. See 18 U.S.C. §3593(e) (jurors shall determine

"whether the defendant should be sentenced to death, to life imprisonment without possibility of

release," or, where applicable, some other lesser sentence). Any use of the word "justify" in jury

instructions under FDPA must make clear that the death penalty is only "justified" if the jury

-2-

finds that it more justified than, and thus should be imposed instead of, life imprisonment without possibility of release.

(2) The Government's proposed instructions fail to inform the jury that a disagreement is not a mistrial but results in a life verdict. Numerous district courts since have instructed federal sentencing juries, in the main charge, that non-unanimity would result in a life sentence. In many of these cases, the court has also given jurors the explicit option of a not-unanimous verdict on the verdict form. *See, e.g., United States v. Sampson,* 335 F. Supp. 2d 166, 240 (D. Mass. 2004) (court informed jury of consequences of nonunanimity because this emphasized individual responsibility of each juror and ensured each was fully informed of consequences of its actions).

(3) The Government's proposed charge requiring unanimity for a life verdict is a misstatement of the law.

(4) The Government omits any instruction that the jury never has to imposed a death sentence. The large majority of district courts in FDPA cases, emphasizing the highly discretionary nature of the jury's ultimate sentencing decision, instruct that a death sentence is never required. *See, e.g., United States v. Jones,* 527 U.S. 373, 384 (1999) (jury instructed that "regardless of your findings with respect to aggravating and mitigating factors, you are never required to recommend a death sentence"). Two published decisions by district courts have also approved such an instruction. *See United States v. Sampson,* 335 F. Supp. 2d 166, 239-240 (D. Mass. 2004); *United States v. Haynes*, 265 F. Supp. 2d 914, 921-922 (W.D. Tenn. 2003). And so do Judge Sand's pattern instructions. 1 Leonard B. Sand, *et al.*, Modern Federal Jury Instructions — Criminal, Inst. 9A-19 & Comment (2008) (while FDPA does not contain same explicit

"mercy" provision as ADAA, "it is strongly suggested that the court impress upon the jury that it is never obligatory to impose the death penalty. Thus, the instruction states that, 'no juror is ever required by the law to impose a death sentence.'").

(5)    There is no mention that intent factors are not aggravating factors and may not be weighed.

(6)    Jurors should be instructed that they must consider, give effect to and actually weigh any mitigating circumstance that has been established by a preponderance of the evidence. *Eddings v. Oklahoma*, 455 U.S. 104 (1982).

(7)    Jurors must be instructed that they must find beyond a reasonable doubt that the aggravating factors sufficiently outweigh the mitigating factors to call for a sentence of death. Judge Sand's pattern charge calls for jurors to be told to apply a "reasonable doubt" standard to the determination whether aggravators sufficiently outweigh mitigators. See 1 Leonard B. Sand, *et al.*, Modern Federal Jury Instructions — Criminal, Inst. 9A-19 (2008) ("This weighing process asks whether you are unanimously persuaded, beyond a reasonable doubt, that the aggravating factors sufficiently outweigh any mitigating factors or, in the absence of any mitigating factors that the aggravating factors are themselves sufficient to call for a sentence of death on the particular capital count you are considering . . . . Remember that all 12 jurors must agree beyond a reasonable doubt that death is in fact the appropriate sentence"). And a number of district courts have given such a charge. See, e.g., *United States v. Sampson*, 335 F. Supp. 2d 166, 239-240 (D. Mass. 2004) (court charged: "However you personally define sufficiency, the prosecution must convince you beyond a reasonable doubt that the aggravating factor or factors sufficiently outweigh the mitigating factors to make death the appropriate penalty in this case.").

-4-

(8)    The definition of mitigating factors is too narrow.  It should read a fact about defendant's life or character, or about the circumstances surrounding the offenses *or any other relevant circumstance* that would weigh against the imposition of a sentence of death."  The italicized language is supported by a myriad of Supreme Court cases, including an opinion authored by Justice Alito:

> [O]ur cases have firmly established that sentencing juries must be able to give meaningful consideration and effect to all mitigating evidence that might provide a basis for refusing to impose the death penalty on a particular individual, notwithstanding the severity of his crime or his potential to commit similar offense in the future.

*Abdul-Kabir v. Quartermain*, 127 S.Ct. 1654, 1664 (2007); *see also*, *Ayers v. Belmontes*, 127 S.Ct. 469, 478 (2006), where the Court described a jury's penalty-phase task as weighing "the finite aggravators against the *potentially infinite mitigators*."  (Emphasis added.).

**WHEREFORE**, Defendant, by counsel, respectfully requests the Court to adopt the instructions Defendant provided which are supported by numerous district court cases, including the *United States v. Barnes* (S9 04 Cr. 186 (SCR) 5/29/08), a Southern District of New York case on which Defendant has based the proposed instructions Defendant submits, and for all other just and proper relief.

**Respectfully submitted:**

/s/ *Arlington Foley*
_____

Arlington Foley /#6905-45
Attorney For Defendant
1942 North Main Street
Crown Point, IN 46307
PH: 219.661.1200
FX: 219.661.1205

/s/ *John Maksimovich*
_____

John Maksimovich /#9950-45
Attorney For Defendant
1946 North Main Street
Crown Point, IN 46307
PH: 219.663.1900
FX: 219.663.1908

-5-

2791

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

UNITED STATES OF AMERICA,

         **Plaintiff**

**vs**

**JUAN BRISENO,**

         **Defendant**                       **CAUSE NO:**   **2:11-CR-77**

## CERTIFICATE OF SERVICE

I hereby certify that on February 23, 2015, I electronically filed:

*OBJECTION TO GOVERNMENT'S PROPOSED PENALTY PHASE JURY CHARGE*

with the Clerk of the Court using the CM/ECF system, which sent notification of such filing to the following:

| | |
|---|---|
| David J. Nozick | Bruce Hegyi |
| Assistant United States Attorney | Assistant United States Attorney |

and I hereby certify that I have mailed by United States Postal Service, the document to the following non-CM/ECF participants:

        N/A

By:   /s/ *John Maksimovich*

        John Maksimovich /#9950-45
        Attorney For Defendant
        1946 North Main Street
        Crown Point, IN 46307
        PH: 219.663.1900
        FX: 219.663.1908
        E-Mail: criminallaw@johnmaksimovich.com

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | |
| **Plaintiff** | |
| **vs** | |
| **JUAN BRISENO,** | |
| **Defendant** | **CAUSE NO:   2:11-CR-77** |

**PROPOSED PENALTY PHASE JURY INSTRUCTIONS**

Defendant Juan Briseno, by counsel John Maksimovich and Arlington Foley, submit the following proposed Penalty Phase Jury Instructions:

**Introductory Instruction**

Members of the jury, it is again my duty to instruct you as to the law applicable to the sentencing phase of this case. The sole question before you is whether the defendant should be sentenced for his capital offenses to (1) the death penalty; or (2) lifetime imprisonment without the possibility of release. The selection among these very serious choices is yours and yours alone to make. If you determine, as to a particular count, that the defendant should be sentenced to death, or instead to life imprisonment without the possibility of release, the Court is required to impose whichever sentence you choose as to that count. There is no parole in the federal system, so a life sentence means exactly that – the defendant will spend the rest of his life in prison without the possibility of release.

You have previously found the defendant guilty of Counts 9, 13, 15, 17, 19, and 21 in the Indictment, which I read to you at the start of this penalty phase.

-1-

2793

There are six (6) capital counts at issue here, and you must approach the sentencing decision before you separately as to each count and, of course, with an open mind.  I cannot stress to you enough the importance of your giving careful and thorough consideration to all the evidence.  And regardless of any opinion you may have as to what the law may be or should be, it would be a violation of your oaths as jurors to base your sentencing decision upon any view of the law other than that which is given to you in these instructions.

The instructions I am giving you now are a complete set of instructions on the law applicable to the sentencing decision as to the defendant, Mr. Briseno.  During your deliberations, you should thus rely on these instructions.  I have also prepared a Special Verdict Form that you must complete.  The form details the findings you must make and will serve as a guide to your deliberations.

Now, although Congress has left it to you, the jury, to decide the defendant's proper punishment, it has narrowed and channeled your discretion in specific ways particularly by making you consider and weigh any "aggravating" and "mitigating" factors present in this case.  As I explained previously, these factors have to do with the circumstances of the crime, or the personal traits, character, or background of the defendant, or anything else relevant to the sentencing decision.  Aggravating factors are those that would lend support to imposition of the death penalty.  By contrast, mitigating factors are those that suggest that the death penalty is not the appropriate sentence in this case.

Of course, your task is not simply to decide what aggravating and mitigating factors exist here, if any.  Rather, you are called upon to evaluate any such factors and to make a unique, individualized choice between the death penalty or life in prison without the possibility of

<center>-2-</center>

release.  The law never requires imposition of a sentence of death and never assumes that any defendant found guilty of committing capital murder must be sentenced to death.  Plainly, then, the law does not presume that Mr. Briseno, in particular, should be sentenced to death.  Indeed, the law carries with it a presumption in favor of a verdict other than death, a presumption that can be overcome only if the government persuades each and every one of you beyond a reasonable doubt that the aggravating factor or factors found to exist (1) outweigh the mitigating factors found to exist and, if they do, (2) that they sufficiently outweigh the mitigating factors to justify a sentence of death.

In carrying out this weighing and balancing process, the members of the jury are not mere fact-finders.  Instead, jurors are called upon to make a unique, individualized judgment about the appropriateness of sentencing another human being to death.  This is not a mechanical process.  Neither is the decision determined by raw numbers.  Members of a death-penalty jury do not simply count factors.  Instead, individual jurors consider such factors qualitatively, assessing the weight and value of each factor.  Any single mitigating factor may outweigh several aggravating factors.  On the other hand, one aggravating factor proved, if sufficiently serious, may outweigh several mitigating factors.  In short, what is called for in weighing the various factors is not an arithmetic calculation, but an individual juror's careful, considered, and mature judgment as to the weight to be given to the aggravating and mitigating factors present in this case.

As we begin this process, there are two points I wish to remind you of from my preliminary instructions, and reiterate as part of these final instructions.  The first is that you are never required to return a verdict of death.  The law provides you with guidance in making a decision, but your decision on this question of life or death is a judgment which the law, in the

-3-

final analysis, leaves up to each of you.  The second point is that in order to impose a sentence of death, all twelve jurors must agree that death is the appropriate sentence.  If even a single juror does not conclude that death is the appropriate punishment, the death penalty will not be imposed.

### Burden of Proof

The Government, at all times and as to all capital counts, has the burden of proving beyond a reasonable doubt that the appropriate sentence for the defendant is in fact the death penalty.  Specifically, that means that the Government must prove as to each capital count all of the following beyond a reasonable doubt: (1) the existence of at least one gateway factor; (2) the existence of at least one statutory aggravating factor; and (3) the existence, if any, of non-statutory aggravating factors.  Finally, the Government must prove beyond a reasonable doubt that all the aggravating factors found to exist sufficiently outweigh all the mitigating factors found to exist so as to justify a sentence of death, or, in the absence of any mitigating factor, that the aggravating factors found to exist alone make a sentence of death appropriate.

A "reasonable doubt" is a doubt based upon reason and common sense after careful and impartial consideration of all the evidence.  Proof beyond a reasonable doubt must be proof of such a convincing character that a reasonable person would rely and act upon it without hesitation in the most important matters of his or her own affairs.  Yet proof beyond a reasonable doubt does not mean proof beyond all possible doubt.

A defendant never has the burden of disproving the existence of anything which the Government must prove beyond a reasonable doubt.  The burden is wholly upon the

-4-

Government; the law does not at all require the defendant to produce evidence that a particular aggravating factor does not exist or that death is not an appropriate sentence.

As such, the defendant is not required to assert or establish any mitigating factors. However, if one or more mitigating factors are asserted, it is the defendant's burden to establish any mitigating factors by a preponderance of the evidence. To prove something by a preponderance of the evidence is a lesser standard of proof than proof beyond a reasonable doubt. To prove something by a preponderance of the evidence is to prove that it is more likely true than not true. It is determined by considering all of the evidence and deciding what evidence is more believable. If, however, the evidence is equally balanced, you cannot find that the mitigating factor has been proved.

The preponderance of the evidence is not determined by the greater number of witnesses or exhibits presented by the Government or the defendant. Rather, it is the quality and persuasiveness of the information which controls.

### **Evidence**

In making all the determinations you are required to make in this phase of the trial, you may consider any information presented during this penalty phase and the guilt phase. Also, recall that for our purposes here the terms "evidence" and "information" have the same meaning.

In deciding what the facts are, you may have to decide what testimony you believe and what testimony you do not believe. You may believe all of what a witness said, or only part of it, or none of it. In deciding what testimony of any witness to believe, consider the witness's intelligence, the opportunity the witness had to see or hear the things testified about, the witness's memory, any motives that the witness may have for testifying a certain way, the

manner of the witness while testifying, whether that witness said something different at an earlier time, the general reasonableness of the testimony, and the extent to which the testimony is consistent with other evidence that you believe.

Additionally, because the law does not permit any witness to state whether he or she personally favors or opposes the death penalty in this case, you should draw no inference either way from the fact that no witnesses have testified as to their views on this subject. You have no reason to believe, nor should you speculate, as to whether any witness supports or disfavors the death penalty in this case. You are to draw no inferences about that one way or the other.

### Defendant's Right Not to Testify

Mr. Briseno did not testify in the penalty phase of this case. He has a right not to do so and there is no burden upon the defendant to prove that he should not be sentenced to death. Instead, the burden is entirely on the Government to prove, beyond a reasonable doubt, that a sentence of death is in fact justified.

Accordingly, the fact that Mr. Briseno did not testify must not be considered by you in any way, or even discussed, in arriving at any aspect of your sentencing decision, including the existence or non-existence of an alleged aggravating or mitigating factor.

### Separate Deliberations

You must deliberate and determine the appropriate sentence for each of the capital counts separately. Although I will be discussing the capital counts together, your findings regarding gateway factors, aggravating factors, and all other issues pertaining to these counts must treat each of these counts separately. You may find differences which would justify different sentences on different counts.

-6-

2798

The instructions I am about to give you, as well as the Special Verdict Form you will be completing, will first address your findings, if any, regarding the four "gateway factors" and the statutory aggravating factors identified by the Government with regard to each capital count. The instructions and the Special Verdict Form thereafter address your findings, if any, as to each capital count regarding the existence of non-statutory aggravating factors and mitigating factors, as well as the weighing of aggravating and mitigating factors.

## Finding the Gateway Factors

Before you may consider the imposition of the death penalty for any capital count, you must first unanimously find, beyond a reasonable doubt, the existence as to that count of at least one of the four gateway factors identified by the Government. The gateway factors are as follows:

1.     That the defendant intentionally killed the victim of the particular capital offense charged in the respective count of the Indictment; or

2.     That the defendant intentionally inflicted serious bodily injury that resulted in the death of the victim of the particular capital offense charged in the respective count of the Indictment; or

3.     That the defendant intentionally participated in an act, contemplating that the life of a person would be taken or intending that lethal force would be used in connection with a person, other than one of the participants in the offense, and the victim of the particular capital offense charged in the respective count of the Indictment died as a direct result of the act; or

4.     That the defendant intentionally and specifically engaged in an act of violence, knowing that the act created a grave risk of death to a person, other than one of the participants in

-7-

2799

the offense, such that participation in the act constituted a reckless disregard for human life and the victim of the particular capital offense charged in the respective count of the Indictment died as a direct result of the act.

Your findings as to whether the Government has proven the existence, beyond a reasonable doubt, of a particular factor from among these four gateway factors must be separate and unanimous as to each capital count.

And with regard to your findings, you may not rely solely upon your first-stage verdict of guilt or your factual determinations therein. Instead, you must now each decide this issue for yourselves again.

Any finding that a gateway factor has been proven as to a particular capital count must be based on the defendant's personal actions and intent. Intent or knowledge may be proven like anything else. You may consider any statements made and acts done by the defendant, and all the facts and circumstances in evidence which may aid in a determination of the defendant's knowledge or intent. You may, but are not required to, infer that a person intends the natural and probable consequences of acts knowingly done or knowingly omitted.

In the event that you unanimously find, beyond a reasonable doubt, that a particular gateway factor exists as to all capital counts, you are to indicate that finding in the appropriate box provided on the Special Verdict Form. In the event that you unanimously find, beyond a reasonable doubt, that a particular gateway factor exists as to one or some, but not all, of the capital counts, you are to indicate that finding in the appropriate box provided on the Special Verdict Form, and also identify on the line provided, by count number, the specific capital count as to which you find that gateway factor applies. If you do not unanimously find that a particular

-8-

gateway factor has been proven beyond a reasonable doubt with respect to any of the capital counts, you should mark the appropriate box provided on the Special Verdict Form.

I instruct you that gateway factors are not aggravating factors and any that you find may not be weighed by you in deciding whether or not to impose a sentence of death.

For each capital count, if you do not unanimously find that the Government has proven beyond a reasonable doubt the existence as to that count of any of the four gateway factors, your deliberative task as to that capital count will be over and the Court will impose a sentence on that count of life imprisonment without the possibility of release. Section I, Part B of the Special Verdict Form provides a space for you to indicate those counts, if any, for which you have not unanimously found that the Government has proven beyond a reasonable doubt the existence of any gateway factor.

### Introduction to Statutory Aggravating Factors

If and only if you unanimously find that the Government has proven, beyond a reasonable doubt, that at least one of the four gateway factors exists as to a particular capital count, you must then proceed to determine whether the Government has proven, beyond a reasonable doubt, the existence of any of the statutory aggravating factors charged by the government with respect to that same count. The government has charged three statutory aggravating factors:

1.      The defendant committed the offenses after substantial planning and premeditation to cause the death of a person.

2.      The defendant intentionally killed more than one person in a single criminal episode.

-9-

3.    The defendant created a grave risk of death to one or more persons in addition to the victim of the offense.

At this point the law directs you to consider and decide separately as to each of the capital counts for which you have unanimously found the existence of at least one gateway factor, the existence or non-existence of the statutory aggravating factors specifically claimed by the Government. You are reminded that to find the existence of a statutory aggravating factor as to a particular count, your decision must be unanimous and beyond a reasonable doubt. Any finding that one or more of these factors has been proven must be based on the defendant's personal actions and intent.

In the event that you unanimously find, beyond a reasonable doubt, that a particular statutory aggravating factor exists as to a particular capital count for which you have found the existence of at least one gateway factor, you are to indicate that finding in the appropriate box provided on the Special Verdict Form.

In the event that you unanimously find, beyond a reasonable doubt, that a particular statutory aggravating factor exists as to one, but not all, of the capital counts for which you have found the existence of at least one gateway factor, you are to indicate that finding in the appropriate box provided on the Special Verdict Form, and also identify on the line provided, by count number, the particular counts as to which you find the statutory aggravating factor applies. If you do not unanimously find that a particular statutory aggravating factor has been proved beyond a reasonable doubt with respect to all of the capital counts you are considering, you should mark the appropriate box provided on the Special Verdict Form.

-10-

For any capital count for which you unanimously found the existence of at least one gateway factor, if you do not also unanimously find as to that same count the existence of at least one statutory aggravating factor, then your deliberative task as to that count will be over, and the Court will impose a sentence on that count of life imprisonment without the possibility of release. Section II, Part B of the Special Verdict Form provides a space for you to indicate the counts, if any, for which you have not unanimously found that the Government has proven beyond a reasonable doubt the existence of any aggravating factor.

Let me now instruct you in detail on the specific elements necessary for the Government to prove each of these statutory aggravating factors beyond a reasonable doubt.

**First Statutory Aggravating Factor: Substantial Planning**

The first statutory aggravating factor alleged by the Government with regard to the capital counts is that the defendant committed the offenses under the particular counts after substantial planning and premeditation to cause the death of a person.

"Planning" means mentally formulating a method for doing something or achieving some end.

"Premeditation" means thinking or deliberating about something and deciding beforehand whether to do it.

"Substantial" planning and premeditation means a considerable or significant amount of planning and premeditation.

To find that the Government has satisfied its burden of proving beyond a reasonable doubt that the defendant engaged in substantial planning and premeditation to cause the death of a person, you must unanimously agree on the particular object of the substantial planning and

-11-

premeditation, namely to cause the death of a person. Your finding as to this statutory aggravating factor must be indicated in the appropriate space in Section II, Part A, Question No. 2 of the Special Verdict Form.

## Second Statutory Aggravating Factor: Multiple Victims

The second statutory aggravating factor alleged by the Government with regard to the capital counts is that the defendant intentionally killed more than one person in a single criminal episode.

To establish the existence of this factor, the Government must prove beyond a reasonable doubt that the defendant intentionally killed more than one person in a single criminal episode. You must unanimously agree on the particular actual victims in order to find this factor has been proved beyond a reasonable doubt.

"Intentionally killing" a person means killing a person on purpose, that is: willfully, deliberately, or with a conscious desire to cause a person's death (and not just accidentally or involuntarily).

"A single criminal episode" is an act or series of related criminal acts which occur within a relatively limited time and place, or are directed at the same person or persons, or are part of a continuous course of conduct related in time, place, or purpose.

You may, but are not required to, infer that a person of sound mind intended the ordinary, natural, and probable consequences of his knowing and voluntary acts. Thus, you may infer from the defendant's conduct that he intended to kill a person if you find: (1) that the defendant was a person of sound mind; (2) that the victim's death was an ordinary, natural, and probable consequence of the defendant's acts; and (3) that the defendant committed these acts knowingly

-12-

and voluntarily. But once again, you are not required to make such an inference. Your finding as to this statutory aggravating factor must be indicated in the appropriate space in Section II, Part A, Question No. 3 of the Special Verdict Form.

### Third Statutory Aggravating Factor: Grave Risk of Death to One or More Persons In Addition to the Victim of the Offense

The third statutory aggravating factor alleged by the government with regard to the capital counts (Sessum, Mejias, and Colon) is that the defendant, in committing the offense, or in escaping apprehension for the offense, knowingly created a grave risk of death to one (1) or more persons in addition to the victim of the offense.  To establish the existence of this factor, the government must prove beyond a reasonable doubt that the defendant knowingly created a significant and considerable possibility of death to one (1) or more persons in addition to the victim of the offense.  Your finding as to this statutory aggravating factor must be indicated in the appropriate space in Section II, Part A, Question No. 3 of the Special Verdict Form.

### Non-Statutory Aggravating Factors

If and only if you have unanimously found that the Government has proven, beyond a reasonable doubt, the existence as to a particular capital count of at least one gateway factor and at least one statutory aggravating factor alleged by the Government, you must then consider whether the Government has proven the existence of any non-statutory aggravating factors with regard to that same count.  You must agree unanimously, and separately as to each count, that the Government has proven beyond a reasonable doubt the existence of any of the alleged non-statutory aggravating factors before you may consider that non-statutory aggravating factor in your deliberations.

-13-

The law permits you to consider and discuss only the four (4) non-statutory aggravating factors specifically claimed by the Government in advance and listed below. You are not free to consider any other facts in aggravation that you conceive of on your own.

The non-statutory aggravating factors alleged by the Government with regard to each of the capital counts are as follows:

1. The defendant caused injury, harm, and loss to the victims' family and friends because of the victims' personal characteristics as an individual human being and the impact of his death upon the victim's family and friends.

2. The defendant represents a continuing danger to the lives and safety of other persons, as evidenced by his low potential for rehabilitation as demonstrated by repeated violent criminal acts; a willingness to take human life and a lack of remorse for his acts of violence and attempted acts of violence as demonstrated by statements that he made following these violent acts; and his stated desire to impose a rule requiring fellow members of the Imperial Gangsters to shoot at rivals on sight, and his future dangerousness tends to support the imposition of the death penalty.

3. The defendant was convicted at trial of other criminal activity, including additional murders or attempted murders, and this additional criminal activity tends to support the imposition of the death penalty.

4. The defendant demonstrated an allegiance to and membership in the Imperial Gangsters, a criminal street gang, and this allegiance and membership tends to support the imposition of the death penalty.

2806

These non-statutory aggravating factors are self-explanatory and, generally, do not require further instruction.

Again, your findings regarding these factors must be separate and unanimous with regard to each capital count you are considering.

In the event that you unanimously find, beyond a reasonable doubt, that a particular non-statutory aggravating factor applies to all of the capital counts for which you have found at least one gateway factor and at least one statutory aggravating factor, you are to indicate that finding in the appropriate box provided on the Special Verdict Form. In the event that you unanimously find that a particular non-statutory aggravating factor applies to one or some but not all of these counts, you are to indicate that finding in the appropriate box provided on the Special Verdict Form, and also identify on the line provided, by count number, the particular count to which you find the non-statutory aggravating factor applies.

If you do not unanimously find that a non-statutory aggravating factor has been proven beyond a reasonable doubt with regard to any capital count, you should so indicate in the appropriate box provided on the Special Verdict Form.

Unlike the rules relating to gateway factors and statutory aggravating factors, you are not required to find a non-statutory aggravating factor with regard to a particular count before you may consider the death penalty as the possible sentence for that count. Rather, the law only requires that before the jury may consider an alleged non-statutory aggravating factor in its sentencing decision as to any capital count, the jury must first unanimously agree that the Government has proven beyond a reasonable doubt the existence of that factor as to that count. Remember, unless you are unanimous that the existence of a particular statutory or non-statutory

-15-

aggravating factor has been proven by the Government beyond a reasonable doubt, you may not give that factor any further consideration during any of your deliberations.

After you have completed your findings regarding the existence or non-existence of non-statutory aggravating factors, you should proceed to Section IV of the Special Verdict Form, to consider whether any mitigating factors exist.

### Mitigating Factors

Before you may consider the appropriate punishment for any of the capital counts for which you have unanimously found the existence of at least one gateway factor and at least one statutory aggravating factor, you must consider whether the defendant has proven the existence of any mitigating factors with regard to that count. A mitigating factor is not offered to justify or excuse the defendant's conduct. Instead, a mitigating factor is a fact about the defendant's life or character, or about the circumstances surrounding the particular capital offense, or anything else relevant that would suggest, in fairness, that death is not the appropriate punishment.

There are three important distinctions that I want to highlight for you with respect to the proof of mitigating factors. The defendant has the burden of proving any mitigating factors. However, there is a different standard of proof as to mitigating factors. The defendant is not required to prove beyond a reasonable doubt the existence of a mitigating factor; he need only establish its existence by a preponderance of the evidence. That is to say, you need only be convinced that a mitigating factor is *more likely true than not true* in order to find that the mitigating factor exists. Secondly, a unanimous finding is ***not*** required. Any one of you may, individually and independently, find the existence of a mitigating factor, regardless of the number of other jurors who may agree, and any juror who so finds must give that factor whatever weight

-16-

they think it deserves.  Thus, if even a single member of the jury finds that a mitigating factor has been proved, that member of the jury is allowed to weigh that factor in making up his or her own mind on whether or not to vote for a death sentence.

Finally, you are not limited in your consideration to the specific mitigating circumstances submitted to you.  If, in addition to those specific circumstances, there is anything about the circumstances of the offense, the defendant's background, record, or character, or anything else relevant that you individually believe mitigates against the imposition of the death penalty, you are free to consider that factor in the balance as well.

Unlike aggravating factors, which you must unanimously find proven beyond a reasonable doubt in order for you even to consider them in your deliberations, the law does not require unanimity with regard to mitigating factors.  Any individual juror who is persuaded of the existence of a mitigating factor must consider it in his or her sentencing decision.  Thus, for example, if eleven of you were to find the existence of a mitigating factor, all eleven could, and would be required to, weigh that factor in the balance.  Or, for example, if only one juror were to be persuaded of a mitigating factor, that juror could, and would be required to, consider it in his or her own individual sentencing decision.

Furthermore, it is the defendant's burden to establish a mitigating factor only by a preponderance of the evidence.  This is a lesser standard of proof under the law than proof beyond a reasonable doubt.  A factor is established by a preponderance of the evidence if its existence is shown to be more likely so than not so.  In other words, a preponderance of the evidence means such evidence as, when considered and compared with that opposed to it, produces in your mind the belief that what is sought to be established is, more likely than not,

-17-

true.  If, however, the evidence is equally balanced, you cannot find that the factor has been proved.

Please understand that the existence of a mitigating factor is a distinct consideration from whatever weight, if any, should ultimately be given that factor in your deliberations.  For example, any number of jurors might first find that a particular mitigating factor is factually true (that is, that the factor has been established by a preponderance of the evidence), but those jurors as individuals might later choose to give that same mitigating factor differing levels of significance during the weighing process.  With this distinction in mind, Section IV of the Special Verdict Form only asks you to report the total number of jurors who individually find the existence of a particular mitigating factor to be established by a preponderance of the evidence.

Earlier in these instructions, I stated that regardless of any opinion you may have as to what the law may be or should be, it would be a violation of your oaths as jurors to base your sentencing decision upon any view of the law other than that which is given to you in these instructions.  Accordingly, it is not your role to pass on the wisdom of whether a particular mitigating factor submitted to you is, in your own personal view, the kind of circumstance that should weigh against imposition of the death penalty.  If a mitigating factor has been established by a preponderance of the evidence, you are required to weigh it in the balance to be struck between the aggravating and mitigating factors.  It is up to you, however, how much weight you individually assign to each particular mitigating factor.

The defendant, Juan Briseno, urges the following as mitigating factors in this case:

1.    If he is not sentenced to death, Mr. Briseno will be sentenced to lifetime imprisonment without the possibility of release.

2810

2.    The Federal Bureau of Prisons will impose appropriate conditions of confinement and security with regard to Mr. Briseno.

3.    Mr. Briseno is the product of a childhood marked by chaos, abuse and abandonment.

4.    Growing up, Mr. Briseno lacked positive male role models in his home.

5.    His mother's poor choices in the men she brought into the family home had a negative impact on Mr. Briseno.

6.    Juan grew up in a neighborhood plagued with drugs, gangs, and violence.

7.    Juan was raised in poverty.

8.    Juan's basic needs were neglected when he was a young child.

9.    Juan's older brother was a gang member and a poor role model.

10.    Juan was recruited into the Imperial Gangsters when he was only 10 or 11.

11.    From an early age, Juan was unable to keep up with his peers in school.

12.    Juan's father abandoned the family when Juan was only 8.

13.    Juan's father and his associates abused drugs and alcohol in front of the children.

14.    Juan has participated in rehabilitative programs while incarcerated.

15.    Juan donated his hair to cancer patients through "Locks of Love."

16.    Juan has a loving relationship with his nephews.

17.    If Juan were to be executed others would suffer grief and loss.

18.    Juan has made a positive adjustment to incarceration and is likely to do so in federal prison.

19.    Cooperating witnesses who have killed someone will not be sentenced to death.

-19-

2811

20. The six victims of the murders voluntarily chose to engage in dangerous and illegal activities, a circumstance that contributed to their deaths.

21. Mr. Briseno always behaved respectfully in court.

22. Mr. Briseno's life has value.

23. There are other relevant circumstances that weigh against imposing a sentence of death.

24. Another defendant, or defendants equally culpable in the murders, will not be punished by death.

I have some specific comments regarding this list. First of all, mitigating factors 1 and 2 are true as a matter of law and, therefore, your foreperson should write in the number "12" with regard to those factors and all jurors must weigh and consider mitigating factors 1 and 2.

I also have some additional instructions regarding factor 20, which focuses on the conduct of the victims. Factor 20 is derived from a specific mitigating circumstance enacted by Congress. This factor takes into account that, when deciding whether or not to impose the death penalty, it is appropriate to consider as weighing against the death penalty a circumstance where the victims have voluntarily placed themselves in harm's way by choosing to engage in dangerous and illegal criminal activity, as opposed to victims who have not engaged in such activity. If you find that is the case here, you must weigh this factor against imposition of the death penalty. The weight you assign this factor is, of course, up to you individually.

I also have some additional instructions regarding factor 24, which focuses on the conduct of equally culpable defendants. Factor 24 is derived from a specific mitigating circumstance enacted by Congress. This factor takes into account that, when deciding whether or

-20-

not to impose the death penalty, it is appropriate to consider as weighing against the death

penalty a circumstance where another defendant or defendants, equally culpable in the crime, will

not be punished by death.  If you find that is the case here, you must weigh this factor against

imposition of the death penalty.  The weight you assign this factor is, of course, up to you

individually.

In Section IV, Part A of the Special Verdict Form, you are asked to report the total

number of jurors who individually find a particular mitigating factor to be established by a

preponderance of the evidence.

In addition to the mitigating factors specifically raised by the defendant, the law permits

each of you to consider anything about the circumstances of the offense, or anything about the

defendant's background, record, or character, or anything else relevant that you individually

believe mitigates against the imposition of the death penalty.  The law does not limit your

consideration of mitigating factors to those that can be articulated in advance.  As such, if there

are any mitigating factors not argued by the attorneys for the defendant but which any juror, on

his or her own or with others, finds to be established by a preponderance of the evidence, that

juror is free to – and must – consider it in his or her sentencing determination.  In Section IV,

Part B of the Special Verdict Form, you are to identify any such additional mitigating factors that

one or more of you independently finds to exist by a preponderance of the evidence.

In your consideration of mitigating evidence, I instruct you further that the law does not

require that there be a connection between the mitigating evidence and the crime committed.  In

other words, it is not necessary, for example, for the defense to establish that evidence of a

chaotic childhood led to the commission of the offense.  Thus, whether these factors have a direct

<p style="text-align:center">-21-</p>

connection to the crimes or not does not in any way affect their status as mitigating circumstances that you are required to consider. What weight you give them is, of course, up to you.

After you have completed your findings regarding the existence or non-existence of mitigating factors, you should proceed to Section V of the Special Verdict Form, to weigh the aggravating factors and mitigating factors with regard to each of the counts for which you have unanimously found at least one gateway factor and at least one statutory aggravating factor.

**Weighing Aggravating And Mitigating Factors**

If and only if you unanimously find, beyond a reasonable doubt, that the Government has proven the existence of at least one gateway factor and at least one statutory aggravating factor with regard to any capital count; and after you then determine whether the Government has proven beyond a reasonable doubt the existence of any non-statutory aggravating factors with regard to that count, and whether the defendant has proven by a preponderance of the evidence the existence of any mitigating factors, you must then engage in a weighing process with regard to that count. This weighing process asks whether the government has persuaded each and every one of you, beyond a reasonable doubt, that the aggravating factor or factors found to exist (1) outweigh the mitigating factors found to exist and, if they do, (2) whether they sufficiently outweigh the mitigating factors to justify a sentence of death on the particular capital count you are considering.

In carrying out this weighing and balancing process, the members of the jury are not mere fact-finders. Instead, jurors are called upon to make a unique, individualized judgment about the appropriateness of sentencing another human being to death.

-22-

You are to conduct this weighing process separately with regard to each of the six capital counts for which you have found at least one gateway factor and at least one statutory aggravating factor. Each juror must individually decide whether the facts and circumstances in this case as to each count call for death as the appropriate sentence.

In determining the appropriate sentence for the capital count you are considering, all of you must independently weigh the aggravating factor or factors that you unanimously found to exist with regard to that count, whether statutory or non-statutory, and each of you must weigh any mitigating factors that you individually or with others found to exist. As stated earlier, you must all find and weigh mitigating factors 1 and 2. You are not to weigh any of the four gateway factors I mentioned previously as part of this process. In engaging in the weighing process, you must avoid any influence of passion, prejudice, or any other arbitrary consideration. Your deliberations should be based upon the evidence you have seen and heard, and the law on which I have instructed you.

Again, whether or not the circumstances in this case call for a sentence of death is a decision that the law leaves entirely to you. Remember that all twelve jurors must agree beyond a reasonable doubt that death is in fact the appropriate sentence, but that no juror is ever required by the law to impose a death sentence. The decision is yours as individuals to make. As stated earlier, if even a single juror is not persuaded that death is the appropriate punishment, the death penalty will not be imposed.

The process of weighing aggravating and mitigating factors against each other is by no means a mechanical process. In other words, you should not simply count the total number of aggravating and mitigating factors and reach a decision based on which number is greater; rather,

-23-

you should consider the weight and value of each factor. In carefully weighing these various factors, the members of the jury are not mere fact-finders. Instead, you are called upon as individuals to make a unique, individualized judgment about the sentence this defendant should receive.

The law contemplates that different factors may be given different weights or values by different jurors. Thus, you may find that one mitigating factor outweighs all aggravating factors combined, or that the aggravating factors proved do not, standing alone, justify imposition of a sentence of death. Similarly, you may instead find that a single aggravating factor sufficiently outweighs all mitigating factors combined so as to justify a sentence of death. Any one of you is free to decide that a death sentence should not be imposed so long as, based on the evidence and your sense of justice, you conclude that the proven aggravating factors do not "sufficiently" outweigh mitigation such that the death penalty should be imposed.

I also remind you that whatever findings you make with respect to the aggravating and mitigating factors, you are never required to impose a death sentence. For example, there may be something about this case or about the defendant that one or more of you are not able to identify as a specific mitigating factor, but that nevertheless creates a reasonable doubt in your minds about the need for the defendant's execution. In such a case, the jury should render a decision against the death penalty. You have the discretion to temper justice with mercy. These examples I have given you are merely illustrative. Any one of you is free to decide that a death sentence should not be imposed on this case for any reason you see fit. You will not have to explain that reason.

-24-

Each juror is individually to decide what weight or value is to be given to a particular aggravating or mitigating factor in the decision-making process. Bear in mind, however, that in order to find that a sentence of death is appropriate for a particular count, the jurors must be unanimous in their conclusion, beyond a reasonable doubt, that the aggravating factor or factors proven as to that count sufficiently outweigh any mitigating factors found such that a sentence of death is warranted.

### Determination of Sentence

In the event that you unanimously find, beyond a reasonable doubt, that the balancing process leads you to the conclusion that a sentence of death is called for as to the particular capital count you are considering, please mark the appropriate box provided in Section V of the Special Verdict Form for the count you are considering.

If, after engaging in the balancing process I have described to you, all twelve members of the jury do not unanimously find that the defendant should be sentenced to death on any of the capital counts, then you may not impose the death penalty for that count. In that event, the defendant will be sentenced to life imprisonment without any possibility of release.

If the jury unanimously votes to impose life imprisonment without any possibility of release, you should indicate your decision in the appropriate box provided on the Special Verdict Form for the count you are considering.

As I have told you, should you unanimously decide to impose the death penalty or to impose life imprisonment without any possibility of release, I am required by law to abide by your decision and to sentence the defendant accordingly.

-25-

In the event that you do not unanimously decide to sentence the defendant to death, and then are unable to reach a unanimous decision on the question whether to sentence the defendant to life imprisonment without possibility of release, you should so inform the Court. In that event, the Court will sentence the defendant to life imprisonment without possibility of release. Before you reach any conclusion based on a lack of unanimity on any count, you should continue your discussions until you are fully satisfied that no further discussion will lead to a unanimous decision. If you are satisfied that you cannot reach a unanimous decision, please so indicate in the appropriate box provided on the Special Verdict Form for the count you are considering.

### Justice Without Discrimination

In your consideration of whether the death sentence is appropriate, you must not consider the race, color, religious beliefs, national origin, or sex of either the defendant or the victims. You are not to return a sentence of death unless you would return a sentence of death for the crime in question without regard to the race, color, religious beliefs, national origin, or sex of either the defendant or any victim.

To emphasize the importance of this consideration, Section VI of the Special Verdict Form contains a certification statement. Each juror should carefully read the statement, and sign your name in the appropriate place if the statement accurately reflects the manner in which each of you reached your individual decision.

### Concluding Remarks

I have now outlined for you the rules of law applicable to your consideration of the death penalty and the process by which you should determine the facts and weigh the evidence. In a few minutes you will retire to the jury room.

-26-

The importance of your deliberations should be obvious. I remind you that you can return a decision sentencing the defendant to death only if all twelve of you are unanimously persuaded beyond a reasonable doubt that the death sentence is in fact appropriate.

When you are in the jury room, please discuss all aspects of these sentencing issues among yourselves with candor and frankness, but also with a due regard and respect for the opinions of one another. Each of you must decide this question for yourself and not merely go along with the conclusion of your fellow jurors. In the course of your deliberations, no juror should surrender his or her conscientious beliefs of what is the truth, of what is the weight and effect of the evidence, and what should be the outcome as determined by that juror's individual conscience and evaluation of the case. Remember that the parties and the Court are relying upon you to give full, considered, and mature consideration to this sentencing. By so doing, you carry out to the fullest your oaths as jurors: that you will well and truly try the issues of this case and a just result render.

If it becomes necessary during your deliberations to communicate with me for any reason, simply send me a note signed by your foreperson. Do not attempt to communicate with the Court or any other court personnel by any means other than a signed writing. I will not communicate with any member of the jury on any subject touching on your sentencing decision other than in writing or orally here in open court.

When you have reached a decision, send me a note signed by your foreperson that you have reached a decision. Do not indicate what the decision is in the note. In no communication with the Court prior to a verdict should you ever give a numerical count of where the jury stands in its deliberations.

2819

Whatever decision you reach, the foreperson must also sign and fill out the Special Verdict Form accordingly and be prepared to report to the Court your findings as to the gateway, aggravating and mitigating factors, and then of your sentencing decision.

Let me remind you again that nothing that I have said in these instructions and nothing that I have said or done during the trial has been said or done to suggest to you what I think the outcome should be.  What the sentencing decision should be is your exclusive duty and responsibility.  You may now retire to commence your deliberations.

**Respectfully submitted:**

/s/ *Arlington Foley*
_____

Arlington Foley /#6905-45
Attorney For Defendant
1942 North Main Street
Crown Point, IN 46307
PH: 219.661.1200
FX: 219.661.1205

/s/ *John Maksimovich*
_____

John Maksimovich /#9950-45
Attorney For Defendant
1946 North Main Street
Crown Point, IN 46307
PH: 219.663.1900
FX: 219.663.1908

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | |
| **Plaintiff** | |
| **vs** | |
| **JUAN BRISENO,** | |
| **Defendant** | **CAUSE NO:   2:11-CR-77** |

**CERTIFICATE OF SERVICE**

I hereby certify that on February 23, 2015, I electronically filed:

***PROPOSED PENALTY PHASE JURY INSTRUCTIONS***

with the Clerk of the Court using the CM/ECF system, which sent notification of such filing to the following:

| | |
|---|---|
| David J. Nozick | Bruce Hegyi |
| Assistant United States Attorney | Assistant United States Attorney |

and I hereby certify that I have mailed by United States Postal Service, the document to the following non-CM/ECF participants:

N/A

By:    /s/ *John Maksimovich*

John Maksimovich /#9950-45
Attorney For Defendant
1946 North Main Street
Crown Point, IN 46307
PH: 219.663.1900
FX: 219.663.1908
E-Mail: criminallaw@johnmaksimovich.com

-29-

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | |
| **Plaintiff** | |
| **vs** | |
| **JUAN BRISENO,** | |
| **Defendant** | **CAUSE NO:   2:11-CR-77** |

## DEFENDANT'S PROPOSED SPECIAL VERDICT FORM

## SECTION I.  GATEWAY FACTORS

**General Directions for Section I:**

As used in this section, the term "capital counts" refers to Counts 9, 13, 15, 17, 19, and 21 of the Indictment.

Please indicate which, if any, of the following gateway factors you unanimously find that the Government has proven beyond a reasonable doubt.  For each of the four gateway factors listed in Part A below, you must mark one of the responses.

**Part A.**

1.    **That the defendant intentionally killed the victim of the particular capital count you are considering.**

| | |
|---|---|
| | We unanimously find that this factor has been proved beyond a reasonable doubt with regard to all of the capital counts. |
| | We unanimously find that this factor has been proved beyond a reasonable doubt with regard to the following capital count(s) only (identify by count number):_____. |
| | We do not unanimously find that this factor has been proved beyond a reasonable doubt with regard to any of the capital counts. |

-1-

2822

**2.    That the defendant intentionally inflicted serious bodily injury that resulted in the death of the victim of the particular capital count you are considering.**

| | |
|---|---|
| | We unanimously find that this factor has been proved beyond a reasonable doubt with regard to all of the capital counts. |
| | We unanimously find that this factor has been proved beyond a reasonable doubt with regard to the following capital count(s) only (identify by count number): _____. |
| | We do not unanimously find that this factor has been proved beyond a reasonable doubt with regard to any of the capital counts. |

**3.    That the defendant intentionally participated in an act, contemplating that the life of a person would be taken or intending that lethal force would be used in connection with a person, other than one of the participants in the offense, and the victim of the particular capital count you are considering died as a direct result of the act.**

| | |
|---|---|
| | We unanimously find that this factor has been proved beyond a reasonable doubt with regard to all of the capital counts. |
| | We unanimously find that this factor has been proved beyond a reasonable doubt with regard to the following capital count(s) only (identify by count number): _____. |
| | We do not unanimously find that this factor has been proved beyond a reasonable doubt with regard to any of the capital counts. |

**4.    That the defendant intentionally and specifically engaged in an act of violence, knowing that the act created a grave risk of death to a person, other than one of the participants in the offense, such that participation in the act constituted a reckless disregard for human life and the victim of the particular capital count you are considering died as a direct result of the act.**

| | |
|---|---|
| | We unanimously find that this factor has been proved beyond a reasonable doubt with regard to all of the capital counts. |
| | We unanimously find that this factor has been proved beyond a reasonable doubt with regard to the following capital count(s) only (identify by count number): _____. |
| | We do not unanimously find that this factor has been proved beyond a reasonable doubt with regard to any of the capital counts. |

2823

**Part B.**

       **After reviewing your findings in Section I, Part A, please identify by count number those capital counts, if any, for which you have not unanimously found that the Government has proven beyond a reasonable doubt the existence of any gateway factor:**

_____

**Directions:**

       For each capital count, if you do not unanimously find that the Government has proven beyond a reasonable doubt at least one of the above gateway factors with respect to that count, then your deliberations are over as to that count.  That is to say, you are not to consider in Section II (or thereafter until Section VI) any of the counts you have specified above in Section I, Part B.

       If there is no capital count for which you unanimously find a gateway factor has been proved beyond a reasonable doubt, skip forward to Section VI and complete that section in accordance with the directions there.  Then notify the Court that you have completed your deliberations.

       If you have found at least one gateway factor with regard to one or more capital counts, continue on to Section II.

<div align="center">

**SECTION II.  STATUTORY AGGRAVATING FACTORS**

</div>

**General Directions For Section II**

       As used in this section, the term "capital counts" refers only to those counts for which you found at least one gateway factor in Section I.  Do not consider statutory aggravating factors in this section with regard to any counts for which you have not found at least one gateway factor in Section I.

       In this section, please indicate which, if any, of the following statutory aggravating factors you unanimously find that the Government has proven beyond a reasonable doubt.  For each of the three statutory aggravating factors listed in Part A below, you must mark one of the responses.

**Part A.**

1.      **With regard to Capital Counts 13, 15, and 19, that the Defendant, in committing the offense or in escaping apprehension for the offense, knowingly created a grave risk of death to one (1) or more persons in addition to the victims of the offense.**

| | |
|---|---|
| | We unanimously find that this factor has been proved beyond a reasonable doubt with regard to each of the capital counts, 13, 15, and 19. |

<div align="center">-3-</div>

| | |
|---|---|
| | We unanimously find that this factor has been proved beyond a reasonable doubt with regard to the following capital count(s) only (identify by count number): _____. |
| | We do not unanimously find that this factor has been proved beyond a reasonable doubt with regard to any of the capital counts, 13, 15, and 19. |

**2.  That the defendant committed the offense you are considering after substantial planning and premeditation to cause the death of a person.**

| | |
|---|---|
| | We unanimously find that this factor has been proved beyond a reasonable doubt with regard to all of the capital counts. |
| | We unanimously find that this factor has been proved beyond a reasonable doubt with regard to the following capital count(s) only (identify by count number): _____. |
| | We do not unanimously find that this factor has been proved beyond a reasonable doubt with regard to any of the capital counts. |

**3.  With regard to Capital Counts 13 and 15, that the defendant intentionally killed more than one person in a single criminal episode.**

| | |
|---|---|
| | We unanimously find that this factor has been proved beyond a reasonable doubt with regard to both capital counts, 13 and 15. |
| | We unanimously find that this factor has been proved beyond a reasonable doubt with regard to the following capital count only (identify by count number):_____. |
| | We do not unanimously find that this factor has been proved beyond a reasonable doubt with regard to either of the capital counts 13 or 15. |

**Part B.**

After reviewing your findings in Section II, Part A, please identify by count number those capital counts, if any, for which you have not unanimously found that the Government has proven beyond a reasonable doubt the existence of any statutory aggravating factor: _____

**Directions:**

For each capital count you are considering in this section, if you do not unanimously find that the Government has proven beyond a reasonable doubt at least one of the above statutory aggravating factors with respect to that count, then your deliberations are over as to that capital

-4-

count.  In other words, you are not to consider in Section III (or thereafter until Section VI) any of the counts you have specified above in Section II, Part B.

If there is no capital count for which you unanimously find that at least one statutory aggravating factor has been proved beyond a reasonable doubt, skip forward to Section VI and complete that section in accordance with the directions there.  Then notify the Court that you have completed your deliberations.

If you have found one or more statutory aggravating factors with regard to one or more capital counts, continue on to Section III.

## SECTION III.  NON-STATUTORY AGGRAVATING FACTORS

**General Directions For Section III:**

As used in this section, the term "capital counts" refers only to those counts for which you found at least one gateway factor in Section I and at least one statutory aggravating factor in Section II.  Do not consider non-statutory aggravating factors in this section with regard to the counts for which you have not found at least one gateway factor in Section I and at least one statutory aggravating factor in Section II.

In this section, please indicate which, if any, of the following non-statutory aggravating factors you unanimously find that the Government has proven beyond a reasonable doubt.  For each of the proposed factors, you must mark one of the responses provided.

1.      **That the defendant caused injury, harm and loss to the victims' family and friends because of the victim's personal characteristics as an individual human being and the impact of his death upon the victims' family and friends.**

|  | We unanimously find that this factor has been proved beyond a reasonable doubt with regard to all of the capital counts. |
|---|---|
|  | We unanimously find that this factor has been proved beyond a reasonable doubt with regard to the following capital count(s) only (identify by count number): _____. |
|  | We do not unanimously find that this factor has been proved beyond a reasonable doubt with regard to any of the capital counts. |

2.      **The defendant represents a continuing danger to the lives and safety of other persons, as evidenced by his low potential for rehabilitation as demonstrated by repeated violent criminal acts; a willingness to take human life and a lack of remorse for his acts of violence and attempted acts of violence as demonstrated by statements that he made following these violent acts; and his stated desire to impose a rule requiring fellow members of the Imperial Gangsters to shoot at rivals on sight, and his future dangerousness tends to support the imposition of the death penalty.**

-5-

2826

| | We unanimously find that this factor has been proved beyond a reasonable doubt with regard to all of the capital counts. |
|---|---|
| | We unanimously find that this factor has been proved beyond a reasonable doubt with regard to the following capital count(s) only (identify by count number): _____. |
| | We do not unanimously find that this factor has been proved beyond a reasonable doubt with regard to any of the capital counts. |

3.  **The defendant was convicted at trial of other criminal activity, including additional murders or attempted murders, and this additional criminal activity tends to support the imposition of the death penalty.**

| | We unanimously find that this factor has been proved beyond a reasonable doubt with regard to all of the capital counts. |
|---|---|
| | We unanimously find that this factor has been proved beyond a reasonable doubt with regard to the following capital count(s) only (identify by count number): _____. |
| | We do not unanimously find that this factor has been proved beyond a reasonable doubt with regard to any of the capital counts. |

4.  **The defendant demonstrated an allegiance to and membership in the Imperial Gangsters, a criminal street gang, and this allegiance and membership tends to support the imposition of the death penalty.**

| | We unanimously find that this factor has been proved beyond a reasonable doubt with regard to all of the capital counts. |
|---|---|
| | We unanimously find that this factor has been proved beyond a reasonable doubt with regard to the following capital count(s) only (identify by count number): _____. |
| | We do not unanimously find that this factor has been proved beyond a reasonable doubt with regard to any of the capital counts. |

**Directions:**

After you have completed your findings in this section (whether or not you have found any of the non-statutory aggravating factors to have been proved), continue on to Section IV.

-6-

2827

## SECTION IV.  MITIGATING FACTORS

**General Directions for Section IV:**

As used in this section, the term "capital counts" refers only to those counts for which you found at least one gateway factor in Section I and at least one statutory aggravating factor in Section II.

As to the alleged mitigating factors which are listed below, please indicate which you find that the defendant has proven by a preponderance of the evidence.

Recall that your vote as a jury need not be unanimous with regard to each question in this section.  A finding with respect to a mitigating factor may be made by one or more of the members of the jury, and any member of the jury who finds the existence of a mitigating factor may consider such a factor established in making his or her individual determination of whether or not a sentence of death shall be imposed, regardless of the number of other jurors who agree the factor has been established.

**Part A.**

In the space provided, please indicate the number of jurors who have found the existence of that mitigating factor to be proven by a preponderance of the evidence with regard to each of the capital counts.

| Mitigating Factor No. 1: If he is not sentenced to death, Mr. Briseno will be sentenced to lifetime imprisonment without the possibility of release. | |
| --- | --- |
| Number of jurors who so find as to Count _____ | |
| Number of jurors who so find as to Count _____ | |

| Mitigating Factor No. 2: The Federal Bureau of Prisons will impose appropriate conditions of confinement and security with regard to Mr. Briseno. | |
| --- | --- |
| Number of jurors who so find as to Count _____ | |
| Number of jurors who so find as to Count _____ | |

| Mitigating Factor No. 3: Mr. Briseno is the product of a childhood marked by chaos, abuse and abandonment. | |
| --- | --- |
| Number of jurors who so find as to Count _____ | |
| Number of jurors who so find as to Count _____ | |

2828

| Mitigating Factor No. 4: Growing up, Mr. Briseno lacked positive male role models in his home. | |
|---|---|
| Number of jurors who so find as to Count _____ | |
| Number of jurors who so find as to Count _____ | |

| Mitigating Factor No. 5: His mother's poor choices in the men she brought into the family home had a negative impact on Mr. Briseno. | |
|---|---|
| Number of jurors who so find as to Count _____ | |
| Number of jurors who so find as to Count _____ | |

| Mitigating Factor No. 6: Juan grew up in a neighborhood plagued with drugs, gangs, and violence. | |
|---|---|
| Number of jurors who so find as to Count _____ | |
| Number of jurors who so find as to Count _____ | |

| Mitigating Factor No. 7: Juan was raised in poverty. | |
|---|---|
| Number of jurors who so find as to Count _____ | |
| Number of jurors who so find as to Count _____ | |

| Mitigating Factor No. 8: Juan's basic needs were neglected when he was a young child. | |
|---|---|
| Number of jurors who so find as to Count _____ | |
| Number of jurors who so find as to Count _____ | |

| Mitigating Factor No. 9: Juan's older brother was a gang member and a poor role model. | |
|---|---|
| Number of jurors who so find as to Count _____ | |
| Number of jurors who so find as to Count _____ | |

| Mitigating Factor No. 10: Juan was recruited into the Imperial Gangsters when he was only 10 or 11. | |
|---|---|
| Number of jurors who so find as to Count _____ | |
| Number of jurors who so find as to Count _____ | |

-8-

2829

| Mitigating Factor No. 11: From an early age, Juan was unable to keep up with his peers in school. | |
|---|---|
| Number of jurors who so find as to Count _____ | |
| Number of jurors who so find as to Count _____ | |

| Mitigating Factor No. 12: Juan's father abandoned the family when Juan was only 8. | |
|---|---|
| Number of jurors who so find as to Count _____ | |
| Number of jurors who so find as to Count _____ | |

| Mitigating Factor No. 13: Juan's father and his associates abused drugs and alcohol in front of the children. | |
|---|---|
| Number of jurors who so find as to Count _____ | |
| Number of jurors who so find as to Count _____ | |

| Mitigating Factor No. 14: Juan has participated in rehabilitative programs while incarcerated. | |
|---|---|
| Number of jurors who so find as to Count _____ | |
| Number of jurors who so find as to Count _____ | |

| Mitigating Factor No. 15: Juan donated his hair to cancer patients through "Locks of Love." | |
|---|---|
| Number of jurors who so find as to Count _____ | |
| Number of jurors who so find as to Count _____ | |

| Mitigating Factor No. 16: Juan has a loving relationship with his nephews. | |
|---|---|
| Number of jurors who so find as to Count _____ | |
| Number of jurors who so find as to Count _____ | |

| Mitigating Factor No. 17: If Juan were to be executed others would suffer grief and loss. | |
|---|---|
| Number of jurors who so find as to Count _____ | |
| Number of jurors who so find as to Count _____ | |

2830

| Mitigating Factor No. 18:<br>Juan has made a positive adjustment to incarceration and is likely to do so in federal prison. | |
|---|---|
| Number of jurors who so find as to Count _____ | |
| Number of jurors who so find as to Count _____ | |

| Mitigating Factor No. 19:<br>Cooperating witnesses who have killed someone will not be sentenced to death. | |
|---|---|
| Number of jurors who so find as to Count _____ | |
| Number of jurors who so find as to Count _____ | |

| Mitigating Factor No. 20: Each of the six victims of the murders voluntarily chose to engage in dangerous and illegal activities, a circumstance that contributed to their deaths. | |
|---|---|
| Number of jurors who so find as to Count _____ | |
| Number of jurors who so find as to Count _____ | |

| Mitigating Factor No. 21: Mr. Briseno always behaved respectfully in court. | |
|---|---|
| Number of jurors who so find as to Count _____ | |
| Number of jurors who so find as to Count _____ | |

| Mitigating Factor No. 22: Mr. Briseno's life has value. | |
|---|---|
| Number of jurors who so find as to Count _____ | |
| Number of jurors who so find as to Count _____ | |

| Mitigating Factor No. 23: There are other relevant circumstances that weigh against imposing a sentence of death. | |
|---|---|
| Number of jurors who so find as to Count _____ | |
| Number of jurors who so find as to Count _____ | |

| Mitigating Factor No. 24: Another defendant, or defendants equally culpable in the murders, will not be punished by death. | |
|---|---|
| Number of jurors who so find as to Count _____ | |
| Number of jurors who so find as to Count _____ | |

2831

**Part B.**

The law does not limit your consideration of mitigating factors to those that can be articulated in advance. Therefore, you may consider during your deliberations any other factor or factors in the defendant's background, record, character, or any other circumstances of the offense that mitigate against imposition of a death sentence. The following extra spaces are provided to write in additional mitigating factors, if any, found by any one or more jurors. If more space is needed, write "CONTINUED" and use the reverse side of the next page.

| Mitigating Factor No. _____: | |
|---|---|
| | |
| | |
| | |
| Number of jurors who so find as to Count _____ | |
| Number of jurors who so find as to Count _____ | |

| Mitigating Factor No. _____: | |
|---|---|
| | |
| | |
| | |
| Number of jurors who so find as to Count _____ | |
| Number of jurors who so find as to Count _____ | |

2832

**Directions:**

After you have completed your findings in this section (whether or not you have found any mitigating factors in this section), continue on to Section V.

## SECTION V.  DETERMINATION OF SENTENCE

**General Directions for Section V:**

As used in this section, the term "capital count'" refers only to those counts for which you found at least one gateway factor in Section I and at least one statutory aggravating factor in Section II.  You may not impose a sentence of death on a particular capital count unless you have first found with regard to that count, unanimously and beyond a reasonable doubt, at least one gateway factor in Section I and at least one statutory aggravating factor in Section II.

In this section, enter your determination of the defendant's sentence with regard to each of the capital counts.  Your vote as a jury must be unanimous with regard to each question in this section.  Please note that it may be appropriate for you to check more than one box in this section.

After considering the information presented by both sides during the penalty phase and individually balancing the aggravating factors found to exist against the mitigating factors found to exist:

### CAPITAL COUNT 9

|  | |
|---|---|
|  | We, the jury, unanimously find that the Government has failed to prove that death is the appropriate sentence for the defendant for Capital Count 9 |
|  | Although we do not unanimously find that the Government has proved that death is the appropriate sentence, we, the jury, unanimously find that a sentence of life in prison without possibility of release is the appropriate sentence for the defendant on Capital Count 9. |
|  | We, the jury, unanimously find, for Capital Count 9, that the aggravating factor or factors found to exist sufficiently outweigh the mitigating factor or factors found to exist so that death is the appropriate sentence for the defendant.  We vote unanimously that the defendnat shall be sentenced to death as to Capital Count 9. |
|  | We, the jury, are unable to reach a unanimous verdict in favor of a life sentence or a death sentence, for Capital Count 9.  We understand that the consequence of this is that the defendant will be sentenced to life imprisonment without the possibility of release. |

2833

## CAPITAL COUNT 13

| | |
|---|---|
| | We, the jury, unanimously find that the Government has failed to prove that death is the appropriate sentence for the defendant for Capital Count 13. |
| | Although we do not unanimously find that the Government has proved that death is the appropriate sentence, we, the jury, unanimously find that a sentence of life in prison without possibility of release is the appropriate sentence for the defendant on Capital Count 13. |
| | We, the jury, unanimously find, for Capital Count 13, that the aggravating factor or factors found to exist sufficiently outweigh the mitigating factor or factors found to exist so that death is the appropriate sentence for the defendant. We vote unanimously that the defendnat shall be sentenced to death as to Capital Count 13. |
| | We, the jury, are unable to reach a unanimous verdict in favor of a life sentence or a death sentence, for Capital Count 13.  We understand that the consequence of this is that the defendant will be sentenced to life imprisonment without the possibility of release. |

## CAPITAL COUNT 15

| | |
|---|---|
| | We, the jury, unanimously find that the Government has failed to prove that death is the appropriate sentence for the defendant for Capital Count 15. |
| | Although we do not unanimously find that the Government has proved that death is the appropriate sentence, we, the jury, unanimously find that a sentence of life in prison without possibility of release is the appropriate sentence for the defendant on Capital Count 15. |
| | We, the jury, unanimously find, for Capital Count 15, that the aggravating factor or factors found to exist sufficiently outweigh the mitigating factor or factors found to exist so that death is the appropriate sentence for the defendant. We vote unanimously that the defendnat shall be sentenced to death as to Capital Count 15. |
| | We, the jury, are unable to reach a unanimous verdict in favor of a life sentence or a death sentence, for Capital Count 15.  We understand that the consequence of this is that the defendant will be sentenced to life imprisonment without the possibility of release. |

2834

**CAPITAL COUNT 17**

| | |
|---|---|
| | We, the jury, unanimously find that the Government has failed to prove that death is the appropriate sentence for the defendant for Capital Count 17 |
| | Although we do not unanimously find that the Government has proved that death is the appropriate sentence, we, the jury, unanimously find that a sentence of life in prison without possibility of release is the appropriate sentence for the defendant on Capital Count 17. |
| | We, the jury, unanimously find, for Capital Count 17, that the aggravating factor or factors found to exist sufficiently outweigh the mitigating factor or factors found to exist so that death is the appropriate sentence for the defendant. We vote unanimously that the defendnat shall be sentenced to death as to Capital Count 17. |
| | We, the jury, are unable to reach a unanimous verdict in favor of a life sentence or a death sentence, for Capital Count 17.  We understand that the consequence of this is that the defendant will be sentenced to life imprisonment without the possibility of release. |

**CAPITAL COUNT 19**

| | |
|---|---|
| | We, the jury, unanimously find that the Government has failed to prove that death is the appropriate sentence for the defendant for Capital Count 19 |
| | Although we do not unanimously find that the Government has proved that death is the appropriate sentence, we, the jury, unanimously find that a sentence of life in prison without possibility of release is the appropriate sentence for the defendant on Capital Count 19. |
| | We, the jury, unanimously find, for Capital Count 19, that the aggravating factor or factors found to exist sufficiently outweigh the mitigating factor or factors found to exist so that death is the appropriate sentence for the defendant. We vote unanimously that the defendnat shall be sentenced to death as to Capital Count 19. |
| | We, the jury, are unable to reach a unanimous verdict in favor of a life sentence or a death sentence, for Capital Count 19.  We understand that the consequence of this is that the defendant will be sentenced to life imprisonment without the possibility of release. |

-14-

## CAPITAL COUNT 21

| | |
|---|---|
| | We, the jury, unanimously find that the Government has failed to prove that death is the appropriate sentence for the defendant for Capital Count 21 |
| | Although we do not unanimously find that the Government has proved that death is the appropriate sentence, we, the jury, unanimously find that a sentence of life in prison without possibility of release is the appropriate sentence for the defendant on Capital Count 21. |
| | We, the jury, unanimously find, for Capital Count 21, that the aggravating factor or factors found to exist sufficiently outweigh the mitigating factor or factors found to exist so that death is the appropriate sentence for the defendant. We vote unanimously that the defendant shall be sentenced to death as to Capital Count 21. |
| | We, the jury, are unable to reach a unanimous verdict in favor of a life sentence or a death sentence, for Capital Count 21. We understand that the consequence of this is that the defendant will be sentenced to life imprisonment without the possibility of release. |

## SECTION V.  DETERMINATION OF SENTENCE

Each juror must sign his or her name below, indicating that the above sentence determination reflects the jury's decision.

Print Name:

Print Name:

Print Name:

Print Name:

-15-

2836

Print Name: _____

Print Name: _____

Print Name: _____

Print Name: _____

Print Name: _____

Print Name: _____

Print Name: _____

Print Name: _____

The foreperson shall indicate the date of signing.

Date: _____ , 2015

**Directions::**

After you have completed your sentence determination in this section (regardless of what that determination was), continue on to Section VI.

## SECTION VI.  CERTIFICATION

By signing your name below, each of you individually certifies that consideration of the race, color, religious beliefs, national origin, or sex of the defendant or the victims was not involved in reaching your individual decision.  Each of you further certifies that you, as an individual, would have made the same recommendation regarding a sentence for the crime or crimes in question regardless of the race, color, religious beliefs, national origin, or sex of the defendant, or the victims.

Print Name: _____

Print Name: _____

Print Name: _____

Print Name: _____

Print Name: _____

Print Name: _____

2838

Print Name:  _____

Print Name:  _____

Print Name:  _____

Print Name:  _____

Print Name:  _____

Print Name:  _____

The foreperson shall indicate the date of signing.

Date:  _____ , 2015

```
MIME-Version:1.0
From:CMECFinnd@innd.uscourts.gov
To:CMECFinnd@localhost.localdomain
Bcc:
--Case Participants: Pablo DeCastro (pdecastro@attorneydecastro.com,
ysierra@rascia-decastro.com), Kurt R Earnst (kre@braje-nelson.com), Matthew N Fech
(mnf@fech-law.com), Arlington J Foley (arlingtonfoley@att.net), Jack Friedlander
(jack@jackfriedlander.com, office@jackfriedlander.com), Bruce R Hegyi - AUSA
(bruce.hegyi@usdoj.gov), Roxanne Mendez Johnson (attorneyrmj@gmail.com), Scott L King
(dwilliams@scottkinggroup.com, sking@scottkinggroup.com), Visvaldis P Kupsis
(vpkupsis@hotmail.com), Dean R Lanter - AUSA (dean.lanter@usdoj.gov,
janet.eisenmann@usdoj.gov, usainn.ecfcivil@usdoj.gov), John Maksimovich
(criminallaw@johnmaksimovich.com), John E Martin - FCD (john_martin@fd.org), Sheldon B
Nagelberg (sbnagelberglaw@att.net), David J Nozick - AUSA (david.nozick@usdoj.gov,
janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov,
usainn.ecfcivil@usdoj.gov), Mark A Psimos (psimoslaw@airbaud.net), Robert L Rascia
(rrascia@rascia-decastro.com, ysierra@rascia-decastro.com), Stephen Edward Scheele
(pkd@gk4law.com, ses@gk4law.com), Paul Jeffrey Schlesinger (pjeffslaw@aol.com), Adam
Tavitas (adtavitas@aol.com, b.lynneadams@yahoo.com), John T Theis (theislaw@aol.com),
James N Thiros (jim@thiros.com, lynn@thiros.com), Bryan M Truitt (bryan@tblawyers.com,
sherrie@tblawyers.com), David E Vandercoy (david.vandercoy@valpo.edu), Thomas W Vanes
(b.lynneadams@yahoo.com, tom.vanes@sbcglobal.net), Ihor Alexander Woloshansky
(ihorlawyer@hotmail.com), Richard C Wolter (b.lynneadams@yahoo.com), R Brian Woodward
(carolb@wbbklaw.com, rbwoodward@wbbklaw.com), Magistrate Judge Andrew P Rodovich
(rodovich_chambers@innd.uscourts.gov, ruth_nagy@innd.uscourts.gov), Chief Judge Philip P
Simon (denise_woodside@innd.uscourts.gov, jacob_hamann@innd.uscourts.gov,
lauren_schwartz@innd.uscourts.gov, mira_serrill-robins@innd.uscourts.gov,
noel_collins@innd.uscourts.gov, philip_simon@innd.uscourts.gov)
--Non Case Participants: Matthew D Soliday (office@matthewsolidaylaw.com)
--No Notice Sent:

Message-Id:2713695@innd.uscourts.gov
Subject:Activity in Case 2:11-cr-00077-PPS-APR United States of America v. Briseno et al
Jury Trial
Content-Type: text/html
```

### U.S. District Court Northern District of Indiana [LIVE]

### USDC Northern Indiana

## Notice of Electronic Filing

The following transaction was entered on 2/24/2015 at 10:00 AM EST and filed on 2/20/2015

| | |
|---|---|
| **Case Name:** | United States of America v. Briseno et al |
| **Case Number:** | 2:11–cr–00077–PPS–APR |
| **Filer:** | |
| **Document Number:** | 1447(No document attached) |

**Docket Text:**

**JURY TRIAL (11th DAY OF EVIDENCE) as to Juan Briseno held on 2/20/2015 before Chief Judge Philip P Simon. Parties present as previously noted. Govt continues to present evidence, concludes and rests. Court instructs jury not to read, listen to any news accounts, discuss this case, or visit any locations related to this trial. Jury released. Court's Santiago ruling. Scheduling discussed for the remainder of the trial. Motions by defense to be heard on Tuesday, 2/24/2015, attorneys to report at 8:30 a.m. Jury will next report on Tuesday, 2/24/2015. Defendant REMANDED to custody of US Marshal. (Court Reporter Stacy Drohosky**

**and Kelly Fitzgerald (pm).) (nac)**

**2:11–cr–00077–PPS–APR–1 Notice has been electronically mailed to:**

David E Vandercoy    david.vandercoy@valpo.edu

Arlington J Foley    arlingtonfoley@att.net

Mark A Psimos    psimoslaw@airbaud.net

Scott L King    sking@scottkinggroup.com, dwilliams@scottkinggroup.com

James N Thiros    jim@thiros.com, lynn@thiros.com

Thomas W Vanes    tom.vanes@sbcglobal.net, b.lynneadams@yahoo.com

Ihor Alexander Woloshansky    ihorlawyer@hotmail.com

R Brian Woodward    rbwoodward@wbbklaw.com, carolb@wbbklaw.com

John Maksimovich    criminallaw@johnmaksimovich.com

Visvaldis P Kupsis    vpkupsis@hotmail.com

Sheldon B Nagelberg    sbnagelberglaw@att.net

John E Martin – FCD    john_martin@fd.org

Adam Tavitas    Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander    jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele    ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst    kre@braje–nelson.com

Bryan M Truitt    bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis    theislaw@aol.com

Robert L Rascia    rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger    pjeffslaw@aol.com

Matthew N Fech    mnf@fech–law.com

Pablo DeCastro    pdecastro@attorneydecastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA    dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov,
janet.eisenmann@usdoj.gov

2841

David J Nozick – AUSA    David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson    attorneyrmj@gmail.com

Bruce R Hegyi – AUSA    bruce.hegyi@usdoj.gov

**2:11–cr–00077–PPS–APR–1 Notice has been delivered by U.S. Mail or other means to:**

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

UNITED STATES OF AMERICA,

          **Plaintiff**

vs

JUAN BRISENO,

          **Defendant**                 **CAUSE NO:   2:11-CR-77**

**REPLY TO GOVERNMENT'S MOTION FOR PRODUCTION**
**OF UNPRIVILEGED, NON-TESTIMONIAL EVIDENCE**

      Comes now Defendant Juan Briseno, by counsel John Maksimovich and Arlington Foley, and states the following:

      1.     The government has filed a Motion with this Court requesting the Court to issue an order requiring Defendant, Juan Briseno, to participate in an inspection and viewing of his person for purposes of locating and photographing tattoos on his person. In essence, the government argues such tattoos are material to penalty phase issues of future dangerousness, lack of remorse and low rehabilitative potential.

      2.     The defendant, through his attorneys, strenuously argue that  an order requiring Defendant, Juan Briseno, to participate in an inspection and viewing of his person for purposes of locating and photographing tattoos on his person for the purpose of use by the government in its death penalty phase case against the defendant violates both the First Amendment and Fourth Amendment rights of the defendant.

      3.     In its Motion, the government alleges that the defendant has a tattoo that states "FUCK THE FEDS". The government claims that this tattoo was inscribed upon the defendant post arrest.  This tattoo, if it exists, is not visible. In order to search for it, clothing has to be removed. Thus, a search warrant based on probable cause is the constitutional vehicle that must be used to search for this tattoo, or, for that matter, any tattoo that is not readily visible to the public.  The government's analogy to fingerprint and other sorts of examinations (line-ups, handwriting exemplars, voice exemplars) seems inapt.

-1-

4.      Defendant Briseno's tattoes signify his abstract beliefs.  As such, they are protected by the First Amendment. The First Amendment forbids the uncabined reliance on a defendant's "abstract beliefs" at sentencing. *United States v. Dawson,* 503 U.S. 159 (1992), 503 U.S. at 166-67, 112 S.Ct. 1093; *see also Wisconsin v. Mitchell,* 508 U.S. 476, 485-86, 113 S.Ct. 2194, 124 L.Ed.2d 436 (1993) ("[A] defendant's abstract beliefs, however obnoxious to most people, may not be taken into consideration by a sentencing judge"). However, the government may introduce evidence of beliefs or associational activities, so long as they are relevant to prove, for example, motive or aggravating circumstances, to illustrate future dangerousness, or to rebut mitigating evidence. *See United States v. Kane,* 452 F.3d 140, 143 (2d Cir.2006) (per curiam); *see also Dawson,* 503 U.S. at 167, 112 S.Ct. 1093; *Barclay v. Florida,* 463 U.S. 939, 948-49, 103 S.Ct. 3418, 77 L.Ed.2d 1134 (1983) (plurality opinion) (upholding the consideration of defendant's racial intolerance in evaluating motive and as an aggravating factor).

5.      The government argues that defendant, Briseno, has a hidden tattoo that states "FUCK THE FEDS" and that this tattoo is relevant to prove future dangerousness.  The defendant, through counsel believes the government wishes to use the tattoo  merely to show that the defendant, Briseno, is  "morally reprehensible" due to his "abstract beliefs." This is not relevant to any legitimate penalty phase issue and is a violation of Defendant Briseno's First Amendment rights.

WHEREFORE,  Defendant, through counsel respectfully requests this Court deny the government's request and for all other just and proper relief.


**Respectfully submitted:**

/s/ *Arlington Foley*
_____

Arlington Foley /#6905-45
Attorney For Defendant
1942 North Main Street
Crown Point, IN 46307
PH: 219.661.1200
FX: 219.661.1205

/s/ *John Maksimovich*
_____

John Maksimovich /#9950-45
Attorney For Defendant
1946 North Main Street
Crown Point, IN 46307
PH: 219.663.1900
FX: 219.663.1908

-2-

2844

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | |
|         **Plaintiff** | |
| **vs** | |
| **JUAN BRISENO,** | |
|         **Defendant** | **CAUSE NO:   2:11-CR-77** |

**CERTIFICATE OF SERVICE**

I hereby certify that on February 24, 2015, I electronically filed:

***Reply to Government's Motion for Production of Unprivileged, Non-testimonial Evidence***

with the Clerk of the Court using the CM/ECF system, which sent notification of such filing to the following:

| | |
|---|---|
| David J. Nozick | Bruce Hegyi |
| Assistant United States Attorney | Assistant United States Attorney |

and I hereby certify that I have mailed by United States Postal Service, the document to the following non-CM/ECF participants:

        N/A

By:   /s/ *John Maksimovich*

John Maksimovich /#9950-45
Attorney For Defendant
1946 North Main Street
Crown Point, IN 46307
PH: 219.663.1900
FX: 219.663.1908
Email: jm@johnmaksimovich.com

-3-

2845

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CAUSE NO. 2:11-CR-77 (PPS) |
| | ) | |
| JUAN BRISENO, also known as "Tito" | ) | |

**STIPULATION**

The United States of America ("United States" or "Government") and Juan Briseno, also

known as "Tito" ("Mr. Briseno") do hereby agree and stipulate for all purposes in this trial that the

following facts are true and correct:

1.  The person who was shot and killed on or about February 7, 2010 in the 3700 block

    of Deodar in East Chicago, Indiana, was Miguel Colon;

2.  The body on which John Cavanagh, M.D., performed an autopsy on or about

    February 7, 2010 (Lake County Coroner's Autopsy # 031-2010) was that of Miguel

    Colon; and

3.  The person who is depicted in Government Exhibit 10Colon-C is Miguel Colon.

Dated:  February 10, 2015.

SO STIPULATED.

Respectfully submitted,

DAVID CAPP
UNITED STATES ATTORNEY

By: _____
    David J. Nozick
    Assistant United States Attorney

SO STIPULATED.

Respectfully submitted,

*John Maksimovich*

Arlington Foley, Esquire.
John Maksimovich, Esquire
Attorneys for Defendant Juan Briseno

1



GOVERNMENT
EXHIBIT
STIPULATION-1
U.S. v Briseno

2846

LESLIE CALDWELL
ASSISTANT ATTORNEY GENERAL

By: _____
    Bruce R. Hegyi
    Trial Attorney

_____
Juan Briseno

2847

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CAUSE NO. 2:11-CR-77 (PPS) |
| | ) | |
| JUAN BRISENO, also known as "Tito" | ) | |

## STIPULATION

The United States of America ("United States" or "Government") and Juan Briseno, also known as "Tito" ("Mr. Briseno") do hereby agree and stipulate for all purposes in this trial that the following facts are true and correct:

1.  The person who was shot and killed on or about September 26, 2007 in or about 1212 150th Street, Hammond, Indiana, was Luis Ortiz;

2.  The body on which John Cavanagh, M.D., performed an autopsy on or about September 27, 2007 (Lake County Coroner's Autopsy #322-2007) was that of Luis Ortiz; and

3.  The person who is depicted in Government Exhibit 07Ortiz-C is Luis Ortiz.

Dated:    February 11, 2015.

SO STIPULATED.

Respectfully submitted,

DAVID CAPP
UNITED STATES ATTORNEY

By: _____
David J. Nozick
Assistant United States Attorney

SO STIPULATED.

Respectfully submitted,

*John Maksimovich*

Arlington Foley, Esquire.
John Maksimovich, Esquire
Attorneys for Defendant Juan Briseno

1



GOVERNMENT
EXHIBIT
STIPULATION 2
U.S. v Briseno

2848

LESLIE CALDWELL
ASSISTANT ATTORNEY GENERAL

By: _____
Bruce R. Hegyi
Trial Attorney

_____
Juan Briseno

2849

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CAUSE NO. 2:11-CR-77 (PPS) |
| | ) | |
| JUAN BRISENO, also known as "Tito" | ) | |

## STIPULATION

The United States of America ("United States" or "Government") and Juan Briseno, also

known as "Tito" ("Mr. Briseno"), do hereby agree and stipulate for all purposes in this trial that the

following facts are true and correct:

1. The person who was shot and killed on or about October 9, 2008 in or about 5000

    block of Magoun Avenue, East Chicago, Indiana, was Harris Brown;

2. The body on which Lawrence Cogan, M.D., performed an autopsy on or about

    October 11, 2008 (Cook County Medical Examiner's Case # 138 October 2008)

    was that of Harris Brown; and

3. The person who is depicted in Government Exhibit 08Brown-F is Harris Brown.

Dated:    February 18, 2015.

SO STIPULATED.

Respectfully submitted,

DAVID CAPP
UNITED STATES ATTORNEY

By:  _____
     David J. Nozick
     Assistant United States Attorney

SO STIPULATED.

Respectfully submitted,

_____
Arlington Foley, Esquire.
John Maksimovich, Esquire
Attorneys for Defendant Juan Briseno

1



LESLIE CALDWELL
ASSISTANT ATTORNEY GENERAL

By: _____    _____
    Bruce R. Hegyi                Juan Briseno
    Trial Attorney

2851

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CAUSE NO. 2:11-CR-77 (PPS) |
| | ) | |
| JUAN BRISENO, also known as "Tito" | ) | |

**STIPULATION**

The United States of America ("United States" or "Government") and Juan Briseno, also

known as "Tito" ("Mr. Briseno"), do hereby agree and stipulate for all purposes in this trial that the

following facts are true and correct:

1.  The person who was shot and killed on or about June 3, 2008 in or about the 4923

    Baring Avenue, East Chicago, Indiana, was Miguel Mejias;

2.  The body on which John Cavanaugh, M.D., performed an autopsy on or about June

    4, 2008 (Lake County Coroner's Autopsy #150-2008) was that of Miguel Mejias;

    and

3.  The person who is depicted in Government Exhibit 08M&S-F is Miguel Mejias.

Dated:    February 20 2015.

SO STIPULATED.

Respectfully submitted,

DAVID CAPP
UNITED STATES ATTORNEY

By:  _____
        David J. Nozick
        Assistant United States Attorney

SO STIPULATED.

Respectfully submitted,

_____
Arlington Foley, Esquire.
John Maksimovich, Esquire
Attorneys for Defendant Juan Briseno

1



GOVERNMENT
EXHIBIT
STIPULATION-4
U.S. v Briseno

LESLIE CALDWELL
ASSISTANT ATTORNEY GENERAL

By: _____
Bruce R. Hegyi
Trial Attorney

_____
Juan Briseno

2

2853

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

UNITED STATES OF AMERICA  )
            )
v.          )  CAUSE NO. 2:11-CR-77 (PPS)
            )
JUAN BRISENO, also known as "Tito" )

**STIPULATION**

The United States of America ("United States" or "Government") and Juan Briseno, also known as "Tito" ("Mr. Briseno"), do hereby agree and stipulate for all purposes in this trial that the following facts are true and correct:

1. The person who was shot and killed on or about June 3, 2008 in or about the 4923 Baring Avenue, East Chicago, Indiana, was Michael Sessum;

2. The body on which John Cavanaugh, M.D., performed an autopsy on or about June 4, 2008 (Lake County Coroner's Autopsy #149-2008) was that of Michael Sessum; and

3. The person who is depicted in Government Exhibit 08M&S-G is Michael Sessum.

Dated: February 20, 2015.

SO STIPULATED.

Respectfully submitted,

DAVID CAPP
UNITED STATES ATTORNEY

By: _____
David J. Nozick
Assistant United States Attorney

SO STIPULATED.

Respectfully submitted,

_____
Arlington Foley, Esquire.
John Maksimovich, Esquire
Attorneys for Defendant Juan Briseno

1


GOVERNMENT
EXHIBIT
STIPULATION-5
U.S. v Briseno

2854

LESLIE CALDWELL
ASSISTANT ATTORNEY GENERAL

By: _____
        Bruce R. Hegyi
        Trial Attorney

_____
Juan Briseno

2855

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | NO. 2:11 CR 77 |
| | ) | |
| JUAN BRISENO | ) | |

## STIPULATION

The Defendant, Juan Briseno, and the United States of America, do hereby agree and stipulate for all purposes in this trial that the following facts are true and correct:

1. Following his death, strands of hair were collected from one or both hands of Luis Ortiz.

2. A hair sample was taken from the Defendant, Juan Briseno.

3. A comparison of the strands of hair taken from Luis Ortiz and the hair sample taken from Juan Briseno was performed by Forensic Examiner Karen Korsberg Lowe.

4. The results of that comparison concluded that the hair collected from the hand(s) of Luis Ortiz are microscopically dissimilar from the hair sample taken from Juan Briseno. Therefore, Juan Briseno was not the source of the hairs collected from the hand(s) of Luis Ortiz.

February 24, 2015.

SO STIPULATED:

RESPECTFULLY SUBMITTED,

By: _____
Arlington J. Foley
Attorney for Juan Briseno

SO STIPULATED:

RESPECTFULLY SUBMITTED,

By: _____
David J. Nozick
Assistant United States Attorney

DEFENDANT'S EXHIBIT
H
2:11 CR 77

By: _____

John Maksimovich
Attorney for Juan Briseno

By: _____

Bruce R. Hegyi
Trial Attorney
U.S. Department of Justice

```
MIME-Version:1.0
From:CMECFinnd@innd.uscourts.gov
To:CMECFinnd@localhost.localdomain
Bcc:
--Case Participants: Bryan M Truitt (bryan@tblawyers.com, sherrie@tblawyers.com), David J
Nozick - AUSA (david.nozick@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov,
susan.devries@usdoj.gov, usainn.ecfcivil@usdoj.gov), Kurt R Earnst (kre@braje-nelson.com),
Paul Jeffrey Schlesinger (pjeffslaw@aol.com), Pablo DeCastro
(pdecastro@attorneydecastro.com, ysierra@rascia-decastro.com), Sheldon B Nagelberg
(sbnagelberglaw@att.net), Thomas W Vanes (b.lynneadams@yahoo.com,
tom.vanes@sbcglobal.net), Richard C Wolter (b.lynneadams@yahoo.com), John T Theis
(theislaw@aol.com), Adam Tavitas (adtavitas@aol.com, b.lynneadams@yahoo.com), Dean R
Lanter - AUSA (dean.lanter@usdoj.gov, janet.eisenmann@usdoj.gov,
usainn.ecfcivil@usdoj.gov), John E Martin - FCD (john_martin@fd.org), Scott L King
(dwilliams@scottkinggroup.com, sking@scottkinggroup.com), Mark A Psimos
(psimoslaw@airbaud.net), Matthew N Fech (mnf@fech-law.com), Ihor Alexander Woloshansky
(ihorlawyer@hotmail.com), James N Thiros (jim@thiros.com, lynn@thiros.com), Robert L
Rascia (rrascia@rascia-decastro.com, ysierra@rascia-decastro.com), Arlington J Foley
(arlingtonfoley@att.net), Roxanne Mendez Johnson (attorneyrmj@gmail.com), Visvaldis P
Kupsis (vpkupsis@hotmail.com), Stephen Edward Scheele (pkd@gk4law.com, ses@gk4law.com),
Jack Friedlander (jack@jackfriedlander.com, office@jackfriedlander.com), Bruce R Hegyi -
AUSA (bruce.hegyi@usdoj.gov), R Brian Woodward (carolb@wbbklaw.com,
rbwoodward@wbbklaw.com), John Maksimovich (criminallaw@johnmaksimovich.com), David E
Vandercoy (david.vandercoy@valpo.edu), Magistrate Judge Andrew P Rodovich
(rodovich_chambers@innd.uscourts.gov, ruth_nagy@innd.uscourts.gov), Chief Judge Philip P
Simon (denise_woodside@innd.uscourts.gov, jacob_hamann@innd.uscourts.gov,
lauren_schwartz@innd.uscourts.gov, mira_serrill-robins@innd.uscourts.gov,
noel_collins@innd.uscourts.gov, philip_simon@innd.uscourts.gov)
--Non Case Participants: Matthew D Soliday (office@matthewsolidaylaw.com)
--No Notice Sent:

Message-Id:2714450@innd.uscourts.gov
Subject:Activity in Case 2:11-cr-00077-PPS-APR United States of America v. Briseno et al
Jury Trial
Content-Type: text/html
```

### U.S. District Court Northern District of Indiana [LIVE]

### USDC Northern Indiana

## Notice of Electronic Filing

The following transaction was entered on 2/24/2015 at 5:25 PM EST and filed on 2/24/2015

| | |
|---|---|
| **Case Name:** | United States of America v. Briseno et al |
| **Case Number:** | 2:11-cr-00077-PPS-APR |
| **Filer:** | |
| **Document Number:** | 1457(No document attached) |

**Docket Text:**

**JURY TRIAL (12TH DAY OF EVIDENCE) as to Juan Briseno held on 2/24/2015 before Chief Judge Philip P Simon. Parties present as previously noted. Defendant begins presentation of evidence. Stipulation (re: hair sample). Oral Motion for Judgment of Acquital by defense. Response from Govt as to the oral Motion for Judgment of Acquital. Ruling by Court – Court GRANTS Motion for Judgment of Acquital as to Counts 25 and 26 of Indictment as to Juan Briseno, the Motion for Judgment of Acquital on all other counts are DENIED. Discussion/argument on one defense witness. Court hears the testimony of this witness**

2858

**outside the presence of the jury. The testimony will be allowed, Govt does not object. Dft continues to present evidence. Jury excused and instructed to return on Wednesday, 2/25/15 at 8:00 am. Scheduling matters discussed. Court hears from SA Jason Gore after being placed under oath regarding efforts to serve subpoenas upon two witnesses for defense. Defense case to continue on 2/25/2015 at 8:30 a.m. Final Argument will be held on 2/26/2015 with each side being given three hours for closing argument. Bench warrants are issued for two defense witnesses. Defendant REMANDED to custody of US Marshal. (Court Reporter Stacy Drohosky.) (nac)**

**2:11–cr–00077–PPS–APR–1 Notice has been electronically mailed to:**

David E Vandercoy     david.vandercoy@valpo.edu

Arlington J Foley     arlingtonfoley@att.net

Mark A Psimos     psimoslaw@airbaud.net

Scott L King     sking@scottkinggroup.com, dwilliams@scottkinggroup.com

James N Thiros     jim@thiros.com, lynn@thiros.com

Thomas W Vanes     tom.vanes@sbcglobal.net, b.lynneadams@yahoo.com

Ihor Alexander Woloshansky     ihorlawyer@hotmail.com

R Brian Woodward     rbwoodward@wbbklaw.com, carolb@wbbklaw.com

John Maksimovich     criminallaw@johnmaksimovich.com

Visvaldis P Kupsis     vpkupsis@hotmail.com

Sheldon B Nagelberg     sbnagelberglaw@att.net

John E Martin – FCD     john_martin@fd.org

Adam Tavitas     Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander     jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele     ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst     kre@braje–nelson.com

Bryan M Truitt     bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis     theislaw@aol.com

Robert L Rascia     rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger     pjeffslaw@aol.com

Matthew N Fech    mnf@fech−law.com

Pablo DeCastro    pdecastro@attorneydecastro.com, ysierra@rascia−decastro.com

Dean R Lanter – AUSA    dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA    David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson    attorneyrmj@gmail.com

Bruce R Hegyi – AUSA    bruce.hegyi@usdoj.gov

**2:11−cr−00077−PPS−APR−1 Notice has been delivered by U.S. Mail or other means to:**

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

**FILED**

2015 JAN 22 P 1: 36

FEB 25 2015

At _____ M
ROBERT N. TRGOVICH, Clerk
U.S. DISTRICT COURT
NORTHERN DISTRICT OF INDIANA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) |
| v. | ) Case No. 2:11-cr-77 |
| JUAN BRISENO, | ) |
| Defendant. | ) |

## WRIT OF HABEAS CORPUS AD TESTIFICANDUM

TO:  Warden                                 United States Marshal
     Indiana State Prison              Northern District of Indiana
     Michigan City, Indiana         Hammond, Indiana

The court being advised that prisoner Corey Walton (DOC #219700) is a necessary witness in the trial of Juan Briseno in *United States v. Juan Briseno*, on January 12, 2015, at 8:30 a.m. (Central time), and that said prisoner is in the lawful custody and control of the Warden, Indiana State Prison, Michigan City, Indiana.

It is **ORDERED** and **ADJUDGED** that the Warden, Indiana State Prison, Michigan City, Indiana, be required and is hereby commanded to surrender the body of prisoner Corey Walton (DOC #219700) to the United States Marshal for the Northern District of Indiana, or any duly authorized deputy, or any authorized Marshal, for the purpose of producing the body of said prisoner for trial in the federal courthouse, Hammond, Indiana, on February 23, 2015, at 8:30 a.m. (Central time), so that the prisoner may be present to testify in said trial, and thereafter to be returned to the institution by the United States Marshal, or one of his duly authorized deputies, under safe and secure conduct, and have you then and there this Writ.

NO USMS #

**SO ORDERED**

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
I hereby certify that the foregoing is a
true copy of the original on file in
this court in this cause.
ROBERT N. TRGOVICH, CLERK
By: _____
Date: _____01-22-2015_____

2861

ENTERED this 22nd day of January, 2015.

/s/ Andrew P. Rodovich
United States Magistrate Judge

RECEIVED

Executed this writ by receiving custody on 2/24/15 of the within named Corey Walton
FROM ISP Michigan City and transferring the within named to Hammond Fed Building

RETURNED

Executed this writ by returning custody on 2/24/15 of the within named Corey Walton
FROM Hammond Fed and transferring the within named to ISP Michigan City

United States Marshal
By _____
Deputy

2

```
MIME-Version:1.0
From:CMECFinnd@innd.uscourts.gov
To:CMECFinnd@localhost.localdomain
Bcc:
--Case Participants: Bryan M Truitt (bryan@tblawyers.com, sherrie@tblawyers.com), David J
Nozick - AUSA (david.nozick@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov,
susan.devries@usdoj.gov, usainn.ecfcivil@usdoj.gov), Kurt R Earnst (kre@braje-nelson.com),
Paul Jeffrey Schlesinger (pjeffslaw@aol.com), Pablo DeCastro
(pdecastro@attorneydecastro.com, ysierra@rascia-decastro.com), Sheldon B Nagelberg
(sbnagelberglaw@att.net), Thomas W Vanes (b.lynneadams@yahoo.com,
tom.vanes@sbcglobal.net), Richard C Wolter (b.lynneadams@yahoo.com), John T Theis
(theislaw@aol.com), Adam Tavitas (adtavitas@aol.com, b.lynneadams@yahoo.com), John E
Martin - FCD (john_martin@fd.org), Scott L King (dwilliams@scottkinggroup.com,
sking@scottkinggroup.com), Mark A Psimos (psimoslaw@airbaud.net), Matthew N Fech
(mnf@fech-law.com), Ihor Alexander Woloshansky (ihorlawyer@hotmail.com), James N Thiros
(jim@thiros.com, lynn@thiros.com), Robert L Rascia (rrascia@rascia-decastro.com,
ysierra@rascia-decastro.com), Arlington J Foley (arlingtonfoley@att.net), Roxanne Mendez
Johnson (attorneyrmj@gmail.com), Visvaldis P Kupsis (vpkupsis@hotmail.com), Stephen Edward
Scheele (pkd@gk4law.com, ses@gk4law.com), Jack Friedlander (jack@jackfriedlander.com,
office@jackfriedlander.com), Bruce R Hegyi - AUSA (bruce.hegyi@usdoj.gov), R Brian
Woodward (carolb@wbbklaw.com, rbwoodward@wbbklaw.com), John Maksimovich
(criminallaw@johnmaksimovich.com), David E Vandercoy (david.vandercoy@valpo.edu), Dean R
Lanter - AUSA (dean.lanter@usdoj.gov, janet.eisenmann@usdoj.gov,
usainn.ecfcivil@usdoj.gov), Magistrate Judge Andrew P Rodovich
(rodovich_chambers@innd.uscourts.gov, ruth_nagy@innd.uscourts.gov), Chief Judge Philip P
Simon (denise_woodside@innd.uscourts.gov, jacob_hamann@innd.uscourts.gov,
lauren_schwartz@innd.uscourts.gov, mira_serrill-robins@innd.uscourts.gov,
noel_collins@innd.uscourts.gov, philip_simon@innd.uscourts.gov)
--Non Case Participants: Matthew D Soliday (office@matthewsolidaylaw.com)
--No Notice Sent:

Message-Id:2715309@innd.uscourts.gov
Subject:Activity in Case 2:11-cr-00077-PPS-APR United States of America v. Briseno et al
Jury Trial
Content-Type: text/html
```

### U.S. District Court Northern District of Indiana [LIVE]

### USDC Northern Indiana

**Notice of Electronic Filing**

The following transaction was entered on 2/25/2015 at 5:18 PM EST and filed on 2/25/2015

| | |
|---|---|
| **Case Name:** | United States of America v. Briseno et al |
| **Case Number:** | 2:11-cr-00077-PPS-APR |
| **Filer:** | |
| **Document Number:** | 1465(No document attached) |

**Docket Text:**

**JURY TRIAL (13TH DAY OF EVIDENCE) as to Juan Briseno held on 2/25/2015 before Chief Judge Philip P Simon. Parties present as previously noted. Defense continues to present evidence, concludes and rests. Dft sworn regarding dft's right not to testify, the dft informs the Court that he does not wish to testify. Govt presents rebuttal evidence and then rests. No sur-rebuttal evidence by dft, defense rests. Jury excused with overnight instruction and instructed to return on Thursday, 2/26/2015 at 8:30 a.m. for final argument, court's instruction on the law and deliberation. Defense renews Rule 29 Motion after conclusion of**

**rebuttal evidence–DENIED. Argument heard on Motion [1420]–DENIED. Discussion on penalty phase (if required) related to the number of witnesses per victim that can be called. Court: no specific number but reasonable related to the circumstances. Govt shall provide to the Court a list of witnesses to be called in the penalty phase (if required) by end of day 2/27/15. Instructon Conference held – dft waives his appearance at the Instruction Conference. (Present at Instruction Conference: David Nozick, AUSA, Arlington Foley and John Maksimovich). Defendant REMANDED to custody of US Marshal. (Court Reporter: Stacy Drohosky (am) and Richard Ehrlich (pm).) (nac)**

**2:11–cr–00077–PPS–APR–1 Notice has been electronically mailed to:**

David E Vandercoy    david.vandercoy@valpo.edu

Arlington J Foley    arlingtonfoley@att.net

Mark A Psimos    psimoslaw@airbaud.net

Scott L King    sking@scottkinggroup.com, dwilliams@scottkinggroup.com

James N Thiros    jim@thiros.com, lynn@thiros.com

Thomas W Vanes    tom.vanes@sbcglobal.net, b.lynneadams@yahoo.com

Ihor Alexander Woloshansky    ihorlawyer@hotmail.com

R Brian Woodward    rbwoodward@wbbklaw.com, carolb@wbbklaw.com

John Maksimovich    criminallaw@johnmaksimovich.com

Visvaldis P Kupsis    vpkupsis@hotmail.com

Sheldon B Nagelberg    sbnagelberglaw@att.net

John E Martin – FCD    john_martin@fd.org

Adam Tavitas    Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander    jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele    ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst    kre@braje–nelson.com

Bryan M Truitt    bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis    theislaw@aol.com

Robert L Rascia    rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger    pjeffslaw@aol.com

2864

Matthew N Fech    mnf@fech–law.com

Pablo DeCastro    pdecastro@attorneydecastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA    dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA    David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson    attorneyrmj@gmail.com

Bruce R Hegyi – AUSA    bruce.hegyi@usdoj.gov

**2:11–cr–00077–PPS–APR–1 Notice has been delivered by U.S. Mail or other means to:**

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
### HAMMOND DIVISION

UNITED STATES OF AMERICA,       )
                                )
          Plaintiff,            )
                                )
     v.                         )       NO. 2:11CR77 PPS/APR
                                )
JUAN BRISENO,                   )
                                )
          Defendant.            )

## ORDER

Both parties have rested in the ongoing trial of defendant Juan Briseno on

charges of conspiracy to participate in racketeering activity, six murders in aid of

racketeering activity, as well as other charges. In preparation for a penalty phase of the

trial, in the event Briseno is found guilty on one or more capital counts, the government

has filed a motion seeking an order requiring Briseno to "participate in an inspection

and viewing of his person for the purposes of identifying and photographing any and

all tattoos on his person." [DE 1420 at 1.]  The government represents — though

without any supporting evidence in the form of affidavits or otherwise — that two

individuals who were jailed with Briseno have reported that among tattoos Briseno has

received while incarcerated is "at least one tattoo that states 'FUCK THE FEDS,' or

words to that effect."  *Id.* at 3.  Evidence of post-arrest tattoos reflecting gang affiliation

or "*defiant, confrontational* and/or *anti-social*" declarations are, in the government's view,

relevant in the penalty phase to the aggravating factors of lack of remorse, low

probability of rehabilitation and future dangerousness.  *Id.* at 4.

The Fifth Amendment right against self- incrimination bars "compelled incriminating communications...that are 'testimonial' in character." *United States v. Hubbell*, 530 U.S. 27, 34 (2000). "In other words, to qualify for Fifth Amendment protection, a communication must be (1) testimonial, (2) incriminating, and (3) compelled." *United States v. Greer*, 631 F.3d 608, 612 (2nd Cir. 2011). A tattoo is not testimonial where its function in a case is merely as a physical attribute (akin to a handwriting exemplar), because "an identifying physical characteristic" is outside the protection of the Fifth Amendment privilege against self- incrimination. *Gilbert v. California*, 388 U.S. 263, 267 (1967); *Greer* 631 F.3d at 612 ["For that reason, the Fifth Amendment is not offended where a witness relies on a tattoo to identify a defendant."].

Compelling the "production" of tattoos, *i.e.* compelling their disclosure to be photographed, would not bring the Fifth Amendment into play where there is "[n]o claim...that the content of the exemplars was testimonial or communicative matter." *Gilbert*, 388 U.S. at 267. But here the government seeks to rely on the content (and its interpretation of the content) of what is written in Briseno's tattoos, to incriminate Briseno with various aggravating factors militating in favor of a death sentence. Such use of the tattoos gives them a testimonial nature.

Even so, the tattoos themselves (as distinct from their production for photographing) were certainly not compelled by the government. In *Greer*, analogizing to the IRS's compulsory production of a taxpayer's voluntarily prepared (but

2

2867

incriminating) documents, the Second Circuit concluded that a compelled revelation of an incriminating tattoo that the bearer voluntarily obtained "would still not amount to compulsion for Fifth Amendment purposes." *Id.*, 631 F.3d at 613, citing *Fisher v. United States*, 425 U.S. 391, 410 (1976). Following this reasoning, the Second Circuit affirmed the denial of habeas relief to Christopher Slavin, against whom the prosecution used the content of white supremacist tattoos to establish motive and intent: "Even assuming that the prosecution's use of the tattoo evidence was testimonial in nature, however, '[t]he tattoo[s]…w[ere] not compelled by the government.'" *Slavin v. Artus*, 413 Fed.Appx. 380, 382 (2nd Cir. 2011), citing *Greer*, 631 F.3d at 613.

The Fourth Circuit in *United States v. Toliver*, 387 Fed.Appx. 406, 417 (4th Cir. 2010), similarly ruled that Toliver's tattoos, admitted as substantive evidence and not merely for identification purposes, were a "physical trait, similar to his voice or handwriting, and therefore do not constitute testimony within the meaning of the Fifth Amendment." The court rejected Toliver's claim that compelling him to be photographed violated his Fifth Amendment privilege against self-incrimination. *Id*. at 417-18.

The case law does not support any claim that the Fifth Amendment bars the relief the government seeks. Briseno may have drawn the same conclusion, because his response to the motion does not invoke the Fifth Amendment, but instead the First and the Fourth Amendments.

3

The First Amendment claim is a nonstarter.  It is true that the First Amendment forbids the uncabined reliance on a defendant's abstract beliefs at sentencing. *United States v. Dawson*, 503 U.S. 159 (1992).  In *Dawson,* the Supreme Court held that evidence of the defendant's association with the Aryan Brotherhood and tattoos reflecting that association were wrongly admitted in the penalty phase as unmoored "character" evidence that had no relevance to any issues in the case, such as to the crime itself or any aggravating or mitigating factor.  *Id.* at 166.  But *Dawson* goes on to say that such evidence could have been properly admitted if it was shown to be relevant to other issues, such as "whether the defendant will be dangerous in the future" or other aggravating factors, or to rebut any mitigating evidence.  *Id.* at 166-67.

*Kapadia v. Tally*, 229 F.3d 641 (7th Cir. 2000), was a habeas case in which the petitioner had been convicted of the burglary and arson of a Jewish community center. The Seventh Circuit considered the constitutionality of the sentencing judge's enhancement of the petitioner's sentence based on his anti-Semitic remarks in court. Reviewing  *Dawson* and other Supreme Court decisions in *Barclay v. Florida*, 463 U.S. 939 (1983), and *Wisconsin v. Mitchell*, 508 U.S. 476 (1993), the Seventh Circuit held that "[t]he First Amendment does not bar consideration of these statements at sentencing when they are indicative of motive and future dangerousness." *Id.* at 648.

I am not currently called upon to give an evidentiary ruling about the relevance or admissibility of particular tattoo evidence.  The motion is not an evidentiary one, and the government does not yet know the specifics of tattoos Briseno has obtained during

4

his incarceration in this case.  But the cases clearly demonstrate that if certain tattoos

have testimonial significance and are otherwise admissible relative to issues properly

before the jury — such as lack of remorse, future dangerousness or rehabilitative

potential — or are relevant to rebut mitigation offered by the defense, the First

Amendment would not bar such evidence.

I turn next to the Fourth Amendment issue of the compulsion to "produce" the

tattoos for photographing.  On this subject, Briseno suggests that "a search warrant

based on probable cause is the constitutional vehicle that must be used to search for this

tattoo."  [DE 1448 at 1.]  In a brief discussion on the record, counsel for the government

acknowledged that a search warrant was one method for obtaining the access and

photographs the government seeks, but also suggested that the disclosure could be

sought as part of discovery.  The government did not identify any rule of criminal

procedure that would authorize such an order.  And as I indicated on the record, the

government's motion made representations in support of the request, but did not

proffer any sworn statements to establish probable cause to search Briseno's person.

The Supreme Court has observed that: "[s]earch warrants are ordinarily required

for searches of dwellings, and absent an emergency, no less could be required where

intrusions into the human body are concerned."  *Schmerber v. State of California*, 384 U.S.

757, 771 (1966).  A blood sample from a person suspected of driving under the influence

of alcohol requires a search warrant, unless a recognized exception to the warrant

requirement – such as exigency – applies.  *Id.; Missouri v. McNeely*, 133 S.Ct. 1552, 1558-

59 (2013). The search the government proposes is for evidence-gathering purposes, and does not involve jail security procedures as to which different Fourth Amendment considerations might apply.

When a police officer investigating an assault ordered a suspect to remove his shirt so that a tattoo on his chest could be photographed for identification purposes, the Eighth Circuit "reach[ed] the conclusion that Officer Danner's actions were contrary to the fourth amendment," and that "a reasonable officer cognizant of clearly established law would realize that such an imposition requires a warrant." *Pace v. City of Des Moines*, 201 F.3d 1050, 1053, 1054 (8th Cir. 2000). *See also United States v. Farias-Gonzalez*, 556 F.3d 1181, 1183, 1185 (11th Cir. 2009) (in the absence of consent, investigating INS agent violated defendant's Fourth Amendment rights when agent lifted the man's shirt sleeve to look for tattoos and later asked suspect to take off his shirt and submit to photos of his tattoos).

Because I am not persuaded that the government's "motion for production" is an appropriate vehicle for obtaining an order requiring Briseno to submit to a search of his person for the purpose of photographing his tattoos, the motion will be denied. The government is free to apply for a search warrant for the same purpose, or invoke any other procedural means of which it is aware in an effort to seek the same relief in a manner that takes the Fourth Amendment implications appropriately into account.

ACCORDINGLY:

6

2871

The government's "Motion for Production of Unprivileged, Non-Testimonial

Evidence" [DE 1420] is DENIED.

SO ORDERED.

ENTERED: February 26, 2015.

           /s/ Philip P. Simon
           PHILIP P. SIMON, CHIEF JUDGE
           UNITED STATES DISTRICT COURT

2872

THE UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, Plaintiff, | § § § § | |
| v. | § § | CAUSE NO.  2:11-CR-0077-PPS |
| JUAN BRISENO, also known as Tito, Defendant. | § § § § | |

**GOVERNMENT'S RESPONSE TO**
**DEFENDANT JUAN BRISENO'S PROPOSED MITIGATING FACTORS**

TO THE HONORABLE COURT:

COMES NOW, the United States of America, by and through the undersigned counsel,

and respectfully initially responds to that portion of defendant Juan Briseno's ("Mr. Briseno's")

"Proposed Penalty Phase Jury Instructions" ("Defendant's Filing") [DE #1442] that identifies

timely, but for the first time, the twenty-four Mitigating Factors Mr. Briseno proposes in this

capital case.  [*See* Defendant's Filing, pages 18-20] [1]

The Definition and Scope of Mitigating Factors

At the outset, it bears reciting what Mitigating Factors are only those factors specifically

identified in 18 U.S.C. Section 3592 (Statutory Mitigating Factors),[2] which can only be

---

[1]  Mr. Briseno filed his Proposed Penalty Phase Jury Instructions on that afternoon of February 23, 2015, as Mr. Briseno was beginning his Guilt Phase case-in-chief.  On February 26, 2015, the parties made their (Guilt Phase) closing arguments and the Court instructed the jury, with the jury scheduled to begin its deliberations at 8:30 am on February 27, 2015.  The Government will respond to the remaining portions of Mr. Briseno's Proposed Penalty Phase Jury Instructions as expeditiously as possible.

[2]  (1)  Impaired capacity, (2) duress, (3) minor participation, (4) equally culpable defendants, (5) no prior criminal record, (6) disturbance (severe mental or emotional), (7)  victim's consent, or

supplemented by factors that fall within the catch-all category: "Other factors *in the defendant's*

[1] background, [2] record, or [3] character or [4] *any other circumstance of the offense* that

mitigate against imposition of the death sentence." 18 U.S.C. § 3592(a)(8) (emphasis provided.)

As will be seen, some of the 24 Mitigating Factors proposed by Mr. Briseno are proper

Mitigating Factors; many of the items listed in Mr. Briseno's List are not proper Mitigation

Factors; and others might be bona fide Mitigating Factors if, but only if, Mr. Briseno presents

evidence that supports such Factors. Finally, with regard to two specific Proposed Factors, for

the reasons shown below, the Court should either eliminate one of the Proposed Factors or else

combine them into a single Factor. .

However, before turning to the specific Mitigating Factors proposed by Mr. Briseno, we

will examine general principals of law as they have developed in the arena of Mitigating Factors.

PRINCIPALS GOVERNING MITIGATION FACTORS

**The Court's Authority to Permit Consideration of Mitigation Theories is
Defined – and Limited – By Both Statutory and Constitutional Tenants**

It is well-settled that Courts do not have unlimited authority to permit theories of

mitigation. On the contrary, valid mitigators must fall within a few select, albeit broadly-

defined, categories set forth in constitutional jurisprudence and codified in the Federal Death

Penalty Act ("FDPA"). The concept of constitutionally-mandated mitigators originates in

*Woodson v. North Carolina*, 428 U.S. 280 (1976). The controlling *Woodson* opinion held North

Carolina's mandatory death-penalty statute unconstitutional because, *inter alia*, it "fail[ed] to

allow the particularized consideration of relevant aspects of the character and record of each

convicted defendant." Id. at 303. The opinion concluded that "consideration of the character and

---

(8) "other factors (in the defendant's background, record, character, or any other circumstance of
the offense that mitigate against the imposition of the death sentence."

record of the individual offender and the circumstances of the particular offense" was

"constitutionally indispensable." Id. at 304. Two years later, a plurality of four justices in

*Lockett v. Ohio*, 438 U.S. 586 (1978), addressed what they perceived as *Woodson's* lack of

specificity. The *Lockett* plurality concluded that the Eighth Amendment "require[d] that the

sentencer ... not be precluded from considering, *as a mitigating factor*, any aspect of a

defendant's character or record and any of the circumstances of the offense that the defendant

proffers as a basis for a sentence less than death." *Lockett v. Ohio*, 438 U.S. at 604 (emphasis

original). The *Lockett* plurality stressed that it did not intend to "limit[] the traditional authority

of a court to exclude, as irrelevant, evidence not bearing on the defendant's character, prior

record, or the circumstances of his offense." Id. at 604 n.12.

 *Lockett's* reasoning was adopted by the majority in *Eddings v. Oklahoma*, 455 U.S. 104

(1982). Based on *Lockett's* definition of mitigation, *Eddings* held that evidence of a defendant's

difficult family history and emotional disturbance constituted "relevant mitigating evidence." Id.

at 110 & 115. The Court has since relied upon *Lockett's* definition of mitigation in myriad cases.

*See, e.g., Abdul-Kabir v. Quarterman*, 550 U.S. 233, 247-53 (2007) (tracing the Court's repeated

reliance on the *Lockett* definition of mitigation); *Romano v. Oklahoma*, 512 U.S. 1, 7 (1994)

(reviewing essential procedures of a valid death penalty statute); *Blystone v. Pennsylvania*, 494

U.S. 299, 308 (1990) (upholding a state death penalty statute because it complied with *Lockett*);

*Penry v. Lynaugh*, 492 U.S. 302, 317 (1989) (rejecting an argument that a capital jury's

consideration of mitigation, as defined by *Lockett*, was a new requirement); *Mills v. Maryland*,

486 U.S. 367, 374 (1988) (finding the *Lockett* and *Eddings* rules well established). In short,

mitigation evidence is not "automatically relevant" and admissible simply because the defendant

wishes to present it. *Owens v. Guida*, 549 F.3d 399, 419–20 (6th Cir. 2008). Rather, relevant

mitigators militate "against sentencing [a specific] defendant to death; it is not an argument against the death penalty in general." *United States v. Johnson*, 223 F.3d 665, 675 (7th Cir.2000); *accord United States v. Caro*, 483 F.Supp.2d 513, 520 (W.D. Va. 2007); *United States v. Edelin*, 180 F.Supp.2d 73, 76 (D.D.C. 2001).

The Supreme Court's conception of mitigators – factors that rationally tend to dissuade jurors from imposing capital punishment with regard to this particular defendant – informs the meaning of the Federal Death Penalty Act ("FDPA"). In it, Congress limited non-statutory mitigators to: "Other factors in the defendant's background, record, or character or any other circumstance of the offense that mitigate against imposition of the death sentence." 18 U.S.C. § 3592(a)(8). Moreover, even if Congress had not expressly limited mitigation evidence – which it did -- this Court would presume Congress defined mitigators in step with Supreme Court authority. *Neder v. United States*, 527 U.S. 1, 21 (1999) ("It is a well-established rule of construction that where Congress uses terms that have accumulated settled meaning under . . . the common law, a court must infer, unless the statute otherwise dictates, that Congress means to incorporate the established meaning of these terms." (internal quotations omitted)).

Apart from the judicial definition of relevant mitigators, any interpretation of the FDPA is informed by the principal that capital sentencing statutes must prevent arbitrary and unpredictable administration of the death penalty. *California v. Brown*, 479 U.S. 538, 541 (1987). In fact, courts may instruct juries "not [to] be swayed by mere sentiment, conjecture, sympathy, passion, prejudice, public opinion or public feeling," cautioning them "against reliance on extraneous emotional factors." Id. at 540-41 & 543; *see also Zant v. Stephens*, 462 U.S. 862, 879 (1983) (holding that the selection of penalty should involve "an individualized determination on the basis of the character of the individual and the circumstances of the crime.") The

requirement that capital juries consider all relevant mitigating circumstances "cannot mean ... that circumstances are necessarily relevant for constitutional purposes if they have any conceivable mitigating value." *Graham v. Collins*, 506 U.S. 461, 490 (1993) (Thomas, J., conc.). Thus, courts routinely uphold the exclusion of evidence falling outside the *Lockett* definition of mitigation. *See, e.g., Beardslee v. Wood.ford*, 358 F.3d 560, 579 (9th Cir. 2004) (evidence that co-defendants received noncapital sentences); *Stanford v. Parker*, 266 F.3d 442, 461 (6th Cir. 2001) (testimony concerning the death penalty generally); *United States v. Johnson*, 223 F.3d 665, 674-75 (7th Cir. 2000) (Posner, J.) (evidence about the existence of maximum-security units in federal prisons).

Indeed, the Circuits regularly reject efforts by capital defendants to expand the concept of Mitigation Factors. *See United States v. Sampson*, 486 F.3d 13, 44-45 (1st Cir. 2007) ("This [broad view] cannot be literally true; if it were, a capital defendant would have an unrestricted license to introduce the most confusing or misleading evidence as long as it was marginally relevant. We reject so absolutist a view."); *United States v. Purkey*, 428 F.3d 738, 756 (8th Cir. 2005) ("The [FDPA] erects very low barriers to the admission of evidence at capital sentencing hearings . . . [b]ut this does not mean that the defense has carte blanche to introduce any and all evidence that it wishes."); *United States v. Mitchell*, 502 F.3d 931, 991 (9th Cir. 2007) (limiting relevant mitigating evidence); *Owens v. Guida*, 549 F.3d 399, 419-20 (6th Cir. 2008) ("Although [defendant] is right that [Supreme Court] cases permit defendant to introduce any relevant mitigating evidence, she is wrong to assume that they make all evidence automatically relevant . . . . Footnote 12 in *Lockett* explicitly stated that lower courts could continue to exclude as irrelevant evidence not bearing on the defendant's character, prior record, or the circumstances of the offense."); *United States v. Johnson*, 223 F.3d 665, 675 (7th Cir. 2000) (explaining catch-

all mitigating factor in section 18 U.S.C. 3592(a)(8) still requires that mitigating factors be "specific to the defendant" and holding defendant should not have been permitted to present conditions-of-confinement evidence as a mitigating factor).

With these principles in mind, we turn to the list of Mitigating Factors proposed by Mr. Briseno.

### THE MITIGATING FACTORS PROPOSED BY MR. BRISENO

In his recent filing, Mr. Briseno proposed the following list of twenty-two (24) Mitigating Factors:

### MITIGATING FACTORS

1.     If he is not sentenced to death, Mr. Briseno will be sentenced to lifetime imprisonment without the possibility of release.

2.     The Federal Bureau of Prisons will impose appropriate conditions of confinement and security with regard to Mr. Briseno.

3.     Mr. Briseno is the product of a childhood marked by chaos, abuse and abandonment.

4.     Growing up, Mr. Briseno lacked positive male role models in his home.

5.     His mother's poor choices in the men she brought into the family home had a negative impact on Mr. Briseno.

6.     Juan grew up in a neighborhood plagued with drugs, gangs, and violence.

7.     Juan was raised in poverty.

8.     Juan's basic needs were neglected when he was a young child.

9.     Juan's older brother was a gang member and a poor role model.

10.     Juan was recruited into the Imperial Gangsters when he was only 10 or 11.

11.      From an early age, Juan was unable to keep up with his peers in school.

12.      Juan's father abandoned the family when Juan was only 8.

2878

13.    Juan's father and his associates abused drugs and alcohol in front of the children.

14.    Juan has participated in rehabilitative programs while incarcerated.

15.    Juan donated his hair to cancer patients through "Locks of Love."

16.    Juan has a loving relationship with his nephews.

17.    If Juan were to be executed others would suffer grief and loss.

18.    Juan has made a positive adjustment to incarceration and is likely to do so in federal prison.

19.    Cooperating witnesses who have killed someone will not be sentenced to death.

20.    The six victims of the murders voluntarily chose to engage in dangerous and illegal activities, a circumstance that contributed to their deaths.

21.    Mr. Briseno always behaved respectfully in court.

22.    Mr. Briseno's life has value.

23.    There are other relevant circumstances that weigh against imposing a sentence of death.

24.    Another defendant, or defendants equally culpable in the murders, will not be punished by death.

[Defendant's Filing, pages 18-20]

As is readily seen, many of the Mitigating Factors proposed by Mr. Briseno do not, and

cannot, fall within the restrictions of the specified FDPA Statutory Mitigating Factors and they

do not fall within the catch-all Factor or "[o]ther factors *in the defendant's* [1] background, [2]

record, or [3] character or [4] *any other circumstance of the offense* that mitigate against

imposition of the death sentence."  18 U.S.C. § 3592(a)(8) (emphasis provided.)  This is certainly

2879

true with regard to:

1.  **If he is not sentenced to death, Mr. Briseno will be sentenced to lifetime imprisonment without the possibility of release.**

2.  **The Federal Bureau of Prisons will impose appropriate conditions of confinement and security with regard to Mr. Briseno.**

17.  **If Juan were to be executed others would suffer grief and loss.**

23.  **There are other relevant circumstances that weigh against imposing a sentence of death.**

Because none of these proposed Mitigating Factors qualify as Statutory Mitigators nor are they legitimately based upon *Mr. Briseno's* "[1] background, [2] record, or [3] character or [4] *any other circumstance of the offense* that mitigate against imposition of the death sentence," they are should be denied.  Moreover, as shown below, many of the proposed Mitigating Factors are regularly proposed by capital defendants and are regularly stricken, as well.

<div align="center">

The Length and Conditions of Mr. Briseno's Confinement Are
<u>Not Relevant Mitigation Factors</u>

</div>

The jury should be instructed that, if Mr. Briseno is not sentenced to death, he will receive a life sentence for his homicide crimes so that it accurately understands its role.  *United States v. Jones*, 132 F.3d 232, 246 (5th Cir. 1998) (citing *Hicks v. Oklahoma*, 447 U.S. 343, 346 (1980)).  However, because the defendant's potential life sentence does not concern his background, or character or the circumstances of his offense, it does not constitute a relevant mitigating factor. C*f. Lockett v. Ohio,* 438 U.S. 596, 604 n.12 (1978); *United States v. Bolden*, 545 F.3d 609, 627-28 (8th Cir 2008, *cert. denied*, 558 U.S. 1077 (2009) (defendant not entitled to instruction listing life sentence as a mitigating factor); *accord United States v. Caro*, 483 F. Supp. 2d 513, 520 (W.D. Va. 2007).  Indeed, the fact that Mr. Briseno's crimes have exposed him to a life sentence is, by any objective measure, extremely aggravating.  Mr. Briseno may

2880

personally view his future incarceration as a basis for sympathy, but it is intended as stigmatizing

assessment of his homicidal actions.  Because life sentences are universally considered a mark

of bad character, rather than a basis for pity, Congress established a Statutory Aggravating Factor

for defendants who had "previously been convicted of another Federal or State offense resulting

in the death of a person, for which a sentence of life imprisonment ... was authorized by statute."

18 U.S.C. § 3592(c)(3).  If a prior life sentence is aggravating, Mr. Briseno cannot explain how

the threat of a contemporaneous one might be mitigating, except as a basis for inappropriate

sentiment.  *See California v. Brown*, 479 U.S. 538, 541 (1987).

Similarly, the conditions of Mr. Briseno's prospective confinement in federal prison

(Proposed Mitigation Factor #2), is not a valid Mitigating Factor.  In *United States v. Johnson*,

223 F.3d 665 (7th Cir. 2000), Judge Posner held:

> A mitigating factor is a factor arguing against sentencing *this* defendant to death;
> it is not an argument against the death penalty in general. *See Penry v. Lynaugh*,
> 492 U.S. 302, 328 (1989); *Eddings v. Oklahoma*, 455 U.S. 104, 110 (1982);
> *Lockett v. Ohio*, 438 U.S. 586, 604 n.12 (1978) (plurality opinion).  The argument
> that life in prison without parole, especially if it is spent in the prison's control unit
> and thus in an approximation to solitary confinement, sufficiently achieves the
> objectives aimed at by the death penalty to make the latter otiose is an argument
> addressed to legislatures, not to a jury.

223 F.3d 674-75.

Accordingly, the Court should reject Mr. Briseno's proposed life-imprisonment-based

Mitigating Factors.

<u>Proposed Mitigating Factor #17 (Execution Impact)</u>

**17.       If Juan were to be executed others would suffer grief and loss.**

Because any grief that might be visited on others because of the execution of Mr. Briseno

is not a Statutory Mitigating Factor and does not constitute evidence of Mr. Briseno's

"background, record, or character or any other circumstance of the offense," it is not an

2881

appropriate Mitigating Factor. Such "execution impact" testimony was specifically disallowed

in a federal death penalty case. *See United States v. Taylor*, 583 F. Supp.2d 923, 944-45 (E.D.

Tenn. 2008) (denying motion for acquittal where defense witness was not permitted to testify

how her life would be impacted if the defendant were sentenced to death or executed).

> The *Taylor* Court held:
>
> [W]hile the FDPA specifically provides for victim impact evidence, 18 U.S.C. §
> 3593(a), there is no parallel provision allowing for execution impact evidence.
> Asking the jury to sentence a defendant to life is not mitigating evidence. United
> States v. Mitchell, 502 F.3d 931, 991 (9th Cir. 2007) (approving of district court
> not allowing witnesses to offer opinions on what the jury's verdict should be);
> United States v. Caro, 461 F. Supp. 2d 459, 465 (W.D. Va. 2006) ("[A]n express
> plea for mercy to the jury from a defendant's witness is not mitigating evidence
> that could aid the jury in their decision making.").

Id. at 944. In *Lujan*, *supra*, Judge Brack applied similar reasoning to preclude execution impact

testimony. [*United States v. Lujan*, Case No. 05-CR-924, Doc. 782 at 6]

Additionally, at least two federal Circuits conducting habeas review of state death

sentences have concluded that federal law does not require admission of execution impact

testimony. *See United States v. Snarr*, 704 F.3d 368, 402 (5th Cir. 2013); *Stenson v. Lambert*, 504

F.3d 873, 892 (9th Cir. 2007); *Jackson v. Dretke*, 450 F.3d 614, 617-18 (5th Cir. 2006).

A decision from the Western District of North Carolina excluding execution

impact testimony in the *United States v. Umana* is instructive:

> In the instant motion, the defendant argues that a mitigating factor directing the jury to
> consider execution impact evidence should have been allowed as relevant to the
> defendant's character and background. A few federal courts have held that execution
> impact evidence is a valid mitigating factor under this theory. *See United States v.*
> *Wilson*, 493 F. Supp.2d 491 (E.D.N.Y. 2007); *United States v. Fell*, No. 2:01 cr 12-01,
> 2005 WL 1634067 (D. Vt. July 5, 2005). However, these decisions are not controlling
> within the Fourth Circuit, and the Court finds their reasoning unpersuasive. Permitting a
> capital defendant to argue execution impact as a mitigating factor would run contrary to
> the principles underpinning *Payne* where the Supreme Court overruled in part *Booth v.*
> *Maryland*, 482 U.S. 496 (1987), and *South Carolina v. Gathers*, 490 U.S. 805 (1989), to
> allow the admission of victim impact evidence as an aggravating factor. However, *Payne*

reaffirmed *Booth* and *Gathers* to the extent they prohibit victim impact testimony that advocates for a sentence of death. 501 U.S. at 830, n.2. Applying these principles to mitigating evidence, a logical extension of *Payne* would allow family of the defendant to testify about his life and characteristics, but prohibit them from specifically advocating against the death penalty or its impact on their lives. *See United States v. Taylor*, 483 F. Supp.2d 923, 944 (E.D. Tenn. 2008) (citing *Payne*, 501 U.S. at 827 ("The parallel between defendant and victim supports prohibiting witnesses from opining on their desired sentence, regardless of their preference."). That is exactly what occurred in this case.

*United States v. Umana*, 2010 WL 3023498, *15 (W.D.N.C. July 27, 2010).

In addition to the fact that execution impact testimony is irrelevant, there are other problems posed by such testimony. First, the testimony would be speculative, inquiring about the effect a future event would have on a witness's life. *See Taylor*, 583 F. Supp. 2d at 944 (distinguishing victim impact testimony, which focuses on the actual effect the victim's death has had on a witness, from execution impact testimony, which would focus on the speculative effect the defendant's death would have on a witness in the future). Any speculation evidence is not relevant.

Second, permitting execution impact testimony would be unfair to the Government, the victims, and the victims' loved ones. *See Taylor*, 583 F. Supp. 2d at 944-45. In presenting victim impact testimony, the government is limited to presenting testimony regarding the effect the loss of the victim has had on the witness's life. *See Payne v. Tennessee*, 501 U.S. 808, 827 (1991). The victim impact witness is not permitted to opine regarding the defendant, the circumstances of the offense, or the desired sentence. *See Booth v. Maryland*, 482 U.S. 496, 509 (1987) *overruled on other grounds*, *Payne*, 501 U.S. 808, 827; *Welch v. Workman*, 639 F.3d 980, 1002 (10th Cir. 2011). This evidence is relevant to the jury in assessing the moral culpability and blameworthiness of the defendant and is "fundamentally different" than execution impact

2883

evidence, which is irrelevant to culpability. *Snarr v. United States*, 704 F.3d 368, 402 (5th Cir.

2013), *cert. denied*, ___ U.S. ___, 134 S.Ct. 1274 (2014).. Execution impact testimony

boils down to a plea for sympathy and mercy. Just as victim impact witnesses are not permitted

to cry out for death, execution impact witnesses should not be allowed to cry out for life. Judge

Brack prohibited execution impact testimony for that very reason in *Lujan*.

As a result, the Court should reject Proposed Mitigation Factor # 17.

<p align="center">Proposed Mitigating Factor #22 (Life Has Value)</p>

**22.      Mr. Briseno's life has value.**

Plainly, this proposed Mitigating Factor does not qualify under any Statutory Mitigation

Factor nor under the Catch-all Factor.  Every life has value.  Therefore it does not educate the

jury as to any unique or individualized factor about *this defendant* that makes him or his situation

unique. Indeed, because it applies to ever life and every potential capital defendant this proposed

Factor is really nothing more than an attack on the death penalty itself, which is impermissible.

*See, e.g., United States v. Johnson*, 223 F.3d 665, 675 (7th Cir. 2000), *cert. denied*, 534 U.S. 122

(2001) (Posner, J) ("A mitigating factor is a factor arguing against sentencing *this* defendant to

death; it is not an argument against the death penalty in general." (emphasis original)).

Hence, Mr. Briseno's proposed Mitigating Factor #22 should be rejected.

Proposed Mitigating Factors 19 and 24 (Murders By Cooperating
Witnesses/Defendants Not Facing Death Penalty)

19.    **Cooperating witnesses who have killed someone will not be sentenced to
death.**

24.    **Another defendant, or defendants equally culpable in the murders, will not
be punished by death.**

Statutory Mitigating Factor (4) provides:  "Equally culpable defendants.—Another

defendant or defendants, equally culpable *in the crime*, will not be punished by death."

(Emphasis provided.)  In this case, it is true that various cooperating witnesses committed (or

participated in) some of the six murders committed by Mr. Briseno.  For instance, Galo Feliciano

(cooperator) and Robert Lockhart (non-cooperator) participated with Mr. Briseno in the murder

of Miguel Colon.  Additionally, Vincent Garza (cooperator) participated with Mr. Briseno in the

murders of Miguel Mejias and Michael Sessum.  Moreover, David Almaraz (cooperator)

participated with Mr. Briseno in the Luis Ortiz murder.  However, the Government is not aware

of any cooperating witness who was both (i) not a defendant and (ii) killed someone.

If the Government's recollection is correct, then either Proposed Mitigating Factor #19

should be eliminated or else Factors 19 and 24 should be combined into a single appropriate

Mitigating Factor.  *See, e.g., United States v. Wilson*, 2013 WL 3057704 (E.D.N.Y. 2013)

(appropriate to combine proposed Mitigation Factors); *United States v. Beckford*, 962 F Supp

804, 827 (E.D. Va. 1997) (same).

2885

Proposed Mitigating Factors 3-13 (Defendant's Upbringing – Generally Appropriate)

3.  **Mr. Briseno is the product of a childhood marked by chaos, abuse and abandonment.**

4.  **Growing up, Mr. Briseno lacked positive male role models in his home.**

5.  **His mother's poor choices in the men she brought into the family home had a negative impact on Mr. Briseno.**

6.  **Juan grew up in a neighborhood plagued with drugs, gangs, and violence.**

7.  **Juan was raised in poverty.**

8.  **Juan's basic needs were neglected when he was a young child.**

9.  **Juan's older brother was a gang member and a poor role model.**

10.  **Juan was recruited into the Imperial Gangsters when he was only 10 or 11.**

11.  **From an early age, Juan was unable to keep up with his peers in school.**

12.  **Juan's father abandoned the family when Juan was only 8.**

13.  **Juan's father and his associates abused drugs and alcohol in front of the children.**

If these proposed Mitigating Factors are supported by evidence in the record, then they are appropriate, because they relate to the defendant's "background, record, or character." However, with the exception of Proposed Mitigating Factor #6 (Mr. Briseno was raised in neighborhood plagued with drugs, gangs, and violence), the current record does not support the proposed Factors. Indeed, with regard to Proposed Factor #10 ("Juan was recruited into the Imperial Gangsters when he was only 10 or 11"), the current state of the record is to the contrary. At present, the evidence establishes that Mr. Briseno's older brother, Guillermo (Memo) Briseno actively discouraged Mr. Briseno's membership in the Imperial Gangsters and that Guillermo Briseno, who was a leader of the 149th Street Imperial Gangsters, only relented when Mr. Briseno affirmatively sought out the 139th Street Imperial Gangsters.  Thereafter, Mr. Briseno

2886

was reluctantly permitted to join the 149th Street Imperial Gangsters when he was 18 years old

(on the same day that Alejandro (Jackie Chan) Lara joined.)

As a result, unless at the conclusion of the Penalty Phase there is evidence to support

Proposed Factors 3-5 and 7-13, any unsupported Proposed Factors should be rejected.

**Conclusion**

For each of the independent reasons set forth, the Government has not objection to the

majority of Mr. Briseno's Proposed Mitigation Factors – provided he adduces evidence thereof

in these proceedings, but it does urge the Court to reject or combine other Proposed Mitigation

Factors, as more specifically set forth above.

Respectfully submitted,

DAVID CAPP
UNITED STATES ATTORNEY

s/ *David J. Nozick*

David J. Nozick
Assistant U.S. Attorney
5400 Federal Plaza
Suite 1500
Hammond, IN 46320
Tel. (219) 937-5655
www.david.nozick@usdoj.gov

s/ *Bruce R. Hegyi*

Bruce R. Hegyi
Trial Attorney
Capital Case Section
Criminal Division
United States Department of Justice
1331 F Street, N.W., Third Floor
Washington, D.C. 20530
Tel. (202) 616-4582
Cell (703) 536-4774
www.bruce.hegyi@usdoj.gov

2887

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this date, I electronically filed the foregoing document and

accompanying exhibits with the Clerk of the Court using the CM/ECF system which will send

notification of such filing to all counsel of record for defendant Juan Briseno.


s/ *Bruce R. Hegyi*

Bruce R. Hegyi
Trial Attorney

```
MIME-Version:1.0
From:CMECFinnd@innd.uscourts.gov
To:CMECFinnd@localhost.localdomain
Bcc:
--Case Participants: Bryan M Truitt (bryan@tblawyers.com, sherrie@tblawyers.com), David J
Nozick - AUSA (david.nozick@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov,
susan.devries@usdoj.gov, usainn.ecfcivil@usdoj.gov), Kurt R Earnst (kre@braje-nelson.com),
Paul Jeffrey Schlesinger (pjeffslaw@aol.com), Pablo DeCastro
(pdecastro@attorneydecastro.com, ysierra@rascia-decastro.com), Sheldon B Nagelberg
(sbnagelberglaw@att.net), Thomas W Vanes (b.lynneadams@yahoo.com,
tom.vanes@sbcglobal.net), Richard C Wolter (b.lynneadams@yahoo.com), John T Theis
(theislaw@aol.com), Adam Tavitas (adtavitas@aol.com, b.lynneadams@yahoo.com), Dean R
Lanter - AUSA (dean.lanter@usdoj.gov, janet.eisenmann@usdoj.gov,
usainn.ecfcivil@usdoj.gov), John E Martin - FCD (john_martin@fd.org), Scott L King
(dwilliams@scottkinggroup.com, sking@scottkinggroup.com), Mark A Psimos
(psimoslaw@airbaud.net), Matthew N Fech (mnf@fech-law.com), Ihor Alexander Woloshansky
(ihorlawyer@hotmail.com), James N Thiros (jim@thiros.com, lynn@thiros.com), Robert L
Rascia (rrascia@rascia-decastro.com, ysierra@rascia-decastro.com), Arlington J Foley
(arlingtonfoley@att.net), Roxanne Mendez Johnson (attorneyrmj@gmail.com), Visvaldis P
Kupsis (vpkupsis@hotmail.com), Stephen Edward Scheele (pkd@gk4law.com, ses@gk4law.com),
Jack Friedlander (jack@jackfriedlander.com, office@jackfriedlander.com), Bruce R Hegyi -
AUSA (bruce.hegyi@usdoj.gov), R Brian Woodward (carolb@wbbklaw.com,
rbwoodward@wbbklaw.com), John Maksimovich (criminallaw@johnmaksimovich.com), David E
Vandercoy (david.vandercoy@valpo.edu), Magistrate Judge Andrew P Rodovich
(rodovich_chambers@innd.uscourts.gov, ruth_nagy@innd.uscourts.gov), Chief Judge Philip P
Simon (denise_woodside@innd.uscourts.gov, jacob_hamann@innd.uscourts.gov,
lauren_schwartz@innd.uscourts.gov, mira_serrill-robins@innd.uscourts.gov,
noel_collins@innd.uscourts.gov, philip_simon@innd.uscourts.gov)
--Non Case Participants: Matthew D Soliday (office@matthewsolidaylaw.com)
--No Notice Sent:

Message-Id:2717050@innd.uscourts.gov
Subject:Activity in Case 2:11-cr-00077-PPS-APR United States of America v. Briseno et al
Jury Trial
```
Content–Type: text/html

## U.S. District Court Northern District of Indiana [LIVE]

### USDC Northern Indiana

## Notice of Electronic Filing

The following transaction was entered on 2/27/2015 at 3:50 PM EST and filed on 2/26/2015

| | |
|---|---|
| **Case Name:** | United States of America v. Briseno et al |
| **Case Number:** | 2:11–cr–00077–PPS–APR |
| **Filer:** | |
| **Document Number:** | 1473(No document attached) |

**Docket Text:**

**JURY TRIAL (14th DAY – Final Argument and Instructions) as to Juan Briseno held on 2/26/2015 before Chief Judge Philip P Simon. Parties present as previously noted. Final Arguments presented. Jury instructed as to the law on this case. Court security officers sworn to take charge of jury. Jurors 1–12 exit courtriin to begin deliberation once they receive all the evidence. Court provides instructions to alternate jurors, after consultation with counsel the court excuses alternate juror #5, juror #149. alternate jurors 1–4 are instructed that they will be advised this weekend by the court if they need to return to the**

**courthouse on Monday, March 2, 2015 for the penalty phase of the case. Note from jury received requesting to deliberate until 7:00 p.m. Court excuses deliberating jurors earlier due to weather conditions. Jurors instructed to return by 8:30 a.m. on Friday, 2/27/2015 for deliberation. Once all jurors are present, they may commence their deliberation. Defendant REMANDED to custody of US Marshal. (Court Reporter Richard Ehrlich (am) and Stacy Drohosky (pm).) (nac)**

**2:11–cr–00077–PPS–APR–1 Notice has been electronically mailed to:**

David E Vandercoy    david.vandercoy@valpo.edu

Arlington J Foley    arlingtonfoley@att.net

Mark A Psimos    psimoslaw@airbaud.net

Scott L King    sking@scottkinggroup.com, dwilliams@scottkinggroup.com

James N Thiros    jim@thiros.com, lynn@thiros.com

Thomas W Vanes    tom.vanes@sbcglobal.net, b.lynneadams@yahoo.com

Ihor Alexander Woloshansky    ihorlawyer@hotmail.com

R Brian Woodward    rbwoodward@wbbklaw.com, carolb@wbbklaw.com

John Maksimovich    criminallaw@johnmaksimovich.com

Visvaldis P Kupsis    vpkupsis@hotmail.com

Sheldon B Nagelberg    sbnagelberglaw@att.net

John E Martin – FCD    john_martin@fd.org

Adam Tavitas    Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander    jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele    ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst    kre@braje–nelson.com

Bryan M Truitt    bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis    theislaw@aol.com

Robert L Rascia    rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger    pjeffslaw@aol.com

Matthew N Fech    mnf@fech–law.com

Pablo DeCastro    pdecastro@attorneydecastro.com, ysierra@rascia−decastro.com

Dean R Lanter − AUSA    dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick − AUSA    David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson    attorneyrmj@gmail.com

Bruce R Hegyi − AUSA    bruce.hegyi@usdoj.gov

**2:11−cr−00077−PPS−APR−1 Notice has been delivered by U.S. Mail or other means to:**

THE UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff, | §<br>§<br>§<br>§ | |
| v. | §<br>§ | CAUSE NO. 2:11-CR-0077-PPS |
| JUAN BRISENO, also known as Tito,<br>Defendant. | §<br>§<br>§<br>§ | |

**GOVERNMENT'S AMENDED RESPONSE TO
DEFENDANT JUAN BRISENO'S PROPOSED MITIGATING FACTORS**

TO THE HONORABLE COURT:

COMES NOW, the United States of America, by and through the undersigned counsel,

and respectfully files this amended initial response to that portion of defendant Juan Briseno's

("Mr. Briseno's") "Proposed Penalty Phase Jury Instructions" ("Defendant's Filing") [DE

#1442] that identifies timely, but for the first time, the twenty-four Mitigating Factors Mr.

Briseno proposes in this capital case. [*See* Defendant's Filing, pages 18-20] [1]

The Definition and Scope of Mitigating Factors

At the outset, it bears reciting what Mitigating Factors are only those factors specifically

identified in 18 U.S.C. Section 3592 (Statutory Mitigating Factors),[2] which can only be

---

[1] Mr. Briseno filed his Proposed Penalty Phase Jury Instructions on that afternoon of February 23, 2015, as Mr. Briseno was beginning his Guilt Phase case-in-chief. On February 26, 2015, the parties made their (Guilt Phase) closing arguments and the Court instructed the jury, with the jury scheduled to begin its deliberations at 8:30 am on February 27, 2015. The Government will respond to the remaining portions of Mr. Briseno's Proposed Penalty Phase Jury Instructions as expeditiously as possible.

[2] (1) Impaired capacity, (2) duress, (3) minor participation, (4) equally culpable defendants, (5) no prior criminal record, (6) disturbance (severe mental or emotional), (7) victim's consent, or

supplemented by factors that fall within the catch-all category: "Other factors *in the defendant's* [1] background, [2] record, or [3] character or [4] *any other circumstance of the offense* that mitigate against imposition of the death sentence." 18 U.S.C. § 3592(a)(8) (emphasis provided.) As will be seen, some of the 24 Mitigating Factors proposed by Mr. Briseno are proper Mitigating Factors; many of the items listed in Mr. Briseno's List are not proper Mitigation Factors; and others might be bona fide Mitigating Factors if, but only if, Mr. Briseno presents evidence that supports such Factors. Finally, with regard to two specific Proposed Factors, for the reasons shown below, the Court should either eliminate one of the Proposed Factors or else combine them into a single Factor. .

However, before turning to the specific Mitigating Factors proposed by Mr. Briseno, we will examine general principals of law as they have developed in the arena of Mitigating Factors.

<u>PRINCIPALS GOVERNING MITIGATION FACTORS</u>

**The Court's Authority to Permit Consideration of Mitigation Theories is Defined – and Limited – By Both Statutory and Constitutional Tenants**

It is well-settled that Courts do not have unlimited authority to permit theories of mitigation. On the contrary, valid mitigators must fall within a few select, albeit broadly-defined, categories set forth in constitutional jurisprudence and codified in the Federal Death Penalty Act ("FDPA"). The concept of constitutionally-mandated mitigators originates in *Woodson v. North Carolina*, 428 U.S. 280 (1976). The controlling *Woodson* opinion held North Carolina's mandatory death-penalty statute unconstitutional because, *inter alia*, it "fail[ed] to allow the particularized consideration of relevant aspects of the character and record of each convicted defendant." Id. at 303. The opinion concluded that "consideration of the character and

_____

(8) "other factors (in the defendant's background, record, character, or any other circumstance of the offense that mitigate against the imposition of the death sentence."

2893

record of the individual offender and the circumstances of the particular offense" was "constitutionally indispensable." Id. at 304. Two years later, a plurality of four justices in *Lockett v. Ohio*, 438 U.S. 586 (1978), addressed what they perceived as *Woodson's* lack of specificity. The *Lockett* plurality concluded that the Eighth Amendment "require[d] that the sentencer ... not be precluded from considering, *as a mitigating factor*, any aspect of a defendant's character or record and any of the circumstances of the offense that the defendant proffers as a basis for a sentence less than death." *Lockett v. Ohio*, 438 U.S. at 604 (emphasis original). The *Lockett* plurality stressed that it did not intend to "limit[] the traditional authority of a court to exclude, as irrelevant, evidence not bearing on the defendant's character, prior record, or the circumstances of his offense." Id. at 604 n.12.

 *Lockett's* reasoning was adopted by the majority in *Eddings v. Oklahoma*, 455 U.S. 104 (1982). Based on *Lockett's* definition of mitigation, *Eddings* held that evidence of a defendant's difficult family history and emotional disturbance constituted "relevant mitigating evidence." Id. at 110 & 115. The Court has since relied upon *Lockett's* definition of mitigation in myriad cases. *See, e.g., Abdul-Kabir v. Quarterman*, 550 U.S. 233, 247-53 (2007) (tracing the Court's repeated reliance on the *Lockett* definition of mitigation); *Romano v. Oklahoma*, 512 U.S. 1, 7 (1994) (reviewing essential procedures of a valid death penalty statute); *Blystone v. Pennsylvania*, 494 U.S. 299, 308 (1990) (upholding a state death penalty statute because it complied with *Lockett*); *Penry v. Lynaugh*, 492 U.S. 302, 317 (1989) (rejecting an argument that a capital jury's consideration of mitigation, as defined by *Lockett*, was a new requirement); *Mills v. Maryland*, 486 U.S. 367, 374 (1988) (finding the *Lockett* and *Eddings* rules well established). In short, mitigation evidence is not "automatically relevant" and admissible simply because the defendant wishes to present it. *Owens v. Guida*, 549 F.3d 399, 419–20 (6th Cir. 2008). Rather, relevant

mitigators militate "against sentencing [a specific] defendant to death; it is not an argument against the death penalty in general." *United States v. Johnson*, 223 F.3d 665, 675 (7th Cir.2000); *accord United States v. Caro*, 483 F.Supp.2d 513, 520 (W.D. Va. 2007); *United States v. Edelin*, 180 F.Supp.2d 73, 76 (D.D.C. 2001).

The Supreme Court's conception of mitigators – factors that rationally tend to dissuade jurors from imposing capital punishment with regard to this particular defendant – informs the meaning of the Federal Death Penalty Act ("FDPA"). In it, Congress limited non-statutory mitigators to: "Other factors in the defendant's background, record, or character or any other circumstance of the offense that mitigate against imposition of the death sentence." 18 U.S.C. § 3592(a)(8). Moreover, even if Congress had not expressly limited mitigation evidence – which it did -- this Court would presume Congress defined mitigators in step with Supreme Court authority. *Neder v. United States*, 527 U.S. 1, 21 (1999) ("It is a well-established rule of construction that where Congress uses terms that have accumulated settled meaning under . . . the common law, a court must infer, unless the statute otherwise dictates, that Congress means to incorporate the established meaning of these terms." (internal quotations omitted)).

Apart from the judicial definition of relevant mitigators, any interpretation of the FDPA is informed by the principal that capital sentencing statutes must prevent arbitrary and unpredictable administration of the death penalty. *California v. Brown*, 479 U.S. 538, 541 (1987). In fact, courts may instruct juries "not [to] be swayed by mere sentiment, conjecture, sympathy, passion, prejudice, public opinion or public feeling," cautioning them "against reliance on extraneous emotional factors." Id. at 540-41 & 543; *see also Zant v. Stephens*, 462 U.S. 862, 879 (1983) (holding that the selection of penalty should involve "an individualized determination on the basis of the character of the individual and the circumstances of the crime.") The

requirement that capital juries consider all relevant mitigating circumstances "cannot mean ... that circumstances are necessarily relevant for constitutional purposes if they have any conceivable mitigating value." *Graham v. Collins*, 506 U.S. 461, 490 (1993) (Thomas, J., conc.). Thus, courts routinely uphold the exclusion of evidence falling outside the *Lockett* definition of mitigation. *See, e.g., Beardslee v. Wood.ford*, 358 F.3d 560,579 (9th Cir. 2004) (evidence that co-defendants received noncapital sentences); *Stanford v. Parker*, 266 F.3d 442, 461 (6th Cir. 2001) (testimony concerning the death penalty generally); *United States v. Johnson*, 223 F.3d 665, 674-75 (7th Cir. 2000) (Posner, J.) (evidence about the existence of maximum-security units in federal prisons).

Indeed, the Circuits regularly reject efforts by capital defendants to expand the concept of Mitigation Factors. *See United States v. Sampson*, 486 F.3d 13, 44-45 (1st Cir. 2007) ("This [broad view] cannot be literally true; if it were, a capital defendant would have an unrestricted license to introduce the most confusing or misleading evidence as long as it was marginally relevant. We reject so absolutist a view."); *United States v. Purkey*, 428 F.3d 738, 756 (8th Cir. 2005) ("The [FDPA] erects very low barriers to the admission of evidence at capital sentencing hearings . . . [b]ut this does not mean that the defense has carte blanche to introduce any and all evidence that it wishes."); *United States v. Mitchell*, 502 F.3d 931, 991 (9th Cir. 2007) (limiting relevant mitigating evidence); *Owens v. Guida*, 549 F.3d 399, 419-20 (6th Cir. 2008) ("Although [defendant] is right that [Supreme Court] cases permit defendant to introduce any relevant mitigating evidence, she is wrong to assume that they make all evidence automatically relevant . . . . Footnote 12 in *Lockett* explicitly stated that lower courts could continue to exclude as irrelevant evidence not bearing on the defendant's character, prior record, or the circumstances of the offense."); *United States v. Johnson*, 223 F.3d 665, 675 (7th Cir. 2000) (explaining catch-

2896

all mitigating factor in section 18 U.S.C. 3592(a)(8) still requires that mitigating factors be "specific to the defendant" and holding defendant should not have been permitted to present conditions-of-confinement evidence as a mitigating factor).

With these principles in mind, we turn to the list of Mitigating Factors proposed by Mr. Briseno.

### THE MITIGATING FACTORS PROPOSED BY MR. BRISENO

In his recent filing, Mr. Briseno proposed the following list of twenty-two (24) Mitigating Factors:

### MITIGATING FACTORS

1.  If he is not sentenced to death, Mr. Briseno will be sentenced to lifetime imprisonment without the possibility of release.

2.  The Federal Bureau of Prisons will impose appropriate conditions of confinement and security with regard to Mr. Briseno.

3.  Mr. Briseno is the product of a childhood marked by chaos, abuse and abandonment.

4.  Growing up, Mr. Briseno lacked positive male role models in his home.

5.  His mother's poor choices in the men she brought into the family home had a negative impact on Mr. Briseno.

6.  Juan grew up in a neighborhood plagued with drugs, gangs, and violence.

7.  Juan was raised in poverty.

8.  Juan's basic needs were neglected when he was a young child.

9.  Juan's older brother was a gang member and a poor role model.

10. Juan was recruited into the Imperial Gangsters when he was only 10 or 11.

11.  From an early age, Juan was unable to keep up with his peers in school.

12.  Juan's father abandoned the family when Juan was only 8.

13.     Juan's father and his associates abused drugs and alcohol in front of the children.

14.     Juan has participated in rehabilitative programs while incarcerated.

15.     Juan donated his hair to cancer patients through "Locks of Love."

16.     Juan has a loving relationship with his nephews.

17.     If Juan were to be executed others would suffer grief and loss.

18.      Juan has made a positive adjustment to incarceration and is likely to do so in federal prison.

19.     Cooperating witnesses who have killed someone will not be sentenced to death.

20.     The six victims of the murders voluntarily chose to engage in dangerous and illegal activities, a circumstance that contributed to their deaths.

21.     Mr. Briseno always behaved respectfully in court.

22.      Mr. Briseno's life has value.

23.     There are other relevant circumstances that weigh against imposing a sentence of death.

24.     Another defendant, or defendants equally culpable in the murders, will not be punished by death.

[Defendant's Filing, pages 18-20]

As is readily seen, many of the Mitigating Factors proposed by Mr. Briseno do not, and

cannot, fall within the restrictions of the specified FDPA Statutory Mitigating Factors and they

do not fall within the catch-all Factor or "[o]ther factors *in the defendant's* [1] background, [2]

record, or [3] character or [4] *any other circumstance of the offense* that mitigate against

imposition of the death sentence."  18 U.S.C. § 3592(a)(8) (emphasis provided.)  This is certainly

2898

true with regard to:

1.      **If he is not sentenced to death, Mr. Briseno will be sentenced to lifetime imprisonment without the possibility of release.**

2.      **The Federal Bureau of Prisons will impose appropriate conditions of confinement and security with regard to Mr. Briseno.**

17.     **If Juan were to be executed others would suffer grief and loss.**

20.     **The six victims of the murders voluntarily chose to engage in dangerous and illegal activities, a circumstance that contributed to their deaths.**

23.     **There are other relevant circumstances that weigh against imposing a sentence of death.**

Because none of these proposed Mitigating Factors qualify as Statutory Mitigators nor are they legitimately based upon *Mr. Briseno's* "[1] background, [2] record, or [3] character or [4] *any other circumstance of the offense* that mitigate against imposition of the death sentence," they are should be denied.  Moreover, as shown below, many of the proposed Mitigating Factors are regularly proposed by capital defendants and are regularly stricken, as well.

Proposed Mitigation Factors # 1 & 2 (The Length and Conditions of Confinement)

The jury should be instructed that, if Mr. Briseno is not sentenced to death, he will receive a life sentence for his homicide crimes so that it accurately understands its role.  *United States v. Jones*, 132 F.3d 232, 246 (5th Cir. 1998) (citing *Hicks v. Oklahoma*, 447 U.S. 343, 346 (1980)).   However, because the defendant's potential life sentence does not concern his background, or character or the circumstances of his offense, it does not constitute a relevant mitigating factor. C*f. Lockett v. Ohio,* 438 U.S. 596, 604 n.12 (1978); *United States v. Bolden*, 545 F.3d 609, 627-28 (8th Cir 2008, *cert. denied*, 558 U.S. 1077 (2009) (defendant not entitled to instruction listing life sentence as a mitigating factor); *accord United States v. Caro*, 483 F. Supp. 2d 513, 520 (W.D. Va. 2007).  Indeed, the fact that Mr. Briseno's crimes have exposed

2899

him to a life sentence is, by any objective measure, extremely aggravating. Mr. Briseno may personally view his future incarceration as a basis for sympathy, but it is intended as stigmatizing assessment of his homicidal actions. Because life sentences are universally considered a mark of bad character, rather than a basis for pity, Congress established a Statutory Aggravating Factor for defendants who had "previously been convicted of another Federal or State offense resulting in the death of a person, for which a sentence of life imprisonment ... was authorized by statute." 18 U.S.C. § 3592(c)(3). If a prior life sentence is aggravating, Mr. Briseno cannot explain how the threat of a contemporaneous one might be mitigating, except as a basis for inappropriate sentiment. *See California v. Brown*, 479 U.S. 538, 541 (1987).

Similarly, the conditions of Mr. Briseno's prospective confinement in federal prison (Proposed Mitigation Factor #2), is not a valid Mitigating Factor. In *United States v. Johnson*, 223 F.3d 665 (7th Cir. 2000), Judge Posner held:

> A mitigating factor is a factor arguing against sentencing *this* defendant to death; it is not an argument against the death penalty in general. *See Penry v. Lynaugh*, 492 U.S. 302, 328 (1989); *Eddings v. Oklahoma*, 455 U.S. 104, 110 (1982); *Lockett v. Ohio*, 438 U.S. 586, 604 n.12 (1978) (plurality opinion). The argument that life in prison without parole, especially if it is spent in the prison's control unit and thus in an approximation to solitary confinement, sufficiently achieves the objectives aimed at by the death penalty to make the latter otiose is an argument addressed to legislatures, not to a jury.

223 F.3d 674-75.

Accordingly, the Court should reject Mr. Briseno's proposed life-imprisonment-based Mitigating Factors.

<u>Proposed Mitigating Factor #17 (Execution Impact)</u>

**17.     If Juan were to be executed others would suffer grief and loss.**

Because any grief that might be visited on others because of the execution of Mr. Briseno is not a Statutory Mitigating Factor and does not constitute evidence of Mr. Briseno's

"background, record, or character or any other circumstance of the offense," it is not an appropriate Mitigating Factor.  Such "execution impact" testimony was specifically disallowed in a federal death penalty case.  *See United States v. Taylor*, 583 F. Supp.2d 923, 944-45 (E.D. Tenn. 2008) (denying motion for acquittal where defense witness was not permitted to testify how her life would be impacted if the defendant were sentenced to death or executed).

The *Taylor* Court held:

> [W]hile the FDPA specifically provides for victim impact evidence, 18 U.S.C. § 3593(a), there is no parallel provision allowing for execution impact evidence. Asking the jury to sentence a defendant to life is not mitigating evidence. United States v. Mitchell, 502 F.3d 931, 991 (9th Cir. 2007) (approving of district court not allowing witnesses to offer opinions on what the jury's verdict should be); United States v. Caro, 461 F. Supp. 2d 459, 465 (W.D. Va. 2006) ("[A]n express plea for mercy to the jury from a defendant's witness is not mitigating evidence that could aid the jury in their decision making.").

Id. at 944. In *Lujan*, *supra*, Judge Brack applied similar reasoning to preclude execution impact testimony. [*United States v. Lujan*, Case No. 05-CR-924, Doc. 782 at 6]

Additionally, at least two federal Circuits conducting habeas review of state death sentences have concluded that federal law does not require admission of execution impact testimony. *See United States v. Snarr*, 704 F.3d 368, 402 (5th Cir. 2013); *Stenson v. Lambert*, 504 F.3d 873, 892 (9th Cir. 2007); *Jackson v. Dretke*, 450 F.3d 614, 617-18 (5th Cir. 2006).

A decision from the Western District of North Carolina excluding execution impact testimony in the *United States v. Umana*  is instructive:

> In the instant motion, the defendant argues that a mitigating factor directing the jury to consider execution impact evidence should have been allowed as relevant to the defendant's character and background. A few federal courts have held that execution impact evidence is a valid mitigating factor under this theory. *See United States v. Wilson*, 493 F. Supp.2d 491 (E.D.N.Y. 2007); *United States v. Fell*, No. 2:01 cr 12-01, 2005 WL 1634067 (D. Vt. July 5, 2005). However, these decisions are not controlling within the Fourth Circuit, and the Court finds their reasoning unpersuasive. Permitting a capital defendant to argue execution impact as a mitigating factor would run contrary to the principles underpinning *Payne* where the Supreme Court overruled in part *Booth v.*

*Maryland*, 482 U.S. 496 (1987), and *South Carolina v. Gathers*, 490 U.S. 805 (1989), to allow the admission of victim impact evidence as an aggravating factor. However, *Payne* reaffirmed *Booth* and *Gathers* to the extent they prohibit victim impact testimony that advocates for a sentence of death. 501 U.S. at 830, n.2. Applying these principles to mitigating evidence, a logical extension of *Payne* would allow family of the defendant to testify about his life and characteristics, but prohibit them from specifically advocating against the death penalty or its impact on their lives. *See United States v. Taylor*, 483 F. Supp.2d 923, 944 (E.D. Tenn. 2008) (citing *Payne*, 501 U.S. at 827 ("The parallel between defendant and victim supports prohibiting witnesses from opining on their desired sentence, regardless of their preference.")). That is exactly what occurred in this case.

*United States v. Umana*, 2010 WL 3023498, *15 (W.D.N.C. July 27, 2010).

In addition to the fact that execution impact testimony is irrelevant, there are other problems posed by such testimony. First, the testimony would be speculative, inquiring about the effect a future event would have on a witness's life. *See Taylor*, 583 F. Supp. 2d at 944 (distinguishing victim impact testimony, which focuses on the actual effect the victim's death has had on a witness, from execution impact testimony, which would focus on the speculative effect the defendant's death would have on a witness in the future). Any speculation evidence is not relevant.

Second, permitting execution impact testimony would be unfair to the Government, the victims, and the victims' loved ones. *See Taylor*, 583 F. Supp. 2d at 944-45. In presenting victim impact testimony, the government is limited to presenting testimony regarding the effect the loss of the victim has had on the witness's life. *See Payne v. Tennessee*, 501 U.S. 808, 827 (1991). The victim impact witness is not permitted to opine regarding the defendant, the circumstances of the offense, or the desired sentence. *See Booth v. Maryland*, 482 U.S. 496, 509 (1987) *overruled on other grounds*, *Payne*, 501 U.S. 808, 827; *Welch v. Workman*, 639 F.3d 980, 1002 (10th Cir. 2011). This evidence is relevant to the jury in assessing the moral culpability and blameworthiness of the defendant and is "fundamentally different" than execution impact

2902

evidence, which is irrelevant to culpability. *Snarr v. United States*, 704 F.3d 368, 402 (5th Cir.

2013), *cert. denied*, ___ U.S. ___, 134 S.Ct. 1274 (2014).. Execution impact testimony

boils down to a plea for sympathy and mercy. Just as victim impact witnesses are not permitted

to cry out for death, execution impact witnesses should not be allowed to cry out for life. Judge

Brack prohibited execution impact testimony for that very reason in *Lujan*.

As a result, the Court should reject Proposed Mitigation Factor # 17.

<div align="center">Proposed Mitigating Factor #20 (Victims' Conduct)</div>

**20.      The six victims of the murders voluntarily chose to engage in dangerous
       and illegal activities, a circumstance that contributed to their deaths.**

Mr. Briseno's Filing fails to identify under what theory he believes he is entitled to this

Proposed Mitigating Factor.  Statutory Mitigator (7) provides:  "**Victim's consent**.—The victim

consented to the criminal conduct that resulted in the victim's death."  Here, Mr. Briseno stalked,

hunted down and/or surprised each of his six murder victims, only one of whom (Miguel Colon)

was armed.  Thus, the "victim's consent" is not implicated.  Nor does his Proposed Factor appear

to qualify under the catch-all Factor relating to *Mr. Briseno's* "background, record, or character

or any other circumstance of the offense that mitigate against imposition of the death sentence."

As a result, the Court should reject Proposed Mitigation Factor #20.

<div align="center">Proposed Mitigating Factor #22 (Life Has Value)</div>

**22.      Mr. Briseno's life has value.**

Plainly, this proposed Mitigating Factor does not qualify under any Statutory Mitigation

Factor nor under the Catch-all Factor.  Every life has value.  Therefore it does not educate the

jury as to any unique or individualized factor about *this defendant* that makes him or his situation

unique. Indeed, because it applies to ever life and every potential capital defendant this proposed

Factor is really nothing more than an attack on the death penalty itself, which is impermissible.

*See, e.g., United States v. Johnson*, 223 F.3d 665, 675 (7th Cir. 2000), *cert. denied*, 534 U.S. 122 (2001) (Posner, J) ("A mitigating factor is a factor arguing against sentencing *this* defendant to death; it is not an argument against the death penalty in general." (emphasis original)).

Hence, Mr. Briseno's proposed Mitigating Factor #22 should be rejected.

<div align="center">

Proposed Mitigating Factors 19 and 24 (Murders By Cooperating
Witnesses/Defendants Not Facing Death Penalty)

</div>

**19.     Cooperating witnesses who have killed someone will not be sentenced to
death.**

**24.     Another defendant, or defendants equally culpable in the murders, will not
be punished by death.**

Statutory Mitigating Factor (4) provides: "Equally culpable defendants.—Another defendant or defendants, equally culpable *in the crime*, will not be punished by death." (Emphasis provided.) In this case, it is true that various cooperating witnesses committed (or participated in) some of the six murders committed by Mr. Briseno. For instance, Galo Feliciano (cooperator) and Robert Lockhart (non-cooperator) participated with Mr. Briseno in the murder of Miguel Colon. Additionally, Vincent Garza (cooperator) participated with Mr. Briseno in the murders of Miguel Mejias and Michael Sessum. Moreover, David Almaraz (cooperator) participated with Mr. Briseno in the Luis Ortiz murder. However, the Government is not aware of any cooperating witness who was both (i) not a defendant and (ii) killed someone.

If the Government's recollection is correct, then either Proposed Mitigating Factor #19 should be eliminated or else Factors 19 and 24 should be combined into a single appropriate Mitigating Factor. *See, e.g., United States v. Wilson*, 2013 WL 3057704 (E.D.N.Y. 2013) (appropriate to combine proposed Mitigation Factors); *United States v. Beckford*, 962 F Supp 804, 827 (E.D. Va. 1997) (same).

<u>Proposed Mitigating Factors 3-13 (Defendant's Upbringing – Generally Appropriate)</u>

3.      **Mr. Briseno is the product of a childhood marked by chaos, abuse and abandonment.**

4.      **Growing up, Mr. Briseno lacked positive male role models in his home.**

5.      **His mother's poor choices in the men she brought into the family home had a negative impact on Mr. Briseno.**

6.      **Juan grew up in a neighborhood plagued with drugs, gangs, and violence.**

7.      **Juan was raised in poverty.**

8.      **Juan's basic needs were neglected when he was a young child.**

9.      **Juan's older brother was a gang member and a poor role model.**

10.     **Juan was recruited into the Imperial Gangsters when he was only 10 or 11.**

11.     **From an early age, Juan was unable to keep up with his peers in school.**

12.     **Juan's father abandoned the family when Juan was only 8.**

13.     **Juan's father and his associates abused drugs and alcohol in front of the children.**

If these proposed Mitigating Factors are supported by evidence in the record, then they are appropriate, because they relate to the defendant's "background, record, or character." However, with the exception of Proposed Mitigating Factor #6 (Mr. Briseno was raised in neighborhood plagued with drugs, gangs, and violence), the current record does not support the proposed Factors. Indeed, with regard to Proposed Factor #10 ("Juan was recruited into the Imperial Gangsters when he was only 10 or 11"), the current state of the record is to the contrary. At present, the evidence establishes that Mr. Briseno's older brother, Guillermo (Memo) Briseno actively discouraged Mr. Briseno's membership in the Imperial Gangsters and that Guillermo Briseno, who was a leader of the 149th Street Imperial Gangsters, only relented when Mr. Briseno affirmatively sought out the 139th Street Imperial Gangsters. Thereafter, Mr. Briseno

2905

was reluctantly permitted to join the 149th Street Imperial Gangsters when he was 18 years old (on the same day that Alejandro (Jackie Chan) Lara joined.)

As a result, unless at the conclusion of the Penalty Phase there is evidence to support Proposed Factors 3-5 and 7-13, any unsupported Proposed Factors should be rejected.

### Conclusion

For each of the independent reasons set forth, the Government has not objection to the majority of Mr. Briseno's Proposed Mitigation Factors – provided he adduces evidence thereof in these proceedings, but it does urge the Court to reject or combine other Proposed Mitigation Factors, as more specifically set forth above.

Respectfully submitted,

DAVID CAPP
UNITED STATES ATTORNEY

s/ *David J. Nozick*

David J. Nozick
Assistant U.S. Attorney
5400 Federal Plaza
Suite 1500
Hammond, IN 46320
Tel. (219) 937-5655
www.david.nozick@usdoj.gov

s/ *Bruce R. Hegyi*

Bruce R. Hegyi
Trial Attorney
Capital Case Section
Criminal Division
United States Department of Justice
1331 F Street, N.W., Third Floor
Washington, D.C. 20530
Tel. (202) 616-4582
Cell (703) 536-4774
www.bruce.hegyi@usdoj.gov

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this date, I electronically filed the foregoing document and

accompanying exhibits with the Clerk of the Court using the CM/ECF system which will send

notification of such filing to all counsel of record for defendant Juan Briseno.


s/ *Bruce R. Hegyi*

Bruce R. Hegyi
Trial Attorney

2907

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | | |
| **Plaintiff** | | |
| **vs** | | |
| JUAN BRISENO, | | |
| **Defendant** | | **CAUSE NO:   2:11-CR-77** |

**MOTION IN LIMINE TO PROHIBIT SPECIFIED TYPES OF
PROSECUTORIAL MISCONDUCT IN PENALTY-PHASE SUMMATION**

COME NOW the undersigned counsel, and respectfully moves *in limine* to prohibit improper argument at the penalty-phase of this case. Counsel respectfully move for an order prohibiting the government from making certain improper penalty-phase arguments.  This request is neither vague nor hypothetical: The arguments defendant seeks to prohibit are specifically described in his motion.  They are ones that have been condemned by courts, but nevertheless have been and continue to be advanced by prosecutors in a number of federal capital cases – borrowed and repeated, sometimes almost verbatim, from one to the next.

A motion *in limine* is an appropriate vehicle to determine the contours of proper summation remarks.  *See*, *e.g.*, *United States v. Van Eyl*, 468 F.3d 428, 436 (7th Cir. 2006) (district court's definitive ruling on defense motion in limine to preclude specific argument in government closing preserved defense objection); *United States v. Doyle*, 121 F.3d 1078, 1093-94 (7th Cir. 1997) (affirming district court order granting government's motion in limine to

-1-

2908

preclude particular argument in defense opening statements).[1]   As the United States Supreme

Court has recognized, a District Court's authority to issue in limine rulings derives from its

inherent authority to manage the course of trials.  *United States v. Luce*, 469 U.S. 38, 41 n.4

(1984).  Rulings *in limine* serve the useful purposes of (a) avoiding the delay and potential

prejudice that might be caused by objections and sidebars during the course of the government's

closing arguments, *see*, *e.g.*, *Wilson v. Williams*, 182 F.3d 562, 566 (7th Cir. 1999) (en banc); and

(b) ensuring that prejudicial material (including those that could possibly necessitate a retrial) is

not placed before the jury, *see*, *e.g.*, *Luce*, 469 U.S. at 41 n.4 (*citing*, *inter alia*, Fed. Rule Evid.

103(c).[2]

Accordingly, and consistent with the authority set out above, this motion is being made

prior to summations for several reasons.  First, this will enable the government to respond and

the court to resolve these issues more fully and deliberately than if they were raised for the first

time at a sidebar during closing arguments with the jury in the box.  If the government believes

that any of the kind of arguments we challenge in this motion are proper and wishes to be entitled

---

[1] *See also, e.g., Fineman v. Armstrong World Indus.*, 980 F.2d 171, 207 n.26 (3d. Cir. 1992) (civil case; motion in limine to limit closing argument adequate to preserve objections to improper argument); *Carruthers v. Georgia*, 528 S.E.2d 217, 222 (Ga. 2000) (noting that an objection to a specific improper closing argument can be made through a motion in limine), *overruled on other grounds by Vergara v. Georgia*, 657 S.E.2d 863 (Ga. 2008); *Davis v. Maute*, 770 A.2d 36, 41 (Del. 2001) ("Upon [civil defendant's] pre-trial motion in limine to prohibit such improper arguments or characterizations, the trial court was required to issue a definitive ruling that marked out clear boundaries for counsels' opening statements and closing arguments.")

[2] Federal Rule of Evidence 103(c) directs the trial court, in jury cases, to the extent practicable, to conduct proceedings "so as to prevent inadmissible evidence from being suggested to the jury by any means, such as making statements or offers of proof or asking questions in the hearing of the jury."

-2-

to make them, it should say so now.  Similarly, if the government anticipates offering comments that it believes are defensible but that tread close to the kinds we challenge, it should also say so now.

Second, many forbidden arguments are so inflammatory or otherwise prejudicial that even sustaining a defense objection and giving a curative instruction could not remedy their effect.  Thus, as with other in limine motions, it is preferable that improper summation comments be identified and prohibited in advance, before the jury hears them, and that the government have guidance as to what appeals to the jury may be made in summation.  Moreover, if the government chooses to advance any arguments that Defendant has shown would be improper, having thus been warned against, there will be no doubt that such misconduct was intentional.

Third, should an appeal prove necessary, addressing these issues in advance of summations will best enable the appellate courts to have a complete record of each side's positions and of this Court's rulings, to be able to review any such misconduct should it occur.

The district court's approach in the federal capital trial, *United States v. Azibo Aquart*, No. 3:06-CR-00160-JBA (DCT), illustrates the efficiencies derived from addressing the propriety of specific arguments through a motion in limine, prior to the government's closing statements.  In that case, after the defense filed a version of the instant motion (Dkt. No. 827), the District Court directed the government to identify, in response, any principle with which it disagreed.  When the government failed to identify any point of disagreement — according to the government, "being well aware of its legal and ethical obligations to present proper summations," it "conceded" the motion (Dkt. No. 958 at 1 n.1) — the Court granted the defense request and precluded the specific arguments set forth in the motion (Dkt. 894).

Thereafter, during the government's closing statements to the jury, the motion served as the basis for the District Court's efficient analysis and rulings on defense objections: When raising an objection, the defense identified, by section heading from the memorandum of law in support of the motion – already conceded by the government to set forth the controlling law – the legal basis of its challenge, so that the Court could turn to the relevant pages for review prior to ruling, as needed. (*See*, *e.g.*, Tr. 06/13/2011, at 5633-35, attached hereto as Exhibit A for the Court's convenience.)

For the reasons set out above, versions of this motion in limine to prohibit specified types of prosecutorial misconduct in penalty-phase summation have been litigated in a number of recent federal capital trials, and the courts have routinely ruled, in advance, that specified arguments would be improper. *See*, *e.g.*, *United States v. O'Reilly*, No. 05-CR-80025 (E.D. Mich. Aug. 23, 2010) (Dkt. No. 631) (granting, prior to closing statements, defense motion in limine in toto as "statements of broad principles" and specifically forbidding government from "draw[ing] any comparison between [defendant's] life behind bars and [the vicitim]); *United States v. Duong*, No. CR-01-20154-JF, Tr. 17028-29 (N.D. Cal. Dec. 10, 2010) (court agrees with defense motion: "If [government attorney] argues that these noncrime mitigators generically should get less weight, that's a misstatement of the law."); *United States v. Lujan*, No. CR 05-0924 RB (D.N.M. Mar. 25, 2011) (Dkt. No. 737) (granting in part and denying in part, without prejudice, defense motion in limine; specifically forbidding counsel for the government from "vouching. bolstering of evidence with facts not admitted at trial, or misstating the evidence" and from "inciting the passions of the jury or suggesting that the jurors have a civic

-4-

duty to return a sentence of death"; and directing that counsel for both parties refrain from

"unfounded and inflammatory attacks on opposing counsel").[3]

This motion is made pursuant to the Fifth, Sixth, and Eighth Amendments to the United

States Constitution and 18 U.S.C. § 3593, and is based upon the  memorandum of law.

---

[3] With respect to other specific arguments that the *Lujan* defense asked be forbidden, the court, noting that the trial was not scheduled to begin for three months and that proceedings were expected to last another three months after that, declined to rule so far in advance of any possible penalty-phase closing statements. *See id.* at 8.  The court's denial was expressly without prejudice to the defendant's "ability to raise specific objections prior to the United States' penalty-phase summation." *Id.*  In addition, the court, based upon the motion, cautioned counsel for the government that they "are now on notice" as to the types of closing arguments deemed improper and objectionable by the defense. *Id.*

2912

**MEMORANDUM OF LAW**

**TABLE OF CONTENTS**

A.     INTRODUCTION .. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

B.     SPECIFIC KINDS OF ARGUMENTS THE COURT SHOULD

PROHIBIT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

     1.     Urging the Jury to Ignore or Disregard Legitimate Mitigating

          Evidence . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

     2.     Suggesting that Mitigating Evidence Requires a Nexus to the

          Crime or to the Defendant's Culpability for the Offense . . . . . . . . . . . . . . . . . . 8

     3.     Arguing that, Because the Defendant is Serving or Faces a

          Life Sentence on Other Charges, a Death Sentence is the Only

          Way to Punish Him for the Murder . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

     4.     Adverting to the Victim's Family's Desire for a Death Sentence .. . . . . . . . . . . 15

     5.     Inviting a Death Verdict on Behalf of the Victim or the Victim's

          Family . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

     6.     Invoking Comparative Justice in a Victim-Impact Argument . . . . . . . . . . . . . . 20

     7.     Invoking Comparative Worth in a Victim-Impact Argument . . . . . . . . . . . . . . . 24

     8.     Inviting the Jurors to Experience the Crime Vicariously . . . . . . . . . . . . . . . . . 27

     9.     Inflaming the Jurors' Fears for Their Own Safety or That of

          Others Close to Them . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

     10.     Suggesting Jurors Will Bear Responsibility for Future Acts

          of Violence . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

11.     Portraying Jurors as an Arm of Law Enforcement . . . . . . . . . . . . . . . . . . . . . . . 37

12.     Suggesting Jurors Must Impose Death to Prevent Incompetence

        or Mistakes of Other Actors . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 41

13.     Asking the Jurors to Send a Message . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 43

14.     Asking the Jury to Vote for Death to Satisfy the Expectations

        of the Community . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 47

15.     Suggesting that the Jurors Have a Civic Duty to Return a

        Sentence of Death . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 49

16.     Commenting on the Costs or Comforts of Life Imprisonment . . . . . . . . . . . . . . 54

17.     Appealing to Religious Authority . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 58

18.     Vouching or Bolstering . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 60

19.     Suggesting Additional Evidence Beyond that Adduced at Trial . . . . . . . . . . . . . 66

20.     Asking the Jury to Infer Lack of Remorse, or Other Aggravating

        Factors, from Defendant's Silence or Refusal to Testify . . . . . . . . . . . . . . . . . . 68

21.     Inviting the Jury to Consider Defendant's Decision to Plead

        Not Guilty or His Exercise of Trial Rights . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 76

22.     Commenting on the Defendant's Failure to Have Discussed or

        Apologized for the Crime Before Trial . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 80

23.     Denigrating Defense Counsel or the Defense . . . . . . . . . . . . . . . . . . . . . . . . . . . 81

24.     Demonizing the Defendant . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 87

25.     Misleading the Jurors on the Consequences of Non-Unanimity . . . . . . . . . . . . . 89

2914

26.     Arguing that Mercy is Never Appropriate . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 94

27.     Misstating the Evidence . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 95

C.     CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 97

-iii-

**MEMORANDUM OF LAW**

On behalf of Defendant, counsel respectfully submits this memorandum of law in support of his motion in limine to prohibit specified types of prosecutorial misconduct in penalty-phase summation.

A.    **INTRODUCTION**

It is axiomatic that the government is constrained by ethical and legal duties not to use summation arguments at trial to inflame jurors, mislead them, inject personal opinions, divert jurors from the issue of guilt or innocence, or otherwise employ "improper methods calculated to produce a wrongful conviction." *United States v. Young*, 470 U.S. 1, 7 (1985) (*quoting Berger v. United States*, 295 U.S. 78, 88 (1935)).

Given the heightened reliability required in death-penalty cases, similar if not stricter principles, discussed below, govern a prosecutor's summation at a capital penalty phase. Thus, in a number of federal death-penalty appeals, the Courts of Appeal have found or suggested that AUSAs engaged in misconduct in closing argument:

- *United States v. Montgomery*, 635 F.3d 1074, 1098 (8th Cir. 2011). Court holds that the prosecutor's remarks criticizing the decision to have the defendant's children testify were improper. "The prosecution cannot use the defendant's exercise of specific fundamental constitutional guarantees against [her] at trial. Montgomery had the right to have her children testify at her trial. It was thus improper for the prosecutor to argue that Montgomery forced her children to testify and 'victimized them again in front of the whole world.'"

-1-

- *United States v. Lighty*, 616 F.3d 321, 360-61 (4th Cir. 2010). During penalty-phase closing arguments, the AUSA twice informed the jurors that the victim's family was asking for a sentence of death: (1) "And let there be no doubt what the United States is asking you to do in this case, on behalf of [the victim's] family . . . to impose a sentence of death." (2) "[Y]ou will do what the victim's family asks you to do . . . and that is to impose [the death sentence]." Court holds that "there is little doubt that the statements were improper," both because the statements were without support in the evidence and because they were based upon inadmissible victim-impact evidence. *Id.*

- *United States v. Whitten (Wilson)*, 610 F.3d 168, 194-200 (2d Cir. 2010). Court holds that government's penalty-phase closing arguments required vacating defendant's death sentences and remanding for a new sentencing hearing. (1) Prosecutor improperly argued in summation that while defendant (who had allocuted before the sentencing jury, expressing remorse) had right to trial, he "can't have it both ways. He can't do that, then say I accept responsibility. And say 'I'm sorry, only after you prove I did it.'" Court holds that the argument penalized defendant for exercising Sixth Amendment right to jury trial. (2) Prosecutor also improperly argued, as to defendant's allocution: "He chose to do it from there (indicating defense table). The path for that witness stand has never been blocked for Mr. Wilson, had that opportunity too. He chose, like many other things in this case, to do it that way." Court holds that prosecutor's argument, together with court's denial of a modified no-adverse-inference instruction, created risk that jurors

-2-

improperly held defendant's failure to testify at sentencing or guilt against him in violation of his Fifth Amendment right not to testify.

- *United States v. Sinisterra*, 600 F.3d 900, 910-11 (8th Cir. 2010).  Court condemns "the prosecutor's remarks that the jury could act as the conscience of the community and 'send a message to all other drug dealers that this community will not tolerate [crimes like Sinisterra's]' . . . .  The prosecutor's arguments linking Sinisterra to the broader drug problems of the United States, telling the jury to act as the conscience of the community, and asking the jury to send a message with its verdict were improper.  Such arguments impinge upon the jury's duty to make an individualized determination that death is the appropriate punishment for the defendant."

- *United States v. Caro*, 597 F.3d 608, 625-28 (4th Cir. 2010).  Court finds "troubling" the prosecutor's summation argument that the BOP, judge, and prosecutor were powerless to control defendant, and only the jury could by imposing a death sentence.  Capital sentencing should involve an individualized determination, but "[t]he suggestion that the BOP would not secure Caro adequately to prevent future violence implicates policy and resource considerations that are quite different . . . .  Moreover, calling upon the jury to 'control' Caro gives them a role more akin to law enforcement than to impartial arbitration between the defendant and the government."  It also "might have been improper" for government to argue in summation that a life sentence would send bad message to defendant's prison gang, to prison staff and inmates victimized by the gang, and to parents of the victim.

-3-

- *United States v. Rodriguez*, 581 F.3d 775, 803 (8th Cir. 2009). It was improper for prosecutor to refer to "fear" victim felt (since there was no evidence about this) and to label expert testimony as "what defense experts are trying to sell you in this case."

- *United States v. Bolden*, 545 F.3d 609, 630 (8th Cir. 2008). Prosecutor "did improperly ask for the jury to impose the death penalty on behalf of the [victim's] family."

- *United States v. Mitchell*, 502 F.3d 931, 994 (9th Cir. 2007). Argument that defendant "has sentenced himself to death" was "improvident." Other arguments — that Attorney General had information jurors did not have when he decided to seek death, calling mitigating factors "excuses," and asking jury what defendant had done to earn a life sentence — were not fair comments on the evidence.

- *United States v. Johnson*, 495 F.3d 951, 979 (8th Cir. 2007). Court condemns as "over the line," government noting that ten, twenty, thirty years from now the child victims will still be dead and arguing "No matter how small [the defendant's] cell may be, it's going to be larger than the coffin that [the victims] are laying [sic] in now." "Although the government was entitled to respond to Johnson's portrait of a miserable thirty years behind bars, it should not have used the victims' plights to do so."

- *United States v. Higgs*, 353 F.3d 281, 331 (4th Cir. 2003). Argument that "mercy is not in the instructions" and "not something you do in this case" "arguably crossed into" improper argument.

-4-

2919

• *United States v. Allen*, 247 F.3d 741, 776 (8th Cir. 2001), *vacated on other grounds*, 536 U.S. 953 (2002). Prosecutor's reference to defendant as "murderous dog" in summation was improper.

The Second Circuit's reversal of the death sentences in *Wilson* and remand for a new sentencing hearing underscore the significant costs that may follow government misconduct during penalty-phase summations. To be sure, the other decisions listed above did not go so far. But they do not suggest that the Courts of Appeal will tolerate the same or similar improper arguments continuing to be made in case after case. Moreover, most of those decisions declined to reverse only because defense counsel never protested the misconduct below, and thus the claim was reviewed on appeal only under the stricter "plain error" standard (or, in post-conviction, under the even stricter standard for ineffective assistance of counsel). That will not happen here. Defendant is intent on challenging any and all improper arguments by the prosecutor, and this motion reflects the first effort toward that end. Further, to the extent the Court of Appeals in any of these cases, or other ones, have declined to reverse because it considered the record as a whole and determined that an improper argument was not, in the end, prejudicial, that obviously cannot justify the government making or this Court tolerating such improper arguments in the first place.

Accordingly, Defendant asks this Court to direct the prosecutors not to make any of the following types of improper arguments in their summation comments to the jury.

-5-

2920

**B.**     **SPECIFIC KINDS OF ARGUMENTS THE COURT SHOULD PROHIBIT**

**1.**     **Urging the Jury to Ignore or Disregard Legitimate Mitigating**

**Evidence**

Jurors must be able to consider and give effect to any and all relevant mitigating evidence

offered in support of a sentence less than death, *see, e.g., Penry v. Johnson*, 532 U.S. 782, 797

(2001); *Skipper v. South Carolina*, 476 U.S. 1, 4-5 (1986); *Eddings v. Oklahoma*, 455 U.S. 104,

113-14 (1982); *Lockett v. Ohio*, 438 U.S. 586, 605 (1978), and they must be aware of their

obligation to do so.  As the Supreme Court stated in *Boyde v. California*, the "[p]resentation of

mitigating evidence alone . . . does not guarantee that a jury will feel entitled to consider that

evidence." 494 U.S. 370, 384 (1990).  Jurors may believe themselves precluded from considering

relevant mitigation evidence not only as a result of the judge's instructions, "but also as a result

of prosecutorial argument dictating that such consideration is forbidden." *Abdul-Kabir v.*

*Quarterman*, 550 U.S. 233, 259 n.21 (2007).

Accordingly, "[a] prosecutor errs by directing the jury to ignore a proposed mitigating

factor."  *United States v. Rodriguez*, 581 F.3d 775, 800-801 (8th Cir. 2009) (direct review of

federal death sentence) (citations omitted); *see also Sinisterra v. United States*, 600 F.3d 900,

909 (8th Cir. 2010) ("To ensure the reliability of the determination that death was the appropriate

punishment, a prosecutor may not argue that [meaningful] consideration [of potentially relevant

mitigating evidence] is forbidden.") (citation omitted); *DePew v. Anderson*, 311 F.3d 742, 749

(6th Cir. 2002) (granting habeas relief and ordering resentencing from state death sentence,

where prosecution's inadmissible, inflammatory, and misleading comments "were designed to

keep the jury from properly considering and weighing the mitigating evidence offered by the

-6-

defendant"); *Le v. Mullin*, 311 F.3d 1002, 1018 (10th Cir. 2002) (prosecutor may not imply that "the jury had the ability to ignore the legal requirement that it must consider mitigating evidence").[4]

    Examples of such improper argument include:

•      This is the time for punishment.  Punishment.  And let me caution

         you respectfully, and I mean this respectfully, the issue of

         punishment for the Defendant is not an issue of how it affects his

         family, not under the law.

*Rodriguez*, 581 F.3d at 800 (direct review of federal death sentence).  The Eighth Circuit concluded that, standing alone, this argument would have improperly directed the jury that family-impact mitigating factors are irrelevant "under the law."  *Id.*; *see also Simmons v.*

---

[4] Although the government may argue that the jurors, in considering the defense evidence, should give the mitigating factors slight weight, *see*, *e.g.*, *United States v. Whitten (Wilson)*, 610 F.3d 168, 184 n.6 (2d Cir. 2010); *United States v. Bolden*, 545 F.3d 609, 630 (8th Cir. 2008); *United States v. Johnson*, 495 F.3d 951, 978 (8th Cir. 2007), as the Supreme Court explained in *Eddings v. Oklahoma*, 455 U.S. 104, 113-14 (1982): "[T]he sentencer *may not give it no weight* by excluding such evidence from . . . consideration."  *Id.* (emphasis added); *see also Penry v. Lynaugh*, 492 U.S. 302, 328 (1989) (death sentence reversed where instructions failed to provide jury a vehicle for fully considering mitigating evidence of abuse defendant suffered as a child), *abrogated in part on other grounds by Atkins v. Virginia*, 536 U.S. 304 (2002); *Hitchcock v. Dugger*, 481 U.S. 393, 394, 397-99 (1987) (death sentence reversed where sentencing judge refused as a matter of law to consider defendant's troubled family history); *Eddings*, 455 U.S. at 113-114 (same, noting also that such evidence is "particularly relevant" when defendant committed the capital crime as a teenager, not far in time from his difficult upbringing); *Wilson*, 610 F.3d at 184 n.6 ("On review, we ask whether there is a 'reasonable likelihood that the jurors believed themselves to be precluded from considering [the] mitigating evidence.'") (*quoting United States v. Fell*, 531 F.3d 197, 223 (2d Cir.2008)).
.

*Bowersox*, 235 F.3d 1124, 1136 n.6, 1137 (8th Cir. 2001) ("Show some mercy to his family, give him death. Look at his family. Look at his little brother. [His little brother] said it all. Someday I want to grow up to be just like him. To be just like him. Spare those kids of that."; such comments have "no place in an American courtroom") (citation omitted); *Antwine v. Delo*, 54 F.3d 1357, 1362-64 (8th Cir. 1995) (same, regarding "[I]sn't it much more humane to sentence this man to death so that his brother can get on with his life, and so that the two children can get on with their lives, instead of having to think, every day for the next 50 years, they have a brother or a father locked up in the penitentiary?").

- As I told you yesterday, he used his age in committing this offense because he didn't believe that you would think that he was capable of it. Well, you do, and you have found it. Don't let him use his age to protect himself now, because then he wins.

*Simmons*, 235 F.3d at 1136 n.6; *see also id.* at 1137 (argument "improper": "[W]e condemn the prosecution for teetering on the edge of misstating the law with regard to the significance of Simmons' age as a mitigating factor."); *Pierce v. Thaler*, 604 F.3d 197, 211 (5th Cir. 2010) ("By essentially instructing the venire members that 'youth isn't relevant,' the [prosecutor's] comments may have undermined the jury's ability to give mitigating effect to evidence of [defendant's] youth . . . ."); *Ferrell v. State*, 29 So. 3d 959, 987 (Fla. 2010) (affirming reversal of death sentence based, in part, upon conclusion that prosecutor erroneously and, therefore, improperly argued that age mitigating factor could only apply to someone younger than defendant).

-8-

## 2. **Suggesting that Mitigating Evidence Requires a Nexus to the Crime or to the Defendant's Culpability for the Offense**

A particular kind of forbidden appeal to ignore or disregard mitigating evidence, discussed generally above, is any suggestion that mitigating factors must demonstrate a nexus to the crime.

The Supreme Court has recognized that mitigating factors need not relate to the defendant's "culpability for the crime." *Tennard v. Dretke*, 542 U.S. 274, 285 (2004); *Smith v. Texas*, 543 U.S. 37, 45 (2004); *see also*, *e.g.*, *United States v. Fell*, 531 F.3d 197, 222 (2d Cir. 2008) ("A capital defendant's mitigating evidence need not have a nexus to the murder for which he has been convicted, but need only allow 'the sentencer to reasonably find that it warrants a sentence less than death.'") (*quoting Tennard*, 542 U.S. at 285), *cert. denied*, 130 S. Ct. 1880 (2010); *State v. Kleypas*, 40 P.3d 139, 281-82 (Kan. 2001) (arguments that certain circumstances should not be considered mitigating because they were not causally related to the crime "constituted prosecutorial misconduct"), *overruled in part on other grounds*, *State v. Marsh*, 102 P.3d 445, 450 (Kan. 2004)[5] "The question is not whether evidence in mitigation makes the defendant any less guilty, or the crime any less horrible, but whether it provides a reason why, despite those things, the defendant should not die." *United States v. Johnson*, 495 F.3d 951, 978

---

[5] The United States Supreme Court reversed and remanded *Marsh* on other grounds, 548 U.S. 163 (2006), after which the Supreme Court of Kansas vacated its opinion in part on other grounds, 144 P.3d 48 (Kan. 2006).

2924

n.26 (8th Cir. 2007) (direct appeal from federal death sentence) (quotation marks and citation

omitted).[6]

Examples of such improper argument include:

•    The intentional murder of children is an unspeakable evil.  It's an

evil that cannot be mitigated by any evidence.  None of the

defendant's mitigators can take away what she did and her

involvement in killing those children.  Somebody involved in the

murder of children deserves the death penalty.

*Johnson*, 495 F.3d at 978.  The *Johnson* court cautioned that the government's "infelicitous"

wording, standing alone, might have suggested that the defendant's mitigating evidence was only

intended to diminish the horror of the killings or of the defendant's involvement therein, when, in

fact, some of the mitigating factors "were intended to provide reasons for mercy despite the

gravity of the offense, rather than to 'take away' [the defendant's] involvement in the crime or

portray the murders as any less evil."  *Id.* at 978 n.26.

•    We have a whole list of things that have been submitted as

mitigating circumstances.  The Court instructs you that mitigating

---

[6] In *United States v. Fell*, 531 F.3d 197 (2d Cir. 2008), two judges suggested, while expressly reserving the issue, that it might not be improper for "a prosecutor to argue that, because such a nexus is absent, the mitigating evidence should be given little or no weight." *Id.* at 222 n.14.  The third judge concluded that the government's arguments "impermissibly suggested that the juror should disregard the mitigating evidence because it did not 'connect' to the charged crimes." *Id.*  In any event, because all three judges agreed that the defendant had not been prejudiced, under the specific facts of that case, the panel expressly declined to resolve their differences. *Id.*  None of the judges, even in dicta, suggested that it would be permissible for the government to argue that the jurors could exclude from consideration any mitigating evidence unconnected to the crime.

-10-

circumstances are those which in fairness and mercy -- get this --
may be considered as extenuating or reducing the moral culpability
or blame. It doesn't say anything about whether you've been a
good guy in the past or anything like that. Do these circumstances
extenuate or reduce the degree of moral culpability of
responsibility for what he did? It's up to you to decide what are
mitigating circumstances.

[D]oes that in any way officiate (sic) or mitigate or relieve
or make any less horrible what he did . . . ? I submit to you they do
not. . . . Does it make it all right to go out and murder? Does it
make you less guilty when you go out and commit this kind of a
crime?

. . .

I don't want to go run through all of these. I submit to you,
ladies and gentlemen, there is nothing in here, nothing in that list in
any way mitigates or officiates (sic) or alleviates or makes any less
horrible what this man did . . . .

*Le v. Mullin*, 311 F.3d 1002, 1016-17 (10th Cir. 2002).

- Does the defendant's age outweigh what he did? It doesn't matter
  if he was seventeen, twenty-seven, or seventy, the crime is still the
  same, and it's just as vicious.

-11-

2926

*Simmons v. Bowersox*, 235 F.3d 1124, 1136 n.6, 1137 (8th Cir. 2001) (argument "improper";
"we condemn the prosecution for teetering on the edge of misstating the law with regard to the
significance of Simmons' age as a mitigating factor").

> **3.** **Arguing that, Because the Defendant Is Serving or Faces a Life Sentence on Other Charges, a Death Sentence is the Only Way to Punish Him for the Murder**

In a number of recent prosecutions under the FDPA, the government has urged the jury to
vote for death on a theory that a sentence of life would give the defendant a "free pass" or
amount to no punishment at all because the defendant is already serving, or will or could serve, a
life sentence on other charges.

For example, in *United States v. Rodriguez*, a federal capital prosecution in the United
States District Court for District of North Dakota, No. 2:04-cr-55, a jury convicted the defendant
of kidnapping resulting in death, under 18 U.S.C. § 1201(a).  During penalty-phase closing
statements, the government argued that a sentence of life "punishes the kidnapping alone" and
would treat the murder "as a freebie for which there is no extra punishment . . . ."  (Tr. Vol. 42,
8697):

- Also, he could get the same punishment a defendant with his record would have gotten if he had kidnapped Dru Sjodin from the Columbia Mall, taken her across the state line and let her go scared and shaken.

  . . .

-12-

Prison is what Alfonso Rodriguez knows.  Prison is what

he's asking for, but death row is what he has earned, and a sentence

of death is what this Defendant's intentional aggravated crimes call

for under the law of the United States.  A prison sentence punishes

the kidnapping alone.

. . .

Let the Defendant know that these heinous, cruel, depraved

torturous factors in this intentional murder will not be treated as a

freebie for which there is no extra punishment on top of what he

would have gotten . . . .  Tell Alfonso Rodriguez that no matter

what he thought as Dru Sjodin desperately needed mercy, no

matter what he thought, Dru Sjodin was not a freebie.

(Tr. Vol. 42, 8697, 8699).[7]

So, too, in *United States v. Davis*, a federal capital prosecution in the Eastern District of

Louisiana, the government argued:

- He's already serving life for the cocaine conviction.  If you don't

  return a sentence of death, you're giving him a free pass for killing

---

[7] On appeal, Mr. Rodriguez challenged the statements from the government's closing arguments set out in the text above.  The Eighth Circuit affirmed the defendant's federal death sentence; the court did not hold that the government's statements were permissible, but, instead, concluded that Rodriguez had not been prejudiced because the district court had both sustained defense objections to the argument quoted in the text above and properly instructed the jury on its sentencing options.  *United States v. Rodriguez*, 581 F.3d 775, 799-800 (8th Cir. 2009).

-13-

2928

Kim Marie Groves.  Is that just?  He won't be punished at all.  And
I want you to listen to what I'm saying.  You give him life, you
don't give him death, he won't be punished at all for killing,
executing Kim Marie Groves.  He gets a free pass.  Is that just?
Huh?  Life here is no punishment at all. . . .  He gets life, he wins
again. . . .  [I]f you don't return a sentence of death, which is the
only just sentence in this case, Len Davis will be celebrating again
tonight.  Don't let that happen.

*United States v. Davis*, Case No. 94-CR-381-C, Tr. 111-12 (E.D. La. Aug. 8, 2005).[8]

This kind of argument, in any form, is highly improper.  In *Sumner v. Shuman*, 483 U.S. 66 (1987), the Court specifically rejected "[t]he argument is that the death penalty must be mandatory for life-term inmates because there is no other available punishment for one already serving a sentence of life imprisonment without possibility of parole. . . .  [T]here are other sanctions less severe than execution that can be imposed even on a life-term inmate.  An inmate's terms of confinement can be limited further, such as through a transfer to a more restrictive custody or correctional facility or deprivation of privileges of work or socialization."  *Id.* at 83-84.

---

[8] On appeal, the Fifth Circuit declined to address whether this was improper, since the argument had not been objected to below: "Courts have divided on the question of whether such an argument is permissible . . . .  Given the contradictory authority, and our lack of circuit precedent on the issue, the district court's error, if any, was not clear or obvious." *United States v. Davis*, 609 F.3d 663, 687 (5th Cir. 2010).

-14-

Thus, several lower courts have condemned prosecutorial arguments such as those set out above. In *State v. Smith*, 755 S.W.2d 757 (Tenn. 1988), *overruled in part on other grounds*, *State v. Middlebrooks*, 840 S.W.2d 317 (Tenn. 1992), for example, the court held it was improper for the prosecutor to tell jurors that "to give life, a punishment of life, in this second killing is the equivalent of giving no punishment at all." *Id.* at 767. The court found the argument "effectively eliminated the option of life imprisonment as a sentence" for the defendant in the case before the jury. The prejudice was "obvious" because his punishment "should have been determined without regard . . . to the punishment to which the defendant was sentenced in that case." *Id.*; *see also State v. Bigbee*, 885 S.W.2d 797, 810 (Tenn. 1994) (reversing death sentence based on, among other misconduct, prosecutor's argument that "Mr. Bigbee has already received a life sentence, a life sentence. . . . What's another life sentence going to do? Nothing. He's already got a life sentence. Another life sentence is no skin off his nose."), *superseded by statute on other grounds as stated in State v. Stout*, 46 S.W.3d 689 (Tenn. 2001).

Similarly, in *People v. Kuntu*, 752 N.E.2d 380, 403 (Ill. 2001), the Illinois Supreme Court vacated a death sentence because of the prosecutor's argument that, because life imprisonment was the mandated punishment for two or more killings, the jury's failure to impose a death sentence in the case of a defendant who had killed seven victims would " be giving defendant five free murders." *Id.* at 403. It observed that such argument "is simply an inflammatory statement with no basis in either law or fact; it is tantamount to the conclusion that, as a matter of law, a person who kills more than two persons should be sentenced to death."

-15-

**4.**    **Adverting to the Victim's Family's Desire for a Death Sentence**

The jury may not weigh either the survivors' investment in the trial or their wishes as to its outcome. In *Payne v. Tennessee*, 501 U.S. 808 (1991), the Supreme Court made plain that "the admission of a victim's family members' characterizations and opinions about the crime, the defendant, and the appropriate sentence violates the Eighth Amendment." *Id.* at 830 n.2 (*citing Booth v. Maryland*, 482 U.S. 496 (1987)); *accord id.* at 832 (O'Connor, White, & Kennedy, JJ., concurring); *id.* at 835 n.1 (Souter and Kennedy, JJ., concurring). So, too, then, does argument by the government adverting to the opinions of the victim's family violate the Eighth Amendment.

For example, in *United States v. Lighty*, 616 F.3d 321 (4th Cir. 2010), a federal capital prosecution, "[t]wice during closing argument at the sentencing phase, the AUSA informed the jury that [the victim's] family was asking the jury to impose the death penalty," *id.* at 360:

- "And let there be no doubt what the United States is asking you to do in this case, on behalf of the [the victim's] family and with the law in support, to impose the only justifiable sentence in this case and that is a sentence of death."; and

  "And with that evidence to guide you and with the law to guide you, you will do what the [victim's] family asks you to do, what the Government tells you to do, in connection with the facts and the law of this case, and that is to impose the only sentence, the only sentence that is justified for these facts for the execution of this young man. And that is the death sentence."

-16-

*Id.* at 360-61.  On appeal, the Fourth Circuit held that "there is little doubt that the statements were improper."  *Id.* at 361.  First, the court noted that there was no evidence in the record concerning whether the victim's family was, in fact, asking for the death penalty, and "[t]hus, the AUSA was not at liberty to comment on facts not in evidence.  *Id.*  "By going outside the evidence, the AUSA 'violated the fundamental rule, known to every lawyer, that argument is limited to the facts in evidence.'" *Id.* (quoting *United States ex rel. Shaw v. De Robertis*, 755 F.2d 1279, 1281 (7th Cir.1985)).  Second, the court held that the sentencing desires of the victim's family constitute inadmissible victim-impact evidence under *Payne* and *Booth*.  *Id.* (citing *Humphries v. Ozmint*, 397 F.3d 206, 217 (4th Cir.2005) (en banc)).  The court concluded that, under the Eighth Amendment, "the AUSA was not permitted to advance an argument based on inadmissible victim impact evidence."  *Id.*[9]

In another federal capital prosecution, the government twice requested a death verdict "on behalf of" the victim's family and urged:

- "Don't tell the [victim's] family that their son died because [the defendant] had some childhood issues."

---

[9] The court declined to reverse, however, noting that: the improper statements were isolated; the jury was not likely mislead; the government's case was overwhelming; appellant had not demonstrated that the government's remarks were intentional; and, upon request of the defense, the district court instructed the jurors that it was the government that sought the death penalty and that the desires of the victim's family should not be considered.  *Id.* at 362.

-17-

*United States v. Bolden*, No. S1402CR557(CEJ), Tr. 3933, 3983, 3990 (E.D. Mo.). On direct

appeal, the Eighth Circuit held the comments to be "improper" argument, "for which there was

no supporting evidence." *United States v. Bolden*, 545 F.3d 609, 630 (8th Cir. 2008).[10]

- [Y]ou know what [the victim's family's] presence here is asking you to do.

  I think you should consider their wishes.

*Miller v. Lockhart*, 65 F.3d 676, 682, 685 (8th Cir. 1995) (argument improper because no

evidence introduced regarding the family's wishes).

### 5. Inviting a Death Verdict on Behalf of the Victim or the Victim's Family

Similarly, the prosecution may not ask the jury to base a sentence of death on sympathy

for the victim or the victim's family. The Supreme Court in *Payne v. Tennessee*, 501 U.S. 808,

827 & 830 n.2 (1991), permitted only a "glimpse" of the impact of a crime on the victims and

their families. It did not permit jurors to consider the impact of the sentencing decision on the

family or allow sympathy for the family to influence deliberations. This Court may not "condone

prosecutorial remarks encouraging the jury to allow sympathy to influence its decision." *Moore

v. Gibson*, 195 F.3d 1152, 1172 (10th Cir. 1999); *see also United States v. Rodriguez*, 581 F.3d

775, 803 (8th Cir. 2009) (direct review of federal death sentence; "improper" to appeal

excessively to jurors' emotions through claim to "speak for" the victim). "The jury should make

decisions based on the strength of the evidence, and not on raw emotion, though we recognize

---

[10] The court declined to reverse, however, on plain-error review (where the defense had not timely objected). It noted that, upon defense request, the district court had instructed the jury not to speculate about the family's wishes, and concluded that the isolated comment had not substantially affected the defendant's rights. *Id.*

-18-

that some emotional influence is inevitable." *Wilson v. Sirmons*, 536 F.3d 1064, 1120 (10th Cir.

2008). "The State should not encourage the jury to impose the death penalty out of sympathy for

the victims." *Le v. State*, 947 P.2d 535, 554 (Okla. Crim. App. 1997).

Examples of such improper argument include:

- "[B]ring back a death verdict out of love for the [victims and parents] of

  the world and the future and the past victims of [petitioner]."

*Moore*, 195 F.3d at 1172 & n.11.

- "I'm sorry that [defendant's] mother has to wait 20 minutes to see him in

  jail. But you know what? Ms. Dorn right over there, guess how long she

  gets to wait to see her son [the victim] . . . [t]he rest of her life, she gets to

  wait to see Richard."

*Wilson*, 536 F.3d at 1119.

- During penalty-phase closing argument, prosecutor asked the jury to return

  the death penalty on behalf of "[the victims] and myself."

*Nevius v. State*, 699 P.2d 1053, 1059 (Nev. 1985) (warning that "[w]ere the evidence of guilt and

of the appropriateness of the death penalty in this case of a lesser order of magnitude, we may

have had to reverse this judgment and sentence on the ground of the serious and wholly

unnecessary misconduct of the prosecutor"); *see also Williams v. State*, 188 P.3d 208, 230 (Okl.

Crim. App. 2008) (condemning as "troubling" prosecution argument that "the jury would be

devaluing and discrediting [the victim's] life if they did not assess the ultimate punishment"); *cf.*

*United States v. Caro*, 597 F.3d 608, 625 n.17 (4th Cir. 2010) (in direct appeal of federal death

sentence, suggesting, without deciding, that government's argument that a life sentence would

-19-

tell the victim's parents that "their son's life was meaningless" might have been improper: "Because the decision whether to impose the death penalty should involve an individualized determination on the basis of the character of the individual and the circumstances of the crime, the government's comments about messages sent to anyone other than Caro might have been improper.") (citation and internal quotation marks omitted).

### 6.     Invoking Comparative Justice in a Victim-Impact Argument

Comparative justice arguments regarding the victim have no place in a courtroom. It is improper to say the victim had no rights or that a verdict vindicates a victim's rights, or to compare the victim's rights to the defendant's. *See, e.g., Brooks v. Kemp*, 762 F.2d 1383, 1411 (11th Cir. 1985) (*en banc*) ("[I]t is wrong to imply that the system coddles criminals by providing them with more procedural protections than their victims.  A capital sentencing jury's important deliberation should not be colored by such considerations."), *vacated on other grounds*, 478 U.S. 1016 (1986).  Such arguments impermissibly appeal to sympathy and burden the defendant's exercise of constitutional rights.  *See Kemp*, 762 F.2d at 1411 (*citing Griffin v. California*, 380 U.S. 609 (1965)); *State v. Cockerham*, 365 S.E.2d 22, 23 (S.C. 1988).

- [Defendant] conducted a trial, much like the trial we are having here, in some ways, and in some ways, very far from it, because [the victim's] Constitutional Rights, and the rights to a trial by jury didn't do much for her that night, because on that night, he was her judge, he was her jury, and he was her executioner.  And she didn't have the right to . . . be represented by a lawyer.  She didn't have

-20-

the right to have independent people on her jury.  [The defendant]

took care of all that.

*Cockerham*, 365 S.E.2d at 23.

Similarly it is "prosecutorial misconduct for the prosecution to compare the plight of the victim with the life of the defendant in prison." *Bland v. Sirmons*, 459 F.3d 999, 1028 (10th Cir. 2006).  Such appeals improperly "make light of the penalty of life in prison," *id.*, and constitute an impermissible appeal to sympathy for the victim, encouraging the jury to fail to consider mitigating evidence, *Le v. Mullins*, 311 F.3d 1002, 1015-16 (10th Cir. 2002).

In a recent federal capital prosecution under the FDPA, the Eighth Circuit held that the government transgressed this prohibition in its penalty-phase closing arguments.  In that case, the government argued, *inter alia*,

- Those victims have been dead for 12 years.  This defendant has

  lived for 12 years after being involved in the murder of 5 people.

  Ten years passes from now, and [the victims] will still be dead.

  Twenty years will pass while [the defendant is] living in prison,

  and [the victim] will still be dead.  Thirty years from now, [one

  victim] will still be ten years old, and [the second victim] will still

  be six years old.

  . . .

  No matter how small [defendant's] cell may be, it's going to be larger than

  the coffin that [the victims] are laying [sic] in now.

<center>-21-</center>

*United States v. Johnson*, 495 F.3d 951, 979 (8th Cir. 2007). On appeal, the Eighth Circuit concluded that "[t]he prosecutor's comments in this case . . . went beyond the bounds of permissible argument.": "Although the government was entitled to respond to [the defense] portrait of a miserable thirty years behind bars, it should not have used the victims' plights to do so." *Id.*

In another recent federal capital prosecution, the government argued:

- He [defense counsel] essentially asks you to send him [Johnson] to his room where he gets privileges, three squares, and the ability to have visitors. The only visitors that [the victim] will have come to his grave site.

*United States v. Johnson*, 713 F. Supp. 2d 595, 631 (E.D. La. 2010). The district court granted defendant's motion for a new sentencing hearing in part based on this "inappropriate emotional appeal to impose the death penalty out of sympathy for the victim." *Id.* at 27, 34. Other examples condemned by courts include:

- "Maybe the Defendant will be in prison, maybe he will be behind that concrete and those jail bars with his T.V. and his cable and good food. But one thing . . . is for sure, [the victim] won't be here and his family won't be able to be with him, they won't be able to share holidays with him."

*Bland*, 459 F.3d at 1027.

- "Next year [defendant] will be a year older and [the victim] will be

  34 years old from now to eternity.

  . . .

  "[D]o you really think that justice would be done if this man goes

  to prison, gets three meals a day and a clean bed every night and

  regular visits from his family while [the victim] lays [sic] cold in

  his grave[?]"

*Le,* 311 F.3d at 1014-16.

- Improper to ask whether it would be "justice [to] send this man

  down to prison, let him have clean sheets to sleep on every night,

  three good meals a day, visits by his friends and family, while [the

  victim] lies cold in his grave?"

 *Duckett v. Mullin*, 306 F.3d 982, 992 (10th Cir. 2002).

It is also "blatantly impermissible" to ask the jury to "'show [a capital defendant] the

same amount of mercy . . . that he showed'" the victim. *Urbin v. State*, 714 So. 2d 411, 421 (Fla.

1998) (reversing death sentence for such "'unnecessary appeal to the sympathies of the jurors,'"

among other misconduct) (citation omitted). As the Third Circuit has observed, by "imploring

the jury to make its death penalty determination in the cruel and malevolent manner shown by the

defendants," the prosecutor improperly "directed" the jury "to passion and prejudice rather than

to an understanding of the facts and of the law." *Lesko v. Lehman*, 925 F.2d 1527, 1545 (3d Cir.

1991) (citation omitted). Such an argument is a "thinly veiled appeal to vengeance" that

"encourage[s] the jury to make a retaliatory sentencing decision, rather than a decision based on a

reasoned moral response to the evidence." *State v. Bigbee*, 885 S.W.2d 797, 812 (Tenn. 1994)[11];

*see also*, *e.g.*, *Ferrell v. State*, 29 So. 2d 959, 997-98 (Fla. 2010) (affirming grant of new

sentencing hearing, in part, because improper to argue "I'll leave you with one final thought, I'm

going to ask you to show this Defendant the same sympathy, the same mercy he showed [the

victim] and that was none."); *Rhodes v. State*, 547 So. 2d 1201, 1206 (Fla. 1989) (prosecutor

improperly concluded his argument by urging the jury to show the defendant the same mercy

shown to the victim on the day of her death).

### 7.    Invoking Comparative Worth in a Victim-Impact Argument

Nor may the prosecution compare the value of the victim's life with the life of the

defendant.  In *Hall v. Catoe*, 601 S.E.2d 335 (S.C. 2004), the Supreme Court of South Carolina

granted post-conviction relief because trial counsel failed to object to the following argument

from the prosecution's penalty-phase closing:

- I am talking about values, because a jury verdict is a statement of

  values.  And I am not talking about dollars and cents as far as what

  the [lives of the two victims were] worth, but nevertheless it is a

  question of values.  What are the lives of these two girls worth?

  Are they worth the life of this man, the psychopath, this killer who

  stabs and stabs and kills, and rapes and kidnaps.

*Id.* at 339.  The court held that such argument violated *Payne* and granted the defendant a new

sentencing hearing, concluding that the prosecutor's comparison (1) was "so emotionally

---

[11] *Superseded by statute on other grounds as stated in State v. Stout*, 46 S.W.3d 689 (Tenn.2001).

inflammatory that it became a material part of the jury's deliberation process"; (2)

"unquestionably" directed the jurors to conduct an arbitrary balancing of worth, "which required

that Hall be sentenced to death if the jury found Hall's life was worth less than the lives of his

victims"; (3) was "totally unrelated to the circumstances of the crime"; and (4) was

"distinguishable from traditional impact evidence in that it was not actually offered to show the

impact of the crime on the victims or the victims' family." *Id.* at 340.  *See also Humphries v.*

*Ozmint*, 397 F.3d 206, 222-23 (4th Cir. 2005) (*en banc*) (agreeing that, in *Hall*, "a direct 'value'

comparison between the defendant and the victim . . .  rendered his trial fundamentally unfair in

violation of due process," but finding no comparable comments in Humphries' case).

> In a recent federal capital prosecution, the government argued that
>
> •    Failure to impose a sentence of death is a statement that his
>
>      [Johnson's] life is worth more than the victim he annihilated – in
>
>      fact, the two victims he annihilated.

*United States v. Johnson*, 713 F. Supp. 2d 595, 630 (E.D. La. 2010).  The district court granted

the defendant's motion for a new sentencing hearing based in part on the government's

inappropriate "call for the death penalty in order to affirm that the victim's life was worthier than

that of the 'evil' defendant was error, and an improper and inflammatory appeal to juror passion

and emotion."  *Id*. at *27, 34; *see also*, *e.g.*, *Wheeler v. State*, 4 So. 3d 599, 610-11 (Fla. 2009)

("To the extent that the prosecutor's argument urged the jury to compare the worth of the life of

the victim against that of Jason Wheeler, the argument is erroneous"); *State v. Rizzo*, 833 A.2d

363, 419-20 (Conn. 2003) (reversing where prosecutor's argument might have been understood

as an appeal to weigh the victim's life against the defendant's, which would have been

inflammatory and improper); *State v. Koskovich*, 776 A.2d 144, 182 (N.J. 2001) (urging jurors to

"balance the victim's background against [the defendant's] was akin to asking the jury to

compare the worth of each person," which is "inherently prejudicial" and "might prompt jurors to

impose the death penalty arbitrarily"); *State v. Muhammad*, 678 A.2d 164, 179 (N.J. 1996)

("[v]ictim impact testimony may not be used . . . as a means of weighing the worth of the

defendant against the worth of the victim"); *State v. Storey*, 901 S.W.2d 886, 902 (Mo. 1995)

(prosecutor's argument, "Whose life has more value? The Defendant's or Jill Lynn Frey's?" was

misleading and improper).

### 8. Inviting the Jurors to Experience the Crime Vicariously

Another form of improper victim-impact argument invites the jurors to step mentally into

the place of the victim. This forensic device wields great emotional power.

It is also wholly and universally disallowed. *See, e.g., Johnson v. Bell*, 525 F.3d 466, 484

(6th Cir. 2008) (prosecution may not urge jurors to identify individually with the victims with

comments like "[i]t could have been you" the defendant killed or "[i]t could have been your

children"); *Wilson v. Sirmons*, 536 F.3d 1064, 1119-20 (10th Cir. 2008) (improper to ask the jury

to put themselves "in the victim's shoes"); *Hodge v. Hurley*, 426 F.3d 368, 384 (6th Cir. 2005)

("highly improper" for prosecutor to ask jury to try to "put [itself] in the place of someone that

might run into [defendant] at night"); *Boyle v. Million*, 201 F.3d 711, 715, 717 (6th Cir. 2000)

(granting habeas relief based, in part, on numerous statements urging jurors to identify with the

victim and the victim's family and neighbors); *Roberts v. Delo*, 205 F.3d 349, 351 (8th Cir.

2000) (condemning "golden rule" argument: "This Court has held it is improper for a prosecutor

to ask jurors to put themselves in the place of the victim."); *Shurn v. Delo*, 177 F.3d 662, 665,

-26-

667 (8th Cir. 1999) (personalized analogy to the jurors' self defense of their own children);

*Newlon v. Armontrout*, 885 F.2d 1328, 1336, 1342 (8th Cir. 1989) (same); *United States v.*

*Teslim*, 869 F.2d 316, 328 (7th Cir. 1989) (noting that so-called "Golden Rule" argument is

"universally" condemned); *Mathis v. Zant*, 744 F. Supp. 272, 275-76 (N.D. Ga. 1990) ("urging

jurors if they looked at pre-autopsy pictures of the murder victims they would see images of their

own parents"), *vacated in part on other grounds*, 975 F.2d 1493 (11th Cir. 1992); *Lawson v.*

*State*, 886 A.2d 876, 890 (Md. 2005) ("When a jury is asked to place themselves in the shoes of

the victim, the attorney improperly appeals to their prejudices, and asks them to abandon their

neutral fact finding role."); *State v. Rhodes*, 988 S.W.2d 521, 528-29 (Mo. 1999) (*en banc*)

(setting aside death sentence because prosecutor asked jurors "to imagine themselves in the place

of the victim experiencing every detail of the crime"); *Urbin v. State*, 714 So. 2d 411, 419 (Fla.

1998) ("placing the jury in the position of the victim and having them imagine their pain"); *Wells*

*v. State*, 698 So. 2d 497, 507 (Miss. 1997) (asking jurors to imagine their children as the victim);

*Witter v. State*, 921 P.2d 886, 899 (Nev. 1996), *abrogated in part on other grounds, Byford v.*

*State*, 994 P.2d 700 (Nev. 2000); *State v. Storey*, 901 S.W.2d 886, 901 (Mo. 1995) ("Asking the

jury to 'put themselves in [the victim's] place,' then graphically detailing the crime as if the

jurors were the victims, could only arouse fear in the jury.  This argument was grossly

improper."); *Dean v. Commonwealth*, 777 S.W.2d 900, 904 (Ky. 1989) (prosecutors may not

"sensationaliz[e] [a] victim's suffering," for instance by rhetorically asking: "Can you imagine

the fear that went through the life of [the victim] on this day? . . .  Can you imagine the fear and

embarrassment . . . the terror . . . the humiliation?"), *overruled on other grounds*, *Caudill v.*

*Commonwealth*, 120 S.W.3d 635 (Ky. 2003); *Garron v. State*, 528 So. 2d 353, 358-59 (Fla.

1988) (reversing first-degree murder conviction and death sentence, in part, because the prosecutor invited the jurors to imagine themselves in the place of the victim); *People v. Spreitzer*, 525 N.E.2d 30, 45 (Ill. 1988) (asking jurors to put themselves "in the shoes" of the victim and imagine her feelings); *Bertolotti v. State*, 476 So. 2d 130, 133 (Fla. 1985) (prosecutor urged the jury to place themselves in the position of the victim and imagine the victim's "final pain, terror and defenselessness").

"Imagine you're the victim" arguments are improper for several reasons. First, putting thoughts and words "in the victim's mouth" tends to "unduly create, arouse and inflame the sympathy, prejudice and passions of the jury." *Urbin*, 714 So. 2d at 421 (citation omitted). This induces jurors to improperly decide the case based on these overwhelming passions rather than on a "reasoned moral response" to the aggravating and mitigating factors. *Penry v. Johnson*, 532 U.S. 782, 788 (2001). *See Storey*, 901 S.W.2d at 901 (asking jurors to imagine themselves as the victim "could only arouse fear in the jury" and thus was "grossly improper").

Second, these arguments encourage jurors to experience the crime as the victim or a relative of the victim did. Thus, to the extent they encourage any view of the evidence, other than just an overwhelming emotional response, it is the biased view of a participant rather than the disinterested outsider that each juror should be. *See Fields v. Woodford*, 309 F.3d 1095, *as amended*, 315 F.3d 1062 (9th Cir. 2002) ("think of yourself as [the victim]" argument "inappropriately obscure[s] the fact that [the prosecutor's] role is to vindicate the public's interest in punishing crime, not to exact revenge on behalf of an individual victim") (*citing Drayden v. White*, 232 F.3d 704, 712-13 (9th Cir. 2000)). A prosecutor may not ask jurors to place themselves in the shoes of the victim because "a juror doing that would be no fairer judge

-28-

of the case than the party or victim herself." *Rhodes*, 988 S.W.2d at 527 (citation omitted). *See also Mathis*, 744 F. Supp. at 275 n.4 (improper to ask jurors to imagine their parents as the victim, since such a juror would have been disqualified); *State v. White*, 144 S.E.2d 481, 483 (S.C. 1965) (asking jurors to imagine their loved ones as the victim removed "the necessary element of impartiality" from capital sentencing decision).

Finally, arguments in which a prosecutor purports to recreate the deceased victim's thoughts and feelings as the crime unfolded are nothing more than "gross speculation." *Combs v. Coyle*, 205 F.3d 269, 292-293 (6th Cir. 2000). *See also Land v. Allen*, 573 F.3d 1211, 1219-20 (11th Cir. 2009) (where no direct evidence of events at victim's home, improper for prosecution invite the jurors to speculate on interactions between defendant and victim; "The prosecutor exceeded the bounds of appropriate conduct by claiming to describe exactly what happened, and particularly what was said, with such specificity."); *United States v. Rodriguez*, 581 F.3d 775, 803 (8th Cir. 2009) (direct review of federal death sentence; government asking jurors to imagine the victim's "raw fear of what would be her fate as the Defendant drove her into the night" was impermissible because government introduced no evidence of the victim's fear); *Urbin*, 714 So. 2d at 421 (prosecutor "went far beyond the evidence in emotionally creating an imaginary script demonstrating that the victim was shot while 'pleading for his life'"). Speculating about matters not in evidence is a quintessential form of prosecutorial misconduct. *See* Section 27, *post*.

Examples of forbidden golden-rule argument include:

• I have a very personal interest in this case and I suppose that is why I am here today. Little Bob Bell, twelve years old, started out in the first grade at Burton School with my twelve year old daughter.

-29-

> They started, they have gone through school together. Burton School, Stokes School, would have gone to John Trotwood Moore together this year. It could have been my little girl that was in that store, a witness eliminated. It could have been you. It could have been your children. It could have been any one of us, if we decided that we wanted to buy something from Bob Bell, at nine fifty-eight on July 5, 1980, we would have been dead.

*Johnson*, 525 F.3d at 484.

- [P]ut [yourselves] in the victim's shoes. Each and every day you get up, you put on your clothes, and you go to work. You tie your shoes, you get off-you get off to work, you kiss your wife and your kids, if you have any, goodbye. And you don't know what the day might bring. You only have hope. And he left that particular night, on the 25th, hoping it to be just like an ordinary day in terms of what he would do. He didn't have the chance to tell Angela goodbye. He didn't have the chance to tell his two sons goodbye. . . . And if you find this man guilty, I submit to you he'll have more than 2 minutes and 11 seconds to ponder his death, much more than Richard Yost.

*Wilson*, 536 F.3d at 1119.

- Now, the most important single fact that you need to think about right now, and what I want to ask you to think about right now, is

-30-

you're at home, any of these homes; you're at home at the

Tidwells' house, the Millers' house, or the Pitmans' house.  It's an

ordinary night.  Nothing different is going on.  You're just at home.

'Cause these people were selected at random.  These three people

were selected at random by the defendant.  They were selected the

same way you all were; just like you were selected at random

through the process; they knew not that they were going to be

caught up in this huge conflict.  They knew not that they were

going to be drug into court some day and asked all these questions.

They were selected at random by this man.  Now, that makes them

exactly like you, in a way.

*Boyle*, 201 F.3d at 715.

**9.    Inflaming the Jurors' Fears for Their Own Safety or That of Others Close to Them**

Similarly, it is improper for the government, in urging a death sentence, to incite the jurors' fears for their own personal safety or that of their families or neighborhoods.  "[I]nvoking a jury's general fear of crime to encourage the application of the death penalty in a particular case is unfairly inflammatory."  *Weaver v. Bowersox*, 438 F.3d 832, 841 (8th Cir. 2006), *cert. dismissed sub nom.*, *Roper v. Weaver*, 550 U.S. 598 (2007).

Thus, courts have condemned as improper arguments such as the following:

•    The prosecutor began his closing at the penalty phase by referring to a "television news report . . . about gangs in Los Angeles" and

-31-

stating that "members of the street gangs were murdering each other" in a violent fight for turf.  The prosecutor then went on to state that the gang shootings made his "blood boil," and that this case made him want to "weep and cry" because it was "the same thing, right here in our backyards."

*Copeland v. Washington*, 232 F.3d 969, 972-73 (8th Cir. 2000) (affirming grant of habeas relief based, in part, on prosecutorial misconduct; "This was the sort of argument that would result in 'mob justice' rather than result in a reasoned deliberation.").

- The prosecutor argued that jury would be taking "terrible risk" if it sentenced defendant "to life imprisonment with him having escaped once already."

*Miller v. Lockhart*, 65 F.3d 676, 682 (8th Cir. 1995) (affirming grant of habeas relief based on prosecutorial misconduct).

- "You live in this community.  Your family goes to school in this community.  Your wife attends the grocery store in this community.  Your children attend the baseball games and the football games in this community.  Your daughter is a cheerleader in this community.  In your hands lies the safety of not only your family but the family of every other member of [this county] from the hands, the violent hands of the defendant in this case."

-32-

*Mathis v. Zant*, 744 F. Supp. 272, 275-76 (N.D. Ga. 1990) (granting habeas relief in part based on prosecution's improper penalty-phase closing argument), *judgment vacated in part on other grounds*, 975 F.2d 1493 (11th Cir. 1992).

### 10.    Suggesting Jurors Will Bear Responsibility for Future Acts of Violence

It is one thing to ask jurors to make a reasoned determination about the likelihood that a defendant will commit serious acts of violence in the future.  It is quite another to suggest that a vote for life will make them personally complicit in such an act:  To quote one AUSA's argument, "if you, the jurors," make the mistake of being "willing to assume" the "risk" of letting the defendant live, the result will be "another victim in the future that didn't have to die."[12]  Such an argument cannot help but galvanize the jurors' fears, and encourage a future-danger finding — and a resulting death verdict — on impermissibly emotional grounds.

A prosecutor may argue that the defendant poses a future danger:  "What are prohibited are arguments which directly or by implication, place responsibility on the jury for the deaths of unknown future victims."  *State v. Schoels*, 966 P.2d 735, 749 (Nev. 1998); *see also id.* at 739-40 (in future danger argument, prosecutor improperly "suggested, at least by strong implication, that the jury would be responsible for the deaths of future innocent victims if a death penalty verdict was not returned").

---

[12] *See United States v. Wilson*, No. 1:04-cr-01016-NGG, Tr.1641 (E.D.N.Y. Jan. 29, 2007).  On appeal, the Second Circuit, which reversed defendant's death sentences and remanding for a new sentencing hearing because of other instances of prosecutorial misconduct during penalty-phase summations, did not address the AUSA's statements set out above.

-33-

Thus, such arguments have been condemned:

- By permitting this man to live, we in essence become an
accomplice. We have assisted him in his criminal undertaking. If
you, based on the law and the facts of this case, choose not to
execute the defendant, you have passively issued a warrant of
execution for someone else. We don't know who it is. We don't
know when it will take place; but ladies and gentlemen, I think you
can see from the proof in this case that the only thing that will be
left out of that warrant of execution that someone else is to receive,
if this man lives, is the name of the victim and the date that it takes
place. . . . *Where is fundamental fairness in that, to let this man
live and, in essence, to sentence someone else to die? If he goes to
the state penitentiary under a life sentence and he is permitted to
be among the general population in the facility where he is going
to be housed, by your actions of voting for life for him, you are
voting for death for someone else.* Where is the fairness? Where
is the justice in permitting him to go down and execute some
individual who is in the penitentiary for grand larceny? Grand
larceny never has been and never will be a capital crime in this
state. Sure, the men in the penitentiary are criminals, and some of
them have committed the act of grand larceny or some other felony
offense. Sure, he has an obligation to serve a sentence. He must

-34-

be punished, but he doesn't deserve the death penalty. Don't let

Bates be his executioner.

. . .

There are other people in the penitentiary system that deserve our

protection: the administrative staff there, the guards. . . . *Please*

*don't vote for life for [the defendant] and death for them.*

*Bates v. Bell*, 402 F.3d 635, 642 (6th Cir. 2005) (emphasis in original); *see also id.* at 644,

648-49 (granting habeas relief based, in part, on this prosecutorial misconduct, which the court

deemed an improper "appeal to the fears of individual jurors and to emotion").

- Can we be guaranteed that for the next 30 or 40 years, a person

  who is sitting in prison the rest of his life is not going to flare up

  and get angry at a guard, like he did [when housed at prior

  detention facility]. . . . So the question is simply this: Do we

  execute a person who has killed not once, but two times, or do we

  risk the execution of some very innocent people?

*Sherman v. State*, 965 P.2d 903, 914-15 (Nev. 1998).

- And let's say you fall for that fraud [the defense] and you say well, gee, I

  just can't bring myself to do what I should do, and I am going to impose

  life without parole. You don't die in prison of old age. People get out.

  Now, are you prepared to risk the life of some other person or child by

  giving him the opportunity to get out? That will be your risk. That will be

  your burden.

-35-

*Sechrest v. Ignacio*, 549 F.3d 789, 808, 811 (9th Cir. 2008) (argument improperly inflamed the passions of the jury).

- [Y]ou are the only people in the entire world that can stop [the defendant] from killing. . . . The next victim . . . will be on your conscience.

*Tucker v. Kemp*, 762 F.2d 1496, 1508, 1509 (11th Cir. 1985) (*en banc*) (condemning "inflammatory" remarks).

### 11.    Portraying Jurors as an Arm of Law Enforcement

Relatedly, the jury is not "an arm of the prosecution." *Williams v. State*, 522 So. 2d 201, 209 (Miss. 1988). The function of the jurors is "impartial arbitration between the defendant and the government," not "law enforcement." *United States v. Caro*, 597 F.3d 608, 626 (4th Cir. 2010) (direct appeal of federal death sentence); *see also Cargle v. Mullin*, 317 F.3d 1196, 1222-23 (10th Cir. 2003) ("extremely improper" for prosecutor to suggest to jurors they "are part of 'the team' of the prosecution and police, rather than impartial arbiters between the State and the defendant"); *Weaver v. Bowersox*, 438 F.3d 832, 840-41 (8th Cir. 2002) (argument that the death penalty was "necessary to sustain a societal effort as part of the 'war on drugs'" is improper as it "prevents an individual determination of the appropriateness of capital punishment," and is "unfairly inflammatory" because it "invok[es] a jury's general fear of crime to encourage the application of the death penalty in a particular case") (citations omitted); *Commonwealth v. Mitchell*, 165 S.W.3d 129, 132 (Ky. 2005) ("[T]he Commonwealth . . . is not at liberty to place upon the jury the burden of doing what is necessary to protect the community.") (citation omitted); *State v. Smith*, 554 So. 2d 676, 684 (La. 1989) ("[I]t is highly improper and prejudicial

-36-

for a prosecutor to turn his argument to the jury into a plebiscite on crime or to refer to the consequences to society of the jury's verdict."), *overruled in part on other grounds*, *State v. Taylor*, 669 So. 2d 364 (La. 1996).

In *Caro*, the government, during its penalty-phase closing, had stressed that only a death sentence could "control" the defendant. Particularly, the government indicated that a death sentence should be imposed because the BOP would not secure the defendant adequately to prevent future violence. After urging that the BOP system is not "fail-safe," the government urged, "There is one thing that we can do." 597 F.3d at 625. It continued, "[W]hat is the way that we can deter Carlos Caro? When I say we, this is something I can't do, the judge can't do it, because the question of the death penalty, ladies and gentlemen, is left exclusively to you, the jury. It's your decision." *Id.* The government concluded:

- So, ladies and gentlemen, we now come to you. You're it. I'm the United States Attorney, powerless to control Caro. United States District Judge, federal judge, powerless to do it. The law allows one last option, and that is you. And only you. Judge Jones will do what you say. You go back there and find a unanimous verdict for life, that's what he will impose. You find death, that's what he'll do. The authority and the responsibility for the control of Carlos David Caro is in your hands. We have done all we can do. And so we come to you.

*Id.*

-37-

2952

On appeal, the Fourth Circuit held that the government's arguments were "troubling," in part because "calling upon the jury to 'control' Caro gives them a role more akin to law enforcement than to impartial arbitration between the defendant and government," *id.* at 626 (*citing United States v. Young*, 470 U.S. 1, 18 (1985)), but declined to reverse, concluding that the government's remarks had been isolated, were counterbalanced by court's instructions, and that the evidence of future danger was strong, *id.* at 626-27.

Other examples of such improper argument include:

- Ladies and gentlemen, you the jury, [assistant district attorney] Mrs. Smith and me, and the police, all fulfilled their roles in this case because that's our duty. . . . [T]his defendant . . . committed a crime so vile, so vicious, so despicable, so unnecessary that the death penalty is the only answer. Sure your job is hard, but you can do it. Only you can do it. The police department has done all that it can do. When I sit down, Mrs. Smith and I will have done all that we can do. Only the 12 of you can finish the job by going up in that jury room and bringing back a verdict of death. Unless you do that, the efforts of the police department and my office have all been in vain.

*Cargle*, 317 F.3d at 1122-23 (condemning "this extremely improper argument, suggesting that the "improper jury argument may very well have been so prejudicial in itself as to render the penalty-phase proceedings fundamentally," and granting habeas relief because, when considered

-38-

with the other errors at the sentencing stage, the court had "no difficulty finding cumulative

error").

> • 　　　　Ladies and gentlemen, opposing counsel has tried to make
>
> this appear as the Great State of Mississippi against the Defendant.
>
> Sure, this case is styled, State of Mississippi versus Fulgham, but
>
> who is the State of Mississippi?  It's the people, and you represent
>
> the people.  And, you apply the laws.  In essence, you become law
>
> enforcement personnel today.
>
> 　　　　You are law enforcers from the standpoint that you are the
>
> final decision makers and you apply the laws that the Court has
>
> instructed you on.  Now, I'd like to compare our criminal justice
>
> system to a chain.  Now, we've all heard the expression that a
>
> chain is no stronger than its weakest link.  There are several chains
>
> here.  You have the first link, law enforcement. Law enforcement
>
> has done its job.  The next link, although it means nothing here, is
>
> the grand jury.  The grand jury has indicted him.  You will not
>
> consider that fact, but that link is in the chain.  It's strong.  The
>
> prosecution is another link.  We have to prosecute.  Then, we get to
>
> the final link and that's the jury.  And, I emphasize that the chain is
>
> no stronger than its weakest link.

-39-

*Fulgham v. State*, 386 So. 2d 1099, 1101 (Miss. 1980) (argument "went too far" and should be

omitted on retrial).

> ### 12. Suggesting Jurors Must Impose Death to Prevent Incompetence or Mistakes of Other Actors

The government may not ask the jury to impose death in order to forestall the possibility

that courts or prison officials, at some date in the future, may err. "Neither the future diligence of

an appellate court nor the possibility of future incompetence of corrections and parole personnel

should be invoked to alter the jury's perception of its role at capital sentencing." *Tucker v.*

*Kemp*, 762 F.2d 1496, 1508 (11th Cir.1985) (*en banc*); *cf. Darden v. Wainwright*, 477 U.S. 168

(1986) (holding that prosecution acted improperly in arguing, in a case where defendant

committed the murder while out on weekend furlough, "I will ask you to advise the Court to give

him death. That's the only way that I know that he is not going to get out on the public. It's the

only way I know. It's the only way I can be sure of it. It's the only way that anybody can be sure

of it now, because the people that turned him loose.").

In *United States v. Caro*, 597 F.3d 608 (4th Cir. 2010), a federal capital prosecution, the

government, during its penalty-phase closing, had stressed that only a death sentence could

"control" the defendant. Particularly, the government indicated that a death sentence should be

imposed because the BOP would not secure Caro adequately to prevent future violence: "[C]an

he be controlled in the Bureau of Prisons? I suspect the answer to that question is no. . . . The

reason he can't be controlled is because the system is not failsafe." 597 F.3d at 625. Responding

to a defense expert's testimony that during a life sentence the defendant would be incapacitated

at Florence ADMAX until the BOP found him no longer dangerous, the government remarked:

-40-

"[W]hat about this classification system that the BOP has? The question is can we rely on the BOP to send Caro to a place where he won't kill? . . . [W]e know that the system for classification is not failsafe." *Id.*

On appeal, the Fourth Circuit held that the government's arguments were "troubling." Noting that the defendant is entitled to "an individualized determination on the basis of the character of the individual and the circumstances of the crime," *id.* at 626 (quoting *Zant v. Stephens*, 462 U.S. 862, 879 (1983), the court explained that, by contrast, "[t]he suggestion that the BOP would not secure Caro adequately to prevent future violence implicates policy and resource considerations that are quite different," *id.* (*citing Tucker*, 762 F.2d at 1508).

### 13. Asking the Jurors to Send a Message

At sentencing, the jurors must undertake "an individualized determination on the basis of the character of the individual and the circumstances of the crime," *United States v. Caro*, 597 F.3d 608, 625 n.17 (4th Cir. 2010) (direct appeal of federal death sentence) (*quoting Zant v. Stephens*, 462 U.S. 862, 879 (1983)).[13] Appeals to the jurors to impose a sentence of death in

---

[13] *See also*, *e.g.*, *Jones v. United States*, 527 U.S. 373, 381 (1999) ("In order for a capital sentencing scheme to pass constitutional muster, it must perform a narrowing function with respect to the class of persons eligible for the death penalty and must also ensure that capital sentencing decisions rest upon an individualized inquiry."); *Buchanan v. Angelone*, 522 U.S. 269, 274-75 (1998) (referring to "the Eighth Amendment requirement of individualized sentencing in capital cases"); *Romano v. Oklahoma*, 512 U.S. 1, 7 (1994) ("States must ensure that 'capital sentencing decisions rest on [an] individualized inquiry,' under which the 'character and record of the individual offender and the circumstances of the particular offense' are considered.") (*quoting McCleskey v. Kemp*, 481 U.S. 279 (1987)); *Harmelin v. Michigan*, 501 U.S. 957, 995 (1991) ("We have held that a capital sentence is cruel and unusual under the Eighth Amendment if it is imposed without an individualized determination that that punishment is 'appropriate [.]' ") (*citing Woodson v. North Carolina*, 428 U.S. 280, 305 (1976)).

-41-

order to "send a message" "impinge on upon the jury's duty to make an individualized determination that death is the appropriate punishment for the defendant" and, thus, are improper. *Sinisterra v. United States*, 600 F.3d 900, 910 (8th Cir. 2010) (post-conviction challenge to federal death sentence); *see also Weaver v. Bowersox*, 438 F.3d 832, 841 (8th Cir.2006) ("send a message" argument puts an "improper burden on the defendant because it prevents an individual determination of the appropriateness of capital punishment"), *cert. dismissed sub nom., Roper v. Weaver*, 550 U.S. 598 (2007); *Commonwealth v. De Jesus*, 860 A.2d 102, 116 (Pa. 2004) (same, reversing death sentence; such arguments "invite[] jurors to ignore their sworn duty to decide the matter exclusively upon the facts presented concerning the weighing of specific statutory aggravating and mitigating circumstances"); *cf. Caro*, 597 F.3d at 625 n.17 (direct appeal of federal death sentence; suggesting, without deciding, that, "the government's comments about messages sent to anyone other than Caro might have been improper" in violation of defendant's right to an individualized sentencing determination).

"Send a message" arguments also improperly "encumber an individual defendant with the responsibility for the nation's . . . problems, in addition to the defendant's personal crimes and misdeeds." *Sinisterra*, 600 F.3d at 910; *see United States v. Johnson*, 968 F.2d 768, 771 (8th Cir. 1992) (same).[14] Similarly, the prosecution "puts too significant a burden on a single defendant" when it "instructs the jury to . . . send a message from one case to another." *Sinisterra*, 600 F.3d

---

[14] *See also, e.g., United States v. Solivan*, 937 F.2d 1146, 1153-54 (6th Cir. 1991) ("[G]overnment prosecutors are not at liberty to urge jurors to convict defendants . . . to send messages to all drug dealers. Such appeals are extremely prejudicial and harmful to the constitutional right to a fair trial."); *United States v. Reliford*, 58 F.3d 247, 251 (6th Cir. 1995) ("The jury may not convict the accused in order to send a message to the public or the community at large; they may not hold the defendant responsible for the crimes of others.").

at 910; *see also Weaver*, 438 F.3d at 841.[15]  Moreover, "send a message" constitutes an improper

"emotional appeal calculated to persuade the jury to decide the case on other than the facts before

it."  *United States v. Lee*, 743 F.2d 1240, 1253 (8th Cir. 1984).

Courts have, accordingly, condemned "send a message" in penalty-phase summations:

- It is time to turn the tables on drug traffickers like this defendant.

  Finish the message that you began with your verdict of guilt in this

  case.  Tell this defendant and those like him that murder will not be

  tolerated especially murder committed to further drug trafficking

  schemes. . . .

  . . .

  German Sinisterra believes by his actions that murdering couriers

  over a drug debt is just part of doing business.  Tell him he's

  wrong and tell the other drug traffickers of the world if they come

  to Kansas City they are going to be dealt with in the most severe

  way, they are going to receive a sentence of death.

*Sinisterra*, 600 F.3d at 910.

- It strikes right at the heart of our system.  You've got to look

  beyond William Weaver.  This isn't personal.  This is business. . . .

_____

[15] *See also*, *e.g.*, *People v. Johnson*, 803 N.E.2d 405, 420 (Ill. 2003) (denouncing "send a message" arguments because such arguments inject matters that have no real bearing on the case and "incite the jury to act out of undifferentiated passion and outrage, rather than reason and deliberation"); *Hunter v. State*, 684 So.2d 625, 637 (Miss. 1996) (court has "repeatedly" cautioned jurors not to use "send a message" argument: "The function of the jury is to weigh the evidence and determine the facts. . . . [J]urors are not [messengers].")

-43-

You have to tell the Williams Weavers and the Daryl Shurns of the world, and you have to be willing to look them right in the eye when you do it, that there's a point at which we won't allow you to go. And when you do, prison's too good. It's the death penalty.

. . .

And I'm going to beg you for the entire community and for society not to spare his life. I'm going to beg you for the right message instead of the wrong message. The right message is life? For an execution? That's the right message? That's the message you want to send to the drug dealers, the dope peddlers and the hit men they hire to do their dirty deeds: Life in prison is what you get when we catch you and convict you. Life in prison? That's the message you want to send to the scum of the world? That when we catch you and we're convinced you're guilty, we're going to give you life in prison? That's not the right message.

. . .

The message has to be death for these types of people. That's the only message they are going to understand.

The one thing you've got to get into your head, this is far more important than William Weaver. This case goes far beyond William Weaver. This touches all the dope peddlers and the murderers in the world. That's the message you have to send. It

-44-

2959

doesn't just pertain to William Weaver. It pertains to all of us, the

community. They are our streets, our neighborhoods, our family.

The message is death, not life. And you've just got to geer [sic]

yourself to that.

*Weaver*, 438 F.3d at 836-37, 840.

- He has shown you again and again that he hurts people because he

    likes to and he want to, and he has earned the right to be on death

    row. *When you think of the death penalty, there are messages to*

    *be sent. There's a message on the street saying, look at that, he*

    *got death, you see that, honey, that's why you live by the rules, so*

    *you don't end up like that. Because they're in these bad*

    *neighborhoods. . . . You also send a message in prisons.* When

    you peep in that bus and talk and whisper, you can say, death

    penalty. Maybe you've got just one inmate sitting there going,

    well, he got death, this is serious, I don't want to end up like that.

    Maybe your penalty you'll save one guy, to scare him straight.

*DeJesus*, 860 A.2d at 113, 117-19 (emphasis in original).[16]

---

[16] *Cf. Caro*, 597 F.3d at 625 n.17 (during penalty-phase summation, government argued that a life sentence (a) would tell the Texas Syndicate, "[Y]ou can kill and it's okay"; (b) would tell prison staff and inmates, "It's open season because in this community there's no punishment for murder"; and (c) would tell the victim's parents "that their son's life was meaningless"; on direct appeal court suggests, without deciding, that the arguments "might have been improper").

-45-

- Anything less [than a death sentence] in this case would only

   confirm what we see running around on the bumper stickers of

   these cars, and that is that only the victim gets the death penalty.

*Bertolotti v. State*, 476 So. 2d 130, 133  (Fla. 1985) (improper to urge the jury to consider the

message that its verdict would send to the community).

> **14.** **Asking the Jury to Vote for Death to Satisfy the Expectations of the Community**

The government may not suggest that the jury should return a sentence of death to satisfy

community expectations.  *See Whittington v. Estelle*, 704 F.2d 1418, 1423 (5th Cir. 1983)

(condemning such arguments, which "inject[ed] a new and harmful fact into evidence" by urging

"that the wishes of the community mandated a particular result"); *see also*, *e.g.*, *Ward v. Dretke*,

420 F.3d 479, 498 (5th Cir. 2005) (noting impropriety of prosecutorial argument urging jurors to

sentence on the basis of community expectations); *State v. Allen*, 994 P.2d 728, 764 (N.M. 1999)

(prosecutor engaged in misconduct in arguing in penalty phase rebuttal that jury should return

verdict based on considerations such as "community outrage," society's right to grieve, the fact

that "this is the stuff that we, as parents, fear for our children," and the need for "a stern message

from you that this conduct won't be tolerated"); *State v. Bryan*, 804 N.E.2d 433, 464 (Ohio 2004)

("'A prosecutor may not call for the jury to convict in response to public demand.' . . . Such

argument improperly suggest[s] that the jury could consider the response of public opinion when

voting on the sentence.") (citation omitted); *State v. Reed*, 362 S.E.2d 13, 15 (S.C. 1987)

2961

(condemning argument that "attempted to pressure the jury into rejecting appellant's evidence in mitigation by referring to public opinion").[17]

**15.    Suggesting that the Jurors Have a Civic Duty to Return a Sentence of Death**

The government may not argue or imply that the jurors have a "duty" to return a sentence of death. In *Viereck v. United States*, the Supreme Court found that a prosecutor's contention that the American people were relying on jurors to do their wartime duty in convicting the defendant was "an appeal wholly irrelevant to any facts or issues in the case, the purpose and effect of which could only have been to arouse passion and prejudice." 318 U.S. 236, 247 (1943). The Court noted that such argument was "highly prejudicial, and . . . offensive to the dignity and good order with which all proceedings in court should be conducted." *Id.* at 248; *see also United States v. Young*, 470 U.S. 1, 18 (1985) (holding that prosecutor engaged in misconduct in exhorting a jury to "do its job" by convicting the defendant and observing that "that kind of pressure, whether by the prosecutor or defense counsel, has no place in the administration of criminal justice") (citing ABA Standards for Criminal Justice 3-5.8(c) and 4-7.8(c)); *United States v. Sanchez*, 176 F.3d 1214, 1224-25 (9th Cir. 1999) (government committed misconduct in urging "after the marshal's service has done their duty and the court has done its duty and lawyers on both sides have done their duty, that you as jurors do your duty and well consider this matter and find these defendants guilty"); *United States v. Mandelbaum*, 803 F.2d 42, 44 (1st Cir. 1986) ("Cases are to be decided by a dispassionate review of the evidence admitted in court. There should be no suggestion that a jury has a duty to decide one

---

[17] *Overruled in part on other grounds by State v. Torrence*, 406 S.E.2d 315 (S.C. 1991) and *Franklin v. Catoe*, 552 S.E.2d 718 (S.C. 2001).

-47-

way or the other; such an appeal is designed to stir passion and can only distract a jury from its actual duty: impartiality."); *United States v. Polizzi*, 801 F.2d 1543, 1558 (9th Cir. 1986) (improper for prosecutor to tell jury it had any obligation other than weighing evidence).

In the capital-sentencing context, such arguments are "calculated to remove reason and responsibility from the sentencing process" and "diametrically opposed to the requirement that capital sentencing be at the jury's discretion." *Weaver v. Bowersox*, 438 F.3d 832, 840 (8th Cir. 2006) (citations omitted); *Le v. Mullin*, 311 F.3d 1002, 1022 (10th Cir. 2002) (error to exhort a jury to impose a death sentence on grounds of civic duty); *Brooks v. Kemp*, 762 F.2d 1383, 1412, 1413 (11th Cir. 1985) (*en banc*) (characterizing juror as soldier ordered to kill the enemy "misrepresents the task the jury is charged by law to carry out" and undermines the individualized consideration of the capital defendant), *vacated on other grounds*, 478 U.S. 1016 (1986); *Hance v. Zant*, 696 F.2d 940, 952 (11th Cir. 1983) (granting habeas relief, where prosecutor, *inter alia*, urged a sentence of death by likening jurors to soldiers at war and asking them join the war on crime through a death verdict), *overruled in part on other grounds*, *Brooks*, 762 F.2d at 1399; *see also*, *e.g.*, *Evans v. State*, 28 P.3d 498, 515 (Nev. 2001) ("highly improper" to ask the jury "if it had the 'intestinal fortitude' to do its 'legal duty'"; such arguments designed to stir a passion that can "only distract a jury from its actual duty: impartiality"); *State v. Rousan*, 961 S.W.2d 831, 851 (Mo.1998) ("Prosecutors should avoid . . . any suggestion that the jury is weak if it fails to return a certain verdict.").

Examples of arguments that courts have condemned as improperly urging that the jurors have a duty to return a sentence of death include:

In a recent federal capital prosecution, the government argued, *inter alia*,

2963

• Today, today, justice demands a sentence of death.

. . .

Don't feel guilty about doing your duty in a death penalty case.

. . .

Don't be the water that washes the blood from his hands. For every drop of blood that spilled on the floor of the Iberia Bank, sentence him to death. For every bullet that tore into the bodies of the victims, sentence him to death. And for every gurgle and every gasp of Joe Gennaro on that tile floor on May the 3rd, sentence him to death.

Do not confuse mercy with weakness. You have an obligation to uphold the law, and it takes courage to do that. The Government is confident, absolutely confident, that you have that courage.

. . .

When a career criminal kills a police officer, he deserves the death penalty. When a convict kills a second time, commits a second felony murder, it always deserves the death penalty, without exception. You don't get to commit two murders. Enough is enough.

-49-

You must not capitulate.  You must be vigilant.  Anything less than a sentence of death in this case is a failure of will and a wholly inadequate response to the senseless murder of a man who dedicated his life to protecting us.  Don't have a tepid or timid response.  Respond in kind and make sure your response is certain.  Express your outrage and our outrage and our unyielding commitment to protect those who protect us.

*United States v. Johnson*, 713 F. Supp. 2d 595 634 (E.D. La. 2010).  The district court granted defendant's motion for a new sentencing hearing in part based on this argument: "The Court finds that the prosecutor rebuttal charging the jury with capitulation, a failure of will and washing the blood from the defendant's hands if they returned a verdict other than death was a highly improper emotional appeal to stir the jurors passions and distract them from their actual duty, which was to decide the case impartially." *Id.* at 32 (citation omitted).  •I know there's a movie, Patton, and in the movie, George Patton was talking to his troops because the next day they were going to go out in battle and they were scared as young soldiers.  And he's explaining to them that I know that some of you are going to get killed and some of you are going to do some killing tomorrow morning.  And they all knew that.  And he was going to try to encourage them that sometimes you've got to kill and sometimes you've got to risk death because it's right.  He said: But tomorrow when you reach over and put your hand in the pile of goo that a moment before was your best friend's face, you'll know what to do.

. . .

-50-

> Sometimes killing is not only fair and justified; it's right. Sometimes it's your duty. There are times when you have to kill in this life and it's the right thing to do. If [the victim] had been able to get his gun out that day, would you have said it was right for him to kill [the defendant]? Of course, you would. It would have been self-defense. Well, it was right to kill then and it's right to kill him now.

*Weaver*, 438 F.3d at 836; *see also*, *id.* at 840 (concluding that describing jurors as soldiers with a duty "eviscerates the concept of discretion afforded to a jury as required by the Eighth Amendment").

- Some of you may be tempted to take the easy way out, and by that, I mean, you may be tempted not to weigh all of these aggravating circumstances and to consider the mitigating circumstances. That you may not want to carry out your full responsibility under the law and just decide to take the easy way out and to vote for death. I'm sorry, vote for life. . . . I ask you not to be tempted to do that, I ask you to follow the law, to carefully weigh the aggravating circumstances, to consider the mitigating circumstances, and you will see these aggravating circumstances clearly outweigh any mitigating circumstances if there are any. And then under the law and the facts death is a proper recommendation.

<div align="center">-51-</div>

*Ferrell v. State*, 29 So. 3d 959, 987 (Fla. 2010); *see also State v. Brooks*, 762 So. 2d 879, 903-04 (Fla. 2000) (error to argue "I'm concerned . . . that you may want to . . . take the easy way out and just quickly vote for life.  I submit to you, don't do that: follow the law, do your duty."); *Urbin v. State*, 714 So. 2d 411, 421 (Fla.1998) (condemning prosecution's penalty-phase closing argument: "[M]y concern is that some of you may be tempted to take the easy way out, to not weigh the aggravating circumstances and the mitigating circumstances and not want to fully carry out your responsibility and just vote for life.").

- I'm going to ask you to return the verdict that's called for by your oath, by the law, by the evidence, that the aggravating factors here, shotgun murder, robbery, here far outweigh those minuscule excuses that he has proffered.

  . . .

  I will thank you now one last time for your courage not to flinch in applying the law. Courage and weigh well.

*State v. Pennington*, 575 A.2d 816, 831 (N.J. 1990), *overruled in part on other grounds*, *State v. Brunson*, 625 A.2d 1085 (N.J. 1993).

- I'm asking you to do your duty.  Stand tall.

*State v. Cauthern*, 967 S.W.2d 726, 737 (Tenn. 1998).

### 15. Commenting on the Costs or Comforts of Life Imprisonment

The government may not argue to the jury that it should impose a sentence of death to avoid the costs inherent in a sentence of life imprisonment without parole.  As the Eighth Circuit has explained, "[t]here is simply no legal or ethical justification for imposing the death penalty

-52-

2967

on [the basis of cost] and it is not a proper factor to be considered by the jury, for it does not reflect the properly considered circumstances of the crime or the character of the individual." *Blair v. Armontrout*, 916 F.2d 1310, 1323 (8th Cir. 1990); *see also Miller v. Lockhart*, 65 F.3d 676, 682, 685 (8th Cir. 1995) (same; improper to refer to "tremendous burden" that life imprisonment would "put on the taxpayers" and to ask the jury to consider "[t]he cost of food, clothing, shelter, and guards"); *Brooks v. Kemp*, 762 F.2d 1383, 1412 (11th Cir.1985) (*en banc*) ("clearly improper" to argue that death should be imposed because it is cheaper than life imprisonment; "cost is not accepted as a legitimate justification for the death penalty"), *vacated on other grounds*, 478 U.S. 1016 (1986).[18]

Examples of argument that improperly urges the cost of life imprisonment as a factor weighing in favor of a death sentence include:

- Why should you and I, as lawful, working citizens of this community, work the rest of our natural lives just so [defendant] can live in the penitentiary for the rest of his natural life . . . ?

*Antwine v. Delo*, 54 F.3d 1357, 1364 (8th Cir. 1995) (condemning argument as "improper, unsupported, and inaccurate").

- What's the other reason for not giving this defendant the death penalty? That, if he gets a life sentence for murder, why he'll be up there at Parchman and won't see daylight for ten years. Do you believe that? Do you believe they're going to put him in some hole

---

[18] In noncapital federal sentencing too, courts may not consider costs of imprisonment. *See, e.g., United States v. Pepper*, 570 F.3d 958, 965-66 (8th Cir. 2009).

-53-

> and he isn't gonna see daylight for ten years?  Or do you believe
>
> he's gonna go up there and watch television and live off the
>
> taxpayers' money for ten years?  And get fed and housed and given
>
> all the conveniences of life.  For what.  For killing him
>
> ([prosecutor] holding up exhibit [of victim] ).

*Edwards v. Scroggy*, 849 F.2d 204, 210 (5th Cir. 1988) (government's argument "improper").

A variation on argument that improperly focuses the jurors on the irrelevant consideration of the costs of life imprisonment was discussed above, under the heading "Comparative Justice," *ante*: argument that compares the plight of the victim to the defendant's life in prison.  *See, e.g., United States v. Johnson*, 495 F.3d 951, 979 (8th Cir. 2007) (direct appeal of federal judgment of death; government "strayed over the line" and "went beyond the bounds of permissible argument," in government noting that ten, twenty, thirty years from now the child victims will still be dead and arguing "No matter how small [the defendant's] cell may be, it's going to be larger than the coffin that [the victims] are laying [sic] in now."); *Bland v. Sirmons*, 459 F.3d 999, 1027 (10th Cir. 2006) (condemning "Maybe the Defendant will be in prison, maybe he will be behind that concrete and those jail bars with his T.V. and his cable and good food.  But one thing . . . is for sure, [the victim] won't be here and his family won't be able to be with him, they won't be able to share holidays with him."); *Le v. Mullins*, 311 F.3d 1002, 1014-16 (10th Cir. 2002) (improper for prosecutor to argue, inter alia, "[D]o you really think that justice would be done if this man goes to prison, gets three meals a day and a clean bed every night and regular visits from his family while [the victim] lays [sic] cold in his grave[?]"); *Duckett v. Mullin*, 306 F.3d 982, 992 (10th Cir.2002) (improper to ask whether it would be "justice [to] send this man

down to prison, let him have clean sheets to sleep on every night, three good meals a day, visits by his friends and family, while [the victim] lies cold in his grave?"); *United States v. Johnson*, 713 F. Supp. 2d 595, 631 (E.D. La. May 18, 2010) (granting motion for new sentencing hearing in federal capital prosecution in part based on government's argument that "He [defense counsel] essentially asks you to send him [Johnson] to his room where he gets privileges, three squares, and the ability to have visitors. The only visitors that [the victim] will have come to his grave site.")

Even without an express comparison to the victim, such appeals "make light of the penalty of life in prison," *Bland*, 459 F.3d at 1028, and call to the juror's minds the costs of imprisoning the defendant for life – a factor that cannot be considered in deliberating between life and death.

### 16.   Appealing to Religious Authority

A prosecutor's suggestion that God, or some religious authority, requires the death penalty "violates the Eighth Amendment principle that the death penalty may be constitutionally imposed only when the jury makes findings under a sentencing scheme that carefully focuses the jury on the specific facts it is to consider in reaching a verdict," *Sandoval v. Calderon*, 241 F.3d 765, 776 (9th Cir. 2001) (citations omitted).  "[A]ny suggestion that the jury may base its decision on a 'higher law' than that of the court in which it sits is forbidden.  The obvious danger of such a suggestion is that the jury will give less weight to, or perhaps even disregard, the legal

-55-

instructions given it by the trial judge in favor of the asserted higher law." *Id.* (citations

omitted).[19]

For these reasons, such arguments "have been condemned by virtually every federal and

state court to consider their challenge." *Id.* at 777; *see*, *e.g., United States v. Giry*, 818 F.2d 120,

133 (1st Cir. 1987) (reference to Bible is improper appeal to jurors' private religious beliefs);

*Malone v. State*, 168 P.3d 185, 209 (Okla. Ct. Crim. App. 2007) (witness's and prosecutors'

"invocation of religious belief and obligation in the context of a capital sentencing

recommendation [was] totally inappropriate"); *Carruthers v. State*, 528 S.E.2d 217, 221 (Ga.

2000) (biblical references "inject the often irrelevant and inflammatory issue of religion into the

sentencing process and improperly appeal to the religious beliefs of jurors in their decision on

whether a person should live or die"), *overruled in part on other grounds*, *Vergara v. State*, 657

S.E.2d 863 (Ga. 2008); *Washington v. State*, 989 P.2d 960, 978-79 (Okla. Ct. Crim. App. 1999)

("We have condemned prosecutors who attempt to make the capital sentencing decision

somehow easier by implying God is on the side of a death sentence as an intolerable self-serving

perversion of Christian faith as well as the criminal law of Oklahoma."); *People v. Hill*, 952 P.2d

673, 693 (Cal. 1998) ("an appeal to religious authority in support of the death penalty is improper

because it tends to diminish the jury's personal sense of responsibility for the verdict . . . and also

carries the potential the jury will believe a higher law should be applied and ignore the trial

court's instructions.").

An example of such an improper appeal to religion includes:

---

[19] "Argument involving religious authority also undercuts the jurys own sense of responsibility for imposing the death penalty." *Id.* at 777.

-56-

- [Defense counsel] says don't play God.  Let every person be in subjection to the governing authorities for there is no authority except from God and those which are established by God.  Therefore, he who resists authority has opposed the ordinance of God, and they who have opposed will receive condemnations upon themselves for rulers are not a cause of fear for good behavior, but for evil.  Do you want to have no fear of authority?  Do what is good and you will have praise for the same for it is a minister of God to you for good.  But if you do what is evil, be afraid for it does not bear the sword for nothing for it is a minister of God an avenger who brings wrath upon one who practices evil.

  You are not playing God.  You are doing what God says. This might be the only opportunity to wake him up.  God will destroy the body to save the soul.  Make him get himself right.

  [D]on't be fooled by what's to come [in defense's rebuttal].  Let him have the opportunity to get his soul right.  That's the only way to get his attention.  You are not playing God.  God ordains authority.

*Sandoval*, 241 F.3d at 775 n.1.

-57-

2972

### 17.    Vouching or Bolstering

It is highly improper for any attorney for the government to intimate to the jury his or her own personal beliefs or opinions.  The Supreme Court has held that a prosecutor's "vouching" poses twin dangers:

> Such comments can convey the impression that evidence not presented to the jury, but known to the prosecutor, supports the charges against the defendant and can thus jeopardize the defendant's right to be tried solely on the basis of the evidence presented to the jury; and the prosecutor's opinion carries with it the imprimatur of the Government and may induce the jury to trust the Government's judgment rather than its own view of the evidence.

*United States v. Young*, 470 U.S. 1, 18-19 (1985) (*citing Berger v. United States*, 295 U.S. 78, 88-89 (1935)).

Thus, courts have universally held that the government may not state an opinion as to the veracity of witnesses*.  See Young*, 470 U.S. at 18; *see also*, *e.g.*, *Parker v. Allen*, 565 F.3d 1258, 1273 (11th Cir. 2009) (improper for prosecutor to argue "I submit to you at least from the State's witnesses they were trying very hard to tell you the truth and the truth as they saw it . . . .  [W]e vouch for the credibility of those witnesses by putting them on the stand and I submit to you that they've told the truth . . . ."); *Bates v. Bell*, 402 F.3d 635, 644-45 (2005) (finding a prosecutor's statements to be improper where he stated, when discussing the testimony of mitigation witnesses, "You don't believe that, and I don't believe it [either].").

There are no "magic words" to identify improper vouching.  *See Hodge v. Hurley*, 426 F.3d 368, 379 n.21 (6th Cir. 2005) ("We have previously indicated that it is not necessary for the

-58-

prosecutor actually to use the words 'I believe,' or any similar phrase, for a statement to constitute improper comment on the credibility of witnesses."). The government engages in misconduct merely by seeking to cloak a witness in the prestige of the government or suggesting that evidence outside the record supports the witness. In *Hodge*, for example, the Sixth Circuit found reversible misconduct in prosecution's assertion, without reference to the testimony or other evidence, that the government witness was "absolutely believable" and that defense witnesses were "lying," *id.* at 378: "[B]ecause these statements by the prosecutor were not coupled with a more detailed analysis of the evidence actually adduced at trial, they convey[ed] an impression to the jury that they should simply trust the State's judgment that [the government witness] was a credible witness and that the defendant's witnesses were non-credible, if not perjurious," *id.* at 378-79; *see also*, *e.g., Douglas v. Workman*, 560 F.3d 1156, 1179-80 (10th Cir. 2009) (prosecution's argument strayed beyond permissible commentary on witness's credibility and "raised the implication that his belief in the truthfulness of [the witness's] testimony is rooted in his knowledge of facts outside the evidence already presented"); *United States v. Sanchez*, 176 F.3d 1214, 1224 (9th Cir. 1999) (government improperly vouched for its witness by arguing that if its witness testified falsely, "the reputation of the [D]epartment of [J]ustice would be put on the line to solicit false testimony just to prove up a case against these two defendants").[20]

---

[20] *See also*, *e.g.*, *United States v. Gracia*, 522 F.3d 597 (5th Cir. 2008) (reversal, on plain error review, based on prosecutor's repeated statements in rebuttal argument that he personally believed the agents' testimony); *United States v. Carroll*, 26 F.3d 1380 (6th Cir. 1994) (reversal based on prosecutor's argument that government witness' plea agreement ensured that his testimony was credible); *United States v. Manning*, 23 F.3d 570 (1st Cir. 1994) (reversal where prosecutor vouched for key witness' credibility); *United States v. Kerr*,

2974

Nor may the government state an opinion regarding its own case, the defense mitigation case, the defendant, or the defense counsel. *See*, *e.g.*, *Sechrest v. Ignacio*, 549 F.3d 789, 810-11 (9th Cir. 2008) (prosecutor committed "flagrant misconduct," in support of his own unfounded, inaccurate assertions of parole eligibility, by "representing" to the jury that "as a lawyer, as an attorney for the people of this county," "the pardons board has the authority to commute [a sentence of life without possibility of parole] tomorrow if they want to."); *Beuke v. Houk*, 537 F.3d 618, 649 (6th Cir. 2008) (improper for the prosecution to state that he was "scared to death of [defendant]"); *United States v. Galloway*, 316 F.3d 624, 632-33 (6th Cir.2003) (finding a prosecutor's statements to be improper where he stated, "I have tried several cases myself where we see the [defendant make this argument]."); *Boyle v. Million*, 201 F.3d 711, 715, 717 (6th Cir. 2000) (granting habeas relief based, in part, on prosecution's vouching for defendant's guilt, including statement that "[W]hat I do know for sure is he's guilty."); *United States v. Molina*, 934 F.2d 1440, 1444-45 (government's assertion there were as many as nine other law enforcement officials who would support the testimony of the three government witnesses who testified was "an improper reference to inculpatory evidence not produced at trial"); *Miller v. Lockhart*, 65 F.3d 676, 682-84 (8th Cir. 1995) (prosecutor argued at capital sentencing that in his 20-year experience with "a lot of criminals and a lot of people," he had "never seen me one that was as tough" as defendant).[21]

---

981 F.2d 1050 (9th Cir. 1992) (same); *United States v. Garza*, 608 F.2d 659 (5th Cir. 1979) (reversing conviction where prosecutor vouched for the credibility of the police officers involved in that case).

[21] *See also*, *e.g.*, *United States v. Hitt*, 473 F.3d 146 (5th Cir. 2006) (holding that it was improper for the prosecutor to bolster argument that defendant was not credible by

Finally, the government may not opine on "the appropriateness of capital punishment" in this case or as relative to other cases. *Bates v. Bell*, 402 F.3d 635, 646 (6th Cir. 2005). Such arguments are not supported by evidence adduced at trial. Moreover, because the jury must exercise its discretion in determine punishment, it is "wrong" for the prosecutor to "undermine that discretion" by implying that he or she, or another high authority, has already made the careful decision required: "This kind of abuse unfairly plays upon the jury's susceptibility to credit the prosecutor's viewpoint." *Brooks v. Kemp*, 762 F.2d 1383, 1410 (11th Cir. 1985) (*en banc*) ("[t]he discussion of the prosecutor's practice of seeking death only in a few cases during the past years was improper"), *judgment vacated on other grounds*, 478 U.S. 1016 (1986).

Courts have not hesitated to denounce as improper a prosecutor's reference to his or her own opinion as to the death worthiness of a particular defendant:

- [I]nformation furnished in this case [to the Attorney General] as to this defendant, it rose to that level [to seek the death penalty]. . . . It was . . . rational, well-reasoned, based on information that you don't have before you that this case was different [from that of accomplice].

---

arguing that the judge and defense counsel would have jumped on prosecutor for stating during cross-examination of a witness that the defendant had lied right here had the prosecutor not been right about that); *United States v. Smith*, 962 F.2d 923 (9th Cir. 1992) (reversing conviction based on prosecutor's argument that he was inherently credible as a government representative and that "if I did anything wrong in this trial, I wouldn't be here. The court wouldn't allow that to happen."); *United States v. Kerr*, 981 F.2d 1050 (9th Cir. 1992) (reversal based on prosecutor's rhetorical question of whether jurors believed that the prosecution witnesses were "hoodwinking me").

-61-

*United States v. Mitchell*, 502 F.3d 931, 995 (9th Cir. 2008) (direct appeal from a federal capital

prosecution; comment "should not have been made").

- I'm the top law enforcement officer in this county and I'm the one

  that decides in which cases to ask for the death penalty and which

  cases we won't. . . . I'm telling you there's no case that could be

  more obvious than [defendant's] was.

*Shurn v. Delo*, 177 F.3d 662, 665-66 (8th Cir. 1999).

- I've been a prosecutor for ten years and I've never asked a jury for

  a death penalty, but I can tell you in all candor, I've never seen a

  man who deserved it more than [defendant]. Today I'm talking to

  you as Prosecuting Attorney of this County -- the top law

  enforcement officer in St. Louis County.

*Newlon v. Armontrout*, 885 F.2d 1328, 1335 (8th Cir. 1989).

- There are not many times that I come before a trial jury and make

  the request that I will be making of you in this case. In effect, I

  think this is the seventh time in seven years that I've stood in the

  same position, so I do not take this lightly.

*Tucker v. Kemp*, 762 F.2d 1496, 1505 (11th Cir. 1985) (*en banc*) (argument improperly invoked

the expertise of the prosecutor to suggest the special seriousness of the crime).

- I've been with the District Attorney's Office for a little over eight

  years now and it's my recollection that we've had no more than a

  dozen times, no more than twelve times in those eight years, to

request [the death penalty] out of the thousands of cases . . . that

pass through our office.

*Hance v. Zant*, 696 F.2d 940, 951-52 (11th Cir.1983), *overruled in part on other grounds*,

*Brooks*, 762 F.2d at 1399.[22]

**18.     Suggesting Additional Evidence Beyond that Adduced at Trial**

Related to the issue of improper vouching described above, the government, of course,

may not suggest to the jury the existence of additional evidence, not adduced at trial, in support

of a sentence of death.  The defendant is entitled to a jury verdict based solely on the trial

evidence and, in addition, to test the government's evidence through cross-examination or to

introduce evidence of his own in rebuttal.  *See*, *e.g.*, *United States v. Molina-Guevara*, 96 F.3d

698, 703 (3d Cir. 1996) (reversal on appeal where prosecutor told jurors that a government agent

who did not testify would have given inculpatory testimony; violation of Confrontation Clause);

*United States v. Blakely*, 14 F.3d 1557, 1560 (11th Cir. 1994) (reversal based on prosecutor's

arguing facts not in evidence, namely, that the defendant was a career criminal); *Miller v.*

*Lockhart*, 65 F.3d 676, 682, 684-85 (8th Cir. 1995) (granting habeas corpus relief in death

penalty case where, among other things, the prosecutor argued that the defendant had a history of

escape, where no such evidence was introduced during the trial); *United States v. Molina*, 934

---

[22]*See also, e.g., Ferrell v. State*, 29 So. 3d 959, 987 (Fla. 2010) ("The State doesn't seek the death penalty in all first degree murders, it's not always proper to do that. . . .  But where the facts, where there are facts surrounding the murder that demand the death penalty, the state has an obligation to come forward and seek the death penalty.  This is one of those cases."); *Conner v. State*, 303 S.E.2d 266, 276 (Ga. 1983) ("The portion of the prosecutor's argument referring to his prior criminal experience and the frequency with which he had sought the death penalty was not supported by any evidence and, moreover, was irrelevant to any issue in the case.  The argument was therefore improper.").

F.2d 1440, 1446 (9th Cir. 1991) ("The prosecutor's assertions that there were as many as nine

other law enforcement officials who would support  testimony is an improper reference to

inculpatory evidence not produced at trial."); *United States v. Murrah*, 888 F.2d 24, 226-27 (5th

Cir. 1989) (reversing conviction in case in which, among other things, the prosecutor told jurors

that he could have called another prosecution witness to supply important facts about the crime

but did not do so because it would have been "cumulative"); *United States v. Carroll*, 678 F.2d

1208, 1210 (5th Cir. 1982) (district attorney violated defendant's Confrontation Clause rights by

suggesting in closing argument that the defendant had to have been at the scene of the crime

because he knew more about pictures than his lawyer did); *United States v. Goodwin*, 492 F.2d

1141 (5th Cir. 1974) (reversing conviction in part based on prosecutor's closing argument to jury,

in which he referred to the defendant as having been a "fugitive" during a portion of the time

leading up to the indictment, when there was no evidence offered to support this claim); *Hall v.

United States*, 419 F.2d 582, 585 (5th Cir. 1969) (reversing conviction in part based on

prosecutor's closing argument that defendant had tampered with witnesses where no evidence

supported that claim, directly or inferentially); *Ginsberg v. United States*, 257 F.2d 950, 954-55

(5th Cir. 1958) (reversing conviction where prosecutor argued that "I could probably have fifty

people in here who would show that [the defendant] isn't a good character" – in response to

defense counsel's argument that the prosecutor had not called any witnesses to contradict the

defendant's character witnesses).

19.     **Asking the Jury to Infer Lack of Remorse, or Other Aggravating**

**Factors, from Defendant's Silence or Refusal to Testify**

The government may not ask a sentencing jury to find a lack of remorse, or any other

aggravating factor, from the fact that the defendant elected to exercise his constitutional right to

remain silent and not to testify.

A prosecutor may not adversely comment on the defendant's exercise of his Fifth

Amendment privilege not to testify. *Griffin v. California*, 380 U.S. 609, 614-15 (1965).  In

federal prosecutions, this rule also derives from a statutory command.  *See* 18 U.S.C. § 3481

(defendant's failure to testify "shall not create any presumption against him"); *Bruno v. United

States*, 308 U.S. 287, 292-93 (1939) (court's refusal to give no adverse-inference charge required

reversal under Section 3481).  The privilege against self-incrimination reflects, among other

"fundamental values," the imperative of a "fair state-individual balance by requiring the

government in its contest with the individual to shoulder the entire load."  It also acknowledges

that "[i]t is not everyone, however honest, who would . . . willingly be placed on the witness

stand." *Id.* at 300.

Adverse prosecutorial comment "cut[s] down on the privilege by making its assertion

costly."  *Griffin*, 380 U.S. at 614.

Direct comment on a defendant's choice not to testify constitutes *Griffin* error.  *See*, *e.g.*,

*Gomes v. Brady*, 564 F.3d.532, 538 (1st Cir. 2009) (misconduct to argue that only defense

counsel had "take[n] the stand" to urge that defendant did not shoot victim); *United States v.

Johnston*, 127 F.3d 380, 398 (5th Cir. 1997) (misconduct for government, after referring to

defendant's constitutional right not to testify, to argue: "But what you also can't do in a situation

-65-

2980

like this is go back into that jury room and make up a story for them. That is impermissible by law. You can't play 'what if.' You can't say, 'Well, if they testified, well, maybe they would have explained this. Maybe they would have said that.' That's not allowed and that's fair."); *United States v. Rodriguez*, 627 F.2d 110, 111-12 (7th Cir. 1980) (improper for government to argue that defendant "has been very quiet" during the trial); *Eberhardt v. Bordenkircher*, 605 F.2d 275, 278 (6th Cir. 1979) (error for prosecutor to ask jurors, "what other witnesses could [the defense] have put forward who were totally available?" and then pointed in the direction of the defendant); *Hicks v. State*, 525 S.W.2d 177, 179-80 (Tex. Crim. App. 1975) (prosecutor argued, while standing behind defendant and looking down at him, "But there is somebody that we haven't heard from in this case. And I think you all know who it is.").[23]    So, too, does indirect comment. Examples of impermissible indirect comment on the defendant's choice not to testify include: arguing that the defendant is "still running and hiding today," *United States v. Hardy*, 37 F.3d 753, 757-58 (1st Cir. 1994); arguing that the government's evidence is "uncontradicted," "undenied," "unrebutted," or "undisputed," where it is apparent that only the defendant himself could refute such evidence, *see*, *e.g., United States v. Cotnam*, 88 F.3d 487, 497 (7th Cir. 1996)

---

[23] *See also*, *e.g.*, *Girts v. Yanai*, 501 F.3d 743, 755-756 (6th Cir. 2007) (arguments that "Petitioner was the 'only one person'" who could explain the crime to the jury" and that testimony of prosecution witnesses concerning statements made by defendant was "unrefuted" and "uncontradicted" were highly prejudicial); *Lincoln v. Sunn*, 807 F.2d 805, 810 (9th Cir. 1987) (improper for prosecutor to make repeated references to the failure to hear from the "only person" who could explain what happened); *Rachel v. Bordenkircher*, 590 F.2d 200, 202 (6th Cir. 1978) (prosecutor argued "We will never know [the exact circumstances leading to the death of the victim], these men [the defendants] won't tell us. The only other man who could tell us is dead and in his grave."); *Berryman v. Colbert*, 538 F.2d 1247, 1249 (6th Cir. 1976) ("Nobody was there when the robbery took place. Nobody that we can bring to testify. The defendants, here, yes, but we can't get them to testify.").

(government committed misconduct when it repeatedly referred to its evidence as "uncontroverted," when it was apparent that only the defendant himself could have refuted such evidence); *Raper v. Mintzes*, 706 F.2d 161, 165-67 (6th Cir.1983) (misconduct to refer to witness's testimony as "uncontradicted" or "unrefuted" when defendant was the only person, other than the testifying witness, with knowledge of the events)[24]; and asking how defense counsel will explain events or evidence, *see United States v. Skandier*, 758 F.2d 43, 45 (1st Cir.1985) (prosecutor's question in summation as to how the defense counsel would explain certain events was improper in a case where the defendant had not taken the stand)[25]; *State v. Cockerham*, 365 S.E.2d 22, 23 (S.C. 1988).

The constitutional rule of *Griffin* applies in full to a capital sentencing hearing, at which a convicted defendant retains a Fifth Amendment privilege. *See Estelle v. Smith*, 451 U.S. 454, 462-63 (1981) ("We can discern no basis to distinguish between the guilt and penalty phases of

---

[24] *See also, e.g., Freeman v. Lane*, 962 F.2d 1252, 1261 (7th Cir.1992) (repeated remarks that evidence was "unrebutted and uncontradicted" violated Fifth Amendment); *Williams v. Lane*, 826 F.2d 654, 664 (7th Cir. 1987) (in rape prosecution, arguments that "She [victim] told it to you and nobody else told you anything different." and "Who got up on this witness stand and told you these two were dating?" were "clearly improper and violated the Fifth Amendment"); *United States ex rel. Burke v. Greer*, 756 F.2d 1295, 1302 (7th Cir.1985) (same for "uncontradicted and undenied"); *United States v. Buege*, 578 F.2d 187, 189 (7th Cir.) (same for "uncontradicted"); *United States v. Fearns*, 501 F.2d 486, 490 (7th Cir.1974) (same for "undisputed"); *United States v. Handman*, 447 F.2d 853, 855 (7th Cir.1971) (same for "unchallenged" and "uncontradicted").

[25] *See also, e.g., United States v. Cox*, 752 F.2d 741, 745 (1st Cir. 1985) ("how-does-he-explain argument" a "fairly severe violation of *Griffin*"); *United States v. Wilkins*, 659 F.2d 769, 774 (7th Cir. 1981) (misconduct when government argued that its theory of the case was the "only explanation" put before the jury and that defense should explain why defendant was in the getaway car); *United States v. Barton*, 731 F.2d 669, 673-74 (10th Cir. 1984).

2982

respondent's capital murder trial so far as the protection of the Fifth Amendment privilege is concerned."); *see also United States v. Whitten (Wilson)*, 610 F.3d 168, 199 (2d Cir. 2010) (citing *Estelle*); *Lesko v. Lehman*, 925 F.2d 1527, 1542 (3d Cir. 1991) ("*Griffin*'s protections apply equally to the guilt and penalty phases of a death penalty trial."). Indeed, a defendant retains a limited privilege even at a non-capital sentencing hearing. *Mitchell v. United States*, 526 U.S. 314, 316-17 (1999) (court violated defendant's Fifth Amendment privilege by drawing adverse inference from her failure to testify at sentencing hearing).

In *United States v. Caro*, 597 F.3d 608 (4th Cir. 2010), the Fourth Circuit acknowledged that, under *Estelle* and *Mitchell*, the Fifth Amendment prohibits considering a federal capital defendant's silence in support of an aggravating factor of lack of remorse. *Id.* at 630. Similarly, in *United States v. Davis*, 912 F. Supp. 938 (E.D. La. 1996), the district court said the government could use the defendant's "exultation" at hearing the victim was dead, to support the future-danger aggravator. But it found that the factor of lack of remorse was not proper. Such a factor, said the court, is generally problematic, since it is difficult to prove and risks treading on defendant's constitutional rights to silence and to rest on the presumption of innocence. *Id.*; *see also United States v. Roman*, 371 F. Supp. 2d 36, 50 (D.P.R. 2005) (holding that during a capital sentencing lack of remorse may not be proved using "information that has a substantial possibility of encroaching on the defendants' constitutional right to remain silent"); *United States v. Cooper*, 91 F. Supp. 2d 90, 112-13 (D.D.C. 2000) (barring the inference of lack of remorse

-68-

from a defendant's "unwillingness to acknowledge in his post-arrest statements that he is blameworthy for the crimes to which he admitted") (internal quotations omitted).[26]

Thus, in the penalty phase of a capital trial, the government may not seek to punish the defendant for exercising his right not to testify, may not ask the jury to draw adverse inferences from his failure to testify, and may not ask the jury to find any aggravating factor, including lack of remorse or future dangerousness, from defendant's exercise of his rights not to incriminate himself.

In *Wilson*, a federal capital prosecution, in which the defendant was permitted to read from the defense table (as opposed to the witness stand) an unsworn statement of remorse, not subject to cross-examination, the AUSA argued during penalty-phase summations:

I want to talk to you a minute about the statement itself. You may have noticed

that when he made that statement, Ronell Wilson wasn't sitting up there on the

witness stand under oath, subject to cross-examination. *He chose to do it from*

*there (indicating). The path for that witness stand has never been blocked for Mr.*

---

[26] *But see United States v. Mikos*, 539 F.3d 706 (7th Cir. 2008). In a split decision (2-1; Posner, J., dissenting), the Seventh Circuit rejected the defendant's arguments that the evidence did not support this aggravating factor and that, in addressing it in summation, the prosecutor had improperly commented on his silence and failure to plead guilty. Since it is appropriate to take confessions, guilty pleas, etc., into consideration as mitigation at sentencing, said Judge Easterbrook, it is equally proper for a prosecutor to point out when none of these events have occurred. Moreover, the primary theme of the prosecutor's lack of remorse argument was the defendant's affirmative conduct after arrest (e.g., contacting potential witnesses to persuade them not to testify), rather than his silence. In *Caro*, the Fourth Circuit expressly rejected the Seventh Circuit's reasoning, 597 F.3d at 629 n.19, and, more recently in *Wilson*, the Second Circuit noted that it was "unpersuaded" by *Mikos*, 610 F.3d at 196. The Supreme Court has not addressed this apparent split in the circuits.

2984

*Wilson, had that opportunity too. He chose, like many other things in this case, to do it that way.*

*You may ask yourselves well, what more would we have if he took that stand, what would be the difference?* Well, we might have been able to ask him when did you come up with this? How did you come up with it? Why did you come up with it? Why now? Why now of all times are you sorry? We might be able to test the credibility of the statement, the veracity of it. You might have information that could help you decide if you need to believe it. Ronell Wilson didn't want that. He wanted to say it from there, ["]take my word for it now after all this, I'm sorry["].

610 F.3d at 197-98 (emphasis in original). The Second Circuit held that, although the defendant's allocution resulted in a limited waiver of his Fifth Amendment rights, which would have permitted the government to "argue for an adverse inference from a defendant's failure to *testify* as to that to which he has *allocuted*," *id.* at 200, nevertheless, the statements set out above, combined with the district court's failure to give modified no-adverse-inference instruction, pursuant to *Carter v. Kentucky*, 450 U.S. 288 (1981), created a risk that jurors considered Wilson's failure to testify at sentencing or guilt for other, more expansive purposes, *id.* And, holding that this burdening of his Fifth Amendment right not to testify, combined with other government misconduct during the penalty-phase summations, *see* Section 21, *post*, could not be deemed harmless, the Second Circuit vacated the death sentences and remanded for a new sentencing hearing, *id.* at 201-02.

-70-

Additional examples of penalty-phase arguments that have been condemned for burdening the defendant's Fifth Amendment rights include:

- Good character and record. All of the character witnesses limited their testimony to a certain period of time. . . . We heard about John Lesko up to a certain point. And I want you to consider that. John Lesko took the witness stand, and you've got to consider his arrogance. He told you how rough it was, how he lived in hell, and he didn't even have the common decency to say I'm sorry for what I did. I don't want you to put me to death, but I'm not even going to say that I'm sorry.

*Lesko*, 925 F.2d at 1540; *see also id.* at 1545 ("prosecutor's criticism of Lesko's failure to express remorse penalized the assertion of his fifth amendment privilege against self-incrimination, in violation of the rule in *Griffin*"; error, combined with additional prosecutorial misconduct at penalty-phase closings, required granting habeas relief).[27]

- Has he expressed any regrets to you, any remorse for putting to death execution style this 51 year old man? Has he even said to you I am sorry I did it? No. I think that you have got to assume that he is not sorry, that he did it. If he was sorry that he did it, he

_____

[27] In *United States v. Gabrion*, __ F.3d __, 2011 WL 3319532, *31 (6th Cir. Aug. 3, 2011), the Sixth Circuit concluded that, where the defendant had both testified at trial and delivered an allocution, the government's limited, and factually accurate, argument concerning defendant's failure to express remorse during those two appearances did not improperly attempt to penalize the defendant for exercising his constitutional rights.

-71-

would tell you that he is sorry he did it. He hasn't even said I am

sorry. He said I didn't do it when the evidence was so

overwhelming that no reasonable person could make any argument

as to whether or not the man was guilty. He just simply said I

didn't do it.

*Miller v. Lockhart*, 861 F. Supp. 1425, 1430 (E.D. Ark. 1994). On appeal, the Eighth Circuit

affirmed granting habeas relief, concluding that the prosecution's *Griffin* error, without more,

prejudiced petitioner. 65 F.3d 676, 684 (8th Cir. 1995) (prosecutor improperly argued that

defendant's failure to take the stand during the penalty phase and ask for mercy showed that

defendant was tough, uncaring, and undeserving of mercy).

### 20. Inviting the Jury to Consider Defendant's Decision to Plead Not Guilty or His Exercise of Trial Rights

Similarly, a defendant's decision to proceed to trial rather than plead guilty simply may

not be treated as a factor triggering or supporting capital punishment. In *United States v.

Jackson*, 390 U.S. 570 (1968), the Supreme Court vacated a death sentence imposed under a

scheme that exposed only defendants convicted at trial to the death penalty while exempting

those who pled guilty. "The inevitable effect of any such provision" is to "penaliz[e] those who

choose to exercise" their "Sixth Amendment right to demand a jury trial." *Id.* at 581. *See also

Zant v. Stephens*, 462 U.S. 862, 885 (1983) (capital-sentencing scheme may not "authorize[] a

jury to draw adverse inferences from conduct that is constitutionally protected," such as, "for

example . . . the request for trial by jury") (*citing Jackson*).

-72-

The lower courts, too, have since recognized that

> a capital-sentencing scheme cannot allow the jury to draw an
> adverse inference from constitutionally protected conduct such as a
> request for trial by jury; if the government invites the jury to find
> the existence of an aggravating factor based on inferences from
> conduct that is constitutionally protected . . . for example . . . the
> request for trial by jury . . . due process of law would require that
> the jury's decision to impose death be set aside.

*United States v. Whitten (Wilson)*, 610 F.3d 168, 194-95 (2d Cir. 2010) (direct appeal from federal judgment of death) (internal citation and quotation marks omitted); *see also Burns v. Gammon*, 260 F.3d 892, 896 (8th Cir. 2001) (granting habeas relief based on prosecutorial argument that urged jury to "consider the fact that Burns, by exercising his right to a jury trial and to confront witnesses," caused stress to victim); *State v. Brown*, 347 S.E.2d 882, 886-87 (S.C. 1986) (reversible error for prosecutor to ask testifying defendant at capital sentencing hearing: "You weren't sorry then?," referring to when defense put state to its proof at trial).

In *Wilson*, a federal capital prosecution under the FDPA, the government argued, concerning the defendant's unsworn statement of remorse read to the jury during sentencing proceedings:

> Ronell Wilson up until the very moment that he addressed you last
> week has done everything he could to escape responsibility for his
> crimes. *He has an absolute right to go to trial, put the government
> to its burden of proof, to prove he committed these crimes, but he*

-73-

2988

*can't have it both ways. He can't do that, then say I accept*

*responsibility. . . . And [say "]I'm sorry, only after you prove I did*

*it.["]* That's not acceptance of responsibility. That is a

manipulative criminal saying what he has to, saying what he knows

you want to hear when it's in his interest to say it.

610 F.3d at 194 (emphasis in original). The Second Circuit held that the government's

arguments – urging that the defendant's demand for a jury trial demonstrated a lack of remorse

and refusal to accept responsibility[28] – impermissibly burdened his Sixth Amendment right to a

jury trial, *id.* This, in combination with other government misconduct during the penalty-phase

summations, *see* Section 20, *ante*, could not be deemed harmless, and required reversal of his

death sentences, *id.* at 201-02.

A further example of such improper argument is:

---

[28] On appeal, the government argued that the challenged statements, which it contended aimed only at rebutting the defendant's mitigating factors, fell on the permissible side of the line that courts have drawn between "increasing the severity of a sentence for a defendant's failure to cooperate and refusing to grant leniency." *Wilson*, 610 F.3d at 195 (quoting *United States v. Stratton*, 820 F.2d 562, 564 (2d Cir.1987)). The Second Circuit rejected the government's characterization of the challenged statements, holding that the statements aimed both at establishing an aggravating factor and at rebutting the defendant's mitigating factors: "In purpose and effect, the government used Wilson's demand for trial to evidence lack of remorse and refusal to accept responsibility, characteristics offered to undermine Wilson's defenses to a sentence of death. The government also emphasized Wilson's lack of remorse as support for the aggravating factor of future dangerousness." But, in any event, the court held that the government's proposed distinction immaterial in the context of a sentencing hearing under the FDPA: "There is no doubt that the baseline sentence in this case [under the FDPA] is life without parole, and that a verdict of death is an increase in severity. . . . Wilson's constitutionally protected decision to go to trial was cited as a reason to sentence him to death, and thus to 'enhance' what would otherwise be a life sentence." *Id.*

- [I]t's offensive to me to sit here and I don't say this for any personal reason, but to be in this courtroom having asked for recesses to get my body in shape to try a case for several days, when a man sits up here and tries to mislead you first of all, into believing he's not guilty. That's offensive, to me. That's trifling with the processes of this court. I personally dislike that, and I don't mind publicly saying it, and I will say it the next time I feel it. This system we have is too precious. It took too many lives to bring it here, to let somebody come in here and take his chances on killing a man, robbing a man, trying to escape and then beg and ask the jury, not him himself, but through cross-examination and casting reflections and dispersions on witnesses. . . . The case here, Ladies and Gentlemen of the Jury, is, "Find me guilty first, and then I'll take the stand and beg you to save my life."

. . .

He's had a trial of people in Lincoln County, some of whom, I believe, knew him before this, he's had the right to have witnesses face. He's had the right to cross-examination. He's had the right to have His Honor charge the jury correctly. He's had every right afforded a human being, although sometimes I wonder if they're really entitled to it.

-75-

2990

*Cunningham v. Zant*, 928 F.2d 1006, 1019 & n.21 & n.22 (11th Cir. 1991); *see also id.* at 1019-20 (describing prosecutor's penalty-phase arguments as "outrageous"; "[The prosecutor] sought to inflame the jury and to misinform them as to the role that certain fundamental rights guaranteed by the Sixth Amendment play in our legal system and to suggest that [the defendant] was somehow not entitled to those rights.").

**21. Commenting on the Defendant's Failure to Have Discussed or Apologized for the Crime Before Trial**

A prosecutor is equally forbidden from presenting evidence or argument that the defendant declined to speak about the crime out of court after he was arrested and advised of his Fifth Amendment privilege. *See Doyle v. Ohio*, 426 U.S. 610, 617-18 (1976). Because such advice carries an implicit assurance "that silence will carry no penalty," *id.*, adverse use of that silence "violate[s] the Due Process Clause" and "fundamental fairness." *Brecht v. Abrahamson*, 507 U.S. 619, 629 (1993).

Thus, just as a prosecutor may not argue that a capital defendant lacks remorse because he did not testify, so the prosecutor may not base such an argument on the defendant's failure to speak about the crime prior to trial. *See State v. Call*, 508 S.E.2d 496, 522-23 (N.C. 1998) (death sentence reversed under *Doyle* because state elicited testimony that defendant "had not . . . expressed remorse to his jailers, in violation of his right to due process and privilege against self-incrimination"); *see also Gholson v. Estelle*, 675 F.2d 734, 736-37, 741 (5th Cir. 1982) (competency psychiatrists' testimony that defendants did not demonstrate remorse "necessarily violated their fifth amendment rights . . . . Defendants . . . maintained silence regarding their guilt

or innocence in response to questions about crimes for which they had been charged . . . . The

defendants in this case, as in every criminal case, were under no duty to confess guilt").

### 22.    Denigrating Defense Counsel or the Defense

The United States Constitution guarantees a capital defendant the rights to counsel and to

introduce relevant mitigating evidence for the jury's consideration in determining the appropriate

sentence.  The government, then, may not urge the jury to impose a sentence of death because a

defendant has exercised those rights.  Accordingly, attacks on defense counsel or on a legitimate

defense constitute grave prosecutorial misconduct.  *See United States v. Young*, 470 U.S. 1, 9

(1985) (counsel "must not be permitted to make unfounded and inflammatory attacks on the

opposing advocate"); *United States v. Montgomery*, 635 F.3d 1074, 1098 (8th Cir. 2011) (federal

capital 2255 appeal; noting that the Sixth Amendment "right to present a defense" includes the

right to offer testimony and compel witness attendance and holding that "the prosecution cannot

use the defendant's exercise of specific fundamental constitutional guarantees against him at

trial."); *Matthews v. Parker*, __ F.3d __, 2011 WL 2518895, *12-*14 (6th Cir. June 27, 2011)

(granting habeas corpus relief and setting aside convictions and death sentence; holding improper

and prejudicial prosecution arguments that cast aspersions on legitimate defense by suggesting

collusion between defendant, his attorneys, and mental health expert); *Bedford v. Collins*, 567

F.3d 225, 233 (6th Cir. 2009) ("And in all events the prosecutor may not simply belittle the

defense's witnesses or deride legitimate defenses.") (citations omitted); *Broom v. Mitchell*, 441

F.3d 392, 412-13 (6th Cir. 2006) ("It is improper to personally attack defense counsel or argue

that counsel is attempting to mislead the jury."); *Gall v. Parker*, 231 F.3d 265, 314-16 (6th Cir.

2000) (condemning prosecution's strategy of improperly criticizing "the very use of the [insanity]

-77-

defense, "rather than addressing its evidentiary merits head on"), *abrogated on other grounds as recognized in Bowling v. Parker*, 344 F.3d 487, 501 n.3 (6th Cir. 2003); *United States v. Diaz-Carreon*, 915 F.2d 951, 958 n.13 (5th Cir. 1990) ("A prosecutor may not challenge the integrity or impugn the character of defense counsel.").

Courts have universally condemned such improper argument. *See*, *e.g.*, *Hughes v. Quarterman*, 530 F.3d 336, 346-47 (5th Cir. 2008) (error to argue that defense acted improperly in cross examining child witness); *United States v. Lopez*, 414 F.3d 954, 960 (8th Cir. 2005) (prosecutor's reference to defense counsel's "slick tactics" was improper); *United States v. Holmes*, 413 F.3d 770, 775 (8th Cir. 2005) (reversing conviction on the grounds of prosecutorial misconduct because the prosecutor suggested to the jury that defense counsel was distracting it with red herrings and insinuated the defense had been fabricated); *United States v. Sanchez*, 176 F.3d 1214, 1222 (9th Cir.1999) (prosecutor argued "[T]he defense in this case read the records and then told a story to match the records. And, ladies and gentlemen, I'm going to ask you not to credit that scam that has been perpetrated on you here"; court holds that prosecutor committed misconduct "denigrating the defense as a sham"); *United States v. Bennett*, 75 F.3d 40, 46 (1st Cir. 1996) ("The prosecutor is expected to refrain from impugning, directly or through implication, the integrity or institutional role of defense counsel."); *United States v. Procopio*, 88 F.3d 21, 32 (1st Cir. 1996) (prosecutor told the jury that defense arguments were "illusions . . . a smoke screen aimed at creating . . . an illusion"); *United States v. Friedman*, 909 F.2d 705, 709 (2d Cir. 1990) (improper for prosecutor to "malign defense counsel by accusing him of willingness to make unfounded arguments" and to denigrate "defense counsel's entirely legitimate role as an advocate"); *United States v. Resto*, 824 F.2d 210, 212 (2d Cir. 1987) (stating

-78-

that references to defense tactics as "slick bits," "slyness" or "sleight-of-hand" were improper and warranted reprimand); *United States v. Biasucci*, 786 F.2d 504, 514 (2d Cir. 1986) (stating that characterization of defense questions as "nonsense" was "improper and ha[s] no place in any court"); *United States v. Burse*, 531 F.2d 1151, 1154 (2d Cir. 1976) (reversing conviction where prosecutor's misconduct included, among other things, derogatory comments about defense counsel).[29]

Examples of denigration argument in penalty-phase summations condemned by the courts include:

- Deception, manipulation is a way of life and they want you to give her credit and say she's a good wife, a good mother. She never apologized for her actions.[30]

  And then after all of that she drags those kids into court here to testify in this high profile case in front of all these people and puts them through this again and victimizes them again in front of the whole world.

---

[29] In *United States v. Whitten (Wilson)*, 610 F.3d 168, (2d Cir. Jun. 30, 2010), the Second Circuit rejected appellant's contention that the government's arguments, castigating defense counsel for (1) presenting the mitigating evidence, and (2) allegedly shifting the blame for the murders to the victims and others, required reversal. The Court did not hold that the government's arguments were proper, but concluded, instead, only that the misconduct, if any, could not be deemed severe and did not substantially prejudice appellant.

[30] The Eighth Circuit upheld, on appeal, the government's remarks about the defendant's failure to apologize to her children as proper rebuttal to the defense offer, as a mitigating circumstance, evidence that the defendant was a good mother. *Montgomery*, 635 F.3d at 1097.

-79-

. . . .

> She drug these kids in here to testify on her behalf. Don't you
> think that's painful for them. She's a good mom? Most of us, if
> we had children [and] we were involved in a situation we would
> want them a thousand miles away from this. We wouldn't make
> them come to court and testify.

*Montgomery*, 635 F.3d at 1096, 1098 ("The prosecution cannot use the defendant's exercise of specific fundamental constitutional guarantees against [her] at trial. Montgomery had the right to have her children testify at her trial  It was thus improper for the prosecutor to argue that Montgomery forced her children to testify and 'victimized them again in front of the whole world.'")

- Regardless of what defense experts are trying to sell you in this case, we also each know that we are surrounded by people, people who have made more of their lives than their troubled beginnings might have supposed.

*United States v. Rodriguez*, 581 F.3d 775, 802 (8th Cir. 2009) (direct appeal of federal death sentence; "Defense counsel was not 'selling' a case, but was instead providing constitutionally required assistance as counsel.")

- What I like to call mitigating factors are excuses for murder because we have free will.

-80-

*United States v. Mitchell*, 502 F.3d 931, 995-96 (9th Cir. 2007) (in direct appeal of federal

judgment of death, comment "should not have been made").

- [Petitioner] is arraigned, he meets his attorney and either he tells

  his attorney, I did it or I didn't do it. One way or the other. But the

  attorney knows what the evidence is. . . . And what does his

  attorney think? His attorney sees all this evidence, and he's going

  through his mind, what kind of legal excuse can I have? What's

  the man's defense? Self protection? No . . . . Protection of

  another? . . . Intoxication? Yeah, well, he was drinking that night.

  Maybe that will mean something. But that isn't enough Ladies and

  Gentlemen. [The attorney] has to contact a psychiatrist to see his

  client . . . . and by that time, [Petitioner] sees his defense in the

  form of [the psychiatrist], and do you think this guy is aware of

  what is going on? [Petitioner] is competent, he can work with his

  attorneys, and he enhances his story to [the psychiatrist].

*Matthews*, 2011 WL 2518895, at \*12; *see also id.* (holding prosecution arguments to be

misconduct requiring setting aside convictions and death sentence: "The prosecutor . . . did not

point to any substantive evidence rebutting Petitioner's EED claim. Instead, he cast aspersions

on Petitioner's EED claim by suggesting collusion between Petitioner, his attorney and his

psychiatrist . . . .").

- And he's going to do everything he can, through his attorneys, to

  take advantage of your caring, and your softness, and that softness

-81-

which creates an inability to do something difficult like, you should be sentenced to death. He's not soft, he's what he is, however he got there, but he's not soft, but he depends on your soft underbelly, your lack of courage, your lack of commitment to get out of what he's into.

*State v. Cockerham*, 365 S.E.2d 22, 23 (S.C. 1988).

- [L]et's say you fall-I am going to talk about his defense. It was a fraud. And let's say you fall for that fraud and you say well, gee, I just can't bring myself to do what I should do, and I am going to impose life without parole. You don't die in prison of old age. People get out. Now, are you prepared to risk the life of some other person or child by giving him the opportunity to get out? That will be your risk. That will be your burden.

*Sechrest v. Ignacio*, 549 F.3d 789, 809 (9th Cir. 2008); *see also id.* at 812 (calling the defense a "fraud" improperly inflamed the passions of the jury).

### 23.    Demonizing the Defendant

The government may not use epithets or otherwise attempt to dehumanize or demonize the defendant through rank name-calling. Such comments not only amount to an improper personal expression of the prosecutor's own views, but also risk distracting the jury from a reasoned determination of the appropriate sentence. *See Kellogg v. Skon*, 176 F.3d 447, 451-52 (8th Cir. 1999); *see also*, *e.g.*, *United States v. Cannon*, 88 F.3d 1495, 1522 (8th Cir. 1996) (name calling "simply does not further the aims of justice or aid in the search for truth, and is

-82-

likely to inflame bias in the jury and to result in a verdict based on something other than the

evidence"), *abrogated in part on other grounds*, *Watson v. United States*, 552 U.S. 74 (2007).

In *United States v. Allen*, on direct appeal from a federal capital prosecution under the

FDPA, the 8th Circuit condemned as improper the prosecutor's reference, during penalty-phase

closing argument, to the defendant as a "murderous dog." 247 F.3d 741 (8th Cir. 2001),

*judgment vacated on other grounds*, 536 U.S. 953 (2002).

*Allen* is far from alone in finding prosecution name-calling and efforts to dehumanize the

defendant outside the bounds of proper argument. *See*, *e.g.*, *Darden v. Wainwright*, 477 U.S.

168, 180-81 (1986) (prosecutor referring to defendant as an animal was "undoubtedly . . .

improper"); *Wilson v. Sirmons*, 536 F.3d 1064, 1118 (10th Cir. 2008) ("As to the prosecutor's

use of the terms 'animal' and 'unadulterated evil' to describe Mr. Wilson, we find the pejoratives

unprofessional, inappropriate, and unworthy of an officer of the court."); *Fahy v. Horn*, 516 F.3d

169, 201 (3d Cir. 2008) ("We do not condone the characterization of [defendant] as demonic, nor

consider it a proper form of argument."); *Bland v. Sirmons*, 459 F.3d 999, 1025 (10th Cir. 2006)

(improper for prosecution to refer to defendant as "sniffling . . . coward," "heartless and vicious

killer," and "violent and evil man"); *Byrd v. Collins*, 209 F.3d 486, 536 (6th Cir. 2000) (referring

to defendant as a "predator" was improper "gratuitous insult[]"); *Kellogg*, 176 F.3d at 451-52

(prosecutor's references to defendant as "monster," "sexual deviant," and "a liar," were improper

and "had no place in the court room"); *Preston v. Delo*, 100 F.3d 596, 602 (8th Cir. 1996)

("strongly" disapproving of referring to defendant as "garbage"); *Miller v. Lockhart*, 65 F.3d 676,

-83-

2998

684-85 (8th Cir. 1995) (prosecutor described defendant as a "mad dog," and argued that "[y]ou don't do but one thing with a mad dog. You put him to death.").[31]

### 24. Misleading the Jurors on the Consequences of Non-Unanimity

The government may not mislead the jurors regarding the consequences that would follow in the event that the jurors are unable to render a unanimous sentencing verdict. Under the FDPA, in the event of non-unanimity, the district court will impose a sentence authorized by law. *See Jones v. United States*, 527 U.S. 373, 381 (1999); *see also* 18 U.S.C. § 3594. Retrial on the question of punishment is not permitted in the event of jury deadlock. *Id.*

Regarding any potential verdict, whether death, life, or non-unanimity, "the jury must not be misled regarding the role it plays in the sentencing decision." *Romano v. Oklahoma*, 512 U.S. 1, 8 (1994); *see Caldwell v. Mississippi*, 472 U.S. 320, 329-30 (1985).

---

[31] *See also*, *e.g.*, *Martin v. Parker*, 11 F.3d 613, 616 (6th Cir. 1993) (granting habeas relief in part based on prosecution's comparing defendant to Hitler); *Floyd v. Meachum*, 907 F.2d 347, 355 (2d Cir. 1990) (prosecutor's reference to the defendant as a liar was inflammatory and excessive); *Newlon v. Armontrout*, 885 F.2d 1328, 1337 (8th Cir. 1989) (cumulative impact of the prosecutor's misconduct, which included attempting to link petitioner with several well-known mass murderers such as Charles Manson, violated petitioner's due process rights); *United States v. Steinkoetter*, 633 F.2d 719, 720-21 (6th Cir.1980) (prosecutor's comparison of defendant to Pontius Pilate and Judas Iscariot mandates reversal); *People v. Johnson*, 803 N.E.2d 403, 421 (Ill. 2004) ("It is improper to characterize a defendant as 'evil' or to cast the decision of the jury as a choice between 'good and evil.'"); *Furnish v. Commonwealth*, 267 S.W.3d 656, (Ky. 2007) ("In closing argument, the Commonwealth called Appellant 'evil,' an 'animal' and a 'wolf.' We reiterate our previous condemnation of such improper attacks. There is no place in a courtroom for such personal vilification of a defendant, no matter how vile the charges against him."); *State v. Cauthern*, 967 S.W.2d 726, 737 (Tenn. 1998) (frequent references to the defendant as "the evil one" and urging jury to "combat and destroy" the "evil one" improper).

Misleading information concerning the consequence of non-unanimity -- for example, erroneously suggesting that a non-unanimous verdict would violate the jurors' oaths or the law or that, in the event of jury deadlock, a retrial will be required or that the defendant will receive a parole-eligible sentence -- risks coercing jurors to abandon their conscientiously held views as to the appropriate punishment in order to achieve unanimity and, thus, avoid the stated consequences. "Any criminal defendant, and especially any capital defendant, being tried by a jury is entitled to the uncoerced verdict of that body." *Lowenfeld v. Phelps*, 484 U.S. 231, 241 (1988); *see also Smalls v. Batista*, 191 F.3d 272, 279 (2d Cir. 1999) ("[c]oercion may be found when" juror is "encouraged to abandon, without any principled reason," opinion that "juror conscientiously holds" about the appropriate verdict, for the sake of achieving unanimity).

For example, in *Morris v. Woodford*, 273 F.3d 826, 841-43 (9th Cir. 2001), the Ninth Circuit found constitutional error when a state trial court misinformed a capital jury about what a not-unanimous verdict would mean. The trial court had mistakenly told jurors that such a verdict would result in a sentence of life with parole, when in fact state law mandated a sentence of life without parole if the jurors could not agree. *Id.* at 841. In reversing the death sentence on this ground, the Ninth Circuit noted that the "coercive potential" of such an instruction was "obvious." The jurors, who had sent a note asking what would happen if they could not reach agreement, would have understood the instruction as a way of "forcing a choice between two alternatives by threatening an unpleasant third alternative." If the jury was divided between death and life without parole, "'dissenting jurors'" would be "'effectively coerced into unanimity'" if they "'could not countenance allowing'" the defendant "'the prospect of parole.'" *Id.* (citation omitted).

-85-

Similarly, in *Hooks v. Workman*, 606 F.3d 715 (10th Cir. 2010), the Tenth Circuit concluded that the prosecutors engaged "engaged in wholesale and repeated attempts to mislead the jury as to its sentencing role under [state law]" and thereby, had "invaded [petitioner's] Eighth Amendment rights." *Id.* at 744. In that case, Oklahoma law, like the Federal Death Penalty Act, provided that, if the jury came back not unanimous, the defendant would receive a life sentence. The Tenth Circuit found that the prosecutors had improperly mislead the jury as to its role in sentencing by informing them, contrary to state law, that "(1) the jury's work would be wasted if it failed to reach a unanimous verdict, (2) defense counsel's argument that it took the vote of only one juror to prevent imposition of the death penalty constituted a request for 'jury nullification,' and (3) failure to deliberate in a manner leading to a unanimous verdict would amount to operating outside the law." *Id.* at 742-43.

Specifically, the prosecutors argued, inter alia:

- It [sic] is certainly nothing easy about asking 12 strangers that don't know each other to come into the room here and listen to all of this and end up with unanimity going in the same direction. It's a tremendously difficult process and we know that. But again, it's the best system in the world. And it requires, though, these 12 people, these 12 strangers to come together and collaborate, discuss, make a decision. The system would actually grind to a halt. Think about it. It would grind to a screeching halt if juries didn't come together and do that.

-86-

If we couldn't depend on 12 citizens to come together and go in the same direction, then we would never have a verdict. There would never be a disposition. Defendant[s] would go back to jail and wait for the next trial and they'd go back to jail and wait for the next trial and no one would ever be acquitted and no one would ever be sent on to the penitentiary.

. . .

Now I suggest that [defense counsel] will probably say something to the affect [sic] that someone on this jury could hold up a decision. He will likely tell you that it just takes one person to stop all this. That is such a common argument down here that it's got a name. It's called jury nullification.

Nullification means an action impeding or attempting to prevent the operation or enforcement of the law. Websters. Nullification means an action impeding or attempting to prevent the operation of the law.

In other words, to nullify a jury, a jury's job, a jury's efforts really requires only convincing one or two people to cripple it, to stop it. And while I don't want to beat this down I have got to tell you one more time that that's not what we're about. This system, and I remind you, is about deliberation. To do otherwise eviscerates the

-87-

system. It cuts it up literally. It cuts it up. The very law that we

live by. The 12 of you must resolve this case, all 12, I suggest.

And in rebuttal, the prosecutors continued:

[Defense counsel] mentioned that any one of you can control the

result in this trial and you can do that legally. But ladies and

gentlemen, there is not one chair up there. There's [sic] 12.

Twelve chairs. And there's [sic] 12 chairs for that purpose. The

Constitution of the United States guarantees a person a trial by a

jury of his peers, not by one person, by a jury of his peers.

There's been far too much work go into this case. It's far too

important in this case for someone to play martyr and try to hang it

up.

*Id.* at 734-35; *see also id.* at 743 ("There is no doubt the intentional misconduct on the part of

[the prosecutors] violated [petitioner's] constitutional rights.").

### 25. <u>Arguing that Mercy Is Never Appropriate</u>

It is improper for prosecutors to argue, directly or implicitly, that jurors may not consider

mercy in deliberating between the sentences of life and death. *Wilson v. Kemp*, 777 F.2d 621,

626 (11th Cir.1985) (granting penalty-phase habeas relief based on prosecution argument that

mercy was not an appropriate consideration under the law). Argument that mercy is unavailable

under the law "strikes at the core of the jury's role in capital sentencing" and withdraws "from

the jury one of the most central sentencing considerations, the one most likely to tilt the decision

in favor of life." *Drake v. Kemp*, 762 F.2d 1449, 1460 (11th Cir. 1985) (granting penalty-phase

habeas relief based on prosecution's closing arguments).  *See also Romine v. Head*, 253 F.3d 1349, 1367-68 (11th Cir. 2001) ("a prosecutor misleads a capital sentencing jury when he quotes scripture as higher authority for the proposition that death should be mandatory for anyone who murders his parents"; habeas relief granted).

In a federal capital prosecution, the government, during its penalty-phase closing statements, argued that that "mercy is not in the instructions" and "not something you do in this case." *United States v. Higgs*, 353 F.3d 281, 331 (4th Cir. 2003).  On appeal, the Fourth Circuit observed that the statements arguably "crossed into argument in contradiction of the district court's instructions":  "[T]he jury is empowered to show mercy to reject a death sentence." *Id.* The court, however, declined to reverse, concluding that the isolated comments did not prejudice the defendant.

### 26.   Misstating the Evidence

"It is unprofessional conduct for the prosecutor intentionally to . . . mislead the jury as to the inferences it may draw." *United States v. Young*, 470 U.S. 1, 8 n.5 (1985) (citation and internal quotation marks omitted); *see also United States v. Mendoza*, 522 F.3d 482, 491 (5th Cir. 2008); *United States v. George*, 201 F.3d 370, 373-74 (5th Cir. 2000).

> Misrepresenting facts in evidence can amount to substantial error because doing
> so "may profoundly impress a jury and may have a significant impact on the jury's
> deliberations." . . . This is particularly true in the case of prosecutorial
> misrepresentation because a jury generally has confidence that the prosecuting
> attorney is faithfully observing his obligation as a representative of a sovereignty,

-89-

whose interest "in a criminal prosecution is not that it shall win a case, but that

justice will be done."

*Gall v. Parker*, 231 F.3d 265, 313 (6th Cir. 2000) (*quoting Donnelly v. DeChristoforo*, 416 U.S.

637, 646 (1974), and *Berger v. United States*, 295 U.S. 78, 88 (1935)).

Thus, courts have condemned as improper, government closing statements that are not

reasonably supported by the evidence. *See, e.g., Land v. Allen*, 573 F.3d 1211, 1219-20 (11th

Cir. 2009) (where no direct evidence of events at victim's home, improper for prosecution to

invite the jurors to speculate on interactions between defendant and victim; "The prosecutor

exceeded the bounds of appropriate conduct by claiming to describe exactly what happened, and

particularly what was said, with such specificity."); *Bland v. Sirmons*, 459 F.3d 999, 1028-29

(10th Cir. 2006) (because jury did not convict defendant of felony-murder charged, predicated on

robbery, improper for the prosecution to argue that the homicide was committed in the course of

a robbery during penalty-phase summations); *Le v. Mullin*, 311 F.3d 1002, 1020 (10th Cir. 2002)

(prosecution improperly misstated the evidence, arguing that defendant laughed after the

homicide; "The Assistant District Attorney's comment was erroneous in that it mischaracterized

trial testimony in order to show that [defendant] was either remorseless or actually made light of

the tragic events of that day.  No evidence supports this characterization of the . . . testimony.");

*Miller v. Lockhart*, 65 F.3d 676, 682 (8th Cir. 1995) (prosecutor suggests without support in

evidence that defendant escaped from jail before); *Tucker v. Kemp*, 762 F.2d 1496, 1507 (11th

Cir. 1985) (*en banc*) (although prosecution may argue reasonable inferences from the evidence

adduced at trial, prosecution's closing argument that defendant forced the victim to engage in

-90-

oral sex was a "gratuitous and unsupported charge" and, therefore, "serious professional impropriety").[32]

**C.  CONCLUSION**

For all of these reasons, the defense asks this Court to prohibit the government from advancing any of the types of improper argument identified in this memorandum.

**Respectfully submitted:**

/s/ *Arlington Foley*

Arlington Foley /#6905-45
Attorney For Defendant
1942 North Main Street
Crown Point, IN 46307
PH: 219.661.1200
FX: 219.661.1205

/s/ *John Maksimovich*

John Maksimovich /#9950-45
Attorney For Defendant
1946 North Main Street
Crown Point, IN 46307
PH: 219.663.1900
FX: 219.663.1908

---

[32] *See also*, *e.g.*, *Berger v. United States*, 295 U.S. 78, 88 (1935) (in reversing the defendant's conviction, the Supreme Court held that: "[T]he United States prosecuting attorney overstepped the bounds of that propriety and fairness . . . by misstating the facts in his cross-examination of witnesses; of putting into the mouths of such witnesses things which they had not said; of suggesting by his questions that statements had been made to him personally out of court, in respect of which no proof was offered; of pretending to understand that a witness had said something which he had not said and persistently cross-examining the witness upon that basis; of assuming prejudicial facts not in evidence; of bullying and arguing with witnesses; and, in general, of conducting himself in a thoroughly indecorous and improper manner."); *United States v. Wilson*, 135 F.3d 291 (4th Cir. 1998) (reversal based on prosecutor's repeated argument that the defendant had committed a murder when no evidence supported that argument); *United States v. Donato*, 99 F.3d 426 (D.C. Cir. 1996) (reversal based on prosecutor's inaccurate statement concerning evidence of defendant's motive).

-91-

3006

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

UNITED STATES OF AMERICA,

          **Plaintiff**

**vs**

**JUAN BRISENO,**

          **Defendant**                **CAUSE NO:  2:11-CR-77**

### CERTIFICATE OF SERVICE

I hereby certify that on February 28, 2015, I electronically filed:

*Motion in Limine to Prohibit Specified Types of*
*Prosecutorial Misconduct in Penalty-phase Summation*

with the Clerk of the Court using the CM/ECF system, which sent notification of such filing to the following:

    David J. Nozick                      Bruce Hegyi
Assistant United States Attorney      Assistant United States Attorney

and I hereby certify that I have mailed by United States Postal Service, the document to the following non-CM/ECF participants:

        N/A

By:   /s/ *John Maksimovich*

John Maksimovich /#9950-45
Attorney For Defendant
1946 North Main Street
Crown Point, IN 46307
PH: 219.663.1900
FX: 219.663.1908
E-Mail: criminallaw@johnmaksimovich.com

-92-

Case: 15-2347    Document: 35    Filed: 07/27/2016    Pages: 4186
Case 2:11-cr-00077-PPS-APR    Document 1476    Filed 02/26/15    Page 101 of 103

5633

southwest bedroom must have been made, as you learned from Tom Martin, with a weapon of sufficient length and surface area to splatter that quantity of blood up to the 9'3 7/8 inch ceiling.

So ask yourself, why did the defense introduce Johnson's statements?  The government submits that it was in an effort to shift blame from the defendant to Taylor, to make Taylor look like he was more involved in these offenses than he testified to here at trial.  But you saw Taylor testify and you saw him get cross-examined; the cross-examination where he wasn't asked one question about what role he actually played in the offense.  Why?  Because then the defense theory was that Taylor wasn't even there for the murders.

MR. SHEEHAN:  I'm going to object, your Honor.  May we approach?

THE COURT:  You may.

(Sidebar conference)

MR. SHEEHAN:  Your Honor, for the reasons we have stated in our previously filed motion in limine, I believe that counsel's arguments at this point, in effect comparing what issues were raised at the guilt phase, constitutes a form of denigrating the offense -- denigrating the defense.

Case 15-2347 Document 35 Filed 07/27/2016 Pages 4186
Case 2:11-cr-00077-PPS-APR Document 1476 Filed 02/26/15 Page 102 of 103

5634

We had no obligation at the guilt phase to present a theory of defense. Indeed, what we were challenging was whether or not the government had proven its case beyond a reasonable doubt.

For the reasons that we set forth in section 23 -- 24 -- I'm sorry, on 23 in that memo, I think this whole argument, to the extent that they're trying to say, well, this is what they argued in the guilt phase, constitutes an improper form of argument and it should be precluded.

MS. DAYTON: The government disagrees, and it's almost over anyway.

MR. SHEEHAN: I --

THE COURT: To the extent that the government is claiming that there is something wrong or different or flawed about what defense counsel did by having an inconsistent theory, I'm going to sustain your objection. I will instruct the jury that what -- that the --

MS. DAYTON: May we --

THE COURT: -- decisions by defense counsel are not -- on how to litigate the case are not relevant at the penalty phase.

MS. DAYTON: They're the agents for the defendant and the defendant claimed that Taylor

Case: 15-2347    Document: 35    Filed: 07/27/2016    Pages: 4186
Case 2:11-cr-00077-PPS-APR   Document 1476   Filed 02/26/15   Page 103 of 103

5635

wasn't there and now he's --

THE COURT:  It's all about the defendant, it's not about their counsel.

(Sidebar concluded)

THE COURT:  All right, ladies and gentlemen, I'm sustaining the defense's objection and I will ask you to not take into account in your deliberations at the penalty phase the strategic conduct of counsel.  This is for you to assess based on what you find proved and what you conclude about the defendant and the government's proof.

All right, you may continue.

MS. DAYTON:  So, is it true that neither Taylor nor Johnson will receive the death penalty for their roles in the offense?  Yes, that is true.  But the government submits that there is a very good reason for that.  The evidence has established that the defendant was substantially more culpable, bore more responsibility for these crimes than either Taylor or Johnson.  This was his building, his drug operation.  He planned this, he hired his crew, he premeditated these murders.  He personally killed Tina and Basil, and he personally chose to end the lives of the three victims.

The defendant has also raised three

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | |
| **Plaintiff** | |
| **vs** | |
| **JUAN BRISENO,** | |
| **Defendant** | **CAUSE NO:   2:11-CR-77** |

### REQUEST TO FILE OVER-LENGTH MOTION

Comes now Defendant Juan Briseno, by counsel Arlington Foley and John Maksimovich, and seek permission to file an over-length motion incorporating for the convenience of the parties and the court, all challenges directed to the government's anticipated final argument in this death penalty case, and represents to the court the following:

1.      Juan Briseno, the Defendant herein, faces the death penalty.

2.      Pursuant to Local Rule 7-1 (e)(2) of the Northern District of Indiana, there exists extraordinary and compelling reasons for the court to grant permission to Defendant's counsel to file an over-length motion.

3.      This motion is directed toward the government's anticipated final argument in this death penalty case.

**WHEREFORE**, pursuant to Local Rule 7-1 (e)(2) of the Northern District of Indiana, Defendant's counsel respectfully requests the court to grant permission to file an over-length motion and for all other just and proper relief.

**Respectfully submitted:**

/s/ *Arlington Foley*
_____

Arlington Foley /#6905-45
Attorney For Defendant
1942 North Main Street
Crown Point, IN 46307
PH: 219.661.1200
FX: 219.661.1205

/s/ *John Maksimovich*
_____

John Maksimovich /#9950-45
Attorney For Defendant
1946 North Main Street
Crown Point, IN 46307
PH: 219.663.1900
FX: 219.663.1908

3011

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

|  |  |
|---|---|
| **UNITED STATES OF AMERICA,** | |
| **Plaintiff** | |
| **vs** | |
| **JUAN BRISENO,** | |
| **Defendant** | **CAUSE NO:　2:11-CR-77** |

### CERTIFICATE OF SERVICE

I hereby certify that on February 28, 2015, I electronically filed:

### *REQUEST TO FILE OVER-LENGTH MOTION*

with the Clerk of the Court using the CM/ECF system, which sent notification of such filing to the following:

|  |  |
|---|---|
| David J. Nozick | Bruce Hegyi |
| Assistant United States Attorney | Assistant United States Attorney |

and I hereby certify that I have mailed by United States Postal Service, the document to the following non-CM/ECF participants:

　　　　N/A

By:　　/s/ *John Maksimovich*

John Maksimovich /#9950-45
Attorney For Defendant
1946 North Main Street
Crown Point, IN 46307
PH: 219.663.1900
FX: 219.663.1908
E-Mail: criminallaw@johnmaksimovich.com

3012

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

UNITED STATES OF AMERICA,

            **Plaintiff**

vs

JUAN BRISENO,

            **Defendant**                **CAUSE NO:   2:11-CR-77**

**DEFENDANT'S *IN LIMINE* MOTION
REGARDING PENALTY-PHASE EVIDENCE**

Comes now Defendant Juan Briseno, by counsel John Maksimovich and Arlington Foley, and respectfully seeks *in limine* relief as specified on issues relevant to the penalty-phase of this case. It is noted that the issues are not discussed in great depth, but are simply presented to the court as matters on which counsel seek a ruling prior to the commencement of the penalty phase.

I –    THE GOVERNMENT SHOULD BE PRECLUDED FROM CROSS-EXAMINING MARK BEZY REGARDING A MINOR PERSONNEL MATTER THAT RESULTED IN NO DISCIPLINE OR PENALTIES.

In past cases where he has testified, Mr. Bezy the government has sought to cross-examine on a minor personnel matter that resulted in no discipline and no penalties. The government has informed counsel that it intends to do so in this case as well.

As counsel understands the matter, during a meeting while Mr. Bezy was warden at the Federal Corrections Complex in Terre Haute, Indiana, he remarked to a female Deputy Warden under his supervision, "Where the fuck do you work?" or words to that effect. The DW apparently complained and an OIG investigation was opened. It is counsels' understanding that Mr. Bezy apologized to the DW the day after the incident and, when interviewed by OIG, acknowledged making the comment and had apologized to the staff members who had witnessed the incident prior to being contacted by OIG. Mr. Bezy never received any papers with regard to the incident and later

-1-

took full retirement with no copies of the OIG findings that he had directed inappropriate remarks and profanity to the deputy warden in question in his personnel file.

This is a trivial matter that bears no reasonable bearing on Mr. Bezy's credentials or credibility. To the extent that this incident bears even remotely on credibility, its probative value is simply outweighed by its danger of unfair prejudice or confusing the issues. Plainly this evidence would be excluded by F.R.E. 603, which allows impeachment by evidence of specific misconduct only as it bears upon a witness' "character for truthfulness or untruthfulness."

Mr. Bezy should not be cross-examined on this issue.

II –     THIS COURT SHOULD SET *IN LIMINE* GUIDELINES FOR THE PRESENTATION OF VICTIM IMPACT EVIDENCE.

In his comprehensive post-verdict opinion in *United States v. Sampson*, 335 F.Supp.2d 166, 186-193), Judge Wolf surveyed the law on this issue of the scope of victim impact evidence and explained the nature of the discretionary rulings he had made at that trial. Generally speaking, the "rules" regarding victim-impact evidence, as derived from the case law ably summarized in *Sampson,* are as follows:

- A victim is not permitted to express his or her opinion as to the sentence that should be imposed or characterize the crime that was committed;

- A victim should not address the defendant directly;

- A victim should not call the defendant names;

- The evidence cannot be unduly inflammatory;

- The evidence cannot be a mere emotional plea unrelated to the impact of the crime on the victims or their families;

- Memorial videos, poems, memory books, or other types of demonstrative evidence need to be carefully reviewed for the risk of inflaming the jury's passions.

The defense assumes that the government is aware of these well-settled principles of law and will present its evidence accordingly. The defense does request advance notice of any exhibits or other kinds of demonstrative evidence a witness may present.

3014

**WHEREFORE**, Defendant Juan Briseno requests that the motion in limine be granted as requested.


**Respectfully submitted:**

/s/ *Arlington Foley*

Arlington Foley /#6905-45
Attorney For Defendant
1942 North Main Street
Crown Point, IN 46307
PH: 219.661.1200
FX: 219.661.1205

/s/ *John Maksimovich*

John Maksimovich /#9950-45
Attorney For Defendant
1946 North Main Street
Crown Point, IN 46307
PH: 219.663.1900
FX: 219.663.1908

3015

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | |
| **Plaintiff** | |
| **vs** | |
| **JUAN BRISENO,** | |
| **Defendant** | **CAUSE NO:   2:11-CR-77** |

**CERTIFICATE OF SERVICE**

I hereby certify that on March 1, 2015, I electronically filed:

*DEFENDANT'S IN LIMINE MOTION*
*REGARDING PENALTY-PHASE EVIDENCE*

with the Clerk of the Court using the CM/ECF system, which sent notification of such filing to the following:

|  |  |
|---|---|
| David J. Nozick | Bruce Hegyi |
| Assistant United States Attorney | Assistant United States Attorney |

and I hereby certify that I have mailed by United States Postal Service, the document to the following non-CM/ECF participants:

N/A

By:   /s/ *John Maksimovich*

John Maksimovich /#9950-45
Attorney For Defendant
1946 North Main Street
Crown Point, IN 46307
PH: 219.663.1900
FX: 219.663.1908
E-Mail: criminallaw@johnmaksimovich.com

-4-

3016

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

UNITED STATES OF AMERICA,

        **Plaintiff**

**vs**

**JUAN BRISENO,**

        **Defendant**               **CAUSE NO:   2:11-CR-77**

## DEFENDANT'S REPLY IN SUPPORT OF MITIGATING FACTORS

Comes now Defendant Juan Briseno, by counsel John Maksimovich and Arlington Foley, and respectfully replies to the Government's objections to several of his proposed mitigating factors. The Government seeks to cabin mitigating factors to the literal language of 18 U.S.C. § 3592(a)(8). It posits that the Court is somehow limited by the statute and the Constitution, when, in fact, the reverse is true. Indeed, the narrow interpretation of § 3592(a)(8) proposed by the Government would render it unconstitutional under long-established and current Supreme Court decisions which the Government chooses to ignore. Those decisions establish that relevant mitigating evidence is evidence that could reasonably support a sentence less than death.

A Mitigating Factor is Relevant if it "Might Provide a Basis" for a Sentence Less than Death

No limitation may be placed on the right of the accused to present for the sentencer's consideration all relevant mitigating evidence. This established tenet of capital jurisprudence is rooted in *Lockett v. Ohio*, 438 U.S. 586 (1978), where, two years after *Gregg v. Georgia*, a plurality of the Court held that "in all but the rarest kind of capital cases," a sentencing authority may not "be precluded from considering, as a mitigating factor, any aspect of a defendant's

-1-

character or record . . . as a basis for a sentence less than death." *Id*. at 113-14 (emphasis

omitted); *see also Skipper v. North Carolina*, 476 U.S. 1 (1986); *Eddings v. Oklahoma*, 455 U.S.

at 112. But the scope of mitigation is much broader than the "character or record" language of

*Lockett*. In *McCleskey v. Kemp*, 481 U.S. 279 (1987), for example, the Court held that a

constitutional death-penalty scheme

> cannot limit the sentencer's consideration of *any relevant*
> *circumstance* that could cause it to decline to impose the penalty.
> In this respect, the State cannot channel the sentencer's discretion,
> but must allow it to consider *any relevant information* offered by
> the defendant.

*Id*. at 305-06 (emphasis added); *see also Green v. Georgia*, 442 U.S. 95 (1979) (evidence rules

may not be invoked to bar otherwise relevant mitigating evidence).

In *Buchanan v. Angelone*, 522 U.S. 269 (1998), Chief Justice Rehnquist, writing for a

majority of the Court 20 years after *Lockett*, stated:

> in the [penalty] phase, we have emphasized the need for a broad
> inquiry into all relevant mitigating evidence to allow an
> individualized determination.
>
>                 \* \* \*
>
> In the [penalty] phase, our cases have established that the sentencer
> may not be precluded from considering any constitutionally
> relevant mitigating evidence.

*Id*. at 276 (citations omitted). In *Williams v. Taylor*, 529 U.S. 362 (2000), the Court noted that

mitigating evidence can serve to lessen a defendant's "moral culpability" even where such

evidence "does not undermine or rebut the prosecution's death-eligibility case." *Id.* at 398.

The line of cases supporting liberal admission of mitigating evidence was extended in

*Tennard v. Dretke*, 542 U.S. 274 (2004), where the Court rejected the notion, originating with the

-2-

Texas Court of Criminal Appeals and repeatedly endorsed by the Fifth Circuit, that evidence is

not mitigating unless there is a nexus between the evidence and the crime.  In *Tennard*, a six-

member majority of the Court reversed the Fifth Circuit and bluntly criticized that court's

longstanding practice of imposing a restrictive standard of relevance for mitigating evidence at

the penalty-phase of Texas capital cases.  *Tennard* reiterated that the threshold of relevance for

mitigating evidence is minimal, stating:

> When we addressed directly the relevance standard applicable to mitigating evidence in capital cases in *McKoy v. North Carolina,* 494 U.S. 433, 440-441, 108 L. Ed. 2d 369, 110 S. Ct. 1227 (1990), we spoke in the most expansive terms. We established that the "meaning of relevance is no different in the context of mitigating evidence introduced in a capital sentencing proceeding" than in any other context, and thus the general evidentiary standard – "'any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence'"– applies. *Id*., at 440, 108 L. Ed. 2d 369, 110 S. Ct. 1227 (*quoting New Jersey v. T. L. O*., 469 U.S. 325, 345, 83 L. Ed. 2d 720, 105 S. Ct. 733 (1985)). We quoted approvingly from a dissenting opinion in the state court: "'Relevant mitigating evidence is evidence which tends logically to prove or disprove some fact or circumstance which a fact-finder could reasonably deem to have mitigating value.'" 494 U.S., at 440, 108 L. Ed. 2d 369, 110 S. Ct. 1227 (*quoting State v. McKoy*, 323 N. C. 1, 55-56, 372 S.E.2d, 12, 45 (1988) (opinion of Exum, C. J.)). Thus, a State cannot bar "the consideration of . . . evidence if the sentencer could reasonably find that it warrants a sentence less than death." 494 U.S., at 441, 108 L. Ed. 2d 369, 110 S. Ct. 1227.

> Once this low threshold for relevance is met, the "Eighth Amendment requires that the jury be able to consider and give effect to" a capital defendant's mitigating evidence. *Boyde v. California,* 494 U.S. 370, 377-378, 108 L. Ed. 2d 316, 110 S. Ct. 1190 (1990) (*citing Lockett v. Ohio*, 438 U.S. 586, 57 L. Ed. 2d 973, 98 S. Ct. 2954 (1978); *Eddings v. Oklahoma*, 455 U.S. 104, 71 L. Ed. 2d 1, 102 S. Ct. 869 (1982); *Penry I*, 492 U.S. 302, 106 L. Ed. 2d 256, 109 S. Ct. 2934 (1989)); *see also Payne v.*

-3-

> *Tennessee,* 501 U.S. 808, 822, 115 L. Ed. 2d 720, 111 S. Ct. 2597
> (1991) ("We have held that a State cannot preclude the sentencer
> from considering 'any relevant mitigating evidence' that the
> defendant proffers in support of a sentence less than death. . . .
> [V]irtually no limits are placed on the relevant mitigating evidence
> a capital defendant may introduce concerning his own
> circumstances." (*quoting Eddings, supra*, at 114, 71 L. Ed. 2d 1,
> 102 S. Ct. 869)).

*Id.* at 284-85.  In *Smith v. Texas*, 543 U.S. 37 (2004), decided five months after *Tennard*, the

Court reiterated its rejection of the "nexus" requirement that the Texas Court of Criminal

Appeals, as endorsed by the Fifth Circuit, had erected as a barrier to the admission of mitigating

evidence, stating, "[w]e rejected the Fifth Circuit's 'nexus' requirement in *Tennard . . . .*"  *Smith*

*v. Texas*, 543 U.S. at 45.  Even more recently, the "new" Supreme Court reiterated this point in

an n opinion authored by Justice Alito:

> [O]ur cases have firmly established that sentencing juries must be
> able to give meaningful consideration and effect to all mitigating
> evidence that might provide a basis for refusing to impose the
> death penalty on a particular individual, notwithstanding the
> severity of his crime or his potential to commit similar offense in
> the future.

*Abdul-Kabir v. Quartermain*, 127 S.Ct. 1654, 1664 (2007); *see also*, *Ayers v. Belmontes*, 127

S.Ct. 469, 478 (2006), where the Court described a jury's penalty-phase task as weighing "the

finite aggravators against the *potentially infinite mitigators*."  (Emphasis added.).

The Government relies on circuit decisions, in cases in which the defendant was

sentenced to death, upholding a district court's exercise of its discretion to strike certain

proposed factors.  However, many more trial judges in federal capital cases have approved these

mitigating factors as relevant to the sentencing decision.

-4-

3020

1. <u>If he is not sentenced to death, Mr. Briseño will be sentenced to lifetime imprisonment without the possibility of release.</u>

2. <u>The Federal Bureau of Prisons will impose appropriate conditions of confinement and security with regard to Mr. Briseño.</u>

The following district courts have determined that these mitigating factors were relevant:

James (ED NY)(2007) (operation of law)

Aguilar (ED NY)(2007)

Aquart (D.Ct. 2011) (12 jurors) ("If not sentenced to death, Azibo Aquart will be imprisoned for the rest of his life without possibility of release."); (12 jurors) ("Liftetime imprisonment is a severe punishment."); (12 jurors) (If Azibo Aquart is sentenced to life imprisonment, the Bureau of Prisons has the capability of safely and securely confining him.")

Argueta (D MD)(2010) (8 jurors)

Basciano (EDNY 2011) ("If not sentenced to death, Mr. Basciano will be imprisoned for the remainder of his life with no possibility of release.") (12 jurors); ("The Federal Bureau of Prisons is capable of fashioning conditions of confinement that will control Mr. Basciano's activities while he is in prison.") (12 jurors)

Baskerville (D NJ)(2007)

Barnes (SD NY)(2008)(12 jurors)

Bass (ED MI)(2003)(stipulated by the parties as established)
Burgos-Montes (DPR)(2012) ("If he is spared a sentence of death, a harsh sentence will still be imposed on defendant; that is, Edison Burgos-Montes will be incarcerated for the remainder of his life in a federal prison with no possibility of release.") (7 jurors)

Byers (D MD)(2009)("If not sentenced to death, Patrick Byers will spend the rest of his life in a federal prison without possibility of release")(3 jurors)

Cannon (ED MO) (2005) (12 jurors)

Caraballo (EDNY) (2008) (12 jurors)

Caro (WD VA)(2007)

3021

Chanthadara (D KS)(1996)

Cisneros (ED VA)(2005)(12 jurors)(and 9 jurors found that LWOP was "painful")

Corley (ND IN)(2004)(1 juror)

Davis (ED LA)(2003)(12 jurors)

Dhinsa (ED NY)(1997)

Diaz (ND NY)(1996)(12 jurors)(instructed "you must all accept this factor as proven")

Duong (NDCA)(2010) (will spend life in prison) (12 jurors); ("Life imprisonment without the possibility of release is a harsh punishment and will have to live with the consequences of his actions.") (12 jurors)

Friend (SD WV)(2007)(12 jurors)

Frye (SD MS)(2005)(12 jurors)

Hans (D SC)(2007)

Henderson (SD OH)(2007)

Hyles (ED MO) (2005) (1 juror)

Johnson (ED LA)(2009)("If he is not sentenced to death, he will spend the rest of his life in prison without the opportunity for release")(12 jurors)

Johnson (ED LA)(2009)("If he is not sentenced to death, he will spend the rest of his life in prison without the opportunity for release")(12 jurors)

Julian (MD FL)(2009)("If not sentenced to death, Jermaine Julian will spend the rest of his life in prison without the opportunity for release")(12 jurors) and ("Life imprisonment without the possibility of release is a sufficiently harsh punishment that would require Jermaine Julian to regularly reflect upon his conduct and actions until the time of his death")(9 jurors)

Krylov (CD CA)(2007)

Lecco (SD WV)(2007)

-6-

Lecco (SD WV) (2010) (7 jurors); (potential to assist other inmates if sentenced to LWOP) (6 jurors)

Lujan (DNM) (2011) ("If he is not sentenced to death, Larry Lujan will spend the rest of his life in a highly structured and secure federal prison without the possibility of release.")

Mallay (ED NY)(2007) (operation of law)

McGriff (ED NY)(2007)(deemed established)

McTier (ED NY)(2008) (11 jurors)

Mikos (NDIL) (2005) (6 jurors; 4 jurors))

Molina (ED OK)(1993)

Moonda (ND OH)(2007)

Moussaoui (ED VA)(2006)(5 jurors)

Natson (MD GA)(2007)(creative method of showing expected length of sentence)

O'Reilly (EDMI) (2010) ("If he is not sentenced to death, Mr. O'Reilly will be sentenced to life in prison without the possibility of release.") (12 jurors); ("Life in prison without the possibility of release is a harsh punishment." (12 jurors); ("The Federal Bureau of Prisons can safely manage and confine Mr. O'Reilly for the rest of his natural life.") (8 jurors).

Phillips (EDPA) (2010) (12 jurors)

Richardson (NDGA) (2012) ("If not sentenced to death, Brian Richardson will spend the rest of his life in federal prison without any possibility of release.") (12 jurors); ("If sentenced to life in federal prison without release, Brian Richardson will be sent to ADX where he will live in solitary confinement with limited human contact.") (9 jurors); ("Brian Richardson can be managed with a combination of medication and secure confinement that will minimize the risk of future dangerousness.") (12 jurors)

Runyon (ED Va)(2009)(12 jurors)

Sablan, R (D CO)(2008)("If not sentenced to death, Rudy Sablan will be sentenced to a term of life in prison without any possibility of release")(7 jurors)

Sablan W (D CO)(2007)

3023

Shakir (MDTN) (2008) ("The Federal Bureau of Prisons has the authority and ability to maintain Jamal Shakir in highly secure conditions which make any risk of dangers to the public, prison staff, and even other inmates relatively small.") (7 jurors); ("Jamal Shakir presents minimal risk of future violence or danger to the public, prison staff, and other inmates if in prison for the rest of his life.") (5 jurors); ("Jamal Shakir responds well to structured environments, and is capable of adapting well to prison if he were sentenced to life in prison.") (4 jurors); ("Studies by social scientists demonstrate that as men get older, their propensity for violence and prison disciplinary infractions decreases sharply.") (10 jurors)

Smith (WD MO)(2007)

Wilson (ED NY)(2007)

Wilk (SD FL)(2007) )("If not sentenced to death, Mr. Wilk will spend the rest of his life in prison without the possibility of release")(12 jurors)


17.   If Juan were to be executed others would suffer grief and loss.

The following courts have determined that this mitigating factor is relevant and have

submitted it to the jury:

Aquart (D.Ct. 2011) (12 jurors) ("Azibo Aquart's execution would cause others to suffer grief and loss.")

Argueta (D MD)(2010) (7 jurors)

Ayala-Lopez )DPR) (2006) (7 jurors)

Barnes (SD NY)(2008)("Mr. Barnes' execution would cause others to suffer grief and loss")(12 jurors)

Barnette 1 (WD NC)(1998)(8 jurors)

Basciano (EDNY 2011) ("If Mr. Basciano is executed, others will suffer grief and loss, including his family and friends.") (9 jurors)

Baskerville (D NJ)(2007)

Bass (ED MI)(2003)(stipulated by the parties as established)

-8-

3024

Burgos-Montes (DPR)(2012) ("Edison's family and loved ones will suffer grief and loss if he were executed.") (5 jurors)

Byers (D MD)(2009)("Patrick Byers' family, including his grandmother and children, will suffer grief and loss if he is executed")(3 jurors)

Cannon (ED MO) (2005) (10 jurors)

Caraballo (EDNY) (2008) (9 jurors)

Caro (WD VA)(2007)
Clay (ED AR)(2007)

Chanthadara (D KS)(1996)(2 jurors)

Cisneros (ED VA)(2005)(12 jurors)

Davis J (ED LA)(2003)(12 jurors)

Dhinsa (ED NY)(1997)

Diaz (ND NY)(1996)(2 jurors)

Dixon (ED NY)(2003)(5 jurors)

Duong (NDCA)(2010) ("The family and friends of Anh who will be impacted by a sentence of death deserve compassion.") (10 jurors)

Fell (D VT)(2005) (3 jurors)

Fields (ED OK)(2005)

Fields (WD TX)(2004) (11 jurors)

Friend (SD WV)(2007) (12 jurors)

Galan (ND OH) (2007) (8 jurors)

Hyles (ED MO) (2005) (6 jurors)

Jackson (WD NC)(2001)(11 jurors)

3025

James (ED NY)(2007)

Jones (ND TX)(1995)(9 jurors)

Jordan (ED VA)(2005)

Julian (MD FL)(2009) ("The execution of Jermaine Julian would cause trauma to his family")(7 jurors)

Krylov (CD CA)(2007)

Lecco (SD WV)(2007)

Lecco (SD WV) (2010) (10 jurors)

Lujan (DNM) (2011) ("Larry Lujan's family will suffer grief and loss if he is executed.")

Mallay (ED NY)(2007)

McGriff (ED NY)(2007)

McTier (ED NY)(2008) (2 jurors)

Mikos (NDIL) (2005) (9 jurors; 6 jurors; 4 jurors)

Mohamed (SD NY)(2001)(12 jurors)

Molina (ED OK)(1993)

Moonda (ND OH)(2007)

Natson (MD GA)(2007)

O'Reilly (EDMI) (2010) ("Timothy O'Reilly's execution will cause Shawn Meissner to suffer grief and loss.") (12 jurors)

Oscar J (ED VA)(1994)(7 jurors)

Ostrander R (WD MI)(2003)(8 jurors)

Pepin (EDNY) (2008) (7 jurors)

Perez (D CT)(2004)

Phillips (EDPA) (2010) ("friends and family will suffer grief and loss") (12 jurors); ("execution will cause his daughters, in particular, to suffer grief and loss") (12 jurors)

Richardson (NDGA) (2012) ("Brian Richardson's execution would cause others, including his brother Danny Upton, his brother Allen Dusseau, or his sister Christa Upton to suffer grief and loss.") (12 jurors)

Runyon (ED VA)(2009)(12 jurors)

Sablan, R (D CO)(2008)("Because of Rudy Sablan's ongoing relationship with his son, Irvin Saralu , the execution of Rudy Sablan will cause emotional trauma to his son and have a negative impact upon Irvin 's life")(7 jurors)

Sablan W (D CO)(2007)

Shakir (MDTN) (2008) ("Jorron Shakir loves her father, and the execution of Jamal Shakir would have a particularly harsh impact on this child.") (10 jurors); (". . . his execution would have a harsh impact on [] friends and members of his family.") (6 jurors)

Smith (WD MO)(2007)

Wilson (ED NY)(2007)

20.      <u>The murder victims voluntarily chose to engage in dangerous and illegal activities, a circumstance that contributed to their deaths.</u>

The following courts have determined that this mitigating factor is relevant to the

sentencing decision and submitted it to the jury:

Aquart (D.Ct. 2011) (12 jurors) ("One or more victims chose to engage in illegal drug trafficking activities, a circumstance that contributed to their deaths.")

Basciano (EDNY 2011) ("By voluntarily choosing to engage in violent criminal conduct, the victim in this case, Randolph Pizzolo willingly participated in dangerous and illegal activities, a circumstance that contributed to his death.") (12 jurors)

Carabello (EDNY) (2008) (7 jurors)

Davis (ED LA)(2003)(12 jurors)

-11-

Henderson (SD OH)(2007)

Jackson (ED TX)(2006)(9 jurors)(Prison killing – "[The victim] was the first aggressor in the incident resulting in his death and this factor is mitigating")

McGriff (ED NY)(2007)

Perez (D CT)(2004)

Richardson (NDGA) (2012) ("[The victim] was a sexual predator who molested his young daughter.") (12 jurors)

22.    <u>Mr. Briseño's life has value</u>.

The following courts have determined that this mitigating factor is relevant to the

sentencing decision and submitted to the jury:

Aquart (D.Ct. 2011) (12 jurors) ( "Azibo Aquart's life has value.")

Aguilar (ED NY)(2007)

Ayala-Lopez (DPR) (2006) ("has the potential for rehabilitation") (2 jurors)

Basciano (EDNY 2011) ("Mr. Basciano's life will have value to others if he is sentenced to spend the rest of his life in prison without the possibility of release.") (4 jurors)

Baskerville (D NJ)(2007)

Barnes (SD NY)(2008)("Mr. Barnes' life has value")(12 jurors)

Burgos-Montes (DPR)(2012) ("Edison's life has value to his family and loved ones, even in the context of life imprisonment without possibility of release.") (10 jurors).

Byers (D MD)(2009)("Patrick is a human being whose life has value and can continue to have value")(4 jurors)

Caraballo (EDNY) (2008) (10 jurors)

Caro (WD VA)(2007)

Duong (NDCA)(2010) ("Anh did not receive counseling or other intervention before his arrest, but Dr. Julie Kriegler has seen signs of recovery in Anh since he has been in jail.")

-12-

3028

(12 jurors); ("Anh's life has value.") (12 jurors)

James (ED NY)(2007)

Jones (D MD)(1998)("as in all human life, there is value in the remainder of Anthony

Jones' life as a federal prisoner")(7 jurors)

Johnson (ED LA)(2009)("His life has value in that he has been a good and loving son, brother, father and grandfather and his family will suffer greatly if he is executed")(1 juror)

Julian (MD FL)(2009)("there is value in the remainder of Jermaine Julian's life, in the context of life in prison without release)(8 jurors)

Lighty (D MD)(2005)("all life has value")(write-in)(11 jurors)

Lujan (DNM) (2011)

McGriff (ED NY)(2007)

O'Reilly (EDMI) (2010) ("Mr. O'Reilly's life has value.") (8 jurors)

Phillips (EDPA) (2010) (12 jurors)

Shakir (MDTN) (2008) ("Jamal Shakir's life has intrinsic value.") (10 jurors)

**See also,**

Bass (ED MI)(2003)("John Bass is a human being" - stipulated by the parties as established)

Mikos (NDIL) (2005) ("is a human being") (4 jurors)

-13-

19 & 24.    Government's Proposal to Merge these Factors.

The Government concedes that both cooperators and a non-cooperating defendant who participated in murders will not face the death sentence. The factors should be stated separately because they deal with different classes of individuals and the jury might weigh the circumstances of each differently.

**WHEREFORE**, Defendant Juan Briseno requests the Court submit the entirety of his proposed mitigating factors to the jury.

**Respectfully submitted:**

/s/ *Arlington Foley*

_____

Arlington Foley /#6905-45
Attorney For Defendant
1942 North Main Street
Crown Point, IN 46307
PH: 219.661.1200
FX: 219.661.1205

/s/ *John Maksimovich*

_____

John Maksimovich /#9950-45
Attorney For Defendant
1946 North Main Street
Crown Point, IN 46307
PH: 219.663.1900
FX: 219.663.1908

-14-

3030

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | |
| **Plaintiff** | |
| **vs** | |
| **JUAN BRISENO,** | |
| **Defendant** | **CAUSE NO:   2:11-CR-77** |

### CERTIFICATE OF SERVICE

I hereby certify that on March 1, 2015, I electronically filed:

### *DEFENDANT'S REPLY IN SUPPORT OF MITIGATING FACTORS*

with the Clerk of the Court using the CM/ECF system, which sent notification of such filing to the following:

| | |
|---|---|
| David J. Nozick | Bruce Hegyi |
| Assistant United States Attorney | Assistant United States Attorney |

and I hereby certify that I have mailed by United States Postal Service, the document to the following non-CM/ECF participants:

N/A

By:   /s/ *John Maksimovich*

John Maksimovich /#9950-45
Attorney For Defendant
1946 North Main Street
Crown Point, IN 46307
PH: 219.663.1900
FX: 219.663.1908
E-Mail: criminallaw@johnmaksimovich.com

-15-

THE UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br><br>v.<br><br>JUAN BRISENO, also known as Tito,<br>Defendant. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | CAUSE NO.  2:11-CR-0077-PPS |

**GOVERNMENT'S RENEWED MOTION FOR PRODUCTION
OF UNPRIVILEGED, NON-TESTIMONIAL, EVIDENCE
<u>AND DECLARATION IN SUPPORT THEREOF</u>**

COMES NOW, the United States of America (United States" or "Government"), by and

through the undersigned counsel, and renews it earlier Motion for Production of Unprivileged,

Non-Testimonial, Evidence ("Government's Initial Motion") [DE #1420 (filed on February 16,

2015)] requesting of the Court for an order requiring defendant Juan Briseno, also known as

"Tito" ("Mr. Briseno") to participate in an inspection and viewing of his person for the purposes

of identifying and photographing any and all tattoos on his person, which, as demonstrated below

are relevant in this Racketeer Influenced and Corrupt Organizations Act (RICO/VICAR) capital

case that is based, *inter alia*, on Mr. Briseno's actions as a leader and/or member of the Almighty

Imperial Gangster Nation ("Imperial Gangsters" or "IGs"), as more fully set forth in the Fourth

Superseding Indictment herein. More particularly, as set forth in the Government's Initial

Motion, the tattoos sought to be viewed and photographed are tattoos with which Mr. Briseno

has adorned himself following his arrest and detention on federal charges in this RICO/VICAR

capital prosecution of him (e.g., "FUCK THE FEDS").

Procedural History

On February 16, 2015, while the Guilt Phase was in progress, the Government filed its Initial Motion (DE #1420).  On February 24, 2015, Mr. Briseno filed his "Reply to Government's Motion For Production of Unprivileged, Non-testimonial, Evidence." ("Defendant's Reply") [DE #1448]  In his Reply, Mr. Briseno objected to the relief sought in the Government's Initial Motion on First and Fourth Amendment grounds.  [*See* Def's Reply, pages 1-2, paragraphs 2 and 4]

On or about February 25, 2015, at a break in the trial, the Court inquired of the parties as to the issues raised in the Government's Initial Motion and Defendant's Reply, which had been filed the previous afternoon. The Court expressed its initial view that it was unpersuaded by the Defendant's First Amendment argument, but it had concerns about his Fourth Amendment argument and on what basis the Court had the authority to order the defendant to comply with the relief sought by the Government. As a result, the Court denied the Government's Initial Motion and the Court suggested that the Government might pursue the relief it sought through the mechanism of an application for a search warrant submitted to a Magistrate Judge.[1]

At approximately 8:06 pm on Friday, February 27, 2015, the jury returned its verdict, finding Mr. Briseno guilty of five death-eligible VICAR murders:  Luis Ortiz (Count 9), Michael

---

[1]   As the Government advised the Court on the night of February 28, 2015, following the return of the verdict, the Government has substantial concerns as to the propriety of pursuing a Rule 41 search warrant for evidence in the Penalty Phase of a capital trial.  Rule 41(c) appears to be limited to the following:  "(1) evidence of a crime; (2) contraband, fruits of a crime, or other items illegally possessed; (3) property designed for use, intended for use, or used in committing a crime; or (4) a person to be arrested or a person who is unlawfully restrained."   Because Mr. Briseno has already been convicted of various capital crimes, and because his ***post-arrest jail tattoos*** are evidence of Penalty Phase Aggravating and/o Mitigating Factors, rather than *evidence* of an underlying or new *crime*, the Government (in consultation with Appellate counsel) is reluctant to pursue a search warrant as the appropriate vehicle to obtain the material Penalty Phase evidence.

3033

Sessum (Count 13), Miguel Mejias (Count 15), Miguel Colon (Count 19), and Latroy Howard (21).

### Mr. Briseno's Role in the Violent Imperial Gangsters

During the Guilt Phase of Mr. Briseno's trial, the Government introduced a plethora of evidence establishing, *inter alia*, that Mr. Briseno was a leader of the Imperial Gangsters, which is a particularly violent and vicious street gang, that maintained (among other rules) a rule known as "S-O-S" (shoot on sight), and that Mr. Briseno was both an enthusiastic adherent to the S-O-S rule, and an active disciple of it -- promoting and requiring fellow IGs to follow the S-O-S edict, under pain of their own "violation" (severe beating) by fellow IGs.  In vigilant compliance with the S-O-S rule, Mr. Briseno and his fellow IGs shot at, and attempted to kill on an almost-daily basis:  (a) rival gang members wherever and whenever they intersected with them, as well as (b) persons who sold drugs in IG "Territory" unless the drug dealers (i) purchased the drugs they sold from the IGs, or (ii) were actively paying "taxes" to the IGs for the privilege of selling drugs in IG Territory.  In addition, Mr. Brsiseno's 149th Street IG set proudly called themselves the "No Love Side," meaning that no other gang received "love" from the IGs – advertizing and underscoring that any and all members of other gangs who strayed into IG Territory would be killed on sight.

Among other things, on February 27, 2015, the jury found Mr. Briseno guilty of being a member of a RICO conspiracy, and of having committed -- in less than 2 years and 9 months – five VICAR murders as well as attempted murder.  [*See* Verdict, Counts 1 (RICO/VICAR), 9 (Luis Ortiz), 13 (Michael Sessum), 15 (Miguel Mejias), 19 (Miguel Colon), 21 (Latroy Howard), 23 (Marissa Harper)]

3034

<u>Mr. Briseno's Pre-Arrest Tattoos</u>

On August 24, 2010, at the time of Mr. Briseno's arrest on federal charges, Mr. Briseno had on and about his body a series of gang-related tattoos.[2]  On his shoulders and chest, Mr. Briseno displayed the large tattooed letters:  "A"-"I"-"G"-"N" [*see* Exhibits 1 & 2 (photographs of tattoos)], signifying his membership in and allegiance to the **A**lmighty **I**mperial **G**angster **N**ation.  In addition, on his shoulder blades, Mr. Briseno obtained tattoos commemorating deceased Imperial Gangsters from both the 139th Street IG set and the 149th Street IG set.

Photographs of Mr. Briseno's pre-arrest tattoos were introduced at trial.  [*See* Exhibit A hereto (consisting of Government Exhibits: 10Tattoos-1 (front with shirt), 10Tattoos-2 (front without shirt) & 10Tattoos-3 (back))]

<u>Mr. Briseno's Post-Arrest Tattoos</u>

Following Mr. Briseno's indictment in this case, the Government has learned that Mr. Briseno sought and obtained – *subsequent to* his detention on federal charges – additional gang and ethos-related tattoos on his person.  As the Court could plainly see during the Guilt Phase of Mr. Briseno's trial, Mr. Briseno now has finely-detailed (scrolling) tattoos on the backs of both of his hands.[3]  Mr. Briseno did not have those tattoos at the time of his 2010 arrest.  Almost four months after Mr. Briseno was arraigned on the Indictment that notified him of his eligibility for a

---

[2]   Having been continuously in custody since his August 24, 2010 arrest on federal charges, on June 20, 2011, Mr. Briseno was arrested on the Indictment [DE #1] in this case (2:11-CR-0077).  That indictment contained a Notice of Special Findings, informing Mr. Briseno that the Government might pursue the death penalty against him.  On June 24, 2011, Mr. Briseno was arraigned on that Indictment.  On July 1, 2011, Mr. Briseno's second attorney, Learned Counsel John Maksimovich was appointed to represent him, thereby further increasing Mr. Briseno's awareness of his death-eligibility.

[3]   The subject matter of those tattoos is not readily visible from afar.  However, they appear consistent with the new tattoos ("South" and "Side") to which Mr. Briseno refers in his October 18, 2011 letter to IG Kelvin Beltran.

Page **4** of **27**

sentence of death (June 24, 2011), Mr. Briseno wrote on October 18, 2011 a letter to fellow Imperial Gangster Calvin Beltran, also known as "Risky."[4] In that letter, Mr. Briseno wrote, among other things, "they tryna give me the death Penalty, like I'm some sort of serial killer or sumthing." [*See* Exhibit B (10-18-2011 letter), page 2]  Additionally, Mr. Briseno reported that he had obtained new tattoos:  "I got "South" on the back of my right hand.  Then I got "Side" on the back of my left hand.  Then I got my fed number in a bar code on my wrist cause It's gonna be wit me forever."  [Exhibit B, page 2]   Mr. Briseno's letter also discussed additional tattoos he intended to get and he invited Imperial Gangster Beltran to get one tattoo that is similar ("But you kno that's the tat I was gonna get but it's coo[l] you can get it too [but] mine might be a lil better.")  [Id.]

In the same October 11, 2011 letter, Mr. Briseno discussed the need to keep the gang together and that they need to grow the gang again ("that's good, we need to become a big family again"), new and promising cocaine connections for the gang he had made while in jail, and his intention to commit future violence:  "I feel you on how you feel losing Beef [Imperial Gangster Angel "Beef" Santos, who was murdered]. * * * * I was heated cause I was in here when it happened and I couldn't do shit about it.  But I kno I'll get out one day and [I will] handle buiss [business]."  [Exhibit B, page 3]   Mr. Briseno also talked about violence he intended to commit *in jail* while detained on federal death penalty charges:  "That white boi that killed that gurl is in Max.  But I was waiting for him to come in here. I was going to fuck him up. But they watching him real close."  [Exhibit B, pages 3-4]

Additionally, as established in the Declaration of Special Agent Jason Gore (Exhibit C hereto), the Government learned from two individuals with personal knowledge that subsequent

---

[4]   During the Guilt Phase of the trial, former 149th Street IG Treasurer Andres Lara identified the handwriting in the various letters [Government Exhibit IG-6] that were written to Beltan by "Tito" as being that of Mr. Briseno.

to the October 11, 2011 letter that Mr. Briseno's post-arrest tattoos include at least one tattoo that

states: "FUCK THE FEDS," or words to that effect:

3.      On August 24, 2010, JUAN "TITO" BRISENO was arrested on Federal firearms charges. On the day of BRISENO's arrest, his tattoos were photographed by law enforcement during the routine booking process. The tattoos included various gang tattoos related to his membership in the ALMIGHTY IMPERIAL GANGSTER NATION, (A-I-G-N) located across his upper torso, and memorial tattoos for two deceased Imperial Gangster members on his back. Photographs of these tattoos have been admitted into evidence in the guilt phase of BRISENO's trial in 2:11 CR 77 (as to which both parties rested on February 25, 2015.)

4.      While being detained on federal charges, BRISENO wrote a series of letters to codefendant Kelvin "Risky" Beltran, an IMPERIAL GANGSTER who had not yet been indicted in this case. These letters were found during a search of Beltran's residence. They are signed by "Tito G." "Tito" is Juan Briseno's nickname. Andres Lara, an Imperial Gangster, has testified at trial that he recognized the signature on those letters as being that of Juan Briseno. These letters discussed a variety of topics pertaining to the IMPERIAL GANGSTERS. One letter in particular stated that BRISENO had – while in jail on federal charges – gotten additional tattoos including "South" on the back of one hand and "Side" on the back of the other hand. Your affiant knows this to be a reference to the neighborhood in East Chicago, Indiana that the 149th Street set of IGs occupy, commonly known as the "South Side." In addition, the defendant wrote that he was obtaining another gang tattoo and he encouraged Beltran to get a similar gang tattoo.

\*      \*      \*

6.      In January of 2015, your declarant was involved in preparing potential witness Michael Castillo for trial. During the course of this "trial prep" session Castillo informed your declarant and Assistant United States Attorney David Nozick that BRISENO was actively trying to recruit IMPERIAL GANGSTERS while incarcerated at the Porter County Jail, and had also received a tattoos that read "FUCK THE FEDS." Your declarant has been involved in a number of proffers with Castillo. The information provided by Castillo during these proffers has always been substantially consistent with the information provided by other cooperators in this case. Castillo is a close associate of BRISENO's a member of the IMPERIAL GANGSTERS, and a co-defendant in this case.

7.      In January of 2015, your declarant conducted an interview with an inmate, (from herein, "Witness-1"), in the Porter County Indiana Jail. Witness-1 stated that he was housed in the same pod of the jail with BRISENO while

3037

BRISENO was awaiting trial. Witness-1 stated that in that time BRISENO obtained a tattoo across his abdomen that reads, "FUCK THE FEDS."

[Declaration of S.A. Jason Gore (Exhibit C)]

Hence, there is probable cause to believe that Mr. Briseno has voluntarily obtained post-arrest tattoos.  The evidence establishing this fact comes from: (1) Mr. Briseno's letter to IG Kelvin Beltran, (2) as corroborated by the tattoos on the back of both of Mr. Briseno's hands that are visible in Court (and as to which Mr. Briseno's letter to IG Beltran states are "South" and "Side," referencing the 149th Street IG set) and having had his Federal Prisoner number tattooed on his person, (3) Mr. Briseno letter to IG Beltran confirming his intention to yet another tattoo while being detained (and encouraging IG Beltran to obtain a virtually identical, if perhaps inferior, tattoo), and (4)  two individuals who were incarcerated with Mr. Briseno who viewed his post-arrest tattoos to include "FUCK THE FEDS," or words to that effect.

As shown below, Mr. Briseno's post-arrest tattoos are material to various Aggravating Factors identified by the Government and as to various Mitigation Factors alleged by Mr. Briseno in the Penalty Phase of these proceedings.

<div align="center">The Evidence Is Material In The Penalty Phase of This Trial With Regard To Both The
Aggravating Factors and Mitigating Factors Identified By Both Parties</div>

In the Government's view, as shown below, such tattoos are material to the Penalty Phase Aggravating Factors and/or sub-Factors as well as to various Mitigating Factors advanced by Mr. Briseno.

3038

**Aggravating Factors**

In its July 1, 2014, Supplemental Notice of Intent to Seek Penalty of Death ("NOI:") [DE

#968-1], among other Aggravating Factors, the Government specifically identified:

The defendant, Juan Briseño, also known as "Tito":

___.    Is a continuing danger to the lives and safety of other persons and
defendant Juan Briseño is likely to commit criminal acts of violence
in the future as evidenced by:

    a)    A low potential for rehabilitation as demonstrated by repeated
violent criminal acts;

    b)    A willingness to take human life and a lack of remorse for his acts
of violence and attempted acts of violence as demonstrated by
statements that he made following these violent acts; and

    c)    His stated desire to impose a rule requiring fellow members of the
Imperial Gangsters to shoot at rivals on sight.

          *                 *               *

___.    Demonstrated an allegiance to and active membership in the Imperial
Gangsters, an organization falling within the definition of a criminal
street gang, as set forth in Title 18, United States Code, Section 521(a);

[*See* <u>NOI</u> , page 3, paragraphs 6 a) - c) & 8 (Luis Ortiz); pages 5-6, paragraphs 8 a) - c) & 10

(Michael Sessum); pages 7-8, 8 a) - c) & 10 (Miguel Mejias); page 7, paragraphs 7 a) - c) & 9

(Miguel Colon); page 14, paragraphs 6 a) - c) & 8 (Latroy Howard)]

**Mitigating Factors**

In his Reply, Mr. Briseno listed various Mitigating Factors that he proposes to place

before the jury, including (among others):

Mitigation Factor #18:  Mr. Briseno "has made a positive adjustment to
incarceration and is likely to do so in the future."

Mitigation Factor # 14:  Mr. Briseno has participated in rehabilitation programs
while incarcerated.

Mitigation Factor # 2.  The ease and ability of the Federal Bureau of Prisons to
"impose appropriate conditions of confinement and security with regard to Mr.

Briseno."

[Defendant's Reply, page 19]

Thus, plainly, any post-arrest *gang* tattoos (that indicate continued allegiance to a violent interstate criminal enterprise) and any post-arrest *defiant*, *confrontational* and/or *anti-social* tattoo-declarations (*e.g.*, "FUCK THE FEDS") are relevant, at a minimum, to the Penalty Phase Factors in issue:  future dangerousness, lack of remorse, low probability of rehabilitation, and Mr. Briseno's "demonstrated allegiance to and active membership in" the Imperial Gangster, a violent street gang.  Similarly, they are relevant to whether or not Mr. Briseno has in fact made a positive adjustment to incarceration and is likely to do so in the future; has sincerely participated in rehabilitation programs while incarcerated; and the ease and ability with which the Bureau of Prisons will be able to "impose appropriate conditions of confinement and security" on Mr. Briseno.  This is so, because Mr. Briseno's post-arrest tattoos demonstrate both (1) Mr. Briseno's post-apprehension continued pride in, and allegiance to, the Imperial Gangsters and their violent criminal mission and actions, and (2) Mr. Briseno's *continuing* rejection of, and distain for, law and order, and his refusal to conform his actions within the bounds of basic social mores -- which pronouncements by Mr. Briseno are particularly poignant because Mr. Briseno intentionally adorned himself with these permanent sentiments during the pendency of death-eligible charges against him.

We will now establish that this Court has the authority to grant the relief sought in this Motion, following which we demonstrate that the First, Fourth, and Fifth Amendments are not impediments to the relief sought herein.

3040

## THIS COURT HAS THE AUTHORITY TO ORDER RELIEF REQUESTED

District Court are vested with broad powers to order relevant disclosures, such as that sought by the Government here. For instance, Courts have broad discretion in discovery matters under Rule 16(d)(1): "At any time the court may, for good cause ... grant other appropriate relief." In the capital case of *United States v. Webster,* 162 F.3d 308 (5th Cir. 1998), the Court resolved that "[t]here is no doubt that a district court has the authority to order a defendant who states that he will use evidence from his own psychiatric examination in the penalty phase of a trial to undergo a psychiatric examination by a government selected psychiatrist before the start of the penalty phase." Id. at 338-40. *Webster* held that a district court has "inherent authority" to "require disclosure of the defendant's experts' reports and to compel the defendant to submit to a government psychiatric exam on the government's motion." 162 F.3d at 340. *Webster* grounded its authority in Rule 57(b) of the Federal Rules of Criminal Procedure, which provides that where no law or rule is directly applicable, "[a] judge may regulate practice in any manner consistent with federal law, these rules, and local rules of the district." In *Webster*, the court properly concluded that a finding of such authority in connection with the penalty phase of a federal capital case "furthers the goals" of the FDPA. 162 F.3d at 339. Section 3593(c) of the FDPA expressly authorizes both parties to rebut information offered by the other party during the *penalty phase* and provides that each shall be given a "fair opportunity" to do so. 18 U.S.C. § 3593(c). *Webster* held that in the case of mental health information in the penalty phase, the Government would be denied a "'fair opportunity' to rebut that testimony if it could not conduct an examination of its own" and that pretrial notice, discovery, and examinations "constitute[] a fair procedure for achieving these goals in a timely manner."

3041

The same authority applies here. As established above, Mr. Briseno's post-arrest tattoos are material to both various Aggravating Factors identified by the Government and various Mitigating Factors advanced by Mr. Briseno.

In *United States v. Beckford,* 962 F.Supp. 748 (E.D. Va. 1997), another Penalty Phase discovery case, the Court reached the same conclusion -- "the inherent powers of district courts provide sufficient authority for the imposition of notice, examination, and discovery of mental health conditions in the death penalty phase ...." Id. at 757. Moreover, *Beckford* held that the statutory rebuttal rights of the Government provided statutory authority to impose such orders, because "it is clear that the Government's ability to rebut a defendant's evidence of mental condition would be *sharply curtailed, if not entirely eviscerated,"* if the Government was not entitled to notice and examination by its experts. Id. at 758 (emphasis added).

Similarly, in the capital case of *United States v. Edelin*, 134 F.Supp.2d 45 (D.D.C. 2001) (Lamberth, J), the Court employed "its inherent judicial powers to provide the procedure necessary for a just and efficient resolution of the sentencing phase of the trial." Id. at 48. At issue in *Edelin* was whether the Court could order the defendant to submit to psychological examination and testing by Government experts prior to the penalty phase. Id. at 47. In ordering such discovery, the Court noted that the Court of Appeals for the District of Columbia Circuit and other Courts have recognized the Court's inherent judicial powers and that the Federal Rules of Criminal Procedure themselves originated in the discovery of procedures established by District Courts in the absence of federal rules of procedure. The Court observed that neither Rule 12.2 nor 16(b) "necessarily exclude discovery of evidence that falls outside of the rules." Id. at 48. "The judicial authority to regulate procedure beyond the scope of the Federal Rules of Criminal Procedure is further enhanced by the Rules themselves. Rule 57(b) provides that where no law or rule is directly applicable, '[a] judge may regulate practice in a manner consistent with

Page **11** of **27**

federal law, these rules, and local rules of the district." Id.  With regard to the provisions of the FDPA, the Court held that the "terms of the [FDPA] statute are not comprehensive.  The statutory provisions clearly indicate that it is 'not intended as a complete guide to pre-trial and trial procedures in capital case.' [Citation omitted]  The Court must therefore supplement the limited procedures set forth by Congress in the statute." Id. at 51-52.  Pointedly, the Court observed that "the penalty phase of a capital case, where there should be a premium placed upon accuracy and fairness, is an appropriate circumstance where additional reciprocal discovery should be provided." Id. at 49 (emphasis provided.)  In ordering the discovery requested by the Government, the Court noted that the "Government has a statutory right to rebut information presented by the defense as to mitigating factors at sentencing," Id.[5]

Indeed, even outside of the capital context, federal Courts have long recognized and employed their inherent powers to order examinations of, and discovery from, criminal defendants that went beyond that set forth in the Federal Rules of Criminal Procedure.  In *United States v. Bender*, 331 F.Supp. 1074 (C.D. Cal. 1971), the Court concluded that it had inherent powers to order discovery beyond that set forth in the Federal Rules of Criminal Procedure.  In *Bender*, the defendant was charged during the Viet Nam War with having conspired with his

---

[5]   Despite the lack of direct authority in the FDPA or in the Rules, numerous other Courts have reached the same conclusion with regard to ordering capital defendants to submit to psychological examination and testing by Government experts prior to the penalty phase of the trial with the protection of "firewall" counsel. *See, e.g.*, *United States v. Millner,* 13-CR-0015-ART (E.D. Kentucky May 19, 2014 Memorandum Opinion) (ordering firewall counsel for penalty phase over objection of defendant's counsel); *United States v. Montgomery*, No. 11-CR-20044-JPM (W.D. Tenn. March 27, 2014 Memorandum Opinion) (ordering firewall counsel over defendant's objection and noting that federal courts have routinely authorized firewall counsel in penalty phase mental health); *United States v. Northington*, 2012 WL 2873360, at *7 (E.D. Pa. July 12, 2012); *United States v. Williams*, 731 F. Supp.2d 1012, 1027 (D. Hawai'i 2010); *United States v. Lujan*, 530 F. Supp.2d 1224, 1240 (D.N.M  2008); *United States v. Wilson*, 493 F. Supp.2d 348, 356 (E.D.N.Y. 2006) (requiring, over the defendant's objections, disclosures to firewalled counsel); *United States v. Johnson*, 362 F. Supp.2d 1043, 1084 (N.D. Iowa 2005); *United States v. Sampson*, 335 F.Supp.2d 166, 243-45 (D. Mass. 2004).

3043

father to evade service in the Armed Forces of the United States by claiming he was "physically

disqualified" for service.  Id. at 1074.  The defendant pled not guilty to the charges.  Prior to trial,

the Government moved the Court for an order requiring the defendant to submit to a physical

examination by a Government expert "for the purposed of obtaining full and reliable information

upon the issue of whether defendant has or has had any physical condition which would

disqualify him from military service."  Id. at 1075.  The defendant opposed the motion, claiming

that the Criminal Rules did not provide for such discovery and that the Court lacked the power to

order it.  In ordering that the defendant submit to the physical examination requested by the

Government, the Court noted that the defendant's restrictive interpretation of  available Rule 16

discovery "flies in the face of both the letter and the spirit of modern Federal discovery practice

and procedure."  Id.   The Court continued:

> But even more importantly, the Court is not confined solely to the discovery
> techniques and parameters laid out in the Federal Criminal Rules….  The
> Federal Rules of Criminal Procedure were not designed to and do not entirely
> supplant this fundamental authority and residual power of the Court.  It has
> long been held that the Federal Courts possess the inherent power to order
> discovery and inspection.  [Citations omitted.]

The Court determined that the defendant's physical condition was plainly "in controversy."  Id.

at 1076.  Finally, the Court rejected the defendant's Fourth and Fifth Amendment objections to

the examination of him, noting that "the cases uniformly stand for the proposition that the

requirement of a physical examination, performed in a reasonable manner, is neither compulsory

self-incrimination nor unlawful search and seizure."  Id. at 1076-77 (citations omitted).

More recently, in *Harrell v. Hense*, 2009 WL 409875 (C.D. Cal. 2009), the Court was

faced *habeas* review of a state case in which a California state judge grated the prosecutor's

request for a physical examination of the defendant's penis during which the defendant's

foreskin would be manipulated by a physician, in a drug distribution case where the police

Page **13** of **27**

claimed the defendant secreted a black-colored baggie containing 2.24 grams of crack cocaine beneath his foreskin. Id. at *2. At trial, the defendant introduced testimonial and photographic evidence that of what appeared to be his circumcised penis. Id. at *2, *5. As a result, at the request of the Government, an examination by a medical doctor was ordered. Id. *7. Challenged as a constitutional violation on *habeas* review, the District Court disagreed: "We agree with the trial court's assessment that the intrusion inherent in an examination by a medical doctor was outweighed by the prosecution's need for the evidence. Under the balancing test of *Winston v. Lee, supra*, 470 U.S. 753, the order requiring the physical examination was proper." Id. at *7. Dispatching both the defendant's Fourth Amendment and Fifth Amendment claims, the District Court concluded: "In sum, the examination was ordered for a reasonable purpose in a reasonable manner and thus was neither compulsory self-incrimination nor an unlawful search and seizure." Id. at *9.

Plainly, the discovery sought by the Government, here, is substantially less intrusive than that deemed proper in *Harrell*.

In *Slavin v. Artus*, 2010 WL 185108 (E.D.N.Y. 2010), was a habeas case in which the defendant contended his Fourth, Fifth, and Sixth Amendment rights were violated when, upon his arrest, the law enforcement officials, ordered the defendant – over the defendant's objections -- to remove his shirt and photographed his tattoos, which included (among other tattoos) "A.C.A.B" ("All Cops Are Bastards"), "F.T.W." ("Fuck the World"). Id. at 2. Additionally, the defendant complained that, prior to trial, the Court granted the prosecution's motion to take a second set of photographs of the defendant's tattoos, which were admitted at trial. Id. The

District Court rejected all of the defendant's Constitutional claims:

> Petitioner created the evidence when he voluntarily had images tattooed on his body. Respondent merely chose the method by which to present those images to the jury. And <u>by presenting the tattoos through photographs, **as opposed to having Petitioner remove his clothing and display the tattoos [to the jury]**, Respondent may have actually blunted their impact</u>.

<u>Id</u>. at \*4 (emphasis provided.)

The same result should obtain here. Mr. Briseno voluntarily had images tattooed on his body. Those tattoos are relevant to issues raised by both sides in the Penalty Phase. The Government could request that Mr. Briseno be ordered to remove his clothing so that the jury could view directly such tattoos. However, the Government is merely requesting that it be permitted to take photographs of Mr. Briseno's tattoos, so that those photographs can be offered in evidence.

<div align="center">

There Is No First Amendment Privilege

</div>

Mr. Briseno's post-arrest tattoos are neither "statements" nor "abstract beliefs," such that they are shielded by the protections of the First Amendment. In this regard, the citation to *Dawson v. Delaware*, 503 U.S. 159, 166-67 (1992), on page 2 of his Reply is inapposite. *Dawson* involved a capital defendant who was a member of the Aryan Brotherhood. Id. at 160-61. While a state prisoner in Delaware, the defendant escaped with three other inmates. Id. at 160. Thereafter, while on the run, among other things, the defendant burglarized a residence where he found Mrs. Kisner alone in the residence, preparing to leave for work. The defendant "brutally murdered Mrs. Kisner, stole the Kisner's car and some money, and fled further south." <u>Id</u>. at 1095. During the penalty phase of the state capital trial for the murder of Mrs. Kisner, and over the defendant's First and Fourteenth Amendment objections, the prosecution introduced evidence that the defendant had the words "Aryan Brotherhood" tattooed on the back of his right hand. <u>Id</u>. The defendant was sentenced to death. <u>Id</u>. at 163. On appeal, the Supreme Court

reversed the defendant 's sentence, finding error with the introduction in the Penalty Phase of

the defendant's membership in the Aryan Brotherhood because the victim was white and the

prosecution failed to put on any evidence that the Aryan Brotherhood -- or the defendant's

membership in the Aryan Brotherhood -- had nothing to do with the crime:

> In the present case, [] the murder victim was white, as is Dawson; elements
> of racial hatred were therefore not involved in the killing.
>
> Because the prosecution did not prove that the Aryan Brotherhood had
> committed any unlawful or violent acts, or had even endorsed such acts,
> the Aryan Brotherhood evidence was also not relevant to help prove any
> aggravating circumstance.  **In many cases, for example, associational
> evidence might serve a legitimate purpose in showing that a defendant
> represents a future danger to society.  A defendant's membership in an
> organization that endorses the killing of any identifiable group, for
> example, might be relevant to a jury's inquiry into whether the defendant
> will be dangerous in the future**.  Other evidence concerning a defendant's
> associations might be relevant in proving other aggravating circumstances.
> But the inference which the jury was invited to draw in this case tended to
> prove nothing more than the abstract beliefs of the Delaware chapter. * * *
> Whatever label is given to the evidence presented, however, we conclude that
> Dawson's First Amendment rights were violated by the admission of the Aryan
> Brotherhood evidence in this case, **because the evidence proved nothing more
> than Dawson's abstract beliefs**. *Cf. Texas v. Johnson*, 419 U.S. 397, 141
> (1989) ("[T]he government may not prohibit the expression of an idea simply
> because society finds the idea itself offensive or disagreeable").  **Delaware
> might have avoided this problem if it had presented evidence showing more
> than mere abstract beliefs on Dawson's part**, but on the present record one is
> left with the feeling that the Aryan Brotherhood evidence was employed simply
> because the jury would find these beliefs morally reprehensible.  Because
> Delaware failed to do more, we cannot find the evidence was properly admitted
> as relevant character evidence.
>
> Nor was the Aryan Brotherhood evidence relevant to rebut any mitigating
> evidence offered by Dawson.

503 U.S. 166-67 (emphasis provided).

Here, in contrast, the Government offered overwhelming evidence that Mr. Briseno's

association with, and allegiance to, the Imperial Gangsters was a compelling reason for the

capital murders Mr. Briseno committed.  Indeed, the Government charged, and the jury

convicted, Mr. Briseno of membership in a RICO conspiracy based on his membership in the

Imperial Gangsters and that each of the five capital murders of which he was convicted were

VICAR murders. As such, Mr. Briseno's citation to *Dawson* is inapposite.

Moreover, the Government did not compel Mr. Briseno to obtain the tattoos of which he

claims to recently have developed modesty. Thus, even if Mr. Briseno's tattoos are "statements"

(*e.g.,* "Fuck the Feds"), they do not, and cannot, come within the ambit of the Fifth Amendment.

The Supreme Court made this point clear in *Fisher v. United States*, 425 U.S. 391 (1976), where

it held that a taxpayer could not avoid producing voluntarily prepared papers to the IRS "by

asserting that the item of evidence which he is required to produce contains incriminating

writing." Id. at 410. As the Court explained, because "the preparation of all of the papers ... was

wholly voluntary, they could not be said to contain compelled testimonial evidence." Id. at 409-

10. More recently, the Supreme Court has declared it a "settled proposition that a person may

be required to produce specific documents even though they contain incriminating assertions of

fact or belief because the creation of those documents was not 'compelled' within the meaning of

the privilege." *United States v. Hubbell*, 530 U.S. 27, 35-36 (2000).

Applying these principles, Courts regularly conclude that the "voluntary tattooing of an

incriminating word [on the defendant's body] was, like the voluntary preparation of documents,

not the product of government compulsion." *United States v. Greer*, 631 F.3d 608, 613 (2d Cir.

2011); *Slavin v. Artus*, 2010 WL 185108, \*4 (E.D.N.Y. 2010) (Fifth Amendment does not apply

to white supremacist tattoos that defendant voluntarily received, because lack of compulsion

rendered them outside the privilege.)

Because the Government did not compel Mr. Briseno to obtain the tattoos it now wishes

to photograph, any Fifth Amendment claim by Mr. Briseno must fail. *United States v. Greer*,

631 F.3d at 613.  ("In the absence of compulsion, [the defendant's] Fifth Amendment claim fails.")

<u>There is No Fourth Amendment Privilege</u>

A. Because Mr. Briseno Is An Inmate, He Has No Cognizable Fourth Amendment Privilege With Regard To His Tattoos

The Fourth Amendment guarantee against unreasonable searches and seizures applies *only* where there the individual has a reasonable expectation of privacy.  *Terry v. Ohio*, 392 U.S. 1, 9 (1968).  According to the Supreme Court, "<u>prisoners have no legitimate expectation of privacy</u> and ... the Fourth Amendment's prohibition on unreasonable searches does not apply in prison cells."  *Hudson v. Palmer*, 468 U.S. 517, 530 (1984) (emphasis provided).  As the Court explained, "[t]he applicability of the Fourth Amendment turns on whether the person invoking its protection can claim a justifiable, a reasonable, or a legitimate expectation of privacy that has been invaded by government action."  <u>Id</u>. at 525 (internal quotations and citations omitted). In the prison context, the Court determined, "Notwithstanding our caution in approaching claims that the Fourth Amendment is inapplicable in a given context, we hold that society is not prepared to recognize as legitimate any subjective expectation of privacy that a prisoner might have in his prison cell."  <u>Id</u>. at 525-26.  In sum, the Court reasoned, such privacy rights for prisoners "simply cannot be reconciled with the concept of incarceration and the needs and objectives of penal institutions."  <u>Id</u>.

Expounding on the reach of its holding in *Hudson*, in 2006, the Supreme Court described its holding in Hudson to be that "<u>prisoners have no reasonable expectation of privacy</u>."  *Sampson v. California*, 547 U.S. 843, 848 (2006).  Consistent with *Hudson* and *Sampson*, Moreover, federal courts have held that the following categories of activity do not run afoul of the Fourth Amendment: (1) unannounced shakedowns: routine strip searches, *Bell v. Wolfish*, 441 U.S. 520,

558 (1979); (2) nonconsensual blood testing, *Dunn v. White*, 880 F.2d 1188, 1197 (10th Cir. 1989); (3) observation by female prison officials of naked male prisoners, *Johnson v. Phelan*, 69 F.3d 144, 150 (7th Cir. 1995).  Indeed, in *Bell v. Wolfish*, *supra*, the Supreme Court held that body cavity searches, without a warrant, probable cause, or even reasonable suspicion, do not violate the Fourth Amendment.  441 U.S. at 558.

Jail and prison staff regularly monitor inmate telephone calls and intercept prison mail as part of their duty to administer the institution and provide security. *See United States v. Gordon*, 168 F.3d 1222, 1228 (10th Cir. 1999) (inmates have no legitimate expectation of privacy in non-privileged mail); *United States v. Sababu*, 891 F.2d 1308, 1329 (7th Cir. 1989) (no reasonable expectation of privacy in telephone calls between inmates and outsiders). Correctional officers routinely observe naked inmates in the showers and in their cells. *Johnson v. Phelan*, 69 F.3d 144, 150 (7th Cir. 1995).  Similarly, correctional staff conduct strip searches and body cavity inspections to deter rules violations and to ensure the safety of other inmates, employees, and visitors to the institution. *See Bell v. Wolfish*, 441 U.S. at 558.

Because Mr. Briseno is an inmate, he has no reasonable expectation of privacy cognizable under the Fourth Amendment with regard to the viewing of the tattoos he has on his person.  *See United States v. Dionisio*, 410 U.S. 1, 14 (1973) (the Fourth Amendment provides no protection for what a person knowingly exposes to others, whether on the street or even within the confines of his office or home.)  This is so, because physical characteristics such as facial features, handwriting and voice are "repeatedly produced for others" and therefore no one can have a "reasonable expectation" that these characteristics will remain private. Id. at 14.

The tattoos that the Government seeks to view and photograph are on parts of Mr. Briseno's body that are at various times visible to other inmates and to correctional staff.

3050

For each of these reasons, Mr. Briseno has cannot interpose a cognizable a Fourth Amendment claim.

### B. In Any Event, The Government Has Produced Sworn Evidence Objectively Establishing Probable Cause As To Mr. Briseno's Post-Arrest Tattoos

Moreover, even if Mr. Briseno had a valid Fourth Amendment claim – which he does not – as set forth above, the Government has established through sworn evidence that probable cause exists that Mr. Briseno has voluntarily obtained post-arrest tattoos on his person. [*See* Declaration of Jason Gore (Exhibit C); Trial Testimony of Andres Lara; Defendant's Letter to Kelvin Beltran (Exhibit B)] Further, as the Government has established, *supra*, Mr. Briseno's post-arrest tattoos are relevant to both the Government's Aggravating Factors and Mr. Briseno's Mitigating Factors in the Penalty Phase of these proceedings.

<p align="center">There Is No Fifth Amendment Privilege</p>

The Fifth Amendment protects a defendant against coerced incriminating testimony; it does not allow him to hide his physical characteristics. As the Supreme Court has explained, the privilege against "compelling a man in a criminal court to be a witness against himself is a prohibition on the use of physical or moral compulsion to extort communications from him, not an exclusion of his body as evidence when it may be material." *United States v. Dionisio*, 410 U.S. 1, 6, (1973) (emphasis added; quoting *Holt v. United States,* 218 U.S. 245, 252-53 (1910) (Holmes, J.) (rejecting as an "extravagant extension of the Fifth Amendment" the argument that it violated the privilege to require the defendant to put on a blouse for identification purposes)). "It has long been held that the compelled display of identifiable physical characteristics infringes no interest protected by the privilege against compulsory self-incrimination." Id. at 5-6 (emphasis added).

"The distinction ... is that the privilege is a bar against compelling 'communications' or 'testimony,' but that compulsion which makes a suspect or accused the source of 'real or physical evidence' ... does not violate it." *Schmerber v. California*, 394 U.S. 757, 764 (1966). Thus, the Fifth Amendment privilege "<u>offers no protection against compulsion to submit to</u> fingerprinting, <u>photographs</u>, or measurements, to write or speak for identification, to appear in court, to stand, to assume a stance, to walk, or to make a particular gesture." <u>Id</u>. (emphasis added). Nor does it allow the defendant to avoid compelled submission to blood testing [<u>id</u>. at 765] or handwriting samples [*Gilbert v. California*, 388 U.S. 263, 266-67 (1967)]; or voice exemplars [*Dionisio*, 410 U.S. at 7].

Thus, as applied to Mr. Briseno, "though tattoos [may] incriminate him... they [are] open physical characteristics outside the protections of the Fifth Amendment." *United States v. Toliver*, 2010 WL 2749599, *9-10 (4th Cir. 2010) (holding that taking photographs of defendant's gang-related tattoos did not implicate privilege against self-incrimination because they are physical traits, not testimony for Fifth Amendment purposes); *see United States v. Bay*, 762 F.3d 1314, 1315 (9th Cir. 1984) (holding that defendant need not take witness stand to show jury visible, physical characteristic of tattoos because that evidence is not testimonial).[6]

In sum, "compelling the accused merely to exhibit his person for observation" does not constitute "compulsion of the accused to give evidence having testimonial significance." *United*

---

[6]  Moreover, the silent viewing and/or photographing of Mr. Briseno's tattoos cannot result in a *Miranda* violation, in any event. This is so, because "the *Miranda* rule protects against violations of the Self-Incrimination Clause," which is "a prohibition on compelling a criminal defendant to testify against himself at trial," and thus, "[t]he Clause cannot be violated by the introduction of nontestimonial evidence." *United States v. Patane*, 542 U.S. 630, 634 (2004).

Page **21** of **27**

*States v. Wade*, 388 U.S. 218, 222 (1967). Hence, Mr. Briseno's Fifth Amendment privilege is

not implicated.

## MR. BRISENO SHOULD BE ORDERED TO PRODUCE HIS TATTOOS FOR INSPECTION AND MEMORIALIZATION

The relief sought in the Government's Motion is based upon the well-known premise that

the Constitution does not protect a criminal defendant from giving non-testimonial evidence

(e.g., fingerprints, standing in police lineups, providing handwriting exemplars, voice exemplars,

etc.) In this regard, Courts have long held that forced fingerprinting, photographing, display of

tattoos, or requiring a defendant to say certain phrases for the purposes of identification do not

violate the Fifth Amendment. *See, e.g., Schmerber v. California*, 384 U.S. 757, 764 (1966);

*United States v. Bay*, 762 F.2d 1314, 1124 (9th Cir. 1985) (requiring a defendant to display

tattoos on his hands would not violate the Fifth Amendment privilege against self-incrimination).

Such productions or displays do not involve compelled testimony. Id. This conclusion is

founded in *United States v. Dionisio*, 410 U.S.1, 5–6 (1973) ("It has long been held that the

compelled display of identifiable physical characteristics infringes no interest protected by the

privilege against compulsory self-incrimination."); s*ee also United States v. Hubbell*, 530 U.S.

27, 34 (2000) ("[E]ven though the act may provide incriminating evidence, a criminal suspect

may be compelled to put on a shirt, to provide a blood sample or handwriting exemplar, or to

make a recording of his voice." Id. at 35 (citing *Holt v. United States*, 218 U.S. 245 (1910)).

In conformity with these established principles, Courts have long held that introducing

photographs of a defendant's tattoos or requiring a defendant to expose his tattoos for viewing by

the jury does not violate the Fifth Amendment. *See*, *e.g*., *United States* v. *Greer*, 631 F.3d 608,

612-13 (2d Cir. 2011); *United States v. Toliver*, 387 Fed.Appx. 406, 416 (4th Cir. 2010)

(compelling a defendant to be photographed so that the pictures could be displayed at the

defendant's RICO trial before the jury did not violate the Fifth Amendment); *United States v. Miller*, 48 Fed. Appx. 933, 948 (6th Cir. 2002); *United States v. Lara*, 181 F.3d 183, 190 (1st Cir. 1999); *Tasco v. Butler*, 835 F.2d 1120, (5th Cir. 1988) ("The court's judicial notice of [the defendant's] identifying tattoos and scar did not impinge on his Fifth Amendment privilege"); *United States v. Bay*, 762 F.2d 1314, 1315-16 (9th Cir. 1985).

Furthermore, it is well established that what a person knowingly exposes to the public is not a subject of Fourth Amendment protection. *Katz v. United States*, 389 U.S. 347 (1967). Consequently, there is no requirement of a showing of probable cause to support a Court Order compelling fingerprints or hair samples. *See Davis v. Mississippi*, 394 U.S. 721, 727 (1969) (stating in dicta that "fingerprinting involves none of the probing into an individual's private life and thoughts that marks an interrogation or search"); s*ee generally Cupp v. Murphy*, 412 U.S. 291, 295 (1973) (characterizing fingerprints as "mere physical characteristics" which are "constantly exposed to the public"). Nor does a criminal defendant suffer constitutional harm when required to try on clothing to see if it fits, *Holt v. United States*, 218 U.S. 245 (1910), provide a blood sample, *Schmerber v. California*, 384 U.S. at 764, give a handwriting exemplar, *Gilbert v. California*, 388 U.S. 263, 266-67 (1967), or speak so tone of voice can be heard, *United States v. Wade*, 388 U.S. 218 (1967).

Moreover, the type of evidence the Government is seeking – viewing and photographing Mr. Briseno's tattoos -- is plainly less intrusive than the compulsory production of blood, *Schmerber*, 384 U.S. at 764; ordering a defendant to provide a handwriting exemplar, *Gilber v Californiat*, 388 U.S. at 266-67; or ordering a defendant to shave before trial, *United States v. Valenzuela*, 722 F.2d 1431, 1433 (9th Cir. 1983).

Seventh Circuit Precedent – Gang Tattoos Generally

*United States v. Suggs*, 374 F.3d 508 (7ᵗʰ Cir. 2004),[7] is the leading case in the Seventh

Circuit on the issue of the admissibility of gang tattoos in a gang trial, such as that presented

here.  In *Suggs*, the Government alleged that the defendants were members of a street gang

known as Concord Affiliated (CCA) that was associated with the Vice Lords, a Chicago street

gang that had branched out across the Midwest.  Id. at 512.  As part of proving the charged

conspiracy, the Government introduced evidence of the defendants' gang affiliation, including

*inter alia*, photographs depicting tattoos of the word "Insane" on one defendant, which

demonstrated allegiance to the "Insane Vice Lords," one of the five factions of the Almighty

Vice Lord Nation; and the tattoo of a 5-point star and crescent on a second defendant, which are

symbols of the Vice Lords.  Id. at 514.  Additionally, the Government introduced evidence that a

third defendant had a 5-point star etched into the gold cap of his front tooth, which signified

allegiance to the Vice Lords.  Id.   Following their convictions on drug conspiracy charges (21

U.S.C. Section 846) and a variety of other drug offenses (21 U.S.C. Sections 841 and 843), the

defendants claimed on appeal that the admission of the tattoos and the gold cap containing the 5-

point star was error because (a) they were not directly probative of participation in the drug

conspiracy, and (b) they unfairly prejudiced the defendants based on a status (gang membership)

which was not in itself a crime.  Id. at 516.

Affirming the convictions in *Suggs*, the Seventh Circuit readily disposed of appellants'

Rule 403 claims:

> Despite its highly prejudicial nature, <u>it is well settled in the Seventh Circuit</u>
> <u>that "[e]vidence of gang affiliation is admissible in cases in which it is relevant</u>
> <u>to demonstrate the existence of a joint venture or conspiracy and a relationship</u>
> <u>among its members</u>." *United States v. Westbrook,* 125 F.3d 996, 1007 (7th Cir.

---

[7]   *Suggs* was an appeal from a trial before the Hon. James T. Moody of the Northern District of
Indiana.

1997).  "Gang affiliation is particularly relevant, and has been held admissible, in cases where the interrelationship between people is a central issue[,]" such as in a conspiracy case.  *United States v. Thomas,* 86 F.3d 647, 652 (7th Cir.1996) (affirming district court's ruling allowing gang evidence because that evidence "helped demonstrate the existence of the conspiracy and the connections between members of the conspiracy"); *see also United States v. Sargent,* 98 F.3d 325, 328 (7th Cir.1996) ("[G]ang membership can be key to establishing criminal intent or agreement to conspire.").

Here, the district court correctly admitted evidence of the Defendants' gang affiliation "for the [limited] purpose of demonstrating the existence of a conspiracy to distribute illegal drugs, and the connections between members of CCA and the conspiracy." (Trial Tr. I, 36). The government did not mislead the jury by improperly substituting evidence of gang affiliation for evidence of involvement in the drug conspiracy. Instead, the government used gang affiliation as probative circumstantial support for their theory of the case:  that the indicted individuals had engaged in a conspiracy to distribute crack.

<p style="text-align:center">*          *          *</p>

The specific exhibits showing Bobby and Seantai Suggs's tattoos and Aaron Davis's gold tooth did not violate Federal Rule of Evidence 403.  As established above, gang membership is relevant evidence in showing a drug distribution conspiracy. Tattoos that help to establish gang membership are admissible to support a showing of a joint venture or conspiracy. *See United States v. Lewis,* 910 F.2d 1367, 1372 (7th Cir.1990).

374 F.3d at 516-17; *and see United States v. Ruibal*, 2014 WL 198663, *2 (W.D. Mich. 2014) (Government entitled under *Old Chief v. United States*, 519 U.S. 172, 189 (1997), to introduce tattoo evidence of defendants' gang affiliation despite defendants' willingness to stipulate to such gang association).

Because Mr. Briseno's tattoos are not privileged, and because Mr. Briseno's tattoos are non-testimonial, and because Mr. Briseno's post-arrest tattoos are relevant to material issues in the Penalty Phase of these proceedings (i.e., of lack or remorse, low probability of rehabilitation, and future dangerousness), and because the probative value is not outweighed by the danger of creating an unfair prejudice, confusing the issues, or misleading the jury, the Court should order

3056

that Mr. Briseno submit to the viewing and photographing by law enforcement personnel of any

and all tattoos on his person.

### Conclusion

For the reasons set forth above, the Government requests that the Court order defendant

Juan Briseno to permit law enforcement personnel to view and photograph all of the tattoos on

his person at a time and location directed by the Court.

Respectfully submitted,

DAVID CAPP
UNITED STATES ATTORNEY

s/ *David J. Nozick*

David J. Nozick
Assistant U.S. Attorney
5400 Federal Plaza
Suite 1500
Hammond, IN 46320
Tel. (219) 937-5655
www.david.nozick@usdoj.gov

s/ *Bruce R. Hegyi*

Bruce R. Hegyi
Trial Attorney
Capital Case Section
Criminal Division
United States Department of Justice
1331 F Street, N.W., Sixth Floor
Washington, D.C. 20530
Tel. (202) 616-4582
Cell (703) 536-4774
www.bruce.hegyi@usdoj.gov

3057

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this date, I electronically filed the foregoing document and

accompanying exhibits with the Clerk of the Court using the CM/ECF system which will send

notification of such filing to all counsel of record for defendant Juan Briseno.


s/ *Bruce R. Hegyi*
Bruce R. Hegyi
Trial Attorney



GOVERNMENT
EXHIBIT

1 OTATTOOS -1

U.S. v Briseno



GOVERNMENT EXHIBIT

10-TATTOOS-2

U.S. v Briseno



GOVERNMENT
EXHIBIT
10 TATTOOS-3
U.S. v Briseno
PENGAD 800-631-6989

Briseno

orter County Jail
2755 St Rd 49
araiso IN 46383



USA
FIRST-CLASS
FOREVER

Calvin Beltron
5718 Worthcote Ave
Hammond, IN 46320

4632041466



GOVERNMENT
EXHIBIT
10 BELTRAN 1
U.S. v Briseno

3062

"1"

10/18/11

Lips,

Wat up my nikka wats been New. It was good hearing from you. Well I'm coo just chillin I had court last friday but they just continued it. I got court Nov 17 So I'll find something out then. I think They might hit me wit some new charges. But im praying the let me go cause of lack of evidence. I just prepare myself for the worst but pray for the best. But that was love you went of out the day of R.I.P. Reef Anniversary. Nikka out there forgot how shit goes. But it's good that you came in wen AGuA was out, we dn't need any one getting locked up on some stupid shit. Fuck them nikkas Sperm ad them they can't even handle the own buiss ad they tryin to do that shit. So you fuck wit Blackass ad then again. Thats good we need to become a big family again. Were brothers before any thing. We only got ourselves ad family. But thats coo just stay strong. Did you tell

Soy Sauce I seid wat up and to write me If he ewants too. Thats love Devious coming out here alot now and chilling wit you. Wat does he have a car or he gets droped off. Wat did he buy a new PS3 System or just a controll. Tell him I said wet up. But about the tats, I got "south" ad the back of my right hand. Then I got "side" on the back of my left hand. Then I got my feed number in a bar code on my wrist cause It's gonna be wit me forever. Then I got the date me and oh gurl hooked up on my wrist as well. Cut me up all you want but she's the only one that stood wit a nigga through this. So Ima be wit here you can't find ones like that any more. But you kno thats the tat I was gonna get but it's coo you can get it too mine might be stil better. But yea Gizzle they tryna give me the death Penalty. like I'm some type of serial killer or sumthing. That white boi that killed that gurl is in Max. But I was waiting for him to come in here. I was gonna fuck him up.

3064

But they watching him close. He was
bogus for that doe. But shit on my
B-day I made some tamales and
sip on some drank you kno how it
is. I was a nice one. My whole fam
came to see me "Happy B-lated B-day"
By the way, wat you do out there,
lol I see you gave me a new name
It descent doe. If we think the same
I kno wat BaG you talking about. I'm
coo wit that name. Shit I damn near
already lived up to it. Yea I can get
pics send them through. But that pic
your talking bout I think I'll wait on
that. I don't want them to bring up
no bull shit you kno. But yea I feel
you an how you feel losing Beef. It
sucks my nig but you kno it's life.
I was heated cause I - was in here
wen It happend and I couldn't do
shit about it. But I kno I'll get out
one day and handle buiss. But yea
I kno you'll like tha CCA music.
They spit nothing but the truth so
does Devious like the music. So you
actually met some hoes at six flags

3065

and they actually talk to you. Man I must be missing alot. Who all went up there. Shit rite about now I'll nut in anything my nig. But I'm heppy to hear you step up your game. & you still fucking wit tekia, lol. Naw but thets wets up do all type of shit out there have fun. But I talk to Dinero, Jakk, Tuff, you, fatboi, Blackass, and thets it, I'm glad to heer that you got a gurl, you got to keep them on standby. just dn't get any thing prego. unless she bad. Well imus end this here it was good hearing from you. Sorry is sloppy I was in my room at nite ad the lights aint to brite - stay up ad out of trouble. Tell your OG I said `HI` And I love her. lol

Your Bro

THE UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, Plaintiff, | § § § § | |
| v. | § § | CAUSE NO. 2:11-CR-0077-PPS |
| JUAN BRISENO, also known as Tito, Defendant. | § § § § | |

DECLARATION OF SPECIAL AGENT JASON GORE

I, Jason M. Gore, do hereby declare, subject to the penalties for perjury, that the following facts are true and correct:

1. I am a Special Agent for the Bureau of Alcohol Tobacco Firearms and Explosives, (ATF) and have been employed since 2004. I am currently assigned to the Merrillville Field Office and am responsible for conducting criminal investigations relating to violations of the Federal Statutes pertaining to firearms, explosives and arson. I have successfully completed training at the ATF Training Academy including the Criminal Investigators Training Program and Special Agent Basic Training. I have personally conducted numerous investigations concerning the violations of Federal firearms laws.

2. Your declarant states this Declaration is being submitted for the limited purpose of establishing the probable cause in support of the Government's Renewed Motion For Production of Unprivileged, Non-Testimonial, Evidence.

3067

3.  On August 24, 2010, JUAN "TITO" BRISENO was arrested on Federal firearms charges. On the day of BRISENO's arrest, his tattoos were photographed by law enforcement during the routine booking process. The tattoos included various gang tattoos related to his membership in the ALMIGHTY IMPERIAL GANGSTER NATION, (A-I-G-N) located across his upper torso, and memorial tattoos for two deceased Imperial Gangster members on his back.  Photographs of these tattoos have been admitted into evidence in the guilt phase of BRISENO's trial in 2:11 CR 77 (as to which both parties rested on February 25, 2015.)

4.  On February 27, 2015, BRISENO was convicted of five death-eligible murders.  The penalty phase of BRISENO's trial is scheduled to begin on Tuesday, March 2, 2015.

5.  While being detained on federal charges, BRISENO wrote a series of letters to codefendant Kelvin "Risky" Beltran, an IMPERIAL GANGSTER who had not yet been indicted in this case.  These letters were found during a search of Beltran's residence.  They are signed by "Tito G."  "Tito" is Juan Briseno's nickname.  Andres Lara, an Imperial Gangster, has testified at trial that he recognized the signature on those letters as being that of Juan Briseno. These letters discussed a variety of topics pertaining to the IMPERIAL GANGSTERS.  One letter in particular stated that BRISENO had – while in jail on federal charges – gotten additional tattoos including "South" on the back of one hand and "Side" on the back of the other hand. Your affiant knows this to be a reference to the neighborhood in East Chicago, Indiana that the 149th Street set of IGs occupy, commonly known as the "South Side."

In addition, the defendant wrote that he was obtaining another gang tattoo and he encouraged Beltran to get a similar gang tattoo.

6.  In January of 2015, your declarant was involved in preparing potential witness Michael Castillo for trial.  During the course of this "trial prep" session Castillo informed your declarant and Assistant United States Attorney David Nozick that BRISENO was actively trying to recruit IMPERIAL GANGSTERS while incarcerated at the Porter County Jail, and had also received a tattoos that read "FUCK THE FEDS."  Your declarant has been involved in a number of proffers with Castillo.  The information provided by Castillo during these proffers has always been substantially consistent with the information provided by other cooperators in this case.  Castillo is a close associate of BRISENO's a member of the IMPERIAL GANGSTERS, and a co-defendant in this case.

7.  In January of 2015, your declarant conducted an interview with an inmate, (from herein, "Witness-1"), in the Porter County Indiana Jail. Witness-1 stated that he was housed in the same pod of the jail with BRISENO while BRISENO was awaiting trial. Witness-1 stated that in that time BRISENO obtained a tattoo across his abdomen that reads, "FUCK THE FEDS."

SO DECLARED, SUBJECT TO THE PENALTIES FOR PERJURY, this 1ˢᵗ day of March, 2015.

Special Agent Jason Gore
Bureau of Alcohol, Tobacco, Firearms and Explosives

3

```
MIME-Version:1.0
From:CMECFinnd@innd.uscourts.gov
To:CMECFinnd@localhost.localdomain
Bcc:
--Case Participants: Bryan M Truitt (bryan@tblawyers.com, sherrie@tblawyers.com), David J
Nozick – AUSA (david.nozick@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov,
susan.devries@usdoj.gov, usainn.ecfcivil@usdoj.gov), Paul Jeffrey Schlesinger
(pjeffslaw@aol.com), Pablo DeCastro (pdecastro@attorneydecastro.com,
ysierra@rascia-decastro.com), Sheldon B Nagelberg (sbnagelberglaw@att.net), Thomas W Vanes
(b.lynneadams@yahoo.com, tom.vanes@sbcglobal.net), Richard C Wolter
(b.lynneadams@yahoo.com), John T Theis (theislaw@aol.com), Adam Tavitas
(adtavitas@aol.com, b.lynneadams@yahoo.com), Dean R Lanter – AUSA (dean.lanter@usdoj.gov,
janet.eisenmann@usdoj.gov, usainn.ecfcivil@usdoj.gov), John E Martin – FCD
(john_martin@fd.org), Scott L King (dwilliams@scottkinggroup.com,
sking@scottkinggroup.com), Mark A Psimos (psimoslaw@airbaud.net), Matthew N Fech
(mnf@fech-law.com), Ihor Alexander Woloshansky (ihorlawyer@hotmail.com), James N Thiros
(jim@thiros.com, lynn@thiros.com), Robert L Rascia (rrascia@rascia-decastro.com,
ysierra@rascia-decastro.com), Arlington J Foley (arlingtonfoley@att.net), Roxanne Mendez
Johnson (attorneyrmj@gmail.com), Visvaldis P Kupsis (vpkupsis@hotmail.com), Stephen Edward
Scheele (pkd@gk4law.com, ses@gk4law.com), Jack Friedlander (jack@jackfriedlander.com,
office@jackfriedlander.com), Bruce R Hegyi – AUSA (bruce.hegyi@usdoj.gov), R Brian
Woodward (carolb@wbbklaw.com, rbwoodward@wbbklaw.com), John Maksimovich
(criminallaw@johnmaksimovich.com), David E Vandercoy (david.vandercoy@valpo.edu), Kurt R
Earnst (kre@braje-nelson.com), Magistrate Judge Andrew P Rodovich
(rodovich_chambers@innd.uscourts.gov, ruth_nagy@innd.uscourts.gov), Chief Judge Philip P
Simon (denise_woodside@innd.uscourts.gov, jacob_hamann@innd.uscourts.gov,
lauren_schwartz@innd.uscourts.gov, mira_serrill-robins@innd.uscourts.gov,
noel_collins@innd.uscourts.gov, philip_simon@innd.uscourts.gov)
--Non Case Participants: Matthew D Soliday (office@matthewsolidaylaw.com)
--No Notice Sent:

Message-Id:2717642@innd.uscourts.gov
Subject:Activity in Case 2:11-cr-00077-PPS-APR United States of America v. Briseno et al
Order Dismissing Counts
Content–Type: text/html
```

## U.S. District Court Northern District of Indiana [LIVE]

## USDC Northern Indiana

## Notice of Electronic Filing

The following transaction was entered on 3/2/2015 at 11:40 AM EST and filed on 2/24/2015

| | |
|---|---|
| **Case Name:** | United States of America v. Briseno et al |
| **Case Number:** | 2:11–cr–00077–PPS–APR |
| **Filer:** | |
| **Document Number:** | 1482(No document attached) |

**Docket Text:**
**ORDER DISMISSING COUNTS for Juan Briseno (1): Judgment of Acquital on Counts 25 and 26 of the 4th Superseding Indictment is GRANTED on 2/24/2015 at trial. Oral Order by Chief Judge Philip P. Simon in open court on 2/24/2015. (nac)**

**2:11–cr–00077–PPS–APR–1 Notice has been electronically mailed to:**

David E Vandercoy   david.vandercoy@valpo.edu

Arlington J Foley   arlingtonfoley@att.net

Mark A Psimos   psimoslaw@airbaud.net

Scott L King   sking@scottkinggroup.com, dwilliams@scottkinggroup.com

James N Thiros   jim@thiros.com, lynn@thiros.com

Thomas W Vanes   tom.vanes@sbcglobal.net, b.lynneadams@yahoo.com

Ihor Alexander Woloshansky   ihorlawyer@hotmail.com

R Brian Woodward   rbwoodward@wbbklaw.com, carolb@wbbklaw.com

John Maksimovich   criminallaw@johnmaksimovich.com

Visvaldis P Kupsis   vpkupsis@hotmail.com

Sheldon B Nagelberg   sbnagelberglaw@att.net

John E Martin – FCD   john_martin@fd.org

Adam Tavitas   Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander   jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele   ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst   kre@braje–nelson.com

Bryan M Truitt   bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis   theislaw@aol.com

Robert L Rascia   rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger   pjeffslaw@aol.com

Matthew N Fech   mnf@fech–law.com

Pablo DeCastro   pdecastro@attorneydecastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA   dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov,
janet.eisenmann@usdoj.gov

David J Nozick – AUSA   David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov,
janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson   attorneyrmj@gmail.com

Bruce R Hegyi – AUSA    bruce.hegyi@usdoj.gov

**2:11–cr–00077–PPS–APR–1 Notice has been delivered by U.S. Mail or other means to:**

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
### HAMMOND DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | NO. 2:11CR77 PPS |
| | ) | |
| JUAN BRISENO, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## ORDER

Defendant Juan Briseno has filed a 103-page "Motion in Limine to Prohibit Specified Types of Prosecutorial Misconduct in Penalty-Phase Summation." [DE 1476.] The motion enumerates 27 types of arguments Briseno urges me to prohibit as improper. I anticipate that the government will not disagree with some of these contentions, or at least has no intention of making arguments of some of the 27 types challenged by Briseno. I will direct the government to respond to the motion (no later than Wednesday, March 4), and in so doing plainly state which of the 27 challenged arguments it will not make.

ACCORDINGLY:

The government shall file, **no later than Wednesday, March 4**, a response to defendant Juan Briseno's "Motion in Limine to Prohibit Specified Types of Prosecutorial Misconduct in Penalty-Phase Summation" [DE 1476]. For each of Briseno's 27 specific

contentions, the response shall plainly indicate whether the government agrees or disagrees,

and whether the government intends to offer any argument of the challenged sort.

SO ORDERED.

ENTERED: March 2, 2015

/s/ Philip P. Simon
PHILIP P. SIMON, CHIEF JUDGE

2

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | |
| **Plaintiff** | |
| **vs** | |
| **JUAN BRISENO,** | |
| **Defendant** | **CAUSE NO:   2:11-CR-77** |

**MOTION TO PRECLUDE IMPROPER CROSS-EXAMINATION OF DEFENSE
EXPERTS AND REBUTTAL TESTIMONY FROM GOVERNMENT
WITNESSES ON FUTURE DANGEROUSNESS NON-STATUTORY
AGGRAVATOR, OR, IN THE ALTERNATIVE, FOR DISCOVERY**

Comes now Defendant Juan Briseño, by counsel John Maksimovich and Arlington Foley, and respectfully requests this Court enter an Order precluding certain improper anecdotal cross-examination of defendant's expert on the non-statutory aggravator future danger, and requests that government witnesses be precluded from offering such testimony in rebuttal. In the alternative, if the Court determines that some form of anecdotal cross-examination and rebuttal testimony is permissible, counsel requests this Court limit the incidents to the past five years and further order that any such alleged anecdotes and supporting documents be disclosed to defense counsel forthwith.

Mr. Briseño intends to call Mark Bezy to refute the government's non-statutory aggravator future danger. As part of the testimony he will testify, it will not be likely that Mr. Briseño will commit criminal acts of violence in the future that would constitute a continuing and

-1-

3075

serious threat to the lives and safety of others at the Bureau of Prisons ("BOP") facilities where the defendant is likely to be housed to serve his life sentence.

Mr. Bezy has testified in other capital cases and expressed similar opinions as to the individual defendants facing life without parole in the Bureau of Prisons. On numerous occasions, government attorneys have cross-examined Mr. Bezy and/or other similar defense experts about specific acts of violence allegedly committed in the Bureau of Prisons by persons who are in no way connected to the individual defendant being sentenced. Most of the alleged anecdotes previously used by government attorneys have occurred more than five years prior to the sentencing proceeding. In some cases government attorneys have asked defense future danger experts about such irrelevant episodes as:

- The 1997 murders of inmates at USP Lewisburg for which members of the Aryan Brotherhood were convicted.

- The murders of correctional officers at USP Marion occurring in 1981.

- Alleged prison connections of prisoners to the murder of Judge John Wood in Texas in 1979.

In the course of using such anecdotal information in the cross-examination of defense future danger experts, the government attorneys have never attempted to show any connection between the defendant facing sentencing and the BOP prisoner who alleged committed the acts of violence. In none of these cases has the government attempted to show, based on the background of the prisoners involved in these past incidents, that the incidents were in any way relevant or predictive as to whether the individual capital defendant on trial was likely to commit future acts of violence.

At the same time, many of the characterizations of BOP violence used by government attorneys have been inaccurate and misleading. For example, in the capital trial in *U.S. v. Azibo*

*Aquart*, Case No. 6 CRL 160(JBE) in the District of Connecticut, in the government's cross-examination of Mr. Bezy, the following exchange took place at pages 5398 (partial transcript attached as Exhibit A):

> Q:     And in fact there was another murder at Supermax in 2008, Gary Douglas Watland killed somebody.
>
> A:     That was at USP.  It wasn't the ADX.

In fact, Mr. Bezy was correct.  The homicide allegedly committed by Gary Watland, who has pleaded guilty in return for a life sentence in the District of Colorado, actually occurred at a USP across the road from the ADX Supermax.  However, the government attorney was attempting to undermine Mr. Bezy's testimony with inaccurate information by suggesting that the murder had occurred at the ADX Supermax, a facility where Mr. Bezy contended that the defendant could be safely housed.

In another anecdotal cross-examination of Mr. Bezy in the same case, the government once again used inaccurate information to attempt to undercut Mr. Bezy's testimony.  At page 5398, in describing a homicide that actually <u>did</u> occur at the ADX in 2005, the following exchange took place:

> Q :     Is that the 2005 murder of Manuel Torrez?
>
> A:     Correct.
>
> Q:     And he was beaten to death in the yard at Supermax, correct?
>
> A:     Correct.
>
> Q:     By Richard Santiago and Sylvestre Rivera?
>
> A:     Yes.
>
> Q:     And Santiago was at Supermax <u>because he killed a prison guard in Fresno, right</u>?
>
> A:     I'm not aware of what he did.

-3-

In fact, Richard Santiago, who is currently facing capital murder charges in the District of Colorado, has never killed a prison guard anywhere.

Furthermore, AUSA Bruce Hegyi himself attempted to cross-examined Mr. Bezy with unsubstantiated and inaccurate anecdotal information in *United States v. Candelario-Santana*, 09-427, DPR 2013 (partial transcript appended at Exhibit B). He began by asking Mr. Bezy if he was aware of an incident in a California state facility where a "spear" was fashioned out of a rolled up newspaper. When Mr. Bezy responded with a question regarding the facility, Mr. Hegyi change the topic to question Mr. Bezy about an incident at the BOP Supermax facility involving an incident with a rolled up newspaper. Having elicited from Mr. Bezy that he was aware of the incident but not its particulars, Mr. Hegyi persisted.

> Q.    Okay. And that person then when he was supposed to be cuffed up, and the guard came to the slot, and he actually jammed that spear through and tried to kill the officer, didn't he?
>
> A.    I am not aware of the whole situation. I've heard the situation. I'm not sure of the particulars.
>
> Q.    That's what you heard, right?
>
> A.    Not that he jammed it. He lunged at the staff with it.
>
> Q.    Right, trying to kill him?
>
> A.    Well, I don't remember that.
>
> Q.    And this took place not too long after the situation in California where the inmates there rolled up a similar spear out of newspaper, hardened it, and they threw it through not one but two prison guards?

Defense counsel objected, but the damage had been done. At side bar, Mr. Hegyi continued to claim that two prison guards had been killed in the incident he, and only he, described before the jury. A recess was called to allow him to ask Mr. Bezy if he was aware of the case. When the cross resumed, the topic was dropped, but of course the damage had been

-4-

done.  Mr. Bezy later learned that the incident occurred 30 years ago and that Mr. Hegyi's claim that two officers were killed was erroneous.[1]  And if Mr. Hegyi was accurate, the Supermax incident with the rolled newspaper is ancient history as well, but without having the underlying data, there was no way for defense counsel to know this.

Inaccurate and outdated anecdotal information has been used by government attorneys to cross-examine defense future danger experts in the following cases:

- *U.S. v. Timothy O'Reilly*, CR No. 05-80025 ,Eastern District of Michigan, Southern Division, the government attorney, while cross examining the defense expert on future danger, was caught overstating the rate of serious assault in BOP facilities by 400%.

- *U.S. v Darryl Lamont Johnson*, No. C 6998, Norther District of Illinois, Eastern Division, where the government presented a former assistant warden from ADX who falsely testified that defendants ,such as Mr. Johnson, could not be directly assigned to the ADX-Florence control unit based  on offenses committed in the community.

Because these exchanges have often occurred late in penalty phase proceedings, in many cases, it was only in post-conviction proceedings that the falsity or misleading nature of information used by government attorneys was discovered.  Therefore, based on what has become a pattern of government cross-examination of defense future danger experts, Mr. Briseño requests the Court enter an order:

1.      Prohibiting cross-examination of Mr. Briseño's future danger experts, and prohibiting the admission of such evidence through government witnesses, through the use of alleged anecdotal evidence of other BOP prisoners which is in no way connected to Mr. Briseño.

---

[1]Apparently, one officer was killed because the object hit him in the heart.  The incident was followed by the adoption of protective vests as part of every officer's attire in that facility.

3079

2.    Alternatively, in the event the Court determines such cross-examination through the use of anecdotes is permissible, and that such evidence is admissible in the government's rebuttal case, Mr. Briseño requests this Court limit such incidents to those occurring after March 1, 2010.

3.    Additionally, in the event the Court determines that such anecdotal cross-examination is permissible and that the government may introduce anecdotal evidence through its experts, Mr. Briseño requests this Court order the government to disclose any alleged incidents of violence and any supporting documents at least three (3) days prior to the witness's testimony so that counsel may adequately investigate the accuracy and relevance of the incident.

**I.    Admitting Information Regarding Specific Acts of Violence Committed by Other Prisoners and the Details of the Incidents Would Violate Mr. Briseño's Constitutional Rights and 18 U.S.C. §3593(c).**

Admission of information regarding specific acts of violence by other prisoners would violate Juan Briseño's constitutional rights under the Eighth Amendment's Cruel and Unusual Punishment Clause and the Fifth Amendment's Due Process Clause to an individualized sentencing proceeding. Additionally, such information should be excluded as irrelevant and likely to cause unfair prejudice, confuse the issues and mislead the jury under 18 U.S.C. §3593(c).

The threshold determination for admission of information at a penalty phase of an FDPA trial is that the information is "relevant to sentencing." *United States v. Lujan*, 603 F.3d 850, 854 (10th Cir. 2010); 18 U.S.C. §3593(c). Evidence is relevant if it "has any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401; *see also Lujan*, 603 F.3d at 854 ("Although §3593(c) fails to define 'relevant,' we have interpreted it as 'the same standard

-6-

used throughout the federal courts under Federal Rule of Evidence 401.'"). The purpose of the "selection phase" of the sentencing hearing is for an individualized determination of all relevant evidence once the jury has determined that the defendant is eligible for the death penalty. *See Tuilaepa v. California*, 512 U.S. 967, 972 (1994). This includes determining a defendant's likelihood of future dangerousness. *See Jurek v. Texas*, 428 U.S. 262, 275 (1976).

Section 3593(c) further provides in part that "information [at the penalty phase] may be excluded if its probative value is outweighed by the danger of creating unfair prejudice, confusing the issues, or misleading the jury." Section 3593(c) grants this Court greater discretion to exclude unfairly prejudicial or confusing information than the analogous Federal Rules of Evidence provide during the trial phase.

"[T]he evidentiary standard found in § 3593(c) of the FDPA upholds the constitutional required balance between the needs for heightened reliability and individualized sentencing by enabling the judge, as gatekeeper, to bar unreliable or unfair sentencing information." *United States v. Taylor*, 302 F.Supp.2d 901, 905 (N.D. Ind. 2003) (citing 18 U.S.C. §3593(c). The Second Circuit has noted:

the requirement of a fundamentally fair trial

> is certainly met [by §3593(c) ], given that the balancing test set forth in the FDPA is, in fact, more stringent than its counterpart in the [Federal Rules of Evidence], which allows the exclusion of relevant evidence "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." Fed.R.Evid. 403.... Thus, the presumption of admissibility of relevant evidence is actually narrower under the FDPA than under the FRE.

*United States v. Pepin*, 514 F.3d 193, 204 (2d Cir. 2008) (quoting *United States v. Fell*, 360 F.3d 135, 145 (2d Cir. 2004)). The Court further pointed out:

> [U]nder the FDPA [s]tandard, judges continue their role as evidentiary gatekeepers and, pursuant to the balancing test set forth in §3593(c), retain the discretion to exclude any type of unreliable or prejudicial evidence that might render a trial fundamentally unfair.

*Id.* (quoting *Fell*, *supra*).  As held by *United States v. Johnson*, 239 F.Supp.2d 924, 946 (N.D. Iowa 2003), the FDPA "expressly supplants only the rules of evidence, not constitutional standards .... [The trial court] retains the authority under the statute to impose upon the parties any standards of admissibility or fairness dictated by the Fifth and Sixth Amendments."

"'Unfair prejudice' refers to an 'undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one' or 'evidence designed to elicit a response from the jurors that is not justified by the evidence.'" *United States v. Ellis*, 147 F.3d 1131, 1135 (9th Cir. 1998) (quoting 2 Jack B. Weinstein & Margaret A. Berger, *Weinstein's Federal Evidence*, § 403.04[1][b]); *accord Old Chief v. United States*, 519 U.S. 172, 180 (1997); *see also Lujan*, 603 F.3d at 858 (stating that "§ 3593(c) provides a district court greater discretion to exclude evidence than [Federal Rule of Evidence] 403 does."); *United States v. Taylor*, 635 F.Supp.2d 1236, 1242 (D.N.M. 2009) (noting that, "...the FDPA provides even greater protection against prejudicial information than the [FRE], because the FDPA permits a judge to exclude information whose probative value is outweighed by the danger of unfair prejudice, rather than the "substantially outweighed" standard set forth in Rule 403.").

-8-

**II.**     **Evidence Regarding Unrelated Incidents Is Not Relevant to a Jury's Determination of Whether Mr. Briseño is Likely to Commit Future Acts of Violence, and its Admission would be Unfairly Prejudicial, Mislead the Jury and Confuse the Issues.**

The issue that the jury must decide is whether *Mr. Briseño* is likely to commit dangerous violent acts in the context of serving a life sentence without possibility of release in the Bureau of Prisons. Specific actions by other inmates are not relevant to the jury's determination of this issue. In *United States v. Sampson*, the court "permitted only general testimony about the ability of the BOP to control inmates, including gross statistics regarding assaults and other misconduct, but did not permit testimony regarding specific other prisoners." 335 F.Supp.2d 166, 227 (D. Mass. 2004). It is generally recognized that acts by persons unrelated to the defendant and the charged offenses are not probative of any issue in the case. *United States v. Al-Moayad*, 545 F.3d 139 (2d Cir. 2008), the Second Circuit reversed the defendants' convictions for providing material support to terrorist organizations. Among other errors, the Court criticized the admission of lengthy testimony regarding a Tel Aviv bus bombing that the defendants were not charged with being involved. *Id.* at 159-61. Although the Court's main discussion focused on the substantial unfairness of the testimony, it also noted that the witness's "highly emotionally charged account of the bombing was also not 'legally and morally relevant to the conduct constituting the offenses' with which the defendants were charged." *Id.* at 161 n.18 (*quoting United States v. Velazquez*, 246 F.3d 204, 211 (2d Cir. 2001)); *see also United States v. Nelson-Rodriguez*, 319 F.3d 12, 35 (1st Cir. 2003) (trial court properly excluded impeachment evidence that government witness-informant had been involved in murders unrelated to the drug conspiracy with which defendants were charged). Similarly, testimony regarding what inmates

-9-

with no connection with Mr. Briseño may have done in the Bureau of Prisons is not legally and morally relevant to the issue of whether Mr. Briseño might be a future danger.

Because any information regarding specific incidents of other inmates' violent conduct in prison has no probative value in connection with Mr. Briseño's alleged propensity to violence, its admission would be unfairly prejudicial. Admitting evidence of the alleged wide-ranging violent activities of BOP inmates is akin to the improper "wide-ranging inquiry into the generic criminality and violent dispositions of gangs and their members." *United States v. Street*, 548 F.3d 618, 632 (8th Cir. 2008). In *Street*, the Eighth Circuit reversed the defendant's conviction for aiding and abetting murder in furtherance of drug trafficking based in part on the improper admission of testimony about violent propensities of gangs with whom the defendant had no connection, concluding that the testimony "about outlaw motorcycle gangs and El Forasteros was excessive, unduly prejudicial, and in great part completely irrelevant to the charged offenses." *Id.* at 633.

Information about BOP's experiences with other prisoners would also be misleading. As the *Sampson* court stated:

> Each person in the custody of the BOP is unique, and the court
> found that the probative value of information about the BOP's
> ability or inability to control a particular other prisoner was
> outweighed by the danger of misleading the jury into thinking that
> the BOP would have a similar experience with [defendant].

*Id.* The same danger is present here, if the government is allowed to present evidence regarding BOP experience with other inmates. The jury might be misled into believing that BOP might have a similar experience with Mr. Briseño.

In addition, the information would be unfairly prejudicial. "'Unfair prejudice' refers to an 'undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one' or 'evidence designed to elicit a response from the jurors that is not justified by the evidence.'" *Ellis*, 147 F.3d at 1135. The jury might be led to make a decision regarding Mr. Briseño's potential future dangerousness based not on his own actions but on the actions of unrelated persons. *See Al-Moayad, supra; Street, supra.* The jurors might be led to determine that Mr. Briseño is likely to be a danger in prison based not on his own conduct but on the potential institutional failures of the BOP. "[I]nvoking a jury's general fear of crime to encourage the application of the death penalty in a particular case is unfairly inflammatory." *Weaver v. Bowersox*, 438 F.3d 832, 841 (8th Cir. 2006), *cert. dismissed sub nom.*, *Roper v. Weaver*, 550 U.S. 598 (2007); *see also Bates v. Bell*, 402 F.3d 635, 642 (6th Cir. 2005) (improper to argue that a death sentence was warranted to protect other inmates and guards).

**III.** **If the Court Allows Cross-Examination Regarding Specific Incidents Regarding Unrelated Inmates, the Court Must Order the Government to Disclose all Incidents on Which It intends to Rely, Including Complete Histories of the Inmates and Incidents.**

If the Court intends to allow cross-examination concerning specific prior incidents in the Bureau of Prisons, the defense asks the Court to immediately order the government to fully disclose all information concerning incidents on which it intends to rely, including the names of those involved, information concerning the incidents, and BOP's response to the incidents. Such information is readily available to the government. *See United States v. Burnside*, 824 F.Supp. 1215, 1254 (N.D. Ill. 1993). It is anticipated that the government may present rebuttal evidence regarding other incidents involving other prisoners in BOP custody. If the defense does not have

-11-

the requested information, it will be unable to properly rebut the government's case regarding future dangerousness and unable to subject the government's rebuttal testimony to meaningful adversarial testing.

The importance of accurate information and discovery on these issues is demonstrated by *United States v. Johnson,* No. 02 C 6998 (N.D. Ill.), in which Judge Hibbler granted habeas relief and reversed the petitioner's sentence of death based on counsel's failure to investigate the law and facts necessary to rebut the government's rebuttal evidence.  The government, in support of its future dangerousness aggravator, called as a witness a former BOP warden who presented misleading and incomplete testimony regarding BOP's placement policies "that may have left the jury with the mistaken impression that neither the BOP nor the Court had the authority to impose certain restrictions on an inmate immediately upon sentencing." *United States v. Johnson*, Memorandum Opinion and Order, Exhibit C at 5.

The Court agreed with the petitioner's claim that he "was prejudiced by his trial counsel's failure to investigate the law and facts necessary to subject the Government's case on future dangerousness to meaningful adversarial testing." *Id.* at 4.  As Judge Hibbler cogently pointed out, the future dangerousness aggravator and the government's ability to protect against a defendant's future dangerousness "is an especially important factor in death penalty cases generally[.]" *Id.* at 5.  Judge Hibbler noted that the government recognized the importance of the aggravator, and that empirical research supports the conclusion that future dangerousness is a highly significant issue for juries deciding whether to sentence a defendant to death. *Id.* at 6 (citing studies).  He also referred to a similar case in which the jurors had received correct

-12-

information about the ability of the BOP to impose restrictive conditions and had not sentenced the defendant to death despite finding that he would be a future danger. *Id.* at 7.

## CONCLUSION

For the foregoing reasons, Defendant Juan Briseño requests the Court to either issue an order precluding the government from cross-examining defense experts regarding specific incidents of violence by other BOP inmates and/or eliciting such testimony from government witnesses; or, in the alternative, order immediate disclosure of any such incidents on which the government intends to rely, including complete information regarding the inmates involved, their histories, and any response by BOP.

**Respectfully submitted:**

/s/ *Arlington Foley*

Arlington Foley /#6905-45
Attorney For Defendant
1942 North Main Street
Crown Point, IN 46307
PH: 219.661.1200
FX: 219.661.1205

/s/ *John Maksimovich*

John Maksimovich /#9950-45
Attorney For Defendant
1946 North Main Street
Crown Point, IN 46307
PH: 219.663.1900
FX: 219.663.1908

-13-

3087

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | |
| **Plaintiff** | |
| **vs** | |
| **JUAN BRISENO,** | |
| **Defendant** | **CAUSE NO: 2:11-CR-77** |

**CERTIFICATE OF SERVICE**

I hereby certify that on March 2, 2015, I electronically filed:

*Motion to Preclude Improper Cross-examination of Defense Experts and Rebuttal Testimony from Government Witnesses on Future Dangerousness Non-statutory Aggravator, Or, in the Alternative, for Discovery*

with the Clerk of the Court using the CM/ECF system, which sent notification of such filing to the following:

| David J. Nozick | Bruce Hegyi |
|---|---|
| Assistant United States Attorney | Assistant United States Attorney |

and I hereby certify that I have mailed by United States Postal Service, the document to the following non-CM/ECF participants:

N/A

By: /s/ *John Maksimovich*

John Maksimovich /#9950-45
Attorney For Defendant
1946 North Main Street
Crown Point, IN 46307
PH: 219.663.1900
FX: 219.663.1908
E-Mail: criminallaw@johnmaksimovich.com

-14-

3088

UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

\* \* \* \* \* \* \* \* \* \* \*   \*          \*
                                        \*
UNITED STATES OF AMERICA,       \*  Case No 6cr160(JBA)
                                        \*
            Plaintiff,          \*
                                        \*
        vs.                     \*
                                        \*
AZIBO AQUART                    \*  June 6, 2011
                                        \*
            Defendant.          \*
                                        \*
\* \* \* \* \* \* \* \* \* \* \* \*   \*

TRIAL TRANSCRIPT

VOLUME XXVII

BEFORE:  THE HONORABLE JANET BOND ARTERTON U.S.D.J.,
                                            and jury

Appearances:
FOR THE GOVERNMENT:   ALINA REYNOLDS, ESQ
                      TRACY DAYTON, ESQ.
                      PETER MARKLE, ESQ.
                      JACABED RODRIGUEZ-COSS
                      United States Attorney's Office
                      915 Lafayette Blvd
                      Bridgeport, CT 06604


FOR THE DEFENDANT     MICHAEL SHEEHAN, ESQ
AZIBO AQUART:         Sheehan & Reeve
                      139 Orange Street
                      New Haven CT 06510

                      JUSTIN SMITH, ESQ.
                      383 Orange Street
                      New Haven, CT 06511



Court Reporter:       Sharon Montini, RMR

Proceedings recorded by mechanical stenography,
transcript produced by computer

**Exhibit A**

3089

that correct?

A. Somewhere around there, yes.

Q. And he was in fact paroled.

A. Yes.

MS. RODRIGUEZ-COSS: We have nothing further, your Honor.

THE COURT: All right, anything further?

MR. SMITH: Nothing further, your Honor. Thank you.

THE COURT: Thank you, Ms. McCoy, you are excused. You may step down.

Will you please call your next witness.

MR. SHEEHAN: Call Mark Bezy, your Honor.

THE COURT: All right, Mr. Bezy, would you come over to the witness stand, please, and please stand and raise your right hand.

M A R K   B E Z Y

Having first affirmed, was examined and testified as follows:

THE WITNESS: Mark Bezy, B-e-z-y. I live in San Tan Valley, Arizona.

THE COURT: You may proceed.

DIRECT EXAMINATION

BY MR. SHEEHAN:

Q.    Good afternoon, Mr. Bezy.

A.    Good afternoon.

Q.    Can you tell us, sir, what you are doing for a living right now?

A.    I own a correctional consulting company.

Q.    And what do you do in a correctional consulting company?  What kind of services do you provide?

A.    I provide services to attorneys.  I've worked with some federal defender's offices regarding manners of -- matters of corrections and prison environments.

Q.    And is there a name for that company or is it just --

A.    It's Mark A. Bezy & Associates.

Q.    And are there other people that work with you in that company?

A.    I do get some advice from other people at times, yes.

Q.    And prior to working in that -- how long have you been doing that kind of living -- that kind of work as a consultant?

A.    From about 2008 to today.

Q.    Okay.  And prior to going into consulting, did you have another business that you were involved

**Exhibit A**

with?

A.   From 2006 to 2008, I was an independent contractor for a company out of Texas called Creative Corrections.  They had the contract for the Immigrations and Custom Enforcement Agency and we were hired to go around and conduct their annual retention reviews of facilities that held ICE detainees.  We would spend three to four days there and compile a written report for ICE.

Q.   And where were those reports submitted to?  When you say to ICE, what would happen in those reports?

A.   They were sent to the company in Texas and then they would forward them up to Washington D.C., to the ICE office up there.  And then it would come back to the district that had the facility we audited them in.

THE COURT:  And ICE means what?

THE WITNESS:  Immigration Customs Enforcement.

THE COURT:  Thank you.

Q.   That used to be the immigration department, basically?

A.   Right, used to be immigration services, INS or -- yeah, INS.

Q.   Immigration and Naturalization Services.

A.   Naturalization services.

Q.   And prior to working for that Creative Corrections, were you also involved in correctional activity?  Did you have another job?

A.   Prior to, yes.  I retired in 2006 from the federal Bureau of Prisons.

Q.   Okay.  And in that little gap in between your retirement in 2006 and then going to Creative Consultants, what did you do?

A.   I retired in 2006 and I went to work -- I went to work for the GEO Group out of Boca Raton, Florida.  It's a private prison company.  I ran a private prison in Florence, Arizona.  Our client was the Arizona Department of Corrections.

Q.   And how many inmates were in that facility?

A.   I ran a thousand-bed sex offender unit down there.

Q.   How many staff would have been generally -- how many staff were involved in that facility?

A.   With the programming and security staff we probably had a couple hundred.

Q.   Now, you mentioned that prior to that you were involved -- you were an employee of the federal Bureau of Prisons, correct?

A.    Correct.

Q.    I'm going to kind of flip this around and instead of going from recent, I'm going to go back and ask you when it was that you started working for the Department of Corrections?

A.    I started 1978 as a correctional officer at the federal -- a correctional institution in Oxford, Wisconsin.

Q.    What is your educational background?

A.    I have a Bachelor of Science from the University of Nebraska in criminal justice.

Q.    And did you have your Bachelor's degree when you started with the Department of Corrections?

A.    Yes.

Q.    And what was your -- what were your first responsibilities as a correctional officer?

A.    Basically to operate the inmate housing unit, supervise the inmate details and provide security and correctional coverage for the institution.

Q.    And this you mentioned was in Oxford, Wisconsin?

A.    Correct.

Q.    What level of facility was that?

A.    Oxford at that time was a medium security

facility.

Q. And how long is it that you stayed at Oxford; if you can recall?

A. I believe it was approximately five years.

Q. And after Oxford, what was your next assignment within the federal correctional center?

A. I was promoted to GS-9 lieutenant at the federal prison camp in Duluth, Minnesota. I activated that facility.

Q. And let me ask you, what's the difference between a camp and a medium security facility?

A. A camp has no perimeter security. The inmates are usually -- well, they're all low to community custody inmates, they don't require a secure perimeter.

Q. So is there even like a picket fence around it?

A. No.

Q. And how about a medium level facility, what is -- what distinguishes that from a camp?

A. Everything above a camp -- at a minimum security we had a double perimeter fence, chain linked with razor wire, man barrier wire in between, and outside we ran armed mobile patrols 24 hours a day.

**Exhibit A**

Q.    What's the man wire?

A.    Man barrier wire.

Q.    What is that?

A.    It's a fancy name for barbed wire, concertina wire.  It's designed differently.  It's designed to -- if you get into it, it actually fights you.  I mean, it's there as a deterrent to keep people in a prison.

Q.    Okay.  And, now, you set up the camp you mentioned in Minnesota, was that your next assignment?

A.    Correct.

Q.    And then after that did you go to another institution within the Bureau of Prisons?

A.    Yes.  I was transferred to the federal correctional institution in Phoenix, Arizona as a GS-11 lieutenant for activation of that facility.

Q.    And what's entailed?  What's meant by activation of the facility?  What are you doing when you are activating a facility?

A.    It was a brand new facility.  We went in and we had to write the policies and procedures for it, we had to hire the staff, we had to get the institution ready for receiving medium security inmates.

Q. And how long -- and what was -- that's called an FCI?

A. Yes. FCI.

Q. What level of security would the FCI be?

A. Phoenix was a medium.

Q. Okay. So you started at a medium, then went to the camp and then to a medium facility --

A. Correct.

Q. -- is that sort of the trajectory?

And after working with the Bureau of Prisons in Arizona, where did you go next?

A. I was transferred then to western regional office in Belmont, California. I was the assistant correctional service administrator there. My job duties there were involved with overseeing the inmate disciplinary transfer for disciplinary purposes for inmates, close supervision transfers, conducting compliance reviews of the facilities within the region. And I was also the agency representative on the California prison gang task force.

Q. But you were in Belmont, but you were working with people in California; is that correct?

A. No, Beaumont was after I retired.

Q. I'm sorry.

**Exhibit A**

3097

A.    Belmont, California.  Belmont.  Right.

Q.    And how long were you at Belmont?

A.    Approximately 18 months to two years.

Q.    Is it -- for people in a management track, is it common that they move around within facilities in the Bureau of Prisons?

A.    Yes.

Q.    After Belmont, where did you go next?

A.    I was moved, I was transferred to the federal correctional institution in Raybrook, New York, it was a medium security male institution, as captain.

Q.    Okay.  So you had been lieutenant, now you are jumped up to captain?

A.    Correct.

Q.    And at Raybrook, what were your general responsibilities there?

A.    I was responsible for the daily operation of the correctional services department overseeing the lieutenants and the correctional staff and ensuring that the institution was safe and secure.

Q.    And how many inmates were at Raybrook when you were there, roughly; if you can recall?

A.    I believe about 900.

Q.    And how many staff would you have been

supervising at Raybrook?

A.    Probably around 150.

Q.    And is it -- let me ask you this:  You had your Bachelor's degree when you went to the Bureau of Prisons.  Was that pretty much a job requirement at that time?

A.    It wasn't a requirement but it did help having a degree, yes.

Q.    And do most of the federal correctional officers have a Bachelor's degree or more?

A.    Today, yes.

Q.    And what is the, I guess for want of a better word -- let me ask you this:  What is the mission statement for the federal Bureau of Prisons?  What's your responsibility?

A.    It's to safely house and incarcerate offenders in a secure facility.

Q.    So now we've got you up to Raybrook.  And from Raybrook, where did you go next within the Bureau of Prisons?

A.    I was promoted to captain at the Federal Medical Center in Lexington, Kentucky.

Q.    And what's a medical center?

A.    It -- when I first went there it held females, female offenders.  Then we went to a coed

population for a short period of time, and then it was moved to back to a male population.

But it was to provide medical treatment, hospitalization for sick offenders.

Q.   And after Lexington, where did you go next?

A.   Then I moved to the United States Penitentiary in Marion, Illinois as captain.

Q.   And how long were you in Marion?

A.   Approximately three and a half years.

Q.   That's a different level facility than either the medium or the camp; is it not?

A.   Correct.

Q.   What's the difference between U.S. penitentiary and a medium level security?  I guess those are called FCIs, are they?

A.   Correct.

Q.   So, let's call it a USP, United States penitentiary, versus an FCI.  What's the difference?

A.    At a USP there is more physical security, there is a higher staff to inmate ratio, and there is just more -- there is more control and it's more of a restrictive environment than at an FCI.

Q.   When you say there is more staff to inmate, what is the -- at least when you went to Marion, what was the ratio of staff to inmates?

**Exhibit A**

3100

A.   I had -- I had responsibility for approximately just under 400 inmates and I had 250 staff.

Q.   And where was -- so you said you were there for three years at Marion?

A.   Correct.

Q.   And at that time where was Marion in the sort of hierarchy, as it were, of penitentiaries? Was there anything unique about Marion at that time?

A.   Marion was the most secure facility in the Bureau of Prisons.  It had three functions:  It housed the control unit.  It had a general population, which is -- which was totally different from a regular population.  It was very restrictive. Inmates were allowed out of their cell for approximately 12 hours a week.  When they were out of the unit they were in handcuffs.  All the staff carried batons, and the staff had constant hands on of the restraints when an inmate was out of the unit.

Q.   Now, within the Bureau of Prisons, the levels of facility, are there more than one penitentiary?

A.   Yes, there is approximately 16 penitentiaries today.

Q.   Okay.  And is the level of security in the United States penitentiaries, are they generally consistent with each other?

A.   Yes.

Q.   And do they have essentially the same policies and procedures within the penitentiaries?

A.   They're all governed by national policies and procedures, but the warden has the right to implement local procedures, some local procedures, too.

Q.   And while you were at Marion, were you involved with setting up another facility within the Bureau of Prisons?

A.   At that time they had made the decision to move the mission of Marion to the administrative maximum facility they had just built in Florence, Colorado.  So in '95 we moved the general population and the control unit from Marion, Illinois over to the ADX.

Q.   Okay.  And is ADX the kind of pinnacle control unit within the Bureau of Prisons now?

A.   Yes, it's the only facility of that type in the Bureau.

Q.   And that's in Florence, Colorado, is it not?

**Exhibit A**

A.    Correct.

Q.    And between the ADX and the U.S. penitentiaries, are there other facilities within the Bureau of Prisons that are -- sort of fit in that more restrictive area?

A.    Yes, currently there is three what they call SMU, special management units.  Lewisburg, Pennsylvania was converted from a regular open population penitentiary to an SMU.  There is a unit in Talladega, Alabama, and Oakdale, Louisiana, too.

Q.    And what's the difference between an SMU and a United States penitentiary as far as the level of control over inmates?

A.    At an SMU inmates are confined in their cells.  There is single recreation or small group recreation.  They're there for anywhere from 18 to 24 months.  They have to complete a phase program before they're released back to population.  And there is no guarantee they'll complete the phases.

Q.    Okay.  And so we've got these SMUs.  And is there another level of facility somewhere between the SMUs and the ADX?

A.    There is one what they call CMU, communication management unit in Terre Haute, Indiana.

**Exhibit A**

Q.   What's the difference between a CMU and, say, a United States penitentiary?

A.   The CMU inmates are placed in there for monitoring, very strict monitoring of their communications, whether it's verbal, written, any contact they have with anyone outside the prison.

Q.   Okay.  Now, after Marion, where did you go next within the Bureau of Prisons?

A.   I was promoted then to the correctional services administrator in the north central regional office in Kansas City, Missouri.

Q.   And what area of the country does that north -- is it the north central?

A.   Correct.

Q.   What area, what states does the north central office control?

A.   We controlled Colorado, Illinois, Wisconsin, Minnesota, Missouri.  Basically the north central portion of the United States.

Q.   And how many institutions are there, or were there at that time in that region?

A.   I believe at that time there was 16 to 18.

Q.   And what level of facilities were there within the north central region in the Bureau of Prisons?

A.   We had the -- we had all securities from the ADX in Colorado to prison camps.  We had high rises in Chicago, metropolitan correctional centers that housed -- they're administrative level where we can house all security levels of individuals.

Q.   And what were your general responsibilities as a correctional services administrator?

A.   I was the resource person for all the institutions in that region regarding security and correctional practices.  I conducted, again, audits and reviews of the facility operations.  I was involved with the -- myself and my staff oversaw the disciplinary transfer process of the inmates.  I was involved in the initial placement of inmates in the ADX, the control unit, and also it would go on into special reports for the regional director or Washington as needed, do after-action reports.

Q.   And in that context as a correctional service administrator, did you meet with your other colleagues in other -- who were at similar levels in other regions of the country?

A.   Yes.

Q.   And did you become aware of the facilities that those individuals were supervising?

A.   Yes.

**Exhibit A**

Q.    And how close a contact as a correctional service administrator would you have with, say, well, like the northeast region?  Would that be a regular contact?  Or how often would you be talking to those people?

A.    You'd probably talk to them on a weekly basis, if not more, because if I had a difficult problem in my region that I needed to place in his region, I would have to contact him and see if he would accept the case.  Or he'd contact me to see if I would accept cases out of his region.

Q.    And when you say a difficult contact -- I think you used the word a difficult contact or something.

A.    A management issue.

Q.    Okay.  And would that include moving inmates?

A.    It would -- we would approve them, I would accept them into the north central region into a facility.  They would accept them into the northeast.  But the movement was coordinated by the -- by a different group within the BOP and the marshals service.

Q.    The physical movement?

A.    The physical movement, correct.

**Exhibit A**

Q. That's where you'd go to Oklahoma or something to get to next door?

A. Yeah, correct.

Q. Okay. And after serving as a correctional -- how long did you do that, the correctional service administrator?

A. I believe it was about approximately three and a half years.

Q. And after that did you get another position within the federal Bureau of Prisons?

A. I was promoted to the associate warden at the United States penitentiary in Leavenworth, Kansas.

Q. So, would this be the second United States penitentiary that you were directly involved with, one in Marion and now at Leavenworth?

A. Correct.

Q. But in the course of your service as a correctional service administrator you were well familiar with other policies and procedures in other United States penitentiaries?

A. Correct.

Q. And how long did you serve as an associate warden at Leavenworth?

A. I believe it was three, three and a half

years.

Q.    And what are the job responsibilities of an associate warden?  What do you do there?

A.    When I first went there I was associate warden of custody where I oversaw, I was responsible for the correctional services department, and ISM, and I believe one other small department.  We housed 1200 high security inmates.  We developed security operations and programs for the inmates.

Q.    Okay.  And after -- so you are an associate warden at Leavenworth.  How many staff did you supervise?  I'm sorry, if you've already said it.

A.    At Leavenworth it was probably I think 200 and -- I think it went to high it was 230 plus and at the low maybe 220.

Q.    And how many adults were at the high security facility at Leavenworth when you were there?

A.    We averaged approximately 1200.

Q.    And after Leavenworth, where you were an associate warden, did you get another promotion within the Bureau of Prisons?

A.    I was promoted to the warden at the federal correctional institution in Elkton, Ohio.

Q.    And how long did you remain as a warden at

**Exhibit A**

3108

that facility?

A.   I believe it was two years.

Q.   Okay.  So you called it federal correctional institution, so that's basically -- now you are back to a medium level facility?

A.   At that time Elkton was a low security.  It had a double secure perimeter and it also it had what we call a satellite low.  It was a hybrid institution, kind of between a camp and a low.  It was a camp that somebody had put a single fence around and made it a secure facility.  It was something the Bureau had done at a couple locations.

Q.   And how long did you stay in Elkton?

A.   Approximately two years.

Q.   And after Elkton did you get another promotion within the Bureau of Prisons?

A.   I was promoted to the warden at the United States Penitentiary in Terre Haute, Indiana.

Q.   And what is the -- how many inmates are at Terre Haute in the United States penitentiary there?

A.   I was there -- when I arrived we were in the process of constructing and activating a new penitentiary there, too.  So initially we had approximately 900 inmates in the old original penitentiary, which was built in the 1930s.  We

brought the new penitentiary online and we moved that population from the old penitentiary into the new penitentiary. And at the same time we backfilled the old penitentiary with medium security inmates. So -- and I had a federal prison camp there. When it was all over, I had approximately 3500 inmates.

Q. And is that also where the federal death row is?

A. Correct.

Q. And how many inmates are there on the federal death row?

A. There --

Q. Or were at that time?

A. At that time there was approximately 35 to 37.

Q. And how large a staff was it that you were supervising as the warden in Terre Haute?

A. I had a staffing complement of 650 staff. I was responsible for the three facilities. So I had -- I oversaw all three facilities.

MR. SHEEHAN: Your Honor, at this time I would offer Mr. Bezy as an expert in the Bureau of Prisons practices, policies and procedure.

MS. DAYTON: No objection.

**Exhibit A**

3110

THE COURT:  Then Mr. Bezy will be so qualified and the jury will remember the earlier instruction of what that means.  All right.

Q.  And how long was it, sir, that you remained at Terre Haute?

A.  Approximately two years.

Q.  Now, in this case at my request, sir, have you reviewed the prison records for the defendant, Mr. Aquart?

A.  Yes.

Q.  Before today you never saw Mr. Aquart, did you?

A.  No.

Q.  Before you walked in this courtroom.

A.  No, I had to look for him.

Q.  And that included his records from the Connecticut Department of Corrections and the Wyatt Detention Facility in Rhode Island?

A.  Correct.

Q.  And in addition, sir, you are aware, are you not, you've been informed that Mr. Aquart has been found guilty of violations of federal law as regards his role in the murders of three people who were beaten to death in the context of drug cases?

A.  Yes.

Q.   Actually, before we go on further on the specifics as to Mr. Aquart, can you tell us, sir, what -- and tell the members of the jury, what is the process by which the Bureau of Prisons gets an inmate?

A.   There is a guilty finding in a court, then there is a -- the court, the judgment and commitment paperwork is sent to the Bureau of Prisons.  It's a little bit different today, it changed right after I retired in '06.  But when I was in, it would go -- each region had its own regional designator.  The paperwork would come to a regional designator.  They would determine based upon review of the material, past criminal history, the instant offense, they would determine what security level the individual met or required, and then they would assign him to a facility.

Q.   And is there a role in that process for a recommendation from the court?

A.   Yes.

Q.   And is there a role in that process for a recommendation from the United States attorney's office?

A.   Yes.

Q.   And I take it ultimately it's up to --

well, actually, the Bureau of Prisons itself is within the Department of Justice, is it not?

A. We are a component of the Department of Justice.

Q. And the Department of Justice is headed by the Attorney General of the United States?

A. Yes.

Q. Now, are there a set of general procedures that the Bureau of Prisons follows in determining what level of facility an inmate should be sentenced to?

A. Yes. The Bureau uses a classification process where, again, like I said, they'll look at the past criminal record, the conviction of the instant offense, and any other data that's provided, the presentence report, and they'll make a determination on what security needs the individual requires, and then they'll place him at the appropriate facility.

Q. And let's say somebody, for example, had no prior criminal record and was convicted of a nonviolent offense, where would such a -- and was sentenced to, say, a sentence of less than three years. Where would that individual likely be housed within the Bureau of Prisons?

**Exhibit A**

A.   More than likely, based upon if it was no violence in the background, they would probably go to a federal prison camp.

Q.   And let's say that somebody was sentenced to a -- was convicted of a crime of violence, but had a sentence of approximately -- had no prior criminal record, had a sentence of approximately five to 10 years, where would that person likely be sentenced within the -- where would that person likely be designated within the Bureau of Prisons?

A.   At a minimum -- it would be at a low secure facility, and it may even be at a medium security facility based upon the violence.

Q.   And let's assume that an individual is convicted of a federal offense in Connecticut where would that individual -- well, let me ask you two questions:  First of all, where would that individual likely be sentenced?  Let's say it is a medium -- it would be a medium facility, an FCI. Where would that person likely be designated to?

A.   The Bureau likes to try to keep an inmate within a 500 mile radius of their home, but based upon the population pressures today that is just -- its almost impossible.  So, it comes down to wherever the bed space is.  So it could be one of

**Exhibit A**

anywhere around the country at that point.

Q. And are you aware of any limitations on where the Bureau of Prisons can send an inmate to complete his or her sentence?

A. No, the Bureau has that discretion to assign inmates to the institutions.

Q. And in assigning individuals to institutions, in addition to the circumstances of their particular crime, does the Bureau of Prisons take into account any other factors?

A. Can you repeat that?

Q. Yeah, maybe it's -- well, let me ask you this: Do they try to separate individuals? Are there separation procedures generally in effect or considered in making classification determinations?

A. If there -- if they're made official separatees, that's a process we will go by based upon written documentation of cooperation, something that happened in the past, where those two inmates would never be in the same facility at the same time.

Q. Okay. And that kind of cooperation, that kind of documentation is typically provided, is it not, by the U.S. attorney's office?

A. Yes, it can come from them.

Q.   And it can also come from intelligence garnered within the Bureau of Prisons itself?

A.   Correct.

Q.   And alternatively, sometimes the Court may have some impact on that --

A.   Yes.

Q.   -- in terms of a recommendation.

But ultimately, that's up to the Bureau of Prisons.

A.   Yes.

Q.   And how many inmates are there at the present time who are actually serving time within the Bureau of Prison facilities, federal Bureau of Prison facilities?

A.   The Bureau has the responsibility for 216,000 offenders, but only approximately 179,000 of those are actually in the federal Bureau of Prisons physical custody.

Q.   And of those 179,000 -- is that what you said?

A.   Correct.

Q.   Of those 179,000 individuals, how many of those are serving a sentence of life without release?  Natural life.

A.   From the data I looked at last week,

approximately 6100.

Q.   Now, I'm asking you to assume, sir, for a moment -- actually before we make any assumptions, you know, do you not, that the options that are before this jury in sentencing Mr. Aquart are either a sentence of life without release or the death sentence.

A.   Yes.

Q.   You are aware of that.  I'm going to ask you to make an assumption for us here, sir, that in the event that the jury's decision here would be a sentence of life without release, if the jury were to sentence Mr. Aquart to a sentence of life without release, in view of his -- in light of his records that you've reviewed and the actual circumstances of this case, do you have an opinion on what level of facility he is most likely to be designated to?

A.   At a minimum he would go to United States penitentiary.

Q.   Okay.  And, again, is there a role for the U.S. attorney's office in at least sending recommendations in that regard?

MS. DAYTON:  Objection.

A.   Yes.

THE COURT:  Basis?

MS. DAYTON:  There is no basis for that.

THE COURT:  That's cross-examination.
All right.  The question was, is there a role for
the U.S. attorney's office in at least sending
recommendations in that regard.

Is that really the way you wanted to ask
that question?

MR. SHEEHAN:  Yes.  Did it sound -- as
your Honor said, maybe I'll -- you did quote me,
your Honor.  Let me ask you that.

Q.   Were you involved in classification issues
at any point in time in your career within the
Bureau of Prisons?

A.   Yes.

Q.   Does the Bureau of Prisons consider
requests from the U.S. attorney's office as far as
level of facility for an inmate?

A.   Yes.

Q.   And similarly, does the Bureau of Prisons
not only request, but in fact entertain suggestions
from the court as far as the level of security of an
inmate?

A.   They consider it, yes.

Q.   But ultimately it's up to the Bureau of
Prisons, right?

**Exhibit A**

A.   Yes.

Q.   And can you -- so, in response to my question, where would Mr. Aquart likely be designated to, your answer to that is?

A.   At a minimum it would be a United States penitentiary.

Q.   Can you, sir, based upon your 20 -- let's see, 20-plus years of service with the -- actually 27 years -- how long were you with them?

A.   Twenty-eight.

Q.   Twenty-eight years.  Based upon your 28 years of experience with the Bureau of Prisons, and your knowledge to date, can you imagine any circumstances under which Mr. Aquart would be sentenced to a facility of a lower level of security than a United States penitentiary?

A.   No.

Q.   Now, within a United States penitentiary, how is it, sir, that -- are there methods of discipline that are available within a United States penitentiary?

A.   There are methods of discipline with all federal Bureau of Prison facility.  There is a program statement on inmate discipline where if an inmate violates one of the standards of inmate

**Exhibit A**

3119

discipline he's afforded normally a hearing, and then it can be handled at the UDC unit team level or it can go up to the disciplinary hearing officer who can sanction an inmate into disciplinary segregation status.

Q.    And tell me, can you tell us, sir, what it is -- let's -- let me ask you this:  What is the daily regimen for an inmate who is in a United States penitentiary?  Not in any kind of disciplinary status, but what's the regular kind of schedule like on a day-to-day basis?

A.    At the most it's a two-man cell.  The cells are unlocked approximately anywhere between 5:30 to 6:00 a.m. In the morning inmates are given an opportunity to take a shower, get cleaned up.  Then there is chow call that is called.  The doors to the units are opened up for a period of ten minutes at a time.  Inmates walk to the dining room, they're given approximately 20 to 30 minutes to eat their meal in the morning, and then they're called back to the unit.  There would be a work call.  Inmates that are working would go to their job assignments.

Q.    Before we -- let me interrupt you just there and ask you, you mentioned a work call.  Is it -- is it up -- are all inmates in a United States

**Exhibit A**                                                    3120

penitentiary, do they all have jobs?

A.   Yes.  Unless they're medically unable to work, yes.

Q.   And suppose an inmate just doesn't want to work?

A.   He doesn't have a choice.  He's locked up.

Q.   So, we got to they go off to work.  Then what happens?

A.   Then the inmates that are not on work status would go to programming.  If they're on their day off they would have the opportunity to go to recreation.  Approximately around 10:30 in the morning all the activities would cease.  Inmates in the programming areas would return to their units. Approximately -- then you would have the dining room call for diabetics, people that require special meals.  At approximately 11:00 a.m., then the dining room is open.  It's called by work detail.  After you feed the work details, then you call the units. Then everybody goes back to work.  Then it's the same process, where it's either programming in the afternoon or recreation for day off people.

At approximately 3:30 there is a recall, all of the inmates report back to their unit unless they're on an official outcount, and those outcounts

**Exhibit A**

3121

are at a minimum normally for food service or emergency work details. Then at 4:00, okay --

Q. I want to interrupt you. An outcount, what's with all of this counting. Why are you doing that within a penitentiary?

A. That's one of our systems. That's how we know, we maintain who we have.

Q. Okay. And how often a day do you -- basically does everybody get counted?

A. Everybody gets counted normally at least five times a day, official counts. Then there is detail accountability checks at four o'clock, there is what we call a stand-up count where all inmates have to be standing in their cells. That's an official four o'clock stand-up count.

Then after that is cleared where everybody is there, the dining room is open for the evening meal. Again, they're called by unit to the evening meal. After the dining room is cleared, then the yard can be opened back up. Usually at about, depending on the darkness, at dusk the inmates are recalled back into their units. Terre Haute, at 8:45 we locked them in their cells for the evening.

Q. And you mentioned -- let's deal with

Terre Haute because that was the most recent penitentiary you were at. Is there a physical barrier around that facility?

A.    The new institutions that the -- the new model they're building, the new institutions -- well, the old one too, had a double chain linked fence. It had gun towers on the perimeter, and the new one, the design of the facility, there is a double chain link fence and then the design of the facility, everything is encapsulated in kind of a circular, the rec yard, everything enters into the center of the structure itself where inmates can no longer see outside. If they want to see light, they have -- the sky is there, but there is no windows that show the outside anymore.

Q.    And you mentioned these gun towers. Are those gun towers manned throughout the day?

A.    At the new penitentiaries there is a center gun tower that's manned. Normally, I manned mine 24 hours a day. Some institutions man them just for 16 hours a day. But there is a physical center tower inside the institution.

Q.    Are correctional officers typically armed?

A.    Inside, no.

Q.    And why is that?

A.    If they're armed it could be taken away.

Q.    Okay.  And with respect to these gun towers, are those accessible by inmates?

A.    No.

Q.    And I take it the officers in the -- by definition, those officers in the gun tower, they are armed, are they not?

A.    Correct.

Q.    With rifles basically?

A.    There is a variety of lethal to less lethal weapons up there.

Q.    And you mentioned just as an example about you have a four o'clock stand-up count.  Suppose I'm an inmate and I just say, do you know, Mr. Warden, I don't feel like getting out of my bed.  And you said to me, well, Mr. Sheehan, are you sick, and I say no, I just bug off.  What happens within a facility in that context?

A.    He'd go to special housing unit.  That is a prohibited act, failing to stand count.

Q.    And what is the special housing unit? What's the difference between that and the general population within the United States penitentiary?

A.    Every secured facility in the Bureau of Prisons has a special housing unit.  Basically it's

**Exhibit A**

a unit within each institution where you can segregate inmates from the general population for pending -- they're pending a violation of an institution rule.  An inmate can request protection or staff can determine there is a need for protection for that inmate and place them in there.

There is two basic statuses in it, you are in administrative detention; that's the status where you're normally in a two-man cell.  You get five one-hour periods of recreation a week, three showers, and you have the same property that an inmate would have on the yard, but it's very scaled down, it's very limited.

Then there is disciplinary segregation part of the unit, too, where an inmate is sanctioned by the disciplinary hearing officer for violation of inmate discipline policy, and they're put in there. It's less restrictive property, again it's five hours of recreation a week and three showers.

Q.  Now, so we have -- at least one component appears to have double cells, right?  Is that the ad-seq unit?

A.  MDX has double cells, too.  There are some cells that are set up for single, you have one bed in it, too.

Q.   And so I get -- when you say I get five hours of recreation a week, what is that?  What does that mean?

A.   You are taken out of your cell five times a week for one hour at a time.  You are escorted in restraints to a -- the special housing unit has its own recreation area.  In that there are secure recreation enclosures where you can put one individual or you can put up to, I think when I was there we could put up to six people in one.  They would be uncuffed.  Once the door is locked, uncuffed, and then they would be in there for recreation for an hour.

Q.   And you mentioned you could have -- when you were there in some places you could have up to six inmates in a particular location.  Is there single area recreation?

A.   They're all the same size, but depends on the status of the inmate.  Some inmates are single rec, single housed, single basically everything.  Those individuals are put in recreation enclosures by themselves.  They're housed by themselves.

Q.   In this recreation enclosure, is it like being in a pen?

A.   Some people attribute that to it, yes.

**Exhibit A**

Q.   Well, do I have fencing all around me?

A.   Yeah, it's totally enclosed with either woven fabric or chain link.

Q.   What about above me, what's up there?

A.   Same thing, concrete on the ground, chain link around.

Q.   Okay.

Now, you mentioned that there are these SHUs within each facility?

A.   Secured facility.

Q.   Secured facility.  So that would certainly encompass within each United States penitentiary, right?

A.   Yes.

Q.   You might not have a SHU if you were in a camp, that's not a secure facility?

A.   No.

Q.   Now, you mention -- as far as this SHU is concerned, how long can an inmate be kept in the SHU?

A.   Depending on the circumstances they can be in there for extended periods of time.

Q.   More than a day?

A.   Yes.

Q.   What's an extended period of time?

A.    Some cases are reviewed every 90 days. Some people are in there for longer.  Some inmates refuse to populate in a penitentiary or in FCI and they're housed in special housing unit for as long as they refuse population.

THE COURT:  Mr. Sheehan, is this a good time to take a break.

MR. SHEEHAN:  This would be a great time, your Honor, thank you.

THE COURT:  Ladies and gentlemen, we'll take a half hour.  Leave your notes here, don't discuss the case, we'll be back at a quarter to two.

(Jury exited the courtroom)

THE COURT:  All right, Mr. Bezy, if you will kindly be back at quarter to two and don't discuss your testimony.  We stand in recess.

(Recess)

THE COURT:  All right.  Please be seated.  Mr. Bezy, if you would like to return to the stand, we'll bring the jury in.

(Jury entered the courtroom.)

THE COURT:  Please be seated, ladies and gentlemen.  Continued direct examination of Mr. Bezy by Mr. Sheehan.

MR. SHEEHAN:  Thank you, your Honor.

**Exhibit A**

Q.    Mr. Bezy, you had -- I had asked you a couple of questions about the ADX unit at Florence. Could you tell us, just in general, how that differs from the standard United States penitentiary?

A.    The ADX was opened in 1995 to replace the control unit or the security program at USP Marion. It has three functions:  It has a general population, which is the program that most people end up going to there for, and they're there for a period of normally -- they can work their way out in three years depending on their conduct.  There is no guarantee that they can work through the program, but it's a phase program where they start out in very restrictive and then they can, after they're teamed by the staff there, they're put into different phases of the operation where eventually the final phase is at the USP Florence next door, but there is no guarantee they'll get through the program.

Q.    When you say people are initially placed there, how do they get placed there?

A.    There is a recommendation made by the institutional warden to the regional director.  Now it's forwarded up to Washington and a designation center in Grand Prairie, Texas who do the paperwork,

and it's approved by, I believe the assistant director out of -- correctional programs out of Washington who will make the final determination, or that it will go to the ADX GP.

Q.   Some people, are they designated to the ADX GP?

A.   Approximately 5 percent of the population at ADX is directly from the court.  The population of the ADX is, I think 492 is their max.

Q.   And in comparison with a U.S. prison, if I were sent to the ADX unit, would I have the same kind of housing?

A.   No, ADX, it's all single cell.  It's more secure than a USP.  Most of the cells have a solid doors and then a vestibule and then a grilled door inside.  It's all single rec and single cell.

Q.   And what is the approximate size of the cell at the ADX unit?

A.   It's a standard cell.  I don't recall off --

Q.   And what's in that cell?

A.   You have in one corner a stainless steel shower, you have a concrete bed, you have a concrete writing table that is built in the wall.  You have a concrete stool for the desk, and then you have a

stainless steel toilet and sink combination.

Q. How are inmates removed from their cells? How does that process work?

A. Well, they're all in full restraints when they come out. In general pop they're handcuffed from behind. At the grille door staff get ahold of the restraints. There is at least one other officer there with a baton. So they're always under direct staff supervision.

Q. And you indicated that that period lasts, the initial period anyway, at least in your understanding is at least three years?

A. Well, they're teamed in, I believe it's 12 months with set review periods, but, again, the staff look at each individual case and they weigh each individual case separately.

Q. What kind of controls are there within the Bureau of Prisons with respect to monitoring of communications? Let's say at a United States penitentiary or higher level facility.

A. For written correspondence, all outgoing correspondence is turned in to the unit officer. It's not sealed. Staff will check the correspondence. The morning staff from midnight to eight will review the correspondence, check it for

contraband.  There is also hot lists for inmates if they're of a particular interest that their mail is forwarded directly to the investigator's office, it's further read down there.  The unit officer would then seal the mail and then it would go outside to the post office.

Incoming mail is picked up by institution staff at the post office.  It's taken, it's screened by metal detectors or X-ray machine.  Each letter is then opened and checked for contraband.  Again, if there is a unique interest in the inmate, that mail go will go to the investigator's office before it will go to the inmate.

Q.   And how about on phones, are there restrictions on phones?

A.   Yes.  Each inmate is authorized, there is allowed 300 minutes of phone time each month.  All calls are either collect or the inmate can buy them and put them on a debit card system where he's paying for the phones.  They're allowed 15-minute phone calls, and then the way the system is set up there is dead time, usually I think it's 45 minutes or so between calls, so an inmate can't just sit on the phone for back to back calls, so it opens it up for other inmates to use the phone.  All calls are

recorded and subject to live monitoring.  Some are live monitored.

Q.    Now, at a communications -- you mentioned they have CMUs.  Are those controls even more strict?

A.    Yeah, the CMU, all phone calls are live monitored.

Q.    And how about letters?

A.    They can -- if it's a unique individual, if it's written in a foreign language, then there is staff that will be sent that reads that language, or if there is unique coding or material of interest, it can be sent to somebody that focuses on that inmate or a group, and it will be looked at that way.

Q.    And does the warden have power, for example, to restrict mail or phone privileges?

A.    Yes.  Both privileges.  The warden can pull and suspend phone privileges for periods of time, and then as part of the disciplinary sanction you can take phone periods, you can take the phone privilege away for indefinite periods of time.

The warden can also by -- if there is a threat to the overall running of the institution or the community, people can be put on restricted

correspondence requirements, too.

Q. As warden did you actually do that with respect to some inmates; that is, restrict their phone and their correspondence?

A. If it was a subject -- as far as the written correspondence, if it was an ongoing investigation, yes, I restricted who they could write to and reviewed all of their incoming and outgoing correspondence.

As far as phones, when I was a warden at Ohio they allowed smoking at that time inside. It's supposed to be in the yard, inmates are not compliant, so we talked to them, they didn't want to listen, so if they were caught smoking in the unit by the officer, I suspended their visitation, phones and commissary for a year. That became a little bit burdensome on the staff, so then I decided I'll quit selling tobacco to them and that worked even better.

At Terre Haute if you were caught either possessing an intoxicant or making intoxicants, again, I suspended -- I had the DHO suspend the phone, visitation, commissary for a year, first offense.

Q. You mentioned that, like ADX, after that three years, there is a kind of a step-down

procedure?

A.   It's possible, yes.  There is inmates that I put there in 1995 that are still in that process, that are still in that unit.

Q.   And what criteria does the ADX use as far as moving inmates in or out?  What is their criteria?

A.   Again, it's a referral.  It's -- they're afforded due process hearing, and if there is a recommendation for placement, then they're sent to the ADX.

Q.   Now, is there kind of an intelligence gathering mechanism that you used when you were a warden at the facilities?

A.   Yes, I had my own local investigator, special investigative supervisor.  He had, I think up to six people working for him.  Then the region has an intelligence staff.  There is a central office intelligence staff and then there is a group out in Sacramento, California, that is a joint intelligence group with all federal law enforcement and there is one in Pennsylvania too.

Q.   And when you were the warden how often would you actually walk through your facility?

A.   I went -- I would tour my special housing

unit every Tuesday at one o'clock.  I would take certain staff with me.  At that time I woke up every inmate in that unit to make sure they were alive and well and breathing, and if they had any issues they could address it with me then.  Then I would proceed up to the special confinement unit and do the same there.

Every day at eleven o'clock I would go to the dining room and I stood mainline while the inmates ate.  I spent an hour plus there every day, so if an inmate had an issue of concern he could address it with me personally.  It diffused a lot of issues, and it's a source of good information, too.

Q.   Let me ask you to assume the following: Let's assume that an individual had been convicted of a triple homicide in connection -- in the context of a drug operation and his conviction was in 2011, and that individual was also found to have assaulted another inmate at the end of 2009 while in a detention facility pending trial.  And assume further that if the United States attorney or the Department of Justice were lobbying hard for designation for ADX, do you have an opinion as to where that individual is likely to be designated?

A.   Very likely he could go into the GP at the

ADX or with the right amount of pressure he could go to the control unit at the ADX too.

Q.   What's the difference between the control unit?

A.   Control unit is a unit within the ADX where based upon an inmate's behavior, most of them are there for -- they have taken another life of an inmate while they're incarcerated, escaped, or very unique threat to the safety and security of the institution.  There can be a recommendation for placement in the control unit.

There they're afforded a due process hearing where they can call witnesses.  Hearing administrator presides over the hearing and then there is a recommendation for placement.  If they're approved, then the unit team of the control unit will establish a period of time for their placement.

When I was involved in it, if it was -- if it involved a homicide within one of the federal prisons, they normally got 60 months, and now I understand they're giving them 72 months in there. Again, it's behavior based.  They get credit for the months they're in there with clear conduct.  If they've mismanaged or don't program, that month can be taken away from them.  So, they have to do --

they'll do it in a control unit.  It's not additional time, it's just time that the Bureau says you will be in this unit.

Q.    Now, in your experience over the 20-plus years, have you worked in facilities which had individuals who were doing a sentence of life without parole?

A.    Yes, every -- when I was at Terre Haute, when I left, when I retired, I had about approximately, I think, 12 to 1500, and out of that 300 were doing natural life.

Q.    How is it that correctional staff, in your opinion, how do they maintain control over inmates who are doing life without parole?  It seems kind of like those inmates have nothing to lose.

A.    Penitentiaries are set up to be restrictive in a control environment, and basically the only decision an inmate has in a penitentiary is whether they're going to follow the rules or not.  If they don't, then there is policies and procedures for inmate discipline on that.  Most of them do program. It's a controlled environment that, you know, for safety and security.

Q.    Is there a difference between short-term and long-term prisoners in terms of maintaining,

difficulty in maintaining control?

A.    Some of the younger short-term inmates can be problematic because they know they have a ticket out after a certain number of years.  My experience, people doing long time are normally less problematic.

Q.    And let me ask you, does the fact that you have the same inmates in these penitentiaries for a long time, does that impact on the stability within that institution?

A.    Yeah, inmates in a penitentiary tend to -- they get into their own program of doing their time, staff know who they are.  It's not a real transient population.  They're there for extended periods of times, for years, so they know the staff, staff know them, and, you know, if the warden is out there and about taking care of business, it's a safe environment.

Q.    When you basically walked the facility, were you armed or guarded by other staff?

A.    No, I walked by myself.

Q.    Do you have an opinion as to whether well run and well managed facilities, are they effective in minimizing violence?

A.    Yes, they are.

Q.   And based upon your review of the defendant's records within the Department of Corrections and the records from Wyatt, do you have an opinion to a reasonable degree of certainty on the ability of the Bureau of Prisons to securely and safely house the defendant if he's sentenced to life without parole?

A.   I believe they can safely and securely house him.

MR. SHEEHAN:  I have no further questions of Mr. Bezy.  Thank you, your Honor.

THE COURT:  All right, cross-examination.

CROSS-EXAMINATION

BY MS. DAYTON:

Q.   Good afternoon, Mr. Bezy.

A.   Hello.

Q.   I'm Tracy Dayton.  I'm an assistant United States attorney in the District of Connecticut.

So you've worked a lot of places, huh?

A.   Yes.

Q.   You moved around a lot?

A.   Yes.

Q.   With your children?

A.   Yes.

Q.   They were okay with that?

A.   Yes.

Q.   And you moved a lot because the Bureau of
Prisons is always changing and trying to update; is
that right?

A.   No, at that time if you wanted a promotion
you had to relocate for promotion purposes.

Q.   But the Bureau of Prisons is always trying
to update and become more modern in terms of housing
prisoners; is that correct?

A.   Yes.

THE COURT:  Would you see if your mic is
working?

MS. DAYTON:  Yeah.  Can you hear me?  I
don't think it's working.

THE COURT:  Is it flashing?

MS. DAYTON:  Maybe Mr. Sheehan turned it
off before I got up here.

MR. SHEEHAN:  It would be a brotherly
thing to do, your Honor.

Q.   Can you hear me okay?

A.   Yes.

Q.   Okay.  So, and you, at the time you
retired, were at Terre Haute, right?

A.   Correct.

**Exhibit A**

3141

Q. You were the warden there?

A. Yes.

Q. And at the time you retired you had just been investigated for unprofessional conduct and misusing official position for personal gain, right?

MR. SHEEHAN: May I approach?

THE COURT: Yes, I'll hear you.

(Sidebar conference)

THE COURT: What are you doing? I have not ruled on that and we're going to have a point at which I would rule on that. I've heard direct and I am not persuaded yet, and there may be something in cross-examination, that is, discipline for profanity. Using staff to look after his dog and to do an application doesn't relate to his knowledge of procedures. Now, it may be that there is going to be something that will change that, but this was a pending issue in which I had not ruled.

MS. DAYTON: Your Honor, you ruled on the profanity. You said yesterday that the fact that he was using profanity against his deputy warden goes to his stellarness or non-stellarness. Do you remember we all laughed about that?

THE COURT: I recall that.

MS. DAYTON: So you did rule on that.

That's what I just asked him about.

THE COURT:  Having heard -- and then today I said I would rule on it after I heard his direct testimony.

MS. DAYTON:  But I didn't know you had withdrawn your prior ruling, your Honor.  I would not do something in bad faith.

THE COURT:  The problem is that I don't see how that relates to his knowledge of designation and BOP procedures.  There may well be something that will cause that to be, to relate, but having heard what his testimony is and the fact that he didn't hold himself out as having certificates of stellarness --

MS. DAYTON:  Your Honor, his resume starts with what a well-respected career he had.

THE COURT:  His resume is not in evidence.

MS. DAYTON:  He questioned him directly from the resume.  His entire first half hour came directly from his resume.  Mr. Sheehan was literally reading from his resume.

THE COURT:  Fine.  It's every place he ever was, every promotion he ever got.  There was nothing about awards, recognitions, certificates of

excellence.

MS. DAYTON:  Your Honor, you allowed them to ask Mr. Hodges whether or not he had ever been a teacher at a school in 1985.  They've put this person up there as an expert, you worked for the Bureau of Prisons for 30 years.  He retired two years short of retirement.

THE COURT:  I understand that, why don't you get some foundation here before you go right to that question.

MS. DAYTON:  Because Mr. Sheehan laid all the foundation.

THE COURT:  I don't recall any foundation about his retiring before and under circumstances that would suggest he was trying to avoid discipline.  I will hear it.

MS. DAYTON:  I wasn't going to say he retired to avoid discipline, I was going to say he retired two years short of his retirement and when he did there had just been sustained allegations against him, and the allegations came, as you can see from what I gave you, precisely because they were talking about issues related to weapons in prison, which has directly to do with his testimony here, the safety of prison.

**Exhibit A**

THE COURT:  Well, that's fine, but that's not the way you've gone about it.  If in fact what you are talking about is his knowledge and expertise on security and his profanity, berating of staff person who questioned something about security, that's far closer than what you are doing right now.

MS. DAYTON:  He mocked his deputy warden.

THE COURT:  I understand.

MS. DAYTON:  So I'll ask him about that.

MR. SHEEHAN:  About what?

MS. DAYTON:  About mocking his deputy warden, about she was trying to recreate what he had talked about with respect to making a weapon and he started mocking her in front of a room full of executives.

THE COURT:  I understand.  I've read all the reports.  I want it to relate to something having to do with his testimony.  If in fact he was reprimanded for --

MS. DAYTON:  He wasn't reprimanded, he retired.

THE COURT:  Excuse me.  He was -- the charge was sustained, and that's all there is.  Do

you wish to be heard?

MR. SHEEHAN:  I'm --

THE COURT:  She's going to get it in eventually.

MR. SHEEHAN:  Why?

THE COURT:  Because it relates to security and his attitude about security.

MR. SHEEHAN:  They're just rewarding bad behavior.

MS. DAYTON:  That's not fair because I went off your Honor's ruling from yesterday.

MR. SHEEHAN:  Totally unfair.

THE COURT:  No, I think Ms. Dayton had a basis for believing, though I don't understand what she might have thought when I said I would reserve until after I heard the direct.

MR. SHEEHAN:  It's inconceivable.

MS. DAYTON:  I can explain that, actually, if you allow me, because I would never honestly intentionally disobey your Honor's ruling. I thought you were saying if he went into it and brought it all out that you weren't going to let me go back into it; that's what I thought you -- I understood you meant.  And maybe I'm stupid.  That's what you didn't want, that it be belabored.

**Exhibit A**

3146

THE COURT:  I don't want it belabored, but I wanted to hear the direct.  As to using staff to prepare an application and watching the dogs --

MS. DAYTON:  I'll stay away from that.

THE COURT:  -- those are so de minimis.

MS. DAYTON:  I'll stay away from that.

THE COURT:  But if he is acting unprofessional with the issue of security, I think that does bear on it.

MR. SHEEHAN:  There is no claim that he was acting unprofessional with respect to the issue of security.  The claim, I take it, is that in the context of running an institution he's spoken in a disrespectful tone to the deputy warden.

THE COURT:  The subject was shank-making.

MR. SHEEHAN:  Yeah, whatever the subject is, you don't get it, you don't get -- do we go into the whole substance of the conversation?

THE COURT:  No.

MR. SHEEHAN:  Then what am I left with? The problem is admittedly one should not speak that way to people that one works with.  Fine.  I think that if -- the people I work with under torture they might admit that at some point in my life I spoke

that way with them.  I suspect other people might also have done that.  It doesn't mean what he's saying here is any less worthy of credence.

THE COURT:  It is to the issue of following their policy.

MR. SHEEHAN:  But the issue was he used bad language.

THE COURT:  I understand that.

MR. SHEEHAN:  In the Bureau of Prisons.

THE COURT:  You certainly are not going to get into all of the detail, but it seems to me that if he violated Bureau of Prisons' policy which he knew existed in the context -- on the subject matter of security, that from that at least there is some challenge to his authoritativeness on why all of these policies will be followed such that Mr. Aquart can be safely and securely housed.  Now, I would think that it's not a major failure, but it is nonetheless by the warden a failing, and it is a failing to follow a policy.  And to the extent that failure to follow policy is an indication that all may not be perfect in the Bureau of Prisons, and therefore his opinion that he can be safely and securely housed is --

MR. SHEEHAN:  Do you know what, this is

a setup.  This is has nothing -- this is a guy who leaves the Bureau of Prisons and they trolled his record for something he never got a copy of.

THE COURT:  I'm not going to permit any testimony of relationship between his leaving the Bureau and this because there isn't --

MR. SHEEHAN:  That's what she just asked.

THE COURT:  No.

All right.  So we're going to leave out -- the question will be rephrased.  We'll leave out misusing official position for personal gain. Ms. Dayton said she was leaving that out because it has to do with taking the dogs out and filling out applications.  The timing is also not going to be the subject of your question.  If you are claiming that it has to do with his -- the security issue, then it needs to be framed in that context and only that context, and it's about one question.

MS. DAYTON:  I'm going to ask him, you were having an executive meeting, you were discussing shanks in prison, and she tried to recreate this and you said X to her.  Because there is no way to get there without --

THE COURT:  I don't want all of the

details of it.  If the purpose is that he himself

was the -- the cause was found -- was sustained for

his violation of whatever that policy was.

MR. SHEEHAN:  But do you know what, he

was never notified of it.  How does he know that

cause was sustained.  He was never told that.  This

thing they dragged out of the sewer to get back at a

guy who has the effrontery to testify.

THE COURT:  So, tell me why it matters

if he doesn't know.  Because you are saying he

doesn't know how to answer that question?

MR. SHEEHAN:  Yeah, because their point

is, and I think what they're trying to say, well,

you were disciplined for this.  I wasn't

disciplined.

THE COURT:  But he wasn't disciplined.

MS. DAYTON:  I'm not trying to say that.

MR. SHEEHAN:  What are you saying then?

MS. DAYTON:  He was interviewed during

the course of the investigation of him.  To say he

doesn't know -- and he also lied under oath about

it.  The last time he testified he said he wasn't

under investigation and then they went and got the

documents and he had to come back from that.  I'm

not even going to bother going into that issue.

THE COURT:  So the phrase is the charge was sustained for directing unprofessional comments and profanity towards a subordinate officer.

MS. DAYTON:  And what he said.

THE COURT:  In violation of the standards of employee conduct.  And to the extent that shows that wardens themselves don't always follow policy, that relates to his opinion that Aquart can be safely and securely detained.  I don't need to know the substance of the unprofessional comments and profanity.

MS. DAYTON:  Your Honor, I can -- that's --

THE COURT:  No, I'm just not going to let you do it because it really doesn't matter whether he called her a dumbhead or the F word.  The point of it to be relevant is that wardens themselves don't always follow the rules and, thus, there can be a security breach.  Other than that I don't understand why it could be -- why it's relevant.

MS. DAYTON:  Okay, fine.

MR. SHEEHAN:  How is the question going to be asked because I have no confidence that it's going to be asked unless you tell them not to.

**Exhibit A**

3151

MS. DAYTON: Thank you very much for this vote of confidence. I got it.

MR. SHEEHAN: No, I need to know. I mean, I think this was ridiculous.

THE COURT: I've articulated how it will be asked.

(Sidebar concluded)

Q. Sorry for the interruption.

Mr. Bezy, is it true that there was a sustained allegation against you for using profane, obscene, and otherwise abusive language with your deputy warden while you were the warden at Terre Haute?

A. Yes.

Q. And so is it fair to say that not everybody always follows the rules and regulations of the prison?

A. Not -- I can't say that, no.

Q. Well, you didn't, correct?

A. That occurred at a daily closeout of my executive staff. There was six to eight people there. I asked her in front of everybody something, she made a comment, I made a comment. It was a robust discussion. I asked her, excuse me, to ask her where the fuck she worked and was she really

that stupid.  Okay, during my closeouts it was a time we debated issues.  We had -- they could say things to me at that point, I could say things to them.  It was open debate.  It was their chance to input.  That's the comment I made.

Q.   And this was in the context of discussing the security of the prison, correct?

A.   Yeah.  We did that every day at 3:30 in the afternoon.

Q.   And discussing the fact that prisoners were making shanks out of plastic trays from where they went to eat, correct?

A.   No, it was from the special housing unit.

Q.   So they were using plastic trays from the special housing unit to make shanks?

A.   Yes.

Q.   So, you talked about the prison, the count as of today.  Essentially, it's over 213,000 prisoners in federal custody, right?

A.   Correct.

Q.   216, you said?

A.   216.

Q.   And 179 of them are in BOP facilities?

A.   Correct.

Q.   And so the remainder --

**Exhibit A**

MR. SHEEHAN: Your Honor, I think the record is 179,000.

A. Yeah.

Q. 179,000. Sorry, I misspoke. The remainder are in privately-managed facilities; is that right?

A. Privately-managed facilities, county jails, home confinement, and local -- yes.

Q. And so privately-managed facility including like Wyatt correctional in Rhode Island; is that correct?

A. No, because they're detainees. They're under the care and custody of the U.S. Marshal Service. He hadn't been sentenced yet, so he's not under the care of the Bureau.

Q. And 93.5 percent of the prison population is male; is that correct, approximately?

A. Yeah, it sounds right.

Q. And you said that over 6,000 -- I believe you said over 6100 prisoners are serving life right now.

A. Correct.

Q. And that's including over 5500 prisoners for murder, aggravated assault and kidnapping?

A. I believe that's what the figures say.

Q. And approximately 100 for national security

threats like terrorism and things like that.

A. Uh-hum.

Q. And then explosives, arson, serious sexual offenses, drug-related offenses make up the majority of the remainder of the prisoners; is that correct?

A. Mainly drug offenses, yes.

Q. And there is currently 57 inmates facing the death penalty, correct?

A. Correct.

Q. And they're all at Terre Haute where you used to work?

A. Yes.

Q. Or Terre Haute, is that the right way to say it?

A. Either way.

Q. And Florence ADMAX that you talked about, that has several levels of security, correct?

A. The ADMAX.

Q. Well, there is the ADMAX and then there is a penitentiary and then there is a lower security facility.

A. It's a complex. There is four institutions there.

Q. And there is -- the four institutions each have a different level of security, correct?

**Exhibit A**

3155

A.    Right.

Q.    And the ADMAX, the most secure one that you were talking about, there are only 490 beds there, correct?

A.    Correct.

Q.    And 430 of those are reserved for male prisoners?

A.    They're all reserved for male prisoners.

Q.    Well, there are some female prisoners that could go there, correct?

A.    For what?

Q.    For murder, for serious issues?

A.    There is a -- there is two or three females right now with the sentence of death and they're in Carswell, Texas, that are housed at a total separate facility.  The Bureau wouldn't mix them like that.

Q.    And as of last week 449 of the beds ADMAX were full, right, at Florence?

A.    Correct.

Q.    And you said, that 5 percent of prisoners are sent directly there, classified directly to Florence, correct?

A.    They're direct core commitments.

Q.    So that would be 22 people?

A.    Yeah.

Q.   The other 95 percent of the inmates don't go to Florence unless they're sent there from another facility for having committed a serious infraction at one of those other facilities, correct?

A.   The Bureau will take state placements on several occasions, too.

Q.   So, if someone commits a murder in a state facility, it's possible that they would be housed at Florence because the state doesn't have a sufficient facility to hold them?

A.   Correct.

Q.   And the 5 percent that are sent directly there are usually really high profile prisoners who can't safely be housed somewhere else, right?

A.   No, it's the order of the court.

Q.   Well, didn't you say before that Bureau of Prisons ultimately decides where people go, right?

A.   Correct, but if there is enough with the courts, the attorney general, and U.S. attorney's office.  The U.S. attorney is deemed to be a law enforcement agency head.  He has the discretion to make a strong recommendation into the ADX or placement.  And being that the U.S. attorney works for the AG, just like the director of the Bureau

**Exhibit A**

3157

does, I would imagine it would happen.  I never saw one that didn't happen.

Q.   So, the U.S. attorney really only makes recommendation on separations; isn't that correct, keeping people who could be dangerous to each other separated from one another?

A.   No, they've made conditions of confinement too.

Q.   And even a federal judge can't order you to place somewhere -- someone at a particular prison; isn't that right?

A.   I believe there was one judge that did that, though.

Q.   But you don't have to follow that, do you?

A.   In this case, the Bureau did.

Q.   So, that's one?

A.   Right.

Q.   And the high profile people we are talking about are people like Richard Reid who was the attempted shoe bomber, correct?

A.   Correct.

Q.   And Robert Hanssen who is serving life for espionage?

A.   Correct.

Q.   And Faisal Shazad who did the Times Square

attempted bombing; is that right?

A.    If that's -- yeah.

Q.    Terry Nichols, the person who cooperated in the Oklahoma bombing case against Timothy McVeigh?

A.    Correct.

Q.    And so it's people who have -- are very high profile, in other words?

A.    Those, I think those people you just said are on SAM, special administrative measures. They're housed in a separate unit totally within the ADX.

Q.    But those are some of the 5 percent that would be sent, directly sent there regardless of where they're housed, right?

A.    It's possible, yes.

Q.    And once they go there -- I'm sorry, you said earlier that someone who is sent to ADX, eventually, it's a three-year program, and they try to program out?

A.    That's the ultimate goal of the program, but it didn't always happen.

Q.    Can you explain to the jury what that means to program out.  It's not lingo we use every day.

A.    Well, their confinement, when they go before the review committee they look for any

incident reports, misbehavior issues, they look at their association with staff, that's a big key thing, and whether the offense that put them in the ADX has been mitigated enough to warrant their moving through the program.

Q.   Okay.  And people in fact do step down and go to lesser programs, right?

A.   Some.

Q.   You mentioned in fact that there are some inmates at supermax who you put there in 1995, right?

A.   Yes, ma'am, I moved them there, yes.

Q.   But that's only two, correct?

A.   No, I checked.  There is a few more than two.

Q.   But not all 449?

A.   No.

Q.   Okay.  And even though Florence, which I'm using Florence and supermax interchangeably, is very secure, there are still assaults and homicides there; is that correct?

A.   I believe there has been one homicide there.

Q.   Okay.

A.   But then they changed the operation based

on that, too.

Q.   Is that the 2005 murder of Manuel Torrez?

A.   Correct.

Q.   And he was beaten to death in the yard at supermax, correct?

A.   Correct.

Q.   By Richard Santiago and Silvestre Rivera?

A.   Yes.

Q.   And Santiago was at supermax because he killed a prison guard in Fresno, right?

A.   I'm not aware of what he did.

Q.   And in fact there was another murder at supermax in 2008, Gary Douglas Watland killed somebody.

A.   That was at USP, it wasn't the ADX.

Q.   But at Florence?

A.   There are four facilities there.  They each have their own warden.  There are four distinct separate facilities.  They do not all have the ADX function, they all have their own function there.

Q.   But this would have been the place, for instance, if he stepped down from supermax, he would go, for instance, to the USP, right, at Florence?

A.   There is one unit there at the USP that is set aside for their step program, step-down program.

**Exhibit A**

He could have gone to any of the 16 penitentiaries that are open and functioning.

Q.   And he was -- he was serving a life sentence for murder when he stabbed inmate Mark James Baker in the head with a makeshift metal shank, right?

A.   Correct.

Q.   Can you explain for the jury what a shank is?

A.   It's a homemade weapon.

Q.   And how do they make it?

A.   Prison made.  They can make them a variety of ways.  They can find a piece of steel, hone it on the concrete, sharpen it.  They can mold a trash bag into a weapon.  They can do a variety of different options to make weapons.

Q.   And there are other types of weapons that are used in prisons, too, right?

A.   Oh, yes.

Q.   Like locks, like combination locks?

A.   Uh-huh (indicating affirmatively).

Q.   I'm sorry, you need to say yes or no.

A.   Yes.

Q.   And sometimes they put those inside socks so that they don't leave the same type of mark?

**Exhibit A**

3162

A.   No, it gives them a better swing when they do it.  It's not for marking purposes.

Q.   So, a better swing, and sometimes they attach it to, like, a rope or string to get a better swing, too?

A.   Yes.

Q.   What other kinds of weapons have you seen?

A.   Toothbrushes sharpened, pencils, SHU strings.  Anything they can make.

Q.   It's dangerous, right?

A.   It's the environment.

Q.   And like a guard got stabbed in the eye at the Metropolitan Correctional Center; is that correct?

A.   Yes.

Q.   And he has permanent brain damage?

A.   Yes.  But again, there was policies and procedures in place that weren't done that day that allowed that to happen.

Q.   So it was the guard's fault?

A.   I'm not saying it's the guard's fault.  The guard didn't do what he was supposed to do.  And that's what happens most of the time when things happens.

Q.   Okay.  But the person had created the shank

**Exhibit A**

prior to the day that the guard was stabbed in the eye, correct?

A.    I can't speak, I wasn't there.

Q.    Okay.  And then in 2006, Tyler Bingham and Barry Mills, I believe you are familiar with him, were both convicted for racketeering and conspiracy for ordering assaults and murders from their cells at the Florence supermax, correct?

A.    Right.

Q.    And just in December of 2010, two guards were assaulted by an inmate in supermax, right?

A.    I'm not aware of it.  It's possible, yes.

Q.    So even in a really secure prison, inmates, if they want to, can attack a guard?

A.    It's possible.

Q.    And so you also talked about infractions in prison, like the failure to stand for a count.  Not every infraction sends a prisoner to SHU, correct?  To the special housing unit?

A.    No, there is different levels.  There is the 100 level through 400 level.  And depending on the level of the severity of the incident, sometimes it's automatic lookup, sometimes it's not, it's a lower level.

Q.    I'm sorry, go ahead.

**Exhibit A**

3164

A.   For the lower level, it's not.

Q.   So, for instance, as you testified to earlier, they may just lose their privileges for phone calls, correct?

A.   There is a variety of sanction opportunities that's available to the staff.

Q.   But is it fair to say that inmates -- I mean, these are people who are convicted criminals -- look for ways to exploit guards and/or the weaknesses of the prisoner system -- I mean the prison system?

A.   Some do.

Q.   And sometimes guards may have lapses in procedures that allow assaults to happen more easily; is that fair to say?

A.   Yes.

Q.   And in fact, there is just not enough guards to watch every prisoner, correct?

A.   Well, staffing is set by Congress, funding. And if Congress doesn't provide the money.  But the -- you know, they're staffed up to 97 percent of what they're supposed to be.

Q.   Well, Congress is notorious for not doing very well with money; is that fair to say?

A.   Yeah.

**Exhibit A**

3165

Q.   And you were talking about when you were at Leavenworth you had 1200 prisoners and 250 staff, correct?

A.   Correct.

Q.   But that wasn't 250 prison guards, was it?

A.   Yeah, I think it was -- yes, it was.

Q.   Doesn't staff include like the people who serve the food and the people who take care of the facilities in other manners?

A.   In the context I stated there was 200 correctional staff there, which included the lieutenants, the captain and the correctional officers.  There are extra staff.  Like I said, at Terre Haute I had up to 650.  I only had approximately 400, maybe 450 correctional staff, but all of these other staff are qualified law enforcement staff, too.

Q.   And with respect to the United States prisons, that's where most people who are convicted of very serious crimes go, correct?

A.   Correct.

Q.   And those you mentioned, the cell doors open at 5:00 a.m., correct?

A.   Correct.

Q.   And they close somewhere between 8:45 at

Terre Haute and maybe 10:00 p.m. somewhere else that stays light later, correct?

A.   That's a call up to the warden.  He can lockdown the evening whenever he feels like.  It's a local call.

Q.   But generally speaking, 5:00 a.m. to 9:00 p.m. the cell doors are open, correct?

A.   Right.

Q.   And prisoners are allowed out of their cells, you said, to work?

A.   Yes.

Q.   And to go for educational classes?

A.   Uh-huh (indicating affirmatively).

Q.   And to go for recreation?

A.   Yes.

Q.   And they recreate together, correct?  They play basketball?

A.   At an open penitentiary, yes.

Q.   And they eat together?

A.   Yes.

Q.   So there are lots of prisoners in one place at one time, fair enough?

A.   You limit it.  You control it.  That's why you call the dining room, you call them in sequence. You know.  You don't put them all in, the thousand

**Exhibit A**

in there at one time.  You feed them and push them out.  In a rec yard, now the penitentiaries have gone to a split compound where only half is out at one time.

Q.   But even with all of these controls, is it fair to say that there are dozens of serious assaults on staff every year?

A.   Yes.

Q.   So in 2010, there were 59 serious assaults on staff members; is that correct?

A.   It's possible, yes.

Q.   And in 2009, there was 107 serious assaults on staff, correct?

A.   Yes.

Q.   And in 2008, there was 92 serious assaults on staff, correct?

A.   If you say so.

Q.   And there was also a murder in 2008 of a prison guard, correct?

A.   Yes.

Q.   Jose Rivera?

A.   Yes.

Q.   A veteran who had done two tours in Iraq, he came back and worked in the prison for ten months before he was stabled to death by two inmates.

**Exhibit A**

A.    Yes.

Q.    And they assaulted him with a homemade knife, correct?

A.    Yes.

Q.    Chased him down and stabbed him to death.

A.    Yes.

Q.    And you are going to testify in that case, too, aren't you?

A.    No, not yet.

Q.    You've been retained?

A.    Not officially, no.

Q.    What do you make an hour?

A.    I charge $175 an hour plus expenses.

Q.    And expenses including travelling expenses?

A.    Yes.

Q.    Testifying expenses?

A.    It's the same.  I just charge a flat rate.

Q.    What was your rate in this case?

A.    It's $175 an hour.

Q.    How many hours did you work on this case?

A.    The initial contract I believe was for 25 hours.

Q.    Okay.  And what's it up to now?

A.    It just whatever this -- how long I'm here.

Q.    And so since you've retired -- you retired

**Exhibit A**

in 2006, right?

A.    Correct.

Q.    Essentially what you've done, what you do for a living now is to testify in cases about alleged lapses in Bureau of Prisons policies?

A.    No, I'm retained by -- I've been retained by private attorneys too.  I discuss prison related issues.  Some of them are lapses in policy, correct.

Q.    Including how inmates who have already murdered a guard can be safely housed in prison?

A.    We did it for years.

Q.    And you testified in the case of Mark Snarr and Edgar Garcia?

A.    Correct.

Q.    Who stabled two prison guards?

A.    One.

Q.    Well, they stabbed one guard 23 times, stabled a second guard who wouldn't give up his keys, and then entered an inmate's cell, stabbing him 50 times and killed, correct?

A.    I don't know.  I didn't count -- I don't know the amount of stab wounds, but correct.

Q.    In addition to the staff assaults there are about ten inmate homicides a year, right?

A.    That varies.

**Exhibit A**

Q.    Sometimes it's more?

A.    It could be.

Q.    Sometimes it's less?

A.    Right.

Q.    But regardless, too many people are dying in the Bureau of Prisons?

A.    To sum it up, the Bureau does a good job given what they have to deal with, the staffing, everything else.  The Bureau does a good job.  They set the standard for the corrections in this country today.  They do a good job, but sometimes things happen, and that's part of the nature of the beast in the prison.

Q.    Things happen, like people slip their cuffs.

A.    If they're put on correctly you can't slip the cuffs.

Q.    Well, you can hit against the wall that makes the double lock come undone, correct?

A.    If you are doing your job that doesn't happen.

Q.    So, if someone fails to do their job correctly by accident, they don't deserve to get assaulted, correct?

A.    Correct.

**Exhibit A**

3171

Q.   And in fact, just in Terre Haute where you used to work, are you familiar with the assaults from just this past month, May of 2011?

A.   I don't track them personally anymore, no.

Q.   But would it shock you to know that --

MR. SHEEHAN:  I'm going to object to the form of the question.

MS. DAYTON:  Okay.  I'll rephrase.

Q.   Are you aware that an assault, there was assault on staff in a housing unit that resulted in that staff member's shoulder being dislocated?

A.   No, I'm not aware of that.

Q.   On the same day, May 2nd, 2011, an inmate punched an officer in the face?

MR. SHEEHAN:  I'm going to object to that.

THE COURT:  What's the basis of your objection?

MR. SHEEHAN:  He already said he wasn't aware of the incident and now she's asking -- I object to the form of the question.

THE COURT:  I can't tell whether it's the same incident or a different incident in the same facility.

MS. DAYTON:  It's a different incident

in a the same facility.

THE COURT:  Overruled.

Q.   And then on May 13th there were 11 inmates fighting in the rec area.  Were you familiar with that incident?

A.   No.

Q.   On May 16th, this is still Terre Haute, two inmates were fighting with homemade shanks in the SHU unit.

A.   No.

Q.   Are you familiar with Shannon Agofsky? He's on death row?

A.   He came after I left.  But I know who he is.

Q.   He was in for murder and then he killed an inmate in one of those rec cages that you talked about, right?

A.   Correct.

Q.   And now he's on death row as well?

A.   Yes.

Q.   Have you seen the photographs of what the defendant did to his victims in this case?

A.   No.

Q.   Have you seen the photographs of the assault on Anthony Armstead?

**Exhibit A**

3173

A.    Yes.

Q.    That's a serious assault, isn't it?

A.    If you want to call it that, yeah.

Q.    This man -- was this is after he had, Government's Exhibit 3 from the penalty phase, this was after he had been washed up.  Would you consider this a serious assault?

A.    Possible.

Q.    Possible?

A.    Yeah.

Q.    Okay.  And the fact that he got stitches and staples on his face, this is Government's Exhibit 4 from the penalty phase, his head was cut open behind his ear, his eye, that someone should get disciplined for that, right?

A.    Supposed to, yes.

Q.    So, you -- are you aware that the defendant had a history of assaultive conduct before this case?

A.    I read his DOC file and what Wyatt provided, yes.

Q.    But were you provided, for instance, the evidence in this case like the reports and things like that?

A.    I did review the police report, yes.

**Exhibit A**

3174

Q.   And so you've never interviewed the defendant, right?

A.   No.

Q.   And you no longer work for the Bureau of Prisons; is that fair?

A.   Correct.

Q.   And you haven't in five years.

A.   Correct.

Q.   So, you don't know where the defendant is going to be designated, correct?

A.   I have a professional opinion on it, yes.

Q.   But you don't know where the defendant is going to be designated, correct?

A.   No, I don't.

Q.   And you don't get a say in it, do you?

A.   No.

Q.   And you don't know whether he could continue a pattern of assaultive conduct.

A.   It's possible.

Q.   Thank you.  Thanks for answering my questions.

          MS. DAYTON:  I have nothing further at this time, your Honor.

          THE COURT:  Redirect.

REDIRECT EXAMINATION

**Exhibit A**

3175

BY MR. SHEEHAN:

Q.    Mr. Bezy, in these cases where you're contacted by lawyers like myself who are appointed by the court, how do you get paid?

A.    I submit a voucher and I wait until they pay me.

Q.    And who do you submit the voucher to?

A.    Sometimes I sent it to the government, sometimes I submit it to the attorneys.

Q.    And ultimately, you get paid by the court, right?

A.    Yes.

Q.    I have no further questions.

THE COURT:  All right, thank you, Mr. Bezy.  You may step down.  You are excused.

Will you call your next witness, please.

MR. SHEEHAN:  Yes.  James Shannon, your Honor.

THE COURT:  All right, Mr. Shannon, if you will remain standing with your right hand raised, the oath will be administered to you.

J A M E S    S H A N N O N

Having first affirmed, was examined and testified as follows:

THE WITNESS:  My name is James Shannon,

**Exhibit A**

**Page 77**

A.   What was the number again?

Q.   Sure.  3,801.  And these are actually illegal weapons. I'm not talking about an extinguisher someone could pick up and use as a weapon.  I'm not talking about a pencil somebody could use as a weapon.  I'm talking about actual weapons that in 2012, 3,801 weapons were confiscated within BOP facilities? Does that sound right to you?

A.   It sounds a little high, but it's possible.

Q.   Okay.  In 2012, 3,264 illegal, meaning contraband cell phones were recovered in BOP facilities.  Does that sound about right to you?

A.   That sounds high, but I'll take your word for it.

Q.   Okay.  Can't even begin to estimate how many drugs were taken out of BOP facilities?  Do you know how much, how many times illegal drugs, the actual drug was found inside a BOP facility?  I'm not talking about dirty urines.  I'm talking about how many times they actually recovered drugs inside BOP facilities?

A.   No, I don't.

Q.   Can you even fathom a guess?

A.   No, I can't.

Q.   So that wouldn't show up in those 100 numbers, correct? If we don't even know how many there are, that certainly wouldn't show up in the 100 numbers, would it?

A.   No.  But we use an ion scan machine at Terre Haute, and

**Page 78**

at the penitentiaries when I retired, we were doing that. Every visitor came through there, we scanned particle, trace particle for any narcotics, all right?

So I had probably the lowest, because I enforced that rule.  And I don't care if it was a grandmother or a two year old, if they tested positive for any particles of the five drugs we were testing, they weren't allowed in.  And I had the lowest level of drug use in the country.

Q.   Okay.  But they still got through you?  They still got through you?

A.   And I prosecuted the inmates that had them.

Q.   Right, but that's my point.  You're saying with all of these ion scans, with all of the metal detectors, it sounded to me like almost every time a prisoner turned around he was walking through another metal detector at the facility when you were the warden there at Terre Haute.  Every time he left the block, he was going through a metal detector.  When he went from the cafeteria, he was going through a metal detector.  He was going through a metal detector all the time. They were still finding weapons, right?

A.   Not all weapons are constructed of metal.

Q.   Okay.  That's number one.  And I was going to visit with you about that.  Number one, they're not all constructed out of metal.  Why?  Because prisoners know about the metal detectors, correct?

**Page 79**

A.   Correct.

Q.   And because deadly weapons, very deadly weapons can be made out of the things that aren't metal, correct?

A.   Correct.

Q.   They can be made out of wood, can't they?

A.   Yes.

Q.   They can be made out of plastic, can't they?

A.   Yes.

Q.   In fact, you know of a situation in California where inmates took a newspaper and they rolled this newspaper up really, really tightly on itself.  You know the situation I'm talking about, right?

A.   What institution?

Q.   It was a state facility in California.  You know the one I'm talking about?

MR. RUHNKE:  I would object about a state facility in California.

THE COURT:  Well --

BY MR. HEGYI:

Q.   It was still a secure facility.  I believe it was Lompoc?

A.   You said it was a state facility of California.  That's California Department of Corrections.

Q.   But now what --

THE COURT:  Wait, wait.  Give me the question again.

**Page 80**

MR. HEGYI:  Sure.  Sure.

THE COURT:  We have to have the premise clear, the foundation clear, so we can proceed.

MR. HEGYI:  Sure.

THE COURT:  Because you mentioned Lompoc, and Lompoc is not a state facility.

BY MR. HEGYI:

Q.   Let me back up.  You know ADX in Colorado, the supermax?

A.   Right.

Q.   You know of a situation there where a person ended up taking a newspaper, rolling it up tightly, and actually making a spear out of that, right?

A.   I'm aware of that single incident, yes.

Q.   And he took either plastic or fiberglass to harden it into a sharp point, didn't he?

A.   I don't know what he made it out of.  I'm aware of the situation, yes.

Q.   Okay.  And that person then when he was supposed to be cuffed up, and the guard came to the slot, and he actually jammed that spear through and tried to kill the officer, didn't he?

A.   I am not aware of the whole situation.  I've heard the situation.  I'm not aware of the particulars.

Q.   That's what you heard, right?

81

Case: 15-2347      Document: 35            Filed: 07/27/2016   Pages: 4186
Case 2:11-cr-00077-PPS-APR   Document 1485   Filed 03/02/15   Page 104 of 112

A.   Not that he jammed it.  He lunged at the staff with it.

Q.   Right, trying to kill him?

A.   Well, I didn't remember that.

THE COURT:  Trying to injure him.

THE WITNESS:  Injury, yes.

THE COURT:  Okay.

BY MR. HEGYI:

Q.   And this took place not too long after the situation in California where the inmates there rolled up a similar spear out of newspaper, hardened it, and they threw it through not one but two prison guards and killed them both?

MR. RUHNKE:  Your Honor, I object to that.

THE COURT:  Well, approach side bar for a proffer.

(Bench conference held.)

THE COURT:  Give me the proffer.

MR. HEGYI:  He's testified about this and/or he's been asked about this before.

THE COURT:  So you have him on record about that?

MR. HEGYI:  I have to look, but I know my expert Dodrill will be able to talk about this.  And they threw it through one and into another, killing them both.

THE COURT:  One thing is it happened.  Another thing is does he have knowledge.  And I'm asking, do you have evidence he has knowledge?

MR. HEGYI:  I think he does.  If you give me a

81

minute, I can go --

THE COURT:  Let me put it this way.  And perhaps we should take a five-minute recess so you can talk to him.  I'm getting the impression that he is not cooperating on the cross-examination, and if I get that impression, I'm going to open the door and let him do whatever he wants with him.  Is that clear?

MR. RUHNKE:  Your Honor, he's answering the questions.

THE COURT:  No, he's not -- listen.  You are talking to a Judge who's sat 27 years.  He's not cooperating with the cross-examination.  If he doesn't cooperate with the cross-examination, I'll let Mr. Hegyi do what he has to do.  So --

MR. RUHNKE:  Let's take a five-minute recess, and I'll tell him that.

THE COURT:  You better tell him that, because I'm going to do it.

(Bench conference concluded.)

THE COURT:  Let's take a five-minute recess.

COURT SECURITY OFFICER:  All rise.

(At 10:55 AM, recess taken.)

(At 11:04 AM, proceedings reconvened.)

THE COURT:  Please continue.

MR. HEGYI:  Thank you, Your Honor.

82

BY MR. HEGYI:

Q.   Mr. Bezy, you are aware of the situation in California I told you about, correct?

A.   Honestly, I'm not.  I hadn't heard of that.

Q.   You told us before ADX was open that the most secure facility in the U.S. Bureau of Prisons was USP Marion, correct?

A.   Correct.

Q.   And you are aware of a situation at USP Marion where -- and we know that inside of a prison facility, the most secure area inside, the most secure area is the SHU, right?  The special housing unit?

A.   Yes.

Q.   And you are aware that U.S. --

MR. RUHNKE:  I'm going to object to individual incidents of past violence in prison as creating the wrong impression that it's the norm.

THE COURT:  No.

MR. RUHNKE:  And there are lots of things that have happened.

THE COURT:  I think that the same way that you had the opportunity to present the side of the story how secure prisons are, Mr. Hegyi has the same right to present the incidents that happen in prisons so the jury has a complete picture.

83

MR. RUHNKE:  Yes, sir.

THE COURT:  Because the jury has never been in prison.  They were not correctional officers.  They have never visited one.  Probably they have never read about it.  And I think they have to have a complete picture.  That's all.

MR. RUHNKE:  Yes, sir.

BY MR. HEGYI:

Q.   And you are aware that within the most secure area, the SHU, at the time the most secure prison facility in the United States, Marion, that two different correctional officers were murdered on the same day?

A.   Yes.

Q.   Despite the best efforts and despite the fact that that was the most secure facility in the entire Bureau of Prisons at the time; is that correct?

A.   Correct.

Q.   And despite the fact that they were inside the SHU of the most secure facility, correct?

A.   It was a control unit, but it did happen, yes.

Q.   And one was killed first, and then later that same day the next one was killed, right?

A.   Correct.

Q.   Now, we were talking or you were talking with Mr. Ruhnke about the various series, 100 series, 200 series, 300 series, 400 series.  And these are all violations that the BOP has

84

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Respondent, | ) | |
| | ) | No. 02 C 6998 |
| v. | ) | |
| | ) | The Honorable William J. Hibbler |
| | ) | |
| DARRYL LAMONT JOHNSON, | ) | |
| | ) | |
| Defendant-Movant. | ) | |
| | ) | |

## MEMORANDUM OPINION AND ORDER

In 1997, a jury convicted Darryl Lamont Johnson for ordering the murder of a person assisting in a federal criminal investigation and ordering the murder of that person and another in furtherance of a continuing criminal enterprise, among 41 other counts. The jury later concluded that death was the appropriate sentence. The Seventh Circuit denied Johnson's appeal and the Supreme Court denied his petition for a writ of *certiorari*. *United States v. Johnson*, 223 F.3d 665 (7th Cir. 2000); *Johnson v. United States*, 534 U.S. 829, 122 S. Ct. 71, 151 L.Ed.2d 37 (2001).

Johnson then sought to set aside his sentence pursuant to 28 U.S.C. § 2255. In his petition, Johnson raised a number of claims, including a claim of ineffective assistance of counsel, a claim that the Government withheld exculpatory evidence in violation of *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L.Ed.2d 215 (1963), and a claim that his sentence was based on materially incomplete, false and/or inaccurate information in violation of the Eighth Amendment, *see Johnson v. Mississippi*, 486 U.S. 578, 584-86, 108 S. Ct. 1981, 1986-87, 100 L.Ed.2d 575 (1988). The Court denied Johnson's

1

**Exhibit C**

3179

Case: 1:02-cv-06998 Document #: 112 Filed: 12/13/10 Page 2 of 8 PageID #:1427
Case: 15-2347 Document: 35 ment 1485d: 07/27/2015 Pages: 4186 112
Case 2:11-cr-00077-PPS-APR Document 1485 Filed 03/02/15 Page 106 of 112

§ 2255 motion, holding that he procedurally defaulted all three of the aforementioned claims because he failed to raise those claims in his direct appeal.

A few years after the initial ruling on Johnson's § 2255 motion, the Supreme Court announced its decision in *Massaro v. United States*. 538 U.S. 500, 509, 123 S.Ct. 1690, 155 L.Ed.2d 714 (2003). In *Massaro*, the Supreme Court held that a petitioner may bring an ineffective assistance of counsel claim in a collateral proceeding whether or not the petitioner could have raised the claim on direct appeal. *Id.* Consequently, the Court vacated the portion of its ruling concerning Johnson's ineffective assistance of counsel claim.[1] Following discovery, the parties provided the Court with supplemental briefing on the merits of that claim. In addition, Johnson moves the Court to once again address his *Brady* and *Johnson* claims based on what he believes to be changes in relevant law and facts. For the following reasons, the Court grants Johnson's § 2255 motion based on his ineffective assistance of counsel claim. The Court therefore vacates his death sentence and awards him a new sentencing hearing. In addition, Johnson's motion for consideration of his other claims is therefore moot.

## I. Background

Johnson's ineffective assistance claim centers on trial counsel's efforts to convince the jury to impose a sentence of life imprisonment rather than one of death. At Johnson's sentencing, counsel presented evidence about the custodial options for housing him. In particular, Johnson presented evidence to suggest that if he were placed permanently in the control unit in ADX-Florence, where inmates are confined to their cells 23 hours per day and not allowed contact with other inmates, he

---

[1] Another judge in this district initially ruled on Johnson's § 2255 motion and the motion to reconsider pursuant to *Massaro*. The executive committee has since reassigned the case.

2

**Exhibit C**

Case: 1:02-cv-06998 Document #: 112 Filed: 12/13/10 Page 3 of 8 PageID #:1428
Case 2:11-cr-00077-PPS-APR Document 1485 Filed 03/02/15 Page 107 of 112
Case: 15-2347 Document 35 Filed: 07/27/2015 Pages: 4186

would have no opportunity to carry out a continuing criminal enterprise and his dangerousness to society would be mitigated.

In rebuttal, the Government called an expert, a Bureau of Prisons (BOP) warden, who had formerly served as Assistant Warden at ADX-Florence. That witness testified generally about what BOP placement was likely in Johnson's case. He testified that typically gang leaders like Johnson go to the general prison population, rather than some more restrictive setting. He also testified that even prisoners in strictly controlled environments had managed to commit crimes, including ordering the killing of other inmates. He stated that the BOP could not house prisoners in such strict conditions indefinitely. Finally, he claimed that prisoners cannot be directly assigned to the ADX-Florence control unit based solely on the offenses in the community. Instead, he said, the BOP could temporarily impose restrictions on an inmate, such as limited communication and association, if the inmate committed some infraction while in prison.

Not even one member of the jury accepted Johnson's proposed finding that he would not be "a serious and continuing danger to the society because the government has the power to imprison him for the rest of his life in a maximum security federal prison designed to control and monitor his behavior." The jury did find a number of aggravating factors, both statutory and non-statutory. In particular, the jury found that Johnson caused the killing after substantial planning and premeditation in the course of a continuing criminal enterprise that involved distribution of drugs to persons under the age of 21. It also found that he ordered the murder to obstruct justice by preventing the victim from testifying and caused harm to the victim's family. After its somewhat lengthy deliberations, the jury sentenced Johnson to death.

3

**Exhibit C**

3181

Case: 1:02-cv-06998 Document #: 112 Filed: 12/13/10 Page 4 of 8 PageID #:1429
Case: 15-2347 Document 35 ument 1485 Filed: 07/27/2016 15 Pages: 4186 112
Case 2:11-cr-00077-PPS-APR Document 1485d: Filed 03/02/15 Page 108 of 112

In Johnson's § 2255 motion, he argues that he was prejudiced by his trial counsel's failure to investigate the law and facts necessary to subject the Government's case on future dangerousness to meaningful adversarial testing. In short, Johnson suggests that trial counsel was ineffective in allowing the Government expert's testimony to go unrebutted.

Johnson argues that, contrary to the Government expert's testimony, there are laws which allow for the application of strict conditions of confinement for extended periods of time absent any infraction within prison in order to alleviate the risk a particular inmate poses to society. First, the BOP can control the conditions of confinement by employing Special Administrative Measures ("SAMs") authorized by 28 C.F.R. § 501.3(a). Second, courts can order restrictions on communication and association as part of a sentence pursuant to 18 U.S.C. § 3582(d). In fact, Johnson has presented evidence of a number of examples of such inmates in addition to those in his original motion.

## II. Standard of Review

In order to succeed on his claim of ineffective assistance of counsel, a § 2255 movant must meet both prongs of a test set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L.Ed. 2d 674 (1984). First, he must show that his counsel's performance was deficient. *Id.* at 687, 104 S. Ct. at 2064. In this case, the Government concedes the point, agreeing with Johnson that his trial counsel did not effectively impeach the testimony of the Government's expert regarding Johnson's future dangerousness. Instead, the Government disputes only whether Johnson can satisfy the second prong of the *Strickland* test. Thus, Johnson must show that his counsel's deficient performance prejudiced his defense. *Id.* More specifically, he must show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694, 104 S. Ct. at 2068.

4

**Exhibit C**

3182

Case: 1:02-cv-06998 Document #: 112 Filed: 12/13/10 Page 5 of 8 PageID #:1430
Case: 15-2347 Document: 35 ment 1485 Filed: 07/27/2016 15 Pages: 4186 112
Case 2:11-cr-00077-PPS-APR Document 1485 Filed 03/02/15 Page 109 of 112

A "reasonable probability," for purposes of this standard, is "a probability sufficient to undermine confidence in the outcome" of the penalty phase of Johnson's trial. *Id.* The standard is lower than the more familiar "preponderance of the evidence" standard because an ineffective assistance claim "asserts the absence of one of the crucial assurances that the result of the proceeding is reliable, so finality concerns are somewhat weaker." *Id.* However, Johnson must show more than that his counsel's errors "had some conceivable effect on the outcome of the proceeding." *Id.* at 693, 104 S. Ct. at 2067.

### III. Analysis

In addition to conceding that Johnson's counsel was deficient, the Government conceded at the *certiorari* stage of Johnson's direct appeal that the testimony of the Government's expert was incomplete because he failed to mention 28 C.F.R. § 501.3 and 18 U.S.C. § 3582(d). The Government admitted that the testimony may have left the jury with the mistaken impression that neither the BOP nor the Court had the authority to impose certain restrictions on an inmate immediately upon sentencing. Nonetheless, the Government argues that Johnson cannot show that defense counsel's failure to impeach the witness on those matters created a reasonable probability that the jury would not have sentenced Johnson to death.

For a number of reasons, the Court rejects the Government's argument. First, the Court finds that the probability that the errors affected Johnson's sentence is higher in this case than in some because the errors were relevant to the issue of future dangerousness. The Court recognizes the importance of the fact that the jury in Johnson's case found a number of aggravating factors that did not relate to Johnson's future dangerousness. But the Court finds that future dangerousness, and the Government's ability to protect against it, is an especially important factor in death penalty cases generally, as well as in this case particularly.

5

**Exhibit C**

On this point, the Government's closing argument from the penalty phase of Johnson's trial is telling. The Government devoted a significant portion of its arguments in closing and rebuttal to the issue of future dangerousness and the likelihood that Johnson could not be controlled in prison - perhaps more than to any other aggravating or mitigating factor. The Government's language on these points was strong and clear. The Government stated that "as long as [Johnson] has the ability to convey his orders to his followers, either on the street or in prison with him, nobody is safe; no witness, no witness's family, anybody who stands in his way, they are not safe. It doesn't matter where he is locked up." (Tr. 2593.) Moreover, the Government reiterated the admittedly incomplete and misleading testimony of its expert by stating, among other things, that Johnson would not be going to the control unit at ADX-Florence because federal regulations would not allow it. (Tr. 2645.) The Government's focus on these points suggests that it recognized the potential importance of this factor on the jury's decision in this case.

This conclusion also finds support in the empirical research on the subject. A number of studies suggest that future dangerousness is one of the most issues, if not the most significant, for juries deciding whether or not to sentence a defendant to death. *See, e.g.,* John H. Blume, et al., *Future Dangerousness in Capital Cases: Always "At Issue"*, 86 Cornell L. Rev. 397, 404 (2001); Stephen P. Garvey, *Aggravation and Mitigation in Capital Cases: What do Jurors Think?*, 98 Colum. L. Rev. 1538, 1559-60 (1998); Sally Costanzo & Mark Costanzo, *Life or Death Decisions: An Analysis of Capital Jury Decision Making Under the Special Issues Sentencing Framework*, 18 Law & Hum. Behav. 151, 160 (1994) ("[n]early all jurors [surveyed]...offered the observation that the penalty decision hinged on the issue of whether the defendant would pose a continuing threat to society").

6

**Exhibit C**

3184

Johnson also points to an analogous case that illustrates the importance that this factor can have on a jury. In that case, *United States v. Jones*, No. CR-96-458-WMN (D. Md.), a jury convicted Jones of ordering the murders of federal witnesses, including one while he was incarcerated in a federal prison. The *Jones* jury found a number of the same aggravating factors as the jury did in this case, including that he was a future danger and a "continuing and serious threat to society." However, seven members of the jury also found that:

> Any concern respecting future dangerousness of Anthony Jones is significantly reduced since the Federal Bureau of Prisons is empowered to classify a prisoner serving a life sentence without possibility of release to the highest security level federal prison, under conditions of confinement that eliminate any reasonable probability that the prisoner will be a continuing and serious threat to society.

The jury did not sentence Jones to death. Johnson notes that the jury in the *Jones* case heard testimony regarding the restrictive conditions that could be imposed on Jones and that had been imposed in another case.

The Government is right to note that the fact of every case and make-up of every jury varies, and that it would be wrong to assume that the jury would do the same in Johnson's case as the jury did in Jones's case if Johnson had effective assistance of counsel. But, the Government is notably silent in its brief on how the two cases are distinguishable. And the similarities between the facts of these two cases which have different results undermines the reliability of the result in Johnson's case further.

As discussed above, Johnson faces a relatively low burden in this case. Given that "it only takes one juror to nix a death sentence," *United States v. Johnson*, 223 F.3d 665, 670 (7th Cir. 2000), he only needs to show a reasonable probability that one juror would have changed his or her mind during the course of the lengthy deliberations in this case. Johnson has shown that his future dangerousness, the

7

**Exhibit C**

3185

Case: 1:02-cv-06998 Document #: 112 Filed: 12/13/10 Page 8 of 8 PageID #:1433
Case 2:11-cr-00077-PPS-APR Document 1485 Filed 03/02/15 Page 112 of 112
Case: 15-2347 Document: 35 Filed: 07/27/2016 Pages 4186

factor admittedly affected by his counsel's errors, was likely an important factor in the jurors' minds, weighing heavily on the scale for measuring aggravating and mitigating factors. Given this showing, the Court finds that there is a reasonable probability that if Johnson had effective assistance of counsel, the jury would not have sentenced him to death. He has sufficiently undermined the reliability of the penalty phase of his trial. Thus, the Court GRANTS Johnson's § 2255 motion, VACATES his death sentence, and ORDERS that he be given a new hearing before a jury to determine his sentence.

IT IS SO ORDERED.

_____12/13/10_____
Dated

_____
Hon. William J. Hibbler
United States District Court

8

**Exhibit C**

3186

UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

* * * * * * * * * * *      *
                                   *
UNITED STATES OF AMERICA,    *  Case No 6cr160(JBA)
                                   *
          Plaintiff,         *
                                   *
     vs.                     *
                                   *
AZIBO AQUART                 *  June 6, 2011
                                   *
          Defendant.         *
                                   *
* * * * * * * * * * * *      *

TRIAL TRANSCRIPT

VOLUME XXVII

BEFORE:  THE HONORABLE JANET BOND ARTERTON U.S.D.J.,
                                        and jury

Appearances:
FOR THE GOVERNMENT:   ALINA REYNOLDS, ESQ
                      TRACY DAYTON, ESQ.
                      PETER MARKLE, ESQ.
                      JACABED RODRIGUEZ-COSS
                      United States Attorney's Office
                      915 Lafayette Blvd
                      Bridgeport, CT 06604


FOR THE DEFENDANT     MICHAEL SHEEHAN, ESQ
AZIBO AQUART:         Sheehan & Reeve
                      139 Orange Street
                      New Haven CT 06510

                      JUSTIN SMITH, ESQ.
                      383 Orange Street
                      New Haven, CT 06511



Court Reporter:       Sharon Montini, RMR

Proceedings recorded by mechanical stenography,
transcript produced by computer

**Exhibit A**

that correct?

A.    Somewhere around there, yes.

Q.    And he was in fact paroled.

A.    Yes.

MS. RODRIGUEZ-COSS:  We have nothing further, your Honor.

THE COURT:  All right, anything further?

MR. SMITH:  Nothing further, your Honor. Thank you.

THE COURT:  Thank you, Ms. McCoy, you are excused.  You may step down.

Will you please call your next witness.

MR. SHEEHAN:  Call Mark Bezy, your Honor.

THE COURT:  All right, Mr. Bezy, would you come over to the witness stand, please, and please stand and raise your right hand.

                    M A R K    B E Z Y

Having first affirmed, was examined and testified as follows:

THE WITNESS:  Mark Bezy, B-e-z-y.  I live in San Tan Valley, Arizona.

THE COURT:  You may proceed.

DIRECT EXAMINATION

BY MR. SHEEHAN:

Q.   Good afternoon, Mr. Bezy.

A.   Good afternoon.

Q.   Can you tell us, sir, what you are doing for a living right now?

A.   I own a correctional consulting company.

Q.   And what do you do in a correctional consulting company?  What kind of services do you provide?

A.   I provide services to attorneys.  I've worked with some federal defender's offices regarding manners of -- matters of corrections and prison environments.

Q.   And is there a name for that company or is it just --

A.   It's Mark A. Bezy & Associates.

Q.   And are there other people that work with you in that company?

A.   I do get some advice from other people at times, yes.

Q.   And prior to working in that -- how long have you been doing that kind of living -- that kind of work as a consultant?

A.   From about 2008 to today.

Q.   Okay.  And prior to going into consulting, did you have another business that you were involved

with?

A.    From 2006 to 2008, I was an independent contractor for a company out of Texas called Creative Corrections.  They had the contract for the Immigrations and Custom Enforcement Agency and we were hired to go around and conduct their annual retention reviews of facilities that held ICE detainees.  We would spend three to four days there and compile a written report for ICE.

Q.    And where were those reports submitted to?  When you say to ICE, what would happen in those reports?

A.    They were sent to the company in Texas and then they would forward them up to Washington D.C., to the ICE office up there.  And then it would come back to the district that had the facility we audited them in.

            THE COURT:  And ICE means what?

            THE WITNESS:  Immigration Customs Enforcement.

            THE COURT:  Thank you.

Q.    That used to be the immigration department, basically?

A.    Right, used to be immigration services, INS or -- yeah, INS.

Q. Immigration and Naturalization Services.

A. Naturalization services.

Q. And prior to working for that Creative Corrections, were you also involved in correctional activity? Did you have another job?

A. Prior to, yes. I retired in 2006 from the federal Bureau of Prisons.

Q. Okay. And in that little gap in between your retirement in 2006 and then going to Creative Consultants, what did you do?

A. I retired in 2006 and I went to work -- I went to work for the GEO Group out of Boca Raton, Florida. It's a private prison company. I ran a private prison in Florence, Arizona. Our client was the Arizona Department of Corrections.

Q. And how many inmates were in that facility?

A. I ran a thousand-bed sex offender unit down there.

Q. How many staff would have been generally -- how many staff were involved in that facility?

A. With the programming and security staff we probably had a couple hundred.

Q. Now, you mentioned that prior to that you were involved -- you were an employee of the federal Bureau of Prisons, correct?

**Exhibit A**

A.   Correct.

Q.   I'm going to kind of flip this around and instead of going from recent, I'm going to go back and ask you when it was that you started working for the Department of Corrections?

A.   I started 1978 as a correctional officer at the federal -- a correctional institution in Oxford, Wisconsin.

Q.   What is your educational background?

A.   I have a Bachelor of Science from the University of Nebraska in criminal justice.

Q.   And did you have your Bachelor's degree when you started with the Department of Corrections?

A.   Yes.

Q.   And what was your -- what were your first responsibilities as a correctional officer?

A.   Basically to operate the inmate housing unit, supervise the inmate details and provide security and correctional coverage for the institution.

Q.   And this you mentioned was in Oxford, Wisconsin?

A.   Correct.

Q.   What level of facility was that?

A.   Oxford at that time was a medium security

facility.

Q.   And how long is it that you stayed at Oxford; if you can recall?

A.   I believe it was approximately five years.

Q.   And after Oxford, what was your next assignment within the federal correctional center?

A.   I was promoted to GS-9 lieutenant at the federal prison camp in Duluth, Minnesota.  I activated that facility.

Q.   And let me ask you, what's the difference between a camp and a medium security facility?

A.   A camp has no perimeter security.  The inmates are usually -- well, they're all low to community custody inmates, they don't require a secure perimeter.

Q.   So is there even like a picket fence around it?

A.   No.

Q.   And how about a medium level facility, what is -- what distinguishes that from a camp?

A.   Everything above a camp -- at a minimum security we had a double perimeter fence, chain linked with razor wire, man barrier wire in between, and outside we ran armed mobile patrols 24 hours a day.

**Exhibit A**

Q.    What's the man wire?

A.    Man barrier wire.

Q.    What is that?

A.    It's a fancy name for barbed wire, concertina wire.  It's designed differently.  It's designed to -- if you get into it, it actually fights you.  I mean, it's there as a deterrent to keep people in a prison.

Q.    Okay.  And, now, you set up the camp you mentioned in Minnesota, was that your next assignment?

A.    Correct.

Q.    And then after that did you go to another institution within the Bureau of Prisons?

A.    Yes.  I was transferred to the federal correctional institution in Phoenix, Arizona as a GS-11 lieutenant for activation of that facility.

Q.    And what's entailed?  What's meant by activation of the facility?  What are you doing when you are activating a facility?

A.    It was a brand new facility.  We went in and we had to write the policies and procedures for it, we had to hire the staff, we had to get the institution ready for receiving medium security inmates.

**Exhibit A**

Q.   And how long -- and what was -- that's called an FCI?

A.   Yes.  FCI.

Q.   What level of security would the FCI be?

A.   Phoenix was a medium.

Q.   Okay.  So you started at a medium, then went to the camp and then to a medium facility --

A.   Correct.

Q.   -- is that sort of the trajectory?

And after working with the Bureau of Prisons in Arizona, where did you go next?

A.   I was transferred then to western regional office in Belmont, California.  I was the assistant correctional service administrator there.  My job duties there were involved with overseeing the inmate disciplinary transfer for disciplinary purposes for inmates, close supervision transfers, conducting compliance reviews of the facilities within the region.  And I was also the agency representative on the California prison gang task force.

Q.   But you were in Belmont, but you were working with people in California; is that correct?

A.   No, Beaumont was after I retired.

Q.   I'm sorry.

A. Belmont, California. Belmont. Right.

Q. And how long were you at Belmont?

A. Approximately 18 months to two years.

Q. Is it -- for people in a management track, is it common that they move around within facilities in the Bureau of Prisons?

A. Yes.

Q. After Belmont, where did you go next?

A. I was moved, I was transferred to the federal correctional institution in Raybrook, New York, it was a medium security male institution, as captain.

Q. Okay. So you had been lieutenant, now you are jumped up to captain?

A. Correct.

Q. And at Raybrook, what were your general responsibilities there?

A. I was responsible for the daily operation of the correctional services department overseeing the lieutenants and the correctional staff and ensuring that the institution was safe and secure.

Q. And how many inmates were at Raybrook when you were there, roughly; if you can recall?

A. I believe about 900.

Q. And how many staff would you have been

supervising at Raybrook?

A.    Probably around 150.

Q.    And is it -- let me ask you this:  You had your Bachelor's degree when you went to the Bureau of Prisons.  Was that pretty much a job requirement at that time?

A.    It wasn't a requirement but it did help having a degree, yes.

Q.    And do most of the federal correctional officers have a Bachelor's degree or more?

A.    Today, yes.

Q.    And what is the, I guess for want of a better word -- let me ask you this:  What is the mission statement for the federal Bureau of Prisons?  What's your responsibility?

A.    It's to safely house and incarcerate offenders in a secure facility.

Q.    So now we've got you up to Raybrook.  And from Raybrook, where did you go next within the Bureau of Prisons?

A.    I was promoted to captain at the Federal Medical Center in Lexington, Kentucky.

Q.    And what's a medical center?

A.    It -- when I first went there it held females, female offenders.  Then we went to a coed

population for a short period of time, and then it was moved to back to a male population.

But it was to provide medical treatment, hospitalization for sick offenders.

Q.   And after Lexington, where did you go next?

A.   Then I moved to the United States Penitentiary in Marion, Illinois as captain.

Q.   And how long were you in Marion?

A.   Approximately three and a half years.

Q.   That's a different level facility than either the medium or the camp; is it not?

A.   Correct.

Q.   What's the difference between U.S. penitentiary and a medium level security?  I guess those are called FCIs, are they?

A.   Correct.

Q.   So, let's call it a USP, United States penitentiary, versus an FCI.  What's the difference?

A.   At a USP there is more physical security, there is a higher staff to inmate ratio, and there is just more -- there is more control and it's more of a restrictive environment than at an FCI.

Q.   When you say there is more staff to inmate, what is the -- at least when you went to Marion, what was the ratio of staff to inmates?

**Exhibit A**

A.    I had -- I had responsibility for approximately just under 400 inmates and I had 250 staff.

Q.    And where was -- so you said you were there for three years at Marion?

A.    Correct.

Q.    And at that time where was Marion in the sort of hierarchy, as it were, of penitentiaries? Was there anything unique about Marion at that time?

A.    Marion was the most secure facility in the Bureau of Prisons.  It had three functions:  It housed the control unit.  It had a general population, which is -- which was totally different from a regular population.  It was very restrictive. Inmates were allowed out of their cell for approximately 12 hours a week.  When they were out of the unit they were in handcuffs.  All the staff carried batons, and the staff had constant hands on of the restraints when an inmate was out of the unit.

Q.    Now, within the Bureau of Prisons, the levels of facility, are there more than one penitentiary?

A.    Yes, there is approximately 16 penitentiaries today.

**Exhibit A**

3199

Q.   Okay.   And is the level of security in the United States penitentiaries, are they generally consistent with each other?

A.   Yes.

Q.   And do they have essentially the same policies and procedures within the penitentiaries?

A.   They're all governed by national policies and procedures, but the warden has the right to implement local procedures, some local procedures, too.

Q.   And while you were at Marion, were you involved with setting up another facility within the Bureau of Prisons?

A.   At that time they had made the decision to move the mission of Marion to the administrative maximum facility they had just built in Florence, Colorado.  So in '95 we moved the general population and the control unit from Marion, Illinois over to the ADX.

Q.   Okay.  And is ADX the kind of pinnacle control unit within the Bureau of Prisons now?

A.   Yes, it's the only facility of that type in the Bureau.

Q.   And that's in Florence, Colorado, is it not?

**Exhibit A**

A.    Correct.

Q.    And between the ADX and the U.S. penitentiaries, are there other facilities within the Bureau of Prisons that are -- sort of fit in that more restrictive area?

A.    Yes, currently there is three what they call SMU, special management units.  Lewisburg, Pennsylvania was converted from a regular open population penitentiary to an SMU.  There is a unit in Talladega, Alabama, and Oakdale, Louisiana, too.

Q.    And what's the difference between an SMU and a United States penitentiary as far as the level of control over inmates?

A.    At an SMU inmates are confined in their cells.  There is single recreation or small group recreation.  They're there for anywhere from 18 to 24 months.  They have to complete a phase program before they're released back to population.  And there is no guarantee they'll complete the phases.

Q.    Okay. And so we've got these SMUs.  And is there another level of facility somewhere between the SMUs and the ADX?

A.    There is one what they call CMU, communication management unit in Terre Haute, Indiana.

**Exhibit A**

3201

Q.    What's the difference between a CMU and, say, a United States penitentiary?

A.    The CMU inmates are placed in there for monitoring, very strict monitoring of their communications, whether it's verbal, written, any contact they have with anyone outside the prison.

Q.    Okay.  Now, after Marion, where did you go next within the Bureau of Prisons?

A.    I was promoted then to the correctional services administrator in the north central regional office in Kansas City, Missouri.

Q.    And what area of the country does that north -- is it the north central?

A.    Correct.

Q.    What area, what states does the north central office control?

A.    We controlled Colorado, Illinois, Wisconsin, Minnesota, Missouri.  Basically the north central portion of the United States.

Q.    And how many institutions are there, or were there at that time in that region?

A.    I believe at that time there was 16 to 18.

Q.    And what level of facilities were there within the north central region in the Bureau of Prisons?

A.    We had the -- we had all securities from the ADX in Colorado to prison camps.  We had high rises in Chicago, metropolitan correctional centers that housed -- they're administrative level where we can house all security levels of individuals.

Q.    And what were your general responsibilities as a correctional services administrator?

A.    I was the resource person for all the institutions in that region regarding security and correctional practices.  I conducted, again, audits and reviews of the facility operations.  I was involved with the -- myself and my staff oversaw the disciplinary transfer process of the inmates.  I was involved in the initial placement of inmates in the ADX, the control unit, and also it would go on into special reports for the regional director or Washington as needed, do after-action reports.

Q.    And in that context as a correctional service administrator, did you meet with your other colleagues in other -- who were at similar levels in other regions of the country?

A.    Yes.

Q.    And did you become aware of the facilities that those individuals were supervising?

A.    Yes.

**Exhibit A**

Q.   And how close a contact as a correctional service administrator would you have with, say, well, like the northeast region?  Would that be a regular contact?  Or how often would you be talking to those people?

A.   You'd probably talk to them on a weekly basis, if not more, because if I had a difficult problem in my region that I needed to place in his region, I would have to contact him and see if he would accept the case.  Or he'd contact me to see if I would accept cases out of his region.

Q.   And when you say a difficult contact -- I think you used the word a difficult contact or something.

A.   A management issue.

Q.   Okay.  And would that include moving inmates?

A.   It would -- we would approve them, I would accept them into the north central region into a facility.  They would accept them into the northeast.  But the movement was coordinated by the -- by a different group within the BOP and the marshals service.

Q.   The physical movement?

A.   The physical movement, correct.

Q.   That's where you'd go to Oklahoma or something to get to next door?

A.   Yeah, correct.

Q.   Okay.  And after serving as a correctional -- how long did you do that, the correctional service administrator?

A.   I believe it was about approximately three and a half years.

Q.   And after that did you get another position within the federal Bureau of Prisons?

A.   I was promoted to the associate warden at the United States penitentiary in Leavenworth, Kansas.

Q.   So, would this be the second United States penitentiary that you were directly involved with, one in Marion and now at Leavenworth?

A.   Correct.

Q.   But in the course of your service as a correctional service administrator you were well familiar with other policies and procedures in other United States penitentiaries?

A.   Correct.

Q.   And how long did you serve as an associate warden at Leavenworth?

A.   I believe it was three, three and a half

years.

Q.    And what are the job responsibilities of an associate warden?  What do you do there?

A.    When I first went there I was associate warden of custody where I oversaw, I was responsible for the correctional services department, and ISM, and I believe one other small department.  We housed 1200 high security inmates.  We developed security operations and programs for the inmates.

Q.    Okay.  And after -- so you are an associate warden at Leavenworth.  How many staff did you supervise?  I'm sorry, if you've already said it.

A.    At Leavenworth it was probably I think 200 and -- I think it went to high it was 230 plus and at the low maybe 220.

Q.    And how many adults were at the high security facility at Leavenworth when you were there?

A.    We averaged approximately 1200.

Q.    And after Leavenworth, where you were an associate warden, did you get another promotion within the Bureau of Prisons?

A.    I was promoted to the warden at the federal correctional institution in Elkton, Ohio.

Q.    And how long did you remain as a warden at

that facility?

A.   I believe it was two years.

Q.   Okay.  So you called it federal correctional institution, so that's basically -- now you are back to a medium level facility?

A.   At that time Elkton was a low security.  It had a double secure perimeter and it also it had what we call a satellite low.  It was a hybrid institution, kind of between a camp and a low.  It was a camp that somebody had put a single fence around and made it a secure facility.  It was something the Bureau had done at a couple locations.

Q.   And how long did you stay in Elkton?

A.   Approximately two years.

Q.   And after Elkton did you get another promotion within the Bureau of Prisons?

A.   I was promoted to the warden at the United States Penitentiary in Terre Haute, Indiana.

Q.   And what is the -- how many inmates are at Terre Haute in the United States penitentiary there?

A.   I was there -- when I arrived we were in the process of constructing and activating a new penitentiary there, too.  So initially we had approximately 900 inmates in the old original penitentiary, which was built in the 1930s.  We

**Exhibit A**

brought the new penitentiary online and we moved that population from the old penitentiary into the new penitentiary.  And at the same time we backfilled the old penitentiary with medium security inmates.  So -- and I had a federal prison camp there.  When it was all over, I had approximately 3500 inmates.

Q.   And is that also where the federal death row is?

A.   Correct.

Q.   And how many inmates are there on the federal death row?

A.   There --

Q.   Or were at that time?

A.   At that time there was approximately 35 to 37.

Q.   And how large a staff was it that you were supervising as the warden in Terre Haute?

A.   I had a staffing complement of 650 staff. I was responsible for the three facilities.  So I had -- I oversaw all three facilities.

MR. SHEEHAN:  Your Honor, at this time I would offer Mr. Bezy as an expert in the Bureau of Prisons practices, policies and procedure.

MS. DAYTON:  No objection.

**Exhibit A**

3208

THE COURT:  Then Mr. Bezy will be so qualified and the jury will remember the earlier instruction of what that means.  All right.

Q.   And how long was it, sir, that you remained at Terre Haute?

A.   Approximately two years.

Q.   Now, in this case at my request, sir, have you reviewed the prison records for the defendant, Mr. Aquart?

A.   Yes.

Q.   Before today you never saw Mr. Aquart, did you?

A.   No.

Q.   Before you walked in this courtroom.

A.   No, I had to look for him.

Q.   And that included his records from the Connecticut Department of Corrections and the Wyatt Detention Facility in Rhode Island?

A.   Correct.

Q.   And in addition, sir, you are aware, are you not, you've been informed that Mr. Aquart has been found guilty of violations of federal law as regards his role in the murders of three people who were beaten to death in the context of drug cases?

A.   Yes.

Q.   Actually, before we go on further on the specifics as to Mr. Aquart, can you tell us, sir, what -- and tell the members of the jury, what is the process by which the Bureau of Prisons gets an inmate?

A.   There is a guilty finding in a court, then there is a -- the court, the judgment and commitment paperwork is sent to the Bureau of Prisons.  It's a little bit different today, it changed right after I retired in '06.  But when I was in, it would go -- each region had its own regional designator.  The paperwork would come to a regional designator.  They would determine based upon review of the material, past criminal history, the instant offense, they would determine what security level the individual met or required, and then they would assign him to a facility.

Q.   And is there a role in that process for a recommendation from the court?

A.   Yes.

Q.   And is there a role in that process for a recommendation from the United States attorney's office?

A.   Yes.

Q.   And I take it ultimately it's up to --

well, actually, the Bureau of Prisons itself is within the Department of Justice, is it not?

A. We are a component of the Department of Justice.

Q. And the Department of Justice is headed by the Attorney General of the United States?

A. Yes.

Q. Now, are there a set of general procedures that the Bureau of Prisons follows in determining what level of facility an inmate should be sentenced to?

A. Yes. The Bureau uses a classification process where, again, like I said, they'll look at the past criminal record, the conviction of the instant offense, and any other data that's provided, the presentence report, and they'll make a determination on what security needs the individual requires, and then they'll place him at the appropriate facility.

Q. And let's say somebody, for example, had no prior criminal record and was convicted of a nonviolent offense, where would such a -- and was sentenced to, say, a sentence of less than three years. Where would that individual likely be housed within the Bureau of Prisons?

**Exhibit A**

A.   More than likely, based upon if it was no violence in the background, they would probably go to a federal prison camp.

Q.   And let's say that somebody was sentenced to a -- was convicted of a crime of violence, but had a sentence of approximately -- had no prior criminal record, had a sentence of approximately five to 10 years, where would that person likely be sentenced within the -- where would that person likely be designated within the Bureau of Prisons?

A.   At a minimum -- it would be at a low secure facility, and it may even be at a medium security facility based upon the violence.

Q.   And let's assume that an individual is convicted of a federal offense in Connecticut where would that individual -- well, let me ask you two questions:  First of all, where would that individual likely be sentenced?  Let's say it is a medium -- it would be a medium facility, an FCI. Where would that person likely be designated to?

A.   The Bureau likes to try to keep an inmate within a 500 mile radius of their home, but based upon the population pressures today that is just -- its almost impossible.  So, it comes down to wherever the bed space is.  So it could be one of

**Exhibit A**

anywhere around the country at that point.

Q. And are you aware of any limitations on where the Bureau of Prisons can send an inmate to complete his or her sentence?

A. No, the Bureau has that discretion to assign inmates to the institutions.

Q. And in assigning individuals to institutions, in addition to the circumstances of their particular crime, does the Bureau of Prisons take into account any other factors?

A. Can you repeat that?

Q. Yeah, maybe it's -- well, let me ask you this: Do they try to separate individuals? Are there separation procedures generally in effect or considered in making classification determinations?

A. If there -- if they're made official separatees, that's a process we will go by based upon written documentation of cooperation, something that happened in the past, where those two inmates would never be in the same facility at the same time.

Q. Okay. And that kind of cooperation, that kind of documentation is typically provided, is it not, by the U.S. attorney's office?

A. Yes, it can come from them.

**Exhibit A**

3213

Q.   And it can also come from intelligence garnered within the Bureau of Prisons itself?

A.   Correct.

Q.   And alternatively, sometimes the Court may have some impact on that --

A.   Yes.

Q.   -- in terms of a recommendation.

But ultimately, that's up to the Bureau of Prisons.

A.   Yes.

Q.   And how many inmates are there at the present time who are actually serving time within the Bureau of Prison facilities, federal Bureau of Prison facilities?

A.   The Bureau has the responsibility for 216,000 offenders, but only approximately 179,000 of those are actually in the federal Bureau of Prisons physical custody.

Q.   And of those 179,000 -- is that what you said?

A.   Correct.

Q.   Of those 179,000 individuals, how many of those are serving a sentence of life without release?  Natural life.

A.   From the data I looked at last week,

approximately 6100.

Q. Now, I'm asking you to assume, sir, for a moment -- actually before we make any assumptions, you know, do you not, that the options that are before this jury in sentencing Mr. Aquart are either a sentence of life without release or the death sentence.

A. Yes.

Q. You are aware of that. I'm going to ask you to make an assumption for us here, sir, that in the event that the jury's decision here would be a sentence of life without release, if the jury were to sentence Mr. Aquart to a sentence of life without release, in view of his -- in light of his records that you've reviewed and the actual circumstances of this case, do you have an opinion on what level of facility he is most likely to be designated to?

A. At a minimum he would go to United States penitentiary.

Q. Okay. And, again, is there a role for the U.S. attorney's office in at least sending recommendations in that regard?

MS. DAYTON: Objection.

A. Yes.

THE COURT: Basis?

**Exhibit A**

3215

MS. DAYTON: There is no basis for that.

THE COURT: That's cross-examination. All right. The question was, is there a role for the U.S. attorney's office in at least sending recommendations in that regard.

Is that really the way you wanted to ask that question?

MR. SHEEHAN: Yes. Did it sound -- as your Honor said, maybe I'll -- you did quote me, your Honor. Let me ask you that.

Q. Were you involved in classification issues at any point in time in your career within the Bureau of Prisons?

A. Yes.

Q. Does the Bureau of Prisons consider requests from the U.S. attorney's office as far as level of facility for an inmate?

A. Yes.

Q. And similarly, does the Bureau of Prisons not only request, but in fact entertain suggestions from the court as far as the level of security of an inmate?

A. They consider it, yes.

Q. But ultimately it's up to the Bureau of Prisons, right?

A.   Yes.

Q.   And can you -- so, in response to my question, where would Mr. Aquart likely be designated to, your answer to that is?

A.   At a minimum it would be a United States penitentiary.

Q.   Can you, sir, based upon your 20 -- let's see, 20-plus years of service with the -- actually 27 years -- how long were you with them?

A.   Twenty-eight.

Q.   Twenty-eight years.  Based upon your 28 years of experience with the Bureau of Prisons, and your knowledge to date, can you imagine any circumstances under which Mr. Aquart would be sentenced to a facility of a lower level of security than a United States penitentiary?

A.   No.

Q.   Now, within a United States penitentiary, how is it, sir, that -- are there methods of discipline that are available within a United States penitentiary?

A.   There are methods of discipline with all federal Bureau of Prison facility.  There is a program statement on inmate discipline where if an inmate violates one of the standards of inmate

discipline he's afforded normally a hearing, and

then it can be handled at the UDC unit team level or

it can go up to the disciplinary hearing officer who

can sanction an inmate into disciplinary segregation

status.

Q.   And tell me, can you tell us, sir, what it

is -- let's -- let me ask you this:  What is the

daily regimen for an inmate who is in a United

States penitentiary?  Not in any kind of

disciplinary status, but what's the regular kind of

schedule like on a day-to-day basis?

A.   At the most it's a two-man cell.  The cells

are unlocked approximately anywhere between 5:30 to

6:00 a.m. In the morning inmates are given an

opportunity to take a shower, get cleaned up.  Then

there is chow call that is called.  The doors to the

units are opened up for a period of ten minutes at a

time.  Inmates walk to the dining room, they're

given approximately 20 to 30 minutes to eat their

meal in the morning, and then they're called back to

the unit.  There would be a work call.  Inmates that

are working would go to their job assignments.

Q.   Before we -- let me interrupt you just

there and ask you, you mentioned a work call.  Is

it -- is it up -- are all inmates in a United States

**Exhibit A**

3218

penitentiary, do they all have jobs?

A.    Yes.    Unless they're medically unable to work, yes.

Q.    And suppose an inmate just doesn't want to work?

A.    He doesn't have a choice.    He's locked up.

Q.    So, we got to they go off to work.    Then what happens?

A.    Then the inmates that are not on work status would go to programming.    If they're on their day off they would have the opportunity to go to recreation.    Approximately around 10:30 in the morning all the activities would cease.    Inmates in the programming areas would return to their units. Approximately -- then you would have the dining room call for diabetics, people that require special meals.    At approximately 11:00 a.m., then the dining room is open.    It's called by work detail.    After you feed the work details, then you call the units. Then everybody goes back to work.    Then it's the same process, where it's either programming in the afternoon or recreation for day off people.

At approximately 3:30 there is a recall, all of the inmates report back to their unit unless they're on an official outcount, and those outcounts

**Exhibit A**

are at a minimum normally for food service or

emergency work details.  Then at 4:00, okay --

Q.   I want to interrupt you.  An outcount,

what's with all of this counting.  Why are you doing

that within a penitentiary?

A.   That's one of our systems.  That's how we

know, we maintain who we have.

Q.   Okay.  And how often a day do you --

basically does everybody get counted?

A.   Everybody gets counted normally at least

five times a day, official counts.  Then there is

detail accountability checks at four o'clock, there

is what we call a stand-up count where all inmates

have to be standing in their cells.  That's an

official four o'clock stand-up count.

Then after that is cleared where

everybody is there, the dining room is open for the

evening meal.  Again, they're called by unit to the

evening meal.  After the dining room is cleared,

then the yard can be opened back up.  Usually at

about, depending on the darkness, at dusk the

inmates are recalled back into their units.  Terre

Haute, at 8:45 we locked them in their cells for the

evening.

Q.   And you mentioned -- let's deal with

**Exhibit A**

Terre Haute because that was the most recent penitentiary you were at.  Is there a physical barrier around that facility?

A.  The new institutions that the -- the new model they're building, the new institutions -- well, the old one too, had a double chain linked fence.  It had gun towers on the perimeter, and the new one, the design of the facility, there is a double chain link fence and then the design of the facility, everything is encapsulated in kind of a circular, the rec yard, everything enters into the center of the structure itself where inmates can no longer see outside.  If they want to see light, they have -- the sky is there, but there is no windows that show the outside anymore.

Q.  And you mentioned these gun towers.  Are those gun towers manned throughout the day?

A.  At the new penitentiaries there is a center gun tower that's manned.  Normally, I manned mine 24 hours a day.  Some institutions man them just for 16 hours a day.  But there is a physical center tower inside the institution.

Q.  Are correctional officers typically armed?

A.  Inside, no.

Q.  And why is that?

A.    If they're armed it could be taken away.

Q.    Okay.  And with respect to these gun towers, are those accessible by inmates?

A.    No.

Q.    And I take it the officers in the -- by definition, those officers in the gun tower, they are armed, are they not?

A.    Correct.

Q.    With rifles basically?

A.    There is a variety of lethal to less lethal weapons up there.

Q.    And you mentioned just as an example about you have a four o'clock stand-up count.  Suppose I'm an inmate and I just say, do you know, Mr. Warden, I don't feel like getting out of my bed.  And you said to me, well, Mr. Sheehan, are you sick, and I say no, I just bug off.  What happens within a facility in that context?

A.    He'd go to special housing unit.  That is a prohibited act, failing to stand count.

Q.    And what is the special housing unit? What's the difference between that and the general population within the United States penitentiary?

A.    Every secured facility in the Bureau of Prisons has a special housing unit.  Basically it's

a unit within each institution where you can segregate inmates from the general population for pending -- they're pending a violation of an institution rule. An inmate can request protection or staff can determine there is a need for protection for that inmate and place them in there.

There is two basic statuses in it, you are in administrative detention; that's the status where you're normally in a two-man cell. You get five one-hour periods of recreation a week, three showers, and you have the same property that an inmate would have on the yard, but it's very scaled down, it's very limited.

Then there is disciplinary segregation part of the unit, too, where an inmate is sanctioned by the disciplinary hearing officer for violation of inmate discipline policy, and they're put in there. It's less restrictive property, again it's five hours of recreation a week and three showers.

Q. Now, so we have -- at least one component appears to have double cells, right? Is that the ad-seq unit?

A. MDX has double cells, too. There are some cells that are set up for single, you have one bed in it, too.

Q.   And so I get -- when you say I get five
hours of recreation a week, what is that?  What does
that mean?

A.   You are taken out of your cell five times a
week for one hour at a time.  You are escorted in
restraints to a -- the special housing unit has its
own recreation area.  In that there are secure
recreation enclosures where you can put one
individual or you can put up to, I think when I was
there we could put up to six people in one.  They
would be uncuffed.  Once the door is locked,
uncuffed, and then they would be in there for
recreation for an hour.

Q.   And you mentioned you could have -- when
you were there in some places you could have up to
six inmates in a particular location.  Is there
single area recreation?

A.   They're all the same size, but depends on
the status of the inmate.  Some inmates are single
rec, single housed, single basically everything.
Those individuals are put in recreation enclosures
by themselves.  They're housed by themselves.

Q.   In this recreation enclosure, is it like
being in a pen?

A.   Some people attribute that to it, yes.

**Exhibit A**

Q.   Well, do I have fencing all around me?

A.   Yeah, it's totally enclosed with either woven fabric or chain link.

Q.   What about above me, what's up there?

A.   Same thing, concrete on the ground, chain link around.

Q.   Okay.

     Now, you mentioned that there are these SHUs within each facility?

A.   Secured facility.

Q.   Secured facility.  So that would certainly encompass within each United States penitentiary, right?

A.   Yes.

Q.   You might not have a SHU if you were in a camp, that's not a secure facility?

A.   No.

Q.   Now, you mention -- as far as this SHU is concerned, how long can an inmate be kept in the SHU?

A.   Depending on the circumstances they can be in there for extended periods of time.

Q.   More than a day?

A.   Yes.

Q.   What's an extended period of time?

**Exhibit A**

A.    Some cases are reviewed every 90 days. Some people are in there for longer.  Some inmates refuse to populate in a penitentiary or in FCI and they're housed in special housing unit for as long as they refuse population.

THE COURT:  Mr. Sheehan, is this a good time to take a break.

MR. SHEEHAN:  This would be a great time, your Honor, thank you.

THE COURT:  Ladies and gentlemen, we'll take a half hour.  Leave your notes here, don't discuss the case, we'll be back at a quarter to two.

(Jury exited the courtroom)

THE COURT:  All right, Mr. Bezy, if you will kindly be back at quarter to two and don't discuss your testimony.  We stand in recess.

(Recess)

THE COURT:  All right.  Please be seated.  Mr. Bezy, if you would like to return to the stand, we'll bring the jury in.

(Jury entered the courtroom.)

THE COURT:  Please be seated, ladies and gentlemen.  Continued direct examination of Mr. Bezy by Mr. Sheehan.

MR. SHEEHAN:  Thank you, your Honor.

**Exhibit A**

Q.   Mr. Bezy, you had -- I had asked you a couple of questions about the ADX unit at Florence. Could you tell us, just in general, how that differs from the standard United States penitentiary?

A.   The ADX was opened in 1995 to replace the control unit or the security program at USP Marion. It has three functions:  It has a general population, which is the program that most people end up going to there for, and they're there for a period of normally -- they can work their way out in three years depending on their conduct.  There is no guarantee that they can work through the program, but it's a phase program where they start out in very restrictive and then they can, after they're teamed by the staff there, they're put into different phases of the operation where eventually the final phase is at the USP Florence next door, but there is no guarantee they'll get through the program.

Q.   When you say people are initially placed there, how do they get placed there?

A.   There is a recommendation made by the institutional warden to the regional director.  Now it's forwarded up to Washington and a designation center in Grand Prairie, Texas who do the paperwork,

and it's approved by, I believe the assistant director out of -- correctional programs out of Washington who will make the final determination, or that it will go to the ADX GP.

Q.    Some people, are they designated to the ADX GP?

A.    Approximately 5 percent of the population at ADX is directly from the court.  The population of the ADX is, I think 492 is their max.

Q.    And in comparison with a U.S. prison, if I were sent to the ADX unit, would I have the same kind of housing?

A.    No, ADX, it's all single cell.  It's more secure than a USP.  Most of the cells have a solid doors and then a vestibule and then a grilled door inside.  It's all single rec and single cell.

Q.    And what is the approximate size of the cell at the ADX unit?

A.    It's a standard cell.  I don't recall off --

Q.    And what's in that cell?

A.    You have in one corner a stainless steel shower, you have a concrete bed, you have a concrete writing table that is built in the wall.  You have a concrete stool for the desk, and then you have a

stainless steel toilet and sink combination.

Q. How are inmates removed from their cells? How does that process work?

A. Well, they're all in full restraints when they come out. In general pop they're handcuffed from behind. At the grille door staff get ahold of the restraints. There is at least one other officer there with a baton. So they're always under direct staff supervision.

Q. And you indicated that that period lasts, the initial period anyway, at least in your understanding is at least three years?

A. Well, they're teamed in, I believe it's 12 months with set review periods, but, again, the staff look at each individual case and they weigh each individual case separately.

Q. What kind of controls are there within the Bureau of Prisons with respect to monitoring of communications? Let's say at a United States penitentiary or higher level facility.

A. For written correspondence, all outgoing correspondence is turned in to the unit officer. It's not sealed. Staff will check the correspondence. The morning staff from midnight to eight will review the correspondence, check it for

contraband.  There is also hot lists for inmates if they're of a particular interest that their mail is forwarded directly to the investigator's office, it's further read down there.  The unit officer would then seal the mail and then it would go outside to the post office.

Incoming mail is picked up by institution staff at the post office.  It's taken, it's screened by metal detectors or X-ray machine.  Each letter is then opened and checked for contraband.  Again, if there is a unique interest in the inmate, that mail go will go to the investigator's office before it will go to the inmate.

Q.    And how about on phones, are there restrictions on phones?

A.    Yes.  Each inmate is authorized, there is allowed 300 minutes of phone time each month.  All calls are either collect or the inmate can buy them and put them on a debit card system where he's paying for the phones.  They're allowed 15-minute phone calls, and then the way the system is set up there is dead time, usually I think it's 45 minutes or so between calls, so an inmate can't just sit on the phone for back to back calls, so it opens it up for other inmates to use the phone.  All calls are

recorded and subject to live monitoring.  Some are live monitored.

Q.   Now, at a communications -- you mentioned they have CMUs.  Are those controls even more strict?

A.   Yeah, the CMU, all phone calls are live monitored.

Q.   And how about letters?

A.   They can -- if it's a unique individual, if it's written in a foreign language, then there is staff that will be sent that reads that language, or if there is unique coding or material of interest, it can be sent to somebody that focuses on that inmate or a group, and it will be looked at that way.

Q.   And does the warden have power, for example, to restrict mail or phone privileges?

A.   Yes.  Both privileges.  The warden can pull and suspend phone privileges for periods of time, and then as part of the disciplinary sanction you can take phone periods, you can take the phone privilege away for indefinite periods of time.

The warden can also by -- if there is a threat to the overall running of the institution or the community, people can be put on restricted

correspondence requirements, too.

Q. As warden did you actually do that with respect to some inmates; that is, restrict their phone and their correspondence?

A. If it was a subject -- as far as the written correspondence, if it was an ongoing investigation, yes, I restricted who they could write to and reviewed all of their incoming and outgoing correspondence.

As far as phones, when I was a warden at Ohio they allowed smoking at that time inside. It's supposed to be in the yard, inmates are not compliant, so we talked to them, they didn't want to listen, so if they were caught smoking in the unit by the officer, I suspended their visitation, phones and commissary for a year. That became a little bit burdensome on the staff, so then I decided I'll quit selling tobacco to them and that worked even better.

At Terre Haute if you were caught either possessing an intoxicant or making intoxicants, again, I suspended -- I had the DHO suspend the phone, visitation, commissary for a year, first offense.

Q. You mentioned that, like ADX, after that three years, there is a kind of a step-down

**Exhibit A**

3232

procedure?

A. It's possible, yes. There is inmates that I put there in 1995 that are still in that process, that are still in that unit.

Q. And what criteria does the ADX use as far as moving inmates in or out? What is their criteria?

A. Again, it's a referral. It's -- they're afforded due process hearing, and if there is a recommendation for placement, then they're sent to the ADX.

Q. Now, is there kind of an intelligence gathering mechanism that you used when you were a warden at the facilities?

A. Yes, I had my own local investigator, special investigative supervisor. He had, I think up to six people working for him. Then the region has an intelligence staff. There is a central office intelligence staff and then there is a group out in Sacramento, California, that is a joint intelligence group with all federal law enforcement and there is one in Pennsylvania too.

Q. And when you were the warden how often would you actually walk through your facility?

A. I went -- I would tour my special housing

unit every Tuesday at one o'clock.  I would take certain staff with me.  At that time I woke up every inmate in that unit to make sure they were alive and well and breathing, and if they had any issues they could address it with me then.  Then I would proceed up to the special confinement unit and do the same there.

Every day at eleven o'clock I would go to the dining room and I stood mainline while the inmates ate.  I spent an hour plus there every day, so if an inmate had an issue of concern he could address it with me personally.  It diffused a lot of issues, and it's a source of good information, too.

Q.    Let me ask you to assume the following: Let's assume that an individual had been convicted of a triple homicide in connection -- in the context of a drug operation and his conviction was in 2011, and that individual was also found to have assaulted another inmate at the end of 2009 while in a detention facility pending trial.  And assume further that if the United States attorney or the Department of Justice were lobbying hard for designation for ADX, do you have an opinion as to where that individual is likely to be designated?

A.    Very likely he could go into the GP at the

ADX or with the right amount of pressure he could go to the control unit at the ADX too.

Q. What's the difference between the control unit?

A. Control unit is a unit within the ADX where based upon an inmate's behavior, most of them are there for -- they have taken another life of an inmate while they're incarcerated, escaped, or very unique threat to the safety and security of the institution. There can be a recommendation for placement in the control unit.

There they're afforded a due process hearing where they can call witnesses. Hearing administrator presides over the hearing and then there is a recommendation for placement. If they're approved, then the unit team of the control unit will establish a period of time for their placement.

When I was involved in it, if it was -- if it involved a homicide within one of the federal prisons, they normally got 60 months, and now I understand they're giving them 72 months in there. Again, it's behavior based. They get credit for the months they're in there with clear conduct. If they've mismanaged or don't program, that month can be taken away from them. So, they have to do --

they'll do it in a control unit. It's not additional time, it's just time that the Bureau says you will be in this unit.

Q. Now, in your experience over the 20-plus years, have you worked in facilities which had individuals who were doing a sentence of life without parole?

A. Yes, every -- when I was at Terre Haute, when I left, when I retired, I had about approximately, I think, 12 to 1500, and out of that 300 were doing natural life.

Q. How is it that correctional staff, in your opinion, how do they maintain control over inmates who are doing life without parole? It seems kind of like those inmates have nothing to lose.

A. Penitentiaries are set up to be restrictive in a control environment, and basically the only decision an inmate has in a penitentiary is whether they're going to follow the rules or not. If they don't, then there is policies and procedures for inmate discipline on that. Most of them do program. It's a controlled environment that, you know, for safety and security.

Q. Is there a difference between short-term and long-term prisoners in terms of maintaining,

difficulty in maintaining control?

A.   Some of the younger short-term inmates can be problematic because they know they have a ticket out after a certain number of years.  My experience, people doing long time are normally less problematic.

Q.   And let me ask you, does the fact that you have the same inmates in these penitentiaries for a long time, does that impact on the stability within that institution?

A.   Yeah, inmates in a penitentiary tend to -- they get into their own program of doing their time, staff know who they are.  It's not a real transient population.  They're there for extended periods of times, for years, so they know the staff, staff know them, and, you know, if the warden is out there and about taking care of business, it's a safe environment.

Q.   When you basically walked the facility, were you armed or guarded by other staff?

A.   No, I walked by myself.

Q.   Do you have an opinion as to whether well run and well managed facilities, are they effective in minimizing violence?

A.   Yes, they are.

Q.  And based upon your review of the defendant's records within the Department of Corrections and the records from Wyatt, do you have an opinion to a reasonable degree of certainty on the ability of the Bureau of Prisons to securely and safely house the defendant if he's sentenced to life without parole?

A.  I believe they can safely and securely house him.

MR. SHEEHAN:  I have no further questions of Mr. Bezy.  Thank you, your Honor.

THE COURT:  All right, cross-examination.

CROSS-EXAMINATION

BY MS. DAYTON:

Q.  Good afternoon, Mr. Bezy.

A.  Hello.

Q.  I'm Tracy Dayton.  I'm an assistant United States attorney in the District of Connecticut.

So you've worked a lot of places, huh?

A.  Yes.

Q.  You moved around a lot?

A.  Yes.

Q.  With your children?

A.  Yes.

**Exhibit A**

3238

Q.   They were okay with that?

A.   Yes.

Q.   And you moved a lot because the Bureau of Prisons is always changing and trying to update; is that right?

A.   No, at that time if you wanted a promotion you had to relocate for promotion purposes.

Q.   But the Bureau of Prisons is always trying to update and become more modern in terms of housing prisoners; is that correct?

A.   Yes.

THE COURT:  Would you see if your mic is working?

MS. DAYTON:  Yeah.  Can you hear me?  I don't think it's working.

THE COURT:  Is it flashing?

MS. DAYTON:  Maybe Mr. Sheehan turned it off before I got up here.

MR. SHEEHAN:  It would be a brotherly thing to do, your Honor.

Q.   Can you hear me okay?

A.   Yes.

Q.   Okay.  So, and you, at the time you retired, were at Terre Haute, right?

A.   Correct.

**Exhibit A**

Q.   You were the warden there?

A.   Yes.

Q.   And at the time you retired you had just been investigated for unprofessional conduct and misusing official position for personal gain, right?

MR. SHEEHAN:  May I approach?

THE COURT:  Yes, I'll hear you.

(Sidebar conference)

THE COURT:  What are you doing?  I have not ruled on that and we're going to have a point at which I would rule on that.  I've heard direct and I am not persuaded yet, and there may be something in cross-examination, that is, discipline for profanity.  Using staff to look after his dog and to do an application doesn't relate to his knowledge of procedures.  Now, it may be that there is going to be something that will change that, but this was a pending issue in which I had not ruled.

MS. DAYTON:  Your Honor, you ruled on the profanity.  You said yesterday that the fact that he was using profanity against his deputy warden goes to his stellarness or non-stellarness. Do you remember we all laughed about that?

THE COURT:  I recall that.

MS. DAYTON:  So you did rule on that.

That's what I just asked him about.

THE COURT: Having heard -- and then today I said I would rule on it after I heard his direct testimony.

MS. DAYTON: But I didn't know you had withdrawn your prior ruling, your Honor. I would not do something in bad faith.

THE COURT: The problem is that I don't see how that relates to his knowledge of designation and BOP procedures. There may well be something that will cause that to be, to relate, but having heard what his testimony is and the fact that he didn't hold himself out as having certificates of stellarness --

MS. DAYTON: Your Honor, his resume starts with what a well-respected career he had.

THE COURT: His resume is not in evidence.

MS. DAYTON: He questioned him directly from the resume. His entire first half hour came directly from his resume. Mr. Sheehan was literally reading from his resume.

THE COURT: Fine. It's every place he ever was, every promotion he ever got. There was nothing about awards, recognitions, certificates of

excellence.

MS. DAYTON:  Your Honor, you allowed them to ask Mr. Hodges whether or not he had ever been a teacher at a school in 1985.  They've put this person up there as an expert, you worked for the Bureau of Prisons for 30 years.  He retired two years short of retirement.

THE COURT:  I understand that, why don't you get some foundation here before you go right to that question.

MS. DAYTON:  Because Mr. Sheehan laid all the foundation.

THE COURT:  I don't recall any foundation about his retiring before and under circumstances that would suggest he was trying to avoid discipline.  I will hear it.

MS. DAYTON:  I wasn't going to say he retired to avoid discipline, I was going to say he retired two years short of his retirement and when he did there had just been sustained allegations against him, and the allegations came, as you can see from what I gave you, precisely because they were talking about issues related to weapons in prison, which has directly to do with his testimony here, the safety of prison.

**Exhibit A**

THE COURT: Well, that's fine, but that's not the way you've gone about it. If in fact what you are talking about is his knowledge and expertise on security and his profanity, berating of staff person who questioned something about security, that's far closer than what you are doing right now.

MS. DAYTON: He mocked his deputy warden.

THE COURT: I understand.

MS. DAYTON: So I'll ask him about that.

MR. SHEEHAN: About what?

MS. DAYTON: About mocking his deputy warden, about she was trying to recreate what he had talked about with respect to making a weapon and he started mocking her in front of a room full of executives.

THE COURT: I understand. I've read all the reports. I want it to relate to something having to do with his testimony. If in fact he was reprimanded for --

MS. DAYTON: He wasn't reprimanded, he retired.

THE COURT: Excuse me. He was -- the charge was sustained, and that's all there is. Do

you wish to be heard?

MR. SHEEHAN:  I'm --

THE COURT:  She's going to get it in eventually.

MR. SHEEHAN:  Why?

THE COURT:  Because it relates to security and his attitude about security.

MR. SHEEHAN:  They're just rewarding bad behavior.

MS. DAYTON:  That's not fair because I went off your Honor's ruling from yesterday.

MR. SHEEHAN:  Totally unfair.

THE COURT:  No, I think Ms. Dayton had a basis for believing, though I don't understand what she might have thought when I said I would reserve until after I heard the direct.

MR. SHEEHAN:  It's inconceivable.

MS. DAYTON:  I can explain that, actually, if you allow me, because I would never honestly intentionally disobey your Honor's ruling. I thought you were saying if he went into it and brought it all out that you weren't going to let me go back into it; that's what I thought you -- I understood you meant.  And maybe I'm stupid.  That's what you didn't want, that it be belabored.

THE COURT:  I don't want it belabored, but I wanted to hear the direct.  As to using staff to prepare an application and watching the dogs --

MS. DAYTON:  I'll stay away from that.

THE COURT:  -- those are so de minimis.

MS. DAYTON:  I'll stay away from that.

THE COURT:  But if he is acting unprofessional with the issue of security, I think that does bear on it.

MR. SHEEHAN:  There is no claim that he was acting unprofessional with respect to the issue of security.  The claim, I take it, is that in the context of running an institution he's spoken in a disrespectful tone to the deputy warden.

THE COURT:  The subject was shank-making.

MR. SHEEHAN:  Yeah, whatever the subject is, you don't get it, you don't get -- do we go into the whole substance of the conversation?

THE COURT:  No.

MR. SHEEHAN:  Then what am I left with? The problem is admittedly one should not speak that way to people that one works with.  Fine.  I think that if -- the people I work with under torture they might admit that at some point in my life I spoke

that way with them.  I suspect other people might also have done that.  It doesn't mean what he's saying here is any less worthy of credence.

THE COURT:  It is to the issue of following their policy.

MR. SHEEHAN:  But the issue was he used bad language.

THE COURT:  I understand that.

MR. SHEEHAN:  In the Bureau of Prisons.

THE COURT:  You certainly are not going to get into all of the detail, but it seems to me that if he violated Bureau of Prisons' policy which he knew existed in the context -- on the subject matter of security, that from that at least there is some challenge to his authoritativeness on why all of these policies will be followed such that Mr. Aquart can be safely and securely housed.  Now, I would think that it's not a major failure, but it is nonetheless by the warden a failing, and it is a failing to follow a policy.  And to the extent that failure to follow policy is an indication that all may not be perfect in the Bureau of Prisons, and therefore his opinion that he can be safely and securely housed is --

MR. SHEEHAN:  Do you know what, this is

**Exhibit A**

a setup.  This is has nothing -- this is a guy who leaves the Bureau of Prisons and they trolled his record for something he never got a copy of.

THE COURT:  I'm not going to permit any testimony of relationship between his leaving the Bureau and this because there isn't --

MR. SHEEHAN:  That's what she just asked.

THE COURT:  No.

All right.  So we're going to leave out -- the question will be rephrased.  We'll leave out misusing official position for personal gain. Ms. Dayton said she was leaving that out because it has to do with taking the dogs out and filling out applications.  The timing is also not going to be the subject of your question.  If you are claiming that it has to do with his -- the security issue, then it needs to be framed in that context and only that context, and it's about one question.

MS. DAYTON:  I'm going to ask him, you were having an executive meeting, you were discussing shanks in prison, and she tried to recreate this and you said X to her.  Because there is no way to get there without --

THE COURT:  I don't want all of the

details of it.  If the purpose is that he himself was the -- the cause was found -- was sustained for his violation of whatever that policy was.

MR. SHEEHAN:  But do you know what, he was never notified of it.  How does he know that cause was sustained.  He was never told that.  This thing they dragged out of the sewer to get back at a guy who has the effrontery to testify.

THE COURT:  So, tell me why it matters if he doesn't know.  Because you are saying he doesn't know how to answer that question?

MR. SHEEHAN:  Yeah, because their point is, and I think what they're trying to say, well, you were disciplined for this.  I wasn't disciplined.

THE COURT:  But he wasn't disciplined.

MS. DAYTON:  I'm not trying to say that.

MR. SHEEHAN:  What are you saying then?

MS. DAYTON:  He was interviewed during the course of the investigation of him.  To say he doesn't know -- and he also lied under oath about it.  The last time he testified he said he wasn't under investigation and then they went and got the documents and he had to come back from that.  I'm not even going to bother going into that issue.

THE COURT: So the phrase is the charge was sustained for directing unprofessional comments and profanity towards a subordinate officer.

MS. DAYTON: And what he said.

THE COURT: In violation of the standards of employee conduct. And to the extent that shows that wardens themselves don't always follow policy, that relates to his opinion that Aquart can be safely and securely detained. I don't need to know the substance of the unprofessional comments and profanity.

MS. DAYTON: Your Honor, I can -- that's --

THE COURT: No, I'm just not going to let you do it because it really doesn't matter whether he called her a dumbhead or the F word. The point of it to be relevant is that wardens themselves don't always follow the rules and, thus, there can be a security breach. Other than that I don't understand why it could be -- why it's relevant.

MS. DAYTON: Okay, fine.

MR. SHEEHAN: How is the question going to be asked because I have no confidence that it's going to be asked unless you tell them not to.

MS. DAYTON: Thank you very much for this vote of confidence. I got it.

MR. SHEEHAN: No, I need to know. I mean, I think this was ridiculous.

THE COURT: I've articulated how it will be asked.

(Sidebar concluded)

Q. Sorry for the interruption.

Mr. Bezy, is it true that there was a sustained allegation against you for using profane, obscene, and otherwise abusive language with your deputy warden while you were the warden at Terre Haute?

A. Yes.

Q. And so is it fair to say that not everybody always follows the rules and regulations of the prison?

A. Not -- I can't say that, no.

Q. Well, you didn't, correct?

A. That occurred at a daily closeout of my executive staff. There was six to eight people there. I asked her in front of everybody something, she made a comment, I made a comment. It was a robust discussion. I asked her, excuse me, to ask her where the fuck she worked and was she really

that stupid.  Okay, during my closeouts it was a time we debated issues.  We had -- they could say things to me at that point, I could say things to them.  It was open debate.  It was their chance to input.  That's the comment I made.

Q.   And this was in the context of discussing the security of the prison, correct?

A.   Yeah.  We did that every day at 3:30 in the afternoon.

Q.   And discussing the fact that prisoners were making shanks out of plastic trays from where they went to eat, correct?

A.   No, it was from the special housing unit.

Q.   So they were using plastic trays from the special housing unit to make shanks?

A.   Yes.

Q.   So, you talked about the prison, the count as of today.  Essentially, it's over 213,000 prisoners in federal custody, right?

A.   Correct.

Q.   216, you said?

A.   216.

Q.   And 179 of them are in BOP facilities?

A.   Correct.

Q.   And so the remainder --

MR. SHEEHAN:  Your Honor, I think the record is 179,000.

A.    Yeah.

Q.    179,000.  Sorry, I misspoke.  The remainder are in privately-managed facilities; is that right?

A.    Privately-managed facilities, county jails, home confinement, and local -- yes.

Q.    And so privately-managed facility including like Wyatt correctional in Rhode Island; is that correct?

A.    No, because they're detainees.  They're under the care and custody of the U.S. Marshal Service.  He hadn't been sentenced yet, so he's not under the care of the Bureau.

Q.    And 93.5 percent of the prison population is male; is that correct, approximately?

A.    Yeah, it sounds right.

Q.    And you said that over 6,000 -- I believe you said over 6100 prisoners are serving life right now.

A.    Correct.

Q.    And that's including over 5500 prisoners for murder, aggravated assault and kidnapping?

A.    I believe that's what the figures say.

Q.    And approximately 100 for national security

**Exhibit A**

3252

threats like terrorism and things like that.

A.    Uh-hum.

Q.    And then explosives, arson, serious sexual offenses, drug-related offenses make up the majority of the remainder of the prisoners; is that correct?

A.    Mainly drug offenses, yes.

Q.    And there is currently 57 inmates facing the death penalty, correct?

A.    Correct.

Q.    And they're all at Terre Haute where you used to work?

A.    Yes.

Q.    Or Terre Haute, is that the right way to say it?

A.    Either way.

Q.    And Florence ADMAX that you talked about, that has several levels of security, correct?

A.    The ADMAX.

Q.    Well, there is the ADMAX and then there is a penitentiary and then there is a lower security facility.

A.    It's a complex.  There is four institutions there.

Q.    And there is -- the four institutions each have a different level of security, correct?

A.    Right.

Q.    And the ADMAX, the most secure one that you were talking about, there are only 490 beds there, correct?

A.    Correct.

Q.    And 430 of those are reserved for male prisoners?

A.    They're all reserved for male prisoners.

Q.    Well, there are some female prisoners that could go there, correct?

A.    For what?

Q.    For murder, for serious issues?

A.    There is a -- there is two or three females right now with the sentence of death and they're in Carswell, Texas, that are housed at a total separate facility.  The Bureau wouldn't mix them like that.

Q.    And as of last week 449 of the beds ADMAX were full, right, at Florence?

A.    Correct.

Q.    And you said, that 5 percent of prisoners are sent directly there, classified directly to Florence, correct?

A.    They're direct core commitments.

Q.    So that would be 22 people?

A.    Yeah.

**Exhibit A**

Q. The other 95 percent of the inmates don't go to Florence unless they're sent there from another facility for having committed a serious infraction at one of those other facilities, correct?

A. The Bureau will take state placements on several occasions, too.

Q. So, if someone commits a murder in a state facility, it's possible that they would be housed at Florence because the state doesn't have a sufficient facility to hold them?

A. Correct.

Q. And the 5 percent that are sent directly there are usually really high profile prisoners who can't safely be housed somewhere else, right?

A. No, it's the order of the court.

Q. Well, didn't you say before that Bureau of Prisons ultimately decides where people go, right?

A. Correct, but if there is enough with the courts, the attorney general, and U.S. attorney's office. The U.S. attorney is deemed to be a law enforcement agency head. He has the discretion to make a strong recommendation into the ADX or placement. And being that the U.S. attorney works for the AG, just like the director of the Bureau

does, I would imagine it would happen.  I never saw one that didn't happen.

Q.    So, the U.S. attorney really only makes recommendation on separations; isn't that correct, keeping people who could be dangerous to each other separated from one another?

A.    No, they've made conditions of confinement too.

Q.    And even a federal judge can't order you to place somewhere -- someone at a particular prison; isn't that right?

A.    I believe there was one judge that did that, though.

Q.    But you don't have to follow that, do you?

A.    In this case, the Bureau did.

Q.    So, that's one?

A.    Right.

Q.    And the high profile people we are talking about are people like Richard Reid who was the attempted shoe bomber, correct?

A.    Correct.

Q.    And Robert Hanssen who is serving life for espionage?

A.    Correct.

Q.    And Faisal Shazad who did the Times Square

**Exhibit A**

3256

attempted bombing; is that right?

A.    If that's -- yeah.

Q.    Terry Nichols, the person who cooperated in the Oklahoma bombing case against Timothy McVeigh?

A.    Correct.

Q.    And so it's people who have -- are very high profile, in other words?

A.    Those, I think those people you just said are on SAM, special administrative measures. They're housed in a separate unit totally within the ADX.

Q.    But those are some of the 5 percent that would be sent, directly sent there regardless of where they're housed, right?

A.    It's possible, yes.

Q.    And once they go there -- I'm sorry, you said earlier that someone who is sent to ADX, eventually, it's a three-year program, and they try to program out?

A.    That's the ultimate goal of the program, but it didn't always happen.

Q.    Can you explain to the jury what that means to program out.  It's not lingo we use every day.

A.    Well, their confinement, when they go before the review committee they look for any

incident reports, misbehavior issues, they look at their association with staff, that's a big key thing, and whether the offense that put them in the ADX has been mitigated enough to warrant their moving through the program.

Q. Okay. And people in fact do step down and go to lesser programs, right?

A. Some.

Q. You mentioned in fact that there are some inmates at supermax who you put there in 1995, right?

A. Yes, ma'am, I moved them there, yes.

Q. But that's only two, correct?

A. No, I checked. There is a few more than two.

Q. But not all 449?

A. No.

Q. Okay. And even though Florence, which I'm using Florence and supermax interchangeably, is very secure, there are still assaults and homicides there; is that correct?

A. I believe there has been one homicide there.

Q. Okay.

A. But then they changed the operation based

Case 15-2347   Document 35   Filed 07/27/2016   Pages: 4186 5398

on that, too.

Q.   Is that the 2005 murder of Manuel Torrez?

A.   Correct.

Q.   And he was beaten to death in the yard at supermax, correct?

A.   Correct.

Q.   By Richard Santiago and Silvestre Rivera?

A.   Yes.

Q.   And Santiago was at supermax because he killed a prison guard in Fresno, right?

A.   I'm not aware of what he did.

Q.   And in fact there was another murder at supermax in 2008, Gary Douglas Watland killed somebody.

A.   That was at USP, it wasn't the ADX.

Q.   But at Florence?

A.   There are four facilities there.  They each have their own warden.  There are four distinct separate facilities.  They do not all have the ADX function, they all have their own function there.

Q.   But this would have been the place, for instance, if he stepped down from supermax, he would go, for instance, to the USP, right, at Florence?

A.   There is one unit there at the USP that is set aside for their step program, step-down program.

He could have gone to any of the 16 penitentiaries that are open and functioning.

Q. And he was -- he was serving a life sentence for murder when he stabbed inmate Mark James Baker in the head with a makeshift metal shank, right?

A. Correct.

Q. Can you explain for the jury what a shank is?

A. It's a homemade weapon.

Q. And how do they make it?

A. Prison made. They can make them a variety of ways. They can find a piece of steel, hone it on the concrete, sharpen it. They can mold a trash bag into a weapon. They can do a variety of different options to make weapons.

Q. And there are other types of weapons that are used in prisons, too, right?

A. Oh, yes.

Q. Like locks, like combination locks?

A. Uh-huh (indicating affirmatively).

Q. I'm sorry, you need to say yes or no.

A. Yes.

Q. And sometimes they put those inside socks so that they don't leave the same type of mark?

A.    No, it gives them a better swing when they do it.  It's not for marking purposes.

Q.    So, a better swing, and sometimes they attach it to, like, a rope or string to get a better swing, too?

A.    Yes.

Q.    What other kinds of weapons have you seen?

A.    Toothbrushes sharpened, pencils, SHU strings.  Anything they can make.

Q.    It's dangerous, right?

A.    It's the environment.

Q.    And like a guard got stabbed in the eye at the Metropolitan Correctional Center; is that correct?

A.    Yes.

Q.    And he has permanent brain damage?

A.    Yes.  But again, there was policies and procedures in place that weren't done that day that allowed that to happen.

Q.    So it was the guard's fault?

A.    I'm not saying it's the guard's fault.  The guard didn't do what he was supposed to do.  And that's what happens most of the time when things happens.

Q.    Okay.  But the person had created the shank

prior to the day that the guard was stabbed in the eye, correct?

A.   I can't speak, I wasn't there.

Q.   Okay.  And then in 2006, Tyler Bingham and Barry Mills, I believe you are familiar with him, were both convicted for racketeering and conspiracy for ordering assaults and murders from their cells at the Florence supermax, correct?

A.   Right.

Q.   And just in December of 2010, two guards were assaulted by an inmate in supermax, right?

A.   I'm not aware of it.  It's possible, yes.

Q.   So even in a really secure prison, inmates, if they want to, can attack a guard?

A.   It's possible.

Q.   And so you also talked about infractions in prison, like the failure to stand for a count.  Not every infraction sends a prisoner to SHU, correct? To the special housing unit?

A.   No, there is different levels.  There is the 100 level through 400 level.  And depending on the level of the severity of the incident, sometimes it's automatic lookup, sometimes it's not, it's a lower level.

Q.   I'm sorry, go ahead.

**Exhibit A**

3262

A.    For the lower level, it's not.

Q.    So, for instance, as you testified to earlier, they may just lose their privileges for phone calls, correct?

A.    There is a variety of sanction opportunities that's available to the staff.

Q.    But is it fair to say that inmates -- I mean, these are people who are convicted criminals -- look for ways to exploit guards and/or the weaknesses of the prisoner system -- I mean the prison system?

A.    Some do.

Q.    And sometimes guards may have lapses in procedures that allow assaults to happen more easily; is that fair to say?

A.    Yes.

Q.    And in fact, there is just not enough guards to watch every prisoner, correct?

A.    Well, staffing is set by Congress, funding. And if Congress doesn't provide the money. But the -- you know, they're staffed up to 97 percent of what they're supposed to be.

Q.    Well, Congress is notorious for not doing very well with money; is that fair to say?

A.    Yeah.

**Exhibit A**

Q. And you were talking about when you were at Leavenworth you had 1200 prisoners and 250 staff, correct?

A. Correct.

Q. But that wasn't 250 prison guards, was it?

A. Yeah, I think it was -- yes, it was.

Q. Doesn't staff include like the people who serve the food and the people who take care of the facilities in other manners?

A. In the context I stated there was 200 correctional staff there, which included the lieutenants, the captain and the correctional officers. There are extra staff. Like I said, at Terre Haute I had up to 650. I only had approximately 400, maybe 450 correctional staff, but all of these other staff are qualified law enforcement staff, too.

Q. And with respect to the United States prisons, that's where most people who are convicted of very serious crimes go, correct?

A. Correct.

Q. And those you mentioned, the cell doors open at 5:00 a.m., correct?

A. Correct.

Q. And they close somewhere between 8:45 at

Terre Haute and maybe 10:00 p.m. somewhere else that stays light later, correct?

A. That's a call up to the warden. He can lockdown the evening whenever he feels like. It's a local call.

Q. But generally speaking, 5:00 a.m. to 9:00 p.m. the cell doors are open, correct?

A. Right.

Q. And prisoners are allowed out of their cells, you said, to work?

A. Yes.

Q. And to go for educational classes?

A. Uh-huh (indicating affirmatively).

Q. And to go for recreation?

A. Yes.

Q. And they recreate together, correct? They play basketball?

A. At an open penitentiary, yes.

Q. And they eat together?

A. Yes.

Q. So there are lots of prisoners in one place at one time, fair enough?

A. You limit it. You control it. That's why you call the dining room, you call them in sequence. You know. You don't put them all in, the thousand

in there at one time.  You feed them and push them out.  In a rec yard, now the penitentiaries have gone to a split compound where only half is out at one time.

Q.    But even with all of these controls, is it fair to say that there are dozens of serious assaults on staff every year?

A.    Yes.

Q.    So in 2010, there were 59 serious assaults on staff members; is that correct?

A.    It's possible, yes.

Q.    And in 2009, there was 107 serious assaults on staff, correct?

A.    Yes.

Q.    And in 2008, there was 92 serious assaults on staff, correct?

A.    If you say so.

Q.    And there was also a murder in 2008 of a prison guard, correct?

A.    Yes.

Q.    Jose Rivera?

A.    Yes.

Q.    A veteran who had done two tours in Iraq, he came back and worked in the prison for ten months before he was stabled to death by two inmates.

**Exhibit A**

A.   Yes.

Q.   And they assaulted him with a homemade knife, correct?

A.   Yes.

Q.   Chased him down and stabbed him to death.

A.   Yes.

Q.   And you are going to testify in that case, too, aren't you?

A.   No, not yet.

Q.   You've been retained?

A.   Not officially, no.

Q.   What do you make an hour?

A.   I charge $175 an hour plus expenses.

Q.   And expenses including travelling expenses?

A.   Yes.

Q.   Testifying expenses?

A.   It's the same.  I just charge a flat rate.

Q.   What was your rate in this case?

A.   It's $175 an hour.

Q.   How many hours did you work on this case?

A.   The initial contract I believe was for 25 hours.

Q.   Okay.  And what's it up to now?

A.   It just whatever this -- how long I'm here.

Q.   And so since you've retired -- you retired

**Exhibit A**

in 2006, right?

A. Correct.

Q. Essentially what you've done, what you do for a living now is to testify in cases about alleged lapses in Bureau of Prisons policies?

A. No, I'm retained by -- I've been retained by private attorneys too. I discuss prison related issues. Some of them are lapses in policy, correct.

Q. Including how inmates who have already murdered a guard can be safely housed in prison?

A. We did it for years.

Q. And you testified in the case of Mark Snarr and Edgar Garcia?

A. Correct.

Q. Who stabled two prison guards?

A. One.

Q. Well, they stabbed one guard 23 times, stabled a second guard who wouldn't give up his keys, and then entered an inmate's cell, stabbing him 50 times and killed, correct?

A. I don't know. I didn't count -- I don't know the amount of stab wounds, but correct.

Q. In addition to the staff assaults there are about ten inmate homicides a year, right?

A. That varies.

Q.    Sometimes it's more?

A.    It could be.

Q.    Sometimes it's less?

A.    Right.

Q.    But regardless, too many people are dying in the Bureau of Prisons?

A.    To sum it up, the Bureau does a good job given what they have to deal with, the staffing, everything else.  The Bureau does a good job.  They set the standard for the corrections in this country today.  They do a good job, but sometimes things happen, and that's part of the nature of the beast in the prison.

Q.    Things happen, like people slip their cuffs.

A.    If they're put on correctly you can't slip the cuffs.

Q.    Well, you can hit against the wall that makes the double lock come undone, correct?

A.    If you are doing your job that doesn't happen.

Q.    So, if someone fails to do their job correctly by accident, they don't deserve to get assaulted, correct?

A.    Correct.

**Exhibit A**

Q.    And in fact, just in Terre Haute where you used to work, are you familiar with the assaults from just this past month, May of 2011?

A.    I don't track them personally anymore, no.

Q.    But would it shock you to know that --

MR. SHEEHAN:  I'm going to object to the form of the question.

MS. DAYTON:  Okay.  I'll rephrase.

Q.    Are you aware that an assault, there was assault on staff in a housing unit that resulted in that staff member's shoulder being dislocated?

A.    No, I'm not aware of that.

Q.    On the same day, May 2nd, 2011, an inmate punched an officer in the face?

MR. SHEEHAN:  I'm going to object to that.

THE COURT:  What's the basis of your objection?

MR. SHEEHAN:  He already said he wasn't aware of the incident and now she's asking -- I object to the form of the question.

THE COURT:  I can't tell whether it's the same incident or a different incident in the same facility.

MS. DAYTON:  It's a different incident

**Exhibit A**

in a the same facility.

THE COURT: Overruled.

Q. And then on May 13th there were 11 inmates fighting in the rec area. Were you familiar with that incident?

A. No.

Q. On May 16th, this is still Terre Haute, two inmates were fighting with homemade shanks in the SHU unit.

A. No.

Q. Are you familiar with Shannon Agofsky? He's on death row?

A. He came after I left. But I know who he is.

Q. He was in for murder and then he killed an inmate in one of those rec cages that you talked about, right?

A. Correct.

Q. And now he's on death row as well?

A. Yes.

Q. Have you seen the photographs of what the defendant did to his victims in this case?

A. No.

Q. Have you seen the photographs of the assault on Anthony Armstead?

A.    Yes.

Q.    That's a serious assault, isn't it?

A.    If you want to call it that, yeah.

Q.    This man -- was this is after he had, Government's Exhibit 3 from the penalty phase, this was after he had been washed up.  Would you consider this a serious assault?

A.    Possible.

Q.    Possible?

A.    Yeah.

Q.    Okay.  And the fact that he got stitches and staples on his face, this is Government's Exhibit 4 from the penalty phase, his head was cut open behind his ear, his eye, that someone should get disciplined for that, right?

A.    Supposed to, yes.

Q.    So, you -- are you aware that the defendant had a history of assaultive conduct before this case?

A.    I read his DOC file and what Wyatt provided, yes.

Q.    But were you provided, for instance, the evidence in this case like the reports and things like that?

A.    I did review the police report, yes.

**Exhibit A**

3272

Q.   And so you've never interviewed the defendant, right?

A.   No.

Q.   And you no longer work for the Bureau of Prisons; is that fair?

A.   Correct.

Q.   And you haven't in five years.

A.   Correct.

Q.   So, you don't know where the defendant is going to be designated, correct?

A.   I have a professional opinion on it, yes.

Q.   But you don't know where the defendant is going to be designated, correct?

A.   No, I don't.

Q.   And you don't get a say in it, do you?

A.   No.

Q.   And you don't know whether he could continue a pattern of assaultive conduct.

A.   It's possible.

Q.   Thank you.  Thanks for answering my questions.

MS. DAYTON:  I have nothing further at this time, your Honor.

THE COURT:  Redirect.

REDIRECT EXAMINATION

**Exhibit A**

BY MR. SHEEHAN:

Q. Mr. Bezy, in these cases where you're contacted by lawyers like myself who are appointed by the court, how do you get paid?

A. I submit a voucher and I wait until they pay me.

Q. And who do you submit the voucher to?

A. Sometimes I sent it to the government, sometimes I submit it to the attorneys.

Q. And ultimately, you get paid by the court, right?

A. Yes.

Q. I have no further questions.

THE COURT: All right, thank you, Mr. Bezy. You may step down. You are excused.

Will you call your next witness, please.

MR. SHEEHAN: Yes. James Shannon, your Honor.

THE COURT: All right, Mr. Shannon, if you will remain standing with your right hand raised, the oath will be administered to you.

J A M E S   S H A N N O N

Having first affirmed, was examined and testified as follows:

THE WITNESS: My name is James Shannon,

**Exhibit A**

Case 15-2347, Document 35, 07/27/2016, Pages: 4186 of 2
Case 2:11-cr-00077-FFS-APR   Document 1485-2   Filed 05/02/13   Page 1 of 2

A.   What was the number again?

Q.   Sure.  3,801.  And these are actually illegal weapons.  I'm not talking about an extinguisher someone could pick up and use as a weapon.  I'm not talking about a pencil somebody could use as a weapon.  I'm talking about actual weapons that in 2012, 3,801 weapons were confiscated within BOP facilities?  Does that sound right to you?

A.   It sounds a little high, but it's possible.

Q.   Okay.  In 2012, 3,264 illegal, meaning contraband cell phones were recovered in BOP facilities.  Does that sound about right to you?

A.   That sounds high, but I'll take your word for it.

Q.   Okay.  Can't even begin to estimate how many drugs were taken out of BOP facilities?  Do you know how much, how many times illegal drugs, the actual drug was found inside a BOP facility?  I'm not talking about dirty urines.  I'm talking about how many times they actually recovered drugs inside BOP facilities?

A.   No, I don't.

Q.   Can you even fathom a guess?

A.   No, I can't.

Q.   So that wouldn't show up in those 100 numbers, correct?  If we don't even know how many there are, that certainly wouldn't show up in the 100 numbers, would it?

A.   No.  But we use an ion scan machine at Terre Haute, and

77

at the penitentiaries when I retired, we were doing that.  Every visitor came through there, we scanned particle, trace particle for any narcotics, all right?

So I had probably the lowest, because I enforced that rule.  And I don't care if it was a grandmother or a two year old, if they tested positive for any particles of the five drugs we were testing, they weren't allowed in.  And I had the lowest level of drug use in the country.

Q.   Okay.  But they still got through you?  They still got through you?

A.   And I prosecuted the inmates that had them.

Q.   Right, but that's my point.  You're saying with all of these ion scans, with all of the metal detectors, it sounded to me like almost every time a prisoner turned around he was walking through another metal detector at the facility when you were the warden there at Terre Haute.  Every time he left the block, he was going through a metal detector.  When he went from the cafeteria, he was going through a metal detector.  He was going through a metal detector all the time.  They were still finding weapons, right?

A.   Not all weapons are constructed of metal.

Q.   Okay.  That's number one.  And I was going to visit with you about that.  Number one, they're not all constructed out of metal.  Why?  Because prisoners know about the metal detectors, correct?

78

A.   Correct.

Q.   And because deadly weapons, very deadly weapons can be made out of the things that aren't metal, correct?

A.   Correct.

Q.   They can be made out of wood, can't they?

A.   Yes.

Q.   They can be made out of plastic, can't they?

A.   Yes.

Q.   In fact, you know of a situation in California where inmates took a newspaper and they rolled this newspaper up really, really tightly on itself.  You know the situation I'm talking about, right?

A.   What institution?

Q.   It was a state facility in California.  You know the one I'm talking about?

MR. RUHNKE:  I would object about a state facility in California.

THE COURT:  Well --

BY MR. HEGYI:

Q.   It was still a secure facility.  I believe it was Lompoc?

A.   You said it was a state facility of California.  That's California Department of Corrections.

Q.   But now what --

THE COURT:  Wait, wait.  Give me the question again.

79

MR. HEGYI:  Sure.  Sure.

THE COURT:  We have to have the premise clear, the foundation clear, so we can proceed.

MR. HEGYI:  Sure.

THE COURT:  Because you mentioned Lompoc, and Lompoc is not a state facility.

BY MR. HEGYI:

Q.   Let me back up.  You know ADX in Colorado, the supermax?

A.   Right.

Q.   You know of a situation there where a person ended up taking a newspaper, rolling it up tightly, and actually making a spear out of that, right?

A.   I'm aware of that single incident, yes.

Q.   And he took either plastic or fiberglass to harden it into a sharp point, didn't he?

A.   I don't know what he made it out of.  I'm aware of the situation, yes.

Q.   Okay.  And that person then when he was supposed to be cuffed up, and the guard came to the slot, and he actually jammed that spear through and tried to kill the officer, didn't he?

A.   I am not aware of the whole situation.  I've heard the situation.  I'm not aware of the particulars.

Q.   That's what you heard, right?

80

Exhibit B

81

Case 15-2347, Document 35 Filed 07/27/2016 02 Pages 4186 of 2
Case 2:11-cr-00077-PPS-APR Document 1485-2 Filed 05/02/13 Page 2 of 2

A.   Not that he jammed it.  He lunged at the staff with it.

Q.   Right, trying to kill him?

A.   Well, I didn't remember that.

THE COURT:  Trying to injure him.

THE WITNESS:  Injury, yes.

THE COURT:  Okay.

BY MR. HEGYI:

Q.   And this took place not too long after the situation in California where the inmates there rolled up a similar spear out of newspaper, hardened it, and they threw it through not one but two prison guards and killed them both?

MR. RUHNKE:  Your Honor, I object to that.

THE COURT:  Well, approach side bar for a proffer.

(Bench conference held.)

THE COURT:  Give me the proffer.

MR. HEGYI:  He's testified about this and/or he's been asked about this before.

THE COURT:  So you have him on record about that?

MR. HEGYI:  I have to look, but I know my expert Dodrill will be able to talk about this.  And they threw it through one and into another, killing them both.

THE COURT:  One thing is it happened.  Another thing is does he have knowledge.  And I'm asking, do you have evidence he has knowledge?

MR. HEGYI:  I think he does.  If you give me a

81

minute, I can go --

THE COURT:  Let me put it this way.  And perhaps we should take a five-minute recess so you can talk to him.  I'm getting the impression that he is not cooperating on the cross-examination, and if I get that impression, I'm going to open the door and let him do whatever he wants with him.  Is that clear?

MR. RUHNKE:  Your Honor, he's answering the questions.

THE COURT:  No, he's not -- listen.  You are talking to a Judge who's sat 27 years.  He's not cooperating with the cross-examination.  If he doesn't cooperate with the cross-examination, I'll let Mr. Hegyi do what he has to do.  So --

MR. RUHNKE:  Let's take a five-minute recess, and I'll tell him that.

THE COURT:  You better tell him that, because I'm going to do it.

(Bench conference concluded.)

THE COURT:  Let's take a five-minute recess.

COURT SECURITY OFFICER:  All rise.

(At 10:55 AM, recess taken.)

(At 11:04 AM, proceedings reconvened.)

THE COURT:  Please continue.

MR. HEGYI:  Thank you, Your Honor.

82

BY MR. HEGYI:

Q.   Mr. Bezy, you are aware of the situation in California I told you about, correct?

A.   Honestly, I'm not.  I hadn't heard of that.

Q.   You told us before ADX was open that the most secure facility in the U.S. Bureau of Prisons was USP Marion, correct?

A.   Correct.

Q.   And you are aware of a situation at USP Marion where -- and we know that inside of a prison facility, the most secure area inside, the most secure area is the SHU, right?  The special housing unit?

A.   Yes.

Q.   And you are aware that U.S. --

MR. RUHNKE:  I'm going to object to individual incidents of past violence in prison as creating the wrong impression that it's the norm.

THE COURT:  No.

MR. RUHNKE:  And there are lots of things that have happened.

THE COURT:  I think that the same way that you had the opportunity to present the side of the story how secure prisons are, Mr. Hegyi has the same right to present the incidents that happen in prisons so the jury has a complete picture.

83

MR. RUHNKE:  Yes, sir.

THE COURT:  Because the jury has never been in prison.  They were not correctional officers.  They have never visited one.  Probably they have never read about it.  And I think they have to have a complete picture.  That's all.

MR. RUHNKE:  Yes, sir.

BY MR. HEGYI:

Q.   And you are aware that within the most secure area, the SHU, at the time the most secure prison facility in the United States, Marion, that two different correctional officers were murdered on the same day?

A.   Yes.

Q.   Despite the best efforts and despite the fact that that was the most secure facility in the entire Bureau of Prisons at the time; is that correct?

A.   Correct.

Q.   And despite the fact that they were inside the SHU of the most secure facility, correct?

A.   It was a control unit, but it did happen, yes.

Q.   And one was killed first, and then later that same day the next one was killed, right?

A.   Correct.

Q.   Now, we were talking or you were talking with Mr. Ruhnke about the various series, 100 series, 200 series, 300 series, 400 series.  And these are all violations that the BOP has

84

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Respondent, | ) | |
| | ) | No. 02 C 6998 |
| v. | ) | |
| | ) | The Honorable William J. Hibbler |
| | ) | |
| DARRYL LAMONT JOHNSON, | ) | |
| | ) | |
| Defendant-Movant. | ) | |
| | ) | |

**MEMORANDUM OPINION AND ORDER**

In 1997, a jury convicted Darryl Lamont Johnson for ordering the murder of a person assisting in a federal criminal investigation and ordering the murder of that person and another in furtherance of a continuing criminal enterprise, among 41 other counts. The jury later concluded that death was the appropriate sentence. The Seventh Circuit denied Johnson's appeal and the Supreme Court denied his petition for a writ of *certiorari*. *United States v. Johnson*, 223 F.3d 665 (7th Cir. 2000); *Johnson v. United States*, 534 U.S. 829, 122 S. Ct. 71, 151 L.Ed.2d 37 (2001).

Johnson then sought to set aside his sentence pursuant to 28 U.S.C. § 2255. In his petition, Johnson raised a number of claims, including a claim of ineffective assistance of counsel, a claim that the Government withheld exculpatory evidence in violation of *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L.Ed.2d 215 (1963), and a claim that his sentence was based on materially incomplete, false and/or inaccurate information in violation of the Eighth Amendment, *see Johnson v. Mississippi*, 486 U.S. 578, 584-86, 108 S. Ct. 1981, 1986-87, 100 L.Ed.2d 575 (1988). The Court denied Johnson's

1

**Exhibit C**

Case: 1:02-cv-06998 Document #: 112 Filed: 12/13/10 Page 2 of 8 PageID #:1427

Case 2:11-cr-00077-PPS-APR Document 1485-3 Filed 03/02/13 Page 2 of 8
Case 15-2347 Document 35 Filed 07/27/2016 Pages 4186

§ 2255 motion, holding that he procedurally defaulted all three of the aforementioned claims because he failed to raise those claims in his direct appeal.

A few years after the initial ruling on Johnson's § 2255 motion, the Supreme Court announced its decision in *Massaro v. United States*. 538 U.S. 500, 509, 123 S.Ct. 1690, 155 L.Ed.2d 714 (2003). In *Massaro*, the Supreme Court held that a petitioner may bring an ineffective assistance of counsel claim in a collateral proceeding whether or not the petitioner could have raised the claim on direct appeal. *Id.* Consequently, the Court vacated the portion of its ruling concerning Johnson's ineffective assistance of counsel claim.[1] Following discovery, the parties provided the Court with supplemental briefing on the merits of that claim. In addition, Johnson moves the Court to once again address his *Brady* and *Johnson* claims based on what he believes to be changes in relevant law and facts. For the following reasons, the Court grants Johnson's § 2255 motion based on his ineffective assistance of counsel claim. The Court therefore vacates his death sentence and awards him a new sentencing hearing. In addition, Johnson's motion for consideration of his other claims is therefore moot.

## I. Background

Johnson's ineffective assistance claim centers on trial counsel's efforts to convince the jury to impose a sentence of life imprisonment rather than one of death. At Johnson's sentencing, counsel presented evidence about the custodial options for housing him. In particular, Johnson presented evidence to suggest that if he were placed permanently in the control unit in ADX-Florence, where inmates are confined to their cells 23 hours per day and not allowed contact with other inmates, he

---

[1] Another judge in this district initially ruled on Johnson's § 2255 motion and the motion to reconsider pursuant to *Massaro*. The executive committee has since reassigned the case.

2

**Exhibit C**

3279

would have no opportunity to carry out a continuing criminal enterprise and his dangerousness to society would be mitigated.

In rebuttal, the Government called an expert, a Bureau of Prisons (BOP) warden, who had formerly served as Assistant Warden at ADX-Florence. That witness testified generally about what BOP placement was likely in Johnson's case. He testified that typically gang leaders like Johnson go to the general prison population, rather than some more restrictive setting. He also testified that even prisoners in strictly controlled environments had managed to commit crimes, including ordering the killing of other inmates. He stated that the BOP could not house prisoners in such strict conditions indefinitely. Finally, he claimed that prisoners cannot be directly assigned to the ADX-Florence control unit based solely on the offenses in the community. Instead, he said, the BOP could temporarily impose restrictions on an inmate, such as limited communication and association, if the inmate committed some infraction while in prison.

Not even one member of the jury accepted Johnson's proposed finding that he would not be "a serious and continuing danger to the society because the government has the power to imprison him for the rest of his life in a maximum security federal prison designed to control and monitor his behavior." The jury did find a number of aggravating factors, both statutory and non-statutory. In particular, the jury found that Johnson caused the killing after substantial planning and premeditation in the course of a continuing criminal enterprise that involved distribution of drugs to persons under the age of 21. It also found that he ordered the murder to obstruct justice by preventing the victim from testifying and caused harm to the victim's family. After its somewhat lengthy deliberations, the jury sentenced Johnson to death.

3

**Exhibit C**

Case: 1:02-cv-06998 Document #: 112 Filed: 12/13/10 Page 4 of 8 PageID #:1429
Case 15-2347 Document: 35 Filed: 07/27/2016 Pages: 4186
Case 2:11-cr-00077-PPS-APR Document 1485-3 Filed 03/02/13 Page 4 of 8

In Johnson's § 2255 motion, he argues that he was prejudiced by his trial counsel's failure to investigate the law and facts necessary to subject the Government's case on future dangerousness to meaningful adversarial testing. In short, Johnson suggests that trial counsel was ineffective in allowing the Government expert's testimony to go unrebutted.

Johnson argues that, contrary to the Government expert's testimony, there are laws which allow for the application of strict conditions of confinement for extended periods of time absent any infraction within prison in order to alleviate the risk a particular inmate poses to society. First, the BOP can control the conditions of confinement by employing Special Administrative Measures ("SAMs") authorized by 28 C.F.R. § 501.3(a). Second, courts can order restrictions on communication and association as part of a sentence pursuant to 18 U.S.C. § 3582(d). In fact, Johnson has presented evidence of a number of examples of such inmates in addition to those in his original motion.

## II. Standard of Review

In order to succeed on his claim of ineffective assistance of counsel, a § 2255 movant must meet both prongs of a test set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L.Ed. 2d 674 (1984). First, he must show that his counsel's performance was deficient. *Id.* at 687, 104 S. Ct. at 2064. In this case, the Government concedes the point, agreeing with Johnson that his trial counsel did not effectively impeach the testimony of the Government's expert regarding Johnson's future dangerousness. Instead, the Government disputes only whether Johnson can satisfy the second prong of the *Strickland* test. Thus, Johnson must show that his counsel's deficient performance prejudiced his defense. *Id.* More specifically, he must show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694, 104 S. Ct. at 2068.

4

**Exhibit C**

Case: 1:02-cv-06998 Document #: 112 Filed: 12/13/10 Page 5 of 8 PageID #:1430
Case 2:11-cr-00077-PPS-APR Document 1485-3 Filed 03/02/13 Page 5 of 8
Case 15-2347 Document 35 Filed 07/27/2016 Pages 4186

A "reasonable probability," for purposes of this standard, is "a probability sufficient to undermine confidence in the outcome" of the penalty phase of Johnson's trial. *Id.* The standard is lower than the more familiar "preponderance of the evidence" standard because an ineffective assistance claim "asserts the absence of one of the crucial assurances that the result of the proceeding is reliable, so finality concerns are somewhat weaker." *Id.* However, Johnson must show more than that his counsel's errors "had some conceivable effect on the outcome of the proceeding." *Id.* at 693, 104 S. Ct. at 2067.

### III. Analysis

In addition to conceding that Johnson's counsel was deficient, the Government conceded at the *certiorari* stage of Johnson's direct appeal that the testimony of the Government's expert was incomplete because he failed to mention 28 C.F.R. § 501.3 and 18 U.S.C. § 3582(d). The Government admitted that the testimony may have left the jury with the mistaken impression that neither the BOP nor the Court had the authority to impose certain restrictions on an inmate immediately upon sentencing. Nonetheless, the Government argues that Johnson cannot show that defense counsel's failure to impeach the witness on those matters created a reasonable probability that the jury would not have sentenced Johnson to death.

For a number of reasons, the Court rejects the Government's argument. First, the Court finds that the probability that the errors affected Johnson's sentence is higher in this case than in some because the errors were relevant to the issue of future dangerousness. The Court recognizes the importance of the fact that the jury in Johnson's case found a number of aggravating factors that did not relate to Johnson's future dangerousness. But the Court finds that future dangerousness, and the Government's ability to protect against it, is an especially important factor in death penalty cases generally, as well as in this case particularly.

5

**Exhibit C**

Case: 1:02-cv-06998 Document #: 112 Filed: 12/13/10 Page 6 of 8 PageID #:1431
Case: 15-2347 Document: 35 Filed: 07/27/2016 Pages: 4186
Case 2:11-cr-00077-PPS-APR Document 1485-3 Filed 09/02/15 Page 6 of 8

On this point, the Government's closing argument from the penalty phase of Johnson's trial is telling. The Government devoted a significant portion of its arguments in closing and rebuttal to the issue of future dangerousness and the likelihood that Johnson could not be controlled in prison - perhaps more than to any other aggravating or mitigating factor. The Government's language on these points was strong and clear. The Government stated that "as long as [Johnson] has the ability to convey his orders to his followers, either on the street or in prison with him, nobody is safe; no witness, no witness's family, anybody who stands in his way, they are not safe. It doesn't matter where he is locked up." (Tr. 2593.) Moreover, the Government reiterated the admittedly incomplete and misleading testimony of its expert by stating, among other things, that Johnson would not be going to the control unit at ADX-Florence because federal regulations would not allow it. (Tr. 2645.) The Government's focus on these points suggests that it recognized the potential importance of this factor on the jury's decision in this case.

This conclusion also finds support in the empirical research on the subject. A number of studies suggest that future dangerousness is one of the most issues, if not the most significant, for juries deciding whether or not to sentence a defendant to death. *See, e.g.,* John H. Blume, et al., *Future Dangerousness in Capital Cases: Always "At Issue"*, 86 Cornell L. Rev. 397, 404 (2001); Stephen P. Garvey, *Aggravation and Mitigation in Capital Cases: What do Jurors Think?*, 98 Colum. L. Rev. 1538, 1559-60 (1998); Sally Costanzo & Mark Costanzo, *Life or Death Decisions: An Analysis of Capital Jury Decision Making Under the Special Issues Sentencing Framework*, 18 Law & Hum. Behav. 151, 160 (1994) ("[n]early all jurors [surveyed]...offered the observation that the penalty decision hinged on the issue of whether the defendant would pose a continuing threat to society").

**Exhibit C**

3282

Johnson also points to an analogous case that illustrates the importance that this factor can have on a jury. In that case, *United States v. Jones*, No. CR-96-458-WMN (D. Md.), a jury convicted Jones of ordering the murders of federal witnesses, including one while he was incarcerated in a federal prison. The *Jones* jury found a number of the same aggravating factors as the jury did in this case, including that he was a future danger and a "continuing and serious threat to society." However, seven members of the jury also found that:

> Any concern respecting future dangerousness of Anthony Jones is significantly reduced since the Federal Bureau of Prisons is empowered to classify a prisoner serving a life sentence without possibility of release to the highest security level federal prison, under conditions of confinement that eliminate any reasonable probability that the prisoner will be a continuing and serious threat to society.

The jury did not sentence Jones to death. Johnson notes that the jury in the *Jones* case heard testimony regarding the restrictive conditions that could be imposed on Jones and that had been imposed in another case.

The Government is right to note that the fact of every case and make-up of every jury varies, and that it would be wrong to assume that the jury would do the same in Johnson's case as the jury did in Jones's case if Johnson had effective assistance of counsel. But, the Government is notably silent in its brief on how the two cases are distinguishable. And the similarities between the facts of these two cases which have different results undermines the reliability of the result in Johnson's case further.

As discussed above, Johnson faces a relatively low burden in this case. Given that "it only takes one juror to nix a death sentence," *United States v. Johnson*, 223 F.3d 665, 670 (7th Cir. 2000), he only needs to show a reasonable probability that one juror would have changed his or her mind during the course of the lengthy deliberations in this case. Johnson has shown that his future dangerousness, the

7

**Exhibit C** 3283

factor admittedly affected by his counsel's errors, was likely an important factor in the jurors' minds, weighing heavily on the scale for measuring aggravating and mitigating factors. Given this showing, the Court finds that there is a reasonable probability that if Johnson had effective assistance of counsel, the jury would not have sentenced him to death. He has sufficiently undermined the reliability of the penalty phase of his trial. Thus, the Court GRANTS Johnson's § 2255 motion, VACATES his death sentence, and ORDERS that he be given a new hearing before a jury to determine his sentence.

IT IS SO ORDERED.

_12/13/10_
Dated

_Wm. J. Hibbler_
Hon. William J. Hibbler
United States District Court

8

**Exhibit C**

3284

```
MIME-Version:1.0
From:CMECFinnd@innd.uscourts.gov
To:CMECFinnd@localhost.localdomain
Bcc:
--Case Participants: Pablo DeCastro (pdecastro@attorneydecastro.com,
ysierra@rascia-decastro.com), Kurt R Earnst (kre@braje-nelson.com), Matthew N Fech
(mnf@fech-law.com), Arlington J Foley (arlingtonfoley@att.net), Jack Friedlander
(jack@jackfriedlander.com, office@jackfriedlander.com), Bruce R Hegyi - AUSA
(bruce.hegyi@usdoj.gov), Roxanne Mendez Johnson (attorneyrmj@gmail.com), Scott L King
(dwilliams@scottkinggroup.com, sking@scottkinggroup.com), Visvaldis P Kupsis
(vpkupsis@hotmail.com), Dean R Lanter - AUSA (dean.lanter@usdoj.gov,
janet.eisenmann@usdoj.gov, usainn.ecfcivil@usdoj.gov), John Maksimovich
(criminallaw@johnmaksimovich.com), John E Martin - FCD (john_martin@fd.org), Sheldon B
Nagelberg (sbnagelberglaw@att.net), David J Nozick - AUSA (david.nozick@usdoj.gov,
janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov,
usainn.ecfcivil@usdoj.gov), Mark A Psimos (psimoslaw@airbaud.net), Robert L Rascia
(rrascia@rascia-decastro.com, ysierra@rascia-decastro.com), Stephen Edward Scheele
(pkd@gk4law.com, ses@gk4law.com), Paul Jeffrey Schlesinger (pjeffslaw@aol.com), Adam
Tavitas (adtavitas@aol.com, b.lynneadams@yahoo.com), John T Theis (theislaw@aol.com),
James N Thiros (jim@thiros.com, lynn@thiros.com), Bryan M Truitt (bryan@tblawyers.com,
sherrie@tblawyers.com), David E Vandercoy (david.vandercoy@valpo.edu), Thomas W Vanes
(b.lynneadams@yahoo.com, tom.vanes@sbcglobal.net), Ihor Alexander Woloshansky
(ihorlawyer@hotmail.com), Richard C Wolter (b.lynneadams@yahoo.com), R Brian Woodward
(carolb@wbbklaw.com, rbwoodward@wbbklaw.com), Magistrate Judge Andrew P Rodovich
(rodovich_chambers@innd.uscourts.gov, ruth_nagy@innd.uscourts.gov), Chief Judge Philip P
Simon (denise_woodside@innd.uscourts.gov, jacob_hamann@innd.uscourts.gov,
lauren_schwartz@innd.uscourts.gov, mira_serrill-robins@innd.uscourts.gov,
noel_collins@innd.uscourts.gov, philip_simon@innd.uscourts.gov)
--Non Case Participants: Matthew D Soliday (office@matthewsolidaylaw.com)
--No Notice Sent:

Message-Id:2718022@innd.uscourts.gov
Subject:Activity in Case 2:11-cr-00077-PPS-APR United States of America v. Briseno et al
Jury Trial
Content-Type: text/html
```

### U.S. District Court Northern District of Indiana [LIVE]

### USDC Northern Indiana

## Notice of Electronic Filing

The following transaction was entered on 3/2/2015 at 3:11 PM EST and filed on 2/27/2015

| | |
|---|---|
| **Case Name:** | United States of America v. Briseno et al |
| **Case Number:** | 2:11-cr-00077-PPS-APR |
| **Filer:** | |
| **Document Number:** | 1486(No document attached) |

**Docket Text:**

**JURY TRIAL (15th DAY – DELIBERATION and VERDICT) as to Juan Briseno held on 2/27/2015 before Chief Judge Philip P Simon. Parties present as previously noted. Jurors (12) return to deliberate, commence deliberation at 8:20 a.m. and advise the Court they have reached a verdict at approximately 7:30 p.m. During deliberation one note received from the jury asking to view a particular piece(s) of evidence. Parties/Court assemble to discuss note, Govt physical exhibits 34, 35, 36 and 37 are provided to the jury for their examination. Jury in open court to return verdicts (8:07 p.m.): FINDING dft Juan Briseno: GUILTY on Counts 1 and**

**2. Count 9–GUILTY. Count 13–GUILTY. Count 15–GUILTY. Count 17–NOT GUILTY. Count 19–GUILTY. Count 21–GUILTY. Count 23–GUILTY. Count 24–GUILTY. Count 27–NOT GUILTY. Count 28–NOT GUILTY. Count 29–NOT GUILTY. Count 30–NOT GUILTY. Jury polled with no change in verdicts. Court orders that the jury return for the penalty phase on Tuesday, March 3, 2015 by 8:00 a.m., to begin at 8:30 a.m. The alternate jurors will be called personally to advise them of the date and time to report. Projected time frame for penalty phase is less than one week. Jury reminded not to listen, read or do any research into this case even though now the verdcits have been returned, the trial is not yet concluded. Jury excused. Forefeiture issue briefly discussed, the dft does not contest the forefeiture. Deadline for motion regarding tattoos to be filed by Saturday, 2/28/2015. Next proceeding: penalty phase to begin on Tuesday, 3/3/2015 at 8:30 a.m. Defendant REMANDED to custody of US Marshal.(Court Reporter Stacy Drohosky.) (nac)**

**2:11–cr–00077–PPS–APR–1 Notice has been electronically mailed to:**

David E Vandercoy    david.vandercoy@valpo.edu

Arlington J Foley    arlingtonfoley@att.net

Mark A Psimos    psimoslaw@airbaud.net

Scott L King    sking@scottkinggroup.com, dwilliams@scottkinggroup.com

James N Thiros    jim@thiros.com, lynn@thiros.com

Thomas W Vanes    tom.vanes@sbcglobal.net, b.lynneadams@yahoo.com

Ihor Alexander Woloshansky    ihorlawyer@hotmail.com

R Brian Woodward    rbwoodward@wbbklaw.com, carolb@wbbklaw.com

John Maksimovich    criminallaw@johnmaksimovich.com

Visvaldis P Kupsis    vpkupsis@hotmail.com

Sheldon B Nagelberg    sbnagelberglaw@att.net

John E Martin – FCD    john_martin@fd.org

Adam Tavitas    Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander    jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele    ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst    kre@braje–nelson.com

Bryan M Truitt    bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis    theislaw@aol.com

Robert L Rascia    rrascia@rascia−decastro.com, ysierra@rascia−decastro.com

Paul Jeffrey Schlesinger    pjeffslaw@aol.com

Matthew N Fech    mnf@fech−law.com

Pablo DeCastro    pdecastro@attorneydecastro.com, ysierra@rascia−decastro.com

Dean R Lanter − AUSA    dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov,
janet.eisenmann@usdoj.gov

David J Nozick − AUSA    David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov,
janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson    attorneyrmj@gmail.com

Bruce R Hegyi − AUSA    bruce.hegyi@usdoj.gov

**2:11−cr−00077−PPS−APR−1 Notice has been delivered by U.S. Mail or other means to:**

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

UNITED STATES OF AMERICA,

          **Plaintiff**

**vs**

**JUAN BRISENO,**

          **Defendant**                 **CAUSE NO:   2:11-CR-77**

**REPLY TO GOVERNMENT'S RENEWED MOTION FOR
PRODUCTION OF UNPRIVILEGED, NON-TESTIMONIAL,
EVIDENCE AND DECLARATION AND SUPPORT THEREOF**

Comes now Defendant, by counsel John Maksimovich and Arlington Foley, and state the following:

1.      In it's Renewed Motion for Production of Unprivileged, Non-testimonial, Evidence and Declaration and Support Thereof, the government asserts that the Defendant has inscribed somewhere upon his body a tattoo that reads "FUCK THE FEDS" and that the Court, pursuant to it's inherent judicial powers, without issuance of a search warrant based upon probable cause, can order the Defendant to reveal the tattoo so that the government can photograph it and present it to the jury during the penalty phase of Mr. Briseno's death penalty trial.

2.      The government's filing does not cite a single case that says requiring the defendant to submit to photographing of non-visible tattoos on his body is exempt from the Fourth Amendment.  In it's filing, the government analogizes Mr. Briseno's tattoos to voices, faces, fingerprints, and handwriting, i.e. matters or areas "constantly exposed to the public."  The government's analogy is disingenuous.

-1-

3.      In *United States v. Meregildo*, 876 F. 2d 445, 450-51 (S.D.N.Y. 2012), the Court

held that requiring a federal criminal defendant "to permit the photographing of tattoos and scars

on their arms, legs, and torso" (via a subpoena to appear and do so in a grand jury) "is a Fourth

Amendment search."   The *Meregildo* court distinguished voices, faces, fingerprints, and

handwriting as involving matters or areas constantly exposed to public.

4.      Other courts have ruled similarly.  In *Pace v. City of Des Moines*, 201 F.3d 1050,

1053-1054 (8th Cir. 200), a civil rights case, the Court found that directing a Terry-stopped

detainee to remove his shirt so a cop could photograph a tattoo on his chest also was a Fourth

Amendment search.  Likewise, in *United States v. Hanson,* 2005 WL 2716506, 8 (W.D. Wisc.

2005) the court held that lifting a detainee's shirt to look for chest tattoos was a Fourth

Amendment search.

**WHEREFORE**, Defendant, through counsel respectfully requests this Court deny the

government's request and for all other just and proper relief.

**Respectfully submitted:**

/s/ *Arlington Foley*
_____
Arlington Foley /#6905-45
Attorney For Defendant
1942 North Main Street
Crown Point, IN 46307
PH: 219.661.1200
FX: 219.661.1205

/s/ *John Maksimovich*
_____
John Maksimovich /#9950-45
Attorney For Defendant
1946 North Main Street
Crown Point, IN 46307
PH: 219.663.1900
FX: 219.663.1908

3289

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | |
| **Plaintiff** | |
| **vs** | |
| **JUAN BRISENO,** | |
| **Defendant** | **CAUSE NO: 2:11-CR-77** |

## CERTIFICATE OF SERVICE

I hereby certify that on March 2, 2015, I electronically filed:

*Reply to Government's Renewed Motion for Production of Unprivileged,*
*Non-testimonial, Evidence and Declaration and Support Thereof*

with the Clerk of the Court using the CM/ECF system, which sent notification of such filing to the following:

| | |
|---|---|
| David J. Nozick | Bruce Hegyi |
| Assistant United States Attorney | Assistant United States Attorney |

and I hereby certify that I have mailed by United States Postal Service, the document to the following non-CM/ECF participants:

N/A

By: /s/ *John Maksimovich*

John Maksimovich /#9950-45
Attorney For Defendant
1946 North Main Street
Crown Point, IN 46307
PH: 219.663.1900
FX: 219.663.1908
E-Mail: criminallaw@johnmaksimovich.com

-3-

3290

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

UNITED STATES OF AMERICA          )
                                  )
        vs.                       )        2:11-cr-00077
                                  )
JUAN BRISEÑO                      )

**VERDICT FORM (GUILT PHASE)**

Dated: February 26, 2015.

/s/ Philip P. Simon
PHILIP P. SIMON, CHIEF JUDGE
UNITED STATES DISTRICT COURT

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| vs. | ) | 2:11-cr-00077 |
| | ) | |
| JUAN BRISEÑO | ) | |

## VERDICT

### COUNT 1 (Racketeering Conspiracy)

As to the charge in Count One, we, the jury, find the Defendant, JUAN BRISEÑO:

Not Guilty _____          Guilty _____✓_____


If you found the Defendant not guilty of Count One, proceed directly to Count Two.


If you found the Defendant guilty of Count One, you will need to answer the following six questions.


1.   If you found the Defendant JUAN BRISEÑO guilty of Count One, do you also unanimously find beyond a reasonable doubt that Defendant JUAN BRISEÑO committed the murder of Luis Ortiz?


No _____          Yes _____✓_____


2.   If you found the Defendant JUAN BRISEÑO guilty of Count One, do you also unanimously find beyond a reasonable doubt that Defendant JUAN BRISEÑO committed the murder of Michael Sessum?


No _____          Yes _____✓_____

1

3292

3.    If you found the Defendant JUAN BRISEÑO guilty of Count One, do you also unanimously find beyond a reasonable doubt that Defendant JUAN BRISEÑO committed the murder of Miguel Mejias?

No _____          Yes _____✓_____

4.    If you found the Defendant JUAN BRISEÑO guilty of Count One, do you also unanimously find beyond a reasonable doubt that Defendant JUAN BRISEÑO committed the murder of Harris Brown?

No _____✓_____          Yes _____

5.    If you found the Defendant JUAN BRISEÑO guilty of Count One, do you also unanimously find beyond a reasonable doubt that Defendant JUAN BRISEÑO committed the murder of Miguel Colon?

No _____          Yes _____✓_____

6.    If you found the Defendant JUAN BRISEÑO guilty of Count One, do you also unanimously find beyond a reasonable doubt that Defendant JUAN BRISEÑO committed the murder of Latroy Howard?

No _____          Yes _____✓_____

SIGNATURES
REDACTED

_2/27/15_
Date

_2-27-15_
Date

_2/27/15_
Date

2

SIGNATURES
REDACTED

2/27/15
Date

2/27/15
Date

2/27/15
Date

2/27/15
Date

2/27/15
Date

02/27/15
Date

2-27-15
Date

2/27/2015
Date

2-27-15
Date

3294

## COUNT 2 (Drug Conspiracy)

As to the charge in Count Two we, the jury, find the Defendant, JUAN BRISEÑO:

Not Guilty _____          Guilty_____✓_____

 

If you found the Defendant JUAN BRISEÑO not guilty of Count Two, proceed directly to Count Nine.

If you found the Defendant guilty of Count Two, you will need to answer the following questions.

 

1.      Which of the following offenses do you unanimously find beyond a reasonable doubt were an object of the conspiracy? (Check all of the following options below that the jury unanimously agrees beyond a reasonable doubt were an object of the conspiracy.)

     ___✓___      Distribution of marijuana

     ___✓___      Distribution of cocaine

     ___✓___      Possession with intent to distribute marijuana

     ___✓___      Possession with intent to distribute cocaine

 

2.      If you found that the distribution of marijuana or the possession with intent to distribute marijuana was an object of the conspiracy, did the conspiracy involve (check the appropriate box below):

     _____      less than 50 kilograms of a mixture or substance containing a detectable amount of marijuana

     _____      at least 50 kilograms but less than 100 kilograms of a mixture or substance containing a detectable amount of marijuana

     ___✓___      more than 100 kilograms of a mixture or substance containing a detectable amount of marijuana

3295

3.     If you found that the distribution of cocaine or the possession with intent to distribute cocaine was an object of the conspiracy, did the conspiracy involve (check the appropriate box below):

_____     less than 500 grams of a mixture or substance containing a detectable amount of cocaine

_____     at least 500 grams but less than 5 kilograms of a mixture or substance containing a detectable amount of cocaine

✓_____     more than 5 kilograms of a mixture or substance containing a detectable amount of cocaine

SIGNATURES
REDACTED

2/27/15
ate

2-27-15
ate

2/27/15
Date

2/27/15
Date

2/27/15
Date

2/27/15
Date

2/27/15
Date

2/27/15
Date

02/27/15
Date

5

3296

SIGNATURES
REDACTED

2-27-15
Date

2/27/15
Date

2-27-15
Date

3297

## COUNT 9 (Murder of Luis Ortiz aka "Manolo")

As to the charge in Count Nine we, the jury, find the Defendant, JUAN BRISEÑO:

Not Guilty _____     Guilty ___✓___

SIGNATURES
REDACTED

2/27/15
Date

2-27-15
Date

2/27/15
Date

2/27/15
Date

2/27/15
Date

2/27/15
Date

2/27/15
Date

2/27/15
Date

02/27/15
Date

2-27-15
Date

2/27/15
Date

2-27-15
Date

7

**COUNT 13 (Murder of Michael Sessum)**

As to the charge in Count Thirteen we, the jury, find the Defendant, JUAN BRISEÑO:

_____ Not Guilty          _____ Guilty ✓ _____

SIGNATURES
REDACTED

2/27/15
Date

2-27-15
Date

2/27/15
Date

2/27/15
Date

2/27/15
Date

2/27/15
Date

2/27/15
Date

2/27/15
Date

02/27/15
Date

2-27-15
Date

2/27/15
Date

2-27-15
Date

8

3299

## COUNT 15 (Murder of Miguel Mejias aka "King Nelly")

As to the charge in Count Fifteen we, the jury, find the Defendant, JUAN BRISEÑO:

Not Guilty _____     Guilty _____✓_____

SIGNATURES
REDACTED

2/27/15
Date

2-27-15
Date

2/27/15
Date

2/27/15
Date

2/27/15
Date

2/27/15
Date

2/27/15
Date

2/27/15
Date

2/27/15
Date

2-27-15
Date

2/27/15
Date

2-27-15
Date

9

3300

## COUNT 17 (Murder of Harris Brown)

As to the charge in Count Seventeen we, the jury, find the Defendant, JUAN BRISEÑO:

Not Guilty ___✓___     Guilty _____

SIGNATURES
REDACTED

2/27/15
Date

2-27-15
Date

2/27/15
Date

2/27/15
Date

2/27/15
Date

2/27/15
Date

2/27/15
Date

2/27/15
Date

02/27/15
Date

2-27-15
Date

2/27/15
Date

2.27.15
Date

10

3301

## COUNT 19 (Murder of Miguel Colon aka "Migs")

As to the charge in Count Nineteen we, the jury, find the Defendant, JUAN BRISEÑO:

Not Guilty _____     Guilty ___✓___

SIGNATURES REDACTED

2/27/15
Date

2-27-15
Date

2/27/15
Date

2/27/15
Date

2/27/15
Date

2/27/15
Date

2/27/15
Date

2/27/15
Date

02/27/15
Date

2-27-15
Date

2/27/15
Date

2-27-15
Date

11

3302

## COUNT 21 (Murder of Latroy Howard)

As to the charge in Count Twenty-One we, the jury, find the Defendant, JUAN BRISEÑO:

Not Guilty _____      Guilty ___✓___

SIGNATURES
REDACTED

2/27/15
ate

2-27-15
ate

2/27/15
ate

2/27/15
ate

2/27/15
ate

2/27/15
Date

2/27/15
Date

2/27/15
Date

2/27/15
Date

2-27-15
Date

2/27/15
Date

2-27-15
Date

12

3303

**COUNT 23 (Attempted Murder of Marissa Harper)**

As to the charge contained in Count Twenty-Three we, the Jury, find the Defendant JUAN BRISEÑO:

Not Guilty _____　　Guilty ___✓___

SIGNATURES
REDACTED

2/27/15
Date

2-27-15
Date

2/27/15
Date

8/27/15
Date

2/27/15
Date

2/27/15
Date

2/27/15
Date

2/27/15
Date

02/27/15
Date

2-27-15
Date

2/27/15
Date

2-27-15
Date

13

3304

## COUNT 24 (Firearm Count)

As to the charge in Count Twenty-Four we, the jury, find the Defendant, JUAN BRISEÑO:

Not Guilty _____          Guilty ___✓___

If you found the Defendant JUAN BRISEÑO not guilty of Count Twenty-Four, proceed directly to Count Twenty-Seven.

If you found the Defendant guilty of Count Twenty-Four, you will need to answer the following question.

1.  Which of the following propositions do you unanimously find beyond a reasonable doubt that Defendant JUAN BRISEÑO knowingly did? (Check all of the following options below that the jury unanimously agrees beyond a reasonable doubt that Defendant JUAN BRISEÑO knowingly did.)

___✓___  discharge a firearm during and in relation to the crime of attempted murder in aid of racketeering as charged in Count Twenty-Three

___✓___  carry a firearm during and in relation to the crime of attempted murder in aid of racketeering as charged in Count Twenty-Three

___✓___  use a firearm during and in relation to the crime of attempted murder in aid of racketeering as charged in Count Twenty-Three

SIGNATURES REDACTED

_2/27/15_
Date

_2-27-15_
Date

_2/27/15_
Date

14

3305

SIGNATURES
REDACTED

2/27/15
Date

2/27/15
Date

2/27/15
Date

2/27/15
Date

2/27/15
Date

2/27/15
Date

2-27-15
Date

2/27/15
Date

2-27-15
Date

15

3306

## COUNT 27 (Attempted Murder of Joseph Medina)

As to the charge contained in Count Twenty-Seven we, the Jury, find the Defendant JUAN BRISEÑO:

Not Guilty _____✓_____        Guilty _____

SIGNATURES
REDACTED

_____2/27/15_____
Date

_____2-27-15_____
Date

_____2/27/15_____
Date

_____2/27/15_____
Date

_____2/27/15_____
Date

_____2/27/15_____
Date

_____2/27/15_____
Date

_____2/27/15_____
Date

_____2/27/15_____
Date

_____2-27-15_____
Date

_____2/27/15_____
Date

_____2-27-15_____
Date

16

3307

## COUNT 28 (Firearm Count)

As to the charge in Count Twenty-Eight we, the jury, find the Defendant, JUAN BRISEÑO:

Not Guilty ____✓____                Guilty _____

If you found the Defendant JUAN BRISEÑO not guilty of Count Twenty-Eight, proceed directly to Count Twenty-Nine.

If you found the Defendant guilty of Count Twenty-Eight, you will need to answer the following question.

1.      Which of the following propositions do you unanimously find beyond a reasonable doubt that Defendant JUAN BRISEÑO knowingly did? (Check all of the following options below that the jury unanimously agrees beyond a reasonable doubt that Defendant JUAN BRISEÑO knowingly did.)

_____     discharge a firearm during and in relation to the crime of attempted murder in aid of racketeering as charged in Count Twenty-Seven

_____     carry a firearm during and in relation to the crime of attempted murder in aid of racketeering as charged in Count Twenty-Seven

_____     use a firearm during and in relation to the crime of attempted murder in aid of racketeering as charged in Count Twenty-Seven

SIGNATURES
REDACTED

2/27/15
Date

2-27-15
Date

2/27/15
Date

3308

SIGNATURES
REDACTED

8/27/10
_____
Date

2/27/15
_____
Date

2/27/15
_____
Date

2/27/15
_____
Date

2/27/15
_____
Date

02/27/15
_____
Date

2-27-15
_____
Date

2/27/15
_____
Date

2-27-15
_____
Date

18

3309

## COUNT 29 (Attempted Murder of Joshua Roberts)

As to the charge contained in Count Twenty-Nine we, the Jury, find the Defendant JUAN BRISEÑO:

Not Guilty ____✓____    Guilty _____

SIGNATURES
REDACTED

2/27/15
Date

2-27-15
Date

2/27/15
Date

2/27/15
Date

2/27/15
Date

2/27/15
Date

2/27/15
Date

2/27/15
Date

02/27/15
Date

2-27-15
Date

2/27/15
Date

2-27-15
Date

19

3310

## COUNT 30 (Firearm Count)

As to the charge in Count Thirty we, the jury, find the Defendant, JUAN BRISEÑO:

Not Guilty ____✓____          Guilty_____

If you found the Defendant JUAN BRISEÑO not guilty of Count Thirty, do not answer the following question.

If you found the Defendant guilty of Count Thirty, you will need to answer the following question.

1.   Which of the following propositions do you unanimously find beyond a reasonable doubt that Defendant JUAN BRISEÑO knowingly did? (Check all of the following options below that the jury unanimously agrees beyond a reasonable doubt that Defendant JUAN BRISEÑO knowingly did.)

_____      discharge a firearm during and in relation to the crime of attempted murder in aid of racketeering as charged in Count Twenty-Nine

_____      carry a firearm during and in relation to the crime of attempted murder in aid of racketeering as charged in Count Twenty-Nine

_____      use a firearm during and in relation to the crime of attempted murder in aid of racketeering as charged in Count Twenty-Nine

SIGNATURES
REDACTED

_2/27/15_
Date

_2-27-15_
Date

_2/27/15_
Date

20

3311

SIGNATURES
REDACTED

2/27/15
Date

2/27/15
Date

2/27/15
Date

2/27/15
Date

2/27/15
Date

02/27/15
Date

2-27-15
Date

2/27/15
Date

2-27-15
Date

21

3312

```
MIME-Version:1.0
From:CMECFinnd@innd.uscourts.gov
To:CMECFinnd@localhost.localdomain
Bcc:
--Case Participants: Pablo DeCastro (pdecastro@attorneydecastro.com,
ysierra@rascia-decastro.com), Kurt R Earnst (kre@braje-nelson.com), Matthew N Fech
(mnf@fech-law.com), Arlington J Foley (arlingtonfoley@att.net), Jack Friedlander
(jack@jackfriedlander.com, office@jackfriedlander.com), Bruce R Hegyi - AUSA
(bruce.hegyi@usdoj.gov), Roxanne Mendez Johnson (attorneyrmj@gmail.com), Scott L King
(dwilliams@scottkinggroup.com, sking@scottkinggroup.com), Visvaldis P Kupsis
(vpkupsis@hotmail.com), Dean R Lanter - AUSA (dean.lanter@usdoj.gov,
janet.eisenmann@usdoj.gov, usainn.ecfcivil@usdoj.gov), John Maksimovich
(criminallaw@johnmaksimovich.com), John E Martin - FCD (john_martin@fd.org), Sheldon B
Nagelberg (sbnagelberglaw@att.net), David J Nozick - AUSA (david.nozick@usdoj.gov,
janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov,
usainn.ecfcivil@usdoj.gov), Mark A Psimos (psimoslaw@airbaud.net), Robert L Rascia
(rrascia@rascia-decastro.com, ysierra@rascia-decastro.com), Stephen Edward Scheele
(pkd@gk4law.com, ses@gk4law.com), Paul Jeffrey Schlesinger (pjeffslaw@aol.com), Adam
Tavitas (adtavitas@aol.com, b.lynneadams@yahoo.com), John T Theis (theislaw@aol.com),
James N Thiros (jim@thiros.com, lynn@thiros.com), Bryan M Truitt (bryan@tblawyers.com,
sherrie@tblawyers.com), David E Vandercoy (david.vandercoy@valpo.edu), Thomas W Vanes
(b.lynneadams@yahoo.com, tom.vanes@sbcglobal.net), Ihor Alexander Woloshansky
(ihorlawyer@hotmail.com), Richard C Wolter (b.lynneadams@yahoo.com), R Brian Woodward
(carolb@wbbklaw.com, rbwoodward@wbbklaw.com), Magistrate Judge Andrew P Rodovich
(rodovich_chambers@innd.uscourts.gov, ruth_nagy@innd.uscourts.gov), Chief Judge Philip P
Simon (denise_woodside@innd.uscourts.gov, jacob_hamann@innd.uscourts.gov,
lauren_schwartz@innd.uscourts.gov, mira_serrill-robins@innd.uscourts.gov,
noel_collins@innd.uscourts.gov, philip_simon@innd.uscourts.gov)
--Non Case Participants: Matthew D Soliday (office@matthewsolidaylaw.com)
--No Notice Sent:

Message-Id:2718341@innd.uscourts.gov
Subject:Activity in Case 2:11-cr-00077-PPS-APR United States of America v. Briseno et al
Order Dismissing Counts
Content-Type: text/html
```

### U.S. District Court Northern District of Indiana [LIVE]

### USDC Northern Indiana

### Notice of Electronic Filing

The following transaction was entered on 3/2/2015 at 4:51 PM EST and filed on 12/12/2014

| | |
|---|---|
| **Case Name:** | United States of America v. Briseno et al |
| **Case Number:** | 2:11-cr-00077-PPS-APR |
| **Filer:** | |
| **Document Number:** | 1490(No document attached) |

**Docket Text:**
 **DISMISSAL of COUNTS 10, 14, 16, 18, 20 and 22 of the 4th Superseding Indictment which is Docket Entry [1225] on 12/12/14 for Juan Briseno (1). This entry goes behind the scenes to officially term these counts. (nac)**

**2:11-cr-00077-PPS-APR-1 Notice has been electronically mailed to:**

David E Vandercoy    david.vandercoy@valpo.edu

Arlington J Foley    arlingtonfoley@att.net

Mark A Psimos    psimoslaw@airbaud.net

Scott L King    sking@scottkinggroup.com, dwilliams@scottkinggroup.com

James N Thiros    jim@thiros.com, lynn@thiros.com

Thomas W Vanes    tom.vanes@sbcglobal.net, b.lynneadams@yahoo.com

Ihor Alexander Woloshansky    ihorlawyer@hotmail.com

R Brian Woodward    rbwoodward@wbbklaw.com, carolb@wbbklaw.com

John Maksimovich    criminallaw@johnmaksimovich.com

Visvaldis P Kupsis    vpkupsis@hotmail.com

Sheldon B Nagelberg    sbnagelberglaw@att.net

John E Martin – FCD    john_martin@fd.org

Adam Tavitas    Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander    jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele    ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst    kre@braje–nelson.com

Bryan M Truitt    bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis    theislaw@aol.com

Robert L Rascia    rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger    pjeffslaw@aol.com

Matthew N Fech    mnf@fech–law.com

Pablo DeCastro    pdecastro@attorneydecastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA    dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov,
janet.eisenmann@usdoj.gov

David J Nozick – AUSA    David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov,
janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson    attorneyrmj@gmail.com

Bruce R Hegyi – AUSA    bruce.hegyi@usdoj.gov

**2:11–cr–00077–PPS–APR–1 Notice has been delivered by U.S. Mail or other means to:**

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

UNITED STATES OF AMERICA,

          Plaintiff

vs

JUAN BRISENO,

          Defendant                  CAUSE NO:   2:11-CR-77

## DEFENDANT'S PROPOSED PRELIMINARY
## INSTRUCTIONS FOR THE PENALTY PHASE

Comes now Defendant Juan Briseno, by counsel John Maksimovich and Arlington Foley, and requests the Court deliver the following instruction to the jury prior to the commencement of the penalty phase:

You have found Mr. Briseño guilty of capital counts Nine, Thirteen, Fifteen, Nineteen and Twenty-one.  This means that we will now commence the penalty hearing as to Mr. Briseño.

Obviously, it is not possible for me to overstate the importance of the decision before you or the careful and thorough consideration you should give this matter. I remind you that at the time you were selected as jurors, each of you assured me that if this case required a capital punishment hearing, you would follow and apply the law as I gave it told you.  It is imperative that you do so. Although Congress has left the decision whether a Defendant in Mr. Briseño 's situation should be sentenced to death or to life imprisonment without the possibility of release to you the jury, it has specifically narrowed and channeled your discretion by requiring certain

findings to be made before the death penalty may be considered.

At the outset, I want to provide you with five important instructions that will apply throughout this phase of the case. First, you are never required to impose a sentence of death. Rather, ultimately it is left to each juror to make an individual moral judgment. Second, unless all 12 jurors agree that death is the only appropriate punishment, a death sentence may not be imposed. The law leaves you free to agree to disagree, and if even a single juror is not persuaded that the defendant's execution is necessary, then I will impose a sentence of lifetime incarceration. Third, whatever decision you reach with regard to sentence, that will be the sentence that I impose. I will not be able to change it. You, and you alone, must resolve the question of whether the Defendant lives or dies. This is a unique and individualized moral decision that the law, in the final analysis, leaves to you. Fourth, in the federal system parole has been abolished. So, if you decide on a sentence of life in prison, the defendant will never be released and will die in prison. Fifth, the law does not presume a defendant found guilty of capital offenses will be sentenced to death. Indeed, the presumption is just the opposite – unless the government meets its heavy burden of proof on this issue, you must impose a sentence of life.

In this portion of the trial, you will hear about aggravating and mitigating factors. I will now provide you with a general definition of these terms. In general, these factors relate to the circumstances of the crime or the personal traits, character or background of the Defendant. The word aggravate means to make worse or more offensive, or to intensify. An aggravating factor then is a fact or circumstance that would tend to support the imposition of the death penalty. A statutory aggravating factor is one which is specifically set forth in the death penalty statute.

The word mitigate means to make less severe or to moderate. A mitigating factor is a fact about the Defendant's life or character or about the circumstances surrounding the particular

capital offense or anything else relevant that would suggest in fairness that life imprisonment without the possibility of release is a more appropriate punishment than a sentence of death. A mitigating factor is not offered to justify or excuse the Defendant's conduct.

This portion of the case will require you to make several sets of findings. First, you will be asked to find whether the Government can prove the existence of what is known as a gateway factor. Second, and only if you find the existence of such a factor, you will be asked to determine whether the Government has proven one or more statutory aggravating factors. The finding of the gateway factor and at least one aggravating factor is required before you may consider the imposition of the death penalty. These two findings must be made unanimously – that is, you all must agree – and beyond a reasonable doubt.

The Government presents the following three gateway factors:

1. That Juan Briseño intentionally killed the victim or victims.

2. That Juan Briseño inflicted serious bodily injury that resulted in the death of the victim or victims.

3. That Juan Briseño intentionally and specifically engaged in an act of violence, knowing that the act created a grave risk of death to a person, other than one of the participants in the offense, such that participation in the act constituted a reckless disregard for human life and the victim or victims died as a direct result of the act.

4. That Juan Briseño intentionally and specifically engaged in an act of violence, knowing that the act created grave risk of death to a person, other than one of the participants in the offense, such that participation in the act constituted a reckless disregard for human life and the victim or victims died as a result of the act.

The finding of at least one of these gateway factors is required before you may even consider imposition of a death sentence, however, you will not be permitted to weigh such a factor in your final decision-making regarding the appropriate sentence for Mr. Briseño.

Because you may not consider a sentence of death for a person who was under eighteen years old at the time of the commission of the capital offense, in this portion of the case you will also be required to make a finding as to whether Mr. Briseño was eighteen years old when he committed Counts Nine, Thirteen, Fifteen, Nineteen and Twenty-one. It is not contested that Mr. Briseño was over 18 years old at that time and so I will instruct you later that you must make that finding.

The Government proposes the following four statutory aggravating factors:

1. The Defendant, in the commission of the offenses, knowingly created a grave risk of death to 1 or more persons in addition to the victims of the offenses. (18 U.S.C. § 3592(c)(5)). This factor is alleged as to Counts Thirteen, Fifteen and Nineteen.

2. The Defendant committed the offenses after substantial planning and premeditation to cause the death of a person. (18 U.S.C. § 3592(c)(9)). This factor is alleged as to all 5 counts.

3. The Defendant intentionally killed more than one person in a single criminal episode. (18 U.S. C. § 3592( c )(16)). This factor is alleged as to Counts Thirteen and Fifteen.

A Defendant never has the burden of disproving the existence of either a gateway or aggravating factor. The burden is wholly upon the Government; the law does not at all require the Defendant to produce evidence that a particular aggravating factor does not exist.

If you do not find unanimously and beyond a reasonable doubt the presence of at least one

gateway factor and one statutory aggravating factor, you may not consider the imposition of a

sentence of death.  Your deliberations will be over.  However, if you have found unanimously

and beyond a reasonable doubt that the Government has proven the existence of at least one

gateway factor and at least one statutory aggravating factor, you will then be required to make a

third set of findings regarding non-statutory aggravating factors.  As with the first two findings,

this third set of findings must also be made unanimously and beyond a reasonable doubt.  The

four non-statutory aggravating factors which the Government proposes are:

1. The Defendant is a continuing danger to the lives and safety of other persons in
   the custody of or employed by the US Bureau of Prisons and is likely to commit
   criminal acts of violence in prison[1] in the future as evidenced by: a low potential
   for rehabilitation as demonstrated by repeated violent criminal acts; a willingness
   to take human life and a lack of remorse for his acts of violence as demonstrated
   by statements he made following these violent acts; and, his stated desire to
   impose a rule requiring fellow members of the Imperial Gangsters to shoot at
   rivals on sight.

2. The Defendant faces contemporaneous convictions for other criminal activity,
   including additional murders and attempted murders.

3. The Defendant demonstrated an allegiance to and active membership in the
   Imperial Gangsters, an organization falling within the definition of a criminal
   street gang as set forth in Title 18, United States Code, Section 521(a).

---

[1]Although the government's notice of intent does not limit the conduct to the prison
setting, it is submitted that the jury should be instructed that, in light of the alternative sentence
of a lifetime in prison, it is in the prison context that the government must prove he will be a
danger in the future.

4.      Caused injury, harm and loss to the victims, the victims' families and friends as

evidenced by the victims' personal characteristics and the impact of their deaths

upon the victims' families and friends.

The fourth and final set of findings you will be asked to make are with regard to

mitigating factors. There are three important distinctions that I want to highlight for you with

respect to the findings of mitigating factors. First, the Defendant has the burden of proving any

mitigating factors. However, there is a different standard of proof as to mitigating factors. The

Defendant is not required to prove beyond a reasonable doubt the existence of a mitigating

factor; he need only establish its existence by a preponderance of the evidence. That is to say,

you need only be convinced that a mitigating factor is more likely true than not true in order to

find that the mitigating factor exists. Second, a unanimous finding is not required. Any one of

you may, individually and independently, find the existence of a mitigating factor, regardless of

the number of other jurors who may agree, and any juror who so finds must give that factor

whatever weight they think it deserves. Thus, if even a single member of the jury finds that a

mitigating factor has been proved, each juror is required to consider and weigh that factor in

making up his or her own mind on whether or not to vote for a death sentence.

Mr. Briseño will offer the following 24 factors for your consideration, as follows:

1.      If he is not sentenced to death, Mr. Briseno will be sentenced to lifetime

imprisonment without the possibility of release.

2.      The Federal Bureau of Prisons will impose appropriate conditions of confinement

and security with regard to Mr. Briseno.

3.      Mr. Briseno is the product of a childhood marked by chaos, abuse and

abandonment.

4.      Growing up, Mr. Briseno lacked positive male role models in his home.

5.      His mother's poor choices in the men she brought into the family home had a

negative impact on Mr. Briseno.

6.      Juan grew up in a neighborhood plagued with drugs, gangs, and violence.

7.      Juan was raised in poverty.

8.      Juan's basic needs were neglected when he was a young child.

9.      Juan's older brother was a gang member and a poor role model.

10.     Juan was recruited into the Imperial Gangsters when he was only 10 or 11.

11.     From an early age, Juan was unable to keep up with his peers in school.

12.     Juan's father abandoned the family when Juan was only 8.

13.     Juan's father and his associates abused drugs and alcohol in front of the children.

14.     Juan has participated in rehabilitative programs while incarcerated.

15.     Juan donated his hair to cancer patients through "Locks of Love."

16.     Juan has a loving relationship with his nephews.

17.     If Juan were to be executed others would suffer grief and loss.

18.     Juan has made a positive adjustment to incarceration and is likely to do so in

federal prison.

19.     Cooperating witnesses who have killed someone will not be sentenced to death.

20.     The five victims of the murders voluntarily chose to engage in dangerous and

illegal activities, a circumstance that contributed to their deaths.

21.     Mr. Briseno always behaved respectfully in court.

22.     Mr. Briseno's life has value.

23.     There are other relevant circumstances that weigh against imposing a sentence of

death.

24.     Another defendant, or defendants equally culpable in the murders, will not be punished.

You are not limited in your consideration to just the mitigating circumstances that I just read to you.  If, in addition to those specific circumstances, there is anything about the circumstances of the offense, the Defendant's background, record, or character, or anything else relevant that you individually believe mitigates against the imposition of the death penalty, you are free to consider that factor in the balance as well.

Please understand that the existence of a mitigating factor is a distinct consideration from whatever weight should ultimately be given that factor in your deliberations.  For example, any number of jurors might first find that a particular mitigating factor is factually true (that is, that the factor has been established by a preponderance of the evidence), but those jurors as individuals might later choose to give that same mitigating factor differing levels of significance during the weighing process.

If after fair and impartial consideration of all the evidence in this case you unanimously find that the Government has proven beyond a reasonable doubt at least one gateway factor and at least one statutory aggravating factor with regard to a particular capital count, and after you have made your findings with regard to the presence of non-statutory aggravating factors and mitigating factors, you will then proceed to the balancing or weighing stage of your analysis.

In carrying out this weighing and balancing process, the members of the jury are not mere fact-finders.  Instead, each juror is called upon to make a unique, individualized moral judgment about the appropriateness of sentencing another human being to death.  Each juror must individually decide whether the facts and circumstances in this case call for death as the

appropriate sentence. I will instruct you further at the end of this phase about the weighing process.

**Respectfully submitted:**

/s/ *Arlington Foley*
_____

Arlington Foley /#6905-45
Attorney For Defendant
1942 North Main Street
Crown Point, IN 46307
PH: 219.661.1200
FX: 219.661.1205

/s/ *John Maksimovich*
_____

John Maksimovich /#9950-45
Attorney For Defendant
1946 North Main Street
Crown Point, IN 46307
PH: 219.663.1900
FX: 219.663.1908

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | |
| **Plaintiff** | |
| **vs** | |
| **JUAN BRISENO,** | |
| **Defendant** | **CAUSE NO:   2:11-CR-77** |

## CERTIFICATE OF SERVICE

I hereby certify that on March 2, 2015, I electronically filed:

### *DEFENDANT'S PROPOSED PRELIMINARY INSTRUCTIONS FOR THE PENALTY PHASE*

with the Clerk of the Court using the CM/ECF system, which sent notification of such filing to the following:

| | |
|---|---|
| David J. Nozick | Bruce Hegyi |
| Assistant United States Attorney | Assistant United States Attorney |

and I hereby certify that I have mailed by United States Postal Service, the document to the following non-CM/ECF participants:

N/A

By:    /s/ John Maksimovich  John
Maksimovich /#9950-45
Attorney For Defendant
1946 North Main Street
Crown Point, IN 46307
PH: 219.663.1900
FX: 219.663.1908
E-Mail: criminallaw@johnmaksimovich.com

THE UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, §<br>Plaintiff, §<br>§<br>§<br>v.   §<br>§<br>§<br>JUAN BRISENO, also known as Tito, §<br>Defendant. §<br>§ | CAUSE NO.  2:11-CR-0077-PPS |

**GOVERNMENT'S RESPONSE TO DEFENDANT'S PRELIMINARY
INSTRUCTIONS FOR THE PENALTY PHASE [DE #1491]**

COMES NOW, the United States of America (United States" or "Government"), by and

through the undersigned counsel, and responds to defendant Juan Briseno's, also known as

"Tito" ("Mr. Briseno's") Proposed Preliminary Instructions for the Penalty Phase [DE #1491],

which was untimely filed on the afternoon of Monday, March 2, 2015,[1] with the Penalty Phase of

Mr. Briseno's trial scheduled to begin at 8:30 am on Tuesday, March 3, 2015.

Preliminary Observation

The Government generally objects to the Mr. Briesno having filed a virtual hail of

Motions beginning this past weekend and continuing with even greater frequency today.  Long

ago, this Court established a Motions schedule.  Many, if not most, of Mr. Briseno's recent

filings are out of time.  Many of Mr. Briseno's 11th hours filings are enormously voluminous

(some exceeding 100 pages in length.)  The Government is mindful that, in trial, there are issues

---

[1]   Indeed, with the Penalty Phase scheduled to begin at 8:30 am on Tuesday, March 3, 2015, the
Government generally objects to the Mr. Briesno having filed a virtual hail of Motions beginning
this past weekend and continuing with even greater frequency today.  Long ago, this Court
established a schedule for Motions.  Many of Mr. Briseno's filings are enormously voluminous
(some exceeding 100 pages in length) and many are plainly "canned" filings as to which there
appears to be no excuse for such 11-hour-plus filings. As to such untimely and unexcused filings,
the Government urges the Court to strike these untimely pleadings without requiring a response
from the Government.

that arise that could not reasonably have been foreseen.  However, many of Mr. Briseno's recent filings appear to be "canned" pleadings, similar to Mr. Briseno's earlier 155-page Motion to Strike the Government's Notice of Aggravating Factors [DE #1027] (and its accompanying 107-page Appendix [DE #1027-1]), which could easily have been timely filed in compliance with this Court's Scheduling Order.  The Government regard to such untimely and unexcused filings, the Government urges the Court to strike such pleadings without requiring the Government to respond to them.  However, the Government is mindful of the Court's Minute Order of today requiring the Government to file its Response by Wednesday, March 4, 2015, with regard to Mr. Briseno's 103-page February 29, 2015 Motion to Preclude Specified Types of Prosecutorial Misconduct in Penalty Phase Summation [DE #1476], to which the Government will timely respond.

The issues raised in Mr. Briseno's instant Motion could affect the Court's preliminary instructions to the jury tomorrow morning.  As a result, the Government provides hereby its abbreviated response to the issues presented in Mr. Briseno's Motion.

<div align="center">Abbreviated Response</div>

Initially, the Government notes that is has previously filed its Amended Response to Mr. Briseno's proposed Mitigation Factors.  [*See* DE # 1475 (filed February 27, 2015)]   The Government continues to rely upon its Amended Response with regard to the proposed Mitigation Factors in Mr. Briseno's current pleading.  The Government responds to the various points raised in Mr. Briseno's current Motion as follows:

1.    **"Jury is never required to impose death."**  [*See* Motion, page 2]

This is an incorrect statement of the law.  See Eight Circuit Model Death Penalty Jury Instructions, Section 12.02.  As the Comments make clear:  In *United States v. Allen*, 247 F.3d 741, 780 (8th Cir. 2001), *judgment vacated and remanded on other grounds*, 122 S. Ct. 2653

<div align="center">Page **2** of **5**</div>

(2002), the Eighth Circuit held that this instruction and Instruction 12.11 (the "weighing"

instruction), which the defendant had attacked as impermissibly mandatory in nature, "accurately

explain the jury's role in sentencing under the FDPA."  The Court also held that the District

Court did not abuse its discretion in refusing to give the defendant's "mercy" instruction, which

closely followed the language in the Title 21 statute, to the effect that the jury, "regardless of its

findings with respect to aggravating and mitigating factors, is never required to impose a death

sentence."  The Eighth Circuit concluded that:

> Under the FDPA, the jury exercises complete discretion *in its determination of whether
> the aggravating factors outweigh the mitigating factors*.  The jury was informed that
> whether or not the circumstances justify a sentence of death was a decision left entirely to
> them.  Mercy is not precluded from entering *into the balance of whether the aggravating
> circumstances outweigh the mitigating circumstances*.  The FDPA merely precludes the
> jurors from arbitrarily disregarding its unanimous determination that a sentence of death
> is justified.

Id. at 781 (emphasis provided).  The Eighth Circuit reaffirmed its holding in *Allen* in *United*

*States v. Ortiz*, 315 F.3d 873 (8th Cir. 2002).

### 2.    Unanimity is Required Only for Death and Advising Jury that a Life Sentence Will Be Imposed in the Event of a Deadlock.

The Government is mindful that the Court overruled its related objection with regard to

the preliminary instructions provided to the jury venire in the jury selection process.  However,

the Government urges the Court that in *United States v. Jones*, 527 U.S. 373 (1999), the Supreme

Court counseled that the jury should be advised to deliberate to a unanimous verdict either for

death or for the alternative sentence, and should not be informed of the consequences of a failure

to agree.

### 3.    "You, and Your Alone, Must Decide the Question of Whether the Defendant Lives or Dies."

This improperly overstates the breadth of the jury's discretion in determining Mr.

Page **3** of **5**

3328

Briseno's sentence.  Moreover, it is laden with emotion, which is improper for the Court's instruction.  As discussed under Paragraph 1, above, under the FDPA,  the jury is actually compelled to impose a death sentence if it unanimously determines that the proven Aggravating Factors sufficiently outweigh the proven Mitigating Factors.

**4.      Presumption in Favor of a Life Sentence and Against a Sentence of Death; "Unless the Government Meets its Heavy Burden of Proof on This Issue, You Must Impose a Sentence of Life."**

This misstates the law.  First, there is no presumption in favor of either life or death.  Second, although it is true that the Government must prove its Aggravating Factors beyond a reasonable doubt, Courts are virtually unanimous in holding that such burden of proof does <u>not</u> apply to the final weighing of Aggravating Factor and Mitigating Factors under the FDPA.

Respectfully submitted,

DAVID CAPP
UNITED STATES ATTORNEY

s/  *David J. Nozick*

David J. Nozick
Assistant U.S. Attorney
5400 Federal Plaza
Suite 1500
Hammond, IN 46320
Tel. (219) 937-5655
www.david.nozick@usdoj.gov

s/  *Bruce R. Hegyi*

Bruce R. Hegyi
Trial Attorney
Capital Case Section
Criminal Division
United States Department of Justice
1331 F Street, N.W., Sixth Floor
Washington, D.C.  20530
Tel. (202) 616-4582
Cell (703) 536-4774
www.bruce.hegyi@usdoj.gov

3329

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this date, I electronically filed the foregoing document and accompanying exhibits with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record for defendant Juan Briseno.


s/ *Bruce R. Hegyi*
Bruce R. Hegyi
Trial Attorney

3330

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

UNITED STATES OF AMERICA,

          **Plaintiff**

**vs**

**JUAN BRISENO,**

          **Defendant**                **CAUSE NO:   2:11-CR-77**

**DEFENDANT'S SUPPLEMENTAL *IN LIMINE* MOTION
REGARDING CROSS-EXAMINATION OF MARK BEZY
ABOUT A MINOR PERSONNEL MATTER**

Comes now Defendant Juan Briseno, by counsel John Maksimovich and Arlington Foley, and again respectfully seeks an order precluding the government from cross-examining Mark Bezy regarding a minor personnel matter.

Since the filing of the original *in limine* motion on this topic, counsel have learned that the government is intent on bringing this personnel matter before the jury.  In light of the Government's position, counsel believe that further elaboration is required for the Court.

THE GOVERNMENT SHOULD BE PRECLUDED FROM ASKING
MR. BEZY ABOUT THESE PRIOR PERSONNEL MATTERS BECAUSE
ADMITTING INFORMATION REGARDING THESE INCIDENTS WOULD VIOLATE MR.
MCCLUSKEY'S CONSTITUTIONAL RIGHTS AND 18 U.S.C. § 3593 (C).

A.      The Crude Comment to a Deputy Warden

Over seven years go, on February 7, 2006, at a staff meeting where prison knives and weapons were being discussed, Mr. Bezy directed a crude comment to a deputy warden to the effect of "where the fuck do you work?" Mr. Bezy later talked to an investigator regarding the matter, acknowledged he made the quoted remark, and never heard anything further about it. He did not receive any papers in connection with the allegation, and there is nothing in his personnel file about it. He took full retirement without any marks on his record.

After Mr. Bezy left BOP, OIG wrote a report addressing the incident. The OIG report determined that there was sufficient evidence that Mr. Bezy directed unprofessional comments and profanity towards the deputy warden as described above. The report noted that, when interviewed by OIG, Mr. Bezy acknowledged making the comment and explained that he previously apologized to the deputy warden the next day. He also apologized in front of the staff who witnessed the original comment prior to being contacted by OIG. This was done before any investigation was launched. In addition, the OIG report is not in Mr. Bezy's personnel file, a copy of which he was provided upon his retirement. [1]

B.      Allegations of Improper Use of BOP Staff

The other allegations against Mr. Bezy, all of which were made by the deputy warden who was the recipient of Mr. Bezy's crude comment, were that: (1) Mr. Bezy used staff to care for his dogs while he was away; (2) Mr. Bezy asked another staff member to teach Mr. Bezy's son how to box;  (3) Mr. Bezy asked a staff member to write a paper on the death penalty for Mr. Bezy's son; and (4) Mr. Bezy had asked a staff member to prepare an employment application for a pposition at a private prison.  Although the allegation regarding the employment application was sustained, as to the other allegations, OIG reported:

> Bezy's action regarding this matter were not determined to be a misuse of his official position.

C.      These Same Matters Have Recently Been Offered in Other Federal Capital Cases and Most of Them Were Excluded. The Only Questioning That Has Been Allowed Has Been Extremely Limited.

_____

[1]The defense has a copy of the report which states on the cover page:  "Property of Internal Affairs, United States Bureau of Prisons. Disclosure must be approved by Chief, Internal Affairs."   Because this document contains sensitive personnel matters, in order to protect Mr. Bezy's constitutional and statutory right of privacy, Mr. Briseno hereby seeks permission to file the document under seal

1.      *United States v. Azibo Aquart* (D. Conn.)

On June 6, 2011, Mr. Bezy appeared as a defense expert in *United States v. Azibo Aquart* (D. Conn.). Prior to his testimony defense counsel asked the Court to prohibit government cross-examination on the same matters described above. Counsel has obtained a transcript of the arguments of the parties and the Court's ruling (exhibit A).  Judge Janet Bond Arterton ruled that the cross examination would be limited to a single question whether there was a sustained allegation that he used profane, obscene or otherwise abusive language with his deputy warden.

2.      *United States v. Lujan* (D. N.M)

In September 2011, the same issue surfaced in the *Lujan* case, where the defense filed a motion *in limine* to preclude questioning about the matters contained in the OIG report. In that motio, the defense raised no hearsay or confrontation clause objection, focusing instead on § 3353 (c). In response, the government, through agreed to the limitations placed upon cross-examination of Mr. Bezy in the *Aquart* case

Judge Brack's ruling is attached hereto as Exhibit B. He began by noting that "the Court reads the government's response as an intention to cross-examine Mr. Bezy only on the incident involving his use of crude language directed at a staff member and not on any of the remaining allegations. The Court takes the government at its word and accordingly will limit its evaluation of admissibility to matter (1) above." (Exhibit B at 1305]. The Court then concluded, similar to the ruling in *Aquart*, that "[t]he Court will restrict the prosecution's inquiry to the conduct itself.  The government may not question Mr. Bezy regarding the relation of the misconduct investigation to his resignation or imply that Mr. Bezy retired because of the investigation." (Id. at 7). The Court reasoned, again similar to *Aquart*, that "[t]he warden's violation of prison policy, although not 'major,' is relevant to whether employees consistently follow the policies of the BOP. This in turn

bears directly upon the effectiveness of BOP security features, and serves to challenge the adequacy of testimony regarding BOP's ability to comply with procedure in controlling the prisoners housed in its institutions." (Id. at 6).

3.      _United States v. Wilson_ (ED.N.Y.)

Most recently, the same issue surfaced in the *Wilson* case, where the defense also filed a motion *in limine* to preclude questioning about the matters contained in the OIG report. On July 16, 2013, Judge Garaufis ruled on the motion as follows (Exhibit C herein):

> The government may not inquire into the rude comment that Bezy lodged at a Deputy Warden. This conduct does not shed much light into the substance of Bezy's testimony or his character for truthfulness. Rather, there is a substantial risk of misleading the jury into focusing on this colorful comment. See 18, United States Code, Section 3593(c).
>
> However, the government may ask Mr. Bezy about the three substantiated incidents of misconduct in which he directed staff members to perform personal tasks for him. As Mr. Bezy will testify on the need to strictly enforce the rules at federal prisons, his own disregard for the BOP's rules should be presented to the jury. This evidence is not unduly prejudicial, nor will it confuse the issues or mislead the jury. It is clear why this evidence will be presented, and concerns only substantiated instances of misconduct. Thus, the government may inquire into these limited personnel matters.

In response to this ruling, the government alleged that " in the past he's actually denied in sworn testimony that he was under discipline at the time that he retired from the BOP." The Court ruled that questioning about that prior testimony would be permissible. (RT 7045-46). However, at trial, the government did not in fact bring up any of the three substantiated incidents or any prior testimony, focusing instead on a point which Mr. Bezy never disputed, as illustrated by the following exchange:

> Q      Improvements have to be made because for one reason or another, it seems the inmates are always able to accomplish the violence and accomplish the killings even despite your best efforts, right?
>
> A      At times, yes.

In other words, Mr. Bezy repeatedly conceded in *Wilson* and in every other case in which he has testified that , in the words of Mr. Warbel in *Lujan*, " BOP facilities are not completely secure". Exhibit C. It is prejudicial cross examination designed to refute this uncontested assertion that the present motion seeks to exclude.

D.      Admitting Information Regarding These Incidents Would Violate Mr. Briseño's Constitutional Rights and 18 U.S.C. § 3593 (c).

Admission of these incidents, which have nothing to do with credibility and are based on unreliable and irrelevant hearsay, would violate Mr. Briseño's constitutional right under the Eighth Amendment's Cruel and Unusual Punishment Clause and the Fifth Amendment's Due Process Clause to an individualized and reliable sentencing proceeding, as well as his right under the Sixth Amendment to confront and cross examine adverse witnesses. Additionally, such information should be excluded as irrelevant and likely to cause unfair prejudice, confuse the issues and mislead the jury under 18 U.S.C. § 3593 (c), and as the "type of unreliable or prejudicial evidence that might render a trial fundamentally unfair. " *United States v. Johnson*, 378 F.Supp.2d 1051, 1069 (N.D.Iowa 2005)(internal quotations omitted).

The threshold determination for admission of information at a penalty phase of an FDPA trial is that the information is "relevant to sentencing." *United States v. Lujan*, 603 F.3d 850, 854 (10th Cir. 2010). Evidence is relevant if it "has any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401; see also *United States v. Lujan*, 603 F.3d at 854 ("Although § 3593(c) fails to define 'relevant,' we have interpreted it as 'the same standard used throughout the federal courts under Federal Rule of Evidence 401.'"); Doc 1288 at 4 (same).

Although the Federal Rules of Evidence may not strictly be operative in the penalty phase,

it remains the case that "judges retain their gatekeeper function ...under § 3593(c), to exclude any type of unreliable or prejudicial evidence that *might* render a trial fundamentally unfair. " *United States v. Johnson*, 378 F.Supp.2d 1051, 1069 (N.D.Iowa 2005)(internal quotations omitted).

Section 3593(c) grants this Court "greater discretion to exclude unfairly prejudicial or confusing information" than the analogous Federal Rules of Evidence provide during the trial phase. *Lujan*, 603 F.3d at 854. See also, *United States v. Fell*, 360 F. 3d 135, 145 (2d Cir. 2004)("[T]he presumption of admissibility of relevant evidence is actually narrower under the FPDA than under the FRE."); *United States v. Gilbert*, 120 F.Supp.2d 147, 151–52 (D.Mass.2000) ( "The balance of probative value and unfair prejudice must be weighed more carefully in a death penalty case than in normal cases."); *United States v. Taylor*, 302 F.Supp.2d 901, 905 (N.D. Ind. 2003)("[T]he evidentiary standard found in § 3593(c) of the FDPA upholds the constitutional required balance between the needs for heightened reliability and individualized sentencing by enabling the judge, as gatekeeper, to bar unreliable or unfair sentencing information.").

Under these evidentiary standards, the government should be precluded from cross-examining Mr. Bezy about the foregoing incidents because they lack probative value, would confuse the jury, and would be unfairly prejudicial under 18 U.S.C. § 3593 (c).

Even the sustained matter regarding bad language has no bearing on Mr. Bezy's credibility. Although the Rules of Evidence do not apply, this Court may consider that this evidence would be precluded by Fed.R.Evid. 608 (b), which permits evidence of specific misconduct only as it bears upon a witness's "character for truthfulness or untruthfulness" and strictly prohibits extrinsic proof even if cross-examination is permitted in the Court's discretion. Cf., *United States v. Harmon*, 871 F.Supp.2d 1125, 1158 n. 6 (D.N.M. 2012)("The Court acknowledges that the Federal Rules of Evidence do not generally apply at suppression hearings,... but analogizes to rule 608(b) because ...

rule 608(b) precedent provides useful analogies for evaluating the weight of impeachment evidence.")

As Judge Browning concluded in *Harmon*, " '[u]nder Federal Rule of Evidence 608(b), specific unrelated instances of a witness's prior misconduct may be used to impeach the witness at the discretion of the court, however, only to the extent the misconduct reflects on the witness's character for truthfulness.'" *Harmon*, 871 F.Supp.2d at 1155, quoting *United States v. Beltran–Garcia*, 338 Fed.Appx. 765, 770 (10th Cir.2009) (unpublished). As Judge Browning stressed in *Harmon*,

> Although 608(b) of the Federal Rules of Evidence does state that specific instances of misconduct may be admissible to impeach a witness, that rule does not require or imply that every negative bit of evidence existing concerning a witness may be dragged into a case no matter how remote or minor the alleged misconduct.

Id. at 1155, quoting *United States v. Lafayette*, 983 F.2d 1102, 1106 (D.C.Cir.1993).

As Judge Browning also stressed, " Rule 608 authorizes inquiry only into instances of misconduct that are clearly probative of truthfulness or untruthfulness, such as perjury, fraud, swindling, forgery, bribery, and embezzlement." Id. at 1158, quoting *United States v. Leake*, 642 F.2d 715, 718 (4th Cir.1981) . See also, *United States v. Rabinowitz*, 578 F.2d 910 (2d Cir.1978)(the trial court was found to have properly prohibited cross-examination into the witness's prior acts of sodomy of young children because the Second Circuit "fail[ed] to see the logical relevance of the evidence sought to be adduced ... to the credibility of the witness. The evidence's bearing on the witness's propensity to tell the truth was simply too tenuous for us to hold that the district judge abused his discretion in excluding it.")

As Judge Garaufis correctly ruled in *Wilson*, the use of profane language by Mr. Bezy in 2006 " does not shed much light into the substance of Bezy's testimony or his character for truthfulness.

Rather, there is a substantial risk of misleading the jury into focusing on this colorful comment." (Exhibit C). And as Judge Arterton ruled in *Aquart*, and as the government conceded in both *Lujan* and *Wilson* by not offering such evidence, the rest of the incidents are simply too *de minimis* to warrant admission on any theory.

In holding to the contrary, Judges Arterton and Brack seemed to have reasoned that a misconduct incident involving a rule against using inappropriate language to a fellow employee, which occurred in 2006 by an employee of the Bureau of Prisons who is no longer working for the Bureau, is somehow probative in 2013 of whether current employees of the BOP would violate policies involving security (not employee relations) to such an extent that it is likely that Mr. Briseño will be a danger to inmates and staff in the near or distant future. The tenuous nature of such reasoning is self evident. The fact that this incident occurred has no bearing on whether BOP can securely confine Mr. Briseño for the rest of his natural life. Additionally, the fact that the particular discussion in the staff meeting concerned security-related issues is unrelated to the personnel policy that Mr. Bezy violated because the violation of policy had nothing to do with prison security. Mr. Bezy violated a policy by using crude language toward a staff member.

In effect, the government would like to argue that, because guards and even wardens in the BOP system sometimes err, Mr. Briseño should be given a death sentence. This is unreasonably speculative and wholly unrelated to whether Mr. Briseño himself might be dangerous in a penal setting and amounts to "a claim that the jury [has] to account for errors to be committed by other actors in the criminal justice system. The capital sentencing jury should not be burdened with such speculative assertions." *Tucker v. Kemp*, 762 F.2d 1496, 1508 (11 Cir. 1985). "Neither the future diligence of an appellate court nor the possibility of future incompetence of corrections and parole personnel should be invoked to alter the jury's perception of its role at capital sentencing." Id.; cf.

*Darden v. Wainwright*, 477 U.S. 168, 180 & n.10 (1986) (holding prosecution acted improperly in arguing, in a case where defendant committed the murder while out on weekend furlough, "I will ask you to advise the Court to give him death. That's the only way that I know that he is not going to get out on the public. ... It's the only way that anybody can be sure of it now, because the people that turned him loose.").

Further, "[s]ome probative value... is not necessarily enough to overcome a Rule 403 balancing test." *United States v. Devery*, 935 F.Supp. 393, 408 (S.D.N.Y.1996). In *Devery*, the district court precluded the defense from cross examining the government's key witness with repeated rapes of his juvenile stepdaughter, as was found during a family court investigation. Although not denying that the incidents had some probative value on the issue of credibility, the district court nevertheless excluded the evidence, concluding that "[u]nder Rule 403, several factors weigh in favor of restricting defendants' cross-examination of Damiani, including: the misconduct was not on its face an act of falsehood, fraud, or deceit which would clearly speak to the witness's truthfulness; the misconduct was relatively remote in time (occurring about seven years before trial); and the nature of the misconduct was highly inflammatory. Most importantly, defendants were allowed ample opportunity to impeach Damiani on other grounds" Id. at 408.

The exact same reasoning applies here. The instances here from 2006 have nothing whatsoever to do with Mr. Bezy's character for truthfulness, nor is there even the slightest suggestion that he was ever less than candid. He quite openly acknowledged directing the crude comment to the deputy warden after having fully apologized for the comment, and he cooperated fully in the investigation of the other incidents. Most importantly, showing that any of these violations occurred in 2006 or earlier has absolutely nothing to do with any contested issue in this case, since contrary to the argument made by the government in *Lujan*, Mr. Bezy has never denied and has always

affirmatively conceded in answer to numerous questions that do not seek information about his 2006 indiscretions that "BOP facilities are not completely secure". Exhibit C .

Further, as was held in both *Aquart* and *Lujan*, it would be wholly improper for the government to suggest or imply to the jury that Mr. Bezy left his employment with the BOP because of the findings against him and before he could be disciplined. Under BOP policies, Mr. Bezy had been eligible for retirement for at least five years. Facing mandatory retirement at 57, he had been solicited by various employers well prior to these incidents. Indeed, one of the allegations was that Mr. Bezy used staff to prepare an application for employment at a private corrections corporation. In any event, this is not a matter on which this Court need commence a mini-trial.

Finally, an issue not raised in any of the cases cited above is the question of inadmissible hearsay and the constitutional right of confrontation. As the cross examination in *Lujan* illustrates, the Government seeks to use the content of an investigative report ("And you looked at her and you said, and this is a quote from the investigative report...") to establish the truth of the allegations therein. This use of the contents of the report is not sanctioned by any hearsay exception and is an improper form of questioning. See, *Young v. James Green Management, Inc.* 327 F.3d 616, 626 n. 7 (7th Cir. 2003)("As a general proposition, [c]ross examination as to a specific instance relating to the character for untruthfulness of the particular witness being examined ... should be phrased in terms of the underlying event itself. Thus where the specific act is probative of untruthfulness of the witness being cross-examined, the question should not inquire about rumors, reports, arrests or indictments but rather about the underlying specific event of misconduct itself.")(internal quotations omitted). *See also*, *United States v. Jeanpierre*, 636 F.3d 416 (8th Cir. 2011)("judicial findings of facts are hearsay, inadmissible to prove the truth of the findings unless a specific hearsay exception exists."); *United States v. Sine*, 493 F.3d 1021, 1036 (9th Cir.2007)(same); *Herrick v. Garvey*, 298

F.3d 1184, 1191–92 (10th Cir.2002)(same); *United States v. Jones*, 29 F.3d 1549, 1554 (11th Cir.1994)(same); *Nipper v. Snipes*, 7 F.3d 415, 417 (4th Cir.1993)(same).

Because this hearsay evidence does not fit within any recognized exception it is presumptively unreliable and inadmissible under the Confrontation Clause of the Sixth Amendment, which is fully applicable in the selection phase of a federal capital case. See, *United States v. Stitt*, 760 F.Supp.2d 570, 581-583 (E.D.Va.2010); *United States v. Sablan*, 555 F. Supp. 2d 1205, 1219-22 (D. Colo. 2007); *United States v. Mills*, 446 F. Supp. 2d 1115, 1130-31 (C.D.Cal. 2006).

In conclusion none of the allegations or findings have any bearing on Mr. Bezy's credibility. They similarly have no bearing on the subject matter of his testimony or his qualifications to discuss security in BOP. The subject matter is entirely collateral and irrelevant and has not legitimate probative value, invites a sideshow that might well distract the jury, and suggest unfairly that the witness's opinions should not be trusted. Mr. Bezy's testimony is being offered in part in support of the mitigating factor that the Bureau of Prisons will be able to safely and securely house Mr. Briseño if he is sentenced to life in prison. The jurors' consideration of these issues should not be waylaid or unfairly influenced by something that has no bearing on Mr. Bezy's opinions or credibility. For the reasons described above, the crude language and other allegations have no legitimate place in this jury's sentencing decision, and the information will unfairly prejudice Mr. Briseño and would violate his right of confrontation. Mr. Briseño respectfully requests the Court to preclude the government from mentioning any of these matters during Mr. Bezy's examination.

**WHEREFORE**, Defendant Juan Briseno requests that the motion in limine be granted as requested.

3341

**Respectfully submitted:**

/s/ *Arlington Foley*
_____

Arlington Foley /#6905-45
Attorney For Defendant
1942 North Main Street
Crown Point, IN 46307
PH: 219.661.1200
FX: 219.661.1205

/s/ *John Maksimovich*
_____

John Maksimovich /#9950-45
Attorney For Defendant
1946 North Main Street
Crown Point, IN 46307
PH: 219.663.1900
FX: 219.663.1908

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | |
| **Plaintiff** | |
| **vs** | |
| **JUAN BRISENO,** | |
| **Defendant** | **CAUSE NO:    2:11-CR-77** |

**CERTIFICATE OF SERVICE**

I hereby certify that on March 2, 2015, I electronically filed:

*DEFENDANT'S IN LIMINE MOTION*
*REGARDING PENALTY-PHASE EVIDENCE*

with the Clerk of the Court using the CM/ECF system, which sent notification of such filing to the following:

| | |
|---|---|
| David J. Nozick | Bruce Hegyi |
| Assistant United States Attorney | Assistant United States Attorney |

and I hereby certify that I have mailed by United States Postal Service, the document to the following non-CM/ECF participants:

N/A

By:    /s/ John Maksimovich    John
Maksimovich /#9950-45
Attorney For Defendant
1946 North Main Street
Crown Point, IN 46307
PH: 219.663.1900
FX: 219.663.1908
E-Mail: criminallaw@johnmaksimovich.com

3343

Case 2:05-cr-00924-JRH Document 1295-2 Filed 09/06/13 Page 2 of 15
Case: 15-2347 Document: 35 Filed: 07/27/2016 Pages: 4186
Case 2:11-cr-00077-PPS-APR Document 495-1 Filed 03/02/15 Page 1 of 14

Q.   And based upon your review of the defendant's records within the Department of Corrections and the records from Wyatt, do you have an opinion to a reasonable degree of certainty on the ability of the Bureau of Prisons to securely and safely house the defendant if he's sentenced to life without parole?

A.   I believe they can safely and securely house him.

MR. SHEEHAN:  I have no further questions of Mr. Bezy.  Thank you, your Honor.

THE COURT:  All right, cross-examination.

CROSS-EXAMINATION

BY MS. DAYTON:

Q.   Good afternoon, Mr. Bezy.

A.   Hello.

Q.   I'm Tracy Dayton.  I'm an assistant United States attorney in the District of Connecticut.

So you've worked a lot of places, huh?

A.   Yes.

Q.   You moved around a lot?

A.   Yes.

Q.   With your children?

A.   Yes.

Case 2:05-cr-00924-RJB   Document 1295-2   Filed 09/06/13   Page 3 of 15
Case: 15-2347   Document: 35   Filed: 07/27/2016   Pages: 4186
Case 2:11-cr-00077-PPS-APR   Document 1495-1   Filed 03/02/15   Page 2 of 14

Q.   They were okay with that?

A.   Yes.

Q.   And you moved a lot because the Bureau of Prisons is always changing and trying to update; is that right?

A.   No, at that time if you wanted a promotion you had to relocate for promotion purposes.

Q.   But the Bureau of Prisons is always trying to update and become more modern in terms of housing prisoners; is that correct?

A.   Yes.

THE COURT:  Would you see if your mic is working?

MS. DAYTON:  Yeah.  Can you hear me?  I don't think it's working.

THE COURT:  Is it flashing?

MS. DAYTON:  Maybe Mr. Sheehan turned it off before I got up here.

MR. SHEEHAN:  It would be a brotherly thing to do, your Honor.

Q.   Can you hear me okay?

A.   Yes.

Q.   Okay.  So, and you, at the time you retired, were at Terre Haute, right?

A.   Correct.

Case 1:05-cr-00324-JRH Document 1395-2 Filed 01/09/13 Page 4 of 15
Case: 15-2347 Document: 35 Filed: 07/27/2016 Pages: 1388
Case 2:11-cr-00077-PPS-APR Document 1495-1 Filed 03/02/15 Page 5 of 14

Q.   You were the warden there?

A.   Yes.

Q.   And at the time you retired you had just been investigated for unprofessional conduct and misusing official position for personal gain, right?

MR. SHEEHAN:  May I approach?

THE COURT:  Yes, I'll hear you.

(Sidebar conference)

THE COURT:  What are you doing?  I have not ruled on that and we're going to have a point at which I would rule on that.  I've heard direct and I am not persuaded yet, and there may be something in cross-examination, that is, discipline for profanity.  Using staff to look after his dog and to do an application doesn't relate to his knowledge of procedures.  Now, it may be that there is going to be something that will change that, but this was a pending issue in which I had not ruled.

MS. DAYTON:  Your Honor, you ruled on the profanity.  You said yesterday that the fact that he was using profanity against his deputy warden goes to his stellarness or non-stellarness. Do you remember we all laughed about that?

THE COURT:  I recall that.

MS. DAYTON:  So you did rule on that.

That's what I just asked him about.

THE COURT: Having heard -- and then today I said I would rule on it after I heard his direct testimony.

MS. DAYTON: But I didn't know you had withdrawn your prior ruling, your Honor. I would not do something in bad faith.

THE COURT: The problem is that I don't see how that relates to his knowledge of designation and BOP procedures. There may well be something that will cause that to be, to relate, but having heard what his testimony is and the fact that he didn't hold himself out as having certificates of stellarness --

MS. DAYTON: Your Honor, his resume starts with what a well-respected career he had.

THE COURT: His resume is not in evidence.

MS. DAYTON: He questioned him directly from the resume. His entire first half hour came directly from his resume. Mr. Sheehan was literally reading from his resume.

THE COURT: Fine. It's every place he ever was, every promotion he ever got. There was nothing about awards, recognitions, certificates of

Case 2:05-cr-00924-JRB Document 1295-2 Filed 09/09/11 Page 6 of 15
Case 15-2347 Document 35 Filed 07/27/2016 Pages: 1186
Case 2:11-cr-00077-PPS-APR Document 1495-1 Filed 03/02/15 Page 5 of 14

excellence.

MS. DAYTON:  Your Honor, you allowed them to ask Mr. Hodges whether or not he had ever been a teacher at a school in 1985.  They've put this person up there as an expert, you worked for the Bureau of Prisons for 30 years.  He retired two years short of retirement.

THE COURT:  I understand that, why don't you get some foundation here before you go right to that question.

MS. DAYTON:  Because Mr. Sheehan laid all the foundation.

THE COURT:  I don't recall any foundation about his retiring before and under circumstances that would suggest he was trying to avoid discipline.  I will hear it.

MS. DAYTON:  I wasn't going to say he retired to avoid discipline, I was going to say he retired two years short of his retirement and when he did there had just been sustained allegations against him, and the allegations came, as you can see from what I gave you, precisely because they were talking about issues related to weapons in prison, which has directly to do with his testimony here, the safety of prison.

Case 2:05-cr-00924-RDB Document 1395-2 Filed 09/08/11 Page 7 of 15
Case: 15-2347 Document: 35 Filed: 07/27/2016 Pages: 4186
Case 2:11-cr-00077-PPS-APR Document 1495-1 Filed 05/02/15 Page 6 of 14

THE COURT: Well, that's fine, but that's not the way you've gone about it. If in fact what you are talking about is his knowledge and expertise on security and his profanity, berating of staff person who questioned something about security, that's far closer than what you are doing right now.

MS. DAYTON: He mocked his deputy warden.

THE COURT: I understand.

MS. DAYTON: So I'll ask him about that.

MR. SHEEHAN: About what?

MS. DAYTON: About mocking his deputy warden, about she was trying to recreate what he had talked about with respect to making a weapon and he started mocking her in front of a room full of executives.

THE COURT: I understand. I've read all the reports. I want it to relate to something having to do with his testimony. If in fact he was reprimanded for --

MS. DAYTON: He wasn't reprimanded, he retired.

THE COURT: Excuse me. He was -- the charge was sustained, and that's all there is. Do

Case 2:05-cr-00924-JRB Document 12950-2 Filed 09/06/13 Page 8 of 15
Case: 15-2347 Document: 35 Filed: 07/27/2016 Pages: 4186
Case 2:11-cr-00077-PPS-APR Document 1495-1 Filed 03/02/15 Page 17 of 14

you wish to be heard?

MR. SHEEHAN: I'm --

THE COURT: She's going to get it in eventually.

MR. SHEEHAN: Why?

THE COURT: Because it relates to security and his attitude about security.

MR. SHEEHAN: They're just rewarding bad behavior.

MS. DAYTON: That's not fair because I went off your Honor's ruling from yesterday.

MR. SHEEHAN: Totally unfair.

THE COURT: No, I think Ms. Dayton had a basis for believing, though I don't understand what she might have thought when I said I would reserve until after I heard the direct.

MR. SHEEHAN: It's inconceivable.

MS. DAYTON: I can explain that, actually, if you allow me, because I would never honestly intentionally disobey your Honor's ruling. I thought you were saying if he went into it and brought it all out that you weren't going to let me go back into it; that's what I thought you -- I understood you meant. And maybe I'm stupid. That's what you didn't want, that it be belabored.

Case 2:05-cr-00924-RBH Document 1395-2 Filed 09/09/13 Page 9 of 15
Case: 15-2347 Document: 35 Filed: 07/27/2016 Pages: 4384
Case 2:11-cr-00077-PPS-APR Document 1495-1 Filed 03/02/15 Page 8 of 14

THE COURT: I don't want it belabored, but I wanted to hear the direct. As to using staff to prepare an application and watching the dogs --

MS. DAYTON: I'll stay away from that.

THE COURT: -- those are so de minimis.

MS. DAYTON: I'll stay away from that.

THE COURT: But if he is acting unprofessional with the issue of security, I think that does bear on it.

MR. SHEEHAN: There is no claim that he was acting unprofessional with respect to the issue of security. The claim, I take it, is that in the context of running an institution he's spoken in a disrespectful tone to the deputy warden.

THE COURT: The subject was shank-making.

MR. SHEEHAN: Yeah, whatever the subject is, you don't get it, you don't get -- do we go into the whole substance of the conversation?

THE COURT: No.

MR. SHEEHAN: Then what am I left with? The problem is admittedly one should not speak that way to people that one works with. Fine. I think that if -- the people I work with under torture they might admit that at some point in my life I spoke

Case 2:05-cr-00924-RB Document 1256-2 Filed 09/06/13 Page 10 of 15
Case:15-2347 Document:35 Filed:07/27/2016 Page: 138
Case 2:11-cr-00077-PPS-APR Document 1495-1 Filed 03/02/15 Page 9 of 14

that way with them.  I suspect other people might also have done that.  It doesn't mean what he's saying here is any less worthy of credence.

THE COURT:  It is to the issue of following their policy.

MR. SHEEHAN:  But the issue was he used bad language.

THE COURT:  I understand that.

MR. SHEEHAN:  In the Bureau of Prisons.

THE COURT:  You certainly are not going to get into all of the detail, but it seems to me that if he violated Bureau of Prisons' policy which he knew existed in the context -- on the subject matter of security, that from that at least there is some challenge to his authoritativeness on why all of these policies will be followed such that Mr. Aquart can be safely and securely housed.  Now, I would think that it's not a major failure, but it is nonetheless by the warden a failing, and it is a failing to follow a policy.  And to the extent that failure to follow policy is an indication that all may not be perfect in the Bureau of Prisons, and therefore his opinion that he can be safely and securely housed is --

MR. SHEEHAN:  Do you know what, this is

Case 2:05-cr-00324-JRH   Document 1295-2   Filed 01/06/13   Page 11 of 15
Case 15-2347   Document 35   Filed 07/27/2016   Pages: 4186
Case 2:11-cr-00077-PPS-APR   Document 1495-1   Filed 03/02/15   Page 10 of 14

a setup.  This is has nothing -- this is a guy who leaves the Bureau of Prisons and they trolled his record for something he never got a copy of.

THE COURT:  I'm not going to permit any testimony of relationship between his leaving the Bureau and this because there isn't --

MR. SHEEHAN:  That's what she just asked.

THE COURT:  No.

All right.  So we're going to leave out -- the question will be rephrased.  We'll leave out misusing official position for personal gain.  Ms. Dayton said she was leaving that out because it has to do with taking the dogs out and filling out applications.  The timing is also not going to be the subject of your question.  If you are claiming that it has to do with his -- the security issue, then it needs to be framed in that context and only that context, and it's about one question.

MS. DAYTON:  I'm going to ask him, you were having an executive meeting, you were discussing shanks in prison, and she tried to recreate this and you said X to her.  Because there is no way to get there without --

THE COURT:  I don't want all of the

Case 2:05-cr-00324-JRH   Document 1295-2   Filed 09/06/13   Page 12 of 15
Case 15-2347   Document 35   Filed 07/27/2016   Pages: 4186
Case 2:11-cr-00077-PPS-APR   Document 1495-1   Filed 03/02/15   Page 11 of 14

details of it.  If the purpose is that he himself

was the -- the cause was found -- was sustained for

his violation of whatever that policy was.

MR. SHEEHAN:  But do you know what, he

was never notified of it.  How does he know that

cause was sustained.  He was never told that.  This

thing they dragged out of the sewer to get back at a

guy who has the effrontery to testify.

THE COURT:  So, tell me why it matters

if he doesn't know.  Because you are saying he

doesn't know how to answer that question?

MR. SHEEHAN:  Yeah, because their point

is, and I think what they're trying to say, well,

you were disciplined for this.  I wasn't

disciplined.

THE COURT:  But he wasn't disciplined.

MS. DAYTON:  I'm not trying to say that.

MR. SHEEHAN:  What are you saying then?

MS. DAYTON:  He was interviewed during

the course of the investigation of him.  To say he

doesn't know -- and he also lied under oath about

it.  The last time he testified he said he wasn't

under investigation and then they went and got the

documents and he had to come back from that.  I'm

not even going to bother going into that issue.

Case 2:05-cr-00324-JRH Document 1255-2 Filed 01/06/13 Page 13 of 15
Case 15-2347, Document 35, Filed 07/27/2016, Pages: 4188
Case 2:11-cr-00077-PPS-APR Document 1495-1 Filed 03/02/15 Page 12 of 14

THE COURT: So the phrase is the charge was sustained for directing unprofessional comments and profanity towards a subordinate officer.

MS. DAYTON: And what he said.

THE COURT: In violation of the standards of employee conduct. And to the extent that shows that wardens themselves don't always follow policy, that relates to his opinion that Aquart can be safely and securely detained. I don't need to know the substance of the unprofessional comments and profanity.

MS. DAYTON: Your Honor, I can -- that's --

THE COURT: No, I'm just not going to let you do it because it really doesn't matter whether he called her a dumbhead or the F word. The point of it to be relevant is that wardens themselves don't always follow the rules and, thus, there can be a security breach. Other than that I don't understand why it could be -- why it's relevant.

MS. DAYTON: Okay, fine.

MR. SHEEHAN: How is the question going to be asked because I have no confidence that it's going to be asked unless you tell them not to.

Case 2:05-cr-00924-RB Document 1295-2 Filed 09/06/13 Page 14 of 15
Case 15-2347 Document 35 Filed 07/27/2016 Pages: 4188
Case 2:11-cr-00077-PPS-APR Document 1495-1 Filed 03/02/15 Page 13 of 14

MS. DAYTON:  Thank you very much for this vote of confidence.  I got it.

MR. SHEEHAN:  No, I need to know.  I mean, I think this was ridiculous.

THE COURT:  I've articulated how it will be asked.

(Sidebar concluded)

Q.   Sorry for the interruption.

Mr. Bezy, is it true that there was a sustained allegation against you for using profane, obscene, and otherwise abusive language with your deputy warden while you were the warden at Terre Haute?

A.   Yes.

Q.   And so is it fair to say that not everybody always follows the rules and regulations of the prison?

A.   Not -- I can't say that, no.

Q.   Well, you didn't, correct?

A.   That occurred at a daily closeout of my executive staff.  There was six to eight people there.  I asked her in front of everybody something, she made a comment, I made a comment.  It was a robust discussion.  I asked her, excuse me, to ask her where the fuck she worked and was she really

Case 2:05-cr-00324-JRH   Document 1295-2   Filed 01/06/13   Page 15 of 15
Case 1:15-2347   Document 35   Filed 07/27/2016   Pages: 4186
Case 2:11-cr-00077-PPS-APR   Document 1495-1   Filed 03/02/15   Page 14 of 14

that stupid. Okay, during my closeouts it was a time we debated issues. We had -- they could say things to me at that point, I could say things to them. It was open debate. It was their chance to input. That's the comment I made.

Q. And this was in the context of discussing the security of the prison, correct?

A. Yeah. We did that every day at 3:30 in the afternoon.

Q. And discussing the fact that prisoners were making shanks out of plastic trays from where they went to eat, correct?

A. No, it was from the special housing unit.

Q. So they were using plastic trays from the special housing unit to make shanks?

A. Yes.

Q. So, you talked about the prison, the count as of today. Essentially, it's over 213,000 prisoners in federal custody, right?

A. Correct.

Q. 216, you said?

A. 216.

Q. And 179 of them are in BOP facilities?

A. Correct.

Q. And so the remainder --

Case 2:05-cr-00924-JRB   Document 1396-5   Filed 09/08/13   Page 1 of 77
Case 15-2247   Document 35   Filed 07/27/2016   Pages: 4186
Case 2:11-cr-00077-PPS-APR   Document 1495-2   Filed 03/02/15   Page 1 of 30

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

        Plaintiff,

v.                                                                                NO. CR 05-0924 RB

LARRY LUJAN,

        Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** came before the Court on the Defendant's Motion to Prohibit Cross-Examination of Mark Bezy on Personnel Matters, (Doc. 1295), filed on September 6, 2011. The government responded to Defendant's motion later that day. (Doc. 1297.) Defendant filed his reply to the government's response on September 7, 2011. (Doc. 1302.) Having considered the submissions of counsel, the record, relevant law, and being otherwise fully advised, the Court denies this Motion in part, as further discussed herein.

## I.      Background.

Defendant was charged with Kidnapping Resulting in Death of Dana Joe Grauke II, and Aiding and Abetting, in violation of 18 U.S.C. § 1201(a)(1) and 18 U.S.C. § 2. (Doc. 145). The Third Superseding Indictment included a Notice of Special Findings against Defendant, pursuant to the Federal Death Penalty Act (FDPA), 18 U.S.C. §§ 3591-3598. (Doc. 145). On July 12, 2007, and February 17, 2011, the government filed Notices of Intent to Seek a Sentence of Death, pursuant to the requirements of 18 U.S.C. § 3593(a) of the FDPA. (Docs. 146 and 690).

3358

Case 2:05-cr-00924-RB Document 1396-5 Filed 09/09/13 Page 2 of 7
Case 15-2347 Document 35 Filed 07/27/2016 Pages: 4186
Case 2:11-cr-00077-PPS-APR Document 1495-2 Filed 03/02/15 Page 2 of 30

The trial phase commenced on July 18, 2011. The jury returned a guilty verdict on August 9, 2011. After the eligibility phase, on August 11, 2011, the jury found Defendant eligible for the death penalty. The sentence selection phase began on August 29, 2011.

The defense intends to call Mark Bezy, a former warden in the Bureau of Prisons ("BOP"), as an expert to testify in the sentence selection phase of this proceeding. Mr. Bezy plans to testify regarding the security features available at BOP facilities, BOP's ability to control inmates such as Larry Lujan, and his opinion that, if sentenced to life without the possibility of parole, it is unlikely Lujan will commit future criminal acts of violence that would constitute a serious and continuing threat to the safety of others. (Defendant's Motion to Prohibit Cross-Examination of Mark Bezy on Personnel Matters, at 2) (Doc. 1295).

Mr. Bezy recently testified for the defense in a different capital proceeding which took place in the District of Connecticut. Defendant contends that based on the government's line of questioning in that case, he anticipates that government counsel in this proceeding may seek to cross-examine Mr. Bezy regarding specific personnel-related incidents that occurred while he served as a warden for BOP. Defendant moves this Court to prohibit the government from cross-examining Mr. Bezy regarding these incidents and specifically asserts that the following matters should be excluded from the government's cross-examination:

1.  A complaint made against Mr. Bezy by a deputy warden for using crude language during a staff meeting; and

2.  Allegations that Mr. Bezy, while acting as warden, made improper use of BOP staff for, among other things, asking a staff member to take care of his dogs while he was away from the prison.

3359

Case 1:05-cr-00924-JRB Document 1396-5 Filed 09/09/13 Page 3 of 77
Case 15-2347 Document 35 Filed 07/27/2016 Pages 4186
Case 2:11-cr-00077-PPS-APR Document 1495-2 Filed 03/02/15 Page 5 of 30

(Doc. 1295 at 1.)

The "other things" referenced in number 2 (above) include allegations that in addition to asking a staff member to take care of his dogs, Mr. Bezy:

(a) Asked another staff member to teach Mr. Bezy's son how to box;

(b) Asked a staff member to write a paper on the death penalty for Mr. Bezy's son; and

(c) Asked a staff member to prepare an employment application for a position at a private prison.

(Doc. 1295 at 3.)

In its response, the government states that it has no intention to question Mr. Bezy on allegations or findings relating to his misuse of prison staff for walking his dog or making appointments, and that Defendant's motion is therefore moot as to matter (2) above. (Doc. 1297.) Because Defendant's matter (2) also includes the incidents (a) - (c) listed above, the Court reads the government's response as an intention to cross-examine Mr. Bezy only on the incident involving his use of crude language directed at a staff member and not on any of the remaining allegations. The Court takes the government at its word and accordingly will limit its evaluation of admissibility to matter (1) above.

## II.     Discussion

The incident involving Mr. Bezy's use of crude language took place while he was serving as warden in the BOP. During a staff meeting where prison knives and weapons were being discussed, Mr. Bezy directed a comment to a deputy warden to the effect of "where the fuck do you work?" and "are you really that stupid?" (Def. Exhibit B, at 14-15) (Doc. 1295-2).

3

Case 2:05-cr-00924-RB Document 1396-5 Filed 09/08/13 Page 4 of 77
Case 15-2347 Document 35 Filed 07/27/2016 Pages: 4186
Case 2:11-cr-00077-PPS-APR Document 1495-2 Filed 03/02/15 Page 4 of 30

Following an investigation into the incident, the OIG found sufficient evidence to establish that Mr. Bezy had directed unprofessional comments and profanity toward a deputy warden during a staff meeting. The OIG also examined the remaining allegations against Mr. Bezy and found that "Bezy's action [sic] regarding this matter were not determined to be a misuse of his official position." (Def. Motion, at 3) (Doc. 1295) (quoting OIG report).[1] Mr. Bezy retired from the BOP during the pendency of the OIG investigation, just two years before he would have received a lucrative federal pension.

Defendant asserts that the government should be precluded from cross-examining Mr. Bezy on this incident because it is not relevant to the issue of Mr. Lujan's future dangerousness, lacks probative value, would confuse the jury, and would be unfairly prejudicial under 18 U.S.C. § 3593(c). The government responds that total exclusion of cross-examination of the misconduct finding would be improper, and urges the Court to adopt the approach recently taken by the District of Connecticut on the same issue in the capital proceeding *United States v. Azibo Aquart*, Case No. 6 CRL 60 (D. Conn.). In that case, Judge Arterton ruled that the prosecution would be allowed to inquire into OIG's finding of professional misconduct, but would be precluded from asserting any connection between that incident and Mr. Bezy's decision to retire. More specifically, the judge found that the warden's own failure to follow prison policy – even though this failure was not "major" – bore upon the issue of security at BOP as well as upon the defendant's contentions that he would be safely and securely housed in that institution:

> [I]f [Mr. Bezy] violated Bureau of Prisons' policy which he knew existed in the context . . . there is some challenge to his authoritativeness on why all of these polices will be followed such that Mr. Aquart can be safely and securely housed. . . . And to the extent

---

[1]The defendant did not make the OIG report available to the Court.

Case 2:05-cr-00924-RB Document 1396-5 Filed 09/09/13 Page 5 of 7
Case 15-2347 Document 35 Filed 07/27/2016 Pages: 4186
Case 2:11-cr-00077-PPS-APR Document 1495-2 Filed 03/02/15 Page 5 of 30

that failure to follow policy is an indication that all may not be perfect in the Bureau of Prisons . . . .

(Def. Exhibit B, at 10) (Doc. 1295-2).

The Court finds the District of Connecticut approach well-reasoned. During the sentencing selection phase of a capital proceeding, "[i]nformation is admissible regardless of its admissibility under the rules governing admission of evidence at criminal trials except that information may be excluded if its probative value is outweighed by the danger of creating unfair prejudice, confusing the issues, or misleading the jury. 18 U.S.C. § 359(c). Section 3593(c) further provides that the Government "may present any information relevant to an aggravating factor for which notice has been provided" and that a defendant "may present any information relevant to a mitigating factor." 18 U.S.C. § 3593(c). In applying §3593(c), the Tenth Circuit has stated that "information is admissible at a capital sentencing if it has 'any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the [information].' " *Lujan*, 603 F.3d at 854 (quoting Fed. R. Evid. 401). Further, both "the government and the defendant shall be permitted to rebut any information received at the hearing, and shall be given fair opportunity to present argument as to the adequacy of the information to establish the existence of any aggravating or mitigating factor, and as to the appropriateness in the case of imposing a sentence of death." 18 U.S.C. § 3593(c).

In its motion to prohibit cross-examination of Mr. Bezy, Defendant states that Mr. Bezy will testify to the security features available at BOP, to the ability of BOP to control prisoners, and to the likelihood that Lujan will commit acts of violence in future. The government is therefore permitted to rebut Mr. Bezy's testimony on these points and to "present argument as to

3362

Case 2:05-cr-00924-JRB   Document 1396-5   Filed 09/09/13   Page 6 of 7
Case 1:15-2347   Document 35   Filed 07/27/2016   Pages: 4186
Case 2:11-cr-00077-PPS-APR   Document 1495-2   Filed 03/02/15   Page 6 of 30

the adequacy of the information . . . ." 18 U.S.C. § 3593(c).  The warden's violation of prison

policy, although not "major," is relevant to whether employees consistently follow the policies

of the BOP.  This in turn bears directly upon the effectiveness of BOP security features, and

serves to challenge the adequacy of testimony regarding BOP's ability to comply with procedure

in controlling the prisoners housed in its institutions.  Further, the Court disagrees with

defendant's contention that the incident is "wholly unrelated to whether Mr. Lujan himself might

be dangerous in a penal setting."  Whether a prisoner is dangerous in a penal setting entails

consideration of the dynamic between both motive *and* opportunity for dangerousness.  Motive

is impossible to predict.  It is opportunity which BOP procedures seek to control.  The ability or

willingness of BOP employees – and in this case the warden himself – to strictly follow

procedure is relevant to the BOP's competence in limiting opportunity for violent behavior

through compliance with organizational policy.  Defendant is putting this matter at issue by

offering Mr. Bezy for the purpose of testifying to the security features of the BOP and BOP's

ability to control prisoners.  Therefore, the government is permitted to rebut by inquiring into the

incident of professional misconduct to the extent it bears upon prison security.  The defense may

then make its own case to the jury regarding the importance, or lack thereof, of this incident in

evaluating the aggravating factor of future dangerousness.

Finally, the Court does not believe that the probative value of the incident is outweighed

by the danger of creating unfair prejudice, confusing the issues, or misleading the jury.

Although Defendant characterizes this issue as the government's attempt to "attack Mr. Bezy's

credibility and credentials before the jury on the basis of a relatively minor personnel incident,"

section 3593(c) permits the government to challenge the adequacy of defense testimony to the

Case 2:05-cr-00924-RB   Document 1396-5   Filed 09/09/13   Page 7 of 7
Case 1:15-2347   Document 35   Filed 07/27/2016   Pages: 4186
Case 2:11-cr-00077-PPS-APR   Document 1495-2   Filed 03/02/15   Page 7 of 30

extent of its relevance to any fact of consequence to the action.  Here, relevance is established.  The defense will be able to fully address the issue with Mr. Bezy in the presence of the jury, and introduction of the incident will not be unduly prejudicial.  The Court will restrict the prosecution's inquiry to the conduct itself.  The government may not question Mr. Bezy regarding the relation of the misconduct investigation to his resignation or imply that Mr. Bezy retired because of the investigation.

**THEREFORE,**

**IT IS ORDERED THAT** Defendant's Motion to Prohibit Cross-Examination of Mark Bezy on Personnel Matters (Doc. 1295) is denied as to matter (1), Mr. Bezy's crude language directed at a BOP staff member, subject to the aforementioned restrictions on the scope of the government's inquiry.  The government does not intend to address any allegations falling under matter (2) and Defendant's motion is therefore moot as to that issue.

_____
**ROBERT C. BRACK**
**UNITED STATES DISTRICT JUDGE**

3364

Case 1:10-cr-02734-JCH   Document 1390-6   Filed 11/09/13   Page 1 of 23
Case 15-2347   Document 35   Filed 07/27/2016   Pages 4186
Case 2:11-cr-00077-PPS-APR   Document 1495-2   Filed 03/02/15   Page 8 of 30

7038

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - X
UNITED STATES OF AMERICA,    :  04-CR-1016 (NGG)
                             :
                             :
                             :
                             :
       -against-             :  United States Courthouse
                             :  Brooklyn, New York
                             :
                             :
                             :
RONELL WILSON,               :  July 16, 2013
                             :  9:40 a.m.
          Defendant.         :
                             :
- - - - - - - - - - - - - - - X

TRANSCRIPT OF CRIMINAL CAUSE FOR JURY TRIAL
CONTAINING A SEALED PORTION
BEFORE THE HONORABLE NICHOLAS G. GARAUFIS
UNITED STATES DISTRICT COURT JUDGE

A P P E A R A N C E S:

For the Government:    LORETTA E. LYNCH, ESQ.
                       United States Attorney
                       BY: **CELIA COHEN, ESQ.**
                           **JAMES McGOVERN, ESQ.**
                       Assistant United States Attorneys

For the Defendant:     BY: **DAVID STERN, ESQ.**
                           **RICHARD JASPER, ESQ.**
                           **ROBERT SOLOWAY, ESQ.**

Court Reporter:    Holly Driscoll, CSR
                   Official Court Reporter
                   Telephone: (718) 613-2274
                   E-mail:  Hdrisc@aol.com

Proceedings recorded by computerized stenography.  Transcript
produced by Computer-aided Transcription.

Case 1:10-cr-02734-JCH   Document 1390-6   Filed 11/09/13   Page 2 of 23
Case 1:15-2347   Document 35   Document 1495-2   Filed 07/27/2016   Pages: 4186
Case 2:11-cr-00077-PPS-APR   Document 1495-2   Filed 03/02/15   Page 9 of 30

7039

(The following takes place out of the presence of the jury.)

THE COURT:  Please be seated in the back.

THE CLERK:  Case on trial.

Counsel, state your appearances.

MR. McGOVERN:  James McGovern and Celia Cohen on behalf of the United States.  Good morning, Your Honor.

THE COURT:  Good morning.

MR. STERN:  David Stern, Richard Jasper, Robert Soloway for Mr. Wilson.  Good morning.

THE COURT:  Good morning.

The defense has moved in limine to preclude cross-examination into certain personnel matters concerning Mark Bezy, an anticipated witness on federal prisons. Specifically, the defense seeks to bar inquiry into (1) a crude comment Bezy made to a subordinate; and (2) certain instances in which Bezy directed BOP employees to perform personal tasks for him while on duty.  The defense's motion is granted in part and denied in part.

The government may not inquire into the rude comment that Bezy lodged at a Deputy Warden.  This conduct does not shed much light into the substance of Bezy's testimony or his character for truthfulness.  Rather, there is a substantial risk of misleading the jury into focusing on this colorful comment.  See 18, United States Code, Section 3593(c).

Case 1:10-cr-02734-JCH   Document 1390-6   Filed 11/09/13   Page 3 of 23
Case 15-2347   Document 35   Filed 07/27/2016   Pages: 4186
Case 2:11-cr-00077-PPS-APR   Document 1495-2   Filed 03/02/15   Page 10 of 30

7040

However, the government may ask Mr. Bezy about the three substantiated incidents of misconduct in which he directed staff members to perform personal tasks for him.  As Mr. Bezy will testify on the need to strictly enforce the rules at federal prisons, his own disregard for the BOP's rules should be presented to the jury.  This evidence is not unduly prejudicial, nor will it confuse the issues or mislead the jury.  It is clear why this evidence will be presented, and concerns only substantiated instances of misconduct.  Thus, the government may inquire into these limited personnel matters.

Through Mr. Bezy, the defense wishes to introduce evidence about the conditions at ADX Florence, also called Supermax, and elicit testimony describing how local prosecutors can recommend, and that the Attorney General can order, certain prison designations.  The government has moved to bar the introduction of this evidence arguing that it is unduly speculative.  The government's motion is denied.

Given its factual proffer, the defense's intended evidence is not unduly speculative and passes the balancing test of 18, United States Code, Section 3593(c).  First, evidence about the capabilities of the BOP is extremely probative of the future dangerousness factor.  Second, the government can elicit on cross-examination, or through its own expert, all the reasons why it contends that it is unlikely

Case 1:10-cr-02734-JCH   Document 1390-6   Filed 11/09/13   Page 4 of 23
Case 15-3347   Document 35   Filed 07/27/2016   Pages: 4186
Case 2:11-cr-00077-PPS-APR   Document 1495-2   Filed 03/02/15   Page 11 of 30

7041

that Wilson will be sent to, or remain in, Supermax.  The jury will not be confused.  Instead, it will hear about a potential weapon in the BOP's arsenal and, conversely, the relative likelihood that it may be employed.

The defense has identified a documentary concerning Nas, a prominent rapper, as an intended trial exhibit.  The government seeks to preclude this evidence as irrelevant.  The defense agrees that most of the video is irrelevant but wishes to introduce portions that purportedly contain "a candid account of the neighborhood in which he spent ten years of his life."   The government's motion is granted.

As the defense admits, the Nas documentary is in no way connected to Wilson himself.  Wilson does not know Nas, nor did he witness the specific incidents depicted in the video.  This documentary's only probative value is that it generally describes the Queensbridge housing projects, where Wilson lived.

This limited probative value, however, is far outweighed by the danger of confusing the issues and misleading the jury.  A video concerning a prominent rapper, who may have his own reasons for depicting a particularly bad upbringing, is likely to divert the jury's attention from the central issues in this case, whether Wilson himself had a troubled childhood.

Moreover, Wilson will have ample opportunity to

Case 1:10-cr-02734-JCH   Document 1390-6   Filed 11/09/13   Page 5 of 23
Case 15-2347   Document 35   Filed 07/27/2016   Pages: 4186
Case 2:11-cr-00077-PPS-APR   Document 1495-2   Filed 03/02/15   Page 12 of 30

7042

describe the poor conditions of the Queensbridge housing projects by those who lived there with Wilson.  For instance. Wilson's paternal aunt, Lillian Barnes, can testify about the drugs and violence that were prevalent in that community when Wilson lived with her.

For these reasons, the defense may not introduce the Nas documentary.

It's so ordered.

So, I still need the government's proposed jury charge.

MR. McGOVERN:  Your Honor, we're actually finalizing it --

THE COURT:  Okay.

MR. McGOVERN:  -- today.

THE COURT:  Today?

MR. McGOVERN:  Yes.

THE COURT:  All right.  And we're going to have a charge conference on Monday.

MR. McGOVERN:  Okay.

THE COURT:  I'll give you a time when we have a better idea.  There are some other issues that have come up that may inform our holding court for part of Monday, so I'll let you know about that when I know more.

MR. McGOVERN:  Okay.

If I may, Your Honor, just a couple of follow-ups

Case 1:10-cr-02734-JCH   Document 1390-6   Filed 11/09/13   Page 6 of 23
Case 15-2347   Document 35   Filed 07/27/2016   Pages: 4186
Case 2:11-cr-00077-PPS-APR   Document 1495-2   Filed 03/02/15   Page 13 of 30

7043

for clarifications on your order; as I understand the Court's order, the government may not go into the substance of the comments that Mr. Bezy made.

THE COURT:  Right, the colorful comments to a deputy warden using vulgar language.

MR. McGOVERN:  But the fact that he abraded a deputy warden when she was discussing the issue of shank making, is that something that is still available, that's what the context was, without getting into the actual statements?

THE COURT:  Well, I don't want the statement -- what's the value of raising that issue at all as to the fact that he criticized a deputy warden for something?

MR. McGOVERN:  Well, he criticized the deputy warden during the context of a discussion about inmates making shanks using thread and plastic trays and his whole message here is that, you know, the BOP is on top of every issue and that they know what they're doing and that, you know, safety is their first priority, I mean just that context -- and we agree that the statements, the vulgarity probably has no place here, but the fact that he criticized her, I think particularly because he's admitted that it happened, I think is something of some value.

THE COURT:  Anything from the defense on that?

MR. SOLOWAY:  You know, Judge, I don't think that the topic is being fairly identified for the Court.

Case 1:10-cr-02734-JCH Document 1390-6 Filed 11/09/13 Page 7 of 23
Case 15-2347 Document 35 Filed 07/27/2016 Pages: 4186
Case 2:11-cr-00077-PPS-APR Document 1495-2 Filed 03/02/15 Page 14 of 30

7044

Mr. Bezy's comments were directed at a meeting that part of which involved the subject of shanks in the prison and it was a very serious meeting about that topic and the way that Deputy Warden Janercke was dealing with that topic, not to minimize the topic, in Mr. Bezy's mind he didn't think reflected on the serious matters and the way that they should be dealt with. He didn't mean to -- Mr. McGovern is suggesting that there was some kind of -- that he doesn't care about weapons in the prison and somehow he should be able to go into that.

I mean Your Honor's ruling is directed at the misconduct. There's no suggestion that there was misconduct in these remarks, either in the investigation or in any description of the meeting itself, that suggests that Mr. Bezy doesn't take the issue of weapons in the prison seriously, that wasn't what this was about, and somehow for Mr. McGovern to try to suggest that we can move this whole topic that has nothing to do with that in that direction is creative in some way but has nothing to do with reality, Judge.

I have the OIG report or the investigative report regarding this, this incident in which Mr. Bezy -- it happened on February -- on a date in February of 2006 after 28 years of service by Mr. Bezy. He apologized the very next day to Deputy Warden Janercke. Everybody that was asked about it -- not everybody but the vast majority of people said that he

Case 1:10-cr-02734-JCH   Document 1390-6   Filed 11/09/13   Page 8 of 23
Case 15-2347   Document 35   Filed 07/27/2016   Pages: 4186
Case 2:11-cr-00077-PPS-APR   Document 1495-2   Filed 03/02/15   Page 15 of 30

7045

apologized for making crude remarks to her and just the way that Mr. McGovern is suggesting this should be approached is confusing, has nothing, again, to do with it and so you should adhere to the ruling you made regarding that, Judge.

MR. McGOVERN:  I understand what his arguments are. Perhaps we could take this one and if we want to go into it, we'll approach and ask for a side-bar about this matter.

THE COURT:  Why don't you provide me with the OIG report.

MR. SOLOWAY:  I'll give it to you right now.

THE COURT:  Give it to my clerk, we'll take a look at it.  If we get to that point, I will have read the OIG report, if I decide to change my mind I'll let know.

MR. McGOVERN:  Your Honor, the government fully intends, with the Court's permission, of course, to cross-examine Mr. Bezy on the fact that in the past he's actually denied in sworn testimony that he was under discipline at the time that he retired from the BOP.  He testified --

THE COURT:  Is it for that incident?

MR. McGOVERN:  Yes.

THE COURT:  Go ahead.

MR. McGOVERN:  This report comes out in July of '06, he retires in October of '06 and, you know, what happens is he gets this finding against him and he leaves the Bureau at

Case 1:10-cr-02734-JCH  Document 1390-6  Filed 11/09/13  Page 9 of 23
Case 15-2347  Document 35  Filed 07/27/2016  Pages: 4186
Case 2:11-cr-00077-PPS-APR  Document 1495-2  Filed 03/02/15  Page 16 of 30

7046

28 years of service, two years shy of his 30 years of service which he's previously characterized as his career with the BOP and that's all fine but he's previously testified when he was asked:  That when you retired from the BOP while discipline was pending against you?  I was -- no, no, that's not true.

Question:   That's not true.  No, it's not.

And then the follow-up questions, just to clarify:  Are you saying you never had a finding of official misconduct made against you?

Answer:    No.

Prior to retirement?

Answer:    That's correct.

I mean this goes right to the heart of the man's credibility.  I mean we know that this report exists, it's dated, we know that he was interviewed as part of the investigation.  You know, this is just --

THE COURT:  You can ask him about it.

MR. McGOVERN:  Thank you, Your Honor.

And if Your Honor would, we have another objection that, you know, we received a lot of documents from the defense last night about what they want to put in through Mr. Bezy and we have an objection to the scope of this.

The government received extremely scant notice of what Mr. Bezy was going to testify.  There's a letter dated March 15 of 2013 that says Mr. Bezy is an expert in Federal

Case 1:10-cr-02734-JCH   Document 1390-6   Filed 11/09/13   Page 10 of 23
Case 15-2347   Document 35   Filed 07/27/2016   Pages: 4186
Case 2:11-cr-00077-PPS-APR   Document 1495-2   Filed 03/02/15   Page 17 of 30

7047

Bureau of Prisons' policies, procedures and practices.  That's the only notice we have.

I'm not naive, I know what Mr. Bezy is all about, I've read the transcripts that he's testified in the past. What they're seeking to do here is expand upon what he's even done in the past.  What he's done in the past, he testifies, he tells the whole ADX story, he says how serious jail is and how good the prison system is at keeping everybody safe.

What we received last night were exhibits that suggest that what he's going to do is a personal analysis of Ronell Wilson.  They're going to offer Ronnel Wilson documents about Ronell Wilson's time in Terre Haute and his infraction reports, his movements through Phase 1 and Phase 2 of death row.  I mean this is really an individualized type of expert testimony that, frankly, if you wanted to do it, you could have given us notice of it and then we would potentially have moved against the propriety of it then.

Beyond that, we now have this BOP gang report that they're seeking to offer through Mr. Bezy.  As I mentioned, Mr. Bezy left the Bureau in 2006.  This report is from 2011, and, frankly, we disagree with a lot that's in that report. There are numbers in that report that I've heard Mr. Soloway say during the course of trial cross-examining I think our gang expert about like there being 1,500 Bloods in the entire system of the Bureau of Prisons.  We disagree with that, or at

Case 1:10-cr-02734-JCH   Document 1390-6   Filed 11/09/13   Page 11 of 23
Case 15-2347   Document 35   Filed 07/27/2016   Pages: 4186
Case 2:11-cr-00077-PPS-APR   Document 1495-2   Filed 03/02/15   Page 18 of 30

7048

least we have the right to question it.

They're now going to try to seek to enter that BOP record in through Mr. Bezy that was produced five years after he left the Bureau.  We have no notice of it.  We also have no reason to believe that this man knows anything about gang intel.  He was a warden certainly but this was a report prepared by some special investigative team.  We actually dispute a lot of the information in there.  I don't want to highlight too much about what our problems are with this.

According to this report, there ar 300 MS-13 members in the entire federal prison system.  Our Central Islip office has prosecuted between 100 and 150 alone.  I find it shocking to believe that there are only 300 in the entire federal prison system.  Whether I'm right or I'm wrong, I don't know, but this person is not the person, Mr. Bezy is not the person to cross-examine about it.  So, to put that in is beyond the scope of their notice.

THE COURT:  What he's going to be qualified as an expert on?

MR. McGOVERN:  I would like to --

THE COURT:  I'm waiting to -- that's not a question for you.

MR. SOLOWAY:  Practices, procedures and policy of the Federal Bureau of Prisons, Your Honor.

THE COURT:  As to what?

Case 1:10-cr-02734-JCH   Document 1390-6   Filed 11/09/13   Page 12 of 23
Case 15-2347   Document 35   Filed 07/27/2016   Pages: 4186
Case 2:11-cr-00077-PPS-APR   Document 1495-2   Filed 03/02/15   Page 19 of 30

7049

MR. SOLOWAY:  As to management control of inmates, you know, the operation of federal prisons, the management of federal prisons, the practices of controlling inmates, you know, he's a person that had a 28-year career with the BOP at which he concluded as a warden of Terre Haute and prior to that assignment was the warden of a medium level facility in Ohio and obviously part of the management and control of an inmate population includes -- I mean you would have to be not doing your job to know nothing about gangs.

He's not going to testify as an expert in the sense that William Sheridan testified for the government as to the Bloods.  He's not going to talk about the tattoos, the codes, but there is, just to be very specific, Your Honor, a document and Mr. McGovern doesn't name it, he's had it for weeks, it is a document that we got through the Touhy process that is -- while Mr. McGovern -- it is the specific Bureau of Prisons Intelligence Section threat assessment of the Bloods.  It's called an intelligence summary and a threat assessment as to the specific group the Bloods.

These are materials, Your Honor, that are available to everybody in the BOP at a management -- at a high level of the operation of these facilities.  They are required to be familiar with what intelligence is developed by BOP as to groups.  And there are -- Mr. McGovern can agree or not agree but we're talking about the official position of the Bureau of

Case 1:10-cr-02734-JCH   Document 1390-6   Filed 11/09/13   Page 13 of 23
Case 15-3347   Document 35   Filed 07/27/2016   Pages: 4186
Case 2:11-cr-00077-PPS-APR   Document 1495-2   Filed 03/02/15   Page 20 of 30

7050

Prisons with respect to the 94 security threat groups that are tracked.  Now, we're not going to talk about the 94.  The government has raised many, many issues about the Bloods through Shabucalik Geralds, through agent -- through BOP employee Rivera, through William Sheridan.  Mr. Bezy is going to say, what we would proffer that if Your Honor allows it, he's going to just say there's an official BOP intelligence section nationally that's put out for the information of people running the prisons, in this case the 16 USPs where Mr. Wilson will be one of those, or the ADX, and it says certain things about the Bloods and the threat they pose.

It's in the document.  It's an Intelligence Section report about the Bloods.  It is in the document.  He as a warden, among other things, is required to know about that and has it available.  What it says -- and he's not going -- and, again, the government has had this for three weeks, something like that, what he's going to testify to, this is the official position as to the Bureau of Prisons with respect to the Bloods.

There's another official document that Mr. McGovern, you know, points to that reflects where the Bloods are in the BOP, Your Honor, that they're spread out in every facility at every security classification, minimum, low, medium, high. There's nothing about the Bloods, unlike other groups, Judge, unlike other gangs or security threat groups that by virtue of

Case 1:10-cr-02734-JCH   Document 1390-6   Filed 11/09/13   Page 14 of 23
Case 15-2347   Document 35   Filed 07/27/2016   Pages: 4186
Case 2:11-cr-00077-PPS-APR   Document 1495-2   Filed 03/02/15   Page 21 of 30

7051

their classification in that group would be required, mere with nothing else, to be in a high security facility.  The Bloods do not pose, according to the BOP, that kind of threat.

These are things, Judge, that the government through, for example, Shabucalik Geralds who said, oh, I was in USPs, I was an inmate, the Bloods were --

THE COURT:  I hear you.

MR. McGOVERN:  Your Honor, the fact of the matter is there's just zero notice of that, okay.  And it's a little bit disingenuous at this point to be suggesting that the government knew all of this.  You know, we got a report that apparently, and I'm -- you know, as everybody knows, I don't know anything about this, apparently Mr. Soloway or the team has been litigating with an SDNY Assistant for some time about the propriety of using what's in that document, according to that SDNY Assistant they have been working on it for a very long time, but apart from that, we disagree with what's in the report.

And just using Mr. Sheridan as an example of the flip side of how the defense views things, they litigated over and over again our ability to offer any evidence about the Bloods.  It was litigated the first time around, it was litigated this time around and in the meantime they're collecting all of this intel on their own and not giving any notice of it.

Case 1:10-cr-02734-JCH Document 1390-6 Filed 11/09/13 Page 15 of 23
Case 15-3347 Document 35 Filed 07/27/2016 Pages: 4186
Case 2:11-cr-00077-PPS-APR Document 1495-2 Filed 03/02/15 Page 22 of 30

7052

MR. SOLOWAY: We gave it to them when we got it, Your Honor -- I'm sorry, I don't mean to interrupt Mr. McGovern. We gave it to them.

When did you get it, the threat assessment? I'm talking about two documents, Mr. McGovern, the threat assessment. Did you have that weeks ago? And the document that I referred to with the, Judge?

MR. McGOVERN: To the extent that I'm willing to have a conversation with Mr. Soloway --

THE COURT: Have it with me. Yes, just have it with me.

MR. McGOVERN: We all know when we got it. I got it about two weeks ago to three weeks ago, that's fine. I got notice about five months ago and it says nothing about this. Okay. They could have supplemented it, they didn't. And even if they had put in some notice that this was what they were going to do, he's just not the right witness. He was gone from the Bureau when this report was prepared. They're hoping to do what they've done on time and again in this courtroom which is put in a document and then have some witness who knows nothing about the document read it right into evidence.

Well, it's different with an expert. This man has purportedly some gravitas that the Court is going to charge the jury on that, you know, that he knows what he's talking about and we disagree with these numbers.

Case 1:10-cr-02734-JCH Document 1390-6 Filed 11/09/13 Page 16 of 23
Case 15-2347 Document 35 Filed 07/27/2016 Pages: 4186
Case 2:11-cr-00077-PPS-APR Document 1495-2 Filed 03/02/15 Page 23 of 30

7053

THE COURT: Well, let me ask this, was this witness involved in the preparation of this report?

MR. SOLOWAY: No.

THE COURT: Was he asked to participate by giving information in the preparation of the report? Was he on the committee?

MR. SOLOWAY: No, no. It was a report, as Mr. McGovern indicated, that was prepared in 2011 and Mr. Bezy left the Bureau in 2006.

THE COURT: Is he an expert on gangs?

MR. SOLOWAY: He has in his background an assignment at some point in his career, not in the -- in the 90's to a gang task force in California which is one of the, obviously, nerve centers of the Bloods that had a lot to do with the Bloods but that's a long time ago, Judge. We are not -- this warden --

THE COURT: I think this person could testify about what he does when he gets someone who is in a gang and how he deals with it, how the prison system deals with it generally but regarding some expert report, you need an expert on the subject and you can go get an expert, you have time if you want to do it, you've had plenty of time, you knew it was there a long time ago, but I'm not allowing him to become your expert on the Bloods or on gangs in prisons. There are lots of experts around. So, that's not coming in with this

Case 1:10-cr-02734-JCH   Document 1390-6   Filed 11/09/13   Page 17 of 23
Case 15-2347   Document 35   Filed 07/27/2016   Pages: 4186
Case 2:11-cr-00077-PPS-APR   Document 1495-2   Filed 03/02/15   Page 24 of 30

7054

witness.

So, he can testify on what he's an expert about, not about what you want to put in the record that, you know, you then want to put before the jury which you may have the right to put before the jury but not with this expert.  So, that's the end of that.  I'm not going to expand this expert's expertise to put a round peg in a square hole.  So, that's all we're going to do with that.  And I'm not going to have this trial go on forever with people who you're putting up as an expert to talk about something they're not an expert about. He can talk about how he's dealt with gangs, I think that's perfectly reasonable, or how the prison system generally deals with gangs but the grand story of gangs in the U.S. prisons is not his expertise, as far as I can tell from what you and the government have said and what you've put into the Court in writing.  So, that's the end of that.

Other than that, do we have anything else we'd like to take up before we wake up the jury?

MR. McGOVERN:  Your Honor, perhaps after the next witness we can briefly discuss the propriety of the defense offering individualized assessments that relate to the defendant in the BOP.  They have marked all of his disciplinary records from Terre Haute, his phasing records. They've actually marked Shabucalik Geralds' records as records that they want this person to opine about who is here to stalk

Case 1:10-cr-02734-JCH   Document 1390-6   Filed 11/09/13   Page 18 of 23
Case 15-3347   Document 35   Filed 07/27/2016   Pages: 4186
Case 2:11-cr-00077-PPS-APR   Document 1495-2   Filed 03/02/15   Page 25 of 30

7055

about policies and procedures.  I just think that's wholly inappropriate.

MR. SOLOWAY:  Should I speak to that now, Your Honor, or later?

THE COURT:  Let's call in the jury -- oh, wait, let's call in the witness.  We'll discuss that later after the witness.

MR. STERN:  With your permission, can Mr. Soloway go talk to witnesses who are outside while I do the next witness?

THE COURT:  Sure.  I think that's a good division of labor.

MR. STERN:  Thank you.

(Witness enters courtroom and takes the stand.)

THE COURT:  Bring the jury in.

(Pause while counsel confer.)

MS. COHEN:  Your Honor, on cross-examination we're going to need the hook-up on our computer.

THE COURT:  Okay.

MR. McGOVERN:  Thank you.

THE COURT:  It's on.  Do you have it on?  Can you see it?

MS. COHEN:  Yes.

(Jury enters courtroom.)

THE COURT:  Please be seated.  Good morning, members of the jury.

Case 1:10-cr-02734-JCH   Document 1390-6   Filed 11/09/13   Page 19 of 23
Case 15-3347   Document 35   Filed 07/27/2016   Pages: 4186
Case 2:11-cr-00077-PPS-APR   Document 1495-2   Filed 03/02/15   Page 20 of 30

*Proceedings*                                              7174

here to guess what the Bureau of Prisons Designation Unit in

Texas is going to do because he doesn't work there.  So, he

can't do that.  He's not an expert on that, I know it and you

all know it, because we deal with this all the time, who's the

expert on designations.

        But he is capable of discussing how you deal with

prisoners who are dangerous, who have demonstrated that

they're dangerous to other prisoners or prison officials.  So,

let him testify on that as an expert.

        Anything else?

        MR. SOLOWAY:  One thing.  Mr. McGovern raised

something about the investigation of misconduct and said that

while you had ruled that the comment or the crude remark that

Mr. Bezy made to a deputy warden would not be admissible, he

could ask, didn't you testify at a prior trial and say that

you didn't know that there had been a sustained finding as to

certain of the other things that were allowable, Judge.  The

thing that I'm going to object to and ask you to rethink in a

way, Judge, is that Mr. Bezy -- it's going to create confusion

to say -- to get up on the witness stand and say, didn't you

testify at a prior trial that you didn't know about the

finding that happened in July of 2006 when you were still the

warden until October 2006, but the fact is that Mr. Bezy will

say today, like he said at the prior trial that Mr. McGovern

talked about, that he didn't know about it, that he didn't

Case 1:10-cr-02734-JCH   Document 1390-6   Filed 11/09/13   Page 20 of 23
Case 15-2347   Document 35   Filed 07/27/2016   Pages: 4186
Case 2:11-cr-00077-PPS-APR   Document 1495-2   Filed 03/02/15   Page 27 of 30

*Proceedings*                                                      7175

know about it when he was asked about it at the prior trial which was in Connecticut and so that's his testimony.

So, being able to ask him, didn't you testify in Connecticut and say you didn't know about this finding doesn't really -- it's not logical, it doesn't make sense.  Mr. Bezy's testimony today continues to be that.  So, while Mr. McGovern should be able to ask him that, I have no reason to really object to that I guess, you didn't know, that's his testimony; why should he be able to say didn't you testify in Connecticut what you didn't know when he's not saying he knows now.  He's going to still say that.

So, I believe Your Honor should rule that if Mr. McGovern wants to ask him, you know, wasn't there a ruling, a finding, a sustained finding as to this, this and this that came out in July 2006, you know, is it your testimony, sir, you didn't know about that, etc., fine.  I mean I guess -- and I know what he'll say, just what he said in Connecticut, but what is the issue that Connecticut brings to this, Judge?

MR. McGOVERN:  Well, first of all, it is the Eastern District of Texas and the question was:

"Isn't it true that you retired from the BOP while discipline was pending against you?"

And he then says:  "No, that's not true."

And I'm paraphrasing a little bit here:  Are you

Case 1:10-cr-02734-JCH   Document 1390-6   Filed 11/09/13   Page 21 of 23
Case 15-2347   Document 35   Filed 07/27/2016   Pages: 4186
Case 2:11-cr-00077-PPS-APR   Document 1495-2   Filed 03/02/15   Page 28 of 30

*Proceedings*                                                    7176

saying you never had a finding of official misconduct made against you --

            "Answer:    No.

            -- prior to your retirement?

            "Answer:    That's correct."

            That's just not accurate.  The official finding of misconduct was in July of 2006.  He retired in October of 2006.  I don't know what happened in Connecticut and I'm afraid to find out that maybe he said something different there but this is what he said here which was that there was nothing pending against him and that he didn't know about it even before he retired and that's just not true.

            THE COURT:  Well, a finding -- something pending against him, was it the accusation that was pending?  When was the accusation made against him?

            MR. McGOVERN:  In February of '06 and it was found against him in June of '06.

            THE COURT:  So, he knew about the proceeding or accusation in February?

            MR. McGOVERN:  Presumably, and it was found against him in July -- June.

            THE COURT:  Is it your proffer that he didn't even know he was being investigated --

            MR. SOLOWAY:  Absolutely not.

            THE COURT:  -- after he left the BOP?

Case 1:10-cr-02734-JCH  Document 1390-6  Filed 11/09/13  Page 22 of 23
Case 15-2347  Document 35  Filed 07/27/2016  Pages: 4186
Case 2:11-cr-00077-PPS-APR  Document 1495-2  Filed 03/02/15  Page 29 of 30

MR. SOLOWAY:  No, he knew about it.  He actually gave evidence, other witnesses were talked to.  So, between February and July, because it was decided in July, he was aware of it.  He left the Bureau in October, he had never heard what the -- he would say -- he will say and has said in prior trials he didn't know how it was resolved.  He didn't learn how it was resolved until some years later.  He left the Bureau.  That's what his testimony is.

THE COURT:  Let him testify, let him -- listen, it's his credibility.  I find that, that scenario to be odd that he would be found to be in violation in July.

MR. McGOVERN:  That's right, in June --

THE COURT:  In June or July.

MR. McGOVERN:  June 24.

THE COURT:  He left in October but he never found out about it.  I mean, you know, I know the government works slowly but there are probably some very formal rules about notice to employees as to findings against them.  I don't want to make this a trial within a trial about when he found out.

MR. SOLOWAY:  That's why I'm asking about why we should be talking about what he testified to at other trials about this topic when he will say the same thing today as I've indicated that he said previously and that's his testimony and what -- and Your Honor is right, I hear you, Judge, but that's his testimony and he'll explain it if Mr. McGovern --

Case 1:10-cr-02734-JCH   Document 1390-6   Filed 11/09/13   Page 23 of 23
Case 15-2347   Document 35   Filed 07/27/2016   Pages: 4186
Case 2:11-cr-00077-PPS-APR   Document 1495-2   Filed 03/02/15   Page 30 of 30

*Proceedings*                                          7178

THE COURT:  Let him explain it and let him be questioned on it.  I'm not changing anything.  Is there anything more?

MR. McGOVERN:  No, Your Honor.

MR. JASPER:  Yes, Judge, there is.  The next witness is going to be Dr. Lorie Nicholas who is the psychologist over at MDC.  We plan on putting in some of her psychological reports.

THE COURT:  When did we know we were going to do this?

MR. JASPER:  I'm sorry?

THE COURT:  When did you know you were going to do this, put in psychological reports?

MR. JASPER:  These are just the periodic BOP records that -- they do these every 30 months, Judge.

THE COURT:  Is everyone in agreement on that?  I just want to know if there's something I need to decide --

MR. JASPER:  Yes, there is, Your Honor.

THE COURT:  -- at 20 to 3 with the jury sitting in the jury deliberation room waiting to come in when I could have done it, you know, like on Friday, Saturday or Sunday.

MR. JASPER:  Judge, the government just let us know that what they object to --

MS. COHEN:  The government just received these last night.

Case 1:10-cr-02734-JCH   Document 1390-6   Filed 11/09/13   Page 1 of 23
Case 15-2347   Document 35   Filed 07/27/2016   Pages 4186
Case 2:11-cr-00077-PPS-APR   Document 1495-3   Filed 03/02/15   Page 1 of 23

7038

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - X
UNITED STATES OF AMERICA,    :   04-CR-1016 (NGG)
                             :
                             :
                             :
                             :
      -against-              :   United States Courthouse
                             :   Brooklyn, New York
                             :
                             :
                             :
RONELL WILSON,               :   July 16, 2013
                             :   9:40 a.m.
          Defendant.         :
                             :
- - - - - - - - - - - - - - - - X

TRANSCRIPT OF CRIMINAL CAUSE FOR JURY TRIAL
CONTAINING A SEALED PORTION
BEFORE THE HONORABLE NICHOLAS G. GARAUFIS
UNITED STATES DISTRICT COURT JUDGE

A P P E A R A N C E S:

For the Government:    LORETTA E. LYNCH, ESQ.
                       United States Attorney
                       BY: **CELIA COHEN, ESQ.**
                           **JAMES McGOVERN, ESQ.**
                       Assistant United States Attorneys

For the Defendant:     BY: **DAVID STERN, ESQ.**
                           **RICHARD JASPER, ESQ.**
                           **ROBERT SOLOWAY, ESQ.**

Court Reporter:    Holly Driscoll, CSR
                   Official Court Reporter
                   Telephone: (718) 613-2274
                   E-mail:  Hdrisc@aol.com

Proceedings recorded by computerized stenography.  Transcript
produced by Computer-aided Transcription.

Case 1:10-cr-02734-JCH   Document 1390-6   Filed 11/09/13   Page 2 of 23
Case 15-2347   Document 35   Filed 07/27/2016   Pages: 4186
Case 2:11-cr-00077-PPS-APR   Document 1495-3   Filed 03/02/15   Page 2 of 23

7039

(The following takes place out of the presence of the jury.)

THE COURT:  Please be seated in the back.

THE CLERK:  Case on trial.

Counsel, state your appearances.

MR. McGOVERN:  James McGovern and Celia Cohen on behalf of the United States.  Good morning, Your Honor.

THE COURT:  Good morning.

MR. STERN:  David Stern, Richard Jasper, Robert Soloway for Mr. Wilson.  Good morning.

THE COURT:  Good morning.

The defense has moved in limine to preclude cross-examination into certain personnel matters concerning Mark Bezy, an anticipated witness on federal prisons. Specifically, the defense seeks to bar inquiry into (1) a crude comment Bezy made to a subordinate; and (2) certain instances in which Bezy directed BOP employees to perform personal tasks for him while on duty.  The defense's motion is granted in part and denied in part.

The government may not inquire into the rude comment that Bezy lodged at a Deputy Warden.  This conduct does not shed much light into the substance of Bezy's testimony or his character for truthfulness.  Rather, there is a substantial risk of misleading the jury into focusing on this colorful comment.  See 18, United States Code, Section 3593(c).

Case 1:10-cr-02734-JCH   Document 1390-6   Filed 11/09/13   Page 3 of 23
Case 1:15-2347   Document 35   Filed 07/27/2016   Pages 4186
Case 2:11-cr-00077-PPS-APR   Document 1495-3   Filed 03/02/15   Page 5 of 23

7040

However, the government may ask Mr. Bezy about the three substantiated incidents of misconduct in which he directed staff members to perform personal tasks for him.  As Mr. Bezy will testify on the need to strictly enforce the rules at federal prisons, his own disregard for the BOP's rules should be presented to the jury.  This evidence is not unduly prejudicial, nor will it confuse the issues or mislead the jury.  It is clear why this evidence will be presented, and concerns only substantiated instances of misconduct.  Thus, the government may inquire into these limited personnel matters.

Through Mr. Bezy, the defense wishes to introduce evidence about the conditions at ADX Florence, also called Supermax, and elicit testimony describing how local prosecutors can recommend, and that the Attorney General can order, certain prison designations.  The government has moved to bar the introduction of this evidence arguing that it is unduly speculative.  The government's motion is denied.

Given its factual proffer, the defense's intended evidence is not unduly speculative and passes the balancing test of 18, United States Code, Section 3593(c).  First, evidence about the capabilities of the BOP is extremely probative of the future dangerousness factor.  Second, the government can elicit on cross-examination, or through its own expert, all the reasons why it contends that it is unlikely

Case 1:10-cr-02734-JCH   Document 1390-6   Filed 11/09/13   Page 4 of 23
Case 1:15-2347   Document 35   Filed 07/27/2016   Pages: 4186
Case 2:11-cr-00077-PPS-APR   Document 1495-3   Filed 03/02/15   Page 4 of 23

7041

that Wilson will be sent to, or remain in, Supermax.  The jury

will not be confused.  Instead, it will hear about a potential

weapon in the BOP's arsenal and, conversely, the relative

likelihood that it may be employed.

The defense has identified a documentary concerning

Nas, a prominent rapper, as an intended trial exhibit.  The

government seeks to preclude this evidence as irrelevant.  The

defense agrees that most of the video is irrelevant but wishes

to introduce portions that purportedly contain "a candid

account of the neighborhood in which he spent ten years of his

life."   The government's motion is granted.

As the defense admits, the Nas documentary is in no

way connected to Wilson himself.  Wilson does not know Nas,

nor did he witness the specific incidents depicted in the

video.  This documentary's only probative value is that it

generally describes the Queensbridge housing projects, where

Wilson lived.

This limited probative value, however, is far

outweighed by the danger of confusing the issues and

misleading the jury.  A video concerning a prominent rapper,

who may have his own reasons for depicting a particularly bad

upbringing, is likely to divert the jury's attention from the

central issues in this case, whether Wilson himself had a

troubled childhood.

Moreover, Wilson will have ample opportunity to

Case 1:10-cr-02734-JCH   Document 1390-6   Filed 11/09/13   Page 5 of 23
Case 15-2347   Document 35   Filed 07/27/2016   Pages: 4186
Case 2:11-cr-00077-PPS-APR   Document 1495-3   Filed 03/02/15   Page 5 of 23

7042

describe the poor conditions of the Queensbridge housing projects by those who lived there with Wilson.  For instance.  Wilson's paternal aunt, Lillian Barnes, can testify about the drugs and violence that were prevalent in that community when Wilson lived with her.

For these reasons, the defense may not introduce the Nas documentary.

It's so ordered.

So, I still need the government's proposed jury charge.

MR. McGOVERN:  Your Honor, we're actually finalizing it --

THE COURT:  Okay.

MR. McGOVERN:  -- today.

THE COURT:  Today?

MR. McGOVERN:  Yes.

THE COURT:  All right.  And we're going to have a charge conference on Monday.

MR. McGOVERN:  Okay.

THE COURT:  I'll give you a time when we have a better idea.  There are some other issues that have come up that may inform our holding court for part of Monday, so I'll let you know about that when I know more.

MR. McGOVERN:  Okay.

If I may, Your Honor, just a couple of follow-ups

Case 1:10-cr-02734-JCH   Document 1390-6   Filed 11/09/13   Page 6 of 23
Case 1:15-2347   Document 35   Filed 07/27/2016   Pages: 4186
Case 2:11-cr-00077-PPS-APR   Document 1495-3   Filed 03/02/15   Page 6 of 23

7043

for clarifications on your order; as I understand the Court's order, the government may not go into the substance of the comments that Mr. Bezy made.

THE COURT:  Right, the colorful comments to a deputy warden using vulgar language.

MR. McGOVERN:  But the fact that he abraded a deputy warden when she was discussing the issue of shank making, is that something that is still available, that's what the context was, without getting into the actual statements?

THE COURT:  Well, I don't want the statement -- what's the value of raising that issue at all as to the fact that he criticized a deputy warden for something?

MR. McGOVERN:  Well, he criticized the deputy warden during the context of a discussion about inmates making shanks using thread and plastic trays and his whole message here is that, you know, the BOP is on top of every issue and that they know what they're doing and that, you know, safety is their first priority, I mean just that context -- and we agree that the statements, the vulgarity probably has no place here, but the fact that he criticized her, I think particularly because he's admitted that it happened, I think is something of some value.

THE COURT:  Anything from the defense on that?

MR. SOLOWAY:  You know, Judge, I don't think that the topic is being fairly identified for the Court.

Case 1:10-cr-02734-JCH   Document 1390-6   Filed 11/09/13   Page 7 of 23
Case 1:15-2347   Document 35   Document 1495-3   Filed 07/27/2016/02/15   Pages 4186   23
Case 2:11-cr-00077-PPS-APR   Document 1495-3   Filed 03/02/15   Page 7 of 23

7044

Mr. Bezy's comments were directed at a meeting that part of which involved the subject of shanks in the prison and it was a very serious meeting about that topic and the way that Deputy Warden Janercke was dealing with that topic, not to minimize the topic, in Mr. Bezy's mind he didn't think reflected on the serious matters and the way that they should be dealt with.  He didn't mean to -- Mr. McGovern is suggesting that there was some kind of -- that he doesn't care about weapons in the prison and somehow he should be able to go into that.

I mean Your Honor's ruling is directed at the misconduct.  There's no suggestion that there was misconduct in these remarks, either in the investigation or in any description of the meeting itself, that suggests that Mr. Bezy doesn't take the issue of weapons in the prison seriously, that wasn't what this was about, and somehow for Mr. McGovern to try to suggest that we can move this whole topic that has nothing to do with that in that direction is creative in some way but has nothing to do with reality, Judge.

I have the OIG report or the investigative report regarding this, this incident in which Mr. Bezy -- it happened on February -- on a date in February of 2006 after 28 years of service by Mr. Bezy.  He apologized the very next day to Deputy Warden Janercke.  Everybody that was asked about it -- not everybody but the vast majority of people said that he

Case 1:10-cr-02734-JCH   Document 1390-6   Filed 11/09/13   Page 8 of 23
Case 15-2247   Document 35   Filed 07/27/2016   Pages: 4186
Case 2:11-cr-00077-PPS-APR   Document 1495-3   Filed 03/02/15   Page 8 of 23

7045

apologized for making crude remarks to her and just the way that Mr. McGovern is suggesting this should be approached is confusing, has nothing, again, to do with it and so you should adhere to the ruling you made regarding that, Judge.

MR. McGOVERN:  I understand what his arguments are. Perhaps we could take this one and if we want to go into it, we'll approach and ask for a side-bar about this matter.

THE COURT:  Why don't you provide me with the OIG report.

MR. SOLOWAY:  I'll give it to you right now.

THE COURT:  Give it to my clerk, we'll take a look at it.  If we get to that point, I will have read the OIG report, if I decide to change my mind I'll let know.

MR. McGOVERN:  Your Honor, the government fully intends, with the Court's permission, of course, to cross-examine Mr. Bezy on the fact that in the past he's actually denied in sworn testimony that he was under discipline at the time that he retired from the BOP.  He testified --

THE COURT:  Is it for that incident?

MR. McGOVERN:  Yes.

THE COURT:  Go ahead.

MR. McGOVERN:  This report comes out in July of '06, he retires in October of '06 and, you know, what happens is he gets this finding against him and he leaves the Bureau at

Case 1:10-cr-02734-JCH Document 1390-6 Filed 11/09/13 Page 9 of 23
Case 15-2347 Document 35 Filed 07/27/2016 Pages: 4186
Case 2:11-cr-00077-PPS-APR Document 1495-3 Filed 03/02/15 Page 9 of 23

7046

28 years of service, two years shy of his 30 years of service which he's previously characterized as his career with the BOP and that's all fine but he's previously testified when he was asked:  That when you retired from the BOP while discipline was pending against you?  I was -- no, no, that's not true.

Question:   That's not true.  No, it's not.

And then the follow-up questions, just to clarify:  Are you saying you never had a finding of official misconduct made against you?

Answer:    No.

Prior to retirement?

Answer:    That's correct.

I mean this goes right to the heart of the man's credibility.  I mean we know that this report exists, it's dated, we know that he was interviewed as part of the investigation.  You know, this is just --

THE COURT:  You can ask him about it.

MR. McGOVERN:  Thank you, Your Honor.

And if Your Honor would, we have another objection that, you know, we received a lot of documents from the defense last night about what they want to put in through Mr. Bezy and we have an objection to the scope of this.

The government received extremely scant notice of what Mr. Bezy was going to testify.  There's a letter dated March 15 of 2013 that says Mr. Bezy is an expert in Federal

Case 1:10-cr-02734-JCH Document 1390-6 Filed 11/09/13 Page 10 of 23
Case 15-2347 Document 35 Filed 07/27/2016 Pages: 4186
Case 2:11-cr-00077-PPS-APR Document 1495-3 Filed 03/02/15 Page 10 of 23

7047

Bureau of Prisons' policies, procedures and practices. That's the only notice we have.

I'm not naive, I know what Mr. Bezy is all about, I've read the transcripts that he's testified in the past. What they're seeking to do here is expand upon what he's even done in the past. What he's done in the past, he testifies, he tells the whole ADX story, he says how serious jail is and how good the prison system is at keeping everybody safe.

What we received last night were exhibits that suggest that what he's going to do is a personal analysis of Ronell Wilson. They're going to offer Ronnel Wilson documents about Ronell Wilson's time in Terre Haute and his infraction reports, his movements through Phase 1 and Phase 2 of death row. I mean this is really an individualized type of expert testimony that, frankly, if you wanted to do it, you could have given us notice of it and then we would potentially have moved against the propriety of it then.

Beyond that, we now have this BOP gang report that they're seeking to offer through Mr. Bezy. As I mentioned, Mr. Bezy left the Bureau in 2006. This report is from 2011, and, frankly, we disagree with a lot that's in that report. There are numbers in that report that I've heard Mr. Soloway say during the course of trial cross-examining I think our gang expert about like there being 1,500 Bloods in the entire system of the Bureau of Prisons. We disagree with that, or at

Case 1:10-cr-02734-JCH   Document 1390-6   Filed 11/09/13   Page 11 of 23
Case 15-2347, Document 35   Filed 07/27/2016, Pages 4186
Case 2:11-cr-00077-PPS-APR   Document 1495-3   Filed 03/02/15   Page 11 of 23

7048

least we have the right to question it.

They're now going to try to seek to enter that BOP record in through Mr. Bezy that was produced five years after he left the Bureau.  We have no notice of it.  We also have no reason to believe that this man knows anything about gang intel.  He was a warden certainly but this was a report prepared by some special investigative team.  We actually dispute a lot of the information in there.  I don't want to highlight too much about what our problems are with this.

According to this report, there ar 300 MS-13 members in the entire federal prison system.  Our Central Islip office has prosecuted between 100 and 150 alone.  I find it shocking to believe that there are only 300 in the entire federal prison system.  Whether I'm right or I'm wrong, I don't know, but this person is not the person, Mr. Bezy is not the person to cross-examine about it.  So, to put that in is beyond the scope of their notice.

THE COURT:  What he's going to be qualified as an expert on?

MR. McGOVERN:  I would like to --

THE COURT:  I'm waiting to -- that's not a question for you.

MR. SOLOWAY:  Practices, procedures and policy of the Federal Bureau of Prisons, Your Honor.

THE COURT:  As to what?

Case 1:10-cr-02734-JCH Document 1390-6 Filed 11/09/13 Page 12 of 23
Case 15-2347 Document 35 Filed 07/27/2016 Pages: 4186
Case 2:11-cr-00077-PPS-APR Document 1495-3 Filed 03/02/15 Page 12 of 23

7049

MR. SOLOWAY: As to management control of inmates, you know, the operation of federal prisons, the management of federal prisons, the practices of controlling inmates, you know, he's a person that had a 28-year career with the BOP at which he concluded as a warden of Terre Haute and prior to that assignment was the warden of a medium level facility in Ohio and obviously part of the management and control of an inmate population includes -- I mean you would have to be not doing your job to know nothing about gangs.

He's not going to testify as an expert in the sense that William Sheridan testified for the government as to the Bloods. He's not going to talk about the tattoos, the codes, but there is, just to be very specific, Your Honor, a document and Mr. McGovern doesn't name it, he's had it for weeks, it is a document that we got through the Touhy process that is -- while Mr. McGovern -- it is the specific Bureau of Prisons Intelligence Section threat assessment of the Bloods. It's called an intelligence summary and a threat assessment as to the specific group the Bloods.

These are materials, Your Honor, that are available to everybody in the BOP at a management -- at a high level of the operation of these facilities. They are required to be familiar with what intelligence is developed by BOP as to groups. And there are -- Mr. McGovern can agree or not agree but we're talking about the official position of the Bureau of

Case 1:10-cr-02734-JCH   Document 1390-6   Filed 11/09/13   Page 13 of 23
Case 15-2347   Document 35   Filed 07/27/2016   Pages: 4186
Case 2:11-cr-00077-PPS-APR   Document 1495-3   Filed 03/02/15   Page 13 of 23

7050

Prisons with respect to the 94 security threat groups that are tracked.  Now, we're not going to talk about the 94.  The government has raised many, many issues about the Bloods through Shabucalik Geralds, through agent -- through BOP employee Rivera, through William Sheridan.  Mr. Bezy is going to say, what we would proffer that if Your Honor allows it, he's going to just say there's an official BOP intelligence section nationally that's put out for the information of people running the prisons, in this case the 16 USPs where Mr. Wilson will be one of those, or the ADX, and it says certain things about the Bloods and the threat they pose.

It's in the document.  It's an Intelligence Section report about the Bloods.  It is in the document.  He as a warden, among other things, is required to know about that and has it available.  What it says -- and he's not going -- and, again, the government has had this for three weeks, something like that, what he's going to testify to, this is the official position as to the Bureau of Prisons with respect to the Bloods.

There's another official document that Mr. McGovern, you know, points to that reflects where the Bloods are in the BOP, Your Honor, that they're spread out in every facility at every security classification, minimum, low, medium, high.  There's nothing about the Bloods, unlike other groups, Judge, unlike other gangs or security threat groups that by virtue of

Case 1:10-cr-02734-JCH Document 1390-6 Filed 11/09/13 Page 14 of 23
Case 15-2347 Document 35 Filed 07/27/2016 Pages: 4186
Case 2:11-cr-00077-PPS-APR Document 1495-3 Filed 03/02/15 Page 14 of 23

7051

their classification in that group would be required, mere with nothing else, to be in a high security facility. The Bloods do not pose, according to the BOP, that kind of threat.

These are things, Judge, that the government through, for example, Shabucalik Geralds who said, oh, I was in USPs, I was an inmate, the Bloods were --

THE COURT: I hear you.

MR. McGOVERN: Your Honor, the fact of the matter is there's just zero notice of that, okay. And it's a little bit disingenuous at this point to be suggesting that the government knew all of this. You know, we got a report that apparently, and I'm -- you know, as everybody knows, I don't know anything about this, apparently Mr. Soloway or the team has been litigating with an SDNY Assistant for some time about the propriety of using what's in that document, according to that SDNY Assistant they have been working on it for a very long time, but apart from that, we disagree with what's in the report.

And just using Mr. Sheridan as an example of the flip side of how the defense views things, they litigated over and over again our ability to offer any evidence about the Bloods. It was litigated the first time around, it was litigated this time around and in the meantime they're collecting all of this intel on their own and not giving any notice of it.

Case 1:10-cr-02734-JCH   Document 1390-6   Filed 11/09/13   Page 15 of 23
Case 15-2347   Document 35   Filed 07/27/2016   Pages: 4186
Case 2:11-cr-00077-PPS-APR   Document 1495-3   Filed 03/02/15   Page 15 of 23

7052

MR. SOLOWAY:  We gave it to them when we got it, Your Honor -- I'm sorry, I don't mean to interrupt Mr. McGovern.  We gave it to them.

When did you get it, the threat assessment?  I'm talking about two documents, Mr. McGovern, the threat assessment.  Did you have that weeks ago?  And the document that I referred to with the, Judge?

MR. McGOVERN:  To the extent that I'm willing to have a conversation with Mr. Soloway --

THE COURT:  Have it with me.  Yes, just have it with me.

MR. McGOVERN:  We all know when we got it.  I got it about two weeks ago to three weeks ago, that's fine.  I got notice about five months ago and it says nothing about this.  Okay.  They could have supplemented it, they didn't.  And even if they had put in some notice that this was what they were going to do, he's just not the right witness.  He was gone from the Bureau when this report was prepared.  They're hoping to do what they've done on time and again in this courtroom which is put in a document and then have some witness who knows nothing about the document read it right into evidence.

Well, it's different with an expert.  This man has purportedly some gravitas that the Court is going to charge the jury on that, you know, that he knows what he's talking about and we disagree with these numbers.

Case 1:10-cr-02734-JCH   Document 1390-6   Filed 11/09/13   Page 16 of 23
Case 15-2347   Document 35   Filed 07/27/2016   Pages: 4186
Case 2:11-cr-00077-PPS-APR   Document 1495-3   Filed 03/02/15   Page 16 of 23

7053

THE COURT: Well, let me ask this, was this witness involved in the preparation of this report?

MR. SOLOWAY: No.

THE COURT: Was he asked to participate by giving information in the preparation of the report? Was he on the committee?

MR. SOLOWAY: No, no. It was a report, as Mr. McGovern indicated, that was prepared in 2011 and Mr. Bezy left the Bureau in 2006.

THE COURT: Is he an expert on gangs?

MR. SOLOWAY: He has in his background an assignment at some point in his career, not in the -- in the 90's to a gang task force in California which is one of the, obviously, nerve centers of the Bloods that had a lot to do with the Bloods but that's a long time ago, Judge. We are not -- this warden --

THE COURT: I think this person could testify about what he does when he gets someone who is in a gang and how he deals with it, how the prison system deals with it generally but regarding some expert report, you need an expert on the subject and you can go get an expert, you have time if you want to do it, you've had plenty of time, you knew it was there a long time ago, but I'm not allowing him to become your expert on the Bloods or on gangs in prisons. There are lots of experts around. So, that's not coming in with this

Case 1:10-cr-02734-JCH Document 1390-6 Filed 11/09/13 Page 17 of 23
Case 15-2347 Document 35 Filed 07/27/2016 Pages: 4186
Case 2:11-cr-00077-PPS-APR Document 1495-3 Filed 03/02/15 Page 17 of 23

7054

witness.

So, he can testify on what he's an expert about, not about what you want to put in the record that, you know, you then want to put before the jury which you may have the right to put before the jury but not with this expert. So, that's the end of that. I'm not going to expand this expert's expertise to put a round peg in a square hole. So, that's all we're going to do with that. And I'm not going to have this trial go on forever with people who you're putting up as an expert to talk about something they're not an expert about. He can talk about how he's dealt with gangs, I think that's perfectly reasonable, or how the prison system generally deals with gangs but the grand story of gangs in the U.S. prisons is not his expertise, as far as I can tell from what you and the government have said and what you've put into the Court in writing. So, that's the end of that.

Other than that, do we have anything else we'd like to take up before we wake up the jury?

MR. McGOVERN: Your Honor, perhaps after the next witness we can briefly discuss the propriety of the defense offering individualized assessments that relate to the defendant in the BOP. They have marked all of his disciplinary records from Terre Haute, his phasing records. They've actually marked Shabucalik Geralds' records as records that they want this person to opine about who is here to stalk

Case 1:10-cr-02734-JCH   Document 1390-6   Filed 11/09/13   Page 18 of 23
Case 15-2347   Document 35   Filed 07/27/2016   Pages: 4186
Case 2:11-cr-00077-PPS-APR   Document 1495-3   Filed 03/02/15   Page 18 of 23

7055

about policies and procedures.  I just think that's wholly inappropriate.

MR. SOLOWAY:  Should I speak to that now, Your Honor, or later?

THE COURT:  Let's call in the jury -- oh, wait, let's call in the witness.  We'll discuss that later after the witness.

MR. STERN:  With your permission, can Mr. Soloway go talk to witnesses who are outside while I do the next witness?

THE COURT:  Sure.  I think that's a good division of labor.

MR. STERN:  Thank you.

(Witness enters courtroom and takes the stand.)

THE COURT:  Bring the jury in.

(Pause while counsel confer.)

MS. COHEN:  Your Honor, on cross-examination we're going to need the hook-up on our computer.

THE COURT:  Okay.

MR. McGOVERN:  Thank you.

THE COURT:  It's on.  Do you have it on?  Can you see it?

MS. COHEN:  Yes.

(Jury enters courtroom.)

THE COURT:  Please be seated.  Good morning, members of the jury.

Case 1:10-cr-02734-JCH   Document 1390-6   Filed 11/09/13   Page 19 of 23
Case 15-2347   Document 35   Filed 07/27/2016   Pages: 4186
Case 2:11-cr-00077-PPS-APR   Document 1495-3   Filed 03/02/15   Page 19 of 23

*Proceedings*                                                   7174

here to guess what the Bureau of Prisons Designation Unit in

Texas is going to do because he doesn't work there.  So, he

can't do that.  He's not an expert on that, I know it and you

all know it, because we deal with this all the time, who's the

expert on designations.

          But he is capable of discussing how you deal with

prisoners who are dangerous, who have demonstrated that

they're dangerous to other prisoners or prison officials.  So,

let him testify on that as an expert.

          Anything else?

          MR. SOLOWAY:  One thing.  Mr. McGovern raised

something about the investigation of misconduct and said that

while you had ruled that the comment or the crude remark that

Mr. Bezy made to a deputy warden would not be admissible, he

could ask, didn't you testify at a prior trial and say that

you didn't know that there had been a sustained finding as to

certain of the other things that were allowable, Judge.  The

thing that I'm going to object to and ask you to rethink in a

way, Judge, is that Mr. Bezy -- it's going to create confusion

to say -- to get up on the witness stand and say, didn't you

testify at a prior trial that you didn't know about the

finding that happened in July of 2006 when you were still the

warden until October 2006, but the fact is that Mr. Bezy will

say today, like he said at the prior trial that Mr. McGovern

talked about, that he didn't know about it, that he didn't

Case 1:10-cr-02734-JCH   Document 1390-6   Filed 11/09/13   Page 20 of 23
Case 15-2347   Document 35   Filed 07/27/2016   Pages: 4186
Case 2:11-cr-00077-PPS-APR   Document 1495-3   Filed 03/02/15   Page 20 of 23

*Proceedings*                                                          7175

know about it when he was asked about it at the prior trial

which was in Connecticut and so that's his testimony.

So, being able to ask him, didn't you testify in

Connecticut and say you didn't know about this finding doesn't

really -- it's not logical, it doesn't make sense.  Mr. Bezy's

testimony today continues to be that.  So, while Mr. McGovern

should be able to ask him that, I have no reason to really

object to that I guess, you didn't know, that's his testimony;

why should he be able to say didn't you testify in Connecticut

what you didn't know when he's not saying he knows now.  He's

going to still say that.

So, I believe Your Honor should rule that if

Mr. McGovern wants to ask him, you know, wasn't there a

ruling, a finding, a sustained finding as to this, this and

this that came out in July 2006, you know, is it your

testimony, sir, you didn't know about that, etc., fine.  I

mean I guess -- and I know what he'll say, just what he said

in Connecticut, but what is the issue that Connecticut brings

to this, Judge?

MR. McGOVERN:  Well, first of all, it is the Eastern

District of Texas and the question was:

"Isn't it true that you retired from the BOP while

discipline was pending against you?"

And he then says:  "No, that's not true."

And I'm paraphrasing a little bit here:  Are you

Case 1:10-cr-02734-JCH   Document 1390-6   Filed 11/09/13   Page 21 of 23
Case 15-2347   Document 35   Filed 07/27/2016   Pages: 4186
Case 2:11-cr-00077-PPS-APR   Document 1495-3   Filed 03/02/15   Page 21 of 23

*Proceedings*                                              7176

saying you never had a finding of official misconduct made against you --

          "Answer:     No.

          -- prior to your retirement?

          "Answer:     That's correct."

          That's just not accurate.  The official finding of misconduct was in July of 2006.  He retired in October of 2006.  I don't know what happened in Connecticut and I'm afraid to find out that maybe he said something different there but this is what he said here which was that there was nothing pending against him and that he didn't know about it even before he retired and that's just not true.

          THE COURT:  Well, a finding -- something pending against him, was it the accusation that was pending?  When was the accusation made against him?

          MR. McGOVERN:  In February of '06 and it was found against him in June of '06.

          THE COURT:  So, he knew about the proceeding or accusation in February?

          MR. McGOVERN:  Presumably, and it was found against him in July -- June.

          THE COURT:  Is it your proffer that he didn't even know he was being investigated --

          MR. SOLOWAY:  Absolutely not.

          THE COURT:  -- after he left the BOP?

Case 1:10-cr-02734-JCH   Document 1390-6   Filed 11/09/13   Page 22 of 23
Case 15-2347   Document 35   Filed 07/27/2016   Pages: 4186
Case 2:11-cr-00077-PPS-APR   Document 1495-3   Filed 03/02/15   Page 22 of 23

*Proceedings*                                               7177

MR. SOLOWAY:  No, he knew about it.  He actually gave evidence, other witnesses were talked to.  So, between February and July, because it was decided in July, he was aware of it.  He left the Bureau in October, he had never heard what the -- he would say -- he will say and has said in prior trials he didn't know how it was resolved.  He didn't learn how it was resolved until some years later.  He left the Bureau.  That's what his testimony is.

THE COURT:  Let him testify, let him -- listen, it's his credibility.  I find that, that scenario to be odd that he would be found to be in violation in July.

MR. McGOVERN:  That's right, in June --

THE COURT:  In June or July.

MR. McGOVERN:  June 24.

THE COURT:  He left in October but he never found out about it.  I mean, you know, I know the government works slowly but there are probably some very formal rules about notice to employees as to findings against them.  I don't want to make this a trial within a trial about when he found out.

MR. SOLOWAY:  That's why I'm asking about why we should be talking about what he testified to at other trials about this topic when he will say the same thing today as I've indicated that he said previously and that's his testimony and what -- and Your Honor is right, I hear you, Judge, but that's his testimony and he'll explain it if Mr. McGovern --

Case 1:10-cr-02734-JCH   Document 1390-6   Filed 11/09/13   Page 23 of 23
Case 15-2347   Document 35   Filed 07/27/2016   Pages: 4186
Case 2:11-cr-00077-PPS-APR   Document 1495-3   Filed 03/02/15   Page 23 of 23

*Proceedings*                                                    7178

THE COURT:  Let him explain it and let him be questioned on it.  I'm not changing anything.  Is there anything more?

MR. McGOVERN:  No, Your Honor.

MR. JASPER:  Yes, Judge, there is.  The next witness is going to be Dr. Lorie Nicholas who is the psychologist over at MDC.  We plan on putting in some of her psychological reports.

THE COURT:  When did we know we were going to do this?

MR. JASPER:  I'm sorry?

THE COURT:  When did you know you were going to do this, put in psychological reports?

MR. JASPER:  These are just the periodic BOP records that -- they do these every 30 months, Judge.

THE COURT:  Is everyone in agreement on that?  I just want to know if there's something I need to decide --

MR. JASPER:  Yes, there is, Your Honor.

THE COURT:  -- at 20 to 3 with the jury sitting in the jury deliberation room waiting to come in when I could have done it, you know, like on Friday, Saturday or Sunday.

MR. JASPER:  Judge, the government just let us know that what they object to --

MS. COHEN:  The government just received these last night.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

UNITED STATES OF AMERICA,

        **Plaintiff**

**vs**

**JUAN BRISENO,**

        **Defendant**            **CAUSE NO:   2:11-CR-77**

## DEFENDANT'S REPLY IN SUPPORT OF REQUEST
## FOR PRELIMINARY INSTRUCTIONS

Comes now Defendant Juan Briseno, by counsel John Maksimovich and Arlington Foley, and respectfully replies to the Government's objections to his proposed preliminary instructions.

Jury Never Required to Impose Death

The large majority of district courts in FDPA cases, emphasizing the highly discretionary nature of the jury's ultimate sentencing decision, have continued to instruct that a death sentence is never required. *See, e.g., United States v. Jones*, 527 U.S. 373, 384 (1999) (jury instructed that "regardless of your findings with respect to aggravating and mitigating factors, you are never required to recommend a death sentence"). Two published decisions by district courts have also approved such an instruction. *See United States v. Sampson*, 335 F. Supp. 2d 166, 239-240 (D. Mass. 2004); *United States v. Haynes*, 265 F. Supp. 2d 914, 921-922 (W.D. Tenn. 2003).49 And so do Judge Sand's pattern instructions. 1 Leonard B. Sand, *et al.*, Modern Federal Jury Instructions — Criminal, Inst. 9A-19 & Comment (2008) (while FDPA does not contain same explicit "mercy" provision as ADAA, "it is strongly suggested that the court impress upon the

jury that it is never obligatory to impose the death penalty. Thus, the instruction states that, 'no juror is ever required by the law to impose a death sentence.'"). See also *United States v. Hammer*, 25 F. Supp. 2d 518, 521 (M.D. Pa. 1998) (verdict formed required jurors to certify that "[w]e . . . understand that a jury is never required to impose a death sentence . . . "); *United States v. Battle*, 979 F.Supp. 1442, 1482 (N.D.Ga. 1998) (same); *United States v. McVeigh* (D. Col. No. 96-CR-68-M) (Matsch, J.) (jury instructed that "[w]hatever findings you make with respect to aggravating and mitigating factors, a jury is never required to impose a death sentence"), aff'd,153 F.3d 1166 (10th Cir. 1998).

The Eighth Circuit pattern charge upon which the Government relies is misleading in suggesting that "the law" ever "provides that the defendant must be sentenced to death." Eighth Circuit Pattern Instructions, Death Penalty - Preliminary Instructions, Inst. 12.01. This statement is true only in the tautological sense that the defendant "must" be sentenced to death after each juror has concluded that he should be so sentenced. But the instructions must communicate to jurors that the ultimate decision is up to each one of them.

Consequence of Nonunaimity

The Government's second and third objection involve its disagreement with the same principle: that the decision whether the sentence another human being to death is an individual judgment and jurors should understand that they can agree to disagree. Numerous district courts have instructed federal sentencing juries that non-unanimity would result in a life sentence. In many of these cases, the court has also given jurors the explicit option of a not-unanimous verdict on the verdict form. *See, e.g., United States v. Sampson*, 335 F. Supp. 2d 166, 240 (D. Mass. 2004) (court informed jury of consequences of nonunanimity because this emphasized individual responsibility of each juror and ensured each was fully informed of consequences of its actions).

Presumption of Life

Judge Sand's pattern charge calls for jurors to be told to apply a "reasonable doubt"

standard to the determination whether aggravators sufficiently outweigh mitigators. See 1

Leonard B. Sand, *et al.*, Modern Federal Jury Instructions — Criminal, Inst. 9A-19 (2008) ("This

weighing process asks whether you are unanimously persuaded, beyond a reasonable doubt, that

the aggravating factors sufficiently outweigh any mitigating factors or, in the absence of any

mitigating factors that the aggravating factors are themselves sufficient to call for a sentence of

death on the particular capital count you are considering . . . . Remember that all 12 jurors must

agree beyond a reasonable doubt that death is in fact the appropriate sentence"). And a number of

district courts have given such a charge. *See, e.g., United States v. Sampson*, 335 F. Supp. 2d

166, 239-240 (D. Mass. 2004) (court charged: "However you personally define sufficiency, the

prosecution must convince you beyond a reasonable doubt that the aggravating factor or factors

sufficiently outweigh the mitigating factors to make death the appropriate penalty in this case.").

Combined with the numerous other findings that the jurors must make beyond a reasonable

doubt, there is clearly a presumption of a life sentence under the law.


**WHEREFORE**, Defendant Juan Briseno requests the Court deliver his proposed

preliminary instructions as submitted.

**Respectfully submitted:**

/s/ *Arlington Foley*
_____

Arlington Foley /#6905-45
Attorney For Defendant
1942 North Main Street
Crown Point, IN 46307
PH: 219.661.1200
FX: 219.661.1205

/s/ *John Maksimovich*
_____

John Maksimovich /#9950-45
Attorney For Defendant
1946 North Main Street
Crown Point, IN 46307
PH: 219.663.1900
FX: 219.663.1908

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

**UNITED STATES OF AMERICA,**

        **Plaintiff**

**vs**

**JUAN BRISENO,**

        **Defendant**            **CAUSE NO: 2:11-CR-77**

**CERTIFICATE OF SERVICE**

I hereby certify that on March 3, 2015, I electronically filed:

***DEFENDANT'S REPLY IN SUPPORT OF REQUEST FOR PRELIMINARY INSTRUCTIONS***

with the Clerk of the Court using the CM/ECF system, which sent notification of such filing to the following:

| David J. Nozick | Bruce Hegyi |
|---|---|
| Assistant United States Attorney | Assistant United States Attorney |

and I hereby certify that I have mailed by United States Postal Service, the document to the following non-CM/ECF participants:

        N/A

By:   /s/ John Maksimovich  John
Maksimovich /#9950-45
Attorney For Defendant
1946 North Main Street
Crown Point, IN 46307
PH: 219.663.1900
FX: 219.663.1908
E-Mail: criminallaw@johnmaksimovich.com

3415

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
## HAMMOND DIVISION

**UNITED STATES OF AMERICA,**

        **Plaintiff**

**vs**

**JUAN BRISENO,**

        **Defendant**                  **CAUSE NO:   2:11-CR-77**

## MOTION TO PROHIBIT INTRODUCTION INTO
## EVIDENCE OF GRAPHIC VIDEO OF PRISON VIOLENCE

Comes now Defendant Juan Briseno, by counsel John Maksimovich and Arlington Foley, and respectfully moves before the Court for an order prohibiting the introduction into evidence by the Government of a graphic video depicting violent assaults committed within prisons.

Yesterday morning undersigned counsel were provided by the Government with a video containing recordings of seven brutal assaults, some of which resulted in the victim's death, all committed in United States prisons.  These recordings have nothing to do with Mr. Briseno and are clearly intended to inflame the passions of the jurors.  It is submitted that whatever minimal probative value these videos may have is outweighed by their prejudicial effect and the Government should be prohibited from showing them to the jury.

**WHEREFORE**, Defendant Juan Briseno requests the Court exclude the video from evidence.

**Respectfully submitted:**

/s/ *Arlington Foley*
_____

Arlington Foley /#6905-45
Attorney For Defendant
1942 North Main Street
Crown Point, IN 46307
PH: 219.661.1200
FX: 219.661.1205

/s/ *John Maksimovich*
_____

John Maksimovich /#9950-45
Attorney For Defendant
1946 North Main Street
Crown Point, IN 46307
PH: 219.663.1900
FX: 219.663.1908

3416

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

UNITED STATES OF AMERICA,

             **Plaintiff**

vs

JUAN BRISENO,

             **Defendant**      CAUSE NO:   2:11-CR-77

CERTIFICATE OF SERVICE

I hereby certify that on March 3, 2015, I electronically filed:

*MOTION TO PROHIBIT INTRODUCTION INTO EVIDENCE OF GRAPHIC VIDEO
OF PRISON VIOLENCE*

with the Clerk of the Court using the CM/ECF system, which sent notification of such filing to
the following:

| David J. Nozick | Bruce Hegyi |
| :---: | :---: |
| Assistant United States Attorney | Assistant United States Attorney |

and I hereby certify that I have mailed by United States Postal Service, the document to the
following non-CM/ECF participants:

        N/A

By:   /s/ John Maksimovich  John
Maksimovich /#9950-45
Attorney For Defendant
1946 North Main Street
Crown Point, IN 46307
PH: 219.663.1900
FX: 219.663.1908
E-Mail: criminallaw@johnmaksimovich.com

3417

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# HAMMOND DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| vs. | ) | 2:11-cr-00077 |
| | ) | |
| JUAN BRISEÑO | ) | |

## COURT'S PROPOSED JURY INSTRUCTIONS (GUILT PHASE)

Dated: February 25, 2015.

/s/ Philip P. Simon
PHILIP P. SIMON, CHIEF JUDGE
UNITED STATES DISTRICT COURT

3418

**INSTRUCTION NO. 1**

Members of the jury, I will now instruct you on the law that you must follow in deciding this case. I will also give you a copy of these instructions to use in the jury room. You must follow all of my instructions about the law, even if you disagree with them. This includes the instructions I gave you before the trial, any instructions I gave you during the trial, and the instructions I am giving you now.

As jurors, you have two duties. Your first duty is to decide the facts from the evidence that you saw and heard here in court. This is your job, not my job or anyone else's job.

Your second duty is to take the law as I give it to you, apply it to the facts, and decide if the government has proved the defendant guilty beyond a reasonable doubt.

You must perform these duties fairly and impartially. Do not let sympathy, prejudice, fear, or public opinion influence you. In addition, do not let any person's race, color, religion, national ancestry, or gender influence you.

You must not take anything I said or did during the trial as indicating that I have an opinion about the evidence or about what I think your verdict should be.

*7th Circuit Pattern Jury Instructions*, No. 1.01 (Functions of the Court and Jury).

3419

## INSTRUCTION NO. 2

The charges against the defendant are in a document called a fourth superseding indictment.

The fourth superseding indictment in this case charges that the defendant committed the following crimes:

Count One of the fourth superseding indictment charges the defendant with conspiracy to commit racketeering. Count Two charges the defendant with conspiring to knowingly and intentionally possess with intent to distribute and distribute one hundred (100) kilograms or more of a mixture and substance containing a detectable amount of marijuana and five (5) kilograms or more of a mixture and substance containing a detectable amount of cocaine. Counts Nine, Thirteen, Fifteen, Seventeen, Nineteen, and Twenty-One charge the defendant with murder in aid of racketeering. Counts Twenty-Three, Twenty-Seven, and Twenty-Nine charge the defendant with attempted murder in aid of racketeering. Counts Twenty-Four, Twenty-Eight, and Thirty charge the defendant with use of a firearm during and in relation to a crime of violence. The defendant has pled not guilty to the charges.

The fourth superseding indictment is simply the formal way of telling the defendant what crimes he is accused of committing. It is not evidence that the defendant is guilty. It does not even raise a suspicion of guilt.

*7th Circuit Pattern Jury Instructions*, No. 1.02 (The Charge).

**INSTRUCTION NO. 3**

The defendant is presumed innocent of each and every one of the charges. This presumption continues throughout the case, including during your deliberations. It is not overcome unless, from all the evidence in the case, you are convinced beyond a reasonable doubt that the defendant is guilty as charged.

The government has the burden of proving the defendant's guilt beyond a reasonable doubt. This burden of proof stays with the government throughout the case.

The defendant is never required to prove his innocence. He is not required to produce any evidence at all.

*7th Circuit Pattern Jury Instructions*, No. 1.03 (Presumption of Innocence / Burden of Proof).

## INSTRUCTION NO. 4

You must make your decision based only on the evidence that you saw and heard here in court. Do not consider anything you may have seen or heard outside of court, including anything from the newspaper, television, radio, the Internet, or any other source.

The evidence includes only what the witnesses said when they were testifying under oath, the exhibits that I allowed into evidence, and any stipulations that the lawyers agreed to. A stipulation is an agreement that certain facts are true or that a witness would have given certain testimony.

Nothing else is evidence. The lawyers' statements and arguments are not evidence. If what a lawyer said is different from the evidence as you remember it, the evidence is what counts. The lawyers' questions and objections likewise are not evidence.

A lawyer has a duty to object if he thinks a question is improper. If I sustained objections to questions the lawyers asked, you must not speculate on what the answers might have been.

If, during the trial, I struck testimony or exhibits from the record, or told you to disregard something, you must not consider it.

*7th Circuit Pattern Jury Instructions*, No. 2.01 (The Evidence).

## INSTRUCTION NO. 5

Give the evidence whatever weight you decide it deserves. Use your common sense in weighing the evidence, and consider the evidence in light of your own everyday experience.

People sometimes look at one fact and conclude from it that another fact exists. This is called an inference. You are allowed to make reasonable inferences, so long as they are based on the evidence.

*7th Circuit Pattern Jury Instructions*, No. 2.0 (Considering The Evidence).

**INSTRUCTION NO. 6**

You may have heard the terms "direct evidence" and "circumstantial evidence." Direct evidence is evidence that directly proves a fact. Circumstantial evidence is evidence that indirectly proves a fact.

You are to consider both direct and circumstantial evidence. The law does not say that one is better than the other. It is up to you to decide how much weight to give to any evidence, whether direct or circumstantial.

*7th Circuit Pattern Jury Instructions*, No. 2.03 (Direct and Circumstantial Evidence).

## INSTRUCTION NO. 7

Do not make any decisions simply by counting the number of witnesses who testified about a certain point.

You may find the testimony of one witness or a few witnesses more persuasive than the testimony of a larger number. You need not accept the testimony of the larger number of witnesses.

What is important is how truthful and accurate the witnesses were and how much weight you think their testimony deserves.

*7th Circuit Pattern Jury Instructions*, No. 2.04 (Number of Witnesses).

**INSTRUCTION NO. 8**

A defendant has an absolute right not to testify. You may not consider in any

way the fact that the defendant did not testify. You should not even discuss it in your

deliberations.

*7th Circuit Pattern Jury Instructions*, No. 2.05 (Defendant's Failure to Testify or Present
Evidence).

## INSTRUCTION NO. 9

Part of your job as jurors is to decide how believable each witness was, and how much weight to give each witness's testimony. You may accept all of what a witness says, or part of it, or none of it.

Some factors you may consider include:

- the intelligence of the witness;

- the witness's ability and opportunity to see, hear, or know the things the witness testified about;

- the witness's memory;

- the witness's demeanor;

- whether the witness had any bias, prejudice, or other reason to lie or slant the testimony;

- the truthfulness and accuracy of the witness's testimony in light of the other evidence presented; and

- inconsistent statements or conduct by the witness.

*7th Circuit Pattern Jury Instructions*, No. 3.01 (Credibility of Witnesses).

# INSTRUCTION NO. 10

It is proper for an attorney to interview any witness in preparation for trial.

*7th Circuit Pattern Jury Instructions*, No. 3.02 (Attorney Interviewing Witness).

## INSTRUCTION NO. 11

You have heard evidence that before the trial, witnesses made statements that may be inconsistent with their testimony here in court. You may consider an inconsistent statement made before the trial to help you decide how believable a witness's testimony was here in court. If an earlier statement was made under oath, then you can also consider the earlier statement as evidence of the truth of whatever the witness said in the earlier statement.

*7th Circuit Pattern Jury Instructions*, No. 3.03 (Prior Inconsistent Statements).

## INSTRUCTION NO. 12

You have heard testimony from witnesses David Almaraz, Anthony Baldazo, Jacob Davidovich, Galo Feliciano, Vincent Garza, Andres Lara, Carlos Orta, Anthony Romero and Joseph Torres, each of whom was promised certain benefits in return for his testimony and cooperation with the government. In addition, Almaraz, Baldazo, Feliciano, Garza and Torres pled guilty to one or more of the crimes the defendant is charged with committing. You may not consider any of their guilty pleas as evidence against the defendant.

You may give these witnesses' testimony whatever weight you believe is appropriate, keeping in mind that you must consider that testimony with caution and great care.

*7th Circuit Pattern Jury Instructions*, No. 3.05 (Witnesses Requiring Special Caution).

**INSTRUCTION NO. 13**

You may consider evidence that a witness was convicted of a crime only in deciding the believability of his testimony. You may not consider it for any other purpose.

*7th Circuit Pattern Jury Instructions*, No. 3.06 (Impeachment By Prior Conviction).

## INSTRUCTION NO. 14

You have heard testimony that the defendant made a statement to FBI Agent Arthur Grist. You must decide whether the defendant actually made the statement and, if so, how much weight to give to the statement. In making these decisions, you should consider all of the evidence, including the defendant's personal characteristics and circumstances under which the statement may have been made.

*7th Circuit Pattern Jury Instructions*, No. 3.09 (Statement by Defendant).

## INSTRUCTION NO. 15

You have heard testimony of identifications of people. Identification testimony is an expression of the witness's belief or impression. In evaluating this testimony, you should consider the opportunity the witness had to observe the person at the time of or near the offense and to make a reliable identification later. You should also consider the circumstances under which the witness later made the identification.

The government must prove beyond a reasonable doubt that the defendant is the person who committed the crime that is charged.

*7th Circuit Pattern Jury Instructions*, No. 3.12 (Identification Testimony).

**INSTRUCTION NO. 16**

You have heard several witnesses who gave opinions and testimony about certain subjects. Specifically:

1.      Officer Darryl Shaffer testified about police dog training;

2.      Forensic Pathologists Dr. John Cavanaugh, Dr. J. Lawrence Cogan and Dr. Young M. Kim each testified about the cause and manner of death; and

3.      Henry Hatch and Melissa Oberg testified concerning firearms and ammunition testing.

You do not have to accept these witnesses' opinions or testimony. You should judge these witnesses' opinions and testimony the same way you judge the testimony of any other witness. In deciding how much weight to give to these opinions and testimony, you should consider each witness's qualifications, how he or she reached his or her opinions and conclusions, and the factors I have described for determining the believability of testimony.

*7th Circuit Pattern Jury Instructions*, No. 3.13 (Opinion Testimony).

**INSTRUCTION NO. 17**

You have heard recorded conversations and seen video recordings. This is proper evidence that you should consider together with and in the same way you consider the other evidence.

The recordings and videotapes were admitted into evidence and will be provided to you for your use during deliberation along with a device to play them on and instructions on its use. It is up to you to decide whether to watch and/or listen to the recordings during your deliberations. You may, if you wish, rely on your recollections of what you heard during the trial.

*7th Circuit Pattern Jury Instructions*, No. 3.14 (Recorded Conversations/Transcripts).

**INSTRUCTION NO. 18**

Certain summaries were admitted in evidence. You may use those summaries as evidence even though the underlying records are not here.

It is up to you to decide how much weight to give to the summaries.

*7th Circuit Pattern Jury Instructions*, No. 3.16 (Summaries Received in Evidence).

**INSTRUCTION NO. 19**

Certain diagrams and notations on exhibits were shown to you to help explain other evidence that was admitted. These diagrams and notations are not themselves evidence or proof of any facts, so you will not have these particular diagrams or notations during your deliberations. However, based on your recollection of these diagrams and notations, if they do not correctly reflect the facts shown by the evidence, you should disregard these diagrams and notations and determine the facts from the underlying evidence.

*7th Circuit Pattern Jury Instructions*, No. 3.17 (Demonstrative Summaries/Charts Not Received in Evidence).

**INSTRUCTION NO. 20**

If you have taken notes during the trial, you may use them during deliberations to help you remember what happened during the trial. You should use your notes only as aids to your memory. The notes are not evidence. All of you should rely on your independent recollection of the evidence, and you should not be unduly influenced by the notes of other jurors. Notes are not entitled to any more weight than the memory or impressions of each juror.

*7th Circuit Pattern Jury Instructions*, No. 3.18 (Juror Note-Taking).

**INSTRUCTION NO. 21**

The fourth superseding indictment charges that the crimes happened "on or about" certain dates. The government must prove that the crimes happened reasonably close to those dates. The government is not required to prove that the crimes happened on those exact dates.

*7th Circuit Pattern Jury Instructions*, No. 4.05 (Date of Crime Charged).

## INSTRUCTION NO. 22

The defendant has been accused of more than one crime. The number of charges is not evidence of guilt and should not influence your decision.

You must consider each charge separately. Your decision on one charge, whether it is guilty or not guilty, should not influence your decision on any other charge.

*7th Circuit Pattern Jury Instructions*, No. 4.06 (Separate Consideration - One Defendant Charged with Multiple Crimes).

**INSTRUCTION NO. 23**

An offense may be committed by more than one person. A defendant's guilt may be established without proof that the defendant personally performed every act constituting the crime charged.

*7th Circuit Pattern Jury Instructions*, No. 5.05 (Joint Venture).

**INSTRUCTION NO. 24**

Any person who knowingly aids, counsels, commands, induces, or procures the commission of an offense may be found guilty of that offense if he knowingly participated in the criminal activity and tried to make it succeed.

If the defendant knowingly causes the acts of another, then the defendant is responsible for those acts as though he personally committed them.

*7th Circuit Pattern Jury Instructions*, No. 5.06 (Aiding And Abetting/Acting Through Another).

**INSTRUCTION NO. 25**

A person acts knowingly if he realizes what he is doing and is aware of the nature of his conduct, and does not act through ignorance, mistake, or accident. In deciding whether the defendant acted knowingly, you may consider all of the evidence, including what the defendant did or said.

*7th Circuit Pattern Jury Instructions*, No. 4.10 (Identification Testimony).

# INSTRUCTIONS FOR COUNT 1 CHARGING
# RACKETEERING CONSPIRACY

**INSTRUCTION NO. 26**

The defendant is charged in Count One with conspiracy to commit racketeering.

The defendant is charged in Count Two with conspiracy to possess with intent to distribute and distribute marijuana and cocaine.

For purposes of both Counts One and Two, you are instructed that a conspiracy is an express or implied agreement between two or more persons to commit a crime. A conspiracy may be proven even if its goal or goals were not accomplished.

In deciding whether the charged conspiracy existed, you may consider all of the circumstances, including the words and acts of each of the alleged participants.

*7th Circuit Pattern Jury Instructions*, No. 5.09 (Conspiracy - Definition of Conspiracy).

**INSTRUCTION NO. 27**

To be a member of a conspiracy, the defendant does not need to join it at the beginning, and he does not need to know all of the other members or all of the means by which the illegal goal or goals of the conspiracy were to be accomplished. The government must prove beyond a reasonable doubt that the defendant was aware of the illegal goal or goals of the conspiracy and knowingly joined the conspiracy.

A defendant is not a member of a conspiracy just because he knew and/or associated with people who were involved in a conspiracy, knew there was a conspiracy, and/or was present during conspiratorial discussions.

In deciding whether the defendant joined the charged conspiracy, you must base your decision only on what the defendant did or said. To determine what the defendant did or said, you may consider the defendant's own words or acts. You may also use the words or acts of other persons to help you decide what the defendant did or said.

*7th Circuit Pattern Jury Instructions*, No. 5.10 (Conspiracy - Membership in Conspiracy).

**INSTRUCTION NO. 28**

Count One charges the defendant with conspiracy to commit racketeering. In order for you to find the defendant guilty of this charge, the government must prove each of the five following elements beyond a reasonable doubt:

1.      That the conspiracy as charged in Count One existed;

2.      That the Defendant knowingly became a member of the conspiracy with the intent to advance the conspiracy;

3.      That the conspiracy was an agreement to conduct or participate in the conduct of the affairs of the Imperial Gangsters Street Gang, an enterprise, through a pattern of racketeering activity as described in Count One;

4.      That the Imperial Gangsters was an enterprise; and

5.      That the activities of the Imperial Gangsters affected interstate commerce.

If you find from your consideration of all the evidence that the government has proved each of these elements beyond a reasonable doubt, then you should find the defendant guilty.

If, on the other hand, you find from your consideration of all the evidence that the government has failed to prove any one of these elements beyond a reasonable doubt as to the defendant, then you should find the defendant not guilty.

*7th Circuit Pattern Jury Instructions*, 18 U.S.C. Section 1962(d) (Racketeering Conspiracy - Elements); *7th Circuit Pattern Instruction* 5.08(B).

**INSTRUCTION NO. 29**

In order to find a "pattern of racketeering activity" for purposes of Count One, you must find beyond a reasonable doubt that the defendant agreed that some member or members of the conspiracy would commit at least two acts of racketeering as described in Count One, and that they were separate acts. You must also find that those acts were in some way related to each other and that there was continuity between them.

Acts are related to each other if they are not isolated events, that is, if they have similar purposes, or results, or participants, or victims, or are committed a similar way, or have similar distinguishing characteristics, or are part of the affairs of the same enterprise.

There is continuity between acts if, for example, they are ongoing over a substantial period of time, or had the potential to continue over a substantial period, or if they are part of the regular way some entity does business or conducts its affairs.

For purposes of Count One, the government does not have to prove that any racketeering acts were actually committed at all, or that the defendant agreed to personally commit any such acts, or that the defendant agreed that two or more specific acts would be committed.

*7th Circuit Pattern Jury Instructions*, 18 U.S.C. Section 1962(d) (Pattern Requirement) - Racketeering Conspiracy).

**INSTRUCTION NO. 30**

The term "enterprise" can include a group of people associated together for a common purpose of engaging in a course of conduct. This group may be associated together for purposes that are both legal and illegal.

In considering whether a group is an "enterprise," you may consider whether it has an ongoing organization or structure, either formal or informal, and whether the various members of the group functioned as a continuing unit. A group may continue to be an "enterprise" even if it changes membership by gaining or losing members over time.

The government must prove that the group described in the fourth superseding indictment was the "enterprise" charged, but need not prove each and every allegation in the fourth superseding indictment about the enterprise or the manner in which the enterprise operated. The government need not prove the association had any form or structure beyond the minimum necessary to conduct the charged pattern of racketeering.

*7th Circuit Pattern Jury Instructions*, 18 U.S.C. Section 1961(4) (Enterprise - Association in Fact).

## INSTRUCTION NO. 31

A person conducts or participates in the conduct of the affairs of an enterprise if that person uses his position in, or association with, the enterprise to perform acts which are involved in some way in the operation or management of the enterprise, directly or indirectly, or if the person causes another to do so. In order to have conducted or participated in the conduct of the affairs of an enterprise, a person need not have participated in all of the activity alleged in Count One.

A person conspires to conduct or participate in the conduct of the affairs of an enterprise if that person agrees to knowingly facilitate the activities of the operators or managers who conduct or participate in the conduct of its affairs.

*7th Circuit Pattern Jury Instructions*, 18 U.S.C. Section 1962(c) and (d) (Conduct - Definition).

**INSTRUCTION NO. 32**

To be associated with an enterprise, a person must be involved with the enterprise in a way that is related to its affairs or common purpose, although the person need not have a stake in the goals of the enterprise and may even act in a way that subverts those goals. A person may be associated with an enterprise without being so throughout its existence.

*7th Circuit Pattern Jury Instructions*, 18 U.S.C. Section 1962(c) and (d) (Associate - Definition).

### INSTRUCTION NO. 33

Interstate commerce includes the movement of money, goods, services or persons from one state to another or between another country and the United States. This would include the purchase or sale of goods or supplies from outside the state in which the enterprise was located, the use of interstate mail or wire facilities, or the causing of any of those things. If you find that beyond a reasonable doubt either (a) that the enterprise made, purchased, sold or moved goods or services that had their origin or destination outside the state in which the enterprise was located, or (b) that the actions of the enterprise affected in any degree the movement of money, goods or services across state lines, then interstate commerce was engaged in or affected.

The government need only prove that the enterprise as a whole engaged in interstate commerce or that its activity affected interstate commerce to any degree, although proof that racketeering acts did affect interstate commerce meets that requirement. The government need not prove that the defendant engaged in interstate commerce, or that the acts of the defendant affected interstate commerce.

*7th Circuit Pattern Jury Instructions*, 18 U.S.C. Section 1962 (Interstate Commerce - Definition).

**INSTRUCTION NO. 34**

For Count One, the government must prove beyond a reasonable doubt that the defendant agreed that a conspirator, who could be the defendant himself, did or would intentionally commit, or cause, or aid and abet the commission of, two or more of the racketeering acts of the type or types alleged in the fourth superseding indictment. Your verdict must be unanimous as to which type or types of racketeering activity you find that the defendant agreed was or would be committed, caused, or aided and abetted.

For purposes of Count One, the law defines "racketeering activity" as acts involving murder, attempted murder and robbery, as those offenses are defined under Indiana State law, and acts constituting Federal Robbery, and Drug Trafficking, as those offenses are defined under federal law.

I will now instruct you on the elements of the offenses listed in the fourth superseding indictment as racketeering activity.

**Murder (Indiana Code 35-42-1-1)**

Under Indiana law, a person commits the offense of murder when he:

1. knowingly or intentionally,

2. killed,

3. a victim.

**Attempted Murder (I.C. 35-41-5-1(a), I.C. 35-42-1-1)**

Under Indiana law, a person commits the crime of attempted murder when the person:

1. acting with the specific intent to kill the victim,

2. did aim a firearm at the victim and shoot,

3. which was conduct constituting a substantial step toward the commission of the intended crime of killing the victim.

**Aiding, Inducing, or Causing Attempted Murder (I.C. 35-41-2-4 and I.C. 35-41-5-1(a) and I.C. 35-42-1-1)**

Under Indiana law, a person commits the offense of aiding, inducing, or causing attempted murder when the person:

1. knowingly or intentionally,

2. aided or induced or caused another person to engage,

3. in conduct that constituted a substantial step toward killing a victim,

4. and both the defendant and the other person acted with the specific intent to kill the victim.

**Robbery (Indiana Code 35-42-5-1)**

Under Indiana law, a person commits the offense of robbery when the person:

1. knowingly or intentionally,

2. takes property from another person or takes property from the presence of another person,

3. by using or threatening the use of force on another person or by putting another person in fear.

**Aiding, Inducing, or Causing an Offense (I.C. 35-41-2-4)**

Under Indiana law, a person aids, induces, or causes a specified offense when the person:

1. knowingly or intentionally,

2. aided or induced or caused,

3. another person to commit the offense, as that offense is defined by statute,

4. by assisting in, bringing about, or ordering the commission of the offense.

**Federal Robbery (18 U.S.C. § 1951)**

A person commits robbery under federal law when:

1. he knowingly obtains money or property from or in the presence of a victim;

2. he does so by means of robbery, that is, by unlawfully taking or obtaining of personal property from the person or in the presence of another, against his will, by means of actual or threatened force, or violence;

3. he believes that the victim parted with the money or property because of the robbery; and

4. his conduct affects interstate commerce.

**Narcotics Trafficking** - Distribution and Possession with Intent to Distribute a Controlled Substance 21 U.S.C. § 841(a)(1) and Conspiracy to Distribute and Possess with Intent to Distribute a Controlled Substance (21 U.S.C. § 846).

I will be instructing you on the elements of distribution, possession with intent to distribute, and conspiracy to distribute and possess with intent to distribute a controlled substance when I give you the instructions for Count Two. Those instructions should be applied here.

*United States v. Martin Anaya*, 2:10-cr-00109 RL (Instruction 33 in Court's Instructions, Docket Entry #596, at page 35); *Indiana Pattern Jury Instructions Criminal Instruction No.3.01* - Murder-Killing a Human Being; *Indiana Pattern Jury Instructions Criminal Instruction No. 2.01(a)* – Attempted Murder; *Indiana Pattern Jury Instructions Criminal Instruction No. 3.49* – Robbery; *Indiana Pattern Jury Instructions Criminal Instruction No. 2.11* - Aiding, Inducing or Causing an Offense; *Indiana Pattern Jury Instruction Criminal Instruction No. 2.11(a)* – Aiding, Inducing or Causing Attempted Murder; *7th Circuit Pattern Jury Instruction*, 18 U.S.C. § 1951 - Extortion - Robbery - Elements & 18 U.S.C. § 1951 – Definition of Robbery.

# INSTRUCTIONS FOR COUNT 2 CHARGING DRUG CONSPIRACY

**INSTRUCTION NO. 35**

Count Two charges the defendant with conspiracy to possess with intent to distribute and distribute marijuana and cocaine. In order for you to find the defendant guilty of this charge, the government must prove both of the following elements beyond a reasonable doubt:

1.     The conspiracy as charged in Count Two existed; and

2.     The defendant knowingly became a member of the conspiracy with an intent to advance the conspiracy.

If you find from your consideration of all the evidence that the government has proved each of these elements beyond a reasonable doubt, then you should find the defendant guilty.

If, on the other hand, you find from your consideration of all the evidence that the government has failed to prove any one of these elements beyond a reasonable doubt, then you should find the defendant not guilty.

*7th Circuit Pattern Jury Instructions*, No. 5.08(B) (Conspiracy - No Overt Act Required).

**INSTRUCTION NO. 36**

As I have already instructed you, a conspiracy is an express or implied agreement between two or more persons to commit a crime. A conspiracy may be proven even if its goal or goals were not accomplished.

In deciding whether the conspiracy charged in Count Two existed, you may consider all of the circumstances, including the words and acts of each of the alleged participants.

To be a member of a conspiracy, the defendant does not need to join it at the beginning, and he does not need to know all of the other members or all of the means by which the illegal goal or goals of the conspiracy were to be accomplished. The government must prove beyond a reasonable doubt that the defendant was aware of the illegal goal or goals of the conspiracy and knowingly joined the conspiracy.

The defendant is not a member of a conspiracy just because he knew and/or associated with people who were involved in a conspiracy, knew there was a conspiracy, and/or was present during conspiratorial discussions.

In deciding whether the defendant joined the charged conspiracy, you must base your decision only on what that defendant did or said. To determine what the defendant did or said, you may consider that defendant's own words or acts. You may also use the words or acts of other persons to help you decide what the defendant did or said.

*7th Circuit Pattern Jury Instructions*, No. 5.09 (Conspiracy - Definition of Conspiracy); *7th Circuit Pattern Jury Instructions*, No. 5.10 (Conspiracy - Membership in Conspiracy).

## INSTRUCTION NO. 37

In order to find that the government has proved the defendant guilty of the conspiracy charged in Count Two, the jury must unanimously agree that the defendant conspired to commit at least one of the following offenses:

1.      distributing marijuana;

2.      distributing cocaine;

3.      possession with intent to distribute marijuana; or

4.      possession with intent to distribute cocaine.

The government is not required to prove that the defendant conspired to commit every one of the four offenses mentioned above. However, the government is required to prove that the defendant conspired to commit at least one of these four offenses. To find that the government has proven this, you must unanimously agree on which particular offense the defendant conspired to commit, as well as all of the other elements of the crime charged.

For example, if some of you were to find that the government has proved beyond a reasonable doubt that the defendant conspired to commit the offense of distributing marijuana, and the rest of you were to find that the government has proved beyond a reasonable doubt that the defendant conspired to commit the offense of distributing cocaine, then there would be no unanimous agreement on which offense the government has proved. On the other hand, if all of you were to find that the government has proved beyond a reasonable doubt that the defendant conspired to commit the offense of distributing marijuana, then there would be unanimous

agreement.

*7th Circuit Pattern Jury Instructions*, No. 4.04 (Unanimity on Specific Acts (modified); *7th Circuit Pattern Jury Instructions*, No. 5.08(A) (Conspiracy - Overt Act Required (Committee Comments (b) and (e)).

## INSTRUCTION NO. 38

Marijuana and cocaine are both controlled substances.

*7th Circuit Pattern Jury Instructions*, 21 U.S.C. Section 841(A)(1) (Definition of Controlled Substance).

## INSTRUCTION NO. 39

To assist you in determining whether the defendant conspired to distribute a controlled substance as charged in Count Two, the Court instructs you that the legal elements for distribution of a controlled substance are as follows:

First, the defendant knowingly distributed a controlled substance;

Second, the defendant knew the substance was some kind of controlled substance. The government is not required to prove that the defendant knew the substance was marijuana or that the substance was cocaine.

*7th Circuit Pattern Jury Instructions*, 21 U.S.C. Section 841(a)(1) (Distribution of a Controlled Substance - Elements) (modified).

**INSTRUCTION NO. 40**

A person "distributes" a controlled substance if he delivers or transfers

possession of the controlled substance to someone else or causes a person to deliver or

transfer possession of the controlled substance to another person.

*7th Circuit Pattern Jury Instructions*, 21 U.S.C. Section 841(a)(1) (Definition of
Distribution).

## INSTRUCTION NO. 41

To assist you in determining whether the defendant conspired to possess with intent to distribute a controlled substance, the Court instructs you that the legal elements for possession with intent to distribute a controlled substance are as follows:

First, the defendant knowingly possessed a controlled substance; and

Second, the defendant intended to distribute the substance to another person; and

Third, the defendant knew the substance was some kind of controlled substance. The government is not required to prove that the defendant knew the substance was marijuana or that the substance was cocaine.

*7th Circuit Pattern Jury Instructions*, 21 U.S.C. Section 841(a)(1) (Possession With Intent to Distribute - Elements) (modified).

**INSTRUCTION NO. 42**

A person possesses an object if he has the ability and intention to exercise direction or control over the object, either directly or through others. A person may possess an object even if he is not in physical contact with it and even if he does not own it.

*7th Circuit Pattern Jury Instructions*, 21 U.S.C. Section 841(a)(1) (Definition of Possession);
7th Circuit Pattern Jury Instructions, No. 4.13 (Definition of Possession).

# INSTRUCTIONS FOR COUNTS
# 9, 13, 15, 17, 19 AND 21 CHARGING
# MURDER IN AID OF RACKETEERING

### INSTRUCTION NO. 43

Count Nine charges the defendant with the murder of Luis Ortiz in aid of racketeering. Count Thirteen charges the defendant with the murder of Michael Sessum in aid of racketeering. Count Fifteen charges the defendant with the murder of Miguel Mejias in aid of racketeering. Count Seventeen charges the defendant with the murder of Harris Brown in aid of racketeering. Count Nineteen charges the defendant with the murder of Miguel Colon in aid of racketeering. Count Twenty-One charges the defendant with the murder of Latroy Howard in aid of racketeering.

To sustain the charge of murder in aid of racketeering activity, the government must prove each of the five following elements beyond a reasonable doubt:

First, that the Imperial Gangsters were an enterprise;

Second, that the Imperial Gangsters enterprise engaged in "racketeering activity" as that term is defined earlier in these instructions;

Third, that the Imperial Gangsters enterprise affected interstate commerce;

Fourth, that the defendant committed the murder of the victim in the count you are considering; and

Fifth, that the defendant's purpose in committing the murder was to maintain or increase his position in the Imperial Gangsters enterprise.

If you find from your consideration of all the evidence that the government has proved each of these elements beyond a reasonable doubt for the count you are considering, then you should find the defendant guilty of the count you are considering.

If, on the other hand, you find from your consideration of all the evidence that the government has failed to prove any one of these elements beyond a reasonable doubt for the count you are considering, then you should find the defendant not guilty of the count you are considering.

*United States v. Martin Anaya*, 2:10-cr-00109 RL (Instruction 47 in Court's Instructions, Docket Entry #596, at page 56); *see also, United States v. Kamahele*, 748 F.3d 984, 1007 (10th Cir. 2014); *United States v. Umaña*, 750 F.3d 320, 334-35 (4th Cir. 2014), cert. petition pending; *United States v. Hinojosa*, 463 Fed. Appx. 432, 449 (5th Cir. 2012); *United States v. Persico*, 645 F.3d 85, 105 (2d Cir. 2011), cert. denied, *DeRoss v. United States*, 132 S. Ct. 593 (2011), and *Persico v. United States*, 2012 U.S. LEXIS 1795 (Feb. 27, 2012); *United States v. Banks*, 514 F.3d 959, 964 (9th Cir. 2008); *United States v. Nascimento, 491 F.3d 25, 31-32 (1st Cir. 2007).*

## INSTRUCTION NO. 44

I have already instructed you as to what the terms "murder" under Indiana law,

"enterprise," "racketeering activity" and "interstate commerce" mean when I instructed

you on Count One, and each of those instructions apply here as well.

United States v. Martin Anaya, 2:10-cr-00109 RL (Instruction No. 48 in Court's
Instructions, Docket Entry #596, at page 57) (modified).

## INSTRUCTION NO. 45

For the purpose of each of Counts Nine, Thirteen, Fifteen, Seventeen, Nineteen, and Twenty-One, the government must prove beyond a reasonable doubt for the count you are considering that at least one of the defendant's purposes in committing the crime of violence was to maintain or increase position in the Imperial Gangsters enterprise.

In determining whether one of the defendant's purposes was to "maintain" or "increase" his position in the enterprise, you should give those words their ordinary meaning.

The government does not have to prove that the defendant's sole or principal motive in committing the murder was to maintain or increase position in the Imperial Gangsters enterprise. It is sufficient if you find that the defendant committed a murder because he knew it was expected of him by reason of his membership in the Imperial Gangsters enterprise or that he committed it in furtherance of that membership.

United States v. Martin Anaya, 2:10-cr-00109 RL (Instruction No. 50 in Court's Instructions, Docket Entry #596, at page 59) (modified); *see United States v. DeSilva*, 505 F.3d 711, 715-16 (7th Cir. 2007).

# INSTRUCTIONS FOR COUNTS 23, 27 AND 29 CHARGING ATTEMPTED MURDER IN AID OF RACKETEERING

**INSTRUCTION NO. 46**

Counts Twenty-Three, Twenty-Seven, and Twenty-Nine charge the defendant with attempted murder in aid of racketeering.

To sustain the charge of attempted murder in aid of racketeering, the government must prove each of the five following elements beyond a reasonable doubt:

First, that the Imperial Gangsters were an enterprise;

Second, that the Imperial Gangsters enterprise engaged in "racketeering activity" as that term is defined earlier in these instructions;

Third, that the Imperial Gangsters enterprise affected interstate commerce;

Fourth, that the defendant committed the attempted murder as charged in the count that you are considering; and

Fifth, that the defendant's purpose in committing the attempted murder was to maintain or increase his position in the Imperial Gangsters enterprise.

If you find from your consideration of all the evidence that the government has proved each of these elements beyond a reasonable doubt, then you should find the defendant guilty of the count you are considering.

If, on the other hand, you find from your consideration of all the evidence that the government has failed to prove any one of these elements beyond a reasonable doubt, then you should find the defendant not guilty of the count you are considering.

*United States v. Phillips*, 239 F.3d 829, 845 (7th Cir. 2001); United States v. Martin Anaya, 2:10-cr-00109 RL (Instruction No. 47 in Court's Instructions, Docket Entry #596, at page 56) (modified from Murder in Aid of Racketeering).

3473

**INSTRUCTION NO. 47**

I have already instructed you as to what the terms "murder" under Indiana law,

"enterprise," "racketeering activity" and "interstate commerce" mean when I instructed

you on Count One, and each of those instructions apply here as well.

United States v. Martin Anaya, 2:10-cr-00109 RL (Instruction No. 48 in Court's
Instructions, Docket Entry #596, at page 57) (modified).

**INSTRUCTION NO. 48**

For the purpose of Counts Twenty-Three, Twenty-Seven, and Twenty-Nine, the

government must prove beyond a reasonable doubt, for each count you are

considering, that at least one of the defendant's purposes in committing the crime of

violence you are considering was to maintain or increase position in the Imperial

Gangsters enterprise. I have instructed you regarding this element in Instruction

Number 45 as it relates to Counts Nine, Thirteen, Fifteen, Seventeen, Nineteen, and

Twenty-One which charge murder in aid of racketeering, and that instruction applies

here as well.

United States v. Martin Anaya, 2:10-cr-00109 RL (Instruction No. 50 in Court's
Instructions, Docket Entry #596, at page 59) (modified); *see United States v. DeSilva*, 505
F.3d 711, 715-16 (7th Cir. 2007).

**INSTRUCTION NO. 49**

For the purpose of Counts Twenty-Three, Twenty-Seven, and Twenty-Nine, and as I have already instructed you previously, under Indiana law, a person commits the offense of attempted murder when the person:

(1)     acting with the specific intent to kill the victim;

(2)     did point a firearm at the victim and shoot at the victim;

(3)     which was conduct constituting a substantial step toward the commission of the intended crime of killing the victim.

Under Indiana law, a person aids, induces, or causes attempted murder when the person:

(1)     knowingly or intentionally;

(2)     aided another person when the other person was engaged, or induced or caused another person to engage;

(3)     in conduct that constituted a substantial step toward killing of an individual;

(4)     and both persons acted with the specific intent to kill that individual.

Indiana Criminal Code Sections 35-41-5-1(a) and 35-42-1-1 (Attempted Murder) and 35-41-2-4 (Aiding, Inducing or Causing Attempted Murder); *Indiana Pattern Jury Instructions Criminal Instruction No. 2.01(a)* (Attempted Murder) and *No. 2.11(a)* (Aiding, Inducing, or Causing Attempted Murder); United States v. Martin Anaya, 2:10-cr-00109 RL (Instruction 51 in Court's Instructions, Docket Entry #596, at page 61) (modified).

## INSTRUCTION NO. 50

When a person intends to kill another person, or to aid or cause someone else to kill another person, and in addition attempts to kill a different person, or aids or causes the attempted killing of a different person, his intent is transferred from the person to whom it was directed to the person whose killing was attempted, and he may be found guilty of the Attempted Murder, or Aiding, Inducing, or Causing the Attempted Murder of the person whose killing was attempted.

*Indiana Pattern Jury Instructions Criminal Instruction No. 9.05a* - Transferred Intent.

# INSTRUCTIONS FOR COUNTS 24, 28 AND 30 CHARGING DISCHARGE, CARRY, OR USE OF A FIREARM DURING AND IN RELATION TO A CRIME OF VIOLENCE (ATTEMPTED MURDER)

**INSTRUCTION NO. 51**

Count Twenty-Four charges the defendant with knowingly discharging, carrying, or using a firearm during and in relation to a crime of violence, namely, attempted murder in aid of racketeering as set forth in Count Twenty-Three. Count Twenty-Eight charges the defendant with knowingly discharging, carrying, or using a firearm during and in relation to a crime of violence, namely, attempted murder in aid of racketeering as set forth in Count Twenty-Seven. Count Thirty charges the defendant with knowingly discharging, carrying, or using a firearm during and in relation to a crime of violence, namely, attempted murder in aid of racketeering as set forth in Count Twenty-Nine.

In order for you to find the defendant guilty of Counts Twenty-Four, Twenty-Eight or Thirty, the government must prove, for each, both of the following elements beyond a reasonable doubt:

1.      The defendant committed the crime of attempted murder in aid of racketeering as charged in the count referenced in the count you are considering; and

2.      He knowingly discharged, used, or carried a firearm during and in relation to such crime.

If you find from your consideration of all the evidence that the government has proved each of these elements beyond a reasonable doubt as to the charge you are considering, then you should find the defendant guilty of that charge.

If, on the other hand, you find from your consideration of all the evidence that the government has failed to prove any one of these elements beyond a reasonable

doubt as to the charge you are considering, then you should find the defendant not

guilty of that charge.

*Alleyne v. United States*, __ U.S. __, 133 S.Ct. 2151 (2013) (enhancements for brandishing
and discharging a firearm must be proved beyond a reasonable doubt to a jury); *7th
Circuit Pattern Jury Instructions*, 18 U.S.C. § 924(c)(1)(A) (Using or Carrying a Firearm
During and in relation to a Crime of Violence - Elements) (modified).

**INSTRUCTION NO. 52**

Counts Twenty-Four, Twenty-Eight, and Thirty charge the offense of knowingly discharging, carrying, or using a firearm during and in relation to the crime of attempted murder. The government is not required to prove that the defendant did all three of these acts with a firearm during and in relation to the crime of attempted murder. However, the government is required to prove that the defendant did at least one of these three acts with a firearm during and in relation to the crime of attempted murder. To find that the government has proven this, you must agree unanimously on which particular act with a firearm the defendant did, as well as all of the other elements of the crime charged.

For example, if some of you find that the government has proved beyond a reasonable doubt that the defendant discharged a firearm during and in relation to the crime of attempted murder, and the rest of you were to find that the government has proved beyond a reasonable doubt that the defendant carried a firearm during and in relation to the crime of attempted murder, then there would be no unanimous agreement on which act with the firearm the government has proved. On the other hand, if all of you were to find that the government has proved beyond a reasonable doubt that the defendant discharged the firearm during and in relation to the attempted murder, then there would be unanimous agreement.

*7th Circuit Pattern Jury Instructions*, No. 4.04 - Unanimity on Specific Acts; *Alleyne v. United States*, __ U.S. __, 133 S.Ct. 2151 (2013) (enhancements for brandishing and discharging a firearm must be proved beyond a reasonable doubt to a jury).

**INSTRUCTION NO. 53**

A defendant aids, counsels, commands, induces, or procures the commission of the offense only if he knowingly and intentionally assists another's use or carrying of a firearm during and in relation to a crime of violence. This requires the government to prove the following beyond a reasonable doubt:

1.      The defendant knew, either before or during the crime, of another person's use or carrying of a firearm; and,

2.      The defendant intentionally facilitated the use or carrying of the firearm once so informed.

A person who merely aids the underlying offense knowing that a firearm would be used or carried does not aid, counsel, command, induce, or procure the commission of the offense charged in the count you are considering.

If you find from your consideration of all the evidence that the government proved both of these elements beyond a reasonable doubt, then you should find the defendant guilty of the count you are considering.

If, on the other hand, you find from your consideration of all the evidence that the government failed to prove either of these elements beyond a reasonable doubt, then you should find the defendant not guilty of the count you are considering.

*7th Circuit Pattern Jury Instructions*, 18 U.S.C. § 924(c) (1)(A) (Using or Carrying a Firearm During and in Relation to a Crime of Violence or Drug Trafficking Crime -- Accountability Theory Elements).

**INSTRUCTION NO. 54**

A person "carries" a firearm when he knowingly transports it on his person or in a vehicle or container.

*7th Circuit Pattern Jury Instructions*, 18 U.S.C. § 924(c) (Definition of "Carry").

## INSTRUCTION NO. 55

For purposes of Twenty-Four, Twenty-Eight, and Thirty, the term "use" means the "active employment" of a firearm. The term is not limited to use as a weapon, and includes brandishing, displaying, bartering, striking with, firing, and attempting to fire a firearm. A defendant's reference to a firearm calculated to bring about a change in the circumstances of the offense constitutes "use" during and in relation to a crime. However, mere possession or storage of a firearm, at or near the site of the crime, drug proceeds or paraphernalia is not enough to constitute use of that firearm.

*7th Circuit Pattern Jury Instructions*, 18 U.S.C. Section 924(c)(1)(A) (Definition of "Use").

3484

**INSTRUCTION NO. 56**

For purposes of Counts Twenty-Four, Twenty-Eight, and Thirty, "during" means at any point within the offense conduct charged.

*7th Circuit Pattern Jury Instructions*, 18 U.S.C. Section 924(c) (Definition of "During").

**INSTRUCTION NO. 57**

A person uses a firearm "in relation to" a crime if there is a connection between the use of the firearm and the crime of violence. The firearm must have some purpose or effect with respect to the crime; its presence or involvement cannot be the result of accident or coincidence. The firearm must at least facilitate, or have the potential of facilitating, the crime.

7th Circuit Pattern Jury Instructions, 18 U.S.C. Section 924(c) (Definition of "In Relation to").

# FINAL INSTRUCTIONS AND
# SPECIAL VERDICT FORM INSTRUCTIONS
# FOR COUNTS 1 AND 2

**INSTRUCTION NO. 58**

Once you are all in the jury room, the first thing you should do is choose a foreperson. The foreperson should see to it that your discussions are carried on in an organized way and that everyone has a fair chance to be heard. You may discuss the case only when all jurors are present.

Once you start deliberating, do not communicate about the case or your deliberations with anyone except other members of your jury. You may not communicate with others about the case or your deliberations by any means. This includes oral or written communication, as well as any electronic method of communication, like your phones, computers, or on the Internet, or any other method of communication.

If you need to communicate with me while you are deliberating, send a note through the court security officer. The note should be signed by the foreperson or by one or more members of the jury. To have a complete record of this trial, it is important that you do not communicate with me except by a written note. I may have to talk to the lawyers about your message, so it may take me some time to get back to you. You may continue your deliberations while you wait for my answer. Please be advised that transcripts of trial testimony are not available to you. You must rely on your collective memory of the testimony.

If you send me a message, do not include the breakdown of any votes you may have conducted. In other words, do not tell me that you are split 6-6, or 8-4, or whatever your vote happens to be.

*7th Circuit Pattern Jury Instructions*, 7.01 (Jury Deliberations).

## INSTRUCTION NO. 59

Verdict forms have been prepared for you. You will take these forms with you to the jury room.

When you have reached unanimous agreement, your foreperson will fill in, date, and sign the verdict form. Each of you will sign it.

Advise the court security officer once you have reached a verdict. When you come back to the courtroom, I will read the verdict aloud.

*7th Circuit Pattern Jury Instructions*, 7.02 (Verdict Form).

### INSTRUCTION NO. 60

After reaching your verdict on Count One, conspiracy to commit racketeering, if you find the defendant guilty, there are additional questions that you will need to consider and indicate your response on the verdict form for the questions relating to Count One.

The fourth superseding indictment alleges that the pattern of racketeering activity includes acts involving murder. If you found the defendant guilty of Count One, as indicated on the verdict form for the defendant, you need to determine whether, as part of the pattern of racketeering activity, the defendant committed the murder of Luis Ortiz, the murder of Michael Sessum, the murder of Miguel Mejias, the murder of Harris Brown, the murder of Miguel Colon, or the murder of Latroy Howard.

The fourth superseding indictment further alleges that the pattern of racketeering activity includes acts involving narcotics trafficking. If you find the defendant guilty of Count One, you need to determine whether as part of the pattern of racketeering activity, he conspired to distribute and possess with intent to distribute the quantities of the drugs listed on the verdict form.

United States v. Martin Anaya, 2:10-cr-00109 RL (Instruction No. 59 in Court's Instructions, Docket Entry #596, at page 71) (modified).

**INSTRUCTION NO. 61**

If you find the defendant guilty of the offense charged in Count Two, the drug conspiracy, you must then determine the object or objects of the conspiracy that you unanimously find the government has proven the defendant guilty of beyond a reasonable doubt. You will see on the verdict form a question regarding the objects of the conspiracy for you to answer.

You will then see on the verdict form questions concerning the amount of narcotics involved in the offense charged in Count Two. You should consider these questions regarding the quantity of narcotics involved only if you have found that the government has proven the defendant guilty of the offense charged in Count Two.

*7th Circuit Pattern Jury Instructions* (Drug Quantity/Special Verdict Instructions) (modified).

## INSTRUCTION NO. 62

The verdict must represent the considered judgment of each juror. Your verdict, whether it is guilty or not guilty, must be unanimous.

You should make every reasonable effort to reach a verdict. In doing so, you should consult with each other, express your own views, and listen to your fellow jurors' opinions. Discuss your differences with an open mind. Do not hesitate to re-examine your own view and change your opinion if you come to believe it is wrong. But you should not surrender your honest beliefs about the weight or effect of evidence just because of the opinions of your fellow jurors or just so that there can be a unanimous verdict.

The twelve of you should give fair and equal consideration to all the evidence. You should deliberate with the goal of reaching an agreement that is consistent with the individual judgment of each juror.

You are impartial judges of the facts. Your sole interest is to determine whether the government has proved its case beyond a reasonable doubt.

*7th Circuit Pattern Jury Instructions*, 7.03 (Unanimity/Disagreement Among Jurors).

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| vs. | ) | 2:11-cr-00077 |
| | ) | |
| JUAN BRISEÑO | ) | |

**JURY INSTRUCTIONS (GUILT PHASE)**

Dated: February 26, 2015.

/s/ Philip P. Simon
PHILIP P. SIMON, CHIEF JUDGE
UNITED STATES DISTRICT COURT

## **INSTRUCTION NO. 1**

Members of the jury, I will now instruct you on the law that you must follow in deciding this case. I will also give you a copy of these instructions to use in the jury room. You must follow all of my instructions about the law, even if you disagree with them. This includes the instructions I gave you before the trial, any instructions I gave you during the trial, and the instructions I am giving you now.

As jurors, you have two duties. Your first duty is to decide the facts from the evidence that you saw and heard here in court. This is your job, not my job or anyone else's job.

Your second duty is to take the law as I give it to you, apply it to the facts, and decide if the government has proved the defendant guilty beyond a reasonable doubt.

You must perform these duties fairly and impartially. Do not let sympathy, prejudice, fear, or public opinion influence you. In addition, do not let any person's race, color, religion, national ancestry, or gender influence you.

You must not take anything I said or did during the trial as indicating that I have an opinion about the evidence or about what I think your verdict should be.

## INSTRUCTION NO. 2

The charges against the defendant are in a document called a fourth superseding indictment.

The fourth superseding indictment in this case charges that the defendant committed the following crimes:

Count One of the fourth superseding indictment charges the defendant with conspiracy to commit racketeering. Count Two charges the defendant with conspiring to knowingly and intentionally possess with intent to distribute and distribute one hundred (100) kilograms or more of a mixture and substance containing a detectable amount of marijuana and five (5) kilograms or more of a mixture and substance containing a detectable amount of cocaine. Counts Nine, Thirteen, Fifteen, Seventeen, Nineteen, and Twenty-One charge the defendant with murder in aid of racketeering. Counts Twenty-Three, Twenty-Seven, and Twenty-Nine charge the defendant with attempted murder in aid of racketeering. Counts Twenty-Four, Twenty-Eight, and Thirty charge the defendant with use of a firearm during and in relation to a crime of violence. The defendant has pled not guilty to the charges.

The fourth superseding indictment is simply the formal way of telling the defendant what crimes he is accused of committing. It is not evidence that the defendant is guilty. It does not even raise a suspicion of guilt.

**INSTRUCTION NO. 3**

The defendant is presumed innocent of each and every one of the charges. This presumption continues throughout the case, including during your deliberations. It is not overcome unless, from all the evidence in the case, you are convinced beyond a reasonable doubt that the defendant is guilty as charged.

The government has the burden of proving the defendant's guilt beyond a reasonable doubt. This burden of proof stays with the government throughout the case.

The defendant is never required to prove his innocence. He is not required to produce any evidence at all.

*7th Circuit Pattern Jury Instructions*, No. 1.03 (Presumption of Innocence / Burden of Proof).

## INSTRUCTION NO. 4

You must make your decision based only on the evidence that you saw and heard here in court. Do not consider anything you may have seen or heard outside of court, including anything from the newspaper, television, radio, the Internet, or any other source.

The evidence includes only what the witnesses said when they were testifying under oath, the exhibits that I allowed into evidence, and any stipulations that the lawyers agreed to. A stipulation is an agreement that certain facts are true or that a witness would have given certain testimony.

Nothing else is evidence. The lawyers' statements and arguments are not evidence. If what a lawyer said is different from the evidence as you remember it, the evidence is what counts. The lawyers' questions and objections likewise are not evidence.

A lawyer has a duty to object if he thinks a question is improper. If I sustained objections to questions the lawyers asked, you must not speculate on what the answers might have been.

If, during the trial, I struck testimony or exhibits from the record, or told you to disregard something, you must not consider it.

*7th Circuit Pattern Jury Instructions*, No. 2.01 (The Evidence).

## INSTRUCTION NO. 5

Give the evidence whatever weight you decide it deserves. Use your common sense in weighing the evidence, and consider the evidence in light of your own everyday experience.

People sometimes look at one fact and conclude from it that another fact exists. This is called an inference. You are allowed to make reasonable inferences, so long as they are based on the evidence.

*7th Circuit Pattern Jury Instructions*, No. 2.0 (Considering The Evidence).

## INSTRUCTION NO. 6

You may have heard the terms "direct evidence" and "circumstantial evidence." Direct evidence is evidence that directly proves a fact. Circumstantial evidence is evidence that indirectly proves a fact.

You are to consider both direct and circumstantial evidence. The law does not say that one is better than the other. It is up to you to decide how much weight to give to any evidence, whether direct or circumstantial.

*7th Circuit Pattern Jury Instructions*, No. 2.03 (Direct and Circumstantial Evidence).

## **INSTRUCTION NO. 7**

Do not make any decisions simply by counting the number of witnesses who testified about a certain point.

You may find the testimony of one witness or a few witnesses more persuasive than the testimony of a larger number. You need not accept the testimony of the larger number of witnesses.

What is important is how truthful and accurate the witnesses were and how much weight you think their testimony deserves.

*7th Circuit Pattern Jury Instructions*, No. 2.04 (Number of Witnesses).

**INSTRUCTION NO. 8**

A defendant has an absolute right not to testify. You may not consider in any way the fact that the defendant did not testify. You should not even discuss it in your deliberations.

*7th Circuit Pattern Jury Instructions*, No. 2.05 (Defendant's Failure to Testify or Present Evidence).

**<u>INSTRUCTION NO. 9</u>**

Part of your job as jurors is to decide how believable each witness was, and how much weight to give each witness's testimony. You may accept all of what a witness says, or part of it, or none of it.

Some factors you may consider include:

- the intelligence of the witness;

- the witness's ability and opportunity to see, hear, or know the things the witness testified about;

- the witness's memory;

- the witness's demeanor;

- whether the witness had any bias, prejudice, or other reason to lie or slant the testimony;

- the truthfulness and accuracy of the witness's testimony in light of the other evidence presented; and

- inconsistent statements or conduct by the witness.

*7th Circuit Pattern Jury Instructions*, No. 3.01 (Credibility of Witnesses).

## INSTRUCTION NO. 10

It is proper for an attorney to interview any witness in preparation for trial.

*7th Circuit Pattern Jury Instructions*, No. 3.02 (Attorney Interviewing Witness).

**INSTRUCTION NO. 11**

You have heard evidence that before the trial, witnesses made statements that may be inconsistent with their testimony here in court. You may consider an inconsistent statement made before the trial to help you decide how believable a witness's testimony was here in court. If an earlier statement was made under oath, then you can also consider the earlier statement as evidence of the truth of whatever the witness said in the earlier statement.

*7th Circuit Pattern Jury Instructions*, No. 3.03 (Prior Inconsistent Statements).

**INSTRUCTION NO. 12**

You have heard testimony from witnesses David Almaraz, Anthony Baldazo, Jacob Davidovich, Galo Feliciano, Vincent Garza, Andres Lara, Carlos Orta, Anthony Romero and Joseph Torres, each of whom was promised certain benefits in return for his testimony and cooperation with the government. In addition, Almaraz, Baldazo, Feliciano, Garza and Torres pled guilty to one or more of the crimes the defendant is charged with committing. You may not consider any of their guilty pleas as evidence against the defendant.

You may give these witnesses' testimony whatever weight you believe is appropriate, keeping in mind that you must consider that testimony with caution and great care.

*7th Circuit Pattern Jury Instructions*, No. 3.05 (Witnesses Requiring Special Caution).

**INSTRUCTION NO. 13**

You may consider evidence that a witness was convicted of a crime only in deciding the believability of his testimony. You may not consider it for any other purpose.

*7th Circuit Pattern Jury Instructions*, No. 3.06 (Impeachment By Prior Conviction).

## INSTRUCTION NO. 14

You have heard testimony that the defendant made a statement to FBI Agent

Arthur Grist. You must decide whether the defendant actually made the statement and,

if so, how much weight to give to the statement. In making these decisions, you should

consider all of the evidence, including the defendant's personal characteristics and

circumstances under which the statement may have been made.

*7th Circuit Pattern Jury Instructions*, No. 3.09 (Statement by Defendant).

## INSTRUCTION NO. 15

You have heard testimony of identifications of people. Identification testimony is an expression of the witness's belief or impression. In evaluating this testimony, you should consider the opportunity the witness had to observe the person at the time of or near the offense and to make a reliable identification later. You should also consider the circumstances under which the witness later made the identification.

The government must prove beyond a reasonable doubt that the defendant is the person who committed the crime that is charged.

*7th Circuit Pattern Jury Instructions*, No. 3.12 (Identification Testimony).

**INSTRUCTION NO. 16**

You have heard several witnesses who gave opinions and testimony about certain subjects. Specifically:

1.      Officer Darryl Shaffer testified about police dog training;

2.      Forensic Pathologists Dr. John Cavanaugh, Dr. J. Lawrence Cogan and Dr. Young M. Kim each testified about the cause and manner of death; and

3.      Henry Hatch and Melissa Oberg testified concerning firearms and ammunition testing.

You do not have to accept these witnesses' opinions or testimony. You should judge these witnesses' opinions and testimony the same way you judge the testimony of any other witness. In deciding how much weight to give to these opinions and testimony, you should consider each witness's qualifications, how he or she reached his or her opinions and conclusions, and the factors I have described for determining the believability of testimony.

*7th Circuit Pattern Jury Instructions*, No. 3.13 (Opinion Testimony).

**INSTRUCTION NO. 17**

You have heard recorded conversations and seen video recordings. This is proper evidence that you should consider together with and in the same way you consider the other evidence.

The recordings and videotapes were admitted into evidence and will be provided to you for your use during deliberation along with a device to play them on and instructions on its use. It is up to you to decide whether to watch and/or listen to the recordings during your deliberations. You may, if you wish, rely on your recollections of what you heard during the trial.

*7th Circuit Pattern Jury Instructions*, No. 3.14 (Recorded Conversations/Transcripts).

# INSTRUCTION NO. 18

Certain summaries were admitted in evidence. You may use those summaries as evidence even though the underlying records are not here.

It is up to you to decide how much weight to give to the summaries.

*7th Circuit Pattern Jury Instructions*, No. 3.16 (Summaries Received in Evidence).

## **INSTRUCTION NO. 19**

Certain diagrams and notations on exhibits were shown to you to help explain other evidence that was admitted. These diagrams and notations are not themselves evidence or proof of any facts, so you will not have these particular diagrams or notations during your deliberations. However, based on your recollection of these diagrams and notations, if they do not correctly reflect the facts shown by the evidence, you should disregard these diagrams and notations and determine the facts from the underlying evidence.

*7th Circuit Pattern Jury Instructions*, No. 3.17 (Demonstrative Summaries/Charts Not Received in Evidence).

**INSTRUCTION NO. 20**

If you have taken notes during the trial, you may use them during deliberations to help you remember what happened during the trial. You should use your notes only as aids to your memory. The notes are not evidence. All of you should rely on your independent recollection of the evidence, and you should not be unduly influenced by the notes of other jurors. Notes are not entitled to any more weight than the memory or impressions of each juror.

*7th Circuit Pattern Jury Instructions*, No. 3.18 (Juror Note-Taking).

**INSTRUCTION NO. 21**

The fourth superseding indictment charges that the crimes happened "on or about" certain dates. The government must prove that the crimes happened reasonably close to those dates. The government is not required to prove that the crimes happened on those exact dates.

*7th Circuit Pattern Jury Instructions*, No. 4.05 (Date of Crime Charged).

## INSTRUCTION NO. 22

The defendant has been accused of more than one crime. The number of charges is not evidence of guilt and should not influence your decision.

You must consider each charge separately. Your decision on one charge, whether it is guilty or not guilty, should not influence your decision on any other charge.

*7th Circuit Pattern Jury Instructions*, No. 4.06 (Separate Consideration - One Defendant Charged with Multiple Crimes).

**INSTRUCTION NO. 23**

An offense may be committed by more than one person. A defendant's guilt may be established without proof that the defendant personally performed every act constituting the crime charged.

*7th Circuit Pattern Jury Instructions*, No. 5.05 (Joint Venture).

**INSTRUCTION NO. 24**

Any person who knowingly aids, counsels, commands, induces, or procures the commission of an offense may be found guilty of that offense if he knowingly participated in the criminal activity and tried to make it succeed.

If the defendant knowingly causes the acts of another, then the defendant is responsible for those acts as though he personally committed them.

*7th Circuit Pattern Jury Instructions*, No. 5.06 (Aiding And Abetting/Acting Through Another).

**INSTRUCTION NO. 25**

A person acts knowingly if he realizes what he is doing and is aware of the nature of his conduct, and does not act through ignorance, mistake, or accident. In deciding whether the defendant acted knowingly, you may consider all of the evidence, including what the defendant did or said.

*7th Circuit Pattern Jury Instructions*, No. 4.10 (Identification Testimony).

# INSTRUCTIONS FOR COUNT 1 CHARGING RACKETEERING CONSPIRACY

## INSTRUCTION NO. 26

The defendant is charged in Count One with conspiracy to commit racketeering.

The defendant is charged in Count Two with conspiracy to possess with intent to distribute and distribute marijuana and cocaine.

For purposes of both Counts One and Two, you are instructed that a conspiracy is an express or implied agreement between two or more persons to commit a crime. A conspiracy may be proven even if its goal or goals were not accomplished.

In deciding whether the charged conspiracy existed, you may consider all of the circumstances, including the words and acts of each of the alleged participants.

*7th Circuit Pattern Jury Instructions*, No. 5.09 (Conspiracy - Definition of Conspiracy).

## INSTRUCTION NO. 27

To be a member of a conspiracy, the defendant does not need to join it at the beginning, and he does not need to know all of the other members or all of the means by which the illegal goal or goals of the conspiracy were to be accomplished. The government must prove beyond a reasonable doubt that the defendant was aware of the illegal goal or goals of the conspiracy and knowingly joined the conspiracy.

A defendant is not a member of a conspiracy just because he knew and/or associated with people who were involved in a conspiracy, knew there was a conspiracy, and/or was present during conspiratorial discussions.

In deciding whether the defendant joined the charged conspiracy, you must base your decision only on what the defendant did or said. To determine what the defendant did or said, you may consider the defendant's own words or acts. You may also use the words or acts of other persons to help you decide what the defendant did or said.

*7th Circuit Pattern Jury Instructions*, No. 5.10 (Conspiracy - Membership in Conspiracy).

**INSTRUCTION NO. 28**

Count One charges the defendant with conspiracy to commit racketeering. In order for you to find the defendant guilty of this charge, the government must prove each of the five following elements beyond a reasonable doubt:

1.      That the conspiracy as charged in Count One existed;

2.      That the Defendant knowingly became a member of the conspiracy with the intent to advance the conspiracy;

3.      That the conspiracy was an agreement to conduct or participate in the conduct of the affairs of the Imperial Gangsters Street Gang, an enterprise, through a pattern of racketeering activity as described in Count One;

4.      That the Imperial Gangsters was an enterprise; and

5.      That the activities of the Imperial Gangsters affected interstate commerce.

If you find from your consideration of all the evidence that the government has proved each of these elements beyond a reasonable doubt, then you should find the defendant guilty.

If, on the other hand, you find from your consideration of all the evidence that the government has failed to prove any one of these elements beyond a reasonable doubt as to the defendant, then you should find the defendant not guilty.

*7th Circuit Pattern Jury Instructions*, 18 U.S.C. Section 1962(d) (Racketeering Conspiracy - Elements); *7th Circuit Pattern Instruction* 5.08(B).

3523

**INSTRUCTION NO. 29**

In order to find a "pattern of racketeering activity" for purposes of Count One, you must find beyond a reasonable doubt that the defendant agreed that some member or members of the conspiracy would commit at least two acts of racketeering as described in Count One, and that they were separate acts. You must also find that those acts were in some way related to each other and that there was continuity between them.

Acts are related to each other if they are not isolated events, that is, if they have similar purposes, or results, or participants, or victims, or are committed a similar way, or have similar distinguishing characteristics, or are part of the affairs of the same enterprise.

There is continuity between acts if, for example, they are ongoing over a substantial period of time, or had the potential to continue over a substantial period, or if they are part of the regular way some entity does business or conducts its affairs.

For purposes of Count One, the government does not have to prove that any racketeering acts were actually committed at all, or that the defendant agreed to personally commit any such acts, or that the defendant agreed that two or more specific acts would be committed.

*7th Circuit Pattern Jury Instructions*, 18 U.S.C. Section 1962(d) (Pattern Requirement) - Racketeering Conspiracy).

### INSTRUCTION NO. 30

The term "enterprise" can include a group of people associated together for a common purpose of engaging in a course of conduct. This group may be associated together for purposes that are both legal and illegal.

In considering whether a group is an "enterprise," you may consider whether it has an ongoing organization or structure, either formal or informal, and whether the various members of the group functioned as a continuing unit. A group may continue to be an "enterprise" even if it changes membership by gaining or losing members over time.

The government must prove that the group described in the fourth superseding indictment was the "enterprise" charged, but need not prove each and every allegation in the fourth superseding indictment about the enterprise or the manner in which the enterprise operated. The government need not prove the association had any form or structure beyond the minimum necessary to conduct the charged pattern of racketeering.

*7th Circuit Pattern Jury Instructions*, 18 U.S.C. Section 1961(4) (Enterprise - Association in Fact).

**INSTRUCTION NO. 31**

A person conducts or participates in the conduct of the affairs of an enterprise if that person uses his position in, or association with, the enterprise to perform acts which are involved in some way in the operation or management of the enterprise, directly or indirectly, or if the person causes another to do so. In order to have conducted or participated in the conduct of the affairs of an enterprise, a person need not have participated in all of the activity alleged in Count One.

A person conspires to conduct or participate in the conduct of the affairs of an enterprise if that person agrees to knowingly facilitate the activities of the operators or managers who conduct or participate in the conduct of its affairs.

*7th Circuit Pattern Jury Instructions*, 18 U.S.C. Section 1962(c) and (d) (Conduct - Definition).

**INSTRUCTION NO. 32**

To be associated with an enterprise, a person must be involved with the enterprise in a way that is related to its affairs or common purpose, although the person need not have a stake in the goals of the enterprise and may even act in a way that subverts those goals. A person may be associated with an enterprise without being so throughout its existence.

*7th Circuit Pattern Jury Instructions*, 18 U.S.C. Section 1962(c) and (d) (Associate - Definition).

**INSTRUCTION NO. 33**

Interstate commerce includes the movement of money, goods, services or persons from one state to another or between another country and the United States. This would include the purchase or sale of goods or supplies from outside the state in which the enterprise was located, the use of interstate mail or wire facilities, or the causing of any of those things. If you find that beyond a reasonable doubt either (a) that the enterprise made, purchased, sold or moved goods or services that had their origin or destination outside the state in which the enterprise was located, or (b) that the actions of the enterprise affected in any degree the movement of money, goods or services across state lines, then interstate commerce was engaged in or affected.

The government need only prove that the enterprise as a whole engaged in interstate commerce or that its activity affected interstate commerce to any degree, although proof that racketeering acts did affect interstate commerce meets that requirement. The government need not prove that the defendant engaged in interstate commerce, or that the acts of the defendant affected interstate commerce.

*7th Circuit Pattern Jury Instructions*, 18 U.S.C. Section 1962 (Interstate Commerce - Definition).

3528

**INSTRUCTION NO. 34**

For Count One, the government must prove beyond a reasonable doubt that the defendant agreed that a conspirator, who could be the defendant himself, did or would intentionally commit, or cause, or aid and abet the commission of, two or more of the racketeering acts of the type or types alleged in the fourth superseding indictment. Your verdict must be unanimous as to which type or types of racketeering activity you find that the defendant agreed was or would be committed, caused, or aided and abetted.

For purposes of Count One, the law defines "racketeering activity" as acts involving murder, attempted murder and robbery, as those offenses are defined under Indiana State law, and acts constituting Federal Robbery, and Drug Trafficking, as those offenses are defined under federal law.

I will now instruct you on the elements of the offenses listed in the fourth superseding indictment as racketeering activity.

**Murder (Indiana Code 35-42-1-1)**

Under Indiana law, a person commits the offense of murder when he:

1. knowingly or intentionally,

2. killed,

3. a victim.

**Attempted Murder (I.C. 35-41-5-1(a), I.C. 35-42-1-1)**

Under Indiana law, a person commits the crime of attempted murder when the person:

1. acting with the specific intent to kill the victim,

2. did aim a firearm at the victim and shoot,

3. which was conduct constituting a substantial step toward the commission of the intended crime of killing the victim.

**Aiding, Inducing, or Causing Attempted Murder (I.C. 35-41-2-4 and I.C. 35-41-5-1(a) and I.C. 35-42-1-1)**

Under Indiana law, a person commits the offense of aiding, inducing, or causing attempted murder when the person:

1. knowingly or intentionally,

2. aided or induced or caused another person to engage,

3. in conduct that constituted a substantial step toward killing a victim,

4. and both the defendant and the other person acted with the specific intent to kill the victim.

**Robbery (Indiana Code 35-42-5-1)**

Under Indiana law, a person commits the offense of robbery when the person:

1. knowingly or intentionally,

2. takes property from another person or takes property from the presence of another person,

3. by using or threatening the use of force on another person or by putting another person in fear.

**Aiding, Inducing, or Causing an Offense (I.C. 35-41-2-4)**

Under Indiana law, a person aids, induces, or causes a specified offense when the person:

1. knowingly or intentionally,

2. aided or induced or caused,

3. another person to commit the offense, as that offense is defined by statute,

4. by assisting in, bringing about, or ordering the commission of the offense.

**Federal Robbery (18 U.S.C. § 1951)**

A person commits robbery under federal law when:

1. he knowingly obtains money or property from or in the presence of a victim;

2. he does so by means of robbery, that is, by unlawfully taking or obtaining of personal property from the person or in the presence of another, against his will, by means of actual or threatened force, or violence;

3. he believes that the victim parted with the money or property because of the robbery; and

4. his conduct affects interstate commerce.

**Narcotics Trafficking** - Distribution and Possession with Intent to Distribute a Controlled Substance 21 U.S.C. § 841(a)(1) and Conspiracy to Distribute and Possess with Intent to Distribute a Controlled Substance (21 U.S.C. § 846).

I will be instructing you on the elements of distribution, possession with intent to distribute, and conspiracy to distribute and possess with intent to distribute a controlled substance when I give you the instructions for Count Two. Those instructions should be applied here.

*United States v. Martin Anaya*, 2:10-cr-00109 RL (Instruction 33 in Court's Instructions, Docket Entry #596, at page 35); *Indiana Pattern Jury Instructions Criminal Instruction No.3.01* - Murder-Killing a Human Being; *Indiana Pattern Jury Instructions Criminal Instruction No. 2.01(a)* – Attempted Murder; *Indiana Pattern Jury Instructions Criminal Instruction No. 3.49* – Robbery; *Indiana Pattern Jury Instructions Criminal Instruction No. 2.11* - Aiding, Inducing or Causing an Offense; *Indiana Pattern Jury Instruction Criminal Instruction No. 2.11(a)* – Aiding, Inducing or Causing Attempted Murder; *7th Circuit Pattern Jury Instruction*, 18 U.S.C. § 1951 - Extortion - Robbery - Elements & 18 U.S.C. § 1951 – Definition of Robbery.

# INSTRUCTIONS FOR COUNT 2 CHARGING DRUG CONSPIRACY

**INSTRUCTION NO. 35**

Count Two charges the defendant with conspiracy to possess with intent to distribute and distribute marijuana and cocaine. In order for you to find the defendant guilty of this charge, the government must prove both of the following elements beyond a reasonable doubt:

1.      The conspiracy as charged in Count Two existed; and

2.      The defendant knowingly became a member of the conspiracy with an intent to advance the conspiracy.

If you find from your consideration of all the evidence that the government has proved each of these elements beyond a reasonable doubt, then you should find the defendant guilty.

If, on the other hand, you find from your consideration of all the evidence that the government has failed to prove any one of these elements beyond a reasonable doubt, then you should find the defendant not guilty.

*7th Circuit Pattern Jury Instructions*, No. 5.08(B) (Conspiracy - No Overt Act Required).

3534

**INSTRUCTION NO. 36**

As I have already instructed you, a conspiracy is an express or implied agreement between two or more persons to commit a crime. A conspiracy may be proven even if its goal or goals were not accomplished.

In deciding whether the conspiracy charged in Count Two existed, you may consider all of the circumstances, including the words and acts of each of the alleged participants.

To be a member of a conspiracy, the defendant does not need to join it at the beginning, and he does not need to know all of the other members or all of the means by which the illegal goal or goals of the conspiracy were to be accomplished. The government must prove beyond a reasonable doubt that the defendant was aware of the illegal goal or goals of the conspiracy and knowingly joined the conspiracy.

The defendant is not a member of a conspiracy just because he knew and/or associated with people who were involved in a conspiracy, knew there was a conspiracy, and/or was present during conspiratorial discussions.

In deciding whether the defendant joined the charged conspiracy, you must base your decision only on what that defendant did or said. To determine what the defendant did or said, you may consider that defendant's own words or acts. You may also use the words or acts of other persons to help you decide what the defendant did or said.

*7th Circuit Pattern Jury Instructions*, No. 5.09 (Conspiracy - Definition of Conspiracy); *7th Circuit Pattern Jury Instructions*, No. 5.10 (Conspiracy - Membership in Conspiracy).

**INSTRUCTION NO. 37**

In order to find that the government has proved the defendant guilty of the conspiracy charged in Count Two, the jury must unanimously agree that the defendant conspired to commit at least one of the following offenses:

1.      distributing marijuana;

2.      distributing cocaine;

3.      possession with intent to distribute marijuana; or

4.      possession with intent to distribute cocaine.

The government is not required to prove that the defendant conspired to commit every one of the four offenses mentioned above. However, the government is required to prove that the defendant conspired to commit at least one of these four offenses. To find that the government has proven this, you must unanimously agree on which particular offense the defendant conspired to commit, as well as all of the other elements of the crime charged.

For example, if some of you were to find that the government has proved beyond a reasonable doubt that the defendant conspired to commit the offense of distributing marijuana, and the rest of you were to find that the government has proved beyond a reasonable doubt that the defendant conspired to commit the offense of distributing cocaine, then there would be no unanimous agreement on which offense the government has proved. On the other hand, if all of you were to find that the government has proved beyond a reasonable doubt that the defendant conspired to commit the offense of distributing marijuana, then there would be unanimous

agreement.

*7th Circuit Pattern Jury Instructions*, No. 4.04 (Unanimity on Specific Acts (modified); *7th Circuit Pattern Jury Instructions*, No. 5.08(A) (Conspiracy - Overt Act Required (Committee Comments (b) and (e)).

## INSTRUCTION NO. 38

Marijuana and cocaine are both controlled substances.

*7th Circuit Pattern Jury Instructions*, 21 U.S.C. Section 841(A)(1) (Definition of Controlled Substance).

**INSTRUCTION NO. 39**

To assist you in determining whether the defendant conspired to distribute a controlled substance as charged in Count Two, the Court instructs you that the legal elements for distribution of a controlled substance are as follows:

First, the defendant knowingly distributed a controlled substance;

Second, the defendant knew the substance was some kind of controlled substance. The government is not required to prove that the defendant knew the substance was marijuana or that the substance was cocaine.

*7th Circuit Pattern Jury Instructions*, 21 U.S.C. Section 841(a)(1) (Distribution of a Controlled Substance - Elements) (modified).

**INSTRUCTION NO. 40**

A person "distributes" a controlled substance if he delivers or transfers

possession of the controlled substance to someone else or causes a person to deliver or

transfer possession of the controlled substance to another person.

*7th Circuit Pattern Jury Instructions*, 21 U.S.C. Section 841(a)(1) (Definition of
Distribution).

## INSTRUCTION NO. 41

To assist you in determining whether the defendant conspired to possess with intent to distribute a controlled substance, the Court instructs you that the legal elements for possession with intent to distribute a controlled substance are as follows:

First, the defendant knowingly possessed a controlled substance; and

Second, the defendant intended to distribute the substance to another person; and

Third, the defendant knew the substance was some kind of controlled substance. The government is not required to prove that the defendant knew the substance was marijuana or that the substance was cocaine.

*7th Circuit Pattern Jury Instructions*, 21 U.S.C. Section 841(a)(1) (Possession With Intent to Distribute - Elements) (modified).

**INSTRUCTION NO. 42**

A person possesses an object if he has the ability and intention to exercise direction or control over the object, either directly or through others. A person may possess an object even if he is not in physical contact with it and even if he does not own it.

*7th Circuit Pattern Jury Instructions*, 21 U.S.C. Section 841(a)(1) (Definition of Possession);
7th Circuit Pattern Jury Instructions, No. 4.13 (Definition of Possession).

# INSTRUCTIONS FOR COUNTS 9, 13, 15, 17, 19 AND 21 CHARGING MURDER IN AID OF RACKETEERING

**INSTRUCTION NO. 43**

Count Nine charges the defendant with the murder of Luis Ortiz in aid of racketeering. Count Thirteen charges the defendant with the murder of Michael Sessum in aid of racketeering. Count Fifteen charges the defendant with the murder of Miguel Mejias in aid of racketeering. Count Seventeen charges the defendant with the murder of Harris Brown in aid of racketeering. Count Nineteen charges the defendant with the murder of Miguel Colon in aid of racketeering. Count Twenty-One charges the defendant with the murder of Latroy Howard in aid of racketeering.

To sustain the charge of murder in aid of racketeering activity, the government must prove each of the five following elements beyond a reasonable doubt:

First, that the Imperial Gangsters were an enterprise;

Second, that the Imperial Gangsters enterprise engaged in "racketeering activity" as that term is defined earlier in these instructions;

Third, that the Imperial Gangsters enterprise affected interstate commerce;

Fourth, that the defendant committed the murder of the victim in the count you are considering; and

Fifth, that the defendant's purpose in committing the murder was to maintain or increase his position in the Imperial Gangsters enterprise.

If you find from your consideration of all the evidence that the government has proved each of these elements beyond a reasonable doubt for the count you are considering, then you should find the defendant guilty of the count you are considering.

If, on the other hand, you find from your consideration of all the evidence that the government has failed to prove any one of these elements beyond a reasonable doubt for the count you are considering, then you should find the defendant not guilty of the count you are considering.

*United States v. Martin Anaya*, 2:10-cr-00109 RL (Instruction 47 in Court's Instructions, Docket Entry #596, at page 56); *see also*, *United States v. Kamahele*, 748 F.3d 984, 1007 (10th Cir. 2014); *United States v. Umaña*, 750 F.3d 320, 334-35 (4th Cir. 2014), cert. petition pending; *United States v. Hinojosa*, 463 Fed. Appx. 432, 449 (5th Cir. 2012); *United States v. Persico*, 645 F.3d 85, 105 (2d Cir. 2011), cert. denied, *DeRoss v. United States*, 132 S. Ct. 593 (2011), and *Persico v. United States*, 2012 U.S. LEXIS 1795 (Feb. 27, 2012); *United States v. Banks*, 514 F.3d 959, 964 (9th Cir. 2008); *United States v. Nascimento, 491 F.3d 25, 31-32 (1st Cir. 2007).*

**INSTRUCTION NO. 44**

I have already instructed you as to what the terms "murder" under Indiana law,

"enterprise," "racketeering activity" and "interstate commerce" mean when I instructed

you on Count One, and each of those instructions apply here as well.

United States v. Martin Anaya, 2:10-cr-00109 RL (Instruction No. 48 in Court's
Instructions, Docket Entry #596, at page 57) (modified).

**INSTRUCTION NO. 45**

For the purpose of each of Counts Nine, Thirteen, Fifteen, Seventeen, Nineteen, and Twenty-One, the government must prove beyond a reasonable doubt for the count you are considering that at least one of the defendant's purposes in committing the crime of violence was to maintain or increase position in the Imperial Gangsters enterprise.

In determining whether one of the defendant's purposes was to "maintain" or "increase" his position in the enterprise, you should give those words their ordinary meaning.

The government does not have to prove that the defendant's sole or principal motive in committing the murder was to maintain or increase position in the Imperial Gangsters enterprise. It is sufficient if you find that the defendant committed a murder because he knew it was expected of him by reason of his membership in the Imperial Gangsters enterprise or that he committed it in furtherance of that membership.

United States v. Martin Anaya, 2:10-cr-00109 RL (Instruction No. 50 in Court's Instructions, Docket Entry #596, at page 59) (modified); *see United States v. DeSilva*, 505 F.3d 711, 715-16 (7th Cir. 2007).

# INSTRUCTIONS FOR COUNTS 23, 27 AND 29 CHARGING ATTEMPTED MURDER IN AID OF RACKETEERING

**INSTRUCTION NO. 46**

Counts Twenty-Three, Twenty-Seven, and Twenty-Nine charge the defendant with attempted murder in aid of racketeering.

To sustain the charge of attempted murder in aid of racketeering, the government must prove each of the five following elements beyond a reasonable doubt:

First, that the Imperial Gangsters were an enterprise;

Second, that the Imperial Gangsters enterprise engaged in "racketeering activity" as that term is defined earlier in these instructions;

Third, that the Imperial Gangsters enterprise affected interstate commerce;

Fourth, that the defendant committed the attempted murder as charged in the count that you are considering; and

Fifth, that the defendant's purpose in committing the attempted murder was to maintain or increase his position in the Imperial Gangsters enterprise.

If you find from your consideration of all the evidence that the government has proved each of these elements beyond a reasonable doubt, then you should find the defendant guilty of the count you are considering.

If, on the other hand, you find from your consideration of all the evidence that the government has failed to prove any one of these elements beyond a reasonable doubt, then you should find the defendant not guilty of the count you are considering.

*United States v. Phillips*, 239 F.3d 829, 845 (7th Cir. 2001); United States v. Martin Anaya, 2:10-cr-00109 RL (Instruction No. 47 in Court's Instructions, Docket Entry #596, at page 56) (modified from Murder in Aid of Racketeering).

**INSTRUCTION NO. 47**

I have already instructed you as to what the terms "murder" under Indiana law,

"enterprise," "racketeering activity" and "interstate commerce" mean when I instructed

you on Count One, and each of those instructions apply here as well.

United States v. Martin Anaya, 2:10-cr-00109 RL (Instruction No. 48 in Court's
Instructions, Docket Entry #596, at page 57) (modified).

**INSTRUCTION NO. 48**

For the purpose of Counts Twenty-Three, Twenty-Seven, and Twenty-Nine, the government must prove beyond a reasonable doubt, for each count you are considering, that at least one of the defendant's purposes in committing the crime of violence you are considering was to maintain or increase position in the Imperial Gangsters enterprise. I have instructed you regarding this element in <u>Instruction Number 45</u> as it relates to Counts Nine, Thirteen, Fifteen, Seventeen, Nineteen, and Twenty-One which charge murder in aid of racketeering, and that instruction applies here as well.

United States v. Martin Anaya, 2:10-cr-00109 RL (Instruction No. 50 in Court's Instructions, Docket Entry #596, at page 59) (modified); *see United States v. DeSilva*, 505 F.3d 711, 715-16 (7th Cir. 2007).

## INSTRUCTION NO. 49

For the purpose of Counts Twenty-Three, Twenty-Seven, and Twenty-Nine, and as I have already instructed you previously, under Indiana law, a person commits the offense of attempted murder when the person:

(1)     acting with the specific intent to kill the victim;

(2)     did point a firearm at the victim and shoot at the victim;

(3)     which was conduct constituting a substantial step toward the commission of the intended crime of killing the victim.

Under Indiana law, a person aids, induces, or causes attempted murder when the person:

(1)     knowingly or intentionally;

(2)     aided another person when the other person was engaged, or induced or caused another person to engage;

(3)     in conduct that constituted a substantial step toward killing of an individual;

(4)     and both persons acted with the specific intent to kill that individual.

Indiana Criminal Code Sections 35-41-5-1(a) and 35-42-1-1 (Attempted Murder) and 35-41-2-4 (Aiding, Inducing or Causing Attempted Murder); *Indiana Pattern Jury Instructions Criminal Instruction No. 2.01(a)* (Attempted Murder) and *No. 2.11(a)* (Aiding, Inducing, or Causing Attempted Murder); United States v. Martin Anaya, 2:10-cr-00109 RL (Instruction 51 in Court's Instructions, Docket Entry #596, at page 61) (modified).

## INSTRUCTION NO. 50

When a person intends to kill another person, or to aid or cause someone else to kill another person, and in addition attempts to kill a different person, or aids or causes the attempted killing of a different person, his intent is transferred from the person to whom it was directed to the person whose killing was attempted, and he may be found guilty of the Attempted Murder, or Aiding, Inducing, or Causing the Attempted Murder of the person whose killing was attempted.

*Indiana Pattern Jury Instructions Criminal Instruction No. 9.05a* - Transferred Intent.

INSTRUCTIONS FOR COUNTS 24, 28 AND 30
CHARGING DISCHARGE, CARRY, OR USE OF A
FIREARM DURING AND IN RELATION TO A
CRIME OF VIOLENCE (ATTEMPTED MURDER)

**INSTRUCTION NO. 51**

Count Twenty-Four charges the defendant with knowingly discharging, carrying, or using a firearm during and in relation to a crime of violence, namely, attempted murder in aid of racketeering as set forth in Count Twenty-Three. Count Twenty-Eight charges the defendant with knowingly discharging, carrying, or using a firearm during and in relation to a crime of violence, namely, attempted murder in aid of racketeering as set forth in Count Twenty-Seven. Count Thirty charges the defendant with knowingly discharging, carrying, or using a firearm during and in relation to a crime of violence, namely, attempted murder in aid of racketeering as set forth in Count Twenty-Nine.

In order for you to find the defendant guilty of Counts Twenty-Four, Twenty-Eight or Thirty, the government must prove, for each, both of the following elements beyond a reasonable doubt:

1.    The defendant committed the crime of attempted murder in aid of racketeering as charged in the count referenced in the count you are considering; and

2.    He knowingly discharged, used, or carried a firearm during and in relation to such crime.

If you find from your consideration of all the evidence that the government has proved each of these elements beyond a reasonable doubt as to the charge you are considering, then you should find the defendant guilty of that charge.

If, on the other hand, you find from your consideration of all the evidence that the government has failed to prove any one of these elements beyond a reasonable

doubt as to the charge you are considering, then you should find the defendant not

guilty of that charge.

*Alleyne v. United States*, __ U.S. __, 133 S.Ct. 2151 (2013) (enhancements for brandishing and discharging a firearm must be proved beyond a reasonable doubt to a jury); *7th Circuit Pattern Jury Instructions*, 18 U.S.C. § 924(c)(1)(A) (Using or Carrying a Firearm During and in relation to a Crime of Violence - Elements) (modified).

**INSTRUCTION NO. 52**

Counts Twenty-Four, Twenty-Eight, and Thirty charge the offense of knowingly discharging, carrying, or using a firearm during and in relation to the crime of attempted murder. The government is not required to prove that the defendant did all three of these acts with a firearm during and in relation to the crime of attempted murder. However, the government is required to prove that the defendant did at least one of these three acts with a firearm during and in relation to the crime of attempted murder. To find that the government has proven this, you must agree unanimously on which particular act with a firearm the defendant did, as well as all of the other elements of the crime charged.

For example, if some of you find that the government has proved beyond a reasonable doubt that the defendant discharged a firearm during and in relation to the crime of attempted murder, and the rest of you were to find that the government has proved beyond a reasonable doubt that the defendant carried a firearm during and in relation to the crime of attempted murder, then there would be no unanimous agreement on which act with the firearm the government has proved. On the other hand, if all of you were to find that the government has proved beyond a reasonable doubt that the defendant discharged the firearm during and in relation to the attempted murder, then there would be unanimous agreement.

*7th Circuit Pattern Jury Instructions*, No. 4.04 - Unanimity on Specific Acts; *Alleyne v. United States*, __ U.S. __, 133 S.Ct. 2151 (2013) (enhancements for brandishing and discharging a firearm must be proved beyond a reasonable doubt to a jury).

**INSTRUCTION NO. 53**

A defendant aids, counsels, commands, induces, or procures the commission of the offense only if he knowingly and intentionally assists another's use or carrying of a firearm during and in relation to a crime of violence. This requires the government to prove the following beyond a reasonable doubt:

1.    The defendant knew, either before or during the crime, of another person's use or carrying of a firearm; and,

2.    The defendant intentionally facilitated the use or carrying of the firearm once so informed.

A person who merely aids the underlying offense knowing that a firearm would be used or carried does not aid, counsel, command, induce, or procure the commission of the offense charged in the count you are considering.

If you find from your consideration of all the evidence that the government proved both of these elements beyond a reasonable doubt, then you should find the defendant guilty of the count you are considering.

If, on the other hand, you find from your consideration of all the evidence that the government failed to prove either of these elements beyond a reasonable doubt, then you should find the defendant not guilty of the count you are considering.

*7th Circuit Pattern Jury Instructions*, 18 U.S.C. § 924(c) (1)(A) (Using or Carrying a Firearm During and in Relation to a Crime of Violence or Drug Trafficking Crime -- Accountability Theory Elements).

**INSTRUCTION NO. 54**

A person "carries" a firearm when he knowingly transports it on his person or in a vehicle or container.

*7th Circuit Pattern Jury Instructions*, 18 U.S.C. § 924(c) (Definition of "Carry").

**INSTRUCTION NO. 55**

For purposes of Twenty-Four, Twenty-Eight, and Thirty, the term "use" means the "active employment" of a firearm. The term is not limited to use as a weapon, and includes brandishing, displaying, bartering, striking with, firing, and attempting to fire a firearm. A defendant's reference to a firearm calculated to bring about a change in the circumstances of the offense constitutes "use" during and in relation to a crime. However, mere possession or storage of a firearm, at or near the site of the crime, drug proceeds or paraphernalia is not enough to constitute use of that firearm.

*7th Circuit Pattern Jury Instructions*, 18 U.S.C. Section 924(c)(1)(A) (Definition of "Use").

**INSTRUCTION NO. 56**

For purposes of Counts Twenty-Four, Twenty-Eight, and Thirty, "during" means at any point within the offense conduct charged.

*7th Circuit Pattern Jury Instructions*, 18 U.S.C. Section 924(c) (Definition of "During").

## INSTRUCTION NO. 57

A person uses a firearm "in relation to" a crime if there is a connection between the use of the firearm and the crime of violence. The firearm must have some purpose or effect with respect to the crime; its presence or involvement cannot be the result of accident or coincidence. The firearm must at least facilitate, or have the potential of facilitating, the crime.

7th Circuit Pattern Jury Instructions, 18 U.S.C. Section 924(c) (Definition of "In Relation to").

# FINAL INSTRUCTIONS AND
# SPECIAL VERDICT FORM INSTRUCTIONS
# FOR COUNTS 1 AND 2

## INSTRUCTION NO. 58

Once you are all in the jury room, the first thing you should do is choose a foreperson. The foreperson should see to it that your discussions are carried on in an organized way and that everyone has a fair chance to be heard. You may discuss the case only when all jurors are present.

Once you start deliberating, do not communicate about the case or your deliberations with anyone except other members of your jury. You may not communicate with others about the case or your deliberations by any means. This includes oral or written communication, as well as any electronic method of communication, like your phones, computers, or on the Internet, or any other method of communication.

If you need to communicate with me while you are deliberating, send a note through the court security officer. The note should be signed by the foreperson or by one or more members of the jury. To have a complete record of this trial, it is important that you do not communicate with me except by a written note. I may have to talk to the lawyers about your message, so it may take me some time to get back to you. You may continue your deliberations while you wait for my answer. Please be advised that transcripts of trial testimony are not available to you. You must rely on your collective memory of the testimony.

If you send me a message, do not include the breakdown of any votes you may have conducted. In other words, do not tell me that you are split 6-6, or 8-4, or whatever your vote happens to be.

*7th Circuit Pattern Jury Instructions*, 7.01 (Jury Deliberations).

## INSTRUCTION NO. 59

Verdict forms have been prepared for you. You will take these forms with you to the jury room.

When you have reached unanimous agreement, your foreperson will fill in, date, and sign the verdict form. Each of you will sign it.

Advise the court security officer once you have reached a verdict. When you come back to the courtroom, I will read the verdict aloud.

*7th Circuit Pattern Jury Instructions*, 7.02 (Verdict Form).

**INSTRUCTION NO. 60**

After reaching your verdict on Count One, conspiracy to commit racketeering, if you find the defendant guilty, there are additional questions that you will need to consider and indicate your response on the verdict form for the questions relating to Count One.

The fourth superseding indictment alleges that the pattern of racketeering activity includes acts involving murder. If you found the defendant guilty of Count One, as indicated on the verdict form for the defendant, you need to determine whether, as part of the pattern of racketeering activity, the defendant committed the murder of Luis Ortiz, the murder of Michael Sessum, the murder of Miguel Mejias, the murder of Harris Brown, the murder of Miguel Colon, or the murder of Latroy Howard.

The fourth superseding indictment further alleges that the pattern of racketeering activity includes acts involving narcotics trafficking. If you find the defendant guilty of Count One, you need to determine whether as part of the pattern of racketeering activity, he conspired to distribute and possess with intent to distribute the quantities of the drugs listed on the verdict form.

United States v. Martin Anaya, 2:10-cr-00109 RL (Instruction No. 59 in Court's Instructions, Docket Entry #596, at page 71) (modified).

## INSTRUCTION NO. 61

If you find the defendant guilty of the offense charged in Count Two, the drug conspiracy, you must then determine the object or objects of the conspiracy that you unanimously find the government has proven the defendant guilty of beyond a reasonable doubt. You will see on the verdict form a question regarding the objects of the conspiracy for you to answer.

You will then see on the verdict form questions concerning the amount of narcotics involved in the offense charged in Count Two. You should consider these questions regarding the quantity of narcotics involved only if you have found that the government has proven the defendant guilty of the offense charged in Count Two.

*7th Circuit Pattern Jury Instructions* (Drug Quantity/Special Verdict Instructions) (modified).

## INSTRUCTION NO. 62

The verdict must represent the considered judgment of each juror. Your verdict, whether it is guilty or not guilty, must be unanimous.

You should make every reasonable effort to reach a verdict. In doing so, you should consult with each other, express your own views, and listen to your fellow jurors' opinions. Discuss your differences with an open mind. Do not hesitate to re-examine your own view and change your opinion if you come to believe it is wrong. But you should not surrender your honest beliefs about the weight or effect of evidence just because of the opinions of your fellow jurors or just so that there can be a unanimous verdict.

The twelve of you should give fair and equal consideration to all the evidence. You should deliberate with the goal of reaching an agreement that is consistent with the individual judgment of each juror.

You are impartial judges of the facts. Your sole interest is to determine whether the government has proved its case beyond a reasonable doubt.

*7th Circuit Pattern Jury Instructions*, 7.03 (Unanimity/Disagreement Among Jurors).

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| vs. | ) | 2:11-cr-00077 |
| | ) | |
| JUAN BRISEÑO | ) | |


**COURT'S PROPOSED VERDICT FORM (GUILT PHASE)**


Dated: February 25, 2015.


/s/ Philip P. Simon
PHILIP P. SIMON, CHIEF JUDGE
UNITED STATES DISTRICT COURT

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| vs. | ) | 2:11-cr-00077 |
| | ) | |
| JUAN BRISEÑO | ) | |

## VERDICT

### COUNT 1 (Racketeering Conspiracy)

As to the charge in Count One, we, the jury, find the Defendant, JUAN BRISEÑO:

Not Guilty _____        Guilty _____

If you found the Defendant not guilty of Count One, proceed directly to Count Two.

If you found the Defendant guilty of Count One, you will need to answer the following eight questions.

1.  If you found the Defendant JUAN BRISEÑO guilty of Count One, do you also unanimously find beyond a reasonable doubt that Defendant JUAN BRISEÑO committed the murder of Luis Ortiz?

    No _____        Yes _____

2.  If you found the Defendant JUAN BRISEÑO guilty of Count One, do you also unanimously find beyond a reasonable doubt that Defendant JUAN BRISEÑO committed the murder of Michael Sessum?

    No _____        Yes _____

1

3571

3.      If you found the Defendant JUAN BRISEÑO guilty of Count One, do you also unanimously find beyond a reasonable doubt that Defendant JUAN BRISEÑO committed the murder of Miguel Mejias?

No _____                     Yes _____

4.      If you found the Defendant JUAN BRISEÑO guilty of Count One, do you also unanimously find beyond a reasonable doubt that Defendant JUAN BRISEÑO committed the murder of Harris Brown?

No _____                     Yes _____

5.      If you found the Defendant JUAN BRISEÑO guilty of Count One, do you also unanimously find beyond a reasonable doubt that Defendant JUAN BRISEÑO committed the murder of Miguel Colon?

No _____                     Yes _____

6.      If you found the Defendant JUAN BRISEÑO guilty of Count One, do you also unanimously find beyond a reasonable doubt that Defendant JUAN BRISEÑO committed the murder of Latroy Howard?

No _____                     Yes _____


_____        _____
Foreperson                 Date

_____        _____
Juror                      Date

_____        _____
Juror                      Date

3572

_____     _____
Juror                       Date

_____     _____
Juror                       Date

_____     _____
Juror                       Date

_____     _____
Juror                       Date

_____     _____
Juror                       Date

_____     _____
Juror                       Date

_____     _____
Juror                       Date

_____     _____
Juror                       Date

_____     _____
Juror                       Date

3573

**COUNT 2 (Drug Conspiracy)**

As to the charge in Count Two we, the jury, find the Defendant, JUAN BRISEÑO:

Not Guilty _____          Guilty_____

If you found the Defendant JUAN BRISEÑO not guilty of Count Two, proceed directly to Count Nine.

If you found the Defendant guilty of Count Two, you will need to answer the following questions.

1.      Which of the following offenses do you unanimously find beyond a reasonable doubt were an object of the conspiracy? (Check all of the following options below that the jury unanimously agrees beyond a reasonable doubt were an object of the conspiracy.)

_____          Distribution of marijuana

_____          Distribution of cocaine

_____          Possession with intent to distribute marijuana

_____          Possession with intent to distribute cocaine

2.      If you found that the distribution of marijuana or the possession with intent to distribute marijuana was an object of the conspiracy, did the conspiracy involve (check the appropriate box below):

_____          less than 50 kilograms of a mixture or substance containing a detectable amount of marijuana

_____          at least 50 kilograms but less than 100 kilograms of a mixture or substance containing a detectable amount of marijuana

_____          more than 100 kilograms of a mixture or substance containing a detectable amount of marijuana

4

3574

3.    If you found that the distribution of cocaine or the possession with intent to distribute cocaine was an object of the conspiracy, did the conspiracy involve (check the appropriate box below):

_____    less than 500 grams of a mixture or substance containing a detectable amount of cocaine

_____    at least 500 grams but less than 5 kilograms of a mixture or substance containing a detectable amount of cocaine

_____    more than 5 kilograms of a mixture or substance containing a detectable amount of cocaine

_____    _____
Foreperson                                   Date

_____    _____
Juror                                              Date

_____    _____
Juror                                              Date

_____    _____
Juror                                              Date

_____    _____
Juror                                              Date

_____    _____
Juror                                              Date

_____    _____
Juror                                              Date

_____    _____
Juror                                              Date

_____    _____
Juror                                              Date

_____    _____
Juror                                              Date

3575

_____     _____
Juror                          Date


_____     _____
Juror                          Date


_____     _____
Juror                          Date

3576

## COUNT 9 (Murder of Luis Ortiz aka "Manolo")

As to the charge in Count Nine we, the jury, find the Defendant, JUAN BRISEÑO:

Not Guilty _____     Guilty _____

_____     _____
Foreperson              Date

_____     _____
Juror                   Date

_____     _____
Juror                   Date

_____     _____
Juror                   Date

_____     _____
Juror                   Date

_____     _____
Juror                   Date

_____     _____
Juror                   Date

_____     _____
Juror                   Date

_____     _____
Juror                   Date

_____     _____
Juror                   Date

_____     _____
Juror                   Date

_____     _____
Juror                   Date

7

**COUNT 13 (Murder of Michael Sessum)**

As to the charge in Count Thirteen we, the jury, find the Defendant, JUAN BRISEÑO:

Not Guilty _____        Guilty _____

_____    _____
Foreperson                  Date

_____    _____
Juror                       Date

_____    _____
Juror                       Date

_____    _____
Juror                       Date

_____    _____
Juror                       Date

_____    _____
Juror                       Date

_____    _____
Juror                       Date

_____    _____
Juror                       Date

_____    _____
Juror                       Date

_____    _____
Juror                       Date

_____    _____
Juror                       Date

_____    _____
Juror                       Date

3578

## COUNT 15 (Murder of Miguel Mejias aka "King Nelly")

As to the charge in Count Fifteen we, the jury, find the Defendant, JUAN BRISEÑO:

Not Guilty _____     Guilty _____


_____          _____
Foreperson                   Date

_____          _____
Juror                        Date

_____          _____
Juror                        Date

_____          _____
Juror                        Date

_____          _____
Juror                        Date

_____          _____
Juror                        Date

_____          _____
Juror                        Date

_____          _____
Juror                        Date

_____          _____
Juror                        Date

_____          _____
Juror                        Date

_____          _____
Juror                        Date

_____          _____
Juror                        Date

3579

**COUNT 17 (Murder of Harris Brown)**

As to the charge in Count Seventeen we, the jury, find the Defendant, JUAN BRISEÑO:

Not Guilty _____          Guilty _____


_____          _____
Foreperson                   Date

_____          _____
Juror                        Date

_____          _____
Juror                        Date

_____          _____
Juror                        Date

_____          _____
Juror                        Date

_____          _____
Juror                        Date

_____          _____
Juror                        Date

_____          _____
Juror                        Date

_____          _____
Juror                        Date

_____          _____
Juror                        Date

_____          _____
Juror                        Date

3580

**COUNT 19 (Murder of Miguel Colon aka "Migs")**

As to the charge in Count Nineteen we, the jury, find the Defendant, JUAN BRISEÑO:

Not Guilty _____      Guilty _____

_____          _____
Foreperson                      Date

_____          _____
Juror                           Date

_____          _____
Juror                           Date

_____          _____
Juror                           Date

_____          _____
Juror                           Date

_____          _____
Juror                           Date

_____          _____
Juror                           Date

_____          _____
Juror                           Date

_____          _____
Juror                           Date

_____          _____
Juror                           Date

_____          _____
Juror                           Date

_____          _____
Juror                           Date

11

3581

**COUNT 21 (Murder of Latroy Howard)**

As to the charge in Count Twenty-One we, the jury, find the Defendant, JUAN BRISEÑO:

Not Guilty _____     Guilty _____

_____     _____
Foreperson                Date

_____     _____
Juror                     Date

_____     _____
Juror                     Date

_____     _____
Juror                     Date

_____     _____
Juror                     Date

_____     _____
Juror                     Date

_____     _____
Juror                     Date

_____     _____
Juror                     Date

_____     _____
Juror                     Date

_____     _____
Juror                     Date

_____     _____
Juror                     Date

_____     _____
Juror                     Date

12

**COUNT 23 (Attempted Murder of Marissa Harper)**

As to the charge contained in Count Twenty-Three we, the Jury, find the Defendant JUAN BRISEÑO:

Not Guilty _____        Guilty _____


_____        _____
Foreperson                     Date

_____        _____
Juror                          Date

_____        _____
Juror                          Date

_____        _____
Juror                          Date

_____        _____
Juror                          Date

_____        _____
Juror                          Date

_____        _____
Juror                          Date

_____        _____
Juror                          Date

_____        _____
Juror                          Date

_____        _____
Juror                          Date

_____        _____
Juror                          Date

_____        _____
Juror                          Date

13

## COUNT 24 (Firearm Count)

As to the charge in Count Twenty-Four we, the jury, find the Defendant, JUAN BRISEÑO:

Not Guilty _____          Guilty_____

If you found the Defendant JUAN BRISEÑO not guilty of Count Twenty-Four, proceed directly to Count Twenty-Five.

If you found the Defendant guilty of Count Twenty-Four, you will need to answer the following question.

1.  Which of the following propositions do you unanimously find beyond a reasonable doubt that Defendant JUAN BRISEÑO knowingly did? (Check all of the following options below that the jury unanimously agrees beyond a reasonable doubt that Defendant JUAN BRISEÑO knowingly did.)

_____    discharge a firearm during and in relation to the crime of attempted murder in aid of racketeering as charged in Count Twenty-Three

_____    carry a firearm during and in relation to the crime of attempted murder in aid of racketeering as charged in Count Twenty-Three

_____    use a firearm during and in relation to the crime of attempted murder in aid of racketeering as charged in Count Twenty-Three

_____    _____
Foreperson             Date

_____    _____
Juror                  Date

_____    _____
Juror                  Date

14

3584

_____        _____
Juror                          Date

_____        _____
Juror                          Date

_____        _____
Juror                          Date

_____        _____
Juror                          Date

_____        _____
Juror                          Date

_____        _____
Juror                          Date

_____        _____
Juror                          Date

_____        _____
Juror                          Date

_____        _____
Juror                          Date

3585

**COUNT 27 (Attempted Murder of Joe Molina)**

As to the charge contained in Count Twenty-Seven we, the Jury, find the Defendant JUAN BRISEÑO:

Not Guilty _____        Guilty _____


_____         _____
Foreperson                                      Date


_____         _____
Juror                                               Date


_____         _____
Juror                                               Date


_____         _____
Juror                                               Date


_____         _____
Juror                                               Date


_____         _____
Juror                                               Date


_____         _____
Juror                                               Date


_____         _____
Juror                                               Date


_____         _____
Juror                                               Date


_____         _____
Juror                                               Date


_____         _____
Juror                                               Date


_____         _____
Juror                                               Date

3586

**COUNT 28 (Firearm Count)**

As to the charge in Count Twenty-Eight we, the jury, find the Defendant, JUAN BRISEÑO:

Not Guilty _____                 Guilty_____

If you found the Defendant JUAN BRISEÑO not guilty of Count Twenty-Eight, proceed directly to Count Twenty-Nine.

If you found the Defendant guilty of Count Twenty-Eight, you will need to answer the following question.

1.      Which of the following propositions do you unanimously find beyond a reasonable doubt that Defendant JUAN BRISEÑO knowingly did? (Check all of the following options below that the jury unanimously agrees beyond a reasonable doubt that Defendant JUAN BRISEÑO knowingly did.)

_____         discharge a firearm during and in relation to the crime of attempted murder in aid of racketeering as charged in Count Twenty-Seven

_____         carry a firearm during and in relation to the crime of attempted murder in aid of racketeering as charged in Count Twenty-Seven

_____         use a firearm during and in relation to the crime of attempted murder in aid of racketeering as charged in Count Twenty-Seven

_____   _____
Foreperson                          Date

_____   _____
Juror                                   Date

_____   _____
Juror                                   Date

17

3587

_____          _____
Juror                            Date

_____          _____
Juror                            Date

_____          _____
Juror                            Date

_____          _____
Juror                            Date

_____          _____
Juror                            Date

_____          _____
Juror                            Date

_____          _____
Juror                            Date

_____          _____
Juror                            Date

_____          _____
Juror                            Date

3588

**COUNT 29 (Attempted Murder of Josh Roberts)**

As to the charge contained in Count Twenty-Nine we, the Jury, find the Defendant JUAN BRISEÑO:

Not Guilty _____         Guilty _____


_____        _____
Foreperson                                    Date

_____        _____
Juror                                             Date

_____        _____
Juror                                             Date

_____        _____
Juror                                             Date

_____        _____
Juror                                             Date

_____        _____
Juror                                             Date

_____        _____
Juror                                             Date

_____        _____
Juror                                             Date

_____        _____
Juror                                             Date

_____        _____
Juror                                             Date

_____        _____
Juror                                             Date

_____        _____
Juror                                             Date

19

3589

**COUNT 30 (Firearm Count)**

As to the charge in Count Thirty we, the jury, find the Defendant, JUAN BRISEÑO:

Not Guilty _____          Guilty_____

If you found the Defendant JUAN BRISEÑO not guilty of Count Thirty, do not answer the following question.

If you found the Defendant guilty of Count Thirty, you will need to answer the following question.

1.  Which of the following propositions do you unanimously find beyond a reasonable doubt that Defendant JUAN BRISEÑO knowingly did? (Check all of the following options below that the jury unanimously agrees beyond a reasonable doubt that Defendant JUAN BRISEÑO knowingly did.)

    _____     discharge a firearm during and in relation to the crime of attempted murder in aid of racketeering as charged in Count Twenty-Nine

    _____     carry a firearm during and in relation to the crime of attempted murder in aid of racketeering as charged in Count Twenty-Nine

    _____     use a firearm during and in relation to the crime of attempted murder in aid of racketeering as charged in Count Twenty-Nine

_____    _____
Foreperson                Date

_____    _____
Juror                     Date

_____    _____
Juror                     Date

20

3590

_____      _____
Juror                                     Date

_____      _____
Juror                                     Date

_____      _____
Juror                                     Date

_____      _____
Juror                                     Date

_____      _____
Juror                                     Date

_____      _____
Juror                                     Date

_____      _____
Juror                                     Date

_____      _____
Juror                                     Date

_____      _____
Juror                                     Date

3591

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| vs. | ) | 2:11-cr-00077 |
| | ) | |
| JUAN BRISEÑO | ) | |

**VERDICT FORM (GUILT PHASE)**

Dated: February 26, 2015.

/s/ Philip P. Simon
PHILIP P. SIMON, CHIEF JUDGE
UNITED STATES DISTRICT COURT

3592

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| vs. | ) | 2:11-cr-00077 |
| | ) | |
| JUAN BRISEÑO | ) | |

## VERDICT

### COUNT 1 (Racketeering Conspiracy)

As to the charge in Count One, we, the jury, find the Defendant, JUAN BRISEÑO:

Not Guilty _____          Guilty _____

If you found the Defendant not guilty of Count One, proceed directly to Count Two.

If you found the Defendant guilty of Count One, you will need to answer the following six questions.

1.  If you found the Defendant JUAN BRISEÑO guilty of Count One, do you also unanimously find beyond a reasonable doubt that Defendant JUAN BRISEÑO committed the murder of Luis Ortiz?

    No _____          Yes _____

2.  If you found the Defendant JUAN BRISEÑO guilty of Count One, do you also unanimously find beyond a reasonable doubt that Defendant JUAN BRISEÑO committed the murder of Michael Sessum?

    No _____          Yes _____

1

3593

3.    If you found the Defendant JUAN BRISEÑO guilty of Count One, do you also unanimously find beyond a reasonable doubt that Defendant JUAN BRISEÑO committed the murder of Miguel Mejias?

No _____                          Yes _____

4.    If you found the Defendant JUAN BRISEÑO guilty of Count One, do you also unanimously find beyond a reasonable doubt that Defendant JUAN BRISEÑO committed the murder of Harris Brown?

No _____                          Yes _____

5.    If you found the Defendant JUAN BRISEÑO guilty of Count One, do you also unanimously find beyond a reasonable doubt that Defendant JUAN BRISEÑO committed the murder of Miguel Colon?

No _____                          Yes _____

6.    If you found the Defendant JUAN BRISEÑO guilty of Count One, do you also unanimously find beyond a reasonable doubt that Defendant JUAN BRISEÑO committed the murder of Latroy Howard?

No _____                          Yes _____


_____     _____
Foreperson              Date

_____     _____
Juror                   Date

_____     _____
Juror                   Date

2

_____       _____
Juror                         Date

_____       _____
Juror                         Date

_____       _____
Juror                         Date

_____       _____
Juror                         Date

_____       _____
Juror                         Date

_____       _____
Juror                         Date

_____       _____
Juror                         Date

_____       _____
Juror                         Date

_____       _____
Juror                         Date

3595

**COUNT 2 (Drug Conspiracy)**

As to the charge in Count Two we, the jury, find the Defendant, JUAN BRISEÑO:

Not Guilty _____          Guilty_____

If you found the Defendant JUAN BRISEÑO not guilty of Count Two, proceed directly to Count Nine.

If you found the Defendant guilty of Count Two, you will need to answer the following questions.

1.   Which of the following offenses do you unanimously find beyond a reasonable doubt were an object of the conspiracy? (Check all of the following options below that the jury unanimously agrees beyond a reasonable doubt were an object of the conspiracy.)

_____   Distribution of marijuana

_____   Distribution of cocaine

_____   Possession with intent to distribute marijuana

_____   Possession with intent to distribute cocaine

2.   If you found that the distribution of marijuana or the possession with intent to distribute marijuana was an object of the conspiracy, did the conspiracy involve (check the appropriate box below):

_____   less than 50 kilograms of a mixture or substance containing a detectable amount of marijuana

_____   at least 50 kilograms but less than 100 kilograms of a mixture or substance containing a detectable amount of marijuana

_____   more than 100 kilograms of a mixture or substance containing a detectable amount of marijuana

3596

3.     If you found that the distribution of cocaine or the possession with intent to distribute cocaine was an object of the conspiracy, did the conspiracy involve (check the appropriate box below):

_____     less than 500 grams of a mixture or substance containing a detectable amount of cocaine

_____     at least 500 grams but less than 5 kilograms of a mixture or substance containing a detectable amount of cocaine

_____     more than 5 kilograms of a mixture or substance containing a detectable amount of cocaine

_____     _____
Foreperson                  Date

_____     _____
Juror                       Date

_____     _____
Juror                       Date

_____     _____
Juror                       Date

_____     _____
Juror                       Date

_____     _____
Juror                       Date

_____     _____
Juror                       Date

_____     _____
Juror                       Date

_____     _____
Juror                       Date

_____     _____
Juror                       Date

3597

_____     _____
Juror                        Date

_____     _____
Juror                        Date

_____     _____
Juror                        Date

3598

## COUNT 9 (Murder of Luis Ortiz aka "Manolo")

As to the charge in Count Nine we, the jury, find the Defendant, JUAN
BRISEÑO:

Not Guilty _____        Guilty _____


_____         _____
Foreperson                      Date

_____         _____
Juror                           Date

_____         _____
Juror                           Date

_____         _____
Juror                           Date

_____         _____
Juror                           Date

_____         _____
Juror                           Date

_____         _____
Juror                           Date

_____         _____
Juror                           Date

_____         _____
Juror                           Date

_____         _____
Juror                           Date

_____         _____
Juror                           Date

_____         _____
Juror                           Date

3599

## COUNT 13 (Murder of Michael Sessum)

As to the charge in Count Thirteen we, the jury, find the Defendant, JUAN BRISEÑO:

Not Guilty _____        Guilty _____

_____        _____
Foreperson                              Date

_____        _____
Juror                                        Date

_____        _____
Juror                                        Date

_____        _____
Juror                                        Date

_____        _____
Juror                                        Date

_____        _____
Juror                                        Date

_____        _____
Juror                                        Date

_____        _____
Juror                                        Date

_____        _____
Juror                                        Date

_____        _____
Juror                                        Date

_____        _____
Juror                                        Date

_____        _____
Juror                                        Date

3600

**COUNT 15 (Murder of Miguel Mejias aka "King Nelly")**

As to the charge in Count Fifteen we, the jury, find the Defendant, JUAN BRISEÑO:

Not Guilty _____     Guilty _____

_____     _____
Foreperson                    Date

_____     _____
Juror                            Date

_____     _____
Juror                            Date

_____     _____
Juror                            Date

_____     _____
Juror                            Date

_____     _____
Juror                            Date

_____     _____
Juror                            Date

_____     _____
Juror                            Date

_____     _____
Juror                            Date

_____     _____
Juror                            Date

_____     _____
Juror                            Date

_____     _____
Juror                            Date

3601

**COUNT 17 (Murder of Harris Brown)**

As to the charge in Count Seventeen we, the jury, find the Defendant, JUAN BRISEÑO:

Not Guilty _____        Guilty _____


_____        _____
Foreperson                              Date

_____        _____
Juror                                      Date

_____        _____
Juror                                      Date

_____        _____
Juror                                      Date

_____        _____
Juror                                      Date

_____        _____
Juror                                      Date

_____        _____
Juror                                      Date

_____        _____
Juror                                      Date

_____        _____
Juror                                      Date

_____        _____
Juror                                      Date

_____        _____
Juror                                      Date

_____        _____
Juror                                      Date

## COUNT 19 (Murder of Miguel Colon aka "Migs")

As to the charge in Count Nineteen we, the jury, find the Defendant, JUAN BRISEÑO:

Not Guilty _____      Guilty _____

_____        _____
Foreperson                Date

_____        _____
Juror                     Date

_____        _____
Juror                     Date

_____        _____
Juror                     Date

_____        _____
Juror                     Date

_____        _____
Juror                     Date

_____        _____
Juror                     Date

_____        _____
Juror                     Date

_____        _____
Juror                     Date

_____        _____
Juror                     Date

_____        _____
Juror                     Date

_____        _____
Juror                     Date

3603

## COUNT 21 (Murder of Latroy Howard)

As to the charge in Count Twenty-One we, the jury, find the Defendant, JUAN BRISEÑO:

Not Guilty _____        Guilty _____


_____        _____
Foreperson                      Date

_____        _____
Juror                           Date

_____        _____
Juror                           Date

_____        _____
Juror                           Date

_____        _____
Juror                           Date

_____        _____
Juror                           Date

_____        _____
Juror                           Date

_____        _____
Juror                           Date

_____        _____
Juror                           Date

_____        _____
Juror                           Date

_____        _____
Juror                           Date

_____        _____
Juror                           Date

3604

**COUNT 23 (Attempted Murder of Marissa Harper)**

As to the charge contained in Count Twenty-Three we, the Jury, find the Defendant JUAN BRISEÑO:

Not Guilty _____     Guilty _____

_____     _____
Foreperson            Date

_____     _____
Juror                 Date

_____     _____
Juror                 Date

_____     _____
Juror                 Date

_____     _____
Juror                 Date

_____     _____
Juror                 Date

_____     _____
Juror                 Date

_____     _____
Juror                 Date

_____     _____
Juror                 Date

_____     _____
Juror                 Date

_____     _____
Juror                 Date

_____     _____
Juror                 Date

3605

**COUNT 24 (Firearm Count)**

As to the charge in Count Twenty-Four we, the jury, find the Defendant, JUAN BRISEÑO:

Not Guilty _____          Guilty_____

If you found the Defendant JUAN BRISEÑO not guilty of Count Twenty-Four, proceed directly to Count Twenty-Seven.

If you found the Defendant guilty of Count Twenty-Four, you will need to answer the following question.

1.      Which of the following propositions do you unanimously find beyond a reasonable doubt that Defendant JUAN BRISEÑO knowingly did? (Check all of the following options below that the jury unanimously agrees beyond a reasonable doubt that Defendant JUAN BRISEÑO knowingly did.)

_____         discharge a firearm during and in relation to the crime of attempted murder in aid of racketeering as charged in Count Twenty-Three

_____         carry a firearm during and in relation to the crime of attempted murder in aid of racketeering as charged in Count Twenty-Three

_____         use a firearm during and in relation to the crime of attempted murder in aid of racketeering as charged in Count Twenty-Three

_____     _____
Foreperson                 Date

_____     _____
Juror                      Date

_____     _____
Juror                      Date

14

3606

_____  _____
Juror                Date

_____  _____
Juror                Date

_____  _____
Juror                Date

_____  _____
Juror                Date

_____  _____
Juror                Date

_____  _____
Juror                Date

_____  _____
Juror                Date

_____  _____
Juror                Date

_____  _____
Juror                Date

3607

**COUNT 27 (Attempted Murder of Joseph Medina)**

As to the charge contained in Count Twenty-Seven we, the Jury, find the Defendant JUAN BRISEÑO:

Not Guilty _____      Guilty _____


_____          _____
Foreperson                   Date

_____          _____
Juror                        Date

_____          _____
Juror                        Date

_____          _____
Juror                        Date

_____          _____
Juror                        Date

_____          _____
Juror                        Date

_____          _____
Juror                        Date

_____          _____
Juror                        Date

_____          _____
Juror                        Date

_____          _____
Juror                        Date

_____          _____
Juror                        Date

_____          _____
Juror                        Date

16

**COUNT 28 (Firearm Count)**

As to the charge in Count Twenty-Eight we, the jury, find the Defendant, JUAN BRISEÑO:

Not Guilty _____          Guilty_____

If you found the Defendant JUAN BRISEÑO not guilty of Count Twenty-Eight, proceed directly to Count Twenty-Nine.

If you found the Defendant guilty of Count Twenty-Eight, you will need to answer the following question.

1.    Which of the following propositions do you unanimously find beyond a reasonable doubt that Defendant JUAN BRISEÑO knowingly did? (Check all of the following options below that the jury unanimously agrees beyond a reasonable doubt that Defendant JUAN BRISEÑO knowingly did.)

_____    discharge a firearm during and in relation to the crime of attempted murder in aid of racketeering as charged in Count Twenty-Seven

_____    carry a firearm during and in relation to the crime of attempted murder in aid of racketeering as charged in Count Twenty-Seven

_____    use a firearm during and in relation to the crime of attempted murder in aid of racketeering as charged in Count Twenty-Seven

_____      _____
Foreperson                              Date

_____      _____
Juror                                        Date

_____      _____
Juror                                        Date

17

_____          _____

Juror                                     Date

_____          _____

Juror                                     Date

_____          _____

Juror                                     Date

_____          _____

Juror                                     Date

_____          _____

Juror                                     Date

_____          _____

Juror                                     Date

_____          _____

Juror                                     Date

_____          _____

Juror                                     Date

_____          _____

Juror                                     Date

3610

**COUNT 29 (Attempted Murder of Joshua Roberts)**

As to the charge contained in Count Twenty-Nine we, the Jury, find the Defendant JUAN BRISEÑO:

Not Guilty _____      Guilty _____


_____        _____

Foreperson                      Date


_____        _____

Juror                           Date


_____        _____

Juror                           Date


_____        _____

Juror                           Date


_____        _____

Juror                           Date


_____        _____

Juror                           Date


_____        _____

Juror                           Date


_____        _____

Juror                           Date


_____        _____

Juror                           Date


_____        _____

Juror                           Date


_____        _____

Juror                           Date


_____        _____

Juror                           Date

19

**COUNT 30 (Firearm Count)**

As to the charge in Count Thirty we, the jury, find the Defendant, JUAN BRISEÑO:

Not Guilty _____     Guilty _____

If you found the Defendant JUAN BRISEÑO not guilty of Count Thirty, do not answer the following question.

If you found the Defendant guilty of Count Thirty, you will need to answer the following question.

1.  Which of the following propositions do you unanimously find beyond a reasonable doubt that Defendant JUAN BRISEÑO knowingly did? (Check all of the following options below that the jury unanimously agrees beyond a reasonable doubt that Defendant JUAN BRISEÑO knowingly did.)

    _____    discharge a firearm during and in relation to the crime of attempted murder in aid of racketeering as charged in Count Twenty-Nine

    _____    carry a firearm during and in relation to the crime of attempted murder in aid of racketeering as charged in Count Twenty-Nine

    _____    use a firearm during and in relation to the crime of attempted murder in aid of racketeering as charged in Count Twenty-Nine

_____      _____
Foreperson              Date

_____      _____
Juror                   Date

_____      _____
Juror                   Date

3612

_____        _____
Juror                         Date

_____        _____
Juror                         Date

_____        _____
Juror                         Date

_____        _____
Juror                         Date

_____        _____
Juror                         Date

_____        _____
Juror                         Date

_____        _____
Juror                         Date

_____        _____
Juror                         Date

_____        _____
Juror                         Date

3613

```
MIME-Version:1.0
From:CMECFinnd@innd.uscourts.gov
To:CMECFinnd@localhost.localdomain
Bcc:
--Case Participants: Pablo DeCastro (pdecastro@attorneydecastro.com,
ysierra@rascia-decastro.com), Kurt R Earnst (kre@braje-nelson.com), Matthew N Fech
(mnf@fech-law.com), Arlington J Foley (arlingtonfoley@att.net), Jack Friedlander
(jack@jackfriedlander.com, office@jackfriedlander.com), Bruce R Hegyi – AUSA
(bruce.hegyi@usdoj.gov), Roxanne Mendez Johnson (attorneyrmj@gmail.com), Scott L King
(dwilliams@scottkinggroup.com, sking@scottkinggroup.com), Visvaldis P Kupsis
(vpkupsis@hotmail.com), Dean R Lanter – AUSA (dean.lanter@usdoj.gov,
janet.eisenmann@usdoj.gov, usainn.ecfcivil@usdoj.gov), John Maksimovich
(criminallaw@johnmaksimovich.com), John E Martin – FCD (john_martin@fd.org), Sheldon B
Nagelberg (sbnagelberglaw@att.net), David J Nozick – AUSA (david.nozick@usdoj.gov,
janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov,
usainn.ecfcivil@usdoj.gov), Mark A Psimos (psimoslaw@airbaud.net), Robert L Rascia
(rrascia@rascia-decastro.com, ysierra@rascia-decastro.com), Stephen Edward Scheele
(pkd@gk4law.com, ses@gk4law.com), Paul Jeffrey Schlesinger (pjeffslaw@aol.com), Adam
Tavitas (adtavitas@aol.com, b.lynneadams@yahoo.com), John T Theis (theislaw@aol.com),
James N Thiros (jim@thiros.com, lynn@thiros.com), Bryan M Truitt (bryan@tblawyers.com,
sherrie@tblawyers.com), David E Vandercoy (david.vandercoy@valpo.edu), Thomas W Vanes
(b.lynneadams@yahoo.com, tom.vanes@sbcglobal.net), Ihor Alexander Woloshansky
(ihorlawyer@hotmail.com), Richard C Wolter (b.lynneadams@yahoo.com), R Brian Woodward
(carolb@wbbklaw.com, rbwoodward@wbbklaw.com), Magistrate Judge Andrew P Rodovich
(rodovich_chambers@innd.uscourts.gov, ruth_nagy@innd.uscourts.gov), Chief Judge Philip P
Simon (denise_woodside@innd.uscourts.gov, jacob_hamann@innd.uscourts.gov,
lauren_schwartz@innd.uscourts.gov, mira_serrill-robins@innd.uscourts.gov,
noel_collins@innd.uscourts.gov, philip_simon@innd.uscourts.gov)
--Non Case Participants: Matthew D Soliday (office@matthewsolidaylaw.com)
--No Notice Sent:

Message-Id:2719497@innd.uscourts.gov
Subject:Activity in Case 2:11-cr-00077-PPS-APR United States of America v. Briseno et al
Jury Trial – Sentence Enhancement Phase
Content–Type: text/html
```

### U.S. District Court Northern District of Indiana [LIVE]

### USDC Northern Indiana

## Notice of Electronic Filing

The following transaction was entered on 3/3/2015 at 7:23 PM EST and filed on 3/3/2015

| | |
|---|---|
| **Case Name:** | United States of America v. Briseno et al |
| **Case Number:** | 2:11–cr–00077–PPS–APR |
| **Filer:** | |
| **Document Number:** | 1505(No document attached) |

**Docket Text:**
 **JURY TRIAL –(16th Day – PENALTY PHASE– 1st DAY) as to Juan Briseno held on 3/3/2015 before Chief Judge Philip P Simon. Parties present as previously noted. Discussion on recent motions filed. Discussion and rulings on [1478]. Oral Motion for Sep of Witnesses by defense, shortly thereafter motion is withdrawn. Regarding Govt Motion to Compel, Motion for Discovery, Motion to Inspect and Photograph Dft's Tattoos [1420]: Court GRANTS this motion. The dft shall submit to photographs of his tattoos. Court to issue an order on this issue. Discussion on the scope of mitigators, Court will instruct the jury. Discussion on**

**witness issue regarding a shooting. The defense advises an interpreter is needed for 3/4/2015. Court's Preliminary Instructions to the jury. Opening Statements by Govt and defense counsel. Govt presents evidence in penalty phase. Court ruling on tattoo issue, finding the subject is relevant. Stipulation signed by parties and read to the jury (regarding date of Indictment, date of arrest and special findings. Govt continues to present evidence, concludes and rests. Jury excused and ordered to return on Wednesday, 3/4/2015 at 9:00 a.m. Jury given overnight instruction. Court hears argument as to Rule 29 motion by defense, gateway and aggravating factors. Court takes Rule 29 motion under advisement. Attorneys to return 3/4/2015 at 8:15 for further discussion. Scheduling matters discussed. Request for an interpreter is withdrawn by the defense. Dft is REMANDED to custody of US Marshal.(Court Reporter Stacy Drohosky (am) and Joanne Hoffman (pm).) (nac)**

**2:11–cr–00077–PPS–APR–1 Notice has been electronically mailed to:**

David E Vandercoy    david.vandercoy@valpo.edu

Arlington J Foley    arlingtonfoley@att.net

Mark A Psimos    psimoslaw@airbaud.net

Scott L King    sking@scottkinggroup.com, dwilliams@scottkinggroup.com

James N Thiros    jim@thiros.com, lynn@thiros.com

Thomas W Vanes    tom.vanes@sbcglobal.net, b.lynneadams@yahoo.com

Ihor Alexander Woloshansky    ihorlawyer@hotmail.com

R Brian Woodward    rbwoodward@wbbklaw.com, carolb@wbbklaw.com

John Maksimovich    criminallaw@johnmaksimovich.com

Visvaldis P Kupsis    vpkupsis@hotmail.com

Sheldon B Nagelberg    sbnagelberglaw@att.net

John E Martin – FCD    john_martin@fd.org

Adam Tavitas    Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander    jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele    ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst    kre@braje–nelson.com

Bryan M Truitt    bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis    theislaw@aol.com

Robert L Rascia    rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger   pjeffslaw@aol.com

Matthew N Fech   mnf@fech–law.com

Pablo DeCastro   pdecastro@attorneydecastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA   dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA   David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson   attorneyrmj@gmail.com

Bruce R Hegyi – AUSA   bruce.hegyi@usdoj.gov

**2:11–cr–00077–PPS–APR–1 Notice has been delivered by U.S. Mail or other means to:**

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION


UNITED STATES OF AMERICA          )
                                  )
            v.                    )          2:11 CR 77 PPS
                                  )
JUAN BRISENO                      )


GOVERNMENT'S REQUEST TO FILE OVER-LENGTH RESPONSE

Now comes the United States of America by and through the undersigned counsel, and seeks permission to file its over-length response to defendant's motion in limine to prohibit specified types of prosecutorial misconduct in penalty-phase summation, and represents to the court the following:

1.     Juan Briseno, defendant herein, faces the death penalty.

2.     Pursuant to Local Rule 7-1 (e)(2) of the Northern District of Indiana there exists extraordinary and compelling reasons for the court to grant permission to the government to file an over-length response; the response addresses arguments made in the defense motion (itself over ninety pages) concerning death penalty arguments.

3.     This response is directed toward the defendant's motion in limine to prohibit specified types of prosecutorial misconduct in penalty-phase summation.

WHEREFORE, pursuant to Local Rule 7-1 (e)(2) of the Northern District of Indiana, the government respectfully requests the court to grant permission to the government to file an over-length response and for all other just and proper relief.

                                         Respectfully submitted,

DAVID CAPP                               MYTHILI RAMAN
UNITED STATES ATTORNEY                   ACTING ASSISTANT ATTORNEY GENERAL

/s/ David J. Nozick                      /s/ Bruce R. Hegyi
David J. Nozick                          Bruce R. Hegyi
Assistant United States Attorney         Trial Attorney
5400 Federal Plaza, Suite 1500           Capital Case Unit
Hammond, IN 46320                        United States Department of Justice
Tel. (219) 937-5655                      1331 F Street, N.W., Third Floor
www.david.nozick@usdoj.gov               Washington, D.C. 20530
                                         Tel. (202) 616-4582
                                         Cell (703) 536-4774
                                         www.bruce.hegyi@usdoj.gov

3618

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | NO. 2:11 CR 77 PPS |
| | ) | |
| JUAN BRISENO | ) | |

CERTIFICATE OF SERVICE

The undersigned hereby certifies that the Government's Request to File an Over-Length

Response was electronically filed with the Clerk of the Court using the CM/ECF system which

sent notification of said filing to the following individuals:

ARLINGTON J. FOLEY
JOHN MAKSIMOVICH
(Attorneys for defendant Juan Briseno)

By:     /s/ Janet L. Eisenmann
        Janet L. Eisenmann
        U.S. Attorney's Office
        5400 Federal Plaza, Suite 1500
        Hammond, Indiana 46320
        (219) 937-5500

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CAUSE NO. 2:11 CR 77 PPS |
| | ) | |
| JUAN BRISENO | ) | |

**RESPONSE IN OPPOSITION TO THE MOTION
*IN LIMINE* TO PROHIBIT SPECIFIED TYPES OF
PROSECUTORIAL MISCONDUCT IN PENALTY-PHASE SUMMATION**

Now comes the United States of America, by and through the undersigned counsel, and submits the following brief in opposition to the Defendant's Motion in Limine to Prohibit Specified Types of Prosecutorial Misconduct in Penalty-Phase Summation. For the reasons set forth below, the government respectfully requests that this Honorable Court deny the defendant's motion.

3620

# **TABLE OF CONTENTS**

ISSUE STATEMENT ……………………………………………………………………….. 4

    A.  THE MOTION IS PREMATURE ………………………………………… 5

    B.  CONTEXT COUNTS …………………………………………………… 10

    C.  DEFENDANT'S HIGH BURDEN ……………………………………. 12

    D.  THERE IS NO CONSENSUS AGAINST THE COMPLAINED OF

       ARGUMENTS. …………………………………………………………... 13

    E.  APPROPRIATE ARGUMENT ………………………………………... 13

      1.  In response to defense argument #1, it is appropriate to criticize mitigating factors and argue that they have not been proved……………………………… 13

      2.  In response to defense argument #2, it is appropriate to criticize mitigating factors and argue that they have not been proved without suggesting that there must be a nexus to the crime.  Moreover, it is fair to respond to the defendant's penalty phase closing argument……………………………………………………16

      3.  In response to defense argument #3, it is appropriate to argue that a death sentence is the only appropriate punishment for the murder…………………….17

      4.  In response to defense argument #6 regarding invoking comparative justice in a victim-impact argument, it is appropriate to argue that the defendant showed no mercy to the victim and that the jury should not extend mercy to the defendant. 21

      5.  In response to defense argument #7 regarding invoking comparative worth in a victim-impact argument, it is appropriate to argue the "uniqueness" and good qualities of the victim as well as the bad character and criminal history of the defendant.  Only victim to victim comparative worth arguments violate *Payne v. Tennessee*……………………………………………………………. 21

      6.  In response to defense argument #13, it is appropriate to ask the jurors to send a message…………………………………………………………………… 25

      7.  In response to defense argument #14 regarding asking the jury to vote for death to satisfy the expectations of the community, it is appropriate to speak about collective judgments and conscience of community…………………………… 28

3621

8.  In response to defense argument #15 regarding suggesting that the jurors have a civic duty to return a sentence of death, if the jury determines the aggravating factors outweigh the mitigating factors, the jury does have a civic duty to return a sentence of death…………………………………………………………….…… 30

9.  In response to defense argument # 16, commenting on the costs or comforts of life imprisonment may be appropriate argument depending upon the evidence and defense closing argument…………………………………………………….. 32

10. In response to defense argument #17, limited references to religious authority can be appropriate rebuttal argument……………………………………….…37

11. In response to defense argument #26, it is appropriate to argue that mercy is never appropriate under the facts of this case……………………………….. 39

F.  CONCLUSION …………………………………………………………….. 43

3622

## ISSUE STATEMENT

The defendant has filed a motion in limine to prohibit specified types of prosecutorial misconduct in penalty-phase summation. The government's position is that this motion should be denied.

First, the motion is premature.

Second, context counts, in the sense that the defendant's motion mischaracterizes the law and is misleading because he asks for a Court ruling that does not take into account the context of this case, as well as the evidence that was offered or presented at trial.

Third, the defendant has a high burden to succeed on a claim of prosecutorial misconduct.

Fourth, there is no consensus against the complained arguments.

The government's response to specific arguments is not a default on the remaining arguments in the motion. The government is well aware of its legal and ethical obligations to present proper summation and will do so. In response to defendant argument #1, it is appropriate to criticize mitigating factors and argue that they have not been proved. In response to defense argument #2, it is appropriate to criticize mitigating factors and argue that they have not been proved without suggesting that there must be a nexus to the crime. Moreover, it is fair to respond to the defendant's penalty phase closing argument. In response to defense argument #3, it is appropriate to argue that a death sentence is the only appropriate punishment for the murder. In response to defense argument #6 regarding invoking comparative justice in a victim-impact argument, it is appropriate to argue that the defendant showed no mercy to the victim and that the jury should not extend mercy to the defendant. In response to defense argument #7 regarding invoking comparative worth in a victim-impact argument, it is appropriate to argue the "uniqueness" and good qualities of the victim as well as the bad character and criminal history of

the defendant.  Only victim to victim comparative worth arguments violate *Payne v. Tennessee*.

In response to defense argument #13, it is appropriate to ask the jurors to send a message.  In

response to defense argument #14 regarding asking the jury to vote for death to satisfy the

expectations of the community, it is appropriate to speak about collective judgments and

conscience of the community.  In response to defense argument #15 regarding suggesting that

the jurors have a civic duty to return a sentence of death, if the jury determines the aggravating

factors outweigh the mitigating factors, the jury does not have a civic duty to return a sentence of

death.  In response to defense argument #16, commenting on the costs or comforts of life

imprisonment may be appropriate argument depending upon the evidence and defense closing

arguments.  In response to defense argument #17, limited references to religious authority can be

appropriate rebuttal argument.  In response to defense argument #26, it is appropriate to argue

that mercy is never appropriate under the facts of this case.

### A.  <u>THE MOTION IS PREMATURE</u>

Unless the argument sought to be excluded pursuant to a motion in limine is clearly

inadmissible for any purpose, evidentiary ruling should be deferred until trial so that questions of

foundation, relevancy, and potential prejudice may be resolved in proper context.  *United States*

*v. Caputo*, 313 F. Supp.2d 764, 767-68 (N.D. Ill. 2004); *United States v. Ozsusamlar*, 428 F.

Supp.2d 161, 164-65 (S.D.N.Y. 2006).  In fact, nearly this precise motion has been raised, and

rejected, in other federal death penalty cases.  *See United States v. Wilson*, 2013 U.S. Dist.

LEXIS 85087 (E.D.N.Y.  June 14, 2013); *United States v. Lujan*, No. 05-CR-924 (RB), 2011

U.S. Dist. LEXIS 157442 (D.N.M. Mar. 25, 2011).  In denying a nearly identical motion, the

District court in *Wilson* held that:

3624

> Ultimately, the court cannot—and therefore will not—decide Wilson's motions at this time because it is "practically impossible to issue an informed ruling if the hypothetical argument is divorced from the context of the trial." Mem. Op. & Order, Lujan, 2011 U.S. Dist. LEXIS 157442 at *7. This is partly because closing arguments are "seldom carefully constructed in toto before the event." *Donnelly v. DeChristoforo*, 416 U.S. 637, 646-47, 94 S. Ct. 1868, 40 L. Ed. 2d 431 (1974). The best time to evaluate the propriety of a particular form or argument is at trial, at which point the court has heard the relevant evidence, understands the particular context in which the argument is being made, and can hear the tone of the argument to determine whether "a prosecutor intends an ambiguous remark to have its most damaging meaning  [*18] or that a jury, sitting through lengthy exhortation, will draw that meaning from the plethora of less damaging interpretations." Id. at 647; *see also United States v. Wexler*, 79 F.2d 526, 529-30 (2d Cir. 1935) (Hand, J.) ("It is impossible to expect that a criminal trial shall be conducted without some showing of feeling; the stakes are high, and the participants are inevitably charged with emotion.").
>
> For these reasons, Wilson's motion to preclude certain types of arguments is denied without prejudice to his right to object to actual arguments made at trial. The Government has been put on notice of the types of arguments to which Wilson will likely object. Wilson is aware of certain forms of argument that the Government agrees should not be presented, and those it contends are appropriate. With this preparation, the court is confident that it can thoroughly and expeditiously resolve any disputes about this subject that may arise.

*Wilson*, 2013 U.S. Dist. LEXIS 85087 *17.

In his motion, the defendant argues that a motion in limine is the "appropriate vehicle to determine the contours of proper opening and summation remarks."  The defendant urges the Court to follow the approach employed by the District Court in *United States v. Aquart*, 06-CR-00160 (JBA)(D. Conn.), to resolve a version of the current motion that was filed by the defendant in that case.  There, the government never actually responded to the motion – other than to advise the court that it was "well aware of its legal and ethical obligations to present proper summations" – and essentially defaulted on the motion.  Because of the procedural default, the Court issued an order granting the motion "absent any opposition from the Government." *Aquart*, 06-CR-00160, ECF # 894. The defendant contends that the government's failure to advance any opposition to the substantive arguments set forth in the defendant's motion in Aquart permitted the motion to serve "as the basis for the district court's

6

efficient analysis and rulings on defense objections." Indeed, from the defendant's description of it, the defendant's uncontested motion became the roadmap for the resolution of all defense objections. The government respectfully submits that such a one-sided result should not occur in this case.

The defendant also claims that versions of the instant motion have been litigated in a number of recent federal capital trials, and the courts have routinely ruled, in advance, that specified arguments would be improper. The defendant directs the Court to three cases that purportedly represent examples of the routine pretrial litigation that have resulted in preclusion orders barring the government from offering specified summation arguments. A closer review of the cited cases, however, reveals that none of them resulted in substantive rulings about the propriety of the arguments specified in the current motion.

One case the defendant cites as an example of routine pretrial resolution of this motion is *United States v. O'Reilly*, 05-CR-80025 (E.D. Mich. 2010), ECF #631. There, O'Reilly listed "27 broad categories" of argument that he claimed the government could not address in summation. In two short paragraphs, the court granted the defendant's motion only as it related to "statements of broad principles"; the judge nevertheless required the defendant to object during the government's closing argument if he believed that the prosecutor had applied those broad principles improperly. Apart from recognizing the existence of the broad principles, the court rejected the defendant's demand that the government not be permitted to comment about the conditions in federal prison, but indicated that the government would not be permitted to compare the defendant's life in jail to the plight of the victim. The court's order contained no other prohibitions pertaining to the government's summation.

In another example, *United States v. Duong*, 01-CR-20154 (N.D.Cal. 2010), the motion was filed on December 9, 2010, the day before the jury charge conference was held. Id., ECF # 1471. The government did not respond to the motion, and there is little mention of this motion, much less its resolution, in transcript of the December 10, 2010 charge conference. See id., ECF # 1496, p. 17013 (THE COURT: ". . . AND I RECEIVED THE DEFENDANT'S MEMORANDUM THAT ATTEMPTED TO IDENTIFY WHAT PRINCIPAL ISSUES ARE IN DISPUTE. I FOUND THAT VERY HELPFUL, THANK YOU.").  Nevertheless, the defendant quotes one sentence from the Duong charge conference where the court observed that it would be a misstatement of the law for the prosecutor to argue that noncrime mitigators were entitled to less weight, suggesting that the court agreed with the substance of Duong's in limine motion. But there is no indication that this observation was based on the arguments set forth in the motion.  Moreover, the government has reviewed the numerous PACER entries surrounding this motion, as well as the corresponding court transcripts, and has located no evidence that the court ever heard argument about, considered or ruled upon any of the issues specifically raised in the in limine motion. See 01-CR-20154, ECF #1496, 1497 and 1498.  If anything, it appears that, five days after the motion was filed, the docket entry was changed by the court staff to indicate that the motion was deemed not to be a "trial brief." See id., ECF # 1471 ("**((This is NOT a Trial Brief)***Modified on 12/14/2010 (cfeS, COURT STAFF)"). Accordingly, little weight should be afforded to the defendant's citation of Duong for the proposition that other courts have routinely ruled, in advance, that arguments identified in the present motion are improper.

Another case the defendant identifies as one where this motion was filed and resolved is *United States v. Lujan*, 05-CR-0924 (D.N.M. 2011).  Unlike the courts in *O'Reilly*, *Duong* and

*Aquart*, the court in *Lujan* had the benefit of opposition papers from the government (see id.,

ECF # 698), and issued an opinion that discussed the defendant's motion and the relevant issues

in detail. *Id.*, ECF # 631. In that opinion, the district court highlighted the potential perils of

ruling on the propriety of certain summation arguments prematurely:

> Perhaps the most fertile ground for emotion in the courtroom lies within the realm of summations or closing arguments. The law has long recognized that summation is not a "detached exposition," *Wexler*, 79 F.2d at 530, with every word "carefully constructed. . . before the event . . . ." *Donally v. DeChristoforo*, 416 U.S. 637, 646-47 (1974).  In that summation frequently requires "improvisation," courts will "not lightly infer" that every statement is intended to carry "its most dangerous meaning." *Id*. While the prosecutor is "not permitted to make an appeal to passion or prejudice calculated to inflame the jury," *United States v. Crooks*, 83 F.3d 103, 107 n. 15 (5th Cir. 1996), he or she may be passionate in arguing that the evidence supports a conviction, *see Wexler*, 79 F.2d at 530. Due to the highly-charged nature of summation, it is extremely difficult to rule in advance of trial that a particular argument is improper.
>
> Additionally, the propriety of remarks in summation is inevitably wedded to the evidence that has been admitted during the trial. "The prosecutor is entitled to considerable latitude in summation to argue the evidence and any reasonable inferences that can be drawn from that evidence." *United States. v. Werme*, 939 F.2d 108, 117 (3d Cir. 1991) (rejecting a due process challenge to remarks a prosecutor made in summation).  During summation, a prosecutor may not make improper suggestions to mislead the jury or appeal to the jury's "passion or prejudice."  *United States v. Rodriguez*, 765 F.2d 1546, 1560 (11th Cir. 1985). However, a prosecutor may state conclusions drawn from the evidence, and "there is no prohibition on colorful and perhaps flamboyant remarks if they relate to the evidence" shown at trial. *United States v. Bailey*, 123 F.3d 1381, 1400 (11th Cir. 1997)(citation omitted). See also *United States v. Vargas*, 580 F.3d 274, 278 (5th Cir. 2009)(stating that a "prosecutor is confined in closing argument to discussing properly admitted evidence and any reasonable inferences or conclusions that can be drawn from that evidence."). Undoubtedly, it is practically impossible to issue an informed ruling if the hypothetical argument is divorced from the context of the trial.
>
>        *                      *                      *                      *                     *
>
> Otherwise, at this stage in the proceedings, the Court is not in a position to predict what kind of arguments the prosecution might make in summation. Moreover, it is impossible to determine whether the other summations targeted by [the defendant] would be improper without knowledge of the context and the evidence. Any ruling on additional matters would be based on pure speculation and in the nature of an advisory opinion. *See Flast v. Cohen*, 392 U.S. 83, 95 (1968)(holding "no justiciable controversy is presented . . .when the parties are asking for an advisory opinion."). Of course, "Article III of the Constitution bars the federal courts from

issuing advisory opinions." *Qwest Corp. v. Pub. Util. Com'n of Colo.*, 479 F.3d 1184,
1191 (10th Cir. 2007). The Court will refrain from issuing rulings on matters that
are not ripe.

*Id.* at 3-4.  Of the 27 specific arguments that Lujan asked the court to preclude the government

from raising in summation, the court ruled, because "some arguments are always improper,"

that the government would not be permitted to "vouch for the credibility of witnesses, bolster the

evidence with facts not in evidence, misstate the evidence, incite the passions of the jury,

or suggest that the jurors have a civic duty to return a sentence of death." *Id.* at 8. The court also

ruled that all parties had to refrain from "unfounded and inflammatory attacks on opposing

counsel." *Id.*  As for the rest of the motion, the court denied it without prejudice.

In *United States v. Wolk*, Case No. 401 CR 258, 2001 WL 1863567 (E.D. Mo. Aug. 16,

2001), the defendant filed a motion in limine to preclude, among other things, prosecutorial

misconduct and improper prosecutorial comment.  2001 WL 1863567 at *1.  The district court

denied the motion because the motion was "premature" and "assert[ed] an objection to an

expected offer of evidence at trial, which evidence may not be offered at trial.  *Id.*  *See also*

*United States v. Caro*, 461 F. Supp. 2d 459, 463 (W.D. Va. 2006) (denying capital defendant's

pretrial motion in limine to prohibit prosecution from arguing death penalty was "justified" or

"appropriate" punishment because it was unclear to the court before trial how the words would

be misleading and the court's trial instructions could cure any error).

### B. <u>CONTEXT COUNTS</u>

The Defendant's motion mischaracterizes the law and is misleading because he asks for a

Court ruling that does not take into account the context of this case, as well as the evidence that

was offered or presented at trial.  In determining the propriety of a prosecutor's closing

argument, context is everything. It is an important legal principle that prosecutorial comment must be examined **in context**. *United States v. Robinson*, 485 U.S. 25, 33 (1988). In making that holding, the Supreme Court quoted its prior ruling in *United States v. Hastings*, 461 U. S. 499, 515 (1983) (STEVENS, J., concurring), stating:

> Under Griffin . . . it is improper for either the court or the prosecutor to ask the jury to draw an adverse inference from a defendant's silence. ***But I do not believe the protective shield of the Fifth Amendment should be converted into a sword that cuts back on the area of legitimate comment by the prosecutor on the weaknesses in the defense case***.

*Robinson*, 485 U.S. at 33 (emphasis added). For example, an argument that on its face may seem improper may be appropriate, even compelled, given the facts of a particular case, or the defendant's closing argument. Along the same lines, not only must the context of the argument be considered as well as the facts of a particular case, but so too whether the argument is offered in rebuttal of the defendant's own argument. *See United States v. Caro*, 597 F.3d 608, 626 (4th Cir. 2010) ("More significantly, regarding the government's comments about whether the BOP would adequately secure Caro to prevent future dangerousness, Caro's own argument opened the door. Caro's expert Cunningham acknowledged that Caro remained dangerous, but testified that Caro would not endanger anyone because the BOP would incapacitate him at Florence ADMAX. This plainly invited the government to respond that, actually, the BOP would not secure Caro adequately to prevent future violence.").

In *Lockett v. Ohio*, 438 U.S. 586 (1978), the United States Supreme Court quickly dismissed the defendant's claim that the prosecutor had violated the defendant's right to remain silent when he repeatedly remarked that the evidence was uncontradicted. The Court did not need to decide whether such comment was generally improper, because in that case, the defendant's own counsel had clearly focused the jury's attention on her silence, first, by

3630

outlining her contemplated defense in his opening statement and, second, by stating to the court

and jury near the close of the case, that Lockett would be the next witness.'" *Id.*, at 595. The

United States Supreme Court concluded that "[w]hen viewed against this background, it seems

clear that the prosecutor's closing remarks added nothing to the impression that had already been

created by Lockett's refusal to testify after the jury had been promised a defense by her lawyer

and told that Lockett would take the stand." *Id.* Clearly, the context in which an argument is

made, the specific facts of a given case, as well as whether to argument is proffered to rebut a

defendant's claim must be considered in determining the propriety of a prosecutor's closing

argument. Moreover, when "the defendant's attorney offers a theory of defense . . . the

government may respond by noting the absence of evidence to support that defense." *United

States v. Burns*, 432 F.3d 856, 861 (8th Cir. 2005). *United States v. Rodriguez*, 581 F.3d 775

(8th Cir. 2009).

### C.     DEFENDANT'S HIGH BURDEN

The Supreme Court standard for evaluating prosecutorial misconduct is laid out in

*Darden v. Wainwright*, 477 U.S. 168, 91 L. Ed. 2d 144, 106 S. Ct. 2464 (1986). In order to

succeed on his prosecutorial misconduct claim, a defendant must prove both that the remarks

were improper and that they "so infected the trial with unfairness as to make the resulting

conviction a denial of due process." *Id.* at 181. "[It] is not enough that the prosecutor's remarks

were undesirable or even universally condemned." *Id.* Rather, they must be "so serious that

[they] poison the entire atmosphere of the trial." *United States v. Pirovolos*, 844 F.2d 415, 425

(7th Cir. 1988).

3631

**D.     THERE IS NO CONSENSUS AGAINST THE COMPLAINED OF ARGUMENTS**

There is no consensus amongst courts as to the propriety, or impropriety, of making the arguments identified by the defendant.  Rather, the courts considering the government's closing arguments have discussed the propriety of any argument under the context of the facts of any given case.  In the absence of judicial consensus, the government suggests, no argument identified can rise to the level of error such that they would so infect the trial with unfairness as to make the resulting sentence a denial of due process.  *See United States v. Davis*, 609 F.3d 663, 687 (5th Cir. 2010)(given the contradictory authority, and our lack of circuit precedent on the issue of the closing argument, the district court's error, if any, was not clear or obvious and not the basis of plain error).  Accordingly, in the absence of clear authority prohibiting the arguments identified, the government suggests that they cannot form the basis of a due process violation.  Rather, the Court should simply rule on the propriety of any argument at trial and, if appropriate, give a curative instruction.

**E.     APPROPRIATE ARGUMENT**

It is the government's position that the defendant's motion should be denied as premature for the reasons stated above.  In addition, the government below responds to certain arguments made by the defense in its motion.  The government's failure to respond below to the remaining defense arguments is not a default on the motion.  The government is well aware of its legal and ethical obligations to present proper summation and will do so.

**1.  In response to defense argument #1, it is appropriate to criticize mitigating factors and argue that they have not been proved.**

The defendant argues that the Court should prohibit the government from urging the jury to ignore or disregard legitimate mitigating evidence.  This defense argument misstates and

13

3632

misapplies the relevant law concerning the application and proof of mitigating factors in a

federal capital trial.  The Defendant in a federal capital case has the burden of proving mitigating

factors.  18 U.S.C. § 3593(c); *United States v. Rodriguez*, 581 F.3d 775, 799 (8th Cir. 2009),

*cert. denied*, 2010 U.S. LEXIS 8158 (2010).  Moreover, the government may dispute those

factors, and argue they should receive little or no weight.  *United States v. Johnson*, 495 F.3d

951, 978 (8th Cir. 2007).  Furthermore, the determination of whether a piece of evidence is

mitigating rests solely with the jury.  In *Rodriguez*, the Eighth Circuit held that the prosecutor's

summation was proper despite the defendant's claim that the "comments improperly directed the

jury to consider mitigation evidence only if it has a 'nexus' to the crime."  In that case, the

government argued:

> Ask yourself what has the defense proven that actually has the power to change what the Defendant did in this case and erase who he is?
>
> And Judge Erickson just told you as to those mitigating factors where the burden lies. . . . [then, six transcript pages later] . . . .
>
> For the first time in this trial the law now says the defense has a burden of proof, and if you look at it closely, the burden has two components, as Judge Erickson's instructions bear out. No mitigating information goes on the scale unless the defense meets its proof burden and you first reach a couple of conclusions. The burden of proving mitigation is on the defense to show the mitigation allegation is factually proven to the greater weight of the evidence.
>
> Also, the information has to be shown that the information mitigates in this case. Whether proven or not, does it mitigate, tend to lessen the severity in this case? A defense proposal for mitigation or mitigation that you find is only qualified to go on the decision scale if you answer yes for both of those mitigation questions, and then there's a third issue, what weight do you want to give it?
>
> If either of those first two is not proven, either factually or that it mitigates, then you don't have to give further consideration to that proposed factor.

And,

> We heard that the Defendant was a colicky baby, he was one of the poor kids in school, some kids teased him, and he is said to have encountered racism and sexual abuse, as did

14

3633

> his sisters. Very serious matters. He inherited a benign hand tremor from his father, and he would rather have lived in Texas than Minnesota. Perhaps these factors would mitigate the Defendant getting into a fistfight with one of the people who wronged him long ago, but what could it have to do with a 22-year-old girl the Defendant spotted in a mall, lusted after, kidnapped, assaulted and raped, and finally killed on November 22nd, 2003?
>
> No matter what the Defendant thinks he would change about his life, everyone agrees he is capable of choosing for himself. There's nothing in the law that allows him to choose to do what he did to Dru Sjodin and his other victims, and there is nothing that says you are required to agree to it by way of his mitigation claims.

In affirming the defendant's death sentence, the Court held that:

> The second challenged remarks do not direct jurors to disregard mitigating factors because no nexus links them to the killing. Rather, the prosecutor argued that, despite Rodriguez's troubled past, "he is capable of choosing for himself" and has free will. This argument is permissible.

*Rodriguez*, 581 F.3d at 799. It is permissible for the government to criticize mitigators offered by the defendant and to argue that they should be given little or no weight.

As long as a prosecutor does not tell jurors to ignore or disregard mitigators, a prosecutor may argue, based upon the circumstances of the case, that the mitigators are entitled to little or no weight. *United States v. Johnson*, 495 F.3d 951, 978 (8th Cir. 2007). In *Johnson*, defense counsel argued that the prosecutor's appropriate criticism of a defense mitigator is really just an argument that "mitigators did not apply." In that case, the prosecutor argued:

> The intentional murder of children is an unspeakable evil. It's an evil that cannot be mitigated by any evidence. None of the defendant's mitigators can take away what she did and her involvement in killing those children. Somebody involved in the murder of children deserves the death penalty.

*Johnson*, 495 F.3d at 978. In upholding the death sentence, the Eighth Circuit held that the "prosecutor was not arguing that that the jurors could choose to ignore the mitigators or exclude them from consideration, but rather that they were insufficient to outweigh the gravity of the offense." Id. In *Johnson*, the court also considered whether the prosecutor's argument improperly "denigrated" the mitigating factor associated with the victim's consent. The

3634

prosecutor argued that the victims "were murdered because they were witnesses, not because they were involved in the drug trade." The Eighth Circuit held that "[i]n light of the evidence, we cannot say that this was an unfair argument." *Id.* 980.

Although the prosecutor may not argue that a jury is free to disregard a mitigating factor outright, he may urge the jury to accord to weight to that factor after due consideration. *Bolden*, 545 F.3d 609, 629-30 (8th Cir. 2008); *Johnson*, 495 F.3d at 978.

> **2. In response to defense argument #2, it is appropriate to criticize mitigating factors and argue that they have not been proved without suggesting that there must be a nexus to the crime. Moreover, it is fair to respond to the defendant's penalty phase closing argument.**

The government suggests that the defendant's argument to prohibit "any suggestion that mitigating factors must demonstrate a nexus to the crime" is a gross oversimplification of the law under the potential circumstances of a federal capital trial. Many times a defendant himself will introduce evidence and try to establish a nexus between the alleged mitigating evidence and the crime itself. The defendant is seeking to explain or, to some extent, excuse the crime. The proliferation of mental health, and social history, evidence is just one example. Many times, a defendant will introduce evidence of a brain injury, or some type of brain dysfunction, in an attempt to argue that the choice a defendant made to kill was impulsive, was not thought out, or was impacted by his brain disorder. In that case, the defendant himself is drawing a nexus between the alleged mitigating evidence and the crime. Many times, a defendant will introduce social history evidence to argue that the defendant did not have boundaries or a loving family in his past. The defendant will then argue that the decision to murder was affected, at least in part, by his upbringing. Again, in that case, the defendant himself will draw a nexus between the alleged mitigating evidence and the crime. In those situations, and countless others, it is

3635

appropriate for the government to comment, to argue that the alleged mitigating evidence does not excuse the crime.

In *United States v. Fell*, 531 F.3d 197 (2d Cir. 2008), the Second Circuit held that a prosecutor's comments that the weight of the defendant's mitigating factors was "not that heavy" and that the jury "need not give them much, if any, weight" did not deprive the defendant of a fair trial in light of the trial court's clear instructions to the jury to consider any and all mitigating factors. 531 F.3d at 221-24. The *Fell* court also noted that no juror could have reached the conclusion that a mitigating factor need have a nexus to the crime, in part, because the court instructed the jury that a mitigating factor can be "anything else relevant to the sentencing decision." Id. at 223.

Although the government may not argue that a mitigating factor can be disregarded in the absence of a nexus between a mitigating factor and the defendant's offense, the government may argue that, in the absence of such nexus, the jury can give no weight to the factor after due consideration. *Fell*, 531 F.3d at 222-24.

### 3. In response to defense argument #3, it is appropriate to argue that a death sentence is the only appropriate punishment for the murder.

The defendant's recitation of legal authorities is incomplete, and misleading. It is misleading because there is a split of authority concerning whether it is appropriate for a prosecutor to argue that, in light of a life sentence, a death sentence is the only way to punish him for the murder. What is not contested is the fact that it is appropriate for the prosecutor to argue that a death sentence is the only just sentence.

The Fifth Circuit Court of Appeals discussed the split of authority in the propriety of prosecutors arguing that, because a defendant is serving a life sentence, he will not be punished

17

for the murder unless he is given a death sentence in *United States v. Davis*, 609 F.3d 663 (5th

Cir. 2010).  In that case, the defendant was previously sentenced to life imprisonment for a

cocaine conviction.  In the penalty phase of his subsequent capital trial, the prosecutor argued:

> He's already serving life for the cocaine conviction. If you don't return a sentence of
> death, you're giving him a free pass for killing Kim Marie Groves. Is that just? He won't
> be punished at all. And I want you to listen to what I'm saying. You give him life, you
> don't give him death, he won't be punished at all for killing, executing Kim Marie
> Groves. He gets a free pass. Is that just? Huh? Life here is no punishment at all.
>
> . . . He gets life, he wins again. . . . [I]f you don't return a sentence of death, which is the
> only just sentence in this case, Len Davis will be celebrating again tonight. Don't let that
> happen.

In rebuttal summation, the prosecutor also stated:

> But more importantly, as [defense counsel] told you, if you don't sentence him to death,
> this murder is a freebie. Don't do that.

Id., at 686.  In finding that the trial court did not commit plain error, the Fifth Circuit held:

> First, as to the prosecutor's argument that a life sentence would not be adequate
> punishment because Davis was already serving a life sentence for drug offenses, we
> conclude that any failure by the district court to correct the remarks was not plain error.
> Courts have divided on the question of whether such an argument is permissible.
> Compare, e.g., *People v. Kuntu*, 196 Ill. 2d 105, 752 N.E.2d 380, 403, 256 Ill. Dec. 500
> (Ill. 2001) ("We find error in allowing the State to argue to the jury that, if it should fail
> to vote to sentence defendant to death, the jury will be giving the defendant five free
> murders."), with *Rodden v. Delo*, 143 F.3d 441, 447 (8th Cir. 1998) ("In context, the
> prosecutor's statement about the second  murder being free urged the jury to impose
> additional punishment for the additional crime. . . . The jury could properly consider [the
> defendant]'s earlier crimes in deciding whether to sentence him to death.").  Given the
> contradictory authority, and our lack of circuit precedent on the issue, the district court's
> error, if any, was not clear or obvious. *See United States v. Scroggins*, 599 F.3d 433, 450
> (5th Cir. 2010) (refusing to find plain error in light of divided legal authorities).
>
> In addition, the prosecutor's remarks did not communicate to jurors that they were legally
> bound to impose the death penalty or that they could not consider Davis's mitigating
> factors. The jurors were instructed to the contrary by the court immediately before their
> deliberations, and were informed that the arguments were just that--not evidence.
> Moreover, there was not inappropriate disparagement of Davis or defense counsel. See
> *Causey*, 185 F.3d at 418. The remarks were drawn from evidence in the record and could
> be inferred from the evidence the jury heard. *See United States v. Mendoza*, 522 F.3d

3637

482, 491 (5th Cir. 2008) (stating that a prosecutor "is confined in closing argument to discussing properly admitted evidence and any reasonable inferences or conclusions that can be drawn from that evidence"). Davis cannot demonstrate that the remarks prejudiced him.

Id.

Very recently, the Supreme Court of California considered the same issue in *People v. Adams*, 2014 Cal. LEXIS 10319  (Cal. 2014).  In that case, the Court held that the prosecutors closing argument that a fourth murder would be a "freebie" if the jury did not return a verdict of death did not cross the line into misconduct because the prosecutor's lengthy closing argument, viewed as a whole, built on defendant's eligibility for a death sentence after his commission of two of the charged murders.  The defendant contended that the prosecutor committed prejudicial misconduct in the penalty phase by arguing that a death verdict was required in order to punish defendant for the murder of the victim during the credit union robbery, and that a verdict of life without the possibility of parole would reward defendant with a "freebie" for the victim's death and the other aggravating crimes.  In his final closing argument, the prosecutor:

> repeated that defendant was eligible for the  death penalty because he had committed two  murders and  claimed that the  defense wanted the  jury to ignore all the other [aggravating evidence. The prosecutor asserted that the  defense "wants to say,  no, just give  him  the  minimum, just give  him  a freebie, give  him  a freebie on the  third murder, on the  attempted murders, on the  robberies, on all of the  other crimes of violence, we are  not going to punish you  anymore. We will  just stop  at the  two murders." The prosecutor concluded by urging the  jury to impose the  death penalty as the "fair" and  "just" penalty that defendant deserved.

Id., at 72.  In approving the "freebie" argument, the California Supreme Court held:

> We have recognized as appropriate a similar prosecutorial argument urging that three murders warranted a death verdict to avoid a "freebie" for the third murder. (*People v. Rogers* (2009) 46 Cal.4th 1136, 1174 & fn. 23 [95 Cal. Rptr. 3d 652, 209 P.3d 977].) Defendant contends, however, that "[w]hile it may be appropriate to make such a freebie argument with regard to a third murder directly committed by a defendant …, it is improper to make this 'freebie' argument with regard to factor (b) crimes, as the prosecutor did here." Although it is possible a prosecutor's use of the term "freebie" in

19

connection with section 190.3, factor (b), evidence might in a particular case mislead a jury regarding its proper focus under section 190.3 in reaching a penalty verdict, and a prosecutor should be particularly careful in this regard, we are not convinced the prosecutor's argument in this case crossed the line into misconduct. In the context of the entirety of the prosecutor's argument, the jury would likely have understood him to be contending that when defendant's involvement in the Vandenberg Federal Credit Union robbery and murder of Orciuch and the other factor (b) evidence was added to the jury's consideration of the appropriate penalty for the three murder convictions, a death verdict was all the more warranted—not that it was the jury's responsibility to impose separate punishment on defendant for Orciuch's murder.

*Id.*, at 76.

It should not be subject to debate that it is appropriate for the government to argue that the death penalty is the only just punishment under the facts of a particular case. Prosecutors do not commit misconduct in arguing that incarceration is an inadequate, and arguably indulgent, form of punishment for the crime charged in a capital case. *See United States v. Higgs*, 353 F.3d 281, 332 (4th Cir. 2003) (summarily rejecting a claim that the government improperly argued that imprisonment would be "soft" in view of the privileges available to the defendant as an inmate).

In this case, the government intends to argue that life imprisonment is not warranted based on the weighing of the aggravating and mitigating factors and the facts of the case that support the aggravating factors. Retribution is an appropriate argument for the government to advance and the government does intend to argue that life imprisonment in the BOP is not worse than death.

3639

**4. In response to defense argument #6 regarding invoking comparative justice in a victim-impact argument, it is appropriate to argue that the defendant showed no mercy to the victim and that the jury should not extend mercy to the defendant.**

The defendant's recitation of legal authorities and summation examples is incomplete, and misleading. Again, the difficulty with deciding pre-trial the propriety of an argument that has not been made, based upon evidence that has not been admitted, is that the Court cannot anticipate the evidence and the context in which an argument is made. The defendant proclaims that it is "blatantly impermissible" to ask the jury to show a capital defendant the same amount of mercy that he showed a victim. The problem with the defendant's articulation of that legal argument is that it does not, and cannot, take into account the countless nuance of appropriate penalty phase arguments.

It is blatantly permissible to point out and argue that a defendant has shown no mercy to a victim.

**5. In response to defense argument #7 regarding invoking comparative worth in a victim-impact argument, it is appropriate to argue the "uniqueness" and good qualities of the victim as well as the bad character and criminal history of the defendant. Only victim to victim comparative worth arguments violate *Payne v. Tennessee*.**

The government agrees that it is improper to ask jurors to specifically weigh the moral worth of a defendant against the moral worth of a victim and ask the jury to impose a death sentence if they find that the victim has more "moral worth" than the defendant. The types of arguments that are prohibited "comparative worth" arguments, however, are a tiny fraction of the comparative arguments that are not only permitted but, the government suggests, encouraged by the Supreme Court's decision in *Payne v. Tennessee*, 501 U.S. 808, (1991). The comparative worth arguments the defendant seeks to prohibit aptly illustrates the difficulty of making sweeping and broad edicts about the propriety, or impropriety, of specific arguments divorced

21

from the facts of a specific case.  This is especially true in light of the fact that it is perfectly

appropriate to argue the uniqueness and good qualities of a victim as well as the bad qualities

and criminal record of a defendant.

The defendant cites to *Humphries v. Ozmint*, 397 F.3d 206, 222-23 (4th Cir. 2005) (en

banc) in support of his argument to preclude "comparative worth" argument.  That case

illustrates the difficulty of making sweeping judgments about the propriety of a specific

argument.  In that case, in his closing argument, the State's solicitor repeatedly emphasized the

comparative worth of the lives of the victim and of the defendant.  The solicitor argued:

> In 1984 [Dickie Smith, the victim] met Pat, and they fell in love, and they got
> married. That's the same year Shawn Paul Humphries committed two house break-ins at
> age 13. 1986 Dickie makes a pretty drastic move. He decides he's going to quit Kemet
> and go build homes full-time, and he goes out, and he starts building homes in the
> community he had grown up in. That's the same year Shawn Paul Humphries is up for his
> second probation violation and sent down to Columbia.
>
> Then in 1988, July the 4th, they have a little baby girl named Ashley. You know,
> the Defense brought in a 12 year old stepdaugher -- stepsister, said, "Please don't
> put Shawn Paul Humphries in the electric chair." I'm sorry I did not feel it was
> appropriate to bring in a six year old girl Ashley and parade her in front of you.
> In 1988 Ashley is born. That's the same year Shawn Paul Humphries went
> to jail for two years. And in the spring of 1992, I believe, Dickie Smith, opens the
> doors to the Max-Saver, building a business in that community.

*Humphries v. Ozmint*, 366 F.3d 266, 271 (4th Cir. 2004).  The solicitor continued:

> when you look at the character of this Defendant, and when you look at Dickie Smith,
> how profane when you look at all the circumstances of this crime and of this Defendant,
> how profane to give this man a gift of life under these circumstances.

*Id*.  In initially reversing the conviction for ineffective assistance of counsel because he did not

object to the argument, the Fourth Circuit initially held:

> If the solicitor had merely used victim impact evidence to illustrate the "victim's
> uniqueness as an individual human being," *Payne*, 501 U.S. at 823 (internal quotations
> omitted), his actions would be beyond scrutiny. The prosecution could further have

independently challenged the character and criminal history of the defendant, and
Humphries' counsel would have had no grounds to lodge a sustainable objection.

*Id*.  Rather, it was the temporal proximity of the two arguments as well as the explicit request by

the prosecutor that the jury compare the two lives and make its sentencing decision based upon

that comparison that compelled two of the three judges on the panel to find that the comparative

worth arguments "were sufficiently prejudicial that they rendered the sentencing 'fundamentally

unfair.'"  *Id*., at 276.  The opinion by a two judge majority of the panel, however, did not end the

fight about the propriety of the arguments by the South Carolina prosecutor.  On February 4,

2005, an en banc panel of the Fourth Circuit vacated the two judge opinion and endorsed the

prosecutor's closing argument.  The en banc panel initially noted that:

> As noted earlier, Humphries claims that the solicitor's closing argument at the sentencing
> phase of the trial, taken as a whole, in effect asked the jury to impose the death penalty
> because Dickie Smith was a worthy individual and an asset to the community while
> Humphries was not. According to Humphries, such comparative worth arguments run
> afoul of the dictates of *Payne* and the Due Process Clause of the Fourteenth Amendment
> and, therefore, his trial counsel were constitutionally ineffective for failing to object to
> the solicitor's closing argument.

*Humphries v. Ozmint*, 397 F.3d 206, 219 (4th Cir. 2005).  The en banc panel went on to state:

> The statements were proper argument because the statements simply asked the jury to
> focus on Dickie Smith's uniqueness. Unquestionably, the solicitor was entitled to argue
> that Dickie Smith was unique. Moreover, the solicitor equally was entitled to ask the jury
> to "look" at Dickie Smith's uniqueness and to ask the jury to consider the consequences
> of "when" a person of Dickie Smith's uniqueness is "taken."

Id., at 222.  The Court also pointed out that:

> The Payne Court did not hold that all comparative worth arguments are unconstitutional.
> At most, the Payne Court disapproved of comparisons between the victim and other
> victims of society. 501 U.S. at 823.

Id., at 224.

3642

In *Jackson v. Warden of the Sussex I State Prison*, 2005 Va. LEXIS 107 (Va. 2005), the

Supreme Court of Virginia was confronted by a similar situation: a comparative worth argument

by a prosecutor in a death penalty case not objected to by the defense lawyer.  In that case, the

prosecutor argued that the victim was a "gift to the community" and that the defendant was

someone "who was given everything and only sought to take more."  In asking that the jury

impose a death sentence, the prosecutor argued that the jury should:

> weigh the life he had against what he has taken, and when you do you will know that the
> appropriate punishment for capital murder is death.

Id., at *25.  In affirming the conviction and sentence, the Supreme Court of Virginia held:

> This Court has previously held that "victim impact testimony is relevant to punishment in
> a capital murder prosecution in Virginia." *Weeks v. Commonwealth*, 248 Va. 460, 476,
> 450 S.E.2d 379, 389-90 (1994). The record, including the trial transcript, demonstrates
> that the Commonwealth's comments about the victim and petitioner were based on
> evidence already in the record. Petitioner does not argue that the comments, standing
> alone, were factually inaccurate or unsupported by the record. Petitioner concedes that
> the United States Supreme Court approved the use of victim impact evidence in *Payne v.*
> *Tennessee*, 501 U.S. 808, 111 S. Ct. 2597, 115 L. Ed. 2d 720 (1991), but argues there is a
> judicial movement towards recognizing that victim impact statements and argument
> could be "so unduly prejudicial that it renders the trial fundamentally unfair." *Id*. at 825.
> In support of this argument, petitioner asks this Court to consider *Humphries v. Ozmint*,
> 366 F.3d 266 (4th Cir. 2004). The United States Court of Appeals, however, has since
> vacated that panel opinion and affirmed the judgment of the district court, holding that
> the South Carolina Supreme Court did not err when it held that the solicitor's comparison
> of the defendant's life to that of the victim in closing argument during the sentencing
> phase did not render the trial fundamentally unfair. *Humphries v. Ozmint*, 397 F.3d 206,
> 226 (4th Cir. 2005) (en banc). Thus, petitioner has failed to demonstrate that counsel's
> performance was deficient or that there is a reasonable probability that, but for counsel's
> alleged error, the result of the proceeding would have been different.

Id.

**6. In response to defense argument #13, it is appropriate to ask the jurors to send a message.**

The defendant argues that the Court should prohibit the government from asking the jury to send a message with its penalty phase verdict. This defense argument misstates and misapplies the relevant law concerning the propriety of arguing that the jury should send a message with its verdict. The defendant sweeps too broadly with his objection. There is nothing inappropriate about asking a jury to send a message *to a particular defendant* with its sentencing verdict. Far from detracting from individualized sentencing considerations, a plea for a jury to send a message to this defendant focuses the jury on the particular defendant before them. Moreover, there is a split of authority concerning whether broader appeals to send a message constitute inappropriate argument. See *United States v. Chandler*, 996 F.2d 1073, 1095 (11th Cir. 1993); *United States v. Caro*, 461 F.Supp.2d 469 (WD VA 2006). In Caro, the District Court denied the defendant's motion in limine to preclude the government from arguing that the death penalty would serve as a deterrent to others, holding:

> On the merits of the defendant's motion, I find that it is not per se improper for the prosecutor to make an argument to the jury that the death penalty is a deterrent to others. *See United States v. Chandler*, 996 F.2d 1073, 1095 (11th Cir. 1993). On the other hand, any argument that misrepresents the jury's role in sentencing by suggesting that jurors abandon their duty to consider the individual case before them must be avoided. *See Brooks*, 762 F.2d at 1414 (holding improper prosecutor's exhortation to jury in penalty phase of capital case to consider themselves as soldiers in a "war on crime"). The prosecutor must be careful to eschew arguments that either by their nature or emphasis, divert the sentencing jury from its central task of administering individualized justice.

*United States v. Caro*, 461 F.Supp.2d 469 (WD VA 2006).

The "send a message" to the community argument has also been repeatedly endorsed by multiple jurisdictions. The Supreme Court of Mississippi revisited, and clarified, its position regarding the propriety of arguing to impose a death sentence to send a message to the

community, *during the penalty phase of a capital trial*. *See Humphrey v. State*, 759 So.2d 368,

373-74 (Miss. 2000). In that case, at the penalty phase of a capital trial, the prosecutor argued:

> So what is the proper punishment? These are your options. If you follow them, follow
> this road map, you'll get there. And no one, no one, folks, has the right to second guess
> any decision you make. All we want you to do is what's right. My view of the case,
> obviously, you know by now. I've seen too much of this for the 20 years that I've served
> as prosecutor in this District, way too much of it. Somehow, some way, it's just got to
> stop. It's got to stop. Maybe, just maybe, the sentence of death comes out of that jury
> room, there's somebody who'll see or read about it who'll have second thoughts about
> going into someone else's house.

*Id*. At that point, the defendant objected, and the trial court sustained the objection because the

prosecutor was making a "send a message" argument. On direct appeal, the Supreme Court of

Mississippi clarified its position regarding the propriety of such an argument at the penalty phase

of a capital trial.

> During the guilt phase of the trial the role of the jury is to weigh the evidence and to
> apply the law, not to "send a message," as this Court has made clear. *Williams v. State*,
> 522 So. 2d 201, 209 (Miss. 1988). The situation is much different during the sentencing
> phase of the trial. In this case the alleged send a message argument occurred during the
> sentencing phase of the bifurcated trial, after the determination of guilt had been made by
> the jury, and during consideration of the death penalty. Prosecutors have been allowed
> the use of send a message type arguments during the sentencing phase of a trial. We have
> noted that
>
> . . . the danger inherent in the "send a message" argument is that jurors will neglect their
> duty to determine whether "the evidence showed the defendant to be guilty of the crime
> charged." 522 So. 2d at 209. This danger does not exist at the sentencing phase, where
> the defendant has already been found guilty of capital murder. The sole determination to
> be made at this point is whether the death penalty should be imposed. We choose not to
> fault the prosecution for arguing that the "message" conveyed by a death penalty verdict
> would be different than that urged by the defense. To do so would be disingenuous given
> the inescapable reality that deterrence is, in fact, an established goal of imposing the
> death penalty, which goal necessarily entails, to some extent, sending a message. The
> trial court did not err in permitting this argument by the prosecution. *Wells v. State*, 698
> So. 2d 497, 513 (Miss. 1997).
>
> Where the purpose of the statement is to help determine whether the death penalty
> should be imposed, the prosecution is permitted to argue that the "message" conveyed by
> the death penalty verdict would be different than that of a lesser sentence. *Id*. This is

26

3645

precisely the situation in the present case. Therefore this assignment of error is without merit.

Id., at 374.

In *Greene v. State*, 146 S.W.3d 871 (2004), the Supreme Court of Arkansas had a chance to revisit its prior decisions dealing with the propriety of making a "send a message" argument in the context of a capital trial.  In that case, in closing arguments at the defendant's final sentencing hearing, the State asked the jury to send a message. The prosecutor stated:

> If someone comes into our community from off somewhere and does this to one of our citizens, I think we should tell them, "You get the maximum penalty here." Giving the maximum penalty discourages and deters other people from doing things like this to sixty nine year old retired ministers in Johnson County.

*Id*., at 879.  In affirming the propriety of such an argument, the Supreme Court of Arkansas held:

> The prosecutor's comments were nothing more than a call to the jury to enforce the law, which is permissible. *See Muldrew v. State*, 331 Ark. 519, 524, 963 S.W.2d 580, 582-83 (1998). In *Muldrew,* appellant argued that the prosecutor appealed to the jury's passions by improperly including in his closing statement a "send a message" theme. *Id*. at 523, 963 S.W.2d at 582. This court has continually affirmed the State's ability to use a "send a message" theme in closing arguments. *Muldrew* at 524, 963 S.W.2d at 582; *See Lee, supra*.

Id.  *See also McGee v. State*, 774 S.W.2d 229, 240 (Tex. Crim. App. 1989); *Murray v. State,* 2011 Tex. App. LEXIS 4201 ( A prosecutor's argument asking the jury to send  a message to the community that violence will not be tolerated is a proper plea for law enforcement).

The distinction between a "send a message" to the community argument and a "send a message" to this defendant argument should also be noted.  It is appropriate for a prosecutor to argue that a sentencing jury should send a message *to this defendant*.  *See Commonwealth v. DeJesus*, 860 A.2d 102 (Pa. 2004).  In that case, the Supreme Court of Pennsylvania announced a new rule, for Pennsylvania, categorically prohibiting a prosecutor from arguing that a jury should sentence a defendant to death to send a message to the community.  In the course of

announcing the new rule, the Court was careful to distinguish an argument that a jury should

send a message to the particular defendant.

> Similarly, in *Peterkin* this Court concluded that, while a prosecutor may not exhort a jury to send a message to the judicial system, he may urge them to send a direct message to the defendant. 649 A.2d at 129. There, the prosecutor asked the jury to "send out a message about the conduct engaged in by [the defendant] as he sits passively at that table, [that his conduct] cannot be condoned among civilized men." Id. In distinguishing this remark from similar "send a message" arguments that this Court had deemed improper, *see Crawley*, 526 A.2d at 344, we noted that the prosecutor's comments, viewed in context, had merely asked the jury to send a message to the defendant. Indeed, we noted that in his very next sentence the prosecutor said, "tell [the defendant] what you did, when you did it, how you did and for the reason that you did it you must die." *Id.*
>
> The Peterkin issue is not presented in the case sub judice: the prosecutor here did not exhort the jury to send a message to appellant. Arguably, the *Zettlemoyer/ DeHart* situation also is not strictly at issue, as this was not an argument concerning the general "deterrent effect" of the death penalty. We would not overstate this distinction, however. We acknowledge that "send a message" and "deterrent effect" arguments are related in that they suggest that such an external factor may properly play a role in the jury's determination of life or death.

*DeJesus*, 860 A.2d at 116.

7. **In response to defense argument #14 regarding asking the jury to vote for death to satisfy the expectations of the community, it is appropriate to speak about collective judgments and conscience of community.**

The defendant argues that the Court should prohibit the government from asking the jury

to vote for death to satisfy the expectations of the community.  This defense argument misstates

and misapplies the relevant law concerning the role that the jury plays in representing the voice

of the community.  It proper argument for the prosecution to remark that the jury is the voice of

the community.  *See An Duy Nguyen v. Evans,* 2009 U.S. Dist. LEXIS 29339 (N.D. CA 2009);

*United States ex rel. Pierce v. Goskie*, 1999 U.S. Dist. LEXIS 6850 (N.D. Ill. 1999).  In *An Duy*

*Nguyen v. Evans*, a murder case, the defendant complained on appeal that the prosecutor's

closing argument appealing to the jury as the voice of the community tainted his trial.  The

prosecutor argued:

The other issue that sometimes comes up and it got brought up, and a lot of times jurors who sit in a case like this, you know, you see societal issues, you say why do people become gang members, why do people join gangs, how do you get out of gangs, how do you get out of that life style? You know what, why the defendant became a gang member, you know, what society should do about it is a topic you could have at any point in time. But it has really no bearing on your verdict. Your verdict here today is to decide what the defendant did and what is his motivation for what he did. And I just need you to recognize it.

You are here as the voice of this community to deal with this issue. This gang violence has been going on for 10 years between these two gangs. And gangsters have their own justice. We saw, we heard about Viet Mai. Seven months later he shot Truong Nguyen down the street. We know what happened when Nick Dang was killed by some Asian Warriors. You'll probably be reading a paper six, seven months from now and you're going to hear about some Asian Warrior that was killed in retaliation for Nick Dang. But in the criminal justice system as the voice of this community you have to stand up and say no more. This community is not going to accept this. You need to bring justice to this situation. You need to bring justice to Vu Pham's family for the violence and the tragedy that they've had to take because of the actions of that young man. You need to hold him accountable. Justice demands that you hold him accountable. And the law and the evidence in this case does as well.

When you look at the evidence, ladies and gentlemen, you're going to find that the only reasonable interpretation of the evidence you've heard in this case is that the defendant and his gang members coordinated and attacked these Asian Warriors who had the audacity to be in their coffee shop.

*Id.*, at 37. The state appellate court determined that the italicized text was not an impermissible invitation for the jurors to step outside their role as objective fact finders, when the challenged remarks were viewed in context. *Id.*, at 38. In the context of habeas review, the United States District Court held that:

When read in context, and in conjunction with the instruction that the jurors were not to be influenced by passion and prejudice, RT 704, the challenged statements did not make the trial fundamentally unfair. The gang component of this case was at the forefront throughout the trial, and its mention in the closing argument was not inflammatory.

*Id.*, at 40.

It is also appropriate for the government to argue that a death sentence rests upon the collective judgment of the jury. *Johnson*, 495 F. 3d at 979. In *Johnson*, the defendant argued

that the prosecutor diminished the jurors' sense of responsibility for the verdict by stating, "[a]nd

if you choose the death penalty, you choose it as a group. It doesn't rest on the shoulders of any

one of you." He also remarked that "[t]here's courage in numbers." The Court held that the

comments were not improper, stating:

> While "it is constitutionally impermissible to rest a death sentence on a determination
> made by a sentencer who has been led to believe that the responsibility for determining
> the appropriateness of the defendant's death rests elsewhere," such as an appellate court,
> *Caldwell v. Mississippi*, 472 U.S. 320, 328-29, 105 S. Ct. 2633, 86 L. Ed. 2d 231 (1985),
> that was not what the prosecutor was doing here. The prosecutor was instead reposing the
> responsibility upon the jury, where it belonged. Furthermore, while the prosecutor
> emphasized the collective nature of jury deliberations and the fact that a verdict of death
> could not be returned unless the jury as a whole determined that it was appropriate, the
> prosecutor also acknowledged that the decision to vote for death would also have to be
> made by the jurors individually.

Id.

Furthermore, although the prosecution may not appeal to the jury's passions and

prejudices, the prosecution may appeal to the jury to act as the conscience of the community.

*United States v. Davis*, 609 F.3d 663, 688 (5th Cir. 2010); *Jackson v. Johnson*, 194 F.3d 641, 654

(5th Cir. 1999) (the prosecution may appeal to the jury to act as the conscience of the

community).

8. **In response to defense argument #15 regarding suggesting that the jurors have a
   civic duty to return a sentence of death, if the jury determines the aggravating
   factors outweigh the mitigating factors, the jury does have a civic duty to return
   a sentence of death.**

The defendant argues that the Court should prohibit the government from suggesting that

the jurors have a civic duty to return a sentence of death.  This defense argument misstates and

misapplies the relevant law concerning the statutory scheme and substance of the FDPA.  Indeed,

if the jury determines that the aggravating factors outweigh the mitigating factors, the jury does

have a civic, and statutory, duty to return a sentence of death.

30

The mandate of the FDPA is clear:

> the jury, or if there is no jury, the court, shall consider whether all the aggravating factor or factors found to exist sufficiently outweigh all the mitigating factor or factors found to exist to justify a sentence of death, or, in the absence of a mitigating factor, whether the aggravating factor or factors alone are sufficient to justify a sentence of death. Based upon this consideration, the jury by unanimous vote, or if there is no jury, the court, shall recommend whether the defendant should be sentenced to death, to life imprisonment without possibility of release or some other lesser sentence.

18 U.S.C. § 3593(e).  Moreover, the FDPA also makes clear that a defendant:

> shall be sentenced to death if, after consideration of the factors set forth in section 3592 [18 USCS § 3592] in the course of a hearing held pursuant to section 3593 [18 USCS § 3593], it is determined that imposition of a sentence of death is justified, except that no person may be sentenced to death who was less than 18 years of age at the time of the offense.

Id. at § 3591(a).

A sentencing jury may factor in mercy in the context of the balancing process required during the sentencing phase as outlined in 18 U.S.C. § 3593.  The statutory scheme of the FDPA itself provides that the jury exercises complete discretion in determining whether aggravating factors (if found) sufficiently outweigh any mitigating factors to justify a sentence of death.  It is within that context, and that context alone, that mercy may enter into the death penalty process. The FDPA does not, however, provide a separate mechanism for jurors to disregard their aggravating and mitigating analysis and impose a sentence less than that which is justified by their own deliberations.

The Eighth Circuit considered this precise issue in *United States v. Allen*, 247 F.3d 741, 780 (8th Cir. 2001), *judgment vacated and remanded on other grounds*, 122 S. Ct. 2653 (2002), *see also United States v. Caro*, 483 F.Supp. 2d 513, 517-18 (W.D. Va. 2007).  In *Allen*, the defendant argued that the district court erred in failing to submit to the jury his tendered "mercy instruction" which would have informed the jury that they never are required to impose a

31

sentence of death. Apparently, the defendant's proposed "mercy" instruction closely followed

the language in the Title 21 statute and would have instructed the jury that "regardless of its

findings with respect to aggravating and mitigating factors, it is never required to impose a death

sentence." *Allen*, 247 F.3d at 780. The Court rejected the defendant's request and held that under

the FDPA, the jury exercises complete discretion in its determination of whether the aggravating

factors outweigh the mitigating factors. The jury was informed that whether or not the

circumstances justify a sentence of death was a decision left entirely to them. Mercy is not

precluded from entering into the balance of whether the aggravating circumstances outweigh the

mitigating circumstances. The FDPA merely precludes the jurors from arbitrarily disregarding

its unanimous determination that a sentence of death is justified. The Court in *Allen* held:

> **Based upon the plain language of the statute, once a jury makes a final,
> unanimous determination that a sentence of death is justified, then the FDPA
> requires its imposition**. See 18 U.S.C. § 3594 (requiring that once a recommendation of
> death or life imprisonment is made, "the court shall sentence the defendant accordingly").

*Allen*, 247 F.3d at 781 (emphasis added). Accordingly, once the jury determines that the

aggravating factors outweigh the mitigating factors, they are directed to return a sentence of

death.

> **9. In response to defense argument # 16, commenting on the costs or comforts of
> life imprisonment may be appropriate argument depending upon the evidence
> and defense closing argument.**

The defendant argues that the Court should prohibit the government from commenting on

the costs or comforts of life imprisonment. The government suggests that it is premature to

make a ruling on the propriety or making such an argument without the benefit of (1) hearing the

evidence admitted in the guilt and penalty phase and (2) the defense closing argument. It is quite

possible that such an argument would be a proper comment upon the evidence as well as an

appropriate response to a defense argument. It is simply impossible, at this stage of the

32

proceedings, to speculate on the evidence that may, or may not, be admitted at trial or during any

penalty phase.

For example, Mark Bezy is an expert often retained by the defense in death penalty cases.

Mr. Bezy has testified in a great number of federal capital cases as a defense expert touching on

issues of prison life.  *See United States v. Aquart, United States v. Wilson*, *United States v. Alexis*

*Candelario-Santana, United States v. Mark Snarr & Edga Garcia, United States v. Xavier*

*Jimenez-Bencevi, United States v. Larry Lujan, United States v. McCluskey, United States v.*

*Umana, and United States v. Naeem Williams.*  Mr. Bezy has consistently testified about the

conditions of confinement at different United States Penitentiaries, the Administrative Maximum

Facility at Florence, Colorado (ADX), as well as the Special Housing Units (SHU).  For

example, in *United States v. Larry Lujan*, No: CR 05-924, September 27, 2011, pg. 43, Mr. Bezy

was asked in the penalty phase of a federal capital trial:

> Q.      So what's the daily regimen and what are the conditions of confinement in a
>         SHU?

At page 50, Mr. Bezy was asked:

> Q:      All right. And this is -- where do you -- what kind of conditions of confinement
>         do you start at in an SMU?

At page 55, Mr. Bezy was asked:

> Q.      And what are the conditions like there? [Special Confinement Unit]

At page 56, Mr. Bezy was asked:

> Q.      What are the conditions of confinement, then, for someone that a warden said:
>         Look, this person, even in a high security prison, needs additional control and
>         restraint? What would the conditions be for that person?

In short, Mr. Bezy, as part of a larger defense penalty phase strategy, has frequently opined on

the conditions of confinement a prisoner serving a life sentence might expect to encounter within

the BOP establishment.  Such testimony would unquestionably invite the government to present

appropriate rebuttal evidence and argument as well as to appropriately characterize those

conditions of confinement vis-à-vis the comparative luxuries of those facilities such as

television, exercise opportunities, crafting opportunities, as well as other amenities that could

potentially be available.

An apt example is the case *United States v. Aquart*, 2012 U.S. Dist. LEXIS 23851  (D.

Conn. 2012) in which Mr. Bezy testified.  In that case, the defense filed the same motion

addressed here to "prohibit specified types of prosecutorial misconduct in penalty phase

summation."  *See United States v. Azibo Aquart,* No. 3:06 CR 160, May 22, 2011, Doc. 827.

Subsequently, in the penalty phase, the prosecutor argued:

> Second, the defendant states that life imprisonment is severe punishment. What you
> learned about life imprisonment you learned from the defendant's expert, Mark Bezy, and
> from Anthony Armstead. What you heard is that the cell doors open at 5:00 a.m. and they
> stay open until approximately 9:00 p.m. During that time period the inmates can work,
> attend classes, play basketball, play[] handball, shop in the commissary, go to the law
> library, go to the yard, hang out in common areas, watch TV, talk and play cards. Inmates
> can write letters, talk on the phone, and receive visitors. They're fed.
>
> So is prison restrictive? Yes. But the government submits that, again, does not mitigate
> the fact that the defendant callously and viciously murdered three human beings.

*United States v. Aquart*, 2012 U.S. Dist. LEXIS 23851  at 14-15.  Defense counsel objected

immediately.  The Court overruled the objection and in a side-bar conference, stated:

> the mitigator has been that life in prison is harsh. [AUSA Dayton] is taking the evidence
> that has been adduced that may bear against a finding that that mitigator has been proved
> or that it mitigates. I do not understand her argument to be implying that the jury should
> consider the cost of food, shelter and so forth, . . to the extent she limits it to the
> harshness as opposed to claiming that it would not be sufficient justice . . . I don't think
> that the objection should be sustained so long as [the argument is] confined to rebutting
> that mitigator.

Id.

34

As previously discussed, all arguments are inextricably entwined with the facts of any given case, the evidence introduced by the defense, as well as the argument of defense counsel and the scope of any proper rebuttal.  Moreover, the defendant mischaracterizes the legal authority he relies upon.  For example, defendant relies upon the Eighth Circuit Court of Appeals ruling in *United States v. Johnson*, 495 F.3d 951, 979 (8th Cir. 2007) and  describes the ruling as:

> (direct appeal of federal judgment of death government "strayed over the line" and "went beyond the bounds of permissible argument," in government noting that ten, twenty, thirty years from now the child victims will still be dead and arguing "No matter how small [the defendant's] cell may be, it's going to be larger than the coffin that [the victims] are laying [sic] in now.").

Doc. 885-1, pg 33.  In fact, the full discussion of the prosecutors penalty phase closing argument was as follows:

> Johnson argues further that the prosecutor improperly encouraged the jury to impose the death penalty based on sympathy for the victims. **During closing arguments, Johnson's counsel attempted to underscore the gravity of a life sentence, essentially contending that Johnson had a long time left to live and that with each passing year Johnson would miss various milestones and events in the life of her family, knowing that she had only herself to blame.**  The prosecutor responded to this argument during rebuttal by remarking that ten, twenty, and thirty years from now, the victims would still be dead and Kandi and Amber would still be ten and six-years old. The prosecutor also added, "No matter how small Angela Johnson's cell may be, it's going to be larger than the coffin that Amber and Kandi Duncan are laying [sic] in now." These remarks strayed over the line. **Although the government was entitled to respond to Johnson's portrait of a miserable thirty years behind bars, it should not have used the victims' plights to do so.** *See Bland*, 459 F.3d at 1028 ("[I]t is prosecutorial misconduct for the prosecution to compare the plight of [a murder] victim with the life of the defendant in prison."). As Johnson notes, the prosecutor's comments closely resemble remarks the Tenth Circuit criticized in *Le*, 311 F.3d at 1014-15. In that case, the prosecutor stated that the following year the defendant would be one year  older, but the victim would remain "34 years old from now until eternity. He will always be 34." Id. Later, the prosecutor said, "Defense counsel has asked you to sentence [sic] a punishment of life imprisonment or life without parole,  but do you really think that justice would be done if this man goes to prison, gets three meals a day and a clean bed every night and regular visits from his family while Hai Nguyen lays cold in his grave[?]" Id. at 1015. The prosecutor's comments in this case, like those in Le, went beyond the bounds of permissible argument. Nevertheless, because the senseless and unspeakably brutal deaths of the two small children would naturally and inevitably evoke deep sympathy from the jury, those brief comments were not likely to

evoke to any further appreciable degree the jury's sympathy for the victims. *See Walker v. Gibson*, 228 F.3d 1217, 1243 (10th Cir. 2000) (concluding that although the prosecutor encouraged the jury to base its decision on sympathy for the victim, sympathy would have been engendered by the nature of the crime, even without the prosecutor's unfortunate remarks). We therefore conclude that the remarks, while questionable, did not infect the selection phase of Johnson's trial with unfairness and were not significant enough to constitute plain error.

In using *Johnson* as authority to try to preclude any argument or comment concerning the "comforts" of prison life, the defendant improperly attempts to bootstrap his argument using language that discusses the impropriety of a comparison to the victim's grave, not the actual conditions of confinement.  Clearly, the Eighth Circuit held that the government had a right to "respond to a portrait of a miserable thirty years behind bars," noting that it should not have done so by a comparison to the victims grave.  The clear holding of *Johnson*, the government suggests, supports the government's ability to argue that the defendant's life behind bars, far from being a life of unmitigated misery, would be comforted by (1) visits with family, (2) television, (3) recreation events, (4) and other circumstances that make life bearable, if not enjoyable.

In contrast, the government points to *State v. Alston*, 341 N.C. 198, 461 S.E. 2d 687 (1995) in which the Supreme Court of North Carolina considered, in the context of a death penalty case, the prosecutors argument discussing the comforts of prison.  In that case, the prosecutor argued:

> The only way you can be sure that this man will never walk out again is to give him the death penalty.  Oh, you might say, let's let him have life in the penitentiary. Do you know where the word penitentiary came from? The same root word as penitent. You see, the notion was when we built penitentiaries hundreds of years ago, that we would lock people up in a cell for a while and let them be penitent, and think about what they had done, and they would rationally come out and be different people. I argue and I suggest to you, members of the jury, it's difficult to be penitent with televisions, and basketball courts, and weight rooms. It's difficult to be penitent –
>
> [DEFENSE COUNSEL]: Your honor, I object.
>
> [PROSECUTOR]: -- when you stand around and rap all day --

36

COURT: Ladies and gentlemen, again, you will take your instructions on the law from the court. The attorneys have an opportunity to argue to you what they contend the punishment should be.

[PROSECUTOR]: It's difficult to be penitent, members of the jury, sitting around rapping.

*Alston*, 341 N.C. at 251, 461 S.E. 2d at 716. In upholding the propriety of the argument, the

Court held:

> The prosecutor's subsequent argument that it is hard to be penitent with televisions, basketball courts, and weight rooms emphasized the prosecution's position that life in prison was not an adequate punishment. In *State v. Reeves*, 337 N.C. 700, 448 S.E.2d 802 (1994), cert. denied, ___ U.S. ___, 131 L. Ed. 2d 860 (1995), this Court upheld an argument in which the prosecutor commented that if sentenced to life, the defendant would have a "cozy little prison cell . . . with [a] television set, air conditioning and three meals a day." *Id.* at 732, 448 S.E.2d at 817. As in *Reeves*, we hold that the argument did not relate to general deterrence, but served to emphasize the State's position that the defendant deserved the penalty of death rather than a comfortable life in prison. In light of the wide latitude accorded prosecutors during their arguments, we find that the defendant has failed to show that the prosecutor's argument was improper, or that the trial court abused its discretion in allowing it.

*Id*. *See also United States v. Higgs*, 353 F.3d 281, 332 (4th Cir. 2003) (summarily rejecting a

claim that the government improperly argued that imprisonment would be "soft" in view of the

privileges available to the defendant as an inmate).

### 10. In response to defense argument #17, limited references to religious authority can be appropriate rebuttal argument.

The government agrees that reliance upon the Bible or other religious writing in support

of the imposition of the death penalty is error. However, limited reference to religious authority

can be appropriate rebuttal to a religious based defense argument against the death penalty.

In *Kindler v. Horn*, 291 F. Supp. 2d 323, 364 (E.D. Pa. 2003) the District Court

considered the propriety of a prosecutors rebuttal argument in response to a defense argument.

In that case, the prosecutor argued in rebuttal:

37

Sometimes words and adverbs slipping in, perhaps attempts to place in your mind some kind of feeling of, jeez, maybe I'll do something wrong; am I really that way, or I shouldn't do it because it will make me seem like I'm eager to punish or I'm out for retribution and I don't want it and another thing is if your Christian values say not to come back with the death penalty.

Well, ladies and gentlemen, I in no way and in no case at all, inasmuch as I'm a Christian myself, suggest that there is not an important phase, an important consideration of Christian values. But what we are concerned with now and the testament and the Bible will tell you that there is law in the city and there's a law of God. There is a law of this land and there is a law that we must act through this land, a spiritual law and that being the law of God. But the law that we are concerned with now, the law that convicted both of these defendants is not Christian law, so to speak, but the law of the land which you have got to abide by and apply.

Id., at 364. In rejecting the challenge to the prosecutor's remarks in this death penalty case, the

United States District Court for the Eastern District of Pennsylvania held:

Considering the prosecutor's argument in the context of the whole and in view of Mr. Kindler's counsel's remarks, we do not find error of constitutional proportions. Instead, it appears that Mr. McGill's statement was indeed tailored to counter that of Mr. Alva and operated to remind the jury that the law which they were being charged with applying was not canon law. We therefore deny the petition for writ of habeas corpus on the basis of these remarks.

Id.

In *Barnett v. Roper*, 2006 U.S. Dist. LEXIS 60130 (E.D. Mo.), The District Court for the

District of Missouri considered whether a prosecutors invocation of God's name during the guilt

phase closing argument in a capital trial was so prejudicial as to require reversal. The prosecutor

argued that:

Clifford and Leona Barnett had a right to peacefully and sweetly live out their lives on God's terms. They were horribly and brutally murdered on his [Barnett's] terms.

Id., at *204. In reiterating that parties should avoid making reference to the bible and other

religious doctrine, but refusing to set aside the conviction or death sentence, the Court stated:

closing arguments of counsel, are seldom carefully constructed in toto before the event; improvisation frequently results in syntax left imperfect and meaning less than crystal

38

clear. While these general observations in no way justify prosecutorial misconduct, they do suggest that a court should not lightly infer that a prosecutor intends an ambiguous remark to have its most damaging meaning or that a jury, sitting through lengthy exhortation, will draw that meaning from the plethora of less damaging interpretations.

Id., at *205.

### 11. In response to defense argument #26, it is appropriate to argue that mercy is never appropriate under the facts of this case.

The defendant argues that the Court should prohibit the government from arguing that mercy is never appropriate in this case. This defense argument misstates and misapplies the relevant law concerning the role that mercy plays in any death penalty case.

A sentencing jury may factor in mercy in the context of the balancing process required during the sentencing phase as outlined in 18 U.S.C. § 3593. The statutory scheme of the FDPA itself provides that the jury exercises complete discretion in determining whether aggravating factors (if found) sufficiently outweigh any mitigating factors to justify a sentence of death. It is within that context, and that context alone, that mercy may enter into the death penalty process. The FDPA does not, however, provide a separate mechanism for jurors to disregard their aggravating and mitigating analysis and impose a sentence less than that which is justified by their own deliberations.

The Eighth Circuit considered this issue in *United States v. Allen*, 247 F.3d 741, 780 (8th Cir. 2001), judgment vacated and remanded on other grounds, 122 S. Ct. 2653 (2002). In *Allen*, the defendant argued that the district court erred in failing to submit to the jury his tendered "mercy instruction" which would have informed the jury that they never are required to impose a sentence of death. Apparently, the defendant's proposed "mercy" instruction closely followed the language in the Title 21 statute and would have instructed the jury that "regardless of its findings with respect to aggravating and mitigating factors, is never required to impose a death

sentence." *Allen*, 247 F.3d at 780.  The Court rejected the defendant's request and held that under

the FDPA, the jury exercises complete discretion in its determination of whether the aggravating

factors outweigh the mitigating factors. The jury was informed that whether or not the

circumstances justify a sentence of death was a decision left entirely to them.  Mercy is not

precluded from entering into the balance of whether the aggravating circumstances outweigh the

mitigating circumstances.  The FDPA merely precludes the jurors from arbitrarily disregarding

its unanimous determination that a sentence of death is justified. The Court in Allen held:

> Based upon the plain language of the statute, once a jury makes a final,
> unanimous determination that a sentence of death is justified, then the FDPA requires
> its imposition. See 18 U.S.C. § 3594 (requiring that once a recommendation of death
> or life imprisonment is made, "the court shall sentence the defendant accordingly").
> Allen argues that the language in § 3593(e) requires a jury to make two
> decisions--first, whether a sentence of death is justified and second, whether a
> sentence of death should actually be imposed. Although § 3593(e) could lend itself
> to this interpretation when read in isolation, we reject this interpretation as
> inconsistent with the Act as a whole. See Harmon Indus., Inc. v. Browner, 191 F.3d
> 894, 900 (8th Cir.1999) (noting that we apply common sense meaning to the text of
> statutes and interpret provisions "in a manner logically consistent with the Act as a
> whole"). Allen's two-decision interpretation of § 3593(e) would allow the jurors to
> disregard a unanimous determination that a sentence of death is justified. We
> conclude that such an interpretation contradicts the language of § 3591(a)(2), stating
> that a defendant shall be sentenced to death if the fact finder determines that a
> sentence of death is justified after weighing the aggravating and mitigating
> circumstances. To consistently harmonize the two sections, we must read § 3593(e)
> as specifying the jury's options within this framework. We already know from §
> 3591(a)(2) that a unanimous finding that death is justified requires a recommendation
> of a death sentence. The jury's remaining options, then (life imprisonment without
> possibility of release or some other lesser sentence), are only valid options for the
> jury to recommend if the balancing process favors the mitigating factors and does not
> justify a sentence of death.

*Allen*, 247 F.3d at 781.

The Fourth Circuit Court of Appeals also considered this issue in *United States v. Caro*,

597 F.3d 608, 631 (4th Cir. 2010).  In that case, the defendant offered the following instruction:

> [W]hatever findings you make with respect to the aggravating and mitigating factors, you
> are never required to impose a sentence of death. For example, there may be something

40

about this case or about Carlos David Caro that one or more of you are not able to identify as a special mitigating factor, but that nevertheless creates a reasonable doubt about the need for Carlos David Caro's death. In such a case, the jury should render a decision against a death sentence. Moreover, even when a sentence of death is fully supported by the evidence, Congress has nevertheless given each of you the discretion to temper justice with mercy. Any one of you is free to decide that a death sentence should not be imposed in this case for any reason that you see fit. You will not have to explain the reason. Indeed, I am specifically required by law to advise you that you have this broad discretion.

*Id*. The District Court rejected the proposed instruction holding that the instruction was

"improper because it would have told the jury that it could base its determination on factors not

specified in the FDPA." *United States v. Caro*, 483 F.Supp. 2d 513, 517-18 (W.D. Va. 2007). In

affirming the District Court, the Fourth Circuit held:

> Caro argues that § 3593(e)'s two-sentence structure creates a two-step process whereby (1) the death penalty might be found justified, with aggravating factors sufficiently outweighing mitigating factors, but (2) the jury might nonetheless impose a lesser sentence out of mercy. Conversely, the district court interpreted §§ 3591 and 3593(e) together to mean that, once the death penalty has been found justified because aggravating factors sufficiently outweigh mitigating factors, the death penalty must be imposed.
>
> We find Caro's interpretation unpersuasive. First, the opening clause of § 3593(e)'s second sentence, namely, "Based on this consideration," refers back to the preceding sentence and thereby implies that when selecting a sentence the jury may consider only whether the death penalty is justified. 18 U.S.C. § 3593(e) (emphasis added). Second, § 3591 states plainly that an eligible defendant "shall be sentenced to death if . . . it is determined that imposition of a sentence of death is justified," 18 U.S.C. § 3591, and we are obliged to read §§ 3591 and 3593(e) in harmony, see Smith v. United States, 508 U.S. 223, 233, 113 S. Ct. 2050, 124 L. Ed. 2d 138 (1993) ("Just as a single word cannot be read in isolation, nor can a single provision of a statute."); King v. St. Vincent's Hosp., 502 U.S. 215, 221, 112 S. Ct. 570, 116 L. Ed. 2d 578 (1991) (noting "the cardinal rule that a statute is to be read as a whole since the meaning of statutory language, plain or not, depends on context" (citations omitted)). See United States v. Allen, 247 F.3d 741, 780-81 (8th Cir. 2001) (interpreting § 3593(e) the same way based on § 3591), vacated on other grounds, 536 U.S. 953, 122 S. Ct. 2653, 153 L. Ed. 2d 830 (2002). Because Caro's proposed instruction was legally incorrect, the district court's refusal to give that instruction was not an abuse of discretion.

*Caro,* 597 F.3d at 632-33.

3660

The District Court in *United States v. Sampson*, 335 F.Supp. 2d 166 (D. Mass. 2004) also rejected the defendant's request for a mercy instruction. The court held that "the statute directs the jury to make a unanimous recommendation '[b]ased upon this consideration' of aggravating and mitigating factors. 18 U.S.C. § 3593(e). The statute does not identify any other permissible considerations. To permit the jury to consider matters other than the relative weight of aggravating and mitigating factors found during jury deliberations risks the arbitrary and capricious imposition of death sentences based on unspecified criteria." Id., 335 F. Supp. 2d at 239.

In the context of penalty phase arguments, different District Courts have considered the issue as well. *See United States v. Aquart*, 2012 U.S. Dist. LEXIS 23851 (D. Conn. 2012). In that case, the defendant sought to set aside the penalty phase verdict based upon his claim that the prosecutor engaged in misconduct in making her closing argument. The defendant argued that the government's rebuttal summation "improperly suggested that the defense bore the burden of establishing that life was the appropriate sentence" by telling the jurors that Aquart was not "entitled" to their mercy. The prosecution argued:

> They have asked you for mercy, and again, there is no doubt that you are all capable of mercy. The law, as Mr. Sheehan pointed out in the slides, and as the Judge instructed you, the law entitles you to temper justice with mercy, but it does not require you to do so.

*Id.*, at 27. The prosecutor continued, "What about this defendant entitled him to any mercy? What about what the defense has presented entitles the defendant to your mercy? Nothing." *Id*. In rejecting the defendants complaint to the prosecutions argument against mercy, the Court held:

> The Government contends that it did not argue that Mr. Aquart "did not deserve mercy as a matter of law, rather, that it argued that Aquart did not deserve mercy as a matter of

42

fact,"and thus that it did not "shift the burden" to Defendant. (Gov't Opp'n at 22 (emphasis in original)). The Government also states that its arguments were made "in direct response" to the defense's statement that no one can "earn" mercy. (Id.)

Viewing the arguments and the Court's instructions, it is difficult to see how reasonable jurors would have misunderstood that a death sentence was the "default" here. The jury was clearly instructed by the Court, which was reiterated by defense counsel, that they were under no obligation to impose a death sentence, and the Government's statements were not such as to overbear that instruction.

*Id.* Accordingly, a defendant has no right to mercy, and it is perfectly appropriate for the government to argue that the mercy is never appropriate under the facts of a particular case.

**F.** **CONCLUSION**

For the reasons set forth above, the defendant's motion in limine to prohibit specified types of prosecutorial misconduct in penalty-phase summation should be denied.

Respectfully submitted,

DAVID CAPP
UNITED STATES ATTORNEY

/s/ David J. Nozick
David J. Nozick
Assistant United States Attorney
5400 Federal Plaza, Suite 1500
Hammond, IN 46320
Tel. (219) 937-5655
www.david.nozick@usdoj.gov

LESLIE CALDWELL
ASSISTANT ATTORNEY GENERAL

/s/ Bruce R. Hegyi
Bruce R. Hegyi
Trial Attorney
Capital Case Unit
United States Department of Justice
1331 F Street, N.W., Sixth Floor
Washington, D.C. 20530
Tel. (202) 616-4582
Cell (703) 536-4774
www.bruce.hegyi@usdoj.gov

3662

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | NO. 2:11 CR 77 PPS |
| | ) | |
| JUAN BRISENO | ) | |

CERTIFICATE OF SERVICE

The undersigned hereby certifies that the Government's Response in Opposition to the

Motion In Limine to Prohibit Specified Types of Prosecutorial Misconduct in Penalty-Phase

Summation was electronically filed with the Clerk of the Court using the CM/ECF system which

sent notification of said filing to the following individuals:

ARLINGTON J. FOLEY
JOHN MAKSIMOVICH
(Attorneys for defendant Juan Briseno)

By:    /s/ Janet L. Eisenmann
Janet L. Eisenmann
U.S. Attorney's Office
5400 Federal Plaza, Suite 1500
Hammond, Indiana 46320
(219) 937-5500

44

3663

```
MIME-Version:1.0
From:CMECFinnd@innd.uscourts.gov
To:CMECFinnd@localhost.localdomain
Bcc:
--Case Participants: Pablo DeCastro (pdecastro@attorneydecastro.com,
ysierra@rascia-decastro.com), Kurt R Earnst (kre@braje-nelson.com), Matthew N Fech
(mnf@fech-law.com), Arlington J Foley (arlingtonfoley@att.net), Jack Friedlander
(jack@jackfriedlander.com, office@jackfriedlander.com), Bruce R Hegyi - AUSA
(bruce.hegyi@usdoj.gov), Roxanne Mendez Johnson (attorneyrmj@gmail.com), Scott L King
(dwilliams@scottkinggroup.com, sking@scottkinggroup.com), Visvaldis P Kupsis
(vpkupsis@hotmail.com), Dean R Lanter - AUSA (dean.lanter@usdoj.gov,
janet.eisenmann@usdoj.gov, usainn.ecfcivil@usdoj.gov), John Maksimovich
(criminallaw@johnmaksimovich.com), John E Martin - FCD (john_martin@fd.org), Sheldon B
Nagelberg (sbnagelberglaw@att.net), David J Nozick - AUSA (david.nozick@usdoj.gov,
janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov,
usainn.ecfcivil@usdoj.gov), Mark A Psimos (psimoslaw@airbaud.net), Robert L Rascia
(rrascia@rascia-decastro.com, ysierra@rascia-decastro.com), Stephen Edward Scheele
(pkd@gk4law.com, ses@gk4law.com), Paul Jeffrey Schlesinger (pjeffslaw@aol.com), Adam
Tavitas (adtavitas@aol.com, b.lynneadams@yahoo.com), John T Theis (theislaw@aol.com),
James N Thiros (jim@thiros.com, lynn@thiros.com), Bryan M Truitt (bryan@tblawyers.com,
sherrie@tblawyers.com), David E Vandercoy (david.vandercoy@valpo.edu), Thomas W Vanes
(b.lynneadams@yahoo.com, tom.vanes@sbcglobal.net), Ihor Alexander Woloshansky
(ihorlawyer@hotmail.com), Richard C Wolter (b.lynneadams@yahoo.com), R Brian Woodward
(carolb@wbbklaw.com, rbwoodward@wbbklaw.com), Magistrate Judge Andrew P Rodovich
(rodovich_chambers@innd.uscourts.gov, ruth_nagy@innd.uscourts.gov), Chief Judge Philip P
Simon (denise_woodside@innd.uscourts.gov, jacob_hamann@innd.uscourts.gov,
lauren_schwartz@innd.uscourts.gov, mira_serrill-robins@innd.uscourts.gov,
noel_collins@innd.uscourts.gov, philip_simon@innd.uscourts.gov)
--Non Case Participants: Matthew D Soliday (office@matthewsolidaylaw.com)
--No Notice Sent:

Message-Id:2720406@innd.uscourts.gov
Subject:Activity in Case 2:11-cr-00077-PPS-APR United States of America v. Briseno et al
Jury Trial - Sentence Enhancement Phase
Content-Type: text/html
```

### U.S. District Court Northern District of Indiana [LIVE]

### USDC Northern Indiana

### Notice of Electronic Filing

The following transaction was entered on 3/4/2015 at 5:53 PM EST and filed on 3/4/2015

| | |
|---|---|
| **Case Name:** | United States of America v. Briseno et al |
| **Case Number:** | 2:11-cr-00077-PPS-APR |
| **Filer:** | |
| **Document Number:** | 1511(No document attached) |

**Docket Text:**
 **JURY TRIAL – (17th DAY–PENALTY PHASE–2ND DAY) as to Juan Briseno held on 3/4/2015 before Chief Judge Philip P Simon. Parties present as previously noted. Rule 29 Motion argument continues. Ruling by the Court on Rule 29 Motion. Defense begins presentation of penalty phase evidence. Motion in Limine discussed regarding cross–exam concerning instances of violent conduct in prison. Argument heard, Court ruling. The videos that the Govt provided to the Court will be excluded. Defense continues to present evidence. Information regarding juror #129 provided to parties by the Court. Parties have no objection**

**to excusing juror #129 – juror #129 excused from further service in this trial. (Jury panel now consists of 12 regular jurors and 3 alternate jurors). Evidence concludes for the day. Jurors instructed to return on Thursday, 3/5/2015 at 8:30 a.m. Discussion with attorneys on scheduling. Court will be in session on Friday, 3/6/15. Trial continued to Thursday, 3/5/2015 at 8:30 a.m. Defendant REMANDED to custody of US Marshal. (Court Reporter: Stacy Drohosky (am) and Joanne Hoffman (pm).) (nac)**

**2:11–cr–00077–PPS–APR–1 Notice has been electronically mailed to:**

David E Vandercoy    david.vandercoy@valpo.edu

Arlington J Foley    arlingtonfoley@att.net

Mark A Psimos    psimoslaw@airbaud.net

Scott L King    sking@scottkinggroup.com, dwilliams@scottkinggroup.com

James N Thiros    jim@thiros.com, lynn@thiros.com

Thomas W Vanes    tom.vanes@sbcglobal.net, b.lynneadams@yahoo.com

Ihor Alexander Woloshansky    ihorlawyer@hotmail.com

R Brian Woodward    rbwoodward@wbbklaw.com, carolb@wbbklaw.com

John Maksimovich    criminallaw@johnmaksimovich.com

Visvaldis P Kupsis    vpkupsis@hotmail.com

Sheldon B Nagelberg    sbnagelberglaw@att.net

John E Martin – FCD    john_martin@fd.org

Adam Tavitas    Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander    jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele    ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst    kre@braje–nelson.com

Bryan M Truitt    bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis    theislaw@aol.com

Robert L Rascia    rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger    pjeffslaw@aol.com

Matthew N Fech    mnf@fech–law.com

3665

Pablo DeCastro    pdecastro@attorneydecastro.com, ysierra@rascia−decastro.com

Dean R Lanter − AUSA    dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov,
janet.eisenmann@usdoj.gov

David J Nozick − AUSA    David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov,
janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson    attorneyrmj@gmail.com

Bruce R Hegyi − AUSA    bruce.hegyi@usdoj.gov

**2:11−cr−00077−PPS−APR−1 Notice has been delivered by U.S. Mail or other means to:**

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
I hereby certify the foregoing is a
true copy of the original on file in
this court and cause
ROBERT N. TROWCH, CLERK
By: _____
DEPUTY CLERK
Date: ___1-9-2015___

UNITED STATES OF AMERICA,       )
                                )
        Plaintiff,              )
                                )
    v.                          )       Case No. 2:11-cr-77
                                )
JUAN BRISENO,                   )
                                )
        Defendant.             )

**WRIT OF HABEAS CORPUS AD TESTIFICANDUM**

TO:     Warden                          United States Marshal
        Forrest City Low FCI            Northern District of Indiana
        Forrest City, Arkansas          Hammond, Indiana

The court being advised that prisoner Guillermo Briseno (BOP #11885-027) is a

necessary witness in the trial of Juan Briseno in *United States v. Juan Briseno*, on January 12,

2015, at 8:30 a.m. (Central time), and that said prisoner is in the lawful custody and control of

the Warden, Forrest City Low FCI, Forrest City, Arkansas.

It is **ORDERED** and **ADJUDGED** that the Warden, Forrest City Low FCI, Forrest City,

Arkansas, be required and is hereby commanded to surrender the body of prisoner Guillermo

Briseno (BOP #11885-027) to the United States Marshal for the Northern District of Indiana, or

any duly authorized deputy, or any authorized Marshal, for the purpose of producing the body of

said prisoner for trial in the federal courthouse, Hammond, Indiana, on February 9, 2015, at 8:30

a.m. (Central time), so that the prisoner may be present to testify in said trial, and thereafter to be

returned to the institution by the United States Marshal, or one of his duly authorized deputies,

under safe and secure conduct, and have you then and there this Writ.

        **SO ORDERED**

**- FILED -**

MAR 05 2015

At _____ Clerk
ROBERT N. TROWCH, Clerk
U.S. DISTRICT COURT
NORTHERN DISTRICT OF INDIANA          3667

ENTERED this 8th day of January, 2015.

/s/ Andrew P. Rodovich
United States Magistrate Judge

RECEIVED

Executed this writ by receiving custody on  1/20/2015  of the within named  GUILLERMO BRISENO
                                            DATE

FROM FOREST CITY LOW FCI ARKANAS  and transferring the within named to  MCC Chicago HAMMOND IN.

RETURNED

Executed this writ by returning custody on 3/4/15  of the within named  GUILLERMO BRISENO
                                           DATE

FROM MCC chicago Hammond Fed Courthouse  and transferring the within named to  FOREST CITY LOW, FCI Arkanas.

United States Marshal

By KAUREN HOLLY

Deputy U.S. MARSHAL

2

3668

MIME-Version:1.0
From:CMECFinnd@innd.uscourts.gov
To:CMECFinnd@localhost.localdomain
Bcc:
--Case Participants: Bryan M Truitt (bryan@tblawyers.com, sherrie@tblawyers.com), David J
Nozick - AUSA (david.nozick@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov,
susan.devries@usdoj.gov, usainn.ecfcivil@usdoj.gov), Kurt R Earnst (kre@braje-nelson.com),
Paul Jeffrey Schlesinger (pjeffslaw@aol.com), Pablo DeCastro
(pdecastro@attorneydecastro.com, ysierra@rascia-decastro.com), Sheldon B Nagelberg
(sbnagelberglaw@att.net), Thomas W Vanes (b.lynneadams@yahoo.com,
tom.vanes@sbcglobal.net), Richard C Wolter (b.lynneadams@yahoo.com), John T Theis
(theislaw@aol.com), Adam Tavitas (adtavitas@aol.com, b.lynneadams@yahoo.com), Dean R
Lanter - AUSA (dean.lanter@usdoj.gov, janet.eisenmann@usdoj.gov,
usainn.ecfcivil@usdoj.gov), John E Martin - FCD (john_martin@fd.org), Scott L King
(dwilliams@scottkinggroup.com, sking@scottkinggroup.com), Mark A Psimos
(psimoslaw@airbaud.net), Matthew N Fech (mnf@fech-law.com), Ihor Alexander Woloshansky
(ihorlawyer@hotmail.com), James N Thiros (jim@thiros.com, lynn@thiros.com), Robert L
Rascia (rrascia@rascia-decastro.com, ysierra@rascia-decastro.com), Arlington J Foley
(arlingtonfoley@att.net), Roxanne Mendez Johnson (attorneyrmj@gmail.com), Visvaldis P
Kupsis (vpkupsis@hotmail.com), Stephen Edward Scheele (pkd@gk4law.com, ses@gk4law.com),
Jack Friedlander (jack@jackfriedlander.com, office@jackfriedlander.com), Bruce R Hegyi -
AUSA (bruce.hegyi@usdoj.gov), R Brian Woodward (carolb@wbbklaw.com,
rbwoodward@wbbklaw.com), John Maksimovich (criminallaw@johnmaksimovich.com), David E
Vandercoy (david.vandercoy@valpo.edu), Magistrate Judge Andrew P Rodovich
(rodovich_chambers@innd.uscourts.gov, ruth_nagy@innd.uscourts.gov), Chief Judge Philip P
Simon (denise_woodside@innd.uscourts.gov, jacob_hamann@innd.uscourts.gov,
lauren_schwartz@innd.uscourts.gov, mira_serrill-robins@innd.uscourts.gov,
noel_collins@innd.uscourts.gov, philip_simon@innd.uscourts.gov)
--Non Case Participants: Matthew D Soliday (office@matthewsolidaylaw.com)
--No Notice Sent:

Message-Id:2721714@innd.uscourts.gov
Subject:Activity in Case 2:11-cr-00077-PPS-APR United States of America v. Briseno et al
Jury Trial - Sentence Enhancement Phase
Content-Type: text/html

### U.S. District Court Northern District of Indiana [LIVE]

### USDC Northern Indiana

## Notice of Electronic Filing

The following transaction was entered on 3/6/2015 at 9:57 AM EST and filed on 3/5/2015

| | |
|---|---|
| **Case Name:** | United States of America v. Briseno et al |
| **Case Number:** | 2:11-cr-00077-PPS-APR |
| **Filer:** | |
| **Document Number:** | 1517(No document attached) |

**Docket Text:**
**JURY TRIAL–18TH DAY–PENALTY PHASE–3RD DAY) as to Juan Briseno held on 3/5/2015 before Chief Judge Philip P Simon. Parties present as previously noted. Defense continues to present evidence. Interpreter Kathleen O'Hanlon appears to testify for one defense witness. Interpreter is sworn under oath and interprets for Spanish speaking witness. Court hears Govt rebuttal witness out of order due to scheduling matters with sur–rebuttal witness following. Defendant continues to present evidence. Dft indicates that he will not testify after being placed under oath. Defense renews Rule 29 motion. Defense rests penalty phase. Govt**

**rests penalty phase. Trial continued to Friday, 3/6/2015 with Instruction Conference to be held with attorneys at 8:00 a.m. Final arguments, penalty phase, instruction on the law in this case to jury and deliberations to follow. Instructions provided to attorneys at conclusion of the day in preparation of Instruction Confernece to be held on 3/6/15. Defendant REMANDED to custody of US Marshal.(Court Reporter: Richard Ehrlich (am) and Joanne Hoffman (pm).) (nac)**

**2:11–cr–00077–PPS–APR–1 Notice has been electronically mailed to:**

David E Vandercoy      david.vandercoy@valpo.edu

Arlington J Foley      arlingtonfoley@att.net

Mark A Psimos      psimoslaw@airbaud.net

Scott L King      sking@scottkinggroup.com, dwilliams@scottkinggroup.com

James N Thiros      jim@thiros.com, lynn@thiros.com

Thomas W Vanes      tom.vanes@sbcglobal.net, b.lynneadams@yahoo.com

Ihor Alexander Woloshansky      ihorlawyer@hotmail.com

R Brian Woodward      rbwoodward@wbbklaw.com, carolb@wbbklaw.com

John Maksimovich      criminallaw@johnmaksimovich.com

Visvaldis P Kupsis      vpkupsis@hotmail.com

Sheldon B Nagelberg      sbnagelberglaw@att.net

John E Martin – FCD      john_martin@fd.org

Adam Tavitas      Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander      jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele      ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst      kre@braje–nelson.com

Bryan M Truitt      bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis      theislaw@aol.com

Robert L Rascia      rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger      pjeffslaw@aol.com

Matthew N Fech      mnf@fech–law.com

Pablo DeCastro    pdecastro@attorneydecastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA    dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov,
janet.eisenmann@usdoj.gov

David J Nozick – AUSA    David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov,
janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson    attorneyrmj@gmail.com

Bruce R Hegyi – AUSA    bruce.hegyi@usdoj.gov

**2:11–cr–00077–PPS–APR–1 Notice has been delivered by U.S. Mail or other means to:**

```
MIME-Version:1.0
From:CMECFinnd@innd.uscourts.gov
To:CMECFinnd@localhost.localdomain
Bcc:
--Case Participants: Bryan M Truitt (bryan@tblawyers.com, sherrie@tblawyers.com), David J
Nozick - AUSA (david.nozick@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov,
susan.devries@usdoj.gov, usainn.ecfcivil@usdoj.gov), Kurt R Earnst (kre@braje-nelson.com),
Paul Jeffrey Schlesinger (pjeffslaw@aol.com), Pablo DeCastro
(pdecastro@attorneydecastro.com, ysierra@rascia-decastro.com), Sheldon B Nagelberg
(sbnagelberglaw@att.net), Thomas W Vanes (b.lynneadams@yahoo.com,
tom.vanes@sbcglobal.net), Richard C Wolter (b.lynneadams@yahoo.com), John T Theis
(theislaw@aol.com), Adam Tavitas (adtavitas@aol.com, b.lynneadams@yahoo.com), Dean R
Lanter - AUSA (dean.lanter@usdoj.gov, janet.eisenmann@usdoj.gov,
usainn.ecfcivil@usdoj.gov), John E Martin - FCD (john_martin@fd.org), Scott L King
(dwilliams@scottkinggroup.com, sking@scottkinggroup.com), Mark A Psimos
(psimoslaw@airbaud.net), Matthew N Fech (mnf@fech-law.com), Ihor Alexander Woloshansky
(ihorlawyer@hotmail.com), James N Thiros (jim@thiros.com, lynn@thiros.com), Robert L
Rascia (rrascia@rascia-decastro.com, ysierra@rascia-decastro.com), Arlington J Foley
(arlingtonfoley@att.net), Roxanne Mendez Johnson (attorneyrmj@gmail.com), Visvaldis P
Kupsis (vpkupsis@hotmail.com), Stephen Edward Scheele (pkd@gk4law.com, ses@gk4law.com),
Jack Friedlander (jack@jackfriedlander.com, office@jackfriedlander.com), Bruce R Hegyi -
AUSA (bruce.hegyi@usdoj.gov), R Brian Woodward (carolb@wbbklaw.com,
rbwoodward@wbbklaw.com), John Maksimovich (criminallaw@johnmaksimovich.com), David E
Vandercoy (david.vandercoy@valpo.edu), Magistrate Judge Andrew P Rodovich
(rodovich_chambers@innd.uscourts.gov, ruth_nagy@innd.uscourts.gov), Chief Judge Philip P
Simon (denise_woodside@innd.uscourts.gov, jacob_hamann@innd.uscourts.gov,
lauren_schwartz@innd.uscourts.gov, mira_serrill-robins@innd.uscourts.gov,
noel_collins@innd.uscourts.gov, philip_simon@innd.uscourts.gov)
--Non Case Participants: Matthew D Soliday (office@matthewsolidaylaw.com)
--No Notice Sent:

Message-Id:2724021@innd.uscourts.gov
Subject:Activity in Case 2:11-cr-00077-PPS-APR United States of America v. Briseno et al
Jury Trial - Sentence Enhancement Phase
Content-Type: text/html
```

### U.S. District Court Northern District of Indiana [LIVE]

### USDC Northern Indiana

### Notice of Electronic Filing

The following transaction was entered on 3/9/2015 at 6:23 PM EST and filed on 3/6/2015

| | |
|---|---|
| **Case Name:** | United States of America v. Briseno et al |
| **Case Number:** | 2:11-cr-00077-PPS-APR |
| **Filer:** | |
| **Document Number:** | 1522(No document attached) |

**Docket Text:**

**JURY TRIAL (19th DAY OF EVIDENCE-4TH DAY OF PENALTY PHASE) as to Juan Briseno held on 3/6/2015 before Chief Judge Philip P Simon. Parties present as previously noted. Instruction Conference held. Ruling on Instructions. Ruling on [1476] Motion in Limine. Court ruling at what age dft joined IGs. Final arguments to jury. Jury charged with Instructions. Jury begins deliberation on verdicts. Court advised that jury has reached verdicts. Jury FINDS that dft shall serve a term of life imprisonment. Sentencing set for 6/15/2015 at 10:00 a.m. Defendant REMANDED to custody of US Marshal.(Court Reporter Richard Ehrlich (am)**

3672

**and Stacy Drohosky (pm).) (nac)**

**2:11-cr-00077-PPS-APR-1 Notice has been electronically mailed to:**

David E Vandercoy    david.vandercoy@valpo.edu

Arlington J Foley    arlingtonfoley@att.net

Mark A Psimos    psimoslaw@airbaud.net

Scott L King    sking@scottkinggroup.com, dwilliams@scottkinggroup.com

James N Thiros    jim@thiros.com, lynn@thiros.com

Thomas W Vanes    tom.vanes@sbcglobal.net, b.lynneadams@yahoo.com

Ihor Alexander Woloshansky    ihorlawyer@hotmail.com

R Brian Woodward    rbwoodward@wbbklaw.com, carolb@wbbklaw.com

John Maksimovich    criminallaw@johnmaksimovich.com

Visvaldis P Kupsis    vpkupsis@hotmail.com

Sheldon B Nagelberg    sbnagelberglaw@att.net

John E Martin – FCD    john_martin@fd.org

Adam Tavitas    Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander    jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele    ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst    kre@braje–nelson.com

Bryan M Truitt    bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis    theislaw@aol.com

Robert L Rascia    rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger    pjeffslaw@aol.com

Matthew N Fech    mnf@fech–law.com

Pablo DeCastro    pdecastro@attorneydecastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA    dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov,
janet.eisenmann@usdoj.gov

David J Nozick – AUSA    David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov,
janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson    attorneyrmj@gmail.com

Bruce R Hegyi – AUSA    bruce.hegyi@usdoj.gov

**2:11–cr–00077–PPS–APR–1 Notice has been delivered by U.S. Mail or other means to:**

```
MIME-Version:1.0
From:CMECFinnd@innd.uscourts.gov
To:CMECFinnd@localhost.localdomain
Bcc:
--Case Participants: Bryan M Truitt (bryan@tblawyers.com, sherrie@tblawyers.com), David J
Nozick - AUSA (david.nozick@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov,
susan.devries@usdoj.gov, usainn.ecfcivil@usdoj.gov), Kurt R Earnst (kre@braje-nelson.com),
Paul Jeffrey Schlesinger (pjeffslaw@aol.com), Pablo DeCastro
(pdecastro@attorneydecastro.com, ysierra@rascia-decastro.com), Sheldon B Nagelberg
(sbnagelberglaw@att.net), Thomas W Vanes (b.lynneadams@yahoo.com,
tom.vanes@sbcglobal.net), Richard C Wolter (b.lynneadams@yahoo.com), John T Theis
(theislaw@aol.com), Adam Tavitas (adtavitas@aol.com, b.lynneadams@yahoo.com), Dean R
Lanter - AUSA (dean.lanter@usdoj.gov, janet.eisenmann@usdoj.gov,
usainn.ecfcivil@usdoj.gov), John E Martin - FCD (john_martin@fd.org), Scott L King
(dwilliams@scottkinggroup.com, sking@scottkinggroup.com), Mark A Psimos
(psimoslaw@airbaud.net), Matthew N Fech (mnf@fech-law.com), Ihor Alexander Woloshansky
(ihorlawyer@hotmail.com), James N Thiros (jim@thiros.com, lynn@thiros.com), Robert L
Rascia (rrascia@rascia-decastro.com, ysierra@rascia-decastro.com), Arlington J Foley
(arlingtonfoley@att.net), Roxanne Mendez Johnson (attorneyrmj@gmail.com), Visvaldis P
Kupsis (vpkupsis@hotmail.com), Stephen Edward Scheele (pkd@gk4law.com, ses@gk4law.com),
Jack Friedlander (jack@jackfriedlander.com, office@jackfriedlander.com), Bruce R Hegyi -
AUSA (bruce.hegyi@usdoj.gov), R Brian Woodward (carolb@wbbklaw.com,
rbwoodward@wbbklaw.com), John Maksimovich (criminallaw@johnmaksimovich.com), David E
Vandercoy (david.vandercoy@valpo.edu), Magistrate Judge Andrew P Rodovich
(rodovich_chambers@innd.uscourts.gov, ruth_nagy@innd.uscourts.gov), Chief Judge Philip P
Simon (denise_woodside@innd.uscourts.gov, jacob_hamann@innd.uscourts.gov,
lauren_schwartz@innd.uscourts.gov, mira_serrill-robins@innd.uscourts.gov,
noel_collins@innd.uscourts.gov, philip_simon@innd.uscourts.gov)
--Non Case Participants: Matthew D Soliday (office@matthewsolidaylaw.com),
Probation/Pretrial Services (innpml_cmecf@innd.uscourts.gov), U S Marshal
(inn.docket-fw@usdoj.gov, inn.docket-sb@usdoj.gov, usms.27@usdoj.gov)
--No Notice Sent:

Message-Id:2724023@innd.uscourts.gov
Subject:Activity in Case 2:11-cr-00077-PPS-APR United States of America v. Briseno et al
Notice of Hearing/Deadlines
Content-Type: text/html
```

### U.S. District Court Northern District of Indiana [LIVE]

### USDC Northern Indiana

### Notice of Electronic Filing

The following transaction was entered on 3/9/2015 at 6:26 PM EST and filed on 3/6/2015

| | |
|---|---|
| **Case Name:** | United States of America v. Briseno et al |
| **Case Number:** | 2:11-cr-00077-PPS-APR |
| **Filer:** | |
| **Document Number:** | 1523(No document attached) |

**Docket Text:**
 **NOTICE OF HEARING as to Juan Briseno: Sentencing set for 6/15/2015 10:00 AM in US District Court – Hammond before Chief Judge Philip P Simon. (nac)**

**2:11-cr-00077-PPS-APR-1 Notice has been electronically mailed to:**

David E Vandercoy    david.vandercoy@valpo.edu

Arlington J Foley    arlingtonfoley@att.net

Mark A Psimos    psimoslaw@airbaud.net

Scott L King    sking@scottkinggroup.com, dwilliams@scottkinggroup.com

James N Thiros    jim@thiros.com, lynn@thiros.com

Thomas W Vanes    tom.vanes@sbcglobal.net, b.lynneadams@yahoo.com

Ihor Alexander Woloshansky    ihorlawyer@hotmail.com

R Brian Woodward    rbwoodward@wbbklaw.com, carolb@wbbklaw.com

John Maksimovich    criminallaw@johnmaksimovich.com

Visvaldis P Kupsis    vpkupsis@hotmail.com

Sheldon B Nagelberg    sbnagelberglaw@att.net

John E Martin – FCD    john_martin@fd.org

Adam Tavitas    Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander    jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele    ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst    kre@braje–nelson.com

Bryan M Truitt    bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis    theislaw@aol.com

Robert L Rascia    rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger    pjeffslaw@aol.com

Matthew N Fech    mnf@fech–law.com

Pablo DeCastro    pdecastro@attorneydecastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA    dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov,
janet.eisenmann@usdoj.gov

David J Nozick – AUSA    David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov,
janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson    attorneyrmj@gmail.com

Bruce R Hegyi – AUSA     bruce.hegyi@usdoj.gov

**2:11–cr–00077–PPS–APR–1 Notice has been delivered by U.S. Mail or other means to:**

2:11 CR 77 (01)

Ladies + Gentlemen, I am hereby instructing you that you should accept as a fact in this case that defendant Juan Briseno was arrested on an Indictment in this case on June 24, 2011. That indictment contained a Notice of Special Findings that notified Mr. Briseno that he was Potentially eligible for the death penalty. in this case.

- FILED -

MAR 09 2015

At _____ M
ROBERT N. TRPOVICH, Clerk
U.S. DISTRICT COURT
NORTH _____ INDIANA

- FILED -

___ ___ 2015

ROBERT ___ ___ M Clerk
U.S. DIST ___
NORTH ___ ___

3/3/2015   3:20pm

No objection

Breece ___

John Maksimovich

3678

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| vs. | ) | 2:11-cr-00077 |
| | ) | |
| JUAN BRISENO | ) | |

**COURT'S PROPOSED FINAL INSTRUCTIONS TO THE JURY**
**(FOLLOWING PENALTY-PHASE EVIDENCE)**

Dated: March 5, 2015.

/s/ Philip P. Simon
PHILIP P. SIMON, CHIEF JUDGE
UNITED STATES DISTRICT COURT

## COURT'S INSTRUCTION NO. 1

### INTRODUCTION TO FINAL INSTRUCTIONS

Members of the Jury, it is now my duty to again instruct you on the rules of law that you must follow and apply in imposing a sentence on the defendant.

Regardless of any opinion you may have as to what the law may be - or should be - it would be a violation of your oaths as jurors to base your verdict upon any view of the law other than that given to you in these instructions.

Some of the legal principles that you must apply to this sentencing decision duplicate those you followed in reaching your verdict as to guilt or innocence.  Others are different.  The instructions  I am giving you now are a complete set of instructions on the law applicable to the sentencing decision. I have prepared them to ensure that you are clear in your duties at this extremely serious stage of the case. I have also prepared Special Verdict Forms that you must complete. The forms detail special findings you must make in this case and will help you perform your duties properly.

When I have finished, you will go into the jury room, choose a foreperson (who may or may not be the same foreperson who served during the earlier deliberations on guilt) and begin your penalty deliberations.

*8th Cir. Model Death Penalty Jury Instructions*, 12.04 - Introduction to Final Instructions (modified).
Defendant's Proposed Instructions at 18 (modified).
Government's Proposed Instructions at 6 (modified).

1

## COURT'S INSTRUCTION NO. 2

### Burden of Proof

Under the federal death penalty statute, there are certain requirements that must be met before you may consider a death sentence. As I have instructed you, you may not consider imposing a death sentence unless you first find the Government proved beyond a reasonable doubt the age requirement, at least one intent factor, and at least one Statutory Aggravating Factor. Again, affirmative findings on these three elements must be unanimous and beyond a reasonable doubt.

You may also find Non-statutory Aggravating Factors, which are those not specifically set out by Congress in the federal death penalty statute, but which have been specifically identified by the government for your consideration in this case. Again, an affirmative finding that any Non-statutory Aggravating Factor exists must be unanimous and beyond a reasonable doubt.

The defendant does not have the burden of disproving the existence of anything the Government seeks to prove.  The burden is wholly upon the Government to prove its contentions beyond a reasonable doubt; the law does not require the defendant to produce any evidence at all, including evidence that a particular aggravating factor does not exist or that death is not the appropriate sentence. The defendant has chosen to assert Mitigating Factors, and he has the burden of proving them. However, there is a different standard of proof for Mitigating Factors. You need not be convinced beyond a reasonable doubt about the existence of a Mitigating Factor; you need only be

2

convinced by a preponderance of the evidence. A matter is proved "by a preponderance of the evidence" if it is shown to be more likely true than not true. This is a lesser standard of proof under the law than proof beyond a reasonable doubt.

Any evidence relating to Mitigating Factors should be fully discussed by all of you to ensure that each juror considers the matter carefully. I instruct you, however, that the law does not require unanimity with regard to Mitigating Factors. Any one of you may find the existence of a Mitigating Factor, regardless of the number of other jurors who may agree, and anyone who so finds may consider and weigh that Mitigating Factor in determining the appropriate sentence in this case. The Verdict Form provides a space for you to indicate the number of jurors who find a particular Mitigating Factor.

*8th Cir. Model Death Penalty Jury Instructions*, 12.02 - Burden of Proof (indicated as intended to be given before evidence is presented) (modified).
Defendant's Proposed Instructions at 4-5, 16 (modified).
Government's Proposed Instructions at 7-8 (modified).

3

## COURT'S INSTRUCTION NO. 3

### The Evidence

In deciding the issues now before you, you may consider any evidence (to the extent you find it credible and relevant), direct or circumstantial, that was presented during the guilt phase of the trial and any information that was presented during the penalty phase of the trial, including any matters to which the parties have stipulated. As in the guilt phase, the arguments of the attorneys and the comments and rulings of the Court are not evidence.

You must make your decision based only on the evidence that you saw and heard here in court. Do not consider anything you may have seen or heard outside of court, including anything from the newspaper, television, radio, the Internet, or any other source.

The evidence includes only what the witnesses said when they were testifying under oath, the exhibits that I allowed into evidence, and any stipulations that the lawyers agreed to. A stipulation is an agreement that certain facts are true or that a witness would have given certain testimony.

Nothing else is evidence. The lawyers' statements and arguments are not evidence. If what a lawyer said is different from the evidence as you remember it, the evidence is what counts. The lawyers' questions and objections likewise are not evidence.

A lawyer has a duty to object if he thinks a question is improper. If I sustained

4

objections to questions the lawyers asked, you must not speculate on what the answers might have been.

If, during the trial, I struck testimony or exhibits from the record, or told you to disregard something, you must not consider it.

Give the evidence whatever weight you decide it deserves. Use your common sense in weighing the evidence, and consider the evidence in light of your own everyday experience.

People sometimes look at one fact and conclude from it that another fact exists. This is called an inference. You are allowed to make reasonable inferences, so long as they are based on the evidence.

You may have heard the terms "direct evidence" and "circumstantial evidence." Direct evidence is evidence that directly proves a fact. Circumstantial evidence is evidence that indirectly proves a fact. You are to consider both direct and circumstantial evidence. The law does not say that one is better than the other. It is up to you to decide how much weight to give to any evidence, whether direct or circumstantial.

Do not make any decisions simply by counting the number of witnesses who testified about a certain point.  You may find the testimony of one witness or a few witnesses more persuasive than the testimony of a larger number. You need not accept the testimony of the larger number of witnesses. What is important is how truthful and accurate the witnesses were and how much weight you think their testimony deserves.

Part of your job as jurors is to decide how believable each witness was, and how

5

much weight to give each witness's testimony. You may accept all of what a witness says, or part of it, or none of it. Some factors you may consider include:

- the intelligence of the witness;

- the witness's ability and opportunity to see, hear, or know the things the witness testified about;

- the witness's memory;

- the witness's demeanor;

- whether the witness had any bias, prejudice, or other reason to lie or slant the testimony;

- the truthfulness and accuracy of the witness's testimony in light of the other evidence presented; and

- inconsistent statements or conduct by the witness.

You may consider evidence that a witness was convicted of a crime only in deciding the believability of his testimony. You may not consider it for any other purpose.

You have heard two witnesses who gave opinions and testimony about certain subjects. Specifically, Mark Bezy and David Dodrill, who testified about prison conditions and security.

You do not have to accept these witnesses' opinions or testimony. You should judge these witnesses' opinions and testimony the same way you judge the testimony of any other witness. In deciding how much weight to give to these opinions and

6

testimony, you should consider each witness's qualifications, how he or she reached his

or her opinions and conclusions, and the factors I have described for determining the

believability of testimony.

If you have taken notes during the trial, you may use them during deliberations

to help you remember what happened during the trial. You should use your notes only

as aids to your memory. The notes are not evidence. All of you should rely on your

independent recollection of the evidence, and you should not be unduly influenced by

the notes of other jurors. Notes are not entitled to any more weight than the memory or

impressions of each juror.

*8th Cir. Model Death Penalty Jury Instructions*, 12.03 - Evidence (indicated as intended to
be given before evidence is presented) (modified).
*7th Circuit Pattern Jury Instructions*, No. 2.0 (Considering the Evidence), No. 2.01 (The
Evidence), No. 2.03 (Direct and Circumstantial Evidence), No. 2.04 (Number of Witnesses), No.
3.01 (Credibility of Witnesses), No. 3.06 (Impeachment by Prior Conviction), No. 3.13 (Opinion
Testimony), No. 18 (Juror Note-Taking).
Defendant's Proposed Instructions at 5-6 (modified).
Government's Proposed Instructions at 8 (modified).

3686

## COURT'S INSTRUCTION NO. 4

### The Defendant's Right Not to Testify

The defendant did not testify. A defendant has an absolute right not to testify.

There is no burden upon a defendant to prove that he should not be sentenced to death.

The burden is entirely on the prosecution to prove that a sentence of death should be

imposed. Accordingly, you may not consider in any way the fact that the defendant did

not testify. You may not even discuss it in your deliberations.

*8th Cir. Model Death Penalty Jury Instructions*, 12.14 (Defendant's Right Not to Testify)
(modified).
*7th Circuit Pattern Jury Instructions*, No. 2.05 (Defendant's Failure to Testify or Present
Evidence).
Defendant's Proposed Instructions at 6 (modified).
Government's Proposed Instructions at 19 (modified).

**COURT'S INSTRUCTION NO. 5**

**Your Findings**

I will now provide you with additional instructions on the Age requirement, Threshold Intent Factors, Aggravating Factors, and Mitigating Factors. I again stress the importance of your giving careful and thorough consideration to all evidence before you. I also remind you of your obligation to strictly follow the applicable law.

You must deliberate and determine the appropriate sentence for each of the capital counts separately. Although I will be discussing the capital counts together, your findings regarding gateway factors, aggravating factors, and all other issues pertaining to these counts must treat each of these counts separately. You may find differences which justify different sentences on different counts. You will have a separate Special Verdict Form to complete for each capital count.

You also may not rely solely upon your guilt-phase verdict or your factual determinations therein. Instead, you must now consider each issue and make each determination described in these Instructions, even if you considered similar issues during your first deliberations in the guilt phase of this trial.

Defendant's Proposed Instructions at 6, 8 (modified).
Government's Proposed Instructions at 8 (modified).

9

## COURT'S INSTRUCTION NO. 6

### Age of defendant (Section I of Special Verdict Form)

The first step in your deliberations should be to determine whether the Government has proved beyond a reasonable doubt that the defendant was at least eighteen years old on the date the capital crime you are considering was committed. Those dates are: September 26, 2007 (Luis Ortiz), June 3, 2008 (Michael Sessum and Miguel Mejias), February 7, 2010 (Miguel Colon), and June 19, 2010 (Latroy Howard).

If you find that the Government failed to prove that the defendant was at least eighteen years old on any of these dates, then you will complete Section I of the appropriate Special Verdict Form accordingly and your deliberations will be over as to the murder committed on that date or those dates. For any such count you will sign the final certification in Section VII of the Special Verdict Form and move on to considering the next count. If you have no counts left to consider you will advise the Court that you have reached a verdict.

If, however, you find unanimously and beyond a reasonable doubt that the defendant was at least eighteen years old on the date any of the murder counts was committed, you will fill in the appropriate Special Verdict Form accordingly. You should then proceed to the second step in your deliberations on any such counts, the determination of the required intent factor or factors.

*8th Cir. Model Death Penalty Jury Instructions*, 12.05 (Finding As to Defendant's Age) (modified).
Government's Proposed Instructions at 9 (modified).

**COURT'S INSTRUCTION NO. 7**

**Threshold Intent Factors (Section II of Special Verdict Form)**

In addition to the required age finding, you also may not consider the death penalty for any count unless you first unanimously find, beyond a reasonable doubt, that the government proved at least one of four possible threshold intent factors. Not all four threshold intent factors are available for your consideration in every count. The Special Verdict Forms set out which threshold intent factors are at issue in each count, and you will consider only the threshold intent factors listed for each count. Your consideration of the possible threshold intent factors will address whether the defendant:

(1) intentionally killed the victim; or

(2) intentionally inflicted serious bodily injury that resulted in the death of the victim; or

(3) intentionally participated in an act, contemplating that a person's life would be taken or intending that lethal force would be used in connection with a person, other than one of the participants in the offense, and the victim died as a direct result of the act; or

(4) intentionally and specifically engaged in an act of violence, knowing that the act created a grave risk of death to a person, other than one of the participants in the offense, such that participation in the act constituted a reckless disregard for human life, and the victim died as a direct result of the act.

Intent or knowledge may be proved like anything else. You may consider any statements made and acts done by the defendant, and all facts and circumstances in evidence in determining the defendant's knowledge and intent. An "intentional act" is an act done deliberately and with the conscious desire that it be committed. A person acts knowingly if he realizes what he is doing and is aware of the nature of his conduct, and does not act through ignorance, mistake, or accident. You may, but are not required to, infer that a person intended the natural and probable consequences of his knowing and voluntary acts.

"Serious bodily injury" means a significant or considerable amount of injury or damage to the victim's body which involves a substantial risk of death, unconsciousness, extreme physical pain, protracted and obvious disfigurement, or protracted loss or impairment of the function of a body member, organ, or mental faculty.

"Lethal force" means an act of violence capable of causing death.

"Grave risk of death" means a significant and considerable possibility that a person other than one of the participants in the crime might be killed.

Fill in your answers to the questions in Section II of the Special Verdict Form for the count you are considering. If you find that the Government did not prove any of the intent elements listed on the Special Verdict Form for a particular count, then your deliberations will be over as to that count and the Court will sentence the defendant to life in prison without the possibility of release on that count. You will sign the

12

3691

Certification in Section VII of the Special Verdict Form for the count you are considering and move on to the next count. If you have no counts left to consider then you will advise the Court that you have reached a verdict.

However, if you unanimously find one or more of the intent elements proved beyond a reasonable doubt with respect to any capital count, then you will note that on the Special Verdict Form for the appropriate count and continue to Section III for that count.

As you continue with your deliberations bear in mind that threshold intent factors are not aggravating factors and therefore may not be weighed in deciding whether or not to impose a sentence of death.

*8th Cir. Model Death Penalty Jury Instructions,* 12.06 (Finding of Requisite Mental State) (modified).
Defendant's Proposed Instructions at 7-9 (modified).
Government's Proposed Instructions at 9-11 (modified).

3692

## COURT'S INSTRUCTION NO. 8

### Statutory Aggravating Factors (Section III of Special Verdict Form)

If, for the murder count you are considering, you have unanimously found that the Government has proved beyond a reasonable doubt that the defendant was over the age of eighteen when the offense was committed, and that at least one of the four threshold intent factors existed for the count, you must then proceed to determine whether the Government has proved beyond a reasonable doubt the existence of any of the Statutory Aggravating Factors that the government has alleged for that count. The government has alleged three different Statutory Aggravating Factors, but not all three apply to each count, so the Special Verdict Form for each count lists only the Statutory Aggravating Factor or Factors that apply to that count.

The first Statutory Aggravating Factor alleged by the Government is that the defendant committed each of the murders of Luis Ortiz, Michael Sessum, Miguel Mejias, Miguel Colon, and Latroy Howard after substantial planning and premeditation to cause the death of a person. "Planning" means mentally formulating a method for doing something or achieving some end. "Premeditation" means thinking or deliberating about something and deciding beforehand whether to do it. "Substantial" planning and premeditation means a considerable or significant amount of planning and premeditation. You must find that both the planning and the premeditation were more than the minimum amount necessary to cause the death. To find that the Government has satisfied its burden of proving beyond a reasonable doubt that the

14

3693

defendant engaged in substantial planning and premeditation to cause the death of a

person, you must unanimously agree on the particular object of the substantial planning

and premeditation, namely to cause the death of a person.

The second Statutory Aggravating Factor alleged by the Government is that the

defendant, in the commission of the offense, or in escaping apprehension for the

offense, knowingly created a grave risk of death to one or more persons in addition to

the victim. In this case, the Government alleges this Statutory Aggravating Factor with

respect to the murder of each of Michael Sessum, Miguel Mejias, and Miguel Colon.

"Persons in addition to the victim" include innocent bystanders in the zone of danger

created by the defendant's acts, but do not include other participants in the offenses.

"Grave risk of death" is defined above.

The third Statutory Aggravating Factor alleged by the Government with respect

to any of the capital counts is that the defendant intentionally killed more than one

person in a single criminal episode. In this case, the Government alleges that the

defendant intentionally killed Michael Sessum and Miguel Mejias in a single criminal

episode. "Intentionally killing" a person means killing a person on purpose, that is:

willfully, deliberately, or with a conscious desire to cause a person's death (and not just

accidentally or involuntarily). "More than one person" means one or more other people

in addition to the victim named in a particular murder count. "A single criminal

episode" is an act or series of related criminal acts which occur within a relatively

limited time and place, or are directed at the same person or persons, or are part of a

15

continuous course of conduct related in time, place, or purpose. You may, but are not

required to, infer that a person of sound mind intended the ordinary, natural, and

probable consequences of his knowing and voluntary acts. Thus, you may infer from

the defendant's conduct that he intended to kill a person if you find: (1) that the

defendant was a person of sound mind; (2) that the victim's death was an ordinary,

natural, and probable consequence of the defendant's acts; and (3) that the defendant

committed these acts knowingly and voluntarily. But once again, you are not required

to make such an inference.

The law directs you to consider and decide, separately as to each of the capital

counts, only the Statutory Aggravating Factors specifically claimed by the Government

with respect to each count. You are reminded that to find the existence of a statutory

aggravating factor, your decision must be unanimous and beyond a reasonable doubt.

Complete Section III of the Special Verdict Form for the count you are

considering according to your findings. If, for any count, you answer "NO" with

respect to all of the Statutory Aggravating Factors alleged in that count then your

deliberations are complete with respect to that count. You will sign the Certification in

Section VII of the Special Verdict Form for that count and proceed to consider the next

count. If no counts remain to be considered then you will advise the Court that you

have reached a verdict.

If you answer "YES" with respect to any Statutory Aggravating Factor alleged in

the count you are considering, then complete accordingly Section III of the Special

16

3695

Verdict Form for that count and proceed to Section IV.

*8th Cir. Model Death Penalty Jury Instructions*, 12.07 (Statutory Aggravating Factors) ,
12.07E (Creation of a Grave Risk of Death to One or More Persons in Addition to the
Victim), 12.07I (Commission of the Offense After Substantial Planning and
Premeditation), 12.07P (Multiple Killings or Attempted Killings) (modified).
Defendant's Proposed Instructions at 9-11 (modified).
Government's Proposed Instructions at 11-12 (modified).

17

## COURT'S INSTRUCTION NO. 9

### Non-Statutory Aggravating Factors (Section IV of Special Verdict Form)

If you have found the existence of one or more Statutory Aggravating Factors unanimously and beyond a reasonable doubt for the count you are considering, you must then consider whether the government has proved the existence of any Non-Statutory Aggravating Factors for that count. As with Statutory Aggravating Factors, with respect to each count separately you must unanimously agree that the Government has proved beyond a reasonable doubt the existence of any of the alleged Non-Statutory Aggravating Factors before you may consider such factors in your deliberations on the appropriate punishment for the defendant for that count. But unlike threshold intent factors and Statutory Aggravating Factors, even if you don't unanimously find that the Government has proved any Non-Statutory Aggravating Factors that apply to a particular count, you may still consider the death penalty as a possible sentence for that count. In other words, you will proceed to Section V from this Section IV regardless of your Section IV findings on the count you are considering.

In addition to any Statutory Aggravating Factors you have found, you are permitted to consider and discuss only the four (4) Non-Statutory Aggravating Factors specifically claimed by the Government. I will describe those Factors. You must not consider any other facts in aggravation which you might think of on your own.

The Non-Statutory Aggravating Factors that the Government has alleged against the defendant with respect to each of the capital counts are as follows:

18

3697

1.    <u>Future Dangerousness</u>. The defendant represents a continuing danger to the lives and safety of other persons, as evidenced by his low potential for rehabilitation as demonstrated by repeated violent criminal acts; with respect to **only** the murders of Luis Ortiz, Michael Sessum, Miguel Mejias, and Miguel Colon, a willingness to take human life and a lack of remorse for his acts of violence and attempted acts of violence as demonstrated by statements that he made following these violent acts; and the defendant's stated desire to impose a rule requiring fellow members of the Imperial Gangsters to shoot at rivals on sight, and his future dangerousness tends to support the imposition of the death penalty.

2.    <u>Contemporaneous Convictions for Other Criminal Activity</u>. The defendant was convicted at trial of other criminal activity, including additional murders or an attempted murder, and this additional criminal activity tends to support the imposition of the death penalty.

3.    <u>Demonstrated Allegiance to Criminal Street Gang</u>. The defendant had an allegiance to and was a member of the Imperial Gangsters, a criminal street gang, and this allegiance and membership tends to support the imposition of the death penalty.

4.    <u>Victim Impact</u>. The defendant caused injury, harm, and loss to the victims, Luis Ortiz, Michael Sessum, Miguel Mejias, Miguel Colon, and Latroy Howard, and the victims' families and friends, and this harm tends to support the imposition of the death penalty.

After considering these Factors you will record in Section IV of the Special

19

3698

Verdict Form for the count you are considering your findings regarding whether you unanimously find that the Government has proved beyond a reasonable doubt the existence of any of these Non-Statutory Aggravating Factors.

Then you will continue on to consider the questions in Section V of the Special Verdict Form for the count you are considering.

*8th Cir. Model Death Penalty Jury Instructions,* 12.08 (Nonstatutory Aggravating Factors) (modified).
Defendant's Proposed Instructions at 13-16 (modified).
Government's Proposed Instructions at 12-14 (modified).

20

**COURT'S INSTRUCTION NO. 10**

**Mitigating Factors (Section V of Special Verdict Form)**

You must next consider, for the count on which you are deliberating, any Mitigating Factors that may be present in this case. A Mitigating Factor is not offered to justify or excuse the defendant's conduct. Rather, a Mitigating Factor is a fact about the defendant's life or character, or about the circumstances surrounding the offenses or any other relevant fact that would suggest, in fairness, that a sentence of death is not the appropriate punishment, or that a sentence of life in prison without the possibility of release is the more appropriate punishment.

Unlike for aggravating factors, your vote with respect to a Mitigating Factor **need not** be unanimous. A finding with respect to a Mitigating Factor may be made by one or more of the members of the jury. Any juror persuaded of the existence of a mitigating factor must consider it in this case, regardless of the number of other jurors who agree the factor has been established. Further, any juror may weigh a mitigating factor found by another juror, even if he or she did not also find that factor to exist or to be mitigating.

It is the defendant's burden to establish any mitigating factors, but only by a preponderance of the evidence, not beyond a reasonable doubt. A factor is established by a preponderance of the evidence if its existence is shown to be more likely so than not so.

Please understand that the existence of a mitigating factor is a distinct

21

consideration from whatever weight, if any, should ultimately be given that factor in your deliberations. For example, any number of jurors might first find that a particular mitigating factor is factually true (that is, that the factor has been established by a preponderance of the evidence), but those jurors as individuals might later choose to give that same mitigating factor differing levels of significance during the weighing process. With this distinction in mind, Section IV of each Special Verdict Form only asks you to report the total number of jurors who individually find the existence of a particular mitigating factor to be established by a preponderance of the evidence.

Earlier in these instructions, I stated that regardless of any opinion you may have as to what the law may be or should be, it would be a violation of your oaths as jurors to base your sentencing decision upon any view of the law other than that which is given to you in these instructions. Accordingly, it is not your role to pass on the wisdom of whether a particular mitigating factor submitted to you is, in your own personal view, the kind of circumstance that should weigh against imposition of the death penalty. If a mitigating factor that I state in these instructions and that appears on the Special Verdict Forms has been established by a preponderance of the evidence, you are required to weigh it in the balance to be struck between the aggravating and mitigating factors. It is up to you, however, to decide how much weight you individually assign to each particular mitigating factor.

The Special Verdict Form provides a space for you to indicate the number of jurors who find each Mitigating Factor. Complete that section.

22

### *Mitigating Factors to Consider*

The Mitigating Factors which the defendant asserts he has proved by a preponderance of the evidence are:

    A.      If not sentenced to death, Mr. Briseno will be sentenced to lifetime imprisonment without the possibility of release.

    B.      The Federal Bureau of Prisons will impose appropriate conditions of confinement and security with regard to Mr. Briseno.

    C.      Mr. Briseno is the product of a childhood marked by chaos, abuse and abandonment.

    D.      Growing up, Mr. Briseno lacked positive male role models in his home.

    E.      His mother's poor choices in the men she brought into the family home had a negative impact on Mr. Briseno.

    F.      Juan grew up in a neighborhood plagued with drugs, gangs, and violence.

    G.      Juan was raised in poverty.

    H.      Juan's basic needs were neglected when he was a young child.

    I.      Juan's older brother was a gang member and a poor role model.

    J.      Juan was recruited into the Imperial Gangsters when he was only _____.

    K.      Juan was unable to keep up with his peers in school.

    L.      Juan's father abandoned the family when Juan was only 8.

    M.      Juan's father and his associates abused alcohol in front of the children.

    N.      Juan has participated in rehabilitative programs while incarcerated.

O.      Juan donated his hair to cancer patients through "Locks of Love."

P.      Juan has a loving relationship with his twin cousins.

Q.      If Juan were to be executed others would suffer grief and loss.

R.      Juan has made a positive adjustment to incarceration and is likely to do so in federal prison.

S.      Cooperating witnesses and/or cooperating defendants who have killed someone will not be sentenced to death.

T.      The five victims of the murders voluntarily chose to engage in dangerous and illegal activities, a circumstance that contributed to their deaths.

U.      Mr. Briseno always behaved respectfully in court.

V.      Mr. Briseno's life has value.

W.      Another defendant, or defendants, equally culpable in the murders, will not be punished by death.

X.      There are other relevant circumstances that weigh against imposing a sentence of death.

### *Any Additional Mitigating Factors*

You are also permitted to consider **anything** else about the circumstances of the crime or about the defendant's background, record, or character or any other circumstance of the offense, that mitigate against imposition of the death penalty. So if there are any such Mitigating Factors, whether or not specifically argued by the attorneys for the defense, which at least one juror finds are established by a

24

preponderance of the evidence, you are free to consider them in your deliberations.

There is a space in Section V of the Special Verdict Form for each count for you to fill in

any additional Mitigating Factors and note the number of jurors who find that it exists.

Complete that Section for each count as you consider that count. But even if you are

unable to articulate or describe these additional Mitigating Factors, you may still give

them your full consideration without noting them on the Special Verdict Form.

The law does not require that there be a connection between a Mitigating Factor

and the crime committed. In short, your discretion in considering mitigating factors is

much broader than your discretion in considering aggravating factors. This was a

choice expressly made by Congress in enacting the capital punishment statute. What

weight you give each Mitigating and Aggravating Factor is entirely up to you.

After you complete Section V of the Special Verdict Form for the count you are

considering, you will move on to weigh the Aggravating Factor or Factors you have

found and the Mitigating Factor or Factors you may have found.

*8th Cir. Model Death Penalty Jury Instructions*, 12.09 (Mitigating Factors) (modified).
Defendant's Proposed Instructions at 16-22 (modified).
Government's Proposed Instructions at 14-15 (modified).

## COURT'S INSTRUCTION NO. 11

### Weighing Aggravating and Mitigating Factors

With respect to the capital count you are considering, if you unanimously find that the government proved beyond a reasonable doubt: 1) that the defendant was over 18 years of age at the time of the crime; and 2) the existence of at least one intent factor, and 3) the existence of at least one Statutory Aggravating Factor; and after you then decide whether the Government proved beyond a reasonable doubt the existence of the alleged Non-Statutory Aggravating Factors submitted to you with respect to that count, and whether the defendant proved the existence of any Mitigating Factors by a preponderance of the evidence, you will then engage in a weighing process.

In determining the appropriate sentence for each count, all of you must weigh the Aggravating Factor or Factors that you unanimously found proved beyond a reasonable doubt for that count, and each of you must weigh any Mitigating Factor or Factors that you individually found to exist for that count, and may weigh any Mitigating Factors that another fellow juror found to exist. Whether or not the circumstances of each count in this case make death the appropriate sentence is a decision that the law leaves entirely to you.

Although I have previously instructed you that you will not consider a death sentence for any count unless you first unanimously find the age requirement and at least one threshold intent factor proven beyond a reasonable doubt, I instruct you now that the age requirement and threshold intent factors **shall not** be considered when

26

3705

weighing the Aggravating and Mitigating Factors. You must weigh only the Statutory and Non-Statutory Aggravating Factors that you unanimously find to exist for a particular count against any Mitigating Factors that any juror individually, or with others, finds to exist for that count.

In engaging in the weighing process, you must avoid any influence of passion, prejudice, or undue sympathy. Your deliberations should be based upon the evidence you have seen and heard and the law on which I have instructed you.

The process of weighing Aggravating and Mitigating Factors against each other in order to determine the proper punishment is not a mechanical process. In other words, you should not simply count the number of Aggravating and Mitigating Factors and reach a decision based on which number is greater. You should instead consider the weight and value of each factor to make a unique, individualized, and reasoned judgment about the sentence this defendant should receive for each capital offense.

The law contemplates that different Factors may be given different weights or values by different jurors. Thus, you may find that one Mitigating Factor outweighs one or more Aggravating Factors. Or you may find, even if you have found no Mitigating Factors, that the Aggravating Factor or Factors proved do not, standing alone, justify imposition of a sentence of death. On the other hand, you may unanimously find that a particular Aggravating Factor sufficiently outweighs all Mitigating Factors combined to make a sentence of death the appropriate sentence. Each juror must decide what weight or value is to be given to a particular Aggravating or Mitigating Factor in the

27

decision-making process.

Again, whether or not the circumstances in any particular count justify a sentence of death is a decision that the law leaves entirely to you. You are never required to impose a death sentence.

*8th Cir. Model Death Penalty Jury Instructions,* 12.11 (Weighing Aggravation and Mitigation) (modified).
Defendant's Proposed Instructions at 22-25 (modified).
Government's Proposed Instructions at 15-17 (modified).

## COURT'S INSTRUCTION NO. 12

### Determination of Sentence (Section VI of Special Verdict Form)

You will be asked the following question for each capital count: "Do you, the jury, **unanimously** find that a sentence of death shall be imposed on the defendant JUAN BRISENO, aka Tito, as punishment" for the murder you are considering? You will answer that question either "Yes" or "No." In answering this question, you must unanimously decide whether the Aggravating Factor or Factors sufficiently outweigh the Mitigating Factor or Factors such that a sentence of death is the most appropriate sentence. If you answer "Yes" the Court will then be required to impose a death sentence for that count.

If you cannot unanimously agree that a sentence of death should be imposed, you should answer the question "No" and the Court will sentence Mr. Briseno to a life sentence without the possibility of release for the count you are considering. In the federal system, a sentence of life imprisonment without the possibility of release means just that — the defendant will never be released from prison. There is no parole in the federal system.

It is your duty as jurors to discuss all aspects of these sentencing issues with one another frankly and candidly in an effort to reach agreement, if you can reach agreement. Each of you must decide these questions for yourselves and not go along with the conclusions of your fellow jurors, but only after full consideration of the evidence with the other members of the jury and due respect for one another's opinions.

3708

While you are discussing this matter, do not hesitate to re-examine your own opinion, and to change your mind if you become convinced that you are wrong. But do not give up your honest beliefs as to the weight or the effect of the evidence solely because others think differently or simply to reach a verdict.

*7th Circuit Pattern Jury Instructions*, 7.03 (Unanimity/Disagreement Among Jurors).
*8th Cir. Model Death Penalty Jury Instructions*, 12.12 (Consequences of Deliberations) (modified).
Defendant's Proposed Instructions at 25-26 (modified).
Government's Proposed Instructions at 17-18 (modified).

30

## COURT'S INSTRUCTION NO. 13

### Right to Justice Without Discrimination

In your consideration of whether the death sentence is justified as to any count you must not consider the race, color, religious beliefs, national origin, or sex of either the defendant or the victim. You are not to return a sentence of death unless you would return a sentence of death for the crime in question without regard to the race, color, religious beliefs, national origin, or sex of either the defendant or the victim.

To emphasize the importance of this consideration, Section VII of the Special Verdict Form for each count contains a certification statement. Each juror should carefully read the statement, and sign your name in the appropriate place if the statement accurately reflects the manner in which each of you reached your individual decision on that count.

*8th Cir. Model Death Penalty Jury Instructions*, 12.13 (Justice Without Discrimination) (modified).
Defendant's Proposed Instructions at 26 (modified).
Government's Proposed Instructions at 18-19 (modified).

## COURT'S INSTRUCTION NO. 14

### Special Verdict Form

I have prepared a set of forms, one for each capital count, each entitled "Special Verdict Form," to assist you during your deliberations. You are required to record your decisions on these forms. Section I of the Special Verdict Form is where you will record your findings on the defendant's Age. Section II is where you will record your findings on the Threshold Intent Factors. Section III is where you will record your findings on Statutory Aggravating Factors. Section IV is where you will record your findings on Non-Statutory Aggravating Factors. Section V is where you will record your findings on Mitigating Factors. Section VI is where you will record your sentence determinations. Finally, Section VII contains the non-discrimination certification each juror must read and sign. You are each required to sign the Special Verdict Form.

There is a separate Special Verdict Form for you to record your decisions with respect to each determination as to each capital count charged in the Fourth Superseding Indictment, and by capital count I mean: Count Nine (Luis Ortiz), Count Thirteen (Michael Sessum), Count Fifteen (Miguel Mejias), Count Nineteen (Miguel Colon), and Count Twenty-one (Latroy Howard). You must consider each count separately and record your findings for each count in the appropriate spaces on the appropriate Special Verdict Form. Once you have finished your deliberations and filled in, signed, and dated all of the Special Verdict Forms, you will advise the Court that you have reached a verdict.

*8th Cir. Model Death Penalty Jury Instructions,* 12.20 (Special Verdict) (modified).
Government's Proposed Instructions at 19-20 (modified).

3712

## COURT'S INSTRUCTION NO. 15

### Concluding Instruction

Once you start deliberating, do not communicate about the case or your deliberations with anyone except other members of your jury. You may not communicate with others about the case or your deliberations by any means. This includes oral or written communication, as well as any electronic method of communication, like your phones, computers, or on the Internet, or any other method of communication.

If you need to communicate with me while you are deliberating, send a note through the court security officer. The note should be signed by the foreperson or by one or more members of the jury. To have a complete record of this trial, it is important that you do not communicate with me except by a written note. I may have to talk to the lawyers about your message, so it may take me some time to get back to you. You may continue your deliberations while you wait for my answer. Please be advised that transcripts of trial testimony are not available to you. You must rely on your collective memory of the testimony.

If you send me a message or question, you should not tell me any details of your deliberations or the breakdown of any votes you may have conducted.

Let me remind you again that nothing that I have said in these instructions, and nothing that I have said or done during either phase of the trial, has been said or done to suggest to you what I think your decisions should be. The decisions are your

34

exclusive responsibility.

You may now retire to begin your deliberations.

*8th Cir. Model Death Penalty Jury Instructions,* 12.21 (Concluding Instruction) (modified).
*7th Circuit Pattern Jury Instructions*, No. 7.01 (Jury Deliberations).
Defendant's Proposed Instructions at 26-28 (modified).
Government's Proposed Instructions at 20 (modified).

35

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| vs. | ) | 2:11-cr-00077 |
| | ) | |
| JUAN BRISENO | ) | |

**COURT'S PROPOSED VERDICT FORM (PENALTY PHASE)**

**(Completed Form To Be Filed Under Seal)**

**COUNT 9 (Murder of Luis Ortiz aka "Manolo")**

Dated: March 6, 2015.

/s/ Philip P. Simon
PHILIP P. SIMON, CHIEF JUDGE
UNITED STATES DISTRICT COURT

**THE UNITED STATES DISTRICT COURT FOR**
**THE NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| vs. | ) | 2:11-cr-00077 |
| | ) | |
| JUAN BRISENO | ) | |

**SPECIAL VERDICT FORM**

**COUNT 9 (Murder of Luis Ortiz aka "Manolo")**

**SECTION I. AGE OF DEFENDANT**

Do you, the jury, unanimously find that the Government proved, beyond a reasonable doubt, that the defendant JUAN BRISENO aka Tito was at least eighteen (18) years of age on September 26, 2007?

YES _____    NO _____

*Instructions:* If you answered "NO" in Section I, then stop your deliberations on this count and proceed to Section VII. Each juror should carefully read the statement in Section VII, and sign in the appropriate place if the statement accurately reflects the manner in which he or she reached his or her decision.

If you answered "YES" then proceed to Section II which follows.

3716

## SECTION II. REQUISITE MENTAL STATE

*Instructions:* Answer the following questions by marking the line next to the appropriate answer, "YES" or "NO," to indicate the jury's finding. Each affirmative finding must be unanimous.

### A. <u>First Threshold Intent Factor</u>

Do you, the jury, unanimously find that the Government proved, beyond a reasonable doubt, that the defendant JUAN BRISENO aka Tito intentionally killed Luis Ortiz?

YES _____ NO _____

### B. <u>Second Threshold Intent Factor</u>

Do you, the jury, unanimously find that the Government proved, beyond a reasonable doubt, that the defendant JUAN BRISENO aka Tito intentionally inflicted serious bodily injury which resulted in the death of Luis Ortiz?

YES _____ NO _____

### C. <u>Third Threshold Intent Factor</u>

Do you, the jury, unanimously find that the Government proved, beyond a reasonable doubt, that the defendant JUAN BRISENO aka Tito intentionally participated in an act, contemplating that the life of a person would be taken or intending that lethal force would be used in connection with a person, other than one of

the participants in the offense, and Luis Ortiz died as a direct result of the act?

YES _____     NO _____

### D.     Fourth Threshold Intent Factor

Do you, the jury, unanimously find that the Government proved, beyond a reasonable doubt, that the defendant JUAN BRISENO aka Tito intentionally and specifically engaged in an act of violence, knowing that the act created a grave risk of death to a person, other than one of the participants in the offense, such that participation in the act constituted a reckless disregard for human life and Luis Ortiz died as a direct result of the act?

YES _____     NO _____

*Instructions:* If you answered "NO" to **all** of the applicable Threshold Intent Factors, then stop your deliberations on this count and proceed to Section VII. Each juror should carefully read the statement in Section VII, and sign in the appropriate place if the statement accurately reflects the manner in which he or she reached his or her decision.

If you indicated that the United States has established **at least** one of the Threshold Intent Factors in this Section II, subsections A, B, C, or D, proceed to Section III which follows.

## SECTION III. STATUTORY AGGRAVATING FACTORS

*Instructions:* Answer the following question by marking the line next to the appropriate answer, "YES" or "NO," to indicate the jury's finding. An affirmative finding must be unanimous.

### A.    Substantial Planning and Premeditation

Do you, the jury, unanimously find that the Government proved, beyond a reasonable doubt, that the defendant JUAN BRISENO aka Tito committed the offense of murder after substantial planning and premeditation (as set out in Instruction 8 of the Court's Instructions) to cause the death of Luis Ortiz?

YES _____    NO _____

*Instructions:* If you answered "NO," then stop your deliberations and proceed to Section VII of this Form. Each juror should then carefully read the statement in Section VII, and sign in the appropriate place if the statement accurately reflects the manner in which he or she reached his or her decision.

If you answered "YES" (1) that  the defendant JUAN BRISENO aka Tito was at least eighteen (18) years of age on the date of the murder of Luis Ortiz, **and** (2) that at least one of the Threshold Intent Factors in Section II existed, **and** (3) that the Statutory Aggravating Factor in this Section III existed, proceed to Section IV, which follows.

## SECTION IV. NON STATUTORY AGGRAVATING FACTORS

*Instructions:* Answer the following questions by marking the line next to the appropriate answer, "YES" or "NO," to indicate the jury's finding. In order to answer "YES" you must be unanimous.

### A.   Future Dangerousness

Do you, the jury, unanimously find that the Government proved, beyond a reasonable doubt, that the defendant JUAN BRISENO aka Tito represents a continuing danger to the lives and safety of other persons as demonstrated by one or more of:  (1) his low potential for rehabilitation as demonstrated by repeated violent criminal acts; (2) his  willingness to take human life and a lack of remorse for his acts of violence and attempted acts of violence as demonstrated by statements that he made following these violent acts; or (3) his stated desire to impose a rule requiring fellow members of the Imperial Gangsters to shoot at rivals on sight, **and** that his future dangerousness tends to support the imposition of the death penalty as punishment for the murder of Luis Ortiz?

YES _____        NO _____

### B.   Contemporaneous Convictions for Other Criminal Activity

Do you, the jury, unanimously find that the Government proved, beyond a reasonable doubt, that the defendant JUAN BRISENO aka Tito was convicted at trial of other criminal activity, including additional murders or an attempted murder, **and** that this additional criminal activity tends to support the imposition of the death penalty as

punishment for the murder of Luis Ortiz?

YES _____     NO _____

**C.      Demonstrated Allegiance to Criminal Street Gang**

Do you, the jury, unanimously find that the Government proved, beyond a

reasonable doubt, that the defendant JUAN BRISENO aka Tito demonstrated an

allegiance to and membership in the Imperial Gangsters, a criminal street gang, **and**

that this allegiance and membership tends to support the imposition of the death

penalty as punishment for the murder of Luis Ortiz?

YES _____     NO _____

**D.      Victim Impact**

Do you, the jury, unanimously find that the Government proved, beyond a

reasonable doubt, that the defendant JUAN BRISENO aka Tito caused loss, injury and

harm to Luis Ortiz or to his family, **and** that such harm tends to support the imposition

of the death penalty as punishment for the murder of Luis Ortiz?

YES _____     NO _____

*Instructions:* Regardless of whether you found that the Government has

established any of the Non-Statutory Aggravating Factors in this Section IV, proceed to

Section V, which follows.

3721

## SECTION V. MITIGATING FACTORS

*Instructions:* For each of the following Mitigating Factors, indicate in the space provided the number of jurors who find the existence of that Mitigating Factor to be proved by a preponderance of the evidence.

Unlike for Aggravating Factors, your vote with respect to a Mitigating Factor **need not** be unanimous. A finding with respect to a Mitigating Factor may be made by **one (1)** or more of the members of the jury. Any juror persuaded of the existence of a Mitigating Factor must consider it in this case, regardless of the number of other jurors who agree the factor has been established. Further, any juror may weigh a Mitigating Factor found by another juror, even if he or she did not also find that factor to exist or to be mitigating.

## MITIGATING FACTORS

**A.**     If he is not sentenced to death, Mr. Briseno will be sentenced to lifetime imprisonment without the possibility of release. I charge you that this factor has been established.

<p style="text-align:center">Number of jurors who so find       _____</p>

**B.**     The Federal Bureau of Prisons will impose appropriate conditions of confinement and security with regard to Mr. Briseno.

<p style="text-align:center">Number of jurors who so find       _____</p>

**C.**     Mr. Briseno is the product of a childhood marked by chaos, abuse and abandonment.

<p style="text-align:center">Number of jurors who so find       _____</p>

**D.**     Growing up, Mr. Briseno lacked positive male role models in his home.

       Number of jurors who so find         _____

**E.**     His mother's poor choices in the men she brought into the family home had a

negative impact on Mr. Briseno.

       Number of jurors who so find         _____

**F.**     Juan grew up in a neighborhood plagued with drugs, gangs, and violence.

       Number of jurors who so find         _____

**G.**     Juan was raised in poverty.

       Number of jurors who so find         _____

**H.**     Juan's basic needs were neglected when he was a young child.

       Number of jurors who so find         _____

**I.**     Juan's older brother was a gang member and a poor role model.

       Number of jurors who so find         _____

**J.**     Juan was recruited into the Imperial Gangsters when he was only 16.

       Number of jurors who so find         _____

**K.**     Juan was unable to keep up with his peers in school.

       Number of jurors who so find         _____

**L.**     Juan's father abandoned the family when Juan was only 8.

       Number of jurors who so find         _____

**M.**     Juan's father and his associates abused alcohol in front of the children.

       Number of jurors who so find         _____

**N.**     Juan has participated in rehabilitative programs while incarcerated.

       Number of jurors who so find         _____

**O.**    Juan donated his hair to cancer patients through "Locks of Love."

        Number of jurors who so find        _____

**P.**    Juan has a loving relationship with his twin cousins.

        Number of jurors who so find        _____

**Q.**    If Juan were to be executed others would suffer grief and loss.

        Number of jurors who so find        _____

**R.**    Juan has made a positive adjustment to incarceration and is likely to do so in federal prison.

        Number of jurors who so find        _____

**S.**    Cooperating witnesses and/or cooperating defendants who have killed someone will not be sentenced to death.

        Number of jurors who so find        _____

**T.**    The five victims of the murders voluntarily chose to engage in dangerous and illegal activities, a circumstance that contributed to their deaths.

        Number of jurors who so find        _____

**U.**    Mr. Briseno always behaved respectfully in court.

        Number of jurors who so find        _____

**V.**    Mr. Briseno's life has value.

        Number of jurors who so find        _____

**W.**    Another defendant, or defendants equally culpable in the murders, will not be punished by death.

        Number of jurors who so find        _____

**X.**    There are other relevant circumstances that weigh against imposing a sentence of

death.

Number of jurors who so find                    _____

### ADDITIONAL MITIGATING FACTORS

Write in any Additional Mitigating Factors determined by **any one (1) or more members** of the jury, and indicate the number of jurors who find the existence of that Mitigating Factor to be proved by a preponderance of the evidence. If your answer is none, then write "NONE." If extra space is needed, write "CONTINUED" and use the reverse side of this page for extra space.

A.    _____

_____

_____

_____

Number of jurors who so find          _____

B.    _____

_____

_____

_____

Number of jurors who so find          _____

C.    _____

_____

_____

_____

Number of jurors who so find          _____

**D.**   _____

_____

_____

_____

Number of jurors who so find            _____

**E.**   _____

_____

_____

_____

Number of jurors who so find            _____


*Instructions:* Regardless of the jury's determinations with respect to the existence

of any Mitigating Factors in this Section V, proceed to Section VI.

## SECTION VI. DETERMINATION OF SENTENCE

*Instructions:* Consider whether the Aggravating Factor or Factors found to exist sufficiently outweigh any Mitigating Factor or Factors found to exist, or in the absence of any Mitigating Factors, whether the Aggravating Factor or Factors are themselves sufficient to justify a sentence of death, and whether death is therefore the appropriate sentence in this case. A sentence of death shall only be imposed if your decision in favor of it is **unanimous.** Based upon that consideration, answer the following question:

Do you, the jury, **unanimously** find that a sentence of death shall be imposed on the defendant JUAN BRISENO aka Tito as punishment for the murder of Luis Ortiz?

YES _____      NO _____

**Note:** If you cannot unanimously agree that a sentence of death should be imposed, you should answer the above question "No," and the Court will sentence Mr. Briseno to a life sentence without the possibility of release for the murder of Mr. Ortiz.

After answering the above question, each juror should sign his or her name below, and the date should be filled in. Once each juror has signed proceed to Section VII of this Special Verdict Form.

_____          _____

_____          _____

_____     _____


_____     _____


_____     _____


_____     _____
                                  FOREPERSON


Date:  March ___, 2015

## VII. CERTIFICATION

By signing below, each juror certifies that consideration of the race, color, religious beliefs, national origin, or sex of the defendant or any victim was not involved in reaching his or her individual decision, and that the individual juror would have made the same recommendation regarding a sentence for the crime or crimes in question regardless of the race, color, religious beliefs, national origin, or sex of the defendant, or the victims.

_____          _____


_____          _____


_____          _____


_____          _____


_____          _____
                                          FOREPERSON


Date:  March ___, 2015.

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| vs. | ) | 2:11-cr-00077 |
| | ) | |
| JUAN BRISENO | ) | |

**COURT'S PROPOSED VERDICT FORM (PENALTY PHASE)**

**(Completed Form To Be Filed Under Seal)**

**COUNT 13 (Murder of Michael Sessum)**

Dated: March 6, 2015.

/s/ Philip P. Simon
PHILIP P. SIMON, CHIEF JUDGE
UNITED STATES DISTRICT COURT

THE UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| vs. | ) | 2:11-cr-00077 |
| | ) | |
| JUAN BRISENO | ) | |

**SPECIAL VERDICT FORM**

**COUNT 13 (Murder of Michael Sessum)**

**SECTION I. AGE OF DEFENDANT**

Do you, the jury, unanimously find that the Government proved, beyond a

reasonable doubt, that the defendant JUAN BRISENO aka Tito was at least eighteen (18)

years of age on June 3, 2008?

YES _____     NO _____

*Instructions:* If you answered "NO" in Section I, then stop your deliberations on

this count and proceed to Section VII. Each juror should carefully read the statement in

Section VII, and sign in the appropriate place if the statement accurately reflects the

manner in which he or she reached his or her decision.

If you answered "YES" then proceed to Section II which follows.

## SECTION II. REQUISITE MENTAL STATE

*Instructions:* Answer the following questions by marking the line next to the appropriate answer, "YES" or "NO," to indicate the jury's finding. Each affirmative finding must be unanimous.

### A. First Threshold Intent Factor

Do you, the jury, unanimously find that the Government proved, beyond a reasonable doubt, that the defendant JUAN BRISENO aka Tito intentionally participated in an act, contemplating that the life of a person would be taken or intending that lethal force would be used in connection with a person, other than one of the participants in the offense, and Michael Sessum died as a direct result of the act?

YES _____ NO _____

### B. Second Threshold Intent Factor

Do you, the jury, unanimously find that the Government proved, beyond a reasonable doubt, that the defendant JUAN BRISENO aka Tito intentionally and specifically engaged in an act of violence, knowing that the act created a grave risk of death to a person, other than one of the participants in the offense, such that participation in the act constituted a reckless disregard for human life and Michael Sessum died as a direct result of the act?

YES _____ NO _____

3732

*Instructions:* If you answered "NO" to **all** of the applicable Threshold Intent Factors, then stop your deliberations on this count and proceed to Section VII. Each juror should carefully read the statement in Section VII, and sign in the appropriate place if the statement accurately reflects the manner in which he or she reached his or her decision.

If you indicated that the United States has established **at least** one of the Threshold Intent Factors in this Section II, subsections A or B, proceed to Section III which follows.

## SECTION III. STATUTORY AGGRAVATING FACTORS

*Instructions:* Answer the following questions by marking the line next to the appropriate answer, "YES" or "NO," to indicate the jury's finding. Each affirmative finding must be unanimous.

### A.    Substantial Planning and Premeditation

Do you, the jury, unanimously find that the Government proved, beyond a reasonable doubt, that the defendant JUAN BRISENO aka Tito committed the offense of murder after substantial planning and premeditation (as set out in Instruction 8 of the Court's Instructions) to cause the death of Michael Sessum?

YES _____        NO _____

### B.    Grave Risk of Death to Additional Persons

Do you, the jury, unanimously find that the Government proved, beyond a reasonable doubt, that in the commission of the murder of Michael Sessum, or in escaping apprehension for the offense, the defendant JUAN BRISENO aka Tito knowingly created a grave risk of death to one or more persons in addition to Michael Sessum?

YES _____        NO _____

C. **Multiple Killings or Attempted Killings**

Do you, the jury, unanimously find that the Government proved, beyond a reasonable doubt, that the defendant JUAN BRISENO aka Tito intentionally killed or attempted to kill more than one person in a single criminal episode in committing the murder of Michael Sessum?

YES _____    NO _____

*Instructions:* If you answered "NO" to **all** of the listed Statutory Aggravating Factors, then stop your deliberations and proceed to Section VII of this Form. Each juror should then carefully read the statement in Section VII, and sign in the appropriate place if the statement accurately reflects the manner in which he or she reached his or her decision.

If you answered "YES" (1) that the defendant JUAN BRISENO aka Tito was at least eighteen (18) years of age on the date of the murder of Michael Sessum, **and** (2) that at least one of the Threshold Intent Factors in Section II existed, **and** (3) that at least one of the Statutory Aggravating Factors in this Section III existed, proceed to Section IV, which follows.

## SECTION IV. NON STATUTORY AGGRAVATING FACTORS

*Instructions:* Answer the following questions by marking the line next to the appropriate answer, "YES" or "NO," to indicate the jury's finding. In order to answer "YES" you must be unanimous.

### A. Future Dangerousness

Do you, the jury, unanimously find that the Government proved, beyond a reasonable doubt, that the defendant JUAN BRISENO aka Tito represents a continuing danger to the lives and safety of other persons as demonstrated by one or more of: (1) his low potential for rehabilitation as demonstrated by repeated violent criminal acts; (2) his willingness to take human life and a lack of remorse for his acts of violence and attempted acts of violence as demonstrated by statements that he made following these violent acts; or (3) his stated desire to impose a rule requiring fellow members of the Imperial Gangsters to shoot at rivals on sight, **and** that his future dangerousness tends to support the imposition of the death penalty as punishment for the murder of Michael Sessum?

YES _____    NO _____

### B. Contemporaneous Convictions for Other Criminal Activity

Do you, the jury, unanimously find that the Government proved, beyond a reasonable doubt, that the defendant JUAN BRISENO aka Tito was convicted at trial of other criminal activity, including additional murders or an attempted murder, **and** that

this additional criminal activity tends to support the imposition of the death penalty as punishment for the murder of Michael Sessum?

YES _____    NO _____

### C.    Demonstrated Allegiance to Criminal Street Gang

Do you, the jury, unanimously find that the Government proved, beyond a reasonable doubt, that the defendant JUAN BRISENO aka Tito demonstrated an allegiance to and membership in the Imperial Gangsters, a criminal street gang, **and** that this allegiance and membership tends to support the imposition of the death penalty as punishment for the murder of Michael Sessum?

YES _____    NO _____

### D.    Victim Impact

Do you, the jury, unanimously find that the Government proved, beyond a reasonable doubt, that the defendant JUAN BRISENO aka Tito caused loss, injury and harm to Michael Sessum or to his family or friends, **and** that such harm tends to support the imposition of the death penalty as punishment for the murder of Michael Sessum?

YES _____    NO _____

*Instructions:* Regardless of whether you found that the Government has established any of the Non-Statutory Aggravating Factors in this Section IV, proceed to Section V, which follows.

## SECTION V. MITIGATING FACTORS

*Instructions:* For each of the following Mitigating Factors, indicate in the space provided the number of jurors who find the existence of that Mitigating Factor to be proved by a preponderance of the evidence.

Unlike for Aggravating Factors, your vote with respect to a Mitigating Factor **need not** be unanimous. A finding with respect to a Mitigating Factor may be made by **one (1)** or more of the members of the jury. Any juror persuaded of the existence of a Mitigating Factor must consider it in this case, regardless of the number of other jurors who agree the factor has been established. Further, any juror may weigh a Mitigating Factor found by another juror, even if he or she did not also find that factor to exist or to be mitigating.

### MITIGATING FACTORS

A.      If he is not sentenced to death, Mr. Briseno will be sentenced to lifetime imprisonment without the possibility of release. I charge you that this factor has been established.

Number of jurors who so find                    _____

B.      The Federal Bureau of Prisons will impose appropriate conditions of confinement and security with regard to Mr. Briseno.

Number of jurors who so find                    _____

C.      Mr. Briseno is the product of a childhood marked by chaos, abuse and abandonment.

Number of jurors who so find                    _____

**D.**  Growing up, Mr. Briseno lacked positive male role models in his home.

Number of jurors who so find          _____

**E.**  His mother's poor choices in the men she brought into the family home had a

negative impact on Mr. Briseno.

Number of jurors who so find          _____

**F.**  Juan grew up in a neighborhood plagued with drugs, gangs, and violence.

Number of jurors who so find          _____

**G.**  Juan was raised in poverty.

Number of jurors who so find          _____

**H.**  Juan's basic needs were neglected when he was a young child.

Number of jurors who so find          _____

**I.**  Juan's older brother was a gang member and a poor role model.

Number of jurors who so find          _____

**J.**  Juan was recruited into the Imperial Gangsters when he was only 16.

Number of jurors who so find          _____

**K.**  Juan was unable to keep up with his peers in school.

Number of jurors who so find          _____

**L.**  Juan's father abandoned the family when Juan was only 8.

Number of jurors who so find          _____

**M.**  Juan's father and his associates abused alcohol in front of the children.

Number of jurors who so find          _____

**N.**     Juan has participated in rehabilitative programs while incarcerated.

   Number of jurors who so find                    _____

**O.**     Juan donated his hair to cancer patients through "Locks of Love."

   Number of jurors who so find                    _____

**P.**     Juan has a loving relationship with his twin cousins.

   Number of jurors who so find                    _____

**Q.**     If Juan were to be executed others would suffer grief and loss.

   Number of jurors who so find                    _____

**R.**     Juan has made a positive adjustment to incarceration and is likely to do so in

federal prison.

   Number of jurors who so find                    _____

**S.**     Cooperating witnesses and/or cooperating defendants who have killed someone

will not be sentenced to death.

   Number of jurors who so find                    _____

**T.**     The five victims of the murders voluntarily chose to engage in dangerous and

illegal activities, a circumstance that contributed to their deaths.

   Number of jurors who so find                    _____

**U.**     Mr. Briseno always behaved respectfully in court.

   Number of jurors who so find                    _____

**V.**     Mr. Briseno's life has value.

   Number of jurors who so find                    _____

**W.**     Another defendant, or defendants equally culpable in the murders, will not be

punished by death.

Number of jurors who so find     _____

**X.**    There are other relevant circumstances that weigh against imposing a sentence of death.

Number of jurors who so find     _____

## ADDITIONAL MITIGATING FACTORS

Write in any Additional Mitigating Factors determined by **any one (1) or more members** of the jury, and indicate the number of jurors who find the existence of that Mitigating Factor to be proved by a preponderance of the evidence. If your answer is none, then write "NONE." If extra space is needed, write "CONTINUED" and use the reverse side of this page for extra space.

**A.**    _____

_____

_____

_____

Number of jurors who so find     _____

**B.**    _____

_____

_____

_____

Number of jurors who so find     _____

**C.** _____

_____

_____

_____

Number of jurors who so find          _____

**D.** _____

_____

_____

_____

Number of jurors who so find          _____

**E.** _____

_____

_____

_____

Number of jurors who so find          _____

*Instructions:* Regardless of the jury's determinations with respect to the existence of any Mitigating Factors in this Section V, proceed to Section VI.

## SECTION VI. DETERMINATION OF SENTENCE

*Instructions:* Consider whether the Aggravating Factor or Factors found to exist sufficiently outweigh any Mitigating Factor or Factors found to exist, or in the absence of any Mitigating Factors, whether the Aggravating Factor or Factors are themselves sufficient to justify a sentence of death, and whether death is therefore the appropriate sentence in this case. A sentence of death shall only be imposed if your decision in favor of it is **unanimous**. Based upon that consideration, answer the following question:

Do you, the jury, **unanimously** find that a sentence of death shall be imposed on the defendant JUAN BRISENO aka Tito as punishment for the murder of Michael Sessum?

YES _____        NO _____

**Note:** If you cannot unanimously agree that a sentence of death should be imposed, you should answer the above question "No," and the Court will sentence Mr. Briseno to a life sentence without the possibility of release for the murder of Mr. Sessum.

After answering the above question, each juror should sign his or her name below, and the date should be filled in. Once each juror has signed proceed to Section VII of this Special Verdict Form.

_____        _____

3745

_____     _____


_____     _____


_____     _____


_____     _____


_____     _____

                                    FOREPERSON


Date:  March ___, 2015

## VII. CERTIFICATION

By signing below, each juror certifies that consideration of the race, color, religious beliefs, national origin, or sex of the defendant or any victim was not involved in reaching his or her individual decision, and that the individual juror would have made the same recommendation regarding a sentence for the crime or crimes in question regardless of the race, color, religious beliefs, national origin, or sex of the defendant, or the victims.

_____ _____

_____ _____

_____ _____

_____ _____

_____ _____

_____ _____
                                              FOREPERSON

Date:  March \_\_, 2015.

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| vs. | ) | 2:11-cr-00077 |
| | ) | |
| JUAN BRISENO | ) | |

**COURT'S PROPOSED VERDICT FORM (PENALTY PHASE)**

**(Completed Form To Be Filed Under Seal)**

**COUNT 15 (Murder of Miguel Mejias aka "King Nelly")**

Dated: March 6, 2015.

/s/ Philip P. Simon
PHILIP P. SIMON, CHIEF JUDGE
UNITED STATES DISTRICT COURT

**THE UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION**

UNITED STATES OF AMERICA      )
                             )
          vs.                 )          2:11-cr-00077
                             )
JUAN BRISENO                  )

**SPECIAL VERDICT FORM**

**COUNT 15 (Murder of Miguel Mejias aka "King Nelly")**

**SECTION I. AGE OF DEFENDANT**

Do you, the jury, unanimously find that the Government proved, beyond a

reasonable doubt, that the defendant JUAN BRISENO aka Tito was at least eighteen (18)

years of age on June 3, 2008?

YES _____      NO _____

*Instructions:* If you answered "NO" in Section I, then stop your deliberations on

this count and proceed to Section VII. Each juror should carefully read the statement in

Section VII, and sign in the appropriate place if the statement accurately reflects the

manner in which he or she reached his or her decision.

If you answered "YES" then proceed to Section II which follows.

3748

## SECTION II. REQUISITE MENTAL STATE

*Instructions:* Answer the following questions by marking the line next to the appropriate answer, "YES" or "NO," to indicate the jury's finding. Each affirmative finding must be unanimous.

### A. First Threshold Intent Factor

Do you, the jury, unanimously find that the Government proved, beyond a reasonable doubt, that the defendant JUAN BRISENO aka Tito intentionally inflicted serious bodily injury which resulted in the death of Miguel Mejias?

<div align="center">YES _____        NO _____</div>

### B. Second Threshold Intent Factor

Do you, the jury, unanimously find that the Government proved, beyond a reasonable doubt, that the defendant JUAN BRISENO aka Tito intentionally participated in an act, contemplating that the life of a person would be taken or intending that lethal force would be used in connection with a person, other than one of the participants in the offense, and Miguel Mejias died as a direct result of the act?

<div align="center">YES _____        NO _____</div>

### C. Third Threshold Intent Factor

Do you, the jury, unanimously find that the Government proved, beyond a

reasonable doubt, that the defendant JUAN BRISENO aka Tito intentionally and specifically engaged in an act of violence, knowing that the act created a grave risk of death to a person, other than one of the participants in the offense, such that participation in the act constituted a reckless disregard for human life and Miguel Mejias died as a direct result of the act?

YES _____      NO _____

*Instructions:* If you answered "NO" to **all** of the applicable Threshold Intent Factors, then stop your deliberations on this count and proceed to Section VII. Each juror should carefully read the statement in Section VII, and sign in the appropriate place if the statement accurately reflects the manner in which he or she reached his or her decision.

If you indicated that the United States has established **at least** one of the Threshold Intent Factors in this Section II, subsections A, B, or C, proceed to Section III which follows.

### SECTION III. STATUTORY AGGRAVATING FACTORS

*Instructions:* Answer the following questions by marking the line next to the appropriate answer, "YES" or "NO," to indicate the jury's finding. Each affirmative finding must be unanimous.

**A.     Substantial Planning and Premeditation**

Do you, the jury, unanimously find that the Government proved, beyond a reasonable doubt, that the defendant JUAN BRISENO aka Tito committed the offense of murder after substantial planning and premeditation (as set out in Instruction 8 of the Court's Instructions) to cause the death of Miguel Mejias?

YES _____          NO _____

**B.     Grave Risk of Death to Additional Persons**

Do you, the jury, unanimously find that the Government proved, beyond a reasonable doubt, that in the commission of the murder of Miguel Mejias, or in escaping apprehension for the offense, the defendant JUAN BRISENO aka Tito knowingly created a grave risk of death to one or more persons in addition to Miguel Mejias?

YES _____          NO _____

**C.     Multiple Killings or Attempted Killings**

Do you, the jury, unanimously find that the Government proved, beyond a

reasonable doubt, that the defendant JUAN BRISENO aka Tito intentionally killed or attempted to kill more than one person in a single criminal episode in committing the murder of Miguel Mejias?

YES _____ NO _____

*Instructions:* If you answered "NO" to **all** of the listed Statutory Aggravating Factors, then stop your deliberations and proceed to Section VII of this Form. Each juror should then carefully read the statement in Section VII, and sign in the appropriate place if the statement accurately reflects the manner in which he or she reached his or her decision.

If you answered "YES" (1) that the defendant JUAN BRISENO aka Tito was at least eighteen (18) years of age on the date of the murder of Miguel Mejias, **and** (2) that at least one of the Threshold Intent Factors in Section II existed, **and** (3) that at least one of the Statutory Aggravating Factors in this Section III existed, proceed to Section IV, which follows.

## SECTION IV. NON STATUTORY AGGRAVATING FACTORS

*Instructions:* Answer the following questions by marking the line next to the appropriate answer, "YES" or "NO," to indicate the jury's finding. In order to answer "YES" you must be unanimous.

### A.     Future Dangerousness

Do you, the jury, unanimously find that the Government proved, beyond a reasonable doubt, that the defendant JUAN BRISENO aka Tito represents a continuing danger to the lives and safety of other persons as demonstrated by one or more of:  (1) his low potential for rehabilitation as demonstrated by repeated violent criminal acts; (2) his  willingness to take human life and a lack of remorse for his acts of violence and attempted acts of violence as demonstrated by statements that he made following these violent acts; or (3) his stated desire to impose a rule requiring fellow members of the Imperial Gangsters to shoot at rivals on sight, **and** that his future dangerousness tends to support the imposition of the death penalty as punishment for the murder of Miguel Mejias?

YES _____      NO _____

### B.     Contemporaneous Convictions for Other Criminal Activity

Do you, the jury, unanimously find that the Government proved, beyond a reasonable doubt, that the defendant JUAN BRISENO aka Tito was convicted at trial of other criminal activity, including additional murders or an attempted murder, **and** that

3753

this additional criminal activity tends to support the imposition of the death penalty as punishment for the murder of Miguel Mejias?

YES _____    NO _____

**C.    Demonstrated Allegiance to Criminal Street Gang**

Do you, the jury, unanimously find that the Government proved, beyond a reasonable doubt, that the defendant JUAN BRISENO aka Tito demonstrated an allegiance to and membership in the Imperial Gangsters, a criminal street gang, **and** that this allegiance and membership tends to support the imposition of the death penalty as punishment for the murder of Miguel Mejias?

YES _____    NO _____

**D.    Victim Impact**

Do you, the jury, unanimously find that the Government proved, beyond a reasonable doubt, that the defendant JUAN BRISENO aka Tito caused loss, injury and harm to Miguel Mejias or to his family, **and** that such harm tends to support the imposition of the death penalty as punishment for the murder of Miguel Mejias?

YES _____    NO _____

*Instructions:* Regardless of whether you found that the Government has established any of the Non-Statutory Aggravating Factors in this Section IV, proceed to Section V, which follows.

**SECTION V. MITIGATING FACTORS**

*Instructions:* For each of the following Mitigating Factors, indicate in the space provided the number of jurors who find the existence of that Mitigating Factor to be proved by a preponderance of the evidence.

Unlike for Aggravating Factors, your vote with respect to a Mitigating Factor **need not** be unanimous. A finding with respect to a Mitigating Factor may be made by **one (1)** or more of the members of the jury. Any juror persuaded of the existence of a Mitigating Factor must consider it in this case, regardless of the number of other jurors who agree the factor has been established. Further, any juror may weigh a Mitigating Factor found by another juror, even if he or she did not also find that factor to exist or to be mitigating.

**MITIGATING FACTORS**

A.     If he is not sentenced to death, Mr. Briseno will be sentenced to lifetime imprisonment without the possibility of release. I charge you that this factor has been established.

Number of jurors who so find          _____

B.     The Federal Bureau of Prisons will impose appropriate conditions of confinement and security with regard to Mr. Briseno.

Number of jurors who so find          _____

C.     Mr. Briseno is the product of a childhood marked by chaos, abuse and abandonment.

Number of jurors who so find          _____

**D.**     Growing up, Mr. Briseno lacked positive male role models in his home.

          Number of jurors who so find                    _____

**E.**     His mother's poor choices in the men she brought into the family home had a

negative impact on Mr. Briseno.

          Number of jurors who so find                    _____

**F.**     Juan grew up in a neighborhood plagued with drugs, gangs, and violence.

          Number of jurors who so find                    _____

**G.**     Juan was raised in poverty.

          Number of jurors who so find                    _____

**H.**     Juan's basic needs were neglected when he was a young child.

          Number of jurors who so find                    _____

**I.**     Juan's older brother was a gang member and a poor role model.

          Number of jurors who so find                    _____

**J.**     Juan was recruited into the Imperial Gangsters when he was only 16.

          Number of jurors who so find                    _____

**K.**     Juan was unable to keep up with his peers in school.

          Number of jurors who so find                    _____

**L.**     Juan's father abandoned the family when Juan was only 8.

          Number of jurors who so find                    _____

**M.**     Juan's father and his associates abused alcohol in front of the children.

          Number of jurors who so find                    _____

**N.**     Juan has participated in rehabilitative programs while incarcerated.

         Number of jurors who so find                    _____

**O.**     Juan donated his hair to cancer patients through "Locks of Love."

         Number of jurors who so find                    _____

**P.**     Juan has a loving relationship with his twin cousins.

         Number of jurors who so find                    _____

**Q.**     If Juan were to be executed others would suffer grief and loss.

         Number of jurors who so find                    _____

**R.**     Juan has made a positive adjustment to incarceration and is likely to do so in

federal prison.

         Number of jurors who so find                    _____

**S.**     Cooperating witnesses and/or cooperating defendants who have killed someone

will not be sentenced to death.

         Number of jurors who so find                    _____

**T.**     The five victims of the murders voluntarily chose to engage in dangerous and

illegal activities, a circumstance that contributed to their deaths.

         Number of jurors who so find                    _____

**U.**     Mr. Briseno always behaved respectfully in court.

         Number of jurors who so find                    _____

**V.**     Mr. Briseno's life has value.

         Number of jurors who so find                    _____

**W.**     Another defendant, or defendants equally culpable in the murders, will not be

punished by death.

        Number of jurors who so find     _____

**X.**    There are other relevant circumstances that weigh against imposing a sentence of death.

        Number of jurors who so find     _____

### ADDITIONAL MITIGATING FACTORS

Write in any Additional Mitigating Factors determined by **any one (1) or more members** of the jury, and indicate the number of jurors who find the existence of that Mitigating Factor to be proved by a preponderance of the evidence. If your answer is none, then write "NONE." If extra space is needed, write "CONTINUED" and use the reverse side of this page for extra space.

**A.**    _____

    _____

    _____

    Number of jurors who so find     _____

**B.**    _____

    _____

    _____

    Number of jurors who so find     _____

C.  _____

_____

_____

_____

Number of jurors who so find      _____

D.  _____

_____

_____

_____

Number of jurors who so find      _____

E.  _____

_____

_____

_____

Number of jurors who so find      _____

*Instructions:* Regardless of the jury's determinations with respect to the existence of any Mitigating Factors in this Section V, proceed to Section VI.

**SECTION VI. DETERMINATION OF SENTENCE**

*Instructions:* Consider whether the Aggravating Factor or Factors found to exist
sufficiently outweigh any Mitigating Factor or Factors found to exist, or in the absence
of any Mitigating Factors, whether the Aggravating Factor or Factors are themselves
sufficient to justify a sentence of death, and whether death is therefore the appropriate
sentence in this case. A sentence of death shall only be imposed if your decision in favor
of it is **unanimous**. Based upon that consideration, answer the following question:


Do you, the jury, **unanimously** find that a sentence of death shall be imposed on
the defendant JUAN BRISENO aka Tito as punishment for the murder of Miguel
Mejias?


YES _____       NO _____

**Note:** If you cannot unanimously agree that a sentence of death should be
imposed, you should answer the above question "No," and the Court will sentence Mr.
Briseno to a life sentence without the possibility of release for the murder of Mr. Mejias.

After answering the above question, each juror should sign his or her name
below, and the date should be filled in. Once each juror has signed proceed to Section
VII of this Special Verdict Form.


_____       _____

_____        _____

_____        _____

_____        _____

_____        _____

_____        _____

FOREPERSON

Date:  March \_\_\_, 2015

## VII. CERTIFICATION

By signing below, each juror certifies that consideration of the race, color, religious beliefs, national origin, or sex of the defendant or any victim was not involved in reaching his or her individual decision, and that the individual juror would have made the same recommendation regarding a sentence for the crime or crimes in question regardless of the race, color, religious beliefs, national origin, or sex of the defendant, or the victims.

_____        _____

_____        _____

_____        _____

_____        _____

_____        _____
                                                                                                                     FOREPERSON

Date:  March \_\_, 2015.

3763

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| vs. | ) | 2:11-cr-00077 |
| | ) | |
| JUAN BRISENO | ) | |

**COURT'S PROPOSED VERDICT FORM (PENALTY PHASE)**

**(Completed Form To Be Filed Under Seal)**

**COUNT 19 (Murder of Miguel Colon aka "Migs")**

Dated: March 6, 2015.

/s/ Philip P. Simon
PHILIP P. SIMON, CHIEF JUDGE
UNITED STATES DISTRICT COURT

# THE UNITED STATES DISTRICT COURT FOR
## THE NORTHERN DISTRICT OF INDIANA
### HAMMOND DIVISION

UNITED STATES OF AMERICA      )

                       )

       vs.                    )              2:11-cr-00077

                       )

JUAN BRISENO                )

## SPECIAL VERDICT FORM

## COUNT 19 (Murder of Miguel Colon aka "Migs")

## SECTION I. AGE OF DEFENDANT

Do you, the jury, unanimously find that the Government proved, beyond a reasonable doubt, that the defendant JUAN BRISENO aka Tito was at least eighteen (18) years of age on February 7, 2010?

YES _____      NO _____

*Instructions:* If you answered "NO" in Section I, then stop your deliberations on this count and proceed to Section VII. Each juror should carefully read the statement in Section VII, and sign in the appropriate place if the statement accurately reflects the manner in which he or she reached his or her decision.

If you answered "YES" then proceed to Section II which follows.

## SECTION II. REQUISITE MENTAL STATE

*Instructions:* Answer the following questions by marking the line next to the appropriate answer, "YES" or "NO," to indicate the jury's finding. Each affirmative finding must be unanimous.

### A. First Threshold Intent Factor

Do you, the jury, unanimously find that the Government proved, beyond a reasonable doubt, that the defendant JUAN BRISENO aka Tito intentionally participated in an act, contemplating that the life of a person would be taken or intending that lethal force would be used in connection with a person, other than one of the participants in the offense, and Miguel Colon died as a direct result of the act?

YES _____      NO _____

### B. Second Threshold Intent Factor

Do you, the jury, unanimously find that the Government proved, beyond a reasonable doubt, that the defendant JUAN BRISENO aka Tito intentionally and specifically engaged in an act of violence, knowing that the act created a grave risk of death to a person, other than one of the participants in the offense, such that participation in the act constituted a reckless disregard for human life and Miguel Colon died as a direct result of the act?

YES _____      NO _____

*Instructions:* If you answered "NO" to **all** of the applicable Threshold Intent Factors, then stop your deliberations on this count and proceed to Section VII. Each juror should carefully read the statement in Section VII, and sign in the appropriate place if the statement accurately reflects the manner in which he or she reached his or her decision.

If you indicated that the United States has established **at least** one of the Threshold Intent Factors in this Section II, subsections A or B, proceed to Section III which follows.

## SECTION III. STATUTORY AGGRAVATING FACTORS

*Instructions:* Answer the following questions by marking the line next to the appropriate answer, "YES" or "NO," to indicate the jury's finding. Each affirmative finding must be unanimous.

**A. Substantial Planning and Premeditation**

Do you, the jury, unanimously find that the Government proved, beyond a reasonable doubt, that the defendant JUAN BRISENO aka Tito committed the offense of murder after substantial planning and premeditation (as set out in Instruction 8 of the Court's Instructions) to cause the death of Miguel Colon?

YES _____    NO _____

**B. Grave Risk of Death to Additional Persons**

Do you, the jury, unanimously find that the Government proved, beyond a reasonable doubt, that in the commission of the murder of Miguel Colon, or in escaping apprehension for the offense, the defendant JUAN BRISENO aka Tito knowingly created a grave risk of death to one or more persons in addition to Miguel Colon?

YES _____    NO _____

*Instructions:* If you answered "NO" to **all** of the listed Statutory Aggravating Factors, then stop your deliberations and proceed to Section VII of this Form. Each juror

should then carefully read the statement in Section VII, and sign in the appropriate

place if the statement accurately reflects the manner in which he or she reached his or

her decision.

If you answered "YES" (1) that the defendant JUAN BRISENO aka Tito was at

least eighteen (18) years of age on the date of the murder of Miguel Colon, **and** (2) that

at least one of the Threshold Intent Factors in Section II existed, **and** (3) that at least one

of the Statutory Aggravating Factors in this Section III existed, proceed to Section IV,

which follows.

## SECTION IV. NON STATUTORY AGGRAVATING FACTORS

*Instructions:* Answer the following questions by marking the line next to the appropriate answer, "YES" or "NO," to indicate the jury's finding. In order to answer "YES" you must be unanimous.

### A.    Future Dangerousness

Do you, the jury, unanimously find that the Government proved, beyond a reasonable doubt, that the defendant JUAN BRISENO aka Tito represents a continuing danger to the lives and safety of other persons as demonstrated by one or more of: (1) his low potential for rehabilitation as demonstrated by repeated violent criminal acts; (2) his willingness to take human life and a lack of remorse for his acts of violence and attempted acts of violence as demonstrated by statements that he made following these violent acts; or (3) his stated desire to impose a rule requiring fellow members of the Imperial Gangsters to shoot at rivals on sight, **and** that his future dangerousness tends to support the imposition of the death penalty as punishment for the murder of Miguel Colon?

YES _____ NO _____

### B.    Contemporaneous Convictions for Other Criminal Activity

Do you, the jury, unanimously find that the Government proved, beyond a reasonable doubt, that the defendant JUAN BRISENO aka Tito was convicted at trial of other criminal activity, including additional murders or an attempted murder, **and** that

this additional criminal activity tends to support the imposition of the death penalty as punishment for the murder of Miguel Colon?

YES _____     NO _____

**C.     Demonstrated Allegiance to Criminal Street Gang**

Do you, the jury, unanimously find that the Government proved, beyond a reasonable doubt, that the defendant JUAN BRISENO aka Tito demonstrated an allegiance to and membership in the Imperial Gangsters, a criminal street gang, **and** that this allegiance and membership tends to support the imposition of the death penalty as punishment for the murder of Miguel Colon?

YES _____     NO _____

**D.     Victim Impact**

Do you, the jury, unanimously find that the Government proved, beyond a reasonable doubt, that the defendant JUAN BRISENO aka Tito caused loss, injury and harm to Miguel Colon or to his family, **and** that such harm tends to support the imposition of the death penalty as punishment for the murder of Miguel Colon?

YES _____     NO _____

*Instructions:* Regardless of whether you found that the Government has established any of the Non-Statutory Aggravating Factors in this Section IV, proceed to Section V, which follows.

## SECTION V. MITIGATING FACTORS

*Instructions:* For each of the following Mitigating Factors, indicate in the space provided the number of jurors who find the existence of that Mitigating Factor to be proved by a preponderance of the evidence.

Unlike for Aggravating Factors, your vote with respect to a Mitigating Factor **need not** be unanimous. A finding with respect to a Mitigating Factor may be made by **one (1)** or more of the members of the jury. Any juror persuaded of the existence of a Mitigating Factor must consider it in this case, regardless of the number of other jurors who agree the factor has been established. Further, any juror may weigh a Mitigating Factor found by another juror, even if he or she did not also find that factor to exist or to be mitigating.

## MITIGATING FACTORS

A.      If he is not sentenced to death, Mr. Briseno will be sentenced to lifetime imprisonment without the possibility of release. I charge you that this factor has been established.

Number of jurors who so find                    _____

B.      The Federal Bureau of Prisons will impose appropriate conditions of confinement and security with regard to Mr. Briseno.

Number of jurors who so find                    _____

C.      Mr. Briseno is the product of a childhood marked by chaos, abuse and abandonment.

Number of jurors who so find                    _____

**D.**    Growing up, Mr. Briseno lacked positive male role models in his home.

Number of jurors who so find                    _____

**E.**    His mother's poor choices in the men she brought into the family home had a

negative impact on Mr. Briseno.

Number of jurors who so find                    _____

**F.**    Juan grew up in a neighborhood plagued with drugs, gangs, and violence.

Number of jurors who so find                    _____

**G.**    Juan was raised in poverty.

Number of jurors who so find                    _____

**H.**    Juan's basic needs were neglected when he was a young child.

Number of jurors who so find                    _____

**I.**    Juan's older brother was a gang member and a poor role model.

Number of jurors who so find                    _____

**J.**    Juan was recruited into the Imperial Gangsters when he was only 16.

Number of jurors who so find                    _____

**K.**    Juan was unable to keep up with his peers in school.

Number of jurors who so find                    _____

**L.**    Juan's father abandoned the family when Juan was only 8.

Number of jurors who so find                    _____

**M.**    Juan's father and his associates abused alcohol in front of the children.

Number of jurors who so find                    _____

**N.**    Juan has participated in rehabilitative programs while incarcerated.

Number of jurors who so find    _____

**O.**    Juan donated his hair to cancer patients through "Locks of Love."

Number of jurors who so find    _____

**P.**    Juan has a loving relationship with his twin cousins.

Number of jurors who so find    _____

**Q.**    If Juan were to be executed others would suffer grief and loss.

Number of jurors who so find    _____

**R.**    Juan has made a positive adjustment to incarceration and is likely to do so in

federal prison.

Number of jurors who so find    _____

**S.**    Cooperating witnesses and/or cooperating defendants who have killed someone

will not be sentenced to death.

Number of jurors who so find    _____

**T.**    The five victims of the murders voluntarily chose to engage in dangerous and

illegal activities, a circumstance that contributed to their deaths.

Number of jurors who so find    _____

**U.**    Mr. Briseno always behaved respectfully in court.

Number of jurors who so find    _____

**V.**    Mr. Briseno's life has value.

Number of jurors who so find    _____

**W.**    Another defendant, or defendants equally culpable in the murders, will not be

3775

punished by death.

Number of jurors who so find _____

**X.**      There are other relevant circumstances that weigh against imposing a sentence of

death.

Number of jurors who so find _____

## ADDITIONAL MITIGATING FACTORS

Write in any Additional Mitigating Factors determined by **any one (1) or more**

**members** of the jury, and indicate the number of jurors who find the existence of that

Mitigating Factor to be proved by a preponderance of the evidence. If your answer is

none, then write "NONE." If extra space is needed, write "CONTINUED" and use the

reverse side of this page for extra space.

**A.**      _____

_____

_____

_____

Number of jurors who so find          _____

**B.**      _____

_____

_____

_____

Number of jurors who so find          _____

**C.**      _____

_____

_____

_____

Number of jurors who so find          _____

**D.**     _____

_____

_____

_____

Number of jurors who so find          _____

**E.**     _____

_____

_____

_____

Number of jurors who so find          _____

*Instructions:* Regardless of the jury's determinations with respect to the existence

of any Mitigating Factors in this Section V, proceed to Section VI.

**SECTION VI. DETERMINATION OF SENTENCE**

*Instructions:* Consider whether the Aggravating Factor or Factors found to exist

sufficiently outweigh any Mitigating Factor or Factors found to exist, or in the absence

of any Mitigating Factors, whether the Aggravating Factor or Factors are themselves

sufficient to justify a sentence of death, and whether death is therefore the appropriate

sentence in this case. A sentence of death shall only be imposed if your decision in favor

of it is **unanimous**. Based upon that consideration, answer the following question:

Do you, the jury, **unanimously** find that a sentence of death shall be imposed on

the defendant JUAN BRISENO aka Tito as punishment for the murder of Miguel

Colon?

YES _____　　　NO _____

**Note:** If you cannot unanimously agree that a sentence of death should be

imposed, you should answer the above question "No," and the Court will sentence Mr.

Briseno to a life sentence without the possibility of release for the murder of Mr. Colon.

After answering the above question, each juror should sign his or her name

below, and the date should be filled in. Once each juror has signed proceed to Section

VII of this Special Verdict Form.

_____　　　_____

_____          _____


_____          _____


_____          _____


_____          _____


_____          _____

                                         FOREPERSON


Date:  March ___, 2015

## VII. CERTIFICATION

By signing below, each juror certifies that consideration of the race, color, religious beliefs, national origin, or sex of the defendant or any victim was not involved in reaching his or her individual decision, and that the individual juror would have made the same recommendation regarding a sentence for the crime or crimes in question regardless of the race, color, religious beliefs, national origin, or sex of the defendant, or the victims.

_____         _____

_____         _____

_____         _____

_____         _____

_____         _____

_____         _____
                                                FOREPERSON

Date:  March \_\_, 2015.

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| vs. | ) | 2:11-cr-00077 |
| | ) | |
| JUAN BRISENO | ) | |

**COURT'S PROPOSED VERDICT FORM (PENALTY PHASE)**

**(Completed Form To Be Filed Under Seal)**

**COUNT 21 (Murder of Latroy Howard)**

Dated: March 6, 2015.

/s/ Philip P. Simon
PHILIP P. SIMON, CHIEF JUDGE
UNITED STATES DISTRICT COURT

## THE UNITED STATES DISTRICT COURT FOR
## THE NORTHERN DISTRICT OF INDIANA
## HAMMOND DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| vs. | ) | 2:11-cr-00077 |
| | ) | |
| JUAN BRISENO | ) | |

## SPECIAL VERDICT FORM

### COUNT 21 (Murder of Latroy Howard)

### SECTION I. AGE OF DEFENDANT

Do you, the jury, unanimously find that the Government proved, beyond a

reasonable doubt, that the defendant JUAN BRISENO aka Tito was at least eighteen (18)

years of age on June 19, 2010?


YES _____      NO _____


*Instructions:* If you answered "NO" in Section I, then stop your deliberations on

this count and proceed to Section VII. Each juror should carefully read the statement in

Section VII, and sign in the appropriate place if the statement accurately reflects the

manner in which he or she reached his or her decision.

If you answered "YES" then proceed to Section II which follows.

## SECTION II. REQUISITE MENTAL STATE

*Instructions:* Answer the following questions by marking the line next to the appropriate answer, "YES" or "NO," to indicate the jury's finding. Each affirmative finding must be unanimous.

### A. <u>First Threshold Intent Factor</u>

Do you, the jury, unanimously find that the Government proved, beyond a reasonable doubt, that the defendant JUAN BRISENO aka Tito intentionally killed Latroy Howard?

<div align="center">YES _____          NO _____</div>

### B. <u>Second Threshold Intent Factor</u>

Do you, the jury, unanimously find that the Government proved, beyond a reasonable doubt, that the defendant JUAN BRISENO aka Tito intentionally inflicted serious bodily injury which resulted in the death of Latroy Howard?

<div align="center">YES _____          NO _____</div>

### C. <u>Third Threshold Intent Factor</u>

Do you, the jury, unanimously find that the Government proved, beyond a reasonable doubt, that the defendant JUAN BRISENO aka Tito intentionally participated in an act, contemplating that the life of a person would be taken or

intending that lethal force would be used in connection with a person, other than one of

the participants in the offense, and Latroy Howard died as a direct result of the act?

YES _____          NO _____

**D. <u>Fourth Threshold Intent Factor</u>**

Do you, the jury, unanimously find that the Government proved, beyond a

reasonable doubt, that the defendant JUAN BRISENO aka Tito intentionally and

specifically engaged in an act of violence, knowing that the act created a grave risk of

death to a person, other than one of the participants in the offense, such that

participation in the act constituted a reckless disregard for human life and Latroy

Howard died as a direct result of the act?

YES _____          NO _____

*Instructions:* If you answered "NO" to **<u>all</u>** of the applicable Threshold Intent

Factors, then stop your deliberations on this count and proceed to Section VII. Each

juror should carefully read the statement in Section VII, and sign in the appropriate

place if the statement accurately reflects the manner in which he or she reached his or

her decision.

If you indicated that the United States has established **<u>at least</u>** one of the

Threshold Intent Factors in this Section II, subsections A, B, C, or D, proceed to Section

III which follows.

## SECTION III. STATUTORY AGGRAVATING FACTORS

*Instructions:* Answer the following question by marking the line next to the appropriate answer, "YES" or "NO," to indicate the jury's finding. An affirmative finding must be unanimous.

### A. Substantial Planning and Premeditation

Do you, the jury, unanimously find that the Government proved, beyond a reasonable doubt, that the defendant JUAN BRISENO aka Tito committed the offense of murder after substantial planning and premeditation (as set out in Instruction 8 of the Court's Instructions) to cause the death of Latroy Howard?

YES _____     NO _____

*Instructions:* If you answered "NO," then stop your deliberations and proceed to Section VII of this Form. Each juror should then carefully read the statement in Section VII, and sign in the appropriate place if the statement accurately reflects the manner in which he or she reached his or her decision.

If you answered "YES" (1) that the defendant JUAN BRISENO aka Tito was at least eighteen (18) years of age on the date of the murder of Latroy Howard, **and** (2) that at least one of the Threshold Intent Factors in Section II existed, **and** (3) that the Statutory Aggravating Factor in this Section III existed, proceed to Section IV, which follows.

## SECTION IV. NON STATUTORY AGGRAVATING FACTORS

*Instructions:* Answer the following questions by marking the line next to the appropriate answer, "YES" or "NO," to indicate the jury's finding. In order to answer "YES" you must be unanimous.

### A.     Future Dangerousness

Do you, the jury, unanimously find that the Government proved, beyond a reasonable doubt, that the defendant JUAN BRISENO aka Tito represents a continuing danger to the lives and safety of other persons as demonstrated by one or more of:  (1) his low potential for rehabilitation as demonstrated by repeated violent criminal acts; or (2) his stated desire to impose a rule requiring fellow members of the Imperial Gangsters to shoot at rivals on sight, **and** that his future dangerousness tends to support the imposition of the death penalty as punishment for the murder of Latroy Howard?

YES _____          NO _____

### B.     Contemporaneous Convictions for Other Criminal Activity

Do you, the jury, unanimously find that the Government proved, beyond a reasonable doubt, that the defendant JUAN BRISENO aka Tito was convicted at trial of other criminal activity, including additional murders or an attempted murder, **and** that this additional criminal activity tends to support the imposition of the death penalty as

punishment for the murder of Latroy Howard?

YES _____      NO _____

### C.      Demonstrated Allegiance to Criminal Street Gang

Do you, the jury, unanimously find that the Government proved, beyond a reasonable doubt, that the defendant JUAN BRISENO aka Tito demonstrated an allegiance to and membership in the Imperial Gangsters, a criminal street gang, **and** that this allegiance and membership tends to support the imposition of the death penalty as punishment for the murder of Latroy Howard?

YES _____      NO _____

### D.      Victim Impact

Do you, the jury, unanimously find that the Government proved, beyond a reasonable doubt, that the defendant JUAN BRISENO aka Tito caused loss, injury and harm to Latroy Howard or to his family, **and** that such harm tends to support the imposition of the death penalty as punishment for the murder of Latroy Howard?

YES _____      NO _____

*Instructions:* Regardless of whether you found that the Government has established any of the Non-Statutory Aggravating Factors in this Section IV, proceed to Section V, which follows.

## SECTION V. MITIGATING FACTORS

*Instructions:* For each of the following Mitigating Factors, indicate in the space provided the number of jurors who find the existence of that Mitigating Factor to be proved by a preponderance of the evidence.

Unlike for Aggravating Factors, your vote with respect to a Mitigating Factor **need not** be unanimous. A finding with respect to a Mitigating Factor may be made by **one (1)** or more of the members of the jury. Any juror persuaded of the existence of a Mitigating Factor must consider it in this case, regardless of the number of other jurors who agree the factor has been established. Further, any juror may weigh a Mitigating Factor found by another juror, even if he or she did not also find that factor to exist or to be mitigating.

### MITIGATING FACTORS

A.    If he is not sentenced to death, Mr. Briseno will be sentenced to lifetime imprisonment without the possibility of release. I charge you that this factor has been established.

Number of jurors who so find          _____

B.    The Federal Bureau of Prisons will impose appropriate conditions of confinement and security with regard to Mr. Briseno.

Number of jurors who so find          _____

C.    Mr. Briseno is the product of a childhood marked by chaos, abuse and abandonment.

Number of jurors who so find          _____

**D.** Growing up, Mr. Briseno lacked positive male role models in his home.

Number of jurors who so find _____

**E.** His mother's poor choices in the men she brought into the family home had a

negative impact on Mr. Briseno.

Number of jurors who so find _____

**F.** Juan grew up in a neighborhood plagued with drugs, gangs, and violence.

Number of jurors who so find _____

**G.** Juan was raised in poverty.

Number of jurors who so find _____

**H.** Juan's basic needs were neglected when he was a young child.

Number of jurors who so find _____

**I.** Juan's older brother was a gang member and a poor role model.

Number of jurors who so find _____

**J.** Juan was recruited into the Imperial Gangsters when he was only 16.

Number of jurors who so find _____

**K.** Juan was unable to keep up with his peers in school.

Number of jurors who so find _____

**L.** Juan's father abandoned the family when Juan was only 8.

Number of jurors who so find _____

**M.** Juan's father and his associates abused alcohol in front of the children.

Number of jurors who so find _____

**N.** Juan has participated in rehabilitative programs while incarcerated.

Number of jurors who so find                    _____

**O.**     Juan donated his hair to cancer patients through "Locks of Love."

Number of jurors who so find                    _____

**P.**     Juan has a loving relationship with his twin cousins.

Number of jurors who so find                    _____

**Q.**     If Juan were to be executed others would suffer grief and loss.

Number of jurors who so find                    _____

**R.**     Juan has made a positive adjustment to incarceration and is likely to do so in federal prison.

Number of jurors who so find                    _____

**S.**     Cooperating witnesses and/or cooperating defendants who have killed someone will not be sentenced to death.

Number of jurors who so find                    _____

**T.**     The five victims of the murders voluntarily chose to engage in dangerous and illegal activities, a circumstance that contributed to their deaths.

Number of jurors who so find                    _____

**U.**     Mr. Briseno always behaved respectfully in court.

Number of jurors who so find                    _____

**V.**     Mr. Briseno's life has value.

Number of jurors who so find                    _____

**W.**     Another defendant, or defendants equally culpable in the murders, will not be punished by death.

Number of jurors who so find                    _____

**X.**     There are other relevant circumstances that weigh against imposing a sentence of

death.

Number of jurors who so find                    _____

### ADDITIONAL MITIGATING FACTORS

Write in any Additional Mitigating Factors determined by **any one (1) or more**

**members** of the jury, and indicate the number of jurors who find the existence of that

Mitigating Factor to be proved by a preponderance of the evidence. If your answer is

none, then write "NONE." If extra space is needed, write "CONTINUED" and use the

reverse side of this page for extra space.

**A.**     _____

_____

_____

_____

Number of jurors who so find                    _____

**B.**     _____

_____

_____

_____

Number of jurors who so find                    _____

**C.**     _____

_____

_____

_____

Number of jurors who so find          _____

**D.**    _____

_____

_____

_____

Number of jurors who so find          _____

**E.**    _____

_____

_____

_____

Number of jurors who so find          _____

*Instructions:* Regardless of the jury's determinations with respect to the existence

of any Mitigating Factors in this Section V, proceed to Section VI.

**SECTION VI. DETERMINATION OF SENTENCE**

*Instructions:* Consider whether the Aggravating Factor or Factors found to exist sufficiently outweigh any Mitigating Factor or Factors found to exist, or in the absence of any Mitigating Factors, whether the Aggravating Factor or Factors are themselves sufficient to justify a sentence of death, and whether death is therefore the appropriate sentence in this case. A sentence of death shall only be imposed if your decision in favor of it is **unanimous.** Based upon that consideration, answer the following question:

Do you, the jury, **unanimously** find that a sentence of death shall be imposed on the defendant JUAN BRISENO aka Tito as punishment for the murder of Latroy Howard?

YES _____        NO _____

**Note:** If you cannot unanimously agree that a sentence of death should be imposed, you should answer the above question "No," and the Court will sentence Mr. Briseno to a life sentence without the possibility of release for the murder of Mr. Howard.

After answering the above questions, each juror should sign his or her name below, and the date should be filled in. Once each juror has signed proceed to Section VII of this Special Verdict Form.

_____        _____

_____        _____

_____        _____

_____        _____

_____        _____

_____        _____
                                                FOREPERSON

Date:  March \_\_\_, 2015

3794

## VII. CERTIFICATION

By signing below, each juror certifies that consideration of the race, color, religious beliefs, national origin, or sex of the defendant or any victim was not involved in reaching his or her individual decision, and that the individual juror would have made the same recommendation regarding a sentence for the crime or crimes in question regardless of the race, color, religious beliefs, national origin, or sex of the defendant, or the victims.

_____    _____

_____    _____

_____    _____

_____    _____

_____    _____
                                              FOREPERSON

Date:  March \_\_, 2015.

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| vs. | ) | 2:11-cr-00077 |
| | ) | |
| JUAN BRISENO | ) | |

**COURT'S FINAL INSTRUCTIONS TO THE JURY**
**(FOLLOWING PENALTY-PHASE EVIDENCE)**

Dated: March 6, 2015.

/s/ Philip P. Simon
PHILIP P. SIMON, CHIEF JUDGE
UNITED STATES DISTRICT COURT

3796

## COURT'S INSTRUCTION NO. 1

### Introduction to Final Instructions

Members of the Jury, it is now my duty to again instruct you on the rules of law that you must follow and apply in imposing a sentence on the defendant.

Regardless of any opinion you may have as to what the law may be - or should be - it would be a violation of your oaths as jurors to base your verdict upon any view of the law other than that given to you in these instructions.

Some of the legal principles that you must apply to this sentencing decision duplicate those you followed in reaching your verdict as to guilt or innocence. Others are different. The instructions I am giving you now are a complete set of instructions on the law applicable to the sentencing decision. I have prepared them to ensure that you are clear in your duties at this extremely serious stage of the case. I have also prepared Special Verdict Forms that you must complete. The forms detail special findings you must make in this case and will help you perform your duties properly.

When I have finished, you will go into the jury room, choose a foreperson (who may or may not be the same foreperson who served during the earlier deliberations on guilt) and begin your penalty deliberations.

1

## COURT'S INSTRUCTION NO. 2

### Burden of Proof

Under the federal death penalty statute, there are certain requirements that must be met before you may consider a death sentence. As I have instructed you, you may not consider imposing a death sentence unless you first find the Government proved beyond a reasonable doubt the age requirement, at least one intent factor, and at least one Statutory Aggravating Factor. Again, affirmative findings on these three elements must be unanimous and beyond a reasonable doubt.

You may also find Non-statutory Aggravating Factors, which are those not specifically set out by Congress in the federal death penalty statute, but which have been specifically identified by the government for your consideration in this case. Again, an affirmative finding that any Non-statutory Aggravating Factor exists must be unanimous and beyond a reasonable doubt.

The defendant does not have the burden of disproving the existence of anything the Government seeks to prove. The burden is wholly upon the Government to prove its contentions beyond a reasonable doubt; the law does not require the defendant to produce any evidence at all, including evidence that a particular aggravating factor does not exist or that death is not the appropriate sentence. The defendant has chosen to assert Mitigating Factors, and he has the burden of proving them. However, there is a different standard of proof for Mitigating Factors. You need not be convinced beyond a reasonable doubt about the existence of a Mitigating Factor; you need only be

2

convinced by a preponderance of the evidence. A matter is proved "by a preponderance of the evidence" if it is shown to be more likely true than not true. This is a lesser standard of proof under the law than proof beyond a reasonable doubt.

Any evidence relating to Mitigating Factors should be fully discussed by all of you to ensure that each juror considers the matter carefully. I instruct you, however, that the law does not require unanimity with regard to Mitigating Factors. Any one of you may find the existence of a Mitigating Factor, regardless of the number of other jurors who may agree, and anyone who so finds may consider and weigh that Mitigating Factor in determining the appropriate sentence in this case. The Verdict Form provides a space for you to indicate the number of jurors who find a particular Mitigating Factor.

3

### COURT'S INSTRUCTION NO. 3

### The Evidence

In deciding the issues now before you, you may consider any evidence (to the extent you find it credible and relevant), direct or circumstantial, that was presented during the guilt phase of the trial and any information that was presented during the penalty phase of the trial, including any matters to which the parties have stipulated. As in the guilt phase, the arguments of the attorneys and the comments and rulings of the Court are not evidence.

You must make your decision based only on the evidence that you saw and heard here in court. Do not consider anything you may have seen or heard outside of court, including anything from the newspaper, television, radio, the Internet, or any other source.

The evidence includes only what the witnesses said when they were testifying under oath, the exhibits that I allowed into evidence, and any stipulations that the lawyers agreed to. A stipulation is an agreement that certain facts are true or that a witness would have given certain testimony.

Nothing else is evidence. The lawyers' statements and arguments are not evidence. If what a lawyer said is different from the evidence as you remember it, the evidence is what counts. The lawyers' questions and objections likewise are not evidence.

A lawyer has a duty to object if he thinks a question is improper. If I sustained

4

objections to questions the lawyers asked, you must not speculate on what the answers might have been.

If, during the trial, I struck testimony or exhibits from the record, or told you to disregard something, you must not consider it.

Give the evidence whatever weight you decide it deserves. Use your common sense in weighing the evidence, and consider the evidence in light of your own everyday experience.

People sometimes look at one fact and conclude from it that another fact exists. This is called an inference. You are allowed to make reasonable inferences, so long as they are based on the evidence.

You may have heard the terms "direct evidence" and "circumstantial evidence." Direct evidence is evidence that directly proves a fact. Circumstantial evidence is evidence that indirectly proves a fact. You are to consider both direct and circumstantial evidence. The law does not say that one is better than the other. It is up to you to decide how much weight to give to any evidence, whether direct or circumstantial.

Do not make any decisions simply by counting the number of witnesses who testified about a certain point.  You may find the testimony of one witness or a few witnesses more persuasive than the testimony of a larger number. You need not accept the testimony of the larger number of witnesses. What is important is how truthful and accurate the witnesses were and how much weight you think their testimony deserves.

Part of your job as jurors is to decide how believable each witness was, and how

5

much weight to give each witness's testimony. You may accept all of what a witness says, or part of it, or none of it. Some factors you may consider include:

- the intelligence of the witness;

- the witness's ability and opportunity to see, hear, or know the things the witness testified about;

- the witness's memory;

- the witness's demeanor;

- whether the witness had any bias, prejudice, or other reason to lie or slant the testimony;

- the truthfulness and accuracy of the witness's testimony in light of the other evidence presented; and

- inconsistent statements or conduct by the witness.

You may consider evidence that a witness was convicted of a crime only in deciding the believability of his testimony. You may not consider it for any other purpose.

You have heard two witnesses who gave opinions and testimony about certain subjects. Specifically, Mark Bezy and David Dodrill, who testified about prison conditions and security.

You do not have to accept these witnesses' opinions or testimony. You should judge these witnesses' opinions and testimony the same way you judge the testimony of any other witness. In deciding how much weight to give to these opinions and

6

testimony, you should consider each witness's qualifications, how he or she reached his

or her opinions and conclusions, and the factors I have described for determining the

believability of testimony.

If you have taken notes during the trial, you may use them during deliberations

to help you remember what happened during the trial. You should use your notes only

as aids to your memory. The notes are not evidence. All of you should rely on your

independent recollection of the evidence, and you should not be unduly influenced by

the notes of other jurors. Notes are not entitled to any more weight than the memory or

impressions of each juror.

3803

## COURT'S INSTRUCTION NO. 4

### The Defendant's Right Not to Testify

The defendant did not testify. A defendant has an absolute right not to testify. There is no burden upon a defendant to prove that he should not be sentenced to death. The burden is entirely on the prosecution to prove that a sentence of death should be imposed. Accordingly, you may not consider in any way the fact that the defendant did not testify. You may not even discuss it in your deliberations.

## COURT'S INSTRUCTION NO. 5

### Your Findings

I will now provide you with additional instructions on the Age requirement, Threshold Intent Factors, Aggravating Factors, and Mitigating Factors. I again stress the importance of your giving careful and thorough consideration to all evidence before you. I also remind you of your obligation to strictly follow the applicable law.

You must deliberate and determine the appropriate sentence for each of the capital counts separately. Although I will be discussing the capital counts together, your findings regarding gateway factors, aggravating factors, and all other issues pertaining to these counts must treat each of these counts separately. You may find differences which justify different sentences on different counts. You will have a separate Special Verdict Form to complete for each capital count.

You also may not rely solely upon your guilt-phase verdict or your factual determinations therein. Instead, you must now consider each issue and make each determination described in these Instructions, even if you considered similar issues during your first deliberations in the guilt phase of this trial.

9

**COURT'S INSTRUCTION NO. 6**

**Age of defendant (Section I of Special Verdict Form)**

The first step in your deliberations should be to determine whether the Government has proved beyond a reasonable doubt that the defendant was at least eighteen years old on the date the capital crime you are considering was committed. Those dates are: September 26, 2007 (Luis Ortiz), June 3, 2008 (Michael Sessum and Miguel Mejias), February 7, 2010 (Miguel Colon), and June 19, 2010 (Latroy Howard).

 If you find that the Government failed to prove that the defendant was at least eighteen years old on any of these dates, then you will complete Section I of the appropriate Special Verdict Form accordingly and your deliberations will be over as to the murder committed on that date or those dates. For any such count you will sign the final certification in Section VII of the Special Verdict Form and move on to considering the next count. If you have no counts left to consider you will advise the Court that you have reached a verdict.

If, however, you find unanimously and beyond a reasonable doubt that the defendant was at least eighteen years old on the date any of the murder counts was committed, you will fill in the appropriate Special Verdict Form accordingly. You should then proceed to the second step in your deliberations on any such counts, the determination of the required intent factor or factors.

10

**COURT'S INSTRUCTION NO. 7**

**Threshold Intent Factors (Section II of Special Verdict Form)**

In addition to the required age finding, you also may not consider the death penalty for any count unless you first unanimously find, beyond a reasonable doubt, that the government proved at least one of four possible threshold intent factors. Not all four threshold intent factors are available for your consideration in every count. The Special Verdict Forms set out which threshold intent factors are at issue in each count, and you will consider only the threshold intent factors listed for each count. Your consideration of the possible threshold intent factors will address whether the defendant:

(1) intentionally killed the victim; or

(2) intentionally inflicted serious bodily injury that resulted in the death of the victim; or

(3) intentionally participated in an act, contemplating that a person's life would be taken or intending that lethal force would be used in connection with a person, other than one of the participants in the offense, and the victim died as a direct result of the act; or

(4) intentionally and specifically engaged in an act of violence, knowing that the act created a grave risk of death to a person, other than one of the participants in the offense, such that participation in the act constituted a reckless disregard for human life, and the victim died as a direct result of the act.

3807

Intent or knowledge may be proved like anything else. You may consider any statements made and acts done by the defendant, and all facts and circumstances in evidence in determining the defendant's knowledge and intent. An "intentional act" is an act done deliberately and with the conscious desire that it be committed. A person acts knowingly if he realizes what he is doing and is aware of the nature of his conduct, and does not act through ignorance, mistake, or accident. You may, but are not required to, infer that a person intended the natural and probable consequences of his knowing and voluntary acts.

"Serious bodily injury" means a significant or considerable amount of injury or damage to the victim's body which involves a substantial risk of death, unconsciousness, extreme physical pain, protracted and obvious disfigurement, or protracted loss or impairment of the function of a body member, organ, or mental faculty.

"Lethal force" means an act of violence capable of causing death.

"Grave risk of death" means a significant and considerable possibility that a person other than one of the participants in the crime might be killed.

Fill in your answers to the questions in Section II of the Special Verdict Form for the count you are considering. If you find that the Government did not prove any of the intent elements listed on the Special Verdict Form for a particular count, then your deliberations will be over as to that count and the Court will sentence the defendant to life in prison without the possibility of release on that count. You will sign the

12

Certification in Section VII of the Special Verdict Form for the count you are considering and move on to the next count. If you have no counts left to consider then you will advise the Court that you have reached a verdict.

However, if you unanimously find one or more of the intent elements proved beyond a reasonable doubt with respect to any capital count, then you will note that on the Special Verdict Form for the appropriate count and continue to Section III for that count.

As you continue with your deliberations bear in mind that threshold intent factors are not aggravating factors and therefore may not be weighed in deciding whether or not to impose a sentence of death.

3809

## COURT'S INSTRUCTION NO. 8

### Statutory Aggravating Factors (Section III of Special Verdict Form)

If, for the murder count you are considering, you have unanimously found that the Government has proved beyond a reasonable doubt that the defendant was over the age of eighteen when the offense was committed, and that at least one of the four threshold intent factors existed for the count, you must then proceed to determine whether the Government has proved beyond a reasonable doubt the existence of any of the Statutory Aggravating Factors that the government has alleged for that count. The government has alleged three different Statutory Aggravating Factors, but the government does not allege that all three apply to each count, so the Special Verdict Form for each count lists only the Statutory Aggravating Factor or Factors that apply to that count.

The first Statutory Aggravating Factor alleged by the Government is that the defendant committed each of the murders of Luis Ortiz, Michael Sessum, Miguel Mejias, Miguel Colon, and Latroy Howard after substantial planning and premeditation to cause the death of a person. "Planning" means mentally formulating a method for doing something or achieving some end. "Premeditation" means thinking or deliberating about something and deciding beforehand whether to do it. "Substantial" planning and premeditation means a considerable or significant amount of planning and premeditation. You must find that both the planning and the premeditation were more than the minimum amount necessary to carry out one's plan. To find that the

14

Government has satisfied its burden of proving beyond a reasonable doubt that the defendant engaged in substantial planning and premeditation to cause the death of a person, you must unanimously agree on the particular object of the substantial planning and premeditation, namely to cause the death of a person.

The second Statutory Aggravating Factor alleged by the Government is that the defendant, in the commission of the offense, or in escaping apprehension for the offense, knowingly created a grave risk of death to one or more persons in addition to the victim. In this case, the Government alleges this Statutory Aggravating Factor with respect to the murder of each of Michael Sessum, Miguel Mejias, and Miguel Colon. "Persons in addition to the victim" include innocent bystanders in the zone of danger created by the defendant's acts, but do not include other participants in the offenses. "Grave risk of death" is defined above.

The third Statutory Aggravating Factor alleged by the Government with respect to any of the capital counts is that the defendant intentionally killed more than one person in a single criminal episode. In this case, the Government alleges that the defendant intentionally killed or attempted to kill Michael Sessum and Miguel Mejias in a single criminal episode. "Intentionally killing" a person means killing a person on purpose, that is: willfully, deliberately, or with a conscious desire to cause a person's death (and not just accidentally or involuntarily). "More than one person" means one or more other people in addition to the victim named in a particular murder count. "A single criminal episode" is an act or series of related criminal acts which occur within a

15

relatively limited time and place, or are directed at the same person or persons, or are part of a continuous course of conduct related in time, place, or purpose. You may, but are not required to, infer that a person of sound mind intended the ordinary, natural, and probable consequences of his knowing and voluntary acts. Thus, you may infer from the defendant's conduct that he intended to kill a person if you find: (1) that the defendant was a person of sound mind; (2) that the victim's death was an ordinary, natural, and probable consequence of the defendant's acts; and (3) that the defendant committed these acts knowingly and voluntarily. But once again, you are not required to make such an inference.

The law directs you to consider and decide, separately as to each of the capital counts, only the Statutory Aggravating Factors specifically claimed by the Government with respect to each count. You are reminded that to find the existence of a statutory aggravating factor, your decision must be unanimous and beyond a reasonable doubt.

Complete Section III of the Special Verdict Form for the count you are considering according to your findings. If, for any count, you answer "NO" with respect to all of the Statutory Aggravating Factors alleged in that count then your deliberations are complete with respect to that count. You will sign the Certification in Section VII of the Special Verdict Form for that count and proceed to consider the next count. If no counts remain to be considered then you will advise the Court that you have reached a verdict.

If you answer "YES" with respect to any Statutory Aggravating Factor alleged in

16

the count you are considering, then complete accordingly Section III of the Special

Verdict Form for that count and proceed to Section IV.

## COURT'S INSTRUCTION NO. 9

### Non-Statutory Aggravating Factors (Section IV of Special Verdict Form)

If you have found the existence of one or more Statutory Aggravating Factors unanimously and beyond a reasonable doubt for the count you are considering, you must then consider whether the government has proved the existence of any Non-Statutory Aggravating Factors for that count. As with Statutory Aggravating Factors, with respect to each count separately you must unanimously agree that the Government has proved beyond a reasonable doubt the existence of any of the alleged Non-Statutory Aggravating Factors before you may consider such factors in your deliberations on the appropriate punishment for the defendant for that count. But unlike threshold intent factors and Statutory Aggravating Factors, even if you don't unanimously find that the Government has proved any Non-Statutory Aggravating Factors that apply to a particular count, you may still consider the death penalty as a possible sentence for that count. In other words, you will proceed to Section V from this Section IV regardless of your Section IV findings on the count you are considering.

In addition to any Statutory Aggravating Factors you have found, you are permitted to consider and discuss only the four (4) Non-Statutory Aggravating Factors specifically claimed by the Government. I will describe those Factors. You must not consider any other facts in aggravation which you might think of on your own.

The Non-Statutory Aggravating Factors that the Government has alleged against the defendant with respect to each of the capital counts are as follows:

18

1.      Future Dangerousness. The defendant represents a continuing danger to the lives and safety of other persons; with respect to all of the murders, as evidenced by his low potential for rehabilitation as demonstrated by repeated violent criminal acts; with respect to only the murders of Luis Ortiz, Michael Sessum, Miguel Mejias, and Miguel Colon, as evidenced by a willingness to take human life and a lack of remorse for his acts of violence and attempted acts of violence as demonstrated by statements that he made following these violent acts; and again, with respect to all of the murders, as evidenced by the defendant's stated desire to impose a rule requiring fellow members of the Imperial Gangsters to shoot at rivals on sight, and his future dangerousness tends to support the imposition of the death penalty.

2.      Contemporaneous Convictions for Other Criminal Activity. The defendant was convicted at trial of other criminal activity, including additional murders and an attempted murder, and this additional criminal activity tends to support the imposition of the death penalty.

3.      <u>Demonstrated Allegiance to Criminal Street Gang</u>. The defendant had an allegiance to and was a member of the Imperial Gangsters, a criminal street gang, and this allegiance and membership tends to support the imposition of the death penalty.

4.      <u>Victim Impact</u>. The defendant caused injury, harm, and loss to the victims, Luis Ortiz, Michael Sessum, Miguel Mejias, Miguel Colon, and Latroy Howard, and the victims' families and friends, and this harm tends to support the imposition of the death penalty.

3815

After considering these Factors you will record in Section IV of the Special

Verdict Form for the count you are considering your findings regarding whether you

unanimously find that the Government has proved beyond a reasonable doubt the

existence of any of these Non-Statutory Aggravating Factors.

Then you will continue on to consider the questions in Section V of the Special

Verdict Form for the count you are considering.

3816

**COURT'S INSTRUCTION NO. 10**

**Mitigating Factors (Section V of Special Verdict Form)**

You must next consider, for the count on which you are deliberating, any Mitigating Factors that may be present in this case. A Mitigating Factor is not offered to justify or excuse the defendant's conduct. Rather, a Mitigating Factor is a fact about the defendant's life or character, or about the circumstances surrounding the offenses or any other relevant fact that would suggest, in fairness, that a sentence of death is not the appropriate punishment, or that a sentence of life in prison without the possibility of release is the more appropriate punishment.

Unlike for aggravating factors, your vote with respect to a Mitigating Factor **need not** be unanimous. A finding with respect to a Mitigating Factor may be made by one or more of the members of the jury. Any juror persuaded of the existence of a mitigating factor must consider it in this case, regardless of the number of other jurors who agree the factor has been established. Further, any juror may weigh a mitigating factor found by another juror, even if he or she did not also find that factor to exist or to be mitigating.

It is the defendant's burden to establish any mitigating factors, but only by a preponderance of the evidence, not beyond a reasonable doubt. A factor is established by a preponderance of the evidence if its existence is shown to be more likely so than not so.

Please understand that the existence of a mitigating factor is a distinct

21

3817

consideration from whatever weight, if any, should ultimately be given that factor in your deliberations. For example, any number of jurors might first find that a particular mitigating factor is factually true (that is, that the factor has been established by a preponderance of the evidence), but those jurors as individuals might later choose to give that same mitigating factor differing levels of significance during the weighing process. With this distinction in mind, Section IV of each Special Verdict Form only asks you to report the total number of jurors who individually find the existence of a particular mitigating factor to be established by a preponderance of the evidence.

Earlier in these instructions, I stated that regardless of any opinion you may have as to what the law may be or should be, it would be a violation of your oaths as jurors to base your sentencing decision upon any view of the law other than that which is given to you in these instructions. Accordingly, it is not your role to pass on the wisdom of whether a particular mitigating factor submitted to you is, in your own personal view, the kind of circumstance that should weigh against imposition of the death penalty. If a mitigating factor that I state in these instructions and that appears on the Special Verdict Forms has been established by a preponderance of the evidence, you are required to weigh it in the balance to be struck between the aggravating and mitigating factors. It is up to you, however, to decide how much weight you individually assign to each particular mitigating factor.

The Special Verdict Form provides a space for you to indicate the number of jurors who find each Mitigating Factor. Complete that section.

3818

### *Mitigating Factors to Consider*

The Mitigating Factors which the defendant asserts he has proved by a preponderance of the evidence are:

A.    If not sentenced to death, Mr. Briseno will be sentenced to lifetime imprisonment without the possibility of release.

B.    The Federal Bureau of Prisons will impose appropriate conditions of confinement and security with regard to Mr. Briseno.

C.    Mr. Briseno is the product of a childhood marked by chaos, abuse and abandonment.

D.    Growing up, Mr. Briseno lacked positive male role models in his home.

E.    His mother's poor choices in the men she brought into the family home had a negative impact on Mr. Briseno.

F.    Juan grew up in a neighborhood plagued with drugs, gangs, and violence.

G.    Juan was raised in poverty.

H.    Juan's basic needs were neglected when he was a young child.

I.    Juan's older brother was a gang member and a poor role model.

J.    Juan was recruited into the Imperial Gangsters when he was only 16.

K.    Juan was unable to keep up with his peers in school.

L.    Juan's father abandoned the family when Juan was only 8.

M.    Juan's father and his associates abused alcohol in front of the children.

N.    Juan has participated in rehabilitative programs while incarcerated.

23

O.      Juan donated his hair to cancer patients through "Locks of Love."

P.      Juan has a loving relationship with his twin cousins.

Q.      If Juan were to be executed others would suffer grief and loss.

R.      Juan has made a positive adjustment to incarceration and is likely to do so in federal prison.

S.      Cooperating witnesses and/or cooperating defendants who have killed someone will not be sentenced to death.

T.      The five victims of the murders voluntarily chose to engage in dangerous and illegal activities, a circumstance that contributed to their deaths.

U.      Mr. Briseno always behaved respectfully in court.

V.      Mr. Briseno's life has value.

W.      Another defendant, or defendants, equally culpable in the murders, will not be punished by death.

X.      There are other relevant circumstances that weigh against imposing a sentence of death.

### *Any Additional Mitigating Factors*

You are also permitted to consider **anything** else about the circumstances of the crime or about the defendant's background, record, or character or any other circumstance of the offense, that mitigate against imposition of the death penalty. So if there are any such Mitigating Factors, whether or not specifically argued by the attorneys for the defense, which at least one juror finds are established by a

24

preponderance of the evidence, you are free to consider them in your deliberations. There is a space in Section V of the Special Verdict Form for each count for you to fill in any additional Mitigating Factors and note the number of jurors who find that it exists. Complete that Section for each count as you consider that count. But even if you are unable to articulate or describe these additional Mitigating Factors, you may still give them your full consideration without noting them on the Special Verdict Form.

The law does not require that there be a connection between a Mitigating Factor and the crime committed. In short, your discretion in considering mitigating factors is much broader than your discretion in considering aggravating factors. This was a choice expressly made by Congress in enacting the capital punishment statute. What weight you give each Mitigating and Aggravating Factor is entirely up to you.

After you complete Section V of the Special Verdict Form for the count you are considering, you will move on to weigh the Aggravating Factor or Factors you have found and the Mitigating Factor or Factors you may have found.

25

## COURT'S INSTRUCTION NO. 11

### Weighing Aggravating and Mitigating Factors

With respect to the capital count you are considering, if you unanimously find that the government proved beyond a reasonable doubt: 1) that the defendant was over 18 years of age at the time of the crime; and 2) the existence of at least one intent factor, and 3) the existence of at least one Statutory Aggravating Factor; and after you then decide whether the Government proved beyond a reasonable doubt the existence of the alleged Non-Statutory Aggravating Factors submitted to you with respect to that count, and whether the defendant proved the existence of any Mitigating Factors by a preponderance of the evidence, you will then engage in a weighing process.

In determining the appropriate sentence for each count, all of you must weigh the Aggravating Factor or Factors that you unanimously found proved beyond a reasonable doubt for that count, and each of you must weigh any Mitigating Factor or Factors that you individually found to exist for that count, and may weigh any Mitigating Factors that another fellow juror found to exist. Whether or not the circumstances of each count in this case make death the appropriate sentence is a decision that the law leaves entirely to you.

Although I have previously instructed you that you will not consider a death sentence for any count unless you first unanimously find the age requirement and at least one threshold intent factor proven beyond a reasonable doubt, I instruct you now that the age requirement and threshold intent factors **shall not** be considered when

26

weighing the Aggravating and Mitigating Factors. You must weigh only the Statutory and Non-Statutory Aggravating Factors that you unanimously find to exist for a particular count against any Mitigating Factors that any juror individually, or with others, finds to exist for that count.

In engaging in the weighing process, you must avoid any influence of passion, prejudice, or undue sympathy. Your deliberations should be based upon the evidence you have seen and heard and the law on which I have instructed you.

The process of weighing Aggravating and Mitigating Factors against each other in order to determine the proper punishment is not a mechanical process. In other words, you should not simply count the number of Aggravating and Mitigating Factors and reach a decision based on which number is greater. You should instead consider the weight and value of each factor to make a unique, individualized, and reasoned judgment about the sentence this defendant should receive for each capital offense.

The law contemplates that different Factors may be given different weights or values by different jurors. Thus, you may find that one Mitigating Factor outweighs one or more Aggravating Factors. Or you may find, even if you have found no Mitigating Factors, that the Aggravating Factor or Factors proved do not, standing alone, justify imposition of a sentence of death. On the other hand, you may unanimously find that a particular Aggravating Factor sufficiently outweighs all Mitigating Factors combined to make a sentence of death the appropriate sentence. Each juror must decide what weight or value is to be given to a particular Aggravating or Mitigating Factor in the

27

3823

decision-making process.

Again, whether or not the circumstances in any particular count justify a sentence of death is a decision that the law leaves entirely to you. You are never required to impose a death sentence.

3824

## COURT'S INSTRUCTION NO. 12

### Determination of Sentence (Section VI of Special Verdict Form)

You will be asked the following question for each capital count: "Do you, the jury, **unanimously** find that a sentence of death shall be imposed on the defendant JUAN BRISENO, aka Tito, as punishment" for the murder you are considering? You will answer that question either "Yes" or "No." In answering this question, you must unanimously decide whether the Aggravating Factor or Factors sufficiently outweigh the Mitigating Factor or Factors such that a sentence of death is the most appropriate sentence. If you answer "Yes" the Court will then be required to impose a death sentence for that count.

If you cannot unanimously agree that a sentence of death should be imposed, you should answer the question "No" and the Court will sentence Mr. Briseno to a life sentence without the possibility of release for the count you are considering. In the federal system, a sentence of life imprisonment without the possibility of release means just that — the defendant will never be released from prison. There is no parole in the federal system.

It is your duty as jurors to discuss all aspects of these sentencing issues with one another frankly and candidly in an effort to reach agreement, if you can reach agreement. Each of you must decide these questions for yourselves and not go along with the conclusions of your fellow jurors, but only after full consideration of the evidence with the other members of the jury and due respect for one another's opinions.

While you are discussing this matter, do not hesitate to re-examine your own opinion, and to change your mind if you become convinced that you are wrong. But do not give up your honest beliefs as to the weight or the effect of the evidence solely because others think differently or simply to reach a verdict.

30

## COURT'S INSTRUCTION NO. 13

### Right to Justice Without Discrimination

In your consideration of whether the death sentence is justified as to any count you must not consider the race, color, religious beliefs, national origin, or sex of either the defendant or the victim. You are not to return a sentence of death unless you would return a sentence of death for the crime in question without regard to the race, color, religious beliefs, national origin, or sex of either the defendant or the victim.

To emphasize the importance of this consideration, Section VII of the Special Verdict Form for each count contains a certification statement. Each juror should carefully read the statement, and sign your name in the appropriate place if the statement accurately reflects the manner in which each of you reached your individual decision on that count.

3827

## COURT'S INSTRUCTION NO. 14

### Special Verdict Form

I have prepared a set of forms, one for each capital count, each entitled "Special Verdict Form," to assist you during your deliberations. You are required to record your decisions on these forms. Section I of the Special Verdict Form is where you will record your findings on the defendant's Age. Section II is where you will record your findings on the Threshold Intent Factors. Section III is where you will record your findings on Statutory Aggravating Factors. Section IV is where you will record your findings on Non-Statutory Aggravating Factors. Section V is where you will record your findings on Mitigating Factors. Section VI is where you will record your sentence determinations. Finally, Section VII contains the non-discrimination certification each juror must read and sign. You are each required to sign the Special Verdict Form.

There is a separate Special Verdict Form for you to record your decisions with respect to each determination as to each capital count charged in the Fourth Superseding Indictment, and by capital count I mean: Count Nine (Luis Ortiz), Count Thirteen (Michael Sessum), Count Fifteen (Miguel Mejias), Count Nineteen (Miguel Colon), and Count Twenty-one (Latroy Howard). You must consider each count separately and record your findings for each count in the appropriate spaces on the appropriate Special Verdict Form. Once you have finished your deliberations and filled in, signed, and dated all of the Special Verdict Forms, you will advise the Court that you have reached a verdict.

32

3828

## COURT'S INSTRUCTION NO. 15

### Concluding Instruction

Once you start deliberating, do not communicate about the case or your deliberations with anyone except other members of your jury. You may not communicate with others about the case or your deliberations by any means. This includes oral or written communication, as well as any electronic method of communication, like your phones, computers, or on the Internet, or any other method of communication.

If you need to communicate with me while you are deliberating, send a note through the court security officer. The note should be signed by the foreperson or by one or more members of the jury. To have a complete record of this trial, it is important that you do not communicate with me except by a written note. I may have to talk to the lawyers about your message, so it may take me some time to get back to you. You may continue your deliberations while you wait for my answer. Please be advised that transcripts of trial testimony are not available to you. You must rely on your collective memory of the testimony.

If you send me a message or question, you should not tell me any details of your deliberations or the breakdown of any votes you may have conducted.

Let me remind you again that nothing that I have said in these instructions, and nothing that I have said or done during either phase of the trial, has been said or done to suggest to you what I think your decisions should be. The decisions are your

3829

exclusive responsibility.

You may now retire to begin your deliberations.

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| vs. | ) | 2:11-cr-00077 |
| | ) | |
| JUAN BRISENO | ) | |

**COURT'S VERDICT FORM (PENALTY PHASE)**

**(Completed Form To Be Filed Under Seal)**

**COUNT 9 (Murder of Luis Ortiz aka "Manolo")**

Dated: March 6, 2015.

/s/ Philip P. Simon
PHILIP P. SIMON, CHIEF JUDGE
UNITED STATES DISTRICT COURT

**THE UNITED STATES DISTRICT COURT FOR**
**THE NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| vs. | ) | 2:11-cr-00077 |
| | ) | |
| JUAN BRISENO | ) | |

**SPECIAL VERDICT FORM**

**COUNT 9 (Murder of Luis Ortiz aka "Manolo")**

**SECTION I. AGE OF DEFENDANT**

Do you, the jury, unanimously find that the Government proved, beyond a reasonable doubt, that the defendant JUAN BRISENO aka Tito was at least eighteen (18) years of age on September 26, 2007?

YES _____     NO _____

*Instructions:* If you answered "NO" in Section I, then stop your deliberations on this count and proceed to Section VII. Each juror should carefully read the statement in Section VII, and sign in the appropriate place if the statement accurately reflects the manner in which he or she reached his or her decision.

If you answered "YES" then proceed to Section II which follows.

## SECTION II. REQUISITE MENTAL STATE

*Instructions:* Answer the following questions by marking the line next to the appropriate answer, "YES" or "NO," to indicate the jury's finding. Each affirmative finding must be unanimous.

**A.     First Threshold Intent Factor**

Do you, the jury, unanimously find that the Government proved, beyond a reasonable doubt, that the defendant JUAN BRISENO aka Tito intentionally killed Luis Ortiz?

YES _____      NO _____

**B.     Second Threshold Intent Factor**

Do you, the jury, unanimously find that the Government proved, beyond a reasonable doubt, that the defendant JUAN BRISENO aka Tito intentionally inflicted serious bodily injury which resulted in the death of Luis Ortiz?

YES _____      NO _____

**C.     Third Threshold Intent Factor**

Do you, the jury, unanimously find that the Government proved, beyond a reasonable doubt, that the defendant JUAN BRISENO aka Tito intentionally participated in an act, contemplating that the life of a person would be taken or

3833

intending that lethal force would be used in connection with a person, other than one of

the participants in the offense, and Luis Ortiz died as a direct result of the act?

YES _____     NO _____

### D.       Fourth Threshold Intent Factor

Do you, the jury, unanimously find that the Government proved, beyond a

reasonable doubt, that the defendant JUAN BRISENO aka Tito intentionally and

specifically engaged in an act of violence, knowing that the act created a grave risk of

death to a person, other than one of the participants in the offense, such that

participation in the act constituted a reckless disregard for human life and Luis Ortiz

died as a direct result of the act?

YES _____     NO _____

*Instructions:* If you answered "NO" to **all** of the applicable Threshold Intent

Factors, then stop your deliberations on this count and proceed to Section VII. Each

juror should carefully read the statement in Section VII, and sign in the appropriate

place if the statement accurately reflects the manner in which he or she reached his or

her decision.

If you indicated that the United States has established **at least** one of the

Threshold Intent Factors in this Section II, subsections A, B, C, or D, proceed to Section

III which follows.

## SECTION III. STATUTORY AGGRAVATING FACTORS

*Instructions:* Answer the following question by marking the line next to the appropriate answer, "YES" or "NO," to indicate the jury's finding. An affirmative finding must be unanimous.

### A.   Substantial Planning and Premeditation

Do you, the jury, unanimously find that the Government proved, beyond a reasonable doubt, that the defendant JUAN BRISENO aka Tito committed the offense of murder after substantial planning and premeditation (as set out in Instruction 8 of the Court's Instructions) to cause the death of Luis Ortiz?

YES _____     NO _____

*Instructions:* If you answered "NO," then stop your deliberations and proceed to Section VII of this Form. Each juror should then carefully read the statement in Section VII, and sign in the appropriate place if the statement accurately reflects the manner in which he or she reached his or her decision.

If you answered "YES" (1) that  the defendant JUAN BRISENO aka Tito was at least eighteen (18) years of age on the date of the murder of Luis Ortiz, **and** (2) that at least one of the Threshold Intent Factors in Section II existed, **and** (3) that the Statutory Aggravating Factor in this Section III existed, proceed to Section IV, which follows.

## SECTION IV. NON STATUTORY AGGRAVATING FACTORS

*Instructions:* Answer the following questions by marking the line next to the appropriate answer, "YES" or "NO," to indicate the jury's finding. In order to answer "YES" you must be unanimous.

### A.     Future Dangerousness

Do you, the jury, unanimously find that the Government proved, beyond a reasonable doubt, that the defendant JUAN BRISENO aka Tito represents a continuing danger to the lives and safety of other persons as demonstrated by one or more of:  (1) his low potential for rehabilitation as demonstrated by repeated violent criminal acts; (2) his  willingness to take human life and a lack of remorse for his acts of violence and attempted acts of violence as demonstrated by statements that he made following these violent acts; **or** (3) his stated desire to impose a rule requiring fellow members of the Imperial Gangsters to shoot at rivals on sight, **and** that his future dangerousness tends to support the imposition of the death penalty as punishment for the murder of Luis Ortiz?

YES _____          NO _____

### B.     Contemporaneous Convictions for Other Criminal Activity

Do you, the jury, unanimously find that the Government proved, beyond a reasonable doubt, that the defendant JUAN BRISENO aka Tito was convicted at trial of other criminal activity, including additional murders or an attempted murder, **and** that

this additional criminal activity tends to support the imposition of the death penalty as

punishment for the murder of Luis Ortiz?


                    YES _____      NO _____



        **C.      Demonstrated Allegiance to Criminal Street Gang**

        Do you, the jury, unanimously find that the Government proved, beyond a

reasonable doubt, that the defendant JUAN BRISENO aka Tito demonstrated an

allegiance to and membership in the Imperial Gangsters, a criminal street gang, **and**

that this allegiance and membership tends to support the imposition of the death

penalty as punishment for the murder of Luis Ortiz?



                    YES _____      NO _____



        **D.      Victim Impact**

        Do you, the jury, unanimously find that the Government proved, beyond a

reasonable doubt, that the defendant JUAN BRISENO aka Tito caused loss, injury and

harm to Luis Ortiz or to his family, **and** that such harm tends to support the imposition

of the death penalty as punishment for the murder of Luis Ortiz?



                    YES _____      NO _____

        *Instructions:* Regardless of whether you found that the Government has

established any of the Non-Statutory Aggravating Factors in this Section IV, proceed to

Section V, which follows.

## SECTION V. MITIGATING FACTORS

*Instructions:* For each of the following Mitigating Factors, indicate in the space provided the number of jurors who find the existence of that Mitigating Factor to be proved by a preponderance of the evidence.

Unlike for Aggravating Factors, your vote with respect to a Mitigating Factor **need not** be unanimous. A finding with respect to a Mitigating Factor may be made by **one (1)** or more of the members of the jury. Any juror persuaded of the existence of a Mitigating Factor must consider it in this case, regardless of the number of other jurors who agree the factor has been established. Further, any juror may weigh a Mitigating Factor found by another juror, even if he or she did not also find that factor to exist or to be mitigating.

## MITIGATING FACTORS

A.      If he is not sentenced to death, Mr. Briseno will be sentenced to lifetime imprisonment without the possibility of release. I charge you that this factor has been established.

    Number of jurors who so find    _____

B.      The Federal Bureau of Prisons will impose appropriate conditions of confinement and security with regard to Mr. Briseno.

    Number of jurors who so find    _____

C.      Mr. Briseno is the product of a childhood marked by chaos, abuse and abandonment.

    Number of jurors who so find    _____

**D.**   Growing up, Mr. Briseno lacked positive male role models in his home.

Number of jurors who so find   _____

**E.**   His mother's poor choices in the men she brought into the family home had a negative impact on Mr. Briseno.

Number of jurors who so find   _____

**F.**   Juan grew up in a neighborhood plagued with drugs, gangs, and violence.

Number of jurors who so find   _____

**G.**   Juan was raised in poverty.

Number of jurors who so find   _____

**H.**   Juan's basic needs were neglected when he was a young child.

Number of jurors who so find   _____

**I.**   Juan's older brother was a gang member and a poor role model.

Number of jurors who so find   _____

**J.**   Juan was recruited into the Imperial Gangsters when he was only 16.

Number of jurors who so find   _____

**K.**   Juan was unable to keep up with his peers in school.

Number of jurors who so find   _____

**L.**   Juan's father abandoned the family when Juan was only 8.

Number of jurors who so find   _____

**M.**   Juan's father and his associates abused alcohol in front of the children.

Number of jurors who so find   _____

**N.**    Juan has participated in rehabilitative programs while incarcerated.

Number of jurors who so find          _____

**O.**    Juan donated his hair to cancer patients through "Locks of Love."

Number of jurors who so find          _____

**P.**    Juan has a loving relationship with his twin cousins.

Number of jurors who so find          _____

**Q.**    If Juan were to be executed others would suffer grief and loss.

Number of jurors who so find          _____

**R.**    Juan has made a positive adjustment to incarceration and is likely to do so in

federal prison.

Number of jurors who so find          _____

**S.**    Cooperating witnesses and/or cooperating defendants who have killed someone

will not be sentenced to death.

Number of jurors who so find          _____

**T.**    The five victims of the murders voluntarily chose to engage in dangerous and

illegal activities, a circumstance that contributed to their deaths.

Number of jurors who so find          _____

**U.**    Mr. Briseno always behaved respectfully in court.

Number of jurors who so find          _____

**V.**    Mr. Briseno's life has value.

Number of jurors who so find          _____

**W.**    Another defendant, or defendants equally culpable in the murders, will not be

punished by death.

        Number of jurors who so find         _____

**X.**    There are other relevant circumstances that weigh against imposing a sentence of

death.

        Number of jurors who so find         _____

## ADDITIONAL MITIGATING FACTORS

Write in any Additional Mitigating Factors determined by **any one (1) or more**

**members** of the jury, and indicate the number of jurors who find the existence of that

Mitigating Factor to be proved by a preponderance of the evidence. If your answer is

none, then write "NONE." If extra space is needed, write "CONTINUED" and use the

reverse side of this page for extra space.

**A.**     _____

       _____

       _____

       _____

       Number of jurors who so find         _____

**B.**     _____

       _____

       _____

       _____

       Number of jurors who so find         _____

**C.** _____

_____

_____

_____

Number of jurors who so find          _____

**D.** _____

_____

_____

_____

Number of jurors who so find          _____

**E.** _____

_____

_____

_____

Number of jurors who so find          _____

*Instructions:* Regardless of the jury's determinations with respect to the existence of any Mitigating Factors in this Section V, proceed to Section VI.

**SECTION VI. DETERMINATION OF SENTENCE**

*Instructions:* Consider whether the Aggravating Factor or Factors found to exist sufficiently outweigh any Mitigating Factor or Factors found to exist, or in the absence of any Mitigating Factors, whether the Aggravating Factor or Factors are themselves sufficient to justify a sentence of death, and whether death is therefore the appropriate sentence in this case. A sentence of death shall only be imposed if your decision in favor of it is **unanimous.** Based upon that consideration, answer the following question:

Do you, the jury, **unanimously** find that a sentence of death shall be imposed on the defendant JUAN BRISENO aka Tito as punishment for the murder of Luis Ortiz?

YES _____      NO _____

**Note:** If you cannot unanimously agree that a sentence of death should be imposed, you should answer the above question "No," and the Court will sentence Mr. Briseno to a life sentence without the possibility of release for the murder of Mr. Ortiz.

After answering the above question, each juror should sign his or her name below, and the date should be filled in. Once each juror has signed proceed to Section VII of this Special Verdict Form.

_____      _____

_____      _____

_____      _____

_____      _____

_____      _____

_____      _____

                                      FOREPERSON

Date:  March ___, 2015

## VII. CERTIFICATION

By signing below, each juror certifies that consideration of the race, color, religious beliefs, national origin, or sex of the defendant or any victim was not involved in reaching his or her individual decision, and that the individual juror would have made the same recommendation regarding a sentence for the crime or crimes in question regardless of the race, color, religious beliefs, national origin, or sex of the defendant, or the victims.

_____        _____

_____        _____

_____        _____

_____        _____

_____        _____
                                                        FOREPERSON

Date:  March \_\_, 2015.

**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| vs. | ) | 2:11-cr-00077 |
| | ) | |
| JUAN BRISENO | ) | |

**COURT'S VERDICT FORM (PENALTY PHASE)**

**(Completed Form To Be Filed Under Seal)**

**COUNT 13 (Murder of Michael Sessum)**

Dated: March 6, 2015.

/s/ Philip P. Simon
PHILIP P. SIMON, CHIEF JUDGE
UNITED STATES DISTRICT COURT

## THE UNITED STATES DISTRICT COURT FOR
## THE NORTHERN DISTRICT OF INDIANA
## HAMMOND DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| vs. | ) | 2:11-cr-00077 |
| | ) | |
| JUAN BRISENO | ) | |

## SPECIAL VERDICT FORM

### COUNT 13 (Murder of Michael Sessum)

### SECTION I. AGE OF DEFENDANT

Do you, the jury, unanimously find that the Government proved, beyond a reasonable doubt, that the defendant JUAN BRISENO aka Tito was at least eighteen (18) years of age on June 3, 2008?

YES _____        NO _____

*Instructions:* If you answered "NO" in Section I, then stop your deliberations on this count and proceed to Section VII. Each juror should carefully read the statement in Section VII, and sign in the appropriate place if the statement accurately reflects the manner in which he or she reached his or her decision.

If you answered "YES" then proceed to Section II which follows.

## SECTION II. REQUISITE MENTAL STATE

*Instructions:* Answer the following questions by marking the line next to the appropriate answer, "YES" or "NO," to indicate the jury's finding. Each affirmative finding must be unanimous.

### A.   First Threshold Intent Factor

Do you, the jury, unanimously find that the Government proved, beyond a reasonable doubt, that the defendant JUAN BRISENO aka Tito intentionally participated in an act, contemplating that the life of a person would be taken or intending that lethal force would be used in connection with a person, other than one of the participants in the offense, and Michael Sessum died as a direct result of the act?

YES _____      NO _____

### B.   <u>Second Threshold Intent Factor</u>

Do you, the jury, unanimously find that the Government proved, beyond a reasonable doubt, that the defendant JUAN BRISENO aka Tito intentionally and specifically engaged in an act of violence, knowing that the act created a grave risk of death to a person, other than one of the participants in the offense, such that participation in the act constituted a reckless disregard for human life and Michael Sessum died as a direct result of the act?

YES _____      NO _____

3849

*Instructions:* If you answered "NO" to **all** of the applicable Threshold Intent

Factors, then stop your deliberations on this count and proceed to Section VII. Each

juror should carefully read the statement in Section VII, and sign in the appropriate

place if the statement accurately reflects the manner in which he or she reached his or

her decision.

If you indicated that the United States has established **at least** one of the

Threshold Intent Factors in this Section II, subsections A or B, proceed to Section III

which follows.

## SECTION III. STATUTORY AGGRAVATING FACTORS

*Instructions:* Answer the following questions by marking the line next to the appropriate answer, "YES" or "NO," to indicate the jury's finding. Each affirmative finding must be unanimous.

**A.     Substantial Planning and Premeditation**

Do you, the jury, unanimously find that the Government proved, beyond a reasonable doubt, that the defendant JUAN BRISENO aka Tito committed the offense of murder after substantial planning and premeditation (as set out in Instruction 8 of the Court's Instructions) to cause the death of Michael Sessum?

YES _____     NO _____

**B.     Grave Risk of Death to Additional Persons**

Do you, the jury, unanimously find that the Government proved, beyond a reasonable doubt, that in the commission of the murder of Michael Sessum, or in escaping apprehension for the offense, the defendant JUAN BRISENO aka Tito knowingly created a grave risk of death to one or more persons in addition to Michael Sessum?

YES _____     NO _____

3851

C.    **Multiple Killings or Attempted Killings**

Do you, the jury, unanimously find that the Government proved, beyond a reasonable doubt, that the defendant JUAN BRISENO aka Tito intentionally killed or attempted to kill more than one person in a single criminal episode in committing the murder of Michael Sessum?

YES _____    NO _____

*Instructions:* If you answered "NO" to **all** of the listed Statutory Aggravating Factors, then stop your deliberations and proceed to Section VII of this Form. Each juror should then carefully read the statement in Section VII, and sign in the appropriate place if the statement accurately reflects the manner in which he or she reached his or her decision.

If you answered "YES" (1) that the defendant JUAN BRISENO aka Tito was at least eighteen (18) years of age on the date of the murder of Michael Sessum, **and** (2) that at least one of the Threshold Intent Factors in Section II existed, **and** (3) that at least one of the Statutory Aggravating Factors in this Section III existed, proceed to Section IV, which follows.

## SECTION IV. NON STATUTORY AGGRAVATING FACTORS

*Instructions:* Answer the following questions by marking the line next to the appropriate answer, "YES" or "NO," to indicate the jury's finding. In order to answer "YES" you must be unanimous.

### A. Future Dangerousness

Do you, the jury, unanimously find that the Government proved, beyond a reasonable doubt, that the defendant JUAN BRISENO aka Tito represents a continuing danger to the lives and safety of other persons as demonstrated by one or more of: (1) his low potential for rehabilitation as demonstrated by repeated violent criminal acts; (2) his willingness to take human life and a lack of remorse for his acts of violence and attempted acts of violence as demonstrated by statements that he made following these violent acts; **or** (3) his stated desire to impose a rule requiring fellow members of the Imperial Gangsters to shoot at rivals on sight, **and** that his future dangerousness tends to support the imposition of the death penalty as punishment for the murder of Michael Sessum?

YES _____          NO _____

### B. Contemporaneous Convictions for Other Criminal Activity

Do you, the jury, unanimously find that the Government proved, beyond a reasonable doubt, that the defendant JUAN BRISENO aka Tito was convicted at trial of other criminal activity, including additional murders or an attempted murder, **and** that

this additional criminal activity tends to support the imposition of the death penalty as

punishment for the murder of Michael Sessum?

YES _____        NO _____

### C.  Demonstrated Allegiance to Criminal Street Gang

Do you, the jury, unanimously find that the Government proved, beyond a

reasonable doubt, that the defendant JUAN BRISENO aka Tito demonstrated an

allegiance to and membership in the Imperial Gangsters, a criminal street gang, **and**

that this allegiance and membership tends to support the imposition of the death

penalty as punishment for the murder of Michael Sessum?

YES _____        NO _____

### D.  Victim Impact

Do you, the jury, unanimously find that the Government proved, beyond a

reasonable doubt, that the defendant JUAN BRISENO aka Tito caused loss, injury and

harm to Michael Sessum or to his family or friends, **and** that such harm tends to

support the imposition of the death penalty as punishment for the murder of Michael

Sessum?

YES _____        NO _____

*Instructions:* Regardless of whether you found that the Government has established any of the Non-Statutory Aggravating Factors in this Section IV, proceed to Section V, which follows.

## SECTION V. MITIGATING FACTORS

*Instructions:* For each of the following Mitigating Factors, indicate in the space provided the number of jurors who find the existence of that Mitigating Factor to be proved by a preponderance of the evidence.

Unlike for Aggravating Factors, your vote with respect to a Mitigating Factor **need not** be unanimous. A finding with respect to a Mitigating Factor may be made by **one (1)** or more of the members of the jury. Any juror persuaded of the existence of a Mitigating Factor must consider it in this case, regardless of the number of other jurors who agree the factor has been established. Further, any juror may weigh a Mitigating Factor found by another juror, even if he or she did not also find that factor to exist or to be mitigating.

### MITIGATING FACTORS

**A.** If he is not sentenced to death, Mr. Briseno will be sentenced to lifetime imprisonment without the possibility of release. I charge you that this factor has been established.

> Number of jurors who so find     _____

**B.** The Federal Bureau of Prisons will impose appropriate conditions of confinement and security with regard to Mr. Briseno.

> Number of jurors who so find     _____

**C.** Mr. Briseno is the product of a childhood marked by chaos, abuse and abandonment.

> Number of jurors who so find     _____

**D.**    Growing up, Mr. Briseno lacked positive male role models in his home.

Number of jurors who so find    _____

**E.**    His mother's poor choices in the men she brought into the family home had a

negative impact on Mr. Briseno.

Number of jurors who so find    _____

**F.**    Juan grew up in a neighborhood plagued with drugs, gangs, and violence.

Number of jurors who so find    _____

**G.**    Juan was raised in poverty.

Number of jurors who so find    _____

**H.**    Juan's basic needs were neglected when he was a young child.

Number of jurors who so find    _____

**I.**    Juan's older brother was a gang member and a poor role model.

Number of jurors who so find    _____

**J.**    Juan was recruited into the Imperial Gangsters when he was only 16.

Number of jurors who so find    _____

**K.**    Juan was unable to keep up with his peers in school.

Number of jurors who so find    _____

**L.**    Juan's father abandoned the family when Juan was only 8.

Number of jurors who so find    _____

**M.**    Juan's father and his associates abused alcohol in front of the children.

Number of jurors who so find    _____

**N.**     Juan has participated in rehabilitative programs while incarcerated.

Number of jurors who so find     _____

**O.**     Juan donated his hair to cancer patients through "Locks of Love."

Number of jurors who so find     _____

**P.**     Juan has a loving relationship with his twin cousins.

Number of jurors who so find     _____

**Q.**     If Juan were to be executed others would suffer grief and loss.

Number of jurors who so find     _____

**R.**     Juan has made a positive adjustment to incarceration and is likely to do so in federal prison.

Number of jurors who so find     _____

**S.**     Cooperating witnesses and/or cooperating defendants who have killed someone will not be sentenced to death.

Number of jurors who so find     _____

**T.**     The five victims of the murders voluntarily chose to engage in dangerous and illegal activities, a circumstance that contributed to their deaths.

Number of jurors who so find     _____

**U.**     Mr. Briseno always behaved respectfully in court.

Number of jurors who so find     _____

**V.**     Mr. Briseno's life has value.

Number of jurors who so find     _____

**W.**     Another defendant, or defendants equally culpable in the murders, will not be

punished by death.

       Number of jurors who so find      _____

**X.**    There are other relevant circumstances that weigh against imposing a sentence of death.

       Number of jurors who so find      _____

## ADDITIONAL MITIGATING FACTORS

Write in any Additional Mitigating Factors determined by **any one (1) or more members** of the jury, and indicate the number of jurors who find the existence of that Mitigating Factor to be proved by a preponderance of the evidence. If your answer is none, then write "NONE." If extra space is needed, write "CONTINUED" and use the reverse side of this page for extra space.

**A.**  _____

_____

_____

_____

Number of jurors who so find      _____

**B.**  _____

_____

_____

_____

Number of jurors who so find      _____

C. _____

_____

_____

_____

Number of jurors who so find _____

D. _____

_____

_____

_____

Number of jurors who so find _____

E. _____

_____

_____

_____

Number of jurors who so find _____

*Instructions:* Regardless of the jury's determinations with respect to the existence of any Mitigating Factors in this Section V, proceed to Section VI.

**SECTION VI. DETERMINATION OF SENTENCE**

*Instructions:* Consider whether the Aggravating Factor or Factors found to exist sufficiently outweigh any Mitigating Factor or Factors found to exist, or in the absence of any Mitigating Factors, whether the Aggravating Factor or Factors are themselves sufficient to justify a sentence of death, and whether death is therefore the appropriate sentence in this case. A sentence of death shall only be imposed if your decision in favor of it is **unanimous**. Based upon that consideration, answer the following question:

Do you, the jury, **unanimously** find that a sentence of death shall be imposed on the defendant JUAN BRISENO aka Tito as punishment for the murder of Michael Sessum?

YES _____        NO _____

**Note:** If you cannot unanimously agree that a sentence of death should be imposed, you should answer the above question "No," and the Court will sentence Mr. Briseno to a life sentence without the possibility of release for the murder of Mr. Sessum.

After answering the above question, each juror should sign his or her name below, and the date should be filled in. Once each juror has signed proceed to Section VII of this Special Verdict Form.

_____        _____

_____          _____

_____          _____

_____          _____

_____          _____

_____          _____
                                         FOREPERSON

Date:  March ___, 2015

## VII. CERTIFICATION

By signing below, each juror certifies that consideration of the race, color, religious beliefs, national origin, or sex of the defendant or any victim was not involved in reaching his or her individual decision, and that the individual juror would have made the same recommendation regarding a sentence for the crime or crimes in question regardless of the race, color, religious beliefs, national origin, or sex of the defendant, or the victims.

_____    _____


_____    _____


_____    _____


_____    _____


_____    _____
                                                    FOREPERSON


Date:  March \_\_, 2015.

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| vs. | ) | 2:11-cr-00077 |
| | ) | |
| JUAN BRISENO | ) | |

**COURT'S VERDICT FORM (PENALTY PHASE)**

**(Completed Form To Be Filed Under Seal)**

**COUNT 15 (Murder of Miguel Mejias aka "King Nelly")**

Dated: March 6, 2015.

/s/ Philip P. Simon
PHILIP P. SIMON, CHIEF JUDGE
UNITED STATES DISTRICT COURT

3864

**THE UNITED STATES DISTRICT COURT FOR**
**THE NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| vs. | ) | 2:11-cr-00077 |
| | ) | |
| JUAN BRISENO | ) | |

**SPECIAL VERDICT FORM**

**COUNT 15 (Murder of Miguel Mejias aka "King Nelly")**

**SECTION I. AGE OF DEFENDANT**

Do you, the jury, unanimously find that the Government proved, beyond a reasonable doubt, that the defendant JUAN BRISENO aka Tito was at least eighteen (18) years of age on June 3, 2008?

YES _____      NO _____

*Instructions:* If you answered "NO" in Section I, then stop your deliberations on this count and proceed to Section VII. Each juror should carefully read the statement in Section VII, and sign in the appropriate place if the statement accurately reflects the manner in which he or she reached his or her decision.

If you answered "YES" then proceed to Section II which follows.

## SECTION II. REQUISITE MENTAL STATE

*Instructions:* Answer the following questions by marking the line next to the appropriate answer, "YES" or "NO," to indicate the jury's finding. Each affirmative finding must be unanimous.

### A. First Threshold Intent Factor

Do you, the jury, unanimously find that the Government proved, beyond a reasonable doubt, that the defendant JUAN BRISENO aka Tito intentionally inflicted serious bodily injury which resulted in the death of Miguel Mejias?

YES _____      NO _____

### B. Second Threshold Intent Factor

Do you, the jury, unanimously find that the Government proved, beyond a reasonable doubt, that the defendant JUAN BRISENO aka Tito intentionally participated in an act, contemplating that the life of a person would be taken or intending that lethal force would be used in connection with a person, other than one of the participants in the offense, and Miguel Mejias died as a direct result of the act?

YES _____      NO _____

### C. Third Threshold Intent Factor

Do you, the jury, unanimously find that the Government proved, beyond a

reasonable doubt, that the defendant JUAN BRISENO aka Tito intentionally and

specifically engaged in an act of violence, knowing that the act created a grave risk of

death to a person, other than one of the participants in the offense, such that

participation in the act constituted a reckless disregard for human life and Miguel

Mejias died as a direct result of the act?

YES _____      NO _____

*Instructions:* If you answered "NO" to **all** of the applicable Threshold Intent

Factors, then stop your deliberations on this count and proceed to Section VII. Each

juror should carefully read the statement in Section VII, and sign in the appropriate

place if the statement accurately reflects the manner in which he or she reached his or

her decision.

If you indicated that the United States has established **at least** one of the

Threshold Intent Factors in this Section II, subsections A, B, or C, proceed to Section III

which follows.

### SECTION III. STATUTORY AGGRAVATING FACTORS

*Instructions:* Answer the following questions by marking the line next to the
appropriate answer, "YES" or "NO," to indicate the jury's finding. Each affirmative
finding must be unanimous.

**A.      Substantial Planning and Premeditation**

Do you, the jury, unanimously find that the Government proved, beyond a
reasonable doubt, that the defendant JUAN BRISENO aka Tito committed the offense of
murder after substantial planning and premeditation (as set out in Instruction 8 of the
Court's Instructions) to cause the death of Miguel Mejias?

YES _____        NO _____

**B.      Grave Risk of Death to Additional Persons**

Do you, the jury, unanimously find that the Government proved, beyond a
reasonable doubt, that in the commission of the murder of Miguel Mejias, or in escaping
apprehension for the offense, the defendant JUAN BRISENO aka Tito knowingly
created a grave risk of death to one or more persons in addition to Miguel Mejias?

YES _____        NO _____

**C.      Multiple Killings or Attempted Killings**

Do you, the jury, unanimously find that the Government proved, beyond a

reasonable doubt, that the defendant JUAN BRISENO aka Tito intentionally killed or attempted to kill more than one person in a single criminal episode in committing the murder of Miguel Mejias?

YES _____    NO _____

*Instructions:* If you answered "NO" to **all** of the listed Statutory Aggravating Factors, then stop your deliberations and proceed to Section VII of this Form. Each juror should then carefully read the statement in Section VII, and sign in the appropriate place if the statement accurately reflects the manner in which he or she reached his or her decision.

If you answered "YES" (1) that  the defendant JUAN BRISENO aka Tito was at least eighteen (18) years of age on the date of the murder of Miguel Mejias, **and** (2) that at least one of the Threshold Intent Factors in Section II existed, **and** (3) that at least one of the Statutory Aggravating Factors in this Section III existed, proceed to Section IV, which follows.

## SECTION IV. NON STATUTORY AGGRAVATING FACTORS

*Instructions:* Answer the following questions by marking the line next to the appropriate answer, "YES" or "NO," to indicate the jury's finding. In order to answer "YES" you must be unanimous.

### A.     Future Dangerousness

Do you, the jury, unanimously find that the Government proved, beyond a reasonable doubt, that the defendant JUAN BRISENO aka Tito represents a continuing danger to the lives and safety of other persons as demonstrated by one or more of: (1) his low potential for rehabilitation as demonstrated by repeated violent criminal acts; (2) his willingness to take human life and a lack of remorse for his acts of violence and attempted acts of violence as demonstrated by statements that he made following these violent acts; **or** (3) his stated desire to impose a rule requiring fellow members of the Imperial Gangsters to shoot at rivals on sight, **and** that his future dangerousness tends to support the imposition of the death penalty as punishment for the murder of Miguel Mejias?

YES _____       NO _____

### B.     Contemporaneous Convictions for Other Criminal Activity

Do you, the jury, unanimously find that the Government proved, beyond a reasonable doubt, that the defendant JUAN BRISENO aka Tito was convicted at trial of other criminal activity, including additional murders or an attempted murder, **and** that

this additional criminal activity tends to support the imposition of the death penalty as punishment for the murder of Miguel Mejias?

YES _____    NO _____

C.    **Demonstrated Allegiance to Criminal Street Gang**

Do you, the jury, unanimously find that the Government proved, beyond a reasonable doubt, that the defendant JUAN BRISENO aka Tito demonstrated an allegiance to and membership in the Imperial Gangsters, a criminal street gang, **and** that this allegiance and membership tends to support the imposition of the death penalty as punishment for the murder of Miguel Mejias?

YES _____    NO _____

D.    **Victim Impact**

Do you, the jury, unanimously find that the Government proved, beyond a reasonable doubt, that the defendant JUAN BRISENO aka Tito caused loss, injury and harm to Miguel Mejias or to his family, **and** that such harm tends to support the imposition of the death penalty as punishment for the murder of Miguel Mejias?

YES _____    NO _____

*Instructions:* Regardless of whether you found that the Government has established any of the Non-Statutory Aggravating Factors in this Section IV, proceed to Section V, which follows.

## SECTION V. MITIGATING FACTORS

*Instructions:* For each of the following Mitigating Factors, indicate in the space provided the number of jurors who find the existence of that Mitigating Factor to be proved by a preponderance of the evidence.

Unlike for Aggravating Factors, your vote with respect to a Mitigating Factor **need not** be unanimous. A finding with respect to a Mitigating Factor may be made by **one (1)** or more of the members of the jury. Any juror persuaded of the existence of a Mitigating Factor must consider it in this case, regardless of the number of other jurors who agree the factor has been established. Further, any juror may weigh a Mitigating Factor found by another juror, even if he or she did not also find that factor to exist or to be mitigating.

## MITIGATING FACTORS

**A.**     If he is not sentenced to death, Mr. Briseno will be sentenced to lifetime imprisonment without the possibility of release. I charge you that this factor has been established.

Number of jurors who so find          _____

**B.**     The Federal Bureau of Prisons will impose appropriate conditions of confinement and security with regard to Mr. Briseno.

Number of jurors who so find          _____

**C.**     Mr. Briseno is the product of a childhood marked by chaos, abuse and abandonment.

Number of jurors who so find          _____

**D.**     Growing up, Mr. Briseno lacked positive male role models in his home.

    Number of jurors who so find                    _____

**E.**     His mother's poor choices in the men she brought into the family home had a

negative impact on Mr. Briseno.

    Number of jurors who so find                    _____

**F.**     Juan grew up in a neighborhood plagued with drugs, gangs, and violence.

    Number of jurors who so find                    _____

**G.**     Juan was raised in poverty.

    Number of jurors who so find                    _____

**H.**     Juan's basic needs were neglected when he was a young child.

    Number of jurors who so find                    _____

**I.**     Juan's older brother was a gang member and a poor role model.

    Number of jurors who so find                    _____

**J.**     Juan was recruited into the Imperial Gangsters when he was only 16.

    Number of jurors who so find                    _____

**K.**     Juan was unable to keep up with his peers in school.

    Number of jurors who so find                    _____

**L.**     Juan's father abandoned the family when Juan was only 8.

    Number of jurors who so find                    _____

**M.**     Juan's father and his associates abused alcohol in front of the children.

    Number of jurors who so find                    _____

**N.** Juan has participated in rehabilitative programs while incarcerated.

Number of jurors who so find _____

**O.** Juan donated his hair to cancer patients through "Locks of Love."

Number of jurors who so find _____

**P.** Juan has a loving relationship with his twin cousins.

Number of jurors who so find _____

**Q.** If Juan were to be executed others would suffer grief and loss.

Number of jurors who so find _____

**R.** Juan has made a positive adjustment to incarceration and is likely to do so in

federal prison.

Number of jurors who so find _____

**S.** Cooperating witnesses and/or cooperating defendants who have killed someone

will not be sentenced to death.

Number of jurors who so find _____

**T.** The five victims of the murders voluntarily chose to engage in dangerous and

illegal activities, a circumstance that contributed to their deaths.

Number of jurors who so find _____

**U.** Mr. Briseno always behaved respectfully in court.

Number of jurors who so find _____

**V.** Mr. Briseno's life has value.

Number of jurors who so find _____

**W.** Another defendant, or defendants equally culpable in the murders, will not be

punished by death.

>Number of jurors who so find     _____

**X.**     There are other relevant circumstances that weigh against imposing a sentence of

death.

>Number of jurors who so find     _____

### ADDITIONAL MITIGATING FACTORS

Write in any Additional Mitigating Factors determined by **any one (1) or more**

**members** of the jury, and indicate the number of jurors who find the existence of that

Mitigating Factor to be proved by a preponderance of the evidence. If your answer is

none, then write "NONE." If extra space is needed, write "CONTINUED" and use the

reverse side of this page for extra space.

**A.**     _____

_____

_____

_____

Number of jurors who so find     _____

**B.**     _____

_____

_____

_____

Number of jurors who so find     _____

**C.** _____

_____

_____

_____

Number of jurors who so find _____

**D.** _____

_____

_____

_____

Number of jurors who so find _____

**E.** _____

_____

_____

_____

Number of jurors who so find _____

*Instructions:* Regardless of the jury's determinations with respect to the existence of any Mitigating Factors in this Section V, proceed to Section VI.

**SECTION VI. DETERMINATION OF SENTENCE**

*Instructions:* Consider whether the Aggravating Factor or Factors found to exist

sufficiently outweigh any Mitigating Factor or Factors found to exist, or in the absence

of any Mitigating Factors, whether the Aggravating Factor or Factors are themselves

sufficient to justify a sentence of death, and whether death is therefore the appropriate

sentence in this case. A sentence of death shall only be imposed if your decision in favor

of it is **unanimous**. Based upon that consideration, answer the following question:

Do you, the jury, **unanimously** find that a sentence of death shall be imposed on

the defendant JUAN BRISENO aka Tito as punishment for the murder of Miguel

Mejias?

YES _____　　NO _____

**Note:** If you cannot unanimously agree that a sentence of death should be

imposed, you should answer the above question "No," and the Court will sentence Mr.

Briseno to a life sentence without the possibility of release for the murder of Mr. Mejias.

After answering the above question, each juror should sign his or her name

below, and the date should be filled in. Once each juror has signed proceed to Section

VII of this Special Verdict Form.

_____　　_____

_____          _____


_____          _____


_____          _____


_____          _____
                                          FOREPERSON


Date:  March ___, 2015

## VII. CERTIFICATION

By signing below, each juror certifies that consideration of the race, color, religious beliefs, national origin, or sex of the defendant or any victim was not involved in reaching his or her individual decision, and that the individual juror would have made the same recommendation regarding a sentence for the crime or crimes in question regardless of the race, color, religious beliefs, national origin, or sex of the defendant, or the victims.

_____        _____

_____        _____

_____        _____

_____        _____

_____        _____

_____        _____
                                                FOREPERSON

Date:  March \_\_, 2015.

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| vs. | ) | 2:11-cr-00077 |
| | ) | |
| JUAN BRISENO | ) | |

**COURT'S VERDICT FORM (PENALTY PHASE)**

**(Completed Form To Be Filed Under Seal)**

**COUNT 19 (Murder of Miguel Colon aka "Migs")**

Dated: March 6, 2015.

/s/ Philip P. Simon
PHILIP P. SIMON, CHIEF JUDGE
UNITED STATES DISTRICT COURT

# THE UNITED STATES DISTRICT COURT FOR
## THE NORTHERN DISTRICT OF INDIANA
## HAMMOND DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| vs. | ) | 2:11-cr-00077 |
| | ) | |
| JUAN BRISENO | ) | |

### SPECIAL VERDICT FORM

### COUNT 19 (Murder of Miguel Colon aka "Migs")

### SECTION I. AGE OF DEFENDANT

Do you, the jury, unanimously find that the Government proved, beyond a reasonable doubt, that the defendant JUAN BRISENO aka Tito was at least eighteen (18) years of age on February 7, 2010?

YES _____    NO _____

*Instructions:* If you answered "NO" in Section I, then stop your deliberations on this count and proceed to Section VII. Each juror should carefully read the statement in Section VII, and sign in the appropriate place if the statement accurately reflects the manner in which he or she reached his or her decision.

If you answered "YES" then proceed to Section II which follows.

## SECTION II. REQUISITE MENTAL STATE

*Instructions:* Answer the following questions by marking the line next to the appropriate answer, "YES" or "NO," to indicate the jury's finding. Each affirmative finding must be unanimous.

### A. First Threshold Intent Factor

Do you, the jury, unanimously find that the Government proved, beyond a reasonable doubt, that the defendant JUAN BRISENO aka Tito intentionally participated in an act, contemplating that the life of a person would be taken or intending that lethal force would be used in connection with a person, other than one of the participants in the offense, and Miguel Colon died as a direct result of the act?

YES _____        NO _____

### B. Second Threshold Intent Factor

Do you, the jury, unanimously find that the Government proved, beyond a reasonable doubt, that the defendant JUAN BRISENO aka Tito intentionally and specifically engaged in an act of violence, knowing that the act created a grave risk of death to a person, other than one of the participants in the offense, such that participation in the act constituted a reckless disregard for human life and Miguel Colon died as a direct result of the act?

YES _____        NO _____

3883

*Instructions:* If you answered "NO" to **all** of the applicable Threshold Intent Factors, then stop your deliberations on this count and proceed to Section VII. Each juror should carefully read the statement in Section VII, and sign in the appropriate place if the statement accurately reflects the manner in which he or she reached his or her decision.

If you indicated that the United States has established **at least** one of the Threshold Intent Factors in this Section II, subsections A or B, proceed to Section III which follows.

## SECTION III. STATUTORY AGGRAVATING FACTORS

*Instructions:* Answer the following questions by marking the line next to the appropriate answer, "YES" or "NO," to indicate the jury's finding. Each affirmative finding must be unanimous.

### A. Substantial Planning and Premeditation

Do you, the jury, unanimously find that the Government proved, beyond a reasonable doubt, that the defendant JUAN BRISENO aka Tito committed the offense of murder after substantial planning and premeditation (as set out in Instruction 8 of the Court's Instructions) to cause the death of Miguel Colon?

YES _____     NO _____

### B. Grave Risk of Death to Additional Persons

Do you, the jury, unanimously find that the Government proved, beyond a reasonable doubt, that in the commission of the murder of Miguel Colon, or in escaping apprehension for the offense, the defendant JUAN BRISENO aka Tito knowingly created a grave risk of death to one or more persons in addition to Miguel Colon?

YES _____     NO _____

*Instructions:* If you answered "NO" to **all** of the listed Statutory Aggravating Factors, then stop your deliberations and proceed to Section VII of this Form. Each juror

should then carefully read the statement in Section VII, and sign in the appropriate place if the statement accurately reflects the manner in which he or she reached his or her decision.

If you answered "YES" (1) that the defendant JUAN BRISENO aka Tito was at least eighteen (18) years of age on the date of the murder of Miguel Colon, **and** (2) that at least one of the Threshold Intent Factors in Section II existed, **and** (3) that at least one of the Statutory Aggravating Factors in this Section III existed, proceed to Section IV, which follows.

3886

## SECTION IV. NON STATUTORY AGGRAVATING FACTORS

*Instructions:* Answer the following questions by marking the line next to the appropriate answer, "YES" or "NO," to indicate the jury's finding. In order to answer "YES" you must be unanimous.

### A.   Future Dangerousness

Do you, the jury, unanimously find that the Government proved, beyond a reasonable doubt, that the defendant JUAN BRISENO aka Tito represents a continuing danger to the lives and safety of other persons as demonstrated by one or more of:  (1) his low potential for rehabilitation as demonstrated by repeated violent criminal acts; (2) his  willingness to take human life and a lack of remorse for his acts of violence and attempted acts of violence as demonstrated by statements that he made following these violent acts; **or** (3) his stated desire to impose a rule requiring fellow members of the Imperial Gangsters to shoot at rivals on sight, **and** that his future dangerousness tends to support the imposition of the death penalty as punishment for the murder of Miguel Colon?

YES _____        NO _____

### B.   Contemporaneous Convictions for Other Criminal Activity

Do you, the jury, unanimously find that the Government proved, beyond a reasonable doubt, that the defendant JUAN BRISENO aka Tito was convicted at trial of other criminal activity, including additional murders or an attempted murder, **and** that

3887

this additional criminal activity tends to support the imposition of the death penalty as

punishment for the murder of Miguel Colon?

YES _____    NO _____

### C.    Demonstrated Allegiance to Criminal Street Gang

Do you, the jury, unanimously find that the Government proved, beyond a

reasonable doubt, that the defendant JUAN BRISENO aka Tito demonstrated an

allegiance to and membership in the Imperial Gangsters, a criminal street gang, **and**

that this allegiance and membership tends to support the imposition of the death

penalty as punishment for the murder of Miguel Colon?

YES _____    NO _____

### D.    Victim Impact

Do you, the jury, unanimously find that the Government proved, beyond a

reasonable doubt, that the defendant JUAN BRISENO aka Tito caused loss, injury and

harm to Miguel Colon or to his family, **and** that such harm tends to support the

imposition of the death penalty as punishment for the murder of Miguel Colon?

YES _____    NO _____

*Instructions:* Regardless of whether you found that the Government has established any of the Non-Statutory Aggravating Factors in this Section IV, proceed to Section V, which follows.

## SECTION V. MITIGATING FACTORS

*Instructions:* For each of the following Mitigating Factors, indicate in the space provided the number of jurors who find the existence of that Mitigating Factor to be proved by a preponderance of the evidence.

Unlike for Aggravating Factors, your vote with respect to a Mitigating Factor **need not** be unanimous. A finding with respect to a Mitigating Factor may be made by **one (1)** or more of the members of the jury. Any juror persuaded of the existence of a Mitigating Factor must consider it in this case, regardless of the number of other jurors who agree the factor has been established. Further, any juror may weigh a Mitigating Factor found by another juror, even if he or she did not also find that factor to exist or to be mitigating.

### MITIGATING FACTORS

A.      If he is not sentenced to death, Mr. Briseno will be sentenced to lifetime imprisonment without the possibility of release. I charge you that this factor has been established.

> Number of jurors who so find              _____

B.      The Federal Bureau of Prisons will impose appropriate conditions of confinement and security with regard to Mr. Briseno.

> Number of jurors who so find              _____

C.      Mr. Briseno is the product of a childhood marked by chaos, abuse and abandonment.

> Number of jurors who so find              _____

**D.**    Growing up, Mr. Briseno lacked positive male role models in his home.

Number of jurors who so find        _____

**E.**    His mother's poor choices in the men she brought into the family home had a

negative impact on Mr. Briseno.

Number of jurors who so find        _____

**F.**    Juan grew up in a neighborhood plagued with drugs, gangs, and violence.

Number of jurors who so find        _____

**G.**    Juan was raised in poverty.

Number of jurors who so find        _____

**H.**    Juan's basic needs were neglected when he was a young child.

Number of jurors who so find        _____

**I.**    Juan's older brother was a gang member and a poor role model.

Number of jurors who so find        _____

**J.**    Juan was recruited into the Imperial Gangsters when he was only 16.

Number of jurors who so find        _____

**K.**    Juan was unable to keep up with his peers in school.

Number of jurors who so find        _____

**L.**    Juan's father abandoned the family when Juan was only 8.

Number of jurors who so find        _____

**M.**    Juan's father and his associates abused alcohol in front of the children.

Number of jurors who so find        _____

**N.**    Juan has participated in rehabilitative programs while incarcerated.

        Number of jurors who so find        _____

**O.**    Juan donated his hair to cancer patients through "Locks of Love."

        Number of jurors who so find        _____

**P.**    Juan has a loving relationship with his twin cousins.

        Number of jurors who so find        _____

**Q.**    If Juan were to be executed others would suffer grief and loss.

        Number of jurors who so find        _____

**R.**    Juan has made a positive adjustment to incarceration and is likely to do so in federal prison.

        Number of jurors who so find        _____

**S.**    Cooperating witnesses and/or cooperating defendants who have killed someone will not be sentenced to death.

        Number of jurors who so find        _____

**T.**    The five victims of the murders voluntarily chose to engage in dangerous and illegal activities, a circumstance that contributed to their deaths.

        Number of jurors who so find        _____

**U.**    Mr. Briseno always behaved respectfully in court.

        Number of jurors who so find        _____

**V.**    Mr. Briseno's life has value.

        Number of jurors who so find        _____

**W.**    Another defendant, or defendants equally culpable in the murders, will not be

punished by death.

Number of jurors who so find _____

**X.** There are other relevant circumstances that weigh against imposing a sentence of death.

Number of jurors who so find _____

### ADDITIONAL MITIGATING FACTORS

Write in any Additional Mitigating Factors determined by **any one (1) or more members** of the jury, and indicate the number of jurors who find the existence of that Mitigating Factor to be proved by a preponderance of the evidence. If your answer is none, then write "NONE." If extra space is needed, write "CONTINUED" and use the reverse side of this page for extra space.

**A.** _____

_____

_____

_____

Number of jurors who so find _____

**B.** _____

_____

_____

_____

Number of jurors who so find _____

C.    _____

_____

_____

_____

Number of jurors who so find          _____

D.    _____

_____

_____

_____

Number of jurors who so find          _____

E.    _____

_____

_____

_____

Number of jurors who so find          _____

*Instructions:* Regardless of the jury's determinations with respect to the existence of any Mitigating Factors in this Section V, proceed to Section VI.

**SECTION VI. DETERMINATION OF SENTENCE**

*Instructions:* Consider whether the Aggravating Factor or Factors found to exist sufficiently outweigh any Mitigating Factor or Factors found to exist, or in the absence of any Mitigating Factors, whether the Aggravating Factor or Factors are themselves sufficient to justify a sentence of death, and whether death is therefore the appropriate sentence in this case. A sentence of death shall only be imposed if your decision in favor of it is **unanimous**. Based upon that consideration, answer the following question:

Do you, the jury, **unanimously** find that a sentence of death shall be imposed on the defendant JUAN BRISENO aka Tito as punishment for the murder of Miguel Colon?

YES _____       NO _____

**Note:** If you cannot unanimously agree that a sentence of death should be imposed, you should answer the above question "No," and the Court will sentence Mr. Briseno to a life sentence without the possibility of release for the murder of Mr. Colon.

After answering the above question, each juror should sign his or her name below, and the date should be filled in. Once each juror has signed proceed to Section VII of this Special Verdict Form.

_____          _____

_____        _____


_____        _____


_____        _____


_____        _____


_____        _____
                                        FOREPERSON


Date:  March ___, 2015

## VII. CERTIFICATION

By signing below, each juror certifies that consideration of the race, color, religious beliefs, national origin, or sex of the defendant or any victim was not involved in reaching his or her individual decision, and that the individual juror would have made the same recommendation regarding a sentence for the crime or crimes in question regardless of the race, color, religious beliefs, national origin, or sex of the defendant, or the victims.

_____            _____



_____            _____



_____            _____



_____            _____



_____            _____



_____            _____
                                                          FOREPERSON


Date:  March \_\_, 2015.

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| vs. | ) | 2:11-cr-00077 |
| | ) | |
| JUAN BRISENO | ) | |

**COURT'S VERDICT FORM (PENALTY PHASE)**

**(Completed Form To Be Filed Under Seal)**

**COUNT 21 (Murder of Latroy Howard)**

Dated: March 6, 2015.

/s/ Philip P. Simon
PHILIP P. SIMON, CHIEF JUDGE
UNITED STATES DISTRICT COURT

## THE UNITED STATES DISTRICT COURT FOR
## THE NORTHERN DISTRICT OF INDIANA
## HAMMOND DIVISION

UNITED STATES OF AMERICA    )
           )
      vs.          )        2:11-cr-00077
           )
JUAN BRISENO        )

### SPECIAL VERDICT FORM

### COUNT 21 (Murder of Latroy Howard)

### SECTION I. AGE OF DEFENDANT

Do you, the jury, unanimously find that the Government proved, beyond a

reasonable doubt, that the defendant JUAN BRISENO aka Tito was at least eighteen (18)

years of age on June 19, 2010?

YES _____     NO _____

*Instructions:* If you answered "NO" in Section I, then stop your deliberations on

this count and proceed to Section VII. Each juror should carefully read the statement in

Section VII, and sign in the appropriate place if the statement accurately reflects the

manner in which he or she reached his or her decision.

If you answered "YES" then proceed to Section II which follows.

## SECTION II. REQUISITE MENTAL STATE

*Instructions:* Answer the following questions by marking the line next to the appropriate answer, "YES" or "NO," to indicate the jury's finding. Each affirmative finding must be unanimous.

### A. <u>First Threshold Intent Factor</u>

Do you, the jury, unanimously find that the Government proved, beyond a reasonable doubt, that the defendant JUAN BRISENO aka Tito intentionally killed Latroy Howard?

YES _____        NO _____

### B. <u>Second Threshold Intent Factor</u>

Do you, the jury, unanimously find that the Government proved, beyond a reasonable doubt, that the defendant JUAN BRISENO aka Tito intentionally inflicted serious bodily injury which resulted in the death of Latroy Howard?

YES _____        NO _____

### C. <u>Third Threshold Intent Factor</u>

Do you, the jury, unanimously find that the Government proved, beyond a reasonable doubt, that the defendant JUAN BRISENO aka Tito intentionally participated in an act, contemplating that the life of a person would be taken or

intending that lethal force would be used in connection with a person, other than one of the participants in the offense, and Latroy Howard died as a direct result of the act?

YES _____    NO _____

**D. <u>Fourth Threshold Intent Factor</u>**

Do you, the jury, unanimously find that the Government proved, beyond a reasonable doubt, that the defendant JUAN BRISENO aka Tito intentionally and specifically engaged in an act of violence, knowing that the act created a grave risk of death to a person, other than one of the participants in the offense, such that participation in the act constituted a reckless disregard for human life and Latroy Howard died as a direct result of the act?

YES _____    NO _____

*Instructions:* If you answered "NO" to **<u>all</u>** of the applicable Threshold Intent Factors, then stop your deliberations on this count and proceed to Section VII. Each juror should carefully read the statement in Section VII, and sign in the appropriate place if the statement accurately reflects the manner in which he or she reached his or her decision.

If you indicated that the United States has established **<u>at least</u>** one of the Threshold Intent Factors in this Section II, subsections A, B, C, or D, proceed to Section III which follows.

## SECTION III. STATUTORY AGGRAVATING FACTORS

*Instructions:* Answer the following question by marking the line next to the appropriate answer, "YES" or "NO," to indicate the jury's finding. An affirmative finding must be unanimous.

### A. Substantial Planning and Premeditation

Do you, the jury, unanimously find that the Government proved, beyond a reasonable doubt, that the defendant JUAN BRISENO aka Tito committed the offense of murder after substantial planning and premeditation (as set out in Instruction 8 of the Court's Instructions) to cause the death of Latroy Howard?

YES _____     NO _____

*Instructions:* If you answered "NO," then stop your deliberations and proceed to Section VII of this Form. Each juror should then carefully read the statement in Section VII, and sign in the appropriate place if the statement accurately reflects the manner in which he or she reached his or her decision.

If you answered "YES" (1) that the defendant JUAN BRISENO aka Tito was at least eighteen (18) years of age on the date of the murder of Latroy Howard, **and** (2) that at least one of the Threshold Intent Factors in Section II existed, **and** (3) that the Statutory Aggravating Factor in this Section III existed, proceed to Section IV, which follows.

## SECTION IV. NON STATUTORY AGGRAVATING FACTORS

*Instructions:* Answer the following questions by marking the line next to the appropriate answer, "YES" or "NO," to indicate the jury's finding. In order to answer "YES" you must be unanimous.

#### A.    Future Dangerousness

Do you, the jury, unanimously find that the Government proved, beyond a reasonable doubt, that the defendant JUAN BRISENO aka Tito represents a continuing danger to the lives and safety of other persons as demonstrated by one or more of:  (1) his low potential for rehabilitation as demonstrated by repeated violent criminal acts; **or** (2) his stated desire to impose a rule requiring fellow members of the Imperial Gangsters to shoot at rivals on sight, **and** that his future dangerousness tends to support the imposition of the death penalty as punishment for the murder of Latroy Howard?

YES _____        NO _____

#### B.    Contemporaneous Convictions for Other Criminal Activity

Do you, the jury, unanimously find that the Government proved, beyond a reasonable doubt, that the defendant JUAN BRISENO aka Tito was convicted at trial of other criminal activity, including additional murders or an attempted murder, **and** that this additional criminal activity tends to support the imposition of the death penalty as

3903

punishment for the murder of Latroy Howard?

YES _____        NO _____

### C.        Demonstrated Allegiance to Criminal Street Gang

Do you, the jury, unanimously find that the Government proved, beyond a reasonable doubt, that the defendant JUAN BRISENO aka Tito demonstrated an allegiance to and membership in the Imperial Gangsters, a criminal street gang, **and** that this allegiance and membership tends to support the imposition of the death penalty as punishment for the murder of Latroy Howard?

YES _____        NO _____

### D.    Victim Impact

Do you, the jury, unanimously find that the Government proved, beyond a reasonable doubt, that the defendant JUAN BRISENO aka Tito caused loss, injury and harm to Latroy Howard or to his family, **and** that such harm tends to support the imposition of the death penalty as punishment for the murder of Latroy Howard?

YES _____        NO _____

*Instructions:* Regardless of whether you found that the Government has established any of the Non-Statutory Aggravating Factors in this Section IV, proceed to Section V, which follows.

3904

## SECTION V. MITIGATING FACTORS

*Instructions:* For each of the following Mitigating Factors, indicate in the space provided the number of jurors who find the existence of that Mitigating Factor to be proved by a preponderance of the evidence.

Unlike for Aggravating Factors, your vote with respect to a Mitigating Factor **need not** be unanimous. A finding with respect to a Mitigating Factor may be made by **one (1)** or more of the members of the jury. Any juror persuaded of the existence of a Mitigating Factor must consider it in this case, regardless of the number of other jurors who agree the factor has been established. Further, any juror may weigh a Mitigating Factor found by another juror, even if he or she did not also find that factor to exist or to be mitigating.

### MITIGATING FACTORS

A.     If he is not sentenced to death, Mr. Briseno will be sentenced to lifetime imprisonment without the possibility of release. I charge you that this factor has been established.

        Number of jurors who so find          _____

B.     The Federal Bureau of Prisons will impose appropriate conditions of confinement and security with regard to Mr. Briseno.

        Number of jurors who so find          _____

C.     Mr. Briseno is the product of a childhood marked by chaos, abuse and abandonment.

        Number of jurors who so find          _____

3905

**D.**    Growing up, Mr. Briseno lacked positive male role models in his home.

Number of jurors who so find    _____

**E.**    His mother's poor choices in the men she brought into the family home had a

negative impact on Mr. Briseno.

Number of jurors who so find    _____

**F.**    Juan grew up in a neighborhood plagued with drugs, gangs, and violence.

Number of jurors who so find    _____

**G.**    Juan was raised in poverty.

Number of jurors who so find    _____

**H.**    Juan's basic needs were neglected when he was a young child.

Number of jurors who so find    _____

**I.**    Juan's older brother was a gang member and a poor role model.

Number of jurors who so find    _____

**J.**    Juan was recruited into the Imperial Gangsters when he was only 16.

Number of jurors who so find    _____

**K.**    Juan was unable to keep up with his peers in school.

Number of jurors who so find    _____

**L.**    Juan's father abandoned the family when Juan was only 8.

Number of jurors who so find    _____

**M.**    Juan's father and his associates abused alcohol in front of the children.

Number of jurors who so find    _____

**N.**    Juan has participated in rehabilitative programs while incarcerated.

Number of jurors who so find          _____

**O.**     Juan donated his hair to cancer patients through "Locks of Love."

Number of jurors who so find          _____

**P.**     Juan has a loving relationship with his twin cousins.

Number of jurors who so find          _____

**Q.**     If Juan were to be executed others would suffer grief and loss.

Number of jurors who so find          _____

**R.**     Juan has made a positive adjustment to incarceration and is likely to do so in federal prison.

Number of jurors who so find          _____

**S.**     Cooperating witnesses and/or cooperating defendants who have killed someone will not be sentenced to death.

Number of jurors who so find          _____

**T.**     The five victims of the murders voluntarily chose to engage in dangerous and illegal activities, a circumstance that contributed to their deaths.

Number of jurors who so find          _____

**U.**     Mr. Briseno always behaved respectfully in court.

Number of jurors who so find          _____

**V.**     Mr. Briseno's life has value.

Number of jurors who so find          _____

**W.**     Another defendant, or defendants equally culpable in the murders, will not be punished by death.

3907

Number of jurors who so find                     _____

**X.**      There are other relevant circumstances that weigh against imposing a sentence of death.

Number of jurors who so find                     _____

### ADDITIONAL MITIGATING FACTORS

Write in any Additional Mitigating Factors determined by **any one (1) or more members** of the jury, and indicate the number of jurors who find the existence of that Mitigating Factor to be proved by a preponderance of the evidence. If your answer is none, then write "NONE." If extra space is needed, write "CONTINUED" and use the reverse side of this page for extra space.

**A.**      _____

_____

_____

_____

Number of jurors who so find                     _____

**B.**      _____

_____

_____

_____

Number of jurors who so find                     _____

C.    _____

      _____

      _____

      _____

      Number of jurors who so find          _____

D.    _____

      _____

      _____

      _____

      Number of jurors who so find          _____

E.    _____

      _____

      _____

      _____

      Number of jurors who so find          _____


*Instructions:* Regardless of the jury's determinations with respect to the existence of any Mitigating Factors in this Section V, proceed to Section VI.

**SECTION VI. DETERMINATION OF SENTENCE**

*Instructions:* Consider whether the Aggravating Factor or Factors found to exist sufficiently outweigh any Mitigating Factor or Factors found to exist, or in the absence of any Mitigating Factors, whether the Aggravating Factor or Factors are themselves sufficient to justify a sentence of death, and whether death is therefore the appropriate sentence in this case. A sentence of death shall only be imposed if your decision in favor of it is **unanimous.** Based upon that consideration, answer the following question:

Do you, the jury, **unanimously** find that a sentence of death shall be imposed on the defendant JUAN BRISENO aka Tito as punishment for the murder of Latroy Howard?

YES _____        NO _____

**Note:** If you cannot unanimously agree that a sentence of death should be imposed, you should answer the above question "No," and the Court will sentence Mr. Briseno to a life sentence without the possibility of release for the murder of Mr. Howard.

After answering the above questions, each juror should sign his or her name below, and the date should be filled in. Once each juror has signed proceed to Section VII of this Special Verdict Form.

_____        _____

_____    _____


_____    _____


_____    _____


_____    _____


_____    _____

FOREPERSON


Date:  March ____, 2015

## VII. CERTIFICATION

By signing below, each juror certifies that consideration of the race, color, religious beliefs, national origin, or sex of the defendant or any victim was not involved in reaching his or her individual decision, and that the individual juror would have made the same recommendation regarding a sentence for the crime or crimes in question regardless of the race, color, religious beliefs, national origin, or sex of the defendant, or the victims.

_____        _____


_____        _____


_____        _____


_____        _____


_____        _____
                                                FOREPERSON


Date:  March \_\_, 2015.

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# HAMMOND DIVISION

UNITED STATES OF AMERICA    )
                            )
      vs.                  )        2:11-cr-00077
                            )
JUAN BRISENO            )

## COURT'S VERDICT FORM (PENALTY PHASE)

### (Completed Form To Be Filed Under Seal)

### COUNT 9 (Murder of Luis Ortiz aka "Manolo")

Dated: March 6, 2015.

                              /s/ Philip P. Simon
                              PHILIP P. SIMON, CHIEF JUDGE
                              UNITED STATES DISTRICT COURT

Case 15-2347   Document: 35   Filed: 07/27/2016   Pages: 4186

# THE UNITED STATES DISTRICT COURT FOR
## THE NORTHERN DISTRICT OF INDIANA
### HAMMOND DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| vs. | ) | 2:11-cr-00077 |
| | ) | |
| JUAN BRISENO | ) | |

## SPECIAL VERDICT FORM

### COUNT 9 (Murder of Luis Ortiz aka "Manolo")

### SECTION I. AGE OF DEFENDANT

Do you, the jury, unanimously find that the Government proved, beyond a reasonable doubt, that the defendant JUAN BRISENO aka Tito was at least eighteen (18) years of age on September 26, 2007?

YES ___✓___     NO _____

*Instructions:* If you answered "NO" in Section I, then stop your deliberations on this count and proceed to Section VII. Each juror should carefully read the statement in Section VII, and sign in the appropriate place if the statement accurately reflects the manner in which he or she reached his or her decision.

If you answered "YES" then proceed to Section II which follows.

## SECTION II. REQUISITE MENTAL STATE

*Instructions:* Answer the following questions by marking the line next to the appropriate answer, "YES" or "NO," to indicate the jury's finding. Each affirmative finding must be unanimous.

**A.** <u>First Threshold Intent Factor</u>

Do you, the jury, unanimously find that the Government proved, beyond a reasonable doubt, that the defendant JUAN BRISENO aka Tito intentionally killed Luis Ortiz?

YES ____✓____ NO _____

**B.** <u>Second Threshold Intent Factor</u>

Do you, the jury, unanimously find that the Government proved, beyond a reasonable doubt, that the defendant JUAN BRISENO aka Tito intentionally inflicted serious bodily injury which resulted in the death of Luis Ortiz?

YES ____✓____ NO _____

**C.** <u>Third Threshold Intent Factor</u>

Do you, the jury, unanimously find that the Government proved, beyond a reasonable doubt, that the defendant JUAN BRISENO aka Tito intentionally participated in an act, contemplating that the life of a person would be taken or

intending that lethal force would be used in connection with a person, other than one of the participants in the offense, and Luis Ortiz died as a direct result of the act?

YES _____✓_____     NO _____

### D.    Fourth Threshold Intent Factor

Do you, the jury, unanimously find that the Government proved, beyond a reasonable doubt, that the defendant JUAN BRISENO aka Tito intentionally and specifically engaged in an act of violence, knowing that the act created a grave risk of death to a person, other than one of the participants in the offense, such that participation in the act constituted a reckless disregard for human life and Luis Ortiz died as a direct result of the act?

YES _____✓_____     NO _____

*Instructions:* If you answered "NO" to **all** of the applicable Threshold Intent Factors, then stop your deliberations on this count and proceed to Section VII. Each juror should carefully read the statement in Section VII, and sign in the appropriate place if the statement accurately reflects the manner in which he or she reached his or her decision.

If you indicated that the United States has established **at least** one of the Threshold Intent Factors in this Section II, subsections A, B, C, or D, proceed to Section III which follows.

## SECTION III. STATUTORY AGGRAVATING FACTORS

*Instructions:* Answer the following question by marking the line next to the appropriate answer, "YES" or "NO," to indicate the jury's finding. An affirmative finding must be unanimous.

### A.      Substantial Planning and Premeditation

Do you, the jury, unanimously find that the Government proved, beyond a reasonable doubt, that the defendant JUAN BRISENO aka Tito committed the offense of murder after substantial planning and premeditation (as set out in Instruction 8 of the Court's Instructions) to cause the death of Luis Ortiz?



YES _____      NO ___✓_____

*Instructions:* If you answered "NO," then stop your deliberations and proceed to Section VII of this Form. Each juror should then carefully read the statement in Section VII, and sign in the appropriate place if the statement accurately reflects the manner in which he or she reached his or her decision.

If you answered "YES" (1) that  the defendant JUAN BRISENO aka Tito was at least eighteen (18) years of age on the date of the murder of Luis Ortiz, **and** (2) that at least one of the Threshold Intent Factors in Section II existed, **and** (3) that the Statutory Aggravating Factor in this Section III existed, proceed to Section IV, which follows.

## SECTION IV. NON STATUTORY AGGRAVATING FACTORS

*Instructions:* Answer the following questions by marking the line next to the appropriate answer, "YES" or "NO," to indicate the jury's finding. In order to answer "YES" you must be unanimous.

### A.     Future Dangerousness

Do you, the jury, unanimously find that the Government proved, beyond a reasonable doubt, that the defendant JUAN BRISENO aka Tito represents a continuing danger to the lives and safety of other persons as demonstrated by one or more of:  (1) his low potential for rehabilitation as demonstrated by repeated violent criminal acts; (2) his  willingness to take human life and a lack of remorse for his acts of violence and attempted acts of violence as demonstrated by statements that he made following these violent acts; **or** (3) his stated desire to impose a rule requiring fellow members of the Imperial Gangsters to shoot at rivals on sight, **and** that his future dangerousness tends to support the imposition of the death penalty as punishment for the murder of Luis Ortiz?

YES _____          NO _____

### B.     Contemporaneous Convictions for Other Criminal Activity

Do you, the jury, unanimously find that the Government proved, beyond a reasonable doubt, that the defendant JUAN BRISENO aka Tito was convicted at trial of other criminal activity, including additional murders or an attempted murder, **and** that

this additional criminal activity tends to support the imposition of the death penalty as punishment for the murder of Luis Ortiz?

YES _____     NO _____

### C.     Demonstrated Allegiance to Criminal Street Gang

Do you, the jury, unanimously find that the Government proved, beyond a reasonable doubt, that the defendant JUAN BRISENO aka Tito demonstrated an allegiance to and membership in the Imperial Gangsters, a criminal street gang, **and** that this allegiance and membership tends to support the imposition of the death penalty as punishment for the murder of Luis Ortiz?

YES _____     NO _____

### D.     Victim Impact

Do you, the jury, unanimously find that the Government proved, beyond a reasonable doubt, that the defendant JUAN BRISENO aka Tito caused loss, injury and harm to Luis Ortiz or to his family, **and** that such harm tends to support the imposition of the death penalty as punishment for the murder of Luis Ortiz?

YES _____     NO _____

*Instructions:* Regardless of whether you found that the Government has

established any of the Non-Statutory Aggravating Factors in this Section IV, proceed to

Section V, which follows.

## SECTION V. MITIGATING FACTORS

*Instructions:* For each of the following Mitigating Factors, indicate in the space provided the number of jurors who find the existence of that Mitigating Factor to be proved by a preponderance of the evidence.

Unlike for Aggravating Factors, your vote with respect to a Mitigating Factor **need not** be unanimous. A finding with respect to a Mitigating Factor may be made by **one (1)** or more of the members of the jury. Any juror persuaded of the existence of a Mitigating Factor must consider it in this case, regardless of the number of other jurors who agree the factor has been established. Further, any juror may weigh a Mitigating Factor found by another juror, even if he or she did not also find that factor to exist or to be mitigating.

### MITIGATING FACTORS

A.      If he is not sentenced to death, Mr. Briseno will be sentenced to lifetime imprisonment without the possibility of release. I charge you that this factor has been established.

Number of jurors who so find                          _____

B.      The Federal Bureau of Prisons will impose appropriate conditions of confinement and security with regard to Mr. Briseno.

Number of jurors who so find                          _____

C.      Mr. Briseno is the product of a childhood marked by chaos, abuse and abandonment.

Number of jurors who so find                          _____

**D.**   Growing up, Mr. Briseno lacked positive male role models in his home.

Number of jurors who so find            _____

**E.**   His mother's poor choices in the men she brought into the family home had a

negative impact on Mr. Briseno.

Number of jurors who so find            _____

**F.**   Juan grew up in a neighborhood plagued with drugs, gangs, and violence.

Number of jurors who so find            _____

**G.**   Juan was raised in poverty.

Number of jurors who so find            _____

**H.**   Juan's basic needs were neglected when he was a young child.

Number of jurors who so find            _____

**I.**   Juan's older brother was a gang member and a poor role model.

Number of jurors who so find            _____

**J.**   Juan was recruited into the Imperial Gangsters when he was only 16.

Number of jurors who so find            _____

**K.**   Juan was unable to keep up with his peers in school.

Number of jurors who so find            _____

**L.**   Juan's father abandoned the family when Juan was only 8.

Number of jurors who so find            _____

**M.**   Juan's father and his associates abused alcohol in front of the children.

Number of jurors who so find            _____

3922

**N.** Juan has participated in rehabilitative programs while incarcerated.

Number of jurors who so find       _____

**O.** Juan donated his hair to cancer patients through "Locks of Love."

Number of jurors who so find       _____

**P.** Juan has a loving relationship with his twin cousins.

Number of jurors who so find       _____

**Q.** If Juan were to be executed others would suffer grief and loss.

Number of jurors who so find       _____

**R.** Juan has made a positive adjustment to incarceration and is likely to do so in federal prison.

Number of jurors who so find       _____

**S.** Cooperating witnesses and/or cooperating defendants who have killed someone will not be sentenced to death.

Number of jurors who so find       _____

**T.** The five victims of the murders voluntarily chose to engage in dangerous and illegal activities, a circumstance that contributed to their deaths.

Number of jurors who so find       _____

**U.** Mr. Briseno always behaved respectfully in court.

Number of jurors who so find       _____

**V.** Mr. Briseno's life has value.

Number of jurors who so find       _____

**W.** Another defendant, or defendants equally culpable in the murders, will not be

punished by death.

Number of jurors who so find _____

X. There are other relevant circumstances that weigh against imposing a sentence of death.

Number of jurors who so find _____

## ADDITIONAL MITIGATING FACTORS

Write in any Additional Mitigating Factors determined by **any one (1) or more members** of the jury, and indicate the number of jurors who find the existence of that Mitigating Factor to be proved by a preponderance of the evidence. If your answer is none, then write "NONE." If extra space is needed, write "CONTINUED" and use the reverse side of this page for extra space.

A. _____

_____

_____

_____

Number of jurors who so find _____

B. _____

_____

_____

_____

Number of jurors who so find _____

**C.**  _____

_____

_____

_____

Number of jurors who so find          _____

**D.**  _____

_____

_____

_____

Number of jurors who so find          _____

**E.**  _____

_____

_____

_____

Number of jurors who so find          _____

*Instructions:* Regardless of the jury's determinations with respect to the existence of any Mitigating Factors in this Section V, proceed to Section VI.

## SECTION VI. DETERMINATION OF SENTENCE

*Instructions:* Consider whether the Aggravating Factor or Factors found to exist sufficiently outweigh any Mitigating Factor or Factors found to exist, or in the absence of any Mitigating Factors, whether the Aggravating Factor or Factors are themselves sufficient to justify a sentence of death, and whether death is therefore the appropriate sentence in this case. A sentence of death shall only be imposed if your decision in favor of it is **unanimous.** Based upon that consideration, answer the following question:

Do you, the jury, **unanimously** find that a sentence of death shall be imposed on the defendant JUAN BRISENO aka Tito as punishment for the murder of Luis Ortiz?

YES _____     NO _____

**Note:** If you cannot unanimously agree that a sentence of death should be imposed, you should answer the above question "No," and the Court will sentence Mr. Briseno to a life sentence without the possibility of release for the murder of Mr. Ortiz.

After answering the above question, each juror should sign his or her name below, and the date should be filled in. Once each juror has signed proceed to Section VII of this Special Verdict Form.

_____          _____

_____          _____

3926

_____          _____

_____          _____

_____          _____

                                       _____
_____          FOREPERSON


Date:  March ___, 2015

## VII. CERTIFICATION

By signing below, each juror certifies that consideration of the race, color, religious beliefs, national origin, or sex of the defendant or any victim was not involved in reaching his or her individual decision, and that the individual juror would have made the same recommendation regarding a sentence for the crime or crimes in question regardless of the race, color, religious beliefs, national origin, or sex of the defendant, or the victims.



FOREPERSON

Date:  March 6, 2015.

Case 2:11-cr-00077-PPS-APR   Document 1532   Filed 03/06/15   Page 1 of 17

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| vs. | ) | 2:11-cr-00077 |
| | ) | |
| JUAN BRISENO | ) | |

**COURT'S VERDICT FORM (PENALTY PHASE)**

**(Completed Form To Be Filed Under Seal)**

**COUNT 13 (Murder of Michael Sessum)**

Dated: March 6, 2015.

/s/ Philip P. Simon
PHILIP P. SIMON, CHIEF JUDGE
UNITED STATES DISTRICT COURT

3929

**THE UNITED STATES DISTRICT COURT FOR**
**THE NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| vs. | ) | 2:11-cr-00077 |
| | ) | |
| JUAN BRISENO | ) | |

## <u>SPECIAL VERDICT FORM</u>

### COUNT 13 (Murder of Michael Sessum)

### SECTION I. AGE OF DEFENDANT

Do you, the jury, unanimously find that the Government proved, beyond a reasonable doubt, that the defendant JUAN BRISENO aka Tito was at least eighteen (18) years of age on June 3, 2008?



YES __✓__      NO _____

*Instructions:* If you answered "NO" in Section I, then stop your deliberations on this count and proceed to Section VII. Each juror should carefully read the statement in Section VII, and sign in the appropriate place if the statement accurately reflects the manner in which he or she reached his or her decision.

If you answered "YES" then proceed to Section II which follows.

## SECTION II. REQUISITE MENTAL STATE

*Instructions:* Answer the following questions by marking the line next to the appropriate answer, "YES" or "NO," to indicate the jury's finding. Each affirmative finding must be unanimous.

A.    **First Threshold Intent Factor**

Do you, the jury, unanimously find that the Government proved, beyond a reasonable doubt, that the defendant JUAN BRISENO aka Tito intentionally participated in an act, contemplating that the life of a person would be taken or intending that lethal force would be used in connection with a person, other than one of the participants in the offense, and Michael Sessum died as a direct result of the act?

YES ____✓____    NO _____

B.    **Second Threshold Intent Factor**

Do you, the jury, unanimously find that the Government proved, beyond a reasonable doubt, that the defendant JUAN BRISENO aka Tito intentionally and specifically engaged in an act of violence, knowing that the act created a grave risk of death to a person, other than one of the participants in the offense, such that participation in the act constituted a reckless disregard for human life and Michael Sessum died as a direct result of the act?

YES ____✓____    NO _____

3931

*Instructions:* If you answered "NO" to **all** of the applicable Threshold Intent Factors, then stop your deliberations on this count and proceed to Section VII. Each juror should carefully read the statement in Section VII, and sign in the appropriate place if the statement accurately reflects the manner in which he or she reached his or her decision.

If you indicated that the United States has established **at least** one of the Threshold Intent Factors in this Section II, subsections A or B, proceed to Section III which follows.

## SECTION III. STATUTORY AGGRAVATING FACTORS

*Instructions:* Answer the following questions by marking the line next to the appropriate answer, "YES" or "NO," to indicate the jury's finding. Each affirmative finding must be unanimous.

### A.      Substantial Planning and Premeditation

Do you, the jury, unanimously find that the Government proved, beyond a reasonable doubt, that the defendant JUAN BRISENO aka Tito committed the offense of murder after substantial planning and premeditation (as set out in Instruction 8 of the Court's Instructions) to cause the death of Michael Sessum?

YES _____     NO \_\_\_✓\_\_\_\_\_

### B.      Grave Risk of Death to Additional Persons

Do you, the jury, unanimously find that the Government proved, beyond a reasonable doubt, that in the commission of the murder of Michael Sessum, or in escaping apprehension for the offense, the defendant JUAN BRISENO aka Tito knowingly created a grave risk of death to one or more persons in addition to Michael Sessum?

YES \_\_\_✓\_\_\_\_\_     NO _____

### C. Multiple Killings or Attempted Killings

Do you, the jury, unanimously find that the Government proved, beyond a reasonable doubt, that the defendant JUAN BRISENO aka Tito intentionally killed or attempted to kill more than one person in a single criminal episode in committing the murder of Michael Sessum?

YES ____✓____    NO _____

*Instructions:* If you answered "NO" to **all** of the listed Statutory Aggravating Factors, then stop your deliberations and proceed to Section VII of this Form. Each juror should then carefully read the statement in Section VII, and sign in the appropriate place if the statement accurately reflects the manner in which he or she reached his or her decision.

If you answered "YES" (1) that the defendant JUAN BRISENO aka Tito was at least eighteen (18) years of age on the date of the murder of Michael Sessum, **and** (2) that at least one of the Threshold Intent Factors in Section II existed, **and** (3) that at least one of the Statutory Aggravating Factors in this Section III existed, proceed to Section IV, which follows.

3934

## SECTION IV. NON STATUTORY AGGRAVATING FACTORS

*Instructions:* Answer the following questions by marking the line next to the appropriate answer, "YES" or "NO," to indicate the jury's finding. In order to answer "YES" you must be unanimous.

### A.     Future Dangerousness

Do you, the jury, unanimously find that the Government proved, beyond a reasonable doubt, that the defendant JUAN BRISENO aka Tito represents a continuing danger to the lives and safety of other persons as demonstrated by one or more of: (1) his low potential for rehabilitation as demonstrated by repeated violent criminal acts; (2) his willingness to take human life and a lack of remorse for his acts of violence and attempted acts of violence as demonstrated by statements that he made following these violent acts; **or** (3) his stated desire to impose a rule requiring fellow members of the Imperial Gangsters to shoot at rivals on sight, **and** that his future dangerousness tends to support the imposition of the death penalty as punishment for the murder of Michael Sessum?

YES _____     NO \_\_✓_____

### B.     Contemporaneous Convictions for Other Criminal Activity

Do you, the jury, unanimously find that the Government proved, beyond a reasonable doubt, that the defendant JUAN BRISENO aka Tito was convicted at trial of other criminal activity, including additional murders or an attempted murder, **and** that

this additional criminal activity tends to support the imposition of the death penalty as punishment for the murder of Michael Sessum?

YES __✓__     NO _____

### C.    Demonstrated Allegiance to Criminal Street Gang

Do you, the jury, unanimously find that the Government proved, beyond a reasonable doubt, that the defendant JUAN BRISENO aka Tito demonstrated an allegiance to and membership in the Imperial Gangsters, a criminal street gang, **and** that this allegiance and membership tends to support the imposition of the death penalty as punishment for the murder of Michael Sessum?

YES __✓__     NO _____

### D.    Victim Impact

Do you, the jury, unanimously find that the Government proved, beyond a reasonable doubt, that the defendant JUAN BRISENO aka Tito caused loss, injury and harm to Michael Sessum or to his family or friends, **and** that such harm tends to support the imposition of the death penalty as punishment for the murder of Michael Sessum?

YES __✓__     NO _____

*Instructions:* Regardless of whether you found that the Government has established any of the Non-Statutory Aggravating Factors in this Section IV, proceed to Section V, which follows.

## SECTION V. MITIGATING FACTORS

*Instructions:* For each of the following Mitigating Factors, indicate in the space provided the number of jurors who find the existence of that Mitigating Factor to be proved by a preponderance of the evidence.

Unlike for Aggravating Factors, your vote with respect to a Mitigating Factor **need not** be unanimous. A finding with respect to a Mitigating Factor may be made by **one (1)** or more of the members of the jury. Any juror persuaded of the existence of a Mitigating Factor must consider it in this case, regardless of the number of other jurors who agree the factor has been established. Further, any juror may weigh a Mitigating Factor found by another juror, even if he or she did not also find that factor to exist or to be mitigating.

## MITIGATING FACTORS

A.      If he is not sentenced to death, Mr. Briseno will be sentenced to lifetime imprisonment without the possibility of release. I charge you that this factor has been established.

Number of jurors who so find            __12__

B.      The Federal Bureau of Prisons will impose appropriate conditions of confinement and security with regard to Mr. Briseno.

Number of jurors who so find            __12__

C.      Mr. Briseno is the product of a childhood marked by chaos, abuse and abandonment.

Number of jurors who so find            __6__

3938

Case 2.11-cr-00077-PPS-APR   Document 1532   Filed 09/06/15   Page 11 of 17

**D.**   Growing up, Mr. Briseno lacked positive male role models in his home.

Number of jurors who so find               7

**E.**   His mother's poor choices in the men she brought into the family home had a

negative impact on Mr. Briseno.

Number of jurors who so find               7

**F.**   Juan grew up in a neighborhood plagued with drugs, gangs, and violence.

Number of jurors who so find               10

**G.**   Juan was raised in poverty.

Number of jurors who so find               4

**H.**   Juan's basic needs were neglected when he was a young child.

Number of jurors who so find               2

**I.**   Juan's older brother was a gang member and a poor role model.

Number of jurors who so find               7

**J.**   Juan was recruited into the Imperial Gangsters when he was only 16.

Number of jurors who so find               0

**K.**   Juan was unable to keep up with his peers in school.

Number of jurors who so find               0

**L.**   Juan's father abandoned the family when Juan was only 8.

Number of jurors who so find               0

**M.**   Juan's father and his associates abused alcohol in front of the children.

Number of jurors who so find               0

**N.**    Juan has participated in rehabilitative programs while incarcerated.

Number of jurors who so find    _____7_____

**O.**    Juan donated his hair to cancer patients through "Locks of Love."

Number of jurors who so find    _____7_____

**P.**    Juan has a loving relationship with his twin cousins.

Number of jurors who so find    _____8_____

**Q.**    If Juan were to be executed others would suffer grief and loss.

Number of jurors who so find    _____12_____

**R.**    Juan has made a positive adjustment to incarceration and is likely to do so in federal prison.

Number of jurors who so find    _____6_____

**S.**    Cooperating witnesses and/or cooperating defendants who have killed someone will not be sentenced to death.

Number of jurors who so find    _____9_____

**T.**    The five victims of the murders voluntarily chose to engage in dangerous and illegal activities, a circumstance that contributed to their deaths.

Number of jurors who so find    _____5_____

**U.**    Mr. Briseno always behaved respectfully in court.

Number of jurors who so find    _____12_____

**V.**    Mr. Briseno's life has value.

Number of jurors who so find    _____12_____

**W.**    Another defendant, or defendants equally culpable in the murders, will not be

punished by death.

Number of jurors who so find _____/2_____

**X.**    There are other relevant circumstances that weigh against imposing a sentence of

death.

Number of jurors who so find _____2_____

## ADDITIONAL MITIGATING FACTORS

Write in any Additional Mitigating Factors determined by **any one (1) or more**

**members** of the jury, and indicate the number of jurors who find the existence of that

Mitigating Factor to be proved by a preponderance of the evidence. If your answer is

none, then write "NONE." If extra space is needed, write "CONTINUED" and use the

reverse side of this page for extra space.

**A.**    GANG MENTALITY AND INFLUENCE

_____

_____

_____

Number of jurors who so find _____10_____

**B.**    PROTECTING HIS TURP - SUCH

AS A SOLDIER _____

_____

_____

Number of jurors who so find _____9_____

Case 2:11-cr-00077-PPS-APR    Document 1532    Filed 03/06/15    Page 14 of 17

**C.** _____

_____

_____

_____

Number of jurors who so find    _____

**D.** _____

_____

_____

_____

Number of jurors who so find    _____

**E.** _____

_____

_____

_____

Number of jurors who so find    _____

*Instructions:* Regardless of the jury's determinations with respect to the existence of any Mitigating Factors in this Section V, proceed to Section VI.

## SECTION VI. DETERMINATION OF SENTENCE

*Instructions:* Consider whether the Aggravating Factor or Factors found to exist sufficiently outweigh any Mitigating Factor or Factors found to exist, or in the absence of any Mitigating Factors, whether the Aggravating Factor or Factors are themselves sufficient to justify a sentence of death, and whether death is therefore the appropriate sentence in this case. A sentence of death shall only be imposed if your decision in favor of it is **unanimous**. Based upon that consideration, answer the following question:

Do you, the jury, **unanimously** find that a sentence of death shall be imposed on the defendant JUAN BRISENO aka Tito as punishment for the murder of Michael Sessum?

YES _____    NO \_\_\_\_\_\_\_\_

**Note:** If you cannot unanimously agree that a sentence of death should be imposed, you should answer the above question "No," and the Court will sentence Mr. Briseno to a life sentence without the possibility of release for the murder of Mr. Sessum.

After answering the above question, each juror should sign his or her name below, and the date should be filled in. Once each juror has signed proceed to Section VII of this Special Verdict Form.



FOREPERSON

Date: March 6, 2015

3944

## VII. CERTIFICATION

By signing below, each juror certifies that consideration of the race, color, religious beliefs, national origin, or sex of the defendant or any victim was not involved in reaching his or her individual decision, and that the individual juror would have made the same recommendation regarding a sentence for the crime or crimes in question regardless of the race, color, religious beliefs, national origin, or sex of the defendant, or the victims.



FOREPERSON

Date: March 6, 2015.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| vs. | ) | 2:11-cr-00077 |
| | ) | |
| JUAN BRISENO | ) | |

COURT'S VERDICT FORM (PENALTY PHASE)

(Completed Form To Be Filed Under Seal)

COUNT 15 (Murder of Miguel Mejias aka "King Nelly")

Dated: March 6, 2015.

/s/ Philip P. Simon
PHILIP P. SIMON, CHIEF JUDGE
UNITED STATES DISTRICT COURT

3946

### THE UNITED STATES DISTRICT COURT FOR
### THE NORTHERN DISTRICT OF INDIANA
### HAMMOND DIVISION

UNITED STATES OF AMERICA )
)
vs. ) 2:11-cr-00077
)
JUAN BRISENO )

### SPECIAL VERDICT FORM

### COUNT 15 (Murder of Miguel Mejias aka "King Nelly")

### SECTION I. AGE OF DEFENDANT

Do you, the jury, unanimously find that the Government proved, beyond a reasonable doubt, that the defendant JUAN BRISENO aka Tito was at least eighteen (18) years of age on June 3, 2008?



YES __✓__       NO _____

*Instructions:* If you answered "NO" in Section I, then stop your deliberations on this count and proceed to Section VII. Each juror should carefully read the statement in Section VII, and sign in the appropriate place if the statement accurately reflects the manner in which he or she reached his or her decision.

If you answered "YES" then proceed to Section II which follows.

3947

## SECTION II. REQUISITE MENTAL STATE

*Instructions:* Answer the following questions by marking the line next to the appropriate answer, "YES" or "NO," to indicate the jury's finding. Each affirmative finding must be unanimous.

### A. First Threshold Intent Factor

Do you, the jury, unanimously find that the Government proved, beyond a reasonable doubt, that the defendant JUAN BRISENO aka Tito intentionally inflicted serious bodily injury which resulted in the death of Miguel Mejias?

YES ___✓___     NO _____

### B. Second Threshold Intent Factor

Do you, the jury, unanimously find that the Government proved, beyond a reasonable doubt, that the defendant JUAN BRISENO aka Tito intentionally participated in an act, contemplating that the life of a person would be taken or intending that lethal force would be used in connection with a person, other than one of the participants in the offense, and Miguel Mejias died as a direct result of the act?

YES ___✓___     NO _____

### C. Third Threshold Intent Factor

Do you, the jury, unanimously find that the Government proved, beyond a

reasonable doubt, that the defendant JUAN BRISENO aka Tito intentionally and specifically engaged in an act of violence, knowing that the act created a grave risk of death to a person, other than one of the participants in the offense, such that participation in the act constituted a reckless disregard for human life and Miguel Mejias died as a direct result of the act?

YES ____✓____    NO _____

*Instructions:* If you answered "NO" to **all** of the applicable Threshold Intent Factors, then stop your deliberations on this count and proceed to Section VII. Each juror should carefully read the statement in Section VII, and sign in the appropriate place if the statement accurately reflects the manner in which he or she reached his or her decision.

If you indicated that the United States has established **at least** one of the Threshold Intent Factors in this Section II, subsections A, B, or C, proceed to Section III which follows.

## SECTION III. STATUTORY AGGRAVATING FACTORS

*Instructions:* Answer the following questions by marking the line next to the appropriate answer, "YES" or "NO," to indicate the jury's finding. Each affirmative finding must be unanimous.

### A.    Substantial Planning and Premeditation

Do you, the jury, unanimously find that the Government proved, beyond a reasonable doubt, that the defendant JUAN BRISENO aka Tito committed the offense of murder after substantial planning and premeditation (as set out in Instruction 8 of the Court's Instructions) to cause the death of Miguel Mejias?

YES _____    NO ____✓____

### B.    Grave Risk of Death to Additional Persons

Do you, the jury, unanimously find that the Government proved, beyond a reasonable doubt, that in the commission of the murder of Miguel Mejias, or in escaping apprehension for the offense, the defendant JUAN BRISENO aka Tito knowingly created a grave risk of death to one or more persons in addition to Miguel Mejias?

YES ____✓____    NO _____

### C.    Multiple Killings or Attempted Killings

Do you, the jury, unanimously find that the Government proved, beyond a

reasonable doubt, that the defendant JUAN BRISENO aka Tito intentionally killed or attempted to kill more than one person in a single criminal episode in committing the murder of Miguel Mejias?

YES ___✓___      NO _____

*Instructions:* If you answered "NO" to **all** of the listed Statutory Aggravating Factors, then stop your deliberations and proceed to Section VII of this Form. Each juror should then carefully read the statement in Section VII, and sign in the appropriate place if the statement accurately reflects the manner in which he or she reached his or her decision.

If you answered "YES" (1) that the defendant JUAN BRISENO aka Tito was at least eighteen (18) years of age on the date of the murder of Miguel Mejias, **and** (2) that at least one of the Threshold Intent Factors in Section II existed, **and** (3) that at least one of the Statutory Aggravating Factors in this Section III existed, proceed to Section IV, which follows.

<div align="center">

### SECTION IV. NON STATUTORY AGGRAVATING FACTORS

</div>

*Instructions:* Answer the following questions by marking the line next to the appropriate answer, "YES" or "NO," to indicate the jury's finding. In order to answer "YES" you must be unanimous.

**A.      Future Dangerousness**

Do you, the jury, unanimously find that the Government proved, beyond a reasonable doubt, that the defendant JUAN BRISENO aka Tito represents a continuing danger to the lives and safety of other persons as demonstrated by one or more of: (1) his low potential for rehabilitation as demonstrated by repeated violent criminal acts; (2) his  willingness to take human life and a lack of remorse for his acts of violence and attempted acts of violence as demonstrated by statements that he made following these violent acts; **or** (3) his stated desire to impose a rule requiring fellow members of the Imperial Gangsters to shoot at rivals on sight, **and** that his future dangerousness tends to support the imposition of the death penalty as punishment for the murder of Miguel Mejias?

<div align="center">

YES _____      NO \_\_✓_____

</div>

**B.      Contemporaneous Convictions for Other Criminal Activity**

Do you, the jury, unanimously find that the Government proved, beyond a reasonable doubt, that the defendant JUAN BRISENO aka Tito was convicted at trial of other criminal activity, including additional murders or an attempted murder, **and** that

this additional criminal activity tends to support the imposition of the death penalty as punishment for the murder of Miguel Mejias?

YES _____✓_____          NO _____

## C.     Demonstrated Allegiance to Criminal Street Gang

Do you, the jury, unanimously find that the Government proved, beyond a reasonable doubt, that the defendant JUAN BRISENO aka Tito demonstrated an allegiance to and membership in the Imperial Gangsters, a criminal street gang, **and** that this allegiance and membership tends to support the imposition of the death penalty as punishment for the murder of Miguel Mejias?

YES _____✓_____          NO _____

## D.     Victim Impact

Do you, the jury, unanimously find that the Government proved, beyond a reasonable doubt, that the defendant JUAN BRISENO aka Tito caused loss, injury and harm to Miguel Mejias or to his family, **and** that such harm tends to support the imposition of the death penalty as punishment for the murder of Miguel Mejias?

YES _____✓_____          NO _____

*Instructions:* Regardless of whether you found that the Government has established any of the Non-Statutory Aggravating Factors in this Section IV, proceed to Section V, which follows.

## SECTION V. MITIGATING FACTORS

*Instructions:* For each of the following Mitigating Factors, indicate in the space provided the number of jurors who find the existence of that Mitigating Factor to be proved by a preponderance of the evidence.

Unlike for Aggravating Factors, your vote with respect to a Mitigating Factor **need not** be unanimous. A finding with respect to a Mitigating Factor may be made by **one** (1) or more of the members of the jury. Any juror persuaded of the existence of a Mitigating Factor must consider it in this case, regardless of the number of other jurors who agree the factor has been established. Further, any juror may weigh a Mitigating Factor found by another juror, even if he or she did not also find that factor to exist or to be mitigating.

## MITIGATING FACTORS

**A.**     If he is not sentenced to death, Mr. Briseno will be sentenced to lifetime imprisonment without the possibility of release. I charge you that this factor has been established.

Number of jurors who so find     ___12___

**B.**     The Federal Bureau of Prisons will impose appropriate conditions of confinement and security with regard to Mr. Briseno.

Number of jurors who so find     ___12___

**C.**     Mr. Briseno is the product of a childhood marked by chaos, abuse and abandonment.

Number of jurors who so find     ___6___

**D.**     Growing up, Mr. Briseno lacked positive male role models in his home.

Number of jurors who so find                7

**E.**     His mother's poor choices in the men she brought into the family home had a

negative impact on Mr. Briseno.

Number of jurors who so find                7

**F.**     Juan grew up in a neighborhood plagued with drugs, gangs, and violence.

Number of jurors who so find                10

**G.**     Juan was raised in poverty.

Number of jurors who so find                4

**H.**     Juan's basic needs were neglected when he was a young child.

Number of jurors who so find                2

**I.**     Juan's older brother was a gang member and a poor role model.

Number of jurors who so find                7

**J.**     Juan was recruited into the Imperial Gangsters when he was only 16.

Number of jurors who so find                0

**K.**     Juan was unable to keep up with his peers in school.

Number of jurors who so find                0

**L.**     Juan's father abandoned the family when Juan was only 8.

Number of jurors who so find                0

**M.**     Juan's father and his associates abused alcohol in front of the children.

Number of jurors who so find                0

3956

**N.** Juan has participated in rehabilitative programs while incarcerated.

Number of jurors who so find _____7_____

**O.** Juan donated his hair to cancer patients through "Locks of Love."

Number of jurors who so find _____7_____

**P.** Juan has a loving relationship with his twin cousins.

Number of jurors who so find _____8_____

**Q.** If Juan were to be executed others would suffer grief and loss.

Number of jurors who so find _____12_____

**R.** Juan has made a positive adjustment to incarceration and is likely to do so in federal prison.

Number of jurors who so find _____6_____

**S.** Cooperating witnesses and/or cooperating defendants who have killed someone will not be sentenced to death.

Number of jurors who so find _____9_____

**T.** The five victims of the murders voluntarily chose to engage in dangerous and illegal activities, a circumstance that contributed to their deaths.

Number of jurors who so find _____5_____

**U.** Mr. Briseno always behaved respectfully in court.

Number of jurors who so find _____12_____

**V.** Mr. Briseno's life has value.

Number of jurors who so find _____12_____

**W.** Another defendant, or defendants equally culpable in the murders, will not be

punished by death.

Number of jurors who so find _____*12*_____

**X.** There are other relevant circumstances that weigh against imposing a sentence of death.

Number of jurors who so find _____*2*_____

## ADDITIONAL MITIGATING FACTORS

Write in any Additional Mitigating Factors determined by **any one (1) or more members** of the jury, and indicate the number of jurors who find the existence of that Mitigating Factor to be proved by a preponderance of the evidence. If your answer is none, then write "NONE." If extra space is needed, write "CONTINUED" and use the reverse side of this page for extra space.

**A.** *GANG Mentality AND INFLUENCE*

Number of jurors who so find _____*10*_____

**B.** *PROTECTING HIS TURF - SUCH AS A SOLDIER*

Number of jurors who so find _____*9*_____

3958

**C.** _____

_____

_____

_____

Number of jurors who so find      _____

**D.** _____

_____

_____

_____

Number of jurors who so find      _____

**E.** _____

_____

_____

_____

Number of jurors who so find      _____

*Instructions:* Regardless of the jury's determinations with respect to the existence of any Mitigating Factors in this Section V, proceed to Section VI.

## SECTION VI. DETERMINATION OF SENTENCE

*Instructions:* Consider whether the Aggravating Factor or Factors found to exist sufficiently outweigh any Mitigating Factor or Factors found to exist, or in the absence of any Mitigating Factors, whether the Aggravating Factor or Factors are themselves sufficient to justify a sentence of death, and whether death is therefore the appropriate sentence in this case. A sentence of death shall only be imposed if your decision in favor of it is **unanimous**. Based upon that consideration, answer the following question:

Do you, the jury, **unanimously** find that a sentence of death shall be imposed on the defendant JUAN BRISENO aka Tito as punishment for the murder of Miguel Mejias?

YES _____       NO ___✓_____

**Note:** If you cannot unanimously agree that a sentence of death should be imposed, you should answer the above question "No," and the Court will sentence Mr. Briseno to a life sentence without the possibility of release for the murder of Mr. Mejias.

After answering the above question, each juror should sign his or her name below, and the date should be filled in. Once each juror has signed proceed to Section VII of this Special Verdict Form.



Date: March 6, 2015

## VII. CERTIFICATION

By signing below, each juror certifies that consideration of the race, color, religious beliefs, national origin, or sex of the defendant or any victim was not involved in reaching his or her individual decision, and that the individual juror would have made the same recommendation regarding a sentence for the crime or crimes in question regardless of the race, color, religious beliefs, national origin, or sex of the



FOREPERSON

Date:  March 6, 2015.

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| vs. | ) | 2:11-cr-00077 |
| | ) | |
| JUAN BRISENO | ) | |

**COURT'S VERDICT FORM (PENALTY PHASE)**

**(Completed Form To Be Filed Under Seal)**

**COUNT 19 (Murder of Miguel Colon aka "Migs")**

Dated: March 6, 2015.

/s/ Philip P. Simon
PHILIP P. SIMON, CHIEF JUDGE
UNITED STATES DISTRICT COURT

# THE UNITED STATES DISTRICT COURT FOR
# THE NORTHERN DISTRICT OF INDIANA
# HAMMOND DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| vs. | ) | 2:11-cr-00077 |
| | ) | |
| JUAN BRISENO | ) | |

## SPECIAL VERDICT FORM

### COUNT 19 (Murder of Miguel Colon aka "Migs")

### SECTION I. AGE OF DEFENDANT

Do you, the jury, unanimously find that the Government proved, beyond a reasonable doubt, that the defendant JUAN BRISENO aka Tito was at least eighteen (18) years of age on February 7, 2010?

YES  NO _____

*Instructions:* If you answered "NO" in Section I, then stop your deliberations on this count and proceed to Section VII. Each juror should carefully read the statement in Section VII, and sign in the appropriate place if the statement accurately reflects the manner in which he or she reached his or her decision.

If you answered "YES" then proceed to Section II which follows.

## SECTION II. REQUISITE MENTAL STATE

*Instructions:* Answer the following questions by marking the line next to the appropriate answer, "YES" or "NO," to indicate the jury's finding. Each affirmative finding must be unanimous.

### A. First Threshold Intent Factor

Do you, the jury, unanimously find that the Government proved, beyond a reasonable doubt, that the defendant JUAN BRISENO aka Tito intentionally participated in an act, contemplating that the life of a person would be taken or intending that lethal force would be used in connection with a person, other than one of the participants in the offense, and Miguel Colon died as a direct result of the act?

YES ____✓____     NO _____

### B. Second Threshold Intent Factor

Do you, the jury, unanimously find that the Government proved, beyond a reasonable doubt, that the defendant JUAN BRISENO aka Tito intentionally and specifically engaged in an act of violence, knowing that the act created a grave risk of death to a person, other than one of the participants in the offense, such that participation in the act constituted a reckless disregard for human life and Miguel Colon died as a direct result of the act?

YES ____✓____     NO _____

3965

*Instructions:* If you answered "NO" to **all** of the applicable Threshold Intent Factors, then stop your deliberations on this count and proceed to Section VII. Each juror should carefully read the statement in Section VII, and sign in the appropriate place if the statement accurately reflects the manner in which he or she reached his or her decision.

If you indicated that the United States has established **at least** one of the Threshold Intent Factors in this Section II, subsections A or B, proceed to Section III which follows.

# SECTION III. STATUTORY AGGRAVATING FACTORS

*Instructions:* Answer the following questions by marking the line next to the appropriate answer, "YES" or "NO," to indicate the jury's finding. Each affirmative finding must be unanimous.

### A. Substantial Planning and Premeditation

Do you, the jury, unanimously find that the Government proved, beyond a reasonable doubt, that the defendant JUAN BRISENO aka Tito committed the offense of murder after substantial planning and premeditation (as set out in Instruction 8 of the Court's Instructions) to cause the death of Miguel Colon?

YES _____     NO ____✓____

### B. Grave Risk of Death to Additional Persons

Do you, the jury, unanimously find that the Government proved, beyond a reasonable doubt, that in the commission of the murder of Miguel Colon, or in escaping apprehension for the offense, the defendant JUAN BRISENO aka Tito knowingly created a grave risk of death to one or more persons in addition to Miguel Colon?

YES ____✓____     NO _____

*Instructions:* If you answered "NO" to **all** of the listed Statutory Aggravating Factors, then stop your deliberations and proceed to Section VII of this Form. Each juror

should then carefully read the statement in Section VII, and sign in the appropriate place if the statement accurately reflects the manner in which he or she reached his or her decision.

If you answered "YES" (1) that the defendant JUAN BRISENO aka Tito was at least eighteen (18) years of age on the date of the murder of Miguel Colon, **and** (2) that at least one of the Threshold Intent Factors in Section II existed, **and** (3) that at least one of the Statutory Aggravating Factors in this Section III existed, proceed to Section IV, which follows.

## SECTION IV. NON STATUTORY AGGRAVATING FACTORS

*Instructions:* Answer the following questions by marking the line next to the appropriate answer, "YES" or "NO," to indicate the jury's finding. In order to answer "YES" you must be unanimous.

### A.    Future Dangerousness

Do you, the jury, unanimously find that the Government proved, beyond a reasonable doubt, that the defendant JUAN BRISENO aka Tito represents a continuing danger to the lives and safety of other persons as demonstrated by one or more of:  (1) his low potential for rehabilitation as demonstrated by repeated violent criminal acts; (2) his  willingness to take human life and a lack of remorse for his acts of violence and attempted acts of violence as demonstrated by statements that he made following these violent acts; **or** (3) his stated desire to impose a rule requiring fellow members of the Imperial Gangsters to shoot at rivals on sight, **and** that his future dangerousness tends to support the imposition of the death penalty as punishment for the murder of Miguel Colon?

YES _____    NO _____✓_____

### B.    Contemporaneous Convictions for Other Criminal Activity

Do you, the jury, unanimously find that the Government proved, beyond a reasonable doubt, that the defendant JUAN BRISENO aka Tito was convicted at trial of other criminal activity, including additional murders or an attempted murder, **and** that

this additional criminal activity tends to support the imposition of the death penalty as punishment for the murder of Miguel Colon?

YES __✓__    NO _____

### C.    Demonstrated Allegiance to Criminal Street Gang

Do you, the jury, unanimously find that the Government proved, beyond a reasonable doubt, that the defendant JUAN BRISENO aka Tito demonstrated an allegiance to and membership in the Imperial Gangsters, a criminal street gang, **and** that this allegiance and membership tends to support the imposition of the death penalty as punishment for the murder of Miguel Colon?

YES __✓__    NO _____

### D.    Victim Impact

Do you, the jury, unanimously find that the Government proved, beyond a reasonable doubt, that the defendant JUAN BRISENO aka Tito caused loss, injury and harm to Miguel Colon or to his family, **and** that such harm tends to support the imposition of the death penalty as punishment for the murder of Miguel Colon?

YES __✓__    NO _____

*Instructions:* Regardless of whether you found that the Government has established any of the Non-Statutory Aggravating Factors in this Section IV, proceed to Section V, which follows.

## SECTION V. MITIGATING FACTORS

*Instructions:* For each of the following Mitigating Factors, indicate in the space provided the number of jurors who find the existence of that Mitigating Factor to be proved by a preponderance of the evidence.

Unlike for Aggravating Factors, your vote with respect to a Mitigating Factor **need not** be unanimous. A finding with respect to a Mitigating Factor may be made by **one (1)** or more of the members of the jury. Any juror persuaded of the existence of a Mitigating Factor must consider it in this case, regardless of the number of other jurors who agree the factor has been established. Further, any juror may weigh a Mitigating Factor found by another juror, even if he or she did not also find that factor to exist or to be mitigating.

## MITIGATING FACTORS

**A.** If he is not sentenced to death, Mr. Briseno will be sentenced to lifetime imprisonment without the possibility of release. I charge you that this factor has been established.

Number of jurors who so find ___12___

**B.** The Federal Bureau of Prisons will impose appropriate conditions of confinement and security with regard to Mr. Briseno.

Number of jurors who so find ___12___

**C.** Mr. Briseno is the product of a childhood marked by chaos, abuse and abandonment.

Number of jurors who so find ___6___

3972

**D.**    Growing up, Mr. Briseno lacked positive male role models in his home.

Number of jurors who so find _____7_____

**E.**    His mother's poor choices in the men she brought into the family home had a

negative impact on Mr. Briseno.

Number of jurors who so find _____7_____

**F.**    Juan grew up in a neighborhood plagued with drugs, gangs, and violence.

Number of jurors who so find _____10_____

**G.**    Juan was raised in poverty.

Number of jurors who so find _____4_____

**H.**    Juan's basic needs were neglected when he was a young child.

Number of jurors who so find _____2_____

**I.**    Juan's older brother was a gang member and a poor role model.

Number of jurors who so find _____7_____

**J.**    Juan was recruited into the Imperial Gangsters when he was only 16.

Number of jurors who so find _____0_____

**K.**    Juan was unable to keep up with his peers in school.

Number of jurors who so find _____0_____

**L.**    Juan's father abandoned the family when Juan was only 8.

Number of jurors who so find _____0_____

**M.**    Juan's father and his associates abused alcohol in front of the children.

Number of jurors who so find _____0_____

3973

**N.**     Juan has participated in rehabilitative programs while incarcerated.

Number of jurors who so find        7

**O.**     Juan donated his hair to cancer patients through "Locks of Love."

Number of jurors who so find        7

**P.**     Juan has a loving relationship with his twin cousins.

Number of jurors who so find        8

**Q.**     If Juan were to be executed others would suffer grief and loss.

Number of jurors who so find        12

**R.**     Juan has made a positive adjustment to incarceration and is likely to do so in federal prison.

Number of jurors who so find        6

**S.**     Cooperating witnesses and/or cooperating defendants who have killed someone will not be sentenced to death.

Number of jurors who so find        9

**T.**     The five victims of the murders voluntarily chose to engage in dangerous and illegal activities, a circumstance that contributed to their deaths.

Number of jurors who so find        5

**U.**     Mr. Briseno always behaved respectfully in court.

Number of jurors who so find        12

**V.**     Mr. Briseno's life has value.

Number of jurors who so find        12

**W.**     Another defendant, or defendants equally culpable in the murders, will not be

3974

punished by death.

Number of jurors who so find _____12_____

**X.**    There are other relevant circumstances that weigh against imposing a sentence of

death.

Number of jurors who so find _____2_____

### ADDITIONAL MITIGATING FACTORS

Write in any Additional Mitigating Factors determined by **any one (1) or more**

**members** of the jury, and indicate the number of jurors who find the existence of that

Mitigating Factor to be proved by a preponderance of the evidence. If your answer is

none, then write "NONE." If extra space is needed, write "CONTINUED" and use the

reverse side of this page for extra space.

**A.**    GANG MENTALLY AND INFLUENCE

Number of jurors who so find _____10_____

**B.**    PROTECTING HIS TURP - SUCH
AS A SOLDIER

Number of jurors who so find _____9_____

**C.**    _____

3975

_____

_____

_____

Number of jurors who so find                     _____

**D.**     _____

_____

_____

Number of jurors who so find                     _____

**E.**     _____

_____

_____

Number of jurors who so find                     _____

*Instructions:* Regardless of the jury's determinations with respect to the existence of any Mitigating Factors in this Section V, proceed to Section VI.

## SECTION VI. DETERMINATION OF SENTENCE

*Instructions:* Consider whether the Aggravating Factor or Factors found to exist sufficiently outweigh any Mitigating Factor or Factors found to exist, or in the absence of any Mitigating Factors, whether the Aggravating Factor or Factors are themselves sufficient to justify a sentence of death, and whether death is therefore the appropriate sentence in this case. A sentence of death shall only be imposed if your decision in favor of it is **unanimous**. Based upon that consideration, answer the following question:

Do you, the jury, **unanimously** find that a sentence of death shall be imposed on the defendant JUAN BRISENO aka Tito as punishment for the murder of Miguel Colon?

YES _____     NO ____✓____

**Note:** If you cannot unanimously agree that a sentence of death should be imposed, you should answer the above question "No," and the Court will sentence Mr. Briseno to a life sentence without the possibility of release for the murder of Mr. Colon.

After answering the above question, each juror should sign his or her name below, and the date should be filled in. Once each juror has signed proceed to Section VII of this Special Verdict Form.





FOREPERSON

Date: March 6, 2015

Case 2:11-cr-00077-PPS-APR   Document 35   Filed 09/06/15   Page 16 of 17

3978

## VII. CERTIFICATION

By signing below, each juror certifies that consideration of the race, color, religious beliefs, national origin, or sex of the defendant or any victim was not involved in reaching his or her individual decision, and that the individual juror would have made the same recommendation regarding a sentence for the crime or crimes in question regardless of the race, color, religious beliefs, national origin, or sex of the defendant, or the victims.



FOREPERSON

Date: March 6, 2015.

Case: 15-2347    Document: 35    Filed: 07/27/2016    Pages: 4186

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| vs. | ) | 2:11-cr-00077 |
| | ) | |
| JUAN BRISENO | ) | |

**COURT'S VERDICT FORM (PENALTY PHASE)**

**(Completed Form To Be Filed Under Seal)**

**COUNT 21 (Murder of Latroy Howard)**

Dated: March 6, 2015.

/s/ Philip P. Simon
PHILIP P. SIMON, CHIEF JUDGE
UNITED STATES DISTRICT COURT

3980

**THE UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| vs. | ) | 2:11-cr-00077 |
| | ) | |
| JUAN BRISENO | ) | |

**SPECIAL VERDICT FORM**

**COUNT 21 (Murder of Latroy Howard)**

**SECTION I. AGE OF DEFENDANT**

Do you, the jury, unanimously find that the Government proved, beyond a reasonable doubt, that the defendant JUAN BRISENO aka Tito was at least eighteen (18) years of age on June 19, 2010?



YES \_\_\_\_\_✓\_\_\_\_\_    NO _____

*Instructions:* If you answered "NO" in Section I, then stop your deliberations on this count and proceed to Section VII. Each juror should carefully read the statement in Section VII, and sign in the appropriate place if the statement accurately reflects the manner in which he or she reached his or her decision.

If you answered "YES" then proceed to Section II which follows.

## SECTION II. REQUISITE MENTAL STATE

*Instructions:* Answer the following questions by marking the line next to the appropriate answer, "YES" or "NO," to indicate the jury's finding. Each affirmative finding must be unanimous.

### A. First Threshold Intent Factor

Do you, the jury, unanimously find that the Government proved, beyond a reasonable doubt, that the defendant JUAN BRISENO aka Tito intentionally killed Latroy Howard?

YES ____✓____     NO _____

### B. Second Threshold Intent Factor

Do you, the jury, unanimously find that the Government proved, beyond a reasonable doubt, that the defendant JUAN BRISENO aka Tito intentionally inflicted serious bodily injury which resulted in the death of Latroy Howard?

YES ____✓____     NO _____

### C. Third Threshold Intent Factor

Do you, the jury, unanimously find that the Government proved, beyond a reasonable doubt, that the defendant JUAN BRISENO aka Tito intentionally participated in an act, contemplating that the life of a person would be taken or

intending that lethal force would be used in connection with a person, other than one of the participants in the offense, and Latroy Howard died as a direct result of the act?

YES ___✓___ NO _____

### D. Fourth Threshold Intent Factor

Do you, the jury, unanimously find that the Government proved, beyond a reasonable doubt, that the defendant JUAN BRISENO aka Tito intentionally and specifically engaged in an act of violence, knowing that the act created a grave risk of death to a person, other than one of the participants in the offense, such that participation in the act constituted a reckless disregard for human life and Latroy Howard died as a direct result of the act?

YES ___✓___ NO _____

*Instructions:* If you answered "NO" to **all** of the applicable Threshold Intent Factors, then stop your deliberations on this count and proceed to Section VII. Each juror should carefully read the statement in Section VII, and sign in the appropriate place if the statement accurately reflects the manner in which he or she reached his or her decision.

If you indicated that the United States has established **at least** one of the Threshold Intent Factors in this Section II, subsections A, B, C, or D, proceed to Section III which follows.

## SECTION III. STATUTORY AGGRAVATING FACTORS

*Instructions:* Answer the following question by marking the line next to the appropriate answer, "YES" or "NO," to indicate the jury's finding. An affirmative finding must be unanimous.

### A. Substantial Planning and Premeditation

Do you, the jury, unanimously find that the Government proved, beyond a reasonable doubt, that the defendant JUAN BRISENO aka Tito committed the offense of murder after substantial planning and premeditation (as set out in Instruction 8 of the Court's Instructions) to cause the death of Latroy Howard?

YES _____    NO \_\_✓_____

*Instructions:* If you answered "NO," then stop your deliberations and proceed to Section VII of this Form. Each juror should then carefully read the statement in Section VII, and sign in the appropriate place if the statement accurately reflects the manner in which he or she reached his or her decision.

If you answered "YES" (1) that the defendant JUAN BRISENO aka Tito was at least eighteen (18) years of age on the date of the murder of Latroy Howard, **and** (2) that at least one of the Threshold Intent Factors in Section II existed, **and** (3) that the Statutory Aggravating Factor in this Section III existed, proceed to Section IV, which follows.

## SECTION IV. NON STATUTORY AGGRAVATING FACTORS

*Instructions:* Answer the following questions by marking the line next to the appropriate answer, "YES" or "NO," to indicate the jury's finding. In order to answer "YES" you must be unanimous.

### A.    Future Dangerousness

Do you, the jury, unanimously find that the Government proved, beyond a reasonable doubt, that the defendant JUAN BRISENO aka Tito represents a continuing danger to the lives and safety of other persons as demonstrated by one or more of: (1) his low potential for rehabilitation as demonstrated by repeated violent criminal acts; **or** (2) his stated desire to impose a rule requiring fellow members of the Imperial Gangsters to shoot at rivals on sight, **and** that his future dangerousness tends to support the imposition of the death penalty as punishment for the murder of Latroy Howard?

YES _____        NO _____

### B.    Contemporaneous Convictions for Other Criminal Activity

Do you, the jury, unanimously find that the Government proved, beyond a reasonable doubt, that the defendant JUAN BRISENO aka Tito was convicted at trial of other criminal activity, including additional murders or an attempted murder, **and** that this additional criminal activity tends to support the imposition of the death penalty as

punishment for the murder of Latroy Howard?

YES _____     NO _____

### C.     Demonstrated Allegiance to Criminal Street Gang

Do you, the jury, unanimously find that the Government proved, beyond a reasonable doubt, that the defendant JUAN BRISENO aka Tito demonstrated an allegiance to and membership in the Imperial Gangsters, a criminal street gang, **and** that this allegiance and membership tends to support the imposition of the death penalty as punishment for the murder of Latroy Howard?

YES _____     NO _____

### D.     Victim Impact

Do you, the jury, unanimously find that the Government proved, beyond a reasonable doubt, that the defendant JUAN BRISENO aka Tito caused loss, injury and harm to Latroy Howard or to his family, **and** that such harm tends to support the imposition of the death penalty as punishment for the murder of Latroy Howard?

YES _____     NO _____

*Instructions:* Regardless of whether you found that the Government has established any of the Non-Statutory Aggravating Factors in this Section IV, proceed to Section V, which follows.

## SECTION V. MITIGATING FACTORS

*Instructions:* For each of the following Mitigating Factors, indicate in the space provided the number of jurors who find the existence of that Mitigating Factor to be proved by a preponderance of the evidence.

Unlike for Aggravating Factors, your vote with respect to a Mitigating Factor **need not** be unanimous. A finding with respect to a Mitigating Factor may be made by **one (1)** or more of the members of the jury. Any juror persuaded of the existence of a Mitigating Factor must consider it in this case, regardless of the number of other jurors who agree the factor has been established. Further, any juror may weigh a Mitigating Factor found by another juror, even if he or she did not also find that factor to exist or to be mitigating.

## MITIGATING FACTORS

A.      If he is not sentenced to death, Mr. Briseno will be sentenced to lifetime imprisonment without the possibility of release. I charge you that this factor has been established.

        Number of jurors who so find                     _____

B.      The Federal Bureau of Prisons will impose appropriate conditions of confinement and security with regard to Mr. Briseno.

        Number of jurors who so find                     _____

C.      Mr. Briseno is the product of a childhood marked by chaos, abuse and abandonment.

        Number of jurors who so find                     _____

**D.** Growing up, Mr. Briseno lacked positive male role models in his home.

Number of jurors who so find _____

**E.** His mother's poor choices in the men she brought into the family home had a negative impact on Mr. Briseno.

Number of jurors who so find _____

**F.** Juan grew up in a neighborhood plagued with drugs, gangs, and violence.

Number of jurors who so find _____

**G.** Juan was raised in poverty.

Number of jurors who so find _____

**H.** Juan's basic needs were neglected when he was a young child.

Number of jurors who so find _____

**I.** Juan's older brother was a gang member and a poor role model.

Number of jurors who so find _____

**J.** Juan was recruited into the Imperial Gangsters when he was only 16.

Number of jurors who so find _____

**K.** Juan was unable to keep up with his peers in school.

Number of jurors who so find _____

**L.** Juan's father abandoned the family when Juan was only 8.

Number of jurors who so find _____

**M.** Juan's father and his associates abused alcohol in front of the children.

Number of jurors who so find _____

**N.** Juan has participated in rehabilitative programs while incarcerated.

Number of jurors who so find                      _____

O.      Juan donated his hair to cancer patients through "Locks of Love."

Number of jurors who so find                      _____

P.      Juan has a loving relationship with his twin cousins.

Number of jurors who so find                      _____

Q.      If Juan were to be executed others would suffer grief and loss.

Number of jurors who so find                      _____

R.      Juan has made a positive adjustment to incarceration and is likely to do so in federal prison.

Number of jurors who so find                      _____

S.      Cooperating witnesses and/or cooperating defendants who have killed someone will not be sentenced to death.

Number of jurors who so find                      _____

T.      The five victims of the murders voluntarily chose to engage in dangerous and illegal activities, a circumstance that contributed to their deaths.

Number of jurors who so find                      _____

U.      Mr. Briseno always behaved respectfully in court.

Number of jurors who so find                      _____

V.      Mr. Briseno's life has value.

Number of jurors who so find                      _____

W.      Another defendant, or defendants equally culpable in the murders, will not be punished by death.

3989

Number of jurors who so find      _____

**X.**     There are other relevant circumstances that weigh against imposing a sentence of death.

Number of jurors who so find      _____

### ADDITIONAL MITIGATING FACTORS

Write in any Additional Mitigating Factors determined by **any one (1) or more members** of the jury, and indicate the number of jurors who find the existence of that Mitigating Factor to be proved by a preponderance of the evidence. If your answer is none, then write "NONE." If extra space is needed, write "CONTINUED" and use the reverse side of this page for extra space.

**A.**    _____

_____

_____

_____

Number of jurors who so find      _____

**B.**    _____

_____

_____

_____

Number of jurors who so find      _____

**C.** _____

_____

_____

_____

Number of jurors who so find                    _____

**D.** _____

_____

_____

_____

Number of jurors who so find                    _____

**E.** _____

_____

_____

_____

Number of jurors who so find                    _____

*Instructions:* Regardless of the jury's determinations with respect to the existence

of any Mitigating Factors in this Section V, proceed to Section VI.

## SECTION VI. DETERMINATION OF SENTENCE

*Instructions:* Consider whether the Aggravating Factor or Factors found to exist sufficiently outweigh any Mitigating Factor or Factors found to exist, or in the absence of any Mitigating Factors, whether the Aggravating Factor or Factors are themselves sufficient to justify a sentence of death, and whether death is therefore the appropriate sentence in this case. A sentence of death shall only be imposed if your decision in favor of it is **unanimous.** Based upon that consideration, answer the following question:

Do you, the jury, **unanimously** find that a sentence of death shall be imposed on the defendant JUAN BRISENO aka Tito as punishment for the murder of Latroy Howard?

YES _____ NO _____

**Note:** If you cannot unanimously agree that a sentence of death should be imposed, you should answer the above question "No," and the Court will sentence Mr. Briseno to a life sentence without the possibility of release for the murder of Mr. Howard.

After answering the above questions, each juror should sign his or her name below, and the date should be filled in. Once each juror has signed proceed to Section VII of this Special Verdict Form.

_____     _____

_____          _____


_____          _____


_____          _____


_____          _____


_____          _____
                                  FOREPERSON


Date:  March ____, 2015

## VII. CERTIFICATION

By signing below, each juror certifies that consideration of the race, color, religious beliefs, national origin, or sex of the defendant or any victim was not involved in reaching his or her individual decision, and that the individual juror would have made the same recommendation regarding a sentence for the crime or crimes in question regardless of the race, color, religious beliefs, national origin, or sex of the defendant, or the victims.



FOREPERSON

Date: March 6, 2015.

```
MIME-Version:1.0
From:CMECFinnd@innd.uscourts.gov
To:CMECFinnd@localhost.localdomain
Bcc:
--Case Participants: Pablo DeCastro (pdecastro@attorneydecastro.com,
ysierra@rascia-decastro.com), Kurt R Earnst (kre@braje-nelson.com), Matthew N Fech
(mnf@fech-law.com), Arlington J Foley (arlingtonfoley@att.net), Jack Friedlander
(jack@jackfriedlander.com, office@jackfriedlander.com), Bruce R Hegyi - AUSA
(bruce.hegyi@usdoj.gov), Roxanne Mendez Johnson (attorneyrmj@gmail.com), Scott L King
(dwilliams@scottkinggroup.com, sking@scottkinggroup.com), Visvaldis P Kupsis
(vpkupsis@hotmail.com), Dean R Lanter - AUSA (dean.lanter@usdoj.gov,
janet.eisenmann@usdoj.gov, usainn.ecfcivil@usdoj.gov), John Maksimovich
(criminallaw@johnmaksimovich.com), John E Martin - FCD (john_martin@fd.org), Sheldon B
Nagelberg (sbnagelberglaw@att.net), David J Nozick - AUSA (david.nozick@usdoj.gov,
janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov,
usainn.ecfcivil@usdoj.gov), Mark A Psimos (psimoslaw@airbaud.net), Robert L Rascia
(rrascia@rascia-decastro.com, ysierra@rascia-decastro.com), Stephen Edward Scheele
(pkd@gk4law.com, ses@gk4law.com), Paul Jeffrey Schlesinger (pjeffslaw@aol.com), Adam
Tavitas (adtavitas@aol.com, b.lynneadams@yahoo.com), John T Theis (theislaw@aol.com),
James N Thiros (jim@thiros.com, lynn@thiros.com), Bryan M Truitt (bryan@tblawyers.com,
sherrie@tblawyers.com), David E Vandercoy (david.vandercoy@valpo.edu), Thomas W Vanes
(b.lynneadams@yahoo.com, tom.vanes@sbcglobal.net), Ihor Alexander Woloshansky
(ihorlawyer@hotmail.com), Richard C Wolter (b.lynneadams@yahoo.com), R Brian Woodward
(carolb@wbbklaw.com, rbwoodward@wbbklaw.com), Magistrate Judge Andrew P Rodovich
(rodovich_chambers@innd.uscourts.gov, ruth_nagy@innd.uscourts.gov), Chief Judge Philip P
Simon (denise_woodside@innd.uscourts.gov, jacob_hamann@innd.uscourts.gov,
lauren_schwartz@innd.uscourts.gov, mira_serrill-robins@innd.uscourts.gov,
noel_collins@innd.uscourts.gov, philip_simon@innd.uscourts.gov)
--Non Case Participants: Matthew D Soliday (office@matthewsolidaylaw.com)
--No Notice Sent:

Message-Id:2726562@innd.uscourts.gov
Subject:Activity in Case 2:11-cr-00077-PPS-APR United States of America v. Briseno et al
Order on Motion to Seal Document
```
Content-Type: text/html

## U.S. District Court Northern District of Indiana [LIVE]

## USDC Northern Indiana

## Notice of Electronic Filing

The following transaction was entered on 3/12/2015 at 11:41 AM EST and filed on 3/12/2015

| | |
|---|---|
| **Case Name:** | United States of America v. Briseno et al |
| **Case Number:** | 2:11-cr-00077-PPS-APR |
| **Filer:** | |
| **Document Number:** | 1538(No document attached) |

**Docket Text:**
 **ORDER GRANTING [1536] Motion to Seal Document as to Juan Briseno (1). (Text entry only, no pdf is attached). Approved by Chief Judge Philip P Simon on 3/12/15. (nac)**

**2:11-cr-00077-PPS-APR-1 Notice has been electronically mailed to:**

David E Vandercoy    david.vandercoy@valpo.edu

Arlington J Foley    arlingtonfoley@att.net

Mark A Psimos    psimoslaw@airbaud.net

Scott L King    sking@scottkinggroup.com, dwilliams@scottkinggroup.com

James N Thiros    jim@thiros.com, lynn@thiros.com

Thomas W Vanes    tom.vanes@sbcglobal.net, b.lynneadams@yahoo.com

Ihor Alexander Woloshansky    ihorlawyer@hotmail.com

R Brian Woodward    rbwoodward@wbbklaw.com, carolb@wbbklaw.com

John Maksimovich    criminallaw@johnmaksimovich.com

Visvaldis P Kupsis    vpkupsis@hotmail.com

Sheldon B Nagelberg    sbnagelberglaw@att.net

John E Martin – FCD    john_martin@fd.org

Adam Tavitas    Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander    jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele    ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst    kre@braje–nelson.com

Bryan M Truitt    bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis    theislaw@aol.com

Robert L Rascia    rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger    pjeffslaw@aol.com

Matthew N Fech    mnf@fech–law.com

Pablo DeCastro    pdecastro@attorneydecastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA    dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov,
janet.eisenmann@usdoj.gov

David J Nozick – AUSA    David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov,
janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson    attorneyrmj@gmail.com

Bruce R Hegyi – AUSA    bruce.hegyi@usdoj.gov

**2:11–cr–00077–PPS–APR–1 Notice has been delivered by U.S. Mail or other means to:**

```
MIME-Version:1.0
From:CMECFinnd@innd.uscourts.gov
To:CMECFinnd@localhost.localdomain
Bcc:
--Case Participants: Bryan M Truitt (bryan@tblawyers.com, sherrie@tblawyers.com), David J
Nozick - AUSA (david.nozick@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov,
susan.devries@usdoj.gov, usainn.ecfcivil@usdoj.gov), Kurt R Earnst (kre@braje-nelson.com),
Paul Jeffrey Schlesinger (pjeffslaw@aol.com), Pablo DeCastro
(pdecastro@attorneydecastro.com, ysierra@rascia-decastro.com), Sheldon B Nagelberg
(sbnagelberglaw@att.net), Thomas W Vanes (b.lynneadams@yahoo.com,
tom.vanes@sbcglobal.net), Richard C Wolter (b.lynneadams@yahoo.com), John T Theis
(theislaw@aol.com), Adam Tavitas (adtavitas@aol.com, b.lynneadams@yahoo.com), Dean R
Lanter - AUSA (dean.lanter@usdoj.gov, janet.eisenmann@usdoj.gov,
usainn.ecfcivil@usdoj.gov), John E Martin - FCD (john_martin@fd.org), Scott L King
(dwilliams@scottkinggroup.com, sking@scottkinggroup.com), Mark A Psimos
(psimoslaw@airbaud.net), Matthew N Fech (mnf@fech-law.com), Ihor Alexander Woloshansky
(ihorlawyer@hotmail.com), James N Thiros (jim@thiros.com, lynn@thiros.com), Robert L
Rascia (rrascia@rascia-decastro.com, ysierra@rascia-decastro.com), Arlington J Foley
(arlingtonfoley@att.net), Roxanne Mendez Johnson (attorneyrmj@gmail.com), Visvaldis P
Kupsis (vpkupsis@hotmail.com), Stephen Edward Scheele (pkd@gk4law.com, ses@gk4law.com),
Jack Friedlander (jack@jackfriedlander.com, office@jackfriedlander.com), Bruce R Hegyi -
AUSA (bruce.hegyi@usdoj.gov), R Brian Woodward (carolb@wbbklaw.com,
rbwoodward@wbbklaw.com), John Maksimovich (criminallaw@johnmaksimovich.com), David E
Vandercoy (david.vandercoy@valpo.edu), Magistrate Judge Andrew P Rodovich
(rodovich_chambers@innd.uscourts.gov, ruth_nagy@innd.uscourts.gov), Chief Judge Philip P
Simon (denise_woodside@innd.uscourts.gov, jacob_hamann@innd.uscourts.gov,
lauren_schwartz@innd.uscourts.gov, mira_serrill-robins@innd.uscourts.gov,
noel_collins@innd.uscourts.gov, philip_simon@innd.uscourts.gov)
--Non Case Participants: Matthew D Soliday (office@matthewsolidaylaw.com)
--No Notice Sent:

Message-Id:2729914@innd.uscourts.gov
Subject:Activity in Case 2:11-cr-00077-PPS-APR United States of America v. Briseno et al
Order on Motion to Seal Document
Content-Type: text/html
```

### U.S. District Court Northern District of Indiana [LIVE]

### USDC Northern Indiana

## Notice of Electronic Filing

The following transaction was entered on 3/17/2015 at 3:33 PM EST and filed on 3/17/2015

| | |
|---|---|
| **Case Name:** | United States of America v. Briseno et al |
| **Case Number:** | <u>2:11-cr-00077-PPS-APR</u> |
| **Filer:** | |
| **Document Number:** | 1545(No document attached) |

**Docket Text:**
**ORDER GRANTING [1543] Motion to Seal Document as to Juan Briseno (1). (Text entry only, no pdf is attached). Approved by Chief Judge Philip P Simon on 3/17/2015. (nac)**

**2:11-cr-00077-PPS-APR-1 Notice has been electronically mailed to:**

David E Vandercoy    david.vandercoy@valpo.edu

Arlington J Foley    arlingtonfoley@att.net

Mark A Psimos    psimoslaw@airbaud.net

Scott L King    sking@scottkinggroup.com, dwilliams@scottkinggroup.com

James N Thiros    jim@thiros.com, lynn@thiros.com

Thomas W Vanes    tom.vanes@sbcglobal.net, b.lynneadams@yahoo.com

Ihor Alexander Woloshansky    ihorlawyer@hotmail.com

R Brian Woodward    rbwoodward@wbbklaw.com, carolb@wbbklaw.com

John Maksimovich    criminallaw@johnmaksimovich.com

Visvaldis P Kupsis    vpkupsis@hotmail.com

Sheldon B Nagelberg    sbnagelberglaw@att.net

John E Martin – FCD    john_martin@fd.org

Adam Tavitas    Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander    jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele    ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst    kre@braje–nelson.com

Bryan M Truitt    bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis    theislaw@aol.com

Robert L Rascia    rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger    pjeffslaw@aol.com

Matthew N Fech    mnf@fech–law.com

Pablo DeCastro    pdecastro@attorneydecastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA    dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov,
janet.eisenmann@usdoj.gov

David J Nozick – AUSA    David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov,
janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson    attorneyrmj@gmail.com

Bruce R Hegyi – AUSA    bruce.hegyi@usdoj.gov

3999

Case 2:11-cr-77    NEF for Docket Entry 1545    Filed 03/17/2015    Page 3 of 3
Case: 15-2347    Document: 35    Filed: 07/27/2016    Pages: 4186

**2:11–cr–00077–PPS–APR–1 Notice has been delivered by U.S. Mail or other means to:**

```
MIME-Version:1.0
From:CMECFinnd@innd.uscourts.gov
To:CMECFinnd@localhost.localdomain
Bcc:
--Case Participants: Pablo DeCastro (pdecastro@attorneydecastro.com,
ysierra@rascia-decastro.com), Kurt R Earnst (kre@braje-nelson.com), Matthew N Fech
(mnf@fech-law.com), Arlington J Foley (arlingtonfoley@att.net), Jack Friedlander
(jack@jackfriedlander.com, office@jackfriedlander.com), Bruce R Hegyi - AUSA
(bruce.hegyi@usdoj.gov), Roxanne Mendez Johnson (attorneyrmj@gmail.com), Scott L King
(dwilliams@scottkinggroup.com, sking@scottkinggroup.com), Visvaldis P Kupsis
(vpkupsis@hotmail.com), Dean R Lanter - AUSA (dean.lanter@usdoj.gov,
janet.eisenmann@usdoj.gov, usainn.ecfcivil@usdoj.gov), John Maksimovich
(criminallaw@johnmaksimovich.com), John E Martin - FCD (john_martin@fd.org), Sheldon B
Nagelberg (sbnagelberglaw@att.net), David J Nozick - AUSA (david.nozick@usdoj.gov,
janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov,
usainn.ecfcivil@usdoj.gov), Mark A Psimos (psimoslaw@airbaud.net), Robert L Rascia
(rrascia@rascia-decastro.com, ysierra@rascia-decastro.com), Stephen Edward Scheele
(pkd@gk4law.com, ses@gk4law.com), Paul Jeffrey Schlesinger (pjeffslaw@aol.com), Adam
Tavitas (adtavitas@aol.com, b.lynneadams@yahoo.com), John T Theis (theislaw@aol.com),
James N Thiros (jim@thiros.com, lynn@thiros.com), Bryan M Truitt (bryan@tblawyers.com,
sherrie@tblawyers.com), David E Vandercoy (david.vandercoy@valpo.edu), Thomas W Vanes
(b.lynneadams@yahoo.com, tom.vanes@sbcglobal.net), Ihor Alexander Woloshansky
(ihorlawyer@hotmail.com), Richard C Wolter (b.lynneadams@yahoo.com), R Brian Woodward
(carolb@wbbklaw.com, rbwoodward@wbbklaw.com), Magistrate Judge Andrew P Rodovich
(rodovich_chambers@innd.uscourts.gov, ruth_nagy@innd.uscourts.gov), Chief Judge Philip P
Simon (denise_woodside@innd.uscourts.gov, jacob_hamann@innd.uscourts.gov,
lauren_schwartz@innd.uscourts.gov, mira_serrill-robins@innd.uscourts.gov,
noel_collins@innd.uscourts.gov, philip_simon@innd.uscourts.gov)
--Non Case Participants: Matthew D Soliday (office@matthewsolidaylaw.com)
--No Notice Sent:

Message-Id:2738106@innd.uscourts.gov
Subject:Activity in Case 2:11-cr-00077-PPS-APR United States of America v. Briseno et al
Order on Motion to Seal Document
```
Content-Type: text/html

### U.S. District Court Northern District of Indiana [LIVE]

### USDC Northern Indiana

## Notice of Electronic Filing

The following transaction was entered on 3/30/2015 at 10:37 AM EST and filed on 3/30/2015

| | |
|---|---|
| **Case Name:** | United States of America v. Briseno et al |
| **Case Number:** | 2:11-cr-00077-PPS-APR |
| **Filer:** | |
| **Document Number:** | 1557(No document attached) |

**Docket Text:**
 **ORDER – GRANTING [1553] Motion to Seal Document as to Juan Briseno (1). (Text entry only, no pdf is attached). (Approved by Chief Judge Philip P. Simon). (nac)**

**2:11-cr-00077-PPS-APR-1 Notice has been electronically mailed to:**

David E Vandercoy    david.vandercoy@valpo.edu

Arlington J Foley    arlingtonfoley@att.net

Mark A Psimos    psimoslaw@airbaud.net

Scott L King    sking@scottkinggroup.com, dwilliams@scottkinggroup.com

James N Thiros    jim@thiros.com, lynn@thiros.com

Thomas W Vanes    tom.vanes@sbcglobal.net, b.lynneadams@yahoo.com

Ihor Alexander Woloshansky    ihorlawyer@hotmail.com

R Brian Woodward    rbwoodward@wbbklaw.com, carolb@wbbklaw.com

John Maksimovich    criminallaw@johnmaksimovich.com

Visvaldis P Kupsis    vpkupsis@hotmail.com

Sheldon B Nagelberg    sbnagelberglaw@att.net

John E Martin – FCD    john_martin@fd.org

Adam Tavitas    Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander    jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele    ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst    kre@braje–nelson.com

Bryan M Truitt    bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis    theislaw@aol.com

Robert L Rascia    rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger    pjeffslaw@aol.com

Matthew N Fech    mnf@fech–law.com

Pablo DeCastro    pdecastro@attorneydecastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA    dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov,
janet.eisenmann@usdoj.gov

David J Nozick – AUSA    David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov,
janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson    attorneyrmj@gmail.com

Bruce R Hegyi – AUSA    bruce.hegyi@usdoj.gov

4002

**2:11–cr–00077–PPS–APR–1 Notice has been delivered by U.S. Mail or other means to:**

MIME-Version:1.0
From:CMECFinnd@innd.uscourts.gov
To:CMECFinnd@localhost.localdomain
Bcc:
--Case Participants: Bryan M Truitt (bryan@tblawyers.com, sherrie@tblawyers.com), David J
Nozick – AUSA (david.nozick@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov,
susan.devries@usdoj.gov, usainn.ecfcivil@usdoj.gov), Kurt R Earnst (kre@braje-nelson.com),
Paul Jeffrey Schlesinger (pjeffslaw@aol.com), Pablo DeCastro
(pdecastro@attorneydecastro.com, ysierra@rascia-decastro.com), Sheldon B Nagelberg
(sbnagelberglaw@att.net), Thomas W Vanes (b.lynneadams@yahoo.com,
tom.vanes@sbcglobal.net), Richard C Wolter (b.lynneadams@yahoo.com), John T Theis
(theislaw@aol.com), Adam Tavitas (adtavitas@aol.com, b.lynneadams@yahoo.com), Dean R
Lanter – AUSA (dean.lanter@usdoj.gov, janet.eisenmann@usdoj.gov,
usainn.ecfcivil@usdoj.gov), John E Martin – FCD (john_martin@fd.org), Scott L King
(dwilliams@scottkinggroup.com, sking@scottkinggroup.com), Mark A Psimos
(psimoslaw@airbaud.net), Matthew N Fech (mnf@fech-law.com), Ihor Alexander Woloshansky
(ihorlawyer@hotmail.com), James N Thiros (jim@thiros.com, lynn@thiros.com), Robert L
Rascia (rrascia@rascia-decastro.com, ysierra@rascia-decastro.com), Arlington J Foley
(arlingtonfoley@att.net), Roxanne Mendez Johnson (attorneyrmj@gmail.com), Visvaldis P
Kupsis (vpkupsis@hotmail.com), Stephen Edward Scheele (pkd@gk4law.com, ses@gk4law.com),
Jack Friedlander (jack@jackfriedlander.com, office@jackfriedlander.com), Bruce R Hegyi –
AUSA (bruce.hegyi@usdoj.gov), R Brian Woodward (carolb@wbbklaw.com,
rbwoodward@wbbklaw.com), John Maksimovich (criminallaw@johnmaksimovich.com), David E
Vandercoy (david.vandercoy@valpo.edu), Magistrate Judge Andrew P Rodovich
(rodovich_chambers@innd.uscourts.gov, ruth_nagy@innd.uscourts.gov), Chief Judge Philip P
Simon (denise_woodside@innd.uscourts.gov, jacob_hamann@innd.uscourts.gov,
lauren_schwartz@innd.uscourts.gov, mira_serrill-robins@innd.uscourts.gov,
noel_collins@innd.uscourts.gov, philip_simon@innd.uscourts.gov)
--Non Case Participants: Matthew D Soliday (office@matthewsolidaylaw.com)
--No Notice Sent:

Message-Id:2738174@innd.uscourts.gov
Subject:Activity in Case 2:11-cr-00077-PPS-APR United States of America v. Briseno et al
Order on Motion to Seal Document
Content–Type: text/html

### U.S. District Court Northern District of Indiana [LIVE]

### USDC Northern Indiana

## Notice of Electronic Filing

The following transaction was entered on 3/30/2015 at 11:35 AM EST and filed on 3/30/2015

| | |
|---|---|
| **Case Name:** | United States of America v. Briseno et al |
| **Case Number:** | <u>2:11–cr–00077–PPS–APR</u> |
| **Filer:** | |
| **Document Number:** | 1558(No document attached) |

**Docket Text:**
 **ORDER GRANTING [1555] Motion to Seal Document as to Juan Briseno (1). (Text entry only, no pdf is attached). Approved by Chief Judge Philip P. Simon. (nac)**

**2:11–cr–00077–PPS–APR–1 Notice has been electronically mailed to:**

David E Vandercoy     david.vandercoy@valpo.edu

Arlington J Foley    arlingtonfoley@att.net

Mark A Psimos    psimoslaw@airbaud.net

Scott L King    sking@scottkinggroup.com, dwilliams@scottkinggroup.com

James N Thiros    jim@thiros.com, lynn@thiros.com

Thomas W Vanes    tom.vanes@sbcglobal.net, b.lynneadams@yahoo.com

Ihor Alexander Woloshansky    ihorlawyer@hotmail.com

R Brian Woodward    rbwoodward@wbbklaw.com, carolb@wbbklaw.com

John Maksimovich    criminallaw@johnmaksimovich.com

Visvaldis P Kupsis    vpkupsis@hotmail.com

Sheldon B Nagelberg    sbnagelberglaw@att.net

John E Martin – FCD    john_martin@fd.org

Adam Tavitas    Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander    jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele    ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst    kre@braje–nelson.com

Bryan M Truitt    bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis    theislaw@aol.com

Robert L Rascia    rrascia@rascia–decastro.com, ysierra@rascia–decastro.com

Paul Jeffrey Schlesinger    pjeffslaw@aol.com

Matthew N Fech    mnf@fech–law.com

Pablo DeCastro    pdecastro@attorneydecastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA    dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov,
janet.eisenmann@usdoj.gov

David J Nozick – AUSA    David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov,
janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson    attorneyrmj@gmail.com

Bruce R Hegyi – AUSA    bruce.hegyi@usdoj.gov

**2:11–cr–00077–PPS–APR–1 Notice has been delivered by U.S. Mail or other means to:**

```
MIME-Version:1.0
From:CMECFinnd@innd.uscourts.gov
To:CMECFinnd@localhost.localdomain
Bcc:
--Case Participants: Pablo DeCastro (pdecastro@attorneydecastro.com,
ysierra@rascia-decastro.com), Kurt R Earnst (kre@braje-nelson.com), Matthew N Fech
(mnf@fech-law.com), Arlington J Foley (arlingtonfoley@att.net), Jack Friedlander
(jack@jackfriedlander.com, office@jackfriedlander.com), Bruce R Hegyi - AUSA
(bruce.hegyi@usdoj.gov), Roxanne Mendez Johnson (attorneyrmj@gmail.com), Scott L King
(dwilliams@scottkinggroup.com, sking@scottkinggroup.com), Visvaldis P Kupsis
(vpkupsis@hotmail.com), Dean R Lanter - AUSA (dean.lanter@usdoj.gov,
janet.eisenmann@usdoj.gov, usainn.ecfcivil@usdoj.gov), John Maksimovich
(criminallaw@johnmaksimovich.com), John E Martin - FCD (john_martin@fd.org), Sheldon B
Nagelberg (sbnagelberglaw@att.net), David J Nozick - AUSA (david.nozick@usdoj.gov,
janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov,
usainn.ecfcivil@usdoj.gov), Mark A Psimos (psimoslaw@airbaud.net), Robert L Rascia
(rrascia@rascia-himel.com, ysierra@rascia-himel.com), Stephen Edward Scheele
(pkd@gk4law.com, ses@gk4law.com), Paul Jeffrey Schlesinger (pjeffslaw@aol.com), Adam
Tavitas (adtavitas@aol.com, b.lynneadams@yahoo.com), John T Theis (theislaw@aol.com),
James N Thiros (jim@thiros.com, lynn@thiros.com), Bryan M Truitt (bryan@tblawyers.com,
sherrie@tblawyers.com), David E Vandercoy (david.vandercoy@valpo.edu), Thomas W Vanes
(b.lynneadams@yahoo.com, tom.vanes@sbcglobal.net), Ihor Alexander Woloshansky
(ihorlawyer@hotmail.com), Richard C Wolter (b.lynneadams@yahoo.com), R Brian Woodward
(carolb@wbbklaw.com, rbwoodward@wbbklaw.com), Magistrate Judge Andrew P Rodovich
(rodovich_chambers@innd.uscourts.gov, ruth_nagy@innd.uscourts.gov), Chief Judge Philip P
Simon (denise_woodside@innd.uscourts.gov, jacob_hamann@innd.uscourts.gov,
lauren_schwartz@innd.uscourts.gov, mira_serrill-robins@innd.uscourts.gov,
noel_collins@innd.uscourts.gov, philip_simon@innd.uscourts.gov)
--Non Case Participants: Matthew D Soliday (office@matthewsolidaylaw.com)
--No Notice Sent:

Message-Id:2740290@innd.uscourts.gov
Subject:Activity in Case 2:11-cr-00077-PPS-APR United States of America v. Briseno et al
Order on Motion to Seal Document
Content-Type: text/html
```

### U.S. District Court Northern District of Indiana [LIVE]

### USDC Northern Indiana

## Notice of Electronic Filing

The following transaction was entered on 4/1/2015 at 12:04 PM EST and filed on 4/1/2015

| | |
|---|---|
| **Case Name:** | United States of America v. Briseno et al |
| **Case Number:** | 2:11-cr-00077-PPS-APR |
| **Filer:** | |
| **Document Number:** | 1562(No document attached) |

**Docket Text:**
 **ORDER: GRANTING [1559] Motion to Seal Document as to Juan Briseno (1). (Text entry only, no pdf is attached). Approved by Chief Judge Philip P. Simon on 4/1/2015. (nac)**

**2:11-cr-00077-PPS-APR-1 Notice has been electronically mailed to:**

David E Vandercoy    david.vandercoy@valpo.edu

Arlington J Foley    arlingtonfoley@att.net

Mark A Psimos    psimoslaw@airbaud.net

Scott L King    sking@scottkinggroup.com, dwilliams@scottkinggroup.com

James N Thiros    jim@thiros.com, lynn@thiros.com

Thomas W Vanes    tom.vanes@sbcglobal.net, b.lynneadams@yahoo.com

Ihor Alexander Woloshansky    ihorlawyer@hotmail.com

R Brian Woodward    rbwoodward@wbbklaw.com, carolb@wbbklaw.com

John Maksimovich    criminallaw@johnmaksimovich.com

Visvaldis P Kupsis    vpkupsis@hotmail.com

Sheldon B Nagelberg    sbnagelberglaw@att.net

John E Martin – FCD    john_martin@fd.org

Adam Tavitas    Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander    jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele    ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst    kre@braje–nelson.com

Bryan M Truitt    bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis    theislaw@aol.com

Robert L Rascia    rrascia@rascia–himel.com, ysierra@rascia–himel.com

Paul Jeffrey Schlesinger    pjeffslaw@aol.com

Matthew N Fech    mnf@fech–law.com

Pablo DeCastro    pdecastro@attorneydecastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA    dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov,
janet.eisenmann@usdoj.gov

David J Nozick – AUSA    David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov,
janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson    attorneyrmj@gmail.com

Bruce R Hegyi – AUSA    bruce.hegyi@usdoj.gov

4008

**2:11–cr–00077–PPS–APR–1 Notice has been delivered by U.S. Mail or other means to:**

```
MIME-Version:1.0
From:CMECFinnd@innd.uscourts.gov
To:CMECFinnd@localhost.localdomain
Bcc:
--Case Participants: Pablo DeCastro (pdecastro@attorneydecastro.com,
ysierra@rascia-decastro.com), Kurt R Earnst (kre@braje-nelson.com), Matthew N Fech
(mnf@fech-law.com), Arlington J Foley (arlingtonfoley@att.net), Jack Friedlander
(jack@jackfriedlander.com, office@jackfriedlander.com), Bruce R Hegyi - AUSA
(bruce.hegyi@usdoj.gov), Roxanne Mendez Johnson (attorneyrmj@gmail.com), Scott L King
(dwilliams@scottkinggroup.com, sking@scottkinggroup.com), Visvaldis P Kupsis
(vpkupsis@hotmail.com), Dean R Lanter - AUSA (dean.lanter@usdoj.gov,
janet.eisenmann@usdoj.gov, usainn.ecfcivil@usdoj.gov), John Maksimovich
(criminallaw@johnmaksimovich.com), John E Martin - FCD (john_martin@fd.org), Sheldon B
Nagelberg (sbnagelberglaw@att.net), David J Nozick - AUSA (david.nozick@usdoj.gov,
janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov,
usainn.ecfcivil@usdoj.gov), Mark A Psimos (psimoslaw@airbaud.net), Robert L Rascia
(rrascia@rascia-himel.com, ysierra@rascia-himel.com), Stephen Edward Scheele
(pkd@gk4law.com, ses@gk4law.com), Paul Jeffrey Schlesinger (pjeffslaw@aol.com), Adam
Tavitas (adtavitas@aol.com, b.lynneadams@yahoo.com), John T Theis (theislaw@aol.com),
James N Thiros (jim@thiros.com, lynn@thiros.com), Bryan M Truitt (bryan@tblawyers.com,
sherrie@tblawyers.com), David E Vandercoy (david.vandercoy@valpo.edu), Thomas W Vanes
(b.lynneadams@yahoo.com, tom.vanes@sbcglobal.net), Ihor Alexander Woloshansky
(ihorlawyer@hotmail.com), Richard C Wolter (b.lynneadams@yahoo.com), R Brian Woodward
(carolb@wbbklaw.com, rbwoodward@wbbklaw.com), Magistrate Judge Andrew P Rodovich
(rodovich_chambers@innd.uscourts.gov, ruth_nagy@innd.uscourts.gov), Chief Judge Philip P
Simon (denise_woodside@innd.uscourts.gov, jacob_hamann@innd.uscourts.gov,
lauren_schwartz@innd.uscourts.gov, mira_serrill-robins@innd.uscourts.gov,
noel_collins@innd.uscourts.gov, philip_simon@innd.uscourts.gov)
--Non Case Participants: Matthew D Soliday (office@matthewsolidaylaw.com)
--No Notice Sent:

Message-Id:2744414@innd.uscourts.gov
Subject:Activity in Case 2:11-cr-00077-PPS-APR United States of America v. Briseno et al
Document Unsealed
```

Content–Type: text/html

## U.S. District Court Northern District of Indiana [LIVE]

## USDC Northern Indiana

## Notice of Electronic Filing

The following transaction was entered on 4/7/2015 at 3:09 PM EST and filed on 4/7/2015

| | |
|---|---|
| **Case Name:** | United States of America v. Briseno et al |
| **Case Number:** | 2:11–cr–00077–PPS–APR |
| **Filer:** | |
| **Document Number:** | No document attached |

**Docket Text:**
**Document (verdict form) unsealed as to dft Juan Briseno. (Verdict Form – Docket Entry #1488 – this verdict form from the guilt phase of the trial contains redacted juror signatures and therefore does not need to be sealed). (nac)**

**2:11–cr–00077–PPS–APR–1 Notice has been electronically mailed to:**

4010

David E Vandercoy     david.vandercoy@valpo.edu

Arlington J Foley     arlingtonfoley@att.net

Mark A Psimos     psimoslaw@airbaud.net

Scott L King     sking@scottkinggroup.com, dwilliams@scottkinggroup.com

James N Thiros     jim@thiros.com, lynn@thiros.com

Thomas W Vanes     tom.vanes@sbcglobal.net, b.lynneadams@yahoo.com

Ihor Alexander Woloshansky     ihorlawyer@hotmail.com

R Brian Woodward     rbwoodward@wbbklaw.com, carolb@wbbklaw.com

John Maksimovich     criminallaw@johnmaksimovich.com

Visvaldis P Kupsis     vpkupsis@hotmail.com

Sheldon B Nagelberg     sbnagelberglaw@att.net

John E Martin – FCD     john_martin@fd.org

Adam Tavitas     Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander     jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele     ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst     kre@braje–nelson.com

Bryan M Truitt     bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis     theislaw@aol.com

Robert L Rascia     rrascia@rascia–himel.com, ysierra@rascia–himel.com

Paul Jeffrey Schlesinger     pjeffslaw@aol.com

Matthew N Fech     mnf@fech–law.com

Pablo DeCastro     pdecastro@attorneydecastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA     dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov,
janet.eisenmann@usdoj.gov

David J Nozick – AUSA     David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov,
janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson     attorneyrmj@gmail.com

4011

Bruce R Hegyi – AUSA    bruce.hegyi@usdoj.gov

**2:11–cr–00077–PPS–APR–1 Notice has been delivered by U.S. Mail or other means to:**

```
MIME-Version:1.0
From:CMECFinnd@innd.uscourts.gov
To:CMECFinnd@localhost.localdomain
Bcc:
--Case Participants: Bryan M Truitt (bryan@tblawyers.com, sherrie@tblawyers.com), David J
Nozick - AUSA (david.nozick@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov,
susan.devries@usdoj.gov, usainn.ecfcivil@usdoj.gov), Kurt R Earnst (kre@braje-nelson.com),
Paul Jeffrey Schlesinger (pjeffslaw@aol.com), Pablo DeCastro
(pdecastro@attorneydecastro.com, ysierra@rascia-decastro.com), Sheldon B Nagelberg
(sbnagelberglaw@att.net), Thomas W Vanes (b.lynneadams@yahoo.com,
tom.vanes@sbcglobal.net), Richard C Wolter (b.lynneadams@yahoo.com), John T Theis
(theislaw@aol.com), Adam Tavitas (adtavitas@aol.com, b.lynneadams@yahoo.com), Dean R
Lanter - AUSA (dean.lanter@usdoj.gov, janet.eisenmann@usdoj.gov,
usainn.ecfcivil@usdoj.gov), John E Martin - FCD (john_martin@fd.org), Scott L King
(dwilliams@scottkinggroup.com, sking@scottkinggroup.com), Mark A Psimos
(psimoslaw@airbaud.net), Matthew N Fech (mnf@fech-law.com), Ihor Alexander Woloshansky
(ihorlawyer@hotmail.com), James N Thiros (jim@thiros.com, lynn@thiros.com), Robert L
Rascia (rrascia@rascia-himel.com, ysierra@rascia-himel.com), Arlington J Foley
(arlingtonfoley@att.net), Roxanne Mendez Johnson (attorneyrmj@gmail.com), Visvaldis P
Kupsis (vpkupsis@hotmail.com), Stephen Edward Scheele (pkd@gk4law.com, ses@gk4law.com),
Jack Friedlander (jack@jackfriedlander.com, office@jackfriedlander.com), Bruce R Hegyi -
AUSA (bruce.hegyi@usdoj.gov), R Brian Woodward (carolb@wbbklaw.com,
rbwoodward@wbbklaw.com), John Maksimovich (criminallaw@johnmaksimovich.com), David E
Vandercoy (david.vandercoy@valpo.edu), Magistrate Judge Andrew P Rodovich
(rodovich_chambers@innd.uscourts.gov, ruth_nagy@innd.uscourts.gov), Chief Judge Philip P
Simon (denise_woodside@innd.uscourts.gov, jacob_hamann@innd.uscourts.gov,
lauren_schwartz@innd.uscourts.gov, mira_serrill-robins@innd.uscourts.gov,
noel_collins@innd.uscourts.gov, philip_simon@innd.uscourts.gov)
--Non Case Participants: Matthew D Soliday (office@matthewsolidaylaw.com)
--No Notice Sent:

Message-Id:2748927@innd.uscourts.gov
Subject:Activity in Case 2:11-cr-00077-PPS-APR United States of America v. Briseno et al
Order on Motion to Seal Document
Content-Type: text/html
```

### U.S. District Court Northern District of Indiana [LIVE]

### USDC Northern Indiana

## Notice of Electronic Filing

The following transaction was entered on 4/14/2015 at 10:35 AM EST and filed on 4/14/2015

| | |
|---|---|
| **Case Name:** | United States of America v. Briseno et al |
| **Case Number:** | 2:11–cr–00077–PPS–APR |
| **Filer:** | |
| **Document Number:** | 1578(No document attached) |

**Docket Text:**

**ORDER GRANTING [1566] Motion to Seal Document as to Juan Briseno (1). Approved by Chief Judge Philip P Simon on 4/14/2015. (nac)**

**2:11–cr–00077–PPS–APR–1 Notice has been electronically mailed to:**

David E Vandercoy     david.vandercoy@valpo.edu

Arlington J Foley    arlingtonfoley@att.net

Mark A Psimos    psimoslaw@airbaud.net

Scott L King    sking@scottkinggroup.com, dwilliams@scottkinggroup.com

James N Thiros    jim@thiros.com, lynn@thiros.com

Thomas W Vanes    tom.vanes@sbcglobal.net, b.lynneadams@yahoo.com

Ihor Alexander Woloshansky    ihorlawyer@hotmail.com

R Brian Woodward    rbwoodward@wbbklaw.com, carolb@wbbklaw.com

John Maksimovich    criminallaw@johnmaksimovich.com

Visvaldis P Kupsis    vpkupsis@hotmail.com

Sheldon B Nagelberg    sbnagelberglaw@att.net

John E Martin – FCD    john_martin@fd.org

Adam Tavitas    Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander    jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele    ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst    kre@braje–nelson.com

Bryan M Truitt    bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis    theislaw@aol.com

Robert L Rascia    rrascia@rascia–himel.com, ysierra@rascia–himel.com

Paul Jeffrey Schlesinger    pjeffslaw@aol.com

Matthew N Fech    mnf@fech–law.com

Pablo DeCastro    pdecastro@attorneydecastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA    dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA    David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson    attorneyrmj@gmail.com

Bruce R Hegyi – AUSA    bruce.hegyi@usdoj.gov

**2:11–cr–00077–PPS–APR–1 Notice has been delivered by U.S. Mail or other means to:**

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

FILED

2015 JAN 22 P 1: 37   APR 23 2015

ROBE        H, Clerk
U.S.          OURT
NORTHERN DISTRICT OF INDIANA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 2:11-cr-77 |
| | ) |
| JUAN BRISENO, | ) |
| | ) |
| Defendant. | ) |

O.T. 2-23-15 8:30am

### WRIT OF HABEAS CORPUS AD TESTIFICANDUM

TO:   Warden                           United States Marshal
      FTC Oklahoma City                Northern District of Indiana
      Oklahoma City, Oklahoma          Hammond, Indiana

The court being advised that prisoner Eddie Torres (BOP #57686-018) is a necessary

witness in the trial of Juan Briseno in *United States v. Juan Briseno*, on January 12, 2015, at 8:30

a.m. (Central time), and that said prisoner is in the lawful custody and control of the Warden,

FTC Oklahoma City, Oklahoma City, Oklahoma.

It is **ORDERED** and **ADJUDGED** that the Warden, FTC Oklahoma City, Oklahoma

City, Oklahoma, be required and is hereby commanded to surrender the body of prisoner Eddie

Torres (BOP #57686-018) to the United States Marshal for the Northern District of Indiana, or

any duly authorized deputy, or any authorized Marshal, for the purpose of producing the body of

said prisoner for trial in the federal courthouse, Hammond, Indiana, on February 23, 2015, at

8:30 a.m. (Central time), so that the prisoner may be present to testify in said trial, and thereafter

to be returned to the institution by the United States Marshal, or one of his duly authorized

deputies, under safe and secure conduct, and have you then and there this Writ.

**SO ORDERED**

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
I hereby certify the foregoing is a
true copy of the original on file in
this court.
ROBERT                    CLERK
By: _____
Date: 01-22-2015

4016

ENTERED this 22nd day of January, 2015.

/s/ Andrew P. Rodovich
United States Magistrate Judge

Executed this writ by receiving custody on ___2/9/15___ of the within named ___Eddie Torres___
                                             DATE

FROM ___Mcc-Chicago___ and transferring the within named to ___Mcc-Chicago___.

**RETURNED**

Executed this writ by returning custody on ___4/20/15___ of the within named ___Eddie Torres___
                                             DATE

FROM ___Mcc-Chicago___ and transferring the within named to ___at~~ FTC Oklahoma City~~

United States Marshal

By _____
      Deputy

2

4017

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
I hereby certify the foregoing is a
true copy of the original on the file in
this court and cause
ROBERT N. TRGOVICH, CLERK
By: _____
DEPUTY CLERK
Date: 1-9-2015

UNITED STATES MARSHALS
NORTHERN DISTRICT INDIANA

2015 JAN -9 P 2: 08

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

UNITED STATES OF AMERICA,                      )
                                               )
      Plaintiff,                         )
                                               )
v.                                             )      Case No. 2:11-cr-77     **- FILED -**
                                               )
JUAN BRISENO,                                  )
                                               )                              APR 23 2015
      Defendant.                         )
                                                     ROBERT ............... Clerk
                                                     U.S. ...................
**WRIT OF HABEAS CORPUS AD TESTIFICANDUM** NORTHERN DISTRICT OF INDIANA

TO:    Warden                       United States Marshal
        USP Big Sandy             Northern District of Indiana
        Inez, Kentucky            Hammond, Indiana

The court being advised that prisoner Darmaile Sutton (BOP #10375-027) is a necessary witness in the trial of Juan Briseno in *United States v. Juan Briseno*, on January 12, 2015, at 8:30 a.m. (Central time), and that said prisoner is in the lawful custody and control of the Warden, USP Big Sandy, Inez, Kentucky.

It is **ORDERED** and **ADJUDGED** that the Warden, USP Big Sandy, Inez, Kentucky, be required and is hereby commanded to surrender the body of prisoner Darmaile Sutton (BOP #10375-027) to the United States Marshal for the Northern District of Indiana, or any duly authorized deputy, or any authorized Marshal, for the purpose of producing the body of said prisoner for trial in the federal courthouse, Hammond, Indiana, on February 9, 2015, at 8:30 a.m. (Central time), so that the prisoner may be present to testify in said trial, and thereafter to be returned to the institution by the United States Marshal, or one of his duly authorized deputies, under safe and secure conduct, and have you then and there this Writ.

    **SO ORDERED**

ENTERED this 8th day of January, 2015.

/s/ Andrew P. Rodovich
United States Magistrate Judge

Executed this writ by receiving custody on ___2/9/15___ of the within named ___Darmale Sutton___
_____DATE

FROM ___USP Big Sandy___ and transferring the within named to ___MCC Chicago___ .

**RETURNED**

Executed this writ by returning custody on ___4/20/15___ of the within named ___Darmale Sutton___
_____DATE

FROM ___MCC Chicago___ and transferring the within named to ___USP Big Sandy___ .

United States Marshal

By _____
Deputy

2

4019

Anthony R. Baldazo, #44478
J.C.D.C.
3050 Justice Way
Kankakee, IL. 60901

May 07, 2015

Office of the Clerk
5400 Federal Plaza - Suite 4400
Hammond, IN. 46320

-FILED-

MAY 13 2015

AT
ROBE...
U.S.
NORTHER...  ...OF INDIANA

## Request for Docket Sheet

Dear Clerk,

     I'm writing you to request a copy of the Docket Sheet Starting from May 21, 2014 to Current Date for All Defendants.

     To assist with your search, I am providing you with additional information for my request: Case # 2:11-cr-00077-PPS-APR All Defendants, Case Title: United States of America v. Briseno et al, Date Filed: 06/02/2011

     If you have any questions regarding this request, please contact me by mail. Thank you for your assistance. I will look forward to your prompt reply.

Very truly yours,

Anthony R. Baldazo

4020

Case: 1:15-cv-00177-PPS-APR   Document #: 2   Filed: 07/21/15   Page: 1 of 2

Anthony Baldazo, #449781
J.C.D.C.
3050 Justice Way
Kankakee, IL. 60901

LEGAL MAIL!

CHAMPAIGN IL 618

08 MAY 2015 PM 2 T

FOREVER
USA

United States District Court
Office of the Clerk
5400 Federal Plaza - Suite 4400
Hammond, IN.
46320

This Correspondence is from
Jerome Combs Detention Center
3050 Justice Way
Kankakee, IL 60901

```
MIME-Version:1.0
From:CMECFinnd@innd.uscourts.gov
To:CMECFinnd@localhost.localdomain
Bcc:
--Case Participants: David J Nozick - AUSA (david.nozick@usdoj.gov,
janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov,
usainn.ecfcivil@usdoj.gov), Dean R Lanter - AUSA (dean.lanter@usdoj.gov,
janet.eisenmann@usdoj.gov, usainn.ecfcivil@usdoj.gov), Arlington J Foley
(arlingtonfoley@att.net), Bruce R Hegyi - AUSA (bruce.hegyi@usdoj.gov), John Maksimovich
(criminallaw@johnmaksimovich.com)
--Non Case Participants: Probation/Pretrial Services (innpml_cmecf@innd.uscourts.gov)
--No Notice Sent:

Message-Id:2771059@innd.uscourts.gov
Subject:Activity in Case 2:11-cr-00077-PPS-APR United States of America v. Briseno et al
PSR - Draft (with Padlock)
```
Content-Type: text/html

## U.S. District Court Northern District of Indiana [LIVE]

## USDC Northern Indiana

## Notice of Electronic Filing

The following transaction was entered on 5/14/2015 at 4:45 PM EST and filed on 5/14/2015

| | |
|---|---|
| **Case Name:** | United States of America v. Briseno et al |
| **Case Number:** | 2:11-cr-00077-PPS-APR |
| **Filer:** | |
| **Document Number:** | 1626 |

**Docket Text:**

 **DRAFT** PRESENTENCE INVESTIGATION REPORT as to **Juan Briseno**. NOTE: This document will only be accessible to the government attorney and the attorney for the applicable defendant. The judge in this case, other defendants and the general public will NOT be able to view this draft document. For parties entitled to a free look at this document, enter your CM/ECF login and password to confirm your right to view this document. Parties should submit objections to this report *directly to the probation officer listed at the end of this docket entry*. **IMPORTANT!!! Government attorneys and federal community defenders should send objections by SECURE E-MAIL to the probation officer; private attorneys and CJA panel attorneys MUST send objections by FAX ONLY! Government Objections to the Draft Presentence Investigation Report are due not later than 5/28/2015 pursuant to Rule 32 and General Order of the Court 2001-1. Defendant Objections to the Draft Presentence Investigation Report are due not later than 5/28/2015 pursuant to Rule 32 and General Order of the Court 2001-1.** (USPO Beier - david_beier@innp.uscourts.gov, fax 219-852-3629)


**2:11-cr-00077-PPS-APR-1 Notice has been electronically mailed to:**

Arlington J Foley     arlingtonfoley@att.net

John Maksimovich     criminallaw@johnmaksimovich.com

Dean R Lanter - AUSA     dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

4022

David J Nozick – AUSA    David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov,
janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Bruce R Hegyi – AUSA    bruce.hegyi@usdoj.gov

**2:11−cr−00077−PPS−APR−1 Notice has been delivered by U.S. Mail or other means to:**

The following document(s) are associated with this transaction:

```
MIME-Version:1.0
From:CMECFinnd@innd.uscourts.gov
To:CMECFinnd@localhost.localdomain
Bcc:
--Case Participants: Bryan M Truitt (bryan@tblawyers.com, sherrie@tblawyers.com), David J
Nozick - AUSA (david.nozick@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov,
susan.devries@usdoj.gov, usainn.ecfcivil@usdoj.gov), Kurt R Earnst (kre@braje-nelson.com),
Paul Jeffrey Schlesinger (pjeffslaw@aol.com), Pablo DeCastro
(pdecastro@attorneydecastro.com, ysierra@rascia-decastro.com), Sheldon B Nagelberg
(sbnagelberglaw@att.net), Thomas W Vanes (b.lynneadams@yahoo.com,
tom.vanes@sbcglobal.net), Richard C Wolter (b.lynneadams@yahoo.com), John T Theis
(theislaw@aol.com), Adam Tavitas (adtavitas@aol.com, b.lynneadams@yahoo.com), Dean R
Lanter - AUSA (dean.lanter@usdoj.gov, janet.eisenmann@usdoj.gov,
usainn.ecfcivil@usdoj.gov), John E Martin - FCD (john_martin@fd.org), Scott L King
(dwilliams@scottkinggroup.com, sking@scottkinggroup.com), Mark A Psimos
(psimoslaw@airbaud.net), Matthew N Fech (mnf@fech-law.com), Ihor Alexander Woloshansky
(ihorlawyer@hotmail.com), James N Thiros (jim@thiros.com, liz@thiros.com,
lynn@thiros.com), Robert L Rascia (rrascia@rascia-himel.com, ysierra@rascia-himel.com),
Arlington J Foley (arlingtonfoley@att.net), Roxanne Mendez Johnson (attorneyrmj@me.com),
Visvaldis P Kupsis (vpkupsis@hotmail.com), Stephen Edward Scheele (pkd@gk4law.com,
ses@gk4law.com), Jack Friedlander (jack@jackfriedlander.com, office@jackfriedlander.com),
Bruce R Hegyi - AUSA (bruce.hegyi@usdoj.gov), R Brian Woodward (carolb@wbbklaw.com,
rbwoodward@wbbklaw.com), John Maksimovich (criminallaw@johnmaksimovich.com), David E
Vandercoy (david.vandercoy@valpo.edu), Magistrate Judge Andrew P Rodovich
(rodovich_chambers@innd.uscourts.gov, ruth_nagy@innd.uscourts.gov), Chief Judge Philip P
Simon (denise_woodside@innd.uscourts.gov, jacob_hamann@innd.uscourts.gov,
lauren_schwartz@innd.uscourts.gov, mira_serrill-robins@innd.uscourts.gov,
noel_collins@innd.uscourts.gov, philip_simon@innd.uscourts.gov)
--Non Case Participants: Matthew D Soliday (office@matthewsolidaylaw.com),
Probation/Pretrial Services (innpml_cmecf@innd.uscourts.gov), U S Marshal
(inn.docket-fw@usdoj.gov, inn.docket-sb@usdoj.gov, usms.27@usdoj.gov)
--No Notice Sent:

Message-Id:2771136@innd.uscourts.gov
Subject:Activity in Case 2:11-cr-00077-PPS-APR United States of America v. Briseno et al
Terminate Deadlines and Hearings
Content-Type: text/html
```

### U.S. District Court Northern District of Indiana [LIVE]

### USDC Northern Indiana

## Notice of Electronic Filing

The following transaction was entered on 5/14/2015 at 5:31 PM EST and filed on 5/14/2015

| | |
|---|---|
| **Case Name:** | United States of America v. Briseno et al |
| **Case Number:** | 2:11-cr-00077-PPS-APR |
| **Filer:** | |
| **Document Number:** | No document attached |

**Docket Text:**
**Terminated PAST deadlines ONLY in case. (nac)**

**2:11-cr-00077-PPS-APR-1 Notice has been electronically mailed to:**

David E Vandercoy     david.vandercoy@valpo.edu

Arlington J Foley    arlingtonfoley@att.net

Mark A Psimos    psimoslaw@airbaud.net

Scott L King    sking@scottkinggroup.com, dwilliams@scottkinggroup.com

James N Thiros    jim@thiros.com, liz@thiros.com, lynn@thiros.com

Thomas W Vanes    tom.vanes@sbcglobal.net, b.lynneadams@yahoo.com

Ihor Alexander Woloshansky    ihorlawyer@hotmail.com

R Brian Woodward    rbwoodward@wbbklaw.com, carolb@wbbklaw.com

John Maksimovich    criminallaw@johnmaksimovich.com

Visvaldis P Kupsis    vpkupsis@hotmail.com

Sheldon B Nagelberg    sbnagelberglaw@att.net

John E Martin – FCD    john_martin@fd.org

Adam Tavitas    Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander    jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele    ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst    kre@braje–nelson.com

Bryan M Truitt    bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis    theislaw@aol.com

Robert L Rascia    rrascia@rascia–himel.com, ysierra@rascia–himel.com

Paul Jeffrey Schlesinger    pjeffslaw@aol.com

Matthew N Fech    mnf@fech–law.com

Pablo DeCastro    pdecastro@attorneydecastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA    dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA    David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson    attorneyrmj@me.com

Bruce R Hegyi – AUSA    bruce.hegyi@usdoj.gov

**2:11−cr−00077−PPS−APR−1 Notice has been delivered by U.S. Mail or other means to:**

**2:11−cr−00077−PPS−APR−2 Notice has been electronically mailed to:**

David E Vandercoy    david.vandercoy@valpo.edu

Arlington J Foley    arlingtonfoley@att.net

Mark A Psimos    psimoslaw@airbaud.net

Scott L King    sking@scottkinggroup.com, dwilliams@scottkinggroup.com

James N Thiros    jim@thiros.com, liz@thiros.com, lynn@thiros.com

Thomas W Vanes    tom.vanes@sbcglobal.net, b.lynneadams@yahoo.com

Ihor Alexander Woloshansky    ihorlawyer@hotmail.com

R Brian Woodward    rbwoodward@wbbklaw.com, carolb@wbbklaw.com

John Maksimovich    criminallaw@johnmaksimovich.com

Visvaldis P Kupsis    vpkupsis@hotmail.com

Sheldon B Nagelberg    sbnagelberglaw@att.net

John E Martin − FCD    john_martin@fd.org

Adam Tavitas    Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander    jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele    ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst    kre@braje−nelson.com

Bryan M Truitt    bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis    theislaw@aol.com

Robert L Rascia    rrascia@rascia−himel.com, ysierra@rascia−himel.com

Paul Jeffrey Schlesinger    pjeffslaw@aol.com

Matthew N Fech    mnf@fech−law.com

Pablo DeCastro    pdecastro@attorneydecastro.com, ysierra@rascia−decastro.com

Dean R Lanter − AUSA    dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov,
janet.eisenmann@usdoj.gov

David J Nozick – AUSA    David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov,
janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson    attorneyrmj@me.com

Bruce R Hegyi – AUSA    bruce.hegyi@usdoj.gov

**2:11–cr–00077–PPS–APR–2 Notice has been delivered by U.S. Mail or other means to:**

**2:11–cr–00077–PPS–APR–3 Notice has been electronically mailed to:**

David E Vandercoy    david.vandercoy@valpo.edu

Arlington J Foley    arlingtonfoley@att.net

Mark A Psimos    psimoslaw@airbaud.net

Scott L King    sking@scottkinggroup.com, dwilliams@scottkinggroup.com

James N Thiros    jim@thiros.com, liz@thiros.com, lynn@thiros.com

Thomas W Vanes    tom.vanes@sbcglobal.net, b.lynneadams@yahoo.com

Ihor Alexander Woloshansky    ihorlawyer@hotmail.com

R Brian Woodward    rbwoodward@wbbklaw.com, carolb@wbbklaw.com

John Maksimovich    criminallaw@johnmaksimovich.com

Visvaldis P Kupsis    vpkupsis@hotmail.com

Sheldon B Nagelberg    sbnagelberglaw@att.net

John E Martin – FCD    john_martin@fd.org

Adam Tavitas    Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander    jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele    ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst    kre@braje–nelson.com

Bryan M Truitt    bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis    theislaw@aol.com

Robert L Rascia    rrascia@rascia–himel.com, ysierra@rascia–himel.com

Paul Jeffrey Schlesinger    pjeffslaw@aol.com

Matthew N Fech    mnf@fech–law.com

Pablo DeCastro    pdecastro@attorneydecastro.com, ysierra@rascia−decastro.com

Dean R Lanter − AUSA    dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov,
janet.eisenmann@usdoj.gov

David J Nozick − AUSA    David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov,
janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson    attorneyrmj@me.com

Bruce R Hegyi − AUSA    bruce.hegyi@usdoj.gov

**2:11−cr−00077−PPS−APR−3 Notice has been delivered by U.S. Mail or other means to:**

**2:11−cr−00077−PPS−APR−4 Notice has been electronically mailed to:**

David E Vandercoy    david.vandercoy@valpo.edu

Arlington J Foley    arlingtonfoley@att.net

Mark A Psimos    psimoslaw@airbaud.net

Scott L King    sking@scottkinggroup.com, dwilliams@scottkinggroup.com

James N Thiros    jim@thiros.com, liz@thiros.com, lynn@thiros.com

Thomas W Vanes    tom.vanes@sbcglobal.net, b.lynneadams@yahoo.com

Ihor Alexander Woloshansky    ihorlawyer@hotmail.com

R Brian Woodward    rbwoodward@wbbklaw.com, carolb@wbbklaw.com

John Maksimovich    criminallaw@johnmaksimovich.com

Visvaldis P Kupsis    vpkupsis@hotmail.com

Sheldon B Nagelberg    sbnagelberglaw@att.net

John E Martin − FCD    john_martin@fd.org

Adam Tavitas    Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander    jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele    ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst    kre@braje−nelson.com

Bryan M Truitt    bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis    theislaw@aol.com

Robert L Rascia    rrascia@rascia–himel.com, ysierra@rascia–himel.com

Paul Jeffrey Schlesinger    pjeffslaw@aol.com

Matthew N Fech    mnf@fech–law.com

Pablo DeCastro    pdecastro@attorneydecastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA    dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov,
janet.eisenmann@usdoj.gov

David J Nozick – AUSA    David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov,
janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson    attorneyrmj@me.com

Bruce R Hegyi – AUSA    bruce.hegyi@usdoj.gov

**2:11–cr–00077–PPS–APR–4 Notice has been delivered by U.S. Mail or other means to:**

**2:11–cr–00077–PPS–APR–5 Notice has been electronically mailed to:**

David E Vandercoy    david.vandercoy@valpo.edu

Arlington J Foley    arlingtonfoley@att.net

Mark A Psimos    psimoslaw@airbaud.net

Scott L King    sking@scottkinggroup.com, dwilliams@scottkinggroup.com

James N Thiros    jim@thiros.com, liz@thiros.com, lynn@thiros.com

Thomas W Vanes    tom.vanes@sbcglobal.net, b.lynneadams@yahoo.com

Ihor Alexander Woloshansky    ihorlawyer@hotmail.com

R Brian Woodward    rbwoodward@wbbklaw.com, carolb@wbbklaw.com

John Maksimovich    criminallaw@johnmaksimovich.com

Visvaldis P Kupsis    vpkupsis@hotmail.com

Sheldon B Nagelberg    sbnagelberglaw@att.net

John E Martin – FCD    john_martin@fd.org

Adam Tavitas    Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander    jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele    ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst    kre@braje−nelson.com

Bryan M Truitt    bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis    theislaw@aol.com

Robert L Rascia    rrascia@rascia−himel.com, ysierra@rascia−himel.com

Paul Jeffrey Schlesinger    pjeffslaw@aol.com

Matthew N Fech    mnf@fech−law.com

Pablo DeCastro    pdecastro@attorneydecastro.com, ysierra@rascia−decastro.com

Dean R Lanter − AUSA    dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick − AUSA    David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson    attorneyrmj@me.com

Bruce R Hegyi − AUSA    bruce.hegyi@usdoj.gov

**2:11−cr−00077−PPS−APR−5 Notice has been delivered by U.S. Mail or other means to:**

**2:11−cr−00077−PPS−APR−6 Notice has been electronically mailed to:**

David E Vandercoy    david.vandercoy@valpo.edu

Arlington J Foley    arlingtonfoley@att.net

Mark A Psimos    psimoslaw@airbaud.net

Scott L King    sking@scottkinggroup.com, dwilliams@scottkinggroup.com

James N Thiros    jim@thiros.com, liz@thiros.com, lynn@thiros.com

Thomas W Vanes    tom.vanes@sbcglobal.net, b.lynneadams@yahoo.com

Ihor Alexander Woloshansky    ihorlawyer@hotmail.com

R Brian Woodward    rbwoodward@wbbklaw.com, carolb@wbbklaw.com

John Maksimovich    criminallaw@johnmaksimovich.com

Visvaldis P Kupsis    vpkupsis@hotmail.com

Sheldon B Nagelberg    sbnagelberglaw@att.net

John E Martin − FCD    john_martin@fd.org

Adam Tavitas    Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander    jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele    ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst    kre@braje–nelson.com

Bryan M Truitt    bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis    theislaw@aol.com

Robert L Rascia    rrascia@rascia–himel.com, ysierra@rascia–himel.com

Paul Jeffrey Schlesinger    pjeffslaw@aol.com

Matthew N Fech    mnf@fech–law.com

Pablo DeCastro    pdecastro@attorneydecastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA    dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov,
janet.eisenmann@usdoj.gov

David J Nozick – AUSA    David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov,
janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson    attorneyrmj@me.com

Bruce R Hegyi – AUSA    bruce.hegyi@usdoj.gov

**2:11–cr–00077–PPS–APR–6 Notice has been delivered by U.S. Mail or other means to:**

**2:11–cr–00077–PPS–APR–7 Notice has been electronically mailed to:**

David E Vandercoy    david.vandercoy@valpo.edu

Arlington J Foley    arlingtonfoley@att.net

Mark A Psimos    psimoslaw@airbaud.net

Scott L King    sking@scottkinggroup.com, dwilliams@scottkinggroup.com

James N Thiros    jim@thiros.com, liz@thiros.com, lynn@thiros.com

Thomas W Vanes    tom.vanes@sbcglobal.net, b.lynneadams@yahoo.com

Ihor Alexander Woloshansky    ihorlawyer@hotmail.com

R Brian Woodward    rbwoodward@wbbklaw.com, carolb@wbbklaw.com

John Maksimovich    criminallaw@johnmaksimovich.com

4031

Visvaldis P Kupsis     vpkupsis@hotmail.com

Sheldon B Nagelberg     sbnagelberglaw@att.net

John E Martin – FCD     john_martin@fd.org

Adam Tavitas     Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander     jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele     ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst     kre@braje–nelson.com

Bryan M Truitt     bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis     theislaw@aol.com

Robert L Rascia     rrascia@rascia–himel.com, ysierra@rascia–himel.com

Paul Jeffrey Schlesinger     pjeffslaw@aol.com

Matthew N Fech     mnf@fech–law.com

Pablo DeCastro     pdecastro@attorneydecastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA     dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov,
janet.eisenmann@usdoj.gov

David J Nozick – AUSA     David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov,
janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson     attorneyrmj@me.com

Bruce R Hegyi – AUSA     bruce.hegyi@usdoj.gov

**2:11–cr–00077–PPS–APR–7 Notice has been delivered by U.S. Mail or other means to:**

**2:11–cr–00077–PPS–APR–8 Notice has been electronically mailed to:**

David E Vandercoy     david.vandercoy@valpo.edu

Arlington J Foley     arlingtonfoley@att.net

Mark A Psimos     psimoslaw@airbaud.net

Scott L King     sking@scottkinggroup.com, dwilliams@scottkinggroup.com

James N Thiros     jim@thiros.com, liz@thiros.com, lynn@thiros.com

Thomas W Vanes     tom.vanes@sbcglobal.net, b.lynneadams@yahoo.com

Ihor Alexander Woloshansky    ihorlawyer@hotmail.com

R Brian Woodward    rbwoodward@wbbklaw.com, carolb@wbbklaw.com

John Maksimovich    criminallaw@johnmaksimovich.com

Visvaldis P Kupsis    vpkupsis@hotmail.com

Sheldon B Nagelberg    sbnagelberglaw@att.net

John E Martin – FCD    john_martin@fd.org

Adam Tavitas    Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander    jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele    ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst    kre@braje–nelson.com

Bryan M Truitt    bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis    theislaw@aol.com

Robert L Rascia    rrascia@rascia–himel.com, ysierra@rascia–himel.com

Paul Jeffrey Schlesinger    pjeffslaw@aol.com

Matthew N Fech    mnf@fech–law.com

Pablo DeCastro    pdecastro@attorneydecastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA    dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA    David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson    attorneyrmj@me.com

Bruce R Hegyi – AUSA    bruce.hegyi@usdoj.gov

**2:11–cr–00077–PPS–APR–8 Notice has been delivered by U.S. Mail or other means to:**

**2:11–cr–00077–PPS–APR–9 Notice has been electronically mailed to:**

David E Vandercoy    david.vandercoy@valpo.edu

Arlington J Foley    arlingtonfoley@att.net

Mark A Psimos    psimoslaw@airbaud.net

Scott L King     sking@scottkinggroup.com, dwilliams@scottkinggroup.com

James N Thiros     jim@thiros.com, liz@thiros.com, lynn@thiros.com

Thomas W Vanes     tom.vanes@sbcglobal.net, b.lynneadams@yahoo.com

Ihor Alexander Woloshansky     ihorlawyer@hotmail.com

R Brian Woodward     rbwoodward@wbbklaw.com, carolb@wbbklaw.com

John Maksimovich     criminallaw@johnmaksimovich.com

Visvaldis P Kupsis     vpkupsis@hotmail.com

Sheldon B Nagelberg     sbnagelberglaw@att.net

John E Martin – FCD     john_martin@fd.org

Adam Tavitas     Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander     jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele     ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst     kre@braje–nelson.com

Bryan M Truitt     bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis     theislaw@aol.com

Robert L Rascia     rrascia@rascia–himel.com, ysierra@rascia–himel.com

Paul Jeffrey Schlesinger     pjeffslaw@aol.com

Matthew N Fech     mnf@fech–law.com

Pablo DeCastro     pdecastro@attorneydecastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA     dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov,
janet.eisenmann@usdoj.gov

David J Nozick – AUSA     David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov,
janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson     attorneyrmj@me.com

Bruce R Hegyi – AUSA     bruce.hegyi@usdoj.gov

**2:11–cr–00077–PPS–APR–9 Notice has been delivered by U.S. Mail or other means to:**

**2:11–cr–00077–PPS–APR–10 Notice has been electronically mailed to:**

4034

David E Vandercoy     david.vandercoy@valpo.edu

Arlington J Foley     arlingtonfoley@att.net

Mark A Psimos     psimoslaw@airbaud.net

Scott L King     sking@scottkinggroup.com, dwilliams@scottkinggroup.com

James N Thiros     jim@thiros.com, liz@thiros.com, lynn@thiros.com

Thomas W Vanes     tom.vanes@sbcglobal.net, b.lynneadams@yahoo.com

Ihor Alexander Woloshansky     ihorlawyer@hotmail.com

R Brian Woodward     rbwoodward@wbbklaw.com, carolb@wbbklaw.com

John Maksimovich     criminallaw@johnmaksimovich.com

Visvaldis P Kupsis     vpkupsis@hotmail.com

Sheldon B Nagelberg     sbnagelberglaw@att.net

John E Martin – FCD     john_martin@fd.org

Adam Tavitas     Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander     jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele     ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst     kre@braje–nelson.com

Bryan M Truitt     bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis     theislaw@aol.com

Robert L Rascia     rrascia@rascia–himel.com, ysierra@rascia–himel.com

Paul Jeffrey Schlesinger     pjeffslaw@aol.com

Matthew N Fech     mnf@fech–law.com

Pablo DeCastro     pdecastro@attorneydecastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA     dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov,
janet.eisenmann@usdoj.gov

David J Nozick – AUSA     David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov,
janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson     attorneyrmj@me.com

4035

Bruce R Hegyi – AUSA    bruce.hegyi@usdoj.gov

**2:11−cr−00077−PPS−APR−10 Notice has been delivered by U.S. Mail or other means to:**

**2:11−cr−00077−PPS−APR−11 Notice has been electronically mailed to:**

David E Vandercoy    david.vandercoy@valpo.edu

Arlington J Foley    arlingtonfoley@att.net

Mark A Psimos    psimoslaw@airbaud.net

Scott L King    sking@scottkinggroup.com, dwilliams@scottkinggroup.com

James N Thiros    jim@thiros.com, liz@thiros.com, lynn@thiros.com

Thomas W Vanes    tom.vanes@sbcglobal.net, b.lynneadams@yahoo.com

Ihor Alexander Woloshansky    ihorlawyer@hotmail.com

R Brian Woodward    rbwoodward@wbbklaw.com, carolb@wbbklaw.com

John Maksimovich    criminallaw@johnmaksimovich.com

Visvaldis P Kupsis    vpkupsis@hotmail.com

Sheldon B Nagelberg    sbnagelberglaw@att.net

John E Martin – FCD    john_martin@fd.org

Adam Tavitas    Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander    jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele    ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst    kre@braje−nelson.com

Bryan M Truitt    bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis    theislaw@aol.com

Robert L Rascia    rrascia@rascia−himel.com, ysierra@rascia−himel.com

Paul Jeffrey Schlesinger    pjeffslaw@aol.com

Matthew N Fech    mnf@fech−law.com

Pablo DeCastro    pdecastro@attorneydecastro.com, ysierra@rascia−decastro.com

Dean R Lanter – AUSA    dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov,

janet.eisenmann@usdoj.gov

David J Nozick – AUSA    David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov,
janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson    attorneyrmj@me.com

Bruce R Hegyi – AUSA    bruce.hegyi@usdoj.gov

**2:11−cr−00077−PPS−APR−11 Notice has been delivered by U.S. Mail or other means to:**

**2:11−cr−00077−PPS−APR−12 Notice has been electronically mailed to:**

David E Vandercoy    david.vandercoy@valpo.edu

Arlington J Foley    arlingtonfoley@att.net

Mark A Psimos    psimoslaw@airbaud.net

Scott L King    sking@scottkinggroup.com, dwilliams@scottkinggroup.com

James N Thiros    jim@thiros.com, liz@thiros.com, lynn@thiros.com

Thomas W Vanes    tom.vanes@sbcglobal.net, b.lynneadams@yahoo.com

Ihor Alexander Woloshansky    ihorlawyer@hotmail.com

R Brian Woodward    rbwoodward@wbbklaw.com, carolb@wbbklaw.com

John Maksimovich    criminallaw@johnmaksimovich.com

Visvaldis P Kupsis    vpkupsis@hotmail.com

Sheldon B Nagelberg    sbnagelberglaw@att.net

John E Martin – FCD    john_martin@fd.org

Adam Tavitas    Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander    jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele    ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst    kre@braje−nelson.com

Bryan M Truitt    bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis    theislaw@aol.com

Robert L Rascia    rrascia@rascia−himel.com, ysierra@rascia−himel.com

Paul Jeffrey Schlesinger    pjeffslaw@aol.com

Matthew N Fech     mnf@fech–law.com

Pablo DeCastro     pdecastro@attorneydecastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA     dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov,
janet.eisenmann@usdoj.gov

David J Nozick – AUSA     David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov,
janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson     attorneyrmj@me.com

Bruce R Hegyi – AUSA     bruce.hegyi@usdoj.gov

**2:11–cr–00077–PPS–APR–12 Notice has been delivered by U.S. Mail or other means to:**

**2:11–cr–00077–PPS–APR–13 Notice has been electronically mailed to:**

David E Vandercoy     david.vandercoy@valpo.edu

Arlington J Foley     arlingtonfoley@att.net

Mark A Psimos     psimoslaw@airbaud.net

Scott L King     sking@scottkinggroup.com, dwilliams@scottkinggroup.com

James N Thiros     jim@thiros.com, liz@thiros.com, lynn@thiros.com

Thomas W Vanes     tom.vanes@sbcglobal.net, b.lynneadams@yahoo.com

Ihor Alexander Woloshansky     ihorlawyer@hotmail.com

R Brian Woodward     rbwoodward@wbbklaw.com, carolb@wbbklaw.com

John Maksimovich     criminallaw@johnmaksimovich.com

Visvaldis P Kupsis     vpkupsis@hotmail.com

Sheldon B Nagelberg     sbnagelberglaw@att.net

John E Martin – FCD     john_martin@fd.org

Adam Tavitas     Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander     jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele     ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst     kre@braje–nelson.com

Bryan M Truitt     bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis    theislaw@aol.com

Robert L Rascia    rrascia@rascia−himel.com, ysierra@rascia−himel.com

Paul Jeffrey Schlesinger    pjeffslaw@aol.com

Matthew N Fech    mnf@fech−law.com

Pablo DeCastro    pdecastro@attorneydecastro.com, ysierra@rascia−decastro.com

Dean R Lanter − AUSA    dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick − AUSA    David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson    attorneyrmj@me.com

Bruce R Hegyi − AUSA    bruce.hegyi@usdoj.gov

**2:11−cr−00077−PPS−APR−13 Notice has been delivered by U.S. Mail or other means to:**

**2:11−cr−00077−PPS−APR−14 Notice has been electronically mailed to:**

David E Vandercoy    david.vandercoy@valpo.edu

Arlington J Foley    arlingtonfoley@att.net

Mark A Psimos    psimoslaw@airbaud.net

Scott L King    sking@scottkinggroup.com, dwilliams@scottkinggroup.com

James N Thiros    jim@thiros.com, liz@thiros.com, lynn@thiros.com

Thomas W Vanes    tom.vanes@sbcglobal.net, b.lynneadams@yahoo.com

Ihor Alexander Woloshansky    ihorlawyer@hotmail.com

R Brian Woodward    rbwoodward@wbbklaw.com, carolb@wbbklaw.com

John Maksimovich    criminallaw@johnmaksimovich.com

Visvaldis P Kupsis    vpkupsis@hotmail.com

Sheldon B Nagelberg    sbnagelberglaw@att.net

John E Martin − FCD    john_martin@fd.org

Adam Tavitas    Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander    jack@jackfriedlander.com, office@jackfriedlander.com

4039

Stephen Edward Scheele    ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst    kre@braje–nelson.com

Bryan M Truitt    bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis    theislaw@aol.com

Robert L Rascia    rrascia@rascia–himel.com, ysierra@rascia–himel.com

Paul Jeffrey Schlesinger    pjeffslaw@aol.com

Matthew N Fech    mnf@fech–law.com

Pablo DeCastro    pdecastro@attorneydecastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA    dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA    David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson    attorneyrmj@me.com

Bruce R Hegyi – AUSA    bruce.hegyi@usdoj.gov

**2:11–cr–00077–PPS–APR–14 Notice has been delivered by U.S. Mail or other means to:**

**2:11–cr–00077–PPS–APR–15 Notice has been electronically mailed to:**

David E Vandercoy    david.vandercoy@valpo.edu

Arlington J Foley    arlingtonfoley@att.net

Mark A Psimos    psimoslaw@airbaud.net

Scott L King    sking@scottkinggroup.com, dwilliams@scottkinggroup.com

James N Thiros    jim@thiros.com, liz@thiros.com, lynn@thiros.com

Thomas W Vanes    tom.vanes@sbcglobal.net, b.lynneadams@yahoo.com

Ihor Alexander Woloshansky    ihorlawyer@hotmail.com

R Brian Woodward    rbwoodward@wbbklaw.com, carolb@wbbklaw.com

John Maksimovich    criminallaw@johnmaksimovich.com

Visvaldis P Kupsis    vpkupsis@hotmail.com

Sheldon B Nagelberg    sbnagelberglaw@att.net

John E Martin – FCD    john_martin@fd.org

Adam Tavitas    Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander    jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele    ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst    kre@braje–nelson.com

Bryan M Truitt    bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis    theislaw@aol.com

Robert L Rascia    rrascia@rascia–himel.com, ysierra@rascia–himel.com

Paul Jeffrey Schlesinger    pjeffslaw@aol.com

Matthew N Fech    mnf@fech–law.com

Pablo DeCastro    pdecastro@attorneydecastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA    dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov,
janet.eisenmann@usdoj.gov

David J Nozick – AUSA    David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov,
janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson    attorneyrmj@me.com

Bruce R Hegyi – AUSA    bruce.hegyi@usdoj.gov

**2:11–cr–00077–PPS–APR–15 Notice has been delivered by U.S. Mail or other means to:**

**2:11–cr–00077–PPS–APR–16 Notice has been electronically mailed to:**

David E Vandercoy    david.vandercoy@valpo.edu

Arlington J Foley    arlingtonfoley@att.net

Mark A Psimos    psimoslaw@airbaud.net

Scott L King    sking@scottkinggroup.com, dwilliams@scottkinggroup.com

James N Thiros    jim@thiros.com, liz@thiros.com, lynn@thiros.com

Thomas W Vanes    tom.vanes@sbcglobal.net, b.lynneadams@yahoo.com

Ihor Alexander Woloshansky    ihorlawyer@hotmail.com

R Brian Woodward    rbwoodward@wbbklaw.com, carolb@wbbklaw.com

John Maksimovich     criminallaw@johnmaksimovich.com

Visvaldis P Kupsis     vpkupsis@hotmail.com

Sheldon B Nagelberg     sbnagelberglaw@att.net

John E Martin – FCD     john_martin@fd.org

Adam Tavitas     Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander     jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele     ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst     kre@braje–nelson.com

Bryan M Truitt     bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis     theislaw@aol.com

Robert L Rascia     rrascia@rascia–himel.com, ysierra@rascia–himel.com

Paul Jeffrey Schlesinger     pjeffslaw@aol.com

Matthew N Fech     mnf@fech–law.com

Pablo DeCastro     pdecastro@attorneydecastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA     dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov,
janet.eisenmann@usdoj.gov

David J Nozick – AUSA     David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov,
janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson     attorneyrmj@me.com

Bruce R Hegyi – AUSA     bruce.hegyi@usdoj.gov

**2:11–cr–00077–PPS–APR–16 Notice has been delivered by U.S. Mail or other means to:**

Thomas W Patton
Federal Community Defenders – PE/IL
401 Main St
Peoria, IL 61602

**2:11–cr–00077–PPS–APR–17 Notice has been electronically mailed to:**

David E Vandercoy     david.vandercoy@valpo.edu

Arlington J Foley     arlingtonfoley@att.net

Mark A Psimos    psimoslaw@airbaud.net

Scott L King    sking@scottkinggroup.com, dwilliams@scottkinggroup.com

James N Thiros    jim@thiros.com, liz@thiros.com, lynn@thiros.com

Thomas W Vanes    tom.vanes@sbcglobal.net, b.lynneadams@yahoo.com

Ihor Alexander Woloshansky    ihorlawyer@hotmail.com

R Brian Woodward    rbwoodward@wbbklaw.com, carolb@wbbklaw.com

John Maksimovich    criminallaw@johnmaksimovich.com

Visvaldis P Kupsis    vpkupsis@hotmail.com

Sheldon B Nagelberg    sbnagelberglaw@att.net

John E Martin – FCD    john_martin@fd.org

Adam Tavitas    Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander    jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele    ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst    kre@braje–nelson.com

Bryan M Truitt    bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis    theislaw@aol.com

Robert L Rascia    rrascia@rascia–himel.com, ysierra@rascia–himel.com

Paul Jeffrey Schlesinger    pjeffslaw@aol.com

Matthew N Fech    mnf@fech–law.com

Pablo DeCastro    pdecastro@attorneydecastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA    dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA    David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson    attorneyrmj@me.com

Bruce R Hegyi – AUSA    bruce.hegyi@usdoj.gov

**2:11–cr–00077–PPS–APR–17 Notice has been delivered by U.S. Mail or other means to:**

**2:11−cr−00077−PPS−APR−18 Notice has been electronically mailed to:**

David E Vandercoy     david.vandercoy@valpo.edu

Arlington J Foley     arlingtonfoley@att.net

Mark A Psimos     psimoslaw@airbaud.net

Scott L King     sking@scottkinggroup.com, dwilliams@scottkinggroup.com

James N Thiros     jim@thiros.com, liz@thiros.com, lynn@thiros.com

Thomas W Vanes     tom.vanes@sbcglobal.net, b.lynneadams@yahoo.com

Ihor Alexander Woloshansky     ihorlawyer@hotmail.com

R Brian Woodward     rbwoodward@wbbklaw.com, carolb@wbbklaw.com

John Maksimovich     criminallaw@johnmaksimovich.com

Visvaldis P Kupsis     vpkupsis@hotmail.com

Sheldon B Nagelberg     sbnagelberglaw@att.net

John E Martin − FCD     john_martin@fd.org

Adam Tavitas     Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander     jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele     ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst     kre@braje−nelson.com

Bryan M Truitt     bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis     theislaw@aol.com

Robert L Rascia     rrascia@rascia−himel.com, ysierra@rascia−himel.com

Paul Jeffrey Schlesinger     pjeffslaw@aol.com

Matthew N Fech     mnf@fech−law.com

Pablo DeCastro     pdecastro@attorneydecastro.com, ysierra@rascia−decastro.com

Dean R Lanter − AUSA     dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov,
janet.eisenmann@usdoj.gov

David J Nozick − AUSA     David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov,
janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson    attorneyrmj@me.com

Bruce R Hegyi – AUSA    bruce.hegyi@usdoj.gov

**2:11–cr–00077–PPS–APR–18 Notice has been delivered by U.S. Mail or other means to:**

**2:11–cr–00077–PPS–APR–19 Notice has been electronically mailed to:**

David E Vandercoy    david.vandercoy@valpo.edu

Arlington J Foley    arlingtonfoley@att.net

Mark A Psimos    psimoslaw@airbaud.net

Scott L King    sking@scottkinggroup.com, dwilliams@scottkinggroup.com

James N Thiros    jim@thiros.com, liz@thiros.com, lynn@thiros.com

Thomas W Vanes    tom.vanes@sbcglobal.net, b.lynneadams@yahoo.com

Ihor Alexander Woloshansky    ihorlawyer@hotmail.com

R Brian Woodward    rbwoodward@wbbklaw.com, carolb@wbbklaw.com

John Maksimovich    criminallaw@johnmaksimovich.com

Visvaldis P Kupsis    vpkupsis@hotmail.com

Sheldon B Nagelberg    sbnagelberglaw@att.net

John E Martin – FCD    john_martin@fd.org

Adam Tavitas    Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander    jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele    ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst    kre@braje–nelson.com

Bryan M Truitt    bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis    theislaw@aol.com

Robert L Rascia    rrascia@rascia–himel.com, ysierra@rascia–himel.com

Paul Jeffrey Schlesinger    pjeffslaw@aol.com

Matthew N Fech    mnf@fech–law.com

Pablo DeCastro    pdecastro@attorneydecastro.com, ysierra@rascia–decastro.com

4045

Dean R Lanter – AUSA     dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA     David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson     attorneyrmj@me.com

Bruce R Hegyi – AUSA     bruce.hegyi@usdoj.gov

**2:11−cr−00077−PPS−APR−19 Notice has been delivered by U.S. Mail or other means to:**

**2:11−cr−00077−PPS−APR−20 Notice has been electronically mailed to:**

David E Vandercoy     david.vandercoy@valpo.edu

Arlington J Foley     arlingtonfoley@att.net

Mark A Psimos     psimoslaw@airbaud.net

Scott L King     sking@scottkinggroup.com, dwilliams@scottkinggroup.com

James N Thiros     jim@thiros.com, liz@thiros.com, lynn@thiros.com

Thomas W Vanes     tom.vanes@sbcglobal.net, b.lynneadams@yahoo.com

Ihor Alexander Woloshansky     ihorlawyer@hotmail.com

R Brian Woodward     rbwoodward@wbbklaw.com, carolb@wbbklaw.com

John Maksimovich     criminallaw@johnmaksimovich.com

Visvaldis P Kupsis     vpkupsis@hotmail.com

Sheldon B Nagelberg     sbnagelberglaw@att.net

John E Martin – FCD     john_martin@fd.org

Adam Tavitas     Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander     jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele     ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst     kre@braje−nelson.com

Bryan M Truitt     bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis     theislaw@aol.com

Robert L Rascia     rrascia@rascia−himel.com, ysierra@rascia−himel.com

Paul Jeffrey Schlesinger    pjeffslaw@aol.com

Matthew N Fech    mnf@fech–law.com

Pablo DeCastro    pdecastro@attorneydecastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA    dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov,
janet.eisenmann@usdoj.gov

David J Nozick – AUSA    David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov,
janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson    attorneyrmj@me.com

Bruce R Hegyi – AUSA    bruce.hegyi@usdoj.gov

**2:11–cr–00077–PPS–APR–20 Notice has been delivered by U.S. Mail or other means to:**

**2:11–cr–00077–PPS–APR–21 Notice has been electronically mailed to:**

David E Vandercoy    david.vandercoy@valpo.edu

Arlington J Foley    arlingtonfoley@att.net

Mark A Psimos    psimoslaw@airbaud.net

Scott L King    sking@scottkinggroup.com, dwilliams@scottkinggroup.com

James N Thiros    jim@thiros.com, liz@thiros.com, lynn@thiros.com

Thomas W Vanes    tom.vanes@sbcglobal.net, b.lynneadams@yahoo.com

Ihor Alexander Woloshansky    ihorlawyer@hotmail.com

R Brian Woodward    rbwoodward@wbbklaw.com, carolb@wbbklaw.com

John Maksimovich    criminallaw@johnmaksimovich.com

Visvaldis P Kupsis    vpkupsis@hotmail.com

Sheldon B Nagelberg    sbnagelberglaw@att.net

John E Martin – FCD    john_martin@fd.org

Adam Tavitas    Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander    jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele    ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst    kre@braje–nelson.com

Bryan M Truitt     bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis     theislaw@aol.com

Robert L Rascia     rrascia@rascia−himel.com, ysierra@rascia−himel.com

Paul Jeffrey Schlesinger     pjeffslaw@aol.com

Matthew N Fech     mnf@fech−law.com

Pablo DeCastro     pdecastro@attorneydecastro.com, ysierra@rascia−decastro.com

Dean R Lanter − AUSA     dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov,
janet.eisenmann@usdoj.gov

David J Nozick − AUSA     David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov,
janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson     attorneyrmj@me.com

Bruce R Hegyi − AUSA     bruce.hegyi@usdoj.gov

**2:11−cr−00077−PPS−APR−21 Notice has been delivered by U.S. Mail or other means to:**

**2:11−cr−00077−PPS−APR−22 Notice has been electronically mailed to:**

David E Vandercoy     david.vandercoy@valpo.edu

Arlington J Foley     arlingtonfoley@att.net

Mark A Psimos     psimoslaw@airbaud.net

Scott L King     sking@scottkinggroup.com, dwilliams@scottkinggroup.com

James N Thiros     jim@thiros.com, liz@thiros.com, lynn@thiros.com

Thomas W Vanes     tom.vanes@sbcglobal.net, b.lynneadams@yahoo.com

Ihor Alexander Woloshansky     ihorlawyer@hotmail.com

R Brian Woodward     rbwoodward@wbbklaw.com, carolb@wbbklaw.com

John Maksimovich     criminallaw@johnmaksimovich.com

Visvaldis P Kupsis     vpkupsis@hotmail.com

Sheldon B Nagelberg     sbnagelberglaw@att.net

John E Martin − FCD     john_martin@fd.org

Adam Tavitas     Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander    jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele    ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst    kre@braje−nelson.com

Bryan M Truitt    bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis    theislaw@aol.com

Robert L Rascia    rrascia@rascia−himel.com, ysierra@rascia−himel.com

Paul Jeffrey Schlesinger    pjeffslaw@aol.com

Matthew N Fech    mnf@fech−law.com

Pablo DeCastro    pdecastro@attorneydecastro.com, ysierra@rascia−decastro.com

Dean R Lanter − AUSA    dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov,
janet.eisenmann@usdoj.gov

David J Nozick − AUSA    David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov,
janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson    attorneyrmj@me.com

Bruce R Hegyi − AUSA    bruce.hegyi@usdoj.gov

**2:11−cr−00077−PPS−APR−22 Notice has been delivered by U.S. Mail or other means to:**

**2:11−cr−00077−PPS−APR−23 Notice has been electronically mailed to:**

David E Vandercoy    david.vandercoy@valpo.edu

Arlington J Foley    arlingtonfoley@att.net

Mark A Psimos    psimoslaw@airbaud.net

Scott L King    sking@scottkinggroup.com, dwilliams@scottkinggroup.com

James N Thiros    jim@thiros.com, liz@thiros.com, lynn@thiros.com

Thomas W Vanes    tom.vanes@sbcglobal.net, b.lynneadams@yahoo.com

Ihor Alexander Woloshansky    ihorlawyer@hotmail.com

R Brian Woodward    rbwoodward@wbbklaw.com, carolb@wbbklaw.com

John Maksimovich    criminallaw@johnmaksimovich.com

Visvaldis P Kupsis    vpkupsis@hotmail.com

Sheldon B Nagelberg    sbnagelberglaw@att.net

John E Martin – FCD    john_martin@fd.org

Adam Tavitas    Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander    jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele    ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst    kre@braje–nelson.com

Bryan M Truitt    bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis    theislaw@aol.com

Robert L Rascia    rrascia@rascia–himel.com, ysierra@rascia–himel.com

Paul Jeffrey Schlesinger    pjeffslaw@aol.com

Matthew N Fech    mnf@fech–law.com

Pablo DeCastro    pdecastro@attorneydecastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA    dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov,
janet.eisenmann@usdoj.gov

David J Nozick – AUSA    David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov,
janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson    attorneyrmj@me.com

Bruce R Hegyi – AUSA    bruce.hegyi@usdoj.gov

**2:11–cr–00077–PPS–APR–23 Notice has been delivered by U.S. Mail or other means to:**

**2:11–cr–00077–PPS–APR–24 Notice has been electronically mailed to:**

David E Vandercoy    david.vandercoy@valpo.edu

Arlington J Foley    arlingtonfoley@att.net

Mark A Psimos    psimoslaw@airbaud.net

Scott L King    sking@scottkinggroup.com, dwilliams@scottkinggroup.com

James N Thiros    jim@thiros.com, liz@thiros.com, lynn@thiros.com

Thomas W Vanes    tom.vanes@sbcglobal.net, b.lynneadams@yahoo.com

Ihor Alexander Woloshansky    ihorlawyer@hotmail.com

R Brian Woodward    rbwoodward@wbbklaw.com, carolb@wbbklaw.com

John Maksimovich    criminallaw@johnmaksimovich.com

Visvaldis P Kupsis    vpkupsis@hotmail.com

Sheldon B Nagelberg    sbnagelberglaw@att.net

John E Martin – FCD    john_martin@fd.org

Adam Tavitas    Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander    jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele    ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst    kre@braje–nelson.com

Bryan M Truitt    bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis    theislaw@aol.com

Robert L Rascia    rrascia@rascia–himel.com, ysierra@rascia–himel.com

Paul Jeffrey Schlesinger    pjeffslaw@aol.com

Matthew N Fech    mnf@fech–law.com

Pablo DeCastro    pdecastro@attorneydecastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA    dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA    David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson    attorneyrmj@me.com

Bruce R Hegyi – AUSA    bruce.hegyi@usdoj.gov

**2:11–cr–00077–PPS–APR–24 Notice has been delivered by U.S. Mail or other means to:**

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Cause No.   2:11 CR 77 PPS |
| | ) | |
| JUAN BRISENO | ) | |

**GOVERNMENT'S SENTENCING MEMORANDUM**

Comes now the United States of America, by counsel, David Capp, United States Attorney for the Northern District of Indiana, and Assistant United States Attorney David J. Nozick, and files the following sentencing memorandum:

The defendant was convicted at trial of Count 1 (Conspiracy to Participate in Racketeering Activity), Count 2 (Conspiracy to possess with intent to distribute 100 kilograms or more of marijuana and 5 kilograms or more of cocaine), Counts 9, 13, 15, 19 and 21 (Murder in Aid of Racketeering), Count 23 (Attempted Murder in Aid of Racketeering) and Count 24 (Use of a Firearm During and in Relation to a Federal Crime of Violence). The Presentence Investigation Report (hereinafter "PSR"), determines that the total offense level is 43.   Based on a criminal history category of III, the guideline imprisonment range is life. In addition, Counts 9, 13, 15, 19 and 21 carry a mandatory term of life imprisonment.   Count 2 carries a ten year minimum mandatory sentence of imprisonment.   Count 24, which charges a violation of 18 U.S.C. § 924(c), carries a minimum mandatory term of ten years imprisonment, which must be served consecutive to any other sentence.

1

4052

By statute, the lowest prison sentence that this court can give the defendant is plus ten consecutive years in prison. However, the court does have the option to give the defendant consecutive terms of imprisonment for his offenses. Although it may not make any tangible difference in the defendant's ultimate sentence, the government will ask at sentencing that this court sentence the defendant to a term of five consecutive life sentences, to reflect the fact that the defendant killed five different people. This term of five consecutive life sentences would be followed by a consecutive term of ten years in prison, for the violation of 18 U.S.C. § 924(c).

In conclusion, the government respectfully requests that the Court sentence the defendant to five consecutive life sentence terms, followed by ten additional years imprisonment.

Respectfully submitted,

DAVID CAPP
UNITED STATES ATTORNEY

By:     /s/ David J. Nozick
        David J. Nozick
        Assistant United States Attorney
        5400 Federal Plaza, Suite 1500
        Hammond, Indiana 46320
        (219) 937-5500

2

4053

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | NO. 2:11 CR 77 PPS |
| | ) | |
| JUAN BRISENO | ) | |

CERTIFICATE OF SERVICE

The undersigned hereby certifies that the Government's Sentencing Memorandum was

electronically filed with the Clerk of the Court using the CM/ECF system which sent notification

of said filing to the following individuals:

ARLINGTON J. FOLEY
JOHN MAKSIMOVICH
Attorneys for defendant Juan Briseno

By:    /s/ Janet L. Eisenmann
       Janet L. Eisenmann
       U.S. Attorney's Office
       5400 Federal Plaza, Suite 1500
       Hammond, Indiana 46320
       (219) 937-5500

3

```
MIME-Version:1.0
From:CMECFinnd@innd.uscourts.gov
To:CMECFinnd@localhost.localdomain
Bcc:
--Case Participants: Pablo DeCastro (pdecastro@attorneydecastro.com,
ysierra@rascia-decastro.com), Kurt R Earnst (kre@braje-nelson.com), Matthew N Fech
(mnf@fech-law.com), Arlington J Foley (arlingtonfoley@att.net), Jack Friedlander
(jack@jackfriedlander.com, office@jackfriedlander.com), Bruce R Hegyi - AUSA
(bruce.hegyi@usdoj.gov), Roxanne Mendez Johnson (attorneyrmj@me.com), Scott L King
(dwilliams@scottkinggroup.com, sking@scottkinggroup.com), Visvaldis P Kupsis
(vpkupsis@hotmail.com), Dean R Lanter - AUSA (dean.lanter@usdoj.gov,
janet.eisenmann@usdoj.gov, usainn.ecfcivil@usdoj.gov), John Maksimovich
(criminallaw@johnmaksimovich.com), John E Martin - FCD (john_martin@fd.org), Sheldon B
Nagelberg (sbnagelberglaw@att.net), David J Nozick - AUSA (david.nozick@usdoj.gov,
janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov,
usainn.ecfcivil@usdoj.gov), Mark A Psimos (psimoslaw@airbaud.net), Robert L Rascia
(rrascia@rascia-himel.com, ysierra@rascia-himel.com), Stephen Edward Scheele
(pkd@gk4law.com, ses@gk4law.com), P Jeffrey Schlesinger (pjeffslaw@aol.com), Adam Tavitas
(adtavitas@aol.com, b.lynneadams@yahoo.com), John T Theis (theislaw@aol.com), James N
Thiros (jim@thiros.com, liz@thiros.com, lynn@thiros.com), Bryan M Truitt
(bryan@tblawyers.com, sherrie@tblawyers.com), David E Vandercoy
(david.vandercoy@valpo.edu), Thomas W Vanes (b.lynneadams@yahoo.com,
tom.vanes@sbcglobal.net), Ihor Alexander Woloshansky (ihorlawyer@hotmail.com), Richard C
Wolter (b.lynneadams@yahoo.com), R Brian Woodward (carolb@wbbklaw.com,
rbwoodward@wbbklaw.com), Magistrate Judge Andrew P Rodovich
(rodovich_chambers@innd.uscourts.gov, ruth_nagy@innd.uscourts.gov), Chief Judge Philip P
Simon (denise_woodside@innd.uscourts.gov, jacob_hamann@innd.uscourts.gov,
lauren_schwartz@innd.uscourts.gov, mira_serrill-robins@innd.uscourts.gov,
noel_collins@innd.uscourts.gov, philip_simon@innd.uscourts.gov)
--Non Case Participants: Matthew D Soliday (office@matthewsolidaylaw.com),
Probation/Pretrial Services (innpml_cmecf@innd.uscourts.gov), U S Marshal
(inn.docket-fw@usdoj.gov, inn.docket-sb@usdoj.gov, usms.27@usdoj.gov)
--No Notice Sent:

Message-Id:2792856@innd.uscourts.gov
Subject:Activity in Case 2:11-cr-00077-PPS-APR United States of America v. Briseno et al
Sentencing
Content-Type: text/html
```

### U.S. District Court Northern District of Indiana [LIVE]

### USDC Northern Indiana

### Notice of Electronic Filing

The following transaction was entered on 6/16/2015 at 4:29 PM EST and filed on 6/15/2015

| | |
|---|---|
| **Case Name:** | United States of America v. Briseno et al |
| **Case Number:** | 2:11-cr-00077-PPS-APR |
| **Filer:** | |
| **Document Number:** | 1663(No document attached) |

**Docket Text:**

 **SENTENCING held on 6/15/2015 for dft Juan Briseno before Chief Judge Philip P. Simon. Govt present by David Nozick, AUSA and Bruce Hegyi, AUSA. U.S. Probation Officer David Beier is in attendance. The dft is present in person and by counsel Arlington Foley and John Maksimovich. No objections to PSR. One victim is sworn and makes a statement to the court. Court hears from defense and govt, no stmt by the dft. The dft is sentenced on counts**

4055

**1,2,9,13,15,19,21,23 and 24 of the 4th Superseding Indictment: A term of LIFE on each of counts 9,13,15,19 and 21, to be served consecutive to one another. A term of LIFE on counts 1 and 2, which shall run concurrent with one another and concurrent with counts 9,13,15,19 and 21. Additionally the dft is sentenced to 120 months on Count 23 to be served concurrent with counts 1,2,9,13,15,19 and 21. On Count 24 the dft is sentenced to 120 months consecutive to the other counts. Court states reasons for the sentence imposed. No discretionary supervision conditions since dft has received a life sentence. If the dft is ever released the dft must report to the probation office in the district in which he is released within 48 hours and the probation officer shall at that time propose additional conditions that may be warranted based on the then existing state of affairs. Supervised Release of 5 years on counts 1,2,9,13,15,19,21 and 24 and a term of 3 years on count 23. These will be concurrent terms if the dft is ever released from custody. Special Assessment total of $900.00, due immediately. No fine imposed. Dft advised of rights to an appeal. Cnsl reminded of duty to perfect appeal, should client wish. Dft requests: (1) Confinement at USP Beaumont, Texas. (2) To have the order of non–contact with co–dfts lifted. (3) To be housed at MCC (Chicago, IL) until dft is moved to his permanent location. The Court will recommend placement at Beaumont, Texas in J&C. The USM will deal with the other two requests as they deem appropriate. Defendant REMANDED to custody of US Marshal.(Court Reporter Stacy Drohosky.) (nac)**


**2:11–cr–00077–PPS–APR–1 Notice has been electronically mailed to:**

David E Vandercoy     david.vandercoy@valpo.edu

Arlington J Foley     arlingtonfoley@att.net

Mark A Psimos     psimoslaw@airbaud.net

Scott L King     sking@scottkinggroup.com, dwilliams@scottkinggroup.com

James N Thiros     jim@thiros.com, liz@thiros.com, lynn@thiros.com

Thomas W Vanes     tom.vanes@sbcglobal.net, b.lynneadams@yahoo.com

Ihor Alexander Woloshansky     ihorlawyer@hotmail.com

R Brian Woodward     rbwoodward@wbbklaw.com, carolb@wbbklaw.com

John Maksimovich     criminallaw@johnmaksimovich.com

Visvaldis P Kupsis     vpkupsis@hotmail.com

Sheldon B Nagelberg     sbnagelberglaw@att.net

John E Martin – FCD     john_martin@fd.org

Adam Tavitas     Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander     jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele     ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst    kre@braje–nelson.com

Bryan M Truitt    bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis    theislaw@aol.com

Robert L Rascia    rrascia@rascia–himel.com, ysierra@rascia–himel.com

P Jeffrey Schlesinger    pjeffslaw@aol.com

Matthew N Fech    mnf@fech–law.com

Pablo DeCastro    pdecastro@attorneydecastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA    dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA    David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson    attorneyrmj@me.com

Bruce R Hegyi – AUSA    bruce.hegyi@usdoj.gov

**2:11–cr–00077–PPS–APR–1 Notice has been delivered by U.S. Mail or other means to:**

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**

| | |
|---|---|
| **UNITED STATES OF AMERICA**<br><br>            **Plaintiff,**<br><br>    **vs.**<br><br>**JUAN BRISENO**<br><br>            **Defendant.** | **CASE NUMBER: 2:11CR77-001**<br>**USM Number: 11190-027**<br><br><br>**ARLINGTON J FOLEY AND**<br>**JOHN MAKSIMOVICH**<br>**DEFENDANT'S ATTORNEYS** |

**JUDGMENT IN A CRIMINAL CASE**

**THE DEFENDANT** was found guilty on counts 1, 2, 9, 13, 15, 19, 21, 23 and 24 after a plea of not guilty. On 2/27/2015 the jury found the defendant guilty of those counts. On 3/6/2015, after the conclusion of the penalty phase, the jury found that the defendant should receive a term of life in prison rather than a sentence of death on counts 9, 13, 15, 19 and 21.

**ACCORDINGLY,** the court has adjudged that the defendant is guilty of the following offenses:

| Title, Section & Nature of Offense | Date Offense Ended | Count Number(s) |
|---|---|---|
| 18:1962(d) CONSPIRACY TO PARTICIPATE IN RACKETEERING ACTIVITY AND FORFEITURE ALLEGATION | June 2011 | 1ssss |
| 21:846 CONSPIRACY TO POSSESS WITH INTENT TO DISTRIBUTE COCAINE (5 KILO OR MORE) AND MARIJUANA (100 KILOS OR MORE) AND FORFEITURE ALLEGATIONS | June 2011 | 2ssss |
| 18:1959(a)(1) MURDER IN AID OF RACKETEERING ACTIVITY, 18:2 AIDING AND ABETTING AND 18:3591 AND 3592 SPECIAL FINDINGS | June 2011 | 9ssss |
| 18:1959(a)(1) MURDER IN AID OF RACKETEERING ACTIVITY, 18:2 AIDING AND ABETTING AND 18:3591 AND 3592 SPECIAL FINDINGS | June 2011 | 13ssss |
| 18:1959(a)(1) MURDER IN AID OF RACKETEERING ACTIVITY, 18:2 AIDING AND ABETTING AND 18:3591 AND 3592 SPECIAL FINDINGS | June 2011 | 15ssss |

4058

Case 2:11-cr-00077-PPS-APR   Document 1664   Filed 06/16/15   Page 2 of 4

| | | |
|---|---|---|
| 18:1959(a)(1) MURDER IN AID OF RACKETEERING ACTIVITY, 18:2 AIDING AND ABETTING AND 18:3591 AND 3592 SPECIAL FINDINGS | June 2011 | 19ssss |
| 18:1959(a)(1) MURDER IN AID OF RACKETEERING ACTIVITY, 18:2 AIDING AND ABETTING AND 18:3591 AND 3592 SPECIAL FINDINGS | June 2011 | 21ssss |
| 18:1959(a)(5) ATTEMPTED MURDER IN AID OF RACKETEERING ACTIVITY AND 18:2 AIDING AND ABETTING | June 2011 | 23ssss |
| 18:924(c) USE OF FIREARM DURING AND IN RELATION TO A CRIME OF VIOLENCE AND 18:2 AIDING AND ABETTING | June 2011 | 24ssss |

The defendant is sentenced as provided in pages 2 through 4 of this judgment.  The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

June 15, 2015
_____
Date of Imposition of Judgment

s/ Philip P. Simon
_____
Signature of Judge

Philip P. Simon, Chief United States District Judge
_____
Name and Title of Judge

June 16, 2015
_____
Date

2

## IMPRISONMENT

The defendant is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a term of **LIFE.  This term consists of the following:**
**A term of LIFE on each of counts 9, 13, 15, 19 and 21 to be served consecutive to one another. A term of LIFE on counts 1 and 2, which shall run concurrent with one another and concurrent with counts 9, 13, 15, 19 and 21.   Additionally the defendant is sentenced to 120 months on Count 23 to be served concurrent with counts 1, 2, 9, 13, 15, 19 and 21. On count 24 the defendant is sentenced to 120 months consecutive to the other counts.**

The Court makes the following recommendations to the Bureau of Prisons:

> That the defendant be incarcerated in the federal facility located at Beaumont, Texas.

The defendant is REMANDED to the custody of the United States Marshal.

## RETURN

I have executed this judgment as follows:

> Defendant delivered _____ to _____ at _____, with a certified copy of this judgment.

_____
UNITED STATES MARSHAL

By: _____
DEPUTY UNITED STATES MARSHAL

3

4060

# SUPERVISED RELEASE

Upon release from imprisonment, the defendant shall be on supervised release for a term of **5 years. This term consists of concurrent terms of 5 years of supervised release on counts 1, 2, 9, 13, 15, 19, 21 and 24 and a term of 3 years on count 23. These will all be concurrent terms if the defendant is ever released from custody.**

The defendant shall not commit another federal, state or local crime.

The defendant shall not unlawfully use, possess, or distribute a controlled substance.

The defendant shall submit to one drug test within 15 days of release from imprisonment and two (2) periodic drug tests thereafter, as determined by the Court.

The defendant shall cooperate in the collection of DNA as directed by the probation officer.

NOTE:  Since the defendant has been sentenced to a term of life, no discretionary conditions have been imposed by the court.  If the defendant is ever released, the defendant must report to the probation office in the district in which he is released within 48 hours and the probation officer shall at that time propose additional conditions that may be warranted based on the then existing state of affairs.

# CRIMINAL MONETARY PENALTIES

The defendant shall pay the following total criminal monetary penalties in accordance with the schedule of payments set forth in this judgment.

| Total Assessment | Total Fine | Total Restitution |
| --- | --- | --- |
| $900.00 | NONE | NONE |

The defendant shall make the special assessment payment payable to Clerk, U.S. District Court, 5400 Federal Plaza, Suite 2300, Hammond, IN 46320. The special assessment payment shall be due immediately.

# FINE

No fine imposed.

# RESTITUTION

No restitution imposed.

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

**UNITED STATES OF AMERICA,**

      **Plaintiff**

**v.**

**JUAN BRISENO,**

      **Defendant**                         **CAUSE NO:**   **2:11-CR-77**

**NOTICE OF APPEAL**

Notice is hereby given that, Juan Briseno, the above-named defendant, hereby appeals to the United States Court of Appeals for the Seventh Circuit from the Judgment In A Criminal Case and Sentence imposed thereon and entered of record on the District Court's docket on the 16th day of June, 2015.

**Respectfully submitted:**

/s/ *Arlington Foley*

_____

Arlington Foley /#6905-45
Attorney For Defendant
1942 North Main Street
Crown Point, IN 46307
PH: 219.661.1200
FX: 219.661.1205

/s/ *John Maksimovich*

_____

John Maksimovich /#9950-45
Attorney For Defendant
1946 North Main Street
Crown Point, IN 46307
PH: 219.663.1900
FX: 219.663.1908

4062

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

UNITED STATES OF AMERICA,

        **Plaintiff**

v.

JUAN BRISENO,

        **Defendant**                    **CAUSE NO:    2:11-CR-77**

CERTIFICATE OF SERVICE

I hereby certify that on June 22, 2015, I electronically filed:

*Notice of Appeal*

with the Clerk of the Court using the CM/ECF system, which sent notification of such filing to the following:

David J. Nozick                                 Bruce Hegyi
Assistant U.S. Attorney                        Assistant U.S. Attorney

and I hereby certify that I have mailed by United States Postal Service, the document to the following non-CM/ECF participants:

        N/A

By:   /s/ *John Maksimovich*

John Maksimovich /#9950-45
Attorney For Defendant
1946 North Main Street
Crown Point, IN 46307
PH: 219.663.1900
FX: 219.663.1908

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

|  |  |
|---|---|
| **UNITED STATES OF AMERICA,** | |
| **Plaintiff** | |
| **v.** | |
| **JUAN BRISENO,** | |
| **Defendant** | **CAUSE NO:   2:11-CR-77** |

### CIRCUIT RULE 3 (C)(1) DOCKETING STATEMENT

Comes now the Defendant, Juan Briseno, by counsel John Maksimovich and Arlington Foley, and represents the following to the Court:

1.      On February 27, 2015, Juan Briseno was convicted by jury of having committed the following  federal criminal offenses: Count 1, Conspiracy to Participate in Racketeering Activity, and Forfeiture Allegation in violation of *Title 18, United States Code, §§1962(d)*, Count 2, Conspiracy to Possess With Intent to Distribute 5 Kilograms or more of Cocaine and 100 Kilograms or more of Marijuana and Forfeiture Allegation in violation of *Title 21, United States Code § 846,* Counts 9, 13,15, 19, 21, Murder in Aid of Racketeering Activity in violation of *Title 18, United States Code §§1959(a)(1),* and *2* and Special Findings pursuant to *Title 18, United States Code §§3591 and 3592,* Count 23 Attempted Murder in Aid of Racketeering Activity in violation of *Title 18, United States Code §§1959(a)(5) and 2*, and Count 24, Use of a Firearm During and in Relation to a Crime of Violence in violation of *Title 18, United States Code §§924( c) and 2.*

2.      On June 16, 2015, Briseno  was committed to the custody of the United States Bureau of Prisons to be imprisoned for a term of life consisting of a term of LIFE on each of Counts 9, 13, 15, 19, and 21 to be served consecutive to one another.  A term of LIFE on Counts 1 and 2, which shall run concurrent with one another and concurrent with Counts 9, 13, 15, 19

-1-

and 21. Additionally, Briseno is sentenced to 120 months on Count 23 to be serve concurrent with Counts 1, 2, 9, 13, 15, 19, and 21 and on Count 24 Briseno is sentenced to 120 months consecutive to the other counts.

3.       Briseno appeals from a Judgement in a Criminal Case and Sentence imposed thereon and entered of record on the District Court's docket on June 16, 2015.

4.       On June 22, 2015, Briseno filed his Notice of Appeal with the Clerk of the United States District Court for the Northern District of Indiana, Hammond Division.

5.       The District Court's jurisdiction is based on *Title 18, United States Code §3231* giving District Courts of the United States original jurisdiction, exclusive of the courts of the States, of all offenses against the laws of the United States.

6.       The Seventh Circuit Court of Appeals jurisdiction is based on *Title 28, United States Code §1291*, which gives Appellate Courts jurisdiction of appeals from final decisions of District Courts and *Title 18, United States Code §3742(a)*, which gives Courts of Appeals jurisdiction in appeals from sentences for offenses occurring after November 1, 1987.

7.       Defendant is currently incarcerated by the Federal Bureau of Prisons in the Jerome Combs Detention Center, 3050 Justice Way, Kankakee, Illinois 60901.

**WHEREFORE**, Defendant, Juan Briseno, respectfully requests that this Circuit Rule 3(C)(1) Docketing Statement be properly filed with the Court and entered of record along with Defendant's Notice of Appeal filed June 22, 2015.

**Respectfully submitted:**

/s/ *Arlington Foley*

Arlington Foley /#6905-45
Attorney For Defendant
1942 North Main Street
Crown Point, IN 46307
PH: 219.661.1200
FX: 219.661.1205

/s/ *John Maksimovich*

John Maksimovich /#9950-45
Attorney For Defendant
1946 North Main Street
Crown Point, IN 46307
PH: 219.663.1900
FX: 219.663.1908

-2-

4065

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | |
|      **Plaintiff** | |
| **v.** | |
| **JUAN BRISENO,** | |
|      **Defendant** | **CAUSE NO:   2:11-CR-77** |

## CERTIFICATE OF SERVICE

I hereby certify that on June 22, 2015, I electronically filed:

### CIRCUIT RULE 3 (C)(1) DOCKETING STATEMENT

with the Clerk of the Court using the CM/ECF system, which sent notification of such filing to the following:

| | |
|---|---|
| David J. Nozick | Bruce Hegyi |
| Assistant U.S. Attorney | Assistant U. S. Attorney |

and I hereby certify that I have mailed by United States Postal Service, the document to the following non-CM/ECF participants:

    N/A

By:   /s/ *John Maksimovich*

    John Maksimovich /#9950-45
    Attorney For Defendant
    1946 North Main Street
    Crown Point, IN 46307
    PH: 219.663.1900
    FX: 219.663.1908

-3-

# U.S. District Court Northern District of Indiana [LIVE]
## USDC Northern Indiana (Hammond)
## CRIMINAL DOCKET FOR CASE #: 2:11−cr−00077−PPS−APR−1
### *Internal Use Only*

Case title: United States of America v. Briseno et al

Date Filed: 06/02/2011
Date Terminated: 06/16/2015

Assigned to: Chief Judge Philip P
Simon
Referred to: Magistrate Judge
Andrew P Rodovich

## Defendant (1)

**Juan Briseno**
*TERMINATED: 06/16/2015*
*also known as*
Tito
*TERMINATED: 06/16/2015*

represented by **Arlington J Foley**
Attorney at Law
1942 North Main Street
Crown Point, IN 46307
219−661−1200
Fax: 219−661−1205
Email: arlingtonfoley@att.net
*ATTORNEY TO BE NOTICED*
*Designation: CJA Appointment*

**John Maksimovich**
1946 North Main Street
Crown Point, IN 46307
219−663−1900
Fax: 219−663−1908
Email: criminallaw@johnmaksimovich.com
*ATTORNEY TO BE NOTICED*
*Designation: CJA Appointment*

## Pending Counts

18:1962(d) CONSPIRACY TO
PARTICIPATE IN
RACKETEERING ACTIVITY
AND FORFEITURE
ALLEGATION
(1ssss)

## Disposition

A term of LIFE. This term consists of the
following: A term of LIFE on each of counts
9,13,15,19 and 21, to be served consecutive to one
another. A term of LIFE on counts 1 and 2,which
shall run concurrent with one another and
concurrent with counts 9,13,15,19 and 21.
Additionally the dft is sentenced to 120 months on
Count 23 to be served concurrent with counts
1,2,9,13,15, 19 and 21. On Count 24 the dft is
sentenced to 120 months consecutive to the other
counts.

Fourth Superseding Indictment filed.

| | |
|---|---|
| 21:846 CONSPIRACY TO POSSESS WITH INTENT TO DISTRIBUTE COCAINE (5 KILO OR MORE) AND MARIJUANA (100 KILOS OR MORE) (2sss) | |
| 21:846 CONSPIRACY TO POSSESS WITH INTENT TO DISTRIBUTE COCAINE (5 KILO OR MORE) AND MARIJUANA (100 KILOS OR MORE) AND FORFEITURE ALLEGATIONS (2ssss) | A term of LIFE. This term consists of the following: A term of LIFE on each of counts 9,13,15,19 and 21, to be served consecutive to one another. A term of LIFE on counts 1 and 2,which shall run concurrent with one another and concurrent with counts 9,13,15,19 and 21. Additionally the dft is sentenced to 120 months on Count 23 to be served concurrent with counts 1,2,9,13,15, 19 and 21. On Count 24 the dft is sentenced to 120 months consecutive to the other counts. |
| 18:924(c) AND 924(j) MURDER RESULTING FROM USE AND CARRYING OF FIREARM DURING AND IN RELATION TO A CRIME OF VIOLENCE , 18:2 AIDING AND ABETTING AND 18:3591 AND 3592 DEATH PENALTY (3s) | Fourth Superseding Indictment filed (which did not include a count 3 for dft Juan Briseno). |
| 18:1959(a)(1) MURDER IN AID OF RACKETEERING ACTIVITY, 18:2 AIDING AND ABETTING AND 18:3591 AND 3592 DEATH PENALTY (4s) | Fourth Superseding Indictment filed (which did not include a count 4 for dft Juan Briseno). |
| 18:1959(a)(1) MURDER IN AID OF RACKETEERING ACTIVITY, 18:2 AIDING AND ABETTING AND 18:3591 AND 3592 SPECIAL FINDINGS (4ss) | Fourth Superseding Indictment filed (which did not include a count 4 for dft Juan Briseno). |
| 18:924(c) AND 924(j) MURDER RESULTING FROM USE AND CARRYING OF FIREARM DURING AND IN RELATION TO A CRIME OF VIOLENCE , 18:2 AIDING AND ABETTING AND 18:3591 AND 3592 DEATH PENALTY (5s) | Fourth Superseding Indictment filed (which did not include a count 5 for dft Juan Briseno). |
| 18:924( c) AND 924(j) MURDER RESULTING FROM THE USE | Fourth Superseding Indictment filed (which did not include a count 5 for dft Juan Briseno). |

2

AND CARRYING OF FIREARM
DURING AND IN RELATION TO
A CRIME OF VIOLENCE, 18:2
AIDING AND ABETTING AND
18:3591 AND 3592 SPECIAL
FINDINGS
(5ss)

18:1959(a)(1) MURDER IN AID
OF RACKETEERING ACTIVITY,
18:2 AIDING AND ABETTING
AND 18:3591 AND 3592 DEATH
PENALTY
(6s)

Fourth Superseding Indictment filed (which did
not include a count 6 for dft Juan Briseno).

18:1959(a)(1) MURDER IN AID
OF RACKETEERING ACTIVITY,
18:2 AIDING AND ABETTING
18:3591 AND 3592 SPECIAL
FINDINGS
(6ss)

Fourth Superseding Indictment filed (which did
not include a count 6 for dft Juan Briseno).

18:924(c) AND 924(j) MURDER
RESULTING FROM USE AND
CARRYING OF FIREARM
DURING AND IN RELATION TO
A CRIME OF VIOLENCE , 18:2
AIDING AND ABETTING AND
18:3591 AND 3592 DEATH
PENALTY
(7s)

Fourth Superseding Indictment filed (which did
not include a count 7 for dft Juan Briseno).

18:924( c) AND 924(j) MURDER
RESULTING FROM THE USE
AND CARRYING OF FIREARM
DURING AND IN RELATION TO
A CRIME OF VIOLENCE, 18:2
AIDING AND ABETTING AND
18:3591 AND 3592 SPECIAL
FINDINGS
(7ss)

Fourth Superseding Indictment filed (which did
not include a count 7 for dft Juan Briseno).

18:1959(a)(1) MURDER IN AID
OF RACKETEERING ACTIVITY,
18:2 AIDING AND ABETTING
AND 18:3591 AND 3592 DEATH
PENALTY
(8s)

Fourth Superseding Indictment filed (which did
not include a count 8 for dft Juan Briseno).

18:1959(a)(1) MURDER IN AID
OF RACKETEERING ACTIVITY,
18:2 AIDING AND ABETTING
AND 18:3591 AND 3592 SPECIAL
FINDINGS
(8ss)

Fourth Superseding Indictment filed (which did
not include a count 8 for dft Juan Briseno).

3

18:1959(a)(1) MURDER IN AID OF RACKETEERING ACTIVITY, 18:2 AIDING AND ABETTING AND 18:3591 AND 3592 SPECIAL FINDINGS
(9ssss)

A term of LIFE. This term consists of the following: A term of LIFE on each of counts 9,13,15,19 and 21, to be served consecutive to one another. A term of LIFE on counts 1 and 2,which shall run concurrent with one another and concurrent with counts 9,13,15,19 and 21. Additionally the dft is sentenced to 120 months on Count 23 to be served concurrent with counts 1,2,9,13,15, 19 and 21. On Count 24 the dft is sentenced to 120 months consecutive to the other counts.

18:924( c) AND 924(j) MURDER RESULTING FROM THE USE AND CARRYING OF FIREARM DURING AND IN RELATION TO A CRIME OF VIOLENCE 18:2 AIDING AND ABETTING AND 18:3591 AND 3592 SPECIAL FINDINGS
(11ss)

Fourth Superseding Indictment filed (which did not include a count 11 for dft Juan Briseno).

18:1959(a)(1) MURDER IN AID OF RACKETEERING ACTIVITY, 18:2 AIDING AND ABETTING
(11sss)

Fourth Superseding Indictment filed (which did not include a count 11 for dft Juan Briseno).

18:924(c) AND 924(j) MURDER RESULTING FROM USE AND CARRYING OF FIREARM DURING AND IN RELATION TO A CRIME OF VIOLENCE , 18:2 AIDING AND ABETTING
(12sss)

Fourth Superseding Indictment filed (which did not include a count 12 for dft Juan Briseno).

18:1959(a)(1) MURDER IN AID OF RACKETEERING ACTIVITY, 18:2 AIDING AND ABETTING AND 18:3591 AND 3592 SPECIAL FINDINGS
(13ssss)

A term of LIFE. This term consists of the following: A term of LIFE on each of counts 9,13,15,19 and 21, to be served consecutive to one another. A term of LIFE on counts 1 and 2,which shall run concurrent with one another and concurrent with counts 9,13,15,19 and 21. Additionally the dft is sentenced to 120 months on Count 23 to be served concurrent with counts 1,2,9,13,15, 19 and 21. On Count 24 the dft is sentenced to 120 months consecutive to the other counts.

18:1959(a)(1) MURDER IN AID OF RACKETEERING ACTIVITY, 18:2 AIDING AND ABETTING AND 18:3591 AND 3592 SPECIAL FINDINGS
(15ssss)

A term of LIFE. This term consists of the following: A term of LIFE on each of counts 9,13,15,19 and 21, to be served consecutive to one another. A term of LIFE on counts 1 and 2,which shall run concurrent with one another and concurrent with counts 9,13,15,19 and 21. Additionally the dft is sentenced to 120 months on Count 23 to be served concurrent with counts

4

|  |  |
|---|---|
|  | 1,2,9,13,15, 19 and 21. On Count 24 the dft is sentenced to 120 months consecutive to the other counts. |
| 18:924(c) USE OF FIREARM DURING AND IN RELATION TO A FEDERAL CRIME OF VIOLENCE AND 18:2 AIDING AND ABETTING (19ss) | Fourth Superseding Indictment filed. |
| 18:1959(a)(1) MURDER IN AID OF RACKETEERING ACTIVITY, 18:2 AIDING AND ABETTING AND 18:3591 AND 3592 SPECIAL FINDINGS (19ssss) | A term of LIFE. This term consists of the following: A term of LIFE on each of counts 9,13,15,19 and 21, to be served consecutive to one another. A term of LIFE on counts 1 and 2,which shall run concurrent with one another and concurrent with counts 9,13,15,19 and 21. Additionally the dft is sentenced to 120 months on Count 23 to be served concurrent with counts 1,2,9,13,15, 19 and 21. On Count 24 the dft is sentenced to 120 months consecutive to the other counts. |
| 18:1959(a)(1) MURDER IN AID OF RACKETEERING ACTIVITY, 18:2 AIDING AND ABETTING AND 18:3591 AND 3592 SPECIAL FINDINGS (21ssss) | A term of LIFE. This term consists of the following: A term of LIFE on each of counts 9,13,15,19 and 21, to be served consecutive to one another. A term of LIFE on counts 1 and 2,which shall run concurrent with one another and concurrent with counts 9,13,15,19 and 21. Additionally the dft is sentenced to 120 months on Count 23 to be served concurrent with counts 1,2,9,13,15, 19 and 21. On Count 24 the dft is sentenced to 120 months consecutive to the other counts. |
| 18:924(c) AND 924(j) MURDER RESULTING FROM USE AND CARRYING OF FIREARM DURING AND IN RELATION TO A CRIME OF VIOLENCE , 18:2 AIDING AND ABETTING AND 18:3591 AND 3592 SPECIAL FINDINGS (22ssss) | Motion for dismissal of counts 10, 14, 16, 18, 20 and 22 of the Fourth Superseding Indictment is GRANTED by the Court as to Juan Briseno. |
| 18:1959(a)(5) ATTEMPTED MURDER IN AID OF RACKETEERING ACTIVITY AND 18:2 AIDING AND ABETTING (23ssss) | A term of LIFE. This term consists of the following: A term of LIFE on each of counts 9,13,15,19 and 21, to be served consecutive to one another. A term of LIFE on counts 1 and 2,which shall run concurrent with one another and concurrent with counts 9,13,15,19 and 21. Additionally the dft is sentenced to 120 months on Count 23 to be served concurrent with counts 1,2,9,13,15, 19 and 21. On Count 24 the dft is sentenced to 120 months consecutive to the other |

5

counts.

A term of LIFE. This term consists of the following: A term of LIFE on each of counts 9,13,15,19 and 21, to be served consecutive to one another. A term of LIFE on counts 1 and 2,which shall run concurrent with one another and concurrent with counts 9,13,15,19 and 21. Additionally the dft is sentenced to 120 months on Count 23 to be served concurrent with counts 1,2,9,13,15, 19 and 21. On Count 24 the dft is sentenced to 120 months consecutive to the other counts.

18:924(c) USE OF FIREARM DURING AND IN RELATION TO A CRIME OF VIOLENCE AND 18:2 AIDING AND ABETTING (24ssss)

18:924(c) USE OF FIREARM DURING AND IN RELATION TO A FEDERAL CRIME OF VIOLENCE AND DRUG TRAFFICKING CRIME AND 18:2 AIDING AND ABETTING (31sss)

Fourth Superseding Indictment filed (which did not include a count 31 for dft Juan Briseno).

18:1959(a)(5) ATTEMPTED MURDER IN AID OF RACKETEERING ACTIVITY AND 18:2 AIDING AND ABETTING (34sss)

Fourth Superseding Indictment filed (which did not include a count 34 for dft Juan Briseno).

18:924(c) USE OF FIREARM DURING AND IN RELATION TO A FEDERAL CRIME OF VIOLENCE AND 18:2 AIDING AND ABETTING (35sss)

Fourth Superseding Indictment filed (which did not include a count 35 for dft Juan Briseno).

**Highest Offense Level (Opening)**

Felony

| **Terminated Counts** | **Disposition** |
| --- | --- |
| 18:1959(a)(1) RACKETEERING ACTIVITY /MURDER/KIDNAPPING (1) | Fourth Superseding Indictment filed. |
| 18:1962(d) CONSPIRACY TO PARTICIPATE IN RACKETEERING ACTIVITY (1s) | Fourth Superseding Indictment filed. |
| 18:1962(d) CONSPIRACY TO PARTICIPATE IN RACKETEERING ACTIVITY | Fourth Superseding Indictment filed. |

6

(1ss)

| | |
|---|---|
| 18:1962(d) CONSPIRACY TO PARTICIPATE IN RACKETEERING ACTIVITY (1sss) | Fourth Superseding Indictment filed. |
| 18:924(c)(1)(A) and (j) VIOLENT CRIME/DRUGS/MACHINE GUN WHERE DEATH OCCURS (2) | Fourth Superseding Indictment filed. |
| 18:1959(a)(1) MURDER IN AID OF RACKETEERING ACTIVITY, 18:2 AIDING AND ABETTING AND 18:3591 AND 3592 DEATH PENALTY (2s) | Fourth Superseding Indictment filed. |
| 18:924(c) AND 924(j) MURDER RESULTING FROM USE AND CARRYING OF FIREARM DURING AND IN RELATION TO A CRIME OF VIOLENCE , 18:2 AIDING AND ABETTING AND 18:3591 AND 3592 DEATH PENALTY (9s) | Fourth Superseding Indictment filed. |
| 18:924( c) AND 924(j) MURDER RESULTING FROM THE USE AND CARRYING OF FIREARM DURING AND IN RELATION TO A CRIME OF VIOLENCE, 18:2 AIDING AND ABETTING AND 18:3591 AND 3592 SPECIAL FINDINGS (9ss) | Fourth Superseding Indictment filed. |
| 18:1959(a)(1) MURDER IN AID OF RACKETEERING ACTIVITY, 18:2 AIDING AND ABETTING AND 18:3591 AND 3592 SPECIAL FINDINGS (10ss) | Fourth Superseding Indictment filed. (Motion to Dismiss Count 10 filed by the Govt). |
| 18:924(c) AND 924(j) MURDER RESULTING FROM USE AND CARRYING OF FIREARM DURING AND IN RELATION TO A CRIME OF VIOLENCE , 18:2 AIDING AND ABETTING AND 18:3591 AND 3592 SPECIAL FINDINGS (10ssss) | Motion for dismissal of counts 10, 14, 16, 18, 20 and 22 of the Fourth Superseding Indictment is GRANTED by the Court as to Juan Briseno. |

7

| | |
|---|---|
| 18:1959(a)(1) MURDER IN AID OF RACKETEERING ACTIVITY, 18:2 AIDING AND ABETTING AND 18:3591 AND 3592 DEATH PENALTY (13s) | Fourth Superseding Indictment filed. |
| 18:924(c) AND 924(j) MURDER RESULTING FROM USE AND CARRYING OF FIREARM DURING AND IN RELATION TO A CRIME OF VIOLENCE , 18:2 AIDING AND ABETTING AND 18:3591 AND 3592 DEATH PENALTY (14s) | 4th Superseding Indictment filed. (Motion for dismissal of count 14 fld by the Govt). |
| 18:924(c) AND 924(j) MURDER RESULTING FROM USE AND CARRYING OF FIREARM DURING AND IN RELATION TO A CRIME OF VIOLENCE , 18:2 AIDING AND ABETTING AND 18:3591 AND 3592 SPECIAL FINDINGS (14ssss) | Motion for dismissal of counts 10, 14, 16, 18, 20 and 22 of the Fourth Superseding Indictment is GRANTED by the Court as to Juan Briseno. |
| 18:1959(a)(1) MURDER IN AID OF RACKETEERING ACTIVITY, 18:2 AIDING AND ABETTING AND (15ss) | Fourth Superseding Indictment filed. |
| 18:1959(a)(1) MURDER IN AID OF RACKETEERING ACTIVITY, 18:2 AIDING AND ABETTING (15sss) | Fourth Superseding Indictment filed. |
| 18:924( c) AND 924(j) MURDER RESULTING FROM THE USE AND CARRYING OF FIREARM DURING AND IN RELATION TO A CRIME OF VIOLENCE, 18:2 AIDING AND ABETTING (16ss) | 4th Superseding Indictment filed. (Motion to Dismiss count 16 filed by the Govt). |
| 18:924(c) AND 924(j) MURDER RESULTING FROM USE AND CARRYING OF FIREARM DURING AND IN RELATION TO A CRIME OF VIOLENCE , 18:2 AIDING AND ABETTING (16sss) | 4th Superseding Indictment filed. (Motion to Dismiss count 16 filed by the Govt). |
| 18:924(c) AND 924(j) MURDER RESULTING FROM USE AND | Motion for dismissal of counts 10, 14, 16, 18, 20 and 22 of the Fourth Superseding Indictment is |

8

| | |
|---|---|
| CARRYING OF FIREARM DURING AND IN RELATION TO A CRIME OF VIOLENCE , 18:2 AIDING AND ABETTING AND 18:3591 AND 3592 SPECIAL FINDINGS (16ssss) | GRANTED by the Court as to Juan Briseno. |
| 18:1959(a)(1) MURDER IN AID OF RACKETEERING ACTIVITY, 18:2 AIDING AND ABETTING (17sss) | Fourth Superseding Indictment filed (which did not include a count 17 for dft Juan Briseno). |
| 18:1959(a)(1) MURDER IN AID OF RACKETEERING ACTIVITY, 18:2 AIDING AND ABETTING AND 18:3591 AND 3592 SPECIAL FINDINGS (17ssss) | Fourth Superseding Indictment filed (which did not include a count 17 for dft Juan Briseno). |
| 18:1959(a)(5) ATTEMPTED MURDER IN AID OF RACKETEERING ACTIVITY, 18:2 AIDING AND ABETTING AND 18:3591 AND 3592 SPECIAL FINDINGS (18ss) | 4th Superseding Indictment filed. (Motion to Dismiss count 18 filed by the Govt). |
| 18:924(c) AND 924(j) MURDER RESULTING FROM USE AND CARRYING OF FIREARM DURING AND IN RELATION TO A CRIME OF VIOLENCE , 18:2 AIDING AND ABETTING AND 18:3591 AND 3592 SPECIAL FINDINGS (18sss) | 4th Superseding Indictment filed. (Motion to Dismiss count 18 filed by the Govt). |
| 18:924(c) AND 924(j) MURDER RESULTING FROM USE AND CARRYING OF FIREARM DURING AND IN RELATION TO A CRIME OF VIOLENCE , 18:2 AIDING AND ABETTING AND 18:3591 AND 3592 SPECIAL FINDINGS (18ssss) | Motion for dismissal of counts 10, 14, 16, 18, 20 and 22 of the Fourth Superseding Indictment is GRANTED by the Court as to Juan Briseno. |
| 18:1959(a)(1) MURDER IN AID OF RACKETEERING ACTIVITY, 18:2 AIDING AND ABETTING (19sss) | Fourth Superseding Indictment filed. |
| 18:924(c) AND 924(j) MURDER RESULTING FROM USE AND CARRYING OF FIREARM | 4th Superseding Indictment filed. (Motion to Dismiss count 20 filed by the Govt). |

9

DURING AND IN RELATION TO
A CRIME OF VIOLENCE , 18:2
AIDING AND ABETTING
(20sss)

18:924(c) AND 924(j) MURDER
RESULTING FROM USE AND
CARRYING OF FIREARM
DURING AND IN RELATION TO
A CRIME OF VIOLENCE , 18:2
AIDING AND ABETTING AND
18:3591 AND 3592 SPECIAL
FINDINGS
(20ssss)

Motion for dismissal of counts 10, 14, 16, 18, 20
and 22 of the Fourth Superseding Indictment is
GRANTED by the Court as to Juan Briseno.

18:1959(a)(1) MURDER IN AID
OF RACKETEERING ACTIVITY,
18:2 AIDING AND ABETTING
(21sss)

Fourth Superseding Indictment filed.

18:924(c) AND 924(j) MURDER
RESULTING FROM USE AND
CARRYING OF FIREARM
DURING AND IN RELATION TO
A CRIME OF VIOLENCE , 18:2
AIDING AND ABETTING
(22sss)

4th Superseding Indictment filed. (Motion to
Dismiss count 22 filed by the Govt).

18:1959(a)(1) MURDER IN AID
OF RACKETEERING ACTIVITY,
18:2 AIDING AND ABETTING
(23sss)

Fourth Superseding Indictment filed.

18:924(c) AND 924(j) MURDER
RESULTING FROM USE AND
CARRYING OF FIREARM
DURING AND IN RELATION TO
A CRIME OF VIOLENCE , 18:2
AIDING AND ABETTING
(24sss)

Fourth Superseding Indictment filed.

18:1959(a)(5) ATTEMPTED
MURDER IN AID OF
RACKETEERING ACTIVITY
AND 18:2 AIDING AND
ABETTING
(25ssss)

DISMISSED by the Court upon Motion for Jdgmt
of Acquital at trial as to Juan Briseno.

21:846 CONSPIRACY TO
DISTRIBUTE MARIJUANA
(26ss)

Fourth Superseding Indictment filed (which did
not include a count 26 for dft Juan Briseno).

18:1959(a)(5) ATTEMPTED
MURDER IN AID OF
RACKETEERING ACTIVITY,
18:2 AIDING AND ABETTING

Fourth Superseding Indictment filed (which did
not include a count 26 for dft Juan Briseno).

10

(26sss)

| | |
|---|---|
| 18:924(c) USE OF FIREARM DURING AND IN RELATION TO A CRIME OF VIOLENCE AND 18:2 AIDING AND ABETTING (26ssss) | DISMISSED by the Court upon Motion for Jdgmt of Acquital at trial as to Juan Briseno. |
| 18:924(c) USE OF FIREARM DURING AND IN RELATION TO A FEDERAL CRIME OF VIOLENCE AND DRUG TRAFFICING CRIME AND 18:2 AIDING AND ABETTING (27sss) | Fourth Superseding Indictment filed (which did not include a count 27 for dft Juan Briseno). |
| 18:1959(a)(5) ATTEMPTED MURDER IN AID OF RACKETEERING ACTIVITY AND 18:2 AIDING AND ABETTING (27ssss) | Fourth Superseding Indictment filed (which did not include a count 27 for dft Juan Briseno). |
| 18:1959(a)(5) ATTEMPTED MURDER IN AID OF RACKETEERING ACTIVITY, 18:2 AIDING AND ABETTING (28sss) | Fourth Superseding Indictment filed (which did not include a count 28 for dft Juan Briseno). |
| 18:924(c) USE OF FIREARM DURING AND IN RELATION TO A CRIME OF VIOLENCE AND 18:2 AIDING AND ABETTING (28ssss) | Fourth Superseding Indictment filed (which did not include a count 28 for dft Juan Briseno). |
| 18:924(c) USE OF FIREARM DURING AND IN RELATION TO A FEDERAL CRIME OF VIOLENCE AND DRUG TRAFFICING CRIME AND 18:2 AIDING AND ABETTING (29sss) | Fourth Superseding Indictment filed (which did not include a count 29 for dft Juan Briseno). |
| 18:1959(a)(5) ATTEMPTED MURDER IN AID OF RACKETEERING ACTIVITY AND 18:2 AIDING AND ABETTING (29ssss) | Fourth Superseding Indictment filed (which did not include a count 29 for dft Juan Briseno). |
| 18:1959(a)(5) ATTEMPTED MURDER IN AID OF RACKETEERING ACTIVITY, 18:2 AIDING AND ABETTING (30sss) | Fourth Superseding Indictment filed (which did not include a count 30 for dft Juan Briseno). |

11

18:924(c) USE OF FIREARM
DURING AND IN RELATION TO
A CRIME OF VIOLENCE AND
18:2 AIDING AND ABETTING
(30ssss)

Fourth Superseding Indictment filed (which did
not include a count 30 for dft Juan Briseno).

**Highest Offense Level
(Terminated)**

Felony

**Complaints**

None

**Disposition**

---

**Plaintiff**

**United States of America**                    represented by    **Bruce R Hegyi – AUSA**
                                                                  1331 F Street NW
                                                                  Third Floor
                                                                  Washington, DC 20530
                                                                  202–616–4582
                                                                  Email: bruce.hegyi@usdoj.gov
                                                                  *ATTORNEY TO BE NOTICED*

                                                                  **David J Nozick – AUSA**
                                                                  US Attorney's Office – Ham/IN
                                                                  5400 Federal Plaza Suite 1500
                                                                  Hammond, IN 46320
                                                                  219–937–5655
                                                                  Fax: 219–852–2770
                                                                  Email: David.Nozick@usdoj.gov
                                                                  *ATTORNEY TO BE NOTICED*

                                                                  **Dean R Lanter – AUSA**
                                                                  US Attorney's Office – Ham/IN
                                                                  5400 Federal Plaza Suite 1500
                                                                  Hammond, IN 46320
                                                                  219–937–5500
                                                                  Fax: 219–852–2700
                                                                  Email: dean.lanter@usdoj.gov
                                                                  *ATTORNEY TO BE NOTICED*

| Date Filed | # | Page | Docket Text |
|---|---|---|---|
| 06/02/2011 | 1 | | (UNSEALED in open court DE 5) SEALED INDICTMENT as to Juan Briseno (1) count(s) 1, 2. (mc) (plm). Modified on 6/24/2011 (plm) to attach indictment. (Entered: 06/02/2011) |
| 06/20/2011 | 3 | | NOTICE OF HEARING as to Juan Briseno regarding 1 Indictment. Initial Appearance set for 6/24/2011 10:30 AM in US District Court – Hammond before |

| | | | Magistrate Judge Andrew P Rodovich. US Marshal to produce Dft for hearing. (plm) (Entered: 06/20/2011) |
|---|---|---|---|
| 06/24/2011 | 4 | | Arrest Warrant Returned Executed on 6/24/11 in case as to Juan Briseno. (mc) (mc). (Entered: 06/24/2011) |
| 06/24/2011 | | | Arrest of Juan Briseno (plm) (Entered: 06/24/2011) |
| 06/24/2011 | | | Judge update in case as to Juan Briseno. Magistrate Judge Andrew P Rodovich added., Case unsealed as to Juan Briseno (plm) (Entered: 06/24/2011) |
| 06/24/2011 | 5 | | INITIAL APPEARANCE as to Juan Briseno held on 6/24/2011 before Magistrate Judge Andrew P Rodovich. Govt appeared by AUSA Jacqueline Jacobs. Dft appeared w/o Atty. Jerry Navarra appeared on behalf of U S Probation/Pretrial Services. Govt moves to unseal case. Granted. Case unsealed. Dft advised of rights, charges, penalties. Dft requests court–appointed counsel. Dft sworn re financial status. Request granted. Clerk to notify FCD to appoint counsel. Govt moves for detention. Granted. Detention Hearing/Arraignment set for 6/29/2011 02:30 PM in US District Court – Hammond before Magistrate Judge Andrew P Rodovich. Dft REMANDED to USM. (Digitally Recorded.) (plm) (Entered: 06/24/2011) |
| 06/24/2011 | 6 | | CJA 20 as to Juan Briseno: Appointment of Attorney Arlington J Foley for Juan Briseno by Magistrate Judge Andrew P Rodovich on 6/24/11. (plm) (Entered: 06/29/2011) |
| 06/29/2011 | 7 | | (Scheduled as DETENTION HEARING) and ARRAIGNMENT as to Juan Briseno (1) Count 1,2 held on 6/29/2011 before Magistrate Judge Andrew P Rodovich. Govt appeared by AUSA David Nozick. Dft appeared with atty Arlington Foley. Jerry Navarra appeared on behalf of U S Probation/Pretrial Services. Dft stipulates to detention–waiving hearing w/o prejudice. Dft ORDERED held w/o bond pending trial. Court addresses death penalty eligibility. Court directs Atty Foley to obtain learned counsel to assist him in this matter. Atty Foley will let court know as soon as he can. Govt states discovery is voluminous. Rule 16 Discovery due by 7/22/2011. Parties and court find that due to complexity of charges and volume of discovery time is waived under the Speedy Trial Act from now until the next status. Status Conference set for 10/14/2011 10:00 AM in US District Court – Hammond before Magistrate Judge Andrew P Rodovich. Dft waives reading of formal charges and enters a plea of not guilty. Dft REMANDED to USM. (Digitally Recorded.) (plm) (Entered: 06/29/2011) |
| 06/29/2011 | 97 | | CJA 30: Appointment of Attorney Arlington Foley for Juan Briseno in Death Penalty Proceedings as to Juan Briseno. Approved by Magistrate Judge Andrew P Rodovich on 6/29/11. (plm) (Entered: 11/29/2011) |
| 07/01/2011 | 8 | | ORDER as to Juan Briseno : Pursuant to 18 U.S.C. §3005, John Maksimovich is appointed learned co–counsel for Juan Briseno. Signed by Magistrate Judge Andrew P Rodovich on 7/1/11. (mc) (Entered: 07/01/2011) |
| 07/01/2011 | 96 | | CJA 30: Appointment of Attorney John Maksimovich for Juan Briseno in Death Penalty Proceedings as to Juan Briseno. Approved by Magistrate Judge Andrew P Rodovich on 7/1/11. (plm) (Entered: 11/29/2011) |
| 08/19/2011 | 9 | | NOTICE OF MANUAL FILING of Defendant's Sealed Motion by Juan Briseno (Foley, Arlington) (Entered: 08/19/2011) |

13

| 08/19/2011 | 10 | | *SEALED* MOTION to Seal by Juan Briseno. (mc) (Entered: 08/19/2011) |
| 08/19/2011 | 11 | | *SEALED* SEALED MOTION by Juan Briseno. (mc) (Entered: 08/19/2011) |
| 09/01/2011 | 12 | | MOTION for Court Order Pursuant to Criminal Rule 16 by Juan Briseno. (Foley, Arlington) (Entered: 09/01/2011) |
| 09/08/2011 | 13 | | ORDER granting 11 Sealed Motion as to Juan Briseno (1). Signed by Chief Judge Philip P Simon on 9/8/11. (mc) (Entered: 09/08/2011) |
| 09/16/2011 | 14 | | RESPONSE to Motion by United States of America as to Juan Briseno re 12 MOTION for Court Order Pursuant to Criminal Rule 16 (Nozick – AUSA, David) (Entered: 09/16/2011) |
| 09/16/2011 | 15 | | NOTICE OF MANUAL FILING of SEALED DOCUMENT by United States of America as to Juan Briseno re 14 Response to Motion (Nozick – AUSA, David) (Entered: 09/16/2011) |
| 09/19/2011 | 16 | | *SEALED* MOTION to Seal by United States of America as to Juan Briseno. (mc) (Entered: 09/19/2011) |
| 09/19/2011 | 17 | | *SEALED* Sealed Document (mc) (Entered: 09/19/2011) |
| 09/26/2011 | 18 | | ORDER denying 12 Motion for Court Order Pursuant to Criminal Rule 16 as to Juan Briseno (1). Signed by Andrew Rodovich on 9/26/11. (mc) Modified on 10/7/2011 to correct Judge(mc). (Entered: 09/27/2011) |
| 09/26/2011 | 19 | | *SEALED* ORDER granting 16 Motion to Seal as to Juan Briseno (1). Signed by Magistrate Judge Andrew P Rodovich on 9/26/11. (mc) (Entered: 10/07/2011) |
| 10/14/2011 | 20 | | STATUS CONFERENCE as to Juan Briseno held on 10/14/2011 before Magistrate Judge Andrew P Rodovich. Govt appeared by AUSA David Nozick. Dft appeared with attys Arlington Foley and John Maksimovich. Court addresses the death penalty eligibility with Govt. Govt requests a 30–day extension to address such w/excludability for speedy trial. No objection by counsel. Granted. Court finds that due to the complexity of case and the potential for the dealth penalty being given that a trial date will not be given at this time and another status will be set. Status Conference set for 11/17/2011 01:00 PM in US District Court – Hammond before Magistrate Judge Andrew P Rodovich. Dft REMANDED to USM. (Digitally Recorded.) (plm) (Entered: 10/18/2011) |
| 11/02/2011 | 21 | | NOTICE OF MANUAL FILING of by Juan Briseno (Maksimovich, John) (Entered: 11/02/2011) |
| 11/02/2011 | 22 | | NOTICE OF MANUAL FILING of by Juan Briseno (Maksimovich, John) (Entered: 11/02/2011) |
| 11/02/2011 | 23 | | *SEALED* MOTION to Seal by Juan Briseno. (mc) (Entered: 11/02/2011) |
| 11/02/2011 | 24 | | *SEALED* Ex Parte Sealed Document (mc) (Entered: 11/02/2011) |
| 11/02/2011 | 25 | | *SEALED* MOTION to Seal by Juan Briseno. (mc) (Entered: 11/02/2011) |
| 11/03/2011 | | | Case sealed. (mc) (Entered: 11/04/2011) |
| 11/03/2011 | 27 | | (UNSEALED 11/7/11) SUPERSEDING INDICTMENT as to Juan Briseno (1) count(s) 1s, 2s, 3s, 4s, 5s, 6s, 7s, 8s, 9s, 13s, 14s, Galo Benjamin Feliciano (2) count(s) 1, 8, 9, 11, 12, 15, 16, Guillermo Briseno (3) count(s) 1, Alejandro |

14

| | | | |
|---|---|---|---|
| | | | Balboa Lara (4) count(s) 1, 19–20, Justin Weaver (5) count(s) 1, Michael Anthony Castillo (6) count(s) 1, Kelvin Jefferson Beltran (7) count(s) 1, David Almaraz (8) count(s) 1, Joseph Rene Torres (9) count(s) 1, 11, 12, Jason Medina (10) count(s) 1, 17, 18, Edward Raye Serna (11) count(s) 1, 17, 18, Alejandro Briseno (12) count(s) 10. (mc) (mc). (Entered: 11/04/2011) |
| 11/07/2011 | | | Case unsealed as to Juan Briseno, Galo Benjamin Feliciano, Guillermo Briseno, Alejandro Balboa Lara, Justin Weaver, Michael Anthony Castillo, Kelvin Jefferson Beltran, David Almaraz, Joseph Rene Torres, Jason Medina, Edward Raye Serna, Alejandro Briseno (mc) (Entered: 11/07/2011) |
| 11/08/2011 | 49 | | NOTICE OF HEARING as to Juan Briseno regarding 27 . Arraignment on Superseding Indictment set for 11/17/2011 01:00 PM in US District Court – Hammond before Magistrate Judge Andrew P Rodovich. US Marshal to produce Dft for hearing. (plm) (Entered: 11/08/2011) |
| 11/09/2011 | 50 | | Arrest Warrant Returned Executed on 8/25/10 in case as to Juan Briseno. (subject already in custody) (mc) (Entered: 11/09/2011) |
| 11/10/2011 | 61 | | NOTICE OF HEARING as to Juan Briseno regarding 49 . Arraignment REset for 11/21/2011 01:30 PM in US District Court – Hammond before Magistrate Judge Andrew P Rodovich. USM to produce Dft to hearing. This change of date and time is on court's own motion. (plm) (Entered: 11/10/2011) |
| 11/10/2011 | | | Terminate Deadlines and Hearings as to Juan Briseno: Status conference date of 11/17/2011 is VACATED. (plm) (Entered: 11/10/2011) |
| 11/18/2011 | 73 | | NOTICE OF HEARING as to Juan Briseno regarding 61 . Arraignment REset for 11/21/2011 02:30 PM in US District Court – Hammond before Magistrate Judge Andrew P Rodovich due to conflict. PLEASE NOTE: Change in time only. (plm) (Entered: 11/18/2011) |
| 11/21/2011 | 78 | | ATTORNEY APPEARANCE Dean R Lanter – AUSA appearing for USA. (Lanter – AUSA, Dean) (Entered: 11/21/2011) |
| 11/21/2011 | 79 | | ARRAIGNMENT as to Juan Briseno (1) on Count 2s,3s,4s,5s,6s,7s,8s,9s,13s,14s of Superseding Indictment held on 11/21/2011 before Magistrate Judge Andrew P Rodovich. Govt appeared by AUSA David Nozick. Dft appeared with attys Arlington Foley and John Maksimovich. Dft waives reading of charges and enters a plea of NOT GUILTY. Additional Discovery from Govt is due by 1/31/2012. Court finds that due to the complex discovery and in the interest of justice Dft's rights under the Speedy Trial Act are waived from now until the status conference date. Dft states he has knowingly and voluntarily waived his rights. Status Conference set for 4/19/2012 01:30 PM in US District Court – Hammond before Magistrate Judge Andrew P Rodovich. Dft REMANDED to USM. (Digitally Recorded.) (plm) (Entered: 11/21/2011) |
| 11/30/2011 | 102 | | ORDER granting 23 Motion to Seal as to Juan Briseno (1). Signed by Magistrate Judge Andrew P Rodovich on 11/30/11. (mc) (Entered: 12/01/2011) |
| 11/30/2011 | 103 | | SEALING ORDER granting 25 Motion to Seal as to Juan Briseno (1). Signed by Magistrate Judge Andrew P Rodovich on 11/30/11. (mc) (Entered: 12/01/2011) |
| 12/19/2011 | 104 | | MOTION for Protective Order by United States of America as to Juan Briseno, Galo Benjamin Feliciano, Guillermo Briseno, Alejandro Balboa Lara, Justin Weaver, Michael Anthony Castillo, Kelvin Jefferson Beltran, David Almaraz, |

15

| | | | |
|---|---|---|---|
| | | | Joseph Rene Torres, Jason Medina, Edward Raye Serna, Alejandro Briseno. (Nozick – AUSA, David) (Entered: 12/19/2011) |
| 12/21/2011 | 105 | | NOTICE OF MANUAL FILING of by Juan Briseno (Maksimovich, John) (Entered: 12/21/2011) |
| 12/21/2011 | 106 | | MOTION to Seal by Juan Briseno. (mc) (Entered: 12/21/2011) |
| 12/21/2011 | 107 | | SEALED DOCUMENT by Juan Briseno. (mc) (Entered: 12/21/2011) |
| 01/10/2012 | 109 | | NOTICE OF HEARING as to Juan Briseno, Galo Benjamin Feliciano, Joseph Rene Torres. Status Conference (re budget) set for 1/19/2012 02:00 PM in chambers of Magistrate Judge Andrew P Rodovich. Defense counsel only. (plm) (Entered: 01/10/2012) |
| 01/17/2012 | 110 | | ORDER denying 104 Motion for Protective Order as to Juan Briseno (1), Galo Benjamin Feliciano (2), Guillermo Briseno (3), Alejandro Balboa Lara (4), Justin Weaver (5), Michael Anthony Castillo (6), Kelvin Jefferson Beltran (7), David Almaraz (8), Joseph Rene Torres (9), Jason Medina (10), Edward Raye Serna (11), Alejandro Briseno (12). Signed by Magistrate Judge Andrew P Rodovich on 1/17/12. (mc) (Entered: 01/18/2012) |
| 02/01/2012 | 118 | | SEALED ORDER as to Juan Briseno GRANTING 24 Sealed Document. Signed by Magistrate Judge Andrew P Rodovich on 2/1/12. (mc) (Entered: 02/02/2012) |
| 03/23/2012 | 140 | | NOTICE OF MANUAL FILING of Defendant's Sealed Motion by Juan Briseno (Foley, Arlington) (Entered: 03/23/2012) |
| 03/23/2012 | 141 | | MOTION to Seal by Juan Briseno. (mc) (Entered: 03/23/2012) |
| 03/29/2012 | 145 | | MOTION to Continue *Status Conference* by Juan Briseno. (Foley, Arlington) (Entered: 03/29/2012) |
| 04/05/2012 | 150 | | ORDER finding moot 106 Motion to Seal as to Juan Briseno (1). Approved by Magistrate Judge Andrew P Rodovich on 4/5/12. No pdf attached. (plm) (Entered: 04/05/2012) |
| 04/05/2012 | 151 | | SECOND SUPERSEDING INDICTMENT as to Juan Briseno (1) count(s) 1ss, 4ss, 5ss, 6ss, 7ss, 8ss, 9ss, 10ss, 11ss, 15ss, 16ss, 18ss, 19ss, 26ss, Galo Benjamin Feliciano (2) count(s) 1s, 2s, 3s, 10s, 11s, 13s, 14s, 17s, 20s, 21s, 26s, Guillermo Briseno (3) count(s) 1s, 26s, Justin Weaver (5) count(s) 1s, 26s, Michael Anthony Castillo (6) count(s) 1s, 26s, David Almaraz (8) count(s) 1s, 26s, Joseph Rene Torres (9) count(s) 1s, 13s, 14s, 26s, Jason Medina (10) count(s) 1s, 22s, 23s, 26s, Edward Raye Serna (11) count(s) 1s, 22s, 23s, 26s, Alejandro Briseno (12) count(s) 12s, Robert Lockhart (13) count(s) 1, 26, Armando Jose Velasquez (14) count(s) 1, 24, 25, 26, Anthony Baldazo (15) count(s) 1, 2, 3, 17, 26. (mc) (mc). (Entered: 04/06/2012) |
| 04/11/2012 | | | Case unsealed as to Juan Briseno, Galo Benjamin Feliciano, Guillermo Briseno, Alejandro Balboa Lara, Justin Weaver, Michael Anthony Castillo, Kelvin Jefferson Beltran, David Almaraz, Joseph Rene Torres, Jason Medina, Edward Raye Serna, Alejandro Briseno, Robert Lockhart, Armando Jose Velasquez, Anthony Baldazo (plm) (Entered: 04/11/2012) |
| 04/12/2012 | 172 | | ORDER granting 145 Motion to Continue as to Juan Briseno only (1). Arraignment set for 4/27/2012 08:45 AM in US District Court – Hammond before |

| | | | |
|---|---|---|---|
| | | | Magistrate Judge Andrew P Rodovich. Status Conference REset for 4/27/2012 08:45 AM in US District Court – Hammond before Magistrate Judge Andrew P Rodovich. USM to produce Dft for hearing.Signed by Magistrate Judge Andrew P Rodovich on 4/12/12. (plm) (Entered: 04/12/2012) |
| 04/25/2012 | 209 | | ORDER: (text order only) GRANTING 141 Motion to Seal as to Juan Briseno (1). Oral Order by Chief Judge Philip P Simon on 4/25/2012. (nac). (Entered: 04/25/2012) |
| 04/27/2012 | 211 | | STATUS/ARRAIGNMENT (2nd superseding indictment) as to Juan Briseno (1) Count 1ss, 4ss, 5ss, 6ss, 7ss, 8ss,9ss, 10ss, 11ss, 15ss, 16ss, 18ss, 19ss, 26ss held on 4/27/2012 before Magistrate Judge Andrew P Rodovich. Govt appeared by atty David Nozick. Dft appeared with attys Arlington Foley and John Maksimovich. Dft WAIVES reading of indictment and enters a plea of NOT GUILTY. Trial date/ddls set.Pretrial Motions due by 7/31/2012. Attorneys Foley and Maksimovich designated as lead counsel. Joint Supplemental motions due 8/17/2012. Govt response due by 9/28/2012. Jury Trial (7–8 weeks) set for 1/22/2013 08:30 AM in US District Court – Hammond before Chief Judge Philip P Simon., Final Pretrial Conference set for 1/2/2013 01:00 PM in US District Court – Hammond before Magistrate Judge Andrew P Rodovich.) All 404B, Santiago proffer, Rule 609 deadlines will be set at the Final Pretrial Conference. Court finds due to complexity of case that Dfts' rights under the speedy trial act are waived from this date until date set for trial. Defendant REMANDED to custody of US Marshal.(Digitally Recorded) (plm) (Entered: 04/27/2012) |
| 05/02/2012 | 215 | | *SEALED* EX PARTE ORDER granting 142 Sealed Motion and granting 26 Sealed Motion as to Juan Briseno (1)), subject to the necessary approval of Chief Judge Easterbrook of the Seventh Circuit Court of Appeals. Signed by Chief Judge Philip P Simon on 5/2/12. cc: Foley, Maksimovich (mc) (Entered: 05/03/2012) |
| 05/11/2012 | 218 | | MEMORANDUM in Support of 212 MOTION to Sever Defendant by Guillermo Briseno as to Juan Briseno, Galo Benjamin Feliciano, Guillermo Briseno, Alejandro Balboa Lara, Justin Weaver, Michael Anthony Castillo, Kelvin Jefferson Beltran, David Almaraz, Joseph Rene Torres, Jason Medina, Edward Raye Serna, Alejandro Briseno, Robert Lockhart, Armando Jose Velasquez, Anthony Baldazo (Scheele, Stephen) (Entered: 05/11/2012) |
| 05/11/2012 | 220 | | RESPONSE in Opposition by United States of America as to Juan Briseno, Galo Benjamin Feliciano, Guillermo Briseno, Alejandro Balboa Lara, Justin Weaver, Michael Anthony Castillo, Kelvin Jefferson Beltran, David Almaraz, Joseph Rene Torres, Jason Medina, Edward Raye Serna, Alejandro Briseno, Robert Lockhart, Armando Jose Velasquez, Anthony Baldazo re 213 MOTION to Sever Defendant *Memorandum in Support*, 212 MOTION to Sever Defendant *Guillermo Briseno* (Lanter – AUSA, Dean) (Entered: 05/11/2012) |
| 07/30/2012 | 262 | | MOTION for Additional Time to File Pretrial Motions by Juan Briseno. (Foley, Arlington) (Entered: 07/30/2012) |
| 08/13/2012 | 268 | | ORDER granting 262 Motion for Additional Time To File Pretrial Motions as to Juan Briseno (1). Pretrial Motions due by 9/14/2012. Signed by Magistrate Judge Andrew P Rodovich on 8/13/12. (mc) (Entered: 08/13/2012) |
| 09/13/2012 | 279 | | MOTION for Extension of Time to File *Pretrial Motions* by Juan Briseno. (Foley, Arlington) (Entered: 09/13/2012) |

17

| 10/18/2012 | 301 | | ORDER granting 279 Motion for Extension of Time to File as to Juan Briseno (1) Pretrial Motions due by 12/1/2012.. Signed by Magistrate Judge Andrew P Rodovich on 10/18/12. (mc) (Entered: 10/18/2012) |
|---|---|---|---|
| 10/29/2012 | 308 | | MOTION to Continue *Jury Trial* by Juan Briseno. (Foley, Arlington) (Entered: 10/29/2012) |
| 11/07/2012 | 309 | | UNSEALED THIRD SUPERSEDING INDICTMENT as to Juan Briseno (1) count(s) 1sss, 2sss, 11sss, 12sss, 15sss, 16sss, 17sss, 18sss, 19sss, 20sss, 21sss, 22sss, 23sss, 24sss, 26sss, 27sss, 28sss, 29sss, 30sss, 31sss, 34sss, 35sss, Justin Weaver (5) count(s) 1ss, 2ss, Michael Anthony Castillo (6) count(s) 1ss, 2ss, Jason Medina (10) count(s) 1ss, 2ss, 5ss, 6ss, 36ss, 37ss, Edward Raye Serna (11) count(s) 1ss, 2ss, 36ss, 37ss, Robert Lockhart (13) count(s) 1s, 2s, Armando Jose Velasquez (14) count(s) 1s, 2s, 38s, 39s, Anthony Baldazo (15) count(s) 1s, 2s, 7s, 8s, 25s, Salvador Chavez (16) count(s) 1, 2, Raymond Campos (17) count(s) 1, 2, Ace Cortez (18) count(s) 1, 2, 3, 4, Julian Guillermo Serna (19) count(s) 1, 2, 13, 14, 40, 41, Julius Solis (20) count(s) 1, 2, 32, 33, Darmaile Cortez Sutton (21) count(s) 1, 2, Eddie Torres (22) count(s) 1, 2, Richard Reyes (23) count(s) 1, 2, 9, 10. (mc) (mc). Modified on 11/9/2012 (mc). (Entered: 11/07/2012) |
| 11/09/2012 | 327 | | ORDER granting 326 Motion to Unseal the ThirdSuperseding Indictment. Signed by Chief Judge Philip P Simon on 11/9/12. (mc) (Entered: 11/09/2012) |
| 11/09/2012 | | | Case unsealed as to Juan Briseno, Galo Benjamin Feliciano, Guillermo Briseno, Alejandro Balboa Lara, Justin Weaver, Michael Anthony Castillo, Kelvin Jefferson Beltran, David Almaraz, Joseph Rene Torres, Jason Medina, Edward Raye Serna, Alejandro Briseno, Robert Lockhart, Armando Jose Velasquez, Anthony Baldazo, Salvador Chavez, Raymond Campos, Ace Cortez, Julian Guillermo Serna, Julius Solis, Darmaile Cortez Sutton, Eddie Torres, Richard Reyes (mc) (Entered: 11/09/2012) |
| 11/14/2012 | 338 | | Arrest Warrant Returned Executed on 2/7/11 in case as to Juan Briseno. (mc) (Entered: 11/14/2012) |
| 11/16/2012 | 355 | | NOTICE OF HEARING/DEADLINES as to Juan Briseno, Justin Weaver, Michael Anthony Castillo, Jason Medina regarding 309 Third Superseding Indictment. Arraignment set for 11/20/2012 09:00 AM in US District Court – Hammond before Magistrate Judge Andrew P Rodovich. USM to produce Dft for hearing.(plm) (Entered: 11/16/2012) |
| 11/20/2012 | 360 | | ARRAIGNMENT on Third Superseding Indictment as to Juan Briseno (1) Count 1sss,2sss,11sss,12sss,15sss,16sss,17sss,18sss,19sss,20sss,21sss,22sss,23sss,24sss, 26sss,27sss,28sss,29sss,30sss,31sss,34sss,35sss held on 11/20/2012 before Magistrate Judge Andrew P Rodovich. Govt appeared by AUSA David Nozick. Dft appeared with attys Arlington Foley and John Maksimovich. Dft waives reading of formal charges and enters a plea of not guilty. Govt states some additional discovery. Dft states additional motions to be filed. Deadlines as follows: Non–Death Penalty motions due 1/4/2013. Government Response due by 2/15/2013. New trial date will be set. Defendant REMANDED to custody of US Marshal.(Tape #Digitally Recorded.) (plm) (Entered: 11/20/2012) |
| 12/13/2012 | 410 | | MOTION To Transfer by Juan Briseno. (Maksimovich, John) (Entered: 12/13/2012) |
| 12/18/2012 | 419 | | |

| | | | ORDER denying WITHOUT PREJUDICE 410 Motion to Transfer as to Juan Briseno (1). Defendant is DIRECTED to address this matter with the United States Marshal Service. Signed by Magistrate Judge Andrew P Rodovich on 12/18/12. (mc) (Entered: 12/18/2012) |
|---|---|---|---|
| 12/18/2012 | 420 | | MOTION in Letter format by Juan Briseno to Chief Judge Philip P. Simon requesting new counsel. (nac) (Entered: 12/18/2012) |
| 12/21/2012 | 423 | | NOTICE OF HEARING/DEADLINES as to Juan Briseno regarding 420 MOTION to Disqualify Counsel. Motion Hearing set for 1/9/2013 01:00 PM in US District Court – Hammond before Magistrate Judge Andrew P Rodovich. USM to produce Dft for hearing. (plm) (Entered: 12/21/2012) |
| 12/27/2012 | 425 | | ORDER granting Motion to Continue and Resetting Dates as to Juan Briseno, Michael Anthony Castillo, Jason Medina, Edward Raye Serna by Magistrate Judge Andrew P Rodovich on 12/27/12. Discovery deadline is 1/31/2013. Government Response Brief due by 4/30/2013. Pretrial Motions due by 4/1/2013. Jury Trial (primary setting) set for 10/21/2013 08:30 AM in US District Court – Hammond before Chief Judge Philip P Simon. Final Pretrial Conference set for 9/20/2013 01:00 PM in US District Court – Hammond before Magistrate Judge Andrew P Rodovich. (plm) (Entered: 12/27/2012) |
| 01/09/2013 | 441 | | MOTION HEARING as to Juan Briseno held on 1/9/2013 re 420 MOTION to Disqualify Counsel filed by Juan Briseno before Magistrate Judge Andrew P Rodovich. Govt appeared by AUSA David Nozick. Dft appeared with attys Arlington Foley and John Maksimovich. Court addresses motion w/attys. Attys and Dft have resolved issues. Dft moves to withdraw motion. Court denied the motion. Attys Foley and Maksimovich will remain of record. Defendant REMANDED to custody of US Marshal.(Tape #FTR Gold.) (plm) (Entered: 01/09/2013) |
| 03/06/2013 | 503 | | NOTICE *of Intent to Seek the Death Penalty Pursuant to Title 18, United States Code, Section 3593* by United States of America as to Juan Briseno (Nozick – AUSA, David) (Entered: 03/06/2013) |
| 03/14/2013 | 510 | | NOTICE OF MANUAL FILING of Request For Advance Authorization To Incur Mitigation Specialist Expense, Investigative Expense, Expert Expense, and Other Services Expense In Excess of the Maximum Allowed By Title 18 USC Sec 3599(g) to Be Filed Under Seal by Juan Briseno (Maksimovich, John) (Entered: 03/14/2013) |
| 03/15/2013 | 511 | | MOTION to Seal by Juan Briseno. (mc) (Entered: 03/15/2013) |
| 03/15/2013 | 512 | | *SEALED* SEALED MOTION by Juan Briseno. (mc) (Entered: 03/15/2013) |
| 03/18/2013 | 514 | | ORDER granting 511 Motion to Seal as to Juan Briseno (1). Signed by Chief Judge Philip P Simon on 3/18/13. (mc) (Entered: 03/19/2013) |
| 03/21/2013 | 517 | | NOTICE OF MANUAL FILING of by Juan Briseno (Maksimovich, John) (Entered: 03/21/2013) |
| 03/22/2013 | 519 | | MOTION for Extension of Time to File *Pretrial Motions* by Juan Briseno. (Foley, Arlington) (Entered: 03/22/2013) |
| 03/22/2013 | 520 | | ORDER granting 519 Motion for Extension of Time to File as to Juan Briseno. Pretrial Motions due by 6/30/2013. Signed by Magistrate Judge Andrew P |

19

| | | | |
|---|---|---|---|
| | | | Rodovich on 3/22/2013. (rmn) (Entered: 03/22/2013) |
| 03/22/2013 | 525 | | MOTION to Seal re <u>517</u> by Juan Briseno. (mc) (Entered: 03/25/2013) |
| 03/22/2013 | 526 | | SEALED MOTION re <u>517</u> by Juan Briseno. (mc) (Entered: 03/25/2013) |
| 03/29/2013 | 534 | | ORDER granting 525 Motion to Seal as to Juan Briseno (1). Signed by Chief Judge Philip P Simon on 3/29/13. (mc) (Entered: 04/01/2013) |
| 04/02/2013 | 538 | | *SEALED* SEALED ORDER CONDITIONALLY granting 512 Sealed Motion as to Juan Briseno (1); CONDITIONALLY granting 526 Sealed Motion as to Juan Briseno (1). Signed by Chief Judge Philip P Simon on 4/2/13. cc: Maksimovich and Foley (mc) (Entered: 04/02/2013) |
| 04/11/2013 | 551 | | STATUS CONFERENCE now scheduled for 5/29/2013 at 10:45 a.m. before Chief Judge Philip P. Simon in U.S. District Court – Hammond. Individual defendants are NOT required to appear. The U.S. Marshal shall not produce any dfts for this hearing. Only counsel for those defendants who have not pleaded guilty shall be required to appear. (nac) (Entered: 04/11/2013) |
| 04/12/2013 | 552 | | NOTICE OF HEARING – STATUS CONFERENCE: The Status Conference previously scheduled for 5/29/2013 is now RESET for 4/22/2013 at 01:00 PM (Central/Hammond time) in US District Court – Hammond before Chief Judge Philip P Simon. Only counsel for those defendants who have not pleaded guilty are required to attend. The USM is not required to produce any dfts for this hearing. (nac) (Entered: 04/12/2013) |
| 04/22/2013 | <u>558</u> | | ORDER : The government shall file any additional notices of intent to seek the death penalty pursuant to 18 U.S.C. §3593(a) no later than 8/1/2013. Any motions to continue the current October 21, 2013 trial setting are to be filed by 5/22/2013. An in–person Status Conference is set for 8/29/2013 01:00 PM CST. in US District Court – Hammond before Chief Judge Philip P Simon. Individual defendants are not required to appear and the U.S. Marshal shall not produce any defendants for this conference. Only counsel for the government and for defendants who have not entered pleas of guilty are required to appear. Signed by Chief Judge Philip P Simon on 4/22/13. (mc) (Entered: 04/23/2013) |
| 04/22/2013 | 559 | | HEARING as to Juan Briseno, Michael Anthony Castillo, Jason Medina, Edward Raye Serna, Armando Jose Velasquez, Salvador Chavez, Raymond Campos, Ace Cortez, Julian Guillermo Serna, Julius Solis, Darmaile Cortez Sutton, Richard Reyes held on 4/22/2013 before Chief Judge Philip P Simon. Only counsel for the above dfts were required to appear for this hearing (Arlington Foley, John Maksimovich, Catherine Lake, Scott King (by telephone) Gojko Kasich, John Theis, Kerry Connor, James Thiros, Jack Friedlander, Bryan Truit and Sheldon Nagelberg are all in attendance). Govt present by David Nozick, AUSA and Bruce R. Hegyi of U.S. Dept of Justice, Capital Case Unit. All counsel agree that the case is so complex that the trial date of 10/21/2013 is not reasonable. Court allows 30 days for counsel to file a motion to continue the trial date. Any response/objection to be filed within 14 days. Govt allowed 12 weeks to obtain the decision and advise the Court as to any additional dfts facing death penalty. Presently the Govt is awaiting decision from Washington DC. Brief discussions on suppression motions, 3500 material, estimate of number of dfts for trial, length of trial (8 weeks), possible trial for capital dfts and non–capital dfts which would be 8 weeks for each trial. Status Conference now set for August 29, 2013 at 1:00 pm. Cnsl only to appear in person and only those attys whose clients are pending trial |

20

| | | | |
|---|---|---|---|
| | | | need to appear for this hearing. (Court Reporter Sharon Boleck–Mroz.) (nac) (Entered: 04/23/2013) |
| 04/23/2013 | 560 | | NOTICE OF HEARING: STATUS CONFERENCE to be held August 29, 2013 at 01:00 PM in US District Court – Hammond before Chief Judge Philip P Simon. The U.S. Marshal does not need to produce any dfts for this hearing. Only counsel whose clients are pending trial shall appear in person at this hearing. (nac) (Entered: 04/23/2013) |
| 05/01/2013 | 562 | | ORDER Defendant Richard Reyes has filed a motion to sever his trial from that of his co–defendants [DE 557]. During a status hearing on April 22, 2013, I ordered the Government to file any additional notices of intent to seek the death penalty pursuant to 18 U.S.C. §3593(a) no later than August 1, 2013 [DE 558]. At the April 22 status hearing, I also informed the parties that I did not intend to establish further deadlines until the Government files its notices of intent to seek the death penalty. Therefore, I will GRANT the Government's Motion for Extension of Time to Respond to Defendant's Motion to Sever in part [DE 561]. Rather than set the deadline for the Government's response to Reyes' motion at this time, I will set a briefing schedule after August 1, 2013.. Signed by Chief Judge Philip P Simon on 5/1/13. (kw) (Entered: 05/01/2013) |
| 05/07/2013 | 565 | | ORDER granting 564 Motion to Withdraw as Attorney. Matthew D Soliday – FCD withdrawn from case as to Joseph Rene Torres (9). Signed by Magistrate Judge Andrew P Rodovich on 5/7/13. (lh) (Entered: 05/07/2013) |
| 05/07/2013 | | | Attorney update in case as to Joseph Rene Torres: Atty David Vandercoy added. (lh) (Entered: 05/07/2013) |
| 05/16/2013 | 568 | | ATTORNEY APPEARANCE Bruce R Hegyi – AUSA appearing for USA. *Trial Attorney/DOJ/Capital Case Unit* (Hegyi – AUSA, Bruce) (Entered: 05/16/2013) |
| 06/05/2013 | 581 | | RESPONSE to Motion by United States of America as to Juan Briseno, Galo Benjamin Feliciano, Michael Anthony Castillo, David Almaraz, Joseph Rene Torres, Jason Medina, Edward Raye Serna, Armando Jose Velasquez, Anthony Baldazo, Salvador Chavez, Raymond Campos, Ace Cortez, Julian Guillermo Serna, Julius Solis, Darmaile Cortez Sutton, Eddie Torres, Richard Reyes re 573 MOTION to Continue *Jury Trial by defendant Juan Briseno* (Hegyi – AUSA, Bruce) (Entered: 06/05/2013) |
| 06/24/2013 | 587 | | MOTION to Withdraw Document 573 MOTION to Continue *Jury Trial* by Juan Briseno. (Foley, Arlington) (Entered: 06/24/2013) |
| 06/25/2013 | 588 | | ORDER granting 587 Motion to Withdraw as to Juan Briseno (1); denying as moot 573 Motion to Continue as to Juan Briseno (1). Trial in this case remains set to begin October 21, 2013. Signed by Chief Judge Philip P Simon on 6/25/13. (mc) (Entered: 06/25/2013) |
| 07/03/2013 | | | Terminate Deadlines and Hearings as to Juan Briseno, Galo Benjamin Feliciano, Guillermo Briseno, Alejandro Balboa Lara, Justin Weaver, Michael Anthony Castillo, Kelvin Jefferson Beltran, David Almaraz, Joseph Rene Torres, Jason Medina, Edward Raye Serna, Alejandro Briseno, Robert Lockhart, Armando Jose Velasquez, Anthony Baldazo, Salvador Chavez, Raymond Campos, Ace Cortez, Julian Guillermo Serna, Julius Solis, Darmaile Cortez Sutton, Eddie Torres, Richard Reyes: (nac) Modified on 7/3/2013 to indicate that the STATUS CONFERENCE HEARING PREVIOUSLY SCHEDULED FOR 8/29/2013 is |

| | | | NOW VACATED AND RESET TO 7/11/2013 AT 1:00 P.M. (Entered: 07/03/2013) |
|---|---|---|---|
| 07/03/2013 | 592 | | NOTICE OF HEARING/DEADLINES as to Juan Briseno, Galo Benjamin Feliciano, Guillermo Briseno, Alejandro Balboa Lara, Justin Weaver, Michael Anthony Castillo, Kelvin Jefferson Beltran, David Almaraz, Joseph Rene Torres, Jason Medina, Edward Raye Serna, Alejandro Briseno, Robert Lockhart, Armando Jose Velasquez, Anthony Baldazo, Salvador Chavez, Raymond Campos, Ace Cortez, Julian Guillermo Serna, Julius Solis, Darmaile Cortez Sutton, Eddie Torres, Richard Reyes. The Status Conference previously scheduled for 8/29/2013 is now VACATED and RESET for 7/11/2013 at 1:00 p.m (Central/Hammond time) in US District Court – Hammond before Chief Judge Philip P Simon. Only counsel for those defendants who have not pleaded guilty are required to attend. The U.S. Marshal is not required to produce any dfts for this hearing. (nac) (Entered: 07/03/2013) |
| 07/03/2013 | <u>594</u> | | MOTION to Continue *Status Conference Date* by United States of America as to Juan Briseno, Galo Benjamin Feliciano, Guillermo Briseno, Alejandro Balboa Lara, Justin Weaver, Michael Anthony Castillo, Kelvin Jefferson Beltran, David Almaraz, Joseph Rene Torres, Jason Medina, Edward Raye Serna, Alejandro Briseno, Robert Lockhart, Armando Jose Velasquez, Anthony Baldazo, Salvador Chavez, Raymond Campos, Ace Cortez, Julian Guillermo Serna, Julius Solis, Darmaile Cortez Sutton, Eddie Torres, Richard Reyes. (Nozick – AUSA, David) (Entered: 07/03/2013) |
| 07/08/2013 | 595 | | ORDER GRANTING MOTION <u>594</u> to Continue Status Conference originally scheduled for 7/11/2013. The Status Conference is now RESET for 7/18/2013 02:00 PM in US District Court – Hammond before Chief Judge Philip P Simon. Only counsel for those defendants who have not pleaded guilty are required to attend. The U.S. Marshal is not required to produce any dfts for this hearing. Approved by Chief Judge Philip P Simon on 7/8/2013. (Text order only, no pdf attached). (nac) Modified on 7/11/2013 to correct error in grammar. (nac). (Entered: 07/08/2013) |
| 07/08/2013 | 596 | | NOTICE OF HEARING as to Juan Briseno only: A HEARING/STATUS CONFERENCE for dft Juan Briseno only is now scheduled for 7/18/2013 at 1:00 p.m. in US District Court – Hammond before Chief Judge Philip P Simon. Dft Juan Briseno shall appear in person along with his counsel and cnsl for the Govt. The U.S. Marshal shall produce dft Juan Briseno for this hearing/status conference. (nac) (Entered: 07/08/2013) |
| 07/08/2013 | 597 | | NOTICE OF HEARING as to Galo Benjamin Feliciano, Guillermo Briseno, Alejandro Balboa Lara, Justin Weaver, Michael Anthony Castillo, Kelvin Jefferson Beltran, David Almaraz, Joseph Rene Torres, Jason Medina, Edward Raye Serna, Alejandro Briseno, Robert Lockhart, Armando Jose Velasquez, Anthony Baldazo, Salvador Chavez, Raymond Campos, Ace Cortez, Julian Guillermo Serna, Julius Solis, Darmaile Cortez Sutton, Eddie Torres, Richard Reyes. A STATUS CONFERENCE is now set for 7/18/2013 02:00 PM in US District Court – Hammond before Chief Judge Philip P Simon. ONLY COUNSEL FOR THOSE DEFENDANTS WHO HAVE NOT PLEADED GUILTY ARE REQUIRED TO ATTEND. The U.S. Marshal is not required to produce any dfts for this hearing. (Note: a Status Conference will be held for dft Juan Briseno this same date at 1:00 p.m. The U.S. Marshal will be required to produce dft Juan |

22

| | | | |
|---|---|---|---|
| | | | Briseno for this hearing before Judge Simon on 7/18/2013 at 1:00 p.m.). (nac) (Entered: 07/08/2013) |
| 07/18/2013 | 601 | | STATUS CONFERENCE held before Chief Judge Philip P. Simon as to: Raymond Campos, Richard Reyes, Ace Cortez, Salvador Chavez, Michael Castillo, Julian Guillermo Serna, Jason Medina, Edward Raye Serna, Julius Solis and Armando Jose Vasquez. Attorneys present: Catherine Lake, Jack Friedlander, John Theis, Gojko Kasich, Scott King (appearing for his clients as well as on behalf of James Thiros), Bryan Truitt and Sheldon Nagelberg. Govt present by AUSAs David Nozick and Bruce R. Hegyi. (Note: although attys Arlington Foley and John Maksimovich appear for the hearing specific to their client (Juan Briseno), held this same date, they also are in attendance at this hearing. Note that only counsel were required to attend this hearing, no dfts were present. Court sets deadlines for the case (see order entered 7/19/2013). Court hears comments from attorneys regarding the status of the case, potential for one or two trials, suppression motions and Jencks matters. Information provided to the Court from AUSA Bruce Hegyi as to the particulars in the selection of a jury panel in these types of cases based on his experience. (Court Reporter Sharon Boleck–Mroz.) (nac) Modified on 7/22/2013 to clarify attendance information.(nac). (Entered: 07/22/2013) |
| 07/18/2013 | 602 | | STATUS CONFERENCE as to Juan Briseno held on 7/18/2013 before Chief Judge Philip P Simon. Govt appeared by attys Bruce R. Hegyi and David J. Nozick. Dft Juan Briseno present in person and by counsel Arlington Foley and John Maksimovich. Brief discussions on the following: possibility of 4th Superseding Indictment, jury trial scheduling, the need for additional time for the trial of dft Juan Briseno. Dft Juan Briseno is placed under oath to answer Court inquiry regarding a continuance of the trial setting. The dft advises the Court that he now agrees to a continuance of his trial. The Court suggests a trial date in April 2014 would be reasonable. Counsel have no objections to a trial date in April 2014. Court sets deadlines in case (see Court's order of 7/19/2013). Currently, 11 dfts remain in case for trial, with dft Juan Briseno being the only dft facing capital issues. Defendant REMANDED to custody of US Marshal.(Court Reporter Sharon Boleck–Mroz.) (nac) Modified on 7/22/2013 to clarify attendance. (nac). (Entered: 07/22/2013) |
| 07/19/2013 | <u>600</u> | | ORDER: Juan Briseno is ORDERED to file, no later than July 29, 2013, a motion to continue the trial date. Objections to the motion for continuance must be filed no later than August 8, 2013. Motions for severance must be filed by August 9, 2013. The Governments responses are due on or before August 30, 2013, and replies are due by September 13, 2013. For all defendants other than Juan Briseno, motions to suppress evidence must be filed by August 9, 2013. The Governments responses are due on or before August 30, 2013, and replies are due by September 13, 2013. Any motion to suppress by defendant Juan Briseno must be filed on or before September 27, 2013. The Governments response is due on or before October 18, 2013, and Brisenos reply, if any, is due November 1, 2013. Signed by Chief Judge Philip P Simon on 7/19/13. (mc) (Entered: 07/19/2013) |
| 07/19/2013 | | | Set Deadlines as all dfts : any motions for severance due by 8/9/2013; Government Response due by 8/30/2013; Defendant Reply due by 9/13/2013.(mc) (Entered: 07/19/2013) |
| 07/19/2013 | | | Set Deadlines as to Juan Briseno: Any motion to suppress due by 9/27/2013; |

| | | | |
|---|---|---|---|
| | | | Government Response Brief due by 10/18/2013; Defendant Reply Brief due by 11/1/2013. (mc) (Entered: 07/19/2013) |
| 07/24/2013 | 603 | | MOTION to Continue *Jury Trial* by Juan Briseno. (Foley, Arlington) (Entered: 07/24/2013) |
| 08/09/2013 | 610 | | MOTION to Sever Defendant *Juan Briseno From Non−Capital Co−Defendants* by Juan Briseno. (Maksimovich, John) (Entered: 08/09/2013) |
| 08/09/2013 | 611 | | MOTION *To Permit Attorney Conducted Voir Dire Pursuant to Principles Required By Furman v. Georgia and Its Progeny* by Juan Briseno. (Attachments: # 1 Supplement Memorandum In Support)(Maksimovich, John) (Entered: 08/09/2013) |
| 08/30/2013 | 626 | | RESPONSE in Opposition by United States of America as to Juan Briseno, Galo Benjamin Feliciano, Guillermo Briseno, Alejandro Balboa Lara, Justin Weaver, Michael Anthony Castillo, Kelvin Jefferson Beltran, David Almaraz, Joseph Rene Torres, Jason Medina, Edward Raye Serna, Alejandro Briseno, Robert Lockhart, Armando Jose Velasquez, Anthony Baldazo, Salvador Chavez, Raymond Campos, Ace Cortez, Julian Guillermo Serna, Julius Solis, Darmaile Cortez Sutton, Eddie Torres, Richard Reyes re 616 MOTION to Sever Defendant , 610 MOTION to Sever Defendant *Juan Briseno From Non−Capital Co−Defendants*, 608 MOTION to Sever Defendant *with Memorandum* MOTION for Bill of Particulars *with Memorandum*, 606 MOTION Renewed and Continued Demand for Trial, Objection to Trial Continuance, and Motion to Sever *Omnibus Opposition to Motions to Sever By Defendants Briseno, Reyes, Chavez, Medina & Edward Serna* (Attachments: # 1 Exhibit)(Hegyi − AUSA, Bruce) (Entered: 08/30/2013) |
| 09/09/2013 | 632 | | ORDER granting 610 Motion to Sever Defendant from Non−Capital Co−Defendants as to Juan Briseno (1). The Court is GRANTING the following Motions to the extent that they seek severance from Briseno and DENYING to the extent they seek any further severance from other defendants: 616 Motion to Sever Defendant as to Jason Medina (10) and Edward Raye Serna (11); 608 Motion to Sever Defendant as to Salvador Chavez (16); 557 and 606 Motion to Sever Defendant as to Richard Reyes (23). Signed by Chief Judge Philip P Simon on 9/9/13. (mc) (Entered: 09/09/2013) |
| 09/09/2013 | 633 | | ORDER granting 603 Motion to Continue as to Juan Briseno (1). Jury Trial set for 4/7/2014 08:30 AM in US District Court − Hammond before Chief Judge Philip P Simon. The trial as to all other remaining defendants remains set on October 21, 2013. Signed by Chief Judge Philip P Simon on 9/9/13. (mc) (Entered: 09/09/2013) |
| 09/10/2013 | 635 | | NOTICE OF HEARING as to Juan Briseno only: Final Pretrial Conference set for 3/7/2014 10:00 AM in US District Court − Hammond before Chief Judge Philip P Simon. (nac) (Entered: 09/10/2013) |
| 09/18/2013 | 652 | | SEALED INDICTMENT as to Juan Briseno (1) count(s) 1ssss, 2ssss, 9ssss, 10ssss, 13ssss, 14ssss, 15ssss, 16ssss, 17ssss, 18ssss, 19ssss, 20ssss, 21ssss, 22ssss, 23ssss, 24ssss, 25ssss, 26ssss, 27ssss, 28ssss, 29ssss, 30ssss, Jason Medina (10) count(s) 1sss, 2sss, 5sss, 6sss, 31sss, 32sss, Edward Raye Serna (11) count(s) 1sss, 2sss, 31sss, 32sss, Armando Jose Velasquez (14) count(s) 1ss, 2ss, 33ss, 34ss, Salvador Chavez (16) count(s) 1s, 2s, Ace Cortez (18) count(s) 1s, 2s, 3s, 4s, Julian Guillermo Serna (19) count(s) 1s, 2s, 11s, 12s, 35s, 36s, Richard Reyes (23) count(s) 1s, 2s, 7s, 8s, Vincent Garza (24) count(s) 1, 2, 13, 14, 15, 16. (mc) |

24

4090

| | | | (Entered: 09/19/2013) |
|---|---|---|---|
| 09/19/2013 | | | Terminate Deadlines and Hearings as to Juan Briseno, Galo Benjamin Feliciano, Guillermo Briseno, Alejandro Balboa Lara, Justin Weaver, Michael Anthony Castillo, Kelvin Jefferson Beltran, David Almaraz, Joseph Rene Torres, Jason Medina, Edward Raye Serna, Alejandro Briseno, Robert Lockhart, Armando Jose Velasquez, Anthony Baldazo, Salvador Chavez, Raymond Campos, Ace Cortez, Julian Guillermo Serna, Julius Solis, Darmaile Cortez Sutton, Eddie Torres, Richard Reyes, Vincent Garza: Final Pretrial Conference set for 9/20/2013 VACATED. To be reset under separate order. (lh) (Entered: 09/19/2013) |
| 09/19/2013 | | | Case unsealed (mc) (Entered: 09/19/2013) |
| 09/19/2013 | 663 | | ORDER CANCELLING DEADLINE as to Juan Briseno, Galo Benjamin Feliciano, Guillermo Briseno, Alejandro Balboa Lara, Justin Weaver, Michael Anthony Castillo, Kelvin Jefferson Beltran, David Almaraz, Joseph Rene Torres, Jason Medina, Edward Raye Serna, Alejandro Briseno, Robert Lockhart, Armando Jose Velasquez, Anthony Baldazo, Salvador Chavez, Raymond Campos, Ace Cortez, Julian Guillermo Serna, Julius Solis, Darmaile Cortez Sutton, Eddie Torres, Richard Reyes, Vincent Garza. Final Pretrial Conference set for 9/20/2013 01:00 PM in US District Court – Hammond before Magistrate Judge Andrew P Rodovich VACATED. Entry created to notify parties. Approved by Magistrate Judge Andrew P Rodovich on 9/19/13. (lh) (Entered: 09/19/2013) |
| 09/19/2013 | | | Terminate Hearing as to Juan Briseno, Galo Benjamin Feliciano, Guillermo Briseno, Alejandro Balboa Lara, Justin Weaver, Michael Anthony Castillo, Kelvin Jefferson Beltran, David Almaraz, Joseph Rene Torres, Jason Medina, Edward Raye Serna, Alejandro Briseno, Robert Lockhart, Armando Jose Velasquez, Anthony Baldazo, Salvador Chavez, Raymond Campos, Ace Cortez, Julian Guillermo Serna, Julius Solis, Darmaile Cortez Sutton, Eddie Torres, Richard Reyes, Vincent Garza: Final Pretrial Conference set 9/20/2013 VACATED per 663 Order (jld) (Entered: 09/20/2013) |
| 09/20/2013 | 672 | | Arrest Warrant Returned Executed in case as to Juan Briseno (subject already in custody). (mc) (Entered: 09/20/2013) |
| 09/27/2013 | 682 | | MOTION for Extension of Time to File *Motions to Suppress* by Juan Briseno. (Foley, Arlington) (Entered: 09/27/2013) |
| 09/30/2013 | 683 | | ORDER granting 682 Motion for Extension of Time to File motion to suppress as to Juan Briseno (1). Any motion to suppress by Juan Briseno must be filed on or before November 18, 2013. Defendant Reply Brief due by 12/23/2013. Government Response Brief due by 12/9/2013. Signed by Chief Judge Philip P Simon on 9/30/13. (mc) (Entered: 09/30/2013) |
| 10/09/2013 | | | Terminate Deadlines and Hearings (12/13/2013 FPTC) (mc) (Entered: 10/09/2013) |
| 10/11/2013 | 702 | | NOTICE OF HEARING/DEADLINES as to Juan Briseno regarding 652 Superseding Indictment. Arraignment set for 10/23/2013 11:00 AM in US District Court – Hammond before Magistrate Judge Andrew P Rodovich. (lh) (Entered: 10/11/2013) |
| 10/23/2013 | 711 | | ARRAIGNMENT as to Juan Briseno (1) Count 1ssss,2ssss,9ssss,10ssss,13ssss,14ssss,15ssss,16ssss,17ssss,18ssss,19ssss,20ssss, |

25

4091

| | | | 21ssss,22ssss,23ssss,24ssss,25ssss,26ssss,27ssss,28ssss,29ssss,30ssss held on 10/23/2013 before Magistrate Judge Andrew P Rodovich. Govt appeared by AUSA David Nozick. Dft appeared w/ atty Arlington Foley. Dft waives reading of formal charges and enters a plea of not guilty. Govt states some additional discovery to be turned over by 10/31/2013. Defendant REMANDED to custody of US Marshal.(Tape #FTR Gold.) (lh) (Entered: 10/23/2013) |
|---|---|---|---|
| 10/28/2013 | 717 | | MOTION for Disclosure *of Specific Informants and Related Information* by Juan Briseno. (Maksimovich, John) (Entered: 10/28/2013) |
| 10/28/2013 | 718 | | MOTION for Disclosure *of Scientific / Forensic Testing and Results* by Juan Briseno. (Maksimovich, John) (Entered: 10/28/2013) |
| 11/15/2013 | 722 | | MOTION for Extension of Time to File *Motions to Suppress* by Juan Briseno. (Foley, Arlington) (Entered: 11/15/2013) |
| 11/21/2013 | 723 | | MOTION for Extension of Time to File *Santiago Proffer and 404(b) Notice* by United States of America as to Juan Briseno, Galo Benjamin Feliciano, Michael Anthony Castillo, David Almaraz, Joseph Rene Torres, Jason Medina, Edward Raye Serna, Armando Jose Velasquez, Anthony Baldazo, Salvador Chavez, Raymond Campos, Ace Cortez, Julian Guillermo Serna, Julius Solis, Eddie Torres, Richard Reyes, Vincent Garza. (Nozick – AUSA, David) (Entered: 11/21/2013) |
| 11/21/2013 | 724 | | NOTICE OF HEARING as to all remaining defendants other than Juan Briseno: Final Pretrial Conference RESET for 12/4/2013 01:30 PM in US District Court – Hammond before Chief Judge Philip P Simon. The previous Final Pretrial Conference setting before Magistrate Judge Rodovich is VACATED from the court calendar.(nac) (Entered: 11/21/2013) |
| 11/22/2013 | | | Set/Reset Deadlines as to Juan Briseno: Government Response Brief to Dft's Mts for Disclosure[DE 717 & 718] due by 12/3/2013. (lh) (Entered: 11/22/2013) |
| 11/22/2013 | 726 | | ORDER granting 722 Motion for Extension of Time to File as to Juan Briseno (1). Ct to set new ddl in separate order. Signed by Magistrate Judge Andrew P Rodovich on 11/22/13. (lh) (Entered: 11/22/2013) |
| 11/22/2013 | 730 | | ORDER granting 723 Motion for Extension of Time to File Santiago Proffer and 404(b) Notice as to all remaining defendants: Juan Briseno (1), Galo Benjamin Feliciano (2), Michael Anthony Castillo (6), David Almaraz (8), Joseph Rene Torres (9), Jason Medina (10), Edward Raye Serna (11), Armando Jose Velasquez (14), Anthony Baldazo (15), Salvador Chavez (16), Raymond Campos (17), Ace Cortez (18), Julian Guillermo Serna (19), Julius Solis (20), Eddie Torres (22), Richard Reyes (23), Vincent Garza (24). The government is GRANTED an extension up to and including November 26, 2013 to file its Santiago Proffer and Notice of Intent to Rely on 404(b) Evidence. Signed by Magistrate Judge Andrew P Rodovich on 11/22/13. (mc) (Entered: 11/22/2013) |
| 11/22/2013 | | | Set/Reset Deadlines: Santiago Proffer and Notice of Intent to Rely on 404(b) Evidence due by 11/26/2013. (mc) (Entered: 11/22/2013) |
| 11/26/2013 | 732 | | NOTICE *of Intent to Introduce Enterprise Evidence* by United States of America as to Juan Briseno, Galo Benjamin Feliciano, Michael Anthony Castillo, David Almaraz, Joseph Rene Torres, Jason Medina, Edward Raye Serna, Armando Jose Velasquez, Anthony Baldazo, Salvador Chavez, Raymond Campos, Ace Cortez, |

26

| | | | Julian Guillermo Serna, Julius Solis, Eddie Torres, Richard Reyes, Vincent Garza (Nozick – AUSA, David) (Entered: 11/26/2013) |
|---|---|---|---|
| 11/26/2013 | 733 | | SANTIAGO PROFFER by United States of America as to Juan Briseno, Galo Benjamin Feliciano, Michael Anthony Castillo, David Almaraz, Joseph Rene Torres, Jason Medina, Edward Raye Serna, Armando Jose Velasquez, Anthony Baldazo, Salvador Chavez, Raymond Campos, Ace Cortez, Julian Guillermo Serna, Julius Solis, Eddie Torres, Richard Reyes, Vincent Garza (Nozick – AUSA, David) (Entered: 11/26/2013) |
| 12/03/2013 | 734 | | RESPONSE to Motion by United States of America as to Juan Briseno re 718 MOTION for Disclosure *of Scientific / Forensic Testing and Results* (Nozick – AUSA, David) (Entered: 12/03/2013) |
| 12/03/2013 | 735 | | RESPONSE to Motion by United States of America as to Juan Briseno re 717 MOTION for Disclosure *of Specific Informants and Related Information* (Nozick – AUSA, David) (Entered: 12/03/2013) |
| 12/16/2013 | 751 | | Proposed Voir Dire by United States of America as to Juan Briseno, Galo Benjamin Feliciano, Michael Anthony Castillo, David Almaraz, Joseph Rene Torres, Jason Medina, Edward Raye Serna, Armando Jose Velasquez, Anthony Baldazo, Salvador Chavez, Raymond Campos, Ace Cortez, Julian Guillermo Serna, Julius Solis, Eddie Torres, Richard Reyes, Vincent Garza (Nozick – AUSA, David) (Entered: 12/16/2013) |
| 12/31/2013 | 763 | | (SEALED) MOTION to Seal by Juan Briseno. (Maksimovich, John) (Entered: 12/31/2013) |
| 12/31/2013 | 764 | | (SEALED) MOTION to Seal Document, SEALED MOTION, (SEALED) MOTION to Seal by Juan Briseno. (Maksimovich, John) (Entered: 12/31/2013) |
| 01/03/2014 | 768 | | NOTICE OF HEARING as to Juan Briseno: Ex–Parte Hearing regarding 763 sealed motion now scheduled for hearing on: 1/10/2014 11:30 AM in US District Court – Hammond before Chief Judge Philip P Simon. Only counsel for the defendant need appear. (nac) (Entered: 01/03/2014) |
| 01/07/2014 | 775 | | NOTICE OF HEARING as to Juan Briseno: Ex–Parte Hearing now RESET for 1/10/2014 at 11:00 a.m. in U.S. District Court – Hammond before Chief Judge Philip P Simon. Please note that this is a change in time only. Only cnsl for dft Juan Briseno are required to appear. (nac) (Entered: 01/07/2014) |
| 01/07/2014 | 777 | | *SEALED* Sealing ORDER granting 763 Motion to Seal Document 764 as to Juan Briseno (1). Signed by Chief Judge Philip P Simon on 1/7/14. (mc) (Entered: 01/08/2014) |
| 01/09/2014 | 789 | | (SEALED) MOTION to Seal by Juan Briseno. (Maksimovich, John) (Entered: 01/09/2014) |
| 01/09/2014 | 790 | | SEALED MOTION by Juan Briseno. (Maksimovich, John) (Entered: 01/09/2014) |
| 01/09/2014 | 792 | | (SEALED) MOTION to Seal Document by Juan Briseno. (Foley, Arlington) (Entered: 01/09/2014) |
| 01/09/2014 | 793 | | SEALED MOTION by Juan Briseno. (Attachments: # 1 Exhibit Exhibit A, # 2 Exhibit Exhibit B)(Foley, Arlington) (Entered: 01/09/2014) |
| 01/31/2014 | 849 | | |

27

| | | | |
|---|---|---|---|
| | | | MOTION to Continue *Jury Trial* by Juan Briseno. (Foley, Arlington) (Entered: 01/31/2014) |
| 02/11/2014 | 876 | | NOTICE OF HEARING as to Juan Briseno: Motion Hearing (on the Motion to Continue Trial 849 ) now scheduled for 2/12/2014 09:30 AM (Central/Hammond time) in US District Court – Hammond before Chief Judge Philip P Simon. Atty Bruce Hegyi shall appear by phone, all other cnsl shall appear in person. Note to USM: defense cnsl has indicated that the dft's apperance is not necessary for this hearing.(nac) (Entered: 02/11/2014) |
| 02/12/2014 | | | Terminate Jury Trial date of April 7, 2014 for dft Juan Briseno. Ruling made by the Court at the hearing held on 2/12/2014. A new trial date will be entered by the Court at the next Status Hearing to be held in approximately two weeks. (nac) (Entered: 02/12/2014) |
| 02/12/2014 | 878 | | MOTION HEARING as to Juan Briseno held on 2/12/2014 re 849 MOTION to Continue *Jury Trial* filed by Juan Briseno before Chief Judge Philip P Simon. Govt present by attys David Nozick who appears in person and atty Bruce Hegyi who appears by telephone. Dft is represented by attys John Maksimovich and Arlington Foley and does not appear in person. Court hears from both sides as to the issues of the case related to the current trial date of 4/7/2014. The Court indicates that a Status Hearing will be held in this case approximately every two weeks from this point on. The next Status Hearing in this case is now scheduled for 2/28/2014 at 2:00 p.m. Discussion on potential time frames for the trial to take place. The Court GRANTS the Motion to Continue the Trial 849 without new date. The issue of the new trial date is taken under advisement by the Court until the Status Hearing scheduled for 2/28/2014. The Court ORDERS the U.S. Marshal to produce the dft for this hearing. Court hears from atty Bruce Hegyi as to projected lengths of time that the various stages of the trial may take, ie jury selection, guilt phase and penalty phase. Court Reporter Sharon Boleck–Mroz.) (nac) (Entered: 02/13/2014) |
| 02/13/2014 | 879 | | Letter to Chief Judge Philip P. Simon from Juan Briseno objecting to a continuane of his trial date of 4/7/2014. (nac) (Entered: 02/13/2014) |
| 02/14/2014 | 881 | | ORDER: The Final Pretrial Conference as to Juan Briseno previously scheduled for 3/7/2014 is now VACATED. (Text entry only, no pdf is attached). Approved by Chief Judge Philip P Simon on 2/14/2014. (nac) (Entered: 02/14/2014) |
| 02/21/2014 | 885 | | ORDER denying 717 Motion for Disclosure of Specific Informants and Related Information and 718 Motion for Disclosure of Scientific/Forensic Testing as to Juan Briseno (1). Signed by Magistrate Judge Andrew P Rodovich on 2/21/14. (mc) (Entered: 02/21/2014) |
| 02/28/2014 | 889 | | STATUS CONFERENCE as to Juan Briseno held on 2/28/2014 before Chief Judge Philip P Simon. (Note: portions of this hearing held under seal). Govt appeared by attys David J. Nozick and Bruce R. Hegyi. Dft was present in person and by cnsl Arlington Foley and John Maksimovich. Court cites a brief history of the case regarding the motion to continue trial that was filed by the defense on 1/31/2014 849 . At the last hearing the Court indicated that the trial would be continued however a new date was not yet selected. Defense cnsl makes an oral record as to why a continuance was requested. Further discussion is held with the Court regarding this matter without the Govt in attendance (Note: these discussions are the sealed portion of this hearing and the Govt re–enters the |

| | | | |
|---|---|---|---|
| | | | hearing after these discussions concluded). The Court hears from dft Juan Briseno after being sworn under oath. The dft indicates that he agrees to a continuance of the trial. Discussion had on the dft's present place of incarceration. Court to investigate this matter. Defense cnsl may file a motion after giving the Court sufficient time to investigate the circumstances of the dft's move to a different facility. Court continues the 4/7/2014 trial date. A new trial date will be entered by order. Additional status conferences with the parties will be scheduled periodically after the new trial date is entered. Defendant REMANDED to custody of US Marshal.(Court Reporter Sharon Boleck–Mroz.) (nac) (Entered: 03/04/2014) |
| 03/07/2014 | 892 | | SPEEDY TRIAL ORDER granting 849 Motion to Continue Jury Trial as to Juan Briseno (1). The trial of the case against defendant Juan Briseno is continued from April 7, 2014 and reset to begin Monday 1/12/2015 in US District Court – Hammond before Chief Judge Philip P Simon. Signed by Chief Judge Philip P Simon on 3/7/14. (mc) (Entered: 03/07/2014) |
| 03/12/2014 | 896 | | NOTICE *of Criminal Felony Conviction Under FRE 609* by United States of America as to Juan Briseno (Nozick – AUSA, David) (Entered: 03/12/2014) |
| 04/07/2014 | 911 | | ORDER as to Juan Briseno : Counsel are directed to confer so that no later than May 23, 2014, the parties shall file a joint proposed voir dire questionnaire. In addition, each party may file its own separate proposal of additional questions to which the opposing party would not agree. Signed by Chief Judge Philip P Simon on 4/7/14. (mc) (Entered: 04/07/2014) |
| 05/23/2014 | 932 | | Proposed Voir Dire by Juan Briseno (Maksimovich, John) (Entered: 05/23/2014) |
| 05/23/2014 | 933 | | NOTICE *of Filing* by United States of America as to Juan Briseno (Attachments: # 1 Exhibit Government's Proposed Juror Questionnaire)(Hegyi – AUSA, Bruce) (Entered: 05/23/2014) |
| 06/06/2014 | 943 | | MOTION Penalty Phase Mental Health Discovery & Firewall Counsel by United States of America as to Juan Briseno. (Attachments: # 1 Exhibit US v. Millner – Memorandum Opinion, # 2 Exhibit US v. Montgomery – Memorandum Opinion)(Hegyi – AUSA, Bruce) (Entered: 06/06/2014) |
| 06/06/2014 | 944 | | ORDER as to Juan Briseno: Proposed juror questionnaire due by 6/20/2014 with hearing finalize the juror questionnaire set for 6/30/2014 01:45 PM in US District Court – Hammond before Chief Judge Philip P Simon. The United States Marshal shall produce defendant Juan Briseno for the hearing. Signed by Chief Judge Philip P Simon on 6/6/14. cc: USMS (mc) (Entered: 06/06/2014) |
| 06/18/2014 | 955 | | NOTICE *of Joint Filling of Agreed Proposed Juror Questionnaire* by United States of America as to Juan Briseno (Attachments: # 1 Exhibit Agreed Proposed Juror Questionnaire)(Hegyi – AUSA, Bruce) (Entered: 06/18/2014) |
| 06/25/2014 | 963 | | SCHEDULING ORDER as to Juan Briseno. Signed by Chief Judge Philip P Simon on 6/25/2014. (rmn) (Entered: 06/25/2014) |
| 06/30/2014 | 966 | | AMENDED ORDER re 963 Scheduling Order as to Juan Briseno. Signed by Chief Judge Philip P Simon on 6/30/2014. (tc) (Entered: 07/01/2014) |
| 06/30/2014 | 969 | | HEARING as to Juan Briseno held on 6/30/2014 before Chief Judge Philip P. Simon. Govt present by AUSAs David Nozick and Bruce Hegyi. Dft Juan Briseno is present in person and by cnsl Arlington Foley and John Maksimovich. Discussion on proposed juror questionnaire. Court proposes revisions to which the |

29

| | | | |
|---|---|---|---|
| | | | parties have no objections. Discussion on hardship question. Brief discussion on two additional names to be added on page 30. These names were previously intentionally omitted due to security issues. The approximate number of potential jurors to be summoned are 300–400 persons. Parties have discussion on the adjustment of deadlines from the previous scheduling order entered by the court. The court will enter an amended order. Court reminds the parties that the trial date is firm – January 12, 2015. The Court continues to work out the details of the actual juror selection process and will issue an order regarding this. The parties will have an opportunity to submit objections to this plan. The court directs the Govt to clarify its Notice to Seek Death Penalty. The Court DENIES motion 943 as moot. Defendant REMANDED to custody of US Marshal.(Court Reporter Stacy Drohosky.) (nac) (Entered: 07/01/2014) |
| 07/01/2014 | 968 | | MOTION for Leave to File *Supplemental Notice of Intent to Seek Death Penalty* by United States of America as to Juan Briseno. (Attachments: # 1 Exhibit Supplemental Notice of Intent to Seek Death Penalty)(Hegyi – AUSA, Bruce) (Entered: 07/01/2014) |
| 07/01/2014 | 970 | | ORDER as to Juan Briseno re 969 Hearing : The Clerk shall prepare the attached Special Questionnaire for completion by prospective jurors to be summoned for service in the January 12, 2015 trial of Juan Briseno. Signed by Chief Judge Philip P Simon on 7/1/14. (Attachments: # 1 The Special Questionnaire) (mc) (Entered: 07/01/2014) |
| 07/11/2014 | | | Terminate Deadlines/Hearings as to case dfts: NOTE: ONLY PAST deadlines were terminated to clean up the docket sheet to show only the pending deadlines/hearings. (Entered: 07/11/2014) |
| 07/11/2014 | | | Terminate PAST Deadlines and Hearings as to all dfts. NOTE: no current deadlines or hearings were terminated. (nac) (Entered: 07/11/2014) |
| 07/11/2014 | 980 | | NOTICE *OF EXPERT WITNESSES* by United States of America as to Juan Briseno (Nozick – AUSA, David) (Entered: 07/11/2014) |
| 07/22/2014 | 995 | | ORDER granting 968 Motion for Leave to File a supplemental NOI as to Juan Briseno (1). The proposed Supplemental Notice of Intent to Seek the Penalty of Death Pursuant to Title 18 United States Code Section 3593 (attached as Exhibit 1 to DE 968) is DEEMED FILED. Signed by Chief Judge Philip P Simon on 7/22/14. (mc) (Entered: 07/22/2014) |
| 08/08/2014 | 1012 | | MOTION To Empanel Anonymous Jury by United States of America as to Juan Briseno. (Hegyi – AUSA, Bruce) (Entered: 08/08/2014) |
| 08/14/2014 | 1014 | | MOTION for Extension of Time to File *Motions Challenging the Death Penalty Act* by Juan Briseno. (Maksimovich, John) (Entered: 08/14/2014) |
| 08/15/2014 | 1016 | | (SEALED) MOTION to Seal Document by Juan Briseno. (Foley, Arlington) (Entered: 08/15/2014) |
| 08/15/2014 | 1017 | | SEALED MOTION by Juan Briseno. (Foley, Arlington) (Entered: 08/15/2014) |
| 08/18/2014 | 1018 | | ORDER granting 1014 Motion for Extension of Time to File as to Juan Briseno (1). Defendant Juan Briseno's pretrial motions challenging the Federal Death Penalty Act or the government's Notice of Intent to seek the death penalty due by 8/22/2014. Government responses due by 9/23/2014. Defendant's reply brief due by 10/7/2014. Signed by Chief Judge Philip P Simon on 8/18/2014. (dkw) |

| | | | (Entered: 08/18/2014) |
|---|---|---|---|
| 08/18/2014 | 1021 | | ORDER granting 1016 Motion to Seal Document as to Juan Briseno (1). Signed by Chief Judge Philip P Simon on 8/18/2014. (dkw) (Entered: 08/18/2014) |
| 08/22/2014 | 1023 | | (SEALED) MOTION to Seal Document by Juan Briseno. (Foley, Arlington) (Entered: 08/22/2014) |
| 08/22/2014 | 1024 | | SEALED MOTION by Juan Briseno. (Foley, Arlington) (Entered: 08/22/2014) |
| 08/22/2014 | 1025 | | ORDER granting 1023 Motion to Seal Document as to Juan Briseno (1). Signed by Chief Judge Philip P Simon on 8/22/2014. (dkw) (Entered: 08/22/2014) |
| 08/22/2014 | 1026 | | MOTION *Request To File Over–Length Motion* by Juan Briseno. (Maksimovich, John) (Entered: 08/22/2014) |
| 08/22/2014 | 1027 | | MOTION re 1026 MOTION WITH INCORPORATED MEMORANDUM TO STRIKE THE NOTICE OF AGGRAVATING FACTORS by Juan Briseno. (Attachments: # 1 Appendix)(Maksimovich, John) Modified on 8/25/2014 (dkw). (Entered: 08/22/2014) |
| 08/25/2014 | 1029 | | ORDER granting 1026 Motion/Request to File Over–Length Brief as to Juan Briseno (1). Signed by Chief Judge Philip P Simon on 8/25/2014. (dkw) (Entered: 08/25/2014) |
| 08/25/2014 | 1030 | | ORDER as to Juan Briseno re 1012 MOTION To Empanel Anonymous Jury filed by United States of America. Defendant Response Brief due by 9/5/2014. Government Reply Brief due by 9/19/2014. Signed by Chief Judge Philip P Simon on 8/25/14. (kjp) (Entered: 08/25/2014) |
| 08/26/2014 | 1032 | | RECEIPT of Verdict Forms disc referencing DE 1027 . Disc filed in office. (eml) (Entered: 08/26/2014) |
| 08/27/2014 | 1035 | | *SEALED* ORDER finding moot 1017 Sealed Motion as to Juan Briseno (1) in light of the filing of the amended Sealed Motion 1024 . Signed by Chief Judge Philip P Simon on 8/27/2014. (dkw) (Entered: 08/27/2014) |
| 08/27/2014 | 1037 | | Supplemental MOTION to Supplement 1024 SEALED MOTION filed by Juan Briseno *Omitted Exhibit* by Juan Briseno. (Foley, Arlington) (Entered: 08/27/2014) |
| 08/27/2014 | 1038 | | ORDER granting 1037 Motion to Supplement as to Juan Briseno (1). Briseno is granted leave to file the submitted exhibit UNDER SEAL. All other counsel and parties are DIRECTED TO DISREGARD, DIRECTED NOT TO REVIEW AND DIRECTED NOT TO MAINTAIN ACCESS TO Briseno's supplemental submission, which was inadvertently not electronically filed under seal initially by counsel (though has been promptly sealed by the Court). Signed by Chief Judge Philip P Simon on 8/27/2014. (dkw) (Entered: 08/27/2014) |
| 08/28/2014 | 1041 | | (SEALED) MOTION to Seal Document by Juan Briseno. (Foley, Arlington) (Entered: 08/28/2014) |
| 08/28/2014 | 1042 | | SEALED MOTION by Juan Briseno. (Foley, Arlington) (Entered: 08/28/2014) |
| 08/29/2014 | 1043 | | ORDER granting 1041 Motion to Seal Document as to Juan Briseno (1). Signed by Chief Judge Philip P Simon on 8/29/2014. (dkw) (Entered: 08/29/2014) |

31

| 08/29/2014 | 1045 | | MOTION for Extension of Time to File Response/Reply *to Government's Motion to Empanel an Anonymous Jury* by Juan Briseno. (Attachments: # 1 Proposed Order)(Foley, Arlington) (Entered: 08/29/2014) |
|---|---|---|---|
| 09/02/2014 | 1046 | | ORDER granting in part and denying in part 1045 Motion for Extension of Time to File Response/Reply as to Juan Briseno (1). Time is of the essence in view of the need to get the jury notice out in a timely manner and to finalize the mechanics of the juror questionnaire. Defendant Response Brief due by Friday 9/12/2014. Government Reply Brief due by Thursday 9/25/2014. A hearing on the motion is set for Friday 9/26/2014 at 1:30 p.m. Signed by Chief Judge Philip P Simon on 9/2/2014. (dkw) (Entered: 09/02/2014) |
| 09/04/2014 | 1051 | | SEALED EX PARTE ORDER: Signed by Chief Judge Diane P. Wood, U.S. Court of Appeals–7th Circuit. (nac). Copy to defense cnsl only. Modified on 2/6/2015 to indicate that service was made upon defense cnsl only. (nac). (Entered: 09/04/2014) |
| 09/05/2014 | 1053 | | ORDER as to Juan Briseno re 970 Order : counsel are directed to review the electronic version of the agreed Special Questionnaire for prospective jurors in the trial of defendant Juan Briseno. Any questions or concerns should be expressed by way of email to the court and all counsel no later than September 25, 2014, and any formal objections can be addressed on the record at the September 26 hearing already set on the motion to empanel an anonymous jury.. Signed by Chief Judge Philip P Simon on 9/5/14. (mc) (Entered: 09/05/2014) |
| 09/05/2014 | | | Set/Reset Deadlines as to Juan Briseno: questions or concerns re 1053 due by 9/25/2014. (mc) (Entered: 09/05/2014) |
| 09/10/2014 | 1055 | | NOTICE OF HEARING ON MOTION in case as to Juan Briseno 1027 MOTION re 1026 MOTION *Request To File Over–Length Motion MOTION WITH INCORPORATED MEMORANDUM TO STRIKE THE NOTICE OF AGGRAVATING FACTORS* : Motion Hearing set for 11/18/2014 09:30 AM in US District Court – Hammond before Chief Judge Philip P Simon. (nac) (Entered: 09/10/2014) |
| 09/12/2014 | 1056 | | RESPONSE to Motion by Juan Briseno re 1012 MOTION To Empanel Anonymous Jury (Foley, Arlington) (Entered: 09/12/2014) |
| 09/12/2014 | 1057 | | (SEALED) MOTION to Seal Document by Juan Briseno. (Maksimovich, John) (Entered: 09/12/2014) |
| 09/12/2014 | 1058 | | SEALED MOTION by Juan Briseno. (Maksimovich, John) (Entered: 09/12/2014) |
| 09/16/2014 | 1061 | | ORDER GRANTING 1057 Motion to Seal Document as to Juan Briseno (1). (Text entry only, no pdf is attached). Approved by Chief Judge Philip P Simon on 9/16/2014. (nac) (Entered: 09/16/2014) |
| 09/16/2014 | 1062 | | RESPONSE in Opposition by United States of America as to Juan Briseno re 1027 MOTION re 1026 MOTION *Request To File Over–Length Motion MOTION WITH INCORPORATED MEMORANDUM TO STRIKE THE NOTICE OF AGGRAVATING FACTORS* (Attachments: # 1 Exhibit #1 – Order in Coonce and Hall (2014), # 2 Exhibit #2 – Order in Guerrero (2014), # 3 Exhibit #3 – Order in Sablan (2014), # 4 Exhibit #4 – Order in Candelario–Santana (2012))(Hegyi – AUSA, Bruce) (Entered: 09/16/2014) |
| 09/18/2014 | 1063 | | |

32

| | | | |
|---|---|---|---|
| | | | SEALED EX PARTE ORDER as to Juan Briseno. Motions terminated as to Juan Briseno: 1058 . Signed by Chief Judge Philip P Simon on 9/18/2014. (nac). Copy to defense cnsl only. Modified on 2/6/2015 to indicate service upon defense cnsl only.(nac). (Entered: 09/18/2014) |
| 09/18/2014 | 1065 | | REPLY TO RESPONSE to Motion by United States of America as to Juan Briseno re 1012 MOTION To Empanel Anonymous Jury (Hegyi – AUSA, Bruce) (Entered: 09/18/2014) |
| 09/19/2014 | 1066 | | NOTICE *OF INTENT TO INTRODUCE ENTERPRISE EVIDENCE (SUPPLEMENTAL)* by United States of America as to Juan Briseno (Nozick – AUSA, David) (Entered: 09/19/2014) |
| 09/24/2014 | 1072 | | NOTICE OF HEARING ON MOTION in case as to Juan Briseno 1012 MOTION To Empanel Anonymous Jury : Motion Hearing RESET for 9/26/2014 01:00 PM in US District Court – Hammond before Chief Judge Philip P Simon. Please note that this is a change in time only to 1:00 p.m. (Central/Hammond time). (nac) (Entered: 09/24/2014) |
| 09/26/2014 | 1076 | | MOTION HEARING (regarding 1012 ) as to Juan Briseno. MOTION To Empanel Anonymous Jury filed by United States of America before Chief Judge Philip P Simon. Govt present by David Nozick, AUSA in person and Bruce R. Hegyi, AUSA by telephone. Dft Juan Briseno is present in person and by counsel Arlington Foley and John Maksimovich. Court hears oral argument on motion. Govt submits exhibits to the court (Govt exhibits 1,2,3,4 & 5), however they are not officially offered or admitted and are only for the court's reference in this matter. Court takes this matter under advisement and will issue a ruling within two weeks. Other issues discussed: Court sets a deadline of 12/5/2014 with regard to juror challenges for cause. By 12/5/2014 the court orders that the following three lists be submitted to the court: (1) agreed list of juror strikes for cause. (2) challenges for cause that the dft wants and that the govt disagrees with (3) challenges for cause that the Govt wants that the dft disagrees with. Those lists shall be submitted under seal with a hearing to be held on this issue on 12/18/2014 at 10:00 a.m. (Central/Hammond time) in U.S. District Court – Hammond before Chief Judge Philip P. Simon. Defendant REMANDED to custody of US Marshal. The U.S. Marshal is ordered to produce the dft for this hearing. (Court Reporter Stacy Droshoky) (nac) Modified on 9/29/2014 to provide additional information. (nac). (Entered: 09/29/2014) |
| 09/30/2014 | 1077 | | ORDER DENYING 1012 Motion to empanel an anonymous jury, as to Juan Briseno (1). Signed by Chief Judge Philip P Simon on 9/30/14. (kjp) (Entered: 09/30/2014) |
| 10/06/2014 | 1083 | | MOTION for Writ of Habeas Corpus ad testificandum by United States of America as to Juan Briseno. (Nozick – AUSA, David) (Entered: 10/06/2014) |
| 10/10/2014 | 1091 | | (SEALED) MOTION to Seal Document by Juan Briseno. (Foley, Arlington) (Entered: 10/10/2014) |
| 10/10/2014 | 1092 | | SEALED MOTION by Juan Briseno. (Attachments: # 1 1, # 2 2, # 3 3)(Foley, Arlington) (Entered: 10/10/2014) |
| 10/16/2014 | 1100 | | (SEALED) MOTION to Seal Document by Juan Briseno. (Maksimovich, John) (Entered: 10/16/2014) |

33

| 10/16/2014 | 1101 | | SEALED MOTION by Juan Briseno. (Maksimovich, John) (Entered: 10/16/2014) |
|---|---|---|---|
| 10/16/2014 | 1102 | | ORDER GRANTING 1091 Motion to Seal Document as to Juan Briseno (1). (Text entry only, no pdf is attached). Approved by Chief Judge Philip P Simon on 10/16/2014. (nac) (Entered: 10/16/2014) |
| 10/16/2014 | 1103 | | ORDER GRANTING 1100 Motion to Seal Document as to Juan Briseno (1). (Text entry only, no pdf is attached). Approved by Chief Judge Philip P Simon on 10/16/2014. (nac) (Entered: 10/16/2014) |
| 10/17/2014 | 1104 | | (SEALED) MOTION to Seal Document by Juan Briseno. (Maksimovich, John) (Entered: 10/17/2014) |
| 10/17/2014 | 1105 | | SEALED MOTION by Juan Briseno. (Maksimovich, John) (Entered: 10/17/2014) |
| 10/27/2014 | 1111 | | (SEALED) MOTION to Seal Document by Juan Briseno. (Foley, Arlington) (Entered: 10/27/2014) |
| 10/27/2014 | 1112 | | SEALED MOTION by Juan Briseno. (Attachments: # 1 1, # 2 2, # 3 3)(Foley, Arlington) (Entered: 10/27/2014) |
| 10/28/2014 | 1113 | | ORDER GRANTING 1111 Motion to Seal Document as to Juan Briseno (1). (Text entry only, no pdf is attached). Approved by Chief Judge Philip P Simon on 10/28/2014. (nac) (Entered: 10/28/2014) |
| 10/30/2014 | 1118 | | SEALED EX PARTE ORDER on sealed motion 1112 as to Juan Briseno. Signed by Chief Judge Philip P Simon on 10/30/2014. Copy to defense cnsl oly (nac) Modified on 2/6/2015 to indicate copy to defense cnsl only. (nac). (Entered: 10/30/2014) |
| 10/31/2014 | 1119 | | SEALED EX PARTE ORDER as to Juan Briseno on Sealed Motion 1101 . Signed by Chief Judge Philip P Simon on 10/31/2014. Copy to defense cnsl only (nac) Modified on 2/6/2015 to indicate copy provided to defense cnsl only. (nac). (Entered: 10/31/2014) |
| 10/31/2014 | 1120 | | ORDER GRANTING 1104 Motion to Seal Document as to Juan Briseno (1). Approved by Chief Judge Philip P Simon on 10/31/2014. (Text entry only, no pdf is attached). (nac) (Entered: 10/31/2014) |
| 10/31/2014 | 1121 | | (SEALED) MOTION to Seal Document by Juan Briseno. (Maksimovich, John) (Entered: 10/31/2014) |
| 10/31/2014 | 1122 | | SEALED MOTION by Juan Briseno. (Maksimovich, John) (Entered: 10/31/2014) |
| 11/04/2014 | 1130 | | Amended MOTION for Writ of Habeas Corpus ad testificandum by United States of America as to Juan Briseno. (Nozick – AUSA, David) (Entered: 11/04/2014) |
| 11/04/2014 | 1131 | | SANTIAGO PROFFER by United States of America as to Juan Briseno (Nozick – AUSA, David) (Entered: 11/04/2014) |
| 11/04/2014 | 1132 | | MOTION For An Informative Outline of the Government's Factual Basis For the NonStatutory Aggravating Factor that Mr. Briseno is a Continuing Danger to the Lives and Safety of Others and is Likely to Commit Acts of Violence in the Future by Juan Briseno. by Juan Briseno. (Maksimovich, John) (Entered: 11/04/2014) |
| 11/05/2014 | 1135 | | MOTION For Eye Examination by Juan Briseno. (Maksimovich, John) (Entered: 11/05/2014) |

| 11/05/2014 | 1140 | | ORDER granting 1130 Amended Motion for Writ of Habeas Corpus Ad Testificandum in re Juan Briseno (1). Signed by Magistrate Judge Andrew P Rodovich on 11/5/14. cc: 3 certified copies to USMS (mc) (Entered: 11/05/2014) |
| 11/06/2014 | 1143 | | SCHEDULING ORDER as to Juan Briseno: In view of the hearing set November 18, the government shall file a response to defendant Juan Briseno's Motion for an Informative Outline of the Government's Fatual Basis for the Nonstatutory Aggravating Factor, etc. [DE 1132] no later than Monday, November 10, 2014. Approved by Chief Judge Philip P Simon on 11/6/2014 (no.pdf attached; docket text only). (dkw) (Entered: 11/06/2014) |
| 11/10/2014 | 1150 | | SEALED DOCUMENT (Nozick – AUSA, David) (Entered: 11/10/2014) |
| 11/10/2014 | 1153 | | RESPONSE in Opposition by United States of America as to Juan Briseno re 1132 MOTION For An Informative Outline of the Government's Factual Basis For the NonStatutory Aggravating Factor that Mr. Briseno is a Continuing Danger to the Lives and Safety of Others and is Likely to Commit Acts of Violence in the Future by Juan *Briseno* (Hegyi – AUSA, Bruce) (Entered: 11/10/2014) |
| 11/13/2014 | 1158 | | SEALED ORDER as to Juan Briseno: Motions terminated as to Juan Briseno: 1121 SEALED MOTION to Seal Document filed by Juan Briseno, 1105 SEALED MOTION filed by Juan Briseno, 1122 SEALED MOTION filed by Juan Briseno. Signed by Chief Judge Philip P Simon on 11/13/2014. (nac) Modified on 11/18/2014 to indicate order 1158 sent to A. Foley and J. Maksimovich by CM/ECF system and by email. (nac). (Entered: 11/13/2014) |
| 11/14/2014 | 1160 | | ORDER DENYING 1132 Motion as to Juan Briseno (1). Signed by Chief Judge Philip P Simon on 11/14/14. (eml) (Entered: 11/14/2014) |
| 11/14/2014 | 1162 | | ORDER: The proposed jury instructions to be filed by 12/1/2014, should include proposed verdict forms for each phase of the trial as to Juan Briseno. Signed by Chief Judge Philip P Simon on 11/14/2014. (tc) (Entered: 11/14/2014) |
| 11/18/2014 | 1165 | | SEALED ORDER: (This document is accessible ONLY by United States of America and attorneys for dft Juan Briseno). Signed by Chief Judge Philip P Simon on 11/18/2014. (nac) Modified on 11/18/2014 to note that order provided to USA, A. Foley and J. Maksimovich by CM/ECF system and by email. (nac). (Entered: 11/18/2014) |
| 11/18/2014 | 1169 | | MOTION HEARING as to Juan Briseno held on 11/18/2014 re 1027 MOTION TO STRIKE THE NOTICE OF AGGRAVATING FACTORS filed by Juan Briseno before Chief Judge Philip P Simon. Govt present by David Nozick, AUSA and Bruce R. Hegyi, AUSA. Dft is present in person and by cnsl Arlington Foley and John Maksimovich. Court hears argument on the motion. Court takes matter under advisement and will issue an opinion. Other matters discussed: Govt reminded that Colon video needs to be provided to the court. Recess taken. Discussion on other matters continues. Trial schedule – Trial days Monday – Thursday. Parties agree to schedule. Jury selection schedule not finalized but probable for Monday – Friday until the jury panel is selected. Defense inquires of storgage area for trial materials. Court will look into this matter for Attys Foley and Maksimovich. Weather issues/problems during trial discussed. Next hearing dates: 12/12/14 (10:00 a.m.) and 12/18/14 (10:00 a.m.). Defendant REMANDED to custody of US Marshal.(Court Reporter Stacy Drohosky.) (nac) (Entered: 11/20/2014) |

35

| 11/21/2014 | 1181 | | SEALED EX PARTE ORDER. Signed by Chief Judge Diane P. Wood on 11/21/2014. Copy to defense cnsl only.(nac) Modified on 2/6/2015 to indicate service was made to defense cnsl only. (nac). (Entered: 11/26/2014) |
| --- | --- | --- | --- |
| 11/24/2014 | 1171 | | SEALED DOCUMENT (Nozick – AUSA, David) (Entered: 11/24/2014) |
| 11/24/2014 | 1172 | | TRIAL BRIEF by United States of America as to Juan Briseno (Hegyi – AUSA, Bruce) (Entered: 11/24/2014) |
| 11/25/2014 | 1173 | | ORDER granting 1135 Motion for Eye Examination as to Juan Briseno. The court ORDERS the Jerome Combs Detention Center to schedule Juan Briseno for an eye examination. Signed by Magistrate Judge Andrew P Rodovich on 11/25/2014.(cc: Jerome Combs Detention Center) (rmn) (Entered: 11/25/2014) |
| 11/25/2014 | 1174 | | MOTION Defendant's Proposed Jury Selection Procedures and Memorandum of Law Regarding Capital Voir Dire re 1172 Trial Brief by Juan Briseno. (Maksimovich, John) (Entered: 11/25/2014) |
| 11/25/2014 | 1177 | | SEALED ORDER (This document is accessible ONLY by United States of America and attorneys for dft Juan Briseno). Signed by Chief Judge Philip P Simon on 11/25/2014. (nac) (Entered: 11/25/2014) |
| 11/29/2014 | 1182 | | Preliminary Proposed Voir Dire by Juan Briseno (Maksimovich, John) (Entered: 11/29/2014) |
| 11/29/2014 | 1183 | | MOTION for Extension of Time to File *Proposed Jury Instructions and Verdict Forms* by Juan Briseno. (Maksimovich, John) (Entered: 11/29/2014) |
| 12/01/2014 | 1186 | | ORDER granting 1183 Motion for Extension of Time to File Proposed Jury Instructions and Verdict Forms as to Juan Briseno (1). Proposed Jury Instructions and verdict forms are due by 12/8/2014. Signed by Chief Judge Philip P Simon on 12/1/14. (mc) (Entered: 12/01/2014) |
| 12/03/2014 | 1198 | | NOTICE *OF INTENT TO INTRODUCE ENTERPRISE EVIDENCE (AMENDED SUPPLEMENTAL)* by United States of America as to Juan Briseno (Nozick – AUSA, David) (Entered: 12/03/2014) |
| 12/05/2014 | 1202 | | SEALED DOCUMENT (Hegyi – AUSA, Bruce) (Entered: 12/05/2014) |
| 12/05/2014 | 1203 | | MOTION for Extension of Time to File *Non−Agreed Strikes For Cause* by Juan Briseno. (Maksimovich, John) (Entered: 12/05/2014) |
| 12/08/2014 | 1205 | | ORDER granting 1203 Joint Motion for Extension of Time to Submit Non−Agreed Strikes for Cause. Both parties are granted to 3:00 p.m. Hammond/Central Time on Wednesday, December 10, 2014 to file their respective lists of non−agreed strikes for cause. Approved by Chief Judge Philip P Simon on 12/8/2014. (dkw) [no.pdf attached; docket text only] (Entered: 12/08/2014) |
| 12/08/2014 | 1206 | | Proposed Jury Instructions by United States of America as to Juan Briseno (Attachments: # 1 Proposed Guilt Phase Jury Instructions, # 2 Proposed Guilty Phase Verdict Form, # 3 Proposed Penalty Phase Jury Instructions, # 4 Proposed Penalty Phase Verdict Form)(Hegyi – AUSA, Bruce) (Entered: 12/08/2014) |
| 12/10/2014 | 1208 | | SEALED DOCUMENT (Hegyi – AUSA, Bruce) (Entered: 12/10/2014) |
| 12/10/2014 | 1209 | | SEALED DOCUMENT (Hegyi – AUSA, Bruce) (Entered: 12/10/2014) |

| 12/10/2014 | 1210 | | GOVERMENT'S RESPONSE TO DEFENDANT'S REQUESTED PRELIMINARY VOIR DIRE INSTRUCTIONS by United States of America to 1182 Proposed Voir Dire. (Hegyi – AUSA, Bruce) (Entered: 12/10/2014) |
|---|---|---|---|
| 12/10/2014 | 1211 | | (SEALED) MOTION to Seal Document by Juan Briseno. (Maksimovich, John) (Entered: 12/10/2014) |
| 12/10/2014 | 1212 | | SEALED MOTION by Juan Briseno. (Maksimovich, John) (Entered: 12/10/2014) |
| 12/10/2014 | 1213 | | DEFENDANTS REPLY TO GOVERNMENTS LIMITED OBJECTIONS TO DEFENDANTS REQUESTED PRELIMINARY VOIR DIRE INSTRUCTIONS to 1210 Response/Reply/Objection. (Maksimovich, John) (Entered: 12/10/2014) |
| 12/11/2014 | 1216 | | ORDER granting 1211 Motion to Seal Document 1212 as to Juan Briseno (1). Signed by Magistrate Judge Andrew P Rodovich on 12/11/14. (mc) (Entered: 12/11/2014) |
| 12/11/2014 | 1217 | | ORDER: Granting Motion to Seal 1211 for document 1212 as to Juan Briseno. Text entry only. No pdf is attached. Approved by Chief Judge Philip P Simon on 12/11/2014. (nac) (Entered: 12/11/2014) |
| 12/11/2014 | 1218 | | (SEALED) MOTION to Seal Document by Juan Briseno. (Maksimovich, John) (Entered: 12/11/2014) |
| 12/11/2014 | 1219 | | SEALED MOTION by Juan Briseno. (Maksimovich, John) (Entered: 12/11/2014) |
| 12/11/2014 | 1220 | | MOTION for Extension of Time to File *Exhibit List* by United States of America as to Juan Briseno. (Hegyi – AUSA, Bruce) (Entered: 12/11/2014) |
| 12/11/2014 | 1221 | | MOTION for Leave to File *Government's Motion In Limine* by United States of America as to Juan Briseno. (Nozick – AUSA, David) (Entered: 12/11/2014) |
| 12/11/2014 | 1222 | | MOTION in Limine *Regarding the Admissibility of an Excited Utterance Under Federal Rule of Evidence 803(2) At Trial* by United States of America as to Juan Briseno. (Nozick – AUSA, David) (Entered: 12/11/2014) |
| 12/11/2014 | 1223 | | SUPPLEMENT to 1213 Response/Reply/Objection by United States of America as to Juan Briseno *Sur–Reply to Defendant's Reply to Governmen'ts Liimited Objections to Defendant's Requested Preliminary Voir Dire Instructions* (Attachments: # 1 Transcript of 03/25/2013 Hearing [DE 794] in US v. Bencevi, # 2 Govt's 03/26/2013 Informative Motion [DE 404] in US v. Bencevi, # 3 Judge Fuste's 04/01/2013 Order [DE 424] in US v. Bencevi)(Hegyi – AUSA, Bruce) (Entered: 12/11/2014) |
| 12/11/2014 | 1224 | | ORDER as to Juan Briseno. Signed by Chief Judge Philip P Simon on 12/11/14. (Attachments: # 1 Preliminary Jury Instructions) (mc) (Entered: 12/11/2014) |
| 12/12/2014 | 1225 | | MOTION to Dismiss *Counts 10, 14, 16, 18, 20 and 22 of the Fourth Superseding Indictment* by United States of America as to Juan Briseno. (Nozick – AUSA, David) (Entered: 12/12/2014) |
| 12/12/2014 | | | SEALED EXPARTE ORDER ruling on motion 1219 . Signed by Chief Judge Philip P Simon on 12/12/2014. (copy to defense cnsl for Juan Briseno only). (nac) (Entered: 12/12/2014) |
| 12/12/2014 | 1227 | | ORDER – GRANTING 1220 Motion for Extension of Time to File Exhibit List as to Juan Briseno (1): Exhibit List due by 12/19/2014. (Text entry only, no pdf is |

37

| | | | |
|---|---|---|---|
| | | | attached) Granted in open court during 12/12/2014 hearing. Chief Judge Philip P. Simon. (nac) (Entered: 12/12/2014) |
| 12/12/2014 | 1228 | | ORDER GRANTING Motion to Dismiss Counts of the Fourth Superseding Indictment (Text entry order only) for the dismissal of 924j counts (10, 14, 16, 18, 20 and 22) as to Juan Briseno. Order GRANTED at the hearing in open court held on 12/12/2014. Chief Judge Philip P. Simon. (nac) Modified on 3/2/2015 to further clarity. (nac). (Entered: 12/12/2014) |
| 12/12/2014 | 1229 | | ORDER GRANTING 1221 Motion for Leave to File Instanter Motion in Limine as to Juan Briseno (1). (Text entry only, no pdf to be issued). Approved by Chief Judge Philip P Simon on 12/12/2014. (nac) (Entered: 12/12/2014) |
| 12/12/2014 | 1231 | | (SEALED) MOTION to Seal Document by Juan Briseno. (Foley, Arlington) (Entered: 12/12/2014) |
| 12/12/2014 | 1232 | | SEALED MOTION by Juan Briseno. (Foley, Arlington) (Entered: 12/12/2014) |
| 12/12/2014 | 1237 | | FINAL PRETRIAL CONFERENCE as to Juan Briseno held on 12/12/2014 before Chief Judge Philip P Simon. (Note: a second Final Pretrial Conference is scheduled for 1/5/2015 at 10:00 a.m. before Chief Judge Simon). Govt appeared by attorneys David Nozick (in person) and Bruce Hegyi (by telephone). Dft is present in person and by counsel John Maksimovich and Arlington Foley. A number of issues and topics were initiated by the court and discussed with counsel including the following: Juror questionairres: no line for a sworn signature of the potential juror, some juror questionairres not being fully completed, some juror questionairres never returned by the potential juror. Atty Hegyi will provide a list (under seal) to the Court of those questionairres that have not been fully completed. Defense request for daily copy of jury selection – Court GRANTS. No partial transcripts will be prepared, there will be a morning transcript and an afternoon transcript. Juror numbers to be used in court to refer to the prospective jurors. Court explains jury selection process to attorneys. The Court DENIES the defense request for additional challenges. Discussion on method of prememptory challenges. "Jury box" method to be used. Motion for extension of time to file Exhibit List is GRANTED. Exclusion of witnesses discussed. Scope of enterprise evidence discussion. Court reminds attorneys of the local rule regarding release of info to media/press. Govt has moved for the dismissal of 924J counts – Court GRANTS. Discussion on overflow room. Discussion on security issues. Conference room to be provided to defense attorneys to house trial materials. Parties to provide cell phone numbers to Case Mgr in case of need/emergency during the trial. Juror note taking will be permitted. Further discussion on overflow room as it relates to exclusion of witnesses. Government questions/comments discussion: govt witness list to defense the night prior to when that witness will be called, a power point that the govt intends to use (to be provided to the court by the end of the year). Two videos to be played during the trial. NCIC of witnesses. Brief discussion on stipulations, deadlines, rebuttal experts due 1/23/2015. Defense counsel additional concerns: facility for housing dft (court to check with USM), personal hygiene products for dft, clothing for dft. If there are any spanish speaking witnesses, an interpreter will need to be arranged. Next hearing: Thursday, 12/18/2014 at 10:00 a.m. regarding juror strikes for cause. Defendant REMANDED to custody of US Marshal.(Court Reporter Stacy Drohosky.) (nac) (Entered: 12/15/2014) |
| 12/12/2014 | 1490 | | |

| | | | |
|---|---|---|---|
| | | | DISMISSAL of COUNTS 10, 14, 16, 18, 20 and 22 of the 4th Superseding Indictment as to dft Juan Briseno (01). (Motion is docket entry 1225 , Text entry order dismissing counts is 1228 . This entry goes behind the scenes to officially term these counts. (nac) Modified on 3/2/2015 to further clarify. (nac). (Entered: 03/02/2015) |
| 12/16/2014 | 1239 | | SEALED DOCUMENT (Hegyi – AUSA, Bruce) (Entered: 12/16/2014) |
| 12/18/2014 | 1261 | | HEARING on Parties Challenges for Cause to the Members of the Veneer (based on questionnaires) as to Juan Briseno held on 12/18/2014 before Chief Judge Philip P Simon. Govt present by AUSAs David Nozick and Bruce Hegyi. The dft appears in person and by counsel Arlington Foley and John Maksimovich. Parties discuss Court's proposed dialogue for general voir dire (which also includes proposed questioning of individual jurors). Court and parties discuss individual jurors, the Court orders specific jurors stricken for cause after discussion/argument from counsel. The Clerk shall notify the stricken jurors not to appear. A master list will be created with the remaining potential jurors listed. This list will be randomized and each potential juror will be given a juror number that will remain with the potential juror thru out jury selection. The Court will issue an order on these matters addressed at this hearing. The dft reminds the Court of his request to move to local jail facility and of his request for his personal items. The Court addresses this matter with the dft. Defendant REMANDED to custody of US Marshal.(Court Reporter Stacy Drohosky.) (nac) (Entered: 12/23/2014) |
| 12/19/2014 | 1249 | | (SEALED) MOTION to Seal Document by Juan Briseno. (Maksimovich, John) (Entered: 12/19/2014) |
| 12/19/2014 | 1250 | | SEALED MOTION by Juan Briseno. (Maksimovich, John) (Entered: 12/19/2014) |
| 12/19/2014 | 1251 | | ORDER GRANTING 1231 Motion to Seal Document sealing Document 1232 as to Juan Briseno (1). (Text entry only, no pdf is attached). Approved by Chief Judge Philip P. Simon on 12/19/2014. (nac) (Entered: 12/19/2014) |
| 12/19/2014 | 1252 | | SEALED Ex Parte ORDER: Regarding entry 1219 . Signed by Chief Judge Diane P. Wood (USCA, 7th Circuit on 12/17/2014). Provided to defense cnsl only. (nac) Modified on 2/6/2015 to indicate service upon defense cnsl only. (nac). (Entered: 12/19/2014) |
| 12/23/2014 | 1259 | | ORDER as to Juan Briseno: The Clerk shall provide to counsel the completed juror questionnaire recently received from venireman J.L. No later than 12/31/2014 the parties may file memoranda expressing their agreement or any objection to striking venireman J.L. for cause, and to declaring the questionnaire completion process closed and disregarding any additional untimely questionnaires. Signed by Chief Judge Philip P Simon on 12/23/14. (mc) (Entered: 12/23/2014) |
| 12/23/2014 | 1262 | | ORDER GRANTING 1249 Motion to Seal Document as to Juan Briseno (1). Approved by Chief Judge Philip P Simon on 12/23/2014. (Text entry only). (nac) (Entered: 12/23/2014) |
| 12/23/2014 | 1263 | | ORDER as to Juan Briseno: Regarding jurors stricken for cause. Signed by Chief Judge Philip P Simon on 12/23/2014. (Note: this order is not sealed but does have a sealed attachment). (nac) (Additional attachment(s) added on 12/23/2014: # 1 Supplement) (nac). (Entered: 12/23/2014) |

| 12/23/2014 | 1271 | | SEALED EXPARTE ORDER as to Juan Briseno. Terminating Motion 1250 as to Juan Briseno. Signed by Chief Judge Philip P Simon on 12/23/2014. (copy to defense attorneys John Maksimovich and Arlington Foley only). (nac) (Entered: 12/30/2014) |
|---|---|---|---|
| 12/29/2014 | 1265 | | MOTION Regarding Potential Defense Conflict of Interest Due to Previous Representation of a Government Witness by United States of America as to Juan Briseno. (Nozick – AUSA, David) (Entered: 12/29/2014) |
| 12/29/2014 | 1266 | | (SEALED) MOTION to Seal by United States of America as to Juan Briseno. (Nozick – AUSA, David) (Entered: 12/29/2014) |
| 12/29/2014 | 1267 | | SEALED DOCUMENT (Nozick – AUSA, David) (Entered: 12/29/2014) |
| 12/29/2014 | 1268 | | MOTION to Withdraw as Attorney by Richard M. Davis. by Raymond Campos as to Juan Briseno, Galo Benjamin Feliciano, Guillermo Briseno, Alejandro Balboa Lara, Justin Weaver, Michael Anthony Castillo, Kelvin Jefferson Beltran, David Almaraz, Joseph Rene Torres, Jason Medina, Edward Raye Serna, Alejandro Briseno, Robert Lockhart, Armando Jose Velasquez, Anthony Baldazo, Salvador Chavez, Raymond Campos, Ace Cortez, Julian Guillermo Serna, Julius Solis, Darmaile Cortez Sutton, Eddie Torres, Richard Reyes, Vincent Garza. (Davis, Richard) Modified on 2/12/2015 to note that this motion actually only refers to dft Raymond Campos. (nac). (Entered: 12/29/2014) |
| 12/30/2014 | 1269 | | STIPULATION –*Agreed Motion To Strike Venireman J.L. For Cause* by Juan Briseno. (Maksimovich, John) (Entered: 12/30/2014) |
| 12/30/2014 | 1270 | | OPINION AND ORDER re 1222 Motion in Limine seeking to admit a hearsay statement at trial under the excited utterance exception to the rule against hearsay as to Juan Briseno (1). Signed by Chief Judge Philip P Simon on 12/30/14. (mc) (Entered: 12/30/2014) |
| 12/30/2014 | 1275 | | ORDER granting 1266 Motion to Seal as to Juan Briseno (1). (Text entry only, no pdf is attached). (nac) (Entered: 12/30/2014) |
| 12/31/2014 | 1279 | | VENIRE PANEL LIST (SEALED) (This document is accessible ONLY by United States of America and attorneys for dft Juan Briseno). Chief Judge Philip P Simon – 12/31/2014. (nac) (Entered: 12/31/2014) |
| 01/05/2015 | 1282 | | MEMORANDUM OPINION granting in part and denying in part 611 Motion to Permit Attorney Conducted Voir Dire Pursuant to Principles Required by Furman v. Georgia and Its Progeny as to Juan Briseno (1) as indicated in the memorandum of this opinion. Signed by Chief Judge Philip P Simon on 1/5/14. (mc) (Entered: 01/05/2015) |
| 01/05/2015 | 1286 | | ORDER GRANTING 1265 Motion Regarding Potential Conflict Of Interest as to Juan Briseno (1). This matter was discussed and ruled on by the court in the hearing held on 1/5/2015. Attorney Foley shall have no involvement with this particular witness during preparation for trial and trial. Co–counsel John Maksimovich will handle all matters that involve this witness. Ordered in open court on 1/5/2015 by Chief Judge Philip P Simon. (nac) (Entered: 01/06/2015) |
| 01/05/2015 | 1287 | | ORDER: GRANTING 1269 Stipulation as to Juan Briseno (1): to strike venireman JL for cause. Discussion by cnsl and court's order at the hearing held on 1/5/2015. Chief Judge Philip P. Simon. (nac) (Entered: 01/06/2015) |

| 01/05/2015 | 1289 | | FINAL FINAL PRETRIAL CONFERENCE as to Juan Briseno held on 1/5/2015 before Chief Judge Philip P Simon. Govt present by David Nozick, AUSA. Dft appears in person and by cnsl Arlington Foley and John Maksimovich. Discussion had on the following issues with Court rulings as indicated. Motion 1265 regarding attorney conflict is GRANTED. Attorney John Maksimovich shall handle all pretrial and trial matters dealing with this witness. Atty Arlington Foley shall have no involvement with this witness matter. Motion 1269 Agreed Motion to Strike is GRANTED. Discussion on five venire persons – parties are in agreement that the five venire persons shall be excused for cause in addition to the individual referred to in motion 1269 for a total of six excused for cause. Court ruling on previous issue discussed: the issue of the jurors knowing the consequence of decision – it will be referenced in court dialogue. Discussion on ExParte Motion 1281 – GRANTED. The Govt shall serve this motion upon the defense on 1/5/2015. If the defense chooses to pursue this matter the defense shall file a motion under seal and a hearing will be held. USA requests a protective order regarding the discovery provided to the defendant today. No objection from defense cnsl. The Court informs the dft that he may not pass out any of this information from these discovery documents to any persons either inside or outside the jail. The dft acknowledges to the court that he understands this court order. Discussion on races of victims. Scheduling: Monday, January 12, be present at 8:15 a.m. to begin selection process at 8:30 a.m. The Court's goal is to have the jury selected in 2 1/2 weeks. Work days shall be 8:30 – 5:00 with a projected trial of 4–6 weeks after jury selection concludes. Dft REMANDED to custody of US Marshal.(Court Reporter Stacy Drohosky.) (nac) (Entered: 01/06/2015) |
| 01/05/2015 | 1290 | | SEALED EX PARTE ORDER as to Juan Briseno regarding Sealed Motion 1250 . Signed by Chief Judge Diane Wood on 1/5/2015. Copy to defense cnsl only (nac). Modified on 1/6/2015 to include document # (nac). Modified on 2/6/2015 to indicate ExParte and provided to defense cnsl only. (nac). (Entered: 01/06/2015) |
| 01/07/2015 | 1291 | | ORDER Regarding Jury Meals as to Juan Briseno. Signed by Chief Judge Philip P Simon on 1/7/2015. (nac) (Entered: 01/07/2015) |
| 01/08/2015 | 1295 | | (SEALED) MOTION to Seal Document by Juan Briseno. (Foley, Arlington) (Entered: 01/08/2015) |
| 01/08/2015 | 1296 | | SEALED MOTION by Juan Briseno. (Foley, Arlington) (Entered: 01/08/2015) |
| 01/08/2015 | 1298 | | MOTION for Writ of Habeas Corpus ad testificandum by Juan Briseno. (Foley, Arlington) (Entered: 01/08/2015) |
| 01/08/2015 | 1299 | | MOTION for Writ of Habeas Corpus ad testificandum by Juan Briseno. (Foley, Arlington) (Entered: 01/08/2015) |
| 01/08/2015 | 1300 | | ORDER GRANTING 1295 Motion to Seal Document as to Juan Briseno (1). (Text entry only, no pdf is attached). Approved by Chief Judge Philip P. Simon on 1/8/2015. (nac) (Entered: 01/08/2015) |
| 01/08/2015 | 1301 | | Writ of Habeas Corpus ad Testificandum Returned Executed for Jose Lopez on 1/8/15 in case as to Juan Briseno (mc) (Entered: 01/09/2015) |
| 01/08/2015 | 1302 | | WRIT OF HABEAS CORPUS AD TESTIFICANDUM: granting 1298 Motion for Writ of Habeas Corpus Ad Testificandum (Guillermo Briseno) as to Juan Briseno. Signed by Magistrate Judge Andrew P Rodovich on 1/8/2015. (USMS 3 certified copies) (rmn) (Entered: 01/09/2015) |

| 01/08/2015 | 1303 | | WRIT OF HABEAS CORPUS AD TESTIFICANDUM re 1299 Motion for Writ of Habeas Corpus Ad Testificandum (Darmaile Sutton) as to Juan Briseno. Signed by Magistrate Judge Andrew P Rodovich on 1/8/2015. (USMS 3 certified copies) (rmn) Modified to clarify text on 1/13/2015 (rmn). (Entered: 01/09/2015) |
|---|---|---|---|
| 01/12/2015 | 1311 | | ORDER For Potential–Juror Meals as to Juan Briseno. Signed by Chief Judge Philip P Simon on 1/12/2015. (nac) (Entered: 01/12/2015) |
| 01/12/2015 | 1313 | | OPINION AND ORDER as to Juan Briseno. Defendant Brisenos Motion to Strike the Notice of Intent to Seek the Death Penaldy is GRANTED IN PART AND DENIED IN PART, as described in this Opinion and Order. 1027 This replaces the prior version of this order originally filed at 1310 to correct typographical errors Signed by Chief Judge Philip P Simon on 1/12/2015. (rmn) Modified on 1/13/2015 to reflect corrections and regenerated entry (rmn). Modified on 1/13/2015 typo and regenerated (rmn). (Entered: 01/13/2015) |
| 01/12/2015 | 1314 | | POTENTIAL JUROR SELECTION – (DAY 1): as to Juan Briseno held on 1/12/2015 before Chief Judge Philip P Simon. Govt represented by attorneys David Nozick, AUSA and Bruce Hegyi, AUSA Dft is present in person and by cnsl John Maksimovich and Arlington Foley with Jury Consultant Julie Howe. Twenty–four venire persons appear. The panel is sworn to answer inquiry/voir dire by court and counsel. Potential Jurors 1–19 proceed through the voir dire process. Jurors 20–24 are ordered to return to the court on 1/13/2015 at 8:30 a.m. to complete the voir dire process. Nine potential jurors are accepted to be placed in the juror pool to return at a later date for further selection proceedings. All other potential jurors are excused for cause. At the conclusion of the day the members of the pool are reminded by the court to not discuss this case, not to do any research into this matter. Defendant REMANDED to custody of US Marshal.(Court Reporter Stacy Drohosky (am) and Joanne Hoffman (pm).) (nac) Modified on 1/13/2015 to edit typo (nac). Modified on 1/15/2015 (nac). (Entered: 01/13/2015) |
| 01/13/2015 | 1312 | | TRANSCRIPT of Jury Trial, Vol.1–PM, as to Juan Briseno held on January 12, 2015, before Judge Philip Simon. Court Reporter Joanne Hoffman, Telephone number (574)246–8038. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.<br><br>**IMPORTANT: Notice is hereby given that an official transcript of a proceeding has been filed by the court reporter in the above–captioned matter. The parties have seven (7) calendar days to file with the Court a Notice of Intent to Request Redaction of this transcript. Within 21 days of the filing of the transcript, a Redaction Request – Transcript shall be e–filed with the Court. Access to this request will be restricted to the Court and the attorneys of record in the case. If no such Notice and Redaction Request are filed, the transcript may be made remotely, electronically available to the public without redaction. Any party needing a copy of the transcript to review for redaction purposes may purchase a copy from the Court Reporter. Counsel are strongly urged to share this notice with all clients so that an informed decision about the inclusion of certain materials may be made. The responsibility for redacting these personal identifiers rests solely with counsel and the parties. The Clerk and Court Reporter will not review each transcript for compliance with this rule.** |

| | | | |
|---|---|---|---|
| | | | Notice of Intent to Redact due 1/23/2015. Redaction Request due 2/3/2015. Redacted Transcript Deadline set for 2/13/2015. Release of Transcript Restriction set for 4/13/2015. (jh) (Entered: 01/13/2015) |
| 01/13/2015 | 1315 | | TRANSCRIPT of Jury Trial Day 1 – AM Session as to Juan Briseno held on January 12, 2015, before Judge Philip P. Simon. Court Reporter Stacy Drohosky, Telephone number 219–852–3462. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.<br><br>**IMPORTANT: Notice is hereby given that an official transcript of a proceeding has been filed by the court reporter in the above–captioned matter. The parties have seven (7) calendar days to file with the Court a Notice of Intent to Request Redaction of this transcript. Within 21 days of the filing of the transcript, a Redaction Request – Transcript shall be e–filed with the Court. Access to this request will be restricted to the Court and the attorneys of record in the case. If no such Notice and Redaction Request are filed, the transcript may be made remotely, electronically available to the public without redaction. Any party needing a copy of the transcript to review for redaction purposes may purchase a copy from the Court Reporter. Counsel are strongly urged to share this notice with all clients so that an informed decision about the inclusion of certain materials may be made. The responsibility for redacting these personal identifiers rests solely with counsel and the parties. The Clerk and Court Reporter will not review each transcript for compliance with this rule.**<br><br>Notice of Intent to Redact due 1/23/2015. Redaction Request due 2/3/2015. Redacted Transcript Deadline set for 2/13/2015. Release of Transcript Restriction set for 4/13/2015. (sbm) (Entered: 01/13/2015) |
| 01/13/2015 | 1320 | | POTENTIAL–JUROR SELECTION (DAY 2): as to Juan Briseno held on 1/13/2015 before Chief Judge Philip P Simon. Parties present as previously noted. Potential–jurors 20 – 24 appear again (originally appeared on 1/12/15 but since their voir dire process was not completed they return). In addition, 18 additional potential–jurors also were summoned of which 15 appear. The panel is sworn to answer inquiry/voir dire by the court and counsel. Potential–jurors proceed through the voir dire process with 9 selected for future juror pool with the court taking under advisement the decision as to juror #29. Court ruling to be made on 1/14/2015. All other potential–jurors are excused for cause. At conclusion of the day the members of the pool are reminded by the court to not discuss this case and to not do any research into this matter. Defendant REMANDED to custody of US Marshal. (Court Reporter Stacy Drohosky (am) – Kelly Fitzgerald (pm).) (nac) Modified on 1/14/2015 to edit text. (nac). (Entered: 01/14/2015) |
| 01/14/2015 | 1317 | | TRANSCRIPT of Jury Trial – Volume 2 – AM Session as to Juan Briseno held on January 13, 2015, before Judge Philip P. Simon. Court Reporter Stacy L. Drohosky, Telephone number 219–852–3462. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. |

| | | | |
|---|---|---|---|
| | | | **IMPORTANT: Notice is hereby given that an official transcript of a proceeding has been filed by the court reporter in the above–captioned matter. The parties have seven (7) calendar days to file with the Court a Notice of Intent to Request Redaction of this transcript. Within 21 days of the filing of the transcript, a Redaction Request – Transcript shall be e–filed with the Court. Access to this request will be restricted to the Court and the attorneys of record in the case. If no such Notice and Redaction Request are filed, the transcript may be made remotely, electronically available to the public without redaction. Any party needing a copy of the transcript to review for redaction purposes may purchase a copy from the Court Reporter. Counsel are strongly urged to share this notice with all clients so that an informed decision about the inclusion of certain materials may be made. The responsibility for redacting these personal identifiers rests solely with counsel and the parties. The Clerk and Court Reporter will not review each transcript for compliance with this rule.**<br><br>Notice of Intent to Redact due 1/26/2015. Redaction Request due 2/4/2015. Redacted Transcript Deadline set for 2/17/2015. Release of Transcript Restriction set for 4/14/2015. (sbm) (Entered: 01/14/2015) |
| 01/14/2015 | 1318 | | TRANSCRIPT of Jury Trial – Volume 2 – PM Session as to Juan Briseno held on January 13, 2015, before Judge Philip P. Simon. Court Reporter Kelly Fitzgerald, Telephone number 219–852–3616. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.<br><br>**IMPORTANT: Notice is hereby given that an official transcript of a proceeding has been filed by the court reporter in the above–captioned matter. The parties have seven (7) calendar days to file with the Court a Notice of Intent to Request Redaction of this transcript. Within 21 days of the filing of the transcript, a Redaction Request – Transcript shall be e–filed with the Court. Access to this request will be restricted to the Court and the attorneys of record in the case. If no such Notice and Redaction Request are filed, the transcript may be made remotely, electronically available to the public without redaction. Any party needing a copy of the transcript to review for redaction purposes may purchase a copy from the Court Reporter. Counsel are strongly urged to share this notice with all clients so that an informed decision about the inclusion of certain materials may be made. The responsibility for redacting these personal identifiers rests solely with counsel and the parties. The Clerk and Court Reporter will not review each transcript for compliance with this rule.**<br><br>Notice of Intent to Redact due 1/26/2015. Redaction Request due 2/4/2015. Redacted Transcript Deadline set for 2/17/2015. Release of Transcript Restriction set for 4/14/2015. (kf) (Main Document 1318 replaced on 1/15/2015) (ksc). (Entered: 01/14/2015) |
| 01/14/2015 | 1325 | | EXHIBIT LIST (from Potential–Juror Selection process). (nac) (Entered: 01/15/2015) |
| 01/14/2015 | 1327 | | POTENTIAL–JUROR SELECTION (DAY 3) as to Juan Briseno held on 1/14/2015 before Chief Judge Philip P Simon. Parties present as previously noted. |

44

| | | | |
|---|---|---|---|
| | | | Court's ruling on potential juror #29 – stricken for cause. Court ruling on potential juror #31 – clerk's office to contact the selected potential juror by telephone to inquire if she is a student. Twenty potential–jurors summoned with 17 potential jurors appearing. Three jurors do not appear (#s 54, 56 and 57). Those potential–jurors are instructed by telephone to appear on 1/15/15. The panel is sworn to answer inquiry/voir dire by the court and counsel. Potential–jurors proceed through the voir dire process with two selected for future juror pool. All other potential–jurors are excused. Defense exhibits A and B are admitted. At the conclusion of the day the members of the pool are instructed by the court not to discuss this case with anyone nor to do any research into this matter. Jury trial projected to begin 2/2/2015. Defendant REMANDED to custody of US Marshal.(Court Reporter Stacy Drohosky (am) and Kelly Fitzgerald (pm).) (nac) (Entered: 01/15/2015) |
| 01/15/2015 | 1323 | | TRANSCRIPT of Jury Trial – Volume 3 – AM Session as to Juan Briseno held on January 14, 2015, before Judge Philip P. Simon. Court Reporter Stacy L. Drohosky, Telephone number 219–852–3462. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.<br><br>**IMPORTANT: Notice is hereby given that an official transcript of a proceeding has been filed by the court reporter in the above–captioned matter. The parties have seven (7) calendar days to file with the Court a Notice of Intent to Request Redaction of this transcript. Within 21 days of the filing of the transcript, a Redaction Request – Transcript shall be e–filed with the Court. Access to this request will be restricted to the Court and the attorneys of record in the case. If no such Notice and Redaction Request are filed, the transcript may be made remotely, electronically available to the public without redaction. Any party needing a copy of the transcript to review for redaction purposes may purchase a copy from the Court Reporter. Counsel are strongly urged to share this notice with all clients so that an informed decision about the inclusion of certain materials may be made. The responsibility for redacting these personal identifiers rests solely with counsel and the parties. The Clerk and Court Reporter will not review each transcript for compliance with this rule.**<br><br>Notice of Intent to Redact due 1/28/2015. Redaction Request due 2/5/2015. Redacted Transcript Deadline set for 2/17/2015. Release of Transcript Restriction set for 4/15/2015. (sbm) (Entered: 01/15/2015) |
| 01/15/2015 | 1324 | | TRANSCRIPT of Jury Trial – Volume 3 – PM Session as to Juan Briseno held on January 14, 2015, before Judge Philip P. Simon. Court Reporter Kelly M. Fitzgerald, Telephone number 219–852–3616. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.<br><br>**IMPORTANT: Notice is hereby given that an official transcript of a proceeding has been filed by the court reporter in the above–captioned matter. The parties have seven (7) calendar days to file with the Court a Notice of Intent to Request Redaction of this transcript. Within 21 days of the** |

| | | | |
|---|---|---|---|
| | | | filing of the transcript, a Redaction Request – Transcript shall be e–filed with the Court. Access to this request will be restricted to the Court and the attorneys of record in the case. If no such Notice and Redaction Request are filed, the transcript may be made remotely, electronically available to the public without redaction. Any party needing a copy of the transcript to review for redaction purposes may purchase a copy from the Court Reporter. Counsel are strongly urged to share this notice with all clients so that an informed decision about the inclusion of certain materials may be made. The responsibility for redacting these personal identifiers rests solely with counsel and the parties. The Clerk and Court Reporter will not review each transcript for compliance with this rule.<br><br>Notice of Intent to Redact due 1/27/2015. Redaction Request due 2/5/2015. Redacted Transcript Deadline set for 2/17/2015. Release of Transcript Restriction set for 4/15/2015. (kf) (Entered: 01/15/2015) |
| 01/15/2015 | 1328 | | TRANSCRIPT of JURY TRIAL as to Juan Briseno held on JAN 15, 2015, before Judge PHILIP SIMON. Court Reporter STACY DROHOSKY, Telephone number 574 246 8039. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.<br><br>IMPORTANT: Notice is hereby given that an official transcript of a proceeding has been filed by the court reporter in the above–captioned matter. The parties have seven (7) calendar days to file with the Court a Notice of Intent to Request Redaction of this transcript. Within 21 days of the filing of the transcript, a Redaction Request – Transcript shall be e–filed with the Court. Access to this request will be restricted to the Court and the attorneys of record in the case. If no such Notice and Redaction Request are filed, the transcript may be made remotely, electronically available to the public without redaction. Any party needing a copy of the transcript to review for redaction purposes may purchase a copy from the Court Reporter. Counsel are strongly urged to share this notice with all clients so that an informed decision about the inclusion of certain materials may be made. The responsibility for redacting these personal identifiers rests solely with counsel and the parties. The Clerk and Court Reporter will not review each transcript for compliance with this rule.<br><br>Notice of Intent to Redact due 1/27/2015. Redaction Request due 2/5/2015. Redacted Transcript Deadline set for 2/17/2015. Release of Transcript Restriction set for 4/15/2015. (db) (Entered: 01/15/2015) |
| 01/15/2015 | 1338 | | POTENTIAL–JUROR SELECTION (DAY 4) as to Juan Briseno held on 1/15/2015 before Chief Judge Philip P Simon. Parties present as previously noted. Twenty–two venire persons summoned, 19 appear. The panel is sworn to answer inquiry/voir dire by court and counsel. Potential jurors proceed through the voir dire process. Nine potential jurors are accepted to be placed in the juror pool to return at a later date for further selection proceedings. All other potential jurors are excused for cause. At the conclusion of the day the members of the pool are reminded by the court to not discuss the case nor to do any research into this matter. Defendant REMANDED to custody of US Marshal.(Court Reporter Stacy Drohosky (am) and Kelly Fitzgerald (pm).) (nac) (Entered: 01/20/2015) |

| 01/16/2015 | 1329 | | TRANSCRIPT of Jury Trial – Volume 4 – PM Session as to Juan Briseno held on January 15, 2015, before Judge Philip P. Simon. Court Reporter Kelly M. Fitzgerald, Telephone number 219–852–3616. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.<br><br>**IMPORTANT: Notice is hereby given that an official transcript of a proceeding has been filed by the court reporter in the above–captioned matter. The parties have seven (7) calendar days to file with the Court a Notice of Intent to Request Redaction of this transcript. Within 21 days of the filing of the transcript, a Redaction Request – Transcript shall be e–filed with the Court. Access to this request will be restricted to the Court and the attorneys of record in the case. If no such Notice and Redaction Request are filed, the transcript may be made remotely, electronically available to the public without redaction. Any party needing a copy of the transcript to review for redaction purposes may purchase a copy from the Court Reporter. Counsel are strongly urged to share this notice with all clients so that an informed decision about the inclusion of certain materials may be made. The responsibility for redacting these personal identifiers rests solely with counsel and the parties. The Clerk and Court Reporter will not review each transcript for compliance with this rule.**<br><br>Notice of Intent to Redact due 1/28/2015. Redaction Request due 2/6/2015. Redacted Transcript Deadline set for 2/17/2015. Release of Transcript Restriction set for 4/16/2015. (kf) (Entered: 01/16/2015) |
| 01/16/2015 | 1330 | | TRANSCRIPT of Jury Trial – Volume 5–AM as to Juan Briseno held on January 16, 2015, before Judge Philip P. Simon. Court Reporter Stacy L. Drohosky, Telephone number (219) 852–3462. Tape Number: Stenographically Reported. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.<br><br>**IMPORTANT: Notice is hereby given that an official transcript of a proceeding has been filed by the court reporter in the above–captioned matter. The parties have seven (7) calendar days to file with the Court a Notice of Intent to Request Redaction of this transcript. Within 21 days of the filing of the transcript, a Redaction Request – Transcript shall be e–filed with the Court. Access to this request will be restricted to the Court and the attorneys of record in the case. If no such Notice and Redaction Request are filed, the transcript may be made remotely, electronically available to the public without redaction. Any party needing a copy of the transcript to review for redaction purposes may purchase a copy from the Court Reporter. Counsel are strongly urged to share this notice with all clients so that an informed decision about the inclusion of certain materials may be made. The responsibility for redacting these personal identifiers rests solely with counsel and the parties. The Clerk and Court Reporter will not review each transcript for compliance with this rule.**<br><br>Notice of Intent to Redact due 1/27/2015. Redaction Request due 2/6/2015. Redacted Transcript Deadline set for 2/17/2015. Release of Transcript Restriction |

| | | | |
|---|---|---|---|
| | | | set for 4/16/2015. (sld) (Entered: 01/16/2015) |
| 01/16/2015 | 1341 | | POTENTIAL–JUROR SELECTION (DAY 5) as to Juan Briseno held on 1/16/2015 before Chief Judge Philip P Simon. Parties present as previously noted. Twenty venire persons summoned and 18 venire persons appear. The panel is sworn to answer inquiry/voir dire by court and counsel. Potential–jurors proceed through the voir dire process. Eight potential–jurors are accepted to be placed in the juror pool to return at a later date for further selection proceedings. All other potential jurors are excused for cause. At the conclusion of the day the members of the pool are reminded by the court not to discuss this case nor to do any research into this matter. Dft remanded to custody of US Marshal. (Court Reporter Stacy Drohosky (am) and Kelly Fitzgerald (pm).) (nac) (Entered: 01/20/2015) |
| 01/19/2015 | 1331 | | (SEALED) MOTION to Seal Document by Juan Briseno. (Foley, Arlington) (Entered: 01/19/2015) |
| 01/19/2015 | 1332 | | SEALED MOTION by Juan Briseno. (Attachments: # 1 Exhibit A, # 2 Exhibit B)(Foley, Arlington) (Entered: 01/19/2015) |
| 01/20/2015 | 1334 | | TRANSCRIPT of Jury Trial, Volume 5–PM Session as to Juan Briseno held on January 16, 2015, before Judge Philip P. Simon. Court Reporter Kelly M. Fitzgerald, Telephone number 219–852–3616. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.<br><br>**IMPORTANT: Notice is hereby given that an official transcript of a proceeding has been filed by the court reporter in the above–captioned matter. The parties have seven (7) calendar days to file with the Court a Notice of Intent to Request Redaction of this transcript. Within 21 days of the filing of the transcript, a Redaction Request – Transcript shall be e–filed with the Court. Access to this request will be restricted to the Court and the attorneys of record in the case. If no such Notice and Redaction Request are filed, the transcript may be made remotely, electronically available to the public without redaction. Any party needing a copy of the transcript to review for redaction purposes may purchase a copy from the Court Reporter. Counsel are strongly urged to share this notice with all clients so that an informed decision about the inclusion of certain materials may be made. The responsibility for redacting these personal identifiers rests solely with counsel and the parties. The Clerk and Court Reporter will not review each transcript for compliance with this rule.**<br><br>Notice of Intent to Redact due 1/29/2015. Redaction Request due 2/10/2015. Redacted Transcript Deadline set for 2/20/2015. Release of Transcript Restriction set for 4/20/2015. (kf) (Entered: 01/20/2015) |
| 01/20/2015 | 1336 | | ORDER GRANTING 1331 Motion to Seal Document as to Juan Briseno (1). (Text entry only). Approved by Chief Judge Philip P Simon on 1/20/2015. (nac) (Entered: 01/20/2015) |
| 01/20/2015 | 1337 | | SEALED EX PARTE ORDER 1332 . Signed by Chief Judge Philip P Simon on 1/20/2015. Copy to Defense cnsl only. (nac) Modified on 2/6/2015 to indicate ExParte order and that it was provided to defense cnsl only. (nac). (Entered: 01/20/2015) |

| 01/20/2015 | 1340 | | TRANSCRIPT of Jury Trial as to Juan Briseno held on 01/20/2015, before Judge Philip P. Simon. Court Reporter Stacy L. Drohosky, Telephone number (219) 852–3462. Tape Number: Stenographically Reported. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.

**IMPORTANT: Notice is hereby given that an official transcript of a proceeding has been filed by the court reporter in the above–captioned matter. The parties have seven (7) calendar days to file with the Court a Notice of Intent to Request Redaction of this transcript. Within 21 days of the filing of the transcript, a Redaction Request – Transcript shall be e–filed with the Court. Access to this request will be restricted to the Court and the attorneys of record in the case. If no such Notice and Redaction Request are filed, the transcript may be made remotely, electronically available to the public without redaction. Any party needing a copy of the transcript to review for redaction purposes may purchase a copy from the Court Reporter. Counsel are strongly urged to share this notice with all clients so that an informed decision about the inclusion of certain materials may be made. The responsibility for redacting these personal identifiers rests solely with counsel and the parties. The Clerk and Court Reporter will not review each transcript for compliance with this rule.**

Notice of Intent to Redact due 1/29/2015. Redaction Request due 2/10/2015. Redacted Transcript Deadline set for 2/20/2015. Release of Transcript Restriction set for 4/20/2015. (sld) (Entered: 01/20/2015) |
| 01/20/2015 | 1353 | | POTENTIAL–JUROR SELECTION (DAY 6) as to Juan Briseno held on 1/20/2015 before Chief Judge Philip P Simon. Parties present as previously noted. Twenty–two venire persons summoned, 13 appear. The panel is sworn to answer inquiry/voir dire by court and counsel. Potential jurors proceed through the voir dire process. Eight potential jurors are placed in the potential–juror pool to return at a later date for further selection proceedings. The trial is predicted to begin February 2, 2015. All other potential–jurors are excused for cause. At the conclusion of the day the potential jurors are instructed to not discuss this case nor to do any research on this case. Other matters/discussions: Defense objection to portions of the Govt's power point presentation to be used during opening statement. Govt will provide individual slides they intend to use to the court for ruling. Discussion on witnesses for trial as to BOP, local or USM custody. Govt will assist defense in determining custody status of each witness. Defense to provide a writ to the court in a timely manner for any witnesses in BOP custody. Discussion on letter of excuse provided to the court by potential–juror #73 (previously selected for juror pool). Court determines that juror #73 shall remain in the juror pool subject to re–evaluation after potential–juror selection process completed and the start of trial. Defendant REMANDED to custody of US Marshal.(Court Reporter Stacy Drohosky (am) and Debra Bonk (pm).) (nac) (Entered: 01/22/2015) |
| 01/21/2015 | 1343 | | TRANSCRIPT of JURY TRIAL as to Juan Briseno held on JANUARY 20, 2015PM, before Judge PHILIP P. SIMON. Court Reporter DEBRA J. BONK, Telephone number 5742468039. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline |

| | | | for Release of Transcript Restriction. After that date it may be obtained through PACER.<br><br>**IMPORTANT: Notice is hereby given that an official transcript of a proceeding has been filed by the court reporter in the above–captioned matter. The parties have seven (7) calendar days to file with the Court a Notice of Intent to Request Redaction of this transcript. Within 21 days of the filing of the transcript, a Redaction Request – Transcript shall be e–filed with the Court. Access to this request will be restricted to the Court and the attorneys of record in the case. If no such Notice and Redaction Request are filed, the transcript may be made remotely, electronically available to the public without redaction. Any party needing a copy of the transcript to review for redaction purposes may purchase a copy from the Court Reporter. Counsel are strongly urged to share this notice with all clients so that an informed decision about the inclusion of certain materials may be made. The responsibility for redacting these personal identifiers rests solely with counsel and the parties. The Clerk and Court Reporter will not review each transcript for compliance with this rule.**<br><br>Notice of Intent to Redact due 1/30/2015. Redaction Request due 2/11/2015. Redacted Transcript Deadline set for 2/23/2015. Release of Transcript Restriction set for 4/21/2015. (db) (Entered: 01/21/2015) |
| 01/21/2015 | 1344 | | MOTION for Writ of Habeas Corpus ad testificandum by Juan Briseno. (Foley, Arlington) (Entered: 01/21/2015) |
| 01/21/2015 | 1345 | | MOTION for Writ of Habeas Corpus ad testificandum by Juan Briseno. (Foley, Arlington) (Entered: 01/21/2015) |
| 01/21/2015 | 1348 | | TRANSCRIPT of Jury Trial – Volume 7–AM as to Juan Briseno held on 01/21/15, before Judge Philip P. Simon. Court Reporter Stacy L. Drohosky, Telephone number (219) 852–3462. Tape Number: Stenographically Reported. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.<br><br>**IMPORTANT: Notice is hereby given that an official transcript of a proceeding has been filed by the court reporter in the above–captioned matter. The parties have seven (7) calendar days to file with the Court a Notice of Intent to Request Redaction of this transcript. Within 21 days of the filing of the transcript, a Redaction Request – Transcript shall be e–filed with the Court. Access to this request will be restricted to the Court and the attorneys of record in the case. If no such Notice and Redaction Request are filed, the transcript may be made remotely, electronically available to the public without redaction. Any party needing a copy of the transcript to review for redaction purposes may purchase a copy from the Court Reporter. Counsel are strongly urged to share this notice with all clients so that an informed decision about the inclusion of certain materials may be made. The responsibility for redacting these personal identifiers rests solely with counsel and the parties. The Clerk and Court Reporter will not review each transcript for compliance with this rule.** |

| | | | Notice of Intent to Redact due 1/30/2015. Redaction Request due 2/11/2015. Redacted Transcript Deadline set for 2/23/2015. Release of Transcript Restriction set for 4/21/2015. (sld) (Entered: 01/21/2015) |
|---|---|---|---|
| 01/21/2015 | 1350 | | ORDER re jury selection in the capital trial of defendant Juan Briseno. The prospective juror who appeared January 20, 2015 and was then referred to asJuror #120 was in fact Juror #121, whose initials are J.H. The Clerk will recall J.H. (#121) for supplemental questioning now that her identification has been corrected. The voir dire examination of both Jurors #120 and #121 remains open. Signed by Chief Judge Philip P Simon on 1/21/2015. (rmn) (Entered: 01/22/2015) |
| 01/21/2015 | 1354 | | POTENTIAL–JUROR SELECTION (DAY 7) as to Juan Briseno held on 1/21/2015 before Chief Judge Philip P Simon. Parties present as previously noted. Twenty–three venire persons summoned and twenty–one appear. The panel is sworn to answer inquiry/voir dire by court and counsel. Potential jurors proceed through the voir dire process. Nine potential–jurors are accepted to be placed in the juror pool to return at a later date (projected to be 2/2/2015)for further selection proceedings. All other potential jurors are excused for cause. At the conclusion of the day the members of the pool are reminded by the court not to discuss this case nor to do any research into this matter. Other matters/discussions: Court addresses with the parties the issue of the discrepancy between potential–jurors numbered #120 and #121. Juror #121 (JH) will be summoned for 1/22/2015 at 8:20 am for counsel to further question this individual. Defendant REMANDED to custody of US Marshal.(Court Reporter Stacy Drohosky (am) and Debra Bonk (pm).) (nac) (Entered: 01/22/2015) |
| 01/22/2015 | 1349 | | TRANSCRIPT of JURY TRIAL as to Juan Briseno held on JANUARY 21, 2015 PM, before Judge PHILIP P. SIMON. Court Reporter DEBRA J. BONK, Telephone number 574 246 8039. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.<br><br>**IMPORTANT: Notice is hereby given that an official transcript of a proceeding has been filed by the court reporter in the above–captioned matter. The parties have seven (7) calendar days to file with the Court a Notice of Intent to Request Redaction of this transcript. Within 21 days of the filing of the transcript, a Redaction Request – Transcript shall be e–filed with the Court. Access to this request will be restricted to the Court and the attorneys of record in the case. If no such Notice and Redaction Request are filed, the transcript may be made remotely, electronically available to the public without redaction. Any party needing a copy of the transcript to review for redaction purposes may purchase a copy from the Court Reporter. Counsel are strongly urged to share this notice with all clients so that an informed decision about the inclusion of certain materials may be made. The responsibility for redacting these personal identifiers rests solely with counsel and the parties. The Clerk and Court Reporter will not review each transcript for compliance with this rule.**<br><br>Notice of Intent to Redact due 2/2/2015. Redaction Request due 2/12/2015. Redacted Transcript Deadline set for 2/23/2015. Release of Transcript Restriction set for 4/22/2015. (db) (Entered: 01/22/2015) |

51

| 01/22/2015 | 1351 | | WRIT OF HABEAS CORPUS AD TESTIFICANDUM granting 1344 Motion for Writ of Habeas Corpus Ad Testificandum re Corey Walton as to Juan Briseno. Signed by Magistrate Judge Andrew P Rodovich on 1/22/2015. (USMS – 3 cert. copies) (rmn) (Entered: 01/22/2015) |
| --- | --- | --- | --- |
| 01/22/2015 | 1352 | | ORDER granting 1345 Motion for Writ of Habeas Corpus Ad Testificandum re Eddie Torres as to Juan Briseno. Signed by Magistrate Judge Andrew P Rodovich on 1/22/2015. (USMS 3 cert.copies) (rmn) (Entered: 01/22/2015) |
| 01/22/2015 | 1356 | | TRANSCRIPT of Jury Trial – Volume 8–AM as to Juan Briseno held on 01/22/15, before Judge Philip P. Simon. Court Reporter Stacy L. Drohosky, Telephone number (219) 852–3462. Tape Number: Stenographically Reported. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.<br><br>**IMPORTANT: Notice is hereby given that an official transcript of a proceeding has been filed by the court reporter in the above–captioned matter. The parties have seven (7) calendar days to file with the Court a Notice of Intent to Request Redaction of this transcript. Within 21 days of the filing of the transcript, a Redaction Request – Transcript shall be e–filed with the Court. Access to this request will be restricted to the Court and the attorneys of record in the case. If no such Notice and Redaction Request are filed, the transcript may be made remotely, electronically available to the public without redaction. Any party needing a copy of the transcript to review for redaction purposes may purchase a copy from the Court Reporter. Counsel are strongly urged to share this notice with all clients so that an informed decision about the inclusion of certain materials may be made. The responsibility for redacting these personal identifiers rests solely with counsel and the parties. The Clerk and Court Reporter will not review each transcript for compliance with this rule.**<br><br>Notice of Intent to Redact due 2/2/2015. Redaction Request due 2/12/2015. Redacted Transcript Deadline set for 2/23/2015. Release of Transcript Restriction set for 4/22/2015. (sld) (Entered: 01/22/2015) |
| 01/22/2015 | 1366 | | POTENTIAL–JUROR SELECTION (DAY 8) as to Juan Briseno held on 1/22/2015 before Chief Judge Philip P Simon. Parties present as previously noted. Twenty venire persons summoned and twenty venire persons appear. Juror #121 questioned to clarify her answers to the questions asked on her prior appearance. Juror #121 remains in the potential–juror pool. Remaining jurors are sworn to answer inquiry/voir dire by court and counsel. Potential–jurors proceed through the voir dire process. Thirteen potential–jurors are accepted to be placed in the juror pool to return at a later date for further selection proceedings. All other potential–jurors are excused for cause. At the conclusion of the day the members of the pool are reminded by the court not to discuss the case nor to do any reseach into this matter. The court estimates that the final juror selection and jury trial will begin on Monday, February 2, 2015 at 8:30 a.m. The Court and attorneys have discussion on counsel being re–appointed for those case dfts who will testify at trial, if they are not currently represented by counsel. Defendant REMANDED to custody of US Marshal.(Court Reporter Stacy Drohosky (am) and Debra Bonk (pm).) (nac) (Entered: 01/26/2015) |

52

| 01/23/2015 | 1357 | | TRANSCRIPT of JURY TRIAL as to Juan Briseno held on JANUARY 22, 2015, VOLUME 8–PM, before Judge PHILIP P. SIMON. Court Reporter DEBRA J. BONK, Telephone number 5742468039. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.<br><br>**IMPORTANT: Notice is hereby given that an official transcript of a proceeding has been filed by the court reporter in the above–captioned matter. The parties have seven (7) calendar days to file with the Court a Notice of Intent to Request Redaction of this transcript. Within 21 days of the filing of the transcript, a Redaction Request – Transcript shall be e–filed with the Court. Access to this request will be restricted to the Court and the attorneys of record in the case. If no such Notice and Redaction Request are filed, the transcript may be made remotely, electronically available to the public without redaction. Any party needing a copy of the transcript to review for redaction purposes may purchase a copy from the Court Reporter. Counsel are strongly urged to share this notice with all clients so that an informed decision about the inclusion of certain materials may be made. The responsibility for redacting these personal identifiers rests solely with counsel and the parties. The Clerk and Court Reporter will not review each transcript for compliance with this rule.**<br><br>Notice of Intent to Redact due 2/3/2015. Redaction Request due 2/13/2015. Redacted Transcript Deadline set for 2/23/2015. Release of Transcript Restriction set for 4/23/2015. (db) (Entered: 01/23/2015) |
| 01/23/2015 | 1359 | | NOTICE *OF REBUTTAL EXPERT WITNESSES* (Maksimovich, John) (Entered: 01/23/2015) |
| 01/23/2015 | 1362 | | TRANSCRIPT of Jury Trial – Volume 9–AM as to Juan Briseno held on January 23, 2015, before Judge Philip P. Simon. Court Reporter Stacy L. Drohosky, Telephone number (219) 852–3462. Tape Number: Stenographically Reported. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.<br><br>**IMPORTANT: Notice is hereby given that an official transcript of a proceeding has been filed by the court reporter in the above–captioned matter. The parties have seven (7) calendar days to file with the Court a Notice of Intent to Request Redaction of this transcript. Within 21 days of the filing of the transcript, a Redaction Request – Transcript shall be e–filed with the Court. Access to this request will be restricted to the Court and the attorneys of record in the case. If no such Notice and Redaction Request are filed, the transcript may be made remotely, electronically available to the public without redaction. Any party needing a copy of the transcript to review for redaction purposes may purchase a copy from the Court Reporter. Counsel are strongly urged to share this notice with all clients so that an informed decision about the inclusion of certain materials may be made. The responsibility for redacting these personal identifiers rests solely with counsel and the parties. The Clerk and Court Reporter will not review each transcript for compliance with this rule.** |

| | | | |
|---|---|---|---|
| | | | Notice of Intent to Redact due 2/3/2015. Redaction Request due 2/13/2015. Redacted Transcript Deadline set for 2/23/2015. Release of Transcript Restriction set for 4/23/2015. (sld) (Entered: 01/23/2015) |
| 01/23/2015 | 1367 | | POTENTIAL–JUROR SELECTION (DAY 9) as to Juan Briseno held on 1/23/2015 before Chief Judge Philip P Simon. Parties present as previously noted. Sixteen venire persons summoned and sixteen venire persons appear. The panel is sworn to answer inquiry/voir dire by court and counsel. Potential–jurors proceed through the voir dire process. Seven potential–jurors are accepted to be placed in the juror pool to return at a later date for further selection proceedings. All other potential–jurors are excused for cause. At the conclusion of the day the members of the pool are reminded by the court not to discuss the case nor to do any research into this matter. The Court estimates that final juror selection and jury trial will begin on Monday, February 2, 2015. Discussion with counsel: excuse letter from juror #73 – Court takes under advisement. The Clerk's Office will be instructed to call all 71 potential jurors to get feedback. If the court determines that additional potential–jurors are required the court and attorneys will be in session on Thursday, 1/29/2015 for that purpose. The parties will be advised on 1/28/2015 regarding this. Court explains proposed jury selection procedures for 2/2/2015. Twelve regular jurors plus 6 alternates will be chosen. The jurors attending on 2/2/2015 will be identified by their original juror number assigned to them. Defendant REMANDED to custody of US Marshal.(Court Reporter Stacy Drohosky (am) and Debra Bonk (pm)). (nac) (Entered: 01/26/2015) |
| 01/24/2015 | 1363 | | TRANSCRIPT of JURY TRIAL as to Juan Briseno held on JANUARY 23, 2015 – VOLUME 9–PM, Court Reporter DEBRA BONK, Telephone number 5742468039. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.<br><br>**IMPORTANT: Notice is hereby given that an official transcript of a proceeding has been filed by the court reporter in the above–captioned matter. The parties have seven (7) calendar days to file with the Court a Notice of Intent to Request Redaction of this transcript. Within 21 days of the filing of the transcript, a Redaction Request – Transcript shall be e–filed with the Court. Access to this request will be restricted to the Court and the attorneys of record in the case. If no such Notice and Redaction Request are filed, the transcript may be made remotely, electronically available to the public without redaction. Any party needing a copy of the transcript to review for redaction purposes may purchase a copy from the Court Reporter. Counsel are strongly urged to share this notice with all clients so that an informed decision about the inclusion of certain materials may be made. The responsibility for redacting these personal identifiers rests solely with counsel and the parties. The Clerk and Court Reporter will not review each transcript for compliance with this rule.**<br><br>Notice of Intent to Redact due 2/3/2015. Redaction Request due 2/17/2015. Redacted Transcript Deadline set for 2/24/2015. Release of Transcript Restriction set for 4/24/2015. (db) (Entered: 01/24/2015) |
| 01/26/2015 | 1364 | | ORDER as to Juan Briseno: The Clerk shall summon the 71 prospective jurors to appear on Monday 2/2/2015 08:30 AM in US District Court – Hammond before Chief Judge Philip P Simon. At that time, the parties will exercise their |

| | | | |
|---|---|---|---|
| | | | peremptory challenges in order to seat a petit jury of 12 jurors and 6 alternate jurors, and the trial will begin. Signed by Chief Judge Philip P Simon on 1/26/15. (mc) (Entered: 01/26/2015) |
| 01/26/2015 | 1365 | | ORDER: The written request of Juror #73 for excuse from service in this case is DENIED at this time as to Juan Briseno. Signed by Chief Judge Philip P Simon on 1/26/2015. (tc) (Entered: 01/26/2015) |
| 01/28/2015 | 1368 | | NOTICE OF HEARING: FINAL IN–PERSON CONFERENCE Prior to Final Jury Selection/Jury Trial as to Juan Briseno: scheduled for Thursday, 1/29/2015 at 9:00 a.m. before Chief Judge Philip P. Simon. The U.S. Marshal shall produce the dft for this hearing. (nac) (Entered: 01/28/2015) |
| 01/28/2015 | 1375 | | SEALED EX PARTE ORDER. Signed by Chief Judge Diane P. Wood on 1/28/2015. (nac) Modified on 2/6/2015 to indicate ExParte and that order was provided to defense cnsl only. (nac). (Entered: 01/30/2015) |
| 01/29/2015 | 1370 | | ORDER as to Juan Briseno: Juror #41 is EXCUSED from service. Signed by Chief Judge Philip P Simon on 1/29/15. (mc) (Entered: 01/29/2015) |
| 01/29/2015 | 1371 | | HEARING as to Juan Briseno held on 1/29/2015 before Chief Judge Philip P Simon. Govt present by David Nozick, AUSA and Bruce Hegyi, AUSA. Dft appears in person and by counsel John Maksimovich and Arlington Foley. The defendant's jury consultant Julie Howe is also in attendance. Court makes a record as to the potential–jurors accepted into the pool that have indicated a hardship with serving on this panel. After personal discussion with all potential–jurors by the Clerk's Office the court now strikes jurors numbered 2, 18, 38 and 54. The parties have no objections. Juror #41 remains pending, the parties will be advised once personal telephone contact is made with juror #41. Once determined the Court will issue an order on this matter. In addition 12 potential–jurors will be summoned for court at 11:00 a.m. on 2/2/2015 should they be needed. If no shortage occurs, those potential–jurors will be released. Court makes Santiago ruling. Court hears argument on Govt power point slides/photos. Dft provides exhibit A to the Court, Exhibit A is offered and admitted by the Court. Court will allow the Govt power point (Exhibit A) finding that it is not unduly prejudicial. Discussion on experts. The deadline for the defense to provide the defense expert reports of witnesses Bezy and Reidy to the Govt – two weeks. As to defense witnesses Williams and Nixon – deadline for the defense to provide expert witness reports to Govt – one week from Monday. Each side will have one hour for opening statement. The Court anticipates final jury selection, opening statements and some witness testimony on Monday, 2/2/2015. Jury selection to begin at 8:30 a.m. 2/2/2015. Defendant REMANDED to custody of US Marshal. (Court Reporter Stacy Drohosky.) (nac) (Entered: 01/29/2015) |
| 01/29/2015 | 1372 | | EXHIBIT LIST from Hearing held on 1/29/2015 as to Juan Briseno before Chief Judge Philip P. Simon. (nac) (Entered: 01/29/2015) |
| 01/29/2015 | 1373 | | OPINION AND ORDER as to Juan Briseno. Defendant Briseos request to excludecertain slides from the governments opening statement presentation is DENIED. Signed by Chief Judge Philip P Simon on 1/29/2015. (rmn) (Entered: 01/29/2015) |
| 02/02/2015 | 1378 | | NOTATION: Jury Trial as to Juan Briseno does not proceed on Monday 2/2/2015 due to poor weather. (nac) (Entered: 02/03/2015) |

55

| 02/03/2015 | 1377 | | JURY TRIAL (FINAL JURY SELECTION and 1st DAY OF EVIDENCE) as to Juan Briseno held on 2/3/2015 before Chief Judge Philip P Simon. (Note: no jury trial held on 2/2/15 due to poor weather). Govt present by David Nozick, AUSA and Bruce Hegyi, AUSA with SA/ATF Jason Gore. Dft appears in person and by cnsl John Maksimovich and Arlington Foley. Julie Howe, Jury Consultant appears for the jury selection process only. Final jury selection held: Jurors are selected by the parties, 12 regular jurors and 6 alternate jurors and sworn to try cause. Note: No jury trial to be held on Friday, 2/6/15 of this week. Motion for sep of witnesses GRANTED with exceptions noted on the record. Preliminary instructions to jury panel by the court. Opening Statements by both sides to jury. Govt begins presentation of evidence, does not conclude. Trial continued to Wednesday, 2/4/15 at 8:30 a.m. Defendant REMANDED to custody of US Marshal.(Court Reporter Richard Ehrlich (am) and Joanne Hoffman (pm)). (nac) (Entered: 02/03/2015) |
| --- | --- | --- | --- |
| 02/04/2015 | 1379 | | TRANSCRIPT of Jury Trial as to Juan Briseno held on February 3, 2015, before Judge Simon. Court Reporter Richard D. Ehrlich, Telephone number 219–852–6557. Tape Number: NA. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. IMPORTANT: Notice is hereby given that an official transcript of a proceeding has been filed by the court reporter in the above–captioned matter. The parties have seven (7) calendar days to file with the Court a Notice of Intent to Request Redaction of this transcript. Within 21 days of the filing of the transcript, a Redaction Request – Transcript shall be e–filed with the Court. Access to this request will be restricted to the Court and the attorneys of record in the case. If no such Notice and Redaction Request are filed, the transcript may be made remotely, electronically available to the public without redaction. Any party needing a copy of the transcript to review for redaction purposes may purchase a copy from the Court Reporter. Counsel are strongly urged to share this notice with all clients so that an informed decision about the inclusion of certain materials may be made. The responsibility for redacting these personal identifiers rests solely with counsel and the parties. The Clerk and Court Reporter will not review each transcript for compliance with this rule. Notice of Intent to Redact due 2/13/2015. Redaction Request due 2/25/2015. Redacted Transcript Deadline set for 3/9/2015. Release of Transcript Restriction set for 5/5/2015. (rde) (Entered: 02/04/2015) |
| 02/04/2015 | 1380 | | TRANSCRIPT of Jury Trial, Volume 10–PM, as to Juan Briseno, held on February 3, 2015, before Judge Philip P. Simon. Court Reporter Joanne Hoffman, Telephone number 574–246–8038. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. IMPORTANT: Notice is hereby given that an official transcript of a proceeding has been filed by the court reporter in the above–captioned matter. The parties have seven (7) calendar days to file with the Court a Notice of Intent to Request Redaction of this transcript. Within 21 days of the |

|  |  |  | filing of the transcript, a Redaction Request – Transcript shall be e–filed with the Court. Access to this request will be restricted to the Court and the attorneys of record in the case. If no such Notice and Redaction Request are filed, the transcript may be made remotely, electronically available to the public without redaction. Any party needing a copy of the transcript to review for redaction purposes may purchase a copy from the Court Reporter. Counsel are strongly urged to share this notice with all clients so that an informed decision about the inclusion of certain materials may be made. The responsibility for redacting these personal identifiers rests solely with counsel and the parties. The Clerk and Court Reporter will not review each transcript for compliance with this rule.<br><br>Notice of Intent to Redact due 2/13/2015. Redaction Request due 2/25/2015. Redacted Transcript Deadline set for 3/9/2015. Release of Transcript Restriction set for 5/5/2015. (jh) (Entered: 02/04/2015) |
|---|---|---|---|
| 02/04/2015 | 1382 |  | (SEALED) MOTION to Seal by Juan Briseno. (Maksimovich, John) (Entered: 02/04/2015) |
| 02/04/2015 | 1383 |  | SEALED MOTION by Juan Briseno. (Maksimovich, John) (Entered: 02/04/2015) |
| 02/04/2015 | 1384 |  | ORDER GRANTING 1382 Motion to Seal as to Juan Briseno (1). Text entry only. No pdf is attached. Approved by Chief Judge Philip P Simon on 2/4/2015. (nac) (Entered: 02/04/2015) |
| 02/04/2015 | 1385 |  | JURY TRIAL (2ND DAY OF EVIDENCE) as to Juan Briseno held on 2/4/2015 before Chief Judge Philip P Simon. Parties present as previously noted. Interpreter Irene Ishoo appears to interpret for non–english speaking witness. Govt continues to present evidence, does not conclude. Trial continued to Thursday 2/5/2015 at 8:30 a.m. Defendant REMANDED to custody of US Marshal. (Court Reporter Richard Ehrlich (am) and Joanne Hoffman (pm)). (nac) (Entered: 02/04/2015) |
| 02/05/2015 | 1386 |  | TRANSCRIPT of Jury Trial, Volume 11–PM, as to Juan Briseno, held on February 4, 2015, before Judge Philip P. Simon. Court Reporter Joanne Hoffman, Telephone number 574–246–8038. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. <P>IMPORTANT: Notice is hereby given that an official transcript of a proceeding has been filed by the court reporter in the above–captioned matter. The parties have seven (7) calendar days to file with the Court a Notice of Intent to Request Redaction of this transcript. Within 21 days of the filing of the transcript, a Redaction Request – Transcript shall be e–filed with the Court. Access to this request will be restricted to the Court and the attorneys of record in the case. If no such Notice and Redaction Request are filed, the transcript may be made remotely, electronically available to the public without redaction. Any party needing a copy of the transcript to review for redaction purposes may purchase a copy from the Court Reporter. Counsel are strongly urged to share this notice with all clients so that an informed decision about the inclusion of certain materials may be made. The responsibility for redacting these personal identifiers rests solely with counsel and the parties. The Clerk and Court Reporter will not review each transcript for compliance with this rule.</P> Notice of Intent to Redact due 2/13/2015. Redaction Request due 2/26/2015. Redacted Transcript Deadline set |

57

| | | | |
|---|---|---|---|
| | | | for 3/9/2015. Release of Transcript Restriction set for 5/6/2015. (jh) (Entered: 02/05/2015) |
| 02/05/2015 | 1387 | | TRANSCRIPT of Jury Trial as to Juan Briseno held on February 4, 2015, before Judge Simon. Court Reporter Richard D. Ehrlich, Telephone number 219–852–6557. Tape Number: NA. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.<br><br>**IMPORTANT: Notice is hereby given that an official transcript of a proceeding has been filed by the court reporter in the above–captioned matter. The parties have seven (7) calendar days to file with the Court a Notice of Intent to Request Redaction of this transcript. Within 21 days of the filing of the transcript, a Redaction Request – Transcript shall be e–filed with the Court. Access to this request will be restricted to the Court and the attorneys of record in the case. If no such Notice and Redaction Request are filed, the transcript may be made remotely, electronically available to the public without redaction. Any party needing a copy of the transcript to review for redaction purposes may purchase a copy from the Court Reporter. Counsel are strongly urged to share this notice with all clients so that an informed decision about the inclusion of certain materials may be made. The responsibility for redacting these personal identifiers rests solely with counsel and the parties. The Clerk and Court Reporter will not review each transcript for compliance with this rule.**<br><br>Notice of Intent to Redact due 2/17/2015. Redaction Request due 2/26/2015. Redacted Transcript Deadline set for 3/9/2015. Release of Transcript Restriction set for 5/6/2015. (rde) (Entered: 02/05/2015) |
| 02/05/2015 | 1391 | | JURY TRIAL (3RD DAY OF EVIDENCE) as to Juan Briseno held on 2/5/2015before Chief Judge Philip P Simon. Parties present as previously noted. Govt continues to present evidence, does not conclude. Trial to resume on Monday 2/9/15 at 8:30 a.m. Jurors given instructions for weekend recess not to discuss case, do any research and to avoid any news media reports on this case. Jurors reminded that there will be no trial on Monday, 2/16/15 due to Presidents Day holiday. Defendant REMANDED to custody of US Marshal. (Court Reporter Richard Ehrlich(am) and Joanne Hoffman (pm).) (nac) (Entered: 02/05/2015) |
| 02/06/2015 | 1392 | | TRANSCRIPT of Jury Trial, Volume 12–PM, as to Juan Briseno held on February 5, 2015, before Judge Philip P. Simon. Court Reporter Joanne Hoffman, Telephone number 574–246–8038. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. &lt;P&gt;**IMPORTANT: Notice is hereby given that an official transcript of a proceeding has been filed by the court reporter in the above–captioned matter. The parties have seven (7) calendar days to file with the Court a Notice of Intent to Request Redaction of this transcript. Within 21 days of the filing of the transcript, a Redaction Request – Transcript shall be e–filed with the Court. Access to this request will be restricted to the Court and the attorneys of record in the case. If no such Notice and Redaction Request are filed, the transcript may be made remotely, electronically available to the public without redaction. Any party needing a copy of the transcript to** |

| | | | |
|---|---|---|---|
| | | | **review for redaction purposes may purchase a copy from the Court Reporter. Counsel are strongly urged to share this notice with all clients so that an informed decision about the inclusion of certain materials may be made. The responsibility for redacting these personal identifiers rests solely with counsel and the parties. The Clerk and Court Reporter will not review each transcript for compliance with this rule.</P>** Notice of Intent to Redact due 2/17/2015. Redaction Request due 2/27/2015. Redacted Transcript Deadline set for 3/9/2015. Release of Transcript Restriction set for 5/7/2015. (jh) (Entered: 02/06/2015) |
| 02/06/2015 | 1393 | | TRANSCRIPT of Jury Trial as to Juan Briseno held on February 5, 2015, before Judge Philip P. Simon. Court Reporter Richard D. Ehrlich, Telephone number 219–852–6557. Tape Number: NA. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.<br><br>**IMPORTANT: Notice is hereby given that an official transcript of a proceeding has been filed by the court reporter in the above–captioned matter. The parties have seven (7) calendar days to file with the Court a Notice of Intent to Request Redaction of this transcript. Within 21 days of the filing of the transcript, a Redaction Request – Transcript shall be e–filed with the Court. Access to this request will be restricted to the Court and the attorneys of record in the case. If no such Notice and Redaction Request are filed, the transcript may be made remotely, electronically available to the public without redaction. Any party needing a copy of the transcript to review for redaction purposes may purchase a copy from the Court Reporter. Counsel are strongly urged to share this notice with all clients so that an informed decision about the inclusion of certain materials may be made. The responsibility for redacting these personal identifiers rests solely with counsel and the parties. The Clerk and Court Reporter will not review each transcript for compliance with this rule.**<br><br>Notice of Intent to Redact due 2/17/2015. Redaction Request due 2/27/2015. Redacted Transcript Deadline set for 3/9/2015. Release of Transcript Restriction set for 5/7/2015. (rde) (Entered: 02/06/2015) |
| 02/06/2015 | 1396 | | NOTICE *F.R.C.P., Rule 16 Summary of Expert Witness Expected Testimony* (Attachments: # 1 Exhibit A)(Foley, Arlington) (Entered: 02/06/2015) |
| 02/06/2015 | 1397 | | Certificate of Service by Juan Briseno re 1396 Notice (Other) *F.R.C.P., Rule 16 Summary of Expert Witness Expected Testimony* (Foley, Arlington) (Entered: 02/06/2015) |
| 02/06/2015 | 1398 | | *SEALED* SEALED EXPARTE ORDER. Signed by Chief Judge Philip P Simon on 2/6/2015. Provided to defense cnsl only. (nac) (Entered: 02/06/2015) |
| 02/09/2015 | 1403 | | JURY TRIAL (4th DAY OF EVIDENCE) as to Juan Briseno held on 2/9/2015 before Chief Judge Philip P Simon. Parties present as previously noted. Court receives information regarding juror #124 (alt #2) who cannot attend due to serious illness of family member. Court consults with counsel who have no objection to excusing juror #124. Juror #124 (alt #2) is excused from these proceedings for today and the remainder of the trial. Govt continues to present |

| | | | evidence. Ruling by court as to earlier discussion held with counsel regarding certifications attached to business records. Certifications are not permitted, therefore, Govt exhibit Cell Record 6 is stricken. Govt continues to present evidence, does not conclude. Trial continued to Tuesday, 2/10/15 at 8:30 a.m. Defendant REMANDED to custody of US Marshal.(Court Reporter Stacy Drohosky (am) and Tina Gallucci (pm).) (nac) (Entered: 02/09/2015) |
|---|---|---|---|
| 02/09/2015 | 1404 | | TRANSCRIPT of Jury Trial – Volume 13–AM as to Juan Briseno held on February 9, 2015, before Judge Philip P. Simon. Court Reporter Stacy L. Drohosky, Telephone number (219) 852–3462. Tape Number: Stenographically Reported. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. <br><br>**IMPORTANT: Notice is hereby given that an official transcript of a proceeding has been filed by the court reporter in the above–captioned matter. The parties have seven (7) calendar days to file with the Court a Notice of Intent to Request Redaction of this transcript. Within 21 days of the filing of the transcript, a Redaction Request – Transcript shall be e–filed with the Court. Access to this request will be restricted to the Court and the attorneys of record in the case. If no such Notice and Redaction Request are filed, the transcript may be made remotely, electronically available to the public without redaction. Any party needing a copy of the transcript to review for redaction purposes may purchase a copy from the Court Reporter. Counsel are strongly urged to share this notice with all clients so that an informed decision about the inclusion of certain materials may be made. The responsibility for redacting these personal identifiers rests solely with counsel and the parties. The Clerk and Court Reporter will not review each transcript for compliance with this rule.** <br><br>Notice of Intent to Redact due 2/17/2015. Redaction Request due 3/2/2015. Redacted Transcript Deadline set for 3/12/2015. Release of Transcript Restriction set for 5/11/2015. (sld) (Entered: 02/09/2015) |
| 02/10/2015 | 1405 | | Amended MOTION for Writ of Habeas Corpus ad testificandum by United States of America as to Juan Briseno. (Nozick – AUSA, David) (Entered: 02/10/2015) |
| 02/10/2015 | 1406 | | WRIT OF HABEAS CORPUS AD TESTIFICANDUM granting 1405 Motion for Writ of Habeas Corpus Ad Testificandum re Jose Lopez. Signed by Magistrate Judge Andrew P Rodovich on 2/10/2015. (USMS 3 certified copies)(rmn) (Entered: 02/10/2015) |
| 02/10/2015 | 1407 | | JURY TRIAL (5th DAY OF EVIDENCE) as to Juan Briseno held on 2/10/2015 before Chief Judge Philip P Simon. Parties present as previously noted. Govt continues to present evidence, does not conclude. Trial continued to Wednesday 2/11/2015 at 8:30 a.m. Defendant REMANDED to custody of US Marshal.(Court Reporter Stacy Drohosky (am) and Kelly Fitzgerald (pm).) (nac) (Entered: 02/10/2015) |
| 02/10/2015 | 1408 | | TRANSCRIPT of Jury Trial – Volume 14–AM as to Juan Briseno held on February 10, 2015, before Judge Philip P. Simon. Court Reporter Stacy L. Drohosky, Telephone number (219) 852–3462. Tape Number: Stenographicall Reported. Transcript may be viewed at the court public terminal or purchased |

| | | | |
|---|---|---|---|
| | | | through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.<br><br>**IMPORTANT: Notice is hereby given that an official transcript of a proceeding has been filed by the court reporter in the above–captioned matter. The parties have seven (7) calendar days to file with the Court a Notice of Intent to Request Redaction of this transcript. Within 21 days of the filing of the transcript, a Redaction Request – Transcript shall be e–filed with the Court. Access to this request will be restricted to the Court and the attorneys of record in the case. If no such Notice and Redaction Request are filed, the transcript may be made remotely, electronically available to the public without redaction. Any party needing a copy of the transcript to review for redaction purposes may purchase a copy from the Court Reporter. Counsel are strongly urged to share this notice with all clients so that an informed decision about the inclusion of certain materials may be made. The responsibility for redacting these personal identifiers rests solely with counsel and the parties. The Clerk and Court Reporter will not review each transcript for compliance with this rule.**<br><br>Notice of Intent to Redact due 2/19/2015. Redaction Request due 3/3/2015. Redacted Transcript Deadline set for 3/13/2015. Release of Transcript Restriction set for 5/11/2015. (sld) (Entered: 02/10/2015) |
| 02/10/2015 | 1451 | | STIPULATION #1 as to Identity of Miguel Colon by United States of America and Juan Briseno. (nac) (Entered: 02/24/2015) |
| 02/11/2015 | 1409 | | TRANSCRIPT of Jury Trial – Volume 14 – PM Session as to Juan Briseno held on February 10, 2015, before Judge Philip P. Simon. Court Reporter Kelly Fitzgerald, Telephone number 219–852–3616. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.<br><br>**IMPORTANT: Notice is hereby given that an official transcript of a proceeding has been filed by the court reporter in the above–captioned matter. The parties have seven (7) calendar days to file with the Court a Notice of Intent to Request Redaction of this transcript. Within 21 days of the filing of the transcript, a Redaction Request – Transcript shall be e–filed with the Court. Access to this request will be restricted to the Court and the attorneys of record in the case. If no such Notice and Redaction Request are filed, the transcript may be made remotely, electronically available to the public without redaction. Any party needing a copy of the transcript to review for redaction purposes may purchase a copy from the Court Reporter. Counsel are strongly urged to share this notice with all clients so that an informed decision about the inclusion of certain materials may be made. The responsibility for redacting these personal identifiers rests solely with counsel and the parties. The Clerk and Court Reporter will not review each transcript for compliance with this rule.**<br><br>Notice of Intent to Redact due 2/20/2015. Redaction Request due 3/4/2015. Redacted Transcript Deadline set for 3/16/2015. Release of Transcript Restriction set for 5/12/2015. (kf) (Entered: 02/11/2015) |

| 02/11/2015 | 1410 | | FRCP Rule 16 Summary of Expert Witness Expected Testimony by Juan Briseno. (Maksimovich, John) [Modified on 3/23/2015 to reflect that the filing is not a motion.] (dkw) (Entered: 02/11/2015) |
|---|---|---|---|
| 02/11/2015 | 1411 | | TRANSCRIPT of Volume 13–PM of Trial Proceedings as to Juan Briseno held on February 9, 2015, before Judge Philip P. Simon. Court Reporter Tina M. Gallucci, Telephone number 260–423–3060. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.<br><br>**IMPORTANT: Notice is hereby given that an official transcript of a proceeding has been filed by the court reporter in the above–captioned matter. The parties have seven (7) calendar days to file with the Court a Notice of Intent to Request Redaction of this transcript. Within 21 days of the filing of the transcript, a Redaction Request – Transcript shall be e–filed with the Court. Access to this request will be restricted to the Court and the attorneys of record in the case. If no such Notice and Redaction Request are filed, the transcript may be made remotely, electronically available to the public without redaction. Any party needing a copy of the transcript to review for redaction purposes may purchase a copy from the Court Reporter. Counsel are strongly urged to share this notice with all clients so that an informed decision about the inclusion of certain materials may be made. The responsibility for redacting these personal identifiers rests solely with counsel and the parties. The Clerk and Court Reporter will not review each transcript for compliance with this rule.**<br><br>Notice of Intent to Redact due 2/20/2015. Redaction Request due 3/4/2015. Redacted Transcript Deadline set for 3/16/2015. Release of Transcript Restriction set for 5/12/2015. (tg) (Entered: 02/11/2015) |
| 02/11/2015 | 1412 | | JURY TRIAL (6th DAY OF EVIDENCE) as to Juan Briseno held on 2/11/2015 before Chief Judge Philip P Simon. Parties present as previously noted. Govt continues to present evidence, does not conclude. Trial continued to Thursday 2/12/2015 at 8:30 a.m. Defendant REMANDED to custody of US Marshal.(Court Reporter Stacy Drohosky (am) and Kelly Fitzgerald (pm).) (nac) (Entered: 02/11/2015) |
| 02/11/2015 | 1413 | | TRANSCRIPT of Jury Trial – Volume 15–AM as to Juan Briseno held on February 11, 2015, before Judge Philip P. Simon. Court Reporter Stacy L. Drohosky, Telephone number (219) 852–3462. Tape Number: Stenographically Reported. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.<br><br>**IMPORTANT: Notice is hereby given that an official transcript of a proceeding has been filed by the court reporter in the above–captioned matter. The parties have seven (7) calendar days to file with the Court a Notice of Intent to Request Redaction of this transcript. Within 21 days of the filing of the transcript, a Redaction Request – Transcript shall be e–filed with the Court. Access to this request will be restricted to the Court and the attorneys of record in the case. If no such Notice and Redaction Request are filed, the transcript may be made remotely, electronically available to the** |

62

| | | | |
|---|---|---|---|
| | | | **public without redaction. Any party needing a copy of the transcript to review for redaction purposes may purchase a copy from the Court Reporter. Counsel are strongly urged to share this notice with all clients so that an informed decision about the inclusion of certain materials may be made. The responsibility for redacting these personal identifiers rests solely with counsel and the parties. The Clerk and Court Reporter will not review each transcript for compliance with this rule.**<br><br>Notice of Intent to Redact due 2/20/2015. Redaction Request due 3/4/2015. Redacted Transcript Deadline set for 3/16/2015. Release of Transcript Restriction set for 5/12/2015. (sld) (Entered: 02/11/2015) |
| 02/12/2015 | 1414 | | TRANSCRIPT of Jury Trial – Volume 15 – PM Session as to Juan Briseno held on February 11, 2015, before Judge Philip P. Simon. Court Reporter Kelly Fitzgerald, Telephone number 219–852–3616. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. <P>**IMPORTANT: Notice is hereby given that an official transcript of a proceeding has been filed by the court reporter in the above–captioned matter. The parties have seven (7) calendar days to file with the Court a Notice of Intent to Request Redaction of this transcript. Within 21 days of the filing of the transcript, a Redaction Request – Transcript shall be e–filed with the Court. Access to this request will be restricted to the Court and the attorneys of record in the case. If no such Notice and Redaction Request are filed, the transcript may be made remotely, electronically available to the public without redaction. Any party needing a copy of the transcript to review for redaction purposes may purchase a copy from the Court Reporter. Counsel are strongly urged to share this notice with all clients so that an informed decision about the inclusion of certain materials may be made. The responsibility for redacting these personal identifiers rests solely with counsel and the parties. The Clerk and Court Reporter will not review each transcript for compliance with this rule.</P>** Notice of Intent to Redact due 2/24/2015. Redaction Request due 3/5/2015. Redacted Transcript Deadline set for 3/16/2015. Release of Transcript Restriction set for 5/13/2015. (kf) (Entered: 02/12/2015) |
| 02/12/2015 | 1415 | | TRANSCRIPT of Jury Trial – Volume 16–AM as to Juan Briseno held on February 12, 2015, before Judge Philip P. Simon. Court Reporter Stacy L. Drohosky, Telephone number (219) 852–3462. Tape Number: Stenographically Reported. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.<br><br>**IMPORTANT: Notice is hereby given that an official transcript of a proceeding has been filed by the court reporter in the above–captioned matter. The parties have seven (7) calendar days to file with the Court a Notice of Intent to Request Redaction of this transcript. Within 21 days of the filing of the transcript, a Redaction Request – Transcript shall be e–filed with the Court. Access to this request will be restricted to the Court and the attorneys of record in the case. If no such Notice and Redaction Request are filed, the transcript may be made remotely, electronically available to the public without redaction. Any party needing a copy of the transcript to** |

| | | | |
|---|---|---|---|
| | | | review for redaction purposes may purchase a copy from the Court Reporter. Counsel are strongly urged to share this notice with all clients so that an informed decision about the inclusion of certain materials may be made. The responsibility for redacting these personal identifiers rests solely with counsel and the parties. The Clerk and Court Reporter will not review each transcript for compliance with this rule.<br><br>Notice of Intent to Redact due 2/23/2015. Redaction Request due 3/5/2015. Redacted Transcript Deadline set for 3/16/2015. Release of Transcript Restriction set for 5/13/2015. (sld) (Entered: 02/12/2015) |
| 02/12/2015 | 1417 | | JURY TRIAL (7th DAY OF EVIDENCE) as to Juan Briseno held on 2/12/2015 before Chief Judge Philip P Simon. Parties present as previously noted. Govt continues to present evidence but does not conclude. Schedule for trial next week: Tuesday – Friday, 2/17 – 2/20/15 due to the Presidents' Day Holiday on 2/16/15. Jury given instruction not to discuss case, read or do any research about the case while on this extended recess. Trial to resume on Tuesday 2/17/15 at 8:30 a.m. Defendant REMANDED to custody of US Marshal. (Court Reporter Stacy Drohosky (am) Kelly Fitzgerald (pm).) (nac) (Entered: 02/13/2015) |
| 02/13/2015 | 1418 | | TRANSCRIPT of Jury Trial – Volume 16 – PM Session as to Juan Briseno held on February 12, 2015, before Judge Philip P. Simon. Court Reporter Kelly Fitzgerald, Telephone number 219–852–3616. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.<br><br>**IMPORTANT: Notice is hereby given that an official transcript of a proceeding has been filed by the court reporter in the above–captioned matter. The parties have seven (7) calendar days to file with the Court a Notice of Intent to Request Redaction of this transcript. Within 21 days of the filing of the transcript, a Redaction Request – Transcript shall be e–filed with the Court. Access to this request will be restricted to the Court and the attorneys of record in the case. If no such Notice and Redaction Request are filed, the transcript may be made remotely, electronically available to the public without redaction. Any party needing a copy of the transcript to review for redaction purposes may purchase a copy from the Court Reporter. Counsel are strongly urged to share this notice with all clients so that an informed decision about the inclusion of certain materials may be made. The responsibility for redacting these personal identifiers rests solely with counsel and the parties. The Clerk and Court Reporter will not review each transcript for compliance with this rule.**<br><br>Notice of Intent to Redact due 2/25/2015. Redaction Request due 3/6/2015. Redacted Transcript Deadline set for 3/16/2015. Release of Transcript Restriction set for 5/14/2015. (kf) (Entered: 02/13/2015) |
| 02/13/2015 | 1430 | | Writ of Habeas Corpus ad Testificandum Returned Executed for Jose Lopez on 2/12/15 in case as to Juan Briseno (mc) (Entered: 02/18/2015) |
| 02/16/2015 | 1420 | | MOTION to Compel , MOTION for Discovery , MOTION to Inspect *and Photograph Defendant's Tattoos* by United States of America as to Juan Briseno. (Attachments: # 1 Exhibit A – Photos of D's tattoos, # 2 Exhibit B – Letter to |

| | | | |
|---|---|---|---|
| | | | Beltran)(Hegyi – AUSA, Bruce) (Entered: 02/16/2015) |
| 02/17/2015 | 1421 | | MOTION for Writ of Habeas Corpus ad testificandum by United States of America as to Juan Briseno. (Nozick – AUSA, David) (Entered: 02/17/2015) |
| 02/17/2015 | 1422 | | ORDER for Extended Service as to Jury Panel Members as to Juan Briseno. Signed by Chief Judge Philip P Simon on 2/17/2015. (copy to financial office in South Bend). (nac) (Entered: 02/17/2015) |
| 02/17/2015 | 1423 | | ORDER granting 1421 Motion for Writ of Habeas Corpus Ad Testificandum for prisoner Jose Perez as to Juan Briseno (1).. Signed by Magistrate Judge Andrew P Rodovich on 2/17/15. cc: USM (2 certified copies) (mc) (Entered: 02/17/2015) |
| 02/17/2015 | 1425 | | JURY TRIAL (8th DAY OF EVIDENCE) as to Juan Briseno held on 2/17/2015 before Chief Judge Philip P Simon. Parties present as previously noted. Defense given one week to respond to the Govt's Motion 1420 . Stipulation #2 by parties entered. Parties discuss with the court the progression of trial and scheduling, Govt indicates that it is proceeding more quickly than anticipated and is ahead of schedule. Govt continues to present evidence, does not conclude. Trial continued to Wednesday, 2/18/2015 at 8:30 a.m. Defendant REMANDED to custody of US Marshal. (Court Reporter Stacy Drohosky (am) and Debra Bonk (pm).) (nac) (Entered: 02/17/2015) |
| 02/17/2015 | 1426 | | TRANSCRIPT of Jury Trial – Volume 17–AM as to Juan Briseno held on February 17, 2015, before Judge Philip P. Simon. Court Reporter Stacy L. Drohosky, Telephone number (219) 852–3462. Tape Number: Stenographically Reported. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. **IMPORTANT: Notice is hereby given that an official transcript of a proceeding has been filed by the court reporter in the above–captioned matter. The parties have seven (7) calendar days to file with the Court a Notice of Intent to Request Redaction of this transcript. Within 21 days of the filing of the transcript, a Redaction Request – Transcript shall be e–filed with the Court. Access to this request will be restricted to the Court and the attorneys of record in the case. If no such Notice and Redaction Request are filed, the transcript may be made remotely, electronically available to the public without redaction. Any party needing a copy of the transcript to review for redaction purposes may purchase a copy from the Court Reporter. Counsel are strongly urged to share this notice with all clients so that an informed decision about the inclusion of certain materials may be made. The responsibility for redacting these personal identifiers rests solely with counsel and the parties. The Clerk and Court Reporter will not review each transcript for compliance with this rule.** Notice of Intent to Redact due 2/26/2015. Redaction Request due 3/10/2015. Redacted Transcript Deadline set for 3/20/2015. Release of Transcript Restriction set for 5/18/2015. (sld) (Entered: 02/17/2015) |
| 02/17/2015 | 1452 | | STIPULATION #2 as to Identity of Luis Ortiz by United States of America and Juan Briseno. (nac) (Entered: 02/24/2015) |
| 02/18/2015 | 1427 | | |

| | | | TRANSCRIPT of JURY TRIAL VOLUME 17 – PM as to Juan Briseno held on FEBRUARY 17, 2015, before Judge PHILIP P. SIMON. Court Reporter DEBRA J. BONK, Telephone number 574 246 8039 or debra_bonk@innd.uscourts.gov. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. **IMPORTANT: Notice is hereby given that an official transcript of a proceeding has been filed by the court reporter in the above–captioned matter. The parties have seven (7) calendar days to file with the Court a Notice of Intent to Request Redaction of this transcript. Within 21 days of the filing of the transcript, a Redaction Request – Transcript shall be e–filed with the Court. Access to this request will be restricted to the Court and the attorneys of record in the case. If no such Notice and Redaction Request are filed, the transcript may be made remotely, electronically available to the public without redaction. Any party needing a copy of the transcript to review for redaction purposes may purchase a copy from the Court Reporter. Counsel are strongly urged to share this notice with all clients so that an informed decision about the inclusion of certain materials may be made. The responsibility for redacting these personal identifiers rests solely with counsel and the parties. The Clerk and Court Reporter will not review each transcript for compliance with this rule.** Notice of Intent to Redact due 2/26/2015. Redaction Request due 3/11/2015. Redacted Transcript Deadline set for 3/23/2015. Release of Transcript Restriction set for 5/19/2015. (db) (Main Document 1427 replaced to correct volume number on 2/18/2015) (lpw). (Entered: 02/18/2015) |
| 02/18/2015 | 1431 | | JURY TRIAL (9th DAY OF EVIDENCE) as to Juan Briseno held on 2/18/2015 before Chief Judge Philip P Simon. Parties present as previously noted. Govt continues presentation of evidence. Scheduling discussed. Govt continues to present evidence, does not conclude. Jury excused. Discussion/argument with court ruling on witness issue. Trial continued to Thursday, 2/19/2015 at 8:30 a.m. Defendant REMANDED to custody of US Marshal. (Court Reporter Stacy Drohosky (am) and Debra Bonk (pm).) (nac). (Entered: 02/18/2015) |
| 02/18/2015 | 1432 | | TRANSCRIPT of Jury Trial – Volume 18–AM as to Juan Briseno held on February 18, 2015, before Judge Philip P. Simon. Court Reporter Stacy L. Drohosky, Telephone number (219) 852–3462. Tape Number: Stenographically Reported. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. **IMPORTANT: Notice is hereby given that an official transcript of a proceeding has been filed by the court reporter in the above–captioned matter. The parties have seven (7) calendar days to file with the Court a Notice of Intent to Request Redaction of this transcript. Within 21 days of the filing of the transcript, a Redaction Request – Transcript shall be e–filed with the Court. Access to this request will be restricted to the Court and the attorneys of record in the case. If no such Notice and Redaction Request are filed, the transcript may be made remotely, electronically available to the public without redaction. Any party needing a copy of the transcript to** |

| | | | review for redaction purposes may purchase a copy from the Court Reporter. **Counsel are strongly urged to share this notice with all clients so that an informed decision about the inclusion of certain materials may be made. The responsibility for redacting these personal identifiers rests solely with counsel and the parties. The Clerk and Court Reporter will not review each transcript for compliance with this rule.**<br><br>Notice of Intent to Redact due 2/27/2015. Redaction Request due 3/11/2015. Redacted Transcript Deadline set for 3/23/2015. Release of Transcript Restriction set for 5/19/2015. (sld) (Entered: 02/18/2015) |
|---|---|---|---|
| 02/18/2015 | 1453 | | STIPULATION #3 as to Identity of Harris Brown by United States of America and Juan Briseno. (nac) (Entered: 02/24/2015) |
| 02/19/2015 | 1433 | | TRANSCRIPT of JURY TRIAL, VOLUME 18–PM as to Juan Briseno held on FEBRUARY 18, 2015, before Judge PHILIP P. SIMON. Court Reporter DEBRA J. BONK, Telephone number 574 246 8039 or debra_bonk@innd.uscourts.gov. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.<br>&lt;P&gt;**IMPORTANT: Notice is hereby given that an official transcript of a proceeding has been filed by the court reporter in the above–captioned matter. The parties have seven (7) calendar days to file with the Court a Notice of Intent to Request Redaction of this transcript. Within 21 days of the filing of the transcript, a Redaction Request – Transcript shall be e–filed with the Court. Access to this request will be restricted to the Court and the attorneys of record in the case. If no such Notice and Redaction Request are filed, the transcript may be made remotely, electronically available to the public without redaction. Any party needing a copy of the transcript to review for redaction purposes may purchase a copy from the Court Reporter. Counsel are strongly urged to share this notice with all clients so that an informed decision about the inclusion of certain materials may be made. The responsibility for redacting these personal identifiers rests solely with counsel and the parties. The Clerk and Court Reporter will not review each transcript for compliance with this rule.**&lt;/P&gt; Notice of Intent to Redact due 2/27/2015. Redaction Request due 3/12/2015. Redacted Transcript Deadline set for 3/23/2015. Release of Transcript Restriction set for 5/20/2015. (db) (Entered: 02/19/2015) |
| 02/19/2015 | 1434 | | Writ of Habeas Corpus ad Testificandum for Jose Perez Returned Unexecuted in case as to Juan Briseno (kjp) (Entered: 02/19/2015) |
| 02/19/2015 | 1435 | | TRANSCRIPT of Jury Trial – Volume 19 as to Juan Briseno held on February 19, 2015, before Judge Philip P. Simon. Court Reporter Kelly M. Fitzgerald, Telephone number 219–852–3616. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.<br><br>**IMPORTANT: Notice is hereby given that an official transcript of a proceeding has been filed by the court reporter in the above–captioned matter. The parties have seven (7) calendar days to file with the Court a Notice of Intent to Request Redaction of this transcript. Within 21 days of the** |

| | | | |
|---|---|---|---|
| | | | filing of the transcript, a Redaction Request – Transcript shall be e–filed with the Court. Access to this request will be restricted to the Court and the attorneys of record in the case. If no such Notice and Redaction Request are filed, the transcript may be made remotely, electronically available to the public without redaction. Any party needing a copy of the transcript to review for redaction purposes may purchase a copy from the Court Reporter. Counsel are strongly urged to share this notice with all clients so that an informed decision about the inclusion of certain materials may be made. The responsibility for redacting these personal identifiers rests solely with counsel and the parties. The Clerk and Court Reporter will not review each transcript for compliance with this rule.<br><br>Notice of Intent to Redact due 3/2/2015. Redaction Request due 3/12/2015. Redacted Transcript Deadline set for 3/23/2015. Release of Transcript Restriction set for 5/20/2015. (kf) (Entered: 02/19/2015) |
| 02/19/2015 | 1436 | | JURY TRIAL (10th DAY OF EVIDENCE) as to Juan Briseno held on 2/19/2015 before Chief Judge Philip P Simon. Parties present as previously noted. Govt continues to present evidence, does not conclude. Trial continued to Friday, 2/20/2015 at 8:30 a.m. Defendant REMANDED to custody of US Marshal. (Court Reporter Kelly Fitzgerald.) (nac) (Entered: 02/20/2015) |
| 02/20/2015 | 1437 | | TRANSCRIPT of Jury Trial – Volume 20–AM as to Juan Briseno held on February 20, 2015, before Judge Philip P. Simon. Court Reporter Stacy L. Drohosky, Telephone number (219) 852–3462. Tape Number: Stenographically Reported. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.<br><br>IMPORTANT: Notice is hereby given that an official transcript of a proceeding has been filed by the court reporter in the above–captioned matter. The parties have seven (7) calendar days to file with the Court a Notice of Intent to Request Redaction of this transcript. Within 21 days of the filing of the transcript, a Redaction Request – Transcript shall be e–filed with the Court. Access to this request will be restricted to the Court and the attorneys of record in the case. If no such Notice and Redaction Request are filed, the transcript may be made remotely, electronically available to the public without redaction. Any party needing a copy of the transcript to review for redaction purposes may purchase a copy from the Court Reporter. Counsel are strongly urged to share this notice with all clients so that an informed decision about the inclusion of certain materials may be made. The responsibility for redacting these personal identifiers rests solely with counsel and the parties. The Clerk and Court Reporter will not review each transcript for compliance with this rule.<br><br>Notice of Intent to Redact due 3/3/2015. Redaction Request due 3/13/2015. Redacted Transcript Deadline set for 3/23/2015. Release of Transcript Restriction set for 5/21/2015. (sld) (Entered: 02/20/2015) |
| 02/20/2015 | 1447 | | JURY TRIAL (11th DAY OF EVIDENCE) as to Juan Briseno held on 2/20/2015 before Chief Judge Philip P Simon. Parties present as previously noted. Govt continues to present evidence, concludes and rests. Court instructs jury not to read, listen to any news accounts, discuss this case, or visit any locations related to this |

| | | | trial. Jury released. Court's Santiago ruling. Scheduling discussed for the remainder of the trial. Motions by defense to be heard on Tuesday, 2/24/2015, attorneys to report at 8:30 a.m. Jury will next report on Tuesday, 2/24/2015. Defendant REMANDED to custody of US Marshal. (Court Reporter: Stacy Drohosky (am) and Debra Bonk (pm)). (nac) Modified on 2/24/2015 to correct detail. (nac). (Entered: 02/24/2015) |
|---|---|---|---|
| 02/20/2015 | 1454 | | STIPULATION #4 as to Identity of Miguel Mejias by United States of America and Juan Briseno. (nac) (Entered: 02/24/2015) |
| 02/20/2015 | 1455 | | STIPULATION #5 as to Identity of Michael Sessum by United States of America and Juan Briseno. (nac) (Entered: 02/24/2015) |
| 02/22/2015 | 1438 | | TRANSCRIPT of JURY TRIAL – VOLUME 20–PM as to Juan Briseno held on FEBRUARY 20, 2015, before Judge PHILIP P. SIMON. Court Reporter DEBRA J. BONK, Telephone number 574 246 8039 or debra_bonk@innd.uscourts.gov. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. <P>**IMPORTANT: Notice is hereby given that an official transcript of a proceeding has been filed by the court reporter in the above–captioned matter. The parties have seven (7) calendar days to file with the Court a Notice of Intent to Request Redaction of this transcript. Within 21 days of the filing of the transcript, a Redaction Request – Transcript shall be e–filed with the Court. Access to this request will be restricted to the Court and the attorneys of record in the case. If no such Notice and Redaction Request are filed, the transcript may be made remotely, electronically available to the public without redaction. Any party needing a copy of the transcript to review for redaction purposes may purchase a copy from the Court Reporter. Counsel are strongly urged to share this notice with all clients so that an informed decision about the inclusion of certain materials may be made. The responsibility for redacting these personal identifiers rests solely with counsel and the parties. The Clerk and Court Reporter will not review each transcript for compliance with this rule.</P>** Notice of Intent to Redact due 3/3/2015. Redaction Request due 3/16/2015. Redacted Transcript Deadline set for 3/25/2015. Release of Transcript Restriction set for 5/26/2015. (db) (Entered: 02/22/2015) |
| 02/23/2015 | 1441 | | OBJECTION to 1206 Proposed Jury Instructions,. (Maksimovich, John) (Entered: 02/23/2015) |
| 02/23/2015 | 1442 | | Proposed Jury Instructions by Juan Briseno (Maksimovich, John) (Entered: 02/23/2015) |
| 02/23/2015 | 1443 | | Proposed Verdict Form by Juan Briseno (Maksimovich, John) (Entered: 02/23/2015) |
| 02/23/2015 | 1444 | | SEALED DOCUMENT (Affidavit of Process Server). (nac) (Entered: 02/23/2015) |
| 02/23/2015 | 1445 | | SEALED DOCUMENT (Affidavit of Process Server). (nac) (Entered: 02/23/2015) |
| 02/23/2015 | 1446 | | SEALED DOCUMENT (Affidavit of Process Server). (nac) (Entered: 02/23/2015) |

69

| 02/24/2015 | 1448 | | RESPONSE to Motion by Juan Briseno re 1420 MOTION to Compel MOTION for Discovery MOTION to Inspect *and Photograph Defendant's Tattoos* (Maksimovich, John) (Entered: 02/24/2015) |
|---|---|---|---|
| 02/24/2015 | 1449 | | SEALED DOCUMENT (Bench Warrant for Witness). (nac) (Entered: 02/24/2015) |
| 02/24/2015 | 1450 | | SEALED DOCUMENT (Bench Warrant for Witness). (nac) (nac). (Entered: 02/24/2015) |
| 02/24/2015 | 1456 | | STIPULATION (Exhibit H) regarding hair sample by United States of America and Juan Briseno. (nac) (Entered: 02/24/2015) |
| 02/24/2015 | 1457 | | JURY TRIAL (12TH DAY OF EVIDENCE) as to Juan Briseno held on 2/24/2015 before Chief Judge Philip P Simon. Parties present as previously noted. Defendant begins presentation of evidence. Stipulation (re: hair sample). Oral Motion for Judgment of Acquital by defense. Response from Govt as to the oral Motion for Judgment of Acquital. Ruling by Court – Court GRANTS Motion for Judgment of Acquital as to Counts 25 and 26 of Indictment as to Juan Briseno, the Motion for Judgment of Acquital on all other counts are DENIED. Discussion/argument on one defense witness. Court hears the testimony of this witness outside the presence of the jury. The testimony will be allowed, Govt does not object. Dft continues to present evidence. Jury excused and instructed to return on Wednesday, 2/25/15 at 8:00 am. Scheduling matters discussed. Court hears from SA Jason Gore after being placed under oath regarding efforts to serve subpoenas upon two witnesses for defense. Defense case to continue on 2/25/2015 at 8:30 a.m. Final Argument will be held on 2/26/2015 with each side being given three hours for closing argument. Bench warrants are issued for two defense witnesses. Defendant REMANDED to custody of US Marshal. (Court Reporter Stacy Drohosky.) (nac) (Entered: 02/24/2015) |
| 02/24/2015 | 1458 | | TRANSCRIPT of Jury Trial – Volume 21 as to Juan Briseno held on February 24, 2015, before Judge Philip P. Simon. Court Reporter Stacy L. Drohosky, Telephone number (219) 852–3462. Tape Number: Stenographically Reported. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. **IMPORTANT: Notice is hereby given that an official transcript of a proceeding has been filed by the court reporter in the above–captioned matter. The parties have seven (7) calendar days to file with the Court a Notice of Intent to Request Redaction of this transcript. Within 21 days of the filing of the transcript, a Redaction Request – Transcript shall be e–filed with the Court. Access to this request will be restricted to the Court and the attorneys of record in the case. If no such Notice and Redaction Request are filed, the transcript may be made remotely, electronically available to the public without redaction. Any party needing a copy of the transcript to review for redaction purposes may purchase a copy from the Court Reporter. Counsel are strongly urged to share this notice with all clients so that an informed decision about the inclusion of certain materials may be made. The responsibility for redacting these personal identifiers rests solely with counsel and the parties. The Clerk and Court Reporter will not review each transcript for compliance with this rule.** |

70

| | | | Notice of Intent to Redact due 3/5/2015. Redaction Request due 3/17/2015. Redacted Transcript Deadline set for 3/27/2015. Release of Transcript Restriction set for 5/26/2015. (sld) (Entered: 02/24/2015) |
|---|---|---|---|
| 02/24/2015 | 1482 | | ORDER DISMISSING COUNTS for Juan Briseno (1): Judgment of Acquital on Counts 25 and 26 of the 4th Superseding Indictment is GRANTED on 2/24/2015 at trial. Oral Order by Chief Judge Philip P. Simon in open court on 2/24/2015. (nac) (Entered: 03/02/2015) |
| 02/25/2015 | 1459 | | Writ of Habeas Corpus ad Testificandum Returned Executed for Corey Walton on 2/24/15 in case as to Juan Briseno (mc) (Entered: 02/25/2015) |
| 02/25/2015 | 1463 | | ARREST Warrant Returned Executed on 2/25/15 in case as to Juan Briseno. (eml) (eml). (Entered: 02/25/2015) |
| 02/25/2015 | 1464 | | ARREST Warrant Returned Executed on 2/25/15 in case as to Juan Briseno. (eml) (eml). (Entered: 02/25/2015) |
| 02/25/2015 | 1465 | | JURY TRIAL (13TH DAY OF EVIDENCE) as to Juan Briseno held on 2/25/2015 before Chief Judge Philip P Simon. Parties present as previously noted. Defense continues to present evidence, concludes and rests. Dft sworn regarding dft's right not to testify, the dft informs the Court that he does not wish to testify. Govt presents rebuttal evidence and then rests. No sur–rebuttal evidence by dft, defense rests. Jury excused with overnight instruction and instructed to return on Thursday, 2/26/2015 at 8:30 a.m. for final argument, court's instruction on the law and deliberation. Defense renews Rule 29 Motion after conclusion of rebuttal evidence–DENIED. Argument heard on Motion 1420 –DENIED. Discussion on penalty phase (if required) related to the number of witnesses per victim that can be called. Court: no specific number but reasonable related to the circumstances. Govt shall provide to the Court a list of witnesses to be called in the penalty phase (if required) by end of day 2/27/15. Instructon Conference held – dft waives his appearance at the Instruction Conference. (Present at Instruction Conference: David Nozick, AUSA, Arlington Foley and John Maksimovich). Defendant REMANDED to custody of US Marshal. (Court Reporter: Stacy Drohosky (am) and Richard Ehrlich (pm).) (nac) (Entered: 02/25/2015) |
| 02/25/2015 | 1466 | | TRANSCRIPT of Jury Trial – Volume 22–AM as to Juan Briseno held on February 25, 2015, before Judge Phlip P. Simon. Court Reporter Stacy L. Drohosky, Telephone number (219) 852–3462. Tape Number: Stenographically Reported. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. <br><br> **IMPORTANT: Notice is hereby given that an official transcript of a proceeding has been filed by the court reporter in the above–captioned matter. The parties have seven (7) calendar days to file with the Court a Notice of Intent to Request Redaction of this transcript. Within 21 days of the filing of the transcript, a Redaction Request – Transcript shall be e–filed with the Court. Access to this request will be restricted to the Court and the attorneys of record in the case. If no such Notice and Redaction Request are filed, the transcript may be made remotely, electronically available to the public without redaction. Any party needing a copy of the transcript to review for redaction purposes may purchase a copy from the Court Reporter. Counsel are strongly urged to share this notice with all clients so that an** |

| | | | informed decision about the inclusion of certain materials may be made. The responsibility for redacting these personal identifiers rests solely with counsel and the parties. The Clerk and Court Reporter will not review each transcript for compliance with this rule. |
|---|---|---|---|
| | | | Notice of Intent to Redact due 3/6/2015. Redaction Request due 3/18/2015. Redacted Transcript Deadline set for 3/30/2015. Release of Transcript Restriction set for 5/26/2015. (sld) (Entered: 02/25/2015) |
| 02/25/2015 | 1467 | | TRANSCRIPT of Jury Trial – Volume 22–PM as to Juan Briseno held on February 25, 2015, before Judge Philip P. Simon. Court Reporter Richard Ehrlich, Telephone number (219) 852–6557. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. <br><br> IMPORTANT: Notice is hereby given that an official transcript of a proceeding has been filed by the court reporter in the above–captioned matter. The parties have seven (7) calendar days to file with the Court a Notice of Intent to Request Redaction of this transcript. Within 21 days of the filing of the transcript, a Redaction Request – Transcript shall be e–filed with the Court. Access to this request will be restricted to the Court and the attorneys of record in the case. If no such Notice and Redaction Request are filed, the transcript may be made remotely, electronically available to the public without redaction. Any party needing a copy of the transcript to review for redaction purposes may purchase a copy from the Court Reporter. Counsel are strongly urged to share this notice with all clients so that an informed decision about the inclusion of certain materials may be made. The responsibility for redacting these personal identifiers rests solely with counsel and the parties. The Clerk and Court Reporter will not review each transcript for compliance with this rule. <br><br> Notice of Intent to Redact due 3/6/2015. Redaction Request due 3/18/2015. Redacted Transcript Deadline set for 3/30/2015. Release of Transcript Restriction set for 5/26/2015. (sld) (Entered: 02/25/2015) |
| 02/26/2015 | 1469 | | ORDER denying 1420 Motion for Production of Unprivileged, Non–Testimonial Evidence as to Juan Briseno (1). Signed by Chief Judge Philip P Simon on 2/26/15. (mc) (Entered: 02/26/2015) |
| 02/26/2015 | 1470 | | TRANSCRIPT of Jury Trial as to Juan Briseno held on February 26, 2015, before Judge Philip P. Simon. Court Reporter Richard D. Ehrlich, Telephone number 219–852–6557. Tape Number: NA. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. <br><br> IMPORTANT: Notice is hereby given that an official transcript of a proceeding has been filed by the court reporter in the above–captioned matter. The parties have seven (7) calendar days to file with the Court a Notice of Intent to Request Redaction of this transcript. Within 21 days of the filing of the transcript, a Redaction Request – Transcript shall be e–filed with the Court. Access to this request will be restricted to the Court and the |

72

|  |  |  | **attorneys of record in the case. If no such Notice and Redaction Request are filed, the transcript may be made remotely, electronically available to the public without redaction. Any party needing a copy of the transcript to review for redaction purposes may purchase a copy from the Court Reporter. Counsel are strongly urged to share this notice with all clients so that an informed decision about the inclusion of certain materials may be made. The responsibility for redacting these personal identifiers rests solely with counsel and the parties. The Clerk and Court Reporter will not review each transcript for compliance with this rule.**<br><br>Notice of Intent to Redact due 3/9/2015. Redaction Request due 3/19/2015. Redacted Transcript Deadline set for 3/30/2015. Release of Transcript Restriction set for 5/27/2015. (rde) (Entered: 02/26/2015) |
| 02/26/2015 | 1473 |  | JURY TRIAL (14th DAY – Final Argument and Instructions) as to Juan Briseno held on 2/26/2015 before Chief Judge Philip P Simon. Parties present as previously noted. Final Arguments presented. Jury instructed as to the law on this case. Court security officers sworn to take charge of jury. Jurors 1–12 exit courtriin to begin deliberation once they receive all the evidence. Court provides instructions to alternate jurors, after consultation with counsel the court excuses alternate juror #5, juror #149. alternate jurors 1–4 are instructed that they will be advised this weekend by the court if they need to return to the courthouse on Monday, March 2, 2015 for the penalty phase of the case. Note from jury received requesting to deliberate until 7:00 p.m. Court excuses deliberating jurors earlier due to weather conditions. Jurors instructed to return by 8:30 a.m. on Friday, 2/27/2015 for deliberation. Once all jurors are present, they may commence their deliberation. Defendant REMANDED to custody of US Marshal. (Court Reporter Richard Ehrlich (am) and Stacy Drohosky (pm).) (nac) (Entered: 02/27/2015) |
| 02/27/2015 | 1471 |  | TRANSCRIPT of Jury Trial – Volume 23–PM as to Juan Briseno held on February 26, 2015, before Judge Philip P. Simon. Court Reporter Stacy L. Drohosky, Telephone number (219) 852–3462. Tape Number: Stenographically Reported. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.<br><br>**IMPORTANT: Notice is hereby given that an official transcript of a proceeding has been filed by the court reporter in the above–captioned matter. The parties have seven (7) calendar days to file with the Court a Notice of Intent to Request Redaction of this transcript. Within 21 days of the filing of the transcript, a Redaction Request – Transcript shall be e–filed with the Court. Access to this request will be restricted to the Court and the attorneys of record in the case. If no such Notice and Redaction Request are filed, the transcript may be made remotely, electronically available to the public without redaction. Any party needing a copy of the transcript to review for redaction purposes may purchase a copy from the Court Reporter. Counsel are strongly urged to share this notice with all clients so that an informed decision about the inclusion of certain materials may be made. The responsibility for redacting these personal identifiers rests solely with counsel and the parties. The Clerk and Court Reporter will not review each transcript for compliance with this rule.** |

73

| | | | |
|---|---|---|---|
| | | | Notice of Intent to Redact due 3/10/2015. Redaction Request due 3/20/2015. Redacted Transcript Deadline set for 3/30/2015. Release of Transcript Restriction set for 5/28/2015. (sld) (Entered: 02/27/2015) |
| 02/27/2015 | 1472 | | NOTICE *Response to Defendant's Proposed Mitigating Factors* by United States of America as to Juan Briseno re 1442 Proposed Jury Instructions (Hegyi – AUSA, Bruce) (Entered: 02/27/2015) |
| 02/27/2015 | 1475 | | NOTICE *Amended Response to Defendant's Proposed Mitigation Factors* by United States of America as to Juan Briseno re 1472 Notice (Other) (Hegyi – AUSA, Bruce) (Entered: 02/27/2015) |
| 02/27/2015 | 1486 | | JURY TRIAL (15th DAY – DELIBERATION and VERDICT) as to Juan Briseno held on 2/27/2015 before Chief Judge Philip P Simon. Parties present as previously noted. Jurors (12) return to deliberate, commence deliberation at 8:20 a.m. and advise the Court they have reached a verdict at approximately 7:30 p.m. During deliberation one note received from the jury asking to view a particular piece(s) of evidence. Parties/Court assemble to discuss note, Govt physical exhibits 34, 35, 36 and 37 are provided to the jury for their examination. Jury in open court to return verdicts (8:07 p.m.): FINDING dft Juan Briseno: GUILTY on Counts 1 and 2. Count 9–GUILTY. Count 13–GUILTY. Count 15–GUILTY. Count 17–NOT GUILTY. Count 19–GUILTY. Count 21–GUILTY. Count 23–GUILTY. Count 24–GUILTY. Count 27–NOT GUILTY. Count 28–NOT GUILTY. Count 29–NOT GUILTY. Count 30–NOT GUILTY. Jury polled with no change in verdicts. Court orders that the jury return for the penalty phase on Tuesday, March 3, 2015 by 8:00 a.m., to begin at 8:30 a.m. The alternate jurors will be called personally to advise them of the date and time to report. Projected time frame for penalty phase is less than one week. Jury reminded not to listen, read or do any research into this case even though now the verdcits have been returned, the trial is not yet concluded. Jury excused. Forefeiture issue briefly discussed, the dft does not contest the forefeiture. Deadline for motion regarding tattoos to be filed by Saturday, 2/28/2015. Next proceeding: penalty phase to begin on Tuesday, 3/3/2015 at 8:30 a.m. Defendant REMANDED to custody of US Marshal.(Court Reporter Stacy Drohosky.) (nac) (Entered: 03/02/2015) |
| 02/27/2015 | 1488 | | JURY VERDICT as to Juan Briseno (1): Finding dft GUILTY on Counts 1, 2, 9, 13, 15, 19, 21, 23 and 24 of the 4th Superseding Indictment. FINDING dft Juan Briseno NOT GUILTY on counts 17, 27, 28, 29, and 30 of the 4th Superseding Indictment. (Note: this version of the Jury Vedict redacts the signatures of the jurors. The original verdict is placed under seal). (nac) (Entered: 03/02/2015) |
| 02/27/2015 | 1489 | | JURY VERDICT (SEALED DOCUMENT). Contains original juror signatures. (nac) (Entered: 03/02/2015) |
| 02/27/2015 | 1492 | | JURY NOTES (3) from Jury Trial as to Juan Briseno. (nac) Modified on 3/3/2015 (nac). (Entered: 03/02/2015) |
| 02/27/2015 | 1493 | | WITNESS LIST/EXHIBIT LIST (Guilt Phase) from the Jury Trial (Guilt Phase) of Juan Briseno. (nac). (Entered: 03/02/2015) |
| 02/27/2015 | 1499 | | COURT'S PROPOSED JURY INSTRUCTIONS (Guilt Phase) to Juan Briseno. (nac) Modified on 3/3/2015 adding detail. (nac). Modified on 3/3/2015 (nac). (Entered: 03/03/2015) |
| 02/27/2015 | 1500 | | |

74

| | | | |
|---|---|---|---|
| | | | COURT'S FINAL JURY INSTRUCTIONS (Guilt Phase) as to Juan Briseno. (nac) (Entered: 03/03/2015) |
| 02/27/2015 | 1501 | | COURT'S PROPOSED VERDICT FORM (Guilt Phase) as to Juan Briseno. (nac) (Entered: 03/03/2015) |
| 02/27/2015 | 1502 | | COURT'S FINAL VERDICT FORM (Guilt Phase) as to Juan Briseno. (nac). (Entered: 03/03/2015) |
| 02/28/2015 | 1476 | | MOTION in Limine *to Prohibit Prosecutorial Misconduct In Summation* by Juan Briseno. (Maksimovich, John) (Entered: 02/28/2015) |
| 02/28/2015 | 1477 | | MOTION To File Over–Length Motion re 1476 MOTION in Limine *to Prohibit Prosecutorial Misconduct In Summation* by Juan Briseno. (Maksimovich, John) (Entered: 02/28/2015) |
| 03/01/2015 | 1478 | | MOTION in Limine *Regarding Penalty–Phase Evidence* by Juan Briseno. (Maksimovich, John) (Entered: 03/01/2015) |
| 03/01/2015 | 1479 | | NOTICE –*Defendant's Reply In Support of Mitigating Factors* re 1475 Notice (Other), 1442 Proposed Jury Instructions (Maksimovich, John) (Entered: 03/01/2015) |
| 03/01/2015 | 1480 | | Second MOTION to Compel *Production of Unprivileged, Non–Testimonial, Evidence* by United States of America as to Juan Briseno. (Attachments: # 1 Exhibit A (photos of D's Tattoos), # 2 Exhibit B (D's Letter to Beltran), # 3 Exhibit C (S.A. Gore Declaration))(Hegyi – AUSA, Bruce) (Entered: 03/01/2015) |
| 03/02/2015 | 1481 | | TRANSCRIPT of Jury Trial – Volume 24 as to Juan Briseno held on February 27, 2015, before Judge Philip P. Simon. Court Reporter Stacy L. Drohosky, Telephone number (219) 852–3462. Tape Number: Stenographically Reported. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.<br><br>**IMPORTANT: Notice is hereby given that an official transcript of a proceeding has been filed by the court reporter in the above–captioned matter. The parties have seven (7) calendar days to file with the Court a Notice of Intent to Request Redaction of this transcript. Within 21 days of the filing of the transcript, a Redaction Request – Transcript shall be e–filed with the Court. Access to this request will be restricted to the Court and the attorneys of record in the case. If no such Notice and Redaction Request are filed, the transcript may be made remotely, electronically available to the public without redaction. Any party needing a copy of the transcript to review for redaction purposes may purchase a copy from the Court Reporter. Counsel are strongly urged to share this notice with all clients so that an informed decision about the inclusion of certain materials may be made. The responsibility for redacting these personal identifiers rests solely with counsel and the parties. The Clerk and Court Reporter will not review each transcript for compliance with this rule.**<br><br>Notice of Intent to Redact due 3/10/2015. Redaction Request due 3/23/2015. Redacted Transcript Deadline set for 4/2/2015. Release of Transcript Restriction set for 6/1/2015. (sld) (Entered: 03/02/2015) |

75

| | | | |
|---|---|---|---|
| 03/02/2015 | 1483 | | ORDER: Government to file, no later than Wednesday 3/4/2015, a response to defendant Juan Briseno's 1476 Motion in Limine to Prohibit Specified Types of Prosecutorial Misconduct in Penalty–Phase Summation. Signed by Chief Judge Philip P Simon on 3/2/2015. (tc) (Entered: 03/02/2015) |
| 03/02/2015 | 1485 | | MOTION TO PRECLUDE IMPROPER CROSS–EXAMINATION OF DEFENSE EXPERTS AND REBUTTAL TESTIMONY FROM GOVERNMENT WITNESSES ON FUTURE DANGEROUSNESS NON–STATUTORY AGGRAVATOR, OR, IN THE ALTERNATIVE, FOR DISCOVERY by Juan Briseno. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C)(Maksimovich, John) (Entered: 03/02/2015) |
| 03/02/2015 | 1487 | | REPLY TO RESPONSE to Motion by Juan Briseno re 1480 Second MOTION to Compel *Production of Unprivileged, Non–Testimonial, Evidence* (Maksimovich, John) (Entered: 03/02/2015) |
| 03/02/2015 | 1491 | | NOTICE *of Request to Charge at Commencement of Penalty Phase* (Maksimovich, John) (Entered: 03/02/2015) |
| 03/02/2015 | 1494 | | RESPONSE by United States of America to 1491 Notice (Other). (Hegyi – AUSA, Bruce) (Entered: 03/02/2015) |
| 03/02/2015 | 1495 | | Supplemental MOTION in Limine *to Prohibit Cross–Examination of Defense Expert About Minor Personnel Matter* by Juan Briseno. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C)(Maksimovich, John) (Entered: 03/02/2015) |
| 03/03/2015 | 1496 | | NOTICE *Reply in Support of Request for Penalty Phase Introduction* re 1494 Response/Reply/Objection, 1491 Notice (Other) (Maksimovich, John) (Entered: 03/03/2015) |
| 03/03/2015 | 1497 | | MOTION in Limine *to Exclude Videos of Prison Violence* by Juan Briseno. (Maksimovich, John) (Entered: 03/03/2015) |
| 03/03/2015 | 1505 | | JURY TRIAL –(16th Day – PENALTY PHASE– 1st DAY) as to Juan Briseno held on 3/3/2015 before Chief Judge Philip P Simon. Parties present as previously noted. Discussion on recent motions filed. Discussion and rulings on 1478 and 1495 . Oral Motion for Sep of Witnesses by defense, shortly thereafter motion is withdrawn. Regarding Govt Motion to Compel, Motion for Discovery, Motion to Inspect and Photograph Dft's Tattoos 1480 : Court GRANTS this motion. The dft shall submit to photographs of his tattoos. Court to issue an order on this issue. Discussion on the scope of mitigators, Court will instruct the jury. Discussion on witness issue regarding a shooting. The defense advises an interpreter is needed for 3/4/2015. Court's Preliminary Instructions to the jury. Opening Statements by Govt and defense counsel. Govt presents evidence in penalty phase. Court ruling on tattoo issue, finding the subject is relevant. Stipulation signed by parties and read to the jury (regarding date of Indictment, date of arrest and special findings). Govt continues to present evidence, concludes and rests. Jury excused and ordered to return on Wednesday, 3/4/2015 at 9:00 a.m. Jury given overnight instruction. Court hears argument as to Rule 29 motion by defense, gateway and aggravating factors. Court takes Rule 29 motion under advisement. Attorneys to return 3/4/2015 at 8:15 for further discussion. Scheduling matters discussed. Request for an interpreter is withdrawn by the defense. Dft is REMANDED to custody of US Marshal.(Court Reporter Stacy Drohosky (am) and Joanne Hoffman (pm).) (nac). Modified on 3/20/2015 to add detail. (nac). (Entered: 03/03/2015) |

| 03/03/2015 | 1506 | | TRANSCRIPT of Jury Trial – Volume 25 – Penalty Phase as to Juan Briseno held on March 3, 2015, before Judge Philip P. Simon. Court Reporter Stacy L. Drohosky, Telephone number (219) 852–3462. Tape Number: Stenographically Reported. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. **IMPORTANT: Notice is hereby given that an official transcript of a proceeding has been filed by the court reporter in the above–captioned matter. The parties have seven (7) calendar days to file with the Court a Notice of Intent to Request Redaction of this transcript. Within 21 days of the filing of the transcript, a Redaction Request – Transcript shall be e–filed with the Court. Access to this request will be restricted to the Court and the attorneys of record in the case. If no such Notice and Redaction Request are filed, the transcript may be made remotely, electronically available to the public without redaction. Any party needing a copy of the transcript to review for redaction purposes may purchase a copy from the Court Reporter. Counsel are strongly urged to share this notice with all clients so that an informed decision about the inclusion of certain materials may be made. The responsibility for redacting these personal identifiers rests solely with counsel and the parties. The Clerk and Court Reporter will not review each transcript for compliance with this rule.** Notice of Intent to Redact due 3/12/2015. Redaction Request due 3/24/2015. Redacted Transcript Deadline set for 4/3/2015. Release of Transcript Restriction set for 6/1/2015. (sld) (Entered: 03/03/2015) |
| 03/03/2015 | 1524 | | STIPULATION of Govt and dft Juan Briseno during trial on 3/3/2015: as to the arrest of dft Juan Briseno on Indictment on 6/24/11 with special findings that notified the dft that he was potentially eligible for the death penalty in this case. (nac). (Entered: 03/10/2015) |
| 03/04/2015 | 1507 | | TRANSCRIPT of Jury Trial–Penalty Phase, Volume 25–PM, as to Juan Briseno held on March 3, 2015, before Judge Philip P. Simon. Court Reporter Joanne Hoffman, Telephone number 574–246–8038. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. <P>**IMPORTANT: Notice is hereby given that an official transcript of a proceeding has been filed by the court reporter in the above–captioned matter. The parties have seven (7) calendar days to file with the Court a Notice of Intent to Request Redaction of this transcript. Within 21 days of the filing of the transcript, a Redaction Request – Transcript shall be e–filed with the Court. Access to this request will be restricted to the Court and the attorneys of record in the case. If no such Notice and Redaction Request are filed, the transcript may be made remotely, electronically available to the public without redaction. Any party needing a copy of the transcript to review for redaction purposes may purchase a copy from the Court Reporter. Counsel are strongly urged to share this notice with all clients so that an informed decision about the inclusion of certain materials may be made. The responsibility for redacting these personal identifiers rests solely with counsel and the parties. The Clerk and Court Reporter will not review each transcript for compliance with this rule.</P>** |

77

| | | | |
|---|---|---|---|
| | | | Notice of Intent to Redact due 3/13/2015. Redaction Request due 3/25/2015. Redacted Transcript Deadline set for 4/6/2015. Release of Transcript Restriction set for 6/2/2015. (jh) (Entered: 03/04/2015) |
| 03/04/2015 | 1509 | | MOTION TO FILE OVER–LENGTH RESPONSE by United States of America as to Juan Briseno. (Nozick – AUSA, David) (Entered: 03/04/2015) |
| 03/04/2015 | 1510 | | RESPONSE to Motion by United States of America as to Juan Briseno re 1476 MOTION in Limine *to Prohibit Prosecutorial Misconduct In Summation* (Nozick – AUSA, David) (Entered: 03/04/2015) |
| 03/04/2015 | 1511 | | JURY TRIAL – (17th DAY–PENALTY PHASE–2ND DAY) as to Juan Briseno held on 3/4/2015 before Chief Judge Philip P Simon. Parties present as previously noted. Rule 29 Motion argument continues. Ruling by the Court on Rule 29 Motion. Defense begins presentation of penalty phase evidence. Motions in Limine discussed regarding cross–exam concerning instances of violent conduct in prison. Argument heard, Court ruling on 1485 and 1497 . The videos that the Govt provided to the Court will be excluded. Defense continues to present evidence. Information regarding juror #129 provided to parties by the Court. Parties have no objection to excusing juror #129 – juror #129 excused from further service in this trial. (Jury panel now consists of 12 regular jurors and 3 alternate jurors). Evidence concludes for the day. Jurors instructed to return on Thursday, 3/5/2015 at 8:30 a.m. Discussion with attorneys on scheduling. Court will be in session on Friday, 3/6/15. Trial continued to Thursday, 3/5/2015 at 8:30 a.m. Defense renews request for an interpreter, interpreter obtained. Defendant REMANDED to custody of US Marshal. (Court Reporter: Stacy Drohosky (am) and Joanne Hoffman (pm).) (nac) Modified on 3/4/2015 to provide additional info re: interpreter). (nac). Modified on 3/20/2015 to add detail. (nac). (Entered: 03/04/2015) |
| 03/04/2015 | 1512 | | TRANSCRIPT of Jury Trial – Volume 26–AM – Penalty Phase as to Juan Briseno held on March 4, 2015, before Judge Philip P. Simon. Court Reporter Stacy L. Drohosky, Telephone number (219) 852–3462. Tape Number: Stenographically Reported. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.<br><br>**IMPORTANT: Notice is hereby given that an official transcript of a proceeding has been filed by the court reporter in the above–captioned matter. The parties have seven (7) calendar days to file with the Court a Notice of Intent to Request Redaction of this transcript. Within 21 days of the filing of the transcript, a Redaction Request – Transcript shall be e–filed with the Court. Access to this request will be restricted to the Court and the attorneys of record in the case. If no such Notice and Redaction Request are filed, the transcript may be made remotely, electronically available to the public without redaction. Any party needing a copy of the transcript to review for redaction purposes may purchase a copy from the Court Reporter. Counsel are strongly urged to share this notice with all clients so that an informed decision about the inclusion of certain materials may be made. The responsibility for redacting these personal identifiers rests solely with counsel and the parties. The Clerk and Court Reporter will not review each transcript for compliance with this rule.** |

| | | | Notice of Intent to Redact due 3/13/2015. Redaction Request due 3/25/2015. Redacted Transcript Deadline set for 4/6/2015. Release of Transcript Restriction set for 6/2/2015. (sld) (Entered: 03/04/2015) |
|---|---|---|---|
| 03/05/2015 | 1513 | | TRANSCRIPT of Jury Trial – Penalty Phase, Volume 26–PM, as to Juan Briseno held on March 4, 2015, before Judge Philip P. Simon. Court Reporter Joanne M. Hoffman, Telephone number 574–246–8038. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. <P>**IMPORTANT: Notice is hereby given that an official transcript of a proceeding has been filed by the court reporter in the above–captioned matter. The parties have seven (7) calendar days to file with the Court a Notice of Intent to Request Redaction of this transcript. Within 21 days of the filing of the transcript, a Redaction Request – Transcript shall be e–filed with the Court. Access to this request will be restricted to the Court and the attorneys of record in the case. If no such Notice and Redaction Request are filed, the transcript may be made remotely, electronically available to the public without redaction. Any party needing a copy of the transcript to review for redaction purposes may purchase a copy from the Court Reporter. Counsel are strongly urged to share this notice with all clients so that an informed decision about the inclusion of certain materials may be made. The responsibility for redacting these personal identifiers rests solely with counsel and the parties. The Clerk and Court Reporter will not review each transcript for compliance with this rule.</P>** Notice of Intent to Redact due 3/13/2015. Redaction Request due 3/26/2015. Redacted Transcript Deadline set for 4/6/2015. Release of Transcript Restriction set for 6/3/2015. (jh) (Entered: 03/05/2015) |
| 03/05/2015 | 1514 | | Writ of Habeas Corpus ad Testificandum Returned Executed for Guillermo Briseno on 3/4/15 in case as to Juan Briseno. (kjp) (Entered: 03/05/2015) |
| 03/05/2015 | 1515 | | TRANSCRIPT of Jury Trial as to Juan Briseno held on March 5, 2015, before Judge Philip P. Simon. Court Reporter Richard D. Ehrlich, Telephone number 219–852–6557. Tape Number: NA. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. **IMPORTANT: Notice is hereby given that an official transcript of a proceeding has been filed by the court reporter in the above–captioned matter. The parties have seven (7) calendar days to file with the Court a Notice of Intent to Request Redaction of this transcript. Within 21 days of the filing of the transcript, a Redaction Request – Transcript shall be e–filed with the Court. Access to this request will be restricted to the Court and the attorneys of record in the case. If no such Notice and Redaction Request are filed, the transcript may be made remotely, electronically available to the public without redaction. Any party needing a copy of the transcript to review for redaction purposes may purchase a copy from the Court Reporter. Counsel are strongly urged to share this notice with all clients so that an informed decision about the inclusion of certain materials may be made. The responsibility for redacting these personal identifiers rests solely with counsel and the parties. The Clerk and Court Reporter will not review each transcript for compliance with this rule.** |

79

| | | | |
|---|---|---|---|
| | | | Notice of Intent to Redact due 3/16/2015. Redaction Request due 3/26/2015. Redacted Transcript Deadline set for 4/6/2015. Release of Transcript Restriction set for 6/3/2015. (rde) (Entered: 03/05/2015) |
| 03/05/2015 | 1517 | | JURY TRIAL–(18TH DAY–PENALTY PHASE–3RD DAY) as to Juan Briseno held on 3/5/2015 before Chief Judge Philip P Simon. Parties present as previously noted. Defense continues to present evidence. Interpreter Kathleen O'Hanlon appears to interpret English/Spanish for one defense witness. Interpreter is sworn under oath and interprets for Spanish speaking witness. Court hears Govt rebuttal witness out of order due to scheduling matters with sur–rebuttal witness following. Defendant continues to present evidence. Dft indicates that he will not testify after being placed under oath for inquiry by the court. Defense renews Rule 29 motion – DENIED. Defense rests penalty phase. Govt rests penalty phase. Trial continued to Friday, 3/6/2015 with Instruction Conference to be held with attorneys at 8:00 a.m. Final arguments, penalty phase instruction on the law in this case and deliberations to follow. Instructions provided to attorneys at conclusion of the day in preparation of Instruction Conference to be held on 3/6/15. Defendant REMANDED to custody of US Marshal.(Court Reporter: Richard Ehrlich (am) and Joanne Hoffman (pm).) (nac). (Entered: 03/06/2015) |
| 03/06/2015 | 1516 | | TRANSCRIPT of Jury Trial – Penalty Phase, Vol. 27–PM, as to Juan Briseno held on March 5, 2015, before Judge Philip P. Simon. Court Reporter Joanne Hoffman, Telephone number 574–246–8038. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. <P>**IMPORTANT: Notice is hereby given that an official transcript of a proceeding has been filed by the court reporter in the above–captioned matter. The parties have seven (7) calendar days to file with the Court a Notice of Intent to Request Redaction of this transcript. Within 21 days of the filing of the transcript, a Redaction Request – Transcript shall be e–filed with the Court. Access to this request will be restricted to the Court and the attorneys of record in the case. If no such Notice and Redaction Request are filed, the transcript may be made remotely, electronically available to the public without redaction. Any party needing a copy of the transcript to review for redaction purposes may purchase a copy from the Court Reporter. Counsel are strongly urged to share this notice with all clients so that an informed decision about the inclusion of certain materials may be made. The responsibility for redacting these personal identifiers rests solely with counsel and the parties. The Clerk and Court Reporter will not review each transcript for compliance with this rule.</P>** Notice of Intent to Redact due 3/17/2015. Redaction Request due 3/27/2015. Redacted Transcript Deadline set for 4/6/2015. Release of Transcript Restriction set for 6/4/2015. (jh) (Entered: 03/06/2015) |
| 03/06/2015 | 1522 | | JURY TRIAL (19th DAY OF EVIDENCE–4TH DAY OF PENALTY PHASE, Final Argument, Deliberations and VERDICT) as to Juan Briseno held on 3/6/2015 before Chief Judge Philip P Simon. Parties present as previously noted. Instruction Conference held. Ruling on Instructions. Ruling on 1476 Motion in Limine. Court ruling at what age dft joined IGs. Final arguments to jury. Jury charged with Instructions. Jury begins deliberation on verdicts. Court advised that jury has reached verdicts. Jury FINDS that dft shall serve a term of life imprisonment. Sentencing set for 6/15/2015 at 10:00 a.m. Defendant REMANDED to custody of US Marshal.(Court Reporter Richard Ehrlich (am/pm) |

| | | | |
|---|---|---|---|
| | | | and Stacy Drohosky (verdict only). (nac) Modified on 3/9/2015 to add detail. (nac). (Entered: 03/09/2015) |
| 03/06/2015 | 1523 | | NOTICE OF HEARING as to Juan Briseno: Sentencing set for 6/15/2015 10:00 AM in US District Court – Hammond before Chief Judge Philip P Simon. (nac) (Entered: 03/09/2015) |
| 03/06/2015 | 1525 | | WITNESS LIST/EXHIBIT LIST from Penalty Phase of Jury Trial (3/3/15 – 3/6/15) of Juan Briseno. (nac) (Entered: 03/10/2015) |
| 03/06/2015 | 1526 | | COURT'S PROPOSED Final Instructions to Jury (Following Penalty Phase Evidence) as to Juan Briseno. (nac) (Entered: 03/10/2015) |
| 03/06/2015 | 1527 | | COURT'S PROPOSED Penalty Phase Verdict Form (with all 5 counts) as to Juan Briseno. (nac) (Entered: 03/10/2015) |
| 03/06/2015 | 1528 | | COURT'S FINAL Instructions to Jury Following Penalty Phase Evidence as to Juan Briseno. (nac). (Entered: 03/10/2015) |
| 03/06/2015 | 1529 | | COURT'S FINAL Verdict Form (Penalty Phase) (with all 5 counts) as to Juan Briseno. (nac). (Entered: 03/10/2015) |
| 03/06/2015 | 1530 | | Jury Note (from Penalty Phase Deliberation) as to Juan Briseno. (nac) (Entered: 03/10/2015) |
| 03/06/2015 | 1531 | | COURT'S VERDICT FORM (PENALTY PHASE) as to Count 9 – Murder of Luis Ortiz aka "Manolo". (No sentence of death recommended). (nac). (Entered: 03/11/2015) |
| 03/06/2015 | 1532 | | COURT'S VERDICT FORM (PENALTY PHASE) as to Count 13 – Murder of Michael Sessum. (No sentence of death recommended). (nac) (Entered: 03/11/2015) |
| 03/06/2015 | 1533 | | COURT'S VERDICT FORM (PENALTY PHASE) as to Count 15 – Murder of Miguel Mejias aka "King Nelly". (No sentence of death recommended). (nac) (Entered: 03/11/2015) |
| 03/06/2015 | 1534 | | COURT'S VERDICT FORM (PENALTY PHASE) as to Count 19 – Murder of Miguel Colon aka "Migs". (No sentence of death recommended). (nac) (Entered: 03/11/2015) |
| 03/06/2015 | 1535 | | COURT'S VERDICT FORM (PENALTY PHASE) as to Count 21 – Murder of Latroy Howard. (No sentence of death recommended). (nac) (Entered: 03/11/2015) |
| 03/06/2015 | 1570 | | Court's Verdict Form (Penalty Phase) COUNT 9 (Murder of Luis Ortiz aka "Manolo"). (Note: previously docketed as a redacted document, this version of the document is unredacted and under seal per the court). (nac) (Entered: 04/09/2015) |
| 03/06/2015 | 1571 | | Court's Verdict Form (Penalty Phase) COUNT 13 (Murder of Michael Sessum). (Note: previously docketed as a redacted document, this version of the document is unredacted and under seal per the court). (nac) (Entered: 04/09/2015) |
| 03/06/2015 | 1572 | | Court's Verdict Form (Penalty Phase) COUNT 15 (Murder of Miguel Mejias aka "King Nelly"). (Note: previously docketed as a redacted document, this version of the document is unredacted and under seal per the court). (nac) (Entered: 04/09/2015) |

81

| 03/06/2015 | 1573 | | Court's Verdict Form (Penalty Phase) COUNT 19 (Murder of Miguel Colon aka "Migs"). (Note: previously docketed as a redacted document, this version of the document is unredacted and under seal per the court). (nac) (Entered: 04/09/2015) |
|---|---|---|---|
| 03/06/2015 | 1574 | | Court's Verdict Form (Penalty Phase) COUNT 21 (Murder of Latroy Howard). (Note: previously docketed as a redacted document, this version of the document is unredacted and under seal per the court). (nac) (Entered: 04/09/2015) |
| 03/09/2015 | 1519 | | TRANSCRIPT of Jury Trial as to Juan Briseno held on March 6, 2015, before Judge Philip P. Simon. Court Reporter Richard D. Ehrlich, Telephone number 219–852–6557. Tape Number: NA. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. **IMPORTANT: Notice is hereby given that an official transcript of a proceeding has been filed by the court reporter in the above–captioned matter. The parties have seven (7) calendar days to file with the Court a Notice of Intent to Request Redaction of this transcript. Within 21 days of the filing of the transcript, a Redaction Request – Transcript shall be e–filed with the Court. Access to this request will be restricted to the Court and the attorneys of record in the case. If no such Notice and Redaction Request are filed, the transcript may be made remotely, electronically available to the public without redaction. Any party needing a copy of the transcript to review for redaction purposes may purchase a copy from the Court Reporter. Counsel are strongly urged to share this notice with all clients so that an informed decision about the inclusion of certain materials may be made. The responsibility for redacting these personal identifiers rests solely with counsel and the parties. The Clerk and Court Reporter will not review each transcript for compliance with this rule.** Notice of Intent to Redact due 3/18/2015. Redaction Request due 3/30/2015. Redacted Transcript Deadline set for 4/9/2015. Release of Transcript Restriction set for 6/8/2015. (rde) (Entered: 03/09/2015) |
| 03/09/2015 | 1520 | | TRANSCRIPT of Jury Trial – Volume 28–PM – Verdict as to Juan Briseno held on March 6, 2015, before Judge Philip P. Simon. Court Reporter Stacy L. Drohosky, Telephone number (219) 852–3462. Tape Number: Stenographically Reported. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. **IMPORTANT: Notice is hereby given that an official transcript of a proceeding has been filed by the court reporter in the above–captioned matter. The parties have seven (7) calendar days to file with the Court a Notice of Intent to Request Redaction of this transcript. Within 21 days of the filing of the transcript, a Redaction Request – Transcript shall be e–filed with the Court. Access to this request will be restricted to the Court and the attorneys of record in the case. If no such Notice and Redaction Request are filed, the transcript may be made remotely, electronically available to the public without redaction. Any party needing a copy of the transcript to review for redaction purposes may purchase a copy from the Court Reporter. Counsel are strongly urged to share this notice with all clients so that an** |

| | | | |
|---|---|---|---|
| | | | **informed decision about the inclusion of certain materials may be made. The responsibility for redacting these personal identifiers rests solely with counsel and the parties. The Clerk and Court Reporter will not review each transcript for compliance with this rule.**<br><br>Notice of Intent to Redact due 3/17/2015. Redaction Request due 3/30/2015. Redacted Transcript Deadline set for 4/9/2015. Release of Transcript Restriction set for 6/8/2015. (sld) (Entered: 03/09/2015) |
| 03/11/2015 | 1536 | | (SEALED) MOTION to Seal Document by Juan Briseno. (Foley, Arlington) (Entered: 03/11/2015) |
| 03/11/2015 | 1537 | | SEALED MOTION by Juan Briseno. (Attachments: # 1 1, # 2 2)(Foley, Arlington) (Entered: 03/11/2015) |
| 03/12/2015 | 1538 | | ORDER GRANTING 1536 Motion to Seal Document as to Juan Briseno (1). (Text entry only, no pdf is attached). Approved by Chief Judge Philip P Simon on 3/12/15. (nac) (Entered: 03/12/2015) |
| 03/17/2015 | 1543 | | (SEALED) MOTION to Seal Document by Juan Briseno. (Maksimovich, John) (Entered: 03/17/2015) |
| 03/17/2015 | 1544 | | SEALED MOTION by Juan Briseno. (Maksimovich, John) (Entered: 03/17/2015) |
| 03/17/2015 | 1545 | | ORDER GRANTING 1543 Motion to Seal Document as to Juan Briseno (1). (Text entry only, no pdf is attached). Approved by Chief Judge Philip P Simon on 3/17/2015. (nac) (Entered: 03/17/2015) |
| 03/20/2015 | 1552 | | SEALED ORDER. Signed by Chief Judge Philip P Simon on 3/18/2015. (Note: The order was mailed to Chief Judge Wood for her approval on 3/18/2015, this order was not provided to the Case Manager for docketing until 3/20/2015). Copy of order provided by email to Atty John Maksimovich and Atty Arlington Foley. (nac) (Entered: 03/20/2015) |
| 03/24/2015 | 1553 | | (SEALED) MOTION to Seal Document by Juan Briseno. (Maksimovich, John) (Entered: 03/24/2015) |
| 03/24/2015 | 1554 | | SEALED MOTION by Juan Briseno. (Maksimovich, John) (Entered: 03/24/2015) |
| 03/24/2015 | 1561 | | SEALED DOCUMENT (Related to Motion 1544 and signed by Chief Judge Wood on 3/24/2015 and arriving in Hammond on 3/30/2015). (nac) Modified on 3/31/2015 to indicate that a copy of the order was sent to attorneys J. Maksimovich and A. Foley by email on 3/31/2015. (nac). (Entered: 03/31/2015) |
| 03/28/2015 | 1555 | | (SEALED) MOTION to Seal Document by Juan Briseno. (Maksimovich, John) (Entered: 03/28/2015) |
| 03/28/2015 | 1556 | | SEALED MOTION by Juan Briseno. (Maksimovich, John) (Entered: 03/28/2015) |
| 03/30/2015 | 1557 | | ORDER – GRANTING 1553 Motion to Seal Document as to Juan Briseno (1). (Text entry only, no pdf is attached). (Approved by Chief Judge Philip P. Simon). (nac) (Entered: 03/30/2015) |
| 03/30/2015 | 1558 | | ORDER GRANTING 1555 Motion to Seal Document as to Juan Briseno (1). (Text entry only, no pdf is attached). Approved by Chief Judge Philip P. Simon. (nac) (Entered: 03/30/2015) |

83

| 03/31/2015 | 1559 | | (SEALED) MOTION to Seal Document by Juan Briseno. (Maksimovich, John) (Entered: 03/31/2015) |
|---|---|---|---|
| 03/31/2015 | 1560 | | SEALED MOTION by Juan Briseno. (Maksimovich, John) (Entered: 03/31/2015) |
| 04/01/2015 | 1562 | | ORDER: GRANTING 1559 Motion to Seal Document as to Juan Briseno (1). (Text entry only, no pdf is attached). Approved by Chief Judge Philip P. Simon on 4/1/2015. (nac) (Entered: 04/01/2015) |
| 04/07/2015 | 1564 | | SEALED ORDER. Signed by Chief Judge Philip P Simon on 4/7/2015. (Copy sent to Attys J. Maksimovich and A. Foley by email on 4/7/2015). (nac) (Entered: 04/07/2015) |
| 04/07/2015 | | | Document (verdict form) unsealed as to dft Juan Briseno. (Verdict Form – Docket Entry #1488 – this verdict form from the guilt phase of the trial contains redacted juror signatures and therefore does not need to be sealed). (nac) (Entered: 04/07/2015) |
| 04/09/2015 | 1566 | | (SEALED) MOTION to Seal Document by Juan Briseno. (Maksimovich, John) (Entered: 04/09/2015) |
| 04/09/2015 | 1567 | | SEALED MOTION by Juan Briseno. (Maksimovich, John) (Entered: 04/09/2015) |
| 04/09/2015 | 1568 | | SEALED ORDER as to Juan Briseno. Signed by Chief Judge Philip P Simon on 4/9/2015. (Copy provided to Attys J. Maksimovich and A. Foley by email on 4/9/2015). (nac) (Entered: 04/09/2015) |
| 04/14/2015 | 1578 | | ORDER GRANTING 1566 Motion to Seal Document as to Juan Briseno (1). Approved by Chief Judge Philip P Simon on 4/14/2015. (nac) (Entered: 04/14/2015) |
| 04/14/2015 | 1579 | | SEALED ORDER as to 1560 and 1567 . Signed by Chief Judge Philip P Simon on 4/14/2015. Copy provided to Attorneys John Maksimovich and Arlington Foley on 4/14/2015 by email. (nac) (Entered: 04/14/2015) |
| 04/23/2015 | 1590 | | Writ of Habeas Corpus ad Testificandum Returned Executed for Eddie Torres on 4/20/2015 in case as to Juan Briseno. (rmn) (Entered: 04/23/2015) |
| 04/23/2015 | 1591 | | Writ of Habeas Corpus ad Testificandum Returned Executed for Darmaile Sutton on 4/20/2015 in case as to Juan Briseno (rmn) (Entered: 04/23/2015) |
| 05/01/2015 | 1603 | | TRANSCRIPT of Excerpt Trial Testimony of Galo Feliciano – Volume 1 as to Juan Briseno held on 02/09/2015, before Judge Philip P. Simon. Court Reporter Stacy L. Drohosky, Telephone number (219) 852–3462. Tape Number: Stenographically Reported. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. **IMPORTANT: Notice is hereby given that an official transcript of a proceeding has been filed by the court reporter in the above–captioned matter. The parties have seven (7) calendar days to file with the Court a Notice of Intent to Request Redaction of this transcript. Within 21 days of the filing of the transcript, a Redaction Request – Transcript shall be e–filed with the Court. Access to this request will be restricted to the Court and the attorneys of record in the case. If no such Notice and Redaction Request are** |

84

| | | | |
|---|---|---|---|
| | | | **filed, the transcript may be made remotely, electronically available to the public without redaction. Any party needing a copy of the transcript to review for redaction purposes may purchase a copy from the Court Reporter. Counsel are strongly urged to share this notice with all clients so that an informed decision about the inclusion of certain materials may be made. The responsibility for redacting these personal identifiers rests solely with counsel and the parties. The Clerk and Court Reporter will not review each transcript for compliance with this rule.**<br><br>Notice of Intent to Redact due 5/12/2015. Redaction Request due 5/22/2015. Redacted Transcript Deadline set for 6/1/2015. Release of Transcript Restriction set for 7/30/2015. (sld) (Entered: 05/01/2015) |
| 05/05/2015 | 1608 | | TRANSCRIPT of Excerpt Transcript of Trial Testimony of Galo Feliciano – Volume 2 as to Juan Briseno held on February 9, 2015, before Judge Philip P. Simon, Chief Judge. Court Reporter Tina M. Gallucci, United States District Court Reporter, Telephone number 260–423–3060. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.<br><br>**IMPORTANT: Notice is hereby given that an official transcript of a proceeding has been filed by the court reporter in the above–captioned matter. The parties have seven (7) calendar days to file with the Court a Notice of Intent to Request Redaction of this transcript. Within 21 days of the filing of the transcript, a Redaction Request – Transcript shall be e–filed with the Court. Access to this request will be restricted to the Court and the attorneys of record in the case. If no such Notice and Redaction Request are filed, the transcript may be made remotely, electronically available to the public without redaction. Any party needing a copy of the transcript to review for redaction purposes may purchase a copy from the Court Reporter. Counsel are strongly urged to share this notice with all clients so that an informed decision about the inclusion of certain materials may be made. The responsibility for redacting these personal identifiers rests solely with counsel and the parties. The Clerk and Court Reporter will not review each transcript for compliance with this rule.**<br><br>Notice of Intent to Redact due 5/14/2015. Redaction Request due 5/26/2015. Redacted Transcript Deadline set for 6/5/2015. Release of Transcript Restriction set for 8/3/2015. (tg) (Entered: 05/05/2015) |
| 05/13/2015 | 1623 | | Letter from Anthony Baldazo requesting docket sheet re all defendants (rmn) Modified on 5/14/2015 party is a dft in case (rmn). (Entered: 05/14/2015) |
| 05/14/2015 | 1626 | 107 | **DRAFT** PRESENTENCE INVESTIGATION REPORT as to **Juan Briseno**. NOTE: This document will only be accessible to the government attorney and the attorney for the applicable defendant. The judge in this case, other defendants and the general public will NOT be able to view this draft document. For parties entitled to a free look at this document, enter your CM/ECF login and password to confirm your right to view this document. Parties should submit objections to this report *directly to the probation officer listed at the end of this docket entry*. **IMPORTANT!!! Government attorneys and federal community defenders should send objections by SECURE E–MAIL to the probation officer;** |

| | | | |
|---|---|---|---|
| | | | **private attorneys and CJA panel attorneys MUST send objections by FAX ONLY! Government Objections to the Draft Presentence Investigation Report are due not later than 5/28/2015 pursuant to Rule 32 and General Order of the Court 2001–1. Defendant Objections to the Draft Presentence Investigation Report are due not later than 5/28/2015 pursuant to Rule 32 and General Order of the Court 2001–1.** (USPO Beier – david_beier@innp.uscourts.gov, fax 219–852–3629) (Entered: 05/14/2015) |
| 05/14/2015 | | | Terminated PAST deadlines ONLY in case. (nac) (Entered: 05/14/2015) |
| 05/27/2015 | 1639 | 104 | SENTENCING MEMORANDUM by United States of America as to Juan Briseno (Nozick – AUSA, David) (Entered: 05/27/2015) |
| 06/01/2015 | 1643 | | TRANSCRIPT of Excerpt Testimony of David Almaraz as to Juan Briseno held on 02/12/2015, before Judge Philip P. Simon. Court Reporter Stacy L. Drohosky, Telephone number (219) 852–3462. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.<br><br>**IMPORTANT: Notice is hereby given that an official transcript of a proceeding has been filed by the court reporter in the above–captioned matter. The parties have seven (7) calendar days to file with the Court a Notice of Intent to Request Redaction of this transcript. Within 21 days of the filing of the transcript, a Redaction Request – Transcript shall be e–filed with the Court. Access to this request will be restricted to the Court and the attorneys of record in the case. If no such Notice and Redaction Request are filed, the transcript may be made remotely, electronically available to the public without redaction. Any party needing a copy of the transcript to review for redaction purposes may purchase a copy from the Court Reporter. Counsel are strongly urged to share this notice with all clients so that an informed decision about the inclusion of certain materials may be made. The responsibility for redacting these personal identifiers rests solely with counsel and the parties. The Clerk and Court Reporter will not review each transcript for compliance with this rule.**<br><br>Notice of Intent to Redact due 6/9/2015. Redaction Request due 6/22/2015. Redacted Transcript Deadline set for 7/2/2015. Release of Transcript Restriction set for 8/31/2015. (sld) (Entered: 06/01/2015) |
| 06/05/2015 | 1650 | 100 | **FINAL** PRESENCE INVESTIGATION REPORT as to **Juan Briseno**. NOTE: This document will only be accessible to appropriate court staff, the government attorney and the attorney for the applicable defendant. Other defendants in the case and the general public will NOT be able to view this document. **For parties entitled to a free look at this document, enter your CM/ECF login and password to confirm your right to view this document.** (USPO Beier – david_beier@innp.uscourts.gov, fax 219–852–3629) (Entered: 06/05/2015) |
| 06/05/2015 | 1651 | 102 | **ADDENDUM** TO FINAL PRESENCE INVESTIGATION REPORT re 1650 as to **Juan Briseno**. NOTE: This document will only be accessible to appropriate court staff, the government attorney and the attorney for the applicable defendant. Other defendants in the case and the general public will NOT be able to |

86

| | | | |
|---|---|---|---|
| | | | view this document. **For parties entitled to a free look at this document, enter your CM/ECF login and password to confirm your right to view this document.** (USPO Beier – david_beier@innp.uscourts.gov, fax 219–852–3629) (Entered: 06/05/2015) |
| 06/15/2015 | 1663 | 94 | SENTENCING held on 6/15/2015 for dft Juan Briseno before Chief Judge Philip P. Simon. Govt present by David Nozick, AUSA and Bruce Hegyi, AUSA. U.S. Probation Officer David Beier is in attendance. The dft is present in person and by counsel Arlington Foley and John Maksimovich. No objections to PSR. One victim is sworn and makes a statement to the court. Court hears from defense and govt, no stmt by the dft. The dft is sentenced on counts 1,2,9,13,15,19,21,23 and 24 of the 4th Superseding Indictment: A term of LIFE on each of counts 9,13,15,19 and 21, to be served consecutive to one another. A term of LIFE on counts 1 and 2, which shall run concurrent with one another and concurrent with counts 9,13,15,19 and 21. Additionally the dft is sentenced to 120 months on Count 23 to be served concurrent with counts 1,2,9,13,15,19 and 21. On Count 24 the dft is sentenced to 120 months consecutive to the other counts. Court states reasons for the sentence imposed. No discretionary supervision conditions since dft has received a life sentence. If the dft is ever released the dft must report to the probation office in the district in which he is released within 48 hours and the probation officer shall at that time propose additional conditions that may be warranted based on the then existing state of affairs. Supervised Release of 5 years on counts 1,2,9,13,15,19,21 and 24 and a term of 3 years on count 23. These will be concurrent terms if the dft is ever released from custody. Special Assessment total of $900.00, due immediately. No fine imposed. Dft advised of rights to an appeal. Cnsl reminded of duty to perfect appeal, should client wish. Dft requests: (1) Confinement at USP Beaumont, Texas. (2) To have the order of non–contact with co–dfts lifted. (3) To be housed at MCC (Chicago, IL) until dft is moved to his permanent location. The Court will recommend placement at Beaumont, Texas in J&C. The USM will deal with the other two requests as they deem appropriate. Defendant REMANDED to custody of US Marshal.(Court Reporter Stacy Drohosky.) (nac) (Entered: 06/16/2015) |
| 06/16/2015 | 1664 | 90 | JUDGMENT as to Juan Briseno. Signed by Chief Judge Philip P. Simon on 6/16/2015. (nac) (Entered: 06/16/2015) |
| 06/22/2015 | 1676 | 88 | NOTICE OF APPEAL as to 1664 Judgment by Juan Briseno (Maksimovich, John) (Entered: 06/22/2015) |
| 06/22/2015 | 1677 | 97 | Docketing Statement re: 1676 Notice of Appeal – Final Judgment filed by Juan Briseno. (Maksimovich, John) (Entered: 06/22/2015) |

87

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

UNITED STATES OF AMERICA,

      **Plaintiff**

v.

JUAN BRISENO,

      **Defendant**               **CAUSE NO:   2:11-CR-77**

## NOTICE OF APPEAL

Notice is hereby given that, Juan Briseno, the above-named defendant, hereby appeals to

the United States Court of Appeals for the Seventh Circuit from the Judgment In A Criminal

Case and Sentence imposed thereon and entered of record on the District Court's docket on the

16th day of June, 2015.

**Respectfully submitted:**

/s/ *Arlington Foley*

Arlington Foley /#6905-45
Attorney For Defendant
1942 North Main Street
Crown Point, IN 46307
PH: 219.661.1200
FX: 219.661.1205

/s/ *John Maksimovich*

John Maksimovich /#9950-45
Attorney For Defendant
1946 North Main Street
Crown Point, IN 46307
PH: 219.663.1900
FX: 219.663.1908

88

4154

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

UNITED STATES OF AMERICA,

        **Plaintiff**

v.

JUAN BRISENO,

        **Defendant**                    **CAUSE NO:   2:11-CR-77**

## CERTIFICATE OF SERVICE

I hereby certify that on June 22, 2015, I electronically filed:

*Notice of Appeal*

with the Clerk of the Court using the CM/ECF system, which sent notification of such filing to the following:

| | |
|---|---|
| David J. Nozick | Bruce Hegyi |
| Assistant U.S. Attorney | Assistant U.S. Attorney |

and I hereby certify that I have mailed by United States Postal Service, the document to the following non-CM/ECF participants:

        N/A

By:   /s/ *John Maksimovich*

John Maksimovich /#9950-45
Attorney For Defendant
1946 North Main Street
Crown Point, IN 46307
PH: 219.663.1900
FX: 219.663.1908

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>Plaintiff,<br><br>vs.<br><br>JUAN BRISENO<br><br>Defendant. | CASE NUMBER: 2:11CR77-001<br><br>USM Number: 11190-027<br><br><br>ARLINGTON J FOLEY AND<br>JOHN MAKSIMOVICH<br>DEFENDANT'S ATTORNEYS |

JUDGMENT IN A CRIMINAL CASE

THE DEFENDANT was found guilty on counts 1, 2, 9, 13, 15, 19, 21, 23 and 24 after a plea of not guilty. On 2/27/2015 the jury found the defendant guilty of those counts. On 3/6/2015, after the conclusion of the penalty phase, the jury found that the defendant should receive a term of life in prison rather than a sentence of death on counts 9, 13, 15, 19 and 21.

ACCORDINGLY, the court has adjudged that the defendant is guilty of the following offenses:

| Title, Section & Nature of Offense | Date Offense Ended | Count Number(s) |
|---|---|---|
| 18:1962(d) CONSPIRACY TO PARTICIPATE IN RACKETEERING ACTIVITY AND FORFEITURE ALLEGATION | June 2011 | 1ssss |
| 21:846 CONSPIRACY TO POSSESS WITH INTENT TO DISTRIBUTE COCAINE (5 KILO OR MORE) AND MARIJUANA (100 KILOS OR MORE) AND FORFEITURE ALLEGATIONS | June 2011 | 2ssss |
| 18:1959(a)(1) MURDER IN AID OF RACKETEERING ACTIVITY, 18:2 AIDING AND ABETTING AND 18:3591 AND 3592 SPECIAL FINDINGS | June 2011 | 9ssss |
| 18:1959(a)(1) MURDER IN AID OF RACKETEERING ACTIVITY, 18:2 AIDING AND ABETTING AND 18:3591 AND 3592 SPECIAL FINDINGS | June 2011 | 13ssss |
| 18:1959(a)(1) MURDER IN AID OF RACKETEERING ACTIVITY, 18:2 AIDING AND ABETTING AND 18:3591 AND 3592 SPECIAL FINDINGS | June 2011 | 15ssss |

Defendant: JUAN BRISENO
Case Number: 2:11CR77-001

| | | |
|---|---|---|
| 18:1959(a)(1) MURDER IN AID OF RACKETEERING ACTIVITY, 18:2 AIDING AND ABETTING AND 18:3591 AND 3592 SPECIAL FINDINGS | June 2011 | 19ssss |
| 18:1959(a)(1) MURDER IN AID OF RACKETEERING ACTIVITY, 18:2 AIDING AND ABETTING AND 18:3591 AND 3592 SPECIAL FINDINGS | June 2011 | 21ssss |
| 18:1959(a)(5) ATTEMPTED MURDER IN AID OF RACKETEERING ACTIVITY AND 18:2 AIDING AND ABETTING | June 2011 | 23ssss |
| 18:924(c) USE OF FIREARM DURING AND IN RELATION TO A CRIME OF VIOLENCE AND 18:2 AIDING AND ABETTING | June 2011 | 24ssss |

The defendant is sentenced as provided in pages 2 through 4 of this judgment.  The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

June 15, 2015
_____
Date of Imposition of Judgment

s/ Philip P. Simon
_____
Signature of Judge

Philip P. Simon, Chief United States District Judge
_____
Name and Title of Judge

June 16, 2015
_____
Date

Defendant: JUAN BRISENO
Case Number: 2:11CR77-001

Page 3 of 4

## IMPRISONMENT

The defendant is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a term of **LIFE. This term consists of the following:**
**A term of LIFE on each of counts 9, 13, 15, 19 and 21 to be served consecutive to one another. A term of LIFE on counts 1 and 2, which shall run concurrent with one another and concurrent with counts 9, 13, 15, 19 and 21. Additionally the defendant is sentenced to 120 months on Count 23 to be served concurrent with counts 1, 2, 9, 13, 15, 19 and 21. On count 24 the defendant is sentenced to 120 months consecutive to the other counts.**

The Court makes the following recommendations to the Bureau of Prisons:

That the defendant be incarcerated in the federal facility located at Beaumont, Texas.

The defendant is REMANDED to the custody of the United States Marshal.

## RETURN

I have executed this judgment as follows:

Defendant delivered _____ to _____ at _____,
with a certified copy of this judgment.

_____
UNITED STATES MARSHAL

By: _____
DEPUTY UNITED STATES MARSHAL

3

92

4158

Case: 15-2347 Document: 35 Filed: 07/27/2016 Pages: 4186
Case 2:11-cr-00077-PPS-APR Document 1682 Filed 06/24/15 Page 93 of 108

Case 2:11-cr-00077-PPS-APR Document 1664 Filed 06/16/15 Page 4 of 4

Defendant: JUAN BRISENO
Case Number: 2:11CR77-001

## SUPERVISED RELEASE

Upon release from imprisonment, the defendant shall be on supervised release for a term of **5 years. This term consists of concurrent terms of 5 years of supervised release on counts 1, 2, 9, 13, 15, 19, 21 and 24 and a term of 3 years on count 23. These will all be concurrent terms if the defendant is ever released from custody.**

The defendant shall not commit another federal, state or local crime.

The defendant shall not unlawfully use, possess, or distribute a controlled substance.

The defendant shall submit to one drug test within 15 days of release from imprisonment and two (2) periodic drug tests thereafter, as determined by the Court.

The defendant shall cooperate in the collection of DNA as directed by the probation officer.

NOTE: Since the defendant has been sentenced to a term of life, no discretionary conditions have been imposed by the court. If the defendant is ever released, the defendant must report to the probation office in the district in which he is released within 48 hours and the probation officer shall at that time propose additional conditions that may be warranted based on the then existing state of affairs.

## CRIMINAL MONETARY PENALTIES

The defendant shall pay the following total criminal monetary penalties in accordance with the schedule of payments set forth in this judgment.

| Total Assessment | Total Fine | Total Restitution |
|---|---|---|
| $900.00 | NONE | NONE |

The defendant shall make the special assessment payment payable to Clerk, U.S. District Court, 5400 Federal Plaza, Suite 2300, Hammond, IN 46320. The special assessment payment shall be due immediately.

## FINE

No fine imposed.

## RESTITUTION

No restitution imposed.

4

```
MIME-Version:1.0
From:CMECFinnd@innd.uscourts.gov
To:CMECFinnd@localhost.localdomain
Bcc:
--Case Participants: Pablo DeCastro (pdecastro@attorneydecastro.com,
ysierra@rascia-decastro.com), Kurt R Earnst (kre@braje-nelson.com), Matthew N Fech
(mnf@fech-law.com), Arlington J Foley (arlingtonfoley@att.net), Jack Friedlander
(jack@jackfriedlander.com, office@jackfriedlander.com), Bruce R Hegyi - AUSA
(bruce.hegyi@usdoj.gov), Roxanne Mendez Johnson (attorneyrmj@me.com), Scott L King
(dwilliams@scottkinggroup.com, sking@scottkinggroup.com), Visvaldis P Kupsis
(vpkupsis@hotmail.com), Dean R Lanter - AUSA (dean.lanter@usdoj.gov,
janet.eisenmann@usdoj.gov, usainn.ecfcivil@usdoj.gov), John Maksimovich
(criminallaw@johnmaksimovich.com), John E Martin - FCD (john_martin@fd.org), Sheldon B
Nagelberg (sbnagelberglaw@att.net), David J Nozick - AUSA (david.nozick@usdoj.gov,
janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov,
usainn.ecfcivil@usdoj.gov), Mark A Psimos (psimoslaw@airbaud.net), Robert L Rascia
(rrascia@rascia-himel.com, ysierra@rascia-himel.com), Stephen Edward Scheele
(pkd@gk4law.com, ses@gk4law.com), P Jeffrey Schlesinger (pjeffslaw@aol.com), Adam Tavitas
(adtavitas@aol.com, b.lynneadams@yahoo.com), John T Theis (theislaw@aol.com), James N
Thiros (jim@thiros.com, liz@thiros.com, lynn@thiros.com), Bryan M Truitt
(bryan@tblawyers.com, sherrie@tblawyers.com), David E Vandercoy
(david.vandercoy@valpo.edu), Thomas W Vanes (b.lynneadams@yahoo.com,
tom.vanes@sbcglobal.net), Ihor Alexander Woloshansky (ihorlawyer@hotmail.com), Richard C
Wolter (b.lynneadams@yahoo.com), R Brian Woodward (carolb@wbbklaw.com,
rbwoodward@wbbklaw.com), Magistrate Judge Andrew P Rodovich
(rodovich_chambers@innd.uscourts.gov, ruth_nagy@innd.uscourts.gov), Chief Judge Philip P
Simon (denise_woodside@innd.uscourts.gov, jacob_hamann@innd.uscourts.gov,
lauren_schwartz@innd.uscourts.gov, mira_serrill-robins@innd.uscourts.gov,
noel_collins@innd.uscourts.gov, philip_simon@innd.uscourts.gov)
--Non Case Participants: Matthew D Soliday (office@matthewsolidaylaw.com),
Probation/Pretrial Services (innpml_cmecf@innd.uscourts.gov), U S Marshal
(inn.docket-fw@usdoj.gov, inn.docket-sb@usdoj.gov, usms.27@usdoj.gov)
--No Notice Sent:

Message-Id:2792856@innd.uscourts.gov
Subject:Activity in Case 2:11-cr-00077-PPS-APR United States of America v. Briseno et al
Sentencing
Content-Type: text/html
```

### U.S. District Court Northern District of Indiana [LIVE]

### USDC Northern Indiana

### Notice of Electronic Filing

The following transaction was entered on 6/16/2015 at 4:29 PM EST and filed on 6/15/2015

| | |
|---|---|
| **Case Name:** | United States of America v. Briseno et al |
| **Case Number:** | 2:11–cr–00077–PPS–APR |
| **Filer:** | |
| **Document Number:** | 1663(No document attached) |

**Docket Text:**

**SENTENCING held on 6/15/2015 for dft Juan Briseno before Chief Judge Philip P. Simon. Govt present by David Nozick, AUSA and Bruce Hegyi, AUSA. U.S. Probation Officer David Beier is in attendance. The dft is present in person and by counsel Arlington Foley and John Maksimovich. No objections to PSR. One victim is sworn and makes a statement to the court. Court hears from defense and govt, no stmt by the dft. The dft is sentenced on counts**

**1,2,9,13,15,19,21,23 and 24 of the 4th Superseding Indictment: A term of LIFE on each of counts 9,13,15,19 and 21, to be served consecutive to one another. A term of LIFE on counts 1 and 2, which shall run concurrent with one another and concurrent with counts 9,13,15,19 and 21. Additionally the dft is sentenced to 120 months on Count 23 to be served concurrent with counts 1,2,9,13,15,19 and 21. On Count 24 the dft is sentenced to 120 months consecutive to the other counts. Court states reasons for the sentence imposed. No discretionary supervision conditions since dft has received a life sentence. If the dft is ever released the dft must report to the probation office in the district in which he is released within 48 hours and the probation officer shall at that time propose additional conditions that may be warranted based on the then existing state of affairs. Supervised Release of 5 years on counts 1,2,9,13,15,19,21 and 24 and a term of 3 years on count 23. These will be concurrent terms if the dft is ever released from custody. Special Assessment total of $900.00, due immediately. No fine imposed. Dft advised of rights to an appeal. Cnsl reminded of duty to perfect appeal, should client wish. Dft requests: (1) Confinement at USP Beaumont, Texas. (2) To have the order of non–contact with co–dfts lifted. (3) To be housed at MCC (Chicago, IL) until dft is moved to his permanent location. The Court will recommend placement at Beaumont, Texas in J&C. The USM will deal with the other two requests as they deem appropriate. Defendant REMANDED to custody of US Marshal.(Court Reporter Stacy Drohosky.) (nac)**

**2:11–cr–00077–PPS–APR–1 Notice has been electronically mailed to:**

David E Vandercoy     david.vandercoy@valpo.edu

Arlington J Foley     arlingtonfoley@att.net

Mark A Psimos     psimoslaw@airbaud.net

Scott L King     sking@scottkinggroup.com, dwilliams@scottkinggroup.com

James N Thiros     jim@thiros.com, liz@thiros.com, lynn@thiros.com

Thomas W Vanes     tom.vanes@sbcglobal.net, b.lynneadams@yahoo.com

Ihor Alexander Woloshansky     ihorlawyer@hotmail.com

R Brian Woodward     rbwoodward@wbbklaw.com, carolb@wbbklaw.com

John Maksimovich     criminallaw@johnmaksimovich.com

Visvaldis P Kupsis     vpkupsis@hotmail.com

Sheldon B Nagelberg     sbnagelberglaw@att.net

John E Martin – FCD     john_martin@fd.org

Adam Tavitas     Adtavitas@aol.com, b.lynneadams@yahoo.com

Jack Friedlander     jack@jackfriedlander.com, office@jackfriedlander.com

Stephen Edward Scheele     ses@gk4law.com, pkd@gk4law.com

Kurt R Earnst     kre@braje–nelson.com

Bryan M Truitt     bryan@tblawyers.com, sherrie@tblawyers.com

John T Theis     theislaw@aol.com

Robert L Rascia     rrascia@rascia–himel.com, ysierra@rascia–himel.com

P Jeffrey Schlesinger     pjeffslaw@aol.com

Matthew N Fech     mnf@fech–law.com

Pablo DeCastro     pdecastro@attorneydecastro.com, ysierra@rascia–decastro.com

Dean R Lanter – AUSA     dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA     David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Roxanne Mendez Johnson     attorneyrmj@me.com

Bruce R Hegyi – AUSA     bruce.hegyi@usdoj.gov

**2:11–cr–00077–PPS–APR–1 Notice has been delivered by U.S. Mail or other means to:**

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

UNITED STATES OF AMERICA,

        **Plaintiff**

v.

JUAN BRISENO,

        **Defendant**               CAUSE NO:   2:11-CR-77

<u>CIRCUIT RULE 3 (C)(1) DOCKETING STATEMENT</u>

Comes now the Defendant, Juan Briseno, by counsel John Maksimovich and Arlington Foley, and represents the following to the Court:

1.      On February 27, 2015, Juan Briseno was convicted by jury of having committed the following federal criminal offenses: Count 1, Conspiracy to Participate in Racketeering Activity, and Forfeiture Allegation in violation of *Title 18, United States Code, §§1962(d)*, Count 2, Conspiracy to Possess With Intent to Distribute 5 Kilograms or more of Cocaine and 100 Kilograms or more of Marijuana and Forfeiture Allegation in violation of *Title 21, United States Code § 846,* Counts 9, 13,15, 19, 21, Murder in Aid of Racketeering Activity in violation of *Title 18, United States Code §§1959(a)(1),* and *2* and Special Findings pursuant to *Title 18, United States Code §§3591 and 3592,* Count 23 Attempted Murder in Aid of Racketeering Activity in violation of *Title 18, United States Code §§1959(a)(5) and 2*, and Count 24, Use of a Firearm During and in Relation to a Crime of Violence in violation of *Title 18, United States Code §§924( c) and 2.*

2.      On June 16, 2015, Briseno was committed to the custody of the United States Bureau of Prisons to be imprisoned for a term of life consisting of a term of LIFE on each of Counts 9, 13, 15, 19, and 21 to be served consecutive to one another. A term of LIFE on Counts 1 and 2, which shall run concurrent with one another and concurrent with Counts 9, 13, 15, 19

-1-

and 21. Additionally, Briseno is sentenced to 120 months on Count 23 to be serve concurrent with Counts 1, 2, 9, 13, 15, 19, and 21 and on Count 24 Briseno is sentenced to 120 months consecutive to the other counts.

3.      Briseno appeals from a Judgement in a Criminal Case and Sentence imposed thereon and entered of record on the District Court's docket on June 16, 2015.

4.      On June 22, 2015, Briseno filed his Notice of Appeal with the Clerk of the United States District Court for the Northern District of Indiana, Hammond Division.

5.      The District Court's jurisdiction is based on *Title 18, United States Code §3231* giving District Courts of the United States original jurisdiction, exclusive of the courts of the States, of all offenses against the laws of the United States.

6.      The Seventh Circuit Court of Appeals jurisdiction is based on *Title 28, United States Code §1291*, which gives Appellate Courts jurisdiction of appeals from final decisions of District Courts and *Title 18, United States Code §3742(a)*, which gives Courts of Appeals jurisdiction in appeals from sentences for offenses occurring after November 1, 1987.

7.      Defendant is currently incarcerated by the Federal Bureau of Prisons in the Jerome Combs Detention Center, 3050 Justice Way, Kankakee, Illinois 60901.

**WHEREFORE**, Defendant, Juan Briseno, respectfully requests that this Circuit Rule 3(C)(1) Docketing Statement be properly filed with the Court and entered of record along with Defendant's Notice of Appeal filed June 22, 2015.

**Respectfully submitted:**

/s/ *Arlington Foley*                                    /s/ *John Maksimovich*

Arlington Foley /#6905-45                          John Maksimovich /#9950-45
Attorney For Defendant                            Attorney For Defendant
1942 North Main Street                            1946 North Main Street
Crown Point, IN 46307                             Crown Point, IN 46307
PH: 219.661.1200                                  PH: 219.663.1900
FX: 219.661.1205                                  FX: 219.663.1908

-2-

98

4164

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
### HAMMOND DIVISION

UNITED STATES OF AMERICA,

      **Plaintiff**

v.

JUAN BRISENO,

      **Defendant**                 **CAUSE NO:  2:11-CR-77**

## CERTIFICATE OF SERVICE

I hereby certify that on June 22, 2015, I electronically filed:

### *CIRCUIT RULE 3 (C)(1) DOCKETING STATEMENT*

with the Clerk of the Court using the CM/ECF system, which sent notification of such filing to the following:

| | |
|---|---|
| David J. Nozick | Bruce Hegyi |
| Assistant U.S. Attorney | Assistant U. S. Attorney |

and I hereby certify that I have mailed by United States Postal Service, the document to the following non-CM/ECF participants:

      N/A

By:    /s/ *John Maksimovich*

      John Maksimovich /#9950-45
      Attorney For Defendant
      1946 North Main Street
      Crown Point, IN 46307
      PH: 219.663.1900
      FX: 219.663.1908

-3-

```
MIME-Version:1.0
From:CMECFinnd@innd.uscourts.gov
To:CMECFinnd@localhost.localdomain
Bcc:
--Case Participants: David J Nozick - AUSA (david.nozick@usdoj.gov,
janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov,
usainn.ecfcivil@usdoj.gov), Dean R Lanter - AUSA (dean.lanter@usdoj.gov,
janet.eisenmann@usdoj.gov, usainn.ecfcivil@usdoj.gov), Arlington J Foley
(arlingtonfoley@att.net), Bruce R Hegyi - AUSA (bruce.hegyi@usdoj.gov), John Maksimovich
(criminallaw@johnmaksimovich.com), Chief Judge Philip P Simon
(denise_woodside@innd.uscourts.gov, jacob_hamann@innd.uscourts.gov,
lauren_schwartz@innd.uscourts.gov, mira_serrill-robins@innd.uscourts.gov,
noel_collins@innd.uscourts.gov, philip_simon@innd.uscourts.gov)
--Non Case Participants: Probation/Pretrial Services (innpml_cmecf@innd.uscourts.gov)
--No Notice Sent:

Message-Id:2786012@innd.uscourts.gov
Subject:Activity in Case 2:11-cr-00077-PPS-APR United States of America v. Briseno et al
PSR - Final (with Padlock)
Content-Type: text/html
```

## U.S. District Court Northern District of Indiana [LIVE]

### USDC Northern Indiana

### Notice of Electronic Filing

The following transaction was entered on 6/5/2015 at 3:38 PM EST and filed on 6/5/2015

| | |
|---|---|
| **Case Name:** | United States of America v. Briseno et al |
| **Case Number:** | 2:11-cr-00077-PPS-APR |
| **Filer:** | |
| **Document Number:** | 1650 |

**Docket Text:**
 **FINAL** PRESENTENCE INVESTIGATION REPORT as to **Juan Briseno**. NOTE: This document will only be accessible to appropriate court staff, the government attorney and the attorney for the applicable defendant. Other defendants in the case and the general public will NOT be able to view this document. **For parties entitled to a free look at this document, enter your CM/ECF login and password to confirm your right to view this document.** (USPO Beier – david_beier@innp.uscourts.gov, fax 219–852–3629)

**2:11–cr–00077–PPS–APR–1 Notice has been electronically mailed to:**

Arlington J Foley    arlingtonfoley@att.net

John Maksimovich    criminallaw@johnmaksimovich.com

Dean R Lanter – AUSA    dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA    David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Bruce R Hegyi – AUSA    bruce.hegyi@usdoj.gov

**2:11–cr–00077–PPS–APR–1 Notice has been delivered by U.S. Mail or other means to:**

The following document(s) are associated with this transaction:

Case: 15-2347    Document 35    Filed: 07/27/2016    Pages: 4186    108
Case 2:11-cr-00077-PPS-APR   Document 1682   Filed 06/24/15   Page 102 of 108

Case 2:11-cr-77    NEF for Docket Entry 1651    Filed 06/05/2015    Page 1 of 2

```
MIME-Version:1.0
From:CMECFinnd@innd.uscourts.gov
To:CMECFinnd@localhost.localdomain
Bcc:
--Case Participants: Arlington J Foley (arlingtonfoley@att.net), Bruce R Hegyi - AUSA
(bruce.hegyi@usdoj.gov), Dean R Lanter - AUSA (dean.lanter@usdoj.gov,
janet.eisenmann@usdoj.gov, usainn.ecfcivil@usdoj.gov), John Maksimovich
(criminallaw@johnmaksimovich.com), David J Nozick - AUSA (david.nozick@usdoj.gov,
janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov,
usainn.ecfcivil@usdoj.gov), Chief Judge Philip P Simon (denise_woodside@innd.uscourts.gov,
jacob_hamann@innd.uscourts.gov, lauren_schwartz@innd.uscourts.gov,
mira_serrill-robins@innd.uscourts.gov, noel_collins@innd.uscourts.gov,
philip_simon@innd.uscourts.gov)
--Non Case Participants: Probation/Pretrial Services (innpml_cmecf@innd.uscourts.gov)
--No Notice Sent:

Message-Id:2786018@innd.uscourts.gov
Subject:Activity in Case 2:11-cr-00077-PPS-APR United States of America v. Briseno et al
PSR - Addendum to Final (with Padlock)
Content-Type: text/html
```

## U.S. District Court Northern District of Indiana [LIVE]

## USDC Northern Indiana

## Notice of Electronic Filing

The following transaction was entered on 6/5/2015 at 3:40 PM EST and filed on 6/5/2015

| | |
|---|---|
| **Case Name:** | United States of America v. Briseno et al |
| **Case Number:** | 2:11–cr–00077–PPS–APR |
| **Filer:** | |
| **Document Number:** | 1651 |

**Docket Text:**
 **ADDENDUM** TO FINAL PRESENTENCE INVESTIGATION REPORT re [1650] as to **Juan Briseno**. NOTE: This document will only be accessible to appropriate court staff, the government attorney and the attorney for the applicable defendant. Other defendants in the case and the general public will NOT be able to view this document. **For parties entitled to a free look at this document, enter your CM/ECF login and password to confirm your right to view this document.** (USPO Beier – david_beier@innp.uscourts.gov, fax 219–852–3629)

**2:11–cr–00077–PPS–APR–1 Notice has been electronically mailed to:**

Arlington J Foley     arlingtonfoley@att.net

John Maksimovich     criminallaw@johnmaksimovich.com

Dean R Lanter – AUSA     dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA     David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Bruce R Hegyi – AUSA     bruce.hegyi@usdoj.gov

**2:11–cr–00077–PPS–APR–1 Notice has been delivered by U.S. Mail or other means to:**

The following document(s) are associated with this transaction:

Case: 15-2347    Document: 35            Filed: 07/27/2016    Pages: 4186
Case 2:11-cr-00077-PPS-APR   Document 1682   Filed 06/24/15   Page 104 of 108

Case 2:11-cr-00077-PPS-APR   Document 1639   Filed 05/27/15   Page 1 of 3

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Cause No.   2:11 CR 77 PPS |
| | ) | |
| JUAN BRISENO | ) | |

## GOVERNMENT'S SENTENCING MEMORANDUM

Comes now the United States of America, by counsel, David Capp, United States Attorney for the Northern District of Indiana, and Assistant United States Attorney David J. Nozick, and files the following sentencing memorandum:

The defendant was convicted at trial of Count 1 (Conspiracy to Participate in Racketeering Activity), Count 2 (Conspiracy to possess with intent to distribute 100 kilograms or more of marijuana and 5 kilograms or more of cocaine), Counts 9, 13, 15, 19 and 21 (Murder in Aid of Racketeering), Count 23 (Attempted Murder in Aid of Racketeering) and Count 24 (Use of a Firearm During and in Relation to a Federal Crime of Violence). The Presentence Investigation Report (hereinafter "PSR"), determines that the total offense level is 43.   Based on a criminal history category of III, the guideline imprisonment range is life. In addition, Counts 9, 13, 15, 19 and 21 carry a mandatory term of life imprisonment.   Count 2 carries a ten year minimum mandatory sentence of imprisonment.   Count 24, which charges a violation of 18 U.S.C. § 924(c), carries a minimum mandatory term of ten years imprisonment, which must be served consecutive to any other sentence.

1

By statute, the lowest prison sentence that this court can give the defendant is plus ten consecutive years in prison.   However, the court does have the option to give the defendant consecutive terms of imprisonment for his offenses.   Although it may not make any tangible difference in the defendant's ultimate sentence, the government will ask at sentencing that this court sentence the defendant to a term of five consecutive life sentences, to reflect the fact that the defendant killed five different people.   This term of five consecutive life sentences would be followed by a consecutive term of ten years in prison, for the violation of 18 U.S.C. § 924(c).

In conclusion, the government respectfully requests that the Court sentence the defendant to five consecutive life sentence terms, followed by ten additional years imprisonment.

                                      Respectfully submitted,

                                      DAVID CAPP
                                      UNITED STATES ATTORNEY

                         By:    /s/ David J. Nozick
                                David J. Nozick
                                Assistant United States Attorney
                                5400 Federal Plaza, Suite 1500
                                Hammond, Indiana 46320
                                (219) 937-5500

                                      2

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | NO. 2:11 CR 77 PPS |
| | ) | |
| JUAN BRISENO | ) | |

CERTIFICATE OF SERVICE

The undersigned hereby certifies that the Government's Sentencing Memorandum was

electronically filed with the Clerk of the Court using the CM/ECF system which sent notification

of said filing to the following individuals:

ARLINGTON J. FOLEY
JOHN MAKSIMOVICH
Attorneys for defendant Juan Briseno


By:     /s/ Janet L. Eisenmann
        Janet L. Eisenmann
        U.S. Attorney's Office
        5400 Federal Plaza, Suite 1500
        Hammond, Indiana 46320
        (219) 937-5500


3

106

4172

```
MIME-Version:1.0
From:CMECFinnd@innd.uscourts.gov
To:CMECFinnd@localhost.localdomain
Bcc:
--Case Participants: David J Nozick - AUSA (david.nozick@usdoj.gov,
janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov,
usainn.ecfcivil@usdoj.gov), Dean R Lanter - AUSA (dean.lanter@usdoj.gov,
janet.eisenmann@usdoj.gov, usainn.ecfcivil@usdoj.gov), Arlington J Foley
(arlingtonfoley@att.net), Bruce R Hegyi - AUSA (bruce.hegyi@usdoj.gov), John Maksimovich
(criminallaw@johnmaksimovich.com)
--Non Case Participants: Probation/Pretrial Services (innpml_cmecf@innd.uscourts.gov)
--No Notice Sent:

Message-Id:2771059@innd.uscourts.gov
Subject:Activity in Case 2:11-cr-00077-PPS-APR United States of America v. Briseno et al
PSR - Draft (with Padlock)
Content-Type: text/html
```

### U.S. District Court Northern District of Indiana [LIVE]

### USDC Northern Indiana

## Notice of Electronic Filing

The following transaction was entered on 5/14/2015 at 4:45 PM EST and filed on 5/14/2015

**Case Name:**      United States of America v. Briseno et al

**Case Number:**      2:11–cr–00077–PPS–APR

**Filer:**

**Document Number:** 1626

**Docket Text:**
 **DRAFT** PRESENTENCE INVESTIGATION REPORT as to **Juan Briseno**. NOTE: This document will only be accessible to the government attorney and the attorney for the applicable defendant. The judge in this case, other defendants and the general public will NOT be able to view this draft document. For parties entitled to a free look at this document, enter your CM/ECF login and password to confirm your right to view this document. Parties should submit objections to this report *directly to the probation officer listed at the end of this docket entry*. **IMPORTANT!!! Government attorneys and federal community defenders should send objections by SECURE E–MAIL to the probation officer; private attorneys and CJA panel attorneys MUST send objections by FAX ONLY! Government Objections to the Draft Presentence Investigation Report are due not later than 5/28/2015 pursuant to Rule 32 and General Order of the Court 2001–1. Defendant Objections to the Draft Presentence Investigation Report are due not later than 5/28/2015 pursuant to Rule 32 and General Order of the Court 2001–1.** (USPO Beier – david_beier@innp.uscourts.gov, fax 219–852–3629)

**2:11–cr–00077–PPS–APR–1 Notice has been electronically mailed to:**

Arlington J Foley      arlingtonfoley@att.net

John Maksimovich      criminallaw@johnmaksimovich.com

Dean R Lanter – AUSA      dean.lanter@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov

David J Nozick – AUSA    David.Nozick@usdoj.gov, USAINN.ECFCivil@usdoj.gov, janet.eisenmann@usdoj.gov, sally.haviar@usdoj.gov, susan.devries@usdoj.gov

Bruce R Hegyi – AUSA    bruce.hegyi@usdoj.gov

**2:11–cr–00077–PPS–APR–1 Notice has been delivered by U.S. Mail or other means to:**

The following document(s) are associated with this transaction:

108

Case: 15-2347     Document: 35           Filed: 07/27/2016     Pages: 4186
Case 2:11-cr-00077-PPS-APR   Document 1683   Filed 06/24/15   Page 1 of 2

Case: 15-2347     Document: 1-2         Filed: 06/24/2015     Pages: 2

# UNITED STATES COURT OF APPEALS FOR THE SEVENTH CIRCUIT



Everett McKinley Dirksen United States Courthouse
Room 2722 - 219 S. Dearborn Street
Chicago, Illinois 60604

Office of the Clerk
Phone: (312) 435-5850
www.ca7.uscourts.gov

## NOTICE OF CASE OPENING

June 24, 2015

| No. 15-2347 | UNITED STATES OF AMERICA, Plaintiff - Appellee  v.  JUAN BRISENO, Defendant - Appellant |
|---|---|

| **Originating Case Information:** |
|---|
| District Court No. 2:11-cr-00077-PPS-APR-1<br>Northern District of Indiana, Hammond Division<br>District Judge Philip P. Simon<br>Court Reporter Stacy L. Drohosky<br>Clerk/Agency Rep Robert N. Trgovich<br><br>Case filed: 06/24/2015<br>Case type: cr/D<br>Fee status: In Forma Pauperis<br>Date of Judgment: 06/16/2015<br>Date NOA filed: 06/22/2015 |

The above-captioned appeal has been docketed in the United States Court of Appeals for the Seventh Circuit.

**Deadlines:**

| Appeal No. | Filer | Document | Due Date |
|---|---|---|---|
| 15-2347 | Juan Briseno | Transcript information sheet | 07/08/2015 |

15-2347        Juan Briseno                    Appellant's brief            08/03/2015

**NOTE:** This notice is issued to counsel of record, in furtherance of the revised *Circuit Rule 3(d)*, to provide necessary information regarding this appeal. Please verify this notice for accuracy. Counsel are encouraged to provide a fax and/or e-mail address to the court. If any corrections are necessary, please indicate those corrections on this notice and return it to the Clerk's Office within ten (10) days.

**THIS NOTICE SHALL NOT ACT AS A SUBSTITUTE FOR MOTIONS FOR NON-INVOLVEMENT / SUBSTITUTION OF COUNSEL. COUNSEL ARE STILL REQUIRED TO FILE THE APPROPRIATE MOTIONS.**

Important Scheduling Notice!

Notices of hearing for particular appeals are mailed shortly before the date of oral argument. Criminal appeals are scheduled shortly after the filing of the appellant's main brief; civil appeals after the filing of the appellee's brief. If you foresee that you will be unavailable during a period in which your particular appeal might be scheduled, please write the clerk advising him of the time period and the reason for such unavailability. Session data is located at http://www.ca7.uscourts.gov/cal/calendar.pdf. Once an appeal is formally scheduled for a certain date, it is very difficult to have the setting changed. See Circuit Rule 34(e).

form name: **c7_Docket_Notice**(form ID: **108**)

# UNITED STATES COURT OF APPEALS FOR THE SEVENTH CIRCUIT



| Everett McKinley Dirksen United States Courthouse<br>Room 2722 - 219 S. Dearborn Street<br>Chicago, Illinois 60604 | | Office of the Clerk<br>Phone: (312) 435-5850<br>www.ca7.uscourts.gov |

### NOTICE OF DOCKETING - Short Form

June 24, 2015

**To:**    Robert N. Trgovich
        Clerk of Court

The below captioned appeal has been docketed in the United States Court of Appeals for the Seventh Circuit:

> Appellate Case No: 15-2347
>
> Caption:
> UNITED STATES OF AMERICA,
> Plaintiff - Appellee
>
> v.
>
> JUAN BRISENO,
> Defendant - Appellant
>
> ---
>
> District Court No: 2:11-cr-00077-PPS-APR-1
> District Judge Philip P. Simon
> Court Reporter Stacy L. Drohosky
> Clerk/Agency Rep Robert N. Trgovich
>
> Date NOA filed in District Court: 06/22/2015

If you have any questions regarding this appeal, please call this office.

form name: **c7_Docket_Notice_short_form**(form ID: **188**)

PART I – Must be completed by party or party's attorney pursuant to Rule 10(b) of the Federal Rules of Appellate Procedure and Rule 11(a) of the Circuit Rules.  The appellant must file this form with the court reporter within 14 days of filing the notice of appeal, whether transcript is being ordered or not. (FRAP 10(b)(1)) Satisfactory arrangements with the court reporter for payment of the costs of the transcripts must also be made at that time. (FRAP 10(b)(4)) (Note: Appellees as well as appellants are expected to use this form when ordering transcripts.)

| Short Title | District | D.C. Docket No. |
|---|---|---|
| United States of America v. Juan Briseno | Northern District of Indiana Hammond Divisioin | 2:11-CR-77 |
| | District Judge | Court Reporter |
| | Honorable Judge Philip P. Simon | Stacy L. Drohosky |

[✓] I am ordering transcript.

[ ] I am not ordering transcript because:

[ ] The transcript has been prepared.

Sign below and return original and one copy to court reporter. Distribute remaining copies to the Clerk of the District Court and opposing party, retaining one copy for yourself.

Indicate proceedings for which transcript is required.  Dates must be provided:

Date(s)

[ ] Pretrial proceedings.  Specify: _____ _____

[✓] Voir Dire                                          01/12/2015- 02/03/2015

Trial or Hearing.  Specify:  Jury Trial _____        01/12/2015 - 03/06/2015

[✓] Opening statement                                  02/03/2015

[✓] Instruction conference                             02/25/2015; 03/06/2015

[✓] Closing statements                                 02/26/2015; 03/06/2015

[✓] Court instructions                                 02/27/2015; 03/06/2015

[ ] Post-trial proceedings.  Specify: _____      _____

[✓] Sentencing                                         06/15/2015

[ ] Other proceedings.  Specify: _____      _____

Method of Payment: [ ] Cash      [ ] Check or Money Order      [✓] C.J.A. Voucher

Status of Payment: [ ] Full Payment      [ ] Partial Payment      [ ] No Payment Yet

Signature:  s/ *John Maksimovich*

Address:  1946 North Main Street
Crown Point. IN  46307

Telephone No.  (219) 663-1900

Date: 06/30/2015

PART II – Must be completed by Court Reporter pursuant to Rule 11(b) of the Federal Rules of Appellate Procedure.  By signing this Part II, the Court Reporter certifies that *satisfactory arrangements for payment have been made.*

| U.S.C.A. Docket No. | Date Order Received | Estimated Completion Date | Estimated Length |
|---|---|---|---|
| | | | |

Signature of Court Reporter:  s/                     Date:

NOTICE: The Judicial Conference of the United States, by its resolution of March 11, 1982, has provided that a penalty of 10 percent must apply, unless a waiver is granted by the Court of Appeals' Clerk, when a "transcript of a case on appeal is not delivered within 30 days of the date ordered and payment received therefor." The penalty is 20 percent for transcript not delivered within 60 days.

Original to Court Reporter.  Copies to: ● U.S.C.A. Clerk ● Service Copy ●District Court Clerk and to ● Party / Counsel Ordering Transcript.

- FILED -

SEP 18 2015

At _____ M
ROBERT N. TRGOVICH, Clerk
U.S. DISTRICT COURT
NORTHERN DISTRICT OF INDIANA

9/12/15

Dear Judge Simon,

    I am writing the court to find out what is going on with my appeal process, I was told by my last attorney Arlington Foley that after sentencing he was going to file for an appeal and also was going to file a motion for withdrawal, since then my family has tried to contact mr Foley to ask what is the update on my case and mr. Foley states that he is not my attorney any more and can not help me with anything, I am wondering why I haven't received any information from the court or any attorney stated any update. I would like to know what is going on with my case. If the court can please up date me and or send me my new attorney's info I would appriciate it, Thank you.

Sincerely

J. B—

Juan Briseño #11190-027
United States Penitentiary
P.O. Box 7000
Florence, CO 81226

DENVER CO 802

15 SEP 2015 PM 6 L

Legal Mail

Honorable Philip Simon
5400 Federal Plaza Ste; 4
Hammond, IN 46320

46320187700

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
### HAMMOND DIVISION

UNITED STATES OF AMERICA,　　　　)
　　　　　　　　　　　　　　　　　)
　　　　　　Plaintiff,　　　　　　　)
　　　　　　　　　　　　　　　　　)
　　　v.　　　　　　　　　　　　　)　　　NO. 2:11CR77 PPS
　　　　　　　　　　　　　　　　　)
JUAN BRISENO,　　　　　　　　　　)
　　　　　　　　　　　　　　　　　)
　　　　　　Defendant.　　　　　　)
　　　　　　　　　　　　　　　　　)

## ORDER

Defendant Juan Briseno was sentenced on June 15, 2015 to multiple terms of life imprisonment, as well as to two consecutive terms of 120 months' imprisonment. [DE 1663, 1664.] On June 22, Briseno filed a notice of appeal. [DE 1676.] I am in receipt of a letter from Briseno, written from the U.S. Penitentiary in Florence, Colorado, in which he inquires about the status of appeal, reporting that he is unable to get updates from his trial counsel's office. [DE 1776.]

I am able to advise Briseno that his appeal has been docketed in the Seventh Circuit Court of Appeals, and assigned docket number 15-2347. His trial counsel there moved to withdraw from representing Briseno, and on June 29, the Court of Appeals suspended briefing of the appeal, pending its ruling on the motion to withdraw. In the meantime, the court ordered trial counsel to comply with appellate rules regarding preparation of transcripts. Briseno's trial counsel filed a status report on July 3, indicating their compliance. As of this time, the Court of Appeals' docket does not reflect a ruling on counsel's motion to

4181

withdraw.  Briseno should make any further inquiries concerning his appeal to the Court of

Appeals, referencing his case number 15-2347.

ACCORDINGLY:

Beyond the status of Briseno's appeal related in this order, this Court will take no

further action on Juan Briseno's letter dated September 12, 2015, received September 18,

2015.  [DE 1776.]  Any further inquiries should be made to the Court of Appeals, referencing

case number 15-2347.

SO ORDERED.

ENTERED: September 28, 2015

/s/ Philip P. Simon

PHILIP P. SIMON, CHIEF JUDGE

Case: 15-2347     Document: 35          Filed: 07/27/2016      Pages: 4186
Case 2:11-cr-00077-PPS-APR   Document 1781   Filed 10/27/15   Page 1 of 2

Case: 15-2347     Document: 9          Filed: 10/27/2015      Pages: 2

# United States Court of Appeals

For the Seventh Circuit
Chicago, Illinois 60604

October 27, 2015

By the court:

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>     Plaintiff-Appellee,<br><br>No. 15-2347        v.<br><br>JUAN BRISENO,<br>     Defendant-Appellant. | ] Appeal from the United<br>] States District Court for<br>] the Northern District of<br>] Indiana, Hammond Division.<br>]<br>] No. 2:11-cr-00077-PPS-APR-1<br>]<br>] Philip P. Simon,<br>]    Chief Judge. |

This matter comes before the court for its consideration of the **MOTION FOR LEAVE OF COURT TO WITHDRAW AS COUNSEL FOR APPELLANT ON APPEAL,** filed on June 29, 2015 by attorneys Arlington J. Foley, Sr. and John Maksimovich . Upon consideration thereof

     **IT IS ORDERED** that the Motion to Withdraw is **GRANTED.**

     The court, on its own initiative, determined that this is an extremely difficult case primarily because this case was tried as a death penalty case over an extended period of time. The court further finds that it is in the interest of justice to appoint two attorneys (one attorney plus an additional attorney) to represent defendant-appellant Juan Briseno in this appeal. See Guide to Judiciary Policy, Vol. 7, § 230.53.20. Accordingly,

     **IT IS FURTHER ORDERED** that attorneys Kent R. Carlson, CARLSON & ASSOCIATES, Suite 1544, 53 W. Jackson Boulevard, Chicago, IL 60604 and Hannah Valdez Garst, LAW OFFICES OF HANNAH GARST, Suite 140, 2300 Barrington Road, Hoffman Estates, IL 60169, are appointed to represent defendant-appellant Juan Briseno pursuant to the provisions of the Criminal Justice Act. Counsel are directed to contact the defendant-appellant immediately.

Briefing shall proceed as follows:

1. Defendant-appellant shall file his brief and required short appendix on or before February 29, 2016.

Case: 15-2347     Document: 35     Filed: 07/27/2016     Pages: 4186
Case 2:11-cr-00077-PPS-APR   Document 1781   Filed 10/27/15   Page 2 of 2

Case: 15-2347     Document: 9     Filed: 10/27/2015     Pages: 2

2.      Plaintiff-appellee shall file its brief on or before March 30, 2016.

3.      Defendant-appellant shall file his reply brief, if any, on or before April 13, 2016.

**Important Scheduling Notice !**

Notices of hearing for particular appeals are mailed shortly before the date of oral argument.  Criminal appeals are scheduled shortly after the filing of the appellant's main brief; civil appeals after the filing of the appellee's brief.  If you foresee that you will be unavailable during a period in which your particular appeal might be scheduled, please write the clerk advising him of the time period and the reason for such unavailability.  Session data is located at http://www.ca7.uscourts.gov/cal/calendar.pdf.  Once an appeal is formally scheduled for a certain date, it is very difficult to have the setting changed. See Circuit Rule 34(e).

Case: 15-2347  Document: 35  Filed: 07/27/2016  Pages: 4186

Case 2:11-cr-00077-PPS-APR  Document 1851  Filed 07/21/16  Page 1 of 1

# UNITED STATES COURT OF APPEALS FOR THE SEVENTH CIRCUIT



Everett McKinley Dirksen United States Courthouse
Room 2722 - 219 S. Dearborn Street
Chicago, Illinois 60604

Office of the Clerk
Phone: (312) 435-5850
www.ca7.uscourts.gov

## NOTICE TO TRANSMIT RECORD ON APPEAL

July 21, 2016

| No. 15-2347 | UNITED STATES OF AMERICA, Plaintiff - Appellee<br><br>v.<br><br>JUAN BRISENO, Defendant - Appellant |
|---|---|
| **Originating Case Information:** | |
| District Court No: 2:11-cr-00077-PPS-APR-1<br>Northern District of Indiana, Hammond Division<br>District Judge Philip P. Simon | |

Pursuant to Circuit Rule 11(b), the record is to be transmitted to this court immediately for use in the decision in the above named cause. Do not send the Exhibits unless the court specifically requests them.

form name: **c7_NoticeTransROA**(form ID: **116**)

4185